BUSINESS AND COMMERCE CODE

TITLE 1. UNIFORM COMMERCIAL CODE

CHAPTER 9. SECURED TRANSACTIONS


SUBCHAPTER A. SHORT TITLE, DEFINITIONS, AND GENERAL CONCEPTS


Sec. 9.101.  SHORT TITLE.   This chapter may be cited as Uniform Commercial Code--Secured Transactions.

Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.102.  DEFINITIONS AND INDEX OF DEFINITIONS.  (a)  In this chapter:

(1)  "Accession" means goods that are physically united with other goods in such a manner that the identity of the original goods is not lost.

(2)  "Account," except as used in "account for," means a right to payment of a monetary obligation, whether or not earned by performance, (i) for property that has been or is to be sold, leased, licensed, assigned, or otherwise disposed of, (ii) for services rendered or to be rendered, (iii) for a policy of insurance issued or to be issued, (iv) for a secondary obligation incurred or to be incurred, (v) for energy provided or to be provided, (vi) for the use or hire of a vessel under a charter or other contract, (vii) arising out of the use of a credit or charge card or information contained on or for use with the card, or (viii) as winnings in a lottery or other game of chance operated or sponsored by a state, governmental unit of a state, or person licensed or authorized to operate the game by a state or governmental unit of a state.  The term includes health-care-insurance receivables.  The term does not include (i) rights to payment evidenced by chattel paper or an instrument, (ii) commercial tort claims, (iii) deposit accounts, (iv) investment property, (v) letter-of-credit rights or letters of credit, or (vi) rights to payment for money or funds advanced or sold, other than rights arising out of the use of a credit or charge card or information contained on or for use with the card.

(3)  "Account debtor" means a person obligated on an

1

account, chattel paper, or general intangible. The term does not include persons obligated to pay a negotiable instrument, even if the instrument constitutes part of chattel paper.

(4)  "Accounting," except as used in "accounting for," means a record:

(A)  authenticated by a secured party;

(B)  indicating the aggregate unpaid secured obligations as of a date not more than 35 days earlier or 35 days later than the date of the record; and

(C)  identifying the components of the obligations in reasonable detail.

(5)  "Agricultural lien" means an interest in farm products:

(A)  that secures payment or performance of an obligation for:

(i)  goods or services furnished in connection with a debtor's farming operation; or

(ii)  rent on real property leased by a debtor in connection with its farming operation;

(B)  that is created by statute in favor of a person that:

(i)  in the ordinary course of its business furnished goods or services to a debtor in connection with a debtor's farming operation; or

(ii)  leased real property to a debtor in connection with the debtor's farming operation; and

(C)  whose effectiveness does not depend on the person's possession of the personal property.

(6)  "As-extracted collateral" means:

(A)  oil, gas, or other minerals that are subject to a security interest that:

(i)  is created by a debtor having an interest in the minerals before extraction; and

(ii)  attaches to the minerals as extracted; or

(B)  accounts arising out of the sale at the wellhead or minehead of oil, gas, or other minerals in which the

debtor had an interest before extraction.

(7)  "Authenticate" means:

(A)  to sign; or

(B)  to execute or otherwise adopt a symbol, or encrypt or similarly process a record in whole or in part, with the present intent of the authenticating person to identify the person and adopt or accept a record.

(8)  "Bank" means an organization that is engaged in the business of banking.  The term includes savings banks, savings and loan associations, credit unions, and trust companies.

(9)  "Cash proceeds" means proceeds that are money, checks, deposit accounts, or the like.

(10)  "Certificate of title" means a certificate of title with respect to which a statute provides for the security interest in question to be indicated on the certificate as a condition or result of the security interest's obtaining priority over the rights of a lien creditor with respect to the collateral.

(11)  "Chattel paper" means a record or records that evidence both a monetary obligation and a security interest in specific goods, a security interest in specific goods and software used in the goods, a security interest in specific goods and license of software used in the goods, a lease of specific goods, or a lease of specific goods and license of software used in the goods.  In this subdivision, "monetary obligation" means a monetary obligation secured by the goods or owed under a lease of the goods and includes a monetary obligation with respect to software used in the goods.  The term does not include (i) charters or other contracts involving the use or hire of a vessel or (ii) records that evidence a right to payment arising out of the use of a credit or charge card or information contained on or for use with the card. If a transaction is evidenced by records that include an instrument or series of instruments, the group of records taken together constitutes chattel paper.

(12)  "Collateral" means the property subject to a security interest or agricultural lien.  The term includes:

(A)  proceeds to which a security interest attaches;

3

(B) accounts, chattel paper, payment intangibles, and promissory notes that have been sold; and

(C) goods that are the subject of a consignment.

(13) "Commercial tort claim" means a claim arising in tort with respect to which:

(A) the claimant is an organization; or

(B) the claimant is an individual and the claim:

(i) arose in the course of the claimant's business or profession; and

(ii) does not include damages arising out of personal injury to or the death of an individual.

(14) "Commodity account" means an account maintained by a commodity intermediary in which a commodity contract is carried for a commodity customer.

(15) "Commodity contract" means a commodity futures contract, an option on a commodity futures contract, a commodity option, or another contract if the contract or option is:

(A) traded on or subject to the rules of a board of trade that has been designated as a contract market for such a contract pursuant to federal commodities laws; or

(B) traded on a foreign commodity board of trade, exchange, or market and is carried on the books of a commodity intermediary for a commodity customer.

(16) "Commodity customer" means a person for which a commodity intermediary carries a commodity contract on its books.

(17) "Commodity intermediary" means a person that:

(A) is registered as a futures commission merchant under federal commodities law; or

(B) in the ordinary course of its business provides clearance or settlement services for a board of trade that has been designated as a contract market pursuant to federal commodities law.

(18) "Communicate" means:

(A) to send a written or other tangible record;

(B) to transmit a record by any means agreed upon by the persons sending and receiving the record; or

(C) in the case of transmission of a record to or

4

by a filing office, to transmit a record by any means prescribed by filing-office rule.

(19)  "Consignee" means a merchant to which goods are delivered in a consignment.

(20)  "Consignment" means a transaction, regardless of its form, in which a person delivers goods to a merchant for the purpose of sale and:

(A)  the merchant:

(i)  deals in goods of that kind under a name other than the name of the person making delivery;

(ii)  is not an auctioneer; and

(iii)  is not generally known by its creditors to be substantially engaged in selling the goods of others;

(B)  with respect to each delivery, the aggregate value of the goods is $1,000 or more at the time of delivery;

(C)  the goods are not consumer goods immediately before delivery;

(D)  the transaction does not create a security interest that secures an obligation; and

(E)  the transaction does not involve delivery of a work of art to an art dealer or delivery of a sound recording to a distributor if Chapter 2101, Occupations Code, applies to the delivery.

(21)  "Consignor" means a person that delivers goods to a consignee in a consignment.

(22)  "Consumer debtor" means a debtor in a consumer transaction.

(23)  "Consumer goods" means goods that are used or bought for use primarily for personal, family, or household purposes.

(24)  "Consumer-goods transaction" means a consumer transaction in which:

(A)  an individual incurs an obligation primarily for personal, family, or household purposes; and

(B)  a security interest in consumer goods secures the obligation.

(25)  "Consumer obligor" means an obligor who is an individual and who incurred the obligation as part of a transaction entered into primarily for personal, family, or household purposes.

(26)  "Consumer transaction" means a transaction in which (i) an individual incurs an obligation primarily for personal, family, or household purposes, (ii) a security interest secures the obligation, and (iii) the collateral is held or acquired primarily for personal, family, or household purposes. The term includes consumer-goods transactions.

(27)  "Continuation statement" means an amendment of a financing statement that:

(A)  identifies, by its file number, the initial financing statement to which it relates; and

(B)  indicates that it is a continuation statement for, or that it is filed to continue the effectiveness of, the identified financing statement.

(28)  "Debtor" means:

(A)  a person having an interest, other than a security interest or other lien, in the collateral, whether or not the person is an obligor;

(B)  a seller of accounts, chattel paper, payment intangibles, or promissory notes; or

(C)  a consignee.

(29)  "Deposit account" means a demand, time, savings, passbook, or similar account maintained with a bank.  The term includes a nonnegotiable certificate of deposit.  The term does not include investment property or accounts evidenced by an instrument.

(30)  "Document" means a document of title or a receipt of the type described in Section 7.201(b).

(31)  "Electronic chattel paper" means chattel paper evidenced by a record or records consisting of information stored in an electronic medium.

(32)  "Encumbrance" means a right, other than an ownership interest, in real property.  The term includes mortgages and other liens on real property.

(33)  "Equipment" means goods other than inventory, farm products, or consumer goods.

EXHIBIT 241

(34) "Farm products" means goods, other than standing timber, with respect to which the debtor is engaged in a farming operation and which are:

    (A) crops grown, growing, or to be grown, including:

        (i) crops produced on trees, vines, and bushes; and

        (ii) aquatic goods produced in aquacultural operations;

    (B) livestock, born or unborn, including aquatic goods produced in aquacultural operations;

    (C) supplies used or produced in a farming operation; or

    (D) products of crops or livestock in their unmanufactured states.

(35) "Farming operation" means raising, cultivating, propagating, fattening, grazing, or any other farming, livestock, or aquacultural operation.

(36) "File number" means the number assigned to an initial financing statement pursuant to Section 9.519(a).

(37) "Filing office" means an office designated in Section 9.501 as the place to file a financing statement.

(38) "Filing-office rule" means a rule adopted pursuant to Section 9.526.

(39) "Financing statement" means a record or records composed of an initial financing statement and any filed record relating to the initial financing statement.

(40) "Fixture filing" means the filing of a financing statement covering goods that are or are to become fixtures and satisfying Sections 9.502(a) and (b). The term includes the filing of a financing statement covering goods of a transmitting utility that are or are to become fixtures.

(41) "Fixtures" means goods that have become so related to particular real property that an interest in them arises under the real property law of the state in which the real property is situated.

(42) "General intangible" means any personal

property, including things in action, other than accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment property, letter-of-credit rights, letters of credit, money, and oil, gas, or other minerals before extraction.  The term includes payment intangibles and software.

(43)  Reserved.

(44)  "Goods" means all things that are movable when a security interest attaches.  The term includes (i) fixtures, (ii) standing timber that is to be cut and removed under a conveyance or contract for sale, (iii) the unborn young of animals, (iv) crops grown, growing, or to be grown, even if the crops are produced on trees, vines, or bushes, and (v) manufactured homes.  The term also includes a computer program embedded in goods and any supporting information provided in connection with a transaction relating to the program if (i) the program is associated with the goods in such a manner that it customarily is considered part of the goods, or (ii) by becoming the owner of the goods, a person acquires a right to use the program in connection with the goods.  The term does not include a computer program embedded in goods that consist solely of the medium in which the program is embedded.  The term also does not include accounts, chattel paper, commercial tort claims, deposit accounts, documents, general intangibles, instruments, investment property, letter-of-credit rights, letters of credit, money, or oil, gas, or other minerals before extraction.

(45)  "Governmental unit" means a subdivision, agency, department, county, parish, municipality, or other unit of the government of the United States, a state, or a foreign country.  The term includes an organization having a separate corporate existence if the organization is eligible to issue debt on which interest is exempt from income taxation under the laws of the United States.

(46)  "Health care insurance receivable" means an interest in or claim under a policy of insurance that is a right to payment of a monetary obligation for health care goods or services provided or to be provided.

(47)  "Instrument" means a negotiable instrument or any other writing that evidences a right to the payment of a monetary obligation, is not itself a security agreement or lease, and is of a

type that in ordinary course of business is transferred by delivery with any necessary indorsement or assignment. The term does not include (i) investment property, (ii) letters of credit, (iii) writings that evidence a right to payment arising out of the use of a credit or charge card or information contained on or for use with the card, or (iv) nonnegotiable certificates of deposit.

(48)   "Inventory" means goods, other than farm products, that:

(A)   are leased by a person as lessor;

(B)   are held by a person for sale or lease or to be furnished under a contract of service;

(C)   are furnished by a person under a contract of service; or

(D)   consist of raw materials, work in process, or materials used or consumed in a business.

(49)   "Investment property" means a security, whether certificated or uncertificated, security entitlement, securities account, commodity contract, or commodity account.

(50)   "Jurisdiction of organization," with respect to a registered organization, means the jurisdiction under whose law the organization is organized.

(51)   "Letter-of-credit right" means a right to payment or performance under a letter of credit, whether or not the beneficiary has demanded or is at the time entitled to demand payment or performance. The term does not include the right of a beneficiary to demand payment or performance under a letter of credit.

(52)   "Lien creditor" means:

(A)   a creditor that has acquired a lien on the property involved by attachment, levy, or the like;

(B)   an assignee for benefit of creditors from the time of assignment;

(C)   a trustee in bankruptcy from the date of the filing of the petition; or

(D)   a receiver in equity from the time of appointment.

(53)   "Manufactured   home"   means   a   structure,

9

transportable in one or more sections, that, in the traveling mode, is eight body feet or more in width or 40 body feet or more in length, or, when erected on site, is 320 or more square feet, and that is built on a permanent chassis and designed to be used as a dwelling with or without a permanent foundation when connected to the required utilities, and includes the plumbing, heating, air-conditioning, and electrical systems contained therein.  The term includes any structure that meets all of the requirements of this subdivision except the size requirements and with respect to which the manufacturer voluntarily files a certification required by the United States secretary of housing and urban development and complies with the standards established under Title 42 of the United States Code.

(54)  "Manufactured-home transaction" means a secured transaction:

(A)  that creates a purchase-money security interest in a manufactured home, other than a manufactured home held as inventory;  or

(B)  in which a manufactured home, other than a manufactured home held as inventory, is the primary collateral.

(55)  "Mortgage" means a consensual interest in real property, including fixtures, that secures payment or performance of an obligation.

(56)  "New debtor" means a person that becomes bound as debtor under Section 9.203(d) by a security agreement previously entered into by another person.

(57)  "New value" means (i) money, (ii) money's worth in property, services, or new credit, or (iii) release by a transferee of an interest in property previously transferred to the transferee.  The term does not include an obligation substituted for another obligation.

(58)  "Noncash proceeds" means proceeds other than cash proceeds.

(59)  "Nonnegotiable certificate of deposit" means a writing signed by a bank that:

(A)  states on its face that it is a certificate of deposit, as defined in Section 3.104, or receipt for a book entry;

EXHIBIT 241

(B)   contains an acknowledgement that a sum of money has been received by the bank, with an express or implied agreement that the bank will repay the sum of money;  and

(C)   is not a negotiable instrument.

(60)   "Obligor" means a person that, with respect to an obligation secured by a security interest in or an agricultural lien on the collateral, (i) owes payment or other performance of the obligation, (ii) has provided property other than the collateral to secure payment or other performance of the obligation, or (iii) is otherwise accountable in whole or in part for payment or other performance of the obligation.  The term does not include issuers or nominated persons under a letter of credit.

(61)   "Original debtor," except as used in Section 9.310(c), means a person that, as debtor, entered into a security agreement to which a new debtor has become bound under Section 9.203(d).

(62)   "Payment intangible" means a general intangible under which the account debtor's principal obligation is a monetary obligation.

(63)   "Person related to," with respect to an individual, means:

(A)   the spouse of the individual;

(B)   a brother, brother-in-law, sister, or sister-in-law of the individual;

(C)   an ancestor or lineal descendant of the individual or the individual's spouse;  or

(D)   any other relative, by blood or marriage, of the individual or the individual's spouse who shares the same home with the individual.

(64)   "Person related to," with respect to an organization, means:

(A)   a person directly or indirectly controlling, controlled by, or under common control with the organization;

(B)   an officer or director of, or a person performing similar functions with respect to, the organization;

(C)   an officer or director of, or a person performing similar functions with respect to, a person described in

Paragraph (A);

(D) the spouse of an individual described in Paragraph (A), (B), or (C); or

(E) an individual who is related by blood or marriage to an individual described in Paragraph (A), (B), (C), or (D) and shares the same home with the individual.

(65) "Proceeds," except as used in Section 9.609(b), means the following property:

(A) whatever is acquired upon the sale, lease, license, exchange, or other disposition of collateral;

(B) whatever is collected on, or distributed on account of, collateral;

(C) rights arising out of collateral;

(D) to the extent of the value of collateral, claims arising out of the loss, nonconformity, or interference with the use of, defects or infringement of rights in, or damage to the collateral; or

(E) to the extent of the value of collateral and to the extent payable to the debtor or the secured party, insurance payable by reason of the loss or nonconformity of, defects or infringement of rights in, or damage to the collateral.

(66) "Promissory note" means an instrument that evidences a promise to pay a monetary obligation, does not evidence an order to pay, and does not contain an acknowledgement by a bank that the bank has received for deposit a sum of money or funds.

(67) "Proposal" means a record authenticated by a secured party that includes the terms on which the secured party is willing to accept collateral in full or partial satisfaction of the obligation it secures pursuant to Sections 9.620, 9.621, and 9.622.

(68) "Public-finance transaction" means a secured transaction in connection with which:

(A) debt securities are issued;

(B) all or a portion of the securities issued have an initial stated maturity of at least 20 years; and

(C) the debtor, obligor, secured party, account debtor or other person obligated on collateral, assignor or assignee or a secured obligation, or assignor or assignee of a

security interest is a state or a governmental unit of a state.

(69) "Pursuant to commitment," with respect to an advance made or other value given by a secured party, means pursuant to the secured party's obligation, whether or not a subsequent event of default or other event not within the secured party's control has relieved or may relieve the secured party from its obligation.

(70) "Record," except as used in "for record," "of record," "record or legal title," and "record owner," means information that is inscribed on a tangible medium or that is stored in an electronic or other medium and is retrievable in perceivable form.

(71) "Registered organization" means an organization organized solely under the law of a single state or the United States and as to which the state or the United States must maintain a public record showing the organization to have been organized.

(72) "Secondary obligor" means an obligor to the extent that:

(A) the obligor's obligation is secondary; or

(B) the obligor has a right of recourse with respect to an obligation secured by collateral against the debtor, another obligor, or property of either.

(73) "Secured party" means:

(A) a person in whose favor a security interest is created or provided for under a security agreement, whether or not any obligation to be secured is outstanding;

(B) a person that holds an agricultural lien;

(C) a consignor;

(D) a person to which accounts, chattel paper, payment intangibles, or promissory notes have been sold;

(E) a trustee, indenture trustee, agent, collateral agent, or other representative in whose favor a security interest or agricultural lien is created or provided for; or

(F) a person that holds a security interest arising under Section 2.401, 2.505, 2.711(c), 2A.508(e), 4.210, or 5.118.

(74) "Security agreement" means an agreement that

13

creates or provides for a security interest.

(75)  "Send," in connection with a record or notification, means:

(A)  to deposit in the mail, deliver for transmission, or transmit by any other usual means of communication, with postage or cost of transmission provided for, addressed to any address reasonable under the circumstances;  or

(B)  to cause the record or notification to be received within the time that it would have been received if properly sent under Paragraph (A).

(76)  "Software" means a computer program and any supporting information provided in connection with a transaction relating to the program.  The term does not include a computer program that is included in the definition of "goods."

(77)  "State" means a state of the United States, the District of Columbia, Puerto Rico, the United States Virgin Islands, or any territory or insular possession subject to the jurisdiction of the United States.

(78)  "Supporting obligation" means a letter-of-credit right or secondary obligation that supports the payment or performance of an account, chattel paper, a document, a general intangible, an instrument, or investment property.

(79)  "Tangible chattel paper" means chattel paper evidenced by a record or records consisting of information that is inscribed on a tangible medium.

(80)  "Termination statement" means an amendment of a financing statement that:

(A)  identifies, by its file number, the initial financing statement to which it relates;  and

(B)  indicates either that it is a termination statement or that the identified financing statement is no longer effective.

(81)  "Transmitting utility" means a person primarily engaged in the business of:

(A)  operating a railroad, subway, street railway, or trolley bus;

(B)  transmitting communications electrically,

electromagnetically, or by light;

      (C)  transmitting goods by pipeline or sewer;  or

      (D)  transmitting or producing and transmitting electricity, steam, gas, or water.

    (b)  The following definitions in other chapters apply to this chapter:

| | |
|---|---|
| "Applicant" | Section 5.102. |
| "Beneficiary" | Section 5.102. |
| "Broker" | Section 8.102. |
| "Certificated security" | Section 8.102. |
| "Check" | Section 3.104. |
| "Clearing corporation" | Section 8.102. |
| "Contract for sale" | Section 2.106. |
| "Control" (with respect to a document of title) | Section 7.106. |
| "Customer" | Section 4.104. |
| "Entitlement holder" | Section 8.102. |
| "Financial asset" | Section 8.102. |
| "Holder in due course" | Section 3.302. |
| "Issuer" (with respect to a letter of credit or letter-of-credit right) | Section 5.102. |
| "Issuer" (with respect to a security) | Section 8.201. |
| "Lease" | Section 2A.103. |
| "Lease agreement" | Section 2A.103. |
| "Lease contract" | Section 2A.103. |
| "Leasehold interest" | Section 2A.103. |
| "Lessee" | Section 2A.103. |
| "Lessee in ordinary course of business" | Section 2A.103. |
| "Lessor" | Section 2A.103. |
| "Lessor's residual interest" | Section 2A.103. |
| "Letter of credit" | Section 5.102. |
| "Merchant" | Section 2.104. |
| "Negotiable instrument" | Section 3.104. |
| "Nominated person" | Section 5.102. |

| | |
|---|---|
| "Note" | Section 3.104. |
| "Proceeds of a letter of credit" | Section 5.114. |
| "Prove" | Section 3.103. |
| "Sale" | Section 2.106. |
| "Securities account" | Section 8.501. |
| "Securities intermediary" | Section 8.102. |
| "Security" | Section 8.102. |
| "Security certificate" | Section 8.102. |
| "Security entitlement" | Section 8.102. |
| "Uncertificated security" | Section 8.102. |

(c)  Chapter 1 contains general definitions and principles of construction and interpretation applicable throughout this chapter.

Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001;  Acts 2001, 77th Leg., ch. 705, Sec. 1, eff. June 13, 2001; Acts 2001, 77th Leg., ch. 1420, Sec. 14.728, eff. Sept. 1, 2001; Acts 2003, 78th Leg., ch. 542, Sec. 19, eff. Sept. 1, 2003;  Acts 2003, 78th Leg., ch. 917, Sec. 1, 2, eff. Sept. 1, 2003.

Amended by:

Acts 2005, 79th Leg., Ch. 122, Sec. 19, eff. September 1, 2005.

Acts 2005, 79th Leg., Ch. 233, Sec. 3, eff. May 27, 2005.


Sec. 9.103.  PURCHASE-MONEY SECURITY INTEREST;  APPLICATION OF PAYMENTS;  BURDEN OF ESTABLISHING. (a)  In this section:

(1)  "Purchase-money collateral" means goods or software that secures a purchase-money obligation incurred with respect to that collateral.

(2)  "Purchase-money obligation" means an obligation of an obligor incurred as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used.

(b)  A security interest in goods is a purchase-money security interest:

(1)  to the extent that the goods are purchase-money collateral with respect to that security interest;

(2)  if the security interest is in inventory that is or

was purchase-money collateral, also to the extent that the security interest secures a purchase-money obligation incurred with respect to other inventory in which the secured party holds or held a purchase-money security interest; and

(3)   also to the extent that the security interest secures a purchase-money obligation incurred with respect to software in which the secured party holds or held a purchase-money security interest.

(c)   A security interest in software is a purchase-money security interest to the extent that the security interest also secures a purchase-money obligation incurred with respect to goods in which the secured party holds or held a purchase-money security interest if:

(1)   the debtor acquired its interest in the software in an integrated transaction in which it acquired an interest in the goods; and

(2)   the debtor acquired its interest in the software for the principal purpose of using the software in the goods.

(d)   The security interest of a consignor in goods that are the subject of a consignment is a purchase-money security interest in inventory.

(e)   In a transaction other than a consumer-goods transaction, if the extent to which a security interest is a purchase-money security interest depends on the application of a payment to a particular obligation, the payment must be applied:

(1)   in accordance with any reasonable method of application to which the parties agree;

(2)   in the absence of the parties' agreement to a reasonable method, in accordance with any intention of the obligor manifested at or before the time of payment; or

(3)   in the absence of an agreement to a reasonable method and a timely manifestation of the obligor's intention, in the following order:

(A)   to obligations that are not secured; and

(B)   if more than one obligation is secured, to obligations secured by purchase-money security interests in the order in which those obligations were incurred.

17

(f)  In  a  transaction  other  than  a  consumer-goods transaction, a purchase-money security interest does not lose its status as such, even if:

(1)  the  purchase-money  collateral  also  secures  an obligation that is not a purchase-money obligation;

(2)  collateral  that  is  not  purchase-money  collateral also secures the purchase-money obligation; or

(3)  the  purchase-money  obligation  has  been  renewed, refinanced, consolidated, or restructured.

(g)  In  a  transaction  other  than  a  consumer-goods transaction,  a  secured  party  claiming  a  purchase-money  security interest has the burden of establishing the extent to which the security interest is a purchase-money security interest.

(h)  The limitation of the rules in Subsections (e), (f), and (g)  to  transactions  other  than  consumer-goods  transactions  is intended to leave to the court the determination of the proper rules in  consumer-goods  transactions.   The court may not infer from that limitation  the  nature  of  the  proper  rule  in  consumer-goods transactions and may continue to apply established approaches.

Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.

Sec. 9.104.   CONTROL  OF  DEPOSIT  ACCOUNT.   (a)   A secured party has control of a deposit account if:

(1)  the  secured  party  is  the  bank  with  which  the deposit account is maintained;

(2)  the debtor, secured party, and bank have agreed in an authenticated record that the bank will comply with instructions originated by the secured party directing disposition of the funds in the deposit account without further consent by the debtor; or

(3)  the secured party becomes the bank's customer with respect to the deposit account.

(b)  A secured party that has satisfied Subsection (a) has control,  even  if  the  debtor  retains  the  right  to  direct  the disposition of funds from the deposit account.

Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001; Acts 2001, 77th Leg., ch. 705, Sec. 2, eff. June 13, 2001.

Sec. 9.105.   CONTROL OF ELECTRONIC CHATTEL PAPER.  A secured party has control of electronic chattel paper if the record or records comprising the chattel paper are created, stored, and assigned in such a manner that:

(1)  a single authoritative copy of the record or records exists that is unique, identifiable and, except as otherwise provided in Subdivisions (4), (5), and (6), unalterable;

(2)  the authoritative copy identifies the secured party as the assignee of the record or records;

(3)  the authoritative copy is communicated to and maintained by the secured party or its designated custodian;

(4)  copies or revisions that add or change an identified assignee of the authoritative copy can be made only with the participation of the secured party;

(5)  each copy of the authoritative copy and any copy of a copy is readily identifiable as a copy that is not the authoritative copy; and

(6)  any revision of the authoritative copy is readily identifiable as an authorized or unauthorized revision.
Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.106.   CONTROL OF INVESTMENT PROPERTY.  (a)  A person has control of a certificated security, uncertificated security, or security entitlement as provided in Section 8.106.

(b)  A secured party has control of a commodity contract if:

(1)  the secured party is the commodity intermediary with which the commodity contract is carried; or

(2)  the commodity customer, secured party, and commodity intermediary have agreed that the commodity intermediary will apply any value distributed on account of the commodity contract as directed by the secured party without further consent by the commodity customer.

(c)  A secured party having control of all security entitlements or commodity contracts carried in a securities account or commodity account has control over the securities account or

19

commodity account.

Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.107.   CONTROL OF LETTER-OF-CREDIT RIGHT.   A secured party has control of a letter-of-credit right to the extent of any right to payment or performance by the issuer or any nominated person if the issuer or nominated person has consented to an assignment of proceeds of the letter of credit under Section 5.114(c) or otherwise applicable law or practice.

Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.108.   SUFFICIENCY OF DESCRIPTION.   (a) Except as otherwise provided in Subsections (c), (d), and (e), a description of personal or real property is sufficient, whether or not it is specific, if it reasonably identifies what is described.

(b)  Except as otherwise provided in Subsection (d), a description of collateral reasonably identifies the collateral if it identifies the collateral by:

(1)   specific listing;

(2)   category;

(3)   except as otherwise provided in Subsection (e), a type of collateral defined in this title;

(4)   quantity;

(5)   computational   or   allocational   formula   or procedure; or

(6)   except as otherwise provided in Subsection (c), any other method, if the identity of the collateral is objectively determinable.

(c)  A description of collateral as "all the debtor's assets" or "all the debtor's personal property" or using words of similar import does not reasonably identify the collateral.

(d)  Except as otherwise provided in Subsection (e), a description of a security entitlement, securities account, or commodity account is sufficient if it describes:

(1)   the collateral by those terms or as investment

property; or

      (2)   the   underlying   financial   asset   or   commodity contract.

    (e)   A description only by type of collateral defined in this title is an insufficient description of:

      (1)   a commercial tort claim; or

      (2)   in   a   consumer   transaction,   consumer   goods,   a security entitlement, a securities account, or a commodity account. Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


    Sec. 9.109.   SCOPE.   (a)   Except   as   otherwise   provided   in Subsections (c), (d), and (e), this chapter applies to:

      (1)   a   transaction,   regardless   of   its   form,   that creates   a   security   interest   in   personal   property   or   fixtures   by contract;

      (2)   an agricultural lien;

      (3)   a   sale   of   accounts,   chattel   paper,   payment intangibles, or promissory notes;

      (4)   a consignment;

      (5)   a   security   interest   arising   under   Section   2.401, 2.505, 2.711(c), or 2A.508(e), as provided in Section 9.110; and

      (6)   a security interest arising under Section 4.210 or 5.118.

    (b)   The application of this chapter to a security interest in a   secured   obligation   is   not   affected   by   the   fact   that   the obligation is itself secured by a transaction or interest to which this chapter does not apply.

    (c)   This chapter does not apply to the extent that:

      (1)   a   statute,   regulation,   or   treaty   of   the   United States preempts this chapter;

      (2)   another   statute   of   this   state   expressly   governs the   creation,   perfection,   priority,   or   enforcement   of   a   security interest created by this state or a governmental unit of this state;

      (3)   a statute of another state, a foreign country, or a governmental unit of another state or a foreign country, other than a   statute   generally   applicable   to   security   interests,   expressly

governs creation, perfection, priority, or enforcement of a security interest created by the state, country, or governmental unit; or

(4) the rights of a transferee beneficiary or nominated person under a letter of credit are independent and superior under Section 5.114.

(d) This chapter does not apply to:

(1) a landlord's lien, other than an agricultural lien;

(2) a lien, other than an agricultural lien, given by statute or other rule of law for services or materials, but Section 9.333 applies with respect to priority of the lien;

(3) an assignment of a claim for wages, salary, or other compensation of an employee;

(4) a sale of accounts, chattel paper, payment intangibles, or promissory notes as part of a sale of the business out of which they arose;

(5) an assignment of accounts, chattel paper, payment intangibles, or promissory notes that is for the purpose of collection only;

(6) an assignment of a right to payment under a contract to an assignee that is also obligated to perform under the contract;

(7) an assignment of a single account, payment intangible, or promissory note to an assignee in full or partial satisfaction of a preexisting indebtedness;

(8) a transfer of an interest in or an assignment of a claim under a policy of insurance, other than an assignment by or to a health care provider of a health-care-insurance receivable and any subsequent assignment of the right to payment, but Sections 9.315 and 9.322 apply with respect to proceeds and priorities in proceeds;

(9) an assignment of a right represented by a judgment, other than a judgment taken on a right to payment that was collateral;

(10) a right of recoupment or set-off, but:

(A) Section 9.340 applies with respect to the

effectiveness of rights of recoupment or set-off against deposit accounts; and

(B)    Section 9.404 applies with respect to defenses or claims of an account debtor;

(11)    the creation or transfer of an interest in or lien on real property, including a lease or rents thereunder, the interest of a vendor or vendee in a contract for deed to purchase an interest in real property, or the interest of an optionor or optionee in an option to purchase an interest in real property, except to the extent that provision is made for:

(A)    liens on real property in Sections 9.203 and 9.308;

(B)    fixtures in Section 9.334;

(C)    fixture filings in Sections 9.501, 9.502, 9.512, 9.516, and 9.519; and

(D)    security agreements covering personal and real property in Section 9.604;

(12)    an assignment of a claim arising in tort, other than a commercial tort claim, but Sections 9.315 and 9.322 apply with respect to proceeds and priorities in proceeds; or

(13)    an assignment of a deposit account, other than a nonnegotiable certificate of deposit, in a consumer transaction, but Sections 9.315 and 9.322 apply with respect to proceeds and priorities in proceeds.

(e)    The application of this chapter to the sale of accounts, chattel paper, payment intangibles, or promissory notes is not to recharacterize that sale as a transaction to secure indebtedness but to protect purchasers of those assets by providing a notice filing system.    For all purposes, in the absence of fraud or intentional misrepresentation, the parties' characterization of a transaction as a sale of such assets shall be conclusive that the transaction is a sale and is not a secured transaction and that title, legal and equitable, has passed to the party characterized as the purchaser of those assets regardless of whether the secured party has any recourse against the debtor, whether the debtor is entitled to any surplus, or any other term of the parties' agreement.

23

Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.110.  SECURITY INTERESTS ARISING UNDER CHAPTER 2 OR 2A.  A security interest arising under Section 2.401, 2.505, 2.711(c), or 2A.508(e) is subject to this chapter.  However, until the debtor obtains possession of the goods:

(1)  the security interest is enforceable, even if Section 9.203(b)(3) has not been satisfied;

(2)  filing is not required to perfect the security interest;

(3)  the rights of the secured party after default by the debtor are governed by Chapter 2 or 2A;  and

(4)  the security interest has priority over a conflicting security interest created by the debtor.

Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


SUBCHAPTER B. EFFECTIVENESS OF SECURITY AGREEMENT;  ATTACHMENT OF SECURITY INTEREST;  RIGHTS OF PARTIES TO SECURITY AGREEMENT


Sec. 9.201.  GENERAL EFFECTIVENESS OF SECURITY AGREEMENT. (a)  Except as otherwise provided by this title, a security agreement is effective according to its terms between the parties, against purchasers of the collateral, and against creditors.

(b)  A transaction subject to this chapter is subject to any applicable rule of law that establishes a different rule for consumers and to:

(1)  Title 4, Finance Code;  and

(2)  Subchapter E, Chapter 17.

(c)  In case of conflict between this chapter and a rule of law, statute, or regulation described in Subsection (b), the rule of law, statute, or regulation controls.  Failure to comply with a statute or regulation described in Subsection (b) has only the effect the statute or regulation specifies.

(d)  This chapter does not:

(1)  validate any rate, charge, agreement, or practice

24

that violates a rule of law, statute, or regulation described in Subsection (b); or

      (2)  extend the application of the rule of law, statute, or regulation to a transaction not otherwise subject to it.

Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


      Sec. 9.202.  TITLE TO COLLATERAL IMMATERIAL.  Except as otherwise provided with respect to consignments or sales of accounts, chattel paper, payment intangibles, or promissory notes, the provisions of this chapter with regard to rights and obligations apply whether title to collateral is in the secured party or the debtor.

Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


      Sec. 9.203.  ATTACHMENT AND ENFORCEABILITY OF SECURITY INTEREST; PROCEEDS; SUPPORTING OBLIGATIONS; FORMAL REQUISITES. (a)  A security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral, unless an agreement expressly postpones the time of attachment.

    (b)  Except as otherwise provided in Subsections (c)-(j), a security interest is enforceable against the debtor and third parties with respect to the collateral only if:

      (1)  value has been given;

      (2)  the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and

      (3)  one of the following conditions is met:

        (A)  the debtor has authenticated a security agreement that provides a description of the collateral and, if the security interest covers timber to be cut, a description of the land concerned;

        (B)  the collateral is not a certificated security and is in the possession of the secured party under Section 9.313 pursuant to the debtor's security agreement;

        (C)  the collateral is a certificated security in

registered form and the security certificate has been delivered to the secured party under Section 8.301 pursuant to the debtor's security agreement; or

> (D) the collateral is deposit accounts, electronic chattel paper, investment property, letter-of-credit rights, or electronic documents, and the secured party has control under Section 7.106, 9.104, 9.105, 9.106, or 9.107 pursuant to the debtor's security agreement.

(c) Subsection (b) is subject to Section 4.210 on the security interest of a collecting bank, Section 5.118 on the security interest of a letter-of-credit issuer or nominated person, Section 9.110 on a security interest arising under Chapter 2 or 2A, and Section 9.206 on security interests in investment property.

(d) A person becomes bound as debtor by a security agreement entered into by another person if, by operation of law other than this chapter or by contract:

> (1) the security agreement becomes effective to create a security interest in the person's property; or

> (2) the person becomes generally obligated for the obligations of the other person, including the obligation secured under the security agreement, and acquires or succeeds to all or substantially all of the assets of the other person.

(e) If a new debtor becomes bound as debtor by a security agreement entered into by another person:

> (1) the agreement satisfies Subsection (b)(3) with respect to existing or after-acquired property of the new debtor to the extent the property is described in the agreement; and

> (2) another agreement is not necessary to make a security interest in the property enforceable.

(f) The attachment of a security interest in collateral gives the secured party the rights to proceeds provided by Section 9.315 and is also attachment of a security interest in a supporting obligation for the collateral.

(g) The attachment of a security interest in a right to payment or performance secured by a security interest or other lien on personal or real property is also attachment of a security

interest in the security interest, mortgage, or other lien.

(h)  The attachment of a security interest in a securities account is also attachment of a security interest in the security entitlements carried in the securities account.

(i)  The attachment of a security interest in a commodity account is also attachment of a security interest in the commodity contracts carried in the commodity account.

(j)  If a secured party holds a security interest that applies under this chapter to minerals, including oil and gas, upon their extraction and the security interest also qualifies under applicable law as a lien on those minerals before their extraction, the security interest before and after production is a single continuous and uninterrupted lien on the property.  This subsection is a statement of the law of this state as it existed before the effective date of this subsection and applies with respect to minerals, including oil and gas, regardless of when the minerals were extracted.

Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.

Amended by:

Acts 2005, 79th Leg., Ch. 122, Sec. 20, eff. September 1, 2005.


Sec. 9.204.  AFTER-ACQUIRED PROPERTY; FUTURE ADVANCES. (a) Except as provided in Subsection (b), a security agreement may create or provide for a security interest in after-acquired collateral.

(b)  A security interest does not attach under a term constituting an after-acquired property clause to:

(1)  consumer goods, other than an accession when given as additional security, unless the debtor acquires rights in them within 10 days after the secured party gives value; or

(2)  a commercial tort claim.

(c)  A security agreement may provide that collateral secures, or that accounts, chattel paper, payment intangibles, or promissory notes are sold in connection with, future advances or other value, whether or not the advances or value are given pursuant

to commitment.

Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.205.  USE OR DISPOSITION OF COLLATERAL PERMISSIBLE. (a)  A security interest is not invalid or fraudulent against creditors solely because:

(1)  the debtor has the right or ability to:

(A)  use, commingle, or dispose of all or part of the collateral, including returned or repossessed goods;

(B)  collect, compromise, enforce, or otherwise deal with collateral;

(C)  accept the return of collateral or make repossessions; or

(D)  use, commingle, or dispose of proceeds; or

(2)  the secured party fails to require the debtor to account for proceeds or replace collateral.

(b)  This section does not relax the requirements of possession if attachment, perfection, or enforcement of a security interest depends upon possession of the collateral by the secured party.

Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.206.  SECURITY INTEREST ARISING IN PURCHASE OR DELIVERY OF FINANCIAL ASSET.  (a) A security interest in favor of a securities intermediary attaches to a person's security entitlement if:

(1)  the person buys a financial asset through the securities intermediary in a transaction in which the person is obligated to pay the purchase price to the securities intermediary at the time of the purchase; and

(2)  the securities intermediary credits the financial asset to the buyer's securities account before the buyer pays the securities intermediary.

(b)  The security interest described in Subsection (a) secures the person's obligation to pay for the financial asset.

28

(c)  A security interest in favor of a person that delivers a certificated security or other financial asset represented by a writing attaches to the security or other financial asset if:

(1)  the security or other financial asset:

(A)  in the ordinary course of business is transferred by delivery with any necessary indorsement or assignment; and

(B)  is delivered under an agreement between persons in the business of dealing with such securities or financial assets; and

(2)  the agreement calls for delivery against payment.

(d)  The security interest described in Subsection (c) secures the obligation to make payment for the delivery.

Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.207.  RIGHTS AND DUTIES OF SECURED PARTY HAVING POSSESSION OR CONTROL OF COLLATERAL.  (a)  Except as otherwise provided in Subsection (d), a secured party shall use reasonable care in the custody and preservation of collateral in the secured party's possession.  In the case of chattel paper or an instrument, reasonable care includes taking necessary steps to preserve rights against prior parties unless otherwise agreed.

(b)  Except as otherwise provided in Subsection (d), if a secured party has possession of collateral:

(1)  reasonable expenses, including the cost of insurance and payment of taxes or other charges, incurred in the custody, preservation, use, or operation of the collateral are chargeable to the debtor and are secured by the collateral;

(2)  the risk of accidental loss or damage is on the debtor to the extent of any deficiency in any effective insurance coverage;

(3)  the secured party shall keep the collateral identifiable, but fungible collateral may be commingled; and

(4)  the secured party may use or operate the collateral:

(A)  for the purpose of preserving the collateral

or its value;

(B) as permitted by an order of a court having competent jurisdiction; or

(C) except in the case of consumer goods, in the manner and to the extent agreed by the debtor.

(c) Except as otherwise provided in Subsection (d), a secured party having possession of collateral or control of collateral under Section 7.106, 9.104, 9.105, 9.106, or 9.107:

(1) may hold as additional security any proceeds, except money or funds, received from the collateral;

(2) shall apply money or funds received from the collateral to reduce the secured obligation, unless remitted to the debtor; and

(3) may create a security interest in the collateral.

(d) If the secured party is a buyer of accounts, chattel paper, payment intangibles, or promissory notes or a consignor:

(1) Subsection (a) does not apply unless the secured party is entitled under an agreement:

(A) to charge back uncollected collateral; or

(B) otherwise to full or limited recourse against the debtor or a secondary obligor based on the nonpayment or other default of an account debtor or other obligor on the collateral; and

(2) Subsections (b) and (c) do not apply.

Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.

Amended by:

Acts 2005, 79th Leg., Ch. 122, Sec. 21, eff. September 1, 2005.


Sec. 9.208. ADDITIONAL DUTIES OF SECURED PARTY HAVING CONTROL OF COLLATERAL. (a) This section applies to cases in which there is no outstanding secured obligation and the secured party is not committed to make advances, incur obligations, or otherwise give value.

(b) Within 10 days after receiving an authenticated demand by the debtor:

(1)  a  secured  party  having  control  of  a  deposit account under Section 9.104(a)(2) shall send to the bank with which the deposit account is maintained an authenticated statement that releases  the  bank  from  any  further  obligation  to  comply  with instructions originated by the secured party;

(2)  a  secured  party  having  control  of  a  deposit account under Section 9.104(a)(3) shall:

(A)  pay the debtor the balance on deposit in the deposit account; or

(B)  transfer  the  balance  on  deposit  into  a deposit account in the debtor's name;

(3)  a  secured  party,  other  than  a  buyer,  having control of electronic chattel paper under Section 9.105 shall:

(A)  communicate  the  authoritative  copy  of  the electronic chattel paper to the debtor or its designated custodian;

(B)  if the debtor designates a custodian that is the designated custodian with which the authoritative copy of the electronic  chattel  paper  is  maintained  for  the  secured  party, communicate to the custodian an authenticated record releasing the designated custodian from any further obligation to comply with instructions originated by the secured party and instructing the custodian to comply with instructions originated by the debtor; and

(C)  take appropriate action to enable the debtor or its designated custodian to make copies of or revisions to the authoritative copy that add or change an identified assignee of the authoritative copy without the consent of the secured party;

(4)  a  secured  party  having  control  of  investment property under Section 8.106(d)(2) or 9.106(b) shall send to the securities intermediary or commodity intermediary with which the security  entitlement  or  commodity  contract  is  maintained  an authenticated record that releases the securities intermediary or commodity intermediary from any further obligation to comply with entitlement orders or directions originated by the secured party;

(5)  a  secured  party  having  control  of  a letter-of-credit  right  under  Section  9.107  shall  send  to  each person having an unfulfilled obligation to pay or deliver proceeds of  the  letter  of  credit  to  the  secured  party  an  authenticated

release from any further obligation to pay or deliver proceeds of the letter of credit to the secured party; and

(6)  a secured party having control of an electronic document shall:

(A)  give control of the electronic document to the debtor or its designated custodian;

(B)  if the debtor designates a custodian that is the designated custodian with which the authoritative copy of the electronic document is maintained for the secured party, communicate to the custodian an authenticated record releasing the designated custodian from any further obligation to comply with instructions originated by the secured party and instructing the custodian to comply with instructions originated by the debtor; and

(C)  take appropriate action to enable the debtor or its designated custodian to make copies of or revisions to the authoritative copy which add or change an identified assignee of the authoritative copy without the consent of the secured party.

Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.

Amended by:

Acts 2005, 79th Leg., Ch. 122, Sec. 22, eff. September 1, 2005.


Sec. 9.209.  DUTIES OF SECURED PARTY IF ACCOUNT DEBTOR HAS BEEN NOTIFIED OF ASSIGNMENT.  (a) Except as otherwise provided in Subsection (c), this section applies if:

(1)  there is no outstanding secured obligation; and

(2)  the secured party is not committed to make advances, incur obligations, or otherwise give value.

(b)  Within 10 days after receiving an authenticated demand by the debtor, a secured party shall send to an account debtor that has received notification of an assignment to the secured party as assignee under Section 9.406(a) an authenticated record that releases the account debtor from any further obligation to the secured party.

(c)  This section does not apply to an assignment constituting the sale of an account, chattel paper, or payment

intangible.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.210.   REQUEST FOR ACCOUNTING; REQUEST REGARDING LIST OF COLLATERAL OR STATEMENT OF ACCOUNT.  (a)  In this section:

(1)  "Request" means a record of a type described in Subdivision (2), (3), or (4).

(2)  "Request for an accounting" means a record authenticated by a debtor requesting that the recipient provide an accounting of the unpaid obligations secured by collateral and reasonably identifying the transaction or relationship that is the subject of the request.

(3)  "Request regarding a list of collateral" means a record authenticated by a debtor requesting that the recipient approve or correct a list of what the debtor believes to be the collateral securing an obligation and reasonably identifying the transaction or relationship that is the subject of the request.

(4)  "Request regarding a statement of account" means a record authenticated by a debtor requesting that the recipient approve or correct a statement indicating what the debtor believes to be the aggregate amount of unpaid obligations secured by collateral as of a specified date and reasonably identifying the transaction or relationship that is the subject of the request.

(b)  Subject to Subsections (c), (d), (e), and (f), a secured party, other than a buyer of accounts, chattel paper, payment intangibles, or promissory notes or a consignor, shall comply with a request within 14 days after receipt:

(1)  in the case of a request for an accounting, by authenticating and sending to the debtor an accounting; and

(2)  in the case of a request regarding a list of collateral or a request regarding a statement of account, by authenticating and sending to the debtor an approval or correction.

(c)  A secured party that claims a security interest in all of a particular type of collateral owned by the debtor may comply with a request regarding a list of collateral by sending to the debtor an authenticated record including a statement to that effect

within 14 days after receipt.

(d)   A person that receives a request regarding a list of collateral, claims no interest in the collateral when it receives the request, and claimed an interest in the collateral at an earlier time shall comply with the request within 14 days after receipt by sending to the debtor an authenticated record:

(1)   disclaiming any interest in the collateral; and

(2)   if known to the recipient, providing the name and mailing address of any assignee of or successor to the recipient's interest in the collateral.

(e)   A person that receives a request for an accounting or a request regarding a statement of account, claims no interest in the obligations when it receives the request, and claimed an interest in the obligations at an earlier time shall comply with the request within 14 days after receipt by sending to the debtor an authenticated record:

(1)   disclaiming any interest in the obligations; and

(2)   if known to the recipient, providing the name and mailing address of any assignee of or successor to the recipient's interest in the obligations.

(f)   A debtor is entitled without charge to one response to a request under this section during any six-month period.   The secured party may require payment of a charge not exceeding $25 for each additional response.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.  Amended by Acts 2001, 77th Leg., ch. 705, Sec. 3, eff. June 13, 2001.


SUBCHAPTER C. PERFECTION AND PRIORITY


Sec.  9.301.   LAW GOVERNING PERFECTION AND PRIORITY OF SECURITY INTERESTS.  Except as otherwise provided in Sections 9.303 through 9.306, the following rules determine the law governing perfection, the effect of perfection or nonperfection, and the priority of a security interest in collateral:

(1)   Except as otherwise provided in this section, while a debtor is located in a jurisdiction, the local law of that

jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in collateral.

(2)  While collateral is located in a jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of a possessory security interest in that collateral.

(3)  Except as otherwise provided in Subdivision (4), while tangible negotiable documents, goods, instruments, money, or tangible chattel paper is located in a jurisdiction, the local law of that jurisdiction governs:

(A)  perfection of a security interest in the goods by filing a fixture filing;

(B)  perfection of a security interest in timber to be cut; and

(C)  the effect of perfection or nonperfection and the priority of a nonpossessory security interest in the collateral.

(4)  The local law of the jurisdiction in which the wellhead or minehead is located governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in as-extracted collateral.

Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.

Amended by:

Acts 2005, 79th Leg., Ch. 122, Sec. 23, eff. September 1, 2005.


Sec. 9.302.  LAW GOVERNING PERFECTION AND PRIORITY OF AGRICULTURAL LIENS.  While farm products are located in a jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of an agricultural lien on the farm products.

Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.303.  LAW GOVERNING PERFECTION AND PRIORITY OF

SECURITY INTERESTS IN GOODS COVERED BY A CERTIFICATE OF TITLE. (a) This section applies to goods covered by a certificate of title, even if there is no other relationship between the jurisdiction under whose certificate of title the goods are covered and the goods or the debtor.

(b) Goods become covered by a certificate of title when a valid application for the certificate of title and the applicable fee are delivered to the appropriate authority. Goods cease to be covered by a certificate of title at the earlier of the time the certificate of title ceases to be effective under the law of the issuing jurisdiction or the time the goods become covered subsequently by a certificate of title issued by another jurisdiction.

(c) The local law of the jurisdiction under whose certificate of title the goods are covered governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in goods covered by a certificate of title from the time the goods become covered by the certificate of title until the goods cease to be covered by the certificate of title.

Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.304. LAW GOVERNING PERFECTION AND PRIORITY OF SECURITY INTERESTS IN DEPOSIT ACCOUNTS. (a) The local law of a bank's jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in a deposit account maintained with that bank.

(b) The following rules determine a bank's jurisdiction for purposes of this subchapter:

(1) If an agreement between the bank and its customer governing the deposit account expressly provides that a particular jurisdiction is the bank's jurisdiction for purposes of this subchapter, this chapter, or this title, that jurisdiction is the bank's jurisdiction.

(2) If Subdivision (1) does not apply and an agreement between the bank and its customer governing the deposit account expressly provides that the agreement is governed by the law of a

particular jurisdiction, that jurisdiction is the bank's jurisdiction.

(3) If neither Subdivision (1) nor Subdivision (2) applies and an agreement between the bank and its customer governing the deposit account expressly provides that the deposit account is maintained at an office in a particular jurisdiction, that jurisdiction is the bank's jurisdiction.

(4) If none of the preceding subdivisions applies, the bank's jurisdiction is the jurisdiction in which the office identified in an account statement as the office serving the customer's account is located.

(5) If none of the preceding subdivisions applies, the bank's jurisdiction is the jurisdiction in which the chief executive office of the bank is located.

Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001; Acts 2003, 78th Leg., ch. 917, Sec. 3, eff. Sept. 1, 2003.


Sec. 9.305.  LAW GOVERNING PERFECTION AND PRIORITY OF SECURITY INTERESTS IN INVESTMENT PROPERTY.  (a)  Except as otherwise provided in Subsection (c), the following rules apply:

(1) While a security certificate is located in a jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in the certificated security represented thereby.

(2) The local law of the issuer's jurisdiction as specified in Section 8.110(d) governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in an uncertificated security.

(3) The local law of the securities intermediary's jurisdiction as specified in Section 8.110(e) governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in a security entitlement or securities account.

(4) The local law of the commodity intermediary's jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in a commodity contract or commodity account.

(b)   The   following   rules   determine   a   commodity intermediary's jurisdiction for purposes of this subchapter:

(1)   If an agreement between the commodity intermediary and commodity customer governing the commodity account expressly provides   that   a   particular   jurisdiction   is   the   commodity intermediary's jurisdiction for purposes of this subchapter, this chapter,   or   this   title,   that   jurisdiction   is   the   commodity intermediary's jurisdiction.

(2)   If Subdivision (1) does not apply and an agreement between   the   commodity   intermediary   and   commodity   customer governing   the   commodity   account   expressly   provides   that   the agreement is governed by the law of a particular jurisdiction, that jurisdiction is the commodity intermediary's jurisdiction.

(3)   If   neither   Subdivision   (1)   nor   Subdivision   (2) applies and an agreement between the commodity intermediary and commodity   customer   governing   the   commodity   account   expressly provides that the commodity account is maintained at an office in a particular   jurisdiction,   that   jurisdiction   is   the   commodity intermediary's jurisdiction.

(4)   If none of the preceding subdivisions applies, the commodity intermediary's jurisdiction is the jurisdiction in which the office identified in an account statement as the office serving the commodity customer's account is located.

(5)   If none of the preceding subdivisions applies, the commodity intermediary's jurisdiction is the jurisdiction in which the   chief   executive   office   of   the   commodity   intermediary   is located.

(c)   The local law of the jurisdiction in which the debtor is located governs:

(1)   perfection   of   a   security   interest   in   investment property by filing;

(2)   automatic   perfection   of   a   security   interest   in investment property created by a broker or securities intermediary; and

(3)   automatic   perfection   of   a   security   interest   in   a commodity   contract   or   commodity   account   created   by   a   commodity intermediary.

Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.306.  LAW  GOVERNING  PERFECTION  AND  PRIORITY  OF SECURITY INTERESTS IN LETTER-OF-CREDIT RIGHTS.  (a)  Subject to Subsection (c), the local law of the issuer's jurisdiction or a nominated person's jurisdiction governs perfection, the effect of perfection  or  nonperfection,  and  the  priority  of  a  security interest in a letter-of-credit right if the issuer's jurisdiction or nominated person's jurisdiction is a state.

(b)  For  purposes  of  this  subchapter,  an  issuer's jurisdiction  or  nominated  person's  jurisdiction  is  the jurisdiction whose law governs the liability of the issuer or nominated person with respect to the letter-of-credit right as provided in Section 5.116.

(c)  This section does not apply to a security interest that is perfected only under Section 9.308(d).
Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.307.  LOCATION OF DEBTOR.  (a)  In this section, "place of business" means a place where a debtor conducts its affairs.

(b)  Except as otherwise provided in this section, the following rules determine a debtor's location:

(1)  A debtor who is an individual is located at the individual's principal residence.

(2)  A debtor that is an organization and has only one place of business is located at its place of business.

(3)  A debtor that is an organization and has more than one place of business is located at its chief executive office.

(c)  Subsection (b) applies only if a debtor's residence, place of business, or chief executive office, as applicable, is located in a jurisdiction whose law generally requires information concerning the existence of a nonpossessory security interest to be made generally available in a filing, recording, or registration system  as  a  condition  or  result  of  the  security  interest's

obtaining priority over the rights of a lien creditor with respect to the collateral.  If Subsection (b) does not apply, the debtor is located in the District of Columbia.

(d)  A person that ceases to exist, have a residence, or have a place of business continues to be located in the jurisdiction specified by Subsections (b) and (c).

(e)  A registered organization that is organized under the law of a state is located in that state.

(f)  Except as otherwise provided in Subsection (i), a registered organization that is organized under the law of the United States and a branch or agency of a bank that is not organized under the law of the United States or a state are located:

(1)  in the state that the law of the United States designates, if the law designates a state of location;

(2)  in the state that the registered organization, branch, or agency designates, if the law of the United States authorizes the registered organization, branch, or agency to designate its state of location; or

(3)  in the District of Columbia, if neither Subdivision (1) nor Subdivision (2) applies.

(g)  A registered organization continues to be located in the jurisdiction specified by Subsection (e) or (f) notwithstanding:

(1)  the suspension, revocation, forfeiture, or lapse of the registered organization's status as such in its jurisdiction of organization; or

(2)  the dissolution, winding up, or cancellation of the existence of the registered organization.

(h)  The United States is located in the District of Columbia.

(i)  A branch or agency of a bank that is not organized under the law of the United States or a state is located in the state in which the branch or agency is licensed, if all branches and agencies of the bank are licensed in only one state.

(j)  A foreign air carrier under the Federal Aviation Act of 1958, as amended, is located at the designated office of the agent upon which service of process may be made on behalf of the carrier.

(k)  This section applies only for purposes of this

subchapter.

Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.308.  WHEN SECURITY INTEREST OR AGRICULTURAL LIEN IS PERFECTED;  CONTINUITY OF PERFECTION.  (a)  Except as otherwise provided in this section and Section 9.309, a security interest is perfected if it has attached and all of the applicable requirements for perfection in Sections 9.310 through 9.316 have been satisfied. A security interest is perfected when it attaches if the applicable requirements are satisfied before the security interest attaches.

(b)  An agricultural lien is perfected if it has become effective and all of the applicable requirements for perfection in Section 9.310 have been satisfied.   An agricultural lien is perfected when it becomes effective if the applicable requirements are satisfied before the agricultural lien becomes effective.

(c)  A security interest or agricultural lien is perfected continuously if it is originally perfected by one method under this chapter and is later perfected by another method under this chapter, without an intermediate period when it was unperfected.

(d)  Perfection of a security interest in collateral also perfects a security interest in a supporting obligation for the collateral.

(e)  Perfection of a security interest in a right to payment or performance also perfects a security interest in a security interest, mortgage, or other lien on personal or real property securing the right.

(f)  Perfection of a security interest in a securities account also perfects a security interest in the security entitlements carried in the securities account.

(g)  Perfection of a security interest in a commodity account also perfects a security interest in the commodity contracts carried in the commodity account.

Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.309.  SECURITY INTEREST PERFECTED UPON ATTACHMENT.

41

The following security interests are perfected when they attach:

(1)  a purchase money security interest in consumer goods, except as otherwise provided in Section 9.311(b) with respect to consumer goods that are subject to a statute or treaty described in Section 9.311(a);

(2)  an assignment of accounts or payment intangibles that does not by itself or in conjunction with other assignments to the same assignee transfer a significant part of the assignor's outstanding accounts or payment intangibles;

(3)  a sale of a payment intangible;

(4)  a sale of a promissory note;

(5)  a security interest created by the assignment of a health-care-insurance receivable to the provider of the health care goods or services;

(6)  a security interest arising under Section 2.401, 2.505, 2.711(c), or 2A.508(e), until the debtor obtains possession of the collateral;

(7)  a security interest of a collecting bank arising under Section 4.210;

(8)  a security interest of an issuer or nominated person arising under Section 5.118;

(9)  a security interest arising in the delivery of a financial asset under Section 9.206(c);

(10)  a security interest in investment property created by a broker or securities intermediary;

(11)  a security interest in a commodity contract or a commodity account created by a commodity intermediary;

(12)  an assignment for the benefit of all the creditors of the transferor and subsequent transfers by the assignee thereunder;

(13)  a security interest created by an assignment of a beneficial interest in a decedent's estate;  and

(14)  a sale by an individual of an account that is a right to payment of winnings in a lottery or other game of chance.

Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001;  Acts 2003, 78th Leg., ch. 917, Sec. 4, eff. Sept. 1, 2003.

EXHIBIT 241

Sec. 9.310.  WHEN FILING REQUIRED TO PERFECT SECURITY INTEREST OR AGRICULTURAL LIEN; SECURITY INTERESTS AND AGRICULTURAL LIENS TO WHICH FILING PROVISIONS DO NOT APPLY.  (a)  Except as otherwise provided in Subsection (b) and Section 9.312(b), a financing statement must be filed to perfect all security interests and agricultural liens.

(b)  The filing of a financing statement is not necessary to perfect a security interest:

(1)  that is perfected under Section 9.308(d), (e), (f), or (g);

(2)  that is perfected under Section 9.309 when it attaches;

(3)  in property subject to a statute, regulation, or treaty described in Section 9.311(a);

(4)  in goods in possession of a bailee that is perfected under Section 9.312(d)(1) or (2);

(5)  in certificated securities, documents, goods, or instruments which is perfected without filing, control or possession under Section 9.312(e), (f), or (g);

(6)  in collateral in the secured party's possession under Section 9.313;

(7)  in a certificated security that is perfected by delivery of the security certificate to the secured party under Section 9.313;

(8)  in deposit accounts, electronic chattel paper, electronic documents, investment property, or letter-of-credit rights that is perfected by control under Section 9.314;

(9)  in proceeds that is perfected under Section 9.315;

(10)  that is perfected under Section 9.316; or

(11)  in oil or gas production or their proceeds under Section 9.343.

(c)  If a secured party assigns a perfected security interest or agricultural lien, a filing under this Chapter is not required to continue the perfected status of the security interest against creditors of and transferees from the original debtor.

Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.

Amended by:

Acts 2005, 79th Leg., Ch. 122, Sec. 24, eff. September 1, 2005.


Sec. 9.311.  PERFECTION OF SECURITY INTERESTS IN PROPERTY SUBJECT TO CERTAIN STATUTES, REGULATIONS, AND TREATIES.  (a) Except as otherwise provided in Subsection (d), the filing of a financing statement is not necessary or effective to perfect a security interest in property subject to:

(1) a statute, regulation, or treaty of the United States whose requirements for a security interest's obtaining priority over the rights of a lien creditor with respect to the property preempt Section 9.310(a);

(2) the following statutes of this state:  Chapter 501, Transportation Code, relating to the certificates of title for motor vehicles;  Subchapter B-1, Chapter 31, Parks and Wildlife Code, relating to the certificates of title for vessels and outboard motors;  Chapter 1201, Occupations Code, relating to the documents of title for manufactured homes; or Chapter 261, relating to utility security instruments; or

(3) a certificate of title statute of another jurisdiction that provides for a security interest to be indicated on the certificate as a condition or result of the security interest's obtaining priority over the rights of a lien creditor with respect to the property.

(b) Compliance with the requirements of a statute, regulation, or treaty described in Subsection (a) for obtaining priority over the rights of a lien creditor is equivalent to the filing of a financing statement under this Chapter.  Except as otherwise provided in Subsection (d) and Sections 9.313 and 9.316(d) and (e) for goods covered by a certificate of title, a security interest in property subject to a statute, regulation, or treaty described in Subsection (a) may be perfected only by compliance with those requirements, and a security interest so perfected remains perfected notwithstanding a change in the use or transfer of possession of the collateral.

(c) Except as otherwise provided in Subsection (d) and

44

Sections 9.316(d) and (e), duration and renewal of perfection of a security interest perfected by compliance with the requirements prescribed by a statute, regulation, or treaty described in Subsection (a) are governed by the statute, regulation, or treaty. In other respects, the security interest is subject to this Chapter.

(d)  During any period in which collateral subject to a statute specified in Subsection (a)(2) is inventory held for sale or lease by a person or leased by that person as lessor and that person is in the business of selling goods of that kind, this section does not apply to a security interest in that collateral created by that person.

Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001;  Acts 2001, 77th Leg., ch. 705, Sec. 4, eff. June 13, 2001; Acts 2003, 78th Leg., ch. 1276, Sec. 14A.754, eff. Sept. 1, 2003. Amended by:

   Acts 2007, 80th Leg., R.S., Ch. 885, Sec. 2.05, eff. April 1, 2009.


   Sec. 9.312.  PERFECTION OF SECURITY INTERESTS IN CHATTEL PAPER, DEPOSIT ACCOUNTS, DOCUMENTS, AND GOODS COVERED BY DOCUMENTS, INSTRUMENTS, INVESTMENT PROPERTY, LETTER-OF-CREDIT RIGHTS, AND MONEY;  PERFECTION BY PERMISSIVE FILING;  TEMPORARY PERFECTION WITHOUT FILING OR TRANSFER OF POSSESSION. (a) A security interest in chattel paper, negotiable documents, instruments, or investment property may be perfected by filing.

   (b)  Except as otherwise provided in Sections 9.315(c) and (d) for proceeds:

      (1)  a security interest in a deposit account may be perfected only by control under Section 9.314;

      (2)  and except as otherwise provided in Section 9.308(d), a security interest in a letter-of-credit right may be perfected only by control under Section 9.314;  and

      (3)  a security interest in money may be perfected only by the secured party's taking possession under Section 9.313.

   (c)  While goods are in the possession of a bailee that has issued a negotiable document covering the goods:

45

**EXHIBIT 241**

(1) a security interest in the goods may be perfected by perfecting a security interest in the document; and

(2) a security interest perfected in the document has priority over any security interest that becomes perfected in the goods by another method during that time.

(d) While goods are in the possession of a bailee that has issued a nonnegotiable document covering the goods, a security interest in the goods may be perfected by:

(1) issuance of a document in the name of the secured party;

(2) the bailee's receipt of notification of the secured party's interest; or

(3) filing as to the goods.

(e) A security interest in certificated securities, negotiable documents, or instruments is perfected without filing or the taking of possession or control for a period of 20 days from the time it attaches to the extent that it arises for new value given under an authenticated security agreement.

(f) A perfected security interest in a negotiable document or goods in possession of a bailee, other than one that has issued a negotiable document for the goods, remains perfected for 20 days without filing if the secured party makes available to the debtor the goods or documents representing the goods for the purpose of:

(1) ultimate sale or exchange; or

(2) loading, unloading, storing, shipping, transshipping, manufacturing, processing, or otherwise dealing with them in a manner preliminary to their sale or exchange.

(g) A perfected security interest in a certificated security or instrument remains perfected for 20 days without filing if the secured party delivers the security certificate or instrument to the debtor for the purpose of:

(1) ultimate sale or exchange; or

(2) presentation, collection, enforcement, renewal, or registration of transfer.

(h) After the 20-day period specified in Subsection (e), (f), or (g) expires, perfection depends upon compliance with this chapter.

Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.

Amended by:

Acts 2005, 79th Leg., Ch. 122, Sec. 25, eff. September 1, 2005.


Sec. 9.313.  WHEN POSSESSION BY OR DELIVERY TO SECURED PARTY PERFECTS SECURITY INTEREST WITHOUT FILING.  (a)  Except as otherwise provided in Subsection (b), a secured party may perfect a security interest in tangible negotiable documents, goods, instruments, money, or tangible chattel paper by taking possession of the collateral.  A secured party may perfect a security interest in certificated securities by taking delivery of the certificated securities under Section 8.301.

(b)  With respect to goods covered by a certificate of title issued by this state, a secured party may perfect a security interest in the goods by taking possession of the goods only in the circumstances described in Section 9.316(d).

(c)  With respect to collateral other than certificated securities and goods covered by a document, a secured party takes possession of collateral in the possession of a person other than the debtor, the secured party, or a lessee of the collateral from the debtor in the ordinary course of the debtor's business when:

(1)  the person in possession authenticates a record acknowledging that it holds possession of the collateral for the secured party's benefit; or

(2)  the person takes possession of the collateral after having authenticated a record acknowledging that it will hold possession of collateral for the secured party's benefit.

(d)  If perfection of a security interest depends upon possession of the collateral by a secured party, perfection occurs no earlier than the time the secured party takes possession and continues only while the secured party retains possession.

(e)  A security interest in a certificated security in registered form is perfected by delivery when delivery of the certificated security occurs under Section 8.301 and remains perfected by delivery until the debtor obtains possession of the

security certificate.

(f)   A person in possession of collateral is not required to acknowledge that it holds possession for a secured party's benefit.

(g)   If a person acknowledges that it holds possession for the secured party's benefit:

(1)   the acknowledgment is effective under Subsection (c) or Section 8.301(a), even if the acknowledgment violates the rights of a debtor;  and

(2)   unless the person otherwise agrees or law other than this chapter otherwise provides, the person does not owe any duty to the secured party and is not required to confirm the acknowledgment to another person.

(h)   A secured party having possession of collateral does not relinquish possession by delivering the collateral to a person other than the debtor or a lessee of the collateral from the debtor in the ordinary course of the debtor's business if the person was instructed before the delivery or is instructed contemporaneously with the delivery:

(1)   to hold possession of the collateral for the secured party's benefit;  or

(2)   to redeliver the collateral to the secured party.

(i)   A secured party does not relinquish possession, even if a delivery under Subsection (h) violates the rights of a debtor.  A person to which collateral is delivered under Subsection (h) does not owe any duty to the secured party and is not required to confirm the delivery to another person unless the person otherwise agrees or law other than this chapter otherwise provides.

Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.

Amended by:

Acts 2005, 79th Leg., Ch. 122, Sec. 26, eff. September 1, 2005.


Sec. 9.314.   PERFECTION BY CONTROL.  (a) A security interest in investment property, deposit accounts, letter-of-credit rights, electronic chattel paper, or electronic documents may be perfected by control of the collateral under Section 7.106, 9.104, 9.105,

9.106, or 9.107.

(b)  A security interest in deposit accounts, electronic chattel paper, letter-of-credit rights, or electronic documents is perfected by control under Section 7.106, 9.104, 9.105, or 9.107 when the secured party obtains control and remains perfected by control only while the secured party retains control.

(c)  A security interest in investment property is perfected by control under Section 9.106 from the time the secured party obtains control and remains perfected by control until:

(1)  the secured party does not have control; and

(2)  one of the following occurs:

(A)  if the collateral is a certificated security, the debtor has or acquires possession of the security certificate;

(B)  if the collateral is an uncertificated security, the issuer has registered or registers the debtor as the registered owner; or

(C)  if the collateral is a security entitlement, the debtor is or becomes the entitlement holder.

Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.

Amended by:

Acts 2005, 79th Leg., Ch. 122, Sec. 27, eff. September 1, 2005.


Sec. 9.315.  SECURED PARTY'S RIGHTS ON DISPOSITION OF COLLATERAL AND IN PROCEEDS.  (a)  Except as otherwise provided in this chapter and Section 2.403(b):

(1)  a security interest or agricultural lien continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof unless the secured party authorized the disposition free of the security interest or agricultural lien; and

(2)  a security interest attaches to any identifiable proceeds of collateral.

(b)  Proceeds that are commingled with other property are identifiable proceeds:

(1)  if the proceeds are goods, to the extent provided

49

by Section 9.336; and

(2)   if the proceeds are not goods, to the extent that the secured party identifies the proceeds by a method of tracing, including application of equitable principles, that is permitted under law other than this chapter with respect to commingled property of the type involved.

(c)   A security interest in proceeds is a perfected security interest if the interest in the original collateral was perfected.

(d)   A perfected security interest in proceeds becomes unperfected on the 21st day after the security interest attaches to receipt of the proceeds unless:

(1)   the following conditions are satisfied:

(A)   a filed financing statement covers the original collateral;

(B)   the proceeds are collateral in which a security interest may be perfected by filing in the office in which the financing statement has been filed; and

(C)   the proceeds are not acquired with cash proceeds;

(2)   the proceeds are identifiable cash proceeds; or

(3)   the security interest in the proceeds is perfected other than under Subsection (c) when the security interest attaches to the proceeds or within 20 days thereafter.

(e)   If a filed financing statement covers the original collateral, a security interest in proceeds that remains perfected under Subsection (d)(1) becomes unperfected at the later of:

(1)   when the effectiveness of the filed financing statement lapses under Section 9.515 or is terminated under Section 9.513; or

(2)   the 21st day after the security interest attaches to the proceeds.

Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.316.  CONTINUED PERFECTION OF SECURITY INTEREST FOLLOWING CHANGE IN GOVERNING LAW.  (a)  A security interest perfected pursuant to the law of the jurisdiction designated in

Section 9.301(1) or 9.305(c) remains perfected until the earliest of:

(1) the time perfection would have ceased under the law of that jurisdiction;

(2) the expiration of four months after a change of the debtor's location to another jurisdiction; or

(3) the expiration of one year after a transfer of collateral to a person that thereby becomes a debtor and is located in another jurisdiction.

(b) If a security interest described in Subsection (a) becomes perfected under the law of the other jurisdiction before the earliest time or event described in that subsection, it remains perfected thereafter. If the security interest does not become perfected under the law of the other jurisdiction before the earliest time or event, it becomes unperfected and is deemed never to have been perfected as against a purchaser of the collateral for value.

(c) A possessory security interest in collateral, other than goods covered by a certificate of title and as-extracted collateral consisting of goods, remains continuously perfected if:

(1) the collateral is located in one jurisdiction and subject to a security interest perfected under the law of that jurisdiction;

(2) thereafter the collateral is brought into another jurisdiction; and

(3) upon entry into the other jurisdiction, the security interest is perfected under the law of the other jurisdiction.

(d) Except as otherwise provided in Subsection (e), a security interest in goods covered by a certificate of title that is perfected by any method under the law of another jurisdiction when the goods become covered by a certificate of title from this state remains perfected until the security interest would have become unperfected under the law of the other jurisdiction had the goods not become so covered.

(e) A security interest described in Subsection (d) becomes unperfected as against a purchaser of the goods for value and is

deemed never to have been perfected as against a purchaser of the goods for value if the applicable requirements for perfection under Section 9.311(b) or 9.313 are not satisfied before the earlier of:

(1)  the time the security interest would have become unperfected under the law of the other jurisdiction had the goods not become covered by a certificate of title from this State;  or

(2)  the expiration of four months after the goods had become so covered.

(f)  A security interest in deposit accounts, letter-of-credit rights, or investment property that is perfected under the law of the bank's jurisdiction, the issuer's jurisdiction, a nominated person's jurisdiction, the securities intermediary's jurisdiction, or the commodity intermediary's jurisdiction, as applicable, remains perfected until the earlier of:

(1)  the time the security interest would have become unperfected under the law of that jurisdiction;  or

(2)  the expiration of four months after a change of the applicable jurisdiction to another jurisdiction.

(g)  If a security interest described in Subsection (f) becomes perfected under the law of the other jurisdiction before the earlier of the time or the end of the period described in that subsection, it remains perfected thereafter.  If the security interest does not become perfected under the law of the other jurisdiction before the earlier of that time or the end of that period, it becomes unperfected and is deemed never to have been perfected as against a purchaser of the collateral for value.
Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.317.  INTERESTS THAT TAKE PRIORITY OVER OR TAKE FREE OF SECURITY INTEREST OR AGRICULTURAL LIEN.  (a) A security interest or agricultural lien is subordinate to the rights of:

(1)  a person entitled to priority under Section 9.322; and

(2)  except as otherwise provided in Subsection (e), a person that becomes a lien creditor before the earlier of the time:

(A)   the security interest or agricultural lien is perfected; or

(B)   one of the conditions specified in Section 9.203(b)(3) is met and a financing statement covering the collateral is filed.

(b)   Except as otherwise provided in Subsection (e), a buyer, other than a secured party, of tangible chattel paper, tangible documents, goods, instruments, or a security certificate takes free of a security interest or agricultural lien if the buyer gives value and receives delivery of the collateral without knowledge of the security interest or agricultural lien and before it is perfected.

(c)   Except as otherwise provided in Subsection (e), a lessee of goods takes free of a security interest or agricultural lien if the lessee gives value and receives delivery of the collateral without knowledge of the security interest or agricultural lien and before it is perfected.

(d)   A licensee of a general intangible or a buyer, other than a secured party, of accounts, electronic chattel paper, electronic documents, general intangibles, or investment property other than a certificated security takes free of a security interest if the licensee or buyer gives value without knowledge of the security interest and before it is perfected.

(e)   Except as otherwise provided in Sections 9.320 and 9.321, if a person files a financing statement with respect to a purchase-money security interest before or within 20 days after the debtor receives delivery of the collateral, the security interest takes priority over the rights of a buyer, lessee, or lien creditor that arise between the time the security interest attaches and the time of filing.

Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001; Acts 2001, 77th Leg., ch. 705, Sec. 6, eff. June 13, 2001.

Amended by:

Acts 2005, 79th Leg., Ch. 122, Sec. 28, eff. September 1, 2005.


Sec. 9.318.   NO INTEREST RETAINED IN RIGHT TO PAYMENT THAT IS SOLD;  RIGHTS AND TITLE OF SELLER OF ACCOUNT OR CHATTEL PAPER WITH

RESPECT TO CREDITORS AND PURCHASERS.  (a)  A debtor that has sold an account, chattel paper, payment intangible, or promissory note does not retain a legal or equitable interest in the collateral sold.

(b)  For purposes of determining the rights of creditors of, and purchasers for value of an account or chattel paper from, a debtor that has sold an account or chattel paper, while the buyer's security interest is unperfected, the debtor is deemed to have rights and title to the account or chattel paper identical to those the debtor sold.

Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.

Sec. 9.319.  RIGHTS AND TITLE OF CONSIGNEE WITH RESPECT TO CREDITORS AND PURCHASERS.  (a)  Except as otherwise provided in Subsection (b), for purposes of determining the rights of creditors of, and purchasers for value of goods from, a consignee, while the goods are in the possession of the consignee, the consignee is deemed to have rights and title to the goods identical to those the consignor had or had power to transfer.

(b)  For purposes of determining the rights of a creditor of a consignee, law other than this chapter determines the rights and title of a consignee while goods are in the consignee's possession if, under this subchapter, a perfected security interest held by the consignor would have priority over the rights of the creditor.

Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.

Sec. 9.320.  BUYERS OF GOODS.  (a)  Except as otherwise provided by Subsection (e), a buyer in ordinary course of business, other than a person buying farm products from a person engaged in farming operations, takes free of a security interest created by the buyer's seller, even if the security interest is perfected and the buyer knows of its existence.

(b)  Except as otherwise provided in Subsection (e), a buyer of goods from a person who used or bought the goods for use primarily for personal, family, or household purposes takes free of a security interest, even if perfected, if the buyer buys:

54

(1)   without knowledge of the security interest;

(2)   for value;

(3)   primarily for the buyer's personal, family, or household purposes; and

(4)   before the filing of a financing statement covering the goods.

(c)   To the extent that it affects the priority of a security interest over a buyer of goods under Subsection (b), the period of effectiveness of a filing made in the jurisdiction in which the seller is located is governed by Sections 9.316(a) and (b).

(d)   A buyer in ordinary course of business buying oil, gas, or other minerals at the wellhead or minehead or after extraction takes free of an interest arising out of an encumbrance.

(e)   Subsections (a) and (b) do not affect a security interest in goods in the possession of the secured party under Section 9.313.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.321.   LICENSEE OF GENERAL INTANGIBLE AND LESSEE OF GOODS IN ORDINARY COURSE OF BUSINESS.   (a)   In this section, "licensee in ordinary course of business" means a person that becomes a licensee of a general intangible in good faith, without knowledge that the license violates the rights of another person in the general intangible, and in the ordinary course from a person in the business of licensing general intangibles of that kind.   A person becomes a licensee in the ordinary course if the license to the person comports with the usual or customary practices in the kind of business in which the licensor is engaged or with the licensor's own usual or customary practices.

(b)   A licensee in ordinary course of business takes its rights under a nonexclusive license free of a security interest in the general intangible created by the licensor, even if the security interest is perfected and the licensee knows of its existence.

(c)   A lessee in ordinary course of business takes its leasehold interest free of a security interest in the goods created

by the lessor, even if the security interest is perfected and the lessee knows of its existence.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.322.   PRIORITIES   AMONG   CONFLICTING   SECURITY INTERESTS IN AND AGRICULTURAL LIENS ON SAME COLLATERAL.  (a) Except as otherwise provided in this section, priority among conflicting security interests and agricultural liens in the same collateral is determined according to the following rules:

(1)   Conflicting   perfected   security   interests   and agricultural liens rank according to priority in time of filing or perfection.  Priority dates from the earlier of the time a filing covering the collateral is first made or the security interest or agricultural lien is first perfected, if there is no period thereafter when there is neither filing nor perfection.

(2)   A perfected security interest or agricultural lien has priority over a conflicting unperfected security interest or agricultural lien.

(3)   The first security interest or agricultural lien to attach or become effective has priority if conflicting security interests and agricultural liens are unperfected.

(b)   For the purposes of Subsection (a)(1):

(1)   the time of filing or perfection as to a security interest in collateral is also the time of filing or perfection as to a security interest in proceeds; and

(2)   the time of filing or perfection as to a security interest in collateral supported by a supporting obligation is also the time of filing or perfection as to a security interest in the supporting obligation.

(c)   Except as otherwise provided in Subsection (f), a security interest in collateral that qualifies for priority over a conflicting security interest under Section 9.327, 9.328, 9.329, 9.330, or 9.331 also has priority over a conflicting security interest in:

(1)   any supporting obligation for the collateral; and

(2)   proceeds of the collateral if:

(A)   the   security   interest   in   proceeds   is perfected;

(B)   the proceeds are cash proceeds or of the same type as the collateral;  and

(C)   in the case of proceeds that are proceeds of proceeds, all intervening proceeds are cash proceeds, proceeds of the same type as the collateral, or an account relating to the collateral.

(d)   Subject  to  Subsection  (e)  and  except  as  otherwise provided  in  Subsection  (f),  if  a  security  interest  in  chattel paper,   deposit   accounts,   negotiable   documents,   instruments, investment  property,  or  letter-of-credit  rights  is  perfected  by  a method other than filing, conflicting perfected security interests in proceeds of the collateral rank according to priority in time of filing.

(e)   Subsection  (d)  applies  only  if  the  proceeds  of  the collateral  are  not  cash  proceeds,  chattel  paper,  negotiable documents,  instruments,  investment  property,  or  letter-of-credit rights.

(f)   Subsections (a)-(e) are subject to:

(1)   Subsection  (g)  and  the  other  provisions  of  this subchapter;

(2)   Section 4.210 with respect to a security interest of a collecting bank;

(3)   Section 5.118 with respect to a security interest of an issuer or nominated person;  and

(4)   Section 9.110 with respect to a security interest arising under Chapter 2 or 2A.

(g)   A  perfected  agricultural  lien  on  collateral  has priority over a conflicting security interest in or agricultural lien  on  the  same  collateral  if  the  statute  creating  the agricultural lien so provides.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.323.  FUTURE ADVANCES.  (a)  Except  as  otherwise provided  in  Subsection  (c),  for  purposes  of  determining  the

priority of a perfected security interest under Section
9.322(a)(1), perfection of the security interest dates from the
time an advance is made to the extent that the security interest
secures an advance that:

(1)   is made while the security interest is perfected
only:

(A)   under Section 9.309 when it attaches; or

(B)   temporarily under Section 9.312(e), (f), or
(g); and

(2)   is not made pursuant to a commitment entered into
before or while the security interest is perfected by a method other
than under Section 9.309 or 9.312(e), (f), or (g).

(b)   Except as otherwise provided in Subsection (c), a
security interest is subordinate to the rights of a person that
becomes a lien creditor to the extent that the security interest
secures an advance made more than 45 days after the person becomes a
lien creditor unless the advance is made:

(1)   without knowledge of the lien; or

(2)   pursuant to a commitment entered into without
knowledge of the lien.

(c)   Subsections (a) and (b) do not apply to a security
interest held by a secured party that is a buyer of accounts,
chattel paper, payment intangibles, or promissory notes or a
consignor.

(d)   Except as otherwise provided in Subsection (e), a buyer
of goods other than a buyer in ordinary course of business takes
free of a security interest to the extent that it secures advances
made after the earlier of:

(1)   the time the secured party acquires knowledge of
the buyer's purchase; or

(2)   45 days after the purchase.

(e)   Subsection (d) does not apply if the advance is made
pursuant to a commitment entered into without knowledge of the
buyer's purchase and before the expiration of the 45-day period.

(f)   Except as otherwise provided in Subsection (g), a lessee
of goods, other than a lessee in ordinary course of business, takes
the leasehold interest free of a security interest to the extent

58

that it secures advances made after the earlier of:

      (1)  the time the secured party acquires knowledge of the lease; or

      (2)  45 days after the lease contract becomes enforceable.

    (g)  Subsection (f) does not apply if the advance is made pursuant to a commitment entered into without knowledge of the lease and before the expiration of the 45-day period.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.  Amended by Acts 2001, 77th Leg., ch. 705, Sec. 7, eff. June 13, 2001.


    Sec. 9.324.  PRIORITY OF PURCHASE-MONEY SECURITY INTERESTS. (a)  Except as otherwise provided in Subsection (g), a perfected purchase-money security interest in goods other than inventory or livestock has priority over a conflicting security interest in the same goods, and, except as otherwise provided in Section 9.327, a perfected security interest in its identifiable proceeds also has priority, if the purchase-money security interest is perfected when the debtor receives possession of the collateral or within 20 days thereafter.

    (b)  Subject to Subsection (c) and except as otherwise provided in Subsection (g), a perfected purchase-money security interest in inventory has priority over a conflicting security interest in the same inventory, has priority over a conflicting security interest in chattel paper or an instrument constituting proceeds of the inventory and in proceeds of the chattel paper, if so provided in Section 9.330, and, except as otherwise provided in Section 9.327, also has priority in identifiable cash proceeds of the inventory to the extent the identifiable cash proceeds are received on or before the delivery of the inventory to a buyer, if:

      (1)  the purchase-money security interest is perfected when the debtor receives possession of the inventory;

      (2)  except where excused by Section 9.343 (oil and gas production), the purchase-money secured party sends an authenticated notification to the holder of the conflicting security interest;

(3) the holder of the conflicting security interest receives any required notification within five years before the debtor receives possession of the inventory; and

(4) the notification states that the person sending the notification has or expects to acquire a purchase-money security interest in inventory of the debtor and describes the inventory.

(c) Subsections (b)(2)-(4) apply only if the holder of the conflicting security interest had filed a financing statement covering the same types of inventory:

(1) if the purchase-money security interest is perfected by filing, before the date of the filing; or

(2) if the purchase-money security interest is temporarily perfected without filing or possession under Section 9.312(f), before the beginning of the 20-day period under that subsection.

(d) Subject to Subsection (e) and except as otherwise provided in Subsection (g), a perfected purchase-money security interest in livestock that are farm products has priority over a conflicting security interest in the same livestock, and, except as otherwise provided in Section 9.327, a perfected security interest in their identifiable proceeds and identifiable products in their unmanufactured states also has priority, if:

(1) the purchase-money security interest is perfected when the debtor receives possession of the livestock;

(2) the purchase-money secured party sends an authenticated notification to the holder of the conflicting security interest;

(3) the holder of the conflicting security interest receives the notification within six months before the debtor receives possession of the livestock; and

(4) the notification states that the person sending the notification has or expects to acquire a purchase-money security interest in livestock of the debtor and describes the livestock.

(e) Subsections (d)(2)-(4) apply only if the holder of the conflicting security interest had filed a financing statement

covering the same types of livestock:

(1)  if  the  purchase-money  security  interest  is perfected by filing, before the date of the filing;  or

(2)  if  the  purchase-money  security  interest  is temporarily  perfected  without  filing  or  possession  under  Section 9.312(f),  before  the  beginning  of  the  20-day  period  under  that subsection.

(f)  Except  as  otherwise  provided  in  Subsection  (g),  a perfected  purchase-money  security  interest  in  software  has priority  over  a  conflicting  security  interest  in  the  same collateral,  and,  except  as  otherwise  provided  in  Section  9.327,  a perfected  security  interest  in  its  identifiable  proceeds  also  has priority,  to  the  extent  that  the  purchase-money  security  interest in  the  goods  in  which  the  software  was  acquired  for  use  has  priority in  the  goods  and  proceeds  of  the  goods  under  this  section.

(g)  If  more  than  one  security  interest  qualifies  for priority  in  the  same  collateral  under  Subsection  (a),  (b),  (d),  or (f):

(1)  a  security  interest  securing  an  obligation incurred  as  all  or  part  of  the  price  of  the  collateral  has  priority over  a  security  interest  securing  an  obligation  incurred  for  value given  to  enable  the  debtor  to  acquire  rights  in  or  the  use  of collateral;  and

(2)  in  all  other  cases,  Section  9.322(a)  applies  to the qualifying security interests.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec.  9.325.    PRIORITY  OF  SECURITY  INTERESTS  IN  TRANSFERRED COLLATERAL.  (a)  Except  as  otherwise  provided  in  Subsection  (b),  a security  interest  created  by  a  debtor  is  subordinate  to  a  security interest  in  the  same  collateral  created  by  another  person  if:

(1)  the  debtor  acquired  the  collateral  subject  to  the security interest created by the other person;

(2)  the  security  interest  created  by  the  other  person was  perfected  when  the  debtor  acquired  the  collateral;  and

(3)  there  is  no  period  thereafter  when  the  security

interest is unperfected.

(b)   Subsection (a) subordinates a security interest only if the security interest:

(1)   otherwise would have priority solely under Section 9.322(a) or 9.324; or

(2)   arose solely under Section 2.711(c) or 2A.508(e).

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.326.   PRIORITY OF SECURITY INTERESTS CREATED BY NEW DEBTOR. (a)  Subject to Subsection (b), a security interest created by a new debtor that is perfected by a filed financing statement that is effective solely under Section 9.508 in collateral in which a new debtor has or acquires rights is subordinate to a security interest in the same collateral that is perfected other than by a filed financing statement that is effective solely under Section 9.508.

(b)   The other provisions of this subchapter determine the priority among conflicting security interests in the same collateral perfected by filed financing statements that are effective solely under Section 9.508.  However, if the security agreements to which a new debtor became bound as debtor were not entered into by the same original debtor, the conflicting security interests rank according to priority in time of the new debtor's having become bound.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.327.   PRIORITY OF SECURITY INTERESTS IN DEPOSIT ACCOUNT.   The following rules govern priority among conflicting security interests in the same deposit account:

(1)   A security interest held by a secured party having control of the deposit account under Section 9.104 has priority over a conflicting security interest held by a secured party that does not have control.

(2)   Except as otherwise provided in Subdivisions (3) and (4), security interests perfected by control under Section

9.314 rank according to priority in time of obtaining control.

(3)   Except as otherwise provided in Subdivision (4), a security interest held by the bank with which the deposit account is maintained has priority over a conflicting security interest held by another secured party.

(4)   A security interest perfected by control under Section 9.104(a)(3) has priority over a security interest held by the bank with which the deposit account is maintained.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.328.   PRIORITY OF SECURITY INTERESTS IN INVESTMENT PROPERTY.   The following rules govern priority among conflicting security interests in the same investment property:

(1)   A security interest held by a secured party having control of investment property under Section 9.106 has priority over a security interest held by a secured party that does not have control of the investment property.

(2)   Except as otherwise provided in Subdivisions (3) and (4), conflicting security interests held by secured parties each of which has control under Section 9.106 rank according to priority in time of:

(A)   if the collateral is a security, obtaining control;

(B)   if the collateral is a security entitlement carried in a securities account and:

(i)   if the secured party obtained control under Section 8.106(d)(1), the secured party's becoming the person for which the securities account is maintained;

(ii)   if the secured party obtained control under Section 8.106(d)(2), the securities intermediary's agreement to comply with the secured party's entitlement orders with respect to security entitlements carried or to be carried in the securities account; or

(iii)   if the secured party obtained control through another person under Section 8.106(d)(3), the time on which priority would be based under this subdivision if the other person

were the secured party; or

(C)   if the collateral is a commodity contract carried with a commodity intermediary, the satisfaction of the requirement for control specified in Section 9.106(b)(2) with respect to commodity contracts carried or to be carried with the commodity intermediary.

(3)   A security interest held by a securities intermediary in a security entitlement or a securities account maintained with the securities intermediary has priority over a conflicting security interest held by another secured party.

(4)   A security interest held by a commodity intermediary in a commodity contract or a commodity account maintained with the commodity intermediary has priority over a conflicting security interest held by another secured party.

(5)   A security interest in a certificated security in registered form that is perfected by taking delivery under Section 9.313(a) and not by control under Section 9.314 has priority over a conflicting security interest perfected by a method other than control.

(6)   Conflicting security interests created by a broker, securities intermediary, or commodity intermediary that are perfected without control under Section 9.106 rank equally.

(7)   In all other cases, priority among conflicting security interests in investment property is governed by Sections 9.322 and 9.323.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.329.   PRIORITY   OF   SECURITY   INTERESTS   IN LETTER-OF-CREDIT RIGHT.  The following rules govern priority among conflicting security interests in the same letter-of-credit right:

(1)   A security interest held by a secured party having control of the letter-of-credit right under Section 9.107 has priority to the extent of its control over a conflicting security interest held by a secured party that does not have control.

(2)   Security interests perfected by control under Section 9.314 rank according to priority in time of obtaining

control.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.

Sec. 9.330.  PRIORITY OF PURCHASER OF CHATTEL PAPER OR INSTRUMENT.  (a)  A purchaser of chattel paper has priority over a security interest in the chattel paper that is claimed merely as proceeds of inventory subject to a security interest if:

(1)  in good faith and in the ordinary course of the purchaser's business, the purchaser gives new value and takes possession of the chattel paper or obtains control of the chattel paper under Section 9.105; and

(2)  the chattel paper does not indicate that it has been assigned to an identified assignee other than the purchaser.

(b)  A purchaser of chattel paper has priority over a security interest in the chattel paper that is claimed other than merely as proceeds of inventory subject to a security interest if the purchaser gives new value and takes possession of the chattel paper or obtains control of the chattel paper under Section 9.105 in good faith, in the ordinary course of the purchaser's business, and without knowledge that the purchase violates the rights of the secured party.

(c)  Except as otherwise provided in Section 9.327, a purchaser having priority in chattel paper under Subsection (a) or (b) also has priority in proceeds of the chattel paper to the extent that:

(1)  Section 9.322 provides for priority in the proceeds; or

(2)  the proceeds consist of the specific goods covered by the chattel paper or cash proceeds of the specific goods, even if the purchaser's security interest in the proceeds is unperfected.

(d)  Except as otherwise provided in Section 9.331(a), a purchaser of an instrument has priority over a security interest in the instrument perfected by a method other than possession if the purchaser gives value and takes possession of the instrument in good faith and without knowledge that the purchase violates the rights of the secured party.

65

(e)  For purposes of Subsections (a) and (b), the holder of a purchase-money security interest in inventory gives new value for chattel paper constituting proceeds of the inventory.

(f)  For purposes of Subsections (b) and (d), if chattel paper or an instrument indicates that it has been assigned to an identified secured party other than the purchaser, a purchaser of the chattel paper or instrument has knowledge that the purchase violates the rights of the secured party.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.331.  PRIORITY   OF   RIGHTS   OF   PURCHASERS   OF INSTRUMENTS,  DOCUMENTS,  AND  SECURITIES  UNDER  OTHER  CHAPTERS; PRIORITY OF INTERESTS IN FINANCIAL ASSETS AND SECURITY ENTITLEMENTS UNDER CHAPTER 8.  (a)  This chapter does not limit the rights of a holder in due course of a negotiable instrument, a holder to which a negotiable  document  of  title  has  been  duly  negotiated,  or  a protected purchaser of a security.  These holders or purchasers take priority over an earlier security interest, even if perfected, to the extent provided in Chapters 3, 7, and 8.

(b)  This chapter does not limit the rights of or impose liability on a person to the extent that the person is protected against the assertion of a claim under Chapter 8.

(c)  Filing under this chapter does not constitute notice of a  claim  or  defense  to  the  holders,  or  purchasers,  or  persons described in Subsections (a) and (b).

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.  Amended by Acts 2001, 77th Leg., ch. 705, Sec. 8, eff. June 13, 2001.


Sec.  9.332.   TRANSFER  OF  MONEY;   TRANSFER  OF  FUNDS  FROM DEPOSIT ACCOUNT.  (a)  A transferee of money takes the money free of a  security  interest  unless  the  transferee  acts  in  collusion  with the debtor in violating the rights of the secured party.

(b)  A transferee of funds from a deposit account takes the funds free of a security interest in the deposit account unless the transferee  acts  in  collusion  with  the  debtor  in  violating  the

rights of the secured party.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.333.   PRIORITY OF CERTAIN LIENS ARISING BY OPERATION OF LAW.   (a)   In this section, "possessory lien" means an interest, other than a security interest or an agricultural lien:

(1)   that secures payment or performance of an obligation for services or materials furnished with respect to goods by a person in the ordinary course of the person's business;

(2)   that is created by statute or rule of law in favor of the person; and

(3)   whose effectiveness depends on the person's possession of the goods.

(b)   A possessory lien on goods has priority over a security interest in the goods unless the lien is created by a statute that expressly provides otherwise.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.334.   PRIORITY OF SECURITY INTERESTS IN FIXTURES AND CROPS.   (a)   A security interest under this chapter may be created in goods that are fixtures or may continue in goods that become fixtures.   A security interest does not exist under this chapter in ordinary building materials incorporated into an improvement on land.

(b)   This chapter does not prevent creation of an encumbrance upon fixtures under real property law.

(c)   In cases not governed by Subsections (d)-(h), a security interest in fixtures is subordinate to a conflicting interest of an encumbrancer or owner of the related real property other than the debtor.

(d)   Except as otherwise provided in Subsection (h), a perfected security interest in fixtures has priority over the conflicting interest of an encumbrancer or owner of the real property if the debtor has an interest of record in or is in possession of the real property and:

67

(1)   the security interest is a purchase-money security interest;

(2)   the interest of the encumbrancer or owner arises before the goods become fixtures;  and

(3)   the security interest is perfected by a fixture filing before the goods become fixtures or within 20 days thereafter.

(e)   A perfected security interest in fixtures has priority over a conflicting interest of an encumbrancer or owner of the real property if:

(1)   the debtor has an interest of record in the real property or is in possession of the real property and the security interest:

(A)   is perfected by a fixture filing before the interest of the encumbrancer or owner is of record;  and

(B)   has priority over any conflicting interest of a predecessor in title of the encumbrancer or owner;

(2)   before the goods become fixtures, the security interest is perfected by any method permitted by this chapter and the fixtures are readily removable:

(A)   factory or office machines;

(B)   equipment that is not primarily used or leased for use in the operation of the real property;  or

(C)   replacements of domestic appliances that are consumer goods;

(3)   the conflicting interest is a lien on the real property obtained by legal or equitable proceedings after the security interest was perfected by any method permitted by this chapter;  or

(4)   the security interest is:

(A)   created in a manufactured home in a manufactured-home transaction;  and

(B)   perfected pursuant to a statute described in Section 9.311(a)(2).

(f)   A security interest in fixtures, whether or not perfected, has priority over the conflicting interest of an encumbrancer or owner of the real property if:

(1)   the encumbrancer or owner has, in an authenticated record, consented to the security interest or disclaimed an interest in the goods as fixtures; or

(2)   the debtor has a right to remove the goods as against the encumbrancer or owner.

(g)   The priority of the security interest under Subsection (f)(2) continues for a reasonable time if the debtor's right to remove the goods as against the encumbrancer or owner terminates.

(h)   A mortgage is a construction mortgage to the extent that it secures an obligation incurred for the construction of an improvement on land, including the acquisition cost of the land, if a recorded record of the mortgage so indicates. Except as otherwise provided in Subsections (e) and (f), a security interest in fixtures is subordinate to a construction mortgage if a record of the mortgage is recorded before the goods become fixtures before the completion of the construction. A mortgage has this priority to the same extent as a construction mortgage to the extent that it is given to refinance a construction mortgage.

(i)   A perfected security interest in crops growing on real property has priority over a conflicting interest of an encumbrancer or owner of the real property if the debtor has an interest of record in or is in possession of the real property.
Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.  Amended by Acts 2001, 77th Leg., ch. 705, Sec. 9, eff. June 13, 2001.


Sec. 9.335.  ACCESSIONS.  (a)  A security interest may be created in an accession and continues in collateral that becomes an accession.

(b)   If a security interest is perfected when the collateral becomes an accession, the security interest remains perfected in the collateral.

(c)   Except as otherwise provided in Subsection (d), the other provisions of this subchapter determine the priority of a security interest in an accession.

(d)   A security interest in an accession is subordinate to a security interest in the whole that is perfected by compliance with

the requirements of a certificate-of-title statute under Section 9.311(b).

(e)  After default, subject to Subchapter F, a secured party may remove an accession from other goods if the security interest in the accession has priority over the claims of every person having an interest in the whole.

(f)  A secured party that removes an accession from other goods under Subsection (e) shall promptly reimburse any holder of a security interest or other lien on, or owner of, the whole or the other goods, other than the debtor, for the cost of repair of any physical injury to the whole or the other goods.  The secured party need not reimburse the holder or owner for any diminution in value of the whole or the other goods caused by the absence of the accession removed or by any necessity for replacing it. A person entitled to reimbursement may refuse permission to remove until the secured party gives adequate assurance for the performance of the obligation to reimburse.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.336.  COMMINGLED GOODS.   (a)   In this section, "commingled goods" means goods that are physically united with other goods in such a manner that their identity is lost in a product or mass.

(b)  A security interest does not exist in commingled goods as such.  However, a security interest may attach to a product or mass that results when goods become commingled goods.

(c)  If collateral becomes commingled goods, a security interest attaches to the product or mass.

(d)  If a security interest in collateral is perfected before the collateral becomes commingled goods, the security interest that attaches to the product or mass under Subsection (c) is perfected.

(e)  Except as otherwise provided in Subsection (f), the other provisions of this subchapter determine the priority of a security interest that attaches to the product or mass under Subsection (c).

(f)  If more than one security interest attaches to the

product or mass under Subsection (c), the following rules determine priority:

(1) A security interest that is perfected under Subsection (d) has priority over a security interest that is unperfected at the time the collateral becomes commingled goods.

(2) If more than one security interest is perfected under Subsection (d), the security interests rank equally in proportion to the value of the collateral at the time it became commingled goods.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.  Amended by Acts 2001, 77th Leg., ch. 705, Sec. 10, eff. June 13, 2001.


Sec. 9.337.  PRIORITY OF SECURITY INTERESTS IN GOODS COVERED BY CERTIFICATE OF TITLE.  If, while a security interest in goods is perfected by any method under the law of another jurisdiction, this state issues a certificate of title that does not show that the goods are subject to the security interest or contain a statement that they may be subject to security interests not shown on the certificate:

(1) a buyer of the goods, other than a person in the business of selling goods of that kind, takes free of the security interest if the buyer gives value and receives delivery of the goods after issuance of the certificate and without knowledge of the security interest; and

(2) the security interest is subordinate to a conflicting security interest in the goods that attaches, and is perfected under Section 9.311(b), after issuance of the certificate and without the conflicting secured party's knowledge of the security interest.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.338.  PRIORITY OF SECURITY INTEREST OR AGRICULTURAL LIEN PERFECTED BY FILED FINANCING STATEMENT PROVIDING CERTAIN INCORRECT INFORMATION.  If a security interest or agricultural lien is perfected by a filed financing statement providing information

described in Section 9.516(b)(5) that is incorrect at the time the financing statement is filed:

(1) the security interest or agricultural lien is subordinate to a conflicting perfected security interest in the collateral to the extent that the holder of the conflicting security interest gives value in reasonable reliance upon the incorrect information; and

(2) a purchaser, other than a secured party, of the collateral takes free of the security interest or agricultural lien to the extent that, in reasonable reliance upon the incorrect information, the purchaser gives value and, in the case of tangible chattel paper, tangible documents, goods, instruments, or a security certificate, receives delivery of the collateral.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.

Amended by:

Acts 2005, 79th Leg., Ch. 122, Sec. 29, eff. September 1, 2005.


Sec. 9.339. PRIORITY SUBJECT TO SUBORDINATION. This chapter does not preclude subordination by agreement by a person entitled to priority.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.340. EFFECTIVENESS OF RIGHT OF RECOUPMENT OR SET-OFF AGAINST DEPOSIT ACCOUNT. (a) Except as otherwise provided in Subsection (c), a bank with which a deposit account is maintained may exercise any right of recoupment or set-off against a secured party that holds a security interest in the deposit account.

(b) Except as otherwise provided in Subsection (c), the application of this chapter to a security interest in a deposit account does not affect a right of recoupment or set-off of the secured party as to a deposit account maintained with the secured party.

(c) The exercise by a bank of a set-off against a deposit account is ineffective against a secured party that holds a

security interest in the deposit account that is perfected by control under Section 9.104(a)(3), if the set-off is based on a claim against the debtor.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.341. BANK'S RIGHTS AND DUTIES WITH RESPECT TO DEPOSIT ACCOUNT. Except as otherwise provided in Section 9.340(c), and unless the bank otherwise agrees in an authenticated record, a bank's rights and duties with respect to a deposit account maintained with the bank are not terminated, suspended, or modified by:

(1) the creation, attachment, or perfection of a security interest in the deposit account;

(2) the bank's knowledge of the security interest; or

(3) the bank's receipt of instructions from the secured party.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.342. BANK'S RIGHT TO REFUSE TO ENTER INTO OR DISCLOSE EXISTENCE OF CONTROL AGREEMENT. This chapter does not require a bank to enter into an agreement of the kind described in Section 9.104(a)(2), even if its customer so requests or directs. A bank that has entered into such an agreement is not required to confirm the existence of the agreement to another person unless requested to do so by its customer.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.343. OIL AND GAS INTERESTS: SECURITY INTEREST PERFECTED WITHOUT FILING; STATUTORY LIEN. (a) This section provides a security interest in favor of interest owners, as secured parties, to secure the obligations of the first purchaser of oil and gas production, as debtor, to pay the purchase price. An authenticated record giving the interest owner a right under real property law operates as a security agreement created under this

chapter.  The act of the first purchaser in signing an agreement to purchase oil or gas production, in issuing a division order, or in making any other voluntary communication to the interest owner or any governmental agency recognizing the interest owner's right operates as an authentication of a security agreement in accordance with Section 9.203(b) for purposes of this chapter.

(b)  The security interest provided by this section is perfected automatically without the filing of a financing statement.  If the interest of the secured party is evidenced by a deed, mineral deed, reservation in either, oil or gas lease, assignment, or any other such record recorded in the real property records of a county clerk, that record is effective as a filed financing statement for purposes of this chapter, but no fee is required except a fee that is otherwise required by the county clerk, and there is no requirement of refiling every five years to maintain effectiveness of the filing.

(c)  The security interest exists in oil and gas production, and also in the identifiable proceeds of that production owned by, received by, or due to the first purchaser:

(1)  for an unlimited time if:

(A)  the proceeds are oil or gas production, inventory of raw, refined, or manufactured oil or gas production, or rights to or products of any of those, although the sale of those proceeds by a first purchaser to a buyer in the ordinary course of business as provided in Subsection (e) cuts off the security interest in those proceeds;

(B)  the proceeds are accounts, chattel paper, instruments, documents, or payment intangibles; or

(C)  the proceeds are cash proceeds, as defined in Section 9.102; and

(2)  for the length of time provided in Section 9.315 for all other proceeds.

(d)  This section creates a lien that secures the payment of all taxes that are or should be withheld or paid by the first purchaser and a lien that secures the rights of any person who would be entitled to a security interest under Subsection (a) except for lack of any adoption of a security agreement by the first purchaser

or a lack of possession or record required by Section 9.203 for the security interest to be enforceable.

(e) The security interests and liens created by this section have priority over any purchaser who is not a buyer in the ordinary course of the first purchaser's business, but are cut off by the sale to a buyer from the first purchaser who is in the ordinary course of the first purchaser's business under Section 9.320(a). But in either case, whether or not the buyer from the first purchaser is in ordinary course, a security interest will continue in the proceeds of the sale by the first purchaser as provided in Subsection (c).

(f) The security interests and all liens created by this section have the following priorities over other Chapter 9 security interests:

(1) A security interest created by this section is treated as a purchase-money security interest for purposes of determining its relative priority under Section 9.324 over other security interests not provided for by this section. A holder of a security interest created under this section is not required to give the written notice every five years as provided in Section 9.324(b)(3) to have purchase-money priority over a security interest with a prior financing statement covering inventory.

(2) A statutory lien is subordinate to all other perfected Chapter 9 security interests and has priority over unperfected Chapter 9 security interests and the lien creditors, buyers, and transferees mentioned in Section 9.317.

(g) The security interests and liens created by this section have the following priorities among themselves:

(1) If a record effective as a filed financing statement under Subsection (b) exists, the security interests perfected by that record have priority over a security interest automatically perfected without filing under Subsection (b). If several security interests perfected by records exist, they have the same priority among themselves as established by real property law for interests in oil and gas in place. If real property law establishes no priority among them, they share priority pro rata.

(2) A security interest perfected automatically

without filing under Subsection (b) has priority over a lien created under Subsection (d).

(3) A nontax lien under Subsection (d) has priority over a lien created under that subsection that secures the payment of taxes.

(h) The priorities for statutory liens mentioned in Section 9.333 do not apply to any security interest or statutory lien created by this section. But if a pipeline common carrier has a statutory or tariff lien that is effective and enforceable against a trustee in bankruptcy and not invalidated by the Federal Tax Lien Act, that lien has priority over the security interests and statutory liens created by this section.

(i) If oil or gas production in which there are security interests or statutory liens created by this section is commingled with inventory or other production, the rules of Section 9.336 apply.

(j) A security interest or statutory lien created by this section remains effective against the debtor and perfected against the debtor's creditors even if assigned, regardless of whether the assignment is perfected against the assignor's creditors. If a deed, mineral deed, assignment of oil and gas lease, or other such record evidencing the assignment is filed in the real property records of the county, it will have the same effect as filing an amended financing statement under Section 9.514.

(k) This section does not impair an operator's right to set-off or withhold funds from other interest owners as security for or in satisfaction of any debt or security interest. In case of a dispute between an operator and another interest owner, a good faith tender of funds by anyone to the person who the operator and other interest owner agree on, to a person who otherwise shows himself or herself to be the one entitled to the funds, or to a court of competent jurisdiction in the event of litigation or bankruptcy operates as a tender of the funds to both.

(l) A first purchaser who acts in good faith may terminate an interest owner's security interest or statutory lien under this section by paying, or by making and keeping open a tender of, the amount the first purchaser believes to be due to the interest owner:

**EXHIBIT 241**

      (1)   if the interest owner's rights are to oil or gas production or its proceeds, either to the operator alone, in which event the operator is considered the first purchaser, or to some combination of the interest owner and the operator, as the first purchaser chooses;

      (2)   whatever the nature of the production to which the interest owner has rights, to the person that the interest owner agreed to or acquiesced in;  or

      (3)   to a court of competent jurisdiction in the event of litigation or bankruptcy.

    (m)   A person who buys from a first purchaser can ensure that the person buys free and clear of an interest owner's security interest or statutory lien under this section:

      (1)   by buying in the ordinary course of the first purchaser's business from the first purchaser under Section 9.320(a);

      (2)   by obtaining the interest owner's consent to the sale under Section 9.315(a)(1);

      (3)   by ensuring that the first purchaser has paid the interest owner or, provided that gas production is involved, or the interest owner has so agreed or acquiesced, by ensuring that the first purchaser has paid the interest owner's operator;  or

      (4)   by ensuring that the person or the first purchaser or some other person has withheld funds sufficient to pay amounts in dispute and has maintained a tender of those funds to whoever shows himself or herself to be the person entitled.

    (n)   If a tender under Subsection (m)(4) that is valid thereafter fails, the security interest and liens governed by this section remain effective.

    (o)   In addition to the usual remedy of sequestration available to secured parties, and the remedies given in Subchapter F, the holders of security interests and liens created by this section have available to them, to the extent constitutionally permitted, the remedies of replevin, attachment, and garnishment to assist them in realizing upon their rights.

    (p)   The rights of any person claiming under a security interest or lien created by this section are governed by the other

provisions of this chapter except to the extent that this section necessarily displaces those provisions. This section does not invalidate or otherwise affect the interests of any person in any real property before severance of any oil or gas production.

(q)  The security interest created under Subsections (a) and (b) do not apply to proceeds of gas production that have been withheld, in cash or account form, by a purchaser under Section 201.204(c), Tax Code.

(r)  In this section:

(1)  "Oil and gas production" means any oil, natural gas, condensate of either, natural gas liquids, other gaseous, liquid, or dissolved hydrocarbons, sulfur, or helium, or other substance produced as a by-product or adjunct to their production, or any combination of these, which is severed, extracted, or produced from the ground, the seabed, or other submerged lands within the jurisdiction of this state. Any such substance, including recoverable or recovered natural gas liquids, that is transported to or in a natural gas pipeline or natural gas gathering system, or otherwise transported or sold for use as natural gas, or is transported or sold for the extraction of helium or natural gas liquids is "gas production." Any such substance that is transported or sold to persons and for purposes not included in the foregoing natural gas definition is "oil production."

(2)  "Interest owner" means a person owning an entire or fractional interest of any kind or nature in oil or gas production at the time of severance, or a person who has an express, implied, or constructive right to receive a monetary payment determined by the value of oil or gas production or by the amount of production.

(3)  "First purchaser" means the first person that purchases oil or gas production from an operator or interest owner after the production is severed, or an operator that receives production proceeds from a third-party purchaser who acts in good faith under a division order or other agreement authenticated by the operator under which the operator collects proceeds of production on behalf of other interest owners. To the extent the operator receives proceeds attributable to the interest of other

interest owners from a third-party purchaser who acts in good faith under a division order or other agreement authenticated by such operator, the operator is considered to be the first purchaser of the production for all purposes under this section, notwithstanding the characterization of other persons as first purchasers under other laws or regulations.   To the extent the operator has not received from the third-party purchaser proceeds attributable to the operator's interest and the interest of other interest owners, the operator is not considered the first purchaser for the purposes of this section and is entitled to all rights and benefits under this section. Nothing in this section impairs or affects any rights otherwise held by a royalty owner to take its share of oil in kind or receive payment directly from a third-party purchaser for the royalty owner's share of oil production with or without a previously made agreement.

(4)  "Operator" means a person engaged in the business of severing oil or gas production from the ground, whether for the person alone, only for other persons, or for the person and others. Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


SUBCHAPTER D. RIGHTS OF THIRD PARTIES


Sec. 9.401.  ALIENABILITY OF DEBTOR'S RIGHTS.  (a) Except as otherwise provided in Subsection (b) and Sections 9.406, 9.407, 9.408, and 9.409, whether a debtor's rights in collateral may be voluntarily or involuntarily transferred is governed by law other than this chapter.

(b)  An agreement between the debtor and secured party that prohibits a transfer of the debtor's rights in collateral or makes the transfer a default does not prevent the transfer from taking effect.
Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.402.  SECURED PARTY NOT OBLIGATED ON CONTRACT OF DEBTOR OR IN TORT.   The existence of a security interest,

agricultural lien, or authority given to a debtor to dispose of or use collateral, without more, does not subject a secured party to liability in contract or tort for the debtor's acts or omissions. Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.

Sec. 9.403.   AGREEMENT NOT TO ASSERT DEFENSES AGAINST ASSIGNEE.  (a)  In this section, "value" has the meaning provided in Section 3.303(a).

(b)  Except as otherwise provided in this section, an agreement between an account debtor and an assignor not to assert against an assignee any claim or defense that the account debtor may have against the assignor is enforceable by an assignee that takes an assignment:

(1)  for value;

(2)  in good faith;

(3)  without notice of a claim of a property or possessory right to the property assigned;  and

(4)  without notice of a defense or claim in recoupment of the type that may be asserted against a person entitled to enforce a negotiable instrument under Section 3.305(a).

(c)  Subsection (b) does not apply to defenses of a type that may be asserted against a holder in due course of a negotiable instrument under Section 3.305(b).

(d)  In a consumer transaction, if a record evidences the account debtor's obligation, law other than this chapter requires that the record include a statement to the effect that the rights of an assignee are subject to claims or defenses that the account debtor could assert against the original obligee, and the record does not include such a statement:

(1)  the record has the same effect as if the record included such a statement;  and

(2)  the account debtor may assert against an assignee those claims and defenses that would have been available if the record included such a statement.

(e)  This section is subject to law other than this chapter that establishes a different rule for an account debtor who is an

individual and who incurred the obligation primarily for personal, family, or household purposes.

(f)  Except as otherwise provided in Subsection (d), this section does not displace law other than this chapter that gives effect to an agreement by an account debtor not to assert a claim or defense against an assignee.

Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.404.  RIGHTS ACQUIRED BY ASSIGNEE;  CLAIMS AND DEFENSES AGAINST ASSIGNEE.  (a)  Unless an account debtor has made an enforceable agreement not to assert defenses or claims, and subject to Subsections (b)-(e), the rights of an assignee are subject to:

(1)  all terms of the agreement between the account debtor and assignor and any defense or claim in recoupment arising from the transaction that gave rise to the contract;  and

(2)  any other defense or claim of the account debtor against the assignor that accrues before the account debtor receives a notification of the assignment authenticated by the assignor or the assignee.

(b)  Subject to Subsection (c) and except as otherwise provided in Subsection (d), the claim of an account debtor against an assignor may be asserted against an assignee under Subsection (a) only to reduce the amount the account debtor owes.

(c)  This section is subject to law other than this chapter that establishes a different rule for an account debtor who is an individual and who incurred the obligation primarily for personal, family, or household purposes.

(d)  In a consumer transaction, if a record evidences the account debtor's obligation, law other than this chapter requires that the record include a statement to the effect that the account debtor's recovery against an assignee with respect to claims and defenses against the assignor may not exceed amounts paid by the account debtor under the record, and the record does not include such a statement, the extent to which a claim of an account debtor against the assignor may be asserted against an assignee is

determined as if the record included such a statement.

(e)  This section does not apply to an assignment of a health-care-insurance receivable.

Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.405.  MODIFICATION OF ASSIGNED CONTRACT.  (a)  A modification of or substitution for an assigned contract is effective against an assignee if made in good faith.  The assignee acquires corresponding rights under the modified or substituted contract.  The assignment may provide that the modification or substitution is a breach of contract by the assignor.  This subsection is subject to Subsections (b)-(d).

(b)  Subsection (a) applies to the extent that:

(1)  the right to payment or a part thereof under an assigned contract has not been fully earned by performance;  or

(2)  the right to payment or a part thereof has been fully earned by performance and the account debtor has not received notification of the assignment under Section 9.406(a).

(c)  This section is subject to law other than this chapter that establishes a different rule for an account debtor who is an individual and who incurred the obligation primarily for personal, family, or household purposes.

(d)  This section does not apply to an assignment of a health-care-insurance receivable.

Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.406.  DISCHARGE OF ACCOUNT DEBTOR;  NOTIFICATION OF ASSIGNMENT;  IDENTIFICATION AND PROOF OF ASSIGNMENT;  RESTRICTIONS ON ASSIGNMENT OF ACCOUNTS, CHATTEL PAPER, PAYMENT INTANGIBLES, AND PROMISSORY NOTES INEFFECTIVE.  (a)  Subject to Subsections (b)-(i), an account debtor on an account, chattel paper, or a payment intangible may discharge its obligation by paying the assignor until, but not after, the account debtor receives a notification, authenticated by the assignor or the assignee, that the amount due or to become due has been assigned and that payment is to be made to

the assignee. After receipt of the notification, the account debtor may discharge its obligation by paying the assignee and may not discharge the obligation by paying the assignor.

(b)  Subject to Subsection (h), notification is ineffective under Subsection (a):

(1)  if it does not reasonably identify the rights assigned;

(2)  to the extent that an agreement between an account debtor and a seller of a payment intangible limits the account debtor's duty to pay a person other than the seller and the limitation is effective under law other than this chapter; or

(3)  at the option of an account debtor, if the notification notifies the account debtor to make less than the full amount of any installment or other periodic payment to the assignee, even if:

(A)  only a portion of the account, chattel paper, or payment intangible has been assigned to that assignee;

(B)  a portion has been assigned to another assignee; or

(C)  the account debtor knows that the assignment to that assignee is limited.

(c)  Subject to Subsection (h), if requested by the account debtor, an assignee shall seasonably furnish reasonable proof that the assignment has been made. Unless the assignee complies, the account debtor may discharge its obligation by paying the assignor, even if the account debtor has received a notification under Subsection (a).

(d)  Except as otherwise provided in Subsection (e) and Sections 2A.303 and 9.407, and subject to Subsection (h), a term in an agreement between an account debtor and an assignor or in a promissory note is ineffective to the extent that it:

(1)  prohibits, restricts, or requires the consent of the account debtor or person obligated on the promissory note to the assignment or transfer of, or the creation, attachment, perfection, or enforcement of a security interest in, the account, chattel paper, payment intangible, or promissory note; or

(2)  provides that the assignment or transfer or the

83

creation, attachment, perfection, or enforcement of the security interest may give rise to a default, breach, right of recoupment, claim, defense, termination, right of termination, or remedy under the account, chattel paper, payment intangible, or promissory note.

(e)    Subsection (d) does not apply to the sale of a payment intangible or promissory note.

(f)    Except as otherwise provided in Sections 2A.303 and 9.407, and subject to Subsections (h) and (i), a rule of law, statute, or regulation that prohibits, restricts, or requires the consent of a government, governmental body or official, or account debtor to the assignment or transfer of, or creation of a security interest in, an account or chattel paper is ineffective to the extent that the rule of law, statute, or regulation:

(1)    prohibits, restricts, or requires the consent of the government, governmental body or official, or account debtor to the assignment or transfer of, or the creation, attachment, perfection, or enforcement of a security interest in, the account or chattel paper; or

(2)    provides that the assignment or transfer or the creation, attachment, perfection, or enforcement of the security interest may give rise to a default, breach, right of recoupment, claim, defense, termination, right of termination, or remedy under the account or chattel paper.

(g)    Subject to Subsection (h), an account debtor may not waive or vary its option under Subsection (b)(3).

(h)    This section is subject to law other than this chapter that establishes a different rule for an account debtor who is an individual and who incurred the obligation primarily for personal, family, or household purposes.

(i)    This section does not apply to an assignment of a health-care-insurance receivable.

(j)    This section does not apply to an interest in a partnership or limited liability company.

Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001; Acts 2001, 77th Leg., ch. 705, Sec. 11, eff. June 13, 2001.

Amended by:

Acts 2009, 81st Leg., R.S., Ch. 84, Sec. 60, eff. September 1,

2009.


Sec. 9.407.   RESTRICTIONS  ON  CREATION  OR  ENFORCEMENT  OF
SECURITY  INTEREST  IN  LEASEHOLD  INTEREST  OR  IN  LESSOR'S  RESIDUAL
INTEREST.   (a)  Except  as  otherwise  provided  in  Subsection  (b),  a
term in a lease agreement is ineffective to the extent that it:

(1)  prohibits, restricts, or requires the consent of a
party  to  the  lease  to  the  assignment  or  transfer  of,  or  the
creation,  attachment,  perfection,  or  enforcement  of  a  security
interest in, an interest of a party under the lease contract or in
the lessor's residual interest in the goods;  or

(2)  provides  that  the  assignment  or  transfer  or  the
creation,  attachment,  perfection,  or  enforcement  of  the  security
interest may give rise to a default, breach, right of recoupment,
claim, defense, termination, right of termination, or remedy under
the lease.

(b)  Except  as  otherwise  provided  in  Section  2A.303(g),  a
term described in Subsection (a)(2) is effective to the extent that
there is:

(1)  a transfer by the lessee of the lessee's right of
possession or use of the goods in violation of the term;  or

(2)  a delegation of a material performance of either
party to the lease contract in violation of the term.

(c)  The creation, attachment, perfection, or enforcement of
a  security  interest  in  the  lessor's  interest  under  the  lease
contract or the lessor's residual interest in the goods is not a
transfer that materially impairs the lessee's prospect of obtaining
return performance or materially changes the duty of or materially
increases  the  burden  or  risk  imposed  on  the  lessee  within  the
purview of Section 2A.303(d) unless, and then only to the extent
that,  enforcement  actually  results  in  a  delegation  of  material
performance of the lessor.
Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1,
2001; Acts 2001, 77th Leg., ch. 705, Sec. 12, eff. June 13, 2001.


Sec. 9.408.   RESTRICTIONS ON ASSIGNMENT OF PROMISSORY NOTES,
HEALTH-CARE-INSURANCE RECEIVABLES, AND CERTAIN GENERAL INTANGIBLES

INEFFECTIVE. (a) Except as otherwise provided in Subsection (b), a term in a promissory note or in an agreement between an account debtor and a debtor that relates to a health-care-insurance receivable or a general intangible, including a contract, permit, license, or franchise, and which term prohibits, restricts, or requires the consent of the person obligated on the promissory note or the account debtor to, the assignment or transfer of, or creation, attachment, or perfection of a security interest in, the promissory note, health-care-insurance receivable, or general intangible, is ineffective to the extent that the term:

(1) would impair the creation, attachment, or perfection of a security interest; or

(2) provides that the assignment or transfer or the creation, attachment, or perfection of the security interest may give rise to a default, breach, right of recoupment, claim, defense, termination, right of termination, or remedy under the promissory note, health-care-insurance receivable, or general intangible.

(b) Subsection (a) applies to a security interest in a payment intangible or promissory note only if the security interest arises out of a sale of the payment intangible or promissory note.

(c) A rule of law, statute, or regulation that prohibits, restricts, or requires the consent of a government, governmental body or official, person obligated on a promissory note, or account debtor to the assignment or transfer of, or creation of a security interest in, a promissory note, health-care-insurance receivable, or general intangible, including a contract, permit, license, or franchise between an account debtor and a debtor, is ineffective to the extent that the rule of law, statute, or regulation:

(1) would impair the creation, attachment, or perfection of a security interest; or

(2) provides that the assignment or transfer or the creation, attachment, or perfection of the security interest may give rise to a default, breach, right of recoupment, claim, defense, termination, right of termination, or remedy under the promissory note, health-care-insurance receivable, or general intangible.

(d)  To the extent that a term in a promissory note or in an agreement between an account debtor and a debtor that relates to a health-care-insurance receivable or general intangible or a rule of law, statute, or regulation described in Subsection (c) would be effective under law other than this chapter but is ineffective under Subsection (a) or (c), the creation, attachment, or perfection of a security interest in the promissory note, health-care-insurance receivable, or general intangible:

(1)  is not enforceable against the person obligated on the promissory note or the account debtor;

(2)  does not impose a duty or obligation on the person obligated on the promissory note or the account debtor;

(3)  does not require the person obligated on the promissory note or the account debtor to recognize the security interest, pay or render performance to the secured party, or accept payment or performance from the secured party;

(4)  does not entitle the secured party to use or assign the debtor's rights under the promissory note, health-care-insurance receivable, or general intangible, including any related information or materials furnished to the debtor in the transaction giving rise to the promissory note, health-care-insurance receivable, or general intangible;

(5)  does not entitle the secured party to use, assign, possess, or have access to any trade secrets or confidential information of the person obligated on the promissory note or the account debtor; and

(6)  does not entitle the secured party to enforce the security interest in the promissory note, health-care-insurance receivable, or general intangible.

(e)  This section does not apply to an interest in a partnership or limited liability company.

Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001; Acts 2001, 77th Leg., ch. 705, Sec. 13, eff. June 13, 2001.

Amended by:

Acts 2009, 81st Leg., R.S., Ch. 84, Sec. 61, eff. September 1, 2009.

Sec. 9.409.   RESTRICTIONS ON ASSIGNMENT OF LETTER-OF-CREDIT
RIGHTS INEFFECTIVE.   (a)   A term in a letter of credit or a rule of
law, statute, regulation, custom, or practice applicable to the
letter of credit that prohibits, restricts, or requires the consent
of an applicant, issuer, or nominated person to a beneficiary's
assignment of or creation of a security interest in a
letter-of-credit right is ineffective to the extent that the term
or rule of law, statute, regulation, custom, or practice:

(1)   would impair the creation, attachment, or
perfection of a security interest in the letter-of-credit right;
or

(2)   provides that the assignment or the creation,
attachment, or perfection of the security interest may give rise to
a default, breach, right of recoupment, claim, defense,
termination, right of termination, or remedy under the
letter-of-credit right.

(b)   To the extent that a term in a letter of credit is
ineffective under Subsection (a) but would be effective under law
other than this chapter or a custom or practice applicable to the
letter of credit, to the transfer of a right to draw or otherwise
demand performance under the letter of credit, or to the assignment
of a right to proceeds of the letter of credit, the creation,
attachment, or perfection of a security interest in the
letter-of-credit right:

(1)   is not enforceable against the applicant, issuer,
nominated person, or transferee beneficiary;

(2)   imposes no duties or obligations on the applicant,
issuer, nominated person, or transferee beneficiary; and

(3)   does not require the applicant, issuer, nominated
person, or transferee beneficiary to recognize the security
interest, pay or render performance to the secured party, or accept
payment or other performance from the secured party.

Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1,
2001; Acts 2001, 77th Leg., ch. 705, Sec. 14, eff. June 13, 2001.


SUBCHAPTER E. FILING

Sec. 9.501.   FILING   OFFICE.   (a)   Except   as   otherwise
provided in Subsection (b), if the local law of this state governs
perfection of a security interest or agricultural lien, the office
in   which   to   file   a   financing   statement   to   perfect   the   security
interest or agricultural lien is:

(1)   the office designated for the filing or recording
of a record of a mortgage on the related real property, if:

(A)   the collateral is as-extracted collateral or
timber to be cut; or

(B)   the financing statement is filed as a fixture
filing   and   the   collateral   is   goods   that   are   or   are   to   become
fixtures; or

(2)   the office of the Secretary of State, in all other
cases, including a case in which the collateral is goods that are or
are to become fixtures and the financing statement is not filed as a
fixture filing.

(b)   The office   in which to file a financing statement to
perfect a security interest in collateral, including fixtures, of a
transmitting utility is the office of the Secretary of State.   The
financing   statement   also   constitutes   a   fixture   filing   as   to   the
collateral   indicated   in   the   financing   statement   that   is   or   is   to
become fixtures.

Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1,
2001.


Sec. 9.502.   CONTENTS OF FINANCING STATEMENT;   RECORD OF
MORTGAGE   AS   FINANCING   STATEMENT;      TIME   OF   FILING   FINANCING
STATEMENT. (a) Subject to Subsection (b), a financing statement is
sufficient only if it:

(1)   provides the name of the debtor;

(2)   provides   the   name   of   the   secured   party   or   a
representative of the secured party; and

(3)   indicates the collateral covered by the financing
statement.

(b)   Except as otherwise provided in Section 9.501(b), to be
sufficient,   a   financing   statement   that   covers   as-extracted
collateral or timber to be cut, or that is filed as a fixture filing

89

and covers goods that are or are to become fixtures, must satisfy Subsection (a) and also:

(1)  indicate that it covers this type of collateral;

(2)  indicate that it is to be filed for record in the real property records;

(3)  provide a description of the real property to which the collateral is related sufficient to give constructive notice of a mortgage under the law of this state if the description were contained in a record of the mortgage of the real property; and

(4)  if the debtor does not have an interest of record in the real property, provide the name of a record owner.

(c)  A record of a mortgage is effective, from the date of recording, as a financing statement filed as a fixture filing or as a financing statement covering as-extracted collateral or timber to be cut only if:

(1)  the record indicates the goods or accounts that it covers;

(2)  the goods are or are to become fixtures related to the real property described in the record or the collateral is related to the real property described in the record and is as-extracted collateral or timber to be cut;

(3)  the record satisfies the requirements for a financing statement in this section other than an indication that it is to be filed in the real property records; and

(4)  the record is duly recorded.

(d)  A financing statement may be filed before a security agreement is made or a security interest otherwise attaches.
Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.503.  NAME OF DEBTOR AND SECURED PARTY.  (a)  A financing statement sufficiently provides the name of the debtor:

(1)  if the debtor is a registered organization, only if the financing statement provides the name of the debtor indicated on the debtor's formation documents that are filed of public record in the debtor's jurisdiction of organization to

create the registered organization and that show the debtor to have been organized, including any amendments to those documents for the express purpose of amending the debtor's name;

(2)  if the debtor is a decedent's estate, only if the financing statement provides the name of the decedent and indicates that the debtor is an estate;

(3)  if the debtor is a trust or a trustee acting with respect to property held in trust, only if the financing statement:

(A)  provides the name specified for the trust in its organic documents or, if no name is specified, provides the name of the settlor and additional information sufficient to distinguish the debtor from other trusts having one or more of the same settlors; and

(B)  indicates, in the debtor's name or otherwise, that the debtor is a trust or is a trustee acting with respect to property held in trust;

(4)  if the debtor is an individual, if the financing statement provides the individual's name shown on the individual's driver's license or identification certificate issued by the individual's state of residence; and

(5)  in other cases:

(A)  if the debtor has a name, only if the financing statement provides the individual or organizational name of the debtor; and

(B)  if the debtor does not have a name, only if the financing statement provides the names of the partners, members, associates, or other persons comprising the debtor.

(b)  A financing statement that provides the name of the debtor in accordance with Subsection (a) is not rendered ineffective by the absence of:

(1)  a trade name or other name of the debtor; or

(2)  unless required under Subsection (a)(4)(B), names of partners, members, associates, or other persons comprising the debtor.

(c)  A financing statement that provides only the debtor's trade name does not sufficiently provide the name of the debtor.

(d)  Failure to indicate the representative capacity of a

secured party or representative of a secured party does not affect the sufficiency of a financing statement.

(e)  A financing statement may provide the name of more than one debtor and the name of more than one secured party.

Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.

Amended by:

Acts 2007, 80th Leg., R.S., Ch. 565, Sec. 1, eff. June 16, 2007.


Sec. 9.504.  INDICATION  OF  COLLATERAL.   A  financing statement sufficiently indicates the collateral that it covers if the financing statement provides:

(1)  a  description  of  the  collateral  pursuant  to Section 9.108; or

(2)  an indication that the financing statement covers all assets or all personal property.

Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001; Acts 2001, 77th Leg., ch. 705, Sec. 15, eff. June 13, 2001.


Sec. 9.505.  FILING AND COMPLIANCE WITH OTHER STATUTES AND TREATIES FOR CONSIGNMENTS, LEASES, OTHER BAILMENTS, AND OTHER TRANSACTIONS. (a) A consignor, lessor, or other bailor of goods, a licensor, or a buyer of a payment intangible or promissory note may file a financing statement, or may comply with a statute or treaty described  in  Section  9.311(a),  using  the  terms  "consignor," "consignee," "lessor," "lessee," "bailor," "bailee," "licensor," "licensee," "owner," "registered owner," "buyer," or "seller," or words of similar import, instead of the terms "secured party" and "debtor."

(b)  This subchapter applies to the filing of a financing statement under Subsection (a) and, as appropriate, to compliance that is equivalent to filing a financing statement under Section 9.311(b), but the filing or compliance is not of itself a factor in determining whether the collateral secures an obligation.  If it is determined  for  another  reason  that  the  collateral  secures  an obligation, a security interest held by the consignor, lessor,

bailor, licensor, owner, or buyer that attaches to the collateral is perfected by the filing or compliance.

Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.506.  EFFECT OF ERRORS OR OMISSIONS.  (a) A financing statement substantially satisfying the requirements of this subchapter is effective, even if it has minor errors or omissions, unless the errors or omissions make the financing statement seriously misleading.

(b)  Except as otherwise provided in Subsection (c), a financing statement that fails sufficiently to provide the name of the debtor in accordance with Section 9.503(a) is seriously misleading.

(c)  If a search of the records of the filing office under the debtor's correct name, using the filing office's standard search logic, if any, would disclose a financing statement that fails sufficiently to provide the name of the debtor in accordance with Section 9.503(a), the name provided does not make the financing statement seriously misleading.

(d)  For purposes of Section 9.508(b), the "debtor's correct name" in Subsection (c) means the correct name of the new debtor.

Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.507.  EFFECT OF CERTAIN EVENTS ON EFFECTIVENESS OF FINANCING STATEMENT.  (a)  A filed financing statement remains effective with respect to collateral that is sold, exchanged, leased, licensed, or otherwise disposed of and in which a security interest or agricultural lien continues, even if the secured party knows of or consents to the disposition.

(b)  Except as otherwise provided in Subsection (c) and Section 9.508, a financing statement is not rendered ineffective if, after the financing statement is filed, the information provided in the financing statement becomes seriously misleading under Section 9.506.

(c)  If a debtor so changes its name that a filed financing

statement becomes seriously misleading under Section 9.506:

(1)  the financing statement is effective to perfect a security interest in collateral acquired by the debtor before, or within four months after, the change;  and

(2)  the financing statement is not effective to perfect a security interest in collateral acquired by the debtor more than four months after the change, unless an amendment to the financing statement that renders the financing statement not seriously misleading is filed within four months after the change. Amended by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.

Sec. 9.508.  EFFECTIVENESS OF FINANCING STATEMENT IF NEW DEBTOR BECOMES BOUND BY SECURITY AGREEMENT.  (a)  Except as otherwise provided in this section, a filed financing statement naming an original debtor is effective to perfect a security interest in collateral in which a new debtor has or acquires rights to the extent that the financing statement would have been effective had the original debtor acquired rights in the collateral.

(b)  If the difference between the name of the original debtor and that of the new debtor causes a filed financing statement that is effective under Subsection (a) to be seriously misleading under Section 9.506:

(1)  the financing statement is effective to perfect a security interest in collateral acquired by the new debtor before, and within four months after, the new debtor becomes bound under Section 9.203(d); and

(2)  the financing statement is not effective to perfect a security interest in collateral acquired by the new debtor more than four months after the new debtor becomes bound under Section 9.203(d) unless an initial financing statement providing the name of the new debtor is filed before the expiration of that time.

(c)  This section does not apply to collateral as to which a filed financing statement remains effective against the new debtor under Section 9.507(a).

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.509.   PERSONS ENTITLED TO FILE A RECORD.   (a)   A person may file an initial financing statement, amendment that adds collateral covered by a financing statement, or amendment that adds a debtor to a financing statement only if:

(1)   the debtor authorizes the filing in an authenticated record or pursuant to Subsection (b) or (c); or

(2)   the person holds an agricultural lien that has become effective at the time of filing and the financing statement covers only collateral in which the person holds an agricultural lien.

(b)   By authenticating or becoming bound as debtor by a security agreement, a debtor or new debtor authorizes the filing of an initial financing statement, and an amendment, covering:

(1)   the collateral described in the security agreement; and

(2)   property that becomes collateral under Section 9.315(a)(2), whether or not the security agreement expressly covers proceeds.

(c)   By acquiring collateral in which a security interest or agricultural lien continues under Section 9.315(a)(1), a debtor authorizes the filing of an initial financing statement, and an amendment, covering the collateral and property that becomes collateral under Section 9.315(a)(2).

(d)   A person may file an amendment other than an amendment that adds collateral covered by a financing statement or an amendment that adds a debtor to a financing statement only if:

(1)   the secured party of record authorizes the filing; or

(2)   the amendment is a termination statement for a financing statement as to which the secured party of record has failed to file or send a termination statement as required by Section 9.513(a) or (c), the debtor authorizes the filing, and the termination statement indicates that the debtor authorized it to be filed.

95

(e)  If there is more than one secured party of record for a financing statement, each secured party of record may authorize the filing of an amendment under Subsection (d).

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.  Amended by Acts 2001, 77th Leg., ch. 705, Sec. 16, eff. June 13, 2001.


Sec. 9.510.  EFFECTIVENESS OF FILED RECORD.  (a)  A filed record is effective only to the extent that it was filed by a person that may file it under Section 9.509.

(b)  A record authorized by one secured party of record does not affect the financing statement with respect to another secured party of record.

(c)  A continuation statement that is not filed within the six-month period prescribed by Section 9.515(d) is ineffective.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.511.  SECURED PARTY OF RECORD.  (a)  A secured party of record with respect to a financing statement is a person whose name is provided as the name of the secured party or a representative of the secured party in an initial financing statement that has been filed.  If an initial financing statement is filed under Section 9.514(a), the assignee named in the initial financing statement is the secured party of record with respect to the financing statement.

(b)  If an amendment of a financing statement that provides the name of a person as a secured party or a representative of a secured party is filed, the person named in the amendment is a secured party of record.  If an amendment is filed under Section 9.514(b), the assignee named in the amendment is a secured party of record.

(c)  A person remains a secured party of record until the filing of an amendment of the financing statement that deletes the person.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.

Sec. 9.512.  AMENDMENT OF FINANCING STATEMENT.  (a)  Subject to Section 9.509, a person may add or delete collateral covered by, continue or terminate the effectiveness of, or, subject to Subsection (e), otherwise amend the information provided in a financing statement by filing an amendment that:

(1)  identifies, by its file number, the initial financing statement to which the amendment relates; and

(2)  if the amendment relates to an initial financing statement filed or recorded in a filing office described in Section 9.501(a)(1), provides the information specified in Section 9.502(b).

(b)  Except as otherwise provided in Section 9.515, the filing of an amendment does not extend the period of effectiveness of the financing statement.

(c)  A financing statement that is amended by an amendment that adds collateral is effective as to the added collateral only from the date of the filing of the amendment.

(d)  A financing statement that is amended by an amendment that adds a debtor is effective as to the added debtor only from the date of the filing of the amendment.

(e)  An amendment is ineffective to the extent it:

(1)  purports to delete all debtors and fails to provide the name of a debtor to be covered by the financing statement; or

(2)  purports to delete all secured parties of record and fails to provide the name of a new secured party of record.

(f)  A secured party may change the name or mailing address of the secured party in more than one financing statement by filing a master amendment setting forth the name of the secured party and file number of each financing statement and the new name or mailing address of the secured party.  The secured party must also provide filing information in computer-readable form prescribed by the Secretary of State.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.

Sec. 9.513.    TERMINATION STATEMENT.    (a)    A secured party shall cause the secured party of record for a financing statement to file a termination statement for the financing statement if the financing statement covers consumer goods and:

(1)    there is no obligation secured by the collateral covered by the financing statement and no commitment to make an advance, incur an obligation, or otherwise give value; or

(2)    the debtor did not authorize the filing of the initial financing statement.

(b)    To comply with Subsection (a), a secured party shall cause the secured party of record to file the termination statement:

(1)    within one month after there is no obligation secured by the collateral covered by the financing statement and no commitment to make advances, incur an obligation, or otherwise give value; or

(2)    if earlier, within 20 days after the secured party receives an authenticated demand from a debtor.

(c)    In cases not governed by Subsection (a), within 20 days after a secured party receives an authenticated demand from a debtor, the secured party shall cause the secured party of record for a financing statement to send the debtor a termination statement for the financing statement or file the termination statement in the filing office if:

(1)    except in the case of a financing statement covering accounts or chattel paper that has been sold or goods that are the subject of a consignment, there is no obligation secured by the collateral covered by the financing statement and no commitment to make an advance, incur an obligation, or otherwise give value;

(2)    the financing statement covers accounts or chattel paper that has been sold but as to which the account debtor or other person obligated has discharged its obligation;

(3)    the financing statement covers goods that were the subject of a consignment to the debtor but are not in the debtor's possession; or

(4)    the debtor did not authorize the filing of the initial financing statement.

(d)  Except as otherwise provided in Section 9.510, upon the filing of a termination statement with the filing office, the financing statement to which the termination statement relates ceases to be effective.  Except as otherwise provided in Section 9.510, for purposes of Sections 9.519(g), 9.522(a), and 9.523(c), the filing with the filing office of a termination statement relating to a financing statement that indicates that the debtor is a transmitting utility also causes the effectiveness of the financing statement to lapse.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.  Amended by Acts 2001, 77th Leg., ch. 705, Sec. 17, eff. June 13, 2001.

Sec. 9.514.  ASSIGNMENT  OF  POWERS  OF  SECURED  PARTY  OF RECORD.  (a)  Except as otherwise provided in Subsection (c), an initial financing statement may reflect an assignment of all of the secured party's power to authorize an amendment to the financing statement by providing the name and mailing address of the assignee as the name and address of the secured party.

(b)  Except  as  otherwise  provided  in  Subsection  (c),  a secured party of record may assign of record all or a part of its power to authorize an amendment to a financing statement by filing in the filing office an amendment of the financing statement that:

(1)  identifies,  by  its  file  number,  the  initial financing statement to which it relates;

(2)  provides the name of the assignor; and

(3)  provides  the  name  and  mailing  address  of  the assignee.

(c)  An  assignment  of  record  of  a  security  interest  in  a fixture covered by a record of a mortgage that is effective as a financing  statement  filed  as  a  fixture  filing  under  Section 9.502(c) may be made only by an assignment of record of the mortgage in the manner provided by law of this state other than this chapter.

(d)  A secured party of record may assign of record all of the secured  party's  rights  under  more  than  one  financing  statement filed  with  the  Secretary  of  State  by  filing  a  master  assignment setting  forth  the  name  of  the  secured  party  of  record  and  file

number of each financing statement and the name and mailing address of the assignee.  The secured party must also provide filing information in computer-readable form prescribed by the Secretary of State.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.515.  DURATION  AND  EFFECTIVENESS  OF  FINANCING STATEMENT;  EFFECT OF LAPSED FINANCING STATEMENT.  (a)  Except as otherwise  provided  in  Subsections  (b)-(g),  a  filed  financing statement is effective for a period of five years after the date of filing.

(b)  Except as otherwise provided in Subsections (e), (f), and (g), an initial financing statement filed in connection with a public-finance  transaction  or  manufactured-home  transaction  is effective  for  a  period  of  30  years  after  the  date  of  filing  if  it indicates  that  it  is  filed  in  connection  with  a  public-finance transaction or manufactured-home transaction.

(c)  The effectiveness of a filed financing statement lapses on the expiration of the period of its effectiveness unless before the lapse a continuation statement is filed pursuant to Subsection (d).  Upon lapse, a financing statement ceases to be effective and any security interest or agricultural lien that was perfected by the financing statement becomes unperfected, unless the security interest  is  perfected  otherwise.   If  the  security  interest  or agricultural lien becomes unperfected upon lapse, it is deemed never  to  have  been  perfected  as  against  a  purchaser  of  the collateral for value.

(d)  A continuation statement may be filed only within six months before the expiration of the five-year period specified in Subsection (a) or the 30-year period specified in Subsection (b), whichever is applicable.

(e)  Except  as  otherwise  provided  in  Section  9.510,  upon timely filing of a continuation statement, the effectiveness of the initial financing statement continues for a period of five years commencing on the day on which the financing statement would have become  ineffective  in  the  absence  of  the  filing.   Upon  the

expiration of the five-year period, the financing statement lapses in the same manner as provided in Subsection (c), unless, before the lapse, another continuation statement is filed pursuant to Subsection (d). Succeeding continuation statements may be filed in the same manner to continue the effectiveness of the initial financing statement.

(f)  If a debtor is a transmitting utility and a filed financing statement so indicates, the financing statement is effective until a termination statement is filed.

(g)  A record of a mortgage that is effective as a financing statement filed as a fixture filing or as a financing statement covering as-extracted collateral or timber to be cut under Section 9.502(c) remains effective as a financing statement filed as a fixture filing or as a financing statement covering as-extracted collateral or timber to be cut until the mortgage is released or satisfied of record or its effectiveness otherwise terminates as to the real property.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001. Amended by Acts 2003, 78th Leg., ch. 917, Sec. 5, eff. Sept. 1, 2003.


Sec. 9.516.  WHAT CONSTITUTES FILING;  EFFECTIVENESS OF FILING.  (a)  Except as otherwise provided in Subsection (b), communication of a record to a filing office and tender of the filing fee or acceptance of the record by the filing office constitutes filing.

(b)  Filing does not occur with respect to a record that a filing office refuses to accept because:

(1)  the record is not communicated by a method or medium of communication authorized by the filing office;

(2)  an amount equal to or greater than the applicable filing fee is not tendered;

(3)  the filing office is unable to index the record because:

(A)  in the case of an initial financing statement, the record does not provide a name for the debtor;

(B)  in the case of an amendment or correction

statement, the record:

(i)    does not identify the initial financing statement as required by Section 9.512 or 9.518, as applicable; or

(ii)    identifies an initial financing statement whose effectiveness has lapsed under Section 9.515;

(C)    in the case of an initial financing statement that provides the name of a debtor identified as an individual or an amendment that provides a name of a debtor identified as an individual that was not previously provided in the financing statement to which the record relates, the record does not identify the debtor's last name; or

(D)    in the case of a record filed or recorded in the filing office described in Section 9.501(a)(1), the record does not provide the name of the debtor and a sufficient description of the real property to which it relates;

(4)    in the case of an initial financing statement or an amendment that adds a secured party of record, the record does not provide a name and mailing address for the secured party of record;

(5)    in the case of an initial financing statement or an amendment that provides a name of a debtor that was not previously provided in the financing statement to which the amendment relates, the record does not:

(A)    provide a mailing address for the debtor;

(B)    indicate whether the debtor is an individual or an organization; or

(C)    if the financing statement indicates that the debtor is an organization, provide:

(i)    a type of organization for the debtor;

(ii)    a jurisdiction of organization for the debtor; or

(iii)    an organizational identification number for the debtor or indicate that the debtor has none;

(6)    in the case of an assignment reflected in an initial financing statement under Section 9.514(a) or an amendment filed under Section 9.514(b), the record does not provide a name and mailing address for the assignee;

(7)    in the case of a continuation statement, the

record is not filed within the six-month period prescribed by Section 9.515(d); or

   (8) the record is not on an industry standard form, including a national standard form or a form approved by the International Association of Commercial Administrators, adopted by rule by the secretary of state.

  (c) For purposes of Subsection (b):

   (1) a record does not provide information if the filing office is unable to read or decipher the information; and

   (2) a record that does not indicate that it is an amendment or identify an initial financing statement to which it relates, as required by Section 9.512, 9.514, or 9.518, is an initial financing statement.

  (d) A record that is communicated to the filing office with tender of the filing fee, but that the filing office refuses to accept for a reason other than one set forth in Subsection (b), is effective as a filed record except as against a purchaser of the collateral that gives value in reasonable reliance upon the absence of the record from the files.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001. Amended by Acts 2003, 78th Leg., ch. 748, Sec. 1, eff. Jan. 1, 2004.

Amended by:

  Acts 2007, 80th Leg., R.S., Ch. 565, Sec. 2, eff. June 16, 2007.


  Sec. 9.517. EFFECT OF INDEXING ERRORS. The failure of the filing office to index a record or to correctly index information contained in a record does not affect the effectiveness of the filed record.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.

Amended by:

  Acts 2007, 80th Leg., R.S., Ch. 565, Sec. 3, eff. June 16, 2007.


  Sec. 9.518. CLAIM CONCERNING INACCURATE OR WRONGFULLY FILED

RECORD.  (a)  Any person named as a debtor or a secured party may file a correction statement with respect to a record if the person believes that the record is inaccurate or was wrongfully filed.

(b)  A correction statement must:

(1)  identify the record to which it relates by the file number assigned to the initial financing statement to which the record relates;

(2)  indicate that it is a correction statement;  and

(3)  provide the basis for the person's belief that the record is inaccurate and indicate the manner in which the person believes the record should be amended to cure any inaccuracy or provide the basis for the person's belief that the record was wrongfully filed.

(c)  The filing of a correction statement does not affect the effectiveness of an initial financing statement or other filed record.

(d)  Filing of a correction statement is not effective as an amendment to a filed financing statement and is not sufficient to effect a change in the manner in which the filing office has indexed a financing statement or information contained in a financing statement.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.

Amended by:

Acts 2007, 80th Leg., R.S., Ch. 565, Sec. 4, eff. June 16, 2007.


Sec. 9.5185.  FRAUDULENT FILING.  (a)  A person may not intentionally or knowingly present for filing or cause to be presented for filing a financing statement that the person knows:

(1)  is forged;

(2)  contains a material false statement;  or

(3)  is groundless.

(b)  A person who violates Subsection (a) is liable to the owner of property covered by the financing statement for:

(1)  the greater of $5,000 or the owner's actual damages;

(2)   court costs;  and

(3)   reasonable attorney's fees.

(c)   A person who violates Subsection (a) also may be prosecuted under Section 37.101, Penal Code.

(d)   An owner of property covered by a fraudulent financing statement described in Subsection (a) also may file suit in a court of suitable jurisdiction requesting specific relief, including, but not limited to, release of the fraudulent financing statement. A successful plaintiff is entitled to reasonable attorney's fees and costs of court assessed against the person who filed the fraudulent financing statement.   If the person who filed the fraudulent financing statement cannot be located or is a fictitious person, the owner of the property may serve the known or unknown defendant through publication in a newspaper of general circulation in the county in which the suit is brought.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.519.   NUMBERING, MAINTAINING, AND INDEXING RECORDS; COMMUNICATING INFORMATION PROVIDED IN RECORDS.   (a)   For each record filed in a filing office, the filing office shall:

(1)   assign a unique number to the filed record;

(2)   create a record that bears the number assigned to the filed record and the date and time of filing;

(3)   maintain the filed record for public inspection; and

(4)   index the filed record in accordance with Subsections (c), (d), and (e).

(b)   Except as provided in Subsection (i), a file number assigned after January 1, 2002, must include a digit that:

(1)   is mathematically derived from or related to the other digits of the file number;  and

(2)   aids the filing office in determining whether a number communicated as the file number includes a single-digit or transpositional error.

(c)   Except as otherwise provided in Subsections (d) and (e), the filing office shall:

(1)   index an initial financing statement according to the name of the debtor and index all filed records relating to the initial financing statement in a manner that associates with one another an initial financing statement and all filed records relating to the initial financing statement; and

(2)   index a record that provides a name of a debtor that was not previously provided in the financing statement to which the record relates also according to the name that was not previously provided.

(d)   If a financing statement is filed as a fixture filing or covers as-extracted collateral or timber to be cut, it must be filed for record and the filing office shall index it:

(1)   under the names of the debtor and of each owner of record shown on the financing statement as if they were the mortgagors under a mortgage of the real property described; and

(2)   to the extent that the law of this state provides for indexing of records of mortgages under the name of the mortgagee, under the name of the secured party as if the secured party were the mortgagee thereunder, or, if indexing is by description, as if the financing statement were a record of a mortgage of the real property described.

(e)   If a financing statement is filed as a fixture filing or covers as-extracted collateral or timber to be cut, the filing office shall index an assignment filed under Section 9.514(a) or an amendment filed under Section 9.514(b):

(1)   under the name of the assignor as grantor; and

(2)   to the extent that the law of this state provides for indexing a record of the assignment of a mortgage under the name of the assignee, under the name of the assignee.

(f)   The filing office shall maintain a capability:

(1)   to retrieve a record by the name of the debtor and by the file number assigned to the initial financing statement to which the record relates; and

(2)   to associate and retrieve with one another an initial financing statement and each filed record relating to the initial financing statement.

(g)   The filing office may not remove a debtor's name from

the index until one year after the effectiveness of a financing statement naming the debtor lapses under Section 9.515 with respect to all secured parties of record.

(h)  Except as provided in Subsection (i), the filing office shall perform the acts required by Subsections (a)-(e) at the time and in the manner prescribed by filing-office rule, but not later than two business days after the filing office receives the record in question.

(i)  Subsections (b) and (h) do not apply to a filing office described in Section 9.501(a)(1).

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.520.   ACCEPTANCE AND REFUSAL TO ACCEPT RECORD. (a)  A filing office shall refuse to accept a record for filing for a reason set forth in Section 9.516(b) and may refuse to accept a record for filing only for a reason set forth in Section 9.516(b).

(b)  If a filing office refuses to accept a record for filing, it shall communicate to the person that presented the record the fact of and reason for the refusal and the date and time the record would have been filed had the filing office accepted it. The communication must be made at the time and in the manner prescribed by filing-office rule, but in the case of a filing office described in Section 9.501(a)(2), in no event more than two business days after the filing office receives the record.

(c)  A filed financing statement satisfying Sections 9.502(a) and (b) is effective, even if the filing office is required to refuse to accept it for filing under Subsection (a).  However, Section 9.338 applies to a filed financing statement providing information described in Section 9.516(b)(5) that is incorrect at the time the financing statement is filed.

(d)  If a record communicated to a filing office provides information that relates to more than one debtor, this subchapter applies as to each debtor separately.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.

Sec. 9.5211.  UNIFORM FORM OF WRITTEN FINANCING STATEMENT AND AMENDMENT.  (a)  Except as provided by Section 9.516(b), a filing office that accepts written records may not refuse to accept a written initial financing statement on an industry standard form, including a national standard form or a form approved by the International Association of Commercial Administrators, adopted by rule by the secretary of state.

(b)  Except as provided by Section 9.516(b), a filing office that accepts written records may not refuse to accept a written record on an industry standard form, including a national standard form or a form approved by the International Association of Commercial Administrators, adopted by rule by the secretary of state.

Added by Acts 2003, 78th Leg., ch. 748, Sec. 2, eff. Jan. 1, 2004.


Sec. 9.522.  MAINTENANCE AND DESTRUCTION OF RECORDS.  (a)  The filing office shall maintain a record of the information provided in a filed financing statement for at least one year after the effectiveness of the financing statement has lapsed under Section 9.515 with respect to all secured parties of record.  The record must be retrievable by using the name of the debtor and by using the file number assigned to the initial financing statement to which the record relates.

(b)  Except to the extent that a statute governing disposition of public records provides otherwise, the filing office immediately may destroy any written record evidencing a financing statement.  However, if the filing office destroys a written record, it shall maintain another record of the financing statement that complies with Subsection (a).

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.523.  INFORMATION FROM FILING OFFICE;  SALE OR LICENSE OF RECORDS.  (a)  If a person that files a written record requests an acknowledgment of the filing, the filing office shall send to the person an image of the record showing the number assigned to the record pursuant to Section 9.519(a)(1) and the date

and time of the filing of the record. However, if the person furnishes a copy of the record to the filing office, the filing office may instead:

(1)  note upon the copy the number assigned to the record pursuant to Section 9.519(a)(1) and the date and time of the filing of the record; and

(2)  send the copy to the person.

(b)  If a person files a record other than a written record, the filing office shall communicate to the person an acknowledgment that provides:

(1)  the information in the record;

(2)  the number assigned to the record pursuant to Section 9.519(a)(1); and

(3)  the date and time of the filing of the record.

(c)  The filing office shall communicate or otherwise make available in a record the following information to any person that requests it:

(1)  whether there is on file on a date and time specified by the filing office, but not a date earlier than three business days before the filing office receives the request, any financing statement that:

(A)  designates a particular debtor or, if the request so states, designates a particular debtor at the address specified in the request;

(B)  has not lapsed under Section 9.515 with respect to all secured parties of record; and

(C)  if the request so states, has lapsed under Section 9.515 and a record of which is maintained by the filing office under Section 9.522(a);

(2)  the date and time of filing of each financing statement; and

(3)  the information provided in each financing statement.

(d)  In complying with its duty under Subsection (c), the filing office may communicate information in any medium. However, if requested, the filing office shall communicate information by issuing its written certificate.

(e)  The filing office shall perform the acts required by Subsections (a)-(d) at the time and in the manner prescribed by filing-office rule, but not later than two business days after the filing office receives the request.

(f)  At least weekly, the Secretary of State shall offer to sell or license to the public on a nonexclusive basis, in bulk, copies of all records filed with the Secretary under this subchapter, in every medium from time to time available to the Secretary.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.524.  DELAY BY FILING OFFICE.  Delay by the filing office beyond a time limit prescribed by this subchapter is excused if:

(1)  the delay is caused by interruption of communication or computer facilities, war, emergency conditions, failure of equipment, or other circumstances beyond control of the filing office;  and

(2)  the filing office exercises reasonable diligence under the circumstances.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.525.  FEES.  (a)  Except as otherwise provided in Subsections (b), (e), and (f), the fee for filing and indexing a record under this subchapter is:

(1)  $15 if the record is communicated in writing and consists of one or two pages;

(2)  $30 if the record is communicated in writing and consists of more than two pages;  and

(3)  $5 if the record is communicated by another medium authorized by filing-office rule.

(b)  Except as otherwise provided in Subsection (e), the fee for filing and indexing an initial financing statement of the following kinds is:

(1)  $60 if the financing statement indicates that it

110

is filed in connection with a public-finance transaction;

      (2)  $60 if the financing statement indicates that it is filed in connection with a manufactured-home transaction; and

      (3)  $60 if the debtor is a transmitting utility.

    (c)  The number of names required to be indexed does not affect the amount of the fee in Subsections (a) and (b).

    (d)  The fee for responding to a request for information from the filing office, including for communicating whether there is on file any financing statement naming a particular debtor, is:

      (1)  $15 if the request is communicated in writing; and

      (2)  an amount established by the filing office if the request is communicated by another medium authorized by filing-office rule.

    (e)  This section does not require a fee with respect to a record of a mortgage that is effective as a financing statement filed as a fixture filing or as a financing statement covering as-extracted collateral or timber to be cut under Section 9.502(c). However, the recording and satisfaction fees that otherwise would be applicable to the record of the mortgage apply.

    (f)  The filing fee for filing, indexing, and furnishing filing data about a statement of master amendment under Section 9.512(f) or master assignment under Section 9.514(d) is $500 plus 50 cents for each financing statement covered by the master statement in excess of 50.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.  Amended by Acts 2001, 77th Leg., ch. 705, Sec. 18, eff. June 13, 2001.

Amended by:

    Acts 2009, 81st Leg., R.S., Ch. 547, Sec. 1, eff. September 1, 2009.


    Sec. 9.526.  FILING-OFFICE RULES.  (a)  The Secretary of State shall adopt and publish rules to implement this chapter.  The filing-office rules must be consistent with this chapter.

    (b)  To keep the filing-office rules and practices of the filing office in harmony with the rules and practices of filing offices in other jurisdictions that enact substantially this

subchapter, and to keep the technology used by the filing office compatible with the technology used by filing offices in other jurisdictions that enact substantially this subchapter, the Secretary of State, so far as is consistent with the purposes, policies, and provisions of this chapter, in adopting, amending, and repealing filing-office rules, shall:

(1)   consult with filing offices in other jurisdictions that enact substantially this subchapter;

(2)   consult the most recent version of the Model Administrative Rules promulgated by the International Association of Commercial Administrators or any successor organization; and

(3)   take into consideration the rules and practices of, and the technology used by, filing offices in other jurisdictions that enact substantially this subchapter.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.

Amended by:

Acts 2009, 81st Leg., R.S., Ch. 547, Sec. 2, eff. September 1, 2009.


Sec. 9.527.  DUTY TO REPORT.  The Secretary of State shall report before January 1 of each odd-numbered year to the Legislature on the operation of the filing office.  The report must contain a statement of the extent to which:

(1)   the filing-office rules are not in harmony with the rules of filing offices in other jurisdictions that enact substantially this subchapter and the reasons for these variations; and

(2)   the filing-office rules are not in harmony with the most recent version of the Model Administrative Rules promulgated by the International Association of Commercial Administrators, or any successor organization, and the reasons for these variations.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.

Amended by:

Acts 2009, 81st Leg., R.S., Ch. 547, Sec. 3, eff. September 1,

2009.


## SUBCHAPTER F. DEFAULT


Sec. 9.601.  RIGHTS AFTER DEFAULT;  JUDICIAL ENFORCEMENT;
CONSIGNOR OR BUYER OF ACCOUNTS, CHATTEL PAPER, PAYMENT INTANGIBLES,
OR PROMISSORY NOTES.  (a)  After default, a secured party has the
rights provided in this subchapter and, except as otherwise
provided in Section 9.602, those provided by agreement of the
parties. A secured party:

(1)  may reduce a claim to judgment, foreclose, or
otherwise enforce the claim, security interest, or agricultural
lien by any available judicial procedure; and

(2)  if the collateral is documents, may proceed either
as to the documents or as to the goods they cover.

(b)  A secured party in possession of collateral or control
of collateral under Section 7.106, 9.104, 9.105, 9.106, or 9.107
has the rights and duties provided in Section 9.207.

(c)  The rights under Subsections (a) and (b) are cumulative
and may be exercised simultaneously.

(d)  Except as otherwise provided in Subsection (g) and
Section 9.605, after default, a debtor and an obligor have the
rights provided in this subchapter and by agreement of the parties.

(e)  If a secured party has reduced its claim to judgment,
the lien of any levy that may be made upon the collateral by virtue
of an execution based upon the judgment relates back to the earliest
of:

(1)  the date of the perfection of the security
interest or agricultural lien in the collateral;

(2)  the date of filing a financing statement covering
the collateral; or

(3)  any date specified in a statute under which the
agricultural lien was created.

(f)  A sale pursuant to an execution is a foreclosure of the
security interest or agricultural lien by judicial procedure within
the meaning of this section.  A secured party may purchase at the
sale and thereafter hold the collateral free of any other

**EXHIBIT 241**

requirements of this chapter.

(g)  Except as otherwise provided in Section 9.607(c), this subchapter imposes no duties upon a secured party that is a consignor or is a buyer of accounts, chattel paper, payment intangibles, or promissory notes.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.

Amended by:

Acts 2005, 79th Leg., Ch. 122, Sec. 30, eff. September 1, 2005.


Sec. 9.602.  WAIVER AND VARIANCE OF RIGHTS AND DUTIES. Except as otherwise provided in Section 9.624, to the extent that they give rights to a debtor or obligor and impose duties on a secured party, the debtor or obligor may not waive or vary the rules stated in the following listed sections:

(1)  Section 9.207(b)(4)(C), which deals with use and operation of the collateral by the secured party;

(2)  Section 9.210, which deals with requests for an accounting and requests concerning a list of collateral and statement of account;

(3)  Section 9.607(c), which deals with collection and enforcement of collateral;

(4)  Sections 9.608(a) and 9.615(c) to the extent that they deal with application or payment of noncash proceeds of collection, enforcement, or disposition;

(5)  Sections 9.608(a) and 9.615(d) to the extent that they require accounting for or payment of surplus proceeds of collateral;

(6)  Section 9.609 to the extent that it imposes upon a secured party that takes possession of collateral without judicial process the duty to do so without breach of the peace;

(7)  Sections 9.610(b), 9.611, 9.613, and 9.614, which deal with disposition of collateral;

(8)  Section 9.615(f), which deals with calculation of a deficiency or surplus when a disposition is made to the secured party, a person related to the secured party, or a secondary

EXHIBIT 241

obligor;

(9)   Section 9.616, which deals with explanation of the calculation of a surplus or deficiency;

(10)   Sections 9.620, 9.621, and 9.622, which deal with acceptance of collateral in satisfaction of obligation;

(11)   Section 9.623, which deals with redemption of collateral;

(12)   Section 9.624, which deals with permissible waivers; and

(13)   Sections 9.625 and 9.626, which deal with the secured party's liability for failure to comply with this chapter.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.603.   AGREEMENT ON STANDARDS CONCERNING RIGHTS AND DUTIES.  (a)  The parties may determine by agreement the standards measuring the fulfillment of the rights of a debtor or obligor and the duties of a secured party under a rule stated in Section 9.602 if the standards are not manifestly unreasonable.

(b)   Subsection (a) does not apply to the duty under Section 9.609 to refrain from breaching the peace.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.604.   PROCEDURE IF SECURITY AGREEMENT COVERS REAL PROPERTY OR FIXTURES.  (a)  If a security agreement covers both personal and real property, a secured party may proceed:

(1)   under this subchapter as to the personal property without prejudicing any rights with respect to the real property; or

(2)   as to both the personal property and the real property in accordance with the rights with respect to the real property, in which case the other provisions of this subchapter do not apply.

(b)   Subject to Subsection (c), if a security agreement covers goods that are or become fixtures, a secured party may proceed:

(1)   under this subchapter;  or

(2)   in accordance with the rights with respect to real property, in which case the other provisions of this subchapter do not apply.

(c)   Subject to the other provisions of this subchapter, if a secured party holding a security interest in fixtures has priority over all owners and encumbrancers of the real property, the secured party, after default, may remove the collateral from the real property.

(d)   A secured party that removes collateral shall promptly reimburse any encumbrancer or owner of the real property, other than the debtor, for the cost of repair of any physical injury caused by the removal.   The secured party need not reimburse the encumbrancer or owner for any diminution in value of the real property caused by the absence of the goods removed or by any necessity of replacing them.   A person entitled to reimbursement may refuse permission to remove until the secured party gives adequate assurance for the performance of the obligation to reimburse.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.605.   UNKNOWN DEBTOR OR SECONDARY OBLIGOR.   A secured party does not owe a duty based on its status as secured party:

(1)   to a person that is a debtor or obligor, unless the secured party knows:

(A)   that the person is a debtor or obligor;

(B)   the identity of the person;  and

(C)   how to communicate with the person;  or

(2)   to a secured party or lienholder that has filed a financing statement against a person, unless the secured party knows:

(A)   that the person is a debtor;  and

(B)   the identity of the person.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.

Sec. 9.606.  TIME OF DEFAULT FOR AGRICULTURAL LIEN.  For purposes of this subchapter, a default occurs in connection with an agricultural lien at the time the secured party becomes entitled to enforce the lien in accordance with the statute under which it was created.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.607.  COLLECTION AND ENFORCEMENT BY SECURED PARTY.  (a)  If so agreed, and in any event after default, a secured party:

(1)  may notify an account debtor or other person obligated on collateral to make payment or otherwise render performance to or for the benefit of the secured party;

(2)  may take any proceeds to which the secured party is entitled under Section 9.315;

(3)  may enforce the obligations of an account debtor or other person obligated on collateral and exercise the rights of the debtor with respect to the obligation of the account debtor or other person obligated on collateral to make payment or otherwise render performance to the debtor, and with respect to any property that secures the obligations of the account debtor or other person obligated on the collateral;

(4)  if it holds a security interest in a deposit account perfected by control under Section 9.104(a)(1), may apply the balance of the deposit account to the obligation secured by the deposit account; and

(5)  if it holds a security interest in a deposit account perfected by control under Section 9.104(a)(2) or (3), may instruct the bank to pay the balance of the deposit account to or for the benefit of the secured party.

(b)  If necessary to enable a secured party to exercise under Subsection (a)(3) the right of a debtor to enforce a mortgage nonjudicially, the secured party may record in the office in which a record of the mortgage is recorded:

(1)  a copy of the security agreement that creates or provides for a security interest in the obligation secured by the mortgage; and

(2)  the secured party's sworn affidavit in recordable form stating that:

(A)  a default has occurred;  and

(B)  the secured party is entitled to enforce the mortgage nonjudicially.

(c)  A  secured  party  shall  proceed  in  a  commercially reasonable manner if the secured party:

(1)  undertakes  to  collect  from  or  enforce  an obligation  of  an  account  debtor  or  other  person  obligated  on collateral;  and

(2)  is entitled to charge back uncollected collateral or otherwise to full or limited recourse against the debtor or a secondary obligor.

(d)  A secured party may deduct from the collections made pursuant to Subsection (c) reasonable expenses of collection and enforcement,  including  reasonable  attorney's  fees  and  legal expenses incurred by the secured party.

(e)  This  section  does  not  determine  whether  an  account debtor, bank, or other person obligated on collateral owes a duty to a secured party.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.

Sec. 9.608.  APPLICATION  OF  PROCEEDS  OF  COLLECTION  OR ENFORCEMENT;  LIABILITY FOR DEFICIENCY AND RIGHT TO SURPLUS.  (a) If a security interest or agricultural lien secures payment or performance of an obligation, the following rules apply:

(1)  A  secured  party  shall  apply  or  pay  over  for application the cash proceeds of collection or enforcement under Section 9.607 in the following order to:

(A)  the reasonable expenses of collection and enforcement and, to the extent provided for by agreement and not prohibited by law, reasonable attorney's fees and legal expenses incurred by the secured party;

(B)  the satisfaction of obligations secured by the security interest or agricultural lien under which the collection or enforcement is made; and

118

(C) the satisfaction of obligations secured by any subordinate security interest in or other lien on the collateral subject to the security interest or agricultural lien under which the collection or enforcement is made if the secured party receives an authenticated demand for proceeds before distribution of the proceeds is completed.

(2) If requested by a secured party, a holder of a subordinate security interest or other lien shall furnish reasonable proof of the interest or lien within a reasonable time. Unless the holder complies, the secured party need not comply with the holder's demand under Subdivision (1)(C).

(3) A secured party need not apply or pay over for application noncash proceeds of collection and enforcement under Section 9.607 unless the failure to do so would be commercially unreasonable. A secured party that applies or pays over for application noncash proceeds shall do so in a commercially reasonable manner.

(4) A secured party shall account to and pay a debtor for any surplus, and the obligor is liable for any deficiency.

(b) If the underlying transaction is a sale of accounts, chattel paper, payment intangibles, or promissory notes, the debtor is not entitled to any surplus, and the obligor is not liable for any deficiency.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001. Amended by Acts 2001, 77th Leg., ch. 705, Sec. 19, eff. June 13, 2001.

Sec. 9.609. SECURED PARTY'S RIGHT TO TAKE POSSESSION AFTER DEFAULT. (a) After default, a secured party:

(1) may take possession of the collateral; and

(2) without removal, may render equipment unusable and dispose of collateral on the debtor's premises under Section 9.610.

(b) A secured party may proceed under Subsection (a):

(1) pursuant to judicial process; or

(2) without judicial process, if it proceeds without breach of the peace.

(c) If so agreed, and in any event after default, a secured

party may require the debtor to assemble the collateral and make it available to the secured party at a place to be designated by the secured party that is reasonably convenient to both parties.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.610.  DISPOSITION OF COLLATERAL AFTER DEFAULT.  (a) After default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing.

(b)  Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable.  If commercially reasonable, a secured party may dispose of collateral by public or private proceedings, by one or more contracts, as a unit or in parcels, and at any time and place and on any terms.

(c)  A secured party may purchase collateral:

(1)  at a public disposition; or

(2)  at a private disposition only if the collateral is of a kind that is customarily sold on a recognized market or the subject of widely distributed standard price quotations.

(d)  A contract for sale, lease, license, or other disposition includes the warranties relating to title, possession, quiet enjoyment, and the like that by operation of law accompany a voluntary disposition of property of the kind subject to the contract.

(e)  A secured party may disclaim or modify warranties under Subsection (d):

(1)  in a manner that would be effective to disclaim or modify the warranties in a voluntary disposition of property of the kind subject to the contract of disposition; or

(2)  by communicating to the purchaser a record evidencing the contract for disposition and including an express disclaimer or modification of the warranties.

(f)  A record is sufficient to disclaim warranties under Subsection (e) if it indicates "There is no warranty relating to

title,  possession,  quiet  enjoyment,  or  the  like  in  this

disposition" or uses words of similar import.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1,

2001.


Sec. 9.611.  NOTIFICATION BEFORE DISPOSITION OF COLLATERAL.

(a)  In this section, "notification date" means the earlier of the

date on which:

(1)  a  secured  party  sends  to  the  debtor  and  any

secondary obligor an authenticated notification of disposition;  or

(2)  the  debtor  and  any  secondary  obligor  waive  the

right to notification.

(b)  Except  as  otherwise  provided  in  Subsection  (d),  a

secured party that disposes of collateral under Section 9.610 shall

send  to  the  persons  specified  in  Subsection  (c)  a  reasonable

authenticated notification of disposition.

(c)  To comply with Subsection (b), the secured party shall

send an authenticated notification of disposition to:

(1)  the debtor;

(2)  any secondary obligor;  and

(3)  if the collateral is other than consumer goods:

(A)  any other person from which the secured party

has  received,  before  the  notification  date,  an  authenticated

notification of a claim of an interest in the collateral;

(B)  any other secured party or lienholder that,

10 days before the notification date, held a security interest in or

other lien on the collateral perfected by the filing of a financing

statement that:

(i)  identified the collateral;

(ii)  was indexed under the debtor's name as

of that date;  and

(iii)  was filed in the office in which to

file  a  financing  statement  against  the  debtor  covering  the

collateral as of that date;  and

(C)  any other secured party that, 10 days before

the  notification  date,  held  a  security  interest  in  the  collateral

perfected  by  compliance  with  a  statute,  regulation,  or  treaty

described in Section 9.311(a).

(d)  Subsection (b) does not apply if the collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market.

(e)  A secured party complies with the requirement for notification prescribed by Subsection (c)(3)(B) if:

(1)  not later than 20 days or earlier than 30 days before the notification date, the secured party requests, in a commercially reasonable manner, information concerning financing statements indexed under the debtor's name in the office indicated in Subsection (c)(3)(B); and

(2)  before the notification date, the secured party:

(A)  did not receive a response to the request for information; or

(B)  received a response to the request for information and sent an authenticated notification of disposition to each secured party or other lienholder named in that response whose financing statement covered the collateral.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.612.  TIMELINESS OF NOTIFICATION BEFORE DISPOSITION OF COLLATERAL.  (a) Except as otherwise provided in Subsection (b), whether a notification is sent within a reasonable time is a question of fact.

(b)  In a transaction other than a consumer transaction, a notification of disposition sent after default and 10 days or more before the earliest time of disposition set forth in the notification is sent within a reasonable time before the disposition.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.613.  CONTENTS AND FORM OF NOTIFICATION BEFORE DISPOSITION OF COLLATERAL:  GENERAL.  Except in a consumer-goods transaction, the following rules apply:

(1)  The contents of a notification of disposition are

sufficient if the notification:

        (A)   describes the debtor and the secured party;

        (B)   describes the collateral that is the subject of the intended disposition;

        (C)   states the method of intended disposition;

        (D)   states that the debtor is entitled to an accounting of the unpaid indebtedness and states the charge, if any, for an accounting; and

        (E)   states the time and place of a public disposition or the time after which any other disposition is to be made.

        (2)   Whether the contents of a notification that lacks any of the information specified in Subdivision (1) are nevertheless sufficient is a question of fact.

        (3)   The contents of a notification providing substantially the information specified in Subdivision (1) are sufficient, even if the notification includes:

        (A)   information not specified by that subdivision; or

        (B)   minor errors that are not seriously misleading.

        (4)   A particular phrasing of the notification is not required.

        (5)   The following form of notification and the form appearing in Section 9.614(3), when completed, each provide sufficient information:

NOTIFICATION OF DISPOSITION OF COLLATERAL

To: _____[Name of debtor, obligor, or other person to which the notification is sent]

From: _____[Name, address, and telephone number of secured party]

Name of Debtor(s): _____ [Include only if debtor(s) are not an addressee]

[For a public disposition:]

We will sell [or lease or license, as applicable] the [describe collateral] [to the highest qualified bidder] in public as follows:

Day and Date: _____ Time: _____ Place: _____[For a private

EXHIBIT 241

disposition:]

We will sell [or lease or license, as applicable] the _____ [describe collateral] privately sometime after _____ [day and date].

You are entitled to an accounting of the unpaid indebtedness secured by the property that we intend to sell [or lease or license, as applicable] [for a charge of $____]. You may request an accounting by calling us at _____ [telephone number].

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001. Amended by Acts 2001, 77th Leg., ch. 705, Sec. 20, eff. June 13, 2001.


Sec. 9.614. CONTENTS AND FORM OF NOTIFICATION BEFORE DISPOSITION OF COLLATERAL: CONSUMER-GOODS TRANSACTION. In a consumer-goods transaction, the following rules apply:

(1) A notification of disposition must provide the following information:

(A) the information specified in Section 9.613(1);

(B) a description of any liability for a deficiency of the person to which the notification is sent;

(C) a telephone number from which the amount that must be paid to the secured party to redeem the collateral under Section 9.623 is available; and

(D) a telephone number or mailing address from which additional information concerning the disposition and the obligation secured is available.

(2) A particular phrasing of the notification is not required.

(3) The following form of notification, when completed, provides sufficient information:

_____ [Name and address of secured party]

_____ [Date]

NOTICE OF OUR PLAN TO SELL PROPERTY

_____ [Name and address of any obligor who is also a debtor]

Subject: _____ [Identification of Transaction]

**EXHIBIT 241**

We have your _____[describe collateral], because you broke promises in our agreement.

[For a public disposition:]

We will sell _____[describe collateral] at public sale.  A sale could include a lease or license.  The sale will be held as follows:

        Date:_____

        Time:_____

        Place:_____

You may attend the sale and bring bidders if you want.

[For a private disposition:]

We will sell _____[describe collateral] at private sale sometime after _____[date].  A sale could include a lease or license.

The money that we get from the sale (after paying our costs) will reduce the amount you owe.  If we get less money than you owe, you _____[will or will not, as applicable] still owe us the difference.  If we get more money than you owe, you will get the extra money, unless we must pay it to someone else.

You can get the property back at any time before we sell it by paying us the full amount you owe (not just the past due payments), including our expenses.  To learn the exact amount you must pay, call us at _____[telephone number].

If you want us to explain to you in writing how we have figured the amount that you owe us, you may call us at _____[telephone number] [or write us at _____[secured party's address] _____] and request a written explanation.  [We will charge you $_____ for the explanation if we sent you another written explanation of the amount you owe us within the last six months.]

If you need more information about the sale call us at _____ [telephone number] [or write us at _____ [secured party's address] _____].

We are sending this notice to the following other people who have an interest in _____[describe collateral] or who owe money under your agreement:

_____ [Names of all other debtors and obligors, if any]

        (4)  A notification in the form of Subdivision (3) is

125

sufficient, even if additional information appears at the end of
the form.

(5)  A notification in the form of Subdivision (3) is
sufficient, even if it includes errors in information not required
by Subdivision (1), unless the error is misleading with respect to
rights arising under this chapter.

(6)  If a notification under this section is not in the
form of Subdivision (3), law other than this chapter determines the
effect of including information not required by Subdivision (1).
Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1,
2001.


Sec. 9.615.  APPLICATION  OF  PROCEEDS  OF  DISPOSITION;
LIABILITY FOR DEFICIENCY AND RIGHT TO SURPLUS.  (a)  A secured party
shall apply or pay over for application the cash proceeds of
disposition under Section 9.610 in the following order to:

(1)  the reasonable expenses of retaking, holding,
preparing for disposition, processing, and disposing and, to the
extent provided for by agreement and not prohibited by law,
reasonable attorney's fees and legal expenses incurred by the
secured party;

(2)  the satisfaction of obligations secured by the
security interest or agricultural lien under which the disposition
is made;

(3)  the satisfaction of obligations secured by any
subordinate security interest in or other subordinate lien on the
collateral if:

(A)  the secured party receives from the holder of
the subordinate security interest or other lien an authenticated
demand for proceeds before distribution of the proceeds is
completed; and

(B)  in a case in which a consignor has an interest
in the collateral, the subordinate security interest or other lien
is senior to the interest of the consignor; and

(4)  a secured party that is a consignor of the
collateral if the secured party receives from the consignor an
authenticated demand for proceeds before distribution of the

126

proceeds is completed.

(b) If requested by a secured party, a holder of a subordinate security interest or other lien shall furnish reasonable proof of the interest or lien within a reasonable time. Unless the holder does so, the secured party need not comply with the holder's demand under Subsection (a)(3).

(c) A secured party need not apply or pay over for application noncash proceeds of disposition under Section 9.610 unless the failure to do so would be commercially unreasonable. A secured party that applies or pays over for application noncash proceeds shall do so in a commercially reasonable manner.

(d) If the security interest under which a disposition is made secures payment or performance of an obligation, after making the payments and applications required by Subsection (a) and permitted by Subsection (c):

(1) unless Subsection (a)(4) requires the secured party to apply or pay over cash proceeds to a consignor, the secured party shall account to and pay a debtor for any surplus; and

(2) the obligor is liable for any deficiency.

(e) If the underlying transaction is a sale of accounts, chattel paper, payment intangibles, or promissory notes:

(1) the debtor is not entitled to any surplus; and

(2) the obligor is not liable for any deficiency.

(f) The surplus or deficiency following a disposition is calculated based on the amount of proceeds that would have been realized in a disposition complying with this subchapter to a transferee other than the secured party, a person related to the secured party, or a secondary obligor if:

(1) the transferee in the disposition is the secured party, a person related to the secured party, or a secondary obligor; and

(2) the amount of proceeds of the disposition is significantly below the range of proceeds that a complying disposition to a person other than the secured party, a person related to the secured party, or a secondary obligor would have brought.

(g) A secured party that receives cash proceeds of a

127

disposition in good faith and without knowledge that the receipt violates the rights of the holder of a security interest or other lien that is not subordinate to the security interest or agricultural lien under which the disposition is made:

(1)   takes the cash proceeds free of the security interest or other lien;

(2)   is not obligated to apply the proceeds of the disposition to the satisfaction of obligations secured by the security interest or other lien; and

(3)   is not obligated to account to or pay the holder of the security interest or other lien for any surplus.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.  Amended by Acts 2001, 77th Leg., ch. 705, Sec. 21, eff. June 13, 2001.

Sec. 9.616.  EXPLANATION OF CALCULATION OF SURPLUS OR DEFICIENCY. (a)  In this section:

(1)   "Explanation" means a writing that:

(A)   states the amount of the surplus or deficiency;

(B)   provides an explanation in accordance with Subsection (c) of how the secured party calculated the surplus or deficiency;

(C)   states, if applicable, that future debits, credits, charges, including additional credit service charges or interest, rebates, and expenses may affect the amount of the surplus or deficiency; and

(D)   provides a telephone number or mailing address from which additional information concerning the transaction is available.

(2)   "Request" means a record:

(A)   authenticated by a debtor or consumer obligor;

(B)   requesting that the recipient provide an explanation; and

(C)   sent after disposition of the collateral under Section 9.610.

EXHIBIT 241

(b)   In a consumer-goods transaction in which the debtor is entitled to a surplus or a consumer obligor is liable for a deficiency under Section 9.615, the secured party shall:

(1)   send an explanation to the debtor or consumer obligor, as applicable, after the disposition and:

(A)   before or when the secured party accounts to the debtor and pays any surplus or first makes written demand on the consumer obligor after the disposition for payment of the deficiency; and

(B)   within 14 days after receipt of a request; or

(2)   in the case of a consumer obligor who is liable for a deficiency, within 14 days after receipt of a request, send to the consumer obligor a record waiving the secured party's right to a deficiency.

(c)   To comply with Subsection (a)(1)(B), a writing must provide the following information in the following order:

(1)   the aggregate amount of obligations secured by the security interest under which the disposition was made and, if the amount reflects a rebate of unearned interest or credit service charge, an indication of that fact, calculated as of a specified date:

(A)   if the secured party takes or receives possession of the collateral after default, not more than 35 days before the secured party takes or receives possession; or

(B)   if the secured party takes or receives possession of the collateral before default or does not take possession of the collateral, not more than 35 days before the disposition;

(2)   the amount of proceeds of the disposition;

(3)   the aggregate amount of the obligations after deducting the amount of proceeds;

(4)   the amount, in the aggregate or by type, and types of expenses, including expenses of retaking, holding, preparing for disposition, processing, and disposing of the collateral, and attorney's fees secured by the collateral which are known to the secured party and relate to the current disposition;

(5)   the amount, in the aggregate or by type, and types

of credits, including rebates of interest or credit service charges, to which the obligor is known to be entitled and which are not reflected in the amount in Subdivision (1); and

      (6)  the amount of the surplus or deficiency.

    (d)  A particular phrasing of the explanation is not required.  An explanation complying substantially with the requirements of Subsection (a) is sufficient, even if it includes minor errors that are not seriously misleading.

    (e)  A debtor or consumer obligor is entitled without charge to one response to a request under this section during any six-month period in which the secured party did not send to the debtor or consumer obligor an explanation pursuant to Subsection (b)(1).  The secured party may require payment of a charge not exceeding $25 for each additional response.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


    Sec. 9.617.  RIGHTS OF TRANSFEREE OF COLLATERAL.  (a)  A secured party's disposition of collateral after default:

      (1)  transfers to a transferee for value all of the debtor's rights in the collateral;

      (2)  discharges the security interest under which the disposition is made;  and

      (3)  discharges any subordinate security interest or other subordinate lien.

    (b)  A transferee that acts in good faith takes free of the rights and interests described in Subsection (a), even if the secured party fails to comply with this chapter or the requirements of any judicial proceeding.

    (c)  If a transferee does not take free of the rights and interests described in Subsection (a), the transferee takes the collateral subject to:

      (1)  the debtor's rights in the collateral;

      (2)  the security interest or agricultural lien under which the disposition is made;  and

      (3)  any other security interest or other lien.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1,

2001.


Sec. 9.618. RIGHTS AND DUTIES OF CERTAIN SECONDARY OBLIGORS. (a) A secondary obligor acquires the rights and becomes obligated to perform the duties of the secured party after the secondary obligor:

(1) receives an assignment of a secured obligation from the secured party;

(2) receives a transfer of collateral from the secured party and agrees to accept the rights and assume the duties of the secured party; or

(3) is subrogated to the rights of a secured party with respect to collateral.

(b) An assignment, transfer, or subrogation described in Subsection (a):

(1) is not a disposition of collateral under Section 9.610; and

(2) relieves the secured party of further duties under this chapter.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.619. TRANSFER OF RECORD OR LEGAL TITLE. (a) In this section, "transfer statement" means a record authenticated by a secured party stating:

(1) that the debtor has defaulted in connection with an obligation secured by specified collateral;

(2) that the secured party has exercised its post-default remedies with respect to the collateral;

(3) that, by reason of the exercise, a transferee has acquired the rights of the debtor in the collateral; and

(4) the name and mailing address of the secured party, debtor, and transferee.

(b) A transfer statement entitles the transferee to the transfer of record of all rights of the debtor in the collateral specified in the statement in any official filing, recording, registration, or certificate-of-title system covering the

collateral.   If   a   transfer   statement   is   presented   with   the applicable   fee   and   request   form   to   the   official   or   office responsible   for   maintaining   the   system,   the   official   or   office shall:

      (1)   accept the transfer statement;

      (2)   promptly   amend   its   records   to   reflect   the transfer; and

      (3)   if applicable, issue a new appropriate certificate of title in the name of the transferee.

   (c)   A transfer of the record or legal title to collateral to a secured party under Subsection (b) or otherwise is not of itself a disposition of collateral under this chapter and does not of itself relieve the secured party of its duties under this chapter.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


   Sec.   9.620.   ACCEPTANCE   OF   COLLATERAL   IN   FULL   OR   PARTIAL SATISFACTION OF OBLIGATION;  COMPULSORY DISPOSITION OF COLLATERAL. (a)  Except as otherwise provided in Subsection (g), a secured party may   accept   collateral   in   full   or   partial   satisfaction   of   the obligation it secures only if:

      (1)   the   debtor   consents   to   the   acceptance   under Subsection (c);

      (2)   the   secured   party   does   not   receive,   within   the time set forth in Subsection (d), a notification of objection to the proposal authenticated by:

         (A)   a   person   to   which   the   secured   party   was required to send a proposal under Section 9.621;  or

         (B)   any   other   person,   other   than   the   debtor, holding an interest in the collateral subordinate to the security interest that is the subject of the proposal;

      (3)   if   the   collateral   is   consumer   goods,   the collateral is not in the possession of the debtor when the debtor consents to the acceptance; and

      (4)   Subsection (e) does not require the secured party to dispose of the collateral or the debtor waives the requirement pursuant to Section 9.624.

(b)   A purported or apparent acceptance of collateral under this section is ineffective unless:

(1)   the secured party consents to the acceptance in an authenticated record or sends a proposal to the debtor; and

(2)   the conditions of Subsection (a) are met.

(c)   For purposes of this section:

(1)   a debtor consents to an acceptance of collateral in partial satisfaction of the obligation it secures only if the debtor agrees to the terms of the acceptance in a record authenticated after default; and

(2)   a debtor consents to an acceptance of collateral in full satisfaction of the obligation it secures only if the debtor agrees to the terms of the acceptance in a record authenticated after default or the secured party:

(A)   sends to the debtor after default a proposal that is unconditional or subject only to a condition that collateral not in the possession of the secured party be preserved or maintained;

(B)   in the proposal, proposes to accept collateral in full satisfaction of the obligation it secures; and

(C)   does not receive a notification of objection authenticated by the debtor within 20 days after the proposal is sent.

(d)   To be effective under Subsection (a)(2), a notification of objection must be received by the secured party:

(1)   in the case of a person to which the proposal was sent pursuant to Section 9.621, within 20 days after notification was sent to that person; and

(2)   in other cases:

(A)   within 20 days after the last notification was sent pursuant to Section 9.621; or

(B)   if a notification was not sent, before the debtor consents to the acceptance under Subsection (c).

(e)   A secured party that has taken possession of collateral shall dispose of the collateral pursuant to Section 9.610 within the time specified in Subsection (f) if:

(1)   60 percent of the cash price has been paid in the

case of a purchase-money security interest in consumer goods; or

(2) 60 percent of the principal amount of the obligation secured has been paid in the case of a non-purchase-money security interest in consumer goods.

(f)  To comply with Subsection (e), the secured party shall dispose of the collateral:

(1)  within 90 days after taking possession; or

(2)  within any longer period to which the debtor and all secondary obligors have agreed in an agreement to that effect entered into and authenticated after default.

(g)  In a consumer transaction, a secured party may not accept collateral in partial satisfaction of the obligation it secures.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.621.  NOTIFICATION OF PROPOSAL TO ACCEPT COLLATERAL. (a)  A secured party that desires to accept collateral in full or partial satisfaction of the obligation it secures shall send its proposal to:

(1)  any person from which the secured party has received, before the debtor consented to the acceptance, an authenticated notification of a claim of an interest in the collateral;

(2)  any other secured party or lienholder that, 10 days before the debtor consented to the acceptance, held a security interest in or other lien on the collateral perfected by the filing of a financing statement that:

(A)  identified the collateral;

(B)  was indexed under the debtor's name as of that date; and

(C)  was filed in the office or offices in which to file a financing statement against the debtor covering the collateral as of that date; and

(3)  any other secured party that, 10 days before the debtor consented to the acceptance, held a security interest in the collateral perfected by compliance with a statute, regulation, or

treaty described in Section 9.311(a).

(b)  A secured party that desires to accept collateral in partial satisfaction of the obligation it secures shall send its proposal to any secondary obligor in addition to the persons described in Subsection (a).

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.622.  EFFECT OF ACCEPTANCE OF COLLATERAL.  (a)  A secured party's acceptance of collateral in full or partial satisfaction of the obligation it secures:

(1)  discharges the obligation to the extent consented to by the debtor;

(2)  transfers to the secured party all of a debtor's rights in the collateral;

(3)  discharges the security interest or agricultural lien that is the subject of the debtor's consent and any subordinate security interest or other subordinate lien; and

(4)  terminates any other subordinate interest.

(b)  A subordinate interest is discharged or terminated under Subsection (a), even if the secured party fails to comply with this chapter.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.623.  RIGHT TO REDEEM COLLATERAL.  (a)  A debtor, any secondary obligor, or any other secured party or lienholder may redeem collateral.

(b)  To redeem collateral, a person shall tender:

(1)  fulfillment of all obligations secured by the collateral; and

(2)  the reasonable expenses and attorneys' fees described in Section 9.615(a)(1).

(c)  A redemption may occur at any time before a secured party:

(1)  has collected collateral under Section 9.607;

(2)  has disposed of collateral or entered into a

contract for its disposition under Section 9.610; or

        (3)  has  accepted  collateral  in  full  or  partial
satisfaction of the obligation it secures under Section 9.622.
Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1,
2001.


        Sec. 9.624.  WAIVER.  (a)  A debtor or secondary obligor may
waive the right to notification of disposition of collateral under
Section 9.611 only by an agreement to that effect entered into and
authenticated after default.

        (b)  A debtor may waive the right to require disposition of
collateral under Section 9.620(e) only by an agreement to that
effect entered into and authenticated after default.

        (c)  Except  in  a  consumer-goods  transaction,  a  debtor  or
secondary obligor may waive the right to redeem collateral under
Section 9.623 only by an agreement to that effect entered into and
authenticated after default.
Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1,
2001.


        Sec. 9.625.  REMEDIES FOR SECURED PARTY'S FAILURE TO COMPLY
WITH CHAPTER.  (a)  If it is established that a secured party is not
proceeding in accordance with this chapter, a court may order or
restrain collection, enforcement, or disposition of collateral on
appropriate terms and conditions.

        (b)  Subject to Subsections (c), (d), and (f), a person is
liable for damages in the amount of any loss caused by a failure to
comply with this chapter.  Loss caused by a failure to comply may
include loss resulting from the debtor's inability to obtain, or
increased costs of, alternative financing.

        (c)  Except as otherwise provided in Section 9.628:

        (1)  a person that, at the time of the failure, was a
debtor, was an obligor, or held a security interest in or other lien
on the collateral may recover damages under Subsection (b) for its
loss; and

        (2)  if the collateral is consumer goods, a person that
was a debtor or a secondary obligor at the time a secured party

136

failed to comply with this subchapter may recover for that failure in any event an amount not less than the credit service charge plus 10 percent of the principal amount of the obligation or the time price differential plus 10 percent of the cash price.

(d)  A debtor whose deficiency is eliminated under Section 9.626 may recover damages for the loss of any surplus.  However, a debtor or secondary obligor whose deficiency is eliminated or reduced under Section 9.626 may not otherwise recover under Subsection (b) for noncompliance with the provisions of this subchapter relating to collection, enforcement, disposition, or acceptance.

(e)  In addition to any damages recoverable under Subsection (b), the debtor, consumer obligor, or person named as a debtor in a filed record, as applicable, may recover $500 in each case from a person that:

(1)  fails to comply with Section 9.208;

(2)  fails to comply with Section 9.209;

(3)  files a record that the person is not entitled to file under Section 9.509(a);

(4)  fails to cause the secured party of record to file or send a termination statement as required by Section 9.513(a) or (c);

(5)  fails to comply with Section 9.616(b)(1) and whose failure is part of a pattern, or consistent with a practice, of noncompliance; or

(6)  fails to comply with Section 9.616(b)(2).

(f)  A debtor or consumer obligor may recover damages under Subsection (b) and, in addition, $500 in each case from a person that, without reasonable cause, fails to comply with a request under Section 9.210.  A recipient of a request under Section 9.210 that never claimed an interest in the collateral or obligations that are the subject of a request under that section has a reasonable excuse for failure to comply with the request within the meaning of this subsection.

(g)  If a secured party fails to comply with a request regarding a list of collateral or a statement of account under Section 9.210, the secured party may claim a security interest only

as shown in the list or statement included in the request as against a person that is reasonably misled by the failure.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.  Amended by Acts 2001, 77th Leg., ch. 705, Sec. 22, eff. June 13, 2001.

Sec. 9.626.  ACTION IN WHICH DEFICIENCY OR SURPLUS IS IN ISSUE.  (a)  In an action arising from a transaction, other than a consumer transaction, in which the amount of a deficiency or surplus is in issue, the following rules apply:

(1)  A secured party need not prove compliance with the provisions of this subchapter relating to collection, enforcement, disposition, or acceptance unless the debtor or a secondary obligor places the secured party's compliance in issue.

(2)  If the secured party's compliance is placed in issue, the secured party has the burden of establishing that the collection, enforcement, disposition, or acceptance was conducted in accordance with this subchapter.

(3)  Except as otherwise provided in Section 9.628, if a secured party fails to prove that the collection, enforcement, disposition, or acceptance was conducted in accordance with the provisions of this subchapter relating to collection, enforcement, disposition, or acceptance, the liability of a debtor or a secondary obligor for a deficiency is limited to an amount by which the sum of the secured obligation, expenses, and attorney's fees exceeds the greater of:

(A)  the proceeds of the collection, enforcement, disposition, or acceptance; or

(B)  the amount of proceeds that would have been realized had the noncomplying secured party proceeded in accordance with the provisions of this subchapter relating to collection, enforcement, disposition, or acceptance.

(4)  For purposes of Subdivision (3)(B), the amount of proceeds that would have been realized is equal to the sum of the secured obligation, expenses, and attorney's fees unless the secured party proves that the amount is less than that sum.

(5)  If a deficiency or surplus is calculated under

138

Section 9.615(f), the debtor or obligor has the burden of establishing that the amount of proceeds of the disposition is significantly below the range of prices that a complying disposition to a person other than the secured party, a person related to the secured party, or a secondary obligor would have brought.

(b)  The limitation of the rules in Subsection (a) to transactions other than consumer transactions is intended to leave to the court the determination of the proper rules in consumer transactions.  The court may not infer from that limitation the nature of the proper rule in consumer transactions and may continue to apply established approaches.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.627.  DETERMINATION OF WHETHER CONDUCT WAS COMMERCIALLY REASONABLE.  (a)  The fact that a greater amount could have been obtained by a collection, enforcement, disposition, or acceptance at a different time or in a different method from that selected by the secured party is not of itself sufficient to preclude the secured party from establishing that the collection, enforcement, disposition, or acceptance was made in a commercially reasonable manner.

(b)  A disposition of collateral is made in a commercially reasonable manner if the disposition is made:

(1)  in the usual manner on any recognized market;

(2)  at the price current in any recognized market at the time of the disposition; or

(3)  otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition.

(c)  A collection, enforcement, disposition, or acceptance is commercially reasonable if it has been approved:

(1)  in a judicial proceeding;

(2)  by a bona fide creditors' committee;

(3)  by a representative of creditors; or

(4)  by an assignee for the benefit of creditors.

(d)  Approval under Subsection (c) need not be obtained, and lack of approval does not mean that the collection, enforcement, disposition, or acceptance is not commercially reasonable.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


Sec. 9.628.  NONLIABILITY AND LIMITATION ON LIABILITY OF SECURED PARTY; LIABILITY OF SECONDARY OBLIGOR. (a) Unless a secured party knows that a person is a debtor or obligor, knows the identity of the person, and knows how to communicate with the person:

(1)  the secured party is not liable to the person, or to a secured party or lienholder that has filed a financing statement against the person, for failure to comply with this chapter; and

(2)  the secured party's failure to comply with this chapter does not affect the liability of the person for a deficiency.

(b)  A secured party is not liable because of its status as secured party:

(1)  to a person that is a debtor or obligor, unless the secured party knows:

(A)  that the person is a debtor or obligor;

(B)  the identity of the person; and

(C)  how to communicate with the person; or

(2)  to a secured party or lienholder that has filed a financing statement against a person, unless the secured party knows:

(A)  that the person is a debtor; and

(B)  the identity of the person.

(c)  A secured party is not liable to any person, and a person's liability for a deficiency is not affected, because of any act or omission arising out of the secured party's reasonable belief that a transaction is not a consumer-goods transaction or a consumer transaction or that goods are not consumer goods, if the secured party's belief is based on its reasonable reliance on:

(1)  a debtor's representation concerning the purpose

140

for which collateral was to be used, acquired, or held; or

(2)  an obligor's representation concerning the purpose for which a secured obligation was incurred.

(d)  A secured party is not liable to any person under Section 9.625(c)(2) for its failure to comply with Section 9.616.

(e)  A secured party is not liable under Section 9.625(c)(2) more than once with respect to any one secured obligation.

Added by Acts 1999, 76th Leg., ch. 414, Sec. 1.01, eff. July 1, 2001.


SUBCHAPTER G. TRANSITION PROVISIONS


Sec. 9.701.  EFFECTIVE DATE OF REVISIONS.  (a)  In this subchapter, "revision" means the revision of this chapter enacted by the 76th Legislature, Regular Session, 1999.

(b)  The revision takes effect July 1, 2001.

Reenacted from Acts 1999, 76th Leg., ch. 414 and amended by Acts 2001, 77th Leg., ch. 705, Sec. 23, eff. June 13, 2001.


Sec. 9.702.  SAVING CLAUSE.  (a)  Except as otherwise provided in this subchapter, this chapter, as revised, applies to a transaction or lien within its scope, even if the transaction or lien was entered into or created before the revision takes effect.

(b)  Except as otherwise provided in Subsection (c) and Sections 9.703-9.709:

(1)  transactions and liens that were not governed by this chapter, as it existed immediately before the effective date of the revision, were validly entered into or created before the effective date of the revision, and would be subject to this chapter, as revised, if they had been entered into or created on or after the effective date of the revision, and the rights, duties, and interests flowing from those transactions and liens remain valid on and after the effective date of the revision; and

(2)  the transactions and liens may be terminated, completed, consummated, and enforced as required or permitted by this chapter, as revised, or by the law that otherwise would apply if the revision had not taken effect.

141

(c)  The  revision  does  not  affect  an  action,  case,  or
proceeding commenced before the effective date of the revision.
Reenacted from Acts 1999, 76th Leg., ch. 414, Sec. 3.02 and amended
by Acts 2001, 77th Leg., ch. 705, Sec. 23, eff. June 13, 2001.


       Sec. 9.703.   SECURITY INTEREST PERFECTED BEFORE EFFECTIVE
DATE.  (a)  A security interest that is enforceable immediately
before the effective date of the revision and would have priority
over the rights of a person that becomes a lien creditor at that
time  is  a  perfected  security  interest  under  this  chapter,  as
revised, if, on the effective date of the revision, the applicable
requirements for enforceability and perfection under this chapter,
as revised, are satisfied without further action.

       (b)  Except  as  otherwise  provided  in  Section  9.705,  if,
immediately before the revision takes effect, a security interest
is enforceable and would have priority over the rights of a person
that  becomes  a  lien  creditor  at  that  time,  but  the  applicable
requirements for enforceability or perfection under this chapter,
as revised, are not satisfied when the revision takes effect, the
security interest:

              (1)  is  a  perfected  security  interest  until  July  1,
2002;

              (2)  remains enforceable after June 30, 2002, only if
the security interest becomes enforceable under Section 9.203, as
revised, before July 1, 2002; and

              (3)  remains perfected after June 30, 2002, only if the
applicable  requirements  for  perfection  under  this  chapter,  as
revised, are satisfied before July 1, 2002.
Reenacted from Acts 1999, 76th Leg., ch. 414, Sec. 3.03 and amended
by Acts 2001, 77th Leg., ch. 705, Sec. 23, eff. June 13, 2001.


       Sec. 9.704.   SECURITY INTEREST UNPERFECTED BEFORE EFFECTIVE
DATE.  A security interest that is enforceable immediately before
the  revision  takes  effect  but  that  would  be  subordinate  to  the
rights of a person that becomes a lien creditor at that time:

              (1)  remains  an  enforceable  security  interest  until
July 1, 2002;

142

(2)   remains enforceable after June 30, 2002, if the security interest becomes enforceable under Section 9.203, as revised, before July 1, 2002; and

(3)   becomes perfected:

(A)   without further action, when the revision takes effect, if the applicable requirements for perfection under this chapter, as revised, are satisfied before or at that time; or

(B)   when the applicable requirements for perfection are satisfied if the requirements are satisfied after the revision takes effect.

Reenacted from Acts 1999, 76th Leg., ch. 414, Sec. 3.04 and amended by Acts 2001, 77th Leg., ch. 705, Sec. 23, eff. June 13, 2001.

Sec. 9.705.   EFFECTIVENESS OF ACTION TAKEN BEFORE EFFECTIVE DATE.   (a)   If action, other than the filing of a financing statement, is taken before the revision takes effect and the action would have resulted in priority of a security interest over the rights of a person that becomes a lien creditor had the security interest become enforceable before the revision takes effect, the action is effective to perfect a security interest that attaches under this chapter, as revised, within one year after the effective date of the revision. An attached security interest becomes unperfected on July 1, 2002, unless the security interest becomes a perfected security interest under this chapter, as revised, before that date.

(b)   The filing of a financing statement before the effective date of the revision is effective to perfect a security interest to the extent the filing would satisfy the applicable requirements for perfection under this chapter, as revised.

(c)   The revision does not render ineffective an effective financing statement that, before the effective date of the revision, is filed and satisfies the applicable requirements for perfection under the law of the jurisdiction governing perfection as provided in Section 9.103, as it existed immediately before the effective date of the revision. However, except as otherwise provided in Subsections (d), (e), and (g) and Section 9.706, the financing statement ceases to be effective at the earlier of:

(1)  the time the financing statement would have ceased to be effective under the law of the jurisdiction in which it is filed; or

(2)  June 30, 2006.

(d)  The filing of a continuation statement after the revision takes effect does not continue the effectiveness of the financing statement filed before the revision takes effect. However, upon the timely filing of a continuation statement after the revision takes effect and in accordance with the law of the jurisdiction governing perfection as provided in Subchapter C, as revised, the effectiveness of a financing statement filed in the same office in that jurisdiction before the revision takes effect continues for the period provided by the law of that jurisdiction.

(e)  Subsection (c)(2) applies to a financing statement that, before the revision takes effect, is filed against a transmitting utility and satisfies the applicable requirements for perfection under the law of the jurisdiction governing perfection as provided in Section 9.103, as it existed immediately before the effective date of the revision, only to the extent that Subchapter C, as revised, provides that the law of a jurisdiction other than the jurisdiction in which the financing statement is filed governs perfection of a security interest in collateral covered by the financing statement.

(f)  A financing statement that includes a financing statement filed before the revision takes effect and a continuation statement filed after the revision takes effect is effective only to the extent that it satisfies the requirements of Subchapter E, as revised, for an initial financing statement.

(g)  Subsection (c)(2) does not apply to a financing statement that was filed before July 1, 2001, in the proper office in this state pursuant to Section 9.401, as that section existed immediately before July 1, 2001, and as to which the proper filing office was not changed pursuant to Section 9.501 of the revision.  The lapse date of such a financing statement is the day when the financing statement would have ceased to be effective under Section 9.403(b), as that section existed immediately before July 1, 2001.  On timely filing of a continuation statement within

144

six months before that lapse date, the effectiveness of the financing statement continues for another period of five years commencing on the lapse date, and succeeding continuation statements may be filed within six months before the expiration of the five-year period and each additional five-year period to continue the effectiveness of the financing statement.

Reenacted from Acts 1999, 76th Leg., ch. 414, Sec. 3.05 and amended by Acts 2001, 77th Leg., ch. 705, Sec. 23, eff. June 13, 2001.

Amended by:

Acts 2007, 80th Leg., R.S., Ch. 565, Sec. 5, eff. June 16, 2007.


Sec. 9.706. WHEN INITIAL FINANCING STATEMENT SUFFICES TO CONTINUE EFFECTIVENESS OF FINANCING STATEMENT. (a) The filing of an initial financing statement in the office specified in Section 9.501, as revised, continues the effectiveness of a financing statement filed before the revision takes effect if:

(1) the filing of an initial financing statement in that office would be effective to perfect a security interest under this chapter, as revised;

(2) the pre-effective-date financing statement was filed in an office in another state or another office in this state; and

(3) the initial financing statement satisfies Subsection (c).

(b) The filing of an initial financing statement under Subsection (a) continues the effectiveness of the pre-effective-date financing statement:

(1) if the initial financing statement is filed before the revision takes effect, for the period provided in Section 9.403, as it existed immediately before the effective date of the revision, with respect to a financing statement; and

(2) if the initial financing statement is filed after the revision takes effect, for the period provided in Section 9.515, as revised, with respect to an initial financing statement.

(c) To be effective for purposes of Subsection (a), an initial financing statement must:

(1)  satisfy  the  requirements  of  Subchapter  E,  as
revised, for an initial financing statement;

(2)  identify  the  pre-effective-date  financing
statement by indicating the office in which the financing statement
was  filed  and  providing  the  dates  of  filing  and  file  numbers,  if
any, of the financing statement and of the most recent continuation
statement filed with respect to the financing statement; and

(3)  indicate  that  the  pre-effective-date  financing
statement remains effective.

Reenacted from Acts 1999, 76th Leg., ch. 414, Sec. 3.06 and amended
by Acts 2001, 77th Leg., ch. 705, Sec. 23, eff. June 13, 2001.


Sec. 9.707.  AMENDMENT  OF  PRE-EFFECTIVE-DATE  FINANCING
STATEMENT.  (a)  In this section, "pre-effective-date financing
statement" means a financing statement filed before the revision
takes effect.

(b)  After  the  revision  takes  effect,  a  person  may  add  or
delete  collateral  covered  by,  continue  or  terminate  the
effectiveness of, or otherwise amend the information provided in a
pre-effective-date financing statement only in accordance with the
law  of  the  jurisdiction  governing  perfection  as  provided  in
Subchapter C.  However, the effectiveness of a pre-effective-date
financing statement also may be terminated in accordance with the
law of the jurisdiction in which the financing statement is filed.

(c)  Except as otherwise provided in Subsection (d), if the
law of this state governs perfection of a security interest, the
information  in  a  pre-effective-date  financing  statement  may  be
amended after the revision takes effect only if:

(1)  the pre-effective-date financing statement and an
amendment are filed in the office specified in Section 9.501;

(2)  an amendment is filed in the office specified in
Section 9.501 concurrently with, or after the filing in that office
of, an initial financing statement that satisfies Section 9.706(c);
or

(3)  an initial financing statement that provides the
information as amended and satisfies Section 9.706(c) is filed in
the office specified in Section 9.501.

**EXHIBIT 241**

(d)  If the law of this state governs perfection of a security interest, the effectiveness of a pre-effective-date financing statement may be continued only under Sections 9.705(d) and (f) or Section 9.706.

(e)  Whether or not the law of this state governs perfection of a security interest, the effectiveness of a pre-effective-date financing statement filed in this state may be terminated after the revision takes effect by filing a termination statement in the office in which the pre-effective-date financing statement is filed, unless an initial financing statement that satisfies Section 9.706(c) has been filed in the office specified by the law of the jurisdiction governing perfection as provided in Subchapter C as the office in which to file a financing statement.

Reenacted from Acts 1999, 76th Leg., ch. 414, and amended by Acts 2001, 77th Leg., ch. 705, Sec. 23, eff. June 13, 2001.


Sec. 9.708.   PERSONS ENTITLED TO FILE INITIAL FINANCING STATEMENT OR CONTINUATION STATEMENT.  A person may file an initial financing statement or a continuation statement under this subchapter if:

(1)  the secured party of record authorizes the filing; and

(2)  the filing is necessary under this subchapter:

(A)  to continue the effectiveness of a financing statement filed before the revision takes effect; or

(B)  to perfect or continue the perfection of a security interest.

Reenacted from Acts 1999, 7th Leg., ch. 414, Sec. 3.07 and amended by Acts 2001, 77th Leg., ch. 705, Sec. 23, eff. June 13, 2001.


Sec. 9.709.   PRIORITY.   (a)  This chapter, as revised, determines the priority of conflicting claims to collateral. However, if the relative priorities of the claims were established before the revision takes effect, this chapter, as it existed before the effective date of the revision, determines priority.

(b)  For purposes of Section 9.322(a), as revised, the priority of a security interest that becomes enforceable under

**EXHIBIT 241**

Section 9.203, as revised, dates from the time the revision takes effect if the security interest is perfected under this chapter, as revised, by the filing of a financing statement before the revision takes effect that would not have been effective to perfect the security interest under this chapter, as it existed immediately before the effective date of the revision. This subsection does not apply to conflicting security interests each of which is perfected by the filing of such a financing statement.

Reenacted from Acts 1999, 76th Leg., ch. 414, Sec. 3.08 and amended by Acts 2001, 77th Leg., ch. 705, Sec. 23, eff. June 13, 2001.