FILED IN OPEN COURT

/1.20.12

CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE

UNITED STATES OF AMERICA :
:
v. : CASE NO. 3:12 - *CR.198.J.25-mcR*
:
LORRAINE BROWN :

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America by and through

United States Attorney for the Middle District of Florida Robert E. O'Neill and United

States Department of Justice Criminal Division - Fraud Section Chief Denis McInerney

(hereinafter also referred to as "the Government" or the "United States"), and the

defendant Lorraine Brown with defendant's attorney Mark Rosenblum, Esq., agree as

follows:

A.    **Particularized Terms**

1.    **Count Pleading To**

The defendant shall enter a plea of guilty to Count One of the Information.

Count One charges the defendant with Conspiracy to Commit Mail and Wire Fraud, in

violation of 18 U.S.C. § 371.

2.    **Maximum Penalties**

Count One carries a maximum sentence of up to five (5) years

imprisonment, a fine of up to a fine of up to $250,000 or twice the gross pecuniary gain

or twice the gross pecuniary loss occasioned by the offense, a term of supervised

Defendant's Initials _____        AF Approval _____

release of not more than three (3) years, and a special assessment of $100, said
special assessment to be due on the date of sentencing. With respect to certain
offenses, the Court shall order the defendant to make restitution to any victim of the
offense, and with respect to other offenses, the Court may order the defendant to make
restitution to any victim of the offense, or to the community, as set forth below.

3.      **Elements of the Offense**

The defendant acknowledges understanding the nature and elements of
the offense with which defendant has been charged and to which defendant is pleading
guilty. The elements of Count One are:

> First:      That two or more persons, in some way or manner,
> agreed to try to accomplish a common and unlawful
> plan to commit mail fraud or wire fraud, as charged in
> the information;
>
> Second:   The Defendant knew the unlawful purpose of the plan and
> willfully joined in it; and
>
> Third:     One of the conspirators committed an overt act in
> furtherance of the conspiracy.

4.      **No Further Charges**

If the Court accepts this plea agreement, the United States Attorney's
Office for the Middle District of Florida and the United States Department of Justice
agree not to charge defendant with committing any other federal criminal offenses
known to the Government at the time of the execution of this agreement related to the
conduct giving rise to this plea agreement.

Defendant's Initials _____         2

5.    <u>Mandatory Restitution to Victim of Offense of Conviction</u>

Pursuant to 18 U.S.C. §§ 3663A(a) and (b), defendant agrees to make full restitution to any victims of the offense, as determined by the Court at sentencing.

6.    <u>Acceptance of Responsibility - Three Levels</u>

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b), the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

Defendant's Initials _____        3

7.    **Forfeiture of Assets**

The defendant agrees to forfeit to the United States immediately and voluntarily

any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18

U.S.C. 981 and 28 U.S.C. § 2461(c), whether in the possession or control of the United

States or in the possession or control of the defendant or defendant's nominees.  The

property and the amount of proceeds to be forfeited to the United States will be

determined by the Court at or before the sentencing hearing.  The defendant agrees

and consents to the forfeiture of these assets pursuant to any federal criminal, civil,

and/or administrative forfeiture action.  The defendant also hereby agrees that the

forfeiture described herein is not excessive and, in any event, the defendant waives any

constitutional claims that the defendant may have that the forfeiture constitutes an

excessive fine.  The defendant agrees that the United States shall, at its option, be

entitled to the forfeiture of any property (substitute assets) of the defendant up to the

value of the money judgment.

The defendant admits and agrees that the conduct described in the Factual

Basis below provides a sufficient factual and statutory basis for the forfeiture of the

property sought by the Government.  Pursuant to the provisions of Rule 32.2(b)(1), the

United States and the defendant request that at the time of accepting this plea

agreement, the court make a determination that the Government has established the

requisite nexus between the property subject to forfeiture and the offense(s) to which

defendant is pleading guilty and enter a preliminary order of forfeiture.  Pursuant to

Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture shall be

final as to the defendant at the time it is entered, notwithstanding the requirement that it

be made a part of the sentence and be included in the judgment.

Defendant's Initials _____          4

Case 9:92-cv-00798-HEA-MCR Document 6 Filed 07/10/14 Page 5 of 21 PageID 67
Case 2:12-cr-00726-MCR Document 6 Filed 07/14/14 Page 5 of 21 PageID 682
Pg 5 of 21

The defendant agrees to forfeit all interests in the properties described above and to take whatever steps are necessary to pass clear title to the United States. These steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Defendant further agrees to take all steps necessary to locate property and to pass title to the United States before the defendant's sentencing. To that end, defendant agrees to fully assist the Government in the recovery and return to the United States of any assets, or portions thereof, as described above wherever located. The defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control and those which are held or controlled by a nominee. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States.

The defendant agrees that the United States is not limited to forfeiture of the property described above. If the United States determines that property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; then the United States shall, at its option, be entitled to forfeiture of any other property (substitute assets) of the defendant up to the value of any property described above. This Court shall retain jurisdiction to settle any disputes arising from application of this clause. The

Defendant's Initials _____          5

defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

8.    **Concurrent Sentencing**

The United States agrees not to oppose any argument by the Defendant with the sentencing Court that any sentence imposed by the Court run concurrent with any sentences imposed by any state courts for state criminal charges generally based upon the conduct underlying the instant plea. Should there be a sentence imposed by any other state court, it is the parties' intention that any sentence ordered by the Court in this case be served prior to any remaining time on any such state terms of imprisonment. This agreement in no way limits the Court's authority to render whatever lawful sentence it deems appropriate in this case.

9.    **Cooperation with Ongoing Prosecutions of Others**

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons or entities, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters. Such cooperation includes a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and

Defendant's Initials             6

other objects in defendant's possession or control, and to be reasonably available for
interviews which the United States may require.

B.     **Standard Terms and Conditions**

1.     **Restitution, Special Assessment and Fine**

The defendant understands and agrees that the Court, in addition to or in

lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of

the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. §

3663A(c)(1) (limited to offenses committed on or after April 24, 1996); and the Court

may order the defendant to make restitution to any victim of the offense(s), pursuant to

18 U.S.C. § 3663 (limited to offenses committed on or after November 1, 1987),

including restitution as to all counts charged, whether or not the defendant enters a plea

of guilty to such counts, and whether or not such counts are dismissed pursuant to this

agreement.  On each count to which a plea of guilty is entered, the Court shall impose a

special assessment, to be payable to the Clerk's Office, United States District Court,

and due on date of sentencing.  The defendant understands that this agreement

imposes no limitation as to fine.

2.     **Supervised Release**

The defendant understands that the offense(s) to which the defendant is

pleading provide(s) for imposition of a term of supervised release upon release from

imprisonment, and that, if the defendant should violate the conditions of release, the

defendant would be subject to a further term of imprisonment.

Defendant's Initials _____                          7

3.    **Sentencing Information**

The United States reserves its right and obligation to report to the Court
and the United States Probation Office all information concerning the background,
character, and conduct of the defendant, to provide relevant factual information,
including the totality of the defendant's criminal activities, if any, not limited to the
count(s) to which defendant pleads, to respond to comments made by the defendant or
defendant's counsel, and to correct any misstatements or inaccuracies. The United
States further reserves its right to make any recommendations it deems appropriate
regarding the disposition of this case, subject to any limitations set forth herein, if any.

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii),
the defendant agrees to complete and submit, upon execution of this plea agreement,
an affidavit reflecting the defendant's financial condition. The defendant further agrees,
and by the execution of this plea agreement, authorizes the United States Attorney's
Office to provide to, and obtain from, the United States Probation Office, the financial
affidavit, any of the defendant's federal, state, and local tax returns, bank records and
any other financial information concerning the defendant, for the purpose of making any
recommendations to the Court and for collecting any assessments, fines, restitution, or
forfeiture ordered by the Court.

4.    **Sentencing Recommendations**

It is understood by the parties that the Court is neither a party to nor
bound by this agreement. The Court may accept or reject the agreement, or defer a
decision until it has had an opportunity to consider the presentence report prepared by

Defendant's Initials _____          8

Case 9:12-cv-00798-HEA-MCR Document 10 Filed 07/10/14 Page 9 of 21 PageID 22
Case 3:12-cv-00798-HEA-MCR Document 16 Filed 07/10/14 Page 9 of 21 Exhibit 632
Pg 9 of 21

the United States Probation Office. The defendant understands and acknowledges that,
although the parties are permitted to make recommendations and present arguments to
the Court, the sentence will be determined solely by the Court, with the assistance of
the United States Probation Office. Defendant further understands and acknowledges
that any discussions between defendant or defendant's attorney and the attorney or
other agents for the Government regarding any recommendations by the Government
are not binding on the Court and that, should any recommendations be rejected,
defendant will not be permitted to withdraw defendant's plea pursuant to this plea
agreement. The Government expressly reserves the right to support and defend any
decision that the Court may make with regard to the defendant's sentence, whether or
not such decision is consistent with the Government's recommendations contained
herein.

     5.    **Defendant's Waiver of Right to Appeal**

     The defendant agrees that this Court has jurisdiction and authority to
impose any sentence up to the statutory maximum and expressly waives the right to
appeal defendant's sentence on any ground, including the ground that the Court erred
in determining the applicable guidelines range pursuant to the United States Sentencing
Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable
guidelines range as determined by the Court pursuant to the United States Sentencing
Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or
(c) the ground that the sentence violates the Eighth Amendment to the Constitution;
provided, however, that if the Government exercises its right to appeal the sentence

Defendant's Initials _____        9

imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his

waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

6. **Middle District of Florida and Criminal Division Agreement**

It is further understood that this agreement is limited to the Office of the

United States Attorney for the Middle District of Florida and the United States

Department of Justice Criminal Division - Fraud Section and cannot bind other federal,

state, or local prosecuting authorities, although these offices will bring defendant's

cooperation, if any, to the attention of other prosecuting officers or others, if requested.

7. **Filing of Agreement**

This agreement shall be presented to the Court, in open court or in

camera, in whole or in part, upon a showing of good cause, and filed in this cause, at

the time of defendant's entry of a plea of guilty pursuant hereto.

8. **Voluntariness**

The defendant acknowledges that defendant is entering into this

agreement and is pleading guilty freely and voluntarily without reliance upon any

discussions between the attorneys for the Government and the defendant and

defendant's attorney and without promise of benefit of any kind (other than the

concessions contained herein), and without threats, force, intimidation, or coercion of

any kind. The defendant further acknowledges defendant's understanding of the nature

of the offense or offenses to which defendant is pleading guilty and the elements

thereof, including the penalties provided by law, and defendant's complete satisfaction

with the representation and advice received from defendant's undersigned counsel (if

Defendant's Initials                     10

any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

9. **Factual Basis**

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

Defendant's Initials           11

10.    **Entire Agreement**

This plea agreement constitutes the entire agreement between the

Government and the defendant with respect to the aforementioned guilty plea and no

other promises, agreements, or representations exist or have been made to the

defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials _____                    12

## 11.   **Certification**

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this ___13___ day of November, 2012.

ROBERT E. O'NEILL
United States Attorney

LORRAINE BROWN
Defendant

By: _____
MARK B. DEVERERAUX
Assistant United States Attorney

MARK ROSENBLUM, Esq.
Attorney for Defendant

MAC D. HEAVENER, III
Assistant United States Attorney
Deputy Chief, Jacksonville Division

DENIS McINERNEY
Chief, Fraud Section - Criminal Division
United States Dept. of Justice

By: _____
RYAN ROHLFSEN
Trial Attorney, Fraud Section

Glenn Leon
Assistant Chief, Fraud Section

Defendant's Initials _____          13

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                    Case No. 3:12

LORRAINE BROWN

_____

### PERSONALIZATION OF ELEMENTS

1.    Do you admit that at least from 2005 and continuing thereafter until in or

about October 2009, in Duval county, in the Middle District of Florida, Alpharetta,

Georgia, and elsewhere, that two or more persons, in some way or manner, agreed to

try to accomplish a common and unlawful plan to commit mail and wire fraud, as

charged in the information?

2.    Do you admit you knew the unlawful purpose of the plan and willfully

joined in it?

Defendant's Initials                 14

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                    Case No. 3:12

LORRAINE BROWN

_____

### FACTUAL BASIS

At a trial of this case, the United States would be prepared to prove beyond
reasonable doubt the following facts:

### BACKGROUND

#### *Brown, DocX, and LPS*

The defendant, Lorraine Brown (hereinafter "Brown"), founded DocX LLC in the
1990s in Ohio. As discussed more fully below, DocX LLC was involved in the
preparation and recordation of mortgage-related documents throughout the country. In
the early 2000s, Brown relocated the bulk of DocX LLC's operations to Alpharetta,
Georgia – a suburb of Atlanta. (The Alpharetta operations of DocX LLC are referred to
herein as "DocX" regardless of the timeframe and corporate ownership.)

In mid-2005, Jacksonville, Florida-based Fidelity National Financial, Inc. ("FNF")
purchased DocX from Brown and her partners for approximately $6 million. Through
corporate reorganizations within FNF, DocX later fell under ownership of Fidelity
National Information Services, Inc. ("FNIS"). In mid-2008, FNIS spun off a number of
business lines into a new publicly-traded entity, Lender Processing Services, Inc.

Defendant's Initials _____

Case 3:12-cr-00098-HEA-MCR Document 1 Filed 07/10/14 Page 16 of 21 PageID 32
Case 3:12-cr-00098-HEA-MCR Document 1 Filed 07/20/14 Page 16 of 21 PageID 38
Pg 16 of 21

("LPS"), based in Jacksonville, Florida. At that time, DocX was rebranded as "LPS Document Solutions, a Division of LPS." Following this spin-off, Brown was the President and Senior Managing Director of LPS Document Solutions, which constituted DocX's operations. At all times relevant to this statement of facts, Brown was the chief executive of DocX.

### *DocX's Operations*

DocX's main clients were residential mortgage servicers (the "servicers"), which typically undertake certain actions for mortgage lenders. These duties include, among others, accepting and recording mortgage payments, paying taxes and insurance from borrower escrow accounts, and conducting or supervising the foreclosure process when necessary.

DocX maintained a proprietary system called the Recorders Information Database ("RID"), which contained the various filing requirements and fees imposed by each of the thousands of county recorders' offices throughout the United States. DocX's servicer-clients could pay for access to the RID database. Clients could also hire DocX to assist in creating and executing mortgage-related documents filed with recorders' offices. The majority of documents created and recorded by DocX between 2003 and 2009 were lien releases, which evidence payment in full of a mortgage-backed note. DocX also executed mortgage assignments, which purport to transfer the note's ownership interest. Mortgage assignments were typically created during the foreclosure process, and the volume of these documents dramatically increased at DocX during the foreclosure crisis of 2007 to 2009. DocX also signed lost note and lost assignment affidavits related to mortgage documents.

Defendant's Initials _____          2

From at least March 2003 through November 2009, Brown marketed DocX as an outsourcing solution to mortgage servicers for filing and recording mortgage documents throughout the United States. Brown represented to clients that DocX had robust quality control procedures in place to ensure a thorough and proper signing, notarization, and recordation process.  As a result of these representations, clients hired DocX.

When hiring DocX to sign documents, servicers typically issued special corporate resolutions delegating document execution authority to specific, authorized, and trained personnel at DocX. The DocX employees who were given express signing authority from DocX's clients and who, as represented by Brown, were purportedly trained to ensure that the clients' documents were properly created, signed, and notarized were called "Authorized Signers." These documents were then generally recorded by DocX with the appropriate local property recorders' offices throughout the country.

In exchange for this service, DocX was paid a fee by its clients that varied from approximately $5 to $15 per document depending upon, among other items, the type of document and client. Between 2003 and 2009, DocX generated approximately $60 million in gross revenue.

Defendant's Initials _____                    3

## THE SCHEME

### *False Signing and Fraudulent Notarization*

Beginning in or about 2003 and continuing through November 2009, employees of DocX at the direction of Brown and others, began forging and falsifying signatures on the mortgage-related documents that they had been hired to prepare and file with property recorders' offices throughout the United States. Unbeknownst to the clients, the Authorized Signers were instructed or authorized by Brown to allow other DocX employees, who were not Authorized Signers, to sign and notarize the mortgage-related documents as if the actually executed by the Authorized Signer.

For example, one of Brown's co-conspirators who was a member of Brown's senior management team, after being named an Authorized Signer for a client, sent an e-mail to a colleague stating that she actually had no intention of ever signing a single document. Rather, Brown's co-conspirator planned on using other employees to sign the documents on her behalf, knowing that those documents would also be notarized as if the co-conspirator herself had actually signed the document. Thus, even through clients were told that a senior DocX manager would be preparing and signing the client documents, there was never any intention to do so.

Brown implemented these signing practices at DocX to enable DocX (and Brown) to generate greater profit. Specifically, DocX was able to create, execute, and file larger volumes of documents using these signing and notarization practices. More documents meant more money. To further increase profits, DocX also hired temporary workers to sign as Authorized Signers. These temporary employees worked for much lower costs and without the quality control represented by Brown to DocX's clients. In fact, some of

Defendant's Initials _____     4

these temporary workers were able to sign thousands of documents a day.

After these documents were falsely signed and fraudulently notarized, Brown authorized DocX employees to send them through the mails or by electronic methods for recording with local county property records offices across the nation. Many of these documents – particularly mortgage assignments, lost note affidavits, and lost assignment affidavits – were later relied upon in court proceedings, including property foreclosures and federal bankruptcy actions. Brown understood that these property recorders, courts, title insurers, and homeowners, relied upon the documents as genuine.

Indeed, on at least one occasion, in or around 2005 an official with a county recorder's office in California called DocX after noticing that DocX submitted a number of documents obviously falsified signatures. The official told DocX employees that these documents were fraudulent. DocX then re-filed these documents with that county after properly signing and notarizing them. Brown was aware of this incident.

The exact number of documents created by DocX with fraudulent signature and notarizations is presently unknown. It is estimated, however, that between 2003 and 2009 well over 1 million such documents were executed and filed with property recorders' offices across the nation.

### *Efforts to Conceal*

While engaging in this scheme to charge fees to DocX clients for products and services that the clients never received, Brown and others took various steps to conceal their actions from detection.

Defendant's Initials _____         5

Brown and her co-conspirators took actions to conceal the fake signatures and false notarization. For example, Brown's co-conspirator, at Brown's direction and authorization, trained new DocX signers to mimic the actual signatures of the Authorized Signers, and then tested them on their ability to do so before signing client documents. To assist in the scheme, samples of the actual Authorized Signers' signatures were taped to the signing tables. To provide an additional layer of sham authenticity, the documents were then falsely notarized. Brown authorized or directed these practices.

Additional acts of concealment were taken. After certain DocX employees raised concerns about the legality of the signing practices, Brown developed official-looking, in-house signing policies purporting to delegate signing authority from the Authorized Signers to other DocX employees. Starting in 2003, the policy was called "Facsimile Signature." In early 2009, the practice was labeled "Surrogate Signing."

Brown and her co-conspirators also concealed their conduct from clients, instructing DocX employees to hide their signing practices during client visits. Further, Brown hid DocX's signing practices from LPS's corporate headquarters. For example, in mid-2009, LPS auditors visited Alpharetta to conduct a risk assessment of DocX. Prior to the visit, Brown provided documents to the auditors describing the process DocX used in executing documents. Brown deliberately concealed from the auditors that the above-described signing practices were being used at that time.

## *Further Acts of Deception and Attempted Cover-Up*

In October 2009, an individual sent a letter to LPS corporate headquarters in Jacksonville, Florida alleging fraud and forgery in the execution of documents related to

Defendant's Initials _____ 6

his mortgage by DocX. Upon receipt of the letter, LPS corporate representatives confronted Brown. Brown falsely stated that she was unaware of DocX's signing practices and blamed the conduct on two "rogue" employees. Shortly thereafter, LPS terminated Brown's employment.

Even after she was fired, Brown attempted to conceal her role in the scheme. Specifically, on February 9, 2010, Brown was interviewed by an agent with the Federal Bureau of Investigation ("FBI"). During that interview, Brown made several material false statements to the FBI, including the following: (i) at no time did Brown instruct any individual at DocX to pursue the "Surrogate Signing" practices for the business; (ii) Brown was unaware of DocX's "Surrogate Signer" program and was never informed by her management staff that they were engaging in such activity with their clients' financial documentation; and (iii) Brown did not learn of DocX's use of the "Surrogate Signer" program until LPS corporate personnel first contacted her in October 2009. Ms. Brown knowingly made these false statements to the FBI in an effort to further conceal her role in the scheme.

Defendant's Initials _____            7