Filed:  June 6, 2013

IN THE SUPREME COURT OF THE STATE OF OREGON

BART G. BRANDRUP
and JESSICA D. BRANDRUP,
husband and wife,

Plaintiffs,

v.

RECONTRUST COMPANY, N.A.;
BANK OF AMERICA, N.A.,
successor by merger with BAC Home Loans Servicing, LP;
THE BANK OF NEW YORK MELLON,
fka The Bank of New York,
as Trustee for The Certificate Holders Cwalt, Inc.,
Alternative Loan Trust 2006-2CB, Mortgage Pass-through Certificates;
and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,INC.,

Defendants.

United States District Court 311CV1390HZ
_____

RUSSELL R. POWELL
and DIANE L. POWELL,
husband and wife,

Plaintiffs,

v.

RECONTRUST COMPANY, N.A.;
BANK OF AMERICA, N.A.,
successor by merger with BAC Home Loans Servicing, LP;
THE BANK OF NEW YORK MELLON,
fka The Bank of New York, as Trustee for The Certificate Holders Cwalt, Inc.,
Alternative Loan Trust 2007-OH3,
Mortgage Pass-through Certificates, series 2007-OH3;
and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,INC.,

Defendants.

United States District Court 311CV1399HZ
_____

1

DEANIRA MAYO
and REYNALDA PAEZ PLANCARTE,

                                                                    Plaintiffs,


        v.


RECONTRUST COMPANY, N.A.;
BANK OF AMERICA, N.A.,
successor by merger with Bac Home Loans Servicing, LP;
DEUTSCHE BANK NATIONAL TRUST COMPANY,
as Trustee for the Certificate Holders of the Morgan Stanley ABS Capital I, Inc.,
Trust 2005-HE2,
Mortgage Pass-through Certificates, Series 2005-HE2;
and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,INC.,

                                                                    Defendants.

United States District Court 311CV1533SI
_____

OMID MIRARABSHAHI,

                                                                    Plaintiff,


        v.


RECONTRUST COMPANY, N.A.;
BANK OF AMERICA, N.A.,
successor by merger with Bac Home Loans Servicing, LP;
THE BANK OF NEW YORK MELLON,
fka The Bank of New York, as Trustee for The Certificate Holders of CWMBS, INC.,
CHL Mortgage Pass-Through Trust 2007-4,
Mortgage Pass-through Certificates, Series 2007-4;
and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,INC.,

                                                                    Defendants.

United States District Court 312CV0010HA
(SC S060281)


        En Banc


        On certified questions from the United States District Court; certification order
dated April 2, 2012, certification accepted July 19, 2012, argued and submitted January 8,
2013.

Jeffrey A. Myers, Bowles Fernández Law LLC, Lake Oswego, argued the cause for plaintiffs. With him on the briefs were Jeffrey A. Myers, John Bowles, and Rick Fernández.

Gregory A. Chaimov, Davis Wright Tremaine LLP, Portland, and Thomas M. Hefferon, Goodwin Proctor LLP, Washington DC, argued the cause for defendants ReconTrust Company, N.A.; Bank of America, N.A.; The Bank of New York Mellon; and Deutsche Bank National Trust Company. With them on the brief were Steven A. Ellis, Thomas W. Sondag, Pilar C. French, and Peter D. Hawkes.

Kevin H. Kono, Davis Wright Tremaine LLP, Portland, filed a brief on behalf of defendants Mortgage Electronic Registration Systems, Inc.

Rolf C. Moan, Assistant Attorney General, Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General, filed a brief on behalf of *amicus curiae* State of Oregon.

Nanina D. Takla, Law Office of Phil Goldsmith, Portland, filed a brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

Sara Kobak, W. Michael Gillette, and Jordan Silk, Schwabe, Williamson & Wyatt, PC, Portland, filed a brief on behalf of *amicus curiae* Oregon Land Title Association.

Thomas W. Brown, Thomas M. Christ, and Robert E. Sabido, Cosgrave Vergeer Kester LLP, Portland, filed a brief on behalf of *amici curiae* Mortgate Bankers Association, Oregon Bankers Association, and Independent Community Banks of Oregon.

BREWER, J.

Certified questions answered.

Kistler, J., concurred in part and dissented in part, an filed an opinion in which Balmer, C.J., joined.

1    BREWER, J.

2    These cases come before this court on four certified questions of law from

3    the United States District Court for the District of Oregon.  *See Brandrup v. ReconTrust*

4    *Co*., 352 Or 320, 287 P3d 423 (2012) (accepting certified questions); ORS 28.200 to

5    28.255 (providing procedure for certifying questions to the Oregon Supreme Court and

6    authorizing court to answer certified questions).  The questions all are concerned with a

7    practice that has arisen in the home mortgage industry in the last twenty years -- that of

8    drafting mortgages and trust deeds so that a certain Delaware corporation, Mortgage

9    Electronic Registration Systems, Inc. (MERS), rather than the lender, is identified as the

10    security instrument's "mortgagee" or "beneficiary."  That practice allows lenders and

11    other entities dealing in home loans to track their transactions in a database maintained by

12    MERS.  In Oregon, the practice has come under scrutiny in a number of foreclosure cases

13    arising under the Oregon Trust Deed Act (OTDA), ORS 86.705 to ORS 86.795.

14    As will be explained more fully below, the OTDA provides an alternative

15    to the traditional judicial foreclosure process that is available only when the home loan is

16    secured by a trust deed, and, even then, only when certain conditions are satisfied.  One

17    condition for foreclosing under the OTDA is that "any assignments" of the trust deed by

18    the trust deed "beneficiary" be recorded in the real property records of the county where

19    the encumbered property is situated.  ORS 86.735(1).  Some homeowners threatened with

20    foreclosure under the OTDA have recognized that, although the original lenders

21    transferred their interests to other parties, the changes in beneficial ownership were not

22    recorded in the real property records of the counties where their properties are situated.

1

1    Those homeowners have resisted foreclosure under the OTDA on the ground that the

2    transfers were not recorded.  They argue, *inter alia*, that ORS 86.735(1) requires the

3    recording of any assignment of a trust deed by the owner of the beneficial interest in the

4    trust deed and that the identification of MERS as the trust deed "beneficiary" is

5    ineffective.

6            Some cases filed in Oregon state courts that have raised these issues have

7    been removed to federal court, and the judges within the District of Oregon have used

8    differing analyses and reached differing conclusions.  *See, e.g.*, *Sovereign v. Deutsche*

9    *Bank*, 856 F Supp 2d 1203 (D Or 2012); *James v. ReconTrust Co*., 845 F Supp 2d 1145

10    (D Or 2012); *Reeves v. ReconTrust Co.*, 846 F Supp 2d 1149 (D Or 2012); *Beyer v. Bank*

11    *of America*, 800 F Supp 2d 1157 (D Or 2011).  Recognizing that the issues turn on the

12    proper construction of Oregon statutes and that this court is the ultimate arbiter of such

13    matters, the district court in these cases certified the following questions to this court:

14            Certified Question No. 1:  May an entity, such as MERS, that is
15    neither a lender nor successor to a lender, be a 'beneficiary' as that term is
16    used in the Oregon Trust Deed Act?

17            Certified Question No. 2:  May MERS be designated as beneficiary
18    under the Oregon Trust Deed Act where the trust deed provides that MERS
19    "holds only legal title to the interests granted by Borrower in this Security
20    Instrument, but, if necessary to comply with law or custom, MERS (as
21    nominee for Lender and Lender's successors and assigns) has the right:  to
22    exercise any or all of those interests"?

23            Certified Question No. 3:  Does the transfer of a promissory note
24    from the lender to a successor result in an automatic assignment of the
25    securing trust deed that must be recorded prior to the commencement of
26    nonjudicial foreclosure proceedings under ORS 86.735(1)?

27            Certified Question No 4:  Does the Oregon Trust Deed Act allow

1   MERS to retain and transfer legal title to a trust deed as nominee for the
2   lender, after the note secured by the trust deed is transferred from the lender
3   to a successor or series of successors?

4   We accepted the district court's certification and allowed the parties in the federal cases to

5   present their views.  We answer those questions -- in two instances as reframed -- as

6   follows:

7   (1)  "No."  For purposes of ORS 86.735(1), the "beneficiary" is the lender
8       to whom the obligation that the trust deed secures is owed or the
9       lender's successor in interest.  Thus, an entity like MERS, which is not
10      a lender, may not be a trust deed's "beneficiary," unless it is a lender's
11      successor in interest.

12  (2)  We reframe the second question as follows:

13      *Is MERS eligible to serve* as beneficiary under the Oregon Trust Deed
14      Act where the trust deed provides that MERS "holds only legal title to
15      the interests granted by Borrower in this Security Instrument, but, if
16      necessary to comply with law or custom, MERS as nominee for
17      Lender and Lender's successors and assigns) has the right:  to exercise
18      any or all of those interests"?

19      Answer:  "No."  A "beneficiary" for purposes of the OTDA is the
20      person to whom the obligation that the trust deed secures is owed.  At
21      the time of origination, that person is the lender.  The trust deeds in
22      these cases designate the lender as the beneficiary, when they provide:
23      "This Security Instrument secures to Lender:  (i) the repayment of the
24      loan, and all renewals, extensions and modifications of the note; and
25      (ii) the performance of borrower's covenants and agreements under
26      this security instrument and the note."  Because the provision that
27      MERS "holds only legal title to the interests granted by Borrower in
28      this Security Instrument, but, if necessary to comply with law or
29      custom, MERS * * * has the right to exercise any or all of those
30      interests," does not convey to MERS the beneficial right to repayment,
31      the inclusion of that provision does not alter the trust deed's
32      designation of the lender as the "beneficiary" or make MERS eligible
33      to serve in that capacity.

34  (3)  "No."  ORS 86.735(1) does not require recordation of "assignments"
35      of a trust deed by operation of law that result from the transfer of the
36      secured obligation.

3

1      (4)  We answer the question, as reframed below, in two parts:

2       (4)(a)  "Does the Oregon Trust Deed Act allow MERS to hold and transfer
3      legal title to a trust deed as nominee for the lender, after the note secured
4      by the trust deed is transferred from the lender to a successor or series of
5      successors?"

6      Answer:  "No."  For purposes of the OTDA, the only pertinent interests in
7      the trust deed are the beneficial interest of the beneficiary and the legal
8      interest of the trustee.  MERS holds neither of those interests in these cases,
9      and, therefore, it cannot hold or transfer legal title to the trust deed.  For
10     purposes of our answer to the first part of the fourth certified question, it is
11     immaterial whether the note secured by the trust deed has previously been
12     "transferred from the lender to a successor or series of successors."

13     (4)(b)  "Does MERS nevertheless have authority as an agent for the
14     original lender and its successors in interest to act on their behalves with
15     respect to the transfer of the beneficial interest in the trust deed or the
16     nonjudicial foreclosure process?"

17     Answer:  The power to transfer the beneficial interest in a trust deed or to
18     foreclose it follows the beneficial interest in the trust deed.  The beneficiary
19     or its successor in interest holds those rights.  MERS's authority, if any, to
20     perform any act in the foreclosure process therefore must derive from the
21     original beneficiary and its successors in interest.  We are unable to
22     determine the existence, scope, or extent of any such authority on the
23     record before us.

24  As a preface to our explanation of those answers, we set out the following legal and

25  factual background.

26                                      I. BACKGROUND

27  *A.      Mortgages, Trust Deeds, and the Oregon Trust Deed Act*

28              When a person borrows money to purchase a home, in Oregon as

29  elsewhere, the loan usually is memorialized in a promissory note that contains the

30  borrower's written, unconditional promise to pay certain sums at a specified time or

31  times.  Generally, the borrower and lender also enter into a separately-memorialized

4

1    security agreement -- a mortgage or, more commonly in Oregon, a trust deed.  *See*

2    *generally* Grant Nelson and Dale Whitman, *Real Estate Finance Law* §§ 2.1, 5.27, 5.28

3    (5th ed 2007); Joseph L. Dunne, *Enforcing the Oregon Trust Deed Act*, 49 Willamette L

4    Rev 77, 81-85 (2012).  Oregon subscribes to the "lien theory," rather than the "title

5    theory," of mortgages.  Under the title theory, the borrower conveys actual title to the

6    burdened property to the lender to secure the obligation to repay.  Under the lien theory,

7    the borrower merely conveys a "right, upon condition broken, to have the mortgage

8    foreclosed and the mortgaged property sold to satisfy [the underlying debt]."  *Schleef v.*

9    *Purdy*, 107 Or 71, 78, 214 P 137 (1923).  Thus, in the traditional security arrangement --

10   the mortgage -- the borrower conveys to the lender a lien on the property being

11   purchased, to secure the promise to repay that is contained in a promissory note.  If the

12   borrower defaults on the note, the lender, or the lender's successor in interest, may

13   exercise its right to sell the property to satisfy the obligation, but it must do so by

14   bringing a judicial action against the borrower.  *Id.* at 75-79; ORS 88.010 (except as

15   otherwise provided by law, lien upon real property shall be foreclosed by a suit).

16          The OTDA, Or Laws 1959, ch 625, codified at ORS 86.705 to ORS 86.795,

17   was enacted in 1959 to provide an alternative to the judicial foreclosure process.  Ronald

18   Brady Tippetts, *Note, Mortages -- Trust Deeds in Oregon*, 44 Or L Rev 149, 149-50

19   (1965).  That nonjudicial alternative is available when the parties use a trust deed to

20   secure the loan.  A trust deed is a deed executed under the OTDA that "conveys an

21   interest in real property to a trustee in trust to secure the performance of an obligation the

22   grantor or other person named in the deed owes to a beneficiary."  ORS 86.705(7).  The

5

1    OTDA permits the trustee appointed under a trust deed to advertise and sell the property

2    to the highest bidder without judicial involvement.  ORS 86.710; ORS 86.755.  Like a

3    mortgage, a trust deed creates a lien on real property to secure an underlying obligation in

4    the event of a default.  *See* ORS 86.705(7); *see also Sam Paulsen Masonry v. Higley*, 276

5    Or 1071, 1075, 557 P2d 676 (1976) (mortgage or trust deed creates only lien on real

6    property).  Indeed, a trust deed creates *two* distinct interests -- a legal interest and a

7    beneficial interest.  First, a trust deed "conveys an interest in real property to a trustee in

8    trust to secure the performance of an obligation."  ORS 86.705(7).  That legal interest

9    includes the power to sell the obligated property in the manner prescribed in the statute

10   on the grantor's default.  ORS 86.710.  However, if the trustee utilizes its power of sale,

11   the proceeds of the sale, after expenses, must be applied "to the obligation secured by the

12   trust deed" -- that is, to satisfy the obligation that the borrower owes to the beneficiary.

13   ORS 86.765(2).  Accordingly, the trustee holds and exercises its legal interest in the

14   encumbered property for the benefit of the trust deed's "beneficiary" -- the person "named

15   or otherwise designated in [the] trust deed as the person for whose benefit [the] trust deed

16   is given."  ORS 86.705(1).  The second interest that is created by a trust deed -- the

17   beneficial or equitable interest in the lien granted therein -- thus is held by the

18   beneficiary.  That interest is the security for the performance of the obligation that is

19   owed to the beneficiary.  ORS 86.705(7).

20          A trustee may conduct a nonjudicial foreclosure sale only when certain

21   conditions are satisfied.  *See* ORS 86.735 (setting out conditions).  Those conditions

22   include:  (1) recording of "[t]he trust deed, any assignments of the trust deed by the

6

1  trustee or the beneficiary and any appointment of a successor trustee * * * in the

2  mortgage records of the counties in which the property described in the deed is situated,"

3  ORS 86.735(1); (2) a default on the obligation, "the performance of which is secured by

4  the trust deed," ORS 86.735(2); (3) recording of a notice of default containing the

5  trustee's or beneficiary's election to sell the property to satisfy the obligation, ORS

6  86.735(3); and (4) the absence of any pending or completed action for recovery of the

7  debt, with limited exceptions.  *See*, *e.g.*, ORS 86.735(4).

8          In addition to those conditions, the OTDA prescribes notice requirements

9  that protect trust deed grantors from unauthorized nonjudicial foreclosures and sales of

10  property.  Among other things, a trustee is required to provide to the grantor and other

11  interested parties at least 120 days' advance notice of the trustee's sale.  ORS 86.740(1).

12  Although judicial involvement is not required to complete a foreclosure by advertisement

13  and sale, the 120-day advance notice period gives a grantor time to seek judicial

14  intervention in certain circumstances, as plaintiffs in these cases have done.

15          The grantor has a right to cure the default at any time up to five days

16  before the date last set for the sale.  ORS 86.753.  If the trustee has complied with the

17  statutory notice requirements and the default is not cured, the trustee may sell the

18  property at a public auction to the highest bidder without judicial oversight.  ORS 86.755.

19  In contrast to the judicial foreclosure process, a grantor has no statutory right to redeem

20  the property after a completed trustee's sale.  *Compare* ORS 88.080 (providing right of

21  redemption after sale) *with* ORS 86.770(1) (trustee's sale forecloses and terminates

22  interests in property of any person to whom required notice of the sale was given).  After

7

1  a trustee's sale, the trustee must execute and deliver a trustee's deed to the purchaser,

2  which must recite details of the foreclosure.  ORS 86.775.  If the trustee's deed is

3  recorded in the pertinent county records, the facts recited in the deed are considered

4  *prima facie* evidence of the truth of the matters set forth therein, and are conclusive in

5  favor of a purchaser for value who relies on them in good faith.  ORS 86.780.

6          Of course, only a small portion of the property transactions involving trust

7  deeds end in foreclosure.  If the borrower repays the loan secured by the trust deed in full,

8  the trustee must "reconvey the estate of real property described in the trust deed" (that is,

9  release the lien on the property) to the borrower, ORS 86.720, and that reconveyance may

10  be publicly recorded in the pertinent real property records.

11  B.      *Assignment and Recording of Trust Deeds*

12          Mortgages or trust deeds may be transferred in a variety of ways.  By

13  statute, mortgages may be "assigned by an instrument in writing," and such written

14  assignments may be recorded in the pertinent real property records.  ORS 86.060

15  ("mortgages may be assigned by an instrument in writing * * * and recorded in the

16  records of mortgages of the county where the land is situated").[1]  But mortgages also

17  have been held to "follow" the promissory notes that they secure so that, by operation of

18  law, the sale or transfer of a promissory note effects an equitable transfer of the mortgage

---

[1]     Although that statute initially was enacted with mortgages in mind, it applies equally to trust deeds.  *See* ORS 86.715 ("a trust deed is deemed to be a mortgage on real property and is subject to all laws relating to mortgages on real property except to the extent that such laws are inconsistent with [the OTDA]").

1    that secures that note. *Bamberger v. Geiser*, 24 Or 203, 206-07, 33 P 609 (1893) ("where

2    a debt is secured by mortgage, the debt is the principal and the mortgage is the incident,

3    and * * * an assignment of the debt is an assignment of the mortgage"); *Barringer v.*

4    *Loder*, 47 Or 223, 229, 81 P 778 (1905) (same).[2]

5            Although the recordation of a mortgage or trust deed assignment generally

6    is not required to make the transfer legally effective between the parties, it is necessary

7    and desirable for protecting an assignee's interest under the security instrument against a

8    purchaser in good faith for valuable consideration. *See Willamette Col. & Credit Serv. v.*

9    *Gray*, 157 Or 77, 83, 70 P2d 39 (1937) (assignee of mortgage was not obliged to take and

10   record written assignment to acquire title as between immediate parties but was required

11   to do so to maintain lien against innocent purchaser); *see also* ORS 93.640 (every

12   conveyance, deed, or assignment affecting an interest in real property which is not

13   recorded as provided by law is void as against any subsequent purchaser in good faith for

14   valuable consideration). The recordation of a trust deed assignment is necessary for an

15   additional reason: As described above, __ Or at __ (slip op at 6-7), the trust deed and

16   "any assignments of the trust deed by the trustee or the beneficiary" must be recorded in

17   the relevant land records before the nonjudicial foreclosure procedure set out at ORS

18   86.740 - ORS 86.755 may be invoked. ORS 86.735(1).

19   *C.      The MERS Corporation*

---

[2]      Again, that principle applies equally when the promissory note is secured
by a trust deed; the trust deed follows the note by operation of law.

1       MERS is a creature of the real estate finance industry.  In the mid-1990's,

2   large players in the industry, including the Federal National Mortgage Association

3   (Fannie Mae) and the Federal Home Loan Mortgage Corporation (Freddie Mac), decided

4   to create a database that would electronically track ownership in secured real estate loans

5   as they were bought and sold in a secondary market, generally in packages now known as

6   mortgage-backed securities.  R. K. Arnold, *Yes, There is Life on MERS*, 11 Prob & Prop

7   33, 33-34 (1997).  They created MERSCorp Holdings, a "member-based organization

8   made up of thousands of lenders, servicers, sub-servicers, investors and government

9   institutions."  *See MERSCORP Holdings, Inc.*, http://www.mersinc.org/about-us/faq

10  (accessed May 22, 2013).  The primary product of MERSCorp Holdings was and is the

11  "MERS System," a "national electronic database that tracks changes in mortgage

12  servicing and beneficial ownership interests in loans secured by residential real estate."

13  *Id.*

14      But there is another significant aspect of MERS; that entity serves as the

15  designated mortgagee or beneficiary, as the nominee of the lender, for all mortgages and

16  trust deeds registered in the MERS System.  *Id.*  Christopher L. Peterson, *Foreclosure,*

17  *Subprime Lending, and the Mortgage Electronic Registration System*, 78 U Cincinnati L

18  Rev 1359, 1361-62 (2009).  MERS, however, does not make, service, or invest in loans.

19  *Id.* at 1371.

20  D.    *The Trust Deeds and Plaintiffs' Challenges*

21      The certified questions that are before this court arise out of four separate

22  actions challenging a trustee's attempt to nonjudicially foreclose a trust deed securing

1   residential property.  In each case, homeowners (collectively, "plaintiffs") financed the

2   purchase of a residence in Oregon with a loan from a lender that is a member of MERS.

3   In each case, the homeowners signed (1) a promissory note pledging to repay the money

4   borrowed, plus interest, according to a prescribed schedule and by a specified date, and

5   (2) a "Deed of Trust," granting to a named trustee the property they had purchased with

6   the loan, "in trust, with power of sale," to secure the payment of the promissory note and

7   other related promises.

8            Except for the names and property descriptions, the trust deeds in the four

9   cases are identical.  In a "definition" section, each trust deed identifies the "Borrower,"

10  "Lender" and "Trustee" by name, and then sets out the following definition of "MERS":

11            "'MERS' is Mortgage Electronic Registration System, Inc.  MERS is
12       a separate corporation that is acting solely as a nominee for Lender and
13       Lender's successors and assigns.  MERS is the beneficiary under this
14       Security Instrument."

15  In a section entitled "Transfer of Rights in the Property," the trust deed states:

16            "*The beneficiary of this Security Instrument is MERS (solely as
17       nominee for Lender and Lender's successors and assigns) and the
18       successors and assigns of MERS.  This Security Instrument secures to
19       Lender:  (i) the repayment of the Loan, and all renewals, extensions and
20       modifications of the Note, and (ii) the performance of Borrower's covenants
21       and agreements under this Security Instrument and the Note.*  For this
22       purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with
23       power of sale, the following described property * * * , [t]ogether with all
24       the improvements now or hereafter erected on the property, and all
25       easements, appurtenances, and fixtures now or hereafter a part of the
26       property.  All replacements and additions shall also be covered by this
27       Security Instrument.  All of the foregoing is referred to in this Security
28       Instrument as the Property.  *Borrower understands and agrees that MERS
29       holds only legal title to the interests granted by Borrower in this Security
30       Instrument, but, if necessary to comply with law or custom, MERS (as
31       nominee for Lender and Lender's successors and assigns) has the right:  to*

11

1 *exercise any or all of those interests, including, but not limited to, the right*
2 *to foreclose and sell the Property, and to take any action required of*
3 *Lender including, but not limited to, releasing and canceling this Security*
4 *Instrument.*

5 (Emphases added.)

6    Those provisions appear to turn the traditional three-party trust deed

7 arrangement -- debtor/grantor, trustee, and lender/beneficiary -- into a four-party

8 arrangement, with the functional role of the beneficiary being split between two entities.

9 Although the benefit of the trust deed is reserved to the "Lender" (because the trust deed

10 "secures to the Lender" the obligations of repayment and performance of other

11 covenants), MERS purports to be the beneficiary "as nominee for Lender and Lender's

12 successors and assigns."

13    Plaintiffs in all four cases signed the promissory notes and trust deeds as

14 described, and, after a period of years, allegedly defaulted on their loans.  Following each

15 default, MERS executed a written assignment of the trust deed to the reputed ultimate

16 successor in interest of the original lender and recorded that assignment in the pertinent

17 real property records.  Each of those assignees then appointed a new trustee, ReconTrust

18 Company, N.A., and that assignment also was recorded.  Thereafter, ReconTrust, as

19 trustee, commenced the process of nonjudicial foreclosure under each trust deed, issuing

20 notices of the grantor's default and the trustee's election to sell.

21    In all four cases, plaintiffs brought an action in state court against

22 ReconTrust, MERS, and the reputed ultimate successor in interest of their original lender,

23 seeking to enjoin the nonjudicial foreclosure proceeding on a number of grounds,

1  including that (1) a condition for nonjudicial foreclosure had not been satisfied --

2  specifically, the requirement in ORS 86.735(1) that any assignments of the trust deed by

3  the "beneficiary" be publicly recorded in the pertinent real property records; and (2)

4  MERS's purported assignment of the trust deed to the reputed ultimate successor in

5  interest was ineffective, because, at the time of the purported assignment, "the principal

6  for whom MERS purported to act as 'beneficiary' did not hold plaintiff's loan at that

7  date."  Defendants removed the cases to federal court, and then filed motions to dismiss

8  under FRCP 12 (b)(6), arguing that MERS was the lawful beneficiary under the trust

9  deeds, that all assignments of the trust deeds by the named "beneficiary," MERS, had

10  been recorded, and that ORS 86.735(1) did not require assignments of the trust deeds by

11  the lenders to be recorded.  The federal district court certified the questions set out above

12  to this court.  We consider the questions in order.

13                     II.  FIRST CERTIFIED QUESTION

14              "May an entity, such as MERS, that is neither a lender nor successor
15       to a lender, be a 'beneficiary' as that term is used in the Oregon Trust Deed
16       Act?"

17              This question is one of statutory construction, which we approach using the

18  methodology described in *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009).  We focus

19  first on the text, context, and any legislative history brought to our attention by the parties

20  that we find useful, and proceed to general maxims of statutory construction if the

21  legislature's intent remains obscure.  *Id*. at 171-72.  The pertinent text is the definition of

22  "beneficiary" that appears in ORS 86.705:

23              "As used in ORS 86.705 to 86.795 [that is, the Oregon Trust Deed

13

1       Act]:

2       "* * * * *

3       "(2) 'Beneficiary' means a person named or otherwise designated in a
4       trust deed as the person for whose benefit a trust deed is given, or the
5       person's successor in interest, and who is not the trustee unless the
6       beneficiary is qualified to be a trustee under ORS 86.790(1)(d)." [3]

7   There is no dispute about the meaning of the last clause.  Rather, the parties square off

8   over the meaning of the requirements that the person (1) be "named or otherwise

9   designated in [the] trust deed," (2) "as the person for whose benefit the trust deed is

10   given."  Taking the latter phrase first, the "benefit" of a trust deed is the security it

11   provides with respect to an obligation owed by the grantor to the beneficiary.  That is

12   made clear in many of the surrounding statutes.  For example, as noted, the term "trust

13   deed" is defined as "a deed executed in conformity with ORS 86.705 to 86.795 that

14   conveys an interest in real property to a trustee in trust *to secure the performance of an*

15   *obligation the grantor or other person named in the deed owes to a beneficiary*."  ORS

---

[3]     We use the current version of the statute, which is numbered differently but does not otherwise vary materially from the version in effect when the parties signed the trust deeds.  That version, ORS 86.705 (2005), provided:

    "As used in ORS 86.705 - 86.795*, unless the context requires otherwise*;

    "(1) 'Beneficiary' means *the* person named or otherwise designated in a trust deed as the person for whose benefit a trust deed is given, or the person's successor in interest, and who *shall not be* the trustee unless the beneficiary is qualified to be a trustee under ORS 86.790(1)(d)."

(Differences in italics.)

1    86.705(7) (emphasis added).  Similarly, "grantor" is defined as "the person that conveys

2    an interest in real property by a trust deed *as security for the performance of an*

3    *obligation*."  ORS 86.705(4) (emphasis added).  Finally, ORS 86.710, which generally

4    describes the power of a trustee to nonjudicially foreclose, begins with a general

5    description of a trust deed:  "Transfers in trust of an interest in real property may be made

6    *to secure the performance of an obligation of a grantor*, or any other person named in the

7    deed, *to a beneficiary*."  (Emphasis added.)  Thus, the person "for whose benefit the trust

8    deed is given" is the person to whom the grantor owes an obligation, the performance of

9    which the trust deed secures.

10            That analysis, however, speaks only to the second half of the wording of

11   the definition.  Plaintiffs suggest that the initial phrase "the person named or otherwise

12   designated as" means that the trust deed must identify (name or otherwise designate) the

13   person who meets the definition of "beneficiary" as that term is used in the statute.

14   Defendants contend, to the contrary, that the legislature used that phrase to signify that

15   that the parties to the trust deed could agree to "name" or "designate" whomever they

16   chose to serve "as" beneficiary -- and that, for purposes of ORS 86.705(2), the

17   "beneficiary" would be the person so designated.  Thus, as defendants conceive it,

18   designation of a beneficiary is purely a matter of contract.  Plaintiffs' contrary

19   interpretation, defendants assert, essentially turns the initial phrase of the definition into

20   surplusage, violating a fundamental principle of statutory construction set out at ORS

21   174.010; that is, "not * * * to omit what has been inserted."

22            We do not agree that plaintiffs' reading removes the phrase "named or

15

1    otherwise designated as" from the statute.  As noted above, plaintiffs read the statutory

2    definition as providing that, *in addition to* being the person "for whose benefit the trust

3    deed is given," the beneficiary must be "named or otherwise designated" as such *in the*

4    *trust deed*.  That reading uses all of the words of the statute.  Indeed, we find plaintiffs'

5    reading of the definition to be more compelling, on a purely textual level, than

6    defendants'.  If defendant's reading were correct, then *anyone* -- even a person with no

7    connection to or interest in the transaction at all -- could be designated in the agreement.

8    If the legislature had intended "beneficiary" to have the circular meaning that defendants

9    suggest -- that "beneficiary" means whomever the trust deed *names* as the "beneficiary" --

10   it would have had no reason to include any description of the beneficiary's functional role

11   in the trust arrangement.  The fact that the statute *does* include such a description ("the

12   person for whose benefit the trust deed is given") strongly suggests that the legislature

13   intended to define "beneficiar[ies]" by their functional role, not their designation.  Stated

14   differently, by including such a functional description, it is apparent that the legislature

15   intended that the beneficiary of the trust deed be the person to whom the obligation that

16   the trust deed secures is owed.

17            As discussed, in a typical residential trust deed transaction, the obligation

18   secured by the trust deed is memorialized in a promissory note that contains a borrower's

19   promise to repay a home loan to a lender.  At inception, the lender is the person who is

20   entitled to repayment of the note and, thus, functionally is "the person for whose benefit

21   the trust deed is given."  That person's "successor in interest," whom ORS 86.705(2) also

22   recognizes as a beneficiary, is a person who succeeds to the lender's rights.

1    Defendants contend that another provision of the OTDA, ORS 86.720(3),

2 undermines that construction of ORS 86.705(2).  ORS 86.720 addresses the circumstance

3 in which the obligation secured by a trust deed has been satisfied, but either the

4 beneficiary or trustee has failed or refused to release the trust deed.  In such a

5 circumstance, where a title insurance company or insurance producer has satisfied the

6 obligation through an escrow, ORS 86.720(1) authorizes the insurer, in a backup role, to

7 issue and record a release of the trust deed to clear title.  In that context, ORS 86.720(3)

8 provides:

9    "Prior to the issuance and recording of a release [of the lien upon
10    performance of the obligation secured by the trust deed], the title insurance
11    company or insurance producer shall give notice of the intention to record a
12    release of trust deed to the *beneficiary of record and, if different, the party*
13    *to whom the full satisfaction was made*."

14 (Emphasis added.)

15    Defendants assert that the emphasized text shows that the legislature

16 understood that the "beneficiary" need not be the lender or the lender's successor in

17 interest.  We do not agree that the statutory text necessarily -- or even probably -- bears

18 such a construction.  It is equally, if not more plausible, to conclude that the phrase "if

19 different, the party to whom the full satisfaction was made," was meant instead to

20 acknowledge the circumstance where a lender's successor in interest is not the

21 beneficiary "of record," but is entitled to repayment of the underlying obligation.

22 Ironically, that is precisely the circumstance that defendants assert permissibly occurred

23 in these cases and that is the subject of the third certified question discussed below.

24 When the statute is viewed in that light, it reinforces the conclusion that the beneficiary is

17

1    the lender or the lender's successor in interest.  In short, ORS 86.720(3) does not furnish

2    persuasive context that supports defendants' proposed meaning of the term "beneficiary"

3    under the OTDA.

4              Defendants next contend that the statutory meaning of "beneficiary" must

5    be interpreted in the context of common law principles of agency, freedom of contract,

6    and commercial law.  Defendants point to case law showing that Oregon recognizes that

7    an agent, even one without a pecuniary interest, may engage in land transactions and hold

8    title on behalf of a principal.  *See, e.g.*, *Halleck v. Halleck et al.*, 216 Or 23, 38, 337 P2d

9    330 (1959) ("'Conveyances of lands * * * may be made by deed, signed by the person * *

10   * or by his lawful agent'") (quoting *former* ORS 93.010)); *Bowns v. Bowns*, 184 Or 603,

11   613, 200 P2d 586 (1948) (estate or interest in real property may be transferred by one's

12   "'lawful agent, under written authority'") (quoting *former* ORS 93.020)); *Kern v.*

13   *Hotaling*, 27 Or 205, 207, 40 P 168 (1895) (note and mortgage executed to member of

14   brokerage firm as agent for principal).[4]  Defendants also point to the "bedrock" principle

15   that "contracts, when entered into freely and voluntarily, shall be held sacred and shall be

16   enforced by courts," unless contrary to some "overpowering rule of public policy."

17   *McDonnal and McDonnal*, 293 Or 772, 779, 652 P2d 1247 (1982) (quoting *Feves v.*

18   *Feves*, 198 Or 151, 159-60, 254 P2d 694 (1953)).  Defendants assert that proper

---

[4]       Defendants also cite a federal case, *In re Cushman Bakery*, 526 F2d 23, 30
(1st Cir 1975) *cert den*, 425 US 937 (1976) for the proposition that a lien may be
recorded in the name of a nominee.

1    consideration of those common law principles in interpreting the trust deed statutes

2    supports their reading that ORS 86.735(1) allows someone other than an obligee to be the

3    "beneficiary," either because the parties have freely and voluntarily agreed to designate

4    someone else as the beneficiary or because the obligee has chosen to have someone act as

5    its agent or nominee.  More specifically -- although the premise is implicit -- the core of

6    defendants' "freedom of contract" argument appears to be that, although MERS has no

7    right to repayment of the notes in these cases, it nevertheless may be designated by

8    contract as the beneficiary for other functions, in particular those functions relating to the

9    control of the foreclosure process.

10            We disagree.  The resolution of this question does not hinge on the parties'

11   intent; rather, it depends on legislative intent.  That is, the OTDA authorizes nonjudicial

12   foreclosure only when certain statutory requirements are met.  In these circumstances, the

13   meaning of "beneficiary," as used in ORS 86.735(1), is determined by statute, and that

14   meaning is incorporated into, and cannot be altered by, the party's agreement.  *See, e.g.*

15   *Ocean A. & G. Corp., Ltd. v. Albina M. I. Wks.*, 122 Or 615, 617, 260 P 229 (1927) ("law

16   of the land applicable thereto is a part of every valid contract"); *see also*, R. Lord, 11

17   *Williston on Contracts* § 30:24 (4th ed 1999) ("[i]ncorporation of existing law may act to

18   supersede inconsistent clauses purporting to define the terms of the agreement.  For

19   instance, where a statute regulates the amount the government is to pay for a particular

20   service, the statute controls despite a contract between the government and the provider

21   of the service agreeing to a lower rate.").  If the legislature had intended to make the

22   parties' agreement paramount over the statute in this regard, it could have, and likely

19

1    would have, included an "unless otherwise agreed" caveat, as it has in some statutes.  *See,*

2    *e.g.*, ORS 72.3070 ("*Unless otherwise agreed*, all goods called for by a contract for sale

3    must be tendered in a single delivery * * *.").  But, in light of the structure of the OTDA,

4    it is unsurprising that it did not do so.

5            The OTDA contemplates a unitary beneficiary status, so that the person

6    with the right to repayment of the underlying obligation also controls the foreclosure

7    process.  The interaction of a number of statutory provisions demonstrates the point.  For

8    example, ORS 86.710 gives the *beneficiary* the power to decide whether to foreclose

9    judicially or nonjudicially.  Under ORS 86.720, the *beneficiary* must request

10   reconveyance after the secured obligation is satisfied.  ORS 86.737(2)(b)(B) provides that

11   notice to the grantor of a foreclosure sale must include "a telephone number that will

12   allow the grantor access during regular business hours to person-to-person consultation

13   with an individual authorized by the beneficiary to discuss the grantor's payment and loan

14   term negotiation and modification."  In addition, under ORS 86.745(1), a notice of sale

15   must include the name of the "beneficiary."  ORS 86.753(1) provides that the grantor

16   (and others) may cure a default before a foreclosure sale by making payment, and paying

17   costs and expenses "to the beneficiary."  ORS 86.759(5) provides that statutory

18   requirements that the trustee provide default and cure-related information to the grantor

19   and others "do not affect the duty of beneficiaries to provide information to grantors."

20   And, significantly, it is the beneficiary alone who has authority to appoint a successor

21   trustee.  ORS 86.790(3).  In sum, the integrated effect of those provisions presumes that

22   the collective rights and obligations that define beneficiary status are functionally united;

1    that is, the person entitled to repayment of the secured obligation also controls the

2    foreclosure process.

3          That functional unity has longstanding roots in the common law itself.  A

4    fundamental principle in mortgage law holds that a foreclosing party must have the

5    power to enforce the underlying note.  *See United States Nat. Bank v. Holton*, 99 Or 419,

6    429, 195 P 823 (1921) ("It has always been the law of this state that the assignment of the

7    note carries the mortgage * * *.  The assignment of a mortgage independent of the debt

8    which it is given to secure, is an unmeaning ceremony.").  That concern underlies the

9    standard doctrine in judicial foreclosure proceedings that the foreclosing party must

10   provide proof that it has the power to enforce the note.  *See generally* Alan M. White,

11   *Losing the Paper -- Mortgage Assignments, Note Transfers and Consumer Protection*, 24

12   Loy Consumer L Rev 468, 476-77 (2012) (collecting cases).

13         Neither can the statutory meaning of "beneficiary" yield to an obligee's

14   decision to use another party as its agent or nominee.  Although the cases and statutes

15   cited by defendants show that a lawful agent can have broad authority to *act* on a trust

16   deed beneficiary's behalf in regard to the exercise of rights under the trust deed, even to

17   the point of appearing on documents in the beneficiary's stead, the agent cannot *become*

18   the "beneficiary" for purposes of a statutory requirement that is defined, in part, by the

19   status of the "beneficiary."  To reinforce the point, the legislature, in recent amendments

20   to the OTDA, has plainly distinguished between a beneficiary and its agents in the

21   nonjudicial foreclosure context.  *See*, *e.g.*, ORS 86.735(4) (requiring either "the

22   beneficiary or the beneficiary's agent" to certify compliance with statutory requirements

21

1  as a condition of nonjudicial foreclosure).[5]  Here, the "beneficiary" to which ORS

2  86.735(1) refers must be "the person for whose benefit the trust deed [was] given," that is

3  (as discussed), the person to whom the obligation that the trust deed secures is owed or

4  that person's successor in interest.  By the terms of the trust deeds at issue in these cases,

5  those persons are the lenders ("[t]his Security Instrument secures *to Lender*:  (i) the

6  repayment of the Loan") or their successors.  Unless the lenders have transferred such

7  interests to their agents or nominees, the latter persons cannot become "beneficiaries" for

8  purposes of the OTDA.[6][7]

9        In sum, our answer to the first question certified by the district court is as

10  follows:  For purposes of ORS 86.735(1), the "beneficiary" is the lender to whom the

11  obligation that the trust deed secures is owed or the lender's successor in interest.  Thus,

12  an entity like MERS, which is not a lender, may not be a trust deed's "beneficiary," unless

13  it is a lender's successor in interest.

---

[5]   The 2012 legislature significantly amended the OTDA.  The quoted wording from ORS 86.735(4) was one of the amendments.  Or Laws 2012, ch 112, § 6.

[6]   We discuss defendants' other arguments pertaining to the law of agency, including their argument that MERS, as the lender's "nominee," may hold "legal title" to the lender's rights under the trust deed, in our answer to the fourth certified question.

[7]   Defendants also argue that the legislative history of the OTDA supports their interpretation of the statute and have included portions of the legislative history in support of that claim.  Defendants' theory is that, insofar as the legislative history discloses that the legislature's general purpose in enacting the OTDA was to provide a simpler and more economical method of foreclosure to attract more lenders to Oregon, an interpretation that permits the parties to contractually appoint a beneficiary would advance that purpose.  We do not find the proffered history, or defendants' theory of its relevance, to be helpful, and do not discuss it further.

1      III.  SECOND CERTIFIED QUESTION

2              "May MERS be designated as beneficiary under the Oregon Trust
3      Deed Act where the trust deed provides that MERS 'holds only legal title to
4      the interests granted by Borrower in this Security Instrument, but, if
5      necessary to comply with law or custom, MERS (as nominee for Lender
6      and Lender's successors and assigns) has the right:  to exercise any or all of
7      those interests'?"

8              This question goes to defendants' theory that, under the OTDA, MERS is

9      eligible to serve as "beneficiary" of a trust deed in a role as the obligee's agent or

10     nominee.  The theory behind the question is:  If ORS 86.705(2), in fact, defines

11     "beneficiary" in terms of a beneficiary's function in the trust arrangement, which function

12     is defined, in turn, by the beneficiary's rights that are secured by the trust deed, then an

13     agent or nominee who has been delegated sufficient rights should qualify as a beneficiary

14     under the statute.  Defendants contend that the obligees that MERS serves, as agent or

15     nominee, have delegated to MERS sufficient rights for that purpose.  Because the more

16     precise question is whether MERS is eligible to serve as a beneficiary under the OTDA,

17     not whether it may be "designated" as such, we amend the certified question and answer

18     it accordingly.

19             Defendants argue, first, that by defining MERS as the beneficiary "acting

20     solely as a nominee for Lender and Lender's successors and assigns," the trust deeds in

21     these cases clearly convey an intention that MERS act as the lender's or its successors'

22     agent.  Defendants also contend that MERS's agreement with its members explicitly

23     provides that MERS will serve as the members' common agent -- allowing MERS to act

24     as agent or nominee for the initial lender and any successors in interest who are members

23

1    of MERS.[8]  Finally, defendants point to wording in the trust deeds that purports to

2    authorize MERS to exercise all of the lender's rights under the trust deeds:

3        "Borrower understands and agrees that MERS holds only legal title to the
4        interests granted by Borrower in this Security Instrument, *but, if necessary*
5        *to comply with law or custom, MERS (as nominee for Lender and Lender's*
6        *successors and assigns) has the right:  to exercise any or all of those*
7        *interests, including, but not limited to, the right to foreclose and sell the*
8        *Property, and to take any action required of Lender including, but not*
9        *limited to, releasing and canceling this Security Instrument.*"

10   Defendants argue that if MERS, as the obligee's nominee, must have some or all of the

11   obligee's rights to qualify as the trust deed beneficiary for purposes of ORS 86.705(3),

12   then the broad delegation of power to MERS contained in the quoted provision would be

13   sufficient to make MERS eligble to serve as the "beneficiary."

14          It is unspoken, but evident, that the necessity to which the above provision

15   refers is the necessity of having MERS be recognized as the trust deed beneficiary for

16   purposes of any requirement that must be satisfied before the trust deed may be

17   nonjudicially foreclosed.  That the provision imbues the word "necessary" with an

18   unnatural meaning, with the result that the provision is circular, does not render the

---

[8]        The MERS membership agreement is not in the record, but MERS asserts,
in its brief to this court, that the agreement provides that "MERS shall at all times comply
with the instruction of the beneficial owner of mortgage loans," and that it grants MERS
authority to "execute important documents, foreclose and take all other actions necessary
to protect the interests of the noteholder."  Defendants also note that other courts have
determined, in cases in which the MERS membership agreement *was* placed in the
record, that the agreement spells out MERS's duties to its members in those terms.
Neither defendants' bare assertions nor the cases cited provide a basis for this court to
determine what the agreements actually provide in the cases before the district court.

1    provision unenforceable, as plaintiffs seem to suggest.  We accept the provision in the

2    way it apparently was intended:  It is triggered by any apparent deficiency in MERS's

3    authority to serve as beneficiary, and, according to defendants' theory, results in the

4    delegation to MERS of *any* of the obligee's rights or interests that MERS might be

5    required to have for that purpose.

6            The problem with defendants' theory, however, is that, while asserting

7    MERS's authority to exercise *all* of the obligee's rights and interests, the provision fails

8    to speak to the *one* interest that an entity must have to qualify as a beneficiary under ORS

9    86.705(2).  As discussed above, __ Or at __ (slip op at 22), the beneficiary under that

10   definition is the person to whom the obligation that the trust deed secures is owed.

11   Unless the "law or custom" provision transforms MERS into such an obligee, it cannot

12   transform MERS into the "beneficiary" of the trust deed.

13           And it is clear that the "law or custom" provision does not have that legal

14   effect.  The provision first states that MERS holds "only legal title to the interests *granted*

15   *by Borrower* in this Security Instrument."  When the provision thereafter states that

16   MERS has the right "to exercise any or all of *those* interests," if necessary to comply with

17   law or custom, it refers to the interests "granted by the borrower in this security

18   instrument."  But the interests that are granted by the grantor in a trust deed are different

19   from the right to repayment under a related promissory note.  As discussed above, __ Or

20   at __ (slip op at 6), the grantor conveys two interests by signing a trust deed:  to the

21   trustee, a legal interest in the subject real property, which may be foreclosed upon the

22   obligor's default on the underlying obligation; and to the beneficiary, the beneficial

25

1    counterpart to that legal interest.  In each of the four trust deeds that are at issue, the first

2    (legal) interest is conveyed in the following sentence in the "Transfer of Rights in the

3    Property" provision:  "Borrower irrevocably grants and conveys to Trustee, in trust, with

4    power of sale, the following described property."  That the lender obtains the *benefit* of

5    the legal interest that is granted to the trustee is conveyed in the preceding sentence:

6        "This Security Instrument secures to Lender:  (i) the repayment of the Loan,
7        and all renewals, extensions and modifications of the Note, and (ii) the
8        performance of Borrower's covenants and agreements under this Security
9        Instrument and the Note."

10    Thus, the interests and rights that were "granted by the borrower under this security

11    instrument" were only (1) a legal interest in the property that the trust deed burdens, in

12    the form of a lien; and (2) an equitable or beneficial interest in that lien.

13        In contrast, in these cases, the interest in the secured obligation that a party

14    must have to qualify as the trust deed's "beneficiary" -- the obligation that the trust deed

15    secures -- is the right to repayment of the obligation.  Although *related* to the above-

16    mentioned interests that are granted in the trust deed by the grantor, that right to

17    repayment is not one of those interests.  That is, the obligee's right to repayment is

18    *secured* by the lien on the property that the grantor grants in the trust deed, but that right

19    exists apart from the trust deed and is not "granted by the borrower in the [trust deed]."  It

20    follows that, even if the "law or custom" clause were triggered so that the right to

21    exercise "any or all" interests granted in the trust deed by the borrower was delegated to

22    MERS, MERS still would not have an interest that would qualify it as the trust deed's

1 beneficiary.[9]

2          To conclude:  A "beneficiary" for purposes of the OTDA is the person to

3 whom the obligation that the trust deed secures is owed.  At the time of origination, that

4 person is the lender.  The trust deeds in these cases designate the lender as the

5 beneficiary, when they provide:  "This Security Instrument secures to Lender:  (i) the

6 repayment of the loan, and all renewals, extensions and modifications of the note; and (ii)

7 the performance of borrower's covenants and agreements under this security instrument

8 and the note."  Because the provision that MERS "holds only legal title to the interests

9 granted by Borrower in this Security Instrument, but, if necessary to comply with law or

10 custom, MERS * * * has the right to exercise any or all of those interests," does not

11 convey to MERS the beneficial right to repayment of the secured obligation, the inclusion

12 of that provision does not alter the trust deed's designation of the lender as the

13 "beneficiary" or make MERS eligible to serve in that capacity.

14                    IV.  THIRD CERTIFIED QUESTION

15          "Does the transfer of a promissory note from the lender to a
16          successor result in an automatic assignment of the securing trust deed that
17          must be recorded prior to the commencement of nonjudicial foreclosure
18          proceedings under ORS 86.735(1)?"

---

[9]          Moreover, the "law or custom" provision purports to delegate to MERS the right "to exercise" any of the interests granted in the trust deed by the grantor; it does not purport to actually convey those interests to MERS.  Given that the OTDA defines "beneficiary" in terms of an interest that the beneficiary *has* (the right to payment that the trust deed secures), and not in terms of the interests that the beneficiary does or may *exercise*, it is doubtful that conveying to MERS a right "to exercise" the beneficiary's interest could bring MERS within the statutory definition.

1    As we already have mentioned, __ Or at __ (slip op at 8-9), Oregon law

2    provides that the transfer of a promissory note that is secured by a mortgage

3    automatically effects, by operation of law, an assignment of the mortgage.  Because a

4    trust deed is a species of mortgage and is "subject to all laws relating to mortgages on real

5    property," ORS 86.715, the same principle applies to trust deeds:  A trust deed follows

6    the promissory note that it secures.  The third certified question thus asks whether such

7    assignments by operation of law are included in the statutory requirement of ORS

8    86.735(1) that "any assignments of the trust deed by the * * * beneficiary * * * [be]

9    recorded" in the pertinent real property records.  If the answer to that question is "yes,"

10    then the fact that the promissory notes have been transferred without corresponding

11    recorded assignments of the trust deeds would stand as a bar to nonjudicial foreclosure

12    under ORS 86.735 in the cases before the federal court.  Defendants argue, however, that

13    the term "assignments," as used in ORS 86.735(1), refers only to assignments of a trust

14    deed that are memorialized in a writing other than a writing that may serve to transfer the

15    promissory note.  Therefore, as defendants argue, the statute does not require that

16    assignments that result from the transfer of a promissory note be recorded before a

17    nonjudicial foreclosure can proceed.  The issue is (again) one of statutory construction,

18    this time focusing on the meaning of the phrase "any assignments" in ORS 86.735(1).

19    The text is not conclusive.  Although the term "assignment" may carry a

20    connotation of a written transfer of the trust deed itself, it appears to be broad enough to

21    encompass any manner of transfer of the trust deed, such as by operation of law.  The

22    first definition of the word "assign" that appears in *Webster's Third New Int'l Dictionary*

1    132 (unabridged ed 2002) reflects the narrow connotation:  "to transfer to another in

2    writing."  However, other definitions that appear in *Webster's*, and those that appear in

3    *Black's Law Dictionary*, do not refer to a writing.  In any event, the notion that a security

4    interest may be transferred by operation of law has a long and unchallenged history in

5    this state, and the word "assignment" at times has been used by this court in connection

6    with that concept.  *See, e.g.*, *First National Bk. v. Jack Mathis Gen. Cont.*, 274 Or 315,

7    321, 546 P2d 754 (1976) ("assignment of a debt carries with it the security for the debt");

8    *Willamette Col. & Credit Serv.*, 157 Or at 81-82 (using term "assignment" to refer to

9    "mortgage follows the note" principle); *Barringer*, 47 Or at 229 (in enacting statute,

10    legislature "recognize[ed] the right * * * to assign [a mortgage] by indorsement of the

11    note").  In short, the choice of the word "assignments" in ORS 86.735(1) does not negate

12    the possibility that the legislature intended to include transfers of trust deeds that occur by

13    operation of law, without a separate writing.

14         The use of the expansive modifier "any" ("any assignments") is similarly

15    inconclusive.  Although it might convey a specific legislative intent that any *manner* of

16    assignments, including those that occur by operation of law, be included in the

17    recordation requirement, it also might simply refer to *every* "assignment" within the

18    intended (possibly narrower) meaning of that term.

19         The parties also debate the import of statutes related to ORS 86.735(1) that

20    have been offered as context for interpreting that statute.  Among others, they point to

1    ORS 86.110(1), which was in effect when the OTDA was enacted,[10] and which pertains

2    to the discharge of record of a mortgage:

3        "(1) Whenever a promissory note secured by mortgage on real
4        property *is transferred by indorsement without a formal assignment of the*
5        *mortgage*, and the mortgage is recorded, the mortgage, upon payment of the
6        promissory note, may be discharged of record by the owner and holder of
7        the promissory note making and filing with the appropriate recording
8        officer a certificate * * * proving the satisfaction of the mortgage, * * * that
9        the owner and holder is the owner and holder of the note, * * * and that the
10       note has been fully paid and proving that fact to the satisfaction of the
11       recording officer."

12   (Emphasis added.)  Defendants contend that the emphasized wording shows that,

13   although this court's cases speak of a transfer of a secured note by indorsement as

14   assigning an associated mortgage by operation of law, the legislature has drawn a

15   distinction between such "transfers" and "assignments" of the mortgage.  However, the

16   emphasized wording could support an alternative inference -- that "formal assignment" is

17   only one form of "assignment," and that another occurs by operation of law when a note

18   is transferred.[11]  Because that alternative construction is at least as plausible as

---

[10]    We set out the current version of ORS 86.110(1), which differs from the version that was in effect in 1959 when ORS 86.735(1) was adopted.  The differences are slight and are not relevant to our analysis here.

[11]    Defendants contend that it is evident that the word "formal" in ORS 86.110(1) "was intended to have a meaning consistent with the requirements of ORS 86.060, which describes an 'assignment of mortgage' as an instrument 'executed and acknowledged with the same formality as required in deeds and mortgages of real property'" -- and that, as such, it cannot signal a legislative recognition of "assignment" by indorsement of a note as an alternative to "formal assignment."  However, because ORS 86.060 was enacted *after* ORS 86.110, defendants' argument about the legislative intention behind the phrase "formal assignment" is speculative.

30

1   defendants' construction, we conclude that ORS 86.110(1) is of little contextual help in

2   our interpretive endeavor.

3         What *does* seem significant is that the recording requirement in ORS

4   86.735 assumes the existence of an assignment in recordable form and that the transfer of

5   a promissory note cannot serve that function.  Because a promissory note generally

6   contains no description of real property and does not transfer, encumber, or otherwise

7   affect the title to real property, it cannot be recorded in land title records.  *See* ORS

8   93.600 (real property shall be described for recordation according to United States

9   survey, or by lots, blocks, etc.); ORS 93.610 (providing for separate records for recording

10   deeds and mortgages and "all other real property interests"); ORS 93.630 (requiring index

11   to the record of "deeds, mortgages, and all other real property interests"); ORS 205.130

12   (county clerk shall have custody of records of deeds and mortgages of real property and

13   record of all maps, plats, contracts, etc. "affecting the title to real property).  Although it

14   is true that the parties to the transfer of a promissory note can always memorialize the

15   transfer in a separate writing that *is* recordable, plaintiffs' reading of  ORS 86.735(1)

16   would turn that practice into a *requirement*, at least when nonjudicial foreclosure is

17   contemplated.  But ORS 86.735(1) does not appear to express such a requirement, and

18   certain mortgage statutes that existed at the time ORS 86.735(1) was enacted, one of

19   which bears a remarkable resemblance to ORS 86.735(1), suggest that the legislature did

20   not intend one.

1    Those mortgage statutes, ORS 86.060 and *former* ORS 86.070 (1959),[12]

2    were enacted together in 1895, in apparent response to pronouncements by this court in

3    *Bamberger*, 24 Or at 210-13, about the absence of any provision in Oregon law for the

4    recording of assignments of mortgages.  The first statute, ORS 86.060, provides:

5       "Mortgages may be assigned by an instrument in writing, executed
6       and acknowledged with the same formality as required in deeds and
7       mortgages of real property, and recorded in the records of mortgages of the
8       county where the land is situated."

9    The second statute, *former* ORS 86.070 (1959), provided:

10      "Every assignment of mortgage shall be recorded at full length, and
11      a reference shall be made to the book and page containing such assignment
12      upon the margin of record of the mortgage."

13      This court discussed the combined effect of those two statutes, at

14   considerable length, in *Barringer*.  In that case, Mr. and Mrs. Barringer loaned money to

15   Hayden, evidenced by a note and secured by a mortgage, the latter of which was

16   recorded.  The Barringers divorced, and Mrs. Barringer received the note and mortgage

17   as part of their divorce settlement.  Later, Mr. Barringer executed an "assignment" of the

18   mortgage to Loder, but Barringer refused to sign an affidavit verifying his claim that he

19   had lost the note and mortgage.  Regardless, Loder recorded the assignment, convinced

20   Hayden to pay him the full amount due under the loan, and then recorded a notice

21   canceling the mortgage (which was actually held by Mrs. Barringer).  Mrs. Barringer

22   later sued Loder to foreclose on the mortgage.  *Barringer*, 47 Or at 224-26.  Loder

---

[12]    *Former* ORS 86.070(1959) was repealed in 1965.  Or Laws 1965, ch 252, §
1.

1  observed that Mr. Barringer's name appeared in the record, and he argued, based on the

2  two statutes quoted above, that he was entitled to rely solely on the record.  In particular,

3  Loder argued that the statutes required all assignments of mortgages to be made in the

4  manner provided therein, and that a mortgage "[could] not be otherwise assigned or

5  transferred than as by these section prescribed."  47 Or at 228.

6        This court held, instead, that the first statute's use of the permissive word

7  "may," with reference to an assignment by an instrument in writing, "recognize[ed] the

8  right * * * to assign by indorsement of the note."  *Id.* at 229.  The court then added:

9        "When it comes to the manner of recording the assignment, the word 'shall'
10       is used.  Why use the word 'may' in one section and 'shall' in the succeeding
11       one?  The relationship indicates an intendment that there should be a
12       distinction in their application in practice. * * * *Assignments in the method
13       designated then could be made before the statute as well as by assignment
14       of the note, and the act simply prescribes that this may still be done by that
15       method, but that such assignments shall be recorded in the manner pointed
16       out.*"

17  *Id.* at 229-30 (emphasis added).  Thus, even though *former* ORS 86.070 required

18  recordation of "every assignment of mortgage," and even though *Barringer* characterized

19  indorsement of a note as an "assignment," only those assignments described in ORS

20  86.060 -- that is, assignments by a written instrument with the formalities of a deed or

21  mortgage -- were required to be recorded.

22        ORS 86.060 and *former* ORS 86.070 -- and *Barringer* -- were the law in

23  Oregon when the OTDA was enacted in 1959.  It is reasonable to infer that the legislature

24  had that statutory framework in mind when it enacted wording in ORS 86.735(1) that

25  requires "any assignments of the trust deed" to be recorded as a prerequisite to

33

1  nonjudicial foreclosure.  That inference leads to the conclusion that, like the requirement

2  in *former* ORS 86.070 (1959) that "every assignment of mortgage shall be recorded," the

3  requirement in ORS 86.735(1) that "any assignments" be recorded refers *only* to

4  assignments like those described in ORS 86.060, which are "in writing, executed and

5  acknowledged with the same formality as required in deeds and mortgages of real

6  property."  Again, the same reasoning logically applies to assignments of trust deeds,

7  which are "subject to all laws relating to mortgages."  ORS 86.715.

8          The legislature may have intended to impose a different recording regime in

9  the nonjudicial foreclosure context – to require, in that context alone, that a recordable

10  instrument be executed and recorded to document every transfer of a trust deed by

11  indorsement of the associated promissory note, so that a borrower faced with nonjudicial

12  foreclosure could determine whether the person giving notice of foreclosure possessed

13  the beneficial interest in the trust deed at issue and had the right to foreclose.  However,

14  the legislature did not clearly express that intent.  When the legislature enacted the

15  OTDA and required that "any assignments of the trust deed" be recorded, the nearly

16  identical statute stating that [e]very assignment of mortgage shall be recorded" required

17  recordation only of formal, written assignments.  *Barringer,* 47 Or at 230; *former* ORS

18  86.070 (1959).  There is nothing to indicate that, when it enacted ORS 86.735(1), the

19  legislature did not similarly intend for "assignments" of a trust deed to refer only to

20  formal, written assignments of the trust deed, not transfers by indorsement of the

21  underlying debt instrument.  By describing an "assignment of mortgage" as a written

22  instrument executed "with the same formality as required in deeds," ORS 86.060, and

34

1   then, in the immediately following section, requiring recordation of "[e]very assignment

2   * * * at full length," *former* ORS 86.070 (1950), it is apparent that the only "assignment"

3   the 1959 legislature had in mind in enacting ORS 86.735(1) was an assignment by a

4   written instrument.  It follows that, for purposes of ORS 86.735(1), "assignments of the

5   trust deed" means written assignments that are executed and acknowledged with such

6   formalities, not a *post hoc* memorialization of a transfer of the secured obligation created

7   solely for the purpose of recording.  Thus, the answer to the third certified question is

8   "no."  ORS 86.735(1) does not require recordation of "assignments" of the trust deed by

9   operation of law that result from the transfer of the secured obligation.

10          In giving that answer, we acknowledge a practical concern that appears to

11  loom in the background of these cases -- that construing the phrase "any assignments" in

12  ORS 86.735(1) as applying only to formal, written assignments of a trust deed renders the

13  provision meaningless.  In particular (the concern posits), a recording requirement that is

14  so easily bypassed can have no conceivable function in the OTDA's statutory scheme;

15  indeed, read in that way, the requirement precludes homeowners in foreclosure from

16  ascertaining the identity of the true beneficiary.  That concern, however, rests on the

17  mistaken assumption that the right of a defaulting homeowner to establish the identity of

18  the true beneficiary depends *exclusively* on plaintiffs' preferred reading of the recording

19  requirement in ORS 86.735(1).

20          To the contrary, the OTDA is laced with provisions that indicate that the

21  grantor is entitled to know the identity of the beneficiary.  As discussed above, ORS

22  86.753(1), for example, provides that the grantor (and others) may cure a default before a

35

1   foreclosure sale by making payment, and paying costs and expenses "to the beneficiary."

2   Under ORS 86.737(2)(b)(B), notice to the grantor of a foreclosure sale must include "a

3   telephone number that will allow the grantor access during regular business hours to

4   person-to-person consultation with an individual *authorized by the beneficiary* to discuss

5   the grantor's payment and loan term negotiation and modification."  Similarly, under

6   ORS 86.745(1), a notice of sale must include the name of the "beneficiary."  Finally,

7   ORS 86.759(5) provides that statutory requirements that the trustee provide default and

8   cure-related information to the grantor and others "do not affect the duty of beneficiaries

9   to provide information to grantors."  In sum, those provisions all assume that the true

10  beneficiary must be identifiable.  Thus, no part of our answer to the third certified

11  question should be taken to suggest that, where the foreclosing party is not the original

12  lender, the foreclosing party need not provide definitive documentation of its status as the

13  lender's successor in interest to establish its right to foreclose.

14          For that same reason, the fourth certified question, relating to MERS's

15  authority to act as an agent for a lender or a lender's successor in interest, is important.

16  Although we have concluded that the lender or its successors need not record

17  assignments of the trust deeds that occur by operation of law, the fact remains that, when

18  those persons fail to do so, they are vulnerable to challenges that may force them to

19  judicially establish their interests and authority to act.[13]  With that foundation in place, we

---

[13]     Depending on whether MERS is an agent of the initial lender and its
successors in interest, one commentator has suggested that MERS can establish a

1  turn to the fourth certified question.

2                          V.  FOURTH CERTIFIED QUESTION

3                "Does the Oregon Trust Deed Act allow MERS to retain and transfer
4         legal title to a trust deed as nominee for the lender, after the note secured by
5         the trust deed is transferred from the lender to a successor or series of
6         successors?"

7                Plaintiffs assert:

8                "The OTDA does not allow MERS to retain or transfer legal title to
9         a trust deed after the promissory note is transferred from the original lender
10        to a successor.  This is because MERS has no legal title to the interests
11        conveyed under a trust deed and because once its principal has no legal
12        interests under a trust deed, it may not act on behalf of that principal to do
13        for itself what its principal could not do.  Even if it had some claim of legal
14        title to the trust deed document, that would make MERS nothing more than
15        a document custodian, not a beneficiary with rights to assign.

16               "In addition, even if the trust deeds could somehow be construed to
17        convey legal title to MERS, such a conveyance would be expressly
18        forbidden under the OTDA.  As the only interest granted by the Borrower
19        in the security instrument is a lien on the land as security for the repayment
20        on the obligation and that legal title is conveyed to the trustee who holds it
21        in trust for the beneficiary, there is simply no interest for MERS to hold."

22  Plaintiffs also assert that MERS's powers as an agent are derived from and limited to

23  those of its principal.  Thus, plaintiffs argue, MERS has no power or authority to act as an

24  agent of a principal that has divested itself of its interest in a trust deed.

25               Defendants reply, first, that "legal and equitable rights to property can be

---

satisfactory chain of title "by recording a memorandum of the series of assignments from
itself as an agent of the original lender to itself as an agent of each successive
noteholder."  Dunne, 49 Willamette L Rev at 100-101.  As explained in our answer to the
fourth certified question below, these cases do not furnish an opportunity to decide
whether such a course of action would effectively establish the ultimate beneficiary's
identity and right to proceed with nonjudicial foreclosure.

1  separated and held by different parties."  It follows, they assert, that the OTDA allows

2  MERS to hold legal title to a trust deed as nominee for the lender, after the note secured

3  by the trust deed is transferred from the lender to a successor or series of successors.

4  Alternatively, defendants argue that MERS has authority as an agent of the original

5  lender and its successors to execute any assignments required or convenient to facilitate

6  the nonjudicial foreclosure process.

7          Because of the way in which the parties have presented their arguments

8  with respect to the fourth certified question, it is useful to reframe it in two parts.  The

9  first part of the question is:

10          "Does the Oregon Trust Deed Act allow MERS to hold and transfer
11          legal title to a trust deed as nominee for the lender, after the note secured by
12          the trust deed is transferred from the lender to a successor or series of
13          successors?"

14  The second part of the question is:

15          "If the answer to the first part of the question is 'no,' does MERS
16          nevertheless have authority as an agent for the original lender and its
17          successors in interest to act on their behalves with respect to the nonjudicial
18          foreclosure process?"

19          For the reasons now explained, the answer to the first part of the question is

20  "no."  As discussed, a beneficiary's interest under a trust deed is analogous to a

21  mortgagee's interest under a mortgage.  ORS 86.715.  Further, a mortgage conveys no

22  legal or equitable interest in fee or for life to the mortgagee, but merely creates a lien that

23  constitutes security for the underlying obligation and grants the mortgagee, upon the

24  mortgagor's default, the right to have the property sold to satisfy the obligation.  *See* ORS

25  86.010; *Stout v. Van Zante*, 109 Or 430, 435-36, 219 P 804, 220 P 414 (1923); *Schleef*,

38

1    107 Or at 74-79; *Ukase Inv. Co. v. Smith*, 92 Or 337, 340, 181 P 7 (1919).  Although no

2    Oregon case has considered which parties hold legal and equitable interests in the lien

3    embodied in a trust deed in the context of the OTDA, a trustee typically holds legal title

4    to the subject of the trust and the beneficiary holds equitable title.  "When a trust is

5    created, the legal title is vested in the trustee * * *.  'A trust implies two estates, -- one

6    legal, and the other equitable; it also implies that the legal title is held by one person, the

7    trustee, while another person, the *cestui que* trust [the beneficiary], has the beneficial

8    interest.'"  *Morse et al. v. Paulson et al.*, 182 Or 111, 117, 186 P2d 394 (1947) (quoting

9    *Allen v. Hendrick*, 104 Or 202, 223, 206 P 733 (1922)) (emphasis added).  ORS

10   86.705(7) provides that a trust deed is "a deed * * * that conveys an interest in real

11   property to a trustee in trust to secure the performance of an obligation the grantor or

12   other person named in the deed owes to a beneficiary."  Under the OTDA, therefore, it is

13   logical to conclude that the trustee holds legal title to the lien conveyed by the trust deed

14   and the beneficiary holds equitable title to that lien.  It follows that, because MERS is

15   neither the trustee nor the beneficiary, it holds no interest at all in the lien conveyed by

16   the trust deed.

17           Relying on this court's decision in *Klamath Irrigation District v. United*

18   *States*, 348 Or 15, 227 P3d 1145 (2010), defendants remonstrate that "legal and equitable

19   rights to property can be separated and held by different parties."  In *Klamath Irrigation*

20   *District*, several irrigation districts and agricultural landowners brought consolidated suits

21   against the United States, claiming that temporary reductions of irrigation water by a

22   federal agency had breached contracts for the supply of irrigation water from the Klamath

1    River Basin reclamation project, had breached an interstate compact, and had violated the

2    Fifth Amendment by the uncompensated taking of property.  In answering certified

3    questions from a federal appeals court, we held that Oregon law recognized distinct legal

4    and equitable interests in the right to use water from the Klamath River Basin that

5    belonged to the irrigation districts and the landowners for whose benefit the irrigation

6    districts held water rights.  *Id.* at 43-44.

7            Defendants' reliance on *Klamath* is unavailing for two reasons.  First, in

8    *Klamath*, this court reiterated the principle that, in determining whether an equitable

9    property right exists, "a court of equity will look beyond the form of the proceeding and

10   if possible consider the substance of the right."  *Id.* at 44.  As discussed above, any

11   analysis of the substance of the transaction or the actual roles of the parties articulated in

12   the trust deed compels the conclusion that MERS owns neither legal nor equitable title to

13   the lien of the trust deed.  Second, although defendants assert that "Oregon law explicitly

14   recognizes that each of the foregoing property interests is capable of further division

15   between holders of legal and equitable title," neither *Klamath* nor any other authority that

16   defendants have identified so holds.  Certainly, an equitable interest may be fractionally

17   divided among a number of owners (as this court recognized to be the case among the

18   members of a water district in *Klamath*), but that is not the circumstance with MERS.

19           Rather, defendants' point seems to be that, even though MERS does not

20   have the right to receive repayment of the notes in these cases, it can nevertheless hold

21   legal title to the trust deeds, including the legal right to foreclose them.  That proposition

22   is not correct for two reasons.  First, as discussed in detail in our answer to the first and

40

1    second certified questions, the beneficiary of a trust deed under the OTDA is the lender

2    or the lender's successor in interest as respects the right to repayment.  And it is the same

3    beneficiary that has the other statutory rights and obligations that the OTDA confers and

4    imposes, including the power to control the foreclosure decision and process through the

5    right to appoint a successor trustee.  Second, as explained in our answer to the first

6    certified question, the policy choice that the OTDA reflects (that the "beneficiary" must

7    be the person entitled to repayment of the secured obligation) is rooted in the common-

8    law principle that a foreclosing party must have the power to enforce the underlying note.

9    *See Holton*, 99 Or at 429.  Accordingly, we conclude that the OTDA does not allow

10   MERS to hold or transfer legal title to a trust deed separately from the right to receive

11   repayment of the obligation that it secures.  Because MERS does not have the right to

12   receive repayment of the notes in these cases, the OTDA does not allow MERS to hold

13   and transfer legal title to the trust deeds that secure them.

14          That conclusion brings us to defendants' and MERS's alternative argument

15   that MERS has authority as an agent of the original beneficiary and any successor

16   beneficiaries of the subject trust deeds to take any steps that are required or convenient to

17   carry out the nonjudicial foreclosure process.  The accuracy of that assertion depends on

18   whether MERS qualifies as an agent of those entities for purposes of Oregon law.  *See*

19   *Restatement (Third) of Agency* § 1.02 (2006) ("Whether a relationship is characterized as

20   agency in an agreement between parties or in the context of industry or popular usage is

21   not controlling.").  This court has defined agency in the following terms:  "[T]o be an

22   'agent' -- using the well-defined legal meaning of that term -- two requirements must be

41

1    met:  (1) the individual must be subject to another's control; and (2) the individual must

2    'act on behalf of' the other person."  *Vaughn v. First Transit, Inc.*, 346 Or 128, 136, 206

3    P3d 181 (2009).

4                Plaintiffs assert that, even if MERS is an agent of the beneficiaries in these

5    cases, MERS's interests in the trust deeds cannot extend beyond those of the beneficiaries

6    for whom it purports to act, because its powers as an agent cannot exceed those held by

7    its principals.  Thus, when the interest of its principal is conveyed, plaintiffs argue,

8    MERS's authority to act for that principal is simultaneously terminated.  According to

9    plaintiffs, nothing in Oregon law "supports the idea of freestanding agency on which

10   MERS relies."  Moreover, plaintiffs note that at least two other courts recently have

11   agreed with their arguments.  For example, the Arkansas Supreme Court has held, under

12   virtually identical statutory language:

13          "MERS was at best the agent of the lender.  The only recorded document
14          provides notice that [Lender] is the lender and, therefore, MERS's principal.
15          MERS asserts [Lender] is not its principal.  Yet no other lender recorded its
16          interest as an assignee of [Lender].  Permitting an agent such as MERS
17          purports to be to step in and act without a recorded lender directing its
18          action would wreak havoc on notice in this state."

19   *Mortgage Electronic Registration System, Inc., v. Southwest Homes of Arkansas*, 2009

20   Ark 152, 301 SW3d 1, 8 (2009).[14]  The Supreme Court of Washington recently reached a

21   similar conclusion:

---

[14]        Under the Arkansas statute, "beneficiary" means "the person named or
otherwise designated in a deed of trust as the person for whose benefit a deed of trust is
given or his successor in interest"  Ark. Code Ann. § 18-50-101(1) (2010).

1          "MERS attempts to sidestep this portion of traditional agency law by
2          pointing to the language in the deeds of trust that describe MERS 'as acting
3          solely as a nominee for Lender and Lender's successors and assigns.' * * *
4          But MERS offers no authority for the implicit proposition that the lender's
5          nomination of MERS as a nominee rises to an agency relationship with
6          successive noteholders."

7   *Bain v. Metropolitan Mortg. Group, Inc*., 175 Wash 2d 83, 107, 285 P3d 34, 45-46

8   (2012).

9          Here, plaintiffs allege that their original lenders sold and terminated their

10  respective interests in the trust deeds and underlying promissory notes shortly after the

11  origination of plaintiffs' loans.  More to the point, they allege that those original lenders

12  transferred their interests in their promissory notes and trust deeds (followed by multiple

13  subsequent transfers as well) long before MERS executed or recorded an assignment of

14  the trust deeds to the purported ultimate successors in interest of the original lenders.  In

15  each of the cases, the plaintiffs assert "that the promissory note was sold and the trust

16  deed was assigned from the originating lender of each respective loan through a series of

17  subsequent intervening purchasers until it was purportedly conveyed to the current party

18  on whose behalf each of the nonjudicial foreclosures was being conducted."  In

19  particular, plaintiffs assert that "their loans were sold first to a separate entity known as a

20  Sponsor, which subsequently sold the promissory note and assigned the trust deed to an

21  entity known as a Depositor, which subsequently sold the promissory note and assigned

22  the trust deed to Defendant, Bank of New York Mellon FKA The Bank of New York,

23  ("BNYM") as Trustee for the respective securitized trusts of which BNYM acts as

24  Trustee."

1        As an initial matter, it is worth noting that, in each case, it is MERS itself,

2    not MERS as "nominee" for the actual beneficiary, that executed a written assignment of

3    the trust deed to the reputed ultimate successor of the original lender and recorded that

4    assignment in the pertinent real property records.  Because MERS does not qualify as the

5    beneficiary, an assignment in such capacity is invalid.  *See* ORS 86.705(2); 86.735(1).

6    But, assuming, as it asserts, that MERS also acts as an agent or nominee for the original

7    beneficiary and successor beneficiaries, a different set of rules applies.[15]

8        In Oregon, agency is "[t]he relationship which results from the

9    manifestation of consent by one person to another that the other shall act on behalf and

10   subject to his control, and consent by the other so to act."  *Hampton Tree Farms, Inc. v.*

11   *Jewett*, 320 Or 599, 617, 892 P2d 683, 694 (1995) (quoting *Ruddy v. Ore. Auto. Credit*

12   *Corp.*, 179 Or 688, 702, 174 P2d 603, 609 (1946)) (internal quotations omitted).  The

13   principal-agent relationship is defined by, among other things, the ongoing ability of the

14   principal to maintain control over the agent by giving the agent instructions.  *See Vaughn*,

15   346 Or at 136 (quoting *Restatement (Third) of Agency* § 1.01 comment f (2006)).

---

[15]    In their arguments to this court, defendants at times refer to MERS as lender's "agent," and at other times as lender's "nominee" (the status MERS is accorded in the trust deeds).  Although the distinction is far from clear, there is some basis for concluding that the authority of a nominee vis-à-vis its principal can be more limited than that of an ordinary agent.  In that regard, we observe that *Black's Law Dictionary* defines a "nominee," as "2. A person designated to act in place of another, usu. in a very limited way[;] 3. A party who holds bare legal title for the benefit of others or who receives and distributes funds for the benefit of others."  *Black's Law Dictionary* 1076 (8th ed 2004).  It may be, however, that MERS and its members understood the word as a synonym for "agent."  The record before us does not illuminate that issue.

1        Defendants assert that, even where multiple trust deed transfers have

2   occurred, MERS has ongoing authority to act for its past and present principals under the

3   MERS system.  MERS explains that,

4        "[w]hen MERS executes an assignment of the trust deed, it is doing so as
5        nominee agent of the then-note owner.  Plaintiffs and *amicus* OTLA
6        wrongly view MERS as acting on behalf of the former principal, the
7        original lender.  Agency principles permit MERS to serve as a common
8        agent of the original lender and all successors and assigns, and all parties to
9        the trust deed -- including the borrower -- acknowledge that MERS will do
10       this.  Accordingly, when MERS executes a written assignment of 'all
11       beneficial interest under that certain Deed of Trust[,]' it is acting on behalf
12       of the current owner of equitable title to the beneficial interests under the
13       trust."

14  Similarly, *amicus* Oregon Land Title Association asserts:

15       "Finally, as to the answer on the fourth certified question, MERS has
16       authority to retain and transfer legal title to a trust deed after a transfer of
17       the underlying promissory note as long as the lender's successors and
18       assigns also are members of MERS.  In such circumstances, the lender's
19       successors and assigns have given MERS the requisite authority to act on
20       their behalf.  Thus, as long as MERS remains constant as a nominee
21       holding legal title to the trust deed for the lender and any successors or
22       assigns, MERS has authority to transfer legal title to the trust deed."

23       According to defendants and MERS, courts examining the issue recognize

24  that MERS's role as nominee or agent carries forward to subsequent obligees -- indeed,

25  defendants assert, that was one of the very purposes for the creation of MERS.[16]  Those

---

[16]    *See In re Tucker*, 441 BR 638, 646 (Bankr. WD Mo 2010) ("MERS was the
agent for New Century under the Deed of Trust from the inception, and MERS became
agent for each subsequent note-holder under the Deed of Trust * * *."); *Kiah v. Aurora
Loan Services*, LLC, 2011 WL 841282 at 4 (D Mass 2011) ("dissolution of [lender]
would not and could not prevent [note holder] from obtaining an assignment of the
mortgage from MERS, both as a matter of law and according to the arrangement that

1    propositions notwithstanding, the difficulty is that, on the record before us, it is unclear

2    whether such a broad common agency relationship exists in these cases among MERS

3    and the original lenders and their successors in interest.  The trust deeds, by themselves,

4    do not establish the necessary relationship; they instead confuse the issue by first granting

5    MERS the seemingly-narrow status of a "nominee" and then purporting to grant MERS

6    authority to "exercise" other "interests" if "necessary."  More importantly, although the

7    trust deeds are signed by the borrowers, the original lenders and their successors, who are

8    the other parties under defendants' theory of "common agency," are not signatories.

9    Accordingly, the answer to the second part of the fourth question depends, in large

10    measure, on evidence with respect to who ultimately holds the relevant interests in the

11    notes and trust deeds, and whether that person and each of its predecessors in interest

12    conferred authority on MERS to act on their behalves in the necessary respects.  And that

13    evidence is not present in the record before us.

14    　　　　　The answers to the two parts of the fourth certified question thus may be

15    stated in the following terms:

16    　　　(4)(a)  "Does the Oregon Trust Deed Act allow MERS to hold and transfer
17    　　　　　legal title to a trust deed as nominee for the lender, after the note secured by
18    　　　　　the trust deed is transferred from the lender to a successor or series of

---

existed between MERS and Aurora as a 'successor and assign'"); *MERSCORP, Inc. v. Romaine*, 861 NE2d 81, 83 (NY 2006) ("Members contractually agree to appoint MERS to act as their common agent on all mortgages they register in the MERS system."); *see also Restatement (Third) of Agency* § 1.04 (an agent may act on behalf of both a disclosed principal, *i.e.*, the original lender, and a later unidentified principal, *i.e.* original lender's successor and assign).

1     successors?"

2     Answer:  "No."  For purposes of the OTDA, the only pertinent interests in
3     the trust deed are the beneficial interest of the beneficiary and the legal
4     interest of the trustee.  MERS holds neither of those interests in these cases,
5     and therefore, it cannot hold or transfer legal title to the trust deed.  For
6     purposes of our answer to the first part of the fourth certified question, it is
7     immaterial whether the note secured by the trust deed has previously been
8     "transferred from the lender to a successor or series of successors."

9     (4)(b)  "Does MERS nevertheless have authority as an agent for the original
10    lender and its successors in interest to act on their behalves with respect to
11    the nonjudicial foreclosure process?"

12    Answer:  The power to transfer the beneficial interest in a trust deed or to
13    foreclose it follows the beneficial interest in the trust deed.  The beneficiary
14    or its successor in interest holds those rights.  MERS's authority, if any, to
15    perform any act in the foreclosure process therefore must derive from the
16    original beneficiary and its successors in interest.  We are unable to
17    determine the existence, scope, or extent of any such authority on the
18    record before us.

19           Certified questions answered.

47

1        KISTLER, J., concurring in part and dissenting in part.

2        The United States District Court for the District of Oregon has certified

3    four state law questions to this court.  In answering the first two questions, the majority

4    concludes that only the lender and its successors can be designated as the beneficiary on a

5    trust deed.  In answering the last two questions, the majority concludes that not every

6    assignment of the lender's interest in the trust deed must be recorded and that Mortgage

7    Electronic Recording Systems, Inc. (MERS) can serve as the agent for both the lender

8    and its successors if the record shows that those entities agreed to that arrangement.  I

9    agree with the majority's answers to the last two questions but would answer the first two

10   questions differently.  In my view, nothing in state law precludes the parties to a trust

11   deed from designating MERS as the beneficiary as long as MERS is serving as the agent

12   for the lender and its successors.[1]

13       Bart and Jessica Brandrup executed a trust deed on their property to secure

14   a debt evidenced by a note that they gave their lender, America's Wholesale Lender.  In

15   their trust deed, the Brandrups designated MERS "acting solely as a nominee for Lender

16   and Lender's successors and assigns" as the "beneficiary under this Security Instrument."

17   The issue that the first two certified questions pose is whether state law required the

18   Brandrups to designate America's Wholesale Lender as the beneficiary rather than MERS

---

[1]        In referring to the lender's successors, I am referring to those successors in
interest that are entitled to enforce the obligation that the trust deed secures.

1

1    acting as the nominee or agent for the lender and its successors.[2]

2         The majority finds a complete answer to that issue in the definition of

3    "beneficiary" in the Oregon Trust Deed Act.  *See* ORS 86.705(2).  That Act authorizes a

4    borrower to grant a trust deed on real property to secure an underlying obligation[3] and, in

5    a definitional section, provides that " '[b]eneficiary' means a person named or otherwise

6    designated in a trust deed as the person for whose benefit a trust deed is given, or the

7    person's successor in interest * * *."  *Id.*  As the majority observes, a trust deed secures an

8    obligation, frequently evidenced by a promissory note, and the lender and its successors

9    are the persons for whose benefit the trust deed is given; that is, the trust deed is given to

10   secure the obligation that the grantor of the trust deed owes the lender.  That much is

11   unexceptional.

12         It is one thing, however, to say that the statutory definition identifies the

13   lender and its successors as the persons who ordinarily will be the beneficiaries of the

14   trust deed.  It is quite another to find in that definition a legislative intent to preclude the

15   parties to a trust deed from designating the agent of the lender and its successors as the

16   beneficiary.  We should be hesitant to find in that run-of-the-mill definition a limitation

---

[2]    As the majority notes, a nominee is a limited agent.  See ___ Or at ___ (slip op at 44 n 13).

[3]    Essentially, a trust deed is a mortgage with the power of sale.  A trust deed differs from a mortgage primarily in that it conveys an interest in real property to a trustee to secure an obligation owed the beneficiary, *see* ORS 86.705(7), and, in the event of the grantor's default, authorizes the trustee to conduct a nonjudicial foreclosure sale on behalf of the beneficiary, *see* ORS 86.710.

1   on the parties' customary authority to structure their transactions as they see fit, unless the

2   text, context, or history of that definition requires it.  In my view, the statutory definition

3   of beneficiary serves a more modest role than the one the majority assigns it.  Certainly,

4   nothing in the text of the definition expressly forecloses the parties from designating the

5   lender's agent as the beneficiary in the trust deed.  Nor does the legislative history lend

6   any support for the majority's conclusion.  Rather, the legislative history shows only that,

7   in authorizing the use of trust deeds, the legislature sought to provide a more cost-

8   effective means of foreclosing liens on real property and, in doing so, to expand the pool

9   of capital available for small homeowners.  *See* Minutes, House Committee on Judiciary,

10  SB 117, April 16, 1959, at 1.  It is difficult to derive from that history any legislative

11  intent to limit the parties' ability to designate the lender's agent as the beneficiary.

12          To be sure, the context provides a limitation on the persons whom the

13  parties may designate as the beneficiary.  As noted, a trust deed, like a mortgage, serves

14  as security for the underlying obligation -- in this case, a promissory note.  Ordinarily, the

15  mortgage follows the note.  *See Restatement (Third) of Property: Mortgages* § 5.4(a)

16  (1997) ("A transfer of an obligation secured by a mortgage also transfers the mortgage

17  unless the parties to the transfer agree otherwise.").  Moreover, "[a] mortgage may be

18  enforced only by, or in behalf of, a person who is entitled to enforce the obligation the

19  mortgage secures." *Id.* § 5.4(c).  Put differently, "in general a mortgage is unenforceable

20  if it is held by one who has no right to enforce the secured obligation." *Id.* § 5.4

21  comment e.  One exception to that general rule occurs when the person who holds the

22  mortgage does so as the "trustee or agent" of the person who has the right to enforce the

1    obligation secured by the mortgage. *Id.* In that circumstance, the trustee or agent may

2    enforce the mortgage on behalf of the lender and its successors.

3            On the one hand, that context suggests that the authority to name or

4    otherwise designate the beneficiary does not extend to naming a person whose

5    designation would render the trust deed unenforceable and thus defeat its purpose. *See*

6    *id.* (noting that "in general a mortgage is unenforceable if it is held by one who has no

7    right to enforce the secured obligation"). On the other hand, that context suggests that the

8    class of persons statutorily authorized to be "named or otherwise designated in [the] trust

9    deed" as the beneficiary is not limited to the lender and its successors, as the majority

10   concludes. Rather, it extends to persons (agents and trustees) who also may enforce the

11   mortgage on behalf of the lender and its successors. Accordingly, I would hold that the

12   statutory definition of beneficiary is broad enough to permit the parties to a trust deed to

13   designate MERS as the beneficiary as long as MERS is the nominee or agent of the

14   lender and its successors in interest.[4]

15           Ultimately, the difference between my answer and the majority's answer

16   may be more semantic than substantive. After all, in answering the fourth question, the

17   majority recognizes that, in theory, MERS can serve as the agent for the lender and its

18   successors. The problem, as the majority correctly observes, with applying that theory in

----

[4]        The terms of the trust deed could be much clearer about the role that MERS
plays. However, defendant argues that, under the terms of the trust deed, MERS serves
as the agent for the lender and its successors, and the terms of the trust deed permit that
understanding.

1    this case is that the record does not disclose whether the lender's successors in interest

2    also have authorized MERS to act as their agent.  As I understand the majority's answers,

3    they effectively lead to the same conclusion that I would reach.  However, because I

4    would answer the first two certified questions differently from the majority, I dissent in

5    part and concur in part in its answers.

6              Balmer, C.J., joins in this opinion concurring in part and dissenting in part.