**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

RESIDENTIAL CAPITAL, LLC, *et al*.

Debtors.

**NOT FOR PUBLICATION**

Case No. 12-12020 (MG)

Jointly Administered

**MEMORANDUM OPINION AND ORDER SUSTAINING OBJECTION TO**
**CLAIM NO. 1372 OF JOSEPH COZZOLINO**

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Joseph Cozzolino filed claim number 1372 (the "Claim") against Debtor GMAC Mortgage, LLC ("GMACM"), asserting a general unsecured claim in the amount of $193,274.41 for Cozzolino's "Mortgage Loan."[1] MortgageIT, Inc. ("MortgageIT"), a non-Debtor, originated Cozzolino's loan (the "Loan") on May 17, 2007. GMACM's only connection to the Loan was as the subservicer on behalf of the investor, from May 29, 2007, until loan servicing was transferred to Countrywide Loan Servicing ("Countrywide") on July 2, 2007. The Debtors do not assert an interest in Cozzolino's property, they do not claim that Cozzolino owes them any money, and they do not have a recorded lien on his property. Indeed, Cozzolino's claim against GMACM appears to hinge on his allegation that GMACM, along with banks across the country, engaged in a conspiracy with Mortgage Electronic Registration Systems, Inc. ("MERS") to commit mortgage fraud. According to Cozzolino, since MERS appears on his chain of title, his title is clouded, preventing him from selling his home and recouping any money invested in the property. He further challenges MERS' ability to record assignments of his mortgage and claims

---

[1] The Claim amended Claim No. 448, previously filed by Cozzolino, which was expunged by this Court's *Order Granting Debtors' Twenty-Fifth Omnibus Objection to Claims (Amended and Superseded)* (ECF Doc. # 5188).

that MortgageIT engaged in fraudulent activity when it originated his Loan without informing him that MERS would put a lien on his property.

The ResCap Borrower Claims Trust (the "Trust")[2] objects to the Claim on the grounds that GMACM only serviced the Loan, for less than two months, and did not engage in any conduct that would give rise to liability..

Indeed, all of Cozzolino's allegations relate to the conduct of *non-Debtors*—MERS and MortgageIT. Because Cozzolino cannot maintain a claim against any of the Debtors for clouding his title or for fraudulent origination, the Court **SUSTAINS** the Trust's objection to the Claim.

## I. BACKGROUND

Before the Court is the *ResCap Borrower Claims Trust's Sixty-Second Omnibus Objection to Claims (No Liability Borrower Claims)* (the "Objection," ECF Doc. # 6815). The Trust seeks an order disallowing and expunging the Claim.[3] In support of the Objection, the Trust submitted the Declarations of Deanna Horst (Obj. Ex. 1) and Norman Rosenbaum (Obj. Ex. 2). Cozzolino filed an opposition (the "Opposition," ECF Doc. # 6986), and the Trust submitted a reply (the "Reply," ECF Doc. # 7062). Attached to the Reply is the Supplemental Horst Declaration (the "Supp. Horst Decl.," Reply Ex. 1).

### A. Procedural History

On May 14, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The General Bar Date to file proofs of claim was originally set as November 9, 2012, and was extended to November 16, 2012 at 5:00 p.m.

---

[2]   The Trust is the Debtors' successor in interest with respect to claims filed by Borrowers (defined below).

[3]   The Court previously entered a separate order granting the Objection as to certain other claims subject to the Objection. (*See* ECF Doc. # 7086.)

(Prevailing Eastern Time) (ECF Doc. # 2093).  Cozzolino timely filed his Claim on October 17, 2012.

On March 21, 2013, the Court entered an order (the "Procedures Order," ECF Doc. # 3294) authorizing the Debtors to file omnibus objections on various grounds.  The Procedures Order included specific protections for Borrowers,[4] and established procedures for the Debtors (and now the Trust) to follow before objecting to certain categories of Borrower claims.  For example, before objecting to certain Borrower claims, the Trust must send the Borrower a letter (a "Request Letter") requesting additional documentation in support of the Borrower's claim.  (*See* Procedures Order at 3–4.)

On December 11, 2013, the Court entered an order (ECF Doc. # 6065) confirming the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* (the "Plan," ECF Doc. # 6065-1).  The Plan became effective on December 17, 2013 (the "Effective Date").  (ECF Doc. # 6137.)  On the Effective Date, the Trust and the ResCap Liquidating Trust were established as successors in interest to the Debtors; the Trust is the successor in interest with respect to Borrower Claims.  (*Id.*)  The Trust was established to, among other things, "(i) direct the processing, liquidation and payment of the Allowed Borrower Claims in accordance with the Plan, and the distribution procedures established under the Borrower Claims Trust Agreement, and (ii) preserve, hold, and manage the assets of the Borrower Claims Trust for use in satisfying the Allowed Borrower Claims."  (Confirmed Plan, Art. IV.F.)  The Trust is empowered to object to borrower claims that it believes do not reflect liability of the Debtors.

---

[4] Within the Procedures Order, the term "Borrower" means "a person who is or was a mortgagor under a mortgage loan originated, serviced, and/or purchased or sold by one or more of the Debtors."  (*See* ECF Doc. # 3123 ¶ 21.)

**B.    The Claim**

Cozzolino attached a number of documents to the Claim, including documents related to the origination of his Loan and servicing statements.[5]  After the Trust sent Cozzolino a Request Letter, he responded by sending additional documentation in support of his claim, including a letter describing a conspiracy to commit mortgage fraud by MERS and banks across the country. (*See* Supp. Horst Decl. Ex. A-1.)  According to Cozzolino, MERS clouded his titled by creating an illegal lien, making it impossible for him to transfer clear title to a new owner.  (*Id.*) Cozzolino concedes that MortgageIT originated his loan, but challenges MERS' ability to record assignments of a mortgage when it does not own the corresponding note, and argues that merely reciting the transfer of ownership of a mortgage is insufficient—the parties must actually transfer possession of the relevant documents.  (*Id.*)  Finally, Cozzolino alleges that Residential Capital, LLC ("ResCap") "took over the liability from MERS."  (Opp. at 3.)

On April 22, 2014, the Trust filed the Objection, arguing that Cozzolino lacks standing and the Claim fails to state a basis for liability.  The Trust argues that GMACM only serviced Cozzolino's loan from May 29, 2007 until July 2, 2007, at which point it transferred the servicing rights to Countrywide.  (Obj. Ex. A.)  According to the Trust, since no Debtor entity ever held an ownership interest in Cozzolino's loan, the Trust cannot be liable for any cloud on title.

---

[5]    Specifically, Cozzolino attached:  (1) a letter explaining his calculation of the amount of the Claim; (2) a statement of settlement indicating that MortgageIT originated a $100,000 loan for Cozzolino so he could buy the property; (3) an invoice showing the amounts paid in escrow for the property sale; (4) a warranty deed from the property sellers to Cozzolino; (5) a payment letter from MortgageIT to Cozzolino indicating that Cozzolino owes $591.54 per month in loan payments and that MortgageIT engaged GMACM to service Cozzolino's Loan; (6) excerpts from Cozzolino's note evidencing the $100,000 Loan from MortgageIT to Cozzolino; (7) excerpts from the deed of trust to the property; (8) a Truth in Lending disclosure statement; (9) a Utah disclosure of servicer form indicating that GMACM was the servicer of Cozzolino's Loan; (10) a uniform residential loan application relating to Cozzolino's $100,000 Loan; and (11) closing instructions for the property sale.

4

Cozzolino did not appear at the hearing on June 10, 2014; the Court took the Objection under submission.

## II.    DISCUSSION

### A.    Claims Objections

Claims objections have a shifting burden of proof. Correctly filed proofs of claim "constitute prima facie evidence of the validity and amount of the claim . . . . To overcome this prima facie evidence, an objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000). By producing "evidence equal in force to the prima facie case," an objector can negate a claim's presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a preponderance of the evidence that under applicable law the claim should be allowed." *Creamer v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, No. 12 Civ. 6074 (RJS), 2013 U.S. Dist. LEXIS 143957, at *12–13 (S.D.N.Y. Sept 26, 2013) (internal quotation marks omitted). If the objector does not "introduce[] evidence as to the invalidity of the claim or the excessiveness of its amount, the claimant need offer no further proof of the merits of the claim." 4 COLLIER ON BANKRUPTCY ¶ 502.02 (16th rev. ed. 2013).

Bankruptcy Code section 502(b)(1) provides that claims may be disallowed if "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law." *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006).

### B. Cozzolino's Allegations Against MERS Are Improperly Asserted

Cozzolino makes a number of allegations against MERS, asserting that MERS assisted unnamed banks to commit fraud. (Opp. at 3.) But despite Cozzolino's contentions to the contrary (*see id.* at 2), MERS is not a Debtor, and Cozzolino cannot assert claims for MERS' alleged actions against the GMACM or the Trust. If Cozzolino believes MERS clouded title to his property, he must file suit against MERS, not against a Debtor entity with no responsibility for the lien.[6]

### C. Cozzolino Cannot Maintain a Claim Against the Debtors for Clouding His Title

Cozzolino cannot hold GMACM (or ResCap) liable for clouding his title—he has not shown that his title is clouded, or that GMACM would be liable if his title is clouded. In Utah, "[a] quiet title action is a suit brought to quiet an existing title against an adverse or hostile claim of another and the effect of the decree quieting title is not to vest title but rather is to perfect an existing title as against other claimants." *Haynes Land & Livestock Co. v. Jacob Family Chalk Creek, LLC*, 233 P.3d 529, 535 (Ct. App. Ut. 2010). "The complaint in an action to quiet title . . . must state all of the elements essential to the cause of action. Averments that are essential to a statement of the complainant's cause of action include allegations of facts showing . . . the existence and invalidity of the defendant's claim or lien." 65 Am. Jur. 2d *Quieting Title and Determination of Adverse Claims* § 69 (2001) (footnotes omitted); *see also Haynes*, 233 P.3d at 535 (stating that a plaintiff is only entitled to an adjudication of the specific adverse or hostile claims identified in its pleadings).

No Debtor has a claim or lien on Cozzolino's property. Cozzolino fails to identify (1) *how* his title has been clouded; (2) how he was damaged; and (3) how any of the Debtors are

---

[6] The deed of trust that Cozzolino attaches to his Claim explicitly notes that MERS is the nominee for the lender and the beneficiary under the deed of trust.

6

responsible for any damages. He merely asserts that as a result of MERS' lien on his property, he "can no longer sell [his] property and transfer a clear title to a new owner." (Opp. at 2–3.)

Even *if* his title is clouded and he suffered damages, however, Cozzolino does not explain why the Debtors are responsible. Absent from Cozzolino's Claim are any alleged actions by the Debtors to cloud his title. The Debtors were not involved in placing the lien on the property; GMACM briefly acted as subservicer for his Loan, and by letter dated June 15, 2007, informed Cozzolino that the servicing rights were transferred to Countrywide. (*See* Supp. Horst Decl. Ex. D.) Instead, all of Cozzolino's allegations center on the conduct of MortgageIT and MERS, both non-Debtors. Consequently, Cozzolino cannot maintain a clouded or quiet title claim against any of the Debtors.

### D. Cozzolino Cannot Maintain A Claim Against the Debtors for Origination Fraud, and He Cannot Force the Debtors to Release the Lien on His Property

Though Cozzolino alleges that "GMAC Mortgage LLC provided [him] with his original mortgage," he is mistaken. (*See* Opp. at 2, 3.) The title insurance statement, note, and mortgage attached to the Claim all identify MortgageIT, a non-Debtor, as his lender. (*See* Supp. Horst Decl. at 228, 238–39.) All of Cozzolino's allegations relating to the origination of the Loan are improperly asserted against GMACM; it did not originate the Loan. While Cozzolino alleges that he is unable to sell his house because he cannot deliver clear title due to these alleged origination problems, he has not provided any evidence of an origination deficiency that would prevent him from transferring title to his property beyond mere allegations that MERS placed a fraudulent lien on the property. As stated above, Cozzolino's allegations against MERS cannot form the basis for liability against any of the Debtors.[7]

---

[7] Cozzolino also alleges that GMACM engaged in a conspiracy with MERS in order to place a lien on his property at the time his mortgage loan was originated. His only stated basis for this allegation is the false premise

7

### III.  CONCLUSION

For all of the foregoing reasons, the Objection is **SUSTAINED**, and claim number 1372 is hereby disallowed and expunged.

**IT IS SO ORDERED.**

Dated: July 15, 2014
 New York, New York

_____*Martin Glenn*_____
MARTIN GLENN
United States Bankruptcy Judge

---

that GMACM was the originator of his loan.  (*See* Opp. at 2.)  The evidence provided by the Trust that GMACM did not originate Cozzolino's loan is therefore sufficient to rebut Cozzolino's conspiracy allegation.