UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

FOR PUBLICATION

In re:

RESIDENTIAL CAPITAL, LLC, *et al.*

Debtors.

Case No. 12-12020 (MG)

Jointly Administered

**MEMORANDUM OPINION AND ORDER SUSTAINING IN PART AND OVERRULING IN PART OBJECTION TO PROOF OF CLAIM 386**

*A P P E A R A N C E S:*

MORRISON & FOERSTER LLP
*Attorneys for ResCap Borrower Claims Trust*
425 Market Street
San Francisco, CA 94105
By:    Adam A. Lewis, Esq.

DAVID F. GARBER, P.A.
*Attorneys for Mack Creditors*
700 Eleventh Street South
Suite 702
Naples, FL 34102
By:    David F. Garber, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Barry and Cheryl Mack bought a home in Florida in 2006.  By 2009, they realized that

they could no longer afford their mortgage payments.  They contacted their loan servicer—

GMAC Mortgage LLC ("GMACM")—to obtain a loan modification.  Rather than working out a

modification with the Macks, GMACM started foreclosure proceedings and hired a notorious

Florida attorney (since disbarred) to bring the foreclosure action in the name of Deutsche Bank

Trust Company Americas ("Deutsche Bank"), the trustee of the securitization trust that owned

the Macks' loan.  But the Macks had *not* defaulted on their loan payments.  GMACM claims that

when it learned of the "accidental" foreclosure action, it instructed its attorney to withdraw the

action.  The attorney neglected to withdraw the case, so it continued.  Meanwhile, the Macks repeatedly contacted GMACM to ask who Deutsche Bank was, when Deutsche Bank obtained an interest in the Macks' loan, and why the foreclosure was proceeding at all.  GMACM failed to respond to at least one of the Macks' inquiries and in other instances told the Macks that the foreclosure was a mistake and should be ignored.  But the foreclosure case carried on.

The Macks filed counterclaims against Deutsche Bank in the foreclosure action.  The attorney GMACM hired to bring the foreclosure action defaulted on the counterclaims.  A final judgment awarding the Macks damages against Deutsche Bank was entered, but then partially vacated—all of which is discussed below.  GMACM was not a party to the action, although it caused it to be commenced and didn't stop it from continuing.  The Macks collected a damages award from Deutsche Bank in the amount of $321,970.77, plus attorneys' fees, after the initial judgment in the amount of $446,920.05 was reduced.

The real horror of these events is that in October 2009, during the pendency of the foreclosure action, Mrs. Mack overdosed on sleeping pills, allegedly from the stress from the prospect of losing her home.  She suffered severe kidney damage; and as a result of kidney damage, she died in October 2013.  The Macks' initial judgment on the counterclaims against Deutsche Bank included recovery on a claim under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq*. ("RESPA"), among other things, for non-economic damages attributed to Mrs. Mack's pain and suffering (she didn't die until after the Macks collected their judgment against Deutsche Bank).  GMACM remained an uninformed and apparently uninterested bystander throughout those proceedings.  When Deutsche Bank finally learned about the judgment and moved to vacate it, the trial court vacated the portion of the judgment based on the

RESPA claim, concluding that the Macks could not maintain a cause of action against Deutsche Bank for violation of RESPA.

Before the Bar Date in these chapter 11 cases, the Macks filed proof of claim number 386 (the "Claim") against GMACM, alleging more than $30 million in damages resulting mostly from the same conduct at issue in the counterclaims against Deutsche Bank.[1] Mack's counsel recognizes that his surviving client cannot recover twice for the same injury. As explained below, to the extent the claims and damages against Deutsche Bank and GMACM overlap, they are barred by res judicata. But Mack also alleges one new theory of liability against GMACM for which the Macks did not recover damages from Deutsche Bank. Mack alleges that GMACM—the loan servicer—violated RESPA by failing to respond to a qualified written request ("QWR"), a claim that could not be asserted against Deutsche Bank. Mack seeks to recover non-economic damages from GMACM that the Macks were unable to recover from Deutsche Bank, including for the harm that allegedly ultimately resulted in Mrs. Mack's death.

The issue whether a plaintiff can recover non-economic damages from a loan servicer under RESPA has divided the courts, and there is no controlling authority in this Circuit. Even assuming that such damages may be recovered under RESPA, Mack may have a difficult time proving causation and damages—the RESPA violation identified by Mack occurred fairly late in the very bad chain of events in this case. The ResCap Borrower Claims Trust argues that the RESPA claim is barred by res judicata; that part is easy—the RESPA claim is not barred. While the Court reserves the ability to revisit the issue of recovery of non-economic harm for a RESPA violation before this claim is fully resolved, the Court concludes below that Mack can proceed

---

[1]    Mr. & Mrs. Mack together filed the proof of claim, but Mrs. Mack died on October 25, 2013, apparently from renal failure. Mr. Mack carries on the fight to recover on the Claim. The death certificate and other relevant documents are attached to the Opposition. Mr. Mack will be referred to in the singular for arguments made (after Mrs. Mack died) in the Opposition or during the hearing on the Objection; the Macks will be referred to in the plural for arguments made in the proof of claim.

with his claim for non-economic damages from GMACM for violation of RESPA.  Other

portions of the Claim are barred by res judicata.  The Court therefore **SUSTAINS IN PART**

**AND OVERRULES IN PART** the Objection to the Macks' proof of claim.

## I.   BACKGROUND

### A.   Procedural History

Pending before the Court is the *ResCap Borrower Claims Trust's Objection to Proof of*

*Claim No. 386 Filed by Barry and Cheryl Mack* (the "Objection," ECF Doc. # 6763).  The

Objection is supported by the Declaration of Lauren Graham Delehey (the "Delehey Decl.," ECF

Doc. # 6763-3).  Claimant Barry Mack filed an opposition to the Objection (the "Opposition,"

ECF Doc. # 6834), and the ResCap Borrower Claims Trust (the "Trust") filed a Reply (the

"Reply," ECF Doc. # 6893).  The Trust seeks to expunge the $32,850,000 unsecured Claim filed

against GMACM.

The Court heard argument of the Objection on May 15, 2014 (the "Hearing").  The

parties disagreed whether a claim against GMACM for failure to respond to a QWR (1) had been

properly raised in the Macks' Claim, (2) was barred by res judicata, and (3) could support

damages for emotional distress or pain and suffering.  The Court directed the parties to brief

these issues further, and the parties submitted simultaneous briefs on June 16, 2014 (ECF Doc.

## 7112, 7118), along with simultaneous replies on June 30, 2014 (ECF Doc. ## 7203, 7205).

### B.   The Macks' Loan

In 2006, the Macks borrowed $990,000 (the "Loan") secured by a mortgage on their

home in Florida.  (Obj. ¶ 15; Delehey Decl. Ex. C at 7.)  That Loan was securitized in a RALI

Trust, with Deutsche Bank as Trustee.  Residential Funding Company ("RFC") was the master

servicer, and GMACM was the subservicer.  (Obj. ¶ 15.)

The Claim asserts that the Macks were struggling to make Loan payments. (Delehey Decl. Ex. A, (the "Proof of Claim").) The Macks only earned $5,800 per month in combined income, but by 2007, they were paying $5,100 per month on their subprime Loan. (*Id.*) They had to draw down on their retirement savings to make the Loan payments. On March 26, 2008, the Macks listed their home for sale for $1,969,000, but were unable to find a buyer. (*See id.* Ex. D ¶ 6.) They applied to GMACM for a Home Affordable Modification Program ("HAMP") loan modification (*id.*), but were never approved. Instead, GMACM hired an attorney to file a foreclosure action, despite the fact that the Macks had never missed a Loan payment.

### C.    Foreclosure Initiation, Communications with GMACM, Property Sale, and Emotional Distress

In August 2009, GMACM hired attorney David J. Stern to start foreclosure proceedings against the Macks. (Obj. ¶ 17.) The case (the "Foreclosure Action") named Deutsche Bank as the plaintiff; GMACM was not a party to the action. (*Id.*) The Trust asserts that thirteen days after Stern filed the case, GMACM realized its error in commencing the Action and instructed Stern to dismiss the complaint. (*Id.*) But Stern inexplicably did not immediately dismiss the action; instead, he left it open until he attempted to close the case in December 2009. (*See* Opp. at 6.) In the meantime, the Macks had answered the complaint and filed counterclaims. (Obj.¶ 18.) When Stern finally dismissed the foreclosure claim on December 9, 2009, the Macks' counterclaims remained. (Opp. at 6.)

While the Foreclosure Action was pending, the Macks contacted GMACM several times by phone and at least once by letter to understand what was happening. Deutsche Bank had been a stranger to the Macks before the Foreclosure Action, so they wanted to know whether GMACM had transferred their Loan to Deutsche Bank. (*See* Opp. at 5.) They certainly wanted to know why the action continued despite their timely Loan payments. (*See* Opp. Ex. C.) The

5

Proof of Claim asserts that when the Macks reached GMACM by telephone, GMACM told them that "there was no foreclosure and Deutsche Bank ha[s] no interest in the [L]oan." (Proof of Claim at 1.)  GMACM also allegedly "exerted pressure on the Macks to sell the property" and "pay off the [L]oan."  (*Id.*)  After these conversations, though, GMACM failed to ensure that the Foreclosure Action was dismissed.  So on October 26, 2009, the Macks sent a Qualified Written Request (a "QWR") to GMACM asking why the foreclosure was proceeding and stating that "[y]our company has reassured us that our mortgage is current and that we were not in any arrears with GMAC."  (*Id.*)  GMACM did *not* send a written response to the QWR.  (*See* Opp. at 6.)

The Macks continued to try to sell their home.  After the Foreclosure Action was filed, the Macks reduced the asking price to $1,499,000 (from $1,969,000) on August 30, 2009.  (Obj. Ex. D ¶ 7.)  The property was sold in January 2010 for $1,156,500.  (*Id.* ¶ 8.)  The Macks had the property appraised at $1,275,000 on the day after selling their home.  (*Id.* ¶ 9.)

Although the precise date is unclear, sometime in October 2009, Cheryl Mack took an overdose of sleeping pills.  (*See* Proof of Claim at 2.)  The Claim alleges that Cheryl Mack was driven to the suicide attempt "[d]ue to the prospect of losing [her] home through the pending foreclosure."  (*Id.*; *see also* Opp. Ex. E (letter from Cheryl Mack's doctor stating that as of December 1, 2009, Cheryl Mack's "depression and drinking exacerbated secondary to facing potential foreclosure to the point of the patient becoming a danger to self and requiring hospitalization").)  She survived the attempt, but was hospitalized and suffered permanent kidney damage.  (*See id.*)  Cheryl Mack died on October 25, 2013; renal failure was listed on her death certificate as a contributing cause of death.  (*See* Obj. Ex. F.)

### D.    The Counterclaims

The Macks' counterclaims against Deutsche Bank alleged violations of RESPA and slander of title.  (Delehey Decl. Ex. C.)  They claimed damages for economic losses due to the decline in value of their home—evidenced by the reductions in the sale price—as well as emotional distress and pain and suffering damages relating to Mrs. Mack's overdose.  (*See* Delehey Decl. Ex. D.)  Deutsche Bank's lawyer failed to respond to the counterclaims, and GMACM, which remained the loan servicer and hired the lawyer, failed to do anything either. The Trust blames this on Stern, claiming that he received the counterclaims but never forwarded them to Deutsche Bank or GMACM.  (*See* Delehey Decl. ¶ 9.)  The Florida court entered a default on the counterclaims on October 21, 2009.  (*Id.* ¶ 10; *id.* Ex. D ¶ 2.)  The Trust asserts that Stern never notified Deutsche Bank or GMACM of the default either.  (Delehey Decl. ¶ 11.) From November 2009 until February 2011, the Macks repeatedly attempted to obtain discovery from Deutsche Bank by serving discovery requests and a motion to compel on David Stern.  (*See* Opp. Ex. G ¶ 13.)  These requests went unanswered.

Finally, on May 5, 2011, the Florida court conducted a hearing regarding the counterclaims, admitting documentary evidence from the Macks and hearing Mrs. Mack's testimony.  (*See* Opp. at 6.)  Later that day, the court issued a Final Judgment on the counterclaims, awarding the Macks (1) $296,920.05 for damages due to the loss in value of their property, and (2) $150,000 for Mrs. Mack's emotional anguish and pain and suffering.  (*See* Obj. Ex. D.)  After calculating prejudgment interest, the award totaled $469,470.27 plus attorneys' fees.  (*See id.*)   The court awarded the emotional distress damages as part of the RESPA claim, not the slander of title claim.  (*See id.*)

According to the Trust, Deutsche Bank and GMACM only learned of the counterclaims after the final judgment was entered.  (*See* Delehey Decl. ¶ 12.)  GMACM filed a notice of appearance on June 29, 2011.  (*See* Obj. Ex. E at 1.)  On July 13, 2011, Deutsche Bank moved to set aside the final judgment and vacate the judgment on the RESPA claim on the merits.  (*See id.*)  Deutsche Bank argued that it could establish excusable neglect based on the "gross misconduct of its prior counsel."  (Opp. Ex. G at 7.)  It also argued that it had meritorious defenses because (1) the Macks could not satisfy the requirements to show slander of title, and (2) Deutsche Bank never violated RESPA because RESPA only required notice to the Macks of a change in the servicer, and there was no change of servicer for the Macks' loan.  (*See id.* at 9–12.)

The Florida court conducted several hearings regarding Deutsche Bank's motion, admitting additional evidence and witness testimony.  (*See* Opp. at 8.)  The Florida court heard evidence that Deutsche Bank first received notice of the final judgment on the counterclaims on May 11, 2011, and GMACM "as agent for [Deutsche Bank] had the responsibility to investigate the [f]inal [j]udgment and appropriately respond."  (*See* Obj. Ex. E at 1.)

On February 26, 2013, the Florida court issued a final order on Deutsche Bank's motion.  (*See id.*)  The court found that the Macks could not maintain a RESPA claim against Deutsche Bank, so the court vacated the RESPA damages, including the $150,000 in damages for Mrs. Mack's pain and suffering.  (*Id.* at 2–3.)  But the court confirmed the judgment as to the loss in value of the Macks' home resulting from slander of title.  (*Id.* at 3.)  The court reduced the Macks' damages award to $321,970.77 plus attorneys' fees.  (*Id.*)  At several points in its final order, the court referred to GMACM as Deutsche Bank's agent.  (*See id.* at 1–2.)

After both parties appealed, the Florida state appellate court affirmed the reduced

judgment.  (Obj. Ex. F.)  Deutsche Bank moved for a rehearing, but that request was denied.  (*Id.*

Ex. G.)  On March 20, 2013, the Macks acknowledged receipt of $321,970.77 in satisfaction of

the judgment.  (*Id.* Ex. H.)

### E.    The Objection

#### 1.    Res judicata

In their Proof of Claim, the Macks identify the basis of their Claim as "Personal Injury;

Wrongful Death; Violation of RESPA; Malicious Prosecution." (*See* Delehey Decl. Ex. A.)  The

Trust argues that recovery on these grounds is barred by res judicata.  (*See* Obj. ¶¶ 32–39.)

According to the Trust, the Claim arises out of the same nucleus of operative facts as the Florida

proceeding (i.e., the alleged wrongful foreclosure and resulting damages).  (*Id.* ¶ 36.)  Even

though GMACM was not a party to the Foreclosure Action, the Trust argues that GMACM was

a privy of Deutsche Bank and would have faced the same potential liability as Deutsche Bank.

(*Id.* ¶ 37.)  The Trust asserts that GMACM's interests were identical to Deutsche Bank's, which

is sufficient to satisfy res judicata standards.  (*Id.* ¶ 38.)  Even though the Macks may allege

certain theories here that they did not or could not assert in the Foreclosure Action, the Trust

argues, res judicata prevents the Macks from litigating issues that could have been decided in the

Foreclosure Action.  (*Id.* ¶ 39.)

#### 2.    *Election of Remedies*

The Trust also argues that the Macks are estopped by election of remedies.  (*Id.* ¶¶ 40–

43.)  According to the Trust, Deutsche Bank's liability was based solely on GMACM's conduct

in initiating the foreclosure.  (*Id.* ¶ 42.)  The Trust argues that Florida law prevents the Macks

from obtaining a judgment against Deutsche Bank based on GMACM's conduct and then

9

initiating a later action against GMACM for the same conduct.  (*Id.*)  The Trust asserts that

allowing the Claim would grant the Macks a double recovery.  (*Id.*)

### 3.    RESPA Claim

The Trust argues that the Claim does not allege plausible liability arising from a RESPA

violation.  RESPA provides limited private rights of action, and some are irrelevant here.  (*See*

*id.* ¶ 46.)  A borrower does have a cause of action under RESPA where a servicer fails to

(1) notify the borrower of an assignment of servicing rights, or (2) respond to the borrower's

QWR.[2]  *See* 12 U.S.C. § 2605.  The servicing rights to the Mack's Loan were never assigned,

and the Proof of Claim does not identify any QWRs.  (*See* Obj. ¶ 46.)

### F.    The Opposition

### 1.    Res judicata

Mack's Opposition argues that res judicata does not bar the Claim because the Macks

only received an award of economic damages for slander of title in the Foreclosure Action, and

here, Mack is seeking non-economic damages for personal injury and punitive damages.  (*See*

Opp. at 11–13.)  Additionally, Mack argues the Claim here is based on theories of law that were

not before the Florida court in the Foreclosure Action, including:  (1) malicious prosecution,

---

[2]        A Qualified Written Request is a "written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer that—

      (i)       Includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

      (ii)      Includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."

12 U.S.C. § 2605(e)(1)(B).  After receiving a Qualified Written Request, a servicer has thirty days to correct any errors identified by the borrower or provide the borrower with a written response including the reasons why the servicer believes that its determination regarding the borrower's account is correct, and the name and telephone number of any employee of the servicer who can assist the borrower.  *Id.* § 2605(e)(2)(A)–(B).  The servicer may extend this thirty-day period for an additional fifteen days if the servicer notifies the borrower and provides reasons for the delay.  *Id.* § 2605(e)(4).

      Failing to respond to a Qualified Written Request subjects a servicer to "actual damages to the borrower as a result of the failure" and "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000."  *Id.* § 2605(f)(1).

(2) intentional infliction of emotional distress, (3) failure to respond to a QWR in violation of

RESPA,[3] and (4) wrongful death.  (*See id.* at 12–13.)  But the Proof of Claim did not identify

intentional infliction of emotional distress or failure to respond to a QWR as grounds for

recovery.

Mack also argues that GMACM is not a privy of Deutsche Bank because GMACM was

an independent contractor, not an agent.  (*See id.* at 14.)  Mack describes GMACM and Deutsche

Bank as joint tortfeasors, rather than master/servant.  (*See id.* at 15.)  According to Mack, Florida

law permits Mack to bring causes of action against joint tortfeasors separately.  (*See id.* at 15–

16.)  Mack asserts that a judgment against one joint tortfeasor does not bar a plaintiff from

relitigating all issues in a later suit against the other tortfeasor.  (*Id.*)

### 2. *The QWR Claim*

Next, Mack argues that the alleged RESPA liability here is based on GMACM's failure

to respond to Mrs. Mack's October 26, 2009 letter (the "QWR Claim").  (*Id.* at 16–17.)  The

Trust agrees that the letter qualified as a QWR.  (May 15, 2014 Tr. at 59:10-14 (ECF Doc.

# 6998).)  GMACM's failure to respond to the letter would be a violation of RESPA.  (*See* Opp.

at 17.)  Although the Macks alleged a RESPA violation in the Foreclosure Action, that allegation

did not involve a purported failure to respond to a QWR and instead centered on a different

RESPA provision.

### G.    The Reply

The Trust responds by arguing that even though Mack now articulates various theories of

liability that were not raised in the Foreclosure Action, res judicata precludes all claims arising

from the same nucleus of underlying facts, regardless whether specific causes of action were

---

[3]    The Macks alleged RESPA violations in the Foreclosure Action, but not this particular theory of liability.
In addition, the state trial court vacated the RESPA judgment against Deutsche Bank, concluding that no RESPA
claim could be asserted against Deutsche Bank.

already alleged.  This rule prevents a party from pursuing multiple lawsuits on the same facts when one suit could have resolved all disputes.

And even though GMACM was not technically a party to the Foreclosure Action, the Trust asserts that GMACM and Deutsche Bank shared an identity of interests.  (*Id.* ¶ 13.)  Where two parties' interests are closely aligned, a judgment against one may extend to the other.  (*See id.*)  Contrary to Mack's argument, GMACM was indeed acting as Deutsche Bank's agent—a fact confirmed by the Florida court in its order modifying the judgment against Deutsche Bank.  (*See id.* ¶ 14.)  But even if GMACM and Deutsche Bank were joint tortfeasors, Florida law still precludes a plaintiff from suing one joint tortfeasor where the plaintiff has already obtained and satisfied a judgment against the other joint tortfeasor.  (*See id.* ¶ 15.)

Next, the Trust opposes Mack's assertion of liability due to GMACM's purported failure to respond to the October 2009 QWR.  First, the Macks did not allege the QWR Claim in their Proof of Claim, and according to the Trust, the QWR Claim directly contradicts the Proof of Claim's assertions that GMACM responded to the Macks' inquiries.  (*See id.* ¶¶ 19–21.)  According to the Trust, the QWR Claim attempts to amend the Proof of Claim, but it does not arise from the same facts alleged in the Proof of Claim.  Instead, the QWR Claim is premised on a new alleged fact that GMACM failed to respond to the Macks' inquiries.  (*Id.* ¶¶ 21–22.)  The Trust also argues that even though the QWR Claim can only be stated against a servicer, the Macks could have lodged the claim in the Foreclosure Action because they were already suing Deutsche Bank exclusively for GMACM's conduct.  (*See id.* ¶ 20.)

## H.    The Hearing

At the Hearing, the Trust attacked Mack's reliance on the QWR Claim, arguing that (1) even though he did not plead the claim in the Foreclosure Action, he could have, so it is

12

barred by res judicata; and (2) Mack did not identify the QWR Claim in the Proof of Claim, and

instead alleged that GMACM was responding to the Macks' inquiries. (*See* May 15, 2014 Tr. at

27:5–24; 56:10–17.) Mack's counsel responded that Florida courts do not treat res judicata

uniformly, and some Florida courts may actually permit a plaintiff who has recovered a

judgment against one joint tortfeasor to pursue a new action on the same facts against the other

tortfeasor. (*See id.* at 44:16–49:1.) Mack's counsel also argued that the Macks had no reason to

believe that Deutsche Bank should be held responsible for GMACM's failure to respond to a

QWR, so the Macks did not lodge the QWR Claim against Deutsche Bank. (*See id.* at 54:3–15.)

Additionally, Mack's counsel asserted that though the Proof of Claim does not mention a QWR

Claim, "the proof of claim is just a brief itemization; it was not the details that we have of

everything required to prove a case." (*Id.* at 61:12–15.) Mack's counsel also discussed a Circuit

split regarding whether a plaintiff can recover personal injury damages as part of a RESPA

claim. (*See id.* at 34:4–10.)

At the conclusion of the argument, the Court directed counsel to submit supplemental

briefs addressing whether the Macks' Proof of Claim properly identifies the QWR Claim, and if

not, whether the Court should permit Mack to amend the Claim now. (*See id.* at 68:3–12.) The

Court also directed counsel to brief the Circuit split regarding recovery of non-economic

damages on RESPA claims. (*See id.* at 68:13–17.)

## I.    The Supplemental Briefs

The Trust argues in its supplemental brief that the Proof of Claim did not raise the QWR

Claim. (*See* ECF Doc. # 7118 ¶¶ 3–4.) The Trust also argues that the Court should not permit

amendment now because the QWR Claim does not relate back to the facts alleged in the Proof of

Claim, and instead conflicts with the Proof of Claim. (*See id*. ¶ 9.) Additionally, the Trust

argues, allowing a claim amendment could diminish recoveries to other creditors, and the Macks

had no reasonable excuse for failing to allege the QWR Claim in the Proof of Claim.  (*See id.*

¶ 11.)

The Trust also argues that even though some Circuits allow non-economic damages for

RESPA claims, the better rule is to preclude those damages because even though RESPA is

remedial, the Act is intended to serve both consumer and industry purposes, as opposed to

statutes with the sole purpose of protecting consumers.  (*See id.* ¶¶ 17–19.)  Moreover, other

statutes that allow for personal injury damages protect vital interests like privacy and civil rights.

(*See id.* ¶ 20.)  Here, though, the Trust argues, the statute is protecting a borrower's interest in

receiving a response to a letter, and the failure to respond to the letter would not ordinarily be

expected to trigger the type of emotional harm that would be implicated by a violation of privacy

or civil rights.  (*See id.*)  Finally, the Trust argues that the alleged damages relating to the QWR

Claim are simply implausible because Mrs. Mack overdosed in October 2009, but RESPA, as

enacted at the time, only required GMACM to acknowledge receipt of the QWR by November

16, 2009, and GMACM did not actually need to respond to the QWR until December 28, 2009.

(*See* ECF Doc. # 7205 at 8–9 n.7 (citing 12 USC §§ 2605(e)(1)(A), (e)(2) (2009) (amended in

2010 to reduce deadlines from 20 days to 5 days in (e)(1)(A) and from 60 days to 30 days in

(e)(2))).)

Mack responds that the Proof of Claim fairly put the Debtors on notice that the Macks

were claiming injury due in part to a RESPA violation.  (*See* ECF Doc. # 7112 at 7.)  Even

though the Proof of Claim did not identify the precise QWR as issue, the Proof of Claim alleged

a pattern of misleading, possibly deceptive, communications from GMACM regarding the

Foreclosure Action.  (*See id.* at 7–8.)  Failure to respond to a QWR about the Foreclosure Action,

Mack argues, falls within that pattern of conduct.  (*See id.* at 7.)  Additionally, Mack argues that

GMACM had actual knowledge of the QWR Claim because in November 2011, the Macks'

attorney and Deutsche Bank's attorney asked Mrs. Mack about the QWR at a deposition in the

Foreclosure Action.  (*See id.* at 9 (citing ECF Doc. # 7112 Exhibit B (attaching excerpts from a

transcript of Mrs. Mack's deposition in the Foreclosure Action)).)

As for RESPA damages, Mack argues that the cases allowing emotional distress damages

have compared RESPA with the Fair Debt Collection Practices Act ("FDCPA").  (*See id.* at 6.)

Courts interpreting the FDCPA have allowed damages for emotional distress under 15 U.S.C.

§ 1692(k), which permits recovery of "actual damages."  (*See id.*)  That same term—"actual

damages"—is used in RESPA and, Mack argues, should be interpreted similarly for RESPA to

include emotional distress damages.  (*See id.*)  Mack also argues that GMACM itself has

conceded in other cases that RESPA allows an award of emotional distress damages.  (*See id.*

(citing *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 696 (7th Cir. 2011) ("GMAC Mortgage

concedes that emotional distress damages are available as actual damages under RESPA, at least

as a matter of law . . . .")).)

## II.    DISCUSSION

### A.    Claims Objections

Claims objections have a shifting burden of proof.  Correctly filed proofs of claim

"constitute prima facie evidence of the validity and amount of the claim . . . .  To overcome this

prima facie evidence, an objecting party must come forth with evidence which, if believed,

would refute at least one of the allegations essential to the claim."  *Sherman v. Novak (In re

Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000).  By producing "evidence equal in force to the

prima facie case," an objector can negate a claim's presumptive legal validity, thereby shifting

the burden back to the claimant to "prove by a preponderance of the evidence that under

applicable law the claim should be allowed."  *Creamer v. Motors Liquidation Co. GUC Trust (In*

*re Motors Liquidation Co.)*, No. 12 Civ. 6074 (RJS), 2013 U.S. Dist. LEXIS 143957, at *12–13

(S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted).  If the objector does not

"introduce[] evidence as to the invalidity of the claim or the excessiveness of its amount, the

claimant need offer no further proof of the merits of the claim."  4 COLLIER ON BANKRUPTCY

¶ 502.02 (16th rev. ed. 2013); *see also In re Residential Capital, LLC*, 507 B.R. 477, 490 (Bankr.

S.D.N.Y. 2014).

Bankruptcy Code section 502(b)(1) provides that claims may be disallowed if

"unenforceable against the debtor and property of the debtor, under any agreement or applicable

law."  To determine whether a claim is allowable by law, bankruptcy courts look to "applicable

nonbankruptcy law."  *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006).

### B.        Res Judicata Bars Most of Mack's Claims (But Not the QWR Claim)

Res judicata, or claim preclusion, provides that "a final judgment on the merits of an

action precludes the parties or their privies from relitigating issues that were or could have been

raised in that action."  *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994) (quoting *Allen v.*

*McCurry*, 449 U.S. 90, 94 (1980)).  "[T]he preclusive effect of a state court determination in a

subsequent federal action is determined by the rules of the state where the prior action

occurred . . . ."  *New York v. Sokol (In re Sokol)*, 113 F.3d 303, 306 (2d Cir. 1997) (citing 28

U.S.C. § 1738).  "In applying the doctrine of res judicata, [a court] must keep in mind that a state

court judgment has the same preclusive effect in federal court as the judgment would have had in

state court."  *Burka v. New York City Transit Auth.*, 32 F.3d 654, 657 (2d Cir. 1994) (citation

omitted).  *See also Residential Capital*, 507 B.R. at 491–92.

16

Florida courts apply res judicata to default judgments.  *See Wharton v. Shiver (In re Shiver)*, 396 B.R. 110, 123–24 (Bankr. S.D.N.Y. 2008); *Bay Fin. Sav. Bank, F.S.B. v. Hook*, 648 So. 2d 305, 307 (Fla. Dist. Ct. App. 1995); *see also Cabinet Craft, Inc. v. A.G. Spanos Enters., Inc.*, 348 So. 2d 920, 922 (Fla. Dist. Ct. App. 1977) ("[A] judgment entered upon default is just as conclusive as one which was hotly contested.").  Res judicata will extend to "matters raised in post judgment motions as well as to theories of recovery and defenses that could have been presented in the prior litigation."  *Bay Fin. Sav.*, 648 So. 2d at 307; *see also AGB Oil Co. v. Crystal Exploration and Prod. Co.*, 406 So. 2d 1165, 1167 (Fla. Dist. Ct. App. 1981) (adopting rule that "issues determined on a motion to set aside a default judgment or to vacate a final judgment are res judicata").

For res judicata to apply, a court must find "(1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties; and (4) identity of the quality or capacity of the persons for or against whom the claim is made."  *Holt v. Brown's Repair Serv., Inc.*, 780 So. 2d 180, 181–82 (Fla. Dist. Ct. App. 2001) (citation omitted).  The first prong is satisfied if both actions seek money damages.  *See AMEC Civil, LLC v. DOT*, 41 So. 3d 235, 242 (Fla. Dist. Ct. App. 2010) ("In both the initial action and the present case, the 'thing sued' for was money damages allegedly sustained by [the plaintiff] as a result of the defendant's] breach of the indivisible contract.").  Although Mack argues that the identity of the thing sued for is different here because he seeks general and personal injury damages, he provides no authority to indicate that this distinction is relevant.  Rather, the identity-of-the-thing-sued-for prong focuses on the difference between money damages and injunctive relief—not on difference between the *type* of monetary damages sought.  *See, e.g.*, *Holt*, 780 So. 2d at 182 (finding no identity in thing sued for where first action sought equitable remedy and second action sought money damages).

17

Moreover, as the Trust notes, the Macks actually did seek personal injury damages initially, and they were awarded those damages before the ruling was vacated in part. (*See* Delehey Decl. Ex. D at 2 ¶¶ 11, 13; 3 ¶ 1.)

To determine the identity of causes of action, courts "consider the relationship between the facts and issues asserted to constitute a single transaction." *DOT*, 41 So. 3d at 240; *see also Saadeh v. Stanton Rowing Found., Inc.*, 912 So. 2d 28, 31 (Fla. Dist. Ct. App. 2005) ("In determining whether identity of causes of action exists, the court must compare the facts and issues supporting the underlying transaction."). Put another way, identity of causes of action "means an identity of the facts essential to maintenance of the action." *M.C.G. v. Hillsborough Cnty. Sch. Bd.*, 927 So. 2d 224, 227 (Fla. Dist. Ct. App. 2006).

Even where the parties are not identical, a defendant in an action may be bound by an earlier judgment to which that defendant was not a party if the defendant participated in the earlier case or was virtually represented in the earlier action by the party of record. *See Linn-Well Dev. Corp. v. Preston & Farley, Inc.*, 710 So. 2d 578, 580 (1998) (explaining that strict identity of parties is not required, and a party may be bound by a prior judgment if that party participated in the earlier proceeding or was virtually represented in the proceeding); *see also Progressive Am. Ins. Co. v. McKinnie*, 513 So. 2d 748, 749 (Fla. Dist. Ct. App. 1987) (same). Virtual representation—where a non-party's interests are represented by a named party—may exist where a non-party has indemnification obligations that could make it vicariously liable for the named party's actions. *See Massey v.* David, 831 So. 2d 226, 233 (Fla. Dist. Ct. App. 2002) ("Virtual representation or privity may exist where a third party must indemnify and so is vicariously liable for the acts of the party to the lawsuit.") (citations omitted). Here, GMACM participated in the Foreclosure Action even though it was not technically a named party. It was

18

the inaction of the lawyer that GMACM hired and controlled that gave rise to the Macks' claims

against Deutsche Bank.  Not only did GMACM hire Stern to commence the suit, GMACM filed

a notice of appearance and submitted evidence at the hearing seeking to vacate the final

judgment in favor of the Macks.  (*See* Delehey Decl. Ex. E § 2(b) (noting that GMACM

presented evidence in support of Deutsche Bank's motion to vacate the judgment).)  The Florida

court explicitly stated that its ruling would impact GMACM.  (*Id.* ("Neither Plaintiff *nor GMAC*

is able to avoid the grossly negligent actions of [Stern].") (emphasis added).)  As subservicer of

the Macks' Loan, GMACM owed indemnification obligations to RFC, which was the master

servicer, and to Deutsche Bank.  (*See* Delehey Decl. Ex. B-1 § 12.05.)  The Court concludes that

the identity of the parties prong is satisfied here.

Mack argues that even where parties are in privity, if they are joint tortfeasors, res

judicata does not bar a suit against one tortfeasor after the other tortfeasor had already been sued.

Mack cites *Mitchell v. Edge*, 598 So. 2d 125, 127–28 (Fla. Dist. Ct. App. 1992), in support of his

contention.  In *Mitchell*, the plaintiff was not barred from pursuing an action against a joint

tortfeasor where the plaintiff had already obtained a judgment against the other joint tortfeasor.

The *Mitchell* court noted the Restatement (Second) of Judgments' comment that a claimant "has

a claim against each of [the joint tortfeasors, so] a judgment for or against one obligor does not

result in merger or bar the claim that the injured party may have against another obligor."  598

So. 2d at 128 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 49 cmt. a (1982)).  But *Mitchell*

does not apply here for two reasons:  (1) the *Mitchell* court explicitly noted that its holding was

influenced by the fact that the plaintiff's judgment against the first joint tortfeasor had never

been satisfied, *see* 598 So. 2d at 127, whereas here, the Macks' judgment against Deutsche Bank

was satisfied; and (2) the *Mitchell* court expressly stated that it was not deciding whether the

Restatement's rule that a judgment against one tortfeasor does not bar a claim against another tortfeasor "is now the 'weight of authority' and should cause us to recede from" earlier holdings. *Id.* at 128.

Earlier cases from the same appellate district as the *Mitchell* court applied res judicata to bar a suit against one joint tortfeasor where an earlier judgment against the other joint tortfeasor had already been satisfied. *See, e.g.*, *Roberts v. Rockwell Int'l Corp.*, 462 So. 2d 502, 505–06 (Fla. Dist. Ct. App. 1984) ("Satisfaction of a judgment against one of several persons jointly and severally liable discharges the liability of the others.") (internal quotations marks omitted). The rule pre-*Mitchell* was that satisfaction of a judgment against one tortfeasor barred a later suit against another tortfeasor; *Mitchell* explicitly stated that it was not overturning that standard.

The master/servant nature of GMACM's relationship with Deutsche Bank also weighs in favor of applying res judicata here. A judgment entered against a master also bars a plaintiff from bringing a new action on the same facts against the servant. *See Hinton v. Iowa Nat. Mut. Ins. Co.*, 317 So. 2d 832, 835–36 (Fla. Dist. Ct. App. 1975) ("[T]he weight of authority is on the side of barring a plaintiff from relitigating his claim against the servant when a judgment has been entered in a prior suit against the master involving the same issues."). The Court concludes that this prong for applying res judicata is also satisfied.

As for the last prong, the quality of the parties against whom the claims are made will be identical if the first party "had the incentive to adequately litigate the claims in the same character or capacity as would the parties to the [first action]." *Radle v. Allstate Ins. Co.*, 758 F. Supp. 1464, 1468 (M.D. Fla. 1991) (applying Florida law). Since Deutsche Bank's potential liability derived from GMACM's conduct, Deutsche Bank had as much incentive to litigate the claims as GMACM does now. That prong is satisfied as well.

Mack asserts various theories of liability springing from the initiation of the Foreclosure

Action, including (1) personal injury, (2) wrongful death, (3) malicious prosecution,

(4) intentional infliction of emotional distress, and (5) violation of RESPA for failure to notify

the Macks of a change of the servicer their Loan.  Each of these theories arises from the same

nucleus of operative facts that gave rise to the Macks' counterclaims against GMACM's privy—

Deutsche Bank—in the Foreclosure Action.

Even though Mrs. Mack had not yet died when the Macks pursued their counterclaims,

Mack's counsel concedes that where a party has taken a personal injury case to judgment, that

party's subsequent death from the personal injury does not give rise to a new cause of action.

(*See* May 15, 2014 Tr. at 41:12–42:19.)  Although the Macks did not allege a separate personal

injury cause of action in their counterclaims, (1) they could have; and (2) they presented

evidence about Mrs. Mack's personal injury in connection with their RESPA claim.  Mack's

personal injury and wrongful death claims here are barred by res judicata because the personal

injury claim could have been lodged during the Foreclosure Action, and the wrongful death

claim arises from the same nucleus of operative facts.  The malicious prosecution and intentional

infliction of emotional distress claims are similarly barred by res judicata; they undoubtedly

relate to the initiation of the Foreclosure Action, which was explicitly at issue in the Macks'

slander of title counterclaim.  Finally, any claim regarding a violation of RESPA for failure to

notify the Macks of a transfer of servicing of their Loan was explicitly litigated and rejected in

the Foreclosure Action, so that, too is barred by res judicata.

### C.    The RESPA Claim Based on the QWR Is Not Barred by Res Judicata

The RESPA claim based on the QWR stands differently from the claims discussed above,

however, and the Court concludes that res judicata does not apply to bar the QWR Claim.  That

claim does not arise from the same nucleus of operative facts as the Foreclosure Action. In the

Foreclosure Action, the Macks alleged damages for slander of title and for an alleged failure to

inform them that the owner or servicer of their Loan had changed—those claims arose from the

initiation of the Foreclosure Action, and from an alleged non-disclosure before the Foreclosure

Action was commenced. GMACM's failure to respond to the Macks' October 26, 2009 QWR

does not arise from the same facts. The Macks sent the QWR well after GMACM initiated the

Foreclosure Action with Deutsche Bank as the named plaintiff. The essential facts for the QWR

Claim (a valid request was sent and GMACM failed to respond) are not the same as those

essential to the Macks' counterclaims in the Foreclosure Action, so there is no identity of the

causes of action. *See Cole v. First Dev. Corp. of Am.*, 339 So. 2d 1130, 1131 (Fla. Dist. Ct. App.

1976) ("Identity of the causes of action is established where the facts which are required to

maintain both actions are identical.").

The Court is unpersuaded by the Trust's argument that the Macks could have alleged the

QWR Claim in the Foreclosure Action, and are therefore barred from asserting it here. Deutsche

Bank would not have been a proper subject of the QWR Claim because it was not the loan

servicer. *See McCarley v. KPMG Int'l*, 293 Fed. App'x 719, 722 (11th Cir. 2008) (upholding

summary judgment for defendant on RESPA claims because defendant was not a loan servicer);

*Pasillas v. Deutsche Bank Nat'l Trust Co.*, No. 5:12-CV-04123-LHK, 2014 WL 1006300, *5

(N.D. Cal. Mar. 12, 2014) ("[T]o state a claim based on a failure to respond to a QWR, Plaintiffs

must also allege that each defendant against whom the claim is brought was a loan servicer.")

(citation omitted); *Gibson v. Mortg. Elec. Registration Sys., Inc.*, No. 11-2173-STA, 2011 WL

3608538, *5 (W.D. Tenn. Aug. 16, 2011) (holding that only servicers have a duty to respond to a

QWR, so non-servicer defendants were not liable under RESPA). The Trust offers no authority

22

for its position that the Macks can be bound by failing to assert the cause of action against the improper party or that they had to name GMACM as a defendant in the same case. Because there is no identity between the causes of action that were actually asserted in the counterclaims and the QWR Claim, and because the Macks could not have properly alleged a QWR Claim against non-servicer Deutsche Bank, the QWR Claim is not barred by res judicata.

### D.    Mack's QWR Claim is Not Barred By the Election of Remedies

The Trust argues that the Macks' Claims are also barred from recovery by the election of remedies. Election of remedies is a doctrine of estoppel that "prevent[s] double recoveries for a single wrong." *Ehrman v. Mann*, 979 So. 2d 1011, 1012 (Fla. Dist. Ct. App. 2008). The "doctrine applies only where the remedies in question are coexistent and inconsistent." *Id.* The Trust initially raised the election of remedies argument based on the allegations in the Macks' Proof of Claim. The Trust did not argue that the election of remedies barred the QWR Claim because Mack had not yet raised that claim. To be sure, if the Trust had advanced the argument in relation to the QWR Claim, the argument would have failed because a finding in Mack's favor on the QWR Claim would not be inconsistent with any holding from the Foreclosure Action.

In *Ehrman*, the court gave an example of the inconsistency required to invoke the election of remedies. The *Ehrman* court cited a case where a plaintiff sued two different parties regarding the ownership of a yacht. *See id.* at 1013 (citing *Barbe v. Villeneuve*, 505 So. 2d 1331 (Fla. Dist. Ct. App. 2000)). After obtaining a judgment from one party to secure title, the plaintiff could not then try to obtain the title from another party since that issue had already been settled. *Id.* Here, the Florida court never determined that GMACM actually responded to the QWR. Nor did the Florida court issue any kind of award that would be inconsistent with an

23

award granted here for the QWR Claim.  Thus, the election of remedies does not bar Mack's

QWR Claim.

### E.      The Proof of Claim is Deemed Amended to Include the QWR Claim

The Macks did not describe a QWR Claim in their Proof of Claim.  Even so, the Court

will deem the Proof of Claim amended to assert the claim now.  Federal Rule of Bankruptcy

Procedure 3003(c)(3) directs bankruptcy courts "to establish a bar date beyond which proofs of

claim are disallowed in a chapter 11 case."  *In re Enron Creditors Recovery Corp.*, 370 B.R. 90,

94 (Bankr. S.D.N.Y. 2007).  The bar date "is critically important to the administration of a

successful chapter 11 case for it is intended to be a mechanism providing the debtor and its

creditors with finality."  *Id.* (internal quotations omitted).  Where the bar date has passed and a

creditor seeks to file an amended proof of claim, "the decision to allow the amendment of the

claim is committed to the discretion of the bankruptcy judge."  *In re Asia Global Crossing, Ltd.*,

324 B.R. 503, 507 (Bankr. S.D.N.Y. 2005) (internal citations omitted).

In the Second Circuit, amendment to a claim is

> freely allowed where the purpose is to cure a defect in the claim as originally
> filed, to describe the claim with greater particularity, or to plead a new theory of
> recovery on the facts set forth in the original claim.  However, the court must
> subject post bar date amendments to careful scrutiny to assure that there was no
> attempt to file a new claim under the guise of amendment.

*Integrated Res., Inc. v. Ameritrust Co., N.A. (In re Integrated Res., Inc.)*, 157 B.R. 66, 70

(S.D.N.Y. 1993) (citations omitted).

Courts apply a two-step inquiry when considering whether to allow post bar date

amendments to proofs of claim.  *See Midland Cogeneration Venture Ltd. P'ship v. Enron Corp.*

*(In re Enron Corp.)*, 419 F.3d 115, 133 (2d Cir. 2005); *In re Barquet Grp. Inc.*, 477 B.R. 454,

464 (Bankr. S.D.N.Y. 2012), *aff'd*, 477 B.R. 454 (S.D.N.Y. 2012).  First, the court must

24

determine "whether there was a timely assertion of a similar claim or demand evidencing an intention to hold the estate liable." *Enron*, 419 F.3d at 133 (quotation omitted). A claim satisfies this first prong if it: "1) corrects a defect of form in the original claim; 2) describes the original claim with greater particularity; or 3) pleads a new theory of recovery on the facts set forth in the original claim." *Id.* (quoting *In re McLean Indus., Inc.*, 121 B.R. 704, 708 (Bankr. S.D.N.Y. 1990)). In other words, the amendment must relate back to the original proof of claim.

If this "relation back" inquiry is satisfied, courts then examine whether it would be equitable to allow the amendment. *Id.*; *Integrated Res.*, 157 B.R. at 70. Courts consider the following five equitable factors in determining whether to allow an amendment:

> (1) undue prejudice to opposing party; (2) bad faith or dilatory behavior on the part of the claimant; (3) whether other creditors would receive a windfall were the amendment not allowed; (4) whether other claimants might be harmed or prejudiced; and (5) the justification for the inability to file the amended claim at the time the original claim was filed.

*Integrated Res.*, 157 B.R. at 70 (citation omitted); *Enron*, 419 F.3d at 133. "The critical consideration is whether the opposing party will be unduly prejudiced by the amendment." *Integrated Res.*, 157 B.R. at 70 (citation omitted).

The Trust argues that the QWR Claim does not relate back to the Proof of Claim because the Proof of Claim only alleged actual communications between the Macks and GMACM, not GMACM's failure to respond to the Macks. But the Proof of Claim alleges liability based on a RESPA violation and on GMACM's deceptive communications with the Macks. (*See* Delehey Decl. Ex. A.) Failing to respond to a QWR falls sufficiently within the same category of conduct to relate back to the Proof of Claim. The QWR Claim supplements the Macks' description of GMACM's conduct in communicating (or failing to communicate) with the Macks.

The Court also finds that it is equitable to allow Mack to assert the QWR Claim. GMACM's RESPA violation for failure to respond the QWR is not disputed. The difficult issues here are whether Mack can recover non-economic damages for a RESPA violation, and if the law permits such recovery, whether Mack can sufficiently establish causation and damages. The Court does not underestimate the difficulty of those issues. While the Proof of Claim takes an expansive view of what Mack believes he should be entitled to recover, the actual scope of the RESPA claim based on the QWR is fairly narrow. The Court does not underestimate the consequences that the Macks suffered as a result of GMACM's failure to prevent the wrongful foreclosure from proceeding in the manner it did. But the only QWR—and, therefore, the only basis for the RESPA claim—was sent by the Macks to GMACM on October 26, 2009; GMACM did not respond. As previously stated, GMACM had until November 16, 2009 to acknowledge receipt of the QWR, and until December 28, 2009 to respond to the request. Mrs. Mack's overdose occurred on in October 2009, before the acknowledgement of receipt or the response to the QWR was required. In light of the timing, it is hard to see what damages Mack can recover relating to the consequences of the overdose, assuming that non-economic damages are recoverable. Still, the Court does not believe it can resolve the issue of causation and damages as a matter of law at this stage of the case.[4]

### F.    Mack May Pursue Emotional Distress Damages in the QWR Claim

The QWR Claim arises under 12 U.S.C. §2605(e). Damages for a violation of that provision are defined in section 2605(f) to include "any actual damages to the borrower as a result of the failure" to reply to a QWR. 12 U.S.C. § 2605(f)(1)(A). The statute does not define "actual damages"—some courts have interpreted it to allow for emotional distress damages,

---

[4]    Mack concedes that he is unlikely to receive the punitive damages if he can only proceed with the QWR Claim, and the punitive damages comprise the vast majority of Mack's Claim amount. (*See* ECF Doc. # 7203.)

while others have only allowed for recovery of economic losses. *Compare Ploog v. Homeside Lending, Inc.*, 209 F. Supp. 2d 863, 869–70 (N.D. Ill. 2002) ("RESPA's actual damages provision includes recovery for emotional distress."), *with In re Tomasevic*, 273 B.R. 682, 687 (Bankr. M.D. Fla. 2002) ("Actual damages [in RESPA] are limited to economic pecuniary injury.").

The courts that allow for recovery of emotional distress damages note that RESPA has remedial purposes. *See, e.g.*, *Rawlings v. Dovenmuehle Mortg. Inc.*, 64 F. Supp. 2d 1156, 1165 (M.D. Ala. 1999) ("The court finds that . . . Congress intended RESPA to be a remedial consumer-protection statute."). The Trust concedes this point, but argues that this does not end the inquiry. (*See* ECF Doc. # 7118 ¶ 16 n.7, ¶ 17.) According to the Trust, the Court must examine the entire context of the statute to determine whether RESPA allows for emotional distress damages. (*See id.* ¶ 17.) For example, in *F.A.A. v. Cooper*, 132 S. Ct. 1441 (2012), the Supreme Court held that emotional distress damages were not available to a plaintiff who sued under the Right to Privacy Act of 1974, a remedial act allowing recovery for "actual damages." Mack points out that the plaintiff in *Cooper* sued the federal government, so the Supreme Court's narrow interpretation of "actual damages" was guided by a strict interpretation in favor of the sovereign in cases involving sovereign immunity. (*See* ECF Doc. # 7203 at 4–5.) Still, the point according to the Trust is that a statute's designation as "remedial" does not automatically resolve the question of emotional distress damages.

Additionally, the Trust contrasts the interests at stake in RESPA with those in statutes allowing for emotional distress damages as "actual damages." (*See* ECF Doc. # 7118 ¶ 20.) For example, the Fair Housing Amendments Act protects individuals from housing discrimination and allows for emotional distress damages as "actual damages." *See United States v. Balistrieri*,

981 F. 2d 916, 931 (7th Cir. 1992). Plaintiffs claiming civil rights violations under 42 U.S.C.

§ 1983 may also recover for emotional distress. *See Biggs v. Village of Dupo*, 892 F.2d 1298,

1304 (7th Cir. 1990). Plaintiffs who have suffered housing discrimination or civil rights

violations, the Trust argues, are likely to suffer psychological harm. Although it is possible that

a borrower may experience psychological frustration or distress due to a servicer's failure to

respond to a QWR, the Trust argues, distress is less likely and should not be compensable under

RESPA. (*See* ECF Doc. # 7118 at ¶ 20.)

The Court agrees with the Trust that the analysis does not end with the designation of

RESPA as a remedial statute. But the Court also agrees with other courts that have allowed

recovery of emotional distress damages in RESPA cases. First, although there are several district

court opinions discussing RESPA and emotional distress damages, few circuit courts have

addressed the issue. Of the circuits that have addressed the issue, two have indicated that

emotional distress damages should be allowed, while no circuit appears to have ruled that

emotional damages are *not* allowed. *See Houston v. U.S. Bank Home Mortg. Wisconsin*

*Servicing*, 505 Fed. App'x 543, 548, 548 n.6 (6th Cir. 2012) (remanding case for further fact

finding about alleged emotional damages arising from servicer's failure to respond to QWR and

holding that "[w]e find nothing in the text of § 2605(f), or in RESPA more broadly, to preclude

'actual damages' from including emotional damages, provided that they are adequately proven");

*Catalan*, 629 F.3d at 696 (acknowledging that GMACM conceded that RESPA allowed for

recovery of emotional distress damages). Additionally, the Eleventh Circuit explained that a

plaintiff alleging a RESPA violation "arguably may recover for non-pecuniary damages, such as

emotional distress and pain and suffering . . . ." *McLean v. GMAC Mortg. Corp.*, 398 Fed.

App'x 467, 471 (11th Cir. 2010) (rejecting emotional distress damages in RESPA claim because plaintiffs failed to adequately demonstrate causation).

Second, looking beyond the mere designation of RESPA as remedial, the Court still concludes that the consumers' interests at stake in RESPA warrant a consumer-oriented interpretation of "actual damages" to allow for emotional distress damages in appropriate cases. The statute requires servicers to provide a substantive response to borrowers who believe that their accounts are in error.  12 U.S.C. § 2605 (B)(ii).  This information is not trivial—an error on a borrower's account can have significant consequences to a borrower, leading to improper charges, misapplied payments, or even wrongful foreclosure.  The Court can imagine few things more important to borrowers than keeping their homes.  Thus, interpreting "actual damages" in favor of consumers seems appropriate.

This case demonstrates exactly why responses to QWRs can be crucial.  If GMACM had responded to the QWR, it could have saved all of the parties much grief.  The Trust asserts that GMACM instructed its lawyer to dismiss the Foreclosure Action shortly after initiating the case in August 2009.  GMACM should have been alarmed to learn from the QWR, sent in October 2009, that the Foreclosure Action was still continuing.  If it had complied with its statutory duty, GMACM would have investigated and responded no later than December 28, 2009.  Since GMACM had already allegedly acknowledged by telephone with Mrs. Mack that the Foreclosure Action was filed by mistake and should have be dismissed, there were no difficult or complex issues, or lender policies that could have made an appropriate response difficult or time-consuming to determine.  GMACM has admitted that the Macks were not in default.  What else did GMACM need to know to stop the chain of events that it set in motion?  GMACM could and should have promptly investigated further, and perhaps most importantly, fired Stern, the lawyer

GMACM had hired and who failed to carry out GMACM's directive to dismiss the foreclosure action. Instead, GMACM, by its inaction, allowed the case to linger.

None of this is to say that Mack has an easy road ahead of him. He faces an uphill battle in demonstrating causation and damages—he must separate the emotional distress resulting from the failure to respond to the QWR from the emotional distress due to the Foreclosure Action. But the events here demonstrate why a borrower should be entitled to recover emotional distress damages under RESPA. Faced with a maddening and admittedly unwarranted foreclosure, the Macks got nothing but silence or misinformation from GMACM.

### III.    CONCLUSION

Mack may not assert against GMACM any damages relating to the commencement of the Foreclosure Action or the decline in value of the Macks' property for which the Macks have already been compensated by Deutsche Bank. Those claims are barred by res judicata. So, too, are claims that the Macks could have raised in their counterclaims. The Court sustains the Objection to the portions of the Claim arising from the initiation of the Foreclosure Action, including allegations of (1) personal injury, (2) wrongful death, (3) malicious prosecution, (4) intentional infliction of emotional distress, and (5) failure under RESPA to notify the Macks of a transfer of servicing of their Loan. But Mack has alleged a plausible RESPA claim for GMACM's failure to respond to the October 2009 QWR. The Court will deem the Proof of Claim amended to include the QWR Claim, and the Objection to that part of the Claim is overruled. To receive any damages for the QWR Claim, Mack must demonstrate how the requested damages arise from GMACM's failure to respond to the QWR as opposed to its initiation of the Foreclosure Action. This may be difficult, but Mack is entitled to make his case.

30

The Court therefore **SUSTAINS IN PART AND OVERRULES IN PART** the

Objection.  Only Mack's QWR Claim survives.  Counsel for the parties are directed within 14

days of the entry of this Opinion and Order to confer by telephone about the possibility of

settlement, or entering into mediation.  The Court will also hold a case management and

scheduling conference, by telephone, on August 13, 2014, at 2:00 p.m. (Eastern Standard Time).

**IT IS SO ORDERED.**

Dated:  July 24, 2014
        New York, New York                    _Martin Glenn_
                                               MARTIN GLENN
                                        United States Bankruptcy Judge