**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------

|  |  |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | Chapter 11 |
| Debtors. | Jointly Administered |

------------------------------------------------------------

**SUPPLEMENTAL DECLARATION OF DEANNA HORST IN SUPPORT OF**
**THE RESCAP BORROWER CLAIMS TRUST'S REPLY IN SUPPORT OF ITS**
**<u>OBJECTION TO CLAIM NUMBER 392 FILED BY KEVIN J. MATTHEWS</u>**

I, Deanna Horst, hereby declare as follows:

1.     I am the Chief Claims Officer for The ResCap Liquidating Trust (the "<u>Liquidating Trust</u>"), and previously served as Chief Claims Officer for Residential Capital, LLC and its affiliates ("<u>ResCap</u>"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors in the above-captioned Chapter 11 Cases (collectively, the "<u>Debtors</u>").   I have been employed by affiliates of ResCap since August of 2001.   In June 2012, I became Senior Director of Claims Management for ResCap and in October of 2013, I became Chief Claims Officer of ResCap.   I began my association with ResCap in 2001 as the Director, Responsible Lending Manager, charged with managing the Debtors' responsible lending on-site due diligence program.   In 2002, I became the Director of Quality Asset Management, managing Client Repurchase, Quality Assurance and Compliance— a position I held until 2006, at which time I became the Vice President of the Credit Risk Group, managing Correspondent and Broker approval and monitoring.   In 2011, I became the Vice President, Business Risk and Controls, and supported GMAC Mortgage, LLC and Ally Bank in this role.   In my current position, I am responsible for Claims Management and Reconciliation and Client Recovery.   In my current position as Chief Claims Officer to the Liquidating Trust,

1

among my other duties, I continue to assist the Liquidating Trust and the ResCap Borrower

Claims Trust (the "Borrower Trust") in connection with the claims reconciliation process.[1]  I am

authorized to submit this supplemental declaration (the "Supplemental Declaration") in support

of *The ResCap Borrower Claims Trust's Reply in Support of Its Objection to Claim Number 392*

*Filed by Kevin J. Matthews* (the "Reply") and the Objection.[2]

2.    Except as otherwise indicated, all facts set forth in this Supplemental

Declaration are based upon my personal knowledge of the Debtors' operations and finances,

information learned from my review of relevant documents and information I have received

through my discussions with other former members of the Debtors' management or other former

employees of the Debtors, the Liquidating Trust's professionals and consultants, and/or

Kurtzman Carson Consultants LLC ("KCC"), the Debtors' noticing and claims agent.  If I were

called upon to testify, I could and would testify competently to the facts set forth in the Reply on

that basis.

3.    In my capacity as Chief Claims Officer, I am intimately familiar with the

claims reconciliation process in these Chapter 11 Cases.  Except as otherwise indicated, all

statements in this Supplemental Declaration are based upon my familiarity with the Debtors'

books and records that were prepared and kept in the course of their regularly conducted

business activities (the "Books and Records"), my review and reconciliation of claims, and/or

my review of relevant documents.  I or other Liquidating Trust personnel have reviewed and

analyzed the proof of claim form and supporting documentation filed by Matthews.  Since the

---

[1]    The ResCap Liquidating Trust and the Borrower Trust are parties to an Access and Cooperation Agreement, dated as December 17, 2013, which, among other things, provides the Borrower Trust with access to the books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.

[2]    Defined terms used but not defined herein shall have the meanings ascribed to such terms as set forth in the Reply.

Plan went effective and the Borrower Trust was established, I, along with other members of the Liquidating Trust have consulted with the Borrower Trust to continue the claims reconciliation process, analyze claims, and determine the appropriate treatment of the same.  In connection with such review and analysis, where applicable, I or the Liquidating Trust personnel under my supervision, and the Liquidating Trust's professional advisors have reviewed (i) information supplied or verified by former personnel in departments within the Debtors' various business units, (ii) the Books and Records, (iii) the Debtors' schedules of assets and liabilities and statements of financial affairs filed in these Chapter 11 Cases, (iv) other filed proofs of claim, and/or (v) the Claims Register.

4.    Attached as **Exhibit A** is a true and correct copy of the Affidavit of Juan Aguirre, a former GMAMC employee, dated as of November 16, 2012  (the "Aguirre Affidavit"), which was submitted on behalf of GMACM in connection with the Second Foreclosure Proceeding.  I have reviewed the Aguirre Affidavit, including the exhibits thereto, as well as the Debtors' relevant Books and Records.  To the best of my knowledge and belief based on my review of the foregoing materials, each of the statements in paragraphs 4 through 21 of the Aguirre Affidavit remains true and correct.

5.    Attached as **Exhibit B** is a true and correct copy of the Deed of Appointment of Substitute Trustees.

6.    Attached as **Exhibit C** are excerpts from a true and correct copy of the Servicing Transfer Agreement by and among GMAC Mortgage, LLC, Residential Funding Company, LLC, Executive Trustee Services, LLC, ETS of Washington, Inc. and Ocwen Loan Servicing, LLC, dated as of February 15, 2013.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  July 25, 2014

       /s/ Deanna Horst           
Deanna Horst
Chief Claims Officer for The ResCap
Liquidating Trust

4

## EXHIBIT A

**Aguirre Affidavit**

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

LAURA H.G. O'SULLIVAN, *et al.*　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　Plaintiffs,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　)　　Case No.: 24O12000286
　　　　　　　　　　　　　　　　　　　)
KEVIN J. MATTHEWS　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　Defendant　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)

### AFFIDAVIT OF JUAN AGUIRRE

1.　　My name is Juan Aguirre, and I am over eighteen years of age, am competent to testify, and have personal knowledge of the facts set forth herein.

2.　　During all relevant times, I have been, and remain, an employee of GMAC Mortgage, LLC ("GMACM"), and my current position is Manager-Litigation Suppor. I have been employed by GMACM for 6 years.

3.　　In response to allegations by Mr. Kevin Matthews, I have reviewed GMACM's files and have become familiar with the history of GMACM's relationship with Mr. Matthews, including the recent foreclosure proceedings, as well as the relevant documents.

4.　　On or about February 14, 2008, USAA Federal Savings Bank made a loan to Mr. Matthews in the amount of $150,000.00 as evidenced by a promissory note (the "Note"). A true and accurate copy of the Note is attached to my Affidavit as **Exhibit 1**. Since the origination of the loan, GMACM has serviced the loan, and it is presently the holder of the Note.

5.　　Mr. Matthews has not made a mortgage payment since April 8, 2009. As of August 1, 2009, Mr. Matthews owed a total amount of $147,457.41 in unpaid principal balance



EXHIBIT

A

on his mortgage loan.  A true and accurate copy of GMACM's report of Mr. Matthews's

payment history as of November 16, 2012 is attached to my Affidavit as **Exhibit 2**.

6.    On or about March 2, 2011, Mr. Matthews submitted a financial package in

connection with his request for a loan modification, and that request was granted on or about

March 11, 2011, subject to the receipt of a signed loan modification agreement and associated

documents.  The terms of the loan as modified required total monthly payments of $1,214.49

from that point forward.  Further, no down payment of any kind was required.  A true and

accurate copy of a letter dated March 11, 2011 relating to the loan modification is attached to my

Affidavit as **Exhibit 3**.

7.    Mr. Matthews failed to return the signed loan modification agreement and

associated documents.  On June 27, 2011, Mr. Matthews explained to GMACM that he could not

afford the mortgage payment under the modified terms.

8.    On or about December 5, 2011, GMACM issued to Mr. Matthews a letter and an

application package relating to his mortgage loan.  Among other things, the letter listed various

options for Matthews, including loan modifications, a short sale, and a deed in lieu of

foreclosure.  A true and accurate copy of the letter of December 5, 2011 is attached to my

Affidavit as **Exhibit 4**.

9.    Mr. Matthews did not respond to the letter of December 5, 2011.

10.    On or about December 20, 2011, GMACM issued to Mr. Matthews a second

letter, also including an application package.  The letter states in part that it is the "Second

Notice!" and it refers to the earlier letter of December 5, 2011.  Like the earlier letter, it also

listed various options for Matthews, including loan modifications, a short sale, and a deed in lieu

2

of foreclosure. A true and accurate copy of the letter dated December 20, 2011 is attached to my

Affidavit as **Exhibit 5**.

11.     Mr. Matthews did not respond to the letter of December 20, 2011.

12.     On or about February 10, 2012, this foreclosure proceeding was filed by the

Substitute Trustees appointed by GMACM.

13.     On or about March 23, 2012, counsel for the Substitute Trustees filed a Final Loss

Mitigation Affidavit and Request for Mediation form. A true and accurate copy of the filing is

attached to my Affidavit as **Exhibit 6**.

14.     On or about April 20, 2012, Mr. Matthews requested foreclosure mediation in the

case. A true and accurate copy of the request is attached to my Affidavit as **Exhibit 7**.

15.     On June 11, 2012, GMACM through counsel sent to Mr. Matthews's attorney

another financial package for Mr. Matthews to complete and return in an effort to determine

whether Mr. Matthews could qualify at that point for a loan modification. A true and accurate

copy of the letter dated June 11, 2012 is attached to my Affidavit as **Exhibit 8**.

16.     Thereafter, the foreclosure mediation took place on July 19, 2012, but the parties

ultimately agreed to continue the mediation to a later date in part due to the then-recent

bankruptcy filing of GMACM. The mediation was scheduled to resume on October 9, 2012.

17.     Meanwhile, Mr. Matthews through his attorney submitted another loan

modification request and associated documents in support, including certain documents

submitted on September 19, 2012.

18.     On October 8, 2012, GMACM's attorney sent a letter to Mr. Matthews's attorney

informing him that Mr. Matthews did not qualify for a loan modification due to insufficient

income. Counsel attached a letter from GMACM explaining the denial. In that letter, GMACM

3

stated further as follows: "We will continue to work with you to explore options that may be available." The letter also provided various phone numbers that Mr. Matthews could call with questions, including requests for assistance. A true and accurate copy of the letter dated October 8, 2012 is attached to my Affidavit as **Exhibit 9**.

19.    After receiving the letter from GMACM's attorney, Mr. Matthews's attorney cancelled the foreclosure mediation that had been scheduled for the following day.

20.    On October 15, 2012, GMACM's attorney sent to Mr. Matthews's attorney a letter stating in part: "Notwithstanding, I am writing to ask whether Mr. Matthews would be interested in exploring other settlement options, including, for example, a deed in lieu of foreclosure, relocation assistance, or other options that might be available." A true and accurate copy of the letter dated October 15, 2012 is attached to my Affidavit as **Exhibit 10**.

21.    Neither Mr. Matthews nor his attorney has responded to GMACM's attorney's letter dated October 15, 2012.

I declare under penalty of law that the foregoing is true and correct.

DATED: November 16, 2012

Juan Aguire

SUBSCRIBED AND SWORN TO BEFORE ME, this ___16th___ day of November, 2012.

Notary Public

Printed Name: _Jill Taylor_

My Commission Expires: _12/22/2014_

JILL TAYLOR
Notary Public, State of Texas
My Commission Expires
December 22, 2014

4

# NOTE

## NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

February 14, 2008                    Bel Air                    MARYLAND
[Date]                               [City]                     [State]

3216 East Northern Parkway
Baltimore, MD  21214-1422
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 150,000.00        (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is USAA Federal Savings Bank

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of        5.875 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st      day of each month beginning on April 01, 2008        . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on March 01, 2038        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at Attn: Payment Processing, P.O. Box 205, Waterloo, IA 50704-0205        or at a different place if required by the Note Holder

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 887.31

## 4. BORROWER'S RIGHT TO PREPAY

The Borrower shall have the right to prepay at any time, without premium or fee, the entire indebtedness or any part thereof not less than the amount of one installment, or $100.00, whichever is less. Any Prepayment in full of the indebtedness shall be credited on the date received, and no interest may be charged thereafter. Any partial Prepayment made on other than an installment due date need not be credited until the next following installment due date or 30 days after such Prepayment whichever is earlier.

MULTISTATE FIXED RATE NOTE-Single Family
Amended for Veterans Affairs

US5G (0104)
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3        Initials: K S m



EXHIBIT
1

## 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15       calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      4.000 % of my overdue payment. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.



US5G (0104)                                     Page 2 of 3                                     Initials: _Iksm_

## 10. ALLONGE TO THIS NOTE

If an allonge providing for payment adjustments or for any other supplemental information is executed by the Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge          ☐ Other [Specify]          ☐ Other [Specify]

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

> Regulations (38 C.F.R. Part 36) issued under the Department of Veterans Affairs ("VA") Guaranteed Loan Authority (38 U.S.C. Chapter 37) and in effect on the date of loan closing shall govern the rights, duties and liabilities of the parties to this loan and any provisions of this Note which are inconsistent with such regulations are hereby amended and supplemented to conform thereto.

## 12. APPLICABLE LAW

Lender is a federally chartered savings bank governed, in part, by the Home Owner's Loan Act of 1933 and the rules and regulations promulgated pursuant thereto (the "Act"). To the extent permitted by the Act, this Note will be governed by applicable federal law and by the interest rate and usury provisions of the state of Texas.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Kevin S Matthews_ _____ (Seal)          _____ (Seal)
Kevin Jerron Matthews                -Borrower                                              -Borrower

_____ (Seal)          _____ (Seal)
                                     -Borrower                                              -Borrower

_____ (Seal)          _____ (Seal)
                                     -Borrower                                              -Borrower

Pay to the Order of                                    PAY TO THE ORDER OF
GMAC Mortgage, LLC
Its successors and / or assigns
Without Recourse                                       WITHOUT RECOURSE
USAA Federal Savings Bank         _____ (Seal)
                                     -Borrower
By: _Gregory R. Jaeger_                               _J. Gray_
Name: Gregory R. Jaeger                               J. GRAY
Title:   V.P., Fulfillment                            LIMITED SIGNING OFFICER
                                                      GMAC MORTGAGE, LLC f/k/a
                                                      GMAC MORTGAGE CORPORATION   [Sign Original Only]

US5G (0104)                          Page 3 of 3

## DISPLAY/HISTORY

**Acct:** _____ **Name:** KEVIN JERRON MATTHEWS    **Type:** 3    **Sub:** 0    **Investor:** 50140    **Warn:** 5    **Lock:** 0    **Stop:** 0

| - Dates - | **Paid To:** 07/01/2009 | **Next Due:** 08/01/2009 | **Last Pmt:** 03/27/2009 | **Page:** 1 |
|---|---|---|---|---|
| - Bal - | **Prin:** 147,457.41 | **Esc:** -11,268.40 | | |
| - Uncol - | **LC:** 0.00 | **P&I Adv:** 0.00 | **Esc Sht:** 0.00 | **Refresh Date:** 11/16/2012 |

### FINANCIAL TRANSACTIONS:

| Transaction Description | Transaction Amount | Last Paid | Post Date | Principal Paid | Interest Paid | Escrow Paid | Cr Life/ Disab | Lt Chrg/ Fees | Principal Bal After Tran | Escrow Bal After Tran | Unapp Funds After Tran |
|---|---|---|---|---|---|---|---|---|---|---|---|
| PAYMENT | 822.31 | 03/08 | 02/21/2008 | | | 822.31 | | | 150,000.00 | 822.31 | 0.00 |
| Curtailment | 0.59 | 04/08 | 03/10/2008 | 0.59 | | | | | 149,846.48 | 1,096.41 | 0.00 |
| PAYMENT | 1161.41 | 04/08 | 03/10/2008 | 152.93 | 734.38 | 274.10 | | | 149,847.07 | 1,096.41 | 0.00 |
| Curtailment | 0.59 | 05/08 | 03/24/2008 | 0.59 | | | | | 149,692.20 | 1,370.51 | 0.00 |
| PAYMENT | 1161.41 | 05/08 | 03/24/2008 | 153.89 | 733.62 | 274.10 | | | 149,692.79 | 1,370.51 | 0.00 |
| Non-Cash | 0.00 | 05/08 | 03/25/2008 | | | | | | 149,692.20 | 1,370.51 | 0.00 |
| Curtailment | 0.59 | 05/08 | 03/27/2008 | 0.59 | | | | | 149,692.20 | 1,370.51 | 0.00 |
| PAYMENT | 887.31 | 05/08 | 03/27/2008 | 153.89 | 733.62 | | | | 149,692.79 | 1,370.51 | 0.00 |
| Curtailment | 0.59 | 04/08 | 03/27/2008 | 0.59 | | | | | 149,846.48 | 1,370.51 | 0.00 |
| PAYMENT | 2257.82 | 04/08 | 03/27/2008 | 152.93 | 734.38 | 1370.51 | | | 149,847.07 | 1,370.51 | 0.00 |
| PAYMENT | -887.31 | 03/08 | 03/27/2008 | -152.93 | -734.38 | | | | 150,000.00 | 0.00 | 0.00 |
| Curtailment | -0.59 | 04/08 | 03/27/2008 | -0.59 | | | | | 149,847.07 | 0.00 | 0.00 |
| PAYMENT | -2257.82 | 04/08 | 03/27/2008 | -153.89 | -733.62 | -1370.51 | | | 149,846.48 | 0.00 | 0.00 |
| Curtailment | -0.59 | 05/08 | 03/27/2008 | -0.59 | | | | | 149,692.79 | 1,370.51 | 0.00 |
| Curtailment | 0.29 | 06/08 | 06/05/2008 | 0.29 | | | | | 149,537.47 | 1,644.61 | 0.00 |
| PAYMENT | 1161.41 | 06/08 | 06/05/2008 | 154.44 | 732.87 | 274.10 | | | 149,537.76 | 1,644.61 | 0.00 |
| Curtailment | 0.29 | 07/08 | 07/03/2008 | 0.29 | | | | | 149,381.98 | 1,918.71 | 0.00 |
| PAYMENT | 1161.41 | 07/08 | 07/03/2008 | 155.20 | 732.11 | 274.10 | | | 149,382.27 | 1,918.71 | 0.00 |
| Escrow Disb-Tax City | -1353.77 | 07/08 | 07/14/2008 | | | -1353.77 | | | 149,381.98 | 564.94 | 0.00 |
| Curtailment | 0.29 | 08/08 | 08/01/2008 | 0.29 | | | | | 149,225.73 | 839.04 | 0.00 |
| PAYMENT | 1161.41 | 08/08 | 08/01/2008 | 155.96 | 731.35 | 274.10 | | | 149,226.02 | 839.04 | 0.00 |
| Curtailment | 0.29 | 09/08 | 09/02/2008 | 0.29 | | | | | 149,068.71 | 1,113.14 | 0.00 |
| PAYMENT | 1161.41 | 09/08 | 09/02/2008 | 156.73 | 730.58 | 274.10 | | | 149,069.00 | 1,113.14 | 0.00 |
| Curtailment | 0.29 | 10/08 | 10/01/2008 | 0.29 | | | | | 148,910.93 | 1,387.24 | 0.00 |
| PAYMENT | 1161.41 | 10/08 | 10/01/2008 | 157.49 | 729.82 | 274.10 | | | 148,911.22 | 1,387.24 | 0.00 |
| Curtailment | 0.29 | 11/08 | 11/06/2008 | 0.29 | | | | | 148,752.37 | 1,661.34 | 0.00 |
| PAYMENT | 1161.41 | 11/08 | 11/06/2008 | 158.27 | 729.04 | 274.10 | | | 148,752.66 | 1,661.34 | 0.00 |
| Escrow Disb-Tax City | -1373.89 | 11/08 | 12/05/2008 | | | -1373.89 | | | 148,752.37 | 287.45 | 0.00 |
| Curtailment | 0.29 | 12/08 | 12/09/2008 | 0.29 | | | | | 148,593.04 | 561.55 | 0.00 |
| PAYMENT | 1161.41 | 12/08 | 12/09/2008 | 159.04 | 728.27 | 274.10 | | | 148,593.33 | 561.55 | 0.00 |
| Curtailment | 0.29 | 01/09 | 01/05/2009 | 0.29 | | | | | 148,432.93 | 835.65 | 0.00 |
| PAYMENT | 1161.41 | 01/09 | 01/05/2009 | 159.82 | 727.49 | 274.10 | | | 148,433.22 | 835.65 | 0.00 |
| Escrow Disb-Fire | -764.27 | 01/09 | 01/22/2009 | | | -764.27 | | | 148,432.93 | 71.38 | 0.00 |
| FEE | 12.50 | 02/09 | 02/13/2009 | | | | | 12.50 | | | |
| FEE | 12.50 | 02/09 | 02/13/2009 | | | | | 12.50 | | | |
| PAYMENT | 120.85 | 02/09 | 02/13/2009 | | | 120.85 | | | 148,272.32 | 475.62 | 0.00 |
| PAYMENT | 1170.70 | 02/09 | 02/13/2009 | 160.61 | 726.70 | 283.39 | | | 148,272.32 | 354.77 | 0.00 |
| PAYMENT | 0.00 | 02/09 | 02/16/2009 | | | | | | 148,272.32 | 475.62 | 0.00 |
| PAYMENT | 1170.70 | 03/09 | 02/17/2009 | 161.39 | 725.92 | 283.39 | | | 148,110.93 | 759.01 | 0.00 |

**EXHIBIT**

_2_

## DISPLAY/HISTORY

Acct: [redacted]    Name:    KEVIN JERRON MATTHEWS        Type: 3    Sub: 0    Investor: 50140    Warn: 5    Lock: 0    Stop: 0

- Dates -    Paid To:    07/01/2009        Next Due:    08/01/2009    Last Pmt:    03/27/2009        Page: 2

- Bal -    Prin:    147,457.41        Esc:    -11,268.40        Refresh Date: 11/16/2012

- Uncol -    LC:    0.00        P&I Adv:    0.00        Esc Sht:    0.00

### FINANCIAL TRANSACTIONS:

| Transaction Description | Transaction Amount | Last Paid | Post Date | Principal Paid | Interest Paid | Escrow Paid | Cr Life/ Disab | Lt Chrg/ Fees | Principal Bal After Tran | Escrow Bal After Tran | Unapp Funds After Tran |
|---|---|---|---|---|---|---|---|---|---|---|---|
| FEE | 7.50 | 04/09 | 02/18/2009 | | | | | 7.50 | | | |
| FEE | 7.50 | 04/09 | 02/18/2009 | | | | | 7.50 | | | |
| PAYMENT | 1170.70 | 04/09 | 02/18/2009 | 162.18 | 725.13 | 283.39 | | | 147,948.75 | 1,042.40 | 0.00 |
| FEE | 7.50 | 05/09 | 02/20/2009 | | | | | 7.50 | | | |
| FEE | 7.50 | 05/09 | 02/20/2009 | | | | | 7.50 | | | |
| PAYMENT | 1170.70 | 05/09 | 02/20/2009 | 162.98 | 724.33 | 283.39 | | | 147,785.77 | 1,325.79 | 0.00 |
| FEE | 7.50 | 06/09 | 02/25/2009 | | | | | 7.50 | | | |
| Unapplied | 1178.20 | 05/09 | 02/25/2009 | | | | | | | | 1,178.20 |
| PAYMENT | 1178.20 | 05/09 | 02/25/2009 | | | | | | 147,785.77 | 1,325.79 | 1,178.20 |
| FEE | 7.50 | 06/09 | 03/10/2009 | | | | | 7.50 | | | |
| Unapplied | -7.50 | 06/09 | 03/10/2009 | | | | | | | | 0.00 |
| PAYMENT | -7.50 | 06/09 | 03/10/2009 | | | | | | 147,621.99 | 1,609.18 | 0.00 |
| Unapplied | -1170.70 | 06/09 | 03/10/2009 | | | | | | | | 7.50 |
| PAYMENT | 0.00 | 06/09 | 03/10/2009 | 163.78 | 723.53 | 283.39 | | | 147,621.99 | 1,609.18 | 7.50 |
| FEE | 12.50 | 06/09 | 03/27/2009 | | | | | 12.50 | | | |
| Unapplied | 1183.20 | 06/09 | 03/27/2009 | | | | | | | | 1,183.20 |
| PAYMENT | 1183.20 | 06/09 | 03/27/2009 | | | | | | 147,621.99 | 1,609.18 | 1,183.20 |
| Unapplied | -12.50 | 07/09 | 04/08/2009 | | | | | | | | 0.00 |
| Unapplied | -1170.70 | 07/09 | 04/08/2009 | | | | | | | | 12.50 |
| PAYMENT | 0.00 | 07/09 | 04/08/2009 | | 12.50 | | | | 147,457.41 | 1,892.57 | 0.00 |
| PAYMENT | 0.00 | 07/09 | 04/08/2009 | 164.56 | 722.73 | 283.39 | | | 147,457.41 | 1,892.57 | 12.50 |
| Escrow Disb-Tax City | -1411.82 | 07/09 | 07/10/2009 | | | -1411.82 | | | 147,457.41 | 480.75 | 0.00 |
| Escrow Disb-Tax City | -1429.24 | 07/09 | 12/09/2009 | | | -1429.24 | | | 147,457.41 | -948.49 | 0.00 |
| Escrow Disb-Fire | -784.27 | 07/09 | 01/28/2010 | | | -784.27 | | | 147,457.41 | -1,712.76 | 0.00 |
| FEE | 166.98 | 07/09 | 02/05/2010 | | | | | 166.98 | | | |
| FEE | 450.00 | 07/09 | 05/05/2010 | | | | | 450.00 | | | |
| PAYMENT | -1712.76 | 07/09 | 06/08/2010 | | | -1712.76 | | | 147,457.41 | -1,712.76 | 0.00 |
| PAYMENT | 1712.76 | 07/09 | 06/08/2010 | | | 1712.76 | | | 147,457.41 | 0.00 | 0.00 |
| Curtailment | 110163.00 | 07/09 | 06/14/2010 | 110163.00 | | | | | 37,294.41 | -1,712.76 | 0.00 |
| FEE | 225.00 | 07/09 | 06/16/2010 | | | | | 225.00 | | | |
| FEE | 55.00 | 07/09 | 06/16/2010 | | | | | 55.00 | | | |
| FEE | 450.00 | 07/09 | 06/16/2010 | | | | | 450.00 | | | |
| FEE | 135.00 | 07/09 | 06/16/2010 | | | | | 135.00 | | | |
| FEE | 1050.00 | 07/09 | 06/16/2010 | | | | | 1050.00 | | | |
| FEE | 380.00 | 07/09 | 06/16/2010 | | | | | 380.00 | | | |
| FEE | 499.99 | 07/09 | 06/16/2010 | | | | | 499.99 | | | |
| FEE | 125.00 | 07/09 | 06/16/2010 | | | | | 125.00 | | | |
| FEE | 641.25 | 07/09 | 06/16/2010 | | | | | 641.25 | | | |

## DISPLAY/HISTORY

Acct: ███████    Name: KEVIN JERRON MATTHEWS    Type: 3    Sub: 0    Investor: 50140    Warn: 6    Lock: 0    Stop: 0

- Dates -    Paid To: 07/01/2009    Next Due: 08/01/2009    Last Pmt: 03/27/2009    Page: 3

- Bal -    Prin:    147,457.41    Esc:    -11,268.40    Refresh Date: 11/16/2012

- Uncol -    LC:    0.00    P&I Adv:    0.00    Esc Sht:    0.00

### FINANCIAL TRANSACTIONS:

| Transaction Description | Transaction Amount | Last Paid | Post Date | Principal Paid | Interest Paid | Escrow Paid | Cr Life/ Disab | Lt Chrg/ Fees | Principal Bal After Tran | Escrow Bal After Tran | Unapp Funds After Tran |
|---|---|---|---|---|---|---|---|---|---|---|---|
| FEE | 103.88 | 07/09 | 06/16/2010 | | | | | 103.88 | | | |
| PAYMENT | -1712.76 | 07/09 | 06/18/2010 | | | -1712.76 | | | 37,294.41 | -1,712.76 | 0.00 |
| PAYMENT | 1712.76 | 07/09 | 06/18/2010 | | | 1712.76 | | | 37,294.41 | 0.00 | 0.00 |
| FEE | 300.01 | 07/09 | 06/29/2010 | | | | | 300.01 | | | |
| FEE | 3308.24 | 07/09 | 07/15/2010 | | | | | 3308.24 | | | |
| FEE | 2961.53 | 07/09 | 07/15/2010 | | | | | 2961.53 | | | |
| FEE | 900.00 | 07/09 | 09/17/2010 | | | | | 900.00 | | | |
| FEE | 70.00 | 07/09 | 09/22/2010 | | | | | 70.00 | | | |
| Unapplied | -110163.00 | 07/09 | 09/22/2010 | | | | | | | | 0.00 |
| Escrow Disb-Unapplied | -110163.00 | 07/09 | 09/22/2010 | | | | | | 147,457.41 | -1,712.76 | 0.00 |
| Unapplied | 110163.00 | 07/09 | 09/22/2010 | | | | | | | | 110,163.00 |
| PAYMENT | 110163.00 | 07/09 | 09/22/2010 | | | | | | 147,457.41 | -1,712.76 | 110,163.00 |
| PAYMENT | -110163.00 | 07/09 | 09/22/2010 | -110163.00 | | | | | 147,457.41 | -1,712.76 | 0.00 |
| Escrow Disb-Tax City | -1512.20 | 07/09 | 01/26/2011 | | | -1512.20 | | | 147,457.41 | -3,224.96 | 0.00 |
| FEE | 2287.66 | 07/09 | 02/16/2011 | | | | | 2287.66 | | | |
| FEE | 300.01 | 07/09 | 02/16/2011 | | | | | 300.01 | | | |
| FEE | 225.00 | 07/09 | 02/16/2011 | | | | | 225.00 | | | |
| FEE | 55.00 | 07/09 | 02/16/2011 | | | | | 55.00 | | | |
| FEE | 450.00 | 07/09 | 02/16/2011 | | | | | 450.00 | | | |
| FEE | 135.00 | 07/09 | 02/16/2011 | | | | | 135.00 | | | |
| FEE | 1050.00 | 07/09 | 02/16/2011 | | | | | 1050.00 | | | |
| FEE | 360.00 | 07/09 | 02/16/2011 | | | | | 360.00 | | | |
| FEE | 499.99 | 07/09 | 02/16/2011 | | | | | 499.99 | | | |
| FEE | 125.00 | 07/09 | 02/16/2011 | | | | | 125.00 | | | |
| FEE | 641.25 | 07/09 | 02/16/2011 | | | | | 641.25 | | | |
| FEE | 103.88 | 07/09 | 02/16/2011 | | | | | 103.88 | | | |
| FEE | 450.00 | 07/09 | 02/16/2011 | | | | | 450.00 | | | |
| FEE | 166.98 | 07/09 | 02/16/2011 | | | | | 166.98 | | | |
| Non-Cash | 0.00 | 07/09 | 03/08/2011 | | | | | | 147,457.41 | -3,224.96 | 0.00 |
| PAYMENT | -3224.96 | 07/09 | 03/28/2011 | | | -3224.96 | | | 147,457.41 | -3,224.96 | 0.00 |
| PAYMENT | 3224.96 | 07/09 | 03/28/2011 | | | 3224.96 | | | 147,457.41 | 0.00 | 0.00 |
| FEE | 70.00 | 07/09 | 04/29/2011 | | | | | 70.00 | | | |
| FEE | 900.00 | 07/09 | 04/29/2011 | | | | | 900.00 | | | |
| FEE | 3308.24 | 07/09 | 04/29/2011 | | | | | 3308.24 | | | |
| FEE | 673.87 | 07/09 | 04/29/2011 | | | | | 673.87 | | | |
| FEE | -4952.11 | 07/09 | 04/29/2011 | | | | | -4952.11 | | | |
| Escrow Disb-Fire | -871.00 | 07/09 | 06/03/2011 | | | -871.00 | | | 147,457.41 | -4,095.96 | 0.00 |
| Escrow Disb-Tax City | -1523.06 | 07/09 | 07/07/2011 | | | -1523.06 | | | 147,457.41 | -5,619.02 | 0.00 |

## DISPLAY/HISTORY

| Acct: | | Name: | KEVIN JERRON MATTHEWS | | Type: 3 | Sub: 0 | Investor: 50140 | Warn: 5 | Lock: 0 | Stop: 0 |
|---|---|---|---|---|---|---|---|---|---|---|

- Dates -  Paid To: 07/01/2009    Next Due: 08/01/2009    Last Pmt: 03/27/2009    Page: 4
- Bal -  Prin: 147,457.41    Esc: -11,268.40
- Uncol -  LC: 0.00    P&I Adv: 0.00    Esc Sht: 0.00    Refresh Date: 11/16/2012

### FINANCIAL TRANSACTIONS:

| Transaction Description | Transaction Amount | Last Paid | Post Date | Principal Paid | Interest Paid | Escrow Paid | Cr Life/ Disab | Lt Chrg/ Fees | Principal Bal After Tran | Escrow Bal After Tran | Unapp Funds After Tran |
|---|---|---|---|---|---|---|---|---|---|---|---|
| PAYMENT | -5619.02 | 07/09 | 11/28/2011 | | | -5619.02 | | | 147,457.41 | -5,619.02 | 0.00 |
| PAYMENT | 5619.02 | 07/09 | 11/28/2011 | | | 5619.02 | | | 147,457.41 | 0.00 | 0.00 |
| Escrow Disb-Tax City | -1532.96 | 07/09 | 12/07/2011 | | | -1532.96 | | | 147,457.41 | -7,151.98 | 0.00 |
| Escrow Disb-Fire | -1133.00 | 07/09 | 02/09/2012 | | | -1133.00 | | | 147,457.41 | -8,284.98 | 0.00 |
| FEE | 60.00 | 07/09 | 03/13/2012 | | | | | 60.00 | | | |
| FEE | 225.00 | 07/09 | 03/13/2012 | | | | | 225.00 | | | |
| FEE | 54.00 | 07/09 | 03/13/2012 | | | | | 54.00 | | | |
| FEE | 60.00 | 07/09 | 03/13/2012 | | | | | 60.00 | | | |
| FEE | 180.00 | 07/09 | 03/13/2012 | | | | | 180.00 | | | |
| FEE | 57.95 | 07/09 | 03/13/2012 | | | | | 57.95 | | | |
| FEE | 780.00 | 07/09 | 03/13/2012 | | | | | 780.00 | | | |
| FEE | 455.00 | 07/09 | 03/13/2012 | | | | | 455.00 | | | |
| Escrow Disb-Tax City | -1509.69 | 07/09 | 07/12/2012 | | | -1509.69 | | | 147,457.41 | -9,794.67 | 0.00 |
| FEE | -1049.79 | 07/09 | 09/19/2012 | | | | | -1049.79 | | | |
| PAYMENT | -1473.73 | 07/09 | 09/19/2012 | | | -1473.73 | | | 147,457.41 | -11,268.40 | 0.00 |

Identifier: ███████     Doc Type: LSMIT

3/11/2011

KEVIN JERRON MATTHEWS
PO BOX 3660
BALTIMORE MD 21214-0660



Re: Account Number     ███████
3216 EAST NORTHERN PARKWAY
BALTIMORE MD 21214-1422

Dear KEVIN JERRON MATTHEWS

**Congratulations! Your request for a loan modification has been approved subject to the following:**
-Receipt of your contribution in the form of certified funds
-Receipt of the signed and (if applicable) notarized and/or witnessed loan modification agreement and any attachments
-Receipt of clear title, if applicable

Highlights of the enclosed Loan Modification Agreement and instructions for completing and returning it are as follows:

- The contribution amount of $     .00 in the form of certified funds, is due in our office by March 18, 2011.
- The interest rate is 4.75000%.
- The first modified payment begins May 1, 2011.
- **Modified payment amount**

  | | |
  |---|---|
  | Principal and Interest | $ 894.02 |
  | Escrow | $ 320.47 |
  | **Total Payment** | **$1,214.49** |

- If the Modification Agreement has notary provisions at the end:
  o Do NOT sign the enclosed Loan Modification Agreement unless you are in the presence of a notary.
  o This document must be signed in the presence of a notary and (if applicable) other witnesses.
- If executing an ink signature (paper), all of the documents must be executed and the signatures must be exactly as the names are typed. The signed and (if applicable) notarized Loan Modification Agreement should be returned using the enclosed pre-paid overnight envelope.
- If any modification closing costs are more than projected, the difference will be assessed to the account.
- All miscellaneous fees and costs – excluding late charges – may not have been included in the loan modification and will remain outstanding.
- For loans with mortgage insurance, the mortgage insurance premium may be subject to change following permanent modification. Any change would be proportionate to the modified loan amount, including any deferred balance, and would be reflected in a future escrow analysis following permanent modification.

**EXHIBIT**

3

Identifier: ▮▮▮▮▮▮        Doc Type:LSMIT

The contribution and executed loan modification documents are due back by March 18, 2011. Please return to:

USAA Federal Savings Bank
3700 J Street SW
Suite 222
Cedar Rapids, IA 52404

IMPORTANT! The loan modification will not be complete until we receive all properly executed documents and the contribution amount. If the modification is not completed we will continue to enforce our lien. If the conditions outlined above are not satisfied the modification will be withdrawn.

If you have any questions regarding this modification offer, please contact a modification specialist directly at 1-800-799-9250 Monday – Thursday 8:00 AM to 7:00 PM, Friday 8:00 AM to 5:00 PM, Central Time.

Loan Modification Specialist
Enclosures

**NOTICE:** Federal law requires that we advise you that this notice is from a debt collector attempting to collect on a debt and any information obtained will be used for that purpose.

If you are currently involved in a bankruptcy proceeding or if you have been discharged of your personal liability for the repayment of this debt, this notice is being provided for informational purposes only, it is not an attempt to hold you personally responsible for the debt and any rights we may choose to pursue will be exercised against the property only.

Identifier ████████        Doc Type:LSMIT

Record & Return To:
USAA Federal Savings Bank
Attention:  Loss Mitigation
3451 Hammond Avenue
Waterloo, IA 50702
Investor Number: ████████
Custodian ID:  A1

————————————————————[Space Above This Line For Recorder's Use]———————————————————

# NON-HAMP LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement") made this April 1, 2011 ("Effective Date")
between  KEVIN JERRON MATTHEWS            ("Borrower") and USAA Federal Savings Bank,
Lender\Servicer or Agent for Lender\Servicer, Mortgage Electronic Registration Systems, Inc.
(Mortgagee) amends and supplements (1) the Mortgage, Deed of Trust, or Deed to Secure Debt (the
"Security Instrument"), dated February 14, 2008 and granted or assigned to Mortgage Electronic
Registration Systems, Inc. as mortgagee of record (solely as nominee for Lender\Servicer or Agent for
Lender\Servicer), P.O Box 2026, Flint, Michigan 48501-2026, (888) 679-MERS, and if applicable,
recorded  with Instrument Number  in Book  and/or Page Number  of the real property records of
BALTIMORE - CITY County, MD and (2) that certain promissory note  ("Note") dated February 14,
2008 in the original principal sum of  One Hundred Fifty  Thousand  Dollars and No Cents ($
150,000.00) executed by Borrower.    Said Security Instrument covers the real and personal property
described in such Security Instrument (the "Property") located at 3216 EAST NORTHERN PARKWAY
BALTIMORE MD 21214-1422, which real property is more particularly described as follows:

( Legal Description if Applicable for Recording Only )

Borrower acknowledges that "Lender" is the legal holder and the owner, or agent\servicer for the
legal holder and owner, of the Note and Security Instrument and further acknowledges that if "Lender"
transfers the Note, as amended by this Agreement, the transferee shall be the "Lender" as defined in this
Agreement

Identifier: ▆▆▆▆    Doc Type:LSMIT

Borrower has requested, and Lender has agreed, to extend or rearrange the time and manner of payment of the Note and to extend and carry forward the lien(s) on the Property whether or not created by the Security Instrument.

Now, therefore, in consideration of the mutual promises and agreements contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.    Borrower acknowledges that as of the Effective Date, the amount payable under the Note and Security Instrument (New Principal Balance) is One Hundred Seventy One Thousand Three Hundred Eighty Three Dollars and Eighty Two Cents ($ 171,383.82).

2.    The Maturity Date is April 1, 2041.

3.    Borrower hereby renews and extends such indebtedness and promises to pay jointly and severally to the order of Lender the Principal Balance, consisting of the amount(s) loaned to Borrower by Lender and any accrued but unpaid interest capitalized to date as applicable, along with any other amounts that may come due under the terms of the original Note and Security Instrument

4.    Interest will be charged on the unpaid, non-deferred, 'New Principal Balance" until the non-deferred principal has been paid in full. Borrower promises to pay interest at the rate of 4.75000% from April 1, 2011 until I payoff my loan at the time when I sell or transfer any interest in my home, refinance the loan, or when the last scheduled payment is due. The rate of interest I pay will change based upon Payment Schedule below.

5.    Borrower promises to make monthly principal and interest payments of $894.02, beginning on May 1, 2011, and continuing thereafter on the same day of each succeeding month, until all principal and interest is paid in full.

6.    If on April 1, 2041 (the "Maturity Date"), Borrower still owes any amounts under the Note and Security Instrument, including any "Deferred Principal Balance " as provided for in this Agreement, Borrower will pay these amounts in full on that date. Borrower will make such payments at 3451 Hammond Avenue, Waterloo, Iowa, 50702 or at such other place as Lender may require. The amounts indicated in this paragraph do not include any required escrow payments for items such as hazard insurance or property taxes; if such escrow payments are required the monthly payments will be higher and may change as the amounts required for escrow items change.

7.    If "Lender" has not received the full amount of any monthly payment within the grace period provided for in the original Note or as otherwise provided for by law, Borrower will pay a late payment fee to "Lender" in an amount calculated based on the late charge percentage provided for in the original Note, or as otherwise provided for by law, and the monthly payment required under this Agreement, with a maximum as provided for in the Note, or otherwise provided by law. Borrower will pay this late charge promptly but only once on each late payment. The late charge is not in lieu of any other remedy of Lender, including any default remedy.

Identifier:███████        Doc Type:LSMT

8.  It is the intention of the parties that all liens and security interests described in the Security Instrument are hereby renewed and extended (if the Maturity Date of the original Note has been changed) until the indebtedness evidenced by the Note and this Agreement has been fully paid. Lender and Borrower acknowledge and agree that such renewal, amendment, modification, rearrangement or extension (if applicable) shall in no manner affect or impair the Note or liens and security interests securing same, the purpose of this Agreement being simply to modify, amend, rearrange or extend (if applicable) the time and the manner of payment of the Note and indebtedness evidenced thereby, and to carry forward all liens and security interests securing the Note, which are expressly acknowledged by Borrower to be valid and subsisting, and in full force and effect so as to fully secure the payment of the Note.

9.  If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law. If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower. For purposes of this paragraph, "interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is transfer of title by Borrower at a future date to a purchaser.

10. As amended hereby, the provisions of the Note and Security Instrument shall continue in full force and effect, and the Borrower acknowledges and reaffirms Borrower's liability to Lender thereunder. In the event of any inconsistency between this Agreement and the terms of the Note and Security Instrument, this Agreement shall govern. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement, including but not limited to, in the case of the Borrower, the obligation to pay items such as taxes, insurance premiums or escrow items, as applicable. Any default by Borrower in the performance of its obligations herein contained shall constitute a default under the Note and Security Instrument, and shall allow Lender to exercise all of its remedies set forth in said Security Instrument.

11. Lender does not, by its execution of this Agreement, waive any rights it may have against any person not a party hereto. This Agreement may be executed in multiple counterparts, each of which shall constitute an original instrument, but all of which shall constitute one and the same Agreement.

12. By signing, I acknowledge that I have received the "Notice of Special Flood Hazard and Availability of Federal Disaster Relief Assistance" if my property is located in a Special Flood Hazard Area. I further acknowledge that I have received this notice in sufficient time to have the opportunity to become aware of my responsibilities under the National Flood Insurance Program and to purchase adequate flood insurance prior to the completion of this loan modification.

Identifier: ███████        Doc Type:LSMIT

EACH OF THE BORROWER AND THE LENDER ACKNOWLEDGE THAT NO REPRESENTATIONS, AGREEMENTS OR PROMISES WERE MADE BY THE OTHER PARTY OR ANY OF ITS REPRESENTATIVES OTHER THAN THOSE REPRESENTATIONS, AGREEMENTS OR PROMISES SPECIFICALLY CONTAINED HEREIN. THIS AGREEMENT, AND THE NOTE AND SECURITY INSTRUMENT (AS AMENDED HEREBY) SETS FORTH THE ENTIRE UNDERSTANDING BETWEEN THE PARTIES. THERE ARE NO UNWRITTEN AGREEMENTS BETWEEN THE PARTIES.

Executed effective as of the day and year first above written.

Date _____    KEVIN JERRON MATTHEWS _____    _____

_____

Date _____    _____    _____

_____

Date _____    _____    _____

_____

Date _____    _____    _____

Identifier: ████████        Doc Type:LSMIT

**BORROWER ACKNOWLEDGMENT**

State of _____

County of _____

On _____, before me _____, personally appeared KEVIN
JERRON MATTHEWS    , personally known to me (or proved to me on the basis of satisfactory evidence) to be
the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal

_____

Notary Public
My Commission Expires:_____

Identifier: ▬▬▬▬▬        Doc Type:LSMIT

_____
Mortgage Electronic Registration Systems, Inc as nominee for Lender

Date: _____

**LENDER ACKNOWLEDGMENT**

State of    IOWA
County of

On this ____day of _____, 20____, before me, the undersigned, a Notary Public in and for said county and state, personally appeared _____, personally known to me or identified to my satisfaction to be the person who executed the within instrument as Authorized Officer of Mortgage Electronic Registration Systems, Inc as nominee for Lender and they duly acknowledged that said instrument is the act and deed of said entity, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

Witness my hand and official seal.

_____
Notary Public

My Commission Expires: _____

Identifier: ▮▮▮▮▮    Doc Type: SCORR

USAA
PO Box 205
Waterloo, IA 50704-0205

00856
KEVIN JERRON MATTHEWS
C/O CIVIL JUSTICE INC
520 W FAYETTE STREET, ST. 410
BALTIMORE MD 21201

Property Address:

3216 EAST NORTHERN PARKWAY
BALTIMORE MD 21214

Account Number: ▮▮▮▮▮

**Please check the box that best describes your situation.**

**I want to:**
Keep the property ☐
Sell the property ☐

**This home is:**
Where I Live ☐
Second Home ☐
Investment Property ☐

**I, or a member of my family is or has been on active duty with our military** ☐
*You may be eligible for benefits and protection under the Servicemembers Civil Relief Act (SCRA)*

**I need help because I have/am...**
A loss of income ☐
Increase in expenses ☐
Can't sell/rent my home ☐
Marital problems ☐
Unemployed ☐
Incarceration ☐
Damage to the home due to hurricane, flood, earthquake, etc ☐
Death or illness of family member ☐
Other ☐

Dear KEVIN JERRON MATTHEWS:

We understand how difficult it may be to ask for help when you need it the most.

The best way to find out what options are available is to help us understand your financial situation by completing the attached application package, including all the required documentation. Upon receipt of the documentation we will assign a relationship manager to assist you throughout the process.

As an alternative, if you are experiencing any difficulty completing the full package you may complete this form by checking all of the appropriate boxes to the right. This will help us identify potential programs available to meet your needs. Once we have received this information, we will assign a Relationship Manager to personally help you through this process.

Once your relationship manager is assigned they will stay with you throughout the process and assist with all documentation needs as well as explain every step of the process.

We look forward to working through this with you.

Thank you.

Loan Servicing.

**Fax this letter with your documentation attached to 1-866-355-6034, -or- Mail to: Loss Mitigation, 233 Gibraltar Rd., Suite 600, Horsham PA 19044**

What is the best number/time to reach you? ( ___ ) _____ - _____

**EXHIBIT**
tabbies
4

Identifier: ███████        Doc Type:SCORR

**Consider all options.** We will explore all options to help you keep your home. If you do not wish to stay in your home, we can help make your transition to a new home easier. Following is a brief description of available options:

- <u>Repayment Plan</u>: If you have experienced a temporary loss of income or increase in expenses but can now afford to make higher payments, we may be able to develop a repayment plan.

- <u>HAMP Modification</u>: This is an important Federal Program designed to assist you in obtaining an affordable mortgage payment. We will review your monthly income and housing costs -- including any past due payments -- and determine an affordable mortgage payment.

- <u>Other Loan Modifications</u>: If you are not able to make higher monthly payments but can still afford your current mortgage payment, we may be able to modify your loan.

- <u>Short Sale</u>: If the value of your home has declined, you may be able to sell it for less than the full amount due and eliminate your mortgage.

- <u>Deed in Lieu of Foreclosure</u>: If you have tried to sell your property for 90 days, you may be able to voluntarily return the deed to USAA to satisfy your debt and avoid foreclosure.


<u>Notice Regarding Foreclosure Scams</u>:

- There is never a fee to participate in or learn more about our Modification Programs. To locate a HUD-approved counselor, visit: http://www.hud.gov/offices/hsg/sfh/hcc/fc/
- Beware of any person or organization that asks you to pay a fee in exchange for housing counseling services or modification of a delinquent loan.
- Beware of anyone who says they can "save" your home if you sign or transfer over the deed to your house. Do not sign over the deed to your property to any organization or individual unless you are working directly with your mortgage company to forgive your debt.
- Never make your mortgage payments to anyone other than your mortgage company without their approval.


<u>Please Note</u>:

Documentation must be received 7 days prior to the scheduled foreclosure sale date. If your property is in the state of Florida, a complete package must be received 30 business days prior to the scheduled foreclosure sale date.

Identifier ▮▮▮▮▮▮    Doc Type: SCORR



| Home Affordable Modification Program (HAMP): |
| :---: |
| **IMPORTANT REQUIREMENTS** |

**Step 1.** __Financial Package:__ (complete and return the _entire_ financial package to apply for assistance)

- √ Financial Analysis Form (including Hardship Affidavit)
- √ Dodd Frank Certification
- √ Acknowledgement and Agreement
- √ IRS Form 4506T-EZ

- √ Most recent __signed__ tax return or __evidence of electronic signature__
- √ Proof of Income Documentation
- √ Proof of Occupancy Documentation
- √ Proof of Homeowners or Condo Association Dues

**Step 2.** __Trial Workout:__ (sometimes known as a temporary repayment plan)

- √ Make specified trial payments per the plan or your loan may not be modified
- √ Signed flood certification document (if required)

**Step 3.** __Permanent Modification:__ (once you have successfully completed steps 1 and 2, you will be reviewed for a permanent modification)

- √ If approved, you will receive the permanent modification document
- √ Sign, notarize (only if required) and return entire modification agreement within 7 days of receipt

**If you fail to comply with __any__ of these steps; your modification request will be canceled and you will not be eligible for consideration under HAMP in the future.**

Identifier [redacted]    Doc Type: SCORR

USAA
PO Box 205
Waterloo, IA 50704-0205

December 20, 2011

**Second Notice!**
*You were previously provided information
regarding the financial analysis forms on December 05, 2011.
Please be advised you have until January 04, 2012
to return all required documentation.*

00625
KEVIN JERRON MATTHEWS
C/O CIVIL JUSTICE INC
520 W FAYETTE STREET, ST. 410
BALTIMORE MD 21201

Property Address:

3216 EAST NORTHERN PARKWAY
BALTIMORE MD 21214

Account Number [redacted]

**Please check the box that best
describes your situation.**

**I want to:**
Keep the property    ☐
Sell the property    ☐

**This home is:**
Where I live    ☐
Second Home    ☐
Investment Property    ☐

Dear KEVIN JERRON MATTHEWS:

We understand how difficult it may be to ask for help when you
need it the most.

The best way to find out what options are available is to help us
understand your financial situation by completing the attached
application package, including all the required documentation.
Upon receipt of the documentation we will assign a relationship
manager to assist you throughout the process.

As an alternative, if you are experiencing any difficulty
completing the full package you may complete this form by
checking all of the appropriate boxes to the right. This will help
us identify potential programs available to meet your needs.
Once we have received this information, we will assign a
Relationship Manager to personally help you through this
process.

Once your relationship manager is assigned they will stay with
you throughout the process and assist with all documentation
needs as well as explain every step of the process.

We look forward to working through this with you.

Thank you.

Loan Servicing

**I, or a member of my family is or has been
on active duty with our military** ☐
*You may be eligible for benefits and
protection under the Servicemembers
Civil Relief Act (SCRA)*

**I need help because I have/am...**
A loss of income    ☐
Increase in expenses    ☐
Can't sell/rent my home    ☐
Marital problems    ☐
Unemployed    ☐
Incarceration    ☐
Damage to the home due to
hurricane, flood, earthquake, etc    ☐
Death or illness of family member    ☐
Other    ☐

**Fax this letter with your documentation attached to 1-866-355-6034, -or- Mail to: Loss Mitigation, 233
Gibraltar Rd., Suite 600, Horsham PA 19044**

**What is the best number/time to reach you? (          )          -**

**EXHIBIT**
babler
5

Identifier: [REDACTED]        Doc Type:SCORR

**Consider all options.** We will explore all options to help you keep your home. If you do not wish to stay in your home, we can help make your transition to a new home easier. Following is a brief description of available options:

- Repayment Plan: If you have experienced a temporary loss of income or increase in expenses but can now afford to make higher payments, we may be able to develop a repayment plan.

- HAMP Modification: This is an important Federal Program designed to assist you in obtaining an affordable mortgage payment. We will review your monthly income and housing costs – including any past due payments – and determine an affordable mortgage payment.

- Other Loan Modifications: If you are not able to make higher monthly payments but can still afford your current mortgage payment, we may be able to modify your loan.

- Short Sale: If the value of your home has declined, you may be able to sell it for less than the full amount due and eliminate your mortgage.

- **Deed in Lieu of Foreclosure**: If you have tried to sell your property for 90 days, you may be able to voluntarily return the deed to USAA to satisfy your debt and avoid foreclosure.

Notice Regarding Foreclosure Scams:

- There is never a fee to participate in or learn more about our Modification Programs. To locate a HUD-approved counselor, visit: http://www.hud.gov/offices/hsg/sfh/hcc/fc/
- Beware of any person or organization that asks you to pay a fee in exchange for housing counseling services or modification of a delinquent loan.
- Beware of anyone who says they can "save" your home if you sign or transfer over the deed to your house. Do not sign over the deed to your property to any organization or individual unless you are working directly with your mortgage company to forgive your debt.
- Never make your mortgage payments to anyone other than your mortgage company without their approval.

Please Note:

Documentation must be received 7 days prior to the scheduled foreclosure sale date. If your property is in the state of Florida, a complete package must be received 30 business days prior to the scheduled foreclosure sale date.

This is an attempt to collect a debt and any information obtained will be used for that purpose

IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

Laura H. G. O'Sullivan, et al.  Substitute Trustees
            Plaintiffs

       vs.                         Civil No. 24O12000286

Kevin Jerron Matthews      Defendant(s)


LINE TO FILE FORECLOSURE DOCUMENTS

Madam Clerk:

Enclosed please find the following documents:

Final Loss Mitigation Affidavit and Request for Mediation form


                              Erin M. Brady, Esq.
                              Attorney for Substitute Trustees
                              312 Marshall Avenue, Suite 800
                              Laurel, MD 20707
                              301-490-3361


Certificate of Service

    I hereby certify that a copy of the foregoing documents submitted to the court were mailed, first class, postage prepaid and certified mail, return receipt, this _____ day of _____, 2012 to:

Kevin Jerron Matthews
C/o Civil Justice Inc
520 W. Fayette Street St. 410
Baltimore, MD 21201

Kevin Jerron Matthews
P O BOX 3660
Baltimore, MD 21214

Kevin Jerron Matthews
3216 East Northern Parkway
Baltimore, MD 21214

                              Erin M. Brady

2011-17613

EXHIBIT
6

# REQUEST FOR FORECLOSURE MEDIATION
## (Instructions)

**Name(s) of Homeowner: Kevin Jerron Matthews**
**Property Address: 3216 East Northern Parkway, Baltimore, Maryland 21214**

### What is foreclosure mediation?

Foreclosure mediation is a process that brings together a homeowner in foreclosure, a person representing the mortgage company who is able to act on their behalf, and a neutral third party judge. The goal of foreclosure mediation is to have a face-to-face meeting to discuss options to avoid foreclosure. There may be a number of options available at foreclosure mediation, however, some loss mitigation programs do have specific qualification standards for the homeowner. Making a request for foreclosure mediation does not guarantee that you will receive a loan modification or other relief.

## ATTENTION HOMEOWNER:

## *** YOU HAVE ONLY 25 DAYS TO RESPOND ***

Complete the attached form to request a face-to-face meeting with your mortgage company to discuss options to avoid foreclosure. You only have 25 days to send your original signed request to the circuit court in the addressed envelope provided.

### If you need help filling out this form:

### PLEASE CONTACT THE MD HOPE HOTLINE AT
### 877-462-7555 OR VISIT WWW.MDHOPE.ORG TO FIND A
### HOUSING COUNSELOR OR FREE LEGAL SERVICE NEAR YOU

Checklist:

- Carefully read the entire request for foreclosure mediation application.

- **Application** (on next page) – Initial each statement to confirm that you have read and understand each statement, then sign and date. Check the "Yes" box if you would like a Department of Housing and Community Development representative or a housing counselor to contact you. Sign and date the Certificate of Service.

- Make two copies of the completed document.

- Send the original signed document to the circuit court in the addressed envelope included along with the $50 filing fee. **DO NOT SEND CASH.** Make the check or money order payable to "Clerk of the Circuit Court." Consider sending your request for foreclosure mediation and payment by certified mail or return receipt requested mail.

- Send one copy of the completed form to the foreclosure attorney representing your mortgage company in the addressed envelope provided.

- Keep the second copy for your records.

Kevin Jerron Matthews
3216 East Northern Parkway
2011-17613

Page 1 of 3

# REQUEST FOR FORECLOSURE MEDIATION

## (Application)

**Circuit Court: Baltimore City**
**Case No.: 24O12000286**
**Name and Address of the Secured Party**
**or Representative of Secured Party:** _____
**Name and Address of the Borrower(s):**
Kevin Jerron Matthews
C/o Civil Justice Inc
520 W. Fayette Street St. 410
Baltimore, MD 21201

Kevin Jerron Matthews
P O BOX 3660
Baltimore, MD 21214

Kevin Jerron Matthews
3216 East Northern Parkway
Baltimore, MD 21214

**Initial each item below to acknowledge that you have read and understand each statement.**
If you do not understand the information, please contact the MD Hope Hotline at 877-462-7555
or visit www.mdhope.org to find a housing counselor or free legal service near you.

_____ I am requesting foreclosure mediation to see if I qualify for a loan modification or other alternative to a foreclosure sale of my home.

_____ I have enclosed my $50 fee for filing this Request for Foreclosure Mediation. (Make checks payable to the "Clerk of the Circuit Court." **DO NOT SEND CASH.**)

> **NOTE:** If you qualify for free legal services under the Maryland Legal Services Guidelines, you may request a waiver of your foreclosure mediation fee. You must submit a completed Request for Waiver of Filing Fee for Foreclosure Mediation form (available at http://mdcourts.gov/courtforms/circuit/cc080.pdf) together with this request for foreclosure mediation.

_____          _____
Signature of Homeowner                                      Date

_____
Print Name

**I would like to be contacted by a Department of Housing and Community Development representative or a housing counselor:    YES    NO**

If so, please provide your preferred contact information: _____

Kevin Jerron Matthews                                                         Page 2 of 3
3216 East Northern Parkway
2011-17613

## CERTIFICATE OF SERVICE

I certify that I have sent a copy of this Request for Foreclosure Mediation to the Clerk of the Circuit Court and to the secured party, or the representative of the secured party, by regular U.S. mail, postage pre-paid, at the address listed at the top of this form.  I have served the party that brought this foreclosure action by sending this Request for Foreclosure Mediation by regular U.S. mail, postage pre-paid, to its foreclosure attorney in (or at the address on) the addressed envelope provided with this form.

_____        _____
Signature of Homeowner                          Date

_____
Print Name

Kevin Jerron Matthews                                           Page 3 of 3
3216 East Northern Parkway
2011-17613

## FINAL LOSS MITIGATION AFFIDAVIT

Case Number: _24012000286_
Date of Filing with Court: _____
Property Owner(s): **Kevin Jerron Matthews**
Property Address: **3216 East Northern Parkway, Baltimore, Maryland 21214**

My name is _Anna Beck_ . I am authorized to act on behalf of secured party who is the holder of the beneficial interest in the mortgage or deed of trust which is secured by property at the address listed above. The information in this affidavit is derived from records of the secured party that were made at or near the time of the occurrence of the matters set forth below by, or from information transmitted by, a person with knowledge of those matters. These records were produced and/or maintained in the course of the regularly conducted activity of the secured party as a regular practice of the secured party, and I state the following:

The secured party conducted a loss mitigation analysis ☒ YES ☐ NO
(Check which applies)

If the secured party conducted a loss mitigation affidavit analysis, describe all loss mitigation programs evaluated, and describe why the borrower(s) did not qualify for each loss mitigation program. If the secured party did not conduct a loss mitigation analysis, describe all reasons why a loss mitigation analysis was not conducted, and describe why the borrower(s) did not qualify for a loss mitigation program:

_See attached timeline_

I solemnly affirm under the penalties of perjury and upon personal knowledge based on review of the records described herein or attached hereto that the contents of this affidavit are true.

By: _Anna Beck_                          _3-1-12_
Signature                                Date

GMAC Mortgage, LLC

Name: _Anna Beck_

Title: _analyst_

Kevin Jerron Matthews                                    Page 1 of 1
3216 East Northern Parkway
2011-17613

# LOAN# █████████

- 12-29-09 Workout package requested to be sent
- 3-12-10 Workout package requested to be sent
- 3-01-11 Workout package received
- 3-08-11 Traditional modification approved
- 4-04-11 Traditional modification denied due to borrower failed to return signed/executed documents
- 12-05-11 Workout package requested to be sent
- 12-22-11 Certified HMP solicitation sent

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

**LAURA H.G. O'SULLIVAN,** *et al.*

    Plaintiffs

v.                                                         Case No. 24O12000286

**KEVIN J. MATTHEWS**

    Defendant

---

**KEVIN J. MATTHEWS**

    Counter Plaintiff

v.

**GMAC MORTGAGE LLC,** *et al.*

    Counter Defendants

### REQUEST FOR FORECLOSURE MEDIATION

Counter Plaintiff/Defendant Kevin J. Matthews, by his undersigned counsel, does
hereby request foreclosure mediation to see if he qualifies for a loan modification
or other alternative to a foreclosure sale of his home and says further:

1. In support of this request a check in the sum of $50 for filing this Request
   for Foreclosure mediation is attached hereto (made payable to the Clerk of
   the Circuit Court).

2. Because the Plaintiffs and the predecessors in interest and their privies
   have misrepresented the purported secured party of the Counter
   Plaintiff/Defendant's mortgage loan subject to this action, Counter
   Plaintiff/Defendant is not able to identify the actual name and address of



EXHIBIT

7

1

the true and accurate secured party of his loan.

3. Counter Plaintiff/Defendant Kevin J. Matthews does not request at this
   time any contact by a Department of Housing and Community
   Development representative or a housing counselor.

4. Although required to send the Final Loss Mitigation Affidavit to the
   undersigned counsel of record for the Counter Plaintiff/Defendant Kevin J.
   Matthews pursuant to Rule 1-321(a), the Counter Plaintiff/Defendant
   would note that as demonstrated on the certificate of service filed by the
   Plaintiffs no such service was performed by the Plaintiffs.  In addition it
   appears the Plaintiffs did not send a copy to any other the named Counter
   Defendants in this action as well.

WHEREFORE, Counter Plaintiff/Defendant Kevin J. Matthews does hereby
request that his Request for Foreclosure Mediation be granted and the
foreclosure matter be referred to the Office of Administrative Hearings
pursuant to Md. Code Ann., Real Prop. § 7-105.1.

Respectfully Submitted,

Phillip R. Robinson
Scott Borison
Legg Law Firm LLC
5500 Buckeystown Pike
Frederick, MD  21703
(301) 620-1016

Attorneys for Counter Plaintiff/Defendant

2

## CERTIFICATE OF SERVICE

I hereby certify and give notice that a copy of the foregoing Request for

Mediation to the Clerk of the Circuit Court of Baltimore City, Maryland, was sent

by regular U.S. mail, postage pre-paid, was sent on this day the 20th of April 2012

to the following parties in this action:

Erin M. Brady, Esq.
312 Marshall Avenue, Suite 800
Laurel, MD 20707
*Attorney for the Plaintiffs/Substitute Trustees*

Carrie Ward
4520 East West Highway, Suite 200
Bethesda, MD 20814
*Counter Defendant*

GMAC Mortgage LLC
MAILED TO:
CSC-Lawyers Incorporating Service Company, Resident Agent
7 St. Paul Street, Suite 1660
Baltimore, MD 21202
*Counter Defendant*

Jeffrey Stephan
42 Lenape Drive
Sellersville, PA 18960-1568
*Counter Defendant*

Phillip Robinson

Eric A. Frechtel

Direct Dial: 202-719-8249
Direct Fax: 202-719-8349
efrechtel@babc.com



BRADLEY ARANT
BOULT CUMMINGS LLP

June 11, 2012

**VIA E-MAIL AND FIRST-CLASS MAIL**

Phillip R. Robinson, Esquire
Legg Law Firm, LLC
5500 Buckeystown Pike
Frederick, MD 21703

Re:    *Matthews v. GMAC Mortgage, LLC, et al.;* Circuit Court for Baltimore City,
Maryland, Case No. 24-O-12-000286 FC

Dear Mr. Robinson:

It is my understanding that Mr. Matthews continues to live in the home that is the subject
of the referenced foreclosure litigation. If this is not the case, please advise. Assuming my
understanding is correct, GMAC Mortgage, LLC wishes to exhaust every effort to give your
client a loan modification. Accordingly, attached hereto is a financial package for your client to
complete and return for my client's review in order to determine whether Mr. Matthews qualifies
for a loan modification. This gesture is made without prejudice to our position that the
foreclosure proceeding is proper. Indeed, as you may know, my client has undertaken loss
mitigation efforts previously, but your client has been unresponsive. In any event, we look
forward to your response and to receipt of the completed package. Please let me know if you
have any questions or wish to discuss.

Sincerely yours,

Eric A. Frechtel

Enclosure

cc:    GMAC Mortgage, LLC

**EXHIBIT**

8

5/24009.1

1615 L Street, N.W., Suite 1350   Washington D.C. 20036   PHONE: 202.393.7150   FAX: 202.347.1684   BABC.COM

**Dear Homeowner:**

We understand how difficult it may be to ask for help when you need it the most. We want you to know that we are here to help you.

The best way to find out what options are available is to help us understand your financial situation by completing the attached application package, including all the required documentation and returning it to us within 15 days.

If for any reason you experience difficulty completing the entire application package, as an alternative, you may simply complete this form by checking all of the appropriate boxes to the right or call us for assistance. This will help us assist you with identifying potential programs available to meet your needs.

Once we have received this information from you, we will assign a Relationship Manager to personally help you through this process. Once your Relationship Manager is assigned, they will stay with you throughout the process and assist with anything you may need.

Please do not delay in returning this information. We look forward to working with you.

Thank you.

Loan Servicing

| Please check the box(es) that best describe your situation. | | |
|---|---|---|
| **I want to:** | | |
| ☐ Keep the Property | ☐ | Not Keep the Property |
| **This home is:** | | |
| ☐ Where I live | ☐ | Second Home |
| ☐ Investment (Rental) Property | | |
| **Military Service Members** | | |
| ☐ Check here if you or a member of your family is or has been on active duty with the military. *You may be eligible for benefits and protection under the Servicemembers Civil Relief Act (SCRA) | | |
| **I need help because I have/am:** | | |
| ☐ A loss of income | ☐ | Increase in expenses |
| ☐ Can't sell my home | ☐ | Can't rent my home |
| ☐ Marital problems | ☐ | Damage to the home due to hurricane, flood, earthquake, etc. |
| ☐ Unemployed | ☐ | Incarceration |
| ☐ Death of family member | ☐ | Illness of family member |
| ☐ Other | | |

---

Fax this letter with your documentation attached to 1-866-709-4744, or Mail to: Loss Mitigation, 233 Gibraltar Rd., Suite 600, Horsham, PA 19044

What is the best phone number to reach you? (   ) _____ - _____

What is the best time to reach you? _____ am/pm    Time Zone _____

☐ Check here if your primary language is Spanish. This information will be utilized to attempt to assign you a Spanish-speaking Relationship Manager when available, after your documentation is received. *Marque aquí, si su lengua principal es el Español. Esta información será utilizada para tratar de asignar un Gerente de Relaciones que hable Español cuando esté disponible, después de que su documentación haya sido recibida. Si necesita ayuda para completar esta documentación, por favor llamé a nuestro departamento de servicio al cliente.*

---

Consider all options. We will explore all options to help you keep your home. If you do not wish to stay in your home, we can help make your transition to a new home easier. Following is a brief description of available options.

- **Repayment Plan** – If you have experienced a temporary loss of income or increase in expenses but can now afford to make higher payments for a period of time, we may be able to develop a repayment plan.
- **HAMP Modification** – This is an Important Federal Program designed to assist you in obtaining an affordable mortgage payment. We will review your monthly income and housing costs – including any past due payments – and determine an affordable mortgage payment.
- **Traditional Loan Modification** – If you are not able to make higher monthly payments but can still afford your current mortgage payment, we may be able to modify your loan.
- **Short Sale** – If the value of your home has declined, you may be able to sell it for less than the full amount due and eliminate your mortgage.
- **Deed in Lieu of Foreclosure** – You may be able to voluntarily return the deed to us to satisfy your debt and avoid foreclosure.

V050212

**Notice Regarding Foreclosure Scams:**

- There is never a fee to apply for or learn more about our Modification Programs. To locate a HUD-approved counselor, visit: http://www.hud.gov/offices/hsg/sfh/hcc/fc/
- Beware of any person or organization that asks you to pay a fee in exchange for housing counseling services or modification of a delinquent loan.
- Beware of anyone who says they can "save" your home if you sign or transfer over the deed to your house. Do not sign over the deed to your property to any organization or individual unless you are working directly with your mortgage company to forgive your debt.
- Never make your mortgage payments to anyone other than your mortgage company without their approval.

**Please Note:**

- All necessary documentation must be received 7 business days prior to the scheduled foreclosure sale date.
- This is an attempt to collect a debt and any information obtained will be used for that purpose.

## Important Tips and Reminders

✓ The enclosed package encompasses requirements for all available programs, including the Government's Making Home Affordable Program. For information and eligibility requirements under the Making Home Affordable program, visit www.makinghomeaffordable.gov website.

✓ Please be aware we will not be able to process your request until all parts of the application have been completed including signatures and all necessary supporting documentation has been supplied.

✓ Please continue to make your monthly payment. If assistance is needed, it is recommended that you contact a credit counselor who is trained to guide you through your current financial situation. You can access www.hud.gov or call 800-225-5342 for more information regarding credit counseling.

✓ You may receive phone calls or letters from our office asking for a payment while we consider any option that might be available.

✓ All modifications require an escrow account for the payment of taxes and insurance. If your loan does not currently include an escrow account for the payment of taxes and insurance, one will be added.

✓ While being reviewed for a workout (other than the Making Home affordable program). A fee to validate the value of the property may be assessed at your expense (approximate cost $100-$150).

✓ If approved for a permanent modification (other than the Making Home Affordable program), a recording fee may be assessed to the account at your expense. The cost varies by state and is determined by your state.

✓ As a condition of the modification, you may be required to enroll in an electronic payment program.

## Frequently Asked Questions

**How long will it take to process my modification request and determine if I qualify for the program?**

- We will review your request as quickly as possible. Once the package is returned to our office, Loss Mitigation will contact you within 10 business days advising the package was received and notifying you if additional information is required.
- Within 30 calendar days from the date a complete package is received, you will be notified whether the modification option is available to you.
- If you are not eligible for a modification, the reason for denial will be provided.
- Please note, however that your modification will not be effective unless you meet all of the applicable conditions.

**I pay my car insurance on a semi-annually or annual basis. How should I list that?**

- Please make sure that the amount of the expenses is broken down to a monthly premium amount.
- Example: if the car insurance is $500 for 6 months to determine the monthly premium divide $500 by 6 months ($83.33).

V050212

## Fax Cover Sheet

This page should be returned to us with your completed financial analysis form.
Please include the account number on every page of your returned package

| To: Loss Mitigation | |
|---|---|
| From: | Account Number _____ |
| Fax to: 1-866-709-4744 | or mail to: Loss Mitigation |
| | 233 Gibraltar Road Suite 600 |
| | Horsham, PA 19044 |

**All of the following information is required to determine eligibility if keeping or selling the property:**

| | | | |
|---|---|---|---|
| ☐ | Financial Analysis Form (Section 1) | ☐ | Documentation to verify all of the income of each borrower. (Please see the Income Validation chart in section 5 for the type of documentation required for each type of income) |
| ☐ | Hardship Affidavit (Section 8) | ☐ | A signed and dated Acknowledgement and Agreement (Section 11) |
| ☐ | A signed and dated Dodd-Frank/Rental Certification (If applicable) (Section 9 & 10) | ☐ | Documentation confirming occupancy on your primary residence -- for example, a recent utility bill in your name at the property address. |
| ☐ | Documentation verifying expenses for Homeowner or Condominium Association Dues for condominiums and Co-Ops on all properties. (If applicable). | ☐ | A Signed and dated IRS Form 4506T-EZ (Request for transcript of Tax Return). Borrowers who filed their tax returns jointly may send in one IRS Form 4506T-EZ signed and dated by both the joint filers. This form is required even if you have not filed or are not required to file tax returns. |

**If you want to sell the property, please also include:**

| | | | |
|---|---|---|---|
| ☐ | Copy of the listing agreement | ☐ | Copy of the sales contract, if available |
| ☐ | Copy of the estimated Settlement Statement (HUD1), if available | ☐ | Signed Third Party Authorization Form (if applicable) |

### Section 1: Borrowers Information (Required)

| Borrower | Co-Borrower |
|---|---|
| Borrowers Name | Co-Borrowers Name |
| Social Security Number       Date of Birth | Social Security Number       Date of Birth |
| Home Phone Number With Area Code | Home Phone Number With Area Code |
| Cell or Work Phone Number With Area Code | Cell or Work Phone Number With Area Code |
| Email Address | Email Address |

Mailing Address

Property Address (If Same As Mailing Address, Write Same)

How many single family properties other than your primary residence you or any co-borrower(s) own individually, jointly, or with others? _____
Has the mortgage on your primary residence ever had a HAMP trial period plan or permanent modification? ☐ Yes   ☐ No
Has the mortgage on any other property that you or any co-borrower own had a permanent HAMP modification ☐ Yes   ☐ No   If "Yes" how many _____
Are you or any co-borrower currently in or being considered for a HAMP trial period plan on a property other than your primary residence? ☐ Yes-   ☐ No
I want to:   ☐ Keep the Property    ☐ Not Keep the Property       The property is my: ☐ Primary Residence ☐ Second Home ☐ Rental

The property is:   ☐ Owner Occupied   ☐ Renter Occupied   ☐ Vacant
If Owner Occupied include a recent utility bill in your name at the property address. If Renter Occupied, include a copy of the current lease agreement

Is the property listed for sale?   ☐ Yes   ☐ No  If yes, Date listed: _____
Is the property for sale by owner?   ☐ Yes   ☐ No
Real Estate Agent Name: _____   Real Estate Agent Phone Number: _____
Have you received an offer on the property? ☐ Yes   ☐ No  If yes, Date of Offer: _____   Amount of Offer: _____
Have you filed for bankruptcy?   ☐ Yes   ☐ No  If yes, what chapter did you file? ?   ☐ Chapter 7  ☐ Chapter 13  Filing Date: _____
Bankruptcy Case Number: _____   Has your bankruptcy been discharged? ?   ☐ Yes   ☐ No
If there are additional Liens/Mortgages or Judgments on this property, please name the person(s), company or firm and their telephone numbers

| Lien Holder's Name/Servicer | Balance | Contact Phone Number | Loan Number |
|---|---|---|---|
| | | | |
| | | | |

Page 1

V050212

Borrower's Name_____    Account Number_____

## Section 2: Income/Expenses for Household (Required)

Include combined expenses from the borrower and co-borrower (if any).
If you include income and expenses from a household member who is not a borrower, please specify using a separate page if necessary.
If additional space is needed, please include an additional page.

### Monthly Household Income for Borrower 1 and Borrower 2

****ALL INCOME MUST BE DOCUMENTED****

You will be required to provide supporting documentation for any income you claim in this section. To determine what supporting documentation is **required** for each income type, please refer to the supporting documentation column below. Match the number listed in the supporting documentation column to the number listed in the Income Validation section (section 5) of this package.

| | Supporting Documentation | Borrower 1 | Borrower 2 |
|---|---|---|---|
| Gross Salary/Wages<br><br>Gross/Salary Wages = total monthly income before any tax withholding or employer deductions including part-time income. | 1 | □ Employed  □ Unemployed<br>**Income Frequency**<br>□ Bi-weekly      □ Weekly<br>□ Semi-monthly  □ Monthly<br>□ Other _____<br>$ _____ /monthly | □ Employed  □ Unemployed<br>**Income Frequency**<br>□ Bi-weekly      □ Weekly<br>□ Semi-monthly  □ Monthly<br>□ Other _____<br>$ _____ /monthly |
| Tips, commissions, housing allowance and/or bonus income. | 2 | **Income Frequency**<br>□ Bi-weekly      □ Weekly<br>□ Semi-monthly  □ Monthly<br>□ Other _____<br>$ _____ /monthly | **Income Frequency**<br>□ Bi-weekly      □ Weekly<br>□ Semi-monthly  □ Monthly<br>□ Other _____<br>$ _____ /monthly |
| Self Employed | 3 | $ _____ /monthly | $ _____ /monthly |
| Unemployment income | 4 | $ _____ /monthly | $ _____ /monthly |
| Child Support Income/Alimony income<br>*You are not required to disclose Child Support, Alimony, or Separate Maintenance Income, unless you choose to have it considered. | 5 | $ _____ /monthly | $ _____ /monthly |
| Social Security, Disability, Death Benefits, or Pension | 6<br>For short term disability use 7 | If entering income for disability select one of the following<br>□ Long Term    □ Short Term<br>$ _____ /monthly | If entering income for disability select one of the following<br>□ Long Term    □ Short Term<br>$ _____ /monthly |
| Other monthly income from Pensions, annuities, or Retirement plans. | 6 | $ _____ /monthly | $ _____ /monthly |
| Rental income from investment property | 8 | $ _____ /monthly | $ _____ /monthly |
| Rental income from room rent of primary residence | 9 | $ _____ /monthly | $ _____ /monthly |
| Contribution income from person(s) residing at the property. | 10 | $ _____ /monthly | $ _____ /monthly |
| Public assistance (Food Stamps, Welfare, etc.) | 10 | $ _____ /monthly | $ _____ /monthly |
| Other (Investment income, royalties, interest, dividends, trusts,, etc) | 11 | $ _____ /monthly | $ _____ /monthly |
| **Total Income (Gross)** | | $ | $ |

### Monthly Living Expenses (Primary Residence Expenses Only)

****Please make sure that all monthly expenses are broken down to a monthly amount.****

| | Borrower 1 | Borrower 2 | | Borrower 1 | Borrower 2 |
|---|---|---|---|---|---|
| Primary First Mortgage Payment | $ | $ | Medical Expenses | $ | $ |
| Primary Second Mortgage Payment | $ | $ | Out of pocket medical insurance premiums (not deducted from your paycheck) | $ | $ |
| Other Mortgage Payments | $ | $ | HOA/Condo Fees | $ | $ |
| Alimony Payments | $ | $ | Credit Card(s)/Installment Loans | $ | $ |
| Child Support Payments | $ | $ | Food/Household Supplies | $ | $ |
| Dependant Care Payment | $ | $ | Utilities/Water/Sewer/Phone(s)/Cable | $ | $ |
| Liens/Rents | $ | $ | Donations | $ | $ |
| Personal Loans/Student Loans | $ | $ | Property Taxes (if not escrowed) | $ | $ |
| Auto Loans/Lease | $ | $ | Insurance – Hazard, wind, flood, etc. (if not escrowed) | $ | $ |
| Auto Expenses (gas, maintenance, insurance, etc.) | $ | $ | Other | $ | $ |
| **(Please add columns 1 & 2 together for each borrower) Total Debt/Expenses** | | | | $ | $ |

### Household Assets

| | | | |
|---|---|---|---|
| Estimated Value of your primary property | $ | IRA/Keogh | $ |
| Estimated Value of Other Real Estate Owned | $ | 401K/ESOP Account(s) Balance | $ |
| Checking Account Balance | $ | Stocks/Bonds/CDs Balance | $ |
| Savings Account Balance | $ | Other Investments | $ |
| Life Insurance Cash Value | $ | **Total Assets** | $ |

V050212

Borrower's Name_____    Account Number_____

### Section 3: 3 Month Self Employment Income Statement (Profit and Loss Form)
### (Required only if you are self-employed or a 1099 wage earner)

For each borrower who is self-employed a Profit and Loss Statement is required for each business. If a Borrower has more than one business, we require a Profit and Loss Form for each business. The example document may be used to supply the required information.

Company Name _____    Percentage of ownership (if left blank, we will consider it 100% ownership.)

| Month and Year must be indicated. Use most recent consecutive months. | Month 1 Month____Year___ | Month 2 Month____Year____ | Month 3 Month____Year___ | Total Month____Year___ |
|---|---|---|---|---|
| Gross Profit | $ | $ | $ | $ |
| **Operating Expenses** | | | | |
| Advertising | $ | $ | $ | $ |
| Amortization | $ | $ | $ | $ |
| Auto Expenses | $ | $ | $ | $ |
| Bank Charges | $ | $ | $ | $ |
| Depreciation | $ | $ | $ | $ |
| Dues & Subscriptions | $ | $ | $ | $ |
| Employed Benefits | $ | $ | $ | $ |
| Insurance | $ | $ | $ | $ |
| Interest | $ | $ | $ | $ |
| Office Expenses | $ | $ | $ | $ |
| Payroll Taxes | $ | $ | $ | $ |
| Rent | $ | $ | $ | $ |
| Repairs & Maintenance | $ | $ | $ | $ |
| Salaries & Wages for Yourself | $ | $ | $ | $ |
| Salaries & Wages for Employees | | $ | $ | $ |
| Supplies | | $ | $ | $ |
| Taxes & Licenses | $ | $ | $ | $ |
| Telephone | $ | $ | $ | $ |
| Utilities | $ | $ | $ | $ |
| Other | $ | $ | $ | $ |
| **Total Operating Expenses** | $ | | $ | $ |
| Income Taxes | $ | | $ | $ |
| **Net Profit** | $ | | $ | $ |

### Section 4: Investment Property Schedule (Required only if you have Investment (rental) properties)

For each borrower who receives rental income from an investment property an Investment Property Schedule is required. If additional space is needed, please include an additional page with the same information listed below.

| Property Number | Property Street Address | Property City, Sate, and Zip Code | Number of Units (1,2,3,4, or 5+) | Status Circle All That Apply R- Rented V- Vacant PS- Pending Sale F- Foreclosure | Gross Monthly Rental Income | Monthly Mortgage Payment ( excluding taxes and insurance) | Monthly Insurance | Monthly Taxes | Monthly HOA/ Condo Dues (if applicable) |
|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | R  V  PS  F | | | | | |
| 2 | | | | R  V  PS  F | $ | $ | $ | $ | $ |
| 3 | | | | R  V  PS  F | | | | | |
| 4 | | | | R  V  PS  F | $ | $ | $ | $ | $ |
| 5 | | | | R  V  PS  F | $ | $ | $ | $ | $ |
| **Totals** | | | | | $ | $ | $ | $ | $ |

Page 3

V050212

Borrower's Name _____    Account Number _____

| Supporting Documentation | Type of Income | | Section 5: Income Validation (Required)<br>Documentation Required (May not be more than 90 days ) |
|---|---|---|---|
| 1 | Paid by an Employer (W-2) including part-time employment | ☐ | Copy of two most recent pay stubs from your employer including year to date information.  (not older than 90 days) |
| 2 | Other Earned Income (i.e. bonus, commission, housing allowance, and/or tips) | ☐ | Copy of third party documentation describing the nature of the income (i.e. employment contract and or printouts documenting tips) and indicating the income is not a one-time payout. |
| 3 | Self Employed or Receive a 1099 | ☐ | Copy of most recent quarterly or year-to-date Profit and Loss statement (See Section 3 for a sample of a 3 Month Self Employment Income Statement (Profit and Loss Form)) |
| | | ☐ | If you choose to use a form other than the Profit and Loss statement provided, please be sure to include the following:<br>• Business Name • Borrower name(s) • Income and Expenses provided must be for three most recent    consecutive months • Gross Profit, Net Profit, and Itemized Expenses for each month (Indicate the month and year if utilizing your own profit and loss form) |
| | | ☐ | The most recent year's signed tax return |
| | | ☐ | Copies of two most recent bank statements. (Again not older than 90 days) |
| 4 | Unemployment | ☐ | Copy of benefits statement or letter from the provider that states the amount, frequency, and duration of the benefit. |
| | | ☐ | Documentation must show receipt of unemployment benefits have begun or will begin within 60 days. |
| 5 | Child Support or Alimony<br>*You are not required to disclose Child Support, Alimony, or Separate Maintenance income, unless you choose to have it considered | ☐ | Copy of divorce decree, separation agreement, or other legal written agreement filed with the court that shows the amount of the award and period of time over which it will be received |
| | | ☐ | Copies of two most recent bank statements verifying deposit amounts or other documentation (i.e. 2 copies of checks) showing receipt of child support income. (Again not older than 90 days) (You are not required to disclose Child Support, Alimony, or Separate Maintenance Income, unless you choose to have it considered) |
| 6 | Social Security, Disability, Death Benefits, Annuities, retirement plans, or Pension | ☐ | Copy of benefits statement or letter from the provider that states the amount , frequency, and the start and end date of the benefit. |
| | | ☐ | Copies of two most recent bank statements verifying deposit amounts or other documentation (i.e. 2 copies of checks) showing receipt of benefit income. (Again not older than 90 days) |
| 7 | Short Term Disability (6 months or less) | ☐ | Copy of benefits statement or letter from the provider that states the amount , frequency, and the start and end date of the benefit. |
| | | ☐ | Copy of two most recent pay stubs, prior to going on short term disability, from your employer including year to date information. |
| 8 | Rental Income From an Investment Property | ☐ | Copy of most recent federal tax return will all schedules, Including Schedule E-Supplemental Income and Loss. |
| | | ☐ | Current lease agreement(s) for all investment properties |
| | | ☐ | Copied of two most recent bank statements verifying deposit amounts or other documentation (i.e. 2 copies of checks) showing receipt of income. (Again not older than 90 days) See Section 4 for a sample of an Investment Property Schedule. |
| 9 | Rental Income from Room Rental of the Primary Residence | ☐ | Copy of Current Lease Agreement |
| | | ☐ | Copied of two most recent bank statements verifying deposit amounts or other documentation (i.e. 2 copies of checks) showing receipt of income. (Again not older than 90 days) |
| 10 | Income NOT Specified Above (Including Public Assistance, contribution income from person residing at the property, etc.). | ☐ | Signed letter from the person(s)/entity (company) that contributes the income showing the amount and frequency of the income. |
| | | ☐ | Copies of two most recent bank statements verifying deposits amounts or other documentation (i.e. 2 copies of check) showing receipt of income. (Again not older than 90 days) |
| | | ☐ | If receiving public assistance, include the award letter indicating the amount and frequency |
| 11 | Other Income (Investment, interest, dividends, royalties, trusts, etc.) | ☐ | Copies of two most recent bank statements verifying deposit amounts or other documentation (i.e. 2 copies of checks) showing receipt of income. (Again not older than 90 days) |

### Section 6: Information for Government Monitoring Purposes

If applying for the Making Home Affordable Modifications programs we encourage you to provide the following. Sharing this information is not a requirement of other modification programs. The Law provides that a Lender or Servicer may not discriminate on the basis of this information, or on whether or not you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this Lender or Servicer is required to note the information on the basis of visual observation or surname if you have made this request for a loan modification in person.

| BORROWER | | ☐ | I do not wish to furnish this information | CO-BORROWER | ☐ | I do not wish to furnish this information |
|---|---|---|---|---|---|---|
| Ethnicity: | | ☐<br>☐ | Hispanic or Latino<br>Not Hispanic or Latino | Ethnicity: | ☐<br>☐ | Hispanic or Latino<br>Not Hispanic or Latino |
| Race: | | ☐<br>☐<br>☐<br>☐<br><br>☐ | American Indian or Alaska Native<br>Asian<br>Black or African American<br>Native Hawaiian or Other Pacific Islander<br>White | Race: | ☐<br>☐<br>☐<br>☐<br><br>☐ | American Indian or Alaska Native<br>Asian<br>Black or African American<br>Native Hawaiian or Other Pacific Islander<br>White |
| Sex: | | ☐<br>☐ | Female<br>Male | Sex: | ☐<br>☐ | Female<br>Male |

### Section 7: Information Regarding Military Service Members

| Please check here if you or a family member is on active duty with our military. You may be eligible for benefits and protection under the Service Members Civil Relief Act "SCRA". | ☐ |
|---|---|

V050212

Borrower's Name _____    Account Number_____

## Section 8: Hardship Affidavit (Required)

I am having difficulty making my monthly payment because of financial difficulties created by (Please check all that apply)

By so doing we may require information as required by law, we are prohibited from obtaining or using medical information (for diagnosis, treatment or prognosis) in connection with your eligibility for credit. We will use as it when evaluating your request and it will in the estimate.

| | | | |
|---|---|---|---|
| ☐ Borrower Death | ☐ Death of Family Member | ☐ Military Service | ☐ Payment Adjustment |
| ☐ Illness of Borrower | ☐ Illness of Family Member | ☐ Inability to Sell Property | ☐ Inability to Rent Property |
| ☐ Tenant not Paying | ☐ Reduction of Income | ☐ Bankruptcy Filed | ☐ Unemployment |
| ☐ Marital Difficulties (Examples include going through a legal separation or filing for divorce) | ☐ Excessive Financial Obligations (Examples may be large medical expenses, credit card debt, or college tuition payments) | ☐ Business Failure (Examples would be loss of business income) | ☐ Ownership Transfer is Pending (If the home is in the process of being sold) |
| ☐ Incarceration (Sentenced to a city, county, state, or federal jail) | ☐ Property Problem (Anything that may be defective about the property such as a costly repair that needs to be made) | ☐ Casualty Loss (Unexpected event such as hurricane, flood, or earthquake that damages the property) | ☐ Other |

If selecting more then one of the boxes above, indicate the primary hardship. _____

Has the reason for your hardship been resolved? (circle one) Yes/No

We understand that times are tough. For us to better understand your current situation, please explain your hardship in detail in the lines provided below. An explanation is required.

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

If additional space is needed for explanation, please include an additional page.

V050212

Borrower's Name _____    Account Number_____

### Section 9: Dodd-Frank Certification

The following information is requested by the federal government in accordance with the Dodd-Frank Wall Street Reform and Consumer Protection Act (Pub. L. 111-203) **You are required to furnish this information.** The law provides that no person shall be eligible to begin receiving assistance from the Making Home Affordable Program, authorized under the emergency Economic Stabilization Act of 2008 (12 U.S.C. 5201 *et seq.*) or any other mortgage assistance program authorized or funded by that Act, if such person, in connection with a mortgage or real estate transaction, has been convicted, within the last 10 years, of any one of the following: (A) felony, larceny, theft, fraud, or forgery, (B) money laundering or (C) tax evasion.

I/we certify under penalty of perjury that I/we have not been convicted within the last 10 years of any one of the following in connection with a mortgage or real estate transaction:
(A) felony, larceny, theft, fraud, or forgery,
(B) money laundering or
(C) tax evasion

I/we understand that the servicer, the U.S. Department of the Treasury, or their agents may investigate the accuracy of my statements by performing routine background checks, including automated searched of federal, state and county databases, to confirm that I/we have not been convicted of such crimes. I/we also understand that knowingly submitting false information may violate Federal law.

This certification is effective on the earlier of the date listed below or the date received by the servicer.

### Section 10: Rental Property Certification (Required only if applying for a Loss Mitigation solution on a Investment (rental) property)
### (You must complete this certification if you are requesting a mortgage modification with respect to a rental property.)

☐    By checking this box and initialing below, I am requesting a mortgage modification under MHA with respect to the rental property described in section 4 and I hereby certify under penalty of perjury that each of the following statements is true and correct with respect to that property.

1.    I intend to rent the property to a tenant or tenants for at least five years following the effective date of my mortgage modification. I understand that the servicer, the U.S. Department of the Treasury or their respective agents may ask me to provide evidence of my intention to rent the property during such time. I further understand that such evidence must show that I used reasonable efforts to rent the property to a tenant or tenants on a year-round basis, if the property is or becomes vacant during such five-year period.

    Note: The term "reasonable efforts" includes, without limitation, advertising the property for rent in local newspapers, websites or other commonly used forms of written or electronic media, and/or engaging a real estate or other professional to assist in renting the property, in either case, at or below market rent.

2.    The property is not my secondary residence and I do not intend to use the property as a secondary residence for at least five years following the effective date of my mortgage modification. I understand that if I do use the property as a secondary residence during such five-year period, my use of the property may be considered to be inconsistent with the certifications I have made herein.

    Note: The term "secondary residence" includes, without limitation, a second home, vacation home or other type of residence that I personally use or occupy n a part-time seasonal or other basis.

3.    I do not own more than five (5) single-family homes (i.e. one-to-four unit properties) (exclusive of my primary residence).

**Notwithstanding the foregoing certification I may at any time sell the property, occupy it as my primary residence, or permit a legal dependent, parent, of grandparent to occupy it as such party's principal residence with no rent charged or collected, none of which will be considered to be inconsistent with the certifications made herein.**

This certification is effective on the earlier of the date listed below or the date the Request for Mortgage Assistance (RMA) is received by your servicer.

INITIAL HERE ▷▷ Initials: Borrower _____    Co-borrower _____

V050212

Borrower's Name _____     Account Number_____

**Section 4: Acknowledgement and Agreement (Required)**

In making this request for consideration to review my loan terms I/We certify under penalty of perjury:

1. That all of the information in this document is truthful and the event(s) identified is/are the reason that I/we need to request a modification of the terms of my/our mortgage loan, short sale, or deed-in-lieu of foreclosure.
2. I/we understand that the Servicer, the U.S. Department of the Treasury, owner or guarantor of my/our mortgage, or its agents may investigate the accuracy of my/our statements and /or may require me/us to provide supporting documentation. I/we also understand that knowingly submitting false information may violate Federal law.
3. I/we understand the servicer will obtain a current credit report on all borrowers obligated on the Note.
4. I/we understand that if I/we have intentionally defaulted on my/our existing mortgage, engaged in fraud or misrepresented any fact(s) in connection with this document, the servicer may cancel any Agreement under Making Home Affordable or any mortgage relief granted and my pursue foreclosure on my/our home.
5. I/we understand any fee to validate the value of the property will be assessed to the account.
6. I/we have not received a condemnation notice, and there has been no change in the ownership of the Property since I/we signed the documents for the mortgage that I/we want to modify.
7. I/we certify that I/we will obtain credit counseling if it is determined that my/our financial hardship is related to excessive debt. For purposes of the Making Home Affordable program "excessive debt" means that my/our debt-to-income ratio after the modification would be greater than or equal to 55%.
8. If I am eligible for a trial period plan, repayment plan, or forbearance plan, and I accept and agree to all terms of such plan, I also agree that the terms of the Acknowledgement and Agreement are incorporated into such plan by reference as if set forth in such plan in full. My first timely payment following my Servicer's determination and notification of my eligibility or prequalification for a trial period plan, repayment plan, or forbearance plan (when applicable) will serve as acceptance of the terms set forth in the notice sent to me that sets forth the terms and conditions of the trial period plan, repayment plan ,or forbearance plan.
9. I/we agree that when the Servicer accepts and posts a payment during the term of any repayment plan, trial period plan, or forbearance plan it will be without prejudice to, and will not be deemed a waiver of, the acceleration of my loan or foreclosure action and related activities shall not constitute a cure of my default under my loan unless such payments are sufficient to completely cure my entire default under my loan.
10. I/we am willing to provide all requested documents and to respond to all Servicers questions in a timely manner.
11. I/we understand that the Servicer will use the information in this document to evaluate my/our eligibility for a loan modification or short sale or deed-in-lieu of foreclosure, but the Servicer is not obligated to offer me/us assistance based solely on the statements in this document.
12. I/we agree that my prior waiver as to payment of escrow items in connection with my/our loan has been revoked.
13. I/we agree to the establishment of an escrow account and the payment of escrow items if an escrow account never existed on the loan.
14. I/we understand that the Servicer will collect and record personal information, including, but not limited to, my/our name, address, telephone number, social security number, credit score, income payment history, government monitoring information, and information about account balances and activity. I/we understand and consent to the disclosure of my/our personal information and the terms of any Making Home Affordable Agreement by Servicer to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Homeowner affordability and Stability Plan; (c) any investor, insurer, guarantor, or servicer that owns, insures, guarantees or services my/our first lien or subordinate lien (if applicable)mortgage loan(s); (d) companies that perform support services in conjunction with Making Home Affordable; and (e) any HUD certified housing counselor.
15. I/we agree that to be considered for the Making Home Affordable program , or any other program, all required documentation must be received no later than 7 business days prior to the scheduled foreclosure sale date.
16. NOTICE TO TEXAS BORROWERS: If the loan you are requesting to modify is a Texas Home Equity Loan or Line of Credit, your loan does not qualify to be modified. However, please proceed with submitting your final information so that we can examine your financials situation and determine if there is a repayment program available to you in order to prevent foreclosure.
17. I/we understand the Servicer will not refer the account to foreclosure or conduct the foreclosure sale if already referred, while it is being reviewed for the Making Home Affordable program unless required by your investor. The review will not begin until all required documentation is received.
18. I/we consent to being contacted, concerning this request for mortgage assistance at any cellular or mobile telephone number I have provided to the Lender. This includes text messages and telephone calls to my cellular or mobile telephone.

Please check one of the following before signing:

☐ My/Our property is owner occupied. I/we intend to reside in this property for the next twelve months
☐ My/Our property is not owner occupied.



_____    _____      _____    _____
Primary Borrower Signature    Date      Secondary Borrower Signature    Date

If you have questions about this document or the modification process, please call us at the phone number listed on your monthly account statement. If you need further counseling, you can call the Homeowner's HOPE™ Hotline at 1-888-995-HOPE (4673). The Hotline can help with questions about the program and offers free HUD-certified counseling services in English and Spanish.

**NOTICE TO BORROWERS**

Be advised that you are signing the following documents under penalty of perjury. Any misstatement of material fact made in the completion of these documents including but not limited to misstatement regarding your occupancy in your home, hardship circumstances, and/or income will subject you to potential criminal investigation and prosecution for the following crimes: perjury, false statements, mail fraud, and wire fraud. The information contained in these documents is subject to examination and verification. Any potential misrepresentation will be referred to the appropriate law enforcement authority for investigation and prosecution.

By signing the enclosed documents you certify, represent and agree that:

"Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the program, are true and correct."

If you are aware of fraud, waste, abuse, mismanagement or misrepresentations affiliated with the Troubled Asset Relief Program, please contact the SIGTARP Hotline by calling 1-877-SIG-2009 (toll-free), 202-622-4559 (fax), or www.sigtarp.gov. Mail can be sent to Hotline Office of the Special Inspector General for Troubled Asset Relief Program, 1801 L St. NW, Washington, DC 20220.

V050212

Borrower's Name _____         Account Number_____

| Form **4506T-EZ** | **Short Form Request for Individual Tax Return Transcript** | OMB No. 1545-2154 |
| --- | --- | --- |

(October 2009)

Department of the Treasury
Internal Revenue Service

Request may not be processed if the form is incomplete or illegible.

**Tip:** Use Form 4506T-EZ to order a 1040 series tax return transcript free of charge.

| 1a Name shown on tax return. If a joint return, enter the name shown first. | 1b First social security number on tax return |
| --- | --- |

| 2a If a joint return, enter spouse's name shown on tax return. | 2b Second social security number if joint tax return |
| --- | --- |

3 Current name, address (including apt., room, or suite no.), city, state, and ZIP code

4 Previous address shown on the last return filed if different from line 3

5 If the transcript is to be mailed to a third party (such as a mortgage company), enter the third party's name, address, and telephone number. The IRS has no control over what the third party does with the tax information.

| Third party name | Telephone number |
| --- | --- |
| GMAC Mortgage, LLC | 800-850-4622 |

Address (including apt., room, or suite no.), city, state, and ZIP code

6    Year(s) requested. Enter the year(s) of the return transcript you are requesting (for example, "2009"). Most requests will be processed within 10 business days

2012                 2011                 2010

**Caution.** If the transcript is being mailed to a third party, ensure that you have filled in line 6 before signing. Sign and date the form once you have filled in line 6. Completing these steps helps to protect your privacy.

**Note.** If the IRS is unable to locate a return that matches the taxpayer identity information provided above, or if IRS records indicate that the return has not been filed, the IRS may notify you or the third party that it was unable to locate a return, or that a return was not filed, whichever is applicable.

**Signature of taxpayer(s).** I declare that I am either the taxpayer whose name is shown on line 1a or 2a. If the request applies to a joint return, either husband or wife must sign.

**Note.** This form must be received within 60 days of signature date.

|  |  | Telephone number of taxpayer on line 1a or 2a |
| --- | --- | --- |

| **Sign Here** | Signature (see instructions) | Date |
| --- | --- | --- |
|  | Spouse's signature | Date |

For Privacy Act and Paperwork Reduction Act Notice, see page 2.          Cat. No. 54185S          Form **4506T-EZ** (10-2009)

V050212

Form 4506T-EZ (10-3009)

**Purpose of form.** Individuals can use Form 4506T-EZ to request a tax return transcript that includes most lines of the original tax return. The tax return transcript will not show payments, penalty assessments, or adjustments made to the originally filed return. You can also designate a third party (such as a mortgage company) to receive a transcript on line 5. Form 4506T-EZ cannot be used by taxpayers who file Form 1040 based on a fiscal tax year (that is, a tax year beginning in one calendar year and ending in the following year). Taxpayers using a fiscal tax year must file Form 4506-T, Request for Transcript of Tax Return, to request a return transcript.

Use Form 4506-T to request the following.

• A transcript of a business return (including estate and trust returns).
• An account transcript (contains information on the financial status of the account, such as payments made on the account, penalty assessments, and adjustments made by you or the IRS after the return was filed).
• A record of account, which is a combination of line item information and later adjustments to the account.

• A verification of nonfiling, which is proof from the IRS that you did not file a return for the year.

• A Form W-2, Form 1099 series, Form 1098 series, or Form 5498 series transcript.

Form 4506-T can also be used for requesting tax return transcripts.

**Automated transcript request.** You can call 1-800-829-1040 to order a tax return transcript through the automated self-help system. You cannot have a transcript sent to a third party through the automated system.

**Where to file.** Mail or fax Form 4506T-EZ to the address below for the state you lived in when that return was filed.

If you are requesting more than one transcript or other product and the chart below shows two different RAIVS teams, send your request to the team based on the address of your most recent return.

## Where to mail . . .

| If you filed an individual return and lived in: | Mail or fax to the "Internal Revenue Service" at: |
|---|---|
| Alabama, Delaware, Florida, Georgia, North Carolina, Rhode Island, South Carolina, Virginia | RAIVS Team P.O. Box 47-421 Stop 91 Doraville, GA 30362 770-455-2335 |
| Kentucky, Louisiana, Mississippi, Tennessee, Texas, a foreign country, or A.P.O. or F.P.O. address | RAIVS Team Stop 6716 AUSC Austin, TX 73301 512-460-2272 |
| Alaska, Arizona, California, Colorado, District of Columbia, Hawaii, Idaho, Iowa, Kansas, Maine, Maryland, Massachusetts, Minnesota, Montana, New Hampshire, New Mexico, New York, North Dakota, Oklahoma, Oregon, South Dakota, Utah, Vermont, Washington, Wisconsin, Wyoming | RAIVS Team Stop 37106 Fresno, CA 93888 559-456-5876 |
| Arkansas, Connecticut, Illinois, Indiana, Michigan, Missouri, New Jersey, Ohio, Pennsylvania, West Virginia | RAIVS Team Stop 6705-B41 Kansas City, MO 64999 816-292-6102 |

**Signature and date.** Form 4506T-EZ must be signed and dated by the taxpayer listed on line 1a or 2a. If you completed line 5 requesting the information be sent to a third party, the IRS must receive Form 4506T-EZ within 60 days of the date signed by the taxpayer or it will be rejected.

Transcripts of jointly filed tax returns may be furnished to either spouse. Only one signature is required. Sign Form 4506T-EZ exactly as your name appeared on the original return. If you changed your name, also sign your current name.

**Privacy Act and Paperwork Reduction Act Notice.** We ask for the information on this form to establish your right to gain access to the requested tax information under the Internal Revenue Code. We need this information to properly identify the tax information and respond to your request. Sections 6103 and 6109 require you to provide this information, including your SSN. If you do not provide this information, we may not be able to process your request. Providing false or fraudulent information may subject you to penalties.

Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation, and cities, states, and the District of Columbia for use in administering their tax laws. We may also disclose this information to other countries under a tax treaty, to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file Form 4506T-EZ will vary depending on individual circumstances. The estimated average time is: **Learning about the law or the form**, 9 min.; **Preparing the form**, 18 min.; and **Copying, assembling, and sending the form to the IRS**, 20 min.

If you have comments concerning the accuracy of these time estimates or suggestions for making Form 4506T-EZ simpler, we would be happy to hear from you. You can write to the Internal Revenue Service, Tax Products Coordinating Committee, SE:W:CAR:MP:T:T:SP, 1111 Constitution Ave. NW, IR-6526, Washington, DC 20224. Do not send the form to this address. Instead, see Where to file on this page.

---

**Frequently Asked Questions**

**What information is needed on the form 4506T-EZ?**
  ▪ Please complete the following:
      ○ Line 1a -4: List information as shown on your tax return
      ○ Line 5: Write the name, address, and telephone number shown on your monthly mortgage statement
      ○ Line 6: Write the year of the most-recent tax return you filed
  ▪ Be sure to sign the form where indicated.

**The 4506T-EZ form states, "Caution: If the transcript is being mailed to a third party, ensure that you have filled in line 6 before signing. Sign and date the form once you have filled in line 6. Completing these steps helps to protect your privacy." What do I enter for those items?**
  ▪ All applicable blanks on the form need to be completed. This disclaimer is provided as a warning that line 6 must be completed prior to signing the form.

V050212

**THIRD PARTY AUTHORIZATION and AGREEMENT TO RELEASE**

Please complete and return if you want us to speak with your Real Estate Agent, or any other designated third party on your behalf. If you do not wish to authorize any other individuals, do not fill out this form.

Account Number: _____    Name: _____
Property Address: _____

---

**STOP**    **Before you sign this authorization, please be aware that...**

- There is never a fee to get assistance or information about the Making Home Affordable program from your lender or a HUD-approved housing counselor.
- Beware of any person or organization that asks you to pay a fee in exchange for housing counseling services or modification of a delinquent loan.
- Beware of anyone who says they can "save" your home if you sign or transfer over the deed to your house.
- Do not sign over the deed to your property to any organization or individual unless you are working directly with your mortgage company to forgive your debt.
- ONLY use HUD certified counseling agencies: Call **1.800.CALL.FHA** to find a HUD-certified housing counseling agency.
- Never make your mortgage payments to anyone other than your mortgage company without their approval.

---

I/we do hereby authorize (my lender/mortgage servicer) to release or otherwise provide to:

_____ of _____ in his/her capacity as
Name                  Company Name

_____    _____    _____
Relationship (if applicable)      Phone Number        Email Address

public and non-public personal financial information contained in my loan account which may include, but is not limited to, loan balances, final payoff statement, loan payment history, payment activity, and/or property information.

We, the lender/mortgage servicer, will take reasonable steps to verify the identity of the 3rd party authorized above, but will have no responsibility or liability to verify the true identity of the requestor when he/she asks to discuss my account or seeks information about my account. Nor shall we, the lender/mortgage servicer, have any responsibility or liability for what the requestor may do with the information he/she obtains concerning my account.

I/we do hereby indemnify and forever hold harmless the lender/mortgage servicer, from all actions and causes of actions, suits, claims, attorney fees, or demands against the lender/servicer which I/we and/or my heirs may have resulting from the lender/mortgage servicer discussing my loan account and/or providing any information concerning the loan account to the above named requestor or person identifying themselves to be that requestor

If you agree to this Authorization and the terms of the Release as stated above, please sign, date, and return with the Financial Analysis form

NOTE:  No information concerning your account will be provided until we have received this executed document. The **authorization needs to be in the name of an individual (not a company)** and a form needs to be completed for each authorized individual. **All parties on the Mortgage must sign.**

_____    _____    _____   ◄ SIGN AND DATE HERE
Borrower Printed Name       Borrower Signature        Date

_____    _____    _____
Co-Borrower Printed Name    Co-Borrower Signature     Date

**BRADLEY ARANT**
**BOULT CUMMINGS** LLP

Eric A. Frechtel

Direct Dial: 202-719-8249
Direct Fax: 202-719-8349
efrechtel@babc.com

October 8, 2012

**VIA E-MAIL AND FIRST-CLASS MAIL**

Phillip R. Robinson, Esquire
Legg Law Firm, LLC
5500 Buckeystown Pike
Frederick, MD 21703

      Re:   *Matthews v. GMAC Mortgage, LLC, et al.;* Circuit Court for Baltimore City,
           Maryland, Case No. 24-O-12-000286 FC

Dear Mr. Robinson:

    Please be advised that Mr. Matthews unfortunately does not qualify for a loan
modification. Enclosed please find a letter from GMAC Mortgage stating that the request for a
loan modification has been denied due to insufficient income to support the request. Please let
me know if you would like to discuss the matter further.

                    Sincerely,

                    Eric A. Frechtel

Enclosure

cc:   GMAC Mortgage, LLC

**EXHIBIT**
9

5/25402.1

GMAC Mortgage
PO Box 205
Waterloo, IA 50704-0205

**GMAC** Mortgage
Proudly Serving USAA Members

10/2/2012



KEVIN JERRON MATTHEWS
C/O CIVIL JUSTICE INC
520 W FAYETTE STREET, ST. 410
BALTIMORE MD 21201

RE:    Account Number       ▉▉▉▉▉
        Property Address      3216 EAST NORTHERN PARKWAY
                                      BALTIMORE MD 21214-1422

Dear KEVIN JERRON MATTHEWS:

We recently received your request for a Traditional loan modification. We are not able to fulfill your request at this time for the following reason(s):

The financial information provided shows you have insufficient income to support your request.

At this time, you may want to seek advice regarding your next steps. We suggest you call 1.800.CALL.FHA (1.800.225.5342) to locate a HUD-certified housing counseling agency. You may also want to call 1.888.995.HOPE (1.888.995.4673) to request assistance from a HUD-approved housing counselor.

We will continue to work with you to explore options that may be available. If you have any questions, please contact us at 1-877-928-4622 between the hours of 8:00 am and 9:00 pm Monday through Friday central standard time.

In addition, you may have your concerns reviewed by an independent advocate in our Executive Escalation Team. They may be reached at 866-924-8409 Monday through Friday from 8am to 5pm CT or via email at homeowner.help@mortgagebanksite.com.

Modification Department
Loan Servicing

**Please Note:** Federal law requires that we advise you that this notice is from a debt collector attempting to collect on a debt and any information will be used for that purpose.

**Notice Regarding Bankruptcy:** If you are currently involved in an open bankruptcy case or if you have been discharged of your personal liability for repayment of this debt, this notice is being provided for informational purposes only and is not an attempt to collect a pre-petition or discharged debt. Furthermore, any action that we may take is for the sole purpose of protecting our lien interest in your property and is not to recover any amounts from you personally. If you have surrendered your property during your bankruptcy case, please disregard this notice.

**Note:** If you are currently in bankruptcy under Chapter 13, you should continue to make payments in accordance to your Chapter 13 plan.

10/2/2012
Account Number ▮▮▮▮▮▮
Page 2

Our credit decision was based in whole or in part on information obtained in a report from the consumer reporting agency listed below. You have a right under the Fair Credit Reporting Act to know the information contained in your credit file at the consumer reporting agency. The reporting agency played no part in our decision and is unable to supply specific reasons why we have denied credit to you. You also have a right to a free copy of your report from the reporting agency, if you request it no later than 60 days after you receive this notice. In addition, if you find that any information contained in the report you receive is inaccurate or incomplete, you have the right to dispute the matter with the reporting agency.

Name:  Equifax Information Services LLC,
Address: P.O. Box 740241, Atlanta, GA 30374-0241
Phone: 800-685-1111    Web: www.equifax.com

*If you have any questions regarding this notice, you should contact:*
Creditor's name: GMAC Mortgage, LLC
Creditor's address: PO Box 205, Waterloo IA 50704-0205
Creditor's telephone number: 1-866-924-8410

Notice: The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is Federal Trade Commission, Equal Credit Opportunity, Washington, DC 20580.

M020



BRADLEY ARANT
BOULT CUMMINGS LLP

Eric A. Frechtel

Direct Dial: 202-719-8249
Direct Fax: 202-719-8349
efrechtel@babc.com

October 15, 2012

**VIA E-MAIL AND FIRST-CLASS MAIL**

Phillip R. Robinson, Esquire
Legg Law Firm, LLC
5500 Buckeystown Pike
Frederick, MD 21703

Re:   *Matthews v. GMAC Mortgage, LLC, et al.;* Circuit Court for Baltimore City,
Maryland, Case No. 24-O-12-000286 FC

Dear Mr. Robinson:

By letter dated October 8, 2012, I forwarded to you a letter from GMAC Mortgage
stating that Mr. Matthews's request for a loan modification has been denied due to insufficient
income to support the request. In reaction to that information, you sent an email to the Office of
Administrative Hearings mediation judge in which you stated in part as follows: "Mr. Matthews
has elected to no longer participate in the OAH mediation process and will not appear tomorrow
for a futile exercise since the parties cannot even consider the one loss mitigation option that has
been his express intent for more than two years but GMAC has simply stonewalled in bad faith
every a." (That is a direct quote from your email; I am not certain what you intended to write at
the end of the sentence). Your statement that GMAC has "stonewalled in bad faith" is
inaccurate. Please be reminded that Mr. Matthews actually qualified for a loan modification in
March 2011, but he failed to sign the loan modification agreement and later contacted GMAC to
say that he could not afford the new monthly payment. Thereafter, in December 2011, GMAC
issued loan modification application packages on two separate occasions but received no
response. Then, initially in late June 2012, with additional information and documentation
provided thereafter, Mr. Matthews submitted another loan modification request, but that request
has now been denied because GMAC has determined that Mr. Matthews would not be able to
afford the reduced monthly payment under any modification that can be offered for this VA loan.
Let me remind you also that Mr. Matthews still has not made a single mortgage payment since
March 2009, three-and-a-half years ago.

Notwithstanding, I am writing to ask whether Mr. Matthews would be interested in
exploring other settlement options, including, for example, a deed in lieu of foreclosure,
relocation assistance, or other options that might be available. We intended to discuss these
potential avenues during the mediation, but you canceled it. In any event, if Mr. Matthews is

5/25465.1

**EXHIBIT**
10

Phillip R. Robinson, Esquire
October 15, 2012
Page 2

interested, we would forward the appropriate paperwork for your client to complete and return
for consideration.  Please let me know at your earliest convenience.  If I do not hear from you by
October 22, 2012, we will assume that Mr. Matthews is not interested.  Please be advised that my
client reserves all rights and defenses.  Thank you for your cooperation.

Sincerely yours,

Eric A. Frechtel

cc:     GMAC Mortgage, LLC

5/25465.1

## <u>EXHIBIT B</u>

**Deed of Appointment of Substitute Trustees**

After Recording, Return to Civil No: _____

## DEED OF APPOINTMENT OF SUBSTITUTE TRUSTEES

WHEREAS Kevin Jerron Matthews did by Deed of Trust dated February 14, 2008 and recorded among the Land Records of Baltimore City, Maryland, in Liber 10445 at folio 309, grant and convey to Michael J. Broker, certain real estate described in said Deed of Trust, in trust to secure to USAA Federal Savings Bank the payment of a Promissory Note of even date therewith. Mortgage Electronic Registration Systems, Inc. (as Nominee for Lender) was the beneficiary of said Deed of Trust; and

WHEREAS said Deed of Trust provides that the holder of the Note shall have the power and authority to appoint by an instrument duly executed, acknowledged and recorded among the Land Records aforesaid, substitute trustees in the place and stead of the trustee(s) named therein; and

WHEREAS GMAC Mortgage, LLC is the present holder or authorized agent of the holder of the Note secured by said Deed of Trust;

NOW THEREFORE, by virtue of the power and authority contained in said Deed of Trust, the undersigned holder of the indebtedness secured thereby does by these presents appoint Laura H.G. O'Sullivan, Deborah K. Curran, Erin M. Brady, Diana C. Theologou, Laura L. Latta, Jonathan Elefant, Anne L. Peightel as Substitute Trustees, under said Deed of Trust, in the place and stead of the trustee(s) named therein and of any previously appointed substitute trustee(s); and the said Substitute Trustees shall have all the rights, powers and authority, and be charged with all the duties that were conferred or charged upon the trustee(s) named in said Deed of Trust. Each substitute trustee appointed herein is hereby authorized to act, as sole substitute trustee, to execute any documents, including but not limited to the Trustees' Deed, arising from the duties of trustee conferred by the Deed of Trust on behalf of all substitute trustees appointed herein.

GMAC Mortgage, LLC

By: _Dannette_____ 1/23/2012

Name: **Dannette Lowe**

Title: "**Authorized Officer**

Kevin Jerron Matthews
3216 East Northern Parkway
2011-17613

Page 2 of 3

STATE OF __Pennsylvania__
COUNTY OF __Montgomery__, to wit:

On this _23_ day of _Jan_, 2012, before me, the undersigned officer, personally appeared __Dannette Lowe__, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that he/she/their signature(s) on the instrument to be the person(s), or the entity upon behalf of which person(s) acted, executed the instrument.

Witness my hand and official seal.

_Christine Morales._
Notary Public
My commission expires: _1/28/2015_

```
COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
CHRISTINE MORALES, Notary Public
Abington Twp., Montgomery County
My Commission Expires January 28, 2015
```

THIS IS TO CERTIFY that this Instrument has been prepared under the supervision of the undersigned, who is an attorney duly admitted to practice before the Court of Appeals of Maryland.

By _Erin M Bercey_

Name: _Erin M Bercey_

McCabe Weisberg & Conway, LLC
312 Marshall Avenue, Suite 800
Laurel, MD 20707
(301) 490-3361

Property ID: 27-04-5555-055

**Please Record and Return to:**
**McCabe, Weisberg & Conway, LLC**
**312 Marshall Avenue, Suite 800**
**Laurel, MD 20707**
**(301) 490-3361**

# EXHIBIT C

**Excerpts of Servicing Transfer Agreement**

<u>EXECUTION COPY</u>

**SERVICING TRANSFER AGREEMENT**

**by and among**

**GMAC MORTGAGE, LLC,**

**RESIDENTIAL FUNDING COMPANY, LLC,**

**EXECUTIVE TRUSTEE SERVICES, LLC,**

**ETS OF WASHINGTON, INC.**

**and**

**OCWEN LOAN SERVICING, LLC**

**DATED AS OF FEBRUARY 15, 2013**

# TABLE OF CONTENTS

Page

**ARTICLE I.      CERTAIN DEFINITIONS** ........................................................ 1
　　　Section 1.01   Certain Definitions ................................................. 1
**ARTICLE II.     PURPOSE AND SCOPE OF AGREEMENT** ........................................ 3
　　　Section 2.01   Purpose and Scope of Agreement ................................. 3
**ARTICLE III.    SERVICING TRANSFER PROCEDURES** .................................... 4
　　　Section 3.01   Servicing Transfer ................................................ 4
　　　Section 3.02   [Reserved] ........................................................ 4
　　　Section 3.03   Evidence of Sale .................................................. 4
　　　Section 3.04   Possession of Servicing Loan Files ......................... 4
　　　Section 3.05   Assignments ...................................................... 5
　　　Section 3.06   Custodian and Custodial Loan Files ........................ 5
　　　Section 3.07   Custodial Accounts and Escrow Accounts ................. 6
　　　Section 3.08   Final Certification and Recertification for Agency Transfers ........... 6
　　　Section 3.09   Notice to Borrowers .......................................... 6
　　　Section 3.10   Tax Service Contracts ......................................... 6
　　　Section 3.11   Flood Insurance Contracts ................................... 7
　　　Section 3.12   Notice to Insurers and Other Parties ..................... 7
　　　Section 3.13   Servicing of REO Property ................................... 8
　　　Section 3.14   Serviced Mortgage Loans in Litigation ................... 8
　　　Section 3.15   [Reserved.] ...................................................... 12
　　　Section 3.16   No Personal Solicitation .................................... 12
　　　Section 3.17    [Reserved.] .................................................... 12
　　　Section 3.18   Tax, REMIC and SEC Reporting ......................... 12
　　　Section 3.19   Master Servicing Transfer .................................. 13
　　　Section 3.20   Costs of Transfer ............................................. 13
　　　Section 3.21   Further Assistance and Assurances ...................... 13
　　　Section 3.22   [Reserved.] ...................................................... 14
　　　Section 3.23   Recovery of Servicing Advances .......................... 14
　　　Section 3.24   Financing Statement Authorization ...................... 14
　　　Section 3.25   Delayed Servicing Transfers .............................. 14

Section 3.26          ETS Servicing Transfer.................................................................... 15

**ARTICLE IV.      TERMINATION** ...................................................................... **15**

Section 4.01          Termination.................................................................................... 15

Section 4.02          Effect of Termination..................................................................... 15

**ARTICLE V.        MISCELLANEOUS** ............................................................... **15**

Section 5.01          Notices ........................................................................................... 15

Section 5.02          Parties in Interest; Assignment ..................................................... 17

Section 5.03          Complete Agreement ..................................................................... 17

Section 5.04          Counterparts................................................................................... 17

Section 5.05          Severability .................................................................................... 17

Section 5.06          Amendment; Waiver ...................................................................... 17

Section 5.07          Applicable Law; WAIVER OF JURY TRIAL; Venue and
                      Retention of Jurisdiction ............................................................... 18

Section 5.08          Interpretation.................................................................................. 18

**EXHIBITS**

Exhibit A                Power of Attorney

NY2-710521

# SERVICING TRANSFER AGREEMENT

This SERVICING TRANSFER AGREEMENT (this "Agreement") is dated as of
February 15, 2013, by and among GMAC Mortgage, LLC ("GMACM"), Residential Funding
Company, LLC ("RFC"), Executive Trustee Services, LLC ("ETS LLC"), ETS of Washington,
Inc. ("ETS WA" and together with ETS LLC, "ETS"; and together with GMACM and RFC,
"Sellers"), and Ocwen Loan Servicing, LLC ("Purchaser").  Sellers and Purchaser shall be
referred to herein from time to time collectively as the "Parties" and individually as a "Party."

**WHEREAS**, Sellers, together with other Affiliates, have filed voluntary petitions for
relief under Chapter 11 of Title 11, U.S.C. §§ 101, *et seq*., as amended (the "Bankruptcy Code"),
in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy
Court");

**WHEREAS,** Sellers and Purchaser, and certain other Affiliates of each of them, have
entered into that certain Asset Purchase Agreement, dated as of November 2, 2012 (as amended,
the "APA"), providing for, among other things, the sale by Sellers to Purchaser of the Mortgage
Servicing Rights with respect to certain Servicing Agreements and certain ETS Contracts
(collectively, the "Servicing Agreements"), the sale by Sellers to Purchaser of certain Servicing
Advances, and the assumption by Purchaser of certain obligations under the Servicing
Agreements; and

**WHEREAS**, the Parties desire to set forth the specific terms upon which the transfer of
mortgage loan servicing and master servicing with respect to the Servicing Agreements shall be
effected.

**NOW, THEREFORE** in consideration of the mutual covenants, representations,
warranties and agreements herein contained and of other good and valuable consideration, the
receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## ARTICLE I.

## CERTAIN DEFINITIONS

**Section 1.01  Certain Definitions**.

Capitalized terms which are not otherwise defined herein shall have the meanings
ascribed to such terms in the APA.  As used in this Agreement the following terms have the
following meanings:

"Accounts" means any Escrow Accounts, Custodial Accounts, lockbox accounts,
disbursement accounts,  suspense accounts and other accounts established and/or maintained by
the Sellers pursuant to the Servicing Agreements and all amounts maintained therein.

"Assignment of Mortgage" means, with respect to any Serviced Mortgage Loan, an
assignment of mortgage, assignment of deed of trust, notice of transfer or equivalent instrument
in recordable form, sufficient under the laws of the jurisdiction where the related Serviced

NY2-710521

Mortgaged Property is located to reflect the transfer of the Serviced Mortgage to the party indicated therein or if the related Serviced Mortgage has been recorded or previously assigned in the name of MERS or its designee, such actions as are necessary to cause the designee to be shown as the owner of the related Serviced Mortgage on the records of MERS for purposes of the system of recording transfers of beneficial ownership of mortgages maintained by MERS.

"Custodial Account" means (i) each trust account or bank account maintained by a Seller, as servicer, pursuant to a Servicing Agreement for the benefit of an Investor and (ii) any amounts deposited or maintained therein.

"Custodial Loan File" means, with respect to any Serviced Mortgage Loan, all of the documents that must be maintained on file with a document custodian, owner or trustee under Applicable Requirements with respect to such Serviced Mortgage Loan, including but not limited to the Mortgage Loan Documents (sometimes referred to in the mortgage business as the "legal file").

"Escrow Accounts" means (i) all trust accounts or bank accounts maintained by Sellers in accordance with the Servicing Agreements and Applicable Requirements (other than the Custodial Accounts), including accounts holding buy-down funds, tax and insurance funds, suspense funds and other escrow and impound amounts and similar charges (including interest accrued thereon held for the benefit of the Serviced Mortgagors) and (ii) any amounts deposited or maintained therein.

"Eviction" means the process culminating in the acquisition of possession of a Serviced Mortgaged Property, following a Foreclosure or otherwise, pursuant to any procedure consistent with Applicable Requirements.

"Foreclosure" means the process culminating in the acquisition of title to a Serviced Mortgaged Property in a foreclosure sale or by a deed in lieu of foreclosure or pursuant to any other comparable procedure consistent with Applicable Requirements, including, for the avoidance of doubt, non-judicial foreclosure proceedings in jurisdictions where such proceedings are authorized.

"LPOA" means a limited power of attorney provided by a Seller to Purchaser pursuant to Section 3.21.

"SBO Loan" means a Mortgage Loan serviced by an SBO Servicer under an SBO Servicing Agreement.

"SBO Servicer" means the Person responsible for performing loan servicing functions with respect to a Mortgage Loan under an SBO Servicing Agreement.

"SBO Servicing Agreements" means the servicing agreements between any Seller, on the one hand, and any third-party servicer or subservicer, on the other hand, pursuant to which such third-party servicer or subservicer is responsible for performing the loan servicing functions on behalf of such Seller.

NY2-710521

means) to Purchaser within five (5) Business Days after the applicable Servicing Transfer Date, it being understood that such delivery may be effectuated by electronic means or by providing access to a web-based database.  Promptly on or after the Servicing Transfer Date, to the extent such notice was not provided by or on behalf of Sellers prior to the Servicing Transfer Date, Purchaser shall notify or cause to be notified the third parties listed above of the transfer of servicing under the related Servicing Agreements, such notices to be given in accordance with applicable contractual requirements and Applicable Requirements.

(c)    For any Serviced Mortgage Loan for which the underlying secured property is currently registered under the name of Sellers with any state, county, or municipality or agency or department thereof (e.g., as a result of property occupancy, loan default, or ownership), Purchaser shall, within the timeframe required under Applicable Requirements, notify such state, county, or municipality or agency or department thereof that Seller no longer has an interest in such property and take whatever steps are necessary to reflect Purchaser, the Investor with respect to such Serviced Mortgage Loan or other appropriate party as the party in interest with respect to such property.  For the avoidance of doubt, without limiting the terms of the APA, in connection with any and all Serviced Mortgage Loans for which Purchaser does not take appropriate steps in accordance with this Section 3.12(c), any claims brought, judgments rendered, or liability assessed against Sellers which result from acts or omissions of Purchaser from and after the Servicing Transfer Date shall be considered Assumed Liabilities and any claims brought, judgments rendered or liability assessed against Purchaser which result from acts or omissions of Seller prior to the Servicing Transfer Date shall be considered to be Retained Liabilities.

**Section 3.13  Servicing of REO Property.**

To the extent a Seller holds title to an REO Property solely as a nominee for the benefit of the owner of the related Serviced Mortgage Loan, with respect to each such REO Property, such Seller shall provide to Purchaser, on or prior to the applicable Servicing Transfer Date, a limited power of attorney or other form of corporate authorization reasonably acceptable to Purchaser and authorizing Purchaser to prepare, in the name and on behalf of such Seller, an original, executed, valid and enforceable, quit claim deed to Purchaser (or such other person required by Applicable Requirements) in recordable form.

**Section 3.14  Serviced Mortgage Loans in Litigation.**

(a)    Sellers have delivered to Purchaser a litigation report listing any legal actions concerning the Mortgage Servicing Rights, Serviced Mortgage Loans or ETS Contract Rights, including, without limitation, judgments, claims or demands involving foreclosures, bankruptcies, fraud and misrepresentation, contract and mortgage disputes, liens, title disputes, regulatory agency/fair lending, property condition, forfeiture, partition, easement, condemnation and eminent domain, probate, contested foreclosures, tax sale, mechanic's liens and stop notice claims.  The Parties shall review such report and mutually determine, in good faith, the legal actions (or portion thereof) that relate to the Serviced Mortgage Loans, (such legal actions, excluding Seller Defendant Litigation (as defined below), are referred to herein, collectively, as the "Assumed Litigation").  Purchaser shall prosecute or defend the Assumed Litigation as successor servicer pursuant to the terms of the APA and the provisions set forth below; provided,

however, that Assumed Litigation shall not include any such legal action in which the opposing party is asserting only monetary claims against Sellers that is not otherwise asserted as a defense to a Default Action (defined below) (each, a "Seller Defendant Litigation"). For the avoidance of doubt, without limiting the terms of the APA, in connection with any and all Assumed Litigation, (i) any claims brought, judgments rendered, or liability assessed against Sellers which result from acts or omissions of the Purchaser from and after the applicable Servicing Transfer Date shall be considered Assumed Liabilities, and (ii) any claims brought, judgments rendered, or liability assessed against Purchaser, which results from acts or omissions of the Sellers prior to the applicable Servicing Transfer Date shall be considered to be Retained Liabilities in respect to which Purchaser shall have no liability whatsoever. For the further avoidance of doubt, Purchaser shall be solely liable for the costs and expenses of all Assumed Litigation as of the applicable Servicing Transfer Date except to the extent any Assumed Litigation entails the defense of a monetary claim asserted against Sellers that would give rise to a Retained Liability, in which case the Parties will confer in good faith to determine a reasonable allocation of costs and expenses to Seller for the defense of any such claim. In the event that, subsequent to the applicable Servicing Transfer Date, the Serviced Mortgagor (x) in any Assumed Litigation asserts any new claim or cause of action against any Seller, or (y) commences any new action against any Seller (including any Adversary Proceeding or contested matter in the Bankruptcy Case) (each, a "New Action"), Seller or Purchaser, as the case may be, shall provide prompt written notice to the other Party, and the Parties shall, in accordance with Section 3.14(a) hereof, meet and confer in good faith to determine whether such New Action continues an Assumed Litigation or constitutes a Seller Defendant Litigation. The terms of this Section 3.14, as applicable based on such determination, shall apply to any New Action.

(b)    (i)    Treatment of Uncontested Default Actions. With respect to any Assumed Litigation that is a Foreclosure, Eviction, or Title Action (collectively, "Default Actions") in which a Seller is a party plaintiff and where the Serviced Mortgagor has not asserted counter claims to the Default Action (each, an "Uncontested Default Action"), Purchaser shall file (or cause to be filed) appropriate pleadings and other documents and instruments with the applicable court or other appropriate body within one hundred eighty (180) days after the applicable Servicing Transfer Date, requesting that Seller be removed as a party plaintiff to such Uncontested Default Action and substituting Purchaser, the Investor with respect to such Serviced Mortgage Loan or another appropriate party plaintiff (the "New Plaintiff"), as the real party-in-interest (the costs and expenses of any such filings shall be divided equally between Purchaser and Sellers, subject to the Purchaser Payment Cap). Notwithstanding the foregoing, Purchaser shall not be required to seek substitution of the New Plaintiff for a Seller as the party plaintiff in any Uncontested Default Action (A) if doing so will require Purchaser to re-commence the Uncontested Default Action, (B) if, based on the advice of counsel prosecuting the Default Action on behalf of the Sellers, doing so will delay the ultimate resolution of the Uncontested Default Action by three (3) months or more, (C) if doing so is otherwise not legally permissible, (D) if the Uncontested Default Action concludes (e.g., via judgment, voluntary dismissal, involuntary dismissal, or otherwise) within one hundred eighty (180) days of the Servicing Transfer Date, or (E) with respect to any non-judicial Foreclosure that is an Uncontested Default Action. Purchaser shall provide Sellers with a monthly report of any Uncontested Default Actions for which Purchaser has determined that it will not request a New Plaintiff to be substituted for a Seller (including the basis for such determination) and those for which substitution of a New Plaintiff was not permitted.

NY2-710521

(ii)      Treatment of Contested Default Actions.  With respect to any litigation (whether judicial or non-judicial) in which the Serviced Mortgagor has asserted or subsequently asserts claims or counter claims against a Seller (each, a "Contested Default Action") that is not a Stayed Litigation (defined below), Purchaser shall not be required to take any action to request that Purchaser or any other Person be substituted for a Seller in such Contested Default Action (the "New Plaintiff/Defendant") as the real party-in-interest; provided, however, that the Parties shall confer in good faith to determine whether substitution is reasonable and appropriate under the circumstances with respect to each Contested Default Action, taking into consideration the exceptions to substitution enumerated in Section 3.14(b)(i)(A)-(E).  In the event the Parties agree (it being understood that the decision to enter into such an agreement shall be made only by joint agreement of the Purchaser and Sellers), that a Seller shall be removed as a party to such Contested Default Action and substituted by a New Plaintiff/Defendant, Purchaser shall file (or cause to be filed) appropriate pleadings and other documents and instruments with the applicable court or other appropriate body within one hundred eighty (180) days after the Servicing Transfer Date, requesting that Seller be removed as a party plaintiff to such Contested Default Action and substituting the New Plaintiff/Defendant, as the real party-in-interest (the costs and expenses of any such filings shall be divided equally between Purchaser and Sellers, subject to the Purchaser Payment Cap).  To the extent any Contested Default Action entails the defense of a monetary claim asserted against Sellers that would give rise to a Retained Liability, the Parties will confer in good faith to determine a reasonable allocation of costs and expenses to Seller for the defense of any such claim and to provide reasonable assurances to Purchaser that Seller's obligation to pay such costs and expenses will constitute an administrative claim in the Bankruptcy Case and that a satisfactory mechanism has been established to ensure that Purchaser will timely receive payment of such claim.

(iii)      Treatment of Serviced Mortgagor Bankruptcy Cases.  With respect to any Assumed Litigation where a Seller is a party in a contested matter or adversary proceeding in a case pending under the Bankruptcy Code (each, a "Bankruptcy Action"), in which the Serviced Mortgagor is a debtor or a co-debtor in a pending bankruptcy case or if the underlying Serviced Mortgaged Property is still property of the estate in a pending bankruptcy case as of the applicable Servicing Transfer Date, Purchaser shall file (or cause to be filed) appropriate pleadings and other documents and instruments with the applicable court within one hundred eighty (180) days after the Servicing Transfer Date, requesting that Seller be removed as a party to such Bankruptcy Action and substituting Purchaser, the Investor with respect to such Serviced Mortgage Loan or another appropriate party (the "New Party"), as the real party-in-interest (the costs and expenses of any such filings shall be divided equally between Purchaser and Sellers, subject to the Purchaser Payment Cap).  Notwithstanding the foregoing, Purchaser shall not be required to request a New Party to be substituted for a Seller as the party in a Bankruptcy Action if (A) based on the advice of counsel representing the Sellers in the Bankruptcy Action, doing so will delay the ultimate resolution of the Bankruptcy Action by three (3) months or more, or (B) doing so is otherwise not legally permissible.  To the extent a New Party is substituted as the real party-in-interest in any Bankruptcy Action, then, notwithstanding anything in Section 3.14(a)(i) or (ii) to the contrary, Purchaser shall also be required to seek substitution of Sellers with respect to any Default Action against a Serviced Mortgaged Property or in respect of a Serviced Mortgage Loan involved in such Bankruptcy Action.  Purchaser shall provide Sellers with a monthly report of any Bankruptcy Actions for which Purchaser did not request a New