1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 12-12020-mg

5  - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  RESIDENTIAL CAPITAL, LLC, et al.,

9

10          Debtors.

11  - - - - - - - - - - - - - - - - - - - -x

12

13              United States Bankruptcy Court

14              One Bowling Green

15              New York, New York

16

17              July 28, 2014

18              4:34 PM

19

20

21  B E F O R E:

22  HON. MARTIN GLENN

23  U.S. BANKRUPTCY JUDGE

24

25

1

2   Telephone Conference, on the Record, Regarding Mediation and

3   Discovery Matters in Reference to the Reed Evidentiary Hearing.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20   Transcribed by:  Sharona Shapiro

21   eScribers, LLC

22   700 West 192nd Street, Suite #607

23   New York, NY 10040

24   (973)406-2250

25   operations@escribers.net

1

2   A P P E A R A N C E S :

3

4   MORRISON & FOERSTER LLP

5         Attorneys for ResCap Borrower Claims Trust

6         250 West 55th Street

7         New York, NY 10019

8

9   BY:   JORDAN A. WISHNEW, ESQ. (TELEPHONICALLY)

10

11

12   REED SMITH LLP

13         Attorneys for ResCap Borrower Claims Trust

14         Three Logan Square

15         1717 Arch Street, Suite 3100

16         Philadelphia, PA 19103

17

18   BY:   BARBARA K. HAGER, ESQ. (TELEPHONICALLY)

19

20

21   ALSO PRESENT TELEPHONICALLY:

22   FRANK REED, PRO SE

23

24

25

1                    P R O C E E D I N G S

2          THE COURT:  -- Glenn.  We're on the record in

3    Residential Capital, number 12-12020.  This telephone hearing,

4    which is on the record, is being held in connection with the

5    contested matter concerning the claims filed by Frank and

6    Christina Reed.

7              The claims are the subject of two orders of the Court,

8    one order, the first of them, sustaining, in part, and

9    overruling, in part, the ResCap borrower trust objection to the

10   Reed's claims.  That order was entered on July 11th, 2014.  The

11   second order was the order establishing procedures for trial of

12   the contested matter, and it was entered on July 22, 2014.

13             Since those orders were entered, I received two

14   letters, one from Frank Reed -- it's ECF docket 7302; it's a

15   letter dated July 23, 2012 -- and a response, which is the

16   letter from Norman Rosenbaum, dated July 25th, 2014, and it's

17   ECF 7303.

18             Could you make your appearances, for the trust?

19         MR. WISHNEW:  Good afternoon, Your Honor.  Jordan

20   Wishnew, Morrison & Foerster, for the ResCap borrower claims

21   trust.

22         THE COURT:  Okay.

23         MR. WISHNEW:  On the phone with me is my co-counsel,

24   Barbara Hager, from the firm of Reed Smith.

25         THE COURT:  Okay.

1          MS. HAGER:  Good afternoon, Your Honor.

2          THE COURT:  Thank you.

3          And Mr. Reed?

4          MR. REED:  Your Honor, Frank Reed here --

5          THE COURT:  Okay.

6          MR. REED:  -- plaintiff -- or creditor, pro se.

7          THE COURT:  All right.  Mr. Reed, your letter was the

8  first that triggered this hearing.  There are two aspects to

9  that -- well, or one, where you refer to the unsuccessful

10  settlement meeting which I had directed occur, and you've

11  requested mediation.  The response from the trust deals with

12  the mediation request and also deals with discovery issues.

13          Let me hear you first, Mr. Reed.

14          MR. REED:  Your Honor, I -- as I put in my letter,

15  probably more articulate than I can here orally, I felt that

16  there was a good-faith effort on our part.  I know there was

17  great expense and energy put forth to put together proofs in a

18  more, I guess, recognizable form for the trust, culling from

19  the documents that were submitted, so that there could be an

20  intelligent discussion about the damages.  And I got the

21  impression that those were not considered, that it was issues

22  of law that I felt -- I don't want to provoke anyone here, but

23  I felt that were perhaps misstated, according to my

24  understanding of them, and therefore the negotiations weren't

25  happening in a productive way.  And they were maybe

1  misunderstood by the other side, but at worst, misstated, and

2  that the -- as I said, I don't know if this was entered into in

3  good faith.

4        And I think I put in my letter that I'm trying to do

5  whatever I can to do as the Romans do, I guess you would say,

6  in a common fashion, in this environment.  And if I

7  misunderstand something, or if I'm misreading a situation, I

8  don't know what to say, and that's why I asked for the

9  mediation, because a third party or an arbitrator, third party

10  neutral, would give me a better sense, perhaps, of what's

11  happening.

12        THE COURT:  Mr. Wishnew, do you want to respond?

13        MR. WISHNEW:  Sure, Your Honor.  Prior to the

14  settlement discussion, I did ask Mr. Reed to give me a

15  calculation of his damages and the basis for his damages.  I

16  had an opportunity to review that with our client, the borrower

17  claims trust.  And we went into the meeting and opened the

18  meeting explaining why the borrower claims trust was not

19  convinced that there were legal bases for the remaining claims

20  not otherwise expunged through the Court's earlier order.

21        We felt we spent a fair amount of time, operating in

22  good faith throughout the discussion, trying to explain to Mr.

23  Reed what the flaws were, we felt, in the underlying legal

24  theories that remain in dispute.  We made settlement offers.

25  They were not consistent with Mr. Reed's value of his claims.

RESIDENTIAL CAPITAL, LLC, ET AL.                    7

1  And we, at a certain point, were simply talking past one

2  another, and we felt it was productive -- we felt it was best

3  to stop or not proceed any further with the settlement

4  discussion because we were just too far apart in how we valued

5  the remaining claims.

6          The borrower claims trust went into this negotiation

7  hopeful that a resolution could be reached, but we have very

8  strong feelings about the strength of Mr. Reed's claims, or I

9  should say, lack of strength of his claims.  And our

10 willingness to settle is reflective of what we think are the

11 strengths and weaknesses of those claims.

12         Again, as I mentioned in our letter -- or as we

13 mentioned in our letter, this was nearly a three-hour

14 discussion.  We spent a lot of time with Mr. Reed.  We operated

15 the entire time in good faith.  But unfortunately, we were not

16 able to come to a mutual understanding.

17         THE COURT:  Okay.  Mr. Wishnew, would you address the

18 discovery issues?

19         MR. WISHNEW:  Certainly, Your Honor.  After we got

20 your -- so after the Court's first decision on the merits of

21 the claims, we approached Mr. Reed by e-mail, suggesting a

22 schedule by which the parties could complete discovery of one

23 another on the remaining claims.

24         That was an e-mail, I think, sent out -- that was on

25 July 14th.  We met with Mr. Reed three days later on July 17th.

1    And when the settlement discussions concluded, we asked him,

2    okay, do you have any feedback for us on our proposed schedule

3    for discovery.  And at that point in time, his answer was:  No,

4    I don't have a response right now.  I'm still trying to get

5    counsel.  I'll let you know in the next forty-eight hours.

6            Fast forward to the following Monday, and that is

7    Monday July 21st, and again, what -- in our initial schedule

8    with Mr. Reed we had proposed that the parties identify their

9    experts and fact witnesses that they intend to offer at trial

10   by Monday, July 21st.  We disclosed our single fact witness.

11   And Mr. Reed then sent back an e-mail saying here are my thirty

12   witnesses; twenty-seven fact and three extra witnesses.

13           Given the breadth of Mr. Reed's witness list, we

14   wanted to try and understand the subject matter or topics for

15   which each witness was being offered.  And we tried to schedule

16   a mutually convenient time to speak with him and were never

17   able to get that.  At a certain point, we said we need to speak

18   with you before noon on Thursday, or we need the Court's

19   assistance to try to help us through this.

20           I'd say Thursday afternoon or -- I'm sorry, Thursday

21   morning, we are informed by Ms. Anderson, in Your Honor's

22   chambers, of the July 23rd letter.  We review that, we prepare

23   our response, and then Friday evening, we are then served with

24   a motion for reconsideration of the Court's July 11th decision.

25           I would add also, Your Honor, that at this point,

1   we've identified -- we are two to three weeks into a potential

2   discovery period which is supposed to expire on August 22nd.

3   We've disclosed witnesses.  We've sent out document demands and

4   other written discovery, and we're no further than we were

5   earlier in July.

6            So we're mindful of each party having opportunity to

7   take discovery, but we're also mindful that we do have a

8   discovery deadline of August 22nd, and a trial of September

9   15th.  So we would like to ensure that this matter is

10  adequately addressed, but at the same time, that the proposed

11  scheduling does not slip too far so that this matter doesn't

12  drag on.

13           THE COURT:  Mr. Wishnew, did Mr. Reed identify to you

14  the names and contact information of the fact and expert

15  witnesses?

16           MR. WISHNEW:  No, Your Honor, all we have are names at

17  this point.

18           THE COURT:  So you have names of the twenty-seven fact

19  witnesses?

20           MR. WISHNEW:  Correct, Your Honor.

21           THE COURT:  Okay.

22           MR. REED:  Your Honor?

23           THE COURT:  I'm going to give you a chance --

24           MR. REED:  The --

25           THE COURT:  Mr. Reed, stop.  Stop.  I'll give you a

1  chance.

2        What discovery -- did you serve written discovery on

3  Mr. Reed, Mr. Wishnew?

4        MR. WISHNEW:  Yes, Your Honor.  We served document

5  requests, interrogatories, as well as requests for admissions.

6  Those discovery demands, Your Honor, were sent to Mr. Reed,

7  electronically and by overnight mail, on July 17th.

8        THE COURT:  All right.  Mr. Reed, do you want to

9  address the discovery issues?

10        MR. REED:  Yes, Your Honor.  The list is comprised of

11  experts and fact witnesses that are all, again, culled from all

12  the information that was sent there.  If I was supposed to give

13  their contact information, I can do that.  It's already in the

14  file.  Their disclosure does not give me a contact information

15  for their sole witness.

16        I am -- even though I did not agree, necessarily, to

17  what they proposed, I am complying with it.  And the last week,

18  when they wanted to talk to me about the witnesses, I think Ms.

19  Hager, who is on the phone, sent me an e-mail about maybe

20  stipulating to certain facts what the witnesses would be

21  discussing.  And I called her back about a half a dozen times,

22  and we were playing phone tag.  There was no intention to dodge

23  anyone.  I would call several times a day; we were just missing

24  each other.  And I don't -- there's no intention to obstruct

25  this process.

1    THE COURT:  Well, let me ask you this, Mr. Reed --

2    and I will tell you, I cannot conceive of how you could need

3    thirty witnesses on the issues as to which the Court overruled

4    the trust's objections.  Can you give me the gist of what you

5    anticipate the witnesses to testify -- I don't mean each one.

6        My concern, in part, Mr. Reed, is from your earlier

7    papers --  when I say your earlier papers, before the Court

8    ruled on the objection to the claims -- you had a very

9    expansive view of what damages you believe you'd be entitled to

10   seek and recover from the trust, at least in terms of having an

11   allowed proof of claim.

12       The Court's ruling, in sustaining, in part, and

13   overruling, in part, the trust's objection, I think,

14   substantially narrows what are the issues that are in play.  So

15   it seems to me that whatever damages you would be permitted to

16   seek have to be specifically related to the one property as to

17   which the debtors commenced their foreclosure action.

18       In earlier reading of your papers, your -- what I

19   would refer to as your expansive view of potentially

20   recoverable damages suggested that their action -- that the

21   GMACM action resulted in you losing other business

22   opportunities, other finance opportunities.  That's all a

23   nonstarter.  So what is it that these twenty-seven fact

24   witnesses, in your view, are going to testify to?

25       MR. REED:  Your Honor, I apologize but I didn't hear

1  that last two sentences and you said about the financing and

2          MR. REED:  Your Honor, I apologize but I didn't hear

3  that last two sentences and you said about the financing and --

4          THE COURT:  Yeah, let --

5          MR. REED:  -- other properties.

6          THE COURT:  Yeah, when I read your papers before there

7  was a decision, you seemed to be taking the position that you

8  would be entitled to recover damages not limited to the one

9  property as to which GMACM commenced foreclosure but to other

10 business ventures, opportunities, things of that nature, none

11 of which in my view can you recover any damages for.

12         What survives in your lawsuit on several different

13 theories is that GMACM undertook wrongful foreclosure by not

14 giving you the notice required by New Jersey law.  They were

15 negligent in doing that.  You argue that they breached a

16 contract.  That claim only survived because you pointed to the

17 place in their foreclosure pleading where they claim that they

18 owned the note and they were taking the position they didn't

19 own the note.

20         It was in light of the alleged wrongful foreclosure

21 that the Consumer Fraud Act claim survived.  Arguably a

22 punitive damage claim survived.  But all of that focuses solely

23 upon this one property.  I can't conceive of how you could have

24 twenty-seven fact witnesses who would testify with respect to

25 this one property and the alleged wrongful foreclosure action

1     that was commenced.  What is it that you think you're going to

2     use twenty-seven witnesses -- fact witnesses to put in proof?

3             MR. REED:  Your Honor, I am utterly confused and

4     speechless at this moment regarding the limitation of the

5     damages as I understand them and understood them and how you're

6     articulating it now.  And I --

7             THE COURT:  Mr. Reed?

8             MR. REED:  -- I don't know how to --

9             THE COURT:  Mr. Reed, how many of the twenty-seven

10    witnesses do you expect will testify about this one specific

11    piece of property and the wrongful foreclosure action?

12            MR. REED:  Your Honor, I'll have to go through the

13    list to see which ones were related to that, to that property.

14            THE COURT:  Am I correct that a majority of the

15    witnesses you expected were going to testify about other --

16    I'll just refer to it generally as other business opportunities

17    that you believe you lost because of this?

18            MR. REED:  I don't know if the majority are.  I don't

19    believe so.  I think they're -- the reason the list was so long

20    is because when counsel from the trust objected to my proofs of

21    claim, they had indicated that anything that was in writing or

22    a great amount of what was in writing would possibly be hearsay

23    and I think Your Honor had said something from the bench about

24    whether things would be admissible.  And so upon my research, I

25    started to see that, as I think counsel's paper said, "if the

1   person is not there present to speak about it."  So there are

2   appraisers regarding my property, realtors regarding my

3   property -- multiple realtors regarding my property, experts

4   about the liability in terms of the foreseeability of damage

5   from the negligence aspects from the industry, from the

6   foreclosure practice industry for the customary practice.

7           But again, Your Honor, I'm very -- I don't know where

8   I disconnect and I ask you to point to what -- where is the

9   limitation and forgive my ignorance but where is it confined to

10  this property?  I don't understand that.  Where --

11          THE COURT:  I've just told you --

12          MR. REED:  -- where is that?

13          THE COURT:  -- I've just -- well, it should have been

14  evident, but it obviously was not.  I'm telling you now that I

15  am not going to permit you to put on evidence relating to other

16  business opportunities, lost or otherwise.  What your claims

17  survive with respect to are wrongful foreclosure with respect

18  to this property, if it gives rise to a Consumer Fraud Act

19  claim -- it may and it may not.  And if it gives rise to a

20  breach of contract claim, we'll see whether there's a contract.

21  You say there is.  The debtor, at least told me there wasn't

22  and then you correctly pointed to the place in their

23  foreclosure complaint where they said there was.  But it all

24  relates to this one specific property.

25          To the extent you are arguing that you suffered

RESIDENTIAL CAPITAL, LLC, ET AL.                    15

1  economic loss with respect to this property, as a result of the

2  debtors' actions, yes, I believe that is a proper subject for

3  this hearing and your effort to recover damages, but that is

4  economic damages relating to this specific property, not to

5  other business ventures known or unknown, imagined or

6  unimagined.

7          This trial relates to this property.  If you suffered

8  out-of-pocket loss, I raised questions about this, for example,

9  if you paid an attorney to defend a foreclosure action that was

10 dismissed because it wasn't properly brought, that is arguably

11 damages that you could seek to recover.

12         To the extent that you argue that somehow this

13 wrongful foreclosure action impaired the value of the property

14 in that you suffered a loss, you can seek that, although you

15 still have the property.  You didn't lose it.  I understand

16 that a successor owner of the note or loan servicer is seeking

17 now to foreclose but --

18         MR. REED:  They presented a demand.  That is correct.

19         THE COURT:  All right.  I want to be clear, I'm not

20 precluding you from seeking economic losses that focus -- if

21 you can demonstrate that you suffered economic loss relating to

22 this property as a result of wrongful conduct of the defendant,

23 you can seek to recover it -- by defendant, I'm meaning the

24 debtor -- you can seek to recover it.

25         What I am not going to permit you to do is to try and

 1   bring in -- and I read this in some of your earlier papers

 2   before I ruled on the objection, that you were claiming that

 3   this put a cloud -- this wasn't the term you used -- it

 4   affected your credit, thereby preventing you from engaging in

 5   other business opportunities.  That's not going to be part of

 6   this trial.

 7           So what I was reluctant to do -- I was aghast when I

 8   saw your letter saying that you anticipated twenty-seven fact

 9   witnesses.  Whether you need three experts or not, I'm not

10   prepared to say, okay?  That isn't the focus of my concern for

11   now.  But I will tell you, we're going forward on the schedule

12   that I set.

13           You will look at your list again and if you, in good

14   faith, believe that all twenty-seven fact witnesses relate to

15   facts concerning this specific property and your losses

16   resulting from it, the trust can go ahead and take their

17   depositions, okay?

18           But here is what I am going to require of each side at

19   this point.  First, with respect to the mediation request, I'm

20   a big believer in mediation, but I also believe the parties

21   have to be sufficiently close where a mediator can bridge the

22   difference.  That's point one.

23           Second, it's important that not only your claim, that

24   all of the remaining claims be resolved as soon as possible.

25   So I'm going to deny your request to compel mediation.  We're

RESIDENTIAL CAPITAL, LLC, ET AL.                    17

1  going to go forward with the contested evidentiary hearing on

2  the schedule that I've set.

3       What I am going to require, and I know that Mr.

4  Wishnew said he disclosed to you the one witness that the trust

5  intends to call, but I am going to require that each side

6  provide the other by Thursday of this week, 5 p.m. Thursday,

7  with the identity of the witnesses -- it sounds like you've

8  each done that; last known business or residence address -- I

9  didn't require that previously, so you weren't obligated to

10  give it before but I am going to require it now, Mr. Reed; a

11  short narrative statement of the expected direct testimony of

12  each witness, so that -- and that's not a lengthy document but

13  I want each of you to know the subjects and briefly, the

14  expected testimony of the fact witnesses.  On that basis, the

15  trust can decide who it wants to depose and who not.

16       I'm making clear that any fact witnesses you call, Mr.

17  Reed, will only be permitted to give testimony relating to this

18  specific property, wrongful foreclosure -- I'm shorthanding

19  that -- the debtors' efforts to foreclose on the property, any

20  economic losses that you believe were caused by such wrongful

21  conduct, if the witness is providing evidence with respect to

22  that.

23       With respect to the experts, do you have -- I thought

24  you had said at the last hearing that you had expert reports.

25  I am not clear on that, Mr. Reed.

1        MR. REED:  That was one of them but, you know, he's

2    related to credit and -- which relates to other business issues

3    and this house.

4        THE COURT:  Okay.  That's not going to happen, Mr.

5    Reed.  I'm telling you right now.  So you can go back and

6    rethink how many experts you need.  I will only hear testimony

7    from fact or expert witnesses that relate specifically to this

8    property:  wrongful foreclosure, damages suffered as a result,

9    damages relating to this property -- economic or other damages

10   relating to this property.  I'm not going to hear testimony

11   about what you believe was the impact of this alleged wrongful

12   foreclosure.

13       In part, Mr. Reed, the Court, and like I said, made

14   comments about this at the hearing, you haven't paid a single

15   mortgage payment since -- I'm blanking on the date -- 2009, I

16   don't know, somewhere in --

17       MR. REED:  And may I address that?

18       THE COURT:  No, not yet.

19       MR. REED:  Well --

20       THE COURT:  Not yet.

21       MR. REED:  Okay.

22       THE COURT:  Okay.  So if you're unhappy with the

23   outcome at the end, you'll have your appellate rights, but

24   that's what's happening.  Okay.

25       So the other thing I was reluctant to do until I saw

1  that you wanted to call thirty witnesses is we're going to do

2  this as what I refer to as a timed trial.  Let me explain what

3  that is.

4        I am allocating to each side six hours to each side

5  over the course of two days.  You have six hours to use for all

6  opening statement, direct examination, and cross-examination of

7  witnesses and closing argument.  The trust, likewise, has six

8  hours.  You use it as you wish.  You will be advised after each

9  morning -- halfway through the morning when we take a break,

10 lunch time, mid-afternoon, how much time you've used, how much

11 time you have left.

12       I believe I am quite familiar with what underlies this

13 matter and I think that twelve hours for the whole hearing is

14 more than ample time for the presentation of all of the

15 evidence with respect to this dispute.

16       Now, with respect to exhibits, I've already provided

17 when they're supposed to be exchanged.  Mr. Wishnew, I fully

18 expect that where there is no reasonable basis to dispute

19 authenticity of the documents, that you're going to

20 stipulate -- relevance is going to be confined to what I've

21 said.  It's got to relate to this specific property, not

22 whatever business ventures Mr. Reed thinks were hindered by the

23 foreclosure efforts with respect to this property.

24       But if it relates to this property, I fully anticipate

25 that the trust will bend over backwards to assure that I'm not

1   going to have to hear foundational testimony through the

2   admission of documents.

3          MR. WISHNEW:  Understood, Your Honor.

4          THE COURT:  Mr. Reed, you wanted to respond to some

5   comments I made.  I asked you to wait until I had finished but

6   go ahead, you've got the floor.

7          MR. REED:  Thank you, Your Honor.  To the comment that

8   was made in court and today about the years of nonpayment of

9   the mortgage, there is no -- I have to say this and I want you

10  to think about what I am going to say because you've jumped on

11  me many times and I can appreciate what it appears to be for

12  you and I think that I'm not -- I'm chasing a headwind in

13  regard to the overall damage that has occurred to me.  So

14  perhaps it is an appellate matter.

15         But to that -- setting that aside, at the end of the

16  day, there is a bill that has to be paid.  It's being presented

17  by the noteholder now.  It will be paid in one way or another,

18  one fashion or another.  My intention is not to go bankrupt

19  over this.  It's like staying at a hotel for a week.  When you

20  check out, you have to pay.  There's been no economic benefit

21  to me.  As a matter of fact, it's been harmful because there

22  are penalties, interest, interest upon interest, and it all

23  would not have occurred but for this situation.

24         So it's very frustrating and -- to hear it.  I hear

25  what you're saying.  I understand it.

1          But in this case, I -- it is not relevant,

2    appropriate.  It's -- I don't think it makes any sense, because

3    it's not -- I did not get a free lunch.  If you're suggesting

4    that I sat in the house for six months and I will never have to

5    pay that, that is not an appropriate statement, you know,

6    the -- at all.  And it just is -- I mean, if the noteholder's

7    going to forgive my debt, sure, then I've gotten a free ride,

8    perhaps.

9          I don't think so, because it's been at the expense of

10   other things.  But I -- it's just -- that's what I wanted to

11   respond to.  It's not --

12         THE COURT:  Let -- and that's fine, Mr. Reed.  I want

13   to make one thing clear to the debtor -- to the trust.  If I

14   didn't think that you had asserted a viable claim for relief, I

15   would have sustained their objection to everything.  I believe,

16   and that's what I wrote in the order, that you had properly

17   asserted a claim -- viable claim.  Whether you recover, I don't

18   know.  How much you recover, I don't know.

19         So we wouldn't be going -- I wouldn't be taking the

20   time to go through this exercise just for the sake of giving

21   you two more days in court.  That's not what I'm trying to do,

22   Mr. Reed.  I believe that you set out a proper basis for a

23   claim against the trust.  They disagreed with that.  They filed

24   objections.  Obviously you could agree or disagree.  I'm not

25   asking for your agreement with my ruling.

1          I found that you have properly asserted certain

2     claims:  negligence claim; New Jersey Consumer Fraud Act claim;

3     possibly a breach of contract claim.  You asserted a claim for

4     punitive damages based on actual malice.  That survived.  Okay?

5     So I obviously was persuaded by your arguments that you have

6     stated a claim.

7          What I'm trying -- what I'm saying clearly, and you

8     can disagree and if you're unsatisfied with the ultimate

9     outcome, you'll appeal.  You have that right.  But the issues

10    before me, I believe, and I'm determining, are properly focused

11    on whatever damages or injury you've suffered as a result of

12    the foreclosure action that the debtor commenced.  Okay?

13         The New Jersey court dismissed their foreclosure

14    action for the reasons that it did.  Okay?  And I'm guided, in

15    part, by what that court did.  Okay?  So you have certain --

16         MR. REED:  I'm sorry, I didn't hear that last

17    sentence.

18         THE COURT:  The New Jersey court dismissed their

19    foreclosure action.  And I'm guided, in part, by what the New

20    Jersey court did.  You prevailed in getting the foreclosure

21    action dismissed.  You've told me in court that you had a

22    lawyer and incurred legal fees in connection with that.  I'm

23    not saying that that defines the limit of what potential

24    recovery would be.

25         If you've suffered economic loss that you can

1   demonstrate -- when I focus on the fact that you haven't paid

2   any mortgage payments, the reason I focus on that is -- and I

3   alluded to it in my written order -- I think it makes it not

4   impossible but much more difficult for you to recover any

5   other -- certain categories of damages.

6          I dismissed -- I sustained the objection to the

7   malicious prosecution claim, in part because I believe that the

8   record established that the debtors could properly commence

9   foreclosure.  They obviously -- at least they certainly didn't

10  persuade the New Jersey court that they did it right, and

11  they've never persuaded me they did it right.  They've never,

12  to this day -- and I think it probably is too late in the day

13  to come -- it is too late in the day to come forward and show,

14  oh, we just found the notice of intent to foreclose.  We hadn't

15  found it for all these years, but now we found it.  Okay?

16         The New Jersey court ruled on that already.  So but --

17  okay.  That's all I'm going to say about it now.

18         What I -- let me come back to what both sides need to

19  do.  Okay.  By Thursday at 5 o'clock, you need to disclose to

20  each other the names of the witnesses that you expect to call

21  at the trial and a brief narrative summary of the expected

22  direct testimony, so that you can each see what the subjects

23  are.  It needs to relate to the facts surrounding the wrongful

24  foreclosure or damages that you believe you suffered as a

25  result of it.

1          On the debtors' part, they've told you who it is.  I
2     expect them to tell you as well what the expected narrative
3     testimony is.  It's brief, okay?  And then you can decide if
4     you want to depose them.

5          Have you had any success in finding a lawyer, Mr.
6     Reed?

7          MR. REED:  I'm sorry?

8          THE COURT:  Have you had any -- when you were last
9     here you indicated you were trying to obtain -- find a lawyer
10    to represent you?

11         MR. REED:  I actually do, Your Honor.  I have someone
12    who wants to take it on contingency, who's appeared in your
13    court in the Enron matter.  They're a nationally known
14    attorney.

15         THE COURT:  Okay.

16         MR. REED:  On contingency.  His name is Barry
17    Himmelstein, and he has ECF registration active in your court.
18    And but he has a problem.  His mother's dying of liver cancer,
19    they expect her to die in the middle of September, and he's
20    blocked out September to deal with his mother.  And I don't
21    know -- I mean, I -- you know, he wants to do this.  He's
22    reviewed it all.  He's very engaged in it, and I told him, I
23    said I don't know what to say.  He said -- you know, you were
24    very firm about that date, and he said well, tell the judge
25    that I want to do this, that I'm interested in doing this.  And

1    he just wouldn't get on the phone with me today, because of

2    that -- that conflict.  But he is -- you know, we have come to

3    economic terms.  He has reviewed the file.  He is -- he is a

4    bankruptcy and class action attorney of national standing.  And

5    has, again, appeared in that court in Enron, and has active

6    ECF.

7              THE COURT:  All right, Mr. Reed, if -- whether he's

8    going to be -- is interested in taking the case, now that I

9    have made clear what the permissible issues for recovery of

10   damages are, you need to talk to him about it.  If the attorney

11   writes a letter to the Court and files it on ECF, give it to

12   the debtors' counsel -- the Trust's counsel, indicating that

13   he's prepared to appear on your behalf and prosecute the claim,

14   and without going into much detail, explain that because of a

15   serious family health issue, he is unable to do it -- conduct a

16   hearing in September, before he actually makes an appearance, I

17   will consider rescheduling the evidentiary hearing.

18             I'm not going to do it unless I have the commitment

19   from a lawyer that he is ready, willing, and able to undertake

20   this matter, and the only thing that prevents him from doing a

21   trial on September 15th and 16th is a serious health issue of a

22   family member and that he is prepared to appear on your behalf

23   and prosecute the claim if the evidentiary hearing is scheduled

24   for -- for better or worse, I mean, it's very hard, having

25   lived through this at various points myself, to know, when you

1  have a very seriously ill family member, what the course is

2  going to be.

3          But I will -- I'm not committing today, but I will

4  tell you -- what I'm not prepared --

5          MR. REED:  I hear you and I --

6          THE COURT:  What I'm not prepared to do is just do it

7  on -- adjourn it now, and maybe he'll appear and maybe he

8  doesn't appear.  If I have something --

9          MR. REED:  I agree.

10          THE COURT:  -- in writing that says I'm ready,

11  willing, and able to do this, here's my problem about doing it

12  on the schedule you've set.

13          MR. REED:  Your Honor, to that end, you had indicated

14  that I should tell him that it's limited to this property and

15  the damage relating to this particular property.  What law may

16  I -- is there any law or doctrine that I might cite to him to

17  tell him why it would be limited to that?

18          THE COURT:  Order the transcript --

19          MR. REED:  You know, a discussion --

20          THE COURT:  Order the transcript from today.  I just

21  ruled.

22          In my view, Mr. Reed, any other damages would be

23  speculative and not recoverable in this action -- in this

24  claim.  This relates to alleged wrongful foreclosure with

25  respect to a specific property.  Any other -- in my view, any

1   other business opportunities you may have had, and maybe you

2   did, and I hope you did, is far too speculative to permit

3   recovery on the claims that survive on the basis they've

4   survived.

5           So I will give you until -- I'm not going to back off

6   in requiring by Thursday at 5 the exchange of the identity of

7   the witnesses to testify on the subjects that I've indicated

8   and the brief narrative summaries of the expected direct

9   testimony.

10          Do you believe you can have a letter from this

11  proposed counsel by Thursday at 5 as well?

12          MR. REED:  I would hope so, because we communicate via

13  cell phone and e-mail.  I would hope that he and I could talk

14  later tonight and into tomorrow and try and resolve this.

15          THE COURT:  Okay.  Then I'm going to set the Thursday

16  at 5 as the deadline also for that letter.  If I don't have it,

17  we're going forward on the schedule that I've indicated.

18          Mr. Wishnew, when you get the list -- I mean, you just

19  have to fire ahead and if you want to take depositions, you

20  know how to do it.  Serve the --

21          MR. REED:  Your Honor --

22          THE COURT:  -- serve them with subpoenas and take your

23  depositions.

24          MR. WISHNEW:  One question, Your Honor.  I mean, in

25  terms of -- we obviously would like the benefit of having

1    responses to our written discovery before we take depositions.

2            THE COURT:  Well, the problem you have, Mr. Wishnew,

3    is you served written discovery, but the hearing's going to be

4    over before the responses to written discovery are due.  So I

5    expect both sides -- I entered an order that specifically dealt

6    with providing -- exchanging documents each side anticipates

7    using at trial.  I don't see the point in -- at this stage, in

8    lengthening the schedule, providing for written discovery.

9            So serve a trial subpoena for documents if you want.

10   That you don't have to -- you're not subject to the thirty-day

11   requirements.

12           MR. WISHNEW:  Understood, Your Honor.

13           MR. REED:  Well, I -- could you repeat that, Your

14   Honor, what you said?

15           THE COURT:  Sure.  On a contested matter, the Federal

16   Rules of Civil Procedure for the most part apply in a contested

17   matter.  So the Federal Rules of Civil Procedure provide for

18   interrogatories, requests for admissions, requests for

19   production of documents.  Those rules typically provide thirty

20   days to respond to a written request.

21           In light of the expedited schedule that the Court has

22   set, service of interrogatories now, does not permit sufficient

23   time -- the responses would be due after we have a hearing.

24   Yes, I could shorten time.  But what I'm -- the way we're going

25   forward, if Mr. Wishnew wishes to take your deposition or other

1   depositions, then he can take the depositions.

2          With respect to production of documents, he can serve

3   a trial subpoena, and it's not going to be subject to the same

4   thirty-day requirement.

5          MR. REED:  Oh, boy, I am very sorry.  I don't know

6   what happened.  I heard Federal Rules of Civil Procedure.

7          THE COURT:  Okay, so you missed part of what I was

8   saying.  I heard your question.  And I won't go through it all

9   other than to say that Mr. Wishnew indicated he served written

10  discovery on you.  Ordinarily you'd have thirty days to

11  respond, but your responses aren't going to be due until this

12  hearing is over.

13         If Mr. Wishnew wants documents from you, he can serve

14  a subpoena for the documents.  Hopefully, you will just both of

15  you agree not to have -- at least as between you, not to have

16  to go the subpoena route, but I'm going to leave it to you.

17         Mr. Wishnew, take his deposition, if you want his

18  deposition.  And as to the others, I'm ordering that the

19  identity of the witnesses confined to the issues I described,

20  Thursday at 5 o'clock.  If you have prospective counsel lined

21  up and he sends a letter to the Court -- I would also ask that

22  you e-mail it to chambers.  He ought to file it on ECF, if he

23  has an ECF number, but e-mail it to one of my law clerks so we

24  can see it.

25         Mr. Wishnew, if he has counsel ready, willing, and

1   able to take it, but for serious family health issue, you ought

2   to let us know whether you're prepared to consent to adjourning

3   the hearing to permit that.  I'm not going to open up the

4   discovery -- don't think that that's going to be a door to

5   opening up interrogatories and other written discovery.

6          We're going to proceed with whatever discovery does

7   take place in the fashion that I've said.  So an adjournment

8   will not alter that.

9          MR. WISHNEW:  Understood, Your Honor.

10          THE COURT:  All right.  I expect to enter a written

11   order -- it'll be tomorrow when it gets entered, I think --

12   just simply referring to my rulings over the phone today, with

13   respect to the limited subjects of testimony at the trial, a

14   requirement that each side disclose the identity -- and I am

15   going to require the contact information.  If it's going

16   forward on the schedule, I don't want people to have to -- I

17   don't Mr. Wishnew and the Trust to begin a search for where it

18   can find all of the witnesses that Mr. Reed has provided.

19          So I'm going to require that you provide last known

20   business or residential addresses for your witnesses, both fact

21   and expert.

22          MR. WISHNEW:  Thank you, Your Honor.  Your Honor, if I

23   may address one more question --

24          THE COURT:  Sure.

25          MR. WISHNEW:  -- which is the -- I'm not sure if

1   chambers has received the reconsideration motion that Mr. Reed

2   served on us Friday evening.

3          THE COURT:  I haven't seen it.  My law clerks are

4   indicating they have not seen it either.

5          MR. WISHNEW:  Okay.  Then I will hold my question

6   until chambers receives it.

7          THE COURT:  Okay.  We will look at it when we receive

8   it.  I don't anticipate adjourning a hearing because of a

9   reconsideration motion.

10          MR. WISHNEW:  Very good.  Thank you.

11          THE COURT:  Mr. Reed, anything else you want to raise

12   today?

13          MR. REED:  Again, I'm sorry, the last sentence, you

14   don't expect to what?

15          THE COURT:  I don't expect to delay the hearing in

16   light of --

17          MR. REED:  Oh, okay.

18          THE COURT:  -- a reconsideration motion.

19          MR. REED:  Sure.

20          THE COURT:  We'll --

21          MR. REED:  Should I check, Your Honor, with FedEx on

22   that reconsideration motion, as it was guaranteed by 3 p.m.

23   Friday.  So should I check on that?  Is it allowed that you

24   would not have that?

25          THE COURT:  No, because if you -- if you send it in

1  paper, which is ordinarily how you would send it, the clerks --

2  and the clerk office receives it, it then has to be scanned and

3  filed on ECF and so there's a time lag when pro se parties --

4  I'm not faulting you for that -- there's frequently a time lag

5  between the time that you send a paper document and it actually

6  gets scanned and then entered on the docket.

7          MR. REED:  Is there something I should do to get on

8  that electronic?

9          THE COURT:  Well, you can't.  If you have a lawyer, he

10  will.

11          MR. REED:  Okay.

12          THE COURT:  Mr. Reed, I'm not faulting you for not

13  having your reconsideration motion.  I just don't have it.

14          MR. REED:  I understand, Your Honor.

15          THE COURT:  Okay.  All right.

16          MR. REED:  Okay.

17          THE COURT:  I encourage -- Mr. Wishnew, I encourage

18  you to keep communicating with Mr. Reed, see if you can resolve

19  as many of the factual issues -- look, I encourage you both to

20  enter into stipulated facts.  It'll speed the hearing.  And

21  also, obviously, as to the authenticity and/or admissibility of

22  documents.

23          Hopefully, we won't be spending trial time doing that,

24  unless there's a good-faith basis to believe that there's

25  questions as to authenticity of documents.  Relevance issues

RESIDENTIAL CAPITAL, LLC, ET AL.                    33

1    I'll rule on during the hearing.  Okay?

2            MR. WISHNEW:  Absolutely, Your Honor.

3            THE COURT:  All right, we're adjourned.

4            MR. REED:  Thank you.

5            MR. WISHNEW:  Thank you, Your Honor.

6        (Whereupon these proceedings were concluded at 5:26 PM)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

34

1                              I N D E X

2

3                              RULINGS

4                                              Page      Line

5    Court will enter a written order outlining    30        10

6    rulings made on the record of this call.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T I O N

I, Sharona Shapiro, certify that the foregoing transcript is a
true and accurate record of the proceedings.


_____

SHARONA SHAPIRO

AAERT Certified Electronic Transcriber CET**D-492


eScribers

700 West 192nd Street, Suite #607

New York, NY 10040


Date:  July 29, 2014