UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RESIDENTIAL FUNDING CO., LLC,

        Plaintiff,

    - against -

SUNTRUST MORTGAGE, INC.,

        Defendant.

Case No. 1:13-cv-08938-RA

---

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO CONFIRM APPLICATION OF S.D.N.Y. STANDING ORDER OF AUTOMATIC REFERENCE TO BANKRUPTCY COURT**

QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Tel:    212-849-7000
Fax:   212-849-7100

*Counsel for Plaintiff*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...........................................................................................1

BACKGROUND ...............................................................................................................2

    A.    Defendant Sold Defective Loans To RFC In Breach Of Contract, Leading
To RFC's Bankruptcy...........................................................................................2

    B.    Bankruptcy Cases and Resulting Related Litigation ...............................................4

ARGUMENT ...................................................................................................................5

I.    THIS CASE MUST BE REFERRED TO THE BANKRUPTCY COURT
PURSUANT TO THE AUTOMATIC STANDING ORDER OF REFERENCE .............6

    A.    The Standing Order Of Reference Mandates Automatic Referral Of
Bankruptcy Matters To Bankruptcy Court .............................................................6

    B.    This Case Is Subject To Automatic Referral Pursuant To The Standing
Order ...................................................................................................................10

II.    SUNTRUST'S ARGUMENTS CONCERNING THE PURPORTED
EFFICIENCIES OF WITHDRAWING THE REFERENCE, AS WELL AS THE
OTHER *ORION* FACTORS, ARE IRRELEVANT AND ULTIMATELY
UNAVAILING .......................................................................................................14

    A.    Efficient Use of Judicial Resources Favors Allowing the Bankruptcy
Court to Preside Over Pre-Trial Proceedings.........................................................15

    B.    The Other *Orion* Factors Also Favor Bankruptcy Court Adjudication ................19

CONCLUSION.................................................................................................................20

# TABLE OF AUTHORITIES

**Page**

## Cases

*Adelphia Commc'ns Corp. v. Rigas (In re Adelphia Commc'ns Corp.)*,
    2003 WL 21297258 (S.D.N.Y. June 4, 2003) ..........................................................16

*American Intern. Group, Inc. v. Bank of America Corp.*,
    2011 WL 6778473 (S.D.N.Y. Dec. 20, 2011) ...................................................5, 11

*In re Boston Reg'l Med. Ctr., Inc.*,
    410 F.3d 100 (1st Cir. 2005) ...................................................................................12

*Broadhollow Funding LLC v. Bank of America, N.A.*
    *(In re American Home Mortg. Holdings Corp.)*,
    390 B.R. 120 (Bankr. D. Del. 2008) .......................................................................12

*Celotex Corp. v. Edwards*,
    514 U.S. 300 (1995)................................................................................................10

*City of Ann Arbor Emps.' Ret. Sys. v. Citigroup Mortg. Loan Trust Inc.*,
    572 F. Supp. 2d 314 (E.D.N.Y. 2008) ...................................................................10

*In re Cuyahoga Equip. Corp.*,
    980 F.2d 110 (2d Cir. 1992)................................................................................5, 10

*In re DPH Holdings Corp.*,
    437 B.R. 88 (S.D.N.Y. 2010)..................................................................................12

*Enron Power Marketing, Inc. v. City of Santa Clara (In re Enron Power Marketing, Inc.)*,
    2003 WL 68036 (S.D.N.Y. Jan. 8, 2003) ..............................................................16

*In re Extended Stay, Inc.*,
    466 B.R. 188 (S.D.N.Y. 2011)...................................................................17, 18, 19

*In re Fairfield Sentry Ltd.*,
    2014 WL 112329 (S.D.N.Y. Jan. 8, 2014) ...............................................................6

*In re Heller Ehrman LLP*,
    464 B.R. 348 (N.D. Cal. 2011) ...............................................................................16

*Lehman Brothers Holdings Inc. v. JPMorgan Chase Bank, N.A.*
    *(In re Lehman Brothers Holdings Inc., et al.)*,
    480 B.R. 179 (S.D.N.Y. 2011).................................................................................6

*In re Lyondell Chem. Co.*,
    467 B.R. 712 (S.D.N.Y. 2012).................................................................................17

*In re MF Global Inc.*,
   484 B.R. 18 (S.D.N.Y. 2012)........................................................................................6

*Omega Tool Corp. v. Alix Partners, LLP*,
   416 B.R. 315 (E.D. Mich. 2009)...............................................................................7, 8

*In re Orion Corp.*,
   4 F.3d 1095 (2d Cir. 1993).......................................................................................14

*Pacor, Inc. v. Higgins*,
   743 F.2d 984 (3d Cir. 1984).....................................................................................10

*Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*,
   639 F.3d 572 (2d Cir. 2011).....................................................................................13

*Picard v. HSBC Bank PLC*,
   450 B.R. 406 (S.D.N.Y. 2011)...................................................................................6

*Residential Funding Co., LLC v. Greenpoint Mortg. Funding, Inc.*,
   13-CV-8937, Order of Memo Endorsement, Castel, J. (Dkt. 36) (S.D.N.Y.) ....................9, 14

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   2013 WL 4077586 (S.D.N.Y. Aug. 2, 2013)...............................................................6

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   490 B.R. 46 (S.D.N.Y. 2013) .............................................................................7, 17

*Stern v. Marshall*,
   131 S. Ct. 2595 (2011)........................................................................................15-19

*In re The Mortgage Store, Inc.*,
   464 B.R. 421 (D. Hawaii 2011) .........................................................................17, 19

*In re White Motor Corp.*,
   42 B.R. 693 (D.C. Ohio 1984) ..................................................................................7

*Winstar Holdings, LLC v. Blackstone Group L.P.*,
   2007 WL 4323003 (S.D.N.Y. Dec. 10, 2007) ...........................................................13

## Statutes and Rules

11 U.S.C. § 101 ...........................................................................................................1

11 U.S.C. §1532 ..........................................................................................................1

28 U.S.C. § 157 ......................................................................................................7, 8

28 U.S.C. § 157(a) ...............................................................................................1, 5, 6

28 U.S.C. § 157(b)(3) ........................................................................................................9

28 U.S.C. § 157(d) ........................................................................................................2, 8

Fed. R. Bankr. P. 1015 ......................................................................................................4

Fed. R. Bankr. P. 5011 ................................................................................................9, 19

Fed. R. Bankr. P. 9033 ....................................................................................................17

Chief Judge Preska's January 31, 2012 Amended Standing Order of Reference,
    12-MISC-00032 ........................................................................1-2, 5-10, 15, 19-20

As directed by the Court during the March 7, 2014 preliminary hearing in this action, Plaintiff Residential Funding Company, LLC ("RFC"), through its successor the ResCap Liquidating Trust (the "Trust"), respectfully submits this memorandum in support of its motion, pursuant to 28 U.S.C. § 157 and Chief Judge Preska's January 31, 2012 Amended Standing Order of Reference, 12-MISC-00032 (the "Standing Order"), for an order confirming application of the Standing Order and referring this action to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), for further adjudication in connection with the bankruptcy cases from which this action arises and to which it is related, *In re Residential Funding Co., LLC, et al.*, No. 12-12019 (MG) (Jointly Administered) (the "Bankruptcy Cases"), which were commenced under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code").

## PRELIMINARY STATEMENT

Congress expressly authorized United States District Courts to refer to bankruptcy courts "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 157(a). In this District, the Standing Order mandates the ***automatic*** referral of those cases and proceedings to the Bankruptcy Court. Because this proceeding is, at a minimum, related to the Bankruptcy Cases, the Standing Order directs that it be referred automatically to the Bankruptcy Court. Indeed, three similar actions brought by RFC recently have been referred to the Bankruptcy Court under the Standing Order, including one where the defendant opposed referral. This case is the only one pending in this District that has not yet been automatically referred.

Suntrust has not and cannot point to any law or policy that would permit this Court to disregard or abrogate the Standing Order. Nonetheless, Suntrust asserted during the March 7 hearing in this action that automatic referral should be denied based on various arguments

1

relating to the purported inconvenience of adjudication in the Bankruptcy Court. Those arguments are irrelevant at this juncture. They are, at best, arguments to be asserted in support of a motion to withdraw the reference, *after* this court has first enforced the Standing Order.

That sequence is not arbitrary—it reflects this District's considered policy that a bankruptcy-related case should be promptly referred to the Bankruptcy Court, so that litigation can progress even during the pendency of any Defense argument for withdrawal of the reference. The Standing Order's application does not depend on the factors relevant to withdrawal applications under 28 U.S.C. § 157(d); it is automatic. But even if the Court addressed these issues now, Suntrust cannot demonstrate "cause" to withdraw the reference in light of the significant advantages to judicial economy and consistency that would result from adjudication by Bankruptcy Judge Glenn, who is most familiar with the facts and circumstances at issue and has retained exclusive jurisdiction over the specific claims in dispute.

## BACKGROUND

### A.    Defendant Sold Defective Loans To RFC In Breach Of Contract, Leading To RFC's Bankruptcy

This action, like each of more than 80 similar suits recently commenced by RFC, concerns Suntrust's sale to RFC of many millions of dollars of defective mortgage loans. *See generally* RFC's Amended Complaint dated and filed April 7, 2014. The liabilities and losses incurred by RFC and addressed in the Bankruptcy Cases arose from defective residential mortgage loans sold to RFC by mortgage loan sellers, including Suntrust, who are legally and contractually responsible for those liabilities and losses caused by the poor quality of the mortgage loans in question. *Id.*

As Suntrust understood and acknowledged when it sold these defective loans to RFC, RFC was not in the regular business of holding Suntrust's loans in its own portfolio; rather, RFC

2

created RMBS from Suntrust's loans, securitizing them through the creation of trusts (the "RMBS Trusts"), or sold them into whole loan pools. *Id.* RFC required the entities from whom it purchased these loans (the "Mortgage Originators") to make detailed representations and warranties (the "R&Ws") about the credit characteristics of the purchased loans, as set forth in the RFC Client Guide (the "Client Guide," attached as Exhibit B to the Amended Complaint), incorporated into the parties' loan purchase agreements (the "Purchase Agreements," Exhibit A to the Amended Complaint). Am. Compl. ¶ 5, Ex. A, § 1. Because the Mortgage Originator actually made the loan and had direct contact with the borrower and the property appraiser, it was best positioned to make sure that the loan satisfied the R&Ws. Accordingly, the Client Guide required Suntrust and every other Mortgage Originator to indemnify RFC against "all losses, damages, penalties, fines, forfeitures, court costs and reasonable attorneys' fees, judgments, and any other costs, fee and expenses resulting from any Event of Default," including specifically "liabilities arising from" R&W breaches. Am. Compl. ¶¶ 31-33.

The defective loans Suntrust and others sold to RFC ultimately defaulted in large numbers. As a result, the RMBS into which those loans had been securitized likewise began to incur massive losses. Beginning in 2008 and continuing until RFC and its affiliated debtors and debtors in possession (the "Debtors") filed for chapter 11 bankruptcy protection, RMBS investors and monoline insurers began to file claims against RFC arising out of those losses. *Id.* ¶ 9. These claims were huge in scope and volume, involving more than 100 RMBS and a combined original principal balance over $100 billion. *Id.* ¶¶ 9-10. Among the core allegations common to these claims were that the loans backing RFC's RMBS breached RFC's representations and warranties concerning loan quality and underwriting guidelines. *Id.*

### B.    Bankruptcy Cases and Resulting Related Litigation

Facing billions of dollars in RMBS and other claims, RFC and over 50 of its affiliated entities commenced the Bankruptcy Cases in the Bankruptcy Court by filing voluntary chapter 11 petitions on May 14, 2012.  *Id.* ¶ 49.  The Bankruptcy Cases remain pending in the Bankruptcy Court where they are being jointly administered before Judge Martin Glenn through the lead case captioned *In re Residential Capital, LLC*, *et al.*, No. 12-12020.  *See* Order Under Bankruptcy Rule 1015 Authorizing Joint Administration of the Debtors' Chapter 11 Cases, *id.*, ECF No. 59.

During his nearly two years of presiding over the Bankruptcy Cases, including litigation concerning the RMBS claims, Judge Glenn acquired extensive familiarity with the claims asserted against RFC and the intricacies of RFC's mortgage origination and servicing business. *See* Thompson Decl., *Residential Funding Company, LLC v. Cherry Creek Mortgage*, 13-CV-3449 (D. Minn.), Dkt. 18 at ¶ 9.   Along the way, Judge Glenn conducted more than 80 hearings, issued no fewer than 25 memoranda opinions and dozens of additional orders, and presided over and resolved hundreds of claims involving tens of billions of dollars.  *Id.*

Many of the claims against RFC were resolved in settlements that Judge Glenn reviewed and approved during the Bankruptcy Cases.  For example, Judge Glenn presided over extensive litigation concerning the reasonableness of an $8.7 billion partial RMBS settlement that RFC and its affiliates had negotiated shortly before the bankruptcy.  Am. Compl. ¶ 69.  Ultimately, a global resolution resulted, which included five separate settlements of RFC's RMBS-related liabilities.   Judge Glenn approved those settlements, finding each of them to be reasonable and in the best interests of the Debtors and their estates.[1]  *Id.* ¶ 70.

---

[1]    *See* Case No. 12-12020-mg, Doc. 6066 (Findings of Fact) (Glenn, J.) ¶¶ 98 to 176.

On December 11, 2013, the Bankruptcy Court confirmed the Debtors' Second Amended Joint Chapter 11 Plan. *See* Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors, *id.*, ECF No. 6065 ("Confirmation Order"); Second Am. Joint Chapter 11 Plan Proposed by [RFC] and the Official Committee of Unsecured Creditors, *id.*, ECF No. 6065-1 ("Plan"). The Plan provides expressly for the retention of post-confirmation jurisdiction by the Bankruptcy Court:

> [n]otwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan . . . .

Plan at 116; *see* Confirmation Order at 79. The Plan also specifically preserved causes of action for "indemnity" and claims against the specific Mortgage Originators that RFC recently sued, including Suntrust. *See* Plan at 80-81; Confirmation Order at 65-68; Revised Plan Ex. 13 at 33, *id.*, ECF No. 6036-1. Accordingly, this action is an unliquidated asset of Plaintiff's bankruptcy estate, with respect to which the Bankruptcy Court retained jurisdiction and from which any recovery will be distributed to Plaintiff's creditors pursuant to the Plan on account of their allowed claims against the RFC estate. *See* Plan at 80-81; Confirmation Order at 65-68.

## ARGUMENT

Both 28 U.S.C. § 157(a) and the Standing Order of Reference direct that this proceeding—which is, at a minimum, related to the underlying Bankruptcy Cases[2]—be referred automatically to the Bankruptcy Court. Considerations relevant to the standard for withdrawal of the reference, although immaterial to the Standing Order's application and premature in the

---

[2]   RFC reserves its right to assert this action both "arises in" and is "related to" the underlying Bankruptcy Cases, but argues only the latter in this motion because it is sufficient to trigger an automatic referral pursuant to the Standing Order. *See, e.g., In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992); *American Intern. Group, Inc. v. Bank of America Corp.*, 11-CV-6212 (BSJ), 2011 WL 6778473 (S.D.N.Y. Dec. 20, 2011), at *6.

current posture, similarly weigh strongly in favor of the Bankruptcy Court's adjudication of these claims.

## I.    THIS CASE MUST BE REFERRED TO THE BANKRUPTCY COURT PURSUANT TO THE AUTOMATIC STANDING ORDER OF REFERENCE

### A.    The Standing Order Of Reference Mandates Automatic Referral Of Bankruptcy Matters To Bankruptcy Court

Congress has authorized federal district courts to refer "any or all" bankruptcy related matters to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). The Southern District of New York has elected to exercise that authority via a Standing Order of Reference, which mandates that proceedings arising under the Bankruptcy Code or arising in or related to bankruptcy cases must be referred automatically to the Bankruptcy Court:

> Pursuant to 28 U.S.C. Section 157(a) any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 are referred to the bankruptcy judges for this district.

Standing Order.

Where a proceeding arises in or is related to an underlying bankruptcy case, referrals to the bankruptcy court are *automatic*. "'The Southern District of New York has a standing order in place that provides for *automatic* reference of such matters to the Bankruptcy Court.'" *In re Fairfield Sentry Ltd.*, 11-CV-5905 (AT), 2014 WL 112329, at *2 (S.D.N.Y. Jan. 8, 2014) (emphasis added) (*quoting Picard v. HSBC Bank PLC*, 450 B.R. 406, 409 (S.D.N.Y. 2011)). Numerous cases similarly have recognized the automatic nature of the referral. *See, e.g., Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 12-MC-115 (JSR), 2013 WL 4077586, at *2 (S.D.N.Y. Aug. 2, 2013) ("The Southern District of New York has a standing order that provides for automatic reference.") (citation omitted); *In re MF Global Inc.*, 484 B.R. 18, 22 (S.D.N.Y. 2012) (describing the court's "standing order for automatic reference of liquidation-related cases to the Bankruptcy Court"); *In re Lehman Bros. Holdings Inc.*, 480 B.R. 179, 187

6

(S.D.N.Y. 2012) ("Pursuant to a recently-amended standing order in this district, all cases arising under or related to a case under Title 11 are automatically referred to the bankruptcy court.") (citation omitted).

The automatic and mandatory referral of bankruptcy-related proceedings reflects a considered decision by Congress, implemented by this District, to have bankruptcy-related proceedings adjudicated by the Bankruptcy Court in the first instance, consistent with the history, structure, and purpose of 28 U.S.C. § 157.  A court in this District explained:  "[A]s numerous courts have previously noted, the history and structure of § 157 indicate that Congress clearly wanted Bankruptcy Judges to finally adjudicate bankruptcy-related matters whenever Article III permitted them to do so, and to issue recommended findings subject to de novo review in the District Court whenever it did not."  *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 490 B.R. 46, 58 (S.D.N.Y. 2013) (citations and internal quotations omitted); *cf. In re White Motor Corp.*, 42 B.R. 693, 697 (D.C. Ohio 1984) (explaining that the Bankruptcy Amendments of 1984, in which § 157 was included, "reveal a broad congressional intent to retain as much as possible of the bankruptcy court structure" under the relevant constitutional constraints).

Factors relevant to applications to withdraw the reference do not govern the Standing Order's application.  Given the existing automatic structure, it is inappropriate to evaluate those considerations at this juncture.  Precisely on point is *Omega Tool Corp. v. Alix Partners, LLP*, 416 B.R. 315 (E.D. Mich. 2009).  There, after the action had been pending in the district court for nearly three months, defendants moved to refer the matter to the bankruptcy court pursuant to 28 U.S.C. § 157(d) and that district's standing order of reference.  *See id.*  The motion was opposed on efficiency grounds, but the court held that considerations of efficiency could only be considered *after* the district court had referred the matter to the bankruptcy court:

7

> Despite Omega Tool's arguments . . . it cites no authority that a district court must first determine that there is no basis to withdraw a reference *before* the matter is even referred to the Bankruptcy Court. No such requirement exists under 28 U.S.C. § 157 or [the E.D. Mich. automatic referral provision].

*Id.* at 322.

Indeed, a plain reading of the statute confirms that motions to withdraw the reference—and the grounds upon which a party can so move—are to be considered only *after* proceedings have been referred to the Bankruptcy Court. *See* § 157(d) ("The district court may withdraw . . . any case or proceeding referred under this section . . . for cause shown."). In *Omega Tool*, the court found the party opposing referral was attempting to circumvent the appropriate procedure for referral and any subsequent challenge:

> Omega Tool seeks to impose a "futility" requirement on bankruptcy referrals that simply does not exist. . . . [W]ithdrawal motions are considered after proceedings have been referred to the Bankruptcy Court; not before. There is nothing in § 157 that supports a requirement that a party seeking a referral of a matter to the Bankruptcy Court must first prove that its request would not be futile.

*Omega Tool*, 416 B.R. at 323. Here, Suntrust is similarly and without grounds attempting to circumvent the Standing Order, which mandates automatic referral regardless of whether the defendant intends in the future to seek to withdraw the reference.

Moreover, automatic referral of this case to the Bankruptcy Court will allow the action to move forward expeditiously. Once referred in accordance with the Standing Order, the Bankruptcy Court can begin addressing this action immediately—as it is with the already-referred actions.[3] Notably, a motion to withdraw the reference "shall not stay the administration

---

[3] The Bankruptcy Court already has scheduled status conferences for May 15, 2014, in the HSBC and Greenpoint actions. *Residential Funding Company, LLC v. HSBC Mortg. Co. (USA)*, 01915-mg, Notice of Pre-Trial Conference (Dkt. 2); *Residential Funding Company, LLC v. Greenpoint Mortg. Funding, Inc.*, 14-01916-mg, Notice of Pre-Trial Conference (Dkt. 2).

of the case or any proceeding therein before the bankruptcy judge," absent a stay.  Fed. R. Bankr. P. 5011.[4]

The procedure enacted by Congress and this District requires this case to be referred to the Bankruptcy Court now for immediate proceedings—with any motion to withdraw the reference to be briefed and argued *in parallel* with the bankruptcy proceedings, so as not to delay adjudication of this action.  The alternative pressed by Suntrust, in which their motion to withdraw the reference would effectively need to be resolved *prior to* any bankruptcy referral, would not only contravene the plain requirements of the Standing Order, but would also impose an unjustified delay in the adjudication of this case.  Indeed, any motion to stay the bankruptcy proceeding pending a motion to withdraw the reference "ordinarily shall be presented first to the bankruptcy judge," allowing the Bankruptcy Court to determine whether such an action would be appropriate.  *Id.* 5011(c).

Recognizing this procedure, two courts recently referred similar actions to the Bankruptcy Court pursuant to the Standing Order, for the precise reasons at issue here. *Residential Funding Co., LLC v. Greenpoint Mortg. Funding, Inc.*, 13-CV-8937 (Order of Memo Endorsement; Castel, J. (Dkt. 36)) (S.D.N.Y.); *Residential Funding co., LLC v. UBS Real Estate Securities, Inc.*, 14-CV-02170A (Amended Standing Order Referring to Bankruptcy Court (Dkt. 4)) (S.D.N.Y.).  Notably, in *Greenpoint*, following Judge Castel's application of the Standing Order, the defendant requested that he reconsider that determination, making arguments similar to Suntrust here.  *See Greenpoint*, 13-CV-8937 (Def. Ltr. (Dkt. 39).)  Judge Castel denied that

---

[4]    Similarly, the Bankruptcy Judge determines in the first instance whether a matter is core or non-core.  *See* 28 U.S.C. § 157(b)(3) ("The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11.  A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.").

request, finding: "That the bankruptcy court's jurisdiction is not 'exclusive' or that it may 'at most make proposed findings' does not dissuade this Court from referring the matter to the bankruptcy court." *Id.* (April 2, 2014, Order (Dkt. 41).) The same reasoning applies here.

**B.      This Case Is Subject To Automatic Referral Pursuant To The Standing Order**

The Amended Complaint's allegations establish that this proceeding is at minimum "related to" the underlying Bankruptcy Cases and hence subject to automatic referral under the Standing Order. As the Second Circuit has confirmed, the scope of "related to" bankruptcy jurisdiction is exceedingly broad. "Such [related to] jurisdiction exists where the outcome of the removed litigation could '*conceivably have any effect on*' the bankrupt estate." *City of Ann Arbor Emps.' Ret. Sys. v. Citigroup Mortg. Loan Trust Inc.*, 572 F.Supp.2d 314, 317 (E.D.N.Y. 2008) (emphasis added) (*citing In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992), *citing Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). This is consistent with the instruction of the Supreme Court. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) ("Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate.") (citation omitted).

Here, the allegations in RFC's Amended Complaint establish bankruptcy jurisdiction over this matter. Am. Compl. ¶ 16 ("[V]enue is most appropriate in the United States Bankruptcy Court for the Southern District of New York because these claims relate to the bankruptcy of Plaintiff RFC and certain of its affiliates already pending in that court as Case No. 12-12020 (MG)."). The Amended Complaint's factual allegations comprehensively make clear that this action fundamentally and inextricably relates to the underlying Bankruptcy Cases by

seeking redress for the liabilities and losses that RFC suffered and were treated under its Plan.  In

particular, paragraph 62 notes:

> In connection with the bankruptcy proceeding, hundreds of proofs of claim were
> filed by investors in RMBS, monoline insurers, whole loan purchasers, indenture
> trustees, and an array of co-defendants in the above-described loan-related
> litigation.  These proofs of claim, many of which mirrored the litigation filed prior
> to the bankruptcy, sought damages in the tens of billions of dollars, all stemming
> from allegedly defective mortgage loans . . . .

Am. Compl. ¶ 66; *see also* ¶¶ 69 ("The Debtors initially proposed to settle portions of their

RMBS-related liabilities for an aggregate $8.7 billion allowed claim in their bankruptcy

cases. . . . A lengthy mediation process ensued, which together with related proceedings, resulted

in a global settlement that provided for the resolution of *all* of the Debtors' RMBS-related

liabilities for more than $10 billion in allowed claims . . . ."); 70 ("The Bankruptcy Court for the

Southern District of New York ultimately approved the global settlement, including the $10

billion plus settlement of RMBS-related liabilities, finding it to be fair and reasonable and in the

best interests of each of the Debtors, and confirmed the plan."); 71 ("Pursuant to its express

contractual obligations, Suntrust is obligated to compensate RFC for the portion of the global

settlement associated with its breaches of representations and warranties, as well as for the

portion of RFC's other liabilities and losses (including the tens of millions of dollars that RFC

has paid in attorneys' fees to defend against, negotiate, and ultimately settle claims relating to

allegedly defective loans) associated with those breaches.").

    Plaintiff's breach of contract and indemnification claims certainly "could conceivably

have any effect on" the estate, including by affecting the implementation, execution, and/or

administration of the  Plan.  *See American Intern. Group, Inc. v. Bank of America Corp.*, 11-CV-

6212 (BSJ), 2011 WL 6778473 (S.D.N.Y. Dec. 20, 2011), at *5 (finding "related to" jurisdiction

existed because "as originators, American Home may be liable on Defendants' indemnification

claims . . . and contribution claims . . . and thus stands to affect the implementation, execution, and/or administration of the confirmed plan."). *Cf. Broadhollow Funding LLC v. Bank of America, N.A. (In re American Home Mortgage Holdings Corp.)*, 390 B.R. 120, 132 (Bankr. D. Del. 2008) (finding bankruptcy court could exercise jurisdiction over breach of contract claims relating to forward swap agreements when defendants, if unsuccessful, would assert corresponding claims under reverse swap agreements against debtors' estates).

This is especially true where, as here, the Plan created a liquidating trust for purposes of liquidating assets and making distributions to creditors on account of their allowed claims against the Debtors' estates. "[W]here a debtor's plan is a liquidating plan, and 'the reorganized debtor's sole purpose is to wind up its affairs, convert its assets to cash, and pay creditors a pro rata dividend,' the bankruptcy court's post-confirmation jurisdiction is more broad because its jurisdiction relates directly to core functions of the bankruptcy court . . . ." *In re DPH Holdings Corp.*, 437 B.R. 88, 97-98 (S.D.N.Y. 2010) (citation omitted); *see also In re Boston Reg'l Med. Ctr., Inc.*, 410 F.3d 100, 107 (1st Cir. 2005) ("[The liquidating entity's] success or lack of success in securing a share of the trust corpus will directly impact the amount of the liquidating dividend eventually paid to [the debtor's] creditors. That is a matter intimately connected with the efficacy of the bankruptcy proceeding.").

This action, which seeks a recovery from Suntrust of its portion of the losses incurred in the Bankruptcy Cases, is an unliquidated asset of RFC's bankruptcy estate, pursued for the benefit of creditors. Accordingly, this case inarguably "relates to 'the core post-confirmation bankruptcy function of dealing with claims against the estate and the estate's remaining assets for distribution.'" *In re DPH Holdings Corp.*, 437 B.R. at 98. (expressing agreement with the underlying bankruptcy court finding on the issue of "related to").

12

Significantly, under the Plan approved by Judge Glenn, the Bankruptcy Court explicitly retained "*exclusive jurisdiction* over all matters arising out of, or related to, the Chapter 11 cases and the Plan." Bankruptcy Plan at 116 (emphasis added). Additionally, the Plan specifically preserved the cause of action asserted in this case, *see* Plan at 80-81; Confirmation Order at 65-68; Revised Plan Ex. 13 at 33, *id.*, ECF No. 6036-1, further confirming that this and RFC's other actions are "related to" the underlying Bankruptcy Cases. *See Winstar Holdings, LLC v. Blackstone Group L.P.*, 07-CV-4634 (GEL), 2007 WL 4323003, at *4, 5 (S.D.N.Y. Dec. 10, 2007) (noting, in the course of transferring a case to a court administering an underlying "related to" bankruptcy proceeding even though plaintiff asserted "garden-variety common law claims," that the bankruptcy court had retained exclusive jurisdiction). Since RFC is asserting claims over which the Bankruptcy Court explicitly retained jurisdiction, for the benefit of its creditors, the case is unquestionably "related to" the bankruptcy case through the "conceivable effect test." *See Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir. 2011) ("If [plaintiffs are] successful in their claims against [the defendant], the funds they recover will benefit the . . . bankruptcy estates. It is not difficult to conclude that the 'conceivable effect' test is satisfied." (citation omitted)).

Of note, many defendants in similar actions initiated by RFC have conceded related-to bankruptcy jurisdiction. *See, e.g.,. Def.'s Notice of Removal, Residential Funding Co., v. DB Structured Products, Inc.*, No. 14-0143 (D. Minn.), Dkt. 1 ("This Action . . . clearly 'relates to' [RFC's] bankruptcy proceedings because the indemnification amounts the Defendant allegedly owes Plaintiff 'could conceivably have any effect on,' the distribution of assets from RFC's bankruptcy estate."). Indeed, one of the defendants, HSBC, itself argued that Plaintiff's claims are "related to" the bankruptcy proceeding in its motion to transfer the case to the Bankruptcy

13

Court. *Residential Funding Company, LLC v. HSBC Mortgage Corp. (USA)*, 14-CV-0144 (Def. Mem. (Dkt. 12) at 6) (arguing that "this case is 'related to' the bankruptcy, as RFC alleges that its decision to file for bankruptcy was driven by damages for which it now seeks indemnification from HSBC, and that it was forced to settle numerous of the underlying loan claims after the filing of proofs of claim in the bankruptcy") (citations to Complaint omitted).  That action since has been transferred to the Bankruptcy Court pursuant to a consent stipulation by the parties. *Residential Funding Co., LLC v. HSBC Mortg. Corp. (USA)*, 14-01915-mg.

## II.    SUNTRUST'S ARGUMENTS CONCERNING THE PURPORTED EFFICIENCIES OF WITHDRAWING THE REFERENCE, AS WELL AS THE OTHER *ORION* FACTORS, ARE IRRELEVANT AND ULTIMATELY UNAVAILING

At this case's most recent conference, on March 7, 2014, Suntrust indicated its intent to argue that the District Court should adjudicate this case due to purported efficiencies and other arguments related to the *Orion* factors delineated below.  Even if those arguments were relevant at this stage—which they are not, for the reasons discussed above—they fail on their own terms in light of the extraordinary efficiencies and benefits that would result from referral of this action to the Bankruptcy Court.  As Judge Castel held just last week in another of RFC's actions, "[t]hat the bankruptcy court's jurisdiction is not 'exclusive' or that it may 'at most make proposed findings' does not dissuade this Court from referring the matter to bankruptcy court." *Greenpoint*, 13-CV-8937 (Dkt. 41) (reaffirming referral to Judge Glenn).

The Second Circuit has held, in addressing the test for withdrawing the reference, that it "should weigh questions of efficient use of judicial resources."  *In re Orion Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993).  Here, those efficiencies overwhelmingly favor referral to the Bankruptcy Court.  Additionally, other considered factors for withdrawal include "delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other

14

related factors." *Id.* These factors similarly weigh strongly in favor of the Bankruptcy Court's adjudication of Plaintiff's claims.

### A. Efficient Use of Judicial Resources Favors Allowing the Bankruptcy Court to Preside Over Pre-Trial Proceedings

The efficient use of judicial resources clearly militate against withdrawal of the automatic reference to the Bankruptcy Court. As an initial matter, Bankruptcy Judge Glenn has extensive experience with—and understanding of—the specific settlements and other matters at issue here. RFC's underlying bankruptcy proceeding involved protracted and deeply contested proceedings before Judge Glenn, involving days of trial and other hearings, scores of parties, hundreds of pages of briefs and expert reports, and billions of dollars in claims. In managing and overseeing those proceedings, the Bankruptcy Court developed and mastered the factual and legal issues relevant to the very same defective loans, RMBS, settled legal claims, and alleged breaches of representations and warranties that underlie the instant actions. As such, the Bankruptcy Court is intimately familiar with the facts and claims that were the essential drivers of the bankruptcy case and the Plan's resulting complex Debtor-creditor settlements, giving rise to the indemnity claims at issue in this action. The Bankruptcy Court is uniquely positioned to oversee this and related actions efficiently.

Notwithstanding Judge Glenn's extraordinary expertise concerning the facts and claims at issue here, Suntrust suggested at the March 7 hearing that no efficiencies would result from litigating this action before Judge Glenn because Suntrust ultimately may maintain that under the Supreme Court's *Stern v. Marshal* decision (113 S. Ct. 2595), the Bankruptcy Court has no authority to issue a final judgment. That argument is irrelevant in the context of the Standing Order, and, moreover, contradicts the longstanding holdings of courts in this District, which have

long recognized that considerations of efficiency weigh decisively in favor bankruptcy court adjudication even in cases involving non-core claims.

Decisions recognizing the benefits of pretrial proceedings before Bankruptcy Courts are legion. In one case, the court denied a motion to withdraw the reference in a non-core matter because, "most importantly," the bankruptcy judge was "familiar with the salient issues in all the cases and [] far more able to supervise all of them together, unless and until a jury trial is necessary." *Enron Power Mktg., Inc. v. City of Santa Clara (In re Enron Power Mktg., Inc.)*, No. 01-CV-7964, 2003 WL 68036, at *11 (S.D.N.Y. Jan. 8, 2003). In another case, the court reached the same result as to core and non-core matters, in part because "the bankruptcy court's familiarity with th[e] matter put[] it in the best position to oversee th[e] litigation." *Adelphia Commc'ns Corp. v. Rigas*, 02-CV-8495, 2003 WL 21297258, at *2 (S.D.N.Y. June 4, 2003); *see also In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1391 (2d Cir. 1990) (transfer or withdrawal from bankruptcy court with a "learning curve" advantage would delay resolution and undermine interest of justice). In none of these cases did the court mandate withdrawal of an action from Bankruptcy Court merely because the bankruptcy judge could not enter final judgment.

The preference for adjudicating pretrial matters and even trials in Bankruptcy Court has continued even after the Supreme Court, in *Stern v. Marshall*, 131 S. Ct. 2595 (2011), restricted bankruptcy courts' power to enter final judgments. Just last year, a New York district court observed that *Stern* has not altered the consensus view that litigation related to a bankruptcy should usually remain in Bankruptcy Court at least until trial, and often for trial too:

> Multiple courts in this District have already concluded that, although *Stern* prevents the Bankruptcy Court from entering final judgment on [certain matters], *considerations of efficiency and uniformity counsel in favor of permitting the Bankruptcy Court to issue proposed findings of fact and conclusions of law*.

16

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 490 B.R. 46, 58 (S.D.N.Y. 2013)

(citations omitted) (emphasis added); *see also In re Lyondell Chem. Co.*, 467 B.R. 712, 723-24

(S.D.N.Y. 2012) (declining to withdraw the reference for pretrial proceedings in part because

efficiency would be served by the continued administration of the Bankruptcy Court that

presided over the bankruptcy case); *In re Heller Ehrman LLP*, 464 B.R. 348, 358 (N.D. Cal.

2011) (denying motion to withdraw the reference because even though bankruptcy court could

not enter final judgment on certain claims, "*[w]ithdrawal at this point would forego the services*

*of a bankruptcy court ready, willing and able to do its job*" and therefore "[e]fficiency mandates

the bankruptcy court's retention of this matter") (emphasis added).

In particular, where a bankruptcy court has extensive experience with a case,

considerations of efficiency and uniformity weigh strongly in favor of adjudication of the case by

that court:

> The bankruptcy court has been administering the Extended Stay bankruptcy for
> over two years. Judicial economy would be promoted by allowing the bankruptcy
> court, already familiar with the extensive record in this case, to initially adjudicate
> these cases. . . . Even if *Stern* precludes the bankruptcy court from entering final
> judgments as to certain claims, the bankruptcy court's proposed findings of fact
> and conclusions of law will narrow the issues to be resolved by this Court.

*In re Extended Stay, Inc.*, 466 B.R. 188, 206-07 (S.D.N.Y. 2011); *see also In re The Mortgage*

*Store, Inc.*, 464 B.R. 421, 429 (D. Hawaii 2011) ("Withdrawal of reference at this stage would

result in this court losing the benefit of the bankruptcy court's experience in both the law and

facts, resulting in an inefficient allocation of judicial resources.") (citation omitted).  Notably,

contrary to Suntrust's arguments at the March 7 hearing, these efficiency gains are not obviated

by any potential need for *de novo* review of the Bankruptcy Court's proposed findings of facts

and conclusions of law.  *See Madoff Securities*, 490 B.R. at 58 ("The hypothetical possibility of

duplicative proceedings, however, cannot outweigh the efficiency of receiving the

recommendation of a [bankruptcy] court . . . .").  Indeed, the very procedural processes for *de novo* review of objected-to portions of a report and recommendation, *see* Fed. R. Bankr. P. 9033(b) and (d), suggest that where a case is best suited for the Bankruptcy Court, the mere need for *de novo* review is not cause for district court adjudication in the first instance.

This consensus even following *Stern* that a bankruptcy court should adjudicate in the first instance even claims upon which it cannot issue a final judgment is consistent with the statement of the Supreme Court in *Stern* that its decision would not "meaningfully change[] the division of labor" between bankruptcy and district courts.  *Stern*, 131 S. Ct. at 2620.  As a district court commented in response to a party's request for withdrawal in light of final adjudication questions raised by *Stern*, the "request, if granted, would dramatically restructure the division of labor between district courts and bankruptcy courts by requiring that district courts hear a substantial percentage of adversary proceedings."  *In re Extended Stay*, 466 B.R. at 202.

Here, the efficiency factors analyzed in *Orion* weigh overwhelmingly in favor of Bankruptcy Court adjudication.  As described above, it is not just any bankruptcy judge who would address this case and RFC's many others upon referral to Bankruptcy Court, but rather Judge Glenn, who is intimately familiar with the settlements for which RFC now seeks indemnification, as well as the loans, R&Ws, and expert methodologies relating to those settlements.  Particularly now that RFC's claims against HSBC, Greenpoint, and UBS are pending before Judge Glenn, there is no "efficiency" in requiring this Court to reconstruct the factual, legal, and procedural history from scratch.  Under these circumstances, it is clear that, at a minimum, "[j]udicial economy would be promoted by allowing the bankruptcy court, already familiar with the extensive record in this case, to initially adjudicate these cases."  *In re Extended Stay*, 466 B.R. at 206.

18

B.    **The Other *Orion* Factors Also Favor Bankruptcy Court Adjudication**

*Uniformity of Bankruptcy Administration*.  This is one of numerous similar proceedings RFC has filed against Mortgage Originators.  At least three are already before the Bankruptcy Court, all referred via the Standing Order, and many others are the subject of pending transfer motions.  Consistent adjudication will be far more likely if this and the related cases are subject to rulings by a single court, particularly—as here—a Bankruptcy Court that has extensive knowledge and experience with these facts and claims.  Allowing bankruptcy courts to determine issues of bankruptcy law "before they come to the district court for de novo review promotes a more uniform application of bankruptcy law."  *In re Extended Stay*, 466 B.R. at 207; *see also In re The Mortgage Store*, 464 B.R. at 429 (withdrawal of referral to bankruptcy court "would result in [the district] court losing the benefit of the bankruptcy court's experience in both the law and facts . . .").

Moreover, the practice of allowing the bankruptcy courts to exercise their expertise in these matters by initially adjudicating them is a central feature of the division of labor in the bankruptcy system.  *See In re Extended Stay*, 466 B.R. at 207 ("Allowing the bankruptcy courts to consider complex questions of bankruptcy law before they come to the district court for de novo review promotes a more uniform application of bankruptcy law.").  This is precisely the division of labor that the *Stern* court indicated it did not intend to "meaningfully change[]." Stern, 131 S. Ct. at 2620.

*Forum Shopping*.  Neither the Bankruptcy Court nor this Court has issued any substantive rulings in any of RFC's actions, so any notion that RFC is forum shopping is outlandish—Suntrust has not and cannot point to any supposed unfair benefit or improper motive by RFC in seeking enforcement of this Court's Standing Order.  To the contrary, the only party arguably engaged in forum shopping is Suntrust itself, which is unaccountably seeking to prevent

19

this action from being litigated before the Judge best able to efficiently resolve the claims at issue.

 ***Costs and Delays***.  No additional costs or delays will result from this case being adjudicated in the first instance by the Bankruptcy Court.  Indeed, any additional costs or delays would result from *this* Court being deprived of the Bankruptcy Court's expertise and knowledge regarding the law and facts at issue.  Additionally, as explained above, if this case is referred to the Bankruptcy Court, any motion to withdraw the reference by Suntrust will not impede the progression of the case during the pendency of that motion.  Fed. R. Bankr. P. 5011.  Referral to the Bankruptcy Court would therefore *reduce* delays, not create them.

 The foregoing factors, combined with the clear judicial and administrative efficiencies discussed above, make clear the benefits of Bankruptcy Court adjudication of this action.  In short, even if this Court could properly evaluate arguments relating to the withdrawal of the reference *even before the case is referred*—which it cannot—Suntrust is unable to show that the proceeding should not be referred automatically pursuant to the Standing Order.

**CONCLUSION**

 This Court should grant RFC's motion to confirm the application of the Standing Order, and refer this action to the Bankruptcy Court.

20

Dated:  April 7, 2014

QUINN EMANUEL URQUHART
  & SULLIVAN, LLP

BY:   /s/ Peter E. Calamari
Peter E. Calamari
Isaac Nesser
Alex Rossmiller
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York  10010
Telephone:  (212) 849-7000
Facsimile:  (212) 849-7100
PeterCalamari@quinnemanuel.com
JonPickhardt@quinnemanuel.com
IsaacNesser@quinnemanuel.com
AlexRossmiller@quinnemanuel.com

*Attorneys For Plaintiff Residential*
*Funding Company, LLC*