UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RESIDENTIAL FUNDING COMPANY, LLC,

                              Plaintiff,

        -v.-

SUNTRUST MORTGAGE, INC.,

                              Defendants.

No. 13-civ-8938

ORAL ARGUMENT REQUESTED

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO FED. R. CIV. P. 8 AND 12(b)(1) & (6)

ALSTON & BIRD LLP

John P. Doherty
Jennifer S. Kozar
90 Park Avenue
New York, New York 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444

*Attorneys for Defendant SunTrust Mortgage, Inc.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... iii

SUMMARY OF TERMS ......................................................................................... vii

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND ................................................ 3

    A. Parties' History .......................................................................................... 3

    B. RFC's Bankruptcy ..................................................................................... 3

    C. Procedural History ..................................................................................... 6

ARGUMENT ............................................................................................................. 7

I. RFC LACKS STANDING TO PURSUE ANY OF ITS CLAIMS ...................... 7

    A. RFC Had Already Transferred All of Its Rights and Interests Under
    the Agreements Prior to Initiating This Action ......................................... 8

    B. RFC Transferred Its Rights and Interests in the Loans to Third Parties
    Years Before Filing Suit ............................................................................ 10

    C. RFC Cannot Cure Its Lack of Standing .................................................... 12

II. THE COMPLAINT MUST BE DISMISSED UNDER *IQBAL* AND *TWOMBLY* ..... 12

III. COUNT I MUST BE DISMISSED ................................................................... 15

    A. RFC's R&W Breach of Contract Claims are Untimely ........................... 15

        1. New York's Borrowing Statute Selects Delaware's Three-Year
        Statute of Limitations ........................................................................ 16

        2. R&W Claims are Untimely ................................................................ 17

        3. RFC's Complaint is a Nullity for Failure to Satisfy a Condition Precedent ..... 19

IV. COUNT II MUST BE DISMISSED ................................................................. 20

A. RFC Does Not and Cannot Plead It Incurred Out-of-Pocket Losses
to Third Parties Caused by SunTrust's R&W Breaches ........................................20

B. RFC's Indemnification Claim Fails Because It Is Based on R&W
Breach Claims ...........................................................................................................23

C. The Complaint and Amended Complaint Fail to Toll the Statute of
Limitations ...............................................................................................................24

CONCLUSION.............................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                                                                   **Page(s)**

*Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat'l Ass'n,*
   731 F.2d 112 (2d Cir.1984)..............................................................................................9

*ACE Sec. Corp. v. DB Structured Prods., Inc.,*
   112 A.D.3d 522, 977 N.Y.S.2d 229 (1st Dep't 2013) ...........................................15, 18, 19, 24

*American Financial International Group-Asia, L.L.C. v. Bennett,*
   No. 05 CIV. 8988 (GEL), 2007 WL 1732427 (S.D.N.Y. June 14, 2007) ..............................15

*Amusement Indus., Inc. v. Stern,*
   No. 07 Civ. 11586(LAK), 2011 WL 6811018 (S.D.N.Y. Dec. 28, 2011)................................9

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009).................................................................................12, 13, 15, 24

*Baena v. Woori Bank,*
   05 CIV. 7018(PKC), 2006 WL 2935752 (S.D.N.Y. Oct. 11, 2006).......................................16

*Bank of India v. Trendi Sportswear, Inc.,*
   89 CIV. 5996, 2002 WL 1836754 (S.D.N.Y. Aug. 12, 2002),
   *aff'd,* 64 F. App'x 827 (2d Cir. 2003)......................................................................23

*Bank of India v. Trendi Sportswear, Inc.,*
   89 CIV.5996 JSM, 2002 WL 84631 (S.D.N.Y. Jan. 18, 2002),
   *aff'd,* 64 F. App'x 827 (2d Cir. 2003)...............................................................20, 22

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007)................................................................................12, 13, 15, 24

*Carter v. Safety-Kleen Corp.,*
   06 CV 12947 CM GAY, 2007 WL 1180581 (S.D.N.Y. Mar. 14, 2007)................................10

*Citigroup Mortgage Loan Trust 2007-AMC3 ex rel. U.S. Bank, Nat. Ass'n v. Citigroup*
   *Global Markets Realty Corp.,*
   13 CIV. 2843 GBD, 2014 WL 1329165 (S.D.N.Y. Mar. 31, 2014)..................................19, 24

*Clarex Ltd. v. Natixis Sec. Am. LLC,*
   12 CIV. 0722 PAE, 2012 WL 4849146 (S.D.N.Y. Oct. 12, 2012)..........................8, 9, 11, 12

*Cortlandt St. Recovery Corp. v. Deutsche Bank AG, London Branch,*
   12 CIV. 9351 JPO, 2013 WL 3762882 (S.D.N.Y. July 18, 2013).......................................8, 12

*D'Angelo v. Petroleos Mexicanos,*
   398 F. Supp. 72 (D. Del. 1975).................................................................................17

**Cases**                                                                                                    **Page(s)**

*Disability Advocates, Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.*,
    675 F.3d 149 (2d Cir. 2012)................................................................................12

*Hamill v. Mut. of Am. Inv. Corp.*,
    79 A.D.3d 478, 913 N.Y.S.2d 62 (1st Dep't 2010) ...............................................23

*Hobbs v. Scorse*,
    59 A.D.2d 1037, 399 N.Y.S.2d 783 (4th Dep't 1977)............................................23

*Hooper Assocs., Ltd. v. AGS Computers, Inc.*,
    74 N.Y.2d 487, 549 N.Y.S.2d 365 (1989) .............................................................23

*Hutton Const. Co., Inc. v. Cnty. of Rockland*,
    52 F.3d 1191 (2d Cir. 1995)..................................................................................23

*In re Coudert Bros. LLP*,
    673 F.3d 180 (2d Cir. 2012)..........................................................................16, 17

*In re Gaston & Snow*,
    243 F.3d 599 (2d Cir. 2001)..................................................................................16

*Ledwith v. Sears Roebuck & Co.*,
    231 A.D.2d 17, 660 N.Y.S.2d 402 (1st Dept.1997)...............................................16

*Lehman XS Trust, Series 2006-4N ex rel. U.S. Bank Nat. Ass'n v. Greenpoint Mortgage Funding, Inc.*,
    13 CIV. 4707 SAS, 2014 WL 108523 (S.D.N.Y. Jan. 10, 2014) .........................15, 18, 19, 24

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000)....................................................................................8

*Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*,
    418 F.3d 168 (2d Cir. 2005)..................................................................................23

*PPI Enters. (U.S.), Inc. v. Del Monte Foods Co.*,
    05-6885-CV (L), 2006 WL 3370698 (2d Cir. Nov. 20, 2006) ..............................23

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000)....................................................................................10

*San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*,
    75 F.3d 801 (2d Cir. 1996)....................................................................................10

*Torchlight Loan Servs., LLC v. Column Fin., Inc.*,
    11 CIV. 7426 RWS, 2012 WL 3065929 (S.D.N.Y. July 25, 2012).........................13

**Cases**                                                                                    **Page(s)**

*Two Pepper Music v. Rhino Records, Inc.,*
    173 F.3d 846 (2d Cir. 1999)................................................................................9

*Verizon Directories Corp. v. Continuum Health Partners, Inc.,*
    74 A.D.3d 416, 902 N.Y.S.2d 343 (1st Dep't 2010) ......................................16, 17

*Wagnoon v. N.Y.S. Dep't of Corr. Servs.,*
    00-Civ.-3072, Docket Nos. 3 and 4 (S.D.N.Y. July 24, 2000) ...............................7

*Wavedivision Holdings, LLC v. Highland Capital Mgmt. L.P.,*
    CIV.A. 08C-11-132JOH, 2011 WL 5314507 (Del. Super. Nov. 2, 2011),
    *aff'd*, 49 A.3d 1168 (Del. 2012)...........................................................................17

**Statutes and Rules**

11 U.S.C. § 1125 ......................................................................................................4

Fed. R. Civ. P. 8 ................................................................................................. *passim*

Fed. R. Civ. P. 12(b)(1)....................................................................................8, 9, 12

Fed. R. Civ. P. 12(b)(6)....................................................................................1, 15

Fed. R. Civ. P. 41(b) ..............................................................................................7

N.Y. C.P.L.R. § 202 .....................................................................................15, 16, 17

N.Y. C.P.L.R. § 213(2) .........................................................................................18

10 Del. C. § 8106 ....................................................................................................15

**Other Authorities**

http://www.kccllc.net/rescap/document/1212020130823000000000001
    (last accessed on May 20, 2014) ........................................................................4

http://www.kccllc.net/rescap/document/1212020130823000000000019
    (last accessed on May 20, 2014) ........................................................................4

http://www.kccllc.net/rescap/document/1212020131112000000000074
    (Last accessed May 20, 2014).........................................................................14

http://www.kccllc.net/rescap/document/1212020131210000000000029
    (last accessed May 20, 2014) ...........................................................................5

http://www.kccllc.net/rescap/document/1212020131210000000000031
    (last accessed on May 20, 2014) ........................................................................4

**Other Authorities**                                                                                          **Page(s)**

http://www.kccllc.net/rescap/document/121202013121110000000000008
(last accessed on May 20, 2014) ............................................................................4

http://www.kccllc.net/rescap/document/121202013121110000000000009
(last accessed on May 20, 2014) ............................................................................4

http://www.kccllc.net/rescap/document/882290012051140000000000002
(last accessed on May 20, 2014) ............................................................................3

http://www.marketwatch.com/investing/stock/RESCU?countrycode=US
(last accessed on May 20, 2014) ............................................................................6

http://www.sec.gov/Archives/edgar/data/1339717/000133971705000003/qa10aa.txt
(last accessed on May 20, 2014) ..........................................................................11

http://www.sec.gov/Archives/edgar/data/1396664/000139666407000005/qs7ssfinal.htm
(last accessed May 20, 2014) ..............................................................................11

http://www.sec.gov/Archives/edgar/data/1402889/000140288907000013/sp2aa.htm
(last accessed on May 20, 2014) ..........................................................................10

## SUMMARY OF TERMS

| | |
|---|---|
| **Amended Complaint:** | The Amended Complaint filed by RFC in this action on April 8, 2014 |
| **Bankruptcy Court:** | The United States Bankruptcy Court for the Southern District of New York |
| **Bankruptcy Proceedings:** | The proceedings in *In re Residential Capital, LLC*, 1:12-bk-12020 (Bankr. S.D.N.Y. May 14, 2012) |
| **Client Guide:** | The "GMAC-RFC" Client Guide, excerpts attached to the Doherty Decl. as Exs. 8 & 9, and attached to the Amended Complaint as Ex. B |
| **Complaint:** | The Complaint filed by RFC in this action on December 17, 2013 |
| **Doherty Decl.:** | Declaration of John P. Doherty in Support of Defendant SunTrust's Motion to Dismiss the Amended Complaint, dated May 20, 2014 |
| **Effective Date:** | The December 17, 2013 date when the Plan was legally binding on all parties |
| **Event of Default:** | As defined in Section A208 of the Client Guide, *inter alia*, a R&W breach |
| **Liquidating Trust Agreement:** | *ResCap Liquidating Trust Amended and Restated Liquidating Trust Agreement*, Docket No. 6064-1 |
| **Liquidating Trust:** | The ResCap Liquidating Trust (OTCMKTS: RESCU) |
| **Loans:** | The mortgage loans purchased by RFC from SunTrust under Seller Contracts |
| **May 2007 Contract:** | Client Contract between GMAC Bank and SunTrust Mortgage, Inc. dated May 17, 2007, attached to the Doherty Decl. as Ex. 7 |
| **Notice and Appeal:** | Section 402 of the Client Guide providing SunTrust the right to appeal a determination by RFC of an Event of Default within 30 days of receiving notice from RFC |
| **Order:** | *Order Confirming Second Amended Joint Chapter 11 Plan* |

|  | *Proposed By Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors*, Docket No. 6065, on December 11, 2013 |
|---|---|
| **Plan:** | *Second Amended Joint Chapter 11 Plan Proposed By Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors*, Docket No. 6030 |
| **R&Ws:** | Representations and warranties for individual Loans set forth in the Client Guide |
| **RFC:** | Plaintiff Residential Funding Company, LLC |
| **RMBS:** | Residential mortgage back securities |
| **Seller Contracts:** | Agreements from 1986, 1987, 1991, and 1994 attached to the Amended Complaint as Ex. A |
| **Seller Guide:** | Guides applicable to Loan sales which RFC did not attach and are incorporated by reference by the Seller Contracts |
| **Servicer Guide:** | Guides applicable to Loan servicing which RFC did not attach and are incorporated by reference by the Servicer Contracts |
| **SunTrust:** | Defendant SunTrust Mortgage, Inc. |
| **Termination Letter:** | GMAC Bank and RFC's Notice of Events of Default, Termination of Commitments and Reservation of Rights sent to SunTrust Mortgage, Inc. dated August 21, 2007, attached to the Doherty Decl. as Ex. 1 |

## PRELIMINARY STATEMENT

Defendant SunTrust hereby moves this Court to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 8 and 12(b)(1) & (6).

First, RFC lacks standing to pursue this action. Prior to filing the Complaint, RFC had assigned its rights, if any, to pursue SunTrust in connection with the Loans and relevant contracts to third-parties.

(1) In connection with RFC's bankruptcy, prior to the commencement of this action, RFC alleges it assigned all of its rights as against SunTrust under the relevant sales contracts to a separate and distinct legal entity, the Liquidating Trust. When RFC filed the Complaint, the Liquidating Trust had the exclusive right to pursue the claims that RFC brings in this action.

(2) In connection with the sale and securitization of Loans, RFC assigned all right, title and interest, including contract rights, to these Loans, retaining nothing for itself.

Second, the Amended Complaint fails to satisfy the pleading standard under Rule 8 and *Iqbal/Twombly*. In this litigation, for every Loan for which RFC seeks recovery, RFC will have to show *specifically* how that Loan breached *specific* R&Ws, that the breach is material, and that it caused RFC damages. Every Loan will be assessed individually on its own merits. Thus, to satisfy the pleading standard in this case, RFC has to provide enough facts concerning purported R&W breaches for each Loan at issue in this litigation to show an entitlement to relief that is plausible on its face. With the exception of four Loans identified in the Amended Complaint, RFC has failed to plead sufficient facts suggestive of a breach for any other Loans in this case. Even with the benefit of an additional four months between the filing of the Complaint and the

Amended Complaint, RFC is still unable to provide even the most basic factual detail to support its claims.

More specifically, the Amended Complaint does not detail: (a) the specific Loans at issue; and (b) how these unidentified Loans allegedly breached unspecified R&Ws. Consider these questions – how many Loans will be at issue here? One? 10,000? Which Loans? What are the R&W breaches? Which contract and version of the Client Guide apply? Which specific Loan file(s) (of more than 10,000) would SunTrust review first to start assessing RFC's claims? The Amended Complaint provides no answers. That mandates dismissal.

Third, Count I (representation and warranty breaches) should be dismissed. Count I is untimely under Delaware's three-year statute of limitations. For every SunTrust Loan, the statute of limitations for R&W claims commenced on the date the Loan was sold to RFC. SunTrust last sold a loan to RFC on April 10, 2007; thus, the statute of limitations expired no later than April 10, 2010. The Complaint filed in December 2013 is time-barred. In addition, RFC failed to satisfy a condition precedent because it did not provide written notice of purported R&W breaches prior to filing suit, which (separately) requires dismissal under the First Department's recent seminal *ACE II* decision addressing RMBS R&W claims.

Count II (indemnification) should likewise be dismissed. RFC cannot state a claim for indemnification because it has not, and will not, incur losses to third-parties due to SunTrust. The key inquiry is the structure and terms of RFC's settlement with its creditors in the bankruptcy case. Critically, in connection with the settlement, RFC *did not incur* any out-of-pocket losses *i.e.*, pay money to creditors. Rather, RFC alleges it *assigned* the claim filed in this action (and others) to a third party (the Liquidating Trust) for the benefit of creditors, in exchange for a full and final release. Thus, RFC has not sustained an indemnifiable loss under

New York law. In addition, even if RFC has sustained actual out-of-pocket losses, RFC cannot make the required showing that these losses were caused by SunTrust's R&W breaches.

Accordingly, the Amended Complaint should be dismissed with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    Parties' History

According to the Amended Complaint, SunTrust sold over 10,000 residential mortgage loans to RFC from 1993 through 2007 under various contracts. *See* Am. Compl., Ex. C. RFC alleges that in connection with these Loan sales, SunTrust made certain R&Ws regarding characteristics of the Loans. *See* Am. Compl. ¶ 24. RFC does not allege which specific Loans breached specific R&Ws. RFC alleges that SunTrust sold its last Loan to RFC on April 10, 2007 (*see id.*, Ex. C.), and the parties relationship was terminated on August 21, 2007. *See* Doherty Decl., Ex. 1.

### B.    RFC's Bankruptcy

On May 14, 2012, RFC and 50 of its affiliates filed voluntary bankruptcy petitions in the Bankruptcy Court. *E.g., In re Residential Capital, LLC*, 1:12-bk-12020, Docket No. 1 (Bankr. S.D.N.Y. May 14, 2012).[1] Judge Martin Glenn was assigned as the bankruptcy judge. SunTrust did not (i) participate in RFC's bankruptcy, (ii) file a proof of claim, (iii) vote on RFC's Plan, or (iv) otherwise appear in RFC's bankruptcy case. Neither SunTrust's agreements with RFC nor Loans sold by SunTrust to RFC were specifically addressed in RFC's bankruptcy.

In RFC's bankruptcy, a number of RMBS trusts, investors and other third parties asserted various claims against RFC arising from RFC's loan sale, servicing and securitization business. These claims arose from RFC's conduct in connection with securitization and loan sale

---

[1] http://www.kccllc.net/rescap/document/882290012051400000000000002 (last accessed on May 20, 2014).

agreements involving RFC and these parties (not SunTrust). Following months of settlement negotiations, RFC and these parties agreed to a settlement. *See id.* at Docket No. 6066 ¶ 121.[2]

In connection with the settlement, in August 2013, the Bankruptcy Court entered an order approving RFC's Disclosure Statement, which described the proposed settlement set forth in the Plan. *Id.* at Docket Nos. 4809 & 4819; *see* 11 U.S.C. § 1125.[3] On December 11, 2013, the Bankruptcy Court entered the Order confirming the Plan and approving the settlement. *Id.* at Docket No. 6065.[4]

In connection with the settlement, RFC does not allege it paid any money to these creditors. Instead, these creditors were granted allowed general unsecured claims totaling more than $8.7 billion. *See* Am. Compl. ¶¶ 64-78. The Plan established the Liquidating Trust, a Delaware statutory trust, governed by a Liquidating Trust Agreement. *See id.* at Docket No. 6064.[5] On the Plan's Effective Date, which was December 17, 2013, the Liquidating Trust was automatically vested with substantially all of RFC's assets, including any putative claims against SunTrust and other loan originators. According to the Plan, "[o]n the Effective Date, the Debtors were … directed to transfer, grant, assign, convey, set over, and deliver to the Liquidating Trustees, for the benefit of the Liquidating Trust … all of the Debtors' and Estates' right, title and interest in and to the Available Assets …." *See In re ResCap*, Docket No. 6065-1, at 85; *see also* Docket No. 6064-1, at 19 ("On the Effective Date, the Debtors shall transfer all of the Available Assets … to the Liquidating Trust…."). "Available Assets" include actions against

---

[2] http://www.kccllc.net/rescap/document/1212020131211000000000008 (last accessed on May 20, 2014).

[3] http://www.kccllc.net/rescap/document/1212020130823000000000001;
http://www.kccllc.net/rescap/document/1212020130823000000000019 (last accessed on May 20, 2014).

[4] http://www.kccllc.net/rescap/document/1212020131211000000000009 (last accessed on May 20, 2014).

[5] http://www.kccllc.net/rescap/document/1212020131210000000000031 (last accessed on May 20, 2014).

SunTrust.[6] RFC had therefore transferred any putative claim against SunTrust to the Liquidating Trust before it commenced this action.

According to the Liquidating Trust Agreement, "the Liquidating Trust shall be the successor-in-interest to the Debtors with respect to any Liquidating Trust Cause of Action … that was or could have been commenced by any of the Debtors prior to the Effective Date …." *See In re Residential Capital*, 12-bk-12020, Docket No. 6064-1, Ex. 1, § 2.3(a) at 13. All legal claims against RFC were discharged in the Bankruptcy Proceedings. *See* Docket No. 6065, at 34; *id.* at 56-57, ¶ 42. RFC will be dissolved, if it has not already.[7]

When the Plan became effective on December 17, 2013, the Liquidating Trust immediately succeeded to all of RFC's rights and interest, including its litigation claims against SunTrust.[8] In the Amended Complaint, RFC states that "RFC filed this suit on December 17, 2013, *after* RFC's RMBS-related liabilities became fixed through confirmation of the Plan. The Plan became effective on December 17, 2013. Pursuant to the Plan, the Trust succeeded to all of RFC's rights and interests, including its litigation claims against SunTrust." Am. Compl. at ¶ 79 (emphasis added). From that Effective Date forward, the Liquidating Trust had the sole and exclusive right to bring this action:

---

[6] "Available Assets" are defined as, among other things, "Liquidating Trust Causes of Action." [*See id.* Docket No. 6065-1, at 10.] "Liquidating Trust Causes of Action" include actions against SunTrust. [*See id.* Docket No. 6063, at 20, 42, 66, 88, http://www.kcclic.net/rescap/document/1212020131210000000000029 (last accessed May 20, 2014).]

[7] On the Effective Date, RFC was subject to dissolution by the Liquidating Trust Board. "Pursuant to Article IV.P of the Plan, the Debtors will be dissolved on or after the Effective Date." *See In re ResCap*, Docket No. 6065, at 6. "On and after the Effective Date, the Liquidating Trust Board shall be authorized, in its sole and absolute discretion, to take all actions reasonably necessary to manage or dissolve the Debtors and their subsidiaries …." *See id.* at 44, ¶ 26.

[8] Consistent with this authority, on May 14, 2014, the Liquidating Trust, not RFC, filed approximately ten new adversary proceedings against loan sellers in the Southern District. *See, e.g., Rescap Liquidating Trust v. Bank of America N.A., et al*, S.D.N.Y. No. 12-12020 (May 14, 2014).

> The Liquidating Trust has the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any Causes of Action … without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court.

*See In re ResCap*, Docket No. 6065, at 67, ¶ 49.

The Liquidating Trust issued beneficial interests in the form of liquidating trust units to creditors holding allowed claims. Liquidating Trust unit holders are entitled to receive a pro rata distribution to the extent that the Liquidating Trust recovers against third parties. *See generally id.*, Docket No. 6064. As such, the Liquidating Trust operates as a pass through entity by which RFC's creditors (and successor unit holders) stepped into RFC's shoes and can seek recovery against RFC's contractual counterparties, such as SunTrust.

The Liquidating Trust is publicly traded (OTCMKTS: RESCU) and, on average, more than 1 million units are bought and sold each day.[9]

### C.    Procedural History

On December 17, 2013, RFC filed its Complaint against SunTrust. Contemporaneously with the filing of this case, RFC, over a five day period beginning on December 12, 2013 through December 17, 2013, filed over 70 nearly identical lawsuits against other originators, using a cookie-cutter, placeholder complaint. RFC filed most of these cases in Minnesota. Including this case, only three were filed in the Southern District of New York.[10]

On March 5, 2014, SunTrust filed a motion to dismiss RFC's Complaint. *See id.*, Docket No. 16. On March 7, 2014, the Court held a status conference at which RFC requested the case be automatically referred to the bankruptcy court, despite not having pled bankruptcy jurisdiction

---

[9] http://www.marketwatch.com/investing/stock/RESCU?countrycode=US (last accessed on May 20, 2014).

[10] *See, e.g., Residential Funding Company, LLC, v. Columbia Home Loans*, 13-cv-08867; *Residential Funding Company, LLC, v. GreenPoint Mortgage Funding, Inc.*, 13-cv-08937.

in its Complaint. SunTrust objected and the Court established an omnibus briefing schedule for RFC's filing of an Amended Complaint, SunTrust's motion to dismiss, and RFC's motion to refer the case to bankruptcy court, to have these motions heard together. *See id.*, Docket No. 18. RFC's deadline to file the Amended Complaint was April 7, 2014 (The Court's Order provided: "Plaintiff's amended complaint shall be filed by April 7, 2014"). *See id.* RFC missed this deadline. Without seeking Court permission for a late filing, on April 8, 2014, RFC filed the Amended Complaint. *See id.*, Docket No. 32.

The Amended Complaint includes two counts: (I) breach of contract for Loan-level R&W breaches; and (II) indemnification. RFC alleges breaches of unidentified R&Ws regarding an indeterminate number of unidentified Loans, aside from the four listed in the Amended Complaint.

## ARGUMENT

### I.    RFC LACKS STANDING TO PURSUE ANY OF ITS CLAIMS

As a threshold matter, without the Court's permission, RFC belatedly filed the Amended Complaint after the Court-ordered April 7, 2014 deadline.[11]

This case should be dismissed for a lack of subject matter jurisdiction because RFC does not have standing to pursue this action. All of RFC's rights and interest in the Loans under the relevant agreements were transferred to separate and distinct legal entities prior to the commencement of this action. As such, the Amended Complaint must be dismissed pursuant to

---

[11] Pursuant to Fed. R. Civ. P. 41(b), this Court has discretion whether to accept the late-filed Amended Complaint. RFC never sought or received Court permission to file the Amended Complaint after the Court's deadline. At a minimum, the Court should require RFC to show good cause for its late filing, absent which this case either should be dismissed (with or without prejudice) or allowed to proceed only upon the original Complaint. *See Wagnoon v. N.Y.S. Dep't of Corr. Servs.*, 00-Civ.-3072, Docket Nos. 3 and 4 (S.D.N.Y. July 24, 2000).

Fed. R. Civ. P. 12(b)(1) because the threshold requirement of subject matter jurisdiction cannot be established, and the Liquidating Trust cannot be substituted or joined to cure this defect.

### A. RFC Had Already Transferred All of Its Rights and Interests Under the Agreements Prior to Initiating This Action

The Court lacks subject matter jurisdiction over this case. "Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is 'properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'" *Clarex Ltd. v. Natixis Sec. Am. LLC*, 12 CIV. 0722 PAE, 2012 WL 4849146, at *3 (S.D.N.Y. Oct. 12, 2012) ("If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim.") (quotations omitted); *see also Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (same).

It is RFC's burden to establish subject matter jurisdiction. *See Cortlandt St. Recovery Corp. v. Deutsche Bank AG, London Branch*, 12 CIV. 9351 JPO, 2013 WL 3762882, at *1 (S.D.N.Y. July 18, 2013) ("The burden of establishing standing falls squarely on "[t]he party invoking jurisdiction.") (quotation omitted); *see also Clarex Ltd.*, 2012 WL 4849146, at *2.

RFC lacks standing to pursue this action because it assigned all of its rights and interests under the relevant agreements to a non-party – the Liquidating Trust – before initiating this lawsuit, and thus no longer had any interest in the Loans or claims against SunTrust.[12] Specifically, as of the December 17, 2013 Effective Date of the Plan, the Liquidating Trust was assigned RFC's claims against SunTrust. *See generally In re Residential Capital*, 12-bk-12020, Docket No. 6065.

---

[12] In contrast, RFC filed some 60+ actions in Minnesota prior to the December 17, 2013 Effective Date of the Plan.

In the Amended Complaint, RFC concedes that it lacked standing to initiate this action: "RFC filed this suit on December 17, 2013, *after* RFC's RMBS-related liabilities became fixed through confirmation of the Plan. *The Plan became effective on December 17, 2013. Pursuant to the Plan, the Liquidating Trust succeeded to all of RFC's rights and interest, including its litigation claims against SunTrust.*" Am. Compl. ¶ 79 (emphasis added).

Thus, RFC lacked standing to file this action and cannot pursue its claims against SunTrust. *See Clarex Ltd.*, 2012 WL 4849146, at *8 (dismissing claims under Fed. R. Civ. P. 12(b)(1) where "plaintiffs' claims arise from the warrants, which plaintiffs had assigned away before the time the original complaint was filed," and concluding that plaintiffs therefore "did not have standing on *any* claim as of [the date they filed suit]) (emphasis in the original); *Amusement Indus., Inc. v. Stern,* No. 07 Civ. 11586(LAK), 2011 WL 6811018, at *4 (S.D.N.Y. Dec. 28, 2011) ("Having assigned any 'right' or 'interest' it had in the payments made pursuant to the Contract to FRG LLC, FRG Corp. plainly lacks standing to initiate a law suit for return of those payments … Rather, the claim to the $1 million down payment belongs to FRG LLC, which is not a party to this motion."); *see also Two Pepper Music v. Rhino Records, Inc.*, 173 F.3d 846 (2d Cir. 1999) (affirming district court's holding that "whatever claims Two Pepper may have had for infringement, the right to sue on them was assigned to All Nations Music … The clear and unambiguous terms of that contract support the district court's holding that Two Pepper lacked standing to sue for infringement"); *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat'l Ass'n,* 731 F.2d 112, 125 (2d Cir.1984) ("An unequivocal and complete assignment extinguishes the assignor's rights against the obligor and leaves the assignor without standing to sue the obligor.").

## B. RFC Transferred Its Rights and Interests in the Loans to Third Parties Years Before Filing Suit

RFC further lacks standing because it assigned *all* of its right and interest in the Loans – including the right to pursue R&W claims against SunTrust – to third parties in connection with the securitization of the Loans. RFC alleges that it sold the Loans it purchased from SunTrust into 105 securitizations, which it identifies in Ex. C to the Amended Complaint. *See* Am. Compl. ¶¶ 2-3, 19, 21, 23, 52, 59 & Ex. C.

Reviewing these 105 securitizations, 69 have publicly filed[13] Assignment and Assumption Agreements, while the remaining 36 do not have publicly filed Assignment and Assumption Agreements.[14] The 69 Assignment and Assumption Agreements show that RFC transferred all right, title and interest in the relevant Loans to the depositor of the securitization, who in turn transferred these rights to the securitization trustee. For example, in the securitization RALI Series 2007-QS7:

- RFC entered into an Assignment and Assumption Agreement with third party depositor Residential Accredit Loans, Inc. in which "**RFC ... assign[ed] to [Residential Accredit Loans] without recourse all of its right, title and interest in and to the Mortgage Loans ....**" (emphasis added). *See* Section 2.[15]

- In turn, Residential Accredit Loans assigned the rights and interests it acquired in the Loans from RFC to the securitization trustee, Deutsche Bank Trust Company

---

[13] In deciding a motion to dismiss, the Court may consider "the full text of documents that are quoted in the complaint or documents that the plaintiff either possessed or knew about and relied upon in bringing the suit." *See Carter v. Safety-Kleen Corp.*, 06 CV 12947 CM GAY, 2007 WL 1180581, at *3 (S.D.N.Y. Mar. 14, 2007) (citing *Rothman v. Gregor*, 220 F.3d 81, 88-89 (2d Cir. 2000); *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808 (2d Cir. 1996)).

[14] A review of those securitizations using the SEC's EDGAR search tool reveals that: Assignment and Assumption Agreements are publicly filed for 69 of the securitizations; publicly filed Pooling and Servicing Agreements for 26 of the securitizations reference an Assignment and Assumption Agreement, but the agreements cannot be located; nine of the securitization are not listed on EDGAR; and one of the securitizations does not contain sufficient documentation to evaluate. *See* Doherty Decl., Ex. 2.

[15] *See* 2007-QS7, http://www.sec.gov/Archives/edgar/data/1396664/000139666407000005/qs7aa.htm (last accessed on May 20, 2014). For the Court's convenience, a true and accurate copy of the Assignment and Assumption Agreement is attached to the Doherty Decl., Ex. 3.

Americas: "[**Residential Accredit Loans**] … does hereby **assign to the Trustee** for the benefit of the Certificateholders without recourse **all the right, title and interest of [Residential Accredit Loans] in and to the Mortgage Loans**…." (emphasis added). *See* Pooling and Servicing Agreement, Section 2.01(a).[16]

In an effort to salvage a portion of its claims, RFC will argue that certain (21 of 69) Assignment and Assumption Agreements contain an express provision under which RFC retained R&W claims against SunTrust even after the assignment of Loans to Residential Accredit Loans, which states:

provided that, notwithstanding the assignment and assumption hereunder, RFC shall have the concurrent right to exercise remedies and pursue indemnification upon a breach by a Seller under any Seller Contract of any of its representations and warranties.[17]

Even if the Court credits RFC's argument that because of this quoted language RFC retained R&W claims for these 21 securitizations, RFC has no such argument for the remaining 48 securitizations that do not contain this express reservation.[18] The lesson: when RFC wanted to retain post-Loan assignment rights to sue loan sellers like SunTrust, it knew how.  At a minimum, RFC lacks standing to pursue R&W and indemnification claims for Loans in the 48 securitizations.

Therefore, even if the Liquidating Trust had not succeeded to RFC's rights and interests in the Loans prior to RFC filing suit, RFC no longer had any rights in connection with all, or at

---

[16] *See* 2007-QS7, http://www.sec.gov/Archives/edgar/data/1396664/000139666407000005/qs7ssfinal.htm (last accessed May 20, 2014). For the Court's convenience, a true and accurate copy of the Pooling and Servicing Agreement is attached to the Doherty Decl., Ex. 4.

[17] *See, e.g.*, 2005-QA10, http://www.sec.gov/Archives/edgar/data/1339717/000133971705000003/qa10aa.txt (last accessed on May 20, 2014). For the Court's convenience, a true and accurate copy of the Assignment and Assumption Agreement is attached to the Doherty Decl., Ex. 5.

[18] Without conceding that RFC did, in fact retain the right to pursue R&W claims against SunTrust for these 21 securitizations, in the event this Court does not dismiss RFC's Amended Complaint in its entirety, the Court should determine whether RFC retained any rights to pursue SunTrust with respect to any Loans included in the 36 securitizations for which relevant information is not publicly available.

least a portion of, the Loans and, therefore, lacked standing. *See Clarex Ltd.*, 2012 WL 4849146, at *3.

### C. RFC Cannot Cure Its Lack of Standing

RFC's lack of standing cannot be cured.  Standing is a jurisdictional defect that cannot be remedied where plaintiff lacked standing when it first filed.  *See Cortlandt St. Recovery Corp.*, 2013 WL 3762882, at *3 ("A court may not permit an action to continue, even where the jurisdictional deficiencies have been subsequently cured, 'if jurisdiction [was] lacking at the commencement of a suit ....'") (quoting  *Disability Advocates, Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.*, 675 F.3d 149, 160 (2d Cir. 2012); *Clarex Ltd.*, 2012 WL 4849146, at *2 (holding that the court had "no jurisdiction to grant a request to substitute the real party in interest ... where [standing] was lacking entirely at the case's outset.").  Even if RFC had its rights and interest assigned back to it by the Liquidating Trust, standing would still not exist: "[P]laintiffs cannot . . . reshuffle their respective rights [midway through a litigation], as a means of manufacturing standing where it was lacking entirely at the case's outset." *See Clarex Ltd.*, 2012 WL 4849146, at *8.[19]

Accordingly, the Amended Complaint must be dismissed pursuant to Fed. R. Civ. P 12(b)(1).

## II.   THE COMPLAINT MUST BE DISMISSED UNDER *IQBAL* AND *TWOMBLY*

The Amended Complaint fails under Rule 8 and *Iqbal/Twombly*.  RFC was required to make a "'showing,' rather than a blanket assertion, of entitlement to relief" under Fed. R. Civ. P. 8. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007).  RFC cannot rely on

---

[19] To the extent RFC argues that it is controlled by the Liquidating Trust and was asserting the rights of its affiliate, that argument fails. "Corporate form matters. Here, there were distinct legal entities, whose separate nature cannot simply be ignored when inconvenient. It is black-letter law that one corporation cannot assert an affiliate's legal rights." *Clarex Ltd.*, 2012 WL 4849146, at *6.

"unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (citing *Twombly*, 550 U.S. at 555). The "sheer possibility that a [Defendant] has acted unlawfully" is inadequate: [Plaintiff] is required to plead "enough facts to state a claim to relief that is plausible on its face," and thereby "nudge[] [its] claims … across the line from conceivable to plausible"; in failing to do so, the Amended Complaint "must be dismissed." *Iqbal*, 556 U.S. at 680; *Twombly*, 550 U.S. at 547. RFC's bare bones, conclusory factual allegations are simply not "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Most importantly, "Rule 8 of the Federal Rules of Civil Procedure requires that the plaintiff allege facts sufficient to place the defendant on notice of the nature and scope of the claims against it." *See Torchlight Loan Servs., LLC v. Column Fin., Inc.*, 11 CIV. 7426 RWS, 2012 WL 3065929, at *5 (S.D.N.Y. July 25, 2012).

Despite RFC's opportunity to remedy the pleading defects in its placeholder Complaint, the Amended Complaint is still devoid of even the most basic factual detail necessary to put SunTrust on notice of RFC's claims. RFC fails to answer fundamental questions: Which Loans? How were R&Ws breached? In terms of factual detail, the Amended Complaint provides only: (a) a list of more than 10,000 Loans that SunTrust sold to RFC since 1993; (b) the results of a random sample of 78 unidentified Loans; and (c) four specific Loans that allegedly contain R&W breaches. *See* Am. Compl. ¶¶ 41, 52 & Ex. C. This is woefully inadequate.

The Amended Complaint does not provide "enough facts" to establish that it is "plausible on its face" that any Loans contain R&W breaches, with the exception of the four Loans specifically discussed. Critical here, the subject matter of this case is individual residential mortgage loans given to individuals secured by discrete real property located throughout the

United States.  The legal question – and RFC's burden – is whether such loans breached a laundry list of R&Ws that address nearly every facet of the Loan, the collateral and the borrower's finances.  Both Count I (R&W breaches) and Count II (indemnification based on R&W breaches) require RFC to provide "enough facts" *about R&W breaches for specific Loans* to state a "plausible" claim for relief.  To establish a "plausible" claim for relief for a Loan, RFC has to *identify the Loan* and generally describe *why the Loan is defective*.  Absent this basic information RFC failed to satisfy Rule 8 and *Iqbal/Twombly*.[20]

In addition, the Amended Complaint fails to give SunTrust notice as to what contract it allegedly breached and how such contracts were breached.  Similar to RFC's inclusion of a list of every Loan that SunTrust sold RFC from 1993 to 2007 (*see* Am. Compl., Ex. C), RFC has apparently attached every contract and Client Guide version that it could locate.  RFC attaches seven separate loan sale or servicing contracts/addendum, dated from 1986 to 1994.  *See* Am. Compl., Ex. A.  Three of the contracts involve loan *servicing*, which is not at issue here.  RFC never identifies which contract(s) form the basis for its claims for which Loan sales.  To further confuse matters, the Amended Complaint quotes from a "Client Guide." *See e.g.*, Am. Compl. ¶¶ 18, 23-24, 26-29, 31, 33.  The seller/servicer contracts do not refer to a "Client Guide," but rather a "Seller Guide" and a "Servicer Guide," which are not attached to the Amended Complaint. *See* Am. Compl., Ex. A.  RFC attaches excerpts only from 15 versions of the Client Guide, dated

---

[20] RFC's litigation counsel readily admitted in the Bankruptcy Proceedings that it does not possess the documents needed to prove up RFC's claims, *i.e.*, RFC's own documents:

> [R]elevant loan-level data apart from origination files—such as information about loan-level performance data, loan originators, underwriting parameters, due diligence, quality audit results, payment history, and other relevant metrics—is housed in or was processed through a number of electronic systems. *Some of these electronic systems are no longer operational, so it would require extensive IT work to access them.*

*See In re ResCap*, Direct Testimony of Jeffrey A. Lipps, Docket No. 5701, at 65, ¶ 110 (emphasis added), http://www.kccllc.net/rescap/document/1212020131112000000000074 (Last accessed May 20, 2014).

from 2003 to 2007 (even though Loans sales alleged in the Amended Complaint commenced a decade earlier). *See* Am. Compl., Ex. B. RFC has failed to identify which version of the oft-revised Client Guide was applicable to which Loans. Finally, the Client Guides excerpts may not even be final text – the excerpts contain, without explanation, numerous *redlined* pages of R&Ws and indemnification provisions.[21]

Similar to plaintiffs in *American Financial International Group-Asia, L.L.C. v. Bennett*, the deficiencies of the Amended Complaint "fail[] to give the defendants notice as to what contract [defendant] supposedly breached" and it must be dismissed. *See* 05 CIV. 8988 (GEL), 2007 WL 1732427, at *2 (S.D.N.Y. June 14, 2007) (dismissing breach of contract and warranty action even when applying notice pleading standard).

As such, the Amended Complaint fails to meet the most basic pleading requirements as set forth in *Iqbal* and *Twombly* and must be dismissed pursuant to Fed. R. Civ. P. 8 & 12(b)(6).

### III.    COUNT I MUST BE DISMISSED

#### A.    RFC's R&W Breach of Contract Claims are Untimely

RFC's R&W breach of contract claims were time-barred as to all Loans on April 10, 2010 – the last date on which SunTrust sold Loans and made R&Ws to RFC – under Delaware's three-year statute of limitations, which is applicable to this action pursuant to the New York borrowing statute. *See* N.Y. C.P.L.R. § 202; 10 Del. C. § 8106; *Lehman XS Trust, Series 2006-4N ex rel. U.S. Bank Nat. Ass'n v. Greenpoint Mortgage Funding, Inc.*, 13 CIV. 4707 SAS, 2014 WL 108523 (S.D.N.Y. Jan. 10, 2014); *ACE Sec. Corp. v. DB Structured Prods., Inc.*, 112 A.D.3d 522, 522, 977 N.Y.S.2d 229, 230 (1st Dep't 2013).

---

[21] *See, e.g.*, Am. Compl., Ex. B at 88-89, 116-118, 155, 175, 179, 187, 208, 216, 243, 245, 248, 262, 277-278, 291, 293, 295, 301, 304, 330, 333, 339, 368, 444, 446, 449, 467, 474, 500, 508.

1. New York's Borrowing Statute Selects Delaware's Three-Year Statute of
   Limitations

Because RFC's alleged economic injury accrued in Delaware, its state of incorporation,[22]

Delaware's three-year statute of limitations applies to non-resident RFC's claims through the

New York borrowing statute. *See* N.Y. C.P.L.R. § 202; *Verizon Directories Corp. v. Continuum*

*Health Partners, Inc.*, 74 A.D.3d 416, 902 N.Y.S.2d 343 (1st Dep't 2010) (holding that a breach

of contract cause of action accrued in Delaware where plaintiff was incorporated).[23]

"New York's borrowing statute applies if the cause of action accrues outside of New

York to a non-New York resident" and requires that "the shorter of either New York's statute of

limitations or the statute of limitations … of the jurisdiction in which the cause of action accrued

is applied…." *Baena*, 2006 WL 2935752, at *6; *see also In re Coudert Bros. LLP*, 673 F.3d at

190 (same). It is well established that a cause of action under CPLR § 202 accrues where the

party was injured. *Baena*, 2006 WL 2935752, at *6. Because RFC's alleged injury is economic,

"the place of injury usually is where the plaintiff resides and sustains the economic impact of the

loss." *Id.* RFC, as a limited liability company, suffered the alleged economic loss in Delaware,

where it resides as its place of formation. *Id.* ("If the injured party is a corporation, then the

place of residence for the purposes of CPLR § 202 is traditionally the state of incorporation or

the corporation's principal place of business."). "For purposes of C.P.L.R. 202, plaintiff is a

---

[22] By its own pleadings, RFC is a non-resident of New York and is a domestic Delaware corporation, as are all of its parent companies, in addition to the Liquidating Trust. *See* Am. Compl. ¶ 13; Doherty Decl., Ex. 6.

[23] The New York borrowing statute is applicable to RFC's claims in federal court. *See Baena v. Woori Bank*, 05 CIV. 7018(PKC), 2006 WL 2935752, at *6 (S.D.N.Y. Oct. 11, 2006) ("A federal court sitting in diversity must apply the laws of the forum in which it sits … New York's borrowing statute applies if the cause of action accrues outside of New York to a non-New York resident."); *see also In re Coudert Bros. LLP*, 673 F.3d 180, 186 (2d Cir. 2012) (same). The Court therefore is not required to engage in a conflicts of law analysis in applying the New York borrowing statute. *In re Gaston & Snow*, 243 F.3d 599, 608 (2d Cir. 2001) ("CPLR 202 is in the nature of an exception to the normal New York conflicts rule of applying the law of the jurisdiction with the most significant contacts." (quoting *Ledwith v. Sears Roebuck & Co.*, 231 A.D.2d 17, 24, 660 N.Y.S.2d 402 (1st Dep't 1997)). Regardless, the parties have selected New York law in the applicable contracts. *See* Am. Compl., Ex. A at 4, 7, 14, 17.

'resident' of, and its cause of action accrued in, Delaware, the state of its incorporation." *Verizon Directories Corp.*, 74 A.D.3d 416, 902 N.Y.S.2d 343.[24]   As such, New York's borrowing statute selects Delaware's shorter three-year statute of limitations in comparison to New York's six-year statute of limitations for breach of contract. *See* N.Y. C.P.L.R. 202.

The New York borrowing statute has been described by the Second Circuit as "guard[ing] against forum shopping by out-of-state plaintiffs," and thereby "mandate[s] [the] use of the *shortest* statute of limitations available." *In re Coudert Bros. LLP*, 673 F.3d at 190 (emphasis in the original); *see also* N.Y. C.P.L.R. 202, *Practice Commentary* 202:3 (McKinney 1993) ("In order to prevent potential forum shopping by a nonresident suing on an out-of-state claim, C.P.L.R. 202 … directs [that] the shorter period must apply.").   This Court must therefore apply Delaware's three-year statute of limitations to claims by RFC – a Delaware resident that could have brought suit in Delaware – in order to prevent forum shopping. *See D'Angelo v. Petroleos Mexicanos*, 398 F. Supp. 72, 79 (D. Del. 1975) (applying Delaware's statute of limitations to a Delaware corporation); *see also Wavedivision Holdings, LLC v. Highland Capital Mgmt. L.P.*, CIV.A. 08C-11-132JOH, 2011 WL 5314507, at *8 (Del. Super. Nov. 2, 2011), *aff'd*, 49 A.3d 1168 (Del. 2012) ("a Delaware corporation is a Delaware 'resident' for the purpose of bringing an action in Delaware court").

### 2. R&W Claims are Untimely

Applying Delaware's three-year statute of limitations, RFC's breach of R&W claims were untimely as of April 10, 2010. As evidenced by Exhibit C to the Amended Complaint, the last date on which SunTrust sold Loans and made R&Ws to RFC was April 10, 2007. This is

---

[24] Moreover, the application of Delaware law was contemplated by the parties in a separate May 2007 Client Contract between RFC-affiliate GMAC Bank and SunTrust. *See* Doherty Decl., Ex. 7.

further confirmed by the Termination Letter, which establishes August 21, 2007 as the date on which the parties' relationship ended, and is thus the last possible date of Loan sales. *See* Doherty Decl., Ex. 1. Thus, applying Delaware's three-year statute of limitations, by April 10, 2010, or at the latest August 21, 2010, the statute of limitations for R&W claims had expired for each Loan sold by SunTrust to RFC. *See* Doherty Decl., Exs. 8 & 9.

Pursuant to the Client Guide, SunTrust's R&Ws for a Loan were made as of the sale date (or "Funding Date") of the Loan to RFC. *See* Doherty Decl., Ex. 9. While RFC failed to include the relevant excerpts of the Client Guide and the Termination Letter with the Amended Complaint, the Client Guide clearly provides that the "representations and warranties contained herein are made as of each Funding Date ... unless the specific representation or warranty provides to the contrary." *See id.* at pg. 2A.1, § A200. "Funding Date" is defined as "the date the Funding Amount is wire transferred to [SunTrust] in payment of any Loan and Servicing (if applicable) sold by [SunTrust]...." *See* Doherty Decl., Ex. 8 at pg. 10.8, Definition of "Funding Date." Therefore, for each Loan sold to RFC, the statute of limitations for a R&W breach relating to that Loan commenced on the date SunTrust sold the Loan to RFC. *See Lehman XS Trust, Series 2006-4N*, 2014 WL 108523, at *3 ("the [] claims accrued on the closing date ... when any breach of the representations and warranties contained therein occurred") (*quoting ACE Sec. Corp.*, 112 A.D.3d 522, 977 N.Y.S.2d at 230-31). Because RFC did not file its Complaint until years later in December 2013, its R&W breach claims are time barred in their entirety and must be dismissed.[25] *See id.*

---

[25] In the event New York's six-year statute of limitations applies, RFC's R&W claims were untimely for each and every Loan as of April 10, 2013, or at the latest on August 21, 2013, almost eight months before RFC filed its Complaint in December 2013. *See* N.Y. C.P.L.R. § 213(2).

### 3. <u>RFC's Complaint is a Nullity for Failure to Satisfy a Condition Precedent</u>

RFC failed to satisfy a condition precedent and, therefore, the Complaint is null and void and should be dismissed. RFC, in both the Complaint and Amended Complaint, does not plead that it provided SunTrust notice regarding any breaching Loans and the opportunity to engage in RFC's appeals process.

According to the Client Guide, RFC must provide written notice to SunTrust of R&W breaches:

> If GMAC-RFC determines that an Event of Default has occurred with respect to a specific Loan, the Client agrees to repurchase the Loan and its servicing (if the Loan was sold servicing released) within 30 days of receiving a repurchase letter or other written notification from GMAC-RFC.

*See* Ex. B to Am. Compl.

SunTrust is not obligated to repurchase or substitute a Loan until RFC provides 30 days' notice to SunTrust. *See id.* at § A210(A). RFC's notice to SunTrust is critical as it begins the clock for RFC's "Notice and Appeal" process. *See id.* at § A210(I) (emphasis added).

Under New York law, RFC was barred from filing this suit unless and until it provided SunTrust with pre-suit notice of R&W breaches for each Loan at issue. Accordingly, the Complaint and Amended Complaint are "nullities" which fail to toll the statute of limitations. *See Lehman XS Trust, Series 2006-4N*, 2014 WL 108523, at *3 ("As in this case, the Trust in *ACE Securities* could not sue before [certain] conditions were met"); *ACE Sec. Corp.*, 112 A.D.3d 522, 977 N.Y.S.2d at 231 ("The [plaintiffs'] failure to comply with a condition precedent to commencing suit rendered their summons with notice a nullity"); *see also Citigroup Mortgage Loan Trust 2007-AMC3 ex rel. U.S. Bank, Nat. Ass'n v. Citigroup Global Markets Realty Corp.*, 13 CIV. 2843 GBD, 2014 WL 1329165, at *6 (S.D.N.Y. Mar. 31, 2014) ("as there was

obviously no notice to Defendant … no obligation to cure or repurchase would have existed at all, which would render Plaintiff's claim unripe").

Accordingly, RFC's failure to comply with a condition precedent requires dismissal of Count I.

## IV.    COUNT II MUST BE DISMISSED

### A. RFC Does Not and Cannot Plead It Incurred Out-of-Pocket Losses to Third Parties Caused by SunTrust's R&W Breaches

RFC cannot plead a cause of action for indemnification under New York law because RFC has not and will not sustain any actual out-of-pocket loss.[26] *See Bank of India v. Trendi Sportswear, Inc.*, 89 CIV.5996 JSM, 2002 WL 84631 (S.D.N.Y. Jan. 18, 2002), *aff'd*, 64 F. App'x 827 (2d Cir. 2003).

In pertinent part, the indemnification provision provides:

> *[SunTrust] shall indemnify GMAC-RFC from all losses, damages, penalties, fines, forfeitures, court costs and reasonable attorneys' fees, judgments, and any other costs, fees and expenses resulting from any* <u>*Event of Default*</u>. This includes any act or failure to act or any breach of warranty, obligation or representation contained in the Client Contract; or from any claim, demand, defense or assertion against or involving GMAC-RFC based on or resulting from such breach or a breach of any representation, warranty or obligation made by GMAC-RFC in reliance upon any warranty, obligation or representation made by the Client contained in the Client Contract.

Am. Compl., Ex. B at § A212 (emphasis added).

An Event of Default is defined as, relevant here, "breaches of any of the representations, warranties or covenants set forth in this Client Guide …."[27] *See* Am. Compl., Ex. B at § A208.

---

[26] Aside from the $5 million RFC paid out repurchasing certain Loans in 2012. *See* Am. Compl. ¶¶ 62-63.

[27] The Event of Default definition describes additional events not at issue in this litigation.

Thus, the indemnification provision is a narrowly tailored remedy triggered *only* if RFC sustains out-of-pocket losses to a third party caused by SunTrust's R&W breaches for specific Loans.

As a threshold matter, as discussed in Section I, prior to initiating this action, RFC assigned its indemnification claim to the Liquidating Trust and thus lacks standing to bring this claim. But, even if RFC still had that claim, or had the Liquidating Trust filed this action, neither can state a claim for indemnification.

RFC has failed to plead that it incurred actual out-of-pocket losses and, second, that SunTrust was responsible for such losses. While the Amended Complaint describes a number of lawsuits filed against RFC (*see* Am. Compl. ¶¶ 64-77), these cannot constitute a basis for an indemnification claim unless RFC has incurred actual out-of pocket losses, *i.e.*, paid a judgment or settlement, due to SunTrust's R&W breaches.[28] Critically, RFC has not pled that it incurred actual out-of-pocket losses, *i.e.*, RFC made payments to its creditors. Rather, RFC assigned its claims against SunTrust (and others) to the Liquidating Trust, in exchange for a full and final discharge.

The $8.7 billion allowed claim is a cap on the overall recovery available to RFC's RMBS creditors through the Liquidating Trust. *See* Am. Compl. ¶ 78. Said another way, the allowed claims represent an "estimate of the full range of potential recoveries for all parties." *See In re ResCap*, 1:12-bk-12020, Docket No. 4819-1, at 24. RFC did not allege it incurred any actual out-of-pocket losses or made any payments toward that $8.7 billion allowed claim. *See In re Residential Capital*, 12-bk-12020, Docket No. 6065, at 34 (emphasis added).

---

[28] At most, RFC states that it incurred $5 million in losses as a result of its repurchase of certain SunTrust Loans in 2012. *See* Am. Compl. ¶¶ 62-63. However, RFC does not plead that it provided notice of the Event(s) of Default underlying the alleged indemnifiable loss.

Accordingly, RFC has not and will not incur any losses that SunTrust is obligated to indemnify. "It is black letter law in New York that an indemnification claim does not arise until the party seeking indemnification has an out-of-pocket loss to be reimbursed" and "a party that has not and will not sustain any actual out-of pocket loss as the result of a claim raised against it has no indemnification claim against a third party." *See Bank of India*, 2002 WL 84631, at *4 (quotations omitted).

RFC's position is almost identical to that of the debtor in *Bank of India*, where the Southern District of New York (affirmed by the Second Circuit) dismissed a debtor's indemnification claims against a third party as a matter of law. In *Bank of India*, the debtor consented to an entry of a judgment for breach of contract against it during its Chapter 11 bankruptcy proceedings in favor of a creditor. *See Bank of India*, 2002 WL 84631, at *2. Pursuant to the bankruptcy reorganization plan, the debtor and creditor agreed that claims against the debtor were discharged, including the judgment, and the creditor would only receive the net proceeds of any recovery by the debtor in a separate indemnification lawsuit against a third party. In that separate lawsuit, the debtor was seeking indemnification from the third party based on the debtor's potential liability to the creditor under the judgment. *See id.* at **2-3. The court dismissed debtor's indemnification claim against the third party because "debtor has been discharged from its obligation to pay creditor the judgment entered against it in the bankruptcy proceeding, and creditor is barred from seeking to enforce that judgment against debtor." *See id.* at *4. In so doing, the Court held that because the judgment was unenforceable and the debtor (here, RFC) did not incur actual out-of-pocket expenses based on the judgment and could never be liable to its creditor, the debtor (RFC) could not pursue an indemnification claim against a

third party (SunTrust) based on the judgment.[29]    Accordingly, RFC failed to state a claim for indemnification and Count II should be dismissed.

### B. RFC's Indemnification Claim Fails Because It Is Based on R&W Breach Claims

Because RFC's R&W breach claims are untimely, RFC's indemnification claim – which is wholly dependent upon establishing a breach of an R&W as an Event of Default – must also be dismissed. The indemnification provision in the Client Guide must be strictly construed in accordance with the principles of contract interpretation under New York law, and the plain language of this provision clearly requires that an Event of Default first be established. *See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 179 (2d Cir. 2005) ("When a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed.") (*quoting Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 491-92, 549 N.Y.S.2d 365, 367 (1989)); *see also PPI Enters. (U.S.), Inc. v. Del Monte Foods Co.*, 05-6885-CV (L), 2006 WL 3370698, at *1 (2d Cir. Nov. 20, 2006).

Indeed, in adjudicating similar indemnification provisions, New York courts have upheld the requirement to establish the underlying cause of action. *See, e.g., Hobbs v. Scorse,* 59 A.D.2d 1037, 1038, 399 N.Y.S.2d 783, 785 (4th Dep't 1977) ("claim for indemnity does not arise until the prime obligation has been established"), *cited with approval in Hutton Const. Co.,*

---

[29] In a subsequent decision, the Southern District noted that the creditor in *Bank of India* had failed to structure its settlement properly and thus could not use the debtor's indemnity claims against a third party as a vehicle for recovery: "While the Creditor may well have made an ill-advised agreement, which did not take adequate account of New York law regarding indemnification, that agreement was, nevertheless, the basis upon which the judgment of the Bankruptcy Court was entered." *See Bank of India v. Trendi Sportswear, Inc.*, 89 CIV. 5996, 2002 WL 1836754, at *4 (S.D.N.Y. Aug. 12, 2002) (denying motion to vacate the final judgment), *aff'd*, 64 F. App'x 827 (2d Cir. 2003).

*Inc. v. Cnty. of Rockland*, 52 F.3d 1191, 1193 (2d Cir. 1995); *Hamill v. Mut. of Am. Inv. Corp.*, 79 A.D.3d 478, 479, 913 N.Y.S.2d 62, 64 (1st Dep't 2010) (denying summary judgment for indemnification claim where the indemnification provision at issue required defendant to indemnify plaintiff for losses from defendant's negligence, and there was no finding that defendant was negligent).

RFC cannot state a claim for indemnification because R&W claims are time-barred.

### C. The Complaint and Amended Complaint Fail to Toll the Statute of Limitations

In order for RFC to seek reimbursement for legal fees or expenses incurred in connection with litigation, RFC must provide notice:

> "Reimbursement shall be made directly to [RFC] within **ten days of receipt of a request for payment**, which request shall include **copies of the relevant invoices**."

*See* Am. Compl., Ex. B at Section A212 (emphasis added).

While RFC alleges that it has incurred attorneys' fees and costs in litigating SunTrust Loans, it does not plead that it has provided SunTrust notice and request for payment, along with the relevant invoices, as required by the Client Guide. *See* Am. Compl. ¶¶ 57, 54, 80, 87-88, 90-97. RFC's conclusory assertion that is satisfied all conditions precedent (*see* Am. Compl. ¶¶ 35, 84) is insufficient as a matter of law. *See Iqbal*, 556 U.S. at 681; *Twombly*, 550 U.S., at 554–555. RFC's failure to satisfy conditions precedent prior to filing suit renders its Complaint and Amended Complaint "nullities" which fail to toll the statute of limitations for all of RFC's claims. *See Lehman XS Trust, Series 2006-4N*, 2014 WL 108523, at *3; *ACE Sec. Corp. v. DB Structured Products, Inc.*, 112 A.D.3d 522, 522, 977 N.Y.S.2d 229, 231 (1st Dep't 2013); *see also Citigroup Mortgage Loan Trust 2007-AMC3 ex rel. U.S. Bank, Nat. Ass'n v. Citigroup*

*Global Markets Realty Corp.*, 13 CIV. 2843 GBD, 2014 WL 1329165, at *6 (S.D.N.Y. Mar. 31, 2014).

## CONCLUSION

For the foregoing reasons, SunTrust respectfully request that the Court dismiss Plaintiff's Complaint with prejudice, in its entirety, and award SunTrust its attorney's fees in connection with this Motion.

Dated: New York, New York
      May 20, 2014

                ALSTON & BIRD LLP

                /s/ John P. Doherty
                John P. Doherty
                Jennifer S. Kozar

                90 Park Avenue
                New York, New York 10016
                Telephone: (212) 210-9400
                Facsimile: (212) 210-9444

                *Attorneys for Defendant SunTrust Mortgage, Inc.*