UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RESIDENTIAL FUNDING COMPANY, LLC,

                        Plaintiff,

       -v.-

SUNTRUST MORTGAGE, INC.,

                    Defendants.

No. 13-civ-8938

ORAL ARGUMENT REQUESTED


# DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO CONFIRM APPLICATION OF THE STANDING ORDER


ALSTON & BIRD LLP

John P. Doherty
Jennifer S. Kozar
90 Park Avenue
New York, New York 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444

*Attorneys for Defendant SunTrust Mortgage, Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... iii

SUMMARY OF TERMS ....................................................................................................... vii

I.   INTRODUCTION ............................................................................................................ 1

II.  FACTUAL AND PROCEDURAL BACKGROUND .................................................... 3

       a.  Parties' History .................................................................................................. 3

       b.  RFC's Bankruptcy ............................................................................................ 3

       c.  Procedural History ............................................................................................ 5

       d.  Subsequent Developments in RFC Cases ........................................................ 7

III. ARGUMENT AND CITATION OF AUTHORITY ..................................................... 7

    A.  The Standing Order Does Not Provide for Automatic Referral of this Case ........................ 7

    B.  Contrary to RFC's Assertions, the Bankruptcy Court Did Not (and Could Not)
       Retain Exclusive Jurisdiction over this Litigation ................................................. 10

    C.  Bankruptcy Jurisdiction Substantially Shrinks Following Plan Confirmation
       and the Standing Order Does Not Apply to this Litigation ...................................... 12

    D.  The *Orion* Factors Require Denial of the Motion ................................................. 14

       1.  The Court Should Review the *Orion* Factors at This Point ............................. 14

       2.  The *Orion* Factors ........................................................................................ 15

       3.  *Orion* Factor 1 – The Litigation Involves Non-Core Claims Over Which the
          Bankruptcy Court Cannot Enter Final Judgment ............................................ 16

          a.  The Case Is – At Most – a Non-Core Proceeding ..................................... 16

          b.  The Bankruptcy Court Has Circumscribed Authority to Act in a
            Non-Core Proceeding ............................................................................. 17

       4.  *Orion* Factor 2 – Judicial Economy Will Not Be Served If This Litigation Is
          Referred to the Bankruptcy Court ................................................................... 18

      a.   A Two-Judge Adjudication Process is Unwieldy and Unnecessary in This
Factually Complex Litigation ..................................................................................18

5.   *Orion* Factor 3 – RFC's Motion Is Impermissible Forum Shopping..............................21

6.   *Orion* Factors 4, 5 & 6 – Uniform Bankruptcy Administration, Expediting the
Bankruptcy Process & Economical Use of Debtors' and Creditors' Resources
Are Neutral Factors Since the Bankruptcy Court Has Confirmed RFC's Plan ...............22

7.   *Orion* Factor 7 – The Parties Have Agreed to a Trial by Jury, a Proceeding the
Bankruptcy Court Cannot Conduct...................................................................................23

IV. CONCLUSION.......................................................................................................................24

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Abondolo v. GGR Holbrook Medford, Inc.*,
    285 B.R. 101 (E.D.N.Y. 2002) ......................................................................18, 23

*DeWitt Rehabilitation & Nursing Ctr., Inc. v. Columbia Cas. Co.*,
    464 B.R. 587 (S.D.N.Y. 2012).....................................................................18, 23

*Guccione v. Bell*,
    No. 06 Civ. 492, 2006 WL 2032641 (S.D.N.Y. July 20, 2006) .............................12

*In re BearingPoint, Inc.*,
    453 B.R. 486 (Bankr. S.D.N.Y. 2011).....................................................18, 20, 22

*In re Fairfield Sentry Ltd.*,
    No. 11-cv-5905, 2014 WL 112329 (S.D.N.Y. Jan. 8, 2014) ...................................9

*In re General Media, Inc.*,
    335 B.R. 66 (Bankr. S.D.N.Y. 2005) ...................................................................13

*In re Joseph DelGreco & Co., Inc.*,
    10-CV-6422 NRB, 2011 WL 350281 (S.D.N.Y. Jan. 26, 2011) ...........................22

*In re Lenders Abstract & Settlement Serv. Inc.*,
    493 B.R. 385 (E.D.N.Y. 2013) ..........................................................................23

*In re Martin*,
    212 B.R. 316 (B.A.P. 8th Cir. 1997).....................................................................20

*In re Metro-Goldwyn-Mayer Studios, Inc.*,
    459 B.R. 550 (Bankr. S.D.N.Y. 2011) ................................................................12

*In re MF Global Inc.*,
    484 B.R. 18 (S.D.N.Y. 2012)..............................................................................10

*In re Northwest Airlines Corp.*,
    384 B.R. 51 (S.D.N.Y. 2008)..............................................................................16

*In re Orion Pictures Corp.*,
    4 F.3d 1095 (2d Cir. 1993).......................................................................... *passim*

*In re Resorts Int'l, Inc.*,
    372 F.3d 154 (3d Cir. 2004)................................................................................12

*In re The VWE Grp., Inc.*,
    359 B.R. 441 (S.D.N.Y. 2007)........................................................................16, 23

**Cases**                                                                                                                    **Page(s)**

*In re W.T. Grant Co.*,
    699 F.2d 599 (2d Cir. 1983)...............................................................................20

*Lehman Brothers Holdings Inc. v. JPMorgan Chase Bank, N.A.*
    (*In re Lehman Brothers Holdings Inc.*),
    480 B.R. 179 (S.D.N.Y. 2012)............................................................................10

*Little Rest Twelve, Inc. v. Visan*,
    458 B.R. 44 (S.D.N.Y. 2011)..............................................................................13

*N. Am. Car Corp. v. Peerless Weighing & Vending Mach. Corp.*,
    143 F.2d 938 (2d Cir. 1944)...............................................................................12

*Omega Tool Corp. v. Alix Partners, LLP*,
    416 B.R. 315 (E.D. Mich. 2009).....................................................................10, 14

*Picard v. HSBC Bank PLC*,
    450 B.R. 406 (S.D.N.Y. 2011)...................................................................9, 10, 14

*Semi-Tech Litig., LLC v. Bankers Trust Co. (In re Graeme, Ltd.)*,
    No. 02 Civ. 0711, 2001 U.S. Dist. LEXIS 22848 (S.D.N.Y. Feb. 25, 2001) ...................18, 23

*SIPA v. Bernard L. Madoff Investment Securities LLC*,
    No. 12-cv-5597, 2013 WL 4077586 (S.D.N.Y. Aug. 2, 2013)........................................10, 14

*South St. Seaport Ltd. P'shp. v. Burger Boys (In re Burger Boys)*,
    94 F.3d 755 (2d Cir. 1996)................................................................................14

*Stern v. Marshall*,
    131 S. Ct. 2594 (2011).............................................................................16, 17, 18

*Wood v. Wood (In re Wood)*,
    825 F.2d 90 (5th Cir. 1987) ...............................................................................17

**Statutes and Rules**

11 U.S.C. § 1125 ..........................................................................................4

15 U.S.C. §§ 78aaa, *et seq.* ................................................................................9

28 U.S.C. § 151 ........................................................................................11, 12

28 U.S.C. § 151(a) ........................................................................................8

28 U.S.C. § 157 ...........................................................................................12

28 U.S.C. § 157(a) ...............................................................................7, 8, 16, 17

**Statutes and Rules**                                                                    **Page(s)**

28 U.S.C. § 157(c)(1)...............................................................................17

28 U.S.C. § 157(d) ...................................................................................8, 9

28 U.S.C. § 157(e) .....................................................................................23

28 U.S.C. § 1332 ..........................................................................................6

28 U.S.C. § 1334 ...................................................................................*passim*

28 U.S.C. § 1334(a) .....................................................................................8

28 U.S.C. § 1334(b) .................................................................................8, 16

28 U.S.C. § 1404(a) ...................................................................................21

28 U.S.C. § 1412 ........................................................................................11

Pub. L. No. 95-598, § 201(a)(a), 92 Stat. 2549, 1657 (1978) (repealed 1984)...............8

S.D.N.Y. Bankr. L.R. 7001 ..........................................................................9

S.D.N.Y. Bankr. L.R. Part VII .....................................................................9

**Other Authorities**

17 James Wm. Moore, *Moore's Federal Practice* § 111.16[1] (3d ed. 2011)...............................21

8 Norton *Bankr. L. & Prac. 3d* § 165:15 ...........................................................23

*Collier on Bankruptcy* ¶ 3.02[2], p. 3–26, n. 5 (16th ed. 2010)....................................17

http://www.kccllc.net/rescap/document/12120201308230000000000001
(last accessed on May 20, 2014)....................................................................4

http://www.kccllc.net/rescap/document/12120201308230000000000019
(last accessed on May 20, 2014)....................................................................4

http://www.kccllc.net/rescap/document/12120201312060000000000008
(last accessed on May 20, 2014)....................................................................4

http://www.kccllc.net/rescap/document/12120201312100000000000031
(last accessed on May 20, 2014)....................................................................4

http://www.kccllc.net/rescap/document/12120201312110000000000008
(last accessed on May 20, 2014)....................................................................3

## <u>Other Authorities</u>                                                                                      <u>**Page(s)**</u>

http://www.kccllc.net/rescap/document/1212020131211000000000009
    (last accessed on May 20, 2014) ................................................................................................4

http://www.kccllc.net/rescap/document/8822900120514000000000002
    (last accessed on May 20, 2014) ................................................................................................3

http://www.marketwatch.com/investing/stock/RESCU?countrycode=US
    (last accessed on May 20, 2014) ................................................................................................5

Ralph Brubaker, *Nondebtor Releases and Injunctions in Chapter 11: Revisiting
    Jurisdictional Precepts and the Forgotten Callaway v. Benton Case*, 72 Am. Bankr.
    L.J. 1, 23–25 (1998) ...................................................................................................................7

## SUMMARY OF TERMS

| | |
|---|---|
| **Amended Complaint:** | The Amended Complaint filed by RFC in this action on April 8, 2014 |
| **BAFJA:** | Bankruptcy Amendments and Federal Judgeship Act of 1984 |
| **Bankruptcy Court:** | The United States Bankruptcy Court for the Southern District of New York |
| **Bankruptcy Proceedings:** | The proceedings in *In re Residential Capital, LLC*, 1:12-bk-12020 (Bankr. S.D.N.Y. May 14, 2012) |
| **Complaint:** | The Complaint filed by RFC in this action on December 17, 2013 |
| **Effective Date:** | December 17, 2013 |
| **Liquidating Trust Agreement:** | *ResCap Liquidating Trust Amended and Restated Liquidating Trust Agreement*, Docket No. 6064-1 |
| **Liquidating Trust:** | The ResCap Liquidating Trust (OTCMKTS: RESCU) |
| **Motion:** | RFC's motion to confirm application of the Standing Order, Docket Nos. 30–31 |
| **Order:** | *Order Confirming Second Amended Joint Chapter 11 Plan Proposed By Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors*, Docket No. 6065, on December 11, 2013 |
| **Plan:** | *Second Amended Joint Chapter 11 Plan Proposed By Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors*, Docket No. 6030 |
| **R&Ws:** | Representations and warranties |
| **RFC Cases:** | Seventy-five plus actions RFC filed against mortgage loan sellers in state and federal courts in Minnesota and New York |
| **RFC:** | Plaintiff Residential Funding Company, LLC |
| **RMBS:** | Residential mortgage back securities |

| **Standing Order:** | *Amended Standing Order of Reference re: Title 11*, M10-468 entered by Chief Judge Preska of the U.S. District Court for the Southern District of New York on February 1, 2012 |
| **SunTrust:** | Defendant SunTrust Mortgage, Inc. |

## I.    <u>INTRODUCTION</u>

*Concurrently with the filing of this opposition to RFC's Motion, SunTrust has filed a motion to dismiss the Amended Complaint.  In the interest of judicial economy, the Court should decide SunTrust's motion to dismiss first because, in SunTrust's view, this case must be dismissed in its entirety, thus mooting RFC's Motion.*

This is a state law breach of contract action in which RFC alleges it purchased residential mortgage loans from SunTrust that did not comply with SunTrust's contractual R&Ws.  This action is one of approximately seventy-five (75) nearly identical RFC Cases filed against mortgage loan sellers in state and federal courts in Minnesota and New York late last year.

The Motion should be denied.  The Standing Order does not "automatically" refer this case to the Bankruptcy Court.  The Standing Order is not a coupon redeemable for a new judge at RFC's option.  It does not authorize RFC to file suit in this Court, then, following SunTrust's filing of a motion to dismiss, amend its Complaint to add (for the first time) an allegation of bankruptcy jurisdiction, and thereafter demand automatic referral to RFC's preferred judge in Bankruptcy Court.   In contrast, the Standing Order authorizes the filing of *adversary proceedings* in bankruptcy courts in connection with bankruptcy cases, but does not automatically transfer, at a plaintiff's request, a case filed by a plaintiff in district court.

This Court should also deny the Motion because RFC has failed to establish a basis for bankruptcy jurisdiction under 28 U.S.C. § 1334.  Critically, the claims and defenses in this case are independent from, and have virtually nothing to do with, RFC's bankruptcy case, the Plan, or any bankruptcy issue.  Tellingly, RFC neither alleged the existence of bankruptcy jurisdiction in the Complaint in this case or in any of the RFC Cases, nor filed any of the RFC Cases in

Bankruptcy Court.  RFC's belated assertion of "bankruptcy jurisdiction" is a litigation-driven strategy, apparently concocted by new legal counsel to RFC's successor.

Moreover, had RFC alleged bankruptcy jurisdiction, and (properly) filed this action as an adversary proceeding in the Bankruptcy Court, this Court would nonetheless withdraw the reference from Bankruptcy Court under the Second Circuit's *Orion* factors.  First, and most critical to the *Orion* analysis, this action is—at most—a "non-core" proceeding and, therefore, the case can only be referred to the Bankruptcy Court for very limited purposes.  The Bankruptcy Court cannot issue final orders or conduct the jury trial that the parties have jointly demanded.  The Bankruptcy Court can only issue recommendations, which this Court will review *de novo*, resulting in more litigation, expense and delay.  This two-judge process will invariably bog down this fact-intensive case, which may involve allegations that thousands of residential mortgage loans breached specific loan-level R&Ws under New York law.  And, while Judge Glenn is a fine jurist, he has no particular experience in mortgage loan repurchase litigation, and thus his services are not required here.  RFC's Motion, if granted, would create more, not less, litigation.  Plainly, it is most efficient to litigate this fact-intensive case in a single forum that is authorized to enter final orders and conduct the requested jury trial (this Court).

Second, this Court should not countenance RFC's overt forum/judge shopping.  RFC – as plaintiff represented by sophisticated counsel – elected to file this case in this Court, and to file the other RFC Cases in state and federal courts throughout the U.S.  RFC's purported reasons to seek referral of this case are pre-textual and, moreover, are wrong.  And, since RFC filed the Motion, Minnesota federal courts have uniformly denied RFC's motions to transfer those cases to the Southern  District.

The Court should deny the Motion.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### a.   Parties' History

According to the Amended Complaint, SunTrust sold over 10,000 residential mortgage loans to RFC from 1993 through 2007 under various contracts.  *See* Am. Compl., Ex. C.  RFC alleges that in connection with these loan sales, SunTrust made certain R&Ws regarding characteristics of the loans.  *See* Am. Compl. ¶ 24.

### b.   RFC's Bankruptcy

On May 14, 2012, RFC and 50 of its affiliates filed voluntary bankruptcy petitions in the U.S. Bankruptcy Court for the Southern District of New York.  *E.g.*, *In re Residential Capital, LLC*, 1:12-bk-12020, Docket No. 1 (Bankr. S.D.N.Y. May 14, 2012).[1]  Judge Martin Glenn was assigned as the bankruptcy judge.  SunTrust did not (i) participate in RFC's bankruptcy, (ii) file a proof of claim, (iii) vote on RFC's Plan, or (iv) otherwise appear in RFC's bankruptcy case.  Neither SunTrust's agreements with RFC nor loans sold by SunTrust to RFC were specifically addressed in RFC's bankruptcy.

In RFC's bankruptcy, a number of RMBS trusts, investors and other third parties asserted various claims, including fraud, against RFC arising from RFC's loan sale, servicing and securitization business.  These claims arose from RFC's conduct in connection with various securitizations and RFC's sale of loans to these parties.  Following months of settlement negotiations before another judge, Judge James M. Peck of the Bankruptcy Court, RFC and these parties agreed to a settlement.  *See id.* at Docket No. 6066, ¶ 121.[2]

---

[1] http://www.kccllc.net/rescap/document/8822900120514000000000002 (last accessed on May 20, 2014).

[2] http://www.kccllc.net/rescap/document/1212020131121000000000008 (last accessed on May 20, 2014).

In connection with the settlement, in August 2013, the Bankruptcy Court entered an order approving RFC's Disclosure Statement, which described the proposed settlement set forth in the Plan. *Id.* at Docket Nos. 4809 & 4819; s*ee* 11 U.S.C. § 1125.[3]

On December 11, 2013, the Bankruptcy Court entered the Order confirming the Plan and approving the settlement. *Id.* at Docket No. 6065.[4] In doing so, the Bankruptcy Court approved only the "reasonableness" of the settlement and recognized that third parties' claims against RFC were never evaluated on an individual, loan-by-loan basis. *See id.* at Docket No. 6066, ¶¶ 107, 111, 115-118. In connection with the settlement, Judge Glenn recognized that without the settlement, "the RMBS Representation and Warranty Claims would have to be asserted, litigated and liquidated on an individual basis." *Id.* at ¶ 118.

In connection with the settlement, RFC does not allege it paid any money to the third parties. Instead, they were granted allowed general unsecured claims totaling more than $8.7 billion. The binding terms of the settlement are embodied in Article IV(C) of RFC's Plan. *Id.* at Docket No. 6030-1, Article IV(C).[5]

The Plan established the Liquidating Trust, a Delaware statutory trust. The Liquidating Trust is governed by a Liquidating Trust Agreement. *See id.* at Docket No. 6064.[6] On the Plan's Effective Date, which occurred on December 17, 2013, the Liquidating Trust was automatically vested with substantially all of RFC's assets, including any putative claims against SunTrust and other loan originators.

---

[3] http://www.kccllc.net/rescap/document/12120201308230000000001;
http://www.kccllc.net/rescap/document/12120201308230000000019 (last accessed on May 20, 2014).

[4] http://www.kccllc.net/rescap/document/12120201312110000000009 (last accessed on May 20, 2014).

[5] http://www.kccllc.net/rescap/document/12120201312060000000008 (last accessed on May 20, 2014).

[6] http://www.kccllc.net/rescap/document/12120201312100000000031 (last accessed on May 20, 2014).

RFC concedes that "RFC filed this suit on December 17, 2013, *after* RFC's RMBS-related liabilities became fixed through confirmation of the Plan." Am. Compl. at ¶ 79 (emphasis added). When the Plan became effective on December 17, 2013, the Liquidating Trust succeeded to all of RFC's rights and interest, including its litigation claims against SunTrust." After the Effective Date, only the Liquidating Trust could bring this action:

> The Liquidating Trust has the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any Causes of Action … without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court.

*See id.* at Docket No. 6065, at 67, ¶ 49. RFC was discharged according to the Plan and Order and will be (if it has not already been) dissolved.

The Liquidating Trust issued beneficial interests in the form of liquidating trust units to creditors holding allowed claims. As such, the Liquidating Trust operates as a pass through entity by which RFC's creditors (and successor unit holders) can step into RFC's shoes and seek recovery against RFC's contractual counterparties, such as SunTrust. Liquidating Trust unit holders are entitled to receive a pro rata distribution of any recovery. *See generally id.*, Docket No. 6064.

The Liquidating Trust is publicly-traded and, on average, more than 1 million units are bought and sold each day.[7]

### c.   Procedural History

On December 17, 2013, RFC filed the Complaint against SunTrust. Contemporaneously with the filing of this case, RFC, over a five day period beginning on December 12, 2013 through December 17, 2013, filed over 75 lawsuits (the RFC cases) against other originators,

---

[7] http://www.marketwatch.com/investing/stock/RESCU?countrycode=US (last accessed on May 20, 2014).

using a cookie-cutter, placeholder complaint. Almost 70 of those lawsuits were filed by RFC in Minnesota. Including this case, only three were filed in the Southern District of New York.[8]

In the Complaint, RFC alleged that the Court had diversity jurisdiction under § 1332, but did not plead bankruptcy jurisdiction under 28 U.S.C. § 1334. *See RFC v. SunTrust*, 13-civ-8938, Docket No. 1. On February 28, 2014, the parties submitted a joint letter and proposed case management plan and order, in which they jointly requested a trial by jury. *See id.*, Docket No. 7. On March 5, 2014, SunTrust filed a motion to dismiss the Complaint. *See id.*, Docket No. 16. On March 7, 2014, the Court held a status conference at which RFC requested the case be automatically referred to the Bankruptcy Court, despite not having pled bankruptcy jurisdiction in its Complaint. SunTrust objected and the Court established an omnibus briefing schedule for RFC's filing of an Amended Complaint, SunTrust's anticipated motion to dismiss, and this Motion, to have these motions heard together. *See id.*, Docket No. 18. On March 18, 2014, RFC filed a statement of relatedness, requesting that this case be designated as related to two other cases filed by RFC in this District. *See id.*, Docket No. 26. By letter on March 24, 2014, RFC again asked this Court to refer the case to the Bankruptcy Court pursuant to the Standing Order. *See id.*, Docket No. 28. On March 26, 2014, this Court denied RFC's request for automatic referral, stating the "[t]he Court will address RFC's request to refer the matter to Bankruptcy Court once RFC has filed its motion and briefing has been completed" and refused to mark the cases as related. *See id.*, Docket No. 29. On April 7, 2014, RFC filed this Motion – not a motion to refer, as ordered. *See id.*, Docket No. 31. On April 8, 2014, one day after the Court-ordered

---

[8] *See, e.g.*, *Residential Funding Company, LLC, v. Columbia Home Loans*, 13-cv-08867; *Residential Funding Company, LLC, v. GreenPoint Mortgage Funding, Inc.*, 13-cv-08937.

deadline, RFC filed an Amended Complaint, pleading bankruptcy jurisdiction for the first time. *See id.*, Docket No. 32.

### d.   Subsequent Developments in RFC Cases

In an effort to consolidate the RFC Cases, in February 2014, RFC filed venue transfer motions in all federal court cases in Minnesota, seeking transfer to the Southern District for referral to Judge Glenn in the Bankruptcy Court.  In the thirteen decisions rendered to date, Minnesota federal courts have *uniformly denied* RFC's motion.[9]  In one of the three cases brought by RFC before Judge Glenn,[10] defendant UBS has filed a motion to withdraw the reference, which is pending.[11]

### III.   ARGUMENT AND CITATION OF AUTHORITY

### A.   The Standing Order Does Not Provide for Automatic Referral of this Case

RFC's Motion is premised on a fundamental misunderstanding of the Standing Order and 28 U.S.C. § 157(a).  The Standing Order does not automatically refer this case at RFC's request.

Until 1978, debtors filed bankruptcy-related cases *with federal district courts*.  Upon filing, the district court would then refer "summary" bankruptcy matters to a bankruptcy referee—the person appointed as an adjunct officer of the federal district court.[12]  The Bankruptcy Reform Act of 1978 brought sweeping changes to bankruptcy law, creating a new

---

[9] *See, e.g.*, 13-CV-3523; 13-CV-3449; 13-CV-3474; 13-CV-3496; 13-CV-3470; 13-CV-3506; 13-CV-3527 ; 13-CV-3492; 13-CV-3475; 13-CV-3490; 13-CV-3504; 13-CV-3511; 13-CV-3514.

[10] *See RFC v. UBS Real Estate,* 1:14-ap-01926 (S.D.N.Y. Bankr.); *RFC v. GreenPoint Mortgage*, 14-01916-mg (S.D.N.Y. Bankr.); *RFC v. HSBC Mortg. Corp.(USA)*, 14-01915-mg (S.D.N.Y. Bankr.) (voluntarily transferred).

[11] *RFC v. UBS Real Estate*, 1:14-ap-01926, Docket Nos. 6, 9.

[12] The Bankruptcy Act of 1898 "introduced an inferior judicial officer," the bankruptcy referee, "to exercise *in rem* bankruptcy jurisdiction in summary proceedings."  *See* Ralph Brubaker, *Nondebtor Releases and Injunctions in Chapter 11: Revisiting Jurisdictional Precepts and the Forgotten Callaway v. Benton Case*, 72 Am. Bankr. L.J. 1, 23–25 (1998).

federal court: the "United States Bankruptcy Court for the district."[13]  Congress granted this new court federal bankruptcy jurisdiction, which would be later amended under the Bankruptcy Amendments and Federal Judgeship Act of 1984.  The BAFJA remains the operative jurisdictional regime today in federal bankruptcy cases.  Relevant here, practitioners now file bankruptcy cases and bankruptcy-related litigations (adversary proceedings) directly *with the bankruptcy court*.

As to the scope of bankruptcy jurisdiction, Congress granted *this Court*[14]: (i) original and exclusive jurisdiction of all *cases under* [the Bankruptcy Code]; and (ii) original but non-exclusive jurisdiction of all civil proceedings *arising under* [the Bankruptcy Code], or *arising in* or *related to* cases under [the Bankruptcy Code].  § 1334(a)–(b).  Then, in § 157(a), Congress authorized district courts to refer these proceedings to bankruptcy judges: "Each district court may provide that any or all . . . proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district."  *Id.* § 157(a).[15]  Each district in the United States, including this District, has invoked the statutory authority in § 157(a) and created a "standing order" that effectuates § 157(a) and automatically refers properly filed proceedings "arising under," "arising in," or "related to" a case under the Bankruptcy Code to bankruptcy judges.  *E.g.*, Standing Order.  In so doing, this Court avoids the administrative burden of having thousands of bankruptcy petitions, adversary proceedings, and contested

---

[13] Pub. L. No. 95-598, § 201(a)(a), 92 Stat. 2549, 1657 (1978) (repealed 1984) (enacting 28 U.S.C. § 151(a)).

[14] The Bankruptcy Court's jurisdiction is derivative of this Court's jurisdiction.  *See* 28 U.S.C. § 1334 (granting federal bankruptcy jurisdiction *to the district court*, not the bankruptcy courts).

[15] Section 157(a) leaves it up to the district courts to refer or not to refer cases and proceedings; each district court has provided by rule for automatic reference to bankruptcy judges. The statute nevertheless gives the district courts an opportunity to withdraw the reference to bankruptcy court. As discussed below, § 157(d) permits the district courts to withdraw the reference of a case or proceeding if the standards set forth in that section are satisfied.

matters filed on their dockets each year.  Instead, these matters are filed directly with the
Bankruptcy Court.

As such, if RFC wanted to try to invoke bankruptcy jurisdiction, it could have filed this
action as an *adversary proceeding* in accordance with Bankruptcy Rule 7001 and Part VII of the
Local Bankruptcy Rules.  RFC instead chose to file a lawsuit in this Court, failing to even allege
bankruptcy jurisdiction under § 1334.  *See* Docket No. 1.[16]

RFC cannot invoke the Standing Order in this manner.  Not a single case RFC cites in
support of its improper invocation of the Standing Order is factually analogous.  *See* Motion at 6.
In fact, the cases RFC cites in its Motion are cases in which the proper procedures were
followed, in each case illustrating that RFC's interpretation of the Standing Order is completely
backwards.  In *Fairfield Sentry*, the original action was brought *in bankruptcy court* and the
district court judge withdrew the reference under § 157(d) because a settlement agreement
between the trustee of Madoff Securities and the liquidators of a BVI feeder fund involved
substantial and material consideration of SIPA.[17]  *In re Fairfield Sentry Ltd.*, No. 11-cv-5905,
2014 WL 112329, at *1 (S.D.N.Y. Jan. 8, 2014).  In *Picard*, the chapter 11 trustee "commenced
an adversary proceeding" in bankruptcy court, seeking damages from certain service providers
for allegedly failing to adequately investigate fraud.  *Picard v. HSBC Bank PLC*, 450 B.R. 406,
408 (S.D.N.Y. 2011).  The service providers successfully moved the district court to withdraw

---

[16] The Court should note that RFC knew how the Standing Order worked – RFC and its affiliates filed their fifty-one
bankruptcy petitions, as well as several adversary proceedings, *with the Bankruptcy Court*, not the District Court.
*E.g. In re Residential Capital, LLC*, Case No. 12-12020-mg, Docket No. 1. (May 14, 2012); *E.g. Residential
Capital, LLC, et al. v. AllState Insurance Company, et al.*, Adversary Proceeding No. 13-01262-mg (Bankr.
S.D.N.Y. Feb. 19, 2013); *Residential Capital, LLC et al v. UMB Bank, N.A., in its Capacity as Indenture Trust*,
Adversary Proceeding No. 13-01343-mg (Bankr. S.D.N.Y. May 3, 2013).

[17] SIPA is the Securities Investor Protection Act.  15 U.S.C. §§ 78aaa, *et seq*.

the reference. *Id.* The result is the same with respect to RFC's other cases.[18] More telling, just last week, the Liquidating Trust filed at least nine adversary proceedings in Bankruptcy Court against other loan sellers, precisely how the Standing Order is meant to work if one wants to be in the Bankruptcy Court.[19]

Moreover, the case RFC alleges is "precisely on point"—*Omega Tool Corp. v. Alix Partners, LLP*, 416 B.R. 315 (E.D. Mich. 2009)—is not quite so "on point." Motion at 7. *Omega Tool* is plainly distinguishable because the plaintiff brought an action *against* the bankruptcy debtor-related entities in district court in Michigan and the debtor-related *defendants moved for referral* to Bankruptcy Court *as defendants* in that action, not as plaintiff. Thus, the debtor-related entities were taking a defensive action to seek referral of their case to the bankruptcy court. That is the opposite of RFC's game-playing here.

In sum, the Standing Order does not operate to automatically refer this case to Judge Glenn. The Court should deny the Motion.

### B.  Contrary to RFC's Assertions, the Bankruptcy Court Did Not (and Could Not) Retain Exclusive Jurisdiction over this Litigation

RFC's assertion that the Bankruptcy Court retained *exclusive jurisdiction* over this case—thus purportedly mandating referral—is flatly inaccurate for a host of reasons.

---

[18] *See SIPA v. Bernard L. Madoff Investment Securities LLC*, No. 12-cv-5597, 2013 WL 4077586, at *1 (S.D.N.Y. Aug. 2, 2013) (case commenced *in bankruptcy court* and withdrawal of the automatic reference sought and obtained); *In re MF Global Inc.*, 484 B.R. 18, 22 (S.D.N.Y. 2012) (*adversary proceeding commenced* against the trustee, seeking a declaratory judgment that it does not have any liability to the MFGI estate in connection with the expired letter of credit; motion to withdraw the reference granted); *Lehman Brothers Holdings Inc. v. JPMorgan Chase Bank, N.A.* (*In re Lehman Brothers Holdings Inc.*), 480 B.R. 179, 181 (S.D.N.Y. 2012) (plaintiff-debtors and the creditors' committee brought *an adversary proceeding* against JPMorgan, and JPMorgan sought withdrawal of the reference).

[19] *E.g.*, Adversary Proceeding Nos. 14-01995; 14-01996; 14-01998; 14-02000; 14-02001 (Bankr. S.D.N.Y. 2014).

First, a bankruptcy court cannot retain jurisdiction to the exclusion of a district court. Because the Bankruptcy Court is a mere "unit" of this Court, *see* 28 U.S.C. § 151, and because federal bankruptcy jurisdiction is granted *to this Court* in the first instance, *compare id.* § 1334 *with id.* § 157(a), the jurisdiction of the Bankruptcy Court—an Article I court—cannot be to the exclusion of its parent court—an Article III court.

Second, RFC filed every one of the RFC Cases *outside* of Bankruptcy Court. If the Bankruptcy Court had "exclusive jurisdiction," apparently nobody told RFC (else they intentionally violated a court order).

Third, RFC fails to apprise this Court that RFC's successor-in-interest[20] was expressly given the right to file this type of lawsuit in any court of competent jurisdiction. Section 13.2 of the Liquidating Trust Agreement provides "that notwithstanding the foregoing or anything to the contrary set forth in the Plan, the Liquidating Trust Board shall have power and authority to bring (or cause to be brought) any action in any court of competent jurisdiction to prosecute any Liquidating Trust Causes of Action." In fact, earlier this year, RFC told a federal court in Minnesota the opposite of what it argues here – stating "the [Liquidating] Trust *and RFC do not agree* . . . that RFC was bound by [the Bankruptcy Court's plan's jurisdiction provision] to file this action in the S.D.N.Y. Bankruptcy Court. . . .").[21]

---

[20] As set forth in SunTrust's contemporaneously filed motion to dismiss, RFC lacks standing because *prior to filing this action*, RFC assigned its rights to pursue SunTrust for the claims alleged herein to a third-party, the Liquidating Trust.

[21] *See Residential Funding Company, LLC v. HSBC Mortgage Corp. (USA)*, Plaintiff's Memorandum in Response to and Support of HSBC's Motion to Transfer Venue under 28 U.S.C. § 1412 to the United States Bankruptcy Court for the Southern District of New York, Docket No. 23 (D. Minn. Feb. 20, 2014) (emphasis added).

Finally, as discussed below, the Bankruptcy Court cannot retain *exclusive* jurisdiction over *non-core*, state law claims as it cannot even enter a final judgment in this case or conduct a jury trial. *See* 28 U.S.C. §§ 151, 157, 1334.

Therefore, the Bankruptcy Court has not, and indeed cannot, retain exclusive jurisdiction over this case.

## C. Bankruptcy Jurisdiction Substantially Shrinks Following Plan Confirmation and the Standing Order Does Not Apply to this Litigation

Even if the Standing Order operates as RFC suggests, RFC has failed to establish a basis for bankruptcy jurisdiction under 28 U.S.C. § 1334.

At the time RFC filed this litigation, RFC had previously assigned its claims against SunTrust, if any, to a third-party, the Liquidating Trust, who was solely empowered to bring this action. While this warrants dismissal of the Amended Complaint with prejudice, it is likewise fatal to RFC's attempts to refer this case to Bankruptcy Court under the Standing Order.

Where, as here, a bankruptcy court has confirmed a plan, a number of courts in this circuit have held that federal bankruptcy jurisdiction substantially shrinks or narrows. *N. Am. Car Corp. v. Peerless Weighing & Vending Mach. Corp.*, 143 F.2d 938, 940 (2d Cir. 1944); *Guccione v. Bell*, No. 06 Civ. 492, 2006 WL 2032641, at *4 (S.D.N.Y. July 20, 2006).[22] In fact, after plan confirmation, the "related to" jurisdiction of a Bankruptcy Court is limited only to matters that "affect an *integral aspect* of the bankruptcy process," such as the "implementation, consummation, execution, or administration of the confirmed plan." *In re Metro-Goldwyn-*

---

[22] *In re Metro-Goldwyn-Mayer Studios, Inc.*, 459 B.R. 550, 556 (Bankr. S.D.N.Y. 2011); s*ee also In re Resorts Int'l, Inc*., 372 F.3d 154, 169 (3d Cir. 2004) (holding there was no "close nexus" for state law claims following confirmation of the plan involving a liquidating trustee because the state claims will not interfere with the implementation of the plan; though it will affect the former creditors as liquidating trust beneficiaries, they no longer have a close nexus to bankruptcy plan or proceeding because they exchanged their creditor status to attain rights to the litigation claims).

*Mayer Studios, Inc.*, 459 B.R. at 556.  RFC cannot establish bankruptcy jurisdiction because its

state law breach of contract claims against SunTrust are too far removed from the

"implementation, consummation, execution or administration" of the Plan.

   This case is independent from, and has virtually nothing to do with, RFC's bankruptcy

case, the Plan, or any bankruptcy issue.  This case involves RFC's R&W claims against SunTrust

– which do not implicate the bankruptcy case.  In fact, SunTrust is a total stranger to the

bankruptcy case – SunTrust did not participate in RFC's bankruptcy, *i.e.* RFC did not file a proof

of claim, vote on RFC's Plan, or otherwise take part in RFC's bankruptcy.  Now, in a transparent

litigation ploy, RFC is belatedly seeking to repackage this case as bankruptcy-related.

   RFC cannot establish bankruptcy jurisdiction based solely on the allegation that RFC's

recovery, if any, against SunTrust would be distributed to "creditors."[23]  RFC's claims are a

fiction – RFC assigned its rights against SunTrust to the Liquidating Trust and, thus cannot make

any recovery in this case, for creditors or otherwise.  Even had RFC retained rights against

SunTrust, a bankruptcy court "cannot hear a post-confirmation dispute simply because it might

conceivably increase the recovery to creditors, because the rationale could 'endlessly stretch a

bankruptcy court's jurisdiction.'"  *In re General Media, Inc.*, 335 B.R. 66, 75 (Bankr. S.D.N.Y.

2005).  *See also Little Rest Twelve, Inc. v. Visan*, 458 B.R. 44, 55 (S.D.N.Y. 2011) (an action in

which "'the only relationship . . . to the bankruptcy proceeding [is] that determination of the

action would affect the ultimate size of the estate' is not a core proceeding.").

   Accordingly, RFC has failed to establish bankruptcy jurisdiction and, thus, the Standing

Order is inapplicable.

---

[23] Here, the term "creditor" is used loosely, as claims of the original creditors who were the initial beneficiaries of
the Liquidating Trust may now be owned by distressed debt investors and hedge funds.

## D.    The *Orion* Factors Require Denial of the Motion

### 1.    The Court Should Review the *Orion* Factors at This Point

Even if the Standing Order applied to this case, the Court should deny referral to the Bankruptcy Court on the basis that RFC fails to satisfy the Second Circuit's seven-factor test from *Orion Pictures*.[24]

RFC pleads and protests that the Court does not need to review the *Orion* factors now, but should do so only in response to SunTrust's motion to withdraw the reference from Bankruptcy Court. RFC is wrong. Caselaw – *cited by RFC* – clearly provides that the Court can examine, at any time, *sua sponte,* whether to allow a case to proceed in bankruptcy court under *Orion*. *See Bernard L. Madoff Investment Securities LLC*, 2013 WL 4077586, at *2 ("[A] district court may on its own motion . . . withdraw the reference in whole or in part in appropriate circumstances."); *see also Picard v. HSBC Bank PLC,* 450 B.R. 406, 409 (S.D.N.Y. 2011) ("[A] judge of the District Court, in his or her discretion, may *sua sponte* withdraw the reference in a given case, for any of a wide variety of reasons."); *South St. Seaport Ltd. P'shp. v. Burger Boys (In re Burger Boys)*, 94 F.3d 755, 762 (2d Cir. 1996) (finding no error in district court's withdrawal of the reference *sua sponte*). Notably, in *Omega Tool*, which RFC cites for the proposition that the withdrawal factors become germane only after a motion to withdraw is filed with the bankruptcy court, the Court nonetheless analyzed all the factors courts consider when withdrawing the reference, such as those set forth in *Orion*. *See* 416 B.R. at 322.

Now is the time to review the *Orion* factors. Whether in connection with this Motion, or a motion to withdraw the reference to Bankruptcy Court, *this Court* will have to determine

---

[24] *See In re Orion Pictures Corp.*, 4 F.3d 1095 (2d Cir. 1993).

14

whether, under *Orion*, this case should be referred to or remain in the Bankruptcy Court.[25]  All roads lead to the same place – in all situations, *this Court* will make the *sole and final determination* under *Orion* whether this case is referred to the Bankruptcy Court.  RFC, again, is seeking the path of most litigation – requesting that SunTrust file a new, unnecessary motion addressing the same *Orion* factors briefed here by both parties.   In the interest of judicial economy, given the procedural quandary RFC created, the Court should review the *Orion* factors now.

### 2.    The *Orion* Factors

The *Orion* factors are:

(1) **whether the action is a core or non-core bankruptcy proceeding**;

(2) **judicial economy**;

(3) **reduction of forum shopping**;

(4) uniform bankruptcy administration;

(5) economical use of debtors' and creditors' resources;

(6) expediting the bankruptcy process;

(7) **the presence of a jury demand**.

*Orion*, 4 F.3d at 1102 (emphases added).

The most critical factor is (1) whether the proceeding is core or non-core.  The Second Circuit held in *Orion* that in "considering whether to withdraw the reference, [a district court] should first evaluate whether the claim is core or non-core" because this is the *most important*

---

[25] In fact, this is precisely what happened in *Residential Funding Company, LLC v. UBS Real Estate Securities*, No. 14-cv-02170A, which RFC cites in its Motion.  There, the district court *sua sponte* referred the litigation to the Bankruptcy Court on April 1, 2014, and Defendant UBS immediately filed a motion to withdraw the reference on April 25, 2014.

factor.  *See* 4 F.3d at 1101.  The core/non-core distinction provides two important pieces of

information for the Court in determining whether to refer the case to bankruptcy court: first, it

highlights the subject matter of the case, *i.e.* whether the court will adjudicate true bankruptcy

issues (core), or merely non-bankruptcy matters that relate generally to a bankruptcy case (non-

core); second, it defines how the matter will be litigated, *i.e.* whether the bankruptcy court can

issue final orders (core), or not, requiring the Court's *de novo* review of the bankruptcy court's

recommendations (non-core).  As such, the core/non-core determination is a proxy for factors of

efficiency and uniformity because "the fact that a bankruptcy court's determination on non-core

matters is subject to *de novo* review by the district court could lead the latter to conclude that in a

given case unnecessary costs could be avoided by a single proceeding in the district court."  *Id.*

### 3.   *Orion* **Factor 1—The Litigation Involves Non-Core Claims Over Which the Bankruptcy Court Cannot Enter Final Judgment**

#### a.   **This Case Is – At Most – a Non-Core Proceeding**

In its Motion, RFC alleges *only non-core bankruptcy jurisdiction*.  Specifically, RFC

alleged only that the Bankruptcy Court has "related to" (*i.e.* non-core) jurisdiction under section

1334(b).  *See* Motion at 1, 10.[26]

As set forth in §157(a), Congress has divided bankruptcy proceedings into three

categories: (1) those that "aris[e] under title 11"; (2) those that "aris[e] in" a title 11 case; and (3)

those that are "related to a case under title 11."  *Stern v. Marshall*, 131 S. Ct. 2594, 2596 (2011).

If the proceeding "arises in" or "arises under" the Bankruptcy Code, it is core.  If the proceeding

---

[26] RFC has "reserved" its right to argue that these claims "arise in" a proceeding under the Bankruptcy Code.  *See* Motion at 5 n.2.  Following *Stern v. Marshall*, RFC cannot in good faith make the argument that this litigation is a core proceeding.  And, even though RFC alleges that it is the Bankruptcy Court that has to make the core/non-core determination, *see* Motion at 9 n.4, the majority rule in this Circuit is that the district court—this Court—has the ability to make the core v. non-core determination.  *In re The VWE Grp., Inc.*, 359 B.R. 441, 447 (S.D.N.Y. 2007); *In re Northwest Airlines Corp.*, 384 B.R. 51, 56 (S.D.N.Y. 2008) ("Courts in the majority hold that the district court can determine, in the first instance, whether a proceeding is core or non-core.").

is "related to" a case under the Bankruptcy Code, the proceeding is non-core. *Id.* at 2605 (citing *Collier on Bankruptcy* ¶ 3.02[2], p. 3–26, n. 5 (16th ed. 2010) ("The terms 'non-core' and 'related' are synonymous").[27] Because RFC has asserted that this litigation is only "related to" its bankruptcy case, RFC has conceded that this litigation is *non-core*. *See* Motion at 1, 10.

### b. The Bankruptcy Court Has Circumscribed Authority to Act in a Non-Core Proceeding

In a non-core proceeding, such as this case, a bankruptcy judge may only "submit proposed findings of fact and conclusions of law to the district court." § 157(c)(1). The district court is solely authorized to enter a final judgment only after a *de novo* review of the bankruptcy judge's recommendations. *Id.*

In the seminal case *Stern v. Marshall*, the U.S. Supreme Court case defined the bounds of a bankruptcy court's jurisdiction to hear and determine matters before it. *See* 131 S. Ct. 2594. In *Stern*, the Supreme Court held that a bankruptcy court lacked constitutional authority to enter final judgment on a debtor's state-law counterclaim against a creditor, even though Congress had granted the bankruptcy court statutory authority to do so. *Id.* at 2596. In so holding, the Court stated that "the manner in which a bankruptcy judge may act on a referred matter depends on the

---

[27] The Second Circuit Court of Appeals has also cited approvingly the Fifth Circuit Court of Appeals decision in *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987), which is instructive on the core v. non-core distinction in § 157(a):

> If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding; for example, an action by the trustee to avoid a preference. If the proceeding is one that would arise only in bankruptcy, it is also a core proceeding; for example, the filing of a proof of claim or an objection to the discharge of a particular debt. If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy, it is not a core proceeding; it may be *related to* the bankruptcy because of its potential effect, but under section 157(c)(1) it is an "otherwise related" or non-core proceeding.

Here, RFC asserts that it has alleged state-law breach of contract and indemnification claims against SunTrust, which are claims that do not "invoke a substantive right created by" the Bankruptcy Code and which "could [and do] exist outside of bankruptcy." *See id.*

*type of proceeding involved*"—that is, whether the proceeding is core or non-core. *Id.* at 2603 (emphasis added).

Thus, given that this a non-core proceeding, this case should not be referred to the Bankruptcy Court.

    **4.**     ***Orion* Factor 2—Judicial Economy Will Not Be Served If This Litigation Is Referred to the Bankruptcy Court**

         **a.**      **A Two-Judge Adjudication Process is Unwieldy and Unnecessary in This Factually Complex Litigation**

RFC's Motion, if granted, would create more, not less, litigation.  It is most efficient to litigate this fact-intensive case in a single forum that is authorized to enter final orders and conduct the demanded jury trial (this Court).  As S.D.N.Y. Bankruptcy Judge Gerber recently stated, a non-core action can get "tied in procedural knots by motion practice, here and in the District Court … [because of] inabilities [of] an Article I bankruptcy judge, to issue findings and orders."  *In re BearingPoint, Inc.*, 453 B.R. 486, 488, 492 (Bankr. S.D.N.Y. 2011).  Another S.D.N.Y. judge characterized a plaintiff's request to conduct pre-trial proceedings in bankruptcy court as "*the worst of both worlds* by ensuring that all pretrial rulings of any substance would be considered in both courts—the Bankruptcy Court in the first instance and this Court on appeal." *Semi-Tech Litig., LLC v. Bankers Trust Co. (In re Graeme, Ltd.)*,  No. 02 Civ. 0711, 2001 U.S. Dist. LEXIS 22848, at *5 (S.D.N.Y. Feb. 25, 2001) (emphasis added).[28]

While certain cases might benefit from two judges, this is not one.  This is a loan-by-loan breach of contract and indemnity case.  If this case is not dismissed, RFC will have to prove that individual loans violate specific R&Ws (*e.g.*, loan-to-value ratio, borrower's debt-to-income ratio, adequacy of an appraisal, etc.), causing damages to RFC.  These will be granular inquiries

---

[28] *See Abondolo v. GGR Holbrook Medford, Inc.*, 285 B.R. 101, 112 (E.D.N.Y. 2002); *see also DeWitt Rehabilitation & Nursing Ctr., Inc. v. Columbia Cas. Co.*, 464 B.R. 587, 593 (S.D.N.Y. 2012).

into loan origination files for each and every loan at issue. Given that Judge Glenn cannot issue

final orders, every issue will be first litigated before Judge Glenn, who will provide a

recommendation to the Court; likely, one or both parties will object to the recommendation,

requiring the Court to review the recommendation, the parties' briefings, and the underlying

issue *de novo*. Accordingly, this fact-driven case will not benefit from – and in fact will be made

unnecessarily cumbersome by – the two-judge, dual review structure RFC requests.

Judge Glenn's prior work in RFC's bankruptcy case does not alter this result. While

Judge Glenn is a fine and well-respected jurist, this case does not involve bankruptcy issues that

require his expertise. Judge Glenn's prior approval of a settlement between RFC and certain of

its creditors does not have any bearing on the merits of this case. In a nutshell, RFC's

bankruptcy settlement concerned RFC's "downstream" relationship with third-parties; in

contrast, this case concerns RFC's "upstream" relationship with loan sellers like SunTrust. This

case involves different transactions, counterparties, and contractual obligations (involving

different R&Ws) than those involved in the bankruptcy settlement. Moreover, given that RFC

had assigned away its rights against SunTrust prior to commencing this action, there is nothing

for the Bankruptcy Court to do here.

Judge Glenn's involvement in reviewing the terms of the settlement was a limited

inquiry. Judge Glenn was required only to "canvass" the issues to determine that the settlement

does not fall "below the lowest point on the range of reasonableness." Specifically –

> In [approving bankruptcy settlements], **it is not necessary for a bankruptcy court to conclusively determine claims subject to a compromise, nor must the court have all of the information necessary to resolve the factual dispute**, for by so doing, there would be no need of settlement. Neither must the court find that the settlement constitutes the best result obtainable. Rather **the court need only canvass the issues to determine that the settlement does not fall 'below the lowest point in the range of reasonableness.'** (emphasis added).

*In re Martin*, 212 B.R. 316, 319 (B.A.P. 8th Cir. 1997) (citations omitted); *accord In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983). In stark contrast, the Court in this case will have to examine individual SunTrust loans to determine whether RFC can meet its burden to establish material R&W breaches.

The Court should be wary of RFC's newly-hatched motivation to refer this case to bankruptcy – particular given that every perceived "advantage" of Bankruptcy Court existed when RFC elected to file the RFC Cases *outside* of Bankruptcy Court. RFC drops revealing hints – RFC apparently hopes that the Bankruptcy Court will apportion liability for the settlement among all loan sellers, like SunTrust, in back-of-the-envelope rough justice. Motion, p. 11. In so doing, RFC (really, the hedge funds and the like who have bought publicly traded membership units in the Liquidating Trust) wants to avoid its obligation to establish loan-by-loan R&W breaches against SunTrust. This is highly problematic.

Even if Judge Glenn did have some familiarity with the facts and issues relevant to this case, the determination of whether SunTrust breached any R&Ws or should indemnify RFC should not be made on the record developed in the bankruptcy proceedings. As another bankruptcy judge said when facing a similar argument that he gained sufficient knowledge from his involvement in a bankruptcy action, "it would be manifestly improper for me to determine adjudicative facts on evidence from outside [the] record, or based on knowledge or perceptions developed in the course of the earlier chapter 11 case." *In re BearingPoint, Inc.*, 453 B.R. at 493.

At this point, it looks like very few of the RFC Cases will be litigated in Bankruptcy Court. Thus far, RFC has lost thirteen straight motions in Minnesota to transfer the cases to the

Southern District. Thus, RFC's vision of consolidating the RFC Cases before Judge Glenn has failed.

Relevant here, in one such case, U.S. District Court Judge Joan Ericksen, among other things:

- o *found the bankruptcy court was not sufficiently familiar with the cases to require transfer.* [*See Residential Funding Company, LLC, v. Cherry Creek Mortgage Co., Inc.*, Docket No. 41 at 7 (April 29, 2014) (D.Minn.).] (emphasis added).

- o *held the need for a loan-by-loan evaluation in these cases distinguishes each of these cases and the bankruptcy proceedings*. [*See id.*] (emphasis added).

- o *noted RFC itself asserted to another federal court that it was not bound by the bankruptcy court's retention of jurisdiction, such that it could file and pursue claims in any court.* [*See id.* at 7-8 (*citing* Memo. in Support of Motion to Transfer Venue at 12-13, *Residential Funding Co., LLC v. HSBC Mortg. Corp. (USA)*, Civil No. 14-144 (D. Minn. Jan. 16, 2014).)] (emphasis added).

- o *questioned RFC's standing to even make such a motion where "Residential Funding did not dispute [defendant's] assertion that the claims asserted here are Liquidating Trust Causes of Action."* [*See id.* at 9 (quotations omitted).] (emphasis added).

As such, it is highly unlikely that RFC will be able to consolidate the RFC Cases before Judge Glenn, thus further reducing any perceived judicial economy.

### 5.   *Orion* **Factor 3—RFC's Motion Is Impermissible Forum Shopping**

The Court should not countenance RFC's overt, unabashed judge shopping. RFC, as plaintiff represented by sophisticated counsel, filed this action in this Court and now RFC, as plaintiff, wants to litigate this same case before a different judge.[29] This is judge shopping in big letters and flashing lights. To make matters worse, the parties litigated in this Court for a number of months before RFC belatedly sought to refer this case to Bankruptcy Court.

---

[29] In the venue transfer context, a plaintiff seeking transfer *out of the forum they chose* has a heightened burden of persuasion. 17 James Wm. Moore, *Moore's Federal Practice* § 111.16[1] (3d ed. 2011) ("[T]o avoid harassment of defendants and to ensure the judicious use of Section 1404(a) transfers, it is appropriate that the plaintiff be put to a higher burden of persuasion in seeking the transfer over the objection of the defendant.").

RFC's contention that *SunTrust* is somehow guilty of forum shopping by opposing the Motion is absurd.  *See* Motion at 19 ("the only party arguably engaged in forum shopping is SunTrust itself.").  This Court is best-equipped to adjudicate this case and SunTrust is content to litigate this case before Your Honor.  SunTrust never had any involvement with RFC's bankruptcy case, and, understandably, does not see any reason why it should be required to litigate this case in that forum.  To the contrary, RFC apparently now desires the Bankruptcy Court, implicitly alleging that Judge Glenn can leverage whatever knowledge he gained in presiding over settlement hearings for the benefit of RFC—an approach the Bankruptcy Court has itself said would be manifestly improper.  *In re BearingPoint, Inc.*, 453 B.R. at 493.

### 6.  *Orion* **Factors 4, 5, & 6—Uniform Bankruptcy Administration, Expediting the Bankruptcy Process, & Economical Use of Debtors' and Creditors' Resources Are Neutral Factors Since the Bankruptcy Court Has Confirmed RFC's Plan**

None of these factors favors referral to the Bankruptcy Court.  The Bankruptcy Court entered its Order on December 11, 2013.  Thus, any concerns about uniform bankruptcy administration and expediting the bankruptcy process are therefore moot because the most notable bankruptcy event—confirmation of the Plan—has already occurred.  Moreover, RFC cannot assert that the Bankruptcy Court's adjudication of state law breach of contract and indemnification claims over which it lacks "core" jurisdiction implicates substantive issues of bankruptcy law that call for uniformity in adjudication by a bankruptcy judge.  *E.g.*, *In re Joseph DelGreco & Co., Inc.*, 10-CV-6422 NRB, 2011 WL 350281 (S.D.N.Y. Jan. 26, 2011) (uniform administration of bankruptcy law is not implicated when the litigation involves state law claims, which arose prior to the bankruptcy filing, and which do not raise substantive issues of bankruptcy law).  Finally, the economical use of debtors' and creditors' resources is not

implicated as the Bankruptcy Court is a unit of this Court, and neither the debtors nor creditors will suffer incremental resource depletion by litigating in the same district.

### 7. *Orion* Factor 7—The Parties Have Agreed to a Trial by Jury, a Proceeding the Bankruptcy Court Cannot Conduct

The parties have jointly demanded a jury trial in this case. The Bankruptcy Court cannot conduct a jury trial absent SunTrust's consent. This, too, militates against referral of this case to the Bankruptcy Court. *See Semi-Tech Litigation,* U.S. Dist. LEXIS 22848, at *5.[30]

Specifically, on February 28, 2014, the parties filed a joint letter to the Court, *see* Docket No. 7, and submitted to the Court's clerk via email the proposed case management plan and order, in accordance with this Court's December 23, 2013 order. Docket No. 2. The proposed case management plan and order, negotiated by both parties, states that the case is to be tried by a jury. This Court should therefore deny the Motion because the Bankruptcy Court cannot conduct a jury trial without SunTrust's consent, which SunTrust will not give. *See* 28 U.S.C. § 157(e). "[A] district court might find that the inability of the bankruptcy court to hold the trial constitutes cause to withdraw the reference." *See also In re Lenders Abstract & Settlement Serv. Inc.,* 493 B.R. 385, 396 (E.D.N.Y. 2013) (citing *Orion*). Because of this issue, "district courts often withdraw the reference of a noncore proceeding as to which the parties have not consented to the exercise of bankruptcy court jurisdiction and a right to trial by jury exists." 8 Norton *Bankr. L. & Prac.* 3d § 165:15; *see also In re Orion Pictures Corp.*, 4 F.3d at 1101-02 (timely jury demand in non-core proceeding is sufficient cause for withdrawal or reference); *In re The VWE Group, Inc.,* 359 B.R. 441, 451 (S.D.N.Y.2007) ("the court's finding that the claim is non-

---

[30] *See Abondolo v. GGR Holbrook Medford, Inc.*, 285 B.R. 101, 112 (E.D.N.Y. 2002) ("[I]t may be more efficient and may promote uniformity for district courts to decide non-core matters."); *see also DeWitt Rehabilitation & Nursing Ctr., Inc. v. Columbia Cas. Co*., 464 B.R. 587, 593 (S.D.N.Y. 2012) (holding that "duplicate reviews of the contracts and facts are costly and time-consuming, and unnecessarily expend judicial resources.").

core coupled with defendants' jury demand is sufficient cause to withdraw the reference."). This factor also supports this Court's denial of RFC's Motion.

## IV.    CONCLUSION

Contrary to RFC's assertions, the Standing Order does not apply to the unique procedural quandary RFC has created. As a matter of procedure and practice under the Bankruptcy Code and Bankruptcy Rules, a plaintiff asserting bankruptcy related claims—whether a debtor in possession, a bankruptcy trustee, or a liquidating trust—files such claims in the bankruptcy court. They do not file them in the district court and then make a post-hoc argument that the Standing Order results in referral down to the bankruptcy court. Moreover, because this Court can—*sua sponte*—consider the *Orion* factors and will consider them in any event, the Court should find that each of the *Orion* factors favor retention of this case. The most important factor—that this litigation involves *non-core* claims—colors all the other *Orion* factors, all of which should lead this Court to deny RFC's Motion. In short, the factual predicates undergirding RFC's Motion are largely contrived and unavailing because a plaintiff who chooses its forum cannot then use the Standing Order as an excuse to select a new judge.

Dated: New York, New York
       May 20, 2014

                        ALSTON & BIRD LLP

                        /s/ John P. Doherty
                        John P. Doherty
                        Jennifer S. Kozar

                        90 Park Avenue
                        New York, New York 10016
                        Telephone: (212) 210-9400
                        Facsimile: (212) 210-9444

                        *Attorneys for Defendant SunTrust Mortgage, Inc.*