UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RESIDENTIAL FUNDING CO., LLC,

                              Plaintiff,

           - against -

SUNTRUST MORTGAGE, INC.,

                            Defendant.

---

Case No. 1:13-cv-08938-RA

ORAL ARGUMENT REQUESTED

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT

QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Tel:    212-849-7000
Fax:   212-849-7100

*Counsel for Plaintiff*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND....................................................3

ARGUMENT ........................................................................................................5

I.      RFC HAS STANDING TO PURSUE ALL CLAIMS ASSERTED..................................5

        A.      Plaintiff Has Standing And Was Not Obligated To Change The Caption
                When The Trust Succeeded To Its Rights ...............................................5

        B.      RFC Did Not Assign Its Right To Sue Suntrust ......................................7

        C.      Even Under Defendant's Argument, RFC Had Standing When It Filed The
                Original Complaint ..............................................................................10

II.     THE AMENDED COMPLAINT MEETS THE *IQBAL* AND *TWOMBLY*
        REQUIREMENTS AND NEED NOT SPECIFY EACH INDIVIDUAL LOAN ...........11

III.    COUNT I IS PROPER AND SHOULD BE SUSTAINED..............................................15

        A.      RFC'S Breach Of Contract Claim Is Timely .........................................15

                1.      RFC's Claims Are Subject to Minnesota's Six-Year Statute of
                        Limitations, Not Delaware's Three-Year Statute ......................15

                2.      RFC's Claims Are Also Timely Under Delaware Law, And On the
                        Basis Of Continuing Violations ...............................................18

                3.      RFC Has Alleged All Conditions Precedent...............................20

IV.     COUNT II IS PROPER AND SHOULD BE SUSTAINED ............................................21

        A.      RFC Has Pled Losses ..........................................................................21

        B.      RFC'S Indemnification Claims Is Timely .............................................24

        C.      No Tolling Is Necessary Because RFC's Indemnification Claim Is Timely .........25

CONCLUSION....................................................................................................25

## TABLE OF AUTHORITIES

**Page**

### Cases

*Ace Sec. Corp. Home Equity Loan Trust, Series 2007-HE3 ex rel. HSBC Bank USA*,
   2014 WL 1116758 (S.D.N.Y. Mar. 20, 2014) .................................................................12, 19

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*,
   106 F.3d 11 (2d Cir. 1997)..............................................................................................10

*Am. Centennial Ins. Co. v. Aseguradora Interacciones, S.A.*,
   1997 WL 742530 (S.D.N.Y. Dec. 1, 1997) ........................................................................6

*In re Am. Exp. Lines, Inc.*,
   568 F. Supp. 956 (S.D.N.Y. 1983) .................................................................................24

*Am. Fin. Int'l Group-Asia, LLC v. Bennett*,
   No. 05 Civ. 8988, 2007 WL 1732427 (S.D.N.Y. June 14, 2007)....................................14, 15

*Amusement Indus., Inc. v. Stern*,
   07 Civ. 11586  2011 WL 6811018 (S.D.N.Y. Dec. 28, 2011)...............................................6

*Anderson News, L.L.C. v. American Media, Inc.*,
   680 F.3d 162 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 846 (2013) ............................................3

*Antone v. General Motors Corp., Buick Motor Division*,
   64 N.Y.2d 20 (1984) .....................................................................................................16

*Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*,
   920 F. Supp. 2d 475 (S.D.N.Y. 2013)..............................................................................12

*Bank Brussels Lambert v. Credit Lyonnais (Suisse)*,
   2001 WL 492363 (S.D.N.Y. May 9, 2001) .......................................................................17

*Bank of India v. Trendi Sportswear, Inc.*,
   No. 89 Civ. 5996, 2002 WL 84631 (S.D.N.Y. Jan 18, 2002).................................................23

*Brinckerhoff v. JAC Holding Corp.*,
   263 A.D.2d 352 (1st Dep't 1999) ...................................................................................17

*In re Burger*,
   125 B.R. 894 (Bankr. D. Del. 1991) ................................................................................19

*CIFG Assurance N. Am.*,
   2012 WL 1562718 (N.Y. Sup. Ct. May 1, 2012)................................................................13

*CalPERS v. Shearman & Sterling*,
   741 N.E.2d 101 (N.Y. 2000)............................................................................................8

*Carlone v. Int'l Ass'n of Heat & Frost Insulators & Allied Workers Local Union No. 34*,
   09-C 2010 WL 2195463 (D. Minn. May 28, 2010) ................................................................16

*Cauthorne v. Mut. Life Ins. Co. of N.Y.*,
   No. 96 Civ. 0232 (JFK), 1997 WL 154019 (S.D.N.Y. Apr. 1, 1997) ......................................7

*City of New York v. Lead Indus. Ass'n, Inc.*,
   644 N.Y.S.2d 919 (1st Dep't 1996) ......................................................................................24

*Clarex Ltd. v. Natixis Sec. Am. LLC*,
   12 CIV. 0722 PAE, 2012 WL 4849146 (S.D.N.Y. Oct. 12, 2012) ..........................................6

*In re Countrywide Financial Corp. Mortgage-Backed Securities Litigation*,
   834 F. Supp. 2d 949 (C.D. Cal. 2012) ..................................................................................18

*De Angelis v. Smith*,
   95 N.Y.S.2d 52 (Sup. 1949) ..................................................................................................22

*FDIC v. Cohen*,
   No. 95 Civ. 683, 1996 WL 87248 (S.D.N.Y. Feb. 29, 1996) ................................................17

*GML, Inc. v. Cinque & Cinque, P.C.*,
   2005 WL 5960011 (N.Y. Sup. Ct. N.Y. Cty. Sept. 29, 2005) ................................................17

*Gen'l Conference of Seventh-Day Adventists v. Aon Reinsurance Agency, Inc.*,
   826 F. Supp. 107 (S.D.N.Y. 1993) ........................................................................................24

*Global Fin. Corp. v. Triarc Corp.*,
   93 N.Y.2d 525 (1999) ............................................................................................................16

*Goodridge v. Harvey Grp., Inc.*,
   778 F. Supp. 115 (S.D.N.Y. 1991) ........................................................................................22

*Grund v. Delaware Charter Guarantee & Trust Co.*,
   788 F. Supp. 2d 226 (S.D.N.Y. 2011) ....................................................................................3

*Guerrieri v. Cajun Cove Condo. Council*,
   2007 WL 1520039 (Del. Super. Apr. 25, 2007) ....................................................................19

*Hamill v. Mut. of Am. Inv. Corp.*,
   913 N.Y.S.2d 62 (1st Dep't 2010) ........................................................................................25

*Heraeus Metal Processing v. PGP Industries*,
   2006 WL 4682143 (N.Y. Sup. Ct. N.Y. Cty. Oct. 31, 2006) ..................................................17

*Hobbs v. Scorse*,
   399 N.Y.S.2d 783 (4th Dep't 1977) ......................................................................................25

*Karmilowicz v. Hartford Fin. Servs. Grp., Inc.*,
   494 F. App'x 153 (2d Cir. 2012) ..........................................................................................20

*Keiler v. Harlequin Enters. Ltd.*,
   No. 13-1753-CV, 2014 WL 1704474 (2d Cir. May 1, 2014) ................................................14

*Levy v. Kosher Overseers Ass'n of Am., Inc.*,
   2000 WL 1218388 (S.D.N.Y. Aug. 25, 2000) ................................................................6

*Liman v. American S.S. Owners Mut. Protection & Indem. Ass'n*,
   299 F. Supp. 106 (S.D.N.Y. 1969), *aff'd* 417 F.2d 627 (2d Cir. 1969) ...........................23

*Loreley Fin. (Jersey) No., Ltd. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
   985 N.Y.S.2d 499, 2014 WL 1810646 (1st Dep't May 8, 2014) ...................................18

*MIG, Inc. v. Paul, Weiss, Rifkind, Wharton & Garrison, L.L.P.*,
   701 F. Supp. 2d 518 (S.D.N.Y. 2010), *aff'd*, 410 F. App'x 408 (2d Cir. 2011) ...........17

*Martinez v. Fiore*,
   454 N.Y.S.2d 475 (2d Dep't 1982) ................................................................................22

*Met. Life Inc. Co. v. Morgan Stanley*,
   2013 WL 3724938 (N.Y. Sup. Ct. June 8, 2013) ...........................................................17

*Okla. Police Pension & Ret. Sys. v. U.S. Bank Nat'l Ass'n*,
   291 F.R.D. 47 (S.D.N.Y. 2013) .....................................................................................12

*Oliver B. Cannon & Son, Inc. v. Fidelity & Casualty Co. of N.Y.*,
   484 F.Supp. 1375 (D. Del. 1980)) .................................................................................19

*Oxbow Calcining USA Inc. v. Am. Indus. Partners*,
   948 N.Y.S.2d 24 (1st Dep't 2012) .................................................................................18

*PNC Bank, N.A., v. Republic Mortgage Ins. Co.*,
   2013 WL 2285982 (W.D. Pa. May 23, 2013) ...............................................................13

*Pereira v. Cogan*,
   2001 WL 243537 (S.D.N.Y. Mar. 8, 2001), *vacated on other grounds sub nom.*,
   *Pereira v. Farace*, 413 F.3d 330 (2d Cir. 2005) ........................................................17

*Pfizer, Inc. v. Stryker Corp.*,
   348 F. Supp. 2d 131 (S.D.N.Y. 2004) ...........................................................................22

*Policemen's Annuity & Benefit Fund of Chi. v. Bank of Am., NA*,
   943 F. Supp. 2d 428 (S.D.N.Y. 2013) ...........................................................................13

*Portfolio Recovery Assocs., LLC v. King*,
   14 N.Y.3d 410 (N.Y. 2010) ...........................................................................................19

*Pricaspian Dev. Corp. v. Total S.A.*,
   397 F. App'x 673 (2d Cir. 2010) ...................................................................................17

*Proforma Partners, L.P. v. Skadden Arps Slate Meagher & Flom*,
   280 A.D.2d 303 (1st Dep't 2001) ..................................................................................17

*Pryor Cashman v. Tract Manager*,
   2007 WL 2175666 ..........................................................................................................17

*Residential Funding Co. v. Gateway Bank, F.S.B.*,
   No. 13-3518 (D. Minn. May 30, 2014) ...........................................................1, 14, 24, 25

*Residential Funding Co, v. Terrace Mortg. Co.*,
  Civ. No. 13-3517 (D. Minn. May 30, 2014) ................................................1, 6, 14

*Residential Funding Co. v. Wallick & Volk, Inc.*,
  Civ. No. 13-3512 (D. Minn. May 30, 2014) ...................................................1, 13

*Sease v. Cen. Greyhound Lines, Inc.*,
  306 N.Y. 284 (1954) ..........................................................................................16

*Seghers v. Deloitte & Touche USA LLP*,
  17 Misc. 3d 1118(A) ...........................................................................................17

*Shamrock Assocs. v. Sloane*,
  738 F. Supp. 109 (S.D.N.Y. 1990) ....................................................................17

*Smith v. Mattia*,
  No. 4498-VCN, 2010 WL 412030 (Del. Ch. Feb. 1, 2010)...............................19

*Startech, Inc. v. VSA Arts*,
  126 F. Supp. 2d 234 (S.D.N.Y. 2000)...........................................................11, 12

*Suntrust Mortgage, Inc. v. Sharpe Mortgage Lending Servs. Of Georgia, Inc.*,
  2011 WL 6178221 (E.D. Va. Dec. 12, 2011) ....................................................13

*TIG Ins. Co. v. Weil, Gotshal & Manges LLP*,
  2005 WL 5959978 (N.Y. Sup. Ct. N.Y. Cty. Nov. 10, 2005) ............................17

*In re Tex. Gen. Petroleum Corp.*,
  15 F.3d 179 (5th Cir. 1994) ..................................................................................6

*Two Pepper Music v. Rhino Records, Inc.*,
  173 F.3d 846 (2d Cir. 1999)..................................................................................6

*United N.Y. Sandy Hook Pilots' Ass'n v. United States*,
  191 F. Supp. 893 (S.D.N.Y. 1961) ....................................................................24

*VNB Realty, Inc. v. U.S. Bank, N.A.*,
  2014 WL 1628441 (D.N.J. Apr. 23, 2014) ........................................................13

*Verizon Directories, Corp. v. Continuum Health Partners, Inc.*,
  74 A.D.3d 416 (1st Dep't 2010) .........................................................................18

*Westchester Fire Ins. Co. v. Utica First Ins. Co.*,
  40 A.D.3d 978 (2d Dep't 2007)..........................................................................23

*Westmoreland Coal  Co. v. Entech, Inc.*,
  794 N.E.2d 667 (2003)..........................................................................................8

## Statutes

11 U.S.C. § 30 ...........................................................................................................15

11 U.S.C. § 108(a) .....................................................................................................15

CPLR § 202 ....................................................................................................16, 17

Fed. R. Civ. P. 8 ......................................................................................................1

Fed. R. Civ. P. 8(a)(2) ...........................................................................................14

Fed. R. Civ. P. 12(b)(1) ...........................................................................................1

Fed. R. Civ. P. 12(b)(6) ...............................................................................1, 3, 14

Fed. R. Civ. P. 17(a)(3) ..........................................................................................10

Fed. R. Civ. P. 25(c) ................................................................................................6

Minn.Stat. § 541.05 ................................................................................................16

## Other Authorities

*Black's Law Dictionary* (6th ed. 1990).................................................................8

N.Y. Prac. Series, Comm. Litig. in N.Y. St. Cts.(3d ed. 2011) ...........................16

### Documents Cited

| | |
|---|---|
| **2005-QA10 Assignment Agreement** | Assignment and Assumption Agreement by and between Residential Funding Company, LLC and Residential Accredit Loans, Inc. regarding the RALI Series 2005-QA10 Securitization, dated May 30, 2007, attached as Exhibit 5 to Declaration of John P. Doherty in Support of Defendant Suntrust's Motion to Dismiss the Amended Complaint dated May 20, 2014 ("Doherty Decl.") |
| **2005-QA10 Prospectus Supplement (excerpts)** | Prospectus Supplement for RALI Series 2005-QA10 Securitization, attached as Exhibit B to the Declaration of Isaac Nesser in Opposition to Suntrust's Motion to Dismiss, dated June 10, 2014 ("Nesser Decl.") |
| **2007-QS7 Assignment Agreement** | Assignment and Assumption Agreement by and between Residential Funding Company, LLC and Residential Accredit Loans, Inc. regarding the RALI Series 2007-QS7 Securitization, dated May 30, 2007, attached as Exhibit 3 to Doherty Decl. |
| **2007-QS7 Prospectus Supplement (excerpts)** | Prospectus Supplement for RALI Series 2007-QS7 Securitization, attached as Exhibit C to Nesser Decl. |
| **Bankruptcy Plan** | RFC's Bankruptcy Plan, Docket No. 6064, attached as Exhibit D to Nesser Decl. |
| **Confirmation Order** | RFC's Bankruptcy Confirmation Order, Docket No. 6065, attached as Exhibit E to Nesser Decl. |
| **Client Guide** | Attached to as Exhibit B First Amended Complaint |
| **Disclosure Statement** | Notice of Filing of Corrected Solicitation Version of the Disclosure Statement and Joint Chapter 11 Plan for RFC, Docket No. 4819, attached as Exhibit F to Nesser Decl. |
| **Seller Contract** | Attached to as Exhibit A First Amended Complaint |
| **Seller Guide (excerpts)** | Attached as Exhibit 8 to Doherty Decl. |

Plaintiff Residential Funding Company, LLC ("RFC"), through its successor the ResCap Liquidating Trust (the "Trust"), respectfully submits this memorandum of law in opposition to Defendant's motion, pursuant to Federal Rules of Civil Procedure 8, 12(b)(1) and (6), to dismiss the Amended Complaint.

## PRELIMINARY STATEMENT

The claims here are for breach of contract and indemnification based on Suntrust's sale of thousands of defective loans to RFC. RFC's resulting liabilities – including for representations and warranties it made concerning those loans to other parties, based on Suntrust's representations and warranties to RFC – contributed to its seeking bankruptcy protection. The Trust now seeks to recover for Suntrust's misconduct.

Suntrust seeks to evade liability using arguments that have been rejected by courts in New York and across the country, including in three opinions considering the adequacy of RFC's substantively identical claims and allegations pending against other parties. *See Residential Funding Co. v. Wallick & Volk, Inc.*, Civ. No. 13-3512 (D. Minn. May 30, 2014); *Residential Funding Co. v. Terrace Mortg. Co.*, Civ. No. 13-3517, at 15-16 (D. Minn. May 30, 2014); *Residential Funding Co. v. Gateway Bank, F.S.B.*, Civ. No. 13-3518 (D. Minn. May 30, 2014).

*First*, Suntrust makes three attacks against RFC's standing, all of which fail. Suntrust claims RFC lacks standing, even though it admits the Trust has succeeded to all of RFC's rights and liabilities. Even if Suntrust were correct, however, the remedy would not be dismissal, but rather an opportunity to substitute plaintiffs. *See* I.A *infra*. Suntrust claims RFC transferred its right to sue when it sold and securitized the loans. This argument is based on incomplete extrinsic evidence, applies to less than half of the transactions at issue, and is contradicted by both the governing agreements and the extrinsic evidence. *See* I.B *infra*. As a last gasp, Suntrust claims RFC itself lacked standing when it filed because of its bankruptcy. This ignores the Bankruptcy Confirmation Order. *See* I.C *infra*.

*Second*, Suntrust asserts that RFC was required to make allegations about each of the thousands of loans it sold, with specific reference to how they were defective. No court in any jurisdiction has ever imposed such a requirement when dealing with even 100 loans, much less the 10,000 at issue here. The cases considering similar claims and allowing allegations like RFC's here are legion. *See* II *infra*.

*Third*, Suntrust asserts that RFC's breach of contract claim is untimely. But, in doing so, Suntrust misapplies New York's borrowing statute, which depends not on a corporation's state of incorporation, but rather on its principal place of business. Because RFC's principal place of business at the relevant time was Minnesota, the statute of limitations is six years, not three. Suntrust also tries to take issue with RFC's allegations concerning conditions precedent, even though they are precisely what the Federal Rules require and there are no conditions precedent for the claims RFC asserts. *See* IV.A *infra*.

*Fourth*, Suntrust argues RFC's indemnification claim should be dismissed because, it asserts, RFC has not pled out-of-pocket losses. This is astonishing. There are extensive allegations of out-of-pocket losses in the Amended Complaint. It is also a matter of public record that RFC has paid $1 billion in cash and has a judgment against it for over $8.6 billion as part of its bankruptcy relating to this very claim. Suntrust further ignores the indemnification provisions, which do not all require losses but rather merely "liabilities," and argues, against all common sense, that somehow an order from a bankruptcy court directing payment is not an out-of-pocket loss. *See* III.A *infra*. Finally, Suntrust makes the same incorrect arguments as to the timeliness of the indemnification claim as it does as to the breach of contract claim, and several additional incorrect arguments besides. *See* IV.B & IV.C *infra*.

Suntrust's motion to dismiss should be denied in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant sold residential mortgage loans to RFC under a Seller Contract.  *See* First Am.
Compl. ("FAC") ¶¶ 1, 4, 17.[1]  As part of its sale of loans to RFC, Defendant made numerous
representations and warranties to RFC regarding the loans.  *Id.* ¶¶ 24(a)-(m), 25.  These
representations and warranties are in the "Client Guide," which contains the terms and conditions
of the agreement between the parties.  *Id.* ¶¶ 17-18; *see also id.* Ex. B (attaching excerpts).  The
parties' 1987 Seller Contract is governed by New York law.  *Id.* Ex. A, ¶ 9.

Defendant knew RFC pooled the loans purchased from Defendant and other
correspondent lenders and sold the pooled loans into special purpose securitization trusts, which
issued mortgage-backed securities ("RMBS") to investors.  *Id.* ¶¶ 21-23.  Defendant also knew
that RFC made representations and warranties in these sales based on (though narrower than) the
representations and warranties Defendant made to RFC.

Defendant sold more than 10,000 loans, with an original principal balance in excess of
$3.5 billion, to RFC.  *Id.* ¶¶ 4, 17.  RFC pooled and sold these loans into more than 100 RMBS
trusts.  *Id.* ¶ 37.  A preliminary identification of the specific Defendant loans that were
securitized, including their original principal balance, the securitization in which each loan was
included, and the date Defendant sold the loan to RFC, is provided with the First Amended
Complaint at Exhibit C.  Defendant sold additional loans to RFC that RFC sold to whole loan
purchasers, also with representations and warranties based on those made by Defendant.  *Id.* ¶ 22.

Over time, many of the loans Defendant sold to RFC defaulted or became seriously
delinquent.  *Id.* ¶ 48.  These delinquency and default rates exceed normal expectations.  *Id.* ¶ 49.
Internal reviews conducted by RFC determined that hundreds of the loans sold to RFC by

---

[1]   Under Fed. R. Civ. P. 12(b)(6), the allegations in the First Amended Complaint are
construed "in a light most favorable" to RFC and the "factual allegations" in the First Amended
Complaint are "taken as true."  *Grund v. Del. Charter Guar. & Trust Co.*, 788 F. Supp. 2d 226,
245 (S.D.N.Y. 2011).  Additionally, this Court must "draw[] all reasonable inferences and
resolv[e] all conflicts and ambiguities" in RFC's favor.  *Anderson News, L.L.C. v. Am. Media,
Inc.*, 680 F.3d 162, 168 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 846 (2013).

Defendant violated the Client Guide and/or other representations or warranties made by Defendant, resulting in an Event of Default under the Agreement. *Id.* ¶ 50. The types of defects included income misrepresentation, employment misrepresentation, owner occupancy misrepresentations, appraisal misrepresentations or inaccuracies, undisclosed debt, and missing or inaccurate documents. *Id.* ¶ 51. Nine specific examples of defective loans Defendant sold to RFC are contained in the First Amended Complaint. *Id.* ¶¶ 52, 63.

Beginning in 2008, RFC faced a growing number of claims and lawsuits stemming from the defective loans that it purchased from Defendant and others. *Id.* ¶¶ 58-69. Various bond insurers, trustees and institutional investors made repurchase demands and/or filed lawsuits against RFC. *Id.* All of the lawsuits alleged that the loans RFC sold into RMBS trusts were defective in a variety of ways, including, among other things, because of borrower fraud, missing or inaccurate documentation, misrepresentations concerning owner occupancy, fraudulent or inflated appraisals, and failure to comply with state and federal law. *Id.* ¶ 70. The lawsuits involved RMBS trusts containing loans sold to RFC by Defendant. *Id.* ¶¶ 57, 59. Collectively, the lawsuits involved more than one hundred RMBS trusts with a combined principal balance of more than $100 billion. *Id.* ¶ 71.

In May 2012, RFC and certain of its affiliates voluntarily filed for chapter 11 bankruptcy protection in the Southern District of New York. *Id.* ¶ 74. Hundreds of proofs of claim were filed by investors in RMBS, monoline insurers, whole loan purchasers, indenture trustees, and others alleging that loans in the RMBS trusts were defective for the same reasons as alleged in the pre-bankruptcy lawsuits. *Id.* ¶ 75-77. RFC and its affiliates settled many of these claims and lawsuits in the bankruptcy proceedings for allowed claims totaling billions of dollars. *Id.* ¶¶ 69-70. RFC has also paid millions of dollars in attorneys' fees to defend against, negotiate, and ultimately settle claims relating to allegedly defective loans. *Id.* ¶ 80. These liabilities and losses were caused in part by Defendant's breaches of contract. *Id.*

RFC's First Amended Complaint asserts two claims against Defendant. Count One arises from Defendant's breaches of the Seller Contract. *Id.* ¶¶ 81-88. Count Two is for

4

indemnification for liabilities and losses RFC has incurred because of the defective loans
Defendant sold to RFC, under the express indemnification provisions in the Seller Contract. *Id.*
¶¶ 89-92. These claims are now being prosecuted for the benefit of RFC's creditors by the Trust,
which has succeeded to all of RFC's rights and now controls RFC. *Id.* ¶ 13.

## ARGUMENT

## I.     RFC HAS STANDING TO PURSUE ALL CLAIMS ASSERTED

Defendant makes two challenges to RFC's standing. The first is a quibble about whether
the Trust must now be named in the caption, despite being the successor to RFC. This is
inconsistent with the Federal Rules, which allow successors to take over actions without
amendment of the complaint. The second challenge assumes RFC assigned its right to bring its
breach of contract claims when it sold the loans. This argument, by its own terms, applies only
to a minority of the transactions, is based on an incomplete record of extrinsic evidence, and is
contradicted by the plain language of the governing agreements and the incomplete set of
contracts Suntrust has attempted to put before this Court.

### A.     Plaintiff Has Standing And Was Not Obligated To Change The Caption
When The Trust Succeeded To Its Rights

The following is not in dispute. RFC suffered the harms alleged in the Amended
Complaint. RFC filed this action on December 17, 2013, the day the Plan became effective and
before RFC's assets were transferred to the Trust. The Trust succeeded to all of RFC's rights
and interests (including the right to bring this litigation) pursuant to the Bankruptcy Plan, and is
prosecuting this action to recover funds for RFC's creditors. FAC ¶ 13.[2]

Nevertheless, Defendant complains that the Trust, as successor to RFC's claims, has not
changed the caption to make itself the named plaintiff. There is no such requirement. To the

---

[2]   Suntrust incorrectly asserts that the Amended Complaint was filed after the court-
imposed deadline of April 7, 2014. In fact, RFC filed the complaint on April 7, 2014, as
demonstrated by the court's stamp, rather than on April 8, 2014. *See* Nesser Decl. Ex. A.

contrary, Federal Rule of Civil Procedure 25(c) provides (in relevant part) that "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." As courts in this District have confirmed, "'the most significant feature of rule 25(c) is that it does not require that anything be done after an interest has been transferred. The action may be continued by or against the original party, and the judgment will be binding on his successor in interest even though he is not named.'" *Am. Centennial Ins. Co. v. Aseguradora Interacciones, S.A.*, 1997 WL 742530, at *4 (S.D.N.Y. Dec. 1, 1997) (quoting 7C Charles Alan Wright et al., *Federal Practice and Procedure* § 1958 (3d ed.)); *accord Levy v. Kosher Overseers Ass'n of Am., Inc.*, 2000 WL 1218388, at *2 (S.D.N.Y. Aug. 25, 2000) (following a transfer of interest, a plaintiff "ha[s] no obligation to substitute" the transferee as plaintiff).

None of Defendant's cases address the situation here: a trust that succeeded the interests of a chapter 11 debtor. Instead, they concern plaintiffs that transferred their rights to third parties that still existed at the time of the action, rather than successors, and thus might also themselves bring claims against the defendants. *Clarex Ltd. v. Natixis Sec. Am. LLC,* 12 CIV. 0722 PAE, 2012 WL 4849146, at *6 (S.D.N.Y. Oct. 12, 2012) (affiliate owned shares on date complaint filed, rather than either named plaintiff, and their "separate nature cannot simply be ignored when inconvenient"); *Amusement Indus., Inc. v. Stern*, 07 Civ. 11586 (LAK), 2011 WL 6811018, at *4-*5 (S.D.N.Y. Dec. 28, 2011) (party had assigned rights to separate entity before counterclaim asserted); *Two Pepper Music v. Rhino Records, Inc.*, 173 F.3d 846 (2d Cir. 1999) (unpublished) (right to sue for infringement transferred to third party). These cases are inapplicable because RFC no longer exists. *In re Tex. Gen. Petroleum Corp.*, 15 F.3d 179 (5th Cir. 1994) (affirming, under Rule 25(c), the district court's reversal of the bankruptcy court's dismissal for lack of standing after plaintiff's sale of its interest in the the lawsuit and underlying leases). Moreover, a Minnesota court considering substantially similar standing arguments recently pronounced itself "satisfied that the named plaintiff [RFC] has standing to enforce the

terms of the Agreement at issue in this case." *Residential Funding Co. v. Terrace Mortg. Co.*,
No. 13-3517, at 23 (D. Minn. May 30, 2014). This Court should follow suit.

**B.     RFC Did Not Assign Its Right To Sue Suntrust**

This Court should deny Defendant's argument that RFC assigned its right to sue in
selling the mortgage loans under the Assignment Agreements on a simple basis: The evidence is
incomplete. Suntrust admits it has not examined 36 of the 105 relevant agreements and purports
to analyze just two, asserting, but not proving, that they represent the rest. Br. 10. Defendant's
motion can be denied on this basis alone. *See Cauthorne v. Mut. Life Ins. Co. of N.Y.*, No. 96
Civ. 0232, 1997 WL 154019, at *3 (S.D.N.Y. Apr. 1, 1997).

But if the Court is willing to entertain the argument on the basis of admittedly incomplete
evidence, it should be rejected. *First*, Defendant takes great pains to obscure that its argument
does not even apply to more than half of the transactions at issue. Defendant asserts it has
reviewed the Assignment Agreements for only 69 of the 105 transactions at issue and, even so,
its argument that RFC transferred its rights applies to only 48 of them—leaving 57 of the
transactions untouched even according to Defendant. Br. 10-11. That is because for the 21 other
deals, as Defendant admits, while RFC transferred rights to the Seller Contracts, there was an
express reservation of rights as to Defendant's breaches of the Seller Contract in the Assignment
Agreement, which, it concedes, is fatal to its argument. *E.g.*, Doherty Decl. Ex. 5 ("RFC shall
have the concurrent right to exercise remedies and pursue indemnification upon a breach by a
Seller under any Seller Contract of any of its representations and warranties.").

*Second*, even as to those 48 deals without the express reservation of rights, Defendant's
argument fails because RFC never transferred the right to sue Suntrust. In those transactions,
unlike those with the express reservation, RFC did not transfer its "rights" under the Seller
Contracts. Instead, it transferred rights only to the "Mortgage Loans," that is, the specific loans
RFC sold. *E.g.*, *id.* Ex. 3. In the other 21 deals, which Defendant concedes should be read
together as a guide to RFC's intent, RFC *did* transfer some rights under the Seller Contract. That

is why there is an express reservation of the rights to sue for breaches of the Seller Contract and for indemnification. *Compare, e.g., id.* Ex. 3 ¶ 2 ("RFC hereby assigns to the Company without recourse *all of its right, title and interest in and to the Mortgage Loans . . . .*" (emphasis added)), *with id.* Ex. 5 ¶ 6 ("RFC hereby assigns to the Company, and the Company hereby assumes, *all of RFC's rights and obligations under the Seller Contracts* with respect to the Mortgage Loans . . . provided that, notwithstanding the assignment and assumption hereunder, RFC shall have the concurrent right to exercise remedies and pursue indemnification upon a breach by a Seller under any Seller Contract of any of its representations and warranties." (emphasis added)).

The contract language confirms that transfer of the Mortgage Loans (as opposed to rights under the Seller Contracts) did not include transfer of the right to sue Suntrust. The Client Guide and Definitions, explicitly incorporated into the Seller Contracts, make clear that the right to sue Suntrust is separate and distinct from the Mortgage Loans. The definition of Loan includes only Suntrust's "rights, title and interest in and to the Loan." *Id.* Ex. 8 at 12. It does not include the representations and warranties or the indemnification provisions, which are made separately in the Client Guide.

The difference between a mortgage loan and other contractual obligations is further confirmed by caselaw. A loan is contract with a borrower. *See Black's Law Dictionary* (6th ed. 1990) (defining Loan as "Delivery by one party to and receipt by another party of a sum of money upon agreement, express or implied, to repay it with or without interest."). Suntrust's obligations under the Seller Contract (and thus Client Guide) are not part of the Mortgage Loan. The Seller Contract is a separate agreement between the Suntrust and RFC. The New York Court of Appeals has held that a mortgage loan does not include other contractual obligations (like Suntrust's) unless the agreement explicitly says so. *CalPERS v. Shearman & Sterling*, 741 N.E.2d 101, 103, 105 (N.Y. 2000) (Assignment of "right, title and interest in, to and under the [loan] documents" does not include rights created outside the loan documents). Here, it does not.

Moreover, any transfer of rights to sue Defendant through the Assignment Agreements cannot be reconciled with the intended purpose of the Seller Contract and Client Guide, which is

for RFC to securitize or sell those loans itself, with its rights against Suntrust protected.
*Westmoreland Coal Co. v. Entech, Inc.*, 794 N.E.2d 667, 670 (2003) ("A written contract will be
read as a whole, and every part will be interpreted with reference to the whole; and if possible it
will be so interpreted as to give effect to its general purpose." (citation omitted)).  *First*, the
Client Guide contains an acknowledgement by Suntrust that "it is GMAC-RFC's intent to
securitize some or all of the Loans sold to GMAC-RFC."  Client Guide § A202(II).  *Second*, the
Indemnification clause specifically provides that Suntrust "shall indemnify GMAC-RFC from all
losses, damages, penalties, fines, forfeitures, court costs and reasonable attorneys' fees,
judgments, and any other costs, fees and expenses resulting from any Event of Default.  This
includes, without limitation, liabilities arising from . . . any breach of any representation,
warranty or obligation made by GMAC-RFC in reliance upon any warranty obligation or
representation made by [Suntrust] contained in the Client Contract . . . ."  *Id.* § A212.  There
would be no point to these statements if RFC transferred its rights to bring claims against
Suntrust when it sold the loans itself.

       Suntrust's argument is also belied by the transaction documents on which it relies.  The
Assignment Agreements list several agreements whose rights are transferred—but do not list the
Seller Contract.  *See* Doherty Decl. Exs. 3 (2007-QS7) & 5 (2005-QA10).  The Prospectus
Supplements for both securitizations specifically refer to the representations and warranties RFC
received from loan sellers such as Defendant but also state RFC "will not assign" them to the
trusts.  Nesser Decl. Ex. B (2005-QA10) at S-23 ("Residential Funding will not assign to the
depositor, and consequently the depositor will not assign to the trustee for the benefit of the
certificateholders, any of the representations and warranties made by the mortgage collateral
sellers."); *id.* Ex. C (2007-QS7) at S-44 (same).  None of this can be reconciled with Suntrust's
position.  This Court should reject it.

**C.      Even Under Defendant's Argument, RFC Had Standing When It Filed The
Original Complaint**

Suntrust's argument that RFC lacks standing because the Trust succeeded to its rights is

wrong, as shown in I.A, *supra*.  But even if this Court nevertheless accepts that the Trust, as

successor to RFC, should be formally named as plaintiff, the result should not be dismissal, as

Defendant contends, because RFC had standing to assert these claims when the original

complaint was filed on December 17, 2013.  Defendant's argument to the contrary assumes that

the Bankruptcy Plan automatically divested RFC of its right to bring this action.  That

assumption is contradicted by Confirmation Order, which merely *authorizes* the transfer of assets;

it does not effectuate it.  Confirmation Order ¶ 24 ("As provided in the Plan, on the Effective

Date, or as soon as reasonably practicable thereafter, the Debtors will transfer and assign to the

Liquidating Trust the Available Assets in accordance with Article VI.C of the Plan, which shall

be deemed vested in the Liquidating Trust.  On and after the Effective Date, the Liquidating

Trust Board shall have discretion with respect to the timing of the transfers of Liquidating Trust

Assets.").  As of the Effective Date, the Trust Board still has to make the transfers.  *Id.*  RFC thus

still had the right to bring this action on the date of filing.

When standing exists at the time of filing, the proper procedure is substitution, not

dismissal.  Fed. R. Civ. P. 17(a)(3) ("The court may not dismiss an action for failure to prosecute

in the name of the real party in interest until, after an objection, a reasonable time has been

allowed for the real party in interest to ratify, join, or be substituted into the action. After

ratification, joinder, or substitution, the action proceeds as if it had been originally commenced

by the real party in interest."); *Adv. Magnetics, Inc. v. Bayfront Partners, Inc.* 106 F.3d 11, 20

(2d Cir. 1997) ("A Rule 17(a) substitution of plaintiffs should be liberally allowed when the

change is merely formal and in no way alters the original complaint's factual allegations as to the

events or the participants.").  RFC hereby requests leave to make such a substitution should this

Court find any merit in Suntrust's argument.

## II.    THE AMENDED COMPLAINT MEETS THE *IQBAL* AND *TWOMBLY* REQUIREMENTS AND NEED NOT SPECIFY EACH INDIVIDUAL LOAN

Defendant does not assert it is ignorant of the nature of RFC's claims, nor could it

plausibly do so.  *See Startech, Inc. v. VSA Arts*, 126 F. Supp. 2d 234, 236 (S.D.N.Y. 2000)

("[U]nder Fed.R.Civ.P. 8(a)(2), it is not necessary to plead separately the elements of a claim for

a breach.  It is sufficient that the claim shows that the pleader is entitled to relief.").  RFC alleges:

- The specific agreements that were breached (FAC ¶ 17 ("Suntrust sold over 10,000 mortgage loans to RFC pursuant to the Seller Contract"); *id.* Ex. A (the Seller Contract));

- The defects in the loans that constitute those breaches (*id.* ¶¶ 38 ("Suntrust materially breached its extensive contractual representations and warranties by delivering loans that were not originated or underwritten in accordance with the requirements of the Agreement; did not meet the representations and warranties made as to those loans; and/or failed to comply with applicable state and federal law."), 43 (investigation by the Trust "establish[ed] breaches of at least the following representations: (A), (T), and (KK) of Section A202 of the Client Guide"), 50 ("Internal reviews conducted by RFC determined that hundreds of the loans sold to RFC by Suntrust violated the Client Guide and/or other representations or warranties made by Suntrust."), 51 ("The types of defects varied, but included income misrepresentation, employment misrepresentation, owner occupancy misrepresentations, appraisal misrepresentations or inaccuracies, undisclosed debt, and missing or inaccurate documents, among others.  Additional material defects are likely contained throughout the loan population sold to RFC by Suntrust."), 52 (detailing specific loans with "significant and material defects violating the Client Guide representations and warranties"));

- RFC's performance (*id.* ¶¶ 35 ("RFC at all times performed all of its obligations to Suntrust, if any, under the Agreement."), 84 ("RFC complied with all conditions precedent, if any, and all of its obligations under the Agreement.")); and

- The resulting harm to RFC (*id.* ¶¶ 54 ("[T]hese defects constituted material breaches of Defendant's representations and warranties, contributing to RFC's exposure to billions of dollars in liability and tens of millions of dollars in legal expenses."), 55 ("As a direct result of Defendant Suntrust's breaches, RFC has incurred obligations, liabilities, damages, and losses for which it is entitled to recovery from Suntrust."), 56 ("RFC has incurred billions of dollars in liabilities and losses stemming from defective loans, including those sold to RFC by Suntrust."), 57 ("RFC has expended tens of millions of dollars litigating the quality of the loans sold to it by Suntrust."), 62 ("In total, RFC repurchased over $5.0 million of Suntrust loans" regarding which there were allegations of defects.),

11

78 (RFC was forced to settle "RMBS-related liabilities [including those arising
from Suntrust's defective loans] for more than $10 billion in allowed claims.")).

RFC also provides a statistical analysis and illustrative examples of detailed breaches.  FAC.

¶¶ 41, 47 ("Of the sampled loans, 32% failed both owner-occupancy tests and therefore breached

representations (A), (G), and (KK) of Section A202 of the Client Guide."), 52 & Ex. C.  That is

more than is required for a breach of contract claim to be sustained.  *See, e.g., Startech*, 126 F.

Supp. 2d at 236 ("The essential elements to pleading a breach of contract under New York law

are the making of an agreement, performance by the plaintiff, breach by the defendant, and

damages suffered by the plaintiff.") (citation omitted).

In the face of these detailed allegations, Defendant attempts to impose a rule that no court

in any jurisdiction has ever accepted:  that in a case involving even just one hundred loans – and

this case has more than ten thousand – the complaint must include loan-by-loan allegations.

Defendant cites not a single case with such a requirement, because there is none, and cases to the

contrary are legion.  *See, e.g.*, *Ace Sec. Corp. Home Equity Loan Trust, Series 2007-HE3 ex rel.*

*HSBC Bank USA v. DB Structured Prods., Inc.*, 2014 WL 1116758, at *13 (S.D.N.Y. Mar. 20,

2014) (rejecting a motion to dismiss because "as a matter of pleading sufficiency, a complaint . . .

need not contain specific allegations regarding each loan at issue."); *Assured Guar. Mun. Corp. v.*

*Flagstar Bank, FSB*, 920 F. Supp. 2d 475, 513 (S.D.N.Y. 2013) ("To the extent [defendant]

argues that it must be notified as to each loan as to which a material breach is claimed with

sufficient specificity to allow [defendant] to identify the loan and investigate the alleged breach,

this requirement inappropriately places the burden of notification on [plaintiff]."); *Okla. Police*

*Pension & Ret. Sys. v. U.S. Bank Nat'l Ass'n*, 291 F.R.D. 47, 69-70 (S.D.N.Y. 2013) (plaintiff

"made sufficient factual allegations to state a plausible claim that there were in fact breaches of

the seller's representations and warranties" despite defendant's contention that plaintiff "failed to

identify any specific loan" as to which there were breaches and did "not allege which loans had

such deficiencies"); *Policemen's Annuity & Benefit Fund of Chi. v. Bank of Am., NA*, 943 F.

Supp. 2d 428, 442 (S.D.N.Y. 2013) ("At the pleading stage, plaintiffs cannot be required to

identify breaches of representations and warranties with respect to the individual loans in the specific trusts . . . .  Rather, plaintiffs satisfy their burden where their allegations 'raise a reasonable expectation that discovery will reveal evidence' proving their claim."); *see also CIFG Assurance N. Am.*, 2012 WL 1562718 (N.Y. Sup. Ct. May 1, 2012) ("The complaint need not make specific representations as to each of the individual loans."); [3] *VNB Realty, Inc. v. U.S. Bank, N.A.*, 2014 WL 1628441, at *4 (D.N.J. Apr. 23, 2014) ("VNB's allegations [which did not identify breaches as to individual loans] are sufficiently detailed to survive a motion to dismiss."); *PNC Bank, N.A., v. Republic Mortgage Ins. Co.*, 2013 WL 2285982, at *4 (W.D. Pa. May 23, 2013) (holding that PNC "need not provide specifics regarding each individual loan, as the resulting complaint would be thousands of pages" and approving of complaint that "identified . . . the disputed loans at issue . . . provided detailed examples of each category of the alleged breaches by Republic, and . . . pled damages.").  Suntrust has even availed itself of this rule as plaintiff.  *See Suntrust Mortgage, Inc. v. Sharpe Mortgage Lending Servs. Of Georgia, Inc.*, 2011 WL 6178221 (E.D. Va. Dec. 12, 2011), at *3 ("complaint need not contain every exhaustive detail pertaining to a plaintiff's claims"; Suntrust met its burden by "cit[ing] numerous provisions of the parties' Agreement, and alleg[ing] facts which . . . allow a reasonable inference that Sharpe acted . . . in contravention of its obligations therein.").

RFC has identified the loans by loan number, loan amount, and date of sale.  That is all that is required, and it has been specifically held sufficient by the three courts to consider the adequacy of RFC's substantively identical claims and allegations pending against other parties. *See Residential Funding Co. v. Wallick & Volk, Inc.*, Civ. No. 13-3512, at 6 (D. Minn. May 30, 2014) ("Defendant also alleges that Plaintiff is required to allege the particular loans and defects at issue in this action.  The Court is unconvinced.  Federal pleading standards do not mandate the type of detail Defendant is requesting, and similar case law has not required what Defendant

---

[3]  New York law applies to RFC's claims.  Seller Contract ¶ 9 ("This Contract shall be governed by, and construed and enforced in accordance with, applicable federal laws and the laws of the State of New York.").

demands here."); *Residential Funding Co. v. Terrace Mortg. Co.*, Civ. No. 13-3517, at 15-16 (D. Minn. May 30, 2014) ("This Court rejects Terrace's contention that the First Amended Complaint failed to meet Rule 8(a) standards by failing to list each and every Terrace loan at issue, the specific provisions of the Client Guide that each loan allegedly breached, and how each loan breached that particular provision. . . .  [F]ederal pleading standards simply do not demand that level of detail."); *Residential Funding Co. v. Gateway Bank, F.S.B.*, Civ. No. 13-3518, at 22 (D. Minn. May 30, 2014) (same).

The reason courts do not require the level of detail Suntrust presses for is that it is inconsistent with the Federal Rules:  Neither *Twombly* nor *Iqbal* changed the requirement that complaints must contain just a "short and plain statement" of the facts that give rise to liability and damages.  *Keiler v. Harlequin Enters. Ltd.*, No. 13-1753-CV, 2014 WL 1704474, at *5 (2d Cir. May 1, 2014) ("As we have previously observed, Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief . . . . Consequently, to survive a motion under Rule 12(b)(6), a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level.") (citations omitted).  A list of thousands of individual loans, with each breach separately enumerated, would be neither short nor plain.

Suntrust tries to take refuge in a single case, but it imposes no such loan-by-loan requirement.  In *Am. Fin. Int'l Group-Asia, LLC v. Bennett*, the court held dismissal was warranted because, unlike here, "[t]he only mention of any contract in the complaint is a reference to 'uniform client agreements' (Compl.¶ 99), but these appear to be contracts between RefcoFX [a non-defendant] and plaintiffs."  No. 05 Civ. 8988, 2007 WL 1732427 (S.D.N.Y. June 14, 2007), at *2.  The claims were dismissed not because they failed to identify individual contracts and breaches of specific representations and warranties, but because the only contracts they alleged were breached were not with defendants.  *Id.* ("Plaintiffs breach of warranty claims against the corporate officers . . . fail for the same reason:  there was no privity of contract between plaintiffs and defendants."); *see also id.* at *3 ("Nothing in the complaint suggests that

14

RefcoFX was a 'mere instrumentality' of the defendants or even addresses the extent to which defendants controlled the corporation."). That hardly supports Suntrust's position here. Thus, like the defendant in *Residential Funding Co. v. Terrace Mortgage Co.*, No. 13-3517 (D. Minn. May 30, 2014), Suntrust "did not cite a single case in which a court in a factually similar situation – *i.e.*, where so many loans were at issue – has demanded that each and every allegedly defective loan, along with each and every provision breached, be described in a complaint for the pleading to pass Rule 8(a) scrutiny." *Id.* at 16.

## III.   COUNT I IS PROPER AND SHOULD BE SUSTAINED

Suntrust's challenges to the timeliness of Count One, for breach of contract, ignore the allegations of the complaint, which demonstrate that RFC suffered harm at its principal place of business, rather than in its state of incorporation, as Suntrust contends. The statute of limitations is therefore six years, as under New York law, not three, as under Delaware law. But, even if Delaware's statute of limitations applied, RFC's claims would nevertheless be timely because Suntrust's breaches were continuous. RFC's allegations concerning conditions precedent are all that is required by the Federal Rules of Civil Procedure and the Seller Contract. Suntrust's contrary arguments are unsupported by the law or the underlying agreement, which imposes no conditions precedent on the claims RFC asserts.

### A.   RFC'S Breach Of Contract Claim Is Timely

1.   RFC's Claims Are Subject to Minnesota's Six-Year Statute of Limitations, Not Delaware's Three-Year Statute

Defendant's assertion that RFC's breach of contract claim is untimely rests on its argument that Delaware's three-year statute of limitations applies.[4] But the borrowing statute

---

[4]   Defendant's sole argument that RFC's claims would be untimely under a six-year statute of limitations is made in a footnote, Br. 18 n.25, and ignores the applicable bankruptcy provisions. As long as a claim was timely when a bankruptcy petition was filed, the longer of the applicable statute of limitations or two years from filing applies. 11 U.S.C. § 108(a) ("(a) If

does not require application of Delaware's statute of limitations, because RFC suffered its injury
in Minnesota, where the statute of limitations for breach of contract is six years, just as in New
York.  *See Carlone v. Int'l Ass'n of Heat & Frost Insulators & Allied Workers Local Union No.
34*, 09-CV-204 (JMR/FLN), 2010 WL 2195463 (D. Minn. May 28, 2010) (citing Minn.Stat. §
541.05).  The Borrowing Statute therefore does not impose a shorter period.

   New York's borrowing statute provides that another jurisdiction's statute of limitations
applies only when that is where the injury was sustained and when that jurisdiction's limitations
period is shorter than New York's.  N.Y. C.P.L.R. 202 (Consol. 2014) ("An action based upon a
cause of action *accruing without the state* cannot be commenced after the expiration of the time
limited by the laws of either the state or the place *without the state where the cause of action
accrued* ...") (emphases added); *Global Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 529 (1999)
("a cause of action accrues at the time and in the place of the injury").

   For economic harm, that injury is sustained where the plaintiff "resides and sustains the
economic impact of the loss."  *Id.*  The New York Court of Appeals has held that a corporation
resides not in its state of incorporation, but in its principal place of business.  *Sease v. Cen.
Greyhound Lines, Inc.*, 306 N.Y. 284, 286 (1954) ("Corporations often have their principal
places of business outside of the State of incorporation. The domicile of a corporation is the State
in which it is incorporated."); *see also* N.Y. Prac. Series, Comm. Litig. in N.Y. St. Cts., § 17:29
n.2 (3d ed. 2011) ("A corporation . . . resides in its principal place of business." (citing *Sease*)).
In *Antone v. General Motors Corp.*, the New York Court of Appeals, applying this principle,

---

applicable nonbankruptcy law . . . fixes a period within which the debtor may commence an
action, and such period has not expired before the date of the filing of the petition, the trustee
may commence such action only before the later of—(1) . . . or (2) two years after the order for
relief.").  Here the bankruptcy proceeding was voluntarily commenced on May 14, 2012.  *See id.*
§ 301 ("(a) A voluntary case under a chapter of this title is commenced by the filing with the
bankruptcy court of a petition under such chapter by an entity that may be a debtor under such
chapter.  (b) The commencement of a voluntary case under a chapter of this title constitutes an
order for relief under such chapter."); *id.* § 108 (extension for Debtor in Possession).  Because, as
Suntrust admits, the last Seller Contract was entered into less than six years before the filing of
the petition, RFC's complaint was timely.

held that "when the term 'residence' is employed in the CPLR, it is not equivalent to domicile."
64 N.Y.2d 20, 29 (1984).

Because RFC is a resident of Minnesota (its principal place of business), that is
presumptively where it sustained injury for the purposes of New York's borrowing statute, not
Delaware. This has been confirmed by countless New York state appellate, trial, and federal
cases. *See, e.g., Brinckerhoff v. JAC Holding Corp.*, 263 A.D.2d 352, 353 (1st Dep't 1999),
("the applicable Statute of Limitations is that of Georgia, since that is where Hoover had its
principal office."); *Proforma Partners, L.P. v. Skadden Arps Slate Meagher & Flom*, 280 A.D.2d
303, 303 (1st Dep't 2001) ("a partnership's legal residence is where it maintains its principal
place of business."); *Met. Life Inc. Co. v. Morgan Stanley*, 2013 WL 3724938 (N.Y. Sup. Ct.
June 8, 2013), at 8-9 (where corporation's principal place of business was in California, and
there were no allegations that the plaintiff suffered injury in its state of incorporation, the claim
"accrued for borrowing statute purposes in California."); *Heraeus Metal Processing v. PGP
Industries*, 2006 WL 4682143, at *10 (N.Y. Sup. Ct. Oct. 31, 2006), ("'principal place of
business determines residency under CPLR § 202,'").[5] After extensive consideration of the

---

[5]   *Accord Seghers v. Deloitte & Touche USA LLP*, 17 Misc. 3d 1118(A), at *5 (N.Y. Sup.
Ct. Aug. 13, 2007) (where plaintiff alleged its principal place of business was New York, it was
a resident of New York); *Pryor Cashman v. Tract Manager*, 2007 WL 2175666, at *10–11
(corporation feels injury where it resides which is its principal place of business); *TIG Ins. Co. v.
Weil, Gotshal & Manges LLP*, 2005 WL 5959978, at *10 (N.Y. Sup. Ct. Nov. 10, 2005)
(plaintiff's claims accrued in state of its principal place of business, not incorporation); *GML, Inc.
v. Cinque & Cinque, P.C.*, 2005 WL 5960011, at *4 (N.Y. Sup. Ct. Sept. 29, 2005) (claims
accrued where the plaintiffs resided, which was their principal places of business); *Pricasian
Dev. Corp. v. Total S.A.*, 397 F. App'x 673, 675–76 (2d Cir. 2010) (claim accrued at plaintiff's
residence, which was its principal place of business); *MIG, Inc. v. Paul, Weiss, Rifkind, Wharton
& Garrison, L.L.P.*, 701 F. Supp. 2d 518, 531 (S.D.N.Y. 2010) (plaintiff corporation resided in
state of principal place of business, not incorporation), *aff'd*, 410 F. App'x 408 (2d Cir. 2011);
*Bank Brussels Lambert v. Credit Lyonnais (Suisse)*, 2001 WL 492363, at *4 n.4 (S.D.N.Y. May
9, 2001) (the place of residence of a corporation is either the state of incorporation or principal
place of business); *Pereira v. Cogan*, 2001 WL 243537, at *18 (S.D.N.Y. Mar. 8, 2001) (a
corporation is a resident of New York when it has its principal place of business in New York),
*vacated on other grounds sub nom. Pereira v. Farace*, 413 F.3d 330 (2d Cir. 2005); *FDIC v.
Cohen*, No. 95 Civ. 683, 1996 WL 87248, at *3 (S.D.N.Y. Feb. 29, 1996) (corporation is a
resident of the state in which it has its principal place of business); *Shamrock Assocs. v. Sloane*,

borrowing statute and the relevant authority, the Central District of California held that the
statute did not apply when a corporation's principal place of business was in New York,
regardless of where the corporation was incorporated.  *In re Countrywide Financial Corp.
Mortg.-Backed Securities Litig.*, 834 F. Supp. 2d 949, 953-58 (C.D. Cal. 2012).

      Suntrust cites only one case it claims is to the contrary, *Verizon Directories, Corp. v.
Continuum Health Partners, Inc.*, 74 A.D.3d 416 (1st Dep't 2010).  But there, the Court held that
the mere fact that a plaintiff was authorized to do business in New York did not make it a
resident of New York for purposes of the borrowing state.  *Id.*  The court did not consider the
location of the corporation's principal place of business, which is not even specified in the one-
paragraph opinion.  But even if this case were somehow inconsistent with the general rule, it
could not overcome the extensive authority to contrary.

      At the very least, RFC's allegation that its principal place of business was Minnesota
raises a fact issue that cannot be resolved on a motion to dismiss.  *Oxbow Calcining USA Inc. v.
Am. Indus. Partners*, 948 N.Y.S.2d 24, 31 (1st Dep't 2012) ("Any ruling on whether the
borrowing statute applies would require a factual determination as to the principal residency of
[plaintiff] and its subsidiaries, which is inappropriate on motion to dismiss."); *Loreley Fin.
(Jersey) No., Ltd. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 985 N.Y.S.2d 499, 2014 WL
1810646, at *2 (1st Dep't May 8, 2014) ("Because there is an issue of fact as to where plaintiff
sustained loss, the motion court correctly denied defendants statute of limitations motion, with
leave to move for summary judgment later.").  Either way, Suntrust's motion should be denied.

      2.    <u>RFC's Claims Are Also Timely Under Delaware Law, And On the Basis
Of Continuing Violations</u>

      Even if Delaware's shorter statute of limitation applied, RFC's contract claims would still
be timely.  The Client Guide imposes an ongoing obligation on Suntrust to inform RFC of any

---

738 F. Supp. 109, 113 (S.D.N.Y. 1990) ("The principal place of business determines residency
under CPLR § 202.").

events of default of which it learns, even where that knowledge is acquired after the loan is sold.
Client Guide § A201(M) ("[Defendant] will comply with all provisions of this Client Guide and
the Program Documents, and *will promptly notify* GMAC-RFC of any occurrence, act, or
omission regarding [Defendant], the Loan, the Mortgaged Property or the Mortgagor *of which
[Defendant] has knowledge*, which . . . may materially affect [Defendant], the Loan, the
Mortgaged Property, or the Mortgagor." (emphases added)).  Moreover, the Client Guide states
that RFC's "remedies for breach of the representations, warranties and covenants shall survive
the sale and delivery of the Loan to [RFC] … and will continue in full force and effect *for the
remaining life of the Loans." Id.* § A209(C) (emphasis added).  As relevant here, the Complaint
alleges (¶ 20) that Suntrust was responsible for underwriting the loans at issue; collecting
information from borrowers; and verifying the accuracy of that information.  These allegations
and others make it more than plausible that Defendants had knowledge of the defects they failed
to tell RFC about after the loans were sold.  *See Ace Sec. Corp. v. HSBC*, No. 13 Civ. 1869, 2014
WL 1116758, at *12 (S.D.N.Y. Mar. 20, 2014) ("By alleging that DBSP conducted due diligence
on loan pools that suffered from obvious and widespread breaches, Plaintiff has adequately
alleged that DBSP discovered those breaches.").

    In light of the foregoing, all of RFC's contract claims are timely.  As the New York Court
of Appeals has held, determining that a shorter statute of limitations applies "does not end the
inquiry . . . because in determining whether" the action would be timely, "this Court must
'borrow' [the applicable] tolling statute to determine whether under [applicable] law [plaintiff]
would have had the benefit of additional time to bring the action."  *Portfolio Recovery Assocs.,
LLC v. King*, 14 N.Y.3d 410, 416 (N.Y. 2010).  Under Delaware law, "in cases of continuous
contract and continuing breach, the statute begins to run only when full damages can be
ascertained and recovered."  *In re Burger*, 125 B.R. 894, 902 (Bankr. D. Del. 1991) (citing
*Oliver B. Cannon & Son, Inc. v. Fidelity & Cas. Co. of N.Y.*, 484 F.Supp. 1375, 1390 (D. Del.
1980)); *Smith v. Mattia*, No. 4498-VCN, 2010 WL 412030, at *4 (Del. Ch. Feb. 1, 2010) (same)
(quoting *Guerrieri v. Cajun Cove Condo. Council*, 2007 WL 1520039, at *6 (Del. Super. Apr. 25,

2007)).  In addition, damages were not fully ascertained until the Bankruptcy Plan was entered.
Thus, RFC's claims are also timely under Delaware law.

3.    RFC Has Alleged All Conditions Precedent

RFC alleges that it has satisfied the applicable conditions precedent to suit, if any.  FAC ¶
35 ("RFC at all times performed all of its obligations to Suntrust, if any, under the Agreement,
and all conditions precedent to the relief sought in this action, if any, have been satisfied.").  That
is all the Rules require.  *See Karmilowicz v. Hartford Fin. Servs. Grp., Inc.*, 494 F. App'x 153,
155 n.1 (2d Cir. 2012) ("[I]n pleading conditions precedent, it suffices to allege generally that all
conditions precedent have occurred or been performed." (quoting Fed. R. Civ. P. 9(c)));

Moreover, Suntrust is simply wrong that there is any condition precedent to RFC's suit
under the Seller Contract.  RFC is suing for breach of contract and indemnification.  The
provisions in the Seller Contract relating to each make no mention at all of any conditions
precedent.  *See* Client Guide §§ A210(A) ¶ 5  ("Where GMAC-RFC determines that repurchase
of a Loan and/or the servicing is not appropriate, the Client shall pay GMAC-RFC all losses,
costs and expenses incurred by GMAC-RFC and/or the Loan's Servicer as a result of an Event of
Default.  This includes all reasonable attorneys' fees and other costs and expenses incurred in
connection with enforcement efforts undertaken."), A202(II) (no condition precedent for
indemnification), A212 (no conditions precedent for indemnification).  There are only two
provisions that contain conditions precedent.  *First*, there is the loan repurchase remedy.
Because it is a non-litigation method of resolving disputes, it must be initiated somehow, and the
Client Guide specifies it is to be by letter.  *See id.* § A210.  Suntrust did not initiate that
repurchase process, is not pursuing a repurchase here, and hence is not subject to those notice
requirements.  *Second*, to recover attorney's fees incurred in any proceeding in which a third
party accuses Suntrust of violating local, state, or federal law, RFC must at some point provide
the attorney's invoices to Suntrust.  *Id.* § A212.  Suntrust has not demonstrated that that narrow

20

provision—limited to notice of attorney's invoices in a narrow category of cases, with no

suggestion that the notice needs to be provided prior to suit—applies here.

## IV.    COUNT II IS PROPER AND SHOULD BE SUSTAINED

Suntrust's argument that RFC has not properly pled indemnification claim depends on a

rehash of its incorrect argument that RFC lacks standing (wrong for the reasons discussed in I

*supra*), a battle with the well pled allegations of the complaint and maters of public record, and a

failure to consider all of the relevant indemnification provisions.

### A.    RFC Has Pled Losses

Suntrust asserts that RFC's indemnification claim must be dismissed because RFC failed

to plead out-of-pocket losses.  This is mistaken for three reasons.  *First*, RFC has made extensive

allegations of out-of-pocket losses.  *See* FAC ¶¶ 55 ("As a direct result of Defendant Suntrust's

breaches, RFC has incurred obligations, liabilities, damages, and losses."), 56 ("RFC has

incurred billions of dollars in liabilities and losses stemming from defective loans, including

those sold to RFC by Suntrust."), 57 ("RFC has expended tens of millions of dollars litigating the

quality of the loans sold to it by Suntrust."), 61 ("RFC began to receive increasing numbers of

repurchase demands from investors and bond insurers, including for loans RFC had acquired

from Suntrust."), 73 ("RFC . . . repurchased millions of dollars worth of defective loans from its

RMBS securitizations . . . these included numerous loans sold to RFC by Suntrust."), 79 (The

Bankruptcy Court for the Southern District of New York approved a $10 billion plus settlement

of RMBS-related liabilities).  Suntrust even admits that RFC has alleged $5 million in damages –

which is all that is required to survive dismissal.  Br. 20 n.26.  Moreover, it is a matter of public

record that RFC made a cash payment of $1 billion to its creditors to settle claims against it

relating to just this subject matter as part of the bankruptcy and that RFC is obligated to pay up

to $8.7 billion if it recovers from, among others, Suntrust, which is in effect a judgment against it.
*See* Disclosure Statement n. 28, Def. 247, n. 53, 54.  These are out-of-pocket losses, and they are
enormous.

*Second*, Suntrust ignores the language of specific indemnification provisions here, which
specify that "liability" is also covered.  Where an indemnification provision specifies "liability,"
there is no legal requirement that an indemnification claim plead actual loss.[6]  Rather, New York
law, as repeatedly applied by courts in this district, permits indemnification from the time
liability is fixed, which, as Suntrust must admit, occurred upon confirmation of the Bankruptcy
Plan.  "A right to indemnification against liability . . . arises when the party faces *a fixed liability*,
even though it has not paid the claim and thus suffered no damage."  *Pfizer, Inc. v. Stryker Corp.*,
348 F. Supp. 2d 131, 150-51 (S.D.N.Y. 2004) (emphasis added); *see also Martinez v. Fiore,* 454
N.Y.S.2d 475, 475 (2d Dep't 1982) ("[A] party seeking indemnity must be held liable to the
plaintiff before he can recover over from a third party.").  Where, as here, a contract
contemplates indemnification for "any claims, losses, liabilities and expenses . . . under the
express terms of the agreement [indemnitee] is entitled to indemnification now, whether or not
he has already made good on his obligations."  *Goodridge v. Harvey Grp., Inc.*, 778 F. Supp. 115,
133 (S.D.N.Y. 1991).

---

[6]  The Indemnification provision in the Client Guide provides, in part, that Suntrust's
obligations extend to "all losses, damages, penalties, fines, forfeitures, court costs and reasonable
attorneys' fees, judgments, and any other costs, fees and expenses resulting from any Event of
Default.  This includes, without limitation, *liabilities* arising from (i) any act or failure to act, (ii)
any breach of warranty, obligation or representation contained in the Client Contract, (iii) any
claim, demand, defense or assertion against or involving GMAC-RFC based on or resulting from
such breach, (iv) any breach of any representation, warranty or obligation made by GMAC-RFC
in reliance upon any warranty obligation or representation made by [Suntrust] contained in the
Client Contract …"  Client Guide § A212 (emphasis added).

*Third*, Suntrust's argument that somehow a fixed obligation – like the judgment imposed

by the Bankruptcy Plan – is not an "out-of-pocket loss" for the purpose of indemnification is not

credible. Where there is a judgment, like the one here, courts do not allow defendants to evade

liability merely because the plaintiff has yet not paid. *Westchester Fire Ins. Co. v. Utica First*

*Ins. Co.*, 40 A.D.3d 978, 981 (2d Dep't 2007) (Where insurance agreement covered "all sums

which an Insured becomes legally obligated to pay as damages," court held "the insured may

turn to [the insurer] for relief as soon as his liability has become legally fixed and established,

although he has not suffered actual loss. Kirkham's liability became legally fixed with the

execution of the above settlement agreement. This agreement created a legal obligation on

Kirkham's part against which Utica was required to indemnify.") (citation and emphasis

omitted). This principle has been applied where the plaintiff is insolvent, and has not made a

payment on the judgment, to prevent the defendant from receiving a "windfall," which "would

be contrary to the purpose and spirit of New York law." *See Liman v. American S.S. Owners*

*Mut. Protection & Indem. Ass'n*, 299 F. Supp. 106, 109-110 (S.D.N.Y. 1969) ("[T]he test in New

York is whether the assured has actually in good faith sustained the loss for which

reimbursement is sought, and the insurer's obligation to indemnify may not be avoided because

of the assured's insolvency. … [U]nder [defendant's] construction of the policy, it would in

effect reap a windfall at the expense of the intended beneficiaries. Such a result would be

contrary to the purpose and spirit of New York law.") (citation omitted), aff'd 417 F.2d 627 (2d

Cir. 1969) (per curiam).

Against this extensive authority, Suntrust cites only *Bank of India v. Trendi Sportswear,*

*Inc.*, No. 89 Civ. 5996, 2002 WL 84631 (S.D.N.Y. Jan 18, 2002), but that does not support its

position because, in that case, there was no contention that the underlying indemnity contract

was as against liabilities. It therefore cannot contradict the extensive authority in this district that, where an indemnification provision includes liability, a plaintiff need not allege losses.

### B.      RFC'S Indemnification Claims Is Timely

Defendant also argues that RFC's indemnification claim fails because its breach of contract claim is untimely. This is wrong for two reasons. *First*, as shown in III *supra*, RFC's breach of contract claim was brought within the applicable limitations period. Even if Suntrust were correct that the timeliness of RFC's indemnification claim depended on the timeliness of its contract claim, then, that requirement has been satisfied.

*Second*, the timeliness of RFC's indemnification claim does not depend on the timeliness of its contract claim. New York courts have repeatedly held that "[i]ndemnity and contribution claims stand independent of the underlying cause of action and carry their own six-year statute of limitations." *Gen. Conference of Seventh-Day Adventists v. Aon Reins. Agency, Inc.*, 826 F. Supp. 107, 109 (S.D.N.Y. 1993) (rejecting defendant's argument that plaintiffs' claim was essentially an untimely action for breach of contract and refusing to tie the limitations period for the indemnity claim to the breach of contract statute of limitations); *In re Am. Exp. Lines, Inc.*, 568 F. Supp. 956, 965 (S.D.N.Y. 1983) ("[O]n actions 'for indemnification' the statute of limitations does not begin to run 'until the liability becomes fixed.'" (quoting *United N.Y. Sandy Hook Pilots' Ass'n v. United States*, 191 F. Supp. 893, 894 (S.D.N.Y. 1961))); *City of N.Y. v. Lead Indus. Ass'n, Inc.*, 644 N.Y.S.2d 919, 922 (1st Dep't 1996) ("[I]ndemnity claim is not barred even if the injured party's direct claim against the indemnitor-wrongdoer is time-barred."); *see also Residential Funding Co. v. Gateway Bank, F.S.B.*, No. 13-3518, slip op. at 33 (D. Minn. May 30, 2014) ("Contrary to Gateway's assertion, the statute of limitations for indemnification is not governed by the date of its alleged malfeasance as to the loans. This is

because the duty to indemnify . . . is itself a contractual requirement with duties different from those set forth with regard to the . . . warranties and representations."); *id.* at 34 (indemnity claim "could not accrue until a third-party received a remedy from RFC arising out of the Gateway loans, and could not have accrued when Gateway breached its contractual representations and warranties by delivering loans that violated the requirements of the Agreement, as RFC has yet to incur any damages for which it could seek indemnification.").

Here, RFC's total liability to the bankruptcy estate became fixed, and the six-year statute of limitations began to run, on December 17, 2013, the date the Bankruptcy Court's Plan became effective, because that is when the Trust became obligated to pay its creditors.[7]

### C.      No Tolling Is Necessary Because RFC's Indemnification Claim Is Timely

Finally, Suntrust argues that RFC's claims have not been tolled. This is of course incorrect, as its bankruptcy filing tolled the statute of limitations, as shown in I.A, *supra*. No tolling is necessary, in addition, because RFC;s claims are timely, as shown in IV.B, *supra*.

### <u>CONCLUSION</u>

For the foregoing reasons, the motion to dismiss the Amended Complaint should be denied in its entirety.

---

[7]   Defendant's cases do not support the result it attempts to impose here. In *Hobbs v. Scorse*, 399 N.Y.S.2d 783, 785 (4th Dep't 1977), the court merely held that it was inappropriate to dismiss a third-party complaint on the basis of an indemnity clause when liability had not yet been fixed or found. The "prime obligation" the court stated must be established was not the underlying cause of action, but rather obligation under the indemnity clause. Unlike the third party in *Hobbs* that was trying to "shield [itself] from the fixing of liability," RFC's liability has already been fixed and its "prime obligation" established by the Bankruptcy Plan. *Id.* at 785. *Hobbs* is thus irrelevant. Likewise, the court in *Hamill v. Mut. of Am. Inv. Corp.*, 913 N.Y.S.2d 62, 64 (1st Dep't 2010) simply held that "defendant failed to submit any evidence of a 'wrongful act or gross negligence' on the part of [the indemnitor], which is required to trigger the contractual indemnification provision." The court's one-sentence analysis of the applicability of the indemnity clause is inapposite here, where RFC has adequately pled the wrongful acts entitling it to indemnity. *See* Section III.A *supra*.

Dated:  June 10, 2014

QUINN EMANUEL URQUHART
  & SULLIVAN, LLP

BY: /s/ Peter E. Calamari
Peter E. Calamari
Isaac Nesser
Alex Rossmiller
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York  10010
Telephone:  (212) 849-7000
Facsimile:  (212) 849-7100
PeterCalamari@quinnemanuel.com
JonPickhardt@quinnemanuel.com
IsaacNesser@quinnemanuel.com
AlexRossmiller@quinnemanuel.com

*Attorneys For Plaintiff Residential Funding Company,
LLC*