# Exhibit B

```
>
<DOCUMENT>
<TYPE>424B5
<SEQUENCE>1
<FILENAME>a40564.txt
<DESCRIPTION>RFC RALI 2005-QA10
<TEXT>

<PAGE>
```

PROSPECTUS SUPPLEMENT DATED SEPTEMBER 21, 2005
(TO PROSPECTUS DATED AUGUST 25, 2005)

$609,941,000

RALI SERIES 2005-QA10 TRUST
ISSUER

RESIDENTIAL ACCREDIT LOANS, INC.
DEPOSITOR

RESIDENTIAL FUNDING CORPORATION
MASTER SERVICER

MORTGAGE ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2005-QA10

The trust will hold a pool of one- to four-family residential adjustable-rate and hybrid adjustable-rate first lien mortgage loans, divided into four loan groups.

The trust will issue these classes of certificates that are offered under this prospectus supplement:

   9 classes of senior certificates

   3 classes of subordinated certificates

Credit enhancement for all of these certificates will be provided by additional subordination.

--------------------------------------------------------------------------------
   YOU SHOULD CONSIDER CAREFULLY THE RISK FACTORS BEGINNING ON
   PAGE S-14 IN THIS PROSPECTUS SUPPLEMENT.
--------------------------------------------------------------------------------

NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE SECURITIES COMMISSION HAS APPROVED OR DISAPPROVED OF THE OFFERED CERTIFICATES OR DETERMINED THAT THIS PROSPECTUS SUPPLEMENT OR THE PROSPECTUS IS ACCURATE OR COMPLETE. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

THE ATTORNEY GENERAL OF THE STATE OF NEW YORK HAS NOT PASSED ON OR ENDORSED THE MERITS OF THIS OFFERING. ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.

Merrill Lynch, Pierce, Fenner & Smith Incorporated will offer twelve classes of the offered certificates to the public at varying prices to be determined at the time of sale. The proceeds to the depositor from the sale of these underwritten certificates will be approximately 100.81% of the certificate principal balance of these underwritten certificates plus accrued interest, before deducting expenses.

MERRILL LYNCH & CO.

UNDERWRITER

<PAGE>

Important notice about information presented in this
prospectus supplement and the prospectus

We provide information to you about the offered certificates in two separate documents that provide progressively more detail:

o   the accompanying prospectus, which provides general information, some of which may not apply to your series of certificates; and

o   this prospectus supplement, which describes the specific terms of your series of certificates.

If the description of your certificates in this prospectus supplement differs from the related description in the accompanying prospectus, you should rely on the information in this prospectus supplement.

Some capitalized terms used in this prospectus supplement have the meanings given below under "Description of the Certificates--Glossary of Terms" or in the prospectus under "Glossary."

Description of the Mortgage Pool

General

The mortgage pool will consist of 2,231 adjustable rate and hybrid adjustable-rate mortgage loans with an aggregate unpaid principal balance of $621,755,815 as of the cut-off date after deducting payments of principal due during the month of the cut-off date. The mortgage loans are secured by first liens on fee simple interests in one- to four-family residential properties.

The mortgage pool will consist of four groups of mortgage loans, referred to as the Group I Loans, Group II Loans, Group III Loans and Group IV Loans.

One of the mortgage loans, representing 0.1% of the mortgage pool, has a due date other than the first of each month. The mortgage loans will consist of mortgage loans with terms to maturity of not more than 30 years.

With respect to mortgage loans which have been modified, references in this prospectus supplement to the date of origination shall be deemed to be the date of the most recent modification. As of the cut-off date none of the mortgage loans have been modified. All percentages of the mortgage loans described in this prospectus supplement are approximate percentages determined as of the cut-off date after deducting payments of principal due during the month of the cut-off date, unless otherwise indicated.

All of the mortgage loans were purchased by the depositor through its affiliate, Residential Funding, from unaffiliated sellers as described in this prospectus supplement and in the prospectus, except in the case of 34.6% of the mortgage loans, which were purchased by the depositor through Residential Funding, from HomeComings Financial Network, Inc., or HomeComings, a wholly-owned subsidiary of the master servicer. Approximately 23.9% of the mortgage loans were purchased from First National Bank of Nevada, an unaffiliated seller. Except as described in the preceding sentence, no unaffiliated seller sold more than 9.6% of the mortgage loans to Residential Funding. Approximately 92.1% of the mortgage loans are being subserviced by HomeComings.

The depositor and Residential Funding will make certain limited representations and warranties regarding the mortgage loans as of the date of issuance of the certificates. The depositor and Residential Funding will be required to repurchase or substitute for any mortgage loan as to which a breach of its representations and warranties with respect to such mortgage loan occurs, if such breach materially and adversely affects the interests of the certificateholders in any such mortgage loan. However, neither the depositor nor Residential Funding will be required to repurchase or substitute for any mortgage loan in

S-23

<PAGE>

the event of a breach of its representations and warranties with respect to such mortgage loan if the substance of any such breach also constitutes fraud in the origination of such affected mortgage loan. In addition, Residential Funding will not assign to the depositor, and consequently the depositor will not assign to the trustee for the benefit of the certificateholders, any of the representations and warranties made by the mortgage collateral sellers or the right to require the related mortgage collateral seller to repurchase any such mortgage loan if a breach of any of its representations and warranties occurs, unless (x) the substance of the representation and warranty also constitutes fraud in the origination of the mortgage loan or (y) the mortgage collateral seller has made a representation and warranty that it had no actual knowledge of the presence of, nor reasonable grounds to suspect the presence of, any toxic materials or other environmental hazards that could affect the mortgaged property. Accordingly, the only representations and warranties regarding the mortgage loans that will be made for the benefit of the certificateholders will be the limited representations and warranties made by Residential Funding and the depositor and the representations and warranties made by the mortgage collateral sellers to the limited extent described in this paragraph. See "The Trusts--Representations with Respect to Mortgage Collateral" in the prospectus.

The original mortgages for some of the mortgage loans have been, or in the future may be, at the sole discretion of the master servicer, recorded in the name of Mortgage Electronic Registration Systems, Inc., or MERS, solely as nominee for the originator and its successors and assigns, and subsequent assignments of those mortgages have been, or in the future may be, at the sole discretion of the master servicer, registered electronically through the MERS(R) System. In some other cases, the original mortgage was recorded in the name of the originator of the mortgage loan, record ownership was later assigned to

MERS, solely as nominee for the owner of the mortgage loan, and subsequent assignments of the mortgage were, or in the future may be, at the sole discretion of the master servicer, registered electronically through the MERS(R) System. With respect to each of these mortgage loans, MERS serves as mortgagee of record on the mortgage solely as a nominee in an administrative capacity on behalf of the trustee, and does not have any interest in the mortgage loan. As of the cut-off date, approximately 83.9%, 93.1%, 96.3% and 73.4% of the Group I, Group II, Group III and Group IV Loans, respectively, were recorded in the name of MERS. For additional information regarding the recording of mortgages in the name of MERS see "Yield and Prepayment Considerations--General" in this prospectus supplement and "Description of the Certificates--Assignment of Mortgage Loans" in the prospectus.

Approximately 9.1%, 9.2%, 18.3% and 8.5% of the Group I, Group II, Group III and Group IV Loans, respectively, provide for payment of a prepayment charge. With respect to some of these mortgage loans, the prepayment charge provisions provide for payment of a prepayment charge for partial prepayments and full prepayments made within up to five years following the origination of that mortgage loan, in an amount not to exceed the maximum amount permitted by state law. Prepayment charges received on the mortgage loans may be waived and in any case will not be available for distribution on the offered certificates. See "Certain Legal Aspects of Mortgage Loans and Contracts--Default Interest and Limitations on Prepayments" in the prospectus.

As used in this prospectus supplement, a loan is considered to be "30 to 59 days" or "30 or more days" delinquent when a payment due on any due date remains unpaid as of the close of business on the last business day immediately prior to the next following monthly due date. The determination as to whether a loan falls into this category is made as of the close of business on the last business day of each month.

S-24

<PAGE>

Compliance with Local, State and Federal Laws

Residential Funding, as seller, will represent and warrant, as of the date of issuance of the certificates, the following:

- Each mortgage loan at the time it was made complied in all material respects with applicable local, state and federal laws, including, but not limited to, all applicable anti predatory lending laws.

- None of the mortgage loans were subject to the Home Ownership and Equity Protection Act of 1994. None of the mortgage loans are loans that, under applicable state or local law in effect at the time of origination of the loan, are referred to as (1) "high cost" or "covered" loans or (2) any other similar designation if the law imposes greater restrictions or additional legal liability for residential mortgage loans with high interest rates, points and/or fees. See "Certain Legal Aspects of the Mortgage Loans-The Mortgage Loans-Homeownership Act and Similar State Laws" in the prospectus.

- None of the proceeds for the mortgage loans were used to finance the purchase of single premium credit insurance policies.

- None of the Group I Loans, Group II Loans, Group III Loans or Group IV Loans contain prepayment penalties that extend beyond five years after the date of origination.

Residential Funding will be required to repurchase or substitute for any mortgage loan that violates any of these representations and warranties, if that violation materially and adversely affects the interests of the certificateholders in that mortgage loan. Residential Funding maintains policies and procedures that are designed to ensure that it does not purchase mortgage loans subject to the Homeownership Act. However, there can be no assurance that these policies and procedures will assure that each and every mortgage loan complies with all applicable origination laws in all material respects.

A recent Illinois appellate court decision held that federal law does not preempt a particular provision of an Illinois usury statute. This provision, if not preempted, applies to residential mortgage loans secured by properties in Illinois with interest rate ceilings in excess of 8.00% per annum and prohibits the lender from imposing charges in excess of 3.00% of the principal amount of the mortgage loan. Prior to this recent court ruling, other courts and regulators had ruled (or provided interpretive guidance) that the Illinois statute was preempted by federal law. In reliance upon this guidance, many lenders may have not complied with the specific requirements of that provision of the Illinois statute.

Not more than 0.6%, 2.6%, 3.2% and 3.5% of the Group I, Group II,