**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

In re:

RESIDENTIAL CAPITAL, LLC, *et al.*

Debtors.

FOR PUBLICATION

Case No. 12-12020 (MG)

Jointly Administered

**MEMORANDUM OPINION AND ORDER SUSTAINING THE RESCAP BORROWER
CLAIMS TRUST'S OBJECTION TO CLAIM NO. 5282 OF MICHELLE LAWSON**

*A P P E A R A N C E S:*

MORRISON & FOERSTER LLP
*Attorneys for the ResCap Borrowers Claims Trust*
250 West 55th Street
New York, NY 10019
By:   Norman S. Rodenbaum, Esq.
      Jordan A. Wishnew, Esq.

MICHELLE LAWSON
*Pro Se Claimant*
226 East Gorgas Lane
Philadelphia, PA 19119
By:   Michelle Lawson

**MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE**

  Michelle Lawson is current on her first lien mortgage loan (the "First Mortgage") and second lien mortgage loan (the "Second Mortgage"), both originated in December 2004. Debtor GMACM Mortgage, LLC ("GMACM") played *no role* in the origination of either the First Mortgage or Second Mortgage, but it bought the Second Mortgage in February 2007 and owned it for approximately one month before selling it to a securitization trust. After selling the Second Mortgage, GMACM retained the mortgage servicing rights until February 16, 2013, when servicing was transferred to Ocwen Loan Servicing, LLC ("Ocwen"). Lawson's claims arise from the Second Mortgage, which was originated by Trident Second Mortgage Company

("Trident"). Aside from her origination claims, Lawson also asserts that the Debtors provided insufficient responses to her requests for documentation of her Second Mortgage, and the Debtors are also purportedly liable for misrepresentations and fraud regarding the nature and existence of her Second Mortgage. Lawson seeks rescission of the Second Mortgage and damages amounting to the face value of the note plus interest payments.

As explained in detail below, Lawson cannot maintain a claim against the Debtors for Trident's alleged fraudulent lending practices and violations of the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA"). Lawson also claims that she believed she was only entering into one loan agreement, not two; but even if true, that does not state a claim against the Debtors because the Debtors did not originate either loan. Additionally, Lawson fails to plead a plausible claim for fraudulent misrepresentation against GMACM, and her claim under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.* ("RESPA") fails because she never submitted a qualified written request ("QWR") required to trigger a RESPA claim. Finally, Lawson's allegations of counterfeiting constitute an untimely and improper amendment to her proof of claim.

The Court **SUSTAINS** the ResCap Borrower Claims Trust's (the "Trust") objection to claim number 5282 (the "Claim"), and the Claim is **DISALLOWED** and **EXPUNGED**.

## I. BACKGROUND

### A. Procedural History

On May 14, 2012, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The General Bar Date to file proofs of claim was originally set as November 9, 2012, and was extended to November 16, 2012 at 5:00 p.m. (Prevailing Eastern Time). (ECF Doc. # 2093.) Lawson timely filed the Claim on November 8, 2012.

2

The Court entered an order on March 21, 2013 (the "Procedures Order," ECF Doc. # 3294), authorizing the Debtors to file omnibus objections on various grounds, including those provided in Bankruptcy Rule 3007(d) and certain additional grounds. The Procedures Order included specific protections for Borrowers[1] that the Debtors (and now the Trust) must follow before objecting to certain categories of Borrower claims. For example, before objecting to certain Borrower claims, the Trust must send the Borrower a letter (a "Request Letter") requesting additional documentation in support of the Borrower's claim. (*See* Procedures Order at 3–4.)

On December 11, 2013, the Court entered an order (ECF Doc. # 6065) confirming the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* (the "Plan," ECF Doc. # 6065-1). The Plan became effective on December 17, 2013 (the "Effective Date"). (ECF Doc. # 6137.) On the Effective Date, the Trust and the ResCap Liquidating Trust were established as successors in interest to the Debtors; the Trust is the successor in interest with respect to Borrower Claims. (*Id.*) The Trust was established to, among other things, "(i) direct the processing, liquidation and payment of the Allowed Borrower Claims in accordance with the Plan, and the distribution procedures established under the Borrower Claims Trust Agreement, and (ii) preserve, hold, and manage the assets of the Borrower Claims Trust for use in satisfying the Allowed Borrower Claims." (Confirmed Plan, Art. IV.F.) The Trust is empowered to object to borrower claims that it believes do not reflect liabilities of the Debtors.

---

[1] As used in the Procedures Order, the term "Borrower" is defined as "a person who is or was a mortgagor under a mortgage loan originated, serviced, and/or purchased or sold by one or more of the Debtors." (*See* ECF Doc. # 3123 ¶ 21.)

On April 22, 2014, the Trust filed the *ResCap Borrower Claims Trust's Sixty-Second Omnibus Objection to Claims (No Liability Borrower Claims)* (the "Objection," ECF Doc. # 6815). In support of the Objection, the Trust submitted the Declarations of Deanna Horst (the "Horst Decl.," Obj. Ex. 1) and Norman Rosenbaum (Obj. Ex. 2). Lawson filed a response to the Objection (the "Opposition," ECF Doc. # 7040), and the Trust submitted a reply (the "Reply," ECF Doc. # 7062), supported by a supplemental Declaration of Deanna Horst (the "Supp. Horst Decl.," ECF Doc. # 7062-1). The Court heard argument on the Objection on June 10, 2014 (the "Hearing") and took the matter under submission.

Before the Trust filed this Objection, the Debtors sent Lawson a Request Letter on June 21, 2013. The Request Letter asked Lawson to explain the legal and factual bases for her Claim, and to provide supporting documentation. (*See id.* ¶ 6.) Lawson provided a response (the "Diligence Response," *id.* Ex. A-4).

### B. Lawson's Proof of Claim

Lawson's proof of claim asserts an $89,667.98[2] claim against ResCap[3] with the stated basis of "Secondary Mortgage Note." Lawson also attached several documents in support of her claim, including: (1) a "Statement of Claims" appended to her proof of claim (the "Lawson Statement," Claim at 1−3); (2) an October 19, 2004 letter from Trident indicating preapproval of a mortgage subject to certain specified conditions (the "Preapproval Letter," Claim, Ex. A); (3) a copy of the promissory note evidencing her second loan (the "Note," Claim, Ex. B.); (4) an

---

[2]   The Trust incorrectly identifies Lawson's claim as a general unsecured claim in the amount of $140,967.98, rather than the $89,667.98 stated in her proof of claim.

[3]   Before the Trust filed the Objection, the Debtors previously objected to Lawson's Claim on the basis that it was filed against the wrong Debtor and improperly asserted a secured claim. (*See Debtors' Thirty-Sixth Omnibus Objection to Claims (Misclassified and Wrong Debtor Borrower Claims)*, ECF Doc. # 5138.) On December 26, 2013, the Court entered an order sustaining the Debtors' objection, reclassifying and redesignating the Claim as a general unsecured claim against GMACM. (*See* ECF Doc. # 6190.)

4

amortization schedule that Trident provided to her (the "Amortization Schedule," Claim, Ex. C); and (5) GMACM account statements (the "GMACM Statements," Claim, Ex. D).

Trident originated two loans for Lawson, the First Mortgage, in the amount of $273,600.00, and the Second Mortgage, in the amount of $51,300.00. Lawson's Claim relates to the Second Mortgage, which was originated by Trident on December 3, 2004. (Supp. Horst Decl. ¶ 19.) The Second Mortgage was evidenced by the Note and was secured by a second deed of trust to property in Philadelphia, Pennsylvania. (*Id.*) The Second Mortgage includes a balloon payment rider (the "Rider"), signed by Lawson, that requires Lawson to make a balloon payment (the "Balloon Payment"). (*Id.*) No Debtor was involved in originating either the First or Second Mortgage. (*Id.* ¶ 20.) GMACM purchased the Second Mortgage from Trident on February 21, 2007, and then transferred the Second Mortgage loan to a securitization trust on March 30, 2007. (*See* ECF Doc. # 6815 at 59.) No Debtor has since asserted any ownership interest in Lawson's note or mortgage. GMACM serviced the Loan from March 13, 2007, to February 16, 2013, when servicing was transferred to Ocwen. (*See id.*)

Lawson asserts that the Second Mortgage and Note should be rescinded due to "duress, coercion, unconscionability, failure of consideration and illegality." (Lawson Statement ¶ 13.) She claims that "the balloon payment and excessive interest rate" contained in the Note amount to an illegal "penalty" that is contrary to public policy. (*Id.*) Lawson contends that, due to the bankruptcy cases, she "has a right to renegotiate the terms of the agreement, including but not limited to the interest rate, the 'balloon payment,' and the principal and monthly payments." (*Id.* ¶ 15.) The Claim asserts bases for relief predicated on allegations attributable to (1) Trident as originator of the Second Mortgage (the "Origination Allegations") and (2) the Debtor as servicer of the loan (the "Servicing Allegations").

5

Among the Origination Allegations, Lawson contends that (1) Trident engaged in predatory lending practices in the origination of the Second Mortgage and (2) Lawson held the mistaken belief that she would receive a single loan. *First*, she claims that "the Debtor and/or mortgage originator" engaged in predatory lending practices, including "steering" her to a loan with "abusive terms and excessive fees" when she could have qualified for a lower cost loan, and improperly evaluating her credit worthiness and the value of the collateral. (*See* Lawson Statement ¶ 8.) Lawson maintains that she was coerced into signing the Second Mortgage and Note and was told that if she did not sign, she would forfeit "the down payment, good faith, and other purchase monies." (*Id.* ¶ 10.) Lawson also claims that she was led to believe that she had to agree to the Second Mortgage or forgo financing altogether—from any lender—and was thereby fraudulently induced to contract for the Second Mortgage and Note. (*See id.* ¶ 12.) According to Lawson, these are grounds upon which the Court should rescind the Second Mortgage and Note.

*Second*, Lawson claims that though she expected a conventional, single mortgage loan at a 30-year fixed interest rate, she mistakenly entered into a financing arrangement that included (1) a conventional mortgage (the First Mortgage) and (2) a sub-prime mortgage with a balloon payment (the Second Mortgage). (*Id.* ¶ 4.) She alleges that Trident—and GMACM as Trident's "successor[] and assign[ee]"—"was aware of the presence of the second mortgage and entered into the agreement on the basis of two mortgages" and "knew or should have known" that the she would assume that the financing structure included a single loan rather than two loans and would rely upon the "good faith estimate" in the Preapproval Letter. (*Id.* ¶¶ 3–4.) Lawson also asserts that Trident, and, again, GMACM as Trident's "successor[] and assign[ee]," failed to provide a "description and explanation of the nature and purpose" of the financing package as

6

well as information concerning the balloon payments (*id.* ¶ 6), and failed to supply her with the required paperwork that would have informed her of the possibility that the Second Mortgage, Note, and mortgage servicing rights could be transferred. (*See id.* ¶ 7.) According to Lawson, the Second Mortgage and Note "should be considered voidable and rescinded" as a result of these deficiencies. (*Id.* ¶ 4.) In her Opposition, Lawson also alleges violations of TILA; specifically, Lawson asserts that disclosure requirements relating to the origination of the Second Mortgage were "either met in an irregular manner or omitted." (Opp. ¶ 13.)

*Third*, Lawson claims that she is entitled to relief on the basis of GMACM's alleged fraudulent conduct as servicer. Lawson asserts that the information included in the Amortization Schedule does not reflect exactly what is contained in the GMACM Statements and that "any [such] deviation constitutes misrepresentation and/or fraud." (*Id.* ¶ 11.) Additionally, Lawson contends that, though she made requests from GMACM for executed copies of the Second Mortgage and Note, GMACM only responded with unsigned copies of these documents. (*Id.* ¶ 9.) In her Opposition, Lawson claims that she finally received executed loan documents from Ocwen "on or about November 14, 2013." (Opp. ¶ 9.)

*Finally*, at the Hearing, Lawson asserted *for the first time* an entirely new theory of liability—that her signatures on various loan documents relating to the Second Mortgage were forged. Lawson claimed that, before the bankruptcy proceeding, she had never seen many of the documents included as exhibits by the Debtors.[4] (*See* June 10, 2014 Tr. at 50:15−19.) During

---

[4]     The Trust contested Lawson's assertion that her requests for executed copies of the Mortgage and Note from the Debtors went unanswered and that she received only unsigned copies. At the Hearing, counsel for the Trust pointed to evidence that GMACM had, in fact, accommodated Lawson's request, and had done so expeditiously. (*See* June 10, 2014 Tr. at 55:2−7; Lawson Servicing Notes, Supp. Horst Decl. Ex. S.) Lawson conceded that she had received executed copies of the Second Mortgage and Note from GMACM on February 12, 2010, but continued to claim that she never received copies of the Truth-In-Lending statements for the Second Mortgage, the Balloon Payment Rider and security agreement attached to the deed of trust, and the borrower certification attached to the Truth-In-Lending Statements. (*See id.* at 55:8−10.) Lawson asserts that, though she

7

the Hearing, Lawson alleged that copies of the Deed of Trust, the Note, and Balloon Payment Rider, as well as the Affidavit of Borrower's Certification and Truth In Lending Act ("TILA") Disclosure Statement were forged (collectively, the "Contested Documents").[5] (*See* June 11, 2014 Tr. at 51:20−52:8; 56:14−59:7.)

## II.    DISCUSSION

### A.    Claims Objections

Claims objections have a shifting burden of proof. Correctly filed proofs of claim "constitute prima facie evidence of the validity and amount of the claim . . . . To overcome this prima facie evidence, an objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000). By producing "evidence equal in force to the prima facie case," an objector can negate a claim's presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a preponderance of the evidence that under applicable law the claim should be allowed." *Creamer v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, No. 12 Civ. 6074 (RJS), 2013 U.S. Dist. LEXIS 143957, at *12–13 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted). If the objector does not "introduce[] evidence as to the invalidity of the claim or the excessiveness of its amount, the

---

received documents in 2010 that she believed contained "forged" signatures, she contacted her loan servicer, GMACM, but did not call this defect to GMACM's attention "in any official capacity." (*Id.* 59:10–22.) The Court finds Lawson's contentions incredible. Nothing in the Lawson Servicing Notes indicates that Lawson ever contacted GMACM to report that her signatures were "forged," and Lawson waited until the Hearing to raise this claim for the first time, despite allegedly having the "forged" documents before filing her Claim—indeed, two years before these chapter 11 cases were even filed.

[5]     Copies of the Contested Documents can be found in Exhibits O, P, Q, and R to the Supplemental Horst Declaration, respectively. Lawson asserts that she obtained copies of the Second Mortgage Note in 2010 but received the rest of the documents for the first time as part of the Objection proceedings. (*See* June 10, 2014 Tr. at 59:4–7.)

8

claimant need offer no further proof of the merits of the claim." 4 COLLIER ON BANKRUPTCY ¶ 502.02 (16th rev. ed. 2013).

Bankruptcy Code section 502(b)(1) provides that claims may be disallowed if "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law." *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006).

Federal pleading standards apply when assessing the validity of a proof of claim. *See, e.g., In re DJK Residential* LLC, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) ("In determining whether a party has met their burden in connection with a proof of claim, bankruptcy courts have looked to the pleading requirements set forth in the Federal Rules of Civil Procedure." (citations omitted)). For her claim to survive, Lawson must allege "enough facts to state a claim for relief that is plausible on its face." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted). Plausibility "is not akin to a probability requirement," but rather requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation and internal quotation marks omitted). The court must accept all factual allegations as true, discounting legal conclusions clothed in factual garb. *See, e.g., id.* at 677–78; *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (stating that a court must "assum[e] all well-pleaded, nonconclusory factual allegations in the complaint to be true") (citing *Iqbal*, 556 U.S. at 678). The court must then determine if these well-pleaded factual allegations state a "plausible claim for relief." *Iqbal*, 556 U.S. at 679 (citation omitted).

9

Courts do not make plausibility determinations in a vacuum; it is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). A claim is plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). A claim that pleads only facts that are "merely consistent with a defendant's liability" does not meet the plausibility requirement. *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). "The pleadings must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted).

To support her fraud claim, Lawson "must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "In order to meet the particularity requirement of Rule 9(b), a plaintiff [must] allege the time, place, and content of the misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Ind. State Dist. Council of Laborers & HOD Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 719 F.3d. 498, 503 (6th Cir. 2013) (alteration in original) (internal quotation marks omitted).

Although "[claims] drafted by *pro se* [claimants] are to be construed liberally, [] they must nonetheless be supported by specific and detailed factual allegations sufficient to provide the court and the defendant with 'a fair understanding of what the [claimant] is complaining about and . . . whether there is a legal basis for recovery.'" *Kimber v. GMAC Mortgage, LLC (In*

10

*re Residential Capital, LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (quoting *Iwachiw v. New York City Bd. of Elections*, 126 Fed. App'x 27, 29 (2d Cir. 2005) (ellipsis in original)).

      **B.**    **Lawson Cannot Maintain a Claim Against the Debtors to Rescind Her Loan and Recover Damages for Alleged Fraudulent Lending Practices in the Origination of the Second Mortgage**

In her proof of claim, Lawson alleges that Trident engaged in a variety of predatory and fraudulent lending practices, including inserting abusive terms and excessive fees into the lending agreement.[6] (*See* Lawson Statement ¶¶ 6−12.) Lawson also maintains that Trident induced her to sign the Second Mortgage by fraudulently representing to her that, by not signing, she would forfeit her down payment and other monies expended in the home purchase, and that she would also be forced to forgo financing from any other lender. (*Id.* ¶¶ 8, 10, 12.) Alternatively, Lawson proposes that she is entitled to relief on the basis of alleged TILA violations.

      *1.*    *Lawson Cannot Maintain a Claim Against the Debtor for the Alleged Fraudulent Lending Practices of Trident on the Basis of Assignee Liability*

Trident, not GMACM, originated Lawson's Second Mortgage. Therefore, given the absence of any involvement by the Debtor in the alleged fraud by Trident, the Court turns to Lawson's theory of recovery on the basis of assignee liability.[7] (*See* Opp. ¶ 21−22.) The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") "forbids unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or

---

[6] Lawson also states Trident engaged in practices that promote discrimination along racial, ethnic, gender and age lines. (*See* Lawson Statement ¶ 8.) These unsupported allegations are conclusory at best and fail to meet the pleading standards.

[7] In her Opposition, Lawson cites the Massachusetts Supreme Judicial Court's decision in *Drakopoulos v. U.S. Bank Nat. Ass'n* for the proposition that liability for misconduct, including predatory and fraudulent practices, by the originator attaches to assignees. (Opp. ¶ 21 (citing *Drakopoulos v. U.S. Bank Nat. Ass'n*, 991 N.E.2d 1086 (Mass. 2014)).) That case is not relevant here since it dealt with a Massachusetts statute, and Lawson's home is in Pennsylvania.

commerce." *See Nicolaides v. Bank of America Corp.* No. 10 Civ. 1762, 2012 WL 2864468, at *5 (E.D. Pa. 2012) (citations omitted); *see generally* 73 Pa. Cons. Stat. §§ 201–03. In addition to specific enumerated prohibitions, the statute contains a catch-all provision that prohibits persons from "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." PA. CONS. STAT. § 201-02(4)(xxi); *see also Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 221 (3d Cir. 2008).

Pennsylvania courts do not impose UTPCPL liability on assignees of alleged violators. *See Murphy v. F.D.I.C.*, 408 Fed. App'x. 609, 611 (3d Cir. 2010); *see also Roche v. Sparkle City Realty*, No. 08–2518, 2009 WL 1674417, at *4 (E.D. Pa. June 12, 2009) ("[N]umerous courts have found that loan assignees cannot be held liable under the UTPCPL without allegations that they specifically committed wrongdoing."); *Williams v. Nat'l Sch. of Health Tech., Inc.*, 836 F. Supp. 273, 283 (E.D. Pa. 1993) (noting that the UTPCPL "does not impose liability on parties who have not themselves committed wrongdoing").

Lawson's theory of recovery on the basis of assignee liability therefore fails. In any event, to the extent she claims that Trident's alleged fraudulent lending practices support rescinding the Second Mortgage, the Debtors do not own the Second Mortgage, so she cannot seek rescission through a claim against the Debtors.

### 2.    *Lawson's TILA Claim is Time Barred*

Lawson also asserts that she has a viable claim against the Debtors, as the assignee of Trident, for TILA violations (the "TILA Claim"). Lawson claims that TILA requires a particular level of disclosure and prohibits certain practices. (*See* Opp. ¶ 13.) She alleges, without providing any support, that these unidentified requirements were "either met in an irregular manner or omitted." (*Id.*)

12

TILA imposes general liability only on creditors and does not impose liability on assignees. *See* 15 U.S.C. §§ 1640(a); 1641(e). TILA defines a "creditor" as a person who both:

> (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

15 U.S.C. § 1602(g). This definition "is restrictive and precise, referring only to a person who satisfies both requirements" of the provision. *See Cetto v. LaSalle Bank Nat'l Ass'n*, 518 F.3d 263, 270 (4th Cir. 2008). Under the second prong of the "creditor" definition, the Debtors are not Lawson's creditor because they did not originate the Second Mortgage.

Even so, TILA contains an exception allowing for the imposition of assignee liability for certain loans "if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement." *Vincent v. The Money Store*, 736 F.3d 88, 107 (2d Cir. 2013) (quoting 15 U.S.C. § 1641(a)). The Court need not determine whether that exception applies here,[8] though, because Lawson's TILA claims are time-barred. TILA imposes a one-year statute of limitations on monetary damages claims with certain exceptions that do not apply here. *See* 15 U.S.C. § 1640(e); *see also Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 285 (S.D.N.Y. 2011) ("Private actions for damages based on TILA violations are subject to a one-

---

[8] In its initial Report accompanying the amendments to TILA, the Senate Banking, Housing, and Urban Affairs Committee explained that violations are apparent on the face of a disclosure statement when disclosures are inaccurate or incomplete based on the statement or other documents involved, and where incorrect terminology is utilized. *See* S. Rep. No. 96–73, at 18 (1979), *reprinted in* 1980 U.S.C.C.A.N. 280, 296. Based on the Committee's Report, "it appears reasonable to conclude that when Congress amended TILA, its primary concern was limiting assignee liability for an initial creditor's violations of TILA's disclosure requirements." *Vincent*, 736 F.3d at 108. Here, the Affidavit of Borrower Certification, acknowledging receipt of TILA good faith estimates and TILA Disclosure Statements attached to the Trust's Reply do not appear to be inaccurate or incomplete in any way; to the contrary, they appear to be fully executed. (*See* Supp. Horst Decl., Ex. R.) As explained below, however, the Court need not determine whether assignee liability is precluded here, because any claim Lawson asserts is time barred.

13

year statute of limitations."). The statute also imposes a three-year statute of limitations on claims for rescission. *See* 15 U.S.C. § 1635(f). Here, the alleged violations occurred in 2004, so Lawson is well past the deadline to seek TILA relief, and the Court need not assess the merits of her claim. *See McAnaney v. Astoria Fin. Corp.*, No. 04–CV–1101, 2007 WL 2702348, at *12 (E.D.N.Y. Sept. 12, 2007) ("[T]he plain language of Section 1640(e) and the cases interpreting that statute indicate that, where a damages claim under TILA is time-barred, the Court is prohibited from even reaching the question.").

### C. Lawson Cannot Maintain a Claim for Rescission Based on Her "Mistake"

Lawson also claims that she believed the financing arrangement included a single loan with a rate of 5.75%, rather than two loans, with a higher interest rate and a balloon payment for the Second Mortgage loan.[9] (*See* Lawson Statement ¶ 4.) Lawson asserts that GMACM knew or should have known that she would assume that she had obtained single-loan financing. She claims to have reached this conclusion based on a preapproval letter (the "Preapproval Letter," Claim, Ex. A)[10] that did not disclose a second loan with a balloon payment. (*See* Lawson Statement ¶ 4−5.) But Lawson provides no evidence that GMACM played any role in structuring the First or Second Mortgages. And aside from that deficiency, Lawson has not plausibly pled a claim for rescission based on mistake against any party. In Pennsylvania, "[i]n order for reformation to be available due to a unilateral mistake, [the claimant] must show that [the nonmoving party] had 'such knowledge of the mistake as to justify an inference of fraud or

---

[9]   It is notable that Lawson's mistake claim asks the Court to infer that she was unaware that the documents she signed included the second lien with its less favorable terms. This fact conflicts with those giving rise to her allegations that Trident coerced her through fraudulent and predatory means to agree to the Second Mortgage.

[10]  In the Preapproval Letter, Trident certifies preliminary approval of a loan to Lawson in the amount of $324,900.00 with a property sale price of $342,000.00 based on a 30-year fixed rate mortgage at a current interest rate of 5.75%. The letter indicates that final commitment is subject to certain enumerated conditions. (*See* Preapproval Letter.)

bad faith.'" *Regions Mortg., Inc. v. Muthler*, 889 A.2d 39, 42 (Pa. 2005) (quoting *Dudash v. Dudash*, 460 A.2d 323, 327 (Pa. Super. Ct. 1983)). Lawson relies on the Preapproval Letter as proof of her mistake about the nature of her loans. The Letter, which was sent by Trident, gave Lawson preliminary approval for her loan, but expressly provided that "[f]inal commitment is subject to a written application, an acceptable agreement of sale and an acceptable appraisal of the property to be acquired." (*See* Preapproval Letter.) In light of this limitation, Lawson's claim of reliance is doubtful. But assuming *arguendo* that she did, in fact, rely upon the letter from Trident—one that explicitly warns against reliance—the letter does not support her allegation that Trident had knowledge of her claimed mistake, let alone knowledge sufficient to justify an inference of fraud or bad faith. Lawson's claim that she is entitled to rescission based on mistake is implausible and impermissible under Pennsylvania law.

    **D.**    **Lawson's Servicing Allegations Fail to Satisfy the Common Law Elements of a Fraudulent Misrepresentation Claim, and She Did Not Satisfy Prerequisites for Bringing a RESPA Claim**

Lawson claims that she is entitled to relief because of GMACM's servicing errors. First, Lawson asserts that any discrepancies between the figures contained in the Amortization Schedule and those contained in the GMACM Statements constitute misrepresentations or fraud. (*See* Lawson Statement ¶ 11.) Second, Lawson claims that the Debtor violated RESPA by failing to produce certain documents after she requested them.

    *1.*    *Lawson Does Not Plead the Elements of a Common Law Claim for Fraudulent Misrepresentation*

The elements of a common law claim for fraudulent misrepresentation in Pennsylvania include the following: (1) a misrepresentation; (2) the fraudulent utterance thereof; (3) an intention by the maker that the recipient will be induced to act; (4) justifiable reliance by the recipient on the misrepresentation; and (5) damage to the recipient as a proximate result of the

15

reliance. *See Coleman v. Sears, Roebuck & Co.*, 319 F. Supp. 2d 544, 550 (W.D. Pa. 2003) (citations omitted).

Lawson bases her fraud allegation on discrepancies between the Amortization Schedule that Trident initially provided her and the GMACM Statements as to the allocation of her monthly mortgage payments between principal and interest. Indeed, the description of the allocation contained in Lawson's monthly GMACM Statements differs from that set forth in the Amortization Schedule Trident provided to Lawson when it originated her Second Mortgage loan. Still, the amount of Lawson's monthly payments over the life of the loan remained constant. To the extent these minor discrepancies could constitute misrepresentations at all, which is not clear to the Court, Lawson fails to plausibly plead the remaining elements of a fraud claim. Namely, Lawson does not plausibly plead reliance on the discrepancies, nor does she plausibly plead harm resulting from the discrepancies.

        2.      *Lawson Fails to Show that Her Requests for Documents Can Be Properly Considered QWRs Covered by RESPA*

RESPA section 2605 provides that a borrower may submit a QWR to the servicer of its loan for "information relating to the servicing" of its loan. 12 U.S.C. § 2605(e)(1)(A). The statute defines a QWR as:

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

*Id.* § 2605(e)(1)(B).

After receiving a QWR, a servicer has thirty days to correct any errors identified by the borrower or provide the borrower with a written response including the reasons why the servicer believes that its determination regarding the borrower's account is correct, and the name and

16

telephone number of any employee of the servicer who can assist the borrower. *Id.* § 2605(e)(2)(A)–(B). Failing to respond to a QWR subjects a servicer to "actual damages to the borrower as a result of the failure" and "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." *Id.* § 2605(f)(1).

At the Hearing, Lawson conceded that all alleged document requests from the Debtor were made by phone.[11] (*See* June 11, 2014 Tr. at 54:19−21.) RESPA defines QWRs to include only written requests. 12 U.S.C. § 2605(e)(1). Given that she never submitted an actual QWR, Lawson cannot maintain her RESPA claim.

### E. Lawson's Assertion of Counterfeiting Constitutes an Untimely and Improper Amendment to Her Proof of Claim

In her Opposition, Lawson asserts, *for the first time*, that certain mortgage documents are counterfeit. This alleged misconduct relates to the origination of Lawson's loans *in 2004*— several years before GMACM acquired the Second Mortgage loan. Even if this alleged misconduct took place, Lawson cannot plausibly plead that the Debtors are responsible.[12] Lawson's forgery assertions therefore fail to state a basis for liability against the Debtors.

Moreover, Lawson's late inclusion of the counterfeiting allegations is an improper amendment to her original Claim. In the Second Circuit,

> amendment to a claim is freely allowed where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity, or to plead a new theory of recovery on the facts set forth in the original claim. However, the court must subject post bar date

---

[11] Lawson also conceded that the Debtor satisfied her requests for copies of the Second Mortgage and Note in a timely fashion. (June 11, 2014 Tr. at 55:2−10.)

[12] Lawson concedes that the statute of limitations bars any claims she could have brought against Trident. (June 10, 2014 Tr. 55:12–13.)

> amendments to careful scrutiny to assure that there was no attempt to file a
> new claim under the guise of amendment.

*Integrated Res., Inc. v. Ameritrust Co., N.A. (In re Integrated Res., Inc.)*, 157 B.R. 66, 70 (S.D.N.Y. 1993) (citations omitted).

"The decision to allow the amendment of a claim is committed to the discretion of the bankruptcy judge." *In re Asia Global Crossing, Ltd.*, 324 B.R. 503, 507 (Bankr. S.D.N.Y. 2005) (citations omitted). In this Circuit, courts apply a two-step inquiry in making this determination. *See Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron)*, 419 F.3d 115, 133 (2d Cir. 2005). First, a court must "examine whether there was [a] timely assertion of a similar claim or demand evidencing an intention to hold the estate liable." *Id.* (internal quotation marks omitted) (alteration in original). This threshold question is met by a showing that the amendment "1) corrects a defect of form in the original claim; 2) describes the original claim with greater particularity; or 3) pleads a new theory of recovery on the facts set forth in the original claim." *Id.* (quoting *In re McLean Indus., Inc.*, 121 B.R. 704, 708 (Bankr. S.D.N.Y. 1990)). If this "relation back" inquiry is satisfied, courts then "examine each fact within the case and determine whether it would be equitable to allow the amendment." *Integrated Res.*, 157 B.R. at 70. The equitable factors that the courts consider in determining whether to allow an amendment include:

> (1) undue prejudice to opposing party; (2) bad faith or dilatory behavior on the part of the claimant; (3) whether other creditors would receive a windfall were the amendment not allowed; (4) whether other claimants might be harmed or prejudiced; and (5) the justification for the inability to file the amended claim at the time the original claim was filed.

*Id.* (citation omitted). "The critical consideration is whether the opposing party will be unduly prejudiced by the amendment." *Id.* (internal quotation marks omitted).

The Court finds that Lawson's contention that the Contested Documents are counterfeit does not "relate back" to the original claim. Instead, Lawson's counterfeiting claim pleads a new

18

theory of recovery based on a new set of facts. The Court therefore rejects her attempt to pursue relief on the counterfeiting claims now.

### III.  CONCLUSION

Lawson's claims based on allegations of fraudulent lending practices and violations of TILA by Trident do not entitle her to relief from GMACM. Additionally, she fails to plausibly plead a claim for fraudulent misrepresentation against the Debtors. And her claim that the Debtors violated RESPA fails because she did not meet the statute's preconditions. Lastly, Lawson's allegations of counterfeiting constitute an untimely amendment and would not support a plausible claim against the Debtors in any event.

Therefore, the Objection is **SUSTAINED**, and claim number 5282 is hereby **DISALLOWED** and **EXPUNGED**.

**IT IS SO ORDERED.**

Dated:  July 31, 2014
         New York, New York

_____*Martin Glenn*_____
MARTIN GLENN
United States Bankruptcy Judge