**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

NOT FOR PUBLICATION

In re:

RESIDENTIAL CAPITAL, LLC, *et al*.

Debtors.

Case No. 12-12020 (MG)

Jointly Administered

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO LIFT THE AUTOMATIC STAY AND PERMIT A LATE-FILED CLAIM OF JORGE CERRON

Jorge Cerron ("Cerron") has not made any mortgage payments since May 2009. He has nevertheless managed to avoid losing his Florida property until now, although Ocwen Loan Servicing, LLC ("Ocwen"), successor to Debtor GMAC Mortgage, LLC ("GMACM") as loan servicer, recently obtained a foreclosure judgment against Cerron that will result in the sale of his property on October 20, 2014. Cerron did not file a timely proof of claim against any of the Debtors, but he continues to try to keep his unsupported claims against GMACM alive. Cerron moved for relief from the automatic stay and for permission to file a late proof of claim to pursue damages claims against GMACM. Cerron's claims relate to GMACM's efforts to foreclose on the mortgage on Cerron's property, and he also alleges fraud on Florida courts and this Court regarding ownership of his property.

Before the Debtors filed their bankruptcy cases, GMACM commenced a foreclosure action in Florida state court to foreclose on the mortgage; Cerron asserted affirmative defenses and later amended his answer to assert counterclaims seeking damages against GMACM for violation of Florida's Deceptive and Unfair Trade Practices Act, fraud and misrepresentation, and unconscionability. The counterclaims were stayed when GMACM filed its bankruptcy petition.

When GMACM initiated the foreclosure action in 2009, GMACM was the holder of the
Cerron note—endorsed in blank—and the assignee of Cerron's mortgage.  GMACM later sold
the note and mortgage but continued subservicing the mortgage for a third-party investor.
GMACM continued to prosecute the foreclosure action until the servicing rights were transferred
to Ocwen as part of the sale of the Debtors' servicing business during the bankruptcy case.
Thereafter, Ocwen prosecuted the foreclosure action and recently obtained a judgment of
foreclosure.

For the reasons explained below, Cerron's request to lift the stay is **DENIED**.  Cerron did
not file a proof of claim in these chapter 11 cases, so even if he prevailed in a damages action, he
could not collect on any award.  Since GMACM does not own the note, the mortgage, the loan
servicing rights, or the property, Cerron cannot obtain equitable relief from the Debtors.

Cerron's request to file a late claim is also **DENIED**.  He asserts that he was never served
with the bar date notice, but the ResCap Liquidating Trust (the "Trust") submitted affidavits
showing service of bar date notices to Cerron's address at PO Box 18902, Sarasota, Florida,
34726, the same address he uses in his filings with the Court.  Cerron's bald denial of receipt of
the bar date notice does not overcome the presumption that the properly mailed notice was
received.  Nor has Cerron established excusable neglect for failing to file a timely proof of
claim—having actively engaged in litigation with GMACM in the Florida courts beginning in
2009, Cerron was aware of GMACM's May 2012 bankruptcy filing, which stayed litigation of
his Florida damages claims.  Absent excusable neglect, leave to file a late claim is not permitted.

Cerron also requests discovery from GMACM, sanctions against GMACM, and a quiet
title ruling.  These requests are also **DENIED**.  Cerron is not entitled to discovery because he is
not a party in interest to these chapter 11 proceedings.  He has not identified any valid basis for

imposing sanctions on any of the Debtors.  The Court does not have jurisdiction to "quiet title" to

the property in which the Debtors have no interest and over which a Florida state court recently

issued a foreclosure judgment in favor of Ocwen.

As Cerron is not entitled to any of the relief he seeks, the motion is **DENIED.**

## I.    BACKGROUND

### A.    Filings with the Court

Pending before the Court is a motion for relief from the automatic stay (the "Motion,"

ECF Doc. # 6860), filed by Jorge Cerron.[1]  Cerron also filed other documents related to the

Motion, including a duplicate of the Motion with the pages in different order (ECF Doc. # 6863),

as well as supplements to the Motion and affidavits (ECF Doc. ## 7034, 7054, 7068, 7071,

7126).  Cerron requests relief from the automatic stay and seeks permission to file a late claim

against the Debtors.  He also seeks to take discovery and asks the Court to impose sanctions on

the Debtors.  The Trust filed an opposition to the Motion (the "Opp.," ECF Doc. # 7098),

supported by the Declaration of Laruen Graham Delehey (the "Delehey Decl.," ECF Doc.

# 7098-1) and affidavits of service demonstrating service of the Bar Date Notice and

Administrative Bar Date Notice for borrower proofs of claim and administrative claims (ECF

Doc. ## 7098-2, 7098-3.)  The Trust also filed a Supplement updating the Court on recent

developments in Cerron's foreclosure action in Florida state court (the "Supplement," ECF Doc.

# 7163).

---

[1]    Cerron titled the Motion as "Bankruptcy Borrower's Objection to the Debtors Proof of Claim, Borrower's
Objection/Motion to Relief from the Automatic Stay Filed in this Case, Borrower's Request of the Inspection of
GMACM's Documents Filed in this Bankruptcy Case for the Borrower's Property and, Borrower's Motion to
Sanction GMAC Mortgage LLC for Fraud on the Bankruptcy Court.  (GMACM Is One of the Debtors U[n]der
Residential Capital LLC.)"

The Court held a hearing on the Motion on June 26, 2014 (the "Hearing").  After the

Hearing, Cerron submitted two supplemental filings.  (ECF Doc. # 7201.)

**B.**      **Procedural History**

The Debtors filed voluntary chapter 11 bankruptcy petitions on May 14, 2012.  Kurtzman

Carson Consultants LLC ("KCC") was appointed as the notice and claims agent, authorized to

(1) receive, maintain, and record and otherwise administer the proofs of claim filed in these

chapter 11 cases and (2) maintain official claims registers for each of the Debtors.  (ECF Doc.

# 798.)  The General Bar Date was initially established as November 9, 2012 (ECF Doc. # 1309

¶¶ 2, 3), but the Court extended that date to November 16, 2012 (ECF Doc. # 2093).  On or

before September 7, 2012, KCC sent a copy of the Bar Date Order to Cerron at PO Box 18902,

Sarasota, FL 34276-1902.  (*See* Delehey Decl. Ex. 3 (Excerpts from Affidavit of Service for

Notice of Bar Date).)  Cerron has never filed a proof of claim in these cases.

On December 11, 2013, the Court confirmed the Debtors' *Second Amended Joint*

*Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of*

*Unsecured Creditors* (the "Plan," ECF Doc. # 6065-1).  The Plan became effective on December

17, 2013 (the "Effective Date").  (ECF Doc. # 6137.)  The bar date for administrative claims (the

"Administrative Bar Date") was thirty days following the Effective Date of the Plan—January

16, 2014.  (*See* ECF Doc. # 6138.)  On or before December 24, 2013, KCC sent an

Administrative Bar Date Notice to Cerron at PO Box 18902, Sarasota, FL 34276-1902.  (*See*

Delehey Decl. Ex. 2 (Excerpts from Affidavit of Service for Notice of Administrative Claims

Bar Date).)  Cerron did not file an administrative claim.

The Plan establishes that

the treatment of all Claims and Equity Interests herein shall be in exchange for
and in complete satisfaction and **release of all Claims of any nature**

**whatsoever**, including any interest accrued on such Claims from and after the Petition Date, **against the Debtors**, the Liquidating Trust, or any of their respective assets or properties **arising prior to the Effective Date**. Except as otherwise expressly specified in the Plan, **after the Effective Date, any holder of such Claim** or Equity Interest **shall be precluded from asserting against the Debtors**, the Liquidating Trust, or any of their respective assets or properties, **any other or further Claim based on any document, instrument, act, omission, transaction, or other activity of any kind or nature that occurred before the entry of the Confirmation Order.**

(Plan § IX.K (emphasis added).) To define the term "Claim," the Plan adopts the definition contained in Bankruptcy Code section 101(5). (*Id.* § I.A.53.) Section 101(5), in turn, defines a "claim" as the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5).

The Plan "**permanently enjoin[s] and preclude[s]**" all parties

**who have held, hold or may hold Claims, . . . [or] Causes of Action . . . that constitute Released Claims . . . from and after the effective date of the Plan, from: (a) commencing or continuing in any manner or action or other proceeding of any kind against any Released Party whether directly, derivatively or otherwise, on account of or in connection with or with respect to any Released Claims; . . . [and] (e) commencing or continuing in any manner or action or other proceeding of any kind against any Released Party on account of or in connection with or respect to any Released Claims . . .**

(Plan § IX.I.) The Debtors are Released Parties under the Plan. (*See id.* Art. I.A.243.) Released Claims include all Claims that were discharged, terminated, satisfied, or released under the Plan. (*Id.* § I.A.242.)

### C.    Cerron's Loan and Foreclosure Proceedings

On March 1, 2006, Cerron signed a promissory note (the "Note") for $560,000 (the "Loan") originated by GreenPoint Mortgage Funding, Inc. ("GreenPoint"). (Delehey Decl. ¶ 4.) The Note was secured by a mortgage (the "Mortgage") on Cerron's property in Sarasota, Florida. (*Id.*) GreenPoint endorsed the Note in blank and assigned the Mortgage to GMACM; the

Mortgage assignment was dated September 9, 2009, but was executed on November 10, 2009. (*See* ECF Doc. # 7054 at 15, 59–63.)  GMACM later transferred ownership of the Note to a third-party investor (Delehey Decl. ¶ 4), but subserviced the Loan until November 1, 2013, when GMACM transferred the servicing rights to Ocwen.  (Opp. ¶ 16.)

As already stated, Cerron has not made any loan payments since May 2009.  On September 16, 2009, GMACM filed a foreclosure action in Florida state court (the "Foreclosure Action").  (Delehey Decl. ¶ 5.)  Cerron's answer to GMACM's complaint asserted three affirmative defenses—contending that GMACM (1) did not satisfy all conditions precedent to foreclosure; (2) failed to provide a HUD counseling notice; and (3) violated the Real Estate Settlement Procedures Act.  (*Id.* ¶ 6.)  Cerron later amended his answer to include six additional affirmative defenses and three counterclaims.  (*Id.* ¶ 7.)  The counterclaims alleged that GMACM (1) violated the Florida Deceptive and Unfair Trade Practices Act; (2) perpetrated fraud and made misrepresentations by preventing Cerron from participating in loss mitigation options and by producing a fraudulent assignment of Cerron's Mortgage; and (3) acted in an unconscionable and unfair manner while servicing Cerron's loan and initiating foreclosure.  (*See id.* Ex. 1-B.)

During the Foreclosure Action, GMACM filed a copy of the Note, endorsed in blank. (*See* ECF Doc. # 7054 at 58, 90.)  On December 21, 2009, GMACM filed a motion for summary judgment, which the state court granted on July 5, 2011 (the "First Judgment").  (Delehey Decl. ¶¶ 8, 9.)  The court issued an order instructing the clerk of the court to file a Certificate of Title in GMACM's favor.  (*See id.* Ex. C at ¶¶ 4–6.)  On July 11, 2011, Cerron appealed the First Judgment.  (Delehey Decl. ¶ 10.)  While the appeal was pending, the foreclosure sale proceeded, and the state court clerk executed and filed a Certificate of Sale.  (*Id.* ¶ 11; Motion ¶ 3.)  The

clerk then recorded a Certificate of Title in GMACM's favor on August 31, 2011.  (Delehey

Decl. Ex. 1-D.)

In July 2012, the Florida appellate court reversed the First Judgment and remanded the

case for further proceedings.  (Delehey Decl. ¶ 12.)  Cerron had alleged in the trial court that

GMACM did not satisfy all conditions precedent to foreclosure because it failed to serve him

with a Notice of Default; GMACM responded that Cerron provided no support for his denial of

receipt of the Notice of Default.  The trial court had placed the burden on Cerron to show that he

did not receive the Notice of Default.  The appellate court disagreed, holding that GMACM had

the burden of proving that it served the Notice.  (*See id.* Ex. 1-E.)  The appellate court's reversal

was based on the allocation of the burden of proof; neither the trial court nor the appellate court

affirmatively found that GMACM failed to serve a Notice of Default.

On October 22, 2012, GMACM filed a Notice of Bankruptcy in the trial court, along with

this Court's Supplemental Servicing Order.  (*See id.* Ex. 1-F.)  The trial court stayed Cerron's

counterclaims to the extent that they sought monetary relief from GMACM.  (Delehey Decl.

¶ 13.)  But in accordance with this Court's Supplemental Servicing Order, Cerron could still

defend the Foreclosure Action, and he could also seek equitable relief from GMACM.  (*See id.*

Ex. 1-F at ¶¶ 3–6.)

After the Debtors sold their mortgage servicing platform to Ocwen in November 2013,

GMACM filed a motion to substitute Ocwen as the plaintiff in the Foreclosure Action.  (Delehey

Decl. ¶ 14.)  The trial court granted the substitution motion on December 17, 2013.  (*Id.* ¶ 15.)

On May 14, 2014, Cerron filed a motion in the trial court to cancel the Certificate of Title in

GMACM's favor.  (*Id.* ¶ 16.)  On June 19, 2014, the court vacated the title issued in favor of

GMACM.  (*See* Supplement Ex. 1.)  Five days later, the Florida court issued a judgment of

foreclosure in favor of Ocwen (the "Second Judgment"). (*See* Supplement ¶ 2; *id.* Ex. 2.)

According to the Trust, the Second Judgment resulted from a consensual agreement between

Cerron and Ocwen, but Cerron contests having signed or finalized any agreement with Ocwen.

(*Compare* Supplement ¶ 2 *with* ECF Doc. # 7295.)  The Second Judgment schedules the

foreclosure sale for October 20, 2014.  (*See* Supplement Ex. 2 ¶ 10.)

The parties have submitted hundreds of pages of documents regarding this Motion.

Despite the voluminous filings, some facts remain unclear, but they need not be resolved to rule

on the pending Motion.  Cerron did *not* file a timely prove of claim in this Court, and he has not

demonstrated excusable neglect.  Therefore, he may not file a proof of claim now.  Though many

of Cerron's filings involve information extraneous to the Court's determination of the Motion,

the Court includes below a summary of his filings in an attempt to fully explain each of Cerron's

arguments.

### D.    Cerron's Motion

Cerron alleges that GMACM misrepresented facts to both this Court and the Florida state

court. (Motion at 1.)  He asserts that even though GMACM obtained a Certificate of Title to his

property from the Florida state court, it did not "have a mortgage and/or a note encumbering my

property" on the Petition Date and therefore "could not [have] claimed in its filing for

bankruptcy" that it did.  (*Id.*)  Cerron also alleges that GMACM "had collected from the default

insurances insuring my property's mortgage and note," and Cerron questioned whether GMACM

"reported all the monies received from the default insurances . . . when it filed its taxes and/or it

was reported to this court?"  (*Id.* at 1–2.)

Cerron apparently believes that GMACM purported to sell his Mortgage and Note to

Ocwen, not just the servicing rights.  (*See id.* at 5.)  He alleges that GMACM could not include

8

his Mortgage and Note in the loans it transferred to Ocwen because the Mortgage and Note "did not exist[]" because they were "dissolved on 8/10/2011 when GMACM sold [Cerron's] property for $162,000.00 at the foreclosure sale . . . ." (*See id*. at 6.)  He further claims that GMACM committed fraud in Florida state court when it did not cancel the Certificate of Title in its favor. (*Id*.)  Cerron also alleges that GMACM committed fraud in this Court when GMACM claimed that his Mortgage and Note "were included in GMACM's filing of bankruptcy . . . ."  (*Id*.) Evidently, Cerron believes that his Mortgage and Note ceased to exist once GMACM sold his property at the foreclosure sale, even though the Florida appellate court eventually reversed the First Judgment, effectively invalidating that sale.  Moreover, Cerron believes that GMACM was required to cancel the Certificate of Title issued in its favor after the Florida appellate court reversed the First Judgment.

Additionally, Cerron alleges that GMACM was paid more than one million dollars under default insurance policies for Cerron's property, but it "never informed [] the default insurance companies that the foreclosed loan [was] reversed and remanded . . . ." (*Id*. at 7.)  According to Cerron, when the insurance companies paid GMACM, they satisfied Cerron's debt. (*Id*.)  Cerron provides no factual support for any of these allegations.

Cerron seeks relief from the automatic stay so he can pursue remedies against GMACM, and he also seeks leave to file a late proof of claim.  (*Id*.)  Additionally, he requests (1) an evidentiary hearing to inspect the documents GMACM filed in this Court regarding his Mortgage and Note; (2) copies of all documents reflecting insurance payments to GMACM, as well as GMACM's tax documents; and (3) that the Court sanction GMACM and allow Cerron to submit a late proof of claim.  (*Id*.)

### E.  The Supplement to Cerron's Motion

In June 2014, Cerron filed a supplement to his Motion to explain his theory that GMACM was never properly assigned his Mortgage.  (ECF Doc. # 7034 at 2.)  GMACM received the assignment from Mortgage Electronic Registration Systems, Inc. ("MERS") on November 10, 2009, acting as nominee for GreenPoint.  (*Id.* at 2, 14.)  Cerron argues that MERS could not have acted as nominee for GreenPoint in 2009 because GreenPoint ceased operations in August 2007.  (*Id.* at 2.)  He also asserts that even though the Mortgage documents identify MERS as nominee of the mortgage and as the mortgagee of record, it does mean that MERS could have acted as nominee for GreenPoint in 2009.  (*See id.* (citing *In re Agard*, 444 B.R. 231(Bankr. E.D.N.Y. 2011) (rejecting the argument that MERS could have assigned mortgage merely because it was identified in the mortgage as the mortgagee of record)).)  Given the failure to properly obtain an assignment of the Mortgage, Cerron argues, GMACM could not establish an interest in Cerron's property.  (*Id.* at 3.)  He alleges that the documents GMACM submitted in the Foreclosure Action were "invalid, fabricated, backdated," and had non-verified signatures. (*Id.*)

Cerron also argues that GMACM is not the holder of his Note, even though GMACM does not now purport to be holder of the Note.  (*Id.* at 4.)  According to Cerron, GMACM must produce a written assignment of the Note or demonstrate physical possession of the Note endorsed to GMACM.  (*Id.*)  He claims that GMACM has done neither.  (*Id.*)  Cerron appears to believe that an endorsement in blank is insufficient, and the Note must be specifically endorsed to GMACM.  (*Id.*)  Cerron asks the Court to declare that (1) GMACM cannot benefit from the automatic stay as to his property; (2) the assignment of his Mortgage from MERS was invalid; (3) GMACM committed fraud by relying on the assignment from MERS; (4) GMACM must

dismiss its foreclosure action in Florida; and (5) Cerron is entitled to a quiet title ruling. (*Id.* at 6.) The request that GMACM dismiss the Foreclosure Action is now moot given that Ocwen has been substituted as plaintiff and has obtained a judgment of foreclosure.

Attached to his supplement, Cerrron included a *Notice of Filing* from the Foreclosure Action in which GMACM's attorney certified that true and correct copies of the original Mortgage and Note were served on all parties on the Foreclosure Action on March 22, 2010. (*Id.* at 58.) Cerron also submitted a copy of the Note endorsed in blank, but that copy appears to have Cerron's handwriting underneath the endorsement. (*Id.* at 63.)

### F.    The Trust's Opposition

The Trust challenges Cerron's allegation that GMACM fraudulently included his Mortgage and Note in its bankruptcy filings. (*See* Opp. ¶ 18 (citing Motion at 6).) Neither the Debtors' schedules of assets and liabilities nor their statement of financial affairs (the "Statements") lists Cerron's Note and Mortgage, and the Debtors have not claimed any ownership interest in the Note and Mortgage. When the bankruptcy case was filed, the Statements reflected GMACM's interest in the servicing rights to Cerron's Loan, and identified Cerron as the holder of a contingent, unliquidated, and disputed unsecured claim. (*See* ECF Doc. # 550, Schedule F-3 at 125; ECF Doc. # 600, Attachment 4a at 367; ECF Doc. # 685, Schedule F-3 at 125.)

The Trust also expressly refutes Cerron's unsworn allegation that GMACM received insurance proceeds relating to Cerron's Loan. (*See* Opp. ¶ 20 (citing Delehey Decl. ¶ 17).) Delehey states that the Debtors' books and records do not even reflect a mortgage insurance policy covering the Loan. (Delehey Decl. ¶ 17.)

The Trust argues that GMACM did not act wrongfully by declining to cancel the Certificate of Title in its favor.  (*See* Opp. ¶ 21.)  The Florida appellate court did *not* order that relief when it reversed the First Judgment.  On June 19, 2014, after Cerron filed a motion seeking that relief, the state trial court ordered GMACM to cancel the Certificate of Title and it did so. (*Id.;* ECF Doc. # 7163 ¶ 1.)  The requested relief is moot; GMACM acted consistently with the state court orders.  (Opp. at 21.)

The Trust also argues that Cerron should not be granted relief from the automatic stay and should not be permitted to file a late proof of claim.  First, the Trust asserts that relief from the stay is not warranted because under the Supplemental Servicing Order entered in this case, Cerron was always permitted to defend the Foreclosure Action even after the Debtors' bankruptcy filings.

Second, the Trust argues that Cerron's damages claims could only be asserted through timely filed proofs of claim.  Damages claims against a bankruptcy debtor must be asserted in a proof of claim.  *See Conn v. Dewey & LeBoeuf LLP (In re Dewey & LeBoeuf LLP)*, 487 B.R. 169, 178 (Bankr. S.D.N.Y. 2013) (concluding that prepetition claims for damages must be asserted by proof of claim); *Evergreen v. Lehman Bros., Inc.*, 2011 WL 722582, *7–8 (Bankr. S.D.N.Y. 2011) (dismissing adversary claim for breach of contract because the claim should have been asserted "in accordance with the claims allowance process, and not be means of an adversary proceeding"); *Earl H. Galitz P.A. v. Edghill (In re Edghill)*, 113 B.R. 783, 784 (Bankr. S.D. Fla. 1990) (holding that a creditor is precluded from recovering damages in an adversary proceeding because the cause of action arose from prepetition conduct).

Third, the Trust points out that Cerron is now barred from seeking monetary damages by the confirmed Plan and Confirmation Order.  The Plan and Confirmation Order preclude parties

from asserting claims arising from prepetition conduct against the Debtors after the Effective

Date.  (*See* Plan IX.K.)  The Effective Date passed in December 2013.

Fourth, to the extent Cerron attempts to assert a claim for postpetition conduct, the Trust

asserts that he is barred by the Administrative Bar Date Order, which the Debtors served on

Cerron on or before December 24, 2013.  (*See* Delehey Decl. Ex. 2.)  In his Motion, Cerron

claims that he first learned of GMACM's false statements to this Court on December 17, 2013.

(*See* Motion at 6.)  The Administrative Bar Date passed on January 16, 2014, so Cerron had

several weeks to file a claim relating to postpetition conduct.  (Opp. ¶ 26.)  Cerron did not file an

administrative claim and did not seek any relief from this Court until May 2014, when he filed

the Motion.

Fifth, the Trust argues that Cerron's request to file a late proof of claim fails to satisfy the

*Pioneer* test (explained below) for filing of late claims. (*Id.* ¶¶ 32–34.)  Despite being served

with the Bar Date Notice on or before September 7, 2012 (*see* Hosrt Decl. Ex. 3), Cerron did not

take any action in this Court until May 2014.  The Trust argues that Cerron provides no

justification for his failure to file a timely proof of claim, given that he had been involved in

litigation with GMACM since 2009.  (*See* Op. ¶¶ 35–37.)  Additionally, the length of Cerron's

delay and the danger of prejudice to the Debtors weigh against allowing him to file a late claim.

(*Id.* ¶¶ 38–39.)

### G.    The Hearing

At the Hearing, Cerron argued that GMACM did not take clear title to his property after

the First Judgment and subsequent foreclosure sale.  (June 26, 2014 Tr. at 64:14–16.)  According

to Cerron, the title, Mortgage, and Note were extinguished.  (*Id.*)  He also reiterated his belief

that GMACM purported to transfer his Mortgage and Note to Ocwen during these bankruptcy

proceedings.  (*See id.* at 65:1–6.)  Cerron also stated that he had reached "an agreement with

Ocwen" in the Foreclosure Action, but only because he "was really indirectly forced to come to

an agreement with Ocwen."  (*Id.* at 65:23–66:6.)  Finally, Cerron disputed being properly served

with the Bar Date Notice.  (*Id.* at 66:25–67:1.)

> ### H.       Cerron's Post-Hearing Submissions

After the Hearing, Cerron submitted a letter further explaining his position that he was

forced to reach an agreement with Ocwen in the Foreclosure Action.  (*See* ECF Doc. # 7295.)

Cerron asserts that neither he nor Ocwen ever signed the final version of the settlement

agreement.  (*See id.* at 1.)  Cerron stated that, although he has an agreement in principle with

Ocwen, he "never agreed . . . to [the] withdrawal [of] my [M]otion from this [C]ourt," and he

only wanted to settle with Ocwen, but not with GMACM.  (*Id.*)  Additionally, Cerron asserted

that he was deprived of due process because the judge in the Foreclosure Action refused to

postpone the hearing on his motion to cancel GMACM's Certificate of Title until after this Court

ruled on his Motion here.  (*See id.*)  Cerron also reiterated his denial that he was served with the

Bar Date Notice.  (*See id.* at 2.)

Soon after that letter, Cerron submitted yet another post-Hearing filing, this time

expanding on his request to file a late proof of claim.  (ECF Doc. # 7201.)  In that submission,

Cerron argues that he never received the Bar Date Notice, that the Debtors will not suffer any

prejudice by allowing him to file a late claim, and that his delay was beyond his control because

GMACM had distracted him with its fraudulent Foreclosure Action.  (*See id.* ¶¶ 4–10.)

## II.   DISCUSSION

### A.   Relief from the Automatic Stay Is Inappropriate Here

Section 362(a)(1) of the Bankruptcy Code provides that the filing of a bankruptcy petition automatically stays

> the commencement or continuation, including the issuance of employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1).

The automatic stay affords "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat'l Bank v. New Jersey Dep't of Evntl. Prot.*, 474 U.S. 494, 503 (1986). It maintains the status quo and protects the debtor's ability to formulate a plan for the sale or other disposition of property of the estate. 3 COLLIER ON BANKRUPTCY ¶ 362.03 (16th ed. rev. 2013).

Bankruptcy Code section 362(d)(1) provides that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . (1) for cause, including the lack of adequate protection of an interest in property of such party in interest . . . ." 11 U.S.C. § 362(d)(1). The Bankruptcy Code does not, however, define the phrase "for cause." In determining whether "cause" exists to lift the stay for prepetition litigation, courts consider the following factors (the "*Sonnax* Factors"):

(1)   whether relief would result in a partial or complete resolution of the issues,
(2)   the lack of any connection with or interference with the bankruptcy case,
(3)   whether the other proceeding involves the debtor as a fiduciary,
(4)   whether a specialized tribunal with the necessary expertise has been established to hear the cause of action,
(5)   whether the debtor's insurer has assumed full responsibility for defending the action,
(6)   whether the action primarily involves third parties,

15

(7)    whether litigation in another forum would prejudice the interests of other creditors,

(8)    whether the judgment claim arising from the other action is subject to equitable subordination,

(9)    whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor,

(10)   the interests of judicial economy and the expeditious and economical resolution of litigation,

(11)   whether the parties are ready for trial in the other proceeding and

(12)   the impact of the stay on the parties and the balance of harms.

*Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.),* 907 F.2d 1280, 1286 (2d Cir. 1990); *see also In re New York Medical Grp., PC,* 265 B.R. 408, 413 (Bankr. S.D.N.Y. 2001).

Not all of the Sonnax Factors are relevant in every case, and "cause" is a broad and flexible concept that must be determined on a case-by-case basis. *Spencer v. Bogdanovich ( In re Bogdanovich),* 292 F.3d 104, 110 (2d Cir. 2002) (citing *Mazzeo v. Lenhart (In re Mazzeo* ), 167 F.3d 139, 143 (2d Cir. 1999)). In requesting relief from the automatic stay, the moving party bears the initial burden to demonstrate that "cause" exists to lift the stay. *See id.*, 907 F.2d at 1285; *Capital Comm. Fed. Credit Union v. Boodrow* (*In re Boodrow*), 126 F.3d 43, 48 (2d Cir. 1997) ("We have emphasized that a bankruptcy court should deny relief from the stay if the movant fails to make an initial showing of cause." (internal quotation omitted)). If the movant is an unsecured creditor, the policies of the automatic stay weigh against lifting the stay. "[T]he general rule is that claims that are not viewed as secured in the context of § 362(d)(1) should not be granted relief from the stay unless extraordinary circumstances are established to justify such relief." *In re Leibowitz*, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992); *see also Lawrence v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, No. 10 Civ. 36 (RJH), 2010 WL 4966018, at *4 (S.D.N.Y. Nov. 17, 2010).

Cerron did not discuss the *Sonnax* factors in any of his filings, even though he bears the burden to demonstrate cause for lifting the stay. GMACM is no longer a party to the Foreclosure Action, and the Florida court recently issued the Second Judgment, so Cerron would need to commence a new action in Florida if the Court lifted the stay. This weighs against Cerron's request, as do most of the other relevant *Sonnax* factors. Additionally, Cerron did not file a proof of claim and he will not be permitted to file a late claim, so he could not collect on any judgment obtained by virtue of lifting the stay. And GMACM does not assert an interest in his property, is not prosecuting an action against him, and is not the servicer of his Loan, so allowing Cerron to seek any equitable remedies (e.g., rescission or forced loan modification) would be futile.

### B.    The Plan Also Precludes Cerron's Requested Relief

Cerron's claims against GMACM have been deemed released by the Plan, and he is enjoined from pursuing any claims against GMACM in any venue.

The Plan releases "all Claims of any nature whatsoever . . . against the Debtors . . . arising prior to the Effective Date. . . . [A]fter the Effective Date, any holder of such Claim or Equity Interest shall be precluded from asserting against the Debtors . . . any other or further Claim based on any document, instrument, act, omission, transaction, or other activity of any kind or nature that occurred before entry of the Confirmation Order."  (Plan § IX.K.) Additionally, the Plan enjoins holders of Released Claims from taking any post-Confirmation steps to prosecute those Claims.  (*See id.* § IX.I.)

To the extent Cerron attempts to state a claim for GMACM's prepetition conduct involving his Foreclosure Action, that claim is released, and he is enjoined from pursuing the claim in any venue.  To the extent Cerron attempts to state a claim for GMACM's postpetition conduct (e.g., Cerron's claim that GMACM fraudulently included his Mortgage and Note in its

17

filings here), Cerron could have filed an administrative claim, but he failed to do so despite being served with the Administrative Bar Date Notice.  (*See* Delehey Decl. Ex. 2.)

### C.      Cerron May Not File a Late Proof of Claim

When creditors fail to file claims before the Bar Date despite having notice, "Bankruptcy Rule 9006(b)(1) gives the court the discretion to enlarge the time to file claims 'where the failure to act was the result of excusable neglect.'"  *In re Lehman Bros. Holdings Inc*., 433 B.R. 113, 119 (Bankr. S.D.N.Y. 2010) (quoting FED. R. BANKR. P. 9006(b)(1)).  "The Supreme Court has interpreted 'excusable neglect' to be a flexible standard—one that can include 'inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.'" *Id*. (quoting *Pioneer Inv. Serv. Co. v. Brunswick Assoc. L.P.*, 507 U.S. 380, 395 (1993)). "However, 'the determination is at bottom an equitable one' that must take 'account of all relevant circumstances surrounding the party's omission.'"  *Id*. (quoting *Pioneer*, 507 U.S. at 395).  The *Pioneer* Court established four factors to assist bankruptcy courts in evaluating excusable neglect:  (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *Pioneer*, 507 U.S. at 395.

"The Second Circuit strictly observes bar dates and has adopted what has been characterized as a 'hard line' in applying the *Pioneer* test," meaning that this Court should focus its analysis "primarily on the reason for the delay, and specifically whether the delay was in the reasonable control of the movant."  *Lehman Bros*., 433 B.R. at 119–20.  The Second Circuit has noted that "the equities will rarely if ever favor a party who fail[s] to follow the clear dictates of a court rule," and that "where the rule is entirely clear, we continue to expect that a party

claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." *In re BH S&B Holdings LLC,* 435 B.R. 153, 163 (Bankr. S.D.N.Y. 2010). Instead, "[O]nly in unusual instances would . . . ignorance of the rules, or mistakes construing the rules . . . constitute excusable neglect." *Id.* at 168.

The movant bears the burden of establishing excusable neglect. *See id.* Cerron argues that he has good cause for filing a late claim because (1) he never received the Bar Date and Administrative Bar Date Notices, and (2) he only discovered evidence of GMACM's fraudulent representations to this Court in December 2013.

### 1.    Receipt of the Bar Date and Administrative Bar Date Notices

Cerron denies having received the Bar Date and Administrative Bar Date Notices (*see* ECF Doc. # 7201), both of which were sent by First Class Mail. (*See* Delehey Decl. Exs. 2–3.) "While the Second Circuit has recognized that the postal system is not one hundred percent reliable, the Supreme Court has 'repeatedly recognized that mail service is an inexpensive and efficient mechanism that is reasonably calculated to provide actual notice.'" *In re R.H. Macy & Co., Inc.*, 161 B.R. 355, 359 (Bankr. S.D.N.Y. 1993) (quoting *Tulsa Prof'l Collection Serv., Inc. v. Pope*, 485 U.S. 478, 490 (1988)). In evaluating the adequacy of service by mail, courts in this circuit follow the so-called "mailbox rule." *In re Barquet Grp., Inc.*, 477 B.R. 454, 462 n.7 (Bankr. S.D.N.Y. 2012) *aff'd*, 486 B.R. 68 (S.D.N.Y. 2012) (citations omitted). *See also R.H. Macy*, 161 B.R. at 359; *In re AMR Corp.*, 492 B.R. 660, 663–64 (Bankr. S.D.N.Y. 2013). "A rebuttable presumption that an addressee received a mailed notice arises when the mailing party submits sufficient evidence to demonstrate the notice was properly addressed and mailed." *Barquet*, 477 B.R. at 462 n.7 (citations omitted). "This presumption of receipt is 'very strong' and 'can only be rebutted by specific facts and not by invoking another presumption and not by a

mere affidavit to the contrary. . . . Evidence of an objective nature going beyond the claimant's

statement of non-receipt is necessary.'" *Id.* (ellipsis in original) (quoting *In re FairPoint*

*Commc'ns, Inc.,* 462 B.R. 75, 81 n.7 (Bankr.S.D.N.Y.2012)).

"Mail properly (1) addressed (2) stamped and (3) deposited in the mail system is

presumed to have been received by the party to whom it is addressed." *In re Randbre Corp.*, 66

B.R. 482, 485 (Bankr. S.D.N.Y. 1986) (citing *Hagner v. United States*, 285 U.S. 427, 430

(1932)). The presumption can be raised either by evidence showing that the mail was sent

through regular office procedures, or through an affidavit of the person who actually supervised

or carried out the mailing. *In re O.W. Hubbell & Sons, Inc.*, 180 B.R. 31, 34 (N.D.N.Y. 1995)

(citation omitted). The Trust produced sworn affidavits verifying service of the Bar Date Notice

and the Administrative Bar Date Notice to Cerron's proper address. (ECF Doc. ## 7098-2,

7098-3.) Not only is this service presumed received, but the appropriateness of service to that

address is corroborated by the fact that on June 24, 2014, KCC served Cerron via overnight mail

with a notice regarding telephonic participation at the Hearing, and Cerron made a telephonic

appearance at the Hearing. (*See* ECF Doc. # 7193 ¶ F, Ex. M.) KCC sent the notice of the

telephonic participation to the same address where it sent the Bar Date Notice and

Administrative Bar Date Notice.

Given that the presumption of receipt was raised, the burden shifted to Cerron to rebut the

presumption. *See, e.g.*, *In re Dana Corp.*, No. 06–10354, 2007 WL 1577763, at *4 (Bankr.

S.D.N.Y. May 30, 2007). "Federal courts in New York have held 'quite uniformly' that an

affidavit of non-receipt is insufficient to rebut the presumption of receipt created by proof of

mailing." *AMR*, 492 B.R. at 663–64 (citations omitted). Indeed, "[c]ourts in this Circuit do not

take this issue lightly given the important function served by a bar date in bankruptcy cases." *Id.*

at 664.  Cerron simply denies receiving the Bar Date and Administrative Bar Date Notices.  (*See*

ECF Doc. # 7201 ¶ 4.)  He explains that in the Foreclosure Action, Ocwen had been sending

mail to an incorrect address at 200 Main Street, Sarasota, Florida.  (*See id.*)  But KCC did not

send the Notices to that address.  (*See* Delehey Decl. Exs. 2–3.)  Instead, it sent the Notices to the

very address Cerron provides on each of his filings.  (*Id.*)  Cerron's bald denial of receipt,

without more, is legally insufficient to overcome the presumption of receipt.  *See AMR*, 492 B.R.

at 663–64.  Therefore, the Court presumes that Cerron received the Bar Date and Administrative

Bar Date Notices.

2.    *Cerron's "Newly Discovered Evidence"*

Cerron also believes that he should be permitted to file a late proof of claim because he

only discovered evidence of GMACM's purported fraud on this Court and the Florida courts in

December 2013.  (*See* ECF Doc. # 7201 ¶ 8.)  But Cerron's "newly discovered evidence" simply

relates to the Debtors' sale of the servicing rights to Cerron's Loan to Ocwen and Ocwen's

substitution as plaintiff in the Foreclosure Action.  (*See id.*)  None of that conduct was

fraudulent.  The Debtors did not purport to sell Cerron's Mortgage and Note to Ocwen.  Cerron's

purported evidence does not support his request to file a late proof of claim.

3.    The Pioneer Factors

The *Pioneer* factors weigh against permitting Cerron to file a late proof of claim.  Forcing

the Debtors to defend against Cerron's claims here would be unfair because some of his causes

of action are baseless on their face.  For example, Cerron alleges that GMACM received

improper insurance receipts and committed tax fraud relating to those insurance receipts, but he

provides no grounds for this accusation.  He also seeks to quiet title and alleges that GMACM

never had a right to foreclose on his property even though Cerron was in default, and GMACM

21

held and produced the Note endorsed in blank in the Foreclosure Action. The Debtors would be prejudiced by being forced to defend against these meritless accusations.

As for the length of delay, Cerron did not request any relief from this Court until May 2014, nearly one and a half years after the Bar Date, and several months after the Administrative Bar Date. As the Trust notes, other courts have rejected late claims with shorter delays. *See, e.g.*, *Hefta v. Official Comm. Of Unsecured Creditors (In re Am. Classic Voyages Co.)*, 405 F.3d 127 (3d Cir. 2005) (rejecting request to file proof of claim dated August 18, 2002, when bar date was April 30, 2002); *In re Enron Corp.*, 298 B.R. 513, 526 (Bankr. S.D.N.Y. 2003) (finding six-month delay after bar date to be "substantial" and weigh against permitting a late claim); *In re Enron Creditors Recovery Corp.*, 370 B.R. 90, 103 (Bankr. S.D.N.Y. 2007) (rejecting request to file claim fifteen months after the bar date). Not only is Cerron presumed to have received notice of the Bar Date, but GMACM also filed a Notice of Bankruptcy in the Foreclosure Action in October 2012, yet Cerron took no action.

The third *Pioneer* factor also weighs against Cerron. Although Cerron asserts that the reason for his delay was beyond his control because he was not aware of GMACM's purported fraud until December 2013, Cerron was embroiled in litigation with GMACM since 2009. He should have filed a proof of claim to preserve his rights as they relate to the counterclaims he asserted against GMACM in the Foreclosure Action, but he did not. And as explained above, his "newly discovered evidence" is not evidence of fraudulent conduct and does not excuse his delay.

As for the final prong, there is no allegation or indication that Cerron acted in bad faith in waiting to file a claim with this Court. Taken together, three of the four *Pioneer* factors weigh against allowing Cerron to file a late claim, so the Court rejects his request.

### D.        Cerron's Discovery Request is Denied

Cerron requests to take discovery from GMACM.  (*See* Motion at 7.)  The Court

construes this as a Bankruptcy Rule 2004 request.  "On motion of any party in interest, the court

may order the examination of any entity."  FED. R. BANKR. P. 2004(a).  But Cerron is not a party

in interest.  Parties in interest generally include the trustee, creditors, the debtor and entities

related to the debtor, and persons obligated to the debtor.  9 COLLIER ON BANKRUPTCY

¶ 2004.02[6].  Since the Court is not permitting Cerron to file a late claim, he is not a creditor

and is therefore not a party in interest in these chapter 11 proceedings.  His discovery request is

denied.

### E.        Cerron Is Not Entitled to a Quiet Title Ruling from this Court

Cerron also asks the Court to issue a quiet title ruling and find that the Mortgage

assignment from MERS to GMACM was invalid.  GMACM does not assert an interest in

Cerron's property now, so it is not the proper subject of a quiet title action.  *See Sparling v. Boca*

*Raton Land Dev., Inc.*, 438 So. 2d 413, 414 (Fla. Dist. Ct. App. 1983) (explaining that quiet title

action should involve all persons materially and directly interested in the property).  Indeed,

Ocwen just obtained a judgment of foreclosure, so title has seemingly been settled in the Florida

courts.  And the Court will not entertain Cerron's complaints about MERS and the assignment of

his Mortgage.  Cerron raised arguments about MERS and validity of the Mortgage assignment in

the Foreclosure Action (*see* Delehey Decl. Ex. 1-B).  Cerron may not revisit those issues here,

particularly without a pending claim against GMACM.

### F.        Cerron's Sanctions Request is Denied

Cerron asks the Court to impose sanctions on GMACM for its purportedly fraudulent

conduct.  (*See* Motion at 7.)  Although the Bankruptcy Code contains several provisions that

would allow for imposition of sanctions, *see, e.g.*, Bankruptcy Code §§ 303(i), 362(k), the Court

construes this request under Bankruptcy Rule 9011 and also under the Court's inherent power to

impose sanctions.  Rule 9011(b) governs representations made to the Court and provides that by

submitting filings with the Court, an attorney certifies that the filing (1) is not being used for an

improper purpose, (2) is not frivolous, (3) has evidentiary support or is likely to have evidentiary

support after discovery, and (4) only denies facts when warranted by evidence or a reasonable

lack of information.  FED. R. BANKR. P. 9011(b).  Aside from the Bankruptcy Rules and Code, a

bankruptcy court, like other federal courts, possesses "inherent authority to impose sanctions

against attorneys and their clients."  *In re Plumeri*, 434 B.R. 315, 327 (S.D.N.Y. 2010).  Here,

the Debtors' filings only reflected an interest in the servicing rights to Cerron's Loan.  (*See* ECF

Doc. ## 550, 600, 685.)  Aside from filing its Statements here, the Debtors appropriately filed a

Notice of Bankruptcy in the Foreclosure Action.  The Debtors never indicated an ownership

interest in Cerron's Loan before this Court, and they never purported to transfer an ownership

interest to Ocwen when they sold the servicing rights to Ocwen.  In short, the Debtors have

engaged in nothing even approaching sanctionable conduct in this Court.

///

///

///

///

///

///

///

## <u>CONCLUSION</u>

Cerron has submitted no less than ten filings with this Court seeking relief from the stay, permission to file a late claim, and other relief.  He launches many accusations against GMACM in his filings, but even if any of these allegations are meritorious, Cerron is precluded from pursuing relief against the Debtors.  He did not file a proof of claim, he is not entitled to file a late claim now, and he is enjoined by the Plan from seeking relief from the Debtors in any other venue.  He is not entitled to any of the relief that he seeks, so his Motion is **DENIED**.  This Opinion and Recommendation terminates all of Cerron's requests for relief in his various filings, including his post-Hearing submissions.

Dated:  July 31, 2014
            New York, New York


_____*Martin Glenn*_____
                MARTIN GLENN
        United States Bankruptcy Judge