**Hearing Date and Time: 08/13/14 at 10:00 a.m.**

LEWIS LAW PLLC
Local Counsel to Maurice Sharpe
120 Bloomingdale Road, Suite 100
White Plains, NY 10605
(914) 761-8400
klewis@lewispllc.com
Kenneth M. Lewis

DAVID J. WINTERON & ASSOCIATES, LTD.
Attorneys for Maurice Sharpe
1140 N. Town Center Drive, Suite 120
Las Vegas, Nevada 89144
(702) 363-0317
David J. Winterton
Tennille K. Pereira

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re

RESIDENTIAL CAPITAL, LLC, et al.

          Debtors.
---------------------------------------------------------x

Chapter 11

Case No. 12-12020 (MG)

Jointly Administered

### DECLARATION IN SUPPORT OF MAURICE SHARPE'S OBJECTION TO RESCAP BORROWER CLAIMS TRUST'S SIXTY-NINTH OMNIBUS OBJECTIONS TO CLAIMS
### (CLAIM NO. 2079)

   David J. Winterton declares the following to be true and correct, under the penalty of perjury, pursuant to 28 U.S.C. § 1746:

   1.  I am an attorney admitted to practice before the State of Nevada and the State of Utah and am counsel to Maurice Sharpe.

   2.  My office filed Claim No. 2079 on behalf of Mr. Sharpe and my office was receiving the correspondence and other bankruptcy documents.

   3.  My office never received any request for further documents or any

information whatsoever regarding Mr. Sharpe's Claim prior to the Rescap Borrower Claims Trust's Sixty-Ninth Omnibus Objections to Claims being filed.

4. My office was retained prior to the foreclosure of Mr. Sharpe's home when he discovered there had been a fraudulent mortgage on his home and GMAC was trying to foreclose. The allegations that Mr. Sharpe didn't cooperate or work with GMAC or the police in prosecuting the case are simply not true.

5. Mr. Sharpe immediately filed a police report with the Las Vegas Metropolitan Police Department for identity theft related to the mortgage that was fraudulently obtained in his name as soon as he was made aware of the fraud. A copy of the police report is annexed as Exhibit "A".

6. GMAC requested that Mr. Sharpe provide an ID Theft Affidavit, Police Report and a copy of his Nevada Driver's License, all of which he provided.

7. In an affidavit filed by GMAC in the state court litigation, GMAC's Senior Litigation Analyst, Juan Aguirre attested at item number 32 that, "On April 28, 2009, GMACM received Plaintiff's response letter, dated April 20, 2009, and the requested information/documentation." A copy of the Affidavit (without exhibits) is annexed as Exhibit "B".

8. Upon receiving a letter from GMAC stating they didn't believe that Mr. Sharpe was coopering with the Las Vegas Metropolitan Police Department, Mr. Sharpe immediately sent a letter to the Detective on the case requesting an update and assuring him that he was willing to provide anything further. A copy of that letter is annexed as Exhibit "C".

9. I also wrote a letter to the Las Vegas Metropolitan Police Department requesting what information or documentation they needed to further prosecute the matter

because they were not responding to Mr. Sharpe.  They never responded to my request.

10. I then made a phone call to the detective in charge of the case, Detective Moss to inform him that Mr. Sharpe was willing to provide whatever information they needed. However, Detective Moss informed me at that time that they weren't pursuing the identity theft charges because they believed that the individual that was responsible for the mortgage had a domestic relationship with Mr. Sharpe so it would be more appropriately handled as a civil matter.

11. The individual that Detective Moss believed was responsible was Tracy Sharpe.  Tracy Sharpe was his girlfriend, but they were never married.  Nevada does not have or recognize common law marriage unions.

12. The fraudulent mortgage was in Maurice Sharpe's name only and the property was owned by Maurice Sharpe as a single man.

13. GMAC then informed Mr. Sharpe that they were going to proceed to foreclose on Mr. Sharpe's property because Las Vegas Metropolitan Police Department wasn't proceeding forward with the identity theft prosecution.

14. Later on in the litigation, GMAC had noticed up the deposition of Las Vegas Metropolitan Police Department, but canceled it and never even sought to take it again.

15. I contacted GMAC and informed them that the mortgage had been obtained fraudulently, but they still refused to stop the foreclosure.

16. On October 20, 2009, I was finally forced to file a lawsuit on behalf of Mr. Sharpe against all of the parties involved in the fraudulent mortgage, including GMAC.

17. On October 23, 2009, I filed for an injunction to prevent the foreclosure.

18. As required by the local Nevada Rules of Civil Procedure, I produced all

of the mortgage documents within thirty (30) days of the GMAC's Answer being filed.

19. In support of an injunction to stop the foreclosure, I identified many of the immediately identifiable inconsistencies in the loan documents.

20. The signatures on the documents were not the same.

21. The driver's license number was different than Mr. Sharpe's.

22. The date of birth was different than Mr. Sharpe's.

23. The picture in the driver's license was a Hispanic male while Mr. Sharpe is African-American.

24. One of the loan application documents indicated that Mr. Sharpe was African-American. The Uniform Residential Loan Application section for providing information regarding ethnicity, race and sex indicated that Mr. Sharpe was not Hispanic or Latino and was Black or African American. However, the picture in the fake driver's license was of a Hispanic or Latino male.

25. Mr. Sharpe provided a affidavit stating that he had not applied for the mortgage, had not signed or authorized any one to sign on his behalf for the mortgage and had absolutely no knowledge of the mortgage until GMAC contacted him because of a delinquency.

26. A large amount of the loan proceeds were wired to a bank account that had Tracy L. Sharpe and Maurice Sharpe's name on it, however the address on the check provided was not that of Mr. Sharpe's home.

27. In an affidavit opposing the injunction, GMAC's representative informed the state court that they had done an initial review of the mortgage documents when Mr. Sharpe informed them of the fraud. Exhibit B.

28. GMAC admitted that the driver's license used to get the mortgage was

false. See Affidavit, ¶ 33. GMAC admitted that the Nevada Driver's License used had a different driver's license number and a picture of a Hispanic male while Mr. Sharpe is African-American. See Affidavit, ¶ 33.

29. GMAC was on notice that the loan was obtained with fraudulent information based on its own initial review.

30. Based upon this information, the state court granted an injunction, but conditioned it upon a bond of $35,000. Mr. Sharpe was only given a very short time period to provide the $35,000 and provided it one day after the court had ordered it be paid.

31. I contacted GMAC to try and stop the foreclosure based on this information and they refused. GMAC would have been protected by the bond and the state court believed it was likely that Mr. Sharpe would prevail on the merits. GMAC had even determined that the mortgage was obtained with a fake driver's license, yet they insisted on proceeding with the foreclosure.

32. GMAC was **clearly on notice that the mortgage was fraudulent** and still, they refused to stop with the foreclosure.

33. GMAC foreclosed on Mr. Sharpe's property and got just enough to pay off the mortgage, which was an amount far below fair market value.

34. GMAC continued on in the litigation after the foreclosure until the instant bankruptcy was filed.

35. Mr. Sharpe continued to pursue the litigation against the other named defendants.

36. There was discovery exchanged and depositions taken. GMAC was actively involved in all of the discovery and procedural history through its counsel.

Procedurally, the other named defendants were defaulted and the only claims remaining that were litigated where Mr. Sharpe was the Plaintiff were wrongful foreclosure and eviction against GMAC. GMAC had cross-claims for negligence and breach of fiduciary duty against Fidelity and third-party claims for negligence, negligence per se (specifically a violation of NRS 240.150) and breach of fiduciary duty against Longden.

37. The mortgage brokers that brokered the mortgage were not licensed mortgage brokers at the time of the transaction.

38. Nobody from the mortgage company actually met Maurice Sharpe in person.

39. A non-party was allowed to actively participate in the transaction and proceed funds were even wired to that party. Other proceed funds were paid towards another non-parties credit card.

40. The work information provided of Maurice Sharpe was never verified.

41. There was no evidence that Mr. Sharpe had ever given authorization of anyone else to sign any mortgage documents for the transaction to take place.

42. There were also a number of other issues identified by an expert in the case. A copy of the expert's report is annexed as Exhibit "D".

43. On March 11, 2014, the state court held a prove-up hearing to determine Mr. Sharpe's damages.

44. Evidence was provided, including an appraisal on the property, an affidavit of Mr. Sharpe for his other out-of-pocket damages, and invoices for attorney fees and costs. Based upon the evidence provided and the testimony at the prove-up hearing, Mr. Sharpe was awarded a judgment of $1,178,628.23 for actual damages, $64,114.50 in attorney fees and costs and prejudgment interest and post-judgment interest until paid in full according to the statutory rate of interest. A copy of the state court Judgment is annexed as Exhibit "E".

Executed on July 30, 2014

/s/ David J. Winterton
David J. Winterton