Exhibit D

# CORPORATE MORTGAGE ADVISORS
## Expert Witness Report- Case Findings & Opinions

DATE: 09/05/2010                                  CASE NUMBER: A-09-602043-C

**PLAINTIFF:** Mr. Maurice Sharpe

**DEFENDANTS:** GMAC Mortgage, SSafe Mortgage, Fidelity National Title Agency, et al.

**COMPLAINT SUMMARY:**

Allegations of fraud, negligence, quiet title, slander of title, and injunction. Plaintiff claims that he did not take out a home refinance on his residence and that his signatures were forged on mortgage loan documents. Plaintiff's home equity has been wiped out based on the actions of the defendants.

## *RETENTION OF EXPERT:*

Expert Witness, Curt Novy, has been retained by Plaintiff's counsel (David J. Winterton, & Associates, LTD) to provide a forensic analysis of case documents, identify parties involved in transaction, and prepare a written report of findings. Expert is expected to testify at trial.

Expert's base consulting fee is $300.00 per hour. Depositions and trial testimony are billed at $350 per hour. A Retainer fee of $2,000.00 has been paid. Expert has been provided case discovery by Plaintiff's counsel.

Expert has conducted independent research and investigation into the case facts to support findings presented herein. In addition, Expert has interviewed Plaintiff approximately three times to thoroughly understand case facts and answer Expert's questions. Expert is still actively investigating the case. Therefore, additional findings may be forthcoming.

Note: The report may be modified and opinions may change based on receipt and review of new discovery.



## SUMMARY OF EXPERT'S QUALIFICATIONS TO RENDER PROFESSIONAL OPINION:

**Overall, Expert has 25+ years experience in the fields of mortgage lending, real estate and escrow practices**, covering all facets of loan origination, underwriting management, loan operations, fraud investigation, and regulatory compliance. Expert is retained on civil and criminal cases involving mortgage and real estate fraud. Expert provides training to state and federal investigators in the areas of mortgage fraud analysis and lending/real estate practices. Real estate experience involved residential home sales activity as a licensed real estate broker. Expert has personally acquired and sold 20+ properties and currently owns & manages several residential investment properties. Overall, Expert has spent 15 of the past 25 years underwriting and analyzing mortgage loans. Typical underwriting duties included: appraisal valuation review, credit risk analysis, mortgage fraud forensics, financial statement and income tax analysis, and development of quality control procedures. Underwriting was performed for federally regulated banks, mortgage banking institutions, and FHA & VA lending institutions. Employment projects included salary employment as well as contract basis projects. **Collectively, Expert has underwritten, analyzed, and evaluated approximately 5,000 mortgage loans.** Expert's June 2010 C.V. is attached to this report.

## EXECUTIVE SUMMARY:

Plaintiff alleges in his complaint that his name was forged to refinance his primary residence identified as 2105 Grand Island, LV, NV 89117. Plaintiff states that he was unaware of the refinance and did not authorize the new mortgage loan, payoff of his existing mortgage loan, and disbursement of cash out proceeds to his jointly held bank account. The subject transaction was completed 3/17/2008 and key participants identified as the mortgage broker Silvano Barragan of SSafe Mortgage, Inc. (SSafe Mortgage) and the original lender was Mountain View Mortgage (Mountain View). The beneficial rights to the loan asset were immediately transferred to GMAC Mortgage (GMAC) upon close of escrow.

The refinance transaction resulted in a new mortgage obligation in the amount of $417,000 which provided cash out payments of $181,497.36 to someone other than Plaintiff. The refinance and substantial cash out proceeds are in direct conflict with Plaintiff's conservative nature and desire to keep his mortgage payments as low as possible.

Plaintiff had accumulated a great deal of equity in his home through his conservative efforts and it was effectively wiped out with the unauthorized home refinance. Plaintiff cannot afford to make the high mortgage payments based on his limited income and is in jeopardy of losing the home to foreclosure action. Based on NV state law, lender was



--- Page 2 ---

required to verify qualifying income to avoid origination of an unaffordable mortgage. Defendant mortgage companies failed in several respects to verify income, employment, and stability of income. **For example, the alleged place of employment (Dial International) turned out to be an adult escort service called "Candy Apple Girls" with a parent company named Dial Entertainment, LLC.** It took Expert approximately two minutes to identify the bogus employer. A site visit by Expert confirmed the existing escort business was still active in a well documented business area known for strip clubs and escort services. Some 20-30 adult businesses occupy the subject business location. Had lenders followed standard industry practices, the fraud scheme would have quickly unraveled.

Plaintiff's belief is that SSafe Mortgage, Mountain View, GMAC, and the title agent, Fidelity National Title Agency of Nevada (Fidelity) were negligent in carrying out their professional duties. The underlying case discovery supports Plaintiff's claims.

Expert has carefully reviewed the case discovery and has formed initial opinions that SSafe Mortgage, Mountain View, and GMAC were negligent in their processing, underwriting, and analysis of the suspicious refinance transaction. Based on numerous red flags, the broker and lenders should have closely scrutinized the transaction and taken steps to document that loan application information was correct.

**The mortgage broker and lenders did not adhere to generally accepted industry standards to protect Plaintiff from becoming the victim of fraud.** Many processing and underwriting red flags were documented but broker and lender failed to catch the fraud prior to close of escrow. In addition, Fidelity should have been more attentive to Plaintiff's personal identification presented at time of loan document signing. **It is unclear why Fidelity did not question Plaintiff's race noted on the loan application as compared to the driver's license. Plaintiff is a black male and the loan application indicated the borrower was a hispanic male; this simple oversight should not have occurred.** Fidelity was not obligated to function as the lender's fraud detection unit but could have helped prevent the fraud from occurring in the first place. Other missteps by Fidelity were noted as well. For example, Fidelity never directly contacted or discussed the home refinance with Plaintiff but instead chose to work closely with Tracy Sharpe, Plaintiff's then live-in girlfriend. In the absence of a properly executed Power of Attorney (POA), Fidelity was obligated to ensure Plaintiff actually requested the loan instead of relying on an unknown third person. Furthermore, the Statement Of Identity (SI) required by Fidelity did not indicate Plaintiff was married which should have tipped off Fidelity.

Overall, it was important for Fidelity and the lenders to document who exactly Tracy Sharpe was and why she was involved in the refinance transaction. Had proper care been taken, the fraud would have been discovered and stopped in its tracks. Expert believes it would have been appropriate for Fidelity to contact Plaintiff directly to ask permission to disburse loan funds to a joint account holder since the refinance was solely in the name of Plaintiff. It is unclear why Fidelity paid off credit cards of unknown parties to the transaction without the express written consent of Plaintiff. It simply does not make sense



why Fidelity would not question the credit card payoff of Diane M. Kramer. Also, Tracy Sharpe's name did not appear on any mortgage loan documents and she was not an owner of the subject property. Questionable Deed transfers should have been explored by Fidelity as well.

**The findings presented throughout this report support the position that primarily the lenders (Mountain View and GMAC) were negligent in their underwriting practices and missed several opportunities to catch the obvious mortgage fraud. Secondarily, Fidelity did not take sufficient steps to question apparent inconsistencies in the transaction to help prevent the fraud. The actions of Mr. Barragan, SSAfe Mortgage, and the appraiser are still under investigation and more information is needed to determine their actual role in the fraud. Lender was duped into approving and closing a fraudulent loan transaction involving Plaintiff's residence.**

### *EXPERT'S FINDINGS & OPINIONS:*

In relation to industry standards and practices, Expert's initial findings and opinions are as follows:

1.) Defendant lenders, Mountain View and GMAC, were duped into approving a risky sub-prime loan program through its mortgage broker, SSafe Mortgage. Defendant lenders' underwriting, audit, quality control, and risk management procedures were inadequate to identify and stop the fraud from occurring in the first place.

2.) Red flags were identified throughout the case discovery but the Plaintiff's underwriter, funder, and quality control team either missed or ignored indicators of fraud. The mortgage underwriter's job is to assess credit risk and identify/question red flags. Audit/Q.C. departments provide backup risk management.

3.) Expert does not believe Plaintiff signed loan documents. A handwriting expert is recommended to compare signatures on loan forms and loan documents to samples of Tracy Sharpe. Expert is not qualified in handwriting analysis but the signatures on the loan documents and forms bear an uncanny resemblance to Tracy Sharpe's numerous handwriting samples. A lay person would likely conclude Ms. Sharpe's signature style is a close match to the subject transaction documents.

4.) Fidelity should have questioned the role of Ms. Sharpe in the refinance of Plaintiff's residence. It simply does not make sense that Fidelity permitted an unknown person to interact and control a real estate transaction for which she had no ownership.

5.) Expert believes Tracy Sharpe is closely linked to the mortgage fraud scheme. From review of Mr. Sharpe's bank account records, it appears only Ms. Sharpe utilized the cash out loan proceeds. Several large checks were written by Ms. Sharpe shortly after close of



escrow. The account has been drained of funds. No checks written by Mr. Sharpe could be located. Ms. Sharpe should be deposed to help investigate the case facts.

### ***TRANSACTION RED FLAGS & INCONSISTENCES***

1.) Lender did not question employment or properly verify data. Business turned out to be an adult escort service named Candy Apple Girls. Lender should have Google searched the business name and address to identify fraud.

2.) Lender did not carefully review Verification of Employment (VOE). The required employment verification form was completed the same day the broker completed it. This is typical of a hand carried document which is not allowed by lenders.

3.) Lender & title agent did not question why the refinance included payoff of credit cards for an unknown person.

4.) Lender and title agent should have obtained approval from Plaintiff to wire funds to a joint account since only one borrower was noted on the loan application.

5.) Fidelity title "open sheet" indicated Tracy Sharpe as the borrower but she did not own the property and logically had no reason to apply for a refinance.

6.) Tracy Sharpe had no authority to change homeowner's insurance information but lender and title co. did not question.

7.) The existing lender payoff statement indicates a borrower by the name "Marcella". No one questioned who this unknown person was or her role in the refinance.

8.) Lender failed to ask what the cash out refinance proceeds would be used for which is a logical question every lender asks of its borrowers. Lender handed over $202,547 in net cash but had no idea what the money would be used for?

9.) Lender failed to notice the broker Mortgage Loan Origination Agreement appears to contain a 3rd version of the Plaintiff's signature.

10.) Lender failed to notice yet another version of Plaintiff's signature on IRS form 8821 and 4506T. Lender did not validate income with IRS which would have been appropriate considering the overall level of fraud detected.

11.) Lender failed to question why homeowners insurance billing statement was sent to an unknown address.



---
Page 5
---

12.) Verification of Deposit (VOD) is addressed to an unknown address and lender failed to question it.

13.) Verbal VOE was completed after close of escrow instead of prior to funding.

14.) Signed Federal Notice of Right to Cancel does not include the required cancellation notice date to trigger the 3 day cancelation period. It is unclear why the lender was not careful in checking this extremely important document. Legal counsel will need to determine the legality of the loan from a technical & regulatory compliance perspective.

15.) Notary records of Vicki Longden should be obtained and reviewed as soon as possible along with appraisal record. The notary public and appraiser should be deposed to gain further insight into the fraud.

In preparation for completion of this report, expert reviewed case discovery and conducted independent research and investigation to validate findings. A summary of key documents are noted below:

1. Complaint.
2. Mountain View/GMAC mortgage files including loan origination, credit approval/underwriting, communications etc.
3. Fidelity Title's files & records.
4. Deposition of Mr. Sharpe.


**End of Report.**


**Report Prepared By: Curtis L. Novy          Date: 09/05/2010**
Corporate Mortgage Advisors- Expert Witness Report, Copyright 2010

Note: Although this report is confidential, Expert authorizes release of report to law enforcement agencies to assist in possible prosecution or further investigation.