# EXHIBIT

# A

*FIRST IMPORT PAGE 84*

*EXHIBIT*

*#1*

## Homecomings Financial
*A GMAC Company*

Homecomings Financial
(NOT A PAYMENT ADDRESS)
P.O. Box 890036
Dallas TX 75389

www.homecomings.com

#BWNFNYZ
#ZSRYXVXWRX3#

- 0004448 000103321 09HFT2  P2

Jessica Quiroz
Helen Quiroz
8937 Metropolitan Ave
Rego Park NY 11374-5325

### CUSTOMER INFORMATION

Loan Number:          0439868738

Borrower:             Jessica Quiroz
Co-Borrower:          Helen Quiroz
Property Address:     8937 Metropolitan Ave
                      Rego Park  NY 11374

Home Phone #:         718-71\-1752
Work Phone #1:        718-7\-3357
Work Phone #2:        718-651-3500

*Please use the form on the back of the coupon to update this information.*

### CURRENT ACCOUNT DETAILS

Mortgage Amount(s) Due
Interest                                    2,392.50
Monthly Escrow Installment                    231.30

### Information About Your Account

Per your Note, your loan payment is interest only.

#### INFORMATION ABOUT YOUR PROPERTY TAXES

We are currently collecting funds in your escrow account for the payment of your real estate property taxes. You may be receiving your real estate tax bill directly from your tax collector. If you receive a bill, please write your loan number on the bill and forward the original to Homecomings Financial, P.O. Box 890037, Dallas, TX 75389 (be sure to make a copy for your records).

#### IMPORTANT YEAR-END TAX REPORTING INFORMATION

Your Form 1098 for the year 2005 was mailed to you before January 31, 2006. The information provided in that Form 1098 was only for the period of time we serviced your loan in 2005. If for some reason you do not have the form available, the information is being provided again below. This information is also available on our website at www.homecomings.com. The IRS does not require taxpayers to submit the Form 1098 with their tax return.

*(EXHIBIT)*

Total Amount Due on 05/01/06          2,623.80

Mortgage interest paid in 2005: $9,570.00
Mortgage interest reported to the IRS for 2005: $ ,570.00
Taxes disbursed ~~from escrow in 2005: $2,326.86~~
Interest credited to your escrow account in 2005: $1.60

### MORTGAGE ACCOUNT SUMMARY

Payment Due Date:                           05/01/06
Statement Date:                             04/04/06
Account Information as of 04/04/06
  Current Principal Balance *              522,000.00
  Current Escrow Balance                      730.15
  Year to Date Interest                     9,570.00
  Interest Rate:                             5.500%

### PRIOR PERIOD ACTIVITY

Activity from 03-09-06 to 04-04-06
03/31/06   Interest credit to escrow account          .74
04/03/06   04/01/06 Payment:  2,392.50 Interest,
           231.30 escrow                          2,623.80
04/03/06   Speed Draft Fee                              8.99

Make same-day mortgage payments with your ATM/Debit card. Call 1.800.206.2901 or visit www.homecomings.com.

*Like Coming Home*

* The Current Principal Balance does not reflect the total amount required to pay your loan in full.

Pay online  www.homecomings.com

Check here to complete items on reverse side if your address or other information has changed.

PLEASE INCLUDE LOAN NUMBER(S) ON YOUR CHECK

Homecomings Financial
P.O. Box 78426
Phoenix AZ 85062-8426

Loan Number:  0439868738         Jessica Quiroz
Payment Due   05/01/06
Total Amount Due                          2,623.80

Homecomings Financial
(NOT A PAYMENT ADDRESS)
P.O. Box 890036
Dallas TX 75389

**EXHIBIT # 2**

**Homecomings Financial**
A GMAC Company

www.homecomings.com

#BWNFNYZ
#ZSRYXVXWRX3#

* 0135724 000004480 09HFST 0932710 P4
Jessica Quiroz
Helen Quiroz
8937 Metropolitan Ave
Rego Park NY 11374-5325

| CUSTOMER INFORMATION

| Loan Number: | 0439868738 |
| Borrower: | Jessica Quiroz |
| Co-Borrower: | Helen Quiroz |
| Property Address: | 8937 Metropolitan Ave |
| | Rego Park NY 11374 |
| Home Phone #: | 718-715-1752 |
| Work Phone #1: | 718-709-3357 |
| Work Phone #2: | 718-531-3500 |

*Please use the form on the back of the coupon to update this information.*

*This is an attempt to collect on a debt and any information obtained will be used for that purpose. If you have been discharged of your personal liability for repayment of this debt, be advised that any action we may take, will be taken against the property only and not against you personally.*

| CURRENT ACCOUNT DETAILS

| Mortgage Amount(s) Due | |
| Interest: | |
| Monthly Escrow Installment | 2,392.50 |
| | 668.76 |

*(EXHIBIT #2)*

Total Amount Due on 03/01/07       **3,061.26**

| Information About Your Account

Per your Note, your loan payment is interest only.

**IMPORTANT YEAR-END TAX REPORTING INFORMATION**

Your Form 1098 for the year 2006 was mailed to you before January 31, 2007. The information provided in that Form 1098 was only for the period of time we serviced your loan in 2006. If for some reason you do not have the form available, the information is being provided again below. This information is also available on our website at www.homecomings.com. The IRS does not require taxpayers to submit the Form 1098 with their tax return.

Mortgage interest paid in 2006: $28,718.00.
Mortgage interest reported to the IRS for 2006: $28,718.00.
Taxes disbursed on your behalf in 2006: $3,726.23
Interest credited to your escrow account in 2006: $2.34

**THINK OF US AS YOUR PERSONAL MORTGAGE LENDER**

Our aim is to provide you with personalized, relevant financial solutions tailored to your specific needs. Call us toll-free at 1.877.695.3639 (1.877.MyLender).

| MORTGAGE ACCOUNT SUMMARY

| Payment Due Date: | 03/01/07 |
| Statement Date: | 02/27/07 |
| Account Information as of 02/27/07 | |
| Current Principal Balance * | 522,000.00 |
| Current Escrow Balance | 1,137.45 |
| Year to Date Interest | 4,785.00 |
| Interest Rate: | 5.500% |

| PRIOR PERIOD ACTIVITY

Activity from 02/23/07 to 02/27/07
| 02/01/07 | 02/01/07 Payment: 2,392.50 interest, 668.76 | |
| | escrow, 47.85 late charge(s) | 3,109.11 |
| 02/27/07 | Speed Draft Fee | 8.99 |

Make same-day mortgage payments with your ATM/Debit card.
Call 1.800.206.2901 or visit www.homecomings.com.

Like Coming Home

* The Current Principal Balance does not reflect the total amount required to pay your loan in full. Please call 1.800.306.3900 to obtain the payoff amount for your loan.

Check here and complete form on reverse side if your address or other information has changed.

PLEASE INCLUDE LOAN NUMBER(S) ON YOUR CHECK

Homecomings Financial
P.O. Box 78426
Phoenix, AZ 85062-8426

Loan Number: 0439868738
Payment Due 03/01/07

Total Amount Due

Jessica Quiroz

Case 1:10-cv-02485-KAM-JMA   Document 1   Filed 06/01/10   Page 51 of 83 PageID #: 51

*EXHIBIT #3*

**Homecomings Financial**
*A GMAC Company*
PO Box 205
Waterloo, IA 50704-0205

07/06/07

JESSICA QUIROZ
HELEN QUIROZ
8937 METROPOLITAN AVE

REGO PARK NY 11374

RE:   Account Number      7439868738
      Property Address    8937 METROPOLITAN AVE

                          REGO PARK NY 11374

Dear JESSICA QUIROZ
     HELEN QUIROZ

          **IMPORTANT NOTICE REGARDING INTEREST RATE AND/OR
                 INTEREST ONLY PAYMENT CHANGES**

The interest rate on your loan is scheduled to adjust on
08/01/07.  Your new interest-only payment will begin effective
with the 09/01/07 payment.

Projected principal balance after 08/01/07 payment $   522000.00

| | | | |
|---|---|---|---|
| Previous index value | 0.00000% | New index value | 5.38600% |
| Current interest rate | 5.50000% | New interest rate | 7.00000% |
| Curr int-only pmt  $ | 3205.53^ | New int-only pmt $ | 3045.00 |
| Margin | 5.55000% | Escrow*            $ | 668.76 |
| | | Total pmt      $ | 3713.76 |

*(EXHIBIT #3)*

*Subject to change if analysis occurs after the date of this
letter.

Your new interest rate is calculated by adding the margin to the
new index value, as defined in your mortgage documents.  The
result of this addition is subject to rounding and rate cap
limitations according to the terms of your mortgage documents.

PLEASE NOTE: If you make additional principal payments prior to
the 09/01/07 payment change, your monthly payment will be
adjusted accordingly.

A Mortgage Account Statement will be sent under separate cover.
If your payments are made through our automatic payment program,
your new payment amount will be deducted on your scheduled draft
date.

*FIRST NED EAGLE*

Case 1:10-cv-02485-KAM-JMA    Document 1    Filed 06/01/10    Page 52 of 82 PageID #: 52

PO Box 205
Waterloo IA 50704-0205

*EXHIBIT*
*#4*

**Homecomings Financial**
A GMAC Company

January 8, 2009

JESSICA QUIROZ
HELEN QUIROZ
8937 METROPOLITAN AVE
REGO PARK NY 11374

RE:    Account Number       7439868738
       Property Address     8937 METROPOLITAN AVE
                            REGO PARK NY 11374

## **IMPORTANT NOTICE REGARDING INTEREST RATE AND/OR INTEREST ONLY PAYMENT CHANGES**

The interest rate on your loan is scheduled to adjust on 2/1/2009. Your new interest-only payment will begin effective with the 3/1/2009 payment.

Projected principal balance after 2/1/2009 payment $ 522000.00

| | | | |
|---|---|---|---|
| Previous Index Value | 3.1080% | New Index Value | 1.7500% |
| Current Interest Rate | 8.6250% | New Interest Rate | 7.2500% |
| Current Int-only Pmt | $3751.88 | New Int-only pmt | $3153.75 |
| Margin | 5.5500% | Escrow* | $ 668.76 |
| | | Total Pmt | $3822.51 |

Rate Next Change Date                   8/1/2009
Principal and Interest Next Change       9/1/2009

*Subject to change if analysis occurs after the date of this letter.
Your new interest rate is calculated by adding the margin to the new index value, as defined in your mortgage documents. The result of this addition is subject to rounding and rate cap limitations according to the terms of your mortgage documents.

PLEASE NOTE: If you make additional principal payments, your monthly payment may be adjusted depending on the terms of your mortgage documents.
A Mortgage Account Statement will be sent under separate cover. If your payments are made through our automatic payment program, your new payment amount will be deducted on your scheduled draft date.

Case 1:10-cv-02405-KAM-JMA  Document 1  Filed 05/27/10  Page 53 of 82 PageID #: 53

2009/2523 AFFIRMATION (Page 13 of 43)

*EXHIBIT*
*# 5*

PO Box 205
Waterloo IA  50704-0205

**Homecomings Financial**

July 9, 2008

JESSICA QUIROZ
HELEN QUIROZ
8937 METROPOLITAN AVE
REGO PARK NY  11374

RE:    Account Number       7439868738
         Property Address    8937 METROPOLITAN AVE
                                      REGO PARK NY  11374

### **IMPORTANT NOTICE REGARDING INTEREST RATE AND/OR INTEREST ONLY PAYMENT CHANGES**

The interest rate on your loan is scheduled to adjust on 8/1/2008. Your new interest-only payment will begin effective with the 9/1/2008 payment.

Projected principal balance after 8/1/2008 payment $ 522000.00

| | | | |
|---|---|---|---|
| Previous Index Value | 4.5960% | New Index Value | 3.1080% |
| Current Interest Rate | 8.5000% | New Interest Rate | 8.6250% |
| Current Int-only Pmt | $3697.50 | New Int-only pmt | $3751.88 |
| Margin | 5.5500% | Escrow* | $ 668.76 |
| | | Total Pmt | $4420.64 |

Rate Next Change Date                   2/1/2009
Principal and Interest Next Change      3/1/2009

*Subject to change if analysis occurs after the date of this letter.
Your new interest rate is calculated by adding the margin to the new index value, as defined in your mortgage documents. The result of this addition is subject to rounding and rate cap limitations according to the terms of your mortgage documents.

PLEASE NOTE: If you make additional principal payments, your monthly payment may be adjusted depending on the terms of your mortgage documents.
A Mortgage Account Statement will be sent under separate cover. If your payments are made through our automatic payment program, your new payment amount will be deducted on your scheduled draft date.

2009/2523 AFFIRMATION (Page 35 of 40)

*SECOND MORTGAGE*

 **Countrywide®**
HOME LOANS

*EXHIBIT #6*

| | Account Number 119399145 | Statement date 07/08/2006 |
|---|---|---|
| | Property address 93 37 Metropolitan Ave. | |

## MONTHLY HOME LOAN STATEMENT

Q042074 01 AT 0.399 **AUTO T4 2 0799 11374-5325
MSA CC AM 6ICO— —8— — M 38BM H4 4 P27635
JESSICA ANGEL QUIROZ
8537 Metropolitan Ave
Rego Park NY 11374-5325

### TO CONTACT US

Online payments
& account details: **customers.countrywide.com**

Customer Service: **(800) 669-6607**

General information: **www.countrywide.com**

New home loan,
refinance or
home equity loans: **(800) 686-0145**

### CUSTOMER BULLETIN

## IMPORTANT NOTICE FOR OUR ELECTRONIC PAYMENT CUSTOMERS — THIS IS YOUR *LAST* MAILED MONTHLY STATEMENT

Beginning in August 2006, you will receive an online statement only and you will no longer receive a duplicate statement in the mail. The advantages of going online are plentiful, including 24-hour, 7-day-a-week access to your detailed account information including your loan balance, transaction history, tax information and more, all offered in a printer-friendly format. Our web site is just one of the ways we provide more customer service and account access for you than ever before. To access your personalized home page and account details, just log-in to our secure web site at customers.countrywide.com. On your first visit, please select the "Create User Name and Password" link on the log-in page and follow the simple instructions to be on your way to unlimited account access. Another important tool to help you manage your account is our e-mail notification service. We will send you an e-mail whenever there is activity on your account including confirmation of your recent payment, links to our web site and more information about products and services offered by the Countrywide family of companies. For your added convenience, any ARM statements, escrow adjustment notices and year-end tax information will continue to be mailed to you. Thank you for your loyalty to Countrywide Home Loans. We appreciate your business.

| HOME LOAN SUMMARY | Home loan overview as of 07/06/2006 | | Amount due on 08/12/2006 as of 07/06/2006 | |
|---|---|---|---|---|
| | Principal balance | $44,868.80 | Home loan payment due 08/12/2006 | $497.79 |
| | Late Charge if payment received after 08/28/2006 | $9.96 | (see next page for account details) | |
| | *Date* | *Payments received* | | |
| | 06/12/2006 | $497.79 | | |
| | 07/08/2006 | 497.79 | | |

| NOTICES | The New Seller's and Buyer's Advantage | Want more flexibility? Countrywide's online payment service, MortgagePay on the Web, allows you to make your payments around the clock. Visit customers.countrywide.com and check out the demo to see just how easy it is. |
|---|---|---|
| | If you are looking for a new home, Countrywide® wants to help you. To learn more about the variety of resources we offer visit www.countrywide.com or call 1-800-519-9632. | |

Calls may be monitored or recorded to ensure quality service.
We may charge you a fee for any payment returned or rejected by your financial institution, subject to applicable law.

Pay online today or
enroll in an automatic PayPlan.
Need to make a one-time, online
payment? Or would you prefer to enroll in
an electronic payment service where
payments are drafted automatically?
Whichever you choose, Countrywide
makes it easy.
Log onto customers.countrywide.com
1.  If you haven't already, create a user
    name & password
2.  Click "Payment Services"
Some of the payment services could even
help you build the equity in your home
faster!
*Terms and conditions apply. A service fee may be
assessed. Please read website for enrollment details.*

| Account number 119399145 | (0) | Payment due Aug 12, 2006 | $497.79 |
|---|---|---|---|
| Jessica Angel Quiroz | | After Aug 28, 2006 late payment | $507.75 |
| 80 37 Metropolitan Ave. | | | |
| Rego Park, NY 11374 | | | |

SEE OTHER SIDE FOR IMPORTANT INFORMATION    M6

| | |
|---|---|
| | Additional Principal |
| | Additional Escrow |
| | Other |
| | Check total |

**Countrywide**
PO BOX 660694
DALLAS TX 75266-0694

11939914500000004977900005 0775

1 of 2 Case ... 5-KAM-JMA    Document 1    Filed 06/01/10    Page 58 of 82 PageID #: 58



**Bank of America**
Home Loans

Customer Service
PO Box 5170
Simi Valley, CA 93062-5170

Statement date 03/03/2010

**Account Number 119399145**
Property address
89 37 Metropolitan Ave.

*SECOND MORTGAGE TRANSFER TO*

0 0 5 1 0 2 3  01 AT 0.357  **AUTO  T6 12754 11374-5325
MSR XW A6 0101----0--2--- C0000060 IN 1 PS1074
JESSICA ANGEL QUIROZ
8937 Metropolitan Ave
Rego Park NY 11374-5325

## IMPORTANT NOTICE

BAC Home Loans Servicing, LP services your home loan on behalf of the holder of your note (Noteholder). This is to advise you that your account remains seriously delinquent.

If we do not hear from you immediately, we will have no alternative but to take appropriate action to protect the interest of the Noteholder in your property. This action may include returning payments that are less than the total amount due.

Please give this matter your most urgent attention. Please pay the total amount due immediately. BAC Home Loans Servicing, LP will proceed with collection action until your account is brought fully current, and you will be responsible for all cost incurred in this process to the full extent permitted by law.

Note to Delaware Residents: Delaware residents who are struggling with their mortgage payments will find information on state-supported assistance by visiting www.deforeclosurehelp.org or calling 1-800-220-5424.

If you are unable to bring your account current, please contact us at 1.800.641.5302.

Sincerely,

LOAN SERVICING
Loan Counselor

| HOME LOAN SUMMARY | Home loan overview as of 03/03/2010 | | Amount due on 03/12/2010 as of 03/03/2010 | |
|---|---|---|---|---|
| | Principal balance | $44,809.04 | Home loan payment due 03/12/2010 | $517.71 |
| | Late Charge if payment received after 03/27/2010 | $9.96 | Past due payment amount | 14,435.91 |
| | | | (see next page for account details) | |

Calls may be monitored or recorded to ensure quality service. We may charge you a fee (of up to $40.00) for any payment returned or rejected by your financial institution, subject to applicable law.

**PAYMENT INSTRUCTIONS**
1. Please
   • don't send cash
   • don't staple the check to the payment coupon
   • don't include correspondence
   • include coupon with payment
2. Write the account number on the check or money order.
3. Make the check payable to
   BAC Home Loans Servicing, LP
   Attn: Remittance Processing
   PO Box 15222
   Wilmington, DE 19886-5222

Account number  **119399145**    (0)
Jessica Angel Quiroz
89 37 Metropolitan Ave.
Rego Park, NY 11374

SEE OTHER SIDE FOR IMPORTANT INFORMATION    2754

BAC Home Loans Servicing, LP
PO BOX 15222
WILMINGTON, DE 19886-5222

Payment due **Mar 12, 2010**    *$517.71
After **Mar 27, 2010** late payment    * $527.67
*Payment amount includes late charges. See Home Loan Details for breakdown.

Additional Principal

Additional Escrow

Check total

1193991450000000051771000052767

⑆586990058⑆ 119399145⑈

2009/2523 AFFIRMATION (Page 37 of 40)    Document 1    Filed 06/01/10    Page 53 of 82 PageID #: 59

2007/25117 ANSWER (Page 14 of 15)

# Homecomings Financial

## EXHIBIT #
## CREDIT CARD

Prepared for: **JESSICA A QUIROZ**

5329 0172 1330 9088

**October 2007 Statement**
Credit Line:          $15,000.00
Cash or Credit Available:    $635.98

## FIA CARD SERVICES™

**Customer Service**
For information on Your Account visit:
www.fiacardservices.com
Mail Payments to:
FIA CARD SERVICES
P.O. BOX 15721
WILMINGTON, DE 19886-57?1
Mail Billing inquiries to:
FIA CARD SERVICES
P.O. BOX 15026
WILMINGTON, DE 19850-6026
Call toll-free 1-800-362-8299
TDD hearing-impaired 1-800-346-3178

## Account Information

### Summary of Transactions

| | | |
|---|---|---|
| Previous Balance | | $14,535.20 |
| Payments and Credits | −. | $394.00 |
| Cash Advances | +. | $0.00 |
| Purchases and Adjustments | +. | $0.00 |
| Periodic Rate Finance Charges | +. | $222.82 |
| Transaction Fee Finance Charges | +. | $0.00 |
| **New Balance Total** | | **$14,364.02** |

### Billing Cycle and Payment Information

| | |
|---|---|
| Days in Billing Cycle | 29 |
| Closing Date | 10/05/07 |
| Payment Due Date | 10/30/07 |
| Current Payment Due | $364.00 |
| Past Due Amount + | $0.00 |
| Total Minimum | |
| Payment Due | $364.00 |

## Transactions

### Payments and Credits

| | Posting Date | Transaction Date | Reference Number | Account Number | Category | Amount |
|---|---|---|---|---|---|---|
| PAYMENT - THANK YOU | 09/29 | | | | | $394.00CR |

```
PAYDOWN YOUR MORTGAGE WITH
THE HOMECOMINGS FINANCIAL
EQUITY REWARDS PROGRAM
    0   POINTS EARNED THIS MONTH
  132   TOTAL POINTS AVAILABLE
2,500   POINTS REDEEMED THIS MONTH
```

## Finance Charge Schedule

| Category | Periodic Rate | Corresponding Annual Percentage Rate | Balance Subject to Finance Charge |
|---|---|---|---|
| **Cash Advances** | | | |
| A. Balance Transfers, Checks | 0.043808% DLY | 15.99% | $0.98 |
| B. ATM, Bank | 0.05476?% DLY | 19.99% | $14,529.76 |
| C. Purchases | 0.043808% DLY | 15.99% | $0.62 |
| **Annual Percentage Rate for this Billing Period:** | | | **19.99%** |
| (includes Periodic Rate Finance Charges and Transaction Fee Finance Charges.) | | | |

## Important Information About Your Account

**PAY YOUR BILL QUICKLY WITH THE PAY BY PHONE SERVICE. CALL 1-866-478-7659
TO USE THE AUTOMATED SERVICE OR DISCUSS OTHER PAYMENT OPTIONS.**

INTRODUCTORY OFFER! SAVE $10 ON YOUR FIRST GIFT BOX OF FLORIDA CITRUS FROM
AL'S FAMILY FARMS. VISIT WWW.ENJOYCITRUS.COM OR CALL 1-888-231-2450 DEPT. 115

07    0143640200036400000394000005329017213309088

FIA CARD SERVICES
P.O. BOX 15721
WILMINGTON, DE 19886-5721

1 0062485 08679 0406000002 032111    80810-02

JESSICA A QUIROZ
8937 METROPOLITAN AVE
REGO PARK NY  11374-5325-379

☐ Check here for a change of mailing address or phone number(s).
Please provide all corrections on the reverse side.

**Payment Information**

| | |
|---|---|
| **ACCOUNT NUMBER:** | 5329 0172 1330 9088 |
| **NEW BALANCE TOTAL:** | $14,364.02 |
| **PAYMENT DUE DATE:** | 10/30/07 |

$

Mail this payment coupon along with a
check or money order payable to: FIA CARD SERVICES

Page 1 of 2

⑆5 2402 2250⑆⑈   13737213309088⑈

Return To:
New Century Mortgage
Corporation
18400 Von Karman
Suite 1000
Irvine, CA 92612

Prepared By:
New Century Mortgage
Corporation
18400 Von Karman
Suite 1000
Irvine, CA 92612

———————————— [Space Above This Line For Recording Data] ————————————

# MORTGAGE

*Block - 3176*
*Lot - 13*

## WORDS USED OFTEN IN THIS DOCUMENT

(A) "Security Instrument." This document, which is dated July 8, 2005
together with all Riders to this document, will be called the "Security Instrument."
(B) "Borrower."                    Helen Quiroz and Jessica Angel Quiroz

whose address is 8937 Metropolitan Ave , Rego Park, NY 11374

sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) "Lender." New Century Mortgage Corporation

will be called "Lender." Lender is a corporation or association which exists under the laws of
California                    . Lender's address is 18400 Von Karman, Suite
1000, Irvine, CA 92612

NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

1002616903
Form 3033 1/01

VMP-6(NY) (0005).08
Page 1 of 17          Initials: *HG*
VMP Mortgage Solutions, Inc. (800)521-7291

**(D) "Note."** The note signed by Borrower and dated   July 8, 2005                  , will be called the "Note." The Note shows that I owe Lender FIVE HUNDRED TWENTY-TWO THOUSAND AND 00/100

                                    Dollars (U.S. $ 522,000.00            ) plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by August 1, 2035                                                      .

**(E) "Property."** The property that is described below in the section titled "Description of the Property," will be called the "Property."

**(F) "Loan."** The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(G) "Sums Secured."** The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

**(H) "Riders."** All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(I) "Applicable Law."** All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

**(J) "Community Association Dues, Fees, and Assessments."** All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

**(K) "Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items."** Those items that are described in Section 3 will be called "Escrow Items."

**(M) "Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

**(N) "Mortgage Insurance."** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment."** The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

**(P) "RESPA."** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

1002616903

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

**DESCRIPTION OF THE PROPERTY**

I give Lender rights in the Property described in (A) through (G) below:

(A) The Property which is located at 8937 Metropolitan Ave

[Street]

Rego Park                    [City, Town or Village], New York  11374         [Zip Code].

This Property is in Queens                                County. It has the following legal description: See Legal Description Attached Hereto and Made a Part Hereof

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

VMP®-6(NY) (0005).08                    Page 3 of 17                    Initials:                    1002616903

Form 3033 1/01

Schedule A Description

ALL that certain plot, piece or parcel of land, situate, lying and being in the Second Ward, Borough and County of Queens, City and State of New York, bounded and described as follows

BEGINNING at a point on the northerly side of Williamsburgh and Jamaica Turnpike (now called Metropolitan Avenue) distant 306.47 feet easterly from the corner formed by the intersection of the northerly line of Metropolitan Avenue and the southeasterly side of Cooper Avenue (old line);

RUNNING THENCE northerly at right angles with Metropolitan Avenue, 100 feet;

THENCE easterly parallel with said Metropolitan Avenue, 22 feet;

THENCE southerly again at right angles with said Metropolitan Avenue and part of the distance through a party wall, 100 feet to the said northerly side of Metropolitan Avenue; and

RUNNING THENCE westerly along said northerly side of Metropolitan Avenue, 22 feet to the point or place of BEGINNING.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

**1. Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

**2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

Initials:

1002616903

Form 3033 1/01

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

**(a) Borrower's Obligations.**

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

**(b) Lender's Obligations.**

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

**(c) Adjustments to the Escrow Funds.**

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

**4. Borrower's Obligation to Pay Charges, Assessments and Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security

1002616903

VMP®-6(NY) (0005).08                Page 6 of 17                Initials: [signature]                **Form 3033 1/01**

Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c)

Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

**(a) Maintenance and Protection of the Property.**

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

**(b) Lender's Inspection of Property.**

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

1002616903

Form 3033 1/01

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance

coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

**11. Agreements About Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are** assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in

VMP®-6(NY) (0005).08

Page 10 of 17          Initials: _____

1002616903

Form 3033 1/01

value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

**(a) Borrower's Obligations.**

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

**(b) Lender's Rights.**

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to

delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.

VMP®-6(NY) (0005).08

Page 12 of 17

Initials: _____

1002616903

Form 3033 1/01

If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time

period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS**

I also promise and agree with Lender as follows:

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to

the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

    (1) The promise or agreement that I failed to keep or the default that has occurred;

    (2) The action that I must take to correct that default;

    (3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

    (4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

    (5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

    (6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

**23. Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

**24. Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

**25. Borrower's Statement Regarding the Property [check box as applicable].**

[X] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ] This Security Instrument does not cover real property improved as described above.



Initial

1002616903

# EXHIBIT

# B

E.D.N.Y.- Bklyn
10-cv-2485
Matsumoto, J.
Azrack, M.J.

# United States Court of Appeals
### FOR THE
### SECOND CIRCUIT

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25th day of April, two thousand thirteen.

Present:

Ralph K. Winter,
Guido Calabresi,
Gerard E. Lynch,
    *Circuit Judges.*

Ramon Quiroz, *et al.*,

                    *Plaintiffs-Appellants,*

    v.                                          11-3663

U.S. Bank National Association, as Trustee, *et al.*,

                    *Defendants-Appellees.*

Appellant Ramon Quiroz, *pro se*, moves: (1) for an order granting "summary judgment" in the Appellants' favor; and (2) to lift the automatic stay imposed upon the filing of a Chapter 11 bankruptcy petition by Appellees Homecomings Financial ("Homecomings") and GMAC Mortgages ("GMAC"). By order entered on May 24, 2012, this Court stayed the above-captioned appeal pending the lifting or termination of the automatic stay.

Upon due consideration, it is hereby ORDERED that: (1) the Appellants' motion for "summary judgment" is CONSTRUED as a motion for summary reversal of the district court's August 9, 2011 judgment dismissing the Appellants' complaint; (2) as so construed, decision on the motion is DEFERRED pending the lifting or termination of the automatic stay, *see* 11 U.S.C. § 362(a)(1); *Johnson v. Morgenthau*, 160 F.3d 897, 899 (2d Cir. 1998) (providing that this Court has "inherent

SAO-MEM

power . . . to manage and control its docket"); and (3) the Appellants' motion to lift the automatic stay is DENIED, *see In re Sonnax Indus.*, 907 F.2d 1280, 1287 (2d Cir. 1990) (noting that the decision to lift the automatic stay is left to the sound discretion of the bankruptcy court). Any future motion to lift the automatic stay should be filed in the bankruptcy court. *See* Fed. R. Bankr. P. 9014.

Finally, we note that Appellant Ramon Quiroz has informed this Court that Appellant Helen Quiroz has died. However, this Court has no information as to whether she has a personal representative who could be substituted under Federal Rule of Appellate Procedure 43(a). Additionally, Appellant Jessica Angel Quiroz may not be a proper party to this appeal, as she did not sign the notice of appeal and this Court has no information as to whether she was a minor child at the time that it was filed. *See* Fed. R. App. P. 3(c)(2). Accordingly, the Appellants are ORDERED to file, within 30 days of the date that Homecomings and GMAC notify this Court that the automatic stay has been lifted or terminated, affidavits or affirmations stating: (1) whether Appellant Helen Quiroz has a personal representative suitable for substitution pursuant to Federal Rule of Appellate Procedure 43(a); and (2) the age of Appellant Jessica Angel Quiroz at the time that the September 8, 2011 notice of appeal was filed.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

Catherine O'Hagan Wolfe

# EXHIBIT

# C

2007/25117 (RECEIVED PAPERS (Paid) 24/05-10AM-3MA — Document 1    Filed 06/01/10    Page 44 of 82 PageID #: 44

6·2·09                                                                        o⊃c

Instructions:  Fill in the names of the parties and the index Number.. Complete the blank spaces next to the instructions printed in bold type.  PRINT AND USE BLACK INK ONLY.  [Other blank spaces are for Court use.]

## SEQUENCE. NO. ___4___

IAS Pt ___6___ for

HON. HOWARD G. LANE

At IAS Part __6__ of the Supreme Court of the State of New York, held in and for the County of Queens at the Courthouse thereof, 88-11 Sutphin Blvd., Jamaica, New York, on the 21 day of _May_, 2009.

for

HON. LAWRENCE V. CULLEN

PRESENT:  HON. _____
                 Justice of the Supreme Court

**RECEIVED**
MAY 2 2 2009
COUNTY CLERK
QUEENS COUNTY

---------------------------------------------------X

U.S. Bank National Association, As Trustee

[FILL IN NAME(S)]                    Plaintiff(s)

vs

Jessica Angel Quiroz
and
HELEN QUIROZ

[FILL IN NAME(S)]                    Defendant(s)

---------------------------------------------------X

Index No.

__25117/07__

ORDER TO SHOW CAUSE
WITH T.R.O. IN CIVIL ACTION

Upon reading and filing the affidavit of _Helen Quiroz_

[YOUR NAME], sworn to on the _21_ day of _May_, _2009_  [DATE THE AFFIDAVIT WAS SWORN TO BEFORE A NOTARY PUBLIC], and upon the exhibits attached to the affidavit, and

[LIST OTHER SUPPORTING PAPERS, E.G. ADDITIONAL AFFIDAVITS, EXHIBITS]  _NOTICE OF SALE,_

_on 5/22/09  Order granting time until 6/24/09 TO PERFECT_

_APPEAL  REPLY AFFIRMATION TO DEFENDANT's OPPOSITION_

_TO AMEND VERIFIED COMPLAINT, INDEX # 2523/2009_

2007/25117 RECEIVED PAPERS (Page 2 of 3)

Let the plaintiff(s)/defendant(s) [CIRCLE ONE] or his/her/their attorney show cause at

JAS Part 6, Room 45, of this Court, to be held at the Courthouse, 88-11 Sutphin

Boulevard, Jamaica, N.Y./ 25-10 Court Square, Long Island City, N.Y.. [STRIKE THE ONE

THAT DOES NOT APPLY], on the 21 day of MAY 2009, at 9 30 o'clock in the fore noon or

as soon as counsel may be heard why an order should not be made [DESCRIBE THE RELIEF

BEING SOUGHT] A STAY on the May 22, 2009 SALE OF MY PROPERTY

based on the attached Order on Application to extend my

appeal in order that I may perfect it, which was

granted until June 26, 2009. The foreclosure and sale

of my property before I can perfect this Appeal goes

against my constitutional rights.

I believe that there will be significant prejudice by giving

notice because, the Plaintiff has not answered the Complaint

(Index # 2523/2009 which is based on demanding U.S. National

Association as Trustee verification of the original title and

promisory note.

_____

_____

_____

_____,AND

WHY Helen Quiroz _____(YOUR NAME), THE

PLAINTIFF(S)/DEFENDANT(S)(CIRCLE ONE), should not have such other and further relief

as may be just, proper and equitable.

2

2007/26/117 RECEIVED PAPERS (Page 3 of 3)

Pending the hearing of this motion it is **ORDERED** that [WRITE WHAT YOU ARE

ASKING THE COURT TO STOP] _The foreclosure and sale of my_

_property on May 22, 2009. is stayed. Because an appeals_

_pending in the Supreme Court of the State of New York_

_Appellate Division, Second Judicial Dept._

Sufficient cause appearing therefor, let personal service of a copy of this order, and _or its representative_

the other papers upon which this order is granted, upon the plaintiff(s)/defendant(s) by ~~and~~

_upon the appointed referee_ on ~~or before~~ the _22nd_ day of _MAY_, 2009 be _before 11:00 AM_

deemed good and sufficient. An affidavit or other proof of service shall be presented to

this Court on the return date directed in the second paragraph of this order.

**ENTER:**

_____
J.S.C.

HON. HOWARD G. LANE

3

# EXHIBIT

# D

# THE CITY OF NEW YORK
## VITAL RECORDS CERTIFICATE

# DEATH TRANSCRIPT

**DATE FILED**    THE CITY OF NEW YORK – DEPARTMENT OF HEALTH AND MENTAL HYGIENE

## CERTIFICATE OF DEATH    Certificate No. 156-12-007476

**NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE**
**FEBRUARY 23, 2012 06:00 PM**

| | |
|---|---|
| 1. DECEDENT'S LEGAL NAME | HELEN    QUIROZ |
| | (First, Middle, Last) |

**Place Of Death**
2a. New York City
2b. Borough: **Queens**

2c. Type of Place
1 ☐ Hospital Inpatient
2 ☐ Emergency Dept./Outpatient
3 ☐ Dead on Arrival
4 ☐ Nursing Home/Long Term Care Facility
5 ☐ Hospice Facility
6 ☐ Decedent's Residence
7 ☐ Other Specify

2d. Any Hospice care in last 30 days
1 ☐ Yes
2 ☐ No
3 ☐ Unknown

2e. Name of hospital or other facility (if not facility, street address)
8937 Metropolitan Avenue
Rego Park, New York 11374

**Date and Time of Death**
3a. (Month) (Day) (Year-yyyy): **February    20    2012**
3b. Time: **07:45**  ☐ AM  ☒ PM
4. Sex: **Female**
5. Date last attended by a Physician: mm **02** dd **20** yyyy **2012**

6. Certifier: I certify that death occurred at the time, date and place indicated and that to the best of my knowledge traumatic injury or poisoning DID NOT play any part in causing death, and that death did not occur in any unusual manner and was due entirely to NATURAL CAUSES. See instructions on reverse of certificate.

Name of Physician: **Margaret Squillace MD**
(Type or Print)
Signature: *Margaret Squillace*    M.D.
Signature Electronically Authenticated
Address: **1740 Eastchester Road, Bronx, New York 10461**
License No. **176231**    Date **FEB-21-2012**

| 7a. Usual Residence State | 7b. County | 7c. City or Town | 7d. Street and Number | Apt. No. | ZIP Code | 7e. Inside City Limits? |
|---|---|---|---|---|---|---|
| New York | Queens | Rego Park | 89-37 Metropolitan Avenue | | 11374 | 1 ☐ Yes 2 ☐ No |

| 8. Date of Birth (Month) (Day) (Year-yyyy) | 9. Age at last birthday (years) | Under 1 Year Months Days | Under 1 Day Hours Minutes | 10. Social Security No. |
|---|---|---|---|---|
| June    21    1949 | 62 | | | 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 |

11a. Usual Occupation (Type of work done during most of working life. Do not use "retired")
**Office Manager**
11b. Kind of business or industry
**Fund Raising**
12. Aliases or AKAs

13. Birthplace (City & State or Foreign Country)
**Brooklyn, New York**

14. Education (Check the box that best describes the highest degree or level of school completed at the time of death)
1 ☐ 8th grade or less; none
2 ☐ 9th – 12th grade; no diploma
3 ☐ High school graduate or GED
4 ☐ Some college credit, but no degree
5 ☐ Associate degree (e.g. AA, AS)
6 ☐ Bachelor's degree (e.g. BA, AB, BS)
7 ☐ Master's degree (e.g. MA, MS, MEng, MEd, MSW, MBA)
8 ☐ Doctorate (e.g. PhD, EdD) or Professional degree (e.g. MD, DDS, DVM, LLB, JD)

15. Ever in U.S. Armed Forces?
1 ☐ Yes  2 ☒ No

16. Marital/Partnership Status at time of death
1 ☒ Married  2 ☐ Domestic Partnership  3 ☐ Divorced
4 ☐ Married, but separated  5 ☐ Never Married  6 ☐ Widowed
7 ☐ Other, Specify  8 ☐ Unknown

17. Surviving Spouse's/Partner's Name (If wife, name prior to first marriage) (First, Middle, Last)
**Ramon Quiroz**

18. Father's Name (First, Middle, Last)
**Peter Kazane**

19. Mother's Maiden Name (Prior to first marriage) (First, Middle, Last)
**Rose Damone**

20a. Informant's Name
**Janel Quiroz**

20b. Relationship to Decedent
**Daughter**

20c. Address (Street and Number    Apt. No.    City & State    ZIP Code)
**89-37 Metropolitan Avenue, Rego Park, New York  11374**

21a. Method of Disposition
1 ☐ Burial  2 ☐ Cremation  3 ☐ Entombment  4 ☐ City Cemetery
5 ☐ Other Specify

21b. Place of Disposition (Name of cemetery, crematory, other place)
**Saint John's Cemetery**

21c. Location of Disposition (City & State or Foreign Country)
**Middle Village, New York**

21d. Date of Disposition: mm **02** dd **25** yyyy **2012**

22a. Funeral Establishment
**Fox Funeral Home, Inc.**

22b. Address (Street and Number    City & State    Zip Code)
**98-07 Ascan Avenue, Forest Hills, New York 11375**

VR 15 (Rev. 01/07)



This is to certify that the foregoing is a true copy of a record on file in the Department of Health and Mental Hygiene. The Department of Health and Mental Hygiene does not certify to the truth of the statements made therein, as no inquiry as to the facts has been provided by law.

Do not accept this transcript unless it bears the security features listed on the back. Reproduction or alteration of this transcript is prohibited by §3.16(b) of the New York City Health Code if the purpose is the evasion or violation of any provision of the Health Code or any other law.

DATE ISSUED


Steven P. Schwartz, Ph.D., City Registrar



16 of 22

# EXHIBIT

# E

LAW OFFICES
# McCABE, WEISBERG & CONWAY, P.C.
SUITE 2S06
1 HUNTINGTON QUADRANGLE
MELVILLE, NY 11747
(631) 812-4084
FAX: (855) 845-2584

SUITE 1400
123 S. BROAD STREET
PHILADELPHIA, PA 19109
(215) 790-1010
FAX: (215) 790-1274

SUITE 303
216 HADDON AVENUE
WESTMONT, NJ 08108
(856) 858-7080
FAX: (856) 858-7020

SUITE 130
DELAWARE CORPORATE CENTER I
ONE RIGHTER PARKWAY
WILMINGTON, DE 19803
(302) 409-3520
FAX: 855-425-1980

SUITE 800
312 MARSHALL AVENUE
LAUREL, MD 20707
(301) 490-3361
FAX: (301) 490-1558
Also servicing the District of Columbia

SUITE 203
722 EAST MARKET STREET
LEESBURG, VA 20176
(571) 449-9350
FAX: (855) 845-2585

SUITE 210
145 HUGUENOT STREET
NEW ROCHELLE, NY 10801
(914)-636-8900
FAX: (914) 636-8901

January 16, 2014

Helen Quiroz
8937 Metropolitan Avenue
Rego Park, New York 11374

Loan No.: 7439868738
Property Address: 8937 Metropolitan Avenue, Rego Park, New York 11374

Dear Helen Quiroz:

We have been retained by the creditor identified in paragraph 2 below regarding the foreclosure proceedings in connection with the debt identified in this notice. We write to provide you with this important information concerning the debt.

## NOTICE REQUIRED BY THE FAIR DEBT COLLECTION PRACTICES ACT ("FDCPA")

1.       As of the date of this letter, the amount of your debt is **$811,027.18**. Because interest, late charges, and other fees and charges that may vary from day to day, the amount due on the day you pay your debt may be greater. Therefore, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event, we will inform you before depositing the check for collection.

2.       The name of the creditor to whom your debt is owed is **U.S. Bank National Association, as Trustee for Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2005-KS10.**

3.       UNLESS YOU DISPUTE THE DEBT, OR ANY PORTION OF THE DEBT, WITHIN THIRTY (30) DAYS OF THE DATE YOU RECEIVE THIS LETTER, WE WILL ASSUME THAT THE DEBT IS VALID.

4.       IF YOU NOTIFY US IN WRITING, WITHIN THIRTY (30) DAYS OF THE DATE YOU RECEIVE THIS LETTER, THAT YOU DISPUTE THE DEBT, OR ANY PORTION OF THE DEBT, THEN WE WILL OBTAIN VERIFICATION OF THE DEBT, OR A COPY OF A JUDGMENT AGAINST YOU, AND MAIL SUCH VERIFICATION OR JUDGMENT TO YOU.

5.       If the creditor named in paragraph 2 above is not the original creditor, then, IF YOU SEND A WRITTEN INQUIRY TO US WITHIN THIRTY (30) DAYS OF THE DATE YOU RECEIVE THIS

LETTER, WE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR.

6.      All correspondence to us should be addressed as follows: McCABE, WEISBERG & CONWAY, 1 HUNTINGTON QUADRANGLE, MELVILLE, NY 11747.

7.      The Fair Debt Collection practices Act does not require that we wait for thirty (30) days after the date you receive this letter before instituting foreclosure proceedings.  IN THE EVENT THAT WE DO FILE FORECLOSURE PROCEEDINGS WITHIN THE THIRTY (30) DAYS AFTER YOU RECEIVE THIS LETTER, YOU STILL RETAIN THE RIGHTS DESCRIBED IN THIS LETTER INCLUDING THE RIGHT TO DISPUTE ALL OR PART OF THE DEBT OR THE RIGHT TO REQUEST THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR.

8.      THIS IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. THIS NOTICE IS REQUIRED BY THE PROVISIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT AND DOES NOT IMPLY THAT WE ARE ATTEMPTING TO COLLECT MONEY FROM ANYONE WHO HAS DISCHARGED THE DEBT UNDER THE BANKRUPTCY LAWS OF THE UNITED STATES.

# EXHIBIT

# F

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2012040300583001002E4A80

### RECORDING AND ENDORSEMENT COVER PAGE
**PAGE 1 OF 5**

| | | |
|---|---|---|
| Document ID: 2012040300583001 | Document Date: 04-01-2012 | Preparation Date: 04-03-2012 |
| Document Type: DEED | | |
| Document Page Count: 3 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| JESSICA ANGEL QUIROZ | JESSICA ANGEL QUIROZ |
| 8937 METROPOLITAN AVE | 8937 METROPOLITAN AVE |
| REGO PARK, NY 11374 | REGO PARK, NY 11374 |
| 347-876-8759 | 347-876-8759 |
| rayorlando1@hotmail.com | rayorlando1@hotmail.com |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 3176 | 13    Entire Lot | | 8937 METROPOLITAN AVE |

Property Type: DWELLING ONLY - 1 FAMILY

**CROSS REFERENCE DATA**

CRFN_____ or Document ID_____ or _____ Year____ Reel____ Page_____ or File Number_____

**PARTIES**

| GRANTOR/SELLER: | GRANTEE/BUYER: |
|---|---|
| HELEN QUIROZ, DECEASED | RAMON QUIROZ |
| 8937 METROPOLITAN AVE | 8937 METROPOLITAN AVE |
| REGO PARK, NY 11374 | REGO PARK, NY 11374 |

☒ Additional Parties Listed on Continuation Page

**FEES AND TAXES**

| Mortgage | | | | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | Filing Fee: | |
| Taxable Mortgage Amount: | $ | 0.00 | | $ 125.00 |
| Exemption: | | | NYC Real Property Transfer Tax: | |
| TAXES: County (Basic): | $ | 0.00 | | $ 0.00 |
| City (Additional): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| Spec (Additional): | $ | 0.00 | | $ 0.00 |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 52.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

**NYC DEPARTMENT OF FINANCE
OFFICE OF THE CITY REGISTER**



2012040300583001002C4800

**RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION)       PAGE 2 OF 5**

| | | |
|---|---|---|
| Document ID: 2012040300583001 | Document Date: 04-01-2012 | Preparation Date: 04-03-2012 |
| Document Type: DEED | | |

**PARTIES
GRANTOR/SELLER:**
JESSICA A. QUIROZ
8937 METROPOLITAN AVE
REGO PARK, NY  11374

# NYC DEPARTMENT OF FINANCE
# OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2012040300583002001EBAC4

## RECORDING AND ENDORSEMENT COVER PAGE                PAGE 1 OF 14

| | | |
|---|---|---|
| Document ID: 2012040300583002 | Document Date: 04-01-2012 | Preparation Date: 04-03-2012 |
| Document Type: POWER OF ATTORNEY | | |
| Document Page Count: 13 | | |

**PRESENTER:**
JESSICA ANGEL QUIROZ
8937 METROPOLITAN AVE
REGO PARK, NY  11374
347-876-8759
rayorlando1@hotmail.com

**RETURN TO:**
JESSICA ANGEL QUIROZ
8937 METROPOLITAN AVE
REGO PARK, NY  11374
347-876-8759
rayorlando1@hotmail.com

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 3176 | 13 | Entire Lot | 8937 METROPOLITAN AVE |

Property Type: DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

CRFN_____  or  Document ID_____  or  _____ Year____ Reel ___ Page ____  or  File Number_____

### PARTIES

**PARTY ONE:**
JESSICA A. QUIROZ
8937 METROPOLITAN AVE
REGO PARK, NY  11374

**PARTY TWO:**
RAMON QUIROZ
8937 METROPOLITAN AVE
REGO PARK, NY  11374

### FEES AND TAXES

| Mortgage | | | | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | Filing Fee: | |
| Taxable Mortgage Amount: | $ | 0.00 | | $ 0.00 |
| Exemption: | | | NYC Real Property Transfer Tax: | |
| TAXES:  County (Basic): | $ | 0.00 | | $ 0.00 |
| City (Additional): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| Spec (Additional): | $ | 0.00 | | $ 0.00 |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 102.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

4/1/12

12-12020-mg    Doc 7371-1    Filed 07/30/14    Entered 08/05/14 16:42:51    Exhibit A
Automated Power of Attorney by LawDepot.com
Through Pg 42 of 84

# DURABLE POWER OF ATTORNEY FOR FINANCIAL MANAGEMENT

## WARNING TO PERSON EXECUTING THIS DOCUMENT - THE POWERS YOU GRANT BELOW CONTINUE TO BE EFFECTIVE SHOULD YOU BECOME DISABLED OR INCOMPETENT

**CAUTION: This is an important legal document and upon proper execution will create a Durable Power of Attorney. This gives the person whom you designate as your attorney-in-fact broad powers to handle your property during your lifetime, which may include powers to mortgage, sell, or otherwise dispose of any real or personal property without advance notice to you or approval by you.**

**These powers will continue to exist even if you become disabled or incompetent. You do have the right to terminate or revoke the power of attorney and any or all powers granted within at any time up to the point of your incapacity.**

**This document does not authorize anyone to make medical or other health care decisions. You may execute a health care proxy (also known as a health care or medical power of attorney) to do this.**

**If there is anything about this document that you do not understand, you should ask a lawyer to explain it to you.**

## CAUTION TO THE PRINCIPAL:

Your Power of Attorney is an important document. As the "principal," you give the person whom you choose (your "agent") authority to spend your money and sell or dispose of your property during your lifetime without telling you. You do not lose your authority to act even though you have given your agent similar authority.

When your agent exercises this authority, he or she must act according to any instructions you have provided or, where there are no specific instructions, in your best interest. "Important Information for the Agent" at the end of this document describes your agent's responsibilities.

Your agent can act on your behalf only after signing the Power of Attorney before a notary public.

You can request information from your agent at any time. If you are revoking a prior Power of Attorney by executing this Power of Attorney, you should provide written notice of the revocation to your prior agent(s) and to the financial institutions where your accounts are located.

You can revoke or terminate your Power of Attorney at any time for any reason as long as you are of sound mind. If you are no longer of sound mind, a court can remove an agent for acting improperly.

Your agent cannot make health care decisions for you. You may execute a "Health Care Proxy" to do this.

The law governing Powers of Attorney is contained in the New York General Obligations Law, Article 5, Title 15. This law is available at a law library, or online through the New York State Senate or Assembly websites, www.senate.state.ny.us or www.assembly.state.ny.us.

If there is anything about this document that you do not understand, you should ask a lawyer of your own choosing to explain it to you.

**THIS DURABLE POWER OF ATTORNEY for financial management** is given by me, Jesscica Angel Quiroz, presently of 8937 Metropolitan Ave, Rego Park, in the State of New York, on the 1st day of April, 2012.

1. **Nature of Power**
   THIS IS A DURABLE POWER OF ATTORNEY and the authority of my Attorney-in-fact shall not terminate if I become disabled or incapacitated or in the event of later uncertainty as to whether I am dead or alive.

2. **Previous Power of Attorney**
   **I REVOKE** any previous durable power of attorney granted by me.

3. **Agent**
   **I APPOINT** Ramon Quiroz, of 8937 Metropolitan Ave, Rego Park, New York, to act as my Agent.

4. **Governing Laws**
   This instrument will be governed by the laws of the State of New York. Further, my Agent is directed to act in accordance with the laws of the State of New York at any time he or she may be acting on my behalf.

5. **Delegation of Authority**
   My Agent may not delegate any authority granted under this document.

Automated Power of Attorney by LawDepot.com

## 6. Liability of Agent

My Agent will not be liable to me, my estate, my heirs, successors or assigns for any action taken or not taken under this document, except for willful misconduct or gross negligence.

## 7. Effective Date

This Power of Attorney will start immediately and will continue notwithstanding my mental incapacity or mental infirmity which may occur after my execution of this Power of Attorney.

## 8. Powers of Agent

My Agent will have the following power(s):

Initials

 a. **Real Estate Transactions**

> To deal with any interest I may have in real property and sign all documents on my behalf concerning my interest, including, but not limited to, real property I may subsequently acquire or receive. These powers include, but are not limited to, the ability to:
>
> > i. purchase, sell, exchange, accept as gift, place as security on loans, convey with or without covenants, rent, collect rent, sue for and receive rents, eject and remove tenants or other persons, to pay or contest taxes or assessments, control any legal claim in favor of or against me, partition or consent to partitioning, mortgage, charge, lease, surrender, manage or otherwise deal with real estate and any interest therein, and
> >
> > ii. execute and deliver deeds, transfers, mortgages, charges, leases, assignments, surrenders, releases and other instruments required for any such purpose.

 b. **Chattel and Goods Transactions**

> To purchase, sell or otherwise deal with any type of personal property I may currently or in the future have an interest in. This includes, but is not limited to, the power to purchase, sell, exchange, accept as gift, place as security on loans, rent, lease, to pay or contest taxes or assessments, mortgage or pledge.

4/1/12

10-12020-mg    Doc 7371-1    Filed 07/30/14    Entered 08/05/14 16:42:51    Exhibit A
Automated Power of Attorney by LawDepot.com
Through F — Pg 45 of 84

X _____  **c. Banking Transactions**

To do any act that I can do through an agent with a bank or other financial institution. This power includes, but is not limited to, the power to:

    i.  Open, maintain or close bank accounts (including, but not limited to, checking accounts, savings accounts, and certificates of deposit), brokerage accounts, retirement plan accounts, and other similar accounts with financial institutions.

    ii.  Conduct any business with any banking or financial institution with respect to any of my accounts, including, but not limited to, making deposits and withdrawals, negotiating or endorsing any checks or other instruments with respect to any such accounts, obtaining bank statements, passbooks, drafts, money orders, warrants, and certificates or vouchers payable to me by any person, firm, corporation or political entity.

    iii.  Borrow money from any banking or financial institution if deemed necessary by my Agent, and to manage all aspects of the loan process, including the placement of security and the negotiation of terms.

    iv.  Perform any act necessary to deposit, negotiate, sell or transfer any note, security, or draft of the United States of America, including U.S. Treasury Securities.

    v.  Have access to any safe deposit box that I might own, including its contents.

    vi.  Create and deliver any financial statements necessary to or from any bank or financial institution.

X _____  **d. Estate Transactions**

To do any act that I can do through an agent with regard to all matters that affect any trust, probate estate, conservatorship, or other fund which I may receive payment as a beneficiary. This power includes the power to disclaim any interest which might otherwise be transferred or distributed to me from any other person, estate, trust, or other entity, as may be appropriate. However, my Agent cannot disclaim assets to which I would be entitled, if the result is that the disclaimed assets pass directly or indirectly to my Agent or my Agent's estate.

Automated Power of Attorney by LawDepot.com
Through F Page 46 of 84

X  **e. Claims and Litigation Matters**

> To institute, maintain, defend, compromise, arbitrate or otherwise dispose of, any and all actions, suits, attachments or other legal proceedings for or against me. This power includes, but is not limited to, the power to: appear on my behalf or retain an attorney and any other professional personnel necessary to defend or assert any claim before any court, board, or tribunal, and the power to settle any claim against me in whichever forum or manner my Agent deems prudent, and to receive or pay any resulting settlement.

X **f. Government Benefits**

> To act on my behalf in all matters that affect my right to allowances, compensation and reimbursements properly payable to me by the Government of the United States or any agency or department thereof. This power includes, but is not limited to, the power to prepare, file, claim, defend or settle any claim on my behalf and to receive and manage as my Agent sees fit any proceeds of any claim.

X **g. General Authority**

> To do any act or thing that I could do in my own proper person if personally present, including managing or selling tangible assets, disclaiming a probate or nonprobate inheritance and providing support for a minor child or dependent adult. Other specifically enumerated powers are not intended as a limitation on this broad general power.

9. **Agent Compensation**

My Agent will receive no compensation except for the reimbursement of all out of pocket expenses associated with the carrying out of my wishes.

10. **Co-owning of Assets and Mixing of Funds**

My Agent may not mix any funds owned by him or her in with my funds and all assets should remain separately owned if at all possible.

11. **Personal Gain from Managing My Affairs**

My Agent is not allowed to personally gain from any transaction he or she may complete on my behalf.

12. **Agent Restrictions**

4/1/12          12-12020-mg    Doc 7371-1    Filed 07/30/14    Entered 08/05/14 16:42:51    Exhibit A
Automated Power of Attorney by LawDepot.com
Through Attorney by LawDepot.com

This Power of Attorney is not subject to any conditions or restrictions other than those noted above.

13. **Notice to Third Parties**

Any third party who receives a valid copy of this Power of Attorney can rely on and act under it. A third party who relies on the reasonable representations of an Agent as to a matter relating to a power granted by this Power of Attorney will not incur any liability to the principal or to the principal's heirs, assigns, or estate as a result of permitting the Agent to exercise the authority granted by the Power of Attorney up to the point of revocation of the Power of Attorney. Revocation of the Power of Attorney will not be effective as to a third party until the third party receives notice and has actual knowledge of the revocation.

14. **Severability**

If any part of any provision of this instrument is ruled invalid or unenforceable under applicable law, such part will be ineffective to the extent of such invalidity only, without in any way affecting the remaining parts of such provisions or the remaining provisions of this instrument.

15. **Acknowledgment**

I, **Jesscica Angel Quiroz**, being the Principal named in this Durable Power of Attorney for Finances hereby acknowledge:

   a. I have read and understand the nature and effect of this Durable Power of Attorney.

   b. I recognize that this document gives my Agent broad powers over my assets, and that these powers will continue past the point of my incapacity.

   c. I am of legal age in the State of New York to grant a Durable Power of Attorney.

   d. I am voluntarily giving this Durable Power of Attorney and recognize that the powers given in this document will become effective as of the date of my incapacity or as specified within.

**IN WITNESS WHEREOF** I hereunto sign my name at the City of REGO PARK, in the State of New York, this 1st day of April, 2012

**SIGNED, SEALED, AND DELIVERED** in the presence of:

WITNESS (Sign and Print)

80-17 Myrtle Ave, 2nd Fl, NY 11385
ADDRESS

Rose Kazane + ROSE KAZANE
WITNESS (Sign and Print)

89-37 METROPOLITAN AVE.
ADDRESS    REGO PARK, N.Y. 11374

Jesscica Angel Quiroz

# NOTARY ACKNOWLEDGEMENT

State of New York          )

                          ) ss.

County of _Queens_____     )

On this 1st day of April, 2012, before me, the undersigned, a Notary Public in and for said state, personally appeared Jesscica Angel Quiroz, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual, acted, executed the instrument.

_____
Notary Public

My commission expires:
_12/13/2012_____

SAMANTHA WILLIAMS
Notary Public, State of New York
No. 01WI6119979
Qualified in Queens County
Commission Expires December 13, 2012

4/1/12   12-12020-mg   Doc 7371-1   Filed 07/30/14   Entered 08/05/14 16:42:51   Exhibit A
Automated Power of Attorney by LawDepot.com
through Attorney by 50 of 84.com

# IMPORTANT INFORMATION FOR THE AGENT:

When you accept the authority granted under this Power of Attorney, a special legal relationship is created between you and the principal. This relationship imposes on you legal responsibilities that continue until you resign or the Power of Attorney is terminated or revoked. You must:

(1) act according to any instructions from the principal, or, where there are no instructions, in the principal's best interest;

(2) avoid conflicts that would impair your ability to act in the principal's best interest;

(3) keep the principal's property separate and distinct from any assets you own or control, unless otherwise permitted by law;

(4) keep a record or all receipts, payments, and transactions conducted for the principal; and

(5) disclose your identity as an agent whenever you act for the principal by writing or printing the principal's name and signing your own name as "agent" in either of the following manner:

> (Principal's Name) by (Your Signature) as Agent; or
>
> (Your Signature) as Agent for (Principal's Name).

You may not use the principal's assets to benefit yourself or give major gifts to yourself or anyone else unless the principal has specifically granted you that authority in this Power of Attorney or in a Statutory Major Gifts Rider attached to this Power of Attorney. If you have that authority, you must act according to any instructions of the principal or, where there are no such instructions, in the principal's best interest. You may resign by giving written notice to the principal and to any co-agent, successor agent, monitor if one has been named in this document, or the principal's guardian if one has been appointed. If there is anything about this document or your responsibilities that you do not understand, you should seek legal advice.

Liability of agent:

The meaning of the authority given to you is defined in New York's General Obligations Law, Article 5, Title 15. If it is found that you have violated the law or acted outside the authority granted to you in the Power of Attorney, you may be liable under the law for your violation.

# AGENT'S SIGNATURE AND ACKNOWLEDGMENT OF APPOINTMENT:

It is not required that the principal and the agent(s) sign at the same time, nor that multiple agents sign at the same time.

I, Ramon Quiroz, have read the foregoing Power of Attorney. I am the person identified therein as agent for the principal named therein.

I acknowledge my legal responsibilities.

Ramon Quiroz

# NOTARY ACKNOWLEDGEMENT

State of New York            )

                             ) ss.

County of _Queens_           )

On this 1st day of April, 2012, before me, the undersigned, a Notary Public in and for said state, personally appeared Ramon Quiroz, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual, acted, executed the instrument.

_____
Notary Public

My commission expires:
_12/13/2012_

SAMANTHA WILLIAMS
Notary Public, State of New York
No. 01WI6119979
Qualified in Queens County
Commission Expires December 13, 2012

# WITNESS CERTIFICATE

I, _Edward Cesereus_ currently residing at
_80-17 Myrtle Ave, 2nd Fl_ , in the City of _Queens_ , in the
State of _New York_ , hereby acknowledge that:

1. I witnessed the signing of the Power of Attorney of Jesscica Angel Quiroz dated this 1st day of April, 2012.

2. I am an adult with capacity to witness the signing of the Power of Attorney.

3. In my opinion Jesscica Angel Quiroz had the capacity to understand the nature and effect of the Power of Attorney at the time the Power of Attorney was signed and signed it freely and voluntarily without any compulsion or influence from any person.

4. I am not the Attorney named in the Power of Attorney nor am I the Attorney's spouse or other family member.

_____        _04-03-12_____
(Signature of witness)                (Date)

Automated Power of Attorney by LawDepot.com

# <u>WITNESS CERTIFICATE</u>

I, _ROSE KAZANE_____, currently residing at
_89-37 METROPOLITAN Ave,_____, in the City of ____REGO PARK NEW YORK____, in the
State of _N.Y._____, hereby acknowledge that:

1. I witnessed the signing of the Power of Attorney of Jesscica Angel Quiroz dated this 1st day of April, 2012.

2. I am an adult with capacity to witness the signing of the Power of Attorney.

3. In my opinion Jesscica Angel Quiroz had the capacity to understand the nature and effect of the Power of Attorney at the time the Power of Attorney was signed and signed it freely and voluntarily without any compulsion or influence from any person.

4. I am not the Attorney named in the Power of Attorney nor am I the Attorney's spouse or other family member.

_Rose Kazane_____          _4-03-12_____
(Signature of witness)          (Date)

the title to said premises;

Fifth. That said Helen Quiroz, deceased, married of 8937 Metropolitan Ave Rego Park NY 11374, and Jessica Angel Quiroz, not married of 8937 Metropolitan Ave will forever warrant the title to said premises.

Signed, Sealed and Delivered
In the Presence of:

Sign: _Rose Kazane_
Name: ROSE KAZANE

Sign: _Deceased_
Name: Eduard Cespedes

Helen Quiroz, deceased

_Jessica Angel Quiroz_

## Preparer

This document prepared:

    1. [ ] under the supervision of the following New York attorney.
    OR
    2. [ ] by a party to this instrument whose name and address appear below.

Signature: _____
Name: _____  Company/Firm: _____
Address: _____
City: _____  State: _____  Zip: _____
Phone: ( ) _____

Signed, Sealed and Delivered
In the Presence of:

Ramon Quiroz

Sign: _Rose Kazane_
Name: ROSE KAZANE

Sign: _____
Name: Eduard Cespedes

## Grantor Acknowledgment

State of New York                              )
                                               )
County of __Queens__

On the __3__ day of __April__ in the year __2012__ before me __Jessica Quiroz__ Jessica Samantha Williams, the ~~Notary Public~~
undersigned, personally appeared ~~Helen Quiroz, deceased,~~ and Jessica Angel Quiroz, personally known
to me or proved to me on the basis of satisfactory evidence to be the individuals whose names are
subscribed to the within instrument and acknowledged to me that they executed the same in their
capacities, and that by their signatures on the instrument, the individuals, or the person upon behalf of
which the individuals acted, executed the instrument.

In presence of _____
                        Notary Public

## Grantee Acknowledgment

State of New York                              )
                                               )
County of _____

On the _____ day of _____ in the year_____ before me _____, the
undersigned, personally appeared Ramon Quiroz, personally known to me or proved to me on the basis
of satisfactory evidence to be the individual whose name is subscribed to the within instrument and
acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on
the instrument, the individual, or the person upon behalf of which the individual acted, executed the
instrument.

In presence of _____
                        Notary Public

©2002-2012 LawDepot.com™

**Warranty Deed**

This indenture, made the 10th day of April, 2012, between Jessica Angel Quiroz, not married of 8937 Metropolitan Ave Rego Park NY 11374, party of the first part, and Ramon Quiroz, not married of 8937 Metropolitan Ave Rego Park NY 11374, party of the second part:

Witnesseth, that the party of the first part, in consideration of 10.00 dollars, lawful money of the United States, paid by the party of the second part, does hereby grant, and release unto the party of the second part, Ramon Quiroz, not married of 8937 Metropolitan Ave Rego Park NY 11374 and assigns forever, all of:

PROPERTY DATA
Borough QUEENS
Block 3176 Lot 13
89-37 Metropolitan Avenue
Property type
DWELLING ONLY-1 FAMILY.

together with the appurtenances and all the estate and rights of the party of the first part in and to said premises, previously referenced as follows: Book crfn #, Page 2005000431463, Document No. i)7-8-05 R)8-2-05, of the recorder of Queens county.

To have and to hold the premises herein granted unto the party of the second part, and assigns forever with said five covenants as follows:

First. That said Jessica Angel Quiroz, not married of 8937 Metropolitan Ave Rego Park NY 11374 is seized of said premises in fee simple, and has good right to convey the same;

Second. That the party of the second part shall quietly enjoy the said premises;

Third. That the said premises are free from incumbrances;

Fourth. That the party of the first part will execute or procure any further necessary assurance of the title to said premises;

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2012040300583000002P457C

| PAYMENT COVER PAGE | PAGE 1 OF 1 |
|---|---|

Transaction No.: **2012040300583**    Document Date: 04-01-2012    Preparation Date: 04-03-2012

**PRESENTER:**
JESSICA ANGEL QUIROZ
8937 METROPOLITAN AVE
REGO PARK, NY 11374
347-876-8759
rayorlando1@hotmail.com

**RETURN TO:**
JESSICA ANGEL QUIROZ
8937 METROPOLITAN AVE
REGO PARK, NY 11374
347-876-8759
rayorlando1@hotmail.com

| Document ID: 2012040300583001 | Fees | $ | 177.00 | |
|---|---|---|---|---|
| DEED | Taxes | $ | 0.00 | |
| | | $ | 177.00 | Document Total |

| Document ID: 2012040300583002 | Fees | $ | 102.00 | |
|---|---|---|---|---|
| POWER OF ATTORNEY | Taxes | $ | 0.00 | |
| | | $ | 102.00 | Document Total |
| | | $ | 279.00 | Transaction Total |
| | | $ | 0.00 | Amount Paid |
| | | $ | **279.00** | **Balance Due** |

279.00

the title to said premises;

Fifth. That said Helen Quiroz, deceased, married of 8937 Metropolitan Ave Rego Park NY 11374, and Jessica Angel Quiroz, not married of 8937 Metropolitan Ave will forever warrant the title to said premises.

Signed, Sealed and Delivered
In the Presence of:

Sign: *Rose Kazane*
Name: R.O.S.E KAZANE

Sign:
Name: EDWARD CESCUE

_____
Helen Quiroz, deceased

_____
Jessica Angel Quiroz

## Preparer

This document prepared:

    1. [  ] under the supervision of the following New York attorney.
    OR
    2. [X] by a party to this instrument whose name and address appear below.

Signature: *Ramon Quiroz*
Name: RAMON QUIROZ          Company/Firm:
Address: 89-37 METROPOLITAN AVE
City: REGO PARK    State: N.Y.    Zip: 11374
Phone: (718) 275-2192

Signed, Sealed and Delivered
In the Presence of:

Sign: *Rose Kazane*
Name: ROSE KAZANE

Sign:
Name: EDWARD CESCUE

*Ramon Quiroz*
Ramon Quiroz

## Grantor Acknowledgment

State of New York )
)
County of Queens )

On the 11 day of April in the year 2012 before me _____, the undersigned, personally appeared Helen Quiroz, deceased, and Jessica Angel Quiroz, personally known to me or proved to me on the basis of satisfactory evidence to be the individuals whose names are subscribed to the within instrument and acknowledged to me that they executed the same in their capacities, and that by their signatures on the instrument, the individuals, or the person upon behalf of which the individuals acted, executed the instrument.

In presence of _____
Notary Public

SAMANTHA WILLIAMS
Notary Public, State of New York
No. 01WI6119979
Qualified in Queens County
Commission Expires December 13, 2012

## Grantee Acknowledgment

State of New York )
)
County of Queens )

On the 11 day of April in the year 2012 before me _____, the undersigned, personally appeared Ramon Quiroz, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

In presence of _____
Notary Public

SAMANTHA WILLIAMS
Notary Public, State of New York
No. 01WI6119979
Qualified in Queens County
Commission Expires December 13, 2012

©2002-2012 LawDepot.com™

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2012040300583001002S8401

| SUPPORTING DOCUMENT COVER PAGE | | PAGE 1 OF 1 |
|---|---|---|
| Document ID: 2012040300583001 | Document Date: 04-01-2012 | Preparation Date: 04-03-2012 |
| Document Type: DEED | | |

**ASSOCIATED TAX FORM ID: 2012040300157**

**SUPPORTING DOCUMENTS SUBMITTED:**

| | Page Count |
|---|---|
| DEP CUSTOMER REGISTRATION FORM FOR WATER AND SEWER BILLING | 1 |
| MISCELLANEOUS | 1 |
| RP - 5217 REAL PROPERTY TRANSFER REPORT | 3 |
| SMOKE DETECTOR AFFIDAVIT | 1 |

**REAL PROPERTY TRANSFER REPORT**
STATE OF NEW YORK
STATE BOARD OF REAL PROPERTY SERVICES

**RP - 5217NYC**

**FOR CITY USE ONLY**

| C1. County Code | | C2. Date Deed Recorded | | | |
|---|---|---|---|---|---|

Month    Day    Year

C3. Book OR

C4. Page

C5. CRFN

**PROPERTY INFORMATION**

1. Property Location    8937    METROPOLITAN AVE    QUEENS    11374
   STREET NUMBER    STREET NAME    BOROUGH    ZIP CODE

2. Buyer Name    QUIROZ    RAMON
   LAST NAME / COMPANY    FIRST NAME

   LAST NAME / COMPANY    FIRST NAME

3. Tax Billing Address    Indicate where future Tax Bills are to be sent if other than buyer address (at bottom of form)
   LAST NAME / COMPANY    FIRST NAME

   STREET NUMBER AND STREET NAME    CITY OR TOWN    STATE    ZIP CODE

4. Indicate the number of Assessment Roll parcels transferred on the deed    1    # of Parcels OR ☐ Part of a Parcel

   4A. Planning Board Approval - N/A for NYC
   4B. Agricultural District Notice - N/A for NYC

5. Deed Property Size    FRONT FEET    X    DEPTH    OR    ACRES

   Check the boxes below as they apply:
   6. Ownership Type is Condominium    ☐
   7. New Construction on Vacant Land    ☐

8. Seller Name    QUIROZ, DECEASED    HELEN
   LAST NAME / COMPANY    FIRST NAME

   QUIROZ    JESSICA A
   LAST NAME / COMPANY    FIRST NAME

9. Check the box below which most accurately describes the use of the property at the time of sale:

A ✔ One Family Residential    C ☐ Residential Vacant Land    E ☐ Commercial Apartment    G ☐ Entertainment / Amusement    I ☐ Industrial
B ☐ 2 or 3 Family Residential    D ☐ Non-Residential Vacant Land    F ☐    H ☐ Community Service    J ☐ Public Service

**SALE INFORMATION**

10. Sale Contract Date    4 / 1 / 2012
    Month    Day    Year

11. Date of Sale / Transfer    4 / 1 / 2012
    Month    Day    Year

12. Full Sale Price $    0
    ( Full Sale Price is the total amount paid for the property including personal property. This payment may be in the form of cash, other property or goods, or the assumption of mortgages or other obligations.)  Please round to the nearest whole dollar amount.

13. Indicate the value of personal property included in the sale

14. Check one or more of these conditions as applicable to transfer:

A ✔ Sale Between Relatives or Former Relatives
B ☐ Sale Between Related Companies or Partners in Business
C ☐ One of the Buyers is also a Seller
D ☐ Buyer or Seller is Government Agency or Lending Institution
E ☐ Deed Type not Warranty or Bargain and Sale (Specify Below )
F ☐ Sale of Fractional or Less than Fee Interest ( Specify Below )
G ☐ Significant Change in Property Between Taxable Status and Sale Dates
H ☐ Sale of Business is Included in Sale Price
I ☐ Other Unusual Factors Affecting Sale Price ( Specify Below )
J ☐ None

**ASSESSMENT INFORMATION - Data should reflect the latest Final Assessment Roll and Tax Bill**

15. Building Class    A, 5    16. Total Assessed Value (of all parcels in transfer)    2 0 6 0 1

17. Borough, Block and Lot / Roll Identifier(s)  ( If more than three, attach sheet with additional identifier(s) )

    QUEENS 3176 13



**CERTIFICATION**

I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and understand that the making of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments.

**BUYER**                                    **BUYER'S ATTORNEY**

BUYER SIGNATURE                              DATE          LAST NAME                  FIRST NAME
8937 METROPOLITAN AVE

STREET NUMBER        STREET NAME (AFTER SALE)              AREA CODE    TELEPHONE NUMBER
                                                          **SELLER**
REGO PARK

CITY OR TOWN          NY      11374                       SELLER SIGNATURE                     DATE
                     STATE    ZIP CODE

2012040300157201

Form RP-5217 NYC

# CERTIFICATION

I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and understand that the making of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments.

## BUYERS

| Buyer Signature | Date |
|---|---|
| Buyer Signature | Date |
| Buyer Signature | Date |
| Buyer Signature | Date |
| Buyer Signature | Date |
| Buyer Signature | Date |
| Buyer Signature | Date |
| Buyer Signature | Date |
| Buyer Signature | Date |
| Buyer Signature | Date |
| Buyer Signature | Date |
| Buyer Signature | Date |
| Buyer Signature | Date |
| Buyer Signature | Date |
| Buyer Signature | Date |
| Buyer Signature | Date |
| Buyer Signature | Date |
| Buyer Signature | Date |
| Buyer Signature | Date |

## SELLERS

| Seller Signature | Date |
|---|---|
| Seller Signature | Date |
| Seller Signature | Date |
| Seller Signature | Date |
| Seller Signature | Date |
| Seller Signature | Date |
| Seller Signature | Date |
| Seller Signature | Date |
| Seller Signature | Date |
| Seller Signature | Date |
| Seller Signature | Date |
| Seller Signature | Date |
| Seller Signature | Date |
| Seller Signature | Date |
| Seller Signature | Date |
| Seller Signature | Date |
| Seller Signature | Date |
| Seller Signature | Date |

2012040300157201

# AFFIDAVIT OF COMPLIANCE
## WITH SMOKE DETECTOR REQUIREMENT
## FOR ONE- AND TWO-FAMILY DWELLINGS

State of New York    )
                ) SS.:
County of           )

The undersigned, being duly sworn, depose and say under penalty of perjury that they are the grantor and grantee of the real property or of the cooperative shares in a cooperative corporation owning real property located at

| 8937 METROPOLITAN AVE | | | | |
|---|---|---|---|---|
| Street Address | | | , | Unit/Apt. , |
| QUEENS | New York, | 3176 | 13 | (the "Premises"); |
| Borough | | Block | Lot | |

That the Premises is a one or two family dwelling, or a cooperative apartment or condominium unit in a one- or two-family dwelling, and that installed in the Premises is an approved and operational smoke detecting device in compliance with the provisions of Article 6 of Subchapter 17 of Chapter 1 of Title 27 of the Administrative Code of the City of New York concerning smoke detecting devices;

That they make affidavit in compliance with New York City Administrative Code Section 11-2105 (g). (The signatures of at least one grantor and one grantee are required, and must be notarized).

| Name of Grantor (Type or Print) | Name of Grantee (Type or Print) |
|---|---|
| Signature of Grantor | Signature of Grantee |

Sworn to before me
this _____ date of _____ ·20 _____

Sworn to before me
this _____ date of _____ 20 _____

These statements are made with the knowledge that a willfully false representation is unlawful and is punishable as a crime of perjury under Article 210 of the Penal Law.

**NEW YORK CITY REAL PROPERTY TRANSFER TAX RETURNS FILED ON OR AFTER FEBRUARY 6th, 1990, WITH RESPECT TO THE CONVEYANCE OF A ONE- OR TWO-FAMILY DWELLING, OR A COOPERATIVE APARTMENT OR A CONDOMINIUM UNIT IN A ONE- OR TWO-FAMILY DWELLING, WILL NOT BE ACCEPTED FOR FILING UNLESS ACCOMPANIED BY THIS AFFIDAVIT.**

1



**The City of New York**
**Department of Environmental Protection**
**Bureau of Customer Services**
**59-17 Junction Boulevard**
**Flushing, NY  11373-5108**

# Customer Registration Form for Water and Sewer Billing

## Property and Owner Information:

(1)  **Property receiving service:** BOROUGH:  QUEENS          BLOCK: 3176          LOT: 13

(2)  **Property Address:** 8937 METROPOLITAN AVE, QUEENS, NY 11374

(3)  **Owner's Name:**    QUIROZ , RAMON

   **Additional Name:**

## Affirmation:

  Your water & sewer bills will be sent to the property address shown above.

## Customer Billing Information:

**Please Note:**

A.  Water and sewer charges are the legal responsibility of the owner of a property receiving water and/or sewer service. The owner's responsibility to pay such charges is not affected by any lease, license or other arrangement, or any assignment of responsibility for payment of such charges. Water and sewer charges constitute a lien on the property until paid. In addition to legal action against the owner, a failure to pay such charges when due may result in foreclosure of the lien by the City of New York, the property being placed in a lien sale by the City or Service Termination.

B.  Original bills for water and/or sewer service will be mailed to the owner, **at the property address or to an alternate mailing address.** DEP will provide a duplicate copy of bills to one other party (such as a managing agent), however, any failure or delay by DEP in providing duplicate copies of bills shall in no way relieve the owner from his/her liability to pay all outstanding water and sewer charges. Contact DEP at (718) 595-7000 during business hours or visit www.nyc.gov/dep to provide us with the other party's information.

## Owner's Approval:

The undersigned certifies that he/she/it is the owner of the property receiving service referenced above; that he/she/it has read and understands Paragraphs A & B under the section captioned "Customer Billing Information"; and that the information supplied by the undersigned on this form is true and complete to the best of his/her/its knowledge.

Print Name of Owner:

Signature: _____Date (mm/dd/yyyy)

Name and Title of Person Signing for Owner, if applicable:

BCS-7CRF-ACRIS  REV. 8/08

2012040300157101

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2012040300583001100216D80

| REAL PROPERTY TRANSFER TAX COVER PAGE | PAGE 1 OF 1 |
|---|---|

Document ID: 2012040300583001    Document Date: 04-01-2012    Preparation Date: 04-03-2012
Document Type: DEED

**PARTIES**

**FIRST GRANTOR/SELLER:**
HELEN QUIROZ, DECEASED
8937 METROPOLITAN AVE
REGO PARK, NY  11374

**FIRST GRANTEE/BUYER:**
RAMON QUIROZ
8937 METROPOLITAN AVE
REGO PARK, NY  11374

**ASSOCIATED TAX FORM ID:  201204030015710101**

**RPTT SUPPORTING DOCUMENTS SUBMITTED:**

Page Count



**NYC** **N Y C** NEW YORK CITY DEPARTMENT OF FINANCE
Finance **RPT** **REAL PROPERTY TRANSFER TAX RETURN**
(Pursuant to Title 11, Chapter 21, NYC Administrative Code)

## GRANTOR ▼

● Name
HELEN QUIROZ, DECEASED

● Grantor is a(n): ☑ individual ☐ partnership (must complete Schedule 3)
(check one) ☐ corporation ☐ other _____

Telephone Number

● Permanent mailing address *after* transfer (number and street)  8937 METROPOLITAN AVE

● City and State
REGO PARK, NY

Zip Code
11374

● EMPLOYER IDENTIFICATION NUMBER  ☐ ☐ - ☐ ☐ ☐ ☐ ☐ ☐ ☐    **OR**    ● SOCIAL SECURITY NUMBER  1 0 9 - 4 0 - 3 9 1 3

▼ DO NOT WRITE IN THIS SPACE
FOR OFFICE USE ONLY ▼

● RETURN NUMBER ▲

## GRANTEE ▼

● Name
RAMON QUIROZ

● Grantee is a(n): ☑ individual ☐ partnership (must complete Schedule 3)
(check one) ☐ corporation ☐ other _____

Telephone Number

● Permanent mailing address *after* transfer (number and street)  8937 METROPOLITAN AVE

● City and State
REGO PARK, NY

Zip Code
11374

● EMPLOYER IDENTIFICATION NUMBER  ☐ ☐ - ☐ ☐ ☐ ☐ ☐ ☐ ☐    **OR**    ● SOCIAL SECURITY NUMBER  0 5 5 - 4 4 - 3 1 8 5

● DEED SERIAL NUMBER ▲

● NYS REAL ESTATE TRANSFER TAX PAID ▲

## PROPERTY LOCATION ▼

LIST EACH LOT SEPARATELY. ATTACH A RIDER IF ADDITIONAL SPACE IS REQUIRED

| ● Address (number and street) | Apt. No. | Borough | Block | Lot | # of Floors | Square Feet | ● Assessed Value of Property |
|---|---|---|---|---|---|---|---|
| 8937 METROPOLITAN AVE | | QUEENS | 3176 | 13 | 2 | 1,440 | 20,601.00 |
| | | | | | | | |
| | | | | | | | |

● DATE OF TRANSFER TO GRANTEE:  4/1/2012      ● PERCENTAGE OF INTEREST TRANSFERRED:  100  %

## CONDITION OF TRANSFER ▼ See Instructions

● Check (✓) all of the conditions that apply and fill out the appropriate schedules on pages 5-11 of this return. Additionally, Schedules1 and 2 must be completed for all transfers.

a.  ☐.....Arms length transfer
b.  ☐.....Transfer in exercise of option to purchase
c.  ☐.....Transfer from cooperative sponsor to cooperative corporation
d.  ☐.....Transfer by referee or receiver (complete Schedule A, page 5)
e.  ☐.....Transfer pursuant to marital settlement agreement or divorce decree
f.  ☐.....Deed in lieu of foreclosure (complete Schedule C, page 6)
g.  ☐.....Transfer pursuant to liquidation of an entity (complete Schedule D, page 6)
h.  ☐.....Transfer from principal to agent, dummy, strawman or
           conduit or vice-versa (complete Schedule E, page 7)
i.  ☐.....Transfer pursuant to trust agreement or will (attach a copy of trust agreement or will)
j.  ☐.....Gift transfer not subject to indebtedness
k.  ☐.....Gift transfer subject to indebtedness
l. *☐.....Transfer to a business entity in exchange for an interest in the business entity
           (complete Schedule F, page 7)

m.  ☐.....Transfer to a governmental body
n.  ☐.....Correction deed
o.  ☐.....Transfer by or to a tax exempt organization (complete Schedule G, page 8).
p.  ☐.....Transfer of property party within and partly without NYC
q.  ☐.....Transfer of successful bid pursuant to foreclosure
r.  ☐.....Transfer by borrower solely as security for a debt or a transfer by lender solely to return
           such security
s.  ☐.....Transfer wholly or partly exempt as a mere change of identity or form of ownership.
           Complete Schedule M, page 9)
t.  ☐.....Transfer to a REIT or to a corporation or partnership controlled by a REIT.
           (Complete Schedule R, pages 10 and 11)
u.  ☐.....Other transfer in connection with financing (describe): _____
v.  ☑.....Other (describe):  FAMILY TRANSFER

3
—

Form NYC-RPT

Page 2

| ● TYPE OF PROPERTY (✓) | ● TYPE OF INTEREST (✓) |
|---|---|

**TYPE OF PROPERTY (✓)**

- a. ☑ ......... 1-3 family house
- b. ☐ ......... Individual residential condominium unit
- c. ☐ ......... Individual cooperative apartment
- d. ☐ ......... Commercial condominium unit
- e. ☐ ......... Commercial cooperative
- f. ☐ ......... Apartment building
- g. ☐ ......... Office building
- h. ☐ ......... Industrial building
- i. ☐ ......... Utility
- j. ☐ ......... OTHER. (describe)

**TYPE OF INTEREST (✓)**

Check box at LEFT if you intend to record a document related to this transfer. Check box at RIGHT if you do not intend to record a document related to this transfer.

| | REC. | | NON REC. |
|---|---|---|---|
| a. | ☑ | Fee | ☐ |
| b. | ☐ | Leasehold Grant | ☐ |
| c. | ☐ | Leasehold Assignment or Surrender | ☐ |
| d. | ☐ | Easement | ☐ |
| e. | ☐ | Subterranean Rights | ☐ |
| f. | ☐ | Development Rights | ☐ |
| g. | ☐ | Stock | ☐ |
| h. | ☐ | Partnership Interest | ☐ |
| i. | ☐ | OTHER. (describe): | ☐ |

## SCHEDULE 1 - DETAILS OF CONSIDERATION

COMPLETE THIS SCHEDULE FOR ALL TRANSFERS AFTER COMPLETING THE APPROPRIATE SCHEDULES ON PAGES 5 THROUGH 11. ENTER "ZERO" ON LINE 11 IF THE TRANSFER REPORTED WAS WITHOUT CONSIDERATION.

| | | |
|---|---|---|
| 1. Cash | 1. | 0 00 |
| 2. Purchase money mortgage | 2. | 0 00 |
| 3. Unpaid principal of pre-existing mortgage(s) | 3. | 0 00 |
| 4. Accrued interest on pre-existing mortgage(s) | 4. | 0 00 |
| 5. Accrued real estate taxes | 5. | 0 00 |
| 6. Amounts of other liens on property | 6. | 0 00 |
| 7. Value of shares of stock or of partnership interest received | 7. | 0 00 |
| 8. Value of real or personal property received in exchange | 8. | 0 00 |
| 9. Amount of Real Property Transfer Tax and/or other taxes or expenses of the grantor which are paid by the grantee | 9. | 0 00 |
| 10. Other (describe): | 10. | 0 00 |
| 11. **TOTAL CONSIDERATION** (add lines 1 through 10 - must equal amount entered on line 1 of Schedule 2) (see instructions) | 11. $ | 0 00 |

See instructions for special rules relating to transfers of cooperative units, liquidations, marital settlements and transfers of property to a business entity in return for an interest in the entity.

## SCHEDULE 2 - COMPUTATION OF TAX

| A. Payment | Pay amount shown on line 12 - See Instructions | | Payment Enclosed |
|---|---|---|---|
| 1. Total Consideration (from line 11, above) | 1. | | 0 00 |
| 2. Excludable liens (see instructions) | 2. | | 0 00 |
| 3. Consideration (Line 1 less line 2) | 3. | | 0 00 |
| 4. Tax Rate (see instructions) | 4. | | 0 % |
| 5. Percentage change in beneficial ownership (see instructions) | 5. | | 100 % |
| 6. Taxable consideration (multiply line 3 by line 5) | 6. | | 0 00 |
| 7. Tax (multiply line 6 by line 4) | 7. | | 0 00 |
| 8. Credit (see instructions) | 8. | | 0 00 |
| 9. Tax due (line 7 less line 8) (if the result is negative, enter zero) | 9. | | 0 00 |
| 10. Interest (see instructions) | 10. | | 0 00 |
| 11. Penalty (see instructions) | 11. | | 0 00 |
| 12. **Total Tax Due** (add lines 9, 10 and 11) | 12. $ | | 0 00 |

4

Form NYC-RPT

Page 3

## SCHEDULE 3 - TRANSFERS INVOLVING MULTIPLE GRANTORS AND/OR GRANTEES OR A PARTNERSHIP ▼

**NOTE** | If additional space is needed, attach copies of this schedule or an addendum listing all of the information required below.

### GRANTOR(S)/PARTNER(S)

NAME  JESSICA A QUIROZ

PERMANENT MAILING ADDRESS AFTER TRANSFER    8937 METROPOLITAN AVE

CITY AND STATE
REGO PARK , NY

ZIP CODE    11374

SOCIAL SECURITY NUMBER
5 9 3 - 7 8 - 3 4 7 3
OR
EMPLOYER IDENTIFICATION NUMBER

---

NAME

PERMANENT MAILING ADDRESS AFTER TRANSFER

CITY AND STATE

ZIP CODE

SOCIAL SECURITY NUMBER
OR
EMPLOYER IDENTIFICATION NUMBER

---

NAME

PERMANENT MAILING ADDRESS AFTER TRANSFER

CITY AND STATE

ZIP CODE

SOCIAL SECURITY NUMBER
OR
EMPLOYER IDENTIFICATION NUMBER

---

NAME

PERMANENT MAILING ADDRESS AFTER TRANSFER

CITY AND STATE

ZIP CODE

SOCIAL SECURITY NUMBER
OR
EMPLOYER IDENTIFICATION NUMBER

### GRANTEE(S)/PARTNER(S)

NAME

PERMANENT MAILING ADDRESS AFTER TRANSFER

CITY AND STATE

ZIP CODE

SOCIAL SECURITY NUMBER
OR
EMPLOYER IDENTIFICATION NUMBER

---

NAME

PERMANENT MAILING ADDRESS AFTER TRANSFER

CITY AND STATE

ZIP CODE

SOCIAL SECURITY NUMBER
OR
EMPLOYER IDENTIFICATION NUMBER

---

NAME

PERMANENT MAILING ADDRESS AFTER TRANSFER

CITY AND STATE

ZIP CODE

SOCIAL SECURITY NUMBER
OR
EMPLOYER IDENTIFICATION NUMBER

---

NAME

PERMANENT MAILING ADDRESS AFTER TRANSFER

CITY AND STATE

ZIP CODE

SOCIAL SECURITY NUMBER
OR
EMPLOYER IDENTIFICATION NUMBER

201204030015710101

Form NYC-RPT

Page 4

## GRANTOR'S ATTORNEY ▼

Name of Attorney

Address (number and street)

Telephone Number
(    )

City and State

Zip Code

EMPLOYER IDENTIFICATION NUMBER

**OR**

SOCIAL SECURITY NUMBER

## GRANTEE'S ATTORNEY ▼

Name of Attorney

Address (number and street)

Telephone Number
(    )

City and State

Zip Code

EMPLOYER IDENTIFICATION NUMBER

**OR**

SOCIAL SECURITY NUMBER

## CERTIFICATION ▼

I swear or affirm that this return, including any accompanying schedules, affidavits and attachments, has been examined by me and is, to the best of my knowledge, a true and complete return made in good faith, pursuant to Title 11, Chapter 21 of the Administrative Code and the regulations issued thereunder.

### GRANTOR

Sworn to and subscribed to

before me on this _____ day

of _____, _____.

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
EMPLOYER IDENTIFICATION NUMBER OR SOCIAL SECURITY NUMBER
HELEN QUIROZ, DECEASED

Name of Grantor

Signature of Notary

Signature of Grantor

Notary's stamp or seal

### GRANTEE

Sworn to and subscribed to

before me on this _____ day

of _____, _____.

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
EMPLOYER IDENTIFICATION NUMBER OR SOCIAL SECURITY NUMBER
RAMON QUIROZ

Name of Grantee

Signature of Notary

Signature of Grantee

Notary's stamp or seal

6

Form NYC- RPT

# CERTIFICATION

I swear or affirm that this return, including any accompanying schedules, affidavits and attachments, has been examined by me and is, to the best of myknowledge, a true and complete return made in good faith, pursuant to Title 11, Chapter 21 of the Administrative Code and the regulations issued thereunder.

## GRANTORS

| 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 | JESSICA A QUIROZ | |
|---|---|---|
| EIN/SSN | Name of Grantor | Signature of Grantor |
| EIN/SSN | Name of Grantor | Signature of Grantor |
| EIN/SSN | Name of Grantor | Signature of Grantor |
| EIN/SSN | Name of Grantor | Signature of Grantor |
| EIN/SSN | Name of Grantor | Signature of Grantor |
| EIN/SSN | Name of Grantor | Signature of Grantor |
| EIN/SSN | Name of Grantor | Signature of Grantor |
| EIN/SSN | Name of Grantor | Signature of Grantor |
| EIN/SSN | Name of Grantor | Signature of Grantor |

## GRANTEES

| EIN/SSN | Name of Grantee | Signature of Grantee |
|---|---|---|
| EIN/SSN | Name of Grantee | Signature of Grantee |
| EIN/SSN | Name of Grantee | Signature of Grantee |
| EIN/SSN | Name of Grantee | Signature of Grantee |
| EIN/SSN | Name of Grantee | Signature of Grantee |
| EIN/SSN | Name of Grantee | Signature of Grantee |
| EIN/SSN | Name of Grantee | Signature of Grantee |
| EIN/SSN | Name of Grantee | Signature of Grantee |
| EIN/SSN | Name of Grantee | Signature of Grantee |

2012040300157101

Form NYC-RPT

Page 9

## SCHEDULE I - TRANSFERS PURSUANT TO A SEPARATION AGREEMENT, MARITAL SETTLEMENT AGREEMENT OR DIVORCE DECREE

**NOTE** The consideration for a transfer pursuant to a separation agreement, marital settlement agreement or divorce decree includes the value of any marital rights exchanged for the property or economic interest as well as any other types of consideration paid by the grantee for the transfer. The consideration **will be presumed to be equal to the fair market value of the portion of the property or interest transferred,** unless you establish the consideration to be a different amount.

1. What was the fair market value of property at the time of transfer? .................................................. $ 0.00

2. Is the property a 1, 2 or 3 family house, residential condominium or residential cooperative apartment? ..  ☐ YES   ☐ NO

   If yes, was there a mortgage on the property at the time of transfer? ........................................  ☐ YES   ☐ NO

   If yes, what was the balance due? (Enter also on Schedule 2, line 2) .................................................. $ 0.00

3. What was the Grantor's percentage of ownership at the time of the transfer? .................................................. _____ %
   If the transfer was between husband and wife jointly as Grantor and either husband or wife individually as Grantee it is presumed that the percentage of ownership transferred will be 50% unless the deed specifies another percentage.

4. *Rebuttable Presumption of Fair Market Value:* if the marital settlement agreement, separation agreement or divorce decree specifies a value for the portion of the property or interest transferred that is different from fair market value, enter that value here. You may choose to submit relevant portions of your separation agreement, marital settlement agreement or divorce decree, or any other information in support of the value attributed to the transferred property if you have evidence that the consideration was other than fair market value .................................................. $ 0.00

**PLEASE LIST AND ATTACH ANY ADDITIONAL INFORMATION SUBMITTED**

## SCHEDULE M - MERE CHANGE OF FORM TRANSFERS

**For transfers occurring on or after June 9, 1994, a transfer that represents a mere change in identity or form of ownership or organization is not taxable to the extent the beneficial ownership of the real property or economic interest therein remains the same.** *(See instructions)*   ATTACH COPIES OF ALL RELEVANT DOCUMENTS.

● For each person or entity who, prior to the transaction being reported on this Schedule M, owned a beneficial interest in the property or economic interest therein transferred, report above the percentage of beneficial interest in that real property or economic interest therein owned by that owner before and after the transfer, and describe the relationship of each beneficial owner to the grantor and grantee. Attach additional pages, if necessary.

● If, for any owner, the amount reported in column D is less than the amount reported in column E, enter zero in column F.

| A | B | C | D | E | F |
|---|---|---|---|---|---|
| 1. NAME OF BENEFICIAL OWNER | RELATIONSHIP TO GRANTOR | *(attach rider if necessary)* RELATIONSHIP TO GRANTEE | PERCENTAGE INTEREST BEFORE | AFTER | CHANGE D minus E |
| | | | % | % | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| 2. TOTAL CHANGE *(total of column F)  Enter here and on Schedule 2, line 5.* | | | | | |

11

201204030015710101

Form NYC-RPT

Page 11

## SCHEDULE R - REAL ESTATE INVESTMENT TRUST TRANSFERS - WORKSHEET FOR CONDITIONS 1(a) and 1(b)

1. *Add lines 1, 2, 7, 8, 9 and 10 from Form NYC-RPT, Schedule 1 and enter total here.*.................................1. $ _____

2a. *Enter total number of REIT shares received* ...................................................

  b. *Enter maximum number of REIT shares into which ownership interests may be converted* ..........a. _____

  c. *Add lines a and b.*..........................................................................................b. _____

  d. *Enter offering price per share of REIT shares on the date of the transaction reported*...................c. _____

  e. *Multiply line 2c by line 2d* ..............................................................................d. _____

  f. *Enter value of ownership interests received not convertible into REIT shares* ...............................e. _____

  g. *Add lines e and f* .........................................................................................f. _____

3. *Multiply line 1 by .40 for condition 1(a) or .50 for condition 1(b)* ...........................................2g. _____
                                                         3. _____

- If line 3 is greater than line 2g, the transaction does not qualify as a REIT transfer. DO NOT FILE THIS SCHEDULE. You must file Form NYC-RPT and compute your tax due on Schedule 2.

- If line 3 is less than or equal to line 2g, the transaction will qualify as a REIT Transfer, provided the other conditions are met. You should complete Form NYC-RPT substituting on line 4 of Schedule 2:
    - .5% instead of 1%;
    - .7125% instead of 1.425%;
    - 1.3125% instead of 2.625%

### Instructions for Completing Worksheet
12

#### LINE 1

Where the value of the underlying property transferred or interest therein is used in determining the consideration for a REIT Transfer, you may, but are not required to, report as the value of the real property or interest therein (Form NYC-RPT, Schedule 1, line 7), the estimated market value as determined by the Department of Finance as reflected on the most recent Notice of Assessment issued by the Department. *(See Statements of Audit Procedure 93-2-GCT/RPTT, 3/1/93 and 95-1-GCT/RPTT, 7/28/95)* Add to the amount reported on line 1 the amount of any mortgages and other liens and encumbrances created in contemplation of the formation of the REIT in the case of condition 1(a) or in contemplation of the transaction reported on this Schedule R in the case of condition 1(b).

#### LINE 2

If the grantor received REIT shares as consideration for the transfer, enter on line 2a the number of REIT shares received. If the grantor received interests in a partnership or corporation controlled by the REIT that may be converted into REIT shares, enter on line 2b the maximum number of REIT shares into which such interests may be converted and attach an explanation of the terms of the conversion. If the grantor received interests that may be converted into REIT shares but you believe that the offering price for the REIT shares into which such interests may be converted is not a proper measurement of the value of the interests received, do not complete line 2b. Instead, attach an explanation of the terms of the conversion and enter on line 2f the fair market value of the interests received. If the grantor received interests in a partnership or corporation controlled by the REIT that cannot be converted into REIT shares at any time, enter on line 2f the fair market value of the interests received. If you enter an amount on line 2f, attach an explanation of the method used for determining the value of the interests received.

---

### CERTIFICATION

I swear or affirm under penalties of perjury that the grantor has no present intention to transfer or convey the REIT shares or interests in a partnership or corporation controlled by the REIT received by the grantor as consideration in the transaction reported on this Schedule R within two years of the date of the transfer, other than a distribution of such shares or interests to the partners or shareholders of the grantor, and that, to the best of my knowledge, condition 3 above regarding the use of the cash proceeds of the REIT offering will be satisfied, if applicable. I further swear or affirm that I will file an amended Form NYC-RPT and pay any additional tax due if any such transfer or conveyance occurs within such two-year period or if condition 3 above, if applicable, ceases to be met.

|  GRANTOR | |  GRANTEE | |
|---|---|---|---|
| Sworn to and subscribed to before me on this _____ day of _____, _____ | Name of Grantor | Sworn to and subscribed to before me on this _____ day of _____, _____ | Name of Grantee |
| Signature of Notary | Signature of Grantor | Signature of Notary | Signature of Grantee |
| Notary's stamp or seal | | Notary's stamp or seal | |

2012040300157101

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2012040300583001002226CC0

| REAL ESTATE TRANSFER TAX COVER PAGE | | PAGE 1 OF 1 |
|---|---|---|
| Document ID: 2012040300583001 | Document Date: 04-01-2012 | Preparation Date: 04-03-2012 |
| Document Type: DEED | | |

## PARTIES

| FIRST GRANTOR/SELLER: | FIRST GRANTEE/BUYER: |
|---|---|
| HELEN QUIROZ, DECEASED | RAMON QUIROZ |
| 8937 METROPOLITAN AVE | 8937 METROPOLITAN AVE |
| REGO PARK, NY 11374 | REGO PARK, NY 11374 |

**ASSOCIATED TAX FORM ID:** 201204030015730101

**RETT SUPPORTING DOCUMENTS SUBMITTED:**

Page Count

TP-584 (3/07)



*Recording office time stamp*

New York State Department of Taxation and Finance

# Combined Real Estate Transfer Tax Return, Credit Line Mortgage Certificate, and Certification of Exemption from the Payment of Estimated Personal Income Tax

*See Form TP-584, Instructions for Form TP-584, before completing this form.  Please print or type.*

## Schedule A — Information relating to conveyance

| Grantor/Transferor | Name (if individual; last, first, middle initial)   QUIROZ, DECEASED HELEN | Social security number   109  40  3913 |
|---|---|---|
| ☑ Individual ☐ Corporation ☐ Partnership ☐ Estate/Trust ☐ Other | Mailing address   8937 METROPOLITAN AVE | Social security number |
| | City  REGO PARK | State  NY | ZIP code  11374 | Federal employer ident. number |

| Grantee/Transferee | Name (if individual; last, first, middle initial)   QUIROZ RAMON | Social security number   055  44  3185 |
|---|---|---|
| ☑ Individual ☐ Corporation ☐ Partnership ☐ Estate/Trust ☐ Other | Mailing address   8937 METROPOLITAN AVE | Social security number |
| | City  REGO PARK | State  NY | ZIP code  11374 | Federal employer ident. number |

Location and description of property conveyed

| Tax map designation | | | Address | City/village | Town | County |
|---|---|---|---|---|---|---|
| Section | Block | Lot | 8937 METROPOLITAN AVE | NEW YORK | | QUEENS |
| 4 | 3176 | 13 | | | | |

Type of property conveyed *(check applicable box)*

1 ☑ One- to three-family house
2 ☐ Residential cooperative
3 ☐ Residential condominium
4 ☐ Vacant land

5 ☐ Commercial/Industrial
6 ☐ Apartment building
7 ☐ Office building
8 ☐ Other

Date of conveyance   4  1  2012
                      month  day  year

Percentage of real property conveyed which is residential real property_____100 %
*(see instructions)*

Condition of conveyance *(check all that apply)*

a. ☑ Conveyance of fee interest

b. ☐ Acquisition of a controlling interest (state percentage acquired _____%)

c. ☐ Transfer of a controlling interest (state percentage transferred_____%)

d. ☐ Conveyance to cooperative housing corporation

e. ☐ Conveyance pursuant to or in lieu of foreclosure or enforcement of security interest *(attach Form TP-584.1, Schedule E)*

f. ☐ Conveyance which consists of a mere change of identify or form of ownership or organization *(attach Form TP-584.1, Schedule F)*

g. ☐ Conveyance for which credit for tax previously paid will be claimed *(attach Form TP-584.1, Schedule G)*

h. ☐ Conveyance of cooperative apartment(s)

i. ☐ Syndication

j. ☐ Conveyance of air rights or development rights

k. ☐ Contract assignment

l. ☐ Option assignment or surrender

m. ☐ Leasehold assignment or surrender

n. ☐ Leasehold grant

o. ☐ Conveyance of an easement

p. ☐ Conveyance for which exemption from transfer tax claimed *(complete Schedule B, Part III)*

q. ☐ Conveyance of property partly within and partly outside the state

r. ☐ Other *(describe)* _____

| For recording officer's use | Amount received Schedule B., Part I  $ Schedule B., Part II  $ | Date received | Transaction number |
|---|---|---|---|

Page 2 of 4   TP-584 (3/07)

## Schedule B — Real estate transfer tax return (Tax Law, Article 31)

**Part I** – Computation of tax due

| | | | |
|---|---|---|---|
| 1 | Enter amount of consideration for the conveyance *(if you are claiming a total exemption from tax, check the exemption claimed box, enter consideration and proceed to Part III)* .......... ☐ **Exemption claimed** | **1.** | 0 00 |
| 2 | Continuing lien deduction *(see instructions if property is taken subject to mortgage or lien)* .......... | **2.** | 0 00 |
| 3 | Taxable consideration *(subtract line 2 from line 1)* .......... | **3.** | 0 00 |
| 4 | Tax: $2 for each $500, or fractional part thereof, of consideration on line 3 .......... | **4.** | 0 00 |
| 5 | Amount of credit claimed *(see instructions and attach Form TP-584.1, Schedule G)* .......... | **5.** | 0 00 |
| 6 | Total tax due* *(subtract line 5 from line 4)* .......... | **6.** | 0 00 |

**Part II** – Computation of additional tax due on the conveyance of residential real property for $1 million or more

| | | | |
|---|---|---|---|
| 1 | Enter amount of consideration for conveyance *(from Part I, line 1)* .......... | **1.** | 0 00 |
| 2 | Taxable consideration *(multiply line 1 by the percentage of the premises which is residential real property, as shown in Schedule A)* ..... | **2.** | 0 00 |
| 3 | Total additional transfer tax due* *(multiply line 2 by 1% (.01))* .......... | **3.** | 0 00 |

**Part III** – Explanation of exemption claimed on Part I, line 1 *(check any boxes that apply)*

The conveyance of real property is exempt from the real estate transfer tax for the following reason:

a. Conveyance is to the United Nations, the United States of America, the state of New York, or any of their instrumentalities, agencies, or political subdivisions (or any public corporation, including a public corporation created pursuant to agreement or compact with another state or Canada) .......... a ☐

b. Conveyance is to secure a debt or other obligation .......... b ☐

c. Conveyance is without additional consideration to confirm, correct, modify, or supplement a prior conveyance .......... c ☐

d. Conveyance of real property is without consideration and not in connection with a sale, including conveyances conveying realty as bona fide gifts .......... d ☐

e. Conveyance is given in connection with a tax sale .......... e ☐

f. Conveyance is a mere change of identity or form of ownership or organization where there is no change in beneficial ownership. (This exemption cannot be claimed for a conveyance to a cooperative housing corporation of real property comprising the cooperative dwelling or dwellings.) Attach Form TP-584.1, Schedule F .......... f ☐

g. Conveyance consists of deed of partition .......... g ☐

h. Conveyance is given pursuant to the federal Bankruptcy Act .......... h ☐

i. Conveyance consists of the execution of a contract to sell real property, without the use or occupancy of such property, or the granting of an option to purchase real property, without the use or occupancy of such property .......... i ☐

j. Conveyance of an option or contract to purchase real property with the use or occupancy of such property where the consideration is less than $200,000 and such property was used solely by the grantor as the grantor's personal residence and consists of a one-, two-, or three-family house, an individual residential condominium unit, or the sale of stock in a cooperative housing corporation in connection with the grant or transfer of a proprietary leasehold covering an individual residential cooperative apartment .......... j ☐

k. Conveyance is not a conveyance within the meaning of Tax Law, Article 31, section 1401(e) *(attach documents supporting such claim)* .......... k ☐

l. Other *(attach explanation)* .......... l ☐

*Please make check(s) payable to the county clerk where the recording is to take place. If the recording is to take place in New York City, make check(s) payable to the **NYC Department of Finance.** If a recording is not required, send this return and your check(s) made payable to the **NYS Department of Taxation and Finance,** directly to the NYS Tax Department, RETT Return Processing, PO Box 5045, Albany NY 12205-5045.

Page 3 of 4   TP-584 (3/07)

## Schedule C — Credit Line Mortgage Certificate (Tax Law, Article 11)

**Complete the following only if the interest being transferred is a fee simple interest.**
I (we) certify that: *(check the appropriate box)*

1. [✓] The real property being sold or transferred is not subject to an outstanding credit line mortgage.

2. [ ] The real property being sold or transferred is subject to an outstanding credit line mortgage. However, an exemption from the tax is claimed for the following reason:

   [ ] The transfer of real property is a transfer of a fee simple interest to a person or persons who held a fee simple interest in the real property (whether as a joint tenant, a tenant in common or otherwise) immediately before the transfer.

   [ ] The transfer of real property is (A) to a person or persons related by blood, marriage or adoption to the original obligor or to one or more of the original obligors or (B) to a person or entity where 50% or more of the beneficial interest in such real property after the transfer is held by the transferor or such related person or persons (as in the case of a transfer to a trustee for the benefit of a minor or the transfer to a trust for the benefit of the transferor).

   [ ] The transfer of real property is a transfer to a trustee in bankruptcy, a receiver, assignee, or other officer of a court.

   [ ] The maximum principal amount secured by the credit line mortgage is $3,000,000 or more, and the real property being sold or transferred is **not** principally improved nor will it be improved by a one- to six-family owner-occupied residence or dwelling.

   **Please note:** for purposes of determining whether the maximum principal amount secured is $3,000,000 or more as described above, the amounts secured by two or more credit line mortgages may be aggregated under certain circumstances. See TSB-M-96(6)-R for more information regarding these aggregation requirements.

   [ ] Other *(attach detailed explanation)*.

3. [ ] The real property being transferred is presently subject to an outstanding credit line mortgage. However, no tax is due for the following reason:

   [ ] A certificate of discharge of the credit line mortgage is being offered at the time of recording the deed.

   [ ] A check has been drawn payable for transmission to the credit line mortgagee or his agent for the balance due, and a satisfaction of such mortgage will be recorded as soon as it is available.

4. [ ] The real property being transferred is subject to an outstanding credit line mortgage recorded in _____ (insert liber and page or reel or other identification of the mortgage). The maximum principal amount of debt or obligation secured by the mortgage is _____. No exemption from tax is claimed and the tax of _____ is being paid herewith. *(Make check payable to county clerk where deed will be recorded or, if the recording is to take place in New York City, make check payable to the **NYC Department of Finance**.)*

## Signature (both the grantor(s) and grantee(s) must sign)

The undersigned certify that the above information contained in schedules A, B, and C, including any return, certification, schedule, or attachment, is to the best of his/her knowledge, true and complete, and authorize the person(s) submitting such form on their behalf to receive a copy for purposes of recording the deed or other instrument effecting the conveyance.

| _____ | _____ | _____ | _____ |
| Grantor signature | Title | Grantee signature | Title |

| _____ | _____ | _____ | _____ |
| Grantor signature | Title | Grantee signature | Title |

**Reminder:** Did you complete all of the required information in Schedules A, B, and C? Are you required to complete Schedule D? If you checked *e*, *f*, or *g* in Schedule A, did you complete Form TP-584.1? Have you attached your check(s) made payable to the county clerk where recording will take place or, if the recording is in New York City, to the **NYC Department of Finance**? If no recording is required, send your check(s), made payable to the **Department of Taxation and Finance**, directly to the NYS Tax Department, RETT Return Processing, PO Box 5045, Albany NY 12205-5045.

2012040300157301

## Signature (both the grantor(s) and grantee(s) must sign)

The undersigned certify that the above information contained in schedules A, B, and C, including any return, certification, schedule, or attachment, is to the best of his/her knowledge, true and complete, and authorize the person(s) submitting such form on their behalf to receive a copy for purposes of recording the deed or other instrument effecting the conveyance.

| Grantor signature | Title | Grantee signature | Title |
|---|---|---|---|
| | | | |

| Grantor signature | Title | Grantee signature | Title |
|---|---|---|---|
| | | | |

Page 4 of 4    TP-584 (3/07)

## Schedule D - Certification of exemption from the payment of estimated personal income tax (Tax Law, Article 22, section 663)

**Complete the following only if a fee simple interest or a cooperative unit is being transferred by an individual or estate or trust.**

**Part I - New York State residents**

If you are a New York State resident transferor(s)/seller(s) listed in Schedule A of Form TP-584 (or an attachment to Form TP-584), you must sign the certification below. If one or more transferors/sellers of the real property or cooperative unit is a resident of New York State, **each** resident transferor/seller must sign in the space provided. If more space is needed, please photocopy this Schedule D and submit as many schedules as necessary to accommodate all resident transferors/sellers.

### Certification of resident transferor(s)/seller(s)

This is to certify that at the time of the sale or transfer of the real property or cooperative unit, the transferor(s)/seller(s) as signed below was a resident of New York State, and therefore is not required to pay estimated personal income tax under Tax Law, section 663(a) upon the sale or transfer of this real property or cooperative unit.

| Signature | Print full name | Date |
|---|---|---|
| Signature | Print full name | Date |
| Signature | Print full name | Date |

**Note:** A resident of New York State may still be required to pay estimated tax under Tax Law, section 685(c), but not as a condition of recording a deed.

**Part II -** Nonresidents of New York State

If you are a nonresident of New York State listed as a transferor/seller in Schedule A of Form TP-584 (or an attachment to Form TP-584) but are not required to pay estimated personal income tax because one of the exemptions below applies under Tax Law, section 663, check the box of the appropriate exemption below. If any one of the exemptions below applies to the transferor(s)/seller(s), that transferor(s)/seller(s) is not required to pay estimated personal income tax to New York State under Tax Law, section 663. **Each** nonresident transferor/seller who qualifies under one of the exemptions below must sign in the space provided. If more space is needed, please photocopy this Schedule D and submit as many schedules as necessary to accommodate all nonresident transferors/sellers.

If none of these exemption statements apply, you must complete Form IT-2663, *Nonresident Real Property Estimated Income Tax Payment Form*, or Form IT-2664, *Nonresident Cooperative Unit Estimated Income Tax Payment Form*. For more information, see *Payment of estimated personal income tax,* on page 1 of Form TP-584-I.

### Exemption for nonresident transferor(s)/seller(s)

This is to certify that at the time of the sale or transfer of the real property or cooperative unit, the transferor(s)/seller(s) (grantor) of this real property or cooperative unit was a nonresident of New York State, but is not required to pay estimated personal income tax under Tax Law, section 663 due to one of the following exemptions:

☐ The real property or cooperative unit being sold or transferred qualifies in total as the transferor's/seller's principal residence (within the meaning of Internal Revenue Code, section 121) from _____ to _____ (see instructions).
                                                                            Date        Date

☐ The transferor/seller is a mortgagor conveying the mortgaged property to a mortgagee in foreclosure, or in lieu of foreclosure with no additional consideration.

☐ The transferor or transferee is an agency or authority of the United States of America, an agency or authority of the state of New York, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, or a private mortgage insurance company.

| Signature | Print full name | Date |
|---|---|---|
| Signature | Print full name | Date |
| Signature | Print full name | Date |

## Certification of resident transferor(s)/seller(s)

This is to certify that at the time of the sale or transfer of the real property or cooperative unit, the transferor(s)/seller(s) as signed below was a resident of New York State, and therefore is not required to pay estimated personal income tax under Tax Law, section 663(a) upon the sale or transfer of this real property or cooperative unit.

| Signature | Print full name | Date |
|-----------|-----------------|------|
| Signature | Print full name | Date |
| Signature | Print full name | Date |
| Signature | Print full name | Date |

## Exemption for nonresident transferor(s)/seller(s)

This is to certify that at the time of the sale or transfer of the real property or cooperative unit, the transferor(s)/seller(s) (grantor) of this real property or cooperative unit was a nonresident of New York State, but is not required to pay estimated personal income tax under Tax Law, section 663 due to one of the following exemptions:

☐ The real property or cooperative unit being sold or transferred qualifies in total as the transferor's/seller's principal residence (within the meaning of Internal Revenue Code, section 121) from _____ to_____ (see instructions).
                                                                                      Date        Date

☐ The transferor/seller is a mortgagor conveying the mortgaged property to a mortgagee in foreclosure, or in lieu of foreclosure with no additional consideration.

☐ The transferor or transferee is an agency or authority of the United States of America, an agency or authority of the state of New York, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, or a private mortgage insurance company.

| Signature | Print full name | Date |
|-----------|-----------------|------|
| Signature | Print full name | Date |
| Signature | Print full name | Date |
| Signature | Print full name | Date |

**TP-584**

## TRANSFERS INVOLVING MULTIPLE GRANTORS AND/OR GRANTEES OR A PARTNERSHIP ▼

**NOTE** If additional space is needed, attach copies of this schedule or an addendum listing all of the information required below.

### GRANTOR(S)/PARTNER(S)

**NAME** JESSICA A QUIROZ

**PERMANENT MAILING ADDRESS AFTER TRANSFER** 8937 METROPOLITAN AVE

**CITY AND STATE** REGO PARK , NY

**ZIP CODE** 11374

**SOCIAL SECURITY NUMBER** 5 9 3 - 7 8 - 3 4 7 3

**OR**

**EMPLOYER IDENTIFICATION NUMBER**

---

**NAME**

**PERMANENT MAILING ADDRESS AFTER TRANSFER**

**CITY AND STATE**

**ZIP CODE**

**SOCIAL SECURITY NUMBER**

**OR**

**EMPLOYER IDENTIFICATION NUMBER**

---

**NAME**

**PERMANENT MAILING ADDRESS AFTER TRANSFER**

**CITY AND STATE**

**ZIP CODE**

**SOCIAL SECURITY NUMBER**

**OR**

**EMPLOYER IDENTIFICATION NUMBER**

---

**NAME**

**PERMANENT MAILING ADDRESS AFTER TRANSFER**

**CITY AND STATE**

**ZIP CODE**

**SOCIAL SECURITY NUMBER**

**OR**

**EMPLOYER IDENTIFICATION NUMBER**

### GRANTEE(S)/PARTNER(S)

**NAME**

**PERMANENT MAILING ADDRESS AFTER TRANSFER**

**CITY AND STATE**

**ZIP CODE**

**SOCIAL SECURITY NUMBER**

**OR**

**EMPLOYER IDENTIFICATION NUMBER**

---

**NAME**

**PERMANENT MAILING ADDRESS AFTER TRANSFER**

**CITY AND STATE**

**ZIP CODE**

**SOCIAL SECURITY NUMBER**

**OR**

**EMPLOYER IDENTIFICATION NUMBER**

---

**NAME**

**PERMANENT MAILING ADDRESS AFTER TRANSFER**

**CITY AND STATE**

**ZIP CODE**

**SOCIAL SECURITY NUMBER**

**OR**

**EMPLOYER IDENTIFICATION NUMBER**

---

**NAME**

**PERMANENT MAILING ADDRESS AFTER TRANSFER**

**CITY AND STATE**

**ZIP CODE**

**SOCIAL SECURITY NUMBER**

**OR**

**EMPLOYER IDENTIFICATION NUMBER**

2012040300157301011

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2012040300583001002E4A80

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 5 |
|---|---|---|
| **Document ID: 2012040300583001** | Document Date: 04-01-2012 | Preparation Date: 04-03-2012 |
| Document Type: DEED | | |
| Document Page Count: 3 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| JESSICA ANGEL QUIROZ | JESSICA ANGEL QUIROZ |
| 8937 METROPOLITAN AVE | 8937 METROPOLITAN AVE |
| REGO PARK, NY 11374 | REGO PARK, NY 11374 |
| 347-876-8759 | 347-876-8759 |
| rayorlando1@hotmail.com | rayorlando1@hotmail.com |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 3176 | 13 | Entire Lot | 8937 METROPOLITAN AVE |

Property Type: DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

CRFN_____ *or* Document ID_____ *or* _____ Year_____ Reel ___ Page ____ *or* File Number_____

### PARTIES

| GRANTOR/SELLER: | GRANTEE/BUYER: |
|---|---|
| HELEN QUIROZ, DECEASED | RAMON QUIROZ |
| 8937 METROPOLITAN AVE | 8937 METROPOLITAN AVE |
| REGO PARK, NY 11374 | REGO PARK, NY 11374 |

☒ Additional Parties Listed on Continuation Page

### FEES AND TAXES

| Mortgage | | Filing Fee: | |
|---|---|---|---|
| Mortgage Amount: | $ 0.00 | | $ 125.00 |
| Taxable Mortgage Amount: | $ 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | $ 0.00 |
| TAXES: County (Basic): | $ 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ 0.00 | | $ 0.00 |
| Spec (Additional): | $ 0.00 | | |
| TASF: | $ 0.00 | | |
| MTA: | $ 0.00 | | |
| NYCTA: | $ 0.00 | | |
| Additional MRT: | $ 0.00 | | |
| TOTAL: | $ 0.00 | | |
| Recording Fee: | $ 52.00 | | |
| Affidavit Fee: | $ 0.00 | | |

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2012040300583001002C4800

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | PAGE 2 OF 5 |
|---|---|

**Document ID:** 2012040300583001    Document Date: 04-01-2012    Preparation Date: 04-03-2012
Document Type: DEED

**PARTIES**
**GRANTOR/SELLER:**
JESSICA A. QUIROZ
8937 METROPOLITAN AVE
REGO PARK, NY  11374