1

1

2 UNITED STATES BANKRUPTCY COURT

3 SOUTHERN DISTRICT OF NEW YORK

4 Case No. 12-12020-mg

5 - - - - - - - - - - - - - - - - - - - -x

6 In the Matter of:

7

8 RESIDENTIAL CAPITAL, LLC, et al.,

9

10             Debtors.

11

12 - - - - - - - - - - - - - - - - - - - -x

13

14             United States Bankruptcy Court

15             One Bowling Green

16             New York, New York

17

18             August 20, 2014

19             2:00 PM

20

21 B E F O R E:

22 HON. MARTIN GLENN

23 U.S. BANKRUPTCY JUDGE

24

25

1

2  (CC:  Doc #6763) Telephonic Case Management and Scheduling

3  Conference Regarding Mack's Proof of Claim.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20  Transcribed by:  Aliza Chodoff

21  eScribers, LLC

22  700 West 192nd Street, Suite #607

23  New York, NY 10040

24  (973)406-2250

25  operations@escribers.net

1

2  A P P E A R A N C E S :  (TELEPHONIC)

3  MORRISON & FOERSTER LLP

4        Attorneys for Debtors

5        250 West 55th Street

6        New York, NY 10019

7

8  BY:   ADAM A. LEWIS, ESQ.

9        NORMAN S. ROSENBAUM, ESQ.

10

11

12  DAVID F. GARBER, PA

13        Attorneys for Barry Mack

14        700 Eleventh Street South

15        Suite 702

16        Naples, FL 34102

17

18  BY:   DAVID F. GARBER, ESQ.

19

20

21

22

23

24

25

RESIDENTIAL CAPITAL, LLC, ET AL.                    4

1                      P R O C E E D I N G S

2              THE COURT:  All right.  This is Judge Glenn.  We're on

3      the record in Residential Capital, number 12-12020.  This is a

4      telephonic case management and scheduling conference regarding

5      the Mack proof of claim.

6              Who is on the phone, please?

7              MR. LEWIS:  Your Honor, Adam Lewis --

8              MR. GARBER:  David Garber --

9              MR. LEWIS:  -- with Morrison & Foerster for the ResCap

10     borrower claims trust.  Mr. Rosenbaum is also on the line.

11             THE COURT:  All right.  Just say it again.  I'm sorry.

12             MR. LEWIS:  I will be taking the lead.

13             THE COURT:  Just say it again.

14             MR. LEWIS:  I'm sorry.  Adam Lewis of Morrison &

15     Foerster for the ResCap borrowers claims trust --

16             THE COURT:  Thank you.

17             MR. LEWIS:  -- and Mr. Norman Rosenbaum is also on the

18     line.  I will be taking the lead.

19             THE COURT:  And for the --

20             MR. GARBER:  And Your Honor, I'm David Garber on

21     behalf of Mr. and Mrs. Mack, the claimants.

22             THE COURT:  Thank you very much, Mr. Garber.

23             All right.  Mr. Lewis, can you tell me what the status

24     is?

25             MR. LEWIS:  Sure.  In accordance with the Court's

1  order, Mr. Garber and I have had a couple of telephone calls

2  about settlements and the like.  I think we're still about as

3  far apart on settlement as we were before the hearing and the

4  Court's ruling.  We talked a little bit about mediation and the

5  possibility of direct face-to-face settlement discussions.

6          From my perspective, part of the problem is we don't

7  have a lot of information about damages that are connected to

8  the alleged RESPA violation as contrasted with anything else.

9  And it makes difficult to have a meaningful settlement

10  discussion or mediation, for that matter, without that.  Mr.

11  Garber has begun supplying some of it, but I think there's

12  quite a bit more that we need.

13          Under the circumstances, I guess, what we would like

14  to do is set a schedule for discovery and, if need be, a trial.

15  And as things progress in terms of getting information, at some

16  point, when we're all feeling sufficiently informed, to sit

17  down either together directly face to face or with a mediator

18  to talk about settlement.

19          THE COURT:  Okay.

20          Mr. Garber?

21          MR. GARBER:  Your Honor, I think Mr. Lewis has

22  correctly stated the issues.  We have a date that the Court has

23  indicated damages should be considered from that date.  I think

24  it was beginning of November 9th, 2009.  I have been able to

25  supply some records, which I had already from February of 2012

1    until the summer of 2013.  My client has -- Mr. Mack has just

2    recently, in the last few days, supplied me with the insurance

3    records that show all of the medical billing since November

4    9th, 2009.

5        Mr. Lewis has indicated he would also like to have

6    medical records from before that time because she may have a

7    prior existing condition that he would defend on.  I have asked

8    my clients for those insurance records, too.  He does not have

9    all the medical records, but we do have approximately forty or

10   fifty medical care providers that can provide the records that

11   I've been advised of since November 9th of 2009 and probably

12   another twenty or thirty going back to the year 2000.  It

13   depends on how long Mr. Lewis wants these records for.

14       MR. LEWIS:  Your Honor, it's Mr. Lewis.  I think Mr.

15   Garber and I may have a difference of opinion about the scope

16   of damages.  From my perspective, it's not just damages after

17   November of 2009 or December of 2009 when the responses to the

18   QWR would have been due, but damages that are tied to that

19   failure to respond.  And so we need to narrow -- in my view,

20   narrow things a bit as we progress to see what can be tied to

21   those events, specifically.

22       Mr. Garber did provide us with some medical records

23   beginning in February 2012 about three, four, five days ago.

24   And there's more to do.  I have, in fact, drafted some

25   discovery document requests and interrogatories that would

1  informally, if not formally, provide guidance with what I think

2  we are -- we need and are entitled to.  I don't know how the

3  Court wishes to proceed, but that's where I think things stand.

4          THE COURT:  Okay.  Well, let me ask this.  Mr. Lewis,

5  how much time do you believe is required for discovery?

6          MR. LEWIS:  Well, Your Honor, I think probably four

7  months.  What I have teed up for the moment is discovery of Mr.

8  Mack.  Depending on what that produces, we may or may not want

9  to take discovery from some of the medical providers and other

10 parties, as well as, of course, we're going to want to take a

11 disposition of Mr. Mack at some point.  So I'm thinking four

12 months, five months maybe, less if we can get by with less.

13         THE COURT:  All right.  Mr. Garber, how much time --

14         MR. LEWIS:  The thrust is in no --

15         THE COURT:  -- do you -- Mr. Garber, how much time do

16 you believe you need for discovery?

17         MR. GARBER:  Your Honor, I would think to make a

18 reasonable effort to get all these medical records, because we

19 have to have the records to see which parts are relevant and

20 which parts are not relevant, I would think it would be at

21 least six months, myself.

22         THE COURT:  I don't think six --

23         MR. GARBER:  We already have the videotape deposition

24 of Mr. Mack and Mrs. Mack.  I guess we would introduce that if

25 we have a trial.  We probably would have Mr. Mack there in

1  person.  He's still alive, and he is still cogent.  And we

2  would have, perhaps, two or three other witnesses in addition

3  to some of the medical care provider witnesses.

4          THE COURT:  Mr. Garber --

5          MR. LEWIS:  Your Honor --

6          THE COURT:  Hold -- stop, Mr. Lewis.

7          MR. LEWIS:  I'm sorry.

8          THE COURT:  Mr. Lewis, stop.

9          Mr. Garber, I'll tell you right now.  You're not

10  getting six months for fact discovery.  If there are medical

11  providers that have records and you need them, you serve

12  subpoenas.  We're going to move forward expeditiously

13  with -- this is a contested matter.  The Federal Rules of Civil

14  Procedure with respect to discovery apply.  And so I think that

15  I'm going to set four months for fact discovery.

16          Mr. Lewis, what I'll ask is, using my template for

17  case management and scheduling orders -- ordinarily, it applies

18  to adversary proceedings, but I apply the same template for

19  contested matters as well, adapted as necessary.  You ought to

20  prepare a proposed case management and scheduling order for

21  this contested matter, share it with Mr. Garber.  To the extent

22  you can't agree on the dates, we'll have to have another

23  telephone conference to do that.

24          It does seem to me -- Mr. Garber, how many doctors

25  treated Mrs. Mack?

**RESIDENTIAL CAPITAL, LLC, ET AL.**                                    9

1       MR. GARBER:  Since the time of November 9th, 2009, I

2   think there are probably six or eight.

3       THE COURT:  Okay.  So I mean, it does seem to me

4   whether any of them are going to testify as experts, there

5   could well be discovery from the medical professionals who

6   treated Mrs. Mack.

7       Mr. Lewis, I think you and Mr. Garber should discuss

8   whether more -- usually, I allow forty-five days from the

9   completion of fact discovery for completion of expert

10  discovery.  You and Mr. Garber should discuss whether that

11  period should be extended.  I wouldn't anticipate extending it

12  to more than sixty days, however, at this stage.

13      So we need -- I -- within the next week, Mr. Lewis,

14  you ought to submit to the Court a proposed case management

15  scheduling order.  To the extent that you and Mr. Garber can't

16  agree, you ought to bracket language indicating your respective

17  positions.  I'm not sure we need to have another telephone

18  hearing about it.  I'll resolve those differences.  But with

19  respect to the period for fact discovery, I'm going to allow

20  four months.  That's going to require both sides to speed up

21  their efforts to try and -- let's move this matter forward.

22      It's potentially one of the larger open claims.  I'm

23  anxious, as I think all creditors -- all of the borrowers are

24  from ResCap, to be able to provide distributions to creditors

25  sooner rather than later.  This is one of the larger claims

1    that is going to have to be resolved.

2          I want to raise another issue with both of you

3    and -- which I want you two to discuss within the next week and

4    see whether you can resolve.  28 U.S.C. Section 157(b) -- B, as

5    in boy -- (5) provides "The District Court shall order that

6    personal injury tort and wrongful death claims shall be tried

7    in the district court in which the bankruptcy court is pending

8    or in the district in the district in which the claim arose as

9    determined by the district court in which the bankruptcy case

10   is pending."

11         It is far from clear to me that 157(b)(5) applies

12   here.  I think the issue is -- I mean, what -- under my prior

13   written decision, what remains is the RESPA claim, as to which

14   I indicated that Mr. Mack can seek noneconomic damages.  And I

15   guess -- I'm not ruling today, but that doesn't seem to me to

16   fall in the personal injury tort category.  There is a body of

17   case law dealing with 157(b)(5), and no single interpretation

18   of that provision has been adopted by the courts.

19         I cite you only as an example and not to suggest that

20   this case provides the answers, but it's a place perhaps for

21   the two of you to start to look.  And that's In Re:  Ice Cream

22   Liquidation, Inc., 281 B.R. 154, (Bankr. D. Conn. 2002).  It's

23   a decision by Bankruptcy Judge Lorraine Weil, and she, I think,

24   clearly summarizes there have been -- courts have essentially

25   applied three different approaches to construing 157(b)(5),

1    what some courts call the broader approach, what some

2    call -- others apply a narrow approach, and then there's a

3    middle ground.

4              I'm not sure that, under any of the three, that this

5    claim would fall under 157(b)(5).  In the Supreme Court -- U.S.

6    Supreme Court's decision in Stern v. Marshall, 131 S. Ct. 2594

7    at pages 2606 to 08 -- that's the 2011 Supreme Court

8    decision -- one of the sometimes overlooked aspects of the

9    Supreme Court's decision was the chief justice's ruling that

10   157(b)(5) is not a jurisdictional provision in that if

11   it -- rights under 157(b)(5) can be waived or consented.  So

12   the two of you need to discuss -- and I would like a written

13   indication within a week from today whether both sides agree

14   that any trial of the matter can be held in the bankruptcy

15   court and that 157(b)(5) will not be applied, that no -- that

16   neither side is asserting the right to a trial in the district

17   court.

18             If the two of you can't agree on that -- on that

19   outcome, then I'm going to require a brief from each of you

20   within two weeks -- three weeks from today -- so I'll give you

21   a week to see if you can resolve the issue between yourselves

22   consensually on the basis that the bankruptcy court may

23   determine here and determine the claim.  And the only claim

24   remaining is the RESPA claim, as to which I'm permitting Mack

25   to proceed for noneconomic damages.

1     So if the two don't agree on that, then each of you

2 needs to submit a brief.  I'm going to give you -- so three

3 weeks from today, a week to see if you can sort it out, and

4 then two weeks to submit written -- if you can't -- if one or

5 the other party asserts that 157(b)(5) applies and that they

6 wish a trial in the district court, you need to brief that

7 issue.  And I'll decide after receiving -- if necessary, after

8 receiving the briefs, whether I need to have a hearing or not

9 or whether I'll go ahead and decide it.

10     I'm reasonably familiar -- I cite to you Judge Weil's

11 Ice Cream Liquidation decision, but there are quite a few

12 cases.  I just -- that's obviously from a bankruptcy case in

13 the Second Circuit.  There's no Second Circuit decision that

14 I'm aware of, but there are a fairly broad array -- there's no

15 legislative history on it.  That's one of the things that all

16 of the courts have pointed out.  But -- so you need to address

17 that as well.

18     Obviously, I want you both to continue to see whether

19 you can - whether a settlement can be reached, but we're going

20 to have move forward assuming that there is no settlement.

21 There may well be a lot of discovery that needs to be done, and

22 I'm not going to get into now, under my written decision in

23 this case, what, if any, limitations on damages apply.  I'm

24 certainly not ready to consider that at this stage, so you both

25 ought to do whatever discovery you believe is necessary.

1          Anything either of you want to raise?

2          MR. GARBER:  Your Honor, it's --

3          MR. LEWIS:  Mr. Lewis -- go ahead.

4          THE COURT:  Go ahead, Mr. Garber.

5          MR. GARBER:  Is it possible to get a written

6    transcript of what you just said?  I've tried to make notes,

7    but I may have not gotten everything down.

8          THE COURT:  You can order the transcript.  If you want

9    to ask me a question, go ahead.  I mean, the point -- you can

10   order a transcript, but I don't want -- it's going to take a

11   while before you get one.  I'm not going to wait for

12   transcripts.  So I think the takeaways for both of you from the

13   hearing today is, one, I want within one week from today a

14   proposed case management and scheduling order based on the

15   template of my orders that appears on the court web site.  So

16   it's a public document, and it's usually applied in adversary

17   proceedings.  But I've applied it in contested matters as well.

18   So that's within a week.

19          I also want to hear from one or both of you indicating

20   the position of both of you with respect to whether a party is

21   asserting rights to have the matter resolved in a district

22   court pursuant to 28 U.S.C. Section 157(b)(5).  And as I

23   indicated, with respect to the 157 -- if you -- if either side

24   believes the matter has to be resolved in the district court,

25   then you both need to brief.  And I'm giving you, essentially,

1   three weeks from today to submit those briefs the issue of the

2   applicability of 157(b)(5) to a RESPA claim that is seeking

3   noneconomic damages.

4           I pointed you as a starting place for research, if you

5   need it, to Judge Lorraine Weil's decision, a bankruptcy judge

6   from Connecticut, in Ice Cream Liquidation, Inc., 281 B.R. 154.

7           With respect to the period for discovery, the order

8   should provide for four months for fact discovery.  I've

9   indicated that the two of you should -- my ordinary -- the

10  usual provision is for -- actually, ordinarily, I only provide

11  120 days.  But I'm agreeing to four months.  With respect to

12  expert discovery, I usually provide for forty-five days.  Under

13  the circumstances here, I'm prepared to approve sixty days.

14  It's important that both of you get going with your formal

15  discovery.  You can do things voluntarily without -- that you

16  go on with discovery.

17          What I don't want to hear is when we get near the end

18  of the discovery period I find out that not a whole lot's been

19  done, and both sides want an extension of time.  That

20  circumstance, Mr. Garber, I ordinarily don't provide

21  extensions.  Before I extend the discovery period, I always ask

22  the questions what have you done, when did you do it, what

23  remains to be done.  And parties have to establish that they've

24  been diligent in moving forward with discovery.

25          I think the last point I would make is, in my view,

 1   it's important, because this is one of the larger potential

 2   claims against the borrower trust, that this matter be

 3   resolved.  It's the Court's desire -- I've said this from the

 4   bench on a number of occasions -- that creditor distributions

 5   proceed as soon as possible.  It's important to try and resolve

 6   as many claims as possible to be able to accomplish

 7   distributions sooner rather than later.

 8          So, Mr. Lewis, you also should get a date from my

 9   courtroom deputy, Deanna Anderson, for the next case management

10   and scheduling conference, I would say, in approximately sixty

11   days.  And I'll permit -- because both of you -- neither of you

12   have your office in New York City, I'll permit both of you to

13   do it by telephone.

14          I guess the last point, Mr. Lewis, the template for

15   case management and scheduling order, I believe, it's paragraph

16   7, has a provision for face-to-face meetings for settlement or

17   to discuss settlement or ADR.  With both of you out of

18   town -- it's certainly my preference that lawyers sit down

19   together in the same room because I think it facilitates

20   settlement.  But you can alter that provision to provide for

21   telephone settlement discussions.

22          Again, I encourage you, if you can, to meet.  And

23   certainly if you're going to be engaged in depositions, you'll

24   both be in the same -- should be in the same room, and that

25   provides an opportunity to be together face-to-face.

1          Any other questions for today?

2          MR. LEWIS:  Your Honor, it's Mr. Lewis.  On the last

3  point, I actually had told Mr. Garber I prefer face-to-face

4  meetings for settlement where possible, because I agree with

5  you entirely that they're much more productive, usually.

6          My one question is, I have of course, before, seen

7  your template.  And I will see it.  But I don't know if this is

8  in it.  Different judges have different views about what the

9  cutoff means for discovery, fact and expert.  Does it mean all

10 completed, all motions decided?  Does it mean all served?  What

11 is the deadline the deadline for in your court?

12         THE COURT:  I will tell you -- tell you both.  The

13 deadline for completion of fact discovery means just that.  So

14 you can't, one day before the close of fact discovery serve a

15 set of interrogatories the responses to which are due a month

16 later.  I mean it really -- all discovery -- all fact discovery

17 must be completed by the deadline for the completion of fact

18 discovery.

19         You'll see in the template -- and it's on the court's

20 Web site under my chamber's rules.  I'm sure some of your

21 colleagues can provide with copies, and you ought to share it

22 with Mr. Garber.  It's on the Web site, so it's a public

23 document.  You will see that there's a provision that deals

24 with discovery disputes, and that I don't permit the filing of

25 discovery motions.  If the parties have a discovery dispute,

1  they need to meet and confer in an effort to resolve it.  If

2  they're unable to resolve it, the party seeking the assistance

3  of the Court arranges a telephone conference with the Court.  I

4  generally do those at 4 or 5 o'clock in the afternoon New York

5  time.

6           I don't even want letters.  So you just call my

7  courtroom deputy.  You arrange the telephone conference.  I ask

8  each side what's the dispute.  I would say in the last seven

9  and a half years, Mr. Lewis, there've only been two or three

10  instances where after listening to the parties, I've asked for

11  letter briefs.  I've usually provided a very short amount of

12  time, a week or something like that, to supply those.

13           I find I'm generally able -- I don't get very many

14  discovery disputes.  I think when lawyers know -- if you ask

15  for a conference, you'll have one within a day or two.  And I

16  think when lawyers know that the Court will intercede promptly

17  and resolve things promptly, they usually resolve it

18  themselves.

19           So again, I rely and usually -- I fully expect it

20  here, the lawyers will resolve discovery disputes, if there are

21  any, between them.  But I'm --

22           The other thing I would say to counsel is, don't wait.

23  If you have a couple of calls and can't resolve it, somebody

24  get the Court involved.  And what I don't want to hear is that

25  two months ago this issue came up and we haven't been able to

1   resolve it yet, and so we need more time for discovery.  That

2   isn't going to happen.  Everything happens very promptly.

3           I think the other provisions of the order will be

4   self-explanatory.  The provision you'll see on settlement

5   is -- requiring discussion on settlement or ADR.  So mediation

6   frequently can be effective.  But it's usually effective if the

7   parties are either within striking distance or -- I'm going to

8   leave that to you in the first instance.

9           I don't suspend any other discovery dates simply

10  because the parties have agreed to mediate.  I will sometimes

11  do that, but only when I have a specific conversation with

12  counsel about doing that.

13          Mr. Garber, do you have any questions?

14          MR. LEWIS:  Thank you, Your Honor, that's very

15  helpful.

16          THE COURT:  Okay, Mr. Garber, do you have questions?

17          MR. GARBER:  Your Honor, you gave us a Supreme Court

18  cite, and I wrote it down, but I'm not sure I have it

19  correctly.

20          THE COURT:  Sure.  It's Stern --

21          MR. GARBER:  It was 131 S.Ct. 2549?

22          THE COURT:  It's Stern v. Marshall, 131 S.Ct. 2594.

23  And the specific page references -- it's a long opinion -- are

24  pages 2606 to 2608.  And specifically, the chief justice's

25  opinion concludes that 157(b)(5) is not a jurisdictional

RESIDENTIAL CAPITAL, LLC, ET AL.                    19

1   provision.  And in the discussion that I pointed you to, the

2   parties can waive or consent to proceeding in the bankruptcy

3   court.

4          There are other -- there are lower court decisions

5   that have accomplished the same thing, but I point to the

6   Supreme Court, because there is no higher authority than that.

7          MR. GARBER:  Yes, Your Honor.  Your Honor, I have one

8   other question.  We have the discovery deadlines that you've

9   just mentioned.  Do we have a mediation deadline, either at the

10  completion of discovery or at any other point?

11         THE COURT:  You'll see in the template and the order

12  that I require -- generally require counsel to meet face-to-

13  face within fourteen days of the entry of the order.  I'm

14  allowing the provision on face-to-face to be changed to by

15  telephone, although face-to-face is better.

16         You know, Mr. Lewis, maybe you'd like a trip to

17  Florida.

18         MR. LEWIS:  In January, Your Honor.

19         THE COURT:  I'm not sure this time of the year is when

20  you want to do that, but --

21         MR. LEWIS:  Exactly.

22         THE COURT:  And California's a nice place to visit,

23  Mr. Garber.

24         MR. GARBER:  I'm sure Mr. --

25         THE COURT:  California is a nice place to visit almost

1   any time of the year.  But so I do -- I definitely encourage

2   face-to-face, but I would -- generally, with both of you out of

3   town on opposite coasts, I'll permit telephone.

4          But so you'll see in the standard order, Mr. Garber

5   and Mr. Lewis, I require meetings to discuss settlement or ADR

6   within fourteen days of the entry of the order, and again,

7   within fourteen days after the close of fact discovery.  That

8   isn't to say that's the only time that should take place.  But

9   that's, at minimum, a requirement.

10          I think if you're both moving forward with discovery,

11  you ought to have opportunities to be in the same room, because

12  there clearly are going to have to be some depositions here.

13  And being together in the same room, when you finish the

14  deposition, it's a good time to go out for a drink and talk

15  about settlement.

16          Do either of you have any other questions?

17          MR. LEWIS:  Not from me, Your Honor.

18          THE COURT:  Okay.  So I'm expecting --

19          MR. GARBER:  Not from me, Your Honor.

20          THE COURT:  Okay.  So I'm expecting that I'm going to

21  get two things from you by a week from today.  One is a

22  proposed case management and scheduling order, and you can't

23  disagree -- if you disagree on certain things, you'll show each

24  side's position, and I'll resolve that.

25          And the other thing is -- it can be in a letter, as to

1  what you -- one of you can send and indicate the other's

2  agreement, as to whether the parties agree that the matter may

3  proceed to be heard and determined by the bankruptcy court.  If

4  either side seeks to exercise rights, if they exist, under

5  157(b)(5), then within two weeks thereafter, I expect briefs

6  from both of you on it.  And that won't slow down -- you'll

7  move forward with discovery in any event.  But I'll wait and

8  see what -- whether this remains an issue or not.  Okay?

9          MR. LEWIS:  Thank you very much, Your Honor.

10          MR. GARBER:  Yes, Your Honor.

11          THE COURT:  All right, thank you both very much.

12          MR. GARBER:  Thank you, Your Honor.

13          THE COURT:  Okay.

14      (Whereupon these proceedings were concluded at 2:30 PM)

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T I O N

I, Aliza Chodoff, certify that the foregoing transcript is a true and accurate record of the proceedings.

_____

ALIZA CHODOFF

AAERT Certified Electronic Transcriber CET**D-634

eScribers

700 West 192nd Street, Suite #607

New York, NY 10040

Date:  August 21, 2014