MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew

*Counsel for The ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: ) | Case No. 12-12020 (MG) |
| ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al</u>., ) | Chapter 11 |
| ) | |
| Post-Effective Date Debtors. ) | Jointly Administered |
| ) | |

**REPLY OF THE RESCAP BORROWER CLAIMS TRUST IN SUPPORT OF MOTION
TO EXTEND THE DATE BY WHICH OBJECTIONS TO CLAIMS MUST BE FILED**

ny-1154591

**TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE**:

The ResCap Borrower Claims Trust (the "Borrower Trust"), as successor-in-interest[1] to Residential Capital, LLC and its affiliated debtors (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") with respect to Borrower Claims, hereby submits this reply (the "Reply") in support of the *Motion To Extend The Date By Which Objections To Claims Must Be Filed* [D.E. 7306] (the "Motion")[2], and in response to those parties objecting to the Motion (collectively, the "Objectors").[3] In further support hereof, the Borrower Trust respectfully states as follows:

1. Shortly after the Court entered the Claims Objection Procedures Order, the Debtors filed their first objection to proofs of claim in May 2013. See D.E. 3573 (First Omnibus Objection to Claims). Over the past fifteen months, the Debtors, and the Debtors' successors in interest under the Plan, the ResCap Liquidating Trust and the Borrower Trust (together, the "Trusts"), with the Court's cooperation, worked diligently to resolve, as of the date of the Motion, approximately 5,923 of the 7,470 claims filed against the Debtors' estates, leaving approximately 1,547 claims to be resolved, consisting of 648 Borrower Claims and 899 Non-

---

[1] On December 11, 2013, the Court entered its *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al., and the Official Committee of Unsecured Creditors* [Docket No. 6065] confirming the Plan. The Plan [Docket No. 6065-1] created The ResCap Liquidating Trust that is charged with, among other things, overseeing and administering the claim resolution process after the Plan's Effective Date, and also established the Borrower Trust, which is responsible for the "processing, liquidation and payment of Allowed Borrower Claims in accordance with the Plan." See Art. IV.F.2. The Effective Date occurred on December 17, 2013. [Docket No. 6137].

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[3] See D.E. 7332 (filed by Mr. Satterwhite); D.E. 7355 (filed by Mr. Pichardo); D.E. 7360 (filed by Mr. Matthews); D.E. 7374 (filed by Mr. Futrell); D.E. 7375 (filed by Mr. Boyd); D.E. 7363, 7381 and 7382 (filed by Ms. Rozier); a response from Mr. and Mrs. McGuinty (not yet docketed); and D.E. 7404 (filed by Mr. and Mrs. Losoya) (collectively, the "Objections").

ny-1154591

Borrower Claims.[4]  Additionally, since the filing of the Motion, an additional 28 claims have been resolved, including 15 Borrower Claims and 13 Non-Borrower Claims.

2.  The Trusts have made substantial progress in reconciling the claims filed against the Debtors' estates; however, the work is not yet complete, and they require additional time to resolve the Unresolved Claims.  As set forth in the Motion, the Plan contemplated that the Trusts' claim reconciliation work might take longer than the 270-days period following the Effective Date; therefore, the Plan allowed for further extensions, as is being requested in the Motion. See Motion at ¶12.

3.  Both of the Trusts are committed to addressing the Unresolved Claims in a timely and expeditious manner.  For example, during the months of October, November and December, there will not only be monthly omnibus hearings during which contested claims matters can be heard by the Court, but also five (5) additional "claims-only" hearings have been scheduled with the Court's permission during which the only scheduled matters will be claims objections. See D.E. 7348.  To the extent that it is not able to consensually resolve those Borrower Claims that are among the Unresolved Claims, the Borrower Trust intends to utilize those hearing dates to bring as many contested claims matters before the Court at the earliest possible time.  Similarly, the Liquidating Trust will continue its efforts to consensually resolve, or, if necessary, seek to disallow certain Unresolved Claims pending against the Liquidating Trust during this period.

4.  Approximately 3,035 Borrower Claims were filed against the Debtors, and the Debtors and Borrower Trust have pared down the number of Unresolved Borrower Claims to

---

[4] These numbers differ slightly from those contained in the Motion. See Motion at ¶ 17 (stating that approximately 1,620 claims remain unresolved, consisting of 648 Borrower Claims and 972 non-Borrower Claims); upon further review, the Trusts determined that an additional 73 claims were expunged or otherwise resolved.

2
ny-1154591

648. See Motion at ¶¶10,16. The Borrower Trust understands the concerns voiced by certain of the Objectors (i.e., those among the 648 Unresolved Claims) that their proof of claim has not yet been allowed and/or adjudicated by the Court, see D.E. 7355; however, the Borrower Claims are unique in that many of the claims contain multiple theories of purported wrongdoing by the Debtors, the merits of which the Borrower Trust must analyze and address as part of the claims reconciliation and objection process. The Borrower Trust, with the invaluable support of the ResCap Liquidating Trust personnel, has undertaken an exhaustive review of each of the Borrower Claims that are Unresolved Claims (a process that is ongoing) and where appropriate, prepares very fact-intensive objections to such claims (either on an individual or omnibus basis) that address the multitude of legal theories often raised by the claimant. Preparing and prosecuting such objections requires substantial time, but the Borrower Trust has been successful in narrowing the universe of claimants with valid causes of action who are entitled to allowed claims against the Debtors' estates. See, e.g., D.E. 6720, 6766, 7015 and 7086.

5. One of the Objectors suggested that the "Court require the Trust to establish an alternative dispute resolution process to wrap up the remaining claims it seeks to resolve without having to present to the Court and other parties with multi-paged memoranda, discovery, and evidentiary hearings which simply drive up legal expenses of the Trust and utilizes the Court's and parties resources which might be better spent on cooperative mediation/resolution." See D.E. 7360. Since it was formed in December 2013, the Borrower Trust's mission has been to maximize distributions to holders of Allowed Borrower Claims, and one way it does that is to ensure that the Borrower Trust's professionals do not unnecessarily litigate meritorious claims and waste valuable Borrower Trust resources. Over the past eight months, the Borrower Trust in furtherance of its duties to its constituents and the goal of

maximizing recoveries to holders of Allowed Borrower Claims, has continued to prosecute omnibus and individual claims objections (where appropriate) because it (as well as the Debtors) have had great success in eliminating overstated and non-meritorious claims from the Claims Register utilizing such claims objection mechanisms. In certain instances, the Court has overruled, in part, the claim objection; however, that is the exception and not the rule. Therefore, the Borrower Trust believes that if claims cannot be resolved consensually by the parties through informal negotiations (which the Borrower Trust has successfully pursued in many instances), then the most efficient way to address the number of Unresolved Borrower Claims is to file and prosecute objections to proofs of claim (and where applicable, identify the potential contested matters in the context of such objection). The Borrower Trust is prepared to then pursue alternative dispute resolution proceedings when the circumstances warrant such a solution; however, it would be an inefficient and time-consuming exercise to mandate that all Unresolved Claims go through non-binding mediation. In addition, the Borrower Trust, where appropriate, is committed to utilizing expedited procedures before this Court to adjudicate contested matters in order to fix the allowed amount of Borrower Claims.

6. The Borrower Trust appreciates the willingness of certain Objectors to "serve on any work-group to aid in the process"; however, the Borrower Trust believes that adding a work group is unnecessary and duplicative of the oversight measures put in place by the Plan and the terms of the Borrower Trust Agreement. As contemplated by the Plan, the Borrower Trust is being administered by a trustee (Peter S. Kravitz), and his efforts are overseen by a Borrower Claims Trust Committee. See Plan, Art. IV.F.5. In fact, in an effort to keep Borrowers apprised of material developments in the administration of Borrower Claims, Mr. Kravitz established a website that is regularly updated and provides a resource for Borrowers to

make inquiries of him. See www.rescapborrowerclaimstrust.com. Therefore, the Court does not need to mandate any further progress reports to creditor borrowers, as such reports are already being prepared and can be found at the aforementioned website.[5] Moreover, the Borrower Claims Trust Committee is already doing the job of the proposed work group. The Borrower Trust, the Liquidating Trust and counsel (including numerous counsel throughout the U.S.) engage in both formal meetings and communication several times a week all directed at expediting the claims resolution process.

7. Certain Objectors have raised a concern about the service of the Motion. As an initial matter, although the Plan expressly provides that the Liquidating Trust may move to extend the Claims Objection Deadline without hearing or notice, see Plan, Art. I.A.54, the Liquidating Trust provided notice of the Motion to all claimants with Unresolved Claims. See Affidavit of Service [D.E. 7341]. Further, the Motion was placed into First Class Mail on July 25, 2014, the same day the Motion was filed with the Bankruptcy Court. *Id*. Parties in interest were given ten (10) days from the date of mailing to object to the Motion, and as noted in the Motion, if an objection to the Motion was filed, a hearing to consider entry of the Motion would be held. Upon receipt of the Objections, the Liquidating Trust provided notice of such hearing to all claimants with Unresolved Claims. See Affidavit of Service [D.E. 7362]. The Trusts never deprived any party from voicing their concerns about the relief being sought in the Motion, and the Objectors will have an opportunity to be heard during the hearing on the Motion.

8. The Debtors and the Trusts have worked tirelessly over the past fifteen months to resolve the entire universe of claims, both Borrower Claims and non-Borrower Claims. They have made enormous progress and are committed to completing their tasks in an

---

[5] For example, by clicking on the "Reports" tab, one could find a spreadsheet that clearly identifies the progress between the Effective Date and June 30, 2014 in reducing the number of unresolved claims.

expeditious and efficient manner. However, additional time is needed. Therefore, for all the reasons set forth in the Motion and this Reply, the Borrower Trust respectfully requests that the Court approve the relief sought in the Motion and extend the claims objection deadline to June 15, 2015 while preserving the right of the Trusts to seek a further extension, if necessary.

Dated: August 21, 2014

/s/ Norman S. Rosenbaum
Norman S. Rosenbaum
Jordan A. Wishnew
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for The ResCap Borrower Claims Trust*