**Hearing Date: August 26, 2014 at 10:00 A.M. (ET)**

MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew

*Counsel for the ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ------------------------------------------------------- ) | | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| ------------------------------------------------------- ) | | |

**RESCAP BORROWER CLAIMS TRUST'S OMNIBUS REPLY IN SUPPORT OF ITS**
**SIXTY-NINTH OMNIBUS OBJECTION TO CLAIMS**
**(NO-LIABILITY BORROWER CLAIMS)**
**AS TO CLAIM NOS. 292, 1279, 1466, 3889, 4129, 4134, AND 4139**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................................... 1

BACKGROUND ........................................................................................................................... 3

A.    Layne Claim ...................................................................................................................... 4

B.    Nakamoto Claim ............................................................................................................... 6

C.    Tobias Claim ..................................................................................................................... 7

D.    Smith Claim ..................................................................................................................... 10

REPLY ........................................................................................................................................ 12

A.    The Layne Claim ............................................................................................................. 13

B.    Nakamoto Claim ............................................................................................................. 14

C.    Tobias Claim ................................................................................................................... 15

D.    Smith  Claim ................................................................................................................... 19

CONCLUSION ........................................................................................................................... 30

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

C<small>ASES</small>

48th St. Steakhouse, Inc. v. Rockefeller Grp., Inc. (In re 48th St. Steakhouse, Inc.),
    835 F.2d 427 (2d Cir.1987) .................................................................................................. 18

Aniel v. GMAC Mortg., LLC,
    No. 12-04201, 2012 WL 5389706 (N.D. Cal. Nov. 2, 2012) ................................................. 23

Bernson v. Browning-Ferris Indus. of Cal., Inc.,
    873 P.2d 613 (Cal. 1994) ...................................................................................................... 21

Brandrup v. ReconTrust Co., N.A.,
    33 P.3d 301 (Or. 2013) ......................................................................................................... 13

Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,
    973 P.2d 527 (Cal. 1999) ...................................................................................................... 28

Chabner v. United of Omaha Life Ins. Co.,
    225 F.3d 1042 (9th Cir. 2000) .............................................................................................. 27

DC Comics v. Pacific Pictures Corp.,
    938 F. Supp. 2d 941 (C.D. Cal. 2013) .................................................................................. 25

Dean Witter Reynolds, Inc. v. Sup. Ct. of Alameda Cnty.,
    259 Cal. Rptr. 789 (Cal. Ct. App. 1989) ............................................................................... 28

Feinberg v. Bank of N.Y. (In re Feinberg),
    442 B.R. 215 (Bankr. S.D.N.Y. 2010) .................................................................................. 12

Glenn K. Jackson Inc. v. Roe,
    273 F.3d 1192 (S.D. Cal. 2002) ............................................................................................ 27

In re Adelphia Commc'ns Corp.,
    Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660 (Bankr. S.D.N.Y. Feb. 20, 2007) ........ 12

In re Allegheny Int'l, Inc.,
    954 F.2d 167 (3d Cir. 1992) ................................................................................................. 12

In re Best Payphones, Inc.,
    279 B.R. 92 (Bankr. S.D.N.Y. 2002) .................................................................................... 18

In re Oneida Ltd.,
    400 B.R. 384 (Bankr. S.D.N.Y. 2009) .................................................................................. 12

In re Residential Capital, LLC,
    507 B.R. 477 (Bankr. S.D.N.Y. 2014) .................................................................................. 12

ii

In re Rockefeller Ctr. Props.,
    272 B.R. 524 (Bankr. S.D.N.Y. 2000) .................................................................13

In re WorldCom, Inc.,
    325 B.R. 511 (Bankr. S.D.N.Y. 2005) .................................................................18

Jolly v. Eli Lilly & Co.,
    751 P.2d 923 (Cal. 1988).....................................................................................20

Jordan v. Paul Fin., LLC,
    745 F. Supp. 2d 1084 (N.D. Cal. 2010)..............................................................22

Krantz v. BT Visual Images, L.L.C.,
    107 Cal. Rptr. 2d 209 (Cal. Ct. App. 2001)........................................................27

Mass. Mut. Life Ins. Co. v. Superior Ct. of San Diego Cnty.,
    119 Cal. Rptr. 2d 190 (Cal. Ct. App. 2002)........................................................28

McGuire v. Recontrust Co., N.A.,
    No. 2:11–CV–2787, 2013 WL 3863903 (E.D. Cal. July 24, 2013) ...................20

McKell v. Wash. Mut., Inc.,
    49 Cal. Rptr. 3d 227 ...........................................................................................28

Migliori v. Boeing N. Am., Inc.,
    114 F. Supp. 2d 876 (C.D. Cal. 2000) ..........................................................20, 21

Norgart v. Upjohn Co.,
    981 P.2d 79 (Cal. 1999).......................................................................................20

Patel v. Mortg. Elec. Registration Sys., Inc.,
    No. 13-cv-1874, 2013 WL 4029277 (N.D. Cal. Aug. 6, 2013)...........................23

People v. Duz-Mor Diagnostic Lab., Inc.,
    80 Cal. Rptr. 2d 419 (Cal. Ct. App. 1998).........................................................27

Rexnord Holdings, Inc. v. Biderman,
    21 F.3d 522 (2d Cir. 1994) .................................................................................18

Rosenfeld v. Nationstar Mortg., LLC,
    No. 2:13-cv-04830, 2014 WL 457920 (C.D. Cal. Feb. 3, 2014).........................26

Rubio v. Capital One Bank (USA), N.A.,
    572 F. Supp. 2d 1157 (C.D. Cal. 2008)..............................................................27

Tsien v. Wells Fargo Home Mortg.,
    No. 09-04790, 2010 WL 2198290 (N.D. Cal. May 28, 2010) ............................26

Wilson v. Household Fin. Corp.,
    No. Civ S-12-1413, 2013 WL 1310589 (E.D. Cal. Mar. 28, 2013) ....................20

**STATUTES**

11 U.S.C.
   § 502(a)................................................................................................................12
   § 502(b)(1)..........................................................................................................12

15 U.S.C.
   § 1620(f)............................................................................................................22
   § 1640(e)............................................................................................................20
   § 1641(e)(1)........................................................................................................22

Cal. Civ. Proc. Code
   § 339(1)..............................................................................................................25

Cal. Code of Civ. Proc.
   § 338(d)..............................................................................................................20

**OTHER AUTHORITIES**

California Procedure § 820 (2008) ...........................................................................26

The ResCap Borrower Claims Trust (the "Borrower Trust"), established pursuant to the terms of the Plan[1] in the above-captioned Chapter 11 Cases, as successor in interest to the above-captioned Debtors with respect to Borrower Claims, by and through its undersigned counsel, hereby submits this reply (the "Reply") and the Supplemental Declaration of Deanna Horst, Chief Claims Officer of the ResCap Liquidating Trust (the "Supplemental Declaration"), annexed hereto as Exhibit 1, to (i) the response filed by Linton C. Layne and Nancy K. Layne ("Mr. and Ms. Layne") [Docket No. 7301] (the "Layne Response"), (ii) the response filed by Ronald and Elaine Nakamoto ("Mr. and Ms. Nakamoto") [Docket No.7345] (the "Nakamoto Response") (iii) the response filed by Edward Tobias ("Mr. Tobias") [Docket No. 7307] (the "Tobias Response"), (iv) the response filed by Tia Smith ("Ms. Smith" and collectively with Mr. and Ms. Layne, Mr. and Ms. Nakamoto, and Mr. Tobias, the "Respondents")) [Docket No. 7300] (the "Smith Response" and collectively with the Layne Response, Nakamoto Response, and Tobias Response, the "Responses")[2] to the *ResCap Borrower Claims Trust's Sixty-Ninth Omnibus Objection to Claims (No Liability Borrower Claims)* [Docket No. 7188] (the "Objection") and in further support of the Objection. The Borrower Trust respectfully states as follows:

## PRELIMINARY STATEMENT

1.        The Borrower Trust examined the Responses and the statements submitted in support thereof. For purposes of this Reply and the Objection, the Borrower Trust takes these statements at face value. If the Court is not prepared to rule on the Objection with respect to Respondents, then the Borrower Trust reserves the right to take discovery from the Respondents.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Objection.

[2] The hearing on claim no. 2079 filed by Maurice Sharpe, claim no. 5066 filed by Otis Collier, and claim nos. 5573 and 5580 filed by Ronald and Julie Eriksen has been adjourned to September 30, 2014. The hearing on claim no. 5634 filed by Aubrey Manuel has been adjourned to September 8, 2014.

2.      As described herein and in the Supplemental Declaration, the Borrower Trust thoroughly examined the Debtors' books and records that were prepared and kept in the course of their regularly conducted business activities (the "Books and Records") in an effort to validate the accuracy of the allegations made in the Responses and the claims at issue, and the Books and Records do not show any liability due and owing to any of the Respondents.

3.      Moreover, as the Objection shifted the burden of proof back to the Respondents, the Respondents must demonstrate a valid claim against the Debtors' estates by a preponderance of the evidence.  For the reasons set forth in the Objection, this Reply, and the Supplemental Declaration, the Respondents have failed to provide any explanation as to why their respective claims are valid and should be allowed against the Debtors' estates.  More specifically, each of the Respondents fail to allege how they were damaged by the actions of the Debtors.

4.      Mr. and Ms. Layne's allegations of liability are predicated on their incorrect belief that a lack of a record in the Washington County records office of an assignment of their note to the Debtors makes the security interest encumbering their property unenforceable.  Additionally, Mr. and Ms. Layne fail to identify how, even if true, this assumption creates any liability for the Debtors.  Finally, Mr. and Ms. Layne are barred from bringing this claim because they failed to affirmatively assert the Layne Claim in their bankruptcy case.

5.      Mr. and Ms. Nakamoto fail to allege any wrongdoing on the part of the Debtors.  For the reasons discussed herein, the Debtors properly denied the Nakamotos' escrow waiver request, and the claimants do not allege how they were damaged in any way as a result of actions taken by any Debtor entity.

2

6.    Mr. Tobias fails to meet his burden of persuasion because he does not state any specific actions or inactions by the Debtor that would give rise to a claim against the Debtors' estates.  The Debtors properly serviced the loan at issue and Mr. Tobias' overly broad and unsubstantiated allegations are insufficient to maintain a claim against the Debtors.

7.    Ms. Smith fails to meet her burden because she fails to identify how any Debtor entity is liable for her alleged injuries.  As set forth herein, the numerous elements of Ms. Smith's claims are either precluded by the applicable statute of limitations or are inadequately pled, and therefore cannot constitute a viable claim against the Debtors.

8.    The Respondents have failed to meet their burden of proof.  Accordingly, the relief sought in the Objection should be granted with respect to each of the Respondents.

### **BACKGROUND**

9.    In connection with the claims reconciliation process, the Borrower Trust identified certain claims filed by Borrowers that it believed did not constitute valid liabilities of the Debtors (together, the "No Liability Borrower Clams").  See Supplemental Declaration ¶ 4.

10.    The Debtors sent Request Letters to certain Borrowers, including Mr. and Ms. Layne, Mr. and Ms. Nakamoto, Mr. Tobias, and Ms. Smith, requesting additional documentation in support of the No Liability Borrower Claims.[3]  See Supplemental Declaration ¶ 5.  The Request Letters state that the claimant must respond within 30 days with an explanation that states the legal and factual reasons why the claimant believes he is owed money or is entitled to other relief from the Debtors, and the claimant must provide copies of any and all documentation that the claimant believes supports the basis for his claim.  The Request Letters further state that if the claimant does not provide the requested explanation and supporting

---

[3] A Request Letter was sent to Mr. and Ms. Layne on May 20, 2013, to Mr. Tobias on May 24, 2013, and to Mr. and Ms. Nakamoto, and Ms. Smith on June 21, 2013.

ny-1152431

documentation within 30 days, the Debtors may file a formal objection to the claimant's claim,

seeking to have the claim disallowed and permanently expunged.  See Supplemental Declaration

¶ 5.

11.    The Debtors received responses to the Request Letters from each of the

Respondents (the "Diligence Responses"), copies of which are attached to the Supplemental

Declaration as Exhibit A-1, Exhibit A-2, Exhibit A-3, and Exhibit A-4.[4]  However, the Diligence

Responses failed to allege bases for claims against the Debtors' estates.  Further, as stated in the

Objection, the Books and Records do not show any liability due and owing to the Respondents.

See Supplemental Declaration ¶ 6.

12.    In addition to the Responses, on or about July 21, 2014, Marcus Harris

("Mr. Harris") filed a "counter claim" to the Objection (the "Harris Response").  Mr. Harris filed

a proof of claim against Homecomings Financial, LLC ("Homecomings"), designated as Claim

No. 1292 (the "Harris Claim").  As stated in the Objection, Mr. Harris did not provide sufficient

documentation to support his claim.  The Harris Response does not provide any additional

information, but rather restates his confusing request that all proceeds generated from his assets

should be returned to the originator of the note, himself.  As a result, the Harris Response does

not show how the Debtors' connection to the claimant gives rise to liability, and is not a

sufficient response to the Objection.  Accordingly, this Reply does not further address the Harris

Response.

A.    **Layne Claim**

13.    On or about July 17, 2012, Mr. and Ms. Layne filed a proof of claim

against GMAC Mortgage, LLC ("GMACM"), designated as Claim No. 292 (the "Layne

---

[4]The Debtors received a Diligence Response from Mr. and Ms. Layne on June 25, 2013, Mr. and Ms. Nakamoto on
 July 29, 2013, from Mr. Tobias on June 20, 2013, and from Ms. Smith on July 22, 2013.

ny-1152431

Claim"), asserting a general unsecured claim in the amount of $35,200. <u>See</u> <u>Exhibit B</u> to the

Supplemental Declaration. In Box 2 of the proof of claim form (Basis for Claim), the Layne

Claim provides that the basis for the claim is "Promissory Note at Closing, No Credit Given."

Nothing is appended to the proof of claim. <u>See</u> Exhibit A to the Objection.

14.     According to the Books and Records, Sierra Pacific Mortgage Company,

Inc. ("<u>Sierra Pacific</u>") originated a second mortgage loan to the Mr. and Ms. Layne (the "<u>Layne</u>

<u>Loan</u>") on March 8, 2006. <u>See</u> Exhibit A to the Objection; <u>see also</u> Layne Note, attached to the

Supplemental Declaration as <u>Exhibit C</u>. Debtor Residential Funding Company ("<u>RFC</u>")

purchased the loan from Sierra Pacific and subsequently transferred its interest in the loan when

it was securitized and Citibank, N.A. was appointed trustee on or about August 31, 2006. <u>See</u> <u>id</u>.

No Debtor currently has an interest in the loan. <u>See</u> Supplemental Declaration ¶ 8.

15.     GMACM serviced the loan from August 4, 2006 until servicing was

transferred to Ocwen on February 16, 2013. <u>See</u> Exhibit A to the Objection.

16.     On June 29, 2009, GMACM charged-off the Layne Loan because the

Debtors' records indicated that there was not sufficient equity to support the second lien.[5] <u>See</u>

Layne Servicing Notes, attached to the Supplemental Declaration as <u>Exhibit E</u>. However, the

charge-off of the Layne Loan did not remove the lien on the property nor absolve Mr. and Ms.

Layne of their financial obligations under the Layne Loan. <u>See</u> Supplemental Declaration at ¶ 9.

17.     Mr. and Ms. Layne filed for chapter 7 bankruptcy protection on or around

December 14, 2010 and received and order of discharge on or around March 16, 2011 (the

"<u>Layne Bankruptcy</u>"). <u>See</u> Discharge Order, attached to the Supplemental Declaration as <u>Exhibit</u>

---

[5] In the Objection, the Borrower Trust incorrectly identified a foreclosure by Bank of America as the reason for the charge-off. Upon further review, the Borrower Trust has determined that Bank of America had not foreclosed on the property at the time of the charge-off, and that the reason for the charge-off was the Debtors' determination that there was no equity in the property.

ny-1152431

F.    The schedules filed in the Layne Bankruptcy do not list any liquidated, unliquidated, or contingent claims against any of the Debtors that are consistent with the allegations in the Layne Claim. <u>See</u> Layne Schedules, attached to the Supplemental Declaration as <u>Exhibit G</u>. All issues of fact in the Layne Claim occurred prior to the Layne Bankruptcy.

**B.    Nakamoto Claim**

18.    On or about October 15, 2012, Mr. and Ms. Nakamoto filed a proof of claim against ResCap, claim number 1279 (the "<u>Nakamoto Claim</u>"), asserting a secured claim against ResCap in the amount of $20,137.18.    <u>See Exhibit H</u>, attached to the Supplemental Declaration.    The Nakamoto Claim was reclassified as a general unsecured claim against GMACM by this Court's *Order Granting Debtors' Thirty-Sixth Omnibus Objection to Claims (Misclassified and Wrong Debtor Borrower Claims)* [Docket No. 5895].    In Box 2 of the proof of claim form (Basis for Claim), the Nakamoto Claim provides that the basis for the claim is "see attached."    <u>See id</u>.    Appended to the proof of claim is a statement of the basis for the claim, which asserts that GMACM wrongfully denied a waiver of their required escrow payment.    <u>See</u> Exhibit A to the Objection.

19.    On or around April 4, 2005, Heritage Place Mortgage, Inc., a non-debtor entity, originated a loan to Mr. and Ms. Nakamoto (the "<u>Nakamoto Loan</u>") in the amount of $35,200.    <u>See</u> Nakamoto Note, attached to the Supplemental Declaration as <u>Exhibit I</u>, <u>see also</u> Supplemental Declaration ¶ 12.

20.    GMACM serviced the loan from September 8, 2005 until servicing was transferred to Ocwen on February 16, 2013.    <u>See</u> Exhibit A to the Objection.    No Debtor ever owned the Nakamoto Loan.    <u>See id</u>.

21.    The Nakamoto Loan required interest-only payments with an annual interest rate of 5.75% for the first five years (i.e. from June 2005 to May 2010).    Thereafter, the

Nakamoto Loan required monthly payments of principal and interest at a rate of 3% plus the 6-month LIBOR rate as of the applicable "change date" per section 4(A) of the Note.  See Nakamoto Note.

22.    On April 12, 2010, the Debtors sent a letter to Mr. and Ms. Nakamoto stating that the interest rate would change to 3.5% effective June 2, 2010.  See April 12 Letter, attached to the Supplemental Declaration as Exhibit J.  Mr. and Ms. Nakamoto never disputed the Debtors' application of the principal and interest to their loan balance.

23.    On May 9, 2011, Mr. and Ms. Nakamoto requested a waiver of the escrow payment required by the Nakamoto Loan.  See Waiver Request, attached to the Supplemental Declaration as Exhibit K.  On May 12, 2011, the Debtors sent a letter to Mr. and Ms. Nakamoto denying their request, explaining that they were ineligible for a waiver under the terms of the Nakamoto Note and mortgage and the investors' guidelines.[6]  See May 12 Letter, attached to the Supplemental Declaration as Exhibit M.  Additionally, a representative of the Debtors spoke with Mr. and Ms. Nakamoto on July 12, 2011, explaining the reason for the denial as well as the loan-to-value requirement.  See Nakamoto Servicing Notes, attached to the Supplemental Declaration as Exhibit N.

C.    Tobias Claim

24.    On or around October 22, 2012, Mr. and Ms. Tobias filed a proof of claim against ResCap, Claim No. 1466 (the "Tobias Claim") asserting a secured claim against Homecomings in the amount of $1,000,000.00.  See Exhibit O to the Supplemental Declaration. In Box 2 of the proof of claim form (Basis for Claim), the Tobias Claim provides that the basis

---

[6] The investor/servicer guidelines for the Nakamoto loan only allowed an escrow waiver when the loan to value ratio on the loan was below 70%.  Additionally, the guidelines did not permit an escrow waiver when the property is not owner occupied.  Since the property securing the Nakamoto Loan was an investment property, it was not eligible. See Deed of Trust, attached to the Supplemental Declaration as Exhibit L.

7

for the claim is "Damages based on Consumer Fraud or other claim/affirmative defenses to foreclosure requesting monetary relief." See id. Mr. Tobias did not append anything to the Tobias Claim, and in his Diligence Response, merely provided a copy of the Consent Judgment (defined below). Mr. Tobias did not explain how the Consent Judgment related to his claim. See Supplemental Declaration ¶ 15.

25.    Mr. Tobias also filed another, substantially similar proof of claim on October 22, 2012, claim number 1467 ("Claim 1467").[1]  Claim 1467 was expunged by the Court's *Memorandum Opinion and Order Sustaining Objection to Claim No. 1467 of Suzanne Koegler and Edward Tobias* [Docket No. 7052] (the "Tobias Order"). The Court found in relevant part that "the facts asserted in the Complaint, which was filed against the Debtors in violation of the automatic stay, are insufficiently pled to form the basis of the claim."

26.    On or around September 2, 2005, GMACM originated a loan to Mr. Tobias (the "Tobias Loan") in the amount of $299,000 for property located at 93 Wisconsin Street, Long Beach, NY. See Tobias Note, attached to the Supplemental Declaration as Exhibit P. GMACM sold its interest in the Tobias Loan to Freddie Mac on October 20, 2005. See Exhibit A to the Objection. GMACM serviced the Tobias Loan from September 2, 2005 until servicing was transferred to Ocwen on February 16, 2013. See id.

27.    Prior to filing the Tobias Claim, Mr. Tobias never disputed the terms of the Tobias Loan with GMACM. See Exhibit A to the Objection. According to the Debtors' servicing notes for the Tobias Loan, it was never referred to foreclosure and was never delinquent. See Tobias Servicing Notes, attached to the Supplemental Declaration as Exhibit Q.

28.    On November 27, 2012, Mr. Tobias requested a reprieve from making payments between December 2012 and February 2013 due to hardship from Hurricane Sandy.

8

On November 28, 2012, GMACM approved Mr. Tobias for a disaster forbearance plan whereby Mr. Tobias was allowed to defer making payments between December 2012 and February 2013 and GMACM agreed not to assess late charges, pursue foreclosure, or report late payments to the credit bureaus during this period. Mr. Tobias was required to make any deferred payments at the end of the forbearance period. See Exhibit A to the Objection; see also Tobias Servicing Notes.

29.    GMACM complied with the forbearance plan, and the servicing notes show that after the Tobias Loan was transferred to Ocwen, Ocwen extended the forbearance plan through May 2013. See Exhibit A to the Objection; see also Tobias Servicing Notes. Mr. Tobias made a payment to Ocwen on May 31, 2013, bringing the account current. See id.

30.    On October 28, 2013, Mr. Tobias filed a complaint against several defendants, including the Debtors,[7] Ocwen, the United States of America, and Barack Obama (the "Tobias Complaint"), which purportedly lays out the case for the Tobias Claim. See Exhibit A to the Objection. In the Complaint, Mr. Tobias asserts that he requested assistance from the Debtors following Hurricane Sandy and that the defendants failed to adequately compensate him for damages that resulted from their wrongful acts. The Complaint further states that the "the defendants wrongfully engaged in illegal or other adverse actions that negatively affected the nationwide real estate market resulting in untrue or inaccurate property values at the time Mr. Tobias purchased the properties" and that Mr. Tobias sustained a loss when he sold the property securing the Tobias Loan. See Tobias Complaint, Docket No. 6881-1 Ex. A. Ocwen filed a motion to dismiss on December 26, 2013, mistakenly including GMACM as a moving defendant. Mr. Tobias responded with a letter to the judge in the case on January 7, 2014 (the

---

[7] Mr. Tobias never received relief from the automatic stay.

"Tobias Letter") in lieu of a more formal response to Ocwen's motion to dismiss.  See Tobias Letter, attached to the Tobias Response.

### D.  Smith Claim

31.     On or about November 9, 2012, Ms. Smith filed proofs of claim against Debtors GMACM (Claim No. 3889); Homecomings Financial (Claim No. 4129); RFC (Claim No. 4134) and Residential Accredit Loans, Inc. ("Accedit") (Claim No. 4139) (collectively, the "Smith Claims"), each asserting a general unsecured claim in the amount of $3,000,000.  See Exhibit R to the Supplemental Declaration.  In Box 2 of each proof of claim form (Basis for Claim), the Smith Claims provide that the basis for the claim is "Predatory Lending, Wrongful Foreclosure."  See id.  Appended to the proof of claim is the first page of the Smith Complaint (defined below).  See Supplemental Declaration ¶ 18.

32.     According to the Books and Records, on or around November 13, 2006 American Mortgage Network, Inc. ("AMN") originated a loan to Ms. Smith.  See Exhibit A attached to the Objection.  The loan involved a mortgage in the amount of $273,600.00 (the "Smith Loan").  See id.  RFC purchased the loan from AMN and subsequently the loan was securitized where Deutsche Bank Trust Company Americas ("Deutsche") was appointed trustee on or about January 30, 2007 (the "Securitization Trust").  See the Smith Note, showing a chain of endorsement from AMN to Deutsche, attached to the Smith Response as Exhibit 6.[8]

33.     Homecomings serviced the loan from December 29, 2006 until servicing was transferred to Aurora Loan Servicing ("Aurora") on April 1, 2008.  See Exhibit A attached to the Objection.

---

[8] It was the Debtors' practice, when acting as servicer, to keep a copy of the note from the originator in the servicing file for the loan.  The original, fully endorsed note would be kept by the custodian for the investor.  This explains the differences in the copies of the Smith Note that Ms. Smith received.  See Exhibit 5 and Exhibit 6 to the Smith Response.  The copy without the endorsement to Deutsche was kept as part of the servicing file.  See Supplemental Declaration ¶ 19.

34. Ms. Smith did not make the February 1, 2008 payment on the Smith Loan. The Debtors sent a letter to Ms. Smith on February 11, 2008 detailing the options available to avoid foreclosure. See Options Letter, attached to the Supplemental Declaration as Exhibit S. The Debtors sent a letter on March 3, 2008 informing Ms. Smith that by not making her payments, she was in breach of the Note. See Breach Letter, attached to the Supplemental Declaration as Exhibit T. The Smith Loan was in default when it was transferred to Aurora. The Debtors never commenced foreclosure proceedings against Ms. Smith.

35. On July 19, 2011, Ms. Smith filed a lawsuit in the Superior Court of California, Los Angeles County, against "GMAC", RFC, Accredit, Homecomings, Deutsche, Aurora, AMN, and others, Smith v. American Mortgage Network, Inc., et al (the "Smith Complaint"). The complaint stated causes of action for breach of contract, breach of implied covenant of good faith and fair dealing, breach of fiduciary duty, deceptive business practices, fraudulent concealment, fraudulent omissions, intentional infliction of emotional distress, negligence, negligent misrepresentation, quite title, slander of title, trespass on contract, unconscionability, unjust enrichment, wrongful conversion of real property, wrongful foreclosure, violation of business and profession code §17200; Violation of California Code §1799.17; and Violation of TILA. See Smith Complaint, attached to the Supplemental Declaration as Exhibit U.

36. The Debtors filed a demurrer to the Smith Complaint on March 5, 2012, which the court sustained with leave to amend on May 22, 2012. See Smith Docket, attached to the Supplemental Declaration as Exhibit V. On June 1, 2012, a notice of bankruptcy was filed advising the court of the commencement of the Debtors' bankruptcy case. See id. The case proceeded as to the non-Debtor defendants. The court granted an extension to file a second

11

amended complaint on June 22, 2012.  Ms. Smith filed a second amended complaint on July 23,

2012. See id.  Aurora, MERS, and Deutsche filed a demurrer on August 28, 2012, which was

sustained with leave to amend on or around May 22, 2013. See id. Ms. Smith filed a third

amended complaint on July 13, 2013.  See id.  The court dismissed the Third Amended

Complaint with regards to Aurora, MERS, and Deutsche on August 16, 2013.  See August 16

Hearing Minutes, attached to the Supplemental Declaration as Exhibit W.

## REPLY

37.    A filed proof of claim is "deemed allowed, unless a party in interest …

objects."  11 U.S.C. §502(a).  Section 502(b)(1) of the Bankruptcy Code provides, in relevant

part, that a claim may not be allowed to the extent that "such claim is unenforceable against the

debtor and property of the debtor, under any agreement or applicable law…." 11 U.S.C.

502(b)(1).  As noted by this Court in a recent decision, claims objections have a shifting burden

of proof.  Pursuant to Federal Rule of Bankruptcy Procedure 3001(f), a claimant establishes a

prima facie case against a debtor upon filing a proof of claim alleging facts sufficient to support

the claim.  The objecting party is thereafter required to produce evidence equal in force to that

provided by the claimant to rebut the presumption of the claimant's prima facie case. In re

Residential Capital, LLC, 507 B.R. 477, 490 (Bankr. S.D.N.Y. 2014).  See also In re Allegheny

Int'l, Inc., 954 F.2d 167, 173-74 (3d Cir. 1992).

38.    Once an objection refutes an essential allegation of the claim, the burden

of persuasion is on the holder of a proof of claim to establish a valid claim against a debtor by a

preponderance of the evidence.  Residential Capital, 507 B.R at 490; Feinberg v. Bank of N.Y.

(In re Feinberg), 442 B.R. 215, 220-22 (Bankr. S.D.N.Y. 2010); In re Oneida Ltd., 400 B.R. 384,

389 (Bankr. S.D.N.Y. 2009); In re Adelphia Commc'ns Corp., Case  No. 02-41729 (REG), 2007

Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); In re Rockefeller Ctr. Props., 272

B.R. 524, 539 (Bankr. S.D.N.Y. 2000).

### A.    The Layne Claim

39.    As the Objection refuted Mr. and Ms. Laynes's allegations of wrongdoing,

the burden to demonstrate the validity of the Layne Claim shifted back to Mr. and Ms. Layne.

The Layne Response fails to state a coherent basis for any liability against the Debtors.   The

Layne Response reiterates the allegations in the Layne Claim that there is no evidence in

Washington County Oregon of the assignment of the note from Sierra Pacific to the Debtors, and

that there is "no note and security interest that has been provided evidencing any debt that may

be owed to the defendant."

40.    Section 5 of the Layne Note states "This Note is Secured by a Deed of

Trust," and as a result is itself evidence of a security interest.  See Layne Note, see also Layne

Deed of Trust, attached to the Supplemental Declaration as Exhibit D.  Additionally, as noted in

the Objection and in the Layne Response, there is no requirement in Oregon that the assignment

of a mortgage be recorded in the county where the property is located in order for the assignee to

have a security interest in the property.  See Layne Response at 7-8; see also Brandrup v.

ReconTrust Co., N.A., 33 P.3d 301, 307 (Or. 2013) ("where a debt is secured by a mortgage, the

debt is the principal and the mortgage is the incident, and an assignment of the debt is an

assignment of the mortgage." (citation omitted)).   Therefore, the lack of a record of the

assignment at the county recording office is not evidence that the Layne Loan does not exist or

that RFC did not have a valid, enforceable security interest during the limited time it held the

Layne Note.

41.    This argument is also specious because the Debtors do not hold an interest

in the Layne Loan.  As noted in the Objection and ¶ 14 supra, RFC briefly held the Layne Loan

in 2006 before transferring its interest to Citibank as Trustee.  GMACM acted merely as the servicer of the Layne Loan.  As a result, it is unclear how the lack of a record of the assignment of the Layne Loan at the county office constitutes a claim against a Debtor.

42.     However, as noted in the Objection, even if the lack of record of the assignment of the Layne Loan did create liability for a Debtor entity, which it did not, Mr. and Ms. Layne effectively waived any potential claims against the Debtors when they failed to identify this alleged asset on the schedules filed in the Layne Bankruptcy.  Additionally, the Layne Claim is property of the Layne's bankruptcy estate, and therefore Mr. and Ms. Layne are also barred from benefitting from this claim due to lack of standing.

43.     Accordingly, for the reasons set forth herein and in the Objection, Claim No. 292 should be disallowed and expunged because Mr. and Ms. Layne have failed to identify a valid claim against the Debtors.

**B.      Nakamoto Claim**

44.     As the Objection refuted Mr. and Ms. Nakamoto's allegations of wrongdoing, the burden to demonstrate the validity of the Nakamoto Claim shifted back to Mr. and Ms. Nakamoto.  The Borrower Trust asserts that the Nakamoto Response fails to state a valid basis for liability as against the Debtors' estates.  The Nakamoto Response reiterates the allegations in the Nakamoto Claim that GMACM wrongfully denied their request for an escrow payment waiver.  However, as noted in the Objection and in ¶ 23 *supra*, Debtors were required by the investor guidelines for the Nakamoto Loan to deny the escrow payment waiver because the property securing the loan was not owner occupied and the loan-to-value ratio exceeded 70%.  Mr. and Ms. Nakamoto do not refute these investor guideline requirements, nor do they allege that GMACM was not required to follow them.

45.     Furthermore, again as noted in the Objection and in ¶ 21 *supra*, the

Nakamoto Note contemplated that after three years, the monthly payment would encompass

payments of principal and interest.  See Nakamoto Note.  Mr. and Ms. Nakamoto neither refute

the terms of the Nakamoto Note, nor do they allege how GMACM acted in a manner

inconsistent with the terms of the Nakamoto Note.

46.     Additionally, Mr. and Ms. Nakamoto do not allege in either the Nakamoto

Claim or the Nakamoto Response that they have been damaged by any action of the Debtors.

Mr. and Ms. Nakamoto state that they have been damaged by larger monthly payments on their

loan, but the amount of their monthly payment is the amount that was contemplated by the Note

and Mortgage, and therefore is not a valid measure of damages.

47.     As a result, Mr. and Ms. Nakamoto have not met their burden of

demonstrating any valid basis for a claim against the Debtors' estates arising out of the servicing

of the Nakamoto Loan, and Claim no. 1279 should be disallowed and expunged.

### C.     Tobias Claim

48.     As the Objection refuted Mr. Tobias' allegations of wrongdoing, the

burden to demonstrate the validity of the Tobias Claim shifted back to Mr. Tobias.  In the Tobias

Response, Mr. Tobias asserts the same basis for a claim that was asserted in Claim 1467, namely

that the Debtors purportedly manipulated the mortgage market, causing the value of Mr. Tobias'

property to be inflated when he obtained the loan, and that the Debtors wrongfully denied him a

loan modification.  The Court already rejected these bases in the Tobias Order.

49.     Mr. Tobias attempts to distinguish the Tobias Claim from Claim 1467,

noting that he attempted to obtain a loan modification with regards to the Tobias Loan, but did

not seek a modification with regards to the loan at issue in Claim 1467.  Mr. Tobias does not

allege that the Debtors acted improperly with regard to the loan modification request.  He

15

correctly acknowledges that the Debtors responded and informed him that they could not address his loan modification request because servicing of his loan transferred to Ocwen. Additionally, Mr. Tobias does not allege with any specificity how he was damaged by any of the Debtors' actions related to this request. In fact, as noted in ¶ 28 *supra*, after the Debtors transferred servicing to Ocwen, Ocwen granted the forbearance and extension, and Mr. Tobias made the payment at the end of the forbearance plan, bringing his account current. As a result, Mr. Tobias has not demonstrated how his request for an additional modification creates a material difference between his allegations in Claim 1467 and the Tobias Claim.

50.    Mr. Tobias also attempts to distinguish the Tobias Claim from Claim 1467 in the Tobias Letter, which was filed in violation of the automatic stay, and appears to be an attempt to amend the Tobias Complaint. In the Tobias Letter, Mr. Tobias continues to make the same general and conclusory allegations as made in the Tobias Complaint: that the Debtors' "market manipulations" led him to lose his investment property and that the Debtors improperly denied Mr. Tobias' loan modification. These are the exact same allegations that were made with regard to Claim 1467, which the Court has already determined do not support a basis for a valid claim.

51.    Additionally, Mr. Tobias generally alleges that the Debtors "fraudulently mischaracterized the 93 Wisconsin St. loan as non-performing such that Ocwen may have been able to purchase this loan at an unfair discount." Not surprisingly, Mr. Tobias fails to provide any objective evidence to substantiate this allegation. Furthermore, this allegation refers to an agreement between Ocwen and GMACM; Mr. Tobias is neither a party to the asset purchase agreement nor a beneficiary of this agreement. Therefore, it is unclear how Mr. Tobias was damaged as a result of the agreement between the Debtors and Ocwen, and Mr. Tobias does not

16

make any specific allegations in that regard.  As a result, Mr. Tobias fails to state a basis for a claim against the Debtors' estates arising out of the agreement to transfer servicing from Ocwen to GMACM.  The Tobias Claim further fails because Ocwen acquired servicing rights from the Debtors; not mortgage loans.

52.    Mr. Tobias also attempts to provide a basis for the Tobias Claim by referencing the Consent Judgment signed on April 4, 2012 by the District Court for the District of Columbia between GMACM, Debtor Residential Capital, LLC, Ally Financial, Inc. and the United States government, and various state attorneys general in United States et al. v. Bank of Am. Corp. et al., Case No. 1:12-cv-00361-RMC (the "Consent Judgment").   The Consent Judgment was the result of a settlement between the five largest mortgage servicers, including GMACM, Debtor Residential Capital, LLC, and Ally Financial, Inc., and the federal government, 49 State attorneys' general, and 48 state banking departments.  See Disclosure Statement for the Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors [Docket No. 4819] at 59-60.   The Consent Judgment did not relate to the Tobias Claim, nor does it involve any specific facts related to the Tobias Loan.  Nevertheless, Mr. Tobias appears to be arguing that the Consent Judgment is sufficient evidence of fraudulent activity related to the Tobias Loan such that he does not need to make any specific allegations as to any action of the Debtor with regards to his situation.  The Consent Judgment is not an admission of general wrongdoing by the Debtors, and Mr. Tobias cannot rely on it as evidence of wrongdoing with regard to the servicing of his loan.  Rather, he must show how specific actions by the Debtors gave rise to his claim.  He cannot use the Consent Judgment to skirt his burden of proof.  As Mr. Tobias has failed to state a single specific allegation of wrongdoing by the Debtors related to the Tobias Loan, the Objection should be granted.

17

53.     In reality, the basis for the Tobias Claim is identical to the basis for the

previously expunged claim, which is the Complaint Mr. Tobias filed on October 25, 2013, one

year and three days <u>after</u> he filed the Tobias Claim and more than **seventeen months after the**

**Petition Date**.  Mr. Tobias did not seek leave to amend the Tobias Claim to incorporate the

Complaint.  As this Court is aware, the automatic stay was in force when Mr. Tobias filed the

Complaint.  "[A]ny Proceedings or actions described in section 362(a)(1) are void and without

vitality if they occur after the automatic stay takes effect."  <u>Rexnord Holdings, Inc. v. Biderman</u>,

21 F.3d 522, 527 (2d Cir. 1994); <u>48th St. Steakhouse, Inc. v. Rockefeller Grp., Inc. (In re 48th</u>

<u>St. Steakhouse, Inc.)</u>, 835 F.2d 427, 431 (2d Cir.1987); <u>In re Best Payphones, Inc.</u>, 279 B.R. 92

(Bankr. S.D.N.Y. 2002).  As noted above, Mr. Tobias did not seek any relief from the stay prior

to filing the Complaint.  As a result, because the Complaint was filed in violation of the

automatic stay, it is void, and has no bearing on the liability of the Debtors' estates for the Tobias

Claim.

54.     While the bankruptcy court has the power to validate an action in

violation of the stay by annulling the automatic stay *nunc pro tunc* to before the violating action,

the Court should not exercise this power here.  <u>Best Payphones</u>, 279 B.R. at 98 (stating the rule

and finding that a proceeding conducted in violation of the automatic stay was void).  Mr. Tobias

has not sought an order annulling the automatic stay, but even if he did, courts in this circuit have

held that annulments should be allowed "only sparingly and in compelling circumstances."  <u>In re</u>

<u>WorldCom, Inc.</u>, 325 B.R. 511, 520 (Bankr. S.D.N.Y. 2005).  Here, Mr. Tobias was clearly

aware of the bankruptcy proceeding, having filed the Tobias Claim before filing the Complaint,

and he has not proffered any additional reasons for granting such extraordinary relief. As a

result, a compelling circumstance does not exist for annulling the automatic stay.

55.     As with the previous Tobias Claim, Mr. Tobias has not met his burden of demonstrating how the Debtors' servicing of his loan gives rise to any liability.  Accordingly, for the reasons set forth in the Objection and the Reply, the Tobias Claim should be disallowed and expunged because Mr. Tobias has failed to substantiate any prepetition liability of the Debtors to him.

**D.    Smith Claim**

*Origination-Based Claims*

56.     In the Smith Response, Ms. Smith alleges various causes of action that arise out of the origination of her loan, including fraud, cancellation of instruments, TILA violations, and fraudulent omissions.  She alleges that the Debtors are liable for these origination based claims because the Debtors purportedly assumed such liability for the origination when they purchased the loan from AMN.  See Smith Response at 12.  To support this allegation, Ms. Smith points generally to various alleged documents she purports relate to the contract between AMN and the Debtors, including the prospectus and pooling and servicing agreement for a securitization trust, a revolving purchase agreement between AMN and the Debtors, and an assumption and assignment agreement between AMN and the Debtors.  See Smith Response at ¶¶ 51-55.  The Debtors have found no basis for these allegations.  The prospectus, pooling and servicing agreement, and assumption and assignment agreement for the RALI Series 2007-QO1 Trust, the Securitized Trust identified in the Smith Response that Ms. Smith alleges her loan was to be assigned, do not include any provisions where the Debtors assumed liability related to origination of a loan that was being purchased.  See Horst Declaration ¶ 23.  Additionally, at the time the Smith Loan was originated, the Debtors were not a party to a revolving purchase agreement with AMN.   See id.  Furthermore, Ms. Smith does not identify specific provisions of these agreements that give rise to this allegedly assumed liability, and she does not attach the

19

alleged agreements as evidence.   As a result, there are no facts presented to support an affirmative assumption of liability.

57.     Additionally, a TILA action must be brought within a year of the occurrence of the alleged violation.  See 15 U.S.C. §1640(e).  As the alleged violations occurred at the time of the origination on November 13, 2006, the statute of limitations expired well before Ms. Smith filed the Smith complaint in July, 2011.

58.     In fact, all of Ms. Smith's other origination-based claims are barred by the statute of limitations.   The statute of limitations for fraud is three years.  See Cal. Code of Civ. Proc. §338(d).   In California, the statute of limitations on a fraud claim does not begin to run until the discovery of the facts constituting the fraud.   See id.  This discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." Norgart v. Upjohn Co., 981 P.2d 79, 88 (Cal. 1999).   Under this rule, "A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery.   Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights.   As long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." Jolly v. Eli Lilly & Co., 751 P.2d 923, 928 (Cal. 1988).

59.     In order to rely on the doctrine of delayed discovery, "a plaintiff must prove (a) a lack of knowledge; (b) lack of a means of obtaining knowledge (in the exercise of reasonable diligence the facts could not have been discovered at an earlier date); and (c) how and when she did actually discover the [claim]."   See Migliori v. Boeing N. Am., Inc., 114 F. Supp. 2d 876 (C.D. Cal. 2000) (stating the rule) (citation omitted); see also McGuire v. Recontrust Co., N.A., No. 2:11-CV-2787, 2013 WL 3863903 at 9 (E.D. Cal. July 24, 2013) (finding that

20

allegations of fraud relating to origination did not meet delayed discovery rule because he did not explain why the facts could not have been discovered sooner); Wilson v. Household Fin. Corp., No. Civ S-12-1413, 2013 WL 1310589 at 4 (E.D. Cal. Mar. 28, 2013) (finding that delayed discovery could not be applied to a claim for origination fraud where there was nothing preventing the plaintiffs from obtaining a copy of their loan application).

60.    Furthermore, under a related doctrine, the fraudulent concealment doctrine, "a defendant's fraud in concealing a cause of action against him tolls the applicable statute of limitations, but only for that period during which the claim is undiscovered by the plaintiff or until such time as the plaintiff, by exercise of reasonable diligence, should have discovered it." Migliori, 114 F. Supp 2d 976 at 983.    "Like the discovery rule, the rule of fraudulent concealment is an equitable principle designed to effect substantial justice between the parties; its rationale is that the culpable defendant should be estopped from profiting by his own wrong to the extent that it hindered an otherwise diligent plaintiff in discovering his cause of action." Bernson v. Browning-Ferris Indus. of Cal., Inc., 873 P.2d 613, 615 (Cal. 1994).

61.    In the Smith Response, Ms. Smith alleges that she could not have discovered the fraud related to her loan application until she received her loan application on or near November 15, 2009, approximately three years after the loan was originated.    However, Ms. Smith does not explain what was preventing her from obtaining a copy of her loan application prior to this date.    All that she would have had to do was request her loan application from her servicer, as she did in November of 2009.    See Smith Response at ¶ 64.    As a result, she has not sufficiently stated a basis for delaying the start of the statute of limitations, and any fraud claims related to the origination are thus time-barred.

21

62.    Ms. Smith alleges that the Debtors are liable for the loan documents and mandatory disclosure documents provided to the Claimant that allegedly did not comply with the requirements of the Truth in Lending Act (TILA).  However, in order to be liable under TILA, a party must be either a "creditor" or an "assignee" of the loan.  See 15 U.S.C. §1620(f).  Since the Debtors were not the original counterparty to the Smith Loan, Ms. Smith would need to demonstrate that the Debtors are liable as an assignee of the Smith Loan.  But, an assignee can only be liable for the initial creditor's failure to give proper TILA disclosures if the violation is apparent on the face of the loan disclosure statement.  See 15 U.S.C. §1641(e)(1).  While Ms. Smith alleges that the allegedly forged loan application provided the Debtors with constructive notice of the alleged TILA violations, Ms. Smith does not demonstrate how the Debtors would have known of the alleged forgery from the face of the loan application.  In fact, the Debtors submit that there is nothing on the face of the Smith Loan to suggest that there is anything wrong with the document. As a result, Ms. Smith has not met her burden in demonstrating how the Debtors are liable for any violation of TILA.

63.    All of Ms. Smith's other origination-based claims relate to some form of defect in the Smith Note, the deed of trust, and other documents that were part of the origination of the Smith Loan.  As discussed above, none of the Debtors were involved in the origination of the Smith Loan.  While courts have found that in some circumstances an assignee of a loan can be liable for origination-based claim, those circumstances do not apply in this case.  See Jordan v. Paul Fin., LLC, 745 F. Supp. 2d 1084 (N.D. Cal. 2010)).  In Jordan, the assignee provided a stream of funding to the originator that funded each of the loans.  See id.  Here, while RFC had acted as a warehouse lender to AMN prior to the origination of Ms. Smith's loan, it was not acting in such a capacity when the Smith Loan was originated.  See Supplemental Declaration at

22

¶ 24.  As a result, the Debtors cannot have any liability for any issue with the loan documents executed during the origination.

64.  As a result, Ms. Smith has not met her burden of demonstrating any liability of the Debtors' estates related to the origination of the Smith Loan.

*Securitization-Based Claims*

65.  Ms. Smith alleges various claims, including breach of contract, unfair debt collection, and unjust enrichment, based on allegations that the Debtors never had the authority to actually collect payment on the Smith Loan because the Smith Loan was never actually deposited into the Securitization Trust.  However, as discussed in ¶ 31 *supra* and as evidenced by the Smith Note, there was a proper chain of title from AMN to RFC and from RFC to Deutsche. Ms. Smith alleges that there is no evidence that the Smith Loan was deposited into the Securitization Trust because there is no endorsement to the Securitization Trust on the Note. However, because Deutsche was the trustee for the Securitization Trust, an endorsement to Deutsche is all that is needed to evidence transfer into the Securitization Trust itself.  Ms. Smith has not submitted any evidence to the contrary.   Therefore, Ms. Smith has not demonstrated that there was a defect in the assignment of the Smith Loan into the Securitization Trust, and therefore cannot state a claim against the Debtors' estates based on a defect in the chain of title.

66.  Moreover, Ms. Smith's allegations against the Debtors are equally improper and invalid because Ms. Smith, as a borrower under a note and deed of trust with AMN, does not have standing to contest an assignment of her loan.  See Deed of Trust at ¶ 20; see also Patel v. Mortg. Elec. Registration Sys., Inc., No. 13-cv-1874, 2013 WL 4029277 at 6 (N.D. Cal. Aug. 6, 2013) (finding that a borrower does not have standing to assert a breach of a pooling and servicing agreement); Aniel v. GMAC Mortg., LLC, No. 12-04201, 2012 WL

5389706 (N.D. Cal. Nov. 2, 2012) (plaintiff borrowers lacked standing to challenge assignment of deed of trust based on noncompliance with pooling and service agreements).  Ms. Smith is not a party to the relevant pooling and servicing agreement (the "PSA"), nor is she a beneficiary. Her contract is with the originator-AMN, who is also not a party to the PSA.    As a result, Ms. Smith does not have standing to contest the assignment of her loan into the Securitization Trust.

*Foreclosure-Based Claims*

67.    In the Smith Response, Ms. Smith alleges that the Debtors are liable for various foreclosure-based claims, including wrongful foreclosure, breach of contract, unfair debt collection practices, constructive trust, and quiet title.  While Ms. Smith admits that the Debtors were not servicing the Smith Loan at the time of foreclosure and were not involved in any way with the foreclosure of her loan, she alleges that servicing was never actually transferred to Aurora, leaving Homecomings responsible as her servicer.

68.    Ms. Smith alleges that Homecomings sold its servicing platform to GMACM in September 2007 and therefore could not have transferred servicing of her loan to Aurora in 2008.  See Smith Response ¶37.  In support of this allegation, she attaches a 10-K for the RALI Series 2007QO1 Trust, which discusses the merger of the servicing platforms utilized by Homecomings and GMACM.  This merger was not a sale by Homecomings of its servicing rights to the loans it serviced, but rather was a merger of the servicing platform between these two affiliates.  See Supplemental Declaration at ¶ 25.  Therefore, Ms. Smith is incorrect when she alleged that Homecomings could not have transferred the servicing rights to the Smith Loan to non-Debtor Aurora in 2008.  As a result, the Debtors' estates are not liable for any action taken against the Smith Loan after Aurora began servicing the Smith Loan.

*Tortious Interference with a Contract*

69.    Ms. Smith alleges that the Debtors are liable for tortuously interfering with her mortgage contract.  <u>See</u> Smith Response at ¶¶ 80-90.  As the Objection refuted the allegations made in the Smith Claim, Ms. Smith now has the burden to demonstrate by preponderance of the evidence that under applicable law the claim should be allowed.  <u>See</u> *Memorandum Opinion and Order Sustaining the ResCap Borrower Claims Trust's Objection to Claim No. 5282 of Michelle Lawson* [Docket No. 7328]. The only allegation made by Ms. Smith that actually relates to an action of the Debtors is the allegation that in November 2007 she was purportedly told by a Homecomings representative that she would need to skip at least three mortgage payments in order to qualify for a loan modification.  <u>See</u> Smith Response at ¶ 36. Ms. Smith has submitted no admissible evidence that would support her allegations of misrepresentations made by Homecomings.  In addition, the Debtors have not found any support for this allegation in its servicing notes.  <u>See</u> Smith Servicing Notes, attached to the Supplemental Declaration as <u>Exhibit X</u>; <u>see also</u> Supplemental Declaration at ¶ 26. In fact, the servicing notes do not reflect a call with Ms. Smith in November, 2007.  <u>See</u> <u>id</u>.  Furthermore, Ms. Smith does not provide any specific details about this conversation, nor does she provide any evidentiary support.  As a result, she has not shown by a preponderance of the evidence that the Smith Claim should be allowed under applicable law.

70.    Even if Ms. Smith has made sufficient allegations to allege a cause of action for misrepresentation, the statute of limitations on such a cause of action expired before the Petition Date.  The statute of limitations for tortious interference with a contract is governed by a two-year statute limitations period in California.  <u>See</u> Cal. Civ. Proc. Code §339(1); <u>DC Comics v. Pacific Pictures Corp.</u>, 938 F. Supp. 2d 941 (C.D. Cal. 2013) (citing <u>Kiang v. Strycula</u>,

231 Cal.App.2d 809 (1965).  In the Smith Response, Ms. Smith notes that she received oral communication from Aurora on April 30, 2008 that she was in default of her loan, and that there was nothing in the servicing notes to indicate that any alleged representations were made by a Homecomings representative to her presumably in November 2007 regarding the basis on which she could qualify for a loan modification.  See Smith Response at ¶38.  As a result, Ms. Smith admits to having knowledge of potential issues with the alleged statement made by Homecomings by at least April 2008, and at that point, it was her responsibility to find facts and decide whether to file a suit.  As a result, the statute of limitations for any fraud claim related to the alleged representations expired on April 30, 2010, if not sooner.  Ms. Smith did not file her first complaint against the Debtors until June 22, 2011, over a year after the expiration of the statute of limitations.

*Other Causes of Action*

71.     The Smith Response also alleges a cause of action for accounting, stating that the Debtors have a fiduciary duty to "account for payments made by Claimant."  See Smith Response ¶ 121. The elements for a demand for account are "(1) a fiduciary relationship between the plaintiff, or another relationship in which the defendant is uniquely situated to provide an accounting to the Plaintiff, and (2) a balance due from the defendant to the plaintiff that cannot be ascertained by calculation alone.  See California Procedure §820 (2008); see also Rosenfeld v. Nationstar Mortg., LLC, No. 2:13-cv-04830, 2014 WL 457920 (C.D. Cal. Feb. 3, 2014) (finding that an action for accounting could not be maintained by a borrower against a lender because a lender is not in a fiduciary relationship with a borrower).  Ms. Smith alleges that the Debtors, as mortgage servicer, had a fiduciary duty to Ms. Smith to properly account for payments made by her.  However, a mortgage servicer does not owe a fiduciary duty to a borrower.  See Tsien v.

26

Wells Fargo Home Mortg., No. 09-04790, 2010 WL 2198290 at 5 (N.D. Cal. May 28, 2010) (finding that a loan servicer does not generally owe a fiduciary duty to a borrower unless, by their actions, they assumed the duty or created a special relationship with the borrower). As Ms. Smith alleges that the Debtors owe her a fiduciary duty based on their role as servicer, and not based on any action taken by the Debtors to assume a duty to Ms. Smith, she has failed to meet her burden of demonstrating that the Debtors owe her a fiduciary duty, and therefore the Debtors' estates cannot be liable for an accounting cause of action.

72.    Finally, Ms. Smith alleges that the Debtors are liable for violating the California Business and Professions Code Section 17200. "A court may not allow plaintiff to plead around an absolute bar to relief simply by recasting the cause of action as one for unfair competition." Chabner v. United of Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000); see also Rubio v. Capital One Bank (USA), N.A., 572 F. Supp. 2d 1157, 1168 (C.D. Cal. 2008) (since plaintiff's TILA claim failed, plaintiff's claim alleging unfair business practices under California State law predicated on TILA likewise failed). Courts have made clear that California's Business and Professions Code § 17200 (the "UCL") cannot be used as an end-run around the requirements of other statutes. Glenn K. Jackson Inc. v. Roe, 273 F.3d 1192, 1203 (S.D. Cal. 2002) (dismissing a UCL claim where underlying negligence and fraud claims were insufficient as a matter of law); see also Krantz v. BT Visual Images, L.L.C., 89 Cal. App. 4th 164, 178 (2001) (the viability of a UCL claim stands or falls with the antecedent substantive causes of action).

73.    A claim under the UCL requires an underlying violation of law. Therefore, any defense to the predicate claim is a defense to the alleged violation of the UCL. See Krantz v. BT Visual Images, L.L.C., 107 Cal. Rptr. 2d 209, 219 (Cal. Ct. App. 2001) (the

viability of a UCL claim stands or falls with the antecedent substantive causes of action);
People v. Duz-Mor Diagnostic Lab., Inc., 80 Cal. Rptr. 2d 419, 431-32 (Cal. Ct. App. 1998) (a
defense to the underlying offense is a defense under the UCL); see also Glenn K. Jackson Inc. v.
Roe, 273 F.3d 1192 at 1203 (dismissing section 17200 claim where underlying negligence and
fraud claims were insufficient as a matter of law).  As discussed herein, the Debtors acted
lawfully as purchaser and servicer of the Smith Loan and each of Ms. Smith's causes of action
fails against the Debtors.

74.    Ms. Smith predicates her UCL claims on the same theories which provide
the basis for each of her other causes of action.  Indeed, her UCL claim is a mere recasting of her
other claims.  As all of Ms. Smith's causes of action fail – as do the faulty theories upon which
they are predicated – so too does Ms. Smith's UCL claim.

75.    A business practice is considered "unfair" if it threatens to violate or
violates the policy or spirit of an anti-trust law or otherwise significantly threatens or harms
competition.  Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 973 P.2d 527, 540
(Cal. 1999).  However, if the customer has a meaningful market choice, i.e., other vendors that
offer reasonably available alternatives to the defendant's product, the challenged procedures
cannot be considered "unfair."  Dean Witter Reynolds, Inc. v. Sup. Ct. of Alameda Cnty., 259
Cal. Rptr. 789 (Cal. Ct. App. 1989).  It can hardly be said that Ms. Smith did not have alternative
financial institutions that were reasonably available for her mortgage needs.  As such, Ms. Smith
cannot allege the Debtors' actions are "unfair" under Section 17200.

76.    A business practice is considered "fraudulent" within the meaning of
§ 17200 if the "public is likely to be deceived."  Mass. Mut. Life Ins. Co. v. Superior Ct. of San
Diego Cnty., 119 Cal. Rptr. 2d 190, 195 (Cal. Ct. App. 2002).  "The determination as to whether

a business practice is deceptive is based on the likely effect such practice would have on a reasonable consumer." <u>McKell v. Wash. Mut., Inc.</u>, 49 Cal. Rptr. 3d 227, 238 (citing <u>Lavie v. Procter & Gamble Co.</u>, 129 Cal. Rptr. 2d 486, 494 (Cal. Ct. App. 2003)).

77.    Ms. Smith fails to support the elements of any fraud claim against the Debtors.  Therefore, Ms. Smith fails to allege fraudulent conduct under the UCL.  Based on the foregoing, the Objection should be sustained as to Ms. Smith's UCL claim.

78.    Even if the Court finds that the Debtors are liable for the Smith Claim, it should not award Ms. Smith a claim for the amount alleged in the proof of claim.  Even assuming the Debtors are responsible for all of the causes of action in the Smith Response, which they are not, nowhere in the Smith Claim or the Smith Response does Ms. Smith provide an explanation for how her alleged injuries amount to $3 million in damages.  As a result, Ms. Smith has not met her burden of proof in demonstrating how the Debtors are liable for such a large amount of damages.

*Allegations of Hearsay*

79.    Ms. Smith also objects to the Borrower Trust's submission of the Horst Declaration in the support of the Objection as hearsay.  <u>See</u> Smith Response ¶¶ 56-61.  This objection is unsubstantiated and lacks any objective support.  As an initial matter, Ms. Smith does not identify any of the statements in the Horst Declaration as being factually inaccurate, nor does she identify a legitimate basis for calling into question the trustworthiness of Ms. Horst's written testimony.  Moreover, all of the statements made are based on information maintained in the Debtors' Books and Records, records kept in the ordinary course of business of the Debtors.  All of the factual background was recorded in the Smith Servicing Notes.  As a result, these statements qualify as an exception to the rule against hearsay under Fed. R. of Evid. 803(6)(B).

29

80.     Ms. Smith has not met her burden of demonstrating how the Debtors' connection to the Smith Loan gives rise to any liability of any Debtor, and there is no support in the Books and Records for a prepetition liability to Ms. Smith.  Accordingly, for the reasons set forth in the Objection and the Reply, the Smith Claim should be disallowed and expunged because Ms. Smith has failed to substantiate any prepetition liability of the Debtors to her.

### CONCLUSION

81.     WHEREFORE, the Borrower Trust respectfully submits that the relief requested in the Objection should be granted in its entirety.

Dated: August 21, 2014
      New York, New York

    /s/  Norman Rosenbaum
Norman S. Rosenbaum
Jordan A. Wishnew
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
*Counsel for the ResCap Borrower Claims Trust*

30