24

All other terms and conditions of the Note remain in full force and effect

By signing below, Borrower accepts and agrees to the terms and provisions contained in this Rider to Note and Security Instrument

NOTICE TO BORROWER

Do not sign this loan agreement before you read it. This loan agreement provides for the payment of a penalty if you wish to repay the loan prior to the date provided for repayments in the loan agreement.

_____  12/2/06
TIA DANIELLE SMITH                      Date

_____
                                                    Date

_____
                                                    Date

_____
                                                    Date

1/18/05                          Page 2 of 2                          ACST1552

Public Record

# EXHIBIT C

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☑ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

_____   _____
Borrower                      Co-Borrower

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA   ☑ Conventional   ☐ Other (explain):   ☐ FHA   ☐ USDA/Rural Housing Service | | Agency Case Number | Lender Case Number |
|---|---|---|---|---|

| Amount | Interest Rate | No. of Months | Amortization Type: |
|---|---|---|---|
| $ 556,000 | 1.500 % | 360/360 | ☑ Fixed Rate   ☐ GPM   ☐ Other (explain):   ☐ ARM (type): |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, & ZIP) | No. of Units |
|---|---|
| 4011 HUBERT AVENUE, Los Angeles, CA 90008   County: Los Angeles | 1 |

| Legal Description of Subject Property (attach description if necessary) | Year Built |
|---|---|
| PER PRELIM | 1939 |

| Purpose of Loan | ☐ Purchase   ☐ Construction   ☐ Other (explain): ☑ Refinance   ☐ Construction-Permanent | Property will be: ☑ Primary Residence   ☐ Secondary Residence   ☐ Investment |
|---|---|---|

**Complete this line if construction or construction-permanent loan.**

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a+b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

**Complete this line if this is a refinance loan.**

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements | ☐ made   ☐ to be made |
|---|---|---|---|---|---|
| 2033 | $ 305,000 | $ 616,000 | | Cost: $ | |

| Title will be held in what Name(s) | Manner in which Title will be held | Estate will be held in: |
|---|---|---|
| TIA DANIELLE SMITH | Single woman | ☑ Fee Simple   ☐ Leasehold (show expiration date) |

| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain) |
|---|
| Equity from Subject Property |

## III. BORROWER INFORMATION

| Borrower | Co-Borrower |
|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) | Co-Borrower's Name (include Jr. or Sr. if applicable) |
| TIA DANIELLE SMITH | |

| Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School |
|---|---|---|---|---|---|---|---|
| ████-2841 | 323-295-0517 | 12/04/██ | 14 | | | | |

| ☐ Married  ☑ Unmarried (include single, divorced, widowed)  ☐ Separated | Dependents (not listed by Co-Borrower) no.   ages | ☐ Married  ☐ Unmarried (include single, divorced, widowed)  ☐ Separated | Dependents (not listed by Borrower) no.   ages |
|---|---|---|---|
| Present Address (street, city, state, ZIP) ☑ Own  ☐ Rent  5  No. Yrs. | | Present Address (street, city, state, ZIP) ☐ Own  ☐ Rent  ___ No. Yrs. | |
| 4011 HUBERT AVENUE   Los Angeles, CA 90008 | | | |
| Mailing Address, if different from Present Address | | Mailing Address, if different from Present Address | |

**If residing at present address for less than two years, complete the following:**

| Former Address (street, city, state, ZIP)  ☐ Own  ☐ Rent  ___ No. Yrs. | Former Address (street, city, state, ZIP)  ☐ Own  ☐ Rent  ___ No. Yrs. |
|---|---|
| Former Address (street, city, state, ZIP)  ☐ Own  ☐ Rent  ___ No. Yrs. | Former Address (street, city, state, ZIP)  ☐ Own  ☐ Rent  ___ No. Yrs. |

## IV. EMPLOYMENT INFORMATION

| Borrower | | | Co-Borrower | | |
|---|---|---|---|---|---|
| Name & Address of Employer ☑ Self Employed | | Yrs. on this job 15 yr(s) | Name & Address of Employer ☐ Self Employed | | Yrs. on this job |
| **REVIVE A HAIR AND BODY SPA** 217 N. EUCALYPTUS Inglewood, CA 90301 | | Yrs. employed in this line of work/profession 15 | | | Yrs. employed in this line of work/profession |
| Position/Title/Type of Business OWNER | Business Phone (incl. area code) 310-677-3733 | | Position/Title/Type of Business | Business Phone (incl. area code) | |

*If employed in current position for less than two years or if currently employed in more than one position, complete the following:*

| Name & Address of Employer ☐ Self Employed | | Dates (from-to) | Name & Address of Employer ☐ Self Employed | | Dates (from-to) |
|---|---|---|---|---|---|
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | Business Phone (incl. area code) | |

| Name & Address of Employer ☐ Self Employed | | Dates (from-to) | Name & Address of Employer ☐ Self Employed | | Dates (from-to) |
|---|---|---|---|---|---|
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | Business Phone (incl. area code) | |

| Name & Address of Employer ☐ Self Employed | | Dates (from-to) | Name & Address of Employer ☐ Self Employed | | Dates (from-to) |
|---|---|---|---|---|---|
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | Business Phone (incl. area code) | |

| Name & Address of Employer ☐ Self Employed | | Dates (from-to) | Name & Address of Employer ☐ Self Employed | | Dates (from-to) |
|---|---|---|---|---|---|
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | Business Phone (incl. area code) | |

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 17,500.00 | $ | $ 17,500.00 | Rent | $ | |
| Overtime | | | | First Mortgage (P&I) | 2,830.00 | $ 1,918.87 |
| Bonuses | | | | Other Financing (P&I) | 1,119.00 | 593.64 |
| Commissions | | | | Hazard Insurance | 80.00 | 80.00 |
| Dividends/Interest | | | | Real Estate Taxes | 322.00 | 322.00 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ 17,500.00 | $ | $ 17,500.00 | Total | $ 4,351.00 | $ 2,914.51 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income    *Notice:* Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |
| | | |

Fannie Mae Form 1003   07/05
CALYX Form Loanapp2.frm 09/05

Page 2 of 5

Borrower _L.D.S_
Co-Borrower _____

Freddie Mac Form 65   07/05

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed by that spouse or other person also.

Completed ☑ Jointly ☐ Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | **LIABILITIES** | Monthly Payment & Months Left to Pay | Unpaid Balance |
| **List checking and savings accounts below** | | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union MORGAN STANLEY | | CHASE MANHATTAN MTGE | | |
| | | | | |
| Acct. no. 238040492165 | $ 8,805 | Acct. no. ████2576 | * (2,830) | 480,354 |
| Name and address of Bank, S&L, or Credit Union MORGAN STANLEY | | Name and address of Company COUNTRYWIDE HOME LOANS 16210,16214 SANDY PLACE | $ Payment/Months | $ |
| | | | | |
| Acct. no. 238040401165 | $ 7,151 | Acct. no. ████0023 | (998) | 165,200 |
| Name and address of Bank, S&L, or Credit Union UBS FINANCIAL | | Name and address of Company AMERICAN HOME MTG SRV 5108 JEREMIAH RENTAL | $ Payment/Months | $ |
| | | | | |
| Acct. no. TP74523PC | $ 1,607 | Acct. no. ████162 | (909) | 125,520 |
| Stocks & Bonds (Company name/number description) | $ | Name and address of Company EMC MORTGAGE 12 PINE WAY RENTAL | $ Payment/Months | $ |
| MARTH STEWART (50 Shares) PRUDENTAL FINCL | 950 6,337 | Acct. no. ████7061 | (855) | 96,000 |
| Life insurance net cash value | $ | Name and address of Company AURORA LOAN SERVICES 17 PINE WAY RENTAL | $ Payment/Months | $ |
| Face amount: $ 352,000 | 6,600 | | | |
| Subtotal Liquid Assets | $ 32,929 | Acct. no. ████51684 | (893) | 84,000 |
| Real estate owned (enter market value from schedule of real estate owned) | $ 1,400,000 | Name and address of Company COUNTRYWIDE HOME LOANS 16210,16214 SANDY PASS RENTAL | $ Payment/Months | $ |
| Vested interest in retirement fund | $ | | | |
| Net worth of business(es) owned (attach financial statement) | $ | Acct. no. ████0055 | (613) | 58,992 |
| Automobiles owned (make and year) 2004 RANGE ROVER HSE | 56,000 | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) HOUSEHOLD ITEMS | $ | Job-Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | $ 2,199 | |
| Total Assets a. | $ 1,488,929 | Net Worth (a minus b) => $ 179,594 | Total Liabilities b. | $ 1,309,335 |

### Schedule of Real Estate Owned (if additional properties are owned, use continuation sheet)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|---|
| 4011 HUBERT AVENUE Los Angeles, CA 90008 | | SFR | $ 690,000 | $ 615,000 | $ | $ 4,147 | $ INC | $ |
| 12 PINE WAY CONROY, TX | R | SFR | 145,000 | 120,000 | 1,200 | 884 | INC | 16 |
| 5108 JEREMIAH MISSOURI | R | SFR | 175,000 | 149,055 | 1,350 | 1,160 | INC | -148 |
| * See page 5 for the additional properties | | Totals | $ 1,400,000 | $ 1,223,441 | $ 6,300 | $ 8,986 | $ 245 | $ -360 |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

Fannie Mae Form 1003  07/05
CALYX Form Loanapp3.frm 09/05

Page 3 of 6

Borrower _____
Co-Borrower _____

Freddie Mac Form 65  07/05

## Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower:  TIA DANIELLE SMITH | Agency Case Number: |
|---|---|---|
| | Co-Borrower: | Lender Case Number: |

### VI.  ASSETS  AND  LIABILITIES

| ASSETS | Cash or Market Value | LIABILITIES | | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|---|
| Name and address of Bank, S&L, or Credit Union  OPTIONS XPRESS | | Name and address of Company  US BANK | $ Payt./Mos. | $ | $ |
| Acct. no. 5A15-261/0220-9641 | $         1,579 | Acct. No. ████0028 | | 1,018 | 41,769 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company  GMAC MORTGAGE CORP  17 PINE WAY RENTAL | $ Payt./Mos. | $ | |
| Acct. no. | $ | Acct. No. ████9323 | | (291) | 30,205 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company  EMC MORTGAGE  12 PINE WAY RENTAL | $ Payt./Mos. | $ | |
| Acct. no. | $ | Acct. No. ████7087 | | (228) | 24,000 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company  AMERICAN HOME MTG SRV  5108 JEREMIAH RENTAL | $ Payt./Mos. | $ | |
| Acct. no. | $ | Acct. No. ████182 | | 251/(R) | 23,522 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company  BOA MBNA | $ Payt./Mos. | $ | |
| Acct. no. | $ | Acct. No. ████ | | 200/(R) | 19,535 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company  BANK OF AMERICA | $ Payt./Mos. | $ | |
| Acct. no. | $ | Acct. No. ████0020 | | 272/(R) | 14,681 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company  HSBC NV | $ Payt./Mos. | $ | |
| Acct. no. | $ | Acct. No. ████0944 | | 380/(R) | 7,616 |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature:  X | Date  12/5/2006 | Co-Borrower's Signature:  X | Date |
|---|---|---|---|

Fannie Mae Form 1003    07/05
CALYX Form 1003 Lnap5aat.frm 8/05

Page 5 of 5

Freddie Mac Form 65    07/05

## Continuation Sheet/Residential Loan Application

| | | Agency Case Number: |
|---|---|---|
| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower:<br>**TIA DANIELLE SMITH** | |
| | Co-Borrower: | Lender Case Number: |

### VI.    ASSETS    AND    LIABILITIES

| ASSETS | Cash or Market Value | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company<br>**UNLV/CITI** | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. ████252 | 19/(R) | 19 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company<br>**BLMDSNB** | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. ████8702 | 34/(R) | 1,333 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company<br>**HSBC/SAKS** | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. ████████9289 | 25/(R) | 609 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company<br>**COUNTRYWIDE HOME LOANS** | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. ████3171 | (900) | 136,000 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature:<br>X | Date<br>12/5/2006 | Co-Borrower's Signature:<br>X | Date |
|---|---|---|---|

## Continuation Sheet/Residential Loan Application

| | |
|---|---|
| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower: **TIA DANIELLE SMITH** |
| | Co-Borrower: |

| | |
|---|---|
| Agency Case Number: | |
| Lender Case Number: | |

### VI. ASSETS AND LIABILITIES

**Schedule of Real Estate Owned**

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 16210,16214 SANDY PASS LANE HOUSTON, TX | R | 2-4PLX | 245,000 | 224,192 | 2,400 | 1,611 | 245 | -56 |
| 17 PINE WAY CONROY, TX | R | SFR | 145,000 | 114,194 | 1,350 | 1,184 | Inc | -172 |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: | Date 12/5/2006 | Co-Borrower's Signature: X | Date |
|---|---|---|---|

Fannie Mae Form 1003   07/05
CALYX Form Lnap5reo.frm 08/05

Page 5 of 5

Freddie Mac Form 65   07/05

## VII. DETAILS OF TRANSACTION

| | $ |
|---|---|
| a. Purchase price | |
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | 616,354.00 |
| e. Estimated prepaid items | 2,412.00 |
| f. Estimated closing costs | 8,589.00 |
| g. PMI, MIP, Funding Fee | |
| h. Discount (if Borrower will pay) | |
| i. Total costs (add items a through h) | 627,355.00 |
| j. Subordinate financing | 69,500.00 |
| k. Borrower's closing costs paid by Seller | |
| l. Other Credits (explain) | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 556,000.00 |
| n. PMI, MIP, Funding Fee financed | |
| o. Loan amount (add m & n) | 556,000.00 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | 1,855.00 |

## VIII. DECLARATIONS

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower Yes | Borrower No | Co-Borrower Yes | Co-Borrower No |
|---|---|---|---|---|
| a. Are there any outstanding judgments against you? | ☐ | ☑ | ☐ | ☐ |
| b. Have you been declared bankrupt within the past 7 years? | ☐ | ☑ | ☐ | ☐ |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | ☐ | ☑ | ☐ | ☐ |
| d. Are you a party to a lawsuit? | ☐ | ☑ | ☐ | ☐ |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | ☐ | ☑ | ☐ | ☐ |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | ☐ | ☑ | ☐ | ☐ |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | ☐ | ☑ | ☐ | ☐ |
| h. Is any part of the down payment borrowed? | ☐ | ☑ | ☐ | ☐ |
| i. Are you a co-maker or endorser on a note? | ☐ | ☑ | ☐ | ☐ |
| j. Are you a U. S. citizen? | ☑ | ☐ | ☐ | ☐ |
| k. Are you a permanent resident alien? | ☐ | ☑ | ☐ | ☐ |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | ☑ | ☐ | ☐ | ☐ |
| m. Have you had an ownership interest in a property in the last three years? | ☑ | ☐ | ☐ | ☐ |
| (1) What type of property did you own-principal residence (PR), second home (SH), or investment property (IP)? | PR | | | |
| (2) How did you hold title to the home-solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | S | | | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

Acknowledgement. Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature X | Date 1/5/2006 | Co-Borrower's Signature X | Date |
|---|---|---|---|

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a Lender may neither discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER ☑ I do not wish to furnish this information | CO-BORROWER ☐ I do not wish to furnish this information |
|---|---|
| Ethnicity: ☐ Hispanic or Latino   ☐ Not Hispanic or Latino | Ethnicity: ☐ Hispanic or Latino   ☐ Not Hispanic or Latino |
| Race: ☐ American Indian or Alaska Native   ☐ Asian   ☐ Black or African American   ☐ Native Hawaiian or Other Pacific Islander   ☐ White | Race: ☐ American Indian or Alaska Native   ☐ Asian   ☐ Black or African American   ☐ Native Hawaiian or Other Pacific Islander   ☐ White |
| Sex: ☑ Female   ☐ Male | Sex: ☐ Female   ☐ Male |

| To be Completed by Interviewer This application was taken by: ☐ Face-to-face interview ☐ Mail ☑ Telephone ☐ Internet | Interviewer's Name (print or type) WALTER W. HERNANDEZ Interviewer's Signature   Date 1/6/2006 Interviewer's Phone Number (incl. area code) 818-280-3838 | Name and Address of Interviewer's Employer WALMAR FINANCIAL GROUP 6300 TAMPA AVE STE K Northridge, CA 91324 (P) 818-280-3838 (F) 818-280-3828 |

# EXHIBIT D

## TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

LENDER OR LENDER'S AGENT:   AMERICAN MORTGAGE NETWORK, INC.,
A DELAWARE CORPORATION

21700 OXNARD STREET SUITE 440
WOODLAND HILLS, CA. 91367
BORROWERS.      SMITH, TIA DANIELLE

[ ] Preliminary   [X] Final

DATE      11/13/06
LOAN NO.      ███████130
Type of Loan.   CONV 80

ADDRESS:        4011 HUBERT AVENUE
CITY/STATE/ZIP: LOS ANGELES, CALIFORNIA, 90008-2621
PROPERTY:       4011 HUBERT AVENUE, LOS ANGELES, CALIFORNIA, 90008 2621

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 8.260      % | $ 1,108,356.30 | $ 550,580.10 | 1,658,936.40 |

### PAYMENT SCHEDULE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 12 | 1,918.87 | 01/01/2007 | | | |
| 12 | 2,062.79 | 01/01/2008 | | | |
| 12 | 2,217.50 | 01/01/2009 | | | |
| 7 | 2,383.81 | 01/01/2010 | | | |
| 317 | 4,945.93 | 08/01/2010 | | | |

DEMAND FEATURE:   [X] This loan does not have a Demand Feature.      [ ] This loan has a Demand Feature as follows:

VARIABLE RATE FEATURE:
[X] This Loan has a Variable Rate Feature. Variable Rate Disclosures have been provided to you earlier.

SECURITY:   You are giving a security interest in the property located at:   4011 HUBERT AVENUE
LOS ANGELES, CALIFORNIA 90008-2621

ASSUMPTION:   Someone buying this property [ ] cannot assume the remaining balance due under original mortgage terms
[X] may assume, subject to lender's conditions, the remaining balance due under original mortgage terms.

FILING / RECORDING FEES:   $      150.00

PROPERTY INSURANCE:   [X] Property hazard insurance in the amount of $   556,000   with a mortgagee clause to the lender
is a required condition of this loan. Borrower may purchase this insurance from any insurance company acceptable to the lender.
Hazard insurance [ ] is [X] is not available through the lender at an estimated cost of _____ for a _____ year term.

LATE CHARGES:   If your payment is more than   15 days late, a late charge of   5.00   % of the
MONTHLY P-I PAYMENT   will be assessed.

PREPAYMENT:   If you pay off your loan early, you
[X] may [ ] will not   have to pay a penalty.
[ ] may [X] will not   be entitled to a refund of part of the finance charge.

See your contract documents for any additional information regarding non-payment, default, required repayment in full before scheduled date,
and prepayment refunds and penalties.
e means estimate

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

TIA DANIELLE SMITH            BORROWER/DATE                                        BORROWER/DATE

_____            BORROWER/DATE                                        BORROWER/DATE

VMP -788 (0412)03                          VMP Mortgage Solutions, Inc                Page 1 of 2                12/04
© 2005 CWF Systems, Inc.   The contents of this form in whole or in part are protected under the copyright laws of the United States

056ST

# EXHIBIT E

**This page is part of your document - DO NOT DISCARD**



**20091452803**

Pages:
0003

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**09/24/09 AT 08:00AM**

| | |
|---|---|
| FEES: | 15.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 15.00 |



**LEADSHEET**



200909240210009

00001243416

002325401

**SEQ:**
**03**

DAR - Title Company (Hard Copy)

**THIS FORM IS NOT TO BE DUPLICATED**

t35

Recording Requested By
When Recorded Mail To

Cal-Western Reconveyance Corp.
P.O. Box 22004
525 East Main Street
El Cajon CA 92022-9004

*1241071-14*  *NODXR*
Trustee Sale No. 1241071-14
[blacked out] S5 70

_____ Space Above This Line For Recorder's Use _____

Loan No. XXXXXX6453  Ref: SMITH, TIA DANIELLE

## NOTICE OF DEFAULT

### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice). This amount is $25,509.83 as of September 23, 2009, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC

C/O CAL-WESTERN RECONVEYANCE CORPORATION
525 EAST MAIN STREET
P.O. BOX 22004
EL CAJON        9004  CA  92022-9004
(619)590-9200

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

Page 1 of 2



Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, *3*
provided the sale is concluded prior to the conclusion of the foreclosure. Remember, **YOU MAY
LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

---

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**NOTICE IS HEREBY GIVEN:**

**CAL-WESTERN RECONVEYANCE CORPORATION** is either the original trustee, the duly appointed
substituted trustee, or acting as agent for the trustee or beneficiary under a deed of trust dated November
13, 2006 executed by

**TIA DANIELLE SMITH, AN UNMARRIED WOMAN**
    as trustor, to secure certain obligations in favor of

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AMERICAN
MORTGAGE NETWORK, INC., A DELAWARE CORPORATION A CORPORATION**
    as beneficiary

recorded as document 20062729009 on December 08, 2006 in book XX page XX official records in the
office of County Recorder
of LOS ANGELES County, California, describing land therein as:

**COMPLETELY DESCRIBED IN SAID DEED OF TRUST**

said obligations including a promissory note for the principal sum of $556,000.00
that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in
that payment has not been made of:

**Failure to pay the monthly payment due November 1, 2008 of principal and interest and subsequent
installments due thereafter; plus late charges; together with all subsequent sums advanced by beneficiary
pursuant to the terms and conditions of said deed of trust.**

That by reason thereof the present beneficiary under such Deed of Trust has deposited with said trustee
such Deed of Trust and all documents evidencing obligations secured thereby and has declared and does
hereby declare all sums secured thereby immediately due and payable and has elected and does hereby
elect to cause the trust property to be sold to satisfy the obligations secured thereby.

The mortgagee, beneficiary or authorized agent for the mortgage or beneficiary pursuant to
California Civil Code § 2923.5(b) declares that the mortgagee, beneficiary or the mortgagee's
or beneficiary's authorized agent has either contacted the borrower or tried with due diligence
to contact the borrower as required by California Civil Code 2923.5.

T.S. 1241071-14
Dated:    September 23, 2009    **CAL-WESTERN RECONVEYANCE CORPORATION**

Signature By _Rhonda L Roria_

Rhonda L. Roria

09/05/2008 rev.                                    Nodca.doc Page 2 of 2

# EXHIBIT F





This page is part of your document - DO NOT DISCARD



## 20091682671

Pages:
0004

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

11/09/09 AT 08:00AM

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |



L E A D S H E E T



200911090140006

00001469106



002392714

SEQ:
19

DAR - Title Company (Hard Copy)



THIS FORM IS NOT TO BE DUPLICATED

735

00/00/2011  16:10:27 FAX 2⬛⬛499990        NATIONWIDE LEGAL                10

RECORDING REQUESTED BY:

AND WHEN RECORDED MAIL TO:

CAL-WESTERN RECONVEYANCE CORPORATION
525 EAST MAIN STREET
P.O. BOX 22004
EL CAJON CA 92022-9004

LOAN NO.: XXXXXX6455 T.S. NO.:   1241071-14
MERS PHONE: 1-888-679-6377    MIN NO: ⬛⬛⬛⬛ 1302

_____ SPACE ABOVE THIS LINE FOR RECORDER'S USE ____

## SUBSTITUTION OF TRUSTEE
### This Form Provided By Cal-Western Reconveyance Corporation

WHEREAS, TIA DANIELLE SMITH, AN UNMARRIED WOMAN  was the original Trustor,

FIRST AMERICAN TITLE INSURANCE COMPANY
was the original Trustee,

and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR
AMERICAN MORTGAGE NETWORK, INC., A DELAWARE CORPORATION  was the original
Beneficiary

under that certain Deed of Trust dated November 13, 2006 and recorded on December 08, 2006 as
Instrument No. 20062729009, in book XX, page XX of Official Records of LOS ANGELES County,
California, and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and WHEREAS,
the undersigned desires to substitute a new Trustee under said Deed of Trust in the place and stead of
present Trustee thereunder, in the manner in said Deed of Trust provided.

NOW, THEREFORE, the undersigned hereby substitutes

CAL-WESTERN RECONVEYANCE CORPORATION
525 EAST MAIN STREET, P.O. BOX 22004
EL CAJON CA 92022-9004

as Trustee under said Deed of Trust.

SUBCA2.DOC                    Rev. 09/15/09                    Page 1 of 2

## SUBSTITUTION OF TRUSTEE

LOAN NO:  _6453_

TS NO:  _124/071-14_

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Dated:  _SEP 1 5 2009_

Mortgage Electronic Registration Systems, Inc. (MERS)

_Jennifer Victa_
**Jennifer Victa**
**Assistant Secretary of MERS**

STATE OF:  California
COUNTY OF:  San Diego

On _11/3/09_ before me, _J Archuleta_ , a Notary Public, personally appeared Jennifer Victa, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _J. Archuleta_                            (Seal)



J. ARCHULETA
Commission # 1698691
Notary Public - California
San Diego County
My Comm. Expires Oct 22, 2010

00/00/2011  16:10:27    CAL-WESTERN RECONVEYANCE    NATIONWIDE LEGAL

# AFFIDAVIT OF MAILING

REF: 1241071-14                     STATE: CA


STATE OF CALIFORNIA            )
                               )SS
COUNTY OF SAN DIEGO            )


I, _____Clifton McBride_____ being duly sworn, depose and say:


I am and at all times herein mentioned a citizen of the United States, over the age of eighteen years and a resident of San Diego County, California:

That at the request of CAL-WESTERN RECONVEYANCE CORPORATION on November 05, 2009, I deposited in the United States mail a copy of the attached document, in separate sealed envelopes, Certified Mail, postage prepaid, to the address list on exhibit A, attached hereto and made a part hereof.




_Clifton McBride_
Affiant


b06(3B8b-0793-4219-b400-ca13644f 902.DOC                                Rev. 3/15/05

00/00/2011  16:10:27  FAX 2___99990        NATIONWIDE LEGAL                            12

11/5/2009 7:11:02 PM      Sender          CalWestern Reconveyance
                                          525 E Main
                                          El Cajon CA 92020

Postal Class:  Certified

Type of Mailing:  SUB-BY-CODE MAILING

Affidavit Attachment: 1433055-01 000 11050809 CWR

| Postal Number | Sequence | Recipient Name | Address Line 1/3 | Address Line 2/4 |
|---|---|---|---|---|
| 7104199414040102667 | 1 | TIA DANIELLE SMITH | 4011 HUBERT AVE | LOS ANGELES CA 90008 |
| 71041994141040102727 | 2 | TIA SMITH | 4011 HUBERT AVE | LOS ANGELES CA 90008 |
| 71041994141040102734 | 3 | TIA DANIELLE SMITH | 17111 BEACH BLVD STE 201 | HUNTINGTON BEACH CA 92647 |
| 71041994141040102758 | 4 | TIA SMITH | 17111 BEACH BLVD STE 201 | HUNTINGTON BEACH CA 92647 |
| 71041994141040102765 | 5 | MERS INC | PO BOX 2026 | FLINT MI 48501-2026 |
| 71041994141040102802 | 7 | FIRST AMERICAN TITLE INSURANCE COMPANY | C/O AMERICAN MORTGAGE NETWORK, INC SAN DIEGO CA 92186 | PO BOX 85463 |
| 71041994141040102853 | 8 | TIA DANIELLE SMITH | 4011 HUBERT AVENUE | LOS ANGELES CA 90008-2821 |
| 71041994141040102857 | 9 | TIA D SMITH | 4011 S. HUBERT STREET | LOS ANGELES CA 90011 |
| 71041994141040102871 | 10 | TIA DANIELLE SMITH | 4011 HUBERT AVENUE | LOS ANGELES CA 90008 |
| 71041994141040102901 | 11 | TIA D SMITH | 4011 HUBERT AVENUE | LOS ANGELES CA 90008 |
| 71041994141040102925 | 12 | TIA D SMITH | 4011 HUBERT AVENUE | LOS ANGELES CA 90008 |
| 71041994141040102936 | 13 | TIA SMITH | 4011 S. HUBERT STREET | LOS ANGELES CA 90011 |
| 71041994141040102970 | 14 | TIA SMITH | 4011 HUBERT AVENUE | LOS ANGELES CA 90008 |

| | | | |
|---|---|---|---|
| 7104199414104010229044<br>15 | AMERICAN MORTGAGE NETWORK, INC | P.O. BOX 85453 | SAN DIEGO CA 92186 |
| 7104199414104010302921<br>16 | TIA DANIELLE SMITH | 4011 S. HUBERT STREET | LOS ANGELES CA 90011 |
| 7104199414104010303045<br>17 | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS | P.O. BOX 2026 | FLINT MI 48501 |
| 7104199414104010303078<br>18 | TIA DANIELLE SMITH | 4011 HUBERT AVENUE | LOS ANGELES CA 90008 |
| 7104199414104010303090<br>19 | TIA SMITH | 4011 HUBERT AVENUE | LOS ANGELES CA 90008 |
| 7104199414104010303113<br>20 | AMERICAN MORTGAGE NETWORK, INC., A DELAW | C/O MORTGAGE ELECTRONIC REGISTRATION SYS<br>FLINT MI 48501 | P.O. BOX 2026 |
| 7104199414104010303137<br>21 | TIA SMITH TRUSTEE | TIA DANIELLE SMITH<br>LOS ANGELES CA 90008 | 4011 HUBERT AVENUE |
| 7104199414104010303168<br>22 | TIA SMITH TRUSTEE | TIA DANIELLE SMITH<br>LOS ANGELES CA 90008 | 4011 HUBERT AVENUE |
| 7104199414104010303182<br>23 | TIA SMITH | 4011 S HUBERT STREET | LOS ANGELES CA 90011 |
| 7104199414104010303205<br>24 | TIA D SMITH | 4011 HUBERT AVENUE | LOS ANGELES CA 90008-2821 |
| 7104199414104010303229<br>25 | TIA SMITH | 4011 HUBERT AVENUE | LOS ANGELES CA 90008-2821 |
| 7104199414104010303243<br>26 | MERS | PO BOX 2026 | FLINT MI 48501-2026 |
| 7104199414104010303274<br>27 | AMERICAN MORTGAGE NETWORK, INC | C/O MERS<br>FLINT MI 48501-2026 | PO BOX 2026 |
| 7104199414104010303298<br>28 | TIA SMITH TRUSTEE | 4011 HUBERT AVENUE | LOS ANGELES CA 90008 |
| 7104199414104010303328<br>29 | TIA SMITH TRUSTEE | 4011 HUBERT AVENUE | LOS ANGELES CA 90008-2821 |

12-12020-mg   Doc 7410-6   Filed 08/21/14   Entered 08/21/14 19:18:16   Exhibit A-4
Smith Diligence Response (Part 2)   Pg 23 of 145

7

00/00/2011  16:10:27  FAX  2⬛⬛99990          NATIONWIDE LEGAL

4



**CAL-WESTERN RECONVEYANCE CORPORATION**

T.S NO.  1241071-14

LOAN NO.  6453

## AFFIDAVIT OF MAILING SUBSTITUTION OF TRUSTEE
### PURSUANT TO CALIFORNIA CIVIL CODE §2934a

STATE OF CALIFORNIA

COUNTY OF SAN DIEGO

THE UNDERSIGNED BEING SWORN, SAY(S):

A COPY OF THE SUBSTITUTION OF TRUSTEE HAS BEEN MAILED, PRIOR TO OR CONCURRENTLY WITH THE RECORDING THEREOF, IN THE MANNER PROVIDED IN SECTION 2934a OF THE CIVIL CODE OF CALIFORNIA, TO ALL PERSONS TO WHOM A COPY OF THE NOTICE OF DEFAULT WOULD BE REQUIRED TO BE MAILED BY THE PROVISIONS OF SUCH SECTION.

Dated:  NOV - 5 2009

_____
Susan Meyers

State of California
County of San Diego

On November 5, 2009 before me, Jeffrey Starling, a Notary Public, personally appeared Susan Meyers, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.                (Seal)

Signature _____

**JEFFREY STARLING**
COMMISSION # 1804755
Notary Public - California
SAN DIEGO COUNTY
My Comm. Expires Jul 24, 2013

ASUB DOC                                          Rev. 10/02/09

Cal-Western Reconveyance Corporation
525 East Main Street, El Cajon, California 92020 • P.O. Box 22004, El Cajon, California 92022-9004
TEL: (619) 590-9200 • FAX: (619) 590-9299 • Website: www.cwrc.com

# EXHIBIT G



**This page is part of your document - DO NOT DISCARD**

# 20091994646



**Pages:
0003**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**12/31/09 AT 08:00AM**

| | |
|---|---|
| FEES: | 15.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 15.00 |



**L E A D S H E E T**



200912310240015

00001725903

002469713

**SEQ:
18**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

Recording Requested By:
AURORA LOAN SERVICES

When Recorded Return To:

ASSIGNMENT PREP
AURORA LOAN SERVICES
P.O. Box 1706
Scottsbluff, NE  69363-1706



## CORPORATE ASSIGNMENT OF DEED OF TRUST

Los Angeles, California
SELLER'S SERVICING #: ███████453 "SMITH"

MERS #: 100131020809891302 VRU #: 1-888-679-6377

Prepared By:  Kathleen Olson,  AURORA LOAN SERVICES 2617 COLLEGE PARK, PO BOX 1706, SCOTTSBLUFF, NE
69363-1706 308-635-3500

For Value Received, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AMERICAN
MORTGAGE NETWORK, INC., A DELAWARE CORPORATION IT'S SUCCESSORS OR ASSIGNS hereby grants,
assigns and tranfers to AURORA LOAN SERVICES LLC at 2617 COLLEGE PARK, SCOTTSBLUFF, NE  69361 all
beneficial interest under that certain Deed of Trust dated 11/13/2006 , in the amount of $556,000.00, executed by
TIA DANIELLE SMITH, AN UNMARRIED WOMAN to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC., AS NOMINEE FOR AMERICAN MORTGAGE NETWORK, INC., A DELAWARE CORPORATION and
Recorded:  12/08/2006  as Instrument No.: 20062729009 in Los Angeles,  California

Together with the note or notes therein described or referred to, in said Deed of Trust, the money due and to
become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

In witness whereof this instrument is executed.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AMERICAN MORTGAGE
NETWORK, INC., A DELAWARE CORPORATION IT'S SUCCESSORS OR ASSIGNS
On October 1st, 2009

THEODORE SCHULTZ, Vice-President

*KFO*KFOALSI*10/01/2009 12:05:43 PM* ALSI01ALSIA00000000000000000000032* CALOS A* 0021798453 CASTATE_TRUST_ASSIGN_ASSN *KFOALSI*

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

*3*

STATE OF Nebraska
COUNTY OF Scotts Bluff

On October 1st, 2009 before me, ROBERTA A. RUMMEL, Notary Public, personally appeared THEODORE SCHULTZ , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Nebraska that the foregoing paragraph is true and correct.

WITNESS my hand and official seal,

GENERAL NOTARY-State of Nebraska
ROBERTA A. RUMMEL
My Comm. Exp. Sept. 18, 2010

ROBERTA A. RUMMEL
Notary Expires: 09/18/2010

(This area for notarial seal)

MFOMFCALSM10C1/2009 12 05 43 PM* ALSI01ALSIA0000000000000000000032* CALOS A* I021790453 CASTATE_TRUST_ASSIGN_ASSN **0*OALSI*



# EXHIBIT H

# AURORA LOAN SERVICES

P.O. Box 1706
Scottsbluff, NE 69363-1706
www.myAuroraLoan.com

April 11, 2008

3976 001
TIA DANIELLE SMITH
4011 HUBERT AVE
LOS ANGELES CA 90008

Re: Mortgage Loan in the original amount of $556,000.00 to Borrower signer(s) of the Mortgage/Deed of
Trust (the "Security Instrument"): Tia Danielle Smith
Property Address: 4011 HUBERT AVE LOS ANGELES CA 90008
Date of Mortgage/Deed of Trust: 11/13/2006
Current Creditor to whom the Mortgage Loan debt is owed: RALI 2007-QO1
Aurora Loan No: 6453

Dear Borrower(s):

Aurora Loan Services LLC ("Aurora") is the current servicer of the mortgage loan described above. Aurora is
required under federal law to advise you that the total amount you owe, as of the date of this letter is
$592,143.41. Because of interest, late charges, and other charges that may vary from day to day, the amount
due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be
necessary after we receive your check, in which event we will inform you before depositing the check for
collection. For further information, write the undersigned or call us at 800-609-2696.

Unless you notify us within thirty (30) days after receipt of this letter that the validity of this debt, or any portion
of it, is disputed, we will assume that the debt is valid. If you notify us in writing of a dispute, we will obtain
verification of the debt or a copy of the judgment against you and we will mail you a copy of such verification or
judgment. Upon your request, within thirty (30) days from receipt of this notice, we will provide to you the name
and address of the original creditor if different than the current creditor.

If you are currently in bankruptcy or your legal obligation for this debt was previously discharged in bankruptcy,
then this paragraph applies to you. Nothing in this letter is to be construed as an attempt to collect a debt
against you personally or an attempt to revive personal liability on any discharged debt. References to "debt"
elsewhere in this letter should be read as references to amounts secured by the mortgage or deed of trust or
comparable security instrument ("Security Instrument"). Although you can not be held personally responsible
for making the payments if you are currently in bankruptcy or your debt has been discharged, Aurora still has
the right to foreclose on the real property secured by the Security Instrument if the payments are not made or
other conditions in the Security Instrument are not met.

If you are not in bankruptcy or have not received a Discharge Order of this debt from a bankruptcy court, then
this is an attempt to collect a debt and any information obtained will be used for that purpose.

If you have questions, please contact one of our Customer Service Representatives at the address above or by
calling 800-609-2696.

Sincerely,

Aurora Loan Services LLC

# EXHIBIT I

**Deutsche Bank** ☑

1761 East St. Andrew Place
Santa Ana, CA 92705-4934

Tel   714 247 6000
Fax   714 247 6009

## MEMORANDUM

TO:    SECURITIZATION LOAN SERVICERS

FROM: DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE
      DEUTSCHE BANK TRUST COMPANY AMERICAS, AS TRUSTEE

DATE: July 28, 2008

RE:    Advisory Concerning Servicing Issues Affecting Securitized Housing Assets

Each addressee of this Memorandum services mortgage loans on behalf of one or more
securitization trusts (the "Trusts") for which Deutsche Bank National Trust Company or
Deutsche Bank Trust Company Americas act as trustee (the "Trustee"). This
memorandum focuses on certain issues relating to servicing practices that have come to
the attention of the Trustee since the issuance of its Memorandum to Securitization Loan
Servicers dated August 30, 2007 (the "First Servicer Memorandum"—copy enclosed).
Because the issues addressed in the First Servicer Memorandum continue to be relevant
in the current servicing environment, the Trustee respectfully requests that all servicers
review the First Servicer Memorandum and adhere to the practices that it describes, as
well as those described in this Memorandum.

The continued distressed state of residential real estate markets has placed increased
burdens on all parties involved in the loss mitigation process, including servicing
personnel, third-party contractors and professionals engaged by servicers, government
agencies, and borrowers. In addition, the increased numbers of delinquencies and
foreclosures, and resulting financial losses, have led to a climate in which the
performance of securitization parties is being scrutinized carefully by various
constituencies.

Against this background, the Trustee therefore asks that all servicers servicing loans on
behalf of the Trusts remain particularly mindful of the following issues.

(1) <u>Foreclosure Procedures:  Proof of "Ownership" of Loans.</u> As stated in the First
Servicer Memorandum, servicers must exercise diligence to assure that they conduct *all*
foreclosures and other actions with respect to REO properties (including actions affecting
tenants of such properties) in compliance with all federal, state, and local laws, rules,
regulations and court procedures. In recent months, it has been reported that the number
of contested foreclosure proceedings has substantially increased nationwide. In the

10%92193

Securitization Servicers
July 28, 2008
Page 2 of 4

context of these adversarial proceedings, some courts are demanding that the party
seeking to foreclose prove "ownership" and other particulars of loans earlier in the
proceedings, and with more exacting standards of proof, than has previously been
customary. Other courts are evaluating the propriety of various other servicing,
foreclosure, and workout practices. Because loan servicers have contractual obligations
to handle workouts and foreclosures in compliance with law and in accordance with
industry standards, they must make sure that all servicing personnel and professionals
handling foreclosures on behalf of the Trusts, including legal counsel retained by
servicers, fully understand and comply with these changing standards and legal
requirements. Failure to do so may result in servicer liability to the Trusts for losses
caused by delays or, in some situations, forfeiture of collateral.

In this regard, the Trustee is concerned that servicers make clear to their servicing
personnel and other professionals, including legal counsel retained by servicers, that
securitization trusts typically become the owners of, and take title to, mortgage loans <u>at
the time the securitization trusts are formed</u>. While the use of powers of attorney to
complete recorded chains of title may be appropriate in some circumstances, servicers
must <u>take care not to confuse the record</u> regarding the time at which securitization trusts
actually first obtain legally enforceable rights in the mortgage loans. <u>Servicers must
ensure that loss mitigation personnel and professionals engaged by servicers,
including legal counsel retained by servicers, understand the mechanics of relevant
securitization transactions, and related custodial practices, in sufficient detail to
address such questions in a timely and accurate manner. In particular, servicing
professionals must become sufficiently familiar with the terms of the relevant
securitization documents for each Trust for which they act to explain and, where
necessary, prove those terms and the resulting ownership interests to courts and
government agencies.</u>

(2) <u>Proper Description of the Servicer, the Trustee and their Roles in Proceedings</u>.
Servicers act for the benefit of the Trusts, and in the name of the Trustee, but are not
themselves the Trustee. Servicing professionals and other agents engaged by servicers
have adopted widely varying approaches to identifying the source of their authority.
Some say they represent "the servicer," others say they represent "the trustee" or "the
trust," and some simply say they represent "the bank" or "the lender." These disparate
practices have caused significant confusion regarding the roles of the parties to
securitization transactions. The Trustee believes that all persons retained by the servicer
should accurately identify the specific role or capacity in which they are acting. For
example, an attorney for a servicer foreclosing on a property mortgaged to a
securitization Trust would be less accurate in this respect if he or she claimed to be
"[Name], Attorney for [Name of Trustee]." A more accurate statement would be
"[Name], Attorney for [Servicer Name], Acting for [Name of Trustee] as Trustee of the
[Name of Trust]". In no event should servicer-retained foreclosure professionals,
including counsel, mislead third parties, including courts, into believing that the Trustee
directly controls the foreclosure process or any related litigation process. In addition, the
Trustee should never be described as the party who "made" or is in "in the business of

making/securitizing" loans. Such descriptions inaccurately reflect the role of a securitization trustee and may expose the Trusts and the Trustee to unwarranted legal liability and expense.

(3) <u>Maintenance of REO Properties</u>. The Trustee has received a number of inquiries and complaints from government officials and community groups about the physical condition of REO properties. Such inquiries and complaints also are receiving increasing attention from the media, law enforcement agencies, and courts. <u>Under standard securitization documentation, loan servicers are expressly responsible for managing all aspects of the REO disposition process, including appropriate maintenance of REO properties.</u> Failure to fulfill these responsibilities may expose the Trusts to financial losses, potentially depressing the value of Trust property and exposing the Trusts to legal and financial liability. Because title to REO properties typically includes the name of the Trustee institution, these failures also expose the Trustee to legal claims and reputational harm. To protect against such consequences, which are likely to give rise to indemnification claims against servicers, the Trustee urges servicers to exercise heightened diligence with respect to REO maintenance and disposition. In addition, we urge Servicers to engage property managers who will take proactive steps to protect REO properties, especially when they are vacant for extended periods of time.

(4) <u>Tracking and Engaging in Public-Private Initiatives</u>. The Trustee urges servicers to stay abreast of and, where appropriate, participate in, governmental policy discussions and rule-making processes that may affect servicing activities. Given the widespread misunderstanding of how securitization transactions work, servicers, trustees, and other financial institutions involved in the administration of securitization transactions should seek to educate others appropriately about the rights and responsibilities of the parties to these transactions. Without adequate understanding and sensitivity to these issues, officials may adopt rules or policies that adversely affect the interests of securitization investors. Active participation in government-industry discussions of these issues may help avert such outcomes. Shortly after the issuance of the First Servicer Memorandum, federal and state banking regulators issued their "Statement on Loss Mitigation Strategies for Servicers of Residential Mortgages." In addition, in December 2007, the American Securitization Forum, in consultation with U.S. Treasury officials, promulgated the "Streamlined Foreclosure and Loss Avoidance Framework for Securitized Subprime Adjustable Rate Mortgage Loans." Both of these documents reflect the kind of careful balancing of policy objectives and contract rights that can be achieved by engaging in responsible substantive discussions with affected constituencies. In addition, the Trustee urges servicers to exercise diligence and, where appropriate, involve or cooperate with law enforcement agencies regarding a variety of unethical and, in some cases, illegal real estate transaction schemes targeting distressed borrowers. In particular, servicers should be on the lookout for third parties who: (a) seek private data concerning borrowers, loans or loan portfolios without proper authorization or (b) purport to act based on an asserted affiliation or association with the servicer, the Trustee or the Trusts. Such practices may subject borrowers, servicers, the Trustee and the Trusts to financial and reputational harm.

Securitization Servicers
July 28, 2008
Page 4 of 4

The Trustee believes that adherence to the foregoing recommendations on a consistent basis will not only protect the interests of investors, but benefit all constituencies by minimizing misunderstandings that impede timely and fair resolution of foreclosure matters.

Thank you for your cooperation.

**DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee**
**DEUTSCHE BANK TRUST COMPANY AMERICAS, as Trustee**

# EXHIBIT J



CA gov | Job Opportunities | Contact Us

## Corporations

HOME   ABOUT   CONSUMERS   LICENSEES   LAWS/REGS   PRESS   ONLINE TOOLS

Search   This Site   California

Home · fsd · licensees

# Financial Services Licensee Address Listing

**PLEASE NOTE:**

- This search includes records for the following Department of Corporations licensees:
  - Mortgage bankers and servicers
  - Finance lenders and brokers
  - Deferred deposit originators also called payday lenders
  - Escrow agents, and
  - Check sellers, bill payers and proraters
- Individual Mortgage Loan Originator (MLO) licenses should be checked through NMLS Consumer Access
- For other Department of Corporations licenses and registrations, please visit our Online Tools page.
- The following companies are licensed to provide online escrow services:
  - www.escrow.com
  - Elanca Escrow Corporation

The Department of Corporations, the Department of Real Estate, the Office of Real Estate Appraisers, and the Department of Financial Institutions regulate most of the real estate financial services in California. To check the license records of all four departments at once visit California Real Estate and Financial Services License Information. The name must contain at least 2 letters.

Your search for ( 603B764 ) found the following ( 1 ) results:

| Lic. Status: | No Longer Licensed as of 9/13/2007 | Lic. Date: | Aug 30 2005 |
|---|---|---|---|
| Lic. Number: | 603B764 | Lic. Type: | California Finance Lender |
| Name: | AMERICAN MORTGAGE NETWORK, INC. | | |
| Address: | 10421 WATERIDGE CIRCLE, SUITE 250 SAN DIEGO, CA 92121 | | |

PLEASE NOTE: The Department of Corporations, the Department of Real Estate, the Office of Real Estate Appraisers, and the Department of Financial Institutions regulate most of the real estate financial services in California. To check the license records of all four departments at once visit California Real Estate and Financial Services License Information. The name must contain at least 2 letters.

◉ Company Name Contains  ○ Company Name Begins With

◉ Active  ○ Inactive  ○ Both

Company Name:

License Number:

License Type:

City:

State:

Zip:

[ Search ]

http://www.corp.ca.gov/fsd/licensees/default.asp?flag=1&id=+603B764

 

California Department of
# Corporations

CA.gov | Job Opportunities | Contact Us

Search
This Site   California

HOME   ABOUT   CONSUMERS   LICENSEES   LAWS/REGS   PRESS   ONLINE TOOLS

Home   fsd   licensees

## Financial Services Licensee Address Listing

**PLEASE NOTE:**

- This search includes records for the following Department of Corporations licensees:
  - Mortgage bankers and servicers
  - Finance lenders and brokers
  - Deferred deposit originators also called payday lenders
  - Escrow agents, and
  - Check sellers, bill payers and prorators
- Individual **Mortgage Loan Originator (MLO)** licenses should be checked through NMLS Consumer Access
- For other Department of Corporations licenses and registrations, please visit our Online Tools page.
- The following companies are licensed to provide online escrow services:
  - www.escrow.com
  - Elance Escrow Corporation

The Department of Corporations, the Department of Real Estate, the Office of Real Estate Appraisers, and the Department of Financial Institutions regulate most of the real estate financial services in California. To check the license records of all four departments at once visit California Real Estate and Financial Services License Information. The name must contain at least 2 letters.

Your search for ( 4130397 ) found the following ( 1 ) results:

| | | |
|---|---|---|
| Lic. Status: | No Longer Licensed as of 4/19/2007 | Lic. Date: Oct 09 2001 |
| Lic. Number: | 4130397 | Lic. Type: Mortgage Banker (Main) |
| Name: | AMERICAN MORTGAGE NETWORK, INC. | |
| Address: | 10421 WATERIDGE CIRCLE, SUITE 250 SAN DIEGO, CA 92121 | |

PLEASE NOTE: The Department of Corporations, the Department of Real Estate, the Office of Real Estate Appraisers, and the Department of Financial Institutions regulate most of the real estate financial services in California. To check the license records of all four departments at once visit California Real Estate and Financial Services License Information. The name must contain at least 2 letters.

⦿ Company Name Contains  ◌ Company Name Begins With

⦿ Active  ◌ Inactive  ◌ Both

Company Name:

License Number:

License Type:

City:

State:

Zip:

[ Search ]

*privacy) All people Liberty Speak without discrimination*

## California Secretary of State Debra Bowen

| Secretary of State | Administration | Elections | Business Programs | Political Reform | Archives | Registries |

## Business Entity Detail

**Business Entities (BE)**

**Online Services**
- Business Search
- Disclosure Search
- E-File Statements
- Processing Times

**Main Page**

**Service Options**

**Name Availability**

**Forms, Samples & Fees**

**Annual/Biennial Statements**

**Filing Tips**

**Information Requests**
(certificates, copies &
status reports)

**Service of Process**

**FAQs**

**Contact Information**

**Resources**
- Business Resources
- Tax Information
- Starting A Business
- International Business
  Relations Program

**Customer Alerts**
- Business Identity Theft
- Misleading Business
  Solicitations

Data is updated weekly and is current as of Friday, June 15, 2012. It is not a complete or certified record of the entity.

| | |
|---|---|
| Entity Name: | AMERICAN MORTGAGE NETWORK, INC. |
| Entity Number: | C2355473 |
| Date Filed: | 08/10/2001 |
| Status: | SURRENDER |
| Jurisdiction: | DELAWARE |
| Entity Address: | 10421 WATERRIDGE CIR |
| Entity City, State, Zip: | SAN DIEGO CA 92121 |
| Agent for Service of Process: | CORPORATION SERVICE COMPANY WHICH WILL DO BUSINESS IN CALIFORNIA AS CSC - LAWYERS INCORPORATING SERVICE |
| Agent Address: | 2710 GATEWAY OAKS DR STE 150N |
| Agent City, State, Zip: | SACRAMENTO CA 95833 |

* Indicates the information is not contained in the California Secretary of State's database.

- If the status of the corporation is "Surrender," the agent for service of process is automatically revoked. Please refer to California Corporations Code section 2114 for information relating to service upon corporations that have surrendered.
- For information on checking or reserving a name, refer to Name Availability.
- For information on ordering certificates, copies of documents and/or status reports or to request a more extensive search, refer to Information Requests.
- For help with searching an entity name, refer to Search Tips.
- For descriptions of the various fields and status types, refer to Field Descriptions and Status Definitions.

Modify Search    New Search    Printer Friendly    Back to Search Results

Privacy Statement | Free Document Readers
Copyright © 2012   California Secretary of State

# EXHIBIT K



**This page is part of your document - DO NOT DISCARD**

## 20111590675





**Pages:**
**0003**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**11/23/11 AT 08:00AM**

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |



LEADSHEET



201111230260004

00004992655



003638185

SEQ:
19

DAR - Title Company (Hard Copy)

**THIS FORM IS NOT TO BE DUPLICATED**

T35

WHEN RECORDED MAIL TO:

**AURORA BANK, FSB**
**2617 COLLEGE PARK DRIVE**
**SCOTTSBLUFF NE 69361-2294**

11/23/2011

*20111590675*

TRA #   000067
Trust No. 1241071-14

---

MAIL TAX STATEMENT TO:

Same as above

Space Above This Line For Recorder

Documentary Transfer Tax $.00
X Grantee was/was not the foreclosing beneficiary.
consideration $362,500.00
unpaid debt $685,480.47
non exempt amount $
__Computed on the consideration or value of
property conveyed.
__Computed on the consideration of value less
liens or encumbrances remaining at time of sale.

Signature of Declarant or Agent
AP# 5033-016-023   **Kolette Modlin**

---

## TRUSTEE'S DEED UPON SALE

**CAL-WESTERN RECONVEYANCE CORPORATION** (herein called trustee)
does hereby grant and convey, but without covenant or warranty, express or implied to
**AURORA LOAN SERVICES LLC** (herein called Grantee) the real property in the county of LOS
ANGELES, State of California described as follows:

**LOT 23 OF TRACT 11193, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE
OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 202, PAGES 18 AND 19 OF MAPS,
RECORDS IN THE OFFICE OF THE COUNTY RECORDER OF SAID LOS ANGELES COUNTY.**
The street address and other common designation, if any, of the real property described above is purported to be:
**4011 HUBERT AVENUE**
**LOS ANGELES CA 90008**

This conveyance is made pursuant to the authority and powers vested in said Trustee, as Trustee, or Successor
Trustee, or Substituted Trustee, under that certain Deed of Trust executed by
**TIA DANIELLE SMITH, AN UNMARRIED WOMAN** as Trustor, recorded **December 08, 2006**, as
Document No. 20062729009, in Book XX, page XX, of Official Records in the Office of the Recorder of LOS
ANGELES County, California; and pursuant to the Notice of Default recorded **September 24, 2009**, as
Document No. 09-1452803 in Book XX, page XX of Official Records of said County, Trustee having complied
with all applicable statutory requirements of the State of California and performed all duties required by said
Deed of Trust, including, among other things, as applicable, the mailing of copies of notices or the publication of
a copy of the notice of default or the personal delivery of the copy of the notice of default or the posting of
copies of the notice of sale or the publication of a copy thereof.

---

TDUSCA.DOC

Page 1 of 2

3

TRA #   000067
Trust No. 1241071-14

At the place fixed in the Notice of Trustee's Sale, said Trustee did sell said property above described at public auction on **November 16, 2011** to said Grantee, being the highest bidder therefore, for **$362,500.00** cash, lawful money of the United States, in satisfaction pro tanto of the indebtedness then secured by said Deed of Trust.

CAL-WESTERN RECONVEYANCE CORPORATION

Dated:  November 16, 2011

Susan Smothers, A.V.P.

State of California )
County of San Diego)

**Rosalyn Hall**

On **NOV 17 2011** before me, _____,
a Notary Public, personally appeared _____ Susan Smothers, A.V.P. _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal                                    (Seal)

Signature _____

```
ROSALYN HALL
COMM. #1793727
Notary Public · California
San Diego County
My Comm. Expires Mar. 16, 2012
NRO1
```

TDUSCA.DOC

Page 2 of 2

# EXHIBIT L

OFFICE OF THE
ASSESSOR-RECORDER
SAN FRANCISCO

PHIL TING
ASSESSOR-RECORDER

# FORECLOSURE
# IN CALIFORNIA
## A CRISIS OF COMPLIANCE

SAN FRANCISCO | FEBRUARY 2012

PREPARED BY

# AEQUITAS

Aequitas Compliance Solutions, Inc. | 422 31st Street, Newport Beach, CA 92663 | Phone 949.272.3955 | aequitasaudit.com

# CONTENTS

**1. Introduction** ................................................................................................ **1**

**2. A California Primer** ....................................................................................... **2**
2.1 Understanding Residential Lending in California ........................................ 2
2.2 Understanding Foreclosure in California .................................................... 2

**3. Why This Is Important** .................................................................................. **3**

**4. How This Relates to the Foreclosure Settlement** ......................................... **5**

**5. Presentation of Findings** .............................................................................. **6**
5.1 Assignments ............................................................................................ 6
5.2 Notice of Default ...................................................................................... 8
5.3 Substitution of Trustee ............................................................................. 8
5.4 Notice of Trustee Sale ............................................................................ 10
5.5 Suspicious Activity and Other Issues ....................................................... 11
5.6 MERS Conflicts and Results .................................................................... 12

**6. Conclusion** ................................................................................................ **14**

**Appendix A - Understanding Securitization** ..................................................... **16**

**Appendix B – Methodology** ............................................................................ **18**

NOTICE: The information contained herein is for informational purposes only and is not legal advice or a substitute for legal counsel. As legal advice must be tailored to the specific circumstances of each case, nothing provided herein should be used as a substitute for the advice of competent counsel.

FORECLOSURE IN CALIFORNIA | A CRISIS OF COMPLIANCE

# 1. Introduction

The City and County of San Francisco's Office of the Assessor-Recorder retained Aequitas Compliance Solutions, Inc. to review 382 residential mortgage loan transactions (the "subject loans") that resulted in foreclosure sales that occurred from January 2009 through October 2011.[1] Over this period, there were 2,405 foreclosure sales. The subject loans thus represent approximately 16% of the total. (See Appendix B — Methodology.)

We analyzed the subject loans to determine the mortgage industry's compliance with applicable laws. Specifically, we focused our analysis on important topics relating to six Subject Areas:

- Assignments
- Notice of Default
- Substitution of Trustee
- Notice of Trustee Sale
- Suspicious Activities Indicative of Potential Fraud
- Conflicts Relating to MERS

Our Subject Areas and the topics we explore therein may not be exhaustive. Nonetheless, we believe our analysis presents an accurate picture of the nature and frequency of the mortgage industry's performance respecting compliance with important aspects of California's non-judicial foreclosure laws.

Overall, we identified one or more irregularities in 99% of the subject loans. In 84% of the loans, we identified what appear to be one or more clear violations of law.

---

[1] Throughout this paper, we are offering no opinion on the merits of various legal arguments put forth by the industry or those representing homeowners. We simply report the exceptions found based on publicly available facts and our understanding of applicable regulations. We explain our understanding of such regulations in the discussions alongside the specific exception rates presented herein. It is our goal to present only objective findings of facts.

(In this report, we refer to both irregularities and violations as "exceptions").

As Figure 1.1 shows, we found significant exception rates across all Subject Areas.

*Figure 1.1 Loans Exceptions by Subject Area*



Figure 1.2 illustrates the volume of exceptions. The *y-axis* represents the percentage of the subject loans with various exception counts. For instance, "≥1" shows the percentage of subject loans with one or more compliance exceptions. Likewise, "≥5" shows the percentage of subject loans with five or more compliance exceptions. The bars show both exceptions representing clear violations of law and those where the facts identify likely or potential violations.

*Figure 1.2 Loans with One or More Exceptions*



Figure 1.3 shows the percentages of loans with multiple exceptions across different

Subject Areas. The *x-axis* indicates the number of Subject Areas within which a loan had one or more exceptions. For instance, if a loan had exceptions relating to both Assignments and Substitutions, it would fall into the "2 Areas" category.

*Figure 1.3 Loans With Issues Across Subject Areas*



35% of the loans had exceptions in three Subject Areas and 32% of loans had exceptions in four Subject Areas. A loan was almost as likely to have no exceptions as it was to have issues in every Subject Area.

Each of these Subject Areas is addressed more fully below. In the Appendices, we provide a brief overview of the securitization process, as well as describe our methodology for performing our analysis.

# 2. A California Primer

In order to understand the findings of this report and to fully appreciate its significance it is helpful first to have some basic knowledge of residential mortgage lending and the foreclosure process in California.

## 2.1 Understanding Residential Lending in California

Lenders in California rely almost exclusively on "Deeds of Trust" to secure home loans. The Deed of Trust takes the place and serves the use of a mortgage. A Deed of Trust (or "Trust Deed") is an instrument that secures repayment of a loan and customarily contains a *Power of Sale* reposing in the Trustee in the event of default. Deeds of Trust are three-party instruments. The borrower (the "Trustor") grants title to the Trustee for the benefit of the lender (the "Beneficiary"). Technically, the title to the real property passes to the "Trustee," usually a title company, whose job it is to hold the bare legal title as well as to foreclose in the event of a default, pursuant to the Beneficiary's instructions, in the underlying obligation. The Trustee reconveys the title to borrower once the loan is paid in full.

In the event of a default, the Trustee files a Notice of Default; however, in many instances, the Beneficiary will substitute another, new Trustee to handle the foreclosure under a *Substitution of Trustee*.

## 2.2 Understanding Foreclosure in California

In California, lenders can use either the judicial or non-judicial foreclosure process.

Judicial foreclosures require the lender file a civil complaint and record a notice of Lis Pendens. The judicial foreclosure process is much lengthier and requires a court proceeding to be concluded. Further complicating this option, a foreclosed borrower reserves the right to reinstate their loan after the foreclosure sale up to one year after a judicial foreclosure proceeding is completed.

Hence, lenders in California almost exclusively utilize the statutory non-judicial foreclosure process on residential home loans. Also known as a *statutory foreclosure*, non-judicial foreclosures are processed without court intervention, are effectively agreed to by borrowers via the power of sale clause found in the trust deed

FORECLOSURE IN CALIFORNIA | A CRISIS OF COMPLIANCE

and governed by California Civil Code §2924. Generally, lenders begin the foreclosure process by giving the defaulting borrower a "Notice of Default" or "NOD." This is the first document that must be recorded as part of the non-judicial foreclosure process. If the borrower is unable to make payment after three months, the trustee can begin the auction of property by filing and mailing to the borrower a "Notice of Trustee's Sale."

One of the most important differences between a judicial and non-judicial foreclosure is the amount of judicial oversight: in the former the lender sues the borrower while in the latter it is the borrower who has to involve the courts. Furthermore, under the non-judicial foreclosure process homes are sold without court approval. Therefore, the expedited non-judicial foreclosure process frequently results in little, if any oversight.

Indeed, since most foreclosures in California are non-judicial, the borrower has to be the party that brings court oversight to the foreclosure process, if a court is to be involved at all.

## 3. Why This Is Important

We hope this report will achieve two goals. The first is to illustrate and explain foreclosure processing issues in a way that allows everyone—no matter their mortgage knowledge or association with the crisis—to understand them. Second, we hope to open a dialogue on the importance of ensuring compliance with these laws so that corrective action can take place. This means both working productively with the mortgage industry to improve compliance and effecting legislative change so that the law more accurately reflects California's modern mortgage market.

For the most part, Cal. Civ. Code §2924 and California's foreclosure laws generally are concerned with imposing procedural obligations on foreclosing Beneficiaries and providing due process rights to homeowners in order to ensure that the streamlined non-judicial foreclosure process is not abused. Because non-judicial foreclosure is a "drastic sanction" and a "draconian remedy," courts have generally required strict compliance with statutory requirements.[2]

It is worth noting that the process was created long before things such as the secondary market and mortgage brokers existed. When the laws were first enacted, lenders "originated-to-hold" loans for their portfolio and rarely sold mortgage loans.

Many mortgage industry advocates correctly point out that much of Cal. Civ. Code §2924 deals with technical requirements and that inadvertent violations should not provide windfall remedies to reckless borrowers.

While there is much merit to this argument, it ignores legitimate victims for whom Cal. Civ. Code §2924 serves as a last check on abusive lending practices and illegal foreclosures.

Reckless borrowing notwithstanding, much publicly available evidence suggests that there are indeed many legitimate victims of abusive lending and servicing practices.

For example, a remarkable report published by the inspector general for the FDIC reveals that at the peak of subprime originations approximately 83% of FDIC-regulated institutions were cited for patterns of "significant compliance violations."[3] 26% of were violations of the

---

[2] *Miller v. Cote*, 127 Cal. App. 3d 888, 894 (1982).
[3] FDIC, Report No. 06-024, September, 2006

12-12020-mg    Doc 7410-6    Filed 08/21/14    Entered 08/21/14 19:18:16    Exhibit A-4
Smith Diligence Response (Part 2)    Pg 50 of 145

FORECLOSURE IN CALIFORNIA | A CRISIS OF COMPLIANCE

Truth in Lending Act (TILA) violations. TILA is the cornerstone federal regulation intended to protect consumers from inaccurate and unfair disclosure of the cost of a credit transaction, such as the interest rate and payment schedule of a mortgage loan.

In other words, FDIC-regulated lenders were struggling to accurately and fairly present to borrowers the amount and timing of their required loan payments. Presumably, then, at least some homeowners who suddenly and unexpectedly saw their mortgage payments spike 10% had cause to complain.

We presume these violations were even higher for lenders outside the FDIC's purview. These include the state-licensed, non-depository lenders—such as Ameriquest and New Century—who were responsible for originating 52% of subprime mortgages.[4] News accounts are replete with former employees acknowledging they routinely hid fees, fabricated data and forged documents. There is, for instance, the infamous story of how loan officers for one such lender used "a brightly lighted Coke machine as a tracing board, copying borrowers' signatures on an unsigned piece of paper."[5]

These widespread, though certainly not universal, practices did not stop at the origination stage. In fact, the securitization-spurred boom in originations ultimately made it infeasible to carry out large-scale foreclosures once the market turned.

Evidence of this can be found in an April 2011 Interagency Review [6] by the Federal Reserve, OCC and OTS of servicers, which found critical weaknesses in servicers' foreclosure processes and oversight and monitoring of third-party vendors, including foreclosure attorneys. These weaknesses resulted in unsafe and unsound practices and violations of applicable federal and state laws, elevating the agencies' concern that "widespread risks may be presented—to consumers, communities, various market participants, and the overall mortgage market." The servicers included in this review represented more than two-thirds of the servicing market.

Given these well-documented and widespread origination and servicing issues, it is not implausible that there are homeowners who are alleged to have defaulted on loans to which they never fully agreed to and, further, are being foreclosed upon by lenders that might not even own such loans. The fact that these homeowners borrowed something, on some terms, from someone should not be enough to rob them of their due process right.

Importantly, we are not asserting that every distressed borrower is a victim and that the mortgage industry is collectively guilty of defrauding homeowners. Certainly many borrowers knowingly and recklessly overextended themselves. Furthermore, the remarkable growth of the U.S. housing markets is a consequence of, and its future stabilization depends heavily upon, the responsible actions of many of the industry's leading participants.

Rather, we can deduce from the public evidence that there are indeed legitimate victims in the mortgage crisis. Whether these homeowners are systematically being deprived of legal safeguards and due process rights is an important question.

---

[4] Source: Federal Reserve Board based on Home Mortgage Disclosure Act data
[5] "Workers Say Lender Ran 'Boiler Rooms'", *Los Angeles Times* (February 4, 2005)
[6] Interagency Review of Foreclosure Policies and Practices, April 2011

12-12020-mg    Doc 7410-6    Filed 08/21/14    Entered 08/21/14 19:18:16    Exhibit A-4
Smith Diligence Response (Part 2)    Pg 51 of 145

FORECLOSURE IN CALIFORNIA | A CRISIS OF COMPLIANCE

Civ. Code §2924 affords those homeowners certain rights, including in some cases the right to stop or slow foreclosure proceedings. Furthermore, as we shall see, violations of Civ. Code §2924 and California's other foreclosure requirements are sometimes indicative of broader, substantive consumer protection issues.

Therefore, widespread non-compliance with such regulations is a matter that warrants the serious attention of the legislature and the courts.

# 4. How This Relates to the Foreclosure Settlement

This report is being published within a week of the announcement that 49 state attorneys general and the federal government have reached agreement on a joint state-federal settlement with the country's five largest loan servicers regarding some aspects of the servicer's foreclosure practices. It is worth briefly discussing how this report relates to that settlement.

As of the date of this publishing, federal and state officials have not yet made public the agreement and its final wording is still being drafted. However, the general principles are known. The agreement settles only some aspects of the lender misconduct relating to the foreclosure crisis and, with respect to those, does not resolve all legal claims. Consequently, based on our understanding, the settlement does not resolve most of the issues this report identifies, nor immunizes lenders and servicers from a host of potential liabilities arising therefrom.

State and federal authorities can pursue criminal actions and also punish wrongful conduct related to the bundling and sale of mortgage loans into investment securities, among other things. For instance, the settlement would not release lenders from charges arising under California Penal Code §115, which states that any person who "knowingly procures or offers any false or forged instrument to be filed, registered, or recorded in any public office within this state, which instrument, if genuine, might be filed, registered, or recorded under any law of this state or of the United States, is guilty of a felony."

Moreover, the settlement does not provide a release for any private claims by individuals or any class action claims.

All this notwithstanding, if nothing else, this report provides a fuller context for understanding the general nature and extent of the problems precipitating California's participation in the settlement. To our knowledge, this is the first public study to provide a rigorous, quantifiable analysis of foreclosure practices in California.

Until now, public information in California regarding the variety and frequency of improper foreclosures has been largely anecdotal. This is because, as we discussed in Section 3, California's expedited non-judicial foreclosure process results in little, if any, oversight of foreclosing entities. In contrast, states with more rigorous judicial foreclosure requirements have uncovered and exposed patterns of servicer misconduct.[7] The results of this report, therefore, provide the transparency to better understand this important and timely development.

---

[7] See: Office of the Attorney General of the State of Florida, Economic Crimes Division, "Unfair, Deceptive and Unconscionable Acts in Foreclosure Cases: Presentation to the Florida Association of Court Clerks and Controllers" (2010). Note that Florida is a judicial foreclosure state.

FORECLOSURE IN CALIFORNIA ┊ A CRISIS OF COMPLIANCE

# 5. Presentation of Findings

In this section we provide detailed findings from our analysis organized by the Subject Areas identified in Section 1. For each Subject Area (such as Assignments or Notice of Trustee's Sale) we focus on particular topics (such as chain of title issues or timing requirements). In addition to a Subject Area's overall exception rate (which combines all topics), we show the exception rates and explanatory discussion for each topic.

## 5.1 Assignments

When a lender decides to sell a trust deed to another lender or to a party to a securitization transaction[8], the lender signs an assignment of the deed of trust in favor of the new lender. This assignment typically includes an assignment of the Note the Deed of Trust secures and gives the new lender the same lien on the property that the original lender had under the trust deed. The new lender essentially steps into the shoes of the old lender.

*Figure 5.1 Loans with Assignment Issues*



While we observed a meaningful number of issues relating to Assignments, we focused specifically on five topics: recordation of conflicting assignments, conflicts between federal filings (usually filings with the Securities Exchange Commission) and

recorded documents, Assignments ostensibly executed by the Trustee or Servicer, assignees ostensibly signing for assignors and potential issues relating to Assignments filed subsequent to the Notice of Default.

Overall, 75% of the subject loans contained one or more exceptions relating to these five topics.

A discussion of the five topics and our findings are set forth below. The percentages highlighted in the shaded boxes indicate the exception rate for each topic.

 ***Recordation Of Conflicting Assignments:*** In 6% of the subject loans, two or more conflicting Assignments of the Deed of Trust were recorded, purporting to transfer ownership of the Deed of Trust to two or more separate entities. For these loans, the conflicting transfers make it impossible for both recorded Assignments to be legally valid. In such cases, there is a strong possibility that neither of the recorded Assignments is legally valid. At the very least, the conflicting Assignments challenge the power and authority of the entities foreclosing on the property and call into question whether the foreclosing Beneficiary does in fact own the loan.

 ***Conflicts Between Federal Filings And Recorded Documents:*** In 23% of the subject loans, the foreclosure documents contradict the findings of a securitization audit regarding who is the true, current owner of this loan. Specifically, federal securities data regarding the ownership of the loan contradict the documents filed at the County Recorder's office.

---

[8] See Appendix A for a primer on securitization.

12-12020-mg    Doc 7410-6    Filed 08/21/14    Entered 08/21/14 19:18:16    Exhibit A-4
Smith Diligence Response (Part 2)    Pg 53 of 145

FORECLOSURE IN CALIFORNIA | A CRISIS OF COMPLIANCE

 **_Assignments that are ostensibly executed by the Trustee or Servicer:_** 27% of the time we found evidence to suggest that the original or prior owner of the loan may not have signed the Assignment and that it instead was improperly signed by an employee of the Servicer or Trustee. We suspected this because the name of the person that executed the Assignment of the Deed of Trust was verified to be an employee of the Trustee or the Servicer. The original owner or a subsequent owner of the loan must execute the Assignment of the Deed of Trust. It is unlikely that an employee of the Trustee or the Servicer was a prior owner of the loan. Moreover, it is unlikely that the employee of the current entity claiming to be Beneficiary was, in fact, an agent of a prior owner, as this suggests the prior owner signed an unrecorded document granting authority to assign the Deed of Trust rather than simply signing the Assignment itself. More likely, the chain of title to such loans has been broken and the written transfers from the original owners to the current entities claiming to be Beneficiary do not exist. The possible undocumented or, worse, nonexistent transfers of the loan may explain why the prior, known owner of the loan did not execute the Assignment.

 **_Assignees Ostensibly Signing For Assignors:_** Additionally, 11% of the time we found evidence to suggest the prior owner of a subject loan may not have signed the Assignment and that instead the assignee signed also as assignor. This is suspected because the name of the person that signed the Assignment as assignor was verified to be an employee of the entity claiming to be the current Beneficiary. (Note that this differs from the topic examined immediately above. Above, the Substitution appears to be executed by the

Trustee or Servicer. Here, simply put, an apparent employee of the buyer of the loan has executed the assignment on behalf of the seller.) The original owner or a properly assigned subsequent owner must execute the assignment of the Deed of Trust. It is unlikely that an employee of the entity claiming to be the current Beneficiary was also a prior owner of the loan. Moreover, it is unlikely that the employee of the current entity claiming to be Beneficiary was an agent of a prior owner, as this suggests the prior owner signed an unrecorded document granting authority to assign the Deed of Trust rather than simply signing the Assignment itself. More likely, the chain of title to this loan has been broken and the written transfers from the original owners to the current entity claiming to be Beneficiary do not exist. The possible undocumented transfers of this loan may explain why the prior known owner of the loan did not execute the Assignment.

 **_Potential Issues Relating to Assignments Filed After The Notice Of Default:_** For 59% of the subject loans, an Assignment of the Deed of Trust was filed subsequent to the Notice of Default. Therefore, the persons filing the Notice of Default claimed at that time to represent one purported Beneficiary and then, subsequently, stated that the actual Beneficiary was another person/entity. It is possible that the order and substance of these notices caused a failure to comply with Cal. Civ. Code §2923.5. This could indicate that the Notice of Default was not executed under the proper authority of the true Beneficiary of this loan. Cal. Civ. Code section §2924(a)(1)(C) expressly requires that a Notice of Default include "A statement setting forth the nature of each breach actually known to the beneficiary." Furthermore, the Notice of Compliance attached to the Notice of Default may not meet the requirements of Cal. Civ. Code

FORECLOSURE IN CALIFORNIA | A CRISIS OF COMPLIANCE

§2923.5 because that statute requires the actual Beneficiary of the loan to attempt to discuss alternatives to foreclosure with the Borrower. It should be noted that while the new Beneficiary came to light late in the foreclosure process, the new Beneficiary may have purchased the loan years before the Assignment was recorded.

## 5.2 Notice of Default

Before commencing the foreclosure process, California requires the recordation of a Notice of Default in the county in which the property is located. Importantly, a lender is not required to record a Notice of Default simply because one or more payments are not met. In fact, a lender may decide not to record the Notice of Default until after a loan is in substantial default—sometimes six months or more past due. However, a Notice of Default must be filed to set California's non-judicial foreclosure process in motion.

 Pursuant to Cal. Civ. Code §2923.5, lenders are required to first contact the borrower "in person or by telephone" to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure," thirty (30) days prior to recording a Notice of Default against a property. We found that 6% of the foreclosures did not comply with Cal. Civ. Code §2923.5 because no affidavit attesting to compliance was file.

§2923.5 was enacted in 2008 to encourage communication between lenders and borrowers prior to commencement of non-judicial foreclosure. The extent of the private right of action for non-compliance is limited to obtaining a postponement of an impending foreclosure to permit the lender to comply with the statute. In cases where a foreclosure sale has already been held,

noncompliance does not affect the title to the foreclosed property, as the Legislature did nothing to affect the rule regarding foreclosure sales as final. Therefore, if the property is sold to a bona fide purchaser for value, there is a significant chance that the homeowner will have waived this defect and lose the property.[9]

## 5.3 Substitution of Trustee

In most instances, the original Beneficiary will substitute another trustee to handle the foreclosure under a *Substitution of Trustee*. Substitute trustees are typically firms that specialize in default servicing needs and foreclosure processing.

Where there is a successor Trustee, there can be no valid non-judicial foreclosure where the trustee under the original deed of trust is not properly substituted with a "recorded" document. To avoid confusion and litigation, there cannot be at any given time more than one person with the power to conduct a sale under a Deed of Trust. Therefore, failure to execute or record a Substitution of Trustee is a substantial defect and impacts a right afforded to borrowers to know whom the Trustee is that will sell their property at a foreclosure sale. As such, the sale may be void.

While we observed a meaningful number of issues relating to Substitutions of Trustee, we focused on four topics: invalid Substitutions subsequent to the Notice of Default, Substitutions recorded subsequent to the filing of the Notice of Trustee Sale, Substitutions executed by an entity other than the Beneficiary and other suspicious executions.

---

[9] See *Mabry v. The Superior Court of Orange County*, No. G042911 (June 2, 2010)

FORECLOSURE IN CALIFORNIA | A CRISIS OF COMPLIANCE

Overall, 85% of the subject loans contained one or more exceptions relating to these four topics.

A discussion of the four topics and our findings are set forth below. The percentages highlighted in the shaded boxes indicate the exception rate for each topic.

*Figure 5.33 Loans with Substitution Issues*



Issues 85%



***Invalid Substitutions After The Notice Of Default:*** In 18% of the subject loans the Substitution of Trustee was not executed in compliance with Cal. Civ. Code §2934a therefore the Substitution and any document filed by the new Trustee may be invalid. The Substitution of Trustee was recorded after the Notice of Default was recorded, but the required Declaration of Mailing was not included as required by Cal. Civ. Code §2934a (b) and (c). The Substitution of Trustee is defective and, therefore, any documents signed by the new Trustee lack proper authority and any sale of the underlying property may be void. It's worth noting that we are not presuming that the Substitution was never actually mailed to the homeowner; rather, we are concluding that a valid Substitution of Trustee was not effectuated because the statutory requirements were not met.



***Substitution is Recorded Subsequent To The Filing Of The Notice Of Trustee Sale:*** We found that 3% of the time the Substitution of Trustee was recorded after the Notice of Trustee's Sale was recorded. Such action is a violation of Cal. Civ. Code §2934a and may invalidate the foreclosure documents filed by the new Trustee. Cal. Civ. Code §2934a requires that only the original trustee or a properly substituted trustee has the power to file a Notice of Trustee's Sale and actually sell a property at a Trustee's sale. Under this statutory provision, the Substitution of Trustee must be filed prior to or currently with the Notice of Trustee's Sale. If a Substitution of Trustee is never properly filed in the County Records office, then the current purported Trustee may not have the authority to foreclose on the subject property. An incorrect Substitution of Trustee or failure to file a Substitution of Trustee could invalidate the foreclosure process. While there is a relatively small exception rate associated with this topic, such violations in combination with exceptions elsewhere suggest the possibility of fraud and should be investigated accordingly.



***Substitution Executed By An Entity Other Than The Beneficiary:*** For 85% of the subject loans, the Substitution of Trustee was not executed by the Beneficiary of the loan. Therefore, the instrument may be invalid unless it was signed with the express authority of the Beneficiary. Specifically, the original lender or a properly assigned beneficiary did not execute the Substitution of Trustee. Cal. Civ. Code §2934a (a)(1) states that only the current Beneficiary of the loan has the authority to execute a valid Substitution of Trustee. Therefore, a successor Trustee must be appointed by the original Lender or a properly assigned Beneficiary. If the new

12-12020-mg   Doc 7410-6   Filed 08/21/14   Entered 08/21/14 19:18:16   Exhibit A-4
Smith Diligence Response (Part 2)   Pg 56 of 145

FORECLOSURE IN CALIFORNIA │ A CRISIS OF COMPLIANCE

Trustee was not appointed by the current Beneficiary, the new trustee does not have the authority to foreclose on the subject property or execute the statutorily required notices. Careful verification that the entity that executed the Substitution of Trustee is the actual owner of the loan is critical to a determination of whether the Substitution of Trustee is valid.



***Other Suspicious Executions of Substitution:*** In 28% of the subject loans, we found reason to suspect the execution of the Substitution was unauthorized. Specifically, there were questions as to whether the Substitution of Trustee was signed by a person who is an actual employee of the entity executing the Substitution. Pursuant to Cal. Civ. Code §2934a (a)(1), a Substitution of Trustee may only be validly executed by the Beneficiaries under the Deed of Trust or their successors in interest. This suggests that an employee or agent of a duly authorized company purporting to execute the Substitution of Trustee must actually sign the document. In these cases, the individuals signing the Substitutions of Trustee were not actual employees of the companies purporting to execute the Substitution. This information was verified through a database with the names of employees of several Trustee companies that frequently sign foreclosure documents. The entity that executed the Substitution may claim that it acted as the agent of the Lender or Beneficiary. However, if this is not the case (as has frequently been shown), any unauthorized execution may invalidate the Notice of Default and Notice of Trustee's Sale.

## 5.4 Notice of Trustee Sale

The Notice of Trustee's Sale (NOTS) serves as public notice that the auction of the property will be taking place. The Notice of

Trustee's Sale can be recorded three (3) months after recording the Notice of Default. The trustee sale date must be no earlier than 20 days after Notice of Trustees Sale is recorded.

While we observed a meaningful number of issues relating to the Notice of Trustee's Sale, we focused on three topics: early filing of NOTS, early actual or planned sale and the NOTS not executed by authorized Trustee.

Overall, 42% of the subject loans contained one or more exceptions relating to these three topics.



*Figure 5.4 Loans Notice of Trustee's Sale Issues*

A discussion of the three topics and our findings are set forth below. The percentages highlighted in the shaded boxes indicate the exception rate for each topic.



***Early Filing of NOTS:*** 2% of the time the Notice of Trustee's Sale was not filed in compliance with Cal. Civ. Code §2924 because three months did not elapse since the Notice of Default was recorded. The Notice of Trustee's sale was recorded less than three months after the Notice of Default was recorded in the official County Records. Failure of the trustee to give the homeowner the statutorily required time to cure the default is a violation of the homeowner's due

process rights. Generally, absent any other wrongdoing, the practical consequence of this violation is to delay the foreclosure proceedings until all notices are properly filed and timing requirements met.

 **Early Actual or Planned Sale:** In 10% of the subject loans, the actual or planned sale of the property was scheduled less than 20 days after the Notice of Trustee's Sale was recorded. A sale of the property by the Trustee may not occur until twenty days after the Notice of Trustee's Sale is executed and given to the homeowner. In the case of the affected loans, the Cal. Civ. Code §2924(f) notification requirements were not met and/or the Trustee did not wait until twenty days after the Notice of Trustee's Sale was recorded to sell the property. Non-compliance with the timing requirement may invalidate the foreclosure sale or delay the sale. Failure of the Trustee to give the homeowner the full 20 days to respond to the notice of sale is a violation of the homeowner's due process rights.

 **NOTS not executed by authorized Trustee:** 34% of the time the original Trustee or a properly substituted Trustee did not execute the Notice of Trustee's Sale. Therefore, the Notice of Trustee's Sale was not executed by the proper Trustee. This should void the Notice and any Trustee's Sale by that entity. The Deed of Trust and California foreclosure statutes give exclusive power to the original Trustee or a properly substituted Trustee to file a Notice of Trustee's sale and sell the property at a Trustee's sale (see Section 5.3). Because the authorized Trustee did not execute the Notice of Trustee's Sale, the Trustee's sale may be void.

## 5.5 Suspicious Activity and Other Issues

Charges that some of the largest mortgage servicers are engaged in fraudulent practices continue be made. These practices include: fabricating documents that should have been signed years ago and submitting them as evidence to foreclose on homeowners, back-dating documents and robo-signing (using fake signatures to power through foreclosure documents).

It is sometimes difficult to prove fraudulent practices with certainty. However, by reviewing documents and signatures against public and proprietary databases, we were able to identify numerous specific instances potential abusive practices. We refer to these instances as "Suspicious Activity."

While we observed a meaningful number of issues relating to Suspicious Activity, we focused on three topics: "strangers" to the deed of trust purporting to be Beneficiaries, back-dating of documents and incorrectly executed documents.

Overall, 82% of the subject loans contained one or more exceptions relating to these three topics.

*Figure 5.5 Loans with "Suspicious Activity"*



A discussion of the three topics and our findings are set forth below. The percentages highlighted in the shaded

FORECLOSURE IN CALIFORNIA │ A CRISIS OF COMPLIANCE

boxes indicate the exception rate for each topic.



***"Strangers" to the Deed of Trust Purporting to Be Beneficiaries:*** For 45% of the subject loans, the property securing a loan was sold at auction to an entity that is claiming to be the Beneficiary of the Deed of Trust when that entity is not the original Beneficiary and either (1) no Assignment of the Deed of Trust was ever recorded granting a beneficial interest to that entity or (2) such assignment was recorded *after* such sale. In other words, a "stranger" to the Deed of Trust purported to be the foreclosing Beneficiary of the subject property and was granted ownership of said property at the Trustee's Sale. This entity was not the original Beneficiary of the Deed of Trust and no assignment of the Deed of Trust has been recorded assigning the beneficial interests of the Deed of Trust. This is an issue because such entities do not convey any money for the subject property, but instead made a credit bid at the auction. The California foreclosure statutes state that only the Beneficiary of the Deed of Trust can make a credit bid at a foreclosure auction. Without proof of the ownership of the beneficial interests in the Deed of Trust, the entity that was granted ownership of the subject property may not have good title to the property and the Trustee's Sale to this unauthorized "stranger" may be invalid. The fact that an Assignment of the Deed of Trust was never recorded could indicate that the chain of title for such loans cannot be established. Further, only foreclosing beneficiaries have the right to be exempt from the payment of transfer taxes charged by government agencies. If the foreclosing party was not, in fact, the foreclosing beneficiary then the transaction may involve the unlawful evasion of taxes.



***Back-Dating Of Documents:*** We found evidence in 59% of the subject loans that one or more of the foreclosure documents recorded against the subject property were back-dated (i.e. there is a time discrepancy between the document date and the notary's date or the recording date). Creating a false date of signature is a potentially serious issue as many of these documents carry penalties for perjury or other violations of California's Penal Code. It should be noted that there may have been a legitimate reason for the discrepancy between the document date and the recording date, such as the document was properly executed but mishandled prior to recordation.



***Incorrect Execution of One or More Documents:*** In 10% of the subject loans we found instances where one or more of the foreclosure documents were incorrectly executed for reasons other than those already discussed above. A natural person must sign each document recorded in the foreclosure process, including all Assignments, Substitutions of Trustee, the Notice of Default and the Notice of Trustee Sale. Documents not bearing signatures of natural persons may be invalid.

## 5.6 MERS Conflicts and Results

The Mortgage Electronic Registration System (MERS) is a private corporation that tracks the ownership interests and servicing rights in mortgage loans, allowing the parties to the securitization process (described in Appendix A) to buy and sell the loans without having to record transfers with the county.

Mortgage Electronic Registration Systems, Inc. and MERSCORP, Inc. were created by Fannie Mae, Freddie Mac, Ginnie Mae, the Mortgage Bankers Association of America

and large mortgage banks to provide an electronic registry for tracking ownership interests and servicing of mortgage loans. MERS played a unique role during the advent and subsequent boom of the securitization market for residential mortgage loans.

MERS members can sell mortgage loans without having to record each transfer in county offices thus eliminating the need for frequent recorded assignments of mortgages and deeds of trust. MERS asserts to be the owner (and the owners agent) of the security interest indicated by trust deed and registers assignments of beneficial interests through its system.

MERS maintains that by eliminating the need to file assignments in the County Records it lowers costs for lenders and consumers by reducing county recording fee expenses resulting from real estate transfers. MERS further maintains that it provides a central source of information and tracking for mortgage loans, although a transfer between two MERS members is effectively unknown to those outside the MERS system.

The scope of this segment of our investigation involves the disclosure of the investor (Beneficiary) as named in the MERS system versus the investor (Beneficiary) information as named on the Trustee's Deeds upon Sale and/or Assignments of Deeds of Trust that have been recorded in the San Francisco County Recorder's Office.

A Trustee's Deed Upon Sale must name a foreclosing beneficiary, who is the grantee of the beneficial interest under the Deed of Trust. We compared this information to the investor information indicated in the MERS system. All entities that did not match the MERS database were identified as conflicts.

The foreclosing beneficiaries as named in the Trustee Deeds were either entered as a "wildcard" grantee (that is a foreclosing beneficiary grantee whereby there was no assignment to that entity) or the foreclosing beneficiary grantee was named subsequent to a sale by an assignment. In either case, if this entity was different than the investor as named in the MERS database a conflict was tallied.



Figure 5.6-A MERS Conflicts with TDUS

Investor information was available from the MERS database on 192 of the 382 subject loans. The investigation resulted in 112 loans whereby the beneficiary as entered on the Trustee's Deed upon Sale conflicted with the investor information present on the MERS database. This is a 58% failure rate.

In addition to investigating conflicts between MERS and the County Records, we also analyzed the MERS-registered loans separately from the Non-MERS loans across all Subject Areas (excluding MERS Conflicts, which of course only includes MERS loans). As Figure 5.6-B illustrates, MERS-registered loans had a higher exception rate in each Subject Area.

FORECLOSURE IN CALIFORNIA | A CRISIS OF COMPLIANCE

*Figure 5.6-B Comparing MERS Loan Exceptions Rates*



As always, it is important to keep in mind that correlation does not imply causation. Indeed, there are many possible explanations for the correlation between a loan's exception rates and whether it is MERS-registered.

Securitization practices may be a significant causative variable explaining these results. In general, MERS loans are more likely to be securitized. Indeed, facilitating the multiple sales and assignments required by the securitization process is a primary objective of MERS. As Appendix A shows, securitization involves multiple transactions among multiple parties, creating more opportunities for error and introducing moral hazard among various parties with different interests. On the other hand, loans originated for a lender's portfolio do not present the same issues.

Another possible explanation is that beneficiaries relying on the County Records, as opposed to the private MERS registry, are more likely to ensure that all legal instruments are valid, executed and retained.

# 6. Conclusion

If there is one lesson to take away from this report it is that, with so many homes being foreclosed and with so little oversight, California's foreclosure process appears utterly broken.

What is at stake here is more than merely fairness and minimal due process. Foreclosures impact not only homeowners but also entire communities and housing markets. The integrity of California's record title system is also at stake because the validity of title for subsequent purchasers is dependent on those that precede it.

The mortgage industry, for its part, asserts it is taking vigorous steps to work at its shortcomings. The paradox is that the foreclosure crisis has been caused by their successes as much as their failures. During the boom, poor underwriting and documentation standards made possible the blistering rate of originations and securitizations. While it invested heavily in production, the mortgage industry did not apply commensurate resource and ingenuity to the quality control and servicing function. Consequently, outmoded infrastructure and incomplete, or missing, loan documentation made it infeasible to carry out large-scale foreclosures.

As regards the current crisis, it is difficult to imagine how the industry can cost-effectively solve these problems *ex post facto*. Going forward, however, much can be done to improve the entire mortgage loan value chain in order to mitigate the potential for these failures to recur in the future.

So far as public policy is concerned, supervisory and enforcement activity will likely increase until the industry can demonstrate the weaknesses and deficiencies in its foreclosure practices have been corrected. But, here too, there is much looking to be had in the mirror. California's real estate laws were designed to address a far simpler, much different market. The mortgage industry has since seen remarkable

innovation. Considering the extent and consequence of the issues, perhaps it is time for the legislature to be similarly innovative. Ensuring clear chains of title and the integrity of California's record title system are essential to the recovery and stabilization of the state's housing market. Similarly, California's hoary statutory foreclosure process is complicated by outmoded assumptions and problematic ambiguities. It is in the best interest of all—the mortgage industry, securities investors, homeowners and communities—to modernize California's real estate laws so that these issues are more effectively addressed.

It is not yet clear that the underlying problems that made possible the catastrophic failures and tragedies wrought by the foreclosure crisis have been solved. On this will depend the chances of a recovered mortgage market and a salvaging of the American Dream.

12-12020-mg    Doc 7410-6    Filed 08/21/14    Entered 08/21/14 19:18:16    Exhibit A-4
Smith Diligence Response (Part 2)    Pg 62 of 145

FORECLOSURE IN CALIFORNIA | A CRISIS OF COMPLIANCE

## Appendix A - Understanding Securitization

It is important to have a general familiarity with mortgage securitization in order to understand the foreclosure process. Securitization involves a series of conveyances of the note evidencing the residential loan and assignment of the mortgage or trust deed securing it. Therefore, chain of title and beneficial interest issues frequently turn on the securitization trajectories.

*Securitization* is the process pooling loans into "mortgage-backed securities" or "MBS" for sale to investors. MBS is an investment instrument backed by an undivided interest in a pool of mortgages or trust deeds. Income from the underlying mortgages is used to pay interest and principal on the securities. Figure A below is a simplified schematic depicting the general securitization process and some of the parties involved.

**Figure A - Securitization Schematic**



The process begins with *Originators*, which are the lenders (such as banks or finance companies) that initially make the loans to homeowners. *Sponsor/Sellers* (or "sponsors") purchase these loans from one or more Originators to form the pool of assets to be securitized. (Most large financial institutions are both Originators and Sponsor/Sellers.) A *Depositor* creates a *Securitization Trust*, a special-purpose entity, for the securitized transaction. The depositor acquires the pooled assets from the Sponsor/Seller and in turn deposits them into the Securitization Trust. An *Issuer* acquires the Securitization Trust and issues certificates to eventually be sold to investors. However, the Issuer does not directly offer the certificates for

sale to the Investors. Instead, the Issuer conveys the certificate to the Depositor in exchange for the pooled assets. An *Underwriter*, usually an investment bank, purchases all of the certificates from the Depositor with the responsibility of offering to them for sale to the ultimate investors.

What is first important to understand is that to effect the securitization process both the note and trust deed (the security interest) must be assigned from the Originator to the Sponsor/Seller, then from the Sponsor/Seller to the Depositor and, finally, from the Depositor to the Securitization Trust. Each assignee, up until it makes an assignment to the next party along the chain of title, is the beneficiary under the trust deed. There is a break in this chain of title where an assignment is not made or is otherwise invalid.

Also worth noting is that almost all Securitization Trusts elect to be treated as "Real Estate Mortgage Investment Trusts" or "REMICS" pursuant to the rules and regulations of Sections 860A-F of the Internal Revenue Code ("IRC"). Consequently, a Securitization Trust must adhere to certain strict and absolute requirements involving transfers of assets into the trust. The IRC 860 outlines these requirements, which include a condition that all loans that are stated to be in the REMIC trust must be acquired on the startup day of the trust or within three months thereafter. Any other contributions to the REMIC after the startup date or the subsequent 90-day window are treated as a "prohibited transaction". A prohibited transaction is catastrophic to a Securitization Trust as it subjects the entire cash flows of the trust to a minimum 100% tax. For this reason, all parties to a Securitization Trust must strictly adhere to the rules of the trust's Pooling and Servicing Agreement and the Mortgage Loan Purchase Agreement, especially the guidelines regarding conveyances (and assignments) of the assets.

## Appendix B – Methodology

The City and County of San Francisco's Office of the Assessor-Recorder randomly selected 382 residential mortgage loan transactions (the "subject loans") that resulted in foreclosure sales that occurred from January 2009 through October 2011. The subject loans included all San Francisco zip codes and comprised proportionally more loans in areas that had a higher rate of foreclosure. Over this period, there were 2,405 foreclosure sales. The subject loans thus represent approximately 16% of the total.

We reviewed all recorded documents. We likewise collected and reviewed extensive information using other public resources, including federal filings (usually filings with the Securities Exchange Commission). Finally, we utilized public and proprietary databases to assist in identifying suspicious activity (such as robo-signing or other execution issues).

The loan reviews were performed by experienced mortgage and legal professionals, utilizing a proprietary rules-based auditing software developed by attorneys expert in mortgage origination, securitization and foreclosure laws.

## About Aequitas

Aequitas Compliance Solutions, Inc. ("Aequitas") is a mortgage regulatory compliance consulting firm specializing in complex litigation, investigation and internal audit issues. We work with the mortgage industry and its stakeholders providing accurate, thoughtful and customized analysis, which we present in a clear and persuasive manner. Our experts possess a broad range mortgage and regulatory expertise which enable us to serve large and small companies, law firms and regulators.

## Contact

For questions related to the findings presented herein:

Lou Pizante
949.272.3955
lou@aequitasaudit.com

For copies of this paper:

Mark Rapparport
949.272.3955
research@aequitasaudit.com

For media inquiries:

Barbara Caruso, APR
Caruso Communications
714.841.6777
carusocom@aol.com

**Lou Pizante** is a partner at Aequitas where he leads the firm's Regulatory Compliance & Litigation Support practice. Mr. Pizante has more than 15 years experience in mortgage regulation and capital markets. Prior to Aequitas, Mr. Pizante was CEO of Mavent Inc., currently a subsidiary of Ellie Mae, the leading provider of automated regulatory compliance solutions for the mortgage industry. Mr. Pizante has held positions with RBS Securities Inc., Nomura Asset Capital and Goldman Sachs. Mr. Pizante is a frequent author and speaker for various mortgage industry publications and conferences. He holds a bachelor's degree from the University of California at Berkeley and a master's degree and a juris doctorate from New York University. Mr. Pizante is a member of the California Bar Association. He has been recognized as a Future Leader by the Mortgage Bankers Association.

**Mark Rapparport** is a partner at Aequitas where he leads the firm's Forensic and Investigative Services practice.

**Jay Patterson** is the owner of Full Disclosure, LLC. Mr. Patterson is a forensic accountant and credentialed Certified Fraud Examiner. He is recognized nationally as one of only a handful of professionals that provide forensic and investigative accounting, examination and analyses related to the areas of mortgage loan servicing and securitization. He has been designated as an expert witness in several court jurisdictions around the country, developed methodologies that are used in the forensic examination and analyses of mortgage loan servicing and securitization transactions. His clients are attorneys and governmental entities. He is a frequent speaker and instructor at various mortgage servicing and securitization seminars and is currently involved in several landmark mortgage related cases. Mr. Patterson is a native of Texas and currently resides in Hot Springs National Park, Arkansas.

**Aaron Sheffield** is Associate Counsel at Aequitas and is responsible for audit and quality supervision. Mr. Sheffield holds a bachelors degree from the Univeristy of Kentucky and a juris doctorate from Pepperdine University School of Law.

*The authors would like to thank Phil Ting, Benjamin Weber and Walter Hackett for their excellent assistance.*

© 2012 Aequitas Compliance Solutions Inc. All Rights Reserved.

# EXHIBIT M

**MERS® ServicerID - Results**


**MERS**
ServicerID
www.mers-servicerid.org

Process Loans, Not Paperwork™

**5 records matched your search:**

MIN: ████████300-2    Note Date: 06/21/2006    MIN Status: Inactive

Servicer: Bank of America, N.A.    Phone: (800) 669-6607
Simi Valley, CA

If you are a borrower on this loan, you can click here to enter additional information and display the investor name.

---

MIN: ████████0130-2    Note Date: 11/13/2006    MIN Status: Inactive

Servicer: Aurora Bank FSB    Phone: (308) 220-2240
Scottsbluff, NE

If you are a borrower on this loan, you can click here to enter additional information and display the investor name.

---

MIN: ████████5067-6    Note Date: 01/06/2003    MIN Status: Inactive

Servicer: Aurora Loan Services LLC    Phone: (308) 220-2240
Scottsbluff, NE

If you are a borrower on this loan, you can click here to enter additional information and display the investor name.

---

MIN: ████████8385-2    Note Date: 11/10/2004    MIN Status: Inactive

Servicer: CitiMortgage, Inc.    Phone: (800) 283-7918
O'Fallon, MO

If you are a borrower on this loan, you can click here to enter additional information and display the investor name.

---

MIN: ████████8366-2    Note Date: 11/17/2004    MIN Status: Inactive

Servicer: FDIC as Receiver for IndyMac Federal Bank, FSB    Phone: (888) 206-4662
Dallas, TX

If you are a borrower on this loan, you can click here to enter additional information and display the investor name.

---

Return to Search

For more information about Mortgage Electronic Registration Systems, Inc. (MERS) please go to www.mersinc.org

Copyright© 2012 by MERSCORP Holdings, Inc.

Select borrower type and enter borrower information to see Investor for MIN ████████ 9130-2.

◉ Investor for Individual Borrower

Your entries may be either upper or lower case.
Fields marked are required.

\* Last Name: smith

\* SSN: ███ - ███ - 2841

\* ☐ By checking this box, the borrower or borrower's authorized representative is attesting to the fact that he or she is in fact the borrower or borrower's authorized representative for the loan in question. Additionally, borrowers wishing to learn the identity of their loan's investor must confirm their identity by entering their last name or corporation name as well as their SSN or TIN. If this information does not match the information contained in the MERS® System for the borrower of the loan, the investor information will not be displayed. Borrowers should verify the results with their loan servicer.

\*
[ Submit ]

◌ Investor for Corporation/Non-Person Entity Borrower

Your entries may be either upper or lower case.
Fields marked are required.

\* Corporation/Non-Person Entity Name:

\* Taxpayer Identification Number:

\* ☐ By checking this box, the borrower or borrower's authorized representative is attesting to the fact that he or she is in fact the borrower or borrower's authorized representative for the loan in question. Additionally, borrowers wishing to learn the identity of their loan's investor must confirm their identity by entering their last name or corporation name as well as their SSN or TIN. If this information does not match the information contained in the MERS® System for the borrower of the loan, the investor information will not be displayed. Borrowers should verify the results with their loan servicer.

\*
[ Submit ]

Servicer:   <u>Aurora Bank FSB</u>                          Phone:  (308) 220-2240
            Scottsbluff, NE

Investor:   Deutsche Bank National Trust Company Americas as Trustee

[ Close Window ]

# EXHIBIT N

| | CORRECTED (if checked) | |
|---|---|---|

| LENDER'S name, street address, city, state, ZIP code, and telephone no. | OMB No. 1545-0877 | Acquisition or Abandonment of Secured Property |
|---|---|---|
| AURORA BANK 2617 COLLEGE PARK PO BOX 1706 SCOTTSBLUFF   NE 69361-1706 1-866-521-3828 | **2011** Form **1099-A** | |

| | 1 Date of lender's acquisition or knowledge of abandonment | 2 Balance of principal outstanding |
|---|---|---|
| | 11-16-11 | $ 594,669.63 |

| BORROWER'S name, street address (including apt. no.), city, state, and ZIP code | 3 | 4 Fair market value of property |
|---|---|---|
| 1-704-64486-0003010-001-1-000-000-000-000 TIA DANIELLE SMITH 4011 HUBERT AVE LOS ANGELES CA 90008 | | $ 362,500.00 |

| 5 If checked, the borrower was personally liable for repayment of the debt . . . . . . . . ▶ | [X] |
|---|---|

6 Description of property
4011 HUBERT AVE
LOS ANGEL CA 90008

| LENDER'S federal identification no. | BORROWER'S identification no. |
|---|---|
| 51-0073416 | 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 |

Account number (see instructions)
0021796453

Copy B
For Borrower

This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if taxable income results from this transaction and the IRS determines that it has not been reported.

Form **1099-A**         (Keep for your records)         Department of the Treasury - Internal Revenue Service

## Instructions for Borrower

Certain lenders who acquire an interest in property that was security for a loan or who have reason to know that such property has been abandoned must provide you with this statement. You may have reportable income or loss because of such acquisition or abandonment. Gain or loss from an acquisition generally is measured by the difference between your adjusted basis in the property and the amount of your debt cancelled in exchange for the property, or, if greater, the sale proceeds. If you abandoned the property, you may have income from the discharge of indebtedness in the amount of the unpaid balance of your canceled debt. You also may have a loss from abandonment up to the adjusted basis of the property at the time of abandonment. Losses on acquisitions or abandonments of property held for personal use are not deductible. See Pub. 4681 for information about foreclosures and abandonments.

Property means any real property (such as a personal residence); any intangible property; and tangible personal property that is held for investment or used in a trade or business.

If you borrowed money on this property with someone else, each of you should receive this statement.

Account number. May show an account or other unique number the lender assigned to distinguish your account.

Box 1. For a lender's acquisition of property that was security for a loan, the date shown is generally the earlier of the date title was transferred to the lender or the date possession and the burdens and benefits of ownership were transferred to the lender. This may be the date of a foreclosure or execution sale or the date your right of redemption expired. For an abandonment, the date shown is the date on which the lender first knew or had reason to know that the property was abandoned or the date of a foreclosure, execution, or similar sale.

Box 2. Shows the debt (principal only) owed to the lender on the loan when the interest in the property was acquired by the lender or on the date the lender first knew or had reason to know that the property was abandoned.

Box 4. Shows the fair market value of the property. If the amount in box 4 is less than the amount in box 2, and your debt is canceled, you may have cancellation of debt income. If the property was your main home, see Pub. 523 to figure any taxable gain or ordinary income.

Box 5. Shows whether you were personally liable for repayment of the debt when the debt was created or, if modified, when it was last modified.

Box 6. Shows the description of the property acquired by the lender or abandoned by you. If "CCC" is shown, the form indicates the amount of any Commodity Credit Corporation loan outstanding when you forfeited your commodity.

# EXHIBIT O

# AURORA LOAN SERVICES

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

## REPAYMENT AGREEMENT

3640021796453534CL08004-30-08

Tia Danielle Smith
4011 Hubert Ave
Los Angeles          CA  90008-

RE:  Loan No. ██████5453

This Agreement made April 30, 2008 by and between AURORA LOAN SERVICES
("Lender") and Tia Danielle Smith (Borrower).

### RECITALS

WHEREAS, Lender is the holder and/or servicer of a certain Note made
by Borrower(s) on November 13, 2006 in the original principal amount of
$ 556,000 secured by a Security Instrument of even date therewith on
the property located at 4011 Hubert Ave, Los Angeles CA 90008.

WHEREAS, Borrower(s) are in default in the payment of monthly
installments of principal, interest, escrow and other payments due under
the Note and Security Instrument, and have incurred additional expenses
due under said Note and Security Instrument, for a total sum of arrears
now due of $    6,598.48 , consisting of the amounts set forth below:

1.  Unpaid monthly payment(s) from 02-01-08 through 04-30-08
                                          $     6,188.34
2.  Accrued Late Charges                  $      398.14
3.  NSF Charges                           $        .00
4.  Corporate Advances/Other Fees*        $       12.00
5.  Credit (suspense balance/partial payment)   $        .00
Total Amount Due (the "Arrearage"):       $     6,598.48

* Corporate Advances include but are not limited to property inspection
fees, property preservation fees, legal fees, appraisal fees, BPO fees,
title report fees, recording fees, and subordination fees.  Other fees
may include short payment advances and speed ACH fees.

WHEREAS, as a result of Borrower(s)' default, Lender has the right
to require Borrower(s) to make immediate payment in full of all monies
remaining unpaid under the Note and Security Instrument.

WHEREAS, Borrower(s) have requested and Lender has agreed to allow
Borrower(s) to repay the Arrearage pursuant to a repayment plan on the
terms set forth herein.


AURORA LOAN SERVICES LLC.

# AURORA LOAN SERVICES

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

### AGREEMENT

NOW, THEREFORE, in consideration of the above Recitals and the promises and mutual covenants herein contained, the parties hereto agree as follows:

1.  __Term.__  Unless Lender otherwise agrees in writing, the term of this Agreement shall be deemed to expire on the date the last payment is due from the Borrower(s) under paragraph 3 below.

2.  __Borrower(s) Admissions.__  Borrower(s) admit the Arrearage and represent that there are no defenses, offsets or counter-claims of any nature whatsoever to such amounts owing.

3.  __Borrower(s) Payment of Arrears.__  Borrower(s) shall repay the arrearage as follows:

    a.  By executing and returning this Agreement along with the initial installment by the due date and by paying to the Lender monthly plan payments as set forth below.  Plan payments are to be paid on or before the installment due date.

| PLAN | DATE | AMT | PLAN | DATE | AMT |
|------|----------|----------|------|----------|----------|
| 01 | 05/12/08 | 3,100.00 | 02 | 06/15/08 | 3,175.28 |
| 03 | 07/15/08 | 3,175.28 | 04 | 08/15/08 | 3,175.28 |
| 05 | 09/15/08 | 3,175.28 | 06 | 10/15/08 | 3,175.28 |

    b.  Subject to paragraph 12, upon complying with all of the terms of this Agreement, Borrower(s)' Arrearage will be brought current. Borrower(s) will therafter receive a monthly billing statement reflecting the current status of the loan and Borrower(s)' regular monthly payment amount.  Borrower(s) agree to then resume making the regular monthly payments required under the Note.

4.  __Default.__  If Borrower(s) fail to make any of the payments specified in paragraph 3 above on the due dates and in the amount stated, or otherwise fail to comply with each and all of the terms and conditions herein, Lender, at its sole option, may terminate this Agreement without further notice to Borrower(s) and, except as otherwise provided herein, this Agreement shall be of no further force and effect.  In such case, all amounts that are owing under the Note and Security Instrument and this Agreement shall become immediately due and payable.

Loan No. ████6453
Page 2 of 5



AURORA LOAN SERVICES LLC.

## AURORA LOAN SERVICES

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

   5.   **No Waiver.** Nothing contained herein shall constitute a waiver
of any or all of the Lender's rights or remedies including the right
to commence/continue collection proceedings, including but not limited to
a foreclosure action. Failure by Lender to exercise any right or remedy
under this Agreement or as otherwise provided by applicable law shall not
be deemed to be a waiver thereof. For example, if Lender decides to
accept a partial or untimely payment from Borrower(s) instead of
returning such payment or terminating this Agreement as provided herein,
Lender shall not be precluded from rejecting a subsequent partial
or untimely payment, terminating this Agreement, or taking any other
action permitted by applicable law.

   6.   **Status of Default.** The Borrower(s) acknowledge:
   a.   that if Lender previously notified the Borrower(s) that the
Note and Security Instrument is (or will be) accelerated and/or due in full,
such loan documents remain accelerated and/or due in full, although
Borrower(s) may be entitled by law to cure such default by bringing the
loan current rather than paying it off. Lender's acceptance of any payments
from Borrower(s) which, individually, are less than the total amount due
to cure the default described herein shall in no way prevent Lender from
continuing with collection action, or require Lender to re-notify
Borrower(s) of such default, re-accelerate the loan, reissue any notice
recommence any process prior to Lender proceeding with collection
action; and,
   b.   that if, before all Arrearages are paid in full, Borrower(s)
or any other party with an interest in the property become subject to a
proceeding in bankruptcy, or if the loan otherwise is subject to
protection under bankruptcy laws, Borrower(s) hereby understand and agree
that all or parts of this Agreement may become invalid and/or that,
unless expressly prohibited by law, Lender, at its option, may terminate
this Agreement.

   7.   **No Modification.** Except as otherwise temporarily provided in this
Agreement, the Note and Security Instrument, and any amendments thereto,
are ratified and confirmed and shall remain in full force and effect.

   8.   **Methods of Making Payments.** The payments Borrower(s) send to
Lender pursuant to this Agreement shall be applied, at Lender's sole
first to the oldest payments due. Any amounts received by Lender which
are less than the full payment then due and owing under this Agreement
shall be, at Lender's sole option, (1) returned to Borrower(s), or
(2) held by Lender in partial payment balance until a sufficient sum is
received by Lender to apply a full payment. If this Agreement is
canceled and/or terminated for any reason, any remaining funds in this
partial payment balance shall be credited towards Borrower(s)' remaining
obligation owing in connection with the loan and shall not be refunded.
All payments made to Lender under this Agreement shall (i) contain the
Lender's loan number shown above, (ii) unless otherwise agreed to by the
lender, be payable by means of cashier's check, Western Union (code city:
Bluff, NE) money order, or certified check and (iii) sent to AURORA LOAN
SERVICES Attn: Cashiering Department, PO Box 5180, Denver CO 80217-5180.


AURORA LOAN SERVICES LLC.

# AURORA LOAN SERVICES

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

9. <u>Credit Reporting.</u> The pre-Agreement status of your loan will
be reported monthly to all respective credit reporting agencies for the
duration of this Agreement and thereafter. Accordingly, Lender will
report your loan as delinquent if your loan is not completely current
under the loan documents, even if you make timely payments to Lender
under this Agreement. However, Lender will disclose that you are in a
repayment plan. This Agreement does not constitute an agreement
by Lender to waive any reporting of the delinquency status of your loan
payments. Lender specifically reserves any rights it may have relating
to your loan, including any rights it may have under your Note and
Security Instrument.

10. <u>Property Taxes, Other Amounts You Agreed to Pay in Your Loan
Documents, and Insurance.</u> If Lender does not maintain an escrow account
with respect to your loan, it is your responsibility to pay all property
taxes, other amounts you agreed to pay, and premiums for insurance by their
due date, as required in your loan documents. If Lender does maintain an
escrow account with respect to your loan, you agree to forward to Lender,
as part of your payments under paragraph 3b, the amounts required to
permit the escrow account to contain a sufficient balance so that payments
for property taxes and insurance may be made on time. The failure to pay
property taxes, other amounts, or insurance before their due date, or if
there is an escrow account, to forward to Lender funds so that such
payments may be made from your escrow account, shall constitute an event
of default hereunder.

11. <u>Entire Agreement.</u> This Agreement sets forth all of the
promises, covenants, agreements, conditions and understandings between
the parties hereto with respect to the subject matter hereof. This
Agreement supersedes all prior understandings, inducements or conditions,
express or implied, oral or written, with respect thereto except as
contained or referred to herein. This Agreement may not be amended,
waived, discharged or terminated orally but only by an instrument in
writing.

12. <u>Reinstatement.</u> In the event Borrower(s) cure the arrears by
making all the payments required under this Agreement, and are current
with the payments then due, and no event of default exists under the
loan documents and this Agreement, Lender shall reinstate the Note and
Security Instrument according to their original terms and conditions.
Due to adjustments which periodically occur to tax and insurance
payments, and in interest rates on adjustable rate mortgages over the
course of a plan, it is likely that some adjustment to the regular
payments may occur which could impact the reinstatement of this account.
The Borrower(s) acknowledge that this may occur and that an adjustment
may be necessary to the plan or to their payment amount upon completion
of the plan. In the absence of such adjustment, the loan will not be
completely reinstated by the plan.

Loan No. ████ 6453
Page 4 of 5



AURORA LOAN SERVICES LLC.

# AURORA LOAN SERVICES

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

13.   **Time is of the Essence.**  The Borrower(s) agree and understand that TIME IS OF THE ESSENCE as to all of the Borrower(s) obligations under this Agreement.  There is no grace period as to any of such obligations.

14.   **Assignment by Borrower(s) Prohibited**.  This Agreement shall be non-transferable by the Borrower(s).

15.   **Bankruptcy Discharge.**  Lender recognizes that if you have received a discharge in Bankruptcy, and you were a borrower on the loan that is the subject of this Agreement at the time of the filing of such bankruptcy, this discharge relieves you of all personal liability on the loan and Lender may not attempt to collect this debt from you personally. This Agreement in no way attempts to revive a discharged debt or impose personal liability against you on any such discharged debt; provided, however, in the event of a default, Lender retains the right to enforce its lien against the property, which includes foreclosure.

16.   **Fair Debt Collection Practices Act Notice.** Subject to paragraph 15 above, you are advised that this communication is from a debt collector, is an attempt to collect a debt and any information obtained will be used for that purpose.

If you have any questions regarding this matter, feel free to contact one of our Loan Counselors at the address above or by calling 800-550-0509.

    IN WITNESS HEREOF the parties hereto have caused this Agreement to be duly executed as of the date signed.

Dated:  5 / 8 / 08 _____        _____
                                 Tia Danielle Smith

Dated:  _____        _____

                                   Aurora Loan Services

Dated: April 30, 2008              By: Christine Castillo
                                   Title: Loan Counselor

SPACE BELOW THIS LINE IS FOR AURORA LOAN SERVICES USE ONLY

Approving Officer: _____        Date: _____

Loan No. ████ 5453
Page 5 of 5
CL082


AURORA LOAN SERVICES LLC.

# EXHIBIT P

# AURORA LOAN SERVICES

2617 COLLEGE PARK · P.O. BOX 1706 · SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 · FAX: 303-728-7648

## REPAYMENT AGREEMENT

3640021796453534CL08006-17-08

Tia Danielle Smith
4011 Hubert Ave
Los Angeles          CA  90008-

RE:  Loan No. ████6453

This Agreement made June 17, 2008 by and between AURORA LOAN SERVICES
("Lender") and Tia Danielle Smith (Borrower).

### RECITALS

WHEREAS, Lender is the holder and/or servicer of a certain Note made
by Borrower(s) on November 13, 2006 in the original principal amount of
$ 556,000 secured by a Security Instrument of even date therewith on
the property located at 4011 Hubert Ave, Los Angeles CA 90008.

WHEREAS, Borrower(s) are in default in the payment of monthly
installments of principal, interest, escrow and other payments due under
the Note and Security Instrument, and have incurred additional expenses
due under said Note and Security Instrument, for a total sum of arrears
now due of $      7,624.04 , consisting of the amounts set forth below:

1. Unpaid monthly payment(s) from 03-01-08 through 06-17-08
                                              $      8,251.12
2. Accrued Late Charges                       $        398.14
3. NSF Charges                                $          .00
4. Corporate Advances/Other Fees*             $         12.00
5. Credit (suspense balance/partial payment)  $      1,037.22
Total Amount Due (the "Arrearage"):           $      7,624.04

 * Corporate Advances include but are not limited to property inspection
fees, property preservation fees, legal fees, appraisal fees, BPO fees,
title report fees, recording fees, and subordination fees.  Other fees
may include short payment advances and speed ACH fees.

WHEREAS, as a result of Borrower(s)' default, Lender has the right
to require Borrower(s) to make immediate payment in full of all monies
remaining unpaid under the Note and Security Instrument.

WHEREAS, Borrower(s) have requested and Lender has agreed to allow
Borrower(s) to repay the Arrearage pursuant to a repayment plan on the
terms set forth herein.



AURORA LOAN SERVICES LLC.

# AURORA LOAN SERVICES

2617 COLLEGE PARK · P.O. BOX 1706 · SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 · FAX: 303-728-7648

## AGREEMENT

NOW, THEREFORE, in consideration of the above Recitals and the promises and mutual covenants herein contained, the parties hereto agree as follows:

1. **Term.** Unless Lender otherwise agrees in writing, the term of this Agreement shall be deemed to expire on the date the last payment is due from the Borrower(s) under paragraph 3 below.

2. **Borrower(s) Admissions.** Borrower(s) admit the Arrearage and represent that there are no defenses, offsets or counter-claims of any nature whatsoever to such amounts owing.

3. **Borrower(s) Payment of Arrears.** Borrower(s) shall repay the arrearage as follows:

   a. By executing and returning this Agreement along with the initial installment by the due date and by paying to the Lender monthly plan payments as set forth below. Plan payments are to be paid on or before the installment due date.

| PLAN | DATE | AMT | PLAN | DATE | AMT |
|---|---|---|---|---|---|
| 01 | 07/01/08 | 2,062.78 | 02 | 08/01/08 | 2,088.32 |
| 03 | 09/01/08 | 2,088.32 | 04 | 10/01/08 | 9,635.74 |

   b. Subject to paragraph 12, upon complying with all of the terms of this Agreement, Borrower(s)' Arrearage will be brought current. Borrower(s) will therafter receive a monthly billing statement reflecting the current status of the loan and Borrower(s)' regular monthly payment amount. Borrower(s) agree to then resume making the regular monthly payments required under the Note.

4. **Default.** If Borrower(s) fail to make any of the payments specified in paragraph 3 above on the due dates and in the amount stated, or otherwise fail to comply with each and all of the terms and conditions herein, Lender, at its sole option, may terminate this Agreement without further notice to Borrower(s) and, except as otherwise provided herein, this Agreement shall be of no further force and effect. In such case, all amounts that are owing under the Note and Security Instrument and this Agreement shall become immediately due and payable.

Loan No. ████6453
Page 2 of 5



AURORA LOAN SERVICES LLC.

# AURORA LOAN SERVICES

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

5. <u>No Waiver.</u> Nothing contained herein shall constitute a waiver of any or all of the Lender's rights or remedies including the right to commence/continue collection proceedings, including but not limited to a foreclosure action. Failure by Lender to exercise any right or remedy under this Agreement or as otherwise provided by applicable law shall not be deemed to be a waiver thereof. For example, if Lender decides to accept a partial or untimely payment from Borrower(s) instead of returning such payment or terminating this Agreement as provided herein, Lender shall not be precluded from rejecting a subsequent partial or untimely payment, terminating this Agreement, or taking any other action permitted by applicable law.

6. <u>Status of Default.</u> The Borrower(s) acknowledge:
a. that if Lender previously notified the Borrower(s) that the Note and Security Instrument is (or will be) accelerated and/or due in full, such loan documents remain accelerated and/or due in full, although Borrower(s) may be entitled by law to cure such default by bringing the loan current rather than paying it off. Lender's acceptance of any payments from Borrower(s) which, individually, are less than the total amount due to cure the default described herein shall in no way prevent Lender from continuing with collection action, or require Lender to re-notify Borrower(s) of such default, re-accelerate the loan, reissue any notice recommence any process prior to Lender proceeding with collection action; and,
b. that if, before all Arrearages are paid in full, Borrower(s) or any other party with an interest in the property become subject to a proceeding in bankruptcy, or if the loan otherwise is subject to protection under bankruptcy laws, Borrower(s) hereby understand and agree that all or parts of this Agreement may become invalid and/or that, unless expressly prohibited by law, Lender, at its option, may terminate this Agreement.

7. <u>No Modification.</u> Except as otherwise temporarily provided in this Agreement, the Note and Security Instrument, and any amendments thereto, are ratified and confirmed and shall remain in full force and effect.

8. <u>Methods of Making Payments.</u> The payments Borrower(s) send to Lender pursuant to this Agreement shall be applied, at Lender's sole first to the oldest payments due. Any amounts received by Lender which are less than the full payment then due and owing under this Agreement shall be, at Lender's sole option, (1) returned to Borrower(s), or (2) held by Lender in partial payment balance until a sufficient sum is received by Lender to apply a full payment. If this Agreement is canceled and/or terminated for any reason, any remaining funds in this partial payment balance shall be credited towards Borrower(s)' remaining obligation owing in connection with the loan and shall not be refunded. All payments made to Lender under this Agreement shall (i) contain the Lender's loan number shown above, (ii) unless otherwise agreed to by the lender, be payable by means of cashier's check, Western Union (code city: Bluff, NE) money order, or certified check and (iii) sent to AURORA LOAN SERVICES Attn: Cashiering Department, PO Box 5180, Denver CO 80217-5180.


AURORA LOAN SERVICES LLC.

Loan No. ____5453
Page 3 of 5

# AURORA LOAN SERVICES

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

9.  **Credit Reporting.**  The pre-Agreement status of your loan will be reported monthly to all respective credit reporting agencies for the duration of this Agreement and thereafter.  Accordingly, Lender will report your loan as delinquent if your loan is not completely current under the loan documents, even if you make timely payments to Lender under this Agreement.  However, Lender will disclose that you are in a repayment plan.  This Agreement does not constitute an agreement by Lender to waive any reporting of the delinquency status of your loan payments. Lender specifically reserves any rights it may have relating to your loan, including any rights it may have under your Note and Security Instrument.

10.  **Property Taxes, Other Amounts You Agreed to Pay in Your Loan Documents, and Insurance.** If Lender does not maintain an escrow account with respect to your loan, it is your responsibility to pay all property taxes, other amounts you agreed to pay, and premiums for insurance by their due date, as required in your loan documents.  If Lender does maintain an escrow account with respect to your loan, you agree to forward to Lender, as part of your payments under paragraph 3b, the amounts required to permit the escrow account to contain a sufficient balance so that payments for property taxes and insurance may be made on time.  The failure to pay property taxes, other amounts, or insurance before their due date, or if there is an escrow account, to forward to Lender funds so that such payments may be made from your escrow account, shall constitute an event of default hereunder.

11.  **Entire Agreement.**  This Agreement sets forth all of the promises, covenants, agreements, conditions and understandings between the parties hereto with respect to the subject matter hereof.  This Agreement supersedes all prior understandings, inducements or conditions, express or implied, oral or written, with respect thereto except as contained or referred to herein.  This Agreement may not be amended, waived, discharged or terminated orally but only by an instrument in writing.

12.  **Reinstatement.**  In the event Borrower(s) cure the arrears by making all the payments required under this Agreement, and are current with the payments then due, and no event of default exists under the loan documents and this Agreement, Lender shall reinstate the Note and Security Instrument according to their original terms and conditions. Due to adjustments which periodically occur to tax and insurance payments, and in interest rates on adjustable rate mortgages over the course of a plan, it is likely that some adjustment to the regular payments may occur which could impact the reinstatement of this account. The Borrower(s) acknowledge that this may occur and that an adjustment may be necessary to the plan or to their payment amount upon completion of the plan.  In the absence of such adjustment, the loan will not be completely reinstated by the plan.

Loan No. ████6453.
Page 4 of 5



AURORA LOAN SERVICES LLC.

# AURORA LOAN SERVICES

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

13.  **Time is of the Essence.**  The Borrower(s) agree and understand that TIME IS OF THE ESSENCE as to all of the Borrower(s) obligations under this Agreement.  There is no grace period as to any of such obligations.

14.  **Assignment by Borrower(s) Prohibited**.  This Agreement shall be non-transferable by the Borrower(s).

15.  **Bankruptcy Discharge.**  Lender recognizes that if you have received a discharge in Bankruptcy, and you were a borrower on the loan that is the subject of this Agreement at the time of the filing of such bankruptcy, this discharge relieves you of all personal liability on the loan and Lender may not attempt to collect this debt from you personally. This Agreement in no way attempts to revive a discharged debt or impose personal liability against you on any such discharged debt; provided, however, in the event of a default, Lender retains the right to enforce its lien against the property, which includes foreclosure.

16.  **Fair Debt Collection Practices Act Notice.**  Subject to paragraph 15 above, you are advised that this communication is from a debt collector, is an attempt to collect a debt and any information obtained will be used for that purpose.

If you have any questions regarding this matter, feel free to contact one of our Loan Counselors at the address above or by calling 800-550-0509.

IN WITNESS HEREOF the parties hereto have caused this Agreement to be duly executed as of the date signed.

Dated: ___6/21/08_____        _____
                                Tia Danielle Smith

Dated: _____        _____

                                Aurora Loan Services

Dated: June 17, 2008        By: _____
                            Title: _____

SPACE BELOW THIS LINE IS FOR AURORA LOAN SERVICES USE ONLY

Approving Officer: _____        Date: _____

                                        Loan No.  ████6453
                                        Page 5 of 5
                                        CL082

AURORA LOAN SERVICES LLC.

# EXHIBIT Q

# AURORA LOAN SERVICES

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

### WORKOUT AGREEMENT

### BY AND BETWEEN AURORA LOAN SERVICES

### AND

### Tia Danielle Smith

Property Address: 4011 Hubert Ave
Los Angeles CA 90008

Loan No. ███5453

This Workout Agreement is made August 25, 2008, by and between AURORA LOAN SERVICES ("Lender") located at 2617 College Park, Scottsbluff, NE  69361, and Tia Danielle Smith ("Customer").

WHEREAS, Lender is the servicing agent and/or the owner and holder of a certain Note dated 11-13-06, executed and delivered by Customer, in the original principal amount of $ 556,000 (the "Note"). The Note is secured by a mortgage, deed of trust or comparable security instrument dated 11-13-06, (the "Security Instrument"), on the property located at the address specified above (the "Property").  The Note and Security Instrument are collectively referred to as the "Loan Documents".

WHEREAS, Customer is in default under the Loan Documents, has failed to make payment of monthly installments of principal, interest, and escrow, if any, and has incurred additional expenses authorized under the Loan Documents, resulting in a total arrearage now due of $ 9,776.82, as more particularly set forth below:

| | | |
|---|---|---|
| Unpaid monthly payment(s) of PITI* from 04-01-08 through and including 08-25-08 | $ | 10,313.90 |
| Accrued Late Charges | | 398.14 |
| NSF Charges | | .00 |
| Legal Fees | | .00 |
| Corporate Advances** | | 102.00 |
| Other Fees*** | | .00 |
| Minus Credit (suspense balance/partial payment) | | 1,037.22 |
| Total Amount Due (the "Arrearage") | $ | 9,776.82 |

  * "PITI" means the monthly payment of principal, interest, and escrows, required, for taxes and insurance premium installments.
 ** "Corporate Advances" include, but are not limited to, property inspection fees, property preservation fees, legal fees, foreclosure fees and costs, appraisal fees, BPO (i.e. broker price opinion) fees, title report fees, recording fees, and subordination fees.
*** "Other Fees" include, but are not limited to, short payment advances and Speed ACH fees.



AURORA LOAN SERVICES LLC.

# AURORA LOAN SERVICES

2617 COLLEGE PARK · P.O. BOX 1706 · SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 · FAX: 303-728-7648

Loan No. ███████6453                                    Page 2 of 5

WHEREAS, as a result of Customer's default, Lender (i) has the
right to accelerate, and to require Customer to make immediate payment in
full, all of the sums owed under the Note and secured by the Security
Instrument, (ii) has so accelerated and declared due in full all such
sums, and (iii) may have already commenced foreclosure proceedings to
sell the Property.

WHEREAS, as of the date of execution of the Agreement,
Lender has not commenced Foreclosure proceedings to sell the property
by legal filing in the county and state where the Property is located
A Foreclosure sale has not been scheduled.

WHEREAS, customer has requested Lender's forbearance in
exercising its rights and remedies under the default provisions of the
Loan Documents and with regard to any foreclosure action that may now
be pending.

WHEREAS, Customer has requested and Lender has agreed to allow
Customer to repay the Arrearage pursuant to a loan work-out arrangement
on the terms set forth herein.

NOW, THEREFORE, in consideration of the promises and mutual
covenants herein contained, the parties hereto agree as follows:

1. **Term.** This Agreement shall expire on the "Expiration Date,"
as defined in Attachment A:

2. **Lenders Forbearance.** Lender shall forbear from exercising any
or all of its rights and remedies now existing or arising during the
term of this Agreement under the Loan Documents, provided there is no
"Default", as such term is defined in paragraph 5.

3. **Customer's Admissions.** Customer admits that the Arrearage
is correct and is currently owing under the Loan Documents, and
represents, agrees and acknowledges that there are no defenses, offsets,
or counterclaims of any nature whatsoever to any of the Loan Documents
or any of the debt evidenced or secured thereby.

Customer admits and agrees that any and all postponements of a
foreclosure sale, made during the term of this Agreement or in
anticipation of this Agreement, are done by mutual consent of the
Customer and Lender and that, to the extent allowed by applicable law,
any such foreclosure sale may be postponed from time to time until the
loan evidenced by the Note is fully reinstated or the foreclosure sale is
consummated. Lender shall be under no obligation to dismiss a pending
foreclosure proceeding until such time as all terms and conditions of
this Agreement and Attachment A have been fully performed.

4. **Terms of Workout.** See Attachment A, which is made a part
hereof.


AURORA LOAN SERVICES LLC.

# AURORA LOAN SERVICES

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

Loan No. ███████5453                                    Page 3 of 5

5. <u>Default</u>. If Customer fails to make any of the payments specified in Attachment A on the due dates and in the amount stated, or otherwise fails to comply with any of the terms and conditions herein or therein (any such even hereby defined as a "Default"), Lender, at its sole option, may terminate this Agreement without further notice to Customer. In such case, all amounts that are then owing under the Note, the Security Instrument, and this Agreement shall become immediately due and payable, and Lender shall be permitted to exercise any and all rights and remedies provided for in the Loan Documents, including, but not limited to, immediate commencement of a foreclosure action or resumption of a pending foreclosure action without further notice to Customer.

6. <u>No Waiver</u>. Nothing contained herein shall constitute a waiver of any of all of the Lender's rights or remedies, including the right to commence or resume foreclosure proceedings. Failure by Lender to exercise any right or remedy under this Agreement or as otherwise provided by applicable law shall not be deemed to be a waiver thereof.[1]

7. <u>Status of Default and Foreclosure</u>. Customer acknowledges that if the Lender previously notified the Customer that the account was in default, that the Note and Security Instrument are accelerated and the debt evidenced by the Note is due in full, the account remains in default, such Loan Documents remain accelerated, and such debt due in full, although Customer may be entitled by law to cure such default by bringing the loan evidenced by Note current rather than paying it in full. Lender's acceptance of any payments from Customer which, individually, are less than the total amount due to cure the default described herein shall in no way prevent Lender from continuing with collection action, or require Lender to re-notify Customer of such default, re-accelerate the loan, re-issue any notice, or resume any process prior to Lender proceeding with collection action if Customer Defaults. Customer agrees that a foreclosure action if commenced by the Lender against Customer will not be withdrawn unless Lender determines to do so by applicable law. In the event Customer Defaults, the foreclosure will commence, or resume from the point at which it was placed on hold, without further notice.

8. <u>Limited Modification</u>. Except as otherwise provided in this Agreement, the Note and Security Instrument, and any amendments thereto, are ratified and confirmed and shall remain in full force and effect.

---

1 A typical example of this would be if Lender decides to accept a partial or untimely payment from Customer instead of returning such payment or terminating this Agreement as provided herein, Lender shall not be precluded from rejecting a subsequent partial or untimely payment, terminating this Agreement, or taking any other action permitted by applicable law.


AURORA LOAN SERVICES LLC.

# AURORA LOAN SERVICES

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

Loan No. █████5453                                    Page 4 of 5

9.  <u>Application of Payments</u>.  The payments received by Lender from
Customer pursuant to this Agreement shall be applied, at Lender's sole
option, first to the earliest monthly payment under the Note that is due.
Any amounts received by Lender that are less than the full payment under
then due and owing under this Agreement shall be, at Lender's sole
option, (1) returned to Customer, or (2) held by Lender in partial or
suspense payment balance until sufficient sum is received by Lender to
apply a full payment.  If this Agreement is canceled and/or terminated
for any reason, any remaining funds in this partial or suspense payment
balance shall be credited towards Customer's remaining obligation
owing in connection with the loan and shall not be refunded.

10.  <u>Methods of Making Payments</u>.  All payments made to Lender under
this Agreement shall (i) contain the Lender's loan number shown above,
(ii) unless otherwise agreed to by the Lender, be payable in certified
funds by means of cashier's check, Western Union (code city: Bluff, NE)
money order, or certified check, and (iii) be sent to AURORA LOAN SERVICES
as specified in Attachment A.  Any payment made other than strictly
pursuant to the requirements of this paragraph 10 and Attachment A shall
not be considered to have been received by Lender, although Lender may,
in its sole discretion, decide to accept any non-conforming payment.

11.  <u>Credit Reporting</u>.  The payment status of Customer's loan in
existence immediately prior to execution of this Agreement will be
reported monthly to all credit reporting agencies for the duration of
this Agreement and thereafter.  Accordingly, Lender will report the
loan subject to this Agreement as delinquent if the loan is not paid
current under the Loan Documents, even if Customer makes timely payments
to Lender under this Agreement.  However, Lender may disclose that
Customer is in a repayment or work-out plan.  This Agreement does not
constitute an agreement by Lender to waive any reporting of the
delinquency status of loan payments.

12.  <u>Property Taxes, Insurance, and Other Amounts</u>.  If Customer's
loan is not escrowed for taxes and insurance premium payments, it is
Customer's responsibility to pay all property taxes, premiums for
insurance, and all other amounts Customer agreed to pay as required
under the terms of the Loan Documents.  Customer's failure to pay
property taxes, amounts owed on any senior lien security instrument,
other amounts that may attain priority over the Security Instrument,
or insurance premiums, in each case before their due date, shall
constitute a Default hereunder.

13.  <u>The Entire Agreement</u>.  This Agreement sets forth all of the
promises, covenants, agreements, conditions and understandings between
the parties hereto with respect to the subject matter hereof.  This
Agreement supersedes all prior understandings, inducements or conditions,
express or implied, oral or written, with respect thereto except as
contained or referred to herein.  This Agreement may not be amended,
waived, discharged or terminated orally but only by an instrument in
writing.


AURORA LOAN SERVICES LLC

# AURORA LOAN SERVICES

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

Loan No. ████6453                                    Page 5 of 5

14. _Time is of the Essence._  The Customer agrees and understands that TIME IS OF THE ESSENCE as to all of the Customer's obligations under this Agreement.  The grace period for monthly payments under the Loan Documents will not apply to payment under this Agreement.  Therefore, the Lender must receive the payments under this Agreement on or before the Due Dates specified in Attachment A.

15. _Assignment by Customer Prohibited_.  This Agreement shall be non-transferable by Customer.  However, if the legal or beneficial interest or the servicing of this loan is transferred by Lender, this Agreement inures to the benefit of any subsequent servicer or beneficial interest holder of the Note.

16. _Severability_.  To the extent that any word, phrase, clause, or sentence of this Agreement shall be found to be illegal or unenforceable for any reason, such word, phrase, clause, or sentence shall be modified or deleted in such a manner so as to make the Agreement, as modified, legal and enforceable under applicable law, and the balance of the Agreement or parts thereof shall not be affected thereby, the balance being construed as severable and independent; provided that no such severability shall be effective if it materially changes the economic benefit of this Agreement to either party.

17. _Execution in Counterparts_.  This Agreement may be executed and delivered in two or more counterparts, each of which, when so executed and delivered, shall be an original, but such counterparts shall together constitute but one and the same instrument and Agreement. Facsimile signatures shall be deemed as valid as originals.

18. _Customer Contact_.  If Customer has any questions regarding this matter, Customer should contact one of Lender's Loan Counselors at the address above or by calling 800-550-0509.

IN WITNESS HEREOF, the parties hereto have caused this Agreement to be duly executed as of the date signed.

Dated: _____   _____
                                   Tia Danielle Smith Borrower

Dated: _____   _____
Aurora Loan Services
Dated: _____   _____

Aurora Loan Services is a debt collector.  Aurora is attempting to collect a debt and any information obtained will be used for that purpose.  However, if you are in bankruptcy or received a bankruptcy discharge of this debt, this communication is not an attempt to collect the debt against you personally, but is notice of a possible enforcement of the lien against the collateral property.

  AURORA LOAN SERVICES LLC.

# AURORA LOAN SERVICES

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

ATTACHMENT A – REPAYMENT PLAN

a.1   For purposes of repayment of the Arrearage, Customer shall remit
      an initial installment of $3100.00, which will be due on
      or before 09/01/2008.  Consecutive monthly payments each in the
      amount of $2139.99 will be due on or before the 1st
      day of every month (each, a "Due Date"), commencing 100108
      continuing through and including 120108, with the last
      installment in the amount of $10647.96.

      On or before 09/01/2008 (the "Agreement Return Date"),
      Customer shall execute and return the Agreement, including this
      Attachment A, in accordance with the following instructions:

      Overnight Mail:              USPS Mail:
      Aurora Loan Services         Aurora Loan Services
      Attention: Home Retention    Attention: Home Retention
      2617 College Park            P.O. Box 1706
      Scottsbluff, NE 69361        Scottsbluff, NE 69363-1706

      The Agreement will be of no force and effect unless Lender receives
      the executed Agreement, including Attachment A, as well as the first
      Plan payment by the Agreement Return Date.  Customer shall remit
      to Lender the first Plan payment, in the amount specified above,
      made payable to Aurora Loan Services in certified funds by
      means of cashier's check, money order, Western Union (code city:
      Bluff, NE), or certified check.  All Plan payments, including the
      first Plan payment, shall contain the Lender's loan number shown
      in the Agreement and, unless otherwise agreed to by the Lender,
      shall be payable in certified funds as described above and are to be
      sent to Lender's Payment Processing Center in accordance with the
      following instructions:

      Overnight Mail:              USPS Mail:
      Aurora Loan Services         Aurora Loan Services
      Attention: Cashiering        Attention: Cashiering
      10350 Park Meadows Drive     P.O. Box 5180
      Littleton, CO 80124          Denver, CO 80217-5180

a.2   The amount of each Plan payment specified above includes both
      (1) the regularly scheduled monthly payment, plus
      (2) the portion of the Arrearage specified above.
      Plan payments are to be paid on or before the 1st day
      of every month (each, a "Due Date").  Lender must receive each
      Plan payment by the Due Date of each month.  The Agreement
      shall expire on the Due Date of the last Plan payment
      contemplated by section a.1 above (the "Expiration Date").

b.    In the event Customer cures the Arrearage by making all Plan
      payments on or before the Expiration Date, and is current with the
      payments then due, and no default then exists under the Loan
      Documents and the Agreement, Lender shall consider the Note and
      Security Instrument to be current and in effect according to their
      original terms and conditions. Monthly billing statements that
      Customer shall receive thereafter will reflect the current status
      of the loan evidenced by the Note and Customer's regular monthly
      payment amount.  Customer agrees to then resume making the



AURORA LOAN SERVICES LLC.

# AURORA LOAN SERVICES

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

Loan No. ████ 6453

regular monthly payments required under the Note. Due to
adjustments that periodically occur to tax and insurance premium
payments, and, if applicable, in interest rates on adjustable rate
mortgage loans, over the course of an agreement such as this one
it is possible that some adjustment to the regularly scheduled
monthly payments under the Note may occur which could impact
the cure of the Arrearage. Customer acknowledges that this may
occur and that an adjustment may be necessary to the final Plan
payment that will be due at the Expiration Date. In the event such
an adjustment is necessary, the Note and Security Instrument shall
not be considered current until Customer has paid any additional
amounts required to cure the Arrearage as a result of the
adjustment(s).

   IN WITNESS HEREOF, the parties hereto have caused this Attachment A
to be duly executed as of the date signed below.

Dated: _____          _____
                                             Tia Danielle Smith Borrower

Dated: _____          _____

Aurora Loan Services

Dated: _____          _____

AURORA LOAN SERVICES LLC.

# EXHIBIT R

# AURORA LOAN SERVICES

10350 PARK MEADOWS DRIVE • LITTLETON, CO 80124 • PHONE: 800-550-0508 • FAX: 308-635-3145

WORKOUT AGREEMENT

BY AND BETWEEN AURORA LOAN SERVICES

AND

Tia Danielle Smith

Property Address: 4011 Hubert Ave          Loan No. 6453
                  Los Angeles CA 90008

This Workout Agreement is made January 08, 2009, by and between AURORA LOAN
SERVICES ("Lender") located at 2617 College Park, Scottsbluff, NE  69361,
and Tia Danielle Smith ("Customer").

        WHEREAS, Lender is the servicing agent and/or the owner and
holder of a certain Note dated 11-13-06, executed and delivered by
Customer, in the original principal amount of $ 556,000 (the "Note").
The Note is secured by a mortgage, deed of trust or comparable security
instrument dated 11-13-06, (the "Security Instrument"), on the property
located at the address specified above (the "Property").  The Note and
Security Instrument are collectively referred to as the "Loan Documents".

        WHEREAS, Customer is in default under the Loan Documents,
has failed to make payment of monthly installments of principal,
interest, and escrow, if any, and has incurred additional expenses
authorized under the Loan Documents, resulting in a total arrearage
now due of $ 13,024.44, as more particularly set forth below:

| | |
|---|---:|
| Unpaid monthly payment(s) of PITI* from 08-01-08 through and including 01-08-09 | $    12,531.38 |
| Accrued Late Charges | 398.14 |
| NSF Charges | .00 |
| Legal Fees | .00 |
| Corporate Advances** | 241.00 |
| Other Fees*** | .00 |
| Minus Credit (suspense balance/partial payment) | 146.08 |
| Total Amount Due (the "Arrearage") | $    13,024.44 |

---

  * "PITI" means the monthly payment of principal, interest, and escrows,
    required, for taxes and insurance premium installments.
 ** "Corporate Advances" include, but are not limited to, property
    inspection fees, property preservation fees, legal fees, foreclosure
    fees and costs, appraisal fees, BPO (i.e. broker price opinion) fees,
    title report fees, recording fees, and subordination fees.
*** "Other Fees" include, but are not limited to, short payment advances
    and Speed ACH fees.



EQUAL HOUSING
LENDER     AURORA LOAN SERVICES LLC.

10350 PARK MEADOWS DRIVE • LITTLETON, CO 80124 • PHONE: 800-550-0508 • FAX: 308-635-3145

Loan No. ████ 6453                                                    Page 2 of 5

WHEREAS, as a result of Customer's default, Lender (i) has the
right to accelerate, and to require Customer to make immediate payment in
full, all of the sums owed under the Note and secured by the Security
Instrument, (ii) has so accelerated and declared due in full all such
sums, and (iii) may have already commenced foreclosure proceedings to
sell the Property.

WHEREAS, as of the date of execution of the Agreement,
Lender has not commenced Foreclosure proceedings to sell the property
by legal filing in the county and state where the Property is located
A Foreclosure sale has not been scheduled.

WHEREAS, customer has requested Lender's forbearance in
exercising its rights and remedies under the default provisions of the
Loan Documents and with regard to any foreclosure action that may now
be pending.

WHEREAS, Customer has requested and Lender has agreed to allow
Customer to repay the Arrearage pursuant to a loan work-out arrangement
on the terms set forth herein.

NOW, THEREFORE, in consideration of the promises and mutual
covenants herein contained, the parties hereto agree as follows:

1. <u>Term</u>.  This Agreement shall expire on the "Expiration Date,"
as defined in Attachment A.

2. <u>Lenders Forbearance</u>.  Lender shall forbear from exercising any
or all of its rights and remedies now existing or arising during the
term of this Agreement under the Loan Documents, provided there is no
"Default", as such term is defined in paragraph 5.

3. <u>Customer's Admissions</u>.  Customer admits that the Arrearage
is correct and is currently owing under the Loan Documents, and
represents, agrees and acknowledges that there are no defenses, offsets,
or counterclaims of any nature whatsoever to any of the Loan Documents
or any of the debt evidenced or secured thereby.

Customer admits and agrees that any and all postponements of a
foreclosure sale, made during the term of this Agreement or in
anticipation of this Agreement, are done by mutual consent of the
Customer and Lender and that, to the extent allowed by applicable law,
any such foreclosure sale may be postponed from time to time until the
loan evidenced by the Note is fully reinstated or the foreclosure sale is
consummated.  Lender shall be under no obligation to dismiss a pending
foreclosure proceeding until such time as all terms and conditions of
this Agreement and Attachment A have been fully performed.

4. <u>Terms of Workout</u>.  See Attachment A, which is made a part
hereof.



AURORA LOAN SERVICES LLC.

# AURORA LOAN SERVICES

10350 PARK MEADOWS DRIVE • LITTLETON, CO 80124 • PHONE: 800-550-0508 • FAX: 308-635-3145

Loan No. ████5453                                        Page 3 of 5

5. **Default.** If Customer fails to make any of the payments specified in Attachment A on the due dates and in the amount stated, or otherwise fails to comply with any of the terms and conditions herein or therein (any such even hereby defined as a "Default"), Lender, at its sole option, may terminate this Agreement without further notice to Customer. In such case, all amounts that are then owing under the Note, the Security Instrument, and this Agreement shall become immediately due and payable, and Lender shall be permitted to exercise any and all rights and remedies provided for in the Loan Documents, including, but not limited to, immediate commencement of a foreclosure action or resumption of a pending foreclosure action without further notice to Customer.

6. **No Waiver.** Nothing contained herein shall constitute a waiver of any of all of the Lender's rights or remedies, including the right to commence or resume foreclosure proceedings. Failure by Lender to exercise any right or remedy under this Agreement or as otherwise provided by applicable law shall not be deemed to be a waiver thereof.[1]

7. **Status of Default and Foreclosure.** Customer acknowledges that if the Lender previously notified the Customer that the account was in default, that the Note and Security Instrument are accelerated and the debt evidenced by the Note is due in full, the account remains in default, such Loan Documents remain accelerated, and such debt due in full, although Customer may be entitled by law to cure such default by bringing the loan evidenced by Note current rather than paying it in full. Lender's acceptance of any payments from Customer which, individually, are less than the total amount due to cure the default described herein shall in no way prevent Lender from continuing with collection action, or require Lender to re-notify Customer of such default, re-accelerate the loan, re-issue any notice, or resume any process prior to Lender proceeding with collection action if Customer Defaults. Customer agrees that a foreclosure action if commenced by the Lender against Customer will not be withdrawn unless Lender determines to do so by applicable law. In the event Customer Defaults, the foreclosure will commence, or resume from the point at which it was placed on hold, without further notice.

8. **Limited Modification.** Except as otherwise provided in this Agreement, the Note and Security Instrument, and any amendments thereto, are ratified and confirmed and shall remain in full force and effect.

---

[1] A typical example of this would be if Lender decides to accept a partial or untimely payment from Customer instead of returning such payment or terminating this Agreement as provided herein, Lender shall not be precluded from rejecting a subsequent partial or untimely payment, terminating this Agreement, or taking any other action permitted by applicable law.



AURORA LOAN SERVICES LLC.

# AURORA LOAN SERVICES

10350 PARK MEADOWS DRIVE • LITTLETON, CO 80124 • PHONE: 800-550-0508 • FAX: 308-635-3145

Loan No. ████5453                                          Page 4 of 5

9.   **Application of Payments.**  The payments received by Lender from Customer pursuant to this Agreement shall be applied, at Lender's sole option, first to the earliest monthly payment under the Note that is due. Any amounts received by Lender that are less than the full payment under then due and owing under this Agreement shall be, at Lender's sole option, (1) returned to Customer, or (2) held by Lender in partial or suspense payment balance until sufficient sum is received by Lender to apply a full payment.  If this Agreement is canceled and/or terminated for any reason, any remaining funds in this partial or suspense payment balance shall be credited towards Customer's remaining obligation owing in connection with the loan and shall not be refunded.

10.   **Methods of Making Payments.**  All payments made to Lender under this Agreement shall (i) contain the Lender's loan number shown above, (ii) unless otherwise agreed to by the Lender, be payable in certified funds by means of cashier's check, Western Union (code city: Bluff,NE) money order, or certified check, and (iii) be sent to AURORA LOAN SERVICES as specified in Attachment A.  Any payment made other than strictly pursuant to the requirements of this paragraph 10 and Attachment A shall not be considered to have been received by Lender, although Lender may, in its sole discretion, decide to accept any non-conforming payment.

11.   **Credit Reporting.**  The payment status of Customer's loan in existence immediately prior to execution of this Agreement will be reported monthly to all credit reporting agencies for the duration of this Agreement and thereafter.  Accordingly, Lender will report the loan subject to this Agreement as delinquent if the loan is not paid current under the Loan Documents, even if Customer makes timely payments to Lender under this Agreement.  However, Lender may disclose that Customer is in a repayment or work-out plan.  This Agreement does not constitute an agreement by Lender to waive any reporting of the delinquency status of loan payments.

12.   **Property Taxes, Insurance, and Other Amounts.**  If Customer's loan is not escrowed for taxes and insurance premium payments, it is Customer's responsibility to pay all property taxes, premiums for insurance, and all other amounts Customer agreed to pay as required under the terms of the Loan Documents.  Customer's failure to pay property taxes, amounts owed on any senior lien security instrument, other amounts that may attain priority over the Security Instrument, or insurance premiums, in each case before their due date, shall constitute a Default hereunder.

13.   **The Entire Agreement.**  This Agreement sets forth all of the promises, covenants, agreements, conditions and understandings between the parties hereto with respect to the subject matter hereof.  This Agreement supersedes all prior understandings, inducements or conditions, express or implied, oral or written, with respect thereto except as contained or referred to herein.  This Agreement may not be amended, waived, discharged or terminated orally but only by an instrument in writing.



AURORA LOAN SERVICES LLC.

# AURORA LOAN SERVICES

10350 PARK MEADOWS DRIVE • LITTLETON, CO 80124 • PHONE: 800-550-0508 • FAX: 308-635-3145

Loan No. ████ 6453                                                        Page 5 of 5

14.  <u>Time is of the Essence.</u>  The Customer agrees and understands that TIME IS OF THE ESSENCE as to all of the Customer's obligations under this Agreement.  The grace period for monthly payments under the Loan Documents will not apply to payment under this Agreement.  Therefore, the Lender must receive the payments under this Agreement on or before the Due Dates specified in Attachment A.

15.  <u>Assignment by Customer Prohibited</u>.  This Agreement shall be non-transferable by Customer.  However, if the legal or beneficial interest or the servicing of this loan is transferred by Lender, this Agreement inures to the benefit of any subsequent servicer or beneficial interest holder of the Note.

16.  <u>Severability</u>.  To the extent that any word, phrase, clause, or sentence of this Agreement shall be found to be illegal or unenforceable for any reason, such word, phrase, clause, or sentence shall be modified or deleted in such a manner so as to make the Agreement, as modified, legal and enforceable under applicable law, and the balance of the Agreement or parts thereof shall not be affected thereby, the balance being construed as severable and independent; provided that no such severability shall be effective if it materially changes the economic benefit of this Agreement to either party.

17.  <u>Execution in Counterparts</u>.  This Agreement may be executed and delivered in two or more counterparts, each of which, when so executed and delivered, shall be an original, but such counterparts shall together constitute but one and the same instrument and Agreement.  Facsimile signatures shall be deemed as valid as originals.

18.  <u>Customer Contact</u>.  If Customer has any questions regarding this matter, Customer should contact one of Lender's Loan Counselors at the address above or by calling 800-550-0509.

IN WITNESS HEREOF, the parties hereto have caused this Agreement to be duly executed as of the date signed.

Dated: ___1/28/09___              _____
                                  Tia Danielle Smith Borrower

Dated: _____    _____
Aurora Loan Services
Dated: _____    _____

Aurora Loan Services is a debt collector.  Aurora is attempting to collect a debt and any information obtained will be used for that purpose.  However, if you are in bankruptcy or received a bankruptcy discharge of this debt, this communication is not an attempt to collect the debt against you personally, but is notice of a possible enforcement of the lien against the collateral property.



AURORA LOAN SERVICES LLC.

## AURORA LOAN SERVICES

10350 PARK MEADOWS DRIVE • LITTLETON, CO 80124 • PHONE: 800-550-0508 • FAX: 308-635-3145

ATTACHMENT A-STIPULATED PAYMENTS

a.1   For purposes of repayment of the Arrearage, Customer shall remit
four (4) consecutive stipulated monthly payments each in the
amount of $2100.00 (each, a "Plan payment").  On or before
02/01/2009 (the "Agreement Return Date"), Customer shall
execute and return the Agreement, including this Attachment A,
in accordance with the following instructions:

If by overnight mail service to or if by US Postal Services to
Aurora Loan Services                Aurora Loan Services
Attention: Home Retention           Attention: Home Retention
2617 College Park                   P.O. Box 1706
Scottsbluff, NE 69361               Scottsbluff, NE 69363-1706

The Agreement will be of no force and effect unless Lender receives
the executed Agreement, including Attachment A, as well as the first
Plan payment by the Agreement Return Date.  Customer shall remit
to Lender the first Plan payment, in the amount specified above,
made payable to Aurora Loan Services in certified funds by
means of cashier's check, money order, Western Union (code city:
Bluff, NE), or certified check.  All Plan payments, including the
first Plan payment, shall contain the Lender's loan number shown
in the Agreement and, unless otherwise agreed to by the Lender,
shall be payable in certified funds as described above are to be
sent to Lender's Payment Processing Center in accordance with the
following instructions:

If by overnight mail service to or if by US Postal Services to
Aurora Loan Services                Aurora Loan Services
Attention: Cashiering Department    Attention: Cashiering Department
10350 Park Meadows Drive            P.O. Box 5180
Littleton, CO 80124                 Denver, CO 80217-5180

a.2  Plan payments are to be paid on or before the 01 day
of every month (each, a "Due Date").  Lender must receive each
Plan payment by the Due Date of each month.  The Agreement
shall expire on the Due Date of the last Plan payment
contemplated by section a.1 above (the "Expiration Date").
At the time Customer makes the third (3rd) Plan payment under
this Agreement, it shall be the Customer's responsibility to provide
Aurora with accurate and complete financial information in support
of the Customer's request for a loan modification or other workout
option. Customer must also provide Lender with a completed
Borrower's Financial Statement and proof of income (copies of
Customer's two (2) most recent pay stubs) to enable Lender to
properly evaluate Customer's current financial situation and the
Customer's request for a loan modification or other loan workout
option.  Tender of the last Plan payment shall not be deemed
acceptance by Aurora of a workout plan or loan modification.

AURORA LOAN SERVICES LLC.

# AURORA LOAN SERVICES

10350 PARK MEADOWS DRIVE • LITTLETON, CO 80124 • PHONE: 800-550-0508 • FAX: 308-635-3145

Loan No. ████6453

b.    The aggregate Plan payment will be insufficient to pay the
Arrearage. At the Expiration Date, a portion of the Arrearage will
still be outstanding.  Because payment of the Plan payments will not
cure the Arrearage, Customer's account will remain delinquent.
Upon the Expiration Date, Customer must cure the Arrearage
through a full reinstatement, payment in full, loan modification
agreement or other loan workout option that Lender may offer
(individually and collectively, a "Cure Method.")   Customer's
failure to enter into a Cure Method will result in the loan being
disqualified from any future Lender Home Retention Group program
with respect to the loan evidenced by the Note, and regular
collection activity will continue, including, but not limited to,
commencement or resumption of the foreclosure process, as specified
in paragraphs 5 and 7 of the Agreement.


    IN WITNESS HEREOF, the parties hereto have caused this Attachment A
to be duly executed as of the date signed below.

Dated: _1_/_28_/_09_____        _____
                                   Tia Danielle Smith Borrower

Dated: _____        _____

Aurora Loan Services

Dated: _____        By: _____

                                   Title: _____

**EQUAL HOUSING LENDER**    AURORA LOAN SERVICES LLC.

# AURORA LOAN SERVICES

10350 PARK MEADOWS DRIVE • LITTLETON, CO 80124 • PHONE: 800-550-0508 • FAX: 308-635-3145

January 08, 2009

3640021796453534LM02901-08-09

RE:   Loan No. ███████6453
      Borrower(s): Tia Danielle Smith

      Property Address: 4011 Hubert Ave
                      Los Angeles CA 90008

### ITEMIZATION OF FEES, COSTS AND OTHER CHARGES

Dear Customer(s):

This Addendum supplements the Attached Letter.

Below is a detailed itemization of the unpaid fees, costs and other
charges due on the above-referenced loan.

| Description | Unpaid Balance |
|---|---|
| Post Liquidation Transaction | $36.00 |
| Property Value Fee | $205.00 |


AURORA LOAN SERVICES LLC.

# EXHIBIT S

# Aurora ▫ Loan Services

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

## WORKOUT AGREEMENT

### BY AND BETWEEN AURORA LOAN SERVICES LLC

### AND

### Tia Danielle Smith

Property Address: 4011 Hubert Ave           Loan No. 5453
Los Angeles CA 90008

This Workout Agreement is made January 15, 2010, by and between AURORA LOAN
SERVICES LLC ("Lender") located at 2617 College Park, Scottsbluff, NE 69361,
and Tia Danielle Smith ("Customer").

  WHEREAS, Lender is the servicing agent and/or the owner and
holder of a certain Note dated 11-13-06, executed and delivered by
Customer, in the original principal amount of $ 556,000 (the "Note").
The Note is secured by a mortgage, deed of trust or comparable security
instrument dated 11-13-06, (the "Security Instrument"), on the property
located at the address specified above (the "Property"). The Note and
Security Instrument are collectively referred to as the "Loan Documents".

  WHEREAS, Customer is in default under the Loan Documents,
has failed to make payment of monthly installments of principal,
interest, and escrow, if any, and has incurred additional expenses
authorized under the Loan Documents, resulting in a total arrearage
now due of $ 36,439.31, as more particularly set forth below:

Unpaid monthly payment(s) of PITI* from 11-01-08 through and including
01-15-10                                      $      33,119.26
Accrued Late Charges                                    509.01
NSF Charges                                               .00
Legal Fees                                            2,541.78
Corporate Advances**                                   527.00
Other Fees***                                            .00
Minus Credit (suspense balance/partial payment) .       257.74
Total Amount Due (the "Arrearage")            $      36,439.31

  * "PITI" means the monthly payment of principal, interest, and escrows,
    required, for taxes and insurance premium installments.
 ** "Corporate Advances" include, but are not limited to, property
    inspection fees, property preservation fees, legal fees, foreclosure
    fees and costs, appraisal fees, BPO (i.e. broker price opinion) fees,
    title report fees, recording fees, and subordination fees.
*** "Other Fees" include, but are not limited to, short payment advances
    and Speed ACH fees.

  WHEREAS, as a result of Customer's default, Lender (i) has the
right to accelerate, and to require Customer to make immediate payment in
full, all of the sums owed under the Note and secured by the Security


LENDER  AURORA LOAN SERVICES LLC

## Aurora ▪ Loan Services

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

Loan No. ▮▮▮6453                                    Page 2 of 5

Instrument, (ii) has so accelerated and declared due in full all such sums, and (iii) may have already commenced foreclosure proceedings to sell the Property.

WHEREAS, as of the date of execution of the Agreement, Lender has not commenced Foreclosure proceedings to sell the property. by legal filing in the county and state where the Property is located A Foreclosure sale has not yet been scheduled. FALSE

WHEREAS, customer has requested Lender's forbearance in exercising its rights and remedies under the default provisions of the Loan Documents and with regard to any foreclosure action that may now be pending.

WHEREAS, Customer has requested and Lender has agreed to allow Customer to repay the Arrearage pursuant to a loan work-out arrangement on the terms set forth herein.

NOW, THEREFORE, in consideration of the promises and mutual covenants herein contained, the parties hereto agree as follows:

1. **Bankruptcy.** If the Customer was discharged in a Chapter 7 proceeding subsequent to the execution of the Loan Documents, Lender agrees that the Customer will not have personal liability on the debt pursuant to this Agreement.

2. **Term.** This Agreement shall expire on the "Expiration Date," as defined in Attachment A.

3. **Lenders Forbearance.** Lender shall forbear from exercising any or all of its rights and remedies now existing or arising during the term of this Agreement under the Loan Documents, provided there is no "Default", as such term is defined in paragraph 6.

4. **Customer's Admissions.** Customer admits and agrees that any and all postponements of a foreclosure sale, made during the term of this Agreement or in anticipation of this Agreement, are done by mutual consent of the Customer and Lender and that, to the extent allowed by applicable law, any such foreclosure sale may be postponed from time to time until the loan evidenced by the Note is fully reinstated or the foreclosure sale is consummated. Lender shall be under no obligation to dismiss a pending foreclosure proceeding until such time as all terms and conditions of this Agreement and Attachment A have been fully performed.

5. **Terms of Workout.** See Attachment A, which is made a part hereof.



LENDER  AURORA LOAN SERVICES LLC

# ⧄ Aurora ▪ Loan Services

2617 COLLEGE PARK ▪ P.O. BOX 1706 ▪ SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 ▪ FAX: 303-728-7648

Loan No.      6453                                    Page 3 of 5

6.  **Default.**  If Customer fails to make any of the payments specified in Attachment A on the due dates and in the amount stated, or otherwise fails to comply with any of the terms and conditions herein or therein (any such even hereby defined as a "Default"), Lender, at its sole option, may terminate this Agreement without further notice to Customer.  In such case, all amounts that are then owing under the Note, the Security Instrument, and this Agreement shall become immediately due and payable, and Lender shall be permitted to exercise any and all rights and remedies provided for in the Loan Documents, including, but not limited to, immediate commencement of a foreclosure action or resumption of a pending foreclosure action without further notice to Customer.

7.  **No Waiver.**  Nothing contained herein shall constitute a waiver of any of all of the Lender's rights or remedies, including the right to commence or resume foreclosure proceedings.  Failure by Lender to exercise any right or remedy under this Agreement or as otherwise provided by applicable law shall not be deemed to be a waiver thereof.1

8.  **Status of Default and Foreclosure.**  Customer acknowledges that if the Lender previously notified the Customer that the account was in default, that the Note and Security Instrument are accelerated and the debt evidenced by the Note is due in full, the account remains in default, such Loan Documents remain accelerated, and such debt due in full, although Customer may be entitled by law to cure such default by bringing the loan evidenced by Note current rather than paying it in full.  Lender's acceptance of any payments from Customer which, individually, are less than the total amount due to cure the default described herein shall in no way prevent Lender from continuing with collection action, or require Lender to re-notify Customer of such default, re-accelerate the loan, re-issue any notice, or resume any process prior to Lender proceeding with collection action if Customer Defaults.  Customer agrees that a foreclosure action if commenced by the Lender against Customer will not be withdrawn unless Lender determines to do so by applicable law.  In the event Customer Defaults, the foreclosure will commence, or resume from the point at which it was placed on hold, without further notice.

9.  **Limited Modification.**  Except as otherwise provided in this Agreement, the Note and Security Instrument, and any amendments thereto, are ratified and confirmed and shall remain in full force and effect.

---

1 A typical example of this would be if Lender decides to accept a partial or untimely payment from Customer instead of returning such payment or terminating this Agreement as provided herein, Lender shall not be precluded from rejecting a subsequent partial or untimely payment, terminating this Agreement, or taking any other action permitted by applicable law.



LENDER  AURORA LOAN SERVICES LLC

# ▧ Aurora ▪ Loan Services

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

Loan No. ▮▮▮▮6453                                               Page 4 of 5

10. **Application of Payments**. The payments received by Lender from Customer pursuant to this Agreement shall be applied, at Lender's sole option, first to the earliest monthly payment under the Note that is due. Any amounts received by Lender that are less than the full payment under then due and owing under this Agreement shall be, at Lender's sole option, (1) returned to Customer, or (2) held by Lender in partial or suspense payment balance until sufficient sum is received by Lender to apply a full payment. If this Agreement is canceled and/or terminated for any reason, any remaining funds in this partial or suspense payment balance shall be credited towards Customer's remaining obligation owing in connection with the loan and shall not be refunded.

11. **Methods of Making Payments**. All payments made to Lender under this Agreement shall (i) contain the Lender's loan number shown above, (ii) unless otherwise agreed to by the Lender, be payable in certified funds by means of cashier's check, Western Union (code city: Bluff,NE) money order, or certified check, and (iii) be sent to AURORA LOAN SERVICES as specified in Attachment A. Any payment made other than strictly pursuant to the requirements of this paragraph 10 and Attachment A shall not be considered to have been received by Lender, although Lender may, in its sole discretion, decide to accept any non-conforming payment.

12. **Credit Reporting.** The payment status of Customer's loan in existence immediately prior to execution of this Agreement will be reported monthly to all credit reporting agencies for the duration of this Agreement and thereafter. Accordingly, Lender will report the loan subject to this Agreement as delinquent if the loan is not paid current under the Loan Documents, even if Customer makes timely payments to Lender under this Agreement. However, Lender may disclose that Customer is in a repayment or work-out plan. This Agreement does not constitute an agreement by Lender to waive any reporting of the delinquency status of loan payments.

13. **Property Taxes, Insurance, and Other Amounts**. If Customer's loan is not escrowed for taxes and insurance premium payments, it is Customer's responsibility to pay all property taxes, premiums for insurance, and all other amounts Customer agreed to pay as required under the terms of the Loan Documents. Customer's failure to pay property taxes, amounts owed on any senior lien security instrument, other amounts that may attain priority over the Security Instrument, or insurance premiums, in each case before their due date, shall constitute a Default hereunder.

14. **The Entire Agreement**. This Agreement sets forth all of the promises, covenants, agreements, conditions and understandings between the parties hereto with respect to the subject matter hereof. This Agreement supersedes all prior understandings, inducements or conditions, express or implied, oral or written, with respect thereto except as contained or referred to herein. This Agreement may not be amended, waived, discharged or terminated orally but only by an instrument in writing.

▧ 
EQUAL HOUSING
LENDER    AURORA LOAN SERVICES LLC

# Aurora ▪ Loan Services

2617 COLLEGE PARK ▪ P.O. BOX 1706 ▪ SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 ▪ FAX: 303-728-7648

Loan No. ██████5453                                    Page 5 of 5

15.  **Time is of the Essence.**  The Customer agrees and understands that TIME IS OF THE ESSENCE as to all of the Customer's obligations under this Agreement.  The grace period for monthly payments under the Loan Documents will not apply to payment under this Agreement.  Therefore, the Lender must receive the payments under this Agreement on or before the Due Dates specified in Attachment A.

16.  **Assignment by Customer Prohibited.**  This Agreement shall be non-transferable by Customer.  However, if the legal or beneficial interest or the servicing of this loan is transferred by Lender, this Agreement inures to the benefit of any subsequent servicer or beneficial interest holder of the Note.

17.  **Severability.**  To the extent that any word, phrase, clause, or sentence of this Agreement shall be found to be illegal or unenforceable for any reason, such word, phrase, clause, or sentence shall be modified or deleted in such a manner so as to make the Agreement, as modified, legal and enforceable under applicable law, and the balance of the Agreement or parts thereof shall not be affected thereby, the balance being construed as severable and independent; provided that no such severability shall be effective if it materially changes the economic benefit of this Agreement to either party.

18.  **Execution in Counterparts.**  This Agreement may be executed and delivered in two or more counterparts, each of which, when so executed and delivered, shall be an original, but such counterparts shall together constitute but one and the same instrument and Agreement. Facsimile signatures shall be deemed as valid as originals.

19.  **Customer Contact.**  If Customer has any questions regarding this matter, Customer should contact one of Lender's Loan Counselors at the address above or by calling 800-550-0509.

IN WITNESS HEREOF, the parties hereto have caused this Agreement to be duly executed as of the date signed.

Dated: ___1/19/2010___        _____
                                                Tia Danielle Smith Borrower

Dated: _____    _____
Aurora Loan Services
Dated: _____    _____

Aurora Loan Services is a debt collector. Aurora Loan Services is attempting to collect a debt and any information obtained will be used for that purpose. However, if you are in bankruptcy or received a bankruptcy discharge of this debt, this communication is not an attempt to collect the debt against you personally, but is notice of a possible enforcement of the lien against the collateral property.



AURORA LOAN SERVICES LLC

# Aurora ▪ Loan Services

2617 COLLEGE PARK ▪ P.O. BOX 1706 ▪ SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 ▪ FAX: 303-728-7648

### ATTACHMENT A—STIPULATED PAYMENTS

**a.1 For purposes of repayment of the Arrearage, Customer shall pay** a stipulated payment of $1122.00 (the "First Plan payment"), on or before 02/01/2010. Thereafter, Customer shall pay five (5) consecutive stipulated monthly payments each in the amount of $1122.00 on or before the 1st day of every month (each, a "Due Date"), commencing 03/01/2010 and continuing through and including 07/01/2010 (the "Second Plan payment, Third Plan payment, Fourth Plan payment, Fifth Plan payment, and Sixth Plan payment", respectively). On or before 02/01/2010 (the "Agreement Return Date"), Customer shall execute and return the Agreement, including this Attachment A, in accordance with the following instructions:

<u>If by overnight mail service to</u> or <u>if by US Postal Services to</u>
Aurora Loan Services                Aurora Loan Services
Attention: Loss Mitigation          Attention: Loss Mitigation
2617 College Park                   P.O. Box 1706
Scottsbluff, NE 69361               Scottsbluff, NE 69363-1706

The Agreement will be of no force and effect unless Lender receives the executed Agreement, including Attachment A, as well as the First Plan payment by the Agreement Return Date. Customer shall remit to Lender the First Plan payment, in the amount specified above, made payable to Aurora Loan Services in certified funds by means of cashier's check, money order, Western Union (code city: Bluff, NE), or certified check. All Plan payments, including the First Plan payment, shall contain the Lender's loan number shown in the Agreement and, unless otherwise agreed to by the Lender, shall be payable in certified funds as described above are to be sent to Lender's Payment Processing Center in accordance with the following instructions:

<u>If by overnight mail service to</u> or <u>if by US Postal Services to</u>
Aurora Loan Services                Aurora Loan Services
Attention: Cashiering Department    Attention: Cashiering Department
10350 Park Meadows Drive            P.O. Box 5180
Littleton, CO 80124                 Denver, CO 80217-5180

**a.2** Plan payments are to be paid on or before the 1st day of every month (each, a "Due Date"). <u>Lender must receive each Plan payment by the Due Date of each month.</u> The Agreement shall expire on the Due Date of the Sixth Plan payment contemplated by section a.1 above (the "Expiration Date"). After the Customer makes the Second Plan payment under this Agreement, it shall be the Customer's responsibility to provide Aurora Loan Services with accurate and complete financial information in support of the Customer's request for a loan modification or other workout option. Customer must also provide Lender with a completed Borrower's Financial Statement and proof of income (copies of Customer's two (2) most recent pay stubs) to enable Lender to properly evaluate Customer's current financial situation and the Customer's request for a loan modification or other loan workout option.


EQUAL HOUSING
LENDER    AURORA LOAN SERVICES LLC

# Aurora ▫ Loan Services

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7548

Loan No. ████5453

Tender of the Sixth Plan payment shall not be deemed acceptance by
Aurora Loan Services of a workout plan or loan modification.

b.    The aggregate Plan payment will be insufficient to pay the
Arrearage. At the Expiration Date, a portion of the Arrearage will
still be outstanding.    Because payment of the Plan payments will not
cure the Arrearage, Customer's account will remain delinquent.
Upon the Expiration Date, Customer must cure the Arrearage
through a full reinstatement, payment in full, loan modification
agreement or other loan workout option that Lender may offer
(individually and collectively, a "Cure Method.")    Customer's
failure to enter into a Cure Method will result in the loan being
disqualified from any future Lender Loss Mitigation program
with respect to the loan evidenced by the Note, and regular
collection activity will continue, including, but not limited to,
commencement or resumption of the foreclosure process, as specified
in paragraphs 6 and 8 of the Agreement.

IN WITNESS HEREOF, the parties hereto have caused this Attachment A
to be duly executed as of the date signed below.

Dated: ___1/19/2010___                    _____
                                          Tia Danielle Smith Borrower

Dated: _____                _____

Aurora Loan Services

Dated: _____        By: _____

                                  Title: _____


AURORA LOAN SERVICES LLC

# EXHIBIT T

# Kahrl Wutscher LLP



5151 Wisconsin Avenue, NW
Suite 501
Washington, DC 20016
Tel. (888) 339-5282
Fax (866) 581-9302
www.krw-llp.com

**Gabriel Assaad**
*Of Counsel*
Direct Dial (202) 841-0649
GAssaad@kahrlwutscherllp.com

November 9, 2009

**Via First Class Mail**

Tia Danielle Smith
4011 Hubert Avenue
Los Angeles, CA 90008

RE:    **Purported Qualified Written Request**
**Borrower: Tia Danielle Smith**
**Property Address: 4011 Hubert Avenue, Los Angeles, CA 90008**
**Account No.** ████6453

Dear Tia Smith:

We represent Aurora Loan Services LLC ("Aurora") in connection with the above-referenced matter. This is not an attempt to collect a debt. This letter responds to your purported "qualified written request" dated, but not received on, October 6, 2009.

As you know, Aurora has previously provided you with extensive information and disclosures regarding the loan or debt referenced above. Nevertheless, **please read the following disclosures carefully:**

This law firm and its lawyers are not debt collectors, and this is not an attempt to collect any debt. However, any information obtained may be used for the purpose of debt collection.

As of October 27, 2009, the amount of the debt was $635,575.17. A copy of a payoff statement for the debt is included with this letter, and includes important additional information.

Please send any payment to Aurora, at the address indicated on the enclosed payoff statement. If the payoff includes a statement fee, Aurora will waive that fee if you pay the entire remaining amount of the debt in immediate response to this letter.

Because of interest, late charges and other charges that may vary from day to day, the amount due on the day you pay may be greater than the amount shown above. Hence, if you pay the amount shown above, an adjustment may be necessary after Aurora receives your payment; in-

# Kahrl Wutscher LLP

Gabriel Assaad
*Of Counsel*

which event Aurora will inform you before depositing any check for collection.

For simple factual inquiries regarding the servicing of the loan(s) at issue, please contact Aurora's Customer Service Help Desk at:

> Aurora Customer Service
> 2617 College Park
> PO Box 1706
> Scottsbluff, NE  69363-1706
> (800)-550-0508

Unless you dispute the validity of the debt, or any portion thereof, within thirty days after receipt of the notice, the debt will be assumed to be valid.

Aurora has the right to enforce the Note evidencing the debt, and has the right to receive payment of the debt for and on behalf of the owner of the debt.

The name of the current owner of the debt is: Deutsche Bank Trust Company Americas, as trustee, 1761 East St. Andrew Place, Santa Ana, CA 92705.

We include with this letter various documents verifying and evidencing the debt, including but not limited to copies of the note, security instrument, payoff statement, and payment history.

The name and address of the original creditor is: Mortgage Network, Inc., PO Box 85463, San Diego, CA 92186.

Please note that this letter and the related documents are provided for informational purposes only, and in response to your inquiry. If you are making payments on the debt pursuant to a Chapter 13 bankruptcy plan, please also note that the documents may not reflect developments that may recently have occurred in connection with your Chapter 13 bankruptcy. In such a case, please contact us for the most up to date information.

Section 6 of RESPA (12 U.S.C. § 2605) requires that a "qualified written request" must relate to the servicing of the subject loan, and should include a statement of the reasons the borrower believes the account is in error. Many of your questions do not relate to the servicing of this particular loan, and request documents rather than information as allowed by the statute.

Similarly, please note that Aurora is only the servicer of the subject loan, that the questions and allegations relating to the origination of the loan are not within its purview, and

# Kahrl Wutscher LLP

**Gabriel Assaad**
*Of Counsel*

that in any event you should submit a loan modification application in accordance with the instructions provided. In fact, your letter fails to allege that any specific error exists with respect to the servicing of the loan, but instead makes generalized, conclusory allegations primarily regarding the lending industry as a whole.

To the extent that statements in your letter consist of allegations of wrongdoing of any nature by Aurora, all such allegations are denied.

Nevertheless, subject to and without waiving any objections, Aurora responds to your requests as follows:

*1) Request: Settlement Statement HUD-1*

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

*2) Request: All Right to Cancel Forms*

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

*3) Request: ARM Program Disclosure*

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

*4) Request: First Payment Letter*

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

*5) Request: Buy down Agreement*



# Kahrl Wutscher LLP

Gabriel Assaad
*Of Counsel*

Page 4 of 10

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

**6) Request:** *Credit Documents*

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

**7) Request:** *Lock In agreement*

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

**8) Request:** *Mortgage/Deed of Trust*

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

**9) Request:** *Appraisal*

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

**10) Request:** *Loan Application*

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.



# Kahrl Wutscher LLP

**Gabriel Assaad**
*Of Counsel*

Page 5 of 10

*11) Request: All Good Faith Estimates*

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

*12) Request: Commitment Letter*

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

*13) Request: Hazard/Flood Policy*

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

*14) Request: CHARM Booklet*

**Objection:** This request is vague, ambiguous and unintelligible. Aurora is not able to discern what is intended by the term "CHARM Booklet," and therefore is not able to respond to this request without further clarification from you. Aurora states that the documents requested, if they exist, may be proprietary, confidential, and/or otherwise protected from disclosure and dissemination. Aurora also states that the information requested does not relate to any issue(s) raised by you with respect to the servicing of the loan. Further, Aurora states that the information requested may be publicly available and the borrower has no privity of contract with respect to the requested agreement. Subject to and without waiving any objections, and to the extent a response may be necessary, Aurora refers to the information and documents publicly available through the "EDGAR" system on the United States Securities and Exchange Commission's website, http://www.sec.gov/edgar.shtml, and requests that you provide a confidentiality agreement.

*15) Request: Title Commitment*

# Kahrl Wutscher LLP

**Gabriel Assaad**
*Of Counsel*

Page 6 of 10

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

### 16) Request: *Adverse Notice*

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

### 17) Request: *Purchase Agreement*

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

### 18) Request: *Mortgage Broker Agreement*

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

### 19) Request: *Privacy Policy*

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

### 20) Request: *All State Specific Disclosures*

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.



# Kahrl Wutscher LLP

**Gabriel Assaad**
*Of Counsel*

Page 7 of 10

**21) Request: *Closing Instructions***

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

**22) Request: *Section 32 Disclosures***

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

**23) Request: *Note***

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

**24) Request: *All Truth In Lending Disclosure Statements***

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

**25) Request: *HELOC Agreement & Disclosures***

**Objection:** This request is vague, ambiguous and unintelligible. Aurora is not able to discern what is intended by the term "HELOC," and therefore is not able to respond to this request without further clarification from you. Aurora states that the documents requested, if they exist, may be proprietary, confidential, and/or otherwise protected from disclosure and dissemination. Aurora also states that the information requested does not relate to any issue(s) raised by you with respect to the servicing of the loan. Further, Aurora states that the information requested may be publicly available and the borrower has no privity of contract with respect to the requested agreement. Subject to and without waiving any objections, and to the extent a response may be necessary, Aurora refers to the information and documents publicly available through the



# Kahrl Wutscher LLP

**Gabriel Assaad**
*Of Counsel*

Page 8 of 10

"EDGAR" system on the United States Securities and Exchange Commission's website,
http://www.sec.gov/edgar.shtml

**26) Request:** *Private Mortgage Insurance Certificate*

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

**27) Request:** *Asset Verification Documentation*

**Objection:** This request is vague, ambiguous and unintelligible. Aurora is not able to discern what is intended by the term "Asset Verification," and therefore is not able to respond to this request without further clarification from you. Aurora states that the documents requested, if they exist, may be proprietary, confidential, and/or otherwise protected from disclosure and dissemination. Aurora also states that the information requested does not relate to any issue(s) raised by you with respect to the servicing of the loan. All documents within Aurora's possession that may be responsive to this request, if they exist, are enclosed with this letter.

**28) Request:** *Income Verification Documentation*

**Response:** See the response to request 27.

**29) Request:** *Gift Fund letters and verification*

**Objection:** This request is vague, ambiguous and unintelligible. Aurora is not able to discern what is intended by the term "Gift Fund," and therefore is not able to respond to this request without further clarification from you. Aurora states that the documents requested, if they exist, may be proprietary, confidential, and/or otherwise protected from disclosure and dissemination. Aurora also states that the information requested does not relate to any issue(s) raised by you with respect to the servicing of the loan. All documents within Aurora's possession that may be responsive to this request, if they exist, are enclosed with this letter.

**30) Request:** *Itemization of Amount Financed*

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

# Kahrl Wutscher LLP

**Gabriel Assaad**
*Of Counsel*

*31) Request: Special Information Booklet on Closing Costs*

**Objection:** This request is vague, ambiguous and unintelligible. Aurora is not able to discern what is intended by this request and therefore is not able to respond to this request without further clarification from you. Aurora states that the documents requested, if they exist, may be proprietary, confidential, and/or otherwise protected from disclosure and dissemination. Aurora also states that the information requested does not relate to any issue(s) raised by you with respect to the servicing of the loan. Further, Aurora states that the information requested may be publicly available and the borrower has no privity of contract with respect to the requested agreement. Subject to and without waiving any objections, and to the extent a response may be necessary, Aurora refers to the information and documents publicly available through the "EDGAR" system on the United States Securities and Exchange Commission's website, http://www.sec.gov/edgar.shtml

*32) Request: Controlled Business Arrangement Disclosure*

**Objection:** This request is vague, ambiguous and unintelligible. Aurora is not able to discern what is intended by this request and therefore is not able to respond to this request without further clarification from you. Aurora states that the documents requested, if they exist, may be proprietary, confidential, and/or otherwise protected from disclosure and dissemination. Aurora also states that the information requested does not relate to any issue(s) raised by you with respect to the servicing of the loan. All documents within Aurora's possession that may be responsive to this request, if they exist, are enclosed with this letter.

*33) Request: A copy of the loan history including all payments made, all fees incurred, what has been paid out of the escrow account, and how all payments were applied. This information should cover the entire life of the loan.*

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, including the loan history, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

The enclosed documents should answer any questions you may have about your loan. For simple factual inquiries regarding the servicing of the loan(s) at issue, please contact Aurora's Customer Service Help Desk at:

Aurora Customer Service
2617 College Park

# Kahrl Wutscher LLP

**Gabriel Assaad**
*Of Counsel*

Page 10 of 10

Post Office Box 1706
Scottsbluff, Nebraska 69363-1706
Telephone: (800) 550-0508

Origination and the underwriting and closing of the loan transaction should be directed to:

Executive Communications
10350 Park Meadows Drive
Littleton, Colorado 80124
Telephone (866) 420-3167

Otherwise, please contact the undersigned at the address and/or telephone number given above.

If you are interested in requesting a loan modification, please fill out the enclosed Borrower's Financial Statement, and return it to the undersigned. Also, please provide: (1) copies of the borrower's paystubs for the last two months; (2) if the borrower is self-employed, complete copies of the borrower's tax returns for the last two years; (3) copies of the borrower's complete bank statements for the last two months; and (4) a hardship letter, explaining why the borrower fell behind on the borrower's mortgage payments and how the borrower believes s/he will now be able to make those payments.

Thank you for your anticipated cooperation.

Sincerely,

Gabriel Assaad

Enc.

# EXHIBIT U

AFTER RECORDING RETURN TO:

CAL-WESTERN RECONVEYANCE CORPORATION
525 EAST MAIN STREET
P.O. BOX 22004
EL CAJON CA 92022-9004
(619)590-9200

**RECORDED IN POLK COUNTY**
**Valerie Unger, County Clerk**        **2010-007886**



$56.00

0023287720100007886050036        08/16/2010 03:46:04 PM

REC-NDE    Cnt=1  Stn=1  K. WILLIAMS
$15.00 $10.00 $11.00 $15.00 $5.00

## NOTICE OF DEFAULT AND ELECTION TO SELL

Loan No.: XXXXXX7062  T.S. No.: 1289798-09

Reference is made to that certain trust deed made by
MICHAEL SMERDEL AND JAMIE SMERDEL, HUSBAND AND WIFE AS JOINT TENANTS BY THE ENTIRETY
as grantor,
to FIRST AMERICAN TITLE
as trustee,
in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS") AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC.
as beneficiary, dated February 12, 2007, recorded April 09, 2007, in the official records of POLK County, Oregon, in book/reel/volume No. XX at page XX, fee/file/instrument/microfilm/reception No. 2007-005331 (indicate which), covering the following described real property situated in said County and State, to-wit:
LOT 15, MOUNTAIN FIR ESTATES PHASE II, INDEPENDENCE, POLK COUNTY, OREGON.

CAL-WESTERN RECONVEYANCE CORPORATION
as Trustee, hereby certifies that no assignments of the trust deed by the trustee or by the beneficiary and no appointments of a successor-trustee have been made except as recorded in the mortgage records of the county or counties in which the above described real property is situated; further, that no action, suit or proceeding has been instituted to recover the debt, or any part thereof, now remaining secured by the said trust deed, or, if such action or proceeding has been instituted, such action or proceeding has been dismissed except an action to appoint a receiver pursuant to ORS 86.010, or the foreclosure of another trust deed, mortgage, security agreement or other consensual or nonconsensual security interest or lien securing repayment of this debt.

There is a default by the grantor or other person owing an obligation, or by their successor-in-interest, the performance of which is secured by said trust deed with respect to provisions therein which authorize sale in the event of default of such provision; the default for which foreclosure is made is grantor's:

NODOR.DOC                    Rev. 09/15/09                    Page 1 of 3

# NOTICE OF DEFAULT AND ELECTION TO SELL

Loan No.: XXXXXX7062
T.S. No.: 1289798-09

Failure to pay the monthly payment due April 1, 2010 of principal, interest and impounds and subsequent installments due thereafter; plus late charges; together with all subsequent sums advanced by beneficiary pursuant to the terms and conditions of said deed of trust.

Monthly Payment: $624.42  Monthly Late Charge: $21.60
By reason of said default, the beneficiary has declared all obligations secured by said trust deed immediately due and payable said sums being the following, to-wit:
   The principal sum of $133,473.75 together with interest thereon at the rate of the rate of 7.250% per annum, from March 01, 2010 until paid; plus all accrued late charges thereon; and all trustee's fees, foreclosure costs and any sums advanced by the beneficiary pursuant to the terms and conditions of said deed of trust.

   Notice is hereby given that the beneficiary and trustee, by reason of said default, have elected and do hereby elect to foreclose said trust deed by advertisement and sale pursuant to Oregon Revised Statutes Sections 86.705 to 86.795, and to cause to be sold at public auction to the highest bidder for cash funds the interest in the said described property which the grantor had, or had the power to convey, at the time of the execution by him of the trust deed, together with any interest the grantor or his successors in interest acquired after execution of the trust deed to satisfy the obligations secured by said trust deed and the expenses of the sale, including the compensations of the trustee as provided by law, and the reasonable fees of trustee's attorneys.

   Said sale will be held at the hour of 1:00pm, Standard of Time as established by Section 187.110 of Oregon Revised Statutes on December 22, 2010 at the following place:
AT THE MAIN STREET ENTRANCE TO THE POLK COUNTY COURTHOUSE
850 MAIN STREET
in the City of DALLAS County of POLK, State of Oregon, which is the hour, date and place fixed by the trustee for said sale.

   Other than as shown of record neither the said beneficiary nor the said trustee has any actual notice of any person having or claiming to have any lien upon or interest in the real property hereinabove described subsequent to the interest of the trustee in the trust deed, or of any successor in interest to the grantor or of any lessee or other persons in possession of or occupying the property:

   Notice is further given that any person named in Section 86.753 of Oregon Revised Statutes has the right to have the foreclosure proceeding dismissed and the trust deed reinstated by payment to the beneficiary of the entire amount then due (other than such portion of said principal as would not then be due had no default occurred), together with costs, trustee's and attorney's fee by curing any other default complained of in the Notice of Default by tendering the performance required under the obligation or trust deed, at any time prior to five days before the date last set for sale.

NODOR.DOC                    Rev. 09/15/09                    Page 2 of 3

# NOTICE OF DEFAULT AND ELECTION TO SELL

Loan No.: XXXXXX7062
T.S. No.: 1289798-09

    In construing this notice, the masculine gender includes the feminine and the neuter, the singular includes the plural, the word "grantor" includes any successor in interest to the grantor as well as any other persons owing an obligation, the performance of which is secured by said trust deed, the words "trustee" and "beneficiary" include their respective successors in interest, if any.

CAL-WESTERN RECONVEYANCE CORPORATION

By/Signature: _____

Jennifer Victa, V.P.

August 12, 2010

STATE OF CALIFORNIA
COUNTY OF SAN DIEGO

On **8/12/2010** before me, _____ N. Feistel _____
a Notary Public, personally appeared _____ Jennifer Victa, V.P. _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.                          (Seal)

Signature _____
N. Feistel

N. FEISTEL
Commission # 1803793
Notary Public - California
San Diego County
My Comm. Expires Jun 24, 2012

# EXHIBIT V

DISCHARGE OF MORTGAGE Page 2 of 2

AURORA LOAN SERVICES, LLC
On January 6th, 2010

By: _____
THEODORE SCHULTZ, Assistant
Vice-President

STATE OF Nebraska
COUNTY OF Scotts Bluff

ON January 6th, 2010, before me, IRENE GUERRERO, a Notary Public in and for the County of Scotts
Bluff County, State of Nebraska, personally appeared THEODORE SCHULTZ, Assistant Vice-President,
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
IRENE GUERRERO
Notary Expires: 09/14/2013

GENERAL NOTARY - State of Nebraska
IRENE GUERRERO
My Comm. Exp. Sept. 14, 2013

(This area for notarial seal)

*LLS*LL54LST01/06/2010 07:51:05 AM* AL5101AL2B00000000X0000000014722* M&SOUTH* 0053140815 MASTATE_MORT_REL **DSEALS*

Dated: 09/01/1999 Recorded: 09/07/1999 In Book/Reel/Liber: 100 Page/Folio: 12228 as Instrument No.: 4458 in the records of the County Recorder of Pottawattamie State of Iowa

Property Address: 501 N 27TH ST, COUNCIL BLUFF, IA 51501

IN WITNESS WHEREOF, the undersigned, by the officer duly authorized, has duly executed as a free act and deed the foregoing instrument.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
On October 5th, 2009

By:
THEODORE SCHULTZ, Vice-President

STATE OF Nebraska
COUNTY OF Scotts Bluff

ON October 5th, 2009, before me, IRENE GUERRERO, a Notary Public in and for the County of Scotts Bluff County, State of Nebraska, personally appeared THEODORE SCHULTZ, Vice-President, personally

DISCHARGE OF MORTGAGE Page 2 of 2

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR HOUSEHOLD
BANK, F.S.B. IT'S SUCCESSORS AND ASSIGNS
On July 15th, 2009

By: _____
THEODORE SCHULTZ, Vice-President

STATE OF Nebraska
COUNTY OF Scotts Bluff

ON July 15th, 2009, before me, DARLINE DIETZ, a Notary Public in and for the County of Scotts Bluff
County, State of Nebraska, personally appeared THEODORE SCHULTZ, Vice-President, personally
known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the
entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
DARLINE DIETZ
Notary Expires: 03/22/2010

(This area for notarial seal)

DISCHARGE OF MORTGAGE Page 2 of 2

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR
HOMECOMINGS FINANCIAL, LLC (F/K/A HOMECOMINGS FINANCIAL NETWORK, INC ) IT'S
SUCCESSORS AND ASSIGNS
On October 1st, 2009

By: _____
THEODORE SCHULTZ, Vice-President

STATE OF Nebraska
COUNTY OF Scotts Bluff

On October 1st, 2009, before me, ROBERTA A. RUMMEL, a Notary Public in and for Scotts Bluff in the
State of Nebraska, personally appeared THEODORE SCHULTZ, Vice-President, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
ROBERTA A. RUMMEL
Notary Expires: 09/18/2010

GENERAL NOTARY-State of Nebraska
ROBERTA A. RUMMEL
My Comm. Exp. Sept. 18, 2010

(This area for notarial seal)

RECORDED

R Fee 10.00

A Fee

T Tax

Pottawattamie County, IA **2009-006292**
Recorder John Sciortino
Book-Page: 2009-006292
File Time: 05/08/2009 @ 10:19:00 AM
Rec-$10.00 Aud-$0.00 RMA-$1.00 ECA-$1.00
Current Transfer Tax Paid: $0.00

Prepared By:  Carol Self, AURORA LOAN SERVICES 2617 COLLEGE PARK, PO BOX 1706,
SCOTTSBLUFF, NE 69363-1706 308-635-3800

Return By Mail To:
THEODORE SCHULTZ
AURORA LOAN SERVICES LLC.
2617 COLLEGE PARK
P.O. BOX 1706
Scottsbluff, NE 69363-1706               RETURN ENVELOPE

### SATISFACTION OF MORTGAGE

AURORA LOAN SERVICES LLC. #0015742057 "ELLIOTT" Lender ID:N32/0101653461057  Pottawattamie, Iowa
MERS #: 100199800025135321 VRU #: 1-888-679-6377

KNOW ALL MEN BY THESE PRESENTS that MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC. AS NOMINEE FOR HAMILTON MORTGAGE COMPANY IT'S SUCCESSORS AND ASSIGNS
whose address is 3300 SW 34TH AVE, SUITE 101, OCALA, FL  34474 holder of a certain Mortgage,
whose parties, dates and recording information are below, does hereby acknowledge that it has received
full payment and satisfaction of the same, and in consideration thereof, does hereby cancel and discharge
said Mortgage.

Original Grantor:  JOHN E ELLIOTT AND ANN M ELLIOTT HUSBAND AND WIFE
Original Grantee:  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR
HAMILTON MORTGAGE COMPANY, AN ARIZONA CORPORATION IT'S SUCCESSORS AND
ASSIGNS
Dated:  07/18/2003 Recorded:  07/28/2003  in Book/Reel/Liber: 104 Page/Folio: 02047 as Instrument No.:
2052 in the records of the County Recorder of Pottawattamie State of Iowa

Property Address:  3332 8TH AVE, COUNCIL BLUFFS, IA  51501

IN WITNESS WHEREOF, the undersigned, by the officer duly authorized, has duly executed as a free act
and deed the foregoing instrument.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR HAMILTON
MORTGAGE COMPANY IT'S SUCCESSORS AND ASSIGNS
On May 4th, 2009

By:
THEODORE SCHULTZ, Vice-President



"TDM"TODALSH*05/04/2009 09:32:35 AM* ALSH1/ALS/0000000000000000000696* !APOTTA* 50157/2057 SAISTATE_MORT_REL  "CXSALSI"

# EXHIBIT W



**CAL-WESTERN
RECONVEYANCE
CORPORATION**

A Prommis Solutions Company

August 23, 2011

Tia Danielle Smith
4011 Hubert Ave
Los Angeles, CA 90008

Re:    Borrower: Tia Danielle Smith
       T.S. No.: 1241071-14
       Loan No.: ▮▮▮▮5453
       Property Address: 4011 Hubert Ave, Los Angeles, CA 90008

Dear Ms. Smith:

I write to you in response to correspondence received by Cal-Western Reconveyance Corporation ("CWR"), dated July 13, 2011. Your correspondence requests information in order to validate the debt pertaining to the above-referenced loan number ("Loan") and property address ("Property"), which are currently subject to non-judicial foreclosure proceedings. Please note that this letter shall serve as only CWR's response to your correspondence.

As a preliminary matter, CWR is the substituted foreclosure trustee under the Deed of Trust for the Loan. As you should be aware, a trustee under a Deed of Trust is typically not the beneficiary, lender, or loan servicer. Such is the case here. A copy of the recorded Substitution of Trustee is enclosed for your reference. Based on the information provided to CWR by the beneficiary and loan servicer, you are in default on your obligations under the Loan because you failed to make the monthly payment that became due on November 1, 2008, and subsequent installments due thereafter. Consequently, the Loan was referred for non-judicial foreclosure.

Your correspondence includes what you purport to constitute as a Qualified Written Request for validation of the debt under RESPA. Please be aware that the majority of such types of inquiries, specifically demands to produce accounting and loan origination documentation, are applicable only to the lender or servicer of the Loan. As the foreclosure trustee, CWR is not legally obligated under RESPA to respond to such types of inquiries. Moreover, as CWR was not involved in the origination of the Loan, CWR does not have access to the majority of information you are requesting.

525 East Main Street, El Cajon, California 92020 • P.O Box 22004, El Cajon, California 92022-9004
TEL: (619) 590-9200 • FAX: (619) 590-9299



**CAL-WESTERN
RECONVEYANCE
CORPORATION**

*A Prommis Solutions Company*

However, as an accommodation to you and in order to validate the debt, enclosed please find copies of the Adjustable Rate Note ("Note"), Deed of Trust, Corporate Assignment of Deed of Trust ("Assignment"), and MERS Servicer ID screen printout for the Loan. The enclosed documents indicate that the original creditor was American Mortgage Network, Inc. ("American"), with Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for American. The Assignment indicates that the current beneficiary is Aurora Loan Services, LLC ("Aurora"). Aurora is also the current servicer of the Loan and Deutsche Bank National Trust Company Americas as Trustee ("Deutsche Bank") is the investor, pursuant to the information contained in the enclosed MERS Servicer ID screen printout[1]. The Note provides an original address for payments to American of P.O. Box 85302, Attn: Cashier's Dept, San Diego, CA 92186. The Deed of Trust provides an original mailing address for American of P.O. Box 85463, San Diego, CA 92186. The Deed of Trust also provides an original mailing address for MERS of P.O. Box 2026, Flint, MI 48501-2026, with a telephone number of (888) 679-MERS. The Assignment provides a mailing address for Aurora of 2617 College Park, Scottsbluff, NE 69361. The MERS Servicer ID screen printout provides a telephone number for Aurora of (308) 220-2240 and a telephone number for Deutsche Bank of (714) 247-6000. However, please note that these telephone numbers, mailing or payment addresses could have changed since the Loan was originated in November of 2006.

As the foreclosure trustee, CWR has no obligation to provide you with the original Note or verify Note holder identifications under the comprehensive statutory scheme governing non-judicial foreclosures contained in California Civil Code § 2924 et seq. It is the understanding of CWR that Aurora is either currently in possession of the original Note or has information regarding its location, although you will need to confirm this with Aurora.

Finally, with respect to your dispute of the amount owed under the Loan, please be advised that CWR incurs no liability for reliance upon information provided by the beneficiary or its servicer regarding the nature and extent of the default under the Loan. Civil Code §2924(b) specifically recognizes that a foreclosure trustee has no liability for any error in the information provided by the lender regarding the nature and amount of the default. In salient part the statute provides that:

> "In performing the acts required by this article, the trustee shall incur no liability
> for any good faith error resulting from reliance on information provided in good
> faith by the beneficiary regarding the nature and the amount of the default under

---

[1] If you would like to conduct your own search on the MERS webpage for servicer information, please visit www.MERSinc.org, click on "MERS ServicerID" and search by your MIN (MERS Identification Number), which can be found in either the upper left or right quadrant of the first page of your Deed of Trust.



**CAL-WESTERN
RECONVEYANCE
CORPORATION**

A Prommis Solutions Company

the secured obligation, deed of trust or mortgage."

As a result, any dispute regarding the nature and/or amount of the default is a matter that should be addressed directly with Aurora. Further, CWR has no independent ability to confirm the validity of the information provided by Aurora nor does CWR have the independent ability to provide you with or confirm any payment history or accounting for the Loan, as CWR does not have access to this information.

In conclusion, CWR previously forwarded your correspondence to Aurora for its review and/or response. Unless prohibited by applicable state or federal law, all collection and foreclosure activity regarding the Loan will proceed as instructed by Aurora.

If you have any additional questions regarding this matter as it relates to CWR, you can contact me at the number below.

Very truly yours,

Victoria Adams, Esq.
Associate Corporate Counsel
Cal-Western Reconveyance Corporation

Enclosures

# EXHIBIT X

# Forensic Mortgage Violation Assessment Screening



## Post-Close Audit

## Prepared For NACA
## on Behalf of Tia Smith

**4011 Hubert Avenue**
**Los Angeles, CA 90008**

*Confidential*



**Consumer Mortgage Audit Center**

# Forensic Mortgage Violation Assessment Screening

## Table of Contents

COVER PAGE ................................................................ PAGE 1

TABLE OF CONTENTS ................................................ PAGE 2

ABOUT CMAC ............................................................. PAGE 3

HOW TO READ AUDIT ............................................... PAGE 4

DOCUMENTS RECEIVED FOR AUDIT ...................... PAGE 5

LOAN SUMMARY ....................................................... PAGE 6

TILA ANALYSIS .......................................................... PAGE 7

NET PRESENT VALUE CALCULATIONS .................. PAGE 8

AUDITOR COMMENTS .............................................. PAGE 9

CONSUMER PROTECTION LAWS ........................... PAGE 10-11

### DISCLAIMER

*The information contained in this document, including any source links to related information, is not to be construed as legal advice and is offered to the recipient for educational purposes only. CMAC is a forensic mortgage due diligence firm providing research assistance and information to consumer law attorneys. This due diligence analysis is based on the closing documents procured and provided for review. The exceptions listed herein are not to be construed as an exhaustive list of all violations and discrepancies that may arise from this loan. Other violations may often be uncovered through discovery as well. CMAC is not a law firm and does not offer legal advice. For legal advice, please consult with a licensed and competent attorney in your jurisdiction. Remember, the hiring of an attorney is an important decision that should not be based solely on advertisements or solicitations. Any negotiations made between the consumer and that respective law professional are strictly between those two parties.*

### SCOPE OF AUDIT:

*All documents provided for Audit purposes have been treated as if they are the 'Final & Original Executed Documents'. Unsigned documents have been noted as such and are also treated as if they were the 'Final Executed Documents' with signatures. Audits are performed using the original documentation as provided. Borrowers certify that they have provided Auditor with all documents in their possession that they originally received in connection with the consummation of loan to be audited. Missing documents are noted, and their exclusion may limit and/ or affect the Audit results. Auditor makes no representations and/or warranties of any kind and assumes no liability whatsoever for any Audit report findings, including incorrect findings arising from inaccurate data, improper classification of data, or erroneous interpretations of the loan data submitted for review.*

# CMAC

**Consumer Mortgage Audit Center**

# Forensic Mortgage Violation Assessment Screening

## About CMAC

To Whom it May Concern:

The Consumer Mortgage Audit Center, LLC (hereinafter referred to as "CMAC") is a due diligence and consulting company, specializing in the field of mortgage forensic research and analysis. CMAC boasts a highly specialized team of mortgage experts who represent a combined experience of over 100 years in Mortgage Finance. Every aspect of the Mortgage Origination/Securitization Process is represented within our ranks as our analysts are Certified Forensic Consultants (CFC). Our Senior Analysts/Experts have held senior positions in a wide array of areas such as Originations, Underwriting, Capital Markets, Securitization, Servicing, Risk Management, Compliance, Legal, Closings and Quality Control. Our combined experience and expertise provide an expansive knowledge base that serves as a platform for our audit methodologies and practices.

The purpose of this Forensic Mortgage Violation Assessment Screening is to provide the reader with an in depth third party investigation of the loan attributes, sequence of events, business and compliance practices followed throughout the Mortgage loan transaction. This Forensic Mortgage Violation Assessment Screening will identify potential deficiencies, discrepancies, misrepresentations, errors and statutory violations within the particular mortgage loan. CMAC's proprietary Violation Assessment Model (VAM) articulates the specific statute violations revealed during the course of the investigation, their cause, applicable regulation and/or case law and possible remedies available.

CMAC's Forensic Mortgage Violation Assessment Screening provides a comprehensive examination and investigation of the Mortgage's Legal Documents, Disclosures, Underwriting Standards and Business Practices utilized to effectuate the mortgage loan transaction. This Forensic Mortgage Analysis Report will provide and discuss in depth each violation with its respective citation, and applicable relevant case law and decisions. CMAC's role is that of a neutral third party providing an unbiased summary of facts without forming a legal position or opinion, leaving the reader to draw their own conclusions.

Respectfully yours,

**Consumer Mortgage Audit Center, LLC**
**3350 NW 53rd St., Suite 101**
**Fort Lauderdale, FL 33309**
**Phone: 954-590-1246**
**Fax: 954-590-1229**
**Web: www.truthinaudits.com**

The information contained within this document, including any source links to related information, is not to be construed as legal advice and is offered to the recipient for educational purposes only. CMAC is a consumer mortgage due diligence firm. CMAC is not a law firm and does not offer legal advice. For legal advice please consult with a licensed and competent attorney within your jurisdiction.



# Forensic Mortgage Violation Assessment Screening

## How To Read Audit

The Report that follows is an independent third party accounting of the exceptions uncovered as a result of a Forensic Mortgage Analysis performed in connection with the mortgage loan transaction. The mortgage loan transaction is audited utilizing CMAC's proprietary methodology and ethics standards set forth by the American College of Forensic Examiners Institute. This Report is broken up into several areas detailing information on that particular topic. The following is an explanation of how this report is divided into those different topics:

### Documents Received for Audit
*Inventory and details of documents received from or on behalf of the borrower, including whether or not documents were executed. This is the scope of what is being audited.*

### Loan Summary
*Summary of the loan's attributes, terms, loan participants and the borrower's qualification profile.*

### TILA Analysis
*Compares and contrasts the information disclosed to the client versus the actual information that should have been disclosed according to the Note.*

### Net Present Value Calculations
*Foreclosure Risk of Loss Analysis which conservatively projects the gains/or losses to the investor if they should foreclosure on the property. The result of this analysis helps to determine the Net Present Value (NPV) of the loan.*

### Auditor Comments
*Details relevant case law for violations uncovered. Also, offers observations made by the auditor that may or may not be considered violations but may be a material factor in demonstrating improper or irregular business procedures or practices.*

### Summary of Consumer Protection Statues
*Reference guide and links to regulations and statutes covered by report.*



# Forensic Mortgage Violation Assessment Screening

## Checklist of Loan Documents Received for Forensic Audit

| # | Document Title | Status | Required | Signed? | Dated? |
|---|---|---|---|---|---|
| 1 | Mortgage/Deed of Trust | Received | Yes | No | 11/13/2006 |
| 2 | Promissory Note and Addendums/Riders (if any) | Received | Yes | No | 11/13/2006 |
| 3 | Final HUD-1 or HUD-1A Settlement Statement | Missing | Yes | No | |
| 4 | Initial Truth-In Lending Disclosure Statement | Missing | Yes | No | |
| 5 | Final Truth-In Lending Disclosure Statement | Received | Yes | No | 11/13/2006 |
| 6 | Itemization of Amount Financed (if applicable) | Received | Yes | No | 11/13/2006 |
| 7 | Good Faith Estimate | Received | Yes | No | 11/13/2006 |
| 8 | Special Information Booklet on Closing Cost | Missing | Yes | No | |
| 9 | Initial Loan Application (URLA-1003) | Missing | Yes | No | |
| 10 | Final Loan Application (URLA-1003) | Missing | Yes | No | |
| 11 | Homeowner(s) Credit Report | N/A | No | No | |
| 12 | Appraisal Report/Right to Receive Copy | Received | Yes | No | 11/13/2006 |
| 13 | Notices of Right To Cancel (if applicable) | Partial | Yes | No | 11/13/2006 |
| 14 | Section 32 Disclosures (if applicable) | N/A | No | No | |
| 15 | HELOC Disclosure (if applicable) | N/A | No | No | |
| 16 | Mortgage Insurance Certificate (if applicable) | N/A | No | No | |
| 17 | FEMA Flood Insurance Notification (if applicable) | Received | Yes | No | |
| 18 | Hazard Insurance Certificate (if applicable) | Received | Yes | No | 11/13/2006 |
| 19 | ARM Program Disclosure (if applicable) | Received | Yes | No | |
| 20 | CHARM Consumer Handbook on ARM (if applicable) | Missing | Yes | No | |
| 21 | Title Commitment/Policy | Missing | Yes | No | |
| 22 | Initial Escrow Account Disclosure/Waiver | Received | Yes | No | 11/13/2006 |
| 23 | Transfer of Servicing Disclosure (if applicable) | Received | Yes | No | |
| 24 | Controlled/Affiliated Business Arrangement | Missing | Yes | No | |
| 25 | First Payment Letter | Missing | Yes | No | |
| 26 | Adverse Notices (if applicable) | N/A | No | No | |
| 27 | Purchase Agreement with Addendums (if applicable) | N/A | No | No | |
| 28 | Buy Down Agreements (if applicable) | N/A | No | No | |
| 29 | Mortgage Broker Agreements | Missing | Yes | No | |
| 30 | Privacy Policy/Information Sharing Disclosure | Received | Yes | No | 11/13/2006 |
| 31 | All State Required Disclosures | Partial | Yes | No | |
| 32 | Forensic Audit Questionnaire/Borrower's Affidavit | Missing | Yes | No | |
| 33 | ECOA Notice | Received | Yes | No | |
| 34 | Credit Score Disclosure | N/A | No | No | |
| 35 | Fair Lending Disclosure | Missing | Yes | No | |
| 36 | Funding Date | Received | Yes | No | |



# Forensic Mortgage Violation Assessment Screening

## Loan Summary

| | | | |
|---|---|---|---|
| **Borrower:** | Tia Smith | **Date Audited:** | 09/28/2009 |
| **Current Servicer:** | UTD | **Date Closed:** | 11/13/2006 |
| **Note Holder:** | UTD | **Loan#:** | ████9130 |

| | | | |
|---|---|---|---|
| **Property Address:** | 4011 Hubert Avenue | **State:** | CA |
| **City:** | Los Angeles | **Zip:** | 90008 |

| | | | |
|---|---|---|---|
| **Property Type:** | SFR | **Loan Program:** | Hybrid |
| **Occupancy Code:** | OWNER OCCUPIED | **Loan Type:** | CONV./UNINSURED |
| **Mortgage Insurance:** | N/A | **Product Code:** | UTD |
| **Amount of Coverage:** | N/A | **Loan Purpose:** | REFINANCE |
| **Mortgage Ins. Co.:** | N/A | | |

| | | | |
|---|---|---|---|
| **Loan Amt:** | $556,000.00 | **Principal/Int:** | $1,918.87 |
| **2nd Loan Amt:** | $0.00 | **2nd Principal/Int:** | $0.00 |
| **Purchase** | Refinance | **Taxes:** | UTD |
| **Appraised** | UTD | **Flood/Hazard:** | UTD |
| **LTV:** | UTD | **HOA/OTHER:** | UTD |
| **Interest Rate:** | 1.5 (Teaser Start Rate) | **Mortgage Ins:** | N/A |
| **Term:** | 360 | **PITI:** | $1,918.87 |

| | | | |
|---|---|---|---|
| **1st Payment:** | 01/01/2007 | **Index:** | 4.8267 % |
| **Maturity:** | 12/01/2036 | **Margin:** | 3.4000 % |
| **1st Rate** | 01/01/2007 | **Min Rate:** | 3.4000 % |
| **Rate Change** | Monthly | **Max Rate:** | 9.9950 % |
| **Negative Am:** | YES | **Rate Caps:** | N/A |
| **Prepayment** | YES | **Pay Caps:** | 7.5% |

| **Based on 1003(Then)** | | **Actual (Now)** | |
|---|---|---|---|
| **Income:** | UTD   (No 1003 in file | **Income:** | UTD |
| **Expenses:** | UTD | **Expenses:** | UTD |
| **DTI 1st Ratio:** | UTD | **DTI 1st Ratio:** | UTD |
| **DTI 2nd Ratio:** | UTD | **DTI 2nd Ratio:** | UTD |
| **Credit Score:** | UTD | **Credit Score:** | UTD |



# Forensic Mortgage Violation Assessment Screening

## TILA Analysis

| Borrower: | Tia Smith | Date Audited: | 09/28/2009 |
|---|---|---|---|
| Current Servicer: | UTD | Date Closed: | 11/13/2006 |
| Note Holder: | UTD | Loan#: | ███9130 |

### Disclosed Final TILDS

| APR | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|
| 8.2600 % | $1,108,356.30 | $550,580.10 | $1,658,936.40 |

### TILA Analysis Actual TILDS

| APR | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|
| 8.2932 % | $1,112,019.96 | $553,412.10 | $1,665,432.06 |

Number of Payments (Monthly): ........................................................................ 360
Amount of most common payment: ...........................................................................
Amount of any irregular first payment: .....................................................................
Amount of any irregular final payment: .....................................................................

## Based on Independent Assessment & Calculation:

Annual Percentage Rate (APR) Discrepancy:  -0.0332 %
Finance Charge Discrepancy:  ($3,663.66) *** Under-Disclosed*** 1/2 of 1% of total loan

*Violation APR Tolerance for Error on Fixed Rate Loans is .125%;
**Violation APR Tolerance for Error On ARM is .25%;
***Violation Finance Charge Tolerance for Error is $100; Or 1/2 of 1% of total loan
        amount
****Violation Finance Charge Tolerance for Error IF in Foreclosure is $35;



# Forensic Mortgage Violation Assessment Screening

## Foreclosure Risk of Loss Calculations for Net Present Value Test

| Borrower: | Tia Smith | Date Audited: | 09/28/2009 |
|---|---|---|---|
| Current Servicer: | UTD | Date Closed: | 11/13/2006 |
| Note Holder: | UTD | Loan#: | ▆▆9130 |

**Conservative estimate of costs incurred during a foreclosure Including legal, cleanup, recovery etc.**

| | |
|---|---|
| Current Fair Market Value of property: | $441,000.00 |
| Discount off value for quick sale 20%: | $88,200.00 |
| Sales price: | $352,800.00 |
| Unpaid Principal Balance of loan: | $639,581.10 |
| Current Interest rate: | 1.5 (Teaser Start Rate) |
| # of months left on loan (I.O. use 999): | 314 |
| Interest lost per month: | SEE LOSS OF INCOME |
| # of months to foreclose: | 6 |
| Loss of income during foreclosure: | $11,513.22 |
| Cost of Legal Action: | $1,300.00 |
| Clean-up costs: | $1,500.00 |
| Insurance coverage: | SEE LOSS OF INCOME |
| Property taxes not paid: | SEE LOSS OF INCOME |
| Selling costs: (7%) | $24,696.00 |
| Profit/Loss to lender: | ($325,790.32) |
| (Profit if positive, loss if negative): | |

# CMAC

**Consumer Mortgage Audit Center**

# Forensic Mortgage Violation Assessment Screening

## Auditors Comments

**HD01: Failure to Provide HUD-1 Settlement Statement.**
**GENERATED BY:** Lender/ TPO **SEVERITY:** Serious
**CITATION:** RESPA:12 USC § 2603(a) & (b); RESPA: Reg. X, 24 CFR § 3500.8(a) & (b), 3500.10(b)
**CASE LAW:** United States District Court, N.D. Illinois,
Eastern Division.  Rochelle WASHINGTON and Sidney Washington, Plaintiffs, v. AMERIQUEST
MORTGAGE COMPANY, Deutsche Bank National Trust Company, and AMC Mortgage Services, Inc.,
Defendants.  No. 05 C 1007.  July 11, 2006.

**RR03: Missing 2 copies of Right to Cancel for Each Borrower.**
**GENERATED BY:** Closing Age **SEVERITY:** Serious
**CITATION:** TILA: Reg. Z, 12 C.F.R. § 226.23 (b)(1)
**CASE LAW:** 2003 U.S. Dist. LEXIS 514, *  RICKY DAVISON and DEBRA R. DAVISON, Plaintiffs, v. BANK
ONE HOME LOAN SERVICES, and MORTGAGE PLUS, INC., Defendants. MORTGAGE PLUS, INC., Third-
Party Plaintiff, v. KARSTETTER & KLENDA, Third-Party Defendant. UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS 2003 U.S. Dist. LEXIS 514 January 13, 2003, Decided
**\*\*MATERIAL VIOLATION LEADING TO EXTENDED 3 YEAR RIGHT TO CANCEL\*\***

**TL07: Finance Charge Error Greater Than $100 of Total Credit Extended.**
**GENERATED BY:** Lender/TPO **SEVERITY:** Serious
**CITATION:** TILA: Reg. Z, 12 C.F.R. § 226.18 (d)(1)(i)
**CASE LAW:** United States District Court,N.D. Illinois, Eastern Division.  Willie C. MURRY and Wylodean
Murry, Plaintiffs, v. AMERICA'S MORTGAGE BANC, INC., The Loan Arranger, Inc., Clearwater Title Co.,
Paragon Home Lending, LLC, Homecomings Financial Network, Inc., Defendants.  Blondell
GREENLEAF, Plaintiff, v. BWM MORTGAGE, LLC, Sovereign Bank, Mortgage Lenders Network USA,
Inc., Clearwater Title Co., The Loan Arranger, Inc., Michael Robins, and Does 1-5, Defendants.No. 03 C
5811, 03 C 6186.  June 5, 2006.
**\*\*MATERIAL VIOLATION LEADING TO TILA STATUTORY DAMAGES\*\***
**Finance charges were under-disclosed by lender by $3,663.66**

**UD09: Violations of Federal Statutes**
**GENERATED BY:** Lender/TPO **SEVERITY:** Serious
**CITATION:** The FTC has specifically held that violations of Federal Reserve Board Regulation Z and the
Truth in Lending Act are Unfair and Deceptive Practices under the FTC Act.
**CASE LAW:** 2004 WL 5010145 (N.D.Ill.) Only the Westlaw citation is currently available. United States
District Court, N.D. Illinois, Eastern Division. Willie C. MURRY and Wylodean Murry, Plaintiffs, v.
AMERICA'S MORTGAGE BANC, INC.; the Loan Arranger, Inc.; Clearwater Title Company; Paragon
Home Lending, LLC; Homecomings Financial Network, Inc., Michael Robins; and John Does 1-5,
Defendants. No. 03 C 5811. July 6, 2004



# Forensic Mortgage Violation Assessment Screening

## <u>Summary of Consumer Protection Statues</u>

**Truth-In-Lending Act (TILA)** of 1968 is a United States federal law designed to protect consumers in credit transactions by requiring clear disclosure of key terms of the lending arrangement and all costs. The statute is contained in title I of the Consumer Credit Protection Act, as amended (15 U.S.C. § 1601 et seq.). The regulations implementing the statute, which are known as "Regulation Z", are codified at 12 CFR Part 226. Most of the specific requirements imposed by TILA are found in Regulation Z, so a reference to the requirements of TILA usually refers to the requirements contained in Regulation Z as well as the statute itself. Violations of this act may impose civil and or criminal liability. Anyone who willingly or knowingly fails to comply with any requirement of the TILA will be fined not more that $5,000 or imprisoned not more than one year, or both. Civil liability arises when a creditor fails to comply with any requirement of the TILA, other than with the advertising provisions. The creditor may be held liable to the consumer for actual damages and court costs and reasonable attorney fees. The creditor may also be held liable for other damages, including the right of rescission, arising out of individual or class action if certain requirements of the TILA are violated.

**Home Ownership and Equity Protection Act (HOEPA) of 1994** This law addresses certain deceptive and unfair practices in home equity lending. It amends the Truth in Lending Act (TILA) and establishes requirements for certain loans with high rates and/or high fees. The rules for these loans are contained in Section 32 of Regulation Z, which implements the TILA, so the loans also are called "Section 32 Mortgages." It establishes disclosure requirements and prohibits equity stripping and other abusive practices in connection with high-cost mortgages. It is enforced by the Commission for non-depository lenders and by the states through their attorneys general. Violations of these new requirements allow consumers to sue a lender for their non compliance. In a successful suit, consumers may be able to recover statutory and actual damages, court costs and attorney's fees. In addition, a violation of the high-rate, high-fee requirements of the TILA may enable consumers to rescind (or cancel) the loan for up to three years.

**Real Estate Settlement Procedures Act (RESPA)** an Act passed by the United States Congress in 1974. It is codified at Title 12, Chapter 27 of the United States Code, 12 U.S.C. § 2601–2617. It was created because various companies associated with the buying and selling of real estate, such as lenders, realtors, construction companies and title insurance companies were often engaging in providing undisclosed kickbacks to each other, inflating the costs of real estate transactions and obscuring price competition by facilitating bait-and-switch tactics. Violations of three sections of RESPA allow for private civil law suits to enforce compliance. Section 6 (Loan Servicing Provisions), Section 8 (Anti-Kickback Provisions) & Section 9 (Title Company Rules) of RESPA may also be grounds for administrative action by the Secretary under part 24 of this title concerning debarment, suspension, ineligibility of contractors and grantees.

**Equal Credit Opportunity Act (ECOA)** a United States law (codified at 15 U.S.C. § 1691 et seq.), enacted in 1974, that makes it unlawful for any creditor to discriminate against any applicant with respect to any aspect of a credit transaction on the basis of race, color, religion, national origin, sex, marital status, or age (provided the applicant has the capacity to contract); to the fact that all or part of the applicant's income derives from a public assistance program; or to the fact that the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The law applies to any person who, in the ordinary course of business, regularly participates in a credit decision, including banks, retailers, bankcard companies, finance companies, and credit unions.Failure to comply with the Equal Credit Opportunity Act's Regulation B can subject a financial institution to civil liability for actual and punitive damages in individual or class actions. Liability for punitive damages can be as much as $10,000 in individual actions and the lesser of $500,000 or one percent of the creditor's net worth in class actions.

**Unfair or Deceptive Acts or Practices (UDAP)** The FTC Act prohibits unfair or deceptive acts or practices. Congress drafted this provision broadly in order to provide sufficient flexibility in the law to address changes in the market and unfair or deceptive practices that may emerge. An act or practice may be found to be unfair where it "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." A representation, omission, or practice is deceptive if it is likely to mislead a consumer acting reasonably under the circumstances and is likely to affect a consumer's conduct or decision regarding a product or service.

# CMAC
## Consumer Mortgage Audit Center

# Forensic Mortgage Violation Assessment Screening

**Gramm-Leach-Bliley Act (GLBA)** An Act of the United States Congress which repealed part of the Glass-Steagall Act of 1933, opening up competition among banks, securities companies and insurance companies (now known collectively as 'financial services' companies). The Glass-Steagall Act prohibited a bank from offering investment, commercial banking, and insurance services. GLBA compliance is mandatory; whether a financial institution discloses non-public information or not, there must be a policy in place to protect the information from foreseeable threats in security and data integrity. Major Components put into place to govern the collection, disclosure, and protection of consumers' non-public personal information; or personally identifiable information: Finacial Privacy Rule, Safegards Rule, Pretexting Protection.

**Home Mortgage Disclosure Act (HMDA)** It requires financial institutions to maintain and annually disclose data about home purchases, home purchase pre-approvals, home improvement, and refinance applications involving 1 to 4 unit and multifamily dwellings. It also requires branches and loan centers to display a HMDA poster.[1] HMDA was designed by the Federal Reserve Board in order to: Help public officials to distribute public-sector investments, Discover if financial institutions are serving housing needs of and Identify where there are discriminatory lending practices.

**Fair Credit Reporting Act (FCRA)** An American federal law (codified at 15 U.S.C. § 1681 et seq.) that regulates the collection, dissemination, and use of consumer credit information. Along with the Fair Debt Collection Practices Act (FDCPA), it forms the base of consumer credit rights in the United States. It was originally passed in 1970,[1] and is enforced by the US Federal Trade Commission. Users of the information for credit, insurance, or employment purposes (including background checks) have the following responsibilities under the FCRA: 1.They must notify the consumer when an adverse action is taken on the basis of such reports. 2. Users must identify the company that provided the report, so that the accuracy and completeness of the report may be verified or contested by the consumer.

**The Fair Debt Collection Practices Act (FDCPA)** 15 U.S.C. § 1692 et seq., is a United States statute added in 1978 as Title VIII of the Consumer Credit Protection Act. Its purposes are to eliminate abusive practices in the collection of consumer debts, to promote fair debt collection and to provide consumers with an avenue for disputing and obtaining validation of debt information in order to ensure the information's accuracy. The Act creates guidelines under which debt collectors may conduct business, defines rights of consumers involved with debt collectors, and prescribes penalties and remedies for violations of the Act. The Federal Trade Commission has the authority to administratively enforce the FDCPA using its powers under the Federal Trade Commission Act.[24] Aggrieved consumers may also file a private lawsuit in a state or federal court to collect damages (actual, statutory, attorney's fee and courtcosts) from third-party debt collectors. The FDCPA is a strict liability law, which means that a consumer need not prove actual damages in order to claim statutory damages of up to $1,000 plus reasonable attorney fees if a debt collector is proven to have violated the FDCPA.[25]

**Uniform Standards of Professional Appraisal Practice (USPAP)** is the quality control standards applicable for appraisal analysis and reports in the United States and its territories. USPAP, as it's commonly known, was first developed in the 1980s by a joint committee representing the major U.S. and Canadian appraisal organizations. As a result of the Savings and Loan Crisis, the Appraisal Foundation (TAF) was formed by these same groups, along with support and input from major industry and educational groups, and TAF took over administration of USPAP[1]. The Financial Institutions Reform, Recovery and Enforcement Act of 1989 authorized the Appraisal Subcommittee (ASC), which is made up of representatives of the leading U.S. government agencies and non-governmental organizations empowered to oversee the U.S. mortgage and banking system. The ASC provides oversight to TAF.

 

**PRIORITY® MAIL**
UNITED STATES POSTAL SERVICE

**Visit us at usps.com**

Label 107R, January 2008



USPS TRACKING NUMBER

9505 5108

Residential Capital, LLC
P. O. Box 385220
Bloomington, Minnesota 55



**PRIORITY® MAIL**
UNITED STATES POSTAL SERVICE

**Visit us at usps.com**

Label 107R, January 2008



1004

55438