**Hearing Date and Time: August 26, 2014 at 10:00 a.m. (prevailing Eastern Time),
to be adjourned to September 30, 2014
Objection Deadline: August 26, 2014 at 4:00 p.m. (prevailing Eastern Time)**

QUARLES & BRADY LLP
One Renaissance Square
Two North Central Avenue
Phoenix, Arizona 85004-2391
Telephone: (602) 229-5200
Facsimile: (602) 229-5690
John M. O'Neal, Esq. (admitted *pro hac vice*)
john.oneal@quarles.com
Walter J. Ashbrook, Esq. (admitted *pro hac vice*)
walter.ashbrook@quarles.com

*Counsel for OneWest Claimants*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>RESIDENTIAL CAPITAL, LLC, et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 12-12020-MG<br>(Jointly Administered) |

**RESPONSE OF ONEWEST CLAIMANTS IN OPPOSITION TO RESCAP
LIQUIDATING TRUST'S SEVENTY-FIRST OMNIBUS OBJECTION
TO CLAIMS (NO LIABILITY CLAIMS)**

# TABLE OF CONTENTS

I. INTRODUCTION. .................................................................................................. 1

II. FACTUAL BASIS FOR CLAIMS. ....................................................................... 2

III. THE COURT SHOULD OVERRULE THE CLAIM OBJECTION BECAUSE THE ONEWEST CLAIMANTS HAVE A VALID CLAIM AGAINST HOMECOMINGS. ................................................................................................. 7

    A. The Proof Of Claim, Together With This Response And Supporting Declaration, Constitute A *Prima Facie* Claim That Is Presumptively Valid, And Which The Trust Has Not Produced Evidence To Rebut. ................................................................. 7

    B. Homecomings Was Negligent In Disclosing Erroneous Information In The Payoff Letter. ................................................................................................................. 9

    C. Breach Of Contract And Promissory Estoppel. ............................................... 10

        *1. Homecomings Breached Its Contract.* ...................................................... 10

        *2. Alternatively, The OneWest Claimants Have A Claim Against Homecomings Arising From Promissory Estoppel.* ........................................................... 11

    D. Homecomings' Has Been Unjustly Enriched By Failing To Release The Lien. ............ 12

    E. Homecomings Converted The Refinancing Proceeds and the Senior Lien Interest In The Property For Its Own Benefit. ................................................................. 13

IV. CONCLUSION. ................................................................................................. 13

QB\29458602.1

**Cases**

Dole Food Co., Inc. v. N. Carolina Foam Indus., Inc., 188 Ariz. 298, 935 P.2d 876
(App. 1996) .................................................................................................................. 9

Double AA Builders, Ltd. v. Grand State Const. L.L.C., 210 Ariz. 503, 114 P.3d 835 (App.
2005) ......................................................................................................................... 11

E-Z Livin' Mobile Homes, Inc. v. Tommaney, 27 Ariz. App. 11, 550 P.2d 658 (App. 1976) ..... 10

Graham v. Asbury, 112 Ariz. 184, 540 P.2d 656 (1975) ................................................. 10

In re Allegheny Int'l, Inc., 954 F.2d 167 (3d Cir. 1992) .................................................... 7

In re Hemingway Transp., Inc., 993 F.2d 915 (1st Cir. 1991) ........................................... 7

In re Holm, 931 F.2d 620 (9th Cir.1991) ......................................................................... 7

In re Jorczak, 314 B.R. 474 (Bankr. D. Conn. 2004) ....................................................... 7

In re Stoecker, 5 F.3d 1022 (2d. Cir. 1993) .................................................................... 8

Johnson v. Earnhardt's Gilbert Dodge, Inc., 212 Ariz. 381, 132 P.3d 825 (2006) .............. 10

K-Line Build., Inc. v. First Fed. Sav. & Loan Ass'n, 139 Ariz. 209, 677 P.2d 1317
(App. 1983) ............................................................................................................. 8, 10

Loiselle v. Cosas Mgmt. Grp., LLC, 224 Ariz. 207, 228 P.3d 943 (App. 2010) .................. 12

Mobile Disc. Corp. v. Schumacher, 139 Ariz. 15, 676 P.2d 649 (App. 1983) ..................... 13

Savoca Masonry Co., Inc. v. Homes and Son Constr. Co., Inc., 112 Ariz. 392, 542 P.2d 817
(1975) ....................................................................................................................... 10

**Statutes**

11 U.S.C. § 502(a) ....................................................................................................... 10

A.R.S. § 33-817 ............................................................................................................. 7

**Other Authorities**

*Collier on Bankruptcy* § 502.02, at 502-22 (15th ed. 1991) ...................................... 7, 10

Restatement (Second) of Contracts § 17(1) (1981) ................................................. 10, 11

Restatement (Second) of Torts Sec. 222A(1) ............................................................... 16

Restatement (Third) of Property (Mortgages) § 1.6(c) (1997) ....................................... 12

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

OneWest Bank N.A., formerly known as OneWest Bank, FSB ("**OneWest**") and Deutsche Bank National Trust Company, as Trustee of the IndyMac INDX Mortgage Loan Trust 2005-AR23, Mortgage Pass-Through Certificates, Series 2005-AR23 ("**Deutsche Bank**", and together with OneWest, the "**OneWest Claimants**"), creditors and parties-in-interest in the above-captioned, jointly-administered bankruptcy cases (the "**Bankruptcy Cases**") hereby respond and object to the "Rescap Liquidating Trust's Seventy-First Omnibus Objection to Claims (No Liability Claims)" [Docket No. 7305] (the "**Claim Objection**").  Through the Claim Objection, the ResCap Liquidating Trust (the "**Trust**") seeks entry of an Order disallowing and expunging the claim filed by the OneWest Claimants, Claim No. 4827, in the amount of $806,590.40 (the "**Proof of Claim**").

As set forth in the Proof of Claim, and further detailed herein, the Trust has not met and cannot meet its burden to bring forth substantial evidence to negate the presumptive validity of the claim.  Accordingly, the Claim Objection should be overruled.

## I.     INTRODUCTION.

In 2005, third party borrower Mayra Hernandez refinanced two mortgages secured by her home in Scottsdale, Arizona.  The junior mortgage secured a home equity line of credit held by debtor Homecomings Financial, LLC ("**Homecomings**").  IndyMac Bank, F.S.B. ("**IndyMac**") funded the refinance.  IndyMac's loan was used to pay both of the existing mortgages in full through escrow.  It was expected that after those payments, IndyMac would have a lien in first position on Ms. Hernandez' property.  Shortly after closing, the previous senior lien was released.  Homecomings, however, failed to close its credit line or release its junior lien, despite being paid in full and despite promising to do so in a payoff letter it circulated in connection with the transaction.  It later invited the borrower to run up additional debt on the credit line and then sold the line to a third party, which ultimately foreclosed on the lien after the borrower defaulted on the credit line.

Homecomings' improper conduct following the refinance meant that its lien was in first position and Indymac's lien was in second position at the time of the foreclosure, completely stripping Indymac of its collateral position. The OneWest Claimants succeeded to the rights of IndyMac, and filed a the Proof of Claim in Homecomings' bankruptcy case.

As set forth in the Proof of Claim and in greater detail here, Homecomings' failure to release its lien or to close the credit line gives rise to a *prima facie* claim in favor of the OneWest Claimants arising under independent and alternative theories of negligence, breach of contract, promissory estoppel, unjust enrichment and conversion. Nothing in the Claim Objection rebuts the validity of the claim. Accordingly, the Claim Objection should be overruled.

## II.    FACTUAL BASIS FOR CLAIMS.

1.   On or around September 2, 2005, a refinancing transaction (the "**Refinance**") was completed in which borrower Mayra Hernandez ("**Borrower**"), residing at 8234 E. Desert Cove, Scottsdale, AZ 85260 (the "**Property**"), borrowed approximately $640,000 (the "**Refinance Loan**") from IndyMac Bank, F.S.B. ("**IndyMac**") to pay off (a) an existing first mortgage held by Citi Mortgage in the amount of approximately $543,320.63, and (b) a home equity line of credit ("**HELOC**") held by Debtor Homecomings in the amount of approximately $101,846.28. The Refinance Loan was to be secured by a first position deed of trust recorded against the Property. See "Declaration of Rebecca Marks in Support of Response of OneWest Claimants in Opposition to Claim Objection", filed concurrently herewith (the "**Marks Declaration**"), ¶ 3.

2.   Escrow was opened with Fidelity National Title Insurance Company ("**Fidelity**") for the funding of the Refinance Loan. Prior to the close of escrow, Fidelity obtained a payoff statement for the HELOC from Homecomings (the "**Payoff Letter**"). See Marks Declaration, ¶ 4. A copy of the Payoff Letter is attached to the Marks Declaration as Exhibit "1" and is incorporated herein by this reference.

3.   Homecomings stated in the Payoff Letter that "sending payoff funds to Homecomings authorizes Homecomings to CLOSE the line of credit," and "you may choose to

pay off and CLOSE your line of credit via wire transfer. By sending a wire transfer on this account, you are automatically authorizing Homecomings to pay off and CLOSE your line of credit." The payoff statement further stated in all capital letters "IF SUFFICIENT PAY OFF FUNDS ARE RECEIVED, YOUR ACCOUNT WILL BE CLOSED AND YOU WILL HAVE NO ACCESS TO FUTURE DRAWS." Regarding any potential overpayment of the HELOC in connection with the Refinance, the Payoff Letter provided that "[i]f additional funds are received in excess of that required to satisfy the loan, those funds will be mailed to the borrower within 30 days after the payoff." See Payoff Letter, at 2. Finally, regarding release of Homecomings' lien associated with the HELOC, the Payoff Letter provided "[u]pon full payoff, the release of lien on the property will be prepared and recorded by Homecomings according to the state's requirements." Id.

4. Escrow for the Refinance closed on September 7, 2005. IndyMac deposited $640,000 in escrow. The HUD Settlement Statement for the closing shows that $543,320.63 was sent from escrow to CitiBank, and $101,848.28 was sent to Homecomings. See Marks Declaration, ¶ 5. A copy of the HUD Settlement Statement is attached as Exhibit "2" to the Marks Declaration and is incorporated herein by this reference. Those amounts were sufficient to pay both loans in full.

5. A copy of the promissory note evidencing the Refinance Loan (the "**Note**") is attached as Exhibit "3" to the Marks Declaration and is incorporated herein by this reference.

6. A Deed of Trust securing the Refinance Loan (the "**Deed of Trust**") was recorded in the Official Records of the Maricopa County Recorder's Office (the "**Official Records**") as Recorder's Number 20051308183 on September 7, 2005, and is attached as Exhibit "4" to the Marks Declaration and is incorporated herein by this reference.

7. On July 11, 2008 IndyMac was closed by the Office of Thrift Supervision ("**OTS**"), and the Federal Deposit Insurance Corporation ("**FDIC**") was appointed receiver of IndyMac. On the same date, the OTS chartered a new institution, IndyMac Federal Bank, FSB ("**IndyMac Federal**"), and appointed the FDIC as conservator. See Marks Declaration, ¶ 8.

8. OneWest acquired substantially all the assets and mortgage servicing rights of IndyMac Federal from the FDIC, as receiver for IndyMac Federal, on March 19, 2009 (including such rights as relating to the Refinance Loan). The following is a link to an FDIC public record detailing the acquisition: https://www.fdic.gov/bank/individual/failed/IndyMac.html. See Marks Declaration, ¶ 9.

9. On or about April 18, 2009, MERS assigned legal title to the Refinance Loan and Deed of Trust to IndyMac Federal by a certain Assignment of Deed of Trust recorded in the Official Records on May 28, 2009 as Recorder's Number 20090482227 ("**MERS Assignment**"). See Marks Declaration, ¶ 10. A copy of the MERS Assignment is attached as Exhibit "5" to the Marks Declaration and is incorporated herein by this reference.

10. On or about February 5, 2010, IndyMac Federal assigned beneficial interests of the Refinance Loan and the Deed of Trust to Deutche Bank National Trust Company, as Trustee of the IndyMac INDX Mortgage Loan Trust 2005-AR23, Mortgage Pass-Through Certificates, Series 2005-AR23 under the Pooling and Servicing Agreement dated September 1, 2005 (together, "**Deutsche Bank**") by virtue of (among other things) a Pooling and Servicing Agreement dated September 1, 2005 and an Assignment of Deed Trust, which was recorded in the Official Records on March 3, 2010 as Recorder's Number 20100182325 (the "**Assignment to Deutsche Bank**").[1] See Marks Declaration, ¶ 11. A copy of the Assignment is attached as Exhibit "6" to the Marks Declaration and is incorporated herein by this reference.

11. Accordingly, Deutsche Bank and OneWest (as the servicer for the Refinance Loan) were the owner and holders of the Refinance Loan and authorized to enforce it according to its terms up to and at the time of the foreclosure sale on the HELOC on or about August 16,

---

[1] Arizona law does not require an assignment of a deed of trust in order for that deed of trust to transfer to another party. See A.R.S. § 33-817 ("A transfer of any contract . . . secured by a trust deed shall operate as a transfer of the security for such contract . . . ."); In re Vasquez, 228 Ariz. 357, 359, 266 P.3d 1053, 1055 (2011). In this case, IndyMac endorsed the Note in blank, making it bearer paper, and delivered it to the possession of OneWest.

2011, and Deutsche Bank still is the owner of the Refinance Loan. See Marks Declaration, ¶ 12. On or about November 1, 2013, OneWest transferred the servicing rights regarding the administrative aspects of the Refinance Loan to Ocwen Financial Corporation ("**Ocwen**") (including responsibility to collect payments, and send out correspondence in connection therewith); but, pursuant to a Cooperation Agreement with Ocwen, OneWest retained and maintains the authority on behalf of Deutsche Bank to pursue this claim in the above-captioned bankruptcy cases. Id.

12.     The Trust concedes the HELOC was paid in full in connection with the Refinance and asserts that Homecomings received more than the balance owed in connection with the Refinance, resulting in a credit balance in favor of the Borrower. See Claim Objection, at 7.

13.     Despite the HELOC being paid in full, Homecomings failed to record a release of its lien against the Property, failed to return the credit balance to the Borrower within thirty (30) days pursuant to the terms of its Payoff Letter, and failed to close the HELOC. The Trust does not dispute these facts.

14.     Records produced by Homecomings show that on November 15, 2005, the Borrower called Homecomings and asked why she was still receiving monthly billing statements from Homecomings when the HELOC had been paid off. Homecomings' records further show that Homecomings advised the Borrower that the loan was "still active" and that Homecomings would send her a letter advising her of her options if she wanted to close the loan. Later, on December 20, 2005, the Borrower again called Homecomings, asking whether she could use checks she received for the HELOC. Homecomings informed her that she could use the checks. Thereafter, the Borrower increased the balance on Homecomings Line from zero to approximately $100,000. See Exhibit "1" to the "Declaration of John Maston O'Neal in Support of Response of OneWest Claimants in Opposition to Claim Objection" (the "**O'Neal Declaration**"), filed concurrently herewith.

15.     Homecomings later sold the HELOC (the balance of which had been run up again by the Borrower) to a third party ("**National Equity**"). Copies of the Homecomings Deed of

-5-

Trust securing the HELOC, together with documents assigning the same to National Equity in 2011 are attached hereto as **Exhibit "1"**.

16. Thus, Homecomings' lien, which it promised to release when paid in full, instead remained of record and was improperly senior to the OneWest Claimants' lien.

17. The Trust does not dispute that National Equity completed a non-judicial foreclosure of its lien, wiping out the OneWest Claimants' collateral position. See Response, at 7. A copy of the Trustee's Deed dated September 12, 2011 conveying the Property to EZ Homes, Inc. after the National Equity trustee's sale is attached hereto as **Exhibit "2"**.

18. After defaulting on the obligations under the Refinance Loan, the Borrower received a standard discharge in a Chapter 7 no asset bankruptcy case in the United States Bankruptcy Court for the District of Arizona, Case No. 2:12-bk-27301-SSC, and is uncollectable.

19. As of August 11, 2011, the amounts due and owing to the OneWest Claimants under the Refinance Loan included at least the following:

| | |
|---|---|
| Principal Balance | $693,970.20 |
| Interest | $109,912.64 |
| Escrow Advance | $ 10,569.86 |
| Corporate Advance | $  5,831.66 |
| Late Charges | $  4,079.76 |
| Attorneys' Fees/Costs* | $ 36,226.28 |
| **Total Due as of 8/11/11** | **$806,590.40** |

*Through 11/7/12

See Marks Declaration, at ¶14.

20. Accordingly, the OneWest Claimants have a claim against Homecomings in the amount of at least $806,590.40 plus accrued and accruing interest, fees, costs and other amounts (collectively, the "**Claim**"). As discussed infra, the legal theories underlying the Claim include (among others) negligence, breach of contract, unjust enrichment, and conversion.

**III.  THE COURT SHOULD OVERRULE THE CLAIM OBJECTION BECAUSE THE ONEWEST CLAIMANTS HAVE A VALID CLAIM AGAINST HOMECOMINGS.**

   **A.  The Proof Of Claim, Together With This Response And Supporting Declaration, Constitute A *Prima Facie* Claim That Is Presumptively Valid, And Which The Trust Has Not Produced Evidence To Rebut.**

Under Section 502(a) of the Bankruptcy Code, a claim is "deemed allowed" unless a party objects. 11 U.S.C. § 502(a). Additionally, under Bankruptcy Rule 3001(f) "[a] proof of claim executed and filed in accordance with these rules shall constitute *prima facie* evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f) (emphasis added). A claim is *prima facie* valid if the creditor alleges facts sufficient to support a legal liability to the claimant. See, e.g., In re Holm, 931 F.2d 620, 623 (9th Cir.1991) (citing 3 L. King, *Collier on Bankruptcy* § 502.02, at 502-22 (15th ed. 1991)). If a claimant meets its initial burden to establish a *prima facie* claim, the burden shifts to the objecting party to produce "substantial evidence" to negate the presumption that the claim is valid. In re Hemingway Transp., Inc., 993 F.2d 915, 925 (1st Cir. 1991) (citations omitted). The objecting party must then point to evidence "equal in force" to the *prima facie* case. See, e.g., In re Allegheny Int'l, Inc., 954 F.2d 167, 173-74 (3d Cir. 1992); In re Jorczak, 314 B.R. 474, 481 (Bankr. D. Conn. 2004).

The trust seems to suggest that the Proof of Claim failed to comply with Bankruptcy Rule 3001(c)(1), which presumes that the Claim is based on a single "writing". Claim Objection, ¶¶14-16. That is not true.

As discussed in detail below, the OneWest Claimants' claim is predicated on the following theories (among others): negligence, breach of contract/promissory estoppel, unjust enrichment and conversion. While certain documents support each of these theories, the theories (many of which are equitable and/or tort based) are not necessarily "based" on a writing for purposes of Bankruptcy Rule 3001. Even regarding the breach of contract claim, there was not a single, integrated signed contract giving rise to the claim. But a single integrated contract is not a requirement for a contract to exist under Arizona law; oral contracts may be enforceable. K-

-7-

Line Build., Inc. v. First Fed. Sav. & Loan Ass'n, 139 Ariz. 209, 212-13, 677 P.2d 1317, 1320-21 (App. 1983).

Furthermore, much of the documentation evidencing the Claim has been in the possession of and has been produced by Homecomings in this case. See, e.g., Exhibit "1" to the O'Neal Declaration. Moreover, Counsel for the OneWest Claimants sent many of the documents supporting the OneWest Claimants' theories of recovery (including the Payoff Letter, the HUD Statement, and copies of documents produced by Homecomings) to the Trust's counsel via e-mail on April 11, 2014.

But, in all events, even if the Proof of Claim lacked sufficient documentation, that is not fatal to the claim because the omission was not harmful or misleading. In re Stoecker, 5 F.3d 1022, 1028 (2d. Cir. 1993) (bankruptcy court was wrong to disallow proof of claim without leave to amend because of non-compliance with Rule 3001).

Accordingly, the Proof of Claim, together with this Response and the supporting Declarations and the documents attached thereto constitute a *prima facie* claim against Homecomings. Thus, the burden has shifted to the Trust to rebut the presumptive validity of the Claim. Because the Trust has failed in its Claim Objection to point to or attach any evidence rebutting the presumptive validity of the Claim, the Claim Objection should be overruled.

The following is an explanation of the legal theories on which the Claim rests.

### B. Homecomings Was Negligent In Disclosing Erroneous Information In The Payoff Letter.

The OneWest Claimants have a valid claim against Homecomings for negligence arising from the representations Homecomings made in the Payoff Letter and its conduct following the Refinance.

As mortgagee on the HELOC, Homecomings had a duty not to disclose erroneous information in the Payoff Letter. The Restatement of the Law of Property discusses the duties of mortgagees to avoid disclosing erroneous information in payoff statements. Section 1.6(c) of the Restatement provides, in relevant part:

> A mortgagee who, without good cause . . . discloses erroneous information is liable for the damages caused by the failure or error, and may also be subjected to a court order to comply. A mortgagee who discloses erroneous information may be estopped to deny its accuracy as against one who has reasonably and detrimentally relied on the disclosure.

Restatement (Third) of Property (Mortgages) § 1.6(c) (1997). "Absent contrary precedent, Arizona courts follow the Restatement." Dole Food Co., Inc. v. N. Carolina Foam Indus., Inc., 188 Ariz. 298, 306, 935 P.2d 876, 884 (App. 1996).

Here, Homecomings disclosed that if it received "sufficient" funds to payoff the HELOC, it would close the HELOC, and that, upon "full payoff" Homecomings would release its lien. The Trust does not dispute that Homecomings was paid in full when the Refinance closed. Nor does it dispute that Homecomings failed to close the HELOC or release the lien upon receiving payment in full. The Trust cannot legitimately dispute that Homecomings represented in the Payoff Letter that it would close the HELOC if a full payoff was received, and that Homecomings would release its lien upon receiving a full payoff.

Instead, the Trust appears to argue that because it allegedly received <u>more</u> than a full payoff, it had no duty to close the HELOC or release the lien. See Claim Objection, at 7. That assertion is wholly inconsistent with the terms of Homecomings' Payoff Letter, which provided a mechanism for the return to Borrower of any overpayment. That is, Homecomings said in that

-9-

letter that if excess proceeds were received, they would be remitted to the borrower in thirty days. Homecomings did not say that if excess proceeds were received, it would not close the line and keep its lien.

Homecomings had a duty to make accurate disclosures in the Payoff Letter. It breached that duty by disclosing that it would close the line and release the lien upon payment without actually closing the line or releasing the lien upon payment. This breach caused the loss by the OneWest Claimants of their entire collateral position.

Accordingly, the OneWest Claimants have a negligence claim against Homecomings, in the amount of the Claim as set forth above.

### C. Breach Of Contract And Promissory Estoppel.

In addition, the OneWest Claimants have a claim against Homecomings arising from breach of contract and/or promissory estoppel.

#### 1. *Homecomings Breached Its Contract*.

"To bring an action for . . . breach of . . . contract, the plaintiff has the burden of proving the existence of the contract, its breach and resulting damages." Graham v. Asbury, 112 Ariz. 184, 185, 540 P.2d 656, 657 (1975); see also E-Z Livin' Mobile Homes, Inc. v. Tommaney, 27 Ariz. App. 11, 15, 550 P.2d 658, 662 (App. 1976). "A contract is 'a bargain in which there is a manifestation of mutual assent to the exchange and a consideration.'" Johnson v. Earnhardt's Gilbert Dodge, Inc., 212 Ariz. 381, 384 ¶ 10, 132 P.3d 825, 828 (2006) (quoting Restatement (Second) of Contracts § 17(1) (1981)). "For an enforceable contract to exist, there must be an offer, an acceptance, consideration, and sufficient specification of terms so that obligations involved can be ascertained." K-Line Build, 139 Ariz. at 212-13, 677 P.2d at 1320-21 (App. 1983) (citing Savoca Masonry Co., Inc. v. Homes and Son Constr. Co., Inc., 112 Ariz. 392, 542 P.2d 817 (1975)).

Here, Homecomings' offer consisted of the Payoff Letter and the promises it made therein (i.e., to close the line of credit and release its lien upon full payment of the HELOC). Acting through the title company as its agent, IndyMac accepted the contract by funding the

-10-

Refinance in accordance with the terms required by Homecomings in the Payoff Letter, and provided consideration by funding the Refinance, which was used in part to pay off the HELOC in full.

Homecomings breached the contract by failing to close the HELOC and release its lien upon receiving full payment, in violation of the terms of the Payoff Letter. The OneWest Claimants have been damaged by Homecomings' breach in an amount at least equal to the Claim.

### 2. *Alternatively, The OneWest Claimants Have A Claim Against Homecomings Arising From Promissory Estoppel*.

Alternatively, Homecomings' promise to release the lien was binding and enforceable under the doctrine of promissory estoppel. "Arizona has previously adopted Section 90(1) of the Restatement (Second) of Contracts (1981) . . . which describes those promises that will be binding under the promissory estoppel doctrine." Double AA Builders, Ltd. v. Grand State Const. L.L.C., 210 Ariz. 503, 506 ¶ 13, 114 P.3d 835, 838 (App. 2005) (internal citations and quotations omitted). Thus, under Arizona law:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

Id. Compensatory damages are an appropriate remedy where a promissory estoppel claim is established. Cf. id. at 511, 114 P.3d at 843 (affirming trial court's award of compensatory damages based on promissory estoppel).

Here, Homecomings promised in its Payoff Letter to close the HELOC and to release its lien upon receiving payment in full. Homecomings should have reasonably expected such promises to induce IndyMac to act by funding the amounts necessary to pay off the HELOC. Indymac reasonably relied upon Homecomings' promises when it provided funding for the Refinance, including fully paying off the HELOC. But Homecomings not only failed to honor its promises to close the HELOC and release the lien, it gave additional money to the Borrower

-11-

and sold the HELOC to a third party. Under these circumstances, Homecomings' promises are enforceable, and Homecomings is liable to the OneWest Claimants for the damages occasioned by Homecomings' breaking its promises.

Accordingly, the OneWest Claimants have a valid claim against Homecomings in the amount of at least the Claim.

### D.   **Homecomings' Has Been Unjustly Enriched By Failing To Release The Lien.**

"Unjust enrichment occurs when one party has and retains money or benefits that in justice and equity belong to another." Loiselle v. Cosas Mgmt. Grp., LLC, 224 Ariz. 207, 210 ¶ 9, 228 P.3d 943, 946 (App. 2010) (internal citations and quotations omitted). "To recover on a claim for unjust enrichment, a claimant must show (1) an enrichment, (2) an impoverishment, (3) a connection between the two, (4) the absence of justification for the enrichment and impoverishment and (5) the absence of any remedy at law. A person who has been unjustly enriched at the expense of another is required to make restitution to the other." Id.

Here, Homecomings was enriched by (a) receiving payment in full on the HELOC from Indymac, and (b) receiving payment from a third party when it sold the HELOC to the third party thereafter. The OneWest Claimants were impoverished by Homecomings' failure to release its lien in the Property and its failure to close the HELOC, because but for these omissions by Homecomings, the OneWest Claimants would not have lost their entire collateral position when the Property was foreclosed. The benefits received by Homecomings and the detriments borne by the OneWest Claimants are unjustified as they were all occasioned by Homecomings' unexplained failure to comply with its own Payoff Letter. And finally, the OneWest Claimants have no remedy at law.[2] Among other things, the Borrower has received a bankruptcy discharge and is uncollectible.

Accordingly, under an unjust enrichment theory, the OneWest Claimants have a valid claim against Homecomings for restitution in the amount of at least the Claim.

---

[2] This Unjust Enrichment theory is "pled" in the alternative, if and to the extent the Court finds the OneWest Claimants' legal theories pled herein fail.

### E. Homecomings Converted The Refinancing Proceeds and the Senior Lien Interest In The Property For Its Own Benefit.

"Conversion is . . . an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." Mobile Disc. Corp. v. Schumacher, 139 Ariz. 15, 17, 676 P.2d 649, 651 (App. 1983) (citing Restatement (Second) of Torts Sec. 222A(1)).

Consistent with its own Payoff Letter, Homecomings knew that the Refinance involved payment in full of the HELOC and release of Homecomings' junior lien on the Property. But instead of releasing the lien after being paid in full, Homecomings wrongfully retained possession of the refinancing proceeds and title to what became the senior lien interest after the Refinance—a property interest that should have been held by IndyMac and later, the OneWest Claimants. It then profited by selling that interest to a third party, resulting in the total loss of the OneWest Claimants' collateral position.

Accordingly, as a result of Homecomings conversion of the senior lien interest in the Property, the OneWest Claimants have a valid claim against Homecomings for damages in the amount of at least the Claim.

## IV. CONCLUSION.

The Trust has not and cannot put on evidence sufficient to defeat the OneWest Claimants' *prima facie* claims against Homecomings. Accordingly, the OneWest Claimants respectfully request that the Court overrule the Claim Objection.

| | |
|---|---|
| Dated: August 26, 2014<br>Phoenix, Arizona | /s/ Walter J. Ashbrook<br>John Maston O'Neal<br>Walter J. Ashbrook<br><br>QUARLES & BRADY LLP<br>One Renaissance Square<br>Two North Central Avenue<br>Phoenix, AZ 85004-2391<br>Telephone: (602) 229-5200<br>Facsimile: (602) 229-5690<br><br>Attorneys for OneWest Claimants |

-13-