

**JAMES S. DOODY AND PAUL D. CARRINGTON, APPELLANTS v.
AMERIQUEST MORTGAGE COMPANY, APPELLEE**

NO. 01-0137

**SUPREME COURT OF TEXAS**

*49 S.W.3d 342*; *2001 Tex. LEXIS 54*; *44 Tex. Sup. J. 864*

**April 18, 2001, Argued
June 7, 2001, Delivered**

**PRIOR HISTORY:**    **[\*\*1]** ON CERTIFIED QUESTION FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT.

Original Opinion of February 13, 2001, Reported at: *2001 U.S. App. LEXIS 2148*.

**DISPOSITION:**   First certified question answered no. Second question not reached, and declined to answer third question.


**JUDGES:** JUSTICE JAMES A. BAKER delivered the opinion of the Court.

**OPINION BY:** James A. Baker

**OPINION**

   **[\*342]**  This case involves two certified questions from the United States Court of Appeals for the Fifth Circuit. The Fifth Circuit asks:

   1. Under the Texas Constitution, if a lender charges closing costs in excess of three percent, but later refunds the overcharge, bringing the charge costs within the range allowed by *section 50(a)(6)(E)*, is the lien held by the lender invalid under *section 50(c)*?

   2. If this question is reached, may the protections of section 50 of the Texas **[\*343]** Constitution be waived by a buyer who accepts a refund of any overcharged amounts when the loan contract provides that accepting such refund waives any claims under *section 50*.

   We answer the first question, no. Therefore, **[\*\*2]** we need not reach the second question.

**I. BACKGROUND**

   In 1997, Texas citizens amended our Constitution to expand the types of liens a lender, with the homeowner's consent, could place against a homestead. The amendment allows home-equity loans, meaning homeowners who have either entirely repaid their home loans or who have accumulated equity in their homestead can apply for a loan against that equity as long as all outstanding debts against the homestead do not exceed eighty percent of the homestead's value. *TEX. CONST. art. XVI, § 50(a)(6)(B)*. The amendment details the loan's terms and conditions and the borrower's and home-equity lender's rights and obligations. *See TEX. CONST. art. XVI, § 50(a)(6)(A)-(Q)*.

   The amendment also includes *section 50(a)(6)(E)*, which prohibits the lender from requiring the homeowner to pay, in addition to any interest, fees to any person that are necessary to originate, evaluate, maintain, record, insure, or service the extension of credit that exceed, in the aggregate, three percent of the original principal amount of the extension of credit. *TEX. CONST. art XVI, § 50(a)(6)(E)*. One of the amendment's conditions for the

lien's validity **[**3]** is that the lender or any noteholder for the extension of credit shall forfeit all principal and interest of the extension of credit if the lender or holder fails to comply with the lender's or holder's obligations under the extension of credit within a reasonable time after the lender or holder is notified by the borrower of the lender's failure to comply. *TEX. CONST. art. XVI, § 50(a)(6)(Q)(x)*. Finally, *section 50(c)* provides that no mortgage, trust deed, or other lien on the homestead shall ever be valid unless it secures a debt described by this section. *TEX. CONST. art. XVI, § 50(c)*.

Ameriquest Mortgage Company, a residential mortgage lender, made a home equity loan for $ 45,500 to homeowners James S. Doody and Paul V. Carrington (Doody). The parties closed the loan in January 1998. As part of the loan transaction, Ameriquest required Doody to secure hazard insurance on the homestead during the loan's term. Before the loan closed, Doody paid $ 953.04 as the first annual premium for this policy. Additionally, when the loan closed, Ameriquest charged Doody closing costs totaling $ 2,006.88--an amount exceeding three percent of the loan.

About three months after the loan closed, **[**4]** during an audit, Ameriquest discovered that the closing costs it charged Doody exceeded the constitutional three-percent limitation. *See TEX. CONST. art. XVI, § 50(a)(6)(E)*. Ameriquest refunded Doody the amount necessary to reduce the total closing costs to three percent of the principal amount. Doody endorsed and cashed the check.

In June 1998, Doody sued Ameriquest, claiming that because Ameriquest collected closing costs exceeding the constitutional limitation, Ameriquest's lien on Doody's residence was invalid. Doody also contended that Ameriquest forfeited all principal and interest because the extension of credit did not comply with the constitutional requirements. Moreover, Doody urged that the $ 954.04 Doody paid for the hazard-insurance premium also counted toward the constitutional limitation.

Ameriquest removed the case to federal district court. That court dismissed **[*344]** Doody's action because it was not ripe. Doody appealed to the Fifth Circuit. The Fifth Circuit held that hazard-insurance premiums are not "fees" under *section 50(a)(6)(E)*. The Fifth Circuit then certified the two questions to this Court. *Doody v. Ameriquest Mortgage Co., 242 F.3d 286, 289 (5th Cir. 2001)*. **[**5]**

## II. CONSTITUTIONAL PROVISIONS

The provisions of the 1997 amendment pertinent to this appeal are:

§ 50. Homestead; protection from forced sale; mortgages; trust deeds and liens

(a) The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for:

. . . .

(6) An extension of credit that:

. . . .

(E) does not require the owner or the owner's spouse to pay, in addition to any interest, fees to any person that are necessary to originate, evaluate, maintain, record, insure, or service the extension of credit that exceed, in the aggregate, three percent of the original principal amount of the extension of credit;

. . . .

(Q) is made on the condition that:

. . . .

(x) the lender or any holder of the note for the extension of credit shall forfeit all principal and interest of the extension of credit if the lender or holder fails to comply with the lender's or holder's obligations under the extension of credit within a reasonable time after the lender or holder is notified by the borrower of the lender's failure to comply[.]

. . . .

(c) No mortgage, trust deed, or other **[**6]** lien on the homestead shall ever be valid unless it secures a debt described by this section, whether such mortgage, trust deed, or other lien, shall have been created by the owner alone, or together with his or her spouse, in case the owner is married. All pretended sales of the homestead involving any condition of defeasance shall be void.

*TEX. CONST. art. XVI, § 50*.

## III. APPLICABLE LAW

When interpreting our state constitution, we rely heavily on its literal text and must give effect to its plain language. *Stringer v. Cendant Mortgage Corp., 23 S.W.3d 353, 355 (Tex. 2000)*; *Republican Party of Tex. v. Dietz, 940 S.W.2d 86, 89 (Tex. 1997)*. We strive to give constitutional provisions the effect their makers and adopters intended. *See Stringer, 23 S.W.3d at 355*; *City of El Paso v. El Paso Cmty. Coll. Dist., 729 S.W.2d 296, 298 (Tex. 1986)*. We construe constitutional provisions and amendments that relate to the same subject matter together and consider those amendments and provisions in light of each other. *Purcell v. Lindsey, 158 Tex. 541, 314 S.W.2d 283, 284 (Tex. 1958)*; *Duncan v. Gabler, 147 Tex. 229, 215 S.W.2d 155, 159 (Tex. 1948)*; **[**7]** *Collingsworth County v. Allred, 120 Tex. 473, 40 S.W.2d 13, 15 (Tex. 1931)*. And we strive to avoid a construction that renders any provision meaningless or inoperative. *See Stringer, 23 S.W.3d at 355*; *Hanson v. Jordan, 145 Tex. 320, 198 S.W.2d 262, 263 (Tex. 1946)*.

## IV. ANALYSIS

### A. THE PARTIES' CONTENTIONS

Doody points out that Texas courts recognize that a homestead lien is valid only **[*345]** if the loan is one recognized in *section 50(a)*. *See, e.g., Laster v. First Huntsville Props. Co., 826 S.W.2d 125, 129 (Tex. 1991)*; *Hruska v. First State Bank of Deanville, 747 S.W.2d 783, 784 (Tex. 1988)*. Doody concedes that the loan he sought from Ameriquest was a home-equity loan under *section 50(a)(6)*. But Doody contends that because the closing costs exceeded the three-percent cap in *section 50(a)(6)(E)*, the loan did not comply with *section 50(a)(6)*'s requirements. Because Ameriquest did not strictly comply with the constitutional requirements when it made the loan, Doody argues that the lien was never valid, and consequently, Ameriquest's subsequent cure could not resurrect the void lien.

Doody **[**8]** also contends that *section 50(a)(6)(Q)(x)* does not validate the lien because that section is a forfeiture provision with a cure mechanism and forfeiture is not an issue in this case. Doody argues that, by its very terms, *section 50(a)(6)(Q)(x)* does not apply in determining whether a lien is valid. Thus, no cure is available to validate the lien when the loan does not comply with the constitutional requirements.

Ameriquest disagrees with Doody's contention that the cure mechanism in *section 50(a)(6)(Q)(x)* only modifies the forfeiture remedy. Rather, Ameriquest argues that the cure provision applies to the rest of *section 50(a)(6)*, thus permitting a party to cure a constitutional defect and validate the lien under *section 50(c)*. Ameriquest contends that Doody's interpretation fails for two reasons. First, the cure provision is a constitutional provision that must be given effect. Second, "obligations under the extension of credit," which are curable under *section 50(a)(6)(Q)(x)*, include all parts of *section 50(a)(6)*, such as *section 50(a)(6)(E)*'s three-percent limitation. Ameriquest argues that under applicable constitutional law, this Court should not read the cure provision in a vacuum **[**9]** but in conjunction with the related provisions in *sections 50(a)(6)*. To do otherwise, Ameriquest contends, would render the cure provision superfluous, void, and meaningless.

Ameriquest further asserts that *section 50(a)(6)(Q)(x)*'s plain language allows a lender to comply with its constitutional obligations within a reasonable time after the borrower notifies the lender of a failure to comply. Ameriquest contends that a lender does not forfeit any rights, including its lien rights, if it corrects mistakes upon learning of their existence. But, if the lender does not timely correct the mistakes, it then forfeits the principal and interest because it refused to comply with the home-equity loan restrictions.

### B. THE FIRST QUESTION: THE LIEN'S VALIDITY

We agree with Ameriquest's interpretation of the home equity amendment to *section 50*. We conclude that the cure provision in *section 50(a)(6)(Q)(x)* applies to all the lender's obligations under the "extension of credit" including *section 50(c)*'s requirements that to be valid a homestead lien must secure a debt described by this section. Accordingly, we answer the first certified question no.

Texas citizens adopted the home-equity **[**10]** loan amendment, which includes *section 50(a)(6)(Q)(x)*'s cure provision, in 1997. We must read all the amendment's provisions together because they relate to the same subject matter, and we must consider them in light of each other. *Purcell, 314 S.W.2d at 284*; *Duncan, 215 S.W.2d at 159*; *Allred, 40 S.W.2d at 15*. When we read all the amendment's provisions together, we conclude that *section 50(a)(6)(Q)(x)* is a cure provision that applies to

all of *section 50(a)* and is not limited to protecting the loan's principal and interest. Rather, this provision also **[*346]** operates as a cure provision that validates a lien securing a *section 50(a)(6)* extension of credit. To be valid, a home-equity loan must be made without recourse for personal liability against the homeowner. *TEX. CONST. art. XVI, § 50(a)(6)(C)*. Therefore, if a lien that secures such a loan is voided, the lender is left with no method for recovering any sums extended to the borrower.

Doody argues that no valid lien can be created on homestead property unless the lender strictly complies with the constitutional requirements when the loan is made and that the lender's subsequent efforts **[**11]** cannot resurrect a void lien. Doody relies on several cases to support this argument. *See, e.g., Laster, 826 S.W.2d at 129; Hruska, 747 S.W.2d at 784; Burkhardt v. Lieberman, 138 Tex. 409, 159 S.W.2d 847, 850-51 (Tex. 1942); Lincoln v. Bennett, 138 Tex. 56, 156 S.W.2d 504, 505-07 (Tex. 1941); Kepley v. Zachry, 131 Tex. 554, 116 S.W.2d 699, 700, 702 (Tex. 1938); Cocke v. Conquest, 120 Tex. 43, 35 S.W.2d 673, 678 (Tex. 1931); Toler v. Fertitta, 67 S.W.2d 229, 230 (Tex. Comm'n App. 1934, judgm't adopted); Collier v. Valley Bldg. & Loan Ass'n, 62 S.W.2d 82, 84 (Tex. Comm'n App. 1933, holding approved); Fidelity Sav. & Loan Ass'n of Port Arthur v. Baldwin, 416 S.W.2d 482, 484 (Tex. Civ. App.--Beaumont 1967, writ ref'd n.r.e.); Lewis v. Brown, 321 S.W.2d 313, 317 (Tex. App.--Fort Worth 1959, writ ref'd n.r.e.); Kemper v. Freeman, 254 S.W.2d 837, 838 (Tex. App.--Fort Worth 1953, no writ); Hicks v. Wallis Lumber Co., 70 S.W.2d 440, 440 (Tex. Civ. App.--San Antonio 1934, no writ);* **[**12]** *see also In re Daves, 770 F.2d 1363, 1366-67 (5th Cir. 1985); In re Howard, 65 B.R. 498, 507 (Bankr. W.D. Tex. 1986); Jeter v. Seminole State Nat'l Bank, 48 B.R. 404, 407-08 (Bankr. N.D. Tex. 1985)*.

These cases are distinguishable. As we have already observed, *section 50(a)(6)(Q)(x)*'s cure provision is new and all the cases on which Doody relies predate the 1997 home-equity loan constitutional amendment. Further, none of the cases involve a cure provision. For example, in *Hruska*, a lender agreed to provide a construction loan to a homeowner. *747 S.W.2d at 784*. When construction was nearly completed, the lender discovered that it had not executed a mechanic's and materialmen's lien before the materials were furnished and construction began, as required by our constitution at that time. *Hruska, 747 S.W.2d at 784*. The lender tried to cure the problem by executing a backdated lien contract, but this Court refused to enforce the lien. *Hruska, 747 S.W.2d at 784-85*. We held that the constitutional requirements for creating the lien against the homestead were not met, and neither the attorney's **[**13]** attempted cure nor the homeowner's alleged misrepresentations about securing the lien could validate the lien. *Hruska, 747 S.W.2d at 784-85*. Unlike the circumstances in *Hruska*, the 1997 home-equity loan amendment to our constitution includes a cure provision. Thus, *Hruska* and the other cases do not apply and lenders have a reasonable opportunity to cure mistakes.

Additionally, Doody overlooks this Court's prior holding that a homestead lien that may not have complied with constitutional requirements at the outset can be made valid at a later date if the power to do so exists under our constitution or statutes. *Collier, 62 S.W.2d at 84*. The 1997 home-equity loan amendment affords lenders such authority. Specifically, through *section 50(a)(6)(Q)(x)*'s cure provision, the amendment provides a means for the lender to correct mistakes within a reasonable time in order to validate a lien securing a *section 50(a)(6)* extension of credit.

Finally, Doody argues that construing *section 50(a)(6)(Q)(x)* as a cure mechanism that validates the lien will allow lenders to frequently issue home-equity loans in total **[*347]** disregard for such requirements as the three-percent **[**14]** closing-cost cap in *section 50(a)(6)(E)*. But this argument ignores that a lender's unlawful business activities may subject it to liability under federal and state laws. *See, e.g., TEX. BUS. & COM. CODE § 17.46*. Moreover, as Ameriquest explains, a lender has little business incentive to not comply with lender requirements, because its business' success depends largely on customer satisfaction and the lender's reputation in the community.

We hold that *section 50(a)(6)(Q)(x)* operates as authority to cure not only the particular lender obligation at issue under *section 50(a)(6)*, but also to validate the lien. We, therefore, answer the first certified question no. Because we answer the first question no, we need not reach the Fifth Circuit's second question.

## C. DOODY'S THIRD QUESTION

In addition to the two questions the Fifth Circuit certified to the Court, Doody presents a third question for

our consideration. This question is:

If a loan made pursuant to *section 50(a)(6)* requires the borrower to pay, at the inception of the loan, premiums to insure the homestead from casualty loss, do these premiums constitute "fees to any person that are **[\*\*15]** necessary to originate, evaluate, maintain, record, insure, or service the extension of credit" under *section 50(a)(6)(E)*?

Doody observes that the Fifth Circuit decided this issue of unsettled state law before reaching the questions it certified to this Court. The Fifth Circuit held such premiums were not fees under *section 50(a)(6)(E)*. *Doody, 242 F.3d at 289*. Doody believes the Fifth Circuit did not correctly interpret our Constitution and requests that this Court consider this issue in addition to the two certified questions.

But the Fifth Circuit has only asked us to decide two questions. Thus, we decline to consider Doody's third question at this time.

## V. CONCLUSION

We conclude that under the Texas Constitution, if a lender charges closing costs in excess of three percent, but refunds the overcharge within a reasonable time, bringing the costs within the range allowed by *section 50(a)(6)(E)*, that cure also validates the lien under *section 50(c)*. We reach this conclusion because we hold that *section 50(a)(6)(Q)(x)*'s cure provision applies to all the lender's obligations under the extension of credit. Upon the cure, the lender has established the **[\*\*16]** terms and conditions the lender must satisfy to make a lien valid under *section 50(c)*. Accordingly, the lien meets *section 50(c)*'s requirement that it is a lien that secures a debt described by this section. Because we answer the first certified question no, it is not necessary to reach the second question, and we decline to answer the third question.

James A. Baker, Justice

Opinion delivered: June 7, 2001