

1 of 1 DOCUMENT

**CHARLES J. HAWKINS, WILLIAM J. CUSICK, MICHELLE E. CUSICK, and MARIA C. BROOKS, on behalf of themselves and all other similarly situated parties, Plaintiffs, -vs- JPMORGAN CHASE BANK, N.A., Defendant.**

**Case No. A-12-CA-892-SS**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS, AUSTIN DIVISION**

*2013 U.S. Dist. LEXIS 24927*

**January 28, 2013, Decided
January 29, 2013, Filed**

**COUNSEL:** **[*1]** For Charles J. Hawkins, on behalf of himself and all others similarly situated, William J. Cusick, on behalf of himself and all others similarly situated, Michelle E. Cusick, on behalf of herself and all others similarly situated, Maria C. Brooks, Plaintiffs: David M. Gottfried, LEAD ATTORNEY, The Law Office of David M. Gottfried, P.C., Austin, TX; J. Patrick Sutton, LEAD ATTORNEY, Austin, TX; Jeffrey W. Hurt, LEAD ATTORNEY, Hurt & Berry LLP, Dallas, TX.

For JPMorgan Chase Bank, N.A., Defendant: Gordon M. Shapiro, LEAD ATTORNEY, Jackson & Walker, Dallas, TX; Brian A. Kilpatrick, Jackson Walker L.L.P., Dallas, TX; Matt Dow, Jackson Walker, LLP, Austin, TX.

**JUDGES:** SAM SPARKS, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** SAM SPARKS

**OPINION**

**ORDER**

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant JPMorgan Chase Bank, N.A. (JPMC)'s Motion to Dismiss [#12], Plaintiffs Charles J. Hawkins, William J. Cusick, Michelle E. Cusick, and Marie C. Brooks's Response [#15], and JPMC's Reply [#16]. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders GRANTING the motion to dismiss.

**Background**

This budding **[*2]** class action calls into question the home equity lending practices of Defendant JPMC. Plaintiffs are borrowers who defaulted on their home equity loans and subsequently sought modifications [1] from the loan servicer, JPMC. In order to avoid foreclosure, JPMC and Plaintiffs entered into loan modifications. Although each modification was unique, the common thread was an increase in the principal amount of the loans due to the capitalization of past-due interest and past-due escrow [2] on the original loans. Plaintiffs argue JPMC's actions violated the Texas Constitution, and as a result their liens--and those of "at least thousands of class members"--are void as of the date of the modifications. In short, everyone gets a free house. [3]

12-12020-mg    Doc 7450-2    Filed 08/28/14    Entered 08/28/14 11:46:38    Exhibit B
Pg 2 of 7

Page 2
2013 U.S. Dist. LEXIS 24927, *2

1    The parties dispute whether the actual arrangements were "modifications" or "refinances." JPMC also argues the modifications were never finalized, but assumes they were for purposes of the motion to dismiss.

2    The past-due escrow amounts include payments for items such as property taxes and insurance.

3    *But see SEC v. Cross Fin. Servs., Inc., 908 F. Supp. 718, 720 (C.D. Cal. 1995)* ("This case illustrates the adage 'if it sounds too good to be true, it probably is.'").

The [*3] Cusicks obtained a $268,000 home equity loan from CTX Mortgage Company, LLC in 2005. At some time prior to April 2009, the Cusicks defaulted on their loan. To avoid foreclosure, the Cusicks and JPMC entered into a loan modification agreement. The agreement increased the amount payable under the loan to $291,834.39, based on past-due interest and past-due escrow on the original loan, and did not alter the maturity date of the loan. Plaintiffs allege this modification violated the Texas Constitution because a home equity loan's principal "is fixed as of the date the home equity loan was first made and may only decline thereafter with every payment made until it is paid off or refinanced with a new extension of credit," subject to certain regulatory formalities not followed by JPMC in this case. First Am. Compl. [#8] ¶ 69.

Hawkins (and his ex-wife) obtained a $320,000 home equity loan from Town & Country Credit Corp. in 2005. At some time prior to February 2009, Hawkins defaulted on the loan. To avoid foreclosure, Hawkins and JPMC entered into a loan modification agreement. The agreement added $15,873.49 to the loan principal, based on past-due interest and past-due escrow. Hawkins also [*4] alleges the modification allowed for interest-only payments for a period of five years following the modification.

Brooks obtained a $190,000 home equity loan from Long Beach Mortgage Company in 2004. At some time prior to March 2012, Brooks defaulted on the loan. To avoid foreclosure, Brooks and JPMC entered into a loan modification agreement. The agreement added more than $45,590.91 to the loan principal, based on past-due interest and past-due escrow. Brooks also alleges the modification recited a $146,102.76 balloon payment due at the end of the loan term.

Plaintiffs allege all three "modifications" were actually new extensions of credit (i.e., refinances), and were therefore subject to various requirements under the Texas Constitution, many of which were not met by JPMC. *See* TEX. CONST. art. XVI, § *50(a)(6)(A)-(Q)*. Plaintiffs Hawkins and Brooks further allege their modifications resulted in interest-only and balloon-payment notes, which are prohibited. *See id.*, § *50(a)(6)(L)*. JPMC now moves to dismiss, arguing the modifications were, in fact, modifications, and therefore fully compliant with the Texas Constitution.

**Analysis**

**I. Motion to Dismiss--*Rule 12(b)(6)*--Legal Standard**

*Federal Rule of Civil Procedure 8(a)(2)* [*5] requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *FED. R. CIV. P. 8(a)(2)*. A motion under *Federal Rule of Civil Procedure 12(b)(6)* asks a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." *FED. R. CIV. P. 12(b)(6)*. The plaintiff must plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)*; *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal, 566 U.S. at 678*. Although a plaintiff's factual allegations need not establish that the defendant is probably liable, they must establish more than a "sheer possibility" that a defendant has acted unlawfully. *Id.* Determining plausibility is a "context-specific task," and must be performed in light of a court's "judicial experience and common sense." *Id. at 679*.

In deciding a motion to dismiss under *Rule 12(b)(6)*, a court generally accepts as true all factual allegations contained [*6] within the complaint. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993)*. However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)*. Although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1067*

*(5th Cir. 1994)*. In deciding a motion to dismiss, courts may consider the complaint, as well as other sources such as documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007)*.

## II. Application

Before addressing the specific arguments raised by the motion to dismiss, the Court will briefly summarize the relevant law and recent decisions in similar cases.

### A. Home Equity Lending under the Texas Constitution

In 1997, the Texas Constitution was amended, and "Texas became the last state in the nation to permit home-equity loans." *LaSalle Bank Nat'l Ass'n v. White, 246 S.W.3d 616, 618 (Tex. 2007)*. "Although home-equity [*7] lending is now constitutionally permissible, *article [XVI], section 50(a)(6) of the Texas Constitution* still places a number of limitations on such lending." *Id.* Section 50's labyrinthine provisions are nearly impossible to navigate, and impose the draconian penalty of total forfeiture upon a noncompliant lender (unless the lender cures within sixty days after being notified by the borrower). *See* TEX. CONST. art. XVI, § *50(a)(6)(Q)(x)*.

Most relevant to this suit are section 50's provisions concerning modifications and refinances. Plaintiffs argue their modifications were actually "refinances" (termed "extensions of credit") under *section 50(f)* because they "added or advanced" interest and escrow sums into new loan principal, effectively satisfying and replacing the original note. First Am. Compl. [#8] ¶¶ 70-71. Refinances are subject to various requirements outlined in *section 50(a)(6)(A)-(Q)*, most notably: (1) the lender must provide the borrower with various disclosures, TEX. CONST. art. XVI, § *50(g)*; (2) there must be a closing at "the office of the lender, an attorney at law, or a title company," *id. § 50(a)(6)(N)*; and (3) the lender and borrower must sign a written acknowledgment [*8] of the fair market value of the property on the date the refinance is made, *id. § 50(a)(6)(Q)(ix)*. Section 50 also governs repayment of extensions of credit, requiring the debt be repaid "in substantially equal successive periodic installments . . . each of which equals or exceeds the amount of accrued interest as of the date of the scheduled installment." *Id. § 50(a)(6)(L)*.

In addition to the constitutional provisions themselves, there are also regulations interpreting *section 50*. "Originally, no Texas administrative agency was empowered with rule-making authority over the [constitutional] amendments [adding *section 50*]." *Cerda v. 2004-EQR1 L.L.C., 612 F.3d 781, 786 (5th Cir. 2010)*. In spite of this apparent regulatory vacuum, four Texas agencies quickly authored an advisory commentary. *Id.* The Texas Supreme Court subsequently recognized the commentary as persuasive authority. *Id.* (citing *Stringer v. Cendant Mortg. Corp., 23 S.W.3d 353, 357 (Tex. 2000))*. Additional constitutional amendments in 2003 "authorize[d] the legislature to delegate the authority to issue interpretation of the home equity lending provisions," and official regulations have since been codified. *Tex. Bankers Ass'n v. Ass'n. of Cmty. Orgs. for Reform Now (ACORN), 303 S.W.3d 404, 407-08 (Tex. App.--Austin 2010, pet. granted)*; [*9] *see also* 7 TEX. ADMIN. CODE §§ *153.1-153.96*.

### B. Recent Cases

The parties note two recent cases which are particularly instructive because they involve almost identical allegations against different banks. Judge McBryde, at our sister court in Fort Worth, dismissed with prejudice similar claims, finding the alleged refinances were actually modifications, and therefore no constitutional violations occurred. *Sims v. Carrington Mortg. Servs., LLC, No. 4:12-CV-087-A, 889 F. Supp. 2d 883, 2012 U.S. Dist. LEXIS 119612, 2012 WL 3636884, at \*3-6, \*10 (N.D. Tex. Aug. 23, 2012)*. This Court finds *Sims* particularly instructive because the Court confronted the exact legal theory primarily advanced here, and found dismissal was warranted. *2012 U.S. Dist. LEXIS 119612, [WL] at \*6* ("Although plaintiffs advance a number of interesting theories to support their claims, they have provided the court no legal authority that would persuade the court that plaintiffs have stated a plausible claim that capitalizing past-due interest and adding that amount to the principal of a home equity loan violated the Texas Constitution.").

The second case of note is currently pending in this Court before Judge Yeakel. *Hawkins v. Wells Fargo Bank, N.A., No. 1:11-cv-00877-LY, 2012 U.S. Dist. LEXIS 186386 (W.D. Tex. Jul 6, 2012)* (order [*10] denying motion to dismiss). In *Hawkins*, Wells Fargo moved to dismiss similar claims brought against it, and the motion was referred to Magistrate Judge Andrew W.

Austin. At the time, "[n]o court ha[d] addressed the issue presented," and Magistrate Judge Austin recommended denying the motion to dismiss, based primarily on "factual questions" concerning the status of the loan agreement as a modification or refinance. *Hawkins, No. 1:11-cv-00877-LY, 2012 U.S. Dist. LEXIS 86993, *11-12 (W.D. Tex. June 21, 2012)* (Report and Recommendation). In particular, Magistrate Judge Austin declined to look at the actual loan documents at the 12(b)(6) stage. *2012 U.S. Dist. LEXIS 86993 at *12*. Judge Yeakel accepted the Report and Recommendation and denied the motion to dismiss. *Hawkins, 2012 U.S. Dist. LEXIS 186386 at *4 (W.D. Tex. July 6, 2012)* (order adopting report and recommendation, denying motion to dismiss). Though Plaintiffs naturally make much of the survival of the *Hawkins* claims, this Court places little weight on what was essentially a decision to defer adjudication on the merits, especially because this Court is free to consider the relevant loan documents in this case, as they are attached to or incorporated into the First Amended **[*11]** Complaint by reference. *See Tellabs, 551 U.S. at 322*.

**C. Plaintiffs' Loans were Modified, not Refinanced**

The critical inquiry in this case, as in *Sims* and *Hawkins*, is whether Plaintiffs' loan agreements were modifications or refinances. Also like *Sims*, the Court is convinced the agreements in this case were modifications, not refinances. *See 2012 U.S. Dist. LEXIS 119612, 2012 WL 3636884, at *4-6*.

The regulations define a modification as follows:

> A modification of a home equity loan occurs when one or more terms of an existing equity loan is modified, but the note is not satisfied and replaced. A home equity loan and a subsequent modification will be considered a single transaction. The home equity requirements of *Section 50(a)(6)* will be applied to the original loan and the subsequent modification as a single transaction.

*7 TEX. ADMIN. CODE § 153.14(2)*; *see also* 29 TEX. REG. 10257, 10259 (2004) (to be codified at *7 TEX. ADMIN. CODE §§ 153.91, .92, .94-.96*)("A refinance creates a new loan whereas a modification amends the original loan.").

Plaintiffs' loan modifications meet the regulatory definition of a modification: one or more terms were modified, but the notes were not satisfied and replaced. The modification agreements **[*12]** themselves expressly state as much. The Cusicks' modification, signed by them, states:

> Nothing in this Agreement shall be understood or construed to be a satisfied or release in whole or in part of the Loan Documents. Except as otherwise specifically provided in this Agreement, the Loan Documents will remain unchanged, and the Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

First Am. Compl. [#8-2], Ex. B, ¶ 7.

Similarly, Hawkins's modification, signed by him, states:

> ALL OTHER TERMS REMAIN UNCHANGED. Nothing in this Modification shall be understood or construed to be a satisfaction or release in whole or in part of the Loan Agreement. Except as expressly provided in this Modification, the Loan Agreement will remain unchanged and Borrower and Lender will be bound by, and comply with, all of the terms and provisions of the Loan Agreement, as amended by this Modification.

*Id.* [#8-3], Ex. C, ¶ 7.

Finally, Brooks's modification, signed by her, states:

> [N]othing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and **[*13]** that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and comply with, all of the terms and conditions of the Loan Documents.

Mot. to Dismiss [#12-4], Ex. D, ¶ 4(F). [4]

> [4] Brooks's modification agreement was only partially attached to the First Amended Complaint. However, because the document is referenced and is central to Plaintiffs claims, the Court will consider the entire document, attached to the motion to dismiss.

The modification documents clearly express the parties' intent to *modify* the loans. All three documents specifically indicate they *do not* satisfy and replace the existing loans. Accordingly, the Court finds Plaintiffs have modified, rather than refinanced, their loans. *See Sims, 2012 U.S. Dist. LEXIS 119612, 2012 WL 3636884, at *5* ("The court finds that the plain language of the 2009 and 2011 documents shows no intention by the parties to satisfy and replace the original note, causing the 2009 and 2011 transactions to fall within the definition or description of a 'modification' in *7 Tex. Admin. Code § 153.14(2)*.").

Plaintiffs argue the modifications must be considered refinances in spite of the language in the agreements themselves [*14] because they constituted an "advance of additional funds," an action "not permitted by a modification of an equity loan." *7 TEX. ADMIN. CODE § 153.14(2)(B)*. The *Sims* court considered and rejected this argument as well, noting "a common-sense reading of the term 'additional funds' would appear to contemplate money provided by the lender to the borrower over and above the amount already loaned, that the borrower could use for other purposes at his or her discretion. . . . Rolling their past-due interest into the principal in 2009 and 2011 gave plaintiffs no extra cash to do with as they wished." *2012 U.S. Dist. LEXIS 119612, 2012 WL 3636884, at *5*.

This Court agrees with the "common-sense reading" advanced in *Sims*. In this case, JPMC did not loan Plaintiffs additional funds and simply give them the option of using those funds to become current on their mortgages. Instead, JPMC agreed to modify the terms of the original loan, as indicated by the paperwork the parties signed. The amount owed by Plaintiffs did not increase under the modifications, which also suggests no additional funds were advanced. [5] This understanding is also consistent with the regulatory treatment of "the original loan and the subsequent modification [*15] as a single transaction." *7 TEX. ADMIN. CODE § 153.14(2)*.

> [5] Of course, the amount Plaintiffs owed *eventually* increased, as the higher principal continued to accrue interest after the modification. But the modification itself did not immediately increase the amount due to JPMC.

The authorities relied upon by Plaintiffs are not persuasive. First, Plaintiffs argue JPMC essentially "used the wrong form," and therefore the refinance should be treated as a modification. *Adams v. Ameriquest Mortg. Co. (In re Adams), 307 B.R. 549, 552-53 (Bankr. N.D. Tex. 2004)*. But *In re Adams* is distinguishable because both parties there agreed the transaction at issue was actually a refinance, the parties simply disputed whether it was a refinance of a home equity loan. *Id.* Moreover, the court specifically found both parties intended the loan at issue to be a refinance of a home equity loan. *Id. at 553*. This case is not one where the bank seeks to avoid the application of *section 50(a)(6)* at all, but rather one where the parties clearly understood they were modifying a home equity loan--a loan which had already complied with the strictures of *section 50(a)(6)*.

Second, Plaintiffs argue *In re Lovelace* is "an informative [*16] parallel" to this case. *Lovelace v. USAA Fed. Sav. Bank (In re Lovelace), 443 B.R. 494 (Bankr. W.D. Tex. 2011)*. In *In re Lovelace*, the homeowners sought to acquire a second home equity loan from the defendant, despite already having a home equity loan from another bank. *Id. at 496*. The court held the defendant's lien was void because the Texas Constitution only permits a single home equity loan to exist on a given property. *Id. at 500*. Unlike *In re Lovelace*, this case does not present two competing banks, or even two competing home equity loans. Instead, this case presents a single lender which modified its home equity loan (the only home equity loan on the property) through a proper contractual arrangement with the borrowers. Additionally, *In re Lovelace* undermines Plaintiffs' "advance of funds" argument above, as the second home equity loan was classified as an extension of credit (i.e., an advance of funds) because funds were deposited in the borrowers' bank account for use at their discretion, not simply added on to existing principal. *Id. at 496*.

### D. Specific Provision Violations

Having concluded Plaintiffs' loan modifications were, as advertised, modifications rather than refinances, [*17] the Court now turns to Plaintiffs' specific allegations under the Texas Constitution. As noted above, the addition of past-due interest to the principal balance

12-12020-mg    Doc 7450-2    Filed 08/28/14    Entered 08/28/14 11:46:38    Exhibit B
Pg 6 of 7

Page 6
2013 U.S. Dist. LEXIS 24927, *17

of the loans does not constitute an advance of funds, and therefore provides Plaintiffs no basis for recovery under *section 50*. JPMC was also not required to reissue the section 50(g) disclosures after the modification. *Sims, 2012 U.S. Dist. LEXIS 119612, 2012 WL 3636884, at *10* (holding "*sections 50(f)* and *(g)* are inapplicable" to modifications). Nor was JPMC required to hold a second closing event, or execute a second written acknowledgment of the fair market value of the property, as the original loan and modification are treated as a single transaction. *See 7 TEX. ADMIN. CODE § 153.14(2)*. It simply makes no sense to require the parties to repeat all the formalities of an initial home equity loan whenever they seek to modify the terms of the loan already formally executed.

Assuming Plaintiffs assert JPMC also violated *section 50(a)(6)(B)*, this claim also fails. *Section 50(a)(6)(B)* prohibits a home equity loan from exceeding eighty percent of the fair market value of the homestead "on the date the extension of credit is made." *TEX. CONST. art. XVI, § 50(a)(6)(B)*. [*18] As the *Sims* court held, "a straightforward consideration of the text of *section 50* and the administrative regulations all lead to but one reasonable conclusion: the phrase 'on the date the extension of credit is made' refers to the date of the original home equity-loan and not to each subsequent modification." *2012 U.S. Dist. LEXIS 119612, 2012 WL 3636884, at *7*. JPMC's obligation is to ensure the home equity loan, when originally made, represents a permissible loan-to-value ratio. Because Plaintiffs do not allege their original loans exceeded eighty percent of the fair market value of their homes at the time the loans were made, they fail to state a violation of *section 50(a)(6)(B)*.

Hawkins' temporary interest-only mortgage payment does not violate *section 50(a)(6)(L)*. That section requires installment payments to "equal[] or exceed[] the amount of accrued interest as of the date of the scheduled installment." *TEX. CONST. art. XVI, § 50(a)(6)(L)(I)*. Hawkins' loan allowed for a temporary five-year term of interest-only payments, after which the loan payments would readjust to add back in principal reduction over the remaining life of the loan, resulting in an eventual payoff under the schedule. The temporary interest-only [*19] payments "equal[ed]" the amount of accrued interest as of the date of the scheduled installment, and therefore complied with the plain language of *section 50(a)(6)(L)*. Additionally, the regulations suggest this provision was primarily intended to "prohibit[] balloon payments." *7 TEX. ADMIN. CODE § 153.11(3)*.

Finally, Plaintiff Brooks argues her loan included an impermissible balloon payment in violation of *section 50(a)(6)(L)*. Brooks' modification agreement plainly states: "Notwithstanding the foregoing schedule, I agree that unless sooner paid, I will have a final balloon payment in the amount of $146,102.76 due and payable on the New Maturity Date." Mot. to Dismiss [#12-4], Ex. D, ¶ 3(C). *Section 50(a)(6)(L)*'s requirement of "substantially equal successive periodic installments" "prohibits balloon payments." *TEX. CONST. art. XVI, § 50(a)(6)(L)*; *7 TEX. ADMIN. CODE § 153.11(3)*. Brooks's balloon payment thus appears to be a clear violation of *section 50(a)(6)(L)*, and JPMC does not address the legality of the balloon payment in its Response.

There is one catch, however. JPMC's standard security agreement contains a "savings clause," which allows JPMC to reform loan documents that violate [*20] *section 50* by providing written notice to the borrower. JPMC must also receive notice of the alleged violation. Plaintiff Brooks does not allege JPMC was ever given notice of the impermissible balloon payment in her loan documents. Additionally, the allegation appears for the first time in the First Amended Complaint, filed December 7, 2012, which is the first document possibly providing such notice to JPMC. Absent allegations JPMC was provided with notice of the impermissible balloon payment, given an opportunity to cure the defect through its savings clause, and refused to do so, Plaintiffs fail to state a claim for violation of *section 50(a)(6)(L)*.

**Conclusion**

Plaintiffs' complaint fails because its core premise--the modifications willingly entered into by Plaintiffs were actually refinances in disguise--is wrong. The bulk of Plaintiffs' claims fail because the provisions of *section 50* JPMC allegedly violated do not apply to modifications. With respect to the provisions that do apply, those concerning interest-only and balloon payments, Plaintiffs also fail to state a claim based on the facts alleged in the First Amended Complaint. Although Plaintiffs offer a detailed and sweeping interpretation [*21] of *section 50*, no case cited by Plaintiffs actually supports the theory they put forward. This is unsurprising given the seemingly inequitable result Plaintiffs seek. [6] The Court must therefore dismiss this case for failing to

state any claim upon which relief can be granted. Additionally, because Plaintiffs have already amended their complaint once, and their claims rest on erroneous legal theories, the Court sees no reason to grant leave to amend again at this time.

6    Though the phrase is sometimes used too cavalierly, this lawsuit truly is an example of the phrase "no good deed goes unpunished." Plaintiffs, on the verge of losing their homes, sought modifications from the bank. The bank agreed to modify the loans, avoiding foreclosure and keeping roofs over Plaintiffs' heads. Plaintiffs respond by suing the bank and demanding a free home because of the modifications they requested and agreed to. Though Plaintiffs' eyes are blind to the alternate meaning of *equity* in the term "home equity loan," the law in Texas is not.

Accordingly,

   IT IS ORDERED that Defendant JPMorgan Chase Bank, N.A.'s Motion to Dismiss [#12] is GRANTED;

   IT IS FINALLY ORDERED that Plaintiffs' claims are DISMISSED WITHOUT **[*22]** PREJUDICE.

SIGNED this the 28th day of January 2013.

/s/ Sam Sparks

SAM SPARKS

UNITED STATES DISTRICT JUDGE