

1 of 1 DOCUMENT

LexisNexis (R) Texas Annotated Statutes
Copyright © 2014 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group
All rights reserved.

*** This document is current through the 2013 3rd Called Session ***
*** Federal case annotations: February 18, 2014 postings on Lexis ***
*** State case annotations: February 19, 2014 postings on Lexis ***

CONSTITUTION OF THE STATE OF TEXAS 1876
ARTICLE XVI.  GENERAL PROVISIONS

**GO TO TEXAS CODE ARCHIVE DIRECTORY**

*Tex. Const. Art. XVI, § 50  (2014)*

§ 50.  Homestead; Protection from Forced Sale; Mortgages, Trust Deeds, and Liens

  (a) The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for:

     (1) the purchase money thereof, or a part of such purchase money;

     (2) the taxes due thereon;

     (3) an owelty of partition imposed against the entirety of the property by a court order or by a written agreement of the parties to the partition, including a debt of one spouse in favor of the other spouse resulting from a division or an award of a family homestead in a divorce proceeding;

     (4) the refinance of a lien against a homestead, including a federal tax lien resulting from the tax debt of both spouses, if the homestead is a family homestead, or from the tax debt of the owner;

     (5) work and material used in constructing new improvements thereon, if contracted for in writing, or work and material used to repair or renovate existing improvements thereon if:

        (A) the work and material are contracted for in writing, with the consent of both spouses, in the case of a family homestead, given in the same manner as is required in making a sale and conveyance of the homestead;

        (B) the contract for the work and material is not executed by the owner or the owner's spouse before the fifth day after the owner makes written application for any extension of credit for the work and material, unless the work and material are necessary to complete immediate repairs to conditions on the homestead property that materially affect the health or safety of the owner or person residing in the homestead and the owner of the homestead acknowledges such in writing;

(C) the contract for the work and material expressly provides that the owner may rescind the contract without penalty or charge within three days after the execution of the contract by all parties, unless the work and material are necessary to complete immediate repairs to conditions on the homestead property that materially affect the health or safety of the owner or person residing in the homestead and the owner of the homestead acknowledges such in writing; and

(D) the contract for the work and material is executed by the owner and the owner's spouse only at the office of a third-party lender making an extension of credit for the work and material, an attorney at law, or a title company;

(6) an extension of credit that:

(A) is secured by a voluntary lien on the homestead created under a written agreement with the consent of each owner and each owner's spouse;

(B) is of a principal amount that when added to the aggregate total of the outstanding principal balances of all other indebtedness secured by valid encumbrances of record against the homestead does not exceed 80 percent of the fair market value of the homestead on the date the extension of credit is made;

(C) is without recourse for personal liability against each owner and the spouse of each owner, unless the owner or spouse obtained the extension of credit by actual fraud;

(D) is secured by a lien that may be foreclosed upon only by a court order;

(E) does not require the owner or the owner's spouse to pay, in addition to any interest, fees to any person that are necessary to originate, evaluate, maintain, record, insure, or service the extension of credit that exceed, in the aggregate, three percent of the original principal amount of the extension of credit;

(F) is not a form of open-end account that may be debited from time to time or under which credit may be extended from time to time unless the open-end account is a home equity line of credit;

(G) is payable in advance without penalty or other charge;

(H) is not secured by any additional real or personal property other than the homestead;

(I) is not secured by homestead property that on the date of closing is designated for agricultural use as provided by statutes governing property tax, unless such homestead property is used primarily for the production of milk;

(J) may not be accelerated because of a decrease in the market value of the homestead or because of the owner's default under other indebtedness not secured by a prior valid encumbrance against the homestead;

(K) is the only debt secured by the homestead at the time the extension of credit is made unless the other debt was made for a purpose described by Subsections (a)(1)--(a)(5) or Subsection (a)(8) of this section;

(L) is scheduled to be repaid:

(i) in substantially equal successive periodic installments, not more often than every 14 days and not less often than monthly, beginning no later than two months from the date the extension of credit is made, each of which equals or exceeds the amount of accrued interest as of the date of the scheduled installment; or

(ii) if the extension of credit is a home equity line of credit, in periodic payments described under Subsection (t)(8) of this section;

(M) is closed not before:

(i) the 12th day after the later of the date that the owner of the homestead submits a loan application to the lender for the extension of credit or the date that the lender provides the owner a copy of the notice prescribed by Subsection (g) of this section;

(ii) one business day after the date that the owner of the homestead receives a copy of the loan application if not previously provided and a final itemized disclosure of the actual fees, points, interest, costs, and charges that will be charged at closing. If a bona fide emergency or another good cause exists and the lender obtains the written consent of the owner, the lender may provide the documentation to the owner or the lender may modify previously provided documentation on the date of closing; and

(iii) the first anniversary of the closing date of any other extension of credit described by Subsection (a)(6) of this section secured by the same homestead property, except a refinance described by Paragraph (Q)(x)(f) of this subdivision, unless the owner on oath requests an earlier closing due to a state of emergency that:

(a) has been declared by the president of the United States or the governor as provided by law; and

(b) applies to the area where the homestead is located;

(N) is closed only at the office of the lender, an attorney at law, or a title company;

(O) permits a lender to contract for and receive any fixed or variable rate of interest authorized under statute;

(P) is made by one of the following that has not been found by a federal regulatory agency to have engaged in the practice of refusing to make loans because the applicants for the loans reside or the property proposed to secure the loans is located in a certain area:

(i) a bank, savings and loan association, savings bank, or credit union doing business under the laws of this state or the United States;

(ii) a federally chartered lending instrumentality or a person approved as a mortgagee by the United States government to make federally insured loans;

(iii) a person licensed to make regulated loans, as provided by statute of this state;

(iv) a person who sold the homestead property to the current owner and who provided all or part of the financing for the purchase;

(v) a person who is related to the homestead property owner within the second degree of affinity or consanguinity; or

(vi) a person regulated by this state as a mortgage broker; and

(Q) is made on the condition that:

(i) the owner of the homestead is not required to apply the proceeds of the extension of credit to repay another debt except debt secured by the homestead or debt to another lender;

(ii) the owner of the homestead not assign wages as security for the extension of credit;

(iii) the owner of the homestead not sign any instrument in which blanks relating to substantive terms of agreement are left to be filled in;

(iv) the owner of the homestead not sign a confession of judgment or power of attorney to the lender or to a third person to confess judgment or to appear for the owner in a judicial proceeding;

(v) at the time the extension of credit is made, the owner of the homestead shall receive a copy of the final loan application and all executed documents signed by the owner at closing related to the extension of credit;

(vi) the security instruments securing the extension of credit contain a disclosure that the extension of credit is the type of credit defined by *Section 50(a)(6), Article XVI, Texas Constitution*;

(vii) within a reasonable time after termination and full payment of the extension of credit, the lender cancel and return the promissory note to the owner of the homestead and give the owner, in recordable form, a release of the lien securing the extension of credit or a copy of an endorsement and assignment of the lien to a lender that is refinancing the extension of credit;

(viii) the owner of the homestead and any spouse of the owner may, within three days after the extension of credit is made, rescind the extension of credit without penalty or charge;

(ix) the owner of the homestead and the lender sign a written acknowledgment as to the fair market value of the homestead property on the date the extension of credit is made;

(x) except as provided by Subparagraph (xi) of this paragraph, the lender or any holder of the note for the extension of credit shall forfeit all principal and interest of the extension of credit if the lender or holder fails to comply with the lender's or holder's obligations under the extension of credit and fails to correct the failure to comply not later than the 60th day after the date the lender or holder is notified by the borrower of the lender's failure to comply by:

(a) paying to the owner an amount equal to any overcharge paid by the owner under or related to the extension of credit if the owner has paid an amount that exceeds an amount stated in the applicable Paragraph (E), (G), or (O) of this subdivision;

(b) sending the owner a written acknowledgement that the lien is valid only in the amount that the extension of credit does not exceed the percentage described by Paragraph (B) of this subdivision, if applicable, or is not secured by property described under Paragraph (H) or (I) of this subdivision, if applicable;

(c) sending the owner a written notice modifying any other amount, percentage, term, or other provision prohibited by this section to a permitted amount, percentage, term, or other provision and adjusting the account of the borrower to ensure that the borrower is not required to pay more than an amount permitted by this section and is not subject to any other term or provision prohibited by this section;

(d) delivering the required documents to the borrower if the lender fails to comply with Subparagraph (v) of this paragraph or obtaining the appropriate signatures if the lender fails to comply with Subparagraph (ix) of this paragraph;

(e) sending the owner a written acknowledgement, if the failure to comply is prohibited by Paragraph (K) of this subdivision, that the accrual of interest and all of the owner's obligations under the extension of credit are abated while any prior lien prohibited under Paragraph (K) remains secured by the homestead; or

(f) if the failure to comply cannot be cured under Subparagraphs (x)(a)--(e) of this paragraph, curing the failure to comply by a refund or credit to the owner of $ 1,000 and offering the owner the right to refinance the extension of credit with the lender or holder for the remaining term of the loan at no cost to the owner on the same terms, including interest, as the original extension of credit with any modifications necessary to comply with this section or on terms on which the owner and the lender or holder otherwise agree that comply with this section; and

(xi) the lender or any holder of the note for the extension of credit shall forfeit all principal and interest of the extension of credit if the extension of credit is made by a person other than a person described under Paragraph (P) of this subdivision or if the lien was not created under a written agreement with the consent of each owner and each owner's spouse, unless each owner and each owner's spouse who did not initially consent subsequently consents;

(7) a reverse mortgage; or

(8) the conversion and refinance of a personal property lien secured by a manufactured home to a lien on real property, including the refinance of the purchase price of the manufactured home, the cost of installing the manufactured home on the real property, and the refinance of the purchase price of the real property.

(b) An owner or claimant of the property claimed as homestead may not sell or abandon the homestead without the consent of each owner and the spouse of each owner, given in such manner as may be prescribed by law.

(c) No mortgage, trust deed, or other lien on the homestead shall ever be valid unless it secures a debt described by this section, whether such mortgage, trust deed, or other lien, shall have been created by the owner alone, or together with his or her spouse, in case the owner is married. All pretended sales of the homestead involving any condition of defeasance shall be void.

(d) A purchaser or lender for value without actual knowledge may conclusively rely on an affidavit that designates other property as the homestead of the affiant and that states that the property to be conveyed or encumbered is not the homestead of the affiant.

(e) A refinance of debt secured by a homestead and described by any subsection under Subsections (a)(1)--(a)(5) that includes the advance of additional funds may not be secured by a valid lien against the homestead unless:

(1) the refinance of the debt is an extension of credit described by Subsection (a)(6) of this section; or

(2) the advance of all the additional funds is for reasonable costs necessary to refinance such debt or for a purpose described by Subsection (a)(2), (a)(3), or (a)(5) of this section.

(f) A refinance of debt secured by the homestead, any portion of which is an extension of credit described by Subsection (a)(6) of this section, may not be secured by a valid lien against the homestead unless the refinance of the debt is an extension of credit described by Subsection (a)(6) or (a)(7) of this section.

(g) An extension of credit described by Subsection (a)(6) of this section may be secured by a valid lien against homestead property if the extension of credit is not closed before the 12th day after the lender provides the owner with the following written notice on a separate instrument:

"NOTICE CONCERNING EXTENSIONS OF CREDIT DEFINED BY SECTION 50(a)(6), ARTICLE XVI, TEXAS CONSTITUTION:

"*SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION* ALLOWS CERTAIN LOANS TO BE SECURED AGAINST THE EQUITY IN YOUR HOME. SUCH LOANS ARE COMMONLY KNOWN AS EQUITY LOANS. IF YOU DO NOT REPAY THE LOAN OR IF YOU FAIL TO MEET THE TERMS OF THE LOAN, THE LENDER MAY FORECLOSE AND SELL YOUR HOME. THE CONSTITUTION PROVIDES THAT:
  "(A) THE LOAN MUST BE VOLUNTARILY CREATED WITH THE CONSENT OF EACH OWNER OF YOUR HOME AND EACH OWNER'S SPOUSE;
  "(B) THE PRINCIPAL LOAN AMOUNT AT THE TIME THE LOAN IS MADE MUST NOT EXCEED AN AMOUNT THAT, WHEN ADDED TO THE PRINCIPAL BALANCES OF ALL OTHER LIENS AGAINST YOUR HOME, IS MORE THAN 80 PERCENT OF THE FAIR MARKET VALUE

OF YOUR HOME;

"(C) THE LOAN MUST BE WITHOUT RECOURSE FOR PERSONAL LIABILITY AGAINST YOU AND YOUR SPOUSE UNLESS YOU OR YOUR SPOUSE OBTAINED THIS EXTENSION OF CREDIT BY ACTUAL FRAUD;

"(D) THE LIEN SECURING THE LOAN MAY BE FORECLOSED UPON ONLY WITH A COURT ORDER;

"(E) FEES AND CHARGES TO MAKE THE LOAN MAY NOT EXCEED 3 PERCENT OF THE LOAN AMOUNT;

"(F) THE LOAN MAY NOT BE AN OPEN-END ACCOUNT THAT MAY BE DEBITED FROM TIME TO TIME OR UNDER WHICH CREDIT MAY BE EXTENDED FROM TIME TO TIME UNLESS IT IS A HOME EQUITY LINE OF CREDIT;

"(G) YOU MAY PREPAY THE LOAN WITHOUT PENALTY OR CHARGE;

"(H) NO ADDITIONAL COLLATERAL MAY BE SECURITY FOR THE LOAN;

"(I) THE LOAN MAY NOT BE SECURED BY HOMESTEAD PROPERTY THAT IS DESIGNATED FOR AGRICULTURAL USE AS OF THE DATE OF CLOSING, UNLESS THE AGRICULTURAL HOMESTEAD PROPERTY IS USED PRIMARILY FOR THE PRODUCTION OF MILK;

"(J) YOU ARE NOT REQUIRED TO REPAY THE LOAN EARLIER THAN AGREED SOLELY BECAUSE THE FAIR MARKET VALUE OF YOUR HOME DECREASES OR BECAUSE YOU DEFAULT ON ANOTHER LOAN THAT IS NOT SECURED BY YOUR HOME;

"(K) ONLY ONE LOAN DESCRIBED BY SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION MAY BE SECURED WITH YOUR HOME AT ANY GIVEN TIME;

"(L) THE LOAN MUST BE SCHEDULED TO BE REPAID IN PAYMENTS THAT EQUAL OR EXCEED THE AMOUNT OF ACCRUED INTEREST FOR EACH PAYMENT PERIOD;

"(M) THE LOAN MAY NOT CLOSE BEFORE 12 DAYS AFTER YOU SUBMIT A LOAN APPLICATION TO THE LENDER OR BEFORE 12 DAYS AFTER YOU RECEIVE THIS NOTICE, WHICHEVER DATE IS LATER; AND MAY NOT WITHOUT YOUR CONSENT CLOSE BEFORE ONE BUSINESS DAY AFTER THE DATE ON WHICH YOU RECEIVE A COPY OF YOUR LOAN APPLICATION IF NOT PREVIOUSLY PROVIDED AND A FINAL ITEMIZED DISCLOSURE OF THE ACTUAL FEES, POINTS, INTEREST, COSTS, AND CHARGES THAT WILL BE CHARGED AT CLOSING; AND IF YOUR HOME WAS SECURITY FOR THE SAME TYPE OF LOAN WITHIN THE PAST YEAR, A NEW LOAN SECURED BY THE SAME PROPERTY MAY NOT CLOSE BEFORE ONE YEAR HAS PASSED FROM THE CLOSING DATE OF THE OTHER LOAN, UNLESS ON OATH YOU REQUEST AN EARLIER CLOSING DUE TO A DECLARED STATE OF EMERGENCY;

"(N) THE LOAN MAY CLOSE ONLY AT THE OFFICE OF THE LENDER, TITLE COMPANY, OR AN ATTORNEY AT LAW;

"(O) THE LENDER MAY CHARGE ANY FIXED OR VARIABLE RATE OF INTEREST AUTHORIZED BY STATUTE;

"(P) ONLY A LAWFULLY AUTHORIZED LENDER MAY MAKE LOANS DESCRIBED BY *SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION*;

"(Q) LOANS DESCRIBED BY SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION MUST:

"(1) NOT REQUIRE YOU TO APPLY THE PROCEEDS TO ANOTHER DEBT EXCEPT A DEBT THAT IS SECURED BY YOUR HOME OR OWED TO ANOTHER LENDER;

"(2) NOT REQUIRE THAT YOU ASSIGN WAGES AS SECURITY;

"(3) NOT REQUIRE THAT YOU EXECUTE INSTRUMENTS WHICH HAVE BLANKS FOR SUBSTANTIVE TERMS OF AGREEMENT LEFT TO BE FILLED IN;

"(4) NOT REQUIRE THAT YOU SIGN A CONFESSION OF JUDGMENT OR POWER OF ATTORNEY TO ANOTHER PERSON TO CONFESS JUDGMENT OR APPEAR IN A LEGAL PROCEEDING ON YOUR BEHALF;

Tex. Const. Art. XVI, § 50

"(5) PROVIDE THAT YOU RECEIVE A COPY OF YOUR FINAL LOAN APPLICATION AND ALL EXECUTED DOCUMENTS YOU SIGN AT CLOSING;

"(6) PROVIDE THAT THE SECURITY INSTRUMENTS CONTAIN A DISCLOSURE THAT THIS LOAN IS A LOAN DEFINED BY SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION;

"(7) PROVIDE THAT WHEN THE LOAN IS PAID IN FULL, THE LENDER WILL SIGN AND GIVE YOU A RELEASE OF LIEN OR AN ASSIGNMENT OF THE LIEN, WHICHEVER IS APPROPRIATE;

"(8) PROVIDE THAT YOU MAY, WITHIN 3 DAYS AFTER CLOSING, RESCIND THE LOAN WITHOUT PENALTY OR CHARGE;

"(9) PROVIDE THAT YOU AND THE LENDER ACKNOWLEDGE THE FAIR MARKET VALUE OF YOUR HOME ON THE DATE THE LOAN CLOSES; AND

"(10) PROVIDE THAT THE LENDER WILL FORFEIT ALL PRINCIPAL AND INTEREST IF THE LENDER FAILS TO COMPLY WITH THE LENDER'S OBLIGATIONS UNLESS THE LENDER CURES THE FAILURE TO COMPLY AS PROVIDED BY SECTION 50(a)(6)(Q)(x), ARTICLE XVI, OF THE TEXAS CONSTITUTION; AND

"(R) IF THE LOAN IS A HOME EQUITY LINE OF CREDIT:

"(1) YOU MAY REQUEST ADVANCES, REPAY MONEY, AND REBORROW MONEY UNDER THE LINE OF CREDIT;

"(2) EACH ADVANCE UNDER THE LINE OF CREDIT MUST BE IN AN AMOUNT OF AT LEAST $ 4,000;

"(3) YOU MAY NOT USE A CREDIT CARD, DEBIT CARD, OR SIMILAR DEVICE, OR PREPRINTED CHECK THAT YOU DID NOT SOLICIT, TO OBTAIN ADVANCES UNDER THE LINE OF CREDIT;

"(4) ANY FEES THE LENDER CHARGES MAY BE CHARGED AND COLLECTED ONLY AT THE TIME THE LINE OF CREDIT IS ESTABLISHED AND THE LENDER MAY NOT CHARGE A FEE IN CONNECTION WITH ANY ADVANCE;

"(5) THE MAXIMUM PRINCIPAL AMOUNT THAT MAY BE EXTENDED, WHEN ADDED TO ALL OTHER DEBTS SECURED BY YOUR HOME, MAY NOT EXCEED 80 PERCENT OF THE FAIR MARKET VALUE OF YOUR HOME ON THE DATE THE LINE OF CREDIT IS ESTABLISHED;

"(6) IF THE PRINCIPAL BALANCE UNDER THE LINE OF CREDIT AT ANY TIME EXCEEDS 50 PERCENT OF THE FAIR MARKET VALUE OF YOUR HOME, AS DETERMINED ON THE DATE THE LINE OF CREDIT IS ESTABLISHED, YOU MAY NOT CONTINUE TO REQUEST ADVANCES UNDER THE LINE OF CREDIT UNTIL THE BALANCE IS LESS THAN 50 PERCENT OF THE FAIR MARKET VALUE; AND

"(7) THE LENDER MAY NOT UNILATERALLY AMEND THE TERMS OF THE LINE OF CREDIT.

"THIS NOTICE IS ONLY A SUMMARY OF YOUR RIGHTS UNDER THE TEXAS CONSTITUTION. YOUR RIGHTS ARE GOVERNED BY SECTION 50, ARTICLE XVI, OF THE TEXAS CONSTITUTION, AND NOT BY THIS NOTICE."

If the discussions with the borrower are conducted primarily in a language other than English, the lender shall, before closing, provide an additional copy of the notice translated into the written language in which the discussions were conducted.

(h) A lender or assignee for value may conclusively rely on the written acknowledgment as to the fair market value of the homestead property made in accordance with Subsection (a)(6)(Q)(ix) of this section if:

(1) the value acknowledged to is the value estimate in an appraisal or evaluation prepared in accordance with a state or federal requirement applicable to an extension of credit under Subsection (a)(6); and

(2) the lender or assignee does not have actual knowledge at the time of the payment of value or advance of funds by the lender or assignee that the fair market value stated in the written acknowledgment was incorrect.

(i) This subsection shall not affect or impair any right of the borrower to recover damages from the lender or assignee under applicable law for wrongful foreclosure. A purchaser for value without actual knowledge may conclusively presume that a lien securing an extension of credit described by Subsection (a)(6) of this section was a valid lien securing the extension of credit with homestead property if:

(1) the security instruments securing the extension of credit contain a disclosure that the extension of credit secured by the lien was the type of credit defined by *Section 50(a)(6), Article XVI, Texas Constitution*;

(2) the purchaser acquires the title to the property pursuant to or after the foreclosure of the voluntary lien; and

(3) the purchaser is not the lender or assignee under the extension of credit.

(j) Subsection (a)(6) and Subsections (e)--(i) of this section are not severable, and none of those provisions would have been enacted without the others. If any of those provisions are held to be preempted by the laws of the United States, all of those provisions are invalid. This subsection shall not apply to any lien or extension of credit made after January 1, 1998, and before the date any provision under Subsection (a)(6) or Subsections (e)--(i) is held to be preempted.

(k) "Reverse mortgage" means an extension of credit:

(1) that is secured by a voluntary lien on homestead property created by a written agreement with the consent of each owner and each owner's spouse;

(2) that is made to a person who is or whose spouse is 62 years or older;

(3) that is made without recourse for personal liability against each owner and the spouse of each owner;

(4) under which advances are provided to a borrower:

(A) based on the equity in a borrower's homestead; or

(B) for the purchase of homestead property that the borrower will occupy as a principal residence;

(5) that does not permit the lender to reduce the amount or number of advances because of an adjustment in the interest rate if periodic advances are to be made;

(6) that requires no payment of principal or interest until:

(A) all borrowers have died;

(B) the homestead property securing the loan is sold or otherwise transferred;

(C) all borrowers cease occupying the homestead property for a period of longer than 12 consecutive months without prior written approval from the lender;

(C-1) if the extension of credit is used for the purchase of homestead property, the borrower fails to timely occupy the homestead property as the borrower's principal residence within a specified period after the date the extension of credit is made that is stipulated in the written agreement creating the lien on the property; or

(D) the borrower:

(i) defaults on an obligation specified in the loan documents to repair and maintain, pay taxes and assessments on, or insure the homestead property;

(ii) commits actual fraud in connection with the loan; or

(iii) fails to maintain the priority of the lender's lien on the homestead property, after the lender gives notice to the borrower, by promptly discharging any lien that has priority or may obtain priority over the lender's lien within 10 days after the date the borrower receives the notice, unless the borrower:

(a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to the lender;

(b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings so as to prevent the enforcement of the lien or forfeiture of any part of the homestead property; or

(c) secures from the holder of the lien an agreement satisfactory to the lender subordinating the lien to all amounts secured by the lender's lien on the homestead property;

(7) that provides that if the lender fails to make loan advances as required in the loan documents and if the lender fails to cure the default as required in the loan documents after notice from the borrower, the lender forfeits all principal and interest of the reverse mortgage, provided, however, that this subdivision does not apply when a governmental agency or instrumentality takes an assignment of the loan in order to cure the default;

(8) that is not made unless the prospective borrower and the spouse of the prospective borrower attest in writing that the prospective borrower and the prospective borrower's spouse received counseling regarding the advisability and availability of reverse mortgages and other financial alternatives that was completed not earlier than the 180th day nor later than the 5th day before the date the extension of credit is closed;

(9) that is not closed before the 12th day after the date the lender provides to the prospective borrower the following written notice on a separate instrument, which the lender or originator and the borrower must sign for the notice to take effect:


"IMPORTANT NOTICE TO BORROWERS RELATED TO YOUR REVERSE MORTGAGE

"UNDER THE TEXAS TAX CODE, CERTAIN ELDERLY PERSONS MAY DEFER THE COLLECTION OF PROPERTY TAXES ON THEIR RESIDENCE HOMESTEAD.  BY RECEIVING THIS REVERSE MORTGAGE YOU MAY BE REQUIRED TO FORGO ANY PREVIOUSLY APPROVED DEFERRAL OF PROPERTY TAX COLLECTION AND YOU MAY BE REQUIRED TO PAY PROPERTY TAXES ON AN ANNUAL BASIS ON THIS PROPERTY.

"THE LENDER MAY FORECLOSE THE REVERSE MORTGAGE AND YOU MAY LOSE YOUR HOME IF:

"(A) YOU DO NOT PAY THE TAXES OR OTHER ASSESSMENTS ON THE HOME EVEN IF YOU ARE ELIGIBLE TO DEFER PAYMENT OF PROPERTY TAXES;

"(B) YOU DO NOT MAINTAIN AND PAY FOR PROPERTY INSURANCE ON THE HOME AS REQUIRED BY THE LOAN DOCUMENTS;

"(C) YOU FAIL TO MAINTAIN THE HOME IN A STATE OF GOOD CONDITION AND REPAIR;

"(D) YOU CEASE OCCUPYING THE HOME FOR A PERIOD LONGER THAN 12 CONSECUTIVE MONTHS WITHOUT THE PRIOR WRITTEN APPROVAL FROM THE LENDER OR, IF THE EXTENSION OF CREDIT IS USED FOR THE PURCHASE OF THE HOME, YOU FAIL TO TIMELY OCCUPY THE HOME AS YOUR PRINCIPAL RESIDENCE WITHIN A PERIOD OF TIME AFTER THE EXTENSION OF CREDIT IS MADE THAT IS STIPULATED IN THE WRITTEN AGREEMENT CREATING THE LIEN ON THE HOME;

"(E) YOU SELL THE HOME OR OTHERWISE TRANSFER THE HOME WITHOUT PAYING OFF THE LOAN;

"(F) ALL BORROWERS HAVE DIED AND THE LOAN IS NOT REPAID;

"(G) YOU COMMIT ACTUAL FRAUD IN CONNECTION WITH THE LOAN; OR

"(H) YOU FAIL TO MAINTAIN THE PRIORITY OF THE LENDER'S LIEN ON THE HOME, AFTER THE LENDER GIVES NOTICE TO YOU, BY PROMPTLY DISCHARGING ANY LIEN THAT HAS PRIORITY OR MAY OBTAIN PRIORITY OVER THE LENDER'S LIEN WITHIN 10 DAYS AFTER THE DATE YOU RECEIVE THE NOTICE, UNLESS YOU:

"(1) AGREE IN WRITING TO THE PAYMENT OF THE OBLIGATION SECURED BY THE LIEN IN A MANNER ACCEPTABLE TO THE LENDER;

"(2) CONTEST IN GOOD FAITH THE LIEN BY, OR DEFEND AGAINST ENFORCEMENT OF THE LIEN IN, LEGAL PROCEEDINGS SO AS TO PREVENT THE ENFORCEMENT OF THE LIEN OR FORFEITURE OF ANY PART OF THE HOME; OR

"(3) SECURE FROM THE HOLDER OF THE LIEN AN AGREEMENT SATISFACTORY TO THE LENDER SUBORDINATING THE LIEN TO ALL AMOUNTS SECURED BY THE LENDER'S LIEN ON THE HOME.

"IF A GROUND FOR FORECLOSURE EXISTS, THE LENDER MAY NOT COMMENCE FORECLOSURE UNTIL THE LENDER GIVES YOU WRITTEN NOTICE BY MAIL THAT A GROUND FOR FORECLOSURE EXISTS AND GIVES YOU AN OPPORTUNITY TO REMEDY THE CONDITION CREATING THE GROUND FOR FORECLOSURE OR TO PAY THE REVERSE MORTGAGE DEBT WITHIN THE TIME PERMITTED BY *SECTION 50(k)(10), ARTICLE XVI, OF THE TEXAS CONSTITUTION.* THE LENDER MUST OBTAIN A COURT ORDER FOR FORECLOSURE EXCEPT THAT A COURT ORDER IS NOT REQUIRED IF THE FORECLOSURE OCCURS BECAUSE:

"(1) ALL BORROWERS HAVE DIED; OR

"(2) THE HOMESTEAD PROPERTY SECURING THE LOAN IS SOLD OR OTHERWISE TRANSFERRED."

"YOU SHOULD CONSULT WITH YOUR HOME COUNSELOR OR AN ATTORNEY IF YOU HAVE ANY CONCERNS ABOUT THESE OBLIGATIONS BEFORE YOU CLOSE YOUR REVERSE MORTGAGE LOAN.  TO LOCATE AN ATTORNEY IN YOUR AREA, YOU MAY WISH TO CONTACT THE STATE BAR OF TEXAS."

"THIS NOTICE IS ONLY A SUMMARY OF YOUR RIGHTS UNDER THE TEXAS CONSTITUTION. YOUR RIGHTS ARE GOVERNED IN PART BY *SECTION 50, ARTICLE XVI, OF THE TEXAS CONSTITUTION*, AND NOT BY THIS NOTICE."

(10) that does not permit the lender to commence foreclosure until the lender gives notice to the borrower, in the manner provided for a notice by mail related to the foreclosure of liens under Subsection (a)(6) of this section, that a ground for foreclosure exists and gives the borrower at least 30 days, or at least 20 days in the event of a default under Subdivision (6)(D)(iii) of this subsection, to:

(A) remedy the condition creating the ground for foreclosure;

(B) pay the debt secured by the homestead property from proceeds of the sale of the homestead property by the borrower or from any other sources; or

(C) convey the homestead property to the lender by a deed in lieu of foreclosure; and

(11) that is secured by a lien that may be foreclosed upon only by a court order, if the foreclosure is for a ground other than a ground stated by Subdivision (6)(A) or (B) of this subsection.

Tex. Const. Art. XVI, § 50

(*l*) Advances made under a reverse mortgage and interest on those advances have priority over a lien filed for record in the real property records in the county where the homestead property is located after the reverse mortgage is filed for record in the real property records of that county.

(m) A reverse mortgage may provide for an interest rate that is fixed or adjustable and may also provide for interest that is contingent on appreciation in the fair market value of the homestead property. Although payment of principal or interest shall not be required under a reverse mortgage until the entire loan becomes due and payable, interest may accrue and be compounded during the term of the loan as provided by the reverse mortgage loan agreement.

(n) A reverse mortgage that is secured by a valid lien against homestead property may be made or acquired without regard to the following provisions of any other law of this state:

(1) a limitation on the purpose and use of future advances or other mortgage proceeds;

(2) a limitation on future advances to a term of years or a limitation on the term of open-end account advances;

(3) a limitation on the term during which future advances take priority over intervening advances;

(4) a requirement that a maximum loan amount be stated in the reverse mortgage loan documents;

(5) a prohibition on balloon payments;

(6) a prohibition on compound interest and interest on interest;

(7) a prohibition on contracting for, charging, or receiving any rate of interest authorized by any law of this state authorizing a lender to contract for a rate of interest; and

(8) a requirement that a percentage of the reverse mortgage proceeds be advanced before the assignment of the reverse mortgage.

(*o*) For the purposes of determining eligibility under any statute relating to payments, allowances, benefits, or services provided on a means-tested basis by this state, including supplemental security income, low-income energy assistance, property tax relief, medical assistance, and general assistance:

(1) reverse mortgage loan advances made to a borrower are considered proceeds from a loan and not income; and

(2) undisbursed funds under a reverse mortgage loan are considered equity in a borrower's home and not proceeds from a loan.

(p) The advances made on a reverse mortgage loan under which more than one advance is made must be made according to the terms established by the loan documents by one or more of the following methods:

(1) an initial advance at any time and future advances at regular intervals;

(2) an initial advance at any time and future advances at regular intervals in which the amounts advanced may be reduced, for one or more advances, at the request of the borrower;

(3) an initial advance at any time and future advances at times and in amounts requested by the borrower until the credit limit established by the loan documents is reached;

(4) an initial advance at any time, future advances at times and in amounts requested by the borrower until the credit limit established by the loan documents is reached, and subsequent advances at times and in amounts requested by the borrower according to the terms established by the loan documents to the extent that the outstanding balance is

Tex. Const. Art. XVI, § 50

repaid; or

(5) at any time by the lender, on behalf of the borrower, if the borrower fails to timely pay any of the following that the borrower is obligated to pay under the loan documents to the extent necessary to protect the lender's interest in or the value of the homestead property:

(A) taxes;

(B) insurance;

(C) costs of repairs or maintenance performed by a person or company that is not an employee of the lender or a person or company that directly or indirectly controls, is controlled by, or is under common control with the lender;

(D) assessments levied against the homestead property; and

(E) any lien that has, or may obtain, priority over the lender's lien as it is established in the loan documents.

(q) To the extent that any statutes of this state, including without limitation, *Section 41.001 of the Texas Property Code*, purport to limit encumbrances that may properly be fixed on homestead property in a manner that does not permit encumbrances for extensions of credit described in Subsection (a)(6) or (a)(7) of this section, the same shall be superseded to the extent that such encumbrances shall be permitted to be fixed upon homestead property in the manner provided for by this amendment.

(r) The supreme court shall promulgate rules of civil procedure for expedited foreclosure proceedings related to the foreclosure of liens under Subsection (a)(6) of this section and to foreclosure of a reverse mortgage lien that requires a court order.

(s) The Finance Commission of Texas shall appoint a director to conduct research on the availability, quality, and prices of financial services and research the practices of business entities in the state that provide financial services under this section. The director shall collect information and produce reports on lending activity of those making loans under this section. The director shall report his or her findings to the legislature not later than December 1 of each year.

(t) A home equity line of credit is a form of an open-end account that may be debited from time to time, under which credit may be extended from time to time and under which:

(1) the owner requests advances, repays money, and reborrows money;

(2) any single debit or advance is not less than $ 4,000;

(3) the owner does not use a credit card, debit card, or similar device, or preprinted check unsolicited by the borrower, to obtain an advance;

(4) any fees described by Subsection (a)(6)(E) of this section are charged and collected only at the time the extension of credit is established and no fee is charged or collected in connection with any debit or advance;

(5) the maximum principal amount that may be extended under the account, when added to the aggregate total of the outstanding principal balances of all indebtedness secured by the homestead on the date the extension of credit is established, does not exceed an amount described under Subsection (a)(6)(B) of this section;

(6) no additional debits or advances are made if the total principal amount outstanding exceeds an amount equal to 50 percent of the fair market value of the homestead as determined on the date the account is established;

(7) the lender or holder may not unilaterally amend the extension of credit; and

(8) repayment is to be made in regular periodic installments, not more often than every 14 days and not less often than monthly, beginning not later than two months from the date the extension of credit is established, and:

(A) during the period during which the owner may request advances, each installment equals or exceeds the amount of accrued interest; and

(B) after the period during which the owner may request advances, installments are substantially equal.

(u) The legislature may by statute delegate one or more state agencies the power to interpret Subsections (a)(5)--(a)(7), (e)--(p), and (t), of this section. An act or omission does not violate a provision included in those subsections if the act or omission conforms to an interpretation of the provision that is:

(1) in effect at the time of the act or omission; and

(2) made by a state agency to which the power of interpretation is delegated as provided by this subsection or by an appellate court of this state or the United States.

(v) A reverse mortgage must provide that:

(1) the owner does not use a credit card, debit card, preprinted solicitation check, or similar device to obtain an advance;

(2) after the time the extension of credit is established, no transaction fee is charged or collected solely in connection with any debit or advance; and

(3) the lender or holder may not unilaterally amend the extension of credit.

**HISTORY:** Amendment proposed by Acts 1995, 74th Leg., S.J.R. No. 46, approved by electorate (Prop. 4) at the November 7, 1995 election; amendment proposed by Acts 1997, 75th Leg., H.J.R. No. 31, approved by electorate at the November 4, 1997 election; amendment proposed by Acts 1999, 76th Leg., S.J.R. No. 12, approved by electorate (Prop. 2) at the November 2, 1999 constitutional amendment election; amendment proposed by Acts 2001, 77th Leg., H.J.R. No. 75, approved by electorate at the November 6, 2001 general election; amendment proposed by Acts 2003, 78th Leg., H.J.R. No. 23 and S.J.R. No. 42, approved by electorate at the September 13, 2003 election; amendment proposed by Acts 2005, 79th Leg., S.J.R. No. 7, approved by the electorate (Prop. 7) at the November 8, 2005 election; amendment proposed by Acts 2007, 80th Leg., H.J.R. No. 72, approved by the electorate (Prop. 8) at the November 6, 2007 election; amendment proposed by Acts 2013, 83rd Leg., S.J.R. No. 18; approved by the electorate (Prop. 5) at the November 6, 2013 election.

**NOTES:**

1997 Note:
The amendment to Section 50, Article XVI, of this constitution takes effect for the tax year beginning January 1, 1998. Acts 1997, 75th Leg., H.J.R. No. 31, § 3.

Editor's Notes. --
Acts 2007, 80th Leg., H.J.R. No. 72, § 2 provides: "This proposed constitutional amendment shall be submitted to the voters at an election to be held November 6, 2007. The ballot shall be printed to permit voting for or against the proposition: 'The constitutional amendment to clarify certain provisions relating to the making of a home equity loan and use of home equity loan proceeds.'" The proposed amendment was approved by the electorate at the November 6, 2007 election.

Acts 2013, 83rd Leg., S.J.R. No. 18, § 2 provides: "This proposed constitutional amendment shall be submitted to the voters at an election to be held November 5, 2013. The ballot shall be printed to permit voting for or against the proposition: 'The constitutional amendment to authorize the making of a reverse mortgage loan for the purchase of

homestead property and to amend lender disclosures and other requirements in connection with a reverse mortgage loan.'" The proposed amendment was approved by the electorate at the November 6, 2013 election.

2005 amendment,

in (p), added "an initial advance at any time and future advances" in (1) and (2), added (3) and (4), and redesignated former (3) as (5); and added (v).

2007 amendment,

in (a)(6), added "that on the date of closing is" in (I), substituted "a loan application" for "an application" in (M)(i), added "a copy of the loan application if not previously provided and" in (M)(ii), added "unless the owner on oath requests an earlier closing due to a state emergency that:", added (M)(iii)(a) and (M)(iii)(b), added "relating to substantive terms of agreement" in (Q)(iii), substituted the present provisions of (Q)(v) for the former provisions, which read: "the lender, at the time the extension of credit is made, provide the owner of the homestead a copy of all documents signed by the owner related to the extension of credit;" in (g), deleted "AGRICULTURAL" before "HOMESTEAD PROPERTY" and added "THAT IS DESIGNATED FOR AGRICULTURAL USE AS OF THE DATE OF CLOSING" in (I); in (M), substituted "LOAN APPLICATION" for "WRITTEN APPLICATION," added "AND MAY NOT WITHOUT YOUR CONSENT CLOSE BEFORE ONE BUSINESS DAY AFTER THE DATE ON WHICH YOU RECEIVE A COPY OF YOUR LOAN APPLICATION IF NOT PREVIOUSLY PROVIDED AND A FINAL ITEMIZED DISCLOSURE OF THE ACTUAL FEES, POINTS, INTEREST, COSTS, AND CHARGES THAT WILL BE CHARGED AT CLOSING;" and "UNLESS ON OATH YOU REQUEST AN EARLIER CLOSING DUE TO A DECLARED STATE OF EMERGENCY" at the end; in (Q), added "FOR SUBSTANTIVE TERMS OF AGREEMENT" in (3), and added "YOUR FINAL LOAN APPLICATION" and "EXECUTED" in (5); in (R)(3), deleted "SOLICITATION CHECK," after "DEBIT CARD" and added "OR PREPRINTED CHECK THAT YOU DID NOT SOLICIT"; and in (t)(3), deleted "preprinted solicitation check," after "debit card" and added "or preprinted check unsolicited by the borrower."

2013 amendment,

added the (k)(4)(A) designation; added (k)(4)(B) and (k)(6)(C-1); in (k)(8), substituted "prospective borrower and the spouse of the prospective borrower attest" for "owner of the homestead attests," substituted "prospective borrower and the prospective borrowers spouse" for "owner," and added "that was completed not earlier than the 180th day nor later than the 5th day before the date the extension of credit is closed"; rewrote (k)(9), which formerly read: "that requires the lender, at the time the loan is made, to disclose to the borrower by written notice the specific provisions contained in Subdivision (6) of this subsection under which the borrower is required to repay the loan"; and made related changes.

LexisNexis (R) Notes:

CASE NOTES

1. Texas Finance Commission's and Credit Union Commission's interpretations of *Tex. Const. art. XVI, § 50* were subject to judicial review; every implication of § 50(u) was that judicial review was not foreclosed, and that seemed to be the Legislature's understanding in subjecting the Commissions' interpretations to the Administrative Procedure Act, which provided for judicial review. *Fin. Comm'n of Tex. v. Norwood, 418 S.W.3d 566, 2013 Tex. LEXIS 491, 56 Tex. Sup. Ct. J. 696 (Tex. 2013).*

2. Creditor did not violate *Tex. Const. art. XVI, § 50* because of a perceived inconsistency between the note and the

truth-in-lending disclosure where the truth-in-lending disclosure was clearly labeled as such, and the perceived inconsistency between the note and the truth-in-lending disclosure arose from the creditor's compliance with federal truth-in-lending requirements. *Edwards v. Option One Mortgage Corp. (In re Edwards), 2001 Bankr. LEXIS 2197 (Bankr. W.D. Tex. Feb. 26 2001).*

3. *Tex. Const. art. XVI, § 50(j)* did not prohibit loan documents from containing a general severability clause, such as the one contained in the deed of trust. *Edwards v. Option One Mortgage Corp. (In re Edwards), 2001 Bankr. LEXIS 2197 (Bankr. W.D. Tex. Feb. 26 2001).*

4. Creditor was not entitled to summary judgment on a debtors' claim that the creditor violated *Tex. Const. art. 16, § 50(a)(6)(B)* because the creditor did not produce an appraisal upon which the figure in an acknowledged Fair Market Value Statement was made, as required by *Tex. Const. art. 16, § 50(h). Reno v. CIT Group (In re Reno), 2008 Bankr. LEXIS 3239 (Bankr. W.D. Tex. Sept. 4 2008).*

5. Creditor was not entitled to summary judgment on a debtors' claim that the creditor violated *Tex. Const. art. 16, § 50(a)(6)(E)* because, based on the HUD-1 closing statement, the various fees, including the origination fee, exceeded the 3% cap. *Reno v. CIT Group (In re Reno), 2008 Bankr. LEXIS 3239 (Bankr. W.D. Tex. Sept. 4 2008).*

6. Creditor was not entitled to summary judgment on a debtors' claim that the creditor violated *Tex. Const. art. 16, § 50(a)(6)(H)* and (Q) because, there were genuine issues concerning whether or not the mobile home was part of the homestead prior to the completion of the lending transaction. *Reno v. CIT Group (In re Reno), 2008 Bankr. LEXIS 3239 (Bankr. W.D. Tex. Sept. 4 2008).*

7. Creditor's lien was unenforceable so as to allow relief from Chapter 7 automatic stay under *11 U.S.C.S. 362* because the debtor was "required" to use the home equity loan proceeds to repay a preexisting debt to the creditor as a condition of making the loan, which violated *Tex. Const. art. XVI, § 50(a)(6)(Q)(i). Box v. First State Bank, Bremond S.S.B., 340 B.R. 782, 2006 U.S. Dist. LEXIS 14645 (S.D. Tex. 2006).*

8. Bankruptcy court denied debtors' request for permission to reaffirm a debt they owed to a credit union, in the amount of $ 44,517.73, which was secured by a homestead; the debt was a nonrecourse obligation that was enforceable only as an in rem claim, and reaffirmation was at best a useless act; however, the debtors' voluntary reaffirmation of their loan might be construed as a waiver of the protections they had under the Texas Constitution, and it was unwise to approve an agreement which could be viewed as a waiver of rights. *In re Rios, 2007 Bankr. LEXIS 2847 (Bankr. W.D. Tex. Aug. 20 2007).*

9. Where, pursuant to *Tex. Const. art. XVI, § 50,* home equity loans were non-recourse in Texas, and because non-recourse loans were loans that did not need to be reaffirmed, because reaffirmation discharged only unsecured debt, a reaffirmation agreement on a home equity loan was unnecessary; moreover, the court's fear was that reaffirmation agreements ultimately have been used by the creditor in a state court action to recover a deficiency obligation otherwise prohibited by *Tex. Const. art. XVI, § 50,* on some theory of waiver or the like. *In re Pfeil, 2007 Bankr. LEXIS 2349 (Bankr. W.D. Tex. July 10 2007).*

10. Bankruptcy court reduced a homestead exemption allowance which a Chapter 7 debtor claimed under *11 U.S.C.S. §*

522(b), *Tex. Const. art. XVI, § 50*, and *Tex. Prop. Code Ann. §§ 41.001-41.002* from $146,450 to zero, pursuant to *11 U.S.C.S. § 522*(o), because the debtor had engaged in a scheme to funnel nonexempt assets into his exempt homestead in a way that made it difficult for creditors such as a former partner who had sued the debtor to detect or trace the assets. The debtor's home was part of his bankruptcy estate under *11 U.S.C.S. § 541*, and there was no merit to the debtor's wife's claim that she had a separate, vested property right in the home under Texas law that did not enter the debtor's bankruptcy estate and was not subject to *11 U.S.C.S. § 522*(o) and (p) because the home was community property. *In re Thaw, 496 B.R. 842, 2013 Bankr. LEXIS 1047, 69 Collier Bankr. Cas. 2d (MB) 432 (Bankr. E.D. Tex. 2013)*.

11. Bankruptcy court reduced a homestead exemption allowance which a Chapter 7 debtor claimed under *11 U.S.C.S. § 522*(b), *Tex. Const. art. XVI, § 50*, and *Tex. Prop. Code Ann. §§ 41.001-41.002* from $146,450 to zero, pursuant to *11 U.S.C.S. § 522*(o), because the debtor had engaged in a scheme to funnel nonexempt assets into his exempt homestead in a way that made it difficult for creditors such as a former partner who had sued the debtor to detect or trace the assets. The debtor's home was part of his bankruptcy estate under *11 U.S.C.S. § 541*, and there was no merit to the debtor's wife's claim that she had a separate, vested property right in the home under Texas law that did not enter the debtor's bankruptcy estate and was not subject to *11 U.S.C.S. § 522*(o) and (p) because the home was community property. *In re Thaw, 496 B.R. 842, 2013 Bankr. LEXIS 1047, 69 Collier Bankr. Cas. 2d (MB) 432 (Bankr. E.D. Tex. 2013)*.

12. Because the debtor's property was a homestead property entitled to protection under Texas law when he filed bankruptcy, a judgment creditor had no enforceable lien at that time, and *11 U.S.C.S. § 522*(p)'s cap did not convert it to an enforceable lien, and thus, the trustee took the property with an unenforceable lien and the creditor had no enforceable lien. *Mccombs v. Hd Smith Wholesale Drug Co (in re McCombs), 659 F.3d 503, 2011 U.S. App. LEXIS 20132, Bankr. L. Rep. (CCH) P82086, 66 Collier Bankr. Cas. 2d (MB) 873 (5th Cir. Tex. 2011)*.

13. Although a Chapter 11 debtor was allowed under Texas law to claim an unlimited exemption in a homestead he owned with his non-debtor spouse, the exemption was capped under *11 U.S.C.S. § 522* at $136,875 because he owned the homestead for less than 1,215 days before he declared bankruptcy, and because the debtor's non-debtor spouse did not have a vested interest in her homestead exemption, she was not entitled to possession of the homestead or compensation in case of a forced sale. *Kim v. Kim, 2010 U.S. Dist. LEXIS 145648 (N.D. Tex. Aug. 11 2010)*.

14. Broad state homestead exemption of a bankruptcy debtor and the debtor's non-filing spouse under *Tex. Const. art. XVI, § 50* and *Tex. Prop. Code Ann. §§ 41.001, 41.002* was subject to the limitation of *11 U.S.C.S. § 522*(p) which capped the amount of the exemption with regard to property acquired within a stated period before bankruptcy; the spouse's homestead exemption gave protective legal security rather than vested property rights in a separate and distinct homestead interest which would entitle the spouse to compensation or to prevent sale of the property. *Odes Ho Kim v. Chong Ann Kim (In re Odes Ho Kim), 405 B.R. 179, 2009 Bankr. LEXIS 1110, Bankr. L. Rep. (CCH) P81559 (Bankr. N.D. Tex. 2009)*.

15. Chapter 7 debtor was allowed under *11 U.S.C.S. § 522*(q) to exempt only $136,875 in equity he had in a home he owned with his non-debtor spouse that was worth $530,000 because a Texas jury had found that he committed securities fraud under state law and owed his former business partner $2,289,349. Although Texas residents were allowed to claim an exemption in the entire value of their homestead under *Tex. Const. art. XVI, § 50*, § 522(q) preempted *Texas law. In re Bounds, 491 B.R. 440, 2013 Bankr. LEXIS 1682 (Bankr. W.D. Tex. 2013)*.

16. Creditor's motion to avoid a judgment lien was granted because the debtor had a valid homestead interest asserted in the property at issue, pursuant to *Tex. Const. art. XVI, § 50* and *Tex. Prop. Code § 41.002(a)*, because the debtor had resided and owned the property before filing for bankruptcy. The fact that the debtor did not live at the property while

she was in a rehabilitation facility and that the debtor's mother rented the property for a year and that the debtor did not live in the property while it was being repaired did not negate the homestead exemption. *In re Sager, 2005 Bankr. LEXIS 2045 (Bankr. N.D. Tex. Oct. 18 2005).*

17. Judgment creditor's assertion of a lien on the debtor's property was subject to avoidance pursuant to *11 U.S.C.S. § 522*(f)(1)(A) because the creditor's claim was not based on an interest in the property or was not used to secure an obligation owed to a spouse or child of the debtor as required to assert a claim on exempted property under *11 U.S.C.S. § 522*(b), *Tex. Const. art. 16, §§ 50* and *51*, and *Tex. Prop. Code §§ 41.001* and *41.002*. *In re Sager, 2005 Bankr. LEXIS 2045 (Bankr. N.D. Tex. Oct. 18 2005).*

18. Where debtors left their residence because it was being foreclosed upon and returned to their prior residence, which they still owned, debtors could claim a homestead exemption in the prior residence pursuant to *Tex. Const. art. XVI, § 50*, and *Tex. Prop. Code Ann. §§ 41.001(a)*, (b), 41.002(a), despite the fact that, due to the nature of their trucking business, they only occupied the residence for 18 hours a month. The property qualified as homestead property under state law because (1) the debtors continuously owned the property, (2) the property was designed for human residence, (3) the debtors actually resided at the residence and (4) the debtors intended to maintain the property as their homestead. *In re Durban, 2004 Bankr. LEXIS 2032 (Bankr. N.D. Tex. Dec. 21 2004).*

19. Boat owned by the Texas debtors was a moveable "motor boat" that could not support a homestead exemption under *Tex. Const. art. 16, §§ 50, 51*, or *Tex. Prop. Code Ann. §§ 41.001, 41.002*. Texas homestead rights concerned an estate in land. *Norris v. Thomas (In re Norris), 316 B.R. 246, 2004 U.S. Dist. LEXIS 21040 (W.D. Tex. 2004).*

20. Debtor was entitled to claim property in Texas as her homestead because, although the debtor currently worked and resided in Louisiana, her absence from the property was only temporary and her intent to return to the property was unqualified. *In re McDonald, 486 B.R. 843, 2013 Bankr. LEXIS 685 (Bankr. S.D. Tex. 2013).*

21. Chapter 7 debtor who owned real property in Clifton, Texas, which he used to conduct a welding business, failed to show that the property was exempt from creditors' claims under *Tex. Const. art. XVI, §§ 50* and *51* and *Tex. Prop. Code Ann. §§ 41.001* and *41.002* because it was his homestead. Even though the debtor slept in a workshop that was on the property while he was in Clifton conducting business and visiting family every two to three weeks, he failed to show that he had conditioned the workshop for residential purposes or intended to do so; if anything, the evidence suggested that the debtor used the property as a weekend home. *In re Perry, 481 B.R. 862, 2012 Bankr. LEXIS 4831 (Bankr. N.D. Tex. 2012).*

22. Question was certified to the state supreme court as to whether debtors were entitled to protection of their homestead under *Tex. Const. art. 16, § 50*, when they surreptitiously used their business property as their residence and where they declared that no such use was made of the property, or whether they the otherwise valid homestead exemption could be foreclosed by equitable estoppel. *Villarreal v. Showalter (in re Villarreal), 402 Fed. Appx. 28, 2010 U.S. App. LEXIS 23466 (5th Cir. Tex. 2010).*

23. Creditor's lien on the debtors' homestead tract was null and void pursuant to *Tex. Const. art. XVI, § 50(c)*, because they did not actually intend to sell their homestead and the sale of the tract to a self-controlled corporation was not a component of some overarching business plan but was a pretense and implemented the means outlined by the creditor as necessary to induce the loan and evade the homestead protections that otherwise would have precluded it from protecting itself in the transaction. *Ritter v. Citizens Bank (in re Ritter), 2009 Bankr. LEXIS 954 (Bankr. E.D. Tex. Mar. 26 2009).*

24. Where appellee debtor acquired title to Texas property prior to marriage, contrary to appellant creditor's argument,

she was entitled to her full homestead exemption, under *Tex. Const. art. XVI, § 50, Tex. Prop. Code Ann. § 41.001, Tex. Prop. Code Ann. § 41.002*, notwithstanding a divorce decree's later awarding it to her. *Wallace v. Rogers (In re Rogers), 513 F.3d 212, 2008 U.S. App. LEXIS 129, Bankr. L. Rep. (CCH) P81081 (5th Cir. Tex. 2008).*

25. Homestead exemption provisions alone do not protect a homestead of a Texas debtor from attachment of a judicial lien. *In re Caudill, 2007 Bankr. LEXIS 3699, 58 Collier Bankr. Cas. 2d (MB) 1231 (Bankr. S.D. Tex. Oct. 25 2007).*

26. Homestead exemption did not protect bankruptcy debtors' home from creditors' judgment against the debtors, since the judgment determined that the debtors fraudulently obtained funds from the creditors which were used by the debtors as part of the purchase price of the home. *In re Huie, 2007 Bankr. LEXIS 2744 (Bankr. E.D. Tex. Aug. 8 2007).*

27. Because *Tex. Const. art. XVI, § 50*, and *Tex. Prop. Code Ann. § 41.001(a)*, and *Tex. Prop. Code Ann. § 41.002* discuss homesteads in terms of land and any improvements on the land, a boat cannot be a homestead. *Norris v. Thomas, 215 S.W.3d 851, 2007 Tex. LEXIS 130, 50 Tex. Sup. Ct. J. 398 (Tex. 2007).*

28. In response to a certified question from the United States Court of Appeals for the Fifth Circuit in a bankruptcy case, the court determined that the debtors' yacht did not qualify as a homestead under *Tex. Const. art. XVI, § 50*, because it did not have a permanent attachment to realty. *Norris v. Thomas, 215 S.W.3d 851, 2007 Tex. LEXIS 130, 50 Tex. Sup. Ct. J. 398 (Tex. 2007).*

29. There was no clear error in a bankruptcy court's finding that, pursuant to the unambiguous language of *11 U.S.C.S. § 522*(p), the term "interest" referred to some legal or equitable interest that could be quantified by a monetary figure and that the restrictions did not apply to limit the debtor's claim of exemption in homestead pursuant to *Tex. Const. art. XVI, § 50. Wallace v. Rogers (In re Rogers), 354 B.R. 792, 2006 U.S. Dist. LEXIS 75826, Bankr. L. Rep. (CCH) P80787, 56 Collier Bankr. Cas. 2d (MB) 1323 (N.D. Tex. 2006).*

30. Debtors' four lots, including three lots on which no residence was constructed, was a homestead, *Tex. Const. art. XVI, § 50(a)*, where, except for purchase financing, all lots were purchased in a single transaction, were fenced as a single lot, looked like a single lot, and were used as a single lot; further, the tax rolls treated the entire property as a homestead. *Parks v. Buckeye Ret. Co., L.L.C. (In re Parks), 2006 U.S. Dist. LEXIS 38383 (S.D. Tex. June 9 2006).*

31. Debtors did not abandon a homestead, which consisted of four contiguous, adjacent lots, on three of which was constructed no residence, where, after their eviction from the lot on which a residence was built, the debtors' family rented another home -- even using month-to-month leases for a period -- and did not acquire another homestead, and they continued to use the remaining lots and made extensive efforts to obtain the financing to build a home on those lots. *Parks v. Buckeye Ret. Co., L.L.C. (In re Parks), 2006 U.S. Dist. LEXIS 38383 (S.D. Tex. June 9 2006).*

32. Per diem interest, for purposes of interest under the exception for an extension of credit, was still interest, though prepaid, and legitimate discount points to lower the loan interest rate, in effect, substituted for interest; true discount points were not fees necessary to originate, evaluate, maintain, record, insure, or service but were an option available to the borrower and thus not subject to the three percent cap set forth in this provision. *Fin. Comm'n of Tex. v. Norwood, 418 S.W.3d 566, 2014 Tex. LEXIS 97, 57 Tex. Sup. Ct. J. 222 (Tex. 2014).*

33. Extension of credit exception to this provision precluded a borrower from closing a loan through an attorney-in-fact under a power of attorney not executed at the office of the lender, an attorney at law, or a title company as the exception required a formality to the closing that prevented coercive practices. *Fin. Comm'n of Tex. v. Norwood, 418 S.W.3d 566, 2014 Tex. LEXIS 97, 57 Tex. Sup. Ct. J. 222 (Tex. 2014).*

Tex. Const. Art. XVI, § 50

34. Buyer had standing to challenge the validity of the constable's sale on the basis that the property was the judgment debtor's homestead, because the buyer had standing to adjudicate its rights with respect to the property, regardless of whether the debtor had filed suit to establish the property as his homestead. *Saihat Corp. v. Miller, 2013 Tex. App. LEXIS 10756 (Tex. App. Houston 1st Dist. Aug. 27 2013).*

35. Homeowners had standing because *Tex. Const. art. XVI, § 50(u)* was unique and preclusion of the injury typically required for standing required application of the doctrine in context. *Fin. Comm'n of Tex. v. Norwood, 418 S.W.3d 566, 2013 Tex. LEXIS 491, 56 Tex. Sup. Ct. J. 696 (Tex. 2013).*

36. Because a determination of the right to possession of a decedent's daughter in her forcible detainer action against the decedent's husband necessarily required an adjudication of the merits of title between the daughter (by conveyance from the decedent) and the husband (as the claimant of a homestead right under the decedent's separate title), a justice court's judgment in favor of the daughter, as well as a judgment of the county court at law upholding it on appeal, were void; pursuant to *Tex. R. Civ. P. 746* and *Tex. Gov't Code Ann. § 27.031(b)(4)*, justice courts' limited jurisdiction foreclosed their adjudication of the merits of the title to real property, and because the county court was sitting in its appellate jurisdiction over a forcible detainer suit from the justice court, it was without jurisdiction to adjudicate title to real property. *Geldard v. Watson, 214 S.W.3d 202, 2007 Tex. App. LEXIS 559 (Tex. App. Texarkana 2007).*

37. In a property dispute, an argument that two buyers were unable to rely on the affirmative defense of abandonment of a homestead was rejected because no objection was made on the unpled affirmative defense. Therefore, the buyers were able to rely on abandonment in response to an estate's motion for summary judgment. *Gilbreath v. Steed, 2013 Tex. App. LEXIS 5947 (Tex. App. Tyler May 15 2013).*

38. Borrowers who signed a deed of trust which indicated that a house they owned was not their homestead, were estopped from claiming that the house was their homestead after they defaulted on a loan; their request for a judgment declaring that a lien held by a mortgage company was invalid, was denied. *Gonzales v. Ameriquest Mortg. Corp., 2005 U.S. Dist. LEXIS 32370 (W.D. Tex. Dec. 8 2005).*

39. Borrowers' request for declaratory judgment, based on the alleged violation of *Tex. Const. art. XVI, § 50(a)(6)(B)*, failed as a matter of law where the sworn testimony in their home equity affidavit was that the extension of credit was of a principal amount that, when added to the aggregate total of the outstanding principal balances of all other indebtedness secured by valid encumbrances of record against the property, did not exceed 80 percent of the fair market value of the property on the date the extension of credit was made, and since the information in the affidavit contradicted the allegations in the complaint, the affidavit controlled. *Summers v. Pennymac Corp., 2012 U.S. Dist. LEXIS 168990 (N.D. Tex. Nov. 28 2012).*

40. Where a homeowner claimed that a bank unconstitutionally filed an abstract of judgment on his homestead, citing *Tex. Const. art. XVI, § 50*, his affidavit and his interrogatory answer created conflicting inferences as to residency dates of two separate properties, and neither the state constitution nor *Tex. Prop. Code Ann. § 41.002* specifically defined "homestead," summary judgment was improperly granted to the bank because there was a genuine fact issue; the

inconsistencies did not render the homeowner's affidavit a sham affidavit. *Pierce v. Wash. Mut. Bank, 226 S.W.3d 711, 2007 Tex. App. LEXIS 3949 (Tex. App. Tyler 2007).*

41. Property buyers were not entitled summary judgment in their action to remove the cloud on the title to their property on the basis of the homestead exemption where there was a fact issue as to whether the seller intended the property as his homestead at the time of the sale. *Wilcox v. Marriott, 103 S.W.3d 469, 2003 Tex. App. LEXIS 37 (Tex. App. San Antonio 2003).*

42. Arbitration of a mortgagee's request for a public sale of a property was not available since the mortgagor's home equity loan was made pursuant to this provision and the action was a foreclosure action, even though the Texas Probate Court required an intermediate procedural step of a final and appealable order establishing the mortgagee's claim. *Wells Fargo Fin. Tex., Inc. v. Valero, 2013 Tex. App. LEXIS 10570 (Tex. App. Amarillo Aug. 21 2013).*

43. Arbitrator did not manifestly disregard the law in upholding a foreclosure, despite the borrowers' claim that *Tex. Const. art. XVI, § 50* was violated by the lender's failure to provide the borrowers with a Spanish version of the statutory notice; the arbitrator applied the relevant law and determined that the lender made a good faith effort to cure the mistake within a reasonable time. *Galvan v. Centex Home Equity Co., L.L.C., 2008 Tex. App. LEXIS 1188 (Tex. App. San Antonio Feb. 20 2008).*

44. Trial court did not err by finding that a lien was invalid and a loan was forfeited as violative of the Texas Constitution, despite failing to submit a question of a borrower's notification and the creditor's failure to cure, because the issue of notice was conclusively established in the record. Moreover, the creditor's briefing relating to whether the trial court erred in rendering judgment that found the creditor did not cure its failure to comply within the cure period was inadequate. *Wells Fargo Bank v. Leath, 2014 Tex. App. LEXIS 59 (Tex. App. Dallas Jan. 6 2014).*

45. Claim against an estate was properly denied because a lien was void under *Tex. Const. art. XVI, § 50* since it was against homestead property, even though it was not recorded after a decedent's death and no collection action was taken while the property was homestead in nature. Moreover, including language providing the lien could have been enforced only upon the sale, conveyance, or transfer of the property did not make the lien valid as of the date it was executed due to the language in *Tex. Prop. Code Ann. § 41.001(c). Apex Fin. Corp. v. Labarba, 2009 Tex. App. LEXIS 1706 (Tex. App. Dallas Mar. 5 2009).*

46. Since the creditor had complied with the requirements of *Tex. Const. art. XVI, § 50* it needed not otherwise have perfected its lien in the manner provided for perfection of statutory mechanic's liens under Tex. Prop. Code Ann. ch. 53. *In re Kleibrink, 346 B.R. 734, 2006 Bankr. LEXIS 1633 (Bankr. N.D. Tex. 2006), aff'd, 2007 U.S. Dist. LEXIS 63974* (N.D. Tex. Aug. 28, 2007).

47. Boat owned by the Texas debtors was a moveable "motor boat" that could not support a homestead exemption under *Tex. Const. art. 16, §§ 50, 51,* or *Tex. Prop. Code Ann. §§ 41.001, 41.002.* Texas homestead rights concerned an estate in land. *Norris v. Thomas (In re Norris), 316 B.R. 246, 2004 U.S. Dist. LEXIS 21040 (W.D. Tex. 2004).*

48. Property buyers were not entitled summary judgment in their action to remove the cloud on the title to their property on the basis of the homestead exemption where there was a fact issue as to whether the seller intended the property as his homestead at the time of the sale. *Wilcox v. Marriott, 103 S.W.3d 469, 2003 Tex. App. LEXIS 37 (Tex. App. San Antonio 2003).*

49. Party claiming homestead protection bears the burden of establishing that the property is homestead. *Wilcox v. Marriott, 103 S.W.3d 469, 2003 Tex. App. LEXIS 37 (Tex. App. San Antonio 2003).*

50. To establish homestead rights, a party must show overt acts of homestead usage, and intention on the part of the owner to claim the property as homestead, and once property is dedicated as homestead, it can only lose such designation by abandonment, alienation, or death. *Wilcox v. Marriott, 103 S.W.3d 469, 2003 Tex. App. LEXIS 37 (Tex. App. San Antonio 2003).*

51. After a party establishes the homestead character of the property, the burden shifts to the creditor to disprove the continued existence of the homestead. *Wilcox v. Marriott, 103 S.W.3d 469, 2003 Tex. App. LEXIS 37 (Tex. App. San Antonio 2003).*

52. In an ex-wife's action that alleged her ex-husband's conveyance of residential property was fraudulent, the trial court did not improperly disregard the jury's finding that the property was not the ex-husband's homestead because, taken together, the ex-wife's testimony that she and the ex-husband lived in the property together and the evidence that they formally claimed it as their homestead established that the property was their homestead before their divorce; moreover, the ex-wife had relinquished any claim she had to the homestead, while the ex-husband had retained his homestead interest both before and after the divorce, and she failed to prove he intended to abandon it. *Almanza v. Salas, 2014 Tex. App. LEXIS 1470 (Tex. App. Houston 14th Dist. Feb. 11 2014).*

53. Although owner testified that he had resided on the property, that he only had a few furnishings because he had given them away, and that he bathed outside with a hose because there was no shower or bathtub on the property, the record was devoid of any reasonable proof that the owner actually lived on the property or intended to live on the property, and the owner's actions were not consistent with homestead use; thus, the property was not his homestead, under *Tex. Tax Code Ann. § 11.13(j)*, the property did not qualify for an exemption under *Tex. Const. art. XVI, § 51* or *Tex. Prop. Code Ann. § 41.002(a)*, and the property was not exempt from sale under *Tex. Const. art. XVI, § 50* or *Tex Prop. Code Ann. § 41.001*, and the trial court properly awarded the judgment creditors the excess funds derived from the tax foreclosure sale as the proceeds were not exempt from garnishment. *Lares v. Garza, 2004 Tex. App. LEXIS 2561 (Tex. App. San Antonio Mar. 24 2004).*

54. In a home owner's appeal from the trial court's judgment in favor of a mortgage company, because in both the present case and the company's prior declaratory judgment action the owner argued that the requirement that a home equity loan could not close within one year of another home equity loan on the same homestead property rendered the lien invalid, and because the problem was a temporal one, it could not be retroactively cured, the doctrine of res judicata barred the owner from relitigating this claim. *Summers v. Ameriquest Mortg. Co., 2008 Tex. App. LEXIS 254 (Tex. App. Houston 14th Dist. Jan. 15 2008).*

55. Claim of a maker of a home equity note that the note ran afoul of *Tex. Const. art. XVI, § 50(a)(6)*, was precluded by res judicata because it should have been brought as a defense in a previous state trial court proceeding that had found

Tex. Const. Art. XVI, § 50

that the note was valid, enforceable, and in default or on appeal of that case. *Gore v. Homecomings Fin. Network, Inc., 2005 U.S. Dist. LEXIS 30907 (N.D. Tex. Dec. 5 2005).*

56. Bankruptcy court denied a bank's motion seeking an award of attorneys' fees it incurred to successfully defend a Chapter 7 debtor's claim that a note and mortgage it held were invalid. Although the note allowed the bank to recover reasonable attorneys' fees it incurred to enforce the note, *Tex. Const. art. XVI, § 50(a)(6)(C)* did not allow the court to award attorneys' fees in favor of the bank as a personal judgment against the debtor because the loan was a home equity loan and the debtor had not committed fraud against the bank; although the debtor had defrauded other lenders, he had not defrauded the bank. *Erickson v. Wells Fargo Nat'l Assoc. (in re Erickson), 2011 Bankr. LEXIS 2838 (Bankr. W.D. Tex. July 22 2011).*

57. Court erred in awarding the borrower monetary damages under either his wrongful foreclosure or his breach of contract cause of action, because the borrower presented no evidence that the property was sold for an inadequate price or that he was otherwise harmed by the delay in the foreclosure sale, and it was undisputed that the lender purchased the property at the foreclosure and as of the date of trial, the borrower continued to occupy the premises. *Wells Fargo Bank, N.A. v. Robinson, 391 S.W.3d 590, 2012 Tex. App. LEXIS 10280 (Tex. App. Dallas 2012).*

58. Court erred in awarding the borrower monetary damages under either his wrongful foreclosure or his breach of contract cause of action, because the borrower presented no evidence that the property was sold for an inadequate price or that he was otherwise harmed by the delay in the foreclosure sale, and it was undisputed that the lender purchased the property at the foreclosure and as of the date of trial, the borrower continued to occupy the premises. *Wells Fargo Bank, N.A. v. Robinson, 391 S.W.3d 590, 2012 Tex. App. LEXIS 10280 (Tex. App. Dallas 2012).*

59. Homestead was subject to forfeiture under *Tex. Code Crim. Proc. Ann. art. 59.01* et seq. based upon its use to possess and manufacture methamphetamine and was not exempt from forfeiture under the homestead exemptions of *Tex. Const. art. XVI, § 50* and *Tex. Prop. Code Ann. § 41.001.* The exemption only protected property from forfeiture in cases based on debt or creditor's claims. *Lot 39, Section C, N. Hills Subd. v. State, 85 S.W.3d 429, 2002 Tex. App. LEXIS 6109 (Tex. App. Eastland 2002).*

60. Temporary injunction was not granted in a foreclosure dispute because a probable right to recovery on the merits was not shown; summary judgment entered against a son had no effect on a lienholder because there was no privity, a warranty deed showed an absolute conveyance, and homestead rights under *Tex. Const. art. XVI, § 50(a)* were lost due to the conveyance. *Galindo v. Border Fed. Credit Union, 2009 Tex. App. LEXIS 1818 (Tex. App. San Antonio Mar. 18 2009).*

61. Home equity borrowers showed that their cases against a mortgage company were related and that transferring the cases to one pretrial court would serve the convenience of the parties and witnesses because the claims were based on the company's alleged standard practices in modifying home equity loans; consolidation would ensure that issues relating to the application of the Texas Constitution were decided the same way by allowing the pretrial judge to make consistent rulings. *In re Mortgage, LLC, 2013 Tex. LEXIS 593 (Tex. Aug. 16 2013).*

62. In a case where a transferee was seeking the payment of a claim against a decedent's estate, a contention that the decedent had waived his homestead rights by executing a promissory note and deed of trust was not preserved for appellate review because the issue was not pled; moreover, the issue was not tried by consent, and all evidence relevant to the issue of waiver of homestead rights was relevant to the validity of a lien. *Apex Fin. Corp. v. Labarba, 2009 Tex. App. LEXIS 1706 (Tex. App. Dallas Mar. 5 2009).*

63. Lien which a federal savings bank placed on debtors' homestead before the debtors declared Chapter 7 bankruptcy was invalid under *Tex. Const. art. XVI, § 50(g)* because it secured a second home equity loan the debtors obtained. *Tex. Const. art. XVI, § 50* and *7 Tex. Admin. Code § 153.10* stated that there could be no more than one valid home equity lien placed on a debtor's homestead at any given time. *Lovalace v. Usaa Fed. Sav. Bank (in re Lovelace), 443 B.R. 494, 2011 Bankr. LEXIS 285 (Bankr. W.D. Tex. 2011).*

64. Evidence that an owner used property for agricultural purposes while living elsewhere proved that he had abandoned any homestead rights, and a disclaimer he signed when obtaining a loan estopped him from asserting otherwise. *Thomas v. Graham Mortg. Corp., 2013 Tex. App. LEXIS 4391 (Tex. App. Austin Apr. 4 2013).*

65. Trial court properly found that property owners were estopped from claiming that their home equity loan with a bank violated *Tex. Const. art. XVI, § 50(a)*, and the court did not err in rendering summary judgment in favor of the bank in the owners' fraud and wrongful foreclosure action because: (1) the owners represented to the bank that the entire property was their homestead; (2) the owners claimed a homestead exemption pursuant to *Tex. Prop. Code Ann. § 41.001(b)* on the entire property in loan instruments and to tax authorities; and (3) the bank relied on the owners' representations and sworn affidavits to give them a loan secured by their purported homestead. *Sosa v. Long Beach Mortg. Co., 2007 Tex. App. LEXIS 4640 (Tex. App. Austin June 12 2007).*

66. Trial court did not err in declaring a deed of trust to be void and unenforceable as a lien against homestead property because the mortgagees did not prove that the deed of trust secured one of the types of debts excepted from homestead protection under *Tex. Const. art. XVI, § 50(a)*, since a previous indebtedness had been paid off, a subrogation theory was waived for failure to plead it in the trial court, and the retention-of-benefits rule was inapplicable because the property owner was not a party to the note, which had been executed by her deceased husband. *Chase Manhattan Mortg. Corp. v. Cook, 141 S.W.3d 709, 2004 Tex. App. LEXIS 5358 (Tex. App. Eastland 2004).*

67. Because a debtor's land was designated for agricultural use, *Tex. Const. art. XVI, § 50(a)(6)(I)*, prohibited it from being used as security for a home equity loan, but the bank was entitled to equitable subrogation for the amount paid to a third party and for taxes from the home equity loan proceeds. *LaSalle Bank Nat'l Ass'n v. White, 2006 Tex. App. LEXIS 3698 (Tex. App. San Antonio May 3 2006).*

68. Homestead was subject to forfeiture under *Tex. Code Crim. Proc. Ann. art. 59.01* et seq. based upon its use to possess and manufacture methamphetamine and was not exempt from forfeiture under the homestead exemptions of

*Tex. Const. art. XVI, § 50* and *Tex. Prop. Code Ann. § 41.001*. The exemption only protected property from forfeiture in cases based on debt or creditor's claims. *Lot 39, Section C, N. Hills Subd. v. State, 85 S.W.3d 429, 2002 Tex. App. LEXIS 6109 (Tex. App. Eastland 2002).*

69. In a dispute between a surviving husband and the decedent's daughter over a tract of land, summary judgment against the husband was error as the daughter failed to show that the husband could not claim all of the property as homestead. The evidence showed that the husband and the mother claimed and received a homestead exemption on the entire property, and the evidence did not show that anything had changed in the use of the property since the mother's death. *Majeski v. Estate of Majeski, 163 S.W.3d 102, 2005 Tex. App. LEXIS 842 (Tex. App. Austin 2005).*

70. In a lawyer's action seeking to enforce a lien against the decedent's estate for his lawyer's fees in connection with defending the decedent's husband from charges of his murdering the decedent, the trial court properly invalidated the lien as the lien was not permitted by any homestead exception under *Tex. Const. art. XVI, § 50* and there was no evidence that the homestead was abandoned. *Florey v. Estate of McConnell, 212 S.W.3d 439, 2006 Tex. App. LEXIS 4971 (Tex. App. Austin 2006).*

71. In divorce case, although trial court properly awarded attorney fees against former husband in favor of former wife's trial attorney, attorney was a third party who was not entitled to attorney fees in the nature of child support; the trial court erred in granting a lien of any kind in favor of the attorney on the husband's homestead under *Tex. Const. art. XVI, § 50, Tex. Prop. Code Ann. § 41.001*; and *Tex. Fam. Code Ann. § 106.002. Johnson v. Johnson, 2005 Tex. App. LEXIS 10458 (Tex. App. Austin Dec. 16 2005).*

72. In a case concerning real property that was the homestead of a husband and wife, by declaring a lien obtained by the husband's ex-wife to be valid against the husband's property interest-and by further declaring that a subsequent purchaser of the property at a public auction had acquired the husband's one-half undivided interest in the property as tenant in common with the wife-a trial court's final judgment gave effect to an unconstitutional lien and forced sale of homestead property because the ex-wife's lien on the property for child support arrearages did not fall under any of the constitutional categories of debt for which a lien could attach to homestead property. The lien was therefore void, and, as a result, the constable's sale foreclosing on the lien and transferring title to the purchaser was also void and subject to challenge in a collateral proceeding such as the one initiated by the husband and wife. *Salomon v. Lesay, 369 S.W.3d 540, 2012 Tex. App. LEXIS 2668 (Tex. App. Houston 1st Dist. 2012).*

73. In a property dispute, an argument that two buyers were unable to rely on the affirmative defense of abandonment of a homestead was rejected because no objection was made on the unpled affirmative defense. Therefore, the buyers were able to rely on abandonment in response to an estate's motion for summary judgment. *Gilbreath v. Steed, 2013 Tex. App. LEXIS 5947 (Tex. App. Tyler May 15 2013).*

74. In a property dispute, an estate was entitled to recover rents from two buyers because a wife had a homestead interest in property; although she had not resided there in many years, the uncontroverted evidence showed that she expressed an intent to return. Even though the statement of intent was contingent upon her finding a caregiver, this did not disrupt or reverse proof of her intent, and it did not create a fact issue concerning whether she intended to abandon

her homestead rights. *Gilbreath v. Steed, 2013 Tex. App. LEXIS 5947 (Tex. App. Tyler May 15 2013).*

75. Trial court did not abuse its discretion in granting an equitable lien on the ex-husband's property because he did not present evidence that the property on which the trial court attached a lien was his homestead. *Stoker v. Stoker, 2008 Tex. App. LEXIS 8427 (Tex. App. Houston 1st Dist. Nov. 6 2008).*

76. Nonjoining spouse exercising the homestead right to his spouse's conveyance of a separate property homestead exerts a right to possession under the granting spouse's title. *Geldard v. Watson, 214 S.W.3d 202, 2007 Tex. App. LEXIS 559 (Tex. App. Texarkana 2007).*

77. In divorce case, although trial court properly awarded attorney fees against former husband in favor of former wife's trial attorney, attorney was a third party who was not entitled to attorney fees in the nature of child support; the trial court erred in granting a lien of any kind in favor of the attorney on the husband's homestead under *Tex. Const. art. XVI, § 50, Tex. Prop. Code Ann. § 41.001*; and *Tex. Fam. Code Ann. § 106.002. Johnson v. Johnson, 2005 Tex. App. LEXIS 10458 (Tex. App. Austin Dec. 16 2005).*

78. There was no authority to suggest that a trial court could convert an existing judgment into a sanction in order to circumvent well-established law precluding a court from ordering payment of attorney's fees from homestead proceeds; therefore, the trial court abused its discretion by doing so. *Harleaux v. Harleaux, 154 S.W.3d 925, 2005 Tex. App. LEXIS 971 (Tex. App. Dallas 2005).*

79. In a divorce case, the imposition of an equitable lien on a second property in order to secure an economic contribution claim did not violate *Tex. Const. art. 16, § 50* where the second property was alleged to be a former husband's homestead because the equitable lien was one that secures a debt "for the purchase money." *Delancey v. Delancey, 2013 Tex. App. LEXIS 296 (Tex. App. Austin Jan. 11 2013).*

80. Protection afforded to homestead property did not bar an order, in the property division of a divorce proceeding, that a $125,000 money judgment to the wife be secured by a deed of trust against the husband's separate-property homestead. The money judgment and lien were tied back to monies awarded to the wife in the parties' prior agreed divorce decree and thus the lien fell within the purchase-money lien exception. *Barras v. Barras, 396 S.W.3d 154, 2013 Tex. App. LEXIS 705 (Tex. App. Houston 14th Dist. 2013).*

81. Four-year limitations period of *Tex. Civ. Prac. & Rem. Code Ann. § 16.051* applied to appellant borrowers' claims against appellee bank that their mortgage was void because it was signed at their home and without the required notice in violation of *Tex. Const. Art. XVI, § 50(a)(6)(M)(i)*, (N), (g), and the action was time-barred; the doctrine of fraudulent concealment did not apply because the facts (where the loan was closed and the lack of notice) were known and not able to be concealed. *. Priester v. Jp Morgan Chase Bank, N.A., 708 F.3d 667, 2013 U.S. App. LEXIS 3097, 84 Fed. R. Serv. 3d (Callaghan) 1519 (5th Cir. Tex. 2013).*

82. Bank sought a non-judicial foreclosure of the home equity lien because of a material breach of the Loan Agreement. which was a typical foreclosure proceeding and one upon which the trial court was capable of rendering judgment; the

bank's cause of action for foreclosure of the mortgage was not barred by the statute of limitations. *King v. Deutsche Bank Nat'l Trust Co., 2013 Tex. App. LEXIS 9035 (Tex. App. San Antonio July 24 2013).*

83. To give effect to *Tex. Const. art. XVI, § 50(c),* as the other (non-home equity loan) homestead cases do, limitations cannot bar a plaintiff's claims based simply on the passage of time from the date of closing to the date he filed suit. *Smith v. Jpmorgan Chase Bank, 825 F. Supp. 2d 859, 2011 U.S. Dist. LEXIS 134221 (S.D. Tex. 2011).*

84. Lender's motion to dismiss a borrower's complaint alleging a violation of his homestead rights under *Tex. Const. art. XVI, § 50(a)(6)(K),* was denied where the four-year statute of limitations set forth in *Tex. Civ. Prac. & Rem. Code § 16.051* did not apply to the claim that the lender's lien was void. *Smith v. Jpmorgan Chase Bank, 825 F. Supp. 2d 859, 2011 U.S. Dist. LEXIS 134221 (S.D. Tex. 2011).*

85. Borrowers' claims against the lienholders brought under *Tex. Const. art. XVI, § 50(a)(6),* were time-barred where the claims were governed by the four-year residual provision in *Tex. Civ. Prac. & Rem. Code § 16.051,* the 2003 amendments to the Texas Constitution did not apply retroactively, and the lender's lack of authorization was cured within the four-year limitations period. *Boutari v. Jp Morgan Chase Bank, N.A., 2010 U.S. Dist. LEXIS 144094 (W.D. Tex. June 10 2010).*

86. Where a mortgage lender allegedly violated *Tex. Const. art. XVI, § 50(a)(6)(Q)(iii),* by giving an incomplete Affidavit of Acknowledgment as to Fair Market Value of Homestead Property to the debtor to sign at closing, judgment was entered in favor of the lender and the beneficial owner of the mortgage loan because the claims were barred by the four-year statute of limitations period found in *Tex. Civ. Prac. & Rem. Code Ann. § 16.051. Langehennig v. Ameriquest Mortgage Co. (In re Ortegon), 398 B.R. 431, 2008 Bankr. LEXIS 3610 (Bankr. W.D. Tex. 2008).*

87. Trial court did not err in granting a lender's motion for summary judgment on limitations on homeowners' causes of action that alleged violations of *Tex. Const. art. XVI, § 50(a)(6)(B)* and the fraudulent lien statute where the homeowners had failed to file suit within four years of the date of closing of their home equity loan, and where the homeowners had waived any right to assert the discovery rule or fraudulent concealment in response to the lender's motion because they did not plead the discovery rule or the fraudulent concealment defense until their first amended petition, which was filed after the submission date of the motion for summary judgment and without leave of court. *Rivera v. Countrywide Home Loans, Inc., 262 S.W.3d 834, 2008 Tex. App. LEXIS 6018 (Tex. App. Dallas 2008).*

88. *Tex. Const. art. XVI, § 50,* was not preempted by the Home Owners' Loan Act, *12 U.S.C.S. § 1461* et seq. or the Alternative Mortgage Transaction Parity Act, *12 U.S.C.S. § 3801* et seq. and regulations of federal agencies thereunder, which permitted investment in alternative mortgages. *First Gibralter Bank, Fsb v. Morales, 815 F. Supp. 1008, 1993 U.S. Dist. LEXIS 2499 (W.D. Tex. 1993).*

89. Lien which a mortgage company claimed to have on Chapter 13 bankruptcy debtors' homestead was invalid, in part, because it was based on a loan the company made to the debtors so they could pay off a home equity loan they obtained after they designated their property for agricultural use. The loan violated *Tex. Const. art. XVI, § 50(a)(6)(I). Johnson v. Nat'l City Mortg. Co. (in re Johnson), 2009 Bankr. LEXIS 2956, 62 Collier Bankr. Cas. 2d (MB) 1380 (Bankr. E.D. Tex. Sept. 11 2009).*

90. Bank that loaned money to an LLC and received a deed of trust on a homestead that was occupied by a husband and wife who later declared Chapter 13 bankruptcy was not a bona fide lender and did not have a valid and enforceable lien on the debtors' homestead. The bank was not a bona fide lender because documents the LLC presented to obtain the

loan raised questions about the debtors' interest in the property, and the bank knew or should have known that the LLC's claim that it owned the property was suspect. *Harydzak v. New Horizon, LLC (In re Harydzak), 406 B.R. 499, 2009 Bankr. LEXIS 2062 (Bankr. S.D. Tex. 2009).*

91. Deed of trust which a Chapter 13 debtor gave a bank before she declared bankruptcy was invalid under *Tex. Const. art. 16, § 50* because property the debtor deeded was her homestead and the bank knew that an affidavit the debtor signed, which declared that other property was her homestead, was false. *Cervera v. First State Bank (in re Cervera), 2006 Bankr. LEXIS 4663 (Bankr. N.D. Tex. Jan. 18 2006).*

92. Texas Supreme Court did not suggest in case law that the means by which a cotenant acquires that status from a prior cotenant diminishes the cotenant's rights or affects the application of the general rule, nor did the court suggest that the homestead protection embodied in *Tex. Const. art. XVI, § 50* precludes a request for partition by sale by a cotenant who was the judgment creditor of someone other than the homestead-claiming cotenant, as *Tex. Prop. Code Ann. § 41.021* explicitly refers to a "judgment debtor" and "judgment creditor" in the context of enforcing a judgment debt when judgment debtor has not made a voluntary homestead designation; one cotenant cannot rely upon a homestead right to trump the partition right of a cotenant who acquired his interest from a prior cotenant. *Grant v. Clouser, 287 S.W.3d 914, 2009 Tex. App. LEXIS 4684 (Tex. App. Houston 14th Dist. 2009).*

93. Joint owner acquired a 50 percent interest in the property from a prior cotenant, which made the joint owner a cotenant with the other cotenant and her brother, and the cotenant's homestead right was subordinate to the owner's right to partition; the cotenant's homestead rights attached to her share of the proceeds from the sale and the trial court erred in denying the owner's partition for sale. *Grant v. Clouser, 287 S.W.3d 914, 2009 Tex. App. LEXIS 4684 (Tex. App. Houston 14th Dist. 2009).*

94. Per diem interest, for purposes of interest under the exception for an extension of credit, was still interest, though prepaid, and legitimate discount points to lower the loan interest rate, in effect, substituted for interest; true discount points were not fees necessary to originate, evaluate, maintain, record, insure, or service but were an option available to the borrower and thus not subject to the three percent cap set forth in this provision. *Fin. Comm'n of Tex. v. Norwood, 418 S.W.3d 566, 2014 Tex. LEXIS 97, 57 Tex. Sup. Ct. J. 222 (Tex. 2014).*

95. Extension of credit exception to this provision precluded a borrower from closing a loan through an attorney-in-fact under a power of attorney not executed at the office of the lender, an attorney at law, or a title company as the exception required a formality to the closing that prevented coercive practices. *Fin. Comm'n of Tex. v. Norwood, 418 S.W.3d 566, 2014 Tex. LEXIS 97, 57 Tex. Sup. Ct. J. 222 (Tex. 2014).*

96. Plaintiff's lien did not fall within the scope of the constitutional provision because his lien was a purchase-money lien, not a home-equity lien. *Belanger v. Bac Home Loans Servicing, L.P., 839 F. Supp. 2d 873, 2011 U.S. Dist. LEXIS 151554 (W.D. Tex. 2011).*

97. Creditor did not violate *Tex. Const. art. XVI, § 50* because of a perceived inconsistency between the note and the truth-in-lending disclosure where the truth-in-lending disclosure was clearly labeled as such, and the perceived inconsistency between the note and the truth-in-lending disclosure arose from the creditor's compliance with federal truth-in-lending requirements. *Edwards v. Option One Mortgage Corp. (In re Edwards), 2001 Bankr. LEXIS 2197 (Bankr. W.D. Tex. Feb. 26 2001).*

98. *Tex. Const. art. XVI, § 50(j)* did not prohibit loan documents from containing a general severability clause, such as

the one contained in the deed of trust. *Edwards v. Option One Mortgage Corp. (In re Edwards), 2001 Bankr. LEXIS 2197 (Bankr. W.D. Tex. Feb. 26 2001).*

99. Although a renewal and extension rider was not completed or attached to a deed of trust, there was no violation of *Tex. Const. art. XVI, § 50* where a loan was intended to refinance and pay off an original purchase money loan, as well as home improvement debts; a debtor was unable to use a minor technical defect to avoid his obligation to pay. *Robinson v. Saxon Mortg. Servs., 240 S.W.3d 311, 2007 Tex. App. LEXIS 6169 (Tex. App. Austin 2007).*

100. Creditor's lien was unenforceable so as to allow relief from Chapter 7 automatic stay under *11 U.S.C.S. 362* because the debtor was "required" to use the home equity loan proceeds to repay a preexisting debt to the creditor as a condition of making the loan, which violated *Tex. Const. art. XVI, § 50(a)(6)(Q)(i). Box v. First State Bank, Bremond S.S.B., 340 B.R. 782, 2006 U.S. Dist. LEXIS 14645 (S.D. Tex. 2006).*

101. Even if the homeowners' home equity loan was invalid under *Tex. Const. art. XVI, § 50(e)* at the time the homeowners' association's declaration was issued, the evidence showed that the bank was entitled to equitable subrogation and allowed to step into the shoes of prior lienholders and the HOA foreclosure did not extinguish the bank's superior lien on the property. *Dtnd Sierra Invs., Llc v. Deutsche Bank Nat'l Trust Co., 2013 Tex. App. LEXIS 10460 (Tex. App. San Antonio Aug. 21 2013).*

102. Arbitration of a mortgagee's request for a public sale of a property was not available since the mortgagor's home equity loan was made pursuant to this provision and the action was a foreclosure action, even though the Texas Probate Court required an intermediate procedural step of a final and appealable order establishing the mortgagee's claim. *Wells Fargo Fin. Tex., Inc. v. Valero, 2013 Tex. App. LEXIS 10570 (Tex. App. Amarillo Aug. 21 2013).*

103. Bank sought a non-judicial foreclosure of the home equity lien because of a material breach of the Loan Agreement. which was a typical foreclosure proceeding and one upon which the trial court was capable of rendering judgment; the bank's cause of action for foreclosure of the mortgage was not barred by the statute of limitations. *King v. Deutsche Bank Nat'l Trust Co., 2013 Tex. App. LEXIS 9035 (Tex. App. San Antonio July 24 2013).*

104. Trial court erred when it assessed the lender's attorney's fees against the homeowners personally because the nonrecourse status of the loan mandated that the homeowners were not personally liable for the attorney's fees the lender incurred; the lender may only recover its attorney's fees and costs against the property. *Murphy v. Wells Fargo Bank, N.A., 2013 Tex. App. LEXIS 1485 (Tex. App. Houston 14th Dist. Feb. 12 2013).*

105. Summary judgment in favor of the bank was proper, because the bank conclusively established its right to summary judgment on its counterclaim as a matter of law under the security instrument and *Tex. Prop. Code Ann. § 51.002;* the bank's summary-judgment evidence supporting its right to foreclosure included copies of the home equity note and security instrument, the assignment of the note and security instrument to the bank, and an affidavit from the bank that the borrower was in material breach of the note for failure to make payments and that the borrower had been given all requisite notices. *Bierwirth v. Indep. Bankersbank, 2012 Tex. App. LEXIS 6681 (Tex. App. Austin Aug. 10 2012).*

106. Although debtors pointed to some evidence on the claim that the creditor failed to give a copy of the final disclosure of the fees and charges, as required by *Tex. Const. art. XVI, § 50(a)(6)(M)(ii),* this was attached to the creditor's motion, and the debtors' attempt to use the evidence to obtain reversal highlighted a troubling area of summary judgment law, troubling in that within this area of summary judgment practice, courts would sometimes be

caught between ignoring the rules of procedure on the one hand or allowing a seemingly unfair result on the other hand. *Dyer v. Accredited Home Lenders, Inc., 2012 Tex. App. LEXIS 877 (Tex. App. Fort Worth Feb. 2 2012).*

107. Creditor was not entitled to summary judgment on a debtors' claim that the creditor violated *Tex. Const. art. 16, § 50(a)(6)(B)* because the creditor did not produce an appraisal upon which the figure in an acknowledged Fair Market Value Statement was made, as required by *Tex. Const. art. 16, § 50(h). Reno v. CIT Group (In re Reno), 2008 Bankr. LEXIS 3239 (Bankr. W.D. Tex. Sept. 4 2008).*

108. Creditor was not entitled to summary judgment on a debtors' claim that the creditor violated *Tex. Const. art. 16, § 50(a)(6)(E)* because, based on the HUD-1 closing statement, the various fees, including the origination fee, exceeded the 3% cap. *Reno v. CIT Group (In re Reno), 2008 Bankr. LEXIS 3239 (Bankr. W.D. Tex. Sept. 4 2008).*

109. Creditor was not entitled to summary judgment on a debtors' claim that the creditor violated *Tex. Const. art. 16, § 50(a)(6)(H)* and (Q) because, there were genuine issues concerning whether or not the mobile home was part of the homestead prior to the completion of the lending transaction. *Reno v. CIT Group (In re Reno), 2008 Bankr. LEXIS 3239 (Bankr. W.D. Tex. Sept. 4 2008).*

110. Partial summary judgment issued in favor of the lender that would allow the lender to proceed in foreclosure on the homestead was affirmed because the transaction between the lender and the homeowners fell within the refinancing exception to the homestead provision, pursuant to *Tex. Const. art. XVI, § 50(a)(4)*; fact that the new mortgage exceeded the amount owed on the home did not exempt the extra from the foreclosure exception because all of the funds were used to renew and extend the prior lien that had been dissolved by payment. *Rains v. Constr. Fin. Servs., 2006 Tex. App. LEXIS 7545 (Tex. App. Austin Aug. 25 2006).*

111. Borrowers who signed a deed of trust which indicated that a house they owned was not their homestead, were estopped from claiming that the house was their homestead after they defaulted on a loan; their request for a judgment declaring that a lien held by a mortgage company was invalid, was denied. *Gonzales v. Ameriquest Mortg. Corp., 2005 U.S. Dist. LEXIS 32370 (W.D. Tex. Dec. 8 2005).*

112. Claim of a maker of a home equity note that the note ran afoul of *Tex. Const. art. XVI, § 50(a)(6)*, was precluded by res judicata because it should have been brought as a defense in a previous state trial court proceeding that had found that the note was valid, enforceable, and in default or on appeal of that case. *Gore v. Homecomings Fin. Network, Inc., 2005 U.S. Dist. LEXIS 30907 (N.D. Tex. Dec. 5 2005).*

113. Notice of acceleration was effective because it was sent by certified mail and the property owner's son signed for the letter; moreover, the notice and application to foreclose, also sent by certified mail, was acknowledged by the son's wife. Thus, the owner had at least constructive notice of the lender and underwriter's actions after her loan went into default. *Grun v. Countrywide Home Loans, Inc., 2004 U.S. Dist. LEXIS 12399 (W.D. Tex. July 1 2004).*

114. The lien created by defendant lender in plaintiff property owner's property was valid where: (1) since property insurance was excluded from the 3 percent calculation, and the property owner did not pay $ 7,500 (but only paid $ 5,000), defendant lender did not exceed the 3 percent cap on closing costs; (2) defendant lender did not have reason to suspect the loan application's authenticity even though the owner had not signed the application, so no fact issue existed to demonstrate that the twelve day cooling off period was not met; (3) the lender offered the credit, and on June 19, the owner accepted the offer and the election not to rescind was signed on June 25, so the three day right-of-recission provision was satisfied; and (4) prepayment of hazard insurance out of the loan proceeds was a voluntary choice made by the borrower and not prohibited under Tex. Const.§ 50(a)(6)(Q)(i). *Grun v. Countrywide Home Loans, Inc., 2004 U.S. Dist. LEXIS 12399 (W.D. Tex. July 1 2004).*

115. County court did not have jurisdiction to conduct a trial de novo in a forcible detainer case because there was a

triable issue of title. The original lender had obtained an order from the district court, but the foreclosure was conducted by an alleged successor that did not itself get a district court order, as required by *Tex. Const. art. XVI § 50 (a)(6)(D)* and the home equity security instrument. *A Plus Invs., Inc. v. Rushton, 2004 Tex. App. LEXIS 3605 (Tex. App. Fort Worth Apr. 22 2004).*

116. Where, pursuant to *Tex. Const. art. XVI, § 50*, home equity loans were non-recourse in Texas, and because non-recourse loans were loans that did not need to be reaffirmed, because reaffirmation discharged only unsecured debt, a reaffirmation agreement on a home equity loan was unnecessary; moreover, the court's fear was that reaffirmation agreements ultimately have been used by the creditor in a state court action to recover a deficiency obligation otherwise prohibited by *Tex. Const. art. XVI, § 50*, on some theory of waiver or the like. *In re Pfeil, 2007 Bankr. LEXIS 2349 (Bankr. W.D. Tex. July 10 2007).*

117. Court erred in awarding the borrower monetary damages under either his wrongful foreclosure or his breach of contract cause of action, because the borrower presented no evidence that the property was sold for an inadequate price or that he was otherwise harmed by the delay in the foreclosure sale, and it was undisputed that the lender purchased the property at the foreclosure and as of the date of trial, the borrower continued to occupy the premises. *Wells Fargo Bank, N.A. v. Robinson, 391 S.W.3d 590, 2012 Tex. App. LEXIS 10280 (Tex. App. Dallas 2012).*

118. Court did not err in denying forfeiture, because the loan agreement entered into by the parties complied with the constitutional requirements, when the deed of trust required a court order for foreclosure. *Wells Fargo Bank, N.A. v. Robinson, 391 S.W.3d 590, 2012 Tex. App. LEXIS 10280 (Tex. App. Dallas 2012).*

119. Court erred in awarding the borrower monetary damages under either his wrongful foreclosure or his breach of contract cause of action, because the borrower presented no evidence that the property was sold for an inadequate price or that he was otherwise harmed by the delay in the foreclosure sale, and it was undisputed that the lender purchased the property at the foreclosure and as of the date of trial, the borrower continued to occupy the premises. *Wells Fargo Bank, N.A. v. Robinson, 391 S.W.3d 590, 2012 Tex. App. LEXIS 10280 (Tex. App. Dallas 2012).*

120. Court did not err in denying forfeiture, because the loan agreement entered into by the parties complied with the constitutional requirements, when the deed of trust required a court order for foreclosure. *Wells Fargo Bank, N.A. v. Robinson, 391 S.W.3d 590, 2012 Tex. App. LEXIS 10280 (Tex. App. Dallas 2012).*

121. Bank was entitled to an order of foreclosure pursuant to *Tex. Const. art. XVI, § 50(a)(6)(D)* because (1) the bank presented evidence of a valid home equity note, security instrument, and agreement concerning the homeowners' homestead property; (2) the bank showed that the note holder provided the homeowners' notice of default and intent to accelerate by certified mail and also provided them with notice of acceleration; (3) the homeowners did not cure the default; and (4) the homeowners presented no contrary evidence. *Alcala v. Deutsche Bank Nat'l Trust Co., 2011 U.S. Dist. LEXIS 20441 (S.D. Tex. Mar. 2 2011).*

122. Borrowers' request for declaratory judgment, based on the alleged violation of *Tex. Const. art. XVI, § 50(a)(6)(B)*, failed as a matter of law where the sworn testimony in their home equity affidavit was that the extension of credit was of a principal amount that, when added to the aggregate total of the outstanding principal balances of all other indebtedness secured by valid encumbrances of record against the property, did not exceed 80 percent of the fair market value of the property on the date the extension of credit was made, and since the information in the affidavit

contradicted the allegations in the complaint, the affidavit controlled. *Summers v. Pennymac Corp., 2012 U.S. Dist. LEXIS 168990 (N.D. Tex. Nov. 28 2012).*


123. Because defendant bank, holding plaintiff former home owner's note and deed of trust, invoked *Tex. Const. art. XVI, § 50(a)(6)(Q)(x)*'s cure provision within 60 days of the owner husband's deposition, the § 50(a)(6)(M)(ii), (Q)(v), violations alleged in the deposition were adequately cured and summary judgment was properly granted to the bank. *Puig v. Citibank, N.A., 514 Fed. Appx. 483, 2013 U.S. App. LEXIS 3767 (5th Cir. Tex. 2013).*

124. While defendant bank's letter invoking the cure provision of *Tex. Const. art. XVI, § 50(a)(6)(Q)(x)*, was not timely issued as to the alleged § 50(a)(6)(M)(i) violation, plaintiff former home owner husband admitted his signature on the Extensions of Credit notice dated a month before closing, and the 3-day opportunity to rescind notice under § 50(a)(6)(Q)(viii) acknowledged that more than 3 days had elapsed since the owners received notification of the right to cancel, and further, the plaintiff owners had admitted never seeking recission, thus, their challenge to the bank's right to foreclose failed. *Puig v. Citibank, N.A., 514 Fed. Appx. 483, 2013 U.S. App. LEXIS 3767 (5th Cir. Tex. 2013).*

125. Four-year limitations period of *Tex. Civ. Prac. & Rem. Code Ann. § 16.051* applied to appellant borrowers' claims against appellee bank that their mortgage was void because it was signed at their home and without the required notice in violation of *Tex. Const. Art. XVI, § 50(a)(6)*, and the action was time-barred. *Priester v. Jp Morgan Chase Bank, N.A., 708 F.3d 667, 2013 U.S. App. LEXIS 3097, 84 Fed. R. Serv. 3d (Callaghan) 1519 (5th Cir. Tex. 2013).*

126. Four-year limitations period of *Tex. Civ. Prac. & Rem. Code Ann. § 16.051* applied to appellant borrowers' claims against appellee bank that their mortgage was void because it was signed at their home and without the required notice in violation of *Tex. Const. Art. XVI, § 50(a)(6)*, and the action was time-barred; because a cure provision existed in *Tex. Const. Art. XVI, § 50(a)(6)(Q)*, liens that were contrary to the requirements of § 50(a) were voidable rather than void from the start. *Priester v. Jp Morgan Chase Bank, N.A., 708 F.3d 667, 2013 U.S. App. LEXIS 3097, 84 Fed. R. Serv. 3d (Callaghan) 1519 (5th Cir. Tex. 2013).*


127. Bank that loaned money to an LLC and received a deed of trust on a homestead that was occupied by a husband and wife who later declared Chapter 13 bankruptcy was not a bona fide lender and did not have a valid and enforceable lien on the debtors' homestead. The bank was not a bona fide lender because documents the LLC presented to obtain the loan raised questions about the debtors' interest in the property, and the bank knew or should have known that the LLC's claim that it owned the property was suspect. *Harydzak v. New Horizon, LLC (In re Harydzak), 406 B.R. 499, 2009 Bankr. LEXIS 2062 (Bankr. S.D. Tex. 2009).*


128. Loan to refinance a home did not violate the Texas Constitution, because the bank was permitted to rely on a written acknowledgement executed by the borrowers indicating that the fair market value of their home was $120,000; the bank's knowledge of a tax appraisal was not evidence that the value included in the acknowledgment was incorrect. *Gonzalez v. U.S. Bank Nat'l Ass'n, 2013 U.S. App. LEXIS 23918 (5th Cir. Tex. Nov. 29 2013).*


129. Trial court did not err by finding that a lien was invalid and a loan was forfeited as violative of the Texas Constitution, despite failing to submit a question of a borrower's notification and the creditor's failure to cure, because the issue of notice was conclusively established in the record. Moreover, the creditor's briefing relating to whether the trial court erred in rendering judgment that found the creditor did not cure its failure to comply within the cure period

was inadequate. *Wells Fargo Bank v. Leath, 2014 Tex. App. LEXIS 59 (Tex. App. Dallas Jan. 6 2014).*

130. A lien a bank held on a Chapter 7 debtor's homestead was invalid and unenforceable under *Tex. Const. art. XVI, § 50* because it secured a home equity loan on property that was designated for agricultural use, and the debtor was not personally liable for the debt because she did not obtain the loan by committing actual fraud; the debtor was not time-barred under *Tex. Civ. Prac. & Rem. Code Ann. § 16.051* from seeking a judgment declaring that she could avoid the bank's lien because she raised her claim as a counterclaim to the bank's claim that it was entitled to enforce the lien. *First Bank of Roxton v. Shankles (in re Shankles), 2013 Bankr. LEXIS 3992 (Bankr. E.D. Tex. Sept. 23 2013).*

131. Common law governing foreclosure sales and the use of real estate subject to liens to satisfy a obligations applies to the homestead provision in the state constitution. Accordingly the servicer for a junior home equity security instrument was not required to obtain a court order pursuant to the state constitution or the rules of civil procedure in order to receive excess proceeds from the foreclosure of the senior purchase money deed of trust or the rules of civil procedure in order to receive excess proceeds from the foreclosure of the senior purchase money deed of trust. *Patton v. Porterfield, 411 S.W.3d 147, 2013 Tex. App. LEXIS 11272 (Tex. App. Dallas 2013).*

132. Because the cash proceeds from the sale of a homestead retain the character of a homestead for purposes of satisfying a home equity lien, the payment of a home equity note from the excess proceeds of the foreclosure of the senior purchase money deed of trust did not violate the provision of the state constitution that required that the home equity lien be secured by only the homestead. *Patton v. Porterfield, 411 S.W.3d 147, 2013 Tex. App. LEXIS 11272 (Tex. App. Dallas 2013).*

133. Because the nonrecourse nature of a home equity note had the effect of making it payable out of the collateral, i.e., the homestead, the nonrecourse language in the homestead exemption did not prohibit the proceeds of the foreclosure sale from being distributed to the servicer of the home equity security instrument. *Patton v. Porterfield, 411 S.W.3d 147, 2013 Tex. App. LEXIS 11272 (Tex. App. Dallas 2013).*

134. Home equity borrowers showed that their cases against a mortgage company were related and that transferring the cases to one pretrial court would serve the convenience of the parties and witnesses because the claims were based on the company's alleged standard practices in modifying home equity loans; consolidation would ensure that issues relating to the application of the Texas Constitution were decided the same way by allowing the pretrial judge to make consistent rulings. *In re Mortgage, LLC, 2013 Tex. LEXIS 593 (Tex. Aug. 16 2013).*

135. Closing agent's clerical process and manner of disbursing funds cannot determine the constitutionality of a transaction; therefore, no violation occurred in relation to a home-equity loan because, after crediting a borrower with a lender credit that was designed to reduce fees, the borrower paid a sum within the constitutional three percent limit *Abernathy v. Deutsche Bank Nat'l Trust Co., 2013 Tex. App. LEXIS 9850 (Tex. App. Austin Aug. 8 2013).*

136. Borrowers did not establish any violations of their homestead rights because their home-equity loan was not shown to exceed the permissible amount, the fees charged were not excessive, and the closing occurred more than 12 days after submission of the loan application. *Salas v. Lnv Corp., 409 S.W.3d 209, 2013 Tex. App. LEXIS 9886 (Tex. App. Houston 14th Dist. 2013).*

137. Ex-wife's action to remove cloud on title and to quiet title, which alleged that a home equity lien was void as to her because she did not sign the written agreement granting the lien or consent to it, was barred by the four-year limitations period because she did not file suit until six years after first discovering the home equity loan and lien; the lien was voidable rather than void, and subject to cure under the provision of the Texas Constitution governing home equity liens. *Williams v. Wachovia Mortg. Corp., 407 S.W.3d 391, 2013 Tex. App. LEXIS 8638 (Tex. App. Dallas 2013).*

138. Texas Finance Commission's and Credit Union Commission's interpretations of *Tex. Const. art. XVI, § 50* were

subject to judicial review; every implication of § 50(u) was that judicial review was not foreclosed, and that seemed to be the Legislature's understanding in subjecting the Commissions' interpretations to the Administrative Procedure Act, which provided for judicial review. *Fin. Comm'n of Tex. v. Norwood, 418 S.W.3d 566, 2013 Tex. LEXIS 491, 56 Tex. Sup. Ct. J. 696 (Tex. 2013).*

139. Homeowners had standing because *Tex. Const. art. XVI, § 50(u)* was unique and preclusion of the injury typically required for standing required application of the doctrine in context. *Fin. Comm'n of Tex. v. Norwood, 418 S.W.3d 566, 2013 Tex. LEXIS 491, 56 Tex. Sup. Ct. J. 696 (Tex. 2013).*

140. Under *Tex. Const. art. XVI, § 50(u)*, compliance with any interpretation or judicial decision, even one later overturned, was compliance with the Constitution itself; review of the Texas Financial and Credit Union Commissions' interpretations may alter what lenders must do going forward, but it did not expose them to liability for past conduct. *Fin. Comm'n of Tex. v. Norwood, 418 S.W.3d 566, 2013 Tex. LEXIS 491, 56 Tex. Sup. Ct. J. 696 (Tex. 2013).*

141. "Interest" as used in *Tex. Const. art. XVI, § 50(a)(6)(E)*, meant the amount determined by multiplying the loan principal by the interest rate. *Fin. Comm'n of Tex. v. Norwood, 418 S.W.3d 566, 2013 Tex. LEXIS 491, 56 Tex. Sup. Ct. J. 696 (Tex. 2013).*

142. Executing the required consent or a power of attorney are part of the closing process and must occur only at one of the locations allowed by the constitutional provision, *Tex. Const. art. XVI, § 50(a)(6)(N). Fin. Comm'n of Tex. v. Norwood, 418 S.W.3d 566, 2013 Tex. LEXIS 491, 56 Tex. Sup. Ct. J. 696 (Tex. 2013).*

143. *Tex. Const. art. XVI, § 50(g)* required that a loan not be closed before the 12th day after the lender provided the borrower the prescribed notice; in giving meaning to "provides", the Texas Finance and Credit Union Commissions have determined there was a rebuttable presumption that notice was received three days after it was mailed. *Fin. Comm'n of Tex. v. Norwood, 418 S.W.3d 566, 2013 Tex. LEXIS 491, 56 Tex. Sup. Ct. J. 696 (Tex. 2013).*

144. In an action for legal malpractice and breach of contract, the client claimed her divorce attorney was negligent by failing to seek credit for the equity that was built into the home during the marriage; an expert witness for the attorney testified by affidavit that title to the home was never vested in the client because there was no deed of record in favor of the client. Her signature on the deed of trust executed in connection with the home equity loan did not confer ownership of the home to her because her signature was required by *Tex. Const. art. XVI, § 50(a)(6)(A)* and *Tex. Fam. Code Ann. § 5.001. Gaspard v. Wester, 2013 Tex. App. LEXIS 5386 (Tex. App. Corpus Christi May 2 2013).*

145. Nothing in a deed of trust violated the constitutional requirement that a home-equity loan be secured by a lien that may be foreclosed upon only by a court order, *Tex. Const. art. XVI, § 50(a)(6)(D)*, where an express provision granting a right to judicial foreclosure to the lienholder was unnecessary to pursue the remedy, and the deed of trust did not prohibit judicial foreclosure, *Erickson v. Wells Fargo Bank Na (in re Erickson), 2012 U.S. Dist. LEXIS 136501 (W.D. Tex. Sept. 24 2012).*

146. Debtor failed to show a violation of *Tex. Const. art. XVI, § 50(a)(6)(K)*, where all existing debt secured by the property were extinguished by the proceeds of the home-equity loan at issue, and thus, the loan was the only debt secured by the homestead at the time the extension of credit was made. *Erickson v. Wells Fargo Bank Na (in re Erickson), 2012 U.S. Dist. LEXIS 136501 (W.D. Tex. Sept. 24 2012).*

147. Bankruptcy court did not err in applying equitable estoppel to the debtor's challenge of the validity of a home-equity lien based on the defects of the second and third prior liens where the deed of trust itself provided evidence of the lienholder's reliance. *Erickson v. Wells Fargo Bank Na (in re Erickson), 2012 U.S. Dist. LEXIS 136501 (W.D. Tex. Sept. 24 2012).*

Tex. Const. Art. XVI, § 50

148. Bankruptcy court did not err in finding that the debtor had received a copy of all documents signed at closing where the closing agent for the home-equity loan could not recall any details about the closing to corroborate the debtor's testimony, and the debtor himself struggled to recollect significant facts to support his claim, such as which documents he executed on which day so as to identify the documents he alleged were not provided to him. *Erickson v. Wells Fargo Bank Na (in re Erickson), 2012 U.S. Dist. LEXIS 136501 (W.D. Tex. Sept. 24 2012).*

149. Bankruptcy court's order denying attorney's fees to the lienholder was reversed and remanded where the fees were denied in their entirety based on the unavailability of a personal judgment against the debtor, but there was no consideration of an in rem judgment. *Erickson v. Wells Fargo Bank Na (in re Erickson), 2012 U.S. Dist. LEXIS 136501 (W.D. Tex. Sept. 24 2012).*

150. To give effect to *Tex. Const. art. XVI, § 50(c)*, as the other (non-home equity loan) homestead cases do, limitations cannot bar a plaintiff's claims based simply on the passage of time from the date of closing to the date he filed suit. *Smith v. Jpmorgan Chase Bank, 825 F. Supp. 2d 859, 2011 U.S. Dist. LEXIS 134221 (S.D. Tex. 2011).*

151. Only way to transform an invalid home equity lien into a valid one is to timely cure the constitutional violation under the provisions of *Tex. Const. art. XVI, § 50(a)(6)(Q)(x)*, within 60 days of notice, whenever that notice is given. *Smith v. Jpmorgan Chase Bank, 825 F. Supp. 2d 859, 2011 U.S. Dist. LEXIS 134221 (S.D. Tex. 2011).*

152. Lender's motion to dismiss a borrower's complaint alleging a violation of his homestead rights under *Tex. Const. art. XVI, § 50(a)(6)(K)*, was denied where the four-year statute of limitations set forth in *Tex. Civ. Prac. & Rem. Code § 16.051* did not apply to the claim that the lender's lien was void. *Smith v. Jpmorgan Chase Bank, 825 F. Supp. 2d 859, 2011 U.S. Dist. LEXIS 134221 (S.D. Tex. 2011).*

153. Lender forfeited all principal and interest under a promissory note secured by a bankruptcy debtor's homestead since the lender did not comply with the requirements of *Tex. Const. art. XVI, § 50(a)(6)* by failing to be an authorized home equity lender, failing to provide for only judicial foreclosure, failing to provide the debtor with required documentation, failing to advise the debtor of rescission rights, and failing to provide a written acknowledgment of the value of the property. *Arnold v. Quigley (in re Quigley), 2011 Bankr. LEXIS 1004 (Bankr. N.D. Tex. Mar. 16 2011).*

154. Assignee from a lender of a note secured by a bankruptcy debtor's homestead forfeited all principal and interest under the note under *Tex. Const. art. XVI, § 50(a)(6)(Q)(xi)* since the lender to the debtor was not an authorized home equity lender and the assignee was the holder of the note. *Arnold v. Quigley (in re Quigley), 2011 Bankr. LEXIS 1004 (Bankr. N.D. Tex. Mar. 16 2011).*

155. Mortgage granted by a lender which accomplished a nonjudicial foreclosure against a bankruptcy debtor's homestead was invalid under *Tex. Const. art. XVI, § 50(a)(6)(D)*, since foreclosure of the debtor's home equity loan could only be accomplished by court order, and thus the lender did not have legal title to the debtor's property. *Arnold v. Quigley (in re Quigley), 2011 Bankr. LEXIS 1004 (Bankr. N.D. Tex. Mar. 16 2011).*

156. Creditor's lien based on a home equity loan was invalid under *Tex. Const. art. XVI, § 50(a)(6)(A)* since the signatures of a bankruptcy debtor's spouse on the loan documents were obvious forgeries, and thus the spouse did not consent to the lien. *Gulley v. Contrywide Home Loans, Inc. (in re Gulley), 436 B.R. 878, 2010 Bankr. LEXIS 2803 (Bankr. N.D. Tex. 2010).*

157. Creditor's lien based on a home equity loan was invalid under *Tex. Const. art. XVI, § 50(a)(6)(A)* since the signatures of a bankruptcy debtor's spouse on the loan documents were obvious forgeries, and there was no evidence that the spouse authorized the adult child of the debtor and the spouse to sign the spouse's name on any documents necessary to address the property tax delinquencies of the debtor and the spouse. *Gulley v. Contrywide Home Loans, Inc. (in re Gulley), 436 B.R. 878, 2010 Bankr. LEXIS 2803 (Bankr. N.D. Tex. 2010).*

158. Creditor's lien based on a home equity loan was invalid under *Tex. Const. art. XVI, § 50(a)(6)(A)* since the signatures of a bankruptcy debtor's spouse on the loan documents were obvious forgeries, and the spouse did not ratify the lien by acceptance of the loan proceeds since the spouse was unaware of the loan until the creditor initiated foreclosure proceedings. *Gulley v. Contrywide Home Loans, Inc. (in re Gulley), 436 B.R. 878, 2010 Bankr. LEXIS 2803 (Bankr. N.D. Tex. 2010).*

159. Acknowledgment by a notary that a bankruptcy debtor and the debtor's spouse signed loan documents was insufficient to validate a creditor's lien based on a home equity loan under *Tex. Const. art. XVI, § 50(a)(6)(A)* since the signatures of the spouse on the loan documents were obvious forgeries, and the acknowledgment was dated the day after the debtor signed the documents at the debtor's workplace with no notary present. *Gulley v. Contrywide Home Loans, Inc. (in re Gulley), 436 B.R. 878, 2010 Bankr. LEXIS 2803 (Bankr. N.D. Tex. 2010).*

160. Because the plain language of *Tex. Const. art. XVI, § 50(a)(6)(E)*, as interpreted by reference to Texas statutes and administrative regulations, compelled the conclusion that points were not fees because they were not charged to originate, evaluate, maintain, record, insure, or service the extension of credit, the district court correctly found that the discount points involved in the borrowers' loan were interest that did not count against the three percent cap in § 50(a)(6)(E). Therefore, the borrowers were not required them to pay fees in excess of the three percent cap imposed by the Texas Constitution. Cerda v. 2004-eqr1 L.L.C., 612 *F.3d 781, 2010 U.S. App. LEXIS 15123 (5th Cir. Tex. 2010).*

161. In a home owner's appeal from the trial court's judgment in favor of a mortgage company, because in both the present case and the company's prior declaratory judgment action the owner argued that the requirement that a home equity loan could not close within one year of another home equity loan on the same homestead property rendered the lien invalid, and because the problem was a temporal one, it could not be retroactively cured, the doctrine of res judicata barred the owner from relitigating this claim. *Summers v. Ameriquest Mortg. Co., 2008 Tex. App. LEXIS 254 (Tex. App. Houston 14th Dist. Jan. 15 2008).*

162. In a home owner's appeal from the trial court's judgment in favor of a mortgage company, the trial court did not err in rejecting the owner's argument that because a home equity loan could not close within one year of another home equity loan on the same homestead property, the lien was invalid, because *Tex. Const. art. XVI, § 50(a)(6)(Q)(x)* was a cure provision that applied to all of *Tex. Const. art. XVI, § 50(a)* and operated as a cure provision to validate a lien securing a *Tex. Const. art. XVI, § 50(a)(6)* extension of credit. *Summers v. Ameriquest Mortg. Co., 2008 Tex. App. LEXIS 254 (Tex. App. Houston 14th Dist. Jan. 15 2008).*

163. Forfeiture penalty under *Tex. Const. art. XVI, § 50(e)* did not preclude the lender's recovery of the refinance portion of the loan proceeds that were used to pay the debtor's constitutionally permissible pre-existing debt, because the lender was equitably subrogated to the prior lienholders' interests; *Tex. Const. art. XVI, § 50(e)* did operate to invalidate any liens related to the cash-out portion of the loan. *LaSalle Bank Nat'l Ass'n v. White, 246 S.W.3d 616, 2007 Tex. LEXIS 1129, 51 Tex. Sup. Ct. J. 259 (Tex. 2007).*

164. Where a homeowner failed to demonstrate that her home equity lender had the burden to prove that it met the requirements set forth in *Tex. Const. art. XVI, § 50*, the homeowner's challenge to the evidence to prove that compliance afforded no basis for relief from the lender's foreclosure on her homestead. *Wilson v. Aames Capital Corp., 2007 Tex. App. LEXIS 8345 (Tex. App. Houston 14th Dist. Oct. 23 2007).*

165. No authority has been found indicating that a home equity lender, seeking to enforce its lien, has the burden of proof on the requirements set forth in *Tex. Const. art. XVI, § 50(a)(6)*; if anything, judicial economy would dictate that a failure to comply with any of these requirements is in the nature of an affirmative defense so that judicial resources are spent litigating the few requirements that are contested rather than the many that are not. *Wilson v. Aames Capital Corp., 2007 Tex. App. LEXIS 8345 (Tex. App. Houston 14th Dist. Oct. 23 2007).*

166. Customers, to be entitled to a declaration that their home equity loan was invalid, had to conclusively establish the loan failed to comply with the constitutional requirements, they noticed the bank, and the bank failed to timely cure upon being noticed; to determine how to cure its non-compliance, the lender had to be aware of what that non-compliance was; because the customers failed to conclusively establish they notified the bank and the bank conclusively negated this element, they failed to satisfy their burden. *Curry v. Bank of Am., N.A., 232 S.W.3d 345, 2007 Tex. App. LEXIS 6501 (Tex. App. Dallas 2007).*

167. Bank's lien against the homeowner's property was not invalid because the original debt had been refinanced; the lien was invalid because the original debt was refinanced in violation of *Tex. Const. art. XVI, § 50(e)* for having a valid home equity loan in a refinancing transaction; under these circumstances, equitable subrogation did not trump the constitutionally-mandated penalty of forfeiture. *LaSalle Bank Nat'l Ass'n v. White, 217 S.W.3d 573, 2006 Tex. App. LEXIS 8747 (Tex. App. San Antonio 2006),* aff'd in part and rev'd in part, *246 S.W.3d 616, 2007 Tex. LEXIS 1129, 51 Tex. Sup. J. 259 (Tex. 2007).*

168. Borrowers' claims against the lienholders brought under *Tex. Const. art. XVI, § 50(a)(6)*, were time-barred where the claims were governed by the four-year residual provision in *Tex. Civ. Prac. & Rem. Code § 16.051*, the 2003 amendments to the Texas Constitution did not apply retroactively, and the lender's lack of authorization was cured within the four-year limitations period. *Boutari v. Jp Morgan Chase Bank, N.A., 2010 U.S. Dist. LEXIS 144094 (W.D. Tex. June 10 2010).*

169. Transaction structured as a transfer of homestead property to a bankruptcy debtor from the debtor's parents using funds provided by lenders was in fact intended to be, and thus was, a home equity loan, but the transaction did not violate *Tex. Const. art. XVI, § 50* as a pretended sale since there was no condition of defeasance permitting the parents to reclaim title to the property. *Cadengo v. Consolidated Fund Mgmt., LLC (In re Cadengo), 370 B.R. 681, 2007 Bankr. LEXIS 2212 (Bankr. S.D. Tex. 2007).*

170. Fact that a bankruptcy debtor signed documents at the closing of a transaction transferring property to the debtor indicating that the property was not the debtor's homestead and that the debtor resided elsewhere did not preclude the debtor from asserting homestead rights in the property; the provisions of *Tex. Const. art. XVI, § 50* barring a challenge by lenders to the debtor's non-homestead affidavit did not apply since the lenders knew at the time of the transaction that the debtor resided at the property and that the debtor had equitable title to the property, and in any event the debtor's possession and use of the property imputed such actual knowledge to the lenders. *Cadengo v. Consolidated Fund Mgmt., LLC (In re Cadengo), 370 B.R. 681, 2007 Bankr. LEXIS 2212 (Bankr. S.D. Tex. 2007).*

171. Where a divorce decree provided that the marital residence be deeded to the divorcing parties' children when the children respectively reached the age of 18 years, lenders did not violate *Tex. Const. art. XVI, § 50* by failing to obtain the consent of one child in documents evidencing a home equity loan to the other child secured by the residence as a homestead, since the non-signing child was not 18 years of age at the time of the transaction and thus held only a contingent interest, rather than an ownership interest, in the property. *Cadengo v. Consolidated Fund Mgmt., LLC (In re Cadengo), 370 B.R. 681, 2007 Bankr. LEXIS 2212 (Bankr. S.D. Tex. 2007).*

172. Transaction structured as a transfer of homestead property to a bankruptcy debtor from the debtor's parents using funds provided by lenders was in fact intended to be, and thus was, a home equity loan, and the lenders thus violated *Tex. Const. art. XVI, § 50* by charging more than 12 times the allowed amount of costs and fees. *Cadengo v. Consolidated Fund Mgmt., LLC (In re Cadengo), 370 B.R. 681, 2007 Bankr. LEXIS 2212 (Bankr. S.D. Tex. 2007).*

173. Lenders which violated numerous provisions of the Texas Constitution in providing a home equity loan to a bankruptcy debtor forfeited all principal and interest of the loan since the lenders failed to cure the violations under *Tex. Const. art. XVI, § 50. Cadengo v. Consolidated Fund Mgmt., LLC (In re Cadengo), 370 B.R. 681, 2007 Bankr. LEXIS 2212 (Bankr. S.D. Tex. 2007).*


174. Under *Tex. Const. art. XVI, § 50(h)*, defendant mortgage holder could rely on an appraisal prepared at the time of the loan, and plaintiff borrowers' signed acknowledgment of a fair market value (FMV), as was required by § 50(a)(6)(Q)(ix), at that amount to establish the FMV, thus, the borrowers' claim that the mortgage was invalid because the loan exceeded 80% of the FMV in violation of § 50(a)(6)(B), failed. *Poswalk v. GMAC Mortg., 519 Fed. Appx. 884, 2013 U.S. App. LEXIS 6313 (5th Cir. Tex. 2013).*

175. Discount points involved in plaintiff borrowers' loan were interest that did not count against the 3% cap in *Tex. Const. art. XVI, § 50(a)(6)(E)*, thus, the fee cap was not exceeded, and § 50(a)(6)(E) was not violated, and further, the borrower husband had signed an acknowledgment stating that discount points were "interest" under Texas law excluded from the 3% fee limit, thus, the district court correctly denied relief under § 50(a)(6)(Q)(x), predicated on a finding of a constitutional violation by defendant mortgage holder. *Poswalk v. GMAC Mortg., 519 Fed. Appx. 884, 2013 U.S. App. LEXIS 6313 (5th Cir. Tex. 2013).*

176. Where a refinance loan provided for payment of the existing mortgage against borrowers' homestead and prepayment of monthly interest for the one-year term of the loan to an escrow account from the loan proceeds, the lender's lien against the homestead was void since the loan advanced funds in addition to payment of the existing mortgage, the loan was not an extension of credit, and the additional funds and prepaid interest were not reasonable and necessary costs of the loan transaction. *Harmon v. Lighthouse Capital Funding, Inc. (in re Harmon), 444 B.R. 696, 2011 Bankr. LEXIS 523 (Bankr. S.D. Tex. 2011).*

177. Refinancing loan secured by a bankruptcy debtor's homestead was not coerced by economic pressure of the lender to render the loan involuntary, contrary to *Tex. Const. art. XVI, § 50(a)(6)(A)*, since the lender's potential foreclosure action against the debtor's home, and its insistence that the debtor cure a substantial overdraft in an account, did not constitute economic duress; it was the debtor's financial difficulties which necessitated the refinancing, and the lender's consideration of exercising its legal rights did not render the loan involuntary. *Chambers v. First United Bank (in re Chambers), 419 B.R. 652, 2009 Bankr. LEXIS 3153 (Bankr. E.D. Tex. 2009).*

178. Amount of a refinancing loan secured by a bankruptcy debtor's homestead did not exceed 80 percent of the value of the homestead as prohibited by *Tex. Const. art. XVI, § 50(a)(6)(B)*, since a defect in a deed conveying property surrounding the parcel containing the debtor's home to the debtor was cured, and thus the agreed valuation of the homestead in the loan documents, including the surrounding property, was proper. *Chambers v. First United Bank (in re Chambers), 419 B.R. 652, 2009 Bankr. LEXIS 3153 (Bankr. E.D. Tex. 2009).*

179. Refinancing loan was not secured by property other than a bankruptcy debtor's homestead as prohibited by *Tex. Const. art. XVI, § 50(a)(6)(H)*, since the debtor at all times controlled the parcel containing the debtor's home and the surrounding property, including a period when the surrounding property was titled in a trust controlled by the debtor; thus, the debtor's home and the surrounding property constituted the debtor's homestead which was the sole security for the loan. *Chambers v. First United Bank (in re Chambers), 419 B.R. 652, 2009 Bankr. LEXIS 3153 (Bankr. E.D. Tex. 2009).*

180. Where a bankruptcy debtor alleged that a refinancing loan secured by the debtor's homestead was invalid based on the lender's failure to provide complete documents, required disclosures, and a rescission period, the loan was not

invalid since the lender attempted to cure the defects in accordance with *Tex. Const. art. XVI, § 50(a)(6)(Q)(x)(f)*, and the debtor's refusal to accept the lender's offer and insistence on different terms did not invalidate the lender's attempted cure. *Chambers v. First United Bank (in re Chambers), 419 B.R. 652, 2009 Bankr. LEXIS 3153 (Bankr. E.D. Tex. 2009).*

181. Pursuant to the pre-2003 amendment of *Tex. Const. art. XVI, § 50(a)(6)(Q)(x)*, the summary judgment evidence conclusively established that the bank and title company's offer to cure defects in the loan occurred within a reasonable time period; the trial court properly granted the bank's and title company's traditional motions for summary judgment on the ground that they properly and timely offered to cure the constitutional defects in the second loan. *Fix v. Flagstar Bank, FSB, 242 S.W.3d 147, 2007 Tex. App. LEXIS 9185 (Tex. App. Fort Worth 2007).*

182. Plaintiff mortgagor's property, if later re-designated as agricultural, was protected from forced sale under *Tex. Const. art. XVI, § 50(a)(6)(I)*, regardless of its designation when the debt was incurred, but issues of fact existed on whether the land qualified as agricultural under Tex. Tax Code Ann. subchs. C, D, when defendant bank sought to foreclose. *Marketic v. U. S. Bank Nat'l Ass'n, 436 F. Supp. 2d 842, 2006 U.S. Dist. LEXIS 43038 (N.D. Tex. 2006).*

183. Where plaintiff mortgagor alleged her home equity loan with defendant bank did not comply with *Tex. Const. art. XVI, § 50(a)(6)(E)*, the argument failed because *Tex. Const. art. XVI, § 50(a)(6)(E)*'s cap on fees was not exceeded because the amount paid for discount points qualified as interest, even if points and interest were computed on principal. *Marketic v. U. S. Bank Nat'l Ass'n, 436 F. Supp. 2d 842, 2006 U.S. Dist. LEXIS 43038 (N.D. Tex. 2006).*

184. "Interest" as used in *Tex. Const. art. XVI, § 50(a)(6)(E)*, meant the amount determined by multiplying the loan principal by the interest rate. *Fin. Comm'n of Tex. v. Norwood, 418 S.W.3d 566, 2013 Tex. LEXIS 491, 56 Tex. Sup. Ct. J. 696 (Tex. 2013).*

185. Mortgagor's home equity loan closed on August 21, 2003, and his counterclaim alleging violations of *Tex. Const. art. XVI, § 50(a)(6)(E)* was not filed until October 10, 2007; the counterclaim was barred by the four-year statute of limitations under *Tex. Civ. Prac. & Rem. Code Ann. § 16.051. Schanzle v. Jpmc Specialty Mortg. Llc, 2011 Tex. App. LEXIS 1748 (Tex. App. Austin Mar. 11 2011).*

186. In an ex-wife's action that alleged her ex-husband's conveyance of residential property was fraudulent, the trial court did not improperly disregard the jury's finding that the property was not the ex-husband's homestead because, taken together, the ex-wife's testimony that she and the ex-husband lived in the property together and the evidence that they formally claimed it as their homestead established that the property was their homestead before their divorce; moreover, the ex-wife had relinquished any claim she had to the homestead, while the ex-husband had retained his homestead interest both before and after the divorce, and she failed to prove he intended to abandon it. *Almanza v. Salas, 2014 Tex. App. LEXIS 1470 (Tex. App. Houston 14th Dist. Feb. 11 2014).*

187. In a contractor's action against a homeowner for fraud and breach of contract for failure to make payments, the trial court did not err in ordering foreclosure on the contractor's constitutional and statutory liens. The owner did not plead and prove that the subject property was her homestead. *Zorrilla v. Aypco Constr. Ii, Llc, 421 S.W.3d 54, 2013 Tex. App. LEXIS 12440 (Tex. App. Corpus Christi 2013).*

188. A lien a bank held on a Chapter 7 debtor's homestead was invalid and unenforceable under *Tex. Const. art. XVI, § 50* because it secured a home equity loan on property that was designated for agricultural use, and the debtor was not personally liable for the debt because she did not obtain the loan by committing actual fraud; the debtor was not

time-barred under *Tex. Civ. Prac. & Rem. Code Ann. § 16.051* from seeking a judgment declaring that she could avoid the bank's lien because she raised her claim as a counterclaim to the bank's claim that it was entitled to enforce the lien. *First Bank of Roxton v. Shankles (in re Shankles), 2013 Bankr. LEXIS 3992 (Bankr. E.D. Tex. Sept. 23 2013).*

189. Common law governing foreclosure sales and the use of real estate subject to liens to satisfy a obligations applies to the homestead provision in the state constitution. Accordingly the servicer for a junior home equity security instrument was not required to obtain a court order pursuant to the state constitution or the rules of civil procedure in order to receive excess proceeds from the foreclosure of the senior purchase money deed of trust or the rules of civil procedure in order to receive excess proceeds from the foreclosure of the senior purchase money deed of trust. *Patton v. Porterfield, 411 S.W.3d 147, 2013 Tex. App. LEXIS 11272 (Tex. App. Dallas 2013).*

190. Because the cash proceeds from the sale of a homestead retain the character of a homestead for purposes of satisfying a home equity lien, the payment of a home equity note from the excess proceeds of the foreclosure of the senior purchase money deed of trust did not violate the provision of the state constitution that required that the home equity lien be secured by only the homestead. *Patton v. Porterfield, 411 S.W.3d 147, 2013 Tex. App. LEXIS 11272 (Tex. App. Dallas 2013).*

191. Because the nonrecourse nature of a home equity note had the effect of making it payable out of the collateral, i.e., the homestead, the nonrecourse language in the homestead exemption did not prohibit the proceeds of the foreclosure sale from being distributed to the servicer of the home equity security instrument. *Patton v. Porterfield, 411 S.W.3d 147, 2013 Tex. App. LEXIS 11272 (Tex. App. Dallas 2013).*

192. Buyer had standing to challenge the validity of the constable's sale on the basis that the property was the judgment debtor's homestead, because the buyer had standing to adjudicate its rights with respect to the property, regardless of whether the debtor had filed suit to establish the property as his homestead. *Saihat Corp. v. Miller, 2013 Tex. App. LEXIS 10756 (Tex. App. Houston 1st Dist. Aug. 27 2013).*

193. Even if the homeowners' home equity loan was invalid under *Tex. Const. art. XVI, § 50(e)* at the time the homeowners' association's declaration was issued, the evidence showed that the bank was entitled to equitable subrogation and allowed to step into the shoes of prior lienholders and the HOA foreclosure did not extinguish the bank's superior lien on the property. *Dtnd Sierra Invs., Llc v. Deutsche Bank Nat'l Trust Co., 2013 Tex. App. LEXIS 10460 (Tex. App. San Antonio Aug. 21 2013).*

194. Closing agent's clerical process and manner of disbursing funds cannot determine the constitutionality of a transaction; therefore, no violation occurred in relation to a home-equity loan because, after crediting a borrower with a lender credit that was designed to reduce fees, the borrower paid a sum within the constitutional three percent limit *Abernathy v. Deutsche Bank Nat'l Trust Co., 2013 Tex. App. LEXIS 9850 (Tex. App. Austin Aug. 8 2013).*

195. Borrowers did not establish any violations of their homestead rights because their home-equity loan was not shown to exceed the permissible amount, the fees charged were not excessive, and the closing occurred more than 12 days after submission of the loan application. *Salas v. Lnv Corp., 409 S.W.3d 209, 2013 Tex. App. LEXIS 9886 (Tex. App. Houston 14th Dist. 2013).*

196. Heir wrongfully used the estate's money to build the home he now claimed as a homestead, and the homestead law did not protect property or funds obtained with money that was misappropriated by a fiduciary. *In re Estate of Byrom, 2013 Tex. App. LEXIS 9494 (Tex. App. Tyler July 31 2013).*

197. Finding that ranch property was not an owner's homestead property was proper where the summary-judgment record conclusively established that, when his loan agreement with a bank was executed, the owner abandoned any homestead rights he had in the property because he was not occupying the premises as his home at the time the loan was

made; the bank was justified in relying on the owner's representation that he was disclaiming any constitutional homestead rights in the property, and the owner was estopped from denying the disclaimer's truth. *Thomas v. Graham Mortg. Corp., 408 S.W.3d 581, 2013 Tex. App. LEXIS 9041 (Tex. App. Austin 2013).*

198. In a case arising from a bank's nonjudicial foreclosure of an owner's ranch property, the trial court did not err in granting summary judgment on the owner's claims for affirmative relief because the bank was not estopped from asserting that the property was not the owner's homestead or that the owner abandoned his homestead rights; the bank's decision to release 100 acres as security on the note was not inconsistent with its position that the owner did not have any homestead rights in the property at the time the loan agreement was executed. *Thomas v. Graham Mortg. Corp., 408 S.W.3d 581, 2013 Tex. App. LEXIS 9041 (Tex. App. Austin 2013).*

199. Ex-wife's action to remove cloud on title and to quiet title, which alleged that a home equity lien was void as to her because she did not sign the written agreement granting the lien or consent to it, was barred by the four-year limitations period because she did not file suit until six years after first discovering the home equity loan and lien; the lien was voidable rather than void, and subject to cure under the provision of the Texas Constitution governing home equity liens. *Williams v. Wachovia Mortg. Corp., 407 S.W.3d 391, 2013 Tex. App. LEXIS 8638 (Tex. App. Dallas 2013).*

200. In a property dispute, an estate was entitled to recover rents from two buyers because a wife had a homestead interest in property; although she had not resided there in many years, the uncontroverted evidence showed that she expressed an intent to return. Even though the statement of intent was contingent upon her finding a caregiver, this did not disrupt or reverse proof of her intent, and it did not create a fact issue concerning whether she intended to abandon her homestead rights. *Gilbreath v. Steed, 2013 Tex. App. LEXIS 5947 (Tex. App. Tyler May 15 2013).*

201. In an action for legal malpractice and breach of contract, the client claimed her divorce attorney was negligent by failing to seek credit for the equity that was built into the home during the marriage; an expert witness for the attorney testified by affidavit that title to the home was never vested in the client because there was no deed of record in favor of the client. Her signature on the deed of trust executed in connection with the home equity loan did not confer ownership of the home to her because her signature was required by *Tex. Const. art. XVI, § 50(a)(6)(A)* and *Tex. Fam. Code Ann. § 5.001. Gaspard v. Wester, 2013 Tex. App. LEXIS 5386 (Tex. App. Corpus Christi May 2 2013).*

202. Chapter 7 debtor was allowed under *11 U.S.C.S. § 522*(q) to exempt only $136,875 in equity he had in a home he owned with his non-debtor spouse that was worth $530,000 because a Texas jury had found that he committed securities fraud under state law and owed his former business partner $2,289,349. Although Texas residents were allowed to claim an exemption in the entire value of their homestead under *Tex. Const. art. XVI, § 50*, § 522(q) preempted *Texas law. In re Bounds, 491 B.R. 440, 2013 Bankr. LEXIS 1682 (Bankr. W.D. Tex. 2013).*

203. Borrowers who brought a wrongful foreclosure suit were precluded by judicial estoppel under federal law from asserting, contrary to their representations in a partnership's prior bankruptcy case, that the property was not an asset of the partnership. Thus, they could not claim that the property was their homestead; and judicial estoppel based on privity also applied to a partner's spouse, who had no interest in partnership property under *Tex. Bus. Orgs. Code Ann. § 152.101* and thus was not entitled to homestead protection under *Tex. Const. art XVI, § 50(b). Siller v. LPP Mortg., Ltd, 2013 Tex. App. LEXIS 4520 (Tex. App. San Antonio Apr. 10 2013).*

204. Evidence that an owner used property for agricultural purposes while living elsewhere proved that he had abandoned any homestead rights, and a disclaimer he signed when obtaining a loan estopped him from asserting otherwise. *Thomas v. Graham Mortg. Corp., 2013 Tex. App. LEXIS 4391 (Tex. App. Austin Apr. 4 2013).*

205. Under *Tex. Const. art. XVI, § 50(h)*, defendant mortgage holder could rely on an appraisal prepared at the time of the loan, and plaintiff borrowers' signed acknowledgment of a fair market value (FMV), as was required by § 50(a)(6)(Q)(ix), at that amount to establish the FMV, thus, the borrowers' claim that the mortgage was invalid because

the loan exceeded 80% of the FMV in violation of § 50(a)(6)(B), failed. *Poswalk v. GMAC Mortg., 519 Fed. Appx. 884, 2013 U.S. App. LEXIS 6313 (5th Cir. Tex. 2013).*

206. Discount points involved in plaintiff borrowers' loan were interest that did not count against the 3% cap in *Tex. Const. art. XVI, § 50(a)(6)(E)*, thus, the fee cap was not exceeded, and § 50(a)(6)(E) was not violated, and further, the borrower husband had signed an acknowledgment stating that discount points were "interest" under Texas law excluded from the 3% fee limit, thus, the district court correctly denied relief under § 50(a)(6)(Q)(x), predicated on a finding of a constitutional violation by defendant mortgage holder. *Poswalk v. GMAC Mortg., 519 Fed. Appx. 884, 2013 U.S. App. LEXIS 6313 (5th Cir. Tex. 2013).*

207. Bankruptcy court reduced a homestead exemption allowance which a Chapter 7 debtor claimed under *11 U.S.C.S. § 522*(b), *Tex. Const. art. XVI, § 50*, and *Tex. Prop. Code Ann. §§ 41.001-41.002* from $146,450 to zero, pursuant to *11 U.S.C.S. § 522*(o), because the debtor had engaged in a scheme to funnel nonexempt assets into his exempt homestead in a way that made it difficult for creditors such as a former partner who had sued the debtor to detect or trace the assets. The debtor's home was part of his bankruptcy estate under *11 U.S.C.S. § 541,* and there was no merit to the debtor's wife's claim that she had a separate, vested property right in the home under Texas law that did not enter the debtor's bankruptcy estate and was not subject to *11 U.S.C.S. § 522*(o) and (p) because the home was community property. *In re Thaw, 496 B.R. 842, 2013 Bankr. LEXIS 1047, 69 Collier Bankr. Cas. 2d (MB) 432 (Bankr. E.D. Tex. 2013).*

208. Bankruptcy court reduced a homestead exemption allowance which a Chapter 7 debtor claimed under *11 U.S.C.S. § 522*(b), *Tex. Const. art. XVI, § 50*, and *Tex. Prop. Code Ann. §§ 41.001-41.002* from $146,450 to zero, pursuant to *11 U.S.C.S. § 522*(o), because the debtor had engaged in a scheme to funnel nonexempt assets into his exempt homestead in a way that made it difficult for creditors such as a former partner who had sued the debtor to detect or trace the assets. The debtor's home was part of his bankruptcy estate under *11 U.S.C.S. § 541,* and there was no merit to the debtor's wife's claim that she had a separate, vested property right in the home under Texas law that did not enter the debtor's bankruptcy estate and was not subject to *11 U.S.C.S. § 522*(o) and (p) because the home was community property. *In re Thaw, 496 B.R. 842, 2013 Bankr. LEXIS 1047, 69 Collier Bankr. Cas. 2d (MB) 432 (Bankr. E.D. Tex. 2013).*

209. Because defendant bank, holding plaintiff former home owner's note and deed of trust, invoked *Tex. Const. art. XVI, § 50(a)(6)(Q)(x)*'s cure provision within 60 days of the owner husband's deposition, the § 50(a)(6)(M)(ii), (Q)(v), violations alleged in the deposition were adequately cured and summary judgment was properly granted to the bank. *Puig v. Citibank, N.A., 514 Fed. Appx. 483, 2013 U.S. App. LEXIS 3767 (5th Cir. Tex. 2013).*

210. While defendant bank's letter invoking the cure provision of *Tex. Const. art. XVI, § 50(a)(6)(Q)(x)*, was not timely issued as to the alleged § 50(a)(6)(M)(i) violation, plaintiff former home owner husband admitted his signature on the Extensions of Credit notice dated a month before closing, and the 3-day opportunity to rescind notice under § 50(a)(6)(Q)(viii) acknowledged that more than 3 days had elapsed since the owners received notification of the right to cancel, and further, the plaintiff owners had admitted never seeking recission, thus, their challenge to the bank's right to foreclose failed. *Puig v. Citibank, N.A., 514 Fed. Appx. 483, 2013 U.S. App. LEXIS 3767 (5th Cir. Tex. 2013).*

211. Four-year limitations period of *Tex. Civ. Prac. & Rem. Code Ann. § 16.051* applied to appellant borrowers' claims against appellee bank that their mortgage was void because it was signed at their home and without the required notice in violation of *Tex. Const. Art. XVI, § 50(a)(6)*, and the action was time-barred. *Priester v. Jp Morgan Chase Bank, N.A., 708 F.3d 667, 2013 U.S. App. LEXIS 3097, 84 Fed. R. Serv. 3d (Callaghan) 1519 (5th Cir. Tex. 2013).*

212. Four-year limitations period of *Tex. Civ. Prac. & Rem. Code Ann. § 16.051* applied to appellant borrowers' claims against appellee bank that their mortgage was void because it was signed at their home and without the required notice in violation of *Tex. Const. Art. XVI, § 50(a)(6)*, and the action was time-barred; because a cure provision existed in *Tex. Const. Art. XVI, § 50(a)(6)(Q)*, liens that were contrary to the requirements of § 50(a) were voidable rather than void from the start. *Priester v. Jp Morgan Chase Bank, N.A., 708 F.3d 667, 2013 U.S. App. LEXIS 3097, 84 Fed. R. Serv. 3d*

Tex. Const. Art. XVI, § 50

*(Callaghan) 1519 (5th Cir. Tex. 2013).*

213. Four-year limitations period of *Tex. Civ. Prac. & Rem. Code Ann. § 16.051* applied to appellant borrowers' claims against appellee mortgage was void because it was signed at their home and without the required notice in violation of *Tex. Const. Art. XVI, § 50(a)(6)(M)(i)*, (N), (g), and the action was time-barred; the doctrine of fraudulent concealment did not apply because the facts (where the loan was closed and the lack of notice) were known and not able to be concealed. . *Priester v. Jp Morgan Chase Bank, N.A., 708 F.3d 667, 2013 U.S. App. LEXIS 3097, 84 Fed. R. Serv. 3d (Callaghan) 1519 (5th Cir. Tex. 2013).*

214. In a divorce case, the imposition of an equitable lien on a second property in order to secure an economic contribution claim did not violate *Tex. Const. art. 16, § 50* where the second property was alleged to be a former husband's homestead because the equitable lien was one that secures a debt "for the purchase money." *Delancey v. Delancey, 2013 Tex. App. LEXIS 296 (Tex. App. Austin Jan. 11 2013).*

215. Chapter 7 debtor who owned real property in Clifton, Texas, which he used to conduct a welding business, failed to show that the property was exempt from creditors' claims under *Tex. Const. art. XVI, §§ 50* and *51* and *Tex. Prop. Code Ann. §§ 41.001* and *41.002* because it was his homestead. Even though the debtor slept in a workshop that was on the property while he was in Clifton conducting business and visiting family every two to three weeks, he failed to show that he had conditioned the workshop for residential purposes or intended to do so; if anything, the evidence suggested that the debtor used the property as a weekend home. *In re Perry, 481 B.R. 862, 2012 Bankr. LEXIS 4831 (Bankr. N.D. Tex. 2012).*

216. Nothing met the criteria for imposing an equitable lien generally or one that equated to a purchase money lien, and the lien insulated the debtors from bearing more than their share of a potential debt that was owed to a third party; thus, it could not have been equivalent to a purchase money lien and thus survived those prohibitions set up in *Tex. Const. art. XVI, § 50*, and the lien that encumbered the note representing the ex-wife's proceeds from the disposition of her homestead was void. *In re Christodolou, 383 S.W.3d 718, 2012 Tex. App. LEXIS 8484 (Tex. App. Amarillo 2012).*

217. No one questioned that the ex-wife was entitled to her part of the community homestead, and thus her accepting payment to what she was otherwise entitled to fell within an exception to the rule that one could not accept a judgment's benefits and then take an appeal from the judgment. *In re Christodolou, 383 S.W.3d 718, 2012 Tex. App. LEXIS 8484 (Tex. App. Amarillo 2012).*

218. Probate court did not err in finding that the debtor did not abandon the leased portion of her homestead by leasing the property for an extended period because the creditor failed to meet his burden of identifying the portion of the property the debtor abandoned. No evidence or testimony was admitted that affixed a boundary that enclosed the lease property, the creditor acknowledged that he had not read or seen the lease covering the disputed property, and nothing in the record supported his conclusion that the leased property ended perpendicular to the fence; in addition, there was no evidence of the other boundaries relevant to the rental tract. *Estate of Cantu, 2012 Tex. App. LEXIS 4860 (Tex. App. San Antonio June 20 2012).*

219. In a case in which a creditor sought to set aside an alleged fraudulent transfer of property by a husband and a wife, the transfer, if any, of the property to a trust was not a violation of the Uniform Fraudulent Transfer Act, *Tex. Bus. & Com. Code Ann. §§ 24.001-.013*, because the property was the homestead of both the husband and the wife. *Martinek Grain & Bins, Inc. v. Bulldog Farms, Inc., 366 S.W.3d 800, 2012 Tex. App. LEXIS 3047 (Tex. App. Dallas 2012).*

220. In a case in which a creditor sought to set aside an alleged fraudulent transfer of property to a trust made by a husband and a wife, the property at issue was not subject to the husband's guaranty of his farms' debt to the creditor, regardless of whether the conveyance to the trust was valid or void, because the debts for which the statutes and the state constitution provided the homestead might be liable did not include the husband's guaranty of the farms' debts.

When the husband died, the marital relationship ceased to exist, and the homestead property that the wife received under Tex. *Prob. Code Ann. § 279* was neither separate nor community property, but was simply her property. *Martinek Grain & Bins, Inc. v. Bulldog Farms, Inc., 366 S.W.3d 800, 2012 Tex. App. LEXIS 3047 (Tex. App. Dallas 2012).*

221. In a case concerning real property that was the homestead of a husband and wife, by declaring a lien obtained by the husband's ex-wife to be valid against the husband's property interest-and by further declaring that a subsequent purchaser of the property at a public auction had acquired the husband's one-half undivided interest in the property as tenant in common with the wife-a trial court's final judgment gave effect to an unconstitutional lien and forced sale of homestead property because the ex-wife's lien on the property for child support arrearages did not fall under any of the constitutional categories of debt for which a lien could attach to homestead property. The lien was therefore void, and, as a result, the constable's sale foreclosing on the lien and transferring title to the purchaser was also void and subject to challenge in a collateral proceeding such as the one initiated by the husband and wife. *Salomon v. Lesay, 369 S.W.3d 540, 2012 Tex. App. LEXIS 2668 (Tex. App. Houston 1st Dist. 2012).*

222. Chapter 13 debtor was allowed to amend his schedule C to include proceeds of litigation related to the insurance on his homestead, but his effort to exempt most of the proceeds under *Tex. Const. art. XVI, § 50*, was subject to the perfected lien of the first mortgagee and its payment for the repairs to the residence. *In re Hill, 2011 Bankr. LEXIS 5186 (Bankr. S.D. Tex. Dec. 30 2011).*

223. Because the debtor's property was a homestead property entitled to protection under Texas law when he filed bankruptcy, a judgment creditor had no enforceable lien at that time, and *11 U.S.C.S. § 522*(p)'s cap did not convert it to an enforceable lien, and thus, the trustee took the property with an unenforceable lien and the creditor had no enforceable lien. *Mccombs v. Hd Smith Wholesale Drug Co (in re McCombs), 659 F.3d 503, 2011 U.S. App. LEXIS 20132, Bankr. L. Rep. (CCH) P82086, 66 Collier Bankr. Cas. 2d (MB) 873 (5th Cir. Tex. 2011).*

224. Bankruptcy court denied a bank's motion seeking an award of attorneys' fees it incurred to successfully defend a Chapter 7 debtor's claim that a note and mortgage it held were invalid. Although the note allowed the bank to recover reasonable attorneys' fees it incurred to enforce the note, *Tex. Const. art. XVI, § 50(a)(6)(C)* did not allow the court to award attorneys' fees in favor of the bank as a personal judgment against the debtor because the loan was a home equity loan and the debtor had not committed fraud against the bank; although the debtor had defrauded other lenders, he had not defrauded the bank. *Erickson v. Wells Fargo Nat'l Assoc. (in re Erickson), 2011 Bankr. LEXIS 2838 (Bankr. W.D. Tex. July 22 2011).*

225. Where debtor argued that a lender's mortgage note was invalid under the Texas Constitution because the note was used to pay off underlying second and third lien notes that were allegedly not authorized by *Tex. Const. art. XVI, § 50(a)(6), 50(e)*, the debtor was estopped from making the claim that the second and third liens were invalid because he admitted that he knowingly made a false representation of facts with the intention that it should be acted on when he signed affidavits falsely representing to the second and third lienors that the property was not his homestead. *Erickson v. Wells Fargo N.A. (in re Erickson), 2011 Bankr. LEXIS 1533 (Bankr. W.D. Tex. Apr. 27 2011).*

226. Where debtor argued that a refinance was invalid because the lender failed to provide him with all of the documents that he signed at closing, as required by *Tex. Const. art. XVI, § 50(a)(6)(Q)(v)*, the debtor was estopped from making the claim because he signed an affidavit that stated he received all the documents. *Erickson v. Wells Fargo N.A. (in re Erickson), 2011 Bankr. LEXIS 1533 (Bankr. W.D. Tex. Apr. 27 2011).*

227. Debtor's argument that a refinance was invalid because the funds were required to be used to pay off allegedly invalid liens was without merit because under *Tex. Const. art. XVI, § 50(a)(6)(Q)(i)*, a lender can require a borrower to pay off debt secured by the homestead or debt to another lender. *Erickson v. Wells Fargo N.A. (in re Erickson), 2011 Bankr. LEXIS 1533 (Bankr. W.D. Tex. Apr. 27 2011).*

228. Lender forfeited all principal and interest under a promissory note secured by a bankruptcy debtor's homestead since the lender did not comply with the requirements of *Tex. Const. art. XVI, § 50(a)(6)* by failing to be an authorized home equity lender, failing to provide for only judicial foreclosure, failing to provide the debtor with required documentation, failing to advise the debtor of rescission rights, and failing to provide a written acknowledgment of the value of the property. *Arnold v. Quigley (in re Quigley), 2011 Bankr. LEXIS 1004 (Bankr. N.D. Tex. Mar. 16 2011).*

229. Assignee from a lender of a note secured by a bankruptcy debtor's homestead forfeited all principal and interest under the note under *Tex. Const. art. XVI, § 50(a)(6)(Q)(xi)* since the lender to the debtor was not an authorized home equity lender and the assignee was the holder of the note. *Arnold v. Quigley (in re Quigley), 2011 Bankr. LEXIS 1004 (Bankr. N.D. Tex. Mar. 16 2011).*

230. Mortgage granted by a lender which accomplished a nonjudicial foreclosure against a bankruptcy debtor's homestead was invalid under *Tex. Const. art. XVI, § 50(a)(6)(D),* since foreclosure of the debtor's home equity loan could only be accomplished by court order, and thus the lender did not have legal title to the debtor's property. *Arnold v. Quigley (in re Quigley), 2011 Bankr. LEXIS 1004 (Bankr. N.D. Tex. Mar. 16 2011).*

231. Where a refinance loan provided for payment of the existing mortgage against borrowers' homestead and prepayment of monthly interest for the one-year term of the loan to an escrow account from the loan proceeds, the lender's lien against the homestead was void since the loan advanced funds in addition to payment of the existing mortgage, the loan was not an extension of credit, and the additional funds and prepaid interest were not reasonable and necessary costs of the loan transaction. *Harmon v. Lighthouse Capital Funding, Inc. (in re Harmon), 444 B.R. 696, 2011 Bankr. LEXIS 523 (Bankr. S.D. Tex. 2011).*

232. Lien which a federal savings bank placed on debtors' homestead before the debtors declared Chapter 7 bankruptcy was invalid under *Tex. Const. art. XVI, § 50(g)* because it secured a second home equity loan the debtors obtained. *Tex. Const. art. XVI, § 50 and 7 Tex. Admin. Code § 153.10* stated that there could be no more than one valid home equity lien placed on a debtor's homestead at any given time. *Lovalace v. Usaa Fed. Sav. Bank (in re Lovelace), 443 B.R. 494, 2011 Bankr. LEXIS 285 (Bankr. W.D. Tex. 2011).*

233. Question was certified to the state supreme court as to whether debtors were entitled to protection of their homestead under *Tex. Const. art. 16, § 50,* when they surreptitiously used their business property as their residence and where they declared that no such use was made of the property, or whether they the otherwise valid homestead exemption could be foreclosed by equitable estoppel. *Villarreal v. Showalter (in re Villarreal), 402 Fed. Appx. 28, 2010 U.S. App. LEXIS 23466 (5th Cir. Tex. 2010).*

234. Denial of the creditor's request for a turnover order was proper, because the debtor's imprisonment for his crimes did not constitute abandonment of his homestead, when the creditor did not attempt to contest the debtor's claims that he considered the home as homestead and planned to return to it when released from incarceration. *Driver v. Conley, 320 S.W.3d 516, 2010 Tex. App. LEXIS 6580 (Tex. App. Texarkana 2010).*

235. Although a Chapter 11 debtor was allowed under Texas law to claim an unlimited exemption in a homestead he owned with his non-debtor spouse, the exemption was capped under *11 U.S.C.S. § 522* at $136,875 because he owned the homestead for less than 1,215 days before he declared bankruptcy, and because the debtor's non-debtor spouse did not have a vested interest in her homestead exemption, she was not entitled to possession of the homestead or compensation in case of a forced sale. *Kim v. Kim, 2010 U.S. Dist. LEXIS 145648 (N.D. Tex. Aug. 11 2010).*

236. Refinancing loan secured by a bankruptcy debtor's homestead was not coerced by economic pressure of the lender to render the loan involuntary, contrary to *Tex. Const. art. XVI, § 50(a)(6)(A),* since the lender's potential foreclosure action against the debtor's home, and its insistence that the debtor cure a substantial overdraft in an account, did not constitute economic duress; it was the debtor's financial difficulties which necessitated the refinancing, and the lender's

consideration of exercising its legal rights did not render the loan involuntary. *Chambers v. First United Bank (in re Chambers), 419 B.R. 652, 2009 Bankr. LEXIS 3153 (Bankr. E.D. Tex. 2009).*

237. Amount of a refinancing loan secured by a bankruptcy debtor's homestead did not exceed 80 percent of the value of the homestead as prohibited by *Tex. Const. art. XVI, § 50(a)(6)(B)*, since a defect in a deed conveying property surrounding the parcel containing the debtor's home to the debtor was cured, and thus the agreed valuation of the homestead in the loan documents, including the surrounding property, was proper. *Chambers v. First United Bank (in re Chambers), 419 B.R. 652, 2009 Bankr. LEXIS 3153 (Bankr. E.D. Tex. 2009).*

238. Refinancing loan was not secured by property other than a bankruptcy debtor's homestead as prohibited by *Tex. Const. art. XVI, § 50(a)(6)(H)*, since the debtor at all times controlled the parcel containing the debtor's home and the surrounding property, including a period when the surrounding property was titled in a trust controlled by the debtor; thus, the debtor's home and the surrounding property constituted the debtor's homestead which was the sole security for the loan. *Chambers v. First United Bank (in re Chambers), 419 B.R. 652, 2009 Bankr. LEXIS 3153 (Bankr. E.D. Tex. 2009).*

239. Where a bankruptcy debtor alleged that a refinancing loan secured by the debtor's homestead was invalid based on the lender's failure to provide complete documents, required disclosures, and a rescission period, the loan was not invalid since the lender attempted to cure the defects in accordance with *Tex. Const. art. XVI, § 50(a)(6)(Q)(x)(f)*, and the debtor's refusal to accept the lender's offer and insistence on different terms did not invalidate the lender's attempted cure. *Chambers v. First United Bank (in re Chambers), 419 B.R. 652, 2009 Bankr. LEXIS 3153 (Bankr. E.D. Tex. 2009).*

240. Lien which a mortgage company claimed to have on Chapter 13 bankruptcy debtors' homestead was invalid, in part, because it was based on a loan the company made to the debtors so they could pay off a home equity loan they obtained after they designated their property for agricultural use. The loan violated *Tex. Const. art. XVI, § 50(a)(6)(I)*. *Johnson v. Nat'l City Mortg. Co. (in re Johnson), 2009 Bankr. LEXIS 2956, 62 Collier Bankr. Cas. 2d (MB) 1380 (Bankr. E.D. Tex. Sept. 11 2009).*

241. Given that a person was permitted to hold homestead rights in his or her spouse's separate property, for purposes of *Tex. Fam. Code Ann. § 5.001*, and no specific writing was needed to claim a homestead, the fact that a homeowner did not file an exemption was not proof that she did not intend it as such. *Denmon v. Atlas Leasing, L.L.C., 285 S.W.3d 591, 2009 Tex. App. LEXIS 3507 (Tex. App. Dallas 2009).*

242. It was undisputed that the property was a homeowner's homestead, despite her failure to file an exemption, and the lien under *Tex. Prop. Code Ann. § 53.254* was void, given that (1) it was undisputed that the homeowner, although separated, was married when she entered into the transaction and could not qualify for the exemption as a single person, (2) she did not hold herself out as a single woman, (3) community money from the sale of the homeowner's homestead with her husband was applied for a down payment on the property, which became the family homestead, to which the husband visited several times, (4) the husband's separate trailer home could not be his single adult or family homestead, as he was not single and another woman, not his wife, sometimes stayed there, (5) the husband did not file for a homestead exemption for the trailer until after the divorce was finalized, (6) while an argument could have been made that the husband abandoned the property homestead, abandonment was an affirmative defense and appellees had a burden to plead and prove it, which they failed to do, and (7) § 53.254 required the husband's signature on the loan documents, which he did not sign, making the lien and resulting foreclosure void. *Denmon v. Atlas Leasing, L.L.C., 285 S.W.3d 591, 2009 Tex. App. LEXIS 3507 (Tex. App. Dallas 2009).*

243. Appellees argued that a homeowner lacked standing to challenge that a lien violated homestead provisions, but the void instrument was of no effect and the homeowner had standing to challenge the lien. *Denmon v. Atlas Leasing, L.L.C., 285 S.W.3d 591, 2009 Tex. App. LEXIS 3507 (Tex. App. Dallas 2009).*

Tex. Const. Art. XVI, § 50

244. Appellees never affirmatively asserted that a homeowner misrepresented herself in order to defeat their rights, for purposes of *Tex. Const. art. XVI, § 50(a)(5)(A)*, and such was an affirmative defense on which appellees had the burden of proof. *Denmon v. Atlas Leasing, L.L.C., 285 S.W.3d 591, 2009 Tex. App. LEXIS 3507 (Tex. App. Dallas 2009).*

245. Broad state homestead exemption of a bankruptcy debtor and the debtor's non-filing spouse under *Tex. Const. art. XVI, § 50* and *Tex. Prop. Code Ann. §§ 41.001, 41.002* was subject to the limitation of *11 U.S.C.S. § 522*(p) which capped the amount of the exemption with regard to property acquired within a stated period before bankruptcy; the spouse's homestead exemption gave protective legal security rather than vested property rights in a separate and distinct homestead interest which would entitle the spouse to compensation or to prevent sale of the property. *Odes Ho Kim v. Chong Ann Kim (In re Odes Ho Kim), 405 B.R. 179, 2009 Bankr. LEXIS 1110, Bankr. L. Rep. (CCH) P81559 (Bankr. N.D. Tex. 2009).*

246. In a dispute over money judgments, a trial court did not err by finding that a parcel of a debtor's property was his homestead because two judgment creditors did not meet their burden of showing that the debtor discontinued his use of the property with the intent to permanently do so; the debtor's wife testified that the utilities were still connected to the property, the property was still maintained, and furniture was still located there. The debtor and his wife had not sold or rented the property, and they had not claimed any other property as their homestead; moreover, the fact that a tax exemption on the property had been allowed to lapsed was not dispositive in the abandonment analysis. *Union Square Fed. Credit Union v. Clay, 2009 Tex. App. LEXIS 2839 (Tex. App. Fort Worth Apr. 23 2009).*

247. Summary judgment was properly granted to purchasers in a dispute regarding a homestead exemption under *Tex. Const. art. XVI, §§ 50, 51* and *Tex. Prop. Code Ann. §§ 41.001, 41.002* because an entire four-plex was subject to the exemption where a judgment debtor had lived in one unit and rented the rest of them out; the debtor's residence and usage of the property was sufficient to obviate the issue of intent and render the entire property his homestead. Further, the layout of the property did not limit the debtor's usage of such, and the fact that the debtor accepted a 25 percent homestead tax exemption under *Tex. Tax Code Ann. § 11.13(k)* did not mean that he declared only 25 percent of the property to be his constitutional homestead. *Sifuentes v. Arriola, 2009 Tex. App. LEXIS 2849 (Tex. App. Austin Apr. 22 2009).*

248. Proportional homestead tax exemption under *Tex. Tax Code Ann. § 11.13(k)* has no impact on a property's homestead status. *Sifuentes v. Arriola, 2009 Tex. App. LEXIS 2849 (Tex. App. Austin Apr. 22 2009).*

249. Temporary injunction was not granted in a foreclosure dispute because a probable right to recovery on the merits was not shown; summary judgment entered against a son had no effect on a lienholder because there was no privity, a warranty deed showed an absolute conveyance, and homestead rights under *Tex. Const. art. XVI, § 50(a)* were lost due to the conveyance. *Galindo v. Border Fed. Credit Union, 2009 Tex. App. LEXIS 1818 (Tex. App. San Antonio Mar. 18 2009).*

250. Claim against an estate was properly denied because a lien was void under *Tex. Const. art. XVI, § 50* since it was against homestead property, even though it was not recorded after a decedent's death and no collection action was taken while the property was homestead in nature. Moreover, including language providing the lien could have been enforced only upon the sale, conveyance, or transfer of the property did not make the lien valid as of the date it was executed due to the language in *Tex. Prop. Code Ann. § 41.001(c). Apex Fin. Corp. v. Labarba, 2009 Tex. App. LEXIS 1706 (Tex. App. Dallas Mar. 5 2009).*

251. In a case where a transferee was seeking the payment of a claim against a decedent's estate, a contention that the decedent had waived his homestead rights by executing a promissory note and deed of trust was not preserved for appellate review because the issue was not pled; moreover, the issue was not tried by consent, and all evidence relevant to the issue of waiver of homestead rights was relevant to the validity of a lien. *Apex Fin. Corp. v. Labarba, 2009 Tex.*

*App. LEXIS 1706 (Tex. App. Dallas Mar. 5 2009).*

252. Trial court did not abuse its discretion in granting an equitable lien on the ex-husband's property because he did not present evidence that the property on which the trial court attached a lien was his homestead. *Stoker v. Stoker, 2008 Tex. App. LEXIS 8427 (Tex. App. Houston 1st Dist. Nov. 6 2008).*

253. If an abstract of judgment in a garnishment action, for purposes of *Tex. Civ. Prac. & Rem. Code Ann. § 63.001* and *Tex. R. Civ. P. 657-679*, was filed during a time in which the homeowners' property was their homestead, their property was protected from the lien under *Tex. Const. art. XVI, § 50*, and in this case, when the homeowners sold one home and moved into the property, that property became their homestead and thus the individual filed the abstract of judgment against their homestead and such filing did not create a valid lien against the property; although the county records showed that the homeowners did not file for a homestead exemption on the property until a certain time, county records were not determinative of homestead status, and under the circumstances, the homeowners were entitled to slander of title damages, which were supported by sufficient evidence. *Ramsey v. Davis, 261 S.W.3d 811, 2008 Tex. App. LEXIS 6067 (Tex. App. Dallas 2008).*

254. Trial court did not err in granting a lender's motion for summary judgment on limitations on homeowners' causes of action that alleged violations of *Tex. Const. art. XVI, § 50(a)(6)(B)* and the fraudulent lien statute where the homeowners had failed to file suit within four years of the date of closing of their home equity loan, and where the homeowners had waived any right to assert the discovery rule or fraudulent concealment in response to the lender's motion because they did not plead the discovery rule or the fraudulent concealment defense until their first amended petition, which was filed after the submission date of the motion for summary judgment and without leave of court. *Rivera v. Countrywide Home Loans, Inc., 262 S.W.3d 834, 2008 Tex. App. LEXIS 6018 (Tex. App. Dallas 2008).*

255. Judgment creating an equitable lien against a homestead and in favor of another individual did not violate any homestead rights under *Tex. Const. art. XVI, § 50*, or under *Tex. Prop. Code Ann. § 41.001*, as the friend's payment and the equitable lien created a permissible refinance of a lien against the homestead. *Hulen v. Hamilton, 2008 Tex. App. LEXIS 1672 (Tex. App. Fort Worth Feb. 28 2008).*

256. In a home owner's appeal from the trial court's judgment in favor of a mortgage company, the trial court did not err in rejecting the owner's argument that because a home equity loan could not close within one year of another home equity loan on the same homestead property, the lien was invalid, because *Tex. Const. art. XVI, § 50(a)(6)(Q)(x)* was a cure provision that applied to all of *Tex. Const. art. XVI, § 50(a)* and operated as a cure provision to validate a lien securing a *Tex. Const. art. XVI, § 50(a)(6)* extension of credit. *Summers v. Ameriquest Mortg. Co., 2008 Tex. App. LEXIS 254 (Tex. App. Houston 14th Dist. Jan. 15 2008).*

257. Where appellee debtor acquired title to Texas property prior to marriage, contrary to appellant creditor's argument, she was entitled to her full homestead exemption, under *Tex. Const. art. XVI, § 50, Tex. Prop. Code Ann. § 41.001, Tex. Prop. Code Ann. § 41.002*, notwithstanding a divorce decree's later awarding it to her. *Wallace v. Rogers (In re Rogers), 513 F.3d 212, 2008 U.S. App. LEXIS 129, Bankr. L. Rep. (CCH) P81081 (5th Cir. Tex. 2008).*

258. Forfeiture penalty under *Tex. Const. art. XVI, § 50(e)* did not preclude the lender's recovery of the refinance portion of the loan proceeds that were used to pay the debtor's constitutionally permissible pre-existing debt, because the lender was equitably subrogated to the prior lienholders' interests; *Tex. Const. art. XVI, § 50(e)* did operate to invalidate any liens related to the cash-out portion of the loan. *LaSalle Bank Nat'l Ass'n v. White, 246 S.W.3d 616, 2007 Tex. LEXIS 1129, 51 Tex. Sup. Ct. J. 259 (Tex. 2007).*

259. In holding a redemption of property from a tax sale untimely, a trial court did not err in relying on the definition of "residence homestead" in *Tex. Tax Code Ann. § 11.13(j)(1)* rather than the property code's definition of "homestead" because the protection given to a "homestead" (the prevention of a forced sale to pay general debts) and the protection

given to a "residence homestead" (allowing for redemption after a constitution-sanctioned tax sale) arose in distinct contexts. *Hutson v. Tri-County Props., LLC, 240 S.W.3d 484, 2007 Tex. App. LEXIS 8933 (Tex. App. Fort Worth 2007).*

260. Homestead exemption provisions alone do not protect a homestead of a Texas debtor from attachment of a judicial lien. *In re Caudill, 2007 Bankr. LEXIS 3699, 58 Collier Bankr. Cas. 2d (MB) 1231 (Bankr. S.D. Tex. Oct. 25 2007).*

261. Where a homeowner failed to demonstrate that her home equity lender had the burden to prove that it met the requirements set forth in *Tex. Const. art. XVI, § 50*, the homeowner's challenge to the evidence to prove that compliance afforded no basis for relief from the lender's foreclosure on her homestead. *Wilson v. Aames Capital Corp., 2007 Tex. App. LEXIS 8345 (Tex. App. Houston 14th Dist. Oct. 23 2007).*

262. No authority has been found indicating that a home equity lender, seeking to enforce its lien, has the burden of proof on the requirements set forth in *Tex. Const. art. XVI, § 50(a)(6)*; if anything, judicial economy would dictate that a failure to comply with any of these requirements is in the nature of an affirmative defense so that judicial resources are spent litigating the few requirements that are contested rather than the many that are not. *Wilson v. Aames Capital Corp., 2007 Tex. App. LEXIS 8345 (Tex. App. Houston 14th Dist. Oct. 23 2007).*

263. Phrase "advance of additional funds" in *Tex. Const. art. XVI, § 50* contemplates additional funds the repayment of which is secured through a lien; "additional funds" are monies obtained in excess of the preexisting debt being refinanced, and when the two are combined, the repayment of the total is to be secured by a lien on the homestead. *Meador v. EMC Mortg. Corp., 236 S.W.3d 451, 2007 Tex. App. LEXIS 7683 (Tex. App. Amarillo 2007).*

264. Trial court did not err in granting summary judgment to a subsequent lender in an action in which borrowers sought a judgment declaring that the principal and interest on an unsecured loan owned by the subsequent lender should be forfeited because the loan transaction failed to comply with the homestead lien provisions in *Tex. Const. art. XVI, § 50* where the borrowers had obtained two separate loans from the initial lender, but only one was secured by a lien on their homestead, and that was not the one acquired by the subsequent lender; the mere fact that the initial lender required that both loans be obtained from it did not render the two loans inseparable, and if that had been the case, then both loans would had to have been assigned to the subsequent lender, but they were not. *Meador v. EMC Mortg. Corp., 236 S.W.3d 451, 2007 Tex. App. LEXIS 7683 (Tex. App. Amarillo 2007).*

265. Homestead exemption did not protect bankruptcy debtors' home from creditors' judgment against the debtors, since the judgment determined that the debtors fraudulently obtained funds from the creditors which were used by the debtors as part of the purchase price of the home. *In re Huie, 2007 Bankr. LEXIS 2744 (Bankr. E.D. Tex. Aug. 8 2007).*

266. Although a renewal and extension rider was not completed or attached to a deed of trust, there was no violation of *Tex. Const. art. XVI, § 50* where a loan was intended to refinance and pay off an original purchase money loan, as well as home improvement debts; a debtor was unable to use a minor technical defect to avoid his obligation to pay. *Robinson v. Saxon Mortg. Servs., 240 S.W.3d 311, 2007 Tex. App. LEXIS 6169 (Tex. App. Austin 2007).*

267. Transaction structured as a transfer of homestead property to a bankruptcy debtor from the debtor's parents using funds provided by lenders was in fact intended to be, and thus was, a home equity loan, but the transaction did not violate *Tex. Const. art. XVI, § 50* as a pretended sale since there was no condition of defeasance permitting the parents to reclaim title to the property. *Cadengo v. Consolidated Fund Mgmt., LLC (In re Cadengo), 370 B.R. 681, 2007 Bankr. LEXIS 2212 (Bankr. S.D. Tex. 2007).*

268. Fact that a bankruptcy debtor signed documents at the closing of a transaction transferring property to the debtor indicating that the property was not the debtor's homestead and that the debtor resided elsewhere did not preclude the debtor from asserting homestead rights in the property; the provisions of *Tex. Const. art. XVI, § 50* barring a challenge by lenders to the debtor's non-homestead affidavit did not apply since the lenders knew at the time of the transaction

that the debtor resided at the property and that the debtor had equitable title to the property, and in any event the debtor's possession and use of the property imputed such actual knowledge to the lenders. *Cadengo v. Consolidated Fund Mgmt., LLC (In re Cadengo), 370 B.R. 681, 2007 Bankr. LEXIS 2212 (Bankr. S.D. Tex. 2007).*

269. Where a divorce decree provided that the marital residence be deeded to the divorcing parties' children when the children respectively reached the age of 18 years, lenders did not violate *Tex. Const. art. XVI, § 50* by failing to obtain the consent of one child in documents evidencing a home equity loan to the other child secured by the residence as a homestead, since the non-signing child was not 18 years of age at the time of the transaction and thus held only a contingent interest, rather than an ownership interest, in the property. *Cadengo v. Consolidated Fund Mgmt., LLC (In re Cadengo), 370 B.R. 681, 2007 Bankr. LEXIS 2212 (Bankr. S.D. Tex. 2007).*

270. Transaction structured as a transfer of homestead property to a bankruptcy debtor from the debtor's parents using funds provided by lenders was in fact intended to be, and thus was, a home equity loan, and the lenders thus violated *Tex. Const. art. XVI, § 50* by charging more than 12 times the allowed amount of costs and fees. *Cadengo v. Consolidated Fund Mgmt., LLC (In re Cadengo), 370 B.R. 681, 2007 Bankr. LEXIS 2212 (Bankr. S.D. Tex. 2007).*

271. Lenders which violated numerous provisions of the Texas Constitution in providing a home equity loan to a bankruptcy debtor forfeited all principal and interest of the loan since the lenders failed to cure the violations under *Tex. Const. art. XVI, § 50. Cadengo v. Consolidated Fund Mgmt., LLC (In re Cadengo), 370 B.R. 681, 2007 Bankr. LEXIS 2212 (Bankr. S.D. Tex. 2007).*

272. Trial court properly found that property owners were estopped from claiming that their home equity loan with a bank violated *Tex. Const. art. XVI, § 50(a)*, and the court did not err in rendering summary judgment in favor of the bank in the owners' fraud and wrongful foreclosure action because: (1) the owners represented to the bank that the entire property was their homestead; (2) the owners claimed a homestead exemption pursuant to *Tex. Prop. Code Ann. § 41.001(b)* on the entire property in loan instruments and to tax authorities; and (3) the bank relied on the owners' representations and sworn affidavits to give them a loan secured by their purported homestead. *Sosa v. Long Beach Mortg. Co., 2007 Tex. App. LEXIS 4640 (Tex. App. Austin June 12 2007).*

273. Where a homeowner claimed that a bank unconstitutionally filed an abstract of judgment on his homestead, citing *Tex. Const. art. XVI, § 50*, his affidavit and his interrogatory answer created conflicting inferences as to residency dates of two separate properties, and neither the state constitution nor *Tex. Prop. Code Ann. § 41.002* specifically defined "homestead," summary judgment was improperly granted to the bank because there was a genuine fact issue; the inconsistencies did not render the homeowner's affidavit a sham affidavit. *Pierce v. Wash. Mut. Bank, 226 S.W.3d 711, 2007 Tex. App. LEXIS 3949 (Tex. App. Tyler 2007).*

274. A person is not required to list the name of his or her spouse on real property documents in order for homestead status to attach; possession of a homestead interest is not dependent upon ownership, and a person is permitted to hold homestead rights in his or her spouse's separate property under *Tex. Fam. Code Ann. § 5.001. The Cadle Co. v. Ortiz, 227 S.W.3d 831, 2007 Tex. App. LEXIS 3885 (Tex. App. Corpus Christi 2007).*

275. Under *Tex. Const. art. XVI, § 50(a)(5)(A)*, companies' mechanic's lien on the homeowners' property was invalid because it depended on documents that were not signed by both homeowners, who were married; the wife merely signed her name to the documents and made no mention of her husband, but it was not necessary to have one's name on real property documents in order to have a homestead interest in the property, under *Tex. Fam. Code Ann. § 5.001.* Nothing was shown to defeat the husband's interest, the mechanic's lien did not supercede the homestead exemption, and foreclosure on the home was wrongful. *The Cadle Co. v. Ortiz, 227 S.W.3d 831, 2007 Tex. App. LEXIS 3885 (Tex. App. Corpus Christi 2007).*

276. Where there was sufficient evidence to support a trial court's finding that a third-party lender had no notice of the

allegedly "pretended" nature of a homestead owner's conveyance of her homestead to a buyer, the trial court properly concluded that the owner was estopped from claiming that her conveyance of property to the buyer was void under *Tex. Const. art. XVI, § 50*; the record showed that: (1) the owner's possession of the property was compatible with the buyer's assertions to the lender that she owned the property and that a tenant would be living on the property; (2) the lender conducted a title search and discovered that the owner conveyed title to the buyer by warranty deed; (3) the sales contract indicated that when the entire purchase price was paid, the owner would convey the property to the buyer by warranty deed; and (4) the recorded warranty deed indicated that the owner conveyed the property to the buyer for consideration. *Summage v. Jean, 2007 Tex. App. LEXIS 3375 (Tex. App. Beaumont May 3 2007).*

277. Debtor was entitled to assert a homestead exemption pursuant to *Tex. Const. art. XVI, § 50(a)* and *Tex. Prop. Code Ann. § 41.001(a)*, which required that creditors' deed of trust be avoided, and the lien foreclosure to be set aside. The loan to pay gambling debts was not an allowed encumbrance against a homestead exemption. *Meltzer v. Ramert (In re Meltzer), 2007 Bankr. LEXIS 553 (Bankr. S.D. Tex. Feb. 16 2007).*

278. Because *Tex. Const. art. XVI, § 50*, and *Tex. Prop. Code Ann. § 41.001(a)*, and *Tex. Prop. Code Ann. § 41.002* discuss homesteads in terms of land and any improvements on the land, a boat cannot be a homestead. *Norris v. Thomas, 215 S.W.3d 851, 2007 Tex. LEXIS 130, 50 Tex. Sup. Ct. J. 398 (Tex. 2007).*

279. In response to a certified question from the United States Court of Appeals for the Fifth Circuit in a bankruptcy case, the court determined that the debtors' yacht did not qualify as a homestead under *Tex. Const. art. XVI, § 50*, because it did not have a permanent attachment to realty. *Norris v. Thomas, 215 S.W.3d 851, 2007 Tex. LEXIS 130, 50 Tex. Sup. Ct. J. 398 (Tex. 2007).*

280. There was no clear error in a bankruptcy court's finding that, pursuant to the unambiguous language of *11 U.S.C.S. § 522*(p), the term "interest" referred to some legal or equitable interest that could be quantified by a monetary figure and that the restrictions did not apply to limit the debtor's claim of exemption in homestead pursuant to *Tex. Const. art. XVI, § 50. Wallace v. Rogers (In re Rogers), 354 B.R. 792, 2006 U.S. Dist. LEXIS 75826, Bankr. L. Rep. (CCH) P80787, 56 Collier Bankr. Cas. 2d (MB) 1323 (N.D. Tex. 2006).*

281. *Tex. Const. art. XVI, § 50(a)(6)(I)*'s use of the phrase "designated for agricultural use as provided by statutes governing property tax" referred to land put to an agricultural use as defined by, and assessed for tax purposes under, both *Tex. Tax Code Ann. § 23.42* and *Tex. Tax Code Ann. § 23.51*; because the homeowner's land was designated for agricultural use, the Texas Constitution prohibited it from being used as security for a home equity loan. *LaSalle Bank Nat'l Ass'n v. White, 217 S.W.3d 573, 2006 Tex. App. LEXIS 8747 (Tex. App. San Antonio 2006),* aff'd in part and rev'd in part, *246 S.W.3d 616, 2007 Tex. LEXIS 1129, 51 Tex. Sup. J. 259 (Tex. 2007).*

282. Bank's lien against the homeowner's property was not invalid because the original debt had been refinanced; the lien was invalid because the original debt was refinanced in violation of *Tex. Const. art. XVI, § 50(e)* for having a valid home equity loan in a refinancing transaction; under these circumstances, equitable subrogation did not trump the constitutionally-mandated penalty of forfeiture. *LaSalle Bank Nat'l Ass'n v. White, 217 S.W.3d 573, 2006 Tex. App. LEXIS 8747 (Tex. App. San Antonio 2006),* aff'd in part and rev'd in part, *246 S.W.3d 616, 2007 Tex. LEXIS 1129, 51 Tex. Sup. J. 259 (Tex. 2007).*

283. Partial summary judgment issued in favor of the lender that would allow the lender to proceed in foreclosure on the homestead was affirmed because the transaction between the lender and the homeowners fell within the refinancing exception to the homestead provision, pursuant to *Tex. Const. art. XVI, § 50(a)(4)*; fact that the new mortgage exceeded the amount owed on the home did not exempt the extra from the foreclosure exception because all of the funds were used to renew and extend the prior lien that had been dissolved by payment. *Rains v. Constr. Fin. Servs., 2006 Tex. App. LEXIS 7545 (Tex. App. Austin Aug. 25 2006).*

284. Equitable lien was not valid as to the attorney's fees portion of the judgment because those attorney's fees were not incurred as purchase money for the homestead, improvements to the homestead, nor taxes on the homestead. *Blankenship v. Wightman, 2006 Tex. App. LEXIS 5860 (Tex. App. Texarkana July 7 2006).*

285. Plaintiff mortgagor's property, if later re-designated as agricultural, was protected from forced sale under *Tex. Const. art. XVI, § 50(a)(6)(I)*, regardless of its designation when the debt was incurred, but issues of fact existed on whether the land qualified as agricultural under Tex. Tax Code Ann. subchs. C, D, when defendant bank sought to foreclose. *Marketic v. U. S. Bank Nat'l Ass'n, 436 F. Supp. 2d 842, 2006 U.S. Dist. LEXIS 43038 (N.D. Tex. 2006).*

286. Where plaintiff mortgagor alleged her home equity loan with defendant bank did not comply with *Tex. Const. art. XVI, § 50(a)(6)(E)*, the argument failed because *Tex. Const. art. XVI, § 50(a)(6)(E)*'s cap on fees was not exceeded because the amount paid for discount points qualified as interest, even if points and interest were computed on principal. *Marketic v. U. S. Bank Nat'l Ass'n, 436 F. Supp. 2d 842, 2006 U.S. Dist. LEXIS 43038 (N.D. Tex. 2006).*

287. In a lawyer's action seeking to enforce a lien against the decedent's estate for his lawyer's fees in connection with defending the decedent's husband from charges of his murdering the decedent, the trial court properly invalidated the lien as the lien was not permitted by any homestead exception under *Tex. Const. art. XVI, § 50* and there was no evidence that the homestead was abandoned. *Florey v. Estate of McConnell, 212 S.W.3d 439, 2006 Tex. App. LEXIS 4971 (Tex. App. Austin 2006).*

288. Debtors' four lots, including three lots on which no residence was constructed, was a homestead, *Tex. Const. art. XVI, § 50(a)*, where, except for purchase financing, all lots were purchased in a single transaction, were fenced as a single lot, looked like a single lot, and were used as a single lot; further, the tax rolls treated the entire property as a homestead. *Parks v. Buckeye Ret. Co., L.L.C. (In re Parks), 2006 U.S. Dist. LEXIS 38383 (S.D. Tex. June 9 2006).*

289. Debtors did not abandon a homestead, which consisted of four contiguous, adjacent lots, on three of which was constructed no residence, where, after their eviction from the lot on which a residence was built, the debtors' family rented another home -- even using month-to-month leases for a period -- and did not acquire another homestead, and they continued to use the remaining lots and made extensive efforts to obtain the financing to build a home on those lots. *Parks v. Buckeye Ret. Co., L.L.C. (In re Parks), 2006 U.S. Dist. LEXIS 38383 (S.D. Tex. June 9 2006).*

290. Creditor's lien was unenforceable so as to allow relief from Chapter 7 automatic stay under *11 U.S.C.S. 362* because the debtor was "required" to use the home equity loan proceeds to repay a preexisting debt to the creditor as a condition of making the loan, which violated *Tex. Const. art. XVI, § 50(a)(6)(Q)(i). Box v. First State Bank, Bremond S.S.B., 340 B.R. 782, 2006 U.S. Dist. LEXIS 14645 (S.D. Tex. 2006).*

291. Deed of trust which a Chapter 13 debtor gave a bank before she declared bankruptcy was invalid under *Tex. Const. art. 16, § 50* because property the debtor deeded was her homestead and the bank knew that an affidavit the debtor signed, which declared that other property was her homestead, was false. *Cervera v. First State Bank (in re Cervera), 2006 Bankr. LEXIS 4663 (Bankr. N.D. Tex. Jan. 18 2006).*

292. In divorce case, although trial court properly awarded attorney fees against former husband in favor of former wife's trial attorney, attorney was a third party who was not entitled to attorney fees in the nature of child support; the trial court erred in granting a lien of any kind in favor of the attorney on the husband's homestead under *Tex. Const. art. XVI, § 50, Tex. Prop. Code Ann. § 41.001*; and *Tex. Fam. Code Ann. § 106.002. Johnson v. Johnson, 2005 Tex. App. LEXIS 10458 (Tex. App. Austin Dec. 16 2005).*

293. Borrowers who signed a deed of trust which indicated that a house they owned was not their homestead, were estopped from claiming that the house was their homestead after they defaulted on a loan; their request for a judgment declaring that a lien held by a mortgage company was invalid, was denied. *Gonzales v. Ameriquest Mortg. Corp., 2005*

*U.S. Dist. LEXIS 32370 (W.D. Tex. Dec. 8 2005).*

294. Claim of a maker of a home equity note that the note ran afoul of *Tex. Const. art. XVI, § 50(a)(6)*, was precluded by res judicata because it should have been brought as a defense in a previous state trial court proceeding that had found that the note was valid, enforceable, and in default or on appeal of that case. *Gore v. Homecomings Fin. Network, Inc., 2005 U.S. Dist. LEXIS 30907 (N.D. Tex. Dec. 5 2005).*

295. Creditor's motion to avoid a judgment lien was granted because the debtor had a valid homestead interest asserted in the property at issue, pursuant to *Tex. Const. art. XVI, § 50* and *Tex. Prop. Code § 41.002(a)*, because the debtor had resided and owned the property before filing for bankruptcy. The fact that the debtor did not live at the property while she was in a rehabilitation facility and that the debtor's mother rented the property for a year and that the debtor did not live in the property while it was being repaired did not negate the homestead exemption. *In re Sager, 2005 Bankr. LEXIS 2045 (Bankr. N.D. Tex. Oct. 18 2005).*

296. Judgment creditor's assertion of a lien on the debtor's property was subject to avoidance pursuant to *11 U.S.C.S. § 522(f)(1)(A)* because the creditor's claim was not based on an interest in the property or was not used to secure an obligation owed to a spouse or child of the debtor as required to assert a claim on exempted property under *11 U.S.C.S. § 522(b), Tex. Const. art. 16, §§ 50* and *51*, and *Tex. Prop. Code §§ 41.001* and *41.002. In re Sager, 2005 Bankr. LEXIS 2045 (Bankr. N.D. Tex. Oct. 18 2005).*

297. Foreclosure was available to a homeowner's association as a remedy in its suit against homeowners to recover unpaid maintenance assessments and attorney fees and did not violate *Tex. Const. art. XVI, § 50* because all of the obligations intended to be secured by the lien against the property were included in the original declaration of protective covenants, and because the owners had notice of both the obligations and the existence of the lien at the time they purchased the property. The lien against the property was established years before the owners took possession and established their homestead rights in the property, and the declaration contained a valid contractual lien that ran with the land and of which the owners had notice when they purchased the property. *Sloan v. Owners Ass'n of Westfield, Inc., 167 S.W.3d 401, 2005 Tex. App. LEXIS 3342 (Tex. App. San Antonio 2005).*

298. Word "require" in *Tex. Const. art. XVI, § 50(a)(6)(Q)(i)*, means that the lender may not demand that the proceeds of the extension of credit be used to pay off another debt to the same lending institution as a condition of making the extension of credit. *In re Box, 324 B.R. 290, 2005 Bankr. LEXIS 753 (Bankr. S.D. Tex. 2005),* affirmed by *340 B.R. 782, 2006 U.S. Dist. LEXIS 14645 (S.D. Tex. 2006).*

299. Where creditor's lien on Chapter 13 debtors' homestead was deemed unenforceable under *Tex. Const. art. XVI, § 50(a)*because it violated § 50(a)(6)(Q)(i), the violation was not excused pursuant to § 50(u), by application of *7 Tex. Admin. Code § 153.18(3)*, because § 153.18(3) only applied to debt consolidation loans, which was not the nature of debtors' loan. *In re Box, 324 B.R. 290, 2005 Bankr. LEXIS 753 (Bankr. S.D. Tex. 2005),* affirmed by *340 B.R. 782, 2006 U.S. Dist. LEXIS 14645 (S.D. Tex. 2006).*

300. Trial court's instructions were improper under *Tex. R. Civ. P. 277* because the trial court erred by ordering the questions so that question number two could have been answered only if question number one was answered affirmatively. The error probably caused the rendition of an improper judgment under *Tex. R. App. P. 44.1(a)(1)* because the ordering of the questions and the conditional language of the charge kept the jury from answering a controlling issue regarding homesteads under *Tex. Const. art. XVI, § 50(c). Ortega v. LPP Mortg., Ltd., 160 S.W.3d 596, 2005 Tex. App. LEXIS 1037 (Tex. App. Corpus Christi 2005).*

301. There was no authority to suggest that a trial court could convert an existing judgment into a sanction in order to circumvent well-established law precluding a court from ordering payment of attorney's fees from homestead proceeds; therefore, the trial court abused its discretion by doing so. *Harleaux v. Harleaux, 154 S.W.3d 925, 2005 Tex. App.*

*LEXIS 971 (Tex. App. Dallas 2005).*

302. Boat owned by the Texas debtors was a moveable "motor boat" that could not support a homestead exemption under *Tex. Const. art. 16, §§ 50, 51,* or *Tex. Prop. Code Ann. §§ 41.001, 41.002.* Texas homestead rights concerned an estate in land. *Norris v. Thomas (In re Norris), 316 B.R. 246, 2004 U.S. Dist. LEXIS 21040 (W.D. Tex. 2004).*

303. There was sufficient evidence to support the finding that the property in question was an individual's homestead for purposes of *Tex. Const. art. XVI, § 50*; the individual's application for an exemption was evidence of intent to make the property the individual's homestead, and a home could be a homestead without an exemption in any event, and the individual was the equitable owner of the property, given that the individual lived there continuously and never attempted to establish a homestead elsewhere. *Gibson v. Fauber, 2004 Tex. App. LEXIS 8289 (Tex. App. Tyler Sept. 8 2004).*

304. In a dispute between a contractor and the homeowners (husband and wife) who fired the contractor when they became dissatisfied with his work, the trial court did not err in finding that the homeowners' Texas property was homestead property exempt from liens the contractor had placed on it as the evidence showed that at the time they entered into the construction contract, the husband had been transferred by his employer to Texas and was actually residing there, the homeowners had jointly purchased the Texas property, had voted in Texas, obtained Texas driver's licenses, relocated their car to Texas and had it registered in Texas, and opened a joint checking account in Texas. Although the wife had remained in California with the children pending completion of the renovations, the evidence was sufficient to support a finding that the homeowners had abandoned their California property. *Kendall Builders, Inc. v. Chesson, 149 S.W.3d 796, 2004 Tex. App. LEXIS 7165 (Tex. App. Austin 2004).*

305. Contractor placed liens against the homeowners' property; however, he failed to follow proper procedures outlined in *Tex. Prop. Code Ann. § 53.254* for liens against a homestead, and he instead contended that the property was not a homestead. Nevertheless, the contractor had been informed by the homeowners that they intended to make their property their home. *Kendall Builders, Inc. v. Chesson, 2004 Tex. App. LEXIS 5527 (Tex. App. Austin June 24 2004),* opinion withdrawn by, substituted opinion at *149 S.W.3d 796, 2004 Tex. App. LEXIS 7165 (Tex. App. Austin 2004).*

306. Trial court did not err in declaring a deed of trust to be void and unenforceable as a lien against homestead property because the mortgagees did not prove that the deed of trust secured one of the types of debts excepted from homestead protection under *Tex. Const. art. XVI, § 50(a),* since a previous indebtedness had been paid off, a subrogation theory was waived for failure to plead it in the trial court, and the retention-of-benefits rule was inapplicable because the property owner was not a party to the note, which had been executed by her deceased husband. *Chase Manhattan Mortg. Corp. v. Cook, 141 S.W.3d 709, 2004 Tex. App. LEXIS 5358 (Tex. App. Eastland 2004).*

307. Although owner testified that he had resided on the property, that he only had a few furnishings because he had given them away, and that he bathed outside with a hose because there was no shower or bathtub on the property, the record was devoid of any reasonable proof that the owner actually lived on the property or intended to live on the property, and the owner's actions were not consistent with homestead use; thus, the property was not his homestead, under *Tex. Tax Code Ann. § 11.13(j),* the property did not qualify for an exemption under *Tex. Const. art. XVI, § 51* or *Tex. Prop. Code Ann. § 41.002(a),* and the property was not exempt from sale under *Tex. Const. art. XVI, § 50* or *Tex Prop. Code Ann. § 41.001,* and the trial court properly awarded the judgment creditors the excess funds derived from the tax foreclosure sale as the proceeds were not exempt from garnishment. *Lares v. Garza, 2004 Tex. App. LEXIS 2561 (Tex. App. San Antonio Mar. 24 2004).*

308. Contractor who had complied with *Tex. Const. art. XVI, § 50(a)(5)* and *Tex. Prop. Code Ann. § 53.254(a)-*(c), (e), possessed a constitutional lien enforceable against bankruptcy debtors' homestead; a bankruptcy court had erroneously denied the lien because he had failed to file a lien affidavit pursuant to *Tex. Prop. Code Ann. § 53.052(b).* *Cavazos v. Munoz, 305 B.R. 661, 2004 U.S. Dist. LEXIS 5327 (S.D. Tex. 2004).*

Tex. Const. Art. XVI, § 50

309. Property buyers were not entitled summary judgment in their action to remove the cloud on the title to their property on the basis of the homestead exemption where there was a fact issue as to whether the seller intended the property as his homestead at the time of the sale. *Wilcox v. Marriott, 103 S.W.3d 469, 2003 Tex. App. LEXIS 37 (Tex. App. San Antonio 2003).*

310. Party claiming homestead protection bears the burden of establishing that the property is homestead. *Wilcox v. Marriott, 103 S.W.3d 469, 2003 Tex. App. LEXIS 37 (Tex. App. San Antonio 2003).*

311. To establish homestead rights, a party must show overt acts of homestead usage, and intention on the part of the owner to claim the property as homestead, and once property is dedicated as homestead, it can only lose such designation by abandonment, alienation, or death. *Wilcox v. Marriott, 103 S.W.3d 469, 2003 Tex. App. LEXIS 37 (Tex. App. San Antonio 2003).*

312. After a party establishes the homestead character of the property, the burden shifts to the creditor to disprove the continued existence of the homestead. *Wilcox v. Marriott, 103 S.W.3d 469, 2003 Tex. App. LEXIS 37 (Tex. App. San Antonio 2003).*

313. Homestead was subject to forfeiture under *Tex. Code Crim. Proc. Ann. art. 59.01* et seq. based upon its use to possess and manufacture methamphetamine and was not exempt from forfeiture under the homestead exemptions of *Tex. Const. art. XVI, § 50* and *Tex. Prop. Code Ann. § 41.001.* The exemption only protected property from forfeiture in cases based on debt or creditor's claims. *Lot 39, Section C, N. Hills Subd. v. State, 85 S.W.3d 429, 2002 Tex. App. LEXIS 6109 (Tex. App. Eastland 2002).*

314. *Tex. Const. art. XVI, § 50*, was not preempted by the Home Owners' Loan Act, *12 U.S.C.S. § 1461* et seq. or the Alternative Mortgage Transaction Parity Act, *12 U.S.C.S. § 3801* et seq. and regulations of federal agencies thereunder, which permitted investment in alternative mortgages. *First Gibraltar Bank, Fsb v. Morales, 815 F. Supp. 1008, 1993 U.S. Dist. LEXIS 2499 (W.D. Tex. 1993).*

315. Judgment creating an equitable lien against a homestead and in favor of another individual did not violate any homestead rights under *Tex. Const. art. XVI, § 50*, or under *Tex. Prop. Code Ann. § 41.001*, as the friend's payment and the equitable lien created a permissible refinance of a lien against the homestead. *Hulen v. Hamilton, 2008 Tex. App. LEXIS 1672 (Tex. App. Fort Worth Feb. 28 2008).*

316. In a contractor's action against a homeowner for fraud and breach of contract for failure to make payments, the trial court did not err in ordering foreclosure on the contractor's constitutional and statutory liens. The owner did not plead and prove that the subject property was her homestead. *Zorrilla v. Aypco Constr. Ii, Llc, 421 S.W.3d 54, 2013 Tex. App. LEXIS 12440 (Tex. App. Corpus Christi 2013).*

317. Source of all mechanic's liens in Texas is its constitution. *In re Kleibrink, 346 B.R. 734, 2006 Bankr. LEXIS 1633 (Bankr. N.D. Tex. 2006), aff'd, 2007 U.S. Dist. LEXIS 63974* (N.D. Tex. Aug. 28, 2007).

318. *Tex. Const. art. XVI, § 50* complements *Tex. Const. art. XVI, § 37* by providing that a homestead is protected from forced sale for the payment of all debts except those specified therein, one of which is for "work and material used in constructing improvements thereon," under certain specified conditions; therefore, a constitutional mechanic's lien claimant must also comply with the conditions set forth in *Tex. Const. art. XVI, § 50* in order to fix such a lien on a

homestead. *In re Kleibrink, 346 B.R. 734, 2006 Bankr. LEXIS 1633 (Bankr. N.D. Tex. 2006), aff'd, 2007 U.S. Dist. LEXIS 63974* (N.D. Tex. Aug. 28, 2007).

319. Since the creditor had complied with the requirements of *Tex. Const. art. XVI, § 50* it needed not otherwise have perfected its lien in the manner provided for perfection of statutory mechanic's liens under Tex. Prop. Code Ann. ch. 53. *In re Kleibrink, 346 B.R. 734, 2006 Bankr. LEXIS 1633 (Bankr. N.D. Tex. 2006), aff'd, 2007 U.S. Dist. LEXIS 63974* (N.D. Tex. Aug. 28, 2007).

320. In a dispute between a contractor and the homeowners (husband and wife) who fired the contractor when they became dissatisfied with his work, the trial court did not err in finding that the homeowners' Texas property was homestead property exempt from liens the contractor had placed on it as the evidence showed that at the time they entered into the construction contract, the husband had been transferred by his employer to Texas and was actually residing there, the homeowners had jointly purchased the Texas property, had voted in Texas, obtained Texas driver's licenses, relocated their car to Texas and had it registered in Texas, and opened a joint checking account in Texas. Although the wife had remained in California with the children pending completion of the renovations, the evidence was sufficient to support a finding that the homeowners had abandoned their California property. *Kendall Builders, Inc. v. Chesson, 149 S.W.3d 796, 2004 Tex. App. LEXIS 7165 (Tex. App. Austin 2004).*

321. Contractor who had complied with *Tex. Const. art. XVI, § 50(a)(5)* and *Tex. Prop. Code Ann. § 53.254(a)*-(c), (e), possessed a constitutional lien enforceable against bankruptcy debtors' homestead; a bankruptcy court had erroneously denied the lien because he had failed to file a lien affidavit pursuant to *Tex. Prop. Code Ann. § 53.052(b)*. *Cavazos v. Munoz, 305 B.R. 661, 2004 U.S. Dist. LEXIS 5327 (S.D. Tex. 2004).*

322. Where there was sufficient evidence to support a trial court's finding that a third-party lender had no notice of the allegedly "pretended" nature of a homestead owner's conveyance of her homestead to a buyer, the trial court properly concluded that the owner was estopped from claiming that her conveyance of property to the buyer was void under *Tex. Const. art. XVI, § 50*; the record showed that: (1) the owner's possession of the property was compatible with the buyer's assertions to the lender that she owned the property and that a tenant would be living on the property; (2) the lender conducted a title search and discovered that the owner conveyed title to the buyer by warranty deed; (3) the sales contract indicated that when the entire purchase price was paid, the owner would convey the property to the buyer by warranty deed; and (4) the recorded warranty deed indicated that the owner conveyed the property to the buyer for consideration. *Summage v. Jean, 2007 Tex. App. LEXIS 3375 (Tex. App. Beaumont May 3 2007).*

323. Loan to refinance a home did not violate the Texas Constitution, because the bank was permitted to rely on a written acknowledgement executed by the borrowers indicating that the fair market value of their home was $120,000; the bank's knowledge of a tax appraisal was not evidence that the value included in the acknowledgment was incorrect. *Gonzalez v. U.S. Bank Nat'l Ass'n, 2013 U.S. App. LEXIS 23918 (5th Cir. Tex. Nov. 29 2013).*

324. In a case in which a creditor sought to set aside an alleged fraudulent transfer of property by a husband and a wife, the transfer, if any, of the property to a trust was not a violation of the Uniform Fraudulent Transfer Act, *Tex. Bus. & Com. Code Ann. §§ 24.001-.013,* because the property was the homestead of both the husband and the wife. *Martinek Grain & Bins, Inc. v. Bulldog Farms, Inc., 366 S.W.3d 800, 2012 Tex. App. LEXIS 3047 (Tex. App. Dallas 2012).*

325. In a case in which a creditor sought to set aside an alleged fraudulent transfer of property to a trust made by a

Tex. Const. Art. XVI, § 50

husband and a wife, the property at issue was not subject to the husband's guaranty of his farms' debt to the creditor, regardless of whether the conveyance to the trust was valid or void, because the debts for which the statutes and the state constitution provided the homestead might be liable did not include the husband's guaranty of the farms' debts. When the husband died, the marital relationship ceased to exist, and the homestead property that the wife received under Tex. *Prob. Code Ann. § 279* was neither separate nor community property, but was simply her property. *Martinek Grain & Bins, Inc. v. Bulldog Farms, Inc., 366 S.W.3d 800, 2012 Tex. App. LEXIS 3047 (Tex. App. Dallas 2012).*

326. Foreclosure was available to a homeowner's association as a remedy in its suit against homeowners to recover unpaid maintenance assessments and attorney fees and did not violate *Tex. Const. art. XVI, § 50* because all of the obligations intended to be secured by the lien against the property were included in the original declaration of protective covenants, and because the owners had notice of both the obligations and the existence of the lien at the time they purchased the property. The lien against the property was established years before the owners took possession and established their homestead rights in the property, and the declaration contained a valid contractual lien that ran with the land and of which the owners had notice when they purchased the property. *Sloan v. Owners Ass'n of Westfield, Inc., 167 S.W.3d 401, 2005 Tex. App. LEXIS 3342 (Tex. App. San Antonio 2005).*

327. Because a determination of the right to possession of a decedent's daughter in her forcible detainer action against the decedent's husband necessarily required an adjudication of the merits of title between the daughter (by conveyance from the decedent) and the husband (as the claimant of a homestead right under the decedent's separate title), a justice court's judgment in favor of the daughter, as well as a judgment of the county court at law upholding it on appeal, were void; pursuant to *Tex. R. Civ. P. 746* and *Tex. Gov't Code Ann. § 27.031(b)(4)*, justice courts' limited jurisdiction foreclosed their adjudication of the merits of the title to real property, and because the county court was sitting in its appellate jurisdiction over a forcible detainer suit from the justice court, it was without jurisdiction to adjudicate title to real property. *Geldard v. Watson, 214 S.W.3d 202, 2007 Tex. App. LEXIS 559 (Tex. App. Texarkana 2007).*

328. Plaintiff mortgagor's property, if later re-designated as agricultural, was protected from forced sale under *Tex. Const. art. XVI, § 50(a)(6)(I)*, regardless of its designation when the debt was incurred, but issues of fact existed on whether the land qualified as agricultural under Tex. Tax Code Ann. subchs. C, D, when defendant bank sought to foreclose. *Marketic v. U. S. Bank Nat'l Ass'n, 436 F. Supp. 2d 842, 2006 U.S. Dist. LEXIS 43038 (N.D. Tex. 2006).*

329. Although owner testified that he had resided on the property, that he only had a few furnishings because he had given them away, and that he bathed outside with a hose because there was no shower or bathtub on the property, the record was devoid of any reasonable proof that the owner actually lived on the property or intended to live on the property, and the owner's actions were not consistent with homestead use; thus, the property was not his homestead, under *Tex. Tax Code Ann. § 11.13(j)*, the property did not qualify for an exemption under *Tex. Const. art. XVI, § 51* or *Tex. Prop. Code Ann. § 41.002(a)*, and the property was not exempt from sale under *Tex. Const. art. XVI, § 50* or *Tex Prop. Code Ann. § 41.001*, and the trial court properly awarded the judgment creditors the excess funds derived from the tax foreclosure sale as the proceeds were not exempt from garnishment. *Lares v. Garza, 2004 Tex. App. LEXIS 2561 (Tex. App. San Antonio Mar. 24 2004).*

330. *Tex. Const. art. XVI, § 50(a)(6)(I)*'s use of the phrase "designated for agricultural use as provided by statutes governing property tax" referred to land put to an agricultural use as defined by, and assessed for tax purposes under, both *Tex. Tax Code Ann. § 23.42* and *Tex. Tax Code Ann. § 23.51*; because the homeowner's land was designated for

agricultural use, the Texas Constitution prohibited it from being used as security for a home equity loan. *LaSalle Bank Nat'l Ass'n v. White, 217 S.W.3d 573, 2006 Tex. App. LEXIS 8747 (Tex. App. San Antonio 2006),* aff'd in part and rev'd in part, *246 S.W.3d 616, 2007 Tex. LEXIS 1129, 51 Tex. Sup. J. 259 (Tex. 2007).*

331. In holding a redemption of property from a tax sale untimely, a trial court did not err in relying on the definition of "residence homestead" in *Tex. Tax Code Ann. § 11.13(j)(1)* rather than the property code's definition of "homestead" because the protection given to a "homestead" (the prevention of a forced sale to pay general debts) and the protection given to a "residence homestead" (allowing for redemption after a constitution-sanctioned tax sale) arose in distinct contexts. *Hutson v. Tri-County Props., LLC, 240 S.W.3d 484, 2007 Tex. App. LEXIS 8933 (Tex. App. Fort Worth 2007).*

332. In a dispute over money judgments, a trial court did not err by finding that a parcel of a debtor's property was his homestead because two judgment creditors did not meet their burden of showing that the debtor discontinued his use of the property with the intent to permanently do so; the debtor's wife testified that the utilities were still connected to the property, the property was still maintained, and furniture was still located there. The debtor and his wife had not sold or rented the property, and they had not claimed any other property as their homestead; moreover, the fact that a tax exemption on the property had been allowed to lapsed was not dispositive in the abandonment analysis. *Union Square Fed. Credit Union v. Clay, 2009 Tex. App. LEXIS 2839 (Tex. App. Fort Worth Apr. 23 2009).*

333. Summary judgment was properly granted to purchasers in a dispute regarding a homestead exemption under *Tex. Const. art. XVI, §§ 50, 51* and *Tex. Prop. Code Ann. §§ 41.001, 41.002* because an entire four-plex was subject to the exemption where a judgment debtor had lived in one unit and rented the rest of them out; the debtor's residence and usage of the property was sufficient to obviate the issue of intent and render the entire property his homestead. Further, the layout of the property did not limit the debtor's usage of such, and the fact that the debtor accepted a 25 percent homestead tax exemption under *Tex. Tax Code Ann. § 11.13(k)* did not mean that he declared only 25 percent of the property to be his constitutional homestead. *Sifuentes v. Arriola, 2009 Tex. App. LEXIS 2849 (Tex. App. Austin Apr. 22 2009).*

334. Proportional homestead tax exemption under *Tex. Tax Code Ann. § 11.13(k)* has no impact on a property's homestead status. *Sifuentes v. Arriola, 2009 Tex. App. LEXIS 2849 (Tex. App. Austin Apr. 22 2009).*

335. Homeowners brought suit against defendant alleging violations of the Texas Deceptive Trade Practices Act, *Tex. Bus. & Comm. Code Ann. § 17.41-.63* when their home was not completed on time; however, the jury found in favor of the builder, having reconciled the varying testimony of the witnesses as to why the home was not completed in a timely fashion, and the trial court erred in ordering foreclosure based on the builder's mechanic's and materialman's liens where the builder had assigned the liens to its lender. *Fraser v. Baybrook Bldg. Co., 2003 Tex. App. LEXIS 2240 (Tex. App. Houston 1st Dist. Mar. 13 2003),* opinion withdrawn by, substituted opinion at *2003 Tex. App. LEXIS 4956* (Tex. App. Houston 1st Dist. June 12, 2003).

OPINIONS OF ATTORNEY GENERAL

1. A property owner may encumber real property with a covenant running with the land, which, depending on the particular instruments and circumstances involved, may be enforced by foreclosure without violating subsequent

Tex. Const. Art. XVI, § 50

purchasers' constitutional and statutory homestead rights. Op. Tex. Att'y Gen. No. GA-0279 (2004).

2. The federal Parity Act, *12 U.S.C. §§3801* et seq., does not attempt to authorize state savings and loan associations to make loans secured by a homeowner's equity in his residence, and accordingly does not purport to authorize preemption of the Texas homestead laws. Op. Tex. Att'y Gen. No. JM-1269 (1990).

3. The legislature may not authorize a state agency to construe *Texas Constitution, article XVI, section 50*, known as the home equity amendment. The constitution could be amended to give to an executive agency judicial-type interpretive powers. Op. Tex. Att'y Gen. No. DM-0495 (1998).

4. Creation of a valid contractual lien, upon which foreclosure of a homestead property is proper, requires evidence apparent from the language of the agreement that the parties intended to create a lien. Op. Tex. Att'y Gen. No. GA-0864 (2011).