Hearing Date: TBD
Response Date: September 5, 2014 at 5:00 p.m.
(Prevailing Eastern Time)

| | |
|---|---|
| **MORRISON & FOERSTER LLP** | **REED SMITH LLP** |
| 250 West 55th Street | Princeton Forrestal Village |
| New York, New York 10019 | 136 Main Street, Suite 250 |
| Telephone:   (212) 468-8000 | Princeton, New Jersey 08540 |
| Facsimile:   (212) 468-7900 | Telephone:   (609) 987-0050 |
| Norman S. Rosenbaum | Facsimile:   (609) 951-0824 |
| Jordan A. Wishnew | Diane A. Bettino |
| Meryl L. Rothchild | Barbara K. Hager, *admitted pro hac vice* |
| *Counsel for the ResCap Borrower Claims Trust* | *Co-Counsel for the ResCap Borrower Claims Trust* |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**THE RESCAP BORROWER CLAIMS TRUST'S MOTION IN LIMINE
TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF EVAN D. HENDRICKS**

**PRELIMINARY STATEMENT**

The ResCap Borrower Claims Trust (the "Borrower Trust") submits this motion in limine to exclude the purported expert report, addendum report, and testimony of Evan D. Hendricks ("Mr. Hendricks") offered by the Claimants Frank J. Reed III and Christina Reed (collectively "Claimants").

In his original November 2011 report (the "Report") issued in connection with a prior litigation[1] (the "Law Division Litigation"), Mr. Hendricks purports to: opine on Claimants' non-economic damages; address "issues that are specific to this case, including a context and history that robustly put Defendants on notice of the problems in this case and why Defendants should have prevented them;" and to provide his "more general opinions such as the nature and purpose of credit scores and credit reports, and damages." Report at p. 1. A true and correct copy of the Report is attached hereto as Exhibit A. Claimants also submitted the Reed Report Addendum (the "Addendum," and together with the Report, the "Reports"), issued by Mr. Hendricks on July 13, 2014, in which Mr. Hendricks purports to provide expert opinion on economic damages purportedly caused by GMACM – to wit: "Lost profits from real estate development due to loss of Credit Facility." Addendum, at p. 1. A true and correct copy of the Addendum is attached hereto as Exhibit B. The Reports do not pass muster under the rules governing expert testimony. They should be stricken and Mr. Hendricks should be precluded from testifying for the below reasons.

First, Mr. Hendricks' testimony is largely, if not entirely irrelevant to the limited issues that remain in this case. The Court has specifically limited the scope of any potentially available

---

[1] Reed v. GMAC Mortgage, LLC, NJ Superior Ct., Burlington Cty, No L-1526-10.

- 2 -

damages to those relating directly to the property securing the GMACM loan – i.e., the property located at 817 Matalak Drive in Moorestown, New Jersey (the "Property") that Claimants claim was wrongfully foreclosed despite their admitted default. Second, even if some portion of Mr. Hendricks' analysis were somehow deemed relevant to the limited issues remaining in this case, the Report and Addendum do not meet the standards for admissibility of expert testimony set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) and subsequent case law and rules. With the possible exception of the Report's Part 2 addressing the nature and purpose of credit scores and reports – general issues which are not disputed in this case – the Report and Addendum are devoid of any reliable, consistent, or testable methodology. Moreover they cite to – and presumptively rely on – precious little to no actual evidence of any specifically identified credit report or credit score for either Claimant, and glaringly fail to acknowledge, much less reliably consider, the numerous other financial issues highly relevant to the causation and scope of Claimants' alleged damages.[2] And as noted, even if Mr. Hendricks' Reports could be liberally construed to pass muster under the rules governing expert testimony – which they cannot – they should nevertheless be stricken, for providing opinion testimony that is of no relevance to the issues remaining in this case. For these and the reasons that follow, Mr. Hendricks' Reports should be stricken and he should be precluded from testifying at trial.

## RELEVANT FACTS

As this Court held in its Order Sustaining In Part And Overruling Without Prejudice In Part The Rescap Borrower Trust's Objection To The Reed Claims And Setting Evidentiary Hearing dated July 11, 2014 (the "July 11, 2014 Order" (D.I. 7246), the only claims remaining

---

[2] Claimants have not produced any credit reports during this litigation, despite a Request for Production of Documents and a Trial Subpoena requesting same. For this reason alone, Claimants should be wholly precluded from offering evidence purporting to prove either any improper reporting by GMACM or any alleged damages that allegedly were caused thereby.

for trial are (1) negligence, (2) punitive damages for actual malice, (3) the breach of contract claim against GMACM, and (4) a claim for violation of the New Jersey Consumer Fraud Act ("CFA") based on the single misrepresentation that GMACM owned the note. *See* Order at pp. 2-3.

In his initial report, Mr. Hendricks concludes that Claimant Frank Reed was denied a loan by TD Bank for the singular reason that Property was in foreclosure. According to Mr. Hendricks, approval of a purported refinance loan by TD Bank for an unspecified property in an unspecified amount with an unspecified interest rate and payment "would have enabled Mr. Reed to catch up on his debts, including the GMAC mortgage, and extract equity from his home in order to conduct his business ventures." *See* Report, p. 3. Mr. Hendricks opines that GMACM "doomed" Claimant's intended refinance, doomed his path to undefined "normalcy," and doomed him to "Credit Jail." See Report, p. 3. Mr. Hendricks summarily concludes that in accordance with his "experience as an expert in the field of chronic credit report inaccuracy," he "would value his non-economic damages, at a minimum, at $350,000." Report, p. 5. By footnote he adds that although he fears "low-balling" what a future jury would decide, "this initial estimate provides a reasonable basis for understanding Mr. Reed's minimum non-economic damages." Mr. Hendricks' "initial" "low-ball" "estimate" falls drastically short of the standard required for admission of expert testimony required to aid a trier of fact. Moreover, beyond suggesting that GMACM should have known that "chronic inaccuracy" would cause the types of damages Claimants allege, *see* Report, pp. 5-9, Mr. Hendricks' Report offers nothing more than boiler-plate information about the nature and purpose of credit scores and credit reports, a topic not generally in dispute. *See* Report, Part 2, pp. 9-14.

- 4 -

In the 2014 Addendum, without claiming any relevant business experience or economic expertise, Mr. Hendricks opines on Claimants' purported economic damages from lost profits. Although the 2011 Report specifically states that Claimants' "other expert will opine on his economic damages," Report, p. 3, apparently Mr. Hendricks has nevertheless determined to himself also opine on economic damages. In the Addendum, he concludes that Claimants suffered two components of economic harm: 1) from projects owned and underway; and 2) from "loss of future projects assumed to occur." *See* Addendum, § V. After performing some simple addition, subtraction, and multiplication of numbers provided by other purported experts, Mr. Hendricks opines that Claimants suffered a total of $6,118,106.00 in economic damages.

## ARGUMENT

1. **The Opinions Expressed By Mr. Hendricks Are Irrelevant To The Issues At Hand And Will Not Assist The Trier Of Fact**

First, the scope of any possible damages has been clearly limited by this Court to economic damages, if any, suffered as a result of alleged wrongful conduct by GMACM "relating to this specific [Moorestown] property, <u>not to other business ventures known or unknown</u>, <u>imagined or unimagined</u>." July 28, 2014 Transcript, p. 15 (emphasis added). Among other statements expressly narrowing Claimants' intended scope of proofs, the Court plainly stated: "I will only hear testimony from fact or expert witnesses that relate specifically to this property: wrongful foreclosure, damages suffered as a result, damages relating to this property - - economic or other damages relating to this property. I'm not going to hear testimony about what you believe was the impact of this alleged wrongful foreclosure." *Id*., p. 18.

Accordingly, the entirety of the Addendum Report should be stricken. Not only does it concern properties beyond the Moorestown Property, but it also purports to predict future lost

- 5 -

profits based on those other properties. To the limited extent that the Addendum concerns the Moorestown Property, it assumes a projected profit figure, for which there is no basis in this case because Claimants still own and reside in the Property.

Moreover, this Court does not need "expert" testimony to understand commonly known facts. See e.g., U.S. v. Didomenico, 985 F.2d 1159, 1163 (2d Cir. 1993) (concluding "that the district court was well within the bounds of discretion in excluding [claimant's psychiatric expert's] testimony because the testimony did not meet the helpfulness criterion of Rule 702") (citations omitted); Grdinich v. Bradlees, 187 F.R.D. 77, 82 (S.D.N.Y. 1999) (excluding claimant's expert and finding that "[e]xpert testimony is not admissible when it addresses 'lay matters which a jury is capable of understanding and deciding without the expert's help.'") (citations omitted).

Mr. Hendricks relates his account of the history and context of chronic credit report inaccuracy, as well as the nature and purpose of credit reports and scores. *See generally*, Report, pp. 5-14. The nature and purpose of credit scores, reports and accurate credit reporting are not issues in this contested matter, and this testimony is not otherwise relevant or supportive of either his expert opinion that Mr. Reed suffered non-economic damages of at least $350,000, Report, p.5, nor his expert opinion that Mr. Reed suffered economic damages of $6,118,106.00. Addendum, § V.

Here, the testimony of Mr. Hendricks will not assist this Court in determining the issues in this case.

    **2.**    **Mr. Hendricks Does Not Use Any Relevant Or Reliable Methods, And Therefore His Opinions Wholly Lack Foundation And Do Not Satisfy The Daubert Standard**

An expert opinion must be "relevant" so as to assist the trier of fact, and also must have "a reliable basis in the knowledge and experience of [the expert's] discipline." Daubert, 509 U.S. at 591-92. See also Fed. R. Evid. 702 (permitting expert testimony only if, among other things, "(c) the testimony is the product of reliable principles and methods and the expert has reliably applied the principles and methods to the facts of the case"). Although there is no definitive test for determining the reliability of expert testimony, the Supreme Court has identified a number of factors bearing on reliability, including "(1) whether a theory or technique 'can be (and has been) tested,' (2) 'whether the theory or technique has been subjected to peer review and publication,' (3) a technique's 'known or potential rate of error,' and 'the existence and maintenance of standards controlling the technique's operation,' and (4) whether a particular technique or theory has gained 'general acceptance' in the relevant scientific community." Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 266 (2d Cir. 2002) (quoting Daubert, 509 U.S. at 593-94) (internal citations omitted). The Supreme Court has expressly extended Daubert and its reliability requirements beyond scientific testimony to encompass all expert testimony. *See also*, Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147 (1999); Davis v. Carroll, 937 F. Supp. 2d 390, 417 (S.D.N.Y. 2013) ("Neither Daubert nor Kumho Tire tolerates expert testimony that departs from scientific or professional standards and cannot be independently justified as a reliable analytical tool.").

Here, the Report and Addendum meet none of the foregoing indicia of reliability and utterly fail to satisfy the requirements of F.R.E. 702. As common knowledge and experience would tell the impact of a foreclosure on a credit report and credit score can only be determined in the context of other information on a credit report. Further, months of non-payment of a mortgage, which Mr. Reed has admitted, has a negative effect on a credit report and credit score.

- 7 -

Moreover, the level of indebtedness, a high debt to income ratio, and a failure to pay taxes may all be negative items that are interrelated and serve to determine a credit score.  Although in Part 2 of the Report, Mr. Hendricks acknowledges that payment history, particularly 90-day+ late reports, credit utilization and other factors contribute to a credit score, see Report, pp. 10-11, he does not give the slightest consideration to these evident realities at play in Mr. Reed's case, despite his purported reliance on Mr. Reed's deposition testimony from the Law Division Litigation, which plainly puts most or all of these potential negative credit indicators at play for the Reeds.  In Mr. Hendricks' own telling – if not self-defeating – words, Claimant Mr. Reed was "involved with numerous loans over a period of many years" in connection with his "ongoing business of buying, improving, and selling real estate." *See* Report, p. 3.

Further, Mr. Hendricks does not provide any specific or otherwise reliable facts about the alleged TD Bank refinance loan.  Even assuming TD Bank denied the loan because of a foreclosure, that does not mean such information was not obtained from a title report or court docket, versus from reviewing a credit report provided by a credit reporting agency.  He does not suggest or apparently know that TD Bank relied on any specific credit report at all.  For all the figurative doom and gloom purportedly caused directly by GMACM alone, Mr. Hendricks palpably fails to address the degree to which Claimants' undisputed default on the GMACM mortgage and/or numerous other credit extensions are necessary factors in addressing the cause and scope of damages arising from GMACM's alleged wrongdoing.

Indeed, Mr. Hendricks tellingly admits that the GMACM loan was not Mr. Reed's singular default scenario when he states that the TD Bank denial prevented Mr. Reed from obtaining "the necessary funds to become current on his credit obligations (and to continue his ongoing real estate endeavors)."  Mr. Hendricks simply provides no reliable basis for his

conclusion that GMACM's foreclosure of Claimants' admittedly defaulted loan was the singular wholesale cause of the "low-ball" non-economic damages nor the purely speculative economic damages consisting of regurgitated estimates of current and future profit estimated in the Hendricks Reports.

Moreover, according to Mr. Hendricks, the "materials considered" in generating his expert report specific for this case included Plaintiffs' pleadings and deposition from the Law Division Litigation, as well as Plaintiffs' credit reports and apparently whatever other "documents [that are] cited in [his] report." *See* Report, p. 26. Not only is this an evidently inadequate basis from which to expertly opine on the actual causes of Claimants' non-economic damages, but notwithstanding numerous requests and the applicable discovery rules, the Borrower Trust has not been provided with even one credit report for either Claimant, much less the wholly undefined universe of "Plaintiffs' credit reports" on which Mr. Hendricks purportedly relies.

Despite his opinion that GMACM's foreclosure "doomed" Mr. Reed's refinance, his path to "normalcy" and doomed him to "credit jail," he cites to no comparison of any two separate credit reports in order to explain the doom theory. The bare minimum necessary to begin determining whether there is any causal effect would be a comparison of a credit sore or report before any foreclosure report and thereafter. Although numerous other contributing factors would abound in the case of Mr. Reed, that bare minimum by which to commence any actual analysis is glaringly absent from the Hendricks Reports.

3. **Mr. Hendricks' Reports Should Be Excluded In Large Part – If Not In Their Entirety - Because He Is Not Qualified To Provide An Expert Opinion On Any Of The Issues At Hand**

An expert witness may not offer opinions falling outside of the areas in which she is qualified as an expert by knowledge, skill, experience, training, or education. See Fed. R. Evid. 702; United States v. Chang, 207 F.3d 1169, 1172-73 (9th Cir. 2000) (affirming exclusion of defense expert because he lacked the "specific" expertise necessary to offer helpful testimony). See also, Garnac Grain Co., Inc. v. Blackley, 932 F.2d 1563, 1566 (8th Cir. 1991) (finding witnesses' practical knowledge, including employment in claimant-company's accounting department for twenty-two years and role in implementing company's internal controls, did not provide them with requisite expertise in auditing or accounting to opine as to auditing issues or compliance with GAAS, and affirming exclusion of their testimony); Gray v. Briggs, 45 F. Supp. 2d 316, 323-24 (S.D.N.Y. 1999) (finding expert, whose expertise resided primarily in the securities industry, lacked sufficient knowledge of and experience with ERISA to offer opinions involving ERISA, and thereby excluding opinions).

Mr. Hendricks describes himself as "an expert in the field of chronic credit report inaccuracy." Report at p. 5. He does not describe his expertise to extend to medicine, phsycho-analysis, or counseling. However, his specific opinions in the Report on non-economic damages do nothing more than estimate (based on wholly irrelevant damages awards in other cases) Claimants' non-economic damages based on alleged psychological and emotional conditions that might be present, but about which Mr. Hendricks does not claim to be an expert. Moreover, his specific opinion as to Claimants' economic damages is based on nothing more than simple calculations based on profits other people suggested. He offers no basis for qualifying him as an expert of economics, of the construction or real-estate development businesses, nor of the highly specialized expert sector that might properly opine on the elusive question of lost profits in a particular industry or business venture. While Mr. Hendricks has experience testifying on issues

relating to privacy and how credit scores and credit reports are formulated, those issues are not in material dispute in this case, and therefore to the limited extent that his Report addresses matters to which is may be qualified to testify as an expert, such testimony is not relevant or necessary to aid the trier of fact in deciding the remaining issues in this case.

## CONCLUSION

For the foregoing reasons, the Borrower Trust respectfully requests that Evan D. Hendricks be precluded from testifying at trial and that his Report and Addendum be stricken.

Dated:  August 29, 2014
        New York, New York

/s/ Norman S. Rosenbaum
Norman S. Rosenbaum
Jordan A. Wishnew
Meryl L. Rothchild
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for The ResCap Borrower Claims Trust*

-and-

Diane A. Bettino
Barbara K. Hager, *pro hac vice pending*
REED SMITH LLP
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, New Jersey 08540
Telephone: (609) 987-0050
Facsimile:  (609) 951-0824

*Co-Counsel for The ResCap Borrower Claims Trust*