# EXHIBIT B

## REED REPORT ADDENDUM:

**Lost profits from real estate development due to loss of Credit Facility**

-------------------------------------------------------------------------------------------------------

### I. Historical performance and background:

Mr. Reed spent many years successfully buying, renting, renovation / performing substantial construction on single-family homes.

As with most in this country, Mr. Reed relied on his ability to borrow to conduct his investment activities. (see letter from Reed's longtime CPA Stan Woodworth).

This provided him with an average profit per year of $273,962.[1]

This number is derived from both Mr. Reeds tax returns prepared by the accounting firm Woodworth and St. John and the various county records offices housing the corresponding deeds of the properties Mr. Reed has purchased and sold along with their respective acquisition costs and sale prices.

However, the ability to continue this course of action was dramatically interrupted by the de-liquification and devaluation of Mr. Reed's property by the wrongful foreclosure (see TD Bank Loan denial and Tartamosa credit statement).

### II. Projects underway specifically interfered with by Debtors Wrongful Acts:

Despite Mr. Reed's historical average of $273,962 profit per year, Mr. Reed had three projects specifically owned and underway:

1. 817 Matlack Drive Moorestown, NJ 08057
2. 9717 Old Dell Trace Richmond, VA 23238
3. 133 Brooks Chase lane Richmond, VA 23229

These three properties were at various stages of completion and the specific information relating to their value and marketability has been provided to me by the appropriate professionals and experts who were intimately involved with their development, valuation, marketability and sale.

The projected profit on these specific properties were as follows:

1. $940,000 – 817 Matlack Drive Moorestown, NJ 08057[2]
2. $1,116,600 – 9717 Old Dell Trace Richmond, VA 23238[3]
3. $500,000 – 133 Brooks Chase Lane Richmond, VA 23229[4]

-------------------------------------------------------------------------------------------------------

1. See historical summation chart - Frank Reed Profit From Investment Property purchase / improvement / resale activity 2003 – 2008 derived from Tax Returns Prepared by the accounting firm of Woodworth & St. John and the county public records.
2. See report of Louise M. Carter with substantiating documentation.
3. See report of Stevie Watson with substantiating documentation.
4. See report of Frank Reed – Owner of subject property valuation and lost profits admissible pursuant to FRE 701 and *V.A.L. FLOORS, INC. AND 3L COMPANY, INC., v. WESTMINSTER COMMUNITIES, INC.*, 355 N.J. Super. 416; 810 A.2d 625; 2002 N.J. Super. LEXIS 470.

### III. Lingering Effect of Foreclosure

It is commonly known in the credit reporting industry that Foreclosure proceedings are publicly recorded as such are reported to the credit agencies. This reporting will last for many years and the impact of it will not diminish during that time.

The specific time under the reporting rules that a foreclosure action will remain on someone's credit is approximately seven (7) years from the last time the foreclosure is reported as active.

According to Mr. Reed's most recent credit report, the foreclosure on his house at 817 Matlack Drive Moorestown, NJ 08057 is still active, and as such will remain as a hindrance to his ability to obtain credit for the next following seven (7) years.

### IV. Components of Economic Harm

It is my opinion, based on the facts that I have reviewed that there are two distinct components of economic harm that Mr. Reed has sustained from the wrongful foreclosure action which the debtors perpetrated.

   1. There were specific projects that were owned and underway at the time of the wrongful foreclosure. The values of the loss of those particular projects are in line with the upward trend in size, scope and profitability of Mr. Reed's latter projects; and since associated timeframes for completion, values and associated lost values/profits are well established by the record, I will adopt them for the purposes of this report.

   For the sake of uncertainty, I will also adopt the position of those professionals intimately familiar and/or involved with Mr. Reed's projects in the respect that it would have taken Mr. Reed 2008 and part of 2009 to complete and liquidate his projects underway. This leads me to deduct two (2) full years from the calculation of the second component of Mr. Reed's economic damages as detailed immediately below.

   2. Even though Mr. Reed has shown an ability to perform successfully in various economic conditions and was indeed on an upward trend, I must take into consideration the fact that the country as a whole has experienced a recessionary period. As such I cannot project that he would have continued at the pace he was demonstrating at the time of the debtors interference, so I must apply a discount and turn to his historical performance.

   Therefore, it is my opinion based on the facts that I have reviewed that but for the interference of the debtors, Mr. Reed would have proceeded otherwise unfettered as demonstrated by his historical performance.

**V. Totality of the Reeds Economic Harm from loss of their Credit Facility**

As explained above, there are two (2) components of the Reed's economic harm, the lost profits/value of projects owned and underway and the ongoing loss from the forward moving harm that will linger for at least seven (7) years from this point.

For the Projects owned and underway the loss is as follows:

$940,000 + $1,116,600 + $500,000 = $2,556,600

And for the loss of future projects assumed to occur based on previous historical evidence, (discounted for the uncertainty of economic conditions), the following calculation is applied:

Total time of interference:

2008 to 2021 (seven years hence – as explained in Section III above)
Less two years for specific projects owned and underway (see Section IV)
Produces a total of 13 years.
13 years times $273,962 per year equals:
$3,561,506 of a past and future loss

**Now, the total of the two components, as detailed above and herein is as follows:**

$2,556,600 + $3,561,506 for a total of: **$6,118,106**

My opinions in this case are also based on my 33 year profession of following privacy developments including those related to the consumer reporting and information broker industry and the criminal justice system as a journalist, editor, publisher and privacy expert. My experience includes listening to and participating in dozens of hours of Congressional testimony, hearings before the Federal Trade Commission, media coverage, studies by independent groups, my own personal observations and numerous contacts and my previous work preparing to be an expert witness in Credit related litigation.

Executed This The 13th Day of July 2014 in Bethesda, Maryland

/s/ Evan D. Hendricks
Evan D. Hendricks
PO Box 302
Cabin John, MD 20818
(301) 229 7002