**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, <u>et al</u>., | Chapter 11 |
| Debtors. | Jointly Administered |

**SUPPLEMENTAL DECLARATION OF DEANNA HORST IN SUPPORT OF**
**THE RESCAP BORROWER CLAIMS TRUST'S REPLY IN SUPPORT OF ITS SIXTY-NINTH OMNIBUS OBJECTION TO CLAIMS (NO-LIABILITY BORROWER CLAIMS)**
**<u>AS TO CLAIM NO. 1279</u>**

I, Deanna Horst, hereby declare as follows:

   1. I am the Chief Claims Officer for The ResCap Liquidating Trust (the "<u>Liquidating Trust</u>"), and previously served as Chief Claims Officer for Residential Capital, LLC and its affiliates ("<u>ResCap</u>"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors in the above-captioned Chapter 11 Cases (collectively, the "<u>Debtors</u>"). I have been employed by affiliates of ResCap since August of 2001. In June 2012, I became Senior Director of Claims Management for ResCap and in October of 2013, I became the Chief Claims Officer of ResCap. I began my association with ResCap in 2001 as the Director, Responsible Lending Manager, charged with managing the Debtors' responsible lending on-site due diligence program. In 2002, I became the Director of Quality Asset Management, managing Client Repurchase, Quality Assurance and Compliance—a position I held until 2006, at which time I became the Vice President of the Credit Risk Group, managing Correspondent and Broker approval and monitoring. In 2011, I became the Vice President, Business Risk and Controls, and supported GMAC Mortgage, LLC and Ally Bank in this role. In my current position, I am responsible for Claims Management and Reconciliation

1

ny-1156579

and Client Recovery. I am authorized to submit this supplemental declaration (the "Declaration") in further support of *ResCap Borrower Claims Trust's Reply in Support of Its Sixty-Ninth Omnibus Objection to Claims (No Liability Borrower Claims) as to Claim Nos. 292, 1279, 1466, 3889, 4129, 4134, and 4139* [Docket No. 7422] (the "Reply").[1]

2. Except as otherwise indicated, all facts set forth in this Declaration are based upon information learned from my review of the Debtors' books and records, and information I have received through my discussions with other former members of the Debtors' management or other former employees of the Debtors and the Liquidating Trust's employees, professionals and consultants.[2] If I were called upon to testify, I could and would testify competently to the facts set forth in the Declaration on that basis.

3. I am submitting the Declaration to address certain points raised by the Court during the hearing on the *ResCap Borrower Claims Trust's Sixty-Ninth Omnibus Objection to Claims (No-Liability Borrower Claims)* [Docket No. 7188] (the "Sixty-Ninth Omnibus Objection"), held August 26, 2014.

4. On August 9, 2013, Linton and Nancy Layne ("Mr. and Ms. Layne") filed the *Notice of Complaint to Determine Secured Status and Grant Release of Lien of GMAC Mortgage, LLC, Pursuant to §506(a) and §1322* [Docket No. 4655] (the "Complaint"). In the Complaint, Mr. and Ms. Layne claimed to be the owner of real property located at 2186 E. Main Street, Hillsboro, Oregon 97420 (the "Property"). The Debtors filed an objection to the Complaint on December 20, 2013 (the "Objection") [Docket No. 6168]. In support of the Objection, the Debtors submitted the Declaration of Lauren Graham Delehey, Chief Litigation

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Reply.
[2] The ResCap Liquidating Trust and the ResCap Borrower Claims Trust are parties to an Access and Cooperation Agreement, dated as of December 17, 2013, which, among other things, provides the Borrower Trust with access to the books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.

2

ny-1156579

Counsel for the ResCap Liquidating Trust (the "Delehey Declaration"). In the Delehey Declaration, Ms. Delehey stated in pertinent part as follows: "In their Complaint, the Plaintiffs allege that they are the owners of real property located at 2186 E. Main Street, Hillsboro, Oregon 97420 . . . Prior to the closing of the sale of the Debtors' mortgage servicing platform on February 15, 2013, Debtor GMACM Mortgage, LLC acted as servicer of a mortgage loan related to the Property on behalf of the owner of the loan, U.S. Bank, National Association, as trustee of the SACO I 2006-9 residential mortgage trust. On February 15, 2013, servicing for the loan was transferred to Ocwen Loan Servicing, LLC. Accordingly, as far as I have been able to ascertain, as of the date hereof, neither the Debtors nor the Liquidating Trust have any interest in a junior mortgage or associated note related to the Property."  See Delehey Declaration ¶ 4, attached hereto as Exhibit A.

    5.  On June 25, 2014, the Borrower Trust submitted the Sixty-Ninth Omnibus Objection, which objected to, among other claims, proof of claim no. 1279 submitted by Mr. and Ms. Layne. On August 21, 2014, the Borrower Trust submitted the Reply.  In support of the Reply, I submitted a supplemental declaration (the "Horst Declaration"). In the Horst Declaration, I stated that "Debtor Residential Funding Company purchased the loan from Sierra Pacific and subsequently transferred its interest in the loan when it was securitized and Citibank, N.A. ("Citibank") was appointed trustee on or about August 31, 2006." See Horst Declaration, ¶ 8, attached hereto as Exhibit B (excluding exhibits).

    6.  Subsequent to Citibank's appointment as trustee, several successor trustees were appointed, including La Salle Bank, followed by Bank of America, and finally U.S. Bank, National Association ("U.S. Bank") on or about August 2011.  Accordingly, as set forth in

the Delehey Declaration, U.S. Bank was the trustee for the loan on February 15, 2013.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  September 2, 2014

                                                    /s/ Deanna Horst
                                                    Deanna Horst
                                                    Chief Claims Officer for ResCap
                                                    Liquidating Trust

**<u>Exhibit A</u>**
Delehey Declaration

ny-1156579

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**DECLARATION OF LAUREN GRAHAM DELEHEY
OF THE RESCAP LIQUIDATING TRUST, IN SUPPORT
OF DEBTORS' OBJECTION TO NOTICE OF COMPLAINT
TO DETERMINE SECURED STATUS AND GRANT RELEASE OF LIEN
OF GMAC MORTGAGE, LLC, PURSUANT TO 11 U.S.C. § 506(A) AND § 1322**

I, Lauren Graham Delehey, declare as follows:

**BACKGROUND AND QUALIFICATIONS**

1. I am currently an employee of the ResCap Liquidating Trust (the "**Liquidating Trust**"). Prior to the Effective Date of the Revised Second Amended Joint Chapter 11 Plan [Docket No. 5993], I acted as Chief Litigation Counsel in the legal department of Residential Capital, LLC ("**ResCap**"), one of the affiliated post-effective date debtors in the above-captioned Chapter 11 cases (collectively, the "**Debtors**"). I have served as in-house litigation counsel since I joined ResCap on August 1, 2011. I am authorized to submit this declaration (the "**Declaration**") in support of the *Debtors' Objection to Notice of Complaint to Determine Secured Status and Grant Release of Lien of GMAC Mortgage, LLC, Pursuant to 11 U.S.C. § 506(a) and § 1322* (the "**Objection**").[1]

---

[1] Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to such terms in the Objection.

ny-1123034

2. In connection with my capacities as Chief Litigation Counsel of ResCap and now with the Liquidating Trust, I am generally familiar with the Debtors' borrower-related litigation matters both within and outside of the Debtors' Chapter 11 cases. In connection with these borrower-related matters, I am regularly called upon to verify information in the Debtors' business records regarding the ownership and servicing of mortgage loans underlying the disputes.

3. Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge; information supplied or verified by personnel in departments within the Debtors' or Liquidating Trust's various business units; my review of the Debtors' or Liquidating Trust's litigation case files, books and records, as well as other relevant documents; my discussions with other members of the Debtors' or Liquidating Trust's legal department; information supplied by the Debtors' or Liquidating Trust's consultants and counsel; or my experience, expertise, and knowledge of the Debtors' and Liquidating Trust's litigation matters, financial condition and history. In making these statements based on my review of the Debtors' litigation case files, books and records, relevant documents, and other information prepared or collected by the Debtors' employees, consultants or counsel, I have relied upon these employees, consultants, and counsel accurately recording, preparing, collecting, or verifying any such documentation and other information. If I were called to testify as a witness in this matter, I would testify competently to the facts set forth herein.

## OWNERSHIP OF THE MORTGAGE AND LOAN

4. In their Complaint, the Plaintiffs allege that they are the owners of real property located at 2186 E. Main Street, Hillsboro, Oregon 97420 (the "**Property**"). Prior to the closing of the sale of the Debtors' mortgage servicing platform on February 15, 2013, Debtor GMAC Mortgage, LLC acted as servicer of a mortgage loan related to the Property on behalf of the

owner of the loan, U.S. Bank, National Association, as trustee of the SACO I 2006-9 residential mortgage trust.  On February 15, 2013, servicing for the loan was transferred to Ocwen Loan Servicing, LLC.  Accordingly, as far as I have been able to ascertain, as of the date hereof, neither the Debtors nor the Liquidating Trust have any interest in a junior mortgage or associated note related to the Property.

Dated:  December 20, 2013

>*/s/* Lauren Graham Delehey
>Lauren Graham Delehey
>ResCap Liquidating Trust

ny-1123034

## **Exhibit B**
Horst Declaration

6

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**DECLARATION OF DEANNA HORST IN SUPPORT OF
THE RESCAP BORROWER CLAIMS TRUST'S REPLY IN SUPPORT OF ITS SIXTY-
NINTH OMNIBUS OBJECTION TO CLAIMS (NO-LIABILITY BORROWER CLAIMS)
AS TO CLAIM NOS. 292, 1279, 1466, 3889, 4129, 4134, AND 4139**

I, Deanna Horst, hereby declare as follows:

1.  I am the Chief Claims Officer for The ResCap Liquidating Trust (the "Liquidating Trust"), and previously served as Chief Claims Officer for Residential Capital, LLC and its affiliates ("ResCap"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors in the above-captioned Chapter 11 Cases (collectively, the "Debtors"). I have been employed by affiliates of ResCap since August of 2001. In June 2012, I became Senior Director of Claims Management for ResCap and in October of 2013, I became the Chief Claims Officer of ResCap. I began my association with ResCap in 2001 as the Director, Responsible Lending Manager, charged with managing the Debtors' responsible lending on-site due diligence program. In 2002, I became the Director of Quality Asset Management, managing Client Repurchase, Quality Assurance and Compliance—a position I held until 2006, at which time I became the Vice President of the Credit Risk Group, managing Correspondent and Broker approval and monitoring. In 2011, I became the Vice President, Business Risk and Controls, and supported GMAC Mortgage, LLC and Ally Bank in this role. In my current position, I am responsible for Claims Management and Reconciliation

1

ny-1154569

and Client Recovery. I am authorized to submit this declaration (the "Declaration") in support of *ResCap Borrower Claims Trust's Reply in Support of Its Sixty-Ninth Omnibus Objection to Claims (No Liability Borrower Claims) as to Claim Nos. 292, 1279, 1466, 3889, 4129, 4134, and 4139* (the "Reply").[1]

2. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations and finances, information learned from my review of relevant documents and information I have received through my discussions with other former members of the Debtors' management or other former employees of the Debtors, the Liquidating Trust's employees, professionals and consultants, and/or Kurtzman Carson Consultants LLC ("KCC"), the Debtors' noticing and claims agent. If I were called upon to testify, I could and would testify competently to the facts set forth in the Objection on that basis.

3. In my capacity as Chief Claims Officer, I am intimately familiar with the claims reconciliation process in these Chapter 11 Cases. Except as otherwise indicated, all statements in this Declaration are based upon my familiarity with the Debtors' books and records that were prepared and kept in the course of their regularly conducted business activities (the "Books and Records"), the Debtors' schedules of assets and liabilities and statements of financial affairs filed in these Chapter 11 Cases (collectively, the "Schedules"), my review and reconciliation of claims, and/or my review of relevant documents. I or other Liquidating Trust personnel under my supervision have reviewed and analyzed the proof of claim forms and supporting documentation filed by the Respondents. Since the Plan went effective and the Borrower Trust was established, I, along with other members of the Liquidating Trust have consulted with the Borrower Trust to continue the claims reconciliation process, analyze claims,

---

[1]  Capitalized terms not defined herein shall have the meanings ascribed to them in the Reply.

2

ny-1154569

and determine the appropriate treatment of the same.[2]  In connection with such review and analysis, where applicable, I or other Liquidating Trust personnel, together with the Liquidating Trust's and the Borrower Trust's professional advisors, have reviewed (i) information supplied or verified by former personnel in departments within the Debtors' various business units, (ii) the Books and Records, (iii) the Schedules, (iv) other filed proofs of claim, and/or (v) the official claims register maintained in the Debtors' Chapter 11 Cases.

4.   In connection with the claims reconciliation process, the Borrower Trust identified certain claims filed by Borrowers that are not liabilities of the Debtors (together, the "No Liability Borrower Clams").

5.   The Debtors sent a Request Letter to certain Borrowers, including the Respondents, requesting additional documentation in support of the No Liability Borrower Claims.[3]  The Request Letters state that the claimant must respond within 30 days with an explanation that states the legal and factual reasons why the claimant believes he is owed money or is entitled to other relief from the Debtors, and the claimant must provide copies of any and all documentation that the claimant believes supports the basis for his claim.  The Request Letters further state that if the claimant does not provide the requested explanation and supporting documentation within 30 days, the Debtors may file a formal objection to the claimant's claim, seeking to have the claim disallowed and permanently expunged.

6.   The Debtors received responses to the Request Letters from all of the Respondents (the "Diligence Responses"), copies of which are attached hereto as Exhibit A-1,

---

[2] The ResCap Liquidating Trust and the ResCap Borrower Claims Trust are parties to an Access and Cooperation Agreement, dated as December 17, 2013, which, among other things, provides the Borrower Trust with access to the books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.

[3] A Request Letter was sent to Mr. and Ms. Layne on May 20, 2013, to Mr. Tobias on May 24, 2013, and to Mr. and Ms. Nakamoto, and Ms. Smith on June 21, 2013.

3
ny-1154569

Exhibit A-2, Exhibit A-3, and Exhibit A-4[4]  However, the Diligence Responses failed to allege bases for claims against the Debtors' estates.  Further, as stated in the Objection, the Books and Records do not show any liability due and owing to the Respondents.

**The Layne Claim**

7.  In connection with the claims reconciliation process, the Borrower Trust identified Mr. and Ms. Layne's Claim No. 292, attached hereto as Exhibit B (the "Layne Claim"), as a claim that did not identify a liability of the Debtors.  The Layne Claim, filed on or around July 17, 2012, asserts a general unsecured claim against Debtor GMAC Mortgage, LLC ("GMACM") in the amount of $35,200.  See Layne Claim.

8.  Based upon my review of the Books and Records, Sierra Pacific Mortgage Company, Inc. ("Sierra Pacific") originated a second mortgage loan to the Mr. and Ms. Layne (the "Layne Loan") on March 8, 2006.  See Layne Note, attached hereto as Exhibit C.  That Note was secured by a deed of trust.  See Layne Deed of Trust, attached hereto as Exhibit D.  Debtor Residential Funding Company ("RFC") purchased the loan from Sierra Pacific and subsequently transferred its interest in the loan when it was securitized and Citibank, N.A. was appointed trustee on or about August 31, 2006.  See id.  No Debtor currently has an interest in the loan.

9.  On June 29, 2009, GMACM charged-off the Layne Loan because the Debtors' records indicated that there was not sufficient equity to support the second lien.  See Layne Servicing Notes, attached hereto as Exhibit E. However, the charge-off of the Layne Loan did not remove the lien on the property nor absolve Mr. and Ms. Layne of their financial obligations under the Layne Loan.

---

[4] The Debtors received a Diligence Response from Mr. and Ms. Layne on June 25, 2013, Mr. and Ms. Nakamoto on July 29, 2013, from Mr. Tobias on June 20, 2013, and from Ms. Smith on July 22, 2013.

4

ny-1154569

10. Mr. and Ms. Layne filed for chapter 7 bankruptcy protection on or around December 14, 2010 and received and order of discharge on or around March 16, 2011 (the "Layne Bankruptcy"). See Discharge Order, attached hereto as Exhibit F. The schedules filed in the Layne Bankruptcy do not list any liquidated, unliquidated, or contingent claims against any of the Debtors that are consistent with the allegations in the Layne Claim. See Layne Schedules, attached hereto as Exhibit G. All issues of fact in the Layne Claim occurred prior to the Layne Bankruptcy.

**The Nakamoto Claim**

11. The Borrower Trust identified Mr. and Ms. Nakamoto's Claim No. 1279, attached hereto as Exhibit H (the "Nakamoto Claim"), as a claim that did not identify a liability of the Debtors.

12. On or around April 4, 2005, Heritage Place Mortgage, Inc., a non-debtor entity, originated a loan to Mr. and Ms. Nakamoto (the "Nakamoto Loan") in the amount of $35,200. See Nakamoto Note, attached hereto as Exhibit I.

13. On April 12, 2010, GMACM sent a letter to Mr. and Ms. Nakamoto stating that the interest rate would change to 3.5% effective June 2, 2010. See April 12 Letter, attached hereto as Exhibit J. Based on a review of the Books and Records, there is no record of Mr. and Ms. Nakamoto ever disputing the Debtors' application of the principal and interest to their loan balance.

14. On May 9, 2011, Mr. and Ms. Nakamoto requested a waiver of the escrow payment required by the Nakamoto Loan. See Waiver Request, attached hereto as Exhibit K. On May 12, 2011, the Debtors sent a letter to Mr. and Ms. Nakamoto denying their request, explaining that they were ineligible for a waiver under the terms of the Nakamoto Note and

5

ny-1154569

mortgage and the investors' guidelines.[5]  See May 12 Letter, attached hereto as <u>Exhibit M</u>. Additionally, a representative of the Debtors spoke with Mr. and Ms. Nakamoto on July 12, 2011, explaining the reason for the denial as well as the loan-to-value requirement.  See Nakamoto Servicing Notes, attached hereto as <u>Exhibit N</u>.

**The Tobias Claim**

15.    The Borrower Trust identified Mr. Tobias' Claim No. 1466, attached hereto as <u>Exhibit O</u> (the "<u>Tobias Claim</u>"), as a claim that did not identify a liability of the Debtors.  Mr. Tobias did not append anything to the Tobias Claim, and in his Diligence Response, merely provided a copy of the Consent Judgment (defined below).  Mr. Tobias did not explain how the Consent Judgment related to his claim.

16.    On or around September 2, 2005, GMACM originated a loan to Mr. Tobias (the "<u>Tobias Loan</u>") in the amount of $299,000 for property located at 93 Wisconsin Street, Long Beach, NY.  <u>See</u> Tobias Note, attached hereto as <u>Exhibit P</u>.  According to the Debtors' servicing notes for the Tobias Loan, it was never referred to foreclosure and was never delinquent.  <u>See</u> Tobias Servicing Notes, attached hereto as <u>Exhibit Q</u>.

17.    On October 28, 2013, Mr. Tobias filed a complaint against several defendants, including the GMACM, ResCap,[6] Ocwen, the United States of America, and Barack Obama (the "<u>Tobias Complaint</u>"), which purportedly lays out the case for the Tobias Claim.  <u>See</u> Tobias Complaint, Docket No. 6881-1 Ex. A.  Ocwen filed a motion to dismiss on December 26, 2013, mistakenly including GMACM as a moving defendant.  Mr. Tobias responded with a letter

---

[5] The investor/servicer guidelines for the Nakamoto loan only allowed an escrow waiver when the loan to value ratio on the loan was below 70%. Additionally, the guidelines did not permit an escrow waiver when the property is not owner occupied. Since the property securing the Nakamoto Loan was an investment property, it was not eligible. See Deed of Trust, attached hereto as <u>Exhibit L</u>.
[6] Mr. Tobias never received relief from the automatic stay.

to the judge in the case on January 7, 2014 (the "Tobias Letter") in lieu of a more formal response to Ocwen's motion to dismiss. See Tobias Letter, attached to the Tobias Response.

**The Smith Claim**

18. The Borrower Trust identified Ms. Smith's Claim Nos. 3889, 4129, 4134, and 4139, attached hereto as Exhibit R (the "Smith Claims"), as claims that did not identify a liability of the Debtors. In Box 2 of each proof of claim form (Basis for Claim), the Smith Claims provide that the basis for the claim is "Predatory Lending, Wrongful Foreclosure." See id. Appended to the proof of claim is the first page of a complaint filed against various defendants, including GMACM, Homecomings, RFC, and Accredit.

19. According to the Books and Records, on or around November 13, 2006 American Mortgage Network, Inc. ("AMN") originated a loan to Ms. Smith. RFC purchased the loan from AMN and subsequently the loan was securitized where Deutsche Bank Trust Company Americas ("Deutsche") was appointed trustee on or about January 30, 2007 (the "Securitization Trust"). See the Smith Note, showing a proper chain of endorsement from AMN to Deutsche, attached to the Smith Response as Exhibit 6.[7]

20. Ms. Smith did not make the February 1, 2008 payment on the Smith Loan. The Debtors sent a letter to Ms. Smith on February 11, 2008 detailing the options available to avoid foreclosure. See Options Letter, attached hereto as Exhibit S. The Debtors sent a letter on March 3, 2008 informing Ms. Smith that by not making her payments, she was in breach of the Note. See Breach Letter, attached hereto as Exhibit T. The Smith Loan was in default when

---

[7] It was the Debtors' practice, when acting as servicer, to keep a copy of the note from the originator in the servicing file for the loan. The original, fully endorsed note would be kept by the custodian for the investor. This explains the differences in the copies of the Smith Note that Ms. Smith received. See Exhibit 5 and Exhibit 6 to the Smith Response. The copy without the endorsement to Deutsche was kept as part of the servicing file.

7

ny-1154569

servicing was transferred to Aurora. The Debtors never commenced foreclosure proceedings against Ms. Smith.

21. On July 19, 2011, Ms. Smith filed a lawsuit in the Superior Court of California, Los Angeles County, against "GMAC", RFC, Accredit, Homecomings, Deutsche, Aurora, AMN, and others, captioned <u>Smith v. American Mortgage Network, Inc., et al</u> (the "<u>Smith Complaint</u>"), a copy of which is attached hereto as <u>Exhibit U</u>. The complaint stated causes of action for breach of contract, breach of implied covenant of good faith and fair dealing, breach of fiduciary duty, deceptive business practices, fraudulent concealment, fraudulent omissions, intentional infliction of emotional distress, negligence, negligent misrepresentation, quite title, slander of title, trespass on contract, unconscionability, unjust enrichment, wrongful conversion of real property, wrongful foreclosure, violation of business and profession code §17200; Violation of California Code §1799.17; and Violation of TILA.

22. The Debtors filed a demurrer to the Smith Complaint on March 5, 2012, which the court sustained with leave to amend on May 22, 2012. <u>See</u> Smith Docket, attached hereto as <u>Exhibit V</u>. On June 1, 2012, a notice of bankruptcy was filed advising the court that the Debtors' Chapter 11 cases had been commenced. <u>See id</u>. The court granted an extension to file a second amended complaint on June 22, 2012. <u>See id</u>. Ms. Smith filed a second amended complaint on July 23, 2012. <u>See id</u>. Aurora filed a demurrer on August 28, 2012, which was sustained with leave to amend on May 22, 2013. <u>See id</u>. Ms. Smith filed a third amended complaint on July 13, 2013. <u>See id</u>. The court dismissed the Third Amended Complaint with regards to Aurora and MERS on September 16, 2013. <u>See</u> August 16 Hearing Minutes, attached hereto as <u>Exhibit W</u>.

8

23. It was not the Debtors' practice to include any provisions in prospectuses, pooling and servicing agreements, revolving purchase agreements, or assumption and assignment agreements where the Debtors assumed any liability related to the origination of a loan being purchased. There are no provisions within the documents referenced or attached by Ms. Smith that suggest that the Debtors assumed origination liability when purchasing the Smith Loan from AMN.[8]

24. RFC at one time acted as a warehouse lender to AMN. However, it was not acting in such capacity at the time the Smith Loan was originated.

25. In 2007, Homecomings and GMACM merged their servicing platforms, resulting in an integration of the platforms onto a single computer system. Homecomings did not transfer its servicing rights to GMACM at this time.

26. The Debtors have not found any support in its Books and Records for Ms. Smith's allegation that Homecomings purportedly told her to skip at least three mortgage payments in order to qualify for a loan modification, as there is no record of a call with Ms. Smith in November, 2007. See Smith Servicing Notes, attached hereto as Exhibit X.

27. Accordingly, based upon this detailed review of the Books and Records, together with a review of the Claims and the Responses, the Borrower Trust determined that the Responses fail to substantiate the validity of Respondents' claims against ResCap.

*(Signature Page to Follow)*

---

[8] Copies of the Prospectus, Pooling and Servicing Agreement and Assignment and Assumption Agreement for the RALI Series 2007-QO1 Trust (the securitized trust in the Smith Response) can be found on the SEC's website: http://www.sec.gov/cgi-bin/browse-edgar?CIK=0001384915&Find=Search&owner=exclude&action=getcompany. It is unclear what Ms. Smith is referring to when she references a "revolving purchase agreement" because, as mentioned above, this loan was not funded under a warehouse line with AMN.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 21, 2014

        /s/ Deanna Horst
Deanna Horst
Chief Claims Officer for ResCap
Liquidating Trust