# Exhibit E

# District Court Order

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
RAMON QUIROZ, HELEN QUIROZ, and
JESSICA ANGEL QUIROZ,                      NOT FOR PUBLICATION

                 Plaintiffs,               ORDER ADOPTING REPORT &
                                           RECOMMENDATION
      -against-
                                           10-cv-2485(KAM)(JMA)
U.S. BANK NATIONAL ASSOCIATION as
Trustee, NEW CENTURY MORTGAGE CORP.,
HOMECOMINGS FINANCIAL a/k/a
HOMECOMINGS FINANCIAL GMAC
MORTGAGES, STEVEN J. BAUM, P.C., and
GMAC MORTGAGES,

                 Defendants.
------------------------------------X
```

**MATSUMOTO, United States District Judge**:

       Plaintiffs Ramon Quiroz, Helen Quiroz, and Jessica Angel Quiroz (collectively, the "plaintiffs"), proceeding *pro se*, commenced this action on June 1, 2010 against U.S. Bank National Association ("U.S. Bank"), New Century Mortgage Corporation, Homecomings Financial a/k/a Homecomings Financial GMAC Mortgages ("Homecomings"), and GMAC Mortgages ("GMAC"), (collectively, the "Bank Defendants"), as well as Steven J. Baum, P.C. ("Baum Firm") (collectively, the "defendants"). (*See* ECF No. 1, Complaint ("Compl.").) In light of plaintiffs' *pro se* status, their complaint is read liberally[1] to allege the following: (1) violations of plaintiffs' Fifth and Fourteenth

---

[1] *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (noting that *pro se* submissions are "construed liberally and interpreted 'to raise the strongest arguments that they suggest'" (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006))).

Amendment Due Process rights; (2) fraud claims related to defendants' misrepresentations in the state court proceedings;[2] (3) violations of the Fair Debt Collection Practices Act ("FDCPA"); (4) violations of the Truth in Lending Act ("TILA"); (5) breach of contract; (6) fraud claims relating to the inducement and assignment of the mortgage agreement; (7) a private cause of action under the Racketeer Influenced Corrupt Organizations Act ("RICO");[3] and (8) an allegation that the Bank Defendants' efforts to enforce the mortgage agreement resulted in psychological harm to plaintiff Ramon Quiroz.

Plaintiffs request the following relief: (1) a declaratory judgment to quiet title to the property in their favor; (2) $73,534.34 in damages for the aggregated amounts of secondary loans with interest; (3) $500,000 in damages for unjust enrichment; (4) $50,000,000 in punitive damages in connection with Ramon Quiroz's psychological condition; (5) that the court "withhold" several rulings by the New York State courts, and compel the Bank Defendants to produce discovery not provided in previous state court proceedings; and (6) that the court compel the United States Attorney's Office to bring

---

[2] Plaintiffs clearly state in their objections to Judge Azrack's Report & Recommendation that the fraud claims are asserted against all defendants, including the Baum Firm. (See ECF No. 52, Plaintiffs' Objections to R&R dated 5/23/2011 at 2.)

[3] Plaintiffs also state in their objections that they intended to assert a civil RICO claim against the defendants. (Id. at 4-5.)

2

criminal charges against all defendants under RICO. (Compl. at 5-6, 14.)

Defendants moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (*See* ECF No. 34, Notice of Motion to Dismiss by Baum Firm ("Baum Firm Mot."); ECF No. 40, Motion to Dismiss by Bank Defendants ("Bank Defs. Mot.").) The court referred the motions to Magistrate Judge Joan M. Azrack, who has issued a Report and Recommendation ("Report & Recommendation" or "R&R") recommending that defendants' motions to dismiss be granted. (ECF No. 50, Report & Recommendation dated 5/16/2011.) Plaintiffs have timely objected to the R&R. (*See* ECF No. 52, Plaintiffs' Objections to R&R dated 5/23/2011 ("Obj.").) The Bank Defendants filed an untimely[4] opposition to plaintiffs' objections to the R&R. (*See* ECF No. 54, Bank Defendants' Reply in Opposition to Plaintiffs' Objections to R&R dated 6/10/2011 ("Obj. Reply").) Plaintiffs filed a reply to the Bank Defendants' opposition. (*See* ECF No. 58, Plaintiffs' Reply Memorandum in Opposition dated 6/30/2011 ("Reply").) The court is not required to consider the Bank Defendants' untimely opposition or plaintiffs' reply, which is

---

[4] Defendants were served with a copy of plaintiffs' objections to the R&R via the court's electronic case filing system on May 26, 2011. (*See* Notice of Electronic Filing dated 5/25/2011.) Pursuant to Federal Rule of Civil Procedure 72(b)(2), defendants had 14 days after being served with the objections, or until June 9, 2011, to file any response. Fed. R. Civ. P. 72(b)(2). The Bank Defendants did not file their response until June 10, 2011. Therefore, their response to plaintiffs' objections is untimely.

3

not provided for in Federal Rule of Civil Procedure 72.  For purposes of having a complete record, however, the court will consider these submissions.  Having undertaken a *de novo* review of the record in light of the plaintiffs' timely objections pursuant to 28 U.S.C. § 636(b)(1), the court incorporates the thorough and well-reasoned R&R by reference and adopts it in its entirety.

## **STANDARD OF REVIEW**

### I.  Review of Report & Recommendation

To the extent that a party makes specific and timely written objections to a magistrate judge's findings, the district court must apply a *de novo* standard of review.  *See United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997); *see also* 28 U.S.C. § 636(b)(1).  Upon such *de novo* review, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

### II.  Underlying Dispute

The relevant facts in this action are set out in detail in Judge Azrack's R&R.  (R&R at 4-6.)  Those facts are repeated here only to the extent necessary to support the court's conclusions.

4

### a. Facts

In 2004, Helen Quiroz and Jessica Angel Quiroz purchased a home at 89-37 Metropolitan Avenue in Rego Park, New York ("the property"). (Compl. at apps. G, J.) They refinanced the property in July 2005, obtaining a mortgage of $522,000 from Homecomings. (Compl. at 10-11.) Plaintiffs allege that the Homecomings loan officer represented that the interest rate on the new mortgage would be fixed at 5.5 percent for the first five years, and that the monthly payments would be $2,392.50. (*Id.*) In reality, however, the loan agreement provided for an adjustable rate, rather than a fixed rate. (*Id.*)

From the beginning, plaintiffs were charged more than the amount represented to them by the Homecomings loan officer. (*Id.* at 10.) Moreover, in 2007, plaintiffs were notified that the interest rate on their mortgage would be adjusted to seven percent. (*Id.*) In the fall of 2008, plaintiffs attempted to rescind the mortgage, but Homecomings refused. (*Id.* at app. H.) The interest rate on plaintiffs' mortgage increased again in early 2009, to more than eight percent. (*Id.* at 11.) Plaintiffs allege that, in order to keep up with the increasing mortgage payments, they obtained additional loans from Countrywide Financial and Bank of America totaling $60,000 (the "secondary loans"). (*Id.* at 12.)

5

**b. State Court Proceedings**

On October 8, 2007, after plaintiffs defaulted on their mortgage payments, U.S. Bank initiated an action in New York State Supreme Court, Queens County, against Jessica Angel Quiroz and Helen Quiroz, seeking an order of foreclosure and sale ("Quiroz I"). (*See generally* ECF No. 34-3, Baum Firm Mot., Ex. B, Quiroz I Complaint ("Quiroz I Compl.").) The Baum Firm represented U.S. Bank as Trustee in Quiroz I. (*Id.*) Finding that service of the summons and complaint was proper, and that no defendant filed an answer or requested an extension of time in which to file an answer, the Honorable Lawrence V. Cullen ruled in favor of U.S. Bank and ordered that the property be foreclosed upon and sold. (*See generally* ECF No. 34-4, Baum Firm Mot., Ex. C, Decision by Hon. Lawrence V. Cullen ("Quiroz I Decision").) The Quiroz family contested this decision, and their opposition ultimately reached the New York Court of Appeals, which, on May 6, 2010, declined review of the matter. (*See* ECF No. 34-5, Baum Firm Mot., Ex. D, Opposition to Foreclosure Order ("Quiroz I Opp'n"); Compl. at apps. 1, C, E, I.)

On February 2, 2009, while their opposition to the foreclosure order was pending, Jessica Angel Quiroz and Helen Quiroz initiated an action in New York State Supreme Court, Queens County, against U.S. Bank ("Quiroz II"). (*See generally*

6

ECF Nos. 34-6, 34-7, 34-8, Quiroz II Complaint ("Quiroz II Compl.").)  In Quiroz II, the Quiroz family alleged violations of TILA, various related Federal Reserve regulations, and state-law fraud and contract claims.  (*Id.*)  Although the Quiroz II complaint refers to the Baum Firm, the firm is not explicitly included in the caption.  (*Id.*)  The Quiroz family requested that the court award rescission of the mortgage agreement, damages corresponding to the loan amounts, statutory damages, punitive damages, and a declaratory judgment to quiet title to the property in their favor.  (*See generally id.*)  On July 1, 2009, the Honorable Bernice D. Siegal dismissed the Quiroz II complaint on *res judicata* grounds, concluding that Quiroz I was a final adjudication of all claims arising from the mortgage transaction.  (*See* ECF No. 34-9, Baum Firm Mot., Ex. F, Decision by Hon. Bernice D. Siegal ("Quiroz II Dismissal").)

**III. Report & Recommendation**

Judge Azrack first recommended that the court dismiss plaintiffs' Fifth and Fourteenth Amendment Due Process claims, the FDCPA claim, and the fraud claims against the Bank Defendants under the *Rooker-Feldman* doctrine.  (R&R at 8.) Judge Azrack correctly noted that "[t]he *Rooker-Feldman* doctrine designates the United States Supreme Court as the only federal court that may hear an appeal from a state-court judgment, and denies all other federal courts jurisdiction over claims that

7

are inextricably intertwined with a prior determination issued by a state court." (*Id.* (internal quotations and citation omitted).) The doctrine, as explained in the R&R, is limited to cases "'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review of those judgments.'" (*Id.* at 8-9 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283-84 (2005)).) In the Second Circuit, four requirements must be met for application of the *Rooker-Feldman* doctrine:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state-court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced.

(*Id.* at 9 (quoting *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)).)

Reviewing plaintiffs' complaint, Judge Azrack correctly concluded that the first and fourth "procedural requirements" outlined above "are satisfied in this case" because plaintiffs lost in the state court proceedings, Quiroz I and Quiroz II, and the instant federal action was commenced after the decisions in those cases. (*Id.*) Judge Azrack further correctly determined that the second and third "substantive

8

requirements" for application of the *Rooker-Feldman* doctrine "are also met here," noting that "plaintiffs go so far as to explicitly state their dissatisfaction with the state court proceedings, and to petition this Court to review and modify, or to vacate entirely, those decisions." (*Id.* at 10.) The R&R concluded that "[t]o the extent plaintiffs explicitly ask for review and rejection of the state courts' orders, . . . those claims are barred by [the] *Rooker-Feldman* doctrine." (*Id.* at 10-11.)

    Judge Azrack then went on to analyze the specific causes of actions raised by the plaintiffs, and determined that they "similarly fail to surpass the *Rooker-Feldman* bar." (*Id.* at 11.) Specifically, Judge Azrack found that plaintiffs' claim that they were denied due process when Judge Cullen declined to compel discovery from the Bank Defendants in Quiroz I "explicitly seeks the review and reversal of a particular decision made in state court" and is "inextricably intertwined with orders that have issued from a state court, and [is] thus barred by the *Rooker-Feldman* doctrine." (*Id.*) Similarly, because plaintiffs' fraud claims concerning the Bank Defendants' conduct in state court would require the court to "'effectively declare the state court judgment fraudulently procured and thus void,'" the claims are "inextricably intertwined with the state court proceedings, . . . [and] barred by [the] *Rooker-Feldman*

9

doctrine." (*Id.* (quoting *Swiatkowski v. Citibank*, No. 10-CV-114, 2010 WL 3951212, at *10 (E.D.N.Y. Oct. 7, 2010)).)

Judge Azrack also correctly found that plaintiffs' FDCPA claim was barred by the *Rooker-Feldman* doctrine. (*Id.* at 12.) The R&R explains that plaintiffs' only allegation regarding the collection is "their belief that the debt being collected was false," and thus "any FDCPA claim based on the falsity of the debt is barred by *Rooker-Feldman* because it would be inextricably intertwined with Quiroz I." (*Id.*) Finally, Judge Azrack notes that plaintiffs' request for "restoration of title" to the property and "rescission of the mortgage essentially asks this court to vacate Quiroz I in clear violation of *Rooker-Feldman*." (*Id.*)

In the R&R, Judge Azrack also found that most of plaintiffs' claims were barred by the doctrine of res judicata. (*Id.* at 14.) The R&R correctly noted that, in New York, the doctrine of res judicata will bar relitigation of issues in a subsequent litigation if three requirements are met: "'(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action.'" (*Id.* at 13 (quoting *Monahan v. New York City Dept. of Corrections*, 214 F.3d 275, 285 (alteration in original) (2d Cir. 2000)).) Here,

10

Judge Azrack found that the first requirement was satisfied because "Quiroz I is a final adjudication on the merits." (*Id.* at 14.) Second, Judge Azrack found that "the requirement of privity is similarly met." (*Id.*) Plaintiffs Helen Quiroz and Jessica Angel Quiroz "were [parties] in Quiroz I" and Quiroz II, and "Ramon Quiroz, though not a named party, was in privity with Helen and Jessica" because his "interests in both prior actions were identical to those of his wife and daughter" and he was "intimately involved with the prior state court proceedings." (*Id.*)

Lastly, Judge Azrack found that "the majority of plaintiffs' present claims arise from the same factual grouping at the center of both prior state court proceedings — namely, issues surrounding whether the lender misrepresented or failed to disclose material terms of the mortgage agreement, and whether [U.S. Bank] had a valid right to enforce that agreement," and thus are barred from relitigation. (*Id.* at 15.) Specifically, the R&R concludes that because the TILA claims "pertains to alleged improprieties during the formation and signing of the mortgage agreement," it is "precisely the type of issue that should have been raised in Quiroz I" and thus the claim is now barred by res judicata. (*Id.*) Similarly, because plaintiffs' breach of contract claim "concerns whose conception of the contract—plaintiffs' or defendants'—is valid" the claim

11

"should have been raised during Quiroz I" and is thus also barred by res judicata. (*Id.* at 16.) Finally, the R&R concluded that because plaintiffs' various fraud claims in this action "pertain to the formation and validity of the contract, and whether various defendants possessed documentation," the claims "should have been raised in the initial foreclosure proceeding and are barred by res judicata." (*Id.*)

Although Judge Azrack concluded that "plaintiffs did not intend to raise a private cause of action under RICO" in their complaint (*see id.* at 3 n.3.), the R&R concluded that "even if plaintiffs do attempt to bring a RICO claim, it would fail under Federal Rule of Civil Procedure 12(b)(6)" as the complaint is "bereft of any allegations of a RICO enterprise or a pattern of racketeering activity." (*Id.*) Further, Judge Azrack concluded that "there is no reason to grant plaintiffs leave to amend the complaint" as "there is no indication that a valid RICO claim could be stated." (*Id.*)

Judge Azrack recommended "that the Court decline to exercise supplemental jurisdiction over" plaintiffs' negligence claim for the alleged "serious Physical Impairment and Psychological Harm" suffered by Ramon Quiroz as a result of defendants' actions. (*Id.* at 17.) The R&R noted that the negligence claims "rely on no federal law" and that there is no diversity jurisdiction because plaintiffs and the Baum Firm are

12

all citizens of New York. (*Id.*) Moreover, the R&R recommends that "even if this Court were to exercise supplemental jurisdiction over the negligence claim, the allegations of liability for Ramon Quiroz's injuries are merely legal conclusions, insufficient to survive a motion to dismiss under Rule 12(b)(6)." (*Id.*) Finally, although the R&R concluded that "plaintiffs do no attempt to bring a fraud claim specifically against the Baum Firm," Judge Azrack recommended that "even if such a claim were pleaded, . . . the Court [should] decline to exercise supplemental jurisdiction over [that] claim" as well. (*Id.* at 2 n.2.)

## DISCUSSION

In light of defendants' timely objections, the court has undertaken a *de novo* review of the full record, including the applicable law, the pleadings, the underlying record, the parties' submissions on the motions to dismiss, the R&R, the plaintiffs' objections to the R&R and reply, and the Bank Defendants' untimely reply in opposition to plaintiffs' objections to the R&R. *See* 28 U.S.C. § 636(b)(1).

In their objections, plaintiffs argue that "[t]he causes of action pleaded by plaintiffs demanded in the complaint are valid." (Obj. at 2.) Plaintiffs clarify that "[i]t is very clear plaintiffs asserted a fraud claim specifically against the 'Baum Firm'" and that "[i]t is now entirely clear plaintiffs

13

Case 1:10-cv-02485-KAM-JMA   Document 60   Filed 08/05/11   Page 14 of 17 PageID #: 1115

12-12020-mg    Doc 7480-6    Filed 09/04/14    Entered 09/04/14 11:44:19    Declaration
Exhibit E - District Court Order    Pg 15 of 18

demand[] [a] cause of action under RICO." (*Id.* at 2 n.2, 4.) Consequently, plaintiffs ask that the court allow them to "adequately plead a RICO claim." (*Id.* at 5.) Moreover, plaintiffs now argue that "U.S. Bank National Association as trustee is not the party in question and not involved in this matter." (*Id.* at 4.) In addition, plaintiffs "specifically ask this Court to reverse [the] rulings by New York State courts, . . . to compel defendants to produce discovery material not provided in a previous state court proceeding," and "to compel the United States Attorney's Office to bring criminal charges against" the Baum Firm and GMAC. (*Id.* at 4 (internal quotations and footnote omitted); *see also id.* at 5.) Finally, plaintiffs provide the court with an excerpt from a discussion regarding "facts that caused the financial crash in the UNITED STATES OF AMERICA." (*Id.* at 8-25.)

    The Bank Defendants oppose plaintiffs' objections, arguing that "plaintiffs again proffer disjointed and incomprehensible 'arguments.'" (Obj. Reply at 2.) Arguing that the R&R should be adopted in its entirety, the Bank Defendants argue that "the Report reviewed each discrete claim in plaintiffs' Complaint and determined that each and every one of them should be dismissed under one or more grounds." (*Id.* at 3.) Moreover, the Bank Defendants argue that the R&R correctly determined that "certain of the Complaint's claims were

14

explicitly offered as claims in the State Court Actions, and thus should be dismissed under the doctrine of res judicata." (*Id.* at 5.) Finally, the Bank Defendants contend that "the Report correctly determined that, to the extent it is alleged at all . . ., no viable claim for RICO is made in the Complaint." (*Id.* at 6.)

In their reply, plaintiffs argue that, under the Due Process Clause and the Constitution of the United States, "Magistrate Azrack can not [sic] recommend dismissing plaintiff[s'] complaint." (Reply at 8.) Plaintiffs argue that the Bank Defendants "are not the real party in interest" in this case, and thus their motion to dismiss should be denied. (*Id.* at 5, 8-9.) Plaintiffs also "demand to appoint . . . Eric Schneiderman" to prosecute claims against the defendants for their violations of the False Claims Act and RICO. (*Id.* at 5.) The plaintiffs "again admit that their action is an appeal from the State Court decisions" and "plead to discovery in this court." (*Id.* at 6, 8.) Moreover, plaintiffs argue that because of the disability suffered by Ramon Quiroz as a result of defendants' practices, they are entitled to the defense of laches. (*Id.* at 11.) Finally, plaintiffs incorporate into their reply what appears to be a Huffington Post article regarding federal audits of the nation's five largest mortgage lenders. (*Id.* at 12-18.)

15

The court has considered the foregoing objections and undertaken a *de novo* review of the R&R, the underlying pleadings and factual record upon which it is based, and the relevant legal authorities.  Having conducted such review, and upon careful consideration of the plaintiffs' objections, the objections are overruled.  This court, fully concurring with Judge Azrack's R&R in all material respects, hereby adopts, in its entirety, the rationale articulated in the detailed, thorough and well-reasoned R&R, which embodies a correctly grounded analysis of the factual record and legal authorities.  Specifically, the court agrees with and fully adopts Judge Azrack's findings that: (1) the *Rooker-Feldman* doctrine bars review of plaintiffs' Fifth and Fourteenth Amendment Due Process claims, FDCPA claim, and fraud claims; (2) the doctrine of res judicata bars relitigation of plaintiffs' TILA and predatory lending claims, breach of contract claim, and fraud claims; (3) that plaintiffs have not alleged sufficient facts to plausibly state a RICO claim, that there is no indication that a RICO claim could be stated, and that thus plaintiffs are denied leave to amend their complaint; and (4) that the court declines to exercise supplemental jurisdiction over plaintiffs' remaining state-law fraud and negligence claims.  Consequently, defendants' motions to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) are granted.

## CONCLUSION

For the reasons set forth above, Judge Azrack's well-reasoned and thorough Report & Recommendation is incorporated by reference and adopted in its entirely as the opinion of the court, and plaintiffs' objections are overruled. The Bank Defendants' and the Baum Firm's motions to dismiss are granted in their entirety and plaintiffs' complaint is dismissed with prejudice.

The Bank Defendants shall serve a copy of this Order on plaintiffs and file a Certificate of Service on the electronic docket by no later than August 8, 2011. The Clerk of the Court is respectfully requested to enter judgment in accordance with this Order and to close this case.

**SO ORDERED.**

Dated:     August 5, 2011
           Brooklyn, New York

                                                  /s/
                                    _____
                                    **Kiyo A. Matsumoto**
                                    United States District Judge
                                    Eastern District of New York