**UNITED STATES BANKRUPTCY COURT-SOUTHERN DISTRICT OF NEW YORK**

| IN RE: | Chapter 11 |
|---|---|
| RESIDENTIAL CAPITAL LLC, et al | Case No. 12020- [ALG] |
| | and 12-12032 |
| | Jointly Administered] |

### PATRICK FARRELL'S NOTICE OF FRAUD UPON THE COURT

On AUG 26,2014 during the telephone hearing with his Honor Martin Glenn, Patrick Farrell and atty. Christian Hancock, she falsely stated that WELLS FARGO BANK was the "**investor**."
That is blatantly false, highly prejudicial against Farrell and requires rebuttal and clarification.
On DEC 7,2007 WFB filed foreclosure case 07-CA-16767 as plaintiff named;
WELLS FARGO BANK N.A. [WFBNA] **AS TRUSTEE** UNDER THE POOLING AND SERVICING AGREEMENT RELATING TO IMPAC SECURED ASSETS CORPORATION, MORTGAGE **PASS THROUGH** CERTIFICATES, SERIES 2005-2.
WFBNA cannot be a **trustee** and an **investor** at the same time in the same MBS, PERIOD!
As a trustee of a **pass through**, WFBNA does not suffer any injury, as the mortgage payments "pass through" the trustee and goes to the REAL investors, who were from BEAR-STEARNS.
This legal reality was best expressed by Judge Chris Boyko in OCT 2007 in his infamous rulings dismissing 14 foreclosure cases in OHIO Federal Court. His HONOR's ruling is attached.
Counsel like all lying lawyers, IGNORES the Fl. state court ORDER in the 2006 Liebowitz case, and the 2007 Ohio Federal case. Ignorance is for criminals, Honor is for Justice.
**THEREFORE** this Court cannot make a good faith determination against Farrell, as counsel clearly continues the Frauds and misrepresentations in this case that have plagued it from the beginning, as evidenced by the simple fact that this case is 7 years old, with 2 notes, 2 amounts, 2 APR, 2 loan numbers, 2 assignments of mortgage and 2 servicors of 2 faulty phony trusts.
In the 2006 Liebowitz case, the Court ORDERED GMAC to stop lying and using false documents to foreclose, but GMAC ignored that ORDER and sanctions and continued.
Herein,8 years later the very same bad faith behavior is made by GMAC and counsel.
**WHEREFORE** Patrick Farrell/Claimant moves this Honorable Court to grant his claims in an amount the Court deems just and fair, and include any sanction the Court deems appropriate.



RECEIVED SEP -2 2014 BANKRUPTCY COURT, SDNY

## FROM MY ANSWER TO COMPLAINT PAGE 3 AND 4 ON FILE

To overcome the false concept that someone "loaned" me money....

**AFFIRMATIVE DEFENSE- REMIC AND SECURITIES FRAUD**

There was no loan, Farrell was steered into an Investment Contract as an undisclosed investor, 3rd party beneficiary, using Farrell's Note, same as money, to finance said Investment Co. [IMPAC-2005-2] in the amount of $627,000, the total of the $283,000 note and 30 years of interest. *Add the $283,000 mortgage amount and that is about $900K.*

*This is how and why this "foreclosure crisis was made, inter alia, by splitting the Note from the Mortgage and making 2 different income streams.*

I the homeowner, without consent or knowledge, was converted from a borrower to a **securities issuer**; and the investor was converted from being a part owner in a valid REMIC pool, to being the buyer of the security issued by the homeowner. **Non-disclosure Voids "contract."**

Once the REMIC [IMPAC SECURED ASSETS 2005-2] containing Farrell's note was formed, the note was converted into a security stock owned by thousands of investors of Wall Street. Because of IRS code 860, WELLS FARGO Trustee is not the real and beneficial party in interest because the REMIC does not own the Note, the shareholders do.

Since the note went into default, it was written off by the REMIC and received tax credits from the IRS, and was therefore discharged, and settled, destroying the Note forever.

Since the note was sold and securitized into stock, WELLS FARGO can no longer claim that it is a real party in interest, or that the note stills exists since double dipping is securities fraud.

**The Promissory Note, by conversion into stock, was extinguished as a collateralized asset and therefore the Trust secures absolutely nothing and WELLS FARGO, not being the real party in interest, has no standing to foreclose on Farrell, warranting dismissal.**

PINNACLE allegedly endorsed the note to IMPAC, who allegedly sold it to a REMIC. They then **lost the ability to assign the Mortgage** or the Note. It was no longer the party of interest. After securitization, the Note cannot be re-attached to the Mortgage through assignment.

The original Note had to be destroyed upon securitization because the Note and the stock cannot exist at the same time. Under the terms of the Pooling and Servicing Agreement a note in default CANNOT be put into the trust, after trust closed, as defendant has tried to do.

**[See my ANSWER para. 105-"all notes were destroyed" banks atty. Virginia Townes.]**

2

The proper parties would be the **investors** but they have no recorded interest in the Mortgage, which was **never delivered** to the **Trustee** Wells Fargo, therefore the note discharged.

Today, with the advent of securitization these Special Deposits are truly investment contracts [Mortgage NOTE sold out-right to generate profit] and the **undisclosed investor [FARRELL] has possession rights to the profits generated from said Mortgage NOTE.**

Generally, undisclosed investor [ME] is unaware of the moneys due, and it abandons the right to receive said funds when Maker fail to make a claim to said funds within three years.

<u>I have not abandoned these funds, as I filed case 07-CA-14942 in November 2007, within 3 years of closing on Oct. 2005, and claimed said funds are MINE=$283,000 amount of note.</u>

**SUMMARILY,**

If the note went into the trust then the foregoing Voids the foreclosure to secure the mortgage.

If the note was not placed into the trust the foreclosure by GMAC acting for the trustee, is Void.

Now that WFBNA is the alleged "Investor" they cannot be the trustee, which Voids foreclosure made out of whole cloth by GMAC, the "debtor." Any way I win.

**WHEREFORE** Patrick Farrell/Claimant moves this Honorable Court to grant his claims in an amount the Court deems just and fair, and include any sanction the Court deems appropriate.

**TAKE THIS UNDER ADVISEMENT YOU HONOR**

At 15 years old I broke my 5th lumbar vertebrae landing on a crossbar pole vaulting.

Despite that, I hiked into the Grand Canyon 5 times from 5 different access points.

I played 10,000 games of basketball, I am ALWAYS the highest scorer and I ALWAYS win.

I am as fast as anyone, but I AM more accurate then everyone. I am unconscious and phenomenal. White men call me the machine and black men call me butter [smooth] or killer.

My process is to play fair, hard and never give up. That's why I beat the Hare Krsna cult and their criminal co-conspirators, the lee co. state attorney's [5 females,2 were fired for lying].

All the judges agreed with me against the lies and fraud of the members of the Communist Guild Party-American BAR Association parasites, lawyers. There and here are the same.

In 1994 the state charged me $20,000 the prosecutor was immediately fired, but they kept the case alive because the $20,000 was "earning" interest in an investment bond.

That atty. supervisor agreed with me and is now a Federal Judge, Sheri Pollster Chapell.

My atty. then was fired by me, became a judge and was fired for incompetence, Joe Simpson.

My accusers [Krsnas] were sued for $400 million [thanks to me] and paid out $25 million.

3

In AUG 2004, the false appraisal was for $465,000, minus my $20,000 stolen = $445,000. The illegal summary judgment on APR 30,2014, was for $445,000, that is not a coincidence. The banks kept this fraud alive because my home was used in a 5 year bond investment scheme. Summarily, ALL lawyers are liars and ALL Judges agree with me. My I.Q. is 150.

**CERTIFICATE OF SERVICE**

- Honorable Martin Glenn, United States Bankruptcy Court, Alexander Hamilton Custom House, One Bowling Green, New York, NewYork 10004-1408;
- Office of the United States Trustee for the Southern District of New York,U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014
- MORRISON & FOERSTER LLP-250 West 55th St.-New York, New York 10019 Norman S. Rosenbaum-Jordan A. Wishnew- Meryl L. Rothchild
- BRADLEY ARANT BOULT CUMMINGS, LLP-1615 L Street, NW, Suite 1350 Washington, DC 20036-Christian Hancock-Monica Wilson

WITHOUT PREJUDICE-U.C.C.-1-308

_[signature]_

Patrick Lorne Farrell as Trustee for the
**PATRICK FARRELL IRREVOKABLE LIVING TRUST**
in Propria Persona-Attorney In Fact-Sovereign-Secured Party Creditor
signed "without the united states" and without prejudice/UCC 1-308
UCC-1 Filing # 2007-356-2344-8 [12/22/07]-Wash. St.
2904 NW14th Terrace-Cape Coral, Florida-[33993-9998]-D.M.S.R. SEC.112.32
**AUGUST 26,2014**

4

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE FORECLOSURE CASES | ) CASE NO. NO.1:07CV2282 |
| | ) 07CV2532 |
| | ) 07CV2560 |
| | ) 07CV2602 |
| | ) 07CV2631 |
| | ) 07CV2638 |
| | ) 07CV2681 |
| | ) 07CV2695 |
| | ) 07CV2920 |
| | ) 07CV2930 |
| | ) 07CV2949 |
| | ) 07CV2950 |
| | ) 07CV3000 |
| | ) 07CV3029 |
| | ) |
| | ) JUDGE CHRISTOPHER A. BOYKO |
| | ) |
| | ) |
| | ) OPINION AND ORDER |
| | ) |
| | ) |

**CHRISTOPHER A. BOYKO, J.**:

On October 10, 2007, this Court issued an Order requiring Plaintiff-Lenders in a number of pending foreclosure cases to file a copy of the executed Assignment demonstrating Plaintiff was the holder and owner of the Note and Mortgage *as of the date the Complaint was filed*, or the Court would enter a dismissal. After considering the submissions, along with all the documents filed of record, the Court dismisses the captioned cases without prejudice. The Court has reached today's determination after a thorough review of all the relevant law and the briefs and arguments recently presented by the parties, including oral

arguments heard on Plaintiff Deutsche Bank's Motion for Reconsideration. The decision, therefore, is applicable from this date forward, and shall not have retroactive effect.

## LAW AND ANALYSIS

A party seeking to bring a case into federal court on grounds of diversity carries the burden of establishing diversity jurisdiction. *Coyne v. American Tobacco Company*, 183 F. 3d 488 (6th Cir. 1999). Further, the plaintiff "bears the burden of demonstrating standing and must plead its components with specificity." *Coyne*, 183 F. 3d at 494; *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464 (1982). The minimum constitutional requirements for standing are: proof of injury in fact, causation, and redressability. *Valley Forge*, 454 U.S. at 472. In addition, "the plaintiff must be a proper proponent, and the action a proper vehicle, to vindicate the rights asserted." *Coyne*, 183 F. 3d at 494 (quoting *Pestrak v. Ohio Elections Comm'n*, 926 F. 2d 573, 576 (6th Cir. 1991)). To satisfy the requirements of Article III of the United States Constitution, the plaintiff must show he has ***personally suffered some actual injury*** as a result of the illegal conduct of the defendant. (Emphasis added). *Coyne*, 183 F. 3d at 494; *Valley Forge*, 454 U.S. at 472.

In each of the above-captioned Complaints, the named Plaintiff alleges it is the holder and owner of the Note and Mortgage. However, the attached Note and Mortgage identify the mortgagee and promisee as the original lending institution — one other than the named Plaintiff. Further, the Preliminary Judicial Report attached as an exhibit to the Complaint makes no reference to the named Plaintiff in the recorded chain of title/interest. The Court's Amended General Order No. 2006-16 requires Plaintiff to submit an affidavit along with the Complaint, which identifies Plaintiff either as the original mortgage holder, or as an assignee,

-2-

trustee or successor-in-interest. Once again, the affidavits submitted in all these cases recite the averment that Plaintiff is the owner of the Note and Mortgage, without any mention of an assignment or trust or successor interest. Consequently, the very filings and submissions of the Plaintiff create a conflict. In every instance, then, Plaintiff has not satisfied its burden of demonstrating standing at the time of the filing of the Complaint.

Understandably, the Court requested clarification by requiring each Plaintiff to submit a copy of the Assignment of the Note and Mortgage, executed as of the date of the Foreclosure Complaint. In the above-captioned cases, *none* of the Assignments show the named Plaintiff to be the owner of the rights, title and interest under the Mortgage at issue as of the date of the Foreclosure Complaint. The Assignments, in every instance, express a present intent to convey all rights, title and interest in the Mortgage and the accompanying Note to the Plaintiff named in the caption of the Foreclosure Complaint upon receipt of sufficient consideration on the date the Assignment was signed and notarized. Further, the Assignment documents are all prepared by counsel for the named Plaintiffs. These proffered documents belie Plaintiffs' assertion they own the Note and Mortgage by means of a purchase which pre-dated the Complaint by days, months or years.

Plaintiff-Lenders shall take note, furthermore, that prior to the issuance of its October 10, 2007 Order, the Court considered the principles of "real party in interest," and examined Fed. R. Civ. P. 17 — "Parties Plaintiff and Defendant; Capacity" and its associated Commentary. The Rule is not *apropos* to the situation raised by these Foreclosure Complaints. The Rule's Commentary offers this explanation: "The provision should not be misunderstood or distorted. It is intended to prevent forfeiture when determination of the

proper party to sue is difficult or when an understandable mistake has been made. ... It is, in cases of this sort, intended to insure against forfeiture and injustice ..." Plaintiff-Lenders do not allege mistake or that a party cannot be identified. Nor will Plaintiff-Lenders suffer forfeiture or injustice by the dismissal of these defective complaints otherwise than on the merits.

Moreover, this Court is obligated to carefully scrutinize all filings and pleadings in foreclosure actions, since the unique nature of real property requires contracts and transactions concerning real property to be in writing. R.C. § 1335.04. Ohio law holds that when a mortgage is assigned, moreover, the assignment is subject to the recording requirements of R.C. § 5301.25. *Creager v. Anderson* (1934), 16 Ohio Law Abs. 400 (interpreting the former statute, G.C. § 8543). "Thus, with regards to real property, before an entity assigned an interest in that property would be entitled to receive a distribution from the sale of the property, their interest therein must have been recorded in accordance with Ohio law." *In re Ochmanek*, 266 B.R. 114, 120 (Bkrtcy.N.D. Ohio 2000) (citing *Pinney v. Merchants' National Bank of Defiance*, 71 Ohio St. 173, 177 (1904).[1]

This Court acknowledges the right of banks, holding valid mortgages, to receive timely payments. And, if they do not receive timely payments, banks have the right to properly file actions on the defaulted notes — seeking foreclosure on the property securing the notes. Yet, this Court possesses the independent obligations to preserve the judicial integrity of the federal court and to jealously guard federal jurisdiction. Neither the fluidity of

---

[1] Astoundingly, counsel at oral argument stated that his client, the purchaser from the original mortgagee, acquired complete legal and equitable interest in land when money changed hands, even before the purchase agreement, let alone a proper assignment, made its way into his client's possession.

-4-

the secondary mortgage market, nor monetary or economic considerations of the parties, nor the convenience of the litigants supersede those obligations.

Despite Plaintiffs' counsel's belief that "there appears to be some level of disagreement and/or misunderstanding amongst professionals, borrowers, attorneys and members of the judiciary," the Court does not require instruction and is not operating under any misapprehension. The "real party in interest" rule, to which the Plaintiff-Lenders continually refer in their responses or motions, is clearly comprehended by the Court and is not intended to assist banks in avoiding traditional federal diversity requirements.[2] Unlike Ohio State law and procedure, as Plaintiffs perceive it, the federal judicial system need not, and will not, be "forgiving in this regard."[3]

---

[2] Plaintiff's reliance on Ohio's "real party in interest rule" (ORCP 17) and on any Ohio case citations is misplaced. Although Ohio law guides federal courts on substantive issues, state procedural law cannot be used to explain, modify or contradict a federal rule of procedure, which purpose is clearly spelled out in the Commentary. "In federal diversity actions, state law governs substantive issues and federal law governs procedural issues." *Erie R.R. Co. v. Tompkins*, 304 U.S. 63 (1938); *Legg v. Chopra*, 286 F. 3d 286, 289 (6th Cir. 2002); *Gafford v. General Electric Company*, 997 F. 2d 150, 165-6 (6th Cir. 1993).

[3] Plaintiff's, "Judge, you just don't understand how things work," argument reveals a condescending mindset and quasi-monopolistic system where financial institutions have traditionally controlled, and still control, the foreclosure process. Typically, the homeowner who finds himself/herself in financial straits, fails to make the required mortgage payments and faces a foreclosure suit, is not interested in testing state or federal jurisdictional requirements, either *pro se* or through counsel. Their focus is either, "how do I save my home," or "if I have to give it up, I'll simply leave and find somewhere else to live."

In the meantime, the financial institutions or successors/assignees rush to foreclose, obtain a default judgment and then sit on the deed, avoiding responsibility for maintaining the property while reaping the financial benefits of interest running on a judgment. The financial institutions know the law charges the one with title (still the homeowner) with maintaining the property.

There is no doubt every decision made by a financial institution in the foreclosure process is driven by money. And the legal work which flows from winning the financial institution's favor is highly lucrative. There is nothing improper or wrong with financial institutions or law firms making a profit — to the contrary, they should be rewarded for sound business and legal practices. However, unchallenged by underfinanced opponents, the institutions worry less about jurisdictional requirements and more about maximizing returns. Unlike the focus of financial institutions, the federal courts must act as gatekeepers, assuring that only those who meet diversity and standing requirements are allowed to pass through.

Counsel for the institutions are not without legal argument to support their position, but their arguments fall woefully short of justifying their premature filings, and utterly fail to satisfy their standing

## CONCLUSION

For all the foregoing reasons, the above-captioned Foreclosure Complaints are dismissed without prejudice.

**IT IS SO ORDERED.**

**DATE: October 31, 2007**

                                            <u>S/Christopher A. Boyko</u>
                                            **CHRISTOPHER A. BOYKO**
                                            **United States District Judge**

---

and jurisdictional burdens. The institutions seem to adopt the attitude that since they have been doing this for so long, unchallenged, this practice equates with legal compliance. Finally put to the test, their weak legal arguments compel the Court to stop them at the gate.

    The Court will illustrate in simple terms its decision: "Fluidity of the market" — "X" dollars, "contractual arrangements between institutions and counsel" — "X" dollars, "purchasing mortgages in bulk and securitizing" — "X" dollars, "rush to file, slow to record after judgment" — "X" dollars, "the jurisdictional integrity of United States District Court" — "Priceless."

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

| | |
|---|---|
| JOHN J. BENZ and TRICIA McLAGAN, | )<br>) |
| Appellants, | )<br>) |
| v. | )  Case No. 2D13-974<br>) |
| FEDERAL HOME LOAN MORTGAGE CORP., | )<br>)<br>) |
| Appellee. | )<br>) |

Opinion filed August 22, 2014.

Appeal from the Circuit Court for Polk
County; Ellen S. Masters, Judge.

C. Michael Duncan of Duncan Law
Offices, P.A., Tavares, for Appellants.

Edward J. O'Sheehan of Shutts & Bowen,
LLP, Fort Lauderdale, for Appellee.

NORTHCUTT, Judge.

John Benz and Tricia McLagan, husband and wife, appeal a final summary foreclosure judgment in favor of Federal Home Loan Mortgage Corp. (Freddie Mac). We reverse because the record fails to resolve material issues of fact regarding Freddie Mac's standing.

Freddie Mac filed the mortgage foreclosure action against Benz, McLagan, and others on March 11, 2009. The complaint alleged that the note and