Hearing Date: September 15 and 16, 2014 at 9:00 a.m. (Prevailing Eastern Time)

| | |
|---|---|
| **MORRISON & FOERSTER LLP** | **REED SMITH LLP** |
| 250 West 55th Street | Princeton Forrestal Village |
| New York, New York 10019 | 136 Main Street, Suite 250 |
| Telephone:   (212) 468-8000 | Princeton, New Jersey 08540 |
| Facsimile:   (212) 468-7900 | Telephone:   (609) 987-0050 |
| Norman S. Rosenbaum | Facsimile:   (609) 951-0824 |
| Jordan A. Wishnew | Diane A. Bettino |
| Meryl L. Rothchild | Barbara K. Hager, *admitted pro hac vice* |
| *Counsel for the ResCap Borrower Claims Trust* | *Co-Counsel for the ResCap Borrower Claims Trust* |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**THE RESCAP BORROWER CLAIMS TRUST'S**
**PRE-TRIAL MEMORANDUM**

I.     **PRELIMINARY STATEMENT**

The ResCap Borrower Claims Trust (the "Borrower Trust") established pursuant to the terms of the confirmed Plan filed in the above-captioned Chapter 11 cases (the "Chapter 11 Cases"), as successor in interest to the above-captioned debtors (collectively, the "Debtors") with respect to Borrower Claims (as defined in the Plan), by and through its undersigned counsel, hereby files its Pre-Trial Memorandum in connection with the evidentiary hearing on its Objection seeking to disallow and expunge proofs of claim 3708 and 4759 against Residential Funding Company, LLC ("RFC") (together, the "RFC Proofs of Claim"), and proofs of claim 3759 and 4736 against GMAC Mortgage, LLC ("GMACM") (together, the "GMACM Proofs of Claim" and, collectively with the RFC Proofs of Claim, the "Proofs of Claim," each filed by Frank or Christina Reed ("Claimants").[1]

During discovery, Claimants failed to put forth any evidence in support of the Proofs of Claim, rendering them unable to prevail at trial.

The Borrower Trust's evidence will prove that the Claimants benefited from the attempts to sell their home in 2008 and their conscience decision to default and to not bring the mortgage account current. Indeed, they received at least $22,500 in the summer of 2008 from the settlement of a lawsuit (*Jacobs v. Reed*) involving a breach of an agreement to sell the property at 817 Matlack Drive, Morrsetown, NJ (the "Property") and they received $400,000 from a prospective buyer (Mark Weaver) in November, 2008. By January 2009, the Claimants received another $50,000 from that same prospective buyer, which the Claimants never returned to Mr.

---

[1]   Mr. Reed filed proof of claim 3708 against ResCap and proof of claim 3759 against GMACM. Ms. Reed filed proof of claim 4736 against GMACM and proof of claim 4759 against ResCap. Per the court's earlier Order, (see D.E. 7246), the claims filed against ResCap are being treated as having been filed against RFC.

Weaver. Alarmingly, Claimants admit that they had adequate funds to bring the mortgage current in 2008 but instead used those funds to payoff *other* mortgages and liens and pay for other expenses.

Moreover, beyond the immediate cash benefits described above, Claimants have benefited directly by not paying their monthly mortgage obligations (including real estate taxes and homeowners' insurance) for the past six (6) and one-half years. During that time, they have accumulated a past due balance of $896,344.03 presently owed to their new servicer 21st Mortgage Corporation ("21st Mortgage"). The Claimants' failure to make the mortgage payments inures to their benefit in the form of over half a decade of free housing. The benefits to the Claimants (stemming from what they perceive to be a problem which harmed them) total $1,368,844. To the extent that Claimants can prove any violations of the law entitling them to recovery - which they cannot - such recovery should be set-off against the tangible economic benefits to them.

## II. STATEMENT OF THE ELEMENTS OF EACH CLAIM AND THE BORROWER TRUST'S DEFENSES THERETO AND SUPPORTING FACTS

### A. Negligence (Count 2)

#### 1. Elements

Under New Jersey law, negligence has four elements: "(1) duty of care, (2) breach of duty, (3) proximate cause, and (4) actual damages." *Wartsila NSD N. Am., Inc. v. Hill Int'l, Inc.*, 342 F. Supp. 2d 267, 278 (D.N.J. 2004) (citation omitted).

#### 2. Defenses and supporting facts

Claimants cannot prove that a duty of care existed between GMACM and themselves. They wrongfully argue that the Court should imply a duty because GMACM violated the Fair Foreclosure Act ("FFA"). However, because the Court has held that there is no private right of

action under the FFA, GMACM cannot be found to have violated the FFA as asserted by Claimants. And, because there was no violation of the FFA by GMACM, a finding that GMACM failed to send a NOI cannot be used to establish a duty of care. That being the case, Claimants have failed to prove that GMACM owed them a duty of care and the negligence claim fails for that reason.

Further, Claimants cannot prove the damages element for this claim (or that any negligence proximately caused the damages). Claimants have stated that they are seeking (1) loss of equity in the Property whether valued by their inability to sell the Property or their inability to refinance after the foreclosure was filed; (2) the past due amounts owed by them to their new servicer, 21st Mortgage; and, (3) attorneys' fees. However their bald, unsupported statements as to how to value those categories of damages only serve to elucidate the reality that the filing of the Foreclosure Action[2] did not harm Claimants and there is absolutely no proof of any calculable damage. Further, even if it did, Claimants' failure to mitigate their damages exacerbated what was otherwise minimal harm. Each category of damages claimed by Mr. Reed during his deposition will be explored below.

### The alleged refinance

The alleged refinance is pure speculation and conjecture. Claimants have not offered any credit reports to prove how GMACM, *and other creditors were*, reporting at the time of the alleged applications and at the time of the Foreclosure Action. Claimants have not offered any loan applications to show that they ever even applied for refinancing. Claimants have not offered evidence as to the loan amount, interest rate, monthly payment, amount of other liens on

---

[2] Capitalized terms not otherwise defined herein are given the meaning ascribed thereto in the Objection.

the Property or cash out they were allegedly seeking from TD Bank and Allied Mortgage, nor have they provided evidence on when the applications allegedly were submitted, rendering it impossible to calculate the amount of cash out they could have gotten even if an application had been submitted and approved.[3]  Indeed, an affidavit from Stuart Shilling at Allied Mortgage Group, Inc. proves that Allied Mortgage Group, Inc. has no record of ever receiving a loan application from Frank Reed.

### Attempts to sell the Property

There is no credible evidence that Claimants' inability to sell the Property had anything to do with the Foreclosure Action. Contrary to the picture painted by Claimants, there were two different fully-executed agreements to sell the Property, either of which, had it closed, would have resulted in the loan having been paid in full.  Claimants' attempts to foist their inability to properly market and sell the Property during one of the worst economic down-turns in American history fails in its absurdity.

Claimants hired realtor Louise Carter[4] at the end of 2007 to sell the Property and soon thereafter, Claimants entered into an Agreement of Sale for $2,040,000 with the Jacobs family. That agreement collapsed, however, in January, 2008 because the Property did not appraise for the sales price and the Jacobs' lender denied their financing.

---

[3] Claimants submitted the expert report of Evan Hendricks to support their claims for economic and non-economic damages that is the subject of a pending motion in limine and is flawed for the reasons set forth therein, which are incorporated into this Memorandum by reference.

[4] Claimants submitted the expert report of Louise Carter to support their claim for damages stemming from their inability to sell the Property.  That report is the subject of a pending motion in limine and is flawed for the reasons set forth therein, which are incorporated into this Memorandum by reference.

The Jacobs terminated the Agreement of Sale but Claimants refused to return the Jacobs deposit ($50,000) and commissioned a second appraisal by Peter McCaffrey. The Jacobs did not accept the second appraisal and ultimately, successfully sued Claimants for the return of their deposit. In connection with the lawsuit by the Jacobs, Claimants countersued various parties including the Jacobs' lender, TD Bank, and the appraiser. TD Bank settled with Claimants for $22,500 and the appraiser settled for an undisclosed amount.

Between May 2008 (when the Jacobs' lawsuit resolved) and April 2011, Claimants reduced the listing price from $2,025,000 to $1,895,000 to $1,780,000 to $1,690,000, to $1,595,000. Thus, the listing price was not static and offers were made as the listing price changed over time.

For example, in August 2008, two months after the listing price for the Property was reduced from $2,025,000 to $1,895,000, buyer Mark Weaver (aka Brett Cooper) made an offer of $1,800,000 that was accepted by Claimants. Unfortunately for Claimants, the sale with Mr. Cooper did not close because Mr. Cooper could not come up with all of the funds necessary to close. Closing was postponed several times but when Mr. Weaver advised that as of November 21, 2008 he still did not have enough funds to close what was supposed to be a cash deal, Mr. Reed refused to further extend the closing date. The parties then entered into a lease purchase agreement ("<u>Lease Agreement</u>") whereby Mr. Weaver could take immediate possession in exchange for an up-front payment to Mr. Reed of $400,000 and an agreement to pay $25,000 per month in rent. Mr. Weaver paid the $400,000 via wire transfer and Mr. Reed admits that he received the funds. Mr. Weaver moved into the Property but subsequently defaulted under the Lease Agreement after making $50,000 in monthly rent payments. Claimants kept the $450,000 paid by Mr. Weaver and evicted him from the Property in September 2009.

Thereafter, no additional offers were received until March 20, 2010. At that time, the listing price was $1,780,000 and the Roccisanos made an offer for $1,300,000. This offer was rejected by Claimants; however, Claimants subsequently reduced the listing price to $1,690,000 and then to $1,595,000 before receiving another offer from the Roccisanos on June 12, 2010 for $1,450,000. However, the Roccisanos withdrew their offer before entering into an agreement of sale, indicating they had decided to relocate elsewhere due to the Roccisanos' employment.

Claimants and Ms. Carter would have us believe that the Roccisanos only made the first offer of $1,300,000 and that it was a low offer because of the foreclosure (conveniently overlooking the second offer for $1,450,000). In support thereof, they refer to a letter from Naoji Moruchi, the buyers' agent. However, Mr. Moruchi's letter is deficient because it does not acknowledge the second offer, which, notably, was being considered by the Claimants when it was withdrawn. That letter is also being misinterpreted by Claimants and Ms. Carter because what the letter actually says is that Mr. Moruchi's client submitted an offer below fair market value for *several* reasons including consideration of the values of "comparable properties".

The last offer referred by Ms. Carter came from Mr. and Mrs. Singh at a point when the Property was not even on the market and thus not subject to market forces and competing offers. Mr. and Mrs. Singh were working with Ms. Carter to find a house and she showed them the Property despite the fact that it was not on the market at the time. Claimants rely on an email from Mr. and Mrs. Singh which states that "we would like a full description of what the legal dealings are with the bank and seller, as this may affect the closing." This is contrary to Claimants' position that the offer was low because of the Foreclosure Action and Ms. Carter even admitted in her deposition that Mr. and Mrs. Singh did not actually say the offer was low because of the Foreclosure Action.

- 7 -

In sum, there is simply no evidence that the existance of the Foreclosure Action deterred potential homebuyers or caused lower than market offers, particularly in light of the well-publicized volatility of the real estate market at the time.  Even if Claimants can successfully prove that the Foreclosure Action had some relevance on potential buyers, because the listing prices changed over time, Claimants have no basis for their apparent position that the Property was worth $2,040,000 at all times – it was not.  There is no evidence that any deal collapsed because of the Foreclosure Action and, therefore, no way to value the alleged damages rendering them speculative.  Furthermore, the process of marketing the Property resulted in a windfall to the Claimants of at least $472,250, a fact that cannot be ignored when evaluating whether Claimants were damaged (in addition to the $896,344 they failed to pay on the Mortgage account, discussed below).

### Claimants' continuing obligation under the loan documents

Mr. Reed stated in his deposition that he is seeking to recover all amounts that he owes to 21st Mortgage because if he had been able to sell the Property, he would no longer be obligated on the Note and Mortgage. The total owed to 21st Mortgage as of July 11, 2014 is $1,580,967.65, which includes $896,344 in arrearages.  There are no facts in the record that Claimants could offer into evidence to prove their absurd theory that they are entitled to have GMACM pay their entire mortgage obligation, particularly since they have been living in the Property for free since 2008.

### No admissible proof of attorneys' fees

The purported invoices submitted during discovery are inadequate to establish any amounts paid (or incurred and not paid) by Claimants to an attorney for services in connection with the Foreclosure Action.  The purported invoices are non-specific as to the work performed

and when, and fall far short of supporting Claimants' claim for damages for attorney's fees. Because the record is devoid of proof of attorneys' fees actually incurred in connection with the Foreclosure Action, Claimants cannot recover for this category of damages.

Because there is no evidence to support any of Claimants various categories of damages, they cannot make out a prima facie claim for negligence, thus requiring the Court to sustain the Borrower Trust's objection.

### B.     Breach of Contract (Count 3 against GMACM only)

#### 1.     Elements

To state a claim for breach of contract under New Jersey law, Claimants must establish: (1) the existence of a contract; (2) a breach of that contract; (3) damages flowing from that breach; and (4) that they performed their own contractual duties. *See Video Pipeline Inc. v. Buena Vista Home Entertainment, Inc.*, 210 F.Supp.2d 552, 561 (D.N.J. 2002) (citing *Pub. Serv. Enter. Group, Inc. v. Phila. Elec. Co.*, 722 F.Supp. 184, 219 (D.N.J. 1989)).

#### 2.     Defenses and supporting facts

New Jersey law requires proof of performance of the movant's own contractual duties. *In re Cendant Corp. Secs. Litig.*, 139 F. Supp. 2d 585, 604 n.10 (D.N.J. 2001). Claimants' failure to make the regular monthly mortgage payment due on February 1, 2008 resulted in their breach of the Mortgage and Note prior to the filing of the Foreclosure Action in May 2008.

Accordingly, Claimants have not stated a *prima facie* claim for breach of contract based on any alleged noncompliance with the FFA because they breached the mortgage and note prior to the filing of the Complaint for Foreclosure.

In addition, for the reasons set forth at length in Paragraph II, A, 2 above, Claimants cannot prove damages flowing from the alleged breach of contract thus requiring the Court to sustain the Borrower Trust's objection.

### C.    Punitive Damages Based Upon Actual Malice (Count 4)

#### 1.    Elements

Under New Jersey law, actual malice "is nothing more or less than intentional wrongdoing, an evil minded act or an act accompanied by a wanton and willful disregard of the rights of another." *Chli Tital Ins. Co. v. Goldberg (In re Goldberg)*, 12 B.R. 180, 185 (Bankr. D.N.J. 1981) (citing *Sandler v. Lawn-a-Mat Chem. & Equip. Corp.*, 358 A.2d 805 (N.J. Super. Ct. App. Div. 1976)).  To recover punitive damages under New Jersey law, the Claimants must show by clear and convincing evidence that the harm suffered was the result of GMACM's acts or omissions, and "that such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions." N.J.S.A. 2A:15-5:12(a).They must also first receive a compensatory damages award before they are eligible for punitive damages. *In re Estate of Stockdale*, 953 A.2d 454 (N.J. 2008).

#### 2.    Defenses and supporting facts

Claimants have failed to put forth any evidence, let alone clear and convincing evidence, that they suffered any harm or that GMACM committed any acts or omissions that "were actuated by actual malice or accompanied by a wanton and willful disregard of persons." Furthermore, Claimants are not entitled to compensatory damages thus requiring the Court to sustain the Borrower Trust's objection.

    **D.**    **New Jersey Consumer Fraud Act ("CFA") (Count 5 – only as to the single proposition stated in the Complaint for Foreclosure that GMACM owned the Note)**

    **1.**    **Elements**

A claim under the CFA consists of three elements: "(1) an unlawful practice, (2) an 'ascertainable loss,' and (3) 'a causal relationship between the unlawful conduct and the ascertainable loss.'" *Gonzalez v. Wilshire Credit Corp.*, 207 N.J. 557, 576 (2011) (quoting *Lee v. Carter-Reed Co.*, 203 N.J. 496, 521 (2010)). The CFA defines an "unlawful practice" as:

> [t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with the intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived, or damaged thereby.

N.J.S.A. 56:8-2.

A successful CFA claim requires the party asserting the claim to prove an ascertainable loss – that is, that they "suffer[ed] a definite, certain and measurable loss, rather than one that is merely theoretical." *Weinberg v. Sprint Corp.*, 173 N.J. 233 (2002).

Furthermore, under New Jersey law, allegations of fraud must be pled with particularity. *See* R. 4:5-8(a); *see also Levinson v. D'Alfonso & Stein*, 320 N.J. Super. 312, 315 (App. Div. 1999); Bankruptcy Rules 7008 and 7009 (making Federal Rules of Civil Procedure 8 and 9 the applicable standard for claims pled with in a complaint). The New Jersey Superior Court, Appellate Division has recognized that a claim under the CFA is essentially a claim for fraud, and as such, must be pled with specificity. *Hoffman v. Hampshire Labs, Inc.*, 405 N.J. Super. 105, 112 (App. Div. 2009). Mere conclusory statements are insufficient to satisfy the particularity requirement. *See Rego Indus., Inc. v. Am. Mod. Metals Corp.*, 91 N.J. Super. 447,

456 (App. Div. 1966). To satisfy the heightened pleading standard, Claimants' claims must state the "particulars of the wrong, with dates and items if necessary." R. 4:5-8.

### 2. Defenses and supporting facts

This claim only survived for the limited purpose of allowing Claimants to put on evidence relating to the averment in paragraph 4 of the Complaint in the Foreclosure Action that GMACM owned the Note and Mortgage. The Complaint was amended, however, on June 9, 2008 to provide in Paragraph 4 that the Mortgage was assigned to GMACM by MERS as nominee for Metrocities Mortgage, LLC, and the averment that GMACM was the owner of the Note and Mortgage was deleted. New paragraph 4 thus resolved any potential inadvertent error very shortly after the action was initiated and, accordingly, there was no misrepresentation that could possibly give rise to a violation of the CFA. Furthermore, Claimants have not alleged an ascertainable loss. As set forth in Paragraph II, A, 2 above, the Claimants' amorphous allegations of alleged damages stemming from the Foreclosure Action are merely theoretical and not definite, certain or measurable.

### E. Counts 2, 4 and 5 cannot lie against RFC

Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). Claimants have no valid legal justification for asserting Claims against RFC because RFC was not a named party in the Foreclosure Action or the Reed Action. Thus, the Objection to claim nos. 3708 and 4759 should be sustained in its entirety.

**III.    Evidentiary issues**

The parties were scheduled to meet at noon on September 5 to discuss stipulations to exhibits and facts. Counsel for the Borrower Trust emailed Mr. Reed the Borrower Trust's exhibit list on September 4 and proposed stipulations of fact on September 5. Despite providing him with all of that information, the only exhibit agreed to by Mr. Reed is the Amended Complaint for Foreclosure and he has not stipulated to any facts.

The Borrower Trust filed Motions in Limine to preclude the testimony and reports of Claimants' purported experts Louise Carter, Christy Donati and Evan Hendricks. Claimants have not yet filed their response to those motions.

No evidentiary issues are known at this time.

| | |
|---|---|
| Dated: September 8, 2014<br>New York, New York | /s/Diane A. Bettino<br>Diane A. Bettino<br>Barbara K. Hager, *admitted pro hac vice*<br>REED SMITH LLP<br>Princeton Forrestal Village<br>136 Main Street, Suite 250<br>Princeton, New Jersey 08540<br>Telephone: (609) 987-0050<br>Facsimile: (609) 951-0824<br><br>*Co-Counsel for The ResCap Borrower Claims Trust*<br><br>and<br><br>Norman S. Rosenbaum<br>Jordan A. Wishnew<br>Meryl L. Rothchild<br>MORRISON & FOERSTER LLP<br>250 West 55th Street<br>New York, New York 10019<br>Telephone: (212) 468-8000<br>Facsimile: (212) 468-7900<br><br>*Co-Counsel for The ResCap Borrower Claims Trust* |

- 14 -