Hearing Date: September 15 and 16, 2014 at 9:00 a.m. (Prevailing Eastern Time)

**MORRISON & FOERSTER LLP**
250 West 55th Street
New York, New York 10019
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Meryl L. Rothchild

*Counsel for the ResCap Borrower Claims Trust*

**REED SMITH LLP**
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, New Jersey 08540
Telephone:    (609) 987-0050
Facsimile:    (609) 951-0824
Diane A. Bettino
Barbara K. Hager, *admitted pro hac vice*

*Co-Counsel for the ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**THE RESCAP BORROWER CLAIMS TRUST'S**
**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**I.    STATEMENT OF PROPOSED FINDINGS OF FACT**

1.    On May 31, 2006, Metrocities Mortgage, LLC made a Mortgage Loan in the amount of $1,000,000.00, plus interest, to Frank J. Reed III.[1]

2.    The Mortgage Loan is evidenced by a Fixed/Adjustable Rate Note to Metrocities Mortgage, LLC executed by Frank J. Reed III on May 31, 2006 ("Note").

---

[1] Paragraphs 1-33 are admissions by the Claimants by virtue of their failure to respond to Requests for Admissions ("RFAs") which were served via email to Mr. Reed on July 17, 2014. *See* Trial Exhibit QQ.

3.    Frank J. Reed III executed the Interest-Only Addendum to Adjustable Rate Promissory Note.

4.    Frank J. Reed III agreed to make monthly payments on the Mortgage Loan beginning on July 1, 2006, in the initial amount of $5,312.50.

5.    The monthly payments on the Mortgage Loan were due on the first of each month.

6.    By signing the Note, Frank J. Reed III agreed "If I do not pay the full amount of each monthly payment on the date it is due, I will be in default."

7.    To secure the payment of the Note, Frank J. Reed, III and Christina A. Reed, husband and wife, executed to Mortgage Electronic Registration Systems, Inc., as nominee for Metrocities Mortgage, LLC, a Mortgage dated May 31, 2006, on the property located at 817 Matlack Drive, Moorestown, New Jersey 08057 ("Mortgage").

8.    The Mortgage is a Purchase Money Mortgage.

**Mortgage Payments**

9.    Claimants did not make the monthly payment due on the Mortgage Loan on February 1, 2008.

10.    Claimants did not make the monthly payment due on the Mortgage Loan on March 1, 2008.

11.    Claimants did not make the monthly payment due on the Mortgage Loan on April 1, 2008.

12.    Claimants did not make the monthly payment due on the Mortgage Loan on May 1, 2008.

13. Claimants did not make the monthly payment due on the Mortgage Loan on June 1, 2008.

14. Claimants did not make the monthly payment due on the Mortgage Loan on July 1, 2008.

15. Claimants did not make the monthly payment due on the Mortgage Loan on August 1, 2008.

16. Claimants did not make the monthly payment due on the Mortgage Loan on September 1, 2008.

17. Claimants did not make the monthly payment due on the Mortgage Loan on October 1, 2008.

18. Claimants did not make the monthly payment due on the Mortgage Loan on November 1, 2008.

19. Claimants did not make the monthly payment due on the Mortgage Loan on December 1, 2008.

20. For the period January 1, 2009 through December 31, 2009, Claimants did not make the monthly payments due on the Mortgage Loan.

21. For the period January 1, 2010 through December 31, 2010, Claimants did not make the monthly payments due on the Mortgage Loan.

22. For the period January 1, 2011 through December 31, 2011, Claimants did not make the monthly payments due on the Mortgage Loan.

23. For the period January 1, 2012 through December 31, 2012, Claimants did not make the monthly payments due on the Mortgage Loan.

24. For the period January 1, 2013 through December 31, 2013, Claimants did not make the monthly payments due on the Mortgage Loan.

25. For the period January 1, 2014 through July 1, 2014, Claimants did not make the monthly payments due on the Mortgage Loan.

26. Claimants are in default under the terms of the Note.

27. Claimants are in default under the terms of the Mortgage Loan.

**Property Taxes**

28. Claimants have not paid the property taxes due on the property located at 817 Matlack Drive, Moorestown, New Jersey, 08057 for the period June 1, 2008 through December 31, 2008.

29. Claimants have not paid the property taxes due on the property located at 817 Matlack Drive, Moorestown, New Jersey, 08057 for the period January 1, 2009 through December 31, 2009.

30. Claimants have not paid the property taxes due on the property located at 817 Matlack Drive, Moorestown, New Jersey, 08057 for the period January 1, 2010 through December 31, 2010.

31. Claimants have not paid the property taxes due on the property located at 817 Matlack Drive, Moorestown, New Jersey, 08057 for the period January 1, 2011 through December 31, 2011.

32. Claimants have not paid the property taxes due on the property located at 817 Matlack Drive, Moorestown, New Jersey, 08057 for the period January 1, 2013 through December 31, 2013.

33. Claimants have not paid the property taxes due on the property located at 817 Matlack Drive, Moorestown, New Jersey, 08057 for the period January 1, 2014 through July 1, 2014.

**Purchase of 817 Matlack Drive by the Reeds**

34. Frank and Christina Reed (the "Reeds" or "Claimants") purchased 817 Matlack Drive, Moorestown, NJ 2006 (the "Property") on May 31, 2006 for $1,571,619. *See* HUD-1, Trial Exhibit KK; Deposition Transcript of Frank Reed ("Reed Trans.") dated Aug. 13, 2014 at 66:24-67:19; 72:2-15; 73:5-15. A true and correct copy of the Reed Trans. dated Aug. 13, 2014 is attached hereto as Exh. A.

35. The initial monthly principal and interest payment on the Note was $6,238.70. *See* Note, Trial Exhibit JJ; *see also* Reed Trans. dated Aug. 13, 2014 at 71:11-72:1.

36. The initial annual interest rate was 6.375%. *See* Note, Trial Exhibit JJ; *see also* Reed Trans. dated Aug. 13, 2014 at 71:8-10.

37. Frank Reed borrowed $411,947 from Metrocities Mortgage, LLC on May 31, 2006 towards the purchase and gave Metrocities Mortgage, LLC a second mortgage on the Property. *See* HUD-1, Trial Exhibit KK; *see also* Reed Trans. dated Aug. 13, 2014 at 61:21-23; 72:2-73:4.

38. The Reeds made a down payment of $224,816.42 towards the purchase and were refunded $30,849.62 at closing. *See* HUD-1, Trial Exhibit KK; *see also* Reed Trans. dated Aug. 13, 2014 at 63:12-16; 73:16-23; 73:24-74:23.

**Marketing of and attempts to sell 817 Matlack Drive**

39. Claimants hired Louise Carter at the end of 2007 to list the Property for sale. *See* Reed Trans. dated Aug. 13, 2014 at 77:5-21.

40. The initial listing price was slightly more than $2 million. *See* Reed Trans dated Aug. 13, 2014 at 78:9-15; *see also* Handout from Open House, Trial Exhibit K.

**Scott, Traci and Miriam Jacobs**

41. On October 30, 2007, Scott and Traci Jacobs made an offer to purchase the Property for $1,900,000. *See* Proposal to Purchase, Trial Exhibit R; *see also* Reed Trans. dated Aug. 13, 2014 at 80:14-20; 85:21-86:2.

42. On December 8, 2007, Frank and Christina Reed entered into an Agreement of Sale with Scott, Traci and Miriam Jacobs ("Jacobs") to sell the Property for $2,040,000. *See* Jacobs' Agreement of Sale, Trial Exhibit S; *see also* Reed Trans. dated Aug. 13, 2014 at 86:3-87:2.

43. The offer of $2,040,000 from the Jacobs was less than the asking price. *See* Reed Trans. dated Aug. 13, 2014 at 107:15-108:4.

44. The foreclosure action had not been filed at the time of the Jacobs' offer. *See* Reed Trans. dated Aug. 13, 2014 at 108:5-20.

45. The Agreement of Sale contained a mortgage contingency clause. *See* Proposal to Purchase, Trial Exhibit R, ¶ 9.

46. Settlement was to occur on February 7, 2008. *See* Proposal to Purchase, Trial Exhibit R, ¶ 14.

47. The sale of the Property to the Jacobs did not close. *See* Reed Trans. dated Aug. 13, 2014 at 92:6-12.

48. The Jacobs informed the Reeds on January 4, 2008 and again on January 7, 2008 that they were exercising their rights to terminate the Agreement of Sale because their

application for financing had been denied by Commerce Bank, N.A. *See* Hovatter letter, Trial Exhibit U.

49. Commerce Bank, N.A. issued a denial letter to the Jacobs indicating that the reason they were denied was because the "value or type of collateral" was "not sufficient." *See* Hovatter letter, Trial Exhibit U.

50. The appraisal required by Commerce Bank indicated that as of December 24, 2007, the fair market value of the Property was less than the sales price, only $1,950,000. *See* Excerpts of Deposition Transcript of Louise Carter ("Carter Trans."), a true and correct copy of which is attached hereto as Exh. B, at 75:11-78:22; *see also* Hovatter letter, trial Exhibit U., Reed Trans. dated Aug. 13, 2014 at 98:5-10.

51. Frank Reed complained to Commerce Bank about the value appraised on Robert Jones' appraisal. *See* Reed Trans. dated Aug. 13, 2014 at 93:25-94:7.

52. The Reeds refused to return the Jacobs' deposit ($50,000) and commissioned a second appraisal by Peter McCaffrey. *See* Reed Trans dated August 13, 2014 at 94:11-18; 108:21-112:7.

53. Frank Reed complained to Commerce Bank about the value on Peter McCaffrey's appraisal. *See* Reed Trans. dated Aug. 13, 2014 at 109:4-111:12.

54. Peter McCaffrey subsequently revised his appraisal to arrive at a value of $2,040,000. *See* Reed Trans. dated Aug. 13, 2014 at 109:4-111:12.

55. The Jacobs did not accept the second appraisal and ultimately successfully sued Claimants for the return of their deposit. *See* Reed Trans dated Aug. 13, 2014 at 95:12-96:9.

56. Claimants countersued the Jacobs, TD Bank, Robert Jones and BT Edgar and settled with TD Bank for payment by TD Bank of $22,500 to Claimants. *See* Reed Trans. dated Aug. 13, 2014 at 114:6-19; *see also* pleadings from Jacobs v. Reed, Trial Exhibits V and W.

57. Claimants did not use the settlement payment from TD Bank to pay GMACM. *See* Reed Trans. dated Aug. 13, 2014 at 115:14-18.

58. Between May 2008 and April 2011, Ms. Carter reduced the listing price from $2,025,000 to $1,895,000 to $1,780,000 to $1,690,000, to $1,595,000. *See* Carter Trans at 53:14-66:12; *see also* Reed Trans. dated Aug. 14, 2014 (a true and correct copy of which is attached hereto as Exhibit C)[2] at 51:16-25 and BT Edgar change forms and MLS sheets, Trial Exhibit O.

**Mark Weaver aka Brett Cooper**

59. Two months after the listing price for the Property was reduced from $2,025,000 to $1,895,000, buyer Mark Weaver (aka Brett Cooper) made an offer of $1,800,000 which was accepted by Claimants. *See* Reed Trans. dated Aug. 14, 2014 at 53:7-25; *see also* BT Edgar change forms and MLS sheets, Trial Exhibit O.

60. Claimants and Mark Weaver entered into an Agreement of Sale on August 25, 2008 for the agreed amount of $1,800,000 ("Weaver Agreement of Sale"). *See* Weaver Agreement of Sale, Trial Exhibit X; *see also* Reed Trans. dated Aug. 14, 2014 at 53:7-25.

61. Pursuant to the Weaver Agreement of Sale and an addendum thereto, Mr. Weaver paid a $50,000 deposit which was held in escrow by BT Edgar and eventually paid to, and

---

[2] The deposition of Frank Reed was held on August 13 and August 14, 2014 due to the availability of the parties and court reporter.

- 8 -

retained by, Claimants. *See* Weaver Agreement of Sale and addendum, Trial Exhibits X and Y; *see also* Reed Trans. dated Aug. 14, 2014 at 62:17-63:17.

62.   Closing was postponed several times but when Mr. Weaver advised that as of November 21, 2008 he still did not have enough funds to close what was supposed to be a cash deal, Mr. Reed refused to further extend the closing date. *See* Carter Trans. at 88:16-9; *see also* Reed Trans. dated Aug. 14, 2014 at 63:19-64:8; 66:6-11.

63.   The parties then entered into a lease purchase agreement whereby Mr. Weaver could take immediate possession in exchange for an up-front payment to Mr. Reed of $400,000 and payments of $25,000 per month in rent. *See* Reed Trans. dated Aug. 14, 2014 at 65:20-67:5; 68:7-15.

64.   Mr. Weaver paid the $400,000 via wire transfer and Mr. Reed received the funds. *See* Reed Trans. dated Aug. 14, 2014 at 67:3-68:3; 70:2-4.

65.   Mr. Weaver moved into the Property but subsequently defaulted under the Lease Agreement after making $50,000 in monthly rent payments, which payments were essentially the deposit funds which were transferred out of the BT Edgar escrow account. *See* Carter Trans. at 68:7-24; *see also* Reed Trans. dated Aug. 14, 2014 at 68:7-69:20.

66.   Claimants kept the $450,000 paid by Mr. Weaver and evicted him from the Property. *See* Carter Trans. at 62:24-63:18, 69:25-70:10; *see also* Reed Trans. dated Aug. 14, 2014 at 69:25-70:4, 9-13.

67.   Claimants paid the funds received from Mr. Weaver to the holder of their second mortgage and other lienholders and did not pay GMACM. *See* Reed Trans. dated Aug. 14, 2014 at 70:2-10, 14-25, 71:6-17; 92:24-93:14.

**Frank and Gina Roccisano**

68.     The Reeds received an offer from Frank and Gina Roccisano for $1,300,000 on March 20, 2010 and rejected it. *See* Carter Trans. at 96:14-97:7; *see also* Reed Trans. dated Aug. 14, 2014 at 74:2-16.

69.     Ms. Carter reduced the listing price from $1,780,000 to $1,690,000 and then to $1,595,000 before receiving another offer from the Roccisanos on June 12, 2010 for $1,450,000. *See* Carter Trans. at 99:2-19 and Trial Exhibit O.

70.     The Roccisanos withdrew their offer before entering into an agreement of sale, indicating they had decided to relocate elsewhere due to the Roccisanos' employment. *See* Reed Trans. dated Aug. 14, 2014 at 80:16-81:17.

**Kris and Nina Singh**

71.     The last offer referred by Ms. Carter came from Mr. and Mrs. Singh in the amount of $1,100,000 at a point when the Property was not even on the market. *See* Carter Trans. at 106:9-17; *see also* Reed Trans. dated Aug. 14, 2014 at 87:18-88:7.

72.     Mr. and Mrs. Singh were working with Ms. Carter to find a house and she showed them the house despite the fact that it was not on the market at the time. *See* Carter Trans. at 106:9-17.

73.     The only evidence of the offer from Mr. and Mrs Singh is an email which states that "we would like a full description of what the legal dealings are with the bank and seller, as this may affect the closing"; it does not say that they offered $1,100,000 because of the foreclosure. *See* Trial Exhibit FF; *see also* Reed Trans. dated Aug. 14, 2014 at 89:4-7.

**Attempts to refinance**

74.     Mr. Reed admits that Claimants did not complete a written application for financing to Commerce Bank. *See* Reed Trans. dated Aug. 13, 2014 at 101:21-25; 105:21-24.

75.     Mr. Reed admits that Claimants did not complete a written application for financing to Allied Mortgage. *See* Reed Trans. dated Aug. 14, 2014 at 20:9-12.

76.     Allied Mortgage has no record of an application from Frank Reed. Shilling Affidavit, Exh LL.

77.     The Claimants have not produced a credit report into evidence. *See* Reed Trans. dated Aug. 13, 2014 at 58:6-59:13.

78.     There is no evidence in the record of Mr. Reed's credit score from any period of time. *See* Reed Trans. dated Aug. 13, 2014 at 57:23-58:5:

79.     The Claimants have not produced a denial letter from TD Bank which is dated within 30 days of the denial of Claimants' alleged application for refinancing.

80.     Mr. Reed does not recall the amount of cash out he was allegedly seeking from Commerce Bank, nor does he recall the loan amount sought. *See* Reed Trans. dated Aug. 13, 2014 at 105:8-20.

81.     On June 5, 2008, Mr. Reed obtained a loan from TD Bank in the amount of $665,000 secured by a different parcel of real estate. *See* Reed Trans. dated Aug. 14, 2014 at 93:15-94:5.

**The Foreclosure Action**

82.     Claimants have not made a regular monthly payment since early 2008. *See* Reed Trans. at 41:16-18.

83. Claimants are not paying their real estate taxes or homeowners' insurance. *See* Reed Trans. dated Aug. 14, 2014 at 7:25-8:18.

84. Claimants did not make a lump-sum payment to GMACM to bring the account current, although they had the funds to do so. *See* Reed Trans. dated Aug. 14, 2014 at 30:22-31:3; 114:24-115:6.

85. Claimants have not set aside the monthly payments that they are not sending to the servicer of the first mortgage. *See* Reed Trans. dated Aug. 13, 2014 at 42:14-17.

86. Claimants paid several hundred thousand dollars at the end of 2008 to pay off their second mortgage by using some of the $400,000 they received from Mark Weaver. *See* Reed Trans. at 43:17-44:8.

87. The Foreclosure Complaint was amended on June 3, 2008. *See* Amended Complaint, Trial Exhibit H.

88. The Foreclosure Action was not dismissed by the court until August 9, 2013. *See* Dec. of Lauren Delehey, ¶ 17, Trial Exhibit B.

**Loan modification efforts**

89. Claimants entered into a five-month forbearance plan with GMACM that began on August 1, 2008 the purpose of which was to allow Claimants time to sell property. *See* Dec. of Lauren Delehey, ¶ 21, Trial Exhibit B.

90. In connection with the forbearance plan, Claimants agreed to pay $3000 on August 1, 2008, then for the following 4 months agreed to pay $7000 on the 1st of each month. *See* Supp. Dec. of Lauren Delehey, ¶¶ 6, 7, Trial Exhibit C and Servicing Notes, Trial Exhibit A.

91. The Forbearance plan agreement was mailed to Claimant August 1, 2008 and GMACM received a signed plan on August 8, 2008; however, the forbearance plan payment due

September 1, 2008 for $7000 was not received and the plan was cancelled September 16, 2008. *See* Reed Trans. dated Aug. 13, 2014 at 42:3-7, 12-13; *see also* Reed Trans. dated Aug. 14, 2014 at 40:20-41:6 and Supp. Dec. of Lauren Delehey, ¶¶ 6, 7, Trial Exhibit C and Servicing Notes, Trial Exhibit A.

## II. CONCLUSIONS OF LAW

### A. Negligence (Count 2)

1. Under New Jersey law, negligence has four elements: "(1) duty of care, (2) breach of duty, (3) proximate cause, and (4) actual damages." *Wartsila NSD N. Am., Inc. v. Hill Int'l, Inc.*, 342 F. Supp. 2d 267, 278 (D.N.J. 2004) (citation omitted).

2. "[T]he standard of care is the conduct of the reasonable person of ordinary prudence under the circumstances." *Rappaport v. Nichols*, 156 A.2d 1, 8 (N.J. 1959). "The most common test of negligence . . . is whether the consequences of the alleged wrongful act were reasonably to be foreseen as injurious to others coming in the range of such acts." *DiCosala v. Kay*, 450 A.2d 508 (N.J. 1982) (citations omitted).

3. In New Jersey, a "violation of a statutory duty of care is not conclusive on the issue of negligence in a civil action but it is a circumstance which the trier of fact should consider in assessing liability." *Braitman v. Overlook Terrace Corp.*, 346 A.2d 76, 85 (N.J. 1975).

4. "[S]tatutes rarely define a standard of conduct in the language of common-law negligence." *Eaton v. Eaton*, 575 A.2d 858, 866 (N.J. 1990).

5. The Fair Foreclosure Act (the "FFA") does not incorporate the negligence standard of "reasonableness," and so a violation of the statute does not, alone, establish the existence of a duty of care or a breach of that duty. *See* N.J.S.A. 2A:50-57.

6. Even where a statute does not create a separate cause of action for its violation and does not incorporate a standard of reasonableness, the trier of fact may still consider violation of the statute as evidence possibly supporting a determination of negligence. *See Braitman*, 346 A.2d at 385.

7. Claimants can neither establish a duty of care owing by GMACM nor the damages element for this claim (or that any negligence proximately caused the damages). *See Wartsila NSD N. A., Inc.*, 342 F. Supp. 2d at 278.

8. Since there is no private right of action under the FFA, there was no violation by GMACM of the FFA.

9. Because there was no violation of the FFA by GMACM, a finding that GMACM failed to send a NOI cannot be used to establish a duty of care.

10. Claimants have not proven damages flowing from a breach of duty of care.

11. Claimants' negligence claim fails as a matter of law.

**B.    Breach of Contract (Count 3 against GMACM only)**

12. To state a claim for breach of contract under New Jersey law, Claimants must establish: (1) the existence of a contract; (2) a breach of that contract; (3) damages flowing from that breach; and (4) that they performed their own contractual duties. *See Video Pipeline Inc. v. Buena Vista Home Entertainment, Inc.*, 210 F.Supp.2d 552, 561 (D.N.J. 2002) (citing *Pub. Serv. Enter. Group, Inc. v. Phila. Elec. Co.*, 722 F.Supp. 184, 219 (D.N.J. 1989)).

13. New Jersey law requires proof of performance of the movant's own contractual duties. *In re Cendant Corp. Secs. Litig.*, 139 F. Supp. 2d 585, 604 n.10 (D.N.J. 2001).

14. Claimants' failure to make regular monthly mortgage payment in January 2008 resulted in their breach of the mortgage and note prior to the filing of the foreclosure action in May 2008.

15. Claimants have not stated a *prima facia* claim for breach of contract based on any alleged noncompliance with the FFA because they breached the mortgage and note prior to the filing of the Complaint for Foreclosure. *See In re Cendant Corp. Sec. Litig.*, 139 F.Supp.2d at 604 n. 10.

16. Claimants' breach of contract claim against GMACM fails as a matter of law.

### C. Punitive Damages Based Upon Actual Malice (Count 4)

17. Under New Jersey law, actual malice "is nothing more or less than intentional wrongdoing, an evil minded act or an act accompanied by a wanton and willful disregard of the rights of another." *Chli Tital Ins. Co. v. Goldberg (In re Goldberg)*, 12 B.R. 180, 185 (Bankr. D.N.J. 1981) (citing *Sandler v. Lawn-a-Mat Chem. & Equip. Corp.*, 358 A.2d 805 (N.J. Super. Ct. App. Div. 1976)).

18. To recover punitive damages under New Jersey law, the Claimants must show by clear and convincing evidence that the harm suffered was the result of GMACM's acts or omissions, and "that such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions." N.J.S.A. 2A:15-5:12(a). They must also first receive a compensatory damages award before they are eligible for punitive damages. *In re Estate of Stockdale*, 953 A.2d 454 (N.J. 2008).

19. Claimants have failed to put forth any evidence, let alone clear and convincing evidence, that they suffered any harm.

20. Claimants have failed to put forth any evidence, let alone clear and convincing evidence, that GMACM committed any acts or omissions that "were actuated by actual malice or accompanied by a wanton and willful disregard of persons."

21. Claimants' claim for punitive damages based on actual malice fails as a matter of law.

**D.    New Jersey Consumer Fraud Act ("CFA") (Count 5 – only as to the single proposition stated in the Complaint for Foreclosure that GMACM owned the Note)[3]**

22. Claimants' CFA claim fails because they have not proven any facts to support the elements of a CFA claim.

23. A claim under the CFA consists of three elements: "(1) an unlawful practice, (2) an 'ascertainable loss,' and (3) 'a causal relationship between the unlawful conduct and the ascertainable loss.'" *Gonzalez v. Wilshire Credit Corp.*, 207 N.J. 557, 576 (2011) (quoting *Lee v. Carter-Reed Co.*, 203 N.J. 496, 521 (2010)).

24. The CFA defines an "unlawful practice" as:

[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with the intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived, or damaged thereby.

---

[3] This claim only survived because of the revelation at the hearing that GMACM did not own the note at the time the Complaint for Foreclosure was filed which seemingly contradicted an averment in paragraph 4 of the Complaint. However, that paragraph was amended to state that GMACM was the assignee, thus conveying standing to foreclose. See Amd.Compl., Trial Exhibit H.

N.J.S.A. 56:8-2.

25. Furthermore, under New Jersey law, allegations of fraud must be pled with particularity. *See* R. 4:5-8(a); *see also Levinson v. D'Alfonso & Stein*, 320 N.J. Super. 312, 315 (App. Div. 1999); Bankruptcy Rules 7008 and 7009 (making Federal Rules of Civil Procedure 8 and 9 the applicable standard for claims pled with in a complaint).

26. The New Jersey Superior Court, Appellate Division has recognized that a claim under the CFA is essentially a claim for fraud, and as such, must be pled with specificity. *Hoffman v. Hampshire Labs, Inc.*, 405 N.J. Super. 105, 112 (App. Div. 2009).

27. Mere conclusory statements are insufficient to satisfy the particularity requirement. *See Rego Indus., Inc. v. Am. Mod. Metals Corp.*, 91 N.J. Super. 447, 456 (App. Div. 1966).

28. To satisfy the heightened pleading standard, Mr. and Ms. Reed's claims must state the "particulars of the wrong, with dates and items if necessary." R. 4:5-8.

29. A court may dismiss a fraud claim if the allegations are not set forth with specificity. *See Levinson*, 320 N.J. Super. at 315.

30. Because the Mortgage was assigned to GMACM as set forth in the Amended Complaint for Foreclosure, there was no "unlawful practice" which could possibly give rise to a violation of the CFA.

31. Furthermore, Claimants have not alleged an ascertainable loss – that is, that they "suffer[ed] a definite, certain and measurable loss, rather than one that is merely theoretical." *Weinberg v. Sprint Corp.*, 173 N.J. 233 (2002).

32. Without the existence of an ascertainable loss, and since any loss attributable to the statement in the Foreclosure Action, later amended, that GMACM was the owner of the Loan is merely speculative, Claimants lack standing to assert a CFA claim.

33. Claimants CFA claim fails as a matter of law.

**E.    Counts 2, 4 and 5 cannot lie against RFC**

34. Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1).

35. Claimants have no valid legal justification for asserting Claims against RFC, therefore, the Borrower Trust's Objection to proofs of claim 3708 and 4759 should be sustained.

| | |
|---|---|
| Dated: September 8, 2014<br>New York, New York | /s/Diane A. Bettino<br>Diane A. Bettino<br>Barbara K. Hager, *admitted pro hac vice*<br>REED SMITH LLP<br>Princeton Forrestal Village<br>136 Main Street, Suite 250<br>Princeton, New Jersey 08540<br>Telephone: (609) 987-0050<br>Facsimile: (609) 951-0824<br><br>*Co-Counsel for The ResCap Borrower Claims Trust*<br><br>and<br><br>Norman S. Rosenbaum<br>Jordan A. Wishnew<br>Meryl L. Rothchild<br>MORRISON & FOERSTER LLP<br>250 West 55th Street<br>New York, New York 10019<br>Telephone: (212) 468-8000<br>Facsimile: (212) 468-7900<br><br>*Co-Counsel for The ResCap Borrower Claims Trust* |