UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | Case No.  12-12020  (MG) |
| RESIDENTIAL CAPITAL LLC et al., | Chapter 11 |
| Debtors. | Jointly Administered |

PRETRIAL MEMORANDUM

**Claimants:  FRANK REED, CHRISTINA REED**
**Proof of Claim Nos.:  3708, 3759, 4736, 4759**

## Statement of the elements of the claim of negligence

Under New Jersey law, negligence has four elements: "(1) duty of care, (2) breach of
duty, (3) proximate cause, and (4) actual damages." Wartsila NSD N. Am., Inc. v. Hill
Int'l, Inc., 342 F. Supp. 2d 267, 278 (D.N.J. 2004) (citation omitted). "[T]he standard of
care is the conduct of the reasonable person of ordinary prudence under the
circumstances." Rappaport v. Nichols, 156 A.2d 1, 8 (N.J. 1959). "The most common
test of negligence . . . is whether the consequences of the alleged wrongful act were
reasonably to be foreseen as injurious to others coming in the range of such acts."
DiCosala v. Kay, 450 A.2d 508 (N.J. 1982) (citations omitted).

## Summary of the facts relied upon to establish the elements of negligence

In 2008 GMAC filed a foreclosure action against the Reeds.  This action was found to be
in violation of state foreclosure law by the State Chancery Court. At the time, GMACM
was a large sophisticated operator within the mortgage industry that also employed
sophisticated contractors to perform much of its foreclosure work.  Both GMAC and its
contractors knew or should have know by way of the standards and customs of practice in
the foreclosure industry as well as by the numerous rules and laws regarding the practice
of foreclosure that it had a duty to not deviate from the very explicit laws and rules
governing foreclosure in the state of New Jersey.

The reason that GMAC and its contractors would not wish to deviate from those prescribed practices is very clear. It was very easily foreseeable that to do so could proximately cause harm to those party to the foreclosure. It is imperative to note that as an entity that based its trade on the value and liquidity of real property, and the credit of its customers, along with the fact that GMACM was a sophisticated participant, it should have been quite aware of anything and everything that would effect those items, i.e. a person's credit and the real property subject to financing.

As to damages, GMACM's foreclosure and corresponding lis pendens had the effect of de-liquefying the property at 817 Matlack Drive Moorestown, NJ so that it could not be monetized for its full market value by interfering with and/or hindering the sale and/or financing of such for cash.

The net damage has two primary elements as a result of this: 1) Since the house was not sold the debt obligation associated with the mortgage was not extinguished, an obligation that otherwise would have been extinguished still exists and has grown in size. 2) The proceeds from the sale were to provide a mortgage free residence to the Reeds. Ancillary damages were that the Reeds had to

The Reeds will be relying on the following factual evidence to support the various elements of negligence:

1) expert Christi Zulton Donati
2) Separately the laws, rules and regulations referenced within Ms. Donati's report
3) the filed and amended 2008 foreclosure complaint
4) Assignment of mortgage
5) The dismissal of the foreclosure complaint and its accompanying opinion
6) GMAC's motion for Summary Judgment in in the 2008 foreclosure
7) Expert report of Evan Hendricks
8) Lis pendens filed and maintained by GMAC
9) Declarations of Ms. Delahey with exhibits
10) Interagency Report on Foreclsoure
11) Testimony of OCC before the US Senate
12) Testimony of The Federal Reserve Before the US Senate
13) Testimony of Louise Carter
14) Letter from Naoji Moriucci
15) Letters to and from TD Bank
16) Letter form Thomas Tartamossa
17) Letter from Stan Woodworth
18) Letter from Dr. Sussman
19) TD 2008 Appraisal of 817 Matalack Drive Moorestown, NJ
20) Jacobs Contract to purchase 817 Matlack Drive Moorestown, NJ
21) Proof that the second lien was paid off in BT Edgar file
22) Delinquency notice from 21st Mortgage
23) Bills from Attorney Mathew M. McCrink for defense of the foreclosure
24) Bills From Jeffrey Walters for attempts to reverse the effect of the lis pendens and foreclosure.

25) Bills from Attorney Linda M. Campbell for defense of the foreclosure
26) Any facts that may be adduced from the evidence submitted by either party for trial.
27) Authentication witness from TD Bank
28) Lay testimony of property owner Frank Reed
29) Testimony of Drew Murdock
30) Examination of GMAC's corporate representative
31) Examination of GMAC's Credit expert
32) Transcripts form July hearing
33) mortage
34) note

**Proposed findings of fact and conclusions of law for the claim of negligence.**

a) GMACM had a duty of care that stems from it knowledge of its duty to follow the explicit rules and laws governing foreclosure and preforeclosure practices in New Jersey and the foreseeability that its acts could cause harm.

b) That GMACM did in fact breach its duty of care when it deviated from those explicitly delineated practices and requirements. By filing a foreclosure that it had neither standing nor a clear and unfettered right to do so at the time of filing.

c) That GMACM's filing of the foreclosure and the recordation of the foreclosure's associated lis pendens interfered with and/or hindered the Reeds attempts to refinance and/or sell the property which would have either paid off the note or allowed the Reeds to obtain more liquidity which would have ultimately allowed them to service their debts. This is "because th very filing of a Ntice of Lis Pendens constitutes a 'taking of property'" which does not affect those defendants who have no intention of alienating or mortgaging the property. Only those defendants who desire to sell their property are affected because the practical effect of the filing of the notice of lis pendens may be to prevent alienability or at least to hinder it. *Chrysler Corp. v. Fedders Corp.,* 519 *F.Supp.* 1252 (D.N.J.1981), rev'd on other grounds, 670 *F.*2d 1316 (3d Cir.1982).

d) That the damage that has resulted has multiple components:

    i) That the note on 817 would have been extinguished by either:
        a) the sale of the property
        b) the refinance of the property

    ii.) That there would be no further accrual of interest debt on the note post the point of the extinguishment of the note.

    iii) That there was cash that would have been due to the Reeds at the sale of 817 Matlack Drive Moorestown, NJ and that amount should be

estimated by the Court according to New Jersey law governing the uncertainty of damages. "In fact, we do permit considerable speculation by the trier of fact as to damages. *Val Floors, Inc v. Westminster Communities* 355 N.J. Super. 416; 810 A.2d 625 In Tessmar v. Grosner, 23 N.J. 193, 128 A.2d 467 (1957). the Court [***13] stated that "[t]he rule relating to the uncertainty of damages applies to the uncertainty as to the fact of damage and not as to its amount, and where it is certain that damage has resulted, mere uncertainty as to the amount will not preclude the right of recovery." Past experience of an ongoing, successful business provides a reasonable basis for the computation of lost profits, "with a satisfactory degree of definiteness" Weiss v. Revenue Bldg. & Loan Ass'n, 116 N.J.L. 208, 212, 182 A. 891 (E & A 1935). 8 See also Tull v. Gundersons, Inc., 709 P.2d 940, 945 (Colo.1985) (noting that "past Profit experience on other projects . . . is widely accepted as relevant to a determination of damages based on lost profits"); Restatement supra, § 352 comment b ("Evidence of past performance will form the basis for areasonable prediction as to the [***15] future").

   iv)   That the Reeds would have either purchased a new home free and clear with the proceeds from the market value sale of 817 Matlack Drive Moorestown, NJ or paid off one of their existing homes. This is undeniably foreseeable as most Americans buy a new house with the proceeds from the sale of their last house; and given the specific stress of the 2008 foreclosure the Reds wished to return to the position of owning their home free and clear as they had in the past.

   v)   That GMACM is liable for both the cash the Reeds should have received by the sale of their property and the continued interest, penalties and expenses related to the property from the point the sale should have occurred but for GMACM's bad acts.

   vi)   That there were certain amounts spent by the Reeds to defend against the unlawful foreclosure and that those amounts should be reimbursed.

   vii)   That the wrongful foreclosure and the emotional distress caused by it has had a physical effect on Mr. Reed's health and that an amount to be determined by the Court be entered as due to Mr. Reed.

   viii)   That other non-economic damages for damage to reputation be estimated by this Court based on evidence introduced

**Statement of the elements of the claim of breach of contract**

To state a claim for breach of contract under New Jersey law, the Reeds must establish: (1) the existence of a contract; (2) a breach of that contract; (3) damages flowing from that breach; and (4) that they performed their own contractual duties. See Video Pipeline

Inc. v. Buena Vista Home Entm't, Inc., 2010 F. Supp. 2d 552, 561 (D.N.J. 2002) (citation omitted); see also In re Cendant Corp. Secs. Litig., 139 F. Supp. 2d 585, 604 n.10 (D.N.J. 2001) (stating that New Jersey law requires pleading performance of the movant's own contractual duties).

EXCEPT THE FOLLOWING:

"When a party materially breaches the contract but does not indicate any intention to renounce or repudiate the remainder of the contract, the plaintiff can elect to either continue to perform or cease to perform. If the plaintiff elects to perform, plaintiff is deprived of an excuse for ceasing performance." CHARGE 4.10L, 4.10 BILATERAL CONTRACTS L. CLAIMS OF BREACH (Approved 5/98), New Jersey civil charges.

"...the injured party has a genuine election offered him of continuing performance or of ceasing to perform, and _**any action indicating an intention to perform**_ will operate as a conclusive choice, not indeed depriving him of a right of action for the breach which has already taken place, but depriving him of any excuse for ceasing performance on his own part." 5 _Williston on Contracts_ (_Rev. Ed._) 3749. (Emphasis added) Frank Stamato & Co. v. Borough of Lodi, 71 A.2d 336, 4 N.J. 21 (1950).

Ordinarily the right to claim a breach of the whole contract depends, not on whether the acts constituting the breach were departures from the contract terms but whether they were inconsistent with an intention to be further bound by its terms or upon whether the breach was such as to defeat the purpose of the contract. 12 Am.Jur., Contracts, s 343, p. 901. Cf. Restatement, Contracts, s 313

**Summary of the facts relied upon to establish each element for breach of contract.**

There are three elements required under the facts of this current case to sustain a breach of contract not four. The fourth element is eliminated by the rule expressed directly above.

There is exists a contract. Actually two contracts. A note and a mortgage. The note contract is the contract that the Mr. Reed allegedly breached by his non payment of his debt obligation under the note. However, there is no allegation nor any evidence that Mr. Reed breached the mortgage contract. This is relevant as GMACM is the admitted assignee of the mortgage contract and it is in fact the mortgage contract which contains the terms which require that notice be given to Mr. Reed prior to the commencement of any litigation against him, not the note.

SO on the simply stated, there was no preceding breach of the mortgage contract by Mr. Reed material or immaterial and as such element four of the general rule requiring the performance of a party claiming breach is satisfied. Mr. Reed was in performance of the mortgage contract.

Additionally, even if Mr. Reed was in breach of the note contract GMACM has demonstrated they were not a party to that contract and therefore could not avail themselves of any benefit that may come from the breach of the note contract.

Last, under the exception rule above, if parties indicate an intention to be bound by the contract(s) after a breach, then they must continue to be bound by all the terms of the contract. In this case, GMACM clearly wanted to enforce the contract(s) with Mr. Reed. The right to foreclose on Mr. Reed is a contract right granted in the mortgage contract. A right that is necessarily enforceable AFTER a default in payment. If GMACM wished to elect to treat Mr. Reed's alleged failure to pay on the note as a material breach, then it would have to have repudiated the contract(s) as a whole and sued for legal damages for breach, but they did not. In fact GMACM proceeded in foreclosure clearly demonstrating its intent to stay within the confines of the contract(s) provisions.

However, this is where it is clear by the undisputed record that GMACM filed a foreclosure without giving notice to the Reed's. Notice required by the contract and law as incorporated into the contract. In doing so, GMACM explicitly breached the mortgage contract.

The damages that flowed from the breach of the contract are very straight forward. The sale of the property was hindered and/ interfered with. As a result the Reed's were deprived of the cash they would have received at the sale of the property. Mr. Reed would also not be liable for all the interest, penalties and expenses relating to the note on the property from the point it should have sold but for the hinderence and/or interference created by GMACM's breach of contract. The Reeds would have enjoyed living debt free in their new home.

Finally, there exists a rule in the common law of contracts in New Jersey which states: **If a party to a contract proves that a counter-party to that contract prevented or hindered the first party's performance of its obligations under the contract, the counterparty cannot recover for a breach that resulted from those actions.** See Ward v. Merrimack Mut. Fire Ins. Co., 332 N.J.Super. 515, 522, 753 A.2d 1214, 1218 (App. Div. 2000)("A party to a contract may not avail itself of a condition precedent where by its own conduct it has rendered compliance therewith impossible"); Atlantic City v. Farmers Supply & Products, 96 N.J.L. 504, 508 (E. & A. 1929); Coastal Oil v. Eastern Trailers Seaway Corp., 29 N.J. Super. 565, 577 (App. Div. 1954); Winfield v. Middlesex Contractors, 39 N.J. Super. 92, 102 (App. Div. 1950); Abeles v. Adams Engineer Co., 64 N.J. Super. 167, 178, mod. 35 N.J. 411 (App. Div. 1960)("He who prevents a thing from being done may not avail himself of the non-performance which he himself has occasioned"). See also Creek Ranch, Inc. v. New Jersey Turnpike Authority, 75 N.J. 421, 432 (1978); Blau v. Friedman, 26 N.J. 397 (1958); see also 5 Williston on Contracts, 677 (3d ed. 1957); Restatement of Contracts § 295 (1932).

In the instant case it was debtors' wrongful acts which interfered with and at least hindered the Reeds from fulfilling their "obligation" under the note and mortgage contracts. The Reeds would have paid off their mortgage, as it was their obligation to do

so through their cash out refinance with TD bank or the broker Mr. Tartamossa, and/or through a sale of the property for a price unimpeded by the debtors' wrongful lis pendens and other acts. Therefore it was debtors own wrongful acts that interfered with the Reeds rightful obligation and right to extinguish the note and its corresponding lien.
In the Reeds' case, the affirmative defense against the debtors, created by the rule stated in paragraph 81 above, that the debtors' interference or hindrance of the Reeds' obligation to pay the note would have extinguished the note, creates a scenario whereby the debtor's would not be owed anything.

The Reeds will be relying on the following factual evidence to support the various elements of breach of contract:

1) expert Christi Zulton Donati
2) Separately the laws, rules and regulations referenced within Ms. Donati's report
3) the filed and amended 2008 foreclosure complaint
4) Assignment of mortgage
5) The dismissal of the foreclosure complaint and its accompanying opinion
6) GMAC's motion for Summary Judgment in in the 2008 foreclosure
7) Expert report of Evan Hendricks
8) Lis pendens filed and maintained by GMAC
9) Declarations of Ms. Delahey with exhibits
10) Interagency Report on Foreclsoure
11) Testimony of OCC before the US Senate
12) Testimony of The Federal Reserve Before the US Senate
13) Testimony of Louise Carter
14) Letter from Naoji Moriucci
15) Letters to and from TD Bank
16) Letter form Thomas Tartamossa
17) Letter from Stan Woodworth
18) Letter from Dr. Sussman
19) TD 2008 Appraisal of 817 Matalack Drive Moorestown, NJ
20) Jacobs Contract to purchase 817 Matlack Drive Moorestown, NJ
21) Proof that the second lien was paid off in BT Edgar file
22) Delinquency notice from 21st Mortgage
23) Bills from Attorney Mathew M. McCrink for defense of the foreclosure
24) Bills From Jeffrey Walters for attempts to reverse the effect of the lis pendens and foreclosure.
25) Bills from Attorney Linda M. Campbell for defense of the foreclosure
26) Any facts that may be adduced from the evidence submitted by either party for trial.
27) Authentication witness from TD Bank
28) Lay testimony of property owner Frank Reed
29) Testimony of Drew Murdock
30) Examination of GMAC's corporate representative
31) Examination of GMAC's Credit expert
32) Transcripts form July hearing
33) mortage

**Proposed findings of fact and conclusions of law for the Breach of Contract claim**

a) There exists two contracts that Mr. Reed and the Reeds are a party to, the Note and Mortgage.

b) That the mortgage contract was breached by GMAMC by filing a foreclosure without giving notice required by said contract to the Reeds.

c) That there were damages that flowed from the breach of contract i.e. that the Reeds were attempts to sell the property were hindered and/or interfered with by the breach of contract.

d) That the cash the Reeds should have received if the property sold unhindered by the breach of contract would have provided the Reeds sufficient money to purchase or payoff one of their existing properties so that they would return to the position of living debt free as they had before.

e) That GMAMC should reimburse the Reeds for the loss of both the cash and the accrual of interest, penalties and expenses related to the note that otherwise would have been extinguished but for the breach.

**Statement of the elements of the claim of the violation of the NJCFA**

A claim under the New Jersey CFA requires three elements: "(1) an unlawful practice, (2) an 'ascertainable loss,' and (3) a 'causal relationship between the unlawful conduct and the ascertainable loss . . . .'" Gonzalez v. Wilshire Credit Corp., 25 A.3d 1103, 1115 (N.J. 2011) (quoting Lee v. Carter-Reed Co., 4 A.3d 561, 576 (N.J. 2010)). The CFA provides for recovery of treble damages.

The CFA defines an "unlawful practice" as

> [t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived, or damaged thereby . . . .

N.J.S.A. 56:8-2.

Quoting the Court further from its July 11, 2014 order:

> The Court said at the hearing that it was going to dismiss the CFA claim in its
> entirety. But upon further consideration, because the Trust's counsel
> acknowledged during the hearing that the complaint in the Foreclosure Action
> misrepresented that GMACM owned the Reeds' note, the Court will permit the
> Reeds to proceed with a CFA claim based on the single misrepresentation that
> GMACM owned the note. This representation in the complaint appears to have
> been the basis for GMACM's standing to bring the Foreclosure Action, without a
> certification that GMACM, as servicer, had been granted authority to enforce the
> terms of the note by its actual owner. (The FFA required such a certification to be
> made in the NOI that GMACM has never been able to locate.) The Court is not
> determining at this stage whether the
>
> Reeds can recover on this theory, but it will allow the Reeds to go forward with
> this limited CFA claim at the evidentiary hearing.

**Summary of the facts relied upon to establish the elements of a CFA violation:**

**Standing**

The Reed Note

GMACM has indicated in its pleadings and filings in the 2008 foreclosure action in the
New Jersey Chancery Court that they were the "Holder" of the note and mortgage. The
term "Holder" is a specific legal term which expressly denotes that *that* person or entity
has the rights to the payments under the note AS WELL AS the right to enforce the note.

In other words all the rights remain vested in that one person or entity. Again, this is
what GMACM ultimately indicates to the New Jersey Chancery Court in its 2008 Motion
for Summary Judgment. In this motion and supporting certification, GMACM explicitly
states that it is the Holder of the note and the glaring implication is that this is the basis of
its standing to enforce the Note and Mortgage. However, this representation was and is
apparently not true.

To enforce the note as a holder pursuant to *N.J.S.A.* 12A:3-301, plaintiff would have to
establish that it received the note, through negotiation, prior to and continued to maintain
this at the time of the filing of any enforcement action (i.e. the filing of a foreclosure
complaint). That would require that the plaintiff have physical possession of note and
that the note be endorsed prior to or at the time of delivery, either in favor of plaintiff or
in blank.

In reviewing the Reed's documents in pursuit of their proofs of claim in the Rescap
Bankruptcy case, I have seen the declaration of Lauren Delehey The Debtor's Chief
litigation Officer and the exhibits she attached. Ms. Delehey

asserted that at no time was GMACM the "owner" of the note and she submitted the endorsed note as proof.

At this point, I will not opine as to the "ownership" of the note, as that is not the relevant question of fact.  The relevant inquiry is actually who was the "Holder" of the note at the time that GMACM asserted to the New Jersey Chancery Court that it was in fact the "Holder" of the note to gain and maintain its standing to bring the foreclosure action.

It is indisputably clear that GMACM was not the holder at the time it brought the foreclosure suit against the Reeds.  By their own evidence submitted, the note shows no endorsement to GMACM *and* there is no endorsement in the blank so that GMACM could be a Holder via possession.

At this juncture it is imperative to reinforce here that "Holder" is a specific legal term denoting legal status that can be ONLY obtained in two distinct ways and in light of Ms. Delehy's supplied evidence, there is no way that GMACM was the 'Holder" of the Reed note at the time it filed its foreclosure action.  As such, GMACM had no standing to file the foreclosure action against the Reeds.

It should also be noted that GMACM never asserted that it had standing that would flow from being a "non-holder in possession".  This fact is not inconsequential for GMACM as this status is mutually exclusive of the status of being a "Holder".


Reed Mortgage Contract

In addition to the requirements above, regarding the debt obligation, i.e. the note, a plaintiff in a foreclosure action must also be the counterparty, (the mortgagee), to the mortgagor in the mortgage contract - *at the time of the filing of a foreclosure complaint in the Chancery Courts in New Jersey* - to have standing to bring the foreclosure action. This is because the mortgagee derives its authority to proceed in foreclosure in the Chancery Court from the rights it is granted by the mortgage contract. Therefore, without being the mortgagee at the time of the filing of the plaintiff has no right to file or prosecute the foreclosure.

In our modern world of finance, "becoming a mortgagee" typically occurs via assignment from the original mortgagee as notes and their related securities are bought and sold in various transactions.  In the Reed's case this was the fact as well.  However, the assignment of the mortgage from a predecessor in interest, (in this case MERS), to GMACM did not occur until *after* the foreclosure action was filed.  Therefore, GMAC not only lacked standing to bring a foreclosure action in the Chancery Courts of New Jersey.

The ascertainable loss and causation are the same as for the breach of contract and the negligence claims as detailed above.

The Reeds will be relying on the following factual evidence to support the various elements of violation of the NJCFA:

1) expert Christi Zulton Donati
2) Separately the laws, rules and regulations referenced within Ms. Donati's report
3) the filed and amended 2008 foreclosure complaint
4) Assignment of mortgage
5) The dismissal of the foreclosure complaint and its accompanying opinion
6) GMAC's motion for Summary Judgment in in the 2008 foreclosure
7) Expert report of Evan Hendricks
8) Lis pendens filed and maintained by GMAC
9) Declarations of Ms. Delahey with exhibits
10) Interagency Report on Foreclsoure
11) Testimony  of  OCC before the US Senate
12) Testimony of The Federal Reserve Before the US Senate
13) Testimony of Louise Carter
14) Letter from Naoji Moriucci
15) Letters to and from TD Bank
16) Letter form Thomas Tartamossa
17) Letter from Stan Woodworth
18) Letter from Dr. Sussman
19) TD 2008 Appraisal of 817 Matalack Drive Moorestown, NJ
20) Jacobs Contract to purchase 817 Matlack Drive Moorestown, NJ
21) Proof that the second lien was paid off in BT Edgar file
22) Delinquency notice from 21st Mortgage
23) Bills from Attorney Mathew M. McCrink for defense of the foreclosure
24) Bills From Jeffrey Walters for attempts to reverse the effect of the lis pendens and foreclosure.
25) Bills from Attorney Linda M. Campbell for defense of the foreclosure
26) Any facts that may be adduced from the evidence submitted by either party for trial.
27)  Authentication witness from TD Bank
28) Lay testimony of property owner Frank Reed
29) Testimony of Drew Murdock
30)  Examination of GMAC's corporate representative
31) Examination of GMAC's Credit expert
32)  Transcripts form July hearing
33) mortage
34) note

**Proposed findings of fact and conclusions of law for the NJCFA claim**

a)   That GMAC did not have standing at the time it filed the 2008 foreclosure action.

b)  That the foreclosure action and its associated lis pendens hindered and/or interfered with the monetization of the property through its sale or financing.
c)  That this caused ascertainable loss as detailed under the claims for negligence and breach of contract.
d)  That GMAMC should reimburse the Reeds for such ascertainable loss and and that that amount should be trebled under the NJCFA.

**Statement of the elements of the claim for Punitive Damages**

Under New Jersey law, actual malice "is nothing more or less than intentional wrongdoing, an evil minded act or an act accompanied by a wanton and willful disregard of the rights of another." Chli Tital Ins. Co. v. Goldberg (In re Goldberg), 12 B.R. 180, 185 (Bankr. D.N.J. 1981) (citing Sandler v. Lawn-a-Mat Chem. & Equip. Corp., 358 A.2d 805 (N.J. Super. Ct. App. Div. 1976)). To recover punitive damages under New Jersey law, the Reeds must show by clear and convincing evidence that the harm suffered was the result of GMACM's acts or omissions, and "that such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions." N.J.S.A. 2A:15-5:12(a). They must also first receive a compensatory damages award before they are eligible for punitive damages. In re Estate of Stockdale, 953 A.2d 454

**Summary of the facts relied upon to establish each element of the punitive damages.**

It is indisputable that GMACM physically filed a foreclosure action, and that that filing was not unintentional. The foreseeability of the harm that could be caused by not following all of the explicit rules, laws and contractual which exist for the very purpose of avoiding such harm is also indisputable. Therefore, the disregard by GMACM of those rule, laws and contract provisions did in fact demonstrate a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions.

The same facts relied upon for the proof of negligence shall be relied upon herein as well.

The Reeds will be relying on the following factual evidence to support the various elements for punitive damages:

1)  expert Christi Zulton Donati
2)  Separately the laws, rules and regulations referenced within Ms. Donati's report
3)  the filed and amended 2008 foreclosure complaint
4)  Assignment of mortgage
5)  The dismissal of the foreclosure complaint and its accompanying opinion

6) GMAC's motion for Summary Judgment in in the 2008 foreclosure
7) Expert report of Evan Hendricks
8) Lis pendens filed and maintained by GMAC
9) Declarations of Ms. Delahey with exhibits
10) Interagency Report on Foreclsoure
11) Testimony  of  OCC before the US Senate
12) Testimony of The Federal Reserve Before the US Senate
13) Testimony of Louise Carter
14) Letter from Naoji Moriucci
15) Letters to and from TD Bank
16) Letter form Thomas Tartamossa
17) Letter from Stan Woodworth
18) Letter from Dr. Sussman
19) TD 2008 Appraisal of 817 Matalack Drive Moorestown, NJ
20) Jacobs Contract to purchase 817 Matlack Drive Moorestown, NJ
21) Proof that the second lien was paid off in BT Edgar file
22) Delinquency notice from 21st Mortgage
23) Bills from Attorney Mathew M. McCrink for defense of the foreclosure
24) Bills From Jeffrey Walters for attempts to reverse the effect of the lis pendens and foreclosure.
25) Bills from Attorney Linda M. Campbell for defense of the foreclosure
26) Any facts that may be adduced from the evidence submitted by either party for trial.
27)  Authentication witness from TD Bank
28) Lay testimony of property owner Frank Reed
29) Testimony of Drew Murdock
30)  Examination of GMAC's corporate representative
31) Examination of GMAC's Credit expert
32)  Transcripts form July hearing
33) mortage
34) note

**Proposed findings of fact and conclusions of law for the punitive damages claim**

a) That GMACM intentionally filed a foreclosure action.
b) That GMACM disregarded a myriad of rules, laws and contract provisions that were designed to prevent unwarranted harm from befalling a party to a foreclosure action.
c) That GMACM continued its course of action over an extended period of years despite repeated notices that their actions were violative and harmful and as such demonstrated a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions.
d) That these actions caused financial harm.

e) That these actions require the imposition of punitive damages of an amount to be determined by this Court.

Submitted this 8th day of September, 2014

By:_____
   Frank Reed
   Creditor, Pro Se