Hearing Date and Time: TBD
Response Date: September 8, 2014, 9:00am EST

Frank Reed
817 Matlack Drive
Moorestown, NJ 08057
Telephone: (856) 956-6950
*Creditor, Pro Se*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**OPPOSITION OF CLAIMANTS FRANK J. REED III AND CHRISTINA REED
TO RESCAP BORROWER CLAIMS TRUST'S MOTION *IN LIMINE*
TO EXCLUDE THE EXPERT TESTIMONY OF EVAN D. HENDRICKS**

Proof of Claim Nos.: 3708, 3759, 4736, 4759

Claimants Frank Reed and Christina Reed (the "Reeds") hereby submit this opposition to The ResCap Borrower Claims Trust's Motion *In Limine* to exclude the expert testimony of Evan D. Hendricks. In support of their opposition, the Reeds respectfully state as follows:

**PRELIMINARY STATEMENT**

1.  On July 31, 2014, the Reeds identified Evan D. Hendricks as an expert whom they anticipate calling at the contested matter hearing scheduled to take place on September 15, 2014, as required by the Court's July 29, 2014 Order regarding the exchange of information regarding anticipated fact and expert witnesses. [ECF Doc. # 7314].

2.  Mr. Hendricks has issued a written opinions dated November 9, 2011 and July 13, 2014, which the Reeds provided to the ResCap Trust.

3.  Mr. Hendricks is an expert in issues of chronic credit reporting inaccuracy, that is, with respect to an actor's causing an inaccurate or wrongful degradation of the party's credit and the consequences thereof.

4.  Mr. Hendricks' reports and testimony address the improper foreclosure at issue in this litigation, and the effect it had on: the Reeds' credit; the Reeds' efforts to refinance the mortgage at issue and avoid foreclosure; the Reeds' efforts to extract equity from their home; Mr. Reeds' ability to continue his real estate business[1]; and, the economic and non-economic damages that resulted.

5.  The ResCap Trust has filed the instant motion *in limine* seeking to strike Mr. Hendricks' expert reports and to preclude his testimony at the hearing scheduled in this contested matter. The Trust asserts three grounds in support of its motion to exclude his report and

---

[1] Please note that the Hendricks reports were prepared prior to the Court's *sua sponte* July 28, 2014 indication that it will not consider or hear any evidence with respect to consequential damages to the Reeds beyond the Moorestown NJ property upon which GMACM wrongfully foreclosed. Thus, the reports do address, to some degree, matters beyond the Moorestown NJ property. It is respectfully submitted that the Court can disregard or limit Mr. Hendricks' reports and/or testimony to the extent it deems necessary in accord with its post-report rulings.

testimony: (1) the opinions expressed by Mr. Hendricks are not relevant to the issues at hand and concern lay matters; (2) the opinions expressed by Mr. Hendricks do not meet the standards for admissibility of expert testimony set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993); and (3) Mr. Hendricks is not qualified to provide expert opinion on the issues at hand. See pgs 2-3, 6, 9-10 of ResCap Trust's Motion *In Limine* (ECF Doc. # 7461).

6.      It is respectfully submitted that Mr. Hendricks' reports should not be stricken, and that he should be allowed to provide testimony as an expert. The Court, as the trier of fact in the coming bench trial, is more than capable of assessing Mr. Hendricks' qualifications as an expert on the matters at bar, discerning the relevant expert evidence offered and its potential value to the Court as trier of fact, weighing its probative value versus its prejudicial effect, and excluding improper inferences or testimony, if any, from its decisional analysis.

7.      First, Mr. Hendricks' expert testimony will assist the Court in assessing the effect of GMACM's wrongful foreclosure as well as the purported damages resulting therefrom.

8.      Second, Mr. Hendricks' report meets the standards for admissibility of expert testimony under Daubert, Federal Rule of Evidence 702, and relevant case law.

9.      Third, Mr. Hendricks is indeed qualified to weigh in as an expert on the issues with respect to which he will opine – namely, the improper foreclosure at issue in this litigation, and the effect it had on: the Reeds' credit; the Reeds' efforts to refinance the mortgage at issue and avoid foreclosure; the Reeds' efforts to extract equity from their home; and, the economic and non-economic damages that resulted.

10.     Mr. Hendricks is an expert on the effect of wrongful and inaccurate credit actions, has testified or been deposed in over fifty state and federal lawsuits, and has provided extensive testimony before state and federal legislatures and agencies. See November 9, 2011 Report, pgs 15-22, listing extensive experience and qualifications.

11. Accordingly, it is respectfully submitted that exclusion of the reports and testimony of Evan D. Hendricks as an expert is not warranted and the ResCap Trust's motion should be denied.

12. Troublingly, the ResCap Trust makes numerous arbitrary and unsupported observations concerning Mr. Hendricks' reports and the Reeds claims by randomly highlighting a fragment of a sentence or statement in the reports and then misstating or misapplying the import or context of the sentence fragment or comment. For example, at page 8 of the motion, the Trust states:

> Although in Part 2 of the Report, Mr. Hendricks acknowledges that payment history, particularly 90-day+ late reports, credit utilization and other factors contribute to a credit score, see Report, pp. 10-11, he does not give the slightest consideration to these evident realities at play in Mr. Reed's case, despite his purported reliance on Mr. Reed's deposition testimony from the Law Division Litigation, which plainly puts most or all of these potential negative credit indicators at play for the Reeds. In Mr. Hendricks' own telling – if not self-defeating – words, Claimant Mr. Reed was "involved with numerous loans over a period of many years" in connection with his "ongoing business of buying, improving, and selling real estate."
> *See* Report, p. 3

13. In an attempt to cloud the cause or genesis of the Reeds' credit/refinance issue (which was GMACM's wrongful foreclosure), the Trust states that Mr. Reed was "involved with numerous loans over a period of many years". In fact, a review of the actual language of the report indicates that the relevant portion of the report is actually referring to <u>TD Bank's</u> being "involved with numerous loans over a period of many years" with Mr. Reed, and is a reference to the longstanding relationship that the bank and the Reeds had enjoyed prior to, and which was damaged by, the wrongful foreclosure.[2]

14. Similarly, in the same comment quoted above, the Trust insinuates that Mr. Reed's deposition testimony in his state court action against GMACM 'put other negative credit

---

[2] The relevant sentence actually states: "Mr. Reed had a long-standing relationship with the TD Bank President, who had been involved with numerous loans over a period of many years as part of Mr. Reed's ongoing business of buying, improving and selling real estate." See November 9, 2011 Hendricks' Report at pg 3, attached to Motion as Exhibit A.

factors into play', and that the Hendricks report carelessly does not address those deposition-mentioned factors. But critically, the Trust fails to point to any such testimony from the state court action and does not even include the relevant transcript in the motion record.

15. Such patently careless, if not intentionally misleading arguments and comments are a recurring theme in the ResCap Trust Motion, and should not be tolerated or rewarded by the Court.

16. More troublingly, the Trust continues an underhanded tactic which it has employed throughout this litigation, that is, its frequent repetition of the fact that the Reeds were in default on the subject loan as an excuse for GMACM's clearly wrongful acts and omissions.[3] Ostensibly, the Trust is suggesting that because the Reeds missed two mortgage payments, GMACM was absolutely free to disregard its irrefutable statutory and contractual pre-foreclosure obligations, and that GMACM was allowed to proceed against the Reeds completely unfettered by the fact that it did not even have standing to file the action. The Reeds' having missed two mortgage payments does not make it open season for their statutory and contractual rights to be abused or disregarded.

## BACKGROUND

### A. General Background

17. On May 14, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of title 11 of the United States Code.

18. On May 16, 2012, the United States Trustee for the Southern District of New York appointed a nine member official committee of unsecured creditors.

19. On December 11, 2013, the Court entered an order confirming the Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors [ECF Doc. # 6065].

---

[3] See ResCap Motion at pgs 3, 8 and 9 [ECF Doc. # 7461].

20.  On December 17, 2013, the Effective Date (as defined in the Plan) of the Plan occurred and the Plan was substantially consummated. The Plan provides for the establishment of the Trust to, among other things, administer, reconcile and provide a distribution to holders of Allowed Borrower Claims as defined in the Plan.

**B. The Reeds' Claims**

21.  The Reeds' Claims are based on two related prepetition lawsuits filed in New Jersey state court: (1) a foreclosure action filed by GMAC Mortgage, LLC ("GMACM") on May 19, 2008 (the "Foreclosure Action") and (2) a lawsuit filed by the Reeds against GMACM and RFC on May 10, 2010, arising from the wrongful Foreclosure Action and damages resulting therefrom (the "Reed Action").

22.  The Foreclosure Action was dismissed without prejudice because GMACM could not and did not provide a scintilla of evidence that it complied with the New Jersey Fair Foreclosure Act's (the "FFA") requirement that is serve the Reeds with a pre-foreclosure Notice of Intent to Foreclose ("NOI").

23.  Thereafter, the Reeds filed a lawsuit against GMACM and RFC, alleging damages for wrongful foreclosure (based upon GMACM's failure to send an NOI), negligence, breach of contract and estoppel. GMACM and RFC filed a motion to dismiss the Reed Complaint for failure to state a claim with respect to the asserted causes of action, which the New Jersey court denied in July 2010.

24.  The Reeds were then permitted to file an amended complaint on January 6, 2012, adding claims for economic and non-economic losses stemming from the Foreclosure Action, punitive damages, and consumer fraud. The additional claims also survived attack and opposition by GMACM and RFC.

25.  The Reeds voluntarily dismissed their lawsuit on February 9, 2012, so that they could participate in the Federal Reserve Board's Independent Foreclosure Review.

26. The Reeds filed Proofs of Claim Nos. 3708, 3759, 4736 and 4759 against GMACM and RFC in the context of the bankruptcy proceeding before this Court, seeking relief in the form of damages resulting from the debtors' wrongful actions.

27. The Reeds' provided substantial supplemental documentation and exhibits in support of their claims in July 2013, and again in response to the Trust's Objection [ECF Doc. # 7153].

### C. Procedural History of Contested Matter

28. On May 29, 2014, the Debtors filed the Trust's Objection to Proofs of Claim Filed by Frank and Christina Reed [ECF Doc. # 7017 and 7018] (the "Objection").

29. On June 19, 2014, the Reeds filed a response to the Objection [ECF Doc. # 7153].

30. On July 3, 2014, the Trust filed a reply to the Reeds' response [ECF Doc. # 7228].

31. On July 9, 2014, the Court held a hearing with respect to the Objection.

32. Frank Reed, acting *pro se*, and counsel for the ResCap Borrower Claims Trust appeared before the Court for a July 9, 2014 hearing, during which the Court heard argument and made preliminary rulings pending issuance of its Order and decision.

33. On July 11, 2014, the Court entered an Order sustaining in part and overruling in part the Trust's Objection to the Reeds' Claims, concluding that the Objection presents a contested matter. [ECF Doc. # 7246]. The July 11, 2014 Order scheduled an evidentiary hearing with respect to the remaining claims for September 15 and 16, 2014.

34. On July 29, 2014, the Court entered an Order requiring that the parties exchange information regarding anticipated fact and expert witnesses by July 31, 2014. [ECF Doc. # 7314].

35. The Reeds identified Evan D. Hendricks as an anticipated expert witness on or about July 31, 2014.

36. The Reeds have produced two reports prepared by Mr. Hendricks, dated November 9, 2011 and July 13, 2014.

37.     The ResCap Trust filed the instant motion on August 29, 2014. [ECF Doc. # 7461].

## ARGUMENT

38.     It is well-settled that a district court judge has wide discretion in determining the qualification and competency of a witness to express an opinion as an expert. See generally, U.S. v. Bermudez, 526 F.2d 89 (2d Cir. 1975), certiorari denied 96 S.Ct. 2166, 425 U.S. 970; U.S. v. Green, 523 F.2d 229 (2d Cir. 1975), certiorari denied 96 S.Ct. 858, 423 U.S. 1074.

39.     As a threshold matter, in the impending bench trial, the Court's role as gatekeeper with respect to expert evidence is much less critical than in a jury trial, since a judge is "presumed to be able to exclude improper inferences from his or her own decisional analysis." Rondout Valley Cent. Sch. Dist. v. Coneco Corp., 321 F. Supp. 2d 469, 473-74 (N.D.N.Y. 2004).

40.     This Court is, of course, perfectly capable of discerning relevant evidence, weighing its probative value versus its prejudicial effect, and rejecting improper inferences or intrusions upon its role. See Henry v. Champlain Enters. Inc., 288 F. Supp. 2d 202, 221 (N.D.N.Y. 2003)(a trial court should be able to separate the "wheat from the chaff"); see also Rondout, 321 F. Supp. 2d at 474 ("In non jury cases the district court can commit reversible error by excluding evidence but it is almost impossible for it to do so by admitting evidence.")(quoting 11 Charles A. Wright & Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2885 (2d ed. 1995)). See also Arista Records Inc. v. Launch Media, Inc., 2006 WL 2591086 (S.D.N.Y. Sept. 8, 2006)(finding motions to exclude expert testimony and reports "premature [...], as issues pertaining to the expert witnesses are more appropriately addressed and resolved during the course of the trial").

### A. Mr. Hendricks' Expert Testimony Will Assist The Court

41.     Mr. Hendricks' report and expert testimony will assist the Court in assessing the purported damages resulting from and relevant to the Reeds' claims at the September 15, 2014 contest matter hearing.

42. Rule of Evidence 702, titled "Testimony by Expert Witness", states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

43. "Federal Rule of Evidence 702 permits a district court to allow the testimony of a witness whose knowledge, skill, training, experience or education will assist a trier of fact in understanding an area involving specialized subject matter." United States v. Molina, 172 F.3d 1048, 1056 (8th Cir. 1999).

44. It is respectfully submitted that Mr. Hendricks' report and testimony, as an expert on the effect of wrongful and inaccurate credit actions, will be relevant so as to assist the trier of fact, and have a reliable basis in the knowledge and experience of his experience and discipline, and so, will satisfy the standards for admissibility of expert testimony under Rule of Evidence 702.

45. Rule of Evidence 703, titled "Bases of an Expert's Opinion Testimony", states:

**An expert may base an opinion on facts or data in the case that the expert has been made aware of** or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

[Emphasis added].

46. The Advisory Committee's notes to Rule 703 emphasize that the facts and data upon which expert opinion is based may be derived from any one of three sources. The first is

first-hand observation, and the second method is the use of the familiar hypothetical question or having the expert attend the trial and hear the testimony establishing the facts. The third source, according to the Committee, is: "the presentation of data to the expert outside of court and by his own perception. In this respect, the rule is designed to broaden the basis for expert opinions beyond that current in many jurisdictions, and to bring the judicial practice in line with the practice of the experts themselves when not in court".

47.     Trial courts have considerable discretion to admit expert evidence if it will assist the trier of fact in understanding the evidence and will not usurp the function of the jury and the trial judge. See Gould Paper Corp. v. Boise Cascade Corp., No. 95 Civ. 9771, 2000 WL 1099941 (S.D.N.Y. July 10, 2000)("The Committee Note to the recent amendment of Fed.R.Evid. 702 states that "[a] review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule" ").

48.     It is respectfully submitted that M. Hendricks' testimony should not be excluded, and the ResCap Trust's motion should be denied. See First Union Nat. Bank v. Benham, 423 F.3d 855 (8th Cir. 2005)(holding that disallowing an attorney's expert testimony on the issue of legal malpractice, on grounds that the expert's conclusions were based on his own experience and not the experience of other lawyers, was abuse of discretion, given that the rule governing admissibility of expert testimony allows a witness to qualify as expert based on his own knowledge, skill, experience, training, or education, and that testimony of the attorney, who had been licensed in state for more than 36 years, had practiced extensively in area of mergers and acquisitions, and had based his testimony upon parties' depositions, witnesses, and the facts and circumstances surrounding underlying merger, was not so fundamentally unsupported that it could offer no assistance to the trier of fact).

49.     In Spitzer v. Stichman, 278 F.2d 402 (2d Cir. 1960), a proceeding for reorganization of a corporate debtor which was operating a commuter railroad, the problem of valuation of the railroad was complicated by the possibility that some part or all of the debtor's

commuter railroad plant might be purchased or condemned by a public authority at some indeterminate time in future. The court of appeals held that there was no abuse of discretion by the trial court in permitting an attorney who had handled a great many real estate operations and reorganizations to testify as to his opinion as to maximum price likely to be realized in sale of railroad plant to the public authority. The court specifically reasoned:

> In testing the competency of the witness to give opinion testimony with respect to the highest price which might be obtained from a sale of the railroad, it would have to appear to the trial court: (1) that he had knowledge of the property to be sold; (2) that he had knowledge of the various attendant circumstances and conditions which would affect the disposal of the property and determine the price; and (3) that he had the ability, by reason of his training and experience, to make a judgment which would be helpful to the court in determining the issue. [...].
>
> It appears that Mr. Stichman had knowledge of the historical, political, economic and engineering factors which would affect and determine the price. His career had peculiarly fitted him for the judgment required. There cannot be more than a few men whose qualifications to supply this important evidence to the court even equal Mr. Stichman's.
>
> [Id. at 409].

### B. Mr. Hendricks' Opinion Will Meet The Standards For Admissibility Of Expert Testimony Under Federal Rule Of Evidence 702

50.    The ResCap Trust contends that Mr. Hendricks' report does not meet the standards for admissibility of expert testimony under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) and Rule of Evidence 702.[4]

---

[4] In 2000, Rule 702 of the Federal Rules of Evidence was amended to codify the factors outlined in Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) regarding the admissibility of expert testimony. In Daubert, the Supreme Court announced that trial courts must perform a gate-keeping function in determining the admissibility of expert testimony. The Daubert factors, which were not intended to be exhaustive nor to be applicable in every case, include: (1) whether the technique or theory utilized by the expert can be tested and had been tested; (2) whether the technique or theory had been the subject of peer review and publication; (3) the potential rate of error and "the existence and maintenance of standards controlling the techniques operation;" and (4) the general acceptance of the expert's theory or technique in the relevant scientific community.

51.   The ResCap Trust specifically complains that Mr. Hendricks' report is not relevant so as to assist the trier of fact, and does not use relevant or reliable methods. See ResCap Motion *In Limine* [ECF Doc # 7461].

52.   Based on Mr. Hendricks' expertise on the effect of wrongful and inaccurate credit actions, he weighs in with respect to the improper foreclosure at issue in this litigation, and the effect it had on: the Reeds' credit; the Reeds' efforts to refinance the mortgage at issue and avoid foreclosure; the Reeds' efforts to extract equity from their home; and, the economic and non-economic damages that resulted.

53.   Clearly, his expertise and testimony have relevance to the issues which will be before the Court in light of the Reeds' claims and the damages alleged therein.

54.   As expressly stated by Rule of Evidence 704, "[a]n opinion is not objectionable just because it embraces an ultimate issue". See In re Lake States Commodities, Inc., 271 B.R. 575, 586 (Bkrtcy.N.D.Ill. 2002)("Under F.R.E. 704, the expert's testimony may embrace an ultimate issue to be decided by the trier of fact").

55.   It is respectfully submitted that Mr. Hendricks' reports and testimony will be relevant so as to assist the trier of fact, and have a reliable basis in the knowledge and experience of his discipline, and so, will satisfy the standards for admissibility of expert testimony under Rule of Evidence 702.

56.   Assuming *arguendo* that the report or contemplated testimony of Mr. Hendricks does not strictly satisfy the requirements of Rule 702, his testimony will still aid the Court as the trier of fact and should thus be allowed. See, e.g., In re Best Prods. Co., 168 B.R. 35 (Bankr. S.D.N.Y. 1994)(court used examiner's report as a reference and relied on its analysis of potential claims and related issues in assessing whether a settlement could be approved); In re Ionosphere Clubs, Inc., 156 B.R. 414 (Bankr. S.D.N.Y. 1993)(court relied on the range of the value of the claims identified by examiner to determine whether settlement between debtors and creditors could be considered reasonable); In re FiberMark, Inc., 339 B.R. 321, 325-26 (Bankr. D. Vt.

2006)(noting that even when inadmissible, an expert report allows the parties to make an informed determination of their substantive rights and provides context for debate, and a court can rely on the report for help in understanding facts and legal conclusions when formulating its own conclusions).

57. The Court can determine during the course of Mr. Hendricks' testimony whether his experience and analysis is sufficiently reliable for the issues on which he will be providing testimony. See Enercomp, Inc. v. McCorhill Pub., Inc., 873 F.2d 536 (2d Cir. 1989)(holding that an expert was properly allowed to testify as to the value of a corporate party to merger agreement; the record indicated that the witness had considerable experience in the field of mergers and acquisitions and was qualified to evaluate the corporation's assets, and to the extent that he may have departed from general valuation practices or adopted procedures subject to criticism, there was ample opportunity for such facts to be elicited and argued to the jury); In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717, 744-45 (3d Cir. 1994)("A judge frequently should find an expert's methodology helpful even when the judge thinks that the expert's technique has flaws sufficient to render the conclusions inaccurate. He or she will often still believe that hearing the expert's testimony and assessing its flaws was an important part of assessing what conclusion was correct and may certainly still believe that a jury attempting to reach an accurate result should consider the evidence").

### C. Mr. Hendricks Is Qualified To Weigh In As An Expert On The Issues With Respect To Which He Will Opine

58. Finally, the ResCap Trust contends that Mr. Hendricks is not qualified to weigh in as an expert "on the issues at hand". The Trust does not present any substantive challenge to Mr. Hendricks' experience or suitability, but rather, suggests in cursory fashion that he may not have experience which is relevant to the issues at bar.

59. Mr. Hendricks is an expert on the effect of wrongful and inaccurate credit actions, has testified or been deposed in over fifty state and federal lawsuits, and has provided extensive

testimony before state and federal legislatures and agencies. See November 9, 2011 Report, pgs 15-22 listing experience and qualifications.

60. Mr. Hendricks' reports and testimony address the improper foreclosure at issue in this litigation, and the effect it had on: the Reeds' credit; the Reeds' efforts to refinance the mortgage at issue and avoid foreclosure; the Reeds' efforts to extract equity from their home; and, the economic and non-economic damages that resulted

61. The Court has wide discretion in determining the qualification and competency of a witness to express an opinion as an expert. See generally, U. S. v. Bermudez, 526 F.2d 89 (2d Cir. 1975), certiorari denied 96 S.Ct. 2166, 425 U.S. 970; Gould Paper Corp. v. Boise Cascade Corp., No. 95 Civ. 9771, 2000 WL 1099941 (S.D.N.Y. July 10, 2000); Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 2000 WL 1694321 (S.D.N.Y. Nov. 13, 2000)(admitting expert testimony on banking practice based on expert's experience as in-house counsel to a major bank).

62. A proposed expert's lack of specialization or lengthy experience in certain areas does not go to the admissibility of the expert's opinion, but rather, affects its weight. See e.g. Santana Marine Service, Inc. v. McHale, 346 F.2d 147, 148 (5th Cir. 1965)(holding that District Court was justified in finding that one of the plaintiffs was qualified to testify as an expert, where he testified that he had six years of practical experience in designing, making, and installing lift devices and that he had done considerable home study of recognized scientific treatises in the field); Bank of New York Mellon Trust Co., Nat. Ass'n v. Solstice ABS CBO II, Ltd., 910 F.Supp.2d 629 (S.D.N.Y. 2012)(holding that an investment banking firm officer, who had, since 2001: structured synthetic residential mortgage-backed securities (RMBS) transactions; priced RMBS; and supervised the determination of assumptions used to determine the cash flows from RMBS – had sufficient experience in dealing with RMBS to offer an opinion regarding future RMBS cash flows as it related to an early termination payment under a cash flow swap agreement).

63.     "[T]he 'touchstone' of admissibility is helpfulness to the trier of fact." Werth v. Makita Elec. Works, Ltd., 950 F.2d 643, 648 (10th Cir. 1991). Clearly, in light of his relevant experience, Mr. Hendricks is qualified to testify as an expert. See U.S. S.E.C. v. Zwick, 317 Fed.Appx. 34 (2d Cir. 2008)(holding that expert testimony on broker-dealers' securities transaction markups was admissible in a securities fraud action against broker-dealers, where the expert's testimony as to whether markups were excessive, as would give rise to broker-dealers' fraud liability, was based on the expert's experience in securities industry as a trader and his opinion on what constituted an excessive markup for securities at issue).

## CONCLUSION

Based upon the foregoing, the Reeds respectfully request that this Court deny the ResCap Borrower Claims Trust's Motion *In Limine* to exclude the expert report and testimony of Evan D. Hendricks.

Dated: Moorestown, New Jersey
September 7, 2014

Respectfully Submitted,

By: _____
Frank Reed, *pro se*

By: _____
Christina Reed, *pro se*