# **Exhibit B**

12-12020-mg    Doc 7539-2    Filed 09/15/14    Entered 09/15/14 17:08:47    Exhibit B
Pg 1 of 10

**Exhibit B**

54

# COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                    SUPERIOR COURT
                                                  CIVIL ACTION
                                                  NO. 2010-1074

### ROBERT DESIMONE & another[1]

### vs.

### GMAC MORTGAGE, LLC & others[2]

### MEMORANDUM OF DECISION AND ORDER ON DEFENDANT GMAC MORTGAGE, LLC'S MOTION FOR SUMMARY JUDGMENT

The plaintiffs, Robert ("Robert") and Matina ("Matina") DeSimone (collectively, "DeSimones"), filed this action after defendant GMAC Mortgage, LLC ("GMAC") sought to foreclose on a home mortgage loan Robert obtained in 2007.[3] They now seek relief from GMAC, the current owner of the mortgage note; MortgageIT, Inc. ("MortgageIT"), the original lender; and Mortgage Options of America, Inc. ("Mortgage Options"), the mortgage broker. The DeSimones have asserted the following claims: (1) Count I: Truth in Lending Act (against GMAC and MortgageIT); (2) Count II: Violation of 940 CMR 8.06 (against MortgageIT and Mortgage Options); (3) Count III: Implied Covenant of Fair Dealings and Failure to Supervise (against Mortgage Options); and (4) Count IV: Violation of Consumer Protection Statute Mass. G. L. c. 93A (against GMAC, MortgageIT, and Mortgage Options). The action is now before the court on GMAC's motion for summary judgment as to Count I and Count IV. For the following reasons, the motion is **ALLOWED**.

---

[1] Matina DeSimone
[2] MortgageIT, Inc. and Mortgage Options of America, Inc.
[3] The DeSimones assert that GMAC has misspelled their last name in the motion papers, and that it should be "De Simone." The docket, however, shows the "DeSimone" spelling, and that is the spelling the court will use.

ADD 001

## BACKGROUND

The undisputed and disputed facts, viewed in the light most favorable to the DeSimones as the non-moving parties, are as follows.

At the time of the relevant events, the DeSimones owned a single family home located at 11 Old Village Road in Acton, Massachusetts. The DeSimones sought to refinance their existing mortgage in late 2006. MortgageIT was the lender on the refinance. The refinancing closed on January 30, 2007, at which time Robert signed the following documents: (1) an adjustable rate mortgage with a principal amount of $770,000 ("Note"); (2) a mortgage granting MortgageIT a security interest in the DeSimones' home in Acton ("Mortgage") (together with the Note, the "Loan"); (3) a Notice of Right to Cancel the loan transaction, which notified Robert of a 3-day period to cancel; and (4) a federal Truth-in-Lending disclosure statement. GMAC was the servicer on the Loan, meaning Robert made his Loan payments to GMAC, but MortgageIT owned the Note and the Mortgage.

On February 2, 2007, Robert sent MortgageIT a signed copy of the Notice of Right to Cancel, purporting to cancel the Loan transaction. MortgageIT received this notice from Robert. On February 6, 2007, Robert signed a document titled Affidavit Concerning Right of Rescission ("Rescission Affidavit"), which stated the following:

> I have entered into a *Seven Hundred and Seventy Thousand ($ 770,000.00) Dollar* loan transaction with [MortgageIT] (the "Lender") on January 30, 2007 which may result in a lien, mortgage, or other security interest on my home.
>
> I thought about rescinding this loan because I wouldn't have the funds by February 2, 2007 but have since decided that the loan would be right for me and hereby withdraw any verbal or written rescissions I may have conveyed to the lender, broker or attorney involved with this loan.
>
> Therefore, I hereby waive my previous rescission and accept said loan with all conditions set forth in the accompanied note and mortgage dated January 30, 2007 and do so under the pains and penalties of perjury this 6th day of February, 2007.

2

ADD 002

The executed Rescission Affidavit was provided to MortgageIT, which then disbursed the Loan proceeds in the amount of $770,000.00. Almost half of the proceeds were used to pay off the DeSimones' creditors, and Robert ultimately received $404,566.17. The DeSimones have since spent all the Loan proceeds they received, and are unable at this time to repay the balance of the Note.

GMAC is the current holder of the Note and the Mortgage as Mortgage Electronic Registration Systems, Inc. assigned them to GMAC on August 25, 2009.

## DISCUSSION

**I.    Summary Judgment Standard**

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See Mass. R. Civ. P. 56(c); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively showing that there is no triable issue of fact. See Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party's case or by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. See Kourouvacilis, 410 Mass. at 716. Once the moving party "establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion." Pederson, 404 Mass. at 17. The court reviews the evidence in the light most favorable to the

3

nonmoving party, but does not weigh evidence, assess credibility, or find facts. See Attorney Gen. v. Bailey, 386 Mass. 367, 370–371 (1982).

## II. Analysis

The DeSimones' opposition focuses in large part on the effect of the Rescission Affidavit.[4] They argue that the affidavit did not validly revoke Robert's earlier rescission of the Loan, and therefore that there is no security interest in their home based on the Loan. The court will first deal with this overarching issue, and then address each of the specific claims against GMAC.

### A.    Effect of the Rescission Affidavit

According to the DeSimones, the Rescission Affidavit had no effect because it was a preprinted, not handwritten, form that did not describe any bona fide financial emergency. These requirements apply to forms waiving the right to rescind, though. See 209 Code Mass. Regs. § 32.23(1)(c) (2010) (consumer has right to rescind transaction, and may exercise right "until midnight of the third business day following consummation, delivery of [notice of the right to cancel], or delivery of all material disclosures, whichever occurs last" (internal footnote omitted)).[5] The regulations state as follows regarding waiver of the rescission right:

> The consumer may modify or waive the right to rescind if the consumer determines that the extension of credit is needed to meet a *bona fide* personal financial emergency. To modify or waive the right, the consumer shall give the creditor a dated written statement that describes the emergency, specifically modifies or waives the right to rescind, and bears the signature of all of the consumers entitled to rescind. Printed forms for this purpose are prohibited, except as provided in 209 CMR 32.23(5)(b).[6]

---

[4] It appears that Matina DeSimone lacks standing as a plaintiff based on the fact that she was not a signatory to the Loan. The issue is immaterial given that the court will enter summary judgment in favor of GMAC.

[5] The right to rescind is extended to as long as 4 years after consummation if the notice of right to cancel or material disclosures are not provided. See 209 Code Mass. Regs. § 32.23(1)(c). The DeSimones do not claim that they were not provided with a notice of right to cancel. Further, "material disclosures" means the disclosures discussed below, which were accurately provided. Thus, the DeSimones' right to rescind was not extended beyond the 3-day period.

[6] The exception in 209 Code Mass. Regs. § 32.23(b)(5) does not apply here.

4

209 Code Mass. Regs. § 32.23(5)(a). The Rescission Affidavit did not waive Robert's right to rescind the Loan transaction; rather, it revoked his earlier exercise of that right.

The cases the DeSimones rely on here are inapposite in that the issue in each of those cases was the validity of a consumer's waiver of the rescission right, not the revocation of an already-exercised right to rescind. See Rand Corp. v. Moua, 559 F.3d 842, 846-847 (8th Cir. 2009) (on closing date, consumers signed both notice of right to cancel and confirmation that 3-day rescission period had passed and transaction had not been rescinded; court stated that "[r]equiring borrowers to sign statements which are contradictory and demonstrably false is a paradigm for confusion," and reversed summary judgment in lender's favor); Rodash v. AIB Mtge. Co., 16 F.3d 1142, 1145-1147 (11th Cir. 1994) (summary judgment improperly entered in lenders' favor where at closing, consumer signed both notice of right to cancel and preprinted waiver of right), abrogated on other grounds by Veale v. Citibank, F.S.B., 85 F.3d 577, 580 (11th Cir. 1996).

Because Robert's revocation in the Rescission Affidavit of his earlier rescission of the Loan did not have to meet the requirements of 209 Code Mass. Regs. § 32.23(5)(a), the affidavit was valid and it effectively revoked the earlier rescission.[7] The Loan and Mortgage therefore continue to exist.

B.  Count I: Truth in Lending Act

Under Count I, the DeSimones claim that MortgageIT provided them with an inaccurate Truth-in-Lending disclosure statement during the process of obtaining the Loan, triggering a 4-year period to rescind the mortgage transaction.[8] See 209 Code Mass. Regs. § 32.23(1)(c) (if

---

[7] The DeSimones also cite to a document titled "Compliance HCA Review," produced by GMAC during discovery, which states that "ROR [right of rescission] Waiver must be handwritten by borrower." Again, this document refers only to a waiver of the rescission right. As discussed above, the Rescission Affidavit did not waive the right to rescind, but rather, it revoked Robert's earlier exercise of his right to rescind the transaction.

[8] The DeSimones do not address the effect of Robert's first rescission of the mortgage in early February 2007, i.e., whether he can exercise his right to rescind more than once, particularly after revoking the February 2007 rescission

5

inaccurate disclosures made, "the right to rescind shall expire four years after consummation, upon transfer of all the consumer's interest in the property, or upon sale of the property, whichever occurs first"); see also G. L. c. 140D, § 10(f). They seek to hold GMAC liable for MortgageIT's wrongful conduct based on GMAC's status as an assignee of the Note and Mortgage, originally owned by MortgageIT. This they cannot do.

Under G. L. c. 140D, the Consumer Credit Cost Disclosure Act (i.e., the Massachusetts Truth-in-Lending statute) ("Disclosure Act"), a "borrower is given the same right of rescission against an assignee of an obligation as against the original lender." Mayo v. Key Fin. Servs., Inc., 424 Mass. 862, 865 (1997); see also G. L. c. 140D, § 33(c) ("Any consumer who has the right to rescind a transaction under section ten may rescind the transaction as against any assignee of the obligation."). Thus, Robert's right to rescind the Loan transaction—assuming he could even do so despite having already exercised the right once and then revoked such exercise—as against GMAC depends on whether he could do so as against MortgageIT. This question depends on whether MortgageIT provided Robert with accurate disclosures on any Truth-in-Lending disclosure statement it prepared.

Neither GMAC nor the DeSimones address the accuracy of MortgageIT's Truth-in-Lending disclosures. Based on evidence contained in the entire summary judgment record of this case, however, it is clear that MortgageIT's disclosures were accurate. Specifically, in support of its own summary judgment motion, MortgageIT submitted expert interrogatory answers showing that it will be able to prove at trial that the disclosures on the Truth-in-Lending statement about which the DeSimones complain—a disclosure statement dated January 30, 2007 ("TIL Statement")—were within permissible ranges for each type of disclosure.[9]

---

in what the court has found above to be a valid document.

[9] These interrogatory answers are contained in volume two of the three-volume compilation of exhibits submitted in support of both GMAC's and MortgageIT's motions for summary judgment. The first two volumes relate to MortgageIT's motion while the third relates to GMAC's motion.

According to these answers, the entries for amount financed, finance charge, and total payments were actually overstated on the TIL Statement, and such overstatement does not violate the Massachusetts Consumer Credit Cost Disclosure Act, G. L. c. 140D ("Disclosure Act"). See 209 Code Mass. Regs. § 32.23(7)(a)(2) ("[T]he finance charge and other disclosures affected by the finance charge (such as the amount financed and the annual percentage rate) shall be considered accurate . . . if the disclosed finance charge . . . is greater than the amount required to be disclosed."). The annual percentage rate was understated on the TIL Statement, but only by 0.08%, which is permissible. See 209 Code Mass. Regs. § 32.22(1)(b) (annual percentage rate considered accurate if within 1/8 of one percentage point, i.e., 0.125%, of actual annual percentage rate).

In opposing either GMAC's or MortgageIT's motion for summary judgment, the DeSimones have not submitted any evidence that tends to rebut or disprove the conclusions of MortgageIT's expert. As such, because MortgageIT made accurate disclosures under the Disclosure Act and its regulations, there is no wrongdoing for which GMAC could be liable as an assignee. GMAC is therefore entitled to summary judgment on Count I.

    C.    Count IV: Violation of Consumer Protection Statute Mass. G. L. c. 93A

In their complaint, the DeSimones allege under Count IV that the wrongful conduct asserted under the other counts of the complaint violates G. L. c. 93A. GMAC's liability under this claim is again based on its status as an assignee of MortgageIT. Thus, according to the DeSimones, GMAC is liable for MortgageIT's alleged inaccurate disclosures on the TIL Statement and, apparently, its making of an unaffordable loan.[10] The court disagrees.

---

[10] The DeSimones allege in Count II of the complaint that broker Mortgage Options of America, Inc. obtained an unaffordable loan for Robert, in violation of 940 CMR 9.06. MortgageIT was also named as a defendant under this claim, but, by notice dated July 13, 2010, the court dismissed Count II as against MortgageIT. Under Count IV, though, the DeSimones cite to Commonwealth v. Fremont Inv. & Loan, 452 Mass. 733 (2008), alleging that "[g]ranting a loan which will be unaffordable at or following the introductory payment period is in violation of the consumer protection provisions of G. L. c. 93A." See Fremont, 452 Mass. at 745-746. Thus, reading the complaint

7

It is clear from the evidence before the court that GMAC was not involved in the origination or granting of the Loan.[11] Under Massachusetts law, "[t]he common law principle that the assignee stands in the assignor's shoes means only that the debtor can raise the same defenses against the assignee as he could have raised against the assignor. . . . It has never been interpreted to mean that the assignee will be liable for all the assignor's wrongs." Ford Motor Credit Co. v. Morgan, 404 Mass. 537, 545 (1989).

Numerous courts have interpreted this statement of the law to mean that an assignee of a mortgage loan that was not involved in the underlying conduct cannot be held liable under G. L. c. 93A for that conduct.[12] See, e.g., McBride v. American Home Mtge. Servicing Inc., 2012 WL 931247 at *3-4 (D. Mass. 2012) (assignee not "connected to the alleged improprieties during the loan's origination" and G. L. c. 93A claim "directed at the execution of the initial mortgage" failed as against assignee); In re Riga, 2011 WL 1115084 at *1 (Bankr. D. Mass. 2011) ("A claim under [G. L. c. 93A] against an assignee may not be predicated solely on conduct of the assignor."); McKensi v. Bank of Am., N.A., 2010 WL 3781841 at *3 (D. Mass. 2010) (where wrongful conduct occurred before assignee involved, plaintiff failed to state G. L. c. 93A claim against assignee).

---

broadly in the DeSimones' favor, the court will treat Count IV as asserting that MortgageIT granted an unaffordable loan to Robert.

[11] According to the DeSimones, GMAC was involved with the Loan before 2009, when Mortgage Electronic Registration Systems, Inc. assigned the Note and Mortgage to GMAC. While the DeSimones are correct that GMAC is listed on numerous documents relating to the closing of the Loan, none of those documents list GMAC as an owner or assignee of the Loan. Rather, most of these documents list GMAC as the Loan's servicer. One document, titled "PROOF SHEET" lists GMAC next to "LOSS PAYEE" and "TRANSFER – MORTGAGEE CLAUSE," but there is no indication that either of these means GMAC played a role in originating or making the Loan.

[12] The DeSimones have not alleged that GMAC committed its own unfair or deceptive conduct. See McKensi v. Bank of Am., N.A., 2010 WL 3781841 at *3-4 (D. Mass. 2010) (plaintiff stated claim against assignee under G. L. c. 93A for assignee's own "conduct in proceeding with a foreclosure action when it knew or should have known that the mortgage was legally unenforceable"). Rather, all the wrongful conduct about which the DeSimones complain took place during the origination of the Loan.

8

There is therefore no basis on which to hold GMAC liable as MortgageIT's assignee.

Count IV therefore fails as a matter of law as against GMAC.

### ORDER

Based on the foregoing, it is hereby **ORDERED** that the motion for summary judgment of GMAC Mortgage, LLC be **ALLOWED**.

*Christine M. McEvoy*
Justice of the Superior Court

Dated: May 21, 2012

Entered: 5/22/12