Hearing Date and Time: TBD
Response Date: September 8, 2014, 9:00am EST

Frank Reed
817 Matlack Drive
Moorestown, NJ 08057
Telephone: (856) 956-6950
*Creditor, Pro Se*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

RESIDENTIAL CAPITAL LLC, et al.,

    Debtors.

Case No. 12-12020 (MG)

Chapter 11

Jointly Administered

**OPPOSITION OF CLAIMANTS FRANK J. REED III AND CHRISTINA REED
TO RESCAP BORROWER CLAIMS TRUST'S MOTION *IN LIMINE*
TO EXCLUDE THE EXPERT TESTIMONY OF LOUISE CARTER**

**Proof of Claim Nos.: 3708, 3759, 4736, 4759**

Claimants Frank Reed and Christina Reed (the "Reeds") hereby submit this opposition to The ResCap Borrower Claims Trust's Motion *In Limine* to exclude the expert testimony of Louise Carter. In support of their opposition, the Reeds respectfully state as follows:

**PRELIMINARY STATEMENT**

1. On July 31, 2014, the Reeds identified Louise Carter as an expert whom they anticipate calling at the contested matter claim hearing scheduled to take place on September 15, 2014, as required by the Court's July 29, 2014 Order regarding the exchange of information regarding anticipated fact and expert witnesses. [ECF Doc. # 7314].

2. Ms. Carter is a real estate agent with nearly 30 years of experience in the real estate business and market in southern New Jersey, and is particularly knowledgeable with respect to the history of the property at issue and the local real estate market.

3. The ResCap Trust has filed the instant motion *in limine* seeking to exclude the expert testimony of Ms. Carter. The Trust asserts three arguments in support of its motion to exclude the expert testimony of Louise Carter: (1) the opinion of Ms. Carter is not expert testimony and will not assist the trier of fact; (2) Ms. Carter's report does not meet the standards for admissibility of expert testimony under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993); and (3) Ms. Carter is not qualified to weigh in as an expert "on the issues at hand" because she is not licensed or trained as an appraiser. See generally, ResCap Trust's Motion *In Limine* [ECF Doc. # 7459].

4. Critically, in seeking to exclude Ms. Carter as an expert, the Trust's attack focuses predominantly on a July 2, 2012 letter prepared by Ms. Carter, mischaracterizing the letter as an expert report which does not meet the requirements of Rule of Evidence 702 and Daubert. However, as explained in more detail herein, the July 2, 2012 letter was not actually prepared for or exchanged in this action as an expert report. Rather, the letter was prepared and submitted in connection with the Reeds' claim submission package to the Federal Reserve Board in the

context of its Independent Foreclosure Review. Thus, the Trust's central ground for seeking to exclude Ms. Carter's testimony – the purported deficiencies of the July 2, 2012 letter per F.R.E. 702 and Daubert – is wholly misplaced.

5.  It is respectfully submitted that Ms. Carter should be allowed to provide testimony as an expert, and that the Court, as the trier of fact in the coming bench trial, is more than capable of discerning relevant expert evidence, weighing its probative value versus its prejudicial effect, and excluding improper inferences, if any, from its decisional analysis.

6.  First, contrary to the ResCap Trust's argument, Ms. Carter's expert testimony will assist the Court in assessing the facts and purported damages relevant to the Reeds' claims. She is a highly-experienced real estate agent who is intimately familiar with the real estate market local to the subject property, and has first-hand knowledge of the sales history of the property, including appraisals performed multiple times over the past six years and while the property was on the market, as well as the evolution of the asking price and offers relevant thereto.

7.  Second, Ms. Carter's opinion will meet the standards for admissibility of expert testimony under Daubert, Federal Rule of Evidence 702, and relevant case law. As noted, in arguing that Ms. Carter's "report" does not meet the admissibility standards of Daubert and Rule 702, and concluding that her "report" and testimony should therefore be excluded, the ResCap Trust conveniently ignores the fact that, while Ms. Carter was identified by the Reeds as an expert whom they intend to call at the September 15, 2014 hearing in this contested matter, the July 2, 2012 letter about which they complain and on which they primarily focus was provided in this bankruptcy (over a year ago) as part of the Reeds' claim submission. Indeed, the letter was actually prepared in July 2012 in connection with the Reeds' submission of a claim to the Federal Reserve Board's Independent Foreclosure Review. The July 2, 2012 letter was part of the Reeds' FRB claim package – it was not prepared as an expert report under the auspices of state or federal rules of evidence, a fact which the ResCap Trust overlooks in latching on to and extensively attacking the letter as being a deficient 'expert report' under Rule 702 and Daubert.

8.   The ResCap Trust also overlooks the fact that, in contested matters, there is no duty to provide or exchange written expert reports, unless otherwise directed by the court. See Fed. R. Bankr. P. 9014(c); Fed. R. Civ. P. 26(a)(2)(B). Here, the Court did not direct that the parties exchange written expert reports. [ECF Doc. # 7314].

9.   The July 2, 2012 letter was clearly not prepared or submitted as a Rule 26(a)(2)(B) expert report, contrary to the Trust's convenient assumption otherwise. As discussed below, Ms. Carter's anticipated opinion and testimony will satisfy the standards for admissibility of expert testimony under Rule of Evidence 702 and relevant case law.

10.  Third, Ms. Carter is indeed qualified to weigh in as an expert on the issues with respect to which she will opine – namely, issues of property value, marketability, and the effect of foreclosure on market value. Ms. Carter is a real estate agent at B.T. Edgar & Son, located in Moorestown, New Jersey.[1] She has been a real estate agent in Moorestown since 1986, and has 28 years of experience in the industry. Ms. Carter has an impeccable reputation in the industry, and has been a longtime member of the National Association of Realtors, the New Jersey Association of Realtors, and the Burlington-Camden County Association of Realtors. In addition, she attained a GRI designation (Graduate, Realtor Institute) in 2000.[2] Moreover, Ms. Carter is vastly familiar with the local real estate market and with the history of the specific property in question. Ms. Carter is clearly qualified to supply expert opinion to the Court with respect to issues of property value, marketability, and the effect of foreclosure on market value.

11.  Accordingly, it is respectfully submitted that exclusion of the testimony of Louise Carter as an expert is not warranted and the ResCap Trust's motion should be denied.

**BACKGROUND**

---

[1] Moorestown is the same New Jersey township in Burlington County within which the property at issue in this litigation is located (817 Matlack Drive).

[2] The Realtor Institute is a national program of real estate instruction administered by State Realtor Associations whose course of study meets the accreditation standards established by the National Association of Realtors.

### A. General Background

12. On May 14, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of title 11 of the United States Code.

13. On May 16, 2012, the United States Trustee for the Southern District of New York appointed a nine member official committee of unsecured creditors.

14. On December 11, 2013, the Court entered an order confirming the Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors [ECF Doc. # 6065].

15. On December 17, 2013, the Effective Date (as defined in the Plan) of the Plan occurred and the Plan was substantially consummated. The Plan provides for the establishment of the Trust to, among other things, administer, reconcile and provide a distribution to holders of Allowed Borrower Claims as defined in the Plan.

### B. The Reeds' Claims

16. The Reeds' Claims are based on two related prepetition lawsuits filed in New Jersey state court: (1) a foreclosure action filed by GMAC Mortgage, LLC ("GMACM") on May 19, 2008 (the "Foreclosure Action") and (2) a lawsuit filed by the Reeds against GMACM and RFC on May 10, 2010, arising from the wrongful Foreclosure Action and damages resulting therefrom (the "Reed Action").

17. The Foreclosure Action was dismissed without prejudice because GMACM could not and did not provide a scintilla of evidence that it complied with the New Jersey Fair Foreclosure Act's (the "FFA") requirement that is serve the Reeds with a pre-foreclosure Notice of Intent to Foreclose ("NOI").

18. Thereafter, the Reeds filed a lawsuit against GMACM and RFC, alleging damages for wrongful foreclosure (based upon GMACM's failure to send an NOI), negligence, breach of contract and estoppel. GMACM and RFC filed a motion to dismiss the Reed

Complaint for failure to state a claim with respect to the asserted causes of action, which the New Jersey court denied in July 2010.

19. The Reeds were then permitted to file an amended complaint on January 6, 2012, adding claims for economic and non-economic losses stemming from the Foreclosure Action, punitive damages, and consumer fraud. The additional claims also survived attack and opposition by GMACM and RFC.

20. The Reeds voluntarily dismissed their lawsuit on February 9, 2012, so that they could participate in the Federal Reserve Board's (the "FRB") Independent Foreclosure Review.

21. The Reeds filed Proofs of Claim Nos. 3708, 3759, 4736 and 4759 against GMACM and RFC in the context of the bankruptcy proceeding before this Court, seeking relief in the form of damages resulting from the debtors' wrongful actions.

22. The Reeds provided substantial supplemental documentation and exhibits in support of their claims in July 2013, and again in response to the Trust's Objection [ECF Doc. # 7153].

### C. Procedural History of Contested Matter

23. On May 29, 2014, the Debtors filed the Trust's Objection to Proofs of Claim Filed by Frank and Christina Reed [ECF Doc. # 7017 and 7018] (the "Objection").

24. On June 19, 2014, the Reeds filed a response to the Objection [ECF Doc. # 7153].

25. On July 3, 2014, the Trust filed a reply to the Reeds' response [ECF Doc. # 7228].

26. On July 9, 2014, the Court held a hearing with respect to the Objection.

27. Frank Reed, acting *pro se*, and counsel for the ResCap Borrower Claims Trust appeared before the Court for a July 9, 2014 hearing, during which the Court heard argument and made preliminary rulings pending issuance of its Order and decision.

28. On July 11, 2014, the Court entered an Order sustaining in part and overruling in part the Trust's Objection to the Reeds' Claims and concluding that the Objection presents a

contested matter. [ECF Doc. # 7246]. The July 11, 2014 Order scheduled an evidentiary hearing with respect to the remaining claims for September 15 and 16, 2014.

29. On July 29, 2014, the Court entered an Order requiring that the parties exchange information regarding anticipated fact and expert witnesses by July 31, 2014. [ECF Doc. # 7314].

30. The Reeds identified Louise Carter as an anticipated expert witness on or about July 31, 2014.

31. The Trust took the deposition of Louise Carter on August 7, 2014.

32. The ResCap Trust filed the instant motion on August 29, 2014.

## ARGUMENT

33. It is well-settled that a district court judge has wide discretion in determining the qualification and competency of a witness to express an opinion as an expert. See generally, U.S. v. Bermudez, 526 F.2d 89 (2d Cir. 1975), certiorari denied 96 S.Ct. 2166, 425 U.S. 970; U.S. v. Green, 523 F.2d 229 (2d Cir. 1975), certiorari denied 96 S.Ct. 858, 423 U.S. 1074.

34. As a threshold matter, in the impending bench trial, the Court's role as gatekeeper with respect to expert evidence is much less critical than in a jury trial, since a judge is "presumed to be able to exclude improper inferences from his or her own decisional analysis." Rondout Valley Cent. Sch. Dist. v. Coneco Corp., 321 F. Supp. 2d 469, 473-74 (N.D.N.Y. 2004). This Court is, of course, perfectly capable of discerning relevant evidence, weighing its probative value versus its prejudicial effect, and rejecting improper inferences or intrusions upon its role. See Henry v. Champlain Enters. Inc., 288 F. Supp. 2d 202, 221 (N.D.N.Y. 2003)(a trial court should be able to separate the "wheat from the chaff"); see also Rondout, 321 F. Supp. 2d at 474 ("In non jury cases the district court can commit reversible error by excluding evidence but it is almost impossible for it to do so by admitting evidence.")(quoting 11 Charles A. Wright & Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2885 (2d ed. 1995)). See also Arista Records Inc. v. Launch Media, Inc., 2006 WL 2591086 (S.D.N.Y. Sept. 8,

2006)(finding motions to exclude expert testimony and reports "premature [...], as issues pertaining to the expert witnesses are more appropriately addressed and resolved during the course of the trial").

### A. Ms. Carter's Expert Testimony Will Assist The Court

35.     The ResCap Trust contends that the expert testimony of Louise Carter should be excluded because her opinion is not expert testimony and will not assist the trier of fact – in this instance, the Court.

36.     In taking this position, the Trust focuses almost exclusively on the contents of the one-page letter, dated July 2, 2012, which Ms. Carter prepared for the Reeds' submission of their claim materials to the Federal Reserve Board for its Independent Foreclosure Review. As noted, the Trust's focus on and attack on Ms. Carter's July 2, 2012 letter is misplaced since the letter was not an expert report prepared or exchanged under the F.R.E. or F.R.C.P.

37.     Ms. Carter was identified by the Reeds as a possible expert witness as required by the Court's order, with anticipated opinion bearing on issues of marketability, property value and the effect of foreclosure on market value.. In making the instant motion, the ResCap Trust has cherry-picked the July 2, 2012 letter and treats it as Ms. Carter's comprehensive expert report – this is simply not the case.

38.     Rule of Evidence 702, titled "Testimony by Expert Witness", states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

39. "Federal Rule of Evidence 702 permits a district court to allow the testimony of a witness whose knowledge, skill, training, experience or education will assist a trier of fact in understanding an area involving specialized subject matter." United States v. Molina, 172 F.3d 1048, 1056 (8th Cir. 1999).

40. Ms. Carter's expert testimony will assist the Court in assessing the facts, the southern New Jersey real estate market, and the purported damages relevant to the Reeds' claims. She is a highly-experienced real estate agent who is intimately familiar with the real estate market local to the subject property, and has first-hand knowledge of the history of the property, including appraisals performed at various times that the property was on the market, as well as the evolution of the asking price and offers relevant thereto.

41. Notably, Rule of Evidence 703, titled "Bases of an Expert's Opinion Testimony", states:

> **An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed.** If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

[Emphasis added].

42. The Advisory Committee's notes to Rule 703 emphasize that the facts and data upon which expert opinion is based may be derived from any one of three sources. The first is first-hand observation, and the second method is the use of the familiar hypothetical question or having the expert attend the trial and hear the testimony establishing the facts. The third source, according to the Committee, is: "the presentation of data to the expert outside of court and by his own perception. In this respect, the rule is designed to broaden the basis for expert opinions beyond that current in many jurisdictions, and to bring the judicial practice in line with the practice of the experts themselves when not in court".

43. Trial courts have considerable discretion to admit expert evidence if it will assist the trier of fact in understanding the evidence and will not usurp the function of the jury and the trial judge. See Gould Paper Corp. v. Boise Cascade Corp., No. 95 Civ. 9771, 2000 WL 1099941 (S.D.N.Y. July 10, 2000)("The Committee Note to the recent amendment of Fed.R.Evid. 702 states that "[a] review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule" ").

44. In light of Ms. Carter's extensive and lengthy experience as a real estate agent specializing in residential property generally, her extensive and lengthy experience with the southern New Jersey real estate market specifically, and her knowledge and familiarity with the particular residential property at issue, is it respectfully submitted that her testimony will assist the trier of fact in understanding the purported facts, evidence and claims relevant to this matter.

45. This being so, her testimony should not be excluded, and the ResCap Trust's motion should be denied. See First Union Nat. Bank v. Benham, 423 F.3d 855 (8th Cir. 2005)(holding that disallowing an attorney's expert testimony on the issue of legal malpractice, on grounds that the expert's conclusions were based on his own experience and not the experience of other lawyers, was abuse of discretion, given that the rule governing admissibility of expert testimony allows a witness to qualify as expert based on his own knowledge, skill, experience, training, or education, and that testimony of the attorney, who had been licensed in state for more than 36 years, had practiced extensively in area of mergers and acquisitions, and had based his testimony upon parties' depositions, witnesses, and the facts and circumstances surrounding underlying merger, was not so fundamentally unsupported that it could offer no assistance to the trier of fact).

46. In Spitzer v. Stichman, 278 F.2d 402 (2d Cir. 1960), a proceeding for reorganization of a corporate debtor which was operating a commuter railroad, the problem of valuation of the railroad was complicated by the possibility that some part or all of the debtor's commuter railroad plant might be purchased or condemned by a public authority at some

indeterminate time in future. The court of appeals held that there was no abuse of discretion by the trial court in permitting an attorney who had handled a great many real estate operations and reorganizations to testify as to his opinion as to maximum price likely to be realized in sale of railroad plant to the public authority. The court specifically reasoned:

> In testing the competency of the witness to give opinion testimony with respect to the highest price which might be obtained from a sale of the railroad, it would have to appear to the trial court: (1) that he had knowledge of the property to be sold; (2) that he had knowledge of the various attendant circumstances and conditions which would affect the disposal of the property and determine the price; and (3) that he had the ability, by reason of his training and experience, to make a judgment which would be helpful to the court in determining the issue. [...].
>
> It appears that Mr. Stichman had knowledge of the historical, political, economic and engineering factors which would affect and determine the price. His career had peculiarly fitted him for the judgment required. There cannot be more than a few men whose qualifications to supply this important evidence to the court even equal Mr. Stichman's.
>
> [Id. at 409].

47.    Similarly here, Ms. Carter has substantial knowledge of the property at issue, she has knowledge of the various attendant circumstances and conditions which would affect the sale of the property and determine the price, and she has the ability, by reason of her training and experience, to make a judgment which would be helpful to the Court in determining facts and issues relevant to the Reeds' claims.

### B. Ms. Carter's Opinion Will Meet The Standards For Admissibility Of Expert Testimony Under Federal Rule Of Evidence 702

48.    The ResCap Trust contends that Ms. Carter's "report" does not meet the standards for admissibility of expert testimony under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) and Rule of Evidence 702.[3]

---

[3] In 2000, Rule 702 of the Federal Rules of Evidence was amended to codify the factors outlined in Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) regarding the admissibility of expert testimony. In Daubert, the Supreme Court announced that trial courts must perform a gate-keeping function in determining the admissibility of expert testimony. The Daubert factors, which were not intended to be exhaustive nor to be applicable in every case,

49. In arguing that Ms. Carter's "report" does not meet the admissibility standards of Daubert and Rule 702 and should therefore be excluded, the ResCap Trust conveniently ignores the fact that, while Ms. Carter was identified by the Reeds as an expert whom they intend to call at the September 15, 2014 trial/hearing in this contested matter, the letter about which they complain was provided in this bankruptcy more than one year ago as part of the Reeds' claim submission. In fact, the letter was prepared in July 2012 in the context of the Reeds' submission of a claim to the Federal Reserve Board.

50. By singling out and attacking the July 2, 2012 letter summary as being a deficient expert report under Rule 702 and Daubert, the ResCap Trust erroneously overlooks the fact that in contested matters there is no duty to provide or exchange written expert reports. See Fed. R. Bankr. P. 9014(c); Fed. R. Civ. P. 26(a)(2)(B). The July 2, 2012 letter was not prepared or submitted as a Rule 26(a)(2)(B) expert report.

51. Ms. Carter's anticipated opinion and testimony will satisfy the standards for admissibility of expert testimony under Rule of Evidence 702 and relevant case law.

52. Assuming *arguendo* that the contemplated testimony of Ms. Carter does not strictly satisfy the requirements of Rule 702, her testimony will still aid the Court as the trier of fact and should thus be allowed in light of her many years of experience in the buying and selling of residential property, and her intimate knowledge of the local market as well as the history of the subject property in particular. See, e.g., In re Best Prods. Co., 168 B.R. 35 (Bankr. S.D.N.Y. 1994)(court used examiner's report as a reference and relied on its analysis of potential claims and related issues in assessing whether a settlement could be approved); In re Ionosphere Clubs, Inc., 156 B.R. 414 (Bankr. S.D.N.Y. 1993)(court relied on the range of the value of the claims identified by examiner to determine whether settlement between debtors and creditors could be

---

include: (1) whether the technique or theory utilized by the expert can be tested and had been tested; (2) whether the technique or theory had been the subject of peer review and publication; (3) the potential rate of error and "the existence and maintenance of standards controlling the techniques operation;" and (4) the general acceptance of the expert's theory or technique in the relevant scientific community.

considered reasonable); In re FiberMark, Inc., 339 B.R. 321, 325-26 (Bankr. D. Vt. 2006)(noting that even when inadmissible, an expert report allows the parties to make an informed determination of their substantive rights and provides context for debate, and a court can rely on the report for help in understanding facts and legal conclusions when formulating its own conclusions).

53. The Court can determine during the course of Ms. Carter's testimony whether the methodology she uses in discussing the market value, marketability and damages assessment is sufficiently reliable. See Marini v. Adamo, 2014 WL 465036 (E.D.N.Y. 2014)(holding that an expert's methodology for determining the valuation of error coins was sufficiently reliable to warrant admission of the expert's testimony in rare coin buyers' fraud action against sellers, despite the subjective component to valuing coins, inconsistent markup, and the difficulty of pricing coins with limited supply, where the expert primarily determined a coin's value by looking at auction records for similar coins and then using his expertise to determine if the coin ought to be valued higher or lower depending on market's strength at time of sale versus time of appraisal, and an added markup to determine retail value); Enercomp, Inc. v. McCorhill Pub., Inc., 873 F.2d 536 (2d Cir. 1989)(holding that an expert was properly allowed to testify as to the value of a corporate party to merger agreement; the record indicated that the witness had considerable experience in the field of mergers and acquisitions and was qualified to evaluate the corporation's assets, and to the extent that he may have departed from general valuation practices or adopted procedures subject to criticism, there was ample opportunity for such facts to be elicited and argued to the jury); In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717, 744-45 (3d Cir. 1994)("A judge frequently should find an expert's methodology helpful even when the judge thinks that the expert's technique has flaws sufficient to render the conclusions inaccurate. He or she will often still believe that hearing the expert's testimony and assessing its flaws was an important part of assessing what conclusion was correct and may certainly still believe that a jury attempting to reach an accurate result should consider the evidence").

### C. Ms. Carter Is Qualified To Weigh In As An Expert On The Issues With Respect To Which She Will Opine

54. Finally, the ResCap Trust contends that Ms. Carter is not qualified to weigh in as an expert "on the issues at hand". Specifically, the Trust finds fault with the fact that Ms. Carter is not trained or licensed as real estate appraiser and has never provided testimony as an appraiser, concluding that she is therefore not qualified to opine as to the value of a residential home. See ResCap Trust Motion, pg 12 of 13 [ECF Doc. # 7459].

55. What is missing from the Trust's protestations is any legal authority or citation whatsoever, or even a reasoned explanation, supporting its bare conclusion that only a licensed appraiser may provide expert testimony touching on the value of a residential home or on damages related thereto.

56. On the contrary, Ms. Carter's 28-years of experience as a real estate agent intimately involved in the buying and selling of residential homes in the geographic area relevant to this matter more than qualifies her to weigh in on the valuation of the Reed property during the pertinent time frame. Furthermore, the Trust ignores that fact that Ms. Carter's opinions and conclusions are and will be largely based on actual appraisals (by licensed appraisers) that were performed on the subject property, and not simply or purely based her own bare or arbitrary estimation of the property value or change in value.

57. Simply stated, the fact that Ms. Carter is a real estate agent and not a licensed or trained appraiser does not preclude her from offering expert testimony with respect to the value of a residential home, or from offering expert testimony on issues of market value, marketability and damages assessment. See Plywood Property Associates v. National Flood Ins. Program, 928 F.Supp. 500, 508 (D.N.J. 1996)("Prior qualification as an expert witness, specialized degrees, licenses or publications in their field, while all commendable, are not required to be possessed by every witness acting as an expert"); McCullock v. H.B. Fuller Co., 61 F.3d 1038 (2d Cir. 1995)(holding that consulting engineer's extensive practical experience established his qualifications to testify as expert in products liability action against manufacturer of hot-melt

glue on issue of whether plaintiff was within "breathing zone" of glue fumes in workplace; manufacturer's objection to engineer's alleged lack of formal education with regard to fume dispersal patterns or experience in interpreting air quality studies went to weight rather than admissibility of engineer's testimony); N. V. Maatschappij Voor Industriele Waarden v. A. O. Smith Corp., 590 F.2d 415 (2d Cir. 1978)(noting that, in an action to recover for breach of a license agreement, in which the only issue was whether technical information conveyed by the patentee infringed on other patents, trial court erred in refusing to qualify as an expert a patent agent with considerable experience in the relevant art merely because of the expert's lack of formal training in patent law).

58.   Federal courts have allowed persons to testify as expert witnesses even though they did not possess certificates of training or education, memberships in professional organizations, and may not have been the most outstanding practitioners in their fields. See United States v. Barker, 553 F.2d 1013, 1024 (6th Cir. 1977). In general, the fact that an expert does not have a degree or license in his or her professed specialty goes to the weight of his or her testimony rather than its admissibility. See United States v. Bilson, 648 F.2d 1238, 1239 (9th Cir. 1981).

59.   Indeed, in one products liability case, the court found that a proposed expert's lack of specialization in certain areas of engineering does not go to the admissibility of the expert's opinion, but rather, affects its weight. See Lappe v. American Honda Motor Co., 857 F.Supp. 222, 227 (N.D.N.Y. 1994). See also Bowser v. Publicker Industries, 101 F.Supp. 386 (D.C.Pa. 1951)(holding that while fact that an expert witness was not a registered electrical engineer was proper for jury to consider in connection with the value of his opinions and the weight to be given them, it did not make him incompetent to testify in support of a charge of negligence resulting in death by electrocution when electric current arced from a high tension line to the cable of crane nor did it require that his testimony to be stricken out); Santana Marine Service, Inc. v. McHale, 346 F.2d 147, 148 (5th Cir. 1965)(holding that District Court was justified in

finding that one of the plaintiffs was qualified to testify as an expert, where he testified that he had six years of practical experience in designing, making, and installing lift devices and that he had done considerable home study of recognized scientific treatises in the field – "A person may become qualified as an expert by practical experience and home study. Professional education is not a prerequisite"); Southern Cement Co., Division of Martin-Marietta Corp. v. Sproul, 378 F.2d 48, 49-50 (5th Cir. 1967)(in an action for damages arising from the loss of water in plaintiff's wells as consequence of defendant's limestone mining operations, the Court of Appeals held that plaintiff's expert was properly allowed despite the fact that the expert had not mined limestone or worked in mine of same size as that operated by defendants – he had practical experience in mining for many years including experience as mine superintendent and in blasting – the issues raised by the defendants went to the weight of his testimony and not to its admissibility); Bank of New York Mellon Trust Co., Nat. Ass'n v. Solstice ABS CBO II, Ltd., 910 F.Supp.2d 629 (S.D.N.Y. 2012)(holding that an investment banking firm officer, who had, since 2001: structured synthetic residential mortgage-backed securities (RMBS) transactions; priced RMBS; and supervised the determination of assumptions used to determine the cash flows from RMBS – had sufficient experience in dealing with RMBS to offer an opinion regarding future RMBS cash flows as it related to an early termination payment under a cash flow swap agreement).

60.    "[T]he 'touchstone' of admissibility is helpfulness to the trier of fact." Werth v. Makita Elec. Works, Ltd., 950 F.2d 643, 648 (10th Cir. 1991). "Moreover, 'a lack of specialization does not affect the admissibility of the [expert's] opinion but only its weight,'" Wheeler v. John Deere Co., 935 F.2d 1090, 1100 (10th Cir. 1991), although 'a[n expert] must have skill in the matter to which the subject relates.' Id. (quoting Petition of Central Kansas Elec. Co-op, Inc., 224 Kan. 308, 582 P.2d 228, 236 (1978)). "An expert must, however, stay within the reasonable confines of his subject area and cannot render expert opinions of an entirely different field or discipline." Wheeler, 935 F.2d at 1100. An expert, relying upon his experience

and knowledge of causation factors, may express an opinion which draws a rational conclusion as to causation. Orth v. Emerson Elec. Co., White–Rodgers Div., 980 F.2d 632, 637 (10th Cir.1992). "Absolute certainty is not required." Id. See also Rich v. Ellerman & Bucknall S.S. Co., 278 F.2d 704, 707-08 (2d Cir. 1960)(looking with disfavor on the trial court's exclusion of testimony of potential expert witnesses where they had many years' experience in the field – "The rulings on evidence, while perhaps not sufficient in themselves for reversal, are justly criticized as unduly restrictive of plaintiff's proof. Some expert testimony was finally allowed to stand, yet testimony of the plaintiff, Venable and Tolbert as to the customary practice of chassis stowage was excluded, despite their many years' experience in the field. The witnesses were sufficiently qualified").

61. Clearly, in light of her considerable and relevant experience, Ms. Carter is qualified to testify as an expert. See U.S. S.E.C. v. Zwick, 317 Fed.Appx. 34 (2d Cir. 2008)(holding that expert testimony on broker-dealers' securities transaction markups was admissible in a securities fraud action against broker-dealers, where the expert's testimony as to whether markups were excessive, as would give rise to broker-dealers' fraud liability, was based on the expert's experience in securities industry as a trader and his opinion on what constituted an excessive markup for securities at issue); Rich v. Ellerman & Bucknall S.S. Co., 278 F.2d 704 (2d Cir. 1960)(in longshoreman's action for injuries, testimony of plaintiff's experts as to customary practice of chassis stowage was improperly excluded where the witnesses were sufficiently qualified in view of their many years of experience in the field); Tropea v. Shell Oil Co., 307 F.2d 757 (2d Cir. 1962)(holding that a witness who had operated gasoline service stations, selling various brands of gasoline, in a number of locations in the New York metropolitan area for approximately 20 years, was competent to testify as to the customs of the trade in disposing of waste fluid pumped from fuel storage tanks); SR Intern. Business Ins. Co., Ltd. v. World Trade Center Properties, LLC, 467 F.3d 107 (2d Cir. 2006)(concluding that the District Court did not abuse its discretion in determining that a witness with over 31 years in the

property insurance industry as both a broker and an underwriter was qualified by virtue of his experience to testify, as an expert, that it was the custom and practice of insurers to interpret "per occurrence" clauses to maximize the number of occurrences and thus the per-occurrence deductibles payable by an insured, notwithstanding that he was unaware of any instance where his understanding of this custom and practice had been applied to coverage for destruction caused by terrorism as in case at bar); King v. Deutsche Dampfs-Ges, 523 F.2d 1042 (2d Cir. 1975)(concluding that the trial court did not abuse its discretion in allowing a supervisor of a marine carpenter to give his opinion as to what constituted proper stowage of beams forming a superdeck in hatch, despite the contention that he was not qualified as an expert with respect thereto since he was not a longshoreman, where he had worked with stowed cargo for 28 years and had ample opportunity to observe that it was possible to fit steel beams together tightly so as to avoid a gap such as that into which carpenter fell).

## CONCLUSION

Based upon the foregoing, the Reeds respectfully request that this Court deny the ResCap Borrower Claims Trust's Motion *In Limine* to exclude the expert testimony of Louise Carter.

Dated: Moorestown, New Jersey
September 7, 2014

Respectfully Submitted,

By: _____
Frank Reed, *pro se*

By: _____
Christina Reed, *pro se*