Hearing Date and Time:  TBD
Response Deadline:  TBD

Frank Reed
817 Matlack Drive
Moorestown, NJ 08057
Telephone:  (856) 956-6950
*Creditor, Pro Se*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | Case No.  12-12020  (MG) |
| RESIDENTIAL CAPITAL LLC et al., | Chapter 11 |
| Debtors. | Jointly Administered |

## MOTION FOR JUDGMENT AS TO LIABILITY ON CLAIMS FOR NEGLIGENCE, NEW JERSEY CONSUMER FRAUD ACT AND PUNITIVE DAMAGES

**Proof of Claim Nos.:  3708, 3759, 4736, 4759**



RECEIVED
SEP 1 5 2014
U.S. BANKRUPTCY COURT, SDNY

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

Frank Reed and Christina Reed (the "Reeds") hereby respectfully move the Court

pursuant to Federal Rule of Bankruptcy Procedure §§ 9013, 9014(a) and 7056 for judgment as a

matter of law as to liability against the ResCap Borrower Claims Trust ("ResCap Trust") on the

Reeds' claims for negligence, breach of the New Jersey Consumer Fraud Act and punitive

damages.

## PRELIMINARY STATEMENT

1.      It is respectfully submitted that judgment against the ResCap Trust as to liability

on the Reeds' claims for negligence, breach of the New Jersey Consumer Fraud Act (the "CFA")

and punitive damages is warranted on the ground that, all other issues aside,[1] it is an undisputed

and irrefutable fact that GMAC Mortgage LLC ("GMACM") did not have standing to file its

May 19, 2008 foreclosure action against the Reeds as a matter of law, contrary to its many

representations otherwise, both in its original and amended foreclosure complaints and in this

current bankruptcy litigation and contested matter.

2.      The Trust currently asserts that GMACM had standing to file the foreclosure as a

result of an assignment of the mortgage to GMACM by MERS, as nominee for Metrocities

Mortgage, LLC.  See ResCap Trust Pre-Trial Memorandum, pg.12 [ECF Doc. # 7494].[2]

---

[1] In addition to the claims addressed herein, the Reeds maintain numerous other claims against the ResCap Trust, including: negligence premised on acts and omissions other than those at issue in this motion (the failure to send the Reeds pre-foreclosure notice as required by law and contract; filing of foreclosure complaint without verifying that actual pre-foreclosure notice had been given to the Reeds; the continued prosecution of the foreclosure suit under overturned law; the failure to honor the loan modification; the failure to remove the lis pendens despite the associated foreclosure's dismissal); fraud; and, breach of contract.

[2] By way of brief background, GMACM's original May 16, 2008 complaint against the Reeds, filed on May 19, 2008, contained the false statement that "On or before the date the within complaint was drafted, the plaintiff herein [GMACM] became the owner of the note and mortgage being foreclosed herein".  See GMACM Complaint at ¶ 4 [ECF Doc. # 7017-6, pg 21 of 103].  GMACM later filed an amended complaint, rescinding its statement that it owned the note and mortgage, and instead alleged that it was assigned the mortgage by MERS as nominee for Metrocities Mortgage, LLC.  The Trust maintains this position.

3.      However, the Trust's position and arguments must fail as a matter of law because GMACM filed the foreclosure action against the Reeds **BEFORE** the assignment of mortgage to GMACM even occurred. The foreclosure lawsuit was filed on May 19, 2008, yet the assignment of mortgage did not take place until May 22, 2008. See Assignment of Mortgage [ECF Doc. # 7017-6, pg 84 of 103].

4.      Thus, it is an undisputable fact that GMACM did not have standing to file the foreclosure action against the Reeds when it filed the lawsuit on May 19, 2008. The ResCap Trust has failed to adduce ANY evidence that GMACM had standing to file the wrongful foreclosure at the time of, or prior to, the filing. This being so, the Reeds are entitled to judgment as a matter of law with respect to their claims for negligence, violation of the CFA and for punitive damages, as discussed further below.

5.      It is respectfully submitted that GMACM's filing of a foreclosure complaint without any authority or standing to do is *prima facie* evidence of negligence, of violation of the CFA, and of the Reeds' entitlement to punitive damages. This *prima facie* evidence is unrebutted by anything in the record.

6.      Furthermore, even if the assignment of mortgage had taken place prior to GMACM's wrongful filing of the foreclosure – which it clearly did not – GMACM would still be without standing to file the lawsuit. In order to have standing to file a foreclosure action under New Jersey law, a party must prove by a preponderance of the evidence that it is either: the holder in possession of the Note; or, a non-holder in possession with the rights of the holder of the note, and, must be the assignee of the mortgage.

7.      Here, GMACM was neither. GMACM only had an assignment of the mortgage, but there was no transfer or possession of the note. This being so, GMACM did not have standing to file the wrongful lawsuit against the Reeds as a matter of New Jersey law. The Trust has failed to offer ANY competent evidence (for over six years!) that the note was transferred to or possessed by GMACM.

8.       During the July 9, 2014 objection hearing before the Court, the ResCap Trust's counsel erroneously stated that, "[i]n order for us to have standing to commence the action in New Jersey, we would have had to have had the mortgage assigned to us, which we did." See July 9, 2014 Hearing Transcript, 86:4-7. Even if the Trust's counsel's statement of the law is correct – which it is not (see ¶¶ 6-7) – the point is moot since the mortgage assignment post-dates the filing of the foreclosure (see ¶¶ 3-5).

9.       Accordingly, judgment against the ResCap Trust as to liability on the Reeds' claims for negligence, breach of the CFA and punitive damages is warranted since it is an undisputed and irrefutable fact that GMACM did not have standing to file its May 2008 foreclosure action against the Reeds as a matter of law.

## BACKGROUND

### A. General Background

10.       On May 14, 2012, each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of title 11 of the United States Code.

11.       On May 16, 2012, the United States Trustee for the Southern District of New York appointed a nine member official committee of unsecured creditors.

12.       On December 11, 2013, the Court entered an order confirming the Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors [ECF Doc. # 6065].

13.       On December 17, 2013, the Effective Date (as defined in the Plan) of the Plan occurred and the Plan was substantially consummated. The Plan provides for the establishment of the Trust to, among other things, administer, reconcile and provide a distribution to holders of Allowed Borrower Claims as defined in the Plan.

### B. The Reeds' Claims

14.       The Reeds' Claims are based on two related prepetition lawsuits filed in New Jersey state court: (1) a foreclosure action filed by GMAC Mortgage, LLC ("GMACM") on

May 19, 2008 (the "Foreclosure Action") and (2) a lawsuit filed by the Reeds against GMACM

and RFC on May 10, 2010, arising from the wrongful Foreclosure Action and damages resulting

therefrom (the "Reed Action").

15.    The Foreclosure Action was dismissed without prejudice because GMACM could

not and did not provide a scintilla of evidence that it complied with the New Jersey Fair

Foreclosure Act's (the "FFA") requirement that is serve the Reeds with a pre-foreclosure Notice

of Intent to Foreclose ("NOI").

16.    Thereafter, the Reeds filed a lawsuit against GMACM and RFC, alleging

damages for wrongful foreclosure (based upon GMACM's failure to send an NOI), negligence,

breach of contract and estoppel.  GMACM and RFC filed a motion to dismiss the Reed

Complaint for failure to state a claim with respect to the asserted causes of action, which the

New Jersey court denied in July 2010.

17.    The Reeds were then permitted to file an amended complaint on January 6, 2012,

adding claims for economic and non-economic losses stemming from the Foreclosure Action,

punitive damages, and consumer fraud.  The additional claims also survived attack and

opposition by GMACM and RFC.

18.    The Reeds voluntarily dismissed their lawsuit on February 9, 2012, so that they

could participate in the Federal Reserve Board's (the "FRB") Independent Foreclosure Review.

19.    The Reeds filed Proofs of Claim Nos. 3708, 3759, 4736 and 4759 against

GMACM and RFC in the context of the bankruptcy proceeding before this Court, seeking relief

in the form of damages resulting from the debtors' wrongful actions.  The Reeds provided

substantial supplemental documentation and exhibits in support of their claims in July 2013, and

again in response to the Trust's Objection [ECF Doc. # 7153].

## C. Procedural History of Contested Matter

20.    On May 29, 2014, the Debtors filed the Trust's Objection to Proofs of Claim Filed

by Frank and Christina Reed [ECF Doc. # 7017 and 7018] (the "Objection").

21.    On June 19, 2014, the Reeds filed a response to the Objection [ECF Doc. # 7153].

On July 3, 2014, the Trust filed a reply to the Reeds' response [ECF Doc. # 7228].

22.    On July 9, 2014, the Court held a hearing with respect to the Objection. Frank

Reed, acting *pro se*, and counsel for the ResCap Borrower Claims Trust appeared before the

Court for a July 9, 2014 hearing, during which the Court heard argument and made preliminary

rulings pending issuance of its Order and decision.

23.    On July 11, 2014, the Court entered an Order sustaining in part and overruling in

part the Trust's Objection to the Reeds' Claims and concluding that the Objection presents a

contested matter.  [ECF Doc. # 7246].

24.    The July 11, 2014 Order scheduled an evidentiary hearing with respect to the

remaining claims for September 15 and 16, 2014.

## ARGUMENT

25.    It is respectfully submitted that judgment against the ResCap Trust, as to liability

only, on the Reeds' claims for negligence, breach of the CFA and punitive damages is warranted

as a matter of law since it is an undisputed fact that GMACM did not have standing to file its

May 19, 2008 foreclosure action against the Reeds.

26.    The conclusion that GMACM did not possess standing is inescapable since, the

only evidence which the ResCap Trust has provided to establish standing – the May 22, 2008

Assignment of Mortgage – was executed **after** GMACM filed a foreclosure lawsuit against the

Reeds. The Trust has no other evidence that GMACM had been conveyed any rights *vis a vis*

the mortgage and note prior to the May 19, 2008 filing of the complaint (or, prior to the May 16,

2008 execution of the complaint).

27.    Even if one were to assume, *arguendo*, that the assignment of mortgage had

actually taken place prior to GMACM's wrongful filing of the foreclosure – which it did not –

GMACM would still be without standing to file the lawsuit. In order to have standing to file a

foreclosure action under New Jersey law, a party must prove by a preponderance of the evidence

that it is either: the holder in possession of the Note; or, a non-holder in possession with the

rights of the holder of the note, and, must be the assignee of the mortgage. Here, GMACM only

had an assignment of the mortgage, but there was no transfer or possession of the note, and so,

GMACM did not have standing to file the wrongful lawsuit against the Reeds as a matter of New

Jersey law. The Trust offers no competent evidence that the note was transferred to or possessed

by GMACM.

### A. Standing to Foreclose Under New Jersey Law

28.    It is axiomatic that a party seeking to foreclose a mortgage must own or control

the underlying debt, and may not sue based on control of the mortgage alone. See Gotlib v.

Gotlib, 399 N.J. Super. 295, 312-13 (App. Div. 2008); see also Wells Fargo Bank v. Ford, 418

N.J. Super. 592, 597 (App. Div. 2011).

29.    The mortgage fundamentally follows the debt, not vice versa. See e.g., Stevenson

v. Black, 1 N.J.Eq. 338, 343 (Ch. 1831). This logically leads to the conclusion that a lender, or

its assignee, cannot establish standing to foreclose if it possesses only the mortgage, and not the

underlying debt.

30.    A negotiable promissory note is governed by Article 3 of the Uniform

Commercial Code (UCC), codified at N.J.S.A. 12A:3-101 *et seq*.

31.    Under UCC Article 3, a person must have possession of a negotiable note in order

to enforce it, either as a "holder" or as a "nonholder in possession of the instrument who has the

rights of a holder," each as defined in N.J.S.A. 12A:3-301. Bank of N.Y. v. Raftogianis, 418

N.J. Super. 323, 331-32 (Ch. 2010). Possession is the key element in either case.

32.    To enforce the note as a holder pursuant to N.J.S.A. 12A:3-301, a plaintiff would

have to establish that it received the note, through negotiation, prior to and continued to maintain

this at the time of the filing of any enforcement action (i.e. the filing of a foreclosure complaint).

That would require that the plaintiff have physical possession of note and that the note be

endorsed prior to or at the time of delivery, either in favor of plaintiff or in blank.

33.     "The purpose of the possession requirement in Article 3 is to protect the [d]ebtor

from multiple enforcement claims to the same note." In re Kemp, 440 B.R. 624, 633 (Bankr.

D.N.J. 2010)(internal cites omitted).

34.     In addition, Article 3 of the UCC governs how possession of the negotiable note

is transferred and, historically, a lender or its assignee must have possessed the negotiable note to

establish standing.  An affirmative defense to a foreclosure is based on the strict requirements of

UCC Article 3 regarding transfer and enforcement of negotiable instruments.  This contested

"standing" issue often arises in the context of securitized mortgage loans, and may delay the

foreclosure process for months.

35.     As noted by the New Jersey appellate division in Deutsche Bank Nat'l Trust Co.

v. Mitchell, 422 N.J. Super. 214 (App. Div. 2011):

> As a general proposition, a party seeking to foreclose a mortgage
> must own or control the underlying debt.  In the absence of a
> showing of such ownership or control, the plaintiff lacks standing to
> proceed with the foreclosure action and the complaint must be
> dismissed.  Deutsche Bank did not have standing when it filed the
> original complaint because it did not have an assignment nor did it
> demonstrate that it possessed the note at that time.
>
> […].
>
> Because Deutsche Bank has not demonstrated that it possessed the
> note at the time it filed the original complaint, it has not established
> standing under this section either.  Deutsche Bank must prove it had
> possession of the note when it filed the complaint to obtain standing.
>
> [Id. at 222-24 (internal citations and quotations omitted)].

36.     In In re Kemp, 440 B.R. 624 (Bankr. D.N.J. 2010), the bankruptcy court applied

New Jersey law and held that "a recorded assignment of the mortgage does not establish the

enforceability of the note [because] the UCC governs the transfer of a promissory note." The

bankruptcy court explained that the "attempted assignment of the [negotiable] note in the

assignment of mortgage document, together with the terms of the Pooling and Servicing

Agreement, created an ownership issue, but did not transfer the right to enforce the note." Citing

N.J.S.A. 12A:3-203 (Comment 2)).

37.     Indeed, unlike the facts in <u>Kemp</u>, here, the Assignment of Mortgage, on which the Trust's counsel relies to establish standing, can not possibly accomplish the assignment of authority under the note since MERS (the entity that assigned the mortgage), not being the holder of the note, could NEVER assign any rights with respect to the note. See <u>PHH Mortg. Corp. v. Garner</u>, 2013 WL 2459868 (N.J.Super.App.Div. 2013)("MERS does not "hold" mortgages for the purpose of N.J.S.A. 2A:50–55; it merely records mortgages in its name, and serves as a central exchange through which lenders can transfer and track mortgages without re-recording. Thus, PHH [the lender] was the holder of the note and mortgage and the proper party to be named in the notice of intent").

38.     Simply put, a recorded assignment of mortgage may include a provision assigning the note, but such provision gives the assignee only a claim of ownership to the note: it does not establish a right to enforce the note under the UCC.

39.     Even if there were such a separate document, a negotiable note to be enforceable under the UCC must be transferred by delivery of possession, not assignment. See Myron C. Weinstein, 30 N.J. Prac., *Law of Mortgages* §28.9 (2d ed.).

40.     It is indisputably clear that GMACM was not the holder at the time it brought the foreclosure suit against the Reeds. By their own evidence submitted, the note shows no endorsement to GMACM and there is no endorsement in the blank so that GMACM could be a Holder via possession. There is no evidence that GMACM was the 'Holder' of the Reed note at the time it filed its foreclosure action. As such, GMACM had no standing to file the foreclosure action against the Reeds.

**B. Negligence**

41.     Under New Jersey law, negligence has four elements: "(1) duty of care, (2) breach of duty, (3) proximate cause, and (4) actual damages." <u>Wartsila NSD N. Am., Inc. v. Hill Int'l, Inc.</u>, 342 F. Supp. 2d 267, 278 (D.N.J. 2004) (citation omitted).

42.    "[T]he standard of care is the conduct of the reasonable person of ordinary prudence under the circumstances." Rappaport v. Nichols, 156 A.2d 1, 8 (N.J. 1959).

43.    "The most common test of negligence . . . is whether the consequences of the alleged wrongful act were reasonably to be foreseen as injurious to others coming in the range of such acts." DiCosala v. Kay, 450 A.2d 508 (N.J. 1982) (citations omitted).

44.    Here, GMACM's filing of a foreclosure action based a note and mortgage that had not been assigned or transferred to it, and under which it had no other authority to act, is clearly negligent. See generally MCI Worldcom Network Services, Inc. v. Glendale Excavation Corp., 224 F.Supp.2d 875, 878 (D.N.J. 2002)(holding that the defendant's failure to comply with its statutory obligation to call a utility company prior to performing excavation work was *prima facie* evidence of negligence).

**C. New Jersey Consumer Fraud Act**

45.    A claim under the New Jersey CFA requires three elements: "(1) an unlawful practice, (2) an 'ascertainable loss,' and (3) a 'causal relationship between the unlawful conduct and the ascertainable loss . . . .' " Gonzalez v. Wilshire Credit Corp., 25 A.3d 1103, 1115 (N.J. 2011) (quoting Lee v. Carter-Reed Co., 4 A.3d 561, 576 (N.J. 2010)). The CFA provides for recovery of treble damages.

46.    The CFA defines an "unlawful practice" as:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived, or damaged thereby.

> [N.J.S.A. 56:8-2].

47.    Here, GMACM's filing of a foreclosure action based on a note and mortgage that had not been assigned or transferred to it, and under which it had no other authority to act, and

the filing of foreclosure complaints attesting to proper standing *vis a vis* the note and mortgage, are clearly misrepresentations under the CFA.

### D. Punitive Damages

48.     Punitive damage claims in New Jersey are governed by statute, N.J.S.A. 2A:15-5.9 et seq., referred to as the Punitive Damages Act.  Under the terms of the Punitive Damages Act and New Jersey law, actual malice is not required.  See Id.  See also New Jersey Model Civil Jury Charges § 8.60.

49.     To recover punitive damages under New Jersey law, the Reeds must show by clear and convincing evidence that the harm suffered was the result of GMACM's acts or omissions, and "that such acts or omissions were actuated by actual malice **or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts** or omissions." N.J.S.A. 2A:15-5:12(a) (emphasis added).

50.     Here, GMACM's filing of a foreclosure action based a note and mortgage that had not been assigned or transferred to it, and under which it had no other authority to act, clearly constitutes a gross and wiful disregard "of the property rights of others" as contemplated by the punitive damages statute.  GMACM had zero rights to take any action with regard to the Reeds' property, yet it wantonly filed a foreclosure action and filed a lis pendens, setting into motion the extensive damage and harm suffered by the Reeds.

### CONCLUSION

Based upon the foregoing, the Reeds respectfully request that this Court grant the Reeds' motion for judgment as a matter of law as to liability against the ResCap Borrower Claims Trust with respect to the Reeds' claims for negligence, breach of the New Jersey Consumer Fraud Act and punitive damages.

Dated: New York, New York
        September 16, 2014

                                    Respectfully Submitted,

By:

Frank Reed, *pro se*