## Exhibit C to Supplemental Horst Declaration

**Diligence Response**

# RESCAP

**MORRISON | FOERSTER**

## Claim Information

| Claim Number | 5580 |
|---|---|

| **Basis of Claim** | |
|---|---|
| Explanation that states the legal and factual reasons why you believe you are owed money or are entitled to other relief from one of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases) and, you **must** provide copies of any and all documentation that you believe supports the basis for your claim. | CLAIM Submission And Phoof of Claim is Attached And Signed by R.ERKSON CS on POC is 3 pages, plus EX"A" And Exhibits 1-6.

Ronald A. ERIKSEN, JR

DATE 7/6/13 |

If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the following loan information, so that we can effectively search our records for information on your property and loan, and evaluate your claim.

| Loan Number: ████████████████████ |
|---|

| Address of property related to the above loan number:
492 Asbury Drive |
|---|

| City: AURORA | State: IL | ZIP Code: 60502 |
|---|---|---|

Additional resources may be found at - http://www.kccllc.net/rescap

Residential Capital, LLC    P.O. Box 385220  Bloomington, MN  55438

Claim Number: 5580
Ronald A. Eriksen, Jr.

# RESCAP

MORRISON | FOERSTER

## Claim Information

| Claim Number | 5573 |
|---|---|
| **Basis of Claim**<br><br>Explanation that states the legal and factual reasons why you believe you are owed money or are entitled to other relief from one of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases) and, you **must** provide copies of any and all documentation that you believe supports the basis for your claim. | CLAIM Submission and Proof of Claim is Attached and Signed by J. ERIKSEN CS And POC is 3 pages, Plus EX 'A' And EXhibiTs 1-6    *Julie Eriksen* Julie A. ERIKSEN DATE: 7-7-13 |

If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the following loan information, so that we can effectively search our records for information on your property and loan, and evaluate your claim.

| Loan Number: ██████████ |
|---|
| Address of property related to the above loan number: |
| 492 Asbury DRIVE |

| City: | State: | ZIP Code: |
|---|---|---|
| Aurora | IL | 60502 |

Additional resources may be found at - http://www.kccllc.net/rescap

Residential Capital, LLC    P.O. Box 385220  Bloomington, MN  55438

Claim Number: 5573
JULIE A. ERIKSEN

# Claim Submission and Proof of Claim:

SPECIAL COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
SILVERMANCAMPAORA, LLP.
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
Tel.: 866-259-5217
Email: rescapborrower@silvermancampora.com

RE:    RON ERIKSEN'S AND JULIE ERIKSEN'S CLAIMS

| | |
|---|---|
| Debtors: | Residential Capital, LLC., GMAC, LLC., and affiliated debtors |
| Court: | United States Bankruptcy Court, Southern District of New York |
| Case No.: | 12-12020 |
| Claim No.: | 5573, 5580 |

RE: Claims of Ron and Julie Eriksen

On November 9, 2005, Ronald A. Eriksen ("REriksen") and Julie A. Eriksen ("JEriksen") (collectively, the "Eriksens") entered into a mortgage and note agreement (collectively, "Loan") with GMAC MORTGAGE CORPORATION ("LENDER1"). Exhibit 1. At all times relevant, LENDER1 was the Eriksens' lender. The Eriksen, at no time, received any notice of any transfer, sale or assignment of their Loan. Exhibit 2. This is required under **12 USC 2605**, which states,

> **(b) Notice by transferor of loan servicing at time of transfer (1) Notice requirement** Each servicer of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person. **(2) Time of notice (A) In general** Except as provided under subparagraphs (B) and (C), the notice required under paragraph (1) shall be made to the borrower not less than 15 days before the effective date of transfer of the servicing of the mortgage loan (with respect to which such notice is made).

The Eriksen never received notice by LENDER1 of any transfer, sale or assignment of their Loan. Ex. 2. That failure has caused actual damages to the Eriksens in an amount of $1,000,000 (See itemized list – Exhibit A). Further, the Eriksen are entitled to additional damages in an amount of $2,000.00 for willful failure to deliver said notice.

On June 7, 2010, GMAC MORTAGE, LLC. ("LENDER2") sued the Eriksens. Exhibit 3. LENDER2, in a lawsuit, claimed it was the lender and that LENDER1 was the servicer. Id. Essentially, LENDER1's assets were moved to LENDER2 under the cover of darkness. No notice of transfer, sale or assignment was given to the Eriksens, as required by law. Ex. 2. But, a transfer did take place without proper notice. That lawsuit was amended on September 3, 2010. Exhibit 4. Still, notice was never sent to the Eriksens. That lawsuit constituted a wrongful

foreclosure action predicated on a fraudulent document filed by LENDER2 against the Eriksens as consumers in Illinois, which is subject to **815 ILCS 505/2**, which states,

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5 (a) of the Federal Trade Commission Act."

> **815 ILCS 505/10a** states, "Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper"

Further, that wrongful foreclosure action is also subject to "common law" fraud under Illinois law. Illinois is a common law state, pursuant to **5 ILCS 50.1**, which states,

> "That the common law of England, so far as the same is applicable and of a general nature, and all statutes or acts of the British parliament made in aid of, and to supply the defects of the common law, prior to the fourth year of James the First, excepting the second section of the sixth chapter of 43d Elizabeth, the eighth chapter of 13th Elizabeth, and ninth chapter of 37th Henry Eighth, and which are of a general nature and not local to that kingdom, shall be the rule of decision, and shall be considered as of full force until repealed by legislative authority."

The elements of common law fraud are: "(1) a false statement of material fact; (2) the party making the statement knew or believed it to be untrue; (3) the party to whom the statement was made had a right to rely on the statement; (4) the party to whom the statement was made did rely on the statement; (5) the statement was made for the purpose of inducing the other party to act; and (6) the reliance by the person to whom the statement was made led to that person's injury." *Siegel v. Levy Organization Development Co., 153 Ill. 2d 534, 542-43 (1992).*

On June 3, 2010 and September 3, 2010, LENDER2 knowingly and intentionally deceived the Eighteenth Circuit Court of DuPage County, Illinois ("State Court") by filing a wrongful foreclosure action against the Eriksens claiming it was the lender and LENDER 1 was the loan servicer. Ex. 3, Ex. 4. That LENDER 2 and LENDER1 intentionally conspired to deceive the State Court by presenting itself as substantially the same corporation, when, in fact, it was a new, different, corporation. No final decision was rendered in said case. But, the property was

foreclosed on, and sold. This matter is currently on appeal before Illinois' Second District Court. Exhibit 5.

The Eriksens have suffered significant harms from said wrongful foreclosure action. That action was predicated on a fraud. Namely, LENDER2 was not legally the lender, and LENDER1, that had been the lender, did not have legal capacity to sue, for its foreign incorporation documents had expired in Illinois on or before said case was brought before the Eighteenth Circuit Court of Du Page County, Illinois. Exhibit 6.

LENDER1 and LENDER2 conspired to commit fraud before the Eighteenth Circuit Court of Du Page County, Illinois. LENDER2 claimed LENDER1 was the Loan servicer. LENDER2 claimed was the Loan holder. Neither were true. LENDER1 was not even a legal entity in Illinois at the time said complaint was filed. LENDER1, if it did assign said Loan to LENDER2, never sent a notice of transfer, sale or assignment. Further, on belief, LENDER1 did not properly transfer said Loan to LENDER2. LENDER2 was not the Loan holder, and the Eriksens Loan was wrongfully foreclosed on by LENDER2 and LENDER1. Further, LENDER1 was not a legal entity in Illinois at the time of said foreclosure action. As such, it misrepresented its standing to sue.

Said false statements, misrepresentations and frauds violated the Fair Debt Collections Practices Act, **15 USC 1692**. That said false or deceptive statements were made to unlawfully collect on a debt. That LENDER1 and LENDER2 did seek to unlawfully and unconscionably seek to collect on said debt from the Eriksens by use of false and/or deceptive statements. That the Eriksens were harmed by said unlawful debt collections practices in an actual amount of $1,000,000. See Ex. A. Further, the Eriksens request punitive damages in an amount of $1,000.00. Under Seventh Circuit precedent,

> "'**§ 1692e** applies even when a false representation was unintentional.' *Gearing v. Check Brokerage Corp.,* 233 F.3d 469, 472 (7th Cir.2000) (citing *Russell v. Equifax A.R.S.,* 74 F.3d 30, 33 (2d Cir. 1996) (because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages)). Moreover, our test for determining whether a debt collector violated § 1692e is objective, turning not on the question of what the debt collector knew but on whether the debt collector's communication would deceive or mislead an unsophisticated, but reasonable, consumer. *Gammon v. GC Servs. Ltd. P'Ship,* 27 F.3d 1254, 1257 (7th Cir. 1994); *see also id.* at 1259 (Easterbrook, J., concurring) (reasoning that 'the trier of fact must inquire whether a misleading implication arises from an objectively reasonable reading of the communication')." *P.Turner v. J.V.D.B. & Associates, Inc., 330 F.3d 991 (7th Cir. 2003).*

> "**§ 1692f**, which states that '[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.' Section 1692f(1), for example, prohibits the 'collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.' Whether the collection of a debt violates § 1692f(1) depends solely on two

factors: (1) whether the debt agreement explicitly authorizes the charge; or (2) whether the charge is permitted by law. The provision is silent as to the debt collector's intent, yet it is clear that a collector who collected a charge unauthorized by the debt agreement or by law, even by accident, would violate § 1692f(1). *Johnson v. Statewide Collections, Inc.,* 778 P.2d 93, 101 (Wyo.1989)." *Id*.

That said acts constituted a breach of contract. That LENDER1 and LENDER2 were unjustly enriched by said conduct. The elements of a breach of contract are: In Illinois, as elsewhere, a breach-of-contract claim requires: (1) an offer and acceptance; (2) consideration; (3) definite and certain terms; (4) performance by the plaintiff of all required conditions; (5) breach; and (6) damages caused by the breach. E.g., *Ass'n Benefit Servs., Inc. v. Caremark RX, Inc., 493 F.3d 841, 849 (7th Cir.2007)* (citation omitted); *Barille v. Sears Roebuck & Co., 682 N.E.2d 118, 121 (Ill.App.Ct.1997)*. "To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience. See Drury v., County of McLean, (1982), 89 Ill. 2d 417, 425-26; Kenneke v. First National Bank (1978), 65 Ill.App.3d 10, 12." *HPI Healthcare v. Mt. Vernon, 131 Ill.2d 145 (1989)*.

The Eriksens seek the subject property be returned, via replevin, by LENDER1 and LENDER2 or other party, if possible, and the Loan be reformed to demonstrate that no monies are owed, pursuant to setoff for damages. Further, and in addition, the Eriksens have been harmed by said causes of action in an amount of $500,000. That includes the physical loss of use of the property, resultant moves from said property, payment of rents at a new property, being placed in a false light by said wrongful foreclosure action and other resultant damages from said and other causes of actions against LENDER1 and LENDER2, including civil conspiracy.

Sincerely,

Ron Eriksen

Sincerely,

Julie Eriksen

# Exhibit A

Exhibit A

$450,000      Value of home

$1800         Moving expenses

$26,500       Housing and living expenses

$1,478,000    Personal Harms:
              Credit $150,000, Lost business opportunity $575,000, Emotional distress
              $600,000, Medical and mental health expenses $75,000, Legal fees
              $78,000

# Exhibit 1

*AS PROVIDED by
Debtor, NOT AN Org*

**FRED BUCHOLZ**
DUPAGE COUNTY RECORDER
DEC.21,2005          RHSP    10:48 AM
OTHER                07 - 19 - 207 - 009
**019 PAGES          R2005-281930**

After Recording Return To:

GMAC Mortgage Corp.
100 Witmer Road
Horsham, PA 19044-0963
ATTN:  Records Management



EXHIBIT #

[Space Above This Line For Recording Data]

## MORTGAGE

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined
in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this
document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated November 9,
2005   , together with all Riders to this document.

(B)  "Borrower" is

Ronald A. Eriksen and Julie A. Eriksen, husband and wife, as
tenants by the entirety

Borrower is the mortgagor under this Security Instrument.

(C)  "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate
corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.
MERS is the mortgagee under this Security Instrument. MERS is organized and existing
under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint,
MI 48501-2026, tel. (888) 679-MERS.

ILLINOIS -- Single Family -- Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT Form 3014  1/01

(Page 1 of 18) 324553219    Initials:                  346
GMACM - CMS.0012.IL (0001)

CHARGE C.T.I.C. DUPAG

1-4

(AD)

(D)    "Lender" is
GMAC Mortgage Corporation

Lender is a  Corporation                                      organized and existing under the
laws of Pennsylvania                                         . Lender's address is
100 Witmer Road, P.O. Box 963, Horsham, PA  19044

(E)    "Note" means the promissory note signed by Borrower and dated November 9,
2005    . The Note states that Borrower owes Lender
Three Hundred Eighty Thousand and 00/100

Dollars (U.S. $    380,000.00    ) plus interest. Borrower has promised to pay this
debt in regular Periodic Payments and to pay the debt in full not later than
December 1, 2035    .
(F)    "Property" means the property that is described below under the heading "Transfer of
Rights in the Property."
(G)    "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges
and late charges due under the Note, and all sums due under this Security Instrument, plus
interest.
(H)    "Riders" means all Riders to this Security Instrument that are executed by Borrower.
The following Riders are to be executed by Borrower [check box as applicable]:

| | | | | | |
|---|---|---|---|---|---|
| ☐ | Adjustable Rate Rider | ☐ | Condominium Rider | ☐ | Second Home Rider |
| ☐ | Balloon Rider | ☐ | Biweekly Payment Rider | ☐ | 1-4 Family Rider |
| ☐ | Other(s) [specify] | ☐ | Planned Unit Development Rider | | |

(I)    "Applicable Law" means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as well
as all applicable final, non-appealable judicial opinions.
(J)    "Community Association Dues, Fees, and Assessments" means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by a condominium
association, homeowners association or similar organization.
(K)    "Electronic Funds Transfer" means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an electronic
terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize
a financial institution to debit or credit an account. Such term includes, but is not limited to,
point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone,
wire transfers, and automated clearinghouse transfers.
(L)    "Escrow Items" means those items that are described in Section 3.
(M)    "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages
described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or
other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv)
misrepresentations of, or omissions as to, the value and/or condition of the Property.

ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3014  1/01
GMACM - CMS.0012.IL (0001) (Page 2 of 18)                Initials _____

(N)    "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O)    "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P)    "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q)    "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the

County

[Type of Recording Jurisdiction]

of  DuPage

[Name of Recording Jurisdiction]

See attached Scheduel A hereto and made apart hereof

which currently has the address of
492 Asbury Drive,

[Street]

Aurora                    , Illinois    60502            ("Property Address"):

[City]                                [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3014  1/01

GMACM - CMS.0012.IL (0001) (Page 3 of 18)            Initials:

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

LOAN NO: ▮▮▮▮▮
ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3014 1/01
GMACM - CMS.0012.IL (0001) *(Page 4 of 18)*                    Initials: ___

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees, and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

LOAN NO: ▮▮▮▮▮▮▮▮
ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3014 1/01
GMACM - CMS.0012.IL (0001) (Page 5 of 18)                        Initials: ▮▮▮▮▮

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts

ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3014   1/01
GMACM - CMS.0312.1L (0001) *(Page 6 of 18)*   Initials:

(including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters,

LOAN NO :█████████
ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3014  1/01
GMACM - CMS.0012.IL (0001) (Page 7 of 18)                    Initials

or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  Occupancy.  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  Borrower's Loan Application.  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in

ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3014 1/01
GMACM – CMS.0012.IL (0001) *(Page 8 of 18)*                        Initials

connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the

LOAN NO: ███████

ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3014  1/01
GMACM - CMS.0012.IL (0001) *(Page 9 of 18)*          Initials: _____

amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until the Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law.   Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

ILLINOIS -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3014  1/01
GMACM - CMS.0012.IL (0001) *(Page 10 of 18)*        Initials:

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

LOAN NO.: ▆▆▆▆▆▆
ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3014    1/01
GMACM - CMS.9012.IL (0001) (Page 11 of 18)        Initials: ▆▆▆▆▆▆

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3014  1/01
GMACM - CMS.0012.IL (0001) *(Page 12 of 18)*                    Initials

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All Notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a

LOAN NO: ▇▇▇▇▇▇
ILLINOIS -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3014 1/01
GMACM - CMS.0012.IL (0001) *(Page 13 of 18)*          Initials:

prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to Section 22 of this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged unless as otherwise provided under Applicable Law. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower,

ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3014   1/01
GMACM - CMS.0112.IL (0001) (Page 14 of 18)                         Initials: _____

this Security Instrument and obligations secured hereby shall remain fully effective as if no
acceleration had occurred. However, this right to reinstate shall not apply in the case of
acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a
partial interest in the Note (together with this Security Instrument) can be sold one or more
times without prior notice to Borrower. A sale might result in a change in the entity (known as
the "Loan Servicer") that collects Periodic Payments due under the Note and this Security
Instrument and performs other mortgage loan servicing obligations under the Note, this Security
Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer
unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be
given written notice of the change which will state the name and address of the new Loan
Servicer, the address to which payments should be made and any other information RESPA
requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter
the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan
servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a
successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided
by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action
(as either an individual litigant or the member of a class) that arises from the other party's
actions pursuant to this Security Instrument or that alleges that the other party has breached any
provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or
Lender has notified the other party (with such notice given in compliance with the requirements
of Section 15) of such alleged breach and afforded the other party hereto a reasonable period
after the giving of such notice to take corrective action. If Applicable Law provides a time
period which must elapse before certain action can be taken, that time period will be deemed to
be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure
given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower
pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective
action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances"
are those substances defined as toxic or hazardous substances, pollutants, or wastes by
Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic
petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing
asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal
laws and laws of the jurisdiction where the Property is located that relate to health, safety or
environmental protection; (c) "Environmental Cleanup" includes any response action, remedial
action, or removal action, as defined in Environmental Law; and (d) an "Environmental
Condition" means a condition that can cause, contribute to, or otherwise trigger an
Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any
Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property.
Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in
violation of any Environmental Law, (b) which creates an Environmental Condition, or (c)
which, due to the presence, use, or release of a Hazardous Substance, creates a condition that

LOAN NO: ███████████

ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3014 1/01

GMACM - CMS.0012.IL (0001) *(Page 15 of 18)*    Initials:

adversely affects the value of the Property.  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property.  If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.  Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS.  Borrower and Lender further covenant and agree as follows:

**22.  Acceleration; Remedies.**  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise).  The notice shall specify:  (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure.  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**23.  Release.**  Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument.  Borrower shall pay any recordation costs.  Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24.  Waiver of Homestead.**  In accordance with Illinois law, the Borrower hereby releases and waives all rights under and by virtue of the Illinois homestead exemption laws.

**25.  Placement of Collateral Protection Insurance.**  Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in Borrower's

ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3014  1/01
GMACM - CMS.0012.IL (0001) (Page 16 of 18)                    Initials:

collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by Borrower's and Lender's agreement. If Lender purchases insurance for the collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on its own

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
Ronald A. Eriksen, Jr                          -Borrower

_____ (Seal)
Julie A. Eriksen                                  -Borrower

_____ (Seal)
                                                        -Borrower

_____ (Seal)
                                                        -Borrower

LOAN NO: ██████████
Witnesses:

_____        _____

ILLINOIS -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3014  1/01
GMACM - CMS.0012.IL (0001) (Page 17 of 18)

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF ILLINOIS,

COUNTY OF _DuPage_ _Kane_                              } SS

I, _Jennifer A. LaCalamita_                              , a Notary Public in and for said county and state do hereby certify that
Ronald A. Eriksen and Julie A. Eriksen, husband and wife, as tenants by the entirety

personally known to me to be the same person(s) whose name(s) subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that   THEY
signed and delivered the said instrument as   THEIR          free and voluntary act, for the uses and purposes therein set forth.

Given under my hand and official seal, this       9th   day of November
2005

My Commission Expires:

**"OFFICIAL SEAL"**
JENNIFER A. LaCALAMITA
Notary Public, State of Illinois
My Commission expires 11/01/06

This instrument was prepared by:
    Tim Woodruff
    235 Fisher Drive
    Waterloo, IA 50701
    for: GMAC Mortgage Corp.

ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3014  1/01
GMACM - CMS.0012.IL (0001) (Page 18 of 18)                    Initials:

 # CHICAGO TITLE INSURANCE COMPANY

**ORDER NUMBER:** 1410   002507743 LZ
**STREET ADDRESS:** 492 ASBURY DR
**CITY:** AURORA          **COUNTY:** DUPAGE
**TAX NUMBER:**

**LEGAL DESCRIPTION:**

LOT 121 IN FOX VALLEY EAST REGION II UNIT 53 - PHASE 1, BEING A SUBDIVISION OF
PART OF THE EAST 1/2 OF SECTION 19 AND THE WEST 1/2 OF SECTION 20, TOWNSHIP 38
NORTH, RANGE 9, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT
THEREOF RECORDED SEPTEMBER 1, 1995 AS DOCUMENT R95-118366 IN DU PAGE COUNTY,
ILLINOIS.

# NOTE

| November 9, 2005 | Aurora | IL |
|---|---|---|
| *[Date]* | *[City]* | *[State]* |

492 Asbury Drive, Aurora, IL 60502
*[Property Address]*

EXHIBIT # ___ D

**1.    BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 380,000.00          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
GMAC Mortgage Corporation
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.    INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of          6.000          %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3.    PAYMENTS**

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the  First   day of each month beginning on  January 1 2006       . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  December 1, 2035
I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 780, Waterloo, IA 50702-0780, ATTN: Payment Processing              or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 2,278.30

**4.    BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5.    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6.    BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of   15       calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  5.000      % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

LOAN NO: ███████
MULTISTATE FIXED RATE NOTE — Single Family — Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT   Form 3200  1/01
*(Page 1 of 2)* 324533216          Initials: ___
GMACM - CSM.0061.FIX (0401)

(F) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note, is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.    WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
Ronald A. Eriksen, Jr .                 -Borrower

_____ (Seal)
Julie A. Eriksen                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

*[Sign Original Only]*

MULTISTATE FIXED RATE NOTE – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3200   1/01
GMACM - CSM.0063.FIX (0401) (Page 2 of 2)

# Exhibit 2

### AFFIDAVIT OF RON ERIKSEN

I, Ron Eriksen ("REriksen"), do hereby declare and state that I have personal knowledge of the following true facts:

1.     I am over the age of twenty-one (21) years old, and am attesting to facts based on personal knowledge.

2.     I am a homeowner with my wife, Julie Eriksen, of the property referred to as 492 Asbury Dr. Aurora, Illinois 60502.

3.     I have never received a notice of transfer, sale or assignment from GMAC MORTGAGE CORPORATION on or after October 27, 2006.

4.     I have never received a notice of transfer, sale or assignment from GMAC Mortgage, LLC. on or before June 10, 2010.

5.     I have never received a notice of acceleration from GMAC MORTGAGE CORPORATION or GMAC Mortgage, LLC.

6.     I have never seen any evidence presented, via affidavit or otherwise, by GMAC MORTGAGE CORPORATION and/or GMAC Mortgage, LLC., that 1) a notice of transfer, sale or assignment was sent, and 2) a notice of acceleration was sent.

7.     On reviewing the complaint, I noticed that an alleged assignment took place in 2010 and that said assignment was recorded in 2010.

8.     On reviewing Illinois corporate records of good standing at http://www.ilsos.gov/corporatellc/CorporateLlcController, I saw GMAC MORTGAGE CORPORATION is an inactive corporation, that withdrew its corporate status as a foreign corporation conducting business in Illinois, on October 27, 2006.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: 07/06/13

_____
Ron Eriksen

State of Illinois County of
DuPage
Subscribed and sworn to (or affirmed)
before me on this ___ day of July, 20 13 by
Ron Eriksen
proved to me on the basis of satisfactory evidence
to be the person(s) who appeared before me.
Signature _____
(Seal)

LINDA ZABLE
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
August 24, 2015

2

# Exhibit 3

IN THE CIRCUIT COURT FOR THE 18TH JUDICIAL DISTRICT
DUPAGE COUNTY - WHEATON, ILLINOIS

GMAC Mortgage, LLC

                   **PLAINTIFF**

Vs.

Ronald A. Eriksen a/k/a Ronald A. Eriksen Jr.; Julie A.
Eriksen; City of Aurora; Mortgage Electronic
Registration Systems, Inc.; GMAC Mortgage, LLC f/k/a
GMAC Mortgage Corporation; United States of America;
American Chartered Bank; Alan S. Levine; Unknown
Owners and Nonrecord Claimants
                   **DEFENDANTS**

**2010CH003248**

Status Date: 10/04/10
No.
Assigned To: 1003

RESIDENTIAL

**FILED**
Jun 07 2010 - 10:45 AM

CLERK OF THE
18TH JUDICIAL CIRCUIT
DU PAGE COUNTY ILLINOIS

## <u>COMPLAINT TO FORECLOSE MORTGAGE</u>

NOW COMES the Plaintiff, GMAC MORTGAGE, LLC, by and through its attorneys, CODILIS &
ASSOCIATES, P.C., complaining of the defendants herein and, pursuant to 735 ILCS 5/15-1101,
states as follows:

1. Plaintiff files this Complaint to Foreclose the mortgage, trust deed or other conveyance in the
nature of a mortgage (hereinafter called "Mortgage") hereinafter described, and names the persons
identified in the above caption as "Defendants", as parties hereto.

2. Attached as "EXHIBIT A" is a copy of the Mortgage.  Attached as "EXHIBIT B" is a copy of
the Note.

3. Information concerning said Mortgage:

   (A)  Nature of the instrument:  Mortgage.

   (B)  Date of the Mortgage:  11/9/2005

   (C)  Name of the mortgagor(s):
      Ronald A. Eriksen a/k/a Ronald A. Eriksen Jr.
      Julie A. Eriksen

   (D)  Name of the original mortgagee:
      Mortgage Electronic Registration Systems, Inc. as Nominee for GMAC Mortgage
Corporation

   (E)  Date and Place of Recording or Registering:
      12/21/2005
      Office of the Recorder of Deeds of DuPage County Illinois

   (F)  Identification of Recording:  Document No. R2005-281930

   (G)  Interest subject to the mortgage:  Fee Simple.

(H)  Amount of original indebtedness:

(1)  Original Indebtedness: $380,000.00

(I)  Both the legal description of the mortgaged real estate and the common address or other
information sufficient to identify it with reasonable certainty:

LOT 121 IN FOX VALLEY EAST REGION II UNIT 53, PHASE 1, BEING A
SUBDIVISION OF PART OF THE EAST 1/2 OF SECTION 19 AND THE WEST 1/2 OF
SECTION 20, TOWNSHIP 38 NORTH, RANGE 9, EAST OF THE THIRD PRINCIPAL
MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED SEPTEMBER 1, 1995
AS DOCUMENT R95-118366 IN DUPAGE COUNTY, ILLINOIS.

**COMMONLY KNOWN AS:**
         492 Asbury Drive
         Aurora, IL 60502

**TAX PARCEL NUMBER:** 07-19-207-009

(J)  Statements as to defaults:  Mortgagors have not paid the monthly installments of
principal, taxes, interest and insurance for 03/01/2010, through the present; the principal
balance due on the Note and Mortgage is $358,571.16, plus interest, costs, advances and fees.
Interest accrues pursuant to the note.

(K)  Name of present owner(s) of said premises:
         Ronald A. Eriksen a/k/a Ronald A. Eriksen Jr.
         Julie A. Eriksen

(L)  Names of other persons who are joined as defendants and whose interest in or lien on the
mortgaged real estate is sought to be terminated and alleged to be subordinate and inferior to
the mortgage of the Plaintiff:
City of Aurora, by virtue of a possible claim for lien against the subject property; Plaintiff
alleges that the lien and interest of this Defendant is subordinate and inferior to the lien and
interest of the Plaintiff.

Mortgage Electronic Registration Systems, Inc., by virtue of a Mortgage executed by Ronald
A. Eriksen and Julie A. Eriksen, dated January 24, 2006, and Recorded/registered on April 4,
2006 in the office of the Recorder/Registrar of Deeds of DuPage County, Illinois, as
Document No. R2006-061981, to secure a note in the principal sum of $95,000.00;

GMAC Mortgage, LLC f/k/a GMAC Mortgage Corporation, by virtue of the fact that, upon
information and belief, it may be the holder of the note secured by the trust deed recorded as
document #R2006-061981 as referenced further herein.

The United States of America by virtue of a Notice of Federal Tax Lien recorded/registered
on April 30, 2009 as document #R2009-064706 in the office of the recorder/registrar of
DuPage County, Illinois.  Said notice was recorded against Ronald A. Eriksen of 492
Ashbury Drive, Aurora, IL  60502 whose social security number is XXX-XX-7173 for the
nonpayment of 6672 tax in the amount of $116,915.53.

American Chartered Bank, by virtue of a Memorandum of Judgment against Ronald A.
Eriksen Jr., rendered in Case No. 09L489, in the Circuit Court of DuPage County, Illinois,
and filed in the office of the Recorder/Registrar of Deeds of DuPage County, Illinois on
October 16, 2009 as Document No. R2009-158068 in the sum of $520,881.10. The interest
of this Defendant is subordinate to that of Plaintiff.

Alan S. Levine, by virtue of a Memorandum of Judgment against Ronald A. Eriksen a/k/a
Ronald Eriksen, rendered in Case No. 07CH1595 consolidated with 07CH18174, in the
Circuit Court of Cook County, Illinois, and filed in the office of the Recorder/Registrar of
Deeds of Cook County, Illinois on May 18, 2009 as Document No. R2009-073806 in the sum
of $352,300.00 plus interest. The interest of this Defendant is subordinate to that of Plaintiff.

(M) Names of persons who executed the Note, Assumption Agreement(s), or Personal
Guarantee:
    Ronald A. Eriksen a/k/a Ronald A. Eriksen Jr.
    Julie A. Eriksen
Please note that no personal deficiency will be sought against any party who has received a
Chapter 7 discharge or who are protected by the automatic stay at sale confirmation.

(N) Capacity in which Plaintiff brings this foreclosure: Plaintiff is the Mortgagee under 735
ILCS 5/15-1208.

(O) Facts in support of a redemption period shorter than the longer of 7 months from the date
the mortgagor or, if more than one, all the mortgagors have been served with summons or by
publication or have otherwise submitted to the jurisdiction of the court, or 3 months from the
entry of the judgment of foreclosure, whichever is later, if sought:

The redemption period shall be determined pursuant to 735 ILCS 5/15-1603.

(P) Statement that the right of redemption has been waived by all owners of redemption:
There has been no executed waiver of redemption by all owners of redemption, however
Plaintiff alleges that it is not precluded from accepting such a waiver of redemption by the
filing of this complaint.

(Q) Facts in support of request for attorney's fees and of costs and expenses, if applicable:
The subject mortgage provides for payment of attorney fees, court costs and expenses in the
event of a default under the mortgage.

(R) Facts in support of a request for appointment of mortgagee in possession or for
appointment of a receiver, and identity of such receiver, if sought: Unless otherwise alleged,
Plaintiff will pray for said relief after the filing of the instant foreclosure action by separate
petition if such relief is sought.

(S) Offer to the mortgagor in accordance with Section 15-1402 to accept title to the real
estate in satisfaction of all indebtedness and obligations secured by the mortgage without
judicial sale, if sought: No allegation of an offer is made however, Plaintiff alleges that it is

not precluded from making or accepting such offer by the filing of the instant foreclosure action.

(T) Name or names of defendants whose rights to possess the mortgaged real estate, after the confirmation of a foreclosure sale, are sought to be terminated, and if not elsewhere stated, the facts in support thereof:

Ronald A. Eriksen a/k/a Ronald A. Eriksen Jr.; Julie A. Eriksen;

4.  Plaintiff avers that in addition to persons designated by name herein and the Unknown Defendants herein before referred to, there are other persons, and/or non-record claimants who are interested in this action and who have or claim some right, title, interest or lien in, to or upon the real estate, or some part thereof, in this Complaint described, including but not limited to the following:

Unknown Owners and NonRecord Claimants, if any.


That the name of each of such persons is unknown to Plaintiff and on diligent inquiry cannot be ascertained, and all such persons are therefore made party defendants to this action by the name and description of UNKNOWN OWNERS and NONRECORD CLAIMANTS.

## REQUEST FOR RELIEF

**WHEREFORE, PLAINTIFF REQUESTS:**

(i)   A judgment of foreclosure and sale.

(ii)  An order granting a shortened redemption period, if sought.

(iii) A personal judgment for deficiency, if applicable and sought, and only against parties who have not received a Chapter 7 bankruptcy discharge or who are protected by the automatic stay at sale confirmation.

(iv)  An order granting possession, if sought.

(v)   An order placing the mortgagee in possession or appointing a receiver, if sought.

(vi)  A judgment for attorneys' fees, costs and expenses, if sought.

(vii) For the appointment of a Selling Officer, if deemed appropriate by this court.

(viii) Such other and further relief as this court deems just.

GMAC Mortgage, LLC

BY: _____
        CODILIS & ASSOCIATES, P.C.
        One of its Attorneys

**Jennifer E. Frick**
**ARDC # 6299794**

Codilis & Associates, P.C.
15W030 North Frontage Road, Suite 100
Burr Ridge, IL 60527
(630) 794-5300
14-10-19045
DuPage #15170

Winnebago # 531



**FRED BUCHOLZ**
DUPAGE COUNTY RECORDER
DEC.21,2005     RHSP   10:48 AM
OTHER                    07 - 19 - 207 - 009
**019 PAGES     R2005 - 281930**

After Recording Return To:

GMAC Mortgage Corp.
100 Witmer Road
Horsham, PA 19044-0963
ATTN: Records Management



EXHIBIT #

────────── [Space Above This Line For Recording Data] ──────────

## MORTGAGE

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined
in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this
document are also provided in Section 16.

**(A)**      "*Security Instrument*" means this document, which is dated November 9,

2005    , together with all Riders to this document.

**(B)**      "Borrower" is

Ronald A. Eriksen and Julie A. Eriksen, husband and wife, as
tenants by the entirety

Borrower is the mortgagor under this Security Instrument.

**(C)**      "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate
corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.
MERS is the mortgagee under this Security Instrument. MERS is organized and existing
under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint,
MI 48501-2026, tel. (888) 679-MERS.

ILLINOIS – Single Family – Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT Form 3014  1/01

**(Page 1 of 18)**  924533219     Initials: ____     346
GMACM - CMS.0012.IL (0001)

**(D)**   "Lender" is
GMAC Mortgage Corporation

Lender is a Corporation                    organized and existing under the
laws of Pennsylvania                    . Lender's address is
100 Witmer Road, P.O. Box 963, Horsham, PA  19044

**(E)**   "Note" *means the promissory note signed by Borrower and dated November 9,*
2005 . *The Note states that Borrower owes Lender*
Three Hundred Eighty Thousand and 00/100

Dollars (U.S. $   380,000.00   ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
December 1, 2035
**(F)**   "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
**(G)**   "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(H)**   "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Biweekly Payment Rider | ☐ 1-4 Family Rider |
| ☐ Other(s) [specify] | ☐ Planned Unit Development Rider | |

**(I)**   "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(J)**   "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(K)**   "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(L)**   "Escrow Items" means those items that are described in Section 3.
**(M)**   "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3014  1/01
GMACM - CMS.0012.IL (0001) *(Page 2 of 18)*          Initials

(N)     "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O)     "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P)     "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q)     "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the

County

[Type of Recording Jurisdiction]

of  DuPage

[Name of Recording Jurisdiction]

See attached Scheduel A hereto and made apart hereof

which currently has the address of
492 Asbury Drive,

[Street]

Aurora                    , Illinois   60502        ("Property Address"):
        [City]                           [Zip Code]

        TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3014  1/01
GMACM - CMS.0012.IL (0001) (Page 3 of 18)                Initials:

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

LOAN NO: 588969303
ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3014 1/01
GMACM - CMS.0012.IL (0001) (Page 4 of 18)        Initials:

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees, and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

LOAN NO: 568969303
ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3014  1/01
GMACM - CMS.0012.IL (0001) (Page 5 of 18)                    Initials:

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts

ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3014 1/01
GMACM - CMS.0)12.1L (0001) *(Page 6 of 18)*                     Initials:

(including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters,

LOAN NO: ███████
ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3014   1/01
GMACM - CMS.0013.IL (0003)  *(Page 7 of 18)*                    Initials

or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in

ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3014  1/01
GMACM – CMS.0012.IL (0001) *(Page 8 of 18)*                        Initials: _____

connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the

LOAN NO:
ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3014 1/01
GMACM - CMS.0012.IL (0001) *(Page 9 of 18)*    Initials:

amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until the Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3014  1/01
GMACM - CMS.0012.IL (0001) *(Page 10 of 18)*          Initials:

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

LOAN NO: ▮▮▮▮▮▮
ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3014  1/01
GMACM - CMS.0012.IL (0001) (Page 11 of 18)      Initials:

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3014 1/01
GMACM - CMS.0012.IL (0001) (Page 12 of 18)    Initials

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All Notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a

LOAN NO: ▮▮▮▮▮▮
ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3014  1/01
GMACM - CMS.0012.IL (0001) *(Page 13 of 18)*    Initials

prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17.  Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18.  Transfer of the Property or a Beneficial Interest in Borrower. As used in this** Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19.  Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to Section 22 of this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged unless as otherwise provided under Applicable Law. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower,

ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3014  1/01
GMACM - CMS.0012.IL (0001) *(Page 14 of 18)*          Initials:

this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that

LOAN NO:
ILLINOIS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3014  1/01
GMACM - CMS.0112.IL (0001) *(Page 15 of 18)*    Initials:

adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Homestead.** In accordance with Illinois law, the Borrower hereby releases and waives all rights under and by virtue of the Illinois homestead exemption laws.

**25. Placement of Collateral Protection Insurance.** Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in Borrower's

ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3014  1/01
GMACM - CMS.0012.IL (0001) *(Page 16 of 18)*                    Initials:

collateral. This insurance may, but need not, protect Borrower's interests. The coverage that
Lender purchases may not pay any claim that Borrower makes or any claim that is made against
Borrower in connection with the collateral. Borrower may later cancel any insurance purchased
by Lender, but only after providing Lender with evidence that Borrower has obtained insurance
as required by Borrower's and Lender's agreement. If Lender purchases insurance for the
collateral, Borrower will be responsible for the costs of that insurance, including interest and
any other charges Lender may impose in connection with the placement of the insurance, until
the effective date of the cancellation or expiration of the insurance. The costs of the insurance
may be added to Borrower's total outstanding balance or obligation. The costs of the insurance
may be more than the cost of insurance Borrower may be able to obtain on its own

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants
contained in this Security Instrument and in any Rider executed by Borrower and recorded with
it.

_____ (Seal)
Ronald A. Eriksen, Jr .                   -Borrower

_____ (Seal)
Julie A. Eriksen                          -Borrower

_____ (Seal)
                                          -Borrower

_____ (Seal)
                                          -Borrower

LOAN NO: ████████
Witnesses:

ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3014  1/01
GMACM - CMS.0012.IL (0001) *(Page 17 of 18)*

## INDIVIDUAL ACKNOWLEDGMENT

**STATE OF ILLINOIS,**

**COUNTY OF** ~~DuPage~~ Kane                          } SS

I, _Jennifer A. LaCalmita_                          , a Notary Public
in and for said county and state do hereby certify that
Ronald A. Eriksen and Julie A. Eriksen, husband and wife, as
tenants by the entirety

personally known to me to be the same person(s) whose name(s)  subscribed to the foregoing
instrument, appeared before me this day in person, and acknowledged that    THEY
signed and delivered the said instrument as   THEIR        free and voluntary act, for the uses
and purposes therein set forth.

Given under my hand and official seal, this      9th day of November
2005

                                               Notary Public

**My Commission Expires:**

```
"OFFICIAL SEAL"
JENNIFER A. LaCALAMITA
Notary Public, State of Illinois
My Commission expires 11/01/06
```

This instrument was prepared by:
     Tim Woodruff
     235 Fisher Drive
     Waterloo, IA 50701
     for: GMAC Mortgage Corp.

ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3014  1/01
GMACM - CMS.0112.IL (0001) *(Page 18 of 18)*                     Initials

 **CHICAGO TITLE INSURANCE COMPANY**

**ORDER NUMBER:** 1410   002507743 LZ
**STREET ADDRESS:** 492 ASBURY DR
**CITY:** AURORA        **COUNTY:** DUPAGE
**TAX NUMBER:** 07-19-207-009-0000

**LEGAL DESCRIPTION:**

LOT 121 IN FOX VALLEY EAST REGION II UNIT 53 - PHASE 1, BEING A SUBDIVISION OF
PART OF THE EAST 1/2 OF SECTION 19 AND THE WEST 1/2 OF SECTION 20, TOWNSHIP 38
NORTH, RANGE 9, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT
THEREOF RECORDED SEPTEMBER 1, 1995 AS DOCUMENT R95-118366 IN DU PAGE COUNTY,
ILLINOIS.

LEGALD                    JLA                    11/09/05

# NOTE

November 9, 2005          Aurora                          ~  IL
      *[Date]*             *[City]*                         *[State]*

492 Asbury Drive, Aurora, IL 60502
*[Property Address]*

EXHIBIT # ___

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 380,000.00          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is

GMAC Mortgage Corporation

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of          6.000   %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the First   day of each month beginning on January 1 2006   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on December 1, 2035

I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 780, Waterloo, IA 50702-0780, ATTN: Payment Processing          or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 2,278.30

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of   15   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   5.000   % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

LOAN NO. ███████
MULTISTATE FIXED RATE NOTE — Single Family — Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT   Form 3200 1/01
*(Page 1 of 2)* 314533215          Initials:
GMACM - CSM.0061.FIX (0403)

**(F) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note, is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
Ronald A. Eriksen, Jr                          -Borrower

_____ (Seal)
Julie A. Eriksen                               -Borrower

_____ (Seal)
                                               -Borrower

_____ (Seal)
                                               -Borrower

*[Sign Original Only]*

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3200    1/01
GMACM - CNM.0061.FIX (0401) *(Page 2 of 2)*

# Exhibit 4

Unknown Owners and Nonrecord Claimants
492 Asbury Drive
Aurora, IL 60502

Unknown Owners and Nonrecord Claimants
492 Asbury Drive
Aurora, IL 60502

IN THE CIRCUIT COURT FOR THE 18TH JUDICIAL DISTRICT
DUPAGE COUNTY - WHEATON, ILLINOIS

GMAC Mortgage, LLC

               PLAINTIFF

      Vs.

Ronald A. Eriksen a/k/a Ronald A. Eriksen Jr.; et. al.
               DEFENDANT(S)

No. 2010 CH 03248

## NOTICE OF FILING

TO:    Ronald A. Eriksen a/k/a Ronald A. Eriksen Jr., 492 Asbury Drive, Aurora, IL 60502;
Julie A. Eriksen, 492 Asbury Drive, Aurora, IL 60502;
City of Aurora, c/o City Clerk, 44 E. Downer Place, Aurora, IL 60507;
Mortgage Electronic Registration Systems, Inc., c/o CT Corporation System - Registered Agent,
208 S. LaSalle Street, Suite 814, Chicago, IL 60604;
GMAC Mortgage, LLC f/k/a GMAC Mortgage Corporation, c/o IL Corporation Service Co., -
Registered Agent, 801 Adlai Stevenson Drive, Springfield, IL 62703;
Joel Nathan, , Attorney for United States of America, 219 S. Dearborn Street, 5th Floor, Chicago,
IL 60604;
American Chartered Bank, 1199 E. Higgins Road, Schaumburg, IL 60173;
Alan S. Levine, 11328 W Monticello Place, Westchester, IL 60154;
Alan S. Levine (MA), 1039 Briarwood Drive, Fontana, WI 53125;
Unknown Owners and Nonrecord Claimants, 492 Asbury Drive, Aurora, IL 60502;
Thomas Gierlak, 730 Applewood Lane, Algonquin, IL 60102;

**PLEASE TAKE NOTICE** that we have caused to be filed on 09/03/2010 with the Clerk of the
Circuit Court of DuPage County, Illinois the attached Amended Complaint.

Codilis & Associates, P.C.

By:_____

CODILIS & ASSOCIATES, P.C.
Attorneys for Plaintiff
15W030 North Frontage Road, Suite 100
Burr Ridge, IL 60527

Attorney Number: #21762
DuPage #15170

**NOTE: Pursuant to the Fair Debt Collection Practices Act you are advised that this law firm is deemed to be a
debt collector attempting to collect a debt and any information obtained will be used for that purpose.**

## **PROOF OF SERVICE**

I , the undersigned, a non-attorney, certify that I served this notice by mailing a copy to the above-entitled addresses at the above addresses and depositing same in the U.S. Mail, 7140 Monroe Street, Willowbrook, IL 60527, at 5:00 p.m., on September 7, 2010.

Codilis & Associates, P.C.

By: _____

Codilis & Associates, P.C.
15W030 North Frontage Road, Suite 100
Burr Ridge, IL 60527
(630) 794-5300
14-10-19045
DuPage #15170

**IN THE CIRCUIT COURT FOR THE 18TH JUDICIAL DISTRICT
DUPAGE COUNTY - WHEATON, ILLINOIS**

GMAC Mortgage, LLC

PLAINTIFF

Vs.

Ronald A. Eriksen a/k/a Ronald A. Eriksen Jr.; et. al.
DEFENDANTS

No.  2010 CH 3248
RESIDENTIAL

## MOTION TO FILE AMENDED COMPLAINT

NOW COMES the Plaintiff, GMAC Mortgage, LLC, by and through its attorneys, Codilis & Associates, P.C., respectfully moving this Honorable Court for leave to file an Amended Complaint instanter, stating:

1.  On 06/07/2010, Plaintiff filed its Complaint to Foreclose Mortgage in the case at bar;

2.  Plaintiff has since discovered an additional party with a possible interest in the subject property;

3.  Plaintiff seeks leave to file an Amended Complaint instanter to add Thomas Gierlak as an additional party defendant;

WHEREFORE, Plaintiff prays as follows:

1.  For an Order granting Plaintiff leave to file an Amended Complaint to Foreclose Mortgage instanter, to add Thomas Gierlak as an additional party defendant; and

2.  For any such further relief this honorable court deems just and proper.

Respectfully submitted,

Codilis & Associates, P.C.

Jennifer E. Frick
ARDC # 6299794

Codilis & Associates, P.C.
Attorneys for Plaintiff
15W030 North Frontage Road, Suite 100
Burr Ridge, IL 60527
(630) 794-5300
DuPage #15170
14-10-19045
**NOTE: Pursuant to the Fair Debt Collection Practices Act you are advised that this law firm is deemed to be a debt collector attempting to collect a debt and any information obtained will be used for that purpose.**

## IN THE CIRCUIT COURT FOR THE 18TH JUDICIAL DISTRICT
## DUPAGE COUNTY - WHEATON, ILLINOIS

GMAC Mortgage, LLC

                PLAINTIFF

                                      No. 2010 CH 3248
                                         RESIDENTIAL

Ronald A. Eriksen a/k/a Ronald A. Eriksen Jr.; et. al.

                DEFENDANTS

## ORDER

The above cause coming on to be heard on motion of the Plaintiff, GMAC Mortgage, LLC, by and through its attorneys, Codilis & Associates, P.C., for leave to file an Amended Complaint to Foreclose Mortgage instanter, to add Thomas Gierlak as an additional party defendant, due notice having been given and the Court being fully advised in the premises;

IT IS HEREBY ORDERED that leave be granted to the Plaintiff to file an Amended Complaint to Foreclose instanter, adding Thomas Gierlak as an additional party defendant.

                                 ENTER:_____

                                 DATED:_____

Codilis & Associates, P.C.
Attorneys for Plaintiff
15W030 North Frontage Road, Suite 100
Burr Ridge, IL 60527
(630) 794-5300
DuPage #15170
14-10-19045

**IN THE CIRCUIT COURT FOR THE 18TH JUDICIAL DISTRICT
DUPAGE COUNTY - WHEATON, ILLINOIS**

GMAC Mortgage, LLC

PLAINTIFF

Vs.

Ronald A. Eriksen a/k/a Ronald A. Eriksen Jr.; Julie A.
Eriksen; City of Aurora; Mortgage Electronic
Registration Systems, Inc.; GMAC Mortgage, LLC f/k/a
GMAC Mortgage Corporation; United States of America;
American Chartered Bank; Alan S. Levine; Unknown
Owners and Nonrecord Claimants; Thomas Gierlak

DEFENDANTS

No. 2010 CH 3248
RESIDENTIAL

## AMENDED COMPLAINT TO FORECLOSE MORTGAGE

NOW COMES the Plaintiff, GMAC MORTGAGE, LLC, by and through its attorneys,
CODILIS & ASSOCIATES, P.C.,
complaining of the defendants herein and, pursuant to 735 ILCS 5/15-1101, states as
follows:

1. Plaintiff files this Complaint to Foreclose the mortgage, trust deed or other
conveyance in the nature of a mortgage (hereinafter called "Mortgage") hereinafter
described, and names the persons identified in the above caption as "Defendants" as
parties hereto.

2. Attached as "EXHIBIT A" is a copy of the mortgage. Attached as "EXHIBIT B" is a
copy of the Note.

3. Information concerning said Mortgage:

    (A) Nature of the instrument: Mortgage.

    (B) Date of the Mortgage: 11/9/2005

    (C) Name of the mortgagor(s):
        Ronald A. Eriksen a/k/a Ronald A. Eriksen Jr.
        Julie A. Eriksen

    (D) Name of the original mortgagee:
        Mortgage Electronic Registration Systems, Inc. as Nominee for GMAC
        Mortgage Corporation

    (E) Date and Place of Recording or Registering:
        12/21/2005

Office of the Recorder of Deeds of DuPage County Illinois

(F)  Identification of Recording:  Document No.  R2005-281930

(G)  Interest subject to the mortgage:  Fee Simple.

(H)  Amount of original indebtedness:

   (1)  Original Indebtedness:  $380,000.00

(I)  Both the legal description of the mortgaged real estate and the common address
or other information sufficient to identify it with reasonable certainty:

LOT 121 IN FOX VALLEY EAST REGION II UNIT 53, PHASE 1, BEING A
SUBDIVISION OF PART OF THE EAST 1/2 OF SECTION 19 AND THE
WEST 1/2 OF SECTION 20, TOWNSHIP 38 NORTH, RANGE 9, EAST OF
THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT
THEREOF RECORDED SEPTEMBER 1, 1995 AS DOCUMENT R95-118366 IN
DUPAGE COUNTY, ILLINOIS.

**COMMONLY KNOWN AS:**  492 Asbury Drive
                                          Aurora, IL 60502

**TAX PARCEL NUMBER:** 07-19-207-009

(J)  Statements as to defaults:  Mortgagors have not paid the monthly installments
of principal, taxes, interest and insurance for 03/01/2010, through the present; the
principal balance due on the Note and Mortgage is $358,571.16, plus interest,
costs, advances and fees. Interest accrues pursuant to the note.

(K)  Name of present owner(s) of said premises:
     Ronald A. Eriksen a/k/a Ronald A. Eriksen Jr.
     Julie A. Eriksen

(L)  Names of other persons who are joined as defendants and whose interest in or
lien on the mortgaged real estate is sought to be terminated and alleged to be
subordinate and inferior to the mortgage of the Plaintiff:

     City of Aurora, by virtue of a possible claim for lien against the subject
     property; Plaintiff alleges that the lien and interest of this Defendant is
     subordinate and inferior to the lien and interest of the Plaintiff.

     Mortgage Electronic Registration Systems, Inc., by virtue of a Mortgage
     executed by Ronald A. Eriksen and Julie A. Eriksen, dated January 24,
     2006, and Recorded/registered on April 4, 2006 in the office of the

Recorder/Registrar of Deeds of DuPage County, Illinois, as Document No.
R2006-061981, to secure a note in the principal sum of $95,000.00;

GMAC Mortgage, LLC f/k/a GMAC Mortgage Corporation, by virtue of
the fact that, upon information and belief, it may be the holder of the note
secured by the trust deed recorded as document #R2006-061981 as
referenced further herein.

The United States of America by virtue of a Notice of Federal Tax Lien
recorded/registered on April 30, 2009 as document #R2009-064706 in the
office of the recorder/registrar of DuPage County, Illinois. Said notice
was recorded against Ronald A. Eriksen of 492 Ashbury Drive, Aurora, IL
60502 whose social security number is XXX-XX-7173 for the
nonpayment of 6672 tax in the amount of $116,915.53.

American Chartered Bank, by virtue of a Memorandum of Judgment
against Ronald A. Eriksen Jr., rendered in Case No. 09L489, in the Circuit
Court of DuPage County, Illinois, and filed in the office of the
Recorder/Registrar of Deeds of DuPage County, Illinois on October 16,
2009 as Document No. R2009-158068 in the sum of $520,881.10. The
interest of this Defendant is subordinate to that of Plaintiff.

Alan S. Levine, by virtue of a Memorandum of Judgment against Ronald
A. Eriksen a/k/a Ronald Eriksen, rendered in Case No. 07CH1595
consolidated with 07CH18174, in the Circuit Court of Cook County,
Illinois, and filed in the office of the Recorder/Registrar of Deeds of Cook
County, Illinois on May 18, 2009 as Document No. R2009-073806 in the
sum of $352,300.00 plus interest. The interest of this Defendant is
subordinate to that of Plaintiff.

Thomas Gierlak, by virtue of a Memorandum of Judgment against Ronald
Eriksen, rendered in Case No. 2009 AR 000149, in the Circuit Court of
DuPage County, Illinois, and filed in the office of the Recorder/Registrar
of Deeds of DuPage County, Illinois on 6/9/2010 as Document No.
R2010-073652 in the sum of $27,985.79. The interest of this Defendant is
subordinate to that of Plaintiff.

(M) Names of persons who executed the Note, Assumption Agreement(s), and
Personal Guarantee:
Ronald A. Eriksen a/k/a Ronald A. Eriksen Jr.
Julie A. Eriksen

Please note that no personal deficiency will be sought against any party who has
received a Chapter 7 discharge or who are protected by the automatic stay at sale
confirmation.

(N) Capacity in which Plaintiff brings this foreclosure: Plaintiff is the Mortgagee
under 735 ILCS 5/15-1208.

Assignment recorded as Document Number: R2010-073535

(O) Facts in support of a redemption period shorter than the longer of 7 months
from the date the mortgagor or, if more than one, all the mortgagors have been
served with summons or by publication or have otherwise submitted to the
jurisdiction of the court, or 3 months from the entry of the judgment of foreclosure,
whichever is later, if sought:

The redemption period shall be determined pursuant to 735 ILCS 5/15-1603.

(P) Statement that the right of redemption has been waived by all owners of
redemption: There has been no executed waiver of redemption by all owners of
redemption, however Plaintiff alleges that it is not precluded from accepting such a
waiver of redemption by the filing of this complaint.

(Q) Facts in support of request for attorney's fees and of costs and expenses, if
applicable: The subject mortgage provides for payment of attorney fees, court
costs and expenses in the event of a default by the mortgagors.

(R) Facts in support of a request for appointment of mortgagee in possession or for
appointment of a receiver, and identity of such receiver, if sought: Unless
otherwise alleged, Plaintiff will pray for said relief after the filing of the instant
foreclosure action by separate petition if such relief is sought.

(S) Offer to the mortgagor in accordance with Section 15-1402 to accept title to
the real estate in satisfaction of all indebtedness and obligations secured by the
mortgage with judicial sale, if sought: No allegation of an offer is made however
Plaintiff alleges that it is not precluded from making or accepting such offer by the
filing of the instant foreclosure action.

(T) Name or names of defendants whose rights to possess the mortgaged real
estate, after confirmation of a foreclosure sale, is sought to be terminated and, if
not elsewhere stated, the facts in support thereof:

Ronald A. Eriksen a/k/a Ronald A. Eriksen Jr.; Julie A. Eriksen; City of Aurora;
Mortgage Electronic Registration Systems, Inc.; GMAC Mortgage, LLC f/k/a
GMAC Mortgage Corporation; United States of America; American Chartered
Bank; Alan S. Levine; Unknown Owners and Nonrecord Claimants; Thomas
Gierlak;

4. Plaintiff avers that in addition to persons designated by name herein and the Unknown
Defendants hereinbefore referred to, there are other persons, and/or non-record claimants
who are interested in this action and who have or claim some right, title, interest or lien

in, to or upon the real estate, or some part thereof, in this Complaint described, including
but not limited to the following:

Unknown Owners and NonRecord Claimants, if any.

That the name of each of such persons is unknown to Plaintiff and on diligent inquiry
cannot be ascertained, and all such persons are therefore made party defendants to this
action by the name and description of UNKNOWN OWNERS and NONRECORD
CLAIMANTS.

## REQUEST FOR RELIEF

**PLAINTIFF REQUESTS:**

(i)   A judgment of foreclosure and sale.

(ii)  An order granting a shortened redemption period, if sought.

(iii) A personal judgment for deficiency, if applicable and sought, and only against
parties who have not received a Chapter 7 bankruptcy discharge or who are personally
protected by the automatic stay at sale confirmation.

(iv)  An order granting possession, if sought.

(v)   An order placing the mortgagee in possession or appointing a receiver, if sought.

(vi)  A judgment for attorneys' fees, costs and expenses, if sought.

(vii) For the Appointment of a Selling Officer, if deemed appropriate by this court.

(viii) Such other and further relief as this court deems just.

GMAC Mortgage, LLC

BY: _____
      CODILIS & ASSOCIATES, P.C.
      One of its Attorneys          Jennifer E. Frick
                                    ARDC # 6299794

Codilis & Associates, P.C.
15W030 North Frontage Road, Suite 100
Burr Ridge, IL 60527
(630) 794-5300
14-10-19045
DuPage #15170
Winnebago # 531

**FRED BUCHOLZ**
DUPAGE COUNTY RECORDER
DEC.21,2005      RHSP    10:48 AM
OTHER                   07-19-207-009
**019 PAGES    R2005-281930**

After Recording Return To:

GMAC Mortgage Corp.
100 Witmer Road
Horsham, PA 19044-0963
ATTN:  Records Management

EXHIBIT # A

CHARGE C.T.I.C. DUPAG... 1-4  040

————— [Space Above This Line For Recording Data] —————

## MORTGAGE

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21.  Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)   "Security Instrument" means this document, which is dated November 9, 2005    , together with all Riders to this document.

(B)   "Borrower" is

Ronald A. Eriksen and Julie A. Eriksen, husband and wife, as tenants by the entirety

Borrower is the mortgagor under this Security Instrument.

(C)   "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

ILLINOIS – Single Family – Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT  Form 3014  1/01
*(Page 1 of 18)* 324533219   Initials: _____  346
GMACM - CMS.0012.IL (0001)

(D)    "Lender" is
GMAC Mortgage Corporation

Lender is a  Corporation                                organized and existing under the
laws of  Pennsylvania                                     . Lender's address is
100 Witmer Road, P.O. Box 963, Horsham, PA   19044

(E)    "Note" means the promissory note signed by Borrower and dated November 9,
2005    . The Note states that Borrower owes Lender
Three Hundred Eighty Thousand and 00/100

Dollars (U.S. $    380,000.00    ) plus interest. Borrower has promised to pay this
debt in regular Periodic Payments and to pay the debt in full not later than
December 1, 2035    .
(F)    "Property" means the property that is described below under the heading "Transfer of
Rights in the Property."
(G)    "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges
and late charges due under the Note, and all sums due under this Security Instrument, plus
interest.
(H)    "Riders" means all Riders to this Security Instrument that are executed by Borrower.
The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Biweekly Payment Rider | ☐ 1-4 Family Rider |
| ☐ Other(s) [specify] | ☐ Planned Unit Development Rider | |

(I)    "Applicable Law" means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as well
as all applicable final, non-appealable judicial opinions.
(J)    "Community Association Dues, Fees, and Assessments" means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by a condominium
association, homeowners association or similar organization.
(K)    "Electronic Funds Transfer" means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an electronic
terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize
a financial institution to debit or credit an account. Such term includes, but is not limited to,
point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone,
wire transfers, and automated clearinghouse transfers.
(L)    "Escrow Items" means those items that are described in Section 3.
(M)    "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages
described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or
other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv)
misrepresentations of, or omissions as to, the value and/or condition of the Property.

ILLINOIS -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3014  1/01
GMACM - CMS.0012.IL (0001) (Page 2 of 18)                        Initials:

(N)    "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O)    "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P)    "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q)    "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the

County
                                        [Type of Recording Jurisdiction]
of  DuPage
                                        [Name of Recording Jurisdiction]
See attached Scheduel A hereto and made apart hereof

which currently has the address of
492 Asbury Drive,
                                        [Street]

Aurora                         , Illinois    60502                ("Property Address"):
                [City]                              [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3014  1/01
GMACM - CMS.0012.IL (0001) (Page 3 of 18)                    Initials:

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

LOAN NO: ████████
ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3014 1/01
GMACM - CMS.0012.IL (0001) *(Page 4 of 18)*          Initials: ▓▓▓▓

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees, and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

LOAN NO:
ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3014  1/01
GMACM - CMS.0012.IL (0003) (Page 5 of 18)                          Initials:

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts

ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3014 1/01
GMACM - CMS.0)12.1L (0001) *(Page 6 of 18)*                    Initials:

(including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters,

LOAN NO.: ▇▇▇▇▇▇▇
ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3014  1/01
GMACM - CMS.0012.IL (0001) *(Page 7 of 18)*                    Initials:

or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in

ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3014   1/01
GMACM - CMS.0012.IL (0001) (Page 8 of 18)                                    Initials:

connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the

LOAN NO: ▓▓▓▓▓▓▓▓
ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3014  1/01
GMACM - CMS.0012.IL (0001) (Page 9 of 18)                    Initials:

amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until the Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law.    Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.    Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3014  1/01
GMACM - CMS.0012.IL (0001) (Page 10 of 18)                    Initials:

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

LOAN NO: ███████
ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3014  1/01
GMACM – CMS.0012.IL (0001) (Page 11 of 18)                    Initials:

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

ILLINOIS -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3014  1/01
GMACM - CMS.0012.IL (0001) (Page 12 of 18)                           Initials:

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All Notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a

LOAN NO : ███████

ILLINOIS -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3014  1/01

GMACM - CMS.0012.IL (0001) *(Page 13 of 18)*                Initials

prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to Section 22 of this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged unless as otherwise provided under Applicable Law. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower,

ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3014 1/01
GMACM - CMS.0012.IL (0001) *(Page 14 of 18)*                    Initials:

this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that

LOAN NO:
ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3014 1/01
GMACM - CMS.0012.IL (0001) *(Page 15 of 18)*    Initials:

adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waiver of Homestead.** In accordance with Illinois law, the Borrower hereby releases and waives all rights under and by virtue of the Illinois homestead exemption laws.

25. **Placement of Collateral Protection Insurance.** Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in Borrower's

collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by Borrower's and Lender's agreement. If Lender purchases insurance for the collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on its own

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
Ronald A. Eriksen, Jr                -Borrower

_____ (Seal)
Julie A. Eriksen                     -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)
                                     -Borrower

LOAN NO: ██████████
Witnesses:

_____    _____

ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3014 1/01
GMACM - CMS.0012.IL (0001) (Page 17 of 18)

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF ILLINOIS,

COUNTY OF DuPage Kane                                    } SS

I, Jennifer A. LaCalamita                              , a Notary Public
in and for said county and state do hereby certify that
Ronald A. Eriksen and Julie A. Eriksen, husband and wife, as
tenants by the entirety

personally known to me to be the same person(s) whose name(s) subscribed to the foregoing
instrument, appeared before me this day in person, and acknowledged that   THEY
signed and delivered the said instrument as   THEIR        free and voluntary act, for the uses
and purposes therein set forth.

Given under my hand and official seal, this   9th   day of November
2005

Notary Public

My Commission Expires:

"OFFICIAL SEAL"
JENNIFER A. LaCALAMITA
Notary Public, State of Illinois
My Commission expires 11/01/06

This instrument was prepared by:
        Tim Woodruff
        235 Fisher Drive
        Waterloo, IA 50701
        for: GMAC Mortgage Corp.

ILLINOIS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3014  1/01
GMACM - CMS.0012.IL (0001) (Page 18 of 18)                    Initials

 **CHICAGO TITLE INSURANCE COMPANY**

**ORDER NUMBER:** 1410   002507743 LZ
**STREET ADDRESS:** 492 ASBURY DR
**CITY:** AURORA                    **COUNTY:** DUPAGE
**TAX NUMBER:**

**LEGAL DESCRIPTION:**

LOT 121 IN FOX VALLEY EAST REGION II UNIT 53 - PHASE 1, BEING A SUBDIVISION OF
PART OF THE EAST 1/2 OF SECTION 19 AND THE WEST 1/2 OF SECTION 20, TOWNSHIP 38
NORTH, RANGE 9, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT
THEREOF RECORDED SEPTEMBER 1, 1995 AS DOCUMENT R95-118366 IN DU PAGE COUNTY,
ILLINOIS.

# NOTE

November 9, 2005                     Aurora                                        IL
     *[Date]*                                       *[City]*                                      *[State]*

492 Asbury Drive, Aurora, IL 60502

*[Property Address]*

EXHIBIT# _____

## 1.    BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 380,000.00        (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is

GMAC Mortgage Corporation

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.    INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of     6.000    %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3.    PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the First     day of each month beginning on  January 1
2006       . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on December 1, 2035
I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  P.O. Box 780, Waterloo, IA 50702-0780, ATTN:
Payment Processing                           or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ 2,278.30

## 4.    BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5.    LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.    BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of     15        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  5.000        % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

LOAN NO.:
MULTISTATE FIXED RATE NOTE — Single Family — Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT    Form 3200 1/01
*[Page 1 of 3]* 324551214       Initials:
GMACM - CNM.0061.FIX (0401)

**(F) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

**7.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note, is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.    WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.    UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
Ronald A. Eriksen, Jr .                -Borrower

_____ (Seal)
Julie A. Eryksen                       -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

*[Sign Original Only]*

# Exhibit 5

# TO THE SECOND DISTRICT APPELLATE COURT OF ILLINOIS
## APPEAL FROM THE CIRCUIT COURT OF DUPAGE COUNTY
### EIGHTEENTH JUDICIAL CIRCUIT

|  |  |  |
|---|---|---|
| GMAC MORTGAGE, LLC | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2010 CH003248 |
| | ) | |
| v. | ) | |
| | ) | |
| RONALD ERIKSEN, et al | ) | Honorable Judge Robert G. Gibson |
| | ) | |
| Defendants. | ) | **12 Member Jury Demanded** |

## NOTICE OF JOINT APPEAL

**Appellant's names:**     **Ron Eriksen and Julie Eriksen**
**Appellant's Address:**    **492 Asbury Dr., Aurora, IL 60502**

An appeal in the above entitled case is hereby taken from:

**Judgment Entered:**    **February 18th, 2011**
**Orders Entered:**       **May 17th, 2011**
**Relief Sought:**        **Reverse Finding of Default Judgment and Granting of Judgment of Foreclosure of February 18th, 2011, and Order Denying Verified Motion to Vacate the Default Judgment of May 17th, 2011 and allow Answer, Affirmative Defenses and Counter Claims.**

_/s/ Ron Eriksen_                    _/s/ Julie Eriksen_
**Appellant's Signature**           **Appellant's Signature**

---

State of Illinois
                    SS
County of DuPage

The undersigned on oath states that he mailed a copy of this Notice to the parties on the Service List, Attached hereto.

Subscribed and sworn before me this____day of June, 2011

---

Notary Public

# Exhibit 6



# CORPORATION FILE DETAIL REPORT

| Entity Name | GMAC MORTGAGE CORPORATION | File Number | 54007655 |
|---|---|---|---|
| Status | WITHDRAWN | | |
| Entity Type | CORPORATION | Type of Corp | FOREIGN BCA |
| Qualification Date (Foreign) | 10/11/1985 | State | PENNSYLVANIA |
| Agent Name | ILLINOIS CORPORATION SERVICE C | Agent Change Date | 04/06/2005 |
| Agent Street Address | 801 ADLAI STEVENSON DRIVE | President Name & Address | DAVID APPLEGATE 4 WALNUT GROVE DR HORSHAM PA 19044 |
| Agent City | SPRINGFIELD | Secretary Name & Address | WITHDRAWN 10 27 06 |
| Agent Zip | 62703 | Duration Date | PERPETUAL |
| Annual Report Filing Date | 10/26/2006 | For Year | 2006 |
| Assumed Name | INACTIVE - DITECH.COM | | |
| Old Corp Name | 11/13/1996 - GMAC MORTGAGE CORPORATION OF PA | | |

Return to the Search Screen