## Exhibit 1

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |

-----------------------------------------------------------------

## ORDER GRANTING RESCAP BORROWER CLAIMS TRUST'S SEVENTY-FIFTH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY BORROWER CLAIMS)

Upon the seventy-fifth omnibus objection to claims (the "Objection")[1] of the

ResCap Borrower Claims Trust (the "Trust"), established pursuant to the terms of the confirmed

Plan filed in the above-referenced Chapter 11 cases, as successor in interest to the Debtors for

Borrower Claim matters, seeking entry of an order, pursuant to section 502(b) of title 11 of the

United States Code (the "Bankruptcy Code"), Rule 3007(d) of the Federal Rules of Bankruptcy

Procedure, and this Court's order approving procedures for the filing of omnibus objections to

proofs of claim [Docket No. 3294] (the "Procedures Order"), disallowing and expunging the No

Liability Borrower Claims, all as more fully described in the Objection; and it appearing that this

Court has jurisdiction to consider the Objection pursuant to 28 U.S.C. §§ 157 and 1334; and

consideration of the Objection and the relief requested therein being a core proceeding pursuant

to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408

and 1409; and due and proper notice of the Objection having been provided, and it appearing that

no other or further notice need be provided; upon consideration of the Objection and the

*Declaration of Deanna Horst in Support of the ResCap Borrower Claims Trust's Seventy-Fifth*

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Objection.

*Omnibus Objection to Claims (No Liability Borrower Claims)* annexed thereto as <u>Exhibit 2</u>, and

the *Declaration of Norman S. Rosenbaum in Support of the ResCap Borrower Claims Trust's*

*Seventy-Fifth Omnibus Objection to Claims (No Liability Borrower Claims)*, annexed thereto as

<u>Exhibit 3</u>; and the Court having found and determined that the relief sought in the Objection is in

the best interests of the Trust, the Trust's constituents, the Debtors, and other parties in interest

and that the legal and factual bases set forth in the Objection establish just cause for the relief

granted herein; and the Court having determined that the Objection complies with the Borrower

Claim Procedures set forth in the Procedures Order; and after due deliberation and sufficient

cause appearing therefor, it is

ORDERED that the relief requested in the Objection is granted to the extent

provided herein; and it is further

ORDERED that, pursuant to section 502(b) of the Bankruptcy Code, the claims

listed on <u>Exhibit A</u> annexed hereto (collectively, the "<u>No Liability Borrower Claims</u>") are

disallowed and expunged with prejudice; and it is further

ORDERED that Kurtzman Carson Consultants LLC, the Debtors' claims and

noticing agent, is directed to disallow and expunge the No Liability Borrower Claims identified

on the schedule attached as <u>Exhibit A</u> hereto so that such claims are no longer maintained on the

Claims Register; and it is further

ORDERED that the Trust is authorized and empowered to take all actions as may

be necessary and appropriate to implement the terms of this Order; and it is further

ORDERED that notice of the Objection, as provided therein, shall be deemed

good and sufficient notice of such objection, and the requirements of Bankruptcy Rule 3007(a),

the Case Management Procedures entered on May 23, 2012 [Docket No. 141], the Procedures

Order, and the Local Bankruptcy Rules of this Court are satisfied by such notice; and it is further

ORDERED that this Order has no res judicata, estoppel, or other effect on the

validity, allowance, or disallowance of any claim not listed on Exhibit A annexed to this Order,

and the Trust's and any party in interest's right to object on any basis are expressly reserved with

respect to any such claim not listed on Exhibit A annexed hereto; and it is further

ORDERED that this Order shall be a final order with respect to each of the No

Liability Borrower Claims identified on Exhibit A annexed hereto, as if each such No Liability

Borrower Claim had been individually objected to; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to this Order.


Dated: _____, 2014
       New York, New York



                             _____
                             THE HONORABLE MARTIN GLENN
                             UNITED STATES BANKRUPTCY JUDGE

3

## Exhibit A

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)
SEVENTY-FIFTH OMNIBUS OBJECTION - NO LIABILITY BORROWER CLAIMS

| | Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|
| 1 | Michael Wheeler 1728 Victoria Way NW Kennesaw, GA 30152 | 4940 11/15/2012 | $2,180,000.00 General Unsecured | Homecomings Financial, LLC 12-12042 | Escrow Issues, Res Judicata | Claimant's loan on the Victoria Way property was originated by Terrace Mortgage Company on September 26, 2002. Debtor Residential Funding Company purchased the loan from Terrace Mortgage. Debtor transferred its interest when the loan was securitized on or about December 1, 2002 where JP Morgan Chase Bank was appointed as Trustee. Debtor Homecomings Financial serviced the loan on the Victoria Lane property from October 30, 2002 until servicing transferred to GMAC Mortgage, LLC on July 1, 2009. GMAC Mortgage serviced Claimant's loan on the Victoria Way property until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013. Debtor's involvement with Claimant's loans was limited to its roles as purchaser and servicer. | 10 |
| | | | | | | Claimant's loan on the London Court property was originated by Equifirst Corporation on August 4, 2004. Debtor Residential Funding Company purchased the loan from Equifirst. Debtor transferred its interest when the loan was securitized on or about December 1, 2004 where JP Morgan Chase Bank was appointed as Trustee. Debtor Homecomings Financial serviced Claimant's loan on the London Court property from December 9, 2004 until servicing transferred to GMAC Mortgage, LLC on July 1, 2009. GMAC Mortgage serviced until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013. | |
| | | | | | | Claimant attaches to his POC a complaint filed in Superior | |

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | Court of Cobb County, GA Case No. 05-01-10429-34.  The case was administratively closed on July 5, 2012.<br><br>Claimant filed for stay relief which was granted on February 13, 2013, see docket #2896 Order Granting Limited Stay Relief.  The Order granted Claimant relief to proceed in the state court action to resolve the litigation through to judgment.  The only remaining issue in the litigation was related to allegations related to a misapplied insurance payment from the Claimant's escrow account.  In the proof of claim, it is unclear how the Claimant was damaged by these specific allegations.  All other claims were dismissed on Summary Judgment on February 10, 2009 and July 16, 2012 (and the time for appeal has passed).  A copy of both orders is attached to the Objection as Exhibit 5-1. These claims, to the extent Claimant is attempting to reassert them, are therefore barred by the doctrine of res judicata.  Claimant filed with the Superior Court a copy of the Bankruptcy Court Order granting stay relief on July 24, 2013.  Claimant, however, did not contact the clerk of court to reopen the case nor has he taken any further action in the Superior Court case.  On May 28, 2014 counsel for Debtor sent Claimant a letter inquiring of his intentions in the Superior Court action and informed him that if no action was taken to prosecute that Superior Court case, as allowed in the February 2013 Order, that Debtor would file an objection to the proof of claim.  No response was received by Claimant and there has been no activity on the Superior Court docket.<br><br>Debtor has no liability for Claimant's escrow claim because Debtor's records show both the London Court and Victoria Way loans were set up with an escrow account.  On or about April 6, 2005, Debtor made a payment from the London Court escrow account in the | |

ny-1156701

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | amount of $774.64 payable to the Insurance Store in Marietta, Georgia, as agent for Auto-Owners Insurance Company ("Auto-Owners"). At the time of the payment, Debtor had confirmation that only London Court was insured with Auto-Owners. It is believed that Auto-Owners credited the $774.64 towards payment of the Victoria Way premium in error, as Auto-Owners had a policy in place on that property as well and Homecomings also serviced that loan. According to Claimant, the Victoria Way policy was due in April while the London Court policy was due in August. Claimant never notified Debtor of the misapplication of the insurance payment. | |
| 2 | Marvin E. McDougal, Jr.<br><br>PO Box 927<br><br>Tiburon, CA 94920 | 5892<br>11/26/2012 | UNLIQUIDATED<br>General Unsecured | GMAC Mortgage, LLC 12-12032 | General Servicing Issues, Wrongful Foreclosure, Standing Issues | Debtors' involvement with Claimant's loan was limited to its roles as purchaser and servicer. Loan was originated by All California Mortgage, Inc. on April 24, 2006. Non-debtor GMAC Bank purchased the loan from All California and subsequently transferred its interest to Debtor GMAC Mortgage who transferred its interest to Residential Funding who subsequently transferred its interest when the loan was securitized on or about June 1, 2006 where Deutsche Bank Trust Company was appointed as Trustee. Debtor GMAC Mortgage, LLC serviced the loan from May 11, 2006 until servicing transferred to Ocwen Loan Servicing on February 16, 2013.<br><br>Claimant asserts "wrongful foreclosure, invalid assignment of note and deed of trust, equitable subrogation, fraud" as the basis for claim in box 2 of the proof of claim form. In response to Debtors' Request Letter, Claimant asserts claims arising from i) Debtors' alleged wrongful "failure to assist (Claimant) in legal action (CV080838) against the County of Marin" (the | 8-9, 10-11, 11-12 |

ny-1156701

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | "Marin Lawsuit"), and ii) Debtors' lack of "standing" with respect to the loan and property at issue.  While there is no explanation or justification provided for the asserted claim amount of $1,650,000, Claimant attached the "Schedule A – Real Property" from Claimant's Ch. 7 case (case# 10-12725-AJ07, filed July 20, 2010), which lists the current value of Claimant's interest in 375 North Ferndale at $1,650,000. As attachment to the Request Letter, Claimant provided several documents, including a copy of a complaint filed by Claimant against County of Marin in connection with a dispute involving the North Ferndale Property.<br><br> Debtors have no liability for claims arising from Debtors' purported "failure to assist Claimant in his lawsuit against the County of Marin" because i) Debtors were never party to the lawsuit or involved in any of the allegations cited in the lawsuit, and ii) there is no contractual or legal basis setting forth Debtors' responsibility "to assist" Claimant with the Marin Lawsuit. Notwithstanding the above, Debtors records show that on numerous occasions Debtors accommodated Claimant's request to postpone foreclosure to give Claimant time to resolve the Marin Lawsuit.<br><br>Debtors have no liability for claims involving wrongful foreclosure because Debtors never completed foreclosure on the property. Additionally, in each instance that Debtors proceeded with the foreclosure process, i) Debtors acted appropriately and in accordance with the note and mortgage, and ii) Claimant was significantly past due on his account and had not made arrangements to bring the account current. Debtors have no liability for assertions that Debtor did not have standing to foreclose or service Claimant's loan on account of an "invalid assignment of note and deed of | |

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | trust." The assignment of mortgage on record properly assigns the mortgage to Deutsche Bank Trust Company Americas as Trustee. Debtor GMACM serviced the loan on behalf of Deutsche Bank Trust Company Americas as Trustee, and the terms of the underlying servicing agreement give GMACM authority as servicer to execute assignments on their behalf. Additionally, the Debtors' copy of the note shows a proper endorsement chain from All California Mortgage Inc to GMAC Bank, then from GMAC Bank to GMAC Mortgage Corporation, and finally, from GMAC Mortgage Corporation to blank. In support of Debtors' objection to the proof of claim, Debtors' records show: Debtors mailed Claimant a breach letter on March 5, 2007 advising Claimant that his account was past due and needed to be brought current to prevent foreclosure. The loan was referred to foreclosure April 12, 2007 as the loan was owing for January through April 2007 payments. Debtors filed a Notice of Default on April 20, 2007 and the foreclosure sale date was set for August 28, 2007. Foreclosure was placed on hold August 21, 2007 because on August 16, 2007 Claimant entered into a forbearance plan with Debtor. Per the terms of the forbearance plan, Debtor agreed to suspend, but not terminate, the foreclosure provided Claimant paid an initial installment of $28,830 by August 20, 2007, and subsequent monthly payments of $7,207.50 from September to November 2007. Debtors' records show that the forbearance plan was prompted by Claimant's request to forego foreclosure to give Claimant time to resolve the Marin Lawsuit. Claimant made all payments due on the forbearance plan. Claimant never made a subsequent payment on the account. Claimant spoke with Debtors via phone on December 12, 2007 stating he expected to | |

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | settle with county out of court before end of year but had been unsuccessful and was now pursuing remedy through the courts. Claimant spoke with Debtors via phone on January 17, 2008 stating he is moving forward with the Marin Lawsuit and would like to set up a new forbearance plan to bring the loan current as the loan was owing for July 2007 payment. Debtors advised Claimant that Claimant needed to submit a workout package to be considered for options, but that Debtor would postpone foreclosure sale date to give Claimant time to submit a package. Debtors postponed the foreclosure sale to February 28, 2008. Debtors spoke with Claimant's authorized attorney, John Sharp, via phone on February 25, 2008. Mr. Sharp advised Debtors that Claimant's efforts in the Marin Lawsuit would help bring Claimant's account current.  Based on the statements provided by Mr. Sharp, Debtors postponed the foreclosure to allow more time for Claimant to pursue Marin Lawsuit. Debtors spoke to Claimant via phone on April 25, 2008. Claimant stated he is moving forward with the Marin Lawsuit. Based on statements provided by Claimant, Debtors postponed foreclosure again as an accommodation to Claimant. Borrower made no subsequent payments.<br><br>The foreclosure hold was removed from the account on June 3, 2009 and the foreclosure sale was scheduled for July 22, 2009. The foreclosure was put on hold again June 30, 2009 to give Claimant more time to resolve the Marin Lawsuit. Borrower made no subsequent payments, and as a result, the foreclosure hold was removed on January 25, 2010 and the sale was set for February 16, 2010. Debtor put the foreclosure on hold again on February 10, 2010. Debtor removed the foreclosure hold on July 20, 2010. Claimant filed Chapter 7 Bankruptcy on July 21, | |

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | 2010. GMAC was granted relief from the automatic stay on October 28, 2010 and the loan was discharged from bankruptcy November 9, 2010. The sale was canceled and foreclosure was stopped on November 16, 2010 due to the Notice of Default being more than 3 years old and a new Notice of Default needed to be filed.  The account was referred to foreclosure on April 13, 2011 and a new Notice of Default was filed on May 9, 2011. The account had a presale redemption period of 6 months which expired on October 10, 2011, meaning Debtors could not set foreclosure sale until after this date. On September 23, 2011, foreclosure attorney set foreclosure sale date for November 7, 2011.

On October 13, 2011, Debtors postponed the foreclosure sale to November 21, 2011 to give Claimant more time to resolve the Marin lawsuit. On November 18, 2011 foreclosure was placed on hold again. On October 18, 2012, Claimant's Marin Lawsuit was settled and dismissed. The courts ruled in favor of Marin County and determined Claimant was responsible to make certain repairs to the property and judgment would be issued against the property if Claimant failed to make the repairs by an undisclosed date. No money was awarded to Claimant from the Marin Lawsuit.  Claimant made no subsequent payments on the account. At the time Debtor transferred servicing on February 16, 2013, foreclosure had not completed and Claimant was owing for the July 1, 2007 payment. | |
| 3 | ROYAL KINGDOM BUILDERSC/O SIMON M. WOODY, JR.

205 JAMERSON | 3702
11/08/2012 | $1,219,292.64 Secured | Residential Capital, LLC 12-12020 | Insufficient Documentation | Debtors object to claim on grounds of "insufficient documentation" because the information and documents provided by Claimant do not show how Debtors' connection to this claimant gives rise to liability.

Claimant asserts "services rendered" as the basis for the | 13-14 |

| | Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|
| | FARM RD<br><br>COLLIERVILLE, TN 38017 | | | | | claim in box 2 of the proof of claim form. No other explanation for basis for claim is included. Claimant attached to the proof of claim i) a UCC financing statement filed by Simon Woody Jr. on June 7, 2012 identifying Simon and Yvette Woody as both "Debtors" and the "Secured Party" in connection with a purported five-hundred million dollar lien against certain collateral, and ii) a truth-in-lending document dated November 22, 2006 showing proposed financing of $1,219,292.64 from First Magnus Financial Corporation, an Arizona Corporation secured by property at 205 Jamerson Farm Road, Eads, TN 38028. Debtors sent Claimant a Request Letter on June 21, 2013 requesting additional explanation and documentation in support of claim, however, Claimant failed to respond.<br><br>Notwithstanding the fact that the Claimant failed to state a valid basis for claim, Debtors' searched their books and records with respect to the loan tied to the Woody's and the property referenced in the proof of claim and found no evidence of monies owing to Royal Kingdom Builders or the Woody's. | |
| 4 | James P Demetriou<br><br>650 South Loop Parkway<br><br>St. Augustine, FL 32095 | 5653<br>11/16/2012 | $1,100,000.00<br>General Unsecured | GMAC Mortgage, LLC 12-12032 | Estoppel by Waiver, Res Judicata, Origination Issues, Credit Reporting, Wrongful Foreclosure | Debtors' involvement with Claimant's loan was limited to its roles as purchaser and servicer. The loan was originated on September 28, 2006 by Mortgage Lenders Network USA, Inc. in the amount of $555,750.00. Emax Financial Group, LLC ("Emax") purchased the loan from Mortgage Lenders Network USA. Debtor, Residential Funding Company, purchased the loan from Emax. Residential Funding transferred its interest when the loan was securitized on or about February 1, 2007 where US Bank, NA was appointed as Trustee. Debtor Homecomings Financial serviced the loan from February 7, 2007 until servicing transferred to GMAC Mortgage, | 9, 10-11, 13, 14-15, 15 |

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | LLC on or about July 1, 2009. Thereafter, GMAC Mortgage LLC serviced the loan until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013. | |

In the proof of claim, Claimant asserts that Debtor "allowed mortgage loan to be made without regard for its required and stated standards" and "expecting Claimant to default". As a result, Claimant asserts that he could not comply with the terms of the mortgage and suffered damages including loss in value of property, negative credit rating, and monetary damages. Claimant provided no evidence in support of the basis for claim or alleged damages. Claimant appears to base the proof of claim on allegations brought by 3rd parties in lawsuits against the Debtors and various non-Debtors that do not specifically involve Claimant.  As supporting documentation to the proof of claim, Claimant attached the first page of a lawsuit brought by Financial Guaranty Insurance Company against several of the Debtors (the "FGIC Lawsuit").  In response to Debtors' letter requesting more information and documentation in support of the claim, Claimant states that he "makes the same claims regarding fraud as those espoused and proven by FGIC" in the FGIC Lawsuit. Claimant further asserts damages related to credit reporting, and that Debtor engaged in "robo-signing", "inappropriate use of the MERS system", "defrauding the Court into granting judgment in foreclosure" and that the assignment was not properly notarized and forged by the Debtors.

Debtors have no liability for any of the claims noted above because Claimant is estopped from asserting the claims against the Debtors. Debtors' records and research shows that Claimant filed for chapter 7 bankruptcy protection on February 26, 2014 and received an order of discharge on June 20, 2014.  Claimant's Chapter 7

ny-1156701

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | bankruptcy schedules do not show any liquidated, unliquidated or contingent claims against any of the Debtors that are consistent with the allegations in the Claimant's proof of claim.  The order and schedules are attached to the Objection as <u>Exhibit 6-1</u>.  All of the allegations and issues of fact regarding the proof of claim occurred prior to the Claimant's chapter 7 petition date and subsequent discharge. Notwithstanding the fact Claimant is estopped from bringing these claims against Debtors, Debtors have no liability for the claims because the claims have no merit as outlined below. | |
| | | | | | Debtors have no liability to Claimant for any claims arising from the FGIC Lawsuit or any other 3rd party lawsuits brought against Debtors because Claimant was not party to any such lawsuit and Claimant has failed to explain or prove why the lawsuit or the underlying causes of action in those cases give rise to an obligation of any Debtor to Claimant. | |
| | | | | | Debtors have no liability for the assertion that Debtor "allowed mortgage loan to be made expecting Claimant to default and without regard to required standards" because Debtor was not involved in the origination of Claimant's loan. Debtor's records show the loan was originated by Mortgage Lenders Network USA. | |
| | | | | | Debtors have no liability for issues involving credit reporting because Debtors' records show Debtor reported accurate information to the credit bureaus. | |
| | | | | | Debtors have no liability for allegations that Debtor did not have standing to foreclose because these very same claims were adjudicated in Florida State Court in favor or Debtors, and therefore are barred by the doctrine of Res Judicata.  Debtors' records show that on June 21, 2007 Debtor Homecomings Financial (acting on behalf of the | |

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | investor) filed a foreclosure complaint against Claimant in the 7th Judicial Circuit Court of St. Johns County, Florida (case # CA07-0784; US Bank National Association as Trustee vs. Demetriou, James). At the time of the foreclosure action, Claimant's loan was due for February 1, 2007 payment. On September 1, 2007 Claimant filed an answer to the foreclosure action in which Claimant alleged that Debtor did not have proper standing to foreclose. The court held a judgment hearing on September 2, 2008 and a foreclosure judgment was entered in favor of Plaintiff on September 18, 2008.  A copy of the Order is attached to the Objection as Exhibit 5-2. As a result of the above, Claimant is barred by Res Judicata from asserting wrongful foreclosure claims, including wrongful foreclosure on the basis that Debtors' lacked standing to foreclose due to "robo-signing" or alleged deficiencies in the assignment of mortgage. Notwithstanding the above, Debtors have no liability for assertions of wrongful foreclosure because Claimant has failed to demonstrate how they were damaged by this assertion. Debtors' records show that Claimant never lost their home in a foreclosure sale after foreclosure judgment was entered. Additionally, as of July 31, 2014, Ocwen confirms that Claimant has still not made a payment since January 2007.<br><br>Following the order of judgment in 2008, Debtors' records show the initial foreclosure sale date of December 9, 2008 was postponed as Debtors made a business decision to postpone all foreclosure sales scheduled during the holiday period from November 26, 2008 to January 2009. Thereafter, the foreclosure sale dates were postponed at the direction of either Debtors or the state court in order for Claimant to have time to explore loss mitigation options. According to Ocwen, on | |

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | July 31, 2014, the foreclosure sale was placed on hold due to Claimant filing for Chapter 7 bankruptcy protection. Ocwen advises that they are waiting for a ruling on their motion for relief from the automatic stay. | |
| 5    Sam Palmer<br><br>1682 Amarelle Street<br><br>Thousand Oaks, CA 91321 | 2761 11/07/2012 | $1,012,500.00 General Unsecured | Homecomings Financial, LLC 12-12042 | Wrongful Foreclosure, General no liability | Debtor's involvement with Claimant's loan was limited to originator and servicer.  Debtor Homecomings originated the loan on March 30, 2007.  Debtor transferred its interest when the loan was securitized on or about May 1, 2007 where Deutsche Bank Trust Company Americas as Trustee.  Debtor Homecomings serviced the loan from March 30, 2007 until servicing transferred to Aurora Loan Services on April 1, 2008.<br><br>Claimant alleges no one explained the terms of the loan. Debtor has no liability for Claimant's origination-based claims because all of those claims, whether based on fraud or TILA, are time barred.  The fraud claims are also precluded because they were added to the complaint without leave of court.  In addition, Claimant attached to her complaint a copy of the Truth in Lending Disclosure Statement she received and signed at closing, which show what her payments were going to be, as well as copies of the Note and Deed of Trust which disclose the terms of the loan.<br><br>Debtors have no liability for Claimant's wrongful foreclosure claims because Debtor has no interest in the foreclosure action and did not initiate any foreclosure proceedings against Claimant.  Loan was current and due for April 1, 2008 payment at the time servicing transferred to Aurora Loan Services.  In addition, any fraud or servicing related claims are time-barred.<br><br>Claimant filed litigation against Debtor and others in Superior Court of California, County of Ventura, Case No. | 7-8, 10-11 |

| | Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|
| | | | | | | 56-2011-00392361. The litigation was dismissed without leave to amend on January 30, 2012, in addition it was provided that Debtor could seek costs against Claimant (which Debtor did not pursue). Claimant filed an appeal on April 12, 2012 in the Court of Appeals, State of California, Second Appellate Division as No. B240307. The appeal has been stayed as to all parties.<br><br>Based on the facts and reasons stated above, the proof of claim does not give rise to liability for claims of wrongful foreclosure, fraud in the inducement, fraudulent concealment, declaratory relief or fraud. | |
| 6 | Emmanuel Diryawish c/o WPAL<br><br>3415 S McClintock Rd # 112<br><br>Tempe, AZ 85282 | 446 08/31/2012 | $1,000,000.00 Secured | GMAC Mortgage, LLC 12-12032 | Loan Modification, Wrongful Foreclosure | Debtor's involvement with Claimant's loan was limited to its roles as servicer. Loan was originated by BankUnited FSB on October 6, 2006. Debtor GMAC Mortgage, LLC serviced the loan from January 1, 2007 until servicing transferred to Ocwen Loan Servicing on February 16, 2013.<br><br>Debtor has no liability for claimant's loss mitigation claim because Debtor's records show:<br><br>Claimant was approved for a forbearance plan on March 19, 2009 requiring payments of $1087.09 due March 30, 2009 through September 30, 2009. Claimant did not make the first payment due on the forbearance plan, and a cancelation letter was mailed out to Claimant on April 14, 2009.<br><br>A new forbearance plan was approved on June 1, 2009 for 5 months for the same payment amount of $1087.09 with payments due the 5th of each month. Debtor spoke to Claimant on the phone on June 1, 2009 to inform about the new plan. Payments were made in June, July, and August. Claimant did not make the plan payment due on September 5, 2009. This forbearance plan was | 10-11, 16-17 |

ny-1156701

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | cancelled on September 15, 2009 and a letter was mailed to Claimant on September 17, 2009.  During the time of this forbearance plan, Debtor was working with Claimant on a modification review, but full documents were never received.<br><br>A new forbearance plan was approved on October 3, 2009 with payments of $1087.09 due October 6, 2009 and November 6, 2009. A full workout packet was received on December 2, 2009.  The account was denied for an HAMP modification on December 8, 2009 due to the property being non-owner occupied.  On December 11, 2009, the account was denied for traditional modification as income didn't support payment.  A denial letter was sent. Debtor continued to work with Claimant on loss mitigation options.  Debtor continued to provide short term forbearance agreements while reviewing for a modification and place the foreclosure on hold each time.  Claimant submitted a full packet for loan modification review on February 5, 2010.  A permanent modification was approved on April 15, 2010.  Claimant made the modified payments under the modification and was current as of the date of transfer to Ocwen.<br><br>Debtor has no liability for claimant's wrongful foreclosure claim because Debtor's records show Claimant received a breach letter on March 4, 2009 as the account was due for the January through March 2009 payments.  The account was referred to foreclosure on April 15, 2009 and a notice of foreclosure sale was executed on April 21, 2009.   Debtor appropriately appointed ETS as successor trustee on April 20, 2009.   The foreclosure hold was reviewed every 30 days from the time modification review began in 2009 to the date that the modification became final on the loan in 2010.  Each time loss mitigation activity was being conducted the foreclosure | |

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | was placed on hold, but did not terminate the foreclosure. Claimant also attaches a complaint to POC (Superior Court of Arizona, Maricopa County, CV 2012-050377). The complaint was dismissed for lack of prosecution on November 14, 2012. Based on the facts and reasons stated above, the proof of claim does not give rise to liability for claims of breach of contract, declaratory judgment, fraud or breach of implied covenant of good faith and fair dealing. | |
| 7  Brian H. Wilson KENNETH DLIN VS GMAC MORTGAGE LLC 43 Bulldigger Court Bailey, CO 80421 | 3732 11/08/2012 | $971,770.00 General Unsecured | GMAC Mortgage, LLC 12-12032 | Wrongful Foreclosure | Debtor's involvement with Claimant's loan was limited to its roles as servicer and purchaser of the loan. Greenpoint Mortgage Funding Inc. originated the first lien loan on February 20, 2004. Debtor GMAC Mortgage, LLC purchased the first lien loan from Greenpoint Mortgage Funding Inc. Debtor transferred its interest when the first lien loan was securitized on or about April 1, 2004 where HSBC Bank USA was appointed as Trustee. Debtor GMAC Mortgage, LLC serviced the first lien loan from July 1, 2004 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013. Debtor has no connection to the second lien loan. Debtor has no liability for Claimant's wrongful foreclosure claims and standing claims. First lien loan was referred to foreclosure on January 7, 2010. At the time of the referral, the loan was due for October 1, 2009 payment. The Debtors gave proper notice and complied with all state laws regarding the foreclosure. On May 27, 2010, the state court granted an order authorizing the sale of the property and sale was completed through the Public Trustee's Office on July 28, 2010. An action for possession/eviction was then commenced in which | 10-11 |

| | Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|
| | | | | | | Claimant asserted counterclaims for damages, those claims were stayed.  In his POC, Claimant alleges his damages are based on the default/deficiency judgment that was granted against him personally both on the first lien loan and second lien loan.  Debtor has no connection to the debt on the second lien, its deficiency or any judgment asserted against Claimant.  In addition, Debtor has confirmed that the foreclosure bid was submitted to the Public Trustee setting a deficiency amount of $191,743.68 on the first lien.  However, in Colorado, no judgment results from the submission of a deficiency bid to the Public Trustee.  A separate action must be filed in order to obtain a deficiency judgment, which Debtor did not commence.  As a result, there has been no deficiency judgment on record against Claimant related to the debt on the first lien.  Based on the facts and reasons stated above, the proof of claim does not give rise to liability for claims of breach of contract, breach of duty of good faith and fair dealing, promissory estoppel, breach of fiduciary duty, negligent misrepresentation, deceptive trade practices, negligence, civil conspiracy, interference with contract, negligent infliction of emotional distress or fraud. | |
| 8 | Alan Moss  P.O. Box 721  Moss Beach, CA 94038 | 4445 11/07/2012 | $750,000.00 General Unsecured | Executive Trustee Services, LLC 12-12028 | Standing Issues | Debtor, Executive Trustee Services ("ETS"), involvement with Claimant's loan was limited to acting as substitute trustee to conduct a non-judicial foreclosure. CJ Mortgage Inc. originated the loan on June 22, 2005. Debtor GMAC Mortgage, LLC serviced the loan from March 14, 2006 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.  On May 5, 2011 Claimant filed litigation against Bank of | 11-12 |

-16-

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | New York, Superior Court, San Mateo County, CA, Case No. CIV486130, as investor of the loan. In the complaint, Claimant seeks to void the foreclosure because Claimant states ETS lacked authority to foreclose. Specifically, Claimant asserts that ETS lacked authority because the appointment of substitute trustee was invalid.

Also on May 5, 2011, Claimant filed a parallel lawsuit against ETS, Superior Court, San Mateo County, CA, Case No. CIV505386, with the same allegations.  For unknown reasons, ETS did not enter an appearance and on June 17, 2011 default was entered.  A Motion to Set Aside the Default was filed on April 4, 2012 and was not heard by the court before the case was stayed.

In November 2013, Bank of New York, through Ocwen as successor servicer, completed a settlement with the Claimant which included a dismissal with prejudice of the case against Bank of New York (which included the same claims as in the ETS lawsuit).

Debtor has no liability for Claimant's lack of standing claim related to the authority of ETS to act as substitute trustee.   California Civil Code § 2934a, subdivision (d), which provides in salient part:

"A trustee named in a recorded substitution of trustee shall be deemed to be authorized to act as the trustee under the mortgage or deed of trust for all purposes from the date the substitution is executed by the mortgagee, beneficiaries, or by their authorized agents. Nothing herein requires that a trustee under a recorded substitution accept the substitution. Once recorded, the substitution shall constitute conclusive evidence of the authority of the substituted trustee or his or her agents to act pursuant to this section."  (Emphasis added.) | |

ny-1156701

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | ETS was appointed as substitute trustee on September 21, 2006, which was recorded on November 10, 2006. ETS recorded a Notice of Default on September 18, 2007. A Notice of Rescission of the Notice of Default was recorded on August 19, 2013 and the public records show Claimant as the title holder of the property. In addition, Claimant filed a Motion for Relief from Stay to proceed on the ETS case (Docket 877), but withdrew before the hearing on Debtor's MTD on behalf of ETS (Docket 1022). | |
| 9  Debra Young and Samuel Young David H. Kaplan, Esq.  20 Continental Drive,  Building One  Stanhope, NJ 7874 | 1383 10/18/2012 | $750,000.00 General Unsecured | GMAC Mortgage, LLC 12-12032 | Loan Modification, Wrongful Foreclosure, Origination Issues | Debtor's involvement with Claimant's loan was limited to its role as servicer of the loan. Debtor GMAC Mortgage, LLC serviced the loan from August 10, 2007 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013. The loan was originated by MortgageIT, Inc. on August 1, 2007. The account was referred to foreclosure on June 8, 2009 as the account was due for the April 1, 2009 payment. On November 19, 2010, a foreclosure complaint was filed by HSBC Bank, NA, as trustee.  On May 20, 2011, Claimants filed an answer, counterclaim and third-party claim, adding Debtor GMAC Mortgage and Wells Fargo.  The counterclaim and third party complaint includes the same allegations against all parties, including violation of the NJ Consumer Fraud Act, fraud, unconscionability, unjust enrichment, breach of fiduciary duty, violation of good faith and fair dealing, and the NJ Home Ownership Act.  These are the same claims that were raised in the proofs of claim.  At the foreclosure trial on November 30, 2011, the court dismissed the foreclosure complaint without prejudice due to a deficient NOI (i.e., name on the notice was GMACM which was the servicer not the lender, and the statute requires the lender's name be on | 9, 10-11, 16-17 |

ny-1156701

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | the notice) and severed the cross-claims and counterclaims and transferred them to the law division. Those cross-claims and counterclaims were stayed. | |

Debtors have no liability for Claimant's origination-based claims because no Debtor entity was involved in the origination of this loan.

Debtors have no liability for Claimant's loan modification-based claims because Debtor handled all aspects of the loan modification process appropriately. Debtor's records show that on February 26, 2009, Claimant executed a fixed rate loan modification agreement (the "Modification"). The Modification terms included: an interest rate of 6.5%, a monthly P&I payment of $4,086.95 beginning April 1, 2009, a maturity date of August 1, 2037, and under section 3 of the modification agreement it states, "The amounts indicated in this paragraph do not include any required escrow payments of items such as hazard insurance or property taxes; if such escrow payments are required the monthly payments will be higher and may change as the amounts required for escrow items change." The escrow payment effective with the 4/1/09 payment was $1,369.63. The monthly payment due on the original note immediately prior to the February 2009 Modification included $4,204.34 for P&I and $1,363.63 for Escrow for a total payment of $5,597.40. The benefits of the modification include i) a reduction to the P&I payment of $117.39 per month, ii) a reduction to the interest rate from 6.875% to 6.5%, and iii) the February and March 2009 past due payments were brought current. Debtor's records also show an additional loss mitigation review in 2011. A workout packet was received on November 8, 2011; however the packet was missing a paystub and Debtor

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | could not complete the modification review. Debtors have no liability for Claimant's wrongful foreclosure claims because the Debtor's records show that no payment was made under the Modification. Based on the facts and reasons stated above, the proof of claim does not give rise to liability for claims of violation of the NJ Consumer Fraud Act, fraud, unconscionability, unjust enrichment, breach of fiduciary duty, violation of good faith and fair dealing, or the NJ Home Ownership Security Act. | |
| 10 | HSBC BANK USA NATIONAL ASSOCIATION AS TRUSTEE FOR DEUTSCHE ALT 2007 3 PLAINTIFF V DEBRA M YOUNG MR YOUNG HUSBAND et al<br><br>LAW OFFICE OF DAVID H KAPLAN LLC<br><br>20 CONTINENTAL DR BUILDING ONE<br><br>STANHOPE, NJ 7874 | 929 10/03/2012 | $750,000.00 General Unsecured | GMAC Mortgage, LLC 12-12032 | Loan Modification, Wrongful Foreclosure, Origination Issues | Debtor's involvement with Claimant's loan was limited to its role as servicer of the loan. Debtor GMAC Mortgage, LLC serviced the loan from August 10, 2007 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013. The loan was originated by MortgageIT, Inc. on August 1, 2007.<br><br>The account was referred to foreclosure on June 8, 2009 as the account was due for the April 1, 2009 payment. On November 19, 2010, a foreclosure complaint was filed by HSBC Bank, NA, as trustee.  On May 20, 2011, Claimants filed an answer, counterclaim and third-party claim, adding Debtor GMAC Mortgage and Wells Fargo.  The counterclaim and third party complaint includes the same allegations against all parties, including violation of the NJ Consumer Fraud Act, fraud, unconscionability, unjust enrichment, breach of fiduciary duty, violation of good faith and fair dealing, and the NJ Home Ownership Act.  These are the same claims that were raised in the proofs of claim.  At the foreclosure trial on November 30, 2011, the court dismissed the foreclosure complaint without prejudice due to a deficient NOI (i.e., name on the notice was GMACM which was the servicer not the | 9, 10-11, 16-17 |

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | lender, and the statute requires the lender's name be on the notice) and severed the cross-claims and counterclaims and transferred them to the law division.  Those cross-claims and counterclaims were stayed. | |

Debtors have no liability for Claimant's origination-based claims because no Debtor entity was involved in the origination of this loan.

Debtors have no liability for Claimant's loan modification-based claims because Debtor handled all aspects of the loan modification process appropriately.  Debtor's records show that on February 26, 2009, Claimant executed a fixed rate loan modification agreement (the "Modification").  The Modification terms included: an interest rate of 6.5%, a monthly P&I payment of $4,086.95 beginning April 1, 2009, a maturity date of August 1, 2037, and under section 3 of the modification agreement it states, "The amounts indicated in this paragraph do not include any required escrow payments of items such as hazard insurance or property taxes; if such escrow payments are required the monthly payments will be higher and may change as the amounts required for escrow items change."  The escrow payment effective with the 4/1/09 payment was $1,369.63. The monthly payment due on the original note immediately prior to the February 2009 Modification included $4,204.34 for P&I and $1,363.63 for Escrow for a total payment of $5,597.40. The benefits of the modification include i) a reduction to the P&I payment of $117.39 per month, ii) a reduction to the interest rate from 6.875% to 6.5%, and iii) the February and March 2009 past due payments were brought current.  Debtor's records also show an additional loss mitigation review in 2011.  A workout packet was received on November 8, 2011;

| | Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|
| | | | | | | however the packet was missing a paystub and Debtor could not complete the modification review. Debtors have no liability for Claimant's wrongful foreclosure claims because the Debtor's records show that no payment was made under the Modification. Based on the facts and reasons stated above, the proof of claim does not give rise to liability for claims of violation of the NJ Consumer Fraud Act, fraud, unconscionability, unjust enrichment, breach of fiduciary duty, violation of good faith and fair dealing, or the NJ Home Ownership Security Act. | |
| 11 | Karel Barel Ariel Barel Sui Juris Third Party Interpleader and Third Party Plaintiffs v GMAC Mortgage LLC Mortgage et al  114 WARBLER DR  WAYNE, NJ 7470 | 4118 11/09/2012 | $534,000.00 General Unsecured | GMAC Mortgage, LLC 12-12032 | Res Judicata | Debtors' involvement with Claimant's loan was limited to its roles as purchaser and servicer of the loan. Atlantic Stewardship Bank originated the loan on March 8, 2006. Non-Debtor GMAC Bank purchased from Atlantic Stewardship and subsequently transferred its interest to Debtor GMAC Mortgage. GMAC Mortgage transferred its interest to Fannie Mae on or about April 11, 2006. Debtor GMAC Mortgage, LLC serviced the loan from March 20, 2006 until servicing transferred to Ocwen Loan Servicing on February 16, 2013. Claimant references litigation in her proof of claim in the Superior Court of New Jersey, Passaic County, Case No. F-37098-08. Claimant had filed an answer, affirmative defenses and 3rd party claims in that lawsuit. Debtor, GMAC Mortgage, LLC filed for Summary Judgment and an order was granted December 10, 2012 striking the answer and dismissing the claim with prejudice. A copy of the Order is attached to the Objection as Exhibit 5-3. The matter was referred back to the foreclosure division to proceed as an uncontested matter for entry of final judgment. | 15 |

-22-

| | Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|
| 12 | Rainer P. Warner<br><br>1180 Flintlock Ave Se<br><br>Palm Bay, FL 32909-4707 | 1574<br>10/23/2012 | $207,947.59 Secured<br><br>$292,052.41 General Unsecured | Residential Capital, LLC 12-12020 | Wrongful Foreclosure, Interest Rates and Fees Collected, General Servicing Issues, Standing Issues | Debtors' involvement with Claimant's loan was limited to purchaser and servicer.  Home Loan Corporation d/b/a Expanded Mortgage Credit ("Home Loan") originated the loan on June 29, 2006.  Debtor Residential Funding Company, LLC purchased the loan from Home Loan.  Debtor transferred its interest when the loan was securitized on or about November 1, 2006 where Deutsche Bank Trust Company Americas was appointed as Trustee.  Debtor Homecomings Financial serviced the loan from October 13, 2006 until servicing transferred to GMAC Mortgage on or about July 1, 2009.  GMAC Mortgage serviced the loan until the property was sold to a 3rd party at foreclosure sale on November 28, 2012.<br><br>In the proof of claim, claimant states "financial injury which occurred due to Errors, Misrepresentations, and Deficiencies leading to the foreclosure process" as a basis for his claim.  The claimant attaches various pleadings from his foreclosure litigation, as well as correspondence and documents related to the loan. The bankruptcy court in its *Order Denying Without Prejudice the Debtors' Fiftieth Omnibus Objection as to Claim Number 1574 Filed by Rainer P. Warner* [Docket 6236] fairly summarized Claimant's assertions in the proof of claim as i) wrongful denial for loan modifications despite Claimant's eligibility, and ii) improperly assessed fees and charges, and iii) wrongful foreclosure, and iv) failing to conduct property inspections. In Claimant's response to Debtors' fiftieth omnibus objection, Claimant further asserts that ownership of the note was not properly established before foreclosure.<br><br>The Debtors have no liability for improper foreclosure on the basis that Debtors improperly handled Claimant's requests for loss mitigation options, including short sale | 8-9, 10-11, 11-12, 12 |

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | and loan modification options because i) Debtors acted appropriately and in accordance with the note and mortgage as the account was delinquent owing for December 1, 2008 through November 1, 2012 payments at time of foreclosure sale, and ii) Debtors correctly reviewed the account several times for both short sale and modification options, however, in each instance the Claimant did not meet the criteria necessary to be approved for these options.<br><br>In support of Debtors' objection to the proof of claim, Debtors' records show:<br><br>Debtors mailed a breach of contract letter to Claimant on December 3, 2008 as the account owed for October through December 2008 payments.  On December 31, 2008, Debtors received a workout package from Claimant for loan modification review.  Debtors referred account to foreclosure in January 8, 2009, due to Claimant not setting up any arrangement to bringing account current.  Debtors set up a foreclosure repayment plan on February 2, 2009, however this was cancelled two days later when Claimant requested different terms, as well as a modification.  Debtors set up a Traditional trial plan starting on February 19, 2009 in amount of $2,190, with payments due on March 19 and April 19 in amount of $2,189.62.  Debtors approved a permanent traditional modification on March 31, 2009 but was not completed because Claimant did not sign the agreement and did not provide the initial contribution.  Debtors mailed a denial letter to Claimant on June 1, 2009.<br><br>Debtors received a new workout package from Claimant on November 22, 2009 as Claimant was applying to short sale property; however, there were no offers to buy Claimant's property. Claimant spoke with Debtors via | |

-24-

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | phone on January 27, 2010. Debtors advised Claimant since there are no offers on property to talk to realtor about reducing asking price. Debtors received new short sale workout package from Claimant on March 23, 2010. Debtors closed down short sale review on August 6, 2010 as no authorization form was received for Claimant's realtor.<br><br>Claimant spoke with Debtors via phone on January 27, 2011. Claimant advised the property is still listed for sale.  Debtors advised that Claimant can resubmit listing agreement and short sale package for short sale review to be opened again. Debtors mailed new short sale package to Claimant. However, Debtors did not receive any information from Claimant.<br><br>Debtors received a new modification referral from a HOPE representative on November 7, 2011. Debtors mailed a missing items letter to Claimant on November 17, 2011. Claimant spoke with Debtors via phone on November 21, 2011. Debtors advised of missing documents needed for modification review. Debtors received part of missing documents on November 25, 2011; however, the modification review still had outstanding items. Claimant spoke with Debtors on November 29, 2011. Debtors advised of missing documents needed for modification review. Debtors denied HAMP modification on December 13, 2011 as Claimant's income was insufficient and Debtors could not modify the loan in a way to make it affordable for Claimant. A denial letter for HAMP modification was mailed to Claimant on December 14, 2011.  Debtors also denied loan for traditional modification options on December 30, 2011 as Claimant's income was insufficient and Debtors could not modify the loan in a way to make it affordable for Claimant. The denial letter for traditional | |

ny-1156701

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | modification was mailed January 3, 2012.<br><br>Claimant spoke with Debtors via phone on February 23, 2012. Claimant advised would like to be considered for short sale and currently in process of listing property for sale. Claimant spoke with Debtors via phone on April 4, 2012 stating realtor should be sending in listing agreement. Claimant spoke with Debtors via phone on May 4, 2012. Debtors advised still waiting to receive listing agreement from realtor.  Claimant spoke with Debtors on May 14, 2012. Debtors advised Claimant the listing agreement has not been received.  Debtors shutdown short sale review on June 18, 2012 due to not receiving information needed for review.<br><br>Claimant spoke with Debtors via phone on July 12, 2012. Claimant advised he would still like to pursue short sale and Debtors advised need listing agreement. Debtors received short sale workout package on August 1, 2012. On August 9, 2012, Debtors sent letter to Claimant requesting missing items for short sale review.  Claimant also spoke with Debtors via phone on this date and Claimant advised Debtors there were no offers on property. Claimant spoke with Debtors via phone on September 20, 2012. Claimant advised no current offers on property and Debtors advised there is a foreclosure sale scheduled for November 28, 2012 and if there is no offer on property foreclosure sale will commence.  Debtors denied short sale on October 16, 2012 due to missing information needed for review not being received. Debtors received new workout package for modification review on October 29, 2012. On November 1, 2012, a missing items letter was mailed to Claimant due to missing information. Claimant spoke with Debtors via phone on November 7, 2012. Debtors | |

ny-1156701

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | advised of missing documents needed. Debtors received additional workout package information on November 12, 2012.  Debtors denied HAMP modification on November 20, 2012 as Claimant's income was insufficient and Debtors could not modify the loan in a way to make it affordable for Claimant. Claimant spoke with Debtors via phone on November 21, 2012. Debtors advised of HAMP modification denial and that loan is currently under review for traditional modification options. Debtors reviewed loan for traditional options after call with Claimant and loan was denied traditional modification option due to forbearance below fair market value; the required unpaid principal balance to reach the affordable payment is less than the market value of the property and therefore cannot be modified.  Claimant spoke with Debtors via phone on November 23, 2012. Debtors advised of modification denial and that foreclosure sale is scheduled and cannot be postponed as there is no approved option on account. Foreclosure sale was completed on account and property was sold to third party on November 28, 2012.

The Debtors have no liability for the misrepresentation-based claims, as the alleged "fraudulent charges and fees" stem from property valuation and property inspections properly ordered and charged to Claimant's account in accordance with Debtors standard business practices, and the terms of the note and mortgage. Specifically, certain provisions within the mortgage give Debtor the authority to conduct inspections and property valuations in the event Claimant is in default, and Debtors have confirmed that in each instance that Debtors conducted inspections or ordered property valuations of Claimant's property, Claimant was in default, Section 7 of the deed of trust states in part | |

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | "Lender or its agent may make reasonable entries upon and inspections of the property."  Section 9 of the deed of trust states in part "If a Borrower fails to perform the covenants and agreements contained in this security instrument… then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the property…including protecting and/or assessing the value of the property". Section 14 of the deed of trust states that "Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purposes of protecting Lender's interest in the Property and rights under the security instrument, including but not limited to, attorney's fees, property inspection fees and valuation fees..."<br><br>The Debtors' books and records indicate that nine BPOs (property valuations) were completed on the property during Loss Mitigation review between March 2009 and August 2012. Per Debtors' servicing policies, a BPO had to be completed for either a Loss Mitigation Short Sale or a Modification Review, and a BPO is only valid for 120 days. Once that period of time expires, another BPO has to be completed if the loan is still in review for Loss Mitigation. Pursuant to the terms of the Note and Deed, the servicer is permitted to pass along these BPO expenses to the borrower. In addition, it is GMACM's standard servicing procedures to complete property inspections every month starting the month that the account falls 45 days delinquent. The fees from the inspections are the borrower's responsibility to pay as the account is delinquent. Mr. Warner also alleges in his claim that "GMAC have not done any inspections or preservations of the property." To the contrary, Debtors' records confirm that all inspections were completed when ordered. A property inspection can range from driving by | |

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | the home to see if it appears to be occupied to a knock on the door; the majority are a drive by as the goal of a property inspection is to make sure the property is maintained and occupied. Furthermore, the $549 increased monthly payment that the claimant complains of resulted from the Debtors having to satisfy the $11,000 of past due county taxes and the cost of hazard insurance that the claimant did not have on the property. | |
| | | | | | Debtor has no liability for Claimant's wrongful foreclosure claims on the basis that Debtors lacked standing to foreclose.  The Legal File –the file containing original note, recorded mortgage and title policy that is held by the custodian - was sent to foreclosure counsel January 21, 2009.  The court issued final judgment in favor of Debtors on September 6, 2012, and the property was sold at foreclosure sale on November 28, 2012. The assignment and endorsement chain is complete and valid.  Debtor's records show: i) Note is endorsed from originator to Residential Funding and from Residential Funding to Deutsche Bank and ii)  MERS, as nominee for lender, assigned the mortgage to Deutsche Bank Trust Company Americas.  The foreclosure complaint filed in January 2009, Deutsche Bank Trust Company Americas, as Trustee for RALI 2006 QA10  vs  Rainer P. Warner, MERS as nominee for Home Loan Corporation and unknown spouse of Rainer Warner, sought to foreclose the Mortgage lien on the property as well as reestablish the Note.  The complaint attaches a copy of the unendorsed Note, from the closing file.  However, the original Note with endorsements, was at all times being held by the custodian. | |

ny-1156701

| | Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|
| 13 | Mihailescu Florin PMB 545<br><br>8776 E Shea Blvd # 33A<br><br>Scottsdale, AZ 85260-6629 | 274 07/09/2012 | $496,000.00 General Unsecured | GMAC Mortgage, LLC 12-12032 | Wrongful Foreclosure | Debtors' involvement with Claimant's loan was limited to its roles as purchaser and servicer of the loan. SolutionsBank originated the loan on May 18, 2009. Non-debtor GMAC Bank purchased from SolutionsBank and Debtor GMAC Mortgage purchased the loan from GMAC Bank.  GMAC Mortgage transferred its interest to Fannie Mae on or about June 11, 2009.  Debtor GMAC Mortgage, LLC serviced the loan from May 18, 2009 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.  This 2009 loan from SolutionsBank paid off a prior loan serviced by GMAC Mortgage.  A release of mortgage on the prior loan was recorded on June 2, 2009.<br><br>Claimant states basis on proof of claim as "wrongful foreclosure" but provides no other information.  No response was received to the request for additional information that was sent to Claimant.<br><br>Debtor has no liability for Claimant's claim for wrongful foreclosure because: Note is endorsed from SolutionsBank to GMAC Bank, from GMAC Bank to GMAC Mortgage, LLC, and from GMAC Mortgage, LLC to Fannie Mae;  assignment of the mortgage is recorded from SolutionsBank to Mortgage Electronic Registration System (MERS), and from MERS to GMAC Mortgage, LLC; the loan was due for May 1, 2011 at the time of the August 5, 2011 foreclosure referral; a foreclosure Petition was filed November 1, 2011; and Claimant filed an answer to the foreclosure on March 23, 2012.  The foreclosure is still pending with Ocwen, as successor servicer.<br><br>Claimant had filed litigation in District Court of Johnson County, Kansas, Case No. 11-CV07709.  That case was | 10-11 |

-30-

| | Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|
| | | | | | | dismissed by plaintiff on September 14, 2012. | |
| 14 | Eliza Hemenway ELIZA HEMENWAY VS GMAC MORTGAGE LLC  259 Oak Street  San Francisco, CA 94102 | 2074 11/01/2012 | UNLIQUIDATED General Unsecured | GMAC Mortgage, LLC 12-12032 | General Servicing Issues | Debtors' involvement with Claimant's loan was limited to its roles as purchaser and servicer of the loan.  Sierra Pacific Mortgage Company, Inc. originated the loan on July 12, 2006.  Debtor Residential Funding Company, LLC purchased the loan from Sierra Pacific.  Debtor transferred its interest when the loan was securitized on or about August 1, 2006 where Deutsche Bank Trust Company Americas was appointed as Trustee.  Debtor Homecomings Financial serviced the loan from August 14, 2006 until servicing transferred to GMAC Mortgage, LLC on July 1, 2009.  GMAC Mortgage serviced the loan until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.  Claimant alleges damages resulting from an alleged trespass on the property, specifically on February 10, 2012 and March 14, 2012.  Debtor has no liability for Claimant's general servicing claims because no Debtor entered Claimant's property.  Debtor's records show that routine property inspections were completed to verify occupancy and condition of the property in 2011 and 2012 (about one per month).  Inspections are regularly conducted when a property has gone delinquent to verify the property has not been abandoned or been vandalized.  Property inspections are always, and were in this case, conducted by independent contractors.  Debtor's records of these inspections show that the contractors confirmed that photographs of the property were taken on each date from a location the street, the contractors did not enter the property and did not see or speak with the homeowner. | 8-9 |

ny-1156701

| | Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|
| | | | | | | Debtor's records show that at the time of the inspections in 2012, the loan was in default.  The account was referred to foreclosure on April 2, 2011 as the account was due for the May 1, 2010 payment. A Notice of Default was executed on October 19, 2012 as the account was due for December 1, 2010 payment. | |
| | | | | | | At all times, Debtor acted in accordance with its' servicing policies, and the terms of the note and deed of trust. Specifically, certain provisions within the deed of trust give Debtor the authority to conduct inspections and property valuations in the event Claimant is in default, Section 7 of the deed of trust states in part "Lender or its agent may make reasonable entries upon and inspections of the property."  Section 9 of the deed of trust states in part "If a Borrower fails to perform the covenants and agreements contained in this security instrument… then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the property…including protecting and/or assessing the value of the property". Section 14 of the deed of trust states that "Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purposes of protecting Lender's interest in the Property and rights under the security instrument, including but not limited to, attorney's fees, property inspection fees and valuation fees..." | |
| | | | | | | As a result, Debtor has no liability for Claimant's allegations related to assault, trespass or intentional infliction of emotional distress. | |
| 15 | Steven D Brockman and Edna C Brockman v GMAC | 2408 11/05/2012 | $387,000.00 General Unsecured | Executive Trustee Services, LLC | Origination Issues, Wrongful Foreclosure, | Debtors' involvement with Claimant's loans was limited to its roles as servicer.  Claimant's loan on the 708 Greenway property was originated by Paul Financial, LLC on May 5, 2006.   Debtor GMAC Mortgage, LLC serviced | 8-9, 9, 10-11, 15 |

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| Mortgage LLC et al.<br><br>Johnson and Johnson LLP<br><br>26060 Acero, Ste. 115<br><br>Mission Viejo, CA 92691-2768 | | | 12-12028 | General Servicing Issues, Res Judicata | Claimant's loan on the 708 Greenway property from August 14, 2006 until it was sold out of REO (Debtors managed for investor) on November 19, 2009.  Claimant's loan on the 716 Greenway property was originated by Paul Financial, LLC on March 27, 2006.  Debtor, GMAC Mortgage serviced Claimant's loan on the 716 Greenway property from June 7, 2006 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Claimant attaches to the proof of claim litigation filed in Superior Court of CA, Madera County, Case No. MCV057494, brought to challenge the completed non-judicial foreclosure on one of the properties and the pending non-judicial foreclosure sale on the second property.  The claims for wrongful foreclosure and unfair business practices were dismissed with prejudice by demurrer, as against the Debtors, on August 28, 2012. A copy of this Order is attached to the Objection as Exhibit 5-4.  These claims are barred by the doctrine of res judicata.  The only claims remaining are for declaratory relief and breach of contract, as they were not subject to the demurrer.  Claimant alleges that monthly payments on the loans increased due to the loan-to-value ratio increasing, and that Debtor never informed her of the adjustable rate terms.<br><br>Debtors have no liability for Claimant's origination-based claims because no Debtor was involved in the origination of the loans.  Paul Financial, LLC originated both loans, as purchase money investment properties.  Debtors' records show that in relation to each loan and property, Claimant signed a Note, Deed of Trust (including an Adjustable Rate Rider) which all include explanations of the terms of the loan, including provisions regarding initial payments, calculation of limited and full payments, recapitalization of unpaid interest resulting from limited payments into | |

| | Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|
| | | | | | | loan principal, the 110-% principal cap, and the increased fully-amortizing payment that would be triggered by approaching the 110% principal cap.

Debtors have no liability for Claimant's wrongful foreclosure claims because Debtors' records show the 708 Greenway loan was due for December 1, 2008  when it was referred to foreclosure March 10, 2009. Foreclosure sale took place on July 15, 2009 and 716 Greenway loan was due for December 1, 2010 when it was referred to foreclosure on March 9, 2011.

As a result of the above, Debtors have no liability for Claimant's allegations related to declaratory relief or breach of contract. | |
| 16 | Steven D Brockman and Edna C Brockman v GMAC Mortgage LLC et al.

Johnson and Johnson LLP

26060 Acero, Ste. 115

Mission Viejo, CA 92691-2768 | 2416 11/05/2012 | $387,000.00 General Unsecured | GMAC Mortgage, LLC 12-12032 | Origination issues, Wrongful Foreclosure, General Servicing Issues, Res Judicata | Debtors' involvement with Claimant's loans was limited to its roles as servicer.  Claimant's loan on the 708 Greenway property was originated by Paul Financial, LLC on May 5, 2006.   Debtor GMAC Mortgage, LLC serviced Claimant's loan on the 708 Greenway property from August 14, 2006 until it was sold out of REO (Debtors managed for investor) on November 19, 2009.  Claimant's loan on the 716 Greenway property was originated by Paul Financial, LLC on March 27, 2006.  Debtor, GMAC Mortgage serviced Claimant's loan on the 716 Greenway property from June 7, 2006 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.

Claimant attaches to the proof of claim litigation filed in Superior Court of CA, Madera County, Case No. MCV057494, brought to challenge the completed non-judicial foreclosure on one of the properties and the pending non-judicial foreclosure sale on the second property.  The claims for wrongful foreclosure and unfair business practices were dismissed with prejudice by | 8-9, 9, 10-11, 15 |

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | demurrer, as against the Debtors, on August 28, 2012.  A copy of the Order is attached to the Objection as Exhibit 5-4. These claims are barred by the doctrine of res judicata.  The only claims remaining are for declaratory relief and breach of contract, as they were not subject to the demurrer.  Claimant alleges that monthly payments on the loans increased due to the loan-to-value ratio increasing, and that Debtor never informed her of the adjustable rate terms.  Debtors have no liability for Claimant's origination-based claims because no Debtor was involved in the origination of the loans.  Paul Financial, LLC originated both loans, as purchase money investment properties.  Debtors' records show that in relation to each loan and property, Claimant signed a Note, Deed of Trust (including an Adjustable Rate Rider) which all include explanations of the terms of the loan, including provisions regarding initial payments, calculation of limited and full payments, recapitalization of unpaid interest resulting from limited payments into loan principal, the 110-% principal cap, and the increased fully-amortizing payment that would be triggered by approaching the 110% principal cap.  Debtors have no liability for Claimant's wrongful foreclosure claims because Debtors' records show the 708 Greenway loan was due for December 1, 2008  when it was referred to foreclosure March 10, 2009.  Foreclosure sale took place on July 15, 2009 and 716 Greenway loan was due for December 1, 2010 when it was referred to foreclosure on March 9, 2011.  As a result of the above, Debtors have no liability for Claimant's allegations related to declaratory relief or breach of contract. | |

-35-

| | Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|
| 17 | Rhonda Gosselin c/o Laird J. Heal, Esq<br><br>120 Chandler Street, Suite 2 R<br><br>Worcester, MA 1609 | 3862 11/09/2012 | $153,669.00 Secured<br><br>$165,980.60 General Unsecured | GMAC Mortgage, LLC 12-12032 | Loan Modification, Standing Issues, General Servicing Issues, Origination Issues | Debtor's involvement with Claimant's loan was limited to its roles as originator and servicer. Debtor GMAC Mortgage Corporation originated the loan on July 26, 2006. Debtor transferred its interest to Fannie Mae on or about September 15, 2006. Debtor GMAC Mortgage, LLC serviced the loan from July 26, 2006 until servicing transferred to Greentree Servicing LLC on February 1, 2013.<br><br>Debtor has no liability for Claimant's loss mitigation claim because Debtor's records show that prior to the forbearance plan being approved, the account had been referred to foreclosure on August 9, 2007. Account was breached on June 4, 2007 (due for April through June 2007 payments) and again on July 3, 2007 (due for June and July 2007 payments). A forbearance plan was entered into on November 2, 2007. Claimant made forbearance payments on November 13, 2007 in amount of $1,900, on December 8, 2007 in amount of $800, on January 15, 2008 in amount of $800, and on February 14, 2008 in amount of $800. As a result of all the forbearance payments being received and Claimant qualifying, the account was approved for a traditional permanent modification on February 20, 2008. The signed documents were due back from the Claimant on February 29, 2008. Claimant did not return the permanent modification documents and the modification was denied.<br><br>At the time of the forbearance, the foreclosure was placed on hold on November 15, 2007. The foreclosure remained on hold until hold was removed on May 15, 2008 as a result of not receiving the signed loan modification documents. Foreclosure restarted but was once again put on hold after receiving a Chapter 93A | 8-9, 9, 11-12, 16-17 |

ny-1156701

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | demand letter.  Response was sent on June 30, 2008.  Foreclosure remained on hold until August 18, 2008.  Claimant then filed Chapter 13 Bankruptcy and foreclosure was placed on hold again on September 18, 2008.  Claimant's Chapter 13 was dismissed and foreclosure resumed.  Claimant then filed for Chapter 7 Bankruptcy in April 2010, again the foreclosure was placed on hold.  At that point, the adversary proceeding attached to Claimant's POC was filed.  As of the date of service transfer to Greentree, there has been no completed foreclosure on the property.

Debtor has no liability for claimant's general servicing claim because Debtor's records show the account is due for April 1, 2009 on date of service release to Greentree.  Claimant alleges two payments were returned by Debtor to a third party, and not Claimant.  Debtor's records show the payment transferred on June 9, 2007 for $1516.90 was accidently transferred to another customer and that customer refused to return the payment.  Claimant was advised by Debtors on June 28, 2007 to put a stop payment on original check and Debtors would cover any costs. Debtors also agreed to amend credit if affected due to issue, waive late charges and offered to enroll in privacy guard at the expense of Debtors because of issue.  Letter was mailed to Claimant on July 3, 2007 advising of her ability to enroll in 1 free year of id theft prevention.  Debtor's records show no other misdirected payment.

Debtor has no liability for claimant's lack of standing claim because Debtor's records show that MERS was original mortgagee on the Mortgage dated July 26, 2007, MERS assigned the mortgage to Fannie Mae (recorded June 6, 2008), Fannie Mae assigned to GMAC Mortgage (recorded October 17, 2012), and GMAC Mortgage assigned to Greentree Servicing LLC (recorded on | |

ny-1156701

| | Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|
| | | | | | | September 11, 2013). | |
| | | | | | | Debtor has no liability for claimant's origination-based claim because Debtor's records show there was no violation of the disclosures made in the Truth in Lending Statement.  In addition, any claim for negligent lending is time-barred. | |
| | | | | | | Claimant attaches adversary complaint to her POC (U.S. Bky. Ct., District of Massachusetts, Western Division, 10-ap-03014).  That adversary was dismissed by summary judgment on April 18, 2012.  At the hearing, the court agreed that Claimant lacked standing to bring the case in the bankruptcy court.  Given the posture of the bankruptcy, that the Trustee had abandoned its interest in Plaintiff/debtor's claim and Plaintiff/debtor's discharge already had been granted, that the BK estate no longer had any interest in the claim, and therefore, it was not proper to continue the action in the BK court.  It was left to the debtor to pursue her claims in state court.  There is no indication that another lawsuit was ever filed. | |
| | | | | | | Based on the facts and reasons stated above, the proof of claim does not give rise to liability for claims of breach of contract, negligence, wrongful foreclosure, unfair and deceptive trade practices, breach of implied covenant of good faith and fair dealing, Consumer Credit Disclosure Act, TILA, or for declaratory judgment. | |
| | | | | | | *Claim was not scheduled on Claimant's BK.  The discharge had already occurred and the BK Court said they had no jurisdiction over this claim. | |
| 18 | DWAYNE F POOLE AND TRINA M POOLE vs GMAC | 4128 11/09/2012 | $220,922.00 Secured | GMAC Mortgage, LLC 12-12032 | Wrongful Foreclosure, Standing Issues, | Debtor's involvement with Claimant's loan was limited to purchaser and servicer of the loan. Worldwide Mortgage Company originated the loan on July 10, 2006.  Non-debtor GMAC Bank purchase from Worldwide Mortgage. | 8-9, 10-11, 11-12 |

ny-1156701

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| MORTGAGE LLC<br><br>220 River Rock Dr<br><br>Union, MO 63084 | | | | General Servicing Issues | Debtor GMAC Mortgage, LLC subsequently purchased the loan from GMAC Bank.  Debtor transferred  its interest in the loan to Ginnie Mae on or about August 28, 2006. Debtor GMAC Mortgage LLC serviced the loan from July 31, 2006 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Debtor has no liability for Claimant's lack-of standing claims because Debtor has verified that the assignment and endorsement chain is complete and valid.  Debtor's records show the Note is endorsed from originating lender to GMAC Bank, from GMAC Bank to GMAC Mortgage and from GMAC Mortgage to blank,  an assignment of Deed of Trust was recorded from MERS, as nominee for lender to GMAC Mortgage, and GMAC Mortgage appointed South and Associates as successor trustee to conduct the non-judicial foreclosure sale.<br><br>Debtors have no liability for Claimant's wrongful foreclosure claims because the loan was in default and due for November 1, 2010 payment when loan was referred to foreclosure on February 1, 2011.  Property was sold a trustee's sale on May 4, 2011.  A Trustee's Deed was issued from South and Associates to GMAC Mortgage on May 5, 2011.  Claimants voluntarily vacated the property in December 2011.  Ocwen, as current servicer, is proceeding with conveying the property to Ginnie Mae.<br><br>Claimant also alleges that Debtor did not respond to Qualified Written Request and rescission correspondence.  Debtor's records show that various correspondences were received and responses were sent to Claimant on October 26, 2010 and again on October 30, 2010.<br><br>Based on the facts and reasons stated above, the proof of | |

ny-1156701

| | Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|
| | | | | | | claim does not give rise to liability for claims of wrongful foreclosure, or violations of FDCPA, RESPA or TILA. | |
| 19 | MICHAEL E BOYD v GMAC MORTGAGE LLC MERS INC<br><br>5439 SOQUEL DR<br><br>SOQUEL, CA 95073 | 960 10/04/2012 | $186,000.00 Secured | GMAC Mortgage, LLC 12-12032 | Res Judicata | Debtors' involvement with Claimant's loans was limited to servicer of the loans.  The loan on Soquel Dr. was originated by Plaza Home Mortgage Inc. in January 2007.  Debtor GMAC Mortgage serviced the Soquel Dr. loan from April 10, 2007 until servicing transferred to Ocwen Loan Servicing LLC on February 16, 2013.  The loan on Lakebird Dr. was originated by Plaza Home Mortgage Inc.  Debtor, GMAC Mortgage serviced the Lakebird Dr. loan from March 13, 2007_ until servicing transferred to Ocwen Loan Servicing LLC on February 16, 2013.<br><br>On September 11, 2011, Claimant filed litigation in USDC, Northern District of CA, Case No 5:11-CV-05018, for "unconscionability contract and adhesion to real property."  The claims in the complaint were to invalidate/contest the liens on the property that were being serviced by the Debtors.  The case was dismissed with prejudice on August 22, 2012 by Order Granting Defendants' Motion to Dismiss Plaintiff's First Amended Complaint.  Claimant appealed the District Court's decision to the USCA, 9th Circuit, Case No 12-17434.  The Ninth Circuit affirmed the district court's order dismissing the case on August 22, 2014.  Copies of the Orders are attached to the Objection as Exhibit 5-5.<br><br>On December 12, 2011, Claimant commenced a Chapter 13 bankruptcy proceeding in the, Northern District of CA, Bankruptcy Court Case No. 11-BK-61311.  On May 14, 2014, the Chapter 13 Plan was confirmed.  In the Plan, the Claimant affirmed the liens, as the Plan provides that all arrears on the loans will be paid and Claimant will make ongoing payments on the loans.  Therefore, in | 15 |

ny-1156701

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | addition to the reasons stated above, the claims relating to the validity of the loan are precluded as a result of the chapter 13 plan.  Copies of the confirmed plan and the schedules is attached to the Objection as Exhibit 6-2. | |
| 20 | Gary A. Barney, Chapter 7 Trustee, State of Wyoming<br><br>Brad T. Hunsicker Winship & Winship, PC<br><br>PO Box 548<br><br>Casper, WY 82602 | 5589 11/16/2012 | $158,912.11 General Unsecured<br><br>$105,067.20 General Unsecured | GMAC Mortgage, LLC 12-12032 | Wrongful Foreclosure | Debtors' involvement with Claimant's loan was limited to its roles as purchaser and servicer of the loan.  USAA Federal Savings Bank originated the loan on August 6, 2007.  Debtor GMAC Mortgage purchased the loan from USAA.  Debtor transferred its interest to Fannie Mae on or about October 12, 2007.  Debtor GMAC Mortgage, LLC serviced the loan from August 6, 2007until property foreclosed September 1, 2010.<br><br>Debtor has no liability for Claimant's claim seeking to avoid and recover lien on property foreclosed by Debtor.  Claimant attaches to his proof of claim an Adversary Proceeding which was filed on January 19, 2011 in the US Bankruptcy Court, District of Wyoming, Case No. 11-ap-02003 ("Adversary Proceeding), from underlying personal Chapter 7 bankruptcy, Timothy Jackson Rau, seeking to avoid and recover a preferential transfer or in the alternative, to avoid a lien on property.<br><br>The primary issue in the Adversary Proceeding was whether an assignment of the mortgage by MERS violated state law, because MERS was not entitled to enforce the debt on the Note.  On May 10, 2012, the Bankruptcy Court issued a Certification of Question to the Wyoming Supreme Court, in which it asked, "Whether the failure of the mortgage to comply with the statutory requirements of Wyo. Stat.§§ 34-2-122 and 34-2-123 renders the mortgage void, as alleged by the Plaintiff." The WY Supreme Court agreed to answer the certified question, however a notice of Debtor's bankruptcy stayed the Adversary Proceeding, which caused the WY | 10-11 |

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | Supreme Court to return the certified question to the Bankruptcy Court, unanswered (with the reservation to answer the question upon determination that the automatic stay would not prevent such action).<br><br>Although the WY Supreme Court returned the certified question unanswered in the Adversary Proceeding, it answered the same certified question in a another matter, Barney v BAC Home Loan Servicing, Wyoming Supreme Court, Case S-12-0177, on May 8, 2013, in which it held:  "We answer the certified question in the negative. Wyo. Stat. Ann. §§ 34-2-122 and 123 are notice statutes intended to protect third parties from conflicting claims of a principal and agent. The Mortgage at issue in this case was not required to comply with Sections 122 and 123 because a) the recorded assignment of the Mortgage did not identify the grantee as acting in a representative capacity; and; b) there were no conflicting claims of a principal and agent from which a third party would require protection."<br><br>On April 18, 2014, Claimant filed a status report with the Bankruptcy Court in the Adversary Proceeding which stated: "Any determination thereon is premature at this stage in light of the appeal now pending before the Tenth Circuit Court of Appeals, Case No. 13-8003, Royal v. First Interstate Bank, et al. (relating to the base case In re Trierweiler, Case No. 10-20499, Adv. No. 10-02035, pending in this Court). Plaintiff requests that this Court keep this adversary proceeding open pending the outcome of the Trierweiler appeal, which will presumably dictate what actions, if any, should be taken with respect to this Adversary Proceeding."<br><br>The Tenth Circuit Court of Appeals issued an unpublished Order and Judgment on July 2, 2014, for the Trierweiler | |

| | Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|
| | | | | | | matter, in which it affirmed the U. S. Bankruptcy Appeals Court in matter 11-111, where in a published opinion the BAP held: "The Mortgage naming MERS as Mortgagee on behalf of FIB was valid when granted and was properly recorded. There was no invalidating split between the Note and the Mortgage either when the loan transaction closed or when the Note was assigned to Fannie Mae. Therefore the Trustee may not avoid the Mortgage because of alleged invalidity resulting from the splitting of the Note and Mortgage. Further, the Trustee may not avoid the assignment of the Mortgage to Fannie Mae since the transfer was not of an interest in the Debtors' Property." | |
| 21 | Andrea Mangan<br><br>Stevan J. Henrioulle<br>Law Office of Stevan J. Henrioulle<br><br>969G Edgewater Blvd<br><br>Foster City, CA 94404 | 3617<br>11/08/2012 | $2,600.00<br>Priority<br><br>UNLIQUIDATED<br>General<br>Unsecured | GMAC Mortgage, LLC 12-12032 | Origination Issues, Loan Modification, Wrongful Foreclosure | Debtors' involvement with Claimant's loan was limited to servicer of the loan. Debtor GMAC Mortgage LLC serviced the loan from April 1, 2007 until servicing transferred to Ocwen Loan Servicing, LLC on Feb 16, 2013. MortgageIT, Inc. originated the loan on August 24, 2005.<br><br>Claimant filed litigation against Debtors and others in the Superior Court of CA, San Francisco County, Case No. CGC-10-500318.  A Notice of Bankruptcy was filed as to GMAC Mortgage and ETS on June 4, 2012.  Claimant filed a Fourth Amended Complaint on August 23, 2012 against Debtors as wells as MERS, MortgageIT, Wells Fargo and Deutsche Bank.  The court granted dismissal with prejudice of the first amended complaint as to non-Debtors on June 13, 2013, including Wells Fargo, Deutsche Bank and MortgageIT.<br><br>There were claims that were only pled against Debtors that were not pled against non-Debtors that received the dismissal.<br><br>Debtors have no liability for Claimant's origination-based | 9, 10-11, 16-17 |

ny-1156701

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | claims because no Debtor was involved in the origination of Claimant's loan. The loan was originated by MortgageIT, Inc.<br><br>Debtors have no liability for wrongful foreclosure claims because i) at the time of foreclosure sale on March 9, 2010 Claimant owed July 2009 through March 2010 payments, and had not made arrangements to bring their account current, and ii) Claimants failed to comply with the final two Repayment Plans set-up on the account In December 2009 and February 2010, respectively.<br><br>Debtors have no liability for loan modification-related claims or claims involving improper handling of loss mitigation efforts because Claimant has failed to prove how they were damaged by such allegations. Debtors' records demonstrate an extensive effort to work with Claimant to prevent foreclosure, including providing Claimant with a permanent loan modification in January 2009 and several subsequent repayment plans after Claimant failed to make payments under the modification agreement. Debtors acknowledge the mistake of inadvertently not setting up the Repayment Plan promised to Claimant on October 5, 2009, and returning the two payments Claimant made under the Oct 5, 2009 Repayment Plan. However, Debtors' records show Debtor remedied the mistake by providing Claimant with a new Repayment Plan on December 9, 2009 and a subsequent Repayment Plan in February 2010.<br><br>Below is a chronology of the relevant events from the point Claimant first fell behind on payments to the point of foreclosure:<br><br>Debtors' records show Claimant's default started in October 2008. Claimant submitted a loss mitigation workout packed on December, 10 2008 and Debtors | |

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | mailed a 10 Day Missing Items Letter to Claimant. Debtors stopped modification review on December 13, 2008 due to Claimant's negative financial surplus. On December 26, 2008 Claimant spoke to Debtors and advised no need to send missing workout information as modification has been denied based on insufficient income. Claimant advised to use rental income of $6100 that was not included prior and will submit proof of income for review. Debtors mailed Claimant a Non-Sufficient Funds Letter on December 29, 2008 related to payment made December 15, 2008 in amount of $2,846.94 due to Claimant's bank stating account did not have funds to fulfill payment. Claimant's proof of rental income was received on January 2, 2009. Debtors mailed breach letter on January 2, 2009 as December 2008 and January 2009 payments were delinquent.

A traditional permanent modification was approved on January 22, 2009. On July 27, 2009, Debtors had to reverse payment received July 15, 2009 in amount of $2,619.21 because Claimant's bank reported there were insufficient funds. Breach letter was sent on August 4, 2009 as loan was due for July and August 2009 payments. On August 4, 2009, Debtors advised Claimant of payment returned for insufficient funds and how to make payments via Western Union and MoneyGram. Claimant advised would make July 2009 payment on August 4, 2009 and August 2009 payment on August 15, 2009. Debtors setup a Repayment Plan on the account to reflect the dates these two payments would come in. On August 19, 2009, the July and August 2009 payments were due according to Repayment Plan setup on August 4, 2009, however, payments were not received and the Repayment Plan was cancelled.

Debtors referred account to foreclosure on September 8, | |

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | 2009 as account was due for July through September 2009 payments. Claimant alleges the Notice of Default from September 2009 included inaccurate amounts due, which is incorrect.  The initial breach letter showed a total amount due of $5,714.06 (payments (July/August) $5238.42; Late Charges $415.64 and Fees/Costs $60.00). Loan was referred to Foreclosure September 9, 2009, and amount due was $8,475.48 (payments (July/Aug/Sept) $7,857.63; Late Charges $546.60 and Fees/Costs $71.25). NOD went out September 11, 2009 with total of $10,522.56 (which included additional foreclosure fees).<br><br>Debtors set up a two month Repayment Plan with a payment due September 18, 2009 in amount of $2,619.21 and the second payment due October 18, 2009 in amount of $9,825.48. Repayment Plan was cancelled (letter was mailed to Claimant) on October 1, 2009 as no payments were received.  On October 5, 2009, Claimant advised Debtor that payment for Repayment Plan was made but had been returned. Debtors advised payment was sent to wrong address. Debtors advised would reset Repayment Plan with first payment due October 6, 2009 in amount of $2,619.21, and on that call, Claimant stated they could pay the remaining balance due on the account of $19,772.34 on October 25, 2009 to bring account current.  Following this phone discussion, Debtor did not set-up the Repayment Plan as agreed, which was Debtor's error. Because no Repayment Plan was setup on the account, Debtor returned Claimant's payments of $2,619.21 and $9.825.45 on October 12, 2009 and October 24, 2009, respectively, on the basis that those payments were not enough to fully reinstate Claimant's account.  Although Debtors neglected to reset the Repayment Plan as promised, Debtors remedied the mistake by providing Claimant with a new Repayment | |

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | Plan on December 9, 2009. | |
| | | | | | On December 9, 2009, Debtors advised Claimant that they would set-up a six month repayment plan with a first payment of $2,619.21 due on December 18, 2009. On December 29, 2009 Debtors advised of next payment due on Repayment Plan. On January 18, 2010 Claimant told Debtor they would make the payment that was due right away. Debtors mailed Repayment Plan Cancellation Letter to Claimant on January 28, 2010 due to Claimant not making payment due January 18, 2010.  On February 3, 2010 Claimant advised selling home. Debtors advised Claimant needs to send in listing agreement for consideration. | |
| | | | | | On February 4, 2010, Debtors advised that a foreclosure sale was setup for February 9, 2010. As an accommodation to Claimant to allow Claimant time to sell the property, Debtors setup a Repayment Plan with first payment due February 20, 2010 in amount of $2,619.21, and postponed the February 9, 2009 foreclosure sale until March 9, 2010. Debtors mailed Repayment Plan Cancellation Letter to Claimant on March 5, 2009 due to Claimant not making the payment due February 20, 2010. Because Claimant failed to make payments under the February repayment plan and did not make arrangements with Debtor to bring the account current, a foreclosure sale was held on March 9, 2010. | |
| | | | | | Based on the facts and reasons stated above, the proof of claim does not give rise to liability for claims of deceit, fraudulent concealment, intentional misrepresentation, breach of contract, breach of implied covenant of good faith and fair dealing, promissory estoppel, equitable estoppel, wrongful foreclosure, or CA Business and Professional Code 17200. | |

| | Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|
| 22 | Andrea Mangan<br><br>Stevan J. Henrioulle<br>Law Office of Stevan J. Henrioulle<br><br>969G Edgewater Blvd<br><br>Foster City, CA 94404 | 3634<br>11/08/2012 | UNLIQUIDATED<br>General<br>Unsecured | Executive Trustee Services, LLC<br>12-12028 | Origination Issues, Loan Modification, Wrongful Foreclosure | Debtors' involvement with Claimant's loan was limited to servicer of the loan. Debtor GMAC Mortgage LLC serviced the loan from April 1, 2007 until servicing transferred to Ocwen Loan Servicing, LLC on Feb 16, 2013. MortgageIT, Inc. originated the loan on August 24, 2005.<br><br>Claimant filed litigation against Debtors and others in the Superior Court of CA, San Francisco County, Case No. CGC-10-500318.  A Notice of Bankruptcy was filed as to GMAC Mortgage and ETS on June 4, 2012.  Claimant filed a Fourth Amended Complaint on August 23, 2012 against Debtors as wells as MERS, MortgageIT, Wells Fargo and Deutsche Bank.  The court granted dismissal with prejudice of the first amended complaint as to non-Debtors on June 13, 2013, including Wells Fargo, Deutsche Bank and MortgageIT.<br><br>There were claims that were only pled against Debtors that were not pled against non-Debtors that received the dismissal.<br><br>Debtors have no liability for Claimant's origination-based claims because no Debtor was involved in the origination of Claimant's loan.  The loan was originated by MortgageIT, Inc.<br><br>Debtors have no liability for wrongful foreclosure claims because i) at the time of foreclosure sale on March 9, 2010 Claimant owed July 2009 through March 2010 payments, and had not made arrangements to bring their account current, and ii)  Claimants failed to comply with the final two Repayment Plans set-up on the account In December 2009 and February 2010, respectively.<br><br>Debtors have no liability for loan modification-related claims or claims involving improper handling of loss mitigation efforts because Claimant has failed to prove | 9, 10-11, 16-17 |

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | how they were damaged by such allegations. Debtors' records demonstrate an extensive effort to work with Claimant to prevent foreclosure, including providing Claimant with a permanent loan modification in January 2009 and several subsequent repayment plans after Claimant failed to make payments under the modification agreement.  Debtors acknowledge the mistake of inadvertently not setting up the Repayment Plan promised to Claimant on October 5, 2009, and returning the two payments Claimant made under the Oct 5, 2009 Repayment Plan. However, Debtors' records show Debtor remedied the mistake by providing Claimant with a new Repayment Plan on December 9, 2009 and a subsequent Repayment Plan in February 2010.<br><br>Below is a chronology of the relevant events from the point Claimant first fell behind on payments to the point of foreclosure:<br><br>Debtors' records show Claimant's default started in October 2008.  Claimant submitted a loss mitigation workout packed on December, 10 2008 and Debtors mailed a 10 Day Missing Items Letter to Claimant. Debtors stopped modification review on December 13, 2008 due to Claimant's negative financial surplus.  On December 26, 2008 Claimant spoke to Debtors and advised no need to send missing workout information as modification has been denied based on insufficient income. Claimant advised to use rental income of $6100 that was not included prior and will submit proof of income for review.  Debtors mailed Claimant a Non-Sufficient Funds Letter on December 29, 2008 related to payment made December 15, 2008 in amount of $2,846.94 due to Claimant's bank stating account did not have funds to fulfill payment.  Claimant's proof of rental income was received on January 2, 2009.  Debtors mailed | |

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | breach letter on January 2, 2009 as December 2008 and January 2009 payments were delinquent. | |

breach letter on January 2, 2009 as December 2008 and January 2009 payments were delinquent.

A traditional permanent modification was approved on January 22, 2009.  On July 27, 2009, Debtors had to reverse payment received July 15, 2009 in amount of $2,619.21  because Claimant's bank reported there were insufficient funds.  Breach letter was sent on August 4, 2009 as loan was due for July and August 2009 payments. On August 4, 2009, Debtors advised Claimant of payment returned for insufficient funds and how to make payments via Western Union and MoneyGram. Claimant advised would make July 2009 payment on August 4, 2009 and August 2009 payment on August 15, 2009. Debtors setup a Repayment Plan on the account to reflect the dates these two payments would come in. On August 19, 2009, the July and August 2009 payments were due according to Repayment Plan setup on August 4, 2009, however, payments were not received and the Repayment Plan was cancelled.

Debtors referred account to foreclosure on September 8, 2009 as account was due for July through September 2009 payments. Claimant alleges the Notice of Default from September 2009 included inaccurate amounts due, which is incorrect.  The initial breach letter showed a total amount due of $5,714.06 (payments (July/August) $5238.42; Late Charges $415.64 and Fees/Costs $60.00). Loan was referred to Foreclosure September 9, 2009, and amount due was $8,475.48 (payments (July/Aug/Sept) $7,857.63; Late Charges $546.60 and Fees/Costs $71.25). NOD went out September 11, 2009 with total of $10,522.56 (which included additional foreclosure fees).

Debtors set up a two month Repayment Plan with a payment due September 18, 2009 in amount of

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | $2,619.21 and the second payment due October 18, 2009 in amount of $9,825.48. Repayment Plan was cancelled (letter was mailed to Claimant) on October 1, 2009 as no payments were received.  On October 5, 2009, Claimant advised Debtor that payment for Repayment Plan was made but had been returned. Debtors advised payment was sent to wrong address. Debtors advised would reset Repayment Plan with first payment due October 6, 2009 in amount of $2,619.21, and on that call, Claimant stated they could pay the remaining balance due on the account of $19,772.34 on October 25, 2009 to bring account current.  Following this phone discussion, Debtor did not set-up the Repayment Plan as agreed, which was Debtor's error. Because no Repayment Plan was setup on the account, Debtor returned Claimant's payments of $2,619.21 and $9.825.45 on October 12, 2009 and October 24, 2009, respectively, on the basis that those payments were not enough to fully reinstate Claimant's account.  Although Debtors neglected to reset the Repayment Plan as promised, Debtors remedied the mistake by providing Claimant with a new Repayment Plan on December 9, 2009. <br><br> On December 9, 2009, Debtors advised Claimant that they would set-up a six month repayment plan with a first payment of $2,619.21 due on December 18, 2009. On December 29, 2009 Debtors advised of next payment due on Repayment Plan. On January 18, 2010 Claimant told Debtor they would make the payment that was due right away. Debtors mailed Repayment Plan Cancellation Letter to Claimant on January 28, 2010 due to Claimant not making payment due January 18, 2010.  On February 3, 2010 Claimant advised selling home. Debtors advised Claimant needs to send in listing agreement for consideration. | |

ny-1156701

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | On February 4, 2010, Debtors advised that a foreclosure sale was setup for February 9, 2010. As an accommodation to Claimant to allow Claimant time to sell the property, Debtors setup a Repayment Plan with first payment due February 20, 2010 in amount of $2,619.21, and postponed the February 9, 2009 foreclosure sale until March 9, 2010. Debtors mailed Repayment Plan Cancellation Letter to Claimant on March 5, 2009 due to Claimant not making the payment due February 20, 2010. Because Claimant failed to make payments under the February repayment plan and did not make arrangements with Debtor to bring the account current, a foreclosure sale was held on March 9, 2010.<br><br>Based on the facts and reasons stated above, the proof of claim does not give rise to liability for claims of deceit, fraudulent concealment, intentional misrepresentation, breach of contract, breach of implied covenant of good faith and fair dealing, promissory estoppel, equitable estoppel, wrongful foreclosure, or CA Business and Professional Code 17200. | |
| 23 | Lois Elaine Van Hoveln Decker c/o Denny Decker<br><br>05 West Park #5<br><br>Libertyville, IL 60048 | 6394 12/19/2012 | UNLIQUIDATED General Unsecured | GMAC Mortgage, LLC 12-12032 | Amended & Superseded | Claim No. 6394 was amended or replaced by Claim No. 6450. This is supported by Claimant's stated intention on page 1 of the proof of claim form that Claim 6450 is to amend and replace claims 6394 and 6402. | 13 |

ny-1156701

| | Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|
| 24 | Lois Decker c/o Denny Decker<br><br>705 West Park #5<br><br>Libertyville, IL 60048 | 6402 12/24/2012 | UNLIQUIDATED General Unsecured | GMAC Mortgage, LLC 12-12032 | Amended & Superseded | Debtors object to Claim No. 6402 on the basis that Claim No. 6402 was amended or replaced by Claim No. 6450. This is supported by Claimant's stated intention on page 1 of the proof of claim form that Claim 6450 is to amend and replace claims 6394 and 6402. | 13 |
| 25 | Lois Elaine Van Hoveln Decker c/o Denny Decker<br><br>705 West Park #5<br><br>Libertyville, IL 60048 | 6450 02/22/2013 | BLANK General Unsecured | GMAC Mortgage, LLC 12-12032 | Interest Rates and Fees Collected, General Servicing Issues | In Claim No. 6450, Claimant i) alleges wrongful charging of property inspection fees estimated at $3,075 related to account# 0535964506, and ii) disputes having received the proceeds of $36,889.50 in advances from their HELOC account and seeks reversal of this amount from their loan balance and "any interest charges tied to it".<br><br>Debtors have no liability for wrongful charging of property, inspection fees estimated at $3,075 because Debtors records show all inspections fees were charged in accordance with Debtors' servicing policies and the terms of the note and mortgage. Debtors' standard business practice is to conduct a property inspection every month until an account is brought current after it has fallen 45 days or more delinquent. Debtors' records show all inspections completed on the property were within these parameters. The terms of the mortgage executed by Claimant layout terms by which inspections can be charged to a borrower. According to section 14 of the Mortgage Deed of Trust signed by Claimant, "Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and | 8-9, 12 |

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | valuation fees." Furthermore, Debtors' records show that Claimant was only charged a total of $436 for inspection fees (not $3,075), which occurred between September 26, 2006 and November 16, 2012.<br><br>Debtors have no liability for the assertion that Claimant did not receive the proceeds from $36,889.50 in HELOC advances because Debtors' records show Claimant received the proceeds of all draws made from the HELOC account, Claimant affirmed the principal balance of Claimant's loan, which included the draws at issue, when Claimant executed a permanent modification of Claimant's HELOC loan April 7, 2010, and at no time during the loan modification process did Claimant dispute any advances on the line. Claimant has provided no proof that the proceeds were not received, and Claimant's assertions are barred by California's statute of limitations.<br><br>Debtors' servicing records show Claimant's HELOC loan originated on March 29, 2004 and had a $93,000 draw limit. Debtor sent to Claimant sixteen checks payable to either Lois Decker or Lois Van Hoveln Decker from Claimant's HELOC account between August 2004 to September 2005. Those draws ranged from $500 to $8,140.09 and totaled $95,437.67. Claimant's payments towards principal totaled $3,029.50 between 2004 and 2008.<br><br>Debtors received a workout package for modification review on February 26, 2010. Debtors received Claimant's signed modification documents on April 7, 2010. The permanent traditional modification for the HELOC was completed on April 28, 2010 reducing the interest rate from 4% to 2% and forgiving $18,397, thereby reducing unpaid principal balance from | |

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | $91,985.00 to $73,588.00.  In the executed modification agreement, Claimant affirms the debt owed on the mortgage; and prior to filing Claims 6450, 6402 and 6394 (on February 22, 2013, December 24, 2012 and December 19, 2012, respectively) , Debtors have no record of Claimant ever disputing the advances on the HELOC account.

Furthermore, Debtors have no liability because the HELOC-related claims are barred by California's statute of limitations.  The underlying property is in CA, which has a statute of limitations of 4 years for breach of written contracts, and 3 years for fraud (California Civil Procedures Codes §337 and §338, respectively). In this case, the transactions at issue occurred no later than September 2005, which is over 7 years prior to when Claimant first raised this issue in their proofs of claims. In California, a fraud claim accrues or begins when the victim discovered the fraud, except in the cases where victim should have discovered those facts with reasonable diligence (the "Discovery Rule"). Case law has interpreted this accrual provision to mean that 'a cause of action [under Code Civ. Proc., § 338(d)] accrues, and the limitations period commences to run, when the aggrieved party could have discovered the . . . mistake through the exercise of reasonable diligence.' " (*Creditors Collection Serv. v. Castaldi* (1995) 38 Cal.App.4th 1039, 1044 [45 Cal.Rptr. 2d 511]). Claimant does not have a Discovery Rule defense because Claimant should have discovered the alleged mistake or fraud by simply reviewing Claimant's monthly mortgage statements. The transactions at issue occurred between 2004 and 2005. Beginning in 2004 until servicing transferred to Specialized Loan Servicing on December 1, 2010, Debtor provided Claimant with monthly | |

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | statements containing an accounting of the advances, withdrawals, and balances owing under Claimant's HELOC, but Claimant did not dispute the balances or suggest fraud with Debtor until late 2012. It is reasonable to assume Claimant should have noticed the advance(s) at issue totaling $36,889.50 when they received the monthly statements. On the contrary, it seems unreasonable that Claimant would not have noticed the alleged $36,889.50 at issue and the resulting inflated principal balance because this amount was a significant portion of Claimant's unpaid balance from Sept 2005 until servicing transferred in 2010. | |
| 26 | 5970 11/28/2012 | UNLIQUIDATED General Unsecured | Residential Capital, LLC 12-12020 | Loan Modification | The loan was originated on August 12, 2003 by GMACM in the amount of $273,500 and subsequently sold to Fannie Mae. GMACM serviced the loan from August 12, 2003 until November 18, 2011 when the redemption period expired following the foreclosure sale.<br><br>The claim is based on the denial of a HAMP modification. Specifically, claimant asserts that (1) GMACM required the claimants to provide "strange requests" for "documents that dated back to 2000 or ten years old" in order to review the modification, (2) GMACM wrongfully refused to grant a modification of the loan; and (3) GMACM sold the property in foreclosure sale for a profit. Attached to the claim are numerous documents and correspondence that the claimants assert support their allegations.<br><br>Debtors have no liability for wrongful denial of a HAMP modification because (1) the claimants did not qualify for a HAMP modification and (2) the information requested by the Debtors was necessary for an account to be reviewed for the HAMP program. Debtors have no liability for the assertion that GMACM sold the property | 16-17 |

Michael and Gloria McGuinty

8708 53rd Terrace East

Bradenton, FL 34211

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | in foreclosure sale for a profit because the assertion is incorrect. | |

The paperwork requested by GMACM of Mr. and Ms. McGuinty was necessary as the HAMP program requires a complete package of documents for an account to be approved for the HAMP modification program. GMACM's servicing notes indicate that Mr. and Ms. McGuinty were informed of the missing information needed on February 24, 2010, which was the award letter for Mr. and Ms. McGuinty's Chase IRA, award letter for GM retirement plan and signed hardship affidavit. The HAMP program required all of this information as proof of income to confirm Mr. and Ms. McGuinty were receiving the income listed on their financial form. According to the Debtors' books and records, Mr. and Ms. McGuinty applied for a loan modification on June 6, 2009. They were denied a modification on July 20, 2009 due to insufficient income to support the property. GMACM denied the modification of the McGuinty Loan under the HAMP program for insufficient income to support the property based on the following information that was received in the Mr. and Ms. McGuinty's workout package: Mr. and Ms. McGuinty received a total of $4,595.17 every month from a pension and social security income. Their listed total expenses based on the financial form received in the same workout package equal $7,345.70, which left a deficit of $2,750.53. The deficit amount was more than four times their monthly mortgage payment at the time of review, which was $620.45. Therefore, not even the complete elimination of their mortgage payment would have resolved the McGuinty's monthly income deficit.

The Debtors' books and records indicate that Mr. and Ms. McGuinty again applied for a loan modification on

ny-1156701

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | February 7, 2010. The McGuinty's were not approved for a modification and were denied on March 10, 2010 due to insufficient income to support the modified payment. The McGuinty's loan modification was denied based on the following information that the Debtors received in Mr. and Ms. McGuinty's workout package: Mr. and Ms. McGuinty received a total of $4,835.17 monthly from pension and social security income. According to GMACM's servicing notes, the workout package also listed monthly income of $5,000 stemming from money borrowed from Mr. And Ms. McGuinty's IRA account. As borrowings do not qualify as monthly income, GMACM was unable to consider it in assessing Mr. and Ms. McGuinty's eligibility for loan modification. Mr. and Ms. McGuinty's workout package indicated that total monthly expenses were $7,998.78, which represented an increase in expenses from their previous modification request. After factoring Mr. and Ms. McGuinty's eligible monthly income and total expenses, this left a deficit of $3,153.61. This time, the monthly deficit amount was nearly four times more than the amount of the mortgage payment at the time of review, which was $798.04. Not even the elimination of their mortgage payment would have resolved the McGuinty's monthly income deficit. According to the Debtors' books and records, Mr. and

Ms. McGuinty applied for a modification again on December 17, 2010. At this time, the McGuinty's were approved for a HAMP trial plan with payments due March 1, 2011, April 1, 2011, and May 1, 2011. Subsequently, the McGuinty's were denied a permanent modification on April 6, 2011 because Mr. and Ms. McGuinty did not make their first trial payment due March 1, 2011. A modification review cannot move forward if the trial plan is not completed by the claimant | |

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | and Mr. and Ms. McGuinty did not comply with the terms of the trial plan. The loan was referred to foreclosure on April 9, 2011. The foreclosure sale took place May 18, 2011.  At the time the property was sold, the loan was due for August 2, 2010.  Sale occurred on May 18, 2011, with the redemption period expiring on November 18, 2011. The loan's owner, Fannie Mae, acquired the property at foreclosure sale with a credit bid of $247,537.59, which was the total balance owed by Claimant at the time of foreclosure sale and included amounts owing for principal, interest, escrows and fees. Public records show Fannie Mae sold the property for $230,000 on or about February 13, 2012, which is less than the total amounts Claimant owed at foreclosure. Neither the Debtors nor Fannie Mae profited from the sale of the property. | |

ny-1156701