12-12020-mg    Doc 7562-2    Filed 09/19/14    Entered 09/19/14 16:00:49    Exhibit 2 -
Report and Recommendation    Pg 1 of 19

# **Exhibit 2**

**Report and Recommendation**

12-12020-mg    Doc 7562-2    Filed 09/19/14    Entered 09/19/14 16:00:49    Exhibit 2
Case 1:10-cv-02485-KAM-JMA    Document 50    Filed 05/16/11    Page 1 of 18 PageID #: 979
Report and Recommendation    Pg 2 of 19

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
RAMON QUIROZ, HELEN QUIROZ, and
JESSICA ANGEL QUIROZ,

                                Plaintiffs,        **REPORT AND**
                                                                   **RECOMMENDATION**

    -against-
                                                                   10-CV-2485 (KAM) (JMA)

U.S. BANK NATIONAL ASSOCIATION as
Trustee, NEW CENTURY MORTGAGE CORP.,
HOMECOMINGS FINANCIAL a/k/a
HOMECOMINGS FINANCIAL GMAC
MORTGAGES, STEVEN J. BAUM, P.C., and
GMAC MORTGAGES,

                                Defendants.
-------------------------------------------------------------------X

A P P E A R A N C E S:

Ramon Quiroz
Helen Quiroz
Jessica Angel Quiroz
89-37 Metropolitan Avenue
Rego Park, NY 11374
    *Pro se Plaintiffs*

Robert Guttman
Zeichner Ellman & Krause LLP
575 Lexington Avenue, 10th Floor
New York, NY 10022
    *Attorney for Defendants U.S. Bank National Association, as trustee, Homecomings Financial a/k/a Homecomings Financial GMAC Mortgages, and GMAC Mortgages*

Amy E. Polowy
Natlie Ann Grigg
Steven J. Baum P.C.
220 Northpointe Parkway, Suite G
Buffalo, NY 14228
    *Attorneys for Defendant Steven J. Baum, P.C.*

1

**AZRACK, United States Magistrate Judge:**

On June 1, 2010, Ramon Quiroz, Helen Quiroz, and Jessica Angel Quiroz ("plaintiffs" or "Quiroz family") filed this action, pro se, against the U.S. Bank National Association ("USBNA"), New Century Mortgage Corporation, Homecomings Financial ("Homecomings"), and GMAC Mortgages ("GMAC") (collectively, "defendants"), as well as Steven J. Baum, P.C. ("Baum Firm"). See generally Compl., ECF No. 1.[1]  The causes of action pleaded by plaintiffs are laborious to ascertain and interspersed throughout the complaint.  Moreover, it is difficult, if not impossible, to tell which claims are raised against which defendants.  After affording plaintiffs the leniency typically extended to pro se litigants, they appear to allege the following: (1) violations of plaintiffs' Fifth and Fourteenth Amendment Due Process rights; (2) a fraud claim related to defendants' alleged misrepresentations in the state court proceedings;[2] (3) violations of the Fair Debt Collection Practices Act ("FDCPA"); (4) violations of the Truth in Lending Act ("TILA"); (5) breach of contract; (6) fraud claims relating to the inducement and

---

[1] The plaintiffs' prolix complaint is paginated but inconsistent in paragraph and section designations, so citations to the complaint will refer to the page number only.

[2] It is unclear whether plaintiffs assert a fraud claim specifically against the Baum Firm.  See Compl. 8 ("Attorney for Defendants [the Baum firm] has misled the Supreme Court Queens County . . . and falsely induced the [same court] that the Answer to the complaint in the foreclosure proceeding was not served . . . . Attorney from [state court] Defendants invented the above statements and fraudulently filed documents in court misleading the court and setting up the [Quiroz family].").  These allegations are contained in the portion of the complaint preceding the section entitled "First Cause of Action," so it is probable that plaintiffs did not intend to plead a common law fraud claim against the Baum firm.  This is further underscored by the fact that plaintiffs state that they intend to file a complaint against the Baum firm with the New York City Bar Association.  Compl. at 9.  Thus, I find that plaintiffs do not attempt to bring a fraud claim specifically against the Baum firm.  Regardless, even if such a claim were pleaded, I would recommend that the Court decline to exercise supplemental jurisdiction over such a claim because, as both the Baum Firm and plaintiffs are residents of New York, there is no diversity-based juridiction.  28 U.S.C. § 1332(a), 1367(c).

2

12-12020-mg Doc 7562-2 Filed 09/19/14 Entered 09/19/14 16:00:49 Exhibit 2
Case 1:10-cv-02485-KAM-JMA Document 50 Filed 05/16/11 Page 3 of 18 PageID #: 981
Report and Recommendation Pg 4 of 19

assignment of the mortgage agreement; and (7) an allegation that defendants' efforts to enforce the mortgage agreement resulted in psychological harm to Ramon Quiroz.[3]

In relief, plaintiffs seek a declaratory judgment to quiet title to the property in their favor; rescission of the mortgage agreement; return of $73,534.34, apparently the aggregated amount of the secondary loans with interest; $500,000 in damages for unjust enrichment; and $50,000,000 in punitive damages in connection with Ramon Quiroz's psychological condition. Compl. at 18. Further, plaintiffs specifically ask this Court to "withhold" several rulings by New York State courts,[4] and to compel defendants to produce discovery material not provided in a previous state court proceeding. See Compl. At 5–6. Finally, plaintiffs ask this Court to compel the United States Attorney's Office to bring criminal charges against all defendants under RICO. Compl. at 14.

Presently before the Court are motions to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure brought by USBNA, Homecomings, GMAC, and the Baum

---

[3] It is not entirely clear whether plaintiffs seek to raise a private cause of action under RICO. In the complaint, plaintiffs allege that there is "probable cause" to believe that defendants violated "federal laws in re-securities fraud and/or racketeering." Compl. at 14. They go on to argue that this imposes on the Court a "nondiscretionary" duty to "remand the pertinent principles to the United States Attorney [] for the Eastern District of New York." Compl. 3, 14. Thus, it seems that plaintiffs' goal, albeit a misguided one, is to have this Court compel the U.S. Attorney's office to bring RICO charges against defendant. Therefore, I find that plaintiffs did not intend to raise a private cause of action under RICO.

Moreover, even if plaintiffs do attempt to bring a RICO claim, it would fail under Federal Rule of Civil Procedure 12(b)(6). Plaintiffs do not adequately plead a RICO claim as the complaint is bereft of any allegations of a RICO enterprise or a pattern of racketeering activity. See 18 U.S.C. § 1961–64. Likewise, there is no indication that a valid RICO claim could be stated. Thus, there is no reason to grant plaintiffs leave to amend the complaint in this regard. See Poles v. Brooklyn Community Hous. and Servs., No. 10-CV-1733, 2010 WL 1992544, at *2 (E.D.N.Y. May 14, 2010) ("Where . . . the problems with the causes of action are 'substantive' and would not be cured with 'better pleading,' repleading would be futile and any such request should be denied." (citing Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000)).

[4] Plaintiffs state that they "[o]bject[] [to] the decisions from the following Courts: The Supreme Court County of Queens N.Y. Index # 25117/07, Appellate Division Second Judicial Department Kings County Index # 2008-09757, Court of Appeal Albany N.Y. Index # 2010-373." Compl. at 4 (emphasis omitted). Continuing, the plaintiffs request that "this Honorable United States District Court Eastern District of New York . . . withhold [*sic*] the Court of Appeals in Albany New York, and remand the decision dismissed by [that] Court, and adjourn this matter granting Plaintiff relief . . . ." Id. at 5.

3

12-12020-mg    Doc 7562-2    Filed 09/19/14    Entered 09/19/14 16:00:49    Exhibit 2    
Case 1:10-cv-02485-KAM-JMA    Document 56    Filed 05/16/11    Page 4 of 18 PageID #: 982
Report and Recommendation    Pg 5 of 19

Firm. Mot. to Dismiss, ECF No. 40; Notice of Mot. to Dismiss ("Baum Mot. to Dismiss"), ECF No. 34. The Honorable Kiyo A. Matsumoto referred this matter to me for a Report and Recommendation. Order, dated Sept. 1, 2010. For the reasons discussed below, I respectfully recommend that the Court grant defendants' motions, and dismiss plaintiffs' complaint in its entirety.

## I.     BACKGROUND

The following facts are taken from the complaint and are assumed to be true for the purposes of adjudicating the motions to dismiss. Additionally, I take judicial notice of court documents relating to prior state court actions in order to present the procedural posture of this case.[5]

### A.     Facts

The Quiroz family is composed of Ramon and Helen Quiroz, and their daughter, Jessica Angel Quiroz. Quiroz I Opposition ¶ 1. In 2004, the Quiroz family purchased a home at 89-37 Metropolitan Avenue in Rego Park, New York ("the property"). Compl. Apps. G, J. They

---

[5] Plaintiffs appended the following documents to the instant complaint: (1) New York State Court of Appeals denial of leave to appeal, dated May 6, 2010 ("Compl. App. 1"); (2) an answer to a foreclosure proceeding, dated October 2007 ("Compl. App. A"); (3) an unsigned New York State Supreme Court, Queens County, dismissal of a case with prejudice, Index No. 2523/09, dated July 2009 ("Compl. App. B."); (4) plaintiff's request to stay the state court's order of sale, pending appeal ("Compl. App. C."); (5) financial statements pertaining to three of the plaintiffs' loans ("Compl. App. D."); (6) evidence of the initiation of an appeal in the New York State Supreme Court, Appellate Division, Second Department, in 2008 ("Compl. App. E."); (7) additional financial statements pertaining to the plaintiffs' loans ("Compl. App. F."); (8) a property appraisal from 2004 ("Compl. App. G."); (9) evidence of an attempt to rescind the mortgage agreement in fall 2008 ("Compl. App. H."); (10) a motion to compel discovery made in state court, Index No. 25117/07, dated Aug. 21, 2009, and various defendants' subsequent objections ("Compl. App. I."); and (11) documentation of the release of the original mortgagee's lien, when the refinancing at issue satisfied the prior mortgage on the property ("Compl. App. J.").

Additional documents from prior litigation were submitted with the Baum firm's motion to dismiss: (1) USBNA's original foreclosure complaint in New York State Supreme Court, Queens County, Index No. 25117/07, Baum Mot. to Dismiss Ex. B, ECF No. 34–3 ("Quiroz I Compl."); (2) the resulting judgment and order of sale, Index No. 25117/07, Baum Mot. to Dismiss Ex. C, ECF No. 34–4 ("Quiroz I Decision"); (3) the Quiroz family's opposition to the foreclosure proceeding, Index No. 25117/07, Baum Mot. to Dismiss Ex. D, ECF No. 34–5 ("Quiroz I Opp'n"); (4) the Quiroz family's complaint in New York State Supreme Court, Queens County, Index No. 2523/09, Baum Mot. to Dismiss Ex. E, ECF Nos. 34–6, 7, 8 ("Quiroz II Compl."); and (5) a signed order dismissing the Quiroz family's state court complaint, Index No. 2523/09, Baum Mot. to Dismiss Ex. F, ECF No. 34–9 ("Quiroz II Decision").

12-12020-mg    Doc 7562-2    Filed 09/19/14    Entered 09/19/14 16:00:49    Exhibit 2
Case 1:10-cv-02485-KAM-JMA   Document 56   Filed 05/16/11   Page 6 of 18 PageID #: 983
Report and Recommendation    Pg 6 of 19

refinanced the property in July 2005, obtaining a mortgage of $522,000 from Homecomings, which more than satisfied the debts incurred in the original financing. Compl. at 10–11. The Homecomings loan officer who helped the plaintiffs obtain the mortgage told them that the new mortgage agreement stipulated a 5.5 percent fixed rate for the first five years of the payment schedule, and that the monthly payments for those first five years were to be $2,392.50 each. Id. However, there were terms in the agreement, of which plaintiffs were unaware, stipulating an adjustable rate, rather than a fixed rate. Id.

From the start, the plaintiffs were billed more than the sum expected, and, in 2007, they were informed that the rate would be adjusted to seven percent. Id. In the fall of 2008, plaintiffs attempted to rescind the mortgage, but Homecomings refused, recognizing no basis to conclude that there were any disclosure errors in the original mortgage documents. Id. at App. H. In early 2009, the interest rate increased again to more than eight percent. Id. at 11. In order to keep up with the increasing payments, plaintiffs obtained additional loans from Countrywide Financial and Bank of America totaling $60,000 ("secondary loans"). Id. at 12.

### B. Prior State Court Proceedings

On October 8, 2007, after plaintiffs failed to make the required payments, USBNA as Trustee initiated an action through its attorneys, the Baum Firm, against Jessica Angel Quiroz and Helen Quiroz, ("Quiroz I"), in New York State Supreme Court, Queens County, seeking an order of foreclosure and sale. See generally Quiroz I Compl. Because service of the summons and complaint was proper, and no defendant filed an answer or requested an extension of time in which to file an answer, the Honorable Lawrence V. Cullen ruled in favor of USBNA and ordered that the property be foreclosed upon and sold. See generally Quiroz I Decision. The Quiroz family contested this Order, and their opposition ultimately reached the New York Court

12-12020-mg Doc 7562-2 Filed 09/19/14 Entered 09/19/14 16:00:49 Exhibit 2
Case 1:10-cv-02485-KAM-JMA Document 50 Filed 05/18/11 Page 8 of 18 PageID #: 984
Report and Recommendation Pg 7 of 19

of Appeals, which, on May 6, 2010, declined to review the motion practice below. See Quiroz I Opp'n; Compl. Apps. 1, C, E, I.

While opposing the foreclosure proceeding in Quiroz I, on February 2, 2009, Jessica Angel Quiroz and Helen Quiroz simultaneously initiated a second action ("Quiroz II") in New York State Supreme Court, Queens County, against USBNA. See generally Quiroz II Compl. Therein, the Quiroz family alleged violations of TILA and various related Federal Reserve regulations. Additionally, interspersed throughout the Quiroz II complaint are state-law fraud and contract allegations. See, e.g., id. ¶ 3, § I. The Quiroz II complaint also refers to the Baum Firm, but the firm is not explicitly included in the caption. See Quiroz II Compl. at 2. In relief, the Quiroz II plaintiffs sought rescission of the mortgage agreement, damages corresponding to the loan amounts, statutory damages, punitive damages, and a declaratory judgment to quiet title to the property in their favor. See generally Quiroz II Compl. On July 1, 2009, the Honorable Bernice D. Siegal dismissed the complaint on res judicata grounds, concluding that Quiroz I was a final adjudication of all claims arising from the mortgage transaction. See Quiroz II Dismissal.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) requires the dismissal of a claim when there is a "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). In reviewing a motion to dismiss under this Rule, the Court accepts all factual allegations in the complaint as true. Shipping Fin. Servs. Corp. v. Drakos 140 F.3d 129, 131 (2d Cir. 1998). However, the Court should not draw inferences favorable to the party asserting jurisdiction. Id. In resolving a jurisdictional issue, the Court may consider affidavits and other materials beyond the pleadings, but may not rely on mere conclusions or hearsay statements contained therein. J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004).

12-12020-mg    Doc 7562-2    Filed 09/19/14    Entered 09/19/14 16:00:49    Exhibit 2
Case 1:10-cv-02485-KAM-JMA   Document 56   Filed 09/16/11   Page 7 of 18 PageID #: 985
Report and Recommendation    Pg 8 of 19

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint when plaintiff fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Motions to dismiss invoking res judicata are properly brought under Rule 12(b)(6). See Wiercinski v. Mangia 57, Inc., No. 09-CV-4413, 2010 WL 2681168, at *1 (E.D.N.Y. July 2, 2010). Rule 12(b)(6) motions to dismiss are analyzed under a "plausibility standard," which is guided by "[t]wo working principles." Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009). First, the court must accept all factual allegations as true and draw all reasonable inferences in favor of the non-moving party. Id. Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss," and this determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. In order to satisfy this prong, a plaintiff must "nudge[] [his] claims . . . across the line from conceivable to plausible." Id. at 1951 (citation and internal quotation marks omitted) (first omission supplied). If a plaintiff fails to do so, the complaint must be dismissed. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

The Court may exercise supplemental jurisdiction over pendent state-law claims when they "form part of the same case or controversy" as federal claims properly before the Court. 28 U.S.C. § 1367(a). However, "[t]he district court may decline to exercise supplemental jurisdiction if . . . [,inter alia,] the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3).

Additionally, "[i]t is well-settled that, in considering a motion to dismiss, the Court is entitled to take judicial notice of documents integral to or referred to in the complaint, as well as documents filed in other courts and other public records." Reyes v. Fairfield Props., 661 F. Supp. 2d 249, 255 n.1 (E.D.N.Y. 2009) (citing Global Network Commc'ns, Inc. v. City of New

7

12-12020-mg Doc 7562-2 Filed 09/19/14 Entered 09/19/14 16:00:49 Exhibit 2
Case 1:10-cv-02485-KAM-JMA Document 56 Filed 05/16/11 Page 9 of 18 PageID #: 986
Report and Recommendation Pg 9 of 19

York, 458 F.3d 150, 157 (2d Cir. 2006)). Finally, pro se plaintiffs are afforded a more liberal pleading standard. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, "pro se plaintiffs must still comport with the procedural and substantive rules of law." Person v. White, No. 09-CV-3920, 2010 WL 2723210, at *3 (E.D.N.Y. July 2, 2010) (citation and internal quotation marks omitted).

### III. DISCUSSION

As discussed below, I recommend that plaintiffs' (1) Fifth and Fourteenth Amendment Due Process claims, (2) FDCPA claim, and (3) fraud claim premised on defendants' allegedly fraudulent behavior during the state court proceedings be dismissed under the Rooker-Feldman doctrine. Additionally, I respectfully recommend that plaintiffs' (1) TILA and predatory lending claims, (2) breach of contract claim, (3) fraud in the inducement and fraudulent assignment claims be dismissed on res judicata grounds. Finally, I recommend that the Court decline to exercise supplemental jurisdiction over plaintiffs' tort claim for psychological harm inflicted on Ramon Quiroz.[6]

**A.  Rooker-Feldman**

  **1.  The Rooker-Feldman Doctrine**

The Rooker-Feldman doctrine designates the United States Supreme Court as the only federal court that may hear an appeal from a state-court judgment, Rooker v. Fidelity Trust Co., 263 U.S. 413, 415–16 (1923), and denies all other federal courts jurisdiction over claims that are "inextricably intertwined" with a prior determination issued by a state court. D.C. Court of Appeals v. Feldman, 460 U.S. 462, 483 n.16 (1983). In 2005, the Supreme Court confined this

---

[6] Because I find that the complaint is subject to dismissal on the above grounds, I need not address defendants' collateral estoppel arguments.

8

12-12020-mg    Doc 7562-2    Filed 09/19/14    Entered 09/19/14 16:00:49    Exhibit 2
Case 1:10-cv-02485-KAM-JMA    Document 50    Filed 05/18/11    Page 9 of 18 PageID #: 987
Report and Recommendation    Pg 10 of 19

doctrine to cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 283–84 (2005). In light of Exxon Mobil, the Second Circuit announced a set of four requirements that must be met for the Rooker-Feldman doctrine to apply:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state-court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced.

Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005) (internal quotations omitted). The first and fourth requirements are procedural, and the second and third are substantive. Id. As recently explained in the Eastern District of New York:

> A plaintiff's injuries are not caused by a state court judgment when the state court simply ratified, acquiesced in, or left unpunished the actions of a third party. Additionally, a party is not complaining of an injury caused by a state-court judgment when the exact injury of which the party complains in federal court existed prior in time to the state-court proceedings, and so could not have been caused by those proceedings.

Swiatkowski v. Citibank, No. 10-CV-114, 2010 WL 3951212, at *8 (E.D.N.Y. Oct. 7, 2010) (internal quotation marks and citations omitted).

### 2. Rooker-Feldman Bars Plaintiffs' Claims

The procedural requirements of Rooker-Feldman are satisfied in this case. First, the Quiroz family lost in state court in both Quiroz I and Quiroz II. Second, the last indication of any state-court litigation pertaining to this matter is the New York Court of Appeals declination to review prior motion practice, issued on May 6, 2010. Compl. App. 1. Since that decision precedes the June 1, 2010, filing of the instant complaint, all pertinent state-court decisions were issued before proceedings in this Court commenced.

9

Case 1:10-cv-02485-KAM-JMA   Document 30   Filed 05/16/11   Page 10 of 18 PageID #: 988
12-12020-mg    Doc 7562-2    Filed 09/19/14    Entered 09/19/14 16:00:49    Exhibit 2 -
Report and Recommendation    Pg 11 of 19

The substantive requirements of Rooker-Feldman are also met here. "Courts in this Circuit have consistently held that a plaintiff who lost possession of his home in a state court foreclosure proceeding is barred by the Rooker-Feldman doctrine from attacking the state court judgment in federal district court." Gray v. Americredit Fin. Servs., Inc., No. 07-CV-4039, 2009 WL 1787710, at *4 (S.D.N.Y. June 23, 2009) (listing cases). Here, plaintiffs go so far as to explicitly state their dissatisfaction with the state court proceedings, and to petition this Court to review and modify, or to vacate entirely, those decisions. See supra n.4; see also Gray, 2009 WL 1787710, at *4 (applying Rooker-Feldman doctrine to bar claims where a plaintiff explicitly asked for review of a prior state court foreclosure order). Plaintiffs thus fail to even mask their desire to appeal the state court judgment to this Court. In Trakansook v. Astoria Fed. Sav. and Loan Ass'n, No. 06-CV-1640, 2007 WL 1160433 (E.D.N.Y. Apr. 18, 2007), a case that bears similarity to the instant one, the Court noted:

> [P]laintiff claims she was injured when her house was taken from her without just compensation. However, [the lender] did not take plaintiff's house from her and then ask the state court to ratify its actions; rather, [the lender] sought and obtained a judgment of foreclosure and sale from the state court. That judgment, when subsequently executed, had the effect of depriving plaintiff of her property and causing the injury she asks this court to address. In other words, plaintiff's injury . . . was caused by the state court judgment, not by the action of a defendant that a state court ratified, acquiesced in, or left unpunished.

2007 WL 1160433, at *5. Here, in a similar fashion, defendants did not foreclose upon plaintiffs' house and then ask the state court to ratify that foreclosure; rather, defendants sought an order of foreclosure from the state court and then foreclosed on the property. Therefore, the injury of which plaintiffs complain was caused by the state court order, not by an action of the defendants that the state court later ratified. See Swiatkowski, 2010 WL 3951212, at *8. To the extent plaintiffs explicitly ask for review and rejection of the state courts' orders, I find that those

10

12-12020-mg    Doc 7562-2    Filed 09/19/14    Entered 09/19/14 16:00:49    Exhibit 2    
Case 1:10-cv-02485-KAM-JMA    Document 30    Filed 05/16/11    Page 11 of 18 PageID #: 989
Report and Recommendation    Pg 12 of 19

claims are barred by Rooker-Feldman doctrine. Additionally, the following specific causes of action raised by plaintiffs similarly fail to surpass the Rooker-Feldman bar.

First, plaintiffs contend that they were denied the due process guaranteed by the Fifth and Fourteenth Amendments when Justice Cullen declined to compel defendants to produce discovery in Quiroz I. See Compl. 5–7, 16. This claim explicitly seeks the review and reversal of a particular decision made in state court. Therefore, these claims are inextricably intertwined with orders that have issued from a state court, and are thus barred by the Rooker-Feldman doctrine. See Hoblock, 422 F.3d at 86–87; see also Gray, 2009 WL 1787710, at *4 (barring a constitutional claim on Rooker-Feldman grounds where plaintiff sought to overturn a state order that permitted the repossession of a car); Trakansook, 2007 WL 1160433, at *5–6.

Second, plaintiffs appear to allege fraud in regard to defendants' conduct in state court. Specifically, plaintiffs allege that defendants "misled the [c]ourts," "deceived the Supreme Court falsely and without shame," and, through their attorneys, "fraudulently filed documents in court misleading and setting up the [Quiroz family]." See Compl. 7–8, 11, 13–14. Were this Court to accept these arguments and rule in favor of plaintiffs, it would "effectively declare the state court judgment fraudulently procured and thus void," in violation of Rooker-Feldman. Swiatkowski, 2010 WL 3951212, at *10 (citation omitted). Thus, because plaintiffs' current claims relating to defendants' allegedly fraudulent practices in state court are inextricably intertwined with the state court proceedings, I find that these claims are barred by Rooker-Feldman doctrine. See id. (employing Rooker-Feldman doctrine to bar claims made in district court pertaining to fraudulent practices by defendant in a prior proceeding); Webster v. Wells Fargo Bank, N.A., No. 08-CV-10145, 2009 WL 5178654, at *7 (S.D.N.Y. Dec. 23, 2009) (barring a plaintiff's due

11

Case 1:10-cv-02485-KAM-JMA   Document 30   Filed 05/16/11   Page 12 of 18 PageID #: 990
12-12020-mg    Doc 7562-2    Filed 09/19/14    Entered 09/19/14 16:00:49    Exhibit 2 -
Report and Recommendation    Pg 13 of 19

process claims pertaining to the defendant's allegedly fraudulent actions during prior state court proceedings on Rooker-Feldman grounds).

Third, plaintiffs appear to raise a claim under the FDCPA.[7]  Specifically, plaintiffs contend that defendants' "illegal transactions . . . caused . . . harassment from illegal collectors practices also by fraud [*sic*]."  Compl. 10–12.  Plaintiffs fail to mention any abusive debt collection practices aside from their belief that the debt being collected was false.  Therefore, any FDCPA claim based on the falsity of the debt is barred by Rooker-Feldman because it would be inextricably intertwined with Quiroz I, which held USBNA had a valid right to collect the debt. See Gray, 2009 WL 1787710, at *4-5 (barring an FDCPA claim based on the plaintiff's belief that the defendant did not have the lawful right to repossess his car after a state court ruled that the car could be validly repossessed).

Finally, it must be noted that the relief sought in this action further demonstrates that plaintiffs' goal in bringing the instant suit is a reversal of the state court's judgments.  Plaintiffs request rescission of the mortgage agreement, damages corresponding to the loan amounts, punitive damages, and a declaratory judgment to quiet title to the property in their favor.  Comp. at 18.  Requesting restoration of title to plaintiffs and a rescission of the mortgage essentially asks this court to vacate Quiroz I in clear violation of Rooker-Feldman.  See Trakansook, 2007 WL 1160433, at *5 ("Because [plaintiff's] complaint asks this court to vacate the judgment of foreclosure and sale and award her title to the property, it is plain that she is inviting this court to 'reject' the [state court order].").

Therefore, I respectfully recommend that the Court find that the Rooker-Feldman

---

[7] The purpose of the FDCPA is "[eliminating] abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." Romea v. Heiberger & Assocs., 163 F.3d 111, 118 n.9 (2d Cir. 1998) (citing 15 U.S.C. § 1692(e)).

12

Case 1:10-cv-02485-KAM-JMA Document 30 Filed 05/16/11 Page 13 of 18 PageID #: 991
12-12020-mg    Doc 7562-2    Filed 09/19/14    Entered 09/19/14 16:00:49    Exhibit 2 -
Report and Recommendation    Pg 14 of 19

doctrine bars plaintiffs' Fifth and Fourteenth Amendment Due Process claims, fraud claim premised on defendants' actions during the state court proceedings, and FDCPA claim.

**B.    Res Judicata**

    **1.    Res Judicata in the Second Circuit**

Res judicata, or claim preclusion, "prevents parties from relitigating issues in subsequent litigation that were or could have been litigated in a prior action." Kesten v. E. Sav. Bank, No. 07-CV-2071, 2009 WL 303327, at *3 (E.D.N.Y. Feb. 9, 2009); Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981). Federal courts apply the same preclusion practices of the state in which the prior judgment was rendered. Allen v. McCurry, 449 U.S. 90, 96 (1980); Council v. Better Homes Depot, Inc., No. 04-CV-5620, 2006 WL 2376381, at *3 (E.D.N.Y. Aug. 16, 2006). Accordingly, this Court's analysis "is governed by New York State law, which has adopted a transactional approach to res judicata, barring a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994) (citing Smith v. Russell Sage College, 54 N.Y.2d 185, 192–93 (1981)). In order for res judicata to apply, three requirements must be met: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." Monahan v. New York City Dept. of Corrections, 214 F.3d 275, 285 (2d Cir. 2000) (citing Allen, 449 U.S. at 94).

A default judgment is considered an adjudication on the merits. EDP Medical Computer Systems, Inc. v. U.S.A., 480 F.3d 621, 626 (2d Cir. 2007) ("[I]t has long been the law that default judgments can support res judicata as surely as judgments on the merits.") (citing Morris

13

Case 1:10-cv-02485-KAM-JMA   Document 50   Filed 05/16/11   Page 14 of 18 PageID #: 992
12-12020-mg    Doc 7562-2    Filed 09/19/14    Entered 09/19/14 16:00:49    Exhibit 2 -
Report and Recommendation    Pg 15 of 19

v. Jones, 329 U.S. 545, 550–51 (1947)). Further, the Second Circuit has observed that, per the New York Court of Appeals, privity includes "those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and possibly coparties to a prior action." Pharr v. Evergreen Garden, Inc., 123 F. App'x 420, 424 (2d Cir. 2005) (quoting Watts v. Swiss Bank Corp., 27 N.Y.2d 270, 277 (1970)).

    **2.    Res Judicata Bars the Majority of Plaintiffs' Claims**

To begin, Quiroz I is a final adjudication on the merits. There, a judgment was entered agains the Quiroz family[8] because they failed to file an answer within the requisite time period. "A judgment of foreclosure and sale obtained by default constitutes a decision on the merits." Done v. Wells Fargo Bank, No. 08-CV-3040, 2009 WL 2959619, at *4 (E.D.N.Y. Sept. 14, 2009). Thus, Quiroz I qualifies as an adjudication on the merits.[9]

Next, the requirement of privity is similarly met. Helen and Jessica Angel Quiroz were plaintiffs in Quiroz I. Ramon Quiroz, though not a named party, was in privity with Helen and Jessica. First, the totality of the documents presented to this Court demonstrate that Ramon Quiroz's interests in both prior actions were identical to those of his wife and daughter. Ramon Quiroz is, after all, the husband of Helen Quiroz and the father of Jessica Angel Quiroz. They presumably live together, and thus would have the same interest in preventing the foreclosure of their home. Second, Ramon Quiroz was intimately involved with the prior state court proceedings as evidenced by the pleadings therein. See, e.g., Quiroz I Opposition ¶¶ 1, 4 (in

---

[8] Ramon Quiroz was not a plaintiff in Quiroz I.

[9] Similarly, Justice Siegal's dismissal of Quiroz II on res judicata grounds is also a judgment on the merits of the allegations in that complaint. See Federated Dep't Stores, 452 U.S. at 399 n.3 (citing Angel v. Bullington, 330 U.S. 183, 190 (1947)). Therefore, both prior state court decisions would satisfy the first requirement of the res judicata doctrine.

14

Case 1:10-cv-02485-KAM-JMA   Document 50   Filed 05/16/11   Page 16 of 18 PageID #: 993
12-12020-mg    Doc 7562-2    Filed 09/19/14    Entered 09/19/14 16:00:49    Exhibit 2 -
Report and Recommendation    Pg 16 of 19

which Ramon Quiroz filed documents on behalf of his wife and daughter in opposition to Quiroz I, and wrote that "on the date the defendants signed the [mortgage] agreement, [Ramon Quiroz] was the owner with [his] Wife and Daughter of [the property] . . . ."). Thus, the privity requirement of res judicata doctrine is met in this case as to all plaintiffs.

Lastly, the majority of plaintiffs' present claims arise from the same factual grouping at the center of both prior state court proceedings—namely, issues surrounding whether the lender misrepresented or failed to disclose material terms of the mortgage agreement, and whether USBNA had a valid right to enforce that agreement. Any claims, including those outlined below, based on these issues should have been raised in Quiroz I, and are thus barred from relitigation.

First, plaintiffs bring a claim under TILA,[10] although their reasons for doing are not entirely clear. Despite the fact that the complaint is devoid of a violation of TILA explicitly described as such, it can be inferred that the violation to which plaintiffs refer involves a failure on the part of Homecoming to properly disclose the terms of the mortgage agreement specifying that the interest rate would be adjustable. Compl. at 3, 10–11. Plaintiffs elsewhere similarly allege that Homecoming engaged in "predatory lending practices," again, presumably by improperly attaching a rider to the mortgage agreement that set an adjustable rate instead of the fixed rate plaintiffs expected. See Compl. at 6, 10. This is precisely the type of issue that should have been raised in Quiroz I because it pertains to alleged improprieties during the formation and signing of the mortgage agreement. Thus, I find that plaintiffs' TILA claim is barred by res judicata.

---

[10] TILA was passed in order to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a).

15

Second, plaintiffs allege that the mortgage agreement was a "valid and enforceable contract," and that defendants breached this contract by raising the interest rate instead of allowing it to remain fixed. See Compl. 11–12, 15. Plaintiffs' reasoning, it appears, is that the mortgage agreement they signed did not allow for an adjustable interest rate, and therefore, that implementing an adjustable interest rate was a breach of contract. This argument should have been raised during Quiroz I because it concerns whose conception of the contract—plaintiffs' or defendants'—is valid. Therefore, I find that the breach of contract claim is barred by res judicata.

Third, plaintiffs raise several fraud-based claims. In one, plaintiffs allege that they were fraudulently induced into signing the mortgage agreement because they believed the interest rate was fixed when in fact it was adjustable, and defendants knew all along that plaintiffs would not be able to honor the contract. See Compl. at 13–14. In another, plaintiffs allege that the assignment of the mortgage loan was fraudulent because none of the defendants "have any legal documents from an actual holder in due course giving them the right to enforce the note." Compl. 6, 11. These claims pertain to the formation and validity of the contract, and whether various defendants possess proper documentation. Therefore, they should have been raised in the initial foreclosure proceeding and are barred by res judicata.[11]

Accordingly, I respectfully recommend that the Court find that res judicata bars plaintiff's TILA, breach of contract, and fraudulent inducement and assignment claims because

---

[11] As mentioned infra in note 3, I find that plaintiffs have not attempted to bring a private cause of action under RICO. However, even if plaintiffs have attempted to bring a RICO claim based on fraud in the formation or execution of the mortgage agreement or the "collection of an unlawful debt," 18 U.S.C. § 1962, such a claim would be barred by res judicata because such claims should have been raised in Quiroz I.

16

Case 1:10-cv-02485-KAM-JMA   Document 30   Filed 05/16/11   Page 17 of 18 PageID #: 995
12-12020-mg    Doc 7562-2    Filed 09/19/14    Entered 09/19/14 16:00:49    Exhibit 2 -
Report and Recommendation    Pg 18 of 19

plaintiffs had a full opportunity to argue these claims during prior proceedings that resulted in valid, final judgments on the merits.[12]

## C.  Supplemental Jurisdiction over Negligence Claim is Inappropriate

The only claim remaining before the Court is the allegation that defendants' actions have caused Ramon Quiroz "serious Physical Impairment and Psychological Harm." Compl. 14. This is presumably a common law negligence claim. Such claims rely on no federal law, thereby precluding this Court's jurisdiction on the basis of a federal question. See 28 U.S.C. § 1331. Additionally, because the Baum Firm's principal place of business is in New York, and plaintiffs also are citizens of New York, there is no basis for jurisdiction founded on diversity. See 28 U.S.C. § 1332. Therefore, because I recommend that all of plaintiffs' other claims be barred by either Rooker-Feldman or res judicata, I further recommend that the Court decline to exercise supplemental jurisdiction over this, and any other, state-law allegation contained in the complaint. 28 U.S.C. § 1367(c)(3).

Moreover, even if this Court were to exercise supplemental jurisdiction over the negligence claim, the allegations of liability for Ramon Quiroz's injuries are merely legal conclusions, insufficient to survive a motion to dismiss under Rule 12(b)(6). Plaintiffs use the word "negligence" from time to time in the pleadings and motion papers, but there is no allegation or other evidence, even when liberally read, demonstrating that the defendants owed a duty of care to Ramon Quiroz, which they breached, and that the breach caused his injury—the components needed to establish liability for negligence claims. See, e.g., Solomon v. City of New York, 66 N.Y.2d 1026, 1027 (1985). Consequently, these claims would not withstand a

---

[12] It should be noted that a number of plaintiffs' current claims were actually raised in Quiroz II—namely, fraud, breach of contract, and violation of the TILA. See generally Quiroz II Compl. In Quiroz II, as here, Justice Siegal made clear that these claims could have been made during Quiroz I, and, therefore, that res judicata barred their relitigation.

17

Case 1:10-cv-02485-KAM-JMA   Document 30   Filed 05/16/11   Page 19 of 19 PageID #: 996
12-12020-mg    Doc 7562-2    Filed 09/19/14    Entered 09/19/14 16:00:49    Exhibit 2 -
Report and Recommendation    Pg 19 of 19

motion to dismiss.[13]

### III.  CONCLUSION

For the above reasons, I respectfully recommend that defendants' motions to dismiss be granted.  Specifically, I recommend that plaintiffs' (1) Fifth and Fourteenth Amendment Due Process claims, (2) fraud claim premised on defendants' allegedly fraudulent behavior during the state court proceedings, and (3) FDCPA claim, be dismissed under the Rooker-Feldman doctrine.  Further, I respectfully recommend that plaintiffs' (1) TILA claims, (2) breach of contract claim, (3) fraud in the inducement and fraudulent assignment claims be dismissed on res judicata grounds.  Finally, I recommend that the Court decline to exercise supplemental jurisdiction over plaintiffs' negligence claim for psychological harm inflicted on Ramon Quiroz.  To the extent there are any other claims arising out of state law, I respectfully recommend that the Court decline to exercise supplemental jurisdiction over them.  Any objections to this Report and Recommendation must be filed on ECF within fourteen (14) days of receipt of this Report and Recommendation. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72.

SO ORDERED.

Dated: May 16, 2011
Brooklyn, New York

/s/
JOAN M. AZRACK
UNITED STATES MAGISTRATE JUDGE

---

[13] Even when reading the complaint liberally in light of plaintiffs' pro se status, there is no indication that a valid negligence claim could be stated.  Thus, there is no reason to grant plaintiffs leave to amend the complaint in this regard.  See Poles, 2010 WL 1992544, at *2.

18