# Exhibit H

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Residential Capital, LLC
Claims Mgmt
P.O. Box 385220
Bloomington, MN
55438

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☐ Agent
                           ☐ Addressee

B. Received by ( Printed Name )     C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☒ Certified Mail      ☐ Express Mail
   ☐ Registered         ☒ Return Receipt for Merchandise
   ☐ Insured Mail       ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)             ☐ Yes

2. Article Number
   (Transfer from service labe

   7011 3500 0000 1065 4669

PS Form 3811 February 2004        Domestic Return Receipt        102595-02-M-1540

Law office of
## JEFFREY B. AUSTIN, P.C.
211 S. Cedar Street
Florence, Alabama 35630
Telephone: (256) 766-1354
Facsimile: (256) 766-4211

July 17, 2013

**Via email Claims.Management@gmacrescap.com &**
**Certified mail 7011 3500 0000 1065 4669**
Residential Capital, LLC
Claims Management
P.O. Box 385220
Bloomington, MN  55438

> **RE:  Monty & Heather Allen Claim #6768**

To whom it may concern:

I have enclosed Monty and Heather Allens' explanation and basis of claim form.

Sincerely,

Jeffrey B. Austin

Enclosure/jrb



# RESCAP                    MORRISON | FOERSTER

### Claim Information

| Claim Number | 6768 |
|---|---|
| **Basis of Claim**<br><br>Explanation that states the legal and factual reasons why you believe you are owed money or are entitled to other relief from one of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases) and you must provide copies of any and all documentation that you believe supports the basis for your claim. | See attached Complaint, Plaintiffs' Opposition to Defendants' Summary Judgment and Order denying Motion For Summary Judgment Filed By Homecomings Financial, L.L.C, and/or GMAC Mortgage, Patrick McClain and The Bank of New York Trust Co. |

If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the following loan information, so that we can effectively search our records for information on your property and loan, and evaluate your claim.

| Loan Number: | |
|---|---|

| Address of property related to the above loan number: 608 West Lakeside Dr. | | |
|---|---|---|
| City: FLORENCE | State: AL | ZIP Code: 35630 |

Additional resources may be found at - http://www.kccllc.net/rescap

Residential Capital, LLC    P.O. Box 385220  Bloomington, MN  55438

Claim Number: 6768
Monty Allen & Heather Allen
Type: CC

Claim #6768  Date Filed: 2/25/2013

B 10 Modified (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

Name of Debtor and Case Number:
RESIDENTIAL CAPITAL LLC et al   CASE No. 12-12020(MG)

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
MONTY ALLEN  612 E. PURITAN AVE. MUSCLE SHOALS AL 35661

☐ Check this box if this claim amends a previously filed claim.

Name and address where notices should be sent:
JEFF AUSTIN, ATTORNEY AT LAW
211 S. CEDAR STREET
FLORENCE AL 35630

Court Claim
Number:
_____
(If known)

Filed on: _____

Telephone number: (256) 766-1354    email: austin@bellsouth.net

Name and address where payment should be sent (if different from above):

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

Telephone number:    email:

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

1. Amount of Claim as of Date Case Filed: $175,000.00  (Pat Edwards Appraisal 7-18-08)
If all or part of the claim is secured, complete Item 4.
If all or part of the claim is entitled to priority, complete item 5.
☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

2. Basis for Claim: real estate contract litigation
(See instruction #2)

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

3. Last four digits of any number by which creditor identifies debtor:

| 3a. Debtor may have scheduled account as: | 3b. Uniform Claim Identifier (optional): |
|---|---|
| (See instruction #3a) | (See instruction #3b) |

4. Secured Claim (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate  ☐ Motor Vehicle  ☐ Other
Describe:
Value of Property: $_____  Annual Interest Rate_____% ☐Fixed ☐Variable
(when case was filed)
Amount of arrearage and other charges, as of the time case was filed, included in secured claim,
If any: $_____   Basis for perfection: _____

Amount of Secured Claim: $_____   Amount Unsecured: $_____

RECEIVED
MAR 04 2013
KURTZMAN CARSON CONSULTANTS

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).
☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).
☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

Amount entitled to priority:

6. Claim Pursuant to 11 U.S.C. § 503(b)(9):
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.
$_____   (See instruction #6)

7. Credits. The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

8. Documents: Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. (See instruction #8, and the definition of "redacted".)
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

$_____

* Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

9. Signature: (See instruction #9) Check the appropriate box.
☐ I am the creditor.  ☑ I am the creditor's authorized agent.  ☐ I am the trustee, or the debtor, or  ☐ I am a guarantor, surety,
(Attach copy of power of attorney, if any.)    their authorized agent.    indorser, or other codebtor.
(See Bankruptcy Rule 3004.)   (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.
Print Name: JEFF AUSTIN
Title: ATTORNEY
Company: JEFF AUSTIN, P.C.
Address and telephone number (if different from notice address above):

_____ (Signature)   2/20/13 (Date)

RECEIVED
FEB 25 2013
COURT USE ONLY

Telephone number:    Email:

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

**Residential Capital, LLC**
c/o KCC
2335 Alaska Ave
El Segundo, CA 90245

000276

PRF # 59050***   ,
Case No.: 12-12020
Svc: 2

PackID: 276
NameID: 22144995

Monty Allen & Heather Allen
Jeff Austin
Attorney at Law
211 S. Cedar Street
Florence, AL 35630



1 of 40

**AlaFile E-Notice**

CLAIM # 6768

41-CV-2009-900073.00

To:  JEFFREY BRIAN AUSTIN
austin@bellsouth.net

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF LAUDERDALE COUNTY, ALABAMA

**MONTY ALLEN ET AL v. HOMECOMINGS FINANCIAL, L.L.C. ET AL
41-CV-2009-900073.00**

The following complaint was FILED on 4/21/2009 8:42:50 AM

Notice Date:     4/21/2009 8:42:50 AM

**MISSY HOMAN HIBBETT**
**CIRCUIT COURT CLERK**
LAUDERDALE COUNTY, ALABAMA
200 SOUTH COURT STREET
FLORENCE, AL 35630

256-760-5728
missy.hibbett@alacourt.gov

CLAIM # CV-9678

<table>
<tr>
<td>
**State of Alabama**

**Unified Judicial System**

Form ARCiv-93   Rev.5/99
</td>
<td>
**COVER SHEET**
**CIRCUIT COURT - CIVIL CASE**
(Not For Domestic Relations Cases)
</td>
<td>
Case Number:

**41-CV-200**

Date of Filing:
04/21/2009
</td>
<td>


LAUDERDALE COUNTY, ALABAMA
MISSY HOMAN HIBBETT, CLERK.
</td>
</tr>
</table>

## GENERAL INFORMATION

### IN THE CIRCUIT OF LAUDERDALE COUNTY, ALABAMA
### MONTY ALLEN ET AL v. HOMECOMINGS FINANCIAL, L.L.C. ET AL

**First Plaintiff:** ☐ Business ☑ Individual    **First Defendant:** ☑ Business ☐ Individual
☐ Government ☐ Other    ☐ Government ☐ Other

### NATURE OF SUIT:

**TORTS: PERSONAL INJURY**

☐ WDEA - Wrongful Death
☐ TONG - Negligence: General
☐ TOMV - Negligence: Motor Vehicle
☐ TOWA - Wantonnes
☐ TOPL - Product Liability/AEMLD
☐ TOMM - Malpractice-Medical
☐ TOLM - Malpractice-Legal
☐ TOOM - Malpractice-Other
☐ TBFM - Fraud/Bad Faith/Misrepresentation
☐ TOXX - Other: _____

**TORTS: PERSONAL INJURY**

☐ TOPE - Personal Property
☐ TORE - Real Property

**OTHER CIVIL FILINGS**

☐ ABAN - Abandoned Automobile
☐ ACCT - Account & Nonmortgage
☐ APAA - Administrative Agency Appeal
☐ ADPA - Administrative Procedure Act
☐ ANPS - Adults in Need of Protective Services

**OTHER CIVIL FILINGS  (cont'd)**

☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture
Appeal/Enforcement of Agency Subpoena/Petition to
Preserve
☐ CVRT - Civil Rights
☐ COND - Condemnation/Eminent Domain/Right-of-Way
☐ CTMP-Contempt of Court
☐ CONT-Contract/Ejectment/Writ of Seizure
☐ TOCN - Conversion
☐ EQND- Equity Non-Damages Actions/Declaratory
Judgment/Injunction Election Contest/Quiet Title/Sale For
Division
☐ CVUD-Eviction Appeal/Unlawful Detainer
☐ FORJ-Foreign Judgment
☐ FORF-Fruits of Crime Forfeiture
☐ MSHC-Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
☐ PFAB-Protection From Abuse
☐ FELA-Railroad/Seaman (FELA)
☑ RPRO-Real Property
☐ WTEG-Will/Trust/Estate/Guardianship/Conservatorship
☐ COMP-Workers' Compensation
☐ CVXX-Miscellaneous Circuit Civil Case

**ORIGIN:** F☑ INITIAL FILING    A☐ APPEAL FROM DISTRICT COURT    O☐ OTHER

R☐ REMANDED    T☐ TRANSFERRED FROM OTHER CIRCUIT COURT _____

**HAS JURY TRIAL BEEN DEMANDED?**    ☑ Yes ☐ No

**RELIEF REQUESTED:**    ☑ MONETARY AWARD REQUESTED    ☐ NO MONETARY AWARD REQUESTED

**ATTORNEY CODE:**   AUS013    4/21/2009 8:40:34 AM    /s JEFFREY BRIAN AUSTIN

**MEDIATION REQUESTED:**    ☐ Yes ☑ No ☐ Undecided

CLAIM #6768



LAUDERDALE COUNTY, ALABAMA
MISSY HOMAN HIBBETT, CLERK

## IN THE CIRCUIT COURT OF LAUDERDALE COUNTY, ALABAMA

**MONTY ALLEN**

**and**

**HEATHER ALLEN**

    **PLAINTIFFS**

**V.**                        **CIVIL ACTION NO:  CV 09-_____**

**HOMECOMINGS FINANCIAL, L.L.C.,**
**RE/MAX, INC.,**
**RE/MAX HUNTSVILLE, INC.,**
**RISE REALTY, INC.,**
**RISE REALTY PARKWAY PLAZA, INC.,**
**VICTOR ENGLERT,**
**CHARLES LANZA,**
**JIM BAKER,**
**TOMMY ADAMS,**
**PATRICK MCCLAIN,**
**THE BANK OF NEW YORK TRUST**
**COMPANY, INC. as successor to JP MORGAN CHASE BANK, INC.,**
and fictitious parties XYZ, an individual firm, partnership, corporation, whose names are
otherwise unknown but whose correct names will be added by amendment when
ascertained, whether singular or plural, that entity or those entities, other than those
entities described above, which is the successor in interest of any of the entities of the
entities described above; whether singular or plural, that entity or those entities, other than
those entities described above, which was the predecessor corporation of any of the entities
described above or any other entity or entities responsible for the damages claimed.

    **DEFENDANTS**

## COMPLAINT

### GENERAL AVERMENTS

1.    On or about May 18, 2007, the plaintiffs, Monty and Heather Allen, executed a

contract to purchase property and a home located at 608 West Lakeside Drive, Florence,

Alabama 35630.

2.    At the time Monty and Heather Allen executed the contract to purchase,

CLAIM #6768

the mortgagee had foreclosed the property.

3.      The original contract signed by Monty and Heather Allen was subject to redemption.

4.      By May 18, 2007, Homecomings Financial, L.L.C., and/or the Bank of New York Trust Company, Inc. as successor to JP Morgan Chase Bank, Inc. or some other unknown 3rd party owned the property through foreclosure proceedings or had the right to sell the property through foreclosure proceedings.

5.      The sellers originally listed the property with Re/max Huntsville, Inc.

6.      Heather and Monty Allen contracted to purchase the home and property for $125,000.

7.      On or about May 17, 2007, Monty Allen mailed a signed contract and earnest money in the amount of $3,000 to purchase the property to Charles Lanza at Re/max Huntsville, Inc.

8.      Patrick McClain signed the contract as the seller on May 24, 2007.

9.      Charles Lanza is the managing broker and owner of Re/max Huntsville, Inc. in Madison, Alabama.

10.      Re/max Huntsville, Inc. is a franchise of Re/max, Inc.

11.      Jim Baker worked for listing broker Charles Lanza and/or Re/max Huntsville, Inc.

12.      On or about June 14, 2007, the sellers scheduled a closing to finalize the purchase.

13.      On June 14, 2007, agents for the sellers executed an addendum to the original contract extending the closing to June 26, 2007.

CLAIM #6768

14.     Monty and Heather Allen prepared a loan application through Bank Independent to finance the purchase of the home and property.

15.     On or about June 24, 2007, Jim Baker told Monty Allen the owners would not sign the addendum extending the closing to June 26, 2007.

16.     Jim Baker told Monty Allen the right of the original owners to redeem expired in December of 2007.

17.     Sometime between October and December of 2007, Jim Baker left his employment with Re/max Huntsville, Inc. and began working for Rise Realty Parkway Plaza, Inc.

18.     Rise Realty Parkway Plaza, Inc. is/was a franchise of Rise Realty, Inc.

19.     Victor Englert is/was the managing Broker for Rise Realty Parkway Plaza, Inc.

20.     In December of 2007, Jim Baker relisted the property with Rise Realty Parkway Plaza, Inc.

21.     Tommy Adams owns Rise Realty Parkway Plaza, Inc.

22.     On December 18, 2007, at the insistence of Rise Realty Parkway Plaza, Inc. and/or Jim Baker, Monty Allen executed a second contract to purchase the home and property and provided a second "approval letter" from Bank Independent.

23.     This 2nd contract was identical to the 1st contract executed on May 18, 2007.

24.     The contract indentified Monty Allen as the buyer and Homecomings Financial, L.L.C. and Bank of New York Trust Company as successor to JP Morgan Chase Bank, Inc. as the sellers.

Glaim # 6768

25.    On December 19, 2007, Monty Allen sent a faxed copy of the earnest money
check which had been previously sent to Re/max Huntsville, Inc. to Rise Realty Parkway Plaza,
Inc.

26.    The sellers cancelled the closing and refused to honor the contracts executed by
Heather and Monty Allen.

27.    The sellers eventually sold the property to Johnny Wright in December of 2007.

28.    Before Johnny Wright bought the property, Monty Allen demanded enforcement
of the previously executed contracts.

29.    Johnny Wright purchased the home and property in exactly the same condition for
approximately $127,000 on or about January 18, 2008.

30.    Victor Englert was aware of the plaintiffs' competing contract before the home
was sold to Johnny Wright.

31.    Agents for the sellers told Monty Allen they were selling the home despite Monty
and Heather Allen's contract.

32.    Re/max Huntsville, Inc. broker, Charles Lanza, has retained and never refunded
the $3,000 earnest money.

33.    Re/max Huntsville, Inc., and/or Charles Lanza individually, or as agent for
Re/max Huntsville, Inc., and/or Jim Baker individually, or as agent for Re/max Huntsville, Inc.,
or as agent for Rise Realty Parkway Plaza, Inc., and/or Rise Realty Parkway Plaza Inc., and/or
Tommy Adams, individually, or as owner of Rise Realty Parkway Plaza, Inc., and/or Victor
Englert as broker and agent for Rise Realty Parkway Plaza, Inc., and/or Homecomings Financial,
L.L.C. or Bank of New York Trust Company as successor to JP Morgan Chase Bank, Inc.

Claim # 6708

fraudulently, willfully, deceitfully, and/or intentionally failed to honor the contract executed between the sellers and Monty and Heather Allen.

34.    Based on the pending contract to purchase the home made the basis of this lawsuit, Monty Allen missed the opportunity to purchase another property for $130,000.

35.    Monty Allen discovered the fraud on or about December 21, 2007.

36.    Jim Baker led Monty and Heather Allen to believe their contract was not accepted by the sellers.

37.    These actions and representations by the defendants were an attempt to induce the plaintiffs to forego their contract on the home.

38.    Jim Baker has a pattern and practice of accepting contracts and then selling the home to another unrelated 3rd party for an amount greater than the original contract executed between the parties.

39.    The home is currently valued at approximately $175,000.

40.    Charles Lanza, at all pertinent times, was an agent for Re/max, Inc., and/or Re/max Huntsville, Inc., and/or the sellers.

41.    Tommy Adams, at all pertinent times, was an agent for Rise Realty, Inc., and/or Rise Realty Parkway Plaza, Inc., and/or the sellers.

42.    Victor Englert, at all pertinent times was an agent for Rise Realty Parkway Plaza, Inc., and/or Rise Realty, Inc., and/or the sellers.

43.    Jim Baker, at all pertinent times, was an agent for Re/max Inc., and/or Re/max Huntsville, Inc., and/or Rise Realty Parkway Plaza, Inc., and/or Rise Realty, Inc., and/or the sellers.

44.    All defendants, at all pertinent times, were agents for the sellers.

Claim # 6768

45.    Rise Realty, Inc. ratified the conduct and actions of Jim Baker, and/or Tommy Adams, and/or Victor Englert.

46.    Tommy Adams ratified the conduct and actions of Jim Baker.

47.    Tommy Adams ratified the conduct and actions of Victor Englert.

48.    Rise Realty Parkway Plaza, Inc. ratified the conduct and actions of Jim Baker and Victor Englert.

49.    Rise Realty, Inc. had a duty and responsibility to supervise and prohibit the fraudulent conduct and actions of Tommy Adams and/or Victor Englert.

50.    Rise Realty, Inc. had a duty and responsibility to supervise and prohibit the fraudulent conduct and actions of Jim Baker.

51.    Tommy Adams had a duty and responsibility to supervise and prohibit the conduct and actions of Victor Englert.

52.    Rise Realty Parkway Plaza, Inc., and/or Tommy Adams, and/or Victor Englert had a duty and responsibility to supervise and prohibit the fraudulent conduct and actions of Jim Baker.

53.    Re/max, Inc. ratified the actions and conduct of Jim Baker.

54.    Re/max, Inc. ratified the conduct and actions of Charles Lanza.

55.    Charles Lanza ratified the conduct and actions of Jim Baker.

56.    Re/max, Inc. had a duty and responsibility to supervise and prohibit the fraudulent conduct and actions of Charles Lanza.

57.    Re/max, Inc. had a duty and responsibility to supervise and prohibit the fraudulent conduct and actions of Jim Baker.

58.    Re/max Huntsville, Inc. ratified the conduct and actions of Jim Baker.

**Page 6 of 30**

Claim #6768

59.    Charles Lanza had a duty and responsibility to supervise and prohibit the fraudulent conduct and actions of Jim Baker.

60.    The plaintiffs relied upon the fraudulent conduct and misrepresentations of the defendants to their detriment.

61.    The defendants misrepresented the need to execute a second contract and the status of the contracts executed by the plaintiffs.

62.    The defendants' actions were intended to induce the plaintiffs to withdraw their offer to purchase or to rescind their contract and/or intended to coerce the plaintiffs to make a higher offer to purchase the home.

63.    The defendants consciously or deliberately engaged in oppressive, fraudulent, wanton, and/or malicious conduct.

64.    The defendants authorized and/or benefited from the conduct of their respective agents.

65.    The actions of the agent did or were calculated to benefit the respective principal.

66.    Homecomings Financial, L.L.C. routinely paid Jim Baker to remodel homes being sold by Homecomings Financial, L.L.C.

67.    The defendants had a duty to properly train and supervise their respective agents.

## COUNT I

## BREACH OF CONTRACT

68.    The plaintiffs reallege all general averments as if fully set out herein.

69.    The defendants fraudulently, willfully, deceitfully, intentionally, and/or deliberately refused to honor the contract entered into and executed by all parties.

Claim # 6768

Plaintiffs demand compensatory, emotional and mental distress, consequential, and punitive damages in such type and quantity as a jury may find appropriate under the circumstances of this case and the purposes allowed by law, including but not limited to the protection of the public by deterring these defendants and others from doing such wrong in the future, and as exemplary damages. The plaintiffs claim prejudgment interest pursuant to Alabama Code §8-8-8. The plaintiffs also claim from the defendants cost and attorney's fees. The plaintiffs demand trial by struck jury.

## COUNT II

### FRAUD

70.     The plaintiffs reallege all general averments as if fully set out herein.

71.     On or about May 14, 2007, the plaintiffs agreed to purchase and the defendants agreed to sell property located at 608 West Lakeside Drive, Florence, Alabama 35630.

72.     The defendants fraudulently, willfully, deceitfully and/or intentionally refused to honor the contract executed between the parties.

Plaintiffs demand compensatory, emotional and mental distress, consequential, and punitive damages in such type and quantity as a jury may find appropriate under the circumstances of this case and the purposes allowed by law, including but not limited to the protection of the public by deterring these defendants and others from doing such wrong in the future, and as exemplary damages. The plaintiffs claim prejudgment interest pursuant to Alabama Code §8-8-8. The plaintiffs also claim from the defendants cost and attorney's fees. The plaintiffs demand trial by struck jury

Claim # 6768

### COUNT III

### RE/MAX HUNTSVILLE, INC.'S NEGLIGENCE/NEGLIGENT SUPERVISION OF JIM BAKER

73.     The plaintiffs reallege all general averments as if fully set out herein.

74.     Jim Baker has a pattern and practice of obtaining contracts and then refusing to honor the contracts if a 3rd party makes higher offer before closing.

75.     Re/max Huntsville, Inc. and/or Charles Lanza had a duty and obligation to properly supervise and train their agents.

76.     The defendants knew or should have known of Jim Baker's pattern and practice.

77.     The defendants had a duty to prevent the conduct and actions which led to the house being sold to a 3rd party.

78.     The defendants had a duty to prevent the house being sold to a 3rd party.

79.     The defendants had a duty to prevent the actions of Jim Baker.

80.     The defendants failed to prevent Jim Baker from committing the acts set forth in the general averments.

Plaintiffs demand compensatory, emotional and mental distress, consequential, and punitive damages in such type and quantity as a jury may find appropriate under the circumstances of this case and the purposes allowed by law, including but not limited to the protection of the public by deterring these defendants and others from doing such wrong in the future, and as exemplary damages. The plaintiffs claim prejudgment interest pursuant to Alabama Code §8-8-8. The plaintiffs also claim from the defendants cost and attorney's fees. The plaintiffs demand trial by struck jury.

Claim # 6768

## COUNT IV

### RE/MAX, INC.'S NEGLIGENCE/NEGLIGENT SUPERVISION
### OF RE/MAX HUNTSVILLE, INC. AND RE/MAX HUNTSVILLE, INC. AGENTS

81.    The plaintiffs reallege all general averments as if fully set out herein.

82.    Re/max, Inc. has a duty and obligation to supervise and train its Brokers/Owners.

83.    Jim Baker has a pattern and practice of obtaining contracts and then refusing to honor the contracts if a 3rd party makes higher offer before closing.

84.    The defendants knew or should have known of Jim Baker's pattern and practice.

85.    The defendants had a duty to prevent the conduct and actions which led to the house being sold to a 3rd party.

86.    The defendants had a duty to prevent the actions of Jim Baker.

87.    The defendants had a duty to prevent the house being sold to a 3rd party.

88.    Re/max, Inc. had a duty and obligation to supervise Charles Lanza and a duty to require Charles Lanza to discover and prevent the actions of Jim Baker.

89.    Re/max, Inc. failed to properly supervise and train Charles Lanza, and/or Jim Baker, and/or Re/max Huntsville, Inc.

Plaintiffs demand compensatory, emotional and mental distress, consequential, and punitive damages in such type and quantity as a jury may find appropriate under the circumstances of this case and the purposes allowed by law, including but not limited to the protection of the public by deterring these defendants and others from doing such wrong in the future, and as exemplary damages. The plaintiffs claim prejudgment interest pursuant to Alabama Code §8-8-8. The plaintiffs also claim from the defendants cost and attorney's fees. The plaintiffs demand trial by struck jury.

Claim # 60108

## COUNT V

### RE/MAX, INC.'S NEGLIGENT SUPERVISION OF AGENTS

90.     The plaintiffs reallege all general averments as if fully set out herein.

91.     Re/max, Inc. had a duty to properly supervise and train its agents.

92.     The defendants had a duty to prevent the house being sold to a 3rd party.

93.     The defendants had a duty to prevent the conduct and actions which led to the house being sold to a 3rd party.

94.     Re/max, Inc. knew or should have known of Charles Lanza's and/or Re/max Huntsville, Inc.'s failure to properly supervise the franchise.

95.     Charles Lanza and/or Re/max Huntsville, Inc. failed to properly supervise the agents of Re/max Huntsville, Inc.

96.     Charles Lanza and/or Re/max Huntsville, Inc. had a duty to properly supervise and manage the agents of Re/max Huntsville, Inc.

97.     Charles Lanza and/or Re/max Huntsville, Inc. failed to properly supervise and manage the agents of Re/max Huntsville, Inc.

Plaintiffs demand compensatory, emotional and mental distress, consequential, and punitive damages in such type and quantity as a jury may find appropriate under the circumstances of this case and the purposes allowed by law, including but not limited to the protection of the public by deterring these defendants and others from doing such wrong in the future, and as exemplary damages. The plaintiffs claim prejudgment interest pursuant to Alabama Code §8-8-8. The plaintiffs also claim from the defendants cost and attorney's fees. The plaintiffs demand trial by struck jury.

Claim # 6768

## COUNT VI

### CHARLES LANZA'S NEGLIGENCE/NEGLIGENT SUPERVISION OF JIM BAKER

98.    The plaintiffs reallege all general averments as if fully set out herein.

99.    Charles Lanza had a duty and obligation to properly supervise and train his agents.

100.    Jim Baker has a pattern and practice of obtaining contracts and then refusing to honor the contracts if a 3rd party makes higher offer before closing.

101.    Charles Lanza knew or should have known of Jim Baker's pattern and practice.

102.    Charles Lanza had a duty to prevent the acts of Jim Baker.

103.    The defendants had a duty to prevent the conduct and actions which led to the house being sold to a 3rd party.

104.    The defendants had a duty to prevent the house being sold to a 3rd party.

105.    Charles Lanza failed to properly supervise and train Jim Baker.

Plaintiffs demand compensatory, emotional and mental distress, consequential, and punitive damages in such type and quantity as a jury may find appropriate under the circumstances of this case and the purposes allowed by law, including but not limited to the protection of the public by deterring these defendants and others from doing such wrong in the future, and as exemplary damages. The plaintiffs claim prejudgment interest pursuant to Alabama Code §8-8-8. The plaintiffs also claim from the defendants cost and attorney's fees. The plaintiffs demand trial by struck jury.

Claim # 6768

## COUNT VII

### RISE REALTY, INC.'S NEGLIGENCE/NEGLIGENT SUPERVISION

106.    The plaintiffs reallege all general averments as if fully set out herein.

107.    Tommy Adams and/or Rise Realty, Inc. had a duty and obligation to properly supervise and train their agents.

108.    Rise Realty, Inc. had a duty and obligation to supervise its owners and brokers.

109.    Jim Baker has a pattern and practice of obtaining contracts and then refusing to honor the contracts if a 3rd party makes higher offer before closing.

110.    The defendants knew or should have known of Jim Baker's pattern and practice.

111.    The defendants had a duty to prevent the acts of Jim Baker.

112.    The defendants had a duty to prevent the house being sold to a 3rd party.

113.    The defendants had a duty to prevent the conduct and actions which led to the house being sold to a 3rd party.

114.    Rise Realty, Inc. had a duty and obligation to supervise and train Tommy Adams and a duty to require Tommy Adams to discover and prevent the actions of Jim Baker.

115.    Rise Realty, Inc. failed to properly supervise Tommy Adams, and/or Jim Baker, and/or Rise Realty Parkway Plaza, Inc.

Plaintiffs demand compensatory, emotional and mental distress, consequential, and punitive damages in such type and quantity as a jury may find appropriate under the circumstances of this case and the purposes allowed by law, including but not limited to the protection of the public by deterring these defendants and others from doing such wrong in the future, and as exemplary damages.  The plaintiffs claim prejudgment interest pursuant to

Claim #6768

Alabama Code §8-8-8. The plaintiffs also claim from the defendants cost and attorney's fees.

The plaintiffs demand trial by struck jury.

## COUNT VIII

### RISE REALTY, INC.'S NEGLIGENCE/NEGLIGENT SUPERVISION
### OF TOMMY ADAMS AND/OR VICTOR ENGLERT

116.    The plaintiffs reallege all general averments as if fully set out herein.

117.    Tommy Adams had a duty and obligation to properly supervise and train his

agents.

118.    Rise Realty, Inc. had a duty and obligation to supervise and train its Owners and

Brokers.

119.    Jim Baker has a pattern and practice of obtaining contracts and then refusing to

honor the contracts if a 3rd party makes higher offer before closing.

120.    The defendants knew or should have known of Jim Baker's pattern and practice.

121.    The defendants had a duty to prevent the acts of Jim Baker.

122.    The defendants had a duty to prevent the house being sold to a 3rd party.

123.    The defendants had a duty to prevent the conduct and actions which led to the

house being sold to a 3rd party.

124.    Rise Realty, Inc. had a duty and obligation to supervise Tommy Adams and a

duty to require Tommy Adams to discover and prevent the actions of Jim Baker.

125.    Rise Realty, Inc. failed to properly supervise and train Tommy Adams, and/or Jim

Baker, and/or Rise Realty Parkway Plaza, Inc.

Plaintiffs demand compensatory, emotional and mental distress, consequential, and

punitive damages in such type and quantity as a jury may find appropriate under the

circumstances of this case and the purposes allowed by law, including but not limited to the

Claim # 6768

protection of the public by deterring these defendants and others from doing such wrong in the future, and as exemplary damages. The plaintiffs claim prejudgment interest pursuant to Alabama Code §8-8-8. The plaintiffs also claim from the defendants cost and attorney's fees. The plaintiffs demand trial by struck jury.

## COUNT IX

### TOMMY ADAMS AND/OR RISE REALTY PARKWAY PLAZA, INC.'S NEGLIGENT SUPERVISION OF JIM BAKER

126.    The plaintiffs reallege all general averments as if fully set out herein.

127.    Tommy Adams and/or Rise Realty Parkway Plaza, Inc. had a duty and obligation to properly train and supervise his agents.

128.    Jim Baker has a pattern and practice of obtaining contracts and then refusing to honor the contracts if a 3rd party makes higher offer before closing.

129.    Tommy Adams and/or Rise Realty Parkway Plaza, Inc. knew or should have known of Jim Baker's pattern and practice.

130.    Tommy Adams and/or Rise Realty Parkway Plaza, Inc. had a duty to prevent the acts of Jim Baker.

131.    The defendants had a duty to prevent the house being sold to a 3rd party.

132.    The defendants had a duty to prevent the conduct and actions which led to the house being sold to a 3rd party.

133.    Tommy Adams and/or Rise Realty Parkway Plaza, Inc. failed to properly train and supervise Jim Baker.

Plaintiffs demand compensatory, emotional and mental distress, consequential, and punitive damages in such type and quantity as a jury may find appropriate under the circumstances of this case and the purposes allowed by law, including but not limited to the

Claim # 6768

protection of the public by deterring these defendants and others from doing such wrong in the future, and as exemplary damages. The plaintiffs claim prejudgment interest pursuant to Alabama Code §8-8-8. The plaintiffs also claim from the defendants cost and attorney's fees. The plaintiffs demand trial by struck jury.

## COUNT X

### RISE REALTY PARKWAY PLAZA, INC.'S NEGLIGENCE/NEGLIGENT SUPERVISION OF VICTOR ENGLERT

134.    The plaintiffs reallege all general averments as if fully set out herein.

135.    Rise Realty Parkway Plaza, Inc. and/or Tommy Adams had a duty and obligation to supervise and properly train the brokers.

136.    Jim Baker has a pattern and practice of obtaining contracts and then refusing to honor the contracts if a 3rd party makes higher offer before closing.

137.    The defendants knew or should have known of Jim Baker's pattern and practice.

138.    The defendants had a duty to prevent the acts of Jim Baker.

139.    The defendants had a duty to prevent the house being sold to a 3rd party.

140.    The defendants had a duty to prevent the conduct and actions which led to the house being sold to a 3rd party.

141.    Rise Realty Parkway Plaza, Inc. had a duty and obligation to supervise Victor Englert and a duty to require Victor Englert to discover and prevent the actions of Jim Baker.

142.    Rise Realty Parkway Plaza, Inc. failed to properly supervise and train Victor Englert and/or Jim Baker.

Plaintiffs demand compensatory, emotional and mental distress, consequential, and punitive damages in such type and quantity as a jury may find appropriate under the circumstances of this case and the purposes allowed by law, including but not limited to the

Claim #6768                    19 of 40

protection of the public by deterring these defendants and others from doing such wrong in the future, and as exemplary damages. The plaintiffs claim prejudgment interest pursuant to Alabama Code §8-8-8. The plaintiffs also claim from the defendants cost and attorney's fees. The plaintiffs demand trial by struck jury.

## COUNT XI

### VICTOR ENGLERT'S NEGLIGENCE/NEGLIGENT SUPERVISION OF JIM BAKER

143.    The plaintiffs reallege all general averments as if fully set out herein.

144.    Rise Realty Parkway Plaza, Inc. had a duty and obligation to supervise and properly train its owners and brokers.

145.    Jim Baker has a pattern and practice of obtaining contracts and then refusing to honor the contracts if a 3rd party makes higher offer before closing.

146.    The defendants knew or should have known of Jim Baker's pattern and practice.

147.    The defendants had a duty to prevent the acts of Jim Baker.

148.    The defendants had a duty to prevent the house being sold to a 3rd party.

149.    The defendants had a duty to prevent the conduct and actions which led to the house being sold to a 3rd party.

150.    Victor Englert had a duty and obligation to supervise Jim Baker and a duty to discover and prevent the actions of Jim Baker.

151.    Victor Englert failed to properly supervise and train Jim Baker and all other agents involved in the sale of the home made the basis of this complaint.

Plaintiffs demand compensatory, emotional and mental distress, consequential, and punitive damages in such type and quantity as a jury may find appropriate under the circumstances of this case and the purposes allowed by law, including but not limited to the

Claim # 6768

protection of the public by deterring these defendants and others from doing such wrong in the future, and as exemplary damages. The plaintiffs claim prejudgment interest pursuant to Alabama Code §8-8-8. The plaintiffs also claim from the defendants cost and attorney's fees. The plaintiffs demand trial by struck jury.

## COUNT XII

### TOMMY ADAMS' NEGLIGENT SUPERVISION OF VICTOR ENGLERT

152.    The plaintiffs reallege all general averments as if fully set out herein.

153.    Tommy Adams had a duty and obligation to properly supervise his agents.

154.    Tommy Adams had a duty to properly train and supervise Victor Englert.

155.    Tommy Adams failed to properly train and supervise Victor Englert.

156.    Jim Baker has a pattern and practice of obtaining contracts and then refusing to honor the contracts if a 3rd party makes higher offer before closing.

157.    Tommy Adams knew or should have known of Jim Baker's pattern and practice.

158.    Tommy Adams had a duty to prevent the acts of Jim Baker.

159.    The defendants had a duty to prevent the house being sold to a 3rd party.

160.    The defendants had a duty to prevent the conduct and actions which led to the house being sold to a 3rd party.

Plaintiffs demand compensatory, emotional and mental distress, consequential, and punitive damages in such type and quantity as a jury may find appropriate under the circumstances of this case and the purposes allowed by law, including but not limited to the protection of the public by deterring these defendants and others from doing such wrong in the future, and as exemplary damages. The plaintiffs claim prejudgment interest pursuant to

Claim # 6768

Alabama Code §8-8-8. The plaintiffs also claim from the defendants cost and attorney's fees.

The plaintiffs demand trial by struck jury.

## COUNT XIII

## RISE REALTY PARKWAY PLAZA, INC.'S NEGLIGENT SUPERVISION OF AGENTS

161.    The plaintiffs reallege all general averments as if fully set out herein.

162.    Rise Realty Parkway Plaza, Inc. had a duty to properly supervise and train its agents.

163.    The defendants had a duty to prevent the house being sold to a 3rd party.

164.    The defendants had a duty to prevent the conduct and actions which led to the house being sold to a 3rd party.

Plaintiffs demand compensatory, emotional and mental distress, consequential, and punitive damages in such type and quantity as a jury may find appropriate under the circumstances of this case and the purposes allowed by law, including but not limited to the protection of the public by deterring these defendants and others from doing such wrong in the future, and as exemplary damages. The plaintiffs claim prejudgment interest pursuant to Alabama Code §8-8-8. The plaintiffs also claim from the defendants cost and attorney's fees. The plaintiffs demand trial by struck jury.

## COUNT XIV

## FRAUD/ WILLFUL MISREPRESENTATION OF MATERIAL FACT
## ALABAMA CODE §6-5-101

165.    The plaintiffs reallege all general averments as if fully set out herein.

166.    Re/max, Inc., or an agent thereof, and/or Rise Realty, Inc., or an agent thereof, was advised of the binding contract executed by Monty and Heather Allen but despite this knowledge sold the home and property to a 3rd party.

Claim # 6048

167.  The acts committed by Jim Baker were done in the course of his employment with Re/max, Inc., and/or Rise Realty, Inc., and/or Re/max Huntsville, Inc., and/or Rise Realty Parkway Plaza, Inc.

168.  Re/max Huntsville, Inc. and/or Rise Realty Parkway Plaza, Inc. ratified the actions of agent Jim Baker.

169.  The defendants deliberately and intentionally sold the home to a 3rd party with full knowledge of Monty and Heather Allen's contract.

170.  The defendants deliberately and/or intentionally refused to honor the contract entered and executed by all parties.

171.  The defendants told the plaintiffs a second contract was needed.  The defendants represented the sellers did not accept their offer.

Plaintiffs demand compensatory, emotional and mental distress, consequential, and punitive damages in such type and quantity as a jury may find appropriate under the circumstances of this case and the purposes allowed by law, including but not limited to the protection of the public by deterring these defendants and others from doing such wrong in the future, and as exemplary damages.  The plaintiffs claim prejudgment interest pursuant to Alabama Code §8-8-8.  The plaintiffs also claim from the defendants cost and attorney's fees. The plaintiffs demand trial by struck jury.

## COUNT XV

### CONSPIRACY TO COMMIT FRAUD

172.  The plaintiffs reallege all general averments as if fully set out herein.

173.  The defendants conspired to sell the home to another buyer at a higher price despite the preexisting valid contract between Monty and Heather Allen and the sellers.

Claim # 6768

174.    Re/max Huntsville, Inc., or an agent thereof, and/or Rise Realty Parkway Plaza, Inc., or an agent thereof, was advised of the contract executed by Monty and Heather Allen but despite this knowledge sold the home and property to a 3rd party.

175.    The acts committed by Jim Baker were done in the course of his employment with Re/max Huntsville, Inc. and/or Rise Realty Parkway Plaza, Inc.

176.    Re/max Huntsville, Inc. and/or Rise Realty Parkway Plaza, Inc. ratified the actions of agent Jim Baker.

177.    The defendants deliberately and intentionally sold the home to a 3rd party with knowledge of Monty and Heather Allen's contract.

178.    The defendants deliberately and/or intentionally refused to honor the contract entered and executed by all parties.

179.    Agent Jim Baker led Monty and Heather Allen to believe their contract was not accepted by the sellers.

180.    These actions and representations by the defendants were an attempt to induce the plaintiffs to forego their contract on the home and/or an attempt to make the plaintiffs make a higher offer to purchase the home.

181.    Agent Jim Baker has a pattern in practice of accepting contracts and then selling the home to another unrelated 3rd party for an amount greater than the original contract executed between the parties.

182.    All actions committed by the defendants related to this lawsuit were done maliciously.

183.    The original contract purchase price was $125,000. Johnny Wright bought the home in exactly the same condition for approximately $127,000.

Claim # 6768

184.    The home is currently valued at approximately $175,000.

Plaintiffs demand compensatory, emotional and mental distress and mental distress, consequential, and punitive damages in such type and quantity as a jury may find appropriate under the circumstances of this case and the purposes allowed by law, including but not limited to the protection of the public by deterring these defendants and others from doing such wrong in the future, and as exemplary damages. The plaintiffs claim prejudgment interest pursuant to Alabama Code §8-8-8. The plaintiffs also claim from the defendants cost and attorney's fees. The plaintiffs demand trial by struck jury.

### COUNT XVI

### FRAUD/ WILLFUL MISREPRESENTATION OF MATERIAL FACT
### ALABAMA CODE §6-5-101

185.    The plaintiffs reallege all general averments as if fully set out herein.

186.    Re/max Huntsville, Inc., or an agent thereof, and/or Rise Realty Parkway Plaza, Inc., or an agent thereof, was advised of the binding contract executed by Monty and Heather Allen but despite this knowledge sold the home and property to a 3rd party.

187.    The defendants willfully and/or intentionally misrepresented the status of the closing and contract.

188.    The defendants intended to induce the plaintiffs to withdraw their offer or to rescind their contract to allow the sellers to sell the property to a 3rd party at a higher price and/or intended to coerce the plaintiffs to make a higher offer to purchase the home.

Plaintiffs demand compensatory, emotional and mental distress, consequential, and punitive damages in such type and quantity as a jury may find appropriate under the circumstances of this case and the purposes allowed by law, including but not limited to the protection of the public by deterring these defendants and others from doing such wrong in the

Claim # 6768

future, and as exemplary damages. The plaintiffs claim prejudgment interest pursuant to

Alabama Code §8-8-8. The plaintiffs also claim from the defendants cost and attorney's fees.

The plaintiffs demand trial by struck jury.

## COUNT XVII

## RECKLESS MISREPRESENTATION §6-5-101

189.    The plaintiffs reallege all general averments as if fully set out herein.

190.    Re/max Huntsville, Inc., or an agent thereof, and/or Rise Realty Parkway Plaza,

Inc., or an agent thereof, was advised of the contract executed by Monty and Heather Allen but

despite this knowledge sold the home and property to a 3rd party.

191.    The defendants recklessly misrepresented the need to execute a second contract

and the status of the contracts executed by the plaintiffs.

192.    These misrepresentations were made with the intent to induce the plaintiffs to

withdraw their offer to purchase or rescind their contract to allow the defendants to sell the home

to a 3rd party at a higher price and/or with the intent to coerce the plaintiffs to make a higher

offer to purchase the home.

193.    The defendants' actions proximately caused damages to the plaintiffs.

Plaintiffs demand compensatory, emotional and mental distress, consequential, and

punitive damages in such type and quantity as a jury may find appropriate under the

circumstances of this case and the purposes allowed by law, including but not limited to the

protection of the public by deterring these defendants and others from doing such wrong in the

future, and as exemplary damages. The plaintiffs claim prejudgment interest pursuant to

Alabama Code §8-8-8. The plaintiffs also claim from the defendants cost and attorney's fees.

The plaintiffs demand trial by struck jury.

Claim # 6768

## COUNT XVIII

### MISTAKEN MISREPRESENTATION §6-5-101

194.    The plaintiffs reallege all general averments as if fully set out herein.

195.    Re/max Huntsville, Inc., or an agent thereof, and/or Rise Realty Parkway Plaza, Inc., or an agent thereof,  was advised of the contract executed by Monty and Heather Allen but despite this knowledge sold the home and property to a 3rd party.

196.    The defendants mistakenly misrepresented the need to execute a second contract and the status of the sale of the home.

197.    These misrepresentations were made with the intent to induce the plaintiffs to withdraw their offer to purchase or rescind their contract to allow the defendants to sell the home to a 3rd party at a higher price and/or with the intent to coerce the plaintiffs to make a higher offer to purchase the home.

Plaintiffs demand compensatory, emotional and mental distress, consequential, and punitive damages in such type and quantity as a jury may find appropriate under the circumstances of this case and the purposes allowed by law, including but not limited to the protection of the public by deterring these defendants and others from doing such wrong in the future, and as exemplary damages.  The plaintiffs claim prejudgment interest pursuant to Alabama Code §8-8-8.  The plaintiffs also claim from the defendants cost and attorney's fees. The plaintiffs demand trial by struck jury.

## COUNT XIX

### CONCEALMENT §6-5-102

198.    The plaintiffs reallege all general averments as if fully set out herein.

Claim # 6068                                                27 of 40

199.    Re/max Huntsville, Inc., or an agent thereof, and/or Rise Realty Parkway Plaza,

Inc., or an agent thereof,  was advised of the binding contract executed by Monty and Heather

Allen but despite this knowledge sold the home and property to a 3rd party.

200.    The defendants concealed the fact a 3rd party had executed a contract on the same

home from the plaintiffs.

201.    This concealment was an attempt to prevent the plaintiffs from enforcing their

contract thereby allowing the defendants to sell the home to a 3rd party at a higher price and/or

an attempt to coerce the plaintiffs to make a higher offer to purchase the home.

202.    These concealments were made with the intent to induce the plaintiffs to

withdraw their offer to purchase or rescind their contract to allow the defendants to sell the home

to a 3rd party at a higher price and/or with the intent to coerce the plaintiffs to make a higher

offer to purchase the home.

203.    The defendants had a duty to inform the other defendants and the plaintiffs of the

competing contract.

204.    The defendants concealed these facts with the intent to induce the plaintiffs and/or

the sellers to forego the original binding contract to allow the defendants to sell the home to a 3rd

party at a higher price and/or with the intent to coerce the plaintiffs to make a higher offer to

purchase the home.

Plaintiffs demand compensatory, emotional and mental distress, consequential, and

punitive damages in such type and quantity as a jury may find appropriate under the

circumstances of this case and the purposes allowed by law, including but not limited to the

protection of the public by deterring these defendants and others from doing such wrong in the

future, and as exemplary damages. The plaintiffs claim prejudgment interest pursuant to

Claim # 60768

Alabama Code §8-8-8. The plaintiffs also claim from the defendants cost and attorney's fees.

The plaintiffs demand trial by struck jury.

## COUNT XX

### DECEIT ALABAMA CODE §6-5-103

205.   The plaintiffs reallege all general averments as if fully set out herein.

206.   Re/max Huntsville, Inc., or an agent thereof, and/or Rise Realty Parkway Plaza,
Inc., or an agent thereof, was advised of the binding contract executed by Monty and Heather
Allen but despite this knowledge sold the home and property to a 3rd party.

207.   The defendants deceived the plaintiffs (by a willful representation of a material
fact as true which they knew to be untrue) or (by the reckless representation of a material fact as
true which they did not know to be false) to induce the plaintiffs to act and that plaintiffs acted to
their injury by not purchasing the home.

208.   The defendants knew of the falsehood or recklessly represented facts as true
which the defendants did not know to be false, with the intent to deceive the plaintiffs.

209.   Jim Baker told the plaintiffs a second contract was necessary. This was a false
statement.

210.   Jim Baker told the plaintiffs the sellers refused to extend the closing deadline.
This was a false statement.

211.   Jim Baker told the plaintiffs the sellers refused to accept their contract. This was
a false statement.

212.   The defendants committed the deceitful conduct with the intent to induce the
plaintiffs to withdraw their offer to purchase or rescind their contract to allow the defendants to

Claim # 6768

29 of 40

sell the home to a 3rd party at a higher price and/or with the intent to coerce the plaintiffs to make a higher offer to purchase the home.

Plaintiffs demand compensatory, emotional and mental distress, consequential, and punitive damages in such type and quantity as a jury may find appropriate under the circumstances of this case and the purposes allowed by law, including but not limited to the protection of the public by deterring these defendants and others from doing such wrong in the future, and as exemplary damages. The plaintiffs claim prejudgment interest pursuant to Alabama Code §8-8-8. The plaintiffs also claim from the defendants cost and attorney's fees. The plaintiffs demand trial by struck jury.

## COUNT XXI

### WILLFULL DECEIT WITH INTENT TO INDUCE INJURY OR RISK
### ALABAMA CODE §6-5-104

213.    The plaintiffs reallege all general averments as if fully set out herein.

214.    The defendants entered into a contract with the plaintiffs without any intention of performance.

215.    Re/max Huntsville, Inc., or an agent thereof, and/or Rise Realty Parkway Plaza, Inc., or an agent thereof, was advised of the contract executed by Monty and Heather Allen but despite this knowledge sold the home and property to a 3rd party.

216.    Jim Baker told the plaintiffs a second contract was necessary. This was a false statement.

217.    Jim Baker told the plaintiffs the sellers refused to extend the closing deadline. This was a false statement.

218.    Jim Baker told the plaintiffs the sellers refused to accept their contract. This was a false statement.

Claim # 6708

219.    These misrepresentations were made with the intent to induce the plaintiffs to withdraw their offer to purchase or rescind their contract to allow the defendants to sell the home to a 3rd party at a higher price and/or with the intent to coerce the plaintiffs to make a higher offer to purchase the home.

Plaintiffs demand compensatory, emotional and mental distress, consequential, and punitive damages in such type and quantity as a jury may find appropriate under the circumstances of this case and the purposes allowed by law, including but not limited to the protection of the public by deterring these defendants and others from doing such wrong in the future, and as exemplary damages. The plaintiffs claim prejudgment interest pursuant to Alabama Code §8-8-8. The plaintiffs also claim from the defendants cost and attorney's fees. The plaintiffs demand trial by struck jury.

## COUNT XXII

### MONEY OWED BY RE/MAX HUNTSVILLE, INC. AND/OR CHARLES LANZA

220.    The plaintiffs reallege all general averments as if fully set out herein.

221.    Re/max Huntsville, Inc., or an agent thereof, and/or Charles Lanza owe Monty and Heather Allen $3,000 for the earnest money paid upon execution of the contract to purchase the home and property.

Plaintiffs demand compensatory, emotional and mental distress, consequential, and punitive damages in such type and quantity as a jury may find appropriate under the circumstances of this case and the purposes allowed by law, including but not limited to the protection of the public by deterring these defendants and others from doing such wrong in the future, and as exemplary damages. The plaintiffs claim prejudgment interest pursuant to

Claim # 6768

Alabama Code §8-8-8. The plaintiffs also claim from the defendants cost and attorney's fees.

The plaintiffs demand trial by struck jury.

## COUNT XXIII

### INTERFERENCE WITH CONTRACTUAL RELATIONS

222. The plaintiffs reallege all general averments as if fully set out herein.

223. The defendants interfered with the contractual relations between the plaintiffs and the sellers.

224. The defendants consciously and/or deliberately engaged in oppressive, fraudulent, wanton, and/or malicious conduct.

225. The defendants knew of the contract existing between the plaintiffs and the sellers.

226. The defendants intentionally interfered with this contract and/or business relationship existing between the plaintiffs and the sellers.

227. The defendants' interference was not justified.

228. The plaintiffs suffered damages as a result of this intentional unjustified interference.

Plaintiffs demand compensatory, emotional and mental distress, consequential, and punitive damages in such type and quantity as a jury may find appropriate under the circumstances of this case and the purposes allowed by law, including but not limited to the protection of the public by deterring these defendants and others from doing such wrong in the future, and as exemplary damages. The plaintiffs claim prejudgment interest pursuant to Alabama Code §8-8-8. The plaintiffs also claim from the defendants cost and attorney's fees. The plaintiffs demand trial by struck jury.

Dated this 20th day of April _____ 2009.

_____

Jeffrey B. Austin (AUS013)
Attorney for Plaintiffs
WINBORN & AUSTIN
102 South Court Street, Ste. 600
Florence, AL  35630
256-764-0582

The Plaintiffs demand trial by struck jury in this cause.

_____

Jeffrey B. Austin (AUS013)

The Plaintiffs request service by certified mail.

_____

Jeffrey B. Austin (AUS013)

Claim I

0168



LAUDERDALE COUNTY, ALABAMA
MISSY HOMAN HIBBETT, CLERK

## IN THE CIRCUIT COURT OF LAUDERDALE COUNTY, ALABAMA

MONTY ALLEN

and

HEATHER ALLEN

      PLAINTIFFS

V.                           CIVIL ACTION NO:  CV 09-_____

HOMECOMINGS FINANCIAL, L.L.C.,
RE/MAX, INC.,
RE/MAX HUNTSVILLE, INC.,
RISE REALTY, INC.,
RISE REALTY PARKWAY PLAZA, INC.,
VICTOR ENGLERT,
CHARLES LANZA,
JIM BAKER,
TOMMY ADAMS,
PATRICK MCCLAIN,
THE BANK OF NEW YORK TRUST
COMPANY, INC. as successor to JP MORGAN CHASE BANK, INC.,
and fictitious parties XYZ, an individual firm, partnership, corporation, whose names are
otherwise unknown but whose correct names will be added by amendment when
ascertained, whether singular or plural, that entity or those entities, other than those
entities described above, which is the successor in interest of any of the entities of the
entities described above; whether singular or plural, that entity or those entities, other than
those entities described above, which was the predecessor corporation of any of the entities
described above or any other entity or entities responsible for the damages claimed.

      DEFENDANTS

### INTERROGATORIES

The following interrogatories are propounded to the defendants to be answered separately

and under oath by defendants within thirty (30) days after service of same upon defendants:

1.      Describe the circumstances and details related to Homecomings Financial,

L.L.C. and New York Trust Company as successor to JP Morgan Chase Bank becoming the

seller of the home.

Page 1 of 4

Claim # 6768

2.     Describe any and all conversations and the contents thereof regarding the sale of this home.

3.     Describe your understanding of the sellers' failure to honor the contracts executed by Monty and Heather Allen.

4.     Explain why the contract executed by Monty Allen was not honored by the sellers.

5.     Describe the contents of any conversations occurring between Jim Baker and the party answering these interrogatories with regard to the facts and circumstances made the basis of this lawsuit.

6.     Describe what steps, including but not limited to company policies, procedures, or manuals are required of brokers when overseeing or supervising their real estate agents.

7.     Identify any persons who have knowledge of the listing and sale of the home made the basis of this lawsuit.

8.     Describe the circumstances and the agreement between Jim Baker and Homecomings Financial, L.L.C. to repair or improve the home made the basis of this lawsuit.

9.     Identify all persons who received proceeds from the sale of the home including the amounts received by each person.

10.     Describe the commission and fees the broker, listing agent and selling agent would receive from the sale of the home and how each would be compensated and on what basis.

11.     Identify any other transactions Jim Baker has participated in whereby a home was sold to a person other than the first person to execute a contract on the purchase of the property.

12.     Identify and list any and all complaints received regarding the conduct or actions of Jim Baker as a real estate agent.

**Page 2 of 4**

Claim # 6768

13.    Provide any and all documentation and/or information regarding complaints with the Real Estate License Commission against the party responding to these interrogatories.

14.    Identify the disposition of any and all complaints filed with Real Estate License Commission against the party answering these interrogatories.

15.    Explain the reason the contract between Monty Allen and the sellers was not honored.

16.    Describe the facts and circumstances of the offer to purchase the home made by Johnny Wright.

17.    Describe any pre-existing relationship between Johnny Wright and any person involved in the sale of this home.

18.    Identify any and all parties who participated in preparing any documents related to the listing, sale, or contracts regarding the home made the basis of this lawsuit.

19.    Identify all persons who signed any documents related to the sale of the home and/or contracts executed by the plaintiffs and explain their role in the sale of the home and by whom they are employed.

20.    Identify the person or entity who had authority to accept or reject offers to purchase the home made the basis of his lawsuit.

21.    Provide all details and explain all information regarding offers made by the plaintiffs to purchase the home known by the party answering this interrogatory

22.    Identify all persons with whom the person answering this interrogatory communicated with regarding the sale of the home and explain the contents of all conversations between the person answering this interrogatory and any other person and/or any party named in this lawsuit.

Claim # 6768

23.    Provide and explain all information possessed by the person answering this interrogatory regarding the plaintiffs' attempt to purchase the home.

24.    Identify the owners of the property at all times pertinent to the allegations of this lawsuit.

This _20_ day of _April_____, 2009.

_____

Jeffrey B. Austin, Esq. (AUS013)
Attorney for Plaintiffs
WINBORN & AUSTIN
102 South Court Street, Suite 600
Florence, AL 35630
(256) 764-0582

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon the Defendant along with the Summons and Complaint.

_____

Jeffrey B. Austin, Esq.

Claim # 6768

# IN THE CIRCUIT COURT OF LAUDERDALE COUNTY, ALABAMA

**MONTY ALLEN**

**and**

**HEATHER ALLEN**

      **PLAINTIFFS**

**V.**                                    **CIVIL ACTION NO:  CV 09-_____**

**HOMECOMINGS FINANCIAL, L.L.C.,**
**RE/MAX, INC.,**
**RE/MAX HUNTSVILLE, INC.,**
**RISE REALTY, INC.,**
**RISE REALTY PARKWAY PLAZA, INC.,**
**VICTOR ENGLERT,**
**CHARLES LANZA,**
**JIM BAKER,**
**TOMMY ADAMS,**
**PATRICK MCCLAIN,**
**THE BANK OF NEW YORK TRUST**
**COMPANY, INC. as successor to JP MORGAN CHASE BANK, INC.,**
and fictitious parties XYZ, an individual firm, partnership, corporation, whose names are
otherwise unknown but whose correct names will be added by amendment when
ascertained, whether singular or plural, that entity or those entities, other than those
entities described above, which is the successor in interest of any of the entities of the
entities described above; whether singular or plural, that entity or those entities, other than
those entities described above, which was the predecessor corporation of any of the entities
described above or any other entity or entities responsible for the damages claimed.

      **DEFENDANTS**

## REQUEST FOR PRODUCTION

    The plaintiffs, Monty Allen and Heather Allen, request the defendant to produce and
allow plaintiffs to inspect and copy within thirty (30) days the following documents:

1.    Any and all documents related to or pertaining to the home and property made the
basis of this lawsuit.

2.    Any and all communication in any form including letters and emails regarding
offers made on the property made the basis of this lawsuit.

3.     Any and all books and instruction manuals related to the proper procedures for supervising listing brokers and real estate agents.

4.     Copies of any and all contracts related to the sale of the home made the basis of this lawsuit.

5.     Copies of any and all listing agreements regarding the property made the basis of this lawsuit.

6.     Copies of all loan closing documents related to the sale of the home made the basis of this lawsuit.

7.     Any and all documents related to the relationship between the defendants.

Jeffrey B. Austin, Esq. (AUS013)
Attorney for Plaintiffs
WINBORN & AUSTIN
102 South Court Street, Suite 600
Florence, AL 35630
(256) 764-0582

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon the defendants along with the Summons and Complaint.

Jeffrey B. Austin, Esq.

Claim # 6768



LAUDERDALE COUNTY, ALABAMA
MISSY HOMAN HIBBETT, CLERK

## IN THE CIRCUIT COURT OF LAUDERDALE COUNTY, ALABAMA

**MONTY ALLEN**

**and**

**HEATHER ALLEN**

      **PLAINTIFFS**

**V.**               **CIVIL ACTION NO: CV 09-_____**

**HOMECOMINGS FINANCIAL, L.L.C.,**
**RE/MAX, INC.,**
**RE/MAX HUNTSVILLE, INC.,**
**RISE REALTY, INC.,**
**RISE REALTY PARKWAY PLAZA, INC.,**
**VICTOR ENGLERT,**
**CHARLES LANZA,**
**JIM BAKER,**
**TOMMY ADAMS,**
**PATRICK MCCLAIN,**
**THE BANK OF NEW YORK TRUST**
**COMPANY, INC. as successor to JP MORGAN CHASE BANK, INC.,**
and fictitious parties XYZ, an individual firm, partnership, corporation, whose
names are otherwise unknown but whose correct names will be added by
amendment when ascertained, whether singular or plural, that entity or those
entities, other than those entities described above, which is the successor in interest
of any of the entities of the entities described above; whether singular or plural, that
entity or those entities, other than those entities described above, which was the
predecessor corporation of any of the entities described above or any other entity or
entities responsible for the damages claimed.

      **DEFENDANTS**

### NOTICE OF SERVICE OF DISCOVERY DOCUMENTS

TO:   Lauderdale County Circuit Court Clerk
      200 South Court Street
      Florence, AL 35630

      **PLEASE TAKE NOTICE** that the following discovery documents have been
filed on behalf of the plaintiffs:

      (X)  Interrogatories to Defendants
      (X)  Request for Production of Documents to Defendants

Claim # 6168

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon the Defendants along with the Summons and Complaint.

This the 20th day of April, 2009.

Jeffrey B. Austin (AUS013)
Attorney for Plaintiffs

CLAIM #6768



LAUDERDALE COUNTY, ALABAMA
MISSY HOMAN HIBBETT, CLERK

## IN THE CIRCUIT COURT OF LAUDERDALE COUNTY, ALABAMA

**MONTY ALLEN**
and
**HEATHER ALLEN**

    **PLAINTIFFS**

**V.**                                              CIVIL ACTION NO:  CV 09-900073

**HOMECOMINGS FINANCIAL, L.L.C., et al.**

    **DEFENDANTS**

    **PLAINTIFFS' OPPOSITION TO DEFENDANTS' SUMMARY JUDGMENT**

The plaintiffs submit the following disputed facts and law in opposition to all summary judgment motions filed by the defendants.

**I.  Summary of opposition to summary judgment.**

The defendants' summary judgment motions should be denied because:

1. The parties executed a binding and valid contract;

2. The property was purchased "as is";

3. All properties are subject to redemption rights for 12 months after the foreclosure regardless of how many times the property changes owners.

4. The conditions allowing the sellers to terminate the contract did not exist;

5. The redemption rights did not affect marketability or cost of insuring title;

6. No one **exercised** their right to redeem the property;

7. The sellers' real estate agent, Jim Baker, fraudulently led Monty Allen to believe he would be allowed to purchase the property as soon as the redemption rights expired;

8. Monty and Heather Allen were not allowed to purchase the property at the end of the redemption period;

Claim # 6768

9. Real Estate Brokers are responsible for the acts of their Real Estate agents; and

10. The sellers did not respond to or investigate the validity of Lion and Lamb's redemption letter.

The sellers admit Monty and Heather Allen performed every act necessary to proceed with the closing and to finalize the purchase of the home. The sellers admit, despite Monty and Heather Allen performing every condition necessary to proceed with the closing, the sellers refused to honor the contract. It is undisputed that Monty Allen insisted he be allowed to purchase the property despite the redemption claim or threat by Lion and Lamb L.L.C. Lion & Lamb would have been allowed to redeem the property from Monty and Heather Allen and Monty and Heather Allen were willing to accept this risk. The redemption rights follow the property for 12 months regardless of how many times title to the property is conveyed or how many times the property is sold within the 12 month redemption period.

Furthermore, no one ever redeemed the property. The contract only allows the sellers to cancel the contract if the property is redeemed. The contract **does not** allow the sellers to cancel based on the mere threat of redemption. The threat of redemption was implicit from the beginning because the redemption rights attach automatically by operation of law and remain for 12 months after the foreclosure sale. If the threat of redemption was a legitimate concern, the sellers would have waited until December 17, 2007 to market the property. Instead, the sellers began to market the property almost immediately upon purchasing the property at the foreclosure sale.

The sellers were worried about losing money because if Lion and Lamb had followed through with their threat to redeem, the sellers had lost their right to recoup maintenance costs and other fees incurred as a result of the foreclosure because they had not responded to the

Claim # 6768

redemption request within 10 days.  Alabama Code §6-5-252.  Once a written demand for a

statement of charges is made from a person with redemption rights, the person who purchased

the property at the foreclosure sale or, if the property was subsequently sold, the current owner of

the property, must respond in writing with an itemization of all improvements and costs incurred

since the foreclosure.  If the foreclosure purchaser or current owner fails to respond within 10

days, the debtor can redeem the property without paying all of the cost incurred since the

foreclosure.  Alabama Code §6-5-252.

The defendant's had an incentive to sell the property to Lion and Lamb instead of Monty

and Heather Allen because the sellers could have recovered their $13,390 rehabilitation costs if

the redemptioners had actually exercised their redemption rights.  To redeem, the redemptioners

must pay all costs incurred through the foreclosure which would include any necessary

remodeling or preservation of the property.  The sale to Monty Allen would not necessarily

include all these costs.  There was at least $13,390 in rehabilitation costs.  (Exhibit O, p. HFN-

240).

The sellers mishandled the redemption request and then panicked.  This negligent

handling of the redemption request clouded their judgment and common sense.  No one

investigated or responded to the redemption letter from Lion and Lamb L.L.C.

The redemption threat did not affect the marketability, insurability, or ability to convey

title.  Monty and Heather Allen purchased the property "as is."  The right to redemption

automatically follows the property for 12 months after the foreclosure sale no matter who owns

the property or who sells the property.  Foreclosure properties are routinely sold subject to

redemption rights.  Title insurance companies routinely issue title insurance for properties sold

subject to redemption rights.  Everyone involved in this transaction knew when Monty and

Claim # 6768

Heather Allen signed their contract an explicit and implicit threat of redemption existed as a

matter of fact, law, and contract. The fact Lion and Lamb merely threatened to redeem the

property in no way changed the status of the title, the marketability of the title, or the insurability

of the title.

## II. The Bank of New York bought the property at a foreclosure sale.

This case involves property and a house located on Wilson Lake with a physical address

of 608 West Lakeside Drive Florence Alabama. On or about March 30, 2006, Joey and Teresa

Harrison purchased the property from the Estate of Virlyn Bulger. (Exhibit A). Joey and Teresa

Harrison executed a mortgage in the amount of $144,500 to finance the purchase of the property.

(Exhibit B). By November 7, 2006, Joey and Teresa Harrison defaulted and a Notice of

Foreclosure Sale was published in the Times Daily beginning November 7, 2006. (Exhibit C).

GMAC/Homecomings Financial had been hired by the lender to service the loan.

(Mathew Wach Depositon p. 10-13, 81). Homecomings Financial, L.L.C. is a GMAC company.

(Mathew Wach Depositon p.16). GMAC made the decision to foreclose the mortgage. (Mathew

Wach Depositon p. 18, 23). Initially, the foreclosure was handled internally within the

Homecomings Financial division in San Diego by Asset Manager, Donna Arrington. (Matthew

Wach deposition p. 23-24).

GMAC sent bidding instruction to the attorney handling the foreclosure. (Mathew Wach

Depositon p. 76-81 and Exhibit E). In bold letters GMAC included in the bidding instructions to

the attorney handling the foreclosure "DO NO GO TO SALE UNLESS YOU HAVE CLEAR

TITLE!." (Mathew Wach Depositon p. 76-81 and Exhibit E).

At the time of the foreclosure sale, the Harrisons owed $151,073.97. (Exhibit E). The

mortgagee, The Bank of New York Trust Company as successor to JPMorgan Chase Bank,

Claim # WN68

purchased the property at the foreclosure sale on December 14, 2006 for $124,950. (Exhibit D).

The banks will accept a price lower than the total amount owed at a foreclosure sale because they

do not want the property to become a Real Estate Owned property. Additional costs and

expenses are involved once a property becomes a Real Estate Owned property after a foreclosure

sale. (Matthew Wach deposition p. 80).

**III. The sellers admit the parties executed a binding contract.**

Jim Baker has always been the Real Estate Agent for the sellers for this piece of property

even though he switched his real estate license from RE/MAX Huntsville to Rise Realty during

the sale of this property. After the bank bought the property at the foreclosure sale, GMAC

listed the property for sale with Real Estate Agent Jim Baker at RE/MAX Huntsville on January

10, 2007. Charles Lanza was the Listing Broker (Matthew Wach deposition p. 24; Monty Allen

deposition p. 110 and Exhibit K). The listing price was $174,900. (Exhibit K).

Usually, every property bought after foreclosure is worth more than the price being paid.

(Jim Baker deposition p. 135). The banks will accept an offer below the value because the banks

want to get as much money out of the property as quickly as possible and eliminate the bad debt.

(Jim Baker deposition p. 135).

After the bank bought the property at the foreclosure sale, GMAC had the authority to

accept contracts or offers to purchase the property. (Matthew Wach deposition p. 37-38).

GMAC was not required to consult with the Bank of New York as Successor in Interest to JP

Morgan Chase Bank before accepting an offer to purchase the property. (Matthew Wach

deposition p. 38-39). Coldwell Banker was delegated the authority to accept offers within

certain parameters but GMAC/Homecomings Financial LLC had the ultimate authority to accept

or reject an offer. (Matthew Wach deposition p. 125-126).

Claim # 6768

Monty Allen has purchased numerous foreclosure properties. (Monty Allen deposition p. 75). Monty Allen knew the original owners of the property would have 1 year to redeem the property and take the home away from him. (Monty Allen deposition p. 109-110).

Monty and Heather Allen made an offer to purchase the property for $125,000. (Matthew Wach deposition p. 65). The sellers accepted Monty Allen's $125,000 offer on May 24, 2007. (Monty Allen deposition p. 139-140). Monty Allen provided all necessary documents to GMAC to schedule a closing. (Matthew Wach deposition p. 62, 64-65;).

Jim Baker was working as the seller's and/or buyers' agent. (Jim Baker deposition p. 23-24). Jim Baker received the signed, executed contract accepted by both parties. (Jim Baker deposition p. 82). As long as both the buyer and seller have signed the contract, Jim Baker has enough to go forward because they have an executed contract. (Jim Baker deposition p. 87). Monty Allen sent a loan approval verification after May 24, 2007 but before June 14, 2007. (Monty Allen deposition p. 145-146). The parties had an executed contract. (Jim Baker deposition p. 122).

When the parties show up for a closing at the attorney's office, all necessary documents have been acquired from the seller, title insurance has been issued, and everything is in place to close the transaction. (Jim Baker deposition p. 128). Jim Baker was informed on his way to the closing that a request for redemption had been made and the closing would not take place. (Jim Baker deposition p. 129). On June 5, 2007, Glenn Jones, a RE/MAX Huntsville employee, sent a fax to H.M. Nowlin regarding Jim Bakers knowledge of the redemption request and forwarded the Lion & Lamb redemption letter to H.M. Nowlin. (Jim Baker deposition pp. 207-208 , and Exhibit T). H.M. Nowlin was the real estate closing attorney hired to close the Monty and Heather Allen contract. (Jim Baker deposition pp. 148-152).

Claim # 6768

Jim Baker waited until the closing to tell Monty Allen about the Lion and Lamb

redemption letter. (Jim Baker deposition p. 137). Jim Baker knew about the redemption letter

before the closing date, even before Donna Arrington confirmed it on the way to the closing.

(Jim Baker deposition p. 138). Representatives of Coldwell Banker, Homecomings Financial

L.L.C., and GMAC collectively made the decision to cancel the closing. (Matthew Wach

deposition p. 84). When the closing attorney walked into the room, he asked Jim Baker if he had

told Monty and Heather Allen about the problems with the closing. The closing attorney told

Monty and Heather Allen the sellers were not going to be able to close that day. Monty Allen

demanded specific performance. (Monty Allen deposition p. 148).

Finally, someone told Monty Allen the debtors were going to redeem the property.

Monty Allen persisted and stated they could redeem the property through him and he wanted the

contract honored. Monty Allen told the closing attorney the redemption threat was not a valid

and/or sufficient reason to stop the closing. (Monty Allen deposition p. 149-150). When Jim

Baker told Monty Allen about the redemption letter, Monty Allen told Jim Baker he was a realtor

and he understood the right of redemption and he said he would take his chances on the property.

(Jim Baker deposition p. 186).

The closing attorney finally offered to extend the closing. Monty Allen agreed and

signed an extension. As far as Monty Allen was concerned, the lawyer was qualified and

authorized to extend the closing. (Monty Allen deposition p. 150    Jim Baker signed the

addendum to extend the closing. (Jim Baker deposition p. 129; Exhibit F).

The closing attorney told Monty Allen they would reschedule the closing in 2 weeks.

(Monty Allen deposition p. 155). An oral agreement to extend the time for performing a

previous agreement merely supplements, rather than changes the terms and obligations of the

Claim # 6768

agreement. Cater v. Haralson 362 So.2d 242 (Ala. Civ. App.), cert. denied, 362 So.2d 244 (Ala. 1978).

Monty Allen called Jim Baker 2 days before the expiration of the 2 week closing extension and asked to reschedule the closing. (Monty Allen deposition p. 156-157). Jim Baker said the seller never really signed the extension. (Monty Allen deposition p. 155). Jim Baker does not remember what he told Monty Allen about extending the closing. (Jim Baker deposition p. 179-180). They obviously talked about the addendum extending the closing date because Jim Baker is the one that prepared the document. (Jim Baker deposition p. 180).

Jim Baker remembers 3 or 4 follow up conversations with Monty Allen after the scheduled June 14, 2007 closing. (Jim Baker deposition p. 180). Every time Jim Baker talked with Monty Allen after the closing cancellation, Monty Allen told Jim Baker he was leaving the earnest money because he still wanted the property. (Jim Baker deposition p. 219). These conversations occurred between June of 2007 and September of 2007. (Jim Baker deposition p. 219). Jim Baker told Monty Allen the closing had not been rescheduled because the seller did not agree to extend the closing. (Jim Baker deposition pp. 180-181). In subsequent conversations with Monty Allen, Monty Allen insisted that the closing be rescheduled and his contract honored. (Jim Baker deposition pp. 185-186).

After the threat of redemption and their refusal to sell the property to Monty and Heather Allen, GMAC, through Coldwell Banker, made the decision to take the property off the market. (Matthew Wach deposition pp. 119-120). Coldwell Banker did not have the authority to take the property off the market and neither did The Bank of New York Trust Company. (Matthew Wach deposition p. 120).

Claim # 6768

GMAC eventually relisted the property for sale through Real Estate agent Jim Baker in

September 2007. By this time, Jim Baker had moved his real estate license from RE/MAX

Hunstville to Rise Realty and was a real estate agent and/or a Broker for Rise Realty. Victor

Englert was Jim Baker's Broker at Rise Realty. (Jim Baker deposition p. 254). It was relisted

with Jim Baker on September 19, 2007 for $129,000. (Exhibit N, & Jim Baker deposition p.

253).

Jim Baker received a fax from Donna Arrington on December 6, 2007 and the very next

day Jim Baker sent a fax to Chris Lee telling him the property sold for $125,000. (Jim Baker

deposition p. 227). On December 7, 2007, Jim Baker wrote Chris Lee and told him they had an

accepted offer for $125,000 from Monty Allen. (Exhibit S, & Jim Baker deposition pp. 224-

225).

When Jim Baker contacted Monty Allen about the property being relisted, Monty Allen

insisted he did not need to sign another contract because he already had a valid contract. (Jim

Baker deposition p. 222). Monty and Heather Allen reluctantly sent the identical contract they

had already signed. (Matthew Wach deposition p. 127-128; Exhibit I). GMAC is not aware if

anybody ever communicated to GMAC or Homecomings Financial, L.L.C. that Monty and

Heather Allen were demanding performance of their 1st contract. (Matthew Wach deposition p.

129).

GMAC refused to honor Monty and Heather Allen's contract. (Jim Baker deposition p.

228). Southern Properties eventually bought the property for $127,000. (Matthew Wach

deposition p. 127, 135). The only difference between Southern Properties' contract and Monty

and Heather Allen's contract is the purchase price. (Matthew Wach deposition p. 131-132). The

Southern Properties and Monty and Heather Allen contracts are identical. (Matthew Wach

Claim # 6068

deposition p. 133; Exhibit G). Decisions on whether to accept the Southern Properties offer were made identically to the Monty and Heather Allen offer decisions because GMAC was still operating under the same contract with Coldwell Banker at the time the property was finally sold to Southern Properties. (Matthew Wach deposition p. 138).

There was an addendum to the Southern Properties contract extending the closing date. (Matthew Wach deposition p. 156-158; Exhibit H). Although nobody from GMAC/ Homecomings or Coldwell Banker signed the closing date extension, the closing was extended pursuant to the unsigned addendum. (Matthew Wach deposition p. 158-160; Exhibit H).

GMAC claims to have no documentation whatsoever about Monty Allen's insistence that he had a valid contract and demanded specific performance before the Southern Properties deal proceeded. (Matthew Wach deposition p. 161-162). This is an indication of a valid claim against Jim Baker for not forwarding the Monty Allen offer and demands to GMAC.

## IV. The redemption threat is not a surprise or unusual event when purchasing a foreclosure property.

Jim Baker primarily handles foreclosure properties and he is known as the "foreclosure guy." (Jim Baker deposition p. 30). The biggest difference between a foreclosure property and a property not involving a foreclosure is the right of redemption. Redemption rights allow the defaulting homeowner, or his assignee, to get the property back by paying the arrearage. (Jim Baker deposition p. 30-31).

This property was a foreclosure property and Jim Baker knew all homes in Alabama had a 1 year right of redemption. (Jim Baker deposition p. 28). The redemption rights expired, December 14, 2007, 12 months from the date the property was purchased at the foreclosure sale. (Jim Baker deposition p. 213-214; Mathew Wach deposition p. 127). Everyone involved knew they could still market the property subject to the redemption bond. (Exhibit O, HFN-240).

Claim #6768

When Jim Baker told Monty Allen about the redemption letter, Monty Allen told Jim Baker he was a realtor and he understood the right of redemption and he said he would take his chances on the property. (Jim Baker deposition p. 186).

Jim Baker has sold properties subject to the right of redemption. Some of these real estate transactions required title insurance. The title insurance companies issued a policy of insurance despite the redemption rights. (Jim Baker deposition p. 58). A deed was executed from the sellers to the buyers with a right of redemption and those deeds were recorded. (Jim Baker deposition p. 58-59). Of all the real estate transactions involving the right of redemption only 4 to 6 were stopped based on someone asserting the rights of redemption. (Jim Baker deposition p. 59-60).

There is nothing unusual about the Monty Allen offer and it appears to be a standard form real estate contract. (Jim Baker deposition p. 68-69). Jim Baker had completed this process hundreds of times before the Monty Allen contract. (Jim Baker deposition p. 75).

On June 4, 2007 Mr. Baker was aware Lion & Lamb was threatening to redeem the property and he notified Donna Arrington. (Jim Baker deposition p. 144; and Exhibit L). Jim Baker did not tell Monty Allen about the threat of redemption even though he knew Monty Allen was; (1) obtaining loan documents and appraisals; and incurring costs in obtaining loan documents and appraisals. (Jim Baker deposition p. 146-147). According to Jim Baker, when Monty Allen purchased the property he was aware it was subject to the right of redemption therefore there was no need to tell him about the Lion & Lamb redemption letter. (Jim Baker deposition p. 144).

**V. The "sole discretion" provision only applies to the seller's choice to extend the closing or terminate the contract if 1 of the 7 listed conditions occur.**

GMAC gave the following reasons for canceling the contract:

Claim # 6768

1. Lion & Lamb, L.L.C. sent a notice of the right to redeem on June 4, 2007 which was dated June 1, 2007. (Exhibit M; and Matthew Wach deposition p. 75).

2. GMAC believed it was their discretion to cancel the closing if they believed they could not provide clear title or if there were any issues. (Matthew Wach deposition p. 95).

3. Lion & Lamb sent a letter threatening to redeem and someone at The Bank of New York Trust Company or GMAC believed they couldn't provide insurable title. (Matthew Wach deposition p. 112).

The interpretation of an unambiguous contract is a matter of law to be decided by the Court. Alfa Life Insurance v. Johnson 822 So.2d 400, 404-405 (Ala. 2001). If a contract is unambiguous, the Court must determine the force and effect of the terms of the contract as a matter of law. Id. Contracts are to be enforced as they are written as long as there is no ambiguity in the provisions involved. Watkins v. U.S. Fidelity & Guarantee 656 So.2d 337, 339 (Ala. 1994) Whether an agreement is ambiguous is a question of law. When its terms are clear and certain, the Court, and not the jury, has the duty to determine the meaning of the agreement. Terry Cove North v. Baldwin County Sewer Authority 480 So.2d 1171, 1173 (Ala. 1985). Every contract imposes an obligation to act in good faith and to deal fairly. American Cast Iron Pipe Company v. Williams 591 So.2d 854 (Ala. 1991). Under general Alabama rules of contract interpretation, the intent of the contracting parties is discerned from the whole of the contract. Loerch v. National Bank of Commerce of Birmingham 624 So.2d 552, 553 (Ala. 1993). Where there is no indication that the terms of the contract are used in a special or technical sense, they will be given their ordinary, plain, and natural meaning. Ex parte Dan Tucker Auto Sales, Inc. 718 So.2d 33, 36 (Ala. 1998). Every contract imposes upon each party a duty of good faith and

Claim # 6068

fair dealing in its performance and its enforcement.  Hunter v. Wilshire Credit Corporation 927

So.2d 810, 813 (Ala. 2005).

Contract contingencies have an implied duty to act in reasonable good faith.  Schottland

v. Lucas 396 So.2d 72 (Ala. 1981).  Paragraph 21 of the contract list 7 conditions which would

allow the sellers to either extend the closing date or terminate the contract.  (Exhibit G p. 08/17,

HFS0203).  Paragraph 21 of the contract, however, **does not** allow the sellers the "sole

discretion" to determine if 1 of the 7 conditions exists.  The "sole discretion" provision only

applies to the seller's right to choose to either extend the closing date or terminate the contract.

Therefore good faith and reasonableness principals apply to determine if 1 of the 7 conditions

really existed.

The sellers admit the only possible applicable provisions are paragraphs 21(a) and 21(b).

Paragraph 21 is as follows:

"21.  CONDITIONS TO SELLER'S PERFORMANCE:  Seller shall have the right, at Seller's

sole discretion, to extend the closing date or to terminate the Agreement if:

(a) Seller determines that it is unable to convey insurable title to the Property through a title

insurance company selected by Seller at regular rates;

(b) Any third party, whether tenant, homeowner's association, mortgage insurance company or

otherwise, exercises rights under a right of first refusal, option or similar right to purchase the

Property."

The defendant's want the "sole discretion" provision to apply to all aspects of the

contract to allow the defendant's the unfettered discretion to determine if a condition excusing he

seller's performance exists.  The contract language clearly indicates the "sole discretion"

Claim # 6768

qualification only applies to the sellers decision to either extend the closing or terminate the contract **if** 1 of the 7 stated conditions actually exists.

## VI. The conditions allowing the sellers to cancel the contract did not exist.

### A. Lion and Lamb did not exercise their redemption rights.

The indisputable fact is Lion & Lamb L.L.C. did not redeem the property. (Matthew Wach deposition pp. 74,100). The contract provides the seller sole discretion to cancel the contract **if** a third party **exercises** rights under a right of 1st refusal, option or similar right to purchase the property.

The contract does not allow the seller to cancel the contract if someone merely threatens to exercise a right of 1st refusal or to redeem the property. Where contracts are clear, their interpretation must be given the plain meaning of the words. These words clearly say the sellers can cancel the contract if the right of redemption is exercised. It is undisputed that no one ever exercised their right to redeem the property.

The sole discretion language is qualified and does not give the sellers the unilateral authority to cancel the contract at their sole discretion. The "sole discretionary" authority is conditioned upon several stated events. None of these events occurred in this case. Therefore, any claims the sellers were justified in cancelling the contract is meritless and not supported by neither the evidence nor the documentation.

### B. The redemption rights did not affect the ability to convey title or to insure title at reasonable rates.

The sellers cancelled Monty and Heather Allen's contract partially because Lion & Lamb sent a letter threatening to redeem the property. Therefore, someone at The Bank of New York Trust Company or GMAC believed they couldn't provide insurable title. (Matthew Wach deposition p. 112). All evidence is contrary to this assertion because the undisputed evidence

Claim # 6168

shows title insurance was available and would be issued at the Monty Allen closing. January

Taylor works for the title resolution attorney at Morris, Schneider & Prior in Atlanta, Georgia.

(Jim Baker deposition p. 167-168). Morris & Schneider is a title insurance company. They

represented the seller in the transaction involving Monty and Heather Allen. (Jim Baker

deposition p. 169). Morris & Schneider was going to provide title insurance despite the right of

redemption. (Jim Baker deposition p. 170). GMAC does not have any documents to indicate

GMAC could not provide insurable title at the Monty Allen closing. (Matthew Wach deposition

p. 113).

Though the question of whether any given title is marketable is ultimately resolved by

opinion, the opinion necessarily is one of the law. Marketable title may be based on adverse

possession or based on proof of a fact not of record if the proof is readily accessible. Messer v.

Johnson Realty Company v. Security Savings & Loan Company 94 So.734 (1922). The title

must be free from reasonable doubt but not necessarily from all suspicion or possible defect.

Messer - Johnson Realty Company v. Security Savings & Loan Company 94 So.734 (1922).

Marketable title is such a title that a reasonable purchaser, well informed as to the facts and their

legal bearings, willing and anxious to perform his contract would in the exercise of prudence be

willing and ought to accept. Prestwood v. City of Andalusia 709 So.2d 1173 (1997).

Every foreclosed property is sold subject to redemption rights and a title insurance policy

is issued with the exclusion and condition of the right of redemption. This is routinely done in

every real estate transaction involving a foreclosure property. Therefore, the Lion and Lamb

redemption letter did nothing to affect the cost or ability to convey insurable title. GMAC has

closed other real estate transactions when redemption rights were involved. The buyers received

Page 60 of 77

Claim # 6068

marketable title despite the property being sold before the redemption rights expired. (Matthew
Wach deposition p. 168).

The Monty Allen contract limited the seller's closing costs responsibility to $2,000.00.
The contract required the sellers to pay $2,000 of the closing cost. (Monty Allen deposition p.
116). Therefore any argument that the sellers could not provide marketable title at a reasonable
cost is bogus. Their cost was capped.

The sellers terminated Monty and Heather Allen's contract because GMAC believed it
was their discretion to cancel the closing if they believed they could not provide clear title or if
there were any issues. (Matthew Wach deposition p. 95). The real reason GMAC cancelled the
contract was because they would be able to recoup all costs associated with the foreclosure if
they still owned the property at the time of the redemption. Alabama Code §6-5-253(a)(4).
Once the property sold to Monty Allen, GMAC and the bank would have no right to any of the
redemption proceeds if Lion and Lamb redeemed the property.

## VII. The Monty Allen contract was executed subject to the redemption rights.

The contract signed by Patrick McClain and Monty and Heather Allen clearly indicates
and states that if Monty Allen received title it will still be subject to redemption rights. (Matthew
Wach deposition p. 94). This provision is in all of the standard addendum contracts GMAC
requires all purchasers sign on an REO property. (Matthew Wach deposition p. 94-95).

GMAC has closed other real estate transactions involving redemption rights. The buyers
received marketable title despite the implicit threat of redemption. (Matthew Wach deposition p.
168).

Claim # 6768

**VIII. All properties purchased after a foreclosure sale are subject to redemption rights by operation of law.**

Even if the contract provisions did not address the redemption rights of the debtor, it would still apply by operation of law. Every property purchased within 12 months of a foreclosure sale is subject to redemption rights of the debtor or assignee of the debtor's redemption rights. Alabama Code Sections 6-5-247(1); 6-5-248(a)(1); 6-5-248(a)(5); 6-5-248(b); and 6-5-235.

Once a redeeming party makes a written demand for a statement in writing of the debt and charges claimed by the purchaser/owner of the foreclosed property, the purchaser/owner must respond to the demand with an itemized statement of all charges within 10 days. Ala. Code §6-5-252. The redeeming party has 10 days to pay all of the amounts claimed by the purchaser. Ala. Code §6-5-252.

**IX. The redemption threat did not affect ability or cost of title insurance beyond what was already expected because the property was purchased "as is."**

The contract clearly states the property was purchased "as is." (Exhibit G, paragraph 11(D), p. 2of 3 RE/MAX-000014; and Jim Baker deposition p. 87). In the real estate market, this means "however it is, whatever condition it is in that's how you take it." (Jim Baker deposition p. 88). "As is" is circled on page 2 of the Monty Allen contract. Monty Allen is the one who circled "as is" on the contract. (Jim Baker deposition p. 89).

All foreclosed property purchased within 12 months of the foreclosure sale is sold subject the redemption rights. Every foreclosure sale is accompanied by redemption rights. There is nothing extraordinary or unusual when dealing with redemption rights attached to a foreclosed property. This is a routine issue addressed and handled in every real estate transaction. Monty Allen has purchased numerous foreclosure properties. (Monty Allen deposition p. 75). Monty

Claim # 6768

Allen knew the original owners of the property would have 1 year to redeem the property and take the home away from him. (Monty Allen deposition p. 109-110).

According to email exchanges between the defendants and other 3rd parties regarding the redemption threat, the redemption request was not being processed and the defendants knew there were no guarantees the redemption would be paid. (Exhibit L p. 2 of 6, HFS 0212; and Matthew Wach deposition p. 92). One of the emails says "we can always provide a bond to the buyer even with the redemption request." (Exhibit L p. 2 of 6 ,HFS 0212; and Matthew Wach deposition p. 93). If a bond was provided, the borrower would receive their funds one way or the other either through the bond or through the purchase. (Matthew Wach deposition p. 93).

Sometimes lenders require a bond before allowing the buyer to borrow the money. The bond protects the purchaser of the property. (Jim Baker deposition p. 171-172). Jim Baker has been involved in other real estate transactions with a redemption where a bond was purchased. (Jim Baker deposition p. 172).

The contract does not give the sellers "sole discretion" to determine that a condition allowing cancellation of the contract. The contract only gives them sole discretion to cancel the contract, **if** 1 of the cancellation conditions actually exists. The fact of the matter is, the redemption letter did not change the status of the title to the property. It was being sold subject to redemption rights since it was 1st listed for sale. The seller knew the property would be sold subject to redemption rights from the beginning.

**X. GMAC did not handle this redemption like all other redemption request.**

Jim Baker had conversations with Donna Arrington by email regarding the redemption issues before the closing. (Jim Baker deposition p. 130; & Exhibit L ). Jim Baker had never heard of Lion & Lamb L.L.C. before receiving the letter from them threatening to redeem the

Claim # 6768

property. (Jim Baker deposition p. 130-131). Lion & Lamb was not the original debtor on the

property that led to the foreclosure. (Jim Baker deposition p. 131).

 Email traffic indicates Coldwell Banker questioned why GMAC failed to handle the

redemption letter the same way GMAC handled a redemption request just 1 day before the email

exchange on June 4, 2007 regarding the Lion and Lamb redemption request. (Exhibit O, Exhibit

L, & Matthew Wach deposition p. 186). The Monty and Heather Allen redemption issues were

not being handled the same way as other Alabama redemption properties. (Matthew Wach

deposition p. 187-188).

 Heather and Monty Allen were not allowed to purchase the property because Lion &

Lamb, L.L.C. sent a notice of the right to redeem on June 4, 2007. (Exhibit M; and Matthew

Wach deposition p. 75). The Harrisons, however, not Lion & Lamb, L.L.C., would have had the

redemption rights to the property unless those rights were assigned to Lion & Lamb, L.L.C.

(Matthew Wach deposition p. 75). GMAC/Homecomings Financial, L.L.C. had the

responsibility to follow up on the redemption threat made by Lion & Lamb L.L.C. (Matthew

Wach deposition p. 120). GMAC did not respond to or provide any information to Lion & Lamb

in response to the redemption request until October of 2007. (Matthew Wach deposition p. 115,

117). GMAC has no explanation as to why the redemption issue was not investigated more

thoroughly. (Matthew Wach deposition p. 166). GMAC believes they should have provided

redemption figures to Lion & Lamb, L.L.C. within 10 days. (Matthew Wach deposition p. 167).

 No one at Homecomings Financial or GMAC did anything to research the validity of the

redemption claim. They just assumed Lion & Lamb, L.L.C. had the authority to redeem.

(Matthew Wach deposition p. 122-123). GMAC knew there was no guarantee Lion & Lamb

would redeem the property. (Matthew Wach deposition p. 123-124). He does not have an

Claim # 6768

opinion as to whether or not they should have investigated the legitimacy of Lion & Lamb's claim of redemption rights. (Matthew Wach deposition p. 167).

GMAC, failed to research the validity of Lion & Lamb L.L.C.'s redemption claims. (Matthew Wach deposition p. 75). GMAC did not make any phone calls or research Lion & Lamb L.L.C.'s redemption rights. (Matthew Wach deposition p. 76). There are no documents to indicate any communication between the listing real estate company, Coldwell Banker, Homecomings, or any one else regarding the threat of redemption. (Matthew Wach deposition p. 119).

According to the email exchanges between the defendants and other unknown 3rd parties, the property could not be sold until the redemption figures were provided to the redemptioner. (Exhibit O p. HFN-250). Normally a property is not excluded from the market unless or until the redemptioner pays all of the costs and expenses to the seller to perfect the redemption request. (Exhibit O, p. HFN-251). This property was not handled the same as other redemption properties. (Exhibit O, p. HFN-251). In the past, Donna Arrington sold properties with a redemption threat and delivered a bond to the buyer in the event the property was redeemed. (Exhibit O, p. HFN-251).

The seller knew the property could be marketed while in redemption based on the entries in HFN 250 which state the sellers sent redemption figures to Dana McGowin at Morris, Hardwick & Schneider in October. "We can continue with marketing the property while in redemption," This entry is dated Wednesday, December 5, 2007. (Exhibit O, p. HFN-250).

GMAC was concerned because they did not respond to the redemption request in a timely manner and was worried about being sued by Lion & Lamb for not responding to their redemption request. (Matthew Wach deposition p. 113-114). They were required to respond in

Claim # 6168

to Lion and Lambs redemption request within 10 days. They did not respond to the request until

October 2007. (Matthew Wach deposition p. 114).

## XI. The sellers placed the property back on the market before the redemption rights expired.

Contrary to the time lines and assertions by defense counsel, GMAC placed the property

back on the market on September 19, 2007 3 months before the redemption rights expired.

(Exhibit N; and Jim Baker deposition p. 200, 214). Jim Baker left his employment with

RE/MAX on September 18, 2007 and began working at Rise Realty a few days later. (Jim Baker

deposition p. 194). Real Estate Jim Baker listed the property with Rise Realty. Rise Realty

and/or Jim Baker was the broker. (Exhibit N, & Jim Baker deposition p. 214). Victor Englert

was Jim Baker's Broker at Rise Realty. (Jim Baker deposition p. 254).

Donna Arrington chose to keep the property with Jim Baker regardless of where he was

employed. (Jim Baker deposition p. 215). Jim Baker called Monty Allen and told him the

property was back on the market. (Jim Baker deposition p. 217). When Jim Baker contacted

Monty Allen, Monty Allen insisted he already had a valid contract. (Jim Baker deposition p.

218).

Monty Allen eventually contacted Jim Baker toward the end of the redemption period

and wanted to proceed with the closing. (Monty Allen deposition p. 168). Jim Baker agreed and

asked for another loan approval letter. (Monty Allen deposition p. 168). At this point Jim Baker

had moved to Rise Realty and he wanted another written contract from Monty Allen. (Monty

Allen deposition p. 168). Monty Allen did not want to get a new contract because he didn't want

the contract changed in any way. (Monty Allen deposition pp. 168-169).

One must ignore common sense to believe the redemption threat was the basis for

cancelling the closing. If this was the case, they would have not marketed the property until the

Claim # 6768

redemption period expired.  The evidence clearly shows the home was placed back on the market almost immediately upon Jim Baker moving to Rise Real Estate.  The property was undisputedly relisted with Rise Realty in September of 2007, 3 months before the redemption period expired in December 2007.  (Exhibit N).

If the threat of redemption was the real motivation for canceling the Monty and Heather Allen contract, they would not have marketed the property for sale until the end of the 12 month redemption period.  This is a straight forward breach of contract motivated by greed and fear of being sued by the redemptioners based on their negligence in failing to appropriately respond to and handle the redemption request.

There is an implied promise not to hinder or delay performance of the specific terms of the contract by the other party, which contracting parties impliedly promise not to do.  A breach of this implied promise may be construed as an actual breach of the contract thereby giving the other party a cause of action on the contract.  Eager Beaver Buick, Inc. v. Burt 503 So.2d 819 (Ala. 1987).  It is a basic principle that justice is not served when somebody gets something for nothing...the spirit of the bargain usually contemplates that a contracting party shall not try to deprive the other of the consideration for which he bargained...besides forbidding attempts to prevent the other party from getting the consideration for which he bargained through breach or use of technical provisions contained in the contract, this principle of justice forbids attempts by the actor to get more for himself than the other party reasonably contemplated given him at the time the contractual relationship was entered into absent good cause.  Either kind of motive to evade the spirit of the bargain is condemned.  Hoffman – LaRoche, Inc. v. Campbel 512 So.2d 725 (Ala. 1987).

}

Claim # 6768

## XII. The Owners and Brokers of the real estate companies are responsible for the acts of their agents.

A principal is responsible to 3rd persons for the negligence of his agent in the transaction of the business of the agency including wrongful acts committed by the agent in and as a part of the transaction of such business and for his willful omission to fulfill the obligations of the principal. Ala. Code §8-2-7. Both principal and agent are deemed to have notice of whatever either has notice of and ought in good faith and the exercise of ordinary care and diligence to communicate to the other. Ala. Code §8-2-8.

A principal or master is liable for punitive damages for intentional wrongful conduct or conduct involving malice based upon acts or omissions of an agent, employee or servant of the principal if the master employee or principal either:

1. knew or should have known of the unfitness of the agent, employee or servant and employed him or continued to employ him, or used his services without proper instruction with a disregard of the rights or safety of others; or

2. authorized the wrongful conduct; or

3. ratified the wrongful conduct; or

4. unless the acts of the agent, servant or employee were calculated to or did benefit the principal, employer or other master, except where the plaintiff knowingly participated with the agent, servant or employee to commit fraud or wrongful conduct with full knowledge of the import of his act. Ala. Code §6-11-27(a).

The Alabama Real Estate License Law regulates real estate brokers and agents. Ala. Code §34-27-1. Anyone engaging in the selling of real estate for a fee must be licensed. Ala. Code §34-27-30.

Claim # 6168

A qualifying broker is responsible for supervising the acts of the company or proprietorship in all real estate licensees licensed therewith. Ala. Code §34-27-2(12). An associate broker is any broker other than a qualifying broker. Ala. Code §34-27-2(a)(1). A broker is any persons licensed as a real estate broker. Ala. Code §34-27-2(2). A licensee is any broker, salesperson or company. Ala. Code §34-27-2(a)(8). A salesperson is any person licensed as a real estate salesperson. Ala. Code §34-27-2(a)(14).

A qualifying broker shall be responsible for all acts governed by this chapter of each salesperson and associate broker licensed under him or her and of each company for which he or she is the qualifying broker. It shall be the duty of the qualifying broker to see that all transactions of every licensee engaged by him or her or any company for which he or she is the qualifying broker comply with this chapter. The qualifying broker shall be responsible to an injured party for the damage caused by any violation of this chapter by any licensee engaged by the qualifying broker. Ala. Code §34-27-34(a)(2).

The real estate commission shall revoke or suspend the license or impose a fine of not less than $100 nor more than $2,500, or both, or reprimand the licensee in each instance in which the licensee is found guilty of any of the following acts:

1. Making any false promises of a character likely to influence, persuade, or induce any person to enter into any contract or agreement, Ala. Code §34-27-36(a)(4);

2. Pursuing a continued and flagrant course of misrepresentation or the making of false promises through agents or salesperson or any medium of advertising or otherwise, Ala. Code §34-27-36(a)(5);

3. Failing within a reasonable time to properly account for or remit money coming into his or her possession which belongs to others, Ala. Code §34-27-36(8)(a);

Claim # 6068 

4. Failing to voluntarily furnish a copy of each listing, contract, lease, and other document to each party executing the document with reasonable promptness, Ala. Code §34-27-36(a)(10);

5. Inducing any party to a contract to break the contract for the purpose of substituting a new contract, where the substitution is motivated by the personal gain of the licensee, Ala. Code §34-27-36(a)(13);

6. Misrepresenting or failing to disclose to...any other interested party the true terms of a sale of real estate, Ala. Code §34-27-36(a)(21);

7. Acting negligently or incompetently in performing an act for which a person is required to hold a real estate license, Ala. Code §34-27-36(27).

A qualifying broker is legally responsible for the agents. (Monty Allen deposition p. 72). An agent cannot list properties without going through a qualifying broker. (Monty Allen deposition p. 73). The broker is in charge of or responsible for the earnest money or the escrow account. (Monty Allen deposition p. 74).

Charles Lanza is the Qualifying Broker for RE/MAX Huntsville. Charles Lanza received a copy of all documents. Charles Lanza was copied on everything involving the Monty Allen transaction email traffic. (Jim Baker deposition p. 154). Charles Lanza knew about the redemption problems at least by June 4, 2007. (Jim Baker deposition p. 155).

Charles Lanza would have been copied on everything involving the property located at 608 W. Lakeside Drive. (Jim Baker deposition p. 155). Charles Lanza specifically asked Jim Baker to copy him on everything. (Jim Baker deposition p. 156). Charles Lanza specifically told Jim Baker to copy him on everything involving the property located at 608 W. Lakeside Drive. (Jim Baker deposition p. 156). Charles Lanza told Jim Baker to copy him on all

Claim # 6068

documents related to all foreclosure properties. (Jim Baker deposition p. 157). This applied to all correspondence or documents not just emails. (Jim Baker deposition p. 157).

Charles Lanza received a copy of the Monty Allen executed contract. (Jim Baker deposition p. 158). Jim Baker had knowledge of all the email documents because they were printed and put in the file no later than June 14, 2007. (Jim Baker deposition p. 167). Victor Englert was Jim Baker's Broker at Rise Realty. (Jim Baker deposition p. 254).

Jim Baker fraudulently told Monty Allen that as long as he kept the property listed with him, he would get the property because the property would not be sold except through Jim Baker. Monty Allen relied upon these representations to his detriment. When Monty Allen insisted he had a valid contract Jim Baker told him his contract was null and void because the contract states the seller has the right to void the contract for any reason. (Jim Baker deposition p. 259).

Agents must present all offers to the parties in a timely and a truthful manner, exercise reasonable skill and care and provided services honestly and in good faith. Ala. Code §34-27-84. An agent is responsible for providing false information to a party in a real estate transaction if the agent knows or should have known the information was false. Ala. Code §34-27-86(b). According to GMAC, the sellers never received notification Monty and Heather Allen was demanding performance of the 1st contract. (Mathew Wach depositon p. 129). Thus Jim Baker did not act honestly and in good faith when he told Mr. Allen:

1. the property did not sell because of the threat of redemption; and

2. the property would become his once the redemption period expired.

The fraudulent statements made are the fact that they could not sell the property based on the threat of redemption or that the property was not insurable. These are clearly false

Page 7 of Claim #6068

statements based on Jim Baker's deposition testimony.  The email communication clearly shows the property could have been sold to Monty Allen.  On page 2 of 6 of the emails there is an exchange between Donna Arrington indicating that they could always provide a bond to the buyer and proceed with the sale.  Jim Baker acknowledges that if a bond is purchased it protects the transaction.

A material fact is a fact of such a nature as to induce action on the part of the complaining party.  Executive Development, Inc. v. Smith 557 So.2d 1231 (Ala. 1990).  Whether a given representation is an expression of an opinion or a fact depends upon all the circumstances of the particular case, such as the form and subject matter of the representation and the knowledge, intelligence, and the relation of the respective parties.  Harrell v. Dodson 398 So.2d 272, 274 (Ala. 1981).

When Monty Allen learned the closing was being cancelled, he confronted Jim Baker and told him he would hire an attorney.  (Monty Allen deposition p. 157).  Jim Baker told him he did not need an attorney because the property was listed with him and no one would get the property as long as it was listed with Mr. Baker.  (Monty Allen deposition p. 157-158).  Jim Baker told Mr. Allen if they don't redeem, you've got the property.  (Monty Allen deposition p 158).  Agents speak for and on behalf of the sellers.  (Monty Allen deposition p 158).  Jim Baker told Monty Allen the property was going to be taken off the market.  (Monty Allen deposition p. 159).

Monty Allen eventually contacted Jim Baker toward the end of the redemption period and wanted to proceed with the closing.  (Monty Allen deposition p. 168).  Jim Baker agreed and asked for another loan approval letter.  (Monty Allen deposition p. 168).  At this point Jim Baker had moved to Rise Realty and he wanted another written contract from Monty Allen.  (Monty

Allen deposition p. 168). Monty Allen did not want to get a new contract because he didn't want the contract changed in any way. (Monty Allen deposition pp. 168-169).

Jim Baker insisted because he had moved to Rise Realty the contract would have to go through Rise Realty instead of RE/MAX. Between June 26, 2007 until December 2007, Monty Allen did not do anything to enforce the contract because Jim Baker had agreed the property would go to Monty Allen if the owners did not redeem the property. (Monty Allen deposition p. 173-174). Every time Monty Allen confronted Jim Baker about the property, Jim Baker reassured him no one would receive the property and that Monty Allen's contract would be honored if the property was not redeemed. (Monty Allen deposition p. 177).

Monty Allen attempted to stop the sale by contacting both the brokers and telling them he had a pending contract with earnest money and notified them to stop the sale. (Monty Allen deposition pp. 178-179). Monty Allen eventually agreed and said he would leave everything the same except change the name because Jim Baker told him he had to. (Monty Allen deposition p. 169). Monty Allen sent Jim Baker the approval letter and the contract and they talked about a new closing date. (Monty Allen deposition p. 170).

When Jim Baker said Homecomings was considering another offer on the property, Monty Allen asked Jim Baker if he had notified the seller and let them know that he had a pending contract with earnest money still held at RE/MAX. (Monty Allen deposition p. 170). According to Jim Baker, Mr. Baker had notified the sellers and they were still going through with the competing offer. (Monty Allen deposition p. 170). Jim Baker told Monty Allen if he would come up a little bit on his offer he would probably get the property but Monty Allen refused because he believed he had a binding valid contract. (Monty Allen deposition p. 171-172).

When Monty Allen called RE/MAX Huntsville about his earnest money, the office manager apologized and told him that Charles Lanza had been sick. She eventually told him he needed to contact Jim Baker and that RE/MAX Huntsville had nothing to do with the transaction any longer. She said Jim Baker took all of his contracts with him when he left. (Monty Allen deposition pp. 203-204).

The office manager told Monty Allen that they did not have his earnest money any longer. The office manager eventually called Monty Allen back and told him she had the earnest money. (Monty Allen deposition p. 205).

Licensees have the following obligations to all parties in a real estate transaction:

1. to exercise reasonable skill and care in providing brokerage services to all parties, Ala. Code §34-27-84(a)(2);

2. when assisting a party in the negotiation of a real estate contract, to present all written offers in a timely and truthful manner, Ala. Code §34-27-84(a)(5).

A licensee is responsible for providing false information to a party in a real estate transaction if the licensee knows or should have known that the information was false. Ala. Code §34-27-86(b).

Monty Allen never received a copy of the signed contract until he appeared at the closing. (Monty Allen deposition p. 212-213). They didn't give it to him at the closing but he called back and got a copy of it later because he knew the real estate attorney would have had the signed contract. (Monty Allen deposition p. 213).

Furthermore, GMAC is relying upon communications by their lawyer in an attempt to support the motion for summary judgment. They have claimed, however, all communications regarding their lawyer as privileged and have refused to provide company notes regarding these

Page 74 of 77

Claim # 6768

conversations. Therefore, the Court should not and cannot interpret the email communications in support of the defendant's motion for summary judgment without reviewing in-camera the asserted claim of privilege in the company notes regarding conversations with lawyers regarding the closing of the property.

The intentional interference with a business or a contractual relation requires:

1. the existence of a contract or a business relation;

2. defendant's knowledge of the contract or business relation;

3. intentional interference by the defendant with the contract or business relation;

4. for absence of justification of the defendant's interference; and

5. damage to the plaintiff as a result of the defendant's interference. <u>Gross v. Lowder Realty Better Homes and Gardens</u> 494 So.2d 590 (Ala. 1986). Both Rise Realty and RE/MAX Huntsville interfered with Monty Allen's contract by failing to notify the sellers and the real estate companies there was an existing valid contract with Monty and Heather Allen when the property sold to Southern Properties as stated above. This failure precluded Monty Allen's purchase of this property.

Jeffrey B. Austin, Esq. (AUS013)
Attorney for Plaintiffs
102 South Court Street, Suite 600
Florence, AL 35630
(256) 766-1354

## CERTIFICATE OF SERVICE

I hereby certify I have on this ___20th___ day of ___July___ 2011 served a copy of the foregoing on the following attorneys and/or parties listed below:

Keith S. Anderson
Attorney for Homecomings Financial, L.L.C.

Claim # 6768

One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2119

T. Kelly May
H. Cannon Lawley
Eris Bryan Paul
Attorneys for Rise Real Estate, Inc. Parkway Plaza Branch
and Jim Baker
Three Protective Center
2801 Highway 280 South, Ste 200
Birmingham, AL 35223-2484

I. Ripon Britton, Jr.
Attorneys for South First Limited One d/b/a RE/MAX Huntsville
and Charles Lanza
Hand Arendall LLC
2001 Park Place North
1200 Park Place Tower
Birmingham, AL 35203

Jeffrey B. Austin, Esq.

CLAIM #6768



AlaFile E-Notice

41-CV-2009-900073.00

Judge: HON. MIKE T. JONES

To: AUSTIN JEFFREY BRIAN
austin@bellsouth.net

---

# NOTICE OF COURT ACTION

IN THE CIRCUIT COURT OF LAUDERDALE COUNTY, ALABAMA

MONTY ALLEN ET AL V. HOMECOMINGS FINANCIAL, L.L.C. ET AL
41-CV-2009-900073.00

A court action was entered in the above case on 8/2/2011 9:52:22 AM

D001 HOMECOMINGS FINANCIAL, L.L.C.& OR GMAC MORTGAGE

D010 MCCLAIN PATRICK

D011 THE BANK OF NEW YORK TRUST CO

SUMMARY JUDGMENT PURSUANT TO RULE 56 ($50.00)

[Filer: ANDERSON KEITH STEVEN]

Disposition:    DENIED
Judge:          MTJ

Notice Date:    8/2/2011 9:52:22 AM

MISSY HOMAN HIBBETT
CIRCUIT COURT CLERK
LAUDERDALE COUNTY, ALABAMA
200 SOUTH COURT STREET
FLORENCE, AL 35630

256-760-5728
missy.hibbett@alacourt.gov

Page 77 of 77 *Claim #6768*



### IN THE CIRCUIT COURT OF LAUDERDALE COUNTY, ALABAMA

| | |
|---|---|
| ALLEN MONTY,<br>ALLEN HEATHER,<br>Plaintiffs,<br><br>V.<br><br>HOMECOMINGS FINANCIAL, L.L.C.&<br>OR GMAC MORTGAGE,<br>RE/MAX INC.,<br>SOUTH FIRST LIMITED ONE D/B/A<br>REMAX HUNTSVILLE INC,<br>RISE REALTY, INC. ET AL,<br>Defendants. | )<br>)<br>)<br>)<br>) Case No.: CV-2009-900073.00<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### ORDER

MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56 filed by
HOMECOMINGS FINANCIAL, L.L.C.& OR GMAC MORTGAGE, MCCLAIN PATRICK
and THE BANK OF NEW YORK TRUST CO is hereby DENIED.

DONE this 2nd day of August, 2011.

/s/ HON. MIKE T. JONES
CIRCUIT JUDGE