*UNITED STATES BANKRUPTCY COURT*

*SOUNTHERN DISTRICT OF NEW YORK*

--------------------------------------------------

| | |
|---|---|
| *Jessica Angel Quiroz, Ramon Quiroz "Helen Quiroz"* | *MOTION IN OPPOSITION ROOKER-FELDMAN DOCTRINE RES-JUDICA* |
| *Creditors* | *LOCKED ARGUABLE BASIS IN LAW OR FACT* |
| | <u>*Re: Case No. 12-12020 (MG)*</u> |
| *VS* | |
| *Residential Capital LLC, Et Al* | *89-37 Metropolitan Ave Rego Park N.Y. 11374* |
| *Debtors* | *Block 3176 Lot 13 DWELLING ONLY-1 FAMILY* |

--------------------------------------------------

*Dear Hon. Martin Glenn respectfully submit this motion upon your request to bring to your attention the dismissal from the Court of Appeals Second circuit finding lacked an arguable basis in law or fact.*

*I therefore will proceed with the following arguable basis in law or fact:*

*No.1 Quiroz Et Al Helen Quiroz and Jessica A. Quiroz were the borrowers on a residential mortgage when they defaulted on their payments, a foreclosure action was commenced against them, Ramon Quiroz owner of the property never knew sign or accepted these transaction. New Century Mortgage Corp. Assigned to US Bank along with Homecomings GMAC " Debtors" and with the Law firm of Steven J. Baum P.C.*

*US Bank Homecomings GMAC and Steven J. Baum P.C. filed an order of reference in the Supreme Court County of Queens Index N. 25117/07 claiming that Quiroz Et Al did not answer the summons and complaint, that assumption turns to be false, Ramon Quiroz alleges a mistake or legal error by the state court, the court ordered a Judgment of foreclosure and sale and was issued against Quiroz Et Al., "Creditors" Ramon Quiroz, Helen Quiroz and Jessica A. Quiroz filed plenary action in state court seeking an essence, to vacate the judgment of foreclosure and sale., <u>**Honorable Howard G. Lane and Justice of the Supreme Court Lawrence V. Cullen on May 22, 2009 signed an Order to Show cause with T.R.O.** in civil action to STAY the foreclosure procedure</u> till today several times Helen Quiroz was **abused and threat** to take her home, on the 20 day of February 2012 she pass her way from physical emotional stress pain and suffering physical harm" wrongful death" caused from the fraudulent inappropriate procedure by US Bank, Homecomings, GMAC with the Law Firm of Steven J, Baum P.C.*

*See Exhibits No. (A)*

1



RECEIVED
SEP 24 2014
U.S. BANKRUPTCY

*Quiroz Et Al action was dismissed, in the State Court of Appeals as ultimately and declines to review the decision.*

*No. 2 Quiroz Et Al Creditors filed a complaint in the federal district court seeking to stop the inappropriate foreclosure procedure based on the TILA rights "Truth in Lending Act Practices" complaint that was based from erroneous decision as false order of reference and untimely from the states court, caused by Steven J, Baum P.C. for improper misleading pleadings, affidavits and mortgage assignments in state and federal courts in New York, causing Physical damages to Ramon Quiroz Psychological condition till today, and his wife Helen Quiroz Physical Harm Wrongful Death, and Daughter Jessica A, Quiroz who was hurt from her credit rating and the loss of the beloved mother and wife, Jessica A. Quiroz, Janel R. Quiroz, Casey O. Quiroz and granddaughter Alexa Marie Quiroz causing the detriment of the entire family which forms the basis of the underlying opinions and the petition for a writ of certiorari from the Court of Appeals Second circuit .*

*Mandate from the United States Court of Appeals for the Second Circuit on the 20 day of February, 2014 issued an order in contradiction of their prior order and with a name of Ramon Ortiz who has nothing to do with this case whether they made a mistake or is a defective "order" that will be up to this court to resolve.*
**See Exhibit No. (B)**

*No.3. Quiroz Et Al Creditors Appeal to the Supreme Court Washington D.C. Docket: No. 14-5783*

*No.4. Whether the Court of Appeals for the Second Circuit correctly affirmed the dismissal of the creditor's petitioner's claims as lacking an arguable basis in Law or Fact after the District Court dismissed the federal claims under the Rooker-Feldman doctrine of res-judicata.*

*No. 5. Rooker-Feldman Doctrine <u>"This casebook"</u> contains a selection of 170 U. S. Court of Appeals decisions that analyze and apply the Rooker-Feldman doctrine. The selection of decisions spans from 2003 to the date of publication. For each circuit, the cases are listed in the-order-of-frequency-of-citation.-The-most-cited-decisions-appear-first.*

*"Rooker-Feldman is a jurisdictional prohibition on lower federal courts exercising appellate jurisdiction over state-court judgments." Campbell v. City of Spencer, 682 F.3d 1278, 1281 (10th Cir.-2012)-Cook-v.-Baca,-(10th-Cir.-2013)*

*In Great Western Mining & Mineral Company v. Fox Rothschild LLP, 615 F.3d 159 (3d. Cir. 2010), [the court] surveyed recent caselaw and concluded that "there are four requirements that must be met for the Rooker-Feldman doctrine to apply," namely that "(1) the federal plaintiff lost in state court; (2) the plaintiff complain[s] of injuries caused by [the] state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is*

2

*inviting the district court to review and reject the state judgments," BS v. Somerset County, (3rd Cir. 2013)*

**See Exhibits Attached ( C )**

> *The Rooker-Feldman doctrine forbids a losing party in state court from filing suit in federal district court complaining of an injury caused by a state court judgment, and seeking federal court review and rejection of that judgment. Skinner v. Switzer, U.S., 131 S. Ct. 1289, 1297 (2011). To determine whether the Rooker-Feldman bar is applicable, a district court first must determine whether the action contains a forbidden de facto appeal of a state court decision. Noel v. Hall, 341 F.3d 1148, 1158 (9th Cir. 2003). A de facto appeal exists when "a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision." Id. at 1164. In contrast, if "a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, Rooker-Feldman does not bar jurisdiction." Id. Thus, even if a plaintiff seeks relief from a state court judgment, such a suit is a forbidden de facto appeal only if the plaintiff also alleges a legal error by the state court. Maldonado v. Harris, 370 F.3d 945, 950 (9th Cir. 2004); Kougasian v. TMSL, Inc., 359 F.3d 1136, 1140 (9th Cir. 2004) ("[A] plaintiff must seek not only to set aside a state court judgment; he or she must also allege a legal error by the state court as the basis for that relief."). Bell v. City of Boise, (9th Cir. 2013)*

## STATEMENT

Steven J. Baum P.C. claims that Quiroz Et Al creditors did not serve Steven J. Baum P.C. with a copy of a petitioner for a writ of certiorari, in fact Robert Guttmann P.C. Attorney for US Bank, Homecomings, GMAC and Steven J. Baum P.C. was representing everyone of them along including from the District Court when in fact <u>Steven J. Baum P.C.</u> was facing <u>Erick T. Schneiderman the Attorney General of the city of New York</u>, whom issued subpoena to state's larger foreclosure against the law firm Steven J. Baum P.C. to resolved questionable foreclosure practices among the nation's top banks. The New York investigation appears to center on two of the state's foreclosure industry giants: Steven J. Baum P.C. Oct 6, 2011 <u>Steven J. Baum P.C. agrees to pay $2 million to resolved a separate probe by the U.S. Attorney's Office for the Southern District of New York into faulty foreclosure filings.</u>

On November 2011 <u>**Judge Scott Fairgrieve in Nassau County district court**</u> imposed sanctions on the Baum Firm in a foreclosure case and required to pay fees to the borrower's

*lawyers: When awarding the sanctions, the Judge wrote "Bringing legal proceeding when there is no legal right to do so, due to the lack of standing, stalls the efficient administration of justice in the system."*

*See : Exhibits New York Times attached No. (D).*

## CONCLUSION

*THE SECOND CIRCUIT DECISION ARE IN CONFLICT WITH THE ORDER THEY ISSUED:*

*In April 2013, a prior motions panel of this Court construed pro se Appellant Ramon Quiroz's March 2013 motion for "summary judgment" as a motion for summary reversal of the district court's judgment, and deferred consideration on that construed motion pending the lifting or termination of the automatic stay imposed upon the filing of a Chapter 11 bankruptcy petition by Appellees Homecomings Financial and GMAC Mortgages. See U.S.C.A. Dkt. No. 11-3663, doc.139 (Motion Order). The Court also ordered Appellants to provide, within 30 days of the date that the automatic stay was lifted or modified, additional information concerning who was properly an Appellant. See id.*

*Conflicting issued exits at this point: the court of appeals second circuit ordered motion for "Summary Judgment" as a motion for summary reversal of the district court's judgment complaint, in the Name of justice this court have found improper foreclosure procedure and issued the order and Suddenly dismissed the order which once more time again it is a mistake or error under the 5th and 14th Amendment of the Constitution and contradiction and conflict of the Laws of the United States.*

*Today Appellant Ramon Quiroz filed a writ for certiorari to the Supreme Court of the United States and proof properly who was the Appellants:   Helen Quiroz who died in*

4

Pain and suffering from the false and improper legal procedure in the court of law, and Ramon Quiroz who is suffering Philological Harm.

*For reasons discussed above, this Court should:*

A) *Rule for the Breach of the Contract Agreement.*

b) *Award rescission of the Mortgage Agreement;*

c) *Declaratory judgment to quiet title of the property in question;*

d )*Standing as a matter of rights*

e )*Third Party Beneficiary*

f) *Unjust enrichment damages corresponding to the loan amounts;*

g) *Punitive damages in the amount of $1 ,000,000.00*

h) *Indemnification for the Physical Harm "Wrongful Death", Threats from US Bank, GMAC with Steven J, Baum P.C. that caused Emotional Stress Detriment, Pain and Suffering to Helen Quiroz by false and illegal procedure in the court of law by US Bank, GMAC, Steven J. Baum P.C.*

## CERTIFICATE OF COMPLIANCE

*I, the undersigned, do hereby certify that this motion is filed in good faith under the truth due and legal grounds and rights of the Constitution of the United States of America and in compliance with the local rules of this Court   the United State Bankruptcy Code § 362, II.U.S.C. § 362*

*Respectfully Submitted*

*Ramon Quiroz Legal Representative*
*89-37 Metropolitan Ave*
*Rego Park NY 11374*
*Phone No.  ( 718-275-2192 )*
*Email: rayorlando10@gmail.com*

# EXHIBIT

# A

2007/25117 RECEIVED PAPERS (Page 1 of 1)

6.2.09

Instructions: Fill in the names of the parties and the Index Number.. Complete
the blank spaces next to the instructions printed in bold type. PRINT AND USE
BLACK INK ONLY. [Other blank spaces are for Court use.]

SEQUENCE. NO. ___4____

22

IAS PT 6 for

HON. HOWARD G. LANE

At IAS Part __6__ of the Supreme Court
of the State of New York, held in and
for the County of Queens at the
Courthouse thereof, 88-11 Sutphin
Blvd., Jamaica, New York, on
the 21 day of _May_, 2009

for

HON. LAWRENCE V. CULLEN

PRESENT: HON. _____
Justice of the Supreme Court

RECEIVED

MAY 2 2 2009

COUNTY CLERK
QUEENS COUNTY

U.S. Bank National Association,
As Trustee.
_____X

[FILL IN NAME(S)]                    Plaintiff(s)

Index No.

25117/07

VS

Jessica Angel Quiroz
and
HELEN QUIROZ
_____

[FILL IN NAME(S)]            Defendant(s)
_____X

ORDER TO SHOW CAUSE
WITH T.R.O. IN CIVIL ACTION

Upon reading and filing the affidavit of _Helen Quiroz_

[YOUR NAME], sworn to on the _21_ day of _May_, _2009_ [DATE THE AFFIDAVIT WAS

SWORN TO BEFORE A NOTARY PUBLIC], and upon the exhibits attached to the affidavit, and

[LIST OTHER SUPPORTING PAPERS, E.G. ADDITIONAL AFFIDAVITS, EXHIBITS] _NOTICE OF SALE,_

_on 5|22|09, Order granting time until 6|24|09 TO PERFECT_

_APPEAL REPLY AFFIRMATION TO DEFENDANT'S OPPOSITION_

_TO AMEND VERIFIED COMPLAINT, INDEX # 2523/2009_

2007/25117 RECEIVED PAPERS (Page 2 of 3)

Let the plaintiff(s)/defendant(s) [CIRCLE ONE] or his/her/their attorney show cause at

IAS Part _6_, Room _45_ of this Court, to be held at the Courthouse, 88-11 Sutphin

Boulevard, Jamaica, N.Y./ ~~25-10 Court Square, Long Island City, N.Y.~~  [STRIKE THE ONE

THAT DOES NOT APPLY], on the 21 day of ~~MAY~~ 22nd June 2009, at 9:30 o'clock in the fore noon or

as soon as counsel may be heard why an order should not be made [DESCRIBE THE RELIEF

BEING SOUGHT] A STAY on the May 22, 2009 SALE OF MY PROPERTY

based on the attached Order on Application to extend my

appeal in order that I may perfect it, which was

granted until June 26, 2009. The foreclosure and sale

of my property before I can perfect this Appeal goes

against my constitutional rights.

I believe that there will be significant prejudice by giving

notice because, the Plaintiff has not answered the Complaint

(Index # 2523/2009 which is based on demanding U.S. National

Association as Trustee verification of the original title and

promisory note

_____

_____

_____,AND

WHY _Helen Quiroz_____ (YOUR NAME), THE

PLAINTIFF(S)/DEFENDANT(S)(CIRCLE ONE), should not have such other and further relief

as may be just, proper and equitable.

2

2007/25117 RECEIVED PAPERS (Page 3 of 3)

Pending the hearing of this motion it is **ORDERED** that [WRITE WHAT YOU ARE

ASKING THE COURT TO STOP] The foreclosure and sale of my

property on May 22, 2009. ~~because two appeals~~ is stayed. HW JSC

pending in the Supreme Court of the State of New York

Appellate Division, Second Judicial Dept.

_____

_____

_____

Sufficient cause appearing therefor, let personal service of a copy of this order, and

or its representative

the other papers upon which this order is granted, upon the plaintiff(s)/~~defendant(s)~~ by ~~and~~

before 11:00 AM

upon the appointed referee on ~~or before~~ the 22nd day of MAY , 2009 be

deemed good and sufficient. An affidavit or other proof of service shall be presented to

this Court on the return date directed in the second paragraph of this order.

ENTER:

_____
                                      J.S.C.

HON. HOWARD G. LANE

3

# EXHIBIT

# B

E.D.N.Y.- Bklyn
10-cv-2485
Matsumoto, J.
Azrack, M.J.

# MANDATE

## United States Court of Appeals
### FOR THE
### SECOND CIRCUIT

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of February, two thousand fourteen.

Present:

   Amalya L. Kearse,
   Ralph K. Winter,
   Richard C. Wesley,
      *Circuit Judges.*

Ramon Quiroz, *et al.*,

                    *Plaintiffs-Appellants,*

         v.                                              11-3663

U.S. Bank National Association, as Trustee, *et al.*,

                    *Defendants-Appellees.*

In April 2013, a prior motions panel of this Court construed *pro se* Appellant Ramon Quiroz's March 2013 motion for "summary judgment" as a motion for summary reversal of the district court's judgment, and deferred consideration on that construed motion pending the lifting or termination of the automatic stay imposed upon the filing of a Chapter 11 bankruptcy petition by Appellees Homecomings Financial and GMAC Mortgages. *See* U.S.C.A. Dkt. No. 11-3663, doc. 139 (Motion Order). The Court also ordered Appellants to provide, within 30 days of the date that the automatic stay was lifted or modified, additional information concerning who was properly an Appellant. *See id.*

In October 2013, after the automatic stay was modified so that the present appeal could proceed, Appellant Ramon Quiroz, *pro se*, filed a motion for "summary judgment reversal" which appears intended as a response to this Court's April 2013 order. In February 2014, Appellant Ramon Ortiz, *pro se*, filed a motion for an "order to show cause."

SAO-MEM

Upon due consideration, it is hereby ORDERED that: (1) Appellant Jessica Angel Quiroz is DISMISSED as a party to the appeal because she did not sign the notice of appeal and was not a minor when the notice was filed, *see* Fed. R. App. P. 3(c)(2); *Becker v. Montgomery*, 532 U.S. 757, 766-67 (2001), and Appellant Ramon Quiroz cannot represent her on appeal under a power of attorney, *see* 28 U.S.C. § 1654; *Berrios v. New York City Housing Auth.*, 564 F.3d 130, 132 (2d Cir. 2009); (2) the motion for "summary judgment reversal" appears to be intended in part as a motion for substitution under Rule 43(a), and the motion is DENIED as so construed, *see Guest v. Hansen*, 603 F.3d 15, 21 (2d Cir. 2010); (3) the previously-deferred motion for summary reversal and the motion for an "order to show cause" are DENIED because Appellant Ramon Quiroz has failed to demonstrate that such relief is appropriate; and (4) the appeal is DISMISSED because it lacks an arguable basis in law or fact, *see Pillay v. INS*, 45 F.3d 14, 17 (2d Cir. 1995) (finding that this Court has "inherent authority" to dismiss an appeal that lacks an arguable basis in law or fact); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) (explaining when an appeal lacks an arguable basis in law or fact).

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

# EXHIBIT

# C

23rd March 2013        Rooker-Feldman Doctrine



[http://1.bp.blogspot.com/-
SHq5tOGGRx4/UUos1zGb5vl/AAAAAAAACdA/IDvp6XtZlkA/s1600/Rooker_Feldman_Doctrine.jpg]

This casebook [http://www.amazon.com/Rooker-Feldman-Doctrine-Litigator-Series-ebook/dp/B00BZ5F0EU/] contains a selection of 170 U. S. Court of Appeals decisions that analyze and apply the Rooker-Feldman doctrine. The selection of decisions spans from 2003 to the date of publication. For each circuit, the cases are listed in the order of frequency of citation. The most cited decisions appear first.

"*Rooker-Feldman* is a jurisdictional prohibition on lower federal courts exercising appellate jurisdiction over state-court judgments." *Campbell v. City of Spencer*, 682 F.3d 1278, 1281 (10th Cir. 2012) *Cook v. Baca*, (10th Cir. 2013)

In *Great Western Mining & Mineral Company v. Fox Rothschild* LLP, 615 F.3d 159 (3d. Cir. 2010), [the court] surveyed recent caselaw and concluded that "there are four requirements that must be met for the Rooker-Feldman doctrine to apply," namely that "(1) the federal plaintiff lost in state court; (2) the plaintiff complain[s] of injuries caused by [the] state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments," *BS v. Somerset County*, (3rd Cir. 2013)

The Rooker-Feldman doctrine forbids a losing party in state court from filing suit in federal district court complaining of an injury caused by a state court judgment, and seeking federal court review and rejection of that judgment. *Skinner v. Switzer*, ___ U.S. ___, 131 S. Ct. 1289, 1297 (2011). To determine whether the Rooker-Feldman bar is applicable, a district court first must determine whether the action contains a forbidden de facto appeal of a state court decision. *Noel v. Hall*, 341 F.3d 1148, 1158 (9th Cir. 2003). A de facto appeal exists when "a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision." *Id.* at 1164. In contrast, if "a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, Rooker-Feldman does not bar jurisdiction." *Id.* Thus, even if a plaintiff seeks relief from a state court judgment, such a suit is a forbidden de facto appeal only if the plaintiff also alleges a legal error by the state court. *Maldonado v. Harris*, 370 F.3d 945,

950 (9th Cir. 2004); *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004) ("[A] plaintiff must seek not only to set aside a state court judgment; he or she must also allege a legal error by the state court as the basis for that relief."). *Bell v. City of Boise*, (9th Cir. 2013)

If "a federal plaintiff seeks to bring a forbidden de facto appeal, . . . that federal plaintiff may not seek to litigate an issue that is 'inextricably intertwined' with the state court judicial decision from which the forbidden de facto appeal is brought." *Noel*, 341 F.3d at 1158. The "inextricably intertwined" language from Feldman is not a test to determine whether a claim is a de facto appeal, but is rather a second and distinct step in the Rooker-Feldman analysis. See id. Should the action not contain a forbidden de facto appeal, the Rooker-Feldman inquiry ends. See *Manufactured Home Cmtys. Inc. v. City of San Jose*, 420 F.3d 1022, 1030 (9th Cir. 2005). *Ibid.*

Posted 23rd March 2013 by Gary Gauthier

Labels: civil procedure, de facto appeal, federal courts, federal jurisdiction, res judicata, Rooker-Feldman doctrine, state court judgment

# THE FEDERAL COURTS LAW REVIEW

Volume 5, Issue 2                                                2011

## The Fraud Exception to the *Rooker-Feldman* Doctrine: How It Almost Wasn't (and Probably Shouldn't Be)

### Steven N. Baker[*]

TABLE OF CONTENTS

I.      INTRODUCTION............................................................................ 140
II.     THE MISTAKE ............................................................................. 144
        A.  The Beginning: *Resolute Insurance Co. v. North Carolina*
            and Res Judicata.................................................................. 144
        B.  The Fraud Exception to Res Judicata..................................... 146
        C.  *In re Sun Valley Foods Co.* and the Incorporation of Res
            Judicata's Fraud Exception into *Rooker-Feldman*.................. 149
        D.  The Mistake's Proliferation ................................................. 151
            1.  Cases Explicitly Citing *In re Sun Valley Foods Co.* for
                the Exception.................................................................. 151
            2.  Recent Cases Inheriting the Intellectual Tradition from
                *In re Sun Valley Foods Co.* ............................................. 157
III.    WHY THE MISTAKE'S TIME HAS COME ......................................... 159
        A.  A Mixed Reception............................................................... 159
            1.  The Second Circuit.......................................................... 159
            2.  The Fourth Circuit........................................................... 160
            3.  The Fifth Circuit............................................................. 161
            4.  The Seventh Circuit......................................................... 162
            5.  The Eighth Circuit........................................................... 163

*Steven N. Baker is an associate at McGuireWoods LLP; J.D., cum laude, 2007, Wake Forest University School of Law; B.A., 2003, Brigham Young University. The views expressed herein are those of the author and do not necessarily represent the views of McGuireWoods. The author would like to thank Judge Boyd N. Boland, Elizabeth Leverette, and the editorial staff of the Federal Courts Law Review for their invaluable assistance.

      6. The Tenth Circuit ............................................................ 164
      7. The Eleventh Circuit ...................................................... 164
    B. State Courts Already Have Adequate Procedures for Self-
       Correction .......................................................................... 164
      1. A False Choice ................................................................ 164
      2. Available State Court Procedures ................................... 165
        a. Rule 60(b) ................................................................ 165
        b. Equitable or Inherent Power ................................... 167
    C. Courts Should Remember *Rooker-Feldman*'s Origin and
       Purposes ............................................................................ 168
IV.  CONCLUSION ................................................................................ 169

## I.  INTRODUCTION

    The *Rooker-Feldman* doctrine is familiar to any practitioner or academic who regularly deals with federal-court jurisdiction. The basic idea is simple: the lower federal courts do not have jurisdiction to reverse or modify a state-court judgment.[1] Although this limitation was arguably implicit in the Judiciary Act of 1789,[2] it was not until 1923 that the United States Supreme Court made it an explicit part of federal court jurisprudence in *Rooker v. Fidelity Trust Co.*[3] The Supreme Court revisited this limitation sixty years later in *D.C. Court of Appeals v. Feldman,*[4] giving the doctrine the second half of its name. The lower federal courts took *Rooker* and *Feldman* and ran,[5] declining to exercise jurisdiction over a great many cases, including some where the plaintiff's challenge, although arguably related to a state-court judgment, did not necessarily seek to have it reversed or modified. In 2005, the Supreme Court again revisited the

---

    1.  *See* Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 283-84 (2005).

    2.  Section 25 of the Judiciary Act of 1789, 1 Stat. 85. The current statutory basis for the *Rooker-Feldman* doctrine is 28 U.S.C. § 1257 (2006). *See* Susan Bandes, *The Rooker-Feldman Doctrine: Evaluating its Jurisdictional Status,* 74 NOTRE DAME L. REV. 1175, 1180 (1999) ("28 U.S.C. § 1257 grants the Supreme Court exclusive jurisdiction to review the judgments of the highest state courts. By inference, no other court, including a federal district court, has the power to do so.").

    3.  263 U.S. 413 (1923).

    4.  460 U.S. 462 (1983).

    5.  *See* Suzanna Sherry, *Judicial Federalism in the Trenches: The Rooker-Feldman Doctrine in Action,* 74 NOTRE DAME L. REV. 1085, 1087-90 (1999) (describing the *Rooker-Feldman* doctrine's "explosive growth in the lower courts. Since 1990 alone, lower federal courts have used *Rooker-Feldman* to find jurisdiction lacking in more than 500 cases."); *see also* Dustin E. Buehler, *Revisiting Rooker-Feldman: Extending the Doctrine to State Court Interlocutory Orders,* 36 FLA. ST. U. L. REV. 373, 378-91 (2009) (also describing *Rooker-Feldman*'s "explosive growth" in the lower federal courts).

*Rooker-Feldman* doctrine in *Exxon Mobil Corp. v. Saudi Basic Industries
Corp.*, reining in the lower courts' excessive jurisdictional declination and
limiting the doctrine's application to "cases brought by state-court losers
complaining of injuries caused by state-court judgments rendered before the
district court proceedings commenced and inviting district court review and
rejection of those judgments."[6]

At first glance, one would not think *Rooker-Feldman*, a jurisdictional
doctrine, would be subject to a number of exceptions.[7]    After all,
jurisdictional inquiries are as close to being absolute as one gets in the law;
the district court either does or does not have subject matter jurisdiction.
While principles of equity, fundamental fairness, and sound public policy
have their place in the courtroom, they are not frequently raised to defend
against a Rule 12(b)(1) motion to dismiss, and are even less frequently
successful.    A ready example is the amount in controversy necessary to
plead diversity of citizenship.    While there is not a great deal of difference
between a plaintiff who pleads $75,000 in damages and another who pleads
$75,001, this is a hard-and-fast jurisdictional line in the sand no matter how
inequitable its application to a particular case might be.

And yet an exception to *Rooker-Feldman* of just such an equitable
persuasion has taken root. A few courts—most especially the United States
Court of Appeals for the Sixth Circuit[8]—have determined that *Rooker-
Feldman* does not prevent the lower federal courts from reviewing state-
court judgments that were allegedly procured through fraud.    In other
words, when a "state-court loser" complains that the winner owes his
triumph not to sound legal principles—or even unsound ones—but to fraud,
then the loser is not really complaining of an injury caused by a state-court
judgment, but of an injury caused by the winner's chicanery.  Or so the
reasoning goes. This reasoning received an intellectual boost from *Exxon
Mobil*, where the scope of what kinds of actions were "inextricably
intertwined" with state-court judgments took a serious blow.[9]  In *Exxon
Mobil*, the Court clarified that not all actions dealing with the "same or
related question" resolved in state court are barred in federal court.[10]

---

6.  *Exxon Mobil*, 544 U.S. at 284.
7.  *See* Bandes, *supra* note 2, at 1185 ("The jurisdictional nature of the doctrine means that
courts either find it highly inflexible, or are readily able to claim inflexibility when they desire to
do so."); *see also* Thomas D. Rowe, Jr., *Rooker-Feldman: Worth Only the Powder to Blow it Up?*,
74 NOTRE DAME L. REV. 1081, 1082 (1999) ("[T]he jurisdictional nature of *Rooker-Feldman*
makes the doctrine's bar unwaivable and subject to being raised by the court on its own motion.").
8.  *In re* Sun Valley Foods Co., 801 F.2d 186 (6th Cir. 1986).
9.  *Exxon Mobil*, 544 U.S. at 291.
10.  *Id.* at 292.

Instead, a district court must retain a case that presents an "independent claim" even if, along the way, the claimant challenges or denies some conclusion reached by the state court.[11]

All of this is very well, but the courts applying a fraud exception to *Rooker-Feldman* have done so for decades, long before *Exxon Mobil*'s refinement, while those that reject the exception maintain their stubbornness in *Exxon Mobil*'s wake. Thus, we may assume that although *Exxon Mobil* has given the fraud exception added intellectual heft, the reasons for the exception's germination and continued survival lie elsewhere. But where? Perhaps in a masterful law review article on the subject or in a district court's brave bucking of jurisdictional convention in the name of equity and fair play? Neither, unfortunately. Rather, the fraud exception owes its existence, or at least a good part of it, to a mistake. We may assume, certainly, that it was an honest mistake, but a mistake nonetheless, and one that has had enormous consequences for comity, federalism, and the lower federal courts' exercise of what should be, at least in theory, limited jurisdiction.

This Article will not attempt to trace the entire history and application of the *Rooker-Feldman* doctrine; other commentators have more than adequately covered this general ground.[12] Rather, this Article assumes a much more pointed task: to expose and explore the mistake that led to the creation and proliferation of *Rooker-Feldman*'s fraud exception. Having done so, this Article will attempt to resolve the logically subsequent question: should the courts, once they recognize that the exception's genesis is a mistake, allow the exception to stand? In other words, has the fraud exception become such an indispensible part of *Rooker-Feldman* and federal-court jurisprudence that, regardless of the legitimacy of its origin, it must remain?

There are, to be sure, arguments in favor of the fraud exception. It is certainly repugnant to justice to allow a fraudster to walk into federal court with admittedly unclean hands and then brashly pronounce the court's impotence to remedy the situation. Others may argue *Rooker-Feldman* is similar enough to preclusion doctrines, such as res judicata, that the incorporation of a fraud exception is a logical evolution.[13]

---

11. *Id.* at 293 (quoting GASH Assocs. v. Rosemont, 995 F.2d 726, 728 (7th Cir. 1993)).

12. *See generally* Buehler, *supra* note 5, at 378-91; Allison B. Jones, *The Rooker-Feldman Doctrine: What Does it Mean to Be Inextricably Intertwined?*, 56 DUKE L. J. 643, 644-60 (2006); Adam McLain, *The Rooker-Feldman Doctrine: Toward a Workable Role*, 149 U. PA. L. REV. 1555, 1560-76 (2001); Sherry, *supra* note 5, at 1087-90; Barry Friedman & James E. Gaylord, *Rooker-Feldman, From the Ground Up*, 74 NOTRE DAME L. REV. 1129, 1133-38 (1999).

13. *See* Buehler, *supra* note 5, at 376 ("Lower federal courts disagree on the doctrine's

# EXHIBIT
# D

*The New York Times* • Reprints

This copy is for your personal, noncommercial use only. You can order presentation-ready copies for
distribution to your colleagues, clients or customers here or use the "Reprints" tool that appears next to any
article. Visit www.nytreprints.com for samples and additional information. Order a reprint of this article now.



April 8, 2011

# New York Subpoenas 2 Foreclosure-Related Firms

**By GRETCHEN MORGENSON**

Eric T. Schneiderman, the New York attorney general, has issued subpoenas to the state's
largest foreclosure law firm and a related company, indicating that his office has some doubts
about the effort by state attorneys general to resolve questionable foreclosure practices among
the nation's top banks.

The New York investigation appears to center on two of the state's foreclosure industry giants:
the Steven J. Baum firm, headquartered in Amherst, N.Y., and Pillar Processing, a default
servicing firm set up by Mr. Baum that was spun off in 2007. Representing JPMorgan Chase,
Wells Fargo and other large banks, the Baum firm has handled an estimated 40 percent of
foreclosure cases in the state. Pillar Processing provides extensive services to the firm.

A spokesman for Mr. Schneiderman declined to comment. Mr. Baum said in an e-mail: "The
firm will cooperate with the attorney general in this matter. We are confident that after a full
review by the attorney general they will find no wrongdoing."

Attorneys general across the country have been working on ways to rectify foreclosure
improprieties by the nation's biggest banks and have entered into negotiations in recent weeks
with these institutions about a national settlement. Tom Miller of Iowa is leading that effort.
While Mr. Schneiderman has been participating, his new investigation points to the possibility
that he will take a different path.

Large foreclosure law firms have come under scrutiny in states outside New York. Last year,
the Florida attorney general began investigating the David J. Stern firm, the largest in that
state. That investigation is continuing, but the law firm stopped bringing foreclosure cases last
month.

Like the Stern firm, Mr. Baum's operation flourished as the mortgage crisis deepened. Since the
end of 2007, it has filed more than 50,000 new foreclosure cases in New York, according to
data compiled by the New York State Unified Court System. The firm employs approximately
70 lawyers.

www.nytimes.com/2011/04/09/business/09foreclose.html?_r=1&pagewante...

1/3

7/11          Case 11-36589 New York Foreclose F3T - NYT 12/07/2011   50-50003   466

Along with the attorney general, federal prosecutors in Manhattan have requested information about the Baum firm's practices, according to a lawyer who has represented borrowers against the firm. The lawyer spoke on condition of anonymity because the communications with the prosecutors were private. A spokesman for the Department of Justice declined to comment.

Scrutiny of the Baum firm has increased in recent months after significant errors surfaced nationwide in legal paperwork used by banks to seize delinquent borrowers' homes. For example, documents detailing how much borrowers owe have been signed by bank representatives who say they have not verified the information. Other problems involve the questionable notarization of documents, or paperwork indicating that the foreclosure process was begun without providing proof that the entities involved had the legal right to foreclose.

The Baum firm has drawn rebukes on its legal practices from judges in several New York jurisdictions. Judges in courts across the state have rejected scores of cases filed by the Baum firm, saying it has failed to provide the documentation necessary to commence foreclosure.

Last November, Judge Scott Fairgrieve in Nassau County district court imposed sanctions of $5,000 on the Baum firm in a foreclosure case and required it to pay more than $14,000 in fees to the borrower's lawyers. When awarding the sanctions, the judge wrote: "Bringing legal proceedings when there is no legal right to do so, due to lack of standing, stalls the efficient administration of justice in the system."

Paul D. Stone, a lawyer in Tarrytown, N.Y., has been defending a foreclosure case against the Baum firm since 2009. "I've never seen any firm file such ill-conceived, ill-researched, nonfactual materials with a court," Mr. Stone said. The judge overseeing his case recently ordered Mr. Baum's firm to pay some of the borrower's legal costs.

Hoping to eliminate defective filings, last fall New York courts began requiring lawyers bringing foreclosure cases to attest to the accuracy of their papers.

The Baum firm was founded in 1972 by Marvin R. Baum and has been overseen by Steven J. Baum, his son, since the elder man died in 1999.

Steven Baum created Pillar Processing in 2007, a provider of real estate default services, and it is located in the same office complex in Amherst as the law firm. Pillar was purchased in 2007 by Tailwind Capital, a New York hedge fund; some of Pillar's debt and equity is also held by Ares Capital, a publicly traded investment company in New York City. Representatives of Tailwind did not respond to an e-mail seeking comment. An Ares spokesman declined to comment.

Pillar Processing's default servicing practices have attracted criticism from Cecelia G. Morris, bankruptcy judge in the Southern District of New York. In a court hearing on Feb. 5, 2008, Judge Morris said she would no longer accept any material from Pillar Processing in her court and added that if more paperwork from Pillar came in, she would deny the motions associated with it.

Linda M. Tirelli, a lawyer in White Plains who represents homeowners, discussed three current foreclosure cases in which she faces the Baum firm. "The documents don't make sense in any of them," she said. In another foreclosure being defended by Ms. Tirelli, a lawyer for the bank told the court that the Baum firm had filed inaccurate documents as it sought to take over a borrower's property. After trying unsuccessfully to find every link in the chain of title on the property, the Baum firm prepared inaccurate papers to fill in what was missing, according to court documents.

Speaking generally and not specifically about the Baum firm, Raymond H. Brescia, assistant professor of law at Albany Law School, said: "We're seeing a disproportionate number of cases in the foreclosure context where questionable filings have been made. I think it's easy to say this is the largest and most wide-ranging fraud against the courts in the United States. Lawyers have to have a good-faith basis for the factual assertions they make to the court; they are responsible if they file pleadings that are baseless."

12/7/11        Case 11-13663-DPC Document 150 PC: A Chronology - Law Blog - WSJ11    50520013    466

# THE WALL STREET JOURNAL.
WSJ.com

NOVEMBER 21, 2011, 3:28 PM ET

## The Demise of Steven J. Baum PC: A Chronology

Steven J. Baum PC, one of New York state's largest foreclosure firms, is closing its doors.

The announcement Monday by the firm's leader, Steven Baum, was not entirely surprising, given its recent history. Baum is one of several firms that represent banks and services trying to foreclose on the millions of homeowners who have defaulted since the housing bubble burst.



Click here for a Buffalo News report, here for a Bloomberg report, here for a story in Dealbook and here for a USA Today report.

Let's do a quick chronology of the firm's demise.

**April 8:** The New York Times reports that New York Attorney General Eric T. Schneiderman issued subpoenas to Baum (the firm) and a related company. Baum (the man) says "the firm will cooperate with the attorney general in this matter. We are confident that after a full review by the attorney general they will find no wrongdoing."

[A spokesman for the AG gave Law Blog this statement today: "While we cannot comment on ongoing investigations, Attorney General Schneiderman will continue to bring accountability to the firms responsible for the mortgage crisis, and put an end to the abusive foreclosure practices that have devastated families across the state."]

**Oct. 6:** Baum agrees to pay $2 million to resolve a separate probe by the U.S. Attorney's Office for the Southern District of New York into faulty foreclosure filings. The office investigated whether the firm filed misleading pleadings, affidavits and mortgage assignments in state and federal courts in New York. The agreement does not constitute a finding that Baum engaged in any unlawful practice or wrongdoing.

**Oct. 28:** The New York Times' Joe Nocera pens a column about photos he received of firm employees dressed as foreclosed-upon homeowners at 2010 Halloween party.

**Nov. 2:** Steven J. Baum apologizes for "the inappropriate costumes worn by some of our employees at our Halloween Party in 2010. It was in extremely poor taste and I take full responsibility. I know people were extremely offended and people have every right to be upset with me and my firm."

**Nov. 10:** National mortgage servicing giant Freddie Mac blacklists the firm.

**Nov. 15:** Ditto Fannie Mae.

**Nov. 18:** Nocera writes a <u>follow-up column</u>, incorporating a lengthy email from Baum: "Mr. Nocera — You have destroyed everything and everyone related to Steven J. Baum PC. It took 40 years to build this firm and three weeks to tear down."

**Nov. 21:** The Amherst, N.Y.-based firm <u>announces</u> it has filed papers with government agencies notifying them that it plans to close. "Disrupting the livelihoods of so many dedicated and hardworking people is extremely painful, but the loss of so much business left us no choice but to file these notices," Baum says in a news release.

The firm has about 67 full- and part-time employees at its headquarters in Amherst and 22 full- and part-time employees at its Westbury location.

Copyright 2008 Dow Jones & Company, Inc. All Rights Reserved

This copy is for your personal, non-commercial use only. Distribution and use of this material are governed by our Subscriber Agreement and by copyright law. For non-personal use or to order multiple copies, please contact Dow Jones Reprints at 1-800-843-0008 or visit www.djreprints.com

12/7/11 · · · · Case 11-38000-cloc Document 150 um tPage D42h - NY 12/07/2011   50520903   466

**The New York Times**

# DealB%k

Edited by Andrew Ross Sorkin

---

**NOVEMBER 21, 2011, 2:51 PM**

## Foreclosure Firm Steven J. Baum to Close Down

*By PETER LATTMAN*

A law firm that had become a lightning rod in the controversy over mortgage-foreclosure practices has shut down, costing 89 employees their jobs.

In a photo from a former employee of the law firm of Steven J. Baum, two employees mocked homeowners whose homes had been foreclosed.

The Steven J. Baum P.C. law firm, which has offices in Amherst, N.Y., and Westbury, N.Y., has filed papers with government agencies notifying them that it plans to close. It made the filings under a federal law requiring employers to provide notice before mass layoffs.

"Disrupting the livelihoods of so many dedicated and hardworking people is extremely painful, but the loss of so much business left us no choice but to file these notices," said Mr. Baum in a statement issued on Monday. A firm spokesman said it would have no further comment beyond the release.

Mr. Baum and his colleagues have come under fire for their foreclosure-related legal work. They are one of numerous firms across the country that represent banks and services in trying to foreclose on the millions of homeowners who have defaulted on their loans. Some of these firms' aggressive, and, in some cases, duplicitous practices, have earned them the moniker "foreclosure mills."

The Baum firm's tactics, which included the "robo-signing" of documents, has been among the most criticized. Last year, a state court judge in Brooklyn called one foreclosure filing from the Baum firm "incredible, outrageous, ludicrous and disingenuous."

Last month, the firm struck a settlement with the United States attorney's office in Manhattan, which had been investigating the Baum firm and whether, on behalf of its lender clients, it filed misleading legal papers to expedite foreclosures. The firm agreed to pay a $2 million penalty and vowed change its practices to resolve the case.

"In mortgage foreclosure proceedings, there are no excuses for sloppy practices that could lead to someone mistakenly losing their home," Preet S. Bharara, the United States attorney in Manhattan, said in a statement at the time of the settlement. "Homeowners facing foreclosure cannot afford to have faulty paperwork or inadequate evidence submitted, and today's agreement will help minimize that risk."

But despite its settlement with the federal government, the firm's fortunes worsened this

month after The New York Times published photos of a Halloween party at the Baum firm showing employees wearing costumes mocking people who had lost their homes.

After those photos surfaced, the mortgage giants Freddie Mac and Fannie Mae cut off the Baum firm, forbidding servicers of their mortgages from using Mr. Baum and his colleagues. That effectively served as the firm's death knell.

On Saturday, Joe Nocera, The Times columnist who originally wrote about the firm's Halloween party, published another column about the controversy. In it, he quoted an e-mail that Mr. Baum had sent him last week.

"Mr. Nocera — You have destroyed everything and everyone related to Steven J. Baum PC," said the letter. "It took 40 years to build this firm and three weeks to tear down."

"I think that's what they call shooting the messenger," Mr. Nocera wrote.

Copyright 2011 The New York Times Company | Privacy Policy | NYTimes.com 620 Eighth Avenue New York, NY 10018

dealbook.nytimes.com/.../foreclosure-firm-steven-j-baum-to-close-down/?p...

2/2

UNITED STATES BANRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

Jessica Angel Quiroz, Ramon Quiroz "Helen Quiroz"
        Property Owners (Creditors)                  VERIFICATION

             VS                  Re:  Case No.12-12020(MG)

Residential Capital LLC, Et Al

                           89-37 Metropolitan Ave Rego Park N.Y. 11374
           Debtors           Block 3176 Lot 13 DWELLING ONLY-1 FAMILY

I Ramon Quiroz, being duly sworn says, I am the legal owner of the property in  question,
I  am over 18ᵗʰ years of age and reside at 89-37 Metropolitan Ave Rego Park, NY 11374.

        On September….., 2014.  I filed a motion upon request from Honorable Martin Glenn
requesting to file: "Arguable basis in law or fact" from the court of appeals second circuit  in
Opposition to the Rooker-Feldman Doctrine & Res-judica,  I am the  Creditor and submit this
declaration  against Residential Capital, LLC, the Debtor  Re:  Case No. 12-12020 (MG.  The
same is true to my knowledge and belief, and as those matters I believed them to be true. To
the best of my knowledge information and belief, formed after an inquiry reasonable under
the circumstances, the presentation of these papers of the contentions therein are not frivolous
as defined in subsection ( C ) of section 130-1-1 of the Rules of the Chief Administration ( 22
NYCRR ).

(Attention: Norman S. Rosenbaum)

Please note that no other party in this action has answered, appeared or requested notification
of this motion; therefore no other parties are entitled to notice of this application.

The foregoing statements are true, under the penalty of perjury.

      Swore to before me

This date of September…., 2014                           _____
                                              Ramon Quiroz
_____
    Notary Public

IRENE MENDEZ
Notary Public - State of New York
No. 01ME6268171
Qualified in Queens County
My Commission Expires August 27, 2016

*UNITED STATES BANRUPTCY COURT*
*SOUTHERN DISTRICT OF NEW YORK*

_____

*Jessica Angel Quiroz, Ramon Quiroz "Helen Quiroz"*
       **Property Owners (Creditors)**            *Affidavit of Service*

          *VS*             **Re:  Case No.12-12020(MG)**

*Residential Capital LLC, Et Al*

                   *89-37 Metropolitan Ave Rego Park N.Y. 11374*
          **Debtors**       *Block 3176 Lot 13 DWELLING ONLY-1 FAMILY*

_____

*I Ramon Quiroz, being duly sworn says, I am the legal owner of the above property in question , I am over 18ᵗʰ years of age and reside at 89-37 Metropolitan Ave Rego Park, NY 11374.*

*On September….., 2014 I served a true copy of the following papers: Motion in opposition: ROOKER-FELDMAN DOCTRINE, RES-JUDICA-LOCKED-ARGUABLE BASIS IN LAW OR FACT  against  Residential Capital LLC et al., Debtors  by depositing a true copy of same which are attached to this Affidavit in the following matter by depositing in the United States Post Office of the State of New York, certify priority mail. Counsel for the ResCap Borrower Claims Trust, Morrison & Foerster LLP at:    250 West 55ᵗʰ Street, New York, NY 10014 (Attention: Norman S. Rosenbaum)*

*Please note that no other party in this action has answered, appeared or requested notification of this motion; therefore no other parties are entitled to notice of this application.*

*The foregoing statements are true, under the penalty of perjury.*

    *Swore to before me*

*This date of September…., 2014*

                                 **Ramon Quiroz**

    **Notary Public**

IRENE MENDEZ
Notary Public - State of New York
No. 01ME6268171
Qualified in Queens County
My Commission Expires August 27, 2016

```
====================================
          PARKSIDE STATION
         FLUSHING, New York
             113759993
           3568880024-0097
09/23/2014 (180)027-5877 01:12:35 PM
====================================
============ Sales Receipt ===========
Product         Sale Unit     Final
Description      Qty Price     Price
====================================

@@ ~~ NEW YORK NY 10014              $5.75
Zone-1
Priority Mail 1-Day By
Weight
  5.30 oz.
  Expected Delivery: Wed 09/24/14
  USPS Tracking #:
  9114 9012 3080 1780 4608 86
  Includes $50 insurance

                             ========
   Issue Postage:              $5.75

                             ==========
   Total:                      $5.75

   Paid by:
   Debit Card                  $5.75
     Account #:      XXXXXXXXXXXXX5871
     Approval #:
     Transaction #:    26
     23903590214
     Receipt#:         002426

@@ For tracking or inquiries go to
USPS.com or call 1-800-222-1811.

In a hurry? Self-service kiosks
offer quick and easy check-out. Any
Retail Associate can show you how.

~~ Save this receipt as evidence of
insurance. For information on filing
an insurance claim go to
usps.com/ship/file-domestic-claims.htm

Order stamps at usps.com/shop or
```