**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| IN RE: RESIDENTIAL CAPITAL, LLC, et al., | ) ) ) | |
| Debtors, | ) ) | Case No. 12-12020 (MG) |
| In the Matter of Claim Nos. 5573 and 5580: GMAC MORTGAGE, LLC's Objections to claims of RONALD A. ERIKSEN and JULIE A. ERIKSEN Claimants. | ) ) ) ) ) ) | Honorable Martin Glenn |

## CLAIMANTS REPLY TO RESCAP BORROWER CLAIMS TRUST RESPONSE TO NOTICE OF PETITION FOR WITHDRAWAL AND REQUEST FOR ABSTENTION AND STAY

RONALD A. ERIKSEN ("REriksen") and JULIE A. ERIKSEN ("JEriksen") (collectively, "the Eriksens"), pursuant to the **Federal Rules of Civil Procedure ("FRCP")** and **Federal Rules of Bankruptcy Procedure ("FRBP")**, files this reply ("Reply") to the response ("Response") by ResCap Borrowers Claims Trust ("BCT") to the "NOTICE OF PETITION FOR WITHDRAWAL TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION, UNDER 28 USC 1334, 28 USC 157(d) AND 28 USC 157(b)(5), AND REQUEST FOR ABSTENTION AND STAY BY THIS COURT" ("Notice"). The Eriksens, in support of objection, state:

       1.    Claimants' pleadings must be liberally construed. *Haines v. Kerner, 404 U.S. 519, 520 (1972)*.[1] See also, *Erickson v. Pardus, 551 U.S. 89, 94 (2007)*.

---

[1] Since **Haines**, the Supreme Court has consistently held in its opinions that pro se litigants are to be afforded more liberal treatment than attorneys, and are not to be subjected to the same pleading and motion practices standards as attorneys. There is a broad requirements to insure that pro se litigants receive justice in our system in spite of grammatical mistakes, failure to cite proper legal authorities and confusion of legal theories. Each court must conduct, as Supreme Court Justice John Paul Stevens calls it, <u>the Haines test</u>, to insure justice in the fair administration of cases involving pro se litigants, The Eriksens are pro se litigants.

2.     Further, "[l]awyers must be held to higher standards" than *pro se* parties.
*In re Maurice, 69 F.3d 830 (7th Cir. 1995) at ¶16."*

## Factual History

3.     On November 16, 2012, the Eriksen filed valid and timely claims. On July 8, 2013, the Eriksens supplemented those valid and timely claims against Residential Capital, LLC ("RC") subsidiary GMAC Mortgage, LLC ("GMACM"), Claim Nos. 5573 and 5580.

4.     The Eriksens provided significant unrefuted evidence of said claims in their response (the "Response," ECF Doc. #5485) to the Debtor's Thirty-Sixth Omnibus Objection to Claims (Misclassified and Wrong Debtor Borrower Claims) (the "Objection," ECF Doc. #5138).

5.     This Court granted Debtors Objection with the following stipulation: "Claim Nos. 5580 and 5573 are hereby REDESIGNATED and RECLASSIFIED as $1,000,000.00 unsecured claims against GMAC Mortgage, LLC. Nothing in this Order should be construed as a judgment on the merits of claim nos. 5580 and 5573, and the rights of all parties are preserved with respect to the newly designated claims." ("Order," ECF Doc. #6332). That Order was filed on January 22, 2014. The Debtors did not dispute any amount alleged to be owed to the Eriksens before this Order.

6.     On December 17, 2013, this Court confirmed the Second Amended Joint Chapter 11 Plan ("Plan") of RC and the Official Committee of Unsecured Creditors ("OCUC"). Under that Plan, the Eriksens are to receive 30₵ on the dollar or $300,000.00 for each Eriksen. That Plan provided RC, its successors or OCUC to dispute those amounts owed. This Court entered a reserve amount necessary to insure that valid claims like the Eriksens received their fair in consideration from the Debtor or its successors.

7.     On June 2, 2014, the Debtors successors, RC Borrowers Claim Trust ("BCT") sought an order from this Court to estimate the disputed claims amounts and substantially reduce amounts held in reserve against disputed claims, pursuant to the Plan. Further, BCT states, "The Trust desires to make a distribution to the holders of Allowed Borrower Claims but will be unable to do so unless the Court grants this Motion." (ECF Doc. #7036, ¶3).

8.     The Eriksens objected, and timely filed a response to that motion on or before June 19, 2014. BCT's motion was a frivolous motion, and contained severe misrepresentations. The Eriksen spent a significant amount of time preparing their response and objections to said motion, and significant expense in mailing said response to meet an extreme deadline, June 19, 2014, i.e. 17 days after the filing of BCT's motion.

9.     On June 26, 2014, BCT, at said hearing, withdrew that motion. Numerous parties objected to BCT's motion on the basis of severe misrepresentations. BCT, on or around that same time, file objections to the Eriksens claims. On or around July 24, 2014, the Eriksens moved for an extension of time to file their response to those claims. On or around August 26, 2014, the Eriksen filed their Notice. On or around September 8, 2014, the Eriksens and BCT entered into a stipulation order.

## Factual Basis for the Claims of "Bad Faith" Negotiation, Promissory Estoppel and BCT's Waiver of Objections to the Eriksens Claims

10.     After January 22, 2014, the Eriksens entered into "good faith" settlement negotiations with GMACM. Jonathan Petts ("Petts") represented GMACM. Shortly thereafter, Petts stated that he did not think he could get the Eriksens the full price of their $425,000.00. The Eriksens willing to settle this matter offered to settle their claims for

$350,000.00. Shortly thereafter, Petts came back and stated no settlement offer would be made. All this took place prior to July 24, 2014. The Eriksens proceeded.

11.    Shortly before August 15, 2014, the Eriksens were contacted by Jessica Arett ("Arett") of Morrison & Forrester, LLP. ("MF"): BCT wanted to enter into settlement negotiations again. The Eriksens agreed. Arett requested a damages letter. On or around August 15, 2014, the Eriksens sent their initial damages letter. Exhibit 1. The Eriksens reduced their requested amount from $350,000.00 to $300,000.00 That letter outlined the legal bases' for the Eriksens claims. Arett, shortly after receiving said damages letter, stated that the damages letter did not contain the specifics of damages that BCT was looking for. No objection was made to the amount requested. Then, the Eriksens understood what Arett and BCT were looking for and sent a second damages letter to support said amount on or around September 15, 2014. Exhibit 2. On or around September 22, 2014, Arett contacted REriksen and stated no settlement offer was forthcoming, and any decision on how to move forward would be made after the hearing on September 30, 2014. BCT and Arett, at all times relevant, were made aware by the Eriksens of their limited resources and time to be able respond to the "piles of paperwork" being presented.

12.    On June 2, 2014, BCT and MF filed a motion that contained severe misrepresentations, mischaracterizations and flat out falsehoods, which they eventually withdrew, but not before the Eriksens were required to spend significant time to respond to BCT's and MF's motion. Then, the Eriksens spent a significant amount of time, twice, to respond to the request for damages sought by BCT. BCT and MF knew the Eriksens were spending a significant amount of time to respond to BCT's requests for settlement.

13.    BCT and MF, at all times relevant, and based on the aforementioned, did not intend on settling with the Eriksens. The Eriksens, on the other hand, entered into said settlement negotiations in good faith. The Eriksens did not know BCT and MF intended on using the proposition of settlement to hinder them in the defense of their claims. That now, based on the aforementioned, BCT and MF plainly and obviously intended on using the offer of settlement to induce the Eriksens to do more work to increase the load to more than they could bare for the purpose of hindering them in the defense of their claims. Now, BCT and MF wants to take advantage of the Eriksens again, and defraud them again, in plain view before this Court. Simply unbelievable.

## LEGAL ARGUMENTS

14.    Bad faith negotiations open the door for settlement discussions to be introduced as evidence. See Committee Notes:

> "The intent is to retain the extensive case law finding Rule 408 inapplicable when compromise evidence is offered for a purpose other than to prove the validity, invalidity, or amount of a disputed claim. *See, e.g., Athey v. Farmers Ins. Exchange,* 234 F.3d 357 (8th Cir. 2000) (evidence of settlement offer by insurer was properly admitted to prove insurer's bad faith); *Coakley & Williams v. Structural Concrete Equip.,* 973 F.2d 349 (4th Cir. 1992) (evidence of settlement is not precluded by Rule 408 where offered to prove a party's intent with respect to the scope of a release); *Cates v. Morgan Portable Bldg. Corp.,* 708 F.2d 683 (7th Cir. 1985) (Rule 408 does not bar evidence of a settlement when offered to prove a breach of the settlement agreement, as the purpose of the evidence is to prove the fact of settlement as opposed to the validity or amount of the underlying claim); *Uforma/Shelby Bus. Forms, Inc. v. NLRB,* 111 F.3d 1284 (6th Cir. 1997) (threats made in settlement negotiations were admissible; Rule 408 is inapplicable when the claim is based upon a wrong that is committed during the course of settlement negotiations)."

## Waiver or Estoppel of Objections to Claims:

15.    **WAIVER:** A waiver is an intentional relinquishment of a known right which may be express or implied from the conduct of the party that has allegedly waived

its right. (_Ryder v. Bank of Hickory Hills_ (1991), 146 Ill.2d 98, 165 Ill.Dec. 650, 585 N.E.2d 46.). Waiver may be either express or implied and may arise from acts, words or conduct inconsistent with the intent to enforce a right. _Sexton v. Smith_, 112 Ill. 2d 187, 492 N.E.2d 1284, 97 Ill.Dec. 411 (1986). The waiver of a contractual provision may be established by conduct indicating that strict compliance with the provision will not be required. _Community Convalescent Center, Inc. v. First Interstate Mortgage Company of Illinois_ (1989), 181 Ill.App.3d 996, 130 Ill.Dec. 833, 537 N.E.2d 1162. The waiver doctrine is grounded in contract law and is designed to prevent the waiving party from lulling another party into false assurance that strict compliance with contractual duty will not be required and then suing for noncompliance. _Wagner Excello Foods, Inc. v. Fearn Intern., Inc._ 235 Ill. App. 3d 224, 601 N.E.2d 956, 176 Ill.Dec. 258 (1st Dist. 1992). We have recognized "the value of waiver and forfeiture rules" in "complex" cases, _Exxon Shipping Co. v. Baker_, 554 U. S. 471, 487–488, n. 6 (2008).

16.    The Plan amount for the Eriksens is clearly set at $600,000.00. The Plan is a contract. _Ernst & Young LLP v. Baker O'Neal Holdings, Inc._, 304 F.3d 753, 755 (7th Cir. 2002). Further, confirmation of a plan has also been held to be "the equivalent of a final judgment in a civil litigation." _In re Rickel & Assocs:_, 260 B.R. 673,677 (Bankr. S.D.N.Y. 2001). As a general rule, the "confirmation of a plan of reorganization constitutes a final judgment in bankruptcy proceedings." _Sanders Confectionery Prods. Inc. v. Heller Fin. Inc._, 973 F.2d 474, 480 (6th Cir. 1993).

17.    BCT entered into settlement discussions with the Eriksens; first Petts, then Aretts. The Eriksens offered settlement to Petts. Petts said no offer was forthcoming after the Eriksen made their offer, $350,000.00. No harm, No foul. Then, Aretts contacted the

Eriksens. BCT expressed its interest in entering settlement negotiations, again. BCT had

the Eriksens prior settlement number. Arett requested specifics on damages. The Eriksen

provided said specifics, twice. The Eriksens reduced their offer. BCT came back and

stated it was not interested in settlement. Such action constitutes bad faith in settlement

negotiations and creates a waiver of claim under Illinois law.

18.     The question of waiver is a question of fact when the material facts are in

dispute or when "reasonable minds" differ from the inferences drawn from undisputed

evidence. (*Pantle v. Industrial Commission (1975)*, 61 Ill.2d 365, 335 N.E.2d 491.)

Where there is no dispute as to the material facts and only one reasonable inference can

be drawn from them, the question of waiver is a matter of law. *Wells v. Minor* (1991),

219 Ill.App.3d 32, 161 Ill.Dec. 691, 578 N.E.2d 1337. Waiver, like estoppel, is an

equitable doctrine and in contract law is designed to prevent the waiving party from

"lull[ing] another into a false assurance that strict compliance with a contractual duty will

not be required and then sue for noncompliance." (*Whalen v. K-Mart Corp.* (1988), 166

Ill.App.3d 339, 343, 116 Ill.Dec. 776, 519 N.E.2d 991.)

19.     **ESTOPPEL (EQUITABLE or PROMISSORY)**: While waiver refers to

the intentional relinquishment of a known right, estoppel requires reliance by one party

on the conduct of another to the extent that the party changes its position to its detriment

in good faith. The end result of the successful application of the estoppel doctrine is that

the estopped party is not permitted to raise a contention inconsistent with its misleading

conduct. *Terracom Development Group, Inc. v. Coleman Cable & Wire Co.*, 50 IllApp.3d

739, 365 N.E.2d 1028, 8 Ill.Dec. 642 (1st Dist. 1977).

**EQUITABLE ESTOPPEL**: Equitable estoppel is specifically defined as
the principle by which a party who knows or should know the truth is

absolutely precluded, both at law and in equity, from denying, or asserting the contrary of, any material fact which, by his words or conduct, affirmative or negative, intentionally or through culpable negligence, he has induced another, who was excusably ignorant of the true facts and who had a right to rely upon such words or conduct, to believe and act upon them thereby, as a consequence reasonably to be anticipated, changing his position in such a way that he would suffer injury if such denial or contrary assertion was allowed. See, 28 Am Jur 2d Estoppel and Waiver § 28.

**PROMISSORY ESTOPPEL**: Promissory estoppel exists when (1) a promise unambiguous in terms, (2) reliance on such promise by the party to whom it was made, (3) which reliance was expected and foreseeable by the party making the promise, and (4) which reliance was to the detriment of the party to whom the promise was made. (*Dale v. Groebe & Co.* (1981), 103 Ill. App.3d 649, 431 N.E.2d 1107; *S.M. Wilson & Co. v. Prepakt Concrete Co.* (1974), 23 Ill. App.3d 137, 318 N.E.2d 722.)

20.    Here, BCT contacted the Eriksens. BCT initiated settlement discussions after having received a prior settlement offer from the Eriksens. BCT <u>knew</u> the Eriksens number. BCT led the Eriksen into believing it was interested in settlement. The Eriksen responded and provided what BCT sought in said discussions. BCT clearly intended on offering the promise of settlement to the Eriksens. The Eriksens relied on said promise and provided said documentation requested. The Eriksens did this at the expense of defending their claims. Later, BCT, immediately prior to the Eriksen's reply being due, came back and stated it was going to wait to do anything until after the hearing on September 30, 2014. BCT clearly intended on lulling the Eriksens to sleep with a false promise of settlement. The Eriksens were lulled to sleep by said false promise. That has harmed them in their ability to adequately defend their claims. BCT is estopped from asserting its objections to the Eriksens claims. That means, BCT is also precluded from objecting to withdrawal of the Eriksens claims from this Court.

8

21.    **UNCLEAN HANDS aka BAD FAITH**: The most common formulation of the "unclean hands" doctrine is "one seeking equitable relief cannot take advantage of his own wrong." *Fair Automotive Repair, Inc. v. Car Service Systems, Inc.*, 128 Ill.App.3d 763, 84 Ill.Dec. 25, 29, 471 N.E.2d 554, 558 (1984). "One who has defrauded his adversary to his injury will not be heard to assert a right in equity." *Fruhling v. County of Champaign*, 95 Ill.App.3d 409, 51 Ill.Dec. 508, 414, 420 N.E.2d 1066, 1071 (1981). [2] [3] The "unclean hands" doctrine precludes equitable relief to a party who has engaged in unlawful or inequitable conduct in connection with the matter from which he or she seeks relief. *Scheiber v. Dolby Labs., Inc.*, 293 F.3d 1014, 1021 (7th Cir.2002). The court should refuse equitable relief if granting such relief would produce an illegal or unjust result. *Packers Trading Co. v. CFTC*, 972 F.2d 144, 148-49 (7th Cir.1992). Wrongful conduct includes any acts which are inequitable, unfair, dishonest, fraudulent, unconscionable, or in bad faith. **27A Am.Jur.2d Equity § 100 (2d ed.2009)**.

22.    BCT has clearly acted with unclean hands in this case. BCT's knowing misrepresentations on June 2, 2014 followed by its bad faith dealings in settlement negotiations with the Eriksens from July 24, 2014 to September 22, 2014 is sufficient to find BCT acted with unclean hands or in bad faith. That means, BCT is precluded from any form of equitable relief in relation to the Eriksens claims. That would include affirmative defenses or BCT's objections like *res judicata* or estoppel. BCT's defenses to

---

[2] "[W]hile equity does not demand that its suitors shall have led blameless lives, as to other matters, it does require that they shall have acted fairly and without fraud and deceit as to the controversy in issue." *Precision Mfg Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 806, 814-15 (1945).

[3] A void order may be attacked at any time before any court. *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 103-04, 776 N.E.2d 195, 201-02 (2002). "A void judgment is one that is entered by a court...where the order was produced by fraud." (underlines and bold added). *Miller v. Balfour*, 303 Ill. App. 3d 209, 215, 707 N.E.2d 759, 765 (1999).

the Eriksen's claim are equitable in nature, and should not be allowed. That includes BCT's opposition before this Court to the Notice.

23.    Further, BCT's law firm, MF, have been complicit with BCT in its bad faith settlement negotiation tactics, which were knowingly used to harm the Eriksens. Such "dirty dealings" are reminiscent of Chicago's notorious Crook County and Governor Scandals. Under Illinois law, such acts constitutes civil conspiracy, in concert liability or aiding and abetting, all separate acts under Illinois law.

**The Eriksens Objections to Jurisdiction under 28 USC 157(b)(5) and Article III:**

24.    The Eriksens claims stem from the wrongful foreclosure on their home at 492 Asbury Lane, Aurora, IL 60502. That GMACM committed fraud in the foreclosure process, and conspired to commit fraud with GMAC Mortgage Corporation ("GMAC"). That fraud related to a foreclosure action where no assignment of the note had taken place between GMAC and GMACM. That lack of assignment prior to the foreclosure action on the home constituted fraud. GMACM was notified by the Eriksens that no notice of transfer, sale or assignment had ever been received by them. GMACM proceeded to foreclose on said home.

25.    The Eriksens lost their home. That is the physical damage done. But, the **Real Estate Settlement Procedures Act ("RESPA"), 12 USC 2605(f)** provides that actual damages include emotional damages done. The Eriksens have significant evidence of those emotional damages. See Ex. 1, 2. Further, the Eriksens have suffered economic damages through lost income from employment. Id. Economic harms are also included in damages under RESPA. Court have consistently found "actual damages" includes emotional distress damages. See *Wright v. Litton Loan Servicing LP*, No 05-02611-JF,

2006 U.S. Dist. LEXIS 15691, at *9-10 (E.D.Pa. Apr. 4, 2006), *Ploog v. Homeside Lending, Inc.*, 209 F. Supp.2d 863, 870 (N.D.Ill. 2002).

26.    The Eriksens claims arise from 2 distinct categories: 1) GMACM's wrongful foreclosure action, and 2) emotional and economic harms from GMACM's wrongful foreclosure action. The Eriksens, for simplicity, have categorized their claims into Counts. Ex. 2. The Eriksens emotional and economic harms are personal injury tort claims under the clear meaning of **28 USC 157(b)(5)**. BCT's contention is that this Court may adjudicate the allowance or disallowance of the Eriksens claims under **28 USC 157(b)(2)(B)**, but the plain language of that statute states, "but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11".

27.    BCT's misrepresentation of this Court's jurisdiction is extensive. Although 28 USC 157(b)(5) may not be binding on this Court, *Stern v. Marshall*, 564 U.S. 2 (2011) is, which states, "Although we conclude that §157(b)(2)(C) permits the Bankruptcy Court to enter final judgment on Vickie's counterclaim, Article III of the Constitution does not." Here, **28 USC 157(b)(2)(B)** does not allow this Court to exercise jurisdiction over the Eriksens personal injury tort claims, for those claims are not core proceedings. And, the Eriksens, although filing their proof of claim in this Court, have not acquiesced to this Court's jurisdiction over their personal injury tort claim. The Eriksen have raised a valid and timely motion to withdrawal before the District Court, which is the Court that rightfully decides whether to withdrawal in whole or in part the Eriksens claims. The Eriksens have objected to the allowance and disallowance of their claims by this Court, and are seeking to present those claims before the District Court.

28.   "[I]t is well settled that[] a Plan may not delegate unlimited authority to a bankruptcy judge . . . ." Kalamazoo Realty Venture Ltd. P'ship v. Blockbuster Entm't Corp., 249 B.R. 879, 886 (N.D. Ill. 2000) (internal quotation marks omitted). "A reorganization court will frequently insert a clause in a plan that reserves jurisdiction to protect the confirmation decree." Id. (internal quotation marks omitted). But "when a bankruptcy court retains jurisdiction over a certain dispute, it does not divest any other court of concurrent jurisdiction." Id. (internal quotation marks omitted). Moreover, "several courts have opined that a bankruptcy court's attempt to retain jurisdiction beyond that which is necessary to effectuate the plan of reorganization is beyond the authority of that court[] and that a boilerplate retention of jurisdiction clause inserted into a plan cannot expand that court's authority." Unico Holdings, Inc. v. Nutramax Products, Inc., 264 B.R. 779, 785 (Bankr. S.D. Fla. 2001) (collecting cases)." _FTI Consulting, Inc._ _v. Merit Management Group, LP_, 476 B.R. 535 (N.D. Ill. 2012).

**Right to Amend Pleadings under FRCP 15, Venue Transfer and Jury Trial:**

29.   The Eriksens timely submitted their proof of claim before this Court in November 2012 and supplemented it in July 2013. Then, on timely sought to remove their claims after BCT submitted its objections. See Notice. The Eriksens have sought to remove this case for 3 main reasons: 1) FRCP liberal pleading amendment, 2) Forum non conveniens, and 3) jury trial.

30.   Under 7th Circuit precedent, a party is allowed to amend its pleadings at least once. This is well established. _Alioto v. Town of Lisbon_, 651 F.3d 715, 721 (7th Cir. 2011) ("[A] plaintiff ordinarily retains the ability to amend his complaint once as a matter of right…").

31.    The Eriksens are trying to defend their claims arising from the damage done by GMACM through the loss of its home in Aurora, Illinois from more than 1000 miles away. Doing so has placed an extraordinary strain on them. Given their *pro se* status, and GMACM's intentional fraud and fraudulent conveyance, which is a significant basis for this Court **not** having jurisdiction over the Eriksens personal injury tort claims. See FTI Consulting, Inc., 476 B.R. at 438-39. Plainly, such distance is prejudicing the Eriksens.

32.    The Eriksens have a right to trial by jury. That right is not waived before a bankruptcy court by the filing of a proof of claim. **28 USC 1411(a)** provides that in a "personal injury or wrongful death tort claim" the bankruptcy laws do not affect any rights to trial by jury that an individual has under applicable non-bankruptcy law.

**Permission Abstention or Stay of Case:**

33.    Permissive abstention requires the consideration, *inter alia*, of (1) the effect on the efficient administration of the estate; (2) the extent to which Federal law issues predominate over bankruptcy issues; (3) the difficulty of the applicable Federal law issues; (4) the presence or availability of related proceedings in nonbankruptcy fora; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; and (6) the feasibility of severing the Federal law claims from core bankruptcy matters. *Plum Run Serv. Corp.*, 167 B.R. at 465; *see also Hutchins v. Fordyce Bank & Trust Co. (In re Hutchins)*, 211 B.R. 319 (Bankr.E.D. Ark. 1997); *Fid. Nat'l Title Ins. Co. v. Franklin (In re Franklin)*, 179 B.R. 913, 928 (Bankr. E.D. Cal. 1995) (12 factors to consider in deciding whether to abstain).

34.    The Eriksens claims are predicated on personal injury tort claims, i.e. claims involving federal or state matter not bankruptcy matters. The Eriksens claims

13

revolve around their personal injuries, i.e. emotional distress and economic duress. The

Eriksens witnesses are 1000+ miles from New York in and around Aurora, Illinois. The

expense imposed in adjudicating their claims would be extensive. Illinois is a common

law state, and applies English common law that precedes 1607 A.D. in relation to

fraudulent conveyance acts like those done by GMACM. See. **5 ILCS 50.1**. *Rush*

*University Medical Center v. Sessions, 2012 IL 112906*. The Eriksens claims are mostly

non-core claims. Here, state and federal law in the context of wrongful foreclosure are

uniquely designed to be administered in a District Court, preferably in the district and

circuit where the wrongful foreclosure took place, i.e. Illinois.

35.     **11 USC 105(a)** authorizes this Court to rule equitably on matters like this

one. The equities favor staying resolution of the Eriksen's claims until a decision is made

by the District Court as to withdrawal in whole or in part. GMACM will hardly be

prejudiced by waiting to resolve the Eriksens $600,000.00 personal injury tort claim,

which is less than a tenth of a percent of the total claims.

## CONCLUSION

36.     Based on the aforementioned, the Eriksens request this Court abstain or

stay determination on the Eriksens claims.

Dated:    September 25, 2014                    Respectfully submitted:

                                               Ron Eriksen


                                        By:    /s/Ron Eriksen
                                                        Defendant


Ron Eriksen
443 Jamestown Ct.
Aurora, IL 60502

Dated:    September 25, 2014                    Respectfully submitted:

                                               Julie Eriksen


                                        By:    /s/Julie Eriksen
                                                        Defendant


Julie Eriksen
443 Jamestown Ct.
Aurora, IL 60502

# Exhibit 1

# RONALD ERIKSEN

Direct Dial: 630.688.1162
E-Mail:reriksen1@gmail.com

August 15, 2014

Ms. Jessica Arett
Morrison & Foerster LLP
250 West 55th Street
New York, NY 10019

**RE: DEMAND LETTER, Ronald A. Eriksen and Julie A. Eriksen, Claim Nos. 5573 and 5580, Residential Capital, LLC, Case No. 12-12020 – FOR SETTLEMENT PURPOSES ONLY**

Ms. Arett:

Pursuant to your request, Ronald A. Eriksen and Julie A. Eriksen ("Eriksens") are sending this initial demand letter for the purpose of resolving our claims without further litigation. We believe this is possible and accept your invitation to pursue this opportunity.

**Basis for Claims:**

The Eriksens timely filed their claims before the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court") on or around November 16, 2012. The Eriksens were issued 2 Claim Nos., 5573 and 5580. The Eriksens supplemented their claims, as instructed, on or around July 7, 2013. The Eriksens identified the basis's for their claims in their November 16, 2012 and July 7, 2013 submissions.

THE LOAN PROCESS: On November 9, 2005, the Eriksens entered into a loan agreement with GMAC MORTGAGE CORPORATION ("GMAC"). At all times relevant, the Eriksens made loan payments to GMAC. At no time have the Eriksens receive a notice of transfer sale or assignment of their loan from GMAC. GMAC, at all times relevant, was their lender.

WRONGFUL FORECLOSURE: On June 7, 2010, GMAC MORTGAGE, LLC. ("GMACM") filed a foreclosure lawsuit against the Eriksens. That foreclosure was initiated by GMACM. GMACM claimed it was the lawful holder of the mortgage and note. But, no notice of transfer, sale or assignment of the mortgage or note was ever sent by GMAC and GMACM. GMAC and GMACM violated **12 U.S.C. §2605** by failing to send a notice of transfer, sale or assignment. GMACM's foreclosure on the Eriksens home located at 492 Asbury Dr., Aurora, IL 60502 was a wrongful foreclosure.

DECEPTIVE PRACTICES AND MISREPRESENTATIONS: On or before September 3, 2010, the Eriksens notified GMACM that they had never received a notice of transfer, sale or assignment of their mortgage or note, as required. GMACM amended their complaint for foreclosure on September 3, 2010. That filing constituted a false claim. The institution of that

foreclosure proceeding has caused serious damaged to the Eriksens. Further, GMAC and GMACM entered into an agreement to fraudulently transfer the mortgage and note by creating the appearance of sameness between GMAC and GMACM. GMACM purposefully sought to cause confusion, and did. That fraud and deception caused the Eriksens to lose their home through the foreclosure process. GMAC and GMACM entered into an agreement to defraud the Eriksens of their home through a fraudulent transfer of the mortgage and note, and they did this in violation of **815 ILCS 505/2**. The Eriksens have remedy under Illinois for said deceptive practices via **815 ILCS 505/10a**. That remedy includes consequential damages caused by said deceptive practices.

Further, this deception in the collections process violated the Fair Debt Collections Practice Act ("FDCPA"), **15 U.S.C. §1692**. The FDCPA allows for actual damages caused by acts outlined in the act including but not limited to any false representation. In this case, GMACM purported to act on behalf of GMAC, and created purposefully caused confusion in the Eriksens mind and the mind of the 18th Circuit Court of DuPage County, IL. These are serious acts, and the damages to the Eriksens have been significant from said acts. Further, emotional damages are provided for as a remedy for violations of **§1692**.

FRAUD AND FRAUDULENT TRANSFER: GMAC and GMACM engaged in a fraudulent transfer of the Eriksens mortgage and note. That fraudulent transfer is prohibited under Illinois's common law act, **5 ILCS 50.1**, which incorporates the English common law prohibition against fraudulent transfers, The Fraudulent Conveyance Act of 1571, **13 Eliz 1, c 5**, which is herein incorporated under Illinois's Common Law Act, states,

> "For the avoiding of feigned, covious and fraudulent feoffments, gifts, grants, alienations, bonds, suits, judgments and executions, as well as of lands and in tenaments, as of goods and chattels, more commonly used and practices in these days than hath been seen or heard of heretofore; which feoffments, gifts, grants, etc. have been and are devised and contrived of malice, fraud, covin, collusion or guile to the end, purpose and intent to delay, hinder or defraud creditors and others of their just and lawful actions, suits, debts, etc; not only to the let or hindrance of the due course and execution of law and justice, but also to the overthrow of all true and plain dealing, bargaining and chevisance between man and man, without the which no commonwealth or civil society can be maintained or continued.

> Be it therefore declared, ordained and enacted, that all and every feoffment, gift, grant, alienation, bargain and conveyance of lands, tenements, hereditaments, goods and chattels, or any of them, by writing or otherwise, and all and every bond, suit, judgment and execution at any time had or made to or for any intent or purpose before declared and expressed, shall be henceforth deemed and taken, only as against that person or persons, his or their heirs, successors, executors, administrators and signs of every of them, whose actions, suits, debts, etc; by such guileful, covinous or fraudulent devices and practices, as is aforesaid, are, shall or might be in anywise disturbed, hindered, delayed or defrauded, to be clearly feigned consideration, expressing of use or any other matter of thing to the contrary notwithstanding."

GMAC and GMACM engaged in a fraudulent transfer scheme of the Eriksens' mortgage and note, and knowingly failed to provide them with notice even after it was known that no notice had been sent to the Eriksens. Further, GMACM continued the foreclosure process against the Eriksens even after GMACM knew no notice was sent. By said acts, GMACM obtained a judgment of foreclosure against the Eriksens.

RESULTANT DAMAGES: The damages to the Eriksens, including damages to their 3 daughters, Hannah, Sarah and Rachel, has been significant, as follows:

1. On January 19, 2011, Ron Eriksen entered into psychological treatment at Naperville Community Outreach and was treated by Melissa Pasquesi. Eriksen began taking severe psychotropic drugs to aid in controlling depression. That treatment has continued up and through September 4, 2014.

   a. Ron Eriksen has been unable to maintain his former C-Level executive status, in part, due to said depression. He has lost jobs, been terminated, been unable to perform due to anxiety and suffered the loss of consortium.

   b. Ron Eriksen was forced to start his own business to provide for himself, and, due to financial pressures caused by losses of jobs, had been unable to maintain his previous standard of living, which has impacted him and his family.

   c. Ron Eriksen has suffered severe medical episodes from anxiety, including heart palpitations.

2. On July 14, 2011, the Eriksens filed bankruptcy. That bankruptcy filing was an especially traumatic experience for Julie Eriksen, and caused severe emotional anxiety and trust issues.

3. In 2011, Hannah Eriksen, the Eriksens oldest daughter, began psychological treatment at the DuPage County Health Department in West Chicago, IL. She still takes anti-depressants and anxiety medication.

4. In 2012, Sarah Eriksen, by doctor's order, entered into in-patient care at the Linden Oaks Hospital for 3 days. The Eriksens could not take her home until she received said doctor's approval. In 2013, Sarah Eriksen entered into outpatient care at Linden Oaks. From 2012 to today, Sarah Eriksen takes several doses of medications daily.

5. In 2012, Rachel Eriksen, began treatment at Aunt Martha's Community Center. She is being medicated and treated for depression and anxiety.

The Eriksens have suffered a traumatic loss of their home, livelihood and quality of life as a direct result of GMAC and GMACM. Further, GMACM did not abide by new regulations being passed in Illinois to prevent the traumatic assault on Illinois residents' rights, like what happened to the Eriksen. Governor Pat Quinn signed bills to insure that mortgage modifications would be available. The Eriksen applied on more than one occasion to receive a modification to their mortgage. But, they were rebuffed by GMACM. And, GMACM continued with the foreclosure process. GMACM continued the foreclosure process after they knew, or should have known, that it was wrongful to continue, and GMACM unjustly benefited by filing said wrongful foreclosure. GMACM obtained the Eriksens home at 492 Asbury Dr. Aurora, IL 60502, and did not seek to mitigate any damages caused by their actions, willful or negligent. Either way, GMACM is subject to damage claims for unjust enrichment and negligence.

1. The Eriksens have lost their home - $475,000.00.

2. The Eriksens have suffered actual damages in an amount not less than $2 million dollars.
3. The majority of the Eriksens damages are emotional suffering caused by the trauma of the wrongful foreclosure, negligence, unjust enrichment, deception, fraud and fraudulent transfer scheme by GMACM.

**Demand for Damages:**

Ron Eriksen entered into settlement discussions with GMACM attorney, Jonathan M Petts. In that conversation, Mr. Petts stated that he did not think he could settle with the Eriksens for more than the value of their home, i.e. $425,000.00. The Eriksens claims, as they stand, are for $2 million, which has been reduced by the bankruptcy plan to $600,000.00. Ron Eriksen offered to settle with GMACM for $350,000.00. This was a reasonable sum considering the totality of the damages suffered by the Eriksen. GMACM did not come back with a settlement offer.

The Eriksens are willing to settle with GMACM for a reasonable sum that will help them recover financially, and provide some compensation for the welfare of their family. The Eriksens are willing to reduce their settlement number to $300,000.00. Given the above, and the likelihood of a jury trial in Illinois, and the probability of change of venue from the Bankruptcy Court is strong. We have already filed our motion before the United States District Court for the Southern District of New York to withdraw our claims from the Bankruptcy Court to the District Court predicated on **28 USC 157(d)** and **28 USC 157(b)(5)**. And, due to the difficulties we have faced as a direct result of GMACM's actions, we are seeking to withdraw our claims to the United States District Court for the Northern District of Illinois.

Our preference is to settle. We believe our claims are strong, but desire to move on with our lives, and recover from everything that has happened. I have not sought legal counsel, yet. But, in the near future, I will begin discussing other options with one or more attorneys that I know.

Again, thank you for considering our settlement proposal. We are willing to settle for a lump sum payment of $300,000.00. Normally, I wouldn't counter my own offer, but I know that you are new to this case, and wanted to provide you the necessary background to make your decision.

Sincerely,



Ronald A. Eriksen
Julie A. Eriksen

Exhibit 2

# RONALD ERIKSEN

Direct Dial: 630.688.1162
E-Mail:reriksen1@gmail.com

September 15, 2014

Ms. Jessica Arett
Morrison & Foerster LLP
250 West 55th Street
New York, NY 10019

**RE: DAMAGES – Ronald A. Eriksen and Julie A. Eriksen – Specified List of Damages
[FOR SETTLEMENT PURPOSES ONLY]**

Ms. Arett:

We appreciate your assistance in resolving our claim dispute. Per your request, I am sending this list of specified damages caused by GMAC Mortgage, LLC ("GMACM"). My previous letter detailed the legal elements and basis for Ronald A. Eriksen's (REriksen) and Julie A. Eriksen's (JEriksen) (collectively, Eriksens) claims for damages, Claim Nos. 5573 and 5580. Here is a more specified list of damages:

Normally in a complaint one would have separate counts for each legal basis for damages suffered. Here is the list of Counts presented in the claims by the Eriksens:

| | |
|---|---|
| COUNT I | – Wrongful Foreclosure (common law) |
| COUNT II | – RESPA Violations |
| COUNT III | – Unjust Enrichment (common law) |
| COUNT IV | – Negligence (common law) |
| COUNT V | – Consumer Fraud and Deceptive Practices Violations |
| COUNT VI | – Fair Debt Collections Practices Act Violations |
| COUNT VII | – Fraudulent Conveyance (common law) |
| COUNT VIII | – Fraud (common law) |
| COUNT XI | – Civil Conspiracy (common law) |
| COUNT X | – In concert liability (common law) |
| COUNT XI | – Aiding and abetting (common law) |
| COUNT XII | – Punitive damages |

The Eriksens will identify each basis for damages associated with each Count in the claims, as follows:

COUNT I    – In Illinois, under Illinois common law, wrongful foreclosure is a distinct count where damages may be obtained. In this case, wrongful foreclosure allows for the following damages: 1) loss of value of home or equity in home or use of home, $475,000.00, 2) rental or purchase of new home, $56,010.00, and 3) damage to personal credit from foreclosure, $100,000.00.

COUNT II — RESPA violation damages are actual damages. The Eriksens provided notice of the wrongful foreclosure and sought by written request resolution. Instead of receiving a response, their wrongful foreclosure continued. The damages are actual damages, which include emotional distress and economic damages, plus mandatory statutory damage of $1,000.00.

That would include damages from COUNT I plus emotional and economic damages:

Loss of income: Since 2011, REriksen has suffered a significant decrease in his income: $250,000.00 plus benefits to $75,000.00 plus benefits or less, i.e. a $175,000.00 difference. Or, for 3 years, $525,000.00.

Loss of consortium: Losing their home placed a tremendous strain on the Eriksens marriage. In a normal marriage, consortium is one of the benefits, and a loss of consortium can cause further emotional harms. $250,000.00 per spouse.

Damages to children: The strain placed on the Eriksen's marriage, and emotional harms caused by the wrongful foreclosure caused damage to each one of the Eriksen's children: Hannah, Sarah and Rachel. Each one will need on-going care for their emotional well-being. $250,000.00 per child.

COUNT III — In Illinois, unjust enrichment is a separate cause of action. GMAC Mortgage Corporation ("GMAC") did not assign the Eriksen's mortgage and note to GMACM prior to the foreclosure proceeding, and did not correct this after the foreclosure proceeding began. Or, GMACM unjustly enriched itself on a home where no assignment was complete. $475,000.00. Plus, it was willful, which allows for punitive damages, $1,000,000.00+. To be decided by a jury.

COUNT IV — In Illinois, the Eriksen's negligence claims are of two types: direct and bystander. The Eriksens were directly harmed by GMACM. Those harms include the emotional damages in COUNT II. The Eriksens children, Hannah, Sarah and Rachel, were also harmed as bystanders, and their parents are entitled to damages for their future care. Plus, the willful nature or the fact that GMACM was grossly negligent allows for punitive.

Direct damages: see COUNT II.
Bystander damages: see COUNT II, children.

COUNT V — In Illinois, the Consumer Fraud and Deceptive Practices Act ("CFA") allows for a wide range of damages, i.e. restitution, corporate dissolution, seizure of assets, and punitive damages for willful wrongs caused by gross negligence.

The value of the Eriksen's home: $475,000.00
Property rental and living expenses: $56,500.00
Economic losses due to stress: $525,000.00
Emotional Distress (Eriksens): $250,000.00
Emotional Distress (Children): $750,000.00

Punitive Damages: To be determined by jury or judge

COUNT VI   – The Fair Debt Collections Practice Act allows for actual damages, and statutory damages.

The value of the Eriksen's home: $475,000.00
Property rental and living expenses: $56,500.00
Economic losses due to stress: $525,000.00
Emotional Distress (Eriksens): $250,000.00
Emotional Distress (Children): $750,000.00
Statutory Damages: $1,000.00

COUNT VII   – In Illinois, common law, including English common law that existed prior to 1607 A.D., is still in effect. The Fraudulent Conveyance Act of 1513 is still in effect, and has been reaffirmed recently by the Illinois Supreme Court, *Rush University Medical Center v. Sessions*, 2012 IL 112906. *Rush* confirms the current applicability of the common law in relation to fraudulent transfers and that it is a concurrent remedy for wrongs suffered. In this case, the fraudulent transfer of the mortgage and note. No documentation of transfer or assignment prior to foreclosure by GMACM, i.e. a fraudulent transfer. Punitive damages are allowed for willful violations – 100 times actual damages has been upheld.

The value of the Eriksen's home: $475,000.00
Property rental and living expenses: $56,500.00
Economic losses due to stress: $525,000.00
Emotional Distress (Eriksens): $250,000.00
Emotional Distress (Children): $750,000.00

Punitive Damages – To be determined by jury or judge

COUNT VIII   – In Illinois, common law fraud offers remedy for victims of fraud In this case, foreclosure where no assignment of the mortgage and note took place. That lack of assignment is a fraudulent conveyance of the mortgage and note, and a fraud against the Eriksens in the foreclosure process. Punitive damages are allowed for willful acts – 100 times actual damages has been upheld.

The value of the Eriksen's home: $475,000.00
Property rental and living expenses: $56,500.00
Economic losses due to stress: $525,000.00
Emotional Distress (Eriksens): $250,000.00
Emotional Distress (Children): $750,000.00

Punitive Damages: To be determined by jury or judge

COUNT IX   – GMAC and GMACM conspired together to commit fraud against the Eriksens. GMAC went out of business, or purportedly merged with GMACM, but no assignment of the Eriksen's mortgage or note took place. That lack of assignment was willful and designed to mislead the Eriksens into thinking that GMAC was no

longer in business. GMACM was not their lender, provided no documentation showing it was their lender and failed to produce the proper record of assignment of either the mortgage or note. No notice. No opportunity to cure an alleged default. A fraudulent foreclosure. Abuse of the mortgage foreclosure process. Unbelievable! The damage from this conspiratorial act is extensive. GMACM is liable for its act, and GMAC's acts in this conspiratorial action. Punitive damages are allowed. 100 times has been held reasonable by the Illinois Supreme Court.

The value of the Eriksen's home: $475,000.00
Property rental and living expenses: $56,500.00
Economic losses due to stress: $525,000.00
Emotional Distress (Eriksens): $250,000.00
Emotional Distress (Children): $750,000.00

Punitive Damages: To be determined by jury or judge

COUNT X    – In Illinois, the tort of in-concert liability does not require an agreement between parties like civil conspiracy. One only need show that some act done by some party aided another party in its action. In this case, the Eriksens can show GMACM's foreclosure action deprived the Eriksens of the process provided for in their agreement with GMAC. That deprivation was purposeful, and designed to fraudulently use the foreclosure process to deprive them of their home. GMACM participated in GMAC's act of deprivation, and GMAC participated in GMACM's acts. Punitive damages available.

The value of the Eriksen's home: $475,000.00
Property rental and living expenses: $56,500.00
Economic losses due to stress: $525,000.00
Emotional Distress (Eriksens): $250,000.00
Emotional Distress (Children): $750,000.00

Punitive Damages: To be determined by jury or judge

COUNT XI    – In Illinois, aiding and abetting is a separate tort remedy for losses suffered by a party due to another party's aiding of a third party's acts, i.e. GMACM aided and abetted GMAC in its acts against the Eriksen. Punitive Damages available.

The value of the Eriksen's home: $475,000.00
Property rental and living expenses: $56,500.00
Economic losses due to stress: $525,000.00
Emotional Distress (Eriksens): $250,000.00
Emotional Distress (Children): $750,000.00

Punitive Damages: To be determined by jury or judge

COUNT XII    – In Illinois, punitive damages must be listed as a separate count, and approved on the finding by a court of willful harms caused. The Eriksens will seek a finding of willfulness against GMACM for its acts.

The value of the Eriksen's home: $475,000.00
Property rental and living expenses: $56,500.00
Economic losses due to stress: $525,000.00
Emotional Distress (Eriksens): $250,000.00
Emotional Distress (Children): $750,000.00

Punitive Damages: To be determined by jury or judge

**Proof of Claims:**

1. Tax records. (Loss of income by REriksen.)
2. Public records. (No assignment of mortgage and note. Sale of home by GMACM.)
3. Court records. (No assignment of mortgage and note, and proof of misuse and wrongful use of the foreclosure process, and fraud before the court, and on the Eriksens by GMACM.)
4. Hospital records, i.e. admissions, prescriptions, length of stay, etc. (emotional damages for 3+ years, and the necessity of ongoing treatment by a competent physician and physiatrist for REriksen, JEriksen, and the Eriksens 3 daughters, all of whom are currently in treatment.)
5. Physician testimony. (Several doctors will testify as to the emotional and physical harms done to the Eriksens as a direct and proximate result of GMACM's foreclosure on their home. That includes the loss of consortium, and alienation of affection.
6. Witness testimony. Numerous witnesses, including pastors, relatives, neighbors and friends, to testify on behalf of the Eriksens as to the detrimental effect of the foreclosure on their family

For the sake of our family, we are willing to settle, even though, it is probably better for us to go to trial and receive a much greater amount from a jury. We will be exercising our right to a jury trial, and will be seeking a jury trial in Chicago, IL. We believe our case is strong, and the evidence supporting our claims are strong. But, we think for everyone's sake a reasonable settlement without costly legal fees is better for all involved. We are willing to settle for the amount proposed - $300,000.00. This is far less than the $2,000,000.00 we claimed, and ½ of the $600,000.00 allowed under the Plan. We are being reasonable. We ask the same of GMACM.

If you have any questions concerning this proposal, please feel free to contact me/us at 630-688-1162.

Sincerely,


Ronald A. Eriksen
Julie A. Eriksen

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| IN RE: RESIDENTIAL CAPITAL, LLC, et al., | ) ) ) |  |
| Debtors, | ) ) | Case No. 12-12020 (MG) |
| In the Matter of Order Estimating Claims and Establishing Disputed Claims Reserve: RONALD A. ERIKSEN and JULIE A. ERIKSEN | ) ) ) ) | Honorable Martin Glenn |
| Claimants. | ) |  |

### NOTICE OF MOTION

PLEASE TAKE NOTICE, that on September 25, 2014, Ron and Julie Eriksen filed before the Honorable Martin Glenn, or any Judge sitting in his stead, in room 501, or any other room so designated, in the United States Bankruptcy Court, Southern District of New York, One Bowling Green, New York, New York 10004 and his "CLAIMANTS REPLY TO RESCAP BORROWER CLAIMS TRUST RESPONSE TO NOTICE OF PETITION FOR WITHDRAWAL AND REQUEST FOR ABSTENTION AND STAY," a copy of which is attached hereto and hereby served upon you.

Dated:    September 25, 2014

Respectfully submitted:

/s/ Ronald A. Eriksen

Ron Eriksen
443 Jamestown Ct.
Aurora, IL 60502



RECEIVED
SEP 26 2014
U.S. BANKRUPTCY COURT, SDNY

## CERTIFICATE OF SERVICE

The undersigned, a non-attorney, hereby certifies under penalty of perjury pursuant to 28 USC 1746 that on September 25, 2014, he duly served (or caused to be served) the above described "CLAIMANTS REPLY TO RESCAP BORROWER CLAIMS TRUST RESPONSE TO NOTICE OF PETITION FOR WITHDRAWAL AND REQUEST FOR ABSTENTION AND STAY" by Hand Delivery or Ordinary First Class Mail upon the persons on the attached service list.

/s/ Ronald A. Eriksen
Ronald A. Eriksen

### Service List

United States Bankruptcy Court
Clerk of Court
One Bowling Green
New York, NY 10004

Honorable Martin Glenn
United States Bankruptcy Court
One Bowling Green, Room 501
New York, NY 10004

ResCap Claims Trust
Attn:  Norman S. RosenBaum
         Jordan A. Wishnew
Morrison & Foerster, LLP
250 West 55th St.
New York, NY 10019

Office of US Trustee, N.Y.S.D.
Attn:  Linda A. Rifkin
         Brian S. Masumoto
U.S. Federal Office Building
201 Varick St.
Suite 1006
New York, NY 10014

ResCap Borrower Claims Trust
Attn:  Daniel J. Flanigan
Polsinelli, P.C.
900 Third Ave.
21st Floor
New York, NY 10022