IN THE UNITED STATES BANKRUPTCY COURT – MIDDLE DISTRICT OF FLORIDA-TAMPA DIVISION
---------------------------------------------------------------X  AUGUST 13, 2014

IN THE MATTER OF CHAPTER 13
PATRICK FARRELL **CASE NO: 9-14-BK-05989-FMD**  p.farrell13@yahoo.com
DEBTOR  239-558-5729

**UNITED STATES BANKRUPTCY COURT -SOUTHERN DISTRICT OF NEW YORK**

| IN RE: <br> RESIDENTIAL CAPITAL LLC, et al <br> PATRICK FARRELL PROOF OF CLAIM # 1353 | Chapter 11 <br> **Case No. 12020- [ALG]** <br> **and 12-12032** <br> Jointly Administered] |

**IN THE CIRCUIT COURT, 20TH JUDICIAL DIST FOR LEE CO. FLORIDA**

| PATRICK LORNE FARRELL©, <br> Plaintiff, vs. G.M.A.C.; WELLS FARGO; <br> IMPAC SECURED ASSETS, et al <br> Defendants | **CASE NO.07-CA-14942** |
| WELLS FARGO, as trustee.......... V. <br> PATRICK FARRELL | **CASE 07-CA-16767** |

**UNITED STATES DISTRICT COURT-MIDDLE FLORIDA -FORT MYERS**

| PATRICK LORNE FARRELL©, <br> Plaintiff,   vs. <br> STATE OF FLORIDA, et al <br> Defendants | **CASE  2:13-cv-140-FTm-29DNF** |

**IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA SECOND DISTRICT, POST OFFICE BOX 327, LAKELAND FL.33802-0327**

CASE NO. :2D14-2139
L.T. No. :07-CA-14942

Patrick Lorne Farrell     v.     GMAC,WELLS FARGO
Appellant / Petitioner            Appellee / Respondents

NOTICE OF FRAUD UPON THE COURT

MOTION TO VACATE SUMMARY JUDGMENT AND CASE 07-CA-14942

NOTICE OF INTENTION TO INITIATE LITIGATION

**SUMMARILY**, the purchase of GMAC/WELLS FARGO assets by OCWEN LOAN was stopped by the NY Dept. of Fin. Serv. FEB 6, 2014, so the summary judgment made in case 07-CA-14942 for $450,000 for OCWEN was a Fraud, perpetrated by judge Sherra Winesett, atty. Monica Wilson of BRADLEY-ARANT and Nathan Schwartz of Robertson/Anschutz.

RECEIVED SEP 26 2014 U.S. BANKRUPTCY COURT, SDNY

In response to this illegal, criminal summary judgment motion which included a fraudulent Affidavit, naming OCWEN as successor to GMAC, and acting on behalf of WELLS FARGO as trustee of IMPAC MORTGAGE HOLDINGS-2005-6, who was not the plaintiff in case 07-CA-16767, it was IMPAC SECURED ASSETS-2005-2, and the illegal granting of same, I Patrick Farrell, Pro Se acting with Power of Attorney as of JAN 2008 Contract, paid out costs for an Appeal to the 2nd DCA, a Bankruptcy case and various other related costs, all to counteract a blatant Fraud by parties herein.

**Sept. 21,2014** a class action lawsuit against OCWEN LOAN SERVICING was filed in the Virgin Islands District Court by the law office of Douglas Capdeville-340-773-7275. Therein from paragraph 66 to 83, claims are made that OCWEN did not purchase the Wells Fargo assets, thereby voiding the summary judgment at issue here, as it was made illegally.

**FEB 6,2014**, the New York Dept. of Fin.Serv. stopped all OCWEN portfolio purchases.

**April 17, 2014** OCWEN CEO William Erbey made a statement that the "hold" on Ocwen was not limited to Wells Fargo, the NEW YORK DEPARTMENT OF FINANCIAL SERVICES placed on indefinite hold, the transfer of ALL MSR Mortgage Servicing Rights portfolios.

**"Until OCWEN resolves the New York hold, we are NOT acquiring any portfolios at all."**
APR 30,2014, despite being unable to, the lawyers and law firms involved proffered an illegal Affidavit and summary judgment motion to Lee Co. Fl. 20th circuit judge Sherra Winesett, who granted same Sum. Judg. for OCWEN for $450,000 for Wells Fargo.

**FLORIDA SUPREME COURT-** says Rule 1.110b voids case 07-CA-16767 for lack of standing as parties did not have standing at inception of case filed on DEC 7,2007

**U.S. ATTORNEY GENERAL-** case 0:13-cv-00464-JFA says "the trusts are empty" including the MBS herein, IMPAC SECURED ASSETS-2005-2, IMPAC MORT.HOLDINGS-2005-6.

**NEW YORK DFS-** voids the purchase of ALL MSR portfolios by OCWEN,with same herein

**WHEREFORE, I demand a**

- Vacating of the summary judgment in case 07-CA-16767, voiding all liens thereon;
- Granting costs fees and sanctions to be imposed upon parties, law firms, lawyers and judges;
- Granting of Farrell's UCC-1 Lien filed in 2008 for $400,000.
- Re-Instating of case 2:13-cv-140-JES-DNF;
- Any and all other relief this court deems just.

2

Additionally, I have a Whistleblower complaint and case # 2014-007870 filed with the IRS, and I will do all I can to fine or put people in jail like I did against ISKCON in 2001 with case 2:01-CV-417-FTM-29DNF- FARRELL VS. ISKCON, et al which resulted in ISKCON paying out $25 Million and people going to prison and the Jews in charge of the USA assets giving me a $40,000 spine surgery in June 2002, thank you very much. And in response to Qui Tam case 2-09-CV-16-FTM-29SPC filed on JAN 12,2009 Jacob Law through the Soc. Sec. Admin.gave me another $30,000 spine surgery in March 2014. Again Thank you very much.

Herein we have illegal MBS IMPAC SECURED ASSETS-2005-2 worth $1.9 BILLION, and IMPAC MORTGAGE HOLDINGS-2005-6 worth $1.7 BILLION, both illegal REMIC's and both subject to back taxes and fines for NOT being tax exempt, just like ISKCON, who molested children for decades which voids IRS 501C3 status.

What is the profit and therefore the tax on $3.6 Billion? What is my reward portion?

Lynn Syzmoniak got $18 Million, and Brad Birkenfeld got $100 Million AFTER my complaints which were the same as theirs.

## CERTIFICATE OF SERVICE

**I hereby certify that a true and correct copy has been sent to;**

1. SECT. JACOB LEW-Department of the Treasury-1500 Pennsylvania Avenue, NW Washington, D.C. 20220
2. U.S. BANKRUPTCY COURT-801 N. Florida Avenue-Suite 555-Tampa, Florida 33602
3. Florida Supreme Court-500 South Duval Street-Tallahassee, Florida, 32399-1927
4. 2ND DIST COURT OF APPEAL POST OFFICE BOX 327 LAKELAND,FL.33802-0327
5. U.S. DISTRICT COURT-2110 FIRST ST. #2-194-FT.MYERS, FL. 33901
6. LEE CO. CLERK OF COURT-PO BOX 310-FT.MYERS,FL.33902
7. Martin Glenn, United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, NY 10004-1408;
8. ROBERTSON ANSCHUTZ-6409 CONGRESS AVE. #100-BOCA RATON, FL. 33487
9. BRADLEY-ARANT -100 N. TRYON ST #2690-CHARLOTTE,N.C. 28202
10. OFFICE OF THE A.G.-501 E. KENNEDY BLVD. #1100-TAMPA,FL.33602-5242
11. Director-Commercial Litigation Branch-Fraud Section-United States Department of Justice-601 D Street, N.W.-Suite 9002-Washington, DC 20004
12. INTERNAL REV SERV-1973 N.RUION WHITE BLVD. MS 4110-OGDEN,UTAH 84404

## VERIFICATION

I, PATRICK LORNE FARRELL©, *Sui Juris*, hereby verify, under penalty of perjury, under the laws of the United States of America, without the "United States" (federal government), that the above statement of facts and laws is true and correct, according to the best of My current information, knowledge, and belief, so help me God, pursuant to 28 U.S.C. 1746(1).

WITHOUT PREJUDICE-U.C.C.-1-308

*[signature]*

Patrick Lorne Farrell as Trustee for the

**PATRICK FARRELL IRREVOKABLE LIVING TRUST**

in Propria Persona-Attorney In Fact-Sovereign-Secured Party Creditor-

signed "without the united states" and without prejudice/UCC 1-308-UCC-1

Filing # 2007-356-2344-8 [12/22/07]-Wash. St.

2904 NW14th Terrace-Cape Coral, Florida-[33993-9998]-D.M.S.R. SEC.112.32

**SEPTEMBER 23, 2014**

# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| ELM TREE INVESTMENT L.P., Individually and on Behalf of All Others Similarly Situated, | Civil Action No. |
| | CLASS ACTION |
| Plaintiff, | COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS |
| vs. | |
| OCWEN FINANCIAL CORPORATION, WILLIAM C. ERBEY, RONALD M. FARIS, JOHN V. BRITTI and BARRY N. WISH, | |
| Defendants. | DEMAND FOR JURY TRIAL |

## COMPLAINT

Plaintiff Elm Tree Investments L.P. ("plaintiff") alleges the following based upon the investigation of plaintiff's counsel, which included a review of U.S. Securities and Exchange Commission ("SEC") filings by Ocwen Financial Corporation ("Ocwen" or the "Company"), as well as securities analysts' reports and advisories about the Company, and press releases, media reports and other public statements issued by or about the Company. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a securities fraud class action on behalf of all purchasers of the common stock of Ocwen between October 3, 2012 and August 11, 2014, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act") against Ocwen and certain of its senior executives for violations of the federal securities laws.

69. On January 22, 2014, Ocwen announced that it had agreed to purchase Wells Fargo Bank N.A.'s ("Wells Fargo") MSRs and related services advances relating to a portfolio of 184,000 loans with an unpaid principal balance of $39 billion for $2.7 billion.

70. However, on February 6, 2014, citing the Company's potential inability to handle *any* additional loan servicing, the NY DFS indefinitely placed Ocwen's $39 billion acquisition of Wells Fargo's MSRs on hold. As would be later reported by the *National Mortgage News* on February 10, 2014, "Ocwen ha[d] been telling analysts that it expected to acquire about $400 billion in additional servicing rights in the next 12 to 18 months," a "strategy ... now being upended by Lawsky."

71. On this news, the price of Ocwen common stock fell another $1.82 per share, closing at $41.38 per share on February 6, 2014, on unusually high trading volume of more than 13.4 million shares traded.

72. On February 11, 2014, the price of Ocwen stock declined from its close of $41.85 per share the prior day to close at $38.07 per share, on unusually high trading volume of more than 8.8 million shares traded, following the publication of a *Financial Times* exposé disclosing that mortgage-backed securities investors such as PIMCO and BlackRock were considering taking legal action against Ocwen for any forced reductions in principle they suffered as a result of Ocwen's misconduct. *If these legal actions were successful, they would have recourse against Ocwen for the $2 billion in principle reduction they faced under the 2013 Consent Judgment.*

73. The price of Ocwen stock fell further on unusually high trading volume of more than 3 million shares traded on Tuesday, February 18, 2014, when the Company

disclosed that it would indefinitely postpone its previously announced purchase of MSRs from Wells Fargo. The stock closed at $36.90 per share, down nearly $1 per share from its close of $37.85 per share on Friday, February 14, 2014. *This hindering of the Company's ability to obtain additional market share reduced the Company's future profitability in the view of investors.* For example, stock analyst Sterne Agee reduced its price target on Ocwen by $15 on this news.

74.    Then, on Wednesday, February 19, 2014, the price of Ocwen stock declined further when the CFPB's deputy director, Steve Antonakes, sharply criticized the entire third-party mortgage servicing industry, stating that firms were still treating consumers poorly, despite years of pressure from government officials to improve their behavior. The CFPB was threatening to crack down on the "shell games" it charged were being played amongst servicers, "where the first servicer says the transfer ended all of its responsibility to consumers and the second servicer says it got a data dump missing critical documents." The comments were perceived by the market to be directed at Ocwen, which CFPB data demonstrated had received more consumer complaints in 2012 and 2013 than any other third-party mortgage servicer.

75.    In a February 26, 2014 letter sent to Ocwen's general counsel, Timothy Hayes, NY DFS Superintendent Lawsky charged Ocwen with misstating Ocwen's "arms-length . . . relationship" with HLSS and other affiliates and potentially harming borrowers and pushing homeowners "unduly into foreclosure," and demanded detailed information about the financial interests of Ocwen officers, directors and employees in the various affiliated companies, and documentation showing the nature and extent of business

relationships between Ocwen and those other firms. The letter stated in pertinent part as follows:

> *The Department's ongoing review of Ocwen's mortgage servicing practices has uncovered a number of potential conflicts of interest between Ocwen and other public companies with which Ocwen is closely affiliated. Indeed, the facts our review has uncovered to date cast serious doubts on recent public statements made by the company that Ocwen has a "strictly arms-length business relationship" with those companies. We are also concerned that this tangled web of conflicts could create incentives that harm borrowers and push homeowners unduly into foreclosure.* As such, we are demanding additional information on these issues as part of our review.
>
> Pursuant to the December 4, 2012 Consent Order between Ocwen and the Department, we have engaged an independent on-site compliance monitor at Ocwen to conduct a comprehensive review of Ocwen's servicing operations. *It is in the course of the monitorship that we uncovered these potential conflicts between and among Ocwen, Altisource Portfolio Solutions, S.A. ("Altisource Portfolio"), Altisource Residential Corporation, Altisource Asset Management Corporation, and Home Loan Servicing Solutions Ltd. (together, the "affiliated companies"), all of which are chaired by William C. Erbey, who is also the largest shareholder of each and the Executive Chairman of Ocwen.*
>
> As you recall, Altisource Portfolio's Chief Risk Officer was removed as a result of the Monitor's review. *During its review, the Monitor discovered that Ocwen's Chief Risk Officer also served as the Chief Risk Officer of Altisource Portfolio, and reported directly to Mr. Erbey in both capacities. This individual seemed not to appreciate the potential conflicts of interest posed by this dual role, which was particularly alarming given his role as Chief Risk Officer. He told the Monitor that Ocwen paid his entire salary, but he did not know and had apparently never asked which company paid his risk management staff.* Indeed, it remains unclear whether Altisource Portfolio paid any compensation for the Chief Risk Officer's services. Although he has since been removed as Altisource Portfolio's Chief Risk Officer, *his and Ocwen's failure to affirmatively recognize this conflict demonstrates that the relationship between Ocwen and the affiliated companies warrants further examination.*
>
> Presently, Ocwen's management owns stock or stock options in the affiliated companies. *This raises the possibility that management has the opportunity and incentive to make decisions concerning Ocwen that are intended to benefit the share price of affiliated companies, resulting in harm to borrowers, mortgage investors, or Ocwen shareholders as a result.*[1]

- 47 -

> [1] *The Department's review of Ocwen's mortgage servicing practices has also found that Ocwen relies extensively on affiliated companies for its information management system (from the programming of comment codes to functioning as Ocwen's IT help desk), as well as procurement of third party services. This further demonstrates the interconnected nature of Ocwen's relationship with the affiliated companies.*

76. On this news, the price of Ocwen stock plummeted almost $3 per share to close at $36.76 per share on February 26, 2014, on extremely high trading volume of more than 12.7 million shares traded. Beyond the concerns about independence raised by the NY DFS, analysts feared, among other things, that the Company's loan servicing business model did not offer enough compensation to provide the "level of individual attention" the new regulations would require.

77. As reported by *Bloomberg* on February 27, 2014, "[a]s of mid-February, American homeowners had filed more than 9,000 mortgage-related complaints against Ocwen – the highest number of any non-bank servicer," citing data from the CFPB. *Bloomberg* also reported that "[i]n January [2014], the Treasury Department issued a report on the performance of servicers in the government's Home Affordable Modification Program that started in 2009," noting that "Ocwen was responsible for 79,156 loan modifications that later defaulted, the highest of any servicer," and that "Ocwen's 30 percent redefault rate was the third highest."

78. On February 27, 2014, the Company issued a press release announcing its Q4 and fiscal 2013 financial results. Rather than the $0.81 earnings per share ("EPS") on revenues of $562.08 million defendants had led the investment community to expect for Q4 2013 based on their bullish statements, the Company reported EPS of $0.74 – a $0.07 miss – on revenues of just $556 million. Attributing the miss to the Company's inability to

- 48 -

integrate the large MRS portfolios it had gobbled up between 2011 and early 2014, the release quoted defendant Faris as stating in pertinent part that "[c]onsolidation" was needed to "allow [Ocwen] to substantially lower expenses and reduce the operating complexities of running multiple platforms."

79. On March 3, 2014, the Company filed its annual report on Form 10-K with the SEC for fiscal 2013, signed by each of the Individual Defendants and certified by defendants Britti and Faris under the Sarbanes Oxley Act of 2002 as to the veracity of its contents and the Company's effective internal controls. The Form 10-K stated in pertinent part as follows:

> Our business is currently dependent on many of the services and products provided under these long-term contracts which include renewal provisions. *We believe the rates charged under these agreements are market rates as they are materially consistent with one or more of the following: the fees charged by Altisource to other customers for comparable services and the rates Ocwen pays to or observes from other service providers.*

80. Then, on April 17, 2014, HLSS issued a press release and held a conference call to discuss its Q1 2014 financial results. During the conference call, defendant Erbey disclosed that the NY DFS's indefinite hold on Ocwen's acquisition of MSRs was not limited to Wells Fargo – rather the NY DFS had placed on indefinite hold the transfer of all large MSR portfolios. During the conference call, Erbey stated that "[u]ntil we resolve – this relates to Ocwen – until we resolve New York State we are not acquiring any new [MSR] portfolios at all. As a matter of fact, the entire market quite frankly is just – nothing is really being put out for bid right now. So the whole market has basically stopped until that gets resolved."

- 62 -

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Respectfully Submitted,
**Law Offices of Douglas L. Capdeville, P.C.**

DATED: September ____, 2014     _____/s/Douglas L. Capdeville_____
**BY: DOUGLAS L. CAPDEVILLE, ESQ.**
Attorney for Plaintiff
*V.I. BAR #284*
2107 Company St. - Lot #4
P.O. Box 224191
St. Croix, USVI 00822
Tel: (340) 773-7275
vjdefense@capdevillelaw.com

# Supreme Court of Florida

SEPTEMBER 7, 2014

CASE NO. SC14-1580

Lower Tribunal No. 2D14-2139

362007CA014942A001CH

| PATRICK LORNE FARRELL | VS | G.M.A.C. WELLS FARGO |
|---|---|---|
| Petitioner | | Respondent |

## NOTICE OF FILING OF EVIDENCE TO SUPPORT PETITION

TAKE JUDICIAL NOTICE of attachments that reveal that OCWEN had no standing to move for summary judgment in case 07-ca-14942-16767, as they were stopped from purchasing the assets related to the case and judgment.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy has been sent to;

2ND DCA-POST OFFICE BOX 327-LAKELAND,FL. 33802-0327

NATE SCHARTZ-6409 CONGRESS AVE. #100-BOCA RATON,FL. 33487

BRADLEY-ARANT -100 N. TRYON ST #2690-CHARLOTTE,N.C. 28202

LEE CO. CLERK OF COURT-PO BOX 310-FT.MYERS, FL. 33902

1

## CERTIFICATE OF COMPLAINCE

I hereby certify that the font requirements of Fla. R App P 9.210[a][2] have been complied with of the type size and style set forth in this initial brief is 14 point Times New Roman which contains 10 characters per inch.

WITHOUT PREJUDICE-U.C.C.-1-308

_____

Patrick Farrell-in Propria Persona-Attorney In Fact-Sovereign-Secured Party Creditor-signed "without the united states" and without prejudice/UCC 1-308-UCC-1 Filing # 2007-356-2344-8 [12/22/07]-Wash. St.- 2904 NW14th Terrace- Cape Coral, Fl.-33993-D.M.S.R. SEC.112.32-SEPTEMBER 23, 2014

2