1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 12-12020-mg

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


RESIDENTIAL CAPITAL, LLC, et al.,


          Debtors.

- - - - - - - - - - - - - - - - - - - -x


          United States Bankruptcy Court

          One Bowling Green

          New York, New York


          September 30, 2014

          10:04 AM




B E F O R E:

HON. MARTIN GLENN

U.S. BANKRUPTCY JUDGE

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

1

2    Doc# 7392 Adjourned Hearing RE: Motion for Relief from Stay.

3

4    Hearing RE: Withdrawal Motions Filed by Julie and Ron Eriksen.

5

6    (CC: Doc# 7188) Adjourned Hearing RE: Motion for Omnibus

7    Objection to Claim(s) / ResCap Borrower Claims Trusts Sixty-

8    Ninth Omnibus Objection to Claims (No Liability Borrower

9    Claims).  Hearing RE: Claims of Maurice Sharpe and Otis Collier

10   Adjourned to 10/30/2014 at 10:00 am. This hearing will be going

11   forward re: Eriksen claim(s).

12

13   Status Conference RE: Memorandum Opinion and Order Granting in

14   Part and Denying in Part Motion for Reconsideration. [Docket

15   No. 6785]

16

17

18

19

20   Transcribed by:  Sharona Shapiro

21   eScribers, LLC

22   700 West 192nd Street, Suite #607

23   New York, NY 10040

24   (973)406-2250

25   operations@escribers.net

3

1

2   A P P E A R A N C E S :

3

4   MORRISON & FOERSTER LLP

5        Attorneys for ResCap Borrower Claims Trust

6        250 West 55th Street

7        New York, NY 10019

8

9   BY:   JORDAN A. WISHNEW, ESQ.

10        JAMES A. NEWTON, ESQ.

11

12

13   BALFE & HOLLAND, PC

14        Attorneys for HSBC

15        135 Pinelawn Road

16        Suite 125 North

17        Melville, NY 11747

18

19   BY:   LEE E. RIGER, ESQ.

20

21

22

23

24

25

1

2  LAW OFFICES OF HOWARD W. RACHLIN

3         Attorney for Lucienne Lombard

4         12-41 Queens Boulevard

5         Suite 201

6         Forest Hills, NY 11375

7

8  BY:   HOWARD W. RACHLIN, ESQ.

9

10

11  JEFFREY B. AUSTIN, P.C.

12         Attorney for Monty and Heather Allen

13         211 South Cedar Street

14         Florence, AL 35630

15

16  BY:   JEFFREY B. AUSTIN, ESQ. (TELEPHONICALLY)

17

18

19  ALSO PRESENT TELEPHONICALLY:

20  RONALD ERIKSEN, PRO SE

21

22

23

24

25

1                    P R O C E E D I N G S

2          THE COURT:  All right.  Please be seated.  We're here

3   in Residential Capital, number 12-12020.

4          Who's going to proceed for the Trust?

5          MR. RIGER:  Good morning, Your Honor.  For the movant,

6   HSBC, Lee Riger, from the firm of Balfe & Holland.

7          THE COURT:  Okay.  We'll get the other appearances.

8          MR. RACHLIN:  Howard Rachlin for Lucienne Lombard.

9          MR. NEWTON:  Your Honor, James Newton, for the ResCap

10  Liquidating Trust.

11         As you may have suspected, this is -- the first item

12  on the agenda is a motion of HSBC Bank USA, Inc. for relief

13  from the automatic stay with respect to an action pending in

14  New York State court.  I am pleased to let you know that, while

15  we were sitting here, I think we've agreed upon a form of

16  order, which would be the form of order that was attached to

17  our response, subject to a few revisions that we just agreed

18  upon this morning.

19         THE COURT:  All right.  Why don't you tell me what the

20  additional provisions are?

21         MR. NEWTON:  Sure.  The additional revisions will be

22  in paragraph 4 to add "plaintiff" after the first reference to

23  movant and after the second reference to the movant, and to

24  also make clear, in that paragraph 4, that nothing contained in

25  the order shall prejudice any of the parties' rights to contest

1   any allegations -- factual allegations contained in any of the

2   pleadings, not just the motion.  And then also to make explicit

3   that HSBC not only will not assert new claims against RFC or

4   any of the debtors, but it won't pursue a -- kind of an omnibus

5   cross-claim that was contained in its answer in the underlying

6   action.

7            THE COURT:  All right.  Other counsel want to be

8   heard?  You can go up to the microphone.

9            MR. RACHLIN:  Yes, Your Honor.

10           THE COURT:  You have to identify yourself for the

11  record.

12           MR. RACHLIN:  Howard Rachlin.  Just one item counsel

13  inadvertently left out.  In paragraph 4, in the first and third

14  lines, where there's a list of movant/debtor for ResCap

15  Liquidating Trust, "plaintiff" is to be added on both of those

16  places, as not constituting an admission nor precluding it from

17  contesting any of the allegations in the motion papers in the

18  state court action.

19           THE COURT:  All right.  Mr. Newton, do you agree with

20  that?

21           MR. NEWTON:  Yes.

22           THE COURT:  All right.  Anybody else wish to be heard?

23           MR. RIGER:  No, Your Honor, I agree with that.

24           THE COURT:  All right.  So subject to seeing the final

25  form of the order, I'm going to grant the motion.  So --

1     MR. NEWTON:  We'll circulate the motion to the other

2     parties, and then we'll submit --

3         THE COURT:  That's fine.  Make sure it's in a form

4     that's satisfactory to each of you.  Okay?  Thank you very

5     much.

6         MR. NEWTON:  Thank you, Judge.

7         THE COURT:  I'm glad you were able to get it resolved.

8         Mr. Wishnew?

9         MR. WISHNEW:  Good morning, Your Honor.  Jordan

10    Wishnew, Morrison & Foerster, for the ResCap Borrower Claims

11    Trust.

12        The next matter on today's agenda is the petition and

13    withdrawal of Julie A. and Ronald A. Eriksen to the United

14    States District Court.  I believe Mr. Eriksen is on the phone,

15    so I will defer to him and then respond accordingly.

16        THE COURT:  Mr. Eriksen, are you on the phone?

17        MR. ERIKSEN:  Yes, Your Honor.

18        THE COURT:  All right.  Go ahead, Mr. Eriksen.

19        MR. ERIKSEN:  I'll correct my remarks accordingly, if

20    the Court has had an opportunity to read the pleadings?

21        THE COURT:  Yes, I have.

22        MR. ERIKSEN:  Thank you, Your Honor.  Essentially, the

23    debtor is waived or is estopped from arguing claims because of

24    their actions during the settlement negotiations.  They

25    contacted me -- as I informed the Court the previous time, I

1   had attempted to enter into negotiations, and they failed the

2   first time.  But they contacted me a second time and asked me

3   to provide them additional information to negotiate.  I've

4   submitted that to the Court.

5          They then came -- they -- without disputing the -- the

6   economics of it, they came back and they asked me to support my

7   original claim of two million dollars, and I did that.  I never

8   heard from them for about a week.  I called them, and -- and

9   asked if they were going to respond, and they said, no, they

10  weren't going to respond, and that there would be no

11  counterclaim.

12         They -- I told them, during this process, that it was

13  going to -- that it was costing me a lot of time to give them

14  the things they wanted.  They said, well, we can proceed with

15  the settlement without you providing the additional items.  And

16  I said, no, I'll do it; I just want to let you know that this

17  is, you know, a lot of work for me to do.

18         They've -- they've -- this is after that they had

19  tried to include me in -- in a group of people that were making

20  extreme claims before the Court, and they mischaracterized my

21  claims in that process.  Subsequently, they withdrew that

22  before the Court, but in the process, they really led me to

23  believe that they were going to settle and then didn't inform

24  me that they weren't going to settle.  And then I found out

25  about a week later.

1        Moving on from that, my claim stemmed -- to the second

2   point, which is my claim stemmed from wrongful foreclosure and

3   lack of assignment.  It's -- it's -- it is a judicially

4   established fact, in the trial court, and RESPA allows

5   emotional damage.  Emotional damages are considered actual

6   damages.

7        Their contention is that it should not be withdrawn

8   because of 28 U.S.C. 157(b)(2).  But the exact language says

9   that the liquidation or estimate -- estimation of contingent or

10  unliquidated personal tort claims is -- is -- is not permitted

11  by the bankruptcy court.  And further, in Stern v. Marshall,

12  when it -- read that verbatim.

13       While it looks that it's est -- it's obviously

14  established that the bankruptcy court has limits, in Stern v.

15  Marshall the court found that although we conclude that

16  157(b)(2)(C) permits the bankruptcy court to enter a final

17  judgment on these counterclaims, Article 3 in the Constitution

18  does not.  And in this case, 28 157(b)(2)(B) does not allow a

19  court to exercise jurisdiction over our personal injury tort

20  claims.  They're not -- because those are not core proceedings.

21  We have filed before the district court.  Debtor has entered

22  their -- two attorneys have appeared in the case, and they have

23  filed responses in the case.

24       Again, relying on the file documentation -- I didn't

25  honestly mean to take up a lot of the Court's time -- I would

1   just say that their misrepresentations of the Court's

2   jurisdiction is a very serious matter.  And I'd just bring

3   that, respectfully, to the Court's attention.  And you can

4   respect the counsel, but the fact remains that personal injury

5   tort claims aren't core claims, and if the case has been

6   properly filed in -- before the district court, because of the

7   personal injury tort claims, then I would object to counsel

8   arguing -- arguing against the -- the matters in which they're

9   estopped, due to waiver or estoppel.

10          THE COURT:  Mr. Eriksen, the Trust argues that your

11   failure to schedule your pre-petition claim that you're

12   asserting here, in your Chapter 7 bankruptcy case, has the

13   effect of estopping or barring you from proceeding with the

14   claims here.  Do you want to address that?

15          MR. ERIKSEN:  Yes, Your Honor.  The Federal Rules of

16   Civil Procedure are very clear in that they allow at least one

17   amendment of the -- of the -- of the claims filed before the

18   Court.  And that is the case in this matter.

19          THE COURT:  Mr. Eriksen, is your Chapter 7 bankruptcy

20   case closed now?

21          MR. ERIKSEN:  It -- it is closed.

22          THE COURT:  Okay.  All right.  Mr. Wishnew, do you

23   want to respond?

24          MR. WISHNEW:  Sure, Your Honor.  I'll try and address

25   the numerous points Mr. Eriksen raised.  First with regard --

1          THE COURT:  Just keep it brief.

2          MR. WISHNEW:  Absolutely, Your Honor.  With regards to

3    the allegations of bad faith, I would say that's a complete

4    mischaracterization.  The Borrower Trust was trying to

5    understand the elements of Mr. Eriksen's claim.  And frankly,

6    notwithstanding that he quantified the elements of the claim,

7    he never provided any sort of defense to the arguments that

8    we've proffered in objection to his claim.  That's why there

9    was no really substantive discussions.

10         In terms of misleading the Court, you know, the fact

11   of the matter is that we -- the Borrower Trust has retained the

12   ability to object to claims.  It properly included his claim.

13   And the basis for there not being a valid claim within the

14   sixty-ninth omnibus objection, Mr. Eriksen has never responded,

15   on the merits, to that objection.

16         With regards to the fact that this is a personal

17   injury claim that somehow takes him out of the 157(b)(2) core

18   jurisdiction of the Court, this is simply a purported RESPA

19   violation that he tries to tie to alleged personal injury

20   claims.  This is nothing more than just a possible, possible

21   breach of contract or contract-related claim.

22         With regards to amendment of claims, I don't recall

23   the logic there.  The case was closed.  He got his discharge in

24   2012.  He's never reopened his bankruptcy to assert the claims.

25   And if he did reopen his bankruptcy, the claims should be

1    brought by a bankruptcy trustee, not by Mr. Eriksen personally.

2            With regards to anything else, Your Honor, I believe

3    our papers are papers are pretty thorough in addressing the

4    numerous objections and arguments.  So I'll stand on that.

5            THE COURT:  Let me ask you, Mr. Wishnew, in Mr.

6    Eriksen's September 15th, 2004 letter to Jessica Errit (ph.) at

7    Morrison & Foerster, he attached his papers.  And while the

8    letter says "for settlement purposes only", he's obviously

9    provided it to the Court.

10           MR. WISHNEW:  Um-hum.

11           THE COURT:  And in the letter, he goes through the

12   twelve counts of his -- what he considers the twelve counts of

13   his claim, and addresses, with respect to each, the relief that

14   he's seeking.

15           And with respect to Count 2, the RESPA claim, he

16   indicates he's seeking emotional distress damages, among other

17   things.

18           With respect to Count 4, the negligence claim, he

19   indicates that he's seeking emotional damages.

20           With respect to Count 5, the Consumer Fraud And

21   Deceptive Practices -- the Illinois Consumer Fraud And

22   Deceptive Practices Act, he identifies emotional distress to he

23   and his wife and his children.

24           In Count 6, the FDCPA claim, he identifies emotional

25   distress again.

1          In Count 7, an Illinois common law claim, he addresses

2    emotional distress.

3          In Count 8, common law fraud, he addresses -- he

4    identifies emotional distress.

5          In Count 9, fraud, he identifies emotional distress.

6          In Count 10, Illinois state law, he refers to this

7    concert liability; he identifies emotional distress.

8          In Count 11, adding and abetting, he identifies

9    emotional distress.

10          In Count 12, punitive damages under Illinois law, he

11    addresses emotional distress.

12          So it isn't simply, in his RESPA claim, that he's

13    identified his request to -- for relief as including

14    noneconomic damages.  Obviously, with respect to the RESPA

15    claim, in my opinion concerning the max (ph.) claim, which I

16    concluded that noneconomic losses are potentially recoverable

17    for a RESPA violation.  But here there are a host of claims

18    that the Eriksens have asserted state law, as well as federal

19    law claims, where they at least assert that they're entitled to

20    recover noneconomic loss.

21          So what is your view, Mr. Wishnew, as to whether the

22    Court can determine, as a matter of law, whether the Eriksens

23    have stated claims for relief, even if those claims purport to

24    assert damages for noneconomic losses?

25          MR. WISHNEW:  This Court clearly has the right to, in

1  the first instance, determine the viability of the claim.  The

2  fact that there are suggestions within the claim that there are

3  noneconomic damages, purportedly amounting to emotional

4  distress or other emotional damages, does not deprive this

5  Court of the ability, in the first instance, to adjudicate

6  whether there's actually a valid, legal basis for a claim that

7  would entitle Mr. Eriksen to then prove up that claim before

8  the Court.

9          THE COURT:  So if I understand your argument

10  correctly, under Section 157(b)(2)(B), which does not permit --

11  which obviously defines, as a core claim, any claims against

12  the estate, it goes on, in (b)(2)(B), to basically say that the

13  Court may not liq -- the court can't -- the exact quote is "but

14  not the liquidation or estimation of contingent or unliquidated

15  personal injury tort or wrongful death claims against the

16  estate for purposes of distribution in a case under Title 11".

17  So I take it you would agree that if Mr. -- if the Eriksens had

18  stated claims that were for personal injury, tort or wrongful

19  death, that the bankruptcy court could not liquidate or

20  estimate the claims.  Your position is that the Court can

21  determine whether a creditor has properly stated a claim.  Is

22  that correct?

23          MR. WISHNEW:  That's correct, Your Honor.

24          THE COURT:  And under 157(b)(5), which says that "the

25  district court shall order that personal injury, tort and

1   wrongful death claims shall be tried in the district court" --

2   and it goes on; I'll stop the quote -- that is limited, by its

3   express language, to the trial of the case.

4            MR. WISHNEW:  That's correct, Your Honor.

5            THE COURT:  And doesn't preclude a bankruptcy judge,

6   certainly, from ruling on a motion to dismiss.

7            MR. WISHNEW:  That's correct, Your Honor.

8            THE COURT:  And essentially, your objection to the

9   claim is the equivalent of a motion to dismiss the claim for

10  failure to state claims.

11           MR. WISHNEW:  Exactly, Your Honor.

12           THE COURT:  All right.  Mr. Eriksen, do you want to

13  respond?

14           MR. ERIKSEN:  Well, just that we -- that the Court is

15  prohibited from ruling on liquidation or unliquidation of the

16  claim and that -- and that the initial claim is allowed to be

17  amended and has been.  And so these pleadings come in as if

18  they were done from the get-go.

19           THE COURT:  All right.  I'm going to take the matter

20  under submission.

21           MR. WISHNEW:  Thank you, Your Honor.

22           THE COURT:  And I will enter an appropriate order.

23           I've seen your -- I guess the motion to withdraw the

24  reference is pending before Judge Furman --

25           MR. WISHNEW:  That's correct, Your Honor.

1    THE COURT:  -- in the district court.  And I looked at

2    the docket of that matter.  Has Judge Furman scheduled any

3    conferences in the matter?

4    MR. WISHNEW:  Not yet, Your Honor.  Judge, I have just

5    seen the assignments of the district court judge in the

6    magistrate.

7    THE COURT:  All right.  All right, thank you.  All

8    right.

9    MR. WISHNEW:  With regards to --

10    THE COURT:  Go ahead.

11    MR. WISHNEW:  -- just as a housekeeping matter, have

12    we -- even though --

13    THE COURT:  Oh, as to everybody else.  This is your

14    omnibus objection.  Is that what you were going to --

15    MR. WISHNEW:  Right, since there is a pending omnibus

16    sixty-nine, as to Mr. Eriksen's claim, is also on the calendar,

17    I think, in many respects, we've briefed it, but I'm not sure

18    if Mr. Eriksen wanted to address it any furhter.

19    THE COURT:  I don't understand your inquiry.

20    MR. WISHNEW:  Well, I'm just saying, given the

21    colloquy just now, I wasn't sure if that also addressed omni

22    sixty-nine, or if we want to separately move forward to that

23    right now.

24    THE COURT:  No -- yeah, let's move on to that right

25    now.

RESIDENTIAL CAPITAL, LLC, ET AL.                    17

1           MR. WISHNEW:  Okay.

2           THE COURT:  Mr. Eriksen, I mean, this really deals

3   with the merits of your claim.  That's one of the reasons I

4   asked.  The Trust's objection to your claim, there are two

5   prongs to it, one, that because you didn't schedule it in your

6   Chapter 7 bankruptcy, you're estopped from asserting it now.

7   And second, they argue you didn't state a claim, in any event.

8   But do you want to address those issues?

9           MR. ERIKSEN:  Well, they are -- as the Court said,

10  they are a state claim court.  However, the Court has agreed to

11  a stipulation, relative to the finding before it this morning,

12  and it's agreed upon by both of the parties, and it doesn't

13  contemplate at all any procedure on the omnibus claim.  And so

14  I -- I'm -- I haven't filed anything relative to it.  They've

15  told me previously that that was okay to file it later than the

16  deadline.  But we didn't proceed because of the stipulation and

17  the settlement negotiations.

18          THE COURT:  Go ahead, Mr. Wishnew.  I want to hear

19  from you.

20          MR. WISHNEW:  I'm not sure what Mr. Eriksen is

21  referring to.  The back and forth -- the communications with

22  our office was that the original response date to the sixty-

23  ninth omnibus objection was July, I believe, 25th.  Mr. Eriksen

24  contacted us asking for an extension.  We gave him until August

25  27th to file that response.

RESIDENTIAL CAPITAL, LLC, ET AL.                    18

1    Then on August 29th, we received the petition for

2  withdrawal that we just addressed.  There has never been a

3  response to file with regards to the merits of the objection in

4  omnibus sixty-nine.  Rather, Mr. Eriksen has chosen to try and

5  withdraw the matter to the district court.

6    So at this point, we never agreed that he was somehow

7  free not to file a response to the omnibus sixty-nine

8  objection.  Rather, we understood that he was not going to

9  address the merits and instead wanted the matter to be heard by

10  the Illinois district court or the Illinois bankruptcy court.

11    THE COURT:  Well, it's fully my -- just so we're

12  clear, it's fully my intention to go forward and adjudicate the

13  sixty-ninth omnibus objection.

14    MR. WISHNEW:  Thank you, Your Honor.

15    THE COURT:  Do you want to address that --

16    MR. WISHNEW:  Sure.

17    THE COURT:  -- the merits of that now?

18    MR. WISHNEW:  As Your Honor pointed out, the sum and

19  substance of the objection is that, one, Mr. and Mr. Eriksen

20  sought Chapter 7 bankruptcy protection in July 2011.  Within

21  their schedules, they did not include any affirmative claim or

22  cause of action against GMAC Mortgage.  They got their

23  discharge about six months later and the case closed.  So in

24  that regards, in the first instance, they -- any claims they

25  may have or asserted, as part of the proof of claim, they are

1   essentially estopped from pursuing at this point in time.

2           Secondly, with regards to the wrongful foreclosure

3   allegation, it seems to derive from the fact that there was

4   never a transfer of servicing rights from --

5           THE COURT:  Well, their argument is that there was and

6   that you had --

7           MR. WISHNEW:  Oh, I'm sorry, that's right.

8           THE COURT:  -- a notice.

9           MR. WISHNEW:  Correct.

10          THE COURT:  And your argument is that --

11          MR. WISHNEW:  It's --

12          THE COURT:  -- there was a merger -- essentially --

13          MR. WISHNEW:  There's a --

14          THE COURT:  -- GMAC Corporation -- Mortgage

15  Corporation merged with GMAC Mortgage LLC.

16          MR. WISHNEW:  That's right.

17          THE COURT:  And there was never a change in the

18  servicer.  That's --

19          MR. WISHNEW:  That's exactly right.

20          THE COURT:  -- their argument.

21          MR. WISHNEW:  It's simply a matter of change of

22  corporate forum.  As Your Honor noted, GMAC Mortgage Corp.

23  became GMAC Mortgage LLC.  The same entity, the same people

24  were servicing the mortgage from the change when it was Corp.

25  to when it was LLC.  There was never actually an assignment or

RESIDENTIAL CAPITAL, LLC, ET AL.                    20

1  transfer of servicing rights that would necessitate any sort of

2  notice being given under RESPA 12 U.S.C 2605.

3         THE COURT:  All right.

4         MR. WISHNEW:  So in that regards, the foreclosure was

5  entirely valid.  The foreclosure was litigated in the Illinois

6  courts.  The matter is closed in the Illinois courts.  And so,

7  at this point in time, we do not believe there is any sort

8  of -- any valid legal basis for a claim by either Mr. and Mr.

9  Eriksen against GMAC Mortgage.

10        THE COURT:  All right.  So as I understand it, with

11 respect to the -- and I'll give Mr. Eriksen a chance to

12 respond.  As I understand it, with respect to the sixty-ninth,

13 and you set this omnibus objection, and you included this in

14 the status on the agenda --

15        MR. WISHNEW:  Um-hum.

16        THE COURT:  -- that the sixty-ninth omnibus objection

17 is being adjourned with respect to the Maurice Sharpe claim

18 2079 and Otis Collier claim 5066.

19        MR. WISHNEW:  That's correct, Your Honor.

20        THE COURT:  And that you've -- you're in the process

21 of finalizing a stipulation with respect to Aubrey Manuel --

22 Manuel claim 5634.

23        MR. WISHNEW:  That's correct, Your Honor.

24        THE COURT:  And so we're going forward today solely

25 with respect to the Mr. Eriksen claims 5573 and 5580.

1          MR. WISHNEW:  Correct, Your Honor.

2          THE COURT:  All right.  All right.  Mr. Eriksen, do

3  you want to respond with respect to the merits of the Trust's

4  argument in the sixty-ninth omnibus objection?

5          MR. ERIKSEN:  Well, I object with going forward, but

6  of course if the Court is deciding to move forward over my

7  objection, then, yes, I'll respond.

8          THE COURT:  Mr. Eriksen, it's going forward.  Okay?

9  Now, if you have --

10          MR. ERIKSEN:  I'm --

11          THE COURT:  Hold on.  Stop.  If there's anything you

12  wish to add, in response to the debtors' sixty-ninth omnibus

13  objection, you must do so now.

14          MR. ERIKSEN:  Yes, I was -- I was just getting ready

15  to do that.

16          THE COURT:  Go ahead.

17          MR. ERIKSEN:  Okay.  There's no circumstance in which

18  one corporation can give its opportunity to have its rights

19  under a mortgage agreement to another corporation without

20  assignment.  The debtor's argument defies the facts and the

21  law.  One mortgage company provided me with the loan; another

22  mortgage company sued me for foreclosure.  There was no

23  assignment provided.  There was no -- there is no regulation

24  that provides the -- that excuses the necessity of an

25  assignment.  The fact that the assignment was not provided is a

1    judicial fact.  And the claims of the debtor to the contrary

2    are inconsistent with their own pleadings.

3            If there was a merger, that means that they're saying,

4    in effect, that the rights went from one organization to

5    another.  One corporation -- it's very black and white.  One

6    corporation made a mortgage; another corporation foreclosed on

7    the mortgage, and there is no precedent that allows for the

8    nonnecessity of an assignment.

9            THE COURT:  All right.  I'm going to take the matter

10   under submission --

11           MR. WISHNEW:  Okay.

12           THE COURT:  -- with respect to the sixty-ninth omnibus

13   objection.

14           MR. WISHNEW:  Very good, Your Honor.

15           THE COURT:  Thank you very much, Mr. Eriksen.

16           MR. ERIKSEN:  Thank you, Your Honor.

17           THE COURT:  You're either -- you're welcome to stay on

18   the line if you wish, or you can disconnect now.  Okay?

19           All right, Mr. Wishnew?

20           MR. WISHNEW:  Thank you, Your Honor.  The next -- the

21   balance of matters under claims objections have either been

22   adjourned or certificates of no objection have been submitted

23   to chambers, specifically with regards to items 5, 6, and 7,

24   the seventy-second, seventy-third, and seventy-fourth omnibus

25   objections to claims.  Certificates of no objection have been

1    submitted.

2          THE COURT:  All right.  Let me ask, does anybody wish

3    to be heard with respect to the seventy-second omnibus

4    objection, which is at ECF docket number 7417?  No objections

5    were filed.  Does anybody in court or on the phone wish to be

6    heard with respect to the seventy-second omnibus objection?

7          All right, hearing no one, and yes, the certificate of

8    no objection was filed; the Court has reviewed the seventy-

9    second omnibus objection, and the objections are sustained.

10         MR. WISHNEW:  Thank you, Your Honor.

11         THE COURT:  All right.  With respect to the seventy-

12   third omnibus objection, which is at ECF docket 7419, does

13   anybody wish to be heard with respect to the seventy-third

14   omnibus objection?

15         All right, again, a certificate of no objection was

16   filed.  The Court has reviewed the seventy-third omnibus

17   objection.  It's sustained.

18         MR. WISHNEW:  Thank you, Your Honor.

19         THE COURT:  With respect to the seventy-fourth omnibus

20   objection, which is at ECF docket 7454, does anyone wish to be

21   heard?

22         Again, a certificate of no objection was filed.  The

23   Court has reviewed the seventy-fourth omnibus objection.  The

24   objection is well-taken.  No objections were filed.  The

25   objection is sustained.

RESIDENTIAL CAPITAL, LLC, ET AL.                    24

1        MR. WISHNEW:  Thank you, Your Honor.

2        That brings us to section 3 on today's agenda at page

3    7, a status conference with regards to the proof of claim -- or

4    proof of claims, actually, I should say -- of Mr. and Mrs. Rex

5    and Daniela Gilbert.  This was as matter the Court addressed --

6        THE COURT:  Let me ask, is anyone appearing in person

7    or by telephone with respect to the Gilberts?

8        All right, go ahead, Mr. Wishnew.

9        MR. WISHNEW:  Thank you, Your Honor.  This was a

10   matter the Court had taken up late last year.  It issued an

11   initial opinion granting the objection in part, denying it in

12   part.  Claimants then filed a motion for reconsideration.  The

13   Court slightly modified its earlier order.  And essentially,

14   what remains of the original claim is a claim under the North

15   Carolina Unfair and Deceptive Trade Practices Act, as well as a

16   claim under the North Carolina Debt Collection Act.

17       With regard to the Court's reconsideration opinion,

18   basically the -- what is at dispute is whether there were

19   fraudulent misrepresentations made by the -- by GMAC Mortgage

20   through Jeffery Stephan's affidavit.  At this point in time,

21   the Borrower Trust believes that it can prove through a

22   declaration of a corporate representative of the Liquidating

23   Trust that the statements made in Mr. Stephan's affidavit were

24   accurate, and because they were accurate, there would not be a

25   claim under either of the aforementioned North Carolina

1   statutes for fraudulent misrepresentation, and therefore there

2   would not be any sort of entitlement to attorneys' fees to Mr.

3   and Mrs. Gilbert or Ms. Parker-Lowe, on account of those

4   statutes.

5         So notwithstanding our efforts to try and resolve this

6   consensually, we believe the best way to try and bring this to

7   a conclusion would be for the Borrower Trust to file a

8   supplemental objection within the next thirty days.  That would

9   include a supplemental declaration from a corporate

10  representative of the Liquidating Trust validating the accuracy

11  of Mr. Stephan's statements within his affidavit, and providing

12  supporting case law discussion to substantiate our position

13  that there is no viable claim, and thereby giving Mr. and Mrs.

14  Gilbert an opportunity to respond in due course.

15        THE COURT:  Have -- so Ms. Parker-Lowe is the lawyer

16  for the Gilberts?

17        MR. WISHNEW:  Yes, Your Honor.

18        THE COURT:  And do you know whether she had notice of

19  the hearing today?

20        MR. WISHNEW:  She did, Your Honor.  We -- I've been in

21  communication with her over the past few weeks.  I advised her

22  last week that the Court was asking for a status conference and

23  wanted to see if there was an ability to settle.  She and I

24  exchanged correspondence.  I spoke to her yesterday afternoon,

25  advising her of the proposed course of action that I just laid

1  out to the Court.  And she didn't really have a response for

2  me.

3        I didn't ask her specifically if she was going to

4  attend, but she did get today's agenda.  She did get a copy of

5  the CourtCall information.  I can't say as to why she's not

6  necessarily appearing telephonically.

7        (Pause)

8        THE COURT:  Describe for me why you believe that

9  you'll be able to establish that the Trust is entitled to have

10  its objection to claim sustained as a matter of law?  This is a

11  matter of law -- are there disputed issues of fact?

12        MR. WISHNEW:  Well, I think that the issue that was

13  raised in the Court's earlier decision was the validity of the

14  representation about the noteholder, and of course, the belief

15  that -- the belief of the claimants that Mr. Stephan is a

16  robosigner, and that automatically negates the validity of any

17  affidavit he signed.

18        And our belief is, after looking through corporate

19  records and other documents available to us, we can say that

20  each statement in the affidavit is accurate, and so there was

21  no fraudulent misrepresentation that would give rise to a claim

22  under either of the North Carolina statutes.

23        (Pause)

24        THE COURT:  And did you lay out for Ms. Parker-Lowe

25  how the debtor wished to proceed?

RESIDENTIAL CAPITAL, LLC, ET AL.                    27

1      MR. WISHNEW:  I did, Your Honor.  I explained to her

2  that we would prove that there was no misrepresentation; that

3  each of the statements was accurate.  Without speaking for her,

4  she was -- I would say that she was surprised in my statement.

5  Again, without speaking for her, she felt that Mr. Stephan's

6  past history is kind of indicative of GMAC Mortgage's

7  liability.  I contended otherwise.  And that's where we are.

8      (Pause)

9      THE COURT:  So if I understand correctly, you're not

10 contending that Mr. Stephan had personal knowledge that all of

11 the facts stated in his affidavit were true, you just believe

12 you can prove through other sources that they were true?

13     MR. WISHNEW:  That's correct, Your Honor.

14     THE COURT:  Would you acknowledge that Mr. Stephan did

15 not have any -- at the time he executed the affidavit, he

16 didn't know one way or the other whether the statements were

17 true?

18     MR. WISHNEW:  I don't know, Your Honor.

19     (Pause)

20     THE COURT:  When did -- when was Ms. Parker-Lowe given

21 notice that the Court would have a status conference with

22 respect to this matter today?

23     MR. WISHNEW:  Last Wednesday, Your Honor, the 24th, I

24 believe.

25     THE COURT:  All right.  What I would like to do -- I'm

1   disappointed that Ms. Parker-Lowe has not appeared by telephone

2   today.  But I'm going to schedule a telephonic case management

3   and scheduling conference for Monday, October 6th, at 3 p.m.

4   At 4 p.m., we have a rescheduled, I believe, conference in

5   respect to Matthews.

6           MR. WISHNEW:  Correct, Your Honor.

7           THE COURT:  All right.  So we'll do this at 3 o'clock.

8           MR. WISHNEW:  Okay.

9           THE COURT:  You can participate by telephone.

10          MR. WISHNEW:  Okay.

11          THE COURT:  In the notice you should state that the

12  Court orders that Ms. Parker-Lowe participate in the conference

13  by telephone.  Failure to appear will result in the imposition

14  of sanctions.

15          MR. WISHNEW:  Understood, Your Honor.

16          THE COURT:  You should confer with Ms. Parke-Lowe in

17  advance of the conference in an effort to reach agreement on

18  how the parties will proceed with the claim.

19          What I don't want to do, Mr. Wishnew, is have you go

20  ahead, prepare the papers, file it, and then she says, well,

21  we're entitled to discovery on some issue.  We're going to sort

22  that out right now.

23          MR. WISHNEW:  Okay.

24          THE COURT:  And it may be that you need -- you should

25  discuss with her in advance that you will, in advance of -- if

1    you're going to proceed this way, that you will provide her

2    with declarations that support the statements you've made on

3    the record in court.

4            MR. WISHNEW:  Um-hum.

5            THE COURT:  Particularly since you've indicated that

6    you're not -- you don't intend to proceed on the basis that Mr.

7    Stephan had personal knowledge of the facts set forth in the

8    affidavit that was filed.  You believe you can prove them

9    independently.

10           MR. WISHNEW:  Um-hum.

11           THE COURT:  And you should discuss specifically

12   whether there's any discovery that Ms. Parker-Lowe believes

13   she's entitled to take before you proceed with it.  You ought

14   to indicate to her -- you ought to be prepared to tell her who

15   the declarants are or would be in support of the argument

16   you're going to make.

17           When I have this conference on October 6th, I intend

18   to enter a scheduling order.  Whether it simply permits you to

19   proceed in the manner you want, or if she believes that she's

20   entitled to take depositions of -- if you have one declarant,

21   you may know who your declarant is already.

22           MR. WISHNEW:  Um-hum.

23           THE COURT:  Fine, let her take the deposition.  And I

24   don't want this to keep going round and round and round.

25           MR. WISHNEW:  Understood, Your Honor.

RESIDENTIAL CAPITAL, LLC, ET AL.                    30

1      THE COURT:  I want to get this resolved.  Your

2   approach to trying to resolve it may be entirely reasonable.

3   She may want to see your declaration in advance of deciding

4   whether she wants to take a deposition.

5      MR. WISHNEW:  Sure.

6      THE COURT:  You should discuss that with her as well.

7      What I don't want to do is wind up with this on a

8   schedule a month or six weeks from now, and then lo and behold

9   find out that she says no, I'm entitled to take the deposition

10  and keep going around and around.

11     MR. WISHNEW:  Okay.

12     THE COURT:  So your approach to resolving it may be

13  entirely reasonable.

14     MR. WISHNEW:  Understood.

15     THE COURT:  Okay?

16     MR. WISHNEW:  Thank you very much, Your Honor.

17     THE COURT:  All right.  Thank you.

18     MR. WISHNEW:  That, I believe, is the last matter on

19  today's calendar.  So unless the Court has anything else?

20     THE COURT:  No, thank you very much.

21     MR. WISHNEW:  Thank you, Your Honor.

22     THE COURT:  Okay, we're adjourned.

23     (Whereupon these proceedings were concluded at 10:45 AM)

24

25

1

2                               I N D E X

3

4                               RULINGS

5                                              Page      Line

6   HSBC' motion for relief from the              6        24

7   automatic stay granted

8   Seventy-second omnibus objection to claims   23        71

9   is sustained.

10  Seventy-third omnibus objection to claims    23        15

11  is sustained.

12  Seventy-fourth omnibus objection to claims   23        22

13  is sustained.

14  Ms. Parker-Lowe ordered to appear at 10/6    28        11

15  telephone conference.  Failure to appear

16  will result in sanctions.

17

18

19

20

21

22

23

24

25

C E R T I F I C A T I O N

I, Sharona Shapiro, certify that the foregoing transcript is a true and accurate record of the proceedings.

_____

SHARONA SHAPIRO

AAERT Certified Electronic Transcriber CET**D-492

eScribers

700 West 192nd Street, Suite #607

New York, NY 10040

Date:  October 1, 2014