<u>IN THE UNITED STATES BANKRUPTCY COURT –MIDDLE DISTRICT OF FLORIDA-TAMPA DIVISION</u>

---------------------------------------------------------------------X   SEPTEMBER 23,2014

IN THE MATTER OF CHAPTER 13
PATRICK FARRELL **CASE NO: 9-14-BK-05989-FMD**    p.farrell13@yahoo.com
DEBTOR                                              239-558-5729

<u>UNITED STATES BANKRUPTCY COURT -SOUTHERN DISTRICT OF NEW YORK</u>

| | |
|---|---|
| IN RE:<br>RESIDENTIAL CAPITAL LLC, et al<br>PATRICK FARRELL PROOF OF CLAIM # 1353 | Chapter 11<br>**Case No. 12020- [ALG]**<br>**and 12-12032**<br>Jointly Administered] |

IN THE CIRCUIT COURT, 20TH JUDICIAL DIST FOR LEE CO. FLORIDA

| | |
|---|---|
| PATRICK LORNE FARRELL©,<br>Plaintiff, vs. G.M.A.C.; WELLS FARGO;<br>IMPAC SECURED ASSETS, et al<br>Defendants | **CASE NO.07-CA-14942** |
| WELLS FARGO, as trustee.......... V.<br>PATRICK FARRELL | **CASE 07-CA-16767** |

<u>UNITED STATES DISTRICT COURT-MIDDLE FLORIDA -FORT MYERS</u>

| | |
|---|---|
| PATRICK LORNE FARRELL©,<br>Plaintiff,   vs.<br>STATE OF FLORIDA, et al<br>Defendants | CASE  **2:13-cv-140-FTm-29DNF** |

<u>IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA</u>
<u>SECOND DISTRICT,POST OFFICE BOX 327,LAKELAND FL.33802-0327</u>
                                                                    **CASE NO. :2D14-2139**
                                                                    **L.T. No. :07-CA-14942**

Patrick Lorne Farrell             v.         GMAC,WELLS FARGO
Appellant / Petitioner                       Appellee / Respondents

## NOTICE OF FRAUD UPON THE COURT- AGAIN

## REGARDING OCWEN FORCED PLACED INSURANCE FRAUD

**SUMMARILY**, the purchase of GMAC/WELLS FARGO assets by OCWEN LOAN was stopped by the NY Dept. of Fin. Serv. FEB 6, 2014,so the summary judgment made in case 07-CA-14942 for $450,000 for OCWEN was a Fraud, perpetrated by judge Sherra Winesett, atty. Monica Wilson of BRADLEY-ARANT and Nathan Schwartz of Robertson/Anschutz.

RECEIVED OCT -3 2014 U.S. BANKRUPTCY COURT, SDNY

1

AUGUST 4,2014 The New York Dept. of Financial Services sent a 6 page letter to OCWEN LOAN SERVICING, addressing them to stop their fraudulent Forced Placed Insurance. DESPITE that, OCWEN sent Farrell 2 letters demanding Farrell get insurance for his property that OCWEN has no interest in, as described in my last Notice detaling that OCWEN NEVER bought any of GMAC or WELLS FARGO MSR= Mortgage Servicing Rights.

**WHEREFORE, I demand a**

- Vacating of the summary judgment in case 07-CA-16767, voiding all liens thereon;
- Granting costs fees and sanctions to be imposed upon parties, law firms, lawyers and judges;
- Granting of Farrell's UCC-1 Lien filed in 2008 for $400,000.
- Re-Instating of case 2:13-cv-140-JES-DNF;
- Any and all other relief this court deems just.

## CERTIFICATE OF SERVICE

**I hereby certify that a true and correct copy has been sent to;**

1. SECT. JACOB LEW-Department of the Treasury-1500 Pennsylvania Avenue, NW Washington, D.C. 20220
2. U.S. BANKRUPTCY COURT-801 N. Florida Avenue-Suite 555-Tampa, Florida 33602
3. Florida Supreme Court-500 South Duval Street-Tallahassee, Florida, 32399-1927
4. 2ND DIST COURT OF APPEAL POST OFFICE BOX 327 LAKELAND,FL.33802-0327
5. U.S. DISTRICT COURT-2110 FIRST ST. #2-194-FT.MYERS, FL. 33901
6. LEE CO. CLERK OF COURT-PO BOX 310-FT.MYERS,FL.33902
7. Martin Glenn, United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, NY 10004-1408;
8. ROBERTSON ANSCHUTZ-6409 CONGRESS AVE. #100-BOCA RATON, FL. 33487
9. BRADLEY-ARANT -100 N. TRYON ST #2690-CHARLOTTE,N.C. 28202
10. OFFICE OF THE A.G.-501 E. KENNEDY BLVD. #1100-TAMPA,FL.33602-5242
11. Director-Commercial Litigation Branch-Fraud Section-United States Department of Justice-601 D Street, N.W.-Suite 9002-Washington, DC 20004
12. INTERNAL REV SERV-1973 N.RUION WHITE BLVD. MS 4110-OGDEN,UTAH 84404

## VERIFICATION

I, PATRICK LORNE FARRELL©, *Sui Juris*, hereby verify, under penalty of perjury, under the laws of the United States of America, without the "United States" (federal government), that the above statement of facts and laws is true and correct, according to the best of My current information, knowledge, and belief, so help me God, pursuant to 28 U.S.C. 1746(1).

WITHOUT PREJUDICE-U.C.C.-1-308

*[signature]*

Patrick Lorne Farrell as Trustee for the

PATRICK FARRELL IRREVOKABLE LIVING TRUST

in Propria Persona-Attorney In Fact-Sovereign-Secured Party Creditor-

signed "without the united states" and without prejudice/UCC 1-308-UCC-1

Filing # 2007-356-2344-8 [12/22/07]-Wash. St.

2904 NW14th Terrace-Cape Coral, Florida-[33993-9998]-D.M.S.R. SEC.112.32

SEPTEMBER 30, 2014

*[red stamp:]* ACCEPTED FOR VALUE & HONOR-EXEMPT FROM LEVY For my remedy,Release of the Proceeds, Accounts, in the order[s] to Me in Accordance with Public Policy,HJR-192, UCC 10-104 & UCC 1-104,UCC 3-419 Exemption I.D. & UCC Contract Account #375585666 Deposit To U.S. Treasury & Charge the same to:PATRICK LORNE FARRELL#375585666  DATE: 9-30-14  VALUE: $100,000,000

3

**NEW YORK STATE**
**DEPARTMENT** *of*
**FINANCIAL SERVICES**

Andrew M. Cuomo
Governor

Benjamin M. Lawsky
Superintendent

August 4, 2014

Timothy Hayes
General Counsel
Ocwen Financial Corporation
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409

Dear Mr. Hayes:

As part of the Department's ongoing examination of Ocwen's mortgage servicing practices, we are reviewing a troubling transaction involving Ocwen's related company, Altisource Portfolio Solutions, S.A. ("Altisource"), and the provision of force-placed insurance. Indeed, this complex arrangement appears designed to funnel as much as $65 million in fees annually from already-distressed homeowners to Altisource for minimal work. Additionally, the role that Ocwen's Executive Chairman William C. Erbey played in approving this arrangement appears to be inconsistent with public statements Ocwen has made, as well as representations in company SEC filings. As discussed below, we require certain information about this force-placed insurance arrangement and about Mr. Erbey's role in approving the arrangement.

**Background**

As you know, the Department has previously expressed concerns about Ocwen's use of related companies to provide fee-based services such as property inspections, online auction sites, foreclosure sales, real estate brokers, debt collection, and many others. Because mortgage servicing presents the extraordinary circumstance where there is effectively no customer to select a vendor for ancillary services, Ocwen's use of related companies to provide such services raises concerns about whether such transactions are priced fairly and conducted at arms-length.

The Department now seeks additional information about Ocwen's provision of force-placed insurance through related companies. As you are aware, the Department's recent investigation into force-placed insurance revealed that mortgage servicers were setting up affiliated insurance agencies to collect commissions on force-placed insurance, and funneling all of their borrowers' force-placed business through their own agencies, in violation of New York Insurance Law section 2324's anti-inducement provisions. The Department discovered that servicers' own insurance agencies had an incentive to purchase force-placed insurance with high premiums because the higher the premiums, the higher the commissions kicked back by insurers to the servicers or their affiliates. The extra expense of higher premiums, in turn, can push already struggling families over the foreclosure cliff. In light of this investigation, the Department last year imposed further prohibitions on these kickbacks to servicers or their affiliates.

However, as part of our broader review of ancillary services provided by non-bank mortgage servicers, we are concerned that certain non-bank mortgage servicers are seeking to side-step those borrower protections through complex arrangements with subsidiaries and affiliated companies. Indeed, in recent weeks, we halted one such arrangement at another non-bank mortgage servicing company.

**Agreements with SWBC and Altisource**

Based on its investigation and through the Monitor's work, the Department understands that Ocwen's force-placed arrangement with Altisource features the use of an unaffiliated insurance agent, Southwest Business Corporation ("SWBC"), apparently as a pass-through so that Ocwen and Altisource are not directly contracting with each other, but Altisource can still receive insurance commissions and certain fees seemingly for doing very little work.

These are the facts established by documents Ocwen provided to the Monitor: In August 2013, Ocwen appointed an Altisource subsidiary called Beltline Road Insurance Agency, Inc. ("Beltline") as its exclusive insurance representative, purportedly to negotiate and place a new force-placed insurance program for Ocwen. Ocwen's existing force-placed arrangement with the insurer Assurant was set to expire in March 2014, and Beltline's stated task was to find an alternative arrangement. In January 2014, Altisource provided a memo to the Credit Committee of Ocwen Mortgage Servicing, Inc., recommending, among other things, replacing Assurant with SWBC as Ocwen's managing general agent. SWBC would then be charged with managing Ocwen's force-placed insurance program, including negotiating premiums with insurers. As part of this arrangement, Altisource recommended itself to provide fee-based services to SWBC.

In emails dated January 15 and 16, 2014, the transaction was approved by the three members of the Credit Committee: William Erbey, Duo Zhang, and Richard Cooperstein. The Credit Committee did not meet to discuss this proposal, no minutes were taken of the Credit Committee's consideration of this proposed transaction, and the proposed transaction apparently was not presented for review or approval to any member of the Ocwen Board of Directors except Mr. Erbey, as Mr. Zhang and Mr. Cooperstein are not members of the Ocwen Board of Directors.

Just one month after this Credit Committee approval, on February 26, 2014, the company received the Department's letter raising concerns about potential conflicts of interest between Ocwen and its related public companies. In that letter, we identified facts that "cast serious doubts on recent public statements made by the company that Ocwen has a 'strictly arms-length business relationship' with those companies," and we specifically referenced the multiple roles played by Mr. Erbey as an area of concern.

Disregarding the concerns raised in our letter, Ocwen proceeded to execute contracts formalizing this new force-placed arrangement, apparently without further consideration by any Board member other than Mr. Erbey. Those contracts, dated as of June 1, 2014, indicate that Altisource will generate significant revenue from Ocwen's new force-placed arrangement while apparently doing very little work. Indeed, a careful review of these and other documents suggests that Ocwen hired Altisource to design Ocwen's new force-placed program with the expectation and intent that Altisource would use this opportunity to steer profits to itself.

2

First, Altisource will reap enormous insurance commissions for having recommended that Ocwen hire SWBC. Under the contracts, Ocwen promises to give its force-placed insurance business to SWBC. SWBC does the work of negotiating premiums, preparing policies, and handling renewals and cancellations. For these services, SWBC receives commissions from insurers. SWBC then passes on a portion of those commissions, constituting 15% of net written premium on the policies, to Altisource subsidiary Beltline, for "insurance placement services." Documents indicate that Ocwen expects to force-place policies on its borrowers in excess of $400 million net written premium per year; a 15% commission on $400 million would be $60 million per year. It is unclear what insurance placement services, if any, Altisource is providing to justify these commissions.

Second, Altisource will be paid a substantial annual fee for providing technology support that it appears to be already obligated to provide. This fee relates to monitoring services, whereby Ocwen pays a company to monitor whether its borrowers' insurance remains in effect. Such monitoring is necessary to establish which borrowers have lapsed on their payments and need to have insurance force-placed upon them. Prior to 2014, Ocwen was paying ten cents per loan per month to Assurant for monitoring. In this new arrangement, however, Ocwen agrees to pay double the prior amount – twenty cents per loan per month now paid to SWBC, for each of the approximately 2.8 million borrowers serviced by Ocwen. SWBC, in turn, agrees to pass on fifteen out of that twenty cents to Altisource, or an estimated $5 million per year. Altisource provides only one service in exchange for this fee: granting SWBC access to Ocwen's loan files. Altisource, of course, only has access to Ocwen's loan files through its own separate services agreements with Ocwen, which appear to contractually obligate Altisource to provide this access to business users designated by Ocwen to receive such access.

Third, the contracts require SWBC to use Altisource to provide loss draft management services for Ocwen borrowers; to pay Altisource $75 per loss draft for these services; and to pay Altisource an additional $10,000 per month for certain other services.

In an effort to better understand this arrangement, the Department requests that Ocwen provide the following information and documents:

1. Is Altisource already obligated to provide access to Ocwen's loan files to SWBC pursuant to separate agreements with Ocwen? If your answer is no, please specifically explain how the Technology Products Letter between Ocwen and Altisource, produced to the Department beginning at OFC00002496, does not impose this obligation.

2. What services, if any, does Altisource or its subsidiary provide to SWBC in exchange for SWBC paying the Altisource subsidiary a commission of 15% of insurance premiums? In addition, it appears that payment of this commission excludes premium generated by policies issued on properties in New York State. Please describe the negotiations that resulted in this exclusion, and identify any alternate compensation to be paid to Altisource or any affiliate to make up for the excluded commissions on New York properties.

3. What services, if any, does Altisource provide to SWBC in exchange for SWBC paying Altisource fifteen cents per loan per month?

3

4. What services, if any, does Altisource provide to SWBC in exchange for an additional $10,000 per month?

5. Under what circumstances do Ocwen policies and procedures permit approval of transactions solely through the Credit Committee? Did this force-placed insurance arrangement meet those requirements? Do Ocwen policies and procedures require any additional review or approvals for transactions involving related companies? If so, did Ocwen engage in that review or obtain those approvals for this arrangement?

6. Were any options presented to the Credit Committee other than the proposed SWBC transaction? If so, did all such options feature the retention of Altisource to provide fee-based services? Or were options presented that did not involve payments to Altisource?

7. Throughout this process, did members of the Credit Committee or any Ocwen personnel give any consideration to the impact that Altisource fees and commissions would have in increasing insurance premiums to be paid by struggling families?

8. After the Credit Committee approved Altisource's January 2014 proposal for Ocwen's new forced-placed insurance program, it appears that certain changes were made to the proposal, including an expansion of SWBC's and Altisource's roles in the program and their associated compensation. Please describe those changes and the negotiations that led to those changes, and identify all personnel involved in negotiating and approving those changes.

9. What process resulted in the August 2013 appointment of Altisource's subsidiary as Ocwen's exclusive insurance representative? Was this process competitive? What Ocwen Board members or personnel were involved in this appointment? Which Board members, if any, authorized this appointment? Did those Ocwen Board members or personnel know or anticipate that Altisource would return with a plan that would appear to be highly profitable for itself?

10. What amount of revenue has Altisource or its affiliates realized, and what amount of revenue is it projected to realize, from the services it is providing pursuant to this force-placed insurance arrangement? What are its costs for providing those services? How many employees at Altisource or its subsidiaries work on providing those services, and how much of their time is dedicated to this work?

11. Altisource's presentation to the Credit Committee stated that "Altisource will establish its own managing general underwriter during 2014 to provide LPI underwriting services starting in 2015." Please explain Altisource's intention to establish a managing general underwriter, state whether Ocwen supports Altisource's plan, and explain how this development will affect Ocwen's force-placed program, Altisource's revenue, and the fees to be charged to Ocwen borrowers or mortgage investors.

4

**Ocwen's Public Statements Concerning Transactions with Related Companies**

In addition to the issues raised above, the Department has serious concerns about the apparently conflicted role played by Ocwen Executive Chairman William Erbey and potentially other Ocwen officers and directors in directing profits to Altisource, which is "related" to Ocwen but is formally a separate, publicly-traded company. As you know, Mr. Erbey is Ocwen's largest shareholder and is also the Chairman of and largest shareholder in Altisource. In fact, Mr. Erbey's stake in Altisource is nearly double his stake in Ocwen: 29 percent versus 15 percent. Thus, for every dollar Ocwen makes, Mr. Erbey's share is 15 cents, but for every dollar Altisource makes, his share is 29 cents.

The Department and its Monitor have uncovered a growing body of evidence that Mr. Erbey has approved a number of transactions with the related companies, despite Ocwen's and Altisource's public claims – including in SEC filings[1] – that he recuses himself from decisions involving related companies. Mr. Erbey's approval of this force-placed insurance arrangement as described above appears to be a gross violation of this supposed recusal policy.

12. Please explain how and why Mr. Erbey approved the arrangement between Ocwen, SWBC, and Altisource.

13. Please provide every instance where Mr. Erbey has approved a transaction involving a related company notwithstanding Ocwen's statements to the contrary.

Finally, Ocwen and Altisource state in their public filings that rates charged under agreements with related companies are market rate,[2] but Ocwen has not been able to provide the Monitor with any analysis to support this assertion.

14. Please advise whether Ocwen has performed any independent analysis to determine whether the rates charged in the SWBC arrangement are market rate.

15. Please address whether Ocwen has performed any independent analysis to support the assertion that the rates charged under other related party agreements are market rate.

---

[1] Ocwen Financial Corporation 2013 Form 10-K Annual Report, at 18 ("We have adopted policies, procedures and practices to avoid potential conflicts with respect to our dealings with Altisource, HLSS, AAMC and Residential, including our Executive Chairmen recusing himself from negotiations regarding, and approvals of, transactions with these entities."); Altisource Portfolio Solutions S.A. 2013 Form 10-K Annual Report, at 17 ("We follow policies, procedures and practices to avoid potential conflicts with respect to our dealings with Ocwen, HLSS, AAMC and Residential, including our Chairman recusing himself from negotiations regarding, and approvals of, transactions with these entities.").

[2] Ocwen Financial Corporation 2013 Form 10-K Annual Report, at F-60 ("We believe the rates charged under [agreements with Altisource] are market rates as they are materially consistent with one or more of the following: the fees charged by Altisource to other customers for comparable services and the rates Ocwen pays to or observes from other service providers."); Altisource Portfolio Solutions S.A. 2013 Form 10-K Annual Report, at 7 ("We record revenue we earn from Ocwen and its subsidiaries under various long-term servicing contracts at rates we believe to be market rates as they are consistent with one or more of the following: the fees we charge to other customers for comparable services; the fees Ocwen pays to other service providers; and fees charged by our competitors.").

5

We intend to fully review all of the issues raised above. Please also provide documents that support your responses. We ask and expect that Ocwen will preserve all documents concerning the matters discussed in this letter.

Sincerely,

Benjamin M. Lawsky
Superintendent of Financial Services

cc:   William C. Erbey, Executive Chairman, Ocwen Board of Directors
      Ronald M. Faris, Ocwen Board of Directors
      Ronald J. Korn, Ocwen Board of Directors
      William H. Lacy, Ocwen Board of Directors
      Wilbur L. Ross, Jr., Ocwen Board of Directors
      Robert A. Salcetti, Ocwen Board of Directors
      Barry N. Wish, Ocwen Board of Directors
      Mitra Hormozi, Zuckerman Spaeder LLP
      James Sottile, Zuckerman Spaeder LLP

OCWEN LOAN SERVICING, LLC
P.O. BOX 659826
SAN ANTONIO, TX 78265-9826
(866) 317-7661
Fax: (866) 807-1814

OCWEN

4291 1.1460 MB 0.435    25 2 37    SEPTEMBER 19, 2014

PATRICK FARRELL
2904 NW 14TH TER
CAPE CORAL FL 33993-4807

**I REFUSE YOUR OFFER TO CONTRACT YOU ARE COMMITTING FRAUD WITH THIS LETTER**

ACCEPTED FOR VALUE & HONOR-EXEMPT FROM LEVY For my remedy,Release of the Proceeds, Accounts, in the order[s] to Me in Accordance with Public Policy,HJR-192, UCC 10-104 & UCC 1-104,UCC 3-419 Exemption I.D. & UCC Contract Account #375585666 Deposit To U.S. Treasury & Charge the same to:PATRICK LORNE FARRELL#375585666   DATE: 9-21-14   VALUE: $100,000,000

Subject: **Please provide insurance information for**
2904 NW 14TH TER
CAPE CORAL, FL 33993

Dear Patrick Farrell:

Our records show that your flood insurance expired, and we do not have evidence that you have obtained new coverage. **Because flood insurance is required on your property, we plan to buy insurance for your property.** You must pay us for any period during which the insurance we buy is in effect but you do not have insurance.

You should immediately provide us with your insurance information. Please have your insurance agent or carrier include the loan number and property address on a copy of your new/renewal policy or notice of reinstatement and fax it with a Mortgagee Clause/Lender's Loss Payable Endorsement as soon as possible to: (866) 807-1814. You/your agent can mail the documents to:

OCWEN LOAN SERVICING, LLC
ITS SUCCESSORS AND/OR ASSIGNS
P.O. BOX 659826
SAN ANTONIO, TX 78265-9826
Attention: 359244301

Or, you may update your flood insurance coverage information online at www.imcovered.com/ocwen1. This information must be provided in writing.

The insurance we buy:

- **May be more expensive than the insurance you can buy yourself.**

- **May not provide as much coverage as an insurance policy you buy yourself.**

If you have any questions, please contact us at (866) 317-7661.

Please review the additional important information contained on the following pages of this transmittal.

Reference #: **2301**
Unique Identifier #: **118005221**

NMLS #: 1852

OB0017   012301WEXP19914030101                                01 EXPIRED INS LTR 1    W 005

The following information is being provided as additional information; it includes important information about the insurance on your mortgaged property.

### Lender placed flood insurance coverage
- The cost of the premium may be **much** higher.
- The coverage provided may be **less** than before.
- This type of policy insures **your structure only.**
- **Does not** protect your personal property. (Example, if your property were damaged by flood, there would be no coverage for loss to your contents.)

Ocwen has been advised your property is located in a Special Flood Hazard Area (SFHA) as designated by the Federal Emergency Management Agency (FEMA). The Flood Disaster Protection Act of 1973, including the National Flood Insurance Reform Act of 1994, and/or the terms of your mortgage/deed of trust, requires you to maintain flood insurance. Flood zone and map panel information specific to your property is provided below.

Flood Zone: AE
FEMA Map Panel:
Map Date: 08/28/08
Community Number: 125095

- **PURCHASING YOUR OWN INSURANCE:**

  - **You have the right to independently purchase acceptable insurance from the insurance agent or company of your choice and we urge you to do so.** Acceptable insurance is insurance that is equal to the lesser of loan unpaid principle balance, 100% of the estimated replacement cost value of your property, or the maximum allowed by the National Flood Insurance Program (NFIP) - (maximum of $250,000 for residential and $500,000 for commercial properties).

  - Your flood insurance agent should be able to answer any questions you may have about flood insurance, or you may visit the National Flood Insurance Program website at www.floodsmart.gov, so that you can try to get the coverage you need.

  - If you feel your property is not located in a Special Flood Hazard Area, you may challenge our determination under Section 524 of the National Flood Insurance Reform Act of 1994. You will need to provide written evidence from a community official, registered engineer, architect or surveyor, including an Elevation Certificate, stating the reason for your challenge. If you have documentation we will assist you in applying to FEMA for a Letter of Map Amendment. If you elect to challenge our determination you must maintain flood insurance on the property until FEMA approves the request for the Letter of Map Amendment.

- **ESCROWING FOR INSURANCE:**

  - *Applicable to Non-Escrow Only*
    Per our records, you have elected and are eligible to pay your insurance directly, rather than having it paid for you through an escrow account. If you are currently unable to pay your flood insurance premium, please complete the important attached notice as soon as possible to ask us to set up an escrow account and advance the insurance premium for you. If you choose this option, you would repay us for the advance in your future monthly payments. We will need the contact information for your insurance agent or company as well as the amount of the premium currently due. Insurance companies allow a very short time to reinstate policies that have expired and it is important that you call us immediately if you need our assistance. We cannot pay your voluntary flood insurance premium without your cooperation.

    If you do not elect to establish an escrow account pursuant to the above paragraph for the continuation of your insurance policy, we will establish one in conjunction with the insurance we obtain and that escrow account will be charged for the premiums that we pay. **As a result, your monthly mortgage payments will be increased to include the cost of this policy.**



OB0012   022301WEXP19914030102

NMLS #: 1852
01 EXPIRED INS LTR 1    W 005

- *Applicable to Escrow*
  If we purchase this insurance, your escrow account will be charged for the premiums that we pay. **Please be advised that your monthly mortgage payments will be increased to include the cost of this policy.**

- **THE INSURANCE WE OBTAIN:**

  - The insurance we obtain will remain in effect until you provide us with evidence of acceptable coverage, at which time the policy we obtained will be canceled, and you will receive a refund of any unearned premium.

    Even if you obtain coverage that is acceptable to us, please be aware that if there is a lapse between the cancellation of your insurance and the effective date of your new coverage, you will be charged for the coverage that we purchased to cover that lapse period.

  - **The cost of the insurance we obtain is likely to be much higher than the cost of coverage you could obtain on your own.** This is because the insurance we purchase is issued automatically without evaluating the risk of insuring your property.

  - **The flood insurance we obtain will not cover any amount you feel your home is worth in excess of the amount of flood coverage required, as previously stated.** If you have information to verify that the amount of coverage should be different, please let us know in writing, at the address in this notice. We will charge the cost of such insurance to you as described in the "Escrowing for Insurance" paragraph above. This does not in any way relieve you of your obligation to provide coverage acceptable to us.

  - **The flood insurance we obtain will cover only the structure of your home** (e.g. the building, walls, floors, roof and permanent attachments).

    - It will not cover your furniture or any of your other personal belongings.
    - It will not cover the cost of temporarily living outside of your home because it was damaged and is being repaired.
    - It will not cover any liability incurred by you personally to someone who is injured while on your property.

  - The policy we obtain will supersede any lender coverage remaining in effect under your previous policy. Obtaining your own insurance is in your best interest. You have the right to purchase your own insurance from the insurance company of your choice. If you do not have a current policy covering your property, please contact your agent or carrier and purchase coverage.

  - **If we purchase insurance for you, an affiliate of OCWEN LOAN SERVICING, LLC may benefit.**

    We may incur expenses in placing this insurance policy. Such expenses are recoverable by us as stated in your mortgage documents and/or Deed of Trust. The insurance company may reimburse us for these expenses in conjunction with the placement of this flood insurance, and may factor such reimbursement into the rate charged for the coverage.

- **IMPORTANT BANKRUPTCY INFORMATION:**

  

  - If you have filed for bankruptcy and your case is still active or if you have received an order of discharge, please be advised that this is not an attempt to collect a pre-petition or discharged debt. Any action taken by OCWEN LOAN SERVICING, LLC is for the sole purpose of protecting our lien interest in your property and not to recover any amounts from you personally. If you have surrendered the property during your bankruptcy case and you are no longer occupying the property, you may disregard this notice. **If you are represented by an attorney in a bankruptcy proceeding, you should review this notice and discuss any questions you may have regarding this notice with your attorney.**

- **FAIR DEBT COLLECTION PRACTICES ACT DISCLOSURE:**

  - OCWEN LOAN SERVICING, LLC is required by the Fair Debt Collection Practices Act to inform you that, as your loan servicer, we are attempting to collect a debt, and any information obtained will be used for that purpose. However, if you have received a discharge from bankruptcy, and the loan was not reaffirmed in the bankruptcy case, OCWEN LOAN SERVICING, LLC will only exercise its rights against the property and is not attempting any act to collect the discharged debt from you personally.

- **IMPORTANT INFORMATION:**

  - Please be advised that lender-placed carrier providing the coverage referenced above may be staffing our customer service telephone lines.

**WE HOPE YOU'LL AGREE THAT OBTAINING YOUR OWN INSURANCE IS IN YOUR BEST INTEREST.**



Ocwen Loan Servicing, LLC is a debt collector attempting to collect a debt and any information obtained will be used for that purpose.

If you have filed a bankruptcy case with respect to your obligation to Ocwen Loan Servicing, LLC, you should discuss this notice with your bankruptcy attorney. Whether or not you are liable for any sums advanced, will depend upon the type of bankruptcy which you have filed and whether you have reaffirmed your debt with Ocwen Loan Servicing, LLC.

NMLS #: 1852

OB0014   042301WEXP19914030104                                              01 EXPIRED INS LTR 1    W 005

Patrick Farrell
359244301

# IMPORTANT NOTICE - PLEASE READ

**If you are unable to pay the premium for your voluntary homeowners, condominium unit owners, flood or wind insurance, we may be able to assist.
Please note this offer is not available on Home Equity Lines of Credit.**

If you wish to maintain your current voluntary insurance coverage or obtain/increase your own voluntary insurance coverage, but are unable to pay the premium, OCWEN LOAN SERVICING, LLC will advance the premium on your behalf. If necessary, OCWEN LOAN SERVICING, LLC will request that your insurance agent or company immediately reinstate your voluntary insurance coverage without lapse. OCWEN LOAN SERVICING, LLC will establish an escrow/impound account to collect for repayment of the advanced insurance premium, as well as all future insurance disbursements for all required insurance coverage.

By signing this form, you agree to the following terms:

- You agree to the establishment of an escrow/impound account.

- You agree to provide a copy of your insurance premium invoice for your voluntary insurance policy and you will notify your insurance agent or carrier that all future insurance premiums will be paid by OCWEN LOAN SERVICING, LLC.

- You agree to the repayment of the insurance premium advanced on your behalf to be collected by OCWEN LOAN SERVICING, LLC through the established escrow/impound account which will increase your total monthly payment.

- You agree to the repayment of all future required insurance premiums to be collected by OCWEN LOAN SERVICING, LLC through the established escrow/impound account and increase your total monthly payment.

- You agree that OCWEN LOAN SERVICING, LLC will manage your escrow/impound account in accordance with your loan documents as well as state and federal law.

I/We, agree to the terms listed above and request that OCWEN LOAN SERVICING, LLC proceed with the payment of the insurance premium identified on the enclosed insurance premium invoice. I/We understand that every effort will be made to advance the insurance premium to the insurance agent or company designated on the premium invoice in a timely manner. OCWEN LOAN SERVICING, LLC is not liable for any failure of the insurer to receive or accept the premium or to reinstate the policy. In the event that the insurer fails to accept the premium and reinstate the policy, any refund of premium I/we receive will immediately be returned to OCWEN LOAN SERVICING, LLC to be credited to the escrow account.

Signature: _____

Signature: _____

Date: _____



Please immediately mail or fax the signed notice, along with a copy of your current insurance premium invoice, to the address or fax number listed below.

OCWEN LOAN SERVICING, LLC
ITS SUCCESSORS AND/OR ASSIGNS
P.O. BOX 659826
SAN ANTONIO, TX 78265-9826
Fax Number: (866) 807-1814

NMLS #: 1852

OB0015   052301WEXP19914030105                                                01 EXPIRED INS LTR 1    W 005

**OCWEN**
OCWEN LOAN SERVICING, LLC
P.O. BOX 659826
SAN ANTONIO, TX 78265-9826
(866) 317-7661
Fax: (866) 807-1814

2168 0.9550 MB 0.435    11 4 13

SEPTEMBER 24, 2014

PATRICK FARRELL
2904 NW 14TH TER
CAPE CORAL FL 33993-4807

*I REFUSE YOUR OFFER TO CONTRACT YOU ARE COMMITTING FRAUD WITH THIS LETTER*

Subject: **Please provide insurance information for**
2904 NW 14TH TER
CAPE CORAL, FL 33993

*ACCEPTED FOR VALUE & HONOR-EXEMPT FROM LEVY For my remedy, Release of the Proceeds, Accounts, in the order[s] to Me in Accordance with Public Policy,HJR-192, UCC 10-104 & UCC 1-104,UCC 3-419 Exemption I.D. & UCC Contract Account #375585666 Deposit To U.S. Treasury & Charge the same to:PATRICK LORNE FARRELL#375585666 VALUE: $100,000,000   DATE: 9-26-14*

Dear Patrick Farrell:

Our records show that your hazard insurance expired, and we do not have evidence that you have obtained new coverage. **Because hazard insurance is required on your property, we plan to buy insurance for your property.** You must pay us for any period during which the insurance we buy is in effect but you do not have insurance.

You should immediately provide us with your insurance information. Please have your insurance agent or carrier include the loan number and property address on a copy of your new/renewal policy or notice of reinstatement and fax it with a Mortgagee Clause/Lender's Loss Payable Endorsement as soon as possible to: (866) 807-1814. You/your agent can mail the documents to:

    OCWEN LOAN SERVICING, LLC
    ITS SUCCESSORS AND/OR ASSIGNS
    P.O. BOX 659826
    SAN ANTONIO, TX 78265-9826
    Attention: 359244301

Or, you may update your hazard insurance coverage information online at **www.imcovered.com/ocwen1**. This information must be provided in writing.

The insurance we buy:

- **May be more expensive than the insurance you can buy yourself.**
- **May not provide as much coverage as an insurance policy you buy yourself.**

If you have any questions, please contact us at (866) 317-7661.

Please review the additional important information contained on the following pages of this transmittal.



Reference #: **2301**
Unique Identifier #: **139431221**

The following information is being provided as additional information. It includes important information about the insurance on your mortgaged property.

- **PURCHASING YOUR OWN INSURANCE:**

  - **You have the right to independently purchase acceptable insurance from the insurance agent or company of your choice and we urge you to do so.** Acceptable insurance is insurance that is equal to 100% of the estimated replacement cost to rebuild your home and other improvements on your property.

    If you have been refused coverage, ask your agent or your state's insurance department whether your state has a Fair Access to Insurance Requirements (FAIR) plan, so that you can try to get the coverage you need.

- **ESCROWING FOR INSURANCE:**

  - *Applicable to Non-Escrow Only*
    Per our records, you have elected to pay your insurance directly, rather than having it paid for you through an escrow account. If you are currently unable to pay your hazard insurance premium, please complete the important attached notice as soon as possible to ask us to set up an escrow account and advance the insurance premium for you. If you choose this option, you would repay us for the advance in your future monthly payments. We will need the contact information for your insurance agent or company as well as the amount of the premium currently due. Insurance companies allow a very short time to reinstate policies that have expired and it is important that you call us immediately if you need our assistance. We cannot pay your voluntary hazard insurance premium without your cooperation.

    If you do not elect to establish an escrow account pursuant to the above paragraph for the continuation of your insurance policy, we will establish one in conjunction with the insurance we obtain and that escrow account will be charged for the premiums that we pay. **As a result, your monthly mortgage payments will be increased to include the cost of this policy.**

  - *Applicable to Escrow*
    If we purchase this insurance, your escrow account will be charged for the premiums that we pay. **Please be advised that your monthly mortgage payments will be increased to include the cost of this policy.**

- **THE INSURANCE WE OBTAIN:**

  - The insurance we obtain will remain in effect until you provide us with evidence of acceptable coverage, at which time the policy we obtained will be canceled, and you will receive a refund of any unearned premium.

    Even if you obtain coverage that is acceptable to us, please be aware that if there is a lapse between the cancellation of your insurance and the effective date of your new coverage, you will be charged for the coverage that we purchased to cover that lapse period.

  - **The cost of the insurance we obtain is likely to be much higher than the cost of coverage you could obtain on your own.** This is because the insurance we purchase is issued automatically without evaluating the risk of insuring your property.

  - **The hazard insurance we obtain will not cover any amount you feel your home is worth in excess of the amount of dwelling coverage that you previously obtained and we entered on our records.**
    If you have information to verify that the amount of coverage should be different please let us know, in writing, at the address in this notice. If we did not know the last amount of insurance coverage you obtained, we will purchase coverage in the amount of the unpaid principal balance of your loan. Although such coverage does not meet our property insurance requirements, we will purchase it as a default in the absence of information allowing for acceptable coverage for your property. We will charge the cost of such insurance to you as described in the "Escrowing for Insurance" paragraph above. This does not in any way relieve you of your obligation to provide coverage acceptable to us.



NMLS #: 1852

OB0111   022301FEXP19914030102                                                01 EXPIRED INS LTR 1      F 008

- **The hazard insurance we obtain will cover <u>only</u> the structure of your home** (e.g. the building, walls, floors, roof and permanent attachments).

    - It will <u>not</u> cover your furniture or any of your other personal belongings.
    - It will <u>not</u> cover the cost of temporarily living outside of your home because it was damaged and is being repaired.
    - It will <u>not</u> cover any liability incurred by you personally to someone who is injured while on your property.

- The policy we obtain will supersede any lender coverage remaining in effect under your previous policy. Obtaining your own insurance is in your best interest. You have the right to purchase your own insurance from the insurance company of your choice. If you do not have a current policy covering your property, please contact your agent or carrier and purchase coverage.

- **If we purchase insurance for you, an affiliate of OCWEN LOAN SERVICING, LLC may benefit.**

    We may incur expenses in placing this insurance policy. Such expenses are recoverable by us as stated in your mortgage documents and/or Deed of Trust. The insurance company may reimburse us for these expenses in conjunction with the placement of this hazard insurance, and may factor such reimbursement into the rate charged for the coverage.

- **IMPORTANT BANKRUPTCY INFORMATION:**

    - If you have filed for bankruptcy and your case is still active or if you have received an order of discharge, please be advised that this is not an attempt to collect a pre-petition or discharged debt. Any action taken by OCWEN LOAN SERVICING, LLC is for the sole purpose of protecting our lien interest in your property and not to recover any amounts from you personally. If you have surrendered the property during your bankruptcy case and you are no longer occupying the property, you may disregard this notice. **If you are represented by an attorney in a bankruptcy proceeding, you should review this notice and discuss any questions you may have regarding this notice with your attorney.**

- **FAIR DEBT COLLECTION PRACTICES ACT DISCLOSURE:**

    - OCWEN LOAN SERVICING, LLC is required by the Fair Debt Collection Practices Act to inform you that, as your loan servicer, we are attempting to collect a debt, and any information obtained will be used for that purpose. However, if you have received a discharge from bankruptcy, and the loan was not reaffirmed in the bankruptcy case, OCWEN LOAN SERVICING, LLC will only exercise its rights against the property and is not attempting any act to collect the discharged debt from you personally.

- **IMPORTANT STATE INFORMATION:**

    - Your state may offer a FAIR plan which may offer coverage on your property at a lower cost. Contact your state FAIR Plan association or Department of Insurance for additional details on FAIR plan coverage.

    - Please be advised that lender-placed carrier providing the coverage referenced above may be staffing our customer service telephone lines.

**WE HOPE YOU'LL AGREE THAT OBTAINING YOUR OWN INSURANCE IS IN YOUR BEST INTEREST.**



Ocwen Loan Servicing, LLC is a debt collector attempting to collect a debt and any information obtained will be used for that purpose.

If you have filed a bankruptcy case with respect to your obligation to Ocwen Loan Servicing, LLC, you should discuss this notice with your bankruptcy attorney. Whether or not you are liable for any sums advanced, will depend upon the type of bankruptcy which you have filed and whether you have reaffirmed your debt with Ocwen Loan Servicing, LLC.

NMLS #: 1852

OB0112   032301FEXP19914030103                                              01 EXPIRED INS LTR 1        F 008

# IMPORTANT NOTICE - PLEASE READ

**If you are unable to pay the premium for your voluntary homeowners, condominium unit owners, flood or wind insurance, we may be able to assist.
Please note this offer is not available on Home Equity Lines of Credit.**

If you wish to maintain your current voluntary insurance coverage or obtain/increase your own voluntary insurance coverage, but are unable to pay the premium, OCWEN LOAN SERVICING, LLC will advance the premium on your behalf. If necessary, OCWEN LOAN SERVICING, LLC will request that your insurance agent or company immediately reinstate your voluntary insurance coverage without lapse. OCWEN LOAN SERVICING, LLC will establish an escrow/impound account to collect for repayment of the advanced insurance premium, as well as all future insurance disbursements for all required insurance coverage.

By signing this form, you agree to the following terms:

- You agree to the establishment of an escrow/impound account.

- You agree to provide a copy of your insurance premium invoice for your voluntary insurance policy and you will notify your insurance agent or carrier that all future insurance premiums will be paid by OCWEN LOAN SERVICING, LLC.

- You agree to the repayment of the insurance premium advanced on your behalf to be collected by OCWEN LOAN SERVICING, LLC through the established escrow/impound account which will increase your total monthly payment.

- You agree to the repayment of all future required insurance premiums to be collected by OCWEN LOAN SERVICING, LLC through the established escrow/impound account and increase your total monthly payment.

- You agree that OCWEN LOAN SERVICING, LLC will manage your escrow/impound account in accordance with your loan documents as well as state and federal law.

I/We, agree to the terms listed above and request that OCWEN LOAN SERVICING, LLC proceed with the payment of the insurance premium identified on the enclosed insurance premium invoice. I/We understand that every effort will be made to advance the insurance premium to the insurance agent or company designated on the premium invoice in a timely manner. OCWEN LOAN SERVICING, LLC is not liable for any failure of the insurer to receive or accept the premium or to reinstate the policy. In the event that the insurer fails to accept the premium and reinstate the policy, any refund of premium I/we receive will immediately be returned to OCWEN LOAN SERVICING, LLC to be credited to the escrow account.

Signature: _____

Signature: _____

Date: _____



Please immediately mail or fax the signed notice, along with a copy of your current insurance premium invoice, to the address or fax number listed below.

OCWEN LOAN SERVICING, LLC
ITS SUCCESSORS AND/OR ASSIGNS
P.O. BOX 659826
SAN ANTONIO, TX 78265-9826
Fax Number: (866) 807-1814

NMLS #: 1852

OB0015   042301FEXP19914030104                                          01 EXPIRED INS LTR 1    F 008