Case 12-12020 (MG)                                Page ___ of _17_

Karen M. Rozier
7957 Dahlia Circle
Buena Park, CA 90620
(714) 512-5740
Claimant Unrepresented

1
2
3

4

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

5

6

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | Chapter 11 |
| Residential Capital, LLC, et. al. | ) | Jointly Administrated |
| | ) | |
| Debtors | ) | **OPPOSITION TO THE OBJECTION OF THE RESCAP** |
| | ) | **BORROWER CLAIMS TRUST TO PROOFS OF CLAIM** |
| | ) | **FILED BY KAREN MICHELE ROZIER (CLAIMS NOS.** |
| | ) | **4738 AND 5632)** |
| | ) | |
| | ) | [Related to 7474-4,7457] |
| | ) | |
| | ) | Hearing: October 22,2014 |
| | ) | Time:  10:00 A.M. EST |
| | ) | |
| | ) | |

The *Debtors* (the "Objection," ECF Doc. # 5162) seek to disallow and expunge Rozier Claims No. 4738

and 5632.  Debtor's Objection is supported by the Declaration of Deanna Horst (the "Horst Decl.,"

attached as Ex. 3-A to Objection), the Declaration of Yaron Shaham (attached as Ex. 3-B to Objection).

Claimant OBJECTS to their opposition on the following grounds:


A.  Objection Not Supported by Truth Declarations. Claimant is filing her Motion to Strike these two

   declarations with her declarations in support thereof

      a.  Declaration of Yaron Shaham

      b.  Declaration of Deanna Horst

B.  Their Objections Have No Merit

C.  Claimant Has Met the Burden of Proof

RECEIVED
OCT - 3 2014
U.S. BANKRUPTCY COURT, SDNY

Case 12-12020 (MG)                     Page ___ of _17_

## BACKGROUND

The property in dispute is described by **Exhibit (A)**. A true and correct copy of the latest appraisal dated

4/2/14 is attached to Rozier's Declaration in Support of Her Opposition **to Debtor's Objections**. [Decl 9]

At all times material to these proceedings, the property has always been a 4,206 square foot custom-

built architectural masterpiece. At all times material to these proceedings Debtors and it agents have

described the property as a 2,096 square foot property. [Decl 10] The loan is also in dispute. Rozier

claims her middle name is Michele and that she has never executed a document or allowed anyone to

execute a legal document in her presence with her middle name misspelled. Debtors' claimed her

middle name is Michelle. [Decl 51[1]] Rozier claims she signed her loan on June 1, 2006. Debtor's claim

Rozier modified a rescinded loan dated December 23, 2005 on May 22, 2006 and that is the operable

note. Rozier claims that an entity named RAMP2007 foreclosed on her property. Debtors claim it was

RAAC 2007RP1. Rozier claims she was not in default when Debtors declared default in March 2008.

Debtors claim she was, although their records contradict their claims. Rozier alleges that Debtors then

declared default and returned her payment to her. Debtor's records support Rozier's theory of events.

---

[1] Claimant apologizes for not being able to cross reference this motion to the declaration. Claimant simply ran out of time. Claimant was unexpectedly pulled into a three-day trial which once again involves U.S. Bank. Specifically, Claimant was accused of Workplace Violence by an attorney whom Claimant has not seen since Jan 2014. Claimant has not been this attorney's office since Oct 2014 and only called her office once in July 2014 in response to hearing claims that the attorney was suing her. While the attorney claims to represent the people, she has 'tanked' some very high profile cases in Southern California, most by failing to complete the most mundane tasks such as serving parties and meeting deadlines. Claimant was quite public about this important deadline but the attorney not only put the case over to the most inopportune time, but she refused to a small continuance which would have given me more time. This attorney admitted during trial to sending a process server to disrupt Ms. Pamela Ragland's trial versus U.S. Bank. The Process Server was caught by the bailiff spoiling the jury pool and the judge stopped the proceedings to question the jurors. Ms. Ragland settled with U.S. Bank on Friday September 26, 2014. This attorney presently claims to represent Mary McCulley. Ms. McCulley won her case against U.S Bank during her jury trial and was awarded $1,000,000 in damages plus $5,000,000 in punitive damages. U.S. Bank appealed and lost. Ms. McCulley is presently in federal prison based on clear lies by agents for U.S. Bank. This California attorney claims to represent Ms. McCulley in her appeal of conviction and sentence despite not being a criminal lawyer. In fact, this attorney told her clients that she is not a criminal lawyer but that on an occasion when she was accused of a crime, she hired the most qualified criminal defense attorneys to secure her freedom. This attorney admits that she has not hired one competent criminal attorney to help secure Ms. McCulley's freedom, so I fear that she is misrepresenting Ms. McCulley in order to bill Ms McCulley after she completes her sentence in March 2015.

Case 12-12020 (MG)                    Page ___ of _17_

Despite all the controversy, Rozier attempted to work in good faith with Debtors and signed and

executed a forbearance agreement on April 29, 2008 [Decl 29]. Debtors immediately reneged and

demanded that Rozier sign a blank signature page or lose her home.  Rozier discovered that Debtors

were engaging in this horrendous behavior with countess other good people, which is why we are here

today. Here we are six years later and no Debtor, its agents, successors or assigns, has been required to

answer one question as to how they can get everything so wrong yet feel they have the right to harass,

annoy, intimidate and bully average citizens, though Rozier is far from average[2].

<u>DISCUSSION</u>

**A. Objection Not Supported by Truth Declarations**

1. Debtors have engaged in subterfuge and trickery and hired the least ethical lawyers it could find
   to defend them.

2. Debtors' Motion is supported by the Declaration of Yaron Shaham. Claimant Rozier seeks to
   strike this declaration in its entirety and prays that her motion to strike and declarations in
   support thereof are sufficient. Claimant's MOTION TO STRIKE THE DECLARATION OF YARON
   SHAHAM IN SUPPORT OF THE OBJECTION OF THE RESCAP BORROWER CLAIMS TRUST TO PROOFS OF
   CLAIM FILED BY KAREN MICHELE ROZIER (CLAIMS NOS. 4738 AND 5632); DECLARATION OF KAREN
   MICHELE ROZIER IN SUPPORT THEREOF is attached hereto as **Exhibit B.**

3. Debtors' Motion is supported by the Declaration of Yaron Shaham. Claimant Rozier seeks to
   strike this declaration in its entirety and prays that her motion to strike and declarations in
   support thereof are sufficient. Claimant's MOTION TO STRIKE THE DECLARATION OF DEANNA
   HORST IN SUPPORT OF THE OBJECTION OF THE RESCAP BORROWER CLAIMS TRUST TO PROOFS OF

---

[2] Rozier requested Whistle Blower status from the government and at one time filed a billion dollar CFBP complaint
against U.S. Bank N.A. for their egregious behavior, and she intends to pursue it at her earliest opportunity.

CLAIM FILED BY KAREN MICHELE ROZIER (CLAIMS NOS. 4738 AND 5632); DECLARATION OF KAREN

MICHELE ROZIER IN SUPPORT THEREOF is attached hereto as **Exhibit C.**

4. That leaves Debtors with a Motion not supported by Declaration, but supported only on its

arguments. Here too Debtors fail. Debtors' lack of candor when discussing Rozier's History of

Motions with this court should certainly give this Court pause. Debtor submitted 73 pages with

most of it being incorrect. Worse, in their 3-page dissection of Rozier's previous filings, they

omit Claimant's major contribution to this bankruptcy, i.e. the exposure of their so-called expert

Michael Talerico as being unqualified to render an opinion in this case. Debtors withdrew their

motion, but that doesn't change history, one which this court should be quite familiar.

5. Debtors want to pretend the underlying loan doesn't matter when it comes down to discussing

the details of the transaction, but then want to pretend it matters most when it comes down to

them trying to collect money.

6. In their motion Debtors include an Exhibit indicating that Judy Faber, a "Vice President" for

Residential Capital, somehow properly endorsed a note executed by Rozier and all the

requirements attached to said act. Company, LLC page 87 of 87 of Debtor's motion. The

rescinded note was allegedly endorsed to LaSalle Bank, N.A as Trustee WITHOUT RECOURSE by

Debtor Residential Funding Company, LLC. [Decl 23]

7. However, Ms. Faber is an admitted robosigner. [Decl 24] She previously appeared in Rozier's

property files when Rozier refinanced to escape U.S. Bank. [Decl 21] Debtors have managed to

hide Ms. Faber though they clearly control her. Debtors have not put forth any declarations by

Ms. Faber but instead offer the declaration of Deanna Horst, which I pray the Court strikes.

8. Claimant suspects that Debtors each of them acting separately or in concert, churned her and

committed clear racial lending practices. While Claimant is intelligent, this was her first property

purchase and she trusted the mortgage and lending industry. [Decl 21, 22]

**B. Their Objections Have No Merit**

<u>Reply To Debtor's Argument that Tender is Required in California</u>

9. Debtors are arguing a point that they have already lost three times in California. [Decl 27, 46, ]. The California Judiciary have been quite consistently in this particular case based on these specific facts that no tender is required from Claimant to Debtors, Bank of America, or U.S. Bank. Mr. Shaham has begged the court repeatedly and colorfully, crying that *"she hasn't paid in years"* and *"she owes us $280,000"* but three different California ruled against him. Claimant still has injunctive protection in California, with no tender required.

<u>Reply To Debtor's Argument that Rozier Lacks Standing</u>

10. Debtors would have this Court believe that Rozier is demanding $100,000,000 to recover damages from one act which occurred on September 24, 2012, i.e. the wrongful foreclosure of the subject property. Debtors could not be more wrong, though they usually prove Rozier wrong when she assumes they can't get worse. Rozier claims that Debtors began harming the day they inserted themselves into her transaction, though she didn't really start feeling the pain until December 2007 when she attempted in good faith the work with them. Rozier was quite reasonable with her demands and what she was willing to give in return, but Debtors chose to attempt to take everything from Rozier – her home, health, livelihood, belief system, and family. Rozier has provided Debtors' with evidence of the lasting harm they have caused her including her never being able to say "I am the head rocket scientist in charge of all other rocket scientists." Rozier earned that right to hold that position and was even offered that position by the U.S. Navy. Instead of being able to hold her head high as she rightfully deserves, she is forced to walk in shame. Debtors included her job offer with their submittal.

Case 12-12020 (MG)                    Page __ of 17

11. In an attempt to discredit Claimant, Debtors introduce a citation that was entered against the Roziers in their abstention, one that is only enforceable by civil action, something the state of California wants to avoid. Debtors are wrong if they believe that the California Architect's Board ("CAB") is what harmed her husband's business as most of Claimant's husband's work was out of Mexico, a place where the CAB has no jurisdiction.

12. Rozier has never claimed to be an architect. Rozier worked alongside her husband – a decorated Air Force veteran and Eagle Scout who has a Masters Degree in Architecture from California Polytechnic Institute, Pomona – as his manager, a far fall from head rocket scientist-grace. [18, 42, See Declaration of David Rozier] Due to her inquisitive mind, Rozier immediately starting asking questions:

   a. Who is Edward Roybal[3] and why did we name a school built on an earthquake fault, plagued by deadly hydrogen sulfide and methane gases after him?

   b. Why does California build so many schools for brown children on brown fields? Why is the elementary school for brown kids situated right next to an active train line? How much are the children learning when they are shaken by trains at least twice daily?

---

[3] According to Wikepedia, at the time of his death more buildings in Los Angeles and in the nation were named after him than any other single person. He is honored annually by the National Association of Latino Elected and Appointed Officials (NALEO). In 1963, he became the first Latino Congressperson from California since 1879, and was known best for supporting veterans, the elderly and Mexican-Americans. Over his tenure he was only accused once of accepting a bribe for $1,000. However, since he voted AGAINST every bill that would have benefitted the businessman, the Ethics Committee believed him when he said he didn't recall meeting the man and his acceptance of the $1000 donation was not a bribe. In my opinion, he would have been incensed with the renaming of Belmont had he fully understood the long term repercussions. Although it may appear that this note has nothing to do with Claimant's argument, it is at least truthful, unlike the immaterial and false information Debtors included in their lengthy Opposition motion. The Court should now that I am not just "picking on Residential Capital". I am fighting for my country and the world and that includes exposing corrupt and criminal enterprises. I was content being an engineer until I discovered how GMAC – a company where my mother worked on the assembly line, where my brother worked for 25-years (though he was cheated out of his health and pension when GM spun off his unit simply to reduce its pension and health expense), and where I worked for GM Hughes Electronics – was fleecing Americans with no regard whatsoever for the law or public policy.

   c.   Why did the Planning Commission allow Northgate to build a food storage and handling facility on an old Delphi plant less than five years after the plant was shut down as an environmental hazard?

   d.   If California architects are so great, why do the homes they build keep sliding down hills?

   e.   If California architects are so great, why do they approve so many developments while failing to plan for water?

   f.   Why are we fracking near fault lines?

   g.   Why are there so few Black or Hispanic architects in the state?

   h.   Who are these people pretending to be qualified at the California Architect's Board and how did they get their position? How are they compensated

13.  Claimant raised at least 50-questions to the CAB and they responded by fining the Roziers based on *allegations* despite having all the evidence that these allegations were false[4]. The state of California responded like any good bully – it flexed its Administrative powers to silence Rozier, who does not intend to forget about the fight. Rozier was prevented from attending the hearing.

### Reply To Debtor's Argument that Rozier's Proof of Claim Has No Merit

14.  Debtors are misleading the Court about one issue that has been already decided by the Federal Bankruptcy and Federal Appeals Court.  Debtors by and through counselors from Severson and Werson claiming to represent U.S. Bank, argued to the Court that only the Trustee could bring the motion.  Rozier argued that since the Bankruptcy Trustee had abandoned her estate (due primarily to Debtors' fraudulently portraying her 4,206 square foot architectural home as a

---

[4] We intend to expose the CAB for its incompetence despite the restraining order preventing us from visiting their headquarters, a place we have never visited.

2,096 square foot home worth less than half its value, but also due to their attorneys portraying

Rozier as an African American deadbeat sponging off the wealth of Orange County, which is less

than 2% African American) and since the Trustee was swamped with other work, the Court

would allow Rozier to defend her estate. [Decl 27] Rozier did not exit bankruptcy since other

Creditors are involved and she believes those creditors should be made whole. Rozier does not

feel she should be bankrupt or that her Creditors should be shortchanged the money she has

always intended to pay them simply because Debtors forced her into bankruptcy to cover their

out-of-control practices. As a show of good faith, Rozier even filed an amendment to her

bankruptcy to reflect this case and her expected return. [Exhibit WHAT]

15. Rozier is more than willing to take the required financial course to exit bankruptcy, a course she

is also qualified to teach[5]. It was not Rozier's lack of understanding of finances that drove her

into bankruptcy but her trust in Debtors to follow the law.

16. Both Roziers have repeatedly denied knowing anyone named Eric Hardemion and U.S. Bank is

flat out lying when it claims that Rozier notified them of Mr. Hardemion's attempt to steal our

house in a desparate attempt to stave off foreclosure. [Decl 43, 44, 45] As the record shows, we

hired a lawyer to represent the Trust. What the record does not reflect is that we hired this

lawyer to prosecute David's Quiet Title but the lawyer filed a bankruptcy for a Trust that had

zero debts! We received a full refund less court fees and that lawyer is no longer doing business

in Orange County. The bankruptcy court looked at all the evidence and concluded that there was

no malice by the Roziers, as we have been completely forthright in our requests and demands.

---

[5] Rozier studied finance at Carnegie Mellon University Graduate School of Business under Professor Bob Damon,. [around 1990] Unhappy with her understanding the first time around as evidenced by her low B-grade, she audited the same course. Rozier also taught basic financial planning through Junior Achievement [Orange County, CA 1991] Rozier would later write a finance column for her close friends and family. [1998]

**Reply To Debtor's Argument that Rozier is Not Entitled to Recover Additional Amounts Under the FRB**

**Consent Order**

17. Rozier never claimed that she is entitled to recover additional amounts through the

Independent Foreclosure Review process. Rozier alleged that Debtors are trying to convince the

Court that she is only entitled to $500 for all the clear harm they caused, which is just wrong.

Debtors have not met their burden to defeat Rozier's claims but in fact did file clearly false

declarations to support their unjust position. They don't deserve any mercy, though Rozier

certainly deserves relief.

**C. Claimant Has Met the Burden of Proof**

18. A proof of claim is adequate if it sufficiently informative to place the Debtor on notice of the

subject and extent of her claim.  Claimant has been called many things over the years, but she

has never been accused of being shy with sharing information.  Claimant has made it perfectly

clear to all parties since the very beginning as to her intent to be made whole by the parties that

caused her damages.  Debtors should not feel that just because others parties have caused

Claimant damage that they are absolved for their part. Claimant submitted her LEGAL AND

FACTUAL REASONS IN SUPPORT OF CLAIMANT'S PROOF OF CLAIM AND DEMAND on July 21,

2013 and repeatedly contacted the Borrower through its agents Silverman Acampo. KCC, LLC,

and Moerrison & Foerster regarding their intent.  [Decl 3]

19. Even in her initial Proof of Claim filings Claimant explained that damages would have to be

determined as she asked for punitive damages. Claimant scoured each and every Omnibus

Objection to see if her claim was being objected to, not trusting Debtors to inform her in a

timely manner.  When the deadline for opposition passed, Claimant asked the Court to order

Debtors to pay. Instead, now comes the Debtors pretending as though Claimant didn't make her

demands and intent known to them prior to January 2014.  The proof of claims filed in this

matter set a definite amount of money that Rozier seek to recover from the debtors, ETS

Services, LLC ($666,000) and GMAC Mortgage ($96,927,309), which is broken down specifically

in its components:

    a.   Lost of salary as Chief Engineer, Air-to Ground Missile, U.S Navy plus the retirement

        benefits this lost career path would have generated;

    b.   Money wrongfully collected under the fake note;

    c.   Intentional infliction of emotional harm

    d.   RESPA violations

    e.   Additional student loan interest that is accruing as Rozier fails to meet that debt, paid

        directly to SallieMae

    f.   Expenses

    g.   Punitive damages

20. Rozier alleges in her proofs of claim and filed with it, that she wrote to GMACM and called them

as well to complain about the problems as early as December 2007, but that GMACM was not

responsive either to the phone calls or to the letter. After months of fruitless attempts to

resolve the issue, Rozier finally thought they reached agreement when GMACM admitted that

they were at fault [ Decl 29]. Debtor GMACM then reneged but then attempted to bully Rozier

into signing a blank signature page to replace the one they executed.  Rather than accept a

wrongful foreclosure or admit to fault that was not hers, Rozier first sought help through the

Trustee, then through the Court and then through aggressive litigation.  Rozier has an open

bankruptcy and amended her filing to reflect this litigation.

21. Rozier's initial 2008 California action remains open despite Debtor's attempts to have the case

closed based on trickery instead of on the merits.  [Decl 25]

CONCLUSION

22. Debtors have been well aware of Rozier's demands since July 2012 and were completely untruthful with this Court when it claimed it was not aware until she requested payment in January 2014. Debtor's have offered no valid opposition to her requests or her specific allegations. If anything, Debtors' wrongful acts in seeking to expunge the proofs of claim should convince the Court that they are still operating as recklessly and unlawfully. Therefore, Debtors can not show prejudice in opposing any amendment to make the claim more specific.

23. Debtors could have asked to reduce the amount, but instead chose to ask the court to expunge Rozier's claims entirely. For that, Debtors deserve the harshest response. Their objection should be OVERRULED WITH PREJUDICE and Rozier's claims should be allowed to stand.

24. In conclusion, Claimant Rozier believes her claim fairly puts Debtors on notice of the nature and extent of her claims, but if this court is not persuaded of this, then the claimant Rozier pray leave to amend the claim to meet any deficiencies found.

### **Prayer**

The Debtors' Objection fails to rebut at least one essential element of the Rozier Claim. The declarations in support thereof are so obviously flawed and fabricated that the court must conclude that Debtors have no valid defenses. Therefore, the Objection is should be OVERRULED WITH PREJUDICE.

October ____, 2014

_____
KAREN MICHELE ROZIER, MPA/MSIA/MBA/BSEE
Unrepresented Claimant

## MEMORANDUM OF LAW IN SUPPORT OF CLAIMANT'S POSITION

**California Law**

1. Under California Cal Civ. Code § 1623, where a contract which is required to be put in writing is prevented from being put into writing by the fraud of a party thereto (Lender), and other party (Plaintiff) who is by such fraud led to believe that it is in writing and acts upon such belief to his prejudice, may enforce it against the fraudulent party (Lender and its successors).

2. Under Cal Civ. Code § 1624(b)(D), a note or other writing by the agent is sufficient to indicate that a contract has been made.

3. § 1688. A contract is extinguished by its rescission. A rescission is a remedy that disaffirms the contract. It means that no contract was formed.

4. § 1689.a) A contract may be rescinded if all the parties thereto consent.

5. § 1691 Subject to Section 1693, to effect a rescission a party to the contract must, promptly upon discovering the facts which entitle him to rescind if he is free from duress, menace, undue influence or disability and is aware of his right to rescind: (a) Give notice of rescission to the party as to whom he rescinds; and (b) Restore to the other party everything of value which he has received from him under the contract or offer to restore the same upon condition that the other party do likewise, unless the latter is unable or positively refuses to do so. When notice of rescission has not otherwise been given or an offer to restore the benefits received under the contract has not otherwise been made, the service of a pleading in an action or proceeding that seeks relief based on rescission shall be deemed to be such notice or offer or both.

Debtors nor their agents have successfully shifted this burden in California. Claimant's 2008-case remains open as the state of California has a clear and compelling reason to need to be able to identify the parties that have helped bankrupt our state.

6.  Cal. Code Civ. Proc. § 526(a)(1) provides that an injunction may be granted when it appears by the complaint that the plaintiff is entitled to the relief, or any part thereof, consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually.

7.  Cal. Code Civ. Proc. § 526(a)(3) provides that an injunction may be granted when it appears, during litigation, that a party to the action is doing, or threaten or is about to do, or is procuring or suffering to be done, some act in violation of the rights of another party to the action respecting the subject of the action, and tendering to render the judgment ineffectual.

8.  Cal. Code Civ. Proc. § 526(a)(4) provides that an injunction may be granted when pecuniary compensation would not afford adequate relief.

Claimant was awarded an injunction with no tender requirement. US Bank requested relief from different judges, but to no avail. U.S. Bank has attempted to trick the Courts into believing Rozier is still not entitled to injunctive relief, presumably for the benefit of Debtors – but the Appeals Court saw through the trickery.

**Bankruptcy Law**

9.  Section 501(a) of the Bankruptcy Code provides that "[a] creditor . . . may file a proof of claim." 11 U.S.C. § 501(a). "The proof of claim, if filed in accordance with section 501 and the pertinent Bankruptcy Rules, constitutes prima facie evidence of the validity and amount of the claim under Federal Rule of Bankruptcy 3001(f) and Code section 502(a)." 4 COLLIER ON BANKRUPTCY ¶ 502.02[3][f] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev. 2013). Section 502(a) provides that a properly filed claim "is deemed allowed, unless a party in interest. . . objects." 11 U.S.C. § 502(a). If an objection is made, the court shall determine the amount of such claim "as of the filing date." *In re Solutia, Inc.*, 379 B.R. 473, 483 (Bankr. S.D.N.Y. 2007) (citation omitted). If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim. *See In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009);

*In re Adelphia Commc'ns Corp.*, Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).

10. Claims objections have a shifting burden of proof. Correctly filed proofs of claim "constitute prima facie evidence of the validity and amount of the claim . . . . To overcome this prima facie evidence, an objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *In re Reilly*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000). The objecting party is thereafter required to produce evidence equal in force to that provided by the claimant to rebut the presumption of the claimant's prima facie case. *In re Allegheny Intern., Inc.*, 954 F.2d 167, 173–74 (3d Cir. 1992) ("In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency."). Once this is done, the burden then shifts back to the claimant to produce additional evidence to prove the validity of the claim by a preponderance of the evidence. *Id.* at 174.

11. The bankruptcy code defines a claim in broad terms (see 11 U.S.C. § 101(5)(a): "The term "claim" means—(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."). The Rules do not require that a creditor plead its proof of claim with specificity or precision (see Fed. R. Bank. P. 3001(a): "A proof of claim is a written statement setting forth a creditor's claim."). In fact, courts have held that a proof of claim must contain the creditor's demand against the debtor and the intent to hold the debtor liable (see *Liakas v. Creditors Comm.*, 780 F. 2d 176 (1st Cir 1986); *In re: Bloomingdale*, 160 B.R. 101 (Bankr. N.D. Ill., 1993)). Further, at least one court in an unreported case has held that a plaintiff who files suit against a defendant in federal court was only required to allege a breach of a RESPA duty, and further allege that the breach resulted in damages to state a cause of action. (See *Weinert v. GMAC Mortg. Corp.*, 2009 WL 3190420 (E.D. Mich.)

If this is all that is required to survive a motion to dismiss when a lawsuit is filed seeking relief, it should

certainly be sufficient under the requirements for a proof of claim in bankruptcy. In fact, under the

instructions for the proof of claim form, the description for the basis of the claim describes only in very

general terms how the debt was incurred, and that a debtor may be required to provide additional

disclosures if an interested party objects to the claim. It further requires a date and signature and the amount

of the claim. It requires identification as to whether the claim is secured or entitled to priority. All of those

requirements were met by the Rozier. Rozier has made her claims known, has been an active participant in

these proceedings, and had made her intent to hold the Debtors liable from the very beginning. Debtors

GMACM and ETS did request clarification or further information and Rozier provided it along with her

demand.

If in fact the Rozier' claims are deemed to be legally insufficient, she should be allowed to amend her claims

to meet any deficiencies noted by the Court. Ordinarily an amendment would not be allowed after a proof of

claim deadline actually runs. Such a harsh result should not be applied here for two reasons: (1) Rozier has

complied with all of the Court's orders to date and promptly replied to Debtor's request for additional

information; and; (2) the Opposition to Rozier's proofs of claim are not supported by any truthful declaration

that should be capable of withstanding a Motion to Strike.

October ___, 2014

KAREN MICHELE ROZIER, MPA/MSIA/MBA/BSEE
Unrepresented Claimant

Case 12-12020 (MG)          Page 16 of 17                    Exhibit A

# EXHIBIT A

*Page 17 of 17*

**EXHIBIT "A"**

LOT(S) 4  OF TRACT NO. 2630, IN THE CITY OF BUENA PARK,
COUNTY OF ORANGE, STATE OF CALIFORNIA AS PER MAP RECORDED IN
BOOK 77, PAGE(S) 10-12 INCLUSIVE OF MISCELLANEOUS MAPS, IN
THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.