Case 12-12020 (MG)                    Page ___ of ___

*EX B*

*Copy for Judges Chamber*

Karen M. Rozier
7957 Dahlia Circle
Buena Park, CA 90620
(714) 512-5740
Claimant Unrepresented

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

In re:                                      )   Case No. 12-12020 (MG)
                                            )   Chapter 11
Residential Capital, LLC, et. al.           )   Jointly Administered
                                            )
                    Debtors                 )   **MOTION TO STRIKE THE DECLARATION OF**
                                            )   **YARON SHAHAM IN SUPPORT OF THE**
                                            )   **OBJECTION OF THE RESCAP BORROWER CLAIMS**
                                            )   **TRUST TO PROOFS OF CLAIM FILED BY KAREN**
                                            )   **MICHELE ROZIER (CLAIMS NOS. 4738 AND 5632);**
                                            )   **DECLARATION OF KAREN MICHELE ROZIER IN**
                                            )   **SUPPORT THEREOF**
                                            )
                                            )   [Related to 4091, 7474-4, 7457]
                                            )
                                            )   Hearing: October 22,2014
                                            )   Time:  10:00 A.M. EST
                                            )

OCT - 3 2014
U.S. BANKRUPTCY COURT, SDNY

Claimant Karen Michele Rozier, herein referred to as "Movant", "Claimant" "Appellant-Claimant" or

"Rozier", an individual and without benefit of legal counsel, respectfully moves the Court to strike the

Declaration of Yaron Shaham ["Shaham Declaration" or "Shaham Decl"] submitted as Doc 7474-4 on

09/03/14 at 17:57:16 Exhibit 3-B, pages 1-361 in its entirety. Movant states on information and belief that

the sworn Shaham declaration contains materially false statements and serious acts of omission as

discussed below, in the declaration, the exhibits, and the records of this proceeding. As the Shaham

declaration was submitted under penalty of perjury and with the intent to deprive Rozier of an amount of

greater than $950, Movant also requests the court charge Mr. Shaham with criminal perjury. Additionally,

## Tables of Authorities and Statutes

1

2
*Wells Fargo v. Erobobo*, 2013 WL 1831799, 2013 N.Y. Slip. Op. 50675(U) (NY Supreme Court, Kings

3
County, 4/29/13)

4

5
Wells Fargo Bank NA v. Moise (No 13450/2009, Supreme Court, Kings County, NY)

6

7
*Ragland vs. U.S. Bank (*G045580, 4th Appellate District 3, 2012)

8

9
Miner v. Edwards, supra at 934, quoting Anderson v. Blood, supra at 293).

10
Fischer v. Sadov Realty Corp.34 A.D.3d 630, 824 N.Y.S.2d 434 (2nd Dept 2006).

11

12

13

14
Black's Law (Abridged Seventh Edition)

15

16
Clayton Act 28 U.S. Code § 1746

17

18
Sherman Antitrust Act

19

20
Internal Revenue Code (IRC) § 860(d)

21

22
Federal Rules of Civil Procedure (F.R.C.P.) (c)(4)

23
18 U.S. Code § 1621

24

25
18 U.S. Code § 1623

26

27

28

MOTION TO STRIKE SHAHAM DECL

**Case 12-12020 (MG)**          **Page \_\_ of \_\_**          **Exhibit B**

# EXHIBIT B

Movant requests sanctions of $750 for the cost of preparing and submitting this motion, declaration, and all other supporting documentation, as well as injunctive relief.

## DISCUSSION

### I.    Mr. Shaham Misstates Material Events and Facts

1.    Mr. Shaham claims that I sued Bank of America, National Association, successor by merger to LaSalle Bank National Association, as Trustee **RAAC 2007RP1**. [Shaham Decl 4] That is simply not true. I sued Bank of America, National Association, successor by merger to LaSalle Bank National Association, as Trustee **RAMP 2007RP1**. **[Rozier Decl 7]**U.S. Bank and Debtors are deliberately trying to conceal the fact that for at least two years, they continued to present "evidence" that they had placed my "loan" into a Trust **RAMP 2007RP1** up until Appellant-Claimant showed by a preponderance of the evidence that the **RAMP 2007RP1** trust never existed.  Since then, Debtors and U.S. Bank has attempted to persuade Courts that **RAAC 2007 RP1** was always the Trust that held the property.[1]

2.    Appellant-Claimant can neither confirm nor deny when Mr. Shaham first became involved in her California Action [Shaham Decl 1], but I did not meet him until January 2, 2013. [Rozier Decl 9]. Prior to that time, I had interacted with John B. Sullivan, Adam Barasch and Ben Eilenberg] [Rozier Decl 5, 8]. Mr. Shaham fails to disclose if he worked on this case from 2008-2010 when he was employed with Wolfe & Wyman, the law firm that was representing Debtors when I sued them in beginning October 28, 2008, the "initial California action". The lawyer who handled Debtor's case at the time has conveniently had hearing scheduled at the same time as our hearings, allowing him to listen in and presumably continue to assist Debtors. [Rozier Decl 10, 11]. Most of my dealings were with Mr. Barasch until I formally accused him of violating California Business and Professions

[1] Claimant apologizes if her description is inadequate. Claimant does not understand Trust Law and has little desire to study the field. However, Claimant can read and the record is clear that Debtors and its agents filed paperwork claiming one thing and now is filing paperwork claiming another. In Claimant's tens of thousands of pages, she has been entirely consistent.

1    Code 17200 *et seq.* I had previously charged him with extortion and have filed criminal complaints

2    to that effect. [Rozier Decl 5, 6] The California courts rarely pursue these cases. My accusations

3    of extortion were based on an email he sent. I interpreted his words to mean that his client – the

4    Debtors – would agree to reverse the sale conducted on behalf of and for the benefit of Defendant

5    Bank of America RAMP 2007, if I would give his client U.S. Bank RAAC 2007 RP1 an additional four

6    weeks to respond in a federal appeal. A screen shot of the email which was included in Debtor's

7    exhibits is provided below:



Defective Notice of Sale(4)

Me                                                                    Sep 28, 2012

Adam N. Barasch                                                      Sep 28, 2012
To: Me
CC: Bernard J. Kornberg

Dear Ms. Rozier,

I have discussed your concerns with my client. My client will agree to rescind the Trustee's Deed Upon Sale and
Re-Notice the Trustee's Sale on the condition that you grant me a four week extension of time to respond to your
appeal. If this is agreeable, please advise. I am leaving my office at 2:00 PM, so please advise me prior to that time.

Thanks,

Adam N. Barasch
Severson & Werson
One Embarcadero Center, 26th Floor
San Francisco, CA 94111
(415) 677-5533
www.severson.com

3.  Mr. Shaham represents to the California courts that he represents the interest of U.S. Bank RAAC

2007 RP1, which acquired its so-called interest in the Deed of Trust for the subject property on Jan

12, 2012. He also claims in his various filings that Rozier stopped making payments in November

2007, though the evidence demonstrates otherwise. As he claims the date was November 27,

2007 and that his firm acquired its interest more than five years later – after the California statute

of limitations to collect a debt had expired – he admits that his client U.S. Bank has no legal right to

enforce any debt. Moreover, as he was employed with Wolfe and Wyman during the time I was

litigating against Debtors who were represented by the same firm, it would be clear malpractice

for him to admit that his firm failed to conduct a reasonable search on behalf of his client. "It is

CLAIMANT'S MOTION TO STRIKE SHAHAM DECLARATION - Page **3** of **15**

only if the 'facts within the knowledge of the purchaser are of such a nature, as, in reason, to put

him upon inquiry, and to excite the suspicion of an ordinarily prudent person and he fails to make

some investigation, [that] he will be chargeable with that knowledge which a reasonable inquiry,

as suggested by the facts, would have revealed'" (Miner v. Edwards, supra at 934, quoting

Anderson v. Blood, supra at 293). Fischer v. Sadov Realty Corp.34 A.D.3d 630, 824 N.Y.S.2d 434

(2nd Dept 2006).

4.  In Debtor's Motion which Mr. Shaham supports, as well as in the Declartion of Deanna Horst in

support of said motion, Debtors and Declarants attempt to conceal this by (1) hiding the

assignment of Deed of Trust allegedly notarized by Nikoli Shelton. Ms. Shelton was stripped from

her notary duties in Pennsylvania under stipulation. She is also listed in Massachusetts as a known

robosigner; (2) hiding the January 12, 2012 Assignment of Deed of Trust which predates the

September 2012 wrongful foreclosure that is the subject of the 2012 California Action.  Claimant

has an open case in Orange County from 2009 involving Debtors. At the Order to Show Cause

hearing scheduled for October 1, 2014, the court concurred that the matter had not yet been

heard on the merits and elected to keep the case open pending resolution of this action. A true

and correct copy of the Minute Order is attached hereto as Exhibit *.

5.  Debtors and Declarant(s) omit these crucial facts with good reason. The facts prove that Clamiant

Rozier had Clean Hands and that Debtors and its predecessor, agents and successors each of them

WMC Mortgage Corp, a GE Money Company, LaSalle Bank, NA, Wilshire Credit Corporation, Litton

Loans, GMAC Mortgage, LLS; ETS Services, LLC dba Executive Trustee Services, LLC; Residential

Funding Company; Bank of America N.A.; U.S. Bank N.A. and PITE DUNCAN, LLP --- had very

Unclean Hands, hands so dirty that the government and its various parent companies were right to

shut them down and was quite forgiving by only fining them collectively billions of dollars. Wells

Fargo Bank NA v. Moise (No 13450/2009, Supreme Court, Kings County, NY) is entirely on point

here. In its opinion, the Court writes: *"Plaintiff acknowledges that there was a mistake on the*

assignment and argues that the mistake was de minimis non curat lex. It also argues that the Court

should simply replace the defective assignment with the correction assignment, and proceed with

its action. In fact, the error was not de minimis as the signature of the purported assignor was not

acknowledged, rendering the assignment a nullity. A simple typographical error can be amended,

but a failure to properly acknowledge the signature of the person who signed the instrument

cannot be. No affidavit is submitted by either Yolanda Williams or the notary Lisa Rhyne explaining

what the alleged error was or how it occurred. In fact, the so called "correction" assignment in fact

is acknowledged by a different notary on a different date."

6. Hearing re Preliminary Injunction and TROI: In his Declaration, Mr. Shaham gives the impression

that Claimant was in courtroom trying to get a TRO while her husband was in another trying to get

a PI.  That couldn't be further from the truth.  **[Shaham Decl 7]** Mr. Shaham was present at both

hearings, as were both Roziers. The Court issued the Preliminary Injunction on Feb 05, 2013 and

that Rozier was only ordered to post a $5,000 bond. The Ex Parte application for a Temporary

Restraining Order was held the following day at 08:00 in front of Judge Ronald Bauer, who opened

his courtroom early after I explained to his Clerk how Debtors and US Bank had scheduled the sale

after the Preliminary Injunction. **[Rozier Decl 17, 18, 20]**

7. Mr.Shaham would have the Court believe that there was a routine hearing on May 20, 2013; that

the Court issued a clear order, and that Claimant [Plaintiff] Rozier ignored the Court's order.

[Shaham Decl 8] The May 20, 2013 hearing was a critical hearing in the California Action.  Several

issues were discussed at this hearing including:

    a.  Names of proper Plaintiffs. Claimant asserts that Judge Derek Hunt clearly decided the

        issue that Claimant Karen Michele Rozier was the only remaining Plaintiff. [Rozier Decl 31]

        Locke Lord, LLP appeared in the case claiming to represent two previously dismissed

        Defendants. [Rozier Decl 30] Locke Lorde, LLP has appeared in Debtor's bankruptcy as

        "Special Litigation to Counsel to the Debtors and Debtors in Possession", Docket #4200. At

the May 20th hearing, the new judge was confused by Locke Lord's presence on behalf of

the two dismissed Defendants. All parties – including Mr. Shaham – argued that Locke

Lord's presence was proper as the dismissed Plaintiff David Rozier had not properly

dismissed the two Defendants. [Rozier Decl 33]

   b.   Names of proper Defendants. Claimant was suing Bank of America RAMP 2007 but US

        Bank RAAC claimed it was the party that should be sued. The Court agreed that U.S. Bank

        RAAC 2007RP1 would be added solely to pay any claims awarded against Bank of America

        RAMP 2007RP1. [Rozier Decl 32, 33]

   c.   Allegations allowed: Claimant understood that the Court had disallowed certain

        allegations and she excluded them from her amended complaint. Claimant was unaware

        that she couldn't add different charges, including charges that were specific to the newly

        added Defendant or allegations that Claimant was unaware of at the time she made her

        Second Amended Complaint. Claimant – who is not a lawyer – later discovered that she

        should have asked for leave for the court to amend the complaint out-of-time. At no time

        did Claimant intend to disobey the Court's order. [Rozier Decl 34, 36]

8. Mr. Shaham provided false and deliberately misleading information to the New York Court

   regarding when his firm provided me with the California Superior Court's June 5, 2014 order

   granting terminating sanctions.  [Rozier Decl 37] His exhibits would have an unknowing party

   believe that his firm promptly sent the order and I waited 60-days to appeal, and therefore filed an

   untimely appeal.  I provided the Bankruptcy court with a Certified Copy of the actual court order

   with Proof of Service attached.

II.      **Mr. Shaham Omits Critical Details With the Clear Intent to Mislead the Court**

9. Debtors would have the New York Court believe that the California court has not already ruled on

   the merits of its tender argument. That is one of the few items in this litigation that has been

   heard and decided, and three different judges ruled that no tender was required. Mr. Shaham

conveniently omits the countless times he had ***pleaded*** with the California court to make

Appellant-Claimant pay *something*. He is usually quite dramatic about the point, clearly trying to

portray Rozier as some type of deadbeat. At least three different judges – Derek Hunt, Ronald

Baeur, and Sheila Fell – have heard his pleas, reviewed the evidence, and ruled in Appellant-

Claimant's favor. That is a matter of the record of this case, with facts specific to this case. [Rozier

Decl 12, 21, 29]

10. Mr. Shaham makes it appear that his client participated in Discovery in good faith but that

Appellant-Claimant refused to cooperate. [Shaham Decl 10-12] In fact, I initiated Discovery and

U.S. Bank failed to respond. When it did respond, it refused to provide its answers under penalty of

perjury as required by law. [Rozier Decl 42]

11. Mr. Shaham also fails to disclose how his firm was awarded Summary Judgment through trickery

and confusing. In addition to the Discovery fiasco described in the preceding paragraph, the Court

held a Motion to Compel Discovery hearing in my absence when it knew or should or have known

that my absence was excusable. Even after being presented with a Notice of Appearance at Trial

by the Los Angeles Superior Court Judge, the Orange County court refused to vacate the December

11, 2013 order in a timely manner. That is a matter under appeal. [Rozier Decl 43 -45]

12. Mr. Shaham's benign description of events surrounding Appellant-Claimant's current effort to

vacate the Court's July 2, 2014 order vacating terminating sanctions are equally divorced from

reality. [Shaham Decl 13, 14]. The Superior Court has continued this hearing several times because

they found Appellant-Claimant's story credible. Appellant-Claimant alleges that she did not waive

service and was confused about the date of the hearing, showing up one day late. As the hearing

was set on Friday, Rozier was taken into custody on Monday and endured "soft torture" designed

to break her, and not released until June 30th, the Court found it credible that Rozier could have

been confused about the date of the hearing. [Rozier Decl 51] As Mr. Shaham did not provide

notice and could provide no other instance where Rozier had waived notice, the Court has

continued the hearing to vacate. The lower court judge has been quite clear that she will not

vacate the injunction and restraining order if the Appeals Court takes jurisdiction and the Appeals

Court has been clear that it intends to take jurisdiction. Severson and Werson, by and through its

attorneys Yaron Shaham, Adam Barasch, John Sullivan, Kerry Franich and Jan Chilton, are

aggressively bouncing one court against the other hoping to defeat Rozier with its strength since it

can't prevail on the merits.

### III.    Mr. Shaham's Conduct in the California Action Has Been Equally Outrageous

13. In the California Action, I accused Mr. Shaham of committing perjury when he signed a

Substitution of Attorney stating that he previously represented Bank of America knowing fully well

his firm never did. [Rozier Decl 13, 14] The Court ruled that it was not a matter to be heard Ex

Parte. [Rozier Decl 15, 16] I have been prevented by following through on this motion due

primarily to harassment by Debtor's lawyers Severson and Werson.

14. Mr. Shaham, by and through his firm Severson and Werson, have been equally outrageous in the

abuse of other courts, including the criminal courts. This is a strategy they have used multiple

times to discredit aggressive homeowners when they can't win on the merits.  In addition to falsely

prosecuting me for "workplace violence" though I have never visited their offices, barely phone

them, and never threatened them with anything other than legal prosecution for their crimes, they

aggressively pursued false charges against me. [Rozier Decl 23 -26]. They have since tried to have

me incarcerated, clearly hoping I will be unable to prosecute my case on its merits. [Rozier Decl 61]

 a.  U.S. Bank, N.A. agents used false evidence to have Mary McCulley detained for ten

  months on a fake gun charge, hoping to break her spirits. She was later acquitted of all

  charges and won a $6,000,000 verdict against them around March 2014, which withstood

  U.S. Bank's appeal[2]. [Rozier Decl 49]

---

[2] Ironically, Ms. McCulley is presently incarcerated for "tricking" the same agent  falsely who claimed she pointed a gun at him into providing evidence U.S. Bank N.A. was legally required to provide. Ms. Mc Culley was given the

b.  U.S. Bank, N.A. attempted to have Pamela Sue Ragland charged with Bankruptcy Fraud in

order to derail her litigation against them. Ms. Ragland entered into a confidential

settlement with U.S. Bank on Friday September 26, 2014. I suspect they are trying to

quiet her because her case demonstrates that the stress of wrongful foreclosure

exacerbates symptoms of Autism in children who previously appeared quite healthy.

[Rozier Decl 50] Ms. Ragland was a witness at Severson and Werson's hearing request for

a Workplace Violence Temporary Restraining Order against me and can testify to the

actual events of the hearing. The Judge who awarded the WVTRO has since been

censured by the California Judiciary for abuses of power from the bench. [Rozier Decl 25]

In his stipulation, Judge Scott Steiner admits to having sex in chambers with one lawyer

working on a case appearing before him. I alleged at the time of the hearing that the Court

concealed Mr. Steiner's identity from me, not that I would have sex with him for a ruling!

However, based on Severson and Werson's aggressive behavior in the litigation, I can't say

what they would or would not do to get a TRO.

15. Mr. Shaham admits that U.S. Bank started the foreclosure procedures one day early. [Shaham Decl

13]. The Court's Injunction and Restraining Order are quite clear that U.S. Bank was prohibited

from taking any action related to foreclosure. California has a statutory seven day grace period,

which U.S. Bank is aware of. [Ragland vs. U.S. Bank] [Rozier Decl 52]

16. Attempts to unduly influence appeals court Mr.Shaham would have the New York court believe

that the lower court terminated sanctions and that this order is not under appeal, which is false.

[12, 13, 14]. The truth is that Appellant-Claimant appealed the Court's order granting terminating

sanctions and the California Appeals Court accepted that Appeal. U.S. Bank began harassing the

option of "Plead guilty and you can remain free to prosecute your case against U.S. Bank" OR "Plead innocent and
we will lock you up for another year until your criminal trial is held, and you will miss your civil trial." As I was in
constant direct communication with Ms. McCulley at the time, I recall the details vividly. I disagreed with her
decision to plead, but as I had not yet been wrongfully incarcerated, I did not fully grasp the depth of depravity one
endures inside jails. As I was held in isolation for my entire incarceration, I still do not.

Appeals Court to dismiss Appellant-Claimant's appeal so aggressively that the Court took several

actions on its own motions:

    a.   Contacted Rozier to ask her intent about the appeal. Upon discovering that Rozier was

          incarcerated based on the false testimony of two Bank of America agents, granted Rozier

          an automatic one-week extension to file documents. Rozier complied. [Rozier Decl 47, 48]

    b.   Closed the first appeal and opened a new appeal by mistake, and then closed the first

          appeal and consolidated everything under the new case.  The Appeals Court admitted it

          was confused by the dates as the Minute Order was dated April 20 and the Order was

          signed on June 5, 2014. During its aggressive contacts, U.S. Bank had submitted to the

          Court that Appellant-Claimant filed her appeal late.  I showed the court evidence that U.S.

          Bank did not serve me with the Order until June 25, 2014. The Court deemed my filings

          timely and opened a new appeal. [Rozier Decl 56] Despite the clear facts, U.S. Bank has

          submitted another fabricated set of events to the Court attempting to again have the

          appeals case dismissed. [Rozier Decl 55] Claimant's answer is due on October 6, 2014.

    c.   Contacted Severson and Werson by phone Appellant-Claimant's presence and demanded

          that they provide a single point of contact.  This was after Appellant-Claimant's

          complained that SWA was both refusing electronic service and demanding that I mail

          packages to both their San Francisco and Irvine, CA offices.  Orange County is mandatory

          efiling and Claimant has been efiling since the policy was enacted. . [Rozier Decl 58, 59]

    d.   Granted Appellant- Claimant an additional week to file responses.  [Rozier Decl 60]

17. Attempts to unduly influence superior court with false information: Mr. Shaham sent or caused to

be sent an email regarding an Ex Parte to terminate sanctions but did not properly caption the

subject. . [Rozier Decl 46]  An an Ex Parte is an extraordinary request, extraordinary care should be

taken to notify all parties. The Presiding Judge is a stickler for notification, which Mr. Shaham well

knows. Instead of captioning the subject header NOTICE OF EX PARTE as his firm has done with the

countless notices, they chose an innocuous and innocent sounding title and did not mark the

notice urgent. [Rozier Decl 46] He then routinely misrepresented the status of the appeal,

attempting to sway the lower court to ignore the Appeals court's jurisdiction. [Rozier Decl 53, 54]

18. **Abuse of Discovery Process in California Superior Court:** Mr. Shaham conceals his involvement with

Debtor RFC's attempts to conduct Discovery in California. — While Debtor RFC'S dismissal was not

recorded until November 21, 2013 [Shaham Decl 9], Claimant-Plaintiff Rozier attempted to comply

with the Bankruptcy Stay but was prevented from doing so by Debtor RFC's activity in the

California litigation. Debtor RFC filed a notice of bankruptcy stay in June 2013. Severson and

Werson, APC continued to file documents in both Debtor RFC and U.S.Bank's name. When RFC did

not answer the complaint, Claimant-Plaintiff filed a request for default against Debtor.  The Clerk

denied Claimant's request because of the bankruptcy stay. [Rozier Decl 35, 38] Shortly thereafter,

RFC propounded Discover Requests against Claimant-Plaintiff. [Rozier Decl 39]  I sought relief from

the Court, and the Clerk instructed me to file a dismissal against Debtor RFC. [Rozier Decl 40] Mr.

Shaham carefully omits these details from the court. His lack of candor should be judicially noted[3].

IV.    **Prayer**

When our son was blind, we forgave him many trespasses. [Please see Attachment 1] Now he can see. I

believe that I have shown the Court that the Shaham Declaration is so false and fabricated that it should be

stricken in its entirety. Movant respectfully request that this court:

(1) Strike the Declaration of Yaron Shaham in its entirety;

(2) Order Severson and Werson, APC. to pay Rozier $750 immediately as sanctions to cover her costs

in preparing this response.

(3) Issue an Injunction against Severson and Werson, APC ordering them to stop harassing Rozier.

---

[3] At the time of the events, Rozier assumed Severson and Werson were falsely biling the New York litigation for the
work they were doing in California on U.S. Bank RAAC 2007RP1's behalf.  [Rozier Decl 41]. Since then, it is clear
that Debtors, lawyers for U.S. Bank RAAC 2007RP1's and lawyers for Bank of America RAMP 2007 – each firm
which represents Debtors in some capacity, are in collusion.

Respectfully,

_____
KAREN MICHELE ROZIER,
Unrepresented Claimant

### MEMORANDUM OF POINTS AND AUTHORITIES

**From Black's Law (Abridged Seventh Edition)**

**Collusion: (n)** An agreement to defraud another or to do or obtain something forbidden by law

**Extortion: (n)** 2. The act or practice of obtaining something or compelling some action by illegal means, as by force or coercion

**Perjury: (n)** The act or an instance of a person's making material false or misleading statements while under oath

**Sherman Antitrust Act.** A federal statute, passed in 1890, that prohibits direct or indirect interference with the freely competitive interstate production and distribution of goods. This Act was amended by the Clayton Act in 1914. USCA §§ 1-7.

**Clayton Act.** A federal statute – enacted in 1914 to amend the Sherman Act - that prohibits price discrimination, tying arrangements, and exclusive-dealing contracts, as well as mergers and interlocking directorates, if their effect might substantially lessen competition or create a monopoly in any line of commerce.

**28 U.S. Code § 1746 - Unsworn declarations under penalty of perjury**

Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by

the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making

the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified

official other than a notary public), such matter may, with like force and effect, be supported, evidenced,

established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such

person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the

following form:

**(1)** If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury

under the laws of the United States of America that the foregoing is true and correct. Executed on

(date). (Signature)".

**(2)** If executed within the United States, its territories, possessions, or commonwealths: "I declare (or

certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on

(date). (Signature)".

**18 U.S. Code § 1621 - Perjury generally**

Whoever— (2) in any declaration, certificate, verification, or statement under penalty of perjury as

permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material

matter which he does not believe to be true; is guilty of perjury and shall, except as otherwise expressly

provided by law, be fined under this title or imprisoned not more than five years, or both. This section is

applicable whether the statement or subscription is made within or without the United States.

**18 U.S. Code § 1623 - False declarations before grand jury or court**

 (a) Whoever under oath (or in any declaration, certificate, verification, or statement under penalty of

perjury as permitted under section 1746 of title 28, United States Code) in any proceeding before or

ancillary to any court or grand jury of the United States knowingly makes any false material declaration or

1    makes or uses any other information, including any book, paper, document, record, recording, or other

2    material, knowing the same to contain any false material declaration, shall be fined under this title or

3    imprisoned not more than five years, or both.

4

5    **(b)** This section is applicable whether the conduct occurred within or without the United States.

6    **(c)** An indictment or information for violation of this section alleging that, in any proceedings before or

7    ancillary to any court or grand jury of the United States, the defendant under oath has knowingly made two

8    or more declarations, which are inconsistent to the degree that one of them is necessarily false, need not

9

10   specify which declaration is false if—

11   **(1)** each declaration was material to the point in question, and

12

13   **(2)** each declaration was made within the period of the statute of limitations for the offense charged under

14   this section.

15

16   In any prosecution under this section, the falsity of a declaration set forth in the indictment or information

17   shall be established sufficient for conviction by proof that the defendant while under oath made

18   irreconcilably contradictory declarations material to the point in question in any proceeding before or

19   ancillary to any court or grand jury. It shall be a defense to an indictment or information made pursuant to

20   the first sentence of this subsection that the defendant at the time he made each declaration believed the

21   declaration was true.

22

23   **(d)** Where, in the same continuous court or grand jury proceeding in which a declaration is made, the

24   person making the declaration admits such declaration to be false, such admission shall bar prosecution

25   under this section if, at the time the admission is made, the declaration has not substantially affected the

26   proceeding, or it has not become manifest that such falsity has been or will be exposed.

27

28

**(e)** Proof beyond a reasonable doubt under this section is sufficient for conviction. It shall not be necessary that such proof be made by any particular number of witnesses or by documentary or other type of evidence.

**Federal Rules of Civil Procedure (F.R.C.P.) (c)(4)** Affidavits or Declarations. "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." The Shaham declaration is filled with false statements and he admits that he relies on what other's have told him.

**Internal Revenue Code (IRC) § 860(d)** states that in order to have lawful tax-free status, the loan must be deposited into the trust within 90-days of the trust's *start-up date.* This is known as the cut-off date. The transfer must be lawful pursuant to a document or writing that does not create a presumption that the transfer violated state law or any other controlling trust document. This is not a form over substance argument. In RMBS transactions, a violation of state law or of the Pooling and Servicing Agreement (PSA) would open the trust to liability. Debtor's PSAs for RAMP 2007RP1 (if it ever existed) and RAAC 2007RP1 are governed by New York law. New York trust law requires strict compliance with the tryst documents, any transaction by the trust that is in contravention of the trust documents is void, meaning that the transfer is an *ultra vires* act. An attack upon the transfer of loan documents based on *ultra vires* acts of the trust will render those transfers unlawful and void as a matter of law. See Judge Isgur's decision which relied on Judge Wayne Saitta's decision and analysis of New York Trust Law in <u>Wells Fargo v. Erobobo</u>, 2013 WL 1831799, 2013 N.Y. Slip. Op. 50675(U) (NY Supreme Court, Kings County, 4/29/13).

Respectfully,

_____

KAREN MICHELE ROZIER,
Unrepresented Claimant

Karen M. Rozier
7957 Dahlia Circle
Buena Park, CA 90620
(714) 512-5740
Claimant Unrepresented

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>Residential Capital, LLC, et. al.<br><br>        Debtors | Case No. 12-12020 (MG)<br>Chapter 11<br>Jointly Administrated<br><br>**DECLARATION OF KAREN MICHELE ROZIER IN SUPPORT OF MOTION TO STRIKE THE DECLARATION OF YARON SHAHAM IN SUPPORT OF THE OBJECTION OF THE RESCAP BORROWER CLAIMS TRUST TO PROOFS OF CLAIM FILED BY KAREN MICHELE ROZIER (CLAIMS NOS. 4738 AND 5632)**<br><br>[Related to 7474-4, 7457]<br><br>Hearing: October 22,2014<br>Time:  10:00 A.M. EST |

1. I am <u>Karen Michele Rozier</u>, the Claimant in the subject case for Proofs of Claim 4738 and 5632, over

the age of 18 and without benefit of counsel in this litigation. I have personal knowledge of the facts

herein, and, if called as a witness, could testify competently thereto. I am competent to submit this

declaration in support of my *"MOTION TO STRIKE THE DECLARATION OF DEANNA HORST IN*

*SUPPORT OF THE OBJECTION OF THE RESCAP BORROWER CLAIMS TRUST TO PROOFS OF CLAIM FILED*

*BY KAREN MICHELE ROZIER (CLAIMS NOS. 4738 AND 5632)"* (the "Motion to Strike"[1]).

---

[1] Defined terms used but not defined herein shall have the meanings ascribed to such terms in the Objection.

2. Mr. Shaham's declaration was submitted pursuant to 28 U.S.C. § 1746 under penalty of perjury as being "true and correct" with no caveats attached such as "to the best of my knowledge". I carefully reviewed each and every statement contained therein.

3. In his declaration, Mr. Shaham offers to provide hearsay testimony. [Shaham Decl para3] I pray the Court does not allow that.

4. I filed case 30-2012 00601310-CU-OR-CJC on September 27, 2012. A true and correct copy of the California Action title sheets are attached hereto as **Exhibit 1.**

5. At the time, I believed Debtors and U.S. Bank National Association, as Trustee, as Successor in Interest to Bank of America, National Association, successor by merger to LaSalle Bank National Association, as Trustee **RAAC 2007RP1 RAAC 2007RP1** [herein referred to as U.S. Bank **RAAC 2007RP1**] were represented by Adam Barasch of Severson and Werson, APC. In my First Amended Complaint filed on October 29, 2012 I accused Mr. Barasch of Violation of California Business and Professions Code 17200 *et seq* for attempting to extort my cooperation in my federal bankruptcy appeals case CC-12-1359[2]. In my Second Amended Complaint, added Mr. Barasch as a Defendant and Mr. Barasch was withdrawn from the case. My allegations were based on an email he sent offering that Debtors would rescind the wrongful foreclosure done on behalf of Bank of America RAMP 2007 if I would grant U.S. Bank RAAC 2007 additional time in my appeal. Shortly after I dismissed him from the California Action, he accused me of "threatening to kill him" though he could produce no evidence that I had ever threatened his with anything but civil and criminal action or that we had communicated at all in months. . A true and correct copy of that communication is attached hereto as **Exhibit 2.**

6. I dismissed Mr. Barasch as a Defendant after deciding that it was too difficult to sue a lawyer and a bank. I am not a lawyer and do not have a team supporting me or financing my litigation.

---

[2] Bankruptcy Case No: 8:11-21727-CB, 9th Circuit Court of Appeals Case No: 13-60106

12-12020-mg    Doc 7620-3    Filed 10/03/14    Entered 10/07/14 09:30:48    Exhibit
Exhibit B Motion to Strike Declaration of Yaron Shaham (Part 1)    Pg 21 of 38

Case 12-12020 (MG)              Page 19 of 267

7. In his declaration, Mr. Shaham conveniently omits certain crucial facts in his description of "Rozier's Litigation History", as well as making enough false statements that he should be charged with violating 28 U.S.C. § 1746. He begins in paragraph 4 by claiming that I titled my case Rozier vs. Bank of America, National Association, successor by merger to LaSalle Bank National Association, as Trustee **RAAC 2007RP1**. [Shaham Decl para 4] That is a materially false statement, designed to conceal the problems which make Debtors' claims of innocence crumble under scrutiny. As per the caption sheets from the litigation, I have referred to Defendant Bank of America, National Association, successor by merger to LaSalle Bank National Association, as Trustee **RAMP 2007RP1** [herein referred to as Bank of America **RAMP 2007RP1**] as Bank of America, National Association, successor by merger to LaSalle Bank National Association, as Trustee **RAMP 2007RP1**[3], the name the provided on the recorded documents and our communication.

8. Debtors made their first appearance on 11/09/2012 when Attorney Ben A. Eilenberg appeared. According to his business card, he was employed with Severson and Werson, APC at the time. A true and correct copy of that Minute Order is attached hereto as **Exhibit 3**.

9. I can neither confirm nor deny Mr. Shaham's testimony that he has been involved in this litigation from October 2012 to the present. [Shaham Decl para 1] I first recall meeting Mr. Shaham on January 2, 2013 when he appeared in Case 30-2012 00601310-CU-OR-CJC [herein referred to as "the California Action", when he claimed to represent "Defendants". I can find no record of us meeting or talking earlier. A true and correct copy of my Motion for Preliminary Injunction is attached hereto as **Exhibit 4**.

10. Until I read his declaration, I was unaware that Mr. Shaham worked for the law firm called Wolfe & Wyman from March 2007 to May 2010. [Shaham Decl para 1] I have been involved in litigation against Debtor GMAC Mortgage since October 2008. During the 2008 -2010 timeframe, Debtor was

---

[3] On the Third Amended Complaint I use both the suffix **RAMP 2007RPI** with an AKA of **"RAAC 2007 RP1"**, but only at the Court's direction.

represented by John Calvagna of Wolfe & Wyman. Coincidentally enough, Mr. Calvagna has been on

the call-in line for at least two major hearings in this matter.

11. Debtors did not provide any declarations from its counsel from 2008-2012. In addition to being

represented by Wolfe & Wyman, Debtors were represented by PITE DUNCAN, LLP. Mr. Shaham and

Mr. Calvagna of Wolfe & Wyman have represented clients in the same courtroom at the same time

on at least two different occasions so they are clearly in communication.

12. At the January 2, 2014 hearing, Mr. Shaham was quite evasive when questioned by Judge Derek

Hunt.  Debtors and U.S. Bank **RAAC 2007RP1** had scheduled a foreclosure sale for that week.

Although he did not issue the Preliminary Injunction at the hearing, Judge Hunt was quite clear with

Mr. Shaham, promising Mr. Shaham that if Defendants [U.S. Bank **RAAC 2007RP1** or Debtors] sold or

caused my home to be sold, that he [Judge Hunt] would personally see to it that Mr. Shaham served

time in Orange County jail. At this point, Defendant Bank of America RAMP 2007 RP1 had not yet

appeared in the litigation and was still in default. I naturally celebrated quite loudly. A true and

correct copy of that Minute Order is attached hereto as **Exhibit 5.** Also at the hearing, Mr. Shaham

asked that I be required to tender over $280,000 and I pointed out that his so-called client obtained

an interest in an unsecured non priority nonperforming asset after the statute of limitations to

collect a date had expired in the state of California.  Judge Hunt did not order tender.

13. Mr. Shaham again appeared at a hearing in the California Action on January 11, 2013, asking the

court to set aside a default against Defendant Bank of America **RAMP 2007RP1** as they had not yet

appeared in the litigation. Judge Hunt asked Mr. Shaham if he represented the Defendant Bank of

America **RAMP 2007RP1** and Mr. Shaham answered "no". Mr. Shaham claimed to represent

Defendants U.S. Bank **RAAC 2007RP1** and Defendants/ Debtors GMAC Mortgage ["GMACM"] and

ETS Services, LLC dba Executive Trustee Services ["ETS"]. Judge Hunt denied U.S Bank's request on

behalf of Bank of America **RAMP 2007RP1**. A true and correct copy of that Minute Order is attached

hereto as **Exhibit 6.**

14. Despite admitting to Judge Hunt that he did not represent Bank of America **RAMP 2007RP1**, Mr. Shaham executed a Substitution of Attorney ["SOA"] on January 16, 2013 claiming that he was substituting out from representing the company he never represented. BRYAN CAVE LLP was substituted in for Bank of America **RAMP 2007RP1**. A true and correct copy of that Substitution of Attorney is attached hereto as **Exhibit 7.**

15. After researching all parties, I filed an Ex Parte motion seeking to overturn what I felt was a fraudulent SOA.  In my motion, I alleged that Mr. Shaham had a conflict as he claimed he was representing both the interests of Debtors and the interest of "the largest unsecured creditor of Defendant GMACM."   A true and correct copy of my application is attached hereto as **Exhibit 8.**

16. Judge Hunt ruled on February 4, 2013 that my request was not one that should be brought on an Ex Parte basis. He gave me leave to bring a motion on the regular law and motion calendar for Department C24. A true and correct copy of that Minute Order is attached hereto as **Exhibit 9.**

17. The following day on February 5, 2013 Judge Derek Hunt presided over the Preliminary Injunction motion hearing. Mr. Shaham requested several times that the court order Rozier to pay a $280,000+ bond, emphatically claiming that Debtors and U.S. Bank **RAAC 2007RP1** had a legitimate claim to make the demand. After hearing both sides and reviewing the evidence, Judge Derek Hunt denied their request for a $280,000 bond. Instead, he ordered Rozier to pay a $5,000 trial bond prior to the trial, which he set for 09/23/2013. A true and correct copy of that Minute Order is attached hereto as **Exhibit 10.** Naturally, I celebrated again.  A true and correct copy of the Preliminary Injunction is attached hereto as **Exhibit 11.**

18. My husband and I then called the ETS sales line to discover that Debtors and US Bank had scheduled a sale of home the following day at 1:30. I believe that Judge Derek Hunt's courtroom was scheduled to be dark that day.

19. My litigation was to protect my rights and to hold all parties accountable for the bad acts they committed against me or using documents bearing my name or likeness. As the Dahlia Circle

property was transferred into Trust, all future activities were legally required to go through the trust.

My husband David is the Trustee of the Trust, David Bear Irrevocable Living Trust. When David filed

his case on behalf of the trust, he also filed a Statement of Related Cases.

20. In his Declaration, Mr. Shaham gives the impression that I asked for a Preliminary Injunction in one

courtroom while my husband was requesting a Temporary Injunction in another courtroom.

[Shaham Decl para 7] This is a complete lie. Mr. Shaham was present at both hearings, as were both

Roziers. Mr. Shaham's sworn statements are also contradicted by his own evidence. Debtor's Exhibit

3-B, page 341 of 361 prove that the Court issued the Preliminary Injunction on Feb 05, 2013 and that

Rozier was only ordered to post a $5,000 bond. Debtor's Exhibit 3-B, page 154 of 361 prove the Ex

Parte application for a Temporary Restraining Order was held the following day at 08:00 in front of

Judge Ronald Bauer. A true and correct copy of that Minute Order is attached hereto as **Exhibit 12.**

Mr. Shaham was present for both hearings, just as he was present for the Monday hearing on the

SOA. I specifically recall him calling me a bully for requiring him to be in court three days in a row. He

also claimed that he had not been properly served with the paperwork for the emergency Ex Parte

hearing, as well as him complaining about the early start.  The normal court operating hours are from

9am -4pm. Judge Bauer opened his courtroom early after I explained to his Clerk how Debtors and

US Bank had scheduled the sale after the Preliminary Injunction. Judge Bauer usually hears Ex Parte

applications at 1:30 pm, but the sale was scheduled for 1:00 pm.

21. Mr. Shaham also asked Judge Bauer to require the Roziers or the Trust to post a $280,000 bond.

Judge Bauer refused and allowed the $5,000 bond requirement to stand.  A true and correct copy of

the Restraining Order is attached hereto as **Exhibit 13.**

22. Judges Hunt and Baeur decided to consolidate all cases under one judge. As David's case was

classified as "Complex" and my case was classified a "Non-complex", normal court protocol dictated

that the Complex court retain jurisdiction. However, although Judge Hunt is in the Non-complex

division, he has a reputation for being meticulous and with little tolerance for frivolity, qualities I

expect in a judge. He not only demands that parties try cases on the merits but he also expects

lawyers to be literate and succinct. He is not well adored, but he is definitely respected. All parties

agreed that since Judge Hunt had the lower case number, David would allow his complex case to be

consolidated with my non-complex case, with Judge Derek Hunt presiding. [See **Exhibit 12**]

23. Shortly thereafter, I wrote Mr. Shaham and requested to see my entire loan file. He responded by

accusing me of Workplace Violence, claiming that I threatened to kill him. I made no such threat.

That matter was heard before one Judge Scott Steiner. At the hearing, Severson and Werson

presented a video recording where I threatened to have him arrested for his crimes. In fact, I filed

criminal police reports against Mr. Shaham accusing him of fraud, Judge Scott Steiner claimed my

tape words were inadmissible. Instead, he allowed Mr. Shaham's declaration to stand. In his sworn

declaration (which was contradicted by my audio), Mr. Shaham claims I stated I was going to kill him.

24. I made no such threat. My actual behavior was to press criminal charges against Mr. Shaham. I filed

report 13-30413 in the City of Fullerton, Case 13-18125 in the City of Buena Park and attempted to

file a criminal case in the City of Santa Ana. True and correct copies of the cases filed are attached

hereto as **Exhibits 14** and **15** respectively.

25. At the time, tensions in Orange County were quite high. Orange County, which at the time was less

than 1.8% African American, was rounding up Black people as it searched for Christopher Dorner.

Mr. Dorner was a former Naval Officer who joined the LAPD, but then later accused certain officers

of racism and discrimination. He was accused of murdering two people out of his so-called rage.

Prior to being formally charged with any crime, the LAPD placed a million dollar "dead or alive"

bounty on his head. At least three innocent people were shot during the manhunt. Mr. Dorner was

eventually cornered, but that is where the story gets murky. The prevailing theory is that the LAPD

set the cabin on fire while he was still alive inside. Mr. Shaham used the Dorner incident and a

questionable judge to easily obtain his Workplace Violence Restraining Order. I complained to the

Judicial Commission about the Judge and was instructed to refile my claim and appeal "should the

judge be convicted of a crime." I do not believe the Judge was ever charged. However, he was

censured by the California Judicial Commission on September 2, 2014. Among other crimes of a

moral nature, Judge Steiner was censured for abuses of public trust while on the bench. His censure

is a matter of public record. Mr. Steiner stipulated to having sex in chambers with counsel appearing

before him and allowing his adulterous sexual relationship to influence his on-bench rulings[4].

26. Judge Steiner's order that Rozier must "be nice" to the lawyers defies logic as the definition of nice is

subjective. After securing their Workplace Violence restraining order, Severson and Werson made it

quite difficult for Rozier to prosecute her case in California.

27. After successfully preventing me from viewing their office operations, Mr. Shaham sent me what he

claimed was my entire loan file. However, there were no documents contained therein for the period

May 6, 2006 – May 31, 2006. I suspect that was because in my initial California litigation, I stated

that I rescinded the Modification and Note and signed a new loan on May 28, 2006. The May 22,

2006 Modification that Mr. Shaham and Debtors purport to be valid was rescinded precisely because

it did not secure any debt to any property. As it turned out, Debtor's own files and records provided

evidence that I executed a new Note on June 1, 2006, after the May Modification which Debtors now

claims is valid. That Note closed on June 6, 2006. I was led to believe that it replaced the

Modification. At the time, I was represented by the Law Offices of Judith Deming. A true and correct

copy of the June 1, 2006 Truth in Lending Statement is attached hereto as **Exhibit 16.**

28. Mr. Yaron Shaham, co-counsel for Debtor, presented to the judge that I signed two notes – a secured

loan for $576,000 dated 12/23/2005 and an unsecured loan for $576,000 dated 06/1/2006. The

presiding judge of the Superior Court rejected that theory. The California Judiciary has consistently

ruled that tender is not required in this case because no party has proved they have a valid debt.

---

[4] Fortunately, he is considered one of the worst in Orange County. His behavior shocked even those who routinely engage in minor offenses or moral lapses.

29. As Mr. Shaham is well aware, the Statute of Limitations to collect a debt in California is 5-years. Mr. Shaham claims I made my last payment on November 27, 2007. Debtor's allege that U.S. Bank acquired the debt in March 2013 after the September 24, 2012 foreclosure. The record shows that Bank of America RAMP 2007RP1 transferred something to U.S. Banks RAAC 2007 RPI sixty-three (63) months later in January 2012, before the sale. In any event, the time for any entity to enforce the debt if it were a valid debt had long expired before U.S. Bank took an interest in the property. There only legal remedy as a third party debt buyer is foreclosure pursuant to a valid Deed of Trust, but without a default on a valid note, U.S. Bank has no recourse in California. It is not I who am trying to get a house for free, but rather U.S. Bank that is trying to steal my home using illegal tactics.

30. Shortly thereafter, Mr. Shaham - while representing U.S. Bank **RAAC 2007RP1** and Debtor Residential Funding - responded by bringing in the large law firm Locke Lord, LLP to execute peremptory challenged to have the case removed from Judge Derek Hunt. Locke Lord also represents the Debtors in this New York bankruptcy.

31. Although the Court on its own motion had dismissed the Trust[5] as a Plaintiff and I had dismissed all defendants except US Bank and Bank of America **RAMP 2007RP1**, Locke Lord LLP claimed that the dismissal was not proper because the Court had not required the Trust also dismiss all defendants. After the case was removed from Judge Hunt's court, Locke Lord withdrew from the case in May. Their only official act in the case was to file a peremptory challenge on behalf of two dismissed Defendants.[6].

32. On May 20, 2013 Mr. Shaham we had a hearing to determine who the correct parties should be in the litigation. [Shaham Decl para 8] A true and correct copy of the transcript from that lengthy

---

[5] At the time, we had not hired a lawyer to represent the Trust. We incorrectly assumed that David could represent the Trust as he is the Trustee. Judge Hunt granted the Trust leave to file a complaint to renew its suit provided the Trust is represented by a BAR attorney.

[6] That should be considered an act of judge shopping. I have appealed this series of events in my appeals case G050520 in the California Court of Appeals. In my appeal, I include the Court's ruling both on Summary Judgment and for Terminating Sanctions.

hearing is provided by Debtors' Exhibit 3-B, pages 157-187 of 361, which is attached hereto as

**Exhibit 17**[7]..

33. As per Debtor's Exhibit 3-B page 2 (lines 11, 14 and 21-25) of the transcript, the Court acknowledges

that there was only one Plaintiff in the case. The Court agreed that Plaintiff had dismissed

Defendants Beltran and Rodriguez [**Exhibit 17** page 21, lines 2, 5-6.] U.S. Bank and its cohort were

still permitted to bring a motion on behalf of two dismissed Defendants to move the case from Judge

Hunt, claiming that David Rozier was still a party to the case and had not properly dismissed

Defendants. [**Exhibit 17** page 21, lines 9-10] As I am the sole Plaintiff in the case and the only party

making allegations, I was adamant that I should only be required to sue the parties I wished to sue

and only for the allegations the court would allow. I was suing **Bank of America RAMP 2007RP1**. Mr.

Shaham stood before Judge Sheila Fell and claimed that I needed to be suing **U.S. Bank RAAC**

**2007RP1**. After much discussion, U.S. Bank **RAAC 2007RP1** was added back as a Defendant solely for

the purposes of liability.

Exhibit 17, Page 14, lines 25- 26: "The Court: *But they will remain liable to you if you*

*are successful against Bank of America.*"

34. The court ordered me at add U.S. Bank **RAAC 2007RP1** as a Defendant but prevented me from

making any specific allegations against U.S. Bank **RAAC 2007RP1**. U.S. Bank **RAAC 2007RP1** was

never a true defendant as I was not allowed to include any of the wrongful acts committed by U.S.

Bank **RAAC 2007RP1** into the California action.  Instead, I was only allowed to sue for the wrongful

acts of **Bank of American RAMP 2007RP1**. I likewise was not allowed to add allegations from the

2008-2012 period as I was only suing for the wrongful acts that commenced beginning around July

---

[7] This exhibit does not contain Debtor's captions as Declarant highlighted copies of the transcript prior to making copies of Debtor's captioned copies. I apologize for any confusion.

2012. [**Exhibit 17**, Page 24, lines 25- 26. Page 25, lines 1-4, 14-22. Page 26, lines 4-8.] Mr. Shaham

omits these important details in his declaration, which is 361-pages including exhibits

35. Since that time, Severson and Werson have continued to interfere in the California Action on behalf

of dismissed Debtors. As per Exhibit 17, no Debtor was included in the litigation.

36. Rozier admits that she was confused by the proceeding and Court order. When Rozier filed her third

amended complaint she added Debtor RFC as a Defendant due to her realization that it was RFC that

signed the Trustee's Deed Upon Sale and not Debtor GMACM. When I filed my initial complaints, I

did not know what "Attorney in Fact" meant. Upon discovering that Debtors had three distinct roles

in the wrongful acts, I immediately added RFC as a Defendant. They had not yet invoked bankruptcy

protection.

37. Severson and Werson notified me and the Court of the bankruptcy stay and I complied with the

court's order, dismissing all action against Debtors outside of my bankruptcy filing. Shortly

thereafter, Debtors notified me that they were intending to object to my claims unless I provided

additional information. I complied with their demand and made my final demand of approximately

$100M against all Debtors. Prior to filing my demands, I remained in close contact with Debtors by

and through their Official Committee of Unsecured Creditors.

38. After invoking bankruptcy protection, Debtor RFC began harassing me in California. Convinced they

considered themselves still part of the California action, I attempted to default them in California. I

also defaulted US Bank RAAC 2007 and Bank of America RAMP 2007. The Clerk rejected my request

writing, "A pleading or notice has been filed that prevents entry of default. [Code Civ. Proc., 585(a)] A

notice of stay was filed 6/18/13." Mr. Shaham included this in his exhibit 3-B, but fails to address it. A

true and correct copy of the Clerk's Notice is attached hereto as **Exhibit 18.**

39. Debtor RFC by and through its California attorney Mr. Yaron Shaham continued to harass me after

they invoked bankruptcy stay protection. On August 28, 2013 Debtors propounded Discovery

requests, a true and correct copy of the entire set being attached hereto as **Exhibit 19.**

a.  Defendant Residential Funding Company, LLC's Requests for Production of Documents

Propounded on Plaintiff Karen Michele Rozier – Set One

b.  Defendant Residential Funding Company, LLC's Form Interrogatories - General

c.  Defendant Residential Funding Company, LLC's Requests for Production of Documents

Propounded on Plaintiff Karen Michele Rozier – Set One

d.  Defendant Residential Funding Company, LLC's Special Interrogatories Propounded on

Plaintiff Karen Michele Rozier – Set One

40. I sought relief from the court and was instructed to dismiss RFC again. On November 21, 2013, I

voluntarily dismissed the Complaint against RFC. [Shaham Decl 9] Mr. Shaham conveniently omits

the reasons why it took so long for me to dismiss against RFC, thus concealing its bad acts. My

Declaration in support of request for dismissal is attached hereto as **Exhibit 20.**

41. I then started investigating Severson and Werson more carefully. I notified the New York Bankruptcy

Court of her concerns about possible fraudulent billing as Severson and Werson have repeatedly

maintained that they represent U.S. Bank **RAAC 2007RP1** in her California Action, yet it appeared to

me at the time I made the allegations, that it is billing this bankruptcy case for days Severson and

Werson are in court presumably protecting U.S Bank's interest. A true and correct copy of my letter

to the court dated 26 December 2013 is attached hereto as **Exhibit 21.**

42. Just as he omits crucial details regarding Debtor RFC's involvement in the case, Mr. Shaham likewise

omits crucial details as to how he used trickery and confusion between the Court's to obtain a

Summary Judgment for his client U.S. Bank RAAC 2007RP1. That case was never decided on the

merits as he would have the New York Court believe. I propounded Discovery requests against all

Defendants and none complied. I sent letters to them reminding them of their duty to comply, but

was ignorant of the requirement to bring forth a motion to Compel them to Discovery. Severson and

Werson used my ignorance to buy more time. When they eventually produced answers, they failed

to provide them under oath. I rejected their Discovery answers and demanded that they resubmit

them under oath. Instead, they executed a few declarations stating the answers they previously provided were all true. I could find no basis for such an action under California or federal law so I protested. The lower Court, presided over a judge with a background in Family Law and who allows very liberal discovery, ruled that I had to accept the declarations separate from the answers. I have included that ruling in my California appeal as well.

43. On December 11, 2014, I was detained in court in Los Angeles. The Presiding Judge claims that she contacted Judge Sheila Fell's court room and explained that I was being detained and would be unable to make the hearing. Despite this, Judge Fell held U.S. Bank RAAC 2007RP1's Motion to Compel Discovery in her absence. Mr. Shaham omits these critical details in his discussion of events. [Shaham Decl 10-12]

44. I asked the court to set aside its ruling and even provided the court with a declaration from the Los Angeles judge demonstrating that my absence at the December 11, 2013 hearing was not intentional. A true and correct copy of ORDER OF COURT ACKNOWLEDGING DEFENDANT'S ATTENDANCE AT TRIAL dated Jan 16 2013 is attached hereto as **Exhibit 22.** The Court's decision is also included in my appeal.

45. U.S. Bank **RAAC 2007RP1**'s entire Motion for Summary Judgment is based on the unfair advantage it gained when I was held in Los Angeles and prevented from attending the December 11, 2013 motion to compel hearing. Moreover, I did not sue U.S. Bank **RAAC 2007RP1** for wrongful foreclosure as it was not involved in the September 24, 2012 foreclosure. [See items 33-34 above] Although U.S Bank claimed it secured rights from Bank of America **RAMP 2007RP1** on January 12, 2012, it allowed Bank of America **RAMP 2007RP1** to foreclosure on the property using documents purportedly executed by me. A true and correct copy of the January 2012 Assignment of Deed of Trust is attached hereto as **Exhibit 23.** Debtors' Chief Claims Officer Deanna Horst omitted this crucial fact from her Declaration and instead provided the court with a March 2013 Assignment of Deed of Trust, claiming that the transfer occurred after the sale, which occurred on September 24, 2012. I objected to her

mischaracterization in my Motion to Strike and Declaration submitted concurrently with this Motion and Declaration. [Motion to Strike Declaration of Deanna Horst, page 6, item 21]

46. On June 20, 2014 U.S. Bank appeared Ex Parte to ask the court to terminate sanctions against it. Mr. Shaham did not properly identified this Notice in the Subject matter. I opened it despite the routine nature of the title and appeared anyway. I informed the court that I had perfected my appeal against U.S. Bank. I asked the lower court to allow the sanctions to remain in place until the Appeals Court could rule on the matter. A true and correct copy of their Notice is attached hereto as **Exhibit 24**.

47. On June 23, 2014 co-Defendant Bank of America **RAMP 2007RP1** sent two agents to the Los Angeles court to lie to assure that I was held in jail, hoping that I would miss my deadlines in my California appeal as well as miss the scheduled June 26, 2014 hearing on Debtors' Motion. Fortunately for me, an independent journalist was in the courtroom and overheard the City Prosecutor conspiring with the two witnesses, who were later discovered to work for the BRYAN CAVE LLP, the lawyers representing co-Defendant Bank of America **RAMP 2007RP1**. I had previously accused one of the witnesses of tampering with my federal mailbox and filed a formal complaint. My husband also accused one of the witnesses of physically assaulting him in our driveway, an act witnessed by our neighbor. The police refused to pursue the case, claiming that the assaults were from a civil suit. Although I never physically assaulting anyone or tampered with any federal postal box, I was sent to jail. A true and correct copy of Mr. William Wagener's declaration is attached hereto as **Exhibit 25**.

48. Immediately upon my release from Lynwood Prison on June 30, 2014, I went directly to the Appeals Court to reinstate my appeal. Although I had been held in a freezing cell with no hot water for four denies, sleep deprived, without a shower for a week, deprived most civil contact and comforts based on the lies of agents from Bank of America RAMP 2007RP1, my husband insisted we go directly to the Appeals Court. According to him, the Appeals Clerk named Dana had called him concerned about my whereabouts due to Severson and Werson's aggressive tactics to have the case dismissed. She was calling to inform me that I was in default and to ask my intent. David explained that I was

incarcerated and had not seen the Default Notice. I was not served in jail with any legal papers. Based on the lack of service, the Clerk extended my deadline. David has submitted a Declaration in Support of my version of events. [See Declaration of David Eugene Rozier, Sr. Regarding the Appeals Court Conversation, attached hereto as **Exhibit 26.**]

49. I suspect this aggressive behavior towards me is because I am part of the Free Mary McCulley movement. Ms. Mculley accused U.S. Bank, National Association of fraud and won a $6,000,000 verdict against U.S. Bank, N. A. during her jury trial earlier this year. U.S. Bank N.A. appealed the $5,000,000 in punitive damages but not the $1,000,000 in actual damages. U.S. Bank N.A. lost on appeal. Mary and I used to share notes about our cases and the lawyer's behavior. As I understand things, Mary was convicted of tricking U.S. Bank, National Association into providing the information they were legally required to provide. Although the stated maximum for her so-called crime was six months, she was sentenced to a year of hard time in federal prison. It is my understanding that she was classified as "dangerous" due to her previously spending ten months in jail on a gun charge. She was acquitted of the charge. It is my understanding that the person who accused her of pointing a gun at her is somehow related to the person who accused her of trickery.

50. Additionally, I have worked closely with Pam Ragland of Ragland vs. U.S. Bank. In August 2013 when Ms. Ragland was on her annual and well publicized trip to Yosemite, U.S. Bank attempted to have her charged with Bankruptcy Fraud in order to discredit her before trial. Ms. Ragland had a landmark decision that allows Californians to sue for "intentional infliction of emotional distress". Her *Ragland vs. U.S. Bank* decision is often cited in favor of wronged homeowners. As we have made radio appearances and videos together, our affiliation is well-known. Her vacation happened to coincide with one of the worst fires in park history and she was cut off from most electronic communication. Since her bankruptcy had been dismissed, she no longer had legal representation in the bankruptcy manner. After Ms. Ragland contacted me distraught, I agreed to ghost write her opposition for her. I am not a lawyer, do not give legal advice and do not charge my friends who are standing on solid

ground trying to defeat a common enemy. We used mail to send documents and Ms. Ragland was able to file her opposition in time. She defeated U.S. Bank's motion. Her trial began on Tuesday September 23, 2014 and after one day of her testimony, U.S. Bank wisely entered into a confidential settlement with her. I do not know the details of the settlement; nor do I care. We both agree that U.S. Bank is also trying to shut me down for fear that I could change its national landscape just as she changed the California landscape.

51. On July 3, 2014 I appeared before the Superior Court for the ex parte hearing to modify the Superior Court's February 5, 2013 preliminary injunction order. I was informed by the Clerk that the hearing was held the previous day and that U.S. Bank **RAAC 2007RP1**'s order had been granted in my absence. I timely asked the Court to vacate its order on July 9, 2014. I chose to celebrate Independence Day[8] rather than work on the motion.

52. I was shocked to read in Mr. Shaham's declaration that U.S. Bank **RAAC 2007RP1** initiated foreclosure proceedings on July 8, 2014. **[Shaham Decl para 13]** I have seen no record of any such action and he has not informed the California Superior Court of any proceedings. Moreover, California procedure requires that a party wait seven (7) days after an order before it can take action. As the Court did not vacate the preliminary injunction until July 2, 2012, the earliest U.S. Bank **RAAC 2007RP1** would have been allowed to take action would have been on July 9, 2014.

53. On September 3, 2014 the Superior Court held a hearing on my motion to vacate its order terminating sanctions. **[Shaham Decl para 13]** Mr. Shaham repeatedly represented to the Court that my appeal was defective and that I had only appealed the court's Summary Judgment but not the Terminating Sanctions. I provided the court with a copy of my filings, which included the Terminating Sanctions. I also supplied the Court with the Appeals Court's orders giving me until September 5 to correct all deficiencies. A true and correct copy of that Default Notice is attached hereto as **Exhibit**

---

[8] I have started every Independence Day since 1987 by reading the Declaration of Independence. This year, it was especially meaningful.

**27**. Based on the evidence presented, the court agreed to continue the motion until September 17, 2014, giving the Appeals Court time to act.

54. On September 17, 2014 the Superior Court continued the hearing on my Motion to Vacate its order modifying the preliminary injunction. [Shaham Decl para 13] During the hearing, Mr. Shaham was quite evasive when asked to read the Appeals Court's Order on my court. He attempted to convince the Superior Court that the Appeals Court had issued a final dismissal of my appeal effective September 5, 2014. Unbeknownst to him, I had already provided the presiding judge with a copy of the order before his arrival. A true and correct copy of the Appellate Order is attached hereto as **Exhibit 28**. Mr. Shaham was quite emphatic at this hearing, and asked the Court to demand that I *pay something* as I hadn't *paid in years*, emphasis his. On September 17, 2014 he Court again denied his request for tender as his client has shown no right to demand any money from me.

55. The following day on September 18, 2014 U.S. Bank **RAAC 2007RP1** responded by filing a request for judicial notice attempting to blame me for a court error. My response to this harassing motion is due the same date as this filing, October 3, 2014. Despite the clear record, U.S. Bank **RAAC 2007RP1** claimed that I filed an appeal and the appeal was dismissed due to my failure to comply with the court's earlier orders. . A true and correct copy of their Motion to Dismiss is attached hereto as **Exhibit 29**. The true facts are that I filed an appeal, the Court issued a Default Notice and I timely corrected the deficiencies. Due to a Clerk error, the Court – on its own – opened a new appeals case number. I did not notice the new case number and continued to file documents under the old case number. After meeting with the Clerk to discover the mistake, the Clerk issued all paperwork in the new case file.

56. According to the Clerk, the Court was confused by the dates. The ruling under appeal took place at a hearing which occurred on April 30, 2014. The Minute Order was dated 04/30.2014. The signed order was dated more than 30-days later on June 5, 2014. U.S Bank did not serve me with the signed

Court Order until June 25, 2014. A true and correct copy of the Court's Minute Order is attached

hereto as **Exhibit 30**.

57. Mr. Shaham attempted to defraud the court with his version of events. His Exhibit 3-B pages 319-323

provide an Order filed on Jun 05 2014 with a Proof of Service dated April 30, 2014, which while

physically impossible, could lead one to incorrectly conclude SWA timely served me with the Court's

Order. I included Page 323 of 361 so the Court can see that I did not exclude anything. A true and

correct copy of his attachment implying that he timely served this Court Order on April 30, 2014 is

attached hereto as **Exhibit 31**. A true and correct Certified copy of the Court's signed Orders

Granting Summary Judgment and Terminating Sanctions with the late Proof of Service as actually

sent is attached hereto as **Exhibit 32**.

58. The Court had previously warned Severson and Werson about its unprofessional tactics. Those

tactics included writing me and refusing electronic service after they electronically served me with

documents and also demanding that I provide two copies of all filings – one to their Irvine office

where Mr. Shaham works and one to the San Franscisco office that is handling the appeal. A true and

correct copy of the Severson and Werson's letter refusing electronic service is attached hereto as

**Exhibit 33**.

59. On September 15, 2014 while at the Appeals Court, I shared the letter with the Clerk. She informed

me at that time that U.S. Bank was not in compliance with the rules by demanding that I send all

filings to both the Irvine and San Francisco offices. She contacted Severson and Werson's (SWA)

office and demanded they provide a single point of contact. That same day, SWA sent

correspondence indicating that all correspondence it to be sent to the Irvine Office where Mr.

Shaham works. The San Francisco office usually handles their appeals. Copies of the Proofs of

Services showing that I was mailing my briefings to their two locations are  attached hereto as

**Exhibit 34** A true and correct copy of the Severson and Werson's letter identifying a single point-of-

contact is attached hereto as **Exhibit 35**.

60. The Appeals Court responded by, on its own motion, giving me an extra week to comply with its own

order. A true and correct copy of the Court's Order is attached hereto as **Exhibit 36.**

61. Mr. Shaham is well aware of the true facts of the California Action as he has been an active

participant in this action. He has also been actively involved in abusing the criminal courts to harass,

intimidate and annoy me. Although I have not spoken to him outside of court directly since the 2013

Workplace Violence Restraining Order (WVRO), his office attempted to have me incarcerated on

September 15, 2014 claiming that I violated the WVRO when I called his offices to speak to his

superiors about a matter. I have filed my Not Guilty Plea in that action. A hearing is set for October

15, 2014. If I am not on the telephone conference to present my Opposition motions and motions to

strike, it is only because I am again incarcerated because a California attorney falsely accused me of

speaking unkind to him. As the Court is aware, I did not call in for the June 26, 2014 hearing though I

was vehemently opposing Debtor's expert Michael Talerico and request to estimate remaining

claims. I only missed that hearing due to being incarcerated based partly on the false testimony of

two Bank of America **RAMP 2007RP1** agents [See **Exhibit 25** Wagener Decl] and partly on a rogue

prosecutor who I formally accused of treason. A true and correct copy of my NOT GUILTY plea is

attached hereto as **Exhibit 37. I have also submitted this declaration to the same office in support

of my motion for dismissal.** I have provided truthful testimony in my pleading as well as shown that

Mr. Shaham's version of events is divorced from reality.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true to the best of my

knowledge.

Executed in Buena Park, California on September ___, 2014          By

                                                    _____
                                                    KAREN MICHELE ROZIER, MPA/MSIA/MBA/BSEE
                                                    Unrepresented Claimant

## LIST OF EXHIBITS

| | |
|---|---|
| Exhibit 1 | California Action Title Sheets |
| Exhibit 2 | Mr. Barasch email |
| Exhibit 3 | Minute Order dated 11/09/2012 |
| Exhibit 4 | Motion for Preliminary Injunction |
| Exhibit 5 | Minute Order dated January 2, 2014 |
| Exhibit 6 | Minute Order dated January 11, 2013 |
| Exhibit 7 | Substitution of Attorney |
| Exhibit 8 | Ex Parte Application to oppose Substitution of Attorney |
| Exhibit 9 | Minute Order dated February 4, 2013 |
| Exhibit 10 | Minute Order dated February 5, 2013 |
| Exhibit 11 | Preliminary Injunction |
| Exhibit 12 | Minute Order dated February 6, 2013 |
| Exhibit 13 | Restraining Order |
| Exhibits 14 | report 13-30413 in the City of Fullerton |
| Exhibits 15 | Case 13-18125 in the City of Buena |
| Exhibit 16 | June 1, 2006 Truth in Lending Statement |
| Exhibit 17 | On May 20, 2013 transcript Debtors' Exhibit 3-B, pages 157-187 of 361 |
| Exhibit 18 | Clerk's Notice rejecting RFC's default |
| Exhibit 19 | Residential Funding Company Discovery requests |
| Exhibit 20 | My Declaration in support of request for dismissal of RFC |
| Exhibit 21 | letter to the NY court dated 26 December 2013 |
| Exhibit 22 | ORDER OF COURT ACKNOWLEDGING DEFENDANT'S ATTENDANCE AT TRIAL |
| Exhibit 23 | January 2012 Assignment of Deed of Trust |
| Exhibit 24 | Shaham's email Notice of June 20, 2014 Ex Parte |
| Exhibit 25 | Mr. William Wagener's declaration |
| Exhibit 26 | Declaration of David Eugene Rozier, Sr. Regarding the Appeals Court Conversation |
| Exhibit 27 | Default Notice giving me until September 5 to correct all deficiencies |
| Exhibit 28 | Appellate Order dated 9/15/ 2014 |
| Exhibit 29 | U.S. Bank RAAC 2007RP1 Motion to Dismiss |
| Exhibit 30 | Minute Order dated 04/30/14 |
| Exhibit 31 | Shaham Exhibit 3-B pages 319-323 implying that he timely served 4/30 Order |
| Exhibit 32 | Certified copies of Orders Granting Summary Judgment and Terminating Sanctions |
| Exhibit 33 | Severson and Werson's letter refusing electronic service |
| Exhibit 34: | Proof of Service of mailings sent to two addresses |
| Exhibit 35. | Severson and Werson's letter identifying a single point-of-contact |
| Exhibit 36. | Appeals Court responded by, on its own motion |
| Exhibit 37 | NOT GUILTY plea |