12-12020-mg   Doc 7620-7   Filed 10/03/14   Entered 10/07/14 09:30:48   Exhibit
Exhibit C Motion to Strike Declaration of Deanna Horst   Pg 1 of 25

Ex C

Copy for Judges's
Chambers

Case 12-12020 (MG)                     Page __ of 77

1    Karen M. Rozier
     7957 Dahlia Circle
2    Buena Park, CA 90620
     (714) 512-5740
3    Claimant Unrepresented

4

5                    UNITED STATES BANKRUPTCY COURT
                     SOUTHERN DISTRICT OF NEW YORK
6

7

8    In re:                        )    Case No. 12-12020 (MG)
                                    )    Chapter 11
9    Residential Capital, LLC, et. al.   )    Jointly Administered
                                    )
10                     Debtors      )
                                    )    **MOTION TO STRIKE THE DECLARATION OF**
11                                  )    **DEANNA HORST IN SUPPORT OF THE OBJECTION**
                                    )    **OF THE RESCAP BORROWER CLAIMS TRUST TO**
12                                  )    **PROOFS OF CLAIM FILED BY KAREN MICHELE**
                                    )    **ROZIER (CLAIMS NOS. 4738 AND 5632);**
13                                  )    **DECLARATION OF KAREN MICHELE ROZIER IN**
                                    )    **SUPPORT THEREOF**
14                                  )
                                    )
15                                  )    [Related to 4091, 7474-4, 7457]
                                    )
16                                  )    Hearing: October 22,2014
                                    )    Time:  10:00 A.M. EST
17    _____)

18

19   Claimant Karen Michele Rozier, herein referred to as "Movant", "Claimant" or "Rozier", an individual and

20   without benefit of legal counsel, respectfully moves the Court to strike the Declaration of Deanna Horst

21   ["Horst Declaration" or "Horst Decl"] submitted as Doc 7474-4 on 09/03/14 at 17:57:16 Exhibit 3-A, pages 1-

22   126 in its entirety. Movant states on information and belief that the sworn Horst declaration contains

23   materially false statements and serious acts of omission as discussed below, in the declaration, the exhibits,

24   and the records of this proceeding. As the Horst declaration was submitted under penalty of perjury and with

25   the intent to deprive Rozier of an amount of greater than $950, Movant also requests the court charge Ms.

26   Horst with criminal perjury. Additionally, Movant requests sanctions of $750 for the cost of preparing and

27   submitting this motion, declaration, and all other supporting documentation.

28

        CLAIMANT'S OPPOSITION TO DEBTOR'S OPPOSITION - Page 1 of 9

**Case 12-12020 (MG)**          **Page __ of __**                    **Exhibit C**

# EXHIBIT C

## TABLE OF CONTENTS

I.     The Qualifications Ms. Horst Lists Do Not Match Her Resume and Does Not
       Demonstrate Competence                                                        Page 2

II.    Her Discussion of the FRB Settlement Process Does Not Weaken Claimant's Demands   Page 2

III.   Her Discussion of the "Rozier loan" Are Inconsistent With Debtor's Records and
       Publically Available Documents                                                Page 3

IV.    Her Discussion of the Proofs of Claim Are Inconsistent With Debtor's Records and the
       Records of This Proceeding                                                    Page 5

V.     Her Discussion of The Court's Action on Rozier's Prior Request is False or Incomplete   Page 6

VI.    Prayer                                                                        Page 6

VII.   Memorandum of Points and Authorities                                          Page 6

## TABLE OF AUTHORITIES

28 U.S. Code § 1746

18 U.S. Code § 1621

18 U.S. Code § 1623

Federal Rules of Civil Procedure (F.R.C.P.) (c)(4)

Internal Revenue Code (IRC) § 860(d)

12-12020-mg   Doc 7620-7   Filed 10/03/14   Entered 10/07/14 09:30:48   Exhibit
Exhibit C Motion to Strike Declaration of Deanna Horst   Pg 4 of 25

Case 12-12020 (MG)                    Page 3 of 77

## DISCUSSION

**I.      The Qualifications Ms. Horst Lists Do Not Match Her Resume and Does Not Demonstrate Competence**

1. Without providing her education or training, Ms. Deanna Horst represents to this court that she is the Chief Claims Officer for the ResCap Liquidating Trust, as well as other information that contradicts her publically available resume as posted on LinkedIn. [Rozier Decl, #5] A side-by-side comparison of these documents which both purport to accurately describe history reveals no less than four inconsistencies in title as well as three (3) inconsistent dates. How is the Court to believe she is meticulous and diligent in her duties when she doesn't even know who she is or her own professional background?  Given that she could not reconcile these sworn statements with her own posted resume, this Court must reject her claims that she can "testify competently to the facts set forth in the Objection". [Horst Decl, #2]

2. Additionally, her claims defy logic. She claims she is an expert qualified to submit this declaration based on her allegedly being Debtor's Responsible Lending Manager, Director of Quality Asset Management and other quality related processes. [Horst Decl, #1] According to Moody's the Debtor's lacked internal processes and internal controls during her tenure.  [Rozier Decl, #7]

3. Ms. Horst has not demonstrated that she knows her qualifications and previous titles but has shown that she was supposed to be in charge of maintaining quality when Debtors were out-of-control.

4. Also, Horst claims that much of her information was derived from conversations with others. [Horst Decl, #2] She fails to name the others, their knowledge or expertise, or the relevance of such conversations.  Any conversation must be considered as heresy evidence and thus not permitted to be included in a declaration based on personal knowledge.

**II.      Her Discussion of the FRB Settlement Process Does Not Weaken Claimant's Demands**

5. The FRB was not an exhaustive remedy. [Horst Decl, #9] Horst admits that the FRB review was "designed to halt all individual file reviews" on the merits of any claim. [Horst Decl, #6] Also, in the

Case 12-12020 (MG)                 Page 4 of 77

declaration, Horst states that "Rozier was deemed eligible to receive $500 as a settlement payment, the lowest payout provided by the IFR Waterfall." [Horst Decl, #8] However, according to the Order Authorizing the Establishment of an Escrow of Funds Pending Consideration of a Proposed Settlement by Court[1], the minimum payment is no less than $250. [Rozier Decl 40].

6.   Horst is incorrect when she implies that the $500 payment satisfies all obligations to Rozier. [Horst Decl, #10]  Debtors have failed to provide any evidence that they paid 100% of all IFR-claims submitted. The FRB settlement is clear that payment of any nominal amount is not full satisfaction of Debtor's liability. [Horst Decl, #11]

III.   **Her Discussion of the "Rozier loan'" is Inconsistent With Debtor's Records and Publically Available Documents - Material Omissions and Outright Lies**

Material Omissions

Claimant objects to being referred to as "Borrower" by the Debtor, its employees or agents as they have not proven they have ever serviced any valid debt executed by Claimant. Ms. Horst conveniently omits certain crucial facts in her description of "Rozier's Loan History".

7.   Rozier rescinded her note in Feb 2006 due to concerns over LIBOR being manipulated, not due to concerns over the TILA statement. [Horst Decl 12]. [Rozier Decl #8]

8.   WMC Mortgage's use of Mortgage Electronic Registration Systems, Inc clouded the chain of title of the Note. The MERS morass has been dissected. Declarant and Debtors pretend it is not relevant.

9.   Debtor's use of robosigned included notary Nikole Shelton broke the chain of title of the Deed of Trust. [Rozier Decl #35]

10.  Rozier and WMC Mortgage executed several "Notes" prior to the final Note, which was signed by Rozier on June 1, 2006. [Rozier Decl #11, 16, ]

---

[1] Doc 4091 filed on 06/26/13

12-12020-mg   Doc 7620-7   Filed 10/03/14   Entered 10/07/14 09:30:48   Exhibit
Exhibit C Motion to Strike Declaration of Deanna Horst   Pg 6 of 25

Case 12-12020 (MG)              Page 5 of 77

11. Rozier was not in default in March 2008 when Debtors filed their Notice of Default [Rozier Decl #17]

12. Debtor GMAC Mortgage admitted liability in the signed forbearance agreement. Rozier signed on 4/29/2008 and Debtor GMAC Mortgage signed on 4/30/2008. Debtor then sent Rozier a blank contract and demand she sign it. Rozier refused. [Horst Decl, #17] [See Rozier Decl #20]

13. Prior to the wrongful September 24, 2012 foreclosure, an Assignment of Deed of Trust was recorded as document 2012000022516 04:07pm on 01/13/12. This assignment purported to transfer all interests from Bank of America, National Association, successor by merger to LaSalle Bank National Association, as Trustee RAMP 2007RP1. to US Bank, National Association, as successor in interest to Bank of America, National Association, successor by merger to LaSalle Bank National Association, as Trustee RAAC 2007RP1 [See Rozier Decl #26]

14. Declarant Horst claims that "Upon learning of a defect in the notice relating to such Deed Upon Sale, on October 3, 2012, ETS executed a Notice of Rescission of Trustee's Deed Upon Sale" but fails to mention that their action occurred after they were served with Movant's civil case, filed on September 27, 2014. [Rozier Decl #28, 29,30]

Outright Lies

15. Rozier did not obtain a second loan from WMC Mortgage Corp in the amount of $144,000 secured by Deed of Trust on January 4, 2006. [Horst Decl, #15] [Rozier Decl #17, 21, 33]

16. Rozier did not "default on her Note obligations" as Horst states. [Horst Decl, #11] [Rozier Decl #14]

17. Rozier did not miss an agreed-to date pursuant to any forbearance agreement. [Horst Decl, #17] [See Rozier Decl #14, 20]

18. Debtors never attempted to work in good faith with Rozier. [Horst Decl #19] Rozier sued Debtors in the Superior Court of California – Orange County as Case 30-2008 00217056. [Rozier Decl #21, 22]

19. No interest was ever transferred to Bank of America, National Association, successor by merger to LaSalle Bank National Association, as Trustee **RAAC** 2007RP1. [Horst Decl, #21] [Rozier Decl #23, 25]

12-12020-mg    Doc 7620-7    Filed 10/03/14    Entered 10/07/14 09:30:48    Exhibit
Exhibit C Motion to Strike Declaration of Deanna Horst    Pg 7 of 25

Case 12-12020 (MG)                        Page 6 of 77

20. The Buena Park police did not accompany anyone to Rozier's home on September 24, 2012.  [Horst Decl, #24] [Rozier Decl #27]

21. GMACM did not execute an Assignment of Deed of Trust transferring interest from Bank of America to U.S. Bank on March 25, 2013, months after the wrongful September 24, 2014 foreclosure. [Horst Decl, #27] [Rozier Decl #31]

22. Movant also refutes Declarant's assertion in para 28 as being materially false, misleading, and as omitting key relevant facts.

23. Movant does not know and has never known anyone named Eric Hardemion.  [Horst Decl, Footnote 8]. [Rozier Decl #36]

24. 'ETS' was not a legal entity in the state of California at any time material to these transactions. [Rozier Decl #19, 34].

25. Rozier believed WMC Mortgage cancelled Modification of Deed and Trust Agreement when she signed a new note. [Rozier Decl #10, 12, 32, 33]

26. "Debtors and GMACM" never serviced any valid Note executed by Rozier [Horst Decl, #2] [Rozier Decl #10, 12, 33]

**IV.    Her Discussion of the Proofs of Claim Are Inconsistent With Debtor's Records and the Records of This Proceeding**

Ms. Horst's version of events regarding Ms. Rozier's Proofs of Claims are equally false.

27. At the time, Rozier filed her initial Proofs of Claims against ETS and GMACM, she provided no supporting financial documentation to justify her claim. [Rozier Decl #39]

28. ETS and GMACM engaged in wrongful behavior post-bankruptcy. Rozier sued both parties in Orange County only for their post-bankruptcy bad acts. ETS, GMACM and Residential Funding claimed they were immune from prosecution in California due to the New York bankruptcy. [Rozier Decl #39]

12-12020-mg   Doc 7620-7   Filed 10/03/14   Entered 10/07/14 09:30:48   Exhibit
Exhibit C Motion to Strike Declaration of Deanna Horst   Pg 8 of 25

Case 12-12020 (MG)                    Page _7_ of _77_

29. Debtors then demanded additional documentation from Claimant, thus opening the door for her to
    include all of its bad acts in the subsequent filing. Claimant complied with Debtor's demand for a
    final claim. [Rozier Decl #41]

30. Debtors did not refute the amounts demanded but instead filed the Horst declaration with several
    false statements.

**V.      Her Discussion of The Court's Action on Rozier's Prior Requests Is False or Incomplete**

31. Rozier made her final demand known prior to her Motion for Payment of Claims. [Rozier Decl 41]

32. The Court did not sustained any objections to Movant's request for payment based on some defect
    in Rozier's claim. [Horst Decl, #37] That did not happen. The Court merely gave Debtor's more time
    to object to all claims. [Rozier Decl 45]

**VI.     Prayer**

Movant respectfully request that this court:

(1) Strike the Declaration of Deanna Horst in its entirety;

(2) Order Debtors to pay Rozier $750 immediately as sanctions.

Respectfully,

_Karen M Rozier_   9/26/2014

KAREN MICHELE ROZIER,
Unrepresented Claimant

**MEMORANDUM OF POINTS AND AUTHORITIES**

**28 U.S. Code § 1746 - Unsworn declarations under penalty of perjury**

Wherever, under any law of the United States or under any rule, regulation, order, or requirement made

pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by

the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making

12-12020-mg   Doc 7620-7   Filed 10/03/14   Entered 10/07/14 09:30:48   Exhibit
Exhibit C Motion to Strike Declaration of Deanna Horst   Pg 9 of 25

Case 12-12020 (MG)                    Page 8 of 77

the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified

official other than a notary public), such matter may, with like force and effect, be supported, evidenced,

established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such

person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following

form:

**(1)** If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury

under the laws of the United States of America that the foregoing is true and correct. Executed on

(date). (Signature)".

**(2)** If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify,

verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on

(date). (Signature)".

**18 U.S. Code § 1621 - Perjury generally**

Whoever— (2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted

under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he

does not believe to be true; is guilty of perjury and shall, except as otherwise expressly provided by law, be

fined under this title or imprisoned not more than five years, or both. This section is applicable whether the

statement or subscription is made within or without the United States.

**18 U.S. Code § 1623 - False declarations before grand jury or court**

(a) Whoever under oath (or in any declaration, certificate, verification, or statement under penalty of perjury

as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any

court or grand jury of the United States knowingly makes any false material declaration or makes or uses any

other information, including any book, paper, document, record, recording, or other material, knowing the

12-12020-mg    Doc 7620-7    Filed 10/03/14    Entered 10/07/14 09:30:48    Exhibit
Exhibit C Motion to Strike Declaration of Deanna Horst    Pg 10 of 25

Case 12-12020 (MG)                          Page 9 of 77

same to contain any false material declaration, shall be fined under this title or imprisoned not more than

five years, or both.

(b) This section is applicable whether the conduct occurred within or without the United States.

(c) An indictment or information for violation of this section alleging that, in any proceedings before or

ancillary to any court or grand jury of the United States, the defendant under oath has knowingly made two

or more declarations, which are inconsistent to the degree that one of them is necessarily false, need not

specify which declaration is false if—

(1) each declaration was material to the point in question, and

(2) each declaration was made within the period of the statute of limitations for the offense charged under

this section.

In any prosecution under this section, the falsity of a declaration set forth in the indictment or information

shall be established sufficient for conviction by proof that the defendant while under oath made

irreconcilably contradictory declarations material to the point in question in any proceeding before or

ancillary to any court or grand jury. It shall be a defense to an indictment or information made pursuant to

the first sentence of this subsection that the defendant at the time he made each declaration believed the

declaration was true.

(d) Where, in the same continuous court or grand jury proceeding in which a declaration is made, the person

making the declaration admits such declaration to be false, such admission shall bar prosecution under this

section if, at the time the admission is made, the declaration has not substantially affected the proceeding, or

it has not become manifest that such falsity has been or will be exposed.

**(e)** Proof beyond a reasonable doubt under this section is sufficient for conviction. It shall not be necessary that such proof be made by any particular number of witnesses or by documentary or other type of evidence.

**Federal Rules of Civil Procedure (F.R.C.P.) (c)(4)** Affidavits or Declarations. "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." The Horst declaration is filled with false statements and she admits that she relies on what other's have told her.

**Internal Revenue Code (IRC) § 860(d)** states that in order to have lawful tax-free status, the loan must be deposited into the trust within 90-days of the trust's *start-up date*. This is known as the cut-off date. The transfer must be lawful pursuant to a document or writing that does not create a presumption that the transfer violated state law or any other controlling trust document. This is not a form over substance argument. In RMBS transactions, a violation of state law or of the Pooling and Servicing Agreement (PSA) would open the trust to liability. Debtor's PSAs for RAMP 2007RP1 (if it ever existed) and RAAC 2007RP1 are governed by New York law. New York trust law requires strict compliance with the tryst documents, any transaction by the trust that is in contravention of the trust documents is void, meaning that the transfer is an *ultra vires* act. An attack upon the transfer of loan documents based on *ultra vires* acts of the trust will render those transfers unlawful and void as a matter of law. See Judge Isgur's decision which relied on Judge Wayne Saitta's decision and analysis of New York Trust Law in <u>Wells Fargo v. Erobobo</u>, 2013 WL 1831799, 2013 N.Y. Slip. Op. 50675(U) (NY Supreme Court, Kings County, 4/29/13).

Respectfully,

KAREN MICHELE ROZIER,    9/26/2014
**Unrepresented Claimant**

12-12020-mg   Doc 7620-7   Filed 10/03/14   Entered 10/07/14 09:30:48   Exhibit
Exhibit C Motion to Strike Declaration of Deanna Horst   Pg 12 of 25

Page 11 of 77

1
2
3

Karen M. Rozier
7957 Dahlia Circle
Buena Park, CA 90620
(714) 512-5740
Claimant Unrepresented

4

5

6

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

7
8
9

In re:

Residential Capital, LLC, et. al.

Debtors

| | |
|---|---|
| ) | Case No. 12-12020 (MG) |
| ) | Chapter 11 |
| ) | Jointly Administered |
| ) | |
| ) | **DECLARATION OF KAREN MICHELE ROZIER IN** |
| ) | **SUPPORT OF MOTION TO STRIKE THE** |
| ) | **DECLARATION OF DEANNA HORST IN SUPPORT OF** |
| ) | **THE OBJECTION OF THE RESCAP BORROWER** |
| ) | **CLAIMS TRUST TO PROOFS OF CLAIM FILED BY** |
| ) | **KAREN MICHELE ROZIER (CLAIMS NOS. 4738 AND** |
| ) | **5632)** |
| ) | |
| ) | [Related to 7474-4, 7457] |
| ) | |
| ) | Hearing: October 22,2014 |
| ) | Time: 10:00 A.M. EST |
| ) | |

10
11
12
13
14
15
16
17
18

1. I am <u>Karen Michele Rozier</u>, the Claimant in the subject case for Proofs of Claim 4738 and 5632, over

the age of 18 and without benefit of counsel in this litigation. I have personal knowledge of the facts

herein, and, if called as a witness, could testify competently thereto. I am competent to submit this

declaration in support of my *"MOTION TO STRIKE THE DECLARATION OF DEANNA HORST IN*

*SUPPORT OF THE OBJECTION OF THE RESCAP BORROWER CLAIMS TRUST TO PROOFS OF CLAIM FILED*

*BY KAREN MICHELE ROZIER (CLAIMS NOS. 4738 AND 5632)"* (the "Motion to Strike"[1]).

2. I am an individual, not a lawyer or corporation, and without benefit of counsel. I have never

attended law school nor sat for admission to law school; nor have I taken the Law School Admission

19
20
21
22
23
24
25
26
27
28

---

[1] Defined terms used but not defined herein shall have the meanings ascribed to such terms in the Objection.

12-12020-mg    Doc 7620-7    Filed 10/03/14    Entered 10/07/14 09:30:48    Exhibit
Exhibit C Motion to Strike Declaration of Deanna Horst    Pg 13 of 25

Page 12 of 17

Test nor sat for any BAR exam. This is my first bankruptcy as an active Claimant. I am not being assisted by others in the matter. Neither do I have a supporting staff.

3. I was personally and professionally harmed by Debtors' bad and illegal acts and that harm is on-going, substantial and in some cases, permanent.

4. Ms. Horst's declaration was submitted pursuant to 28 U.S.C. § 1746 under penalty of perjury as being "true and correct" with no caveats attached such as "to the best of my knowledge". I carefully reviewed each and every statement contained therein.

5. On Saturday September 20, 2014 I logged onto Linked-in to review the publically available resume of Ms. Deanna Horst. According to PC Magazine, Linkedin is *"The best online professional network you'll find.*[2]*"* PC Magazine presently has Linked-in ranked with 4.5 out of 5-stars. I compared Ms. Horst online resume with what was filed in her declaration under penalty of perjury. A true and correct copy of her Linked-In profile is attached hereto as **Exhibit 1**[3]. I discovered several discrepancies, which are highlighted in **Exhibit 1-A**. In addition to the titles being inconsistent, so too are the alleged dates of beginning and ending certain positions she claims to have held.  [Horst Decl, #1]

6. Also on September 20, 2014 I researched GMAC Mortgage and Residential Capital's quality reputation during the period Ms. Horst claims she was in charge. I am Raytheon Six Sigma trained and was the Manager of Raytheon Systems Company Material Quality and Supplier Development group. My duties included oversight of our field offices across the country. I have published papers on Supplier Development[4]. I was also the LEAN SIX SIGMA Champion for the Naval Sea Systems

---

[2] A link to the ratings is provided here: http://www.pcmag.com/article2/0%2c2817%2c2143275%2c00.asp

[3] Every exhibit annexed to this Declaration is as though the entire body of the document was included in this Declaration, unless otherwise noted.

[4] Quality publications: *"Supply Chain Management in the Requirements and Design Phase"*, selected for the 1999 Raytheon Systems Engineering Symposium; *"Bruno Lessons Learned"* published in Hughes Aircraft Material Mentor (September 1993); *"Managing Technology Transfer in a Teaming Environment"* published in Washington D.C. Press Conference Review Newsletter (February 1, 1993). The article was an in-depth analysis of why a critical supplier failed and the consequences of that failure on the company's ability to meet its contractual obligations. Hughes Aircraft changes its procurement and supplier management processes including developing

Command-Corona Division when it was defining its LEAN Six Sigma program. Lastly, I reviewed the

Missile Defense Agency's Quality Assurance Program (The MDA MAP) when that agency was first

developing.  As such, I am qualified to assess Ms. Horst's claims that she is qualified because she was

in charge of Debtor's quality programs.

7.  Ms. Horst claims she is an expert qualified to submit her declaration based on her being Debtor's

"Responsible Lending Manager" but Debtor is in bankruptcy due to its irresponsible lending and

servicing behavior. Also, Ms. Horst claims that she was "Director of Quality Asset Management" and

other quality related processes but according to Moody's the Debtor's lacked internal processes and

internal controls. A true and correct copy of the Moody's announcement is attached hereto as

**Exhibit 2**. Debtor GMAC Mortgage was one of the world's largest purchasers of scratch-and-dent

mortgages but had no processes in place to manage this profitable but unregulated part of its

business. In short, Ms. Horst has not demonstrated competence in her duties and should not be

allowed to claim she is an expert. She also failed to provide any academic or professional credentials

to support her being qualified to handle the responsibility she claims she had.

8.  In her declaration, Ms. Horst[5] conveniently omits certain crucial facts in her description of "Rozier's

Loan History". I admit that I executed a Note on December 23, 2005 and rescinded that Note on

February 28, 2006. By law, a rescinded note is a nullity. However, as Ms. Horst was not privy to the

conversation I had with Mr. Richard Rothleder of WMC Mortgage, LLC she can not testify nor declare

as to why I rescinded the December 2005 Note. I rescinded the December 2005 note after several

discussions with Mr. Rothleder about LIBOR. A true and correct copy of the Rozier's rescission was

provided by Debtor as page Exhibit 1-A, pg 105 of 131 and is attached hereto as **Exhibit 3**.

---

supplier management tools. I also helped write Raytheon's Supplier Affordability Assessment Process, which
later became their handbook for Supplier Development activities.

[5] I am not the first Claimant to accuse Ms. Horst of filing a false declaration.  On 9/11/14, Nancy K. Layne also filed an
objection to one of Ms. Horst's declarations citing several false statements.  As such, the Court should properly scrutinize
Ms. Horst's declarations and prosecute where appropriate. [See Doc 7547]

9. Within twenty days of rescission of the December 2005 Note, I asked WMC Mortgage to put me back in my original position and they failed to respond. Due to their failure to respond, I hired the Law Office of Judith Deming to represent me in finalizing the transaction. She wrote WMC Mortgage and informed them that the rescinded Note was a nullity and that they were required by law to put me back in my original position

10. At that time, I had no idea that WMC Mortgage was an out-of-control subprime lender with no processes to handle my request. WMC Mortgage claimed it was a GE Money Company. At the time, GE Company's CEO was still Mr. Jack Welch. Mr. Welch was considered by many as the Father of American Six Sigma[6]. As I am Six Sigma trained and truly embrace its philosophy, I believed his company's literature when it claimed it was also a quality organization.

11. I executed several "Notes" prior to the final Note, which was I signed on June 1, 2006. [Please see Debtor's Exhibit 3-A, pg 30 of 126 and the Federal Truth-In-Lending Statement also signed on that date, attached hereto as **Exhibit 4.**] Missing is the Deed of Trust that was secured by this Note. The recorded Deed of Trust was a nullity as it as unsecured by any note since the December 23, 2005 note was properly rescinded and replaced with a new Note.

12. Between December 2005 to June 2006 I had no reason to suspect that WMC Mortgage was engaging in illegal behavior. I trusted that they recorded the Deed of Trust that went along with the June Note.

13. Declarant claim Debtors waived the prepayment penalty [Decl footnote 6, page 7] but the Truth-in-Lending Statement includes a prepayment penalty. [See Exhibit 4-2]

14. I did not take out a second loan from WMC Mortgage Corp in the amount of $144,000 secured by Deed of Trust on January 4, 2006. [Horst Decl, #11]

15. I offered several times to honor the June 1, 2006 if Debtors would demonstrate it had that Note. Debtors and U.S. Bank repeatedly denied that Note's existence. When I obtained a copy of my loan

---

[6] Six Sigma isn't just about reducing defects in a manufacturing or service company. Part of the Six Sigma philosophy is what one does after a defect is discovered. WMC Mortgage not only failed to have processes in place to reduce and manage defects, they also did not have a robust conflict resolution process. They were barely 3-sigma. GE Money wisely shut down this company in 2008 before being ordered to do so.

file in February 2013, I found the evidence of the June 1, 2006 loan[7]. I originally thought I signed the

final note on May 28, 2005.  Missing from the loan file that Severson and Werson sent me was all

documents from May 6, 2006 – May 31, 2006. I was pleasantly surprised to see the paperwork from

June included.

16. Mr. Yaron Shaham, co-counsel for Debtor, presented to the judge that I signed two notes – a secured

loan for $576,000 dated 12/23/2005 and an unsecured loan for $576,000 dated 06/1/2006. The

presiding judge of the Superior Court rejected that theory. Mr. Shaham - while representing U.S.

Bank and Debtor Residential Funding - responded by bringing in the large law firm Locke Lord, LLP to

execute a series of moves to have the case removed from Judge Derek Hunt to a judge whose

background was in family law. That act of judge shopping is included in my appeals case G050520 in

the California Appeals Court.

17. I deny that I was ever in default on any valid debt. I contacted Debtor as early as December 4, 2007

and they encouraged me to stop payment. I repeatedly informed them that I did not want nor need

any payment reduction as my husband and I were still generating income and able to meet our

obligations. I contacted Debtors by telephone trying to make a telephone payment.  I also attempted

to make online payments but was prevented from doing so. Additionally, Debtor's own records show

that I made a payment in February 2008 and that Debtor accepted that money, declared default on

March 3, 2008, [Horst Decl, #16] and then returned my money to my account. Debtor's own records

show that it accepted my payment in February 2008, a few days before the declared default. [Please

see Debtor's Exhibit 1-A, pg 119 of 131, attached hereto as **Exhibit 5**.]

---

[7] I asked to be allowed to visit Severson and Werson's office to review my loan file. Immediately thereafter, they filed a Workplace Restraining Order request claiming that I threatened them, which is a lie. The TRO was granted by Judge Scott Steiner, who was under investigation at the time for adultery, extorting sex in exchange for job references, and having sex in chambers with a criminal attorney that was appearing before him.  He was censured by the California Judicial Commission on September 2, 2014. My hearing was witnessed by Ms. Pamela Ragland. Ms. Ragland is presently suing U.S. Bank as well, which is scheduled to go to trial on September 23, 2014. Ms. Ragland won her appeal and established new case law in California, allowing homeowners to sue for Intentional Infliction of Emotional Distress.  I have it on good authority that counsel for U.S Bank have offered to settle her case, provided she remove certain videos she made, including one where she describes what happened at the TRO hearing. I am appealing Judge Steiner's decision. Here is the link: https://www.youtube.com/watch?v=1ZbOnLHffPg&feature=youtu.be.

18. It was Debtor's wrongful acts that drove me into bankruptcy and forced me to chose between my profession and fighting their illegal acts at great cost to my social status, health, and solvency.

19. I discovered ETS was a wholly-owned subsidiary of GMAC Mortgage very early in the dispute. They simply were not acting like a disinterested third-party but instead as an agent for Debtor GMAC Mortgage, LLC. They claimed on their paperwork they were a Trustee, but they did not act in accordance with my understanding of how a Trustee behaves. I claimed ETS was never a Trustee and that it obscured its relationship with co-Debtor GMAC Mortgage to defraud the public and government entities into believing that fraudulent foreclosures were being done by a third-party Trustee with duties of care. ETS responded by filing false police reports claiming that I was making physical threats against employees. I have never threatened anyone with anything except exposure and assurance that I would seek criminal prosecution for crimes as I uncover them.

20. I never entered into a forbearance agreement with Debtors. [Horst Decl, #17] I modified the agreement and that modified agreement was signed by Debtor. I was prepared to pay in full to catch-up but Debtor sent me via facsimile a blank sheet signature page. Debtor claimed it could not accept the agreement as signed and insisted that I sign the blank signature page, one sent with no contract attached. Debtor claimed it would send the full contract later. When I refused to execute a blank contract, Debtor threatened it would take my house. A true and correct copy of the forbearance agreement we both executed is attached hereto as **Exhibit 6**.

21. Debtor never attempted to work with me in good faith. It offered me a loan modification in September 2008 with terms so onerous that I rejected it outright. Additionally, Debtor continued to offer the void December 2005 note instead of the valid June 1, 2005 note. At the time, I was ignorant of Pooling and Servicing Agreements or New York Trust law.

22. I sued Debtors in the Superior Court of California – Orange County as Case 30-2008 00217056. A true and correct copy of the initial suit is attached hereto as **Exhibit 7**. Debtors removed the case to federal court and then rescinded the default.

23. I have reviewed the Debtors' exhibits as well as my records. According to Debtor's own Exhibit 3-A.14, any interest in the property was transferred to Bank of America, National Association, successor by merger to LaSalle Bank National Association, as Trustee **RAMP 2007RP1**. I have conducted hundreds of hours of research including examining filings at the SEC using their online database called Edgar. To date, I have found no evidence that this trust ever  existed or filed any paperwork with any governmental agency. That assignment to Bank of America is a nullity, which makes all subsequent assignments also a nullity. Debtors had no right to pretend otherwise.

24.  If that transfer did occur, it would have occurred long after the cut-off date specified in the Pooling and Servicing Agreement, if one existed.

25. Declarant Horst however claimed the interests were transferred into a trust named **RAAC 2007RPI**. Her statements are materially false and contradict her own evidence. A true and correct copy of Declarant Horst's Exhibit 3-A.14 is attached hereto as **Exhibit 8**.

26. Declarant omits a material fact, one which should constitute a fraud upon the court. An Assignment of Deed of Trust was recorded as document 2012000022516 04:07pm on 01/13/12. This assignment purported to transfer all interests from Bank of America, National Association, successor by merger to LaSalle Bank National Association, as Trustee **RAMP 2007RP1**. to US Bank, National Association, as successor in interest to Bank of America, National Association, successor by merger to LaSalle Bank National Association, as Trustee **RAAC 2007RP1**.  A true and correct certified copy of that recorded document is attached hereto as **Exhibit 9**. Declarant Horst failed to include this critical fact in her filing. This is material as she later admits that Bank of America foreclosed nine months later in September 2012. [Horst Decl, #24]. Under her version of facts, Bank of America foreclosed as BofA RAAC 2007RP1, rescinded as BofA RAAC 2007RP1 and then transferred interest from BofA RAAC 2007RP1 to US Bank RAAC 2007. The record as verified by publically available documents show that Bank of America transferred interest from BofA RAMP 2007RP1 to US Bank RAAC 2007, foreclosed as

BofA RAMP 2007RP1, and then rescinded as BofA RAMP 2007RP1, all with Debtors ETS, GMACM and Residential Funding assistance.

27. No police accompanied anyone to my home on September 24, 2012. A stranger knocked on my front door on Tuesday September 25, 2012 informing me that my home had been sold the previous day and that I had three days to leave my home. This was one day prior to them recording the sale, which is illegal under California law[8]. Bank of America then sent agents to my home at midnight to "help me move". Two large Black men claimed the bank had sent them. Since we are not easily intimidated and also black, we were not impressed. At the time, our town was less than 2% black. Today Buena Park has a slightly greater than 2% black population. The Buena Park Police records are attached hereto as **Exhibit 10**.

28. I contacted Adam Barasch of Severson and Werson, APC, co-counsel for debtors multiple times to have the illegal foreclosure reversed. Mr. Barasch and I had an agreement that his clients U.S. Bank

---

[8] See California Penal Code 484(a), 518-519, and 524. Section 484(a) reads in part: Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft.

California Penal Code Section 518 reads in its entirety: Extortion is the obtaining of property from another, with his consent, or the obtaining of an official act of a public officer, induced by a wrongful use of force or fear, or under color of official right.

California Penal Code Section 519 reads in part: Fear, such as will constitute extortion, may be induced by a threat, either:
    1. To do an unlawful injury to the person or property of the individual threatened or of a third person; or,
    3. To expose, or to impute to him, her, or them a deformity, disgrace, or crime; or,

California Penal Code Section 524 reads in its entirety: Every person who attempts, by means of any threat, such as is specified in Section 519 of this code, to extort money or other property from another is punishable by imprisonment in the county jail not longer than one year or in the state prison or by fine not exceeding ten thousand dollars ($10,000), or by both such fine and imprisonment.

and Residential Capital would not attempt to foreclose prior to October 1, 2012, around the time

their appeals brief was due in Federal BAP case CC-12-1359[9].

29. I chose to file a civil case against Debtors, and U.S. Bank filed on September 27, 2014. A true and

correct copy of the first page of each version of the complaint is attached hereto as **Exhibit 11**.

30. The following day, Mr. Barasch attempted to extort my cooperation in exchange for the rescission.

Specifically, he agreed that his clients including Debtors would reverse the foreclosure if I agreed to

give them more time to file their briefs in federal court. I refused. A true and correct copy of our

email correspondence dated Friday September 28, 2012 is attached hereto as **Exhibit 12.**

31. According to my records and the Official Records of Orange County GMACM did not execute an

Assignment of Deed of Trust transferring interest from Bank of America to U.S. Bank on March 25,

2013. Declarant Horst's Exhibit 3-A.21 is attached hereto as **Exhibit 13**. That Assignment of Deed of

Trust pertains to a property belonging to FRANCINE SILVER, AN UNMARRIED WOMAN.

32. I rescinded the Modification of Deed and Trust Agreement. A true and correct copy of Declarant's

copy (Exhibit 3-A, pages 60-61) is attached hereto as **Exhibit 14** but I never received an executed

copy of this document during the time period as we signed a new loan and I assumed it had been

destroyed. I explained to Mr. Richard Rothleder of WMC Mortgage that they failed to include

language in the modification that would have secured the recorded December 23, 2005 Deed of

Trust to this note as that DOT still calls out the rescinded and void note dated December 23, 2005. I

---

[9] I filed my final Appeals brief in April 2014. A key argument in my appeal is that counsel for U.S. Bank and Debtors Residential Capital tricked the court into granting them relief from stay by falsely claiming my home was underwater. The Note is a small consideration of that argument. I provided the Court of Appeals evidence that Debtors and U.S. Bank submitted a false declaration to the Court claiming that my home was half its size and worth half its value. Counsel for Debtors (Severson and Werson) presented to the Court that I had a 4,206 square foot home and took out a loan on that home, subsequently tore that house down and replaced it with a 2,096 square foot home. The lower Court (specifically Judge Catherine Bauer, former Head of Bank of America's bankruptcy litigation department) accepted Severson and Werson's position that the California 2007 appraisal was not sufficient to overcome Severson and Werson's declaration. I provided the Appeals Court with an April 2014 appraisal that proves conclusively that my home has not changed in size since the final permits were signed in 2005. Our home is still a 4,206 square foot home worth close to a million dollars. Counsel for Debtors and U.S. Bank submitted false documents to the Bankruptcy Court so that it would be granted relief which it was not legally entitled to receive. Worse, they portrayed me as a lying deadbeat who took out a large loan on a small worthless shack and used my race to convince the court I was untrustworthy. The Appeals Court has not yet issued an opinion in that case.

recall telling him that I was not looking forward to signing yet another set of loan documents and another Deed of Trust once he realized his mistake. Sure enough, he cont acted me back and confirmed that the May 22, 2006 paperwork was "bad" and we signed a new note on June 1, 2006. That Note closed on June 6, 2006. I did not think anything of the date but my newly ordained sister (a Reverend) claimed I was going to have problems with it since it closed on **6-6-6**.

33. I never saw Debtors' Modification of Deed and Trust Agreement with Mr. Rothleder's signature and notarized until I was well into litigation with Debtors.  I deny its validity and Debtors' own records - records supplied to me by Yaron Shaham of Severson and Werson, APC shows a note signed on June 1, 2006. That is after WMC Mortgage allegedly executed the Modification of Deed and Trust Agreement.

34. Ms. Horst mentions that Executive Trustee Services, LLC dba ETS Services, LLC was substituted in as the Trustee for Westwood Associates and Debtors provides evidence that "ETS Services, LLC" filed documents with the California Secretary of State [See Debtors's Exhibit 29, attached hereto as *Exhibit 15.*] However, *that document is undated and Debtor fails to provide any evidence that the* California Secretary of State accepted such filing. Moreover, this document is false as it claims that "ETS is a third party trustee" when in fact, ETS was at the time it filed the document, a wholly owned subsidiary of Debtor GMAC Mortgage, LLC. Any act they committed after this first fraudulent act is clearly void.

35. The Substitution of Trustee was allegedly notarized by one "Nikoli Shelton". [A true and correct copy of Declarant's Exhibit 3-A, page 81 of 126 is attached hereto as **Exhibit 16.**] Ms. Shelton was later barred from Notary duties in the Commonwealth of Pennsylvania due to her admitting to robosigning and other breaches of notary duty.  A true and correct copy of an Affidavit from Register of Deeds John L. O'Brien, Jr. from the Commonwealth of Massachusetts documents that her participation corrupted the chain of title is attached hereto as **Exhibit 17.**

36. I don't know and have never conducted business with anyone named Eric Hardemion[10]. I was the one who alerted the Bankruptcy Court to the fraud of Eric Hardemion. At the time, the lead investigator explained that the Orange County bankruptcy office was understaffed and that they typically only looked at cases involving massive fraud. According to him, although my home at the time was worth around $925,000 it did not qualify as massive fraud by Orange County standards. This fact was settled in California court when Debtors and US Bank (through its counsel Serverson and Werson) attempted to get extraordinary relief and the court, after hearing all evidence, denied their request.

37. Debtor attempted to sell my home in early January 2013. Judge Derek Hunt threatened to personally put Yaron Shaham of Severson & Werson, APC in jail if anyone from his company attempted such a feat. Judge Hunt was upset with Mr. Shaham for his unprofessional behavior as well as the clearly false information U.S. Bank submitted to the Court. This information included U.S. Bank and Debtors lying about the size of my home to trick the federal bankruptcy court into granting it relief from stay, filing false documents claiming I executed a document executed by "Karen Michelle Rozier", and Yaron Shaham standing before Orange County Judge Derek Hunt claiming the he [Shaham] represented Bank of America when he did not. [A true and correct copy of Debtor's fraudulent notary action was provided by Declarant Horst as Exhibit 3-A, Pg 45 of 126 is attached hereto as **Exhibit 18.**]

38. Debtors and its agents continued to file false documents misspelling my middle name[11] until Judge Hunt again threatened to put someone in jail. That included misspelling my name on documents it filed in my Orange County Superior Court case 30-2012-00601310-CU-OR-CJC.

39. When I filed my initial Proofs of Claims against Debtors ETS and GMACM, I provided no supporting financial documentation to justify my claim. Certain Debtors engaged in wrongful behavior post-

---

[10] Declarant erroneously calls him "David Hardemion" in her flawed declaration. See Decl footnote 8, page 11.

[11] Movant/ Claimant's name is Karen Michele Rozier.

bankruptcy and I sued them in Orange County only for their post-bankruptcy bad acts. ETS, GMACM and Residential Funding claimed they were immune from prosecution in California due to the New York bankruptcy. The Orange County court required me to remove them from the litigation due to the stay. I complied with the Court's order yet Debtors continued to file documents in the California litigation including onerous demands for Discovery. Debtors then demanded additional documentation in this case, thus opening the door for me to include all of its bad acts in the subsequent filing. I complied with Debtor's demand for a final claim. Debtors did not refute the amounts demanded but instead filed the Horst declaration with several false statements.

40. I filed an Independent Foreclosure Review request citing several causes of actions. According to the Consent Order, claims are evaluated before they are placed in the IFR Waterfall. According to the Order Authorizing the Establishment of an Escrow of Funds Pending Consideration of a Proposed Settlement by Court[12], the minimum payment is no less than $250.

41. Declarant implies that I did not make my $96,927,309 demand known until I filed my Motions for Payment. [Decl footnote 9, page 13.] As I do not have specific information as to what the "Borrower Trust" considers "made known", I can neither confirm nor deny this statement. However, the facts are clear that I submitted my demand with supporting information in July 2013 in response to Debtor's Request Letter.

42. I have read thousands of pages attempting to stay abreast of this bankruptcy and do not recall the court specifically calling for Claimants holding general unsecured claims to request payment.

43. I am doing my best to comply with the Court's orders and instructions. That includes my request for payment as an Administrative Expense Claims. Any mistakes I have made were inadvertent and with no intent to harass, annoy, delay or hinder these proceedings. I just want to be compensated for the lasting harm Debtors caused so I can move on with my life, as does the rest of my family.

---

[12] Doc 4091 filed on 06/26/13

44. I have attempted to move my claims forward as Debtor had not disputed my claims. Debtor still had

make no valid arguments that would reduce or deny my claims.

45. In its earlier Order denying my request for payment, the Court did not make any ruling on the merits

of my claim. The Court merely gave Debtor's more time to object to all claims. Debtor exceeded that

time and was granted a nine-month extension to complete its tasks.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true to the best of my

knowledge.

Executed in Buena Park, California on September 24, 2014          By

KAREN MICHELE ROZIER,
Unrepresented Claimant

## LIST OF EXHIBITS

**Exhibit 1**    Linked-in Profile of Deanna Horst downloaded 9/20/2014

**Exhibit 2**    Moody's Investor Service Announcement dated 27 Sep 2010

**Exhibit 3**    Debtor's Exhibit 1-A, pg 105 of 131 Letter dated February 24, 2006 from WMC Mortgage

**Exhibit 4**    Truth-in-Lending Statement and Declarant's Exhibit 3-A, pg 30 of 126, NOTICE OF RIGHT TO CANCEL dated May 31, 2006

**Exhibit 5**    Debtor's Exhibit 1-A, pg 119 of 131, HISTORY FOR ACCOUNT ---1144 dated 01/20/11

**Exhibit 6**    Signed Forbearance Agreement dated April 29, 2008

**Exhibit 7**    Case 30-2008 00217056, Petition for Judicial Review

**Exhibit 8**    Declarant's Exhibit 3-A.14 Assignment of Deed of Trust dated 03/03/11.

**Exhibit 9**    Debtor's Exhibit 3, Page 27 of 35, Assignment of Deed of Trust dated 01/04/12.

**Exhibit 10**    Buena Park Police records

**Exhibit 11**    Case 30-2012-00601310-CU-OR-CJC

**Exhibit 12**    email from Adam N. Barasch of Severson & Werson, APC to Karen Rozier dated 10/1/12.

**Exhibit 13**    Declarant's Exhibit 3-A.21, Assignment of Deed of Trust for Francine Silver

**Exhibit 14**    Declarant's Exhibit 3-A, pages 60-61, Modification of Deed and Trust Agreement

**Exhibit 15**    Debtor's Exhibit 29, Pg 3 of 16, Statement of Information, undated.

**Exhibit 16**    Declarant's Exhibit 3-A, Pg 81 of 126, Substitution of Trustee dated 4/4/11.

**Exhibit 17**    Affidavit from Register of Deeds John L. O'Brien, Jr. from the Commonwealth of Massachusetts

**Exhibit 18**    Declarant's Exhibit 3-A, Pg 44-45 of 126, false Notary

DECLARATION_MOTION TO STRIKE THE DECLARATION OF DEANNA HORST