**Case 12-12020 (MG)**          **Page $\underline{25}$ of $\underline{77}$**          **Exhibit 1**

# EXHIBIT 1

9/20/2014

# Deanna Horst

**Join LinkedIn and access Deanna Horst's full profile. It's free!**

As a LinkedIn member, you'll join 300 million other professionals who are sharing connections, ideas, and opportunities.

- See who you and **Deanna Horst** know in common
- Get introduced to **Deanna Horst**
- Contact **Deanna Horst** directly

**View Deanna's full profile**

## Deanna Horst's Overview

**Chief Claims Offiicer** at **GMAC ResCap**
Senior Director Clams Management at GMAC ResCap
Vice President, Business Risk and Controls at GMAC ResCap
Vice President, Credit Risk - Senior Credit Officer at GMAC Bank
Director, Quality Asset Management at GMAC-RFC
VP Client Services Manager at Old Kent Mortgage
see less
Loyola University Maryland
454 connections

## Deanna Horst's Experience

**Chief Claims Offiicer**
**GMAC ResCap**
Public Company; 10,001+ employees; Financial Services industry
October 2013 – Present (1 year)   Fort Washington, PA

Claims and Client Recovery

**Senior Director Clams Management**
**GMAC ResCap**
Public Company; 10,001+ employees; Financial Services industry
July 2012 – October 2013 (1 year 4 months)   Fort Washington, PA

**Vice President, Business Risk and Controls**
**GMAC ResCap**
Public Company; 10,001+ employees; Financial Services industry
July 2011 – July 2012 (1 year 1 month)   Fort Washington, PA

**Vice President, Credit Risk - Senior Credit Officer**
**GMAC Bank**
Public Company; 10,001+ employees; Banking industry
August 2006 – July 2011 (5 years)   Fort Washington, PA

**Director, Quality Asset Management**
**GMAC-RFC**
Public Company; 10,001+ employees; GM; Financial Services industry
August 2001 – August 2006 (5 years 1 month)   Chevy Chase, Maryland

**VP Client Services Manager**
**Old Kent Mortgage**
1997 – 2001 (4 years)   Baltimore, Maryland Area

Originating Branch Manager and Mid-Atlantic Training and Technology Manager.

## Deanna Horst's Education

**Loyola University Maryland**
MBA, Business
2004 – 2006

## Deanna Horst's Skills & Expertise

Mortgage Lending   Regulatory Affairs   Business Continuity   Credit Risk   Loans   Mortgage Banking   Claims Management

Repurchase Management

## View Deanna Horst's full profile to...

- See who you and **Deanna Horst** know in common
- Get introduced to **Deanna Horst**
- Contact **Deanna Horst** directly

**View Deanna's full profile**

9/20/2014

# Deanna Horst

**Join LinkedIn and access Deanna Horst's full profile. It's free!**

As a LinkedIn member, you'll join 300 million other professionals who are sharing connections, ideas, and opportunities.

- See who you and **Deanna Horst** know in common
- Get introduced to **Deanna Horst**
- Contact **Deanna Horst** directly

**View Deanna's full profile**

## Deanna Horst's Overview

**Chief Claims Officcer at GMAC ResCap**

Senior Director Clams Management at GMAC ResCap
Vice President, Business Risk and Controls at GMAC ResCap
Vice President, Credit Risk - Senior Credit Officer at GMAC Bank
Director, Quality Asset Management at GMAC-RFC
VP Client Services Manager at Old Kent Mortgage
**see less**

Loyola University Maryland

**454 connections**

## Deanna Horst's Experience

**Chief Claims Officcer**
**GMAC ResCap**
Public Company; 10,001+ employees; Financial Services industry
October 2013 – Present (1 year)    Fort Washington, PA

Claims and Client Recovery

**Senior Director Clams Management**
**GMAC ResCap**
Public Company; 10,001+ employees; Financial Services industry
July 2012 – October 2013 (1 year 4 months)    Fort Washington, PA

**Vice President, Business Risk and Controls**
**GMAC ResCap**
Public Company; 10,001+ employees; Financial Services industry
July 2011 – July 2012 (1 year 1 month)    Fort Washington, PA

**Vice President, Credit Risk - Senior Credit Officer**
**GMAC Bank**
Public Company; 10,001+ employees; Banking industry
August 2006 – July 2011 (5 years)    Fort Washington, PA

**Director, Quality Asset Management**
**GMAC-RFC**
Public Company; 10,001+ employees; GM; Financial Services industry
August 2001 – August 2006 (5 years 1 month)    Chevy Chase, Maryland

**VP Client Services Manager**
**Old Kent Mortgage**
1997 – 2001 (4 years)    Baltimore, Maryland Area

Originating Branch Manager and Mid-Atlantic Training and Technology Manager.

## Deanna Horst's Education

**Loyola University Maryland**
MBA, Business
2004 – 2006

## Deanna Horst's Skills & Expertise

Mortgage Lending    Regulatory Affairs    Business Continuity    Credit Risk    Loans    Mortgage Banking    Claims Management
Repurchase Management

## View Deanna Horst's full profile to...

- See who you and **Deanna Horst** know in common
- Get introduced to **Deanna Horst**
- Contact **Deanna Horst** directly

**View Deanna's full profile**

http://www.linkedin.com/in/deannahorst

*(handwritten annotations:)*

→ declaration reads "Chief Claims Officer for the ResCap Liquidating Trust"; declaration also claims she is Chief Claims Officer for "Residential Capital, LLC and its affiliates" [Emphasis added]

→ declaration claims she started in June

→ declaration claims she ended in June

→ declaration states Director, Responsible Lending Manager (2001)

**Case 12-12020 (MG)**          Page 28 of 77          **Exhibit 2**

# EXHIBIT 2

12-12020-mg    Doc 7620-8    Filed 10/03/14    Entered 10/07/14 09:30:48    Exhibit
Exhibit G continued Page 5 of 26
9/20/2014    Moody's places 319 tranches of GMAC serviced RMBS on review for possible downgrade

# MOODY'S
### INVESTORS SERVICE

**Announcement:**

Global Credit Research - 27 Sep 2010

New York, September 27, 2010 — Moody's has placed the ratings of 319 tranches of 114 deals of GMAC serviced residential mortgage-backed securities (RMBS) on review for possible downgrade due to specific servicing concerns. The rating action impacts $7.6bn RMBS. In addition, 462 tranches of 80 other GMAC serviced deals that Moody's placed on review for possible downgrade on March 4, 2010, continue to be under review for possible downgrade.

Ratings Rationale:

The rating action is triggered by the irregularities in GMAC Mortgage, LLC's (GMACM) foreclosure process that have recently come to light. This month, the company provided direction to real estate brokers to suspend evictions and REO property sales in 23 states. The suspension is intended to give GMACM time "to address a potential issue that was raised in a number of existing foreclosures challenging the internal procedure" the company used for filing affidavits as required by courts in certain states. Given that state attorneys general in non-judicial states are also exploring GMACM's processes, Moody's believes that the scope of the investigation might not just be limited to the 23 judicial states. As a result, impacted loans from all states were included in the analysis.

GMACM has stated that one or more of its employees had signed affidavits without firsthand knowledge as to whether facts stated in the document were accurate. Some states laws require that the person preparing the affidavit have personal knowledge of the facts stated in the affidavit. In addition, according to a deposition by an employee of the company, a notary did not witness the signatures.

GMACM's improper affidavit preparation procedure could cause the GMACM serviced RMBS securitization trusts to experience higher losses due to (i) extended foreclosure and liquidation times, with some foreclosures possibly having to be redone and (ii) litigation costs, including class-action suits, that could result in legal expense, damages and other court fees.

Questions also arise over the legality of earlier foreclosure proceedings and the future process the courts may take to remedy the situation. It is still uncertain how courts will view cases of borrowers who have been evicted from their homes using the flawed foreclosure process.

While transaction documents might require GMACM to reimburse the trusts for litigation and other costs arising from violation of servicing standards, GMACM is a subsidiary of C rated Residential Capital, LLC (RFC). In case of a default, the losses might have to be absorbed by the trusts.

To determine the scope of the potential impact, Moody's reviewed the balance of loans in GMACM serviced deals that have already been through the foreclosure process. These include properties that are currently held for sale (REO status) or have been liquidated in the last three years. Moody's estimated the liquidated loan balances by adjusting the cumulative losses to date by assumed loss severities of 40% for jumbo, 50% for alt-A, and 70% for subprime and scratch and dent pools. Deals are being placed on review for possible downgrade if the exposure of such loans expressed as a percent of current outstanding balance of the deals exceeds 1% for jumbo, 3% for alt-A and 5% for option ARM, subprime and scratch and dent pools.

In addition, Moody's has placed on review for possible downgrade the rating on the Class A notes (currently rated A2 (sf)) issued by GMACM Mortgage Loan trust 2010-1 ("the FHA transaction").

The FHA transaction is backed by mortgage loans that are guaranteed by the U.S. Department of Housing and Urban Development ("HUD") under either the Federal Housing Authority ("FHA") or the Veterans Administration ("VA") insurance programs. However, in order to qualify for these insurance benefits, HUD requires GMAC Mortgage to meet certain underwriting and servicing standards as detailed in program guidelines. If GMAC Mortgage fails to comply with these standards, HUD may deny its claim under the insurance program, thus resulting in unreimbursed losses. As the collateral consists of non-performing mortgage loans, the FHA transaction has significant exposure to claim denials. Based on our estimates, 11% of the original balance of the FHA transaction consists of mortgage loans that have gone through the foreclosure process in states that are subject to GMAC Mortgage's self-imposed suspension of evictions and REO sales.

The heightened risk of claim denials on the insured loans in the transaction and potential legal expenses in case of lawsuits against the trust are the primary drivers for placing the rating on the class A notes of the transaction on credit watch for possible downgrade.

March Actions:

In March, certain transactions were placed on review for possible downgrade in response to certain servicing practices that created credit concerns in the event of a servicer bankruptcy. Specifically, GMACM utilized a limited number of trust custodial accounts shared by multiple securitization trusts, rather than typical trust-specific accounts. Also, netting of excess custodial account collections against servicer advance obligations across trusts raised concerns in bankruptcy.

GMACM addressed these issues by establishing trust-specific custodial accounts and limiting netting to within individual trusts. In addition, GMACM also addressed adverse sub-servicer practices involving the use of ineligible trust custodial accounts and commingling of trust collections with collections on mortgages owned by Ally Financial Inc., GMACM's corporate parent. GMAC-RFC, as master servicer, established new accounts at highly rated financial institutions, that segregate trust and corporate collections.

However, the ratings of the 462 tranches totaling $4.5 billion remain on review because of the foreclosure process issues disclosed by Ally. Of these, some deals are also on watch for poor performance of the underlying collateral.

For all the deals in this action, GMACM acts as the primary servicer and GMAC-RFC as master servicer. RFC (rated C) wholly owns its subsidiaries GMACM and GMAC-RFC. Ally Financial Inc. (formerly GMAC, Inc) (rated B3) in turn owns RFC.

During the review period, Moody's will assess the extent of the increase to foreclosure and REO timelines, effectiveness of new procedures and any financial impact to the RMBS trusts. For the FHA transaction, in addition to the above information, Moody's will also seek to identify the affected mortgages in the pool and understand HUD's position on these mortgages.

Other methodologies and factors that Moody's may have considered in the process of rating this transaction are found in the Rating Methodologies sub-directory on Moody's website. In addition, Moody's publishes a weekly summary of structured finance credit, ratings and methodologies, available to all registered users of Moody's website, at www.moodys.com/SFQuickCheck.

A list of these actions including CUSIP identifiers may be found at:

Excel: http://v3.moodys.com/viewresearchdoc.aspx?docid=PBS_SF219903

San Francisco
Eric Fellows
VP - Senior Credit Officer
Structured Finance Group
Moody's Investors Service
JOURNALISTS: 212-553-0376
SUBSCRIBERS: 212-553-1653

New York
Debashish Chatterjee
Senior Vice President
Structured Finance Group
Moody's Investors Service
JOURNALISTS: 212-553-0376
SUBSCRIBERS: 212-553-1653

Moody's Investors Service
250 Greenwich Street
New York, NY 10007
USA

MOODY'S
INVESTORS SERVICE

© 2014 Moody's Corporation, Moody's Investors Service, Inc., Moody's Analytics, Inc. and/or their licensors and affiliates (collectively,

"MOODY'S"). All rights reserved.

CREDIT RATINGS ISSUED BY MOODY'S INVESTORS SERVICE, INC. ("MIS") AND ITS AFFILIATES ARE MOODY'S CURRENT OPINIONS OF THE RELATIVE FUTURE CREDIT RISK OF ENTITIES, CREDIT COMMITMENTS, OR DEBT OR DEBT-LIKE SECURITIES, AND CREDIT RATINGS AND RESEARCH PUBLICATIONS PUBLISHED BY MOODY'S ("MOODY'S PUBLICATION") MAY INCLUDE MOODY'S CURRENT OPINIONS OF THE RELATIVE FUTURE CREDIT RISK OF ENTITIES, CREDIT COMMITMENTS, OR DEBT OR DEBT-LIKE SECURITIES. MOODY'S DEFINES CREDIT RISK AS THE RISK THAT AN ENTITY MAY NOT MEET ITS CONTRACTUAL, FINANCIAL OBLIGATIONS AS THEY COME DUE AND ANY ESTIMATED FINANCIAL LOSS IN THE EVENT OF DEFAULT. CREDIT RATINGS DO NOT ADDRESS ANY OTHER RISK, INCLUDING BUT NOT LIMITED TO: LIQUIDITY RISK, MARKET VALUE RISK, OR PRICE VOLATILITY. CREDIT RATINGS AND MOODY'S OPINIONS INCLUDED IN MOODY'S PUBLICATIONS ARE NOT STATEMENTS OF CURRENT OR HISTORICAL FACT. MOODY'S PUBLICATIONS MAY ALSO INCLUDE QUANTITATIVE MODEL-BASED ESTIMATES OF CREDIT RISK AND RELATED OPINIONS OR COMMENTARY PUBLISHED BY MOODY'S ANALYTICS, INC. CREDIT RATINGS AND MOODY'S PUBLICATIONS DO NOT CONSTITUTE OR PROVIDE INVESTMENT OR FINANCIAL ADVICE, AND CREDIT RATINGS AND MOODY'S PUBLICATIONS ARE NOT AND DO NOT PROVIDE RECOMMENDATIONS TO PURCHASE, SELL, OR HOLD PARTICULAR SECURITIES. NEITHER CREDIT RATINGS NOR MOODY'S PUBLICATIONS COMMENT ON THE SUITABILITY OF AN INVESTMENT FOR ANY PARTICULAR INVESTOR. MOODY'S ISSUES ITS CREDIT RATINGS AND PUBLISHES MOODY'S PUBLICATIONS WITH THE EXPECTATION AND UNDERSTANDING THAT EACH INVESTOR WILL, WITH DUE CARE, MAKE ITS OWN STUDY AND EVALUATION OF EACH SECURITY THAT IS UNDER CONSIDERATION FOR PURCHASE, HOLDING, OR SALE.

MOODY'S CREDIT RATINGS AND MOODY'S PUBLICATIONS ARE NOT INTENDED FOR USE BY RETAIL INVESTORS AND IT WOULD BE RECKLESS FOR RETAIL INVESTORS TO CONSIDER MOODY'S CREDIT RATINGS OR MOODY'S PUBLICATIONS IN MAKING ANY INVESTMENT DECISION. IF IN DOUBT YOU SHOULD CONTACT YOUR FINANCIAL OR OTHER PROFESSIONAL ADVISER.

ALL INFORMATION CONTAINED HEREIN IS PROTECTED BY LAW, INCLUDING BUT NOT LIMITED TO, COPYRIGHT LAW, AND NONE OF SUCH INFORMATION MAY BE COPIED OR OTHERWISE REPRODUCED, REPACKAGED, FURTHER TRANSMITTED, TRANSFERRED, DISSEMINATED, REDISTRIBUTED OR RESOLD, OR STORED FOR SUBSEQUENT USE FOR ANY SUCH PURPOSE, IN WHOLE OR IN PART, IN ANY FORM OR MANNER OR BY ANY MEANS WHATSOEVER, BY ANY PERSON WITHOUT MOODY'S PRIOR WRITTEN CONSENT.

All information contained herein is obtained by MOODY'S from sources believed by it to be accurate and reliable. Because of the possibility of human or mechanical error as well as other factors, however, all information contained herein is provided "AS IS" without warranty of any kind. MOODY'S adopts all necessary measures so that the information it uses in assigning a credit rating is of sufficient quality and from sources MOODY'S considers to be reliable including, when appropriate, independent third-party sources. However, MOODY'S is not an auditor and cannot in every instance independently verify or validate information received in the rating process or in preparing the Moody's Publications.

To the extent permitted by law, MOODY'S and its directors, officers, employees, agents, representatives, licensors and suppliers disclaim liability to any person or entity for any indirect, special, consequential, or incidental losses or damages whatsoever arising from or in connection with the information contained herein or the use of or inability to use any such information, even if MOODY'S or any of its directors, officers, employees, agents, representatives, licensors or suppliers is advised in advance of the possibility of such losses or damages, including but not limited to: (a) any loss of present or prospective profits or (b) any loss or damage arising where the relevant financial instrument is not the subject of a particular credit rating assigned by MOODY'S.

To the extent permitted by law, MOODY'S and its directors, officers, employees, agents, representatives, licensors and suppliers disclaim liability for any direct or compensatory losses or damages caused to any person or entity, including but not limited to by any negligence (but excluding fraud, willful misconduct or any other type of liability that, for the avoidance of doubt, by law cannot be excluded) on the part of, or any contingency within or beyond the control of, MOODY'S or any of its directors, officers, employees, agents, representatives, licensors or suppliers, arising from or in connection with the information contained herein or the use of or inability to use any such information.

NO WARRANTY, EXPRESS OR IMPLIED, AS TO THE ACCURACY, TIMELINESS, COMPLETENESS, MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OF ANY SUCH RATING OR OTHER OPINION OR INFORMATION IS GIVEN OR MADE BY MOODY'S IN ANY FORM OR MANNER WHATSOEVER.

MIS, a wholly-owned credit rating agency subsidiary of Moody's Corporation ("MCO"), hereby discloses that most issuers of debt securities (including corporate and municipal bonds, debentures, notes and commercial paper) and preferred stock rated by MIS have, prior to assignment of any rating, agreed to pay to MIS for appraisal and rating services rendered by it fees ranging from $1,500 to approximately $2,500,000. MCO and MIS also maintain policies and procedures to address the independence of MIS's ratings and rating processes. Information regarding certain affiliations that may exist between directors of MCO and rated entities, and between entities who hold ratings from MIS and have also publicly reported to the SEC an ownership interest in MCO of more than 5%, is posted annually at ................... under the heading "Shareholder Relations — Corporate Governance — Director and Shareholder Affiliation Policy."

For Australia only: Any publication into Australia of this document is pursuant to the Australian Financial Services License of MOODY'S affiliate, Moody's Investors Service Pty Limited ABN 61 003 399 657 AFSL 336969 and/or Moody's Analytics Australia Pty Ltd ABN 94 105 136 972 AFSL 383569 (as applicable). This document is intended to be provided only to "wholesale clients" within the meaning of section 761G of the Corporations Act 2001. By continuing to access this document from within Australia, you represent to MOODY'S that you are, or are accessing the document as a representative of, a "wholesale client" and that neither you nor the entity you represent will directly or indirectly disseminate this document or its contents to "retail clients" within the meaning of section 761G of the Corporations Act 2001. MOODY'S credit rating is an opinion as to the creditworthiness of a debt obligation of the issuer, not on the equity securities of the issuer or any form of security that is available to retail clients. It would be dangerous for "retail clients" to make any investment decision based on MOODY'S credit rating. If in doubt you should contact your financial or other professional adviser.

Case 12-12020 (MG)          Page _33_ of _77_                    **Exhibit 3**

# EXHIBIT 3



A GE Money Company

WMCmortgage

WMC Mortgage Corp., 3100 Thornton Avenue, Burbank, California 91504
800 542 6508 • www.wmcmortgage.com

*for (818) 615 1071*

*7.6%*

*1 March phone call w/ Nicole follow up on closing*

February 24, 2006

KAREN ROZIER
7957 DAHLIA CIRCLE
BUENA PARK, CA 90620

Dear KAREN ROZIER,

      In an effort to maintain the highest level of customer service, WMC Mortgage
Corp. routinely conducts self-audits of our originated loans. A review of your file
indicated that the payment stream and/or other amounts disclosed (such as the finance
charge and/or APR) on your final Truth-In-Lending Statement were based on an outdated
index that was different than the one that should have been used. Enclosed with this
letter is a new Final Truth-in-Lending Disclosure Statement, which reflects the correct
payment stream and/or other disclosed amounts based on the index that should have been
used.

      Also enclosed are two (2) copies, for each person who is entitled to a copy, of the
Notice of the Right to Cancel. Because your loan includes a three business day right to
cancel period, and WMC is sending you a revised TIL Disclosure Statement, you have
three business days to cancel this loan if you choose to. The instructions on the Notice
will explain how the process works.

      The monthly payments that you are making now, and the payments you will make
during the remainder of the fixed rate period, are not affected in any way by this change.
This change does not affect the terms of your loan, as outlined in the note and your other
loan documents.

      If you have any questions related to this correspondence, please do not hesitate to
contact WMC, at (866) 642-2962.

Sincerely,        *EXHIBIT*        *Libor was used shall have been used*

WMC Mortgage Corp.

*to calculate payments*

*rpoothled @ WMCdirect.com*

*Freddy manager Libor*

*very file*

*53*

*EXHIBIT 14*

**Case 12-12020 (MG)**   Page $\underline{35}$ of $\underline{77}$   **Exhibit 4**

# EXHIBIT 4

**FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT**

Names of Borrower(s): KAREN N ROZIER

*12/23/2005 *
CLV #: 11432468
CFL# 603 5824
Loan Number: 11432468

Borrower Mailing: 7957 DAHLIA CIRCLE, BUENA PARK, CA 90620
Property Location: 7957 DAHLIA CIRCLE, BUENA PARK, CA 90620
Lender: WMC MORTGAGE CORP., 3100 THORNTON AVENUE, BURBANK, CA 91504     *UPDATED MAY 31, 2006

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. |
| 9.902   % | $1,392,567.70 | $576,326.66 | $1,968,894.36 |

You have the right to receive at this time an Itemization of the Amount Financed.
[ ] I do not want an itemization.
[X] I want an itemization.

**Payment Schedule**

| Number of Payments | Monthly Payments of | Payments are Due Monthly beginning: | Number of Payments | Monthly Payments of | Payments are Due Monthly beginning: |
|---|---|---|---|---|---|
| 36 | 3,312.00 | February 1, 2006 | | | |
| 6 | 4,752.00 | February 1, 2009 | | | |
| 6 | 5,232.00 | August 1, 2009 | | | |
| 12 | 5,400.00 | February 1, 2010 | | | |
| 299 | 5,749.86 | February 1, 2011 | | | |
| 1 | 5,750.22 | January 1, 2036 | | | |

NOTICE: DURING THE FIRST    Sixty         ( 60 ) MONTHS INTEREST ONLY PAYMENTS WILL BE
REQUIRED TO BE MADE.  THIS MEANS THAT THE REGULAR MONTHLY PAYMENT WILL NOT REDUCE THE
AMOUNT OWED DURING THE FIRST              Sixty         ( 60 ) MONTHS OF YOUR LOAN.

YOUR INTEREST RATE MAY CHANGE DURING THE 'INTEREST ONLY PERIOD' EVERY  6  MONTHS BEGINNING AFTER THE
FIRST CHANGE DATE AS DESCRIBED IN SECTION 4 OF THE NOTE.

Assuming the index remains unchanged for the life of the loan. The index used to calculate the APR is  4.990  %.

[ ] This loan has a demand feature
[X] Variable Rate: Disclosures about the variable rate feature have been provided to you earlier.
[ ] Variable Rate Not Applicable
Security:  [ ] You are giving a security interest in the property being purchased
           [X] Other (describe): 7957 DAHLIA CIRCLE, BUENA PARK, CA 90620
Late Charge: If payment is  15   days late, the penalty charge is   5.000     % of the payment.
             The minimum late charge is    N/A          . The maximum late charge is  N/A

Filing Fees/Recording Fees:    $

Prepayment: If you pay off this loan early, you [X] may  [ ] will not  have to pay a penalty. And you [ ] may  [X] will not
            be entitled to a refund of part of the finance charge.
Assumption: Someone buying your home
            [X] will not be allowed to assume the remainder of this mortgage on the original terms.
            [ ] may, subject to conditions, be allowed to assume the remainder of this mortgage on the original terms.
Required Deposit:  The annual percentage rate does not take into account your required deposit.
Property Insurance is required to obtain credit and may be obtained from anyone you want who is acceptable to this Lender.
[X] Property Insurance is not available through Lender.
[ ] If you obtain Property Insurance from _____, you will pay $_____ for a term of _____
CREDIT LIFE AND DISABILITY INSURANCE are not required to obtain credit and will not be provided at the time of closing.
You may be offered these plans after closing, but they are not in effect at this time. No such insurance will be in force until you have
completed an application, the insurance company has issued the policy, and the effective date of that policy has been provided.

See your loan documents for any additional information about nonpayment, default, any required repayment in full before the
scheduled date, and prepayment refunds and penalties.

'e' means estimate

I / we acknowledge receipt of a completed copy of this disclosure. SIGNED AND DATED:

_Karen M Rozier_    1 JUNE 06
- Borrower -   KAREN N ROZIER - DATE -

DOCUMENT
WMCTIL01.VTX 06/15/2005

WMC MORTGAGE CORP.
3100 THORNTON AVENUE, BUILDING NK, CA 91504

DATE:  December 23, 2005 *                                        Loan #: 11432468
BORROWER(S): KAREN M ROZIER                                       Serv #: 11432468

* UPDATED MAY 31, 2006

PROPERTY ADDRESS:  7957 DAHLIA CIRCLE, BUENA PARK, CA 90620

ITEMIZATION OF THE AMOUNT FINANCED OF $     576,326.66

_____  Amount given to you directly
_____  Amount paid on or credited to your account

| Amount Paid to Others on Your Behalf | Amount | Amount Included in Finance Charge and APR |
|---|---|---|
| Origination Fee to        WMC MORTGAGE CORP. | $ | |
| Discount Fee to        WMC MORTGAGE CORP. | $ | |
| Appraisal Fee to        (United By Lending) | $ | |
| Credit Report Fee to:    (United By Lending) | $ | |
| Lender's Inspection Fee to:    WMC MORTGAGE CORP. | $ | |
| Mortgage Ins. Application Fee to: | $ | |
| Assumption Fee to:    WMC MORTGAGE CORP. | $ | |
| Buydown Fee to:    Buydown Fee | $ | |
| Interest:  From:  January 4, 2006    To:  January 1, 2006 | $ -326.66    (S) | * |
| PMI/MIP Fee: | $ | |
| Mortgage Insurance Fee to: | $ | |
| Hazard Insurance Premium | $ | |
| VA Funding Fee: | $ | |
| Settlement Fee to:        Settlement Fee | $ | |
| Abstract or Title Search to: | $ | |
| Title Examination Fee to: | $ | |
| Title Insurance Binder to: | $ | |
| Document Preparation Fee to: | $ | |
| Notary Fee to: | $ | |
| Attorney's Fee to: | $ | |
| Title Insurance Fee to: | $ | |
| Lender Coverage to:      Lender Coverage | $ | |
| Owner Coverage to:      Owner Coverage | $ | |
| Recording Fees to: | $ | |
| City/County/Stamps to: | $ | |
| State Tax/Stamps to: | $ | |
| Survey Fee to: | $ | |
| Pest Inspection Fee to: | $ | |
| Other Fee to: Origination fee to Broker (United By Lending) | $ | |
| Other Fee to: RHA CORP-GOODS & SERVICES 04-2% POC by LNDR $8,640.00 (Unite | $ | |
| Other Fee to: *Tax Contract Fee to Fidelity National | $ | |
| Other Fee to: *Processing Fee to Broker (United By Lending) | $ | |
| Other Fee to: *Document Preparation Fee to WMC | $ | |
| Other Fee to: *Flood Determination to First American Flood Data SS | $ | |
| Other Fee to: *Administration Fee to WMC | $ | |
| Other Fee to: Application Fee to Broker (United By Lending) | $ | |
| Other Fee to: BROKER FEE | $ | |
| Other Fee to: | $ | |
| Other Fee to: Misc. Insurance | $ | |
| Other Fee to: Courier Fee to Settlement Agent | $ | |
| Other Fee to: | $ | |
| Other Fee to: | $ | |
| Other Fee to: | $ | |
| Other Fee to: | $ | |
| Other Fee to: | $ | |
| Other Fee to: | $ | |
| Other Fee to: | $ | |
| Total Prepaid Finance Charges: | | $ -326.66 |

_Karen M Rozier_  1 JUNE 06
- Borrower - KAREN M ROZIER - Date -

DOC12PY
DOC12PY.VTX  03/30/2005

Identifier [redacted]

## NOTICE OF RIGHT TO CANCEL

Servicing #: [redacted]

LENDER: PNC MORTGAGE CORP.

3100 THORNTON AVENUE BURBANK, CA 91504
BORROWERS: KAREN M ROSIER

DATE:December 23, 2005 #
LOAN NO: [redacted]
TYPE: Conventional

# UPDATED MAY 31, 2006

ADDRESS:    7937 DAHLIA CIRCLE
CITY/STATE/ZIP: BUENA PARK, CA 90620
PROPERTY:    7937 DAHLIA CIRCLE, BUENA PARK, CA 90620

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs LAST:

(1) The date of the transaction, which is _____ DEC/01/2005 _____ ; or
(2) The date you receive your Truth in Lending disclosure; or
(3) The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given us to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

### HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing at:
3100 Thornton Avenue (Call Center)
Burbank, CA 91504

You may use any written statement that is signed and dated by you and states your intention to cancel and/or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of _June 5, 2006_ (or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

### I WISH TO CANCEL

_____    _____
CONSUMER'S SIGNATURE                         DATE

Each of the borrowers in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective as to all borrowers.

I acknowledge receipt of two copies of NOTICE of RIGHT to CANCEL.

_Karen M Rosier_    _1 June 06_
- Borrower -    KAREN M ROSIER - DATE

**Case 12-12020 (MG)**        **Page _39_ of _77_**            **Exhibit 5**

# EXHIBIT 5

```
GMAC Mortgage, LLC                                      PAGE      1
PO Box 780                                              DATE 01/20/11


Waterloo              IA 50704-0780
                                         HISTORY FOR ACCOUNT  ███ 1144


--------- MAIL -------------------- --------- PROPERTY ----------------


KAREN ROZIER

7957 DAHLIA CIR                      7957 DAHLIA CIR

BUENA PARK         CA 90620-0000 BUENA PARK          CA 90620-0000


------ DATES ------   ---- CURRENT BALANCES -----    ------- UNCOLLECTED -------
PAID TO    11/01/07   PRINCIPAL         574669.63    LATE CHARGES     -2358.06
NEXT DUE   12/01/07   ESCROW           -27264.74     OPTIONAL INS         0.00
LAST PMT   11/23/07   UNAPPLIED FUND         0.00    INTEREST             0.00
AUDIT DT   10/03/06   UNAPPLIED CODES                FEES             -3795.00
                      BUYDOWN  FUND          0.00    ------ YEAR TO DATE -------
   LAST ACTIVITY      BUYDOWN  CODE                  INTEREST             0.00
     12/31/10                                        TAXES                0.00
--------------------------------------------------------------------------------

POST    TRN  DUE       TRANSACTION      PRINCIPAL      INTEREST       ESCROW
DATE    CDE  DATE        AMOUNT           PAID           PAID          PAID
------  ---  -----  ---------------   -------------  ------------- --------------
012908  FB   110107          11.25  11 PROP INSPECTION FEE
021908  FB   110107          85.00 164 CORP ADV 3 DRM
022808  UFU  110107   UNAPPLIED FUNDS (1)         3304.35  BALANCE      3304.35
022808  SRA  110107        3304.35          .00           .00            .00
022808  FB   110107          11.25  11 PROP INSPECTION FEE
022908  UFU  110107   UNAPPLIED FUNDS (1)        -3304.35  BALANCE         0.00
022908  SR0  110107       -3304.35          .00           .00            .00
031808  ITR  110107   OLD INV 40404     25 P-BAL    574669.63 INT          .00
                      NEW INV 42369      1  PERCENT OWNED    .0000 ACTION CD 000
032108  FB   110107          11.25  11 PROP INSPECTION FEE
042308  UI   110107            .00          .00           .00            .00
                      OPT PREMIUMS                 .00  LATE CHARGE PYMT  -826.05*
042308  AA   110107            .00          .00           .00            .00
                      OPT PREMIUMS                 .00  LATE CHARGE PYMT  -826.05*
042308  FB   110107          11.25  11 PROP INSPECTION FEE
050508  UI   110107            .00          .00           .00            .00
                      OPT PREMIUMS                 .00  LATE CHARGE PYMT   826.05*
050508  AA   110107            .00          .00           .00            .00
                      OPT PREMIUMS                 .00  LATE CHARGE PYMT   826.05*
050508  AA   110107            .00          .00           .00            .00
050508  AA   110107            .00          .00           .00            .00
052208  FB   110107          11.25  11 PROP INSPECTION FEE
052308  ITR  110107   OLD INV 42369      1 P-BAL    574669.63 INT          .00
                      NEW INV 96360      1  PERCENT OWNED    .0000 ACTION CD 000
061908  UI   110107            .00          .00           .00            .00
                      OPT PREMIUMS                 .00  LATE CHARGE PYMT -1156.47*
061908  AA   110107            .00          .00           .00            .00
                      OPT PREMIUMS                 .00  LATE CHARGE PYMT -1156.47*

   INQ 1379
```

*EXHIBIT 23*

**Case 12-12020 (MG)**          Page 4/ of 77          **Exhibit 6**

# EXHIBIT 6

Identifier:0810021144          Doc Type:LSHIT

# GMAC Mortgage

3461 Hammond Ave
P.O. Box 780
Waterloo, IA 50704-0780

04/29/08

## FORECLOSURE REPAYMENT AGREEMENT

KAREN ROZIER

7957 DAHLIA CIR
BUENA PARK          CA 90620-0000

RE:    Account Number       0810021144
       Property Address     7957 DAHLIA CIR
                            BUENA PARK          CA 90620-0000

KAREN ROZIER ("Customer") and GMAC Mortgage, LLC ("Lender"), in consideration for
the mutual covenants set forth in this Foreclosure Repayment Agreement (the "Agreement"),
hereby agree as follows:

1.  There is an outstanding debt to the Lender pursuant to a note and mortgage or deed of trust
    or equivalent security instrument (the "Mortgage") executed on 12/23/05, in the original
    principal amount of $576000.00.

2.  The account is presently in default for non-payment to Lender of the 12/01/07 installment
    and all subsequent monthly payments due on the Mortgage for principal, interest,
    escrows and charges. *GM accepts responsibility for ignoring
    my phone calls, letters and rejecting my payments.*

3.  The amount necessary to cure the default is $26434.80 plus such additional amounts that are
    presently due under the terms of the loan documents as of 04/29/08, and will increase until
    the default in the account is brought current. *I do not agree to pay the
    trust fees because I believe GM acted in bad
    faith when they prematurely foreclosed on house.*

4.  Lender has instituted foreclosure proceedings against the property securing the Mortgage
    indebtedness, which proceedings will continue until the default(s) described herein is/are
    brought current under the terms of the Mortgage, or otherwise cured as provided for in this
    Agreement.

5.  Notwithstanding the foregoing, Lender agrees to suspend but not terminate foreclosure
    activity on the default account, provided we receive the executed Agreement and we
    receive the initial installment in the amount of $6608.26 no later than MONTHLY.
    This executed Agreement can be mailed or faxed to us at:

Identifier:0810021144          Doc Type:LSMIT

04/29/08
Account Number 0810021144
Page Two

GMAC Mortgage, LLC
Attention: Default Payment Processor
3451 Hammond Avenue
Waterloo, IA  50702
Fax: 866-340-5043

6.  Pursuant to your request you agree to pay the remainder of the default, $, as indicated in the
    Payment Schedule enclosed and made a part hereof by reference.  Customer understands
    that payments due under the Payment Schedule may include amounts due for real estate
    taxes and insurance, and the Payment Schedule amounts may, in such event, have to be
    increased, at the sole option of the Lender, if the items for such escrow purposes should
    increase during the duration of the Agreement.

7.  All payments under this Agreement, including the regular monthly payments, shall be made
    in certified funds or cashier's check, shall include the account number on the Customer's
    check or on a written attachment to the check, and shall be sent to the following address:

GMAC Mortgage, LLC
Attention:  Default Payment Processor
3451 Hammond Avenue
Waterloo, IA  50702

Additional methods of remitting payments under this agreement are:
  - Money Gram using a Receive Code of 04/25/08
  - Western Union using a Code City and State of

If payment is tendered in any other form, Lender may return the payment and invoke any
remedies available under the loan documents and this Agreement.

8.  In the event we do not receive timely payment called for under this Agreement, Lender
    may, without further notice to Customer, undertake or continue collection or foreclosure
    activities.  In such event, any payments tendered under this Agreement shall be applied to
    the account in the manner specified in the Mortgage, and there will be no right to a refund
    of the tendered funds.  In the event Lender chooses to accept any payment not in the full
    amount called for under this Agreement, such acceptance shall not be deemed a waiver of
    Lender's right to declare a default under this Agreement.  Upon any default in meeting the
    terms of this Agreement, any such payments received under the terms of this Agreement
    shall be applied first against the default in the account, with the excess, if any, then applied
    according to the terms of the Mortgage.  The parties expressly understand and agree time
    shall be of the essence as to the obligation under this Agreement.

Identifier:0810021144        Doc Type:LSMIT

04/29/08
Account Number 0810021144
Page Three

9.  Customer understands and agrees that all other provisions, covenants and agreements set
    forth in the Mortgage shall remain in force and effect during the duration of this Agreement
    and thereafter, and this Agreement shall not constitute a modification or extension of the
    Mortgage.

10. If a notice of a new or subsequent bankruptcy is received during the duration of this
    Agreement, the Agreement will automatically be voided.

11. Acceptance of any payment hereunder shall not constitute a cure nor be deemed a waiver of
    the existing default, and in no manner shall such acceptance prejudice any rights of Lender
    to proceed with the Trustee Sale Action noticed in the Notice of Default, and shall not
    constitute a violation of California Code of Civil Procedure Section 726.580(a), 580(d) (the
    One Form of Action Rule), and shall not invalidate the Notice of Default. ~~Customer~~
    ~~expressly relinquishes and waives any rights, claims and defenses Customer may have under~~
    ~~any of the Code of Civil Procedure Sections or under the Loan with regard to any whole or~~
    ~~partial payments, whether current, past or future.~~  — *No, I don't.*

12. If any additional amounts are added to the loan to be collected that have not been addressed
    in this agreement, those amounts will need to be paid at the conclusion of this agreement, *provided*
    *customer accepts these amounts are legitimate. I*
    *will not give 'em a pass for hiring Latina Dawn as a*
    *bad employee.*

Notice:  This is an attempt to collect a debt, and any information obtained will be used for
that purpose.  If your debt has been discharged in bankruptcy, our rights are being
exercised against the collateral for the above-referenced account, not as a personal
liability.

If you have any additional questions, please contact us at 800-850-4622, extension .

Loss Mitigation Department
Loan Servicing

Enclosure

Identifier:0810021144          Doc Type:LSMIT

04/29/08
Account Number 0810021144
Page Four

*****************CERTIFIED FUNDS ONLY***************************

NOTE:  There is no grace period during this Agreement. Pursuant to your request and in order
to cure the default on this account, all payments must be received on or before the due date.

*(handwritten)* which should not be 4/29 since this was not sent until 4/29!

RECEIVED AND AGREED:

_Karen M Rozier_ (Seal)          **4/29/2008**
KAREN ROZIER                                Date
Customer

_____          _____
Customer                                    Date

*(handwritten)* 4 pages returned w/comments. GM acknowledges they also sent this late.

Upon receipt of the signed agreement, we as the Servicer will also execute to indicate our
concurrence with this agreement.

_Sheri Huseman 4/30/08_
Servicer

5:13

**SIGN AND RETURN THIS PAGE ONLY**

*****************FAX TO 866-340-5843***********************

*(handwritten)* I do not accept your terms NO 4 pages which relieves GM of all culpability in this matter! You screwed me first while my collateral terms Son lay dying ignored my phone calls letters and messages and now want to deny it happened! N.O.

US000047

Case 12-12020 (MG)                Page 46 of 77                Exhibit 7

# EXHIBIT 7

CM-010

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** (Name, State Bar number, and address): <br> KAREN M. ROZIER <br> TELEPHONE NO.:          FAX NO.: <br> ATTORNEY FOR (Name): <br> SUPERIOR COURT OF CALIFORNIA, COUNTY OF Orange <br> STREET ADDRESS: 700 Civic Center Drive West <br> MAILING ADDRESS: <br> CITY AND ZIP CODE: Santa Ana, California 92701 <br> BRANCH NAME: Central Justice Center <br> <br> Clerk of the Superior Court <br> Civil Complex Center <br> 751 W. Santa Ana Blvd. <br> Santa Ana, Ca 92701 | **FOR COURT USE ONLY** <br> **FILED** <br> SUPERIOR COURT OF CALIFORNIA <br> COUNTY OF ORANGE <br> CENTRAL JUSTICE CENTER <br> **OCT 28 2008** <br> ALAN CARLSON, Clerk of the Court <br> BY:  R. MAYALL  DEPUTY |

| CASE NAME: | |
|---|---|

| | | CASE NUMBER: |
|---|---|---|
| **CIVIL CASE COVER SHEET** <br> ☒ Unlimited (Amount demanded exceeds $25,000) <br> ☐ Limited (Amount demanded is $25,000 or less) | **Complex Case Designation** <br> ☐ Counter   ☐ Joinder <br> Filed with first appearance by defendant <br> (Cal. Rules of Court, rule 3.402) | 30-2008 **00217056** <br> JUDGE: JUDGE DAVID C. VELASQUEZ <br> DEPT: DEPT. CX101 |

*Items 1–6 below must be completed (see instructions on page 2).*

**1. Check one box below for the case type that best describes this case:**

| Auto Tort | Contract | Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| ☐ Auto (22) <br> ☐ Uninsured motorist (46) | ☐ Breach of contract/warranty (06) <br> ☐ Rule 3.740 collections (09) <br> ☐ Other collections (09) <br> ☐ Insurance coverage (18) <br> ☐ Other contract (37) | ☐ Antitrust/Trade regulation (03) <br> ☐ Construction defect (10) <br> ☐ Mass tort (40) <br> ☐ Securities litigation (28) <br> ☐ Environmental/Toxic tort (30) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** <br> ☐ Asbestos (04) <br> ☐ Product liability (24) <br> ☐ Medical malpractice (45) <br> ☐ Other PI/PD/WD (23) | **Real Property** <br> ☐ Eminent domain/Inverse condemnation (14) <br> ☐ Wrongful eviction (33) <br> ☐ Other real property (26) | ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| **Non-PI/PD/WD (Other) Tort** <br> ☐ Business tort/unfair business practice (07) <br> ☐ Civil rights (08) <br> ☐ Defamation (13) <br> ☐ Fraud (16) <br> ☐ Intellectual property (19) <br> ☐ Professional negligence (25) <br> ☐ Other non-PI/PD/WD tort (35) | **Unlawful Detainer** <br> ☐ Commercial (31) <br> ☐ Residential (32) <br> ☐ Drugs (38) <br> **Judicial Review** <br> ☐ Asset forfeiture (05) <br> ☐ Petition re: arbitration award (11) <br> ☐ Writ of mandate (02) <br> ☒ Other judicial review (39) | **Enforcement of Judgment** <br> ☐ Enforcement of judgment (20) <br> **Miscellaneous Civil Complaint** <br> ☐ RICO (27) <br> ☐ Other complaint (not specified above) (42) <br> **Miscellaneous Civil Petition** <br> ☐ Partnership and corporate governance (21) <br> ☐ Other petition (not specified above) (43) |
| **Employment** <br> ☐ Wrongful termination (36) <br> ☐ Other employment (15) | | |

**2.** This case ☒ is  ☐ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:

a. ☐ Large number of separately represented parties
b. ☒ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
c. ☒ Substantial amount of documentary evidence
d. ☒ Large number of witnesses
e. ☒ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
f. ☐ Substantial postjudgment judicial supervision

**3.** Remedies sought (check all that apply): a. ☐ monetary  b. ☒ nonmonetary; declaratory or injunctive relief  c. ☒ punitive

**4.** Number of causes of action (specify):

**5.** This case ☐ is  ☒ is not  a class action suit.

**6.** If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: 28 OCTOBER 2008

KAREN M. ROZIER
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use <br> Judicial Council of California <br> CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; <br> Cal. Standards of Judicial Administration, std. 3.10 <br> www.courtinfo.ca.gov

American LegalNet, Inc. <br> www.FormsWorkflow.com

12-12020-mg    Doc 7620-8    Filed 10/03/14    Entered 10/07/14 09:30:48    Exhibit
Exhibit C continued    Pg 24 of 26
Pg 2 of 47
Case 12020-mg-09bb-D747-RNB Filed 08/08/14    Filed 08/09/08/14    Pg 57 of 50    Exhibit 4 #:5

Karen M. Rozier
7957 Dahlia Circle
Buena Park, CA 90620
(714) 522-4188

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

OCT 28 2008

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
~~Central Division 700 Civic Center Dr. West Santa Ana, CA 92701-4043~~    ALAN CARLSON, Clerk of the Court

BY: _____ R. VAVRA _____ ,DEPUTY

| | | |
|---|---|---|
| In re    Karen M. Rozier, | ) | Case No. |
| Plaintiff, Pro se | ) | |
| | ) | **30-2008** |
| Vs. | ) | |
| | ) | **0 0 2 1 7 0 5 6** |
| GMAC Mortgage, LLC, and Mortgage | ) | |
| Electronic Registration System, | ) | |
| Defendants | ) | **JUDGE DAVID C. VELASQUEZ** |
| | | **DEPT. CX101** |

### PETITION FOR JUDICIAL REVIEW

I, Karen M. Rozier, petition the court for a judicial hearing regarding the legality of the proposed seizure and sale of my real and personal property as described in the Exhibit (A) Notice of Default.

I declare that I am the rightful owner of the property located at 7957 Dahlia Circle Buena Park, California as described by Exhibit (B).

Submitted by:

_Karen M. Rozier_

Karen M. Rozier, Pro se

Dated: 28 October 2008

**THIS CASE IS SUBJECT TO
MANDATORY ELECTRONIC FILING
PURSUANT TO RULE 308 OF THE LOCAL RULES
OF THE SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**

**Case 12-12020 (MG)**          **Page 49 of 77**          **Exhibit 8**

# EXHIBIT 8

Recorded in Official Records, Orange County

Tom Daly, Clerk-Recorder

|||||||||||||||||||||||||||||||||||||||   9.00

**2011000126176** 01:46pm 03/09/11

B3 401 A32 1

0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

Requested and Prepared by:
ETS Services, LLC

When Recorded Mail To:
ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120

Loan No.: ████1144
TS No: GM-278944-C

110113731

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned corporation hereby grants, assigns, and transfers to:

Bank of America, National Association as successor by merger to LaSalle Bank National Association as Trustee RAMP 2007RP1

all beneficial interest under that certain Deed of Trust dated: 12/23/2005 executed by *KAREN M. ROZIER*, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY, as Trustor(s), to WESTWOOD ASSOCIATES, A CALIFORNIA CORPORATION, as Trustee, and recorded as Instrument No. 2006000006922, on 1/4/2006, in Book XX, Page XX of Official Records, in the office of the County Recorder of Orange County, California together with the Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust.

DATE: 3·3-2·4

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

_Maribel Telles   Assistant Secretary_

State of Texas }
County of Dallas } SS.

On 3/3/11 before me, Ginger Harrison Notary Public, personally appeared Maribel Telles who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of Texas that the foregoing paragraph is true and correct.

**WITNESS** my hand and official seal.

Signature _Ginger Harrison_ (Seal)

Ginger Leeann Harrison
Notary Public
State of Texas
Comm. Exp. 08-04-13