## Exhibit 2

**Priore Declaration**

ny-1156370

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------

| | ) | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

-------------------------------------------------------------------

**DECLARATION OF KATHY PRIORE**
**IN SUPPORT OF THE RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO**
**CLAIM NO. 5800 FILED BY WEKESA MADZIMOYO**

I, Kathy Priore, hereby declare as follows:

1.      I serve as Associate Counsel for the ResCap Liquidating Trust (the
"Liquidating Trust"), established pursuant to the terms of the *Second Amended Joint Chapter 11
Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured
Creditors* [Docket No. 6030] confirmed in the above-captioned Chapter 11 Cases.  During the
Chapter 11 Cases, I served as Associate Counsel in the legal department of Residential Capital,
LLC ("ResCap"), a limited liability company organized under the laws of the state of Delaware
and the parent of the other debtors in the above-captioned Chapter 11 Cases (collectively, the
"Debtors").  I joined ResCap on May 1, 2008 as in-house litigation counsel.  Prior to my in-
house litigation counsel position, I held various roles within the legal department at ResCap.

2.      In my role as Associate Counsel at ResCap, I was responsible for the
management of litigation, including, among others, residential mortgage-related litigation.  In
connection with ResCap's chapter 11 filing, I also assisted the Debtors and their professional
advisors in connection with the administration of the chapter 11 cases, including the borrower
litigation matters pending before this Court.  In my current position as Associate Counsel to the

Liquidating Trust, among my other duties, I continue to assist the Liquidating Trust and the

Borrower Claims Trust (the "Borrower Trust") in connection with the claims reconciliation

process.[1]  I am authorized to submit this declaration (the "Declaration") in support of the *Rescap*

*Borrower Claims Trust's Objection to Claim No. 5800 Filed by Wekesa Madzimoyo* (the

"Objection").[2]

3.    Except as otherwise indicated, all facts set forth in this Declaration are

based upon my personal knowledge of the Debtors' operations, information learned from my

review of relevant documents and information I have received through my discussions with other

former members of the Debtors' management or other former employees of the Debtors, the

Liquidating Trust, and the Borrower Trust's professionals and consultants.  If I were called upon

to testify, I could and would testify competently to the facts set forth in the Objection on that

basis.

4.    In my current and former capacities as Associate Counsel to the

Liquidating Trust and ResCap, I am intimately familiar with the Debtors' claims reconciliation

process.  Except as otherwise indicated, all statements in this Declaration are based upon my

familiarity with the Debtors' Books and Records (the "Books and Records"), as well as the

Debtors' schedules of assets and liabilities and statements of financial affairs filed in these

Chapter 11 Cases (collectively, the "Schedules"), my review and reconciliation of claims, and/or

my review of relevant documents.  I or other Liquidating Trust personnel have reviewed and

analyzed the proof of claim form and supporting documentation filed by the Claimant.  Since the

Plan went effective and the Borrower Trust was established, I, along with other members of the

---

[1]    The ResCap Liquidating Trust and the ResCap Borrower Claims Trust are parties to an Access and Cooperation
Agreement, dated as December 17, 2013, which, among other things, provides the Borrower Trust with access to the
books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in
performing its obligations.
[2]    Capitalized terms not defined herein shall have the meanings ascribed to them in the Objection.

Liquidating Trust have consulted with the Borrower Trust to continue the claims reconciliation

process, analyze claims, and determine the appropriate treatment of the same.  In connection

with such review and analysis, where applicable, I or other Liquidating Trust personnel, together

with professional advisors, have reviewed (i) information supplied or verified by former

personnel in departments within the Debtors' various business units, (ii) the Books and Records,

(iii) the Schedules, (iv) other filed proofs of claim, and/or (vi) the official claims register

maintained in the Debtors' Chapter 11 Cases.

5.       The Debtors have taken steps in these Chapter 11 Cases to afford

Borrowers who have filed proofs of claim additional protections, as set forth in the Borrower

Claim Procedures approved by the Procedures Order.  A Request Letter was sent to the Claimant

and the Borrower Trust received a response (the "Diligence Response") on July 19, 2013, a copy

of which is attached hereto as Exhibit A.

6.       On March 23, 1999, non-Debtor FT Mortgage Companies d/b/a/ Equibanc

Mortgage Corporation ("Equibanc") originated a loan to the Claimant in the amount of

$140,600.00 (the "Loan"), evidenced by a note (the "Note") and secured by a security deed (the

"Security Deed") on property located at 852 Brafferton Place, Stone Mountain, GA 30083 (the

"Property"). Copies of the Note and the Security Deed are attached hereto as Exhibit B and

Exhibit C, respectively. Debtor Residential Funding Corp. purchased the Loan from Equibanc

and transferred its interest when the loan was securitized on or about June 1, 1999 wherein First

National Bank of Chicago was appointed as Trustee.  Equibanc assigned the Security Deed to

First National Bank of Chicago and the assignment was recorded on February 5, 2001. See 1999

Assignment, attached hereto as Exhibit D.  The loan was pulled out of the securitization in late

2005 and was put into another securitization on or about April 1, 2006 where JP Morgan Chase

Bank, NA was appointed as trustee.   The Bank of New York Mellon Trust Company, N.A.

("Bank of New York") was subsequently appointed as successor trustee and is the current holder

of the Security Deed, as documented in an assignment executed on January 18th, 2011 (the "2011

Assignment").   See 2011 Assignment, attached hereto as Exhibit E.

       7.     Debtor Homecomings Financial, LLC ("Homecomings") serviced the

Loan from July 6, 1999 until servicing of the Loan was transferred to Debtor GMAC Mortgage,

LLC ("GMACM") on July 1, 2009.  GMACM transferred servicing to Ocwen Loan Servicing,

LLC ("Ocwen") on February 16, 2013.

       8.     The Claimant has not made a mortgage payment since March 2009, and

the loan is currently past due for April 1, 2009.  GMACM referred the account to foreclosure on

or about June 23, 2009.


       Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct.

Dated:  October 16, 2014


                        /s/  Kathy Priore
                        Kathy Priore
                        Associate Counsel for ResCap Liquidating
                        Trust

## **Exhibit A to Priore Declaration**

# RESCAP                                    MORRISON | FOERSTER

## Claim Information

| Claim Number | 5800 |
|---|---|

| Basis of Claim | |
|---|---|
| **Explanation that states the legal and factual reasons why you believe you are owed money or are entitled to other relief from one of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases) and, you must provide copies of any and all documentation that you believe supports the basis for your claim.** | The basis for and amount of the claim contained in the proof of Claim form are the same as the claim that I have asserted in my lawsuit against the debtors.<br><br>Each count in the law suit ( Wrongful Foreclosure, Bad Faith, Fraud, and Quiet Title (broken chain))is accompanied by a damages amount (compensatory and punitive). I assume that you do not want me to explain the basis here any more than is explicated in the brief submitted with the proof of claim. I will add however, that the Plaintiff (Claimant) has survived a removal to Federal Court, has won an 11th Circuit Court reversal of the District Court's dismissal. At the time of this stay, the Defendants (Debtors) had missed two scheduled depositions. If not settled in this Court, they will return to a motion to compel. One more thing regarding basis: GMAC employee - Jeffrey Stephan (most famous before Linda Green) executed and filed an assignment of Mortgage and Security Deed to Subject property to the Defendants seven months after the Defendants started foreclosure proceedings. You will find more details in the Complaint submitted with the claim. The Claimant has suffered at the hands of the Defendants since 2009.   The lawsuit has not been withdrawn. |

If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the following loan information, so that we can effectively search our records for information on your property and loan, and evaluate your claim.

| Loan Number: | ████████7285 |
|---|---|
| Address of property related to the above loan number: | 852 BRAFFERTON PL. |

| City:<br>STONE MOUNTAIN. | State:<br>GEORGIA. | ZIP CODE:<br>30083 |
|---|---|---|

Additional resources may be found at -  http://www.kcclic.net/rescap

Residential Capital, LLC    P.O. Box 385220  Bloomington, MN  55438

Claim Number: 3691
Wekesa O Madzimoyo vs The Bank of New York Mellon Trust Company NYBMT NA formerly known as The Bank of New York et al
Type: POC



**GMAC** Mortgage
PO Box 780
Waterloo, IA 50704-078

---

### DEBT VALIDATION LETTER

June 10, 2009

WEKESA O MADZIMOYO
852 BRAFFERTON PLACE
STONE MOUNTAIN GA 30083-4703



RE:     Account Number:    ████285
        Property Address:    852 BRAFFERTON PLACE
                             STONE MOUNT,GA 30083

Dear Wekesa O Madzimoyo:

You should have recently received a letter advising you that the servicing of your account has been transferred to GMAC Mortgage. As a result of this transfer, Federal law requires that we provide you with the following information.

GMAC Mortgage is servicing your account on behalf of RESIDENTIAL FUNDING CORP. which currently owns the interest in your account. As of June 4, 2009, the total amount of the debt is $140,992.72. Interest, late charges, legal costs and fees and other charges may also be included in the total amount of the debt. Please note that because interest, late charges, and other charges may continue to accrue on this debt, the total amount you pay may be greater than the amount indicated above.

Federal law provides that you have thirty (30) days after you receive this letter to dispute the validity of this debt or any part of it. If you DO NOT wish to dispute this debt or any portion of it within this thirty-day period, we will assume the debt is valid. If you DO wish to dispute this debt, notify us in writing within the thirty-day period and verification of the debt or a copy of a judgment against you will be provided to you by mail. In addition, we will provide you with the name and address of your original creditor if you request it in writing within the same thirty-day period. Please send all written requests to:

        GMAC Mortgage
        Attention: Customer Care
        P.O. Box 4622
        Waterloo, IA 50704-4622

This is an attempt to collect a debt and any information obtained will be used for that purpose.

**If you have been discharged of your personal liability for repayment of this debt, be advised that any action we may take, will be taken against the property only and not against you personally.**

**As required by law, you are hereby notified that:  We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.**

32

## **Exhibit B to Priore Declaration**

# NOTE

LOAN # ███0886

March    23    1999          Stone Mountain                    Georgia
[Date]                        [City]                          [State]

852 Brafferton Place
Stone Mountain, GA    30083
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    140,600.00    (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is
FT Mortgage Companies d.b.a. EquiBanc Mortgage Corporation
. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of    10.875    %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making payments every month.

I will make my monthly payments on the    1    day of each month beginning on    May    1999 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on    April    1    2029    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at    2974 LBJ Freeway  Second Floor, Suite 200    Dallas, TX  75234    or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $    1,325.71

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of    15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.


WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
WEKESA O. MADZIMOYO                -Borrower
SSN: 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

_____ (Seal)
                                  -Borrower
SSN:

_____ (Seal)
                                  -Borrower
SSN:

_____ (Seal)
                                  -Borrower
SSN:

*(Sign Original Only)*

PAY TO THE ORDER OF
The First National Bank of Chicago as Trustee
WITHOUT RECOURSE
Residential Funding Corporation
By Judy Faber, Vice President

RESIDENTIAL FUNDING CORPORATION
Without Recourse
FT Mortgage Companies /
d/b/a Equibanc Mortgage Corporation
Donna L. Cribbs
Vice President

FT MORTGAGE COMPANIES
INCORPORATED
1978
ILLINOIS

## ALLONGE TO PROMISSORY NOTE

**FOR PURPOSES OF FURTHER ENDORSEMENT OF THE FOLLOWING DESCRIBED NOTE, THIS ALLONGE IS AFFIXED AND BECOMES A PERMANENT PART OF SAID NOTE**

**POOL: 4382**          **LOAN ID:** ▮8554

```
||||||||||||||||||||||||||||||||||||
 1  8  9  8  5  5  4
```

**NOTE DATE: 03/23/1999     LOAN AMOUNT: $140600.00**

**BORROWER NAME: WEKESA MADZIMOYO**

**PROPERTY ADDRESS: 852 BRAFFERTON PLACE, STONE MOUNTAIN, GA 30083**

---

**PAY TO THE ORDER OF**

RESIDENTIAL FUNDING CORPORATION

**WITHOUT RECOURSE**

**Bank One National Association as Trustee, f/k/a The First National Bank of Chicago as Trustee, Residential Funding Corporation as Attorney in Fact**

**By:** _____

**John Hagebock, Vice President**
**Residential Funding Corporation**

PAY TO THE ORDER OF
JP MORGAN CHASE BANK, AS TRUSTEE
WITHOUT RECOURSE
Residential Funding Corporation

By _____
Judy Faber, Vice President

## Exhibit C to Priore Declaration

Deed Book 10518 Pg 268
Filed and Recorded Apr-02-1999 03:47pm
1999-0045166
Jeanette Rozier
Clerk of Superior Court
Dekalb County, Georgia





RETURN TO:
K BRENT WARREN
McLAIN & MERRITT, P.C.
5775-C GLENRIDGE DRIVE, STE 100
ATLANTA, GA 30328

After Recordation Return to:    FT Mortgage Companies
FTB Mortgage Services; ATTN: Final Documents
10741 King William
Dallas, TX  75220

LOAN #    ███0886

--------------------- [Space Above This Line For Recording Data] ---------------------

# SECURITY DEED

THIS SECURITY DEED ("Security Instrument") is given on    March    23    1999    . The grantor is

WEKESA O. MADZIMOYO

("Borrower"). This Security Instrument is given to    FT Mortgage Companies
d.b.a. EquiBanc Mortgage Corporation

which is organized and existing under the laws of    The State of Kansas    , and whose
address is    2974 LBJ Freeway    Second Floor, Suite 200    Dallas, TX  75234
("Lender"). Borrower owes Lender the principal sum of
One Hundred Forty Thousand Six Hundred and no/100--------------------------------
------------------------------------------------------------ Dollars (U.S. $    140,600.00    ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for
monthly payments, with the full debt, if not paid earlier, due and payable on    April    1    2029    .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals,
extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to
protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this
**GEORGIA-Single Family-FNMA/FHLMC UNIFORM INSTRUMENT**

VMP ®-6R(GA) (9802)
Page 1 of 7
VMP MORTGAGE FORMS - (800)521-7291

Form 3011 9/90
Amended 5/91
Initials: ____

03/23/99
16:24:33

Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in     DeKalb
County, Georgia:


SEE ATTACHED EXHIBIT "A"


which has the address of    852 Brafferton Place               Stone Mountain          [Street, City],
Georgia  30083                        [Zip Code] ("Property Address");

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

-6R(GA) (9802)                    Page 2 of 7                03/23/99          Form 3011  9/90
                                                             16:24:33

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

Initials: _____

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

Initials:

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by applicable law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale to Borrower in the manner provided in paragraph 14 and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by law.

If the Property is sold pursuant to this paragraph 21, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**23. Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

**24. Assumption not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**25. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

**26. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☐ VA Rider | ☒ Other(s) [specify] | Waiver of Borrower's Rights and the Closing Attorney's Affidavit |

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it. IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____ (Seal)
WEKESA O. MADZIMOYO              -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                                 -Borrower

Fulton

Notary Public,                                County

My Commission Expires
January 1, 2001

**Exhibit "A"**

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 227 OF THE 15TH DISTRICT, DEKALB COUNTY, GEORGIA, BEING LOT 26, BLOCK A, UNIT FIVE OF CARLISLE SUBDIVISION, AS PER PLAT RECORDED IN PLAT BOOK 64, PAGE 70, DEKALB COUNTY RECORDS, WHICH PLAT IS INCORPORATED HEREIN AND MADE A PART OF THIS DESCRIPTION, BEING KNOWN AS 852 BRAFFERTON PLACE ACCORDING TO THE PRESENT SYSTEM OF NUMBERING RESIDENCE IN DEKALB COUNTY, GEORGIA.

## Exhibit D to Priore Declaration

Deed Book 11849 Pg 76
Filed and Recorded Feb-05-2001 10:47am
2001-0013187

*Linda Carter*
Linda Carter
Clerk of Superior Court Dekalb Cty. Ga.

# ASSIGNMENT

**STATE OF GEORGIA**

**COUNTY OF FULTON**

After Recording Return To:

**PEELLE MANAGEMENT CORPORATION**
ASSIGNMENT JOB #90603
P.O. BOX 1710
CAMPBELL, CA 95009-1710
1-408-866-6868

A███████████████
FT Mortgage Services
10741 King William
Dallas, TX 75220
ATTN: Final Documents

Loan # ███████0886

**█████ 8554** *4282*

FOR VALUE RECEIVED, FT MORTGAGE COMPANIES DBA EQUIBANC MORTGAGE
CORPORATION, (Assignor), a corporation organized and doing business under the laws of the State of Kansas,
having its office and principal place of business at 2974 LBJ Freeway, Suite 200, Dallas, TX 74234, hereby sells,
assigns, transfers and sets over to    THE FIRST NATIONAL BANK OF CHICAGO AS TRUSTEE
One First national Plaza, Suite 0126, Chicago, Illinois 60670-0126

(Assignee), its successors and/or assigns, all its rights, title and interest in and to a certain Deed to Secure Debt dated
March    23,    1999   executed by    WEKESA O. MADZIMOYO

REC: 4-2-99    INST # 1999-0045166 ,

in the principal sum of $   140,600.00   and filed for record in the Office of the Clerk of Superior Court of

DeKalb   County, Georgia, and recorded in Deed Book 10618 , Page

268 , aforesaid records. The Assignor specifically sells, assigns, transfers and sets over to the Assignee, its
successors and assigns, the aforesaid Deed to Secure Debt, the property described therein, the indebtedness secured
thereby, with all powers, options, privileges and immunities therein contained. The Assignor has this day sold and
endorsed to the Assignee, **WITHOUT RECOURSE**, the Note secured by the aforesaid Deed to Secure Debt, and this
Assignment is made to secure the Assignee, its successors and assigns, in the payment of the Said Note. **IN WITNESS
WHEREOF**, the Assignor has hereunto set its hand and affixed its seal by and through its seal and its duly authorized
officers, this _____26th_____ day of _____March_____, 1999 .

FT Mortgage Companies dba
EquiBanc Mortgage Corporation

BY: *Susan L. Grabryan*
Susan L. Grabryan
Asst. Vice President

Signed, Sealed and Delivered
in the presence of:

_____
WITNESS

*Cheryl McIntyre*
NOTARY PUBLIC

Form EQSIGNGA (04/97)


1978

03/26/99
16:27:08


CHERYL McINTYRE
FEB 25 2003
NOTARY PUBLIC

## Exhibit E to Priore Declaration

2011026858    DEED BOOK **22326** Pg **593**

Filed and Recorded:
1/24/2011 2:43:09 PM
Linda Carter
Clerk of Superior Court
DeKalb County, Georgia

When Recorded, Return to:
Atten:  Anthony DeMarlo/Foreclosure Dept/sm
McCurdy & Candler, L.L.C.
3525 Piedmont Road NE, Six Piedmont Center, Suite 700
Atlanta, GA 30305

Clerk, please cross reference to
Security Deed in Deed Book 10618, Page 268
Assignment in Deed Book 21860, Page 499
DeKalb County, Georgia Records

STATE OF _Pennsylvania_
COUNTY OF _Montgomery_

File No. 09-15522

## * CORRECTIVE ASSIGNMENT OF SECURITY DEED

FOR VALUE RECEIVED, **The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank, N.A. as Trustee s/b/m to Bank One, N.A. as Trustee s/b/m to The First National Bank of Chicago as Trustee** (hereinafter referred to as "Assignor") hereby sells, assigns, transfers, sets over and conveys without recourse unto **The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank, N.A. as Trustee s/b/m to Bank One, N.A. as Trustee s/b/m to The First National Bank of Chicago as Trustee for RAMP 2006RP2** (hereinafter referred to as "Assignee"), whose address is 1100 Virginia Drive Fort Washington, PA 19034, that certain Security Deed or Deed to Secure Debt executed by Wekesa O. Madzimoyo  to FT Mortgage Companies d.b.a. EquiBanc Mortgage Corporation  and dated March 23, 1999, recorded in Deed Book 10618, Page 268, Clerk's Office, Superior Court of DeKalb  County, Georgia, together with the real property therein described, which has the property address of 852 Brafferton Place; and also the indebtedness described in said Deed and secured thereby,  having this day been transferred and assigned to the said Assignee together with all of Assignor's right, title and interest in and to the said Deed, the property therein described and the indebtedness secured; and the said Assignee is hereby subrogated to all the rights, powers, privileges and securities vested in Assignor under and by virtue of the aforesaid Security Deed or Deed to Secure Debt.

**\* This Corrective Assignment of Security Deed is being recorded in order to correct the corporate names of the Assignee and Assignor.**

This Assignment of Security Deed is executed on this _18th_ day of _January_ , 2011.

Signed, sealed and delivered
in the presence of:

The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank, N.A. as Trustee s/b/m to Bank One, N.A. as Trustee s/b/m to The First National Bank of Chicago as Trustee

By: _____
Its: Mira Smoot    Authorized Officer

By: _____    **Susan Turner**
Its: 
**Authorized Officer**

_____
Unofficial Witness

_____
Notary Public

My Commission Expires: _____

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Trina Willbank, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires Sept. 19, 2013
Member, Pennsylvania Association of Notaries