**Hearing Date: October 22, 2014 at 10:00 a.m. (ET)**

**MORRISON & FOERSTER LLP**
250 West 55th Street
New York, New York 10019
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Meryl L. Rothchild

*Counsel for the ResCap Borrower Claims
Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------- )
In re:                                               )        Case No. 12-12020 (MG)
                                                     )
RESIDENTIAL CAPITAL, LLC, et al.,                    )        Chapter 11
                                                     )
                          Debtors.                   )        Jointly Administered
-------------------------------------------------------------- )

**THE RESCAP BORROWER CLAIMS TRUST'S REPLY**
**IN SUPPORT OF ITS OBJECTION TO PROOFS OF CLAIM**
**FILED BY KAREN MICHELE ROZIER (CLAIM NOS. 4738 AND 5632)**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...........................................................................................1

REPLY ..........................................................................................................................5

A.    Rozier Does Not Adequately Respond to the Borrower Trust's Arguments
Regarding the Lack of Merit of Any Claims Raised in the Proofs of Claim ...................5

        i.    Rozier Fails to Sufficiently Rebut the Borrower Trust's Statements
in the Objection that Demonstrate the Tender Rule is Applicable in
California ..................................................................................................5

        ii.    Rozier Fails to Rebut the Borrower Trust's Argument that She
Lacks Standing to Prosecute the Proofs of Claim .....................................7

        iii.    Rozier Does Not Rebut the Borrower Trust's Arguments that the
Proofs of Claim Lack Merit......................................................................8

        iv.    Rozier Misunderstands the Borrower Trust's Inclusion of the FRB
Consent Order in the Objection...............................................................12

B.    Rozier Fails to Meet Her Burden of Proof to Support the Proofs of Claim Because
Her Arguments Are Not Supported by Sufficient Evidence .............................................13

C.    Rozier Is Improperly Attempting to Amend the Proofs of Claim ...................................15

CONCLUSION .............................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .......................................................................................................... 13

*Creamer v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.),*
   No. 12. Civ. 6074 (RJS), 2013 U.S. Dist. LEXIS 143957 (S.D.N.Y. Sept. 23, 2013) ............. 3

*Gens v. Wachovia Mortg. Corp.,*
   No. CV10-01073 JF (HRL), 2010 WL 1924777 (N.D. Cal. May 12, 2010) .......................... 5

*In re Allegheny Int'l, Inc.,*
   954 F.2d 167 (3d Cir. 1992) ........................................................................................... 3, 13

*In re Carmelo Bambace, Inc.,*
   134 B.R. 125 (Bankr. S.D.N.Y. 1991) .................................................................................. 18

*In re Enron Creditors Recovery Corp.,*
   370 B.R. 90 (Bankr. S.D.N.Y. 2007) .................................................................................... 19

*In re Mercer's Kwik Stop Food Stores, Inc.,*
   No. 90-02046, 1993 WL 761989 (Bankr. N.D.N.Y. July 2, 1993) ....................................... 18

*Integrated Res., Inc. v. Ameritrust Co. Nat'l Ass'n (In re Integrated Res., Inc.),*
   157 B.R. 66 (S.D.N.Y. 1993) ........................................................................................ 18, 19

*Kimber v. GMAC Mortg., LLC (In re Residential Capital, LLC),*
   489 B.R. 489 (Bankr. S.D.N.Y. 2013) .................................................................................. 13

*In re McLean Indus., Inc.,*
   121 B.R. 704 (Bankr. S.D.N.Y. 1990) .................................................................................. 18

*Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.),*
   419 F.3d (2d Cir. 2005) ............................................................................................... 17, 18

*In re Residential Capital, LLC, et al.,* No. 12-12020 (MG) (Bankr. S.D.N.Y. June 24,
   2014) [Docket No. 7169] .................................................................................................... 3

*Sherman v. Novak (In re Reilly),*
   245 B.R. 768 (B.A.P. 2d Cir. 2000) ..................................................................................... 13

*Vaughn v. Air Line Pilots Ass'n, Int'l,*
   604 F.3d 703 (2d Cir. 2010) ................................................................................................. 3

The ResCap Borrower Claims Trust (the "Borrower Trust"), established pursuant to the terms of the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 6030] (the "Plan") confirmed in the above captioned bankruptcy cases (the "Chapter 11 Cases"), hereby submits this reply (the "Reply"),[1] together with the reply declaration of Deanna Horst, Chief Claims Officer for the ResCap Liquidating Trust (the "Reply Declaration"), annexed hereto as Exhibit 1, to the response of claimant Karen Michele Rozier ("Rozier") [Docket No. 7620] (the "Response") and the declaration of Karen Michele Rozier in support of the Response (the "Rozier Declaration") [Docket No. 7620-2] to *The ResCap Borrower Claims Trust's Objection to Proofs of Claim Filed by Karen Michele Rozier (Claim Nos. 4738 and 5632)* [Docket No. 7474] (the "Objection").[2]  In support of the Objection, the Borrower Trust respectfully states as follows:[3]

## PRELIMINARY STATEMENT

1.      After being given yet another opportunity to substantiate her claims against the Debtors, Rozier comes up short.  Contrary to Rozier's assertions that the Borrower Trust's Objection "contain[s] many false statements and omit[s] so many critical facts" (Rozier Declaration ¶ 50), and the declarations provided in support thereof are "obviously flawed and

---

[1]      Capitalized terms not defined in this Reply shall have the meaning ascribed to such terms in the Objection.

[2]      Rozier also filed (i) as Exhibit B to the Response *Motion to Strike the Declaration of Yaron Shaham in Support of the Objection of the Borrower Claims Trust to Proofs of Claim Filed by Karen Michele Rozier (Claim Nos. 4738 and 5632); Declaration of Karen Michele Rozier in Support Thereof* [Docket No. 7620-3], and (ii) as Exhibit C to the Response *Motion to Strike the Declaration of Deanna Horst in Support of the Objection of the Borrower Claims Trust to Proofs of Claim Filed by Karen Michele Rozier (Claim Nos. 4738 and 5632); Declaration of Karen Michele Rozier in Support Thereof* [Docket No. 7620-7] (collectively, the "Motions to Strike").  The Borrower Trust addresses these motions in a separate pleading filed concurrently with this Reply.

[3]      To the extent not addressed herein, the Borrower Trust incorporates by reference all arguments made by the Borrower Trust in the Objection.

ny-1160814

fabricated" (*see* Response at 11), the Borrower Trust conducted an in-depth review of the Proofs of Claim, the record, the prior pleadings, and all exhibits submitted by Rozier prior to filing the Objection, and included the information necessary, with the Objection, to provide this Court with the context needed to evaluate the merits (or lack thereof) of the Proofs of Claim.  Based on the record before the Court, Rozier not only fails to show by a preponderance of the evidence the validity of any of the legal predicates for the Proofs of Claim and her request for damages, but also fails to proffer sufficient evidence to demonstrate any nexus between the Debtors' purported improper acts and her alleged economic damages.

2.     Rozier filed two claims on the Claims Register – the GMACM Claim and the ETS Claim.  The GMACM Claim's "Basis for Claim" states "wrongful foreclosure / IFR / Civil Case 30-201200601310" (the California Action), and the ETS Claim's "Basis for Claim" states gross negligence, harassment, and other defenses raised in Civil Case 30-201200601310."  *See* Exhibits 1-A and 1-B annexed to the Objection.  To these Proofs of Claim, Rozier appends the First Amended Complaint filed in the California Action, which alleges the following nine causes of action against the Debtors (among other defendants): (i) wrongful foreclosure; (ii) temporary and permanent injunctive relief; (iii) violation of California Civil Code 2923.5; (iv) violation of California Civil Code 2924; (v) slander of title; (vi) violation of California Business and Professional Code 17200 *et seq*.; (vii) negligence; (viii) defamation of character; and (ix) quiet title.  *See id.*

3.     In the Response, Rozier mistakenly argues that "[t]he Debtors' Objection fails to rebut at least one essential element of the Rozier Claim."  *See* Response at 11.  In fact, through the Objection, the Borrower Trust addressed and countered each stated "Basis for Claim" set forth in the GMACM Claim and the ETS Claim, as well as each of the causes of

2

action alleged in the First Amended Complaint appended to the Proofs of Claim.  Accordingly,

by the filing of the Objection, the Borrower Trust has sufficiently rebutted the *prima facie* case

asserted against the Debtors.  *See* Objection ¶¶ 80-140; *see also Allegheny Int'l, Inc. v. Snyder*

*(In re Allegheny Int'l, Inc.)*, 954 F.2d 167, 173-74 (3d Cir. 1992) ("In practice, the objector must

produce evidence which, if believed, would refute at least one of the allegations that is essential

to the claim's legal sufficiency.").   Because the Borrower Trust produced evidence equal in

force to that provided by Rozier, the burden shifted back to Rozier to produce additional

evidence to prove the validity of her claims by a preponderance of the evidence. *See id*. at 174;

*see also Creamer v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, No. 12-

CV-6074 (RJS), 2013 U.S. Dist. LEXIS 143957, at *12-13 (S.D.N.Y. Sept. 26, 2013) (internal

quotation marks omitted) (stating an objector can negate a claim's presumptive validity and shift

the burden back to the claimant to "prove by a preponderance of the evidence that under

applicable law the claim should be allowed.") (citation omitted); Memorandum Opinion and

Order Sustaining Objection to Claim No. 6423 of Neil Larkins, *In re Residential Capital, LLC, et*

*al.*, No. 12-12020 (MG) (Bankr. S.D.N.Y. June 24, 2014) [Docket No. 7169] (stating same

standard).

       4.      Thus, for Rozier's claims to survive, the Court must find that Rozier

alleged "enough facts to state a claim for relief that is plausible on its face." *Vaughn v. Air Line*

*Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009)).  In addition, the Court must find that Rozier has sufficiently substantiated the damages

she purportedly suffered as a result of the wrongful acts of the Debtors.

       5.      Rozier has failed to meet this burden.  Rozier dedicates a portion of the

Response to asserting that the Debtors and/or the Borrower Trust, as applicable, has been

improperly selective and untruthful about information shared with the Court, and argues that

both the Horst Declaration and Shaham Declaration should be stricken from the record in support

of the Objection (*see* Response ¶¶ 1-7; *see also* Rozier Declaration ¶¶ 8, 38-39, 42, 45; *see*

*generally*, Motions to Strike).    Moreover, Rozier only addresses a few of the numerous claims

and causes of action she herself raised in the Proofs of Claim and fails to defend the remainder.

For example, Rozier does not provide further support for her claims that the Debtors violated

sections 2923.5 and 2923.6 of the California Civil Code, committed slander of title, or violated

the California Business and Professional Code.  In this regard, the Objection should be viewed as

uncontested and sustained.    With respect to the claims she does address, Rozier includes

arguments that demonstrate Rozier's misunderstanding of the facts and legal standards presented

by the Borrower Trust (*see, e.g.*, Response ¶¶ 9, 10-13, 14-16).  Rather than providing relevant

legal arguments to rebut the arguments proffered by the Borrower Trust, Rozier offers

unsubstantiated statements and allegations that do not support valid causes of action against the

Debtors, nor do they add further support to those claims that she previously included in the

Proofs of Claim and her other motions before this Court.  In sum, Rozier fails to state valid legal

and factual predicates for the Proofs of Claim, including any exhibits that evidence any

wrongdoing by the Debtors or that substantiate such harm, and therefore, is not entitled to any

damages from the Debtors' estates on account thereof.  This, too, supports the Court's finding

that the Objection should be sustained on all counts.

      6.     Therefore, for the reasons set forth in the Objection and this Reply, the

Borrower Trust respectfully requests that the Court overrule the Response and sustain the

Objection because Rozier fails to support the Proofs of Claim by a preponderance of the

evidence.  Instead, Rozier uses the Response as a platform to voice unsubstantiated allegations

and unfounded character attacks on the Borrower Trust's declarants in an attempt to distract the

Court from her baseless claims.

## <u>REPLY</u>

A.    **Rozier Does Not Adequately Respond to the Borrower Trust's Arguments
Regarding the Lack of Merit of Any Claims Raised in the Proofs of Claim**

  i.    *Rozier Fails to Sufficiently Rebut the Borrower Trust's Statements in the
Objection that Demonstrate the Tender Rule is Applicable in California*

    7.  In the Response, Rozier asserts that "[t]he California courts have ruled

multiple times" that no tender was required.  *See* Rozier Declaration ¶ 46; *see also* Response ¶ 9

and Rozier Declaration ¶ 27.   However, Rozier misunderstands the purpose and application of

the tender rule.  In California, the tender rule provides that in order for a plaintiff to maintain a

wrongful foreclosure action or any cause of action concerning an irregularity in the sale

procedure, including foreclosure proceedings prior to the trustee's sale, the plaintiff must offer

evidence of his or her ability to repay the underlying debt.  *See, e.g.*, *Gens v. Wachovia Mortg.

Corp.*, No. CV10-01073 JF (HRL), 2010 WL 1924777, at *7 (N.D. Cal. May 12, 2010) (denying

plaintiff's motion for preliminary injunction because, among other reasons, "Plaintiff has neither

pled nor offered any evidence of a tender to pay her debt."); *see also* Objection ¶¶ 88-92.

    8.  In California, concurrently with filing a complaint in a legal action, a

plaintiff may file an *ex parte* application for a temporary restraining order (*see, e.g.*,   TRO

Application at <u>Exhibit 3-B.4</u> annexed to Shaham Declaration), which is heard (along with any

filed opposition) at a preliminary injunction hearing.  *See* Rules 3.1300-1312 of California Rules

of Court.  When a court issues a preliminary injunction order, the plaintiff is required to post a

bond.  *See* Rule 3.1150(f) of the California Rules of Court.  Therefore, Rozier was required to

tender (or undertake) a bond in the amount of $5,000 in order to obtain the preliminary

injunction ordered by the California Superior Court.[4]

9.       However, tendering a bond in support of a preliminary injunction order is

not the same as satisfying the tender rule.  Accordingly, Rozier is incorrect in stating that the

court's allowance of this payment rather than the bond amount sought by U.S. Bank is evidence

that the court ruled that tender was not required in the legal action.  *See* Response ¶ 9; *see also*

Rozier Declaration ¶¶ 27, 46.  The payment of the $5,000 bond secured a preliminary injunction.

To the extent Rozier is suggesting that she would not have to offer a tender to pay her debt to

succeed on the wrongful foreclosure claim on the merits of the case, she is incorrect on this point

as well.  There is no evidence that any California court in any of Rozier's matters has ruled that

the tender rule is inapplicable and not a requirement for success on the merits of a wrongful

foreclosure claim.  Rozier does not include any order or official hearing transcript to support her

assertion on this issue and counter the authority provided in the Objection (*see* Objection ¶¶ 88-

92).  Therefore, her statements alone should not be given any weight.[5]

---

[4]     There is nothing in the record explaining the reason(s) why the California court directed Rozier to pay $5,000 instead of the bond amount proposed by U.S. Bank (*e.g.*, whether the court considered the pending Rozier Bankruptcy Case and potential lack of funds at Rozier's disposal).

[5]     Only recently did the California Superior Court make a ruling that relates to the tender rule, albeit indirectly, when it entered an order granting U.S. Bank's motion for summary judgment in the California Action (*see* Objection ¶¶ 44-45; *see also* Shaham Declaration ¶¶ 11-13).  *See* Exhibits 3-B.11 and 3-B.12 annexed to Shaham Declaration.  On October 1, 2014, the California Court of Appeal, 4th District Court of Appeal, Division 3 ("California Court of Appeals") issued an order (the "Remittur"), which dismissed on a final basis Rozier's first appeal of the California Superior Court's order granting U.S. Bank's motion for summary judgment in the California Action.  *See* U.S. Bank's Second Supplemental Opposition to Rozier's Motion to Vacate and exhibits appended thereto, including docket (Ex. H) and Remittur (Ex. I), at Exhibit 2 annexed hereto.  One argument raised in U.S. Bank's motion for summary judgment was that the wrongful foreclosure action should be dismissed because Rozier admits that she has insufficient funds to tender.  *See* Exhibit 3-B.11 annexed to Shaham Declaration.  Rozier's second appeal was dismissed by the California Court of Appeals on October 10, 2014.  *See* docket, at Exhibit 3 annexed hereto.  As of the date of the Reply, she has yet to ask the court to vacate its order.  Thus, at this time, both of Rozier's appeals before the California Court of Appeal are no longer active.

     ii.    *Rozier Fails to Rebut the Borrower Trust's Argument that She Lacks Standing to Prosecute the Proofs of Claim*

     10.    In the Objection, the Borrower Trust raised the issue of standing in two respects: (i) whether Rozier has standing to prosecute the Proofs of Claim given that she is a debtor with a pending bankruptcy case; and (ii) whether under California law, Rozier has standing to challenge the foreclosure of the Property in light of California's non-judicial foreclosure scheme. *See* Objection ¶¶ 78-79, 85-87. While the Response is organized to show Rozier's response to the standing argument under the section titled "Reply to Debtor's Argument that Rozier Lacks Standing" (*see* Response at 5, ¶¶ 10-13), Rozier addresses this issue in the subsequent section titled "Reply to Debtor's Argument that Rozier's Proof of Claim Has No Merit" (*see* Response at 7-8, ¶ 14). Rozier claims that the California courts have allowed "Rozier to defend her estate" because

> the Bankruptcy Trustee had abandoned her estate (due to primarily to Debtors' fraudulently portraying her 4,206 square foot architectural home as a 2,096 square foot home worth less than half its value, but also due to their attorneys portraying Rozier as an African American deadbeat sponging off the wealth of Orange County, [(]which is less than 2% African American) and since the Trustee was swamped with other work . . . .

*See* Response ¶ 14.

     11.    First, Rozier does not provide a copy of a Notice of Abandonment filed by the Trustee to notify Rozier's creditors of the Trustee's intent to abandon certain property in Rozier's bankruptcy estate. Nor does Rozier supply any official hearing transcript or order indicating that the California Bankruptcy Court has deemed Rozier's Property abandoned pursuant to section 554(c) of the Bankruptcy Code, thereby allowing Rozier to prosecute the Proofs of Claim in the Chapter 11 Bankruptcy Cases. To date, Rozier has not received a discharge, and an order has not been entered dismissing the Rozier Bankruptcy Case (*see*

ny-1160814

Objection ¶ 79; *see also* <u>Exhibit 9</u>[6] annexed to the Objection). Therefore, James J. Joseph, as the Chapter 7 trustee appointed to the Bankruptcy Case, is the only party who has such standing. The Chapter 7 trustee has been noticed with the Objection, and has neither filed a response thereto nor contacted the Borrower Trust to defend Rozier's claims.  Accordingly, as set forth in the Objection, Rozier lacks standing to prosecute the Proofs of Claim.

12.    Second, it is not clear whether Rozier addresses the issue of whether she may challenge the foreclosure of the Property since foreclosure proceedings in California are non-judicial in nature.  Rozier claims, in the Response, that the "Federal Bankruptcy and Federal Appeals Court" have decided this issue in Rozier's favor and rejected the argument made by the "Debtors by and through counselors from Severson and Werson claiming to represent U.S. Bank . . . that only the Trustee could bring the motion."[7]  Response ¶ 14.  Moreover, Rozier does not offer any documentary evidence or authority to substantiate this assertion.  Rozier fails to identify any legal support to justify a finding of standing in her favor, and her statements alone do not constitute a valid cause of action against the Debtors.  Assertions alone are insufficient to rebut the Borrower Trust's arguments set forth in the Objection, and for this reason, the Objection should be sustained.

iii.    *Rozier Does Not Rebut the Borrower Trust's Arguments that the Proofs of Claim Lack Merit*

13.    Rozier's Response does not contain any statements that sufficiently rebut the Borrower Trust's challenges to the merits of the claims and the issues raised in the Proofs of

---

[6]    In paragraphs 78 and 79 of the Objection, the Borrower Trust made a clerical error by referring to <u>Exhibit 19</u> annexed to the Objection instead of <u>Exhibit 9</u>.  The Borrower Trust hereby seeks to correct this reference in those instances and note the correct <u>Exhibit 9</u> reference in the Objection.

[7]    It is not clear from the Response to which "motion" Rozier is referring.

ny-1160814

Claim. Nor does the Response contain any new information to substantiate the merits of the Proofs of Claim.

14.    For example, Rozier attempts to address the Borrower Trust's arguments with respect to Rozier's wrongful foreclosure claim by repeating her prior argument that the December 2005 Note and related Deed of Trust are purportedly void based on her <u>belief</u> that her execution of the Modification of Note and Modification of Deed of Trust did not continue the effectiveness of those loan agreements, but instead represented new loan documents. *See* Response at 2. Rozier's repetitive arguments, however, do not counter the evidence proffered by Borrower Trust in the Objection *i.e.*, the December 2005 Note and Deed of Trust are valid debt instruments, and parties, including the Debtors, have properly taken actions on account of their validity. *See* Objection ¶¶ 82-84. Moreover, Rozier does not adequately demonstrate that she suffered any monetary damages here, particularly because the Roziers have not been dispossessed of their home since foreclosure proceedings originally began in 2008. *See* Reply Declaration ¶ 4.

15.    Rozier also asserts that the Debtors acted in bad faith in all of their dealings with her, including in connection with negotiations surrounding the execution of a repayment plan (which is mislabeled in the Response as a forbearance agreement) (*see* Response at 3, ¶ 20; Rozier Declaration ¶ 29 and <u>Exhibit 7</u> annexed to Rozier Declaration). Specifically, Rozier alleges that the Debtors reneged on a forbearance agreement she executed on or about April 29, 2008 and claims that the Debtors "attempted to bully Rozier into signing a blank signature page to replace the one [GMACM] executed." Response ¶ 20. However, the Debtors' servicing records do not indicate in any respect that GMACM either wanted or requested Rozier to sign a new, blank signature page. *See* Reply Declaration ¶ 4. Further, the Debtors did not

9

"renege" on this agreement; they canceled it due to Rozier's failure to remit the required down payment. *See id*; *see also* Objection ¶ 24, Horst Declaration ¶ 17, and Exhibit 3-A.10 annexed to Horst Declaration. Rozier does not offer any evidence contesting her failure to make the down payment. Further, Rozier's own actions (or inaction) – not that of the Debtors – caused Rozier's failure to effectuate any remedial action, though the Debtors provided her with numerous loss mitigation opportunities (*see* Objection ¶¶ 24, 26; *see also* Horst Declaration ¶¶ 17, 19).

16.    Rozier also contests the Borrower Trust's assertion that she was in default on her loan payments in March of 2008 when the Debtors filed a Notice of Default (*see* Response at 2 and Motion to Strike Horst Declaration ¶ 11), and that her mortgage account is only paid through December 1, 2007. *See* Reply Declaration ¶ 4. However, she has already admitted her delinquency in prior litigation. *See* Objection ¶¶ 22-24; *see also* Request for Admission No. 8 in Exhibit 18 appended to Rozier's declaration in support of *Motion to Strike Shaham Declaration* ("Admit Plaintiff has not made a mortgage payment concerning the Subject Loan in over four years."[8]).

17.    In the Response, Rozier also alleges that certain robo-signing activity voids the transfers of the Deed of Trust and endorsement of the December 2005 Note. *See* Response ¶¶ 6-7; Rozier Declaration ¶¶ 19, 23-24. Rozier purports to provide evidence of Judy Faber's robo-signing activity (*see* Exhibit 4 appended to the Rozier Declaration), but this is simply an affidavit signed by Ms. Faber stating that she complied with her duties as an endorser in accordance with a certain pooling and servicing agreement. Similarly, Rozier has not proffered any evidence to demonstrate that Nikole Shelton specifically robo-signed her

---

[8]    These Requests for Admission were previously deemed admitted. *See* Exhibit 3-B.11 annexed to Shaham Declaration (Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment), at 1:16-1:22.

ny-1160814

notarization of the Substitution of Trustee document, recorded April 11, 2011, that substitutes ETS as Trustee to the Deed of Trust (*see* Horst Declaration ¶ 21; *see also* Exhibit 3-A.15 annexed to the Horst Declaration).  Further, Rozier has not provided evidence that the documents relating to the respective endorsements and transfers of the December 2005 Note and Deed of Trust contain materially inaccurate information nor that those specific documents were improperly executed.  Assuming *arguendo* that the aforementioned individuals were the subjects of robo-signing allegations, Rozier has not demonstrated that the December 2005 Note and Deed of Trust-related documents were improperly executed, robo-signed or improperly notarized.  Moreover, Rozier has not demonstrated to the Court that the information contained in those documents is materially inaccurate.  Importantly, Rozier fails to demonstrate that she incurred any damages on account of these documents, and therefore, her claims on this issue fail.

18.    In addition, Rozier asserts that the Debtors (and U.S. Bank) deliberately conceal and mis-identify the Trust into which Rozier's loan was placed.  *See, e.g.*, Response at 2.  This accusation is misplaced.  Rozier's loan was securitized, which means that the sponsor and master servicer of the loan, RFC, sold the loan to its affiliated depositor, which was Residential Asset Mortgage Products, Inc. ("RAMP").[9]  *See* Reply Declaration ¶ 5.  The depositor then immediately deposited the loan with the issuer, RAAC[10] Series 2007-RP1 Trust (the "Trust").  *See id.*  The Trustee of the Trust is the owner of the loan on behalf of the securityholders of the

---

[9]    In paragraph 28 of the Objection and paragraph 21 of the Horst Declaration, the Borrower Trust erroneously referred to the depositor to which RFC sold Rozier's loan as the similarly named "RAAC 2007RP1" instead of the actual depositor to which the loan was sold, *i.e.*, "**RAMP 2007-RP1.**"  Attached as Exhibit 3-A.14 to the Horst Declaration is a copy of the Assignment of Deed of Trust, dated March 3, 2011, which reflects an assignment from MERS to **RAMP 2007-RP1**.  *See Notice of Supplemental Declaration of Deanna Horst in Support of the Objection of the ResCap Borrower Claims Trust to Proofs of Claim Filed by Karen Michele Rozier (Claim Nos. 4738 and 5632)* filed contemporaneously with the Reply; *see also* Reply Declaration ¶ 5.

[10]    The Trust is the Issuer of the securities, which are collateralized by a pool of mortgage loans including, based on the Debtors' books and records, Rozier's loan.

Trust. *See id.*   The original Trustee of the Trust was LaSalle Bank, which was succeeded by

BoA and then by U.S. Bank.  *See id.*  Accordingly, Rozier's loan was sold to RAMP and then

deposited in the Trust.  *See id.*  In any event, these facts neither provides support for any of

Rozier's claims set forth in the Proofs of Claim, nor point to any wrongdoing on the part of the

Debtors.

iv.    *Rozier Misunderstands the Borrower Trust's Inclusion of the FRB Consent Order in the Objection*

19.    In the Objection, the Borrower Trust references the FRB Consent Order to

both provide the Court with factual background relevant to Rozier and her claims, as well as to

address potential claims asserted by Rozier in the Proofs of Claim.   Rozier received a $500

settlement payment in accordance with the FRB Settlement Amendment (*see* Objection ¶ 137).

Neither the Debtors nor the Borrower Trust assert that the FRB Settlement Process is an

exhaustive remedy, as Rozier contends (*see Motion to Strike Horst Declaration* ¶¶ 5-6).  There is

no guarantee, however, that any claimant will receive more than any settlement payment made in

that process if the Debtors or Borrower Trust (as applicable) files an objection to those claims

and such objection is sustained by the Court.   If any or all of a proof of claim is allowed, the

amount the claimant is paid out from the settlement payment will be deducted from the allowed

amount of the claim.  Accordingly, should the Court deem that any or all of the amounts asserted

as damages in the Proofs of Claim are allowed, $500 would be deducted from that allowed

amount.  *See* Plan, at Art. IV.F.6.  The Borrower Trust maintains that after completing its

diligence on the Proofs of Claim, Rozier is not owed any amounts from the Debtors on account

of her failure to prove by a preponderance of the evidence valid causes of action against the

Debtors and substantiated damages in connection therewith.

20.    While Rozier asserts that she "never claimed that she is entitled to recover additional amounts through the Independent Foreclosure Review process[]" (*see* Response ¶ 17), the face of the GMACM Claim alleges liability for "wrongful foreclosure / **IFR** / Civil Case 30-2012-00601310" (the California Action) (emphasis added).  *See* <u>Exhibit 1-A</u> to the Objection; *see also* Objection ¶ 60.  Accordingly, the Borrower Trust addressed one of the bases of the GMACM Claim filed by Rozier.

**B.    Rozier Fails to Meet Her Burden of Proof to Support the Proofs of Claim Because Her Arguments Are Not Supported by Sufficient Evidence**

21.    In the Objection, the Borrower Trust rebutted the presumption of Rozier's *prima facie* claims asserted against the Debtors.   *See* Objection ¶¶ 80-140; *see also In re Allegheny Int'l, Inc.*, 954 F.2d at 173-74 ("In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency."); *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000) (same). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).  Plausibility "is not akin to a probability requirement," but rather requires "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citation and internal quotation marks omitted).  Although "[claims] drafted by pro se [claimants] are to be construed liberally, [] they must nonetheless be supported by specific and detailed factual allegations sufficient to provide the court and the defendant with 'a fair understanding of what the [claimant] is complaining about and . . . whether there is a legal basis for recovery.'"  *Kimber v. GMAC Mortg., LLC (In re Residential Capital, LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (quoting *Iwachiw v. New York City Bd. of Elections*, 126 Fed. Appx. 27, 29 (2d Cir. 2005) (ellipsis in original)).

13

22.     Rozier lobs many allegations and submits numerous exhibits to the Rozier

Declaration as purported proof of the Debtors' and their agents and/or representatives'

"wrongdoing and harm done to [Rozier]" (*see, e.g.*, Rozier Declaration ¶¶ 29, 33-42) in support

of the Proofs of Claim; however, these allegations and exhibits neither address the merits of the

causes of action set forth in the First Amended Complaint appended to the Proofs of Claim,

particularly counts (ii) through (ix),[11] nor the claims relating to (a) fraudulent conduct and

conspiracy to commit fraud, (b) cancelation of void/voidable contract and instrument, and (c)

intentional infliction of emotional distress.  Accordingly, no weight should be given to Rozier's

conclusory allegations and statements made in the Response and Rozier Declaration and exhibits

appended thereto, and the arguments raised in the Objection and relief sought therein should be

sustained.  Rozier's statements and exhibits do not add to the legitimacy of the Proofs of Claim

because such statements fail to articulate valid causes of action against the Debtors, and they do

not sufficiently demonstrate a causal relationship between the Debtors' alleged wrongful acts and

the purported harm Rozier claims to have suffered.

23.     Many of the statements in the Proofs of Claim, the Response and the

Rozier Declaration, as well as the exhibits submitted in support thereof, are either wholly

irrelevant or fail to prove by a preponderance of the evidence that the Proofs of Claim should be

allowed.  *See, e.g.*, Response ¶¶ 9 and Rozier Declaration ¶¶ 27, 46 (claiming California courts

"specifically mentioned" that no tender was required, but with no official transcript or order

attached in support); Response ¶¶ 11-13 (discussing California Architects Board's citations and

questions posed by Rozier relating to California architects and building activity); Response ¶ 15

and n.5 (claiming "Rozier is more than willing to take the required financial course to exit

---

[11]    Rozier now states that "[she is] not suing anyone to Quiet Title."  *See* Rozier Declaration ¶ 28.

ny-1160814

bankruptcy, a course she is also qualified to teach."); Rozier Declaration ¶ 49 (claiming the "Debtors and U.S. Bank are also trying to hide that they originally claimed to possess a valid note which was securitized into a trust RAMP2007RP1" and now "claim it was "RAAC2007RP1" with no support to evidence deceptive behavior by the Debtors or U.S. Bank). For instance, Rozier appends exhibits to the Rozier Declaration that do not quantify her damages or provide evidence of the Debtors' wrongful acts, such as her amended summary of schedules filed in the Rozier Bankruptcy Case, the debt repayment plan, and several other exhibits that are already part of the record. Notably, none of these documents evidence any wrongdoing by the Debtors.

24.     Rozier's statements alone – conclusory, unsubstantiated, and many irrelevant to her claims against the Debtors – are insufficient proof of the Debtors' wrongdoing and do not substantiate any damages incurred by Rozier. Because the Response and Rozier Declaration fail to contribute to Rozier's sufficiency of proof needed to demonstrate a valid claim against any of the Debtors by a preponderance of the evidence, and do not articulate arguments that effectively counter those set forth by the Borrower Trust in the Objection, the Objection should be sustained.

## C.     Rozier Is Improperly Attempting to Amend the Proofs of Claim

25.     Rozier has filed two proof of claim forms with KCC that are reflected on the Claims Register. Rozier has improperly attempted to amend her Proofs of Claim after the General Bar Date, and such amendments should not be permitted. Over the course of the Chapter 11 Cases, Rozier has attempted to alter the priority of her claim, increase the asserted amount of damages against GMACM and add additional claims as purported bases for recovery against the Debtors. *See* Objection ¶¶ 66, 141. Rozier never sought leave of the Court to file an

amendment to either Proof of Claim (*see id.* ¶¶ 62, 66, 141; *see also* Horst Declaration ¶ 31), a fact that Rozier does not deny in the Response.

26.    The Debtors and the Borrower Trust have worked throughout the Chapter 11 Cases to act fairly and facilitate the claims process for Borrowers, particularly Borrowers acting *pro se*.  Seeking entry of the Procedures Order was part of that effort.  Pursuant to the Procedures Order, the Borrower Claim Procedures required the Debtors to furnish a Request Letter to Borrowers who filed certain Borrower Claims.  *See* Objection ¶ 63.  The Borrower Trust does not contest that Rozier, a recipient of such letters, provided timely responses to the Request Letters.  However, Rozier misunderstands the Debtors' purpose for sending out the Response Letters.  The Debtors mailed the Request Letters to the extent the Debtors deemed it useful to conduct further analysis of a claim prior to objecting to such claims in an "attempt to obtain information regarding the factual and legal basis *of the respective asserted Borrower Claim*."  *See* Procedures Order at 3-4 (emphasis added).  The purpose of the Request Letters was **not**, as Rozier believes, to "open[] the door for [Rozier] to include all of [the Debtors'] bad acts in the subsequent filing . . . [as a] demand for a final claim."  *See* Rozier declaration in support of Motion to Strike Horst Declaration ¶ 39.  Rather, the Request Letters were intended to assist the Debtors to gain a better understanding of the allegations that had been included in the filed proofs of claim forms on the Claims Register.  The Request Letters were not the proverbial "second bite of the apple" to let Borrowers re-do and exponentially augment their damages request against the Debtors.  Such a procedure would be unfair to Borrowers as a whole, and would completely derail the claims reconciliation process.  Accordingly, the Debtors and Borrower Trust, as applicable, reviewed Rozier's submissions to see whether they provided any

further support for the causes of action already asserted against the Debtors in the Proofs of Claim.

27.    Assuming *arguendo* that Rozier's post-petition submissions and filings, subsequent to her Proofs of Claim submissions, were intended to be a post-General Bar Date amendment to one or more of the Proofs of Claim, they do not meet the standards that courts in this district apply when determining whether to allow post-bar date amendments to proofs of claim.  *See Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115, 133 (2d Cir. 2005) (describing a two-step inquiry to consider allowing a post-bar date amendment: (i) whether the amendment "relates back" to a timely filed claim; and (ii) whether allowing the amendment would, among other things, unduly prejudice the opposing party).  The "relation back" inquiry considers whether the purported amendment to a proof of claim "1) corrects a defect of form in the original claim; 2) describes the original claim with greater particularity; or 3) pleads a new theory of recovery on the facts set forth in the original claim." *Id.* (quoting *In re McLean Indus., Inc.*, 121 B.R. 704, 708 (Bankr. S.D.N.Y. 1990)).

28.    Here, there is no evidence that Rozier's responses to the Request Letters or Motions for Payment correct a defect of form in either of Rozier's Proofs of Claim.  Further, the content of both Rozier's responses to the Request Letters and the Motions for Payment, in substance, "does not describe the original claim[s] with greater particularity" (*see id.*) but rather proffers <u>new</u> claims against the Debtors[12] and cannot "be fairly characterized as an amendment

---

[12]    The Response lists the claims Rozier asserts against the Debtors:

    (a)  loss of salary as Chief Engineer, Air-to-Ground Missile, U.S. Navy,  the retirement benefits this lost career path would have generated;
    (b)  Money wrongfully collected under the fake note;
    (c)  Intentional infliction of emotional harm;
    (d)  RESPA violations
    (e)  Additional student loan interest that is accruing as Rozier fails to meet that debt, paid directly to Sallie Mae;

(Cont.'d)

ny-1160814

of a timely filed claim . . . ."  *In re McLean Indus., Inc.*, 121 B.R. 704, 708 (Bankr. S.D.N.Y. 1990) (stating that the amendment "cannot be used to create a new claim").  "The claim asserted in the amendment must essentially arise out of the same conduct, transaction or occurrence that forms the basis of the original claim. . . . [where] a claim asserted in an amendment will generally not be allowed where it is based upon facts which were not asserted in the original claim."  *In re Mercer's Kwik Stop Food Stores, Inc.*, No. 90-02046, 1993 WL 761989, at *2 (Bankr. N.D.N.Y. July 2, 1993) (internal citations omitted); *cf. In re Carmelo Bambace, Inc.*, 134 B.R. 125, 130 (Bankr. S.D.N.Y. 1991) (amendment not allowed even though new claim was based upon facts which were similar to those which gave rise to original claim).[13]  Further, for these later-filed claims "to be an amendment to [the] first claim, rather than a new claim, 'the second claim should not only be of the same nature as the first but also reasonably within the amount to which the first claim provided notice.'"  *In re Mercer's Kwik Stop Food Stores, Inc.*, 1993 WL 761989, at *2 (internal citations omitted).

29.    Should the Court find that Rozier's submissions relate back to the timely filed Proofs of Claim, permitting such amendments would, among other things, unduly prejudice the Debtors' estates.  Courts consider the following five equitable factors in determining whether to allow an amendment:

> (1) undue prejudice to opposing party; (2) bad faith or dilatory behavior on the part of the claimant; (3) whether other creditors would receive a windfall were the amendment not allowed; (4) whether other claimants might be harmed or prejudiced; and (5) the justification for the inability to file the amended claim at the time the original claim was filed.

---

(f)  Expenses; [and]
(g)  Punitive damages.

*See* Response ¶ 19.

[13]    Even if there is overlap between the prior claims and Rozier's later submissions, this in and of itself should not be the basis to allow late claims or amendments.

18

*Integrated Res., Inc. v. Ameritrust Co. Nat'l Ass'n (In re Integrated Res., Inc.)*, 157 B.R. 66, 70

(S.D.N.Y. 1993) (citation omitted); *see also In re Enron Corp.*, 419 F.3d at 133.  "The critical

consideration is whether the opposing party will be unduly prejudiced by the amendment."  *In re*

*Integrated Res., Inc.*, 157 B.R. at 70 (citation omitted).   Here, there is no question that the

equitable factors fall in the Borrower Trust's favor.   To allow Rozier's proposed amendments

would be unduly prejudicial to both the Borrower Trust and its beneficiaries for Rozier to be

allowed to now assert $100,000,000 on account of the GMACM Claim – **more than 150 times**

the $666,000 value this claim was initially assigned.   The Borrower Trust "would be unduly

prejudiced due to the possibility of opening the floodgates for other similarly situated creditors to

come forward to amend their claims or file late claims . . . ."  *See In re Enron Creditors Recovery*

*Corp.*, 370 B.R. 90, 99 (Bankr. S.D.N.Y. 2007).   In addition, Rozier has not presented any

reasonable justification for her inability to file the contents of the amended claims at the time the

original claims were filed.

## CONCLUSION

WHEREFORE, the Borrower Trust respectfully request that the Court overrule

the Response and grant the relief requested in the Objection by disallowing and expunging the

Proofs of Claim in their entirety.

ny-1160814

Dated: October 20, 2014          /s/ Norman S. Rosenbaum
      New York, New York          Norman S. Rosenbaum
                                    Jordan A. Wishnew
                                    Meryl L. Rothchild
                                    MORRISON & FOERSTER LLP
                                    250 West 55th Street
                                    New York, New York 10019
                                    Telephone:  (212) 468-8000
                                    Facsimile:  (212) 468-7900

                                    *Counsel for The ResCap Borrower Claims Trust*

20