**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et. al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## OPPOSITION AND RESPONSE OF CLAIMANT JAMES P DEMETRIOU TO RESCAP BORROWER CLAIMS TRUST'S SEVENTY-FIFTH OMNIBUS OBJECTION TO CLAIMS (BORROWER CLAIMS)

**PLEASE TAKE NOTICE** that the undersigned Claimant, James P. Demetriou

("Claimant"), whose claim (the "Claim") is listed as item #4 on Exhibit A to the Proposed Order

submitted by the ResCap Borrower Claims Trust (the "Trust") as part of the Trust's Seventy-

Fifth Omnibus Objections to Claims (the "Objection"), hereby files this Opposition and

Response to the Objection, and in support thereof, respectfully submits:

      1.    While the Trust holds a position of successor in interest to the Debtors contained

in the caption of this proceeding, the Debtors, collectively or separately as may be applicable to

the claims of Claimant, will be referred to in this opposition as the "Debtors".

      2.    The plight of Claimant that has brought us to this point is consistent with the

claims of tens and hundreds of other behemoth companies who were victims of Debtors'

financial schemes.

      3.    While Claimant will provide significant information regarding Debtors' abuse of

processes and resultant losses to Claimant herein below, yes, the Financial Guaranty Insurance

Company lawsuit (the "FGIC Lawsuit") provided the factual background that establishes the

RECEIVED
OCT 17 2014
BANKRUPTCY COURT, SDNY

basis upon which this Court should not allow the "too big to fail" Debtors to come out standing while the sacrificial lamb homeowner is left destitute and homeless.

4.      Further, Debtors' settlement of the FGIC Lawsuit (among hundreds of others) whether or not liability was officially conceded, lends credence to the claims of those hundreds of thousands of pawns (borrowers) from whom Debtors now seek to be relieved upon technicalities.

5.      A brief review of the processes that led to the loans of which this Claimant's claim is part is in order:

Contrary to the Trust's assertions in the Objection, Debtors' involvement with Claimant's loan was not limited to its roles as purchaser and servicer.

Debtors had a pre-arranged alliance with Mortgage Lenders Network USA, Inc. ("MLN") to provide a warehouse facility and revolving line of credit for the purpose of MLN making loans and mortgages.

Not only did Debtors provide MLN with the money MLN used to make loans, Debtors provided MLN the avenue by which MLN could divest itself of those loans, which loans Debtors then deposited into Asset-backed Securities funded by Investors, thereby allowing MLN and Debtors to make money from the investors as well as the fees for servicing the loans.

Consistent therewith, it didn't matter how good the loans were because MLN and Debtors made money, and the investors were left holding the bag. MLN was secure in knowing that it did not have to make sure any of the loans were good, they could by-pass proper review and terms of the loans did not matter. They were right away turning the loans around to Debtors, getting paid for the task and being funded to start the process all over again.[1]

Investors sought to recoup from title insurance, and title insurance, in turn, came back to Debtors, and Debtors, through this Chapter 11, settled the losses,

_____

[1]Parenthetically, Claimant's knowledge of these facts are derived from the fact that the broker who brokered Claimant's loan was, at the time, a client of Claimant who provided this information to Claimant. Upon information and belief, that client was ultimately punished for his involvement with MLN.

2

leaving Debtors, title insurance and investors licking their wounds, yet coming out standing up.

In the meantime, however, the sacrificial lambs were all of the homeowner/borrowers left with properties valued less then their mortgage, an economic debacle that reduced incomes below levels capable of sustaining payments, and, in many cases, ultimately destitute and homeless.

6. Now, in an effort to further secure their position, the "too big to fail" Debtors are asking this Court to sanction their actions and efforts.

7. The RASC Series 2007-EMX1 Trust (the "EMX Trust"), into which Claimant's mortgage was deposited[2], seemed to have been the last of the series of such asset-backed securities, inasmuch as it is well documented that the mortgage and real estate crash commenced in early 2007.

As with other homeowners, the crash left Claimant with income reduced by almost 70%, and property values reduced by 60% or more, resulting in an inability to pay the mortgage and inability to sell the property.

8. Debtor Homecomings Financial commenced a foreclosure action (the "Underlying Foreclosure Action") against Claimant in June, 2007.

9. Claimant defended the Underlying Foreclosure Action by alleging lack of standing, as the documents relied upon by the Plaintiff therein failed to show a proper chain of title from inception of the loan to the ultimate named plaintiff in the proceeding, and under applicable Florida law, the foreclosing plaintiff must be able to prove standing to bring the action

---

[2]Interestingly, though not factually known, the mere title of the EMX Trust implicates Debtors' knowledge and involvement with Emax Financial Group, LLC, one of the named parties in the chain of assignments of Claimant's mortgage as acknowledged by the Trust in this Objection.

3

at the time the action is commenced. As will be seen herein below, Florida courts have ruled that

a defect in standing is not one that can be cured after the commencement of the action.

10.    Notwithstanding the judgment entered in September, 2007, later review of the

proceedings in the Underlying Foreclosure Action, as will be detailed herein, shows that such

judgment was secured by fraud upon the Court in St. Johns County, FL.

11.    Each of the Trust's legal bases of the Objection against Claimant's claim will be

addressed separately below.

## *Res Judicata*

12.    While res judicata precludes relitigating issues of a judgment obtained "on the

merits", a case is not properly determined "on the merits" when fraud has been exercised upon

the court.

13.    At the time the judgment in the Underlying Foreclosure Action was rendered,

issues that bogged down the mortgage foreclosure processes, e.g. robo-signing and fraudulent

documentation, were in their infancy and had not yet been revealed.

In Claimant's case, upon rendering judgment, the Court merely stated it had a

Note and a Mortgage, and therefore judgment would be entered.

14.    Soon after the initiation of this Chapter 11 proceeding, Debtors filed in the

Underlying Foreclosure Action a notice to amend the named bidder in a scheduled foreclosure

sale, providing the full name of the EMX Trust which, up to that time, had been withheld by

Debtors.

15.    The filing of such notice prompted Claimant to review the EMX Trust,

whereupon the FGIC Lawsuit was revealed, and further investigation revealed the thousands of

4

fraudulent claims that foreclosing plaintiffs across the country had submitted documents in

foreclosure actions that were fraught with improprieties that would otherwise render their

foreclosure actions meritless.

16.    This revelation prompted a new review of the documents submitted by Debtors to

the St. Johns County, FL Court in the Underlying Foreclosure Action, only to reveal that the

mortgage assignment submitted by Debtors in the Underlying Foreclosure Action and relied upon

by the Court in rendering judgment was not only not signed as indicated, but was most definitely

signed _after_ the commencement of the Underlying Foreclosure Action.

By not being signed until after the commencement of the Underlying Foreclosure

Action, it proved (a) that Claimant's defense of no standing was proper, and (b) Debtors

defrauded the Court and by-passed and avoided such defense with such fraudulent document.

17.    Inasmuch as the determination in a subsequent federal action is governed by the

rules of the state where the prior action occurred (Trust's section xii on "res judicata", page 14 of

Objection), Claimant respectfully submits that this Court, pursuant to Florida Statutes Section

702.07 has the jurisdiction and power to "...rescind, vacate, and set aside a decree of foreclosure

of a mortgage of property at any time before the sale thereof has been actually made pursuant to

the terms of such decree, and to dismiss the foreclosure proceeding..."

18.    Annexed hereto, marked Exhibit "A", is a copy of the Assignment of Mortgage

filed by Debtors, and submitted and represented to the St. Johns County Court as a legitimate

Assignment prior to commencement of the Underlying Foreclosure Action, and thereby

substantiating Debtors' claim of standing.

The Court's attention is respectfully invited to the Notary acknowledgment which

bears an expiration date of March, 2012.

19.     Inasmuch as Florida notary commissions are good for only 4 years (the Court is respectfully requested to take judicial notice thereof), this notary could only have been affixed, and the signature of the document completed, sometime after March, 2008.

Notwithstanding the same, the document is dated, and represented to have been signed, in June, 2007.

20.     The very nature of this fraudulent document shows that this Assignment of Mortgage into the named Plaintiff in the Underlying Foreclosure Action could not, under any circumstances, have been signed prior to the commencement of the Underlying Foreclosure Action.

This not only raises questions of fact upholding Claimant's defenses in the Underlying Foreclosure Action thereby requiring that summary judgment should have been denied, but shows the intent of the Debtors in prosecution of the Underlying Foreclosure Action to undertake any possible course of action to secure its foreclosure.

21.     If Debtors, through the Trust, are allowed to (a) successfully strike Claimant's claim and (b) continue to conduct a foreclosure sale, Debtors will have succeeded in (c) committing a fraud upon the Court, (d) having this Court sanction such fraud, (e) profiting from such fraud, (f) rendering Claimant homeless as a result of such fraud and (g) reaching a financial conclusion that only enriches the Debtors'.

22.     Respectfully, and following Florida Statutes §702.07, this Court has the inherent authority and power to "...rescind, vacate, and set aside..." the foreclosure judgment against Claimant.

6

23.     Based upon Debtors' own actions, res judicata has no application with respect to Claimant's claim.

24.     To the contrary, this Court should undertake the proper steps to vacate the judgment relied upon by Debtors and dismiss the Underlying Foreclosure Action.

***Standing Issues***

25.     Following the foregoing discussion on res judicata, the applicability thereof to Claimant's claim standing issues is only further enhanced.

26.     As acknowledged in the Objection, Claimant, in the Underlying Foreclosure Action, alleged that Plaintiff therein had no standing to bring the action.

27.     Applicable Florida Law and the facts presented not only to the Court in the Underlying Foreclosure Action but in this Opposition to the Objection demonstrate that the Plaintiff in the said Underlying Foreclosure Action did not have standing to bring the action.

28.     As with most states, Florida law requires that the complaining plaintiff in foreclosure must prove its standing to bring the foreclosure action at the time the complaint is filed and the action commenced.

29.     At inception of the Underlying Foreclosure Action, Plaintiff alleged, as pertinent herein, (a) that the Note was lost and therefore not annexed to the complaint, and (b) that Plaintiff was entitled to bring the action by virtue of an assignment of mortgage "...to be recorded." A copy of the complaint (without exhibits) is annexed hereto as Exhibit "B".

30.     Complainant filed an answer alleging lack of standing.  Inasmuch as Debtors and the Trust acknowledge such defense in the Objections, a copy of the answer is not annexed.

31.     Almost 10 months after commencement of the action, and as part of Plaintiff's

7

motion for summary judgment, Plaintiff submitted an affidavit in support of summary judgment,

sworn to on April 8, 2008, stating that the Note had now been found. Even with such assertion,

neither a copy nor the original was provided to the Court. A copy of the said affidavit is annexed

hereto as Exhibit "C".

32.    Not until the final hearing on summary judgment on September 2, 2008 did

Plaintiff deliver the original Note and Mortgage to the Court.

33.    The Note provided to the St. Johns County FL Court on September 2, 2008

contained an underlined special endorsement from Mortgage Lenders Network to Emax Financial,

and a separate Allonge from Emax to Residential Funding, followed by another special

endorsement on the Allonge from Residential Funding to the named Plaintiff (US Bank as

Trustee, without identifying the EMX Trust). A copy of the last page of the Note containing the

endorsement and the Allonge are annexed hereto as Exhibit "D".

34.    Separately from the filing of the Note and Mortgage, and significantly, more than

3 months before filing the original Note and Mortgage, Plaintiff, on July 28, 2008, filed the

Assignment of Mortgage (Exhibit "A" hereto), from Mortgage Electronic Registration Systems,

Inc. ("MERS") to the named Plaintiff US Bank as Trustee (again without identifying the EMX

Trust).

35.    Significantly, Plaintiff produced nothing to show the chain of transfers of the

Mortgage to coincide with the represented chain of transfers of the Note.

36.    Following *WM Specialty Mortgage, LLC v. Salomon*, 874 So.2d 680 (4th DCA,

---

[3]The significance of the absence of a date is discussed infra regarding standing to bring
the action.

8

2004), which holds that by merely holding the Note, Plaintiff is entitled to enforce the same as well as the Mortgage, the St. Johns County, FL Court granted summary judgment.

37.    The Court did not exhibit the Note and Mortgage to Claimant, and did not review the assignments or executions thereof, relying instead, upon the representations of Debtors' counsel as officers of the Court.

38.    However, the fact that the assignments of the Note are undated and the Assignment of Mortgage is fraudulently executed and could not have been executed prior to the commencement of the Underlying Foreclosure Action, there was no proof provided to the Court that the named Plaintiff had standing to bring the Underlying Foreclosure Action at the time the action was commenced.

39.    Under Florida law, with a _special_ endorsement to a Note, Plaintiff is required to prove that the named Plaintiff in the lawsuit was the holder of the Note <u>at the time</u> the lawsuit was filed.

40.    Significantly, the Florida Court that decided *WM*, supra, also decided *McLean v. JP Morgan Chase Bank National Association*, 79 So.3d 170, and specifically distinguished *WM* on the same grounds that existed in the Underlying Foreclosure Action.

41.    In *McLean*, the note "...bore a _special_ endorsement in favor of..." plaintiff, which, the Court continued, meant that plaintiff "...obtained standing to foreclose, at least at some point."

The Court stated, at page 173:

"If the note does not name the plaintiff as payee, the note must bear a special endorsement in favor of the plaintiff or a blank endorsement."
and:

9

"'...the plaintiff's lack of standing at the inception of the case is <u>not a defect that may be cured</u> by the acquisition of standing <u>after the case is filed</u>.'" (citations omitted), (emphasis supplied).

At Page 174, the Court added:
"Where the Plaintiff contends that its standing to foreclose derives from an endorsement of the note, the plaintiff must show that the endorsement occurred prior to the inception of the lawsuit." (Emphasis supplied).

42.    The existence of the undated special endorsements required Plaintiff to show <u>when</u> the endorsements were made in order to affirmatively prove standing at the time this action was filed.

43.    In *McLean*, the Court ruled that with a special endorsement to Plaintiff, <u>other evidence must be introduced</u> to indicate the timing of that special endorsement in order to justify its standing to bring the foreclosure action.

44.    In the Underlying Foreclosure Action, since there were no dates on the special endorsements, the court was required to turn to other proof.

45.    The only proof provided by Plaintiff was the (now known to be) fraudulent Assignment of Mortgage.

46.    That Mortgage Assignment, although on its face dated prior to the filing of the action, was actually signed (as noted by the notary commission expiration date) at least, if not more than, 9 months <u>after</u> the filing of the Underlying Foreclosure Action.

47.    Accordingly, as in *McLean*, there was no standing to bring the Underlying Foreclosure Action at the time it was commenced.

48.    In *McLean*, the Court found that no record evidence was provided "...to demonstrate that (plaintiff) had standing to foreclose at the time the lawsuit was filed", noting (a)

10

there was **no date** on the special endorsement, (b) the assignment of mortgage was **dated after** the lawsuit was filed, and ( c) there was **no other supporting evidence** to reflect the date the plaintiff became the holder of the note.

        The Court found there was no standing, and reversed judgment of foreclosure.

    49.    In the Underlying Foreclosure Action by Debtors against Claimant, just as in *McLean*, (a) Plaintiff's Note contains **special** endorsements that are **undated**, (b) the Assignment of Mortgage, by virtue of its fraudulent execution, is **dated after** the lawsuit was filed, and ( c) there is **no other evidence**, either in pleadings or proof, showing that at the time the lawsuit was filed Plaintiff was entitled to enforce the instrument.

    50.    The fraudulent document, first revealed 4 years after judgment and after the commencement of this Chapter 11 proceeding, provides proper proof of fraud on the Court by Debtors warranting a vacatur of the judgment of foreclosure upon the grounds that there was no standing to bring the Underlying Foreclosure Action at the time it was commenced.

    51.    Debtors now seek the protection of this Court to sanction their fraud, deny Claimant recovery of the damages therefor, and, to boot, seek recovery of the property relying upon the fraudulent judgment.

### *Wrongful Foreclosure*

    52.    With nothing more, Claimant respectfully submits to this Court that the foregoing facts should be sufficient to hold that Debtors engaged in a "wrongful foreclosure", warranting the same to be vacated.

### *Estoppel by Waiver*

    53.    Each of the cases cited in the Objection indicates that application of the doctrine

of estoppel by waiver rests on the specific facts of the matter at hand.

None of the cases cited in the Objection makes the application of the doctrine automatic or *ipso facto*.

54.    While judicial estoppel is intended to protect the integrity of the judicial process by preventing the <u>intentional</u> assertion of inconsistent positions in different proceedings, the party asserting the doctrine must show: (1) an unequivocal assertion of law or fact by the offending party in one judicial proceeding, followed by (2) the assertion by that party of an <u>intentionally</u> inconsistent position of law or fact in a subsequent judicial proceeding, (3) in order to mislead the court and obtain <u>unfair</u> advantage as against another party.

55.    The key element is <u>intent</u>.

56.    Further, in both the *Rosenshein* decision cited in the Objection, as well as each of the other cited cases, the facts involved Chapter 11 cases in which creditors under a proposed plan of distribution were adversely affected by the <u>intentional</u> failure of having listed a claim in the schedule of assets.

57.    While the *Rosenshein* Court ignored the distinctions of 2 other cases in its district, it still acknowledged those cases on the basis of their application to varying factual distinctions.

58.    Those factual distinctions are very relevant in the instant proceeding.

59.    In one such case, *Reciprocal Merchandising Services, Inc., v. All Advertising Associates, Inc., et. al.*, 163 B.R. 689 (S. D., 1994), the Court stated:

"...the circumstances under which the doctrine is to be applied are not clear. (citation omitted). Indeed, there is some dispute as to whether judicial estoppel is a viable doctrine in this Circuit. *See In re Roundabout Theatre Co.*, 131 B.R. 14, 18 n. 4. (S.D.N.Y.1991); Accordingly, the doctrine has <u>only</u> been invoked <u>in 'extreme cases</u> in which the inconsistent positions have been the

product of <u>fraud or other deliberately misleading conduct.</u>'" (citations omitted)
(emphasis supplied).

60.     The Court continued, at page 696:

"In order to assert a defense based on the doctrine of judicial estoppel, a
party must show:
(1) an unequivocal assertion of law or fact by one party in one judicial
proceeding, (2) the assertion by that party of an intentionally inconsistent position
of law or fact in a subsequent judicial proceeding, (3) in order to mislead the court
and obtain unfair advantage as against another party",

and ruled that under the facts of that case, the party asserting the doctrine failed to set forth any

evidence of the other party's deliberate <u>intention</u> either to mislead the Bankruptcy Court or to

obtain unfair advantage; and concluded that since the reorganization plan in that case provided

for all approved creditors to receive the full value of their claims, it was not a case in which the

party sought to conceal potential recoveries in order to induce creditors to accept a compromise.

61.     In the other "exception" case, *In re Roundabout Theatre Co.,* 131 B.R. 14 (S.D.,

1991), the same Court stated, at page 17, that "(t)he party asserting estoppel must show <u>with

respect to himself</u>: (1) lack of knowledge of the true facts; (2) <u>reliance</u> upon the conduct of the

party estopped; and (3) a prejudicial change in his position." (emphasis supplied).

62.     The Court found that although the party's (against whom the doctrine was

asserted) schedules were inconsistent with his subsequent claim, he filed his claim early enough

that the party asserting the doctrine did not lack knowledge of the actual facts and could not

reasonably have relied on the schedules.

63.     It is very important to note that in each of these cases, as stated above, the issue of

reliance was based on the acceptance or rejection of a plan of reorganization in Chapter 11.

64.     The distinction with Claimant's personal Chapter 7 bankruptcy is significant.

13

65.    To believe that Claimant sought to use his own bankruptcy as a shield, intending to then turn around and use his present Claim as a sword in an attempt to abuse the judicial system, is as ridiculous a concept as could be conceived.

In actuality, it is Claimant who has been, and continues to be, severely prejudiced by the actions of Debtors.

66.    First, let us briefly discuss this from a practical viewpoint.

67.    Claimant's claim has been listed, it is believed, in the class of claims that, if approved by this Court, will be paid at 31% of the claimed amount.

Accordingly, at best case scenario, on a claim of $1,100.000 Claimant would receive $341,000.

68.    By contrast, Claimant's schedules attached to the Objection indicate primarily real property mortgage debt aggregating $4,000,000.

69.    While Claimant had been seeking modification from Debtors at current market and income values, Debtors continuously refused to consider modification without full recovery under the original mortgage documents.

70.    Claimant filed his Chapter 7 petition on the eve of, and to stop, a foreclosure sale that Debtors would not cancel.

71.    Claimant filed his petition and schedules frantically to prevent the foreclosure sale. At the time there was no present action from this proceeding, and the Claimant's claim herein was overlooked.

72.    While simultaneously defending a motion by another mortgagee for relief from the automatic stay, Claimant was preparing an adversary proceeding to be filed against Debtors

14

to vacate their judgment in the Underlying Foreclosure Action.

73.    During that process, the Bankruptcy Court in Florida granted discharge (Claimant didn't even get the notice prior to appearing in Court on the other mortgagee's motion for relief from the automatic stay......that's how quickly it was issued).

74.    Debtors have always known that Claimant disputed their mortgage, and the same was marked "disputed" in Claimant's schedules.

75.    By contrast, Debtors have failed to show (1) Claimant intended to abuse the judicial system by omitting this Claim from his schedules, (2) that Debtors relied in any manner upon such omission to their detriment or (3) that any creditors have been damaged thereby.

76.    To the contrary however, and primarily as a result of Debtors' fraudulent conduct throughout all dealings with the Claimant, Claimant stands to lose his primary homestead residence along with 2 other properties, now has a credit rating that is virtually non-existent, and has been trying to sustain his family on income levels 2/3 below those prior to the economic debacle caused by, inter alia, these Debtors and similarly acting other mortgage lenders.

77.    To ask this Court to believe that Claimant's omission of this Claim was intentional in order to collect a prospective $341,000 and not apply the same against over $4,000,000 of secured real property debt, well.......you do the math.

78.    In actuality, by recovering on this Claim, Claimant stands to be able to remove other unsecured debt.

Specifically, Claimant's largest unsecured creditor, the Internal Revenue Service, still maintains its claim against Claimant's spouse inasmuch as the debt is a joint obligation. At the very least, Claimant can use a recovery herein to clear Claimant's spouse's remaining debt

with the IRS.

So, while Debtors will have this Court believe that Claimant is trying to abuse the

Court and Debtors for a windfall, the opposite is quite the reality.

79.    Let us not lose sight of what really was created by these Debtors:

    a.    they used virtually millions of unsuspecting borrowers[4], investors and insurance companies to create a billion dollar windfall, only to use the benefits of this Court to shelter most of that windfall,

while at the same time

    b.    attempting to prevent what amounts to pyrrhic solace for some of those unsuspecting borrowers who might be able to put some part of their lives back together.

80.    Respectfully, estoppel by waiver is not a proper claim against this Claimant, but

maybe the other way around.

## CONCLUSION

81.    Based upon the foregoing, Claimant respectfully requests this Court deny

Debtors' and Trust's Objections to Claimant's Claim, and affirmatively allow the claim, together

with such other and further relief as the Court deems just and proper in the circumstances.

Dated: October 15, 2014
    St. Augustine, FL

                    JAMES P. DEMETRIOU
                    Claimant, Pro Se
                    650 South Loop Parkway
                    St. Augustine, FL 32095
                    Ph:    904-495-8305
                    Fx:    800-834-9325
                    Email: jim@demetrioulaw.com

---

[4]Let us not forget that the EMX Trust which contained thousands of sub-prime loans was just one of hundreds if not thousands of such vehicles created by Debtors prior to 2007

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
|  | ) |  |
| RESIDENTIAL CAPITAL, LLC, et. al., | ) | Chapter 11 |
|  | ) |  |
| Debtors. | ) | Jointly Administered |

## CERTIFICATION OF SERVICE

I hereby certify that on October 16, 2014, I served the Claimant James P. Demetriou's Opposition and Response to ResCap Borrower Claims Trust's Seventy-Fifth Omnibus Objecion to Claims (Borrower Claims) by depositing a true copy thereof, enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the United States Postal Service, via overnight Priority Mail Express, addressed to each of the following persons set forth at the address set forth after each name as provided in the Notice of Objection:

Clerk of the Bankruptcy Court
One Bowling Green
New York, NY 10004-1408

Chambers
Hon. Martin Glenn
One Bowling Green
New York, NY 10004-1408

Morrison & Foerster LLP
Counsel to the ResCap Borrower Claims Trust
250 West 55th Street
New York, NY 10019

Office of the United States Trustee
201 Varick Street, Suite 1006
New York, NY 10014

Polsinelli, PC
ResCap Borrower Claims Trust
900 Third Avenue, 21st Floor
New York, NY 10022

Quest Turnaround Advisors
ResCap Liquidating Trust
800 Westchester Avenue, Suite S-520
Rye Brook, NY 10573

Dated: October 15, 2014
    St. Augustine, FL

JAMES P. DEMETRIOU, Claimant, Pro Se
650 South Loop Parkway
St. Augustine, FL 32095
Ph:    904-495-8305,      Fx:    800-834-9325
Email: jim@demetrioulaw.com

17

EXHIBIT "A"

Public Records of St. Johns County, FL Clerk # 2008021090, O.R. 3085 PG 1081,
04/04/2008 at 02:16 PM REC $5.00 SUR $5.00

12-12020-mg    Doc 7660    Filed 10/17/14    Entered 10/20/14 15:03:01    Main Document
Pg 19 of 32



IN/RET ENV ~

Prepared by:
Record & Return to:    DAVID J. STERN, ESQ
                       801 S. University Drive Suite 500
                       Plantation, FL 33324
                       07-91230 HCNW

This space is for recording purposes only

## ASSIGNMENT OF MORTGAGE

### KNOW ALL MEN BY THESE PRESENTS:

*THAT* MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

Residing at or located at c/o HOMECOMINGS FINANCIAL, LLC, ONE MERIDIAN CROSSING #100, MINNEAPOLIS, MN 55423, herein designated as the assignor, for and in consideration of the sum of $1.00 Dollar and other good and valuable consideration, the receipt of which is hereby acknowledged, does hereby grant, bargain, sell, assign, transfer and set over unto U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE residing or located at: C/O HOMECOMINGS FINANCIAL, LLC, ONE MERIDIAN CROSSING, SUITE 100, MINNEAPOLIS, MN 55423 herein designated as the assignee, the mortgage executed by JAMES DEMETRIOU AND CONSTANCE DEMETRIOU, HUSBAND AND WIFE recorded in ST. JOHNS County, Florida at book 2794 and page 1149 encumbering the property more particularly described as follows:

LOT 13, MARSHALL CREEK DRI VILLAGE CENTER UNIT ONE - TRACT C-1, ACCORDING TO THE MAP THEREOF AS RECORDED IN MAP BOOK 45, PAGE 25 AND 26, OF THE PUBLIC RECORDS OF ST. JOHNS COUNTY, FLORIDA.

together with the note and each and every other obligation described in said mortgage and the money due and to become due thereon

TO HAVE AND TO HOLD the same unto the said assignee, its successors and assigns forever, but without recourse on the undersigned.

Pursuant to the provisions of Sec. 689.071, Florida Statutes, the within named Trustee has the power and authority to protect, conserve and to sell, or to lease, or to encumber, or otherwise to manage and dispose of the above-described mortgage and the real property encumbered thereby.

*In Witness Whereof*, the said Assignor has hereunto set his hand and seal or caused these presents to be signed by its proper corporate officers and its corporate seal to be hereto affixed.

Signed in the presence of:                MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

                                          BY:
ATTEST:                                   PRINT NAME: Cheryl Samons
WITNESS:                                  TITLE: ASSISTANT SECRETARY
Print Name: Audrey Scott

WITNESS: Michelle L. Camacho
Print Name: Michelle L. Camacho
STATE OF Fl
COUNTY OF Brow.

I PERSONALLY APPEARED BEFORE ME, the undersigned authority in and for the aforesaid county and state, on this the 18 day of June, 20 0, within my jurisdiction, the within named Cheryl Samons who acknowledged to me that (s)he is ASSISTANT SECRETARY and that for and on behalf of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. and as its act and deed (s)he executed the above and foregoing instrument, after first having been duly authorized by MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. to do so.

WITNESS my hand and official seal in the County and State last aforesaid this 18 day of June 20 07.

                                          Michelle L. Camacho
                                          NOTARY PUBLIC

MICHELLE L. CAMACHO
MY COMMISSION # DD760715
EXPIRES March 24, 2012
Fl Notary Discount Assoc. Co.

IN THE CIRCUIT COURT OF THE 7TH
JUDICIAL CIRCUIT, IN AND FOR
ST. JOHNS COUNTY, FLORIDA
GENERAL JURISDICTION DIVISION
CASE NO: CA07-0784 DIV. 55

U.S. BANK NATIONAL
ASSOCIATION AS TRUSTEE
     PLAINTIFF
VS.

JAMES DEMETRIOU, ET AL
    DEFENDANT(S)

## NOTICE OF FILING ASSIGNMENT OF MORTGAGE

Plaintiff, by and through its undersigned counsel, hereby gives notice of filing the attached COPY ASSIGNMENT OF MORTGAGE in the Court file in this Cause.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing Notice of Filing was mailed this 29 day of July, 2008 to:

JAMES DEMETRIOU, ESQUIRE
PRO SE & ATTORNEY FOR CONSTANCE DEMETRIOU
3625 BYRON COURT
DOYLESTOWN, PA 18902-6516

PALENCIA PROPERTY OWNERS ASSOCIATION OF ST. JOHNS COUNTY, INC.
C/O FRED ANNON, REGISTERED AGENT
PALM COAST PROPERTY MANAGEMENT
7 FLORIDA PARK DRIVE NORTH
PALM COAST, FL 32137

STEVEN A. NISBET, ESQUIRE
ATTORNEY FOR UNITED STATES OF AMERICA
400 NORTH TAMPA STREET
PARK TOWER: SUITE 3200
TAMPA, FL 33602

CURRENT TENANTS
650 SOUTH LOOP PARKWAY
ST. AUGUSTINE, FL 32095

MARC BROWN
Law Offices of David J. Stern
900 South Pine Island Road, Suite 400
Plantation, FL 33324-3920
(954) 233-8000
Florida Bar #: 30077

Case #: 07-91230 HCNW

EXHIBIT "B"

IN THE CIRCUIT COURT OF THE 7TH JUDICIAL
CIRCUIT, IN AND FOR ST. JOHNS COUNTY, FLORIDA
GENERAL JURISDICTION DIVISION
CASE NO:

U.S. BANK NATIONAL ASSOCIATION AS
TRUSTEE

      PLAINTIFF
VS.

JAMES DEMETRIOU; CONSTANCE
DEMETRIOU; ANY AND ALL UNKNOWN
PARTIES CLAIMING BY, THROUGH,
UNDER, AND AGAINST THE HEREIN
NAMED INDIVIDUAL DEFENDANT(S) WHO
ARE NOT KNOWN TO BE DEAD OR ALIVE ,
WHETHER SAID UNKNOWN PARTIES MAY
CLAIM AN INTEREST AS SPOUSES, HEIRS,
DEVISEES, GRANTEES OR OTHER
CLAIMANTS; PALENCIA PROPERTY
OWNERS ASSOCIATION OF ST. JOHNS
COUNTY, INC.; UNITED STATES OF
AMERICA; JOHN DOE AND JANE DOE AS
UNKNOWN TENANTS IN POSSESSION

      DEFENDANT(S)

## COMPLAINT TO FORECLOSE MORTGAGE
## AND TO ENFORCE LOST LOAN DOCUMENTS

Plaintiff, sues the Defendant(s) and alleges:

### COUNT I

1. THIS IS AN ACTION to foreclose a Mortgage on real property in ST. JOHNS County, Florida.

2. This Court has jurisdiction over the subject matter herein.

3. On SEPTEMBER 28, 2006 JAMES DEMETRIOU AND CONSTANCE DEMETRIOU, HUSBAND AND
WIFE executed and delivered a Promissory Note and a BALLOON Mortgage securing payment of the Note
to the Payee named thereon.

4. The Mortgage was recorded on OCTOBER 5, 2006 in Official Records Book 2794 at page 1149, of the
Public Records of ST. JOHNS County, Florida, and mortgaged the property described in it, then owned by
and possessed by the Mortgagors, a copy of the Mortgage IS attached hereto as "Exhibit "A". Said
mortgage was subsequently assigned to U.S. BANK NATIONAL ASSOCIATION by virtue of an
assignment to be recorded.

5. The Plaintiff owns and holds the Note and Mortgage.

6. The property is now owned by the Defendant(s), JAMES DEMETRIOU AND CONSTANCE
DEMETRIOU, if living and if dead, the unknown spouses, heirs and beneficiaries of JAMES
DEMETRIOU AND CONSTANCE DEMETRIOU who hold(s) possession.

7. There is a default under the terms of the note and mortgage for the MARCH 1, 2007 payment and all
payments due thereafter.

8. All conditions precedent to the acceleration of this Mortgage Note and to foreclosure of the Mortgage have
been fulfilled or have occurred.

9. The Plaintiff declares the full amount payable under the Note and Mortgage to be due.

10. The borrowers owe Plaintiff $555,342.33 that is due in principal on the Mortgage Note and Mortgage, together with interest from FEBRUARY 1, 2007, late charges, and all costs of collection including title search expenses for ascertaining necessary parties to this action and reasonable attorney's fees.

11. Plaintiff is obligated to pay its attorney a reasonable fee for his services rendered.

12. Defendants, John Doe and Jane Doe, may claim an interest in the property described in the Mortgage as tenants pursuant to a lease agreement, either written or oral. Said interest is subject, subordinate, and inferior to the lien of the Mortgage held by Plaintiff.

13. In addition to all other named defendants, the unknown spouses, heirs, devisees, grantees, assignees, creditors, trustees, successors in interest or other parties claiming an interest in the subject property by, through under or against any of said defendants, whether natural or corporate, who are not known to be alive or dead, dissolved or existing, are joined as defendants herein. The claims of any of said parties are subject, subordinate, and inferior to the interest of Plaintiff.

14. The Defendant, PALENCIA PROPERTY OWNERS ASSOCIATION OF ST. JOHNS COUNTY, INC. is joined because it may claim some interest in or lien upon the subject property by virtue of possible association liens and assessments. Said interest is subject, subordinate, and inferior to the lien of the Mortgage held by the Plaintiff.

15. The Defendant, THE UNITED STATES OF AMERICA, may have some claim or demand in the subject property by virtue of a Federal Tax Lien, in the amount of $95,797.99 dated JUNE 5, 2007 and recorded on JUNE 14, 2007, in Official Records Book 2934 at page 197 filed against JAMES P. & CONSTANCE DEMETRIOU. Said interest is subject, subordinate and inferior to the lien of the Mortgage held by Plaintiff. See copy attached as "Exhibit B"

WHEREFORE, Plaintiff prays: That an accounting may be had and taken under the direction of this Court of what is due the Plaintiff for principal and interest on said Mortgage and Mortgage Note, and for the costs, charges and expenses, including attorney's fees and title search costs, and advancements which Plaintiff may be put to or incur in and about this suit, and that the Defendants found responsible for same be ordered to pay the Plaintiff herein the amounts so found to be due it; that in default of such payments, all right, title, interest, claim, demand, or equity of redemption of the Defendants and all other persons claiming by, through, under or against said Defendants since the filing of the Lis Pendens herein be absolutely barred and foreclosed and that said mortgage property be sold under the direction of this Court; that out of the proceeds of said sale, the amounts due the Plaintiff may be paid so far as same will suffice; and that a deficiency judgment be entered if applicable and only in the event no Order of Discharge of Personal Liability in Bankruptcy has been entered as to any of the Defendants who signed the subject Note and Mortgage and a Writ of Possession be issued.

## COUNT II

16. This is an action to enforce a lost, destroyed or stolen promissory note and Mortgage under Fla.Stat.§673.3091.

17. On SEPTEMBER 28, 2006, JAMES DEMETRIOU AND CONSTANCE DEMETRIOU, HUSBAND AND WIFE , executed and delivered a Promissory Note and a Mortgage securing payment of the Note to the payee named thereon.

18.  The Mortgage was recorded on OCTOBER 5, 2006 in Official Records Book 2794 at page 1149, of the Public Records of ST. JOHNS County, Florida, a substantial copy of the Mortgage being attached hereto as composite Exhibit "A" to the Plaintiff's original Complaint herein.

19.  The Plaintiff is not presently in possession of original Note and Mortgage. However,

   a)  the Plaintiff was in possession of the Note and Mortgage and was entitled to enforce THEM when the loss of possession occurred;

   b)  the loss of possession was not the result of a transfer by Plaintiff or lawful seizure; and

   c)  the Plaintiff cannot reasonably obtain possession of the Note and Mortgage because THEIR whereabouts cannot be determined.

20.  The terms of the Note are shown on the attached ledger of loan marked as Exhibit "_____".

21.  The Plaintiff will agree to entry of a Final Judgment of Foreclosure wherein it will be required to indemnify and hold harmless Defendant(s), JAMES DEMETRIOU AND CONSTANCE DEMETRIOU, from any loss they may incur by reason of a claim by another person to enforce the lost Note and Mortgage.

       WHEREFORE, Plaintiff requests entry of judgment confirming its right to enforce the lost Note and Mortgage under Fla. Stat.§673.3091.

TO ALL DEFENDANTS: PLEASE NOTE EFFECTIVE OCTOBER 13, 2006, 15 U.S.C. §1692G OF THE FAIR DEBT COLLECTION PRACTICES ACT HAS BEEN AMENDED AS FOLLOWS:

   (a) LEGAL PLEADINGS -- Section 809 of the Fair Debt Collection Practices Act (15 U.S.C. 1692g) is amended by adding at the end the following new subsection:

   "(d) Legal Pleadings -- A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a)."

                              LANCE E. FORMAN
                              Law Offices of David J. Stern, P.A.
                              Attorney for Plaintiff
                              801 S. University Drive Suite 500
                              Plantation, FL 33324
                              (954) 233-8000
                              Bar #: 0493864

07-91230 HCNW

EXHIBIT "C"

IN THE CIRCUIT COURT OF THE 7TH
JUDICIAL CIRCUIT, IN AND FOR ST. JOHNS
COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION
CASE NO: CA07-0784 DIV. 55

U.S. BANK NATIONAL
ASSOCIATION AS TRUSTEE

  PLAINTIFF
VS.

JAMES DEMETRIOU, ET AL

  DEFENDANT(S)

## AFFIDAVIT IN SUPPORT OF
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### EXHIBIT "A"

STATE OF FLORIDA

COUNTY OF BROWARD

  BEFORE ME, an officer authorized to take oaths this day personally appeared CHERYL

SAMONS who, being first duly sworn, deposes and says:

  1.  That your affiant is an authorized signatory of the Law Offices of David J. Stern,

P.A., as Attorney-in-Fact for HOMECOMINGS FINANCIAL, LLC., mortgage loan servicing

agent on behalf of the Plaintiff in the above styled action. HOMECOMINGS FINANCIAL,

LLC. has custody of and supervises the mortgage accounts and records of the Plaintiff including

the accounts and records of the note and mortgage herein involved.

  2.  I have personal knowledge of the facts set forth herein and am authorized to make

this Affidavit on behalf of the Plaintiff.

3.      I have direct access to or have been provided with the business records of the
Plaintiff concerning the Note and Security Agreement, the Mortgage and other loan documents
which are the subject matter of this lawsuit, such records were made at or near the time by, or
from information transmitted by, a person with knowledge, such records were kept in the course
of the regularly conducted business activity of the plaintiff, and it was the regular practice of the
plaintiff to make such records.

4.      That each and every allegation in the Complaint is true, except that the Plaintiff
has recovered the Original Note.

5.      Plaintiff is the owner and holder of said Note and Mortgage; none of the defaults
alleged in the Complaint filed herein has been cured; and there remains due to Plaintiff on
account of said Note and Mortgage, the following sums:

|  |  |
|---|---|
| PRINCIPAL BALANCE OF NOTE: | $555,342.33 |
| INTEREST THEREON AT $145.31 PER DIEM FROM FEBRUARY 1, 2007 TO MARCH 31, 2008: | $61,874.40 |
| LATE CHARGES: | $904.68 |
| INSPECTIONS CONDUCTED ON PROPERTY: | $123.75 |
| AD VALOREM TAXES: | $8,662.73 |
| HAZARD INSURANCE PREMIUMS: | $2,361.42 |
| TOTAL DUE TO PLAINTIFF AS OF THE DATE HEREOF (EXCLUSIVE OF COSTS INCURRED BY PLAINTIFF'S ATTORNEY): | $629,269.31 |

5a.     All late charges were accrued prior to acceleration of the loan.

6.      The street address of the subject property is 650 SOUTH LOOP PARKWAY, ST.
AUGUSTINE, FL 32095.

7.      Interest on the note at the aforesaid rate shall continue to accrue at the daily rate of

$145.31 for each day after the date of this affidavit; and subsequent to the defaults alleged in the

Complaint filed herein, Plaintiff engaged its attorney of record and in so doing agreed and

obligated itself to pay said attorneys a reasonable fee for their services.

8.      This affidavit is intended to show that there is available competent testimony

which can be introduced at trial, if necessary.

9.      The undersigned Agent further states that the below-described Power of Attorney

has not been heretofore revoked by the Principal and is still in full force and effect.

                    HOMECOMINGS FINANCIAL, LLC.


                    By: _____
                    CHERYL SAMONS
                    as Authorized Signatory of The Law Offices of
                    David J. Stern, P.A., pursuant to Corporate
                    Resolution, Its Attorney-in-Fact, pursuant to Power
                    of Attorney, both recorded in the Public Records of
                    Broward County, Florida

STATE OF FLORIDA
COUNTY OF BROWARD

        PERSONALLY APPEARED BEFORE ME, the undesigned authority in and for the
aforesaid County and State, on this, the  8  day of March, 2008 within my jurisdiction, the
within named CHERYL SAMONS, as Authorized Signatory of the Law Offices of David J.
Stern, P.A., as Attorney in Fact for and on behalf of HOMECOMINGS FINANCIAL, LLC.,
known to me to be the person whose name is subscribed to the foregoing instrument, and she
acknowledged to me that she executed the same for the purpose and consideration therein
expressed as the act and deed of said corporation and in the capacity therein stated.  She is
personally known to me and did take an oath.

        WITNESS my hand and official seal in the County and State last aforesaid this  8  day
of March, 2008.

NOTARY PUBLIC
**Jason Bennett**
Commission # DD517974
Expires March 15, 2010
STATE OF FLORIDA  Bonded Troy Fain - Insurance, Inc. 800-385-7019

NOTARY PUBLIC: _____
MY COMMISSION EXPIRES: _____

EXHIBIT "D"

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of the conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**12. DOCUMENTARY TAX**

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
                                  -Borrower
JAMES DEMETRIOU

                                  (Seal)
PAY TO THE ORDER OF:              -Borrower
EMAX FINANCIAL GROUP, LLC
WITHOUT RECOURSE
By MORTGAGE LENDERS NETWORK USA, INC

_____ (Seal)
                                  -Borrower

_____
SHENIDA REDDICKS
CLOSER    [Sign Original Only]

40/30 MULTISTATE BALLOON NOTE (ADJUSTABLE RATE) (Assumable)
4030N4FL 4/06                    Page 4 of 4

### ALLONGE TO PROMISSORY NOTE

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE FOLLOWING DESCRIBED NOTE, THIS
ALLONGE IS AFFIXED AND BECOMES A PERMANENT PART OF SAID NOTE

POOL:        0        LOAN ID:    10758552

NOTE DATE:    9/28/2006    LOAN AMOUNT:    $555,750.00

BORROWER NAME:  JAMES DEMETRIOU

PROPERTY ADDRESS:   650 SOUTH LOOP PARKWAY, SAINT AUGUSTINE, FL  32095

PAY TO THE ORDER OF

Residential Funding Company, LLC fka Residential Funding Corporation

WITHOUT RECOURSE

Emax Financial Group, Llc

By: _____

Name: John Hagebock

Title: Assistant Vice President

PAY TO THE ORDER OF
U.S Bank National Association as Trustee
WITHOUT RECOURSE
Residential Funding Company, LLC
By _____
Judy Faber, Vice President

## ALLONGE TO PROMISSORY NOTE

**FOR PURPOSES OF FURTHER ENDORSEMENT OF THE FOLLOWING DESCRIBED NOTE, THIS ALLONGE IS AFFIXED AND BECOMES A PERMANENT PART OF SAID NOTE**

POOL:        0        LOAN ID:   10758552

NOTE DATE:     9/28/2006     LOAN AMOUNT:        $555,750.00

BORROWER NAME:  JAMES DEMETRIOU

PROPERTY ADDRESS:   650 SOUTH LOOP PARKWAY, SAINT AUGUSTINE, FL  32095

PAY TO THE ORDER OF

Residential Funding Company, LLC fka Residential Funding Corporation

WITHOUT RECOURSE

Emax Financial Group, Llc

By:  _____

Name: John Hagebock

Title: Assistant Vice President

PAY TO THE ORDER OF
U.S Bank National Association as Trustee
WITHOUT RECOURSE
Residential Funding Company, LLC
By _____
Judy Faber, Vice President