Hearing Date: December 10, 2014 at 10:00 a.m. (ET)
Response Deadline: November 10, 2014 at 4:00 p.m. (ET)

MORRISON & FOERSTER LLP
250 West 55th St.
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
James A. Newton

*Counsel for the ResCap Borrower
Claims Trust*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
|  | ) |  |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11 |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

-------------------------------------------------------------------------

**NOTICE OF RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO
PROOF OF CLAIM NO. 2536 FILED BY STEPHANIE HARRIS**

**PLEASE TAKE NOTICE** that the undersigned have filed the attached *ResCap
Borrower Claims Trust's Objection to Proof of Claim No. 2536 Filed by Stephanie
Harris* (the "**Objection**").

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Objection will take
place on **December 10, 2014 at 10:00 a.m. (Eastern Time)** before the Honorable Martin
Glenn, at the United States Bankruptcy Court for the Southern District of New York,
Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004-
1408, Room 501 (the "**Bankruptcy Court**").

**PLEASE TAKE FURTHER NOTICE** that responses, if any, to the Objection must be made in writing, conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the Notice, Case Management, and Administrative Procedures approved by the Bankruptcy Court [Docket No. 141], be filed electronically by registered users of the Bankruptcy Court's electronic case filing system, and be served, so as to be received no later than **November 10, 2014 at 4:00 p.m. (Eastern Time)**, upon (a) the Chambers of the Honorable Martin Glenn, United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004-1408; (b) counsel to the ResCap Borrower Claims Trust, Morrison & Foerster LLP, 250 West 55th Street, New York, NY 10019 (Attention: Norman S. Rosenbaum, Jordan A. Wishnew and James A. Newton); (c) Litigation Counsel to the ResCap Borrower Claims Trust, Bradley Arant Boult Cummings LLP, 1819 Fifth Avenue North, Birmingham, AL 35202 (Attention:  John W. Smith T); (d) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014 (Attention: Linda A. Riffkin and Brian S. Masumoto); (e) the Office of the United States Attorney General, U.S. Department of Justice, 950 Pennsylvania Avenue NW, Washington, DC 20530-0001 (Attention: US Attorney General, Eric H. Holder, Jr.); (f)  Office of the New York State Attorney General, The Capitol, Albany, NY 12224-0341 (Attention: Nancy Lord, Esq. and Enid N. Stuart, Esq.); (g) Office of the U.S. Attorney for the Southern District of New York, One St. Andrews Plaza, New York, NY 10007 (Attention: Joseph N. Cordaro, Esq.); (h) counsel for Ally Financial Inc., Kirkland & Ellis LLP, 153 East 53rd Street, New York, NY 10022

(Attention: Richard M. Cieri and Ray Schrock); (i) counsel for the committee of unsecured creditors, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, NY 10036 (Attention: Kenneth Eckstein and Douglas Mannal); (j) counsel for Ocwen Loan Servicing, LLC, Clifford Chance US LLP, 31 West 52nd Street, New York, NY 10019 (Attention: Jennifer C. DeMarco and Adam Lesman); (k) counsel for Berkshire Hathaway Inc., Munger, Tolles & Olson LLP, 355 South Grand Avenue, Los Angeles, CA 90071 (Attention:  Thomas Walper and Seth Goldman); (l) Internal Revenue Service, P.O. Box 7346, Philadelphia, PA 19101-7346 (if by overnight mail, to 2970 Market Street, Mail Stop 5-Q30.133, Philadelphia, PA 19104-5016); (m) Securities and Exchange Commission, New York Regional Office, 3 World Financial Center, Suite 400, New York, NY 10281-1022 (Attention: George S. Canellos, Regional Director); (n) The ResCap Borrower Claims Trust, Polsinelli PC, 900 Third Avenue, 21st Floor, New York, NY 10022 (Attn: Daniel J. Flanigan);  (o) The ResCap Liquidating Trust, Quest Turnaround Advisors, 800 Westchester Avenue, Suite S-520, Rye Brook, NY 10573 (Attention: Jeffrey Brodsky); and (p) Stephanie Harris, P.O. Box 190504, Miami Beach, FL 33119.

**PLEASE TAKE FURTHER NOTICE** that if you do not timely file and serve a written response to the relief requested in the Objection, the Bankruptcy Court may deem any opposition waived, treat the Objection as conceded, and enter an order granting the relief requested in the Objection without further notice or hearing.

*[Remainder of Page Intentionally Left Blank]*

Dated:  October 20, 2014          /s/   Norman S. Rosenbaum
      New York, New York          Norman S. Rosenbaum
                                   Jordan A. Wishnew
                                   James A. Newton
                                   MORRISON & FOERSTER LLP
                                   250 West 55th St.
                                   New York, New York 10019
                                   Telephone: (212) 468-8000
                                   Facsimile: (212) 468-7900

                                   *Counsel for the ResCap Borrower*
                                   *Claims Trust*

**Hearing Date: December 10, 2014 at 10:00 a.m. (ET)**
**Objection Deadline: November 10, 2014 at 4:00 p.m. (ET)**

MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
James A. Newton

*Counsel for the ResCap Borrower*
*Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ------------------------------------------------- ) | | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| ------------------------------------------------- ) | | |

**RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO**
**<u>PROOF OF CLAIM NO. 2536 FILED BY STEPHANIE HARRIS</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

JURISDICTION, VENUE AND STATUTORY PREDICATE ................................................. 2

BACKGROUND ....................................................................................................................... 3

   I.   General Overview ........................................................................................................... 3

   II.   Claim Specific Background ............................................................................................ 4

      A.   Origination and Transfer of the Loan ..................................................................... 4

      B.   The Parties' Loss Mitigation Efforts ...................................................................... 5

         (i)   Pre-Foreclosure Work-out Attempts ................................................................. 5

         (ii)   The 2008 Foreclosure Proceeding and Claimant's First Bankruptcy Case ............. 6

      C.   The 2012 Foreclosure Proceeding ........................................................................ 10

      D.   Claimant's 2014 Bankruptcy Case ....................................................................... 11

      E.   The Proof of Claim ................................................................................................ 11

RELIEF REQUESTED ........................................................................................................... 12

OBJECTION ........................................................................................................................... 12

   I.   The Proof of Claim Is Not Properly Asserted Against ResCap ...................................... 12

   II.   Claimant Lacks Standing to Pursue Any Claims Allegedly Arising Prior to Claimant's
   February 2011 Bankruptcy Discharge and Any Such Claims Are Also Barred by the Doctrine
   of Judicial Estoppel ................................................................................................................. 13

      A.   Claimant Lacks Standing to Assert Claims Arising Prior to Her Chapter 7 Discharge
      in February 2011 ......................................................................................................... 14

      B.   Claimant Is Also Judicially Estopped from Asserting Claims Arising Prior to Her
      2011 Bankruptcy Discharge ....................................................................................... 16

   III.   The Proof of Claim Fails to Meet the Minimum Requirements to Support the Claim ... 18

      A.   The Claim Fails to Satisfy Basic Pleading Standards ................................................. 19

      B.   The Complaint Fails to Satisfy Rule 8(a) ................................................................... 19

         (i)   Claimant Cannot Maintain a Claim for Wrongful Foreclosure in the Absence of a
         Completed Foreclosure ..................................................................................... 20

         (ii)   Claimant Fails to State a Claim for Tortious Interference with Business
         Relationships ..................................................................................................... 22

         (iii)   The Documents Attached to the Proof of Claim Show that GMAC Mortgage Did
         Not Wrongfully Deny Claimant a Loan Modification ...................................... 23

      C.   At Most, Claimant Could Hold a Contingent Claim for Any Fees and Costs Incurred
      in Defending the  2012 Foreclosure Proceeding .......................................................... 27

      D.   The Proof of Claim Is Not Supported by Sufficient Documentation ........................ 28

NOTICE ................................................................................................................................... 29

i

CONCLUSION.................................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Ashcroft v. Iqbal,
   556 U.S. 662 (2009)...............................................................................................19

Ball v. Ball,
   160 Fla. 601, 36 So.2d 172 (Fla. 1948) ................................................................12

Bank of N.Y. Mellon v. Reyes,
   126 So. 3d 304 .....................................................................................................20

Bell Atlantic Corp. v. Twombly,
   550 U.S. 544 (2007)..............................................................................................19

Burnes v. Pemco Aeroplex, Inc.,
   291 F.3d 1282 (11th Cir. 2002) ............................................................................17

Chartschlaa v. Nationwide Mutual Insurance Co.,
   538 F.3d 116 (2d Cir. 2008) (per curiam).................................................14, 15, 16

Coffaro v. Crespo,
   721 F. Supp. 2d 141 (E.D.N.Y. 2010) ..................................................................17

Crawford v. Franklin Credit Management Corp.,
   758 F.3d 473 (2d Cir. 2014)......................................................................14, 17, 18

Echeverria v. BAC Home Loans Servicing, LP,
   900 F. Supp. 2d 1299 (M.D. Fla. 2012) aff'd, 523 F. App'x. 675 (11th Cir. 2013) ...............26

Essex Insurance Co. v. Universal Entertainment & Skating Center, Inc.,
   665 So. 2d 360 (Fla. Dist. Ct. App. 1995) ............................................................12

Forman v. Salzano (In re Norvergence, Inc.),
   405 B.R. 709 (Bankr. D.N.J. 2009) ......................................................................20

Galin v. I.R.S.,
   563 F. Supp. 2d 332 (D. Conn. 2008)...................................................................18

In re Coastal Plains,
   179 F.3d 197 (5th Cir. 1999) ................................................................................14

In re DJK Residential LLC,
   416 B.R. 100 (Bankr. S.D.N.Y. 2009) ..................................................................19

In re Lehman Bros. Holdings Inc.,
    No. 08-13555 (JMP), 2010 Bankr. LEXIS 4147 (Bankr. S.D.N.Y. Nov. 10, 2010) ...............29

In re Minbatiwalla,
    424 B.R. 104 (Bankr. S.D.N.Y. 2010) ................................................................................28, 29

In re Oien,
    440 B.R. ......................................................................................................................20, 24

In re Porter,
    374 B.R. 471 (Bankr. D. Conn. 2007) ......................................................................................29

In re Rockefeller Center Propertiess., 272 B.R. 524 (Bankr. S.D.N.Y. 2000), aff'd sub
    nom., NBC v. Rockefeller Center Properties (In re Rockefeller Center Properties),
    226 B.R. 52 (S.D.N.Y. 2001), aff'd, 46 F. App'x. 40 (2d Cir. 2002).......................................19

International Funding Corp. v. Krasner,
    360 So. 2d 1156 (Fla. Dist. Ct .App. 1978) ............................................................................22

Jackson v. Novak (In re Jackson),
    593 F.3d 171 (2d Cir. 2010).............................................................................................14, 17

Johnson v. Davis,
    480 So. 2d 625 (Fla. 1985).......................................................................................................26

Jones v. Pollard-Buckingham,
    348 F.3d 1072 (8th Cir. 2003) ................................................................................................20

Kassner v. 2nd Ave. Delicatessen, Inc.,
    No. 04 CV 7274 (GBD), 2005 WL 1018187 (S.D.N.Y. Apr. 29, 2005) ................................14

Kunica v. St. Jean Fin., Inc.,
    233 B.R. 46 (S.D.N.Y. 1999)....................................................................................................17

Negron v. Weiss,
    No. 06-CV-1288 (CBA), 2006 WL 2792769 (E.D.N.Y. Sept. 27, 2006) ..............................18

Peralta v. Vasquez,
    467 F.3d 98 (2d Cir. 2006)........................................................................................................16

Port City State Bank v. Leyco Construction Co.,
    561 S.W.2d 546 (Tex. Civ. App. 1977) ..................................................................................21

Raines v. GMAC Mortgage Co.,
    No. 3:09–CV–00477–J–25HTS, slip op. at 2 (M.D. Fla. Dec. 10, 2009)...............................21

iv

Reese v. First Missouri Sank [sic] & Trust Co. of Creve Coeur,
    736 S.W.2d 371 (Mo. 1987) ...........................................................................21

Regis Technologies, Inc. v. Oien (In re Oien),
    404 B.R. 311 (Bankr. N.D. Ill. 2009) .............................................................20

Republic National Life Insurance Co. v. Creative Investments Real Estate, Inc.,
    429 So. 2d 87 (Fla. Dist. Ct .App. 1983) .......................................................20

Robinson v. Tyson Foods, Inc.,
    595 F.3d 1269 (11th Cir. 2010) .................................................................15, 16

Senter v. JPMorgan Chase Bank, N.A.,
    810 F. Supp. 2d 1339 (S.D. Fla. 2011) .....................................................24, 25

Seward v. Devine,
    888 F.2d 957 (2d Cir 1989)............................................................................14

Slachter v. Swanson,
    826 So.2d 1012 (Fla. Dist. Ct. App. 2001) (per curiam) ...............................20

St. Joe Corp. v. McIver,
    875 So. 2d 375 (Fla. 2004).............................................................................24

Stockman v. Downs,
    573 So. 2d 835 (Fl. 1991) ..............................................................................27

Symon v. J. Rolfe Davis, Inc.,
    245 So. 2d 278 (Fla. Dist. Ct. App. 1971) .....................................................22

Thompson v. Ocwen Financial Corp.,
    No.3:13-CV-386 (JCH), 2013 WL 4522504 (D. Conn. Aug. 27, 2013) ...........15, 16

Tubbs v. Mechanik Nuccio Hearne & Wester, P.A.,
    125 So. 3d 1034 .............................................................................................27

Wells Fargo Bank, N.A. v. Averett Family Partnership, LLP,
    No. 4:12-CV-140 (CDL), slip. op. (M.D. Ga. Dec. 28, 2012).........................20, 21

W.R. Grace & Co. v. Geodata Services, Inc.,
    547 So. 2d 919 (Fla. 1989).............................................................................25

**STATUTES**

11 U.S.C. § 101(5) .................................................................................................12

11 U.S.C. § 502(b) ..............................................................................................3, 12

11 U.S.C. § 541(a)(1)..........................................................................................................14

11 U.S.C. § 554(d) ...........................................................................................................15

28 U.S.C. § 157(b) .............................................................................................................2

28 U.S.C. § 1334 ................................................................................................................2

28 U.S.C. §§ 1408 and 1409 .............................................................................................2

Fla. Stat. 57.105(7)...........................................................................................................27

OTHER AUTHORITIES

Bankruptcy Rule 1015(b)....................................................................................................3

Bankruptcy Rule 3001 ......................................................................................................28

Bankruptcy Rule 3007(a) ...............................................................................................1, 3

Fed. R. Civ. Proc. 8(a)(2)...........................................................................................19, 20

Fed. R. Civ. Proc. 9..........................................................................................................12

Fl. R. Civ. P. 1.525............................................................................................................27

## EXHIBIT LIST

Exhibit 1 – Proposed Order

Exhibit 2 – Priore Declaration

Exhibit 3 – Kravitz Declaration

ny-1146178

**TO THE HONORABLE MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE:**

The ResCap Borrower Claims Trust (the "**Borrower Trust**"), established pursuant to the

terms of the chapter 11 plan confirmed in the above captioned bankruptcy cases (the "**Chapter**

**11 Cases**") [Docket No. 6065], as successor in interest to the above captioned debtors

(collectively, the "**Debtors**") with respect to Borrower Claims (as defined below), hereby

submits this objection (the "**Objection**") seeking to disallow and expunge, without leave to

amend, proof of claim number 2536 (the "**Claim**") filed by Stephanie Harris ("**Claimant**")

against Debtor Residential Capital, LLC ("**ResCap**") pursuant to section 502(b) of title 11 of the

United States Code (the "**Bankruptcy Code**") and Rule 3007(a) of the Federal Rules of

Bankruptcy Procedure (the "**Bankruptcy Rules**") on the ground that the Claim fails to state a

claim against the Debtors.  The Borrower Trust seeks entry of an order, substantially in the form

attached hereto as Exhibit 1 (the "**Proposed Order**"), granting the requested relief.  In support of

the Objection, the Borrower Trust submits the Declaration of Kathy Priore (the "**Priore Decl.**"),

attached hereto as Exhibit 2, and the Declaration of Peter S. Kravitz (the "**Kravitz Decl.**"),

attached hereto as Exhibit 3, and respectfully represents as follows:

## PRELIMINARY STATEMENT[1]

1.       Claimant asserts a five million dollar ($5,000,000) claim against the Debtors,

allegedly sounding in wrongful foreclosure and tortious interference with her business

relationships.  Each of these claims lacks merit.  First, Claimant received a chapter 7 bankruptcy

discharge in January 2011 and failed to disclose any claims against any Debtor.  As a result,

Claimant lacks standing and should be judicially estopped from asserting any claims that arose

prior to her discharge.

---

[1] Capitalized terms used in this Preliminary Statement shall have the meanings ascribed to such terms below.

2.      Claimant's wrongful foreclosure allegations also should be rejected because despite the filing of two foreclosures with respect to the Property, neither of those foreclosures has been completed.  In fact, Claimant remains in possession of the Property despite a more than six-year payment default.  While these foreclosures may have been inadvertently commenced in the name of the incorrect trustee, no wrongful foreclosure claim can exist absent a completed foreclosure.  Moreover, no cause of action exists for attempted wrongful foreclosure under applicable state law.

3.      Claimant also cannot sustain a claim for tortious interference with business relationships or wrongful denial of a loan modification – a claim which, while not raised in the Claim, the Borrower Trust has addressed out of an abundance of caution.  Each of these claims (to the extent asserted) appears to stem from an allegation that the Claimant could not effectively obtain a loan modification because a Debtor prevented her from speaking with the owner of her Loan.  Such an allegation is entirely inaccurate because GMAC Mortgage, LLC ("**GMAC Mortgage**") had authority to act on behalf of the owner of Claimant's Loan and, as discussed herein,  GMAC Mortgage worked with the Claimant in good faith for several years regarding potential loss mitigation efforts.  The attachments to the Claim show that GMAC Mortgage offered Claimant a loan modification, but that she refused the loan modification.  As a result, these claims must fail as well.

4.      Therefore, the Borrower Trust asserts that the Claim should be disallowed and expunged in its entirety.

## JURISDICTION, VENUE AND STATUTORY PREDICATE

5.      This Court has jurisdiction over this Objection under 28 U.S.C. § 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

- 2 -

6.      The statutory predicates for the relief requested herein are section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007(a).

## BACKGROUND

### I.      General Overview

7.      On May 14, 2012, each of the Debtors filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code.  These Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

8.      On May 16, 2012, the Court entered an order [Docket No. 96] appointing Kurtzman Carson Consultants LLC ("**KCC**") as the notice and claims agent in these Chapter 11 Cases.  Among other things, KCC is authorized to (a) receive, maintain, and record and otherwise administer the proofs of claim filed in these Chapter 11 Cases and (b) maintain the official claims register for the Debtors (the "**Claims Register**").

9.      On March 21, 2013, this Court entered an order approving procedures for the filing of objections to proofs of claim filed in these Chapter 11 Cases [Docket No. 3294] (the "**Procedures Order**").  The Procedures Order includes specific protections for Borrowers[2] and sets forth a process for the Debtors to follow before objecting to certain categories of Borrower Claims (the "**Borrower Claim Procedures**").

10.      On December 11, 2013, the Court entered the *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* [Docket No. 6065] (the "**Confirmation Order**") approving the terms of the Chapter 11 plan (as amended, the "**Plan**"), filed in these Chapter 11 cases.  On

---

[2] As used herein, the terms "**Borrower**" and "**Borrower Claims**" have the meanings ascribed to them in the Plan (defined below).

ny-1146178

December 17, 2013, the Effective Date (as defined in the Plan) of the Plan occurred [See Docket No. 6137].

11.    The Plan provides for the creation and implementation of the Borrower Trust, which is established for the benefit of Borrowers who filed claims to the extent such claims are ultimately allowed either through settlement or pursuant to an Order of the Court.  See Plan, Art. IV.F.  The Borrower Trust was established to, among other things, "(i) direct the processing, liquidation and payment of the Allowed Borrower Claims in accordance with the Plan, and the distribution procedures established under the Borrower Claims Trust Agreement, and (ii) preserve, hold, and manage the assets of the Borrower Claims Trust for use in satisfying the Allowed Borrower Claims."  See id.

## II.    Claim Specific Background

### A.    Origination and Transfer of the Loan

12.    On or about February 21, 2007, Claimant executed an adjustable rate note (the "**Note**")[3] in favor of People's Choice Home Loan, Inc. in the amount of $297,500 in connection with her refinancing of a home loan.  See Priore Decl. ¶ 5; see also Loan Application at Exhibit 2-B to the Priore Declaration.  Claimant's obligations under the Note were secured by a mortgage (the "**Mortgage**" and, together with the Note, the "**Loan**") on property located at 1525 Lenox Avenue, Unit 2, Miami Beach, Florida 33139 (the "**Property**").[4]  See Priore Decl. ¶ 5. Debtor Residential Funding Company, LLC ("**RFC**") subsequently acquired the Loan as an investor and the Note was endorsed to RFC.  See id.; Note at 5.  Debtor GMAC Mortgage began servicing the Loan on or about April 9, 2007.  See Priore Decl. ¶ 5.

---

[3] A copy of the Note is attached as Exhibit 2-A to the Priore Declaration.
[4] A copy of the Mortgage is attached as Exhibit 2-C to the Priore Declaration.

13.     RFC transferred its interest in the Loan to LaSalle Bank, N.A., as Trustee for holders of Mortgage Asset-Backed Pass-Through Certificates Series 2007-SP3, on or about September 1, 2007 in connection with the Loan's securitization, and the Note was negotiated by special endorsement from RFC to LaSalle Bank, N.A., as Trustee.  See id. at ¶ 6; Note at 5.[5]

14.     On or about February 8, 2012, the Mortgage was mistakenly assigned by Mortgage Electronic Registration Systems, Inc., as nominee for People's Choice Home Loan, Inc., to Deutsche Bank Trust Company Americas as Trustee for RAMP 2007-SP3 (see Priore Decl. at ¶ 7; see, also Assignment of Mortgage at Exhibit 2-D to the Priore Declaration), although it should have been assigned to U.S. Bank, as trustee for the similarly named RAAC 2007-SP3 trust.

**B.     The Parties' Loss Mitigation Efforts**

**(i)     Pre-Foreclosure Work-out Attempts**

15.     On or about October 27, 2007, GMAC Mortgage spoke with Claimant and advised her that the October 1, 2007 payment due on the Loan had not been received.  See Priore Decl. ¶ 8; see also Excerpts of Servicing Notes at Exhibit 2-E to the Priore Decl. (the "**Servicing Notes**") at lines 233-239.  Although GMAC Mortgage declined Claimant's request to defer payment of the monthly sum due and owing, GMAC Mortgage did advise the Claimant that a repayment plan could be considered if Claimant was able to make a payment.  See Priore Decl. ¶ 8; Servicing Notes at lines 236-237.  On January 15, 2008, the Claimant obtained a repayment plan which,[6] if completed, would have brought claimant current on her Loan payments over the course of the following five months.  See Priore Decl. at ¶ 8; Servicing Notes at lines 407-416.

---

[5] Subsequently, Bank of America N.A. became the trustee for holders of Mortgage Asset-Backed Pass-Through Certificates Series 2007-SP3, as successor by merger to LaSalle Bank, and U.S. Bank thereafter became trustee as successor in interest to Bank of America.  See Priore Decl. ¶ 6 n.6.

[6] A repayment plan refers to a plan whereby a borrower cures arrearages over a period of time and the servicer agrees to forego a referral to foreclosure for as long as the borrower is in compliance with the terms of the repayment plan.

Claimant made the first payment by phone on January 15, 2008, but failed to make the second

payment that was due on February 17, 2008.  See Priore Decl. ¶ 8; Servicing Notes at line 423.

16.     On February 29, 2008, Claimant contacted GMAC Mortgage by phone, and

GMAC Mortgage agreed to set up a new repayment plan – this time a six month repayment plan.

See Priore Decl. ¶ 9; Servicing Notes at lines 450-457.  Claimant once again made the first

payment under the second repayment plan over the phone, but the second repayment plan was

again terminated when the Claimant's March 29, 2008 payment was returned for insufficient

funds.  See Priore Decl. ¶ 9; Servicing Notes at line 471.

17.     On May 13, 2008, Claimant again called and spoke with a GMAC Mortgage

representative.  After refusing on a previous occasion to provide the requisite financial

information for consideration of a loan modification, the Claimant agreed to provide GMAC

Mortgage with the necessary financial information verbally.  See Priore Decl. ¶ 10; Servicing

Notes at lines 562-571.  Claimant was advised on May 28, 2008 that she had insufficient

available income to be able to obtain and comply with the terms of a traditional loan

modification, including an increased payment resulting from escrow deficiencies due to

Claimant's failure to pay taxes.[7]  See Priore Decl. ¶ 10; Servicing Notes at lines 582-595.

### (ii)    The 2008 Foreclosure Proceeding and Claimant's First Bankruptcy Case

18.     On May 28, 2008, GMAC Mortgage sent to Claimant a breach letter, indicating

that Movant remained delinquent on her April 2008 and subsequent Loan payments.  See Priore

Decl. ¶ 11; see also Breach Letter at Exhibit 2-F to the Priore Declaration.  Thereafter, on or

about July 2, 2008, GMAC Mortgage referred the Loan to foreclosure.  See Priore Decl. ¶ 11;

Servicing Notes at lines 608-611.

---

[7] Although the Claimant would later be considered for a loan modification under the Home Affordable Mortgage Program ("**HAMP**"), HAMP did not take effect until April of 2009.

ny-1146178

19.    On July 15, 2008, GMAC Mortgage initiated a foreclosure proceeding in the Third Circuit Court of the Eleventh Judicial District in and for Dade County, Florida (the "**State Court**"), Case No. 2008-40534-CA-01, on behalf of Deutsche Bank Trust Company Americas, as Trustee (the "**2008 Foreclosure Proceeding**").  See Priore Decl. ¶ 12.[8]  As discussed below, the 2008 Foreclosure Proceeding was subsequently voluntarily dismissed by GMAC Mortgage in light of the mistaken assignment to Deutsche Bank, as Trustee.

20.    On or about October 3, 2008, GMAC Mortgage received a letter from Claimant requesting a loan modification.  See id. at ¶ 13; see also Loan Modification Request Letter at Exhibit 2-H to the Priore Declaration.  Thereafter, on October 15, 2008, Claimant's authorized representative spoke with GMAC Mortgage over the phone, and was informed that updated financial information was necessary to consider Claimant for a loan modification.  See Priore Decl. ¶ 13; Servicing Notes at lines 989-990.  On October 17, 2008, GMAC Mortgage received a workout package.  See Priore Decl. ¶ 13.  However, the package was missing the required proof of Claimant's income and copies of her income tax returns.  See id.; Servicing Notes at lines 1001-1005.

21.    On May 5, 2009, Claimant again spoke with GMAC Mortgage, and a temporary "stop gap" plan was set up, calling for a reduced payment of $1,860 per month for two months to provide Claimant time to return a workout package.  See Priore Decl. ¶ 14; Servicing Notes at line 1454.  In accordance with this conversation, GMAC Mortgage sent Claimant a workout package.  See Priore Decl. ¶ 14; Servicing Notes at line 1480.

22.    On May 20, 2009, Claimant contacted GMAC Mortgage and indicated that the workout package had not been received and requested that GMAC Mortgage resend the package.

---

[8] A copy of the complaint from the 2008 Foreclosure Proceeding is attached as Exhibit 2-G to the Priore Declaration.

See Priore Decl. ¶ 15; Servicing Notes at lines 1734-1741. Consequently, GMAC Mortgage sent

Claimant a new workout package on May 21, 2009. See Priore Decl. ¶ 15; Servicing Notes at

lines 1766-1768. GMAC Mortgage does not have a record of receiving the completed workout

package from Claimant in the following weeks. See Priore Decl. ¶ 15.

      23.     On August 3, 2009, Claimant once again contacted GMAC Mortgage to request a

loan modification. GMAC Mortgage set up a HAMP trial plan with a first payment due on

August 31, 2009. See Priore Decl. ¶ 16; Servicing Notes at lines 2077-2082. Claimant failed to

make the first payment when due. See Priore Decl. ¶ 16; Servicing Notes at line 2205.

      24.     On September 28, 2009, Claimant contacted GMAC Mortgage to indicate that she

wanted a traditional loan modification, not a HAMP modification. See Priore Decl. ¶ 17;

Servicing Notes at lines 2296-2304. Thereafter, on October 13, 2009, Claimant contacted

GMAC Mortgage requesting that she be provided with a permanent loan modification, without

the need for a trial plan. See Priore Decl. ¶ 17; Servicing Notes at lines 2366-2372. On October

20, 2009, in response to another request by Claimant for a traditional loan modification, GMAC

Mortgage informed the Claimant that the loan modification process needed to be followed and

that Claimant's HAMP and traditional loan modification options would be considered after she

submitted a loan workout package. See Priore Decl. ¶ 17; Servicing Notes at lines 2393-2406.

GMAC Mortgage has no record of receiving a workout package in response to these discussions.

See Priore Decl. ¶ 17.

      25.     On January 27, 2010, Claimant filed a petition for chapter 7 relief in the United

States Bankruptcy Court for the Southern District of Florida, Case No. 10-11746-AJC. See

Priore Decl. ¶ 18; Servicing Notes at lines 2766-2775; see also 2010 Bankruptcy Petition at

Exhibit 2-I to the Priore Declaration. Claimant's schedules of assets and liabilities and statement

- 8 -

of financial affairs filed in her 2010 bankruptcy case do not list any claims against GMAC

Mortgage or any other Debtor.  See Priore Decl., Exhibit 2-I.  Instead, Claimant indicated her

intent to reaffirm her debt to GMAC Mortgage.  See id. at 35.

26.    On April 15, 2010, in response to an inquiry from Claimant, GMAC Mortgage

contacted Claimant to offer a traditional fixed rate loan modification with a five percent (5%)

interest rate, substantially lower than the applicable interest rate on Claimant's adjustable rate

mortgage loan.  See Priore Decl. ¶ 19; Note at §§ 2, 4(C)-(D) (describing the calculation of the

interest rate on the Note and the 9.4% floor); Servicing Notes at lines 3690-3696.  Claimant

refused the loan modification.  See Priore Decl. ¶ 19; Servicing Notes at lines 3700-3702.

GMAC Mortgage also offered as a possible option a short settlement, whereby Claimant would

have been permitted to pay off her Loan for a reduced amount, but Claimant indicated that she

could not discuss this option for a month-and-a-half.  See Priore Decl. ¶ 19; Servicing Notes at

lines 3690-3696.  GMAC Mortgage does not have a record of Claimant pursuing this option

further.  See Priore Decl. ¶ 19.

27.    On December 13, 2010, GMAC Mortgage voluntarily dismissed the 2008

Foreclosure Proceeding after learning that the case should not have been brought in the name of

Deutsche Bank as trustee.  See Priore Decl. ¶ 20; see also 2008 Foreclosure Proceeding Docket

Report at Exhibit 2-J to the Priore Declaration.  As noted supra at ¶ 14, the mortgage was

mistakenly assigned to Deutsche Bank, as trustee for the RAMP 2007-SP3 trust as opposed to

U.S. Bank, as trustee for the RAAC 2007-SP3 trust.

28.    On February 11, 2011, Claimant received a discharge in her first bankruptcy case.

See Priore Decl. ¶ 21; see also 2010 Bankruptcy Discharge Order at Exhibit 2-K to the Priore

Declaration.  Although Claimant's statement of intent indicated her intention to reaffirm her

- 9 -

mortgage, no reaffirmation agreement appears to have been executed or filed prior to her

discharge.  See Priore Decl. ¶ 21; see also 2010 Bankruptcy Docket Report at Exhibit 2-L to the

Priore Declaration.

   **C.**  **The 2012 Foreclosure Proceeding**

  29.  On February 22, 2011, GMAC Mortgage referred Claimant's account to

foreclosure and, on April 25, 2012, GMAC Mortgage initiated a new foreclosure proceeding in

the State Court, Case No. 12-16257-CA-23 (the "**2012 Foreclosure Proceeding**"), again

mistakenly initiating the foreclosure on behalf of Deutsche Bank Trust Company Americas as

Trustee for RAMP 2007SP3.[9]  See Priore Decl. ¶ 22; Servicing Notes at lines 6324-6326.

  30.  On or about June 15, 2012, Claimant filed an Answer to GMAC Mortgage's

complaint.  See Priore Decl. ¶ 23; see also Claimant's Answer at Exhibit 2-N to the Priore

Declaration.

  31.  On February 15, 2013, servicing of the Loan transferred from GMAC Mortgage

to Ocwen Loan Servicing, LLC ("**Ocwen**") in connection with Debtors' sale of their mortgage

servicing platform in these Chapter 11 Cases.  See Priore Decl. ¶ 24.  Consequently, Ocwen has

taken over the prosecution of the 2012 Foreclosure Proceeding.  See Priore Decl. ¶ 24.

  32.  As of the date that servicing of the Loan transferred to Ocwen, Claimant's

account remained due and owing for the April 1, 2008 and subsequent payments.  See Priore

Decl. ¶ 25.

  33.  On January 3, 2014, the State Court entered an order setting the 2012 Foreclosure

Proceeding for trial on February 24, 2014.  See Priore Decl. ¶ 26; see also 2012 Foreclosure

Proceeding Docket Report at Exhibit 2-O to the Priore Declaration.

---

[9] A copy of the Complaint in the 2012 Foreclosure Proceeding is attached as Exhibit 2-M to the Priore Declaration.

ny-1146178

### D.       Claimant's 2014 Bankruptcy Case

34.      On February 12, 2014, Claimant filed a petition for relief under chapter 13 of the

Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida,

Case No. 14-13319.  See Priore Decl. ¶ 27; see also Claimant's 2014 Bankruptcy Petition at

Exhibit 2-P to the Priore Declaration.  The schedules of assets and liabilities and statement of

financial affairs filed by Claimant in her 2014 bankruptcy case indicate a claim against

"Residential Capital LLC.  Case No. 12-12020 (MG)" in the amount of $1,500,000 but do not

shed any further light on the basis for that claim.  Id. at 10.  Claimant filed a suggestion of

bankruptcy in the 2012 Foreclosure Proceeding the same day.  See Priore Decl., Exhibit 2-O.

Claimant's chapter 13 bankruptcy case and the 2012 Foreclosure Proceeding are currently

pending.  See Priore Decl. ¶ 27.

### E.       The Proof of Claim

35.      On November 6, 2012, Claimant filed proof of claim number 2536, against

ResCap (the "**Proof of Claim**").  See Priore Decl. ¶ 28.[10]  The Proof of Claim asserts a claim in

the amount of $5,000,000.00, of which Claimant asserts $450,000 is purportedly secured.  Proof

of Claim at 1.  Although the type-written entry in section 2 of the Proof of Claim form is cut-off,

the alleged bases for the Proof of Claim appear to be claims for wrongful foreclosure and tortious

interference with business relationships.

36.      On June 21, 2013, the Debtors sent Claimant a letter requesting additional support

for the Proof of Claim.  See Priore Decl. ¶ 29.  The Debtors have not received a response from

Claimant (see id.) although the Borrower Trust did subsequently receive correspondence from

---

[10] A copy of the Proof of Claim is attached as Exhibit 2-N to the Priore Declaration.

ny-1146178

Claimant containing many of the same documents attached to the Proof of Claim.  See Kravitz

Declaration, Exhibit 3-A.[11]

**RELIEF REQUESTED**

37.    The Borrower Trust files this Objection pursuant to section 502(b) of the

Bankruptcy Code, seeking to disallow and expunge in its entirety the Proof of Claim from the

Debtors' Claims Register.

**OBJECTION**

**I.    The Proof of Claim Is Not Properly Asserted Against ResCap**

38.    Pursuant to section 101 of the Bankruptcy Code, a creditor holds a claim against a

bankruptcy estate only to the extent that it has a "right to payment" for the asserted liability.  See

11 U.S.C. § 101(5).  Likewise, section 502(b)(1) of the Bankruptcy Code provides, in relevant

part, that the Court shall allow a claim except to the extent that "such claim is unenforceable

against the debtor and property of the debtor, under any agreement or applicable law for a reason

other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1).

39.    Claimant filed the Proof of Claim for $5 million solely against ResCap, in case

number 12-12020, although the "Name of Debtor and Case Number" section of the Proof of

Claim form does include the acronym "GMAC."  See Priore Decl., Exhibit 2-Q; accord Exhibit

2-P at 10 (disclosing claim against ResCap in Claimant's bankruptcy schedules in her 2014

bankruptcy case).  There is no explanation whatsoever as to why the Proof of Claim is properly

---

[11] To the extent that the supplemental materials could be read to form the basis for an additional, separate claim of
fraud based on the mortgage assignment from GMAC Mortgage to Deutsche Bank, Claimant has failed to meet her
burden of alleging fraud with particularity as required by Federal Rule of Civil Procedure 9.  Specifically, Claimant
neither alleges any facts suggesting that the assignment was anything other than a mistake, as described above, nor
has Claimant alleged that she relied upon the assignment or that she was damaged as a result of her reliance thereon.
See Essex Ins. Co. v. Universal Entm't & Skating Ctr., Inc., 665 So. 2d 360, 362 (Fla. Dist. Ct. App. 1995) (citing
Ball v. Ball, 160 Fla. 601, 36 So.2d 172 (Fla. 1948)) (setting forth essential elements of a fraud claim under Florida
law).  To the extent Claimant suggests that the supplemental materials were intended to raise a new claim, the
Borrower Trust reserves the right to contest any and all issues related to such claim, including contesting that such
efforts amounted to a valid amendment of the Proof of Claim.

- 12 -

asserted against ResCap.  Indeed, based on the documents attached to the Proof of Claim form, it appears Claimant asserts the Proof of Claim based solely on a relationship between Claimant and Debtor GMAC Mortgage.  Consequently, the Proof of Claim should not have been filed against ResCap.  The Borrower Trust believes that the Proof of Claim is not enforceable against ResCap under any applicable law or agreement.  Additionally, the Debtors' books and records reflect no liability due and owing to Claimant.

40.    Accordingly, the Borrower Trust asserts that the Proof of Claim should be disallowed and expunged in its entirety.

## II.    Claimant Lacks Standing to Pursue Any Claims Allegedly Arising Prior to Claimant's February 2011 Bankruptcy Discharge and Any Such Claims Are Also Barred by the Doctrine of Judicial Estoppel

41.    Even though the Borrower Trust believes that the failure of Claimant to file the Proof of Claim against GMAC Mortgage is by itself sufficient grounds to disallow the Proof of Claim, in the interest of judicial efficiency, the Borrower Trust will assume for the remainder of this Objection that the Proof of Claim was properly filed against GMAC Mortgage and will state the objections that would be appropriate.  Several additional grounds exist to disallow the Proof of Claim.

42.    While the face of the Proof of Claim appears to assert only claims for wrongful foreclosure and tortious interference with business relationships, the attachments to the Proof of Claim reference, in several instances, GMAC Mortgage's alleged failure to provide a loan modification despite Claimant's desire to modify her loan.[12]  To the extent that the Proof of Claim could be read as asserting claims on any of these three bases that arose prior to Claimant's

---

[12] See Proof of Claim at 2 (letter to Federal Reserve); id. at 6 ("[T]he [Claimant] asserts that the lender has wholly failed to provide any form of modification relief despite repeated efforts by the Debtor to seek modification assistance from the lender."); id. at 26 (Counsel stating that "Ms. Harris is interested in the property, and to keep the property, Judge.  She is very interested in modifying the loan and maintaining ownership of it."); id. at 28 (Counsel stating that "We would like a modification.  We would like to discuss a modification . . . .").

February 11, 2011 chapter 7 bankruptcy discharge, Claimant lacks standing to pursue such claims and the claims are also barred by the doctrine of judicial estoppel because Claimant failed to disclose each of these claims in her bankruptcy schedules.

### A. Claimant Lacks Standing to Assert Claims Arising Prior to Her Chapter 7 Discharge in February 2011

43.      The filing of a bankruptcy petition creates an estate that includes "all legal [and] equitable interests of the debtor in property."  11 U.S.C. § 541(a)(1).  It is well-established that a debtor's bankruptcy estate includes "[e]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative" (Chartschlaa v. Nationwide Mut. Ins. Co., 538 F.3d 116, 122 (2d Cir. 2008) (per curiam)), including prepetition causes of action. Seward v. Devine, 888 F.2d 957, 963 (2d Cir 1989); Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473, 484 (2d Cir. 2014);  Kassner v. 2nd Ave.  Delicatessen, Inc., No. 04 CV 7274 (GBD), 2005 WL 1018187, at *2 (S.D.N.Y. Apr. 29, 2005).  Additionally, '[a]fter-acquired' property will vest in the estate if it is derived from property that was part of the estate as of the commencement of the bankruptcy" if it is "sufficiently rooted in the pre-bankruptcy past." Chartschlaa, 538 F.3d at 122; see also Jackson v. Novak (In re Jackson), 593 F.3d 171, 176 (2d Cir. 2010).

44.      Pursuant to section 521(1) of the Bankruptcy Code, a "debtor is required to disclose all of his actual and potential assets in a schedule of assets and a statement of financial affairs which would include any of his causes of action."  Kassner, 2005 WL 1018187, at *3; accord Chartschlaa, 538 F.3d at 122.  "[I]f the debtor has enough information . . . prior to confirmation to suggest that it may have a possible cause of action, then [it] is a 'known' cause of action such that it must be disclosed."  In re Coastal Plains, 179 F.3d 197, 208 (5th Cir. 1999) (citations omitted).  Undisclosed assets automatically remain property of the estate after the case

is closed (see 11 U.S.C. § 554(d); Chartschlaa, 538 F.3d at 122), and a debtor lacks standing to

subsequently pursue any undisclosed claims.  See Thompson v. Ocwen Fin. Corp., No.3:13-CV-

386 (JCH), 2013 WL 4522504, *4-5 (D. Conn. Aug. 27, 2013); accord Chartschlaa, 538 F.3d at

122-23.

45.     While it is unclear from the Proof of Claim when claimant alleges that any

purported claims arose, to the extent that any claim asserted in the Proof of Claim allegedly arose

prior to Claimant's February 2011 discharge in her 2010 bankruptcy case, such claim should be

disallowed.  When claimant filed for chapter 7 relief in 2010, any and all claims that she had

against any of the Debtors became property of her bankruptcy estate.

46.     Moreover, even to the extent that an alleged claim stemming from a wrongful

denial of a loan modification, tortious interference with a business relationship or a wrongful

foreclosure in connection with the 2008 Foreclosure Proceeding had not accrued postpetition,

such claims were "sufficiently rooted" in Claimant's pre-bankruptcy past and also became

property of her estate.  The 2008 Foreclosure Proceeding had been ongoing for approximately

eighteen months by the time Claimant sought bankruptcy relief in January, 2010.  Consequently,

Claimant was aware of the facts allegedly giving rise to any purported wrongful foreclosure or

tortious interference claims associated with the 2008 Foreclosure Proceeding months prior to the

commencement of her 2010 bankruptcy case.  Similarly, nearly all loss modification efforts

among the Debtor and Claimant directly had been completed by the time of Claimant's February

2011 bankruptcy discharge.  See Priore Decl. ¶ 8-21 (outlining loss mitigation efforts).  As a

result, even if some of Claimant's alleged claims would not have accrued until sometime

postpetition, they became property of her bankruptcy estate and Claimant had a duty to disclose

those claims through an amendment to her schedules of assets and liabilities.  See Robinson v.

- 15 -

Tyson Foods, Inc., 595 F.3d 1269, 1274 (11th Cir. 2010) ("The duty to disclose is a continuing

one that does not end once the forms are submitted to the bankruptcy court; rather the debtor

must amend [her] financial statements if circumstances change.  This duty applies to proceedings

under Chapter 13 and Chapter 7 alike . . . ." (internal quotations and citations omitted));

Memorandum Opinion and Order Sustaining Objection and Expunging Claim No. 4443 by Corla

Jackson, No. 12-12020-MG, slip. op. at 17 (Bankr. S.D.N.Y. Jan. 27, 2014), aff'd on other

grounds in Jackson v. ResCap Borrower Claims Trust, Case No. 14-CV-2427 (JGK) (S.D.N.Y.

Oct. 9, 2014) ("**Jackson**").  Yet Claimant did not disclose any causes of action against any entity

in her schedules of assets and liabilities filed at the beginning of her 2010 bankruptcy case (see

Priore Decl., Exhibit 2-G) and did not amend her schedules during her bankruptcy case to

disclose any such claims.  See Priore Decl., Exhibit 2-J.  As a result, any causes of action

Claimant alleges to have arisen up through and including her February 11, 2011 discharge

remain part of her bankruptcy estate and Claimant lacks standing to now assert those alleged

claims.  See Thompson v. Ocwen Fin. Corp., 2013 WL 4522504, at *4-5; accord Chartschlaa,

538 F.3d at 122-23.

> **B.**    **Claimant Is Also Judicially Estopped from Asserting Claims Arising Prior to
> Her 2011 Bankruptcy Discharge**

47.    Even if Claimant did not lack standing to pursue claims related to the 2008

Foreclosure Proceeding (either wrongful foreclosure or tortious interference) or any purported

wrongful denial of a loan modification, the doctrine of judicial estoppel would also bar Claimant

from asserting those claims.  "In order for judicial estoppel to be invoked, (1) the party against

whom it is asserted must have advanced an inconsistent position in a prior proceeding, and

(2) the inconsistent position must have been adopted by the court in some matter."  Peralta v.

Vasquez, 467 F.3d 98, 105 (2d Cir. 2006).  When a clear inconsistency exists between a party's

- 16 -

statements in two proceedings, judicial estoppel may be invoked to avoid inconsistent results

where an earlier statement was relied upon by the tribunal and permitting the party to take an

inconsistent position will have an impact on judicial integrity.  See Crawford v. Franklin Credit

Mgmt. Corp., 758 F.3d at 485-86.

48.    In the bankruptcy context, judicial estoppel is commonly invoked in order "to

prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that

claim after emerging from bankruptcy."  Coffaro v. Crespo, 721 F. Supp. 2d 141, 145 (E.D.N.Y.

2010); Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282 (11th Cir. 2002) (Eleventh Circuit

applying judicial estoppel on similar facts to those in this case); Jackson, slip. op. at 12-17;

Kunica v. St. Jean Fin., Inc., 233 B.R. 46, 58 (S.D.N.Y. 1999) (collecting cases).

49.    As described above, by the time Claimant received a bankruptcy discharge in

February 2011, Claimant and GMAC Mortgage had been engaged in numerous discussions

regarding loss mitigation spanning more than two years and litigation had been ongoing for

approximately eighteen months.  When she filed for chapter 7 relief, Claimant had an obligation

to disclose any known causes of action in her statement of assets and liabilities.  See Crawford v.

Franklin Credit Mgmt. Corp., 758 F.3d at 485; Jackson, slip op. at 16.  She also had a continuing

obligation to update that information.  Jackson, slip op. at 17.  Her "failure to list her present

causes of action among her assets was tantamount to a representation that she had no such

claims."  Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d at 486.  Moreover, Claimant's

"representation" that she did not have any claims against GMAC Mortgage or any other entity

was relied upon by the Florida bankruptcy court in granting Claimant a discharge from her

bankruptcy case.  See, e.g., Coffaro v. Crespo, 721 F. Supp. 2d at 146 (bankruptcy court's

granting of discharge based on debtor's disclosures in schedule of assets amounted to reliance for

purposes of judicial estoppel); <u>Galin v. I.R.S.</u>, 563 F. Supp. 2d 332, 339 (D. Conn. 2008)

("bankruptcy court is considered to have adopted a party's assertion in a bankruptcy proceeding

when it confirms a plan in which creditors release claims against the debtor"); <u>Negron v. Weiss</u>,

No. 06-CV-1288 (CBA), 2006 WL 2792769, at *4 (E.D.N.Y. Sept. 27, 2006) (debtors'

"disclosures [in their schedules that they did not own any real property] were adopted by the

Bankruptcy Court when it discharged the Negrons' debts on October 4, 2004"); <u>cf.</u> <u>Crawford v.</u>

<u>Franklin Credit Mgmt. Corp.</u>, 758 F.3d at 486 (concluding that judicial estoppel did not apply

because "there was no ruling relating to [the debtor's] present claims or to her assets generally"

since the bankruptcy case was dismissed without a discharge).  If Claimant is permitted to pursue

her claim and administer the benefits of such claim, if any, in her chapter 13 case, it would be an

affront to judicial integrity and at the expense of creditors in Claimant's prior chapter 7

bankruptcy case, who are the rightful beneficiaries of any claims Claimant may have had at the

time of her discharge in that case.  For these reasons, the Proof of Claim should be disallowed to

the extent that it asserts any claims arising prior to Claimant's February 11, 2011 discharge date.

### III.    The Proof of Claim Fails to Meet the Minimum Requirements to Support the Claim

50.    Each of the causes of action asserted in the Proof of Claim also fails to meet the

minimum requirements necessary to support a claim against GMAC Mortgage.  First, the Claim

fails to state any claim upon which relief may be granted and, for this reason, the Proof of Claim

should be disallowed and expunged.  Moreover, Claimant has failed to provide any documentary

evidence in support of her calculation of a $5 million claim or her assertion that she holds a

$450,000 secured claim.  Absent any evidence of Claimant's alleged damages or her entitlement

to a secured claim, the Claim should be disallowed on this ground as well.

### A.    The Claim Fails to Satisfy Basic Pleading Standards

51.    Several courts, including those in this district, have applied the federal pleadings standards when assessing the validity of a proof of claim.  See In re DJK Residential LLC, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) ("In determining whether a party has met their burden in connection with a proof of claim, bankruptcy courts have looked to the pleading requirements set forth in the Federal Rules of Civil Procedure.") (citing In re Rockefeller Ctr. Props., 272 B.R. 524, 542 n.17 (Bankr. S.D.N.Y. 2000), aff'd sub nom., NBC v. Rockefeller Ctr. Props. (In re Rockefeller Ctr. Props.), 226 B.R. 52 (S.D.N.Y. 2001), aff'd, 46 F. App'x. 40 (2d Cir. 2002)).

52.    As a threshold matter, for a proof of claim to be allowed, the allegations in the claim must meet the pleadings requirements of the Federal Rules of Civil Procedure (the "Rules").  As described herein, the Proof of Claim should be disallowed and expunged from the Claims Register in its entirety because the Proof of Claim is deficient in detail and intelligibility and fails to state a single valid colorable claim against any of the Debtors.

### B.    The Complaint Fails to Satisfy Rule 8(a)

53.    Pursuant to Federal Rule of Civil Procedure 8(a)(2), a "pleading that states a claim for relief must contain . . . a *short and plain* statement of the claim showing that the pleader is entitled to relief.".  Fed. R. Civ. P. 8(a)(2) (emphasis added).  Rule 8(a) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).  It is insufficient for a complaint to simply "le[ave] open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 561 (2007).  Rather, a complaint must plead sufficient facts "to provide the 'grounds' of his 'entitle[ment] to relief,' [which] requires more than labels and conclusions, and [for which] a formulaic recitation [of the elements] of a cause of action's will not do."  Id. at 545 (citation omitted).  The purpose of Rule

- 19 -

8(a)(2) is to ensure that the complaint "give[s] enough [coherent] detail to illuminate the nature

of the claims and allow defendants to respond." Regis Techs., Inc. v. Oien (In re Oien), 404 B.R.

311, 317 (Bankr. N.D. Ill. 2009) (emphasis added) (citations and internal quotation marks

omitted). In other words, each defendant must know what he is charged with. See, e.g., Jones v.

Pollard-Buckingham, 348 F.3d 1072, 1073 (8th Cir. 2003) (though inartful, *pro se* complaint

satisfied Rule 8(a)(2) because "[it] clearly identified how each defendant was involved in the

conduct about which . . . [the plaintiff] complains"); Forman v. Salzano (In re Norvergence,

Inc.), 405 B.R. 709, 736-37 (Bankr. D.N.J. 2009) (complaint's setoff allegations inadequate

because, among other things, it did not identify specific defendants involved with specific

transactions).

        54.    Here, each of the purported claims asserted in the Proof of Claim fails to

"illuminate the nature of the claims and allow [ResCap and/or GMAC Mortgage] to respond." In

re Oien, 440 B.R.at 317.

                        **(i)    Claimant Cannot Maintain a Claim for Wrongful Foreclosure in the
                                Absence of a Completed Foreclosure**

        55.    The Proof of Claim purports to assert a claim for wrongful foreclosure. However,

since Claimant's property has not been foreclosed upon, her wrongful foreclosure claim fails as a

matter of law.

        56.    Florida courts have recognized wrongful foreclosure as a valid claim. See

Slachter v. Swanson, 826 So.2d 1012 (Fla. Dist. Ct. App. 2001) (per curiam). However, no

claim for **attempted** wrongful foreclosure exists under Florida law. See Bank of N.Y. Mellon v.

Reyes, 126 So. 3d 304, 309 n.4 (Fla. Dist. Ct .App. 2013); Republic Nat'l Life Ins. Co. v.

Creative Invs. Real Estate, Inc., 429 So. 2d 87 (Fla. Dist .Ct .App. 1983); Wells Fargo Bank,

N.A. v. Averett Family P'ship, LLP, No. 4:12-CV-140 (CDL), slip. op. at 13-15 (M.D. Ga. Dec.

- 20 -

28, 2012) (concluding that no claim for wrongful attempted foreclosure exists under Florida law); Raines v. GMAC Mortg. Co., No. 3:09–CV–00477–J–25HTS, slip op. at 2 (M.D. Fla. Dec. 10, 2009) ("[T]he Court does not believe that a cause of action for attempted wrongful foreclosure exists in Florida.  Moreover, other jurisdictions do not recognize a cause of action for attempted wrongful foreclosure."); Reese v. First Mo. Sank [sic] & Trust Co. of Creve Coeur, 736 S.W.2d 371, 373 (Mo. 1987) (concluding that "there is no cause of action for attempted wrongful foreclosure"); Port City State Bank v. Leyco Constr. Co., 561 S.W.2d 546, 547 (Tex. Civ. App. 1977) (concluding that there is no cause of action for attempted wrongful foreclosure "where a creditor mistakenly attempted to foreclose a security interest, but did not actually foreclose when apprised of the true facts before foreclosure took place").

57.    GMAC Mortgage initiated the 2008 Foreclosure Proceeding, but that proceeding was voluntarily dismissed prior to its completion.  See Priore Decl. ¶ 20.  Additionally, the 2012 Foreclosure Proceeding remains pending but has not been completed.  See Priore Decl. ¶ 27. Ocwen, the new servicer for the Loan, is now in control of the 2012 Foreclosure Proceeding, but due to Claimant's chapter 13 bankruptcy proceeding, Ocwen is precluded from taking any action to substitute in the appropriate party or otherwise substitute the correct plaintiff at this time.  In fact, Ocwen informed Claimant that it is aware of the mistake and that U.S. Bank, as trustee, is the appropriate creditor under Claimant's Loan documents.  See Kravitz Decl., Exhibit 3-A at 34. Consequently, since neither of the Foreclosure Proceedings were completed, no wrongful foreclosure has occurred and Claimant cannot state a claim for wrongful foreclosure. Additionally, as stated above, no claim exists for attempted wrongful foreclosure.

- 21 -

### (ii)    Claimant Fails to State a Claim for Tortious Interference with Business Relationships

58.    Finally, although the full text of the remaining claim in the Proof of Claim is incomplete, Claimant appears to assert a claim for tortious interference with business relationships.  "The elements of the tort of interference with a business relationship are (1) existence of a business relationship under which the claimant has legal rights, (2) intentional and unjustified interference with that relationship by defendant, and (3) damage to the claimant as a result of the breach of the business relationship."  Int'l Funding Corp. v. Krasner, 360 So. 2d 1156, 1157 (Fla. Dist. Ct .App. 1978); Symon v. J. Rolfe Davis, Inc., 245 So. 2d 278 (Fla. Dist. Ct. App. 1971).

59.    Aside from Claimant's failure to identify any legal support justifying a finding of a tortious interference with a business relationship, the Proof of Claim fails to set forth sufficient facts to make out a claim for tortious interference with business relationships.  The sole factual allegation in the Proof of Claim that could be read to support a claim for tortious inference with business relationships states that "[GMAC Mortgage] never informed [Claimant] who the actual lender was, which prevented the [Claimant] from speaking directly with the lender about a modification."  See Proof of Claim at 6.  This single statement does not constitute a valid claim for tortious interference with a business relationship.

60.    First, Claimant has identified no legal authority requiring GMAC Mortgage, as servicer for the Loan, to proactively disclose the identity of the lender.  Additionally, Claimant has identified no unjustified interference with her relationship with the lender.  GMAC Mortgage acted as an agent for the lender and, as such, was authorized to speak on behalf of the lender and to discuss loan modification and other workout options with Claimant on the lender's behalf.

- 22 -

See Priore Decl. ¶ 8 n.8.   Indeed, Claimant and GMAC Mortgage engaged in discussions

regarding loss mitigation, short sale, and/or mortgage modification options for nearly three years.

     61.    Additionally, even if the Proof of Claim could be interpreted as properly alleging

an interference with a business relationship of the Claimant, the Proof of Claim fails to provide

any allegations that any such interference was either intentional or unjustified – both necessary to

Claimant's success on this claim.

     62.    Finally, Claimant has identified no damages arising from any purported

interference with her relationship with the lender.  She has not been dispossessed of the property

notwithstanding her more than six year payment default.  See Priore Decl. ¶ 25.  In fact, on or

about April 15, 2010, GMAC Mortgage offered to Claimant a loan modification on behalf of the

lender.  See Priore Decl. ¶ 19.  Claimant refused the loan modification.  See id.  Claimant has

failed to adequately allege any damages arising from GMAC Mortgage's purported interference

with the lender, even though GMAC Mortgage, acting on the lender's behalf, offered her the

very thing that she sought contact with the lender to obtain – a loan modification.

     63.    For the reasons set forth above, Claimant's unsupported allegations of a tortious

interference with business relationships should be rejected, and the Proof of Claim disallowed

and expunged.

     **(iii)    The Documents Attached to the Proof of Claim Show that GMAC
               Mortgage Did Not Wrongfully Deny Claimant a Loan Modification**

     64.    The Proof of Claim is unclear regarding whether or not Claimant asserts some

claim regarding wrongful denial of a loan modification.  Nonetheless, because the Proof of

Claim in several instances references Claimant's prior interest in obtaining a loan modification,[13]

the Borrower Trust addresses any such claims out of an abundance of caution.  The Borrower

---

[13] See supra. at n. 12.

- 23 -

Trust is aware of case law supporting claims related in some manner to allegedly wrongful denial

of loan modifications in certain circumstances, including claims sounding in (i) breach of

contract, (ii) promissory estoppel and (iii) fraudulent misrepresentation.

### (1)    The Proof of Claim Provides No Evidence of the Existence of a Contract to Modify the Loan

65.    In order to succeed on a breach of contract claim related to an allegedly wrongful

denial of a loan modification, a party must plead and prove each element required to show a

binding contract, show that the defendant breached such contract and also show resulting

damages to the plaintiff.  See Senter v. JPMorgan Chase Bank, N.A., 810 F. Supp. 2d 1339, 1345

(S.D. Fla. 2011).  "[T]o establish the presence of a valid contract, a plaintiff must allege the

existence of: (1) an offer; (2) acceptance of the offer; (3) consideration; and (4) sufficient

specification of the essential terms of the agreement."  Id. (citing St. Joe Corp. v. McIver, 875

So. 2d 375, 381 (Fla. 2004)).

66.    Here, to the extent that the Proof of Claim attempts to assert a claim for wrongful

denial of a loan modification, it fails to "give enough [coherent] detail to illuminate the nature of

the claim[] and allow defendants to respond."  In re Oien, 404 B.R. at 317.  The statements

regarding Claimant's desire for a loan modification, contained in the transcripts and other

documents attached to the Proof of Claim, fail to enlighten the Borrower Trust regarding the

legal or factual basis for any such claim.  In fact, the attachments to the Proof of Claim show that

in connection with GMAC Mortgage's relief from stay motion in Claimant's 2010 bankruptcy

case, GMAC Mortgage specifically requested that the Court permit GMAC Mortgage to

continue to contact claimant regarding a potential loan modification or other loss mitigation

program.  See 2010 Motion for Relief at Exhibit 2-U to the Priore Declaration at 9 (motion for

relief from the stay).  At the hearing on that motion, counsel for Claimant did not contest that

- 24 -

Claimant had recently been contacted by GMAC Mortgage to discuss a loan modification that could have significantly reduced her interest rate, but that Claimant declined to discuss the loan modification under consideration.[14]  Thus, the documents provided by Claimant in her Proof of Claim provide no basis upon which Claimant could make out a breach of contract claim for an allegedly wrongful denial of a loan modification.  To the contrary, the documents show that GMAC Mortgage offered Claimant a loan modification but that Claimant refused the offer – thus showing that a necessary prerequisite for a binding contract and, consequently, a wrongful denial of a loan modification claim, is absent here.  As a result, any purported breach of contract claim (to the extent the Proof of Claim could be read to assert one) based on an allegedly wrongful denial of a loan modification should be disallowed.

### (2)    Claimant has Also Failed to Plead a Claim for Promissory Estoppel

67.    "In order to adequately plead a claim for promissory estoppel as an alternative basis for recovery, Florida law requires that a plaintiff establish: '(1) that the plaintiff detrimentally relied on a promise made by the defendant; (2) that the defendant reasonably should have expected the promise to induce reliance in the form of action or forbearance on the part of the plaintiff or a third person; and (3) that injustice can be avoided only through the enforcement of the promise against the defendant.'"  Senter, 810 F. Supp. 2d at 1362 (quoting W.R. Grace & Co. v. Geodata Servs., Inc., 547 So. 2d 919, 924 (Fla. 1989)).

68.    Claimant neither identifies a specific promise by GMAC Mortgage relating to any potential loan modification, nor any reasonable reliance or the existence of an injustice that occurred as a result of any purported promise.  Instead, as described above, the evidence in the Proof of Claim shows that GMAC Mortgage was open to a loan modification or some other loss

---

[14] See Proof of Claim at 27-29 (Transcript of Hearing on relief from stay motion in Claimant's chapter 7 proceeding).

- 25 -

mitigation option and reached out to Claimant about a potential loan modification, but that the

Claimant declined to pursue this option.  For this reason, any alleged promissory estoppel claim

relating to any purportedly wrongful denial of a loan modification that could be gleaned from the

Proof of Claim should also be disallowed.

**(3)    The Proof of Claim Does Not Identify Any Statements
That Could Support a Fraudulent Misrepresentation
Claim**

69.    At least one Florida court has also considered the potential viability of a

fraudulent misrepresentation claim in the context of a denial of a loan modification.  See

Echeverria v. BAC Home Loans Servicing, LP, 900 F. Supp. 2d 1299, 1308 (M.D. Fla. 2012)

aff'd, 523 F. App'x. 675 (11th Cir. 2013).  "'In the state of Florida, relief for a fraudulent

misrepresentation may be granted only when the following elements are present: (1) a false

statement concerning a material fact; (2) the representor's knowledge that the representation is

false; (3) an intention that the representation induce another to act on it; and (4) consequent

injury by the party acting in reliance on the representation.'"  Id. (quoting Johnson v. Davis, 480

So. 2d 625, 627 (Fla. 1985)).

70.    Claimant has not identified any allegedly false statements upon which she

purportedly relied in pursuing a loan modification or other loss mitigation opportunity.  Claimant

likewise wholly fails to provide any factual or legal basis related to the other elements of a

fraudulent misrepresentation claim.  For these reasons, she has failed to satisfy even the pleading

standards contained in Rule 8 of the Federal Rules of Civil Procedures, let alone the heightened

pleading requirements contained in Rule 9 of Federal Rules of Civil Procedure and applicable to

a fraudulent misrepresentation claim.  Consequently, the Proof of Claim should also be

disallowed to the extent it could be read to assert a fraudulent misrepresentation claim based on a

purportedly wrongful denial of a loan modification.

- 26 -

### C.    At Most, Claimant Could Hold a Contingent Claim for Any Fees and Costs Incurred in  Defending the 2012 Foreclosure Proceeding

71.    Although not asserted in the Proof of Claim, Claimant could have  potentially asserted a claim for fees and costs associated with the 2012 Foreclosure Proceeding, but the validity of any such claim would still be contingent upon her prevailing in that action.  Both the Note and Mortgage contain provisions entitling their holders to payment of any fees and costs associated with enforcing the respective instrument.  Under Fla. Stat. 57.105(7), those contractual provisions are reciprocal, permitting the other party to the contract, should it prevail in an action to enforce the contract, to seek fees and costs.  However, Florida law requires a defendant pursuing prevailing party fees to (i) plead its entitlement to fees in its answer (Stockman v. Downs, 573 So. 2d 835, 837-38 (Fl. 1991)) and (ii) make a motion for fees and expenses within 30 days after the filing of a judgment or dismissal of the case.  *See* Fl. R. Civ. P. 1.525.   In some instances, a defendant may be considered the prevailing party if the plaintiff voluntarily dismisses the case.  *See* Tubbs v. Mechanik Nuccio Hearne & Wester, P.A., 125 So. 3d 1034, 1040-41 (Fla. Dist. Ct. App. 2013).

72.    As described above, Claimant lacks standing and is judicially estopped from asserting any claims related to the 2008 Foreclosure Proceeding, including any claims for fees or costs.  See Priore Decl., Exhibit 2-G.  Moreover, Claimant neither pled her entitlement to prevailing party fees in her Answer in the 2008 Foreclosure Proceeding (see Priore Decl., Exhibit 2-N), nor sought fees and costs by post judgment motion.  See Priore Decl., Exhibit 2-J  As a result, even if Claimant had standing and was not judicially estopped from seeking prevailing party fees in connection with the 2008 Foreclosure Proceeding, she had long been time-barred from seeking these fees at the time she filed the Proof of Claim.

73.     Similarly, Claimant has not pled her entitlement to fees and expenses in the 2012

Foreclosure Proceeding – nor does her Proof of Claim assert an entitlement to fees and expenses.

More importantly, however, the 2012 Foreclosure Proceeding is still pending, although it is

stayed as a result of Claimant's chapter 13 bankruptcy case.  Since Claimant has not <u>prevailed</u> in

the 2012 Foreclosure Proceeding, if anything, she holds a contingent claim for fees and

expenses.  It is unclear whether such a claim would lie against GMAC Mortgage, as servicer of

the loan, or the named plaintiff.

### D.    The Proof of Claim Is Not Supported by Sufficient Documentation

74.     Even if the Claimant could prove the elements of any of the above claims, the

Claim should still be disallowed because Claimant has failed to provide any basis for her

calculation of damages.  Although a properly filed proof of claim constitutes *prima facie*

evidence of the validity of the claim, Fed. R. Bankr. P. 3001(f), failure to attach the

documentation required by Bankruptcy Rule 3001 will result in the loss of the *prima facie*

validity of the claim.  <u>Memorandum Opinion and Order Sustaining Objection to Claim 5420</u>

<u>Filed by Vachagan Abed-Stephen and Susie Abed-Stephen</u> ("<u>Abed-Stephen</u>") at 10 [Docket

No. 6432]; <u>In re Minbatiwalla</u>, 424 B.R. 104, 112 (Bankr. S.D.N.Y. 2010); <u>see also</u> Bar Date

Order ¶ 5(e).[15]

75.     Failure to attach sufficient documentation to a proof of claim can result in

disallowance of the claim under appropriate circumstances because absent adequate

documentation, the proof of claim is not sufficient for the objector to concede the validity of the

---

[15] Paragraph 5(e) of this Court's *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [Docket No. 1309] (the "**Bar Date Order**") provides that "Proofs of claim must (i) be signed by the claimant or by an authorized agent of the claimant; (ii) ***include supporting documentation (if voluminous, attach a summary) or an explanation as to why documentation is not available***; (iii) be written in the English language; and (iv) be denominated in lawful currency of the United States." (Emphasis added.)

claim. See Minbatiwalla, 424 B.R. at 119 (citing In re Porter, 374 B.R. 471, 480 (Bankr. D. Conn. 2007)).

76.    The Proof of Claim is devoid of any supporting documentation as to its amount and has no basis in the Debtors' books and records.  Although the Proof of Claim asserts a secured claim of $450,000, Claimant provides no basis for or proof of any security interest, and the Debtor's Books and Records reveal no basis either.  Further, Claimant does not provide any calculation of the $5 million claim amount.  Indeed, in connection with her recent chapter 13 bankruptcy filing, Claimant scheduled a claim against Residential Capital, but indicated that the claim only had a value of $1.5 million.  See Priore Decl., Exhibit 2-Q at 10.  For these reasons, the Proof of Claim is not prima facie valid.  See In re Lehman Bros. Holdings Inc., No. 08-13555 (JMP), 2010 Bankr. LEXIS 4147, at *8 (Bankr. S.D.N.Y. Nov. 10, 2010) (determining that the claims were "so lacking in supporting evidence and logical linkage to the Debtors' cases, they are not entitled to any presumption that they are prima facie valid, and the burden of proof has shifted to claimant," and further disallowing such claims, noting that they were "founded on pure speculation"); accord Abed-Stephen, slip op. at 11 (finding alleged claim amount in excess of $29,000 "wholly unsupported" where claim was asserted in the amount of $1.75 million, but letter attached to proof of claim detailed only $29,000 in expenses incurred as a result of Debtor's alleged wrongdoing).

## NOTICE

The Borrower Trust has provided notice of this Motion in accordance with the Case Management Procedures Order approved by this Court on May 23, 2012 [Docket No. 141] and the Claims Procedures Order [Docket No. 3294].

ny-1146178

## CONCLUSION

WHEREFORE, the Borrower Trust respectfully requests entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem proper.


Dated: October 20, 2014

/s/ Norman S. Rosenbaum
Norman S. Rosenbaum
Jordan A. Wishnew
James A. Newton
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900

*Counsel for the ResCap Borrower Claims Trust*

- 30 -

ny-1146178