## Exhibit 2

**Priore Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————— )
                                                          )
In re:                                                  )      Case No. 12-12020 (MG)
                                                          )
RESIDENTIAL CAPITAL, LLC, et al.,      )      Chapter 11
                                                          )
            Debtors.                                )      Jointly Administered
                                                          )
———————————————————————— )

**DECLARATION OF KATHY PRIORE IN SUPPORT OF**
**THE RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO**
**PROOF OF CLAIM NO. 2536 FILED BY STEPHANIE HARRIS**

I, Kathy Priore, hereby declare as follows:

　　　　　1.　　　I serve as Associate Counsel for The ResCap Liquidating Trust (the

"**Liquidating Trust**"), established pursuant to the terms of the *Second Amended Joint Chapter*

*11 Plan Proposed by Residential Capital, LLC, et al., and the Official Committee of Unsecured*

*Creditors* [Docket No. 6030] confirmed in the above-captioned chapter 11 cases (the "**Chapter**

**11 Cases**").  During the Chapter 11 cases, I served as Associate Counsel in the legal department

at Residential Capital, LLC ("**ResCap**"), a limited liability company organized under the laws of

the state of Delaware and the parent of the other debtors in the above-captioned Chapter 11

Cases (collectively, the "**Debtors**").  I joined ResCap on May 1, 2008 as in-house litigation

counsel.  Prior to my in-house litigation counsel position, I held various roles within the legal

department at ResCap.

　　　　　2.　　　In my role as Associate Counsel at ResCap, I was responsible for the

management of residential mortgage-related litigation.  In connection with ResCap's chapter 11

filing, I also assisted the Debtors and their professional advisors in connection with the

administration of the Chapter 11 Cases, including the borrower litigation matters pending before

this Court.  In my current position as Associate Counsel to the Liquidating Trust, among my

1

other duties, I continue to assist the Liquidating Trust and Borrower Claims Trust (the

"**Borrower Trust**") in connection with the claims reconciliation process.[1]  I am authorized to

submit this declaration (the "**Declaration**") in support of the *ResCap Borrower Claims Trust's*

*Objection to Proof of Claim No. 2536 Filed by Stephanie Harris* (the "**Objection**").[2]

>       3.      In my current and former capacities as Associate Counsel to the

Liquidating Trust and ResCap, I am intimately familiar with the Debtors' claims reconciliation

process.  Except as otherwise indicated, all statements in this Declaration are based on my

familiarity with the Debtors' Books and Records (the "**Books and Records**"), as well as the

Debtors' schedules of assets and liabilities and statements of financial affairs filed in these

Chapter 11 Cases (collectively, the "**Schedules**"), my review and reconciliation of claims, and/or

my review of relevant documents.  I or other Liquidating Trust personnel have reviewed and

analyzed the proof of claim form and supporting documentation filed by the Claimant.  Since the

Plan went effective and the Borrower Trust was established, I, along with other members of the

Liquidating Trust have consulted with the Borrower Trust to continue the claims reconciliation

process, analyze claims and determine the appropriate treatment of the same.  In connection with

such review and analysis, where applicable, I or other Liquidating Trust personnel, together with

professional advisors, have reviewed (i) information supplied or verified by former personnel in

departments within the Debtors' various business units, (ii) the Books and Records, (iii) the

Schedules, (iv) other filed proofs of claim, and/or (v) the official claims register maintained in

the Debtors' Chapter 11 Cases.

---

[1] The ResCap Liquidating Trust and the ResCap Borrower Claims Trust are parties to an Access and Cooperation
Agreement, dated as December 17, 2013, which, among of things, provides the Borrower Trust with access to the
books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in
performing its obligations.
[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Objection.

ny-1161616

4.      Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations, information learned from my review of relevant documents and information I have received through my discussions with other former members of the Debtors' management or other former employees of the Debtors, the Liquidating Trust, and the Borrower Trust's professionals and consultants.  If I were called upon to testify, I could and would testify competently to the facts set forth in the Objection on that basis.

## I.      Origination and Transfer of the Loan

5.      On or about February 21, 2007, Claimant executed an adjustable rate note (the "**Note**")[3] in favor of People's Choice Home Loan, Inc. in the amount of $297,500 in connection with her refinancing of a home loan.[4]  Claimant's obligations under the Note were secured by a mortgage (the "**Mortgage**"[5] and, together with the Note, the "**Loan**") on property located at 1525 Lenox Avenue, Unit 2, Miami Beach, Florida 33139 (the "**Property**").  Debtor Residential Funding Company, LLC ("**RFC**") subsequently acquired the Loan as an investor and the Note was endorsed to RFC.  See Note at 5.  Debtor GMAC Mortgage, LLC began servicing the Loan on or about April 9, 2007.

6.      RFC transferred its interest in the Loan to LaSalle Bank, N.A., as Trustee for holders of Mortgage Asset-Backed Pass-Through Certificates Series 2007-SP3, on or about September 1, 2007 in connection with the Loan's securitization, and the Note was endorsed to LaSalle Bank, N.A., as Trustee by special endorsement.  See Note at 5.[6]

---

[3] A copy of the Note is attached hereto as Exhibit 2-A.
[4] A copy of the Loan Application is attached hereto as Exhibit 2-B.
[5] A copy of the Mortgage is attached hereto as Exhibit 2-C.
[6] Subsequently, Bank of America N.A. became the trustee for holders of Mortgage Asset-Backed Pass-Through Certificates Series 2007-SP3, as successor by merger to LaSalle Bank, and U.S. Bank thereafter became trustee as successor in interest to Bank of America.

7.      On or about February 8, 2012, the Mortgage was mistakenly assigned by Mortgage Electronic Registration Systems, Inc., as nominee for People's Choice Home Loan, Inc., to Deutsche Bank Trust Company Americas as Trustee RAMP 2007-SP3,[7] although it should have been assigned to U.S. Bank, as trustee for the similarly named <u>RAAC</u> 2007-SP3 trust.

## II.     The Parties' Loss Mitigation Efforts

### A.     Pre-Foreclosure Work-out Attempts

8.      On or about October 27, 2007, GMAC Mortgage spoke with Claimant and advised her that the October 1, 2007 payment due on the Loan had not been received.  <u>See</u> Excerpts of Servicing Notes attached hereto as <u>Exhibit 2-E</u> (the "**Servicing Notes**"), at lines 233-239.[8]  Although GMAC Mortgage declined Claimant's request to defer payment of the monthly sum due and owing, GMAC Mortgage did advise the Claimant that a repayment plan could be considered if Claimant was able to make a payment.  <u>See</u> Servicing Notes at lines 236-237.  On January 15, 2008, the Claimant obtained a repayment plan which,[9] if completed, would have brought claimant current on her Loan payments over the course of the following five months.  <u>See</u> Servicing Notes at lines 407-416.  Claimant made the first payment by phone on January 15, 2008, but failed to make the second payment that was due on February 17, 2008.  <u>See</u> Servicing Notes at line 423.

9.      On February 29, 2008, Claimant contacted GMAC Mortgage by phone, and GMAC Mortgage agreed to set up a new repayment plan – this time a six month repayment plan.  <u>See</u> Servicing Notes at lines 450-457.  Claimant once again made the first payment under

---

[7] A copy of the Assignment of Mortgage is attached hereto as <u>Exhibit 2-D.</u>
[8] GMAC Mortgage acted on behalf of the lender and was authorized to discuss and offer loan modification and other workout options with Claimant on the lender's behalf.
[9] A repayment plan refers to a plan whereby a borrower cures arrearages over a period of time and the servicer agrees to forego a referral to foreclosure for as long as the borrower is in compliance with the terms of the repayment plan.

4

the second repayment plan over the phone, but the second repayment plan was again terminated

when the Claimant's March 29, 2008 payment was returned for insufficient funds.  See Servicing

Notes at line 471.

10.     On May 13, 2008, Claimant again called and spoke with a GMAC

Mortgage representative.  After refusing on a previous occasion to provide the requisite financial

information for consideration of a loan modification, the Claimant agreed to provide GMAC

Mortgage with the necessary financial information verbally.  See Servicing Notes at lines 562-

571.  Claimant was advised on May 28, 2008 that she had insufficient available income to be

able to obtain and comply with the terms of a traditional loan modification, including an

increased payment resulting from escrow deficiencies due to Claimant's failure to pay taxes.[10]

See Servicing Notes at lines 582-595.

**B.     The 2008 Foreclosure Proceeding and Claimant's First Bankruptcy Case**

11.     On May 28, 2008, GMAC Mortgage sent to Claimant a breach letter,

indicating that Movant remained delinquent on her April 2008 and subsequent Loan payments.[11]

Thereafter, on or about July 2, 2008, GMAC Mortgage referred the Loan to foreclosure.  See

Servicing Notes at lines 608-611.

12.     On July 15, 2008, GMAC Mortgage initiated a foreclosure proceeding in

the Third Circuit Court of the Eleventh Judicial District in and for Dade County, Florida (the

"**State Court**"), Case No. 2008-40534-CA-01, on behalf of Deutsche Bank Trust Company

Americas, as Trustee (the "**2008 Foreclosure Proceeding**").[12]

---

[10] Although the Claimant would later be considered for a loan modification under the Home Affordable Mortgage
Program ("**HAMP**"), HAMP did not take effect until April of 2009.
[11] A copy of the Breach Letter is attached hereto as Exhibit 2-F.
[12] A copy of the complaint from the 2008 Foreclosure Proceeding is attached hereto as Exhibit 2-G.

ny-1161616

13.    On or about October 3, 2008, GMAC Mortgage received a letter from Claimant requesting a loan modification.[13]  Thereafter, on October 15, 2008, Claimant's authorized representative spoke with GMAC Mortgage over the phone, and was informed that updated financial information was necessary to consider Claimant for a loan modification.  See Servicing Notes at lines 989-990.  On October 17, 2008, GMAC Mortgage received a workout package.  However, the package was missing the required proof of Claimant's income and copies of her income tax returns.  See  Servicing Notes at lines 1001-1005.

14.    On May 5, 2009, Claimant again spoke with GMAC Mortgage, and a temporary "stop gap" plan was set up, calling for a reduced payment of $1,860 per month for two months to provide Claimant time to return a workout package.  See Servicing Notes at line 1454.  In accordance with this conversation, GMAC Mortgage sent Claimant a workout package. See Servicing Notes at line 1480.

15.    On May 20, 2009, Claimant contacted GMAC Mortgage and indicated that the workout package had not been received and requested that GMAC Mortgage resend the package.  See Servicing Notes at lines 1734-1741.  Consequently, GMAC Mortgage sent Claimant a new workout package on May 21, 2009.  See Servicing Notes at lines 1766-1768. GMAC Mortgage does not have a record of receiving the completed workout package from Claimant in the following weeks.

16.    On August 3, 2009, Claimant once again contacted GMAC Mortgage to request a loan modification.  GMAC Mortgage set up a HAMP trial plan with a first payment due on August 31, 2009.  See Servicing Notes at lines 2077-2082.  Claimant failed to make the first payment when due.  See Servicing Notes at line 2205.

---

[13] A copy of the Loan Modification Request Letter is attached hereto as Exhibit 2-H.

17.     On September 28, 2009, Claimant contacted GMAC Mortgage to indicate that she wanted a traditional loan modification, not a HAMP modification.  See Servicing Notes at lines 2296-2304.  Thereafter, on October 13, 2009, Claimant contacted GMAC Mortgage requesting that she be provided with a permanent loan modification, without the need for a trial plan.  See Servicing Notes at lines 2366-2372.  On October 20, 2009, in response to another request by Claimant for a traditional loan modification, GMAC Mortgage informed the Claimant that the loan modification process needed to be followed and that Claimant's HAMP and traditional loan modification options would be considered after she submitted a loan workout package.  See Servicing Notes at lines 2393-2406.  GMAC Mortgage has no record of receiving a workout package in response to these discussions.

18.     On January 27, 2010, Claimant filed a petition for chapter 7 relief in the United States Bankruptcy Court for the Southern District of Florida, Case No. 10-11746-AJC.  See Servicing Notes at lines 2766-2775.[14]

19.     On April 15, 2010, in response to an inquiry from Claimant, GMAC Mortgage contacted Claimant to offer a traditional fixed rate loan modification with a five percent (5%) interest rate.  See Servicing Notes at lines 3690-3696.  Claimant refused the loan modification.  See Servicing Notes at lines 3700-3702.  GMAC Mortgage also offered as a possible option a short settlement, whereby Claimant would have been permitted to pay off her Loan for a reduced amount, but Claimant indicated that she could not discuss this option for a month-and-a-half.  See Servicing Notes at lines 3690-3696.  GMAC Mortgage does not have a record of Claimant pursuing this option further.

---

[14] A copy of Claimant's 2010 Bankruptcy Petition is attached hereto as Exhibit 2-I.

20.     On December 13, 2010, GMAC Mortgage voluntarily dismissed the 2008 Foreclosure Proceeding after learning that the case should not have been brought in the name of Deutsche Bank as trustee.[15]

21.     On February 11, 2011, Claimant received a discharge in her first bankruptcy case.[16]  Although Claimant's statement of intent indicated her intention to reaffirm her mortgage, no reaffirmation agreement appears to have been executed or filed prior to her discharge.[17]

### C.     The 2012 Foreclosure Proceeding

22.     On February 22, 2011, GMAC Mortgage referred Claimant's account to foreclosure and, on April 25, 2012, GMAC Mortgage initiated a new foreclosure proceeding in the State Court, Case No. 12-16257-CA-23 (the "**2012 Foreclosure Proceeding**"), again mistakenly initiating the foreclosure on behalf of Deutsche Bank Trust Company Americas as Trustee for RAMP 2007SP3.[18]  See Servicing Notes at lines 6324-6326.

23.     On or about June 15, 2012, Claimant filed an Answer to GMAC Mortgage's complaint.[19]

24.     On February 15, 2013, servicing of the Loan transferred from GMAC Mortgage to Ocwen Loan Servicing, LLC ("**Ocwen**") in connection with Debtors' sale of their mortgage servicing platform in these Chapter 11 Cases.  Consequently, Ocwen has taken over the prosecution of the 2012 Foreclosure Proceeding.

---

[15] A copy of the 2008 Foreclosure Proceeding Docket Report is attached hereto as Exhibit 2-J.
[16] A copy of the 2010 Bankruptcy Discharge Order in Claimant's chapter 7 case is attached hereto as Exhibit 2-K.
[17] A copy of the Docket Report from Claimant's chapter 7 case is attached hereto as Exhibit 2-L.
[18] A copy of the Complaint in the 2012 Foreclosure Proceeding is attached hereto as Exhibit 2-M.
[19] A copy of Claimant's Answer in the 2012 Foreclosure Proceeding is attached hereto as Exhibit 2-N.

25.    As of the date that servicing of the Loan transferred to Ocwen, Claimant's account remained due and owing for the April 1, 2008 and subsequent payments, but she had not been dispossessed of the Property.

26.    On January 3, 2014, the State Court entered an order setting the 2012 Foreclosure Proceeding for trial on February 24, 2014.[20]

### D.    Claimant's 2014 Bankruptcy Case

27.    On February 12, 2014, Claimant filed a petition for relief under chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida, Case No. 14-13319.[21]  Claimant's chapter 13 bankruptcy case and the 2012 Foreclosure Proceeding are currently pending.

### E.    The Proof of Claim

28.    On November 6, 2012, Claimant filed proof of claim number 2536 against ResCap (the "**Proof of Claim**").[22]

29.    On June 21, 2013, the Debtors sent Claimant a letter requesting additional support for the Proof of Claim.  The Debtors did not receive a response from Claimant.

### F.    Other Relevant Documents

30.    In addition to the documents referenced above, a copy of GMAC Mortgage's motion for relief from the automatic stay filed in Claimant's chapter 7 case is attached hereto as Exhibit 2-R.

---

[20] A copy of the Docket Report in the 2012 Foreclosure Proceeding is attached hereto as Exhibit 2-O.
[21] A copy of Claimant's 2014 Bankruptcy Petition is attached hereto as Exhibit 2-P.
[22] A copy of the Proof of Claim is attached hereto as Exhibit 2-Q.

9

ny-1161616

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that, to the best of my

knowledge, the foregoing is true and correct.

Dated:  October 20, 2014

 /s/ Kathy Priore
Kathy Priore
Associate Litigation Counsel for
The ResCap Liquidating Trust

10

## EXHIBIT LIST

| | |
|---|---|
| Exhibit 2-A | February 21, 2007 Note |
| Exhibit 2-B | Loan Application |
| Exhibit 2-C | Mortgage |
| Exhibit 2-D | Assignment of Mortgage |
| Exhibit 2-E | Excerpts of Servicing Notes[1] |
| Exhibit 2-F | Breach Letter |
| Exhibit 2-G | 2008 Foreclosure Proceeding Complaint |
| Exhibit 2-H | Loan Modification Request Letter |
| Exhibit 2-I | 2010 Bankruptcy Petition |
| Exhibit 2-J | Docket Report in the 2008 Foreclosure Proceeding |
| Exhibit 2-K | 2010 Bankruptcy Discharge Order |
| Exhibit 2-L | Chapter 7 Bankruptcy Docket Report |
| Exhibit 2-M | 2012 Foreclosure Proceeding Complaint |
| Exhibit 2-N | Harris Answer in the 2012 Foreclosure Proceeding |
| Exhibit 2-O | Docket Report in the 2012 Foreclosure Proceeding |
| Exhibit 2-P | 2014 Bankruptcy Petition |
| Exhibit 2-Q | Harris Proof of Claim No. 2536 |
| Exhibit 2-R | GMAC Mortgage's motion for relief from the automatic stay |

---

[1] In order to protect potentially private information, Exhibit 2-E is only being produced to the Court, the U.S. Trustee, and Stephanie Harris. The excerpts of servicing notes will not be publicly filed on the docket with the other Exhibits included in the Objection.

11

**Exhibit 2-A**

**February 21, 2007 Note**

Loan Number ███████

## ADJUSTABLE RATE NOTE
### (LIBOR Six-Month Index (As Published In The Wall Street Journal)-Rate Caps)
### Including Prepayment Penalty

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY
INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE
AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME
AND THE MAXIMUM RATE I MUST PAY.**

| **02/21/2007** | **FT. LAUDERDALE** | **FLORIDA** |
|---|---|---|
| [Date] | [City] | [State] |

**1525 LENOX AVE., UNIT 2, MIAMI BEACH, FLORIDA 33139**
[Property Address]

## 1.   BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 297,500.00  (this amount is called "Principal"), plus interest, to the order of Lender.  Lender is PEOPLE'S CHOICE HOME LOAN, INC. a WYOMING CORPORATION.

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.   INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 9.400% . The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3.   PAYMENTS
### (A) Time and Place of Payments
I will pay principal and interest by making a payment every month.

I will make my monthly payments on the 1st day of each month beginning on April 1, 2007. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on March 1, 2037, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 52678, Irvine, CA 92619 or at a different place if required by the Note Holder.
### (B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $ 2,479.87 . This amount may change.

### (C) Monthly  Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Date(s)
The interest rate I will pay may change on the 1st day of March, 2009 and every  6 month(s) thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in the Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding seven and three-quarters percentage points ( 7.750% ) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 12.400% or less than 9.400 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point(s) ( 1.000% ) from the rate of interest I have been paying for the preceding 6 months.

My interest rate will never be greater than 15.400%. My interest rate will never be less than 9.400%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only before it is due is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments then due under this Note.

The Note Holder will use my Prepayment to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial prepayment may be offset by an increase in the interest rate.

If within Twenty-four (24) months from the date of execution of the Security Instrument, I make full Prepayment or partial Prepayment, and the total of such Prepayment(s) in any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan, I will pay a Prepayment charge in an amount equal to 6 months' advance interest on the amount by which the total of my Prepayment(s) within that 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED
### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

## 8. GIVING OF NOTICES

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**12. DOCUMENTARY TAX**

The state documentary tax due on this Note has been paid on the Mortgage securing this indebtedness.

### WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)                    _____ (Seal)
STEPHANIE HARRIS            -Borrower                                                          -Borrower

_____ (Seal)                    _____ (Seal)
                            -Borrower                                                          -Borrower

_____ (Seal)                    _____ (Seal)
                            -Borrower                                                          -Borrower

_____ (Seal)                    _____ (Seal)
                            -Borrower                                                          -Borrower

[Sign Original Only]

PAY TO THE ORDER OF

RESIDENTIAL FUNDING COMPANY, LLC

WITHOUT RECOURSE

PEOPLE'S CHOICE HOME LOAN, INC.
A Wyoming Corporation

By _____

DANA LANTRY

Title:  Asst. Vice President

PAY TO THE ORDER OF
LaSalle Bank, N.A. as Trustee
WITHOUT RECOURSE
Residential Funding Company, LLC

By: _____

Judy Faber, Vice President

## Exhibit 2-B

**Loan Application**

# Uniform Residential Loan Application
### EXPRESS FINANCIAL CORP.

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicant should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse or other person who has community property rights Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (below):

Borrower _____    Co-Borrower _____

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA  ☒ Conventional  ☐ Other (explain): | Agency Case Number | Lender Case Number |
|---|---|---|---|
| | ☐ FHA  ☐ USDA/Rural Housing Service | | |

| Amount | Interest Rate | No. of Months | Amortization Type: | ☐ Fixed Rate  ☐ Other (explain): |
|---|---|---|---|---|
| $ 297,500.00 | 9.400 % | 360 | | ☐ GPM  ☒ ARM (type) 2/28 - |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state & ZIP) | No. of Units |
|---|---|
| 1525 LENOX AVENUE UNIT #2, MIAMI BEACH, FL 33139 | 1 |

| Legal Description of Subject Property (attach description if necessary) | Year Built |
|---|---|
| SEE PRELIMINARY TITLE REPORT | 1952 |

| Purpose of Loan | ☐ Purchase  ☐ Construction  ☐ Other (explain): | Property will be: |
|---|---|---|
| | ☒ Refinance  ☐ Construction-Permanent | ☒ Primary Residence  ☐ Secondary Residence  ☐ Investment |

**Complete this line if construction or construction-permanent loan.**

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a+b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

**Complete this line if this is a refinance loan.**

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe improvements ☒ made ☐ to be made |
|---|---|---|---|---|
| 2005 | $ 200,000 | $ 279,584 | Cash Out | Cost $ |

| Title will be held in what Name(s) | Manner in which Title will be held | Estate will be held in: |
|---|---|---|
| STEPHANIE HARRIS | Single Woman | ☒ Fee Simple  ☐ Leasehold (show expiration date) |

| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain) |
|---|

## III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) | Co-Borrower's Name (include Jr. or Sr. if applicable) | |
| STEPHANIE HARRIS | | |

| Social Security Number | Home Phone (incl. area code) | DOB (MM/DD/YYYY) | Yrs. School | Social Security Number | Home Phone (incl. area code) | DOB (MM/DD/YYYY) | Yrs. School |
|---|---|---|---|---|---|---|---|
| | | | 16 | | | | |

| ☐ Married  ☒ Unmarried (include single, divorced, widowed) | Dependents (not listed by Co-Borrower) no. 0  ages | ☐ Married  ☐ Unmarried (include single, divorced, widowed) | Dependents (not listed by Borrower) no.  ages |
|---|---|---|---|
| ☐ Separated | | ☐ Separated | |

| Present Address (street, city, state, ZIP) ☒ Own ☐ Rent 2 No. Yrs. | Present Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. |
|---|---|

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|

**If residing at present address for less than two years, complete the following:**

| Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. |
|---|---|

## IV. EMPLOYMENT INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|

| Name & Address of Employer ☒ Self Employed | Yrs. on this job | Name & Address of Employer ☐ Self Employed | Yrs. on this job |
|---|---|---|---|
| THE CHADWICK CORP INVESTMENT REALTY | | | |
| 1525 LENOX UNIT #1 | Yrs. employed in this line of work/profession | | Yrs. employed in this line of work/profession |
| MIAMI BEACH, FL 33139 | 22Y | | |

| Position/Title/Type of Business OWNER REAL ESTATE | Business Phone (incl. area code) (305) 696-1147 | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

**If employed in current position for less than two years or if currently employed in more than one position, complete the following:**

| Name & Address of Employer ☐ Self Employed | Dates (from - to) | Name & Address of Employer ☐ Self Employed | Dates (from - to) |
|---|---|---|---|
| | Monthly Income $ | | Monthly Income $ |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

| Name & Address of Employer ☐ Self Employed | Dates (from - to) | Name & Address of Employer ☐ Self Employed | Dates (from - to) |
|---|---|---|---|
| | Monthly Income $ | | Monthly Income $ |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

Freddie Mac Form 65  7/05                                   Page 1 of 4                                   Fannie Mae Form 1003 7/05
Borrower's Initials _____                   GENESIS 2000, INC. • W17.0 • (800) 889-0504                   Co-Borrower's Initials _____

HARRIS



## EXPRESS FINANCIAL CORP.

### V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 9,450.00 | $ | $ 9,450.00 | Rent | $ | XXXXXXXX |
| Base Empl. Income* | $ 9,450.00 | $ | $ 9,450.00 | First Mortgage (P&I) | 1,289.01 | 479.86 |
| Overtime | | | | Rent Mortgage (P&I) | 1,289.01 | 2,479.86 |
| Bonuses | | | | Other Financing (P&I) | 899.09 | |
| Commissions | | | | Hazard Insurance | | |
| Dividends/Interest | | | | Real Estate Taxes | | 290.83 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | 290.00 | 290.00 |
| | | | | Other | | |
| Total | $ 9,450.00 | $ | $ 9,450.00 | Total | $ 2,478.10 | $ 3,060.69 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

| B/C | Describe Other Income  Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-borrower (C) does not choose to have it considered for repaying this loan. | Monthly Amount |
|---|---|---|
| | | $ |
| | | |
| | | |

### VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.    Completed ☐ Jointly ☒ Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address, and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities, which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | **LIABILITIES** | Monthly Payment & Months Left to Pay | Unpaid Balance |
| List checking and saving accounts below | | Name and address of Company    (R.E. Loan) | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | CHASE MANHATTAN MORTGA | | |
| WACHOVIA BANK | | | | |
| | | Acct. no. | 3,233.00 / | 383,523 |
| Acct. no. | $ 8,450.00 | Name and address of Company    (R.E. Loan) | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | J. SANTANA INV. | | |
| WACHOVIA BANK | | | | |
| | | Acct. no. | 400.00 / | 40,000 |
| Acct. no. | $ 35,780.00 | Name and address of Company    (R.E. Loan) | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | HECTOR SOLIS | | |
| | | | | |
| | | Acct. no. | 700.00 / | 50,000 |
| Acct. no. | $ | Name and address of Company    (R.E. Loan) | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | CHASE | | |
| | | | | |
| | | Acct. no. ▓▓▓ | (1,289.01)/ | 158,401* |
| Acct. no. | $ | Name and address of Company    (R.E. Loan) | $ Payment/Months | $ |
| Stock & Bonds (Company name/number & description) | $ | CHASE | | |
| | | Acct. no. | (899.09)/ | 123,183* |
| | | Name and address of Company | $ Payment/Months | $ |
| Life Insurance net cash value | $ | See Schedule of Charge Accounts | 649.00 | 19,150 |
| Face amount: $ | | | | |
| Subtotal Liquid Assets | $ 44,230 | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 1,550,000 | Acct. no. | | |
| Vested interest in retirement fund | $ | Name and address of Company | $ Payment/Months | $ |
| Net worth of business(es) owned (attach financial statement) | $ | | | |
| Automobiles owned (make and year) | $ | | | |
| | | Acct. no. | | |
| Other Assets (itemize) | $ | Alimony/Child Support/Separate Maintenance Payments Owed to | $ | |
| | | Job Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | $ 4,982.00 | |
| Total Assets a. | $ 1,594,230 | Net Worth (a minus b) ► $ 812,973 | Total Liabilities b. | $ 781,257 |

Freddie Mac Form 65 7/05    Page 2 of 4    Fannie Mae Form 1003 7/05
Borrower's Initials    GENESIS 2000, INC. • W17-0 • (800) 888-0504    Co-Borrower's Initials

954930885377    P.07    PEOPLE'S CHOICE HOME LOAN    FEB-16-2007 17:27

## Continuation Sheet/Residential Loan Application

### EXPRESS FINANCIAL CORP.

Agency Case Number:

02/13/2007 16:43 FAX 5613680383    EXPRESS FINANCIAL    ☑004

02/13/2007 16:43 FAX 5613680383    EXPRESS FINANCIAL    ☑004

### EXPRESS FINANCIAL CORP.

## VI. ASSETS AND LIABILITIES (cont.)

Schedule of Real Estate Owned (if additional properties are owned, use continuation sheet.)

| Property Address (enter R if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 1858 LENOX AVENUE #1 MIAMI BEACH, FL 33139 | R Condo | 1,200,000 | 483,523 | 4,850.00 | 4,333.00 | 463.00 | -1,148.50 |
| 1828 LENOX AVENUE UNIT #2 MIAMI BEACH, FL 33139 | O/O Condo | 350,000 | 279,584 | 0.00 | 2,188.10 | 290.00 | 0.00 |
| | Totals | 1,550,000 | 763,107 | 4,850.00 | 6,521.10 | 743.00 | -1,148.50 |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):
Alternate Name    Creditor Name    Account Number

## VII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | |
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | 279,584.00 |
| e. Estimated prepaid items | 1,165.21 |
| f. Estimated closing costs | 5,050.25 |
| g. PMI, MIP, Funding Fee | |
| h. Discount (if Borrower will pay) | |
| i. Total costs (add items a through h) | 285,799.46 |
| j. Subordinate financing | |
| k. Borrower's closing costs paid by Seller | |
| l. Other Credits (explain) Paid Charges in GFE | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 297,500.00 |
| n. PMI, MIP, Funding Fee financed | |
| o. Loan amount (add m & n) | 297,500.00 |
| p. Cash to Borrower (subtract j, k, l & o from i) | 11,700.54 |

## VIII. DECLARATIONS

| If you answer "yes" to any questions a through i, please use continuation sheet for explanation. | Borrower Yes No | Co-Borrower Yes No |
|---|---|---|
| a. Are there any outstanding judgments against you? | ☐ ☒ | ☐ ☐ |
| b. Have you been declared bankrupt within the past 7 years? | ☐ ☒ | ☐ ☐ |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | ☐ ☒ | ☐ ☐ |
| d. Are you a party to a lawsuit? | ☐ ☒ | ☐ ☐ |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | ☐ ☒ | ☐ ☐ |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? | ☐ ☒ | ☐ ☐ |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | ☐ ☒ | ☐ ☐ |
| h. Is any part of the down payment borrowed? | ☐ ☒ | ☐ ☐ |
| i. Are you a co-maker or endorser on a note? | ☐ ☒ | ☐ ☐ |
| j. Are you a U.S. citizen? | ☒ ☐ | ☐ ☐ |
| k. Are you a permanent resident alien? | ☐ ☒ | ☐ ☐ |
| l. Do you intend to occupy the property as your primary residence? | ☒ ☐ | ☐ ☐ |
| m. Have you had an ownership interest in a property in the last three years? | ☒ ☐ | ☐ ☐ |
| (1) What type of property did you own - principal residence (PR), second home (SH), or investment property (IP)? | PR/IP | |
| (2) How did you hold title to the home - solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | S/O | |

## IX. ACKNOWLEDGMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application...

| Borrower's Signature | Date 2/11/07 | Co-Borrower's Signature X | Date |
|---|---|---|---|

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws...

| BORROWER | I do not wish to furnish this information | CO-BORROWER | I do not wish to furnish this information |
|---|---|---|---|
| Ethnicity: | Hispanic or Latino ☐   Not Hispanic or Latino ☒ | Ethnicity: | Hispanic or Latino ☐   Not Hispanic or Latino ☐ |
| Race: | American Indian or Alaska Native ☐   Asian ☐   Black or African American ☐   Native Hawaiian or Other Pacific Islander ☐   White ☒ | Race: | American Indian or Alaska Native ☐   Asian ☐   Black or African American ☐   Native Hawaiian or Other Pacific Islander ☐   White ☐ |
| Sex: | Female ☒   Male ☐ | Sex: | Female ☐   Male ☐ |

| To be Completed by Interviewer | Interviewer's Name (print or type) MICHAEL KRUMHOLZ | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by: ☐ Face-to-face interview ☐ Mail ☒ Telephone ☐ Internet | Interviewer's Signature   Date 2-15-07   Interviewer's Phone Number (incl. area code) (561) 368-1771   FAX:(561) 392-1382 | EXPRESS FINANCIAL CORP. 1515 NORTH FEDERAL HIGHWAY SUITE 107 BOCA RATON, FL 33432 |

Freddie Mac Form 65 7/05    Page 3 of 4    Fannie Mae Form 1003 7/05
GENESIS 2000, INC. * W17.0 * (800) 562-0304

9S40988577    P.08    PEOPLE'S CHOICE HOME LOAN    FEB-16-2007 17:27

# Continuation Sheet/Residential Loan Application

EXPRESS FINANCIAL CORP.

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower: STEPHANIE HARRIS | Agency Case Number: |
|---|---|---|
| | Borrower: STEPHANIE HARRIS | |
| | Co-Borrower: | Lender Case Number: |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | 2/21/07 | X | |

Freddie Mac Form 65 7/05 — Page 4 of 4 — Fannie Mae Form 1003 7/05

GENESIS 2000, INC. * W17.0 * (800) 582-0504

02/16/2007 18:44 FAX 8613680353    EXPRESS FINANCIAL    ☎008

**EXPRESS FINANCIAL CORP.**

| | Borrower: STEPHANIE HARRIS | | Agency Case Number: |
| | Co-Borrower: | | Lender Case Number: |

| | SCHEDULE OF CHARGE ACCOUNTS AND OTHER LOANS | | |
|---|---|---|---|
| B/C | Name and address of Company | Payment/Months | Unpaid Balance |
| B | CAPITAL 1 BK | 118.00 / | 3,935 |
| | Charge Acct No. | | |
| B | CAP 1 BANK | 108.00 / | 3,522 |
| | Charge Acct No. | | |
| B | MERRICK BANK | 49.00 / | 1,626 |
| | Charge Acct No. | | |
| B | MIDLAND | 101.00 / | 3,372 |
| | Acct. No.    CHASE BAN-8500449512 | | |
| B | ASSET ACCEPTANCE LLC | (2,162.00)/ | 2,162 |
| | Acct. No. | | |
| B | I C SYSTEM INC | | 815 |
| | Acct. No. | | |
| B | WEST ASSET MANAGEMENT | | 432 |
| | Acct. No. | | |
| B | HCS CREDIT | | 282 |
| | Acct. No. | | |
| B | BCA FNCL SRV | | 280 |
| | Acct. No. | | |
| B | NCO-MEDCLR | 265.00 / | 265 |
| | Acct. No. | | |
| B | MEDICAL PAYMENT DATA | 10.00 / | 265 |
| | Acct. No. | | |
| B | ALLEN, MORRIS & ASSOC. | | 210 |
| | Acct. No. | | |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statement concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X                         7/21/07 | | X | |

GENESIS 2000, INC.™ W17.0 - (800) 532-0504                                                    Page 1 of 2

02/13/2007 16:44 FAX 001000000

## EXPRESS FINANCIAL CORP.

| Borrower: | | Agency Case Number: |
|---|---|---|
| STEPHANIE HARRIS | | Agency Case Number: |
| Co-Borrower: | | Lender Case Number: |

### SCHEDULE OF CHARGE ACCOUNTS AND OTHER LOANS

| B/C | Name and address of Company | Payment/Months | Unpaid Balance |
|---|---|---|---|
| B | FLORIDA FIRST FINANCIA<br>Acct. No. | | 201 |
| B | FLORIDA FIRST FINANC<br>Acct. No. | | 201 |
| B | COLLECTION<br>Acct. No. | | 157 |
| B | NCO FIN/99<br>Acct. No. | | 144 |
| B | NCO FIN/99<br>Acct. No. | | 126 |
| B | COLLECTION<br>Acct. No. | | 105 |
| B | WEST ASSET<br>Acct. No. | | 50 |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statement concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | 3/4/07 | X | |

GENESIS 2000, INC. " W17.0 " (800) 552-0504

Page 2 of 2

**<u>Exhibit 2-C</u>**

**Mortgage**

CFN 2007R0274673
OR Bk 25456 Pgs 2337 - 2359; (23pgs
RECORDED 03/16/2007 11:45:14
MTG DOC TAX 1,041.25
INTANG TAX 595.00
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

Return To:

Sun Valley Title
7000 W. Palmetto Park Rd., #305
Boca Raton, FL 33433

This document was prepared by:
People's Choice Home Loan,
Inc.
7515 Irvine Center Drive,
Irvine, CA 92618

────────────────── [Space Above This Line For Recording Data] ──────────────────

# MORTGAGE

MIN ███████████████

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated February 21, 2007
together with all Riders to this document.
**(B) "Borrower"** is STEPHANIE HARRIS, A SINGLE WOMAN

Borrower is the mortgagor under this Security Instrument.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(D) "Lender"** is PEOPLE'S CHOICE HOME LOAN, INC.

**FLORIDA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**    Form 3010  1/01

-6A(FL) (0005).02
Page 1 of 16        Initials:
VMP MORTGAGE FORMS - (800)521-7291

Lender is a CORPORATION
organized and existing under the laws of WYOMING
Lender's address is 7515 IRVINE CENTER DR., IRVINE, CA  92618

**(E) "Note"** means the promissory note signed by Borrower and dated February 21, 2007
The Note states that Borrower owes Lender TWO HUNDRED NINETY-SEVEN THOUSAND FIVE
HUNDRED AND 00/100                                                              Dollars
(U.S. $297,500.00           ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than March 1, 2037
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [X] Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

VMP®-6A(FL) (0005).02                Page 2 of 16            Initials: SN            Form 3010  1/01

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the COUNTY          [Type of Recording Jurisdiction]
of MIAMI-DADE                                                      [Name of Recording Jurisdiction]:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT 'A'

Parcel ID Number: 02-3234-151-0020                      which currently has the address of
1525 LENOX AVE., UNIT 2                                                      [Street]
MIAMI BEACH                                      [City], Florida 33139          [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

-6A(FL) (0005).02          Page 3 of 16          Initials:          Form 3010  1/01

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment



-6A(FL) (0005).02                    Page 4 of 16              Initials:          Form 3010  1/01

can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest

shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.



-6A(FL) (0005).02                          Page 6 of 16                Initials:____            Form 3010   1/01

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.



-6A(FL) (0005).02          Page 7 of 16          Initials: ___          Form 3010   1/01

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.



-6A(FL) (0005).02          Page 8 of 16          Initials:          Form 3010   1/01

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**



-6A(FL) (0005).02                Page 9 of 16        Initials: [signature]            Form 3010    1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of

-6A(FL) (0005).02                    Page 10 of 16                Initials:                Form 3010  1/01

any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers



-6A(FL) (0005).02                    Page 11 of 16          Initials:                    Form 3010   1/01

unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the



-6A(FL) (0005).02                    Page 12 of 16                    Initials:                    Form 3010  1/01

purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.



-6A(FL) (0005).02                Page 13 of 16              Initials:                Form 3010   1/01

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

-6A(FL) (0005).02                    Page 14 of 16                    Initials             Form 3010    1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____       _____ (Seal)
                                       STEPHANIE HARRIS                  -Borrower

                                       1525 LENOX AVE., MIAMI BEACH
                                       , FL 33139                        (Address)

_____       _____ (Seal)
                                                                         -Borrower


                                       _____ (Address)


_____ (Seal)       _____ (Seal)
             -Borrower                                                   -Borrower


_____ (Address)    _____ (Address)


_____ (Seal)       _____ (Seal)
             -Borrower                                                   -Borrower


_____ (Address)    _____ (Address)


_____ (Seal)       _____ (Seal)
             -Borrower                                                   -Borrower


_____ (Address)    _____ (Address)

-6A(FL) (0005).02                      Page 15 of 16                      Form 3010  1/01

**STATE OF FLORIDA,** *PALM Beach* **County ss:**
The foregoing instrument was acknowledged before me this *21st day of February 2007* by
STEPHANIE HARRIS, A SINGLE WOMAN

who is personally known to me or who has produced *FL drivers license* as identification.

*Judith Linskey*
Notary Public

-6A(FL) (0005).02                    Page 16 of 16

Judith M. Linskey
Commission #DD325898
Expires: Jun 21, 2008
Bonded Thru
Atlantic Bonding Co., Inc.

Initials: SM

Form 3010   1/01

Condominium Unit No. 2, of LINCOLN MEWS CONDOMINIUM, according to the Declaration of Condominium thereof, recorded in Official Records Book 21772, at Page 2818, of the Public Records of Miami-Dade County, Florida.

Loan Number [REDACTED]

### ADJUSTABLE RATE RIDER
### (LIBOR Six-Month Index (As Published In The Wall Street Journal)-Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 21st day of February, 2007 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to PEOPLE'S CHOICE HOME LOAN, INC. a WYOMING CORPORATION ("Lender") of the same date and covering the property described in the Security Instrument and located at:

1525 LENOX AVE., UNIT 2, MIAMI BEACH, FLORIDA 33139
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

### A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of 9.400%. The Note provides for changes in the interest rate and the monthly payments, as follows:

### 4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
#### (A) Change Dates
The interest rate I will pay may change on the 1st day of March, 2009 and on that day every 6 month(s) thereafter. Each date on which my interest rate could change is called a "Change Date."

#### (B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

msar1      09/26/01                         Page 1 of 3                              Initials: [signature]

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding seven and three-quarters percentage points ( 7.750%)to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D)    Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 12.400 % or less than 9.400 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than  one percentage points ( 1.000% ) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 15.400%.  My interest rate will never be less than 9.400%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)    Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.  Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption.  Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

msar2    09/26/01                              Page 2 of 3                         Initials: _____

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial prepayment may be offset by an increase in the interest rate.

If within Twenty-four (24) months from the date of execution of the Security Instrument, I make full Prepayment or partial Prepayment, and the total of such Prepayment(s) in any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan, I will pay a Prepayment charge in an amount equal to 6 months' advance interest on the amount by which the total of my Prepayment(s) within that 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
STEPHANIE HARRIS                    -Borrower                                            -Borrower

_____ (Seal)          _____ (Seal)
                                    -Borrower                                            -Borrower

_____ (Seal)          _____ (Seal)
                                    -Borrower                                            -Borrower

msar3      09/26/01                          Page 3 of 3                          Initials: _____

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this 21st      day of February, 2007      ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to PEOPLE'S CHOICE HOME LOAN,
INC.

(the
"Lender") of the same date and covering the Property described in the Security Instrument
and located at:

1525 LENOX AVE., UNIT 2, MIAMI BEACH, FLORIDA 33139
[Property Address]
The Property includes a unit in, together with an undivided interest in the common elements
of, a condominium project known as:

LINCOLN MEWS #2
[Name of Condominium Project]
(the "Condominium Project"). If the owners association or other entity which acts for the
Condominium Project (the "Owners Association") holds title to property for the benefit or use
of its members or shareholders, the Property also includes Borrower's interest in the Owners
Association and the uses, proceeds and benefits of Borrower's interest.

CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:
A. Condominium Obligations. Borrower shall perform all of Borrower's obligations under
the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i)
Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii)
code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when
due, all dues and assessments imposed pursuant to the Constituent Documents.
B. Property Insurance. So long as the Owners Association maintains, with a generally
accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which
is satisfactory to Lender and which provides insurance coverage in the amounts (including
deductible levels), for the periods, and against loss by fire, hazards included within the term
"extended coverage," and any other hazards, including, but not limited to, earthquakes and
floods, from which Lender requires insurance, then: (i) Lender waives the provision in

**MULTISTATE CONDOMINIUM RIDER** - Single Family - Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT
Form 3140 1/01
Wolters Kluwer Financial Services
VMP ®-8R (0411).01
Page 1 of 3          Initials:

Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Initials:

VMP ®-8R (0411).01          Page 2 of 3          Form 3140 1/01

OR BK 25456 PG 2359
LAST PAGE

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

_____ (Seal)          _____ (Seal)
STEPHANIE HARRIS         -Borrower                                 -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                 -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                 -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                 -Borrower

VMP®-8R (0411).01                Page 3 of 3                Form 3140 1/01

## Exhibit 2-D

**Assignment of Mortgage**

CFN: 20120161588 BOOK 28022 PAGE 4669
DATE:03/07/2012 08:28:21 AM
HARVEY RUVIN, CLERK OF COURT, MIA-DADE CTY

Prepared By: Albertelli Law
Record and Return To:                                    MIN# ████████4351
Albertelli Law
P.O. Box 23028
Tampa, FL 33623

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, the undersigned assignor ("Assignor") whose address is P.O. Box
2026, Flint, MI 48501 / 888-679-6377 does hereby grant, bargain, sell, assign, transfer and convey
to the following assignee ("Assignee"): Deutsche Bank Trust Company Americas as Trustee
RAMP 2007SP3 all of Assignor's right, title and interest all beneficial interest under a certain
Mortgage, dated February 21, 2007, made and executed by Stephanie Harris, to Mortgage
Electronic Registration Systems, Inc., as nominee for People's Choice Home Loan, Inc., its
successors and assigns, recorded on March 16, 2007 in Official Records Book 25456 at Page
2337, of the Public Records of Miami-Dade County, Florida, which encumbers the real property
more particularly described as follows:

CONDOMINIUM UNIT NO. 2, OF LINCOLN MEWS CONDOMINIUM, TOGETHER WITH
AN UNDIVIDED INTEREST IN THE COMMON ELEMENTS APPURTENANT THERETO,
ACCORDING TO THE DECLARATIONS OF CONDOMINIUM THEREOF, RECORDED IN
OFFICIAL RECORDS BOOK 21772, AT PAGE 2818, OF THE PUBLIC RECORDS OF
MIAMI-DADE COUNTY, FLORIDA, TOGETHER WITH ANY AMENDMENTS THERETO.

together with all the indebtedness currently due and to become due under the terms of any
promissory note or evidence of indebtedness secured thereby. This assignment is made without
recourse to Assignor and without representation or warranty by Assignor, express or implied.

[CORPORATE SEAL]
SEAL
1999
DELAWARE

ASSIGNOR:
Mortgage Electronic Registration Systems, Inc., as
nominee for People's Choice Home Loan, Inc., its
successors and assigns

By: _DeAndra Curry_ 2/8/12
DeAndra Curry ,Vice President

STATE OF Pennsylvania
COUNTY OF Montgomery

The undersigned, a notary public in and for the above-said County and State, does hereby
acknowledge that on the day and year set forth below, personally appeared
_DeAndra Curry_ as Vice President on behalf of the
corporation. She/He is personally known to me or has produced _DL_ as
identification and did/did not take an oath.

WITNESS my hand and official seal this 8 day of Feb. , 2012 mjm

_Mary Jo McDermott_
Notary Public Mary Jo McDermott
My commission expires: 10-21-2015

11-73619

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
MARY JO McDERMOTT, Notary Public
City of Philadelphia, Phila. County
My Commission Expires October 21, 2015

**<u>Exhibit 2-E</u>**

**Excerpts of Servicing Notes**

**REDACTED**

**ONLY PRODUCED TO THE COURT, THE U.S. TRUSTEE, AND STEPHANIE
HARRIS**

## Exhibit 2-F

### Breach Letter

%%H027681GM  50019-0049LTR1DEF - DMS5 - BRCH (GENERIC)                    00PFST519 SYSLTR1
PROD05/28/080810031304      05020 0

{{DPLX}}

05/28/08

STEPHANIE HARRIS

█████████████████

████████████          ███████████████

RE:  Account Number      █████████████
     Property Address  1525 LENOX AVE UNIT 2

                       MIAMI BEACH FL 33139-0000

Dear STEPHANIE HARRIS

Our records indicate the above-referenced mortgage loan is in
default.

Your account is due for 04/01/08, and succeeding payments. This
is a demand for payment of the total amount due and owing as of
the date of this letter, which is as follows:

        Payments ............................... $      4959.74
        Late Charges ........................... $      1487.88
        Fees, Costs, and other amounts accrued
           to date ............................. $       156.25
        Suspense ............................... $       220.08
        Total Amount Due ....................... $      6383.79

You may cure the default by paying the total amount due,
indicated above, within thirty (30) days from the date of this
letter.  You are also responsible for paying any additional
payments, fees, and charges that become due during this 30-day
period.  Payments must be made in certified funds or cashier's
check.  If funds tendered are not honored for any reason, the
default will not be cured.  Our acceptance of any funds less
than the total amount due shall not constitute a waiver of our
rights and/or remedies under the loan documents or applicable
law.

                             (continued on back)

05/28/08
Account Number    
Page Two

You are hereby notified your credit rating may be adversely
affected if you fail to fulfill the terms of your credit
obligations.  You are also notified we may visit the
above-referenced property from time to time to determine its
condition and occupancy status, the costs of which you will be
responsible for.

Unless we receive full payment of all past-due amounts, we will
accelerate the maturity of the loan, declare the obligation due
and payable without further demand, and begin foreclosure
proceedings.  This could result in the loss of your property.
You have the right to assert or defend the non-existence of a
default and you may have other rights under state law.

Once in foreclosure, you have the right to reinstate your
account up to five days prior to the foreclosure sale of the
property if: 1) you pay the total amount due plus any fees, costs
and other amounts accrued through the reinstatement date, and 2)
you take any other action reasonably required by us to assure the
security of the property, as well as your obligations under the
loan documents continue in full force and effect.

HUD-approved counseling is available on FHA guaranteed loans by
calling 800-569-4287.  If you would like to discuss any matter
contained in this notice, we encourage you to contact our loan
counselors immediately at 800-850-4622.


Collection Department
Loan Servicing

Notice - This is an attempt to collect a debt and any information
obtained will be used for that purpose.  If your debt has been
discharged in bankruptcy, our rights are being exercised against
the collateral for the above-referenced loan, not as a personal
liability.

5020

**<u>Exhibit 2-G</u>**

**2008 Foreclosure Proceeding Complaint**

# IN THE CIRCUIT COURT OF THE ELEVENTH
## JUDICIAL CIRCUIT IN AND FOR DADE COUNTY, FLORIDA
### CIVIL ACTION

**DEUTSCHE BANK TRUST COMPANY AMERICAS AS TRUSTEE,**
        Plaintiff,

CASE NO. 08-40534CA10

vs.                                        **DIVISION**



**STEPHANIE HARRIS;   THE UNKNOWN SPOUSE OF STEPHANIE HARRIS ANY AND ALL UNKNOWN PARTIES CLAIMING BY, THROUGH, UNDER, AND AGAINST THE HEREIN NAMED INDIVIDUAL DEFENDANT(S) WHO ARE NOT KNOWN TO BE DEAD OR ALIVE, WHETHER SAID UNKNOWN PARTIES MAY CLAIM AN INTEREST AS SPOUSES, HEIRS, DEVISEES, GRANTEES, OR OTHER CLAIMANTS; LINCOLN MEWS CONDOMINIUM, INC.; TENANT #1, TENANT #2, TENANT #3, and TENANT #4 the names being fictitious to account for parties in possession**
        Defendant(s). _____/

## MORTGAGE FORECLOSURE COMPLAINT

Plaintiff, DEUTSCHE BANK TRUST COMPANY AMERICAS AS TRUSTEE, sues Defendants, STEPHANIE HARRIS, THE UNKNOWN SPOUSE OF STEPHANIE HARRIS; ANY AND ALL UNKNOWN PARTIES CLAIMING BY, THROUGH, UNDER, AND AGAINST THE HEREIN NAMED INDIVIDUAL DEFENDANT(S) WHO ARE NOT KNOWN TO BE DEAD OR ALIVE, WHETHER SAID UNKNOWN PARTIES MAY CLAIM AN INTEREST AS SPOUSES, HEIRS, DEVISEES, GRANTEES, OR OTHER CLAIMANTS; LINCOLN MEWS CONDOMINIUM, INC.; TENANT #1, TENANT #2, TENANT #3 and TENANT #4 the names being fictitious to account for parties in possession, and alleges:

### COUNT I - MORTGAGE FORECLOSURE

1.        This is an in rem action to foreclose a mortgage on real property located and situated in DADE County, Florida.

2.        This firm has complied with the notice requirement of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq, as amended. The Notice(s) previously mailed by the firm is attached hereto and incorporated herein as an Exhibit.

FILE_NUMBER: F08056655                              DOC_ID: M000100

3.       On February 21, 2007, there was executed and delivered a Promissory Note ("Mortgage Note") and a Mortgage ("Mortgage") securing the payment of the Mortgage Note. The Mortgage was recorded on March 16, 2007, in Official Records Book 25456 at Page 2337, of the Public Records of DADE County, Florida, (All subsequent recording references are to the public records of DADE County, Florida) and mortgaged the real and personal property ("Property") described therein, then owned by and in possession of the Mortgagor(s). A copy of the original Mortgage is attached hereto and incorporated herein as an Exhibit.

4.       Plaintiff is now the holder of the Mortgage Note and Mortgage.

5.       The Property is now owned of record by Defendant(s), STEPHANIE HARRIS.

6.       The Mortgage Note and Mortgage are in default. The required installment payment of April 1, 2008, was not paid, and no subsequent payments have been made. The Mortgage is contractually due for the April 1, 2008, payment. The last payment received was applied to the March 1, 2008, installment, and no subsequent payments have been applied to the loan.

7.       Plaintiff declares the full amount payable under the Mortgage Note and Mortgage to be now due.

8.       Plaintiff must be paid $295,627.25 in principal on the Mortgage Note and Mortgage, together with interest from March 1, 2008, late charges, and all costs of collection including title search expenses for ascertaining necessary parties to this action and reasonable attorney's fees.

9.       All conditions precedent to the acceleration of the Mortgage Note and foreclosure of the Mortgage have been performed or have occurred.

10.      Plaintiff has retained the law firm of Florida Default Law Group, P.L., in this action and is obligated to pay it a reasonable fee for its services in bringing this action as well as all costs of collection.

11.      The interests of each Defendant are subject, subordinate, and inferior to the right, title, interest, and lien of Plaintiff's Mortgage with the exception of any special assessments that are superior pursuant to Florida Statutes §159 (2006) and Florida Statutes §170.09 (2006).

12.      THE UNKNOWN SPOUSE OF STEPHANIE HARRIS may have or claim an interest in the Property that is the subject of this Foreclosure action by virtue of homestead rights, possession, or any right of redemption, or may otherwise claim an interest in the Property.

13.      LINCOLN MEWS CONDOMINIUM, INC. may have or claim an interest in the Property that is the subject of this Foreclosure action by virtue of any unpaid condominium assessments levied pursuant to the Declaration of Condominium and any interest acquired pursuant to Chapter 718 F.S., or may otherwise claim an interest in the Property.

2

14.    TENANT #1, TENANT #2, TENANT #3 and TENANT #4, the names being fictitious to account for parties in possession may claim some interest in the Property that is the subject of this foreclosure action by virtue of an unrecorded lease or purchase option, by virtue of possession, or may otherwise claim an interest in the Property. The names of these Defendants are unknown to the Plaintiff.

WHEREFORE, Plaintiff requests that the Court ascertain the amount due Plaintiff for principal and interest on the Mortgage Note and Mortgage and for late charges, abstracting, taxes, expenses and costs, including attorney's fees, plus interest thereon; that if the sums due Plaintiff under the Mortgage Note and Mortgage are not paid immediately, the Court foreclose the Mortgage and the Clerk of the Court sell the Property securing the indebtedness to satisfy Plaintiff's mortgage lien in accordance with the provisions of Florida Statutes §45.031 (2006); that the rights, title and interest of any Defendant, or any party claiming by, through, under or against any Defendant named herein or hereafter made a Defendant be forever barred and foreclosed; that the Court appoint a receiver of the Property and of the rents, issues, income and profits thereof, or in the alternative, order sequestration of rents, issues, income and profits pursuant to Florida Statutes §697.07 (2006); and that the Court retain jurisdiction of this action to make any and all further orders and judgments as may be necessary and proper, including the issuance of a writ of possession and the entry of a deficiency decree, when and if such deficiency decree shall appear proper, if borrower(s) has not been discharged in bankruptcy.

## COUNT II – RE-ESTABLISHMENT OF NOTE

15.    This is an action to re-establish a lost Mortgage Note pursuant to Florida Statutes §673.3091 (2006).

16.    Plaintiff incorporates by reference the allegations previous pled as fully set forth herein.

17.    The Plaintiff and the Defendants named herein are the only persons known to Plaintiff to have an interest for or against the re-establishment of the Mortgage Note.

18.    Plaintiff was in possession of the Mortgage Note and entitled to enforce it when loss of possession occurred or Plaintiff has been assigned the right to enforce the Mortgage Note. (Plaintiff does not presently have a copy of the note, but is seeking to obtain a copy, and will file a copy with the Court when obtained.)

19.    The terms of the Note are as follows:

    a.    Original loan amount: $ 297,500.00

    b.    Amount of monthly principal and interest payment: $2,479.87

    c.    Interest rate: 9.400%

    d.    Loan beginning date: February 21, 2007

3

20.    At some time between February 21, 2007, and the present, the Mortgage Note has either been lost or destroyed and the Plaintiff is unable to state the manner in which this occurred. After due and diligent search, Plaintiff has been unable to obtain possession of the Mortgage Note.

21.    The Mortgage Note has not been seized or transferred by Plaintiff.

WHEREFORE, Plaintiff requests that the Court re-establish the Mortgage Note which this Mortgage secures.

Florida Default Law Group, P.L.
P.O. Box 25018
Tampa, Florida 33622-5018
(813) 251-4766

By: _____
Nikolay Kolev
Florida Bar No. 0028005
Brianna Finch
Florida Bar No. 37467
Galina Boytchev
Florida Bar No. 47008

GMAC-CONV–R-abiven

KENZIE N. SADLAK
FLORIDA BAR
NO. 618241

4

**FLORIDA DEFAULT LAW GROUP, P.L.**
ATTORNEYS AT LAW
9119 CORPORATE LAKE DRIVE
3RD FLOOR
TAMPA, FLORIDA 33634

Please reply to:                                                Telephone (813) 251-4766
Post Office Box 25018                                         Telefax (813) 251-1541
Tampa, FL 33622-5018

July 11, 2008

STEPHANIE HARRIS
█████████████

        Re:

                Loan Number:        ████████
                Mortgage Servicer    GMAC MORTGAGE, LLC
                Creditor to whom     DEUTSCHE BANK TRUST COMPANY AMERICAS AS
                the debt is owed:    TRUSTEE
                Property Address:    1525 LENOX AVENUE UNIT 2, MIAMI BEACH, FL  33139
                Our File No.:        ████████

Dear Borrower:

        The law firm of Florida Default Law Group, P.L. (hereinafter referred to as "law firm") has been retained to represent DEUTSCHE BANK TRUST COMPANY AMERICAS AS TRUSTEE with regards to its interests in the promissory Note and Mortgage executed by STEPHANIE HARRIS  on February 21, 2007.  Pursuant to the terms of the promissory Note and Mortgage, our client has accelerated all sums due and owing, which means that the entire principal balance and all other sums recoverable under the terms of the promissory Note and Mortgage are now due.

        As of the date of this letter, the amount owed to our client is $315,984.77, which includes the unpaid principal balance, accrued interest through today, late charges, and other default-related costs recoverable under the terms of the promissory Note and Mortgage.   Additional interest will accrue after the date of this letter.

        This correspondence is being sent to comply with the Fair Debt Collection Practices Act and should not be considered a payoff letter. Our client may make advances and incur fees and expenses after the date of this letter which are recoverable under the terms of the promissory Note and Mortgage.  Therefore, if you wish to receive figures to reinstate (bring your loan current) or pay off your loan through a specific date, please contact this law firm at (813) 251-4766 or client.services@defaultlawfl.com.

        Unless you notify this law firm within thirty (30) days after your receipt of this letter that the validity of this debt, or any portion thereof, is disputed, this law firm will assume that the debt is valid.  If you do notify this law firm in writing within thirty (30) days after receipt of this letter that the debt, or any portion thereof, is disputed, this law firm will obtain verification of the debt or a copy of the judgment against you, if any, and mail it to you. Also, upon your written request within thirty (30) days after your receipt of this letter, this law firm will provide you with the name and address of the original creditor, if different from the current creditor.  Florida Default Law Group, P.L. is a debt collector.  This law firm is attempting to collect a debt, and any information obtained will be used for that purpose.

        All written requests should be addressed to Nikolay Kolev, Florida Default Law Group, P.L., P.O. Box 25018, Tampa, Florida  33622-5018.

This law firm is in the process of filing a Complaint on the promissory Note and Mortgage to foreclose on real estate.  The advice in this letter pertains to your dealings with this law firm as a debt collector.  It does not affect your dealings with the Court, and in particular, it does not change the time at which you must answer the Complaint.  The Summons is a command from the Court, not from this law firm, and you must follow its instructions even if you dispute the validity or amount of the debt.  The advice in this letter also does not affect this law firm's relations with the Court.  This law firm may file papers in the suit according to the Court's rules and the judge's instructions.

Finally, if you previously received a discharge in a bankruptcy involving this loan and did not sign a reaffirmation agreement, then this letter is not an attempt to collect a debt from you personally.  This law firm is seeking solely to foreclose the creditor's lien on real estate and this law firm will not be seeking a personal money judgment against you.

If you have questions regarding this matter, please do not hesitate to contact this law firm.

Sincerely,

Florida Default Law Group, P.L.

## NOTICE

**Florida Default Law Group, P.L. is a debt collector.  This Firm is attempting to collect a debt, and information obtained may be used for the purpose.**

CFN 2007R0274673
OR Bk 25456 Pgs 2337 - 2359; (23pgs
RECORDED 03/16/2007 11:45:14
MTG DOC TAX 1,041.25
INTANG TAX 595.00
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

Return To:

Sun Valley Title
7000 W. Palmetto Park Rd., #305
Boca Raton, FL 33433

This document was prepared by:
People's Choice Home Loan,
Inc.
7515 Irvine Center Drive,
Irvine, CA  92618

─────────────[Space Above This Line For Recording Data]─────────────

# MORTGAGE

MIN ███████████████

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated FEBRUARY 21, 2007                    ,
together with all Riders to this document.
**(B) "Borrower"** is STEPHANIE HARRIS, A SINGLE WOMAN

Borrower is the mortgagor under this Security Instrument.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee
under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(D) "Lender"** is PEOPLE'S CHOICE HOME LOAN, INC.

███████████

**FLORIDA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**                Form 3010  1/01

-6A(FL) (0005).02
Page 1 of 16                              Initials:
VMP MORTGAGE FORMS - (800)521-7291

Lender is a CORPORATION
organized and existing under the laws of WYOMING
Lender's address is 7515 IRVINE CENTER DR., IRVINE, CA  92618

**(E) "Note"** means the promissory note signed by Borrower and dated February 21, 2007
The Note states that Borrower owes Lender TWO HUNDRED NINETY-SEVEN THOUSAND FIVE
HUNDRED AND 00/100                                                                                 Dollars
(U.S. $ 297,500.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than March 1, 2037

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [X] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the COUNTY         [Type of Recording Jurisdiction]
of MIAMI-DADE                                                    [Name of Recording Jurisdiction]:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT
'A'

Parcel ID Number: 02-3234-151-0020                which currently has the address of
1525 LENOX AVE., UNIT 2                                                         [Street]
MIAMI BEACH                                          [City], Florida 33139          [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

-6A(FL) (0005).02                          Page 3 of 16          Initials:              Form 3010   1/01

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment



-6A(FL) (0005).02    Page 4 of 16    Initials:    Form 3010  1/01

can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest

shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.



-6A(FL) (0005).02    Page 6 of 16    Initials: ___    Form 3010   1/01

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.



-6A(FL) (0005).02                    Page 8 of 16          Initials:          Form 3010   1/01

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**



(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of

-6A(FL) (0005).02                    Page 10 of 16            Initials:            Form 3010   1/01

any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers

unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the



-6A(FL) (0005).02                            Page 12 of 16              Initials:            Form 3010   1/01

purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.



-6A(FL) (0005).02                    Page 13 of 16            Initials:                    Form 3010   1/01

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

-6A(FL) (0005).02                    Page 14 of 16          Initials          Form 3010   1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____

_____ (Seal)
STEPHANIE HARRIS                -Borrower

1525 LENOX AVE., MIAMI BEACH
, FL 33139                        (Address)

_____

_____ (Seal)
                                 -Borrower

                                 (Address)

_____ (Seal)    _____ (Seal)
                        -Borrower                                   -Borrower

            (Address)                                   (Address)

_____ (Seal)    _____ (Seal)
                        -Borrower                                   -Borrower

            (Address)                                   (Address)

_____ (Seal)    _____ (Seal)
                        -Borrower                                   -Borrower

            (Address)                                   (Address)

-6A(FL) (0005).02                Page 15 of 16                Form 3010   1/01

**STATE OF FLORIDA,** *PALM Beach*
The foregoing instrument was acknowledged before me this *21st day of February 2007* by
STEPHANIE HARRIS, A SINGLE WOMAN

who is personally known to me or who has produced *FL drivers license* as identification.

_____
Notary Public



-6A(FL) (0005).02                        Page 16 of 16                              Form 3010    1/01

Initials: _____

Judith M. Linskey
Commission #DD325898
Expires: Jun 21, 2008
Bonded Thru
Atlantic Bonding Co., Inc.

Condominium Unit No. 2, of LINCOLN MEWS CONDOMINIUM, according to the Declaration of Condominium thereof, recorded in Official Records Book 21772, at Page 2818, of the Public Records of Miami-Dade County, Florida.

Loan Number [REDACTED]

### ADJUSTABLE RATE RIDER
**(LIBOR Six-Month Index (As Published In The Wall Street Journal)-Rate Caps)**

THIS ADJUSTABLE RATE RIDER is made this 21st day of February, 2007 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to PEOPLE'S CHOICE HOME LOAN, INC. a WYOMING CORPORATION ("Lender") of the same date and covering the property described in the Security Instrument and located at:

1525 LENOX AVE., UNIT 2, MIAMI BEACH, FLORIDA 33139
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of 9.400%. The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates
The interest rate I will pay may change on the 1st day of March, 2009 and on that day every 6 month(s) thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

msar1    09/26/01                          Page 1 of 3                          Initials: _____

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding seven and three-quarters percentage points ( 7.750%)to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D)    Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 12.400 % or less than 9.400 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than  one percentage points ( 1.000% ) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 15.400%.  My interest rate will never be less than 9.400%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)    Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B.   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.  Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption.  Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

msar2    09/26/01                          Page 2 of 3                        Initials: _____

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment.  However, any reduction due to my partial prepayment may be offset by an increase in the interest rate.

If within Twenty-four (24) months from the date of execution of the Security Instrument, I make full Prepayment or partial Prepayment, and the total of such Prepayment(s) in any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan, I will pay a Prepayment charge in an amount equal to 6 months' advance interest on the amount by which the total of my Prepayment(s) within that 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)        _____ (Seal)
STEPHANIE HARRIS              -Borrower                                        -Borrower

_____ (Seal)        _____ (Seal)
                                      -Borrower                                        -Borrower

_____ (Seal)        _____ (Seal)
                                      -Borrower                                        -Borrower

msar3     09/26/01                          Page 3 of 3                              Initials: _____

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this 21st          day of February, 2007          ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to PEOPLE'S CHOICE HOME LOAN,
INC.

(the
"Lender") of the same date and covering the Property described in the Security Instrument
and located at:

1525 LENOX AVE., UNIT 2, MIAMI BEACH, FLORIDA 33139
[Property Address]
The Property includes a unit in, together with an undivided interest in the common elements
of, a condominium project known as:

LINCOLN MEWS #2
[Name of Condominium Project]
(the "Condominium Project"). If the owners association or other entity which acts for the
Condominium Project (the "Owners Association") holds title to property for the benefit or use
of its members or shareholders, the Property also includes Borrower's interest in the Owners
Association and the uses, proceeds and benefits of Borrower's interest.

CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:
A. Condominium Obligations. Borrower shall perform all of Borrower's obligations under
the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i)
Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii)
code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when
due, all dues and assessments imposed pursuant to the Constituent Documents.
B. Property Insurance. So long as the Owners Association maintains, with a generally
accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which
is satisfactory to Lender and which provides insurance coverage in the amounts (including
deductible levels), for the periods, and against loss by fire, hazards included within the term
"extended coverage," and any other hazards, including, but not limited to, earthquakes and
floods, from which Lender requires insurance, then: (i) Lender waives the provision in

**MULTISTATE CONDOMINIUM RIDER** - Single Family - Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT
Form 3140 1/01
Wolters Kluwer Financial Services
VMP®-8R (0411).01
Page 1 of 3          Initials: _____

Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Initials: _____

VMP ®-8R (0411).01                Page 2 of 3                Form 3140 1/01

OR BK 25456 PG 2359
LAST PAGE

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

_____ (Seal)          _____ (Seal)
STEPHANIE HARRIS        -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                -Borrower

VMP®-8R (0411).01              Page 3 of 3                    Form 3140 1/01

**<u>Exhibit 2-H</u>**

**Loan Modification Request Letter**

**GARY S. GLASSER, P.A.**

Courthouse Plaza, Suite 608
28 West Flagler Street
Miami, Florida 33130

_____

(305) 377 - 4187

Fax: (305) 358-7587                                                              Broward: (954) 928-0089

September 25, 2008

Via Facsimile: (866) 709-9250
GMAC Mortgage
3451 Hammond Avenue
Waterloo, IA 50702

       RE:    *Mortgagor: Stephanie Harris*
             *Property Address: 1525 Lennox Avenue, #2 Miami Beach, FL 33139*
             *Loan #:* ███████ *: SS #:* ███████

Dear Sir/Madam:

Please be advised that the undersigned represents Stephanie Harris the borrower of the above loan. Due to Ms. Harris being cited by the City of Miami Beach for violation of a City Ordinance she was forced to discontinue renting the apartment from March 2008 through August 2008. The Ordinance was recently reversed which again allowed Ms Harris to start renting the apartment.   As a result of the problem with the City and the current economical situation my client fell behind with her payments. My client is requesting one of the following option from GMAC Mortgage:

    (a)      GMAC restructure the loan to adjust the interest rate which will allow for a lower monthly payments, or

    (b)      GMAC to adjust the loan amount in accordance with the current market value of the property and adjust the payments in accordance therewith.

    ©      GMAC add the arrears to the end of the loan term.

If GMAC agrees with either of the above proposals,  then my client will be more than willing to continue working towards bringing the loan  in good standing with the bank.

Should any additional information is required, please contact me.

Very truly yours,

Gary S. Glasser, Esq.

I HEREBY authorize GMAC or its representatives to provide any information needed regarding my loan to my attorney Gary S. Glasser and/or his agents.

/Stephanie Harris

G:\WP\Foreclosure\Harris, Stephanie letter of authorization and request for modification GMAC.wpd

Loan: 0810031304
CORR

**<u>Exhibit 2-I</u>**

**2010 Bankruptcy Petition**

B 1 (Official Form 1) (1/08)

| United States Bankruptcy Court<br>**Southern District of Florida** | **Voluntary Petition** |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**Stephanie Harris** | Name of Joint Debtor (Spouse) (Last, First, Middle):<br>- |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names):<br>Tillen *aka Stephanie Tillen Harris* | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names):<br>- |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all): ▮▮▮ | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all): |
| Street Address of Debtor (No. and Street, City, and State):<br>**1525 Lenox Ave.**<br>**Miami, Beach, Fl**<br>ZIP CODE **33139** | Street Address of Joint Debtor (No. and Street, City, and State):<br>-<br>ZIP CODE- |
| County of Residence or of the Principal Place of Business:<br>**Miami-Dade** | County of Residence or of the Principal Place of Business:<br>- |
| Mailing Address of Debtor (if different from street address):<br>▮▮▮<br>ZIP CODE **33139** | Mailing Address of Joint Debtor (if different from street address):<br>-<br>ZIP CODE- |
| Location of Principal Assets of Business Debtor (if different from street address above):<br>ZIP CODE- | |

| **Type of Debtor**<br>(Form of Organization)<br>(Check one box.) | **Nature of Business**<br>(Check one box.) | **Chapter of Bankruptcy Code Under Which the Petition is Filed** (Check one box.) |
|---|---|---|
| ☑ Individual (includes Joint Debtors)<br>*See Exhibit D on page 2 of this form.*<br>☐ Corporation (includes LLC and LLP)<br>☐ Partnership<br>☐ Other (If debtor is not one of the above entities, check this box and state type of entity below.)<br>_____ | ☐ Health Care Business<br>☐ Single Asset Real Estate as defined in 11 U.S.C. § 101(51B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>☐ Other | ☑ Chapter 7<br>☐ Chapter 9<br>☐ Chapter 11<br>☐ Chapter 12<br>☐ Chapter 13    ☐ Chapter 15 Petition for Recognition of a Foreign Main Proceeding<br>☐ Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding |
| | **Tax-Exempt Entity**<br>(Check box, if applicable.)<br>☐ Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code). | **Nature of Debts**<br>(Check one box.)<br>☑ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or house-hold purpose."    ☐ Debts are primarily business debts. |

| **Filing Fee** (Check one box.) | **Chapter 11 Debtors** |
|---|---|
| ☑ Full Filing Fee attached.<br><br>☐ Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.<br><br>☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B. | **Check one box:**<br>☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).<br>☐ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).<br>**Check if:**<br>☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,190,000.<br>- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -<br>**Check all applicable boxes:**<br>☐ A plan is being filed with this petition.<br>☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b). |

| **Statistical/Administrative Information** | **THIS SPACE IS FOR COURT USE ONLY** |
|---|---|
| ☑ Debtor estimates that funds will be available for distribution to unsecured creditors.<br>☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors. | |

**Estimated Number of Creditors**

| ☑ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|
| 1-49 | 50-99 | 100-199 | 200-999 | 1,000-5,000 | 5,001-10,000 | 10,001-25,000 | 25,001-50,000 | 50,001-100,000 | Over 100,000 |

**Estimated Assets**

| ☐ | ☐ | ☐ | ☑ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |

**Estimated Liabilities**

| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |

B 1 (Official Form 1) (1/08)    Page 2

| Voluntary Petition<br>*(This page must be completed and filed in every case.)* | Name of Debtor(s):<br>**Stephanie Harris** |
|---|---|

**All Prior Bankruptcy Cases Filed Within Last 8 Years** (If more than two, attach additional sheet.)

| Location<br>Where Filed:  - | Case Number:<br>- | Date Filed: |
|---|---|---|
| Location<br>Where Filed:  - | Case Number:<br>- | Date Filed: |

**Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet.)

| Name of Debtor: | Case Number:<br>- | Date Filed:<br>- |
|---|---|---|
| District:  **Southern District of Florida** | Relationship: | Judge: |

| **Exhibit A**<br><br>(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.)<br><br>☐   Exhibit A is attached and made a part of this petition. | **Exhibit B**<br>(To be completed if debtor is an individual whose debts are primarily consumer debts.)<br><br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I have delivered to the debtor the notice required by 11 U.S.C. § 342(b).<br><br>X _____  01/26/2010<br>   Signature of Attorney for Debtor(s)     (Date) |
|---|---|

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐   Yes, and Exhibit C is attached and made a part of this petition.

☑   No.

**Exhibit D**

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

☑   Exhibit D completed and signed by the debtor is attached and made a part of this petition.

If this is a joint petition:

☐   Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

**Information Regarding the Debtor - Venue**
(Check any applicable box.)

☑   Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐   There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐   Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

**Certification by a Debtor Who Resides as a Tenant of Residential Property**
(Check all applicable boxes.)

☐   Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

_____
(Name of landlord that obtained judgment)

_____
(Address of landlord)

☐   Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐   Debtor has included with this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐   Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)).

| B 1 (Official Form) 1 (1/08) | Page 3 |
|---|---|
| **Voluntary Petition**<br>*(This page must be completed and filed in every case.)* | **Name of Debtor(s):**<br>**Stephanie Harris** |

| Signatures | |
|---|---|

| **Signature(s) of Debtor(s) (Individual/Joint)** | **Signature of a Foreign Representative** |
|---|---|

**Signature(s) of Debtor(s) (Individual/Joint)**

I declare under penalty of perjury that the information provided in this petition is true and correct.
[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.
[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
Signature of Debtor

X _____
Signature of Joint Debtor

_____
Telephone Number (if not represented by attorney)

01/26/2010
Date

**Signature of a Foreign Representative**

I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only one box.)

☐ I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. § 1515 are attached.

☐ Pursuant to 11 U.S.C. § 1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

X _____
(Signature of Foreign Representative)

_____
(Printed Name of Foreign Representative)

_____
Date

**Signature of Attorney***

X _____
Signature of Attorney for Debtor(s)

_____
Printed Name of Attorney for Debtor(s)

_____
Firm Name

_____
Address

_____
Telephone Number

_____
Date

*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect.

**Signature of Non-Attorney Bankruptcy Petition Preparer**

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.

_____
Printed Name and title, if any, of Bankruptcy Petition Preparer

_____
Social-Security number (If the bankruptcy petition preparer is not an individual, state the Social-Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.) (Required by 11 U.S.C. § 110.)

_____
Address

X _____

_____
Date

Signature of bankruptcy petition preparer or officer, principal, responsible person, or partner whose Social-Security number is provided above.

Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual.

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.*

**Signature of Debtor (Corporation/Partnership)**

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests the relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
Signature of Authorized Individual

_____
Printed Name of Authorized Individual

_____
Title of Authorized Individual

_____
Date

Exhibit 2

B 1D (Official Form 1, Exhibit D) (12/09)

# UNITED STATES BANKRUPTCY COURT

### Southern District of Florida

In re Stephanie Harris _____           Case No._____
            Debtor                                              (if known)

## EXHIBIT D - INDIVIDUAL DEBTOR'S STATEMENT OF COMPLIANCE WITH CREDIT COUNSELING REQUIREMENT

**Warning: You must be able to check truthfully one of the five statements regarding credit counseling listed below. If you cannot do so, you are not eligible to file a bankruptcy case, and the court can dismiss any case you do file. If that happens, you will lose whatever filing fee you paid, and your creditors will be able to resume collection activities against you. If your case is dismissed and you file another bankruptcy case later, you may be required to pay a second filing fee and you may have to take extra steps to stop creditors' collection activities.**

*Every individual debtor must file this Exhibit D. If a joint petition is filed, each spouse must complete and file a separate Exhibit D. Check one of the five statements below and attach any documents as directed.*

☐ 1. Within the 180 days **before the filing of my bankruptcy case**, I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, and I have a certificate from the agency describing the services provided to me. *Attach a copy of the certificate and a copy of any debt repayment plan developed through the agency.*

☑ 2. Within the 180 days **before the filing of my bankruptcy case**, I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, but I do not have a certificate from the agency describing the services provided to me. *You must file a copy of a certificate from the agency describing the services provided to you and a copy of any debt repayment plan developed through the agency no later than 14 days after your bankruptcy case is filed.*

B 1D (Official Form 1, Exh. D) (12/09) – Cont.

☐ 3. I certify that I requested credit counseling services from an approved agency but was unable to obtain the services during the seven days from the time I made my request, and the following exigent circumstances merit a temporary waiver of the credit counseling requirement so I can file my bankruptcy case now. *[Summarize exigent circumstances here.]*

**If your certification is satisfactory to the court, you must still obtain the credit counseling briefing within the first 30 days after you file your bankruptcy petition and promptly file a certificate from the agency that provided the counseling, together with a copy of any debt management plan developed through the agency. Failure to fulfill these requirements may result in dismissal of your case. Any extension of the 30-day deadline can be granted only for cause and is limited to a maximum of 15 days. Your case may also be dismissed if the court is not satisfied with your reasons for filing your bankruptcy case without first receiving a credit counseling briefing.**

☐ 4. I am not required to receive a credit counseling briefing because of: *[Check the applicable statement.]* *[Must be accompanied by a motion for determination by the court.]*

☐ Incapacity. (Defined in 11 U.S.C. § 109(h)(4) as impaired by reason of mental illness or mental deficiency so as to be incapable of realizing and making rational decisions with respect to financial responsibilities.);
☐ Disability. (Defined in 11 U.S.C. § 109(h)(4) as physically impaired to the extent of being unable, after reasonable effort, to participate in a credit counseling briefing in person, by telephone, or through the Internet.);
☐ Active military duty in a military combat zone.

☐ 5. The United States trustee or bankruptcy administrator has determined that the credit counseling requirement of 11 U.S.C. § 109(h) does not apply in this district.

**I certify under penalty of perjury that the information provided above is true and correct.**

Signature of Debtor: _____

Date: __01/26/2010_____

B6 Summary (Official Form 6 - Summary) (12/07)

# United States Bankruptcy Court

## Southern District of Florida

In re  Stephanie Harris                            ,

Debtor

Case No. _____

Chapter  7 _____

# SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each. Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided. Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors also must complete the "Statistical Summary of Certain Liabilities and Related Data" if they file a case under chapter 7, 11, or 13.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | YES | 1 | $ 550,000.00 | | |
| B - Personal Property | YES | 3 | $ 200,000.00 | | |
| C - Property Claimed as Exempt | YES | 1 | | | |
| D - Creditors Holding Secured Claims | YES | 2 | | $ 910,000.00 | |
| E - Creditors Holding Unsecured Priority Claims (Total of Claims on Schedule E) | YES | 4 | | $ 6,512.00 | |
| F - Creditors Holding Unsecured Nonpriority Claims | YES | 0 | | $ 0.00 | |
| G - Executory Contracts and Unexpired Leases | NO | 0 | | | |
| H - Codebtors | NO | 0 | | | |
| I - Current Income of Individual Debtor(s) | YES | 1 | | | $ 9,946.00 |
| J - Current Expenditures of Individual Debtors(s) | YES | 1 | | | $ 5,616.70 |
| TOTAL | | 13 | $ 750,000.00 | $ 916,512.00 | |

B 6 Summary (Official Form 6 - Summary) (12/07)

# United States Bankruptcy Court

## Southern District of Florida

In re  Stephanie Harris_____ ,
         **Debtor**

Case No. _____

Chapter  7_____

## STATISTICAL SUMMARY OF CERTAIN LIABILITIES AND RELATED DATA (28 U.S.C. § 159)

If you are an individual debtor whose debts are primarily consumer debts, as defined in § 101(8) of the Bankruptcy Code (11 U.S.C. § 101(8)), filing a case under chapter 7, 11 or 13, you must report all information requested below.

☐ Check this box if you are an individual debtor whose debts are NOT primarily consumer debts.  You are not required to report any information here.

**This information is for statistical purposes only under 28 U.S.C. § 159.**

Summarize the following types of liabilities, as reported in the Schedules, and total them.

| Type of Liability | Amount | |
|---|---|---|
| Domestic Support Obligations (from Schedule E) | $ | 0.00 |
| Taxes and Certain Other Debts Owed to Governmental Units (from Schedule E) | $ | 0.00 |
| Claims for Death or Personal Injury While Debtor Was Intoxicated (from Schedule E) (whether disputed or undisputed) | $ | 0.00 |
| Student Loan Obligations (from Schedule F) | $ | 0.00 |
| Domestic Support, Separation Agreement, and Divorce Decree Obligations Not Reported on Schedule E | $ | 0.00 |
| Obligations to Pension or Profit-Sharing, and Other Similar Obligations (from Schedule F) | $ | 0.00 |
| TOTAL | $ | 0.00 |

State the following:

| | | |
|---|---|---|
| Average Income (from Schedule I, Line 16) | $ | 0.00 |
| Average Expenses (from Schedule J, Line 18) | $ | 5,616.70 |
| Current Monthly Income (from Form 22A Line 12; **OR**, Form 22B Line 11; **OR**, Form 22C Line 20 ) | $ | 8,091.00 |

State the following:

| | | |
|---|---|---|
| 1. Total from Schedule D, "UNSECURED PORTION, IF ANY" column | | $ 1,150,000.00 |
| 2. Total from Schedule E, "AMOUNT ENTITLED TO PRIORITY" column. | $     6,512.00 | |
| 3. Total from Schedule E, "AMOUNT NOT ENTITLED TO PRIORITY, IF ANY" column | | $     0.00 |
| 4. Total from Schedule F | | $     0.00 |
| 5. Total of non-priority unsecured debt (sum of 1, 3, and 4) | | $     0.00 |

Case 10-13990-AJC  Doc 55  Filed 01/27/10  Page 8 of 53  Exhibit 2

B6A (Official Form 6A) (12/07)

In re  Stephanie Harris                          ,                    Case No. _____
                  **Debtor**                                                              **(If known)**

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a co-tenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether the husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| DESCRIPTION AND LOCATION OF PROPERTY | NATURE OF DEBTOR'S INTEREST IN PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION | AMOUNT OF SECURED CLAIM |
|---|---|---|---|---|
| 4/3 Condo 1525 Lenox Ave #1 | Homestead | | | 553000 |
| 2/2 Condo 1525 Lenox Ave #2 | Former attachment to homestaed | | | 350000 |
| | | | Total▶ | |

(Report also on Summary of Schedules.)

B 6B (Official Form 6B) (12/07)

In re  Stephanie Harris                                              ,          Case No. _____
_____
        **Debtor**                                                                      **(If known)**

# SCHEDULE B - PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether the husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property." If the property is being held for a minor child, simply state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 1. Cash on hand. | | 1525 Lenox Ave | | 1,000.00 |
| 2. Checking, savings or other financial accounts, certificates of deposit or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | | | 0.00 |
| 3. Security deposits with public utilities, telephone companies, landlords, and others. | | 1525 Lenox Ave | | 600.00 |
| 4. Household goods and furnishings, including audio, video, and computer equipment. | | 1525 Lenox Ave | | 3,000.00 |
| 5. Books; pictures and other art objects; antiques; stamp, coin, record, tape, compact disc, and other collections or collectibles. | | 1525 Lenox Ave | | 5,000.00 |
| 6. Wearing apparel. | | 1525 Lenox Ave | | 3,000.00 |
| 7. Furs and jewelry. | | 1525 Lenox Ave | | 2,000.00 |
| 8. Firearms and sports, photographic, and other hobby equipment. | | | | 0.00 |
| 9. Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | | | | 0.00 |
| 10. Annuities. Itemize and name each issuer. | | | | 0.00 |
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | | | | 0.00 |

B 6B (Official Form 6B) (12/07) -- Cont.

In re Stephanie Harris _____,          Case No. _____
                    **Debtor**                                                (If known)

# SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITH-OUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | | | | 0.00 |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | | | | 0.00 |
| 14. Interests in partnerships or joint ventures. Itemize. | | | | 0.00 |
| 15. Government and corporate bonds and other negotiable and non-negotiable instruments. | | | | 0.00 |
| 16. Accounts receivable. | | | | 21,323.00 |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | | | | 0.00 |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | | | | 0.00 |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A – Real Property. | | | | 0.00 |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | | | | 0.00 |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | | | | 0.00 |

B 6B (Official Form 6B) (12/07) -- Cont.

In re  Stephanie Harris                                                    ,                    Case No. _____
_____                                                              (If known)
                    **Debtor**

# SCHEDULE B - PERSONAL PROPERTY

(Continuation Sheet)

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITH-OUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 22. Patents, copyrights, and other intellectual property.  Give particulars. | | | | 0.00 |
| 23. Licenses, franchises, and other general intangibles.  Give particulars. | | | | 0.00 |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | | | | 0.00 |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | | | | 0.00 |
| 26. Boats, motors, and accessories. | | | | 0.00 |
| 27. Aircraft and accessories. | | | | 0.00 |
| 28. Office equipment, furnishings, and supplies. | | | | 0.00 |
| 29. Machinery, fixtures, equipment, and supplies used in business. | | | | 0.00 |
| 30. Inventory. | | | | 0.00 |
| 31. Animals. | | | | 0.00 |
| 32. Crops - growing or harvested. Give particulars. | | | | 0.00 |
| 33. Farming equipment and implements. | | | | 0.00 |
| 34. Farm supplies, chemicals, and feed. | | | | 0.00 |
| 35. Other personal property of any kind not already listed.  Itemize. | | | | 0.00 |

_____ continuation sheets attached     Total▶     $          35,923.00

(Include amounts from any continuation
sheets attached.  Report total also on
Summary of Schedules.)

Case 20-11006-AJC   Doc 12-1   Filed 06/24/10   Page 12 of 35

B 6C (Official Form 6C) (12/07)

In re  Stephanie Harris                                    ,          Case No. _____
                    **Debtor**                                                      **(If known)**

# SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

Debtor claims the exemptions to which debtor is entitled under:          ☑ Check if debtor claims a homestead exemption that exceeds
(Check one box)                                                             $136,875.
☐  11 U.S.C. § 522(b)(2)
☐  11 U.S.C. § 522(b)(3)

| DESCRIPTION OF PROPERTY | SPECIFY LAW PROVIDING EACH EXEMPTION | VALUE OF CLAIMED EXEMPTION | CURRENT VALUE OF PROPERTY WITHOUT DEDUCTING EXEMPTION |
|---|---|---|---|
| 1525 Lenox Ave | Homestead | 550,000.00 | 550,000.00 |

B 6D (Official Form 6D) (12/07)

In re _Stephanie Harris._,      Case No. _____
       Debtor                                          (If known)

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is the creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H – Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim Without Deducting Value of Collateral" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion, if Any" on the Statistical Summary of Certain Liabilities and Related Data.

☐    Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE AND AN ACCOUNT NUMBER (See Instructions Above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED, NATURE OF LIEN , AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| ACCOUNT NO ███<br><br>CitiMortgage<br>P.O Box 9438 Dept. 0251<br>Gaithersburg, MD, 20898 | 0 | 0 | August, 2007<br>Real Estate<br>Homesteaded, '99<br>800,000<br><br>VALUE $ | | | | | |
| ACCOUNT NO ███<br><br>GMAC Mort.<br>P.O. Box 4622<br>Waterloo, LA, 50704 | 0 | 0 | February 21, '07<br>Real Estate<br>Attchd, now<br>unattchd,350,000<br><br>VALUE $ | | | | | |
| ACCOUNT NO.<br><br> | | | <br><br><br>VALUE $ 1,150,000.00 | | | | | |
| ___ continuation sheets attached | | | Subtotal ▶<br>(Total of this page) | | | | $ | $ |
| | | | Total ▶<br>(Use only on last page) | | | | $ | $ |
| | | | | | | | (Report also on Summary of Schedules.) | (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.) |

B 6D (Official Form 6D) (12/07) – Cont.                                                                    2

In re _____,          Case No. _____
                    **Debtor**                                              **(if known)**

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE AND AN ACCOUNT NUMBER *(See Instructions Above.)* | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED, NATURE OF LIEN , AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| ACCOUNT NO. | | | | | | | | |
| | | | VALUE $ | | | | | |
| ACCOUNT NO. | | | | | | | | |
| | | | VALUE $ | | | | | |
| ACCOUNT NO. | | | | | | | | |
| | | | VALUE $ | | | | | |
| ACCOUNT NO. | | | | | | | | |
| | | | VALUE $ | | | | | |
| ACCOUNT NO. | | | | | | | | |
| | | | VALUE $ | | | | | |

Sheet no._____of_____continuation sheets attached to Schedule of Creditors Holding Secured Claims

Subtotal (s) ▶
(Total(s) of this page)                                 $                    $

Total(s) ▶
(Use only on last page)                                 $                    $

(Report also on Summary of Schedules.)     (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.)

B 6E (Official Form 6E) (12/07)

In re  STEPHANIE HARRIS_____ ,                    Case No._____
              **Debtor**                                              **(if known)**

# SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

A complete list of claims entitled to priority, listed separately by type of priority, is to be set forth on the sheets provided. Only holders of unsecured claims entitled to priority should be listed in this schedule. In the boxes provided on the attached sheets, state the name, mailing address, including zip code, and last four digits of the account number, if any, of all entities holding priority claims against the debtor or the property of the debtor, as of the date of the filing of the petition. Use a separate continuation sheet for each type of priority and label each with the type of priority.

The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of claims listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all claims listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

Report the total of amounts entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts report this total also on the Statistical Summary of Certain Liabilities and Related Data.

Report the total of amounts <u>not</u> entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts not entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐  Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

TYPES OF PRIORITY CLAIMS (Check the appropriate box(es) below if claims in that category are listed on the attached sheets.)

☐ **Domestic Support Obligations**

Claims for domestic support that are owed to or recoverable by a spouse, former spouse, or child of the debtor, or the parent, legal guardian, or responsible relative of such a child, or a governmental unit to whom such a domestic support claim has been assigned to the extent provided in 11 U.S.C. § 507(a)(1).

☐ **Extensions of credit in an involuntary case**

Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief. 11 U.S.C. § 507(a)(3).

☐ **Wages, salaries, and commissions**

Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $10,950* per person earned within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(4).

☐ **Contributions to employee benefit plans**

Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(5).

B 6E (Official Form 6E) (12/07) – Cont.

In re  STEPHANIE HARRIS_____ ,          Case No._____
                **Debtor**                                      **(if known)**

☐ **Certain farmers and fishermen**

  Claims of certain farmers and fishermen, up to $5,400* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(6).

☐ **Deposits by individuals**

  Claims of individuals up to $2,425* for deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered or provided.  11 U.S.C. § 507(a)(7).

☐ **Taxes and Certain Other Debts Owed to Governmental Units**

  Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C. § 507(a)(8).

☐ **Commitments to Maintain the Capital of an Insured Depository Institution**

  Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution.  11 U.S.C. § 507 (a)(9).

☐ **Claims for Death or Personal Injury While Debtor Was Intoxicated**

  Claims for death or personal injury resulting from the operation of a motor vehicle or vessel while the debtor was intoxicated from using alcohol, a drug, or another substance.  11 U.S.C. § 507(a)(10).

* Amounts are subject to adjustment on April 1, 2010, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

____ continuation sheets attached

B 6E (Official Form 6E) (12/07) - Cont.

In re STEPHANIE HARRIS _____,    Case No. _____
        Debtor                                              (if known)

# SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS
(Continuation Sheet)

Type of Priority for Claims Listed on This Sheet

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM | AMOUNT ENTITLED TO PRIORITY | AMOUNT NOT ENTITLED TO PRIORITY, IF ANY |
|---|---|---|---|---|---|---|---|---|---|
| Account No. ▇ <br><br> LADCO LEASING <br> 555 St. Charles Place <br> Thousand Oaksca, 91360 | 0 | 0 | 12/01/2007 <br> 11/05/2009 | | | | 1,765.00 | | |
| Account No. ▇ <br><br> VERIZON <br> 1 VERIZON PLACE <br> ALPHARETTA, GA, 30004 | 0 | 0 | 11/24/2007 <br> 01/02/2010 | | | | 2,069.00 | | |
| Account No. ▇ <br><br> NCO FIN/99 <br> P.O BOX 15636 <br> WILMINGTON, DE, 19850 | 0 | 0 | 12/09/2009 <br> 01/17/2010 | | | | 451.00 | | |
| Account No. ▇ <br><br> RJM ACQ LLC <br> 575 UNDERHILL BLVD, #2 <br> SYOSSET, NY, 11791 | 0 | 0 | 06/30/2009 <br> 12/31/2009 | | | | 736.00 | | |

Sheet no. _____ of _____ continuation sheets attached to Schedule of
Creditors Holding Priority Claims

Subtotals► $ 5,021.00    $
(Totals of this page)

Total► $
(Use only on last page of the completed
Schedule E. Report also on the Summary
of Schedules.)

Totals► 
(Use only on last page of the completed
Schedule E. If applicable, report also on
the Statistical Summary of Certain
Liabilities and Related Data.)          $          $

B 6E (Official Form 6E) (12/07) – Cont.

In re STEPHANIE HARRIS _____ ,    Case No. _____
　　　　　　Debtor　　　　　　　　　　　　　　　　(if known)

# SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS
(Continuation Sheet)

Type of Priority for Claims Listed on This Sheet

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM | AMOUNT ENTITLED TO PRIORITY | AMOUNT NOT ENTITLED TO PRIORITY, IF ANY |
|---|---|---|---|---|---|---|---|---|---|
| Account No. ▉ <br><br>NCO-MEDCLR<br>P.O BOX 8547<br>PHILSDELPHIA, PA, 19101 | 0 | 0 | 03/30/2006<br>05/17/2009 | | | | 414.00 | | |
| Account No. ▉ <br><br>IC SYSTEM<br>P.O BOX 64378<br>SAINT PAUL, MN 55164 | 0 | 0 | 11/26/2003<br>02/18/2009 | | | | 815.00 | | |
| Account No. ▉ <br><br>PROGRESSIVE INS. | 0 | 0 | 07/13/2004<br>06/18/2007 | | | | 157.00 | | |
| Account No. ▉ <br><br>PROGRESSIVE INS. | 0 | 0 | 10/21/2003<br>06/18/2007 | | | | 105.00 | | |

Sheet no. _____ of _____ continuation sheets attached to Schedule of Creditors Holding Priority Claims

Subtotals▶ (Totals of this page) $ 1,491.00 | $

Total▶ (Use only on last page of the completed Schedule E. Report also on the Summary of Schedules.) $

Totals▶ (Use only on last page of the completed Schedule E. If applicable, report also on the Statistical Summary of Certain Liabilities and Related Data.) | $ | $

**B6I (Official Form 6I) (12/07)**

In re **Stephanie Harris**_____ ,          Case No. _____
           **Debtor**                                                                        **(if known)**

# SCHEDULE I - CURRENT INCOME OF INDIVIDUAL DEBTOR(S)

The column labeled "Spouse" must be completed in all cases filed by joint debtors and by every married debtor, whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.  Do not state the name of any minor child. The average monthly income calculated on this form may differ from the current monthly income calculated on Form 22A, 22B, or 22C.

| Debtor's Marital Status: **Widow** | DEPENDENTS OF DEBTOR AND SPOUSE | |
|---|---|---|
| | RELATIONSHIP(S): | AGE(S): |

| Employment: | DEBTOR | SPOUSE |
|---|---|---|
| Occupation | Real Estate/Dog Trainer | |
| Name of Employer | Chadwick Realty | |
| How long employed | | |
| Address of Employer | 1525 Lenox Ave, Miami Beach, Fl, 33139 | |

INCOME: (Estimate of average or projected monthly income at time case filed)

|  | DEBTOR | SPOUSE |
|---|---|---|
| 1. Monthly gross wages, salary, and commissions (Prorate if not paid monthly) | $ 8,091.00 | $_____ |
| 2. Estimate monthly overtime | $_____ | $_____ |
| 3. SUBTOTAL | $ 8,091.00 | $_____ |
| 4. LESS PAYROLL DEDUCTIONS | | |
| a. Payroll taxes and social security | $_____ | $_____ |
| b. Insurance | $_____ | $_____ |
| c. Union dues | $_____ | $_____ |
| d. Other (Specify): _____ | $_____ | $_____ |
| 5. SUBTOTAL OF PAYROLL DEDUCTIONS | $_____ | $_____ |
| 6. TOTAL NET MONTHLY TAKE HOME PAY | $ 8,091.00 | $_____ |
| 7. Regular income from operation of business or profession or farm (Attach detailed statement) | $_____ | $_____ |
| 8. Income from real property | $ 1,200.00 | $_____ |
| 9. Interest and dividends | $_____ | $_____ |
| 10. Alimony, maintenance or support payments payable to the debtor for the debtor's use or that of dependents listed above | $_____ | $_____ |
| 11. Social security or government assistance (Specify): 655.00 | $_____ | $_____ |
| 12. Pension or retirement income | $_____ | $_____ |
| 13. Other monthly income (Specify):_____ | $_____ | $_____ |
| 14. SUBTOTAL OF LINES 7 THROUGH 13 | $ 1,855.00 | $_____ |
| 15. AVERAGE MONTHLY INCOME (Add amounts on lines 6 and 14) | $ 9,946.00 | $_____ |
| 16. COMBINED AVERAGE MONTHLY INCOME: (Combine column totals from line 15) | $_____ | |

(Report also on Summary of Schedules and, if applicable, on Statistical Summary of Certain Liabilities and Related Data)

17.  Describe any increase or decrease in income reasonably anticipated to occur within the year following the filing of this document:

_____

**B6J (Official Form 6J) (12/07)**

In re  Stephanie Harris                                ,          Case No. _____
        **Debtor**                                                                          **(if known)**

# SCHEDULE J - CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)

Complete this schedule by estimating the average or projected monthly expenses of the debtor and the debtor's family at time case filed. Prorate any payments made bi-weekly, quarterly, semi-annually, or annually to show monthly rate. The average monthly expenses calculated on this form may differ from the deductions from income allowed on Form22A or 22C.

☐ Check this box if a joint petition is filed and debtor's spouse maintains a separate household. Complete a separate schedule of expenditures labeled "Spouse."

| | |
|---|---:|
| 1. Rent or home mortgage payment (include lot rented for mobile home) | $ 3,334.70 |
|     a. Are real estate taxes included?  Yes _____  No ✓ | |
|     b. Is property insurance included?  Yes _____  No ✓ | |
| 2. Utilities:  a. Electricity and heating fuel | $ 370.00 |
|         b. Water and sewer | $ 150.00 |
|         c. Telephone | $ 100.00 |
|         d. Other _____ | $ 49.00 |
| 3. Home maintenance (repairs and upkeep) | $ 200.00 |
| 4. Food | $ 300.00 |
| 5. Clothing | $ 200.00 |
| 6. Laundry and dry cleaning | $ 0.00 |
| 7. Medical and dental expenses | $ 180.00 |
| 8. Transportation (not including car payments) | $ 100.00 |
| 9. Recreation, clubs and entertainment, newspapers, magazines, etc. | $ 0.00 |
| 10. Charitable contributions | $ 0.00 |
| 11. Insurance (not deducted from wages or included in home mortgage payments) | |
|         a. Homeowner's or renter's | $ _____ |
|         b. Life | $ _____ |
|         c. Health | $ _____ |
|         d. Auto | $ _____ |
|         e. Other _____ | $ _____ |
| 12. Taxes (not deducted from wages or included in home mortgage payments) (Specify) _____ | $ 633.00 |
| 13. Installment payments: (In chapter 11, 12, and 13 cases, do not list payments to be included in the plan) | |
|         a. Auto | $ 0.00 |
|         b. Other _____ | $ 0.00 |
|         c. Other _____ | $ 0.00 |
| 14. Alimony, maintenance, and support paid to others | $ 0.00 |
| 15. Payments for support of additional dependents not living at your home | $ 0.00 |
| 16. Regular expenses from operation of business, profession, or farm (attach detailed statement) | $ 0.00 |
| 17. Other _____ | $ 0.00 |
| 18. AVERAGE MONTHLY EXPENSES (Total lines 1-17. Report also on Summary of Schedules and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data.) | $ 5,616.70 |

19. Describe any increase or decrease in expenditures reasonably anticipated to occur within the year following the filing of this document:

20. STATEMENT OF MONTHLY NET INCOME

| | |
|---|---:|
|     a. Average monthly income from Line 15 of Schedule I | $ 0.00 |
|     b. Average monthly expenses from Line 18 above | $ 5,616.70 |
|     c. Monthly net income (a. minus b.) | $ 4,329.30 |

B6 Declaration (Official Form 6 - Declaration) (12/07)

In re  Stephanie Harris _____,          Case No. _____
           **Debtor**                                                          (if known)

# DECLARATION CONCERNING DEBTOR'S SCHEDULES

### DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

I declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of _____ sheets, and that they are true and correct to the best of my knowledge, information, and belief.

Date  01/26/2010 _____          Signature: X _____
                                                                                             **Debtor**

Date _____          Signature: _____
                                                                                  (Joint Debtor, if any)

[If joint case, both spouses must sign.]

---

### DECLARATION AND SIGNATURE OF NON-ATTORNEY BANKRUPTCY PETITION PREPARER (See 11 U.S.C. § 110)

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h) and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required by that section.

_____          _____
Printed or Typed Name and Title, if any,                Social Security No.
of Bankruptcy Petition Preparer                            *(Required by 11 U.S.C. § 110.)*

*If the bankruptcy petition preparer is not an individual, state the name, title (if any), address, and social security number of the officer, principal, responsible person, or partner who signs this document.*

_____
_____ ,
_____
Address

X _____          _____
  Signature of Bankruptcy Petition Preparer                Date

Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document, unless the bankruptcy petition preparer is not an individual:

*If more than one person prepared this document, attach additional signed sheets conforming to the appropriate Official Form for each person.*

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.*

---

### DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF A CORPORATION OR PARTNERSHIP

I, the _____ [the president or other officer or an authorized agent of the corporation or a member or an authorized agent of the partnership ] of the _____ [corporation or partnership] named as debtor in this case, declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of _____ sheets (*Total shown on summary page plus 1*), and that they are true and correct to the best of my knowledge, information, and belief.

Date _____

Signature: _____

_____
[Print or type name of individual signing on behalf of debtor.]

*[An individual signing on behalf of a partnership or corporation must indicate position or relationship to debtor.]*

---

*Penalty for making a false statement or concealing property:*  Fine of up to $500,000 or imprisonment for up to 5 years or both.  18 U.S.C. §§ 152 and 3571.

B 7 (Official Form 7) (12/07)

# UNITED STATES BANKRUPTCY COURT

### Southern District of Florida

In re: Stephanie Harris _____ ,        Case No. _____
                Debtor                                            (if known)

## STATEMENT OF FINANCIAL AFFAIRS

This statement is to be completed by every debtor. Spouses filing a joint petition may file a single statement on which the information for both spouses is combined. If the case is filed under chapter 12 or chapter 13, a married debtor must furnish information for both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. An individual debtor engaged in business as a sole proprietor, partner, family farmer, or self-employed professional, should provide the information requested on this statement concerning all such activities as well as the individual's personal affairs. To indicate payments, transfers and the like to minor children, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

Questions 1 - 18 are to be completed by all debtors. Debtors that are or have been in business, as defined below, also must complete Questions 19 - 25. **If the answer to an applicable question is "None," mark the box labeled "None."** If additional space is needed for the answer to any question, use and attach a separate sheet properly identified with the case name, case number (if known), and the number of the question.

### DEFINITIONS

*"In business."* A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership. An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within six years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed full-time or part-time. An individual debtor also may be "in business" for the purpose of this form if the debtor engages in a trade, business, or other activity, other than as an employee, to supplement income from the debtor's primary employment.

*"Insider."* The term "insider" includes but is not limited to: relatives of the debtor; general partners of the debtor and their relatives; corporations of which the debtor is an officer, director, or person in control; officers, directors, and any owner of 5 percent or more of the voting or equity securities of a corporate debtor and their relatives; affiliates of the debtor and insiders of such affiliates; any managing agent of the debtor. 11 U.S.C. § 101.

---

**1.  Income from employment or operation of business**

None
☐

State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business, including part-time activities either as an employee or in independent trade or business, from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the **two years** immediately preceding this calendar year. (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of the debtor's fiscal year.) If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

AMOUNT                                                SOURCE

$4,000.00        Various real estate services

**2. Income other than from employment or operation of business**

None

☐  State the amount of income received by the debtor other than from employment, trade, profession, operation of the debtor's business during the **two years** immediately preceding the commencement of this case. Give particulars. If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

AMOUNT                                              SOURCE

$4,100.00      Dog consultation and rental

---

**3. Payments to creditors**

*Complete a. or b., as appropriate, and c.*

None

☐  a. *Individual or joint debtor(s) with primarily consumer debts:* List all payments on loans, installment purchases of goods or services, and other debts to any creditor made within **90 days** immediately preceding the commencement of this case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $600. Indicate with an asterisk (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and credit counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

None

☑  b. *Debtor whose debts are not primarily consumer debts:* List each payment or other transfer to any creditor made within **90 days** immediately preceding the commencement of the case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $5,475. If the debtor is an individual, indicate with an asterisk (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and credit counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments and other transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS/ TRANSFERS | AMOUNT PAID OR VALUE OF TRANSFERS | AMOUNT STILL OWING |
|---|---|---|---|

3

None
☑       c. *All debtors:* List all payments made within **one year** immediately preceding the commencement of this case
        to or for the benefit of creditors who are or were insiders. (Married debtors filing under chapter 12 or chapter 13 must
        include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and
        a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR AND RELATIONSHIP TO DEBTOR | DATE OF PAYMENT | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

---

**4. Suits and administrative proceedings, executions, garnishments and attachments**

None
☐       a. List all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately
        preceding the filing of this bankruptcy case. (Married debtors filing under chapter 12 or chapter 13 must include
        information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated
        and a joint petition is not filed.)

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
|---|---|---|---|
| Stephanie Harris/Developer vs. DPR | Frmr dvlpr collecting debt from Lincoln Mews Condo | Miami-Dade County | ongoing |

None
☑       b. Describe all property that has been attached, garnished or seized under any legal or equitable process within **one
        year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13
        must include information concerning property of either or both spouses whether or not a joint petition is filed, unless
        the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON FOR WHOSE BENEFIT PROPERTY WAS SEIZED | DATE OF SEIZURE | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

---

**5. Repossessions, foreclosures and returns**

None
☑       List all property that has been repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu
        of foreclosure or returned to the seller, within **one year** immediately preceding the commencement of this case.
        (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both
        spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR OR SELLER | DATE OF REPOSSESSION, FORECLOSURE SALE, TRANSFER OR RETURN | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

4

**6.   Assignments and receiverships**

None


a. Describe any assignment of property for the benefit of creditors made within **120 days** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include any assignment by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF ASSIGNEE | DATE OF ASSIGNMENT | TERMS OF ASSIGNMENT OR SETTLEMENT |
|---|---|---|
| | | |

None


b. List all property which has been in the hands of a custodian, receiver, or court-appointed official within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CUSTODIAN | NAME AND LOCATION OF COURT CASE TITLE & NUMBER | DATE OF ORDER | DESCRIPTION AND VALUE Of PROPERTY |
|---|---|---|---|
| | | | |

**7.   Gifts**

None


List all gifts or charitable contributions made within **one year** immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient. (Married debtors filing under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON OR ORGANIZATION | RELATIONSHIP TO DEBTOR, IF ANY | DATE OF GIFT | DESCRIPTION AND VALUE OF GIFT |
|---|---|---|---|
| | | | |

**8.   Losses**

None


List all losses from fire, theft, other casualty or gambling within **one year** immediately preceding the commencement of this case **or since the commencement of this case**. (Married debtors filing under chapter 12 or chapter 13 must include losses by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| DESCRIPTION AND VALUE OF PROPERTY | DESCRIPTION OF CIRCUMSTANCES AND, IF LOSS WAS COVERED IN WHOLE OR IN PART BY INSURANCE, GIVE PARTICULARS | DATE OF LOSS |
|---|---|---|
| | | |

12-12020-mg   Doc 7666-2   Filed 10/20/14   Entered 10/20/14 17:47:19   Exhibit 2
Case 20-11750-AJC   Doc 43-1   Filed 08/27/10   Page 26 of 35
Pg 114 of 379

5

**9.   Payments related to debt counseling or bankruptcy**

None ☐

List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of a petition in bankruptcy within **one year** immediately preceding the commencement of this case.

| NAME AND ADDRESS OF PAYEE | DATE OF PAYMENT, NAME OF PAYER IF OTHER THAN DEBTOR | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|
| Advisory Credit & Debt Counseling Agency | 01/26/2010 | 50.00 |

**10.   Other transfers**

None ☑

a.   List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within **two years** immediately preceding the commencement of this case.  (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF TRANSFEREE, RELATIONSHIP TO DEBTOR | DATE | DESCRIBE PROPERTY TRANSFERRED AND VALUE RECEIVED |
|---|---|---|

None ☑

b.   List all property transferred by the debtor within **ten years** immediately preceding the commencement of this case to a self-settled trust or similar device of which the debtor is a beneficiary.

| NAME OF TRUST OR OTHER DEVICE | DATE(S) OF TRANSFER(S) | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY OR DEBTOR'S INTEREST IN PROPERTY |
|---|---|---|

**11.   Closed financial accounts**

None ☐

List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or otherwise transferred within **one year** immediately preceding the commencement of this case.  Include checking, savings, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds, cooperatives, associations, brokerage houses and other financial institutions.  (Married debtors filing under chapter 12 or chapter 13 must include information concerning accounts or instruments held by or for either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF INSTITUTION | TYPE OF ACCOUNT, LAST FOUR DIGITS OF ACCOUNT NUMBER, AND AMOUNT OF FINAL BALANCE | AMOUNT AND DATE OF SALE OR CLOSING |
|---|---|---|
| Suntrust Lincoln & Alton | Stephanie Harris-Personal ▇▇▇ | -441 December, 2009 |

6

**12. Safe deposit boxes**

None 

List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include boxes or depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF BANK OR OTHER DEPOSITORY | NAMES AND ADDRESSES OF THOSE WITH ACCESS TO BOX OR DEPOSITORY | DESCRIPTION OF CONTENTS | DATE OF TRANSFER OR SURRENDER, IF ANY |
|---|---|---|---|

---

**13. Setoffs**

None 

List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within **90 days** preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATE OF SETOFF | AMOUNT OF SETOFF |
|---|---|---|

---

**14. Property held for another person**

None ☑

List all property owned by another person that the debtor holds or controls.

| NAME AND ADDRESS OF OWNER | DESCRIPTION AND VALUE OF PROPERTY | LOCATION OF PROPERTY |
|---|---|---|

---

**15. Prior address of debtor**

None ☑

If debtor has moved within **three years** immediately preceding the commencement of this case, list all premises which the debtor occupied during that period and vacated prior to the commencement of this case. If a joint petition is filed, report also any separate address of either spouse.

| ADDRESS | NAME USED | DATES OF OCCUPANCY |
|---|---|---|

---

12-12020-mg    Doc 7666-2    Filed 10/20/14    Entered 10/20/14 17:47:19    Exhibit 2
Case 12-11700-AJC    Doc 412    Filed 08/27/10    Page 24 of 35
Pg 116 of 379

7

**16. Spouses and Former Spouses**

None
☑

If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within **eight years** immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state.

NAME

---

**17. Environmental Information**.

For the purpose of this question, the following definitions apply:

"Environmental Law" means any federal, state, or local statute or regulation regulating pollution, contamination, releases of hazardous or toxic substances, wastes or material into the air, land, soil, surface water, groundwater, or other medium, including, but not limited to, statutes or regulations regulating the cleanup of these substances, wastes, or material.

"Site" means any location, facility, or property as defined under any Environmental Law, whether or not presently or formerly owned or operated by the debtor, including, but not limited to, disposal sites.

"Hazardous Material" means anything defined as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, or contaminant or similar term under an Environmental Law.

None
☐

a.  List the name and address of every site for which the debtor has received notice in writing by a governmental unit that it may be liable or potentially liable under or in violation of an Environmental Law.  Indicate the governmental unit, the date of the notice, and, if known, the Environmental Law:

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|---|---|---|---|

None
☑

b.  List the name and address of every site for which the debtor provided notice to a governmental unit of a release of Hazardous Material. Indicate the governmental unit to which the notice was sent and the date of the notice.

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|---|---|---|---|

None
☑

c.  List all judicial or administrative proceedings, including settlements or orders, under any Environmental Law with respect to which the debtor is or was a party.  Indicate the name and address of the governmental unit that is or was a party to the proceeding, and the docket number.

| NAME AND ADDRESS OF GOVERNMENTAL UNIT | DOCKET NUMBER | STATUS OR DISPOSITION |
|---|---|---|

---

**18 . Nature, location and name of business**

None
☐

a.  *If the debtor is an individual*, list the names, addresses, taxpayer-identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing

8

executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full- or part-time within **six years** immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

*If the debtor is a partnership*, list the names, addresses, taxpayer-identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities, within **six years** immediately preceding the commencement of this case.

*If the debtor is a corporation*, list the names, addresses, taxpayer-identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

| NAME | LAST FOUR DIGITS OF SOCIAL-SECURITY OR OTHER INDIVIDUAL TAXPAYER-I.D. NO. (ITIN)/ COMPLETE EIN | ADDRESS | NATURE OF BUSINESS | BEGINNING AND ENDING DATES |
|---|---|---|---|---|
| Chadwick Investment Realty | 90-0125561 | 1525 Lenox Ave. MiaBch | Real Estate Broker | 2003-current |

None ☑  b. Identify any business listed in response to subdivision a., above, that is "single asset real estate" as defined in 11 U.S.C. § 101.

NAME                                        ADDRESS

---

The following questions are to be completed by every debtor that is a corporation or partnership and by any individual debtor who is or has been, within **six years** immediately preceding the commencement of this case, any of the following: an officer, director, managing executive, or owner of more than 5 percent of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership, a sole proprietor, or self-employed in a trade, profession, or other activity, either full- or part-time.

*(An individual or joint debtor should complete this portion of the statement **only** if the debtor is or has been in business, as defined above, within six years immediately preceding the commencement of this case. A debtor who has not been in business within those six years should go directly to the signature page.)*

---

**19. Books, records and financial statements**

None ☐  a. List all bookkeepers and accountants who within **two years** immediately preceding the filing of this bankruptcy case kept or supervised the keeping of books of account and records of the debtor.

NAME AND ADDRESS                                        DATES SERVICES RENDERED

Kim Marks                                               2003-current
2136 NE 123 St. North Miami Beach, Fl, 33181

None ☐  b. List all firms or individuals who within **two years** immediately preceding the filing of this bankruptcy case have audited the books of account and records, or prepared a financial statement of the debtor.

NAME                        ADDRESS                        DATES SERVICES RENDERED

Kim Marks                   2136 NE 123 St. North Miami     2003-current

9

None ☑    c. List all firms or individuals who at the time of the commencement of this case were in possession of the books of account and records of the debtor. If any of the books of account and records are not available, explain.

NAME                                                                    ADDRESS


None ☑    d. List all financial institutions, creditors and other parties, including mercantile and trade agencies, to whom a financial statement was issued by the debtor within **two years** immediately preceding the commencement of this case.

NAME AND ADDRESS                                        DATE ISSUED


---

**20. Inventories**

None ☑    a. List the dates of the last two inventories taken of your property, the name of the person who supervised the taking of each inventory, and the dollar amount and basis of each inventory.

DATE OF INVENTORY        INVENTORY SUPERVISOR        DOLLAR AMOUNT OF INVENTORY (Specify cost, market or other basis)


None ☑    b. List the name and address of the person having possession of the records of each of the inventories reported in a., above.

DATE OF INVENTORY                                        NAME AND ADDRESSES OF CUSTODIAN OF INVENTORY RECORDS


---

**21 . Current Partners, Officers, Directors and Shareholders**

None ☑    a. If the debtor is a partnership, list the nature and percentage of partnership interest of each member of the partnership.

NAME AND ADDRESS              NATURE OF INTEREST        PERCENTAGE OF INTEREST


None ☐    b.    If the debtor is a corporation, list all officers and directors of the corporation, and each stockholder who directly or indirectly owns, controls, or holds 5 percent or more of the voting or equity securities of the corporation.

| NAME AND ADDRESS | TITLE | NATURE AND PERCENTAGE OF STOCK OWNERSHIP |
|---|---|---|
| Chadwick Realty | President | Real Estate Broker 100% |

---

10

**22 . Former partners, officers, directors and shareholders**

None ☑  a.  If the debtor is a partnership, list each member who withdrew from the partnership within **one year** immediately preceding the commencement of this case.

NAME                     ADDRESS            DATE OF WITHDRAWAL

None ☑  b.  If the debtor is a corporation, list all officers or directors whose relationship with the corporation terminated within **one year** immediately preceding the commencement of this case.

NAME AND ADDRESS         TITLE              DATE OF TERMINATION

**23 . Withdrawals from a partnership or distributions by a corporation**

None ☑  If the debtor is a partnership or corporation, list all withdrawals or distributions credited or given to an insider, including compensation in any form, bonuses, loans, stock redemptions, options exercised and any other perquisite during **one year** immediately preceding the commencement of this case.

NAME & ADDRESS                              AMOUNT OF MONEY
OF RECIPIENT,            DATE AND PURPOSE   OR DESCRIPTION
RELATIONSHIP TO DEBTOR   OF WITHDRAWAL      AND VALUE OF PROPERTY

**24. Tax Consolidation Group.**

None ☑  If the debtor is a corporation, list the name and federal taxpayer-identification number of the parent corporation of any consolidated group for tax purposes of which the debtor has been a member at any time within **six years** immediately preceding the commencement of the case.

NAME OF PARENT CORPORATION     TAXPAYER-IDENTIFICATION NUMBER (EIN)

**25. Pension Funds.**

None ☑  If the debtor is not an individual, list the name and federal taxpayer-identification number of any pension fund to which the debtor, as an employer, has been responsible for contributing at any time within **six years** immediately preceding the commencement of the case.

NAME OF PENSION FUND        TAXPAYER-IDENTIFICATION NUMBER (EIN)

\* \* \* \* \* \*

*[If completed by an individual or individual and spouse]*

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct.

Date    01/26/2010    Signature of Debtor    X

Date    Signature of Joint Debtor (if any)

---

*[If completed on behalf of a partnership or corporation]*

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct to the best of my knowledge, information and belief.

Date    01/21/2010    Signature

    Print Name and Title    **Stephanie Harris/Broker**

[An individual signing on behalf of a partnership or corporation must indicate position or relationship to debtor.]

___continuation sheets attached

*Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571*

---

**DECLARATION AND SIGNATURE OF NON-ATTORNEY BANKRUPTCY PETITION PREPARER (See 11 U.S.C. § 110)**

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required by that section.

Printed or Typed Name and Title, if any, of Bankruptcy Petition Preparer    Social-Security No. (Required by 11 U.S.C. § 110.)

*If the bankruptcy petition preparer is not an individual, state the name, title (if any), address, and social-security number of the officer, principal, responsible person, or partner who signs this document.*

Address

Signature of Bankruptcy Petition Preparer    Date

Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual:

If more than one person prepared this document, attach additional signed sheets conforming to the appropriate Official Form for each person

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 18 U.S.C. § 156.*

Case 12-11700-AJC   Doc 429   Filed 02/27/19   Page 83 of 95

Page 3

B 8 (Official Form 8) (12/08)

# CHAPTER 7 INDIVIDUAL DEBTOR'S STATEMENT OF INTENTION
*(Continuation Sheet)*

**PART A -** Continuation

| Property No. | |
|---|---|
| **Creditor's Name:** | **Describe Property Securing Debt:** |

Property will be *(check one)*:
❏ Surrendered             ❏ Retained

If retaining the property, I intend to *(check at least one)*:
❏ Redeem the property
❏ Reaffirm the debt
❏ Other.  Explain _____ (for example, avoid lien using 11  U.S.C. § 522(f)).


Property is *(check one)*:
❏ Claimed as exempt                ❏ Not claimed as exempt

**PART B -** Continuation

| Property No. | | |
|---|---|---|
| **Lessor's Name:** | **Describe Leased Property:** | Lease will be Assumed pursuant to 11 U.S.C. § 365(p)(2):<br>❏ YES        ❏ NO |

| Property No. | | |
|---|---|---|
| **Lessor's Name:** | **Describe Leased Property:** | Lease will be Assumed pursuant to 11 U.S.C. § 365(p)(2):<br>❏ YES        ❏ NO |

B 8 (Official Form 8) (12/08)                                                    Page 2

**PART B** – Personal property subject to unexpired leases. *(All three columns of Part B must be completed for each unexpired lease. Attach additional pages if necessary.)*

| Property No. 1 | | |
|---|---|---|
| **Lessor's Name:** | **Describe Leased Property:** | Lease will be Assumed pursuant to 11 U.S.C. § 365(p)(2):<br>❏ YES     ❏ NO |

| Property No. 2 *(if necessary)* | | |
|---|---|---|
| **Lessor's Name:** | **Describe Leased Property:** | Lease will be Assumed pursuant to 11 U.S.C. § 365(p)(2):<br>❏ YES     ❏ NO |

| Property No. 3 *(if necessary)* | | |
|---|---|---|
| **Lessor's Name:** | **Describe Leased Property:** | Lease will be Assumed pursuant to 11 U.S.C. § 365(p)(2):<br>❏ YES     ❏ NO |

_____ continuation sheets attached *(if any)*

**I declare under penalty of perjury that the above indicates my intention as to any property of my estate securing a debt and/or personal property subject to an unexpired lease.**

Date: 01/26/2010 _____        X _____
                                            Signature of Debtor

                                         _____
                                         Signature of Joint Debtor

B 8 (Official Form 8) (12/08)

# UNITED STATES BANKRUPTCY COURT

## Southern District of Florida

In re Stephanie Harris _____ ,                    Case No. _____
          Debtor                                                         Chapter 7

## CHAPTER 7 INDIVIDUAL DEBTOR'S STATEMENT OF INTENTION

**PART A** – Debts secured by property of the estate. *(Part A must be fully completed for EACH debt which is secured by property of the estate. Attach additional pages if necessary.)*

| Property No. 1 | |
|---|---|
| **Creditor's Name:**<br>Citi Bank | **Describe Property Securing Debt:**<br>Homestead, 1525 Lenox Ave. |

Property will be *(check one)*:
☐ Surrendered            ☑ Retained

If retaining the property, I intend to *(check at least one)*:
☐ Redeem the property
☐ Reaffirm the debt
☑ Other.  Explain Bank to issue hardcopy of modification  (for example, avoid lien using 11 U.S.C. § 522(f)).

Property is *(check one)*:
☑ Claimed as exempt                    ☐ Not claimed as exempt

| Property No. 2 *(if necessary)* | |
|---|---|
| **Creditor's Name:**<br>GMAC | **Describe Property Securing Debt:**<br>1525 Lenox Ave. # 2, upsidedown rental prop. |

Property will be *(check one)*:
☐ Surrendered            ☑ Retained

If retaining the property, I intend to *(check at least one)*:
☐ Redeem the property
☑ Reaffirm the debt
☐ Other.  Explain _____ (for example, avoid lien using 11 U.S.C. § 522(f)).

Property is *(check one)*:
☐ Claimed as exempt                    ☑ Not claimed as exempt

**<u>Exhibit 2-J</u>**

**Docket Report in the 2008 Foreclosure Proceeding**

🛒 **0 Item(s) in Basket**                    Home    Online Services    About us    Contact us

# HARVEY RUVIN
## CLERK *of the* COURTS
### MIAMI-DADE COUNTY, FLORIDA

## Civil Court Online System - Docket Information

BACK TO SEARCH RESULTS                ALL PARTIES                START A NEW SEARCH

**DEUTSCHE BANK TR CO AMERICAS vs HARRIS, STEPHANIE**
* Click on BOOK/PAGE of a particular docket to see the image if it is available *

**Case Number (LOCAL):** 2008-40534-CA-01    **Dockets Retrieved:** 50    **Filing Date:** 07/15/2008
**Case Number (STATE):** 13-2008-CA-040534-0000-01              **Judicial Section:** 58

| Date | Book/Page | Docket Entry | Comments |
|------|-----------|--------------|----------|
| 07/27/2011 | | REASSNGMT PURSUANT TO ADMINISTRATIVE ORD: | 58 FM:50 |
| 07/27/2011 | | TEXT | REASGND FROM SEC 50 PER ADMINISTRATIVE MEMO CIV 11-A |
| 12/13/2010 | 27519 / 1227 Pages: 3 | DISCHARGE/RELEASE OF LIS PENDENS | BK:27519 PG:1227 |
| 12/13/2010 | | NO FURTHER JUDICIAL ACTION | |
| 12/13/2010 | 27519 / 1227 Pages: 3 | ORDER OF DISMISSAL | BK:27519 PG:1227 DN01 DN02 |
| 12/06/2010 | | FINAL DISPOSITION DOCUMENT | |
| 12/06/2010 | | MOTION TO DISMISS | |
| 09/10/2010 | | NOTICE: | PURSUANT TO RULE 4-3.3, RULE OF PROFESSIONAL CONDUCT,ETC |
| 06/19/2010 | | TEXT | REASGND FROM SEC 10 PER A.O. |
| 01/22/2010 | | CANCELLATION NOTICE | 02/03/2010 09:30 AM |
| 01/05/2010 | | ORDER: | GRANTING MTN TO WITHDRAW |
| 12/22/2009 | | NOTICE HEARING- | MOTIONS 02/03/2010 09:30 AM |
| 12/10/2009 | | AFFIDAVIT OF: | AS TO AMOUNTS DUE AND OWING |
| 11/17/2009 | | NOTICE OF HEARING- | MOTIONS 01/05/2010 09:30 AM |
| 11/10/2009 | | NOTICE HEARING- | MOTIONS 01/05/2010 09:30 AM |
| 10/13/2009 | | MOTION TO WITHDRAW | |
| 10/06/2009 | | MOTION FOR DEFAULT | |
| 08/10/2009 | | NOTICE OF FILING: | AFFIDAVIT OF REASONABLE ATTY FEES |
| 08/10/2009 | | AFFIDAVIT AS TO ATTORNEY FEES | |
| 05/21/2009 | | MOTION FOR DEFAULT | |
| 02/27/2009 | | RESPONSE: | TO DEF MTN TO DISMISS |
| 02/09/2009 | | SERVICE RETURNED | BADGE # 888888 P 12/18/2008 DN01 |
| 01/23/2009 | 26728 / 1843 Pages: 1 | BOND | $ 100.00 BK:26728 PG:1843 PN01 NON RESIDENT COST BOND |
| 01/23/2009 | | COURT REGISTRY DEPOSIT | $ 100.00 FLA DEFAULT LAW GROUP, P.L. |
| 01/08/2009 | | DEFAULT | DN02 |

Miami-Dade County Clerk - Civil Court Online System - Docket Information    Page 2 of 2
12-12020-mg   Doc 7666-2   Filed 10/20/14   Entered 10/20/14 17:47:19   Exhibit 2
Pg 126 of 379

| | | | |
|---|---|---|---|
| 01/08/2009 | | MOTION TO DISMISS | |
| 11/17/2008 | | CANCELLATION NOTICE | 11/20/2008 09:30 AM |
| 11/06/2008 | | ORDER: | GRANTING MTN TO QUASH SERVICE |
| 10/24/2008 | | NOTICE HEARING- | MOTIONS 11/06/2008 09:30 AM |
| 10/21/2008 | | AFFIDAVIT OF: | AMOUNTS DUE AND OWING |
| 10/20/2008 | | NOTICE HEARING- | MOTIONS 11/20/2008 09:30 AM |
| 10/16/2008 | | MOTION FOR DEFAULT | |
| 10/06/2008 | | MOTION TO QUASH | |
| 09/25/2008 | | PROOF OF PUBLICATION | PUB DATE :09/18/2008 |
| 09/09/2008 | | TEXT | NOAP ON ANY & ALL UNKNOWN PARTIES, PUB DATE 10-21-2008 |
| 09/09/2008 | | NOTICE OF ACTION - PUBLICATION | PUB DATE :10/21/2008 DN01 1 COPY OF NOTICE & COMPLAINT MAILED |
| 09/02/2008 | | AFFIDAVIT OF DILIGENT SEARCH | |
| 09/02/2008 | | NON-MILITARY AFFIDAVIT | |
| 09/02/2008 | | AFFIDAVIT OF DILIGENT SEARCH | |
| 09/02/2008 | | AFFIDAVIT OF DILIGENT SEARCH | |
| 08/27/2008 | | TEXT | INSTRUCTION TO CLERK OF COURT |
| 08/20/2008 | | TEXT | SUMMONS RTD. NOT SERVED ON TENANT NO.2 |
| 08/20/2008 | | SUMMONS RETURNED - NO SERVICE | DN01 |
| 08/20/2008 | | TEXT | SUMMONS RT.D NOT SERVED ON TENANT NO.1 |
| 08/20/2008 | | TEXT | SUMMONS RTD. NOT SERVED ON UNK SPOUSE STEPHANIE HARRIS |
| 08/20/2008 | | SERVICE RETURNED | BADGE # 55555 S 07/26/2008 DN02 |
| 07/17/2008 | 26484 / 1914 Pages: 1 | LIS PENDENS | BK:26484 PG:1914 |
| 07/15/2008 | | CIVIL COVER | |
| 07/15/2008 | | SUMMONS ISSUED | DN01 DN02 |
| 07/15/2008 | | COMPLAINT | |

BACK TO SEARCH RESULTS        ALL PARTIES        START A NEW SEARCH



2008 Clerk of the Court. All Rights reserved.

S0142976

**<u>Exhibit 2-K</u>**

**2010 Bankruptcy Discharge Order**

**Form CGFD39** (9/19/08)



**ORDERED in the Southern District of Florida on February 11, 2011**

_A. Jay Cristol_
**A. Jay Cristol**
United States Bankruptcy Judge

---

# United States Bankruptcy Court
### Southern District of Florida
### www.flsb.uscourts.gov

Case Number: **10–11746–AJC**

Chapter: **7**

**In re:** *

Stephanie Harris
aka Stephanie Tillen Harris
POB 190504
Miami Beach, FL 33139

Last four digits of SSN/ITIN or Complete EIN: ▮▮▮▮

## DISCHARGE OF DEBTOR(S)

It appearing that the debtor is entitled to a discharge,

## IT IS ORDERED:

The debtor is granted a discharge under section 727 of title 11, United States Code, (the Bankruptcy Code).

### SEE THE BACK OF THIS ORDER FOR IMPORTANT INFORMATION.

Copies to:  All Parties of record

---

* Set forth all names, including trade names, used by the debtor(s) within the last 8 years. For joint debtors, set forth the last four digits of both social–security numbers or individual taxpayer–identification numbers (ITIN) or complete employer tax–identification numbers (EIN).

*Page 1 of 2*

## EXPLANATION OF BANKRUPTCY DISCHARGE
## IN A CHAPTER 7 CASE

This court order grants a discharge to the person(s) named as the debtor(s). It is not a dismissal of the case and it does not determine how much money, if any, the trustee will pay to creditors.

### Collection of Discharged Debts Prohibited

The discharge prohibits any attempt to collect from the debtor(s) a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor(s). *[In a case involving community property:* There are also special rules that protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.] A creditor who violates this order can be required to pay damages and attorney's fees to the debtor.

However, a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor(s)' property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case. Also, a debtor may voluntarily pay any debt that has been discharged.

### Debts That are Discharged

The chapter 7 discharge order eliminates a debtor's legal obligation to pay a debt that is discharged. Most, but not all, types of debts are discharged if the debt existed on the date the bankruptcy case was filed. (If this case was begun under a different chapter of the Bankruptcy Code and converted to chapter 7, the discharge applies to debts owed when the bankruptcy case was converted.)

### Debts that are Not Discharged.

Some of the common types of debts which are not discharged in a chapter 7 bankruptcy case are:

a. Debts for most taxes;

b. Debts incurred to pay nondischargeable taxes;

c. Debts that are domestic support obligations;

d. Debts for most student loans;

e. Debts for most fines, penalties, forfeitures, or criminal restitution obligations;

f. Debts for personal injuries or death caused by the debtor's operation of a motor vehicle, vessel, or aircraft while intoxicated;

g. Some debts which were not properly listed by the debtor;

h. Debts that the bankruptcy court specifically has decided or will decide in this bankruptcy case are not discharged;

i. Debts for which the debtor has given up the discharge protections by signing a reaffirmation agreement in compliance with the Bankruptcy Code requirements for reaffirmation of debts; and

j. Debts owed to certain pension, profit sharing, stock bonus, other retirement plans, or to the Thrift Savings Plan for federal employees for certain types of loans from these plans.

**This information is only a general summary of the bankruptcy discharge. There are exceptions to these general rules. Because the law is complicated, you may want to consult an attorney to determine the exact effect of the discharge in this case.**

*# # #*

*Page 2 of 2*

**<u>Exhibit 2-L</u>**

**Chapter 7 Bankruptcy Docket Report**

**SEALEDDOC, CLOSED**

# U.S. Bankruptcy Court
## Southern District of Florida (Miami)
### Bankruptcy Petition #: 10-11746-AJC

|  |  |
|---|---|
|  | *Date filed:* 01/27/2010 |
| *Assigned to:* A. Jay Cristol | *Date terminated:* 07/14/2011 |
| Chapter 7 | *Debtor discharged:* 02/11/2011 |
| Voluntary | *341 meeting:* 04/01/2010 |
| No asset | *Deadline for objecting to discharge:* 04/26/2010 |

*Debtor disposition:* Standard Discharge

| | |
|---|---|
| ***Debtor*** | represented by **Joel M. Aresty, Esq.** |
| **Stephanie Harris** | 309 1st Ave S |
| POB 190504 | Tierra Verde, FL 33715 |
| Miami Beach, FL 33139 | 305.899.9876 |
| MIAMI-DADE-FL | Fax : 305.723.7893 |
| SSN / ITIN: xxx-xx-3823 | Email: aresty@mac.com |
| *aka* **Stephanie Tillen Harris** | |
| | **Jeffrey S. Berlowitz** |
| | 201 Alhambra Circle |
| | 11th Floor |
| | Coral Gables, FL 33134 |
| | 305.442.3334 x369 |
| | Email: jberlowitz@srhl-law.com |
| | *TERMINATED: 12/02/2010* |
| | |
| ***Trustee*** | represented by **Scott N Brown, Esq** |
| **Soneet Kapila** | 1 S.E. 3rd Avenue - #1440 |
| www.kapilatrustee.com | Miami, FL 33131 |
| PO Box 14213 | 305-379-7904 |
| Ft Lauderdale, FL 33302 | Email: sbrown@bastamron.com |
| 954-761-8707 | |
| | |
| ***U.S. Trustee*** | |
| **Office of the US Trustee** | |
| 51 S.W. 1st Ave. | |
| Suite 1204 | |
| Miami, FL 33130 | |
| (305) 536-7285 | |

| Filing Date | # | Docket Text |
|---|---|---|
| | | |

| 01/27/2010 | ●1<br>(35 pgs) | Chapter 7 Voluntary Petition (Lebron, Lorraine) Additional attachment(s) added on 1/28/2010 (Skinner-Grant, Sheila). (Entered: 01/27/2010) |
| 01/27/2010 | ●2<br>(5 pgs; 2 docs) | **NOTICE NOT GENERATED DUE TO MATRIX DEFICIENCY, SEE DE#4**Meeting of Creditors to be held on 02/25/2010 at 04:00 PM at 51 SW First Ave Room 102, Miami. Objections to Discharge/Dischargeability due by 04/26/2010. (Lebron, Lorraine) Modified on 1/27/2010 (Skinner-Grant, Sheila). Modified on 2/3/2010**TO REFLECT NOTICE RELEASED** (Skinner-Grant, Sheila). (Entered: 01/27/2010) |
| 01/27/2010 | ●3 | Statement of Debtor(s) Social Security Number(s) *[Document Image Available ONLY to Court Users]* Filed by Debtor Stephanie Harris . (Lebron, Lorraine) (Entered: 01/27/2010) |
| 01/27/2010 | ●4<br>(1 pg) | Notice of Deadline to Correct Filing Deficiency to Avoid Dismissal of Case Without Further Notice. [Deficiency Must be Cured by 2/3/2010].Creditor Matrix Due: 2/3/2010. (Lebron, Lorraine) (Entered: 01/27/2010) |
| 01/27/2010 | ●5<br>(8 pgs) | Statement of Current Monthly Income and Means Test Calculation Filed by Debtor Stephanie Harris . (Lebron, Lorraine) (Entered: 01/27/2010) |
| 01/27/2010 | ●6<br>(1 pg) | Certification of Budget and Credit Counseling Course by Debtor Filed by Debtor Stephanie Harris . (Lebron, Lorraine) (Entered: 01/27/2010) |
| 01/27/2010 | ●7<br>(1 pg) | Notice of Deficiency Schedule F due 2/10/2010. Schedule G due 2/10/2010. Schedule H due 2/10/2010.Declaration Concerning Debtors Schedules Due: 2/10/2010. Payment Advices due for Debtor 2/10/2010. [Incomplete Filings due by 2/10/2010]. (Lebron, Lorraine) (Entered: 01/27/2010) |
| 01/27/2010 | ● | Receipt of Chapter 7 Filing Fee - $299.00 by LL. Receipt Number 00284009. (admin) (Entered: 01/27/2010) |
| 01/28/2010 | ●8<br>(1 pg) | Case Checked and Notice of Requirement to File a Certificate of Completion of a Financial |

|  |  |  |
|---|---|---|
|  |  | Management Course. (Skinner-Grant, Sheila) (Entered: 01/28/2010) |
| 01/29/2010 | ●9 (2 pgs) | BNC Certificate of Mailing (Re: 7 Notice of Deficiency Schedule F due 2/10/2010. Schedule G due 2/10/2010. Schedule H due 2/10/2010.Declaration Concerning Debtors Schedules Due: 2/10/2010. Payment Advices due for Debtor 2/10/2010. [Incomplete Filings due by 2/10/2010].) Service Date 01/29/2010. (Admin.) (Entered: 01/30/2010) |
| 01/29/2010 | ●10 (2 pgs) | BNC Certificate of Mailing (Re: 4 Notice of Deadline to Correct Filing Deficiency to Avoid Dismissal of Case Without Further Notice. [Deficiency Must be Cured by 2/3/2010].Creditor Matrix Due: 2/3/2010.) Service Date 01/29/2010. (Admin.) (Entered: 01/30/2010) |
| 01/30/2010 | ●11 (2 pgs) | BNC Certificate of Mailing (Re: 8 Case Checked and Notice of Requirement to File a Certificate of Completion of a Financial Management Course.) Service Date 01/30/2010. (Admin.) (Entered: 01/31/2010) |
| 02/01/2010 | ●12 (5 pgs) | Schedules Filed: [Schedules F, G, H, Declaration and Matrix] Filed by Debtor Stephanie Harris . (Valencia, Yamileth) (Entered: 02/01/2010) |
| 02/03/2010 | ●13 (3 pgs) | Notice of Change of Address Filed by Debtor Stephanie Harris . (Valencia, Yamileth) (Entered: 02/03/2010) |
| 02/11/2010 | ●14 (1 pg) | Notice of Appearance and Request for Service by Rubina K Shaldjian Filed by Creditor Deutsche Bank Trust Company Americas. (Shaldjian, Rubina) (Entered: 02/11/2010) |
| 02/24/2010 | ●15 (2 pgs) | Payment Advices by Debtor Filed by Debtor Stephanie Harris (Re: 7 Notice of Deficiency Re: Schedules). (Valencia, Yamileth) (Entered: 02/25/2010) |
| 02/26/2010 | ●16 | Section 341 Meeting of Creditors Rescheduled/Continued on 3/17/2010 at 09:00 AM at 51 SW First Ave Room 102, Miami (Kapila, Soneet) (Entered: 02/26/2010) |

| | | |
|---|---|---|
| 03/12/2010 | ⬤ 17 (2 pgs) | Agreed *Ex Parte* Motion to Extend Time to Object to Exemptions Pursuant to Local Rule 9013-1(C) (5), *Ex Parte* Motion to Extend Time to File Section 727 Complaint Objecting to Discharge of Debtor(s) Filed by Trustee Soneet Kapila. (^Kapila1, Soneet) (Entered: 03/12/2010) |
| 03/12/2010 | ⬤ 18 (2 pgs) | Order Granting Motion to Extend Time (Re: # 17), Granting Motion to Extend Time to File Section 727 Complaint Objecting to Discharge of Debtor(s) (Re: #17) Deadline Extended to **5/21/2010** (Valencia, Yamileth) (Entered: 03/15/2010) |
| 03/16/2010 | ⬤ 19 (1 pg) | Certificate of Service Filed by Trustee Soneet Kapila (Re: 18 Order on Motion to Extend Time, Order on Motion to Extend Time to File Section 727 Complaint). (^Kapila1, Soneet) (Entered: 03/16/2010) |
| 03/18/2010 | ⬤ 20 | Section 341 Meeting of Creditors Rescheduled/Continued on 4/1/2010 at 09:00 AM at 51 SW First Ave Room 102, Miami (Kapila, Soneet) (Entered: 03/18/2010) |
| 03/29/2010 | ⬤ 21 (3 pgs) | Notice of Appearance and Request for Service by William R Wohlsifer Filed by Creditor State Of Florida, Dept Of Business & Professional Regulation, Div Of Fla Land Sales, Condominums & Mobile Homes . (Valencia, Yamileth) (Entered: 03/31/2010) |
| 04/01/2010 | ⬤ 22 (1 pg) | Notice of Appearance and Request for Service by Jeffrey S. Berlowitz Esq. Filed by Debtor Stephanie Harris. (Berlowitz, Jeffrey) (Entered: 04/01/2010) |
| 04/01/2010 | ⬤ 23 (18 pgs; 2 docs) | Amended Summary of Schedules,Schedule A,Schedule B,Schedule C,Schedule D,Schedule E,Schedule F,Schedule G,Schedule H,Schedule I,Schedule J, Filed by Debtor Stephanie Harris . (Attachments: 1 Local Form 4) (Valencia, Yamileth) (Entered: 04/01/2010) |
| 04/01/2010 | ⬤ 24 | Meeting of Creditors Held and Concluded (Kapila, Soneet) (Entered: 04/01/2010) |
| 04/01/2010 | ⬤ | Receipt of Amendment Filing Fee - $26.00 by SG. Receipt Number 00284893. (admin) (Entered: 04/01/2010) |

| Date | Doc | Description |
|---|---|---|
| 04/09/2010 | ●25 | The information required by 11 U.S.C. Sec. 521(a)(1) as provided by the debtor(s) in this case is complete to the satisfaction of the trustee. No creditor or other party in interest has filed a request for an order of dismissal pursuant to 11 U.S.C. Sec. 521(i)(2) and the trustee does not believe that this case is subject to automatic dismissal pursuant to 11 U.S.C. Sec. 521(i). (Kapila, Soneet) (Entered: 04/09/2010) |
| 04/12/2010 | ●26 (2 pgs) | Order Determining Debtor's Compliance with Filing Requirements of Section 521(a)(1). Deadline for any creditor or other party in interest to contest the court's finding shall file an objection not later than 21 days from the date of entry of this order . (Valencia, Yamileth) (Entered: 04/12/2010) |
| 04/14/2010 | ●27 (4 pgs) | BNC Certificate of Mailing (Re: 26 Order Determining Debtor's Compliance with Filing Requirements of Section 521) Service Date 04/14/2010. (Admin.) (Entered: 04/15/2010) |
| 04/19/2010 | ●28 (4 pgs) | *Ex Parte* Application to Employ Scott N. Brown as Attorney for the Trustee *Nunc Pro Tunc to April 19, 2010* [Affidavit Attached] Filed by Trustee Soneet Kapila. (Brown, Scott) (Entered: 04/19/2010) |
| 04/19/2010 | ●29 (2 pgs) | Order Granting Application to Employ Scott N. Brown (Re: # 28) (Valencia, Yamileth) (Entered: 04/20/2010) |
| 04/21/2010 | ●30 (3 pgs) | Certificate of Service by Attorney Scott N Brown Esq (Re: 29 Order on Application to Employ). (^Brown1, Scott) (Entered: 04/21/2010) |
| 04/22/2010 | ●31 (3 pgs) | *Second* Agreed *Ex Parte* Motion to Extend Time to File Objections to Debtor's Claimed Exemptions up to and incuding May 21, 2010 Filed by Trustee Soneet Kapila. (^Brown1, Scott) (Entered: 04/22/2010) |
| 04/23/2010 | ●32 (3 pgs) | Agreed *Ex Parte* Motion to Extend Time to 05/14/10 Filed by Attorney Florida Department of Business and Professional Regulation, Division of Florida Condominiums, Timeshares and Mobile Homes. (Brittle, Cheryl) (Entered: 04/23/2010) |

| 04/23/2010 | 🔵33<br>(2 pgs) | Order Granting Second Agreed Ex-Parte Motion to Extend Time to File Objections to Debtor's Claimed Exemptions up to and incuding May 21, 2010(Re: # 31) (Cohen, Diana) (Entered: 04/23/2010) |
| 04/26/2010 | 🔵34<br>(1 pg) | Certificate of Service by Attorney Scott N Brown Esq (Re: 33 Order on Motion to Extend Time). (Brown, Scott) (Entered: 04/26/2010) |
| 04/26/2010 | 🔵35<br>(2 pgs) | Order Granting Motion to Extend Time (Re: # 32) (Valencia, Yamileth) (Entered: 04/26/2010) |
| 04/26/2010 | 🔵37<br>(1 pg) | Request for Notice Filed by Creditor Lincoln Mews Condominium Inc . (Valencia, Yamileth) (Entered: 04/27/2010) |
| 04/27/2010 | 🔵36<br>(1 pg) | Certificate of Service *for the Order Granting Extension of Time to Object by State of Florida DBPR* Filed by Attorney Florida Department of Business and Professional Regulation, Division of Florida Condominiums, Timeshares and Mobile Homes (Re: 35 Order on Motion to Extend Time). (Brittle, Cheryl) (Entered: 04/27/2010) |
| 05/11/2010 | 🔵38<br>(3 pgs) | Trustee's Interim Report. The trustee has submitted to the Office of the United States Trustee an interim report for the period ending 03/31/2010. The interim report provides information concerning asset administration and an accounting of the financial activity in the case. Filed by Trustee Soneet Kapila. (Kapila, Soneet) (Entered: 05/11/2010) |
| 05/20/2010 | 🔵39<br>(2 pgs) | Notice of Taking Rule 2004 Examination of Stephanie Harris on June 10, 2010 at 10:30 a.m. Filed by Trustee Soneet Kapila. (^Brown1, Scott) (Entered: 05/20/2010) |
| 05/21/2010 | 🔵40<br>(3 pgs) | *Third* Agreed *Ex Parte* Motion to Extend Time to File Objections to Debtor's Claimed Exemptions, in addition to Third Agreed *Ex Parte* Motion to Extend Time to File Section 727 Complaint Objecting to Discharge of Debtor(s) *up to and including July 6, 2010* Filed by Trustee Soneet Kapila. (^Brown1, Scott) (Entered: 05/21/2010) |
| 05/24/2010 | 🔵41<br>(2 pgs) | Order Granting Trustee's Third Agreed Motion to Extend Time to File Objections to Debtor's Claimed |

| | | |
|---|---|---|
| | | Exemptions to **7/6/2010** (Re: # 40), Granting Motion to Extend Time to File Section 727 Complaint Objecting to Discharge of Debtor (Re: #40) Deadline Extended to **7/6/2010** (Benitez, Judy) (Entered: 05/24/2010) |
| 05/25/2010 | 42 (1 pg) | Certificate of Service by Attorney Scott N Brown Esq (Re: 41 Order on Motion to Extend Time, Order on Motion to Extend Time to File Section 727 Complaint). (^Brown1, Scott) (Entered: 05/25/2010) |
| 06/07/2010 | 43 (3 pgs) | Cross Notice of Taking Rule 2004 Examination of Stephanie Harris on June 10, 2010 at 10:30 a.m. Filed by Creditor State Of Florida, Dept Of Business & Professional Regulation, Div Of Fla Land Sales, Condominums & Mobile Homes. (Wohlsifer, William) (Entered: 06/07/2010) |
| 06/07/2010 | 44 (40 pgs; 5 docs) | Motion for Relief from Stay *1525 Lenox Ave., Unit 2* [Negative Notice] [Fee Amount $150] Filed by Creditor Deutsche Bank Trust Company Americas. (Attachments: 1 Exhibit A2 Exhibit B3 Exhibit C4 Proposed Order) (Shaldjian, Rubina) (Entered: 06/07/2010) |
| 06/07/2010 | | Receipt of Motion for Relief From Stay(10-11746-AJC) [motion,mrlfsty] ( 150.00) Filing Fee. Receipt number 7950733. Fee amount 150.00. (U.S. Treasury) (Entered: 06/07/2010) |
| 06/08/2010 | 45 (59 pgs; 2 docs) | Motion for Relief from Stay *or To Determine Non-Applicability of the Automatic Stay and Memorandum* [Negative Notice] [Fee Amount $150] Filed by Creditor State Of Florida, Dept Of Business & Professional Regulation, Div Of Fla Land Sales, Condominums & Mobile Homes. (Attachments: 1 Exhibit civil complaint) (Brittle, Cheryl) (Entered: 06/08/2010) |
| 06/08/2010 | | Receipt of Motion for Relief From Stay(10-11746-AJC) [motion,mrlfsty] ( 150.00) Filing Fee. Receipt number 7958267. Fee amount 150.00. (U.S. Treasury) (Entered: 06/08/2010) |
| 06/09/2010 | 46 (1 pg) | Notice of Filing *Notice of Postponement of Rule 2004 Examination of Stephanie Harris*, Filed by Trustee Soneet Kapila (Re: 39 Notice of |

| | | |
|---|---|---|
| | | Examination). (^Brown1, Scott) (Entered: 06/09/2010) |
| 06/15/2010 | 🔘47 (1 pg) | Notice of Unavailability from July 16, 2010 to July 30, 2010 by Attorney Scott N Brown Esq. (^Brown1, Scott) (Entered: 06/15/2010) |
| 06/16/2010 | 🔘48 (1 pg) | Notice of Unavailability from August 2, 2010 to August 13, 2010 by Attorney William R Wohlsifer. (Wohlsifer, William) (Entered: 06/16/2010) |
| 06/17/2010 | 🔘49 (2 pgs) | Certificate of Service Filed by Creditor State Of Florida, Dept Of Business & Professional Regulation, Div Of Fla Land Sales, Condominums & Mobile Homes (Re: 45 Motion for Relief from Stay *or To Determine Non-Applicability of the Automatic Stay and Memorandum* [Negative Notice] [Fee Amount $150] filed by Creditor State Of Florida, Dept Of Business & Professional Regulation, Div Of Fla Land Sales, Condominums & Mobile Homes). (Brittle, Cheryl) (Entered: 06/17/2010) |
| 06/21/2010 | 🔘50 (3 pgs) | Response to (44 Motion for Relief from Stay *1525 Lenox Ave., Unit 2* [Negative Notice] [Fee Amount $150] filed by Creditor Deutsche Bank Trust Company Americas) Filed by Debtor Stephanie Harris (Berlowitz, Jeffrey) (Entered: 06/21/2010) |
| 06/21/2010 | 🔘51 (7 pgs) | Response to (45 Motion for Relief from Stay *or To Determine Non-Applicability of the Automatic Stay and Memorandum* [Negative Notice] [Fee Amount $150] filed by Creditor State Of Florida, Dept Of Business & Professional Regulation, Div Of Fla Land Sales, Condominums & Mobile Homes) Filed by Debtor Stephanie Harris (Berlowitz, Jeffrey) (Entered: 06/21/2010) |
| 06/28/2010 | 🔘52 (3 pgs) | Certificate of Contested Matter Filed by Creditor Deutsche Bank Trust Company Americas (Re: 44 Motion for Relief from Stay *1525 Lenox Ave., Unit 2* [Negative Notice] [Fee Amount $150] filed by Creditor Deutsche Bank Trust Company Americas). (Shaldjian, Rubina) (Entered: 06/28/2010) |
| 06/30/2010 | 🔘53 (1 pg) | Notice of Hearing (Re: 44 Motion for Relief from Stay *1525 Lenox Ave., Unit 2* Filed by Creditor Deutsche Bank Trust Company Americas.) Hearing |

| | | |
|---|---|---|
| | | scheduled for 07/27/2010 at 10:30 AM at 51 SW First Ave Room 1410, Miami. (Gutierrez, Susan) (Entered: 06/30/2010) |
| 07/06/2010 | 54 (2 pgs) | Certificate of Service *and Certificate of Compliance with Local Rule 9073-1(D)* by Attorney Rubina K Shaldjian (Re: 53 Notice of Hearing). (Shaldjian, Rubina) (Entered: 07/06/2010) |
| 07/06/2010 | 55 (4 pgs) | *Fourth* Agreed *Ex Parte* Motion to Extend Time to File Objections to Debtor's Claimed Exemptions, in addition to Fourth Agreed *Ex Parte* Motion to Extend Time to File Section 727 Complaint Objecting to Discharge of Debtor(s) Filed by Trustee Soneet Kapila. (^Brown1, Scott) (Entered: 07/06/2010) |
| 07/08/2010 | 56 (3 pgs) | Agreed Motion to Continue Hearing On: [(44 Motion for Relief From Stay)] *for 30 Days* Filed by Creditor Deutsche Bank Trust Company Americas. (Shaldjian, Rubina) (Entered: 07/08/2010) |
| 07/08/2010 | 57 (2 pgs) | Order Granting Motion to Extend Time (Re: # 55), Granting Motion to Extend Time to File Section 727 Complaint Objecting to Discharge of Debtor(s) (Re: #55) Deadline Extended to **8/31/2010** (Valencia, Yamileth) (Entered: 07/09/2010) |
| 07/12/2010 | 58 (3 pgs) | Agreed Order Granting Motion To Continue Hearing On: (44 Motion for Relief from Stay *1525 Lenox Ave., Unit 2* [Negative Notice] [Fee Amount $150]). Hearing scheduled for 08/31/2010 at 10:30 AM at 51 SW First Ave Room 1410, Miami. (Valencia, Yamileth) (Entered: 07/13/2010) |
| 07/14/2010 | 59 (1 pg) | Certificate of Service by Attorney Scott N Brown Esq (Re: 57 Order on Motion to Extend Time, Order on Motion to Extend Time to File Section 727 Complaint). (^Brown1, Scott) (Entered: 07/14/2010) |
| 07/14/2010 | 60 (2 pgs) | Second Notice of Taking Rule 2004 Examination of Stephanie Harris on August 10, 2010 at 10:30 a.m. Filed by Trustee Soneet Kapila. (^Brown1, Scott) (Entered: 07/14/2010) |
| 07/16/2010 | | |

| | | |
|---|---|---|
| | 61<br>(4 pgs; 2 docs) | Certificate of Contested Matter Filed by Attorney Florida Department of Business and Professional Regulation, Division of Florida Condominiums, Timeshares and Mobile Homes (Re: 45 Motion for Relief from Stay *or To Determine Non-Applicability of the Automatic Stay and Memorandum* [Negative Notice] [Fee Amount $150] filed by Creditor State Of Florida, Dept Of Business & Professional Regulation, Div Of Fla Land Sales, Condominums & Mobile Homes). (Attachments: 1 Certificate of Service of Motion and Memorandum) (Brittle, Cheryl) (Entered: 07/16/2010) |
| 07/16/2010 | 62<br>(50 pgs; 5 docs) | Amended Motion (44 Motion for Relief from Stay *1525 Lenox Ave., Unit 2* [Negative Notice] [Fee Amount $150]) Filed by Creditor Deutsche Bank Trust Company Americas. (Attachments: 1 Exhibit A2 Exhibit B3 Exhibit C4 Proposed Order) (Shaldjian, Rubina) (Entered: 07/16/2010) |
| 07/16/2010 | 63<br>(3 pgs) | Ex Parte Motion *to File Documents Under Seal* Filed by Creditor Deutsche Bank Trust Company Americas. (Shaldjian, Rubina) (Entered: 07/16/2010) |
| 07/21/2010 | 64<br>(1 pg) | Notice of Hearing (Re: 45 Motion for Relief from Stay *or To Determine Non-Applicability of the Automatic Stay and Memorandum* [Negative Notice] [Fee Amount $150] Filed by Creditor State Of Florida, Dept Of Business & Professional Regulation, Div Of Fla Land Sales, Condominums & Mobile Homes.) Hearing scheduled for 08/04/2010 at 10:30 AM at 51 SW First Ave Room 1410, Miami. (Cargill, Barbara) (Entered: 07/21/2010) |
| 07/21/2010 | 65<br>(2 pgs) | Order Granting Motion Re: # 63 (Valencia, Yamileth) (Entered: 07/21/2010) |
| 07/23/2010 | 66 | Document Under Seal. (Assigned ID Number: 10-M-12) (Shuler, Pamela) (Entered: 07/23/2010) |
| 07/27/2010 | 67<br>(3 pgs) | Motion to Continue Hearing On: [(45 Motion for Relief From Stay)] Filed by Debtor Stephanie Harris. (Berlowitz, Jeffrey) (Entered: 07/27/2010) |
| 07/27/2010 | | |

| | | |
|---|---|---|
| | 68<br>(2 pgs) | Certificate of Service *and Certificate of Compliance with Local Rule 9073-1(d)* Filed by Attorney Florida Department of Business and Professional Regulation, Division of Florida Condominiums, Timeshares and Mobile Homes (Re: 64 Notice of Hearing). (Brittle, Cheryl) (Entered: 07/27/2010) |
| 07/29/2010 | 69<br>(3 pgs) | Opposition Response to (62 Amended Motion (44 Motion for Relief from Stay *1525 Lenox Ave., Unit 2* [Negative Notice] [Fee Amount $150]) filed by Creditor Deutsche Bank Trust Company Americas) Filed by Debtor Stephanie Harris (Berlowitz, Jeffrey) (Entered: 07/29/2010) |
| 07/29/2010 | 70<br>(2 pgs) | Agreed Order Granting Agreed Motion To Continue Hearing On: (45 Motion for Relief from Stay *or To Determine Non-Applicability of the Automatic Stay and Memorandum* [Negative Notice] [Fee Amount $150]). Hearing scheduled for 09/22/2010 at 10:30 AM at 51 SW First Ave Room 1410, Miami. (Tooks, Ida) (Entered: 07/30/2010) |
| 08/02/2010 | 71<br>(1 pg) | Certificate of Service by Attorney Jeffrey S. Berlowitz (Re: 70 Order on Motion to Continue Hearing). (Berlowitz, Jeffrey) (Entered: 08/02/2010) |
| 08/02/2010 | 72<br>(3 pgs) | Request for Notice Filed by Creditor Elavon fka Nova Information Systems . (Valencia, Yamileth) (Entered: 08/03/2010) |
| 08/05/2010 | 73<br>(1 pg) | Notice of Filing *Notice of Postponement of Rule 2004 Examination of Stephanie Harris*, Filed by Trustee Soneet Kapila (Re: 60 Notice of Examination). (^Brown1, Scott) (Entered: 08/05/2010) |
| 08/25/2010 | 74<br>(2 pgs) | Certificate of Service *and Certificate of Compliance with Local Rule 9073-1(D)* by Attorney Rubina K Shaldjian (Re: 58 Order on Motion to Continue Hearing). (Shaldjian, Rubina) (Entered: 08/25/2010) |
| 08/31/2010 | 75<br>(6 pgs; 2 docs) | Notice of Filing *of Affidavit of Amounts Due and Owing*, Filed by Creditor Deutsche Bank Trust Company Americas. (Attachments: 1 Affidavit) (Stewart, Gavin) (Entered: 08/31/2010) |

| | | |
|---|---|---|
| 08/31/2010 | ● 76 (4 pgs) | Fifth Motion to Extend Time to File Section 727 Complaint Objecting to Discharge of Debtor(s) , in addition to Motion to Extend Time to File Objections to Debtor's Claimed Exemptions Filed by Trustee Soneet Kapila. (Brown, Scott) (Entered: 08/31/2010) |
| 09/01/2010 | ● 77 (1 pg) | Notice of Hearing (Re: 76 Fifth Motion to Extend Time to File Section 727 Complaint Objecting to Discharge of Debtor) Hearing scheduled for 09/15/2010 at 11:00 AM at 51 SW First Ave Room 1410, Miami. (Cargill, Barbara) (Entered: 09/01/2010) |
| 09/02/2010 | ● 78 (1 pg) | Certificate of Service by Attorney Scott N Brown Esq (Re: 77 Notice of Hearing). (^Brown1, Scott) (Entered: 09/02/2010) |
| 09/08/2010 | ● 79 (206 pgs; 3 docs) | Objection to Claim of Lincoln Mews Condominium Association Inc Filed by Debtor Stephanie Harris . (Attachments: 1 2 of 32 3 of 3) (Valencia, Yamileth) (Entered: 09/09/2010) |
| 09/14/2010 | ● 80 (2 pgs) | Agreed Order Granting Motion to Extend Time to File Section 727 Complaint Objecting to Discharge of Debtor(s) (Re: #76) Deadline Extended to **9/30/2010**, Granting Motion to Extend Time (Re: # 76) (Valencia, Yamileth) (Entered: 09/14/2010) |
| 09/15/2010 | ● 81 (1 pg) | Certificate of Service by Attorney Scott N Brown Esq (Re: 80 Order on Motion to Extend Time to File Section 727 Complaint, Order on Motion to Extend Time). (^Brown1, Scott) (Entered: 09/15/2010) |
| 09/15/2010 | ● 82 (276 pgs; 4 docs) | Objection (Debtor's Motion to Dismiss DBPR's Motion To Lift Stay) to (45 Motion for Relief from Stay *or To Determine Non-Applicability of the Automatic Stay and Memorandum* [Negative Notice] [Fee Amount $150] filed by Creditor State Of Florida, Dept Of Business & Professional Regulation, Div Of Fla Land Sales, Condominums & Mobile Homes) Filed by Debtor Stephanie Harris (Attachments: 1 Appendix 2 of 42 3 of 43 4 of 4) (Valencia, Yamileth) (Entered: 09/16/2010) |
| 09/20/2010 | ● | |

| | | |
|---|---|---|
| | 83<br>(1 pg) | Notice of Hearing (Re: 79 Objection to Claim of Lincoln Mews Condominium Association Inc Filed by Debtor Stephanie Harris .) Hearing scheduled for 10/26/2010 at 02:30 PM at 51 SW First Ave Room 1410, Miami. (Cargill, Barbara) (Entered: 09/20/2010) |
| 09/21/2010 | 84<br>(1 pg) | Notice to Withdraw Document Filed by Debtor Stephanie Harris (Re: 82 Objection). (Berlowitz, Jeffrey) (Entered: 09/21/2010) |
| 09/21/2010 | 85<br>(3 pgs) | Agreed *Ex Parte* Motion to Continue Hearing On: [(45 Motion for Relief From Stay)] Filed by Attorney Florida Department of Business and Professional Regulation, Division of Florida Condominiums, Timeshares and Mobile Homes. (Brittle, Cheryl) (Entered: 09/21/2010) |
| 09/21/2010 | 86<br>(2 pgs) | Agreed Order Granting Agreed Motion To Continue Hearing On: (45 Motion for Relief from Stay *or To Determine Non-Applicability of the Automatic Stay and Memorandum* [Negative Notice] [Fee Amount $150]). Hearing scheduled for 10/26/2010 at 02:30 PM at 51 SW First Ave Room 1410, Miami. (Valencia, Yamileth) (Entered: 09/22/2010) |
| 09/23/2010 | 87<br>(2 pgs) | Certificate of Service *for Agreed Order Of Continuance On Motion for Relief From Stay* Filed by Attorney Florida Department of Business and Professional Regulation, Division of Florida Condominiums, Timeshares and Mobile Homes (Re: 86 Order on Motion to Continue Hearing). (Brittle, Cheryl) (Entered: 09/23/2010) |
| 09/30/2010 | 88<br>(4 pgs) | Sixth Motion to Extend Time to File Objections to Debtor's Claimed Exemptions, in addition to Motion to Extend Time to File Section 727 Complaint Objecting to Discharge of Debtor(s) Filed by Trustee Soneet Kapila. (^Brown1, Scott) (Entered: 09/30/2010) |
| 10/06/2010 | 89<br>(2 pgs) | Notice to Withdraw Document *of Amended Motion for Relief from Stay Filed July 16, 2010* Filed by Creditor Deutsche Bank Trust Company Americas (Re: 62 Amended Motion). (Shaldjian, Rubina) (Entered: 10/06/2010) |

| | | |
|---|---|---|
| 10/14/2010 | 90 (5 pgs) | Motion to Withdraw as Attorney of Record Filed by Debtor Stephanie Harris. (Berlowitz, Jeffrey) (Entered: 10/14/2010) |
| 10/15/2010 | 91 (1 pg) | Notice of Hearing (Re: 90 Motion to Withdraw as Attorney of Record Filed by Debtor Stephanie Harris.) Hearing scheduled for 10/25/2010 at 02:30 PM at 51 SW First Ave Room 1410, Miami. (Cargill, Barbara) (Entered: 10/15/2010) |
| 10/15/2010 | 92 (1 pg) | Certificate of Service by Attorney Jeffrey S. Berlowitz (Re: 91 Notice of Hearing). (Berlowitz, Jeffrey) (Entered: 10/15/2010) |
| 10/22/2010 | 93 (1 pg) | Re Notice of Hearing (Re: 90 Motion to Withdraw as Attorney of Record Filed by Debtor Stephanie Harris.) Hearing scheduled for 10/26/2010 at 02:30 PM at 51 SW First Ave Room 1410, Miami. (Cargill, Barbara) (Entered: 10/22/2010) |
| 10/23/2010 | 94 (5 pgs) | Motion to Dismiss Case Pursuant to 11 USC 707 (b) Filed by Trustee Soneet Kapila. (Brown, Scott) (Entered: 10/23/2010) |
| 10/25/2010 | 95 (1 pg) | Notice of Hearing (Re: 94 Motion to Dismiss Case Pursuant to 11 USC 707) Hearing scheduled for 11/23/2010 at 02:30 PM at 51 SW First Ave Room 1410, Miami. (Cargill, Barbara) (Entered: 10/25/2010) |
| 10/25/2010 | 96 (18 pgs) | Objection to (90 Motion to Withdraw as Attorney of Record filed by Debtor Stephanie Harris) Filed by Debtor Stephanie Harris (Covington, Katrinka) (Entered: 10/25/2010) |
| 10/26/2010 | 97 (2 pgs) | Order Continuing Hearing On (Re: 90 Motion to Withdraw as Attorney filed by Debtor Stephanie Harris). Hearing scheduled for 11/10/2010 at 11:00 AM at 51 SW First Ave Room 1410, Miami. (Valencia, Yamileth) (Entered: 10/26/2010) |
| 10/26/2010 | 98 (2 pgs) | Order Continuing Hearing On (Re: 45 Motion for Relief From Stay filed by Creditor State Of Florida, Dept Of Business & Professional Regulation, Div Of Fla Land Sales, Condominums & Mobile Homes, 79 Objection to Claim filed by Debtor Stephanie Harris). Hearing scheduled for 11/23/2010 at 02:30 PM at 51 SW First Ave Room 1410, Miami. (Valencia, Yamileth) (Entered: 10/26/2010) |

| | | |
|---|---|---|
| 10/26/2010 | 🔘99 (5 pgs) | Emergency Motion to Dismiss Case Filed by Debtor Stephanie Harris . (Valencia, Yamileth) (Entered: 10/26/2010) |
| 10/26/2010 | 🔘100 (1 pg) | Certificate of Service by Attorney Scott N Brown Esq (Re: 95 Notice of Hearing). (^Brown1, Scott) (Entered: 10/26/2010) |
| 10/28/2010 | 🔘101 (1 pg) | Notice of Hearing (Re: 99 Emergency Motion to Dismiss Case Filed by Debtor Stephanie Harris .) Hearing scheduled for 11/02/2010 at 11:00 AM at 51 SW First Ave Room 1410, Miami. (Cargill, Barbara) (Entered: 10/28/2010) |
| 10/28/2010 | 🔘102 (1 pg) | Certificate of Service by Attorney Jeffrey S. Berlowitz (Re: 97 Order Continuing Hearing). (Berlowitz, Jeffrey) (Entered: 10/28/2010) |
| 10/28/2010 | 🔘103 (1 pg) | Certificate of Service by Attorney Jeffrey S. Berlowitz (Re: 98 Order Continuing Hearing). (Berlowitz, Jeffrey) (Entered: 10/28/2010) |
| 10/29/2010 | 🔘105 (1 pg) | Notice to Withdraw Document Filed by Debtor Stephanie Harris (Re: 99 Motion to Dismiss Case). (Antillon, Jackie) (Entered: 11/01/2010) |
| 10/29/2010 | 🔘106 (1 pg) | Request for Production of Documents Filed by Debtor Stephanie Harris . (Antillon, Jackie) (Entered: 11/01/2010) |
| 10/29/2010 | 🔘107 (3 pgs) | Request for Admissions Filed by Debtor Stephanie Harris . (Antillon, Jackie) (Entered: 11/01/2010) |
| 10/30/2010 | 🔘104 (3 pgs) | BNC Certificate of Mailing - Hearing (Re: 101 Notice of Hearing) Service Date 10/30/2010. (Admin.) (Entered: 10/31/2010) |
| 11/10/2010 | 🔘108 (1 pg) | Notice of Requirement for Debtor(s) to File a Certificate of Completion of Course in Personal Financial Management (Valencia, Yamileth) (Entered: 11/10/2010) |
| 11/10/2010 | 🔘109 (1 pg) | Re Notice of Hearing (Re: 90 Motion to Withdraw as Attorney of Record Filed by Debtor Stephanie Harris.) Hearing scheduled for 11/15/2010 at 11:30 AM at 51 SW First Ave Room 1409, Miami. (Gutierrez, Susan) (Entered: 11/10/2010) |
| 11/10/2010 | 🔘110 (3 pgs) | Motion to Strike 106 Request for Production of Documents, 107 Request for Admissions Filed by Attorney Florida |

CM/ECF LIVE - U.S. Bankruptcy Court:flsb      Page 16 of 28
12-12020-mg   Doc 7666-2   Filed 10/20/14   Entered 10/20/14 17:47:19   Exhibit 2
Pg 146 of 379

| | | |
|---|---|---|
| | | Department of Business and Professional Regulation, Division of Florida Condominiums, Timeshares and Mobile Homes. (Brittle, Cheryl) (Entered: 11/10/2010) |
| 11/11/2010 | 111 (1 pg) | Certificate of Service by Attorney Jeffrey S. Berlowitz (Re: 109 Notice of Hearing Amended/Renoticed/Continued). (Berlowitz, Jeffrey) (Entered: 11/11/2010) |
| 11/12/2010 | 112 (2 pgs) | BNC Certificate of Mailing - Hearing (Re: 109 Re Notice of Hearing) Service Date 11/12/2010. (Admin.) (Entered: 11/13/2010) |
| 11/12/2010 | 113 (2 pgs) | BNC Certificate of Mailing (Re: 108 Notice of Requirement for Debtor) Service Date 11/12/2010. (Admin.) (Entered: 11/13/2010) |
| 11/15/2010 | 114 (2 pgs) | Objection to (90 Motion to Withdraw as Attorney of Record filed by Debtor Stephanie Harris) Filed by Debtor Stephanie Harris (Lea, Misty) (Entered: 11/16/2010) |
| 11/15/2010 | 115 (2 pgs) | Objection to (110 Motion to Strike 106 Request for Production of Documents, 107 Request for Admissions filed by Attorney Florida Department of Business and Professional Regulation, Division of Florida Condominiums, Timeshares and Mobile Homes) Filed by Debtor Stephanie Harris (Lea, Misty) (Entered: 11/16/2010) |
| 11/17/2010 | 116 (1 pg) | Re Notice of Hearing (Re: 94 Motion to Dismiss Case Pursuant to 11 USC 707) Hearing scheduled for 12/16/2010 at 02:00 PM at 51 SW First Ave Room 1410, Miami. (Gutierrez, Susan) (Entered: 11/17/2010) |
| 11/17/2010 | 117 (1 pg) | Re Notice of Hearing (Re: 45 Motion for Relief from Stay *or To Determine Non-Applicability of the Automatic Stay and Memorandum* [Negative Notice] [Fee Amount $150] Filed by Creditor State Of Florida, Dept Of Business & Professional Regulation, Div Of Fla Land Sales, Condominums & Mobile Homes.) Hearing scheduled for 12/16/2010 at 02:00 PM at 51 SW First Ave Room 1410, Miami. (Gutierrez, Susan) (Entered: 11/17/2010) |
| 11/17/2010 | 118 (1 pg) | Re Notice of Hearing (Re: 79 Objection to Claim of Lincoln Mews Condominium Association Inc Filed by Debtor Stephanie Harris .) Hearing scheduled for 12/16/2010 at 02:00 PM at 51 SW First Ave Room 1410, Miami. (Gutierrez, Susan) (Entered: 11/17/2010) |
| 11/17/2010 | | |

CM/ECF LIVE - U.S. Bankruptcy Court:flsb     Page 17 of 28
12-12020-mg  Doc 7666-2  Filed 10/20/14  Entered 10/20/14 17:47:19  Exhibit 2
Pg 147 of 379

| | | |
|---|---|---|
| | 119<br>(1 pg) | Notice of Hearing (Re: 110 Motion to Strike 106 Request for Production of Documents, 107 Request for Admissions Filed by Attorney Florida Department of Business and Professional Regulation, Division of Florida Condominiums, Timeshares and Mobile Homes.) Hearing scheduled for 12/16/2010 at 02:00 PM at 51 SW First Ave Room 1410, Miami. (Gutierrez, Susan) (Entered: 11/17/2010) |
| 11/18/2010 | 120<br>(1 pg) | Certificate of Service by Attorney Jeffrey S. Berlowitz (Re: 118 Notice of Hearing Amended/Renoticed/Continued). (Berlowitz, Jeffrey) (Entered: 11/18/2010) |
| 11/19/2010 | 121<br>(1 pg) | Certificate of Service by Attorney Scott N Brown Esq (Re: 116 Notice of Hearing Amended/Renoticed/Continued). (^Brown1, Scott) (Entered: 11/19/2010) |
| 11/19/2010 | 122<br>(2 pgs) | Certificate of Service by Attorney Cheryl Marie Brittle (Re: 117 Notice of Hearing Amended/Renoticed/Continued, 119 Notice of Hearing). (Brittle, Cheryl) (Entered: 11/19/2010) |
| 11/19/2010 | 123<br>(5 pgs) | Emergency Motion to Shorten Time to Object to the Order Granting Trustee's Amended Motion Filed by Creditor Cyclone Enterprises, Inc.. (Berlowitz, Jeffrey) (Entered: 11/19/2010) |
| 11/19/2010 | 124<br>(2 pgs) | BNC Certificate of Mailing - Hearing (Re: 118 Re Notice of Hearing) Service Date 11/19/2010. (Admin.) (Entered: 11/20/2010) |
| 11/23/2010 | 125<br>(1 pg) | Notice to Withdraw Document *of Cyclone Enterprises, Inc.'s Emergency Motion* Filed by Debtor Stephanie Harris (Re: 123 Motion to Shorten Time). (Berlowitz, Jeffrey) (Entered: 11/23/2010) |
| 11/29/2010 | 126<br>(1 pg) | Motion to Address Hearing in Specific Sequence Filed by Debtor Stephanie Harris . (Pittman, Linda) (Entered: 12/02/2010) |
| 11/30/2010 | 130<br>(23 pgs) | Objection to Claim of Lincoln Mews Condominium Association Inc filed by Debtor Stephanie Harris. (Benitez, Judy) (Entered: 12/07/2010) |
| 12/02/2010 | 127<br>(2 pgs) | Order Granting Motion To Withdraw As Attorney (Re: # 90) (Covington, Katrinka) (Entered: 12/02/2010) |
| 12/04/2010 | 128<br>(3 pgs) | BNC Certificate of Mailing - PDF Document (Re: 127 Order Granting Motion To Withdraw As Attorney) Service Date 12/04/2010. (Admin.) (Entered: 12/05/2010) |

| | | |
|---|---|---|
| 12/06/2010 | 🔵129<br>(4 pgs) | Certificate of Service by Attorney Jeffrey S. Berlowitz (Re: 127 Order on Motion to Withdraw as Attorney). (Berlowitz, Jeffrey) (Entered: 12/06/2010) |
| 12/06/2010 | 🔵135<br>(26 pgs) | Objection to (62 Amended Motion (44 Motion for Relief from Stay *1525 Lenox Ave., Unit 2* [Negative Notice] [Fee Amount $150]) filed by Creditor Deutsche Bank Trust Company Americas) Filed by Debtor Stephanie Harris (Oriol-Bennett, Alexandra) (Entered: 12/09/2010) |
| 12/07/2010 | 🔵131<br>(3 pgs) | Order Specially Setting Evidentiary Hearing (Re: 130 Objection filed by Debtor Stephanie Harris). Evidentiary Hearing scheduled for 01/19/2011 at 02:00 PM at 51 SW First Ave Room 1410, Miami. (Benitez, Judy) (Entered: 12/07/2010) |
| 12/08/2010 | 🔵132<br>(11 pgs) | Reply to (51 Response filed by Debtor Stephanie Harris) Filed by Attorney Florida Department of Business and Professional Regulation, Division of Florida Condominiums, Timeshares and Mobile Homes (Brittle, Cheryl) (Entered: 12/08/2010) |
| 12/08/2010 | 🔵133<br>(2 pgs) | Objection to (126 Motion filed by Debtor Stephanie Harris) *for Order of Hearings* Filed by Attorney Florida Department of Business and Professional Regulation, Division of Florida Condominiums, Timeshares and Mobile Homes (Brittle, Cheryl) (Entered: 12/08/2010) |
| 12/08/2010 | 🔵134<br>(3 pgs) | Response to (96 Objection filed by Debtor Stephanie Harris) *Titled "Motion in opposition of attorney withdrawing Motion in opposition to returning to County Court"* Filed by Attorney Florida Department of Business and Professional Regulation, Division of Florida Condominiums, Timeshares and Mobile Homes (Brittle, Cheryl) (Entered: 12/08/2010) |
| 12/09/2010 | 🔵136<br>(4 pgs) | BNC Certificate of Mailing - PDF Document (Re: 131 Order Specially Setting Evidentiary Hearing) Service Date 12/09/2010. (Admin.) (Entered: 12/10/2010) |
| 12/10/2010 | 🔵137<br>(25 pgs) | Transcript of 11/15/2010 Hearing (Re: 90 Motion to Withdraw as Attorney of Record Filed by Debtor Stephanie Harris.). Redaction Request Due By 12/17/2010. Statement of Personal Data Identifier Redaction Request Due by 01/3/2011. Redacted Transcript Due by 01/10/2011. Transcript access will be restricted through 03/10/2011. (Ouellette and Mauldin) **Modified on 3/18/2011 To |

|  |  |  |
|---|---|---|
|  |  | Unrestrict Image to External Users** (Antillon, Jackie). (Entered: 12/10/2010) |
| 12/10/2010 | 🔵138<br>(1 pg) | Notice Regarding Filing of Transcript and Deadline for Filing Notice of Intent or Motions to Request Redaction of Transcript. (Re: 137 Transcript of 11/15/2010 Hearing *[Document Image Available ONLY to Court Users]*) Redaction Request Due By 12/17/2010. Statement of Personal Data Identifier Redaction Request Due by 1/3/2011. Redacted Transcript Due by 1/10/2011. Transcript access will be restricted through 3/10/2011. (Antillon, Jackie) (Entered: 12/10/2010) |
| 12/10/2010 | 🔵140<br>(2 pgs) | Motion to Continue Hearing On: [(45 Motion for Relief From Stay, 94 Motion to Dismiss Case, 130 Objection)] Filed by Debtor Stephanie Harris. (Benitez, Judy) (Entered: 12/13/2010) |
| 12/10/2010 | 🔵142<br>(17 pgs) | Response In Opposition to (45 Motion for Relief from Stay *or To Determine Non-Applicability of the Automatic Stay and Memorandum* [Negative Notice] [Fee Amount $150] filed by Creditor State Of Florida, Dept Of Business & Professional Regulation, Div Of Fla Land Sales, Condominums & Mobile Homes) Filed by Debtor Stephanie Harris. (Covington, Katrinka) (Entered: 12/14/2010) |
| 12/12/2010 | 🔵139<br>(2 pgs) | BNC Certificate of Mailing (Re: 138 Notice Regarding Filing of Transcript and Deadline for Filing Notice of Intent or Motions to Request Redaction of Transcript.) Service Date 12/12/2010. (Admin.) (Entered: 12/13/2010) |
| 12/14/2010 | 🔵141<br>(3 pgs) | Objection to (140 Motion to Continue Hearing On: [(45 Motion for Relief From Stay, 94 Motion to Dismiss Case, 130 Objection)] filed by Debtor Stephanie Harris) Filed by Attorney Florida Department of Business and Professional Regulation, Division of Florida Condominiums, Timeshares and Mobile Homes (Brittle, Cheryl) (Entered: 12/14/2010) |
| 12/14/2010 | 🔵143<br>(3 pgs) | Objection to (135 Objection filed by Debtor Stephanie Harris)*Titled: "motion to oppose jurisdiction of DBPR to ask for relief of stay as non creditor, or jurisdiction"* Filed by Attorney Florida Department of Business and Professional Regulation, Division of Florida Condominiums, Timeshares and Mobile Homes (Brittle, Cheryl) (Entered: 12/14/2010) |
| 12/14/2010 | 🔵144<br>(1 pg) | Notice of Hearing (Re: 140 Motion to Continue Hearing On: [] Hearing scheduled for 12/16/2010 at 02:00 PM at 51 SW |

| | | |
|---|---|---|
| | | First Ave Room 1410, Miami. (Cargill, Barbara) (Entered: 12/14/2010) |
| 12/14/2010 | 🔵145 (3 pgs) | Objection to (135 Objection filed by Debtor Stephanie Harris)*Titled: "motion to oppose jurisdiction of DBPR to ask for relief of stay as non creditor, or jurisdiction" Refiling with Correct Document* Filed by Attorney Florida Department of Business and Professional Regulation, Division of Florida Condominiums, Timeshares and Mobile Homes (Brittle, Cheryl) (Entered: 12/14/2010) |
| 12/15/2010 | 🔵146 (4 pgs) | Supporting Motion to Dismiss Case Filed by Attorney Florida Department of Business and Professional Regulation, Division of Florida Condominiums, Timeshares and Mobile Homes. (Brittle, Cheryl) (Entered: 12/15/2010) |
| 12/15/2010 | 🔵147 (3 pgs) | Reply to (142 Response filed by Debtor Stephanie Harris) *(pro se Supplemental Response)* Filed by Attorney Florida Department of Business and Professional Regulation, Division of Florida Condominiums, Timeshares and Mobile Homes (Brittle, Cheryl) (Entered: 12/15/2010) |
| 12/16/2010 | 🔵148 (2 pgs) | BNC Certificate of Mailing - Hearing (Re: 144 Notice of Hearing) Service Date 12/16/2010. (Admin.) (Entered: 12/17/2010) |
| 12/16/2010 | 🔵149 (12 pgs) | Motion to Compel Explanation of Department of Professional Regulation Transition from Creditor to Defendant. Filed by Debtor Stephanie Harris . (Oriol-Bennett, Alexandra) (Entered: 12/17/2010) |
| 12/20/2010 | 🔵150 (1 pg) | Notice of Hearing (Re: 149 Motion to Compel Explanation of Department of Professional Regulation Transition from Creditor to Defendant Filed by Debtor Stephanie Harris) Hearing scheduled for 01/19/2011 at 02:00 PM at 51 SW First Ave Room 1410, Miami. (Gutierrez, Susan) (Entered: 12/20/2010) |
| 12/20/2010 | 🔵151 (4 pgs) | Request for Production of Documents from Jorge Garcia Filed by Debtor Stephanie Harris . (Lea, Misty) (Entered: 12/21/2010) |
| 12/20/2010 | 🔵152 (2 pgs) | Order Granting Motion To Continue Hearing On: (45 Motion for Relief from Stay *or To Determine Non-Applicability of the Automatic Stay and Memorandum* [Negative Notice] [Fee Amount $150]). Hearing scheduled for 01/19/2011 at 02:00 PM at 51 SW First Ave Room 1410, Miami. (Rodriguez, Olga) (Entered: 12/21/2010) |

| | | |
|---|---|---|
| 12/20/2010 | 🔵153<br>(2 pgs) | Order Continuing Hearing On (Re: 94 Motion to Dismiss Case filed by Trustee Soneet Kapila). Hearing scheduled for 01/19/2011 at 02:00 PM at 51 SW First Ave Room 1410, Miami. (Rodriguez, Olga) (Entered: 12/21/2010) |
| 12/20/2010 | 🔵154<br>(55 pgs) | Motion To Strike Claim of Lien of Lincoln Mews Condominium Association Filed by Debtor Stephanie Harris . (Lea, Misty) (Entered: 12/21/2010) |
| 12/20/2010 | 🔵155<br>(2 pgs) | Order Continuing Hearing On (Re: 130 Objection filed by Debtor Stephanie Harris). Hearing scheduled for 01/19/2011 at 02:00 PM at 51 SW First Ave Room 1410, Miami. (Rodriguez, Olga) (Entered: 12/21/2010) |
| 12/22/2010 | 🔵156<br>(2 pgs) | BNC Certificate of Mailing - Hearing (Re: 150 Notice of Hearing) Service Date 12/22/2010. (Admin.) (Entered: 12/23/2010) |
| 12/22/2010 | 🔵157<br>(3 pgs) | Order Granting Motion For Relief From Stay Re: # 45 (Tooks, Ida) (Entered: 12/23/2010) |
| 12/23/2010 | 🔵158<br>(3 pgs) | BNC Certificate of Mailing - PDF Document (Re: 152 Order Granting Motion To Continue Hearing On:) Service Date 12/23/2010. (Admin.) (Entered: 12/24/2010) |
| 12/23/2010 | 🔵159<br>(3 pgs) | BNC Certificate of Mailing - PDF Document (Re: 153 Order Continuing Hearing On) Service Date 12/23/2010. (Admin.) (Entered: 12/24/2010) |
| 12/23/2010 | 🔵160<br>(3 pgs) | BNC Certificate of Mailing - PDF Document (Re: 155 Order Continuing Hearing On) Service Date 12/23/2010. (Admin.) (Entered: 12/24/2010) |
| 12/27/2010 | 🔵161<br>(1 pg) | Notice of Hearing (Re: 154 Motion To Strike Claim of Lien of Lincoln Mews Condominium Association Filed by Debtor Stephanie Harris .) Hearing scheduled for 01/19/2011 at 02:00 PM at 51 SW First Ave Room 1410, Miami. (Cargill, Barbara) (Entered: 12/27/2010) |
| 12/27/2010 | 🔵162<br>(2 pgs) | Certificate of Service Filed by Attorney Florida Department of Business and Professional Regulation, Division of Florida Condominiums, Timeshares and Mobile Homes (Re: 157 Order on Motion For Relief From Stay). (Brittle, Cheryl) (Entered: 12/27/2010) |
| 12/28/2010 | 🔵163<br>(2 pgs) | Order Continuing Hearing On (Re: 94 Motion to Dismiss Case filed by Trustee Soneet Kapila, 146 Motion to Dismiss |

| | | |
|---|---|---|
| | | Case filed by Attorney Florida Department of Business and Professional Regulation, Division of Florida Condominiums, Timeshares and Mobile Homes). Hearing scheduled for 01/19/2011 at 02:00 PM at 51 SW First Ave Room 1410, Miami. (Antillon, Jackie) (Entered: 12/29/2010) |
| 12/29/2010 | 164 (4 pgs) | Supplement Filed by Debtor Stephanie Harris (Re: 151 Request for Production of Documents filed by Debtor Stephanie Harris, 154 Motion filed by Debtor Stephanie Harris). (Lea, Misty) (Entered: 12/29/2010) |
| 12/29/2010 | 165 (2 pgs) | BNC Certificate of Mailing - Hearing (Re: 161 Notice of Hearing) Service Date 12/29/2010. (Admin.) (Entered: 12/30/2010) |
| 12/30/2010 | 166 (1 pg) | Certificate of Service by Attorney Scott N Brown Esq (Re: 163 Order Continuing Hearing). (^Brown1, Scott) (Entered: 12/30/2010) |
| 01/05/2011 | 167 (10 pgs) | Request for Admissions Filed by Debtor Stephanie Harris . (Lea, Misty) (Entered: 01/06/2011) |
| 01/11/2011 | 168 (5 pgs) | Response to (149 Motion to Compel filed by Debtor Stephanie Harris) Filed by Attorney Florida Department of Business and Professional Regulation, Division of Florida Condominiums, Timeshares and Mobile Homes (Brittle, Cheryl) (Entered: 01/11/2011) |
| 01/11/2011 | 169 (5 pgs) | Motion to Strike 149 Motion to Compel Filed by Attorney Florida Department of Business and Professional Regulation, Division of Florida Condominiums, Timeshares and Mobile Homes . [part 2 of DE#168] (Covington, Katrinka) (Entered: 01/11/2011) |
| 01/11/2011 | 170 | Notice to Filer of Apparent Filing Deficiency: **Incomplete Entry. The Document Requests Multiple Relief. It should be Docketed As a Two-Part Entry. THE COURT HAS CORRECTED THIS ENTRY - NO FURTHER ACTION IS REQUIRED. In the Future, Also Use: Motion to Strike**; (Re: 168 Response to). (Covington, Katrinka) (Entered: 01/11/2011) |
| 01/12/2011 | 171 (1 pg) | Notice of Hearing (Re: 169 Motion to Strike 149 Motion to Compel Filed by Attorney Florida Department of Business and Professional Regulation, Division of Florida Condominiums, Timeshares and Mobile Homes . [part 2 of DE#168]) Hearing scheduled for 01/19/2011 at 02:00 PM at |

CM/ECF LIVE - U.S. Bankruptcy Court:flsb        Page 23 of 28
12-12020-mg   Doc 7666-2   Filed 10/20/14   Entered 10/20/14 17:47:19   Exhibit 2
Pg 153 of 379

| | | |
|---|---|---|
| | | 51 SW First Ave Room 1410, Miami. (Cargill, Barbara) (Entered: 01/12/2011) |
| 01/12/2011 | ⬤172 (25 pgs) | Response to (94 Motion to Dismiss Case Pursuant to 11 USC 707 (b) filed by Trustee Soneet Kapila) Filed by Debtor Stephanie Harris . (Reynolds, Marva) (Entered: 01/13/2011) |
| 01/12/2011 | ⬤173 (7 pgs) | Additional Response and Support of (154 Motion to Strike filed by Debtor Stephanie Harris) Filed by Debtor Stephanie Harris . (Reynolds, Marva) (Entered: 01/13/2011) |
| 01/13/2011 | ⬤174 (2 pgs) | Certificate of Service *for Notice of Hearing on DBPR Motion to Strike Debtor's Motion to Compel* Filed by Attorney Florida Department of Business and Professional Regulation, Division of Florida Condominiums, Timeshares and Mobile Homes (Re: 171 Notice of Hearing). (Brittle, Cheryl) (Entered: 01/13/2011) |
| 01/14/2011 | ⬤175 (2 pgs) | BNC Certificate of Mailing - Hearing (Re: 171 Notice of Hearing) Service Date 01/14/2011. (Admin.) (Entered: 01/15/2011) |
| 01/18/2011 | ⬤176 (36 pgs) | Objection to (169 Motion to Strike 149 Motion to Compel filed by Attorney Florida Department of Business and Professional Regulation, Division of Florida Condominiums, Timeshares and Mobile Homes) Filed by Debtor Stephanie Harris (Antillon, Jackie) (Entered: 01/18/2011) |
| 01/20/2011 | ⬤177 (1 pg) | Notice of Appearance and Request for Service by Joel M. Aresty Esq. Filed by Debtor Stephanie Harris. (Aresty, Joel) (Entered: 01/20/2011) |
| 01/31/2011 | ⬤178 (2 pgs) | Order Denying Trustee's Motion to Dismiss Case (Re: # 94). (Rios, Amber) (Entered: 02/01/2011) |
| 02/02/2011 | ⬤179 | Chapter 7 Trustee's Report of No Distribution: I, Soneet R ^Kapila1, having been appointed trustee of the estate of the above-named debtor(s), report that I have neither received any property nor paid any money on account of this estate; that I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law. Pursuant to Fed R Bank P 5009, I hereby certify that the estate of the above named debtor(s) has been fully administered. I request that I be discharged from any further duties as trustee. Key information about this case as reported |

CM/ECF LIVE - U.S. Bankruptcy Court:flsb      Page 24 of 28
12-12020-mg   Doc 7666-2   Filed 10/20/14   Entered 10/20/14 17:47:19   Exhibit 2
Pg 154 of 379

| | | |
|---|---|---|
| | | in schedules filed by the debtor(s) or otherwise found in the case record: This case was pending for 12 months. Assets Abandoned (without deducting any secured claims): $640377.00, Assets Exempt: Not Applicable, Claims Scheduled: $915550.00, Claims Asserted: Not Applicable, Claims scheduled to be discharged without payment (without deducting the value of collateral or debts excepted from discharge): $915550.00. Filed by Trustee Soneet Kapila. (^Kapila1, Soneet) (Entered: 02/02/2011) |
| 02/02/2011 | 🔘180 (1 pg) | Certificate of Service by Attorney Scott N Brown Esq (Re: 178 Order on Motion to Dismiss Case). (^Brown1, Scott) (Entered: 02/02/2011) |
| 02/07/2011 | 🔘181 (1 pg) | Certification of Completion of Instructional Course Concerning Personal Financial Management by Debtor ONLY Filed by Debtor Stephanie Harris. (Aresty, Joel) (Entered: 02/07/2011) |
| 02/11/2011 | 🔘182 (2 pgs) | Order Discharging Debtor . (Cohen, Diana) (Entered: 02/11/2011) |
| 02/13/2011 | 🔘183 (4 pgs) | BNC Certificate of Mailing - Order of Discharge (Re: 182 Order Discharging Debtor .) Service Date 02/13/2011. (Admin.) (Entered: 02/14/2011) |
| 03/18/2011 | 🔘184 (27 pgs) | Transcript of 12/16/2010 Hearing; (Re: 45 Motion for Relief from Stay *or To Determine Non-Applicability of the Automatic Stay and Memorandum* [Negative Notice] [Fee Amount $150] Filed by Creditor State Of Florida, Dept Of Business & Professional Regulation, Div Of Fla Land Sales, Condominums & Mobile Homes., 94 Motion to Dismiss Case Pursuant to 11 USC 707, 110 Motion to Strike 106 Request for Production of Documents, 107 Request for Admissions Filed by Attorney Florida Department of Business and Professional Regulation, Division of Florida Condominiums, Timeshares and Mobile Homes., 140 Motion to Continue Hearing On: []. Redaction Request Due By 03/25/2011. Statement of Personal Data Identifier Redaction Request Due by 04/8/2011. Redacted Transcript Due by 04/18/2011. Transcript access will be restricted through 06/16/2011. (Ouellette and Mauldin) **Modified on 6/17/2011 to Make Available to the Public** (Cohen, Diana). (Entered: 03/18/2011) |
| 03/18/2011 | 🔘185 | Pursuant to Local Rule 5005-1(2)(b) and Court Guidelines on Electronic Availability of Transcripts and Procedures for Transcript Redaction, Transcript is now electronically |

| | | |
|---|---|---|
| | | accessible (Re: 137 Transcript of 11/15/2010 Hearing .) (Antillon, Jackie) (Entered: 03/18/2011) |
| 03/23/2011 | 🔵186 (1 pg) | Notice Regarding Filing of Transcript and Deadline for Filing Notice of Intent or Motions to Request Redaction of Transcript. (Re: 184 Transcript of 12/16/2010 Hearing *[Document Image Available ONLY to Court Users]*) Redaction Request Due By 3/25/2011. Statement of Personal Data Identifier Redaction Request Due by 4/8/2011. Redacted Transcript Due by 4/18/2011. Transcript access will be restricted through 6/16/2011. (Valencia, Yamileth) (Entered: 03/23/2011) |
| 03/25/2011 | 🔵187 (2 pgs) | BNC Certificate of Mailing (Re: 186 Notice Regarding Filing of Transcript and Deadline for Filing Notice of Intent or Motions to Request Redaction of Transcript.) Service Date 03/25/2011. (Admin.) (Entered: 03/26/2011) |
| 04/12/2011 | 🔵188 (23 pgs) | Transcript of 1/19/2011 Hearing (Re: 94 Motion to Dismiss Case Pursuant to 11 USC 707, 130 Objection to Claim of Lincoln Mews Condominium Association Inc filed by Debtor Stephanie Harris., 146 Supporting Motion to Dismiss Case Filed by Attorney Florida Department of Business and Professional Regulation, Division of Florida Condominiums, Timeshares and Mobile Homes., 149 Motion to Compel Explanation of Department of Professional Regulation Transition from Creditor to Defendant. Filed by Debtor Stephanie Harris., 169 Motion to Strike 149 Motion to Compel Filed by Attorney Florida Department of Business and Professional Regulation, Division of Florida Condominiums, Timeshares and Mobile Homes. [part 2 of DE#168]). Redaction Request Due By 04/19/2011. Statement of Personal Data Identifier Redaction Request Due by 05/3/2011. Redacted Transcript Due by 05/13/2011. Transcript access will be restricted through 07/11/2011. (Ouellette and Mauldin) Modified on 7/13/2011 to Make Transcript Available to External Users. (Antillon, Jackie) (Entered: 04/12/2011) |
| 04/13/2011 | 🔵189 (1 pg) | Notice Regarding Filing of Transcript and Deadline for Filing Notice of Intent or Motions to Request Redaction of Transcript. (Re: 188 Transcript of 1/19/2011 Hearing *[Document Image Available ONLY to Court Users]*) Redaction Request Due By 4/19/2011. Statement of Personal Data Identifier Redaction Request Due by 5/3/2011. Redacted Transcript Due by 5/13/2011. Transcript access will be restricted through 7/11/2011. (Valencia, Yamileth) (Entered: 04/13/2011) |

CM/ECF LIVE - U.S. Bankruptcy Court:flsb       Page 26 of 28
12-12020-mg   Doc 7666-2   Filed 10/20/14   Entered 10/20/14 17:47:19   Exhibit 2
Pg 156 of 379

| | | |
|---|---|---|
| 04/15/2011 | 🔘190<br>(2 pgs) | BNC Certificate of Mailing (Re: 189 Notice Regarding Filing of Transcript and Deadline for Filing Notice of Intent or Motions to Request Redaction of Transcript.) Service Date 04/15/2011. (Admin.) (Entered: 04/16/2011) |
| 06/17/2011 | 🔘191 | Pursuant to Local Rule 5005-1(A)(2)(b) and Court Guidelines on Electronic Availability of Transcripts and Procedures for Transcript Redaction, Transcript is now electronically accessible (Re: 184 Transcript of 12/16/2010 Hearing) (Cohen, Diana) (Entered: 06/17/2011) |
| 06/30/2011 | 🔘192<br>(1 pg) | Final Decree and Discharge of Trustee . (Valencia, Yamileth) (Entered: 06/30/2011) |
| 07/13/2011 | 🔘193 | Pursuant to Local Rule 5005-1(A)(2)(b) and Court Guidelines on Electronic Availability of Transcripts and Procedures for Transcript Redaction, Transcript is now electronically accessible (Re: 188 Transcript of 1/19/2011 Hearing) (Antillon, Jackie) (Entered: 07/13/2011) |
| 07/14/2011 | 🔘194 | Bankruptcy Case Closed. (Valencia, Yamileth) (Entered: 07/14/2011) |
| 11/15/2012 | 🔘195<br>(10 pgs) | Transcript of 8/31/2010 Hearing. (Re: 44 Motion for Relief from Stay *1525 Lenox Ave., Unit 2* [Negative Notice] [Fee Amount $150] Filed by Creditor Deutsche Bank Trust Company Americas.). Redaction Request Due By 11/26/2012. Statement of Personal Data Identifier Redaction Request Due by 12/6/2012. Redacted Transcript Due by 12/17/2012. Transcript access will be restricted through 02/13/2013. (Ouellette and Mauldin) Modified on 2/21/2013 to Make Available to the Public. (Gutierrez, Susan). (Entered: 11/15/2012) |
| 11/15/2012 | 🔘196<br>(12 pgs) | Partial Transcript of 8/16/2011 Hearing.Redaction Request Due By 11/26/2012. Statement of Personal Data Identifier Redaction Request Due by 12/6/2012. Redacted Transcript Due by 12/17/2012. Transcript access will be restricted through 02/13/2013. (Ouellette and Mauldin) Modified on 2/21/2013 to Make Available to the Public. (Gutierrez, Susan). (Entered: 11/15/2012) |
| 11/15/2012 | 🔘197<br>(1 pg) | Notice Regarding Filing of Transcript and Deadline for Filing Notice of Intent or Motions to Request Redaction of Transcript. (Re: 195 Transcript of 8/31/2010 Hearing. *[Document Image Available ONLY to Court Users]*) Redaction Request Due By 11/26/2012. Statement of Personal Data Identifier Redaction Request Due by 12/6/2012. |

CM/ECF LIVE - U.S. Bankruptcy Court:flsb      Page 27 of 28
12-12020-mg   Doc 7666-2   Filed 10/20/14   Entered 10/20/14 17:47:19   Exhibit 2
Pg 157 of 379

| | | |
|---|---|---|
| | | Redacted Transcript Due by 12/17/2012. Transcript access will be restricted through 2/13/2013. (Catala, Nilda) (Entered: 11/15/2012) |
| 11/15/2012 | ⬤198 | **ENTERED IN ERROR, PARTIAL TRANSCRIPT BELONGS TO CASE #10-42559, SEE DE #199**Notice Regarding Filing of Transcript and Deadline for Filing Notice of Intent or Motions to Request Redaction of Transcript. (Re: 196 Partial Transcript of 8/16/2011 Hearing. *[Document Image Available ONLY to Court Users]*. Redaction Request Due By 11/26/2012. Statement of Personal Data Identifier Redaction Request Due by 12/6/2012. Redacted Transcript Due by 12/17/2012. Transcript access will be restricted through 02/13/2013.) Redaction Request Due By 11/26/2012. Statement of Personal Data Identifier Redaction Request Due by 12/6/2012. Redacted Transcript Due by 12/17/2012. Transcript access will be restricted through 2/13/2013. (Catala, Nilda) Modified on 11/15/2012 (Catala, Nilda). Modified on 11/15/2012 (Catala, Nilda). (Entered: 11/15/2012) |
| 11/15/2012 | ⬤199 | Notice to Filer of Apparent Filing Deficiency: **Document Filed in the Incorrect Case. THE FILER IS DIRECTED TO WITHDRAW THE MISDOCKETED PLEADING AND FILE THE PLEADING IN THE CORRECT CASE WITHIN TWO BUSINESS DAYS.** (Re: 197 Notice Regarding Filing of Transcript and Deadline for Filing Notice of Intent or Motions to Request Redaction of Transcript.) (Catala, Nilda) (Entered: 11/15/2012) |
| 11/15/2012 | ⬤200 | Notice to Filer of Apparent Filing Deficiency: **Document Filed in the Incorrect Case. THE FILER IS DIRECTED TO WITHDRAW THE MISDOCKETED PLEADING AND FILE THE PLEADING IN THE CORRECT CASE WITHIN TWO BUSINESS DAYS.** (Re: Notification from Official Court Reporter that Joshua Alper has satisfied payment Re:) (Catala, Nilda) (Entered: 11/15/2012) |
| 11/18/2012 | ⬤201 (3 pgs) | BNC Certificate of Mailing (Re: 197 Notice Regarding Filing of Transcript and Deadline for Filing Notice of Intent or Motions to Request Redaction of Transcript.) Notice Date 11/18/2012. (Admin.) (Entered: 11/19/2012) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 09/24/2014 14:02:45 | | | |
| PACER Login: | mf1354:2923879:3945828 | Client Code: | 71981-1 |
| Description: | Docket Report | Search Criteria: | 10-11746-AJC Fil or Ent: filed Doc From: 0 Doc To: 99999999 Term: included Format: html Page counts for documents: included |
| Billable Pages: | 18 | Cost: | 1.80 |

## **Exhibit 2-M**

**2012 Foreclosure Proceeding Complaint**

IN THE CIRCUIT COURT OF THE ELEVENTH
JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA
CIVIL ACTION

12 - 1 6 2 5 7 CA 2 3

DEUTSCHE BANK TRUST COMPANY AMERICAS AS TRUSTEE
RAMP 2007SP3,

      Plaintiff,

                        CASE NO.
vs.                   DIVISION

SPACE FOR RECORDING ONLY F.S.§695.26

STEPHANIE HARRIS; THE UNKNOWN SPOUSE OF STEPHANIE HARRIS; LINCOLN MEWS
CONDOMINIUM, INC.;  ANY AND ALL UNKNOWN PARTIES CLAIMING BY, THROUGH, UNDER,
AND AGAINST THE HEREIN NAMED INDIVIDUAL DEFENDANT(S) WHO ARE NOT KNOWN TO BE
DEAD OR ALIVE, WHETHER SAID UNKNOWN PARTIES MAY CLAIM AN INTEREST AS SPOUSES,
HEIRS, DEVISEES, GRANTEES, OR OTHER CLAIMANTS; TENANT #1, TENANT #2,  TENANT #3,
and  TENANT #4 the names being fictitious to account for parties in possession

               Defendant(s).

_____/

## NOTICE OF LIS PENDENS

    To the above-named Defendant(s) and all others whom it may concern:

    You are notified of the institution of this action by Deutsche Bank Trust Company Americas as Trustee

RAMP 2007SP3, against you seeking to foreclose a mortgage on the following property in Miami-Dade County,

Florida:

CONDOMINIUM UNIT NO. 2, OF LINCOLN MEWS CONDOMINIUM, TOGETHER WITH AN
UNDIVIDED INTEREST IN THE COMMON ELEMENTS APPURTENANT THERETO, ACCORDING TO
THE DECLARATIONS OF CONDOMINIUM THEREOF, RECORDED IN OFFICIAL RECORDS BOOK
21772,  AT PAGE 2818, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA,
TOGETHER WITH ANY AMENDMENTS THERETO.
A/K/A 1525 LENOX AVE APT. 2, MIAMI BEACH, FL 33139-3313

    Dated this  13  day of  _April_____ , 2011.

                                   Albertelli Law
                                   P.O. Box 23028
                                   Tampa, Florida  33623
                                   (813) 221-4743

                                   By:
                                   VINCENT MCMANUS, ESQ.
                                   FLORIDA BAR NO. 60898

**63868**

BMW - 11-73619 - T10005

IN THE CIRCUIT COURT OF THE ELEVENTH
JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA
CIVIL ACTION

DEUTSCHE BANK TRUST COMPANY AMERICAS    CASE NO.:    12-16257 CA 23
AS TRUSTEE RAMP 2007SP3,

DIVISION:

        Plaintiff,

vs.

STEPHANIE HARRIS; THE UNKNOWN SPOUSE OF STEPHANIE HARRIS; LINCOLN MEWS
CONDOMINIUM, INC.; ANY AND ALL UNKNOWN PARTIES CLAIMING BY, THROUGH, UNDER,
AND AGAINST THE HEREIN NAMED INDIVIDUAL DEFENDANT(S) WHO ARE NOT KNOWN TO BE
DEAD OR ALIVE, WHETHER SAID UNKNOWN PARTIES MAY CLAIM AN INTEREST AS SPOUSES,
HEIRS, DEVISEES, GRANTEES, OR OTHER CLAIMANTS; TENANT #1,  TENANT #2,  TENANT #3,
and  TENANT #4 the names being fictitious to account for parties in possession

        Defendant(s).

_____/

ORIGINAL
FILED

APR 2 5 2012

HARVE... ...IN
CLERK

VERIFIED MORTGAGE FORECLOSURE COMPLAINT

        Plaintiff, Deutsche Bank Trust Company Americas as Trustee RAMP 2007SP3, sues Defendants, Stephanie

Harris;  The Unknown Spouse of Stephanie Harris; Lincoln Mews Condominium, Inc.;  Any and All Unknown

Parties Claiming By, Through, Under, and Against the Herein Named Individual Defendant(s) Who Are Not Known

to be Dead or Alive, Whether Said Unknown Parties May Claim an Interest as Spouses, Heirs, Devisees, Grantees,

or Other Claimants; Tenant #1,  Tenant #2,  Tenant #3, and  Tenant #4, the names being fictitious to account for

parties in possession, and alleges:

MORTGAGE FORECLOSURE

        1.     This is an in rem action to foreclose a mortgage on real property(hereinafter 'Property') located and

situated in Miami-Dade County, Florida.

        2.     On February 21, 2007, there was executed and delivered a Promissory Note ("Note") and a

Mortgage securing the payment of the Note.  The Mortgage was recorded on March 16, 2007, in Official Records

Book 25456 at Page 2337 of the Public Records of Miami-Dade County, Florida, (All subsequent recording

references are to the public records of Miami-Dade County, Florida) and mortgaged the real and personal property

("Property") described therein, then owned by and in possession of the Mortgagor(s). Copies of the original

Mortgage Note and Mortgage are attached hereto and incorporated herein as an Exhibit.

        3.     Plaintiff is entitled to enforce the Promissory Note and Mortgage.

        4.     The Property is now owned of record by Defendant(s), Stephanie Harris.

        5.     The Note and Mortgage are in default.  The required installment payment of April 1, 2008, was

not paid, and no subsequent payments have been made.  The Mortgage is contractually due for the April 1, 2008

payment. The last payment received was applied to the March 1, 2008 installment, and no subsequent payments have been applied to the loan.

      6.     Plaintiff declares the full amount payable under the Note and Mortgage to be now due.

      7.     Plaintiff must be paid $295,627.25 in principal on the Note and Mortgage, together with interest from March 1, 2008, late charges, and all costs of collection including title search expenses for ascertaining necessary parties to this action and reasonable attorney's fees.

      8.     All conditions precedent to the acceleration of the Note and foreclosure of the Mortgage have been performed or have occurred.

      9.     Plaintiff has retained the law firm of Albertelli Law in this action and is obligated to pay it a reasonable fee for its services in bringing this action as well as all costs of collection. Plaintiff shall be entitled to an award of any fees and costs incurred in this action based on the terms of the instruments upon which this action is based.

      10.    The interests of each Defendant are subject, subordinate, and inferior to the right, title, interest, and lien of Plaintiff's Mortgage, unless as otherwise provided for by law.

      11.    Stephanie Harris may have or claim an interest in the Property that is the subject of this Foreclosure action by virtue of a Warranty Deed recorded in Official Records Book 23193, Page 2999; a Quit Claim Deed recorded in Official Records Book 24466, Page 4473; a Quit Claim Deed recorded in Official Records Book 24466, Page 4475, or may otherwise claim an interest in the Property.

      12.    Lincoln Mews Condominium, Inc. may have or claim an interest in the Property that is the subject of this Foreclosure action by virtue of any unpaid condominium assessments levied pursuant to the Declaration of Condominium and any interest acquired pursuant to Chapter 718 F.S., or may otherwise claim an interest in the Property.

      13.    The Unknown Spouse of Stephanie Harris may have or claim an interest in the Property that is the subject of this Foreclosure action by virtue of homestead rights, possession, or any right of redemption, or may otherwise claim an interest in the Property.

      14.    Tenant #1, Tenant #2, Tenant #3 and Tenant #4, the names being fictitious to account for parties in possession who may claim some interest in the Property that is the subject of this foreclosure action by virtue of an unrecorded lease or purchase option, by virtue of possession, or may otherwise claim an interest in the Property. The names of these Defendants are unknown to the Plaintiff.

      WHEREFORE, Plaintiff requests that the Court ascertain the amount due Plaintiff for principal and interest on the Note and Mortgage and for late charges, abstracting, taxes, expenses and costs, including attorney's fees, plus interest thereon; that if the sums due Plaintiff under the Note and Mortgage are not paid immediately, the Court foreclose the Mortgage and the Clerk of the Court sell the Property securing the indebtedness to satisfy Plaintiff's mortgage lien in accordance with the provisions of Section 45.031, Florida Statutes (1999); that the rights, title and interest of any Defendant, or any party claiming by, through, under or against any Defendant named herein or hereafter made a Defendant be forever barred and foreclosed; that the Court appoint a receiver of the Property and of

the rents, issues, income and profits thereof, or in the alternative, order sequestration of rents, issues, income and profits pursuant to Section 697.07, Florida Statutes (1995); and that the Court retain jurisdiction of this action to make any and all further orders and judgments as may be necessary and proper, including the issuance of a writ of possession and the entry of a deficiency decree, when and if such deficiency decree shall appear proper, if borrower(s) has not been discharged in bankruptcy.

### FLA. R. CIV. P. 1.110(b) VERIFICATION

Under penalty of perjury, I declare that I have read the foregoing, and the facts alleged therein are true and correct to the best of my knowledge and belief.

Printed name: Ann-Marie Owens

Title: Authorized Officer

Company: GMAC Mortgage, LLC., Servicer for Plaintiff

Date: April 9, 2012

Plaintiff, by and through the undersigned attorney, prays this honorable Court grant the above requested relief and such other relief deemed appropriate and just.

Albertelli Law
P.O. Box 23028
Tampa, Florida 33623
(813) 221-4743

By:

VINCENT MCMANUS, ESQ.
FLORIDA BAR NO. 60898

BMW - 11-73619

Department of Defense Manpower Data Center

Results as of : Apr-13-2012 06:09:05



Status Report
Pursuant to the Servicemembers Civil Relief Act

Last Name: <u>Harris</u> First Name: <u>Stephanie</u> Date Of Interest: <u>Apr-13-2012</u>

| Active Duty End Date | Status | Service Component |
|---|---|---|
| | On Active Duty On Date of Interest | |
| | No | NA |
| | This response reflects the individual's active duty status based on the Date of Interest. | |

| | Left Active Duty Within 367 Days of Date Of Interest | |
|---|---|---|
| | No | NA |
| | This response reflects whether the individual left active duty status within 367 days preceding the Date of Interest. | |

| | The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Date of Interest | |
|---|---|---|
| | No | NA |
| | This response reflects whether the individual or his/her unit has received early notification to report for active duty | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the date of interest as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Mary M. Snavely-Dixon*

Mary M. Snavely-Dixon, Director
Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Arlington, VA 22350

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 501 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the date of interest, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service via the "defenselink.mil" URL: http://www.defenselink.mil/faq/pis/PC09SLDR.html. If you have evidence the person was on active duty for the date of interest and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 521(c).

If you obtain additional information about the person (e.g., a SSN, First Name), you can submit your request again at this Web site and we will provide a new certificate for that query

This response reflects the following information: (1) The individual's Active Duty status on the Date of Interest (2) Whether the individual left Active Duty status within 367 days preceding the Date of Interest (3) Whether the individual or his/her unit received early notification to report for active duty on the Date of Interest.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN, and date of interest provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.

Report ID: null

Return To:

Sun Valley Title
7000 W. Palmetto Park Rd., #305
Boca Raton, FL 33433

This document was prepared by:
People's Choice Home Loan,
Inc.
7515 Irvine Center Drive,
Irvine, CA 92618

CFN 2007R0274673
OR Bk 25456 Pgs 2337 - 2359; (23pgs)
RECORDED 03/16/2007 11:45:14
MTG DOC TAX 1,041.25
INTANG TAX 595.00
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

——————————————|Space Above This Line For Recording Data|——————————————

# MORTGAGE

MIN ▉▉▉▉▉▉▉▉▉

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated February 21, 2007
together with all Riders to this document.
(B) "Borrower" is STEPHANIE HARRIS, A SINGLE WOMAN

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee
under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is PEOPLE'S CHOICE HOME LOAN, INC.

▉▉▉▉▉▉

FLORIDA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3010 1/01

(VMP) -6A(FL) (0005).02

Page 1 of 16          Initials: ___

VMP MORTGAGE FORMS - (800)521-7291

Lender is a CORPORATION
organized and existing under the laws of WYOMING
Lender's address is 7515 IRVINE CENTER DR., IRVINE, CA  92618

(E) "Note" means the promissory note signed by Borrower and dated February 21, 2007
The Note states that Borrower owes Lender TWO HUNDRED NINETY-SEVEN THOUSAND FIVE
HUNDRED AND 00/100                                                                        Dollars
(U.S. $297,500.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than March 1, 2037            .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [X] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.



-6A(FL) (0005).02                              Page 2 of 16              Initials: SV              Form 3010  1/01

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the COUNTY          [Type of Recording Jurisdiction]
of MIAMI-DADE                                                                [Name of Recording Jurisdiction]:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT 'A'

Parcel ID Number: 02-3234-151-0020                     which currently has the address of
1525 LENOX AVE., UNIT 2                                                        [Street]
MIAMI BEACH                                        [City], Florida 33139        [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment



**-6A(FL)** (0005).02                    Page 4 of 16              Initials:                Form 3010  1/01

can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest

-6A(FL) (0005).02                        Page 5 of 16                     Initials:            Form 3010   1/01

shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.



-6A(FL) (0005).02                    Page 6 of 15              Initials:               Form 3010  1/01

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.



Initials: 

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.





Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.



-6A(FL) (0005).02                     Page 9 of 18          Initials: [signature]          Form 3010   1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of



any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers



-6A(FL) (0005).02                    Page 11 of 16          Initials:          Form 3010   1/01

unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the





-6A(FL) (0005).02          Page 12 of 16          Initials:          Form 3010  1/01

purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.



-6A(FL) (0005).02                     Page 13 of 16          Initials:                    Form 3010   1/01

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____    _____ (Seal)
                                     STEPHANIE HARRIS              -Borrower

                                     ████████████████████████

                                     _____ (Address)

_____    _____ (Seal)
                                                                  -Borrower

                                     _____ (Address)

_____ (Seal)     _____ (Seal)
                  -Borrower                                       -Borrower

           (Address)                          (Address)

_____ (Seal)     _____ (Seal)
                  -Borrower                                       -Borrower

           (Address)                          (Address)

_____ (Seal)     _____ (Seal)
                  -Borrower                                       -Borrower

           (Address)                          (Address)

████████

(vmp) -6A(FL) (0005).02          Page 15 of 16              Form 3010  1/01

**STATE OF FLORIDA,** _PALM Beach_

    The foregoing instrument was acknowledged before me this _21st day of February 2007_ by
STEPHANIE HARRIS, A SINGLE WOMAN

who is personally known to me or who has produced _FL drivers license_ as identification.

                     _Judith Linskey_
          Notary Public

-6A(FL) (0005).02                Page 18 of 18

Initials: _SH_                Form 3010  1/01

Judith M. Linskey
Commission #DD325898
Expires: Jun 21, 2008
Bonded Thru
Atlantic Bonding Co., Inc.

Condominium Unit No. 2, of LINCOLN MEWS CONDOMINIUM, according to the Declaration of Condominium thereof, recorded in Official Records Book 21772, at Page 2818, of the Public Records of Miami-Dade County, Florida.



Loan Number

## ADJUSTABLE RATE NOTE
### (LIBOR Six-Month Index (As Published In The Wall Street Journal)-Rate Caps)
### Including Prepayment Penalty

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| 02/21/2007 | FT. LAUDERDALE | FLORIDA |
|---|---|---|
| [Date] | [City] | [State] |

### 1525 LENOX AVE., UNIT 2, MIAMI BEACH, FLORIDA 33139
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 297,500.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is PEOPLE'S CHOICE HOME LOAN, INC. a WYOMING CORPORATION.

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 9.400% . The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3.  PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the 1st day of each month beginning on April 1, 2007. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on March 1, 2037, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 52678, Irvine, CA 92619 or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 2,479.87 . This amount may change.

### (C) Monthly  Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Date(s)

The interest rate I will pay may change on the 1st day of March, 2009  and every  6 month(s) thereafter. Each date on which my interest rate could change is called a "Change Date."

adjnote1    09/26/01
Initials:

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in the Wall Street Journal. The most recent Index figure available as of the   date 45 days before each Change Date  is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding seven and three-quarters percentage points ( 7.750%  ) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than  12.400% or less than 9.400 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one  percentage point(s) ( 1.000%  ) from the rate of interest I have been paying for the preceding 6  months.

My interest rate will never be greater than 15.400%.   My interest rate will never be less than 9.400%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date.  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due.  A payment of Principal only before it is due is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments then due under this Note.

The Note Holder will use my Prepayment to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment.  However, any reduction due to my partial prepayment may be offset by an increase in the interest rate.

If within Twenty-four (24) months from the date of execution of the Security Instrument, I make full Prepayment or partial Prepayment, and the total of such Prepayment(s) in any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan, I will pay a Prepayment charge in an amount equal to 6 months' advance interest on the amount by which the total of my Prepayment(s) within that 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

## 8. GIVING OF NOTICES

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 12. DOCUMENTARY TAX

The state documentary tax due on this Note has been paid on the Mortgage securing this indebtedness.

**WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.**

_____ (Seal)          _____ (Seal)
STEPHANIE HARRIS        -Borrower                                   -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                   -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                   -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                   -Borrower

PAY TO THE ORDER OF

**RESIDENTIAL FUNDING COMPANY, LLC**

WITHOUT RECOURSE

PEOPLE'S CHOICE HOME LOAN, INC.

A Wyoming Corporation

By_____

DANA LANTRY

Title:  Asst. Vice President

PAY TO THE ORDER OF
LaSalle Bank, N.A. as Trustee
WITHOUT RECOURSE
Residential Funding Company, LLC

By: _____

Judy Faber, Vice President

## Exhibit 2-N

**Harris Answer in the 2012 Foreclosure Proceeding**

*11-7361 8*

*11*
*80*

## IN THE CIRCUIT COURT OF THE 11th JUDICIAL CIRCUIT, IN AND FOR MIAMI-DADE COUNTY, FLORIDA

DEUTSCHE BANK
TRUST COMPANY AMERICAS
AS TRUSTEE

NO.:12-16257-CA-23

     PLAINTIFF,

v.

STEPHANIE HARRIS, et al.

     DEFENDANTS.

_____/

### DEFENDANTS' ANSWER AFFIRMATIVE DEFENSES; AND DEMAND FOR JURY TRIAL

**COME NOW**, the **Defendants, STEPHANIE HARRIS, TENANT #1, TENANT # 2, and TENANT #3,** (hereinafter **"Defendant"**), by and through the undersigned council, and for their answer and affirmative defenses to Plaintiff's, **DEUTSCHE BANK TRUST COMPANY AMERICA AS TRUSTEE** (hereinafter **"Plaintiff")**, Complaint, as grounds therefore and in support thereof, Defendant states as follows:

### ANSWER

1. Defendant Admits all jurisdictional allegations.

2. Defendant Denies all substantive allegations to the Complaint.

3. Any and all allegations in the Complaint which are not explicitly admitted are hereby Denied.

### AFFIRMATIVE DEFENSES

4. **ONE - FAILURE OF CONTRACTUAL CONDITION PRECEDENT: NO NOTICE OF DEFAULT:** Plaintiff failed to provide Defendant with a Notice of Default and Intent to Accelerate as required by and/or that complies with paragraph(s) 18, 20 and 22 of the subject mortgage.

5. Plaintiff completely failed to give the contractually required thirty (30) day notice of default as required under the Mortgage. See page 12 par.18.

6. Rather Plaintiff merely provided the Defendant with a notice that Plaintiff has initiated foreclosure proceedings.

7. Such notice is clearly in breach of the Mortgage contract which specifically prohibits the Plaintiff from bringing any action until and unless the "*[party] Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of section 15) of such alleged breach…*"

8. Moreover, assuming arguendo the notice letter from the Plaintiff was supposed to be the notice letter to my client. Nevertheless the letter fails to adhere to the strict requirements of par. 22 on page 14 of the subject Mortgage.

9. As a result, Defendant has been denied a good faith opportunity, pursuant to the mortgage and the servicing obligations of the Plaintiff, to avoid acceleration and this foreclosure.

10. **TWO - NO HUD COUNSELING NOTICE:** Plaintiff failed to comply with the foreclosure prevention loan servicing requirement imposed on Plaintiff pursuant to the National Housing Act, 12 U.S.C. 1701x(c)(5) which requires all

private lenders servicing non-federally insured home loans, including the Plaintiff, to advise borrowers, including this Defendant, of any home ownership counseling Plaintiff offers together with information about counseling offered by the U.S. Department of Housing and Urban Development.

11.     The U.S. Department of Housing and Urban Development has determined that 12 U.S.C. 1701x(c)(5) creates an affirmative legal duty on the part of the Plaintiff. Plaintiff's non-compliance with the law's requirements is an actionable event that makes the filing of this foreclosure premature based on a failure of a statutory condition precedent to foreclosure which denies Plaintiff's ability to carry out this foreclosure.

12.     Plaintiff cannot legally pursue foreclosure unless and until Plaintiff demonstrates compliance with 12 U.S.C. 1701x(c)(5).

13.     **THREE - PLAINTIFF FAILED TO COMPLY WITH APPLICABLE POOLING AND SERVICING AGREEMENT LOAN SERVICING REQUIREMENTS:** Plaintiff failed to provide separate Defendants with legitimate and non predatory access to the debt management and relief that must be made available to borrowers, including this Defendant pursuant to and in accordance with the Pooling and Servicing Agreement filed by the Plaintiff with the Securities and Exchange Commission that controls and applies to the subject mortgage loan.

14.     Plaintiff's non-compliance with the conditions precedent to foreclosure imposed on the plaintiff pursuant to the applicable pooling and servicing

agreement is an actionable event that makes the filing of this foreclosure premature based on a failure of a contractual and/or equitable condition precedent to foreclosure which denies Plaintiff's ability to carry out this foreclosure.

15.     Defendants assert that the special default loan servicing requirements contained in the subject pooling and servicing agreement, to be filed in pertinent part and which is on file at: www.secinfo.com are incorporated into the terms of the mortgage contract between the parties as if written therein word for word and the defendants are entitled to rely upon the servicing terms set out in that agreement.

16.     Alternatively or additionally, the Defendant are third party beneficiaries of the Plaintiff's pooling and servicing agreement and entitled to enforce the special default servicing obligations of the plaintiff specified therein.

17.     Plaintiff cannot legally pursue foreclosure unless and until Plaintiff demonstrates compliance with the foreclosure prevention servicing imposed by the subject pooling and servicing agreement under which the plaintiff owns the subject mortgage loan.

18.     The Plaintiff failed, refused or neglected to comply with prior to the commencement of this action with the servicing obligations specifically imposed on the plaintiff by the PSA in many particulars, including, but not limited to:

      a. Plaintiff failed to service and administer the subject mortgage loan in compliance with all applicable federal state and local laws.

b. Plaintiff failed to service and administer the subject loan in accordance with the customary an usual standards of practice of mortgage lenders and servicers.

c. Plaintiff failed to extend to defendants the opportunity for a modification, waiver, forbearance or amendment of the terms of the subject loan or to in any way exercise the requisite judgment as is reasonably required pursuant to the PSA.

19.  Plaintiff's failure to meet the servicing obligations imposed by the PSA cause the filing by plaintiff of this foreclosure to be in premature, in bad faith and a breach by plaintiff of its obligation to defendants implied in the mortgage contract and as specified in writing in the PSA, to act in good faith and to deal fairly with defendants.

20.  Instead, plaintiff's servicing failures as set forth herein render plaintiff's actions in filing this premature foreclosure to be in bad faith and not acceptable loan servicing under the written contracts between the parties which include the mortgage, the PSA incorporated therein or by which defendants are third party beneficiaries thereof and the promissory note.

21.  Plaintiff intentionally failed to act in good faith or to deal fairly with these Defendants by failing to follow the applicable standards of residential single family mortgage *lending and servicing* as described in these Affirmative Defenses thereby denying these Defendants access to the residential

mortgage lending and servicing protocols applicable to the subject note and mortgage.

22.    **FOUR - ILLEGAL CHARGES ADDED TO BALANCE**: Plaintiff has charged and/or collected payments from Defendant for attorney fees, legal fees, foreclosure costs, late charges, property inspection fees, title search expenses, filing fees, broker price opinions, appraisal fees, and other charges and advances, and predatory lending fees and charges that are not authorized by or in conformity with the terms of the subject note and mortgage or the controlling pooling and servicing agreement which specifies the waiver of late payments and other collection charges as part of the forbearance and loan modification default loan servicing.

23.    Plaintiff completely failed to give the contractually required thirty (30) day notice of default as required under the Mortgage. See page 12 par.18.

24.    Rather Plaintiff merely provided the Defendant with a notice that Plaintiff has initiated foreclosure proceedings.

25.    Such notice is clearly in breach of the Mortgage contract which specifically prohibits the Plaintiff from bringing any action until and unless the "[party] *Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of section 15) of such alleged breach...*"

26.    Moreover, assuming arguendo the notice letter from the Plaintiff was supposed to be the notice letter to my client. Nevertheless the letter fails to

adhere to the strict requirements of par. 22 on page 14 of the subject Mortgage.

27.    Plaintiff wrongfully added and continues to unilaterally add these illegal charges to the balance Plaintiff claims is due and owing under the subject note and mortgage.

28.    **FIVE - FAILURE OF GOOD FAITH AND FAIR DEALING: UNFAIR AND UNACCEPTABLE LOAN SERVICING**: Plaintiff intentionally failed to act in good faith or to deal fairly with the subject Defendants by failing to follow the applicable standards of residential single family mortgage *servicing* as described in these Affirmative Defenses thereby denying Defendant s access to the residential mortgage servicing protocols applicable to the subject note and mortgage.

29.    Plaintiff completely failed to give the contractually required thirty (30) day notice of default as required under the Mortgage. See page 12 par.18.

30.    Rather Plaintiff merely provided the Defendant with a notice that Plaintiff has initiated foreclosure proceedings.

31.    Such notice is clearly in breach of the Mortgage contract which specifically prohibits the Plaintiff from bringing any action until and unless the "[*party*] *Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of section 15) of such alleged breach...*"

32.    Moreover, assuming arguendo the notice letter from Plaintiff was supposed to be the notice letter to my client. Nevertheless the letter fails to adhere to the strict requirements of par. 22 on page 14 of the subject Mortgage.

33.    **SIX - UNCLEAN HANDS**: The Plaintiff comes to court with unclean hands and is prohibited by reason thereof from obtaining the equitable relief of foreclosure from this Court.

34.    The Plaintiff's unclean hands result from the Plaintiff's improvident and predatory intentional failure to comply with material terms of the mortgage and note; the failure to comply with the default loan servicing requirements that apply to this loan, all as described herein above.

35.    Moreover, the Defendant was making timely payments up to and including the filing of the instant action.

36.    Plaintiff completely failed to give the contractually required thirty (30) day notice of default as required under the Mortgage. See page 12 par.18.

37.    Rather Plaintiff merely provided the Defendant with a notice that Plaintiff has initiated foreclosure proceedings.

38.    Such notice is clearly in breach of the Mortgage contract which specifically prohibits the Plaintiff from bringing any action until and unless the "[*party*] *Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of section 15) of such alleged breach…*"

39.    Moreover, assuming arguendo the notice letter from Plaintiff was supposed
to be the notice letter to my client. Nevertheless the letter fails to adhere to the
strict requirements of par. 22 on page 14 of the subject Mortgage.

40.    As a matter of equity, this Court should refuse to foreclose this mortgage
because acceleration of the note would be inequitable, unjust, and the
circumstances of this case render acceleration unconscionable.   This court
should refuse the acceleration and deny foreclosure because Plaintiff has
waived the right to acceleration or is estopped from doing so because of
misleading conduct and unfulfilled contractual and equitable conditions
precedent.

41.    **SEVEN - PLAINTIFF LACKS STANDING:** Plaintiff is not the true owner of
the claim sued upon, is not the real party in interest and is not shown to be
authorized to bring this foreclosure action.

42.    Specifically, the Note and Mortgage attached to the Complaint show that
an entity other than the Plaintiff owns the Note and Mortgage.

43.    In fact the purported Allonge is undated. And the purported Assignment of
Mortgage is invalid on its face and seems to be the subject of fraud.

44.    Plaintiff has failed to allege in its' Complaint specifically how and when it
became the owner of the subject Note and Mortgage.

45.    **EIGHT - ALLEGED ASSIGNMENT OF MORTGAGE IS INVALID:** By its
own terms the Assignment of Mortgage filed by the Plaintiff is invalid on its
face. In that, MERS purports to assign a greater interest to the Plaintiff then

MERS was vested. Specifically, MERS acts soley as the nominee holder of the <u>mortgage</u> for the original lender and the original lender assigns.

46.   Yet, the MERS Assignment purports to assign to the Plaintiff the promissory note as well. MERS has no capacity to assign said interest as MERS was never designated as the assignee of the Promissory Note by the original lender or otherwise.

47.   Moreover as of the date of the Assignment, MERS was no longer the Assign-ee for the original lender. Rather, MERS would have been, should have been, the Assignee of the current Mortgage holder.

48.   **NINE - ERROR IN ACCOUNTING:** Defendant's are entitled to a full accounting through the master transaction histories and general ledgers for the account since a dump or summary of said information cannot be relied upon to determine the rightful amounts owed.

49.   Further, the principal balance claimed as owed is not owed and is the wrong amount, the loan has not been properly credited or amortized.

50.   **TEN - UNCONSCIONABILITY:** In light of all of the foregoing defenses, and on the face of the purported loan documents, the circumstances under which the Plaintiff is attempting to foreclose on the Note and Mortgage were and are unconscionable and were unconscionably exercised, accordingly it is unconscionable to enforce the Mortgage by foreclosure.

51.   **ELEVEN - FAILURE TO JOIN INDISPENSABLE PARTY:** Plaintiff has failed to join an indispensable party. <u>Willey v. W. J. Hoggson Corporation</u>, 90

Fla. 343, 106 So. 408 (1925), contends that since the note and mortgage involved in this litigation are payable to a business trust, any action on those instruments must be brought by all the members of the trust-not just the trustees.

52.    **ELEVEN - LACK OF JURISDICTION:** This court lacks jurisdiction over the subject matter. It appears on the face of the complaint that a person other than the Plaintiff was the true owner of the claim sued upon at the time this action was filed and that the Plaintiff is not the real party in interest and is not shown to be authorized to bring this foreclosure action.

53.    **TWELVE - FAILURE TO POST NON RESIDENT COST BOND:** The Defendant believes and therefore alleges based on information provided by the Florida Department of Financial Regulation that PLAINTIFF, has no security on deposit with the Chief Financial Officer and is not in compliance with Florida Statute § 660.27, titled: Deposit of securities with Chief Financial Officer which provides, in pertinent part:

*"(1) Before transacting any **trust business** in this state, every trust company and every state or national bank or state or federal association having trust powers shall give satisfactory security by the deposit or pledge of security of the kind or type provided in this section having at all times a market value in an amount equal to 25 percent of the issued and outstanding capital stock of such trust company, bank, or state or federal stock association or, in the case of a federal mutual association, an equivalent amount determined by the office, or the sum of $25,000, whichever is greater. However, the value of the security deposited or pledged pursuant to the provisions of this section shall not be required to exceed $500,000. Any notes, mortgages, bonds, or other securities, other than shares of stock, eligible for investment by a state bank, state association, or state trust company, or eligible for investment by fiduciaries, shall be accepted as satisfactory security for the purposes of this section. "*

11

54.    **THIRTEEN - FAILURE TO COMPLY WITH FL. § 660.27**: The Defendant

also believes and therefore alleges that PLAINTIFF is acting on behalf of a

Trust.

55.    And as such Plaintiff has al failed to comply with Florida Statute §

660.27(2)(a), which requires the Bank to provide to Florida's Chief Financial

Officer the full legal name of the trust, its federal employer identification

number; principal place of business; amount of capital stock; and amount of

collateral required to be deposited by the trust.

56.    **FOURTEEN - PLAINTIFF DOES NOT HAVE LEGAL OWNERSHIP OF**

**THE NOTE:** In the securitization chain there must be: a note, a purchase and

sale agreement; a transfer receipt; a delivery receipt; a bond if the notes are

endorsed in blank; a receipt of funds for the purchase of the note; and a

disbursement of funds for the acquisition of the note.

57.    In the very simple RMBS model, there has to be transfers from the

originator to the sponsor, from the sponsor to the depositor, from the

depositor to the Trustee for the Trust, and from the Trustee to the Master

Document Custodian (MDC) for the Trust.  The MDC would have all of the

documents.

58.    Plaintiff, PLAINTIFF does not have nor can produce these documents for

the instant action.

59.    **FIFTEEN - PLAINTIFF'S EXHIBITS ARE INCONSISTENT AND THUS**

**CANCEL EACH OTHER OUT:** Although the Plaintiff alleges in its complaint

that it is the owner of the promissory note and the mortgage that are the subject of this foreclosure action, the note and mortgage and assignments attached to the Plaintiff's complaint and to the Plaintiff's notice of filing conflict with these allegations.

60.    Therefore the contents of actual mortgage and note cancel out the inconsistent and conflicting assignments and allegations as to the ownership of the note and mortgage at the commencement of this action.

61.    When exhibits are inconsistent with the Plaintiff's allegations of material fact as to who the real party in interest is, such allegations cancel each other out. *Fladell v. Palm Beach County Canvassing Board*, 772 So.2d 1240 (Fla. 2000); *Greenwald v. Triple D Properties, Inc.*, 424 So. 2d 185, 187 (Fla. 4th DCA 1983); *Costa Bella Development Corp. v. Costa Development Corp.*, 441 So. 2d 1114 (Fla. 3rd DCA 1983).

62.    Accordingly, Plaintiff was not the real party in interest on the date this action was commenced and is not shown to be authorized to bring this action.

63.    **SIXTEEN - PROMISSORY NOTE ATTACHED TO THE PLAINTIFF'S COMPLAINT IS NOT A NEGOTIABLE INSTRUMENT WITHIN MEANING OF FLA. STAT. §673.1041(1)(C) (2006).**

64. With regard to all counts of the Complaint, the Plaintiff's claims are barred in whole or in part, because the alleged Promissory Note attached to the Plaintiff's Complaint is not a negotiable instrument within meaning of Fla. Stat. §673.1041(1)(c) (2006).

65. Specifically, the Note: (1) provides for late fees in Section 7, subsection (A); (2) obligated the Defendant to re-execute the loan document in the form of an amendment; and (3) is an adjustable rate note, meaning that there is <u>no</u> promise to pay a <u>fixed</u> sum certain.

66. Consequently, the law governing negotiable instruments, as set forth in Fla. Stat. §673 *et seq.* (2006), does not apply to this Note.  *See* <u>General Motors Acceptance Corp. v. Honest Air Conditioning & Heating, Inc., et al.</u>, 933 So. 2d 34 (Fla. 2d DCA 2006); <u>Wells Fargo Bank, NA v. Christopher J. Chesney, et al.</u>, Case No. 51-2009-CA-6509-WS/G (6thJud.Cir.Pasco.Cty. 02/22/2010 Stanley R. Mills, Judge).

67. <u>**SEVENTEEN - FAILURE TO PROVIDE FDCPA NOTICE**</u>

68.   Plaintiff brought this action without providing notice to Defendant of Defendant's right to dispute the debt, pursuant to the Fair Debt Collection Practices Act.

69.   As indicated in the paragraphs above Plaintiff's notice letter to Defendant was sent *after* foreclosure proceedings were already initiated. Or in the alternative the filing of the instant law suit was premature int hat it did not allow the Defendant the requisite 30 day's to cure the default as is the Defendant's contractual right under the relevant terms of the Mortgage.

70.   Pursuant to 15 U.S.C §§ 1601, et seq., Plaintiff is required to notify Defendant, that Defendant may dispute the debt and Plaintiff is required to provide verification for the debt.

71. Accordingly, at this time Defendant hereby disputes the debt and demands that Plaintiff verify the debt in accordance with the Fair Debt Collection Practice Act.

72. Plaintiff is required to suspend litigation until verification of the debt at issue is provided to the Defendant.

73. **EIGHTEEN - VIOLATION OF FLORIDA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT (FUTSA):**

74. Upon information and belief, in addition to the facts alleged in the preceding paragraphs, the Plaintiff and/or its predecessor(s) in interest also violated the Florida Unfair and Deceptive Trade Practices Act, F.S. 501.201, et seq. by:

   a. Failing to promptly and/or properly pay taxes or insurance premiums when due, so that the maximum tax discount available to Defendant's could be obtained on Defendant's property and so that insurance coverage on the property would not lapse.

   b. Failing to provide Defendants' with an annual statement of the escrow account kept for payment of taxes and insurance.

   c. Charging excessive fees and making payments of fees to parties not entitled to receive them;

   d. Failing to properly account for payments which the Plaintiff made.

   e. All such actions by Plaintiff and/or its predecessor(s) in interest are unconscionable acts or practices, and/or unfair or deceptive acts or

15

practices in the conduct of trade or commerce in violation of §501.204,

Florida Statutes, and entitle the Defendants' to a setoff, recoupment or

civil penalty, nominal and actual damages, attorney's fees and costs.

75. **NINETEEN - FAILURE TO COMPLY WITH  ELEVENTH JUDICIAL CIRCUIT ADMINISTRATIVE ORDER 11-09 – MANDATORY PRESUIT MEDIATION:**

76. Plaintiff has failed to comply with this Circuit courts Administrative Order 11-09 requiring mandatory foreclosure mediation.

77. **TWENTY- PLAINTIFF LACKS CAPACITY**:

78. The only identification of the Plaintiff appears in the caption and the first paragraph of the complaint where the Plaintiff is identified simply as "BANK OF AMERICA, N.A. SUCCESSOR BY MERGER TO BAC HOME LOAN SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP". The name of the Plaintiff is not set off or specified within the body of the complaint or in any other pleading, nor is any description provided to explain the legal nature of the entity.

79. **TWENTY ONE - COMPLAINT FAILS TO STATE A CAUSE OF ACTION** - That the Defendant is in receipt of a "boilerplate" complaint issued by Plaintiff's Council. Said complaint fails to state a specific cause of action insofar as general allegations were made on a "fill-in-the-blank" form with a copy of an alleged copy of the Note and Mortgage agreement attached.

80. That the Defendant is unable to formulate a competent response to the Plaintiff's complaint insofar as the allegations in said complaint do not mirror

or substantiate the attached exhibits.    Alternately, the Defendant DENIES

each and every allegation of the Plaintiff and demands strict proof thereof.

81.    **TWENTY TWO – ASSIGNMENT OF MORTGAGE IS FRAUDULENT:**

82.    It appears on its' face that the purported Assignment of Mortgage to the

Plaintiff was filled out and signed by the same person. Specifically, the

handwriting is consistent throughout the assignment.

83.    Additionally, Carmen L. Means is not employed by the Plaintiff, has no

knowledge of the facts contained in the subject foreclosure complaint. Rather

Carmen L. Means is an employee of third party employer hire to execute such

documents, commonly known as robosigners.

**WHEREFORE,** Defendants demands the Plaintiff's complaint be dismissed

with prejudice, and for their attorney's fees and costs and for all other relief to

which this Court finds Defendant entitled.

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been
furnished by U.S. Mail to Alberteli Law, P.O. Box, 23028, Tampa Florida, 33623, ,
this Friday, June 15, 2012.

By: _____.

Mordechai L. Breier, Esquire
Florida Bar No.: 0088186

CONSUMER LAW OFFICE, P.A.
16300 N.E. 19th Ave
Suite # 243
North Miami Beach, FL 33162
Dade: (305) 940-0924
Broward: (754) 229-0501
Fax: (786) 454-4949
MLB@MyConsumerLawOffice.com

Consumer Law Office, P.A.
16300 N.E. 19th Ave Ste 243
N. Miami BEach, FL 33162

$0.850
US POSTAGE
FIRST-CLASS
FROM 33162
JUN 19 2012
stamps.com

Alberteli Law
P.O. Box 23028
Tampa FL 33623-2028

40



**<u>Exhibit 2-O</u>**

**Docket Report in the 2012 Foreclosure Proceeding**

🛒 **0 Item(s) in Basket**          **Home**     **Online Services**     **About us**     **Contact us**

**HARVEY RUVIN**
**CLERK** *of the* **COURTS**
**MIAMI-DADE COUNTY, FLORIDA**

## Civil Court Online System - Docket Information

BACK TO SEARCH RESULTS          ALL PARTIES          START A NEW SEARCH

**DEUTSCHE BANK TR CO AMERICAS (TR) vs HARRIS, STEPHANIE**
* Click on BOOK/PAGE of a particular docket to see the image if it is available *

**Case Number** 2012-16257-CA-
**(LOCAL):** 01                    **Dockets Retrieved:** 32          **Filing Date:** 04/25/2012

**Case Number (STATE):** 13-2012-CA-016257-0000-01          **Judicial Section:** 23

| Date | Book/Page | Docket Entry | Comments |
|---|---|---|---|
| 02/24/2014 | | ORDER CASE PENDING BANKRUPTCY STAY | |
| 02/24/2014 | | ORDER CASE PENDING BANKRUPTCY STAY | REF BANKRUPTCY#14-13 319 |
| 02/12/2014 | 29029 / 4596 Pages: 2 | SUGGESTION OF BANKRUPTCY | BK:29029 PG:4596 DN01 |
| 01/07/2014 | | ORDER: | GRANTING PLF MOTI FOR SUBSTITUTION OF COUNSEL |
| 01/03/2014 | | ORD SETTING NJ TRIAL CRTRM 3-1 | 02/24/2014 09:00 AM |
| 12/30/2013 | | NOTICE OF TRIAL (CASE AT ISSUE) | |
| 12/23/2013 | | STIPULATION | FOR SUBSTITUTION OF COUNSEL |
| 12/23/2013 | | ORDER FOR SUBSTITUTION OF COUNSEL | ATY:00070504 PN01 |
| 12/23/2013 | | MOTION FOR SUBSTITUTION OF COUNSEL | |
| 11/04/2013 | | NOTICE OF FILING: | SERVICELIST |
| 11/04/2013 | | NOTICE OF APPEARANCE | ATTORNEY: 00070504 PN01 |
| 07/26/2013 | | NOTICE OF UNAVAILABILITY/ABSENCE | |
| 02/25/2013 | | NOTICE OF UNAVAILABILITY/ABSENCE | |
| 10/26/2012 | | SUMMONS RETURNED - NO SERVICE | DN01 |
| 10/05/2012 | | SUMMONS RETURNED - NO SERVICE | DN01 |
| 09/25/2012 | | E-MAIL NOTICE | AORTIZ@MYCOUNSUMERLAWOFFICE.COM |
| 09/25/2012 | | E-MAIL NOTICE | AORTIZ@MYCOUNSUMERLAWOFFICE.COM |
| 09/11/2012 | | NOTICE OF APPEARANCE | ATTORNEY: 00088186 DN01 |
| 09/11/2012 | | MOTION TO QUASH | |
| 07/02/2012 | | SERVICE RETURNED | BADGE # 55555 S 05/08/2012 DN02 |

Miami-Dade County Clerk - Civil Court Online System - Docket Information     Page 2 of 2
12-12020-mg    Doc 7666-2    Filed 10/20/14    Entered 10/20/14 17:47:19    Exhibit 2
Pg 210 of 379

| Date | | Description | Details |
|---|---|---|---|
| 06/18/2012 | | ANSWER AND AFFIRMATIVE DEFENSE | ATTORNEY:00088186 DN01 |
| 06/18/2012 | | DEMAND FOR JURY TRIAL | |
| 05/09/2012 | | SERVICE RETURN FOR UNKNOWN PARTY | |
| 05/09/2012 | | SERVICE RETURNED | BADGE # 555555 P 04/28/2012 DN01 |
| 05/09/2012 | | SERVICE RETURN FOR UNKNOWN PARTY | |
| 05/09/2012 | | SERVICE RETURN FOR UNKNOWN PARTY | |
| 04/26/2012 | 28087 / 4082 Pages: 1 | LIS PENDENS | BK:28087 PG:4082 |
| 04/25/2012 | | CERTIFICATE REGARDING ORIGINAL NOTE | |
| 04/25/2012 | | CIVIL COVER | |
| 04/25/2012 | | SUMMONS ISSUED | DN01 DN02 |
| 04/25/2012 | | COMPLAINT | |
| 04/25/2012 | | FILING FEE FOR MTGE FRCLS | $ 1906.00 |

BACK TO SEARCH RESULTS      ALL PARTIES      START A NEW SEARCH

Civil Search Home | Civil Court Information | Email | Login
Home | Privacy Statement | Disclaimer | Contact Us | About Us



2008 Clerk of the Court. All Rights reserved.

S0142976

**<u>Exhibit 2-P</u>**

**2014 Bankruptcy Petition**

B1 (Official Form 1)(04/13)

| UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF FLORIDA | VOLUNTARY PETITION |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**Harris, Stephanie** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names):<br><br>**Stephanie Tillen** | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN<br>(if more than one, state all): ▮▮▮ | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN<br>(if more than one, state all): |
| Street Address of Debtor (No. and Street, City, and State):<br>▮▮▮▮▮▮▮<br>ZIP CODE    **33139-3313** | Street Address of Joint Debtor (No. and Street, City, and State):<br>ZIP CODE |
| County of Residence or of the Principal Place of Business:<br>**Miami-Dade** | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):<br>ZIP CODE | Mailing Address of Joint Debtor (if different from street address):<br>ZIP CODE |
| Location of Principal Assets of Business Debtor (if different from street address above):<br>ZIP CODE | |

| Type of Debtor<br>(Form of Organization)<br>(Check **one** box.) | Nature of Business<br>(Check **one** box.) | Chapter of Bankruptcy Code Under Which<br>the Petition is Filed (Check **one** box.) |
|---|---|---|
| [x] Individual (includes Joint Debtors)<br>*See Exhibit D on page 2 of this form.*<br>[ ] Corporation (includes LLC and LLP)<br>[ ] Partnership<br>[ ] Other (If debtor is not one of the above entities, check this box and state type of entity below.) | [ ] Health Care Business<br>[ ] Single Asset Real Estate as defined in 11 U.S.C. § 101(51B)<br>[ ] Railroad<br>[ ] Stockbroker<br>[ ] Commodity Broker<br>[ ] Clearing Bank<br>[ ] Other | [ ] Chapter 7        [ ] Chapter 15 Petition for Recognition of a Foreign Main Proceeding<br>[ ] Chapter 9<br>[ ] Chapter 11<br>[ ] Chapter 12      [ ] Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding<br>[x] Chapter 13 |

| Chapter 15 Debtors | Tax-Exempt Entity<br>(Check box, if applicable.) | Nature of Debts<br>(Check **one** box.) |
|---|---|---|
| Country of debtor's center of main interests:<br><br>Each country in which a foreign proceeding by, regarding, or against debtor is pending: | [ ] Debtor is a tax-exempt organization under title 26 of the United States Code (the Internal Revenue Code). | [x] Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."    [ ] Debts are primarily business debts. |

| Filing Fee (Check one box.) | Chapter 11 Debtors |
|---|---|
| [x] Full Filing Fee attached.<br><br>[ ] Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.<br><br>[ ] Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B. | Check one box:<br>[ ] Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).<br>[ ] Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).<br>Check if:<br>[ ] Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,490,925 (*amount subject to adjustment on 4/01/16 and every three years thereafter*).<br>- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -<br>Check all applicable boxes:<br>[ ] A plan is being filed with this petition.<br>[ ] Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b). |

| Statistical/Administrative Information | THIS SPACE IS FOR COURT USE ONLY |
|---|---|
| [x] Debtor estimates that funds will be available for distribution to unsecured creditors.<br>[ ] Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors. | |

Estimated Number of Creditors

| [x] 1-49 | [ ] 50-99 | [ ] 100-199 | [ ] 200-999 | [ ] 1,000-5,000 | [ ] 5,001-10,000 | [ ] 10,001-25,000 | [ ] 25,001-50,000 | [ ] 50,001-100,000 | [ ] Over 100,000 |
|---|---|---|---|---|---|---|---|---|---|

Estimated Assets

| [ ] $0 to $50,000 | [ ] $50,001 to $100,000 | [ ] $100,001 to $500,000 | [ ] $500,001 to $1 million | [ ] $1,000,001 to $10 million | [ ] $10,000,001 to $50 million | [ ] $50,000,001 to $100 million | [ ] $100,000,001 to $500 million | [ ] $500,000,001 to $1 billion | [ ] More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|

Estimated Liabilities

| [ ] $0 to $50,000 | [ ] $50,001 to $100,000 | [ ] $100,001 to $500,000 | [x] $500,001 to $1 million | [ ] $1,000,001 to $10 million | [ ] $10,000,001 to $50 million | [ ] $50,000,001 to $100 million | [ ] $100,000,001 to $500 million | [ ] $500,000,001 to $1 billion | [ ] More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|

| B1 (Official Form 1) (04/13) | | Name of Debtor(s): **Harris, Stephanie** |
|---|---|---|

| **Voluntary Petition** | |
|---|---|
| *(This page must be completed and filed in every case.)* | |

**All Prior Bankruptcy Cases Filed Within Last 8 Years** (If more than two, attach additional sheet.)

| Location Where Filed: **Southern District of Florida Miami-Division** | Case Number: **10-11746-AJC** | Date Filed: **January 27, 2010** |
|---|---|---|
| Location Where Filed: | Case Number: | Date Filed: |

**Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet.)

| Name of Debtor:    **NONE** | Case Number: | Date Filed: |
|---|---|---|
| District: | Relationship: | Judge: |

| **Exhibit A** | **Exhibit B** |
|---|---|
| (To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.) | (To be completed if debtor is an individual whose debts are primarily consumer debts.)<br><br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I have delivered to the debtor the notice required by 11 U.S.C. § 342(b). |
| ☐   Exhibit A is attached and made a part of this petition. | X   <u>s/SamuelS.Sorota        February 11, 2014</u><br>        Signature of Attorney for Debtor(s)        (Date) |

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐   Yes, and Exhibit C is attached and made a part of this petition.

☐   No.

**Exhibit D**

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

☒   Exhibit D, completed and signed by the debtor, is attached and made a part of this petition.

If this is a joint petition:

☐   Exhibit D, also completed and signed by the joint debtor, is attached and made a part of this petition.

**Information Regarding the Debtor - Venue**
(Check any applicable box.)

☒   Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐   There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐   Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

**Certification by a Debtor Who Resides as a Tenant of Residential Property**
(Check all applicable boxes.)

☐   Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

_____
(Name of landlord that obtained judgment)

_____
(Address of landlord)

☐   Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐   Debtor has included with this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐   Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)).

Case 4-13661-LMI   Doc 2   Filed 02/12/14   Page 13 of 38

B1 (Official Form 1) (04/13)

| Voluntary Petition | Name of Debtor(s): **Harris, Stephanie** |
|---|---|
| *(This page must be completed and filed in every case.)* | |

| Signatures | |
|---|---|
| **Signature(s) of Debtor(s) (Individual/Joint)** | **Signature of a Foreign Representative** |

<table>
<tr>
<td>

I declare under penalty of perjury that the information provided in this petition is true and correct.

[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.

[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X **s/Stephanie Harris**
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Signature of Debtor      **Stephanie Harris**

X
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Signature of Joint Debtor

Telephone Number (if not represented by attorney)
**February 11, 2014**
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Date

</td>
<td>

I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only **one** box.)

☐  I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. § 1515 are attached.

☐  Pursuant to 11 U.S.C. § 1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

X
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
(Signature of Foreign Representative)

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
(Printed Name of Foreign Representative)

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Date

</td>
</tr>
<tr>
<td>

**Signature of Attorney***

X **s/SamuelS.Sorota**
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Signature of Attorney for Debtor(s)
**Samuel S. Sorota, Esq.**
Printed Name of Attorney for Debtor(s)
**Law Office of Samuel S. Sorota**
Firm Name

**801 NE 167th Street, Suite 308**
**North Miami Beach , Florida 33162**
Address
**(305) 652-7777**
Telephone Number
**February 11, 2014**
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Date

*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect.

</td>
<td rowspan="2">

**Signature of Non-Attorney Bankruptcy Petition Preparer**

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Printed Name and title, if any, of Bankruptcy Petition Preparer

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Social-Security number (If the bankruptcy petition preparer is not an individual, state the Social-Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.) (Required by 11 U.S.C. § 110.)

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Address

X
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Signature

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Date

Signature of bankruptcy petition preparer or officer, principal, responsible person, or partner whose Social-Security number is provided above.

Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual.

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.*

</td>
</tr>
<tr>
<td>

**Signature of Debtor (Corporation/Partnership)**

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests the relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Signature of Authorized Individual

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Printed Name of Authorized Individual

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Title of Authorized Individual

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Date

</td>
</tr>
</table>

Exhibit 2  Page 3  Page 3

B 1D (Official Form 1, Exhibit D) (12/09)

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA

In re Stephanie  Harris _____    Case No. _____
                            Debtor

## EXHIBIT D - INDIVIDUAL DEBTOR'S STATEMENT OF COMPLIANCE WITH CREDIT COUNSELING REQUIREMENT

**Warning: You must be able to check truthfully one of the five statements regarding credit counseling listed below. If you cannot do so, you are not eligible to file a bankruptcy case, and the court can dismiss any case you do file. If that happens, you will lose whatever filing fee you paid, and your creditors will be able to resume collection activities against you. If your case is dismissed and you file another bankruptcy case later, you may be required to pay a second filing fee and you may have to take extra steps to stop creditors' collection activities.**

*Every individual debtor must file this Exhibit D. If a joint petition is filed, each spouse must complete and file a separate Exhibit D. Check one of the five statements below and attach any documents as directed.*

☒ 1. Within the 180 days **before the filing of my bankruptcy case**, I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, and I have a certificate from the agency describing the services provided to me. *Attach a copy of the certificate and a copy of any debt repayment plan developed through the agency.*

❑ 2. Within the 180 days **before the filing of my bankruptcy case**, I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, but I do not have a certificate from the agency describing the services provided to me. *You must file a copy of a certificate from the agency describing the services provided to you and a copy of any debt repayment plan developed through the agency no later than 15 days after your bankruptcy case is filed.*

B 1D (Official Form 1, Exh. D) (12/09) – Cont.

❒ 3. I certify that I requested credit counseling services from an approved agency but was unable to obtain the services during the five days from the time I made my request, and the following exigent circumstances merit a temporary waiver of the credit counseling requirement so I can file my bankruptcy case now.

**If your certification is satisfactory to the court, you must still obtain the credit counseling briefing within the first 30 days after you file your bankruptcy petition and promptly file a certificate from the agency that provided the counseling, together with a copy of any debt management plan developed through the agency. Failure to fulfill these requirements may result in dismissal of your case. Any extension of the 30-day deadline can be granted only for cause and is limited to a maximum of 15 days. Your case may also be dismissed if the court is not satisfied with your reasons for filing your bankruptcy case without first receiving a credit counseling briefing.**

❒ 4. I am not required to receive a credit counseling briefing because of:

❒ Incapacity. (Defined in 11 U.S.C. § 109(h)(4) as impaired by reason of mental illness or mental deficiency so as to be incapable of realizing and making rational decisions with respect to financial responsibilities.);
❒ Disability. (Defined in 11 U.S.C. § 109(h)(4) as physically impaired to the extent of being unable, after reasonable effort, to participate in a credit counseling briefing in person, by telephone, or through the Internet.**);**
❒ Active military duty in a military combat zone.

❒ 5. The United States trustee or bankruptcy administrator has determined that the credit counseling requirement of 11 U.S.C. ' 109(h) does not apply in this district**.**

**I certify under penalty of perjury that the information provided above is true and correct.**

Signature of Debtor:  s/Stephanie  Harris

Date: February 11, 2014

2

B 6 Summary (Official Form 6 - Summary) (12/13)

# UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF FLORIDA

In re

**Stephanie  Harris**_____,
          *Debtor*

Case No. _____

Chapter **13**_____

# SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each.  Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided.  Add the amounts from Schedules A and B to determine the total amount of the debtor's assets.  Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities.  Individual debtors also must complete the "Statistical Summary of Certain Liabilities and Related Data" if they file a case under chapter 7, 11, or 13.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | YES | 1 | $    599,600.00 | | |
| B - Personal Property | YES | 3 | $ 2,004,559.00 | | |
| C - Property Claimed as Exempt | YES | 1 | | | |
| D - Creditors Holding Secured Claims | YES | 1 | | $    847,022.00 | |
| E - Creditors Holding Unsecured Priority Claims (Total of Claims on Schedule E) | YES | 2 | | $    0.00 | |
| F - Creditors Holding Unsecured Nonpriority Claims | YES | 2 | | $    1,558.00 | |
| G - Executory Contracts and Unexpired Leases | YES | 1 | | | |
| H - Codebtors | YES | 1 | | | |
| I - Current Income of Individual Debtor(s) | YES | 3 | | | $    4,279.00 |
| J - Current Expenditures of Individual Debtors(s) | YES | 3 | | | $    1,010.00 |
| TOTAL | | 18 | $ 2,604,159.00 | $    848,580.00 | |

B 6 Summary (Official Form 6 - Summary) (12/13)

# UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF FLORIDA

In re                                                      Case No. _____

**Stephanie  Harris**_____,
        *Debtor*                                   Chapter **13**_____

## STATISTICAL SUMMARY OF CERTAIN LIABILITIES AND RELATED DATA (28 U.S.C. § 159)

        If you are an individual debtor whose debts are primarily consumer debts, as defined in § 101(8) of the Bankruptcy Code (11 U.S.C. § 101(8)), filing a case under chapter 7, 11 or 13, you must report all information requested below.

        ☐ Check this box if you are an individual debtor whose debts are NOT primarily consumer debts.  You are not required to report any information here.

**This information is for statistical purposes only under 28 U.S.C. § 159.**

**Summarize the following types of liabilities, as reported in the Schedules, and total them.**

| Type of Liability | Amount |
|---|---|
| Domestic Support Obligations (from Schedule E) | $              0.00 |
| Taxes and Certain Other Debts Owed to Governmental Units (from Schedule E) | $              0.00 |
| Claims for Death or Personal Injury While Debtor Was Intoxicated (from Schedule E) (whether disputed or undisputed) | $              0.00 |
| Student Loan Obligations (from Schedule F) | $              0.00 |
| Domestic Support, Separation Agreement, and Divorce Decree Obligations Not Reported on Schedule E | $ |
| Obligations to Pension or  Profit-Sharing, and Other Similar Obligations (from Schedule F) | $              0.00 |
| TOTAL | $              0.00 |

**State the following:**

| | |
|---|---|
| Average Income  (from Schedule I, Line 12) | $          4,279.00 |
| Average Expenses (from Schedule J, Line 22) | $          1,010.00 |
| Current Monthly Income (from Form 22A Line 12; **OR**, Form 22B Line 11; **OR**, Form 22C Line 20 ) | $          2,800.00 |

**State the following:**

| | | |
|---|---|---|
| 1.  Total from Schedule D, "UNSECURED PORTION, IF ANY" column | | $      276,310.82 |
| 2.  Total from Schedule E, "AMOUNT ENTITLED TO PRIORITY" column. | $              0.00 | |
| 3.  Total from Schedule E, "AMOUNT NOT ENTITLED TO PRIORITY, IF ANY" column | | $              0.00 |
| 4.  Total from Schedule F | | $          1,558.00 |
| 5.  Total of non-priority unsecured debt (sum of 1, 3, and 4) | | $      277,868.82 |

B6A (Official Form 6A) (12/07)

In re **Stephanie Harris,**                                    Case No. _____
_____
            **Debtor**                                                                **(If known)**

# SCHEDULE A - REAL PROPERTY

| DESCRIPTION AND LOCATION OF PROPERTY | NATURE OF DEBTOR'S INTEREST IN PROPERTY | Husband, Wife, Joint, or Community | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION | AMOUNT OF SECURED CLAIM |
|---|---|---|---|---|
| Primary Residence - Condominium<br><br>1525 Lenox Ave, Apt. 1, Miami Beach, Florida 33139 - Folio # 02-3234-151-0010 | Fee Simple Ownership | | $413,240.00 | $551,395.82 |
| Secondary Residence - Condominium<br><br>1525 Lenox Ave, Apt. 2, Miami Beach, Florida 33139 - Folio # 02-3234-151-0020 | Fee Simple Ownership | | $186,360.00 | $295,627.00 |
| | | Total ▶ | $599,600.00 | |

(Report also on Summary of Schedules.)

B 6B  (Official Form 6B) (12/2007)

In re **Stephanie  Harris,** _____      Case No. _____
                           **Debtor**                                                                   (If known)

# SCHEDULE B - PERSONAL PROPERTY

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | Husband, Wife, Joint, Or Community | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 1. Cash on hand. | X | | | |
| 2. Checking, savings or other financial accounts, certificates of deposit or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | Regions Bank<br>Miami Beach, Fl.<br>Checking Acct. # ▮ | | $0.00 |
| | | Elitenetspend<br>Miami Beach, Fl.<br>Checking Acct. # ▮ | | $0.00 |
| 3. Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4. Household goods and furnishings, including audio, video, and computer equipment. | | 2 armoires (7 years old - $300), 2 sofas (6 years old - $500), 1 dining table (6 years old - $200), 4 chairs ( 6 years old - 200), 1  bed (5 years old - $500), 1 bedroom ches ($200), patio furniture ($200), 24" Tv (old - $50), Dell laptop ($249), radio ($10). | | $2,409.00 |
| 5. Books; pictures and other art objects; antiques; stamp, coin, record, tape, compact disc, and other collections or collectibles. | | 3 pictures - reproductions ($600), paintings ($200) | | $800.00 |
| 6. Wearing apparel. | | Every day clothing. | | $100.00 |
| 7. Furs and jewelry. | | Diamond earrings. | | $1,000.00 |
| 8. Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9. Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |
| 10. Annuities. Itemize and name each issuer. | X | | | |

B 6B  (Official Form 6B) (12/2007)

In re Stephanie  Harris,                                                                  Case No. _____
_____
                                    Debtor                                                                              (If known)

# SCHEDULE B - PERSONAL PROPERTY

(Continuation Sheet)

| | | | | |
|---|---|---|---|---|
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | X | | | |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 16. Accounts receivable. | X | | | |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | X | | | |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A – Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | | Lincoln Mews Condo Assoc. Case No. 2011-27179 CA-02 Miami Dade Circuit Court, Florida  Final Judgment | | $500,000.00 |
| | | Chapter 11 - Residential Capital LLC. Case No. 12-12020 (MG) Southern District of New York | | $1,500,000.00 |
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |

B 6B  (Official Form 6B) (12/2007)

In re **Stephanie  Harris,**_____          Case No. _____
                        **Debtor**                                          **(If known)**

# SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| | | | |
|---|---|---|---|
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | X | | |
| 26. Boats, motors, and accessories. | X | | |
| 27. Aircraft and accessories. | X | | |
| 28. Office equipment, furnishings, and supplies. | X | | |
| 29. Machinery, fixtures, equipment, and supplies used in business. | X | | |
| 30. Inventory. | X | | |
| 31. Animals. | | French bulldog. | $250.00 |
| 32. Crops - growing or harvested. Give particulars. | X | | |
| 33. Farming equipment and implements. | X | | |
| 34. Farm supplies, chemicals, and feed. | X | | |
| 35. Other personal property of any kind not already listed. Itemize. | X | | |

_2_ continuation sheets attached        Total ▶        $2,004,559.00
(Include amounts from any continuation
sheets attached. Report total also on
Summary of Schedules.)

Case 24-10003-LMI    Doc 1    Filed 02/12/14    Page 12 of 38

B6C (Official Form 6C) (04/13)

In re  Stephanie  Harris,                                                                    Case No. _____
                        **Debtor**                                                                                      **(If known)**

# SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

Debtor claims the exemptions to which debtor is entitled under:          ☒ Check if debtor claims a homestead exemption that exceeds
(Check one box)                                                                                           $155,675.*
☐ 11 U.S.C. § 522(b)(2)
☐ 11 U.S.C. § 522(b)(3)

| DESCRIPTION OF PROPERTY | SPECIFY LAW PROVIDING EACH EXEMPTION | VALUE OF CLAIMED EXEMPTION | CURRENT VALUE OF PROPERTY WITHOUT DEDUCTING EXEMPTION |
|---|---|---|---|
| Primary Residence - Condominium | Fla. Const., Art. 10, §4(a)(1), FSA §§ 222.01, 222.02 | $413,240.00 | $413,240.00 |
| Every day clothing. | Art. 10 § 4(a)(2), FSA § 222.061 | $100.00 | $100.00 |
| Diamond earrings. | Art. 10 § 4(a)(2), FSA § 222.061 | $900.00 | $1,000.00 |

*  *Amount subject to adjustment on 4/01/16, and every three years thereafter with respect to cases commenced on or after the date of
adjustment.*

B 6D (Official Form 6D) (12/07)

In re __Stephanie  Harris_____,    Case No. _____
                     **Debtor**                                                    **(If known)**

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

☐    Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE AND AN ACCOUNT NUMBER (*See Instructions Above.*) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED, NATURE OF LIEN , AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| ACCOUNT NO. ▊<br>**Calchas LLC.**<br>**PO Box 25430**<br>**Portland, OR 97298** | | | **2007**<br>**First Mortgage**<br><br>**1525 Lenox Ave,**<br>**Unit 1**<br>**Miami Beach,**<br>**Florida 33139**<br>VALUE $  **$413,240.00** | | | | **$551,395.00** | **$138,155.00** |
| Additional Contacts for Calchas LLC. (▊): | | | | | | | | |
| **Pascale Achille, Esq.**<br>**Panza, Maurer & Maynard,**<br>**P.LA**<br>**3600 North Federal**<br>**Highway, 3rd Floor**<br>**Fort Lauderdale, FL**<br>**33308-6225** | | | | | | | | |
| ACCOUNT NO. ▊<br>**Ocwen Loan Servicing,**<br>**LLC.**<br>**3451 Hammond Ave.**<br>**PO Box 780**<br>**Waterloo, IA 50704-0780** | | | **First Mortgage**<br><br>**1525 Lenox Ave,**<br>**Apt. 2, Miami Beach,**<br>**Florida 33139 - Folio**<br>**# 02-3234-151-0020**<br>VALUE $  **$186,360.00** | | | | **$295,627.00** | **$138,155.82** |
| Additional Contacts for Ocwen Loan Servicing, LLC. (▊): | | | | | | | | |
| **Brock & Scott, PLLC**<br>**1501 NW 49 Street, Suite**<br>**200**<br>**Fort Lauderdale, FL 33309** | | | | | | | | |

| __0__ continuation sheets attached | Subtotal ▶<br>(Total of this page) | $    **847,022.00** | $    **276,310.82** |
|---|---|---|---|
| | Total ▶<br>(Use only on last page) | $    **847,022.00** | $    **276,310.82** |
| | | (Report also on Summary of Schedules.) | (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.) |

B 6E (Official Form 6E) (04/13)

In re  <u>Stephanie  Harris</u>                                              ,        Case No._____

                                        Debtor                                                              *(if known)*

# SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

☐  Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

TYPES OF PRIORITY CLAIMS (Check the appropriate box(es) below if claims in that category are listed on the attached sheets.)

☐  **Domestic Support Obligations**

   Claims for domestic support that are owed to or recoverable by a spouse, former spouse, or child of the debtor, or the parent, legal guardian, or responsible relative of such a child, or a governmental unit to whom such a domestic support claim has been assigned to the extent provided in 11 U.S.C. § 507(a)(1).

☐  **Extensions of credit in an involuntary case**

   Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief. 11 U.S.C. § 507(a)(3).

☐  **Wages, salaries, and commissions**

   Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $12,475* per person earned within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(4).

☐  **Contributions to employee benefit plans**

   Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(5).

☐  **Certain farmers and fishermen**

   Claims of certain farmers and fishermen, up to $6,150* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(6).

☐  **Deposits by individuals**

   Claims of individuals up to $2,775* for deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered or provided.  11 U.S.C. § 507(a)(7).

☐  **Taxes and Certain Other Debts Owed to Governmental Units**

   Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C. § 507(a)(8).

☐  **Commitments to Maintain the Capital of an Insured Depository Institution**

   Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution.  11 U.S.C. § 507 (a)(9).

☐  **Claims for Death or Personal Injury While Debtor Was Intoxicated**

   Claims for death or personal injury resulting from the operation of a motor vehicle or vessel while the debtor was intoxicated from using alcohol, a drug, or another substance.  11 U.S.C. § 507(a)(10).

*\* Amounts are subject to adjustment on 4/01/16, and every three years thereafter with respect to cases commenced on or after the date of adjustment.*

<u>    0    </u>  continuation sheets attached

Case 24-13913-LMI    Doc 1    Filed 12/12/14    Page 15 of 38

B 6E (Official Form 6E) (04/13) – Cont.

In re **Stephanie  Harris**_____,                    Case No. _____
                        **Debtor**                                                                        **(if known)**

# SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS
(Continuation Sheet)

**Type of Priority for Claims Listed on This Sheet**

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER *(See instructions above.)* | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM | AMOUNT ENTITLED TO PRIORITY | AMOUNT NOT ENTITLED TO PRIORITY, IF ANY |
|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |
| Sheet no. **1** of **0** continuation  sheets attached to Schedule of Creditors Holding Priority Claims |  |  |  |  |  | Subtotals▶ (Totals of this page) | $          **0.00** | $          0.00 | **$0.00** |
|  |  |  |  |  |  | Total▶ (Use only on last page of the completed Schedule E.  Report also on the Summary of Schedules.) | $ |  |  |
|  |  |  |  |  |  | Totals▶ (Use only on last page of the completed Schedule E.  If applicable, report also on the Statistical Summary of Certain Liabilities and Related Data.) |  | $ | $ |

B 6F (Official Form 6F) (12/07)

In re **Stephanie Harris** _____ , Case No. _____
                                                                                    (if known)
          Debtor

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

☐ Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER *See instructions above.* | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.  ████<br><br>**Capio Partners Llc**<br>**2222 Texoma Pkwy Ste 150**<br>**Sherman, TX 75090** | | | **09/2013**<br><br>**Collection**<br>**Ref:  North West Medical Center** | | | | **$1,011.00** |
| ACCOUNT NO.  ████<br><br>**Credit Collections Svc**<br>**Po Box 9134**<br>**Needham, MA 02494** | | | **Loan -Collection**<br>**Ref:  Infinity Auto Insurance Co.** | | | | **$188.00** |
| ACCOUNT NO.  ████<br><br>**Mrs Bpo Llc**<br>**1930 Olney Ave**<br>**Cherry Hill, NJ 08003** | | | **09/2013**<br><br>**Collection**<br>**Ref:  AT & T** | | | | **$79.00** |
| ACCOUNT NO.  ████<br><br>**Nrs/receivia**<br>**2810 Walker Rd**<br>**Chattanooga, TN 37421** | | | **02/2013**<br><br>**Collection**<br>**Ref:  Sheridan Healthcorp. Inc.** | | | | **$53.00** |

___**1**___ continuation sheets attached

Subtotal► $ **1,331.00**

Total► $ _____
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data.)

B 6F (Official Form 6F) (12/07) - Cont.

In re __Stephanie  Harris_____,          Case No. _____
           **Debtor**                                                                  **(if known)**

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| **ACCOUNT NO.** ▮▮▮ <br><br> **Southwest Credit Syste** <br> **5910 W Plano Pkwy** <br> **Plano, TX 75093** | | | **UnknownLoanType** | | | | **$227.00** |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Sheet no.__1__ of __1__ continuation sheets attached                                    Subtotal▶ | $ | **227.00**
to Schedule of Creditors Holding Unsecured
Nonpriority Claims

Total▶ | $ | **1,558.00**
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical
Summary of Certain Liabilities and Related Data.)

Case 04-19939-LMi   Doc 1   Filed 02/12/14   Page 18 of 38

B 6G (Official Form 6G) (12/07)

In re  **Stephanie Harris,** _____     Case No. _____
                             **Debtor**                                          **(if known)**

# SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

☒ Check this box if debtor has no executory contracts or unexpired leases.

| NAME AND MAILING ADDRESS, INCLUDING ZIP CODE, OF OTHER PARTIES TO LEASE OR CONTRACT. | DESCRIPTION OF CONTRACT OR LEASE AND NATURE OF DEBTOR'S INTEREST. STATE WHETHER LEASE IS FOR NONRESIDENTIAL REAL PROPERTY. STATE CONTRACT NUMBER OF ANY GOVERNMENT CONTRACT. |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |

B 6H (Official Form 6H) (12/07)

In re **Stephanie Harris,**  _____    Case No. _____
                    **Debtor**                                        **(if known)**

# SCHEDULE H - CODEBTORS

☒ Check this box if debtor has no codebtors.

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

**Fill in this information to identify your case:**

Debtor 1    **Stephanie  Harris**

First Name     Middle Name     Last Name

Debtor 2
(Spouse, if filing)   First Name     Middle Name     Last Name

United States Bankruptcy Court for: **Southern District of Florida**

Case number
(If known)

Check if this is:

☐ An amended filing

☐ A supplement showing post-petition
chapter 13 income as of the following date:

_____
MM / DD / YYYY

Official Form B 6I

# Schedule I: Your Income

12/13

Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:**   **Describe Employment**

1. **Fill in your employment information.**

If you have more than one job, attach a separate page with information about additional employers.

Include part-time, seasonal, or self-employed work.

Occupation may Include student or homemaker, if it applies.

| | Debtor 1 | Debtor 2 or non-filing spouse |
|---|---|---|
| Employment status | ☒ Employed ☐ Not employed | ☐ Employed ☐ Not employed |
| Occupation | **Real Estate Broker** | |
| Employer's name | **Stephanie Harris / Self Employed** | |
| Employer's address | **1525 Lenox Ave, Unit 1** Number  Street | Number  Street |
| | **Miami Beach, Fl 33119** City  State  ZIP Code | City  State  ZIP Code |
| How long employed there? | **30 years** | |

**Part 2:**   **Give Details About Monthly Income**

Estimate monthly income as of the date you file this form. If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

| | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| 2. | **List monthly gross wages, salary, and commissions** (before all payroll deductions). If not paid monthly, calculate what the monthly wage would be. | 2. $ 0.00 | $ 0.00 |
| 3. | **Estimate and list monthly overtime pay.** | 3. + $ 0.00 | + $ 0.00 |
| 4. | **Calculate gross income.** Add line 2 + line 3. | 4. $ 0.00 | $ 0.00 |

Debtor 1    **Stephanie  Harris**

First Name    Middle Name    Last Name

Case number (if known)_____

|  |  | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| Copy line 4 here ......................................➔ | 4. | $ 0.00 | $ 0.00 |

5. List all payroll deductions:

| | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| 5a. Tax, Medicare, and Social Security deductions | 5a. | $ 0.00 | $ 0.00 |
| 5b. Mandatory contributions for retirement plans | 5b. | $ 0.00 | $ 0.00 |
| 5c. Voluntary contributions for retirement plans | 5c. | $ 0.00 | $ 0.00 |
| 5d. Required repayments of retirement fund loans | 5d. | $ 0.00 | $ 0.00 |
| 5e. Insurance | 5e. | $ 0.00 | $ 0.00 |
| 5f. Domestic support obligations | 5f. | $ 0.00 | $ 0.00 |
| 5g. Union dues | 5g. | $ 0.00 | $ 0.00 |
| 5h. Other deductions. Specify: _____ | 5h. | + $ 0.00 | + $ 0.00 |
| 6. Add the payroll deductions. Add lines 5a + 5b + 5c + 5d + 5e +5f + 5g +5h. | 6. | $ 0.00 | $ 0.00 |
| 7. Calculate total monthly take-home pay. Subtract line 6 from line 4. | 7. | $ 0.00 | $ 0.00 |

8. List all other income regularly received:

| | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| 8a. Net income from rental property and from operating a business, profession, or farm. Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income. | 8a. | $ 1,300.00 | $ 0.00 |
| 8b. Interest and dividends | 8b. | $ 0.00 | $ 0.00 |
| 8c. Family support payments that you, a non-filing spouse, or a dependent regularly receive. Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement. | 8c. | $ 0.00 | $ 0.00 |
| 8d. Unemployment compensation | 8d. | $ 0.00 | $ 0.00 |
| 8e. Social Security | 8e. | $ 1,479.00 | $ 0.00 |
| 8f. Other government assistance that you regularly receive. Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies. Specify: _____ | 8f. | $ 0.00 | $ 0.00 |
| 8g. Pension or retirement income | 8g. | $ 0.00 | $ 0.00 |
| 8h. Other monthly income. Specify: **See Attachment 1** | 8h. | + $ 1,500.00 | + $ 0.00 |
| 9. Add all other income. Add lines 8a + 8b + 8c + 8d + 8e + 8f +8g + 8h. | 9. | $ 4,279.00 | $ 0.00 |
| 10. Calculate monthly income. Add line 7 + line 9. Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse. | 10. | $ 4,279.00 + $ 0.00 = $ 4,279.00 | |

11. State all other regular contributions to the expenses that you list in *Schedule J.*

Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.

Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in *Schedule J.*

Specify: _____    11. + $ 0.00

12. Add the amount in the last column of line 10 to the amount in line 11. The result is the combined monthly income.
Write that amount on the *Summary of Schedules* and *Statistical Summary of Certain Liabilities and Related Data,* if it applies    12. $ 4,279.00

**Combined monthly income**

13. Do you expect an increase or decrease within the year after you file this form?

☒ No.
☐ Yes. Explain:

# Addendum

**Attachment 1**

  **Description: Dog training .**
  **Debtor's Amount: $1,500.00**

**UNITED STATES BANKRUPTCY COURT**
**Southern District of Florida**

In re: **Stephanie  Harris**

Case No. _____

Chapter  **13**

# BUSINESS INCOME AND EXPENSES

FINANCIAL REVIEW OF THE DEBTOR'S BUSINESS (NOTE:  ONLY INCLUDE information directly related to the business operation.)

PART A - GROSS BUSINESS INCOME FOR PREVIOUS 12 MONTHS:

    1.  Gross Income For 12 Months Prior to Filing:      $ **18,000.00**

PART B - ESTIMATED AVERAGE FUTURE GROSS MONTHLY INCOME:

    2.  Gross Monthly Income:      $ **1,500.00**

PART C - ESTIMATED FUTURE MONTHLY EXPENSES:

    3.  Net Employee Payroll (Other Than Debtor)      $ **0.00**
    4.  Payroll Taxes      **0.00**
    5.  Unemployment Taxes      **0.00**
    6.  Worker's Compensation      **0.00**
    7.  Other Taxes      **0.00**
    8.  Inventory Purchases (Including raw  materials)      **0.00**
    9.  Purchase of Feed/Fertilizer/Seed/Spray      **0.00**
    10.  Rent (Other than debtor's principal residence)      **0.00**
    11.  Utilities      **0.00**
    12.  Office Expenses and Supplies      **0.00**
    13.  Repairs and Maintenance      **0.00**
    14.  Vehicle Expenses      **0.00**
    15.  Travel and Entertainment      **0.00**
    16.  Equipment Rental and Leases      **0.00**
    17.  Legal/Accounting/Other Professional Fees      **0.00**
    18.  Insurance      **0.00**
    19.  Employee Benefits (e.g., pension, medical, etc.)      **0.00**
    20.  Payments to Be Made Directly By Debtor to Secured Creditors For
          Pre-Petition Business Debts (Specify):

    21.  Other (Specify):

    22.  Total Monthly Expenses (Add items 3 - 21)      $ **0.00**

PART D - ESTIMATED AVERAGE NET MONTHLY INCOME:

    23.  AVERAGE NET MONTHLY INCOME (Subtract Item 22 from Item 2)      $ **1,500.00**

**Fill in this information to identify your case:**

Debtor 1  **Stephanie  Harris**
First Name          Middle Name          Last Name

Debtor 2
(Spouse, if filing)  First Name          Middle Name          Last Name

United States Bankruptcy Court for:  **Southern District of Florida**

Case number
(If known)

Check if this is:

☐ An amended filing

☐ A supplement showing post-petition chapter 13
expenses as of the following date:

_____
MM / DD / YYYY

☐ A separate filing for Debtor 2 because Debtor 2
maintains a separate household

Official Form B 6J

# Schedule J: Your Expenses                    12/13

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct
information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number
(if known). Answer every question.

## Part 1:    Describe Your Household

1. **Is this a joint case?**

   ☒ No. Go to line 2.
   ☐ Yes. **Does Debtor 2 live in a separate household?**

      ☒ No
      ☐ Yes. Debtor 2 must file a separate Schedule J.

2. **Do you have dependents?**     ☒ No

   Do not list Debtor 1 and         ☐ Yes. Fill out this information for
   Debtor 2.                             each dependent..........................

   Do not state the dependents'
   names.

| | Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
|---|---|---|---|
| | _____ | _____ | ☐ No  ☐ Yes |
| | _____ | _____ | ☐ No  ☐ Yes |
| | _____ | _____ | ☐ No  ☐ Yes |
| | _____ | _____ | ☐ No  ☐ Yes |
| | _____ | _____ | ☐ No  ☐ Yes |

3. **Do your expenses include
   expenses of people other than
   yourself and your dependents?**    ☒ No
                                       ☐ Yes

## Part 2:    Estimate Your Ongoing Monthly Expenses

Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report
expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J*, check the box at the top of the form and fill in the
applicable date.

Include expenses paid for with non-cash government assistance if you know the value
of such assistance and have included it on *Schedule I: Your Income* (Official Form B 6I).

| | | Your expenses |
|---|---|---|
| 4. | **The rental or home ownership expenses for your residence.** Include first mortgage payments and any rent for the ground or lot. | 4. $ **0.00** |
| | If not included in line 4: | |
| 4a. | Real estate taxes | 4a. $ **0.00** |
| 4b. | Property, homeowner's, or renter's insurance | 4b. $ **0.00** |
| 4c. | Home maintenance, repair, and upkeep expenses | 4c. $ **0.00** |
| 4d. | Homeowner's association or condominium dues | 4d. $ **0.00** |

| Debtor 1 | **Stephanie  Harris** | | Case number *(if known)* |
|---|---|---|---|
| | First Name | Middle Name | Last Name |

|  | | **Your expenses** |
|---|---|---|

5. **Additional mortgage payments for your residence**, such as home equity loans    5. $0.00

6. **Utilities:**

   6a.  Electricity, heat, natural gas    6a. $**300.00**

   6b.  Water, sewer, garbage collection    6b. $0.00

   6c.  Telephone, cell phone, Internet, satellite, and cable services    6c. $**100.00**

   6d.  Other. Specify: _____    6d. $0.00

7. **Food and housekeeping supplies**    7. $**400.00**

8. **Childcare and children's education costs**    8. $0.00

9. **Clothing, laundry, and dry cleaning**    9. $**10.00**

10. **Personal care products and services**    10. $0.00

11. **Medical and dental expenses**    11. $0.00

12. **Transportation.** Include gas, maintenance, bus or train fare.
   Do not include car payments.    12. $**200.00**

13. **Entertainment, clubs, recreation, newspapers, magazines, and books**    13. $0.00

14. **Charitable contributions and religious donations**    14. $0.00

15. **Insurance.**
   Do not include insurance deducted from your pay or included in lines 4 or 20.

   15a.  Life insurance    15a. $0.00

   15b.  Health insurance    15b. $0.00

   15c.  Vehicle insurance    15c. $0.00

   15d.  Other insurance. Specify:_____    15d. $0.00

16. **Taxes.** Do not include taxes deducted from your pay or included in lines 4 or 20.
   Specify: _____    16. $0.00

17. **Installment or lease payments:**

   17a.  Car payments for Vehicle 1    17a. $0.00

   17b.  Car payments for Vehicle 2    17b. $0.00

   17c.  Other. Specify:_____    17c. $_____

   17d.  Other. Specify:_____    17d. $_____

18. **Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5, *Schedule I, Your Income* (Official Form B 6I).**    18. $0.00

19. **Other payments you make to support others who do not live with you.**
   Specify:_____    19. $0.00

20. **Other real property expenses not included in lines 4 or 5 of this form or on *Schedule I: Your Income.***

   20a.  Mortgages on other property    20a. $0.00

   20b.  Real estate taxes    20b. $0.00

   20c.  Property, homeowner's, or renter's insurance    20c. $0.00

   20d.  Maintenance, repair, and upkeep expenses    20d. $0.00

   20e.  Homeowner's association or condominium dues    20e. $0.00

Case 14-19993-LMI    Doc 1    Filed 02/12/14    Page 26 of 38

| Debtor 1 | **Stephanie  Harris** | | | Case number (*if known*)_____ |
| | First Name | Middle Name | Last Name | |

21.  **Other**. Specify: _____    21.    +$ __0.00__

22.  **Your monthly expenses.** Add lines 4 through 21.
The result is your monthly expenses.    22.    $ __1,010.00__

23. **Calculate your monthly net income.**

23a.  Copy line 12 (*your combined monthly income*) from *Schedule I*.    23a.    $ __4,279.00__

23b.  Copy your monthly expenses from line 22 above.    23b.    – $ __1,010.00__

23c.  Subtract your monthly expenses from your monthly income.
The result is your *monthly net income*.    23c.    $ __3,269.00__

24. **Do you expect an increase or decrease in your expenses within the year after you file this form?**

For example, do you expect to finish paying for your car loan within the year or do you expect your
mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

❑ No.
❑ Yes.   | Explain here: |

B6 Declaration (Official Form 6 - Declaration) (12/07)

In re  **Stephanie  Harris**                                              ,        Case No. _____
_____
                        **Debtor**                                                                                    (if known)


# DECLARATION CONCERNING DEBTOR'S SCHEDULES


### DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR


   I declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of  __20__  sheets, and that they are true and correct to the best of my knowledge, information, and belief.


Date **February 11, 2014**                                    Signature: **s/Stephanie  Harris**_____
                                                                                                    **Stephanie  Harris** Debtor


Date _____        Signature: _____
                                                                                                              (Joint Debtor, if any)

                                                                      [If joint case, both spouses must sign.]

----------------------------------------------------------------------------------------------------------------------------------
#### DECLARATION AND SIGNATURE OF NON-ATTORNEY BANKRUPTCY PETITION PREPARER (See 11 U.S.C. § 110)

   I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and  have provided the debtor with a copy of this document and the notices and information  required under 11 U.S.C. §§ 110(b), 110(h) and 342(b); and, (3)  if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required by that section.

_____        _____
Printed or Typed Name and Title, if any,                              Social Security No.
of Bankruptcy Petition Preparer                                            *(Required by 11 U.S.C. § 110.)*

*If the bankruptcy petition preparer is not an individual, state the name, title (if any), address, and social security number of the officer, principal, responsible person, or partner who signs this document.*

_____
_____
_____
Address

X _____                _____
  Signature of Bankruptcy Petition Preparer                                     Date


Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document, unless the bankruptcy petition preparer is not an individual:

*If more than one person prepared this document, attach additional signed sheets conforming to the appropriate Official Form for each person.*

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both.  11 U.S.C. § 110; 18 U.S.C. § 156.*
----------------------------------------------------------------------------------------------------------------------------------

#### DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF A CORPORATION OR PARTNERSHIP


    I, the _____ [the president or other officer or an authorized agent of the corporation or a member or an authorized agent of the partnership ] of the _____ [corporation or partnership] named as debtor in this case, declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of _____ sheets (*Total shown on summary page plus 1*), and that they are true and correct to the best of my knowledge, information, and belief.


Date _____
                                                              Signature: _____

                                                                              _____
                                                                              [Print or type name of individual signing on behalf of debtor.]

*[An individual signing on behalf of a partnership or corporation must indicate position or relationship to debtor.]*
----------------------------------------------------------------------------------------------------------------------------------
*Penalty for making a false statement or concealing property:*  Fine of up to $500,000 or imprisonment for up to 5 years or both.  18 U.S.C. §§ 152 and 3571.

B 7 (Official Form 7) (04/13)

# UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF FLORIDA

In re: Stephanie  Harris _____    Case No _____
                    Debtor                                                      (if known)

## STATEMENT OF FINANCIAL AFFAIRS

**1. Income from employment or operation of business**

None
☐

State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business, including part-time activities either as an employee or in independent trade or business, from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the **two years** immediately preceding this calendar year. (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of the debtor's fiscal year.) If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE |
|---|---|

Debtor:
| Current Year (2014): | |
| $1,300.00 | Rental |
| $1,500.00 | Other |

| Previous Year 1 (2013): | |
| $33,876.00 | Rental & dog training |

| Previous Year 2 (2012): | |
| $33,876.00 | Rental & dog training |

Spouse:
| N/A | |

**2. Income other than from employment or operation of business**

None
☐

State the amount of income received by the debtor other than from employment, trade, profession, operation of the debtor's business during the **two years** immediately preceding the commencement of this case. Give particulars. If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE |
|---|---|

Debtor:
| Current Year (2014): | |
| $1,479.00 | Social Security |

| Previous Year 1 (2013): | |
| $17,424.00 | Social Security |
| $2,400.00 | Food Stamps |

12-12020-mg    Doc 7666-2    Filed 10/20/14    Entered 10/20/14 17:47:19    Exhibit 2
Case 14-19009-LM    Doc 2    Filed 12/12/14    Page 29 of 38
Pg 240 of 379

2

Previous Year 2 (2012):
$2,400.00                                    Food Stamps
$17,424.00                                   Social Security

Spouse:
N/A

---

### 3. Payments to creditors

*Complete a. or b., as appropriate, and c.*

None
☒
a. *Individual or joint debtor(s) with primarily consumer debts:* List all payments on loans, installment purchases of goods or services, and other debts to any creditor made within **90 days** immediately preceding the commencement of this case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $600. Indicate with an asterisk (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and credit counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

Debtor:
Spouse:
N/A

None
☒
b. *Debtor whose debts are not primarily consumer debts:* List each payment or other transfer to any creditor made within **90 days** immediately preceding the commencement of the case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $6,225[*]. If the debtor is an individual, indicate with an asterisk (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and credit counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments and other transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS/ TRANSFERS | AMOUNT PAID OR VALUE OF TRANSFERS | AMOUNT STILL OWING |
|---|---|---|---|

None
☒
c. *All debtors:* List all payments made within **one year** immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR AND RELATIONSHIP TO DEBTOR | DATE OF PAYMENT | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

---

[*] *Amount subject to adjustment on 4/01/16, and every three years thereafter with respect to cases commenced on or after the date of adjustment.*

12-12020-mg    Doc 7666-2    Filed 10/20/14    Entered 10/20/14 17:47:19    Exhibit 2
Case 24-19009-LMI    Doc 1    Filed 12/12/14    Page 30 of 38
Pg 241 of 379

3

**4. Suits and administrative proceedings, executions, garnishments and attachments**

None
☐

a. List all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately preceding the filing of this bankruptcy case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)separated and a joint petition is not filed.)

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
|---|---|---|---|
| Debtor: | | | |
| Deutsche Bank Trust Company as Truste vs Stephanie Harris, et al. Case Number: 2012-16257 CA | Foreclosure | Circuit Court Miami-Dade County, Florida | Pending |
| Calchas LLC vs. Stephanie Harris Case Number: 2012-28203 CA-58 | Foreclosure | Circuit Court Miami-Dade County, Florida | Pending |
| Stephanie Harris vs. Calchas LLC Case Number: 2013-22355 CA-01 | Contract & Indebtedness | Circuit Court Miami-Dade County, Florida | Pending |
| Stephanie Harris vs Lincoln Mews Condominium Association, Inc. Case Number: 2011-27179 CA-02 | Contract & Indebtedness | Circuit Court Miami-Dade County, Florida | Final Judgment |
| Bank of America vs. Stephanie Harris, et al. Case Number: 2010-41092 CA-04 | Foreclosure | Circuit Court Miami-Dade, Florida | Final Judgment |
| Spouse: N/A | | | |

None
☒

b. Describe all property that has been attached, garnished or seized under any legal or equitable process within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON FOR WHOSE BENEFIT PROPERTY WAS SEIZED | DATE OF SEIZURE | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

---

**5. Repossessions, foreclosures and returns**

None
☐

List all property that has been repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the seller, within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR OR SELLER | DATE OF REPOSSESSION, FORECLOSURE SALE, TRANSFER OR RETURN | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

Debtor:
Bank of America                     5/17/2013                1525 Lenox Ave, Unit 6, Miami Beach,
2900 N. Madera Road                                          Fl 33139
Simi Valley, CA 93065                                       Value: Unknown

Spouse:
N/A

---

**6. Assignments and receiverships**

None
☒

a. Describe any assignment of property for the benefit of creditors made within **120 days** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include any assignment by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

|  |  | TERMS OF |
| NAME AND ADDRESS | DATE OF | ASSIGNMENT |
| OF ASSIGNEE | ASSIGNMENT | OR SETTLEMENT |

None
☒

b. List all property which has been in the hands of a custodian, receiver, or court-appointed official within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

|  | NAME AND LOCATION |  | DESCRIPTION |
| NAME AND ADDRESS | OF COURT | DATE OF | AND VALUE |
| OF CUSTODIAN | CASE TITLE & NUMBER | ORDER | OF PROPERTY |

---

**7. Gifts**

None
☒

List all gifts or charitable contributions made within **one year** immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient. (Married debtors filing under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS | RELATIONSHIP |  | DESCRIPTION |
| OF PERSON | TO DEBTOR, | DATE | AND VALUE |
| OR ORGANIZATION | IF ANY | OF GIFT | OF GIFT |

---

**8. Losses**

None
☒

List all losses from fire, theft, other casualty or gambling within **one year** immediately preceding the commencement of this case **or since the commencement of this case**. (Married debtors filing under chapter 12 or chapter 13 must include losses by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| DESCRIPTION | DESCRIPTION OF CIRCUMSTANCES AND, IF |

12-12020-mg    Doc 7666-2    Filed 10/20/14    Entered 10/20/14 17:47:19    Exhibit 2
Case 14-19005-LMI    Doc 1    Filed 02/12/14    Page 32 of 38
Pg 243 of 379

5

|  |  |  |
|---|---|---|
| AND VALUE OF<br>PROPERTY | LOSS WAS COVERED IN WHOLE OR IN PART<br>BY INSURANCE, GIVE PARTICULARS | DATE<br>OF LOSS |

---

### 9. Payments related to debt counseling or bankruptcy

None
☐

List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of a petition in bankruptcy within **one year** immediately preceding the commencement of this case.

| NAME AND ADDRESS<br>OF PAYEE | DATE OF PAYMENT,<br>NAME OF PAYER IF<br>OTHER THAN DEBTOR | AMOUNT OF MONEY OR<br>DESCRIPTION AND<br>VALUE OF PROPERTY |
|---|---|---|
| Debtor:<br>Law Office of Samuel S. Sorota<br>801 NE 167th Street, suite 308<br>North Miami Beach, Florida 33162 | 1/21/2014<br>2/11/2014 | $1,700.00<br>$900.00<br>Legal Fees |
| Spouse:<br>N/A | | |

---

### 10. Other transfers

None
☒

a. List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within **two years** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF TRANSFEREE,<br>RELATIONSHIP TO DEBTOR | DATE | DESCRIBE PROPERTY<br>TRANSFERRED AND<br>VALUE RECEIVED |
|---|---|---|

None
☒

b. List all property transferred by the debtor within **ten years** immediately preceding the commencement of this case to a self-settled trust or similar device of which the debtor is a beneficiary.

| NAME OF TRUST OR OTHER<br>DEVICE | DATE(S) OF<br>TRANSFER(S) | AMOUNT OF MONEY OR DESCRIPTION<br>AND VALUE OF PROPERTY OR DEBTOR'S<br>INTEREST IN PROPERTY |
|---|---|---|

---

### 11. Closed financial accounts

None
☒

List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or otherwise transferred within **one year** immediately preceding the commencement of this case. Include checking, savings, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds, cooperatives, associations, brokerage houses and other financial institutions. (Married debtors filing under chapter 12 or chapter 13 must include information concerning accounts or instruments held by or for either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

Case 14-19989-LMI    Doc 1    Filed 12/12/14    Page 38 of 38

| NAME AND ADDRESS OF INSTITUTION | TYPE OF ACCOUNT, LAST FOUR DIGITS OF ACCOUNT NUMBER, AND AMOUNT OF FINAL BALANCE | AMOUNT AND DATE OF SALE OR CLOSING |
|---|---|---|

---

**12. Safe deposit boxes**

None ☒

List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include boxes or depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF BANK OR OTHER DEPOSITORY | NAMES AND ADDRESSES OF THOSE WITH ACCESS TO BOX OR DEPOSITORY | DESCRIPTION OF CONTENTS | DATE OF TRANSFER OR SURRENDER, IF ANY |
|---|---|---|---|

---

**13. Setoffs**

None ☒

List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within **90 days** preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATE OF SETOFF | AMOUNT OF SETOFF |
|---|---|---|

---

**14. Property held for another person**

None ☒

List all property owned by another person that the debtor holds or controls.

| NAME AND ADDRESS OF OWNER | DESCRIPTION AND VALUE OF PROPERTY | LOCATION OF PROPERTY |
|---|---|---|

---

**15. Prior address of debtor**

None ☒

If debtor has moved within **three years** immediately preceding the commencement of this case, list all premises which the debtor occupied during that period and vacated prior to the commencement of this case. If a joint petition is filed, report also any separate address of either spouse.

| ADDRESS | NAME USED | DATES OF OCCUPANCY |
|---|---|---|

**16. Spouses and Former Spouses**

None
☒

If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within **eight years** immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state.

NAME

**17. Environmental Information**.

For the purpose of this question, the following definitions apply:

"Environmental Law" means any federal, state, or local statute or regulation regulating pollution, contamination, releases of hazardous or toxic substances, wastes or material into the air, land, soil, surface water, groundwater, or other medium, including, but not limited to, statutes or regulations regulating the cleanup of these substances, wastes, or material.

Site" means any location, facility, or property as defined under any Environmental Law, whether or not presently or formerly owned or operated by the debtor, including, but not limited to, disposal sites. "

"Hazardous Material" means anything defined as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, or contaminant or similar term under an Environmental Law.

None
☒

a. List the name and address of every site for which the debtor has received notice in writing by a governmental unit that it may be liable or potentially liable under or in violation of an Environmental Law. Indicate the governmental unit, the date of the notice, and, if known, the Environmental Law:

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|---|---|---|---|

None
☒

b. List the name and address of every site for which the debtor provided notice to a governmental unit of a release of Hazardous Material. Indicate the governmental unit to which the notice was sent and the date of the notice.

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|---|---|---|---|

None
☒

c. List all judicial or administrative proceedings, including settlements or orders, under any Environmental Law with respect to which the debtor is or was a party. Indicate the name and address of the governmental unit that is or was a party to the proceeding, and the docket number.

| NAME AND ADDRESS OF GOVERNMENTAL UNIT | DOCKET NUMBER | STATUS OR DISPOSITION |
|---|---|---|

**18 . Nature, location and name of business**

None
☐

a. *If the debtor is an individual*, list the names, addresses, taxpayer-identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full- or part-time within **six years** immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

*If the debtor is a partnership*, list the names, addresses, taxpayer-identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities, within **six years** immediately preceding the commencement of this case.

*If the debtor is a corporation*, list the names, addresses, taxpayer-identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

| NAME | LAST FOUR DIGITS OF SOCIAL-SECURITY OR OTHER INDIVIDUAL TAXPAYER-I.D. NO (ITIN)/ COMPLETE EIN | ADDRESS | NATURE OF BUSINESS | BEGINNING AND ENDING DATES |
|---|---|---|---|---|
| Debtor: The Chadwick Corporation Investment Realty | 3823/ 900125561 | 1525 Lenox Ave, #1 Miami Beach, Fl 33139 | Rea Estate | Beginning Date: 11/29/2003 Ending Date: 09/28/2012 |
| Stephanie Harris Real Estate Inc. | ▮▮▮/ None | 1525 Lenox Ave, # 1 Miami Beach, Florida 33139 | Real Estate | Beginning Date: 07/28/2011 Ending Date: 09/28/2012 |

Spouse:
N/A

None
☒

b. Identify any business listed in response to subdivision a., above, that is "single asset real estate" as defined in 11 U.S.C. § 101.

NAME                                    ADDRESS

The following questions are to be completed by every debtor that is a corporation or partnership and by any individual debtor who is or has been, within **six years** immediately preceding the commencement of this case, any of the following: an officer, director, managing executive, or owner of more than 5 percent of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership, a sole proprietor, or self-employed in a trade, profession, or other activity, either full- or part-time.

*(An individual or joint debtor should complete this portion of the statement only if the debtor is or has been in business, as defined above, within six years immediately preceding the commencement of this case. A debtor who has not been in business within those six years should go directly to the signature page.)*

**19. Books, records and financial statements**

None ☐  a. List all bookkeepers and accountants who within **two years** immediately preceding the filing of this bankruptcy case kept or supervised the keeping of books of account and records of the debtor.

NAME AND ADDRESS                                    DATES SERVICES RENDERED

Debtor:
Kim Marks CPA                                       1996 - Present
2136 NE 123 Street
North Miami, Florida 33181

Spouse:
N/A

None ☐  b. List all firms or individuals who within **two years** immediately preceding the filing of this bankruptcy case have audited the books of account and records, or prepared a financial statement of the debtor.

NAME                    ADDRESS                     DATES SERVICES RENDERED

Debtor:
Kim Marks CPA           2136 NE 123 Street          1996 - present
                        North Miami , Florida 33181

Spouse:
N/A

None ☒  c. List all firms or individuals who at the time of the commencement of this case were in possession of the books of account and records of the debtor. If any of the books of account and records are not available, explain.

NAME                                ADDRESS

Debtor:
N/A

Spouse:
N/A

None ☒  d. List all financial institutions, creditors and other parties, including mercantile and trade agencies, to whom a financial statement was issued by the debtor within **two years** immediately preceding the commencement of this case.

NAME AND ADDRESS                                    DATE ISSUED

Debtor:
N/A

Spouse:
N/A

---

**20. Inventories**

None ☒  a. List the dates of the last two inventories taken of your property, the name of the person who supervised the taking of each inventory, and the dollar amount and basis of each inventory.

| DATE OF INVENTORY | INVENTORY SUPERVISOR | DOLLAR AMOUNT OF INVENTORY (Specify cost, market or other basis) |
|---|---|---|

Debtor:
N/A

Spouse:
N/A

None
☒
b. List the name and address of the person having possession of the records of each of the inventories reported in a., above.

|  | NAME AND ADDRESSES OF CUSTODIAN |
| DATE OF INVENTORY | OF INVENTORY RECORDS |

Debtor:
N/A

N/A

---

**21. Current Partners, Officers, Directors and Shareholders**

None
☒
a. If the debtor is a partnership, list the nature and percentage of partnership interest of each member of the partnership.

| NAME AND ADDRESS | NATURE OF INTEREST | PERCENTAGE OF INTEREST |

N/A

None
☒
b. If the debtor is a corporation, list all officers and directors of the corporation, and each stockholder who directly or indirectly owns, controls, or holds 5 percent or more of the voting or equity securities of the corporation.

| | | NATURE AND PERCENTAGE |
| NAME AND ADDRESS | TITLE | OF STOCK OWNERSHIP |

---

**22. Former partners, officers, directors and shareholders**

None
☒
a. If the debtor is a partnership, list each member who withdrew from the partnership within **one year** immediately preceding the commencement of this case.

| NAME | ADDRESS | DATE OF WITHDRAWAL |

N/A

None
☒
b. If the debtor is a corporation, list all officers or directors whose relationship with the corporation terminated within **one year** immediately preceding the commencement of this case.

| NAME AND ADDRESS | TITLE | DATE OF TERMINATION |

N/A

---

**23 . Withdrawals from a partnership or distributions by a corporation**

None
If the debtor is a partnership or corporation, list all withdrawals or distributions credited or given to an insider,

☒ including compensation in any form, bonuses, loans, stock redemptions, options exercised and any other perquisite during **one year** immediately preceding the commencement of this case.

| NAME & ADDRESS OF RECIPIENT, RELATIONSHIP TO DEBTOR | DATE AND PURPOSE OF WITHDRAWAL | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

N/A

---

**24. Tax Consolidation Group.**

None ☒

If the debtor is a corporation, list the name and federal taxpayer-identification number of the parent corporation of any consolidated group for tax purposes of which the debtor has been a member at any time within **six years** immediately preceding the commencement of the case.

NAME OF PARENT CORPORATION          TAXPAYER-IDENTIFICATION NUMBER (EIN)

---

**25. Pension Funds.**

None ☒

If the debtor is not an individual, list the name and federal taxpayer-identification number of any pension fund to which the debtor, as an employer, has been responsible for contributing at any time within **six years** immediately preceding the commencement of the case.

NAME OF PENSION FUND          TAXPAYER-IDENTIFICATION NUMBER (EIN)

* * * * * *

---

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct.

Date  February 11, 2014          Signature of Debtor  s/Stephanie Harris

Date          Signature of Joint Debtor (if any)

0 continuation sheets attached

*Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571*

**<u>Exhibit 2-Q</u>**

**Harris Proof of Claim No. 2536**

UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

Claim #2536    Date Filed: 11/6/2012

Name of Debtor and Case Number:
Residential Capital L L C GMAC case 12-12020 M

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>**Stephanie Harris**<br><br>Name and address where notices should be sent:<br>Stephanie Harris<br>[redacted]<br><br>Telephone number: [redacted]    email: [redacted]<br><br>Name and address where payment should be sent (if different from above):<br>Same as above.<br><br>Telephone number:    email: | ☐ Check this box if this claim amends a previously filed claim.<br><br>**Court Claim Number:**_____<br>*(If known)*<br>Filed on:_____<br><br>☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars. |

| | |
|---|---|
| **1. Amount of Claim as of Date Case Filed:** $ 5,000,000.00<br><br>If all or part of the claim is secured, complete item 4.<br><br>If all or part of the claim is entitled to priority, complete item 5.<br><br>☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges. | **5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.** |
| **2. Basis for Claim:** Wrongful foreclosure, tortious interference in E<br>(See instruction #2) | ☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
| **3. Last four digits of any number by which creditor identifies debtor:** 3823 | **3a. Debtor may have scheduled account as:** Stephanie Harris (See instruction #3a) | **3b. Uniform Claim Identifier (optional):** (See instruction #3b) | ☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4). |

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ■ Real Estate ☐ Motor Vehicle ☐ Other
**Describe:**
Value of Property: $ 450,000.00    Annual Interest Rate 9 % ☐ Fixed ☐ Variable
(when case was filed)
Amount of arrearage and other charges, as of the time case was filed, included in secured claim,
if any: $ 0    Basis for perfection: See attached docume

Amount of Secured Claim: $ 450,000.00    Amount Unsecured: $ 4,550,000.00

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$ _____

**6. Claim Pursuant to 11 U.S.C. § 503(b)(9):**
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.
$ _____ (See instruction #6)

**7. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

**8. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing ev[idence] ... the definition of "redacted".)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHE

If the documents are not available, please explain:

12120201211060000000000067

* Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**9. Signature:** (See instruction #9) Check the appropriate box.
■ I am the creditor.    ☐ I am the creditor's authorized agent.
(Attach copy of power of attorney, if any.)
☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)
☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.
Print Name: Stephanie Harris
Title:
Company:
Address and telephone number (if different from notice address above):
[signature] Stephanie Harris    November 5 2012
(Signature)    (Date)

Telephone number: [redacted]    Email: [redacted]

RECEIVED
NOV 0 6 2012
KURTZMAN CARSON CONSULTANTS
COURT USE ONLY

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# FEDERAL RESERVE BANK *of* NEW YORK

33 LIBERTY STREET, NEW YORK, NY 10045-0001

September 27, 2010

Ms. Stephanie Harris
███████████████████████

Dear Ms. Harris:

This letter is in response to your complaint against Deutsche Bank Trust Company Americas (Deutsche). As we understand your complaint, you state that your home has been erroneously foreclosed on and request a loan modification. We contacted Deutsche on your behalf and would like to report our findings.

In connection with our inquiry, Deutsche informs us that the mortgage loan for the property referenced in your complaint at 1525 Lenox Ave., Miami Beach, FL 33139 is being serviced by Residential Funding Company, LLC (Residential). LaSalle Bank National Association (LaSalle) is the Trustee pursuant to a Pooling and Servicing Agreement, for the RAAC Series 2007-SP3 Trust, a securitization trust which includes the mortgage loan in question.

Deutsche indicates that it has been incorrectly identified as the Trustee in this case and has since notified Residential of this issue so that it may correct this error as soon as possible. As further background, Deutsche states that it has no involvement with the RAAC Series 2007-SP3 Trust and therefore the aforementioned mortgage loan. Furthermore, LaSalle's parent company was acquired by Bank of America in 2008.

Please note that since LaSalle Bank National Association is subject to the supervisory jurisdiction of the Office of the Comptroller of the Currency, we are unable to investigate the issues you raise. Therefore, you should contact the agency at:

Office of the Comptroller of the Currency
Customer Assistance Group
1301 McKinney Street, Suite 3450
Houston, TX 77010
Tel: 1-800-613-6743
Fax: 713-336-4301
HelpWithMyBank.gov

# BUSINESS | 10B

**The Miami Herald**  **FRIDAY, OCTOBER 19, 2012** | EDITOR: JANE WOOLDRIDGE  jwooldridge@MiamiHerald.com  | 305-376-3629    H1

MORTGAGE CRISIS

# Fla. foreclosure cash sits untouched

■ Six months after receiving more than $300 million in aid for homeowners, Florida hasn't decided how to spend the money.

BY TOLUSE OLORUNNIPA
Herald/Times Tallahassee Bureau

TALLAHASSEE — Florida is ranked No. 1 in the nation for the number of homes in foreclosures and the number of people on the verge of losing their homes.

But the Sunshine State is last in the nation when it comes to using the billions of dollars in available housing aid from a national mortgage settlement, according to a report released Thursday.

Six months after the nation's largest banks signed a $25 billion mortgage settlement in the wake of the robo-signing scandal, Florida and Texas are the only states that have not outlined a plan for how to use their share.

About $300 million is sitting in an escrow account. Attorney General Pam Bondi and the Florida Legislature are haggling over who is legally entitled to spend the money.

A report by Enterprise Community Partners found that most states have already begun using their portion of the settlement to help homeowners, through programs like mortgage counseling,


BONDI

neighborhood revitalization and legal assistance.

Some states used all of their settlement money to help homeowners, while others diverted the funds to help shore up budget shortages or give tax breaks to businesses.

The settlement terms dictate that the money should be used specifically for housing-related issues, but lawmakers in Florida could decide to put the money to other uses. Consumer advocates say that would be disappointing.

"There's a lot of money coming into Florida and if it's used in the right way, there's a lot of opportunity," said Andrew Jakabovics, a researcher with Enterprise Community Partners, an affordable housing group.

Bondi has said repeatedly that she wants to use the money for housing-related initiatives, and she believes she has the sole authority to decide where the money should go.

"We are diligently working to get this money distributed as soon as possible to help homeowners," she said. "I'm not going to talk about backroom conversations, but I'll tell you I'm working as hard as I can, my staff is working as hard as they can. This money needs to go to homeowners. That's where it

was meant to go, and that's where it should go."

Leaders in the Legislature believe they have the legal authority to decide how state funds are spent. Lawmakers have not ruled out using the money for non-housing related issues.

"We are working with Attorney General Bondi and the House to determine the best mechanism to ensure that these funds are appropriated by the Legislature in a transparent and accountable manner that meets our shared goal of moving the funds out of escrow as soon as possible," said Katie Betta, spokesperson for incoming Senate

● TURN TO FORECLOSURE, 8B

**8B** | FRIDAY, OCTOBER 19, 2012          H1          MiamiHerald.com | **THE MIAMI HERALD**

## THE BUSINESS REPORT | BUSINESS STARTS ON 10B

---

MORTGAGE CRISIS

# Foreclosure cash untouched

• FORECLOSURE, FROM 10B

President Don Gaetz, R-Niceville.

A spokesperson for incoming House Speaker Will Weatherford, R-Wesley Chapel, echoed those sentiments.

While Bondi and lawmakers haggle over the money, Florida's foreclosure rate continues to spike, even as national foreclosures are on the decline. For the first time since 2005, Florida recently became the state with the country's highest foreclosure rate, according to RealtyTrac.

One in every 117 Florida housing units had a foreclosure filing in the third quarter, more than twice the national average. One in five homeowners are delinquent on their mortgage, and likely to lose their homes soon without help. Foreclosure starts jumped 24 percent in Florida last month.

While governors in other states have played an active role in the mortgage settlement, Gov. Rick Scott has been mum. When asked last week about his opinion about the $300 million and the disagreement between Bondi and the Legislature, he would only say: "I think Attorney General Bondi will do a good job."

*Toluse Olorunnipa can be reached at tolorunni pa@MiamiHerald.com or on Twitter at @ToluseO.*

---

MINING

# Open-pit mine going underground

• COPPER, FROM 10B

chine that looks like a giant yellow praying mantis, engi-

to determine the prosperity of Chile, which has been growing fast and attracting foreign investment, thanks

tions were risky, many miners died and a wave of strikes and crackdowns roiled the project, making it

Allende's opponents, encouraged his overthrow and knew the coup that toppled him was in the works, though

---

## FLORIDA BRIEFS

• REAL ESTATE

## Report: Miami is the least affordable city

Housing and transportation costs consume 72 percent of the income of moderate income households in Miami — the heaviest cost burden of any large U.S. city, according to a study by the Center for Housing Policy.

The national average among the top 25 cities was 59 percent of income went to housing and transportation among moderate-income groups, the report from the Washington, D.C.-based think tank said.

The crux of Miami's problem is the area median income is so low that it is out of sync with its relatively moderate housing and transportation costs, according to the report.

The study looks at households earning 50 percent to 100 percent of an area's median income, or $25,444 to $50,888 a year, for Miami.

Nationwide, moderate-income households have

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

In re:                                          Case No. 10-11746-AJC
                                                Chapter 7
STEPHANIE HARRIS,

          Debtor.
_____/

## DEBTOR'S RESPONSE IN OPPOSITION TO AMENDED MOTION FOR RELIEF FROM STAY BY DEUTSCHE BANK TRUST COMPANY AMERICAS AS TRUSTEE FOR RAMP2007SP3

          Debtor, Stephanie Harris, by and through counsel, pursuant to Local Rule 4001-1, hereby files this Response in Opposition to the Amended Motion for Relief from Stay by Deutsche Bank Trust Company Americas as Trustee for RAMP2007SP3 [DE 62], and states:

          1.      On January 27, 2010, the Debtor filed a pro se voluntary Chapter 7 bankruptcy petition.

          2.      On June 7, 2010, Deutsche Bank Trust Company Americas as Trustee for RAMP2007SP3 ("Movant"), through counsel Florida Default Law Group, P.L., filed and served its Motion for Relief from Stay seeking to foreclose a mortgage against the Debtor's real property known as Unit #2, 1525 Lenox Avenue, Miami Beach, Florida 33139 (the "Property").

          3.      On July 21, 2010, the Debtor filed a Response in Opposition setting forth several objections to Movant's request for stay relief.

          4.      On July 16, 2010, Movant filed an Amended Motion for Relief from Stay.

5.      Debtor restates and realleges the objections set forth in the Debtor's July 21, 2010 response.  In addition, the Debtor asserts that the lender has wholly failed to provide any form of modification relief despite repeated efforts by the Debtor to seek modification assistance from the lender.  The Movant never informed the Debtor who the actual lender was, which prevented the Debtor from speaking directly with the lender about a modification.  While the lender refused to undertake modification efforts with the Debtor, the lender did continue to increase the amount of the monthly note payments.  The Debtor should not be prejudiced by these circumstances.

6.      On February 21, 2007, the Debtor and lender, People's Choice Home Loan, Inc. entered into the subject loan transaction via the execution of a Promissory Note and Mortgage.  The Movant's Amended Motion attaches proof of an alleged assignment of mortgage, however, the Debtor has never received any notice that her loan documents were sold and/or assigned.

7.      In addition, the Debtor has never received an accounting from any lender to confirm that all payments have been properly credited to her account.  In fact, the Affidavit as to Amounts Due was executed by a "bankruptcy specialist" from GMAC Mortgage, LLC, an entirely different entity than the Movant herein.

8.      The Debtor therefore objects to Movant's Amended Motion as set forth above, as well as well as the amounts claimed to be due and owing.

WHEREFORE, the Debtor requests that this Court deny Movant's Amended Motion for Relief from Stay, and for any further relief deemed just.

- 2 -

SIEGFRIED, RIVERA, LERNER,
DE LA TORRE & SOBEL, P.A.
Attorneys for Debtor
201 Alhambra Circle, Suite 1102
Coral Gables, Florida 33134
Phone: (305) 442-3334
Fax: (305) 443-3292
Email: jberlowitz@siegfriedlaw.com

By:  /s/ Jeffrey S. Berlowitz
       Jeffrey S. Berlowitz, Esq. (Of Counsel)
       Florida Bar Number: 963739

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(a).

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 28, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and served a true and correct copy via U.S. Mail to Rubina K. Shaldjian, Esq., Florida Default Law Group, P.L., PO Box 25018, Tampa, FL 33622-5018; Scott N. Brown, Esq., 14 NE 1st Avenue PH, Miami, FL 33132; William R. Wohlsifer, Esq., Florida DPR, 1940 North Monroe Street, Suite 42, Tallahassee, FL 32399-2202; and Cheryl Marie Brittle, Esq., Florida DPR, 1300 Riverplace Boulevard, Suite 405, Jacksonville, FL 32207.

By:  /s/ Jeffrey S. Berlowitz
       Jeffrey S. Berlowitz, Esq. (Of Counsel)

H:\LIBRARY\CASES\5891\210018\2\2C15694.DOC

SIEGFRIED, RIVERA, LERNER, DE LA TORRE & SOBEL, P.A., ATTORNEYS AT LAW
201 ALHAMBRA CIRCLE, SUITE 1102, CORAL GABLES, FLORIDA 33134 -5108 • 305-442-3334 • FAX 305-443-3292

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

IN RE:

**Stephanie Harris**

       **Debtor(s)**

                                 **CASE NO. 10-11746-AJC**
                                 **CHAPTER 7**

_____/

### MOTION FOR RELIEF FROM STAY

**"Any interested party who fails to file and serve a written response to this motion within 14 days after the date of service stated in this motion shall, pursuant to Local Rule 4001-1(C), be deemed to have consented to the entry of an order granting the relief requested in the motion."**

TO THE HONORABLE JUDGE OF SAID COURT:

    Comes now, DEUTSCHE BANK TRUST COMPANY AMERICAS AS TRUSTEE FOR RAMP 2007SP3 ("Movant"), its successors and/or assigns, seeking modification of the automatic stay pursuant to § 362(d)(1) and (d)(2) of the Bankruptcy Code and would show the Court as follows:

    1.    On January 27, 2010, Stephanie Harris ("Debtor" as used herein shall include both Debtors in a joint case), filed for relief under Chapter 7 of the U.S. Bankruptcy Code.

    2.    Jurisdiction of this cause is granted to the Bankruptcy Court pursuant to 28 U.S.C. § 1334, 11 U.S.C. § 362, and Fed.R.Bankr.P. 4001(a), and all other applicable rules and statutes affecting the jurisdiction of the Bankruptcy Courts generally.

    3.    On February 21, 2007, Stephanie Harris, executed and delivered a Promissory Note (the "Note") payable to the order of People's Choice Home Loan, Inc. in the principal amount of $297,500.00. To secure the payment of the Note, Stephanie Harris executed a Mortgage (the "Mortgage"). Said Mortgage was recorded in Official Records Book 25456, at Pages 2337-2359, of the Public Records of MIAMI-DADE County, Florida on March 16, 2007. (A copy of the Mortgage, together with the Note and Assignments as applicable, are attached hereto as Composite Exhibit "A").

    4.    Movant is entitled to enforce the Note and Mortgage as evidenced by the Note and Mortgage.

    5.    The Debtor has declared the following described property as exempt:

**CONDOMINIUM UNIT NO. 2, OF LINCOLN MEWS CONDOMINIUM, ACCORDING TO THE DECLARATIONS OF CONDOMINIUM**

**THEREOF, RECORDED IN OFFICIAL RECORDS BOOK 21772 AT PAGE 2818, OF THE PUBLIC RECORDS OF MIAMI- DADE COUNTY, FLORIDA. TOGETHER WITH AN UNDIVIDED INTEREST IN THE COMMON ELEMENTS APPURTENANT THERETO AS SET FORTH IN SAID DECLARATION**

**a/k/a 1525 Lenox Ave., Unit 2, Miami Beach, FL 33139.**

6.    The 341 Meeting was held on April 1, 2010; however, as of June 7, 2010, the Trustee's Final Report of No Distribution/No Assets has not been entered.

7.    The Debtor is in default. The last payment received was applied to the March 01, 2008 payment. In the event the Debtor elects to make payments, Movant's payment address is 3451 Hammond Avenue, Waterloo, IA 50702.

8.    As set forth in the Affidavit and Indebtedness Worksheet attached to this Motion, Movant's principal and interest is in excess of $355,895.95 and its indebtedness continues to accrue interest. Movant's principal and interest alone, exclusive of any late charges, escrow advances, attorney's fees, costs, or other fees and charges that might be contractually due under the terms of the loan documents, if any, demonstrates that there is little or no equity in the collateral. Said Affidavit and Indebtedness Worksheet is attached hereto as Exhibit "B".

9.    According to the Tax Assessment, the value of the property is $188,240.00. Said Tax Assessment is attached hereto as Exhibit "C".

10.    When considering legal fees, carrying costs, closing charges, and realtor commissions, it is evident that there is little or no equity for the benefit of other creditors; moreover, Movant, contends that any equity over and above the indebtedness, should it exist, does not constitute adequate protection as contemplated by the U.S. Bankruptcy Code.

11.    The Debtor has failed to timely meet and satisfy the payment requirements with respect to the obligations set forth in the Note. Movant's indebtedness continues to accrue interest while receiving no payments to protect it against the erosion of its collateral position. Furthermore, Movant is not otherwise being adequately protected while the Debtor continues to enjoy the benefits of the collateral.

12.    The Debtor filed a Chapter 7 case and therefore, no reorganization is contemplated.

13.    If Movant is not permitted to enforce its security interest in the collateral or provided with adequate protection, it will suffer irreparable injury, loss and damage.

14.    Movant requests this Court to allow future communications with the Debtor in order to offer and provide information in regard to a potential Forbearance Agreement, Loan Modification, Refinance Agreement or other Loan Workout/Loss Mitigation Agreement, and

furthermore, to enter into such agreement with the Debtor. Movant acknowledges that such communications shall be limited and it shall not enforce or threaten to enforce any personal liability against the Debtor that is discharged in this bankruptcy.

15.    Once the stay is terminated, the Debtor will have minimal motivation to insure, preserve, or protect the collateral; therefore, Movant requests that the Court waive the 14-day stay period imposed by the order terminating the stay under Fed.R.Bankr.P. 4001(a)(3).

16.    Movant has conferred with counsel for the Debtor and the Trustee in an attempt to obtain consent to the filing of this Motion; however, said consent has not been received.

**WHEREFORE,** Movant prays that this Court enter an order modifying the automatic stay under 11 U.S.C. § 362(d) to permit Movant to take all steps necessary to exercise any and all rights it may have in the collateral described herein, to gain possession of said collateral, and to have such other and further relief as is just.

## CERTIFICATE PURSUANT TO LOCAL RULE 9011-4(B)(1)

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A).

## CERTIFICATE PURSUANT TO LOCAL RULE 9073-1(D)

I further certify that I have conferred with opposing counsel in an attempt to resolve these issues without a hearing.

> Florida Default Law Group, P.L.
> Post Office Box 25018
> Tampa, FL 33622-5018
> (813) 251-4766 Ext: 3723
> Fax: 813-251-1541
> Email: bkatt@defaultlawfl.com
>
> By: /s/ Rubina K. Shaldjian
> Rubina K. Shaldjian
> Florida Bar No. 64466
> ATTORNEY FOR DEUTSCHE BANK
> TRUST COMPANY AMERICAS AS
> TRUSTEE FOR RAMP 2007SP3

B10008564

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that copies of the foregoing Motion for Relief from Stay have been furnished by regular U.S. Mail to all parties listed below this 07 day of June, 2010.

Stephanie Harris
POB 19504
Miami Beach, FL 33139

I HEREBY CERTIFY that copies of the foregoing Motion for Relief from Stay have been furnished by Electronic Mail to all parties listed below this 07 day of June, 2010.

Jeffrey S. Berlowitz
jberlowitz@siegfriedlaw.com

Soneet Kapila, Trustee
msams@kapilaco.com

Scott N Brown
sbrown@tabasfreedman.com

---

Florida Default Law Group, P.L.
Post Office Box 25018
Tampa, FL 33622-5018
(813) 251-4766 Ext: 3723
Fax: 813-251-1541
Email: bkatt@defaultlawfl.com

By: /s/ Rubina K. Shaldjian
Rubina K. Shaldjian
Florida Bar No. 64466
ATTORNEY FOR DEUTSCHE BANK
TRUST COMPANY AMERICAS AS
TRUSTEE FOR RAMP 2007SP3

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

IN RE:
**Stephanie Harris**
Debtor(s).

CASE NO. 10-11746-AJC
CHAPTER 7

_____/

### *EX PARTE* MOTION TO FILE DOCUMENTS UNDER SEAL

DEUTSCHE BANK TRUST COMPANY AMERICAS AS TRUSTEE FOR RAMP

2007SP3, (hereinafter "Deutsche Bank"), its successors and/or assigns, files this *Ex Parte* Motion

to File Documents Under Seal pursuant to 11 U.S.C. § 107(b) and Local Rule 5003-1(D) and

states as follows:

1.    On June 7, 2010, Deutsche Bank filed a Motion for Relief from Stay for the

property located at 1525 Lenox Ave, Unit 2. (D.E. 44).  Prior to the expiration of the negative

notice period, Debtor, through counsel, filed a Response to Deutsche Bank's Motion. (D.E. 21).

2.    In order to resolve the Debtor's Objection, Deutsche Bank filed an Amended

Motion for Relief from Stay on July 16, 2010.

3.    Deutsche Bank has attached a Power of Attorney to the Affidavit of Amounts Due

and Owing (Exhibit B of the Amended Motion).  Deutsche Bank now seeks to submit a copy of

the Servicing Agreement which, combined with the Power of Attorney, shows that GMAC is

authorized to sign the Affidavit on its behalf.

4.    The Servicing Agreement is not a public document.    It contains private,

confidential, and commercial information.  Under 11 U.S.C. § 107(b), Deutsche Bank is entitled

to have such a document filed under seal for in camera review.

5.    In order to protect Deutsche Bank's privacy and provide the Court with the

necessary information in support of the Amended Motion for Relief, Deutsche Bank respectfully

requests to file the above mentioned document under seal.

**WHEREFORE,** Deutsche Bank respectfully requests that this Court grant the Ex Parte

Motion to File Documents Under Seal.

## <u>CERTIFICATE PURSUANT TO LOCAL RULE 9011-4(B)(1)</u>

I hereby certify that I am admitted to the Bar of the United States District Court for the

Southern District of Florida and I am in compliance with the additional qualifications to practice in

this court set forth in Local Rule 2090-1(A).

Florida Default Law Group, P.L.
Post Office Box 25018
Tampa, FL 33622-5018
(813) 251-4766 Ext: 3723
Fax: 813-251-1541
Email: bkatt@defaultlawfl.com

By: /s/ Rubina K. Shaldjian
Rubina K. Shaldjian
Florida Bar No. 64466
ATTORNEY FOR DEUTSCHE BANK TRUST
COMPANY AMERICAS AS TRUSTEE FOR
RAMP 2007SP3

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that copies of the foregoing *Ex Parte* Motion to File Documents Under Seal have been furnished by regular U.S. Mail to all parties listed below this 16 day of July, 2010.

Stephanie Harris
POB 19504
Miami Beach, FL  33139

I HEREBY CERTIFY that copies of the foregoing *Ex Parte* Motion to File Documents Under Seal have been furnished by Electronic Mail to all parties listed below this 16 day of July, 2010.

Jeffrey S. Berlowitz
jberlowitz@siegfriedlaw.com

Soneet Kapila, Trustee
msams@kapilaco.com

Scott N Brown
sbrown@tabasfreedman.com

Florida Default Law Group, P.L.
Post Office Box 25018
Tampa, FL 33622-5018
(813) 251-4766 Ext: 3723
Fax: 813-251-1541
Email: bkatt@defaultlawfl.com

By: /s/ Rubina K. Shaldjian
Rubina K. Shaldjian
Florida Bar No. 64466
ATTORNEY FOR DEUTSCHE BANK TRUST
COMPANY AMERICAS AS TRUSTEE FOR
RAMP 2007SP3

Record & Return To:
GMAC ResCap
One Meridian Crossings, Suite 100
Minnapolis, MN 55423
ATTN: Lisa Magnuson

# Limited Power of Attorney

Return Document To: US Recordings, 2925 Country Drive, St. Paul, Minnesota USA 55117
Prepared by: Peggy Jordan, US Recordings, 2925 Country Drive, St. Paul, Minnesota USA 55117

**KNOW ALL MEN BY THESE PRESENTS,**

That Deutsche Bank Trust Company Americas (formerly known as Bankers Trust Company), as Trustee (together with its successors and assigns, the "Trustee") under Pooling and Servicing or Indenture Agreements pursuant to which Residential Funding Company, LLC, acts as Master Servicer, and such Trustee being, a New York Banking Corporation organized and existing under the laws of the State of New York, c/o Deutsche Bank National Trust Company having an office located at 1761 East St. Andrew Place, in the City of Santa Ana, State of California, 92705, has made, constituted and appointed, and does by these presents make, constitute and appoint Residential Funding Company, LLC, a limited liability company organized and existing under the laws of the State of Delaware, its trust and lawful Attorney-in-Fact, with full power and authority to sign, execute, acknowledge, deliver, file for record, and record any instrument on its behalf and to perform such other act or acts as may be customarily and reasonably necessary and appropriate to effectuate the following enumerated transactions in respect of any of the mortgages or deeds of trust ( the "Mortgages" and the "Deeds of Trust", respectively) and promissory notes secured thereby (the "Mortgages Notes") for which the undersigned is acting as Trustee for various certificate holders pursuant to certain Pooling and Servicing Agreements, specified on Exhibit A hereto (the "Agreements") ( whether the undersigned is names therein as mortgagee or beneficiary or has become mortgagee by virtue of endorsement of the Mortgage Note secured by any such Mortgage or Deed of Trust) and for which Residential Funding Company, LLC is acting as master servicer.

This appointment shall apply to the following enumerated transactions only:

1. The modification or re-recording of a Mortgage or Deed of Trust, where said modification or recording is for the purpose of correcting the Mortgage or Deed of Trust to conform same to the original intent of the parties thereto or to correct title errors discovered after such title insurance was issued and said modification or re-recording, in either instance, does not adversely affect the lien of the Mortgage or Deed of Trust as insured and otherwise conforms to the terms of the applicable Agreement.
2. The subordination of the lien of a Mortgage or Deed of Trust to an easement in Favor of a public utility company or a government agency or unit with power of eminent domain; this section shall include, without limitation, the execution of partial satisfaction/releases, partial reconveyances or the execution of requests to trustees to accomplish same.
3. The qualified subordination of the lien of a Mortgage or Deed of Trust to a lien of a creditor that is created in connection with the refinancing of a debt secured by a lien that was originally superior to the lien of the Mortgage or Deed of Trust.
4. With respect to a Mortgage or Deed of Trust, the Foreclosure, the taking of a deed in lieu of Foreclosure, or the completion of judicial or non-judicial Foreclosure or termination, cancellation or rescission of any such Foreclosure, including, without limitation, any and all of the following acts:
   a. The substitution of trustee(s) serving under a Deed of Trust, in accordance with state law and the Deed of Trust;
   b. Statements of breach or non-performance;
   c. Notices of default;

    d.  Cancellations/rescissions of notices of default and/or notices of sale;

    e.  The taking of a deed in lieu of foreclosure; and

    f.  Such other documents and action as may be necessary under the terms of the Mortgage, Deed of Trust of state law to expeditiously complete said transactions.

5.  The conveyance of the properties to the mortgage insurer, or the closing of the title to the property to be acquired as real estate owned, or conveyance of title of real estate owned.

6.  The completion of loan assumption agreements.

7.  The full satisfaction/ release of a Mortgage or Deed of Trust or full reconveyance upon payment and discharge of all sums secured thereby, including, without limitation, cancellation of the related Mortgage Note.

8.  The assignment of any Mortgage or Deed of Trust and the related Mortgage Note, in connection with the repurchase of the mortgage loan secured and evidenced thereby pursuant to the requirements of a Residential Funding Corporation Seller Contract, including, without limitation, by reason of conversion of an adjustable rate mortgage loan from a variable rate to a fixed rate.

9.  The full assignment of a Mortgage or Deed of Trust upon payment and discharge of all sums secured thereby in conjunction with the refinancing thereof, including, without limitation, the assignment of the related Mortgage Note.

10. The modification or amendment of escrow agreements established for repairs to the mortgaged property or reserves for replacement of personal property."

The undersigned gives said Attorney-in Fact full Power and authority to execute such instruments and to do and perform all and every act and thing necessary and proper to carry into effect the power of powers granted by or under this Limited Power of Attorney as fully as the undersigned might or could do, and hereby does ratify and confirm to all that said Attorney-in Fact shall lawfully do or cause to be done by authority hereof.

This appointment is to be construed and interpreted as a limited power of attorney. The enumeration of specific items, rights, acts or powers herein is not intended to, nor does it give rise to, and it is not to be construed as a general power of attorney.

Nothing contained herein shall (i) limit in any manner any indemnification provided by the Master Servicer to the Trustee under the Agreements, or (ii) be construed to grant the Master Servicer the power to initiate or defend any suit, litigation or proceeding in the name of Deutsche Bank Trust Company Americas except as specifically provided for herein. If the Master Servicer receives any notice of suit, litigation or proceeding in the name of Deutsche Bank Trust Company Americas or Bankers Trust Company, then the Master Servicer shall promptly forward a copy of same to the Trustee.

The Master Servicer hereby agrees to indemnify and hold the Trustee and its directors, officers, employees and agents harmless from and against any and all third party liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever incurred by reason or result of or in connection with the exercise by the Master Servicer of the powers granted to it hereunder. The foregoing indemnity shall survive the termination of this Limited Power of Attorney and the Agreement or the earlier resignation or removal of the Trustee under the Agreement.

This Limited Power of Attorney is entered into and shall be governed by the laws of the State of New York, without regard to conflicts of law principles of such state.

This limited power of attorney is not intended to extend the powers granted to the Master Servicer under the Agreements or to allow the Master Servicer to take any action with respect to Mortgages, Deeds of Trust or Mortgage Notes not authorized by the Agreements.

Third parties without actual notice may rely upon the exercise of the power granted under this Limited Power of Attorney; and may be satisfied that this Limited Power of Attorney shall continue in full force and effect has not been revoked unless and instrument of revocation has been made in writing by the undersigned.

IN WITNESS WHEREOF, Deutsche Bank Trust Company Americas, as Trustee has caused its corporate seal to be hereto affixed and these presents to be signed and acknowledged in its name and behalf by a duly elected and authorized signatory this _____ day of SEP 9 2006 .

Deutsche Bank Trust Company Americas,
formerly known as Bankers Trust Company,
as Trustee

By: _____

John Serrano, Vice President

**Acknowledged and Agreed**
**Residential Funding Company, LLC**

_____
Cassandra Harrow, Vice President

STATE OF  California                    )
COUNTY OF Orange                     ) SS

On SEP 9 2006 before me, D. TRINH _____ personally appeared John Serrano , Vice President . Personally known to me OR proved to me on this basis of satisfaction evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entirety upon behalf of which the person(s) acted, executed the instrument in the city of Santa Ana , County of Orange , State of California .

CAPACITY CLAIMED BY SIGNER

| Individual | Attorney-in Fact | Other: |
|---|---|---|
| XXX Corporate Officers | XXX Trustee(s) | |

Signer is representing: Deutsche Bank Trust Company Americas

WITNESS my hand and official seal

_____
D. TRINH

D. TRINH
Commission # 1455513
Notary Public - California
Orange County
My Comm. Expires Dec 9, 2007

My Commission (Expires)(Is): DEC 0 9 2007

# Exhibit A

| | |
|---|---|
| Residential Asset Securities Corp (RASC) | 2001-KS3 |
| Residential Asset Securities Corp (RASC) | 2001-KS4 |
| Residential Accredit Loans, Inc. (RALI) | 2001-QS1 |
| Residential Accredit Loans, Inc. (RALI) | 2001-QS10 |
| Residential Accredit Loans, Inc. (RALI) | 2001-QS11 |
| Residential Accredit Loans, Inc. (RALI) | 2001-QS12 |
| Residential Accredit Loans, Inc. (RALI) | 2001-QS13 |
| Residential Accredit Loans, Inc. (RALI) | 2001-QS14 |
| Residential Accredit Loans, Inc. (RALI) | 2001-QS15 |
| Residential Accredit Loans, Inc. (RALI) | 2001-QS16 |
| Residential Accredit Loans, Inc. (RALI) | 2001-QS17 |
| Residential Accredit Loans, Inc. (RALI) | 2001-QS18 |
| Residential Accredit Loans, Inc. (RALI) | 2001-QS19 |
| Residential Accredit Loans, Inc. (RALI) | 2001-QS2 |
| Residential Accredit Loans, Inc. (RALI) | 2001-QS3 |
| Residential Accredit Loans, Inc. (RALI) | 2001-QS4 |
| Residential Accredit Loans, Inc. (RALI) | 2001-QS5 |
| Residential Accredit Loans, Inc. (RALI) | 2001-QS6 |
| Residential Accredit Loans, Inc. (RALI) | 2001-QS7 |
| Residential Accredit Loans, Inc. (RALI) | 2001-QS8 |
| Residential Accredit Loans, Inc. (RALI) | 2001-QS9 |
| Residential Funding Mortgage Securities I,Inc. (RFMSI) | 2001-S1 |
| Residential Funding Mortgage Securities I,Inc. (RFMSI) | 2001-S7 |
| Residential Asset Securities Corp (RASC) | 2002-KS1 |
| Residential Asset Securities Corp (RASC) | 2002-KS2 |
| Residential Accredit Loans, Inc. (RALI) | 2002-QS1 |
| Residential Accredit Loans, Inc. (RALI) | 2002-QS10 |
| Residential Accredit Loans, Inc. (RALI) | 2002-QS11 |
| Residential Accredit Loans, Inc. (RALI) | 2002-QS12 |
| Residential Accredit Loans, Inc. (RALI) | 2002-QS13 |
| Residential Accredit Loans, Inc. (RALI) | 2002-QS14 |
| Residential Accredit Loans, Inc. (RALI) | 2002-QS15 |
| Residential Accredit Loans, Inc. (RALI) | 2002-QS16 |
| Residential Accredit Loans, Inc. (RALI) | 2002-QS17 |
| Residential Accredit Loans, Inc. (RALI) | 2002-QS18 |
| Residential Accredit Loans, Inc. (RALI) | 2002-QS19 |
| Residential Accredit Loans, Inc. (RALI) | 2002-QS2 |
| Residential Accredit Loans, Inc. (RALI) | 2002-QS3 |
| Residential Accredit Loans, Inc. (RALI) | 2002-QS4 |
| Residential Accredit Loans, Inc. (RALI) | 2002-QS5 |
| Residential Accredit Loans, Inc. (RALI) | 2002-QS6 |
| Residential Accredit Loans, Inc. (RALI) | 2002-QS7 |
| Residential Accredit Loans, Inc. (RALI) | 2002-QS8 |
| Residential Accredit Loans, Inc. (RALI) | 2002-QS9 |
| Residential Asset Mortgage Products, Inc. (RAMP) | 2002-RM1 |
| Residential Funding Mortgage Securities I,Inc. (RFMSI) | 2002-S13 |
| Residential Funding Mortgage Securities I,Inc. (RFMSI) | 2002-S16 |

| | |
|---|---|
| Residential Funding Mortgage Securities I,Inc. (RFMSI) | 2002-S17 |
| Residential Funding Mortgage Securities I,Inc. (RFMSI) | 2002-S18 |
| Residential Funding Mortgage Securities I,Inc. (RFMSI) | 2002-S19 |
| Residential Funding Mortgage Securities I,Inc. (RFMSI) | 2002-S20 |
| Residential Accredit Loans, Inc. (RALI) | 2003-QA1 |
| Residential Accredit Loans, Inc. (RALI) | 2003-QR13 |
| Residential Accredit Loans, Inc. (RALI) | 2003-QR19 |
| Residential Accredit Loans, Inc. (RALI) | 2003-QR24 |
| Residential Accredit Loans, Inc. (RALI) | 2003-QS1 |
| Residential Accredit Loans, Inc. (RALI) | 2003-QS10 |
| Residential Accredit Loans, Inc. (RALI) | 2003-QS11 |
| Residential Accredit Loans, Inc. (RALI) | 2003-QS12 |
| Residential Accredit Loans, Inc. (RALI) | 2003-QS13 |
| Residential Accredit Loans, Inc. (RALI) | 2003-QS14 |
| Residential Accredit Loans, Inc. (RALI) | 2003-QS15 |
| Residential Accredit Loans, Inc. (RALI) | 2003-QS16 |
| Residential Accredit Loans, Inc. (RALI) | 2003-QS17 |
| Residential Accredit Loans, Inc. (RALI) | 2003-QS18 |
| Residential Accredit Loans, Inc. (RALI) | 2003-QS19 |
| Residential Accredit Loans, Inc. (RALI) | 2003-QS2 |
| Residential Accredit Loans, Inc. (RALI) | 2003-QS20 |
| Residential Accredit Loans, Inc. (RALI) | 2003-QS21 |
| Residential Accredit Loans, Inc. (RALI) | 2003-QS22 |
| Residential Accredit Loans, Inc. (RALI) | 2003-QS23 |
| Residential Accredit Loans, Inc. (RALI) | 2003-QS3 |
| Residential Accredit Loans, Inc. (RALI) | 2003-QS4 |
| Residential Accredit Loans, Inc. (RALI) | 2003-QS5 |
| Residential Accredit Loans, Inc. (RALI) | 2003-QS6 |
| Residential Accredit Loans, Inc. (RALI) | 2003-QS7 |
| Residential Accredit Loans, Inc. (RALI) | 2003-QS8 |
| Residential Accredit Loans, Inc. (RALI) | 2003-QS9 |
| Residential Asset Mortgage Products, Inc. (RAMP) | 2003-RM1 |
| Residential Asset Mortgage Products, Inc. (RAMP) | 2003-RM2 |
| Residential Accredit Loans, Inc. (RALI) | 2004-QA1 |
| Residential Accredit Loans, Inc. (RALI) | 2004-QA2 |
| Residential Accredit Loans, Inc. (RALI) | 2004-QA3 |
| Residential Accredit Loans, Inc. (RALI) | 2004-QA4 |
| Residential Accredit Loans, Inc. (RALI) | 2004-QA5 |
| Residential Accredit Loans, Inc. (RALI) | 2004-QA6 |
| Residential Accredit Loans, Inc. (RALI) | 2004-QR1 |
| Residential Accredit Loans, Inc. (RALI) | 2004-QS1 |
| Residential Accredit Loans, Inc. (RALI) | 2004-QS10 |
| Residential Accredit Loans, Inc. (RALI) | 2004-QS11 |
| Residential Accredit Loans, Inc. (RALI) | 2004-QS12 |
| Residential Accredit Loans, Inc. (RALI) | 2004-QS13 |
| Residential Accredit Loans, Inc. (RALI) | 2004-QS14 |
| Residential Accredit Loans, Inc. (RALI) | 2004-QS15 |
| Residential Accredit Loans, Inc. (RALI) | 2004-QS16 |
| Residential Accredit Loans, Inc. (RALI) | 2004-QS2 |
| Residential Accredit Loans, Inc. (RALI) | 2004-QS3 |
| Residential Accredit Loans, Inc. (RALI) | 2004-QS4 |
| Residential Accredit Loans, Inc. (RALI) | 2004-QS5 |

| | |
|---|---|
| Residential Accredit Loans, Inc. (RALI) | 2004-QS6 |
| Residential Accredit Loans, Inc. (RALI) | 2004-QS7 |
| Residential Accredit Loans, Inc. (RALI) | 2004-QS8 |
| Residential Accredit Loans, Inc. (RALI) | 2004-QS9 |
| Residential Asset Mortgage Products, Inc. (RAMP) | 2004-SL1 |
| Residential Asset Mortgage Products, Inc. (RAMP) | 2004-SL2 |
| Residential Asset Mortgage Products, Inc. (RAMP) | 2004-SL3 |
| Residential Asset Mortgage Products, Inc. (RAMP) | 2004-SL4 |
| Residential Accredit Loans, Inc. (RALI) | 2005-QA1 |
| Residential Accredit Loans, Inc. (RALI) | 2005-QA10 |
| Residential Accredit Loans, Inc. (RALI) | 2005-QA11 |
| Residential Accredit Loans, Inc. (RALI) | 2005-QA12 |
| Residential Accredit Loans, Inc. (RALI) | 2005-QA13 |
| Residential Accredit Loans, Inc. (RALI) | 2005-QA2 |
| Residential Accredit Loans, Inc. (RALI) | 2005-QA3 |
| Residential Accredit Loans, Inc. (RALI) | 2005-QA4 |
| Residential Accredit Loans, Inc. (RALI) | 2005-QA5 |
| Residential Accredit Loans, Inc. (RALI) | 2005-QA6 |
| Residential Accredit Loans, Inc. (RALI) | 2005-QA7 |
| Residential Accredit Loans, Inc. (RALI) | 2005-QA8 |
| Residential Accredit Loans, Inc. (RALI) | 2005-QA9 |
| Residential Accredit Loans, Inc. (RALI) | 2005-QO1 |
| Residential Accredit Loans, Inc. (RALI) | 2005-QO2 |
| Residential Accredit Loans, Inc. (RALI) | 2005-QO3 |
| Residential Accredit Loans, Inc. (RALI) | 2005-QO4 |
| Residential Accredit Loans, Inc. (RALI) | 2005-QO5 |
| Residential Accredit Loans, Inc. (RALI) | 2005-QR1 |
| Residential Accredit Loans, Inc. (RALI) | 2005-QS1 |
| Residential Accredit Loans, Inc. (RALI) | 2005-QS10 |
| Residential Accredit Loans, Inc. (RALI) | 2005-QS11 |
| Residential Accredit Loans, Inc. (RALI) | 2005-QS12 |
| Residential Accredit Loans, Inc. (RALI) | 2005-QS13 |
| Residential Accredit Loans, Inc. (RALI) | 2005-QS14 |
| Residential Accredit Loans, Inc. (RALI) | 2005-QS15 |
| Residential Accredit Loans, Inc. (RALI) | 2005-QS16 |
| Residential Accredit Loans, Inc. (RALI) | 2005-QS17 |
| Residential Accredit Loans, Inc. (RALI) | 2005-QS2 |
| Residential Accredit Loans, Inc. (RALI) | 2005-QS3 |
| Residential Accredit Loans, Inc. (RALI) | 2005-QS4 |
| Residential Accredit Loans, Inc. (RALI) | 2005-QS5 |
| Residential Accredit Loans, Inc. (RALI) | 2005-QS6 |
| Residential Accredit Loans, Inc. (RALI) | 2005-QS7 |
| Residential Accredit Loans, Inc. (RALI) | 2005-QS8 |
| Residential Accredit Loans, Inc. (RALI) | 2005-QS9 |
| Residential Asset Mortgage Products, Inc. (RAMP) | 2005-SL1 |
| Residential Asset Mortgage Products, Inc. (RAMP) | 2005-SL2 |
| Residential Accredit Loans, Inc. (RALI) | 2006-QA1 |
| Residential Accredit Loans, Inc. (RALI) | 2006-QA10 |
| Residential Accredit Loans, Inc. (RALI) | 2006-QA11 |
| Residential Accredit Loans, Inc. (RALI) | 2006-QA3 |
| Residential Accredit Loans, Inc. (RALI) | 2006-QA4 |
| Residential Accredit Loans, Inc. (RALI) | 2006-QA5 |

| | |
|---|---|
| Residential Accredit Loans, Inc. (RALI) | 2006-QA6 |
| Residential Accredit Loans, Inc. (RALI) | 2006-QA7 |
| Residential Accredit Loans, Inc. (RALI) | 2006-QA8 |
| Residential Accredit Loans, Inc. (RALI) | 2006-QA9 |
| Residential Accredit Loans, Inc. (RALI) | 2006-QH1 |
| Residential Accredit Loans, Inc. (RALI) | 2006-QO1 |
| Residential Accredit Loans, Inc. (RALI) | 2006-QO10 |
| Residential Accredit Loans, Inc. (RALI) | 2006-QO2 |
| Residential Accredit Loans, Inc. (RALI) | 2006-QO3 |
| Residential Accredit Loans, Inc. (RALI) | 2006-QO4 |
| Residential Accredit Loans, Inc. (RALI) | 2006-QO5 |
| Residential Accredit Loans, Inc. (RALI) | 2006-QO6 |
| Residential Accredit Loans, Inc. (RALI) | 2006-QO7 |
| Residential Accredit Loans, Inc. (RALI) | 2006-QO8 |
| Residential Accredit Loans, Inc. (RALI) | 2006-QO9 |
| Residential Accredit Loans, Inc. (RALI) | 2006-QS1 |
| Residential Accredit Loans, Inc. (RALI) | 2006-QS10 |
| Residential Accredit Loans, Inc. (RALI) | 2006-QS11 |
| Residential Accredit Loans, Inc. (RALI) | 2006-QS12 |
| Residential Accredit Loans, Inc. (RALI) | 2006-QS13 |
| Residential Accredit Loans, Inc. (RALI) | 2006-QS14 |
| Residential Accredit Loans, Inc. (RALI) | 2006-QS15 |
| Residential Accredit Loans, Inc. (RALI) | 2006-QS16 |
| Residential Accredit Loans, Inc. (RALI) | 2006-QS17 |
| Residential Accredit Loans, Inc. (RALI) | 2006-QS18 |
| Residential Accredit Loans, Inc. (RALI) | 2006-QS3 |
| Residential Accredit Loans, Inc. (RALI) | 2006-QS4 |
| Residential Accredit Loans, Inc. (RALI) | 2006-QS5 |
| Residential Accredit Loans, Inc. (RALI) | 2006-QS6 |
| Residential Accredit Loans, Inc. (RALI) | 2006-QS7 |
| Residential Accredit Loans, Inc. (RALI) | 2006-QS8 |
| Residential Accredit Loans, Inc. (RALI) | 2006-QS9 |
| Residential Accredit Loans, Inc. (RALI) | 2007-QA1 |
| Residential Accredit Loans, Inc. (RALI) | 2007-QA2 |
| Residential Accredit Loans, Inc. (RALI) | 2007-QA3 |
| Residential Accredit Loans, Inc. (RALI) | 2007-QA4 |
| Residential Accredit Loans, Inc. (RALI) | 2007-QA5 |
| Residential Accredit Loans, Inc. (RALI) | 2007-QH1 |
| Residential Accredit Loans, Inc. (RALI) | 2007-QH2 |
| Residential Accredit Loans, Inc. (RALI) | 2007-QH3 |
| Residential Accredit Loans, Inc. (RALI) | 2007-QH4 |
| Residential Accredit Loans, Inc. (RALI) | 2007-QH5 |
| Residential Accredit Loans, Inc. (RALI) | 2007-QH6 |
| Residential Accredit Loans, Inc. (RALI) | 2007-QH7 |
| Residential Accredit Loans, Inc. (RALI) | 2007-QH8 |
| Residential Accredit Loans, Inc. (RALI) | 2007-QH9 |
| Residential Accredit Loans, Inc. (RALI) | 2007-QO1 |
| Residential Accredit Loans, Inc. (RALI) | 2007-QO2 |
| Residential Accredit Loans, Inc. (RALI) | 2007-QO3 |
| Residential Accredit Loans, Inc. (RALI) | 2007-QO4 |
| Residential Accredit Loans, Inc. (RALI) | 2007-QO5 |
| Residential Accredit Loans, Inc. (RALI) | 2007-QS1 |

| | |
|---|---|
| Residential Accredit Loans, Inc. (RALI) | 2007-QS10 |
| Residential Accredit Loans, Inc. (RALI) | 2007-QS11 |
| Residential Accredit Loans, Inc. (RALI) | 2007-QS2 |
| Residential Accredit Loans, Inc. (RALI) | 2007-QS3 |
| Residential Accredit Loans, Inc. (RALI) | 2007-QS4 |
| Residential Accredit Loans, Inc. (RALI) | 2007-QS5 |
| Residential Accredit Loans, Inc. (RALI) | 2007-QS6 |
| Residential Accredit Loans, Inc. (RALI) | 2007-QS7 |
| Residential Accredit Loans, Inc. (RALI) | 2007-QS8 |
| Residential Accredit Loans, Inc. (RALI) | 2007-QS9 |
| Residential Asset Mortgage Products, Inc. (RAMP) | 2007-RZ1 |
| Residential Asset Mortgage Products, Inc. (RAMP) | **2007-SP3** |
| Residential Funding Mortgage Securities I, Inc. (RFMSI) | 2007-S4 |
| Residential Funding Mortgage Securities I, Inc. (RFMSI) | 2007-S5 |
| Residential Funding Mortgage Securities I, Inc. (RFMSI) | 2007-SA4 |

Page 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE:                    CASE NO. 10-11746-AJC

STEPHANIE HARRIS,              **CERTIFIED**

        Debtor.                **COPY**
_____/

CONTINUED HEARING RE: MOTION FOR RELIEF FROM STAY (44)

August 31, 2010

        The above-entitled cause came on for hearing

before the Honorable A. Jay Cristol, one of the Judges in

the UNITED STATES BANKRUPTCY COURT, in and for the

SOUTHERN DISTRICT OF FLORIDA, at 51 SW 1st Avenue, Miami,

Miami-Dade County, Florida on August 31, 2010, commencing

at or about 10:30 a.m., and the following proceedings were

had.

Reported By:
Cheryl L. Jenkins, RPR

Page 2

1                          APPEARANCES:

2

3    SIEGFRIED RIVERA LERNER DE LA TORRE & SOBEL, by
                JEFFREY BERLOWITZ, Esquire
                 On behalf of the Debtor

4

5                  STACY BRESSLER, Esquire
               On behalf of Deutsche Bank

6

7              STEPHANIE HARRIS, Debtor

8

                      - - - - - - -

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 3

1          THE COURT:  Stephanie Harris.

2          MR. BERLOWITZ:  Good morning, Judge.

3          THE COURT:  Good morning.

4          MS. BRESSLER:  Good morning, your Honor.

5    Stacy Bressler on behalf of Deutsche Bank.

6          MR. BERLOWITZ:  Jeffrey Berlowitz on behalf

7    of Stephanie Harris, who is with us this morning as well.

8          THE COURT:  Good morning.

9          MS. BRESSLER:  Your Honor, we're here on

10   Deutsche Bank's amended motion for relief from stay.

11          The debtor has been residing -- excuse me,

12   the debtor had defaulted on this loan in 2008, and the

13   bank is seeking stay relief.  Specifically they have an

14   indebtedness in excess of $350,000.  According to the tax

15   assessor's records, the value of the property is $188,000,

16   and there was opposition to the motion for relief that was

17   filed which raised some issues and concerns as to

18   standing, complicated arguments with regard to notes and

19   assignments of mortgages.  In an effort of eliminating the

20   need for any future evidentiary hearing on this, I had

21   asked my client to provide me with a copy of the original

22   note that I would like to present to your Honor now.

23          THE COURT:  Counsel?

24          MR. BERLOWITZ:  Well, Judge, as my argument,

25   I'll lay out, I am requesting an evidentiary hearing.

Page 4

1   There are issues with regard to standing that we believe

2   render the movant's efforts fatal this morning.  I can get

3   into that, we can allow Ms. Bressler to proceed.

4              THE COURT:  Well, I mean, if you want an

5   evidentiary hearing, you're entitled to an evidentiary

6   hearing.

7              My question, however, is, if the property is

8   valued at 188, it probably has a market of somewhere of

9   maybe 210 or something like that.  Your client wants to

10  pay 350 for a 210 property?

11             MR. BERLOWITZ:  Ms. Harris is interested in

12  the property, and to keep the property, Judge.  She is

13  very interested in modifying the loan and maintaining

14  ownership of it.  This is a unit that's important to her.

15  She lives here on the premises.  It's a small condominium

16  complex on Miami Beach, but certainly, Judge, and we can

17  get into it, or we can set it down, we believe there is

18  significant standing issues.  There is just a break in the

19  chain of title, and while Ms. Bressler may have the

20  original note, the case law, the research that I've

21  discovered, and Deutsche Bank, who is the movant this

22  morning, is in the midst of the cases that I discovered,

23  when there is no endorsement of the note to the party

24  seeking to collect and enforce the note, it's fatal, and

25  that is found directly under the Florida Statutes, under

Page 5

1    bankruptcy case law, and stay relief motions have been

2    denied where the movant was Deutsche Bank, and I can

3    provide the Court with those cites, but getting back

4    to ---

5              THE COURT:  This is not the time for an

6    evidentiary hearing, but you are entitled to one if you

7    want one, and is there any possibility that your client

8    and the bank can work out some sort of a modification that

9    will make you both happy?

10             MS. BRESSLER:  May I?

11             Your Honor, as recently as April a

12   modification was offered the borrower, that she declined

13   and said she couldn't afford based on the value of the

14   property.

15             The issue here really is that this is a

16   Chapter 7, and while the debtor's counsel had indicated

17   that she lives on the premises, to clarify, there are six

18   units on the premises, and this particular unit is not her

19   homestead.

20             THE COURT:  Well, is this her homestead?

21             MR. BERLOWITZ:  No, it is not, your Honor.

22             THE COURT:  Well, then why doesn't she go

23   into Chapter 13 and modify it?

24             MR. BERLOWITZ:  Well ---

25             THE COURT:  Does your client want to fire

Page 6

1    you?  I think she wants to discharge you and take over.

2    Is that what she has in mind?  She can let you go and take

3    over.

4              MR. BERLOWITZ:  Well, hopefully not, Judge.

5              THE COURT:  Okay.

6              MR. BERLOWITZ:  But she's very astute and

7    well versed in these issues, and she's been well engaged

8    in disputes with regard to the property.

9              We would like a modification.  We would like

10   to discuss a modification, and what we need ---

11             THE COURT:  Well, I just heard that you had

12   one and turned it down.

13             MS. HARRIS:  No.

14             THE COURT:  Would you like to be discharged

15   from the courtroom, or would you like to discharge your

16   lawyer and you can take over, either way.

17             MR. BERLOWITZ:  Judge, what we're seeking is

18   an in-house modification, because the Obama plan, if you

19   will, does not fit here with this loan, and that's why

20   she's been rejected.  So, we'd request ---

21             THE COURT:  Well, she's not rejected.  She

22   said they were accepted and she rejected.  That's what

23   Ms. Bressler just said.

24             In any event, here is where we're at, she's

25   entitled to an evidentiary hearing.  If she goes to an

1   evidentiary hearing and she loses, she's going to be out

2   of there shortly.

3            On the other hand, if you can make a

4   modification, bless you.  If you can go to Chapter 13, and

5   this is not a homestead, it's subject to modification

6   through the Court.  So, I mean, you've got several

7   options, but right now we'll direct that you and

8   Ms. Bressler get together and determine when you want to

9   have the evidentiary hearing, and -- but your client needs

10  to be aware that she's taking a big risk if she goes

11  through that hearing and they prove the ownership with a

12  note, it may be to her detriment.

13           MS. BRESSLER:  Your Honor, before we go to

14  evidentiary hearing on this matter, if I may for a minute?

15  Under Florida law the owner and the holder of the original

16  note has standing to proceed on it, and I have, rather

17  than the Court having to take the word of the affiant that

18  filed an affidavit of an original note in this case, I

19  actually physically have the original note, which would be

20  all that is required at any evidentiary hearing for it to

21  get back to state court.

22           THE COURT:  Well ---

23           MS. BRESSLER:  The foreclosure that was

24  filed, and, your Honor, it was filed shortly before this

25  bankruptcy, it hasn't proceeded along, there is a motion

Page 8

1   to dismiss raising all of these issues in the state court

2   action.   None of the debtor's rights would at all be

3   infringed upon by this going back to state court.

4              THE COURT:   Mr. Berlowitz, what about it?

5   What is it that you want to have the evidentiary hearing

6   on?

7              MR. BERLOWITZ:   We want the evidentiary

8   hearing on -- your Honor, the movant here has not

9   evidenced their right and standing to enforce the note.

10  Under Florida law the note ---

11             THE COURT:   Well, all right, tell me why.

12             MR. BERLOWITZ:   People's Choice was the

13  original lender.

14             THE COURT:   Yes.

15             MR. BERLOWITZ:   People's Choice -- excuse

16  me, Mers assigned the mortgage to Deutsche Bank, not

17  People's Choice.   There is no assignment of the note, and

18  there is no endorsement on the note to Deutsch Bank which

19  would entitle Deutsch Bank to enforce collection under the

20  note, and under the case law, Judge, that is fatal to the

21  lender's efforts, or the movant's efforts, I should

22  say ---

23             THE COURT:   Well, there have been some cases

24  where notes have been discharged, I would suggest that you

25  and Ms. Bressler get together and prepare a pre-hearing

1    order in which you determine what are the issues that

2    you're raising in your defense to this motion, and their

3    position, and what you're going to prove at trial, and

4    give them an opportunity to respond, and we'll have the

5    trial.

6                    As I say, if you prevail, maybe they're out

7    of luck, and if you don't prevail, maybe your client will

8    be out of luck.

9                    MR. BERLOWITZ:  Understood, your Honor.

10                   THE COURT:  So that's why I'm suggesting to

11   you that it seems -- I mean, a safer route to go would be

12   to convert to a 13, but that's a matter for you and your

13   client.

14                   MR. BERLOWITZ:  Thank you, Judge.

15                   THE COURT:  Thank you both.

16                   MS. BRESSLER:  Thank you, your Honor.

17                   THE COURT:  Okay.

18

19

20

21                   (Thereupon, the hearing was concluded.)

22

23

24

25

Page 10

CERTIFICATION

STATE OF FLORIDA        :

COUNTY OF MIAMI-DADE    :


            I, Cheryl L. Jenkins, RPR, Shorthand

Reporter and Notary Public in and for the State of Florida

at Large, do hereby certify that the foregoing proceedings

were taken before me at the date and place as stated in

the caption hereto on page 1; that the foregoing

computer-aided transcription is a true record of my

stenographic notes taken at said proceedings.

            WITNESS my hand this 1st day of November,

2012.




                    _____

                    CHERYL L. JENKINS, RPR,

                    Court Reporter and Notary Public
                  in and for the State of Florida at Large
                      Commission #DD 920461
                      December 27, 2013

Page 1

1          UNITED STATES BANKRUPTCY COURT
            SOUTHERN DISTRICT OF FLORIDA
2

3

    IN RE:                    CASE NO. 10-11746-AJC
4
    STEPHANIE HARRIS,
5
            Debtor.
6    _____/

7

8    CONTINUED HEARING RE: MOTION FOR RELIEF FROM STAY (44)

9              August 31, 2010

10             The above-entitled cause came on for hearing

11   before the Honorable A. Jay Cristol, one of the Judges in

12   the UNITED STATES BANKRUPTCY COURT, in and for the

13   SOUTHERN DISTRICT OF FLORIDA, at 51 SW 1st Avenue, Miami,

14   Miami-Dade County, Florida on August 31, 2010, commencing

15   at or about 10:30 a.m., and the following proceedings were

16   had.

17

18

19

20

21

22             Reported By:
            Cheryl L. Jenkins, RPR
23

24

25

1                           APPEARANCES:

2

SIEGFRIED RIVERA LERNER DE LA TORRE & SOBEL, by
3                   JEFFREY BERLOWITZ, Esquire
                    On behalf of the Debtor

4

5                   STACY BRESSLER, Esquire
                 On behalf of Deutsche Bank

6

7              STEPHANIE HARRIS, Debtor

8

                    - - - - - - -
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 3

1          THE COURT:  Stephanie Harris.

2          MR. BERLOWITZ:  Good morning, Judge.

3          THE COURT:  Good morning.

4          MS. BRESSLER:  Good morning, your Honor.

5    Stacy Bressler on behalf of Deutsche Bank.

6          MR. BERLOWITZ:  Jeffrey Berlowitz on behalf

7    of Stephanie Harris, who is with us this morning as well.

8          THE COURT:  Good morning.

9          MS. BRESSLER:  Your Honor, we're here on

10   Deutsche Bank's amended motion for relief from stay.

11          The debtor has been residing -- excuse me,

12   the debtor had defaulted on this loan in 2008, and the

13   bank is seeking stay relief.  Specifically they have an

14   indebtedness in excess of $350,000.  According to the tax

15   assessor's records, the value of the property is $188,000,

16   and there was opposition to the motion for relief that was

17   filed which raised some issues and concerns as to

18   standing, complicated arguments with regard to notes and

19   assignments of mortgages.  In an effort of eliminating the

20   need for any future evidentiary hearing on this, I had

21   asked my client to provide me with a copy of the original

22   note that I would like to present to your Honor now.

23          THE COURT:  Counsel?

24          MR. BERLOWITZ:  Well, Judge, as my argument,

25   I'll lay out, I am requesting an evidentiary hearing.

Page 4

1    There are issues with regard to standing that we believe

2    render the movant's efforts fatal this morning.  I can get

3    into that, we can allow Ms. Bressler to proceed.

4                THE COURT:  Well, I mean, if you want an

5    evidentiary hearing, you're entitled to an evidentiary

6    hearing.

7                My question, however, is, if the property is

8    valued at 188, it probably has a market of somewhere of

9    maybe 210 or something like that.  Your client wants to

10   pay 350 for a 210 property?

11               MR. BERLOWITZ:  Ms. Harris is interested in

12   the property, and to keep the property, Judge.  She is

13   very interested in modifying the loan and maintaining

14   ownership of it.  This is a unit that's important to her.

15   She lives here on the premises.  It's a small condominium

16   complex on Miami Beach, but certainly, Judge, and we can

17   get into it, or we can set it down, we believe there is

18   significant standing issues.  There is just a break in the

19   chain of title, and while Ms. Bressler may have the

20   original note, the case law, the research that I've

21   discovered, and Deutsche Bank, who is the movant this

22   morning, is in the midst of the cases that I discovered,

23   when there is no endorsement of the note to the party

24   seeking to collect and enforce the note, it's fatal, and

25   that is found directly under the Florida Statutes, under

Page 5

1   bankruptcy case law, and stay relief motions have been

2   denied where the movant was Deutsche Bank, and I can

3   provide the Court with those cites, but getting back

4   to ---

5            THE COURT:  This is not the time for an

6   evidentiary hearing, but you are entitled to one if you

7   want one, and is there any possibility that your client

8   and the bank can work out some sort of a modification that

9   will make you both happy?

10           MS. BRESSLER:  May I?

11           Your Honor, as recently as April a

12   modification was offered the borrower, that she declined

13   and said she couldn't afford based on the value of the

14   property.

15           The issue here really is that this is a

16   Chapter 7, and while the debtor's counsel had indicated

17   that she lives on the premises, to clarify, there are six

18   units on the premises, and this particular unit is not her

19   homestead.

20           THE COURT:  Well, is this her homestead?

21           MR. BERLOWITZ:  No, it is not, your Honor.

22           THE COURT:  Well, then why doesn't she go

23   into Chapter 13 and modify it?

24           MR. BERLOWITZ:  Well ---

25           THE COURT:  Does your client want to fire

Page 6

1   you?  I think she wants to discharge you and take over.

2   Is that what she has in mind?  She can let you go and take

3   over.

4            MR. BERLOWITZ:  Well, hopefully not, Judge.

5            THE COURT:  Okay.

6            MR. BERLOWITZ:  But she's very astute and

7   well versed in these issues, and she's been well engaged

8   in disputes with regard to the property.

9            We would like a modification.  We would like

10  to discuss a modification, and what we need ---

11           THE COURT:  Well, I just heard that you had

12  one and turned it down.

13           MS. HARRIS:  No.

14           THE COURT:  Would you like to be discharged

15  from the courtroom, or would you like to discharge your

16  lawyer and you can take over, either way.

17           MR. BERLOWITZ:  Judge, what we're seeking is

18  an in-house modification, because the Obama plan, if you

19  will, does not fit here with this loan, and that's why

20  she's been rejected.  So, we'd request ---

21           THE COURT:  Well, she's not rejected.  She

22  said they were accepted and she rejected.  That's what

23  Ms. Bressler just said.

24           In any event, here is where we're at, she's

25  entitled to an evidentiary hearing.  If she goes to an

Page 7

1    evidentiary hearing and she loses, she's going to be out

2    of there shortly.

3              On the other hand, if you can make a

4    modification, bless you.  If you can go to Chapter 13, and

5    this is not a homestead, it's subject to modification

6    through the Court.  So, I mean, you've got several

7    options, but right now we'll direct that you and

8    Ms. Bressler get together and determine when you want to

9    have the evidentiary hearing, and -- but your client needs

10   to be aware that she's taking a big risk if she goes

11   through that hearing and they prove the ownership with a

12   note, it may be to her detriment.

13             MS. BRESSLER:  Your Honor, before we go to

14   evidentiary hearing on this matter, if I may for a minute?

15   Under Florida law the owner and the holder of the original

16   note has standing to proceed on it, and I have, rather

17   than the Court having to take the word of the affiant that

18   filed an affidavit of an original note in this case, I

19   actually physically have the original note, which would be

20   all that is required at any evidentiary hearing for it to

21   get back to state court.

22             THE COURT:  Well ---

23             MS. BRESSLER:  The foreclosure that was

24   filed, and, your Honor, it was filed shortly before this

25   bankruptcy, it hasn't proceeded along, there is a motion

Page 8

1    to dismiss raising all of these issues in the state court

2    action.  None of the debtor's rights would at all be

3    infringed upon by this going back to state court.

4              THE COURT:  Mr. Berlowitz, what about it?

5    What is it that you want to have the evidentiary hearing

6    on?

7              MR. BERLOWITZ:  We want the evidentiary

8    hearing on -- your Honor, the movant here has not

9    evidenced their right and standing to enforce the note.

10   Under Florida law the note ---

11             THE COURT:  Well, all right, tell me why.

12             MR. BERLOWITZ:  People's Choice was the

13   original lender.

14             THE COURT:  Yes.

15             MR. BERLOWITZ:  People's Choice -- excuse

16   me, Mers assigned the mortgage to Deutsche Bank, not

17   People's Choice.  There is no assignment of the note, and

18   there is no endorsement on the note to Deutsch Bank which

19   would entitle Deutsch Bank to enforce collection under the

20   note, and under the case law, Judge, that is fatal to the

21   lender's efforts, or the movant's efforts, I should

22   say ---

23             THE COURT:  Well, there have been some cases

24   where notes have been discharged, I would suggest that you

25   and Ms. Bressler get together and prepare a pre-hearing

Page 9

1    order in which you determine what are the issues that

2    you're raising in your defense to this motion, and their

3    position, and what you're going to prove at trial, and

4    give them an opportunity to respond, and we'll have the

5    trial.

6              As I say, if you prevail, maybe they're out

7    of luck, and if you don't prevail, maybe your client will

8    be out of luck.

9              MR. BERLOWITZ:  Understood, your Honor.

10             THE COURT:  So that's why I'm suggesting to

11   you that it seems -- I mean, a safer route to go would be

12   to convert to a 13, but that's a matter for you and your

13   client.

14             MR. BERLOWITZ:  Thank you, Judge.

15             THE COURT:  Thank you both.

16             MS. BRESSLER:  Thank you, your Honor.

17             THE COURT:  Okay.

18

19

20

21             (Thereupon, the hearing was concluded.)

22

23

24

25

Page 10

1

2

3                                    CERTIFICATION

4

5    STATE OF FLORIDA          :

6    COUNTY OF MIAMI-DADE      :

7

8              I, Cheryl L. Jenkins, RPR, Shorthand

9    Reporter and Notary Public in and for the State of Florida

10   at Large, do hereby certify that the foregoing proceedings

11   were taken before me at the date and place as stated in

12   the caption hereto on page 1; that the foregoing

13   computer-aided transcription is a true record of my

14   stenographic notes taken at said proceedings.

15             WITNESS my hand this 1st day of November,

16   2012.

17

18

19   _____

20            CHERYL L. JENKINS, RPR,

21          Court Reporter and Notary Public
            in and for the State of Florida at Large
22                Commission #DD 920461
                  December 27, 2013

23

24

25

OUELLETTE & MAULDIN COURT REPORTERS, INC.
(305) 358-8875

Click for the entire history and evidence of my experience with mortgage fraud, By Denise Subramaniam
**Fraudulent Deed Assignments**                                                                      **Page 9 of 19**



On 8/27/2008 two more fabricated and fraudulent deed assignments were filed. This was during the time that Litton failed to pay my property taxes and home owner's insurance as per the escrow agreement. I'd received a delinquent property notice and paid my taxes up to date. (Click to view property tax receipts.)

Notice once again that this assignment is from People's Choice to another GMAC subsidiary, Residential Funding Company, LLC.

People's Choice Home Loan Inc. filed Chapter 11 in March 2007 and the company was dissolved long before 8/27/2008.

Notice that "True and Actual Consideration" for this transfer is only $10.00.

Masse Adjetey signed this as Vice President of Homecomings Financial Network, Inc. without a date. Masse Adjety's LinkedIn profile on the next page bears out more deceit and fraud.

This address for MGC Mortgage, 7195 Dallas Parkway, Plano, TX was an empty lot in 2008. Currently a building is being built there. Mail sent to this address is "force" delivered around the corner to 6000 Legacy Dr, Plano, TX 75024, the address for Beal Bank, Beal Financial Corp. and LVN Corp. MGC Mortgage is a subsidiary of Beal Bank/Beal Financial Corp. Letters from the Plano Postmaster prove this.

MGC Mortgage has another address: 1 Corporate Dr., Ste 360, Lake Zurich, IL 60047-8945. This is the same address as Dovenmuehle Mortgage, Inc., a company that often shows up on trustee sale notices for MGC foreclosures. MGC doesn't have an IRS tax id number.

Click for Full Document

D. Andrew Beal is a multi-billionaire gambler from Texas who is renowned for tax evasion and deceptive business practices. He has created some 200 shelter or front corporations that apparently launder his ill gotten funds. It's speculated that he is a major shareholder of GMAC. He backed George W. Bush's campaign for the presidency and is "in" with the Texas aristocrats. It isn't by chance that Texas is hosts a majority of the notoriously nasty sub-prime lenders that have used unethical, deceptive, fraudulent and illegal business tactics.

IN THE CIRCUIT COURT OF THE ELEVENTH
JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA
CIVIL ACTION

12 - 1 6 2 5 7 CA 2 3

DEUTSCHE BANK TRUST COMPANY AMERICAS AS TRUSTEE
RAMP 2007SP3,

      Plaintiff,

                CASE NO.
vs.             DIVISION

SPACE FOR RECORDING ONLY F.S.§695.26

STEPHANIE HARRIS; THE UNKNOWN SPOUSE OF STEPHANIE HARRIS; LINCOLN MEWS
CONDOMINIUM, INC.; ANY AND ALL UNKNOWN PARTIES CLAIMING BY, THROUGH, UNDER,
AND AGAINST THE HEREIN NAMED INDIVIDUAL DEFENDANT(S) WHO ARE NOT KNOWN TO BE
DEAD OR ALIVE, WHETHER SAID UNKNOWN PARTIES MAY CLAIM AN INTEREST AS SPOUSES,
HEIRS, DEVISEES, GRANTEES, OR OTHER CLAIMANTS; TENANT #1, TENANT #2, TENANT #3,
and TENANT #4 the names being fictitious to account for parties in possession

      Defendant(s).
_____/

## NOTICE OF LIS PENDENS

    To the above-named Defendant(s) and all others whom it may concern:

    You are notified of the institution of this action by Deutsche Bank Trust Company Americas as Trustee

RAMP 2007SP3, against you seeking to foreclose a mortgage on the following property in Miami-Dade County,

Florida:

CONDOMINIUM UNIT NO. 2, OF LINCOLN MEWS CONDOMINIUM, TOGETHER WITH AN
UNDIVIDED INTEREST IN THE COMMON ELEMENTS APPURTENANT THERETO, ACCORDING TO
THE DECLARATIONS OF CONDOMINIUM THEREOF, RECORDED IN OFFICIAL RECORDS BOOK
21772, AT PAGE 2818, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA,
TOGETHER WITH ANY AMENDMENTS THERETO.
A/K/A 1525 LENOX AVE APT. 2, MIAMI BEACH, FL 33139-3313

    Dated this 13 day of April , 2011.

                        Albertelli Law
                        P.O. Box 23028
                        Tampa, Florida 33623
                        (813) 221-4743

                        By: _____
                        VINCENT MCMANUS, ESQ.
                        FLORIDA BAR NO. 60898

BMW - 11-73619 - T10005

payment. The last payment received was applied to the March 1, 2008 installment, and no subsequent payments have been applied to the loan.

      6.     Plaintiff declares the full amount payable under the Note and Mortgage to be now due.

      7.     Plaintiff must be paid $295,627.25 in principal on the Note and Mortgage, together with interest from March 1, 2008, late charges, and all costs of collection including title search expenses for ascertaining necessary parties to this action and reasonable attorney's fees.

      8.     All conditions precedent to the acceleration of the Note and foreclosure of the Mortgage have been performed or have occurred.

      9.     Plaintiff has retained the law firm of Albertelli Law in this action and is obligated to pay it a reasonable fee for its services in bringing this action as well as all costs of collection. Plaintiff shall be entitled to an award of any fees and costs incurred in this action based on the terms of the instruments upon which this action is based.

      10.    The interests of each Defendant are subject, subordinate, and inferior to the right, title, interest, and lien of Plaintiff's Mortgage, unless as otherwise provided for by law.

      11.    Stephanie Harris may have or claim an interest in the Property that is the subject of this Foreclosure action by virtue of a Warranty Deed recorded in Official Records Book 23193, Page 2999; a Quit Claim Deed recorded in Official Records Book 24466, Page 4473; a Quit Claim Deed recorded in Official Records Book 24466, Page 4475, or may otherwise claim an interest in the Property.

      12.    Lincoln Mews Condominium, Inc. may have or claim an interest in the Property that is the subject of this Foreclosure action by virtue of any unpaid condominium assessments levied pursuant to the Declaration of Condominium and any interest acquired pursuant to Chapter 718 F.S., or may otherwise claim an interest in the Property.

      13.    The Unknown Spouse of Stephanie Harris may have or claim an interest in the Property that is the subject of this Foreclosure action by virtue of homestead rights, possession, or any right of redemption, or may otherwise claim an interest in the Property.

      14.    Tenant #1, Tenant #2, Tenant #3 and Tenant #4, the names being fictitious to account for parties in possession who may claim some interest in the Property that is the subject of this foreclosure action by virtue of an unrecorded lease or purchase option, by virtue of possession, or may otherwise claim an interest in the Property. The names of these Defendants are unknown to the Plaintiff.

      WHEREFORE, Plaintiff requests that the Court ascertain the amount due Plaintiff for principal and interest on the Note and Mortgage and for late charges, abstracting, taxes, expenses and costs, including attorney's fees, plus interest thereon; that if the sums due Plaintiff under the Note and Mortgage are not paid immediately, the Court foreclose the Mortgage and the Clerk of the Court sell the Property securing the indebtedness to satisfy Plaintiff's mortgage lien in accordance with the provisions of Section 45.031, Florida Statutes (1999); that the rights, title and interest of any Defendant, or any party claiming by, through, under or against any Defendant named herein or hereafter made a Defendant be forever barred and foreclosed; that the Court appoint a receiver of the Property and of

the rents, issues, income and profits thereof, or in the alternative, order sequestration of rents, issues, income and profits pursuant to Section 697.07, Florida Statutes (1995); and that the Court retain jurisdiction of this action to make any and all further orders and judgments as may be necessary and proper, including the issuance of a writ of possession and the entry of a deficiency decree, when and if such deficiency decree shall appear proper, if borrower(s) has not been discharged in bankruptcy.

### FLA. R. CIV. P. 1.110(b) VERIFICATION

Under penalty of perjury, I declare that I have read the foregoing, and the facts alleged therein are true and correct to the best of my knowledge and belief.

Printed name: **Ann-Marie Owens**

Title: Authorized Officer

Company: GMAC Mortgage, LLC., Servicer for Plaintiff

Date: April 9, 2012

Plaintiff, by and through the undersigned attorney, prays this honorable Court grant the above requested relief and such other relief deemed appropriate and just.

Albertelli Law
P.O. Box 23028
Tampa, Florida  33623
(813) 221-4743

By: _____

**VINCENT MCMANUS, ESQ.**
**FLORIDA BAR NO. 60898**

BMW - 11-73619

Department of Defense Manpower Data Center

Results as of : Apr-13-2012 06:09:05



Status Report
Pursuant to the Servicemembers Civil Relief Act

Last Name: Harris First Name: Stephanie Date Of Interest: Apr-13-2012

| Active Duty End Date | Status | Service Component |
|---|---|---|
| | On Active Duty On Date of Interest | |
| | No | NA |
| | This response reflects the individual's active duty status based on the Date of Interest. | |

| | Left Active Duty Within 367 Days of Date Of Interest | |
|---|---|---|
| | No | NA |
| | This response reflects whether the individual left active duty status within 367 days preceding the Date of Interest. | |

| | The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Date of Interest | |
|---|---|---|
| | No | NA |
| | This response reflects whether the individual or his/her unit has received early notification to report for active duty | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the date of interest as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard).  This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

Mary M. Snavely-Dixon

Mary M. Snavely-Dixon, Director
Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Arlington, VA 22350

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 501 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the date of interest, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service via the "defenselink.mil" URL: http://www.defenselink.mil/faq/pis/PC09SLDR.html. If you have evidence the person was on active duty for the date of interest and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 521(c).

If you obtain additional information about the person (e.g., a SSN, First Name), you can submit your request again at this Web site and we will provide a new certificate for that query

This response reflects the following information: (1) The individual's Active Duty status on the Date of Interest (2) Whether the individual left Active Duty status within 367 days preceding the Date of Interest (3) Whether the individual or his/her unit received early notification to report for active duty on the Date of Interest.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN, and date of interest provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.

## Report ID: null

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the COUNTY       [Type of Recording Jurisdiction] of MIAMI-DADE                                                    [Name of Recording Jurisdiction]:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT 'A'

Parcel ID Number: 02-3234-151-0020                    which currently has the address of
1525 LENOX AVE., UNIT 2                                                          [Street]
MIAMI BEACH                                [City], Florida 33139        [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

Initials:

-6A(FL) (0005).02              Page 3 of 16                          Form 3010  1/01

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment



-6A(FL) (0005).02    Page 4 of 16    Initials: _____    Form 3010  1/01

can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest

shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.



-6A(FL) (0005).02                    Page 6 of 16                  Initials: _____                    Form 3010   1/01

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

 

-6A(FL) (0005).02          Page 7 of 16          Initials:          Form 3010  1/01

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender *otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.*

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** *Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's* knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.



-6A(FL) (0005).02                          Page 8 of 16              Initials:              Form 3010  1/01

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.



(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of

any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers



-6A(FL) (0005).02                                 Page 11 of 16                    Initials: [signature]                    Form 3010   1/01

unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the



purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

   20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

   Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

   21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.



Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____    _____ (Seal)
                                    STEPHANIE HARRIS          -Borrower

                                    [REDACTED]

                                    (Address)

_____    _____ (Seal)
                                                              -Borrower

                                    (Address)

_____ (Seal)   _____ (Seal)
-Borrower                                                     -Borrower

(Address)                          (Address)

_____ (Seal)   _____ (Seal)
-Borrower                                                     -Borrower

(Address)                          (Address)

_____ (Seal)   _____ (Seal)
-Borrower                                                     -Borrower

(Address)                          (Address)

[REDACTED]

VMP®-6A(FL) (0005).02              Page 15 of 16              Form 3010   1/01

STATE OF FLORIDA, *Palm Beach*

The foregoing instrument was acknowledged before me this *21st day of February 2007* by

STEPHANIE HARRIS, A SINGLE WOMAN

who is personally known to me or who has produced *FL drivers license* as identification.

_____

Notary Public

VMP -6A(FL) (0005).02                    Page 18 of 18                    Form 3010    1/01

Initials: *SM*

Judith M. Linskey
Commission #DD325898
Expires: Jun 21, 2008
Bonded Thru
Atlantic Bonding Co., Inc.

Condominium Unit No. 2, of LINCOLN MEWS CONDOMINIUM, according to the Declaration of Condominium thereof, recorded in Official Records Book 21772, at Page 2818, of the Public Records of Miami-Dade County, Florida.

$S14$

Loan Number

## ADJUSTABLE RATE NOTE
**(LIBOR Six-Month Index (As Published In The Wall Street Journal)-Rate Caps)**
**Including Prepayment Penalty**

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| 02/21/2007 | FT. LAUDERDALE | FLORIDA |
|---|---|---|
| [Date] | [City] | [State] |

**1525 LENOX AVE., UNIT 2, MIAMI BEACH, FLORIDA 33139**
[Property Address]

### 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 297,500.00  (this amount is called "Principal"), plus interest, to the order of Lender.  Lender is PEOPLE'S CHOICE HOME LOAN, INC. a WYOMING CORPORATION.

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 9.400% . The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3.  PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the 1st day of each month beginning on April 1, 2007. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on March 1, 2037, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 52678, Irvine, CA 92619 or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ 2,479.87 . This amount may change.

**(C) Monthly  Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

### 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Date(s)**

The interest rate I will pay may change on the 1st day of March, 2009  and every  6 month(s) thereafter. Each date on which my interest rate could change is called a "Change Date."

---

adjnote1    09/26/01                                   Page 1 of 4                               Initials: _____



### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in the Wall Street Journal. The most recent Index figure available as of the   date 45 days before each Change Date  is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information.  The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding seven and three-quarters percentage points ( 7.750%  ) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than  12.400% or less than 9.400 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one  percentage point(s) ( 1.000%  ) from the rate of interest I have been paying for the preceding 6  months.

My interest rate will never be greater than 15.400%.   My interest rate will never be less than 9.400%.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date.  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due.  A payment of Principal only before it is due is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not made all the monthly payments then due under this Note.

The Note Holder will use my Prepayment to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment.  However, any reduction due to my partial prepayment may be offset by an increase in the interest rate.

If within Twenty-four (24) months from the date of execution of the Security Instrument, I make full Prepayment or partial Prepayment, and the total of such Prepayment(s) in any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan, I will pay a Prepayment charge in an amount equal to 6 months' advance interest on the amount by which the total of my Prepayment(s) within that 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

## 8. GIVING OF NOTICES

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 12. DOCUMENTARY TAX

The state documentary tax due on this Note has been paid on the Mortgage securing this indebtedness.

**WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.**

_____ (Seal)                    _____ (Seal)
STEPHANIE HARRIS              -Borrower                                                      -Borrower

_____ (Seal)                    _____ (Seal)
                             -Borrower                                                      -Borrower

_____ (Seal)                    _____ (Seal)
                             -Borrower                                                      -Borrower

_____ (Seal)                    _____ (Seal)
                             -Borrower                                                      -Borrower

fladjnote4                          Page 4  of 4                     [Sign Original Only]
                                                                     09/26/01

Click for the entire history and evidence of my experience with mortgage fraud, By Denise Subramaniam

**Fraudulent Deed Assignments**



Dana Lantry appears to have been an employee of People's Choice Home Loan, Inc. However she was not an Asst. Vice President; she worked in their Loss Mitigation department. Her name is on a loss mitigation form for UBS AG New York Branch with the same address as People's Choice Home Loan, Inc. (Click to view this form) I was unable to find her signature online to compare with this one.

Notice the date above Dana's signature is 12/29/05 and that this date is written in the same handwriting as the one above the notary's signature. It also states that the document was prepared by **First American Title Insurance Company** in Portland OR. The phone number, 503-790-7890, is disconnected.

First American Title Insurance Company's name was gleaned from the Deed of Trust filed in 2004 for use here. The same is true for Paul S. Cosgrove.

---

I spoke with Mitch Steeves, State Manager, at First American Title on 11/2/11 and emailed this assignment of deed of trust to him for review. He told me it is highly unlikely his company prepared this document. His email response is below:

On the next page is a letter written by GMAC and dated 4/3/06 stating that they do not own my mortgage. And on page 8 is a letter dated 4/18/2006 from EMC Mortgage stating GMAC had acquired my loan.

Why is there so much dishonesty about who "owns" my loan?

The problems I'm pointing out here are NOT just careless mistakes — they are deliberate attempts to deceive.

PAY TO THE ORDER OF

RESIDENTIAL FUNDING COMPANY, LLC
WITHOUT RECOURSE
PEOPLE'S CHOICE HOME LOAN, INC.
A Wyoming Corporation

By

DANA LANTRY
Title:  Asst. Vice President

PAY TO THE ORDER OF
LaSalle Bank, N.A. as Trustee
WITHOUT RECOURSE
Residential Funding Company, LLC

By:

Judy Faber, Vice President

## **Exhibit 2-R**

**GMAC Mortgage's motion for relief from the automatic stay**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| **STEPHANIE HARRIS,** | § | **Case No:. 10-11746-BKC-AJC** |
| | § | **CHAPTER 7** |
| Debtor. | § | |
| | § | |
| _____ | § | |

### MOTION AND MEMORANDUM TO DETERMINE NON-APPLICABILITY OF THE AUTOMATIC STAY OR, IN THE ALTERNATIVE, MOTION FOR RELIEF FROM STAY OF THE FLORIDA DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION, DIVISION OF FLORIDA CONDOMINIUMS, TIMESHARES AND MOBILE HOMES

## ANY INTERESTED PARTY WHO FAILS TO FILE AND SERVE A WRITTEN RESPONSE TO THIS MOTION WITHIN 14 DAYS AFTER THE DATE OF SERVICE STATED IN THIS MOTION SHALL, PURSUANT TO LOCAL RULE 4001-1(C), BE DEEMED TO HAVE CONSENTED TO THE ENTRY OF AN ORDER GRANTING THE RELIEF REQUESTED IN THE MOTION.

The Florida Department of Business and Professional Regulation, Division of Florida Condominiums, Timeshares and Mobile Homes ("the Division"), respectfully files its *Motion and Memorandum to Determine Non-Applicability of the Automatic Stay or, in the Alternative, Motion from Relief from Stay* and would show the Court as follows:

I.    **OVERVIEW**

1.    The Division asserts that the police and regulatory exception found in 11 U.S.C. §362(b)(4) applies to the prepetition circuit court action the Division brought against Stephanie

1

Case 10-19696-AJC    Doc 49    Filed 06/08/10    Page 2 of 12

Harris complaining of (among other things) the Debtor's violation of Florida condominium regulatory statutes concerning failure to turn over control of the Condominium Association, charging improper assessments to the Condominium Association, and commingling of Association funds.   The Division is a governmental unit, as that term is defined in the Bankruptcy Code, with the power and the duty to enforce and ensure compliance with the Condominium Act.   The primary purpose of the laws which the Division seeks to enforce in the circuit court action is consumer protection for Florida residents living in condominiums.

2.   Lincoln Mews is a condominium development located in Miami Beach, Florida, consisting of 6 residential units. It was established in 2003 pursuant to Florida's "Condominium Act," chapter 718, Fla. Stat. (2003). The Division is the state agency charged with enforcing the Condominium Act, and the administrative rules promulgated thereunder.   The Division has jurisdiction to investigate complaints, enter cease and desist orders, impose civil penalties, revoke or suspend a registration, and take affirmative action which in the judgment of the Division will enforce compliance with the purposes of chapter 718, Fla. Stat., relating to the development, construction, sale, lease, ownership, operation, and management of residential condominium units §718.501, Fla. Stat.  The Division seeks injunctive relief and the imposition of civil fines and penalties against Stephanie Harris in the pending civil court action.   Civil penalties such as those sought by the Division in the state court action play an integral role in consumer protection by forcing compliance with state law, regulating the design and operation of condominiums, and serving as a deterrent to would be violators of the Condominium Act.   As such, the civil court action is clearly an exercise of the Division's police or regulatory power excepted from the automatic stay by §362(b)(4).

3.   Alternatively, should this Court for some reason find that the civil court action is not

excepted from the stay by the police or regulatory exception, the Division asks that this Court modify the stay to permit it to proceed against the Debtor to enforce Florida law to protect consumers, to prevent fraud, to protect the public at large as potential purchasers of condominium units and to effectuate public policy.

## II.    BACKGROUND

4.    On August 30, 2008, the Division served a summons and complaint upon the Debtor, Stephanie Harris, individually.  The civil court case number is 08-40836-CA-09.  The related DBPR case numbers are 2006-057258 and DBPR 2008-012098.  The action was filed in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.  On October 9, 2008, the Division filed its Amended Complaint annexed hereto as Exhibit "A".  The Division's present investigation of Stephanie Harris responds to complaints filed by residential condominium unit-owners beginning in 2006.  On January 27, 2010, approximately 30 minutes before the first evidentiary hearing to be heard in the state court case (Division's Motion to Appoint Receiver) Debtor, Stephanie Harris, filed a *pro se* bankruptcy petition as an individual Debtor pursuant to 11 U.S.C. Chapter 7.

5.    The Declaration of Condominium for Lincoln Mews ("Declaration") provides that *"Developer" means STEPHANIE HARRIS, and those of her successors and assigns who shall create or offer for sale or lease, Condominium Parcels in the Condominium in the ordinary course of business . . . .*  Dec. § 2.18, p. A-3, OR Bk 327712, Pg 2820.  The Declaration further provides that *"Unit Owner" means the person(s) owning a Unit in fee simple*.  Dec. § 2.28, p. A-3, OR Bk 327712, Pg 2820.  These definitions are consistent with those provided in the Condominium Act, §§718.103(16) and (28).  The Division's action is solely against Stephanie

Harris individually as the developer, not Stephanie Harris the unit owner.[1]

## III.    ARGUMENT

### A.    The State Court Proceeding is Excepted from the Automatic Stay Due to the Police and Regulatory Exception in 11 U.S.C. §362(b)(4).

6.    The filing of a bankruptcy petition stays all entities from certain proceedings or acts against the debtor or the property in the bankruptcy estate, 11 U.S.C. §362(a).  The state court action, but for the police or regulatory exception, would be stayed because it is "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have commenced before the commencement of the case under this title."  11 U.S.C. §362(a)(1).4. Governmental entities, however, are free to continue to exercise their regulatory and police power during the pendency of a bankruptcy.  The Bankruptcy Code provides an exception to the automatic stay for "the commencement or continuation of an **action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power**."  11 U.S.C. §362(b)(4) (emphasis added).[2]  The Bankruptcy Code defines "governmental unit" to include government at the federal, state, and local levels and includes a government "department, agency or instrumentality" of the State, as a "state."  11 U.S.C. §101(27).  In the instant case, the Division is a "governmental unit" as defined by 11 U.S.C. §101(27).  Further, in its Complaint,

---

[1] Stephanie Harris developed Lincoln Mews Condominium in her personal name.  Harris has sold 5 of the 6 units. She bought back 2 of the 5 she sold.  One unit remains as an unsold developer-owned unit.  This unsold developer-owned unit is where Harris has and continues to reside since the creation of the condominium in 2003.  She claims this unit to be her homestead.  The Division does not agree with that claim of right.

[2]  Under paragraph (1), (2), (3) or (6) of subsection (a) of this subsection , commencement of or continuation of an action or proceeding by a governmental unit. . . to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power.  Amendments to 11 U.S.C. §326 contained in Section 273 of 5.610 the Chemical Weapons Convention Implementation Act as part of Iran Missile Sanctions Act of 1977.  H.R. 2709.

the Division alleges that the Debtor was operating as a "developer" and illegally maintaining control and misusing funds of a condominium association in derogation of state law.

7.    The Fourth Circuit, acknowledging the legislative history behind the police and regulatory exception, provided some guidance regarding the extent of the exception in its *E.E.O.C. v. McLean Trucking* decision.  As the Court explained:

> Paragraph (4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers.  Thus, where a governmental unit is suing a debtor to prevent or stop violation of **fraud**, environmental protection, **consumer protection**, safety, or **similar police or regulatory laws**, or *attempting to fix damages for violation of such a law*, the action or proceeding is not stayed under the automatic stay.

*E.E.O.C. v. McLean Trucking Co.*, 834 F.2d 398, 401 (4th Cir. 1987) (*quoting* S. Rep. No. 989, 95th Cong., 2d Sess. 52 (1978) ("Senate Report"), *reprinted in*  1978 U.S. Code Cong. & Admin. News 5787, 5838 (bold emphasis added)).

8.    To determine whether an action falls under the police and regulatory power exception, a court must determine the purpose of the law being enforced.  If the purpose of such law is either (i) promotion of public safety and welfare or (ii) effectuation of public policy, the police or regulatory exception to the stay applies.  *Safety-Kleen, Inc. (Pinewood) v. Wyche*, 274 F.3d 846, 865 (4th Cir. 2001).  *In Re: Fernandez*, 2010 Bankr. Lexis 658, 2010WL 731672 (SDFL, Miami Division).  Typically, courts look to see whether the governmental unit is acting primarily as described above or, by contrast, merely in its own or another's pecuniary interest.[3]  This is an

_____

[3]  According to the Fourth Circuit, a court must "look to the purpose of the law that the state is attempting to enforce.  If the purpose of that law is to promote 'public safety and welfare,' . . . or to 'effectuate public policy,' . . . then the exception applies.  On the other hand, if the purpose of the law relates 'to the protection of the government's pecuniary interest in the debtor's property,' . . . or to 'adjudicate private rights,' . . . then the exception is inapplicable. . . .  The fact that one purpose of the law is to protect the state's pecuniary interest does not necessarily mean that the exception is inapplicable.  Rather, [a court] must determine the *primary* purpose of the law

5

objective inquiry.  The court should "examine the purpose of the law that the state seeks to enforce" rather than the state's (subjective) "intent in enforcing the law in a particular case."  *Id.*

9.  When Congress identified these two kinds of governmental action, one that merely protects the government's pecuniary interest in the debtor's property and one that by contrast promotes public safety and welfare and effectuates public policy, it recognized that enforcement of the latter "merits a higher priority than the debtor's rights to a 'cease fire' or the creditors' rights to an orderly administration of the estate."  *United States v. Nicolet, Inc.*, 857 F.2d 202, 207 (3d Cir. 1988).  *See also In re Young Oil Corp.*, 419 B.R. 336 (W.D. Ky. 2009) (finding that under the "public policy test" proceedings that effectuate public policy are excepted from the stay); *In re Cutting Edge Enterprises, Inc.,* 372 B.R. 255 (M.D.N.C. 2007) (holding that the exception applies even if a law with primarily a public policy purpose also has a pecuniary purpose); *In re Nease*, 391 B.R. 470, (M.D. Fla. 2008) (finding county's authority to act against excessive residential development came within exception to automatic stay); *In re Blunt*, 210 B.R., 626, (M.D. Fla. 1997) (finding city demolition of debtor's condemned building exempt from stay).

10.  In its state court action against the Debtor, the Division is acting in its capacity as an enforcing authority of the Florida Condominium Act, Chapter 718 of the Fla. Stat..  The law explicitly states a public-policy purpose.  The "purposes" of the Act are "[t]o give statutory recognition to the condominium form of ownership of real property" and "[t]o establish procedures for the creation, sale and operation of condominiums."  §718.102, Fla. Stat..  Condominiums and the forms of ownership interests therein are strictly creatures of statute.  *See* §§718.101- 718.622, Fla. Stat. (2009); *see also Woodside Village Condo. Ass'n v. Jahren,* 806

---

that the state is attempting to enforce."  *Safety-Kleen, Inc.,* 274 F.3d at 865 (internal citations omitted) (emphasis in original).

So. 2d 452 (Fla. 2002).   According to the Supreme Court, a bankruptcy court should not seek to substitute its own judgment about whether the government's "proposed exercise of [its] police and regulatory action is legitimate."   To do so is "inconsistent with the limited authority Congress has vested in bankruptcy courts."  *Board of Governors of the Fed. Reserve Sys. v. MCorp Fin., Inc.,* 502 U.S. 32, 40, 112 S.Ct. 459, 464 (1991).  See also, *Bevelle v. Jefferson County*, 348 B.R. 812 (N.D. Ala. 2006).

11.  The Division alleges in its Complaint that the Debtor has failed to provide a turnover audit, failed to provide the source documents upon which she claims her financial report is based, failed to timely turnover control of the condominium association claiming that the developer still holds more than 15% of the original condominium units for sale in the ordinary course of business (i.e., the unit that she lived in since the inception of the condominium – which she claims to be her homestead), failed to created annual budgets, failed to fund statutory reserves, commingled association funds with personal funds, allowed her daughter to use the association's trust account debit card for her personal use for more than 175 transactions over a period of more than two years, refuses to pay pre-petition and post-petition condominium assessments to the unit-owner controlled board of directors, improperly assessed the unit owners for utility services using the numerator of 1 and denominator of 6, rather than basing each unit's financial obligation on each unit owner's proportionate share of ownership interest in the whole of the condominium, failed to prepare year-end reports, failed to hold annual meetings, failed to hold budget meetings, failed to insure the common element, and committed other acts that threaten the life, safety, and well-being of those who purchased condominiums units from her. The police and regulatory exception provides government with the ability to uniformly enforce its laws despite the debtor's position as a bankrupt.  *Brock v. Rusco*, 842 F.2d 270 (11th Cir.

Case 10-13996-AJC    Doc 49    Filed 06/08/10    Page 8 of 12

1988).

12.    The Division is seeking injunctive relief as well as the imposition of fines and penalties against the Debtor in the circuit court action. "The [police and regulatory] exception extends **to permit an injunction and enforcement of an injunction**. . . ." *McLean Trucking Co.*, 834 F.2d at 401 (*quoting* S. Rep. No. 989, 95th Cong., 2d Sess. 52 (1978) ("Senate Report"), *reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 5838 (bold emphasis added)). The appointment to a receiver at the request of a governmental agency to take exclusive control of an institution that violated federal securities laws in order to prevent further injury and further violations was held to be exempt from the automatic stay under 11 U.S.C. §362(b)(4). *Securities & Exchange Commission v. First Financial Group*, 645 F.2d 429 (5th Cir. 1981). Clearly, therefore, the Division's obtaining and enforcing an injunction through the circuit court action is excepted from the automatic stay.

13.    Further, the courts recognize that the police or regulatory exception to the stay even permits a governmental unit to obtain a money judgment but does not extend to allow the government to *collect* any such judgment, absent relief from the stay. *Id*.

14.    The Court in *United States v. X, Inc.,* 246 B.R. 817 (E.D. Va. 2000), recognized that by imposing penalties, "the government is simply seeking to deter and punish violations of its regulations. . . ." *X, Inc*., 246 B.R. at 820 (*citing United States v. Commonwealth Cos*., 913 F.2d 518, 522  (8th Cir. 1990); and 11 U.S.C. §362(b)(4)). Therefore, the Division may seek to have its fines and penalties reduced to judgment without implicating the automatic stay.

15.    For the reasons set out above, the 11 U.S.C. §362(b)(4) police and regulatory exception to the stay applies in the instant case, and the Division should be permitted to proceed in its circuit court action against the Debtor.

### B.    Alternatively, the Automatic Stay Should be Lifted.

16.    Alternatively, should this Court find that the 11 U.S.C. §362(b)(4) police and regulatory exception to the automatic stay does not apply, or if the Circuit Court awards a non-pecuniary loss money judgment for fines and penalties which is excepted from an 11 U.S.C. 727 discharge pursuant to 11 U.S.C. §523(a)(7), the Division requests that the stay be lifted in order for the Division to proceed against the Debtor in its circuit court proceeding.

17.    Under 11 U.S.C. §362(d), relief from the automatic stay can be granted for cause. However,

> '[c]ause' is not specifically defined in the Bankruptcy Code, but 'a desire to permit an action to proceed to completion in another tribunal may provide. . . . cause.' HR Rep. No. 595, 95th Cong., 1st Sess. 343-33 (1977). In exercising its discretion in determining if 'cause' is present to lift the stay, '[t]he court must balance potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if relief is denied.' *In re Robbins*, 964 F.2d 342, 345 (4th Cir. 1992). The factors the court is to consider include: (1) whether the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary; (2) whether modifying the stay will promote judicial economy…; and (3) whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court.

*In re 210 W. Liberty Holdings, LLC*, 400 B.R. 510, 514 (Bankr. N.D. W.Va. 2009) (quoting *In re Robbins*, 964 F.2d 342, 345 (4th Cir. 1992)).

18.    In the instant case, the only issues involved in the pending circuit court action are issues of Florida condominium law. No bankruptcy issues are present, and, therefore, the expertise of the Bankruptcy Court is not necessary in this circuit court action.

19.    Further, judicial economy will be served by keeping the litigation in Miami-Dade Circuit Court. First, the Circuit Court Judge is already familiar with this case, the laws at issue

and the parties.  If this action were removed to the Bankruptcy Court, the Bankruptcy Court would need to become familiar with the Florida condominium statutes and regulations enforced by the Division.  Also, because the civil action has been pending before the Circuit Court for seventeen months, the matter could likely be more quickly litigated.  Removing the matter to the Bankruptcy Court would likely slow down the litigation, unduly burden the Bankruptcy Court, and possibly, the entire bankruptcy process.

20.  The Division is not seeking to enforce a money judgment outside of the bankruptcy context except to the extent such money judgment is excepted from discharge pursuant to 11 U.S.C. §523(a)(7) and after the automatic stay is terminated by discharge, dismissal or otherwise. *Securities and Exchange Commission v. Telsey*, 144 B.R. 563 (SDFL 1992), *McFarland v. United States of America*, 399 B.R. 549 (M.D. Florida 2009), nor is the Division trying to exercise improper control over property of the Estate.  The Debtor's Estate will not be harmed by the Court's allowing the Division to liquidate its claim for fines and penalties before the Circuit Court and enforce its money damages only as allowed by bankruptcy law.  The Division will, if required by this Court, return to the Bankruptcy Court for an 11 U.S.C. §523 discharge exception determination.

21.  Because the only legal questions at issue in the circuit court action involve issues of Florida Condominium law, and as judicial economy would be served by allowing the Florida Circuit Court Judge to continue hearing the matter, and as the Division will not seek to enforce any dischargeable money judgment, the Division requests that the stay be lifted for it to proceed against the Debtor in the Circuit Court in Miami-Dade County.

**CONCLUSION**

       **WHEREFORE**, the Division respectfully requests that this Court determine that the police and regulatory exception to the automatic stay applies to the Circuit Court action and that the Division may proceed against the Debtor in Miami-Dade Circuit Court. Alternatively, the Division requests that the Court lift the automatic stay to allow the Division to proceed against the Debtor before the Circuit Court Miami-Dade County. Further, the Division requests that it be allowed to enforce the judgment obtained including collection of any non-dischargeable money judgment and any injunctive relief and for such other and further relief as to this Court may seem just and proper.

       Respectfully submitted,

       **FLORIDA OFFICE OF ATTORNEY
GENERAL, BILL MCCOLLUM**


       /s/Cheryl Marie Brittle
       **Cheryl Marie Brittle**
       Florida Bar No.: 0786421
       1300 Riverplace Boulevard, Suite 405
       Jacksonville, FL 32207
       PH:   (904) 348-2720 Ext. 138
       FAX:  (904) 858-6918
       **Attorney for Defendant STATE OF
FLORIDA, DEPARTMENT OF
BUSINESS AND PROFESSIONAL
REGULATION DIVISION OF
FLORIDA CONDOMINIUMS,
TIMESHARES AND MOBILE HOMES**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served vie email transmission this ____ day of May, 2010 and in accordance with the directives from the Court Notice of Electronic filing which was generated as a result of electronic filing on the following parties:


Jeffrey S. Berlowtiz, Esq., Attorney for Debtor  jberlowitz@siegfriedlaw.com,
Office of the US Trustee   USTPRegion21.MM.ECF@usdoj.gov
Rubina K. Shaldijan, Attorney for Deutsche Bank Trust Co.   sobkmail@defaultlawfl.com
Scott Brown, Esq., Attorney for Soneet Kapila   scott@tabasfreedman.com



/s/Cheryl Marie Brittle
**Cheryl Marie Brittle**

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT, IN -
FOR MIAMI-DADE COUNTY, FLORIDA

DEPARTMENT OF BUSINESS AND
PROFESSIONAL REGULATION,
DIVISION OF FLORIDA LAND SALES,
CONDOMINIUMS, AND MOBILE HOMES,

    Plaintiff,

vs.

STEPHANIE HARRIS,

    Defendant.

_____/

**CASE NO.:  08-40836-CA-09**
**DBPR CASE NOS.:  2006057258**
                  **2008012098**

## FIRST AMENDED COMPLAINT

    Plaintiff, DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION,
DIVISION OF FLORIDA LAND SALES, CONDOMINIUMS, AND MOBILE HOMES1 (the
"Division"), by and through its undersigned attorney, hereby sues Defendant, STEPHANIE
HARRIS, and alleges:

## JURISDICTION AND VENUE

1.    This is an action for appointment of a receiver or conservator to control the
    developer's interest in the association, under § 718.501(d)(4), Florida Statutes;
    restitution payable to the non-developer unit owners, under § 718.501(d)(5), Florida
    Statutes; civil penalties payable to the Division, under § 718.501(d)(8), Florida
    Statutes; declaratory judgment, under § 86.011, Florida Statutes; and supplemental
    relief, under § 86.061, Florida Statutes, in excess of $15,000.00, exclusive of
    interest and attorney's fees.

_____

1 n/k/a Division of Florida Condominiums, Timeshares, and Mobile Homes.

2.    Division is a state agency, as defined in §120.52, Florida Statutes. Division has
      statutory responsibility for the enforcement of Chapter 718, the Florida
      Condominium Act, as provided by §718.501, Florida Statutes.

3.    Lincoln Mews is a six unit residential condominium located at 1824 Lenox Avenue,
      Miami Beach, Florida 33139.

4.    Stephanie Hardo ("Hardo") is a resident of Miami Beach, Dade County, Florida.

5.    At all times material Hardo was a condominium developer of Lincoln
      Views Condominium ("Lincoln Mews") as defined by §718.303(1)(b), Florida
      Statutes.

6.    Hardo created Lincoln Mews by filing its condominium governing documents in her
      own name with the Division in 200x, and received its approval.

7.    Hardo recorded Lincoln Mews' governing documents in the public records of Miami-
      Dade County, Florida, on October 27, 200x, beginning in Official Records Book
      11772 page 3216. (A composite of the Declaration of Condominium of Lincoln
      Mews Condominium ("Declaration"), and the exhibits thereto, including articles of
      incorporation, bylaws, and initial budget is attached hereto, as Exhibit "A.")

8.    Division conducted a formal investigation of two association complaints filed by
      Lincoln Mews unit owners and owners against Hardo, to wit:  DBPR Case Nos.
      2008067xxx and 2008012605, and has identified numerous violations of the
      provisions of chapter 718, Florida Statutes.

9.    Venue is proper in Miami-Dade County, Florida, pursuant to the provisions of §
      47.011, Florida Statutes, in that the defendant's condominium documents are
      recorded in Miami-Dade County, Florida, the real property, subject to the adverse

Page  2  of 10

situated in Miami-Dade County, Florida, and a substantial part of the events occurred in Miami-Dade County, Florida.

## ATTORNEY'S FEES AND COURT COSTS

10. The Division is obligated to pay its attorneys a reasonable fee to work the relief requested herein and has incurred other reasonable costs in this action.

11. The Division is entitled to reimbursement of its reasonable attorney's fees and court costs under § 718.501(1)(d)(3), Florida Statutes.

## COUNT I
## PETITION TO ENFORCE SUBPOENA

12. Plaintiff re-alleges and fully incorporates paragraphs 1 through 11 into this count.

13. This is an action to enforce an investigative subpoena pursuant to § 718.501(1)(c), Florida Statutes.

14. Department is a state agency, as defined in § 120.52, Florida Statutes. The Division has statutory responsibility for the enforcement of Chapter 718, the Florida Condominium Act, as provided by § 718.501, Florida Statutes.

15. The Division has the authority under § 718.501(1)(c), Florida Statutes, to issue investigative subpoenas in order to carry out its Chapter 718 enforcement responsibilities.

16. Stephen Harris is a condominium developer as defined by § 718.103(16), Florida Statutes, of Lincoln Mews Condominium ("Lincoln Mews"). Lincoln Mews is a one unit condominium located at 1326 Lenox Avenue, Miami Beach, Florida 33139. Developer Harris filed the condominium documents, i.e., own name as the developer, with the Division for review and approval before turned to the consummation by recording the declaration in the public records. Florida statute

address for the filing is: 757 Washington Avenue, Miami Beach, Florida 33139.

7.    Division is investigating a complaint that Developer Harris violated numerous provisions of Chapter 718, Florida Statutes.  It is alleged that as Developer of Lynxon Manor that:

  a.    Failed to turn over control of the condominium to the unit owners in a timely and proper manner, in violation of §718.301(4), Florida Statutes;

  b.    Failed to timely provide the 2004, 2005, 2006, and 2007 year end financial reports, in violation of §718.111(13)(a), Florida Statutes;

  c.    Failed to properly prepare and adopt the 2004, 2005, 2006, and 2007 budgets, in violation of §718.111 6.2(b), Florida Statutes;

  d.    Failed to conduct annual meetings of the association during 2004, 2005, 2006 and 2007, in violation of §718.112(2)(d)(1), Florida Statutes;

  e.    Failed to adopt hurricane shutter specifications for the association, in violation of § 718.113(5) Florida Statutes;

  f.    Failed to maintain adequate fidelity bonding for all persons who control or disburse association funds, in violation of §718.111(15)(c), Florida Statutes;

  g.    Failed to maintain and update the Question and Answer Sheet in violation of §718.111(12)(g), Florida Statutes; and

  h.    Commingled the association's funds with non-association funds, in violation of §718.111.741 Florida Statutes.

8.    The information that the Division seeks to obtain through this Court's enforcement of the subpoena will assist the Division in determining whether Developer Harris committed violations and the Florida Condominium Act as alleged above in Paragraph 5.

9.    Developer Harris' last known address of record with the Division is 757 Washington Avenue, Miami Beach, Florida 33139.  Due to the filing of the instant Petition, the

Division had received information that Hanna's personal residence is located at 1525 Lenox Avenue, Unit ^ Miami Beach, Florida 33139, and that she may be using a post office box as a mailing address at I___ a P.O. Box 39054, Miami Beach, Florida 33119-0054. However, as of the time of filing this Petition, the Division's investigation indicates that Developer Hanna's personal residence is located at 1525 Lenox Avenue, Unit 6, Miami Beach, Florida 33139.

20.    Between March 25, 1998 and April 14, 2004 the Division made its first attempt to personally serve Developer Hanna with the investigative subpoena attached hereto as Exhibit "A." The Division attempted to personally serve Hanna with the subpoena at 1525 Lenox Avenue, Unit 6 Miami Beach, Florida 33139, through the use of a process server (Choice Process). However, she could not be located at this address after several attempts. While the process server also unsuccessfully attempted to serve Developer Hanna with the subpoena at Unit 6 on 1525 Lenox Avenue, Miami Beach, Florida 33139, the Division has no reliable evidence that Hanna actually resides at that location. (Though it appears that her adult daughter may reside in Unit 2.)

21.    Between April 25, 2008 and May 8, 2008, the Division made its second attempt to personally serve Developer Hanna with the investigative subpoena attached hereto as Exhibit "A." The Division attempted to personally serve her with the subpoena at 1525 Lenox Avenue, Unit , Miami Beach, Florida 33139, through the use of a process server (Choice Process). However, Hanna could not be located at this address after a careful inquiry and diligent search.

22.    The Division has the power to serve Developer Hanna by certified mail under

§718.30 (1), Florida Statutes, which incorporates §48.031, Florida Statutes, by

reference. Section 48.031 provides for service as follows:

> 1) In addition to the methods of service provided for in the Florida
> Rules of Civil Procedure and the Florida Statutes, service may be
> made by delivering a copy of the process to the director of the
> person, which shall be binding on the defendant at [...] address:

>> (a) The plaintiff delivers to the clerk, in addition, sends
>> a copy of the process and of the pleading by certified mail to
>> the defendant at his current or his or her last known address;
>> and

>> (b) The plaintiff files an affidavit of compliance with this
>> and service before the return date of the process [...] the
>> time set by the court.

> (2) If any person, who is [...] a nonresident of this state, already engages
> in conduct prohibited by this chapter, or any one or more of the division, and
> has submitted a consent to service of process, and personal jurisdiction over
> him or her can not otherwise be obtained in this state, the director shall be
> authorized to [...] service of process if any nonresident proceeding
> against that person or his or her successor, which grows out of the conduct
> and which is brought under this chapter or [...] rule or order of the director.
> The process shall have the same force and validity as if personally served.
> Notice shall be given as provided in subsection (1).

23.   The Trustee also has the power to serve [...] by certified mail under §48.161,

Florida Statutes, which is incorporated in §48.097(?) by reference. A portion of

service provided for in ... "Florida Statutes," Section 48.161 provides in relevant

part as follows:

> (3) When any law designates a public officer, board, agency, or
> commission as the agent for service of process on any person, firm,
> or   corporation, service of process thereunder shall be made by
> leaving two copies of the process with the public officer, board,
> agency, or commission or in the other thereof, or by mailing said
> copies to the public officer, board, agency or commission. The public
> officer, board, agency, or commission shall keep a record of and file the two copies
> [...] or record its records, and promptly send one copy thereof, by
> registered or certified mail, to the person to be served at [...] as shown by
> [...] or its records. Proof of service on the public officer, board,

agency, or commission shall be by a person accepting the process which shall be issued by the public officer, board, agency, or commission promptly after service and filing in the court issuing the process. The notice accepting service behind shall state he, date upon which, but only, of the process was mailed by the public officer, board, agency, or commission to the person being served and the time for reading prescribed by the rules of procedure shall run from that date. The service is valid service for all purposes on the person for whom the public officer, board, agency, or commission is acting as agent for service of process.

23.    In compliance with sections 48.194 and 600.097(1), Florida Statutes, service on the investigative subpoena attached as Exhibit "B" was made by delivering two copies of the subpoena to the Director of the Division, Ausnas Cochran on May 15, 2008. The Director filed a copy in the Division's records. In compliance with sections 48.194 and 48.95 DCR(1), Florida Statutes.

24.    On May 19, 2008, the Division mailed copies to the investigative subpoena attached as Exhibit "B" by certified mail to Davidson Pavie at the following addresses:

        a.    670 Washington Avenue, Miami Beach, Florida 30152 (the Reasonableas less known official address of record)

        b.    P.O. Box 19050, Miami Beach, Florida 33170-9050, and;

        c.    1425 Lenox Avenue, Unit 1, Miami Beach, Florida 33139.

25.    Director Michael Cochran's Affidavit of Compliance, authorized by §494.3571(5), is attached hereto as Exhibit "C."

26.    The correspondence containing the subpoena that was sent by certified mail to Davidson Pavie at 670 Washington Avenue, Miami Beach, Florida 33139 was returned stamped "No such number." The correspondence containing the subpoena that was sent by certified mail to Lenox at P.O. Box 19050, Miami Beach, Florida 33119-9050 and 1425 Lenox Avenue, Unit 1, Miami Beach, Florida 33139 were returned stamped "undelivered."

28.  Service upon Developer Harris was complete under the terms of sections 48.161
and 48.061(3), Florida Statutes, when the Director mailed the subpoena attached
hereto as Exhibit "G" to Harris at her last known address by certified mail and
executed the Return of Service. The terms of that subpoena require that Harris
or a duly authorized representative appear at 1400 West Commercial Boulevard,
Suite 125 Fort Lauderdale, Florida 33302 on June 23, 2003 at 10:00 a.m. Harris did
not appear at the time and place indicated.

**WHEREFORE,** Department of Business and Professional Regulation, Division of
Florida Land Sales, Condominiums, and Mobile Homes respectfully petitions this Court for
an ORDER requiring Stephanie Harris to comply with the terms of the investigative
subpoena attached hereto as Exhibit "G," or to be held in contempt should she willfully fail
to do so.

## COUNT 4
## FAILURE TO TURNOVER CONTROL OF THE ASSOCIATION IN VIOLATION OF §
## 718.301(1)(e), FLORIDA STATUTES

29.  Plaintiff re-alleges and fully incorporates paragraphs 1 through 11 into this count.

30.  This is an action for damages greater than $15,000, exclusive of interest and
attorney's fees.

31.  Harris failed to transfer control of the association to the unit owners in violation of §
718.301(1)(e), Florida Statutes, and rule 61B-23.003, Florida Administrative Code.
Specifically, the Declaration of Condominium of Marina Mark Condominium was
recorded on October 27, 2003. Harris conveyed 90% of the units on November 25,
2003 (units 3, 4, see 6). Turnover was to occur three years after, then, by
November 25, 2003.

52.   Harris did not notice nor conduct a turnover election process prior to November 21, 2008, or any time thereafter.

53.   Turnover statutory occurred on November 1, 2008, as a result of each of the non-developer unit owners actively electing and mandating a turnover election meeting.

54.   Harris were secretly and unduly obstructed, interfered with, and resisted the process of turnover conducted by the non-developer unit owners.

55.   From June 21, 2007 through September 26, 2008, to circumvent the unit owners from obtaining control of the association, in violation of § 718.301, Florida Statutes, Harris began and (Lincoln Mews Homeowners Association Inc.) while purportedly operating under his business entity, registered with the Division, known as "Lincoln Mews Communities, Inc." (since the county records say) from December 22, 2008 to present.

56.   Subsequent to November 1, 2008 turnover, and beyond turnover, Harris failed or refused, and continues to fail or refuse to recognize the fact of turnover, and continues to exercise control over or interfere with a significant level of day-to-day affairs of the corporation.

57.   To the extent that Harris contends that turnover occurred on March 2, 2010 (Harris Deposition, November 13, 2009, pg. 36-37). He is assuredly mistaken, that subsequent to the alleged March 2, 2010 turnover that, if not especially as the recognized called an emergency meeting at which also never authorized of the association after relinquishing it.

58.   There is no authority in chapter 718, Florida Statutes, for a developer to regain

nullified after turnover, except for that which may be available by petitioning the courts of this state, which it has not done.

33.    As a direct and proximate cause arising from the conduct complained of in this count, the Lincoln Mews non-developer unit owners suffer damages, including but not limited to loss of use, financial loss in value, loss of the benefit of their bargain, and monetary damages.

WHEREFORE, Plaintiff, DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION, DIVISION OF FLORIDA CONDOMINIUMS, TIMESHARES, AND MOBILE HOMES, demands judgment of civil penalties against Defendant, STEPHANIE HARRIS, per the State of Florida, and an order to pay restitution to the Lincoln Mews non-developer unit owners in an amount to be determined at trial, plus reasonable costs, attorney's fees, and such other relief this Honorable Court deems desirable and just under the circumstances.

## COUNT III
## FAILURE TO TURNOVER ASSOCIATION PROPERTY, IN VIOLATION OF § 718.301(4)(c), FLORIDA STATUTES

40.    Plaintiff realleges and fully incorporates paragraphs 1 through 14 into this count.

41.    This is an action for damages greater than $15,000, exclusive of interest and attorney's fees.

42.    Harris fails to recognize that Lincoln Mews became a non-developer controlled association following the November 1, 2008 turnover, and continues to conduct association business as if she held majority control of the association, in violation of

§ 718.301, Florida Statutes.

43. Harris failed to turn over one or more items of association property with in 90 days after unit owners assumed control of the association on December 1, 2008, in violation of § 718.301(4), Florida Statutes. Specifically, he inisted to deliver to the association all of the items enumerated in § 718.301(4)(a)-(p).

44. Harris failed to pay for the cost to complete all property of the unit owners and property of the association which was held or controlled by the developer, in violation of rule 61B-23.003.4., Florida Administrative Code.

45. To the extent that Harris contends that she did turn over all property of the unit owners and property of the association, which was held or controlled by the developer, Harris failed to obtain a receipt listing each document transferred, in violation of rule 61B-23.003(3), Florida Administrative Code.

46. As a direct and proximate cause arising from the conduct complained of in this count, the Chrome Mews non-developer unit owners suffer damages, because Harris' failure to turn over all property of the unit owners and the association impedes or prevents the non-developer controlled board from fulfilling its present purpose of controlling the day-to-day affairs of the condominium association.

WHEREFORE, Plaintiff, DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION, DIVISION OF FLORIDA CONDOMINIUMS, TIMESHARES, AND MOBILE HOMES, demands judgment of civil penalties against Defendant, STEPHANIE HARRIS, due the State of Florida, and an order to pay restitution to the affected Mews non-developer unit owners in an amount to be determined at trial, plus recoverable costs, attorney's fees,

Page 11 of 19

and such other relief the Honorable Court deems equitable and just under the circumstances

## COUNT IV
## FAILURE TO CONDUCT A TURNOVER AUDIT, IN VIOLATION OF § 718.301(4)(c), FLORIDA STATUTES

47.    Plaintiff realleges and fully incorporates paragraphs 1 through 11 into this count.

48.    This is an action for damages greater than $15,000, exclusive of interest and attorney's fees.

49.    Harris failed to deliver a turnover audit within 90 days of transfer of association control, in violation of § 718.301(4)(c), Florida Statutes and rule 61B-22.002(1), Florida Administrative Code.

50.    A developer has a statutory duty to provide or attempt to provide a turnover audit at the developer's expense. § 718.301(1), Florida Statutes.

51.    As a direct and proximate cause arising from the conduct as realized of in this count, the Unicorn House condominium unit owners suffer damages, because they are unable to determine the association's financial ability, unable to determine what amounts they overpaid or underpaid, what amount items overpaid or underpaid, unable to change and approve collection of assessments with a reasonable degree of certainty, and are forced to incur the expense of accountants and lawyers to assess them in the non-compensable voluntary task of auditing the day-to-day affairs of the condominium association.

     WHEREFORE, Plaintiff, DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION, DIVISION OF FLORIDA CONDOMINIUMS,

TIMESHARES AND MOBILE HOMES, damages, judgment of and penalties against

Defendant, STEPHANIE – APER, due the date of Florida; and an order to pay

restitution to the timeshare slaves mandeveloper test owners in an amount to be

determined of data, plus reasonable costs, attorney's fees and such other relief the

Honorable Court deems equitable and just under the circumstances.

## COUNT V
## ALIENATION OF ASSOCIATION FUNDS IN VIOLATION OF § 718.111(14), FLORIDA STATUTES

52.    Plaintiff realleges and fully incorporates paragraphs 1 through 41 into this count.

53.    This is an action for damages greater than $15,000, exclusive of interest and attorney's fees.

54.    From March 2, 2006 through the time of the filing of this amended complaint, Florida has and continues to change, pay, receive, and disburse association revenue and expenses into and from non-association accounts.

55.    Prior to March 6, 2006, changed, paid, received, and disbursed association revenue and expenses into and from non-association accounts.

56.    During or about March 2006, Florida knowingly closed all bank accounts in the association's name, more specifically the association's operating checking account and escrow checking account, and thereafter failed to deposit and maintain all funds controlled by the association in the association's name, in violation of § 718.111(14), Florida Statutes.

57.    Florida closed the association's operating account and escrow accounts on March 2006, and operated thereafter (e.g., in-processed costs) in an owner-managed order

until the loss it has suffered at the determined at trial, plus reasonable costs, attorney's fees and such other relief the Honorable Court deems equitable and just under the circumstances.

### COUNT VI
### ALLEGES $10,000 ASSESSMENT TO ASSOCIATION OF A DEVELOPER'S STATUTORY EXPENSE, IN VIOLATION OF § 718.301(4), FLORIDA STATUTES

51)  Plaintiff realleges and fully incorporates paragraphs 1 through 51 this this read.

62.  This is a supplementary action for damages of less than $15,000.

63.  Homeowners Entity assessed a $10,000.00 Accountant's Fee alleged to charge it by the developer's CPA to prepare financial statements for October 2003 through March 2006.

64.  He developer retained the CPA as a date uncertain prior to September 18, 2006, to perform a review audit.

65.  On October 17, 2006, the developer's accountant wrote to Harris stating that additional documents were needed to perform the audit, and that the turn-over audit process could be completed within thirty (30) days subsequent to the completion of the review work.

66.  On November 17, 2006, the developer's accountant compiled balance sheets and related statements of revenue and expenses for years 2003, 2004, and 2005 by the developer to the Unit-in News Board of Directors that were not audited or reviewed, in accompanying financial statements because managements reports for a notice to fair accountability of all the disclosures and the assurance of said financial in accordance with accounting principles.

47.   Harris admits that although she hired the CPA to do a turnover audit at the
development's takeover, but contends that since insufficient documentation was
available to perform an audit, only financial statements could be produced thus
rendering the CPA's services to the audit of a homeowner association "chargeable
to all unit owners.

68.   Harris assessed the association $10,000.00 in violation of § 718.501(4), Florida
Statutes.

69.   Harris included the unit owners' alleged proportionate obligation of the $10,000.00
CPA fee in the amended claims of lien she recorded against the units in the county
of Lincoln Meza Condominium, Inc., on December 18, 2006, in the public records of
Miami-Dade County, Florida.

70.   As a direct and proximate cause arising from the conduct complained of in this
count, the Lincoln Mews condominium owners suffer damages including the
proportionate costs of the $10,000.00 assessment charged, interest, and the
threat of foreclosure and legal fees.

WHEREFORE, Plaintiff, DEPARTMENT OF BUSINESS AND PROFESSIONAL
REGULATION, DIVISION OF FLORIDA CONDOMINIUMS, TIMESHARES, AND MOBILE
HOMES, demands judgment of civil penalties against Defendant, STEPHANIE HARRIS,
due the State of Florida, and an order to pay restitution to the Lincoln Mews condominium
unit owners in an amount to be determined at trial, plus reasonable costs, attorney's fees,
and such other relief that Honorable Court deems equitable and just under the
circumstances.

COUNT VII
## COMMINGLING OF ASSOCIATION FUNDS, IN VIOLATION OF § 718.111(14), FLORIDA STATUTES

71. Plaintiff realleges and fully incorporates paragraphs 1 through 51.1 to this count.

72. This is an action for damages greater than $15,000, exclusive of interest and attorney's fees.

73. Marsh commingled association funds with non-association funds, in violation of § 718.111(14), Florida Statutes. Specifically, Marsh deposited association funds into her personal or loan party business accounts and used or deposited her personal and third-party business funds into the association accounts to pay sums to third-party vendors for the benefit of the association, or moved, or borrowed money between association and non-association accounts with both association and non-association funds.

74. Marsh permitted (knew or should have known) that her adult daughter to use the association's escrow account debit card to run against funds held in trust with Wachovia Bank throughout 2004, and part of 2005 and 2006.

75. The amount of expenditures charged to the association for the personal benefit of the developer's adult daughter includes at least 75 transactions totaling $1,768.18, categorized by the developer as "Pedal" plus at least 106 transactions totaling $6,645.63, categorized as "Miscellaneous" (e.g., video rentals, lunch passes, tanning body wax, cut rig hat shop, Kirk's Gym, school lunch, Eye box, and multiple cash withdrawals from automatic Teller Machines), plus at least 3 transactions totaling $970.24, categorized as "Travel" (e.g., Pier House Resort and

Sciences Act").

76. Additionally, in 2011 Lanis leased her adult daughter Association dues in further of at least five (5) months totaling $1,385.00, categorized as "Loan Payable -- Tina Hardin."

77. Hardin wrongfully allowed her daughter's name to appear on the deed card of her association, without prior consent, in violation of § 720.113(4), Florida Statutes, which states in pertinent part: COMMINGLING -- All funds collected by an association shall be maintained separately in the association's name.

78. As a direct and proximate cause arising from the conduct complained of in this count, the Jackson Mews non-developer unit owners suffer damages including but not limited to lost revenue, association diminution in value, loss of the benefit of their bargain, and termination of insurance coverage, and interruption of utility services.

WHEREFORE, Plaintiff, DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION, DIVISION OF FLORIDA CONDOMINIUMS, TIMESHARES, AND MOBILE HOMES, demands judgment of damages against Defendant, STEPHANIE HARDIN, due the Division of funds, and an order to pay restitution to the Opatch Mews non-developer unit owners in an amount to be determined at trial, or its recoverable costs, attorney's fees, and such other relief this Honorable Court deems equitable and just under the circumstances.

### COUNT VIII
### FAILURE TO FUND RESERVES AND FAILURE TO REQUIRE RESERVES IN VIOLATION OF § 718.112(2)(f)(2)(b), FLORIDA STATUTES

79.    Plaintiff realleges and fully incorporates paragraphs 1 through 11 into this count.

80.    This is an action for damages greater than $15,000, exclusive of interest and attorney's fees.

81.    Harris failed to fund reserve accounts for capital expenditures and deferred maintenance as required under the 2003 budget submitted to and approved by the Davis on in conjunction with Harris' operation of the Laguna Madre Condominiums.

82.    Harris failed to create reserve accounts for capital expenditures and deferred maintenance for years 2004, 2005, 2006, 2007, and 2008, in violation of § 718.112(2)(f)(2)(a), Florida Statutes, and rule 5 12-20.035, Florida Administrative Code, and Article 9.2 of the Declaration of Condominium of Laguna Madre Condominiums.

83.    To the extent that Plaintiff contends that she did not fund reserves or fund reserves in 2009 and 2005, but that she waived them (Harris Deposition, November 15, 2009 pg. 34) the reserves or waiver chosen is specifically prohibited under Rule 61B 22.003(1)(d), Florida Administrative Code.

84.    As a direct and proximate cause arising from the conduct complained of in this count, the Laguna Madre homeowners and unit owners suffer damages including but not limited to lack of reserves to conduct necessary repairs, cost of new construction as a result, loss of the benefit of their bargain, monetary damages, and financial inability to comply with local building codes.

WHEREFORE, Plaintiff, DEPARTMENT OF BUSINESS AND PROFESSIONAL

REGULATION, DIVISION OF FLORIDA CONDOMINIUMS, TIMESHARES, AND MOBILE HOMES" herein is judgment of civil penalties against Defendant, STEPHANIE HARRIS, due the State of Florida, and an order to pay restitution to the chosen News non developer unit-owners in an amount to be determined at trial, plus reasonable costs, attorney's fees, and such other relief this Honorable Court deems equitable and just under the circumstances.

COUNT IX

**IMPROPER SPECIAL ASSESSMENTS IN VIOLATION OF § 718.112(2)(c), FLORIDA STATUTES**

83. Plaintiff realleges and fully incorporates paragraphs 1 through 11 into this count.

85. This is an action for damages greater than $15,000, exclusive of interest and attorney's fees.

87. Harris borrowed money in the Association's name without notice to issue or vote of the board of directors, in violation of § 718.112(2)(b), Florida Statutes.

88. Harris made multiple deposits from Chadwick at the Association's escrow and operating accounts, and thereby paid rental party vendors from Chadwick's accounts, or with her personal cash ("Chadwick revenues")

89. Harris recognized and charged the Chadwick revenues as loans payable to the association ("loans")

90. Harris subsequently scoured the loans by increasing such amounts in pairs of acts and omnibus claims of loss incurred against [unclear], through fees and in lieu of the loans until she ended the partnership or ownership interest in

91. As a direct and proximate cause arising from the conduct complained of in this

Page 20 of 24

.

court, the Lincoln Mews non-developer unit owners suffer damages in the form of
the cost of the special assessments charged, lawsuit lien on title, threat of
foreclosure, uncertainty as to the true financial condition of the association,
uncertainty as to the amount if any credited or charged to the association, and
legal fees.

WHEREFORE, Plaintiff, DEPARTMENT OF BUSINESS AND PROFESSIONAL
REGULATION, DIVISION OF FLORIDA CONDOMINIUMS, TIMESHARES, and MOBILE
HOMES demands judgment of and penalties against Defendant, STEPHANIE HARRIS,
due the State of Florida, and an order to pay restitution to the Lincoln Mews non-developer
unit owners in an amount to be determined at trial, plus recoverable costs, attorney's fees,
and such other relief this Honorable Court deems equitable and just under the
circumstances.

COUNT X
IMPROPER ASSESSMENTS CHARGED TO ASSOCIATION OR DEVELOPER'S
EXPENSE, IN VIOLATION OF § 718.115(2), FLORIDA STATUTES

90.   Plaintiff realleges and fully incorporates paragraphs 1 through 14 into this count.

91.   This is an action for damages that may be greater than $15,000, exclusive of
interest and attorney's fees, or may exceed supplemental relief in this Honorable Circuit
Court for damages of less than $15,000.

92.   Harris fraudulently assessed unit owners by charging them a flat fee for one or more
utility services.

93.   Harris calculated the shared common expense for utility services using the
numerator of 1 and denominator of 0, rather than basing each unit's financial

than their ownership interest in the whole of the condominium, which resulted in periodic interruptions in utility service, over-assessment, and the imposition of liens being recorded by Harris in the name of Lincoln Mews Condominium, Inc., against each of them as to the for alleged non-payment.

WHEREFORE, Plaintiff, DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION, DIVISION OF FLORIDA CONDOMINIUMS, TIMESHARES, AND MOBILE HOMES, demands judgment of damages against Defendant, STEPHANIE HARRIS, under the State of Florida, and an order to pay restitution to the Lincoln Mews condominium unit owners in an amount to be determined at trial, plus recoverable costs, attorney's fees, and such other relief this Honorable Court deems equitable and just under the circumstances.

COUNT IX

ACTION FOR MULTIPLE CIVIL PENALTIES ARISING FROM HARRIS' FAILURE TO HOLD ANNUAL BUDGET MEETINGS AND FAILURE TO ADOPT ANNUAL BUDGETS, IN VIOLATION OF § 718.112(2)(e), FLORIDA STATUTES, FAILURE TO PREPARE YEAR-END FINANCIAL REPORTS, AND FAILURE TO TIMELY PREPARE YEAR-END FINANCIAL REPORTS; FAILURE TO DELIVER YEAR-END FINANCIAL REPORTS, IN VIOLATION OF § 718.111(13), FLORIDA STATUTES; FAILURE TO MAINTAIN ADEQUATE INSURANCE OR FIDELITY BONDING FOR ALL PERSONS WHO CONTROL OR DISBURSE ASSOCIATION FUNDS, IN VIOLATION OF § 718.111(11)(h), FLORIDA STATUTES; FAILURE TO MAINTAIN QUESTION AND ANSWER SHEET, IN VIOLATION OF § 718.111(12)(a)(16), FLORIDA STATUTES; AND FAILURE TO PROPERLY CONDUCT ANNUAL ELECTIONS, IN VIOLATION OF § 718.112(2)(d), FLORIDA STATUTES; FAILURE TO PROVIDE ACCESS TO OFFICIAL RECORDS, IN VIOLATION OF § 718.111(12), FLORIDA STATUTES; AND FAILURE TO MAINTAIN RECORDS IN VIOLATION OF § 718.111(12)(a), FLORIDA STATUTES

102.   Plaintiff realleges and fully incorporates paragraphs 1 through 11 but the name

103.   This is an action for damages greater than $15,000, exclusive of interest and

attorney's fees.

104.    Hanis failed to hold annual budget meetings to properly balance and adopt years 2004, 2005, 2006, and 2007 annual budgets, in violation of § 718.112(2)(h), Florida Statutes.

105.    To the extent that Hanis claims that the 2003 budget was also used for 2004 and 2005, it would have been later but was not re adopted by default.   In this regard, §718.112(2)(e)(1), Florida Statutes, provides in pertinent part:

> Any meeting at which a proposed annual budget of an association will be considered by the board or unit owners shall be open to all unit owners. At least 14 days prior to such a meeting, the board shall hand deliver to each unit owner, mail to each unit owner at the address last furnished to the association by the unit owner, or electronically transmit to the location furnished by the unit owner for that purpose a notice of such meeting and a copy of the proposed annual budget. An officer or manager of the association, or other person providing notice of such meeting, shall execute an affidavit evidencing compliance with such notice requirement, and such affidavit shall be filed among the official records of the association.  § 718.112(2)(e)(1), Fla. Stat.

106.    Hanis failed to properly notice and hold annual budget meetings in 2004 and 2005 to ratify and re-adoption of the 2003 budget.

107.    Hanis has not identified any form of budget for 2006, 2007, or 2008 whatsoever.

108.    On November 17, 2008, Hanis prepared financial statements for calendar years 2003, 2004, 2005, and less than three months of 2006.  Thus, each year was substantially retroactively prepared, in violation of § 718.111(13), Florida Statutes.

109.    Hanis failed to prepare financial statements for the remainder of 2006, all of 2007, and the ten months of 2008, during which Fresia Motwe was special developer counsel.

110.   Harris failed to timely mail or cause deliver to each unit owner copies of the 2003, 2004, 2005, 2006, and 2007 year-end financial reports within 120 days of the end of the fiscal year, in violation of § 718.111(13), Florida Statutes.

111.   Harris failed to maintain adequate insurance or fidelity bonds of for all persons who control or distribute association funds, in violation of § 718.111(11)(h), Florida Statutes.

112.   Harris failed to maintain and update annually the statutory required question and answer sheet for years 2004, 2005, 2006, 2007 and 2008 as described in § 718.504, Florida Statutes, in violation of § 718.111(12)(g)(4), Florida Statutes, and rule 61B-23.002(7)(a), Florida Administrative Code.

113.   Harris failed to conduct elections in accordance with § 718.112(2)(d)(3), Florida Statutes, and rule 61B-23.0021(3), Florida Administrative Code.

114.   Harris failed to use ballots and outer envelopes at one or more annual elections, in violation of § 718.111(12)(a)(12), Florida Statutes. Harris failed to respond to provide name with owners proper requests for official records, in violation of § 718.111(12)(c), Florida Statutes.

115.   Harris failed to maintain for a period of one (1) year from the date of the election vote, or meeting to which the document relates, ballots, sign-in sheets, voting proxies, and all other papers relating to voting on unit owners, in violation of § 718.111(12)(a)(10), Florida Statutes, and rule 61B-23.0021(15), Florida Administrative Code.

116.   Harris failed to maintain and current the official records of the association for a period

or seven (7) years in violation of § 718.111.12(a)(6), Florida Statutes, and rule 61B-22.002(7)(b)(1)-(3), Florida Administrative Code.

117    As a direct and proximate cause a result from the conduct complained of in this count, the Lincoln Mews non-developer unit owners suffer damages in the form of uncertainty as to the true financial condition of the association, uncertainty as to amounts they may be owed or entitled to the association, lack of adequate knowledge for annual, improper elections, improper access to politicians in association affairs, lack of access to official association records, lack of existence of required association official records, diminution in value, loss of the benefit of their bargain, and legal fees.

WHEREFORE, Plaintiff, DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION, DIVISION OF FLORIDA CONDOMINIUMS, TIMESHARES, AND MOBILE HOMES, demands judgment of civil penalties against Defendant, STEPHANIE HARRIS, doing the State of Florida, and an order to pay restitution to the Lincoln Mews non-developer unit owners in an amount to be determined at trial, plus reasonable costs, attorney's fees, and such other relief this Court deems equitable and just under the circumstances.

## COUNT XIII
## FAILURE TO INSURE THE COMMON ELEMENT, IN VIOLATION OF § 718.111(11), FLORIDA STATUTES

118    Plaintiff realleges and fully incorporates paragraphs 1 through 11 into this count.

119    This is an action for damages greater than $15,000, exclusive of interest and attorney's fees.

120    Florida condominium law requires liability or casualty insurance coverage of each

of such policy that insured the association's property, including portions of the unit owners' residences units, in violation of § 718.111(11)(f), Florida Statutes.

121.   Banks demanded the unit owners obtain their own insurance to cover their interests in association property.

122.   § 718.111(6)(f), Florida Statutes, sets forth that common expenses include the costs of insurances acquired by the association under the authority of § 718.111(11), Florida Statutes.

123.   The cost of insurance is to be paid as a common expense in the proportions provided for herein ["Mass" Declaration]. § 718.111(2), Florida Statutes.

124.   It is not commercially possible for unit owners to obtain insurance coverage of the common elements owned in proportionate shares by each unit owner, because a unit owner does not have any authority to act for the association by reason of owning a unit or units. § 718.111(11)(a), Florida Statutes.

125.   The association has an obligation to insure the common element. § 718.111(11)(a), Florida Statutes.

126.   A condominium association shall exercise its best efforts to obtain and maintain adequate hazard insurance. § 718.111(11)(a), Florida Statutes.

127.   In response to the lack of coverage mortgage holders in the underlying class forced place insurance on the unit owners' coverage at a premium above market cost for similar insurance.

128.   As a direct and proximate cause resulting from Banks' breaches, requiring no insurance and demand for the unit owners to individually insure association

property the Lincoln have non-developer units carry a suffer lack of coverage, and the cost of such avoided insurance.

**WHEREFORE,** PLAINTIFF, DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION DIVISION OF FLORIDA CONDOMINIUMS, TIMESHARES, AND MOBILE HOMES, demands judgment on this paralitics against Defendant STEPHANIE HARRIS due the State of Florida, and an order to prevent from in the Lincoln have noncompliance and comens in an amount to be determined at trial, plus commercial costs, attorney's fees and such other relief this Honorable Court deems equitable and just under the circumstances.

COUNT XIII
### ACTION FOR DECLARATORY JUDGMENT SEEKING TO DECLARE THE FACT OF TURNOVER OF THE CONDOMINIUM ASSOCIATION'S CONTROL, AND FOR SUPPLEMENTAL RELIEF

129. Plaintiff re-alleges and fully incorporates paragraphs 1 through 9, sub-paragraphs 42-49, paragraphs A through E1, paragraphs 54-60, and paragraphs 89-75 above, as if fully set forth in this count.

130. This is a cause of action for declaratory judgment under § 86.011, Florida Statutes, and for supplemental relief, under § 86.061, Florida Statutes, seeking ruling from the Court on the following three-part question of law and fact:

> Did turnover occur on March 5, 2009?
>
> If so, did the developer retain control of after turnover?
>
> Did turnover occur on November 2, 2009?

131. Defendant contends that turnover occurred on March 5, 2009, and this site

subsequently not be denied in consult of her One and American Lright to protect his
property from the failures of the new board of administration.

134.    Defendant further contends that the act of turnover conduction by the unit owners
on November 4, 2010, was an illegal act  because the unit owners elected were
not eligible to run for or serve on the board of directors at that time  pursuant to §
718.112(2)(A), Florida Statutes, because unit owner's agentguard of the payment
of assessments due the association for more than 90 days, and, as such  the
developer remains in control by default.

135.    Plaintiff contends that if the developer may have intention to turnover on March
6, 2009, that that such intent did not manifest, because of substantial non-
compliance with the statutory and practical applications of the turnover provisions
set forth in Chapter 718, Florida Statutes, as more particularly described in Counts
II, III, IV, and V above.

136.    Plaintiff further contends that enforcement of the ineligible-to-serve clause
delinquency of assessments provision contained within § 718.112(2)(d), Florida
Statutes, would be unworkable, due to the present  even, should be waived  are not
some   law, because one of the  Unit Owners may be more than 90
days delinquent  the payment of their assessments.  A bar on all members
could be unduly burdensome.   Further, no single unit owner  assessment may
necessarily constitute directly such arrearage if any, they owe the association.

137.    Plaintiff further contends that any act accruing to his a release on appeal by the
developer, after the event of turnover as deemed validly, as is would in appearance

a: Chapter 718, Florida Statues, that provides or allows for eviction from a non-owner elopro residential condominium association come to a developer controlled association. This is particularly so where the act of eviction was unilateral and not sanctioned by the court.

135.   It is relevant to this court that § 86.111, Florida Statues, provides this court may order a speedy hearing of an action for a declaratory judgment and may advance it on the calendar, because the declaratory relief prayed for herein is needed and requested as expeditiously as possible.

WHEREFORE, Plaintiff, DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION DIVISION OF FLORIDA CONDOMINIUMS, TIMESHARES, AND MOBILE HOMES, moves this Honorable Court to enter that:

A.   Declares that turnover occurred on March 6, 2008;

B.   Declares that the governor association failed to comply with the terms of the March 6, 2008 turnover, as more particularly described in Counts II, III, IV and V above; or

C.   in the alternative, declares that the ever occurred on November 1, 2008;

D.   Declares that the original board service due to a 90-day assessment default arising provisions found in § 718.112(2)(d), Florida Statutes, because in the present case, because turnover appeal and reasonable tenancy of both side if they bar exercising;

E.   Reserves jurisdiction over the parties and the subject matter of this cause for further disposition, including a determination of supplemental monetary

damages, under § 95.061, Florida Statutes;

E. Find that Plaintiff is the prevailing party in this court;

G. Grants Plaintiff entitlement to recover its costs and in bringing in this court, pursuant to § 58.001, Florida Statutes; and

H. Grants such other relief the Court deems equitable and just under the circumstances

## COUNT XIV
## ACTION FOR DECLARATORY JUDGMENT SEEKING TO DECLARE CERTAIN LIENS INVALID AND DISCHARGED, AND FOR SUPPLEMENTAL RELIEF

137.  Plaintiff re-alleges and fully incorporates paragraphs 1 through 9, and paragraphs 1-78, paragraphs 5/61, and paragraphs 94-101 above, as if fully set forth in this count.

128.  This is a cause of action for a declaratory judgment under § 28.011, Florida Statutes, and for to supplemental relief, under § 28.061, Florida Statutes, seeking ruling from the Court on the following two part questions of law and fact:

> When is a claim of lien recorded by Harris on January 29, 2008, was prior to their expiration?
>
> Are the purported claims of lien recorded by Harris on December 18, 2008, valid and enforceable?

139.  Turnberry of course of Leased Views from the developer to a management entity occurred on March 8, 2008, or on November 1, 2005.

140.  On January 23, 2008, Harris caused to be recorded in the public records of Miami-Dade County, Florida, recorded claims of liens against each parcel of condominium unit within Lincoln Mews, except for the three units set down in

Page 34 of 34

C. Declares that the recording of the amended claims of lien by Harris on December 18, 2008, constitutes an *ultra vires* act;

D. Declares that the amended claims of lien recorded by Harris on December 18, 2008, are quashed;

E. Reserves jurisdiction over the parties and the subject matter of this count for further disposition, including a determination of supplemental monetary damages, under § 86.061, Florida Statues;

F. Finds that Plaintiff is the prevailing party in this count;

G. Grants Plaintiff entitlement to recover its costs incurred in bringing forth this count, pursuant to § 86.081, Florida Statues; and

H. Grants such other relief the Court deems equitable and just under the circumstances.

**COUNT XV**
**ACTION FOR THE APPOINTMENT OF A RECEIVER OR CONSERVATOR TO**
**CONTROL THE DEVELOPER'S INTEREST IN THE CONDOMINIUM, UNDER §**
**718.501(d)(4), FLORIDA STATUTES**

152.   Plaintiff realleges and fully incorporates paragraphs 1 through 11 into this count.

153.   This is an action for an order appointing a receiver or a conservator to stand in the stead of the developer of Lincoln Mews Condominium, Defendant, STEPHANIE HARRIS, to serve without bond to assume the developer's seat on the board of directors, correct and finalize the developer's obligations that were improperly fulfilled during the time that Lincoln Mews was under developer control, finalize obligations of the developer that remain unfulfilled, implement and ensure the

performance of any court order that may arise from this law suit, and remedy any
breach thereof.

154.   Lincoln Mews was developed by the Defendant in 2003.

155.   Lincoln Mews consists of six residential condominium units.

156.   Defendant owns or coowns Unit Nos. 1, 2, and 6.

157.   Defendant, or her guests, or tenants occupy Unit Nos. 1, 2, and 6.

158.   Unit Nos. 3, 4, and 5 are owned and occupied as private residences.

159.   Turnover of control of Lincoln Mews from the developer to a non-developer majority
       controlled association occurred on March 6, 2006, or on November 1, 2008, the
       determination of which is the subject matter of Count XII above.

160.   The developer failed to present a comprehensive financial accounting for the period
       of developer control, commingled association money with non-association money,
       and unreasonably interferes with or circumvents the present non-developer
       controlled association's efforts manage to the day-to-day affairs of Lincoln Mews.

161.   The developer and the non-developer unit owners are unable to reach consensus
       on how to make payments for utility services, insurance, and other essential
       common expenses.

162.   As a result of the developer's non-compliance with Chapter 718, Florida Statutes,
       and the lack of consensus between the developer and non-developer unit owners,
       the association's insurance has been terminated, force-placed insurance has been
       installed, utility service has been interrupted, the condominium has been fined for
       alleged municipal building code violations, fines continue to accrue, a lien has been

     imposed by the City of Miami Beach, and other damages have been and continue to
be suffered by the non-developer unit owners.

163.   The non-developer unit owners have made repeated unsuccessful attempts to
compel the Defendant to comply with Chapter 718, Florida Statutes, and the will of
the present board of directors, but the Defendant maintains a conflicting course of
conduct.

164.   Unless a receiver or a conservator is appointed for the take control of the
developer's duties and obligations, the non-developer unit owners will continue to
suffer irreparable injury including among other things: interruption in utility services;
increased insurance premiums; fines, liens, and interest thereon; eminent
condemnation; uncertainty as to the true financial condition of the association;
uncertainty as to amounts they may be credited or indebted to the association; and
diminution in value.

165.   The non-developer unit owners lack any adequate remedy at law.

166.   It is relevant to this count that § 718.301(6), Florida Statues, provides that *[p]rior to
the developer relinquishing control of the association . . . actions taken by members
of the board of administration designated by the developer are considered actions
taken by the developer, and the developer is responsible to the association and its
members for all such actions.*

167.   § 718.501(d)(4), Florida Statutes, provides that the Division may petition the court
for appointment of a receiver or conservator to take action to implement or ensure
the performance of court orders, and to remedy any breach thereof.

168. The Defendant is obligated to make restitution for any sums obtained by the Defendant in violation of Chapter 718, Florida Statutes. under § 718.501(d)(5), Florida Statutes. The Division pleads that such sums, if any, be paid directly to the receiver or conservator to be appointed under this count.

169. The Division pleads that receiver or conservator's reasonable fees and costs be charged to the developer, not the association.

**WHEREFORE,** Plaintiff, DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION, DIVISION OF FLORIDA CONDOMINIUMS, TIMESHARES, AND MOBILE HOMES, request appointment of a receiver or conservator:

A.   To serve without bond;

B.   To stand in the stead of the developer of the Lincoln Mews Condominium, Defendant, STEPHANIE HARRIS;

C.   To assume the developer's seat on the Lincoln Mews board of directors;

D.   To correct the developer's obligations that were improperly fulfilled during the period of time that Lincoln Mews was under developer control;

E.   To finalize the developer's obligations that remain to be fulfilled following the developer's relinquishment of control;

F.   To implement and ensure the performance of any court order that may arise from this law suit;

G.   To remedy the breach of any court order that may arise from this law suit;

H.   To order the Defendant to make restitution payable to the receiver or conservator of any sums obtained by the Defendant in violation of Chapter

718, Florida Statutes, pursuant to § 718.501(d)(5), Florida Statutes;

I.   To be paid a reasonable fee for services rendered, and that such fees be

charged to the developer, not the association; and

J.   To serve in such other manner and capacity as this Honorable Court deems

equitable and just under the circumstances.

Respectfully submitted by,

William R. Wohlsifer, Esquire
Florida Bar Number 86827
Senior Asstistant General Counsel
Florida Deptartment of Business
 and Professional Regulation
Division of Florida Condominiums,
 Timeshares, and Mobile Homes
1940 N Monroe St Suite 42
Tallahassee, FL  32399
Tel:   (850)487-3197
Fax:  (850)414-6749

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of this proposed amended
complaint was attached to Plaintiff's Motion for Leave to Amend and furnished via US Mail
to Gary S. Glasser, Esquire, counsel for Stephanie Harris, 28 West Flagler Street, Suite
608, Miami, FL 33130, on this 24th day of June 2009.

William R. Wohlsifer, Esquire
Florida Bar Number 86827
Senior Asstistant General Counsel
Florida Deptartment of Business
 and Professional Regulation
Division of Florida Condominiums,
 Timeshares, and Mobile Homes
1940 N Monroe St Suite 42
Tallahassee, FL 32399
Tel:  (850)487-3197
Fax:  (850)414-6749

STATE OF FLORIDA
DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION
DIVISION OF FLORIDA LAND SALES, CONDOMINIUMS, AND MOBILE HOMES

Michael Cochran, Director
Division of Florida Land Sales,
Condominiums, and Mobile Homes

## SUBPOENA DUCES TECUM
(Without Deposition)

Investigation Numbers:
2006057258 - Stephanie Harris
2008012098 - Stephanie Harris

THE STATE OF FLORIDA:

TO:   Ms. Stephanie Harris
      1525 Lenox Avenue, Unit #1
      Miami Beach, Florida 33139

        **YOU ARE COMMANDED**, pursuant to the authority contained in Section
718.501(1), Florida Statutes, to appear before the Director of the Division of Florida Land
Sales Condominiums, and Mobile Homes of the Department of Business and Professional
Regulation, State of Florida or his duly authorized representative at 10:00 o'clock a.m., on
the _11_ day of _APRIL_, 2008, at 1400 West Commercial Boulevard, Suite 185, Fort
Lauderdale, Florida 33309.

        You are then and there to produce certain records and documentation concerning a
matter under investigation by the Division of Florida Land Sales, Condominiums, and
Mobile Homes, **Cases No. 2006057258 and 2008012098, Stephanie Harris,
Respondent.** The following records and documentation are requested concerning **Lincoln
Mews Condominium, Inc.:**

1.    Notices of all meetings of the Association;
2.    Affidavits of mailing or hand delivering notices of all meetings of the Association;
3.    Minutes of all meetings of the Association;
4.    Notices of all elections of the Association;
5.    Affidavits of mailing or hand delivering notices of all elections of the Association;
6.    All notices of intention to be a candidate in all elections of the Association;
7.    All candidate information sheets for all elections of the Association;
8.    All outer envelopes for all elections of the Association;
9.    All inner envelopes for all elections of the Association;
10.   All ballots for all elections of the Association.



11.   A current account and a monthly statement of the account for each unit designating the name of the unit owner, the due date and amount of each assessment since the inception of the Association, the amount paid upon the account, and the balance due;

12.   All annual budgets of the Association;

13.   All fiscal year end financial reports for the Association;

14.   Hurricane shutter specifications;

15.   Current Question and Answer Sheet;

16.   Certificate of insurance for fidelity bonding for all persons who control or distribute Association funds; and

17.   All bank statements since the inception of the Association.

These items will be inspected and may be copied at that time. You will not be required to surrender original items. You may comply with this subpoena by providing legible copies of the subpoenaed material to the representative or the Division Director whose name appears on this subpoena on or before the scheduled date of production. You may condition the preparation of the copies upon the payment in advance of the reasonable cost of production. You may mail or deliver the copies to the Division's representative whose name appears on this subpoena, and thereby eliminate your appearance at the time and place specified above.

### PENALTY

Failure to obey the foregoing Subpoena or to answer questions, propounded by the investigating officer may result in application to the Circuit Court for an Order Compelling Compliance (Section 718.501(1)(c), Florida Statutes), and/or the filing of administrative charges pursuant to Section 718.501(1)(d), Florida Statutes. A failure to comply with an order of the court may result in a finding of contempt of court. However, no person shall be in contempt while a subpoena is being challenged in court. The court may award to the prevailing party all or part of the costs and attorney's fees incurred in obtaining the court order whenever the court determines that such an award should be granted under the Florida Rules of Civil Procedure.

### PLEASE GOVERN YOURSELF ACCORDINGLY

**Witness** Michael Cochran, Director, Division of Florida Land Sales, Condominiums, and Mobile Homes and the seal thereof

DATED, this 17th day of March, 2008.

Michael T. Cochran, Division Director
Division of Florida Land Sales,
Condominiums, and Mobile Homes
Department of Business and
Professional Regulation
1940 North Monroe Street
Tallahassee, Florida 32399-1030

Division of Florida Land Sales,
Condominiums & Mobile Homes
Address

Christopher J. Olson, Investigation Specialist II
1400 West Commercial Boulevard, Suite 185
Fort Lauderdale, Florida 33309
Telephone No. (954) 202-3982, extension 202

## RETURN OF SERVICE

I received this subpoena this _____ day of _____, 200___,

and served the same on _____, the within named

party,    on    the    _____day    of    _____,    200___,    by

_____, a true copy of this writ.


_____
(Signature)

_____
(Name)

STATE OF FLORIDA
DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION
DIVISION OF FLORIDA LAND SALES, CONDOMINIUMS, AND MOBILE HOMES

Michael Cochran, Director
Division of Florida Land Sales,
Condominiums, and Mobile Homes

## SUBPOENA DUCES TECUM
(Without Deposition)

Investigation Numbers:
2006057258 - Stephanie Harris
2008012098 - Stephanie Harris

THE STATE OF FLORIDA:

TO:   Ms. Stephanie Harris
      1525 Lenox Avenue, Unit #1
      Miami Beach, Florida 33139

**YOU ARE COMMANDED**, pursuant to the authority contained in Section 718.501(1), Florida Statutes, to appear before the Director of the Division of Florida Land Sales Condominiums, and Mobile Homes of the Department of Business and Professional Regulation, State of Florida or his duly authorized representative at 10:00 o'clock a.m., on the 20th day of June, 2008, at 1400 West Commercial Boulevard, Suite 185, Fort Lauderdale, Florida 33309.

You are then and there to produce certain records and documentation concerning a matter under investigation by the Division of Florida Land Sales, Condominiums, and Mobile Homes, **Cases No. 2006057258 and 2008012098, Stephanie Harris, Respondent.** The following records and documentation are requested concerning **Lincoln Mews Condominium, Inc.:**

1.   Notices of all meetings of the Association;
2.   Affidavits of mailing or hand delivering notices of all meetings of the Association;
3.   Minutes of all meetings of the Association;
4.   Notices of all elections of the Association;
5.   Affidavits of mailing or hand delivering notices of all elections of the Association;
6.   All notices of intention to be a candidate in all elections of the Association;
7.   All candidate information sheets for all elections of the Association;
8.   All outer envelopes for all elections of the Association;
9.   All inner envelopes for all elections of the Association;
10.  All ballots for all elections of the Association;



EXHIBIT
B

11. A current account and a monthly statement of the account for each unit designating the name of the unit owner, the due date and amount of each assessment since the inception of the Association, the amount paid upon the account, and the balance due;

12. All annual budgets of the Association;

13. All fiscal year end financial reports for the Association;

14. Hurricane shutter specifications;

15. Current Question and Answer Sheet;

16. Certificate of insurance for fidelity bonding for all persons who control or distribute Association funds; and

17. All bank statements since the inception of the Association.

These items will be inspected and may be copied at that time. You will not be required to surrender original items. You may comply with this subpoena by providing legible copies of the subpoenaed material to the representative or the Division Director whose name appears on this subpoena on or before the scheduled date of production. You may condition the preparation of the copies upon the payment in advance of the reasonable cost of production. You may mail or deliver the copies to the Division's representative whose name appears on this subpoena, and thereby eliminate your appearance at the time and place specified above.

## PENALTY

Failure to obey the foregoing Subpoena or to answer questions, propounded by the investigating officer may result in application to the Circuit Court for an Order Compelling Compliance (Section 718.501(1)(c), Florida Statutes), and/or the filing of administrative charges pursuant to Section 718.501(1)(d), Florida Statutes. A failure to comply with an order of the court may result in a finding of contempt of court. However, no person shall be in contempt while a subpoena is being challenged in court. The court may award to the prevailing party all or part of the costs and attorney's fees incurred in obtaining the court order whenever the court determines that such an award should be granted under the Florida Rules of Civil Procedure.

### PLEASE GOVERN YOURSELF ACCORDINGLY

**Witness** Michael Cochran, Director, Division of Florida Land Sales, Condominiums, and Mobile Homes and the seal thereof

**DATED**, this 15th day of May, 2008.

Michael T. Cochran, Division Director
Division of Florida Land Sales,
Condominiums, and Mobile Homes
Department of Business and
Professional Regulation
1940 North Monroe Street
Tallahassee, Florida 32399-1030

Division's representative:
Division of Florida Land Sales,
Condominiums & Mobile Homes

Christopher J. Olson, Investigation Specialist II
1400 West Commercial Boulevard, Suite 185
Fort Lauderdale, Florida 33309
Telephone No. (954) 202-3982, extension 202

STATE OF FLORIDA
DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION
DIVISION OF FLORIDA LAND SALES, CONDOMINIUMS, AND MOBILE HOMES

Michael Cochran, Director
Division of Florida Land Sales,
Condominiums, and Mobile Homes

## AFFIDAVIT OF COMPLIANCE

Investigation Numbers:
2006057258 - Stephanie Harris
2008012098 - Stephanie Harris

Comes Now, Michael Cochran, Director, Division of Florida Land Sales, Condominiums

and Mobile Homes, and states:

1.     Pursuant to the authority granted under section 718.501, Florida Statutes, and in

compliance with sections 48.151 and 498.057(1), Florida Statutes, service of the subpoena duces

tecum attached as Exhibit A has been made upon me by delivery of a copy of process and

pleadings in this action;

2.     Pursuant to my authority under section 718.501, Florida Statutes, and in

compliance with, sections 48.151 and 498.057(1), Florida Statutes, the Division has filed a copy

of the subpoena duces tecum in its records; and

3.     Pursuant to my authority under section 718.501, Florida Statutes, and in

compliance with, sections 48.151 and 498.057(1), Florida Statutes, the Division has immediately

sent a copy of the subpoena duces tecum by certified mail to Stephanie Harris, a condominium

developer, at her last known addresses in compliance with section 498.007(8), Florida Statutes.

EXHIBIT
C

DBPR v. Stephanie Harris
Case No. 2006057258, 2008012098

Signed and dated this _15_ day of _May_, 2008

_Michael Cochran_

MICHAEL COCHRAN, DIRECTOR
Division of Florida Land Sales,
Condominiums and Mobile Homes
Department of Business and
Professional Regulation
Northwood Center
1940 North Monroe Street
Tallahassee, Florida 32399-1030

**STATE OF FLORIDA**
**COUNTY OF LEON**

SWORN TO AND SUBSCRIBED before me this _15th_ of

_May_, 2008, by Michael Cochran.

_Mollie Cutler Shepard_
Notary Public
_Mollie Cutler Shepard_
Printed Name
My commission expires

Personally known to me __✓__
Produced identification _____
Identification produced _____

MOLLIE CUTLER SHEPARD
MY COMMISSION # DD 358068
EXPIRES: December 16, 2008
Bonded Thru Budget Notary Services

DBPR v. Stephanie Harris                    2
Case No. 2006057258, 2008012098

Business
Professional
Regulation

Division of Land Sales, Condominiums and Mobile Homes
Bureau of Compliance
1940 North Monroe Street
Tallahassee, Florida 32399-1031
Phone 850.488.1122 • Fax 850.488.7149

Chuck Drago, Interim Secretary

Charlie Crist, Governor

June 30, 2008

RE:   Stephanie Harris
      DBPR Case No.      2006057258, 2008012098
      2 Subpoenas, 1 Affidavit of Compliance

STATE OF FLORIDA
COUNTY OF LEON

I, Robin F. McDaniel, Custodian of Records for the Division of Florida Land
Sales, Condominiums, and Mobile Homes, Bureau of Compliance, **HEREBY
CERTIFY** that I exercised due diligence in preparing the attached copies,
consisting of _7_ pages, that are true and correct copies of the above-referenced
documents currently on file with the Division.



Robin J. McDaniel
ROBIN F. McDANIEL, ADMINISTRATIVE ASSISTANT II
Bureau of Compliance
Division of Florida Land Sales, Condominiums and
   Mobile Homes
Department of Business and Professional Regulation
State of Florida

Division of Florida Land Sales,
Condominiums & Mobile Homes

LICENSE EFFICIENTLY. REGULATE FAIRLY.
WWW.MYFLORIDALICENSE.COM