Tia Smith
4011 Hubert Avenue
Los Angeles, California 90008
Tel: 323-803-3027
Fax: 323-295 -0517
myfathersdiamond@msn.com
Claimant

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

In Re:

    **RESIDENTIAL CAPITAL, LLC**, et al.        **Case No.: 1:12-BK-12020(MG)**

        Debtors.                    Chapter 11

                                    Jointly Administered

_____

**MOTION FOR RECONSIDERATION OF THE MEMORANDUM OPINION AND ORDER SUSTAINING IN PART AND OVERRULING IN PART THE RESCAP BORROWER CLAIMS TRUST'S SIXTY-NINTH OMNIBUS OBJECTION TO PROOF OF CLAIM NUMBERS 3889, 4129, 4134 and 41391984 FILED BY TIA SMITH**

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT……………………………………………………..1

II.    BACKGROUND……………………………………………………………………...2

III.    LEGAL STANDARD…………………………………………………………………3

IV.    ARGUMENT…………………………………………………………………………4

A.  Debtors' Liability is a Question of Fact ................................................................. 4

1.  The "Smith Servicing Notes" .................................................................................. 5

2.  Servicing Platform Transfer ................................................................................... 7

3.  Residential Funding Corporation as Investor ...................................................... 11

4.  The "Smith Letters"............................................................................................... 13

B.  Claimant's Claims Against Debtors ..................................................................... 15

1.  Fraud Claim Not Time-Barred .............................................................................. 15

2.  Tortious Interference with Contract ...................................................................... 16

3.  Wrongful Foreclosure............................................................................................ 19

(a)    The Promissory Notes ....................................................................................... 22

(1)    First Note ........................................................................................................... 23

(2)    Second Note ....................................................................................................... 23

b.  The RALI 2007-QO1 Trust Never Received Claimant's Mortgage .................... 26

4.  Cancellation of Instruments................................................................................... 27

5.  Unjust Enrichment ................................................................................................. 29

6.    Accounting and Constructive Trust ...................................................................... 30

7.  Fraudulent Omissions ........................................................................................... 31

8.  Quiet Title .............................................................................................................. 32

9.  The Truth in Lending Act ....................................................................................... 33

10.    The Rosenthal Act..................................................................................................... 33

C.  The Horst Declaration .................................................................................................. 34

V.     CONCLUSION……………………………………………………………………..35

TIA SMITH'S MOTION FOR RECONSIDERATION

# TABLE OF AUTHORITIES

## CASES

*American Trust Co. v. Greuner* (1936) 13 Cal.App.2d 279, 282.) ............................................ 26

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal. 4th 503, 513 (1994) .................... 18

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ................................................................................ 3

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)) ............................................................................... 3

*Bears Stearns,* 50 Cal. 3d at 1126 ................................................................................................ 18

*Bumb v. Bennett* (1958) 51 Cal.2d 294, 303 ................................................................................ 25

*Bustamante v. Intuit, Inc.,* 141 Cal. App. 4th 199, 208 (2006) .................................................... 28

*Civic Western Corp v. Zila Industries* (1977) 66 Cal.App.3d 1 .................................................. 30

*Clemens v. DaimlerChrysler Corp.,* 534 F.3d 1017, 1022 (9th Cir. 2008) ................................... 3

*Estate of Stephens,* (2002) 28 Cal. 4th 665, 679 .......................................................................... 24

*Fisher v. Salmon,* 1 Cal. 413 (1851) ............................................................................................ 25

*Fleming v. Kagan* (1961) 189 Cal. App. 2d 791, 796, 797, 11 Cal. Rptr. 737 ............................ 28

*Hopkins v. Dow Corning Corp.,* 33 F.3d 1116, 1120 (9th Cir. 1994) .......................................... 18

*Iqbal,* 556 U.S. at 678 ................................................................................................................ 3, 6

*Iwachiw v. New York City Bd. of Elections,* 126 Fed. App'x 27, 29 (2d Cir. 2005) ..................... 3

*Jolly v. Eli Lilly & Co.,* 44 Cal. 3d 1103, 1109 (1988) ................................................................ 18

*Jolly,* 44 Cal. 3d at 1110 .............................................................................................................. 18

*Kimber v. GMAC Mortgage, LLC (In re Residential Capital, LLC),* 489 B.R. 489, 494 (Bankr.

   S.D.N.Y. 2013) ......................................................................................................................... 3

*King v. California,* 784 F.2d 910, 915 (9th Cir. 1986 ................................................................... 33

*McNear v. Petroleum Exp. Corp.,* 208 Cal. 162, 166, (1929) ..................................................... 24

*Mink v. Maccabee* (2004) 121 Cal.App.4th 835, 839 .................................................... 15

*Mintz v. Blue Cross of California,* 172 Cal.App. 4th 1594, 1603 (2009) ...................................... 18

*Munger v. Moore,* 11 Cal.App.3d 1, 89 Cal.Rptr. 323 (Cal.App.1970) ...................................... 19

*Pacific Gas & Electric Co. v. Bears Stearns & Co.,* 50 Cal.3d 1118, 1126 (1990) .................... 17

*Pfeifer v. Countrywide Home Loans, Inc.* (2012) 211 Cal.App.4th 1250 .................................... 20

*Sherman v. Novak (In re Reilly* ................................................................................... 2, 3

*Sherman v. Novak (In re Reilly),* 245 B.R. 768, 773 (2d Cir. B.A.P. 2000) ................................ 2

*Sole Energy Co. v. Petrominerals Corp.* (2005) 128 Cal.App.4th 212, 237-238. ........................ 18

*Trembath v. Digardi,* 43 Cal. App. 3d 834, 836 (1974)) ........................................................ 17

*Twombly,* 550 U.S. at 556 ............................................................................................. 3

*Twombly,* 550 U.S. at 570 ............................................................................................. 3

*Vaughn v. Air Line Pilots Ass'n, Int'l,* 604 F.3d 703, 709 (2d Cir. 2010) .................................. 3

*Videau v. Griffin,* 21 Cal. 389, 391 (1863) ...................................................................... 25

*Walsh v. Hunt* (1898) 120 Cal. 46, 53 ............................................................................ 26

*Western Title Guar. Co., supra,* 235 Cal.App.2d at p. 285 ..................................................... 29


## STATUTES


*15 U.S.C. § 1692(e)* ..................................................................................................... 34

*28 U.S.C. § 2801* ........................................................................................................ 11

*Caifornia Civil Code § 1788.17* ...................................................................................... 1

*Cal. Civ. Code § 1091* .................................................................................................. 25

*California Civil Code § 1091* .......................................................................................... 25

*California Civil Code § 1624* .......................................................................................... 25

*California Civil Code § 1511.3* ....................................................................................... 21

*California Civil Code § 1788.30, subd. (f)* ................................................................ 34

*California Civil Code § 2224* ................................................................................ 31

*California Civil Code § 2309* ................................................................................ 25

*California Civil Code §§ 1580, 1550, 1565* ......................................................... 28

*California Code of Civil Procedure § 339* ............................................................ 18

*California Code of Civil Procedure § 760.020* ..................................................... 33

*Code of Civil Procedure § 1060* ........................................................................... 11

*The Rosenthal Act* ................................................................................................ 34

*The Statute of Frauds* ............................................................................................ 24

## OTHER RESOURCES

*4 COLLIER ON BANKRUPTCY* ¶ 502.02 (16th rev. ed. 2013). ................................................... 3

*Miller & Starr, Cal. Real Estate* (3rd ed. 2000) Deeds, section 8.27, p. 52.  25

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE

Tia Smith  ("Claimant") respectfully moves the court pursuant to *Rule 3008 of the*

*Federal Rules of Bankruptcy Procedure and 11 U.S.C. § 502(j)* for reconsideration of the

Memorandum Opinion and Order Sustaining in part and Overruling in part Debtors' Objection to

Proof of Claim Nos. 3889, 4129, 4134 and 4139 filed by Tia Smith.

A reconsidered claim may be allowed according to the equities of the case. Motions for

reconsideration are reviewed under *Federal Rule of Civil Procedure 59* which is made

applicable to bankruptcy proceedings pursuant to **Federal Rule of Bankruptcy Procedure**

**9023**. In relevant part, *Rule 59* allows a party to seek an order altering or amending a judgment

within 28 days of the issuance of the judgment. See *Fed. R. Civ. P. 59(b).*  Under *Rule 9023*,

"reconsideration is proper "to correct a clear error of law or prevent manifest injustice." *Munafo*

*v. Metro Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004) (internal citations omitted).

In support of this motion, Claimant relies on the accompanying Memorandum.  As

explained in the memorandum, the Court's decision was based on clear error of facts.  For this

reason, Claimant respectfully requests that this motion be granted and (1) Claimant requests that

the Court revoke the Order and OVERRULE the Objection in its entirety and SUSTAIN

Claimant's Objection to the admissibility of the Horst Declaration.


Dated:  October 17, 2014                          Respectfully submitted,


                                                  _____

                                                  Tia Smith

TIA SMITH'S MOTION FOR RECONSIDERATION

**MEMORANDUM IN SUPPORT OF TIA SMITH'S RULE 59(E)
MOTION FOR RECONSIDERATION**

**I.**

**PRELIMINARY STATEMENT**

1.     Tia Smith's ("Claimant") Proof of Claim Nos. 3889, 4129, 4134 and 4139. ("Proof of

Claims") filed prior to the applicable deadline, assert claims against Homecomings Financial

LLC ("HF"), GMAC Mortgage, LLC ("GMACM"), Residential Funding, LLC ("RFC") and

Residential Accredit Loans Inc. ("RALI") arising from a civil action filed in the Los Angeles

Superior Court in the State of California and automatically stayed as a result of the Debtors'

Chapter 11 Bankruptcy.

2.     Accordingly, Claimant's Proof of Claims, supported by her third amended complaint

("**TAC**") assert the following claims against the Debtors: (1) fraud; (2) tortious interference with

contract; (3) wrongful foreclosure; (4) cancellation of instruments; (5) breach of contract (deed

of trust and promissory note); (6) breach of contract (workout and forbearance agreements); (7)

UCL violations; (8) violation of **Caifornia Civil Code § 1788.17** (the "Rosenthal Act"); (9)

unjust enrichment; (10) accounting; (11) constructive trust; (12) fraudulent omissions; (13) quiet

title; and (14) violation of the Truth in Lending Act ("**TILA**"). (Opposition ¶ ¶ 3, 70–130.)

3.     Claimant requests reconsideration of the Memorandum Opinion and Order Sustaining in

part and Overruling in part the ResCap Borrower Trust's ("ResCap Trust") Objection to Proof of

Claim Nos. 3889, 4129, 4134 and 4139 filed by Tia Smith.

## II.

## BACKGROUND

4.       ***The ResCap Borrower Claims Trust's Sixty-Ninth Objection to Claims (No Liability***

***Borrower Claims)*** (the "Objection," ECF Doc. # 7188) is supported by the Declaration of

Deanna Horst (the "Horst Declaration," ECF Doc. # 7188; **Exhibit 2),** the Declaration of P.

Joseph Morrow IV (ECF Doc. # 7188-3), and the Declaration of Norman S. Rosenbaum (ECF

Doc. # 7188-4).   Claimant filed an opposition to the Objection (the "Opposition," ECF Doc. #

7300).  The ResCap Borrower Claims Trust (the "ResCap Trust") subsequently filed a Reply (the

"Reply," ECF Doc. # 7410) supported by the Supplemental Declaration of Deanna Horst (the

"Supp. Horst Declaration," ECF Doc. # 7410; **Exhibit 1**). The Court heard **limited** oral argument

on the Objection on August 26, 2014 and took the matter under submission.

5.       The Court opined, "[t]he majority of Smith's claims fails to raise a plausible basis for the

Debtors' liability; only her claim under the UCL may proceed. The Court therefore **SUSTAINS**

**IN PART** the Debtors' objection to her claims and **OVERRULES IN PART** the objection."

## III.

## LEGAL STANDARD

6.       Claims objections have a shifting burden of proof.  Correctly filed proofs of claim

"constitute prima facie evidence of the validity and amount of the claim . . . . To overcome this

prima facie evidence, an objecting party **must come forth with evidence** which, if believed,

would refute at least one of the allegations essential to the claim." ***Sherman v. Novak (In re***

***Reilly),*** 245 B.R. 768, 773 (2d Cir. B.A.P. 2000). (Emphasis and underscore added)  **The court**

**must accept all factual allegations as true**, discounting legal conclusions clothed in factual

garb. (Emphasis and underscore added)  *See, e.g., id.* at 677–78; ***Kiobel v. Royal Dutch***

*Petroleum Co.,* 621 F.3d 111, 124 (2d Cir. 2010) (stating that a court must "assum[e] all well-pleaded, nonconclusory factual allegations in the complaint to be true" (citing *Iqbal,* 556 U.S. at 678)).

7.      If the objector **does not "introduce[] evidence** as to the invalidity of the claim or the excessiveness of its amount, the **claimant need offer no further proof of the merits of the claim." 4 COLLIER** ON ***BANKRUPTCY*** ¶ 502.02 (16th rev. ed. 2013). (Emphasis and underscore added.)  For Claimant's claim to survive, she must allege "enough facts to state a claim for relief that is plausible on its face." *Vaughn v. Air Line Pilots Ass'n, Int'l,* 604 F.3d 703, 709 (2d Cir. 2010) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).  While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.,* 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556).

8.      "[Claims] drafted by *pro se* [claimants] are to be construed liberally, [] they must nonetheless be supported by specific and detailed factual allegations sufficient to provide the court and the defendant with 'a fair understanding of what the [claimant] is complaining about and . . . whether there is a legal basis for recovery.'**"** *Kimber v. GMAC Mortgage, LLC (In re Residential Capital, LLC),* 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (quoting *Iwachiw v. New York City Bd. of Elections,* 126 Fed. App'x 27, 29 (2d Cir. 2005) (ellipsis in original)).

9.      "[A]n objecting party **must come forth with evidence** which, if believed, would refute at least one of the allegations essential to the claim." *Sherman v. Novak (In re Reilly)*

(Emphasis and underscore added.)  **In short, the ResCap Trust fails to come close to meeting the burden standards described above.**

10.    Claimant contends the Court erred in sustaining the ResCap Trust's Objection for the following reasons:  (**1**) the Court erred in adopting several of the ResCap Trust's arguments without sufficient evidence; (**2**) the Court erroneously prevented Claimant from having a full and fair opportunity to orally present her arguments to refute the ResCap Trust's unsubstantiated allegations and production of Debtors' business records; (**3**) the Court erroneously ignored Claimant's legal theories by misinterpreting her claims and arguments; (**4**) the Court erred in concluding that Defendants have no liability; (**5**) the Court erred in concluding that Claimant did not adequately plead delayed discovery; (**6**) the Court erred in concluding that Claimant defaulted on her loan; and (7) the Court erred in deciding the Horst Declarations fall within the business records exception to the rule against hearsay.

## IV.

## ARGUMENT

11.    *Respectfully*, Claimant contends the Court's Order demonstrates an egregious example of judicial bias in favor of the Debtors.  Claimant further contends the Court erred by sustaining the ResCap Trust's Objection to **_all_** of her causes of action *with the exception* of her UCL claim given the lenient standards afforded pro se litigants and reconsideration is necessary to prevent manifest injustice.

### A.  *Debtors' Liability is a Question of Fact*

12.    *The Court found as follows:*  *RFC bought the Loan from American Mortgage, and on or about January 30, 2007, RFC sold the Loan to a RALI securitization trust. Homecomings*

*serviced the Loan from December 29, 2006 until transferring the servicing rights to Aurora on April 1, 2008. Smith defaulted on her loan in February 2008. (Memo Order; pg. 1)*

### 1.    The "Smith Servicing Notes"

13.    **Respectfully,** Claimant contends the Court erred in adopting the ResCap Trust's arguments as factual and accepting its **_purported_** business records in support of the Objection as trustworthy.  The ResCap Trust introduced to Claimant and the Court, the **_"Smith Servicing Notes,"_** in support of its assertions that Debtor Homecomings…serviced Smith's loan from 2006 until April 2008, when it sold the servicing rights to Aurora." (*Memo Order; pg. 1*) (Emphasis, italics and underscore added.)   Claimant argues that a *simple* examination of the **_"Smith Servicing Notes"_** exhibit the following:

1)    **TIA DANIELLE SMITH as Borrower**

2)    **Property Address: 4011 HUBERT AVENUE,LOS ANGELES  CA 90008-2621**

3)    **AMERICAN MORTGAGE NETWORK as Seller**

4)    **RESIDENTIAL FUNDING CORP. as  Investor**

5)    **Investor account no. 112080733;**

6)    **an apparent PURCHASED LOAN on May 25, 2007;**

7)    **an apparent  SERVICE RELEASE on April 1, 2008.**

8)    **failure to clarify the *purported* date service began**;

9)    **failure to reveal the servicing rights of the loan were sold to ALS.**

14.    First and most importantly, the "**_Smith Servicing Notes_**," fail to **divulge the identity of the loan servicer.  Neither, Homecomings nor GMACM is named as the servicer.** Secondly,

the "**_Smith Servicing Notes_**," neither reveals RFC purchased the loan from American Mortgage Network, Inc. ("AMN") nor that on or about January 30, 2007, RFC sold the Loan to a RALI securitization trust.  Although, the "**_Smith Servicing Notes_**" display a transaction indicating the loan was purchased on May 25, 2007.    In fact, the "**_Smith Servicing Notes_**" are silent until May 7, 2007.  The "**_Smith Servicing Notes_**" neither reveal that Homecomings serviced the loan from December 29, 2006 until April 1, 2008 nor that Homecomings transferred the servicing rights to Aurora on April 1, 2008.  In fact, ALS' name is not disclosed in the "**_Smith Servicing Notes_**" in any manner.  Lastly, the "**_Smith Servicing Notes_**" fail to reflect Smith defaulted on her loan in February 2008. (*Memo Order; pg. 1*)

15.      In spite of the ResCap Trust's apparent admissions and denials within the **_"Smith Servicing Notes,"_** the Court accepted the ResCap Trust's allegations as truth and found the Debtors' to have no liability.    A Court must "assum[e] all well-pleaded, nonconclusory factual allegations in the complaint to be true" (citing **_Ashcroft v. Iqbal_**, 556 U.S. at 678).  **_Respectfully,_** the Court cannot know the following: when RFC **_purportedly_** purchased Claimant's loan from AMN; which securitization trust RFC **_purportedly_** sold Claimant's loan to; how long HF **_purportedly_** serviced Claimant's loan; how or when servicing rights were **_purportedly_** transferred to ALS. The **_TAC_** does not state the answer to any of these questions and neither does the ResCap Trust's Objection nor its Reply. **Thus, these are legitimate questions of fact that demand answers**.  Seemingly, the Court appears to favor the ResCap Trust's naked allegations over Claimant's meritorious arguments.

16.      **_The Court also found as follows: "But the Trust established that Homecomings never transferred its servicing rights to GMACM….Rather, the two Debtors merely integrated their servicing platforms on a single, common computer system." (Memo Order; pg. 20.)_**

*"Homecomings was the legitimate servicer of the Loan until servicing rights were validly transferred to Aurora. Accordingly, for the period of time during which Homecomings was the servicer of Smith's Loan, Homecomings was entitled to collect Smith's payments on the Loan."* (Memo Order; pg. 20.)

### 2.    Servicing Platform Transfer

16.    **Respectfully,** Claimant contends the Court erred in conspicuously ignoring Claimant's argument in regards to Debtor HF's transfer to GMACM. The Court found that the ResCap Trust "established that Homecomings **never transferred its servicing rights to GMACM.**"(emphasis and underscore added)   To the contrary, the ResCap Trust swore under the penalty of perjury that, "**[i]n 2007**, Homecomings and GMACM merged their servicing platforms, resulting in an integration of the platforms onto a single computer system. *Homecomings did not transfer its servicing rights to GMACM* **at this time**."(Supp. Horst Declaration ¶ 25) (Emphasis, italics and underscore added)

17.    While it is illogical to assume *this Court* would refrain from recognizing meritorious claims and arguments brought by Claimants, here, it is a logical presumption *this Court* favors the ResCap Debtors over the Borrower Claimants. Specifically, treating Claimant's arguments with negligence and treating the Debtors' arguments with preference.

18.    It's one thing for the ResCap Trust to partially admit under the penalty of perjury that ***Homecomings did not transfer its servicing rights to GMACM* at this time**."(Supp. Horst Declaration ¶ 25.)  However, it is another thing when a *Court of Law* interferes with the facts by embellishing the Debtors' argument by stating, *"[b]ut the Trust established that Homecomings* **never transferred** *its servicing rights to GMACM"* while simultaneously disproving and

discrediting Claimant's argument.  The flagrant rejection of Claimant's argument and
assumption in favor of the Debtors is disheartening to say the least.

19.     ***Respectfully,*** the Court does not know when or if HF ***purportedly*** transferred its servicing
rights to GMACM.  The Res Cap Trust's Objection and Reply do not state when this ***purported***
transfer occurred, it simply states "…*not at this time*." The ***Reply*** gives information but, it also
implies additional information and/or it raises questions that are implied but not clarified.  When
did Debtor HF transfer it servicing rights and/or servicing portfolios to Debtor GMACM? **This is
a legitimate question.**  To delve into what is implied is a scholarly process. ***Respectfully,***
Claimant contends it is this Court's **duty** to wrestle with what is implied but not clarified.

20.     The Court's blatant disregard to *carefully* hear factual allegations, *carefully* examine
supporting evidence and *carefully* make sound judgments in truth is destructive to our society as
a whole.  Clearly, Debtors are above reproach and the law, but not above God.   It is devastating
and sickening to experience firsthand, how homeowners are being tricked, harassed, slandered,
robbed and ultimately displaced by the ResCap Debtors and moreover, these Debtors don't even
have to try very hard to make their deceit appear truthful.  It is the trick of the enemy to make
what is wrong appear right and what is right appear wrong.  However, THE ALMIGHTY GOD
will have the last word.  May God bless their souls.  Claimant digresses.

21.     Despite anything to the contrary, this is ***not*** Claimant's argument, Claimant contends that
on **September 24, 2007,** Debtor HF transferred its ***entire*** mortgage **servicing platform** to
Debtor GMACM, *i.e.,* servicing of all the mortgage loans deposited into the RALI 2007-QO1
Trust were transferred to GMACM in connection with the transfer of Debtor HF's **servicing
platform**. (Opposition ¶ 67.)

22.    The following excerpt is taken from the RALI 2007-QO1 Trust's **FORM 10-K**

**ANNUAL REPORT** filed with the Securities and Exchange Commission ("SEC.")(Opposition;

**Exhibit 1**.)

"Residential Capital, LLC, which owns indirectly all of the equity of both
Homecomings and GMACM, has restructured the operations of Homecomings and GMACM.
As a result of the restructuring -

(i) on May 1, 2007, the computer system on which Homecomings maintained its
servicing platform was transferred from one system (LSAMS) to another
system (MortgageServ) on which its affiliate GMACM maintains its servicing
platform; and

(ii) on September 24, 2007, Homecomings transferred its servicing platform
and certain employees responsible for the servicing function to GMACM.

**Since September 24, 2007, GMACM has serviced the mortgage loans owned by the
trust that were previously serviced by Homecomings, <u>and Homecomings has not
serviced any of those mortgage loans.</u>**

As a result of the integration of the Homecomings and GMACM servicing platforms
on a single computer system as described in clause (i) above -

(x) the Report on Assessment and related Attestation Report filed as Exhibits
33.3 and 34.3 to this Form 10-K address  **Homecomings' compliance with the
applicable servicing criteria for the pre-platform integration period from
January 1, 2007 through April 30, 2007**; and

(y) the Report on Assessment and related Attestation Report filed as Exhibits
33.2 and 34.2 to this Form 10-K  address (1) GMACM's compliance with the
applicable servicing criteria for the pre-platform integration period from
January 1, 2007 through April 30, 2007, and (2) **each of Homecomings' and
GMACM's compliance with the applicable servicing criteria for the
post-platform integration period from May 1, 2007 through December 31,
2007.**" (Emphasis and undersore added)

23.    **Not only did Debtor HF cease to service the mortgage loans within the RALI 2007-**

**QO1Trust, but it also ceased to service the mortgage loans within the following named**

**trusts with mortgage pool value (just to name a few):**

**1. RALI 2007-QA1        $410,069,000.00**
        http://www.sec.gov/Archives/edgar/data/1385297/000119312508069992/d10k.htm

2. **RALI 2007-QA2**       **$366,984,000.00**
http://www.sec.gov/Archives/edgar/data/1388210/000119312508069997/d10k.htm

3. **RALI 2007-QA3**       **$882,356,800.00**
http://www.sec.gov/Archives/edgar/data/1392496/000139249608000006/qa310k07.txt

4. **RALI 2007-QA4**       **$243,450,000.00**
http://www.sec.gov/Archives/edgar/data/1398641/000139864108000006/qa410k07.txt

5. **RALI 2007-QA5**       **$491,200,000.00**
http://www.sec.gov/Archives/edgar/data/1410211/000141021108000006/qa510k07.txt

6. **RALI 2007-QH1**       **$522,264,000.00**
http://www.sec.gov/Archives/edgar/data/1385033/000138503308000009/qh110k07.txt

7. **RALI 2007-QH2**       **$348,425,000.00**
http://www.sec.gov/Archives/edgar/data/1388211/000138821108000006/qh210k07.txt

8. **RALI 2007-QH3**       **$349,476,000.00**
http://www.sec.gov/Archives/edgar/data/1392014/000139201408000006/qh310k07.txt

9. **RALI 2007-QH4**       **$397,963,000.00**
http://www.sec.gov/Archives/edgar/data/1395072/000139507208000006/qh410k07.txt

10. **RALI 2007-QH5**       **$497,503,000.00**
http://www.sec.gov/Archives/edgar/data/1397977/000139797708000006/qh510k07.txt

11. **RALI 2007-QH6**       **$595,208,000.00**
http://www.sec.gov/Archives/edgar/data/1401414/000140141408000006/qh610k07.txt

12. **RALI 2007-QH7**       **$346,958,000.00**
http://www.sec.gov/Archives/edgar/data/1405920/000140592008000006/qh710k07.txt

13. **RALI 2007-QH8**       **$540,449,900.00**
http://www.sec.gov/Archives/edgar/data/1410213/000141021308000006/qh810k07.txt

14. **RALI 2007-QH9**       **$573, 585,400.00**
http://www.sec.gov/Archives/edgar/data/1412683/000141268308000007/qh910k07.txt

15. **RALI 2007-QO1**       **$621,930,000.00**
http://www.sec.gov/Archives/edgar/data/1384915/000106823807001159/rali_2007qo1-8k.htm

16. **RALI 2007-QO2**       **$527,132,000.00**
http://www.sec.gov/Archives/edgar/data/1388212/000138821208000006/qo210k07.txt

17. **RALI 2007-QO3**       **$296,295,000.00**
http://www.sec.gov/Archives/edgar/data/1393501/000139350108000006/qo310k07.txt

**18.** **RALI 2007-QO4**        **$502,837,000.00**
   http://www.sec.gov/Archives/edgar/data/1398693/000139869308000006/qo410k07.txt
**19.** **RALI 2007-QO5**        **$231,187,000.00**
   http://www.sec.gov/Archives/edgar/data/1410212/000141021208000006/qo510k07.txt

**20.** **RALI 2007-QS1**        **$13,259,675.0**
   http://www.sec.gov/Archives/edgar/data/1382368/000119312508070003/d10k.htm

24.    Claimant contends the Court erred in adopting the ResCap Trust's argument that the two

Debtors **_merely_** integrated their servicing platforms on a single, common computer system.

(Suppl. Horst Decl. ¶ 25.)  Claimant submitted admissible, documentary evidence in support of

her contentions.  Claimant contends the Court erred by not examining the actual verbiage of the

RALI 2007-QO1 Trust's  **FORM 10K ANNUAL REPORT** filed with the SEC. (Opposition;

**Exhibit 1**)  Because Claimant has sufficiently alleged that Debtor HF **did not** service any loans

for the RALI 2007-QO1 Trust after **September 24, 2007,** and she introduced credible evidence

in support of her allegations, unlike the ResCap Trust who sidestepped Claimant's meritorious

allegations while simultaneously failing to produce any evidence to refute Claimant's

allegations, **the Court should reconsider its Opinion and REVERSE its Order.**

25.    **_The Court found as follows:_** _The majority of Smith's claims fail to raise a plausible basis_

_for the Debtors' liability._

### 3.    *Residential Funding Corporation as Investor*

26.    According to the **_"Smith Servicing Notes,"_** Debtor Residential Funding Corporation

("RFCorp") is identified as the Investor of Claimant's loan not the RALI 2007-QO1 Trust.   This

admission actually contradicts the ResCap Trust's earlier assertion, that Claimant's loan was

transferred into a securitization trust in 2007. (Objection; Exhibit 1) Upon the discovery of this

new evidence, pursuant to *28 U.S.C. § 2801* and *Code of Civil Procedure § 1060*, Claimant

contends that an actual controversy has arisen and now exists between Claimant and Debtor

RFCorp regarding its respective rights and duties.  Debtor RFCorp as the ***purported*** investor of

Claimant's loan would definitely be liable for its servicers' actions.  ***If*** Claimant's loan was

securitized and deposited into RALI 2007-QO1 Trust then Debtor RFC as sponsor and master

servicer of the RALI 2007-QO1 Trust is definitely liable for the conduct of all sub-servicers and

agents in the servicing of any loan within the RALI 2007-QO1 Trust.

27.    ***Importantly***, Debtor RFC ***purportedly*** transferred its master servicing rights of ***all*** the

pooled loans within the RALI 2007-QO1 Trust to ALS sometime in April 2008.  According to a

public report dated March 5, 2008 filed with the SEC;


"**Residential Funding Company, LLC ("RFC"), as the master servicer** under the Standard Terms of
Pooling and Servicing Agreement, dated as of December 1, 2006, and related Series Supplement, dated as
of January 1, 2007 (the "Pooling and Servicing Agreement"), among RFC, Residential Accredit Loans,
Inc., as depositor, and Deutsche Bank Trust Company Americas, as trustee (the "Trustee"), **has entered
into an agreement to transfer the master servicing and subservicing of the mortgage loans subject
to the Pooling and Servicing Agreement to Aurora Loan Services LLC**"(Emphasis added)

See http://www.sec.gov/Archives/edgar/data/1384915/000106823808000463/rali_2007qo1-8k.htm

28.    ***Interestingly***, this is right about the same exact time when Debtor HF *purportedly* sold

and/or transferred its servicing rights to Claimant's mortgage to ALS.  Notwithstanding, HF was

only a subservicer, and had no rights to any loans in the RALI 2007-QO1 Trust to assign, sell or

transfer.  No matter your perspective, neither the ResCap Trust, Deanna Horst nor Debtors

appear to be credible.  **A question of fact exists as to whether HF ceased to service any of the**

**RALI 2007-QO1 Trust's loans after <u>September 24, 2007</u>.**  Based on the foregoing, **<u>the</u>**

**<u>Court's Order Sustaining the ResCap Trust's Objection should be reversed in</u>**

**<u>OVERRULED with respect to the Debtors' liability.</u>**

29.     Additionally, given that the ResCap Trust introduced potential liability as to Debtor

RFCorp, the Court should allow Claimant to add a new Proof of Claim against Debtor RFCorp

or allow amendment to her previously filed claims.

### 4.     The "*Smith Letters*"

30.     Claimant contends the Court erred by accepting the ResCap Trust's allegations and

accepting the "***Smith Letters***" as fact.  The ResCap Trust allege that HF serviced Claimant's

loan when the loan first went into default, but HF did not initiate foreclosure; *instead* HF sent

Smith a letter regarding options to avoid foreclosure on **February 11, 2008** and a letter regarding

her breach on **March 3, 2008**. In support of its allegations, the ResCap Trust created and

produced the "***Smith Options Letter***" and the "***Smith Breach Letter.***" (Reply; Exhibits S - T)

31.     Claimant contends Debtor HF neither sent a letter regarding options to avoid foreclosure

dated **February 11, 2008** nor a letter regarding a ***purported*** breach dated **March 3, 2008**.

Claimant neither received a letter regarding options to avoid foreclosure nor a letter regarding a

***purported*** breach by regular mail or by certified mail at any time. No one personally delivered to

Claimant a letter regarding options to avoid foreclosure and/or a letter regarding a ***purported***

breach at any time.

32.     Claimant argues that a simple examination of the "***Smith Options Letter***" shows the
following:

(1)    a failure to identify the servicer's identity;
(2)    a failure to identify the servicer's address;
(3)    January and February mortgage payments past due;
(4)    the letter was unsigned; and
(5)    no proof of receipt.

33.     Claimant argues that a simple examination of the "***Smith Breach Letter***" shows the
following:

(1)    a failure to identify the servicer's identity;
(2)    a failure to identify the servicer's address;
(3)    mortgage loan in default ;
(4)    January, February and  March mortgage payments past due;
(5)    a notice of acceleration pursuant to Paragraph 22 of the deed of trust.  Only the
        Lender/Note-Holder can give a borrower notice of acceleration; (***TAC***; Exhibit B ¶ 22.)
(6)    the letter was unsigned;
(7)    no proof of receipt.

Rather mysteriously, neither the Lender nor the subservicer are identified in the ***"Smith Letters."***

34.    Appearing telephonically in the August 26, 2014 hearing on the Objection, Claimant

attempted to address the facial defects of the ***"Smith Letters,"*** however, the Court reprimanded

Claimant and prevented her from speaking any further without first receiving permission from

the Court.  In sum, the ResCap Trust neither presented sufficient evidence to indicate who

created the letters nor how the letters were sent.  **A question of fact exists as to whether HF**

**actually drafted and sent these letters to Claimant via first-class mail or through some**

**other means.**

35.    ***Interestingly***, the Court states in its Opinion, "as none of the Debtors was party to the

Loan at the time of the alleged breach Smith's breach of contract claims with respect to the Deed

of Trust and the Note cannot proceed."(*Memo Order; pg. 20.*)  While it is a fact, that the Debtors

were not **named** parties to her loan, there is a question as to exactly when Claimant *purportedly*

breached her contract and exactly which Debtors were acting and/or pulling the strings behind

the curtain.

36.    ***Curiously***, Claimant wonders if the Court examined ***any*** of the ResCap Trust's

documents at all.  It appears the Court did ***not*** because the ResCap Trust alleged, "Ms. Smith did

not make the February1, 2008 payment…"(Objection; Exhibit 1:  Reply ¶ ¶ 20, 34)  Although

the ***"Smith Letters"*** show Claimant's January, February and March payments were past due, the

Court simply recites the ResCap Trust's bare assertion that, "Smith defaulted on her loan in February 2008." (*Memo Order; pg. 1*.) Thus, it appears to be an unanswered question if Claimant actually defaulted, did she default in January, February, or was it in March?

37.     Nowhere in the record does Claimant concede she defaulted on her obligation. Because the Court did not hold an evidentiary hearing on this matter, this Court is not permitted to make factual findings. (***Mink v. Maccabee*** (2004) 121 Cal.App.4th 835, 839.) Given the allegations as pleaded, the issue of whether Claimant was in default requires a factual determination.

38.     For these reasons, the record in this case demonstrates that a question of fact remains as to whether Debtor HF actually drafted and sent Claimant the ***"Smith Letters."*** As such, Claimant's assignment of error is meritorious.

### B. Claimant's Claims Against Debtors

#### 1.     Fraud Claim Not Time-Barred

39.     Ms. Smith's claim for fraud is ***not*** barred by the statute of limitations. Claimant contends the Court erred in sustaining her fraud claim based on her failure to "**adequately explain how she was prevented** from requesting a copy of her Loan application before October 2009…"

40.     Claimant contends the Court erred in preventing her from orally refuting the ResCap Trust's allegations in the August 26, 2014 hearing. Claimant contends that she addressed each unsupported allegation in the ResCap Trust's objection in her Response and requested the Court take judicial notice of admissible evidence supporting her allegations. However, Claimant was neither afforded the opportunity to dispute any of the ResCap Trust's subsequent arguments nor its production of its business records in its Reply.

41.     Appearing telephonically, in the August 26, 2014 hearing on the Objection, Claimant attempted to refute the ResCap Trust's flimsy allegations, however, the Court reprimanded

Claimant and prevented her from speaking further without receiving permission from the Court.

If Claimant would have been granted the opportunity to continue speaking, Claimant would have

stated that she was not aware of and had no reason to suspect any Debtor or anyone else of any

fraud **_before_** November 13, 2009, or any deceptive practices **_before_** she discovered the fabricated

and forged Loan Application in July of 2011.

42.    Desperately, seeking a loan modification, on or around October 1, 2009, Claimant sought

assistance from the Neighborhood Assistance Corporation of America ("NACA") along with

hundreds of a thousand others, Claimant entered into an agreement with NACA to assist her in

acquiring a loan modification through the Making Home Affordable Program ("HAMP").

NACA asked Claimant the name of her Lender and she answered ALS.  The NACA

representative informed her ALS was probably just her servicer and encouraged her to send ALS

a qualified written request ("QWR") in order to ascertain exactly who the Lender/Owner of her

Loan was. (**_TAC_** ¶ 52)

43.    Claimant contends the purpose of the QWR was to discover the identity of the

Lender/Owner of her loan in order to request and receive a loan modification directly from the

Lender/Owner.  Moreover, Claimant did not specifically request a copy of her Loan Application

before November 2009, because she never needed a copy of her Loan Application **because she**

**has the original wet ink Loan Application in her possession**.(see **_TAC_** ¶ 15) Claimant

contends she adequately pled delayed discovery and as such, **the Court's Order Sustaining the**

**Objection should be reversed in OVERRULED with respect to Ms. Smith's fraud claim.**

####     2.    *Tortious Interference with Contract*

44.    ***The Court found as follows:*** *"[t]he California Action was not commenced until July*

*2011; however, Smith states that she was instructed to skip mortgage payments as early as*

*November 2007, and by April 2008 she acknowledges that she was in*

*default on the Loan. (See Opposition ¶ ¶ 21, 36, 38.) Smith was therefore on notice that she had*

*breached the Note as of April 2008. At that point in time, Smith had two years to assess whether*

*she had a claim for tortious interference with contract based on the alleged representations of a*

*Homecomings employee, which Smith contends induced her breach. Instead, Smith waited more*

*than three years to bring a claim for tortious interference with contract, and her claim is*

*therefore barred by the statute of limitations."*

45.     Claimant contends the Court erroneously determined that her claim is time-barred.

Although, an ALS representative told Claimant she was in default, this "information" did not and

would not put Claimant on notice **to assess whether she had a claim for tortious interference**

**with contract against Debtor HF, based on the representations of an ALS employee**.

46.     A "stranger to a contract may be liable for intentionally interfering with the performance

of the contract." ***Pacific Gas & Electric Co. v. Bears Stearns & Co.,*** 50 Cal.3d 1118, 1126

(1990).  Because ALS' statement did not insinuate in any manner that HF was a stranger to

Claimant's loan and she did not actually discover HF was a stranger to her contract until at the

earliest July 2011, she has adequately pled delayed discovery.

47.     Moreover, Claimant acknowledges she received a notice of default in September of 2009,

***purportedly*** giving her notice of an **actual breach.**  A tortious interference with contract claim

*generally* accrues at the time of the alleged wrongful act, but at no time does a claim accrue later

than the time of the **actual breach** of the party who was so induced to breach the contract. ***DC***

***Comics,*** 938 F. Supp. 2d at 948 (citing ***Trembath v. Digardi,*** 43 Cal. App. 3d 834, 836 (1974))

(Emphasis and underscore added).  **Based on, and following the Court's reasoning**, Claimant

contends that her tortious interference with contract claim would have accrued when she received notice of the **actual breach**, which was September of 2009 and Claimant filed her complaint on July 15, 2011.   As a result, this claim is not time-barred.

48.      "The elements necessary to state a cause of action for intentional interference with contractual relations are '(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.'" *Mintz v. Blue Cross of California,* 172 Cal.App. 4th 1594, 1603 (2009) (citing *Bears Stearns,* 50 Cal. 3d at 1126).  Only a stranger to the contract may be liable for interfering with it. *See **Applied Equipment Corp. v. Litton Saudi Arabia Ltd**.,* 7 Cal. 4th 503, 513 (1994) (holding that a contracting party cannot be held liable in tort for conspiracy to interfere with its own contract; "[t]he tort duty not to interfere with the contract falls only on strangers-interlopers who have no legitimate interest in the scope or course of the contract's performance").  Proof the interfering conduct was wrongful, independent from the interference itself, is not required to recover for interference with contractual relations. [Citation.]" (*Sole Energy Co. v. Petrominerals Corp.* (2005) 128 Cal.App.4th 212, 237-238.)

49.      Claimant concedes that under *California law*, the two-year statute of limitations begins to run no later than the date of the breach or termination of the underlying contract.   *See **California Code of Civil Procedure § 339***.     However, Claimant contends the statute of limitations should be tolled under the discovery rule.  Under *California law*, the statute of limitations can be tolled by the discovery rule which delays the accrual of the date of a cause of action until the plaintiff is aware of the injury. *Hopkins v. Dow Corning Corp.*, 33 F.3d 1116, 1120 (9th Cir. 1994) (citing *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1109 (1988)).  Under the discovery rule, the statute of

limitations begins to run when the plaintiff suspects or should suspect that its injury was caused

by wrongdoing. *Jolly*, 44 Cal. 3d at 1110. "A plaintiff need not be aware of the specific 'facts'

necessary to establish the claim; that is a process contemplated by pretrial discovery. Once the

plaintiff has a *suspicion* of wrongdoing, and therefore an incentive to sue, she must decide

whether to file suit or sit on her rights." *Id*. at 1111 (emphasis added).

50.     Here, Claimant was unaware of the fact and had no reason to suspect that Debtor HF was

a stranger to her mortgage and no reason to doubt HF's representations.  Because Claimant

contends her mortgage is not in the RALI 2007-QO1 Trust, HF is a stranger to her loan.  And

even if Claimant's loan was actually securitized and deposited into the RALI 2007-QO1 Trust,

after **September 24, 2007**, HF ceased to service any loans for the RALI 2007-QO1 Trust. Under

either legal theory, Claimant did not discover HF was a stranger to her loan until July of

2011. (See *TAC* ¶ 69) **Thus, the Court's Order Sustaining the Objection should be reversed**

**in OVERRULED with respect to Ms. Smith's tortious interference with contract claim.**

### 3.     *Wrongful Foreclosure*

51.     Claimant contends the Court erred in mischaracterizing her allegations. At no time did

**Claimant ever acknowledge** that *any* Debtor had informed her that they transferred servicing

rights to Aurora in 2008.  Claimant clearly asserts, "Claimant received a letter dated March 18,

2008 **from** …**Aurora Loan Services, LLC** ("ALS") notifying Claimant that HF had transferred

the servicing rights of her debt obligation to ALS." (See Opposition ¶ 19; *id*. Ex. 4.)  Claimant

neither received a letter nor notice from Debtor HF or GMACM notifying her that her loan was

being transferred to ALS.

52.     An action for the tort of wrongful foreclosure will lie if the trustor or mortgagor

(borrower) can establish at the time the power of sale was exercised or the foreclosure occurred,

**no breach of condition or failure of performance existed** on the mortgagor's or trustor's part which would have authorized the foreclosure or exercise of the power of sale. *See **Munger v. Moore**,* 11 Cal.App.3d 1, 89 Cal.Rptr. 323 (Cal.App.1970).   The fact that no Debtor was a trustee or mortgagee at the time of foreclosure is not fatal to Ms. Smith's claim, but **VITAL** to Ms. Smith's claim.

53.     Upon entering the mortgage contract, Claimant and the ***Lender*** agreed, as conditions precedent to acceleration and foreclosure, the ***Lender*** would comply with the specific terms set forth in the following **paragraph** of the DOT:

**22. Acceleration; Remedies. *Lender* shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, and sale of the Property. The notice shall further Inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.** (Original emphasis. Italics and underscore added)(see ***TAC***: Ex.B.)

54.     Claimant alleges she didn't receive the required notice and alleges neither her ***Lender*** nor ***Lender***'s successors or assigns complied with **_any_** of the conditions precedent expressed in **Paragraph 22** of her deed of trust. (***TAC*** ¶ 81.)

55.     ***According*** to her deed of trust, the ***Lender* was obligated to notice Claimant before acceleration following Claimant's alleged breach**. (***TAC; Exhibit B*** ¶ 22.)  The concept of acceleration is used to determine the amount owed under foreclosure. Acceleration allows the Note-Holder to declare the entire debt of a defaulted mortgagor due and payable, when a term in the mortgage has been broken.  Instead, ***legal strangers*** declared a default, invoked the power of sale and conducted an unlawful foreclosure. (See ***Pfeifer v. Countrywide Home Loans, Inc***.

(2012) 211 Cal.App.4th 1250 ["to permit a foreclosure when the lender has not complied with the requirements that may have prevented any need for a foreclosure would defeat a salient purpose..."])

56.    The ResCap Trust alleges that on March 3, 2008, Debtor HF acting as servicer, sent Claimant a "breach letter."  However, *according* to **Paragraph 22,** it states, "***Lender*** shall give notice to Borrower….." (emphasis and italics added)  ***Curiously and confusingly***, is the ResCap Trust simultaneously alleging that Debtor HF was also Claimant's Lender?  ***Respectfully,*** Claimant contends the Court erred in accepting each of the ResCap Trust's defenses and allegations with neither examination nor question.

57.    Claimant contends her duty to perform under her obligation was excused when Debtor HF and Debtors' agent and co-conspirator, ALS induced her to skip certain mortgage payments in order to qualify and be considered for a loan modification which ultimately was an extraordinary and intellectual scheme to create a false default. ***California Civil Code § 1511.3.*** Additionally, Ms. Smith contends that the Note was never validly transferred to Deutsche Bank, as trustee for the RALI 2007-QO1Trust, and therefore ALS could never legally foreclose on her Property. (Opposition ¶ 93.)

58.    ***The Court found as follows:***  *"Given that the Note was validly deposited into the RALI Trust, and the Debtors had validly transferred servicing rights on Smith's Loan to Aurora well before Aurora ultimately foreclosed on the Property, the Debtors cannot be liable for wrongful foreclosure." (Memo Order; pg. 18.)*

59.    Claimant contends the Court erred in finding that the Note was validly deposited into the RALI 2007-QO1 Trust without any supporting evidence whatsoever from the ResCap Trust.

The ResCap Trust failed to introduce any evidence to support its claims of securitization in any manner.

### (a)    *The Promissory Notes*

60.    "[O]n or around November 13, 2006 [AMN] originated a loan to Ms. Smith.  RFC purchased the loan from AMN and subsequently the loan was securitized where Deutsche Bank Trust Company Americas … was appointed trustee on or about January 30, 2007. See the Smith Note, showing a proper chain of endorsement from AMN to Deutsche attached to the Smith Response as Exhibit 6."  (Supp Horst Declaration ¶ 19) **Claimant disputes her loan was originated on November 13, 2006 with her knowledge.**

61.    Claimant endorsed a deed of trust and promissory note both in favor of AMN on **December 2, 2006**.  *California law* requires that the **Lender** record the deed of trust in the county where the property is situated.  Claimant's deed of trust was recorded on December 8, 2006.  Although, the deed of trust was recorded, there is no requirement in California that the **Lender** record the promissory note. Thus, the promissory note was not recorded.

62.    Subsequently, thereafter, Claimant never viewed the promissory note again until she sent ALS a qualified written request ("QWR") in a good faith attempt to secure a loan modification. The purpose of sending the QWR to ALS was to discover the identity of the Lender/Note-Holder/Owner.  ALS responded to Claimant's QWR in a letter dated November 9, 2009 and enclosed a compact disc laden with ***purported*** copies of Claimant's ***original*** loan documents. Although Claimant received this compact disc in mid November 2009, she did not view the documents until July of 2011.

### *(1)     First Note*

63.     A ***purported*** copy of Claimant's ***original*** promissory note was included among the loan

documents.  Again, this was the first time Claimant viewed a ***purported*** copy of her ***original***

 promissory note ("FIRST Note.")  A close examination of the FIRST Note shows an undated,

***purportedly*** stamped endorsement in blank on an unnumbered page.  Generally, all endorsements

are made on the front of the signature page of a promissory note until that page is filled and has

no more room for any additional endorsements. This undated, stamped endorsement reads:

- **PAY TO THE ORDER OF** in blank **WITHOUT RECOURSE BY** American
  Mortgage Network, Inc., a Delaware Corporation, By Tiffany Rice (appearing to be the
  ***purported*** signature of) Tiffany Rice, Funder.

64.     Almost two years later, Claimant sent ALS yet another QWR as she was still seeking the

identity of the Lender/Note-Holder/Owner of her mortgage.  ALS responded to Claimant's QWR

in the form of a letter and enclosed another compact disc laden with ***purported*** copies of

Claimant's ***original*** loan documents in late July of 2011. (***TAC*** ¶ 69)

### *(2)     Second Note*

65.     A different version of a ***purported*** copy of Claimant's ***original*** promissory note was

included among the loan documents. ("SECOND Note").  A close examination of the SECOND

Note shows two undated, ***purportedly*** stamped endorsements on an unnumbered page.  An

undated, ***purported*** allonge on a separate unnumbered page was also included on the disc.

66.     **Generally**, all endorsements are made on the front of the signature page of a promissory

note until that page is filled and there is no more room for any additional endorsements.  An

allonge is an <u>attachment to a legal document </u>that can be used to insert language or signatures

when the original <u>document does not have sufficient space for the inserted material</u>.  It may be,

for example, a piece of paper attached to a negotiable instrument or promissory note, on which

endorsements can be written because there isn't enough room on the instrument itself.  The

allonge must be firmly attached so as to become a permanent fixture of the instrument.  Claimant

contends that the SECOND Note shows sufficient space to include all three **_purported_**

endorsements.  Thus, there was no need to draft a separate page for the allonge.  A close

examination of the SECOND Note shows the following **_purported_** endorsements:

1. an undated, **_purportedly_** stamped endorsement reads **PAY TO THE ORDER OF** Residential Funding Company, LLC **WITHOUT RECOURSE BY** American Mortgage Network, Inc., a Delaware Corporation, By Tiffany Rice (appearing to be the **_purported_** signature of) Tiffany Rice, Funder;

2. an undated, **_purportedly_** stamped endorsement reads **PAY TO THE ORDER OF** Deutsche Bank Trust Company Americas as Trustee **WITHOUT RECOURSE BY** Residential Funding Company, LLC BY Judy Faber (appearing to be the **_purported_** signature of) Judy Faber, Vice President;

3. an  undated **_purported_** allonge reads **PAY TO THE ORDER OF**: **_Aurora loan Services LLC_** **WITHOUT RECOURSE** by *illegible* (appearing to be the **_purported_** signature of) Judy Deits, Authorized Officer of Deutsche Bank Trust Company Americas as Trustee FKA Bankers Trust Company, as Trustee by Residential Funding Company, LLC FKA as **Residential Funding Corporation**, its Attorney-in-Fact.

67.    The assignment, endorsement or "transfer" of a promissory note through a power of

attorney or any other documents are hearsay instruments that imply a transaction took place.

68.    **_The Statute of Frauds_**, and long-standing California decisional authority, requires an

agent assigning an interest in property on behalf of his principal to disclose the name of his

principal or that assignment is void. California's **_Statute of Frauds_** requires, "[a]n estate in real

property ... can be transferred… by an instrument in writing, subscribed by the party disposing of

the same, or by his agent thereunto authorized by writing." *Estate of Stephens*, (2002) 28 Cal. 4th 665, 679. See *McNear v. Petroleum Exp. Corp*., 208 Cal. 162, 166, (1929) (an agent's own signature did not satisfy the statute of frauds, as the agent did not purport to sign as agent of the principal, rather signed in the agent's own name); *Fisher v. Salmon*, 1 Cal. 413 (1851) (holding an instrument conveying an interest in real property executed by an agent in the agent's own name is void). Any agency involving interests in real property must likewise be in writing. *Videau v. Griffin*, 21 Cal. 389, 391 (1863) (where a deed is executed by an attorney without written authority, no subsequent parole acknowledgment by the principal will make that conveyance valid.); See *California Civil Code §§ 1091, 1624;* ("In general, if some other person executes a deed on behalf of the grantor, the grantor's authorization must be in writing.") See *Miller & Starr, Cal. Real Estate* (3rd ed. 2000) Deeds, section 8.27, p. 52. *California Civil Code § 2309* further provides, "authority to enter into a contract required by law to be in writing can only be given by an instrument in writing."

69.     **Claimant invites and asserts a close examination of the FIRST and SECOND Notes show visible variations and alterations.  Claimant contends the promissory note has obviously been altered and as a result, the *purported* endorsements are all void.**

70.     To be enforceable, promissory notes must be validly negotiated.  A valid negotiation is a two step process that requires the endorsement and the delivery of the instrument.  Here Claimant admits endorsing a promissory note in favor of AMN, however Claimant does not know if it the instrument was properly delivered to AMN before the FIRST and SECOND Notes were altered by an unknown third party[s]. There is no California case addressing this precise issue. Nevertheless, similar situations have arisen. For example, if a trustee, who holds bare legal

title in trust for the beneficiaries, alters the deed (contract), the deed is not invalidated. It is a

material alteration by a party to the deed that renders it void. (***Bumb v. Bennett*** (1958) 51 Cal.2d

294, 303.)  Further, in the context of an executed contract, it has been held that a third party's

alteration of that contract does not void the contract in its entirety. Rather, the contract is

enforceable in accordance with its original terms. (***Walsh v. Hunt*** (1898) 120 Cal. 46,

53; ***American Trust Co. v. Greuner***  (1936) 13 Cal.App.2d 279, 282.)

71.     Applying these authorities here, it is plausible that Claimant's **executory contract**

[***original*** promissory note] may be void or voidable as to AMN ***only*** if the note was delivered to

AMN before an unknown third party[s] altered the promissory note.

72.     ***If*** the promissory note was altered by AMN the result would render the **executory**

**contract** void.  ***If*** it is proven, the promissory note was altered by an unknown third party[s], the

result would not render the executory contract void in its entirety. **Thus, a question of fact**

**exists.  Did AMN receive Claimant's promissory note before or after an unknown third**

**party[s] altered the *original* promissory note?**

### b.    The RALI 2007-QO1 Trust Never Received Claimant's Mortgage

73.     Moreover, both copies of the Note supplied by Debtor's agent and co-conspirator, ALS,

reveal missing and invalid transfers, evidencing a broken chain of title. As a result, Claimant's

Note and deed of trust were ***never*** delivered into the RALI 2007-QO1 Trust. These ***purported***

transfers are totally inconsistent with the representations and warranties made in the Pooling and

Servicing Agreement filed with the SEC and to the holders of the bonds (the Certificate-Holders)

issued by the RALI 2007-QO1 Trust and made accessible to the public.  Due to the visible

variations between the two copies of the Note Claimant contends that there is a genuine issue of

material fact as to whether Claimant's Note and deed of trust were deposited into the RALI-2007-QO1 Trust when there is an unexplained gap in the chain of title. Instead, the Court relies solely on the ResCap Trust's unelaborated and unsupported explanations of securitization.

74.    Claimant like all other Claimants, is entitled to assert good faith claims against the Debtors, and to have this Court judge each claim fairly on the merits. The Court has not done so here.  Claimant contends the Court apparently ignored Claimant's arguments and evidence.  ***If*** the loan never made it into the RALI 2007-QO1Trust, as Claimant contends, then the subservicer might be the subservicer for the trust but lacks any authority to claim representative authority for processing loan payments or enforcing Claimant's loan documents. So it might be the subservicer for the trust, but ***not*** for Claimant's loan, which Claimant contends is ***not*** and never was in the Trust.

75.    Pointedly, the ***"Smith Servicing Notes"*** created and produced by the ResCap Trust further indicate that the investor of her mortgage loan is ***not*** the RALI 2007-QO1 Trust but Debtor RFCorp.  For these reasons, the record in this case demonstrates that a question of fact remains as to whether Debtors RFC and RALI actually securitized and deposited Claimant's loan into the RALI 2007-QO1 Trust.  As such, Claimant's assignment of error is meritorious. **Thus, the Court's Order Sustaining the Objection should be reversed in OVERRULED with respect to Ms. Smith's wrongful foreclosure claim.**

### 4.    *Cancellation of Instruments*

76.    ***According*** to Debtors' agent and co-conspirator, ALS, "…Deutsche Bank was the investor who provided the funds for the loan, not the lender or beneficiary..." (***TAC*** ¶ 19.) Claimant alleges that because full disclosure was ***not*** given regarding the parties involved,( each

party's respective rights, and the true intentions of the parties) **Claimant disputes the validity of the promissory note, the deed of trust, the parties involved and the amounts owed.** Claimant alleges other agreements were purportedly made outside of her mortgage contract and these agreements altered the nature of her mortgage. (***TAC*** ¶ 24.) As such, **Claimant alleges she didn't consent** to the formation of the alleged contracts and she seeks cancellation of the promissory note and deed of trust. (***TAC*** ¶ 22.) "Contract formation requires mutual consent, which cannot exist unless the parties 'agree upon the same thing in the same sense." ***Bustamante v. Intuit, Inc.,*** 141 Cal. App. 4th 199, 208 (2006) (quoting ***California Civil Code §§ 1580, 1550, 1565***).  As a condition of obtaining cancellation of a voidable deed, the party seeking relief is generally required to restore or offer to restore to the defendant everything of value received in the underlying transaction.  However, if the deed is void, as in the case of fraud in the execution or forgery, restoration is not necessary [see ***Fleming v. Kagan*** (1961) 189 Cal. App. 2d 791, 796, 797, 11 Cal. Rptr. 737]

77.    In addition, Claimant didn't and couldn't have discovered through the exercise of reasonable diligence she was injured by Defendants tricking her into her loan, much less who caused that injury, until, at the earliest on or near October 25, 2012, when ALS made a judicial admission in support of its motion for relief from stay in her tenant, Stanley Barnett's bankruptcy case, that **Deutsche Bank funded Claimant's loan.** (***TAC*** ¶ 248)

78.    Initially, Claimant was led to believe AMN **funded** the refinance of her mortgage. Claimant contends that the Debtors were warehouse lenders (the funding source) for AMN, purchasers and servicers, agency principles apply in this case. (Opposition ¶ 50.)   The ResCap Trust argues, "RFC at one time acted as a warehouse lender to AMN. However, it was not acting in such capacity at the time the Smith Loan was originated." (Supp Horst Declaration ¶ 24) This

naked allegation without more, *ipso facto*, ultimately is a "he said, she said" parody. **Thus, a question of fact exists as to if RFC acted as a warehouse lender for Claimant's loan.**

Claimant now contends that prior to closing, her loan was pre-sold to the RALI 2007-QO1 Trust Certificate-Holders, possibly on November 13, 2006 as the ResCap Trust claim.  Because Defendants and Debtors chose not to disclose this information to Claimant before she signed her loan documents, Claimant neither suspected her loan was not funded by AMN nor could she have discovered this concealed fact. (***TAC*** ¶ 248.)  'The fact…the party seeking relief has read the instrument and knows its contents does not prevent a court from finding…it was executed under a mistake.'[Citations.]" (***Western Title Guar. Co., supra***, 235 Cal.App.2d at p. 285.) Claimant's cancellation of instruments claim is ***not*** time-barred. **Thus, the Court's Order Sustaining the ResCap Trust's Objection should be REVERSED with respect to the cancellation of instruments claim.**

### 5. *Unjust Enrichment*

79.    Claimant contends the Court erred by adopting the ResCap Trust's claims that "Homecomings was the legitimate servicer of the Loan until servicing rights were validly transferred to Aurora." (*Memo Order; pg. 20*) The Court further states that "Smith has not adequately alleged that Homecomings, or any other Debtor, was not entitled to receive such Loan payments by virtue of any invalid transfer of servicing rights" (*Memo Order; pg. 20*) However, the uncontroverted evidence submitted by Claimant refutes the ResCap Trust's assertions, [see Opposition; Exhibit 1] and the ResCap Trust offers no legal support for their "legitimate servicer" claim.  The fact is, *according* to the governing documents of the RALI 2007-QO1 Trust, Debtor RFC is the MASTER SERVICER and Debtors HF and GMACM act as

SUBSERVICERS.  According to the subservicer agreement between Debtors RFC and HF, HF

did not own the servicing rights to any of the loans owned by the RALI 2007-QO1 Trust.

80.     Claimant contends that Debtor RFC acting as the ___*purported*___ MASTER SERVICER and

Debtor HF acting as the SUBSERVICER are liable for unjust enrichment, based on allegations

that RFC, HF and its agent and/or co-conspirator, ALS, accepted loan payments to which they

were not entitled and received "money procured through theft, fraud and forged documents."

(Opposition ¶ 117.)

81.     It is a legal impossibility that HF had the power to transfer servicing rights, it did not

possess, to ALS or anyone else.  Additionally, Claimant argues the proposition that HF is the

legitimate servicer has not been proven conclusively and the ResCap Trust has not offered any

admissible evidence supporting this assertion. __Therefore, the Court's Order Sustaining the__

__ResCap Trust's Objection should be REVERSED with respect to the unjust enrichment__

__claim.__


       ***6.     Accounting and Constructive Trust***

82.      "The action for an accounting is equitable in nature. __It may be brought to compel the__

__Defendant to account to the Plaintiff for money or property__; (1) where a fiduciary

relationship exists between the parties, or (2) where, though no fiduciary relationship exists, the

accounts are so complicated that an ordinary legal action demanding a fixed sum is

impracticable. ***Civic Western Corp v. Zila Industries*** (1977) 66 Cal.App.3d 1. (emphasis and

underscore added)

83.     Claimant contends Debtors falsely represented and have held themselves out to be the

owner and/or servicer of her loan, when in fact, as discussed above they had and have no right to

collect payments from Claimant.  Ms. Smith's claim for accounting is necessitated as a discovery

tool to demonstrate that the Debtors neither paid value for Claimants loan nor received

consideration from ALS for receiving the *purported* servicing rights to her loan.  Because the

Debtors have been enriched from this misrepresented relationship, a balance is due to Claimant

for payments received by Debtor HF and Debtors' agent and co-conspirator ALS.  Claimant does

not know and could not know without an accounting, the balance due from Debtors because of

the structure of the misrepresented relationship.  An accounting is therefore needed.

84.    By reason of the fraudulent and otherwise wrongful manner in which the Debtors

obtained their ***purported*** right, title and interest in and to Claimant's Property, Debtors, and each

of them, have no legal, equitable, or pecuniary right, claim or interest therein, but instead,

Debtors and each of them are involuntary trustees, ex maleficio, holding said sums, Property and

profits in constructive trust for Claimant, with the duty to convey the same to Claimant

forthwith. See ***California Civil Code § 2224.***  Thus, the accounting and constructive trust claims

are connected to Claimant's causes of action for fraud and wrongful foreclosure and as such, **the
Court's Order Sustaining the ResCap Trust's Objection should be REVERSED with
respect to the accounting  and constructive trust claims.**

### 7.    *Fraudulent Omissions*

85.    Claimant contends the Court erred by mischaracterizing Claimant's allegations as

admissions. (*Memo Order; pg 23*, ["But Smith admits that American Mortgage, not the Debtors,

originated her Loan (see *id.* ¶¶ 14, 41)"].)  Claimant does not admit or concede that AMN

originated her loan. (*see* Opposition. ¶ 14, ["December 2, 2006 Claimant executed a promissory

note ("Note") in the amount of $556,000 in favor of American Mortgage Network, Inc.

("AMN.") (***TAC***; **Exhibit A.**)"].) (*see also* Opposition. ¶ 41, ["On December 2, 2006 Claimant

refinanced her Property with a loan purportedly issued by AMN. Claimant signed a Note as the

sole obligor in the amount of $556,000.00 in favor of AMN. The Note named the **Lender**, AMN

as the sole obligee."].)

86.    Claimant actually argues that prior to closing, her loan was pre-sold to the RALI 2007-

QO1 Trust Certificate-Holders and this may explain why the Debtors falsified, fabricated and

forged Claimant's Loan Application after she signed her loan documents, as Debtors needed to

meet certain requirements subject to the RALI 2007-QO1 Trust's Pooling and Servicing

Agreement ("PSA"). After closing, Claimant's Loan was ***purportedly*** deposited into the RALI

2007-QO1 Trust.  However, Claimant contends her mortgage was NEVER deposited into the

RALI 2007-QO1 Trust. **If Claimant's allegations are proven, that the Debtors were involved**

**in the origination of her loan, the Debtors would therefore be liable for any and all loan**

**origination claims.** (Opposition. ¶ 48)

87.    Moreover, Claimant contends the Court erred by preventing her from orally defending

her fraudulent omissions claim against the ResCap Trust's egregious allegations in its Reply in

the August 26, 2014 hearing.  The Court further erred in determining her fraudulent omissions

claim is untimely. As discussed in detail above, addressing and defending Claimant's fraud

claim, she has sufficiently pled delayed discovery, as such, **the Court's Order Sustaining the**

**ResCap Trust's Objection should be REVERSED with respect to the fraudulent omissions**

**claim.**

### 8.    *Quiet Title*

88.    Pursuant to ***section 760.020*** of the California Civil Procedure Code, a party may establish

title to real property against adverse claims thereto by bringing an action to quiet title. *See*

***California Code of Civil Procedure § 760.020.***

89.     Claimant contends the Court erred by misinterpreting her quiet title argument. "Claimant

doesn't seek to quiet title against her mortgagee, she seeks to quiet title to Debtors' alleged

successor in interest and/or agent, ALS." (Opposition ¶ 127.)  Because Claimant contends ALS

is an agent and co-conspirator of Debtors, she is bringing a quiet title action against the Debtors.

As such, **the Court's Order Sustaining the ResCap Trust's Objection should be**

**REVERSED with respect to the quiet title claim.**


### 9.     *The Truth in Lending Act*

90.     Claimant contends the Court erred in determining her *TILA* claim is barred by the statute

of limitations. Claimant has sufficiently pled delayed discovery regarding her *TILA* claim.

Actions seeking damages under *TILA* must be brought within one year from the date the

transaction is consummated, **subject to the tolling of such limitations period "until the**

**borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures**

**that form the basis of the TILA action.**" *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986.)

**Thus, the Court's Order Sustaining the ResCap Trust's Objection should be REVERSED**

**with respect to the TILA claim.**


### 10.     *The Rosenthal Act*

91.     Claimant contends the Court erred in determining her Fair Debt Collections Practices Act

("FDCPA") claim is untimely.  The statute of limitations on a Rosenthal Act claim is one year.

(*California Civil Code § 1788.30, subd. (f).*) According to the ResCap Trust, Debtor RFC

purchased Claimants loan.   The ResCap Trust also claims that Debtor RFC then sold the loan

and securitized it, however, the ResCap Trust failed to establish and support these allegations

with any credible evidence.  Claimant contends her loan was never securitized and/or deposited

into the RALI 2007-QO1 Trust, as the ResCap Trust claims. As such, Claimant contends the

Debtors' debt collection efforts commenced in or about December 2006 with Debtor HF and

these collection efforts continued up until December 2010 through the Debtors' agent and co-

conspirator ALS; under the continuing tort doctrine, the statute did not run until this time, which

is less than a year before the filing of Claimant's initial complaint in July 2011.

92.    However, Claimant could not have reasonably known of the existence of a claim for

violation of *15 U.S.C. § 1692(e)* because the Debtors fraudulently concealed the fact that they

were not entitled to enforce Claimant's debt obligation in any manner and that Debtors were

falsely representing to Claimant the character and amount of money Claimant still owed on her

debt. **Thus, the Court's Order Sustaining the ResCap Trust's Objection should be**

**REVERSED with respect to the Rosenthal Act claim.**

### C. The Horst Declaration

93.    Lastly, Claimant contends the Court erred in declaring **that the Horst Declaration is**

**admissible under the business records exception to the rule against hearsay.** While Ms.

Horst can testify with respect to certain matters that cannot reasonably be disputed, such as

Residential Capital, LLC and its affiliates ("ResCap"), is a limited liability company organized

under the laws of the state of Delaware and the parent of the other debtors in the above-captioned

Chapter 11 Cases, (Horst Supp Declaration ¶ 1) she cannot state with certainty whether Ms.

Smith made the "required" mortgage payments in January or February 2007, whether letters were

actually sent to Claimant on February 11, 2007, or March 8, 2007, or whether Claimant's loan

was originated in November or December of 2007. Such statements by Ms. Horst, among others,

are disputed, lack personal knowledge, and are not subject to judicial notice.

94.    For the reasons stated herein, Claimant has established that the Horst Declaration and the

documents introduced by the ResCap Trust are questionable given its failure to identify the

drafting party of each document.    These documents do not appear to be contemporaneous

business records kept in the ordinary course of the Debtors' business, and there is more than an

obvious indication that these documents lack trustworthiness. (Objection: Exhibits. S, T and X.)

**As such, the Court's Order Overruling Claimant's Objection should be REVERSED with**

**respect to the admissibility of the Horst Declaration .**

## I.  CONCLUSION

Based upon Claimant's detailed examination of the "***Smith Letters***," the "***Smith Servicing***

***Notes***" and Ms. Horst's Declarations, together with a detailed examination of the ResCap Trust's

Objection and Reply, Claimant has determined that the ResCap Trust's Objection and Reply fail

to substantiate any of its arguments and essentially, the invalidity of Ms. Smith's claims against

Debtors.    For these reasons, Tia Smith respectfully requests reconsideration of the Memorandum

Opinion and Order Sustaining in part and Overruling in part the ResCap Borrower Trust's

Objection to Proof of Claim Nos. 3889, 4129, 4134 and 4139. Specifically, Claimant requests

that the Court revoke the Order and OVERRULE the Objection in its entirety and SUSTAIN

Claimant's Objection to the admissibility of the Horst Declaration.


Dated: October 17, 2014                                    _____

                                                                          Tia Smith