**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>RESIDENTIAL CAPITAL, LLC, *et al.*<br><br>Debtors. | NOT FOR PUBLICATION<br><br>Case No. 12-12020 (MG)<br><br>Jointly Administered |

**MEMORANDUM OPINION AND ORDER SUSTAINING THE RESCAP BORROWER
CLAIMS TRUST'S OBJECTION TO THE CLAIM FILED BY
<u>JESSICA ANGEL QUIROZ AND RAMON QUIROZ</u>**

*A P P E A R A N C E S:*

JESSICA ANGEL QUIROZ AND RAMON QUIROZ
*Pro Se*
89-37 Metropolitan Avenue
Rego Park, New York 11374
By:    Ramon Quiroz

MORRISON & FOERSTER LLP
*Attorneys for ResCap Borrower Claims Trust*
250 West 55th Street
New York, New York 10019
By:    Norman S. Rosenbaum, Esq.
       Jordan A. Wishnew, Esq.
       Jessica J. Arett, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

      Jessica Angel Quiroz and Ramon Quiroz (the "Claimants")[1] filed claim number 4413 (the

"Claim") against Debtor GMAC Mortgage, LLC ("GMACM"), asserting a general unsecured

claim in the amount of $522,000, as well as a priority claim for domestic support obligations in

the amount of $72,000, plus interest on the claim amounts. The Claim stems from alleged

liability related to real property located at 89-37 Metropolitan Avenue, Rego Park, New York

---

[1] The proof of claim for claim number 4413 (the "Proof of Claim") designates Jessica Angel Quiroz as the creditor but indicates that notices and payment should be sent to Ramon Quiroz. (*See* "Proof of Claim," ECF Doc. # 7480-11.) The Proof of Claim was also signed by Ramon Quiroz. (*See id.*)

11374 (the "Property"). Through submissions made subsequent to the filing of the Claim, the Claimants allege that GMACM wrongfully foreclosed on the Property, obtained an erroneous judgment in a New York State foreclosure action, and caused harm to the Claimants in the process.

This Opinion relates only to Claim number 4413. As explained below, the Claim is barred by res judicata or does not state a claim for relief, and therefore the Objection is **SUSTAINED** and the Claim is hereby **EXPUNGED**.

## I.    BACKGROUND

Pending before the Court is the *ResCap Borrower Claims Trust's Seventieth Omnibus Objection to Claims (Res Judicata Borrower Claims)* (the "Objection," ECF Doc. # 7222). The ResCap Borrower Claims Trust (the "Trust") seeks an order disallowing and expunging certain claims that are barred by the doctrine of res judicata. (*See* Obj. Ex. A.) The Objection is supported by the declaration of Lauren Graham Delehey (the "Delehey Declaration," Obj. Ex. 2) and the declaration of Norman S. Rosenbaum (the "Rosenbaum Declaration," Obj. Ex. 3). The Claimants filed a response to the Objection (the "Response," ECF Doc. # 7371). The Trust filed a reply in support of the Objection (the "Reply," ECF Doc. # 7480). The Reply is supported by the supplemental declaration of Lauren Graham Delehey (the "Supplemental Delehey Declaration," Reply Ex. 1).

### A.    Borrower Claims Objections

On May 14, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code. The General Bar Date for filing proofs of claim was November 16, 2012 at 5:00 p.m. (Prevailing Eastern Time) (ECF Doc. # 2093).

2

On March 21, 2013, the Court entered the Procedures Order (ECF Doc. # 3294), authorizing the Debtors to file omnibus objections to no more than 150 claims at a time, on various grounds, including those set forth in Bankruptcy Rule 3007(d) and those additional grounds set forth in the Procedures Order. The Procedures Order also includes specific protections for Borrowers and sets forth a process for the Debtors (and now the Trust) to follow before objecting to certain categories of Borrower claims. The Borrower Claim Procedures require that before objecting to certain Borrower claims, the Debtors must send the Borrower a letter (a "Request Letter") requesting additional documentation in support of the purported claim. (*See* Procedures Order at 4.)

A Borrower must respond to the Request Letter within 30 days and provide an explanation of the legal and factual reasons why the Borrower is owed money and documentation supporting the basis of its claim. (*See* Obj. ¶ 15.) The Borrower must also indicate whether the basis for and amount of its claim is different in any way from a claim asserted in the Borrower's lawsuit against the Debtors and, to the extent that the Borrower's lawsuit has been dismissed or withdrawn, the Borrower must explain why he or she is still owed money from the Debtors. (*See id.*) On May 20, 2013, the Debtors sent a Request Letter to Quiroz. (*See* Supp. Delehey Decl. ¶ 5.) The Debtors received a response to the Request Letter on June 20, 2013 (the "Diligence Response," Supp. Delehey Decl. Ex. A.)

**B.    The Claimants' Loan and Litigation History**

The Claimants purchased the Property in 2004. (*See* "Report and Recommendation," ECF Doc. # 7480-5 at 4.) In July 2005, the Claimants refinanced the Property with a $522,000 mortgage loan (the "Loan") from Homecomings Financial, LLC ("Homecomings"), which satisfied the Claimants' original financing. (*See id.* at 4–5.)

3

GMACM serviced the Loan beginning on September 20, 2005. (Obj. Ex. A at 1.) The Loan was thereafter securitized and, on or about October 1, 2005, U.S. Bank, N.A. ("U.S. Bank") was appointed as trustee of the securitization trust. (*See id.*) On February 16, 2013, servicing was transferred to Ocwen Loan Servicing, LLC. (*See id.*)

The Claimants allege that the Homecomings loan officer who assisted in the origination of the Loan represented that the Loan would accrue interest at a fixed rate of 5.5% for the first five years of the payment schedule; however, the terms of the agreement underlying the Loan instead set forth that the Loan would accrue interest at an adjustable rate. (*See* Report and Rec. at 5.) The Claimants attempted to rescind the Loan in the fall of 2008 when they were sent notices indicating that the interest rate on the Loan would be adjusted to 7.0%. (*See id.*) Homecomings refused to rescind the Loan agreement, asserting that the Loan documents contained no disclosure errors. (*See id.*) At the beginning of 2009, the interest rate on the Loan was again increased to more than 8.0%. (*See id.*) The Claimants thereafter obtained additional loans totaling $60,000 from Countrywide Financial and Bank of America. (*See id.*)

On October 8, 2007, after the Claimants failed to make required payments on the Loan, U.S. Bank filed a foreclosure action in New York State Supreme Court (the "First State Action") through its counsel, Steven J. Baum, P.C. ("Baum"). (*See id.* at 5.) Service of the summons and complaint in the First State Action was proper; no defendant filed an answer or sought an extension of time to answer. Therefore, U.S. Bank obtained an order of foreclosure and sale (the "Foreclosure Order") in the First State Action by default. (*See id.*) The Claimants appealed the Foreclosure Order, ultimately reaching the New York Court of Appeals, which declined to review the decision below. (*See id.* at 5–6.)

4

Concurrently with their appeal of the First State Action, the Claimants commenced an action against U.S. Bank in New York State Supreme Court (the "Second State Action" and, together with the First State Action, the "State Actions"). (*See id.* at 6.) The Second State Action alleged state law fraud and contract claims as well as claims for violations of the Truth in Lending Act ("TILA") and certain Federal Reserve regulations. (*See id.*) Additionally, the Claimants sought remedies including rescission of the Loan, economic damages, statutory damages, punitive damages and a declaratory judgment to quiet title to the Property in favor of the Claimants. (*See id.*) On July 1, 2009 the New York State Supreme Court dismissed the Second State Action on res judicata grounds, finding that the First State Action constituted a final adjudication of all claims arising from the Loan. (*See id.*)

On or about June 1, 2010, the Claimants filed a complaint in the United States District Court for the Eastern District of New York (the "District Court") against GMAC, Homecomings, U.S. Bank, New Century and Baum (the "Federal Action"). (*See* Supp. Delehey Decl. ¶ 7.) The Claimants alleged (1) violations of their Fifth and Fourteenth Amendment rights of Due Process; (2) fraud related to the defendants' alleged misrepresentations in the State Actions; (3) violations of the Fair Debt Collection Practices Act (the "FDCPA"); (4) TILA violations; (5) fraud related to the assignment of the Loan and Mortgage; and (6) psychological harm and suffering to Ramon Quiroz resulting from the defendants' efforts to enforce the terms of the Loan and Mortgage. (*See* Report and Rec. at 3.) The Debtors filed a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim. (*See id.*) The District Court referred the motions to Magistrate Judge Joan M. Azrack. (*See id.* ¶ 8.) On May 16, 2011, Judge Azrack issued her

5

Report and Recommendation, recommending that the District Court grant the Debtors' motion to dismiss.[2] (*See id.*).

The Claimants filed timely objections to the Report and Recommendation on June 10, 2011. (*See* "District Court Order," ECF Doc. # 7480-6 at 3.) The District Court fully adopted the Report and Recommendation and, on August 5, 2011, dismissed the Federal Action with prejudice (the "Dismissal Order"). (*See id.* at 17.) Specifically, the District Court held that (i) the *Rooker-Feldman* doctrine barred review of the Fifth and Fourteenth Amendment Due Process claims, FDCPA claim and fraud claims; (ii) the TILA claims, predatory lending claims, breach of contract claims, and fraud claims were barred by the doctrine of res judicata; (iii) the Federal Action complaint did not allege sufficient facts to state a plausible RICO claim, and there was no indication that such a claim could be stated; and (iv) it would decline to exercise supplemental jurisdiction over the Claimants' remaining state law fraud and negligence claims. (*See id.* at 17.)

On September 8, 2011, the Claimants appealed the Dismissal Order to the United States Court of Appeals for the Second Circuit (the "Second Circuit"). (*See* Supp. Delehey Decl. ¶ 9.) A Notice of Bankruptcy was filed on the docket for the appeal on May 21, 2012. (*See* Reply ¶ 8.) Subsequently, the Claimants filed a motion for relief from the automatic stay in this Court in order to proceed with their appeal before the Second Circuit, which this Court granted on September 13, 2013 (the "Stay Relief Order," ECF Doc. # 5039). (*See id.*) The Second Circuit dismissed the Claimants' appeal on April 14, 2014 on the basis that "it lack[ed] an arguable basis in law or fact." (*See* "Second Circuit Order," ECF Doc. # 7480-9.) After learning that the Claimants subsequently filed a petition for a *writ of certiorari* with the United States Supreme

---

[2] Judge Azrack also considered whether the Federal Action complaint was intended to allege a private RICO claim; she determined that such claim was not intended to be pled and, in any event, was not adequately pled. (*See* Report and Rec. at 3 n.3.)

6

Court, the Trust sent the Claimants a letter indicating that it considered the filing of the petition to be a violation of the automatic stay. (*See* Supp. Delehey Decl. ¶ 11.)

### C.      The Claim

The Claim asserts a $522,000 unsecured claim against Homecomings and GMAC as well as a priority claim for domestic support obligations in the amount of $72,000 plus interest from October 1, 2005. (*See* Proof of Claim.) The Claimants attach several documents as exhibits to the Proof of Claim, including mortgage statements, notices of interest rate changes on the Loan, statements regarding additional home loans provided to Jessica Quiroz, and Helen Quiroz's death certificate, on which the statement "US Bank – GMAC – Steven J. Baum P.C. caused the death of my wife Helen Quiroz" was written, followed by the signature of Ramon Quiroz. (*See id.*) The Proof of Claim does not include a description of the basis for the asserted unsecured claim or priority claim for domestic support obligations.

### D.      The Objection

The Trust seeks an order disallowing and expunging the Claim, arguing that it is barred by res judicata. (*See* Obj. ¶ 17.) The Trust highlights the fact that the Federal Action was dismissed with prejudice because the claims brought in the Federal Action were barred by the *Rooker-Feldman* doctrine and res judicata. (*See* Obj. Ex. A at 1.) Additionally, the Trust notes that the Second Circuit dismissed the appeal of the Federal Action "because it lacked an arguable basis in law or fact." (*Id.*) According to the Trust, the Claim is based on the same allegations as those raised in the Federal Action complaint since the Proof of Claim's exhibits are identical to those attached to the Federal Action complaint. (*See id.*) Moreover, the Claimants' Diligence Response submitted in response to the Objection references the Second Circuit Order. (*See id.*)

7

### E. The Response and the Reply

The Claimants argue that the Foreclosure Order was entered in error, as they answered the summons and complaint despite allegations to the contrary. (Resp. at 2.) Additionally, they argue that the Foreclosure Order was improper because Helen Quiroz obtained a temporary restraining order enjoining foreclosure on the Property in May 2009. (*See id.*) In their Response, the Claimants allege that the foreclosure proceedings ultimately caused the death of Helen Quiroz. (*Id.*) In support of their Response, the Claimants attach numerous documents, including documents related to the Loan, the various lawsuits, and title to the Property. (*See* Resp. Exs. A–H.)

In its Reply, the Trust asserts that the Claimants have failed to allege a claim against the Debtors, even after reviewing the Claimants' Diligence Response. (Reply ¶ 5.) The Trust reiterates its argument that the Proof of Claim does not include sufficient information to establish a basis for the Claim. (*See id.* ¶ 12.) Moreover, according to the Trust, the Response does not actually address any of the arguments made in the Objection but rather merely "restates the allegations in the [Federal Action complaint], namely that the [d]efendants issued false documents in the foreclosure and that the foreclosure initiated by the Debtors caused the death of his wife." (*Id.* ¶ 14.)

### F. Supplemental Briefing

On September 8, 2014, the Court held a hearing on the Objection (the "Hearing") and instructed the Trust to submit a supplemental brief regarding (1) whether the Claimants have adequately stated a claim for negligence; (2) whether such claim would be barred by res judicata or the *Rooker-Feldman* doctrine; and (3) whether such claim would be barred by the applicable statute of limitations. (*See* Hr'g Tr. 16:9–17:19, Sept. 8, 2014, ECF Doc. # 7557.) The Court

8

gave the Claimants an opportunity to respond to the Trust's forthcoming supplemental brief, and to any arguments raised by the Trust after its initial Objection that the Claimants may not have had adequate opportunity to respond to previously. (*Id.* 17:24–18:5.)

The Trust filed a supplemental brief in support of the Objection (the "Supplemental Brief," ECF Doc. # 7562). The Trust asserts that the Claimants have failed to state a claim for negligence, because the Claimants did not allege any of the required elements to support such a claim. (*Id.* at 8.) The Trust also contends that a negligence claim would be barred by res judicata and the *Rooker-Feldman* doctrine (*id.* at 5), and that, in any event a negligence claim would be barred by the three year statute of limitations (*id.* at 9).

The Claimants filed a supplemental brief in support of the Response (the "Supplemental Response," ECF Doc. # 7579), reasserting various arguments previously made in earlier submissions and allege that the Second Circuit Order affirming the District Court's Dismissal Order is erroneous (*id.* at 4).

## II. DISCUSSION

### A. Claims Objections

Federal Rule of Bankruptcy Procedure 3007 permits a debtor to make omnibus objections to disallow up to 100 claims per motion. Parties making omnibus objections may object to proofs of claim on the following grounds:

1) they duplicate other claims;
2) they have been filed in the wrong case;
3) they have been amended by subsequently filed proofs of claim;
4) they were not timely filed;
5) they have been satisfied or released during the case in accordance with the Code, applicable rules, or a court order;
6) they were presented in a form that does not comply with applicable rules, and the objection states that the objector is unable to determine the validity of the claim because of the noncompliance;

9

> 7) they are interests, rather than claims; or
> 8) they assert priority in an amount that exceeds the maximum amount under § 507 of the Code.

FED. R. BANKR. P. 3007(d). Pursuant to the Procedures Order, the Debtors may object to proofs of claim on the following additional grounds:

> 1) the amount claimed contradicts the Debtors' books and records;
> 2) they were incorrectly classified;
> 3) they seek recovery of amounts for which the Debtors' estates are not liable;
> 4) they do not include sufficient documentation to ascertain the validity of the Claims;
> 5) the y are objectionable under Bankruptcy Code section 502(e)(1);
> 6) they are filed against more than one Debtor entity;
> 7) they have not specified the Debtor against whom the Claim has been filed;
> 8) they do not specify any amount of the claim (other than Claims explicitly asserted as "unliquidated"); and
> 9) they are facially defective.

(Procedures Order at 2–3.)

Rule 3007(e) requires omnibus objections to conform to procedural requirements. Specifically, an omnibus objection must:

> 1) state in a conspicuous space that claimants receiving the objection should locate their names and claims in the objection;
> 2) list claimants alphabetically, provide a cross-reference to claim numbers, and, if appropriate, list claimants by category of claims;
> 3) state the grounds for objection and a cross-reference to the pages in the motion supporting those grounds;
> 4) state in the title the identity of the objector;
> 5) be numbered consecutively with other omnibus objections; and
> 6) contain objections to no more than 100 claims.

FED. R. BANKR. P. 3007(e).

Correctly filed proof of claims "constitute prima facie evidence of the validity and amount of the claim . . . . To overcome this prima facie evidence, an objecting party must come

forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000). By producing "evidence equal in force to the prima facie case," an objector can negate a claim's presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a preponderance of the evidence that under applicable law the claim should be allowed." *Creamer v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, No. 12 Civ. 6074 (RJS), 2013 U.S. Dist. LEXIS 143957, at *12–13 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted). If the objector does not "introduce[] evidence as to the invalidity of the claim or the excessiveness of its amount, the claimant need offer no further proof of the merits of the claim." 4 COLLIER ON BANKRUPTCY ¶ 502.02[3][f] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014).

Section 502(b)(1) of the Bankruptcy Code provides that claims may be disallowed if "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law." *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006).

### B.     Res Judicata

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). The doctrine of res judicata precludes the same parties from litigating claims in a subsequent suit based on the same cause of action if there has been a final judgment on those claims. *Id.* "State court judgments are to be given the same preclusive effect in federal court as they would be given in the courts of the state itself." *West v. Ruff*, 961 F.2d 1064, 1065 (2d Cir.

1992) (citing *Allen v. McCurry*, 449 U.S. 90, 96 (1980)). A party "may not relitigate . . . in a federal forum if New York law would bar him from doing so in a subsequent suit in state court." *Genova v. Town of Southampton*, 776 F.2d 1560, 1561 (2d Cir. 1985).

Res judicata precludes "later litigation if [an] earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007) (citing *In re Teltronics Servs., Inc.*, 762 F.2d 185, 190 (2d Cir. 1985)).

The Claimants have not pointed to any reason that the New York Supreme Court or the District Court was not a court of "competent jurisdiction" to render a judgment. Indeed, the Claimants chose to file the Second State Action and the Federal Action in such courts, respectively. Thus, the Court need only analyze the first, third, and fourth prongs of the aforementioned test.

### 1. *Final Judgment on the Merits*

The Foreclosure Order in the First State Action bars the Claim at issue here. The Claimants unsuccessfully appealed the Foreclosure Order entered in the First State Action. Additionally, the New York Supreme Court has already determined that the First State Action had res judicata effect, barring the Claimants from asserting other claims arising out of the same transaction in the Second State Action. (*See* "State Dismissal Order," ECF Doc. # 7562-4 ("A judgment of foreclosure and sale entered against a defendant is final as to all questions at issue between the parties, and all matters of defense which were or might have been litigated in the foreclosure action are concluded." (quoting *New Horizon Investors, Inc. v. Marine Midland*

12

*Bank, N.A.*, 248 A.D.2d 449 (N.Y. Sup. Ct. 1998))).)  The Claimants do not get to relitigate the same issues a third time.

Contrary to the Trust's assertion, the Dismissal Order entered in the Federal Action does not constitute a final judgment on the merits with respect to the Claimants' Fifth and Fourteenth Amendment Due Process claims, FDCPA claim, and fraud claims, which were dismissed under the *Rooker-Feldman* doctrine.  "The *Rooker Feldman* doctrine recognizes that district courts cannot act as appellate courts for state courts; Congress has reserved appellate jurisdiction over state court judgments exclusively to the Supreme Court." *Bd. Of Managers of 195 Hudson St. Condo. v. Jeffrey M. Brown Assocs., Inc.*, 652 F. Supp. 2d 463, 469 (S.D.N.Y. 2009) (citations omitted).  The *Rooker-Feldman* doctrine is thus jurisdictional in nature and "precludes federal district court jurisdiction where the suit is in fact a collateral attack on a final state court judgment." *Lipin v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 202 F. Supp. 2d 126, 133 (S.D.N.Y. 2002).  Accordingly, a dismissal on the basis of the *Rooker-Feldman* doctrine amounts to a dismissal for lack of subject matter jurisdiction. *See Swiatkowski v. Bank of Am., NT & SA*, 103 F. App'x 431, 431 (2d Cir. 2004) (affirming the district court's dismissal of a complaint on the basis that "under the *Rooker-Feldman* doctrine, the court lacked subject matter jurisdiction").  Thus, the Trust's reliance on the Federal Action for res judicata effect is misguided.  However, as noted above, the State Dismissal Order does constitute a final judgment on the merits, and the Court therefore need not assess the preclusive effect of the federal Dismissal Order.

   2. *Same Parties or Privies*

Jessica Angel Quiroz, a Claimant, was a defendant in the First State Action and a plaintiff in the Second State Action and in the Federal Action.  Accordingly, she was a party in all the

13

earlier proceedings. While the other Claimant, Ramon Quiroz, was not a named party in the First State Action or in the Second State Action, he was in privity with Jessica Angel Quiroz in these earlier actions. "In order to establish privity under New York law, the connection between the parties must be such that the interests of the nonparty can be said to have been represented at the prior proceeding." *Hellman v. Hoenig*, 989 F. Supp. 532, 536 (S.D.N.Y. 1998) (citations and internal quotation marks omitted). "Further, [p]rivity has also been found where a person so controlled the conduct of the prior litigation in which they were interested such that the result is *res judicata* against them." *Id.* (citations and internal quotation marks omitted).

In its Dismissal Order, the District Court adopted Judge Azrack's findings that "'Ramon Quiroz, though not a named party, was in privity with Helen and Jessica [Quiroz]' because his 'interests in both prior actions were identical to those of his wife and daughter' and he was 'intimately involved with the prior state court proceedings.'" (Dismissal Order at 11.) Indeed, the documentation attached to the Claimants' Response indicates that Ramon Quiroz, along with Helen and Jessica Quiroz, held title to the Property by deed dated June 23, 2004. (Resp. Ex. H.) As a titleholder to the Property, his interests in defending against foreclosure in the First State Action—and asserting any counterclaims—were aligned with those of his family and can be said to have been represented in the earlier state court actions.

### 3. *Identity of Causes of Action*

New York law bars the relitigation of "not only matters actually litigated in the preceding action but also any matters that could have been litigated in that action." *West*, 961 F.2d at 1065 (citing *Reilly v. Reed*, 45 N.Y.2d 24 (1978)). Pursuant to New York's "transactional approach" to res judicata determinations, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon

different theories or if seeking a different remedy." *Hameed v. Aldana*, 296 F. App'x 154, 155 (2d Cir. 2008) (citing *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357 (1981)); *see also West*, 961 F.2d at 1065 ("Whether a claim is one that could have been litigated in the prior action depends upon whether it emerged from the *same nucleus of facts* as that of any claim asserted in the prior action." (emphasis added) (citing *Smith v. Russell Sage Coll.*, 54 N.Y.2d 185, 192–93 (1981))).

All of the causes of action underlying the Claim relate to actions taken with respect to the Loan or the Property, and therefore the Claim is based upon the same nucleus of facts that were or could have been alleged in the First State Action. To the extent the Claim newly alleges emotional distress suffered by the late Helen Quiroz and a claim for wrongful death, such allegations are based on the same nucleus of operative facts underlying the claims brought in the First State Action (i.e., the origination of the Loan and the commencement of foreclosure proceedings) and therefore such claims could have—and should have—been brought in the First State Action.

The Claims are therefore barred by res judicata. The Claims were finally adjudicated on the merits by competent courts in prior actions, the Claimants were parties to, or in privity with parties to, such earlier actions, and the Claims involve the same causes of action that could have been brought in such earlier actions.

### C.    Failure to State a Claim

Even if the Claimants' negligence and fraud claims are not subject to res judicata, these claims are not adequately pleaded to state a claim for relief against the Debtors and therefore cannot proceed. The Trust adequately responded to the negligence claim by demonstrating the Claimants' failure to substantiate the negligence elements, and the Claimants have not made any

15

submissions refuting the Trust's arguments.  Moreover, the fraud claim appears to be asserted against Baum, not the Debtors, and therefore also fails to state a claim against the Debtors.

### III.    CONCLUSION

For all of the foregoing reasons, the Trust's Objection is **SUSTAINED**.  Claim No. 4413 is hereby **DISALLOWED** and **EXPUNGED**.

**IT IS SO ORDERED.**

Dated:  October 29, 2014
         New York, New York

*Martin Glenn*
MARTIN GLENN
United States Bankruptcy Judge