## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

Brian Herbert Wilson, Esq. No. 37237 Colorado
Wilson Law Office P.C.
43 Bulldogger Ct. Bailey, CO 80421
*As - Creditor Representative*

Creditor:
Ken Dlin

|  |  |
|---|---|
| In Re: | ) |
|  | ) |
| Residential Capital, LLC. Et al., | ) |
|  | ) |
| Debtors, | ) |

Case No. 1̶2̶-̶1̶2̶-̶2̶-̶ (M̶G̶)

Chapter 11

Jointly Administered

*(handwritten: 2011 CV2611 / 12-12020 MG)*

---

## CREDITOR'S OBJECTION TO SEVENTY FIFTH OMNIBUS OBJECTIONS TO CLAIMS AS TO KENNETH DLIN V. GMAC MORTGAGE LLC

---

### PARTIES

1.  Creditor Ken Dlin, is a citizen of Colorado who can be contacted through the Creditor Representative Wilson Law Office at 43 Bulldogger Ct. Bailey, CO 80421

2.  Defendant, GMACM.

### JURISDICTION

3.  Debtors filed for bankruptcy protection with United States Bankruptcy Court and Creditor Ken Dlin filed a proof of claim through his representative with the United States Bankruptcy Court on the 8th of November 2012.

## GENERAL STATEMENT OF ALLEGATIONS OF BREACH, FRAUD AND

## COUNTER CLAIMS

The claimant Mr. Ken Dlin, by and through his representative, filed a proof of claim on the basis of a wrongful foreclosure on the subject property located in Jefferson County Colorado. The Proof of Claim was timely and constituted a prima facie evidence that GMACM was responsible to the Creditor for economic harm. GMACM objects to the claim on the basis that they are not liable for the injury. However, the Creditor Dlin argues that the claims arise in both Contract and Tort. The Torts committed are the primary reason for the economic injury. The Creditor asks the Court to consider the fact that Mr. Dlin was stripped of his right to have his day in Court. Accordingly, Creditor Dlin states as follows in support of his claim.

### COUNT 1- Deceptive Trade Practice and Fraudulent Conduct:

4.      Creditor Dlin contacted GMACM in September of 2008 to inquire into a loan modification. (See Affidavit, Exhibit 1 attached to this objection). Creditor was told by the agent with GMACM that he was current on this loan payment and that nothing could be done to help him. Creditor contacted GMACM one month later to inquire into the possibility of a loan modification. On the second inquiry, the agent with GMACM explained that he was current on his mortgage payments and that nothing could be done to help him.

5.      Creditor Dlin inquired as to a loan modification in November of 2008, the loan agent with GMACM specifically instructed Mr. Dlin to go into default to qualify for a loan modification. (See Exhibit 1 ¶ 1).

6. Creditor Dlin stopped making payments under the direction of the GMACM specialist and was in default beginning the month of December through the month of March 2009.He was then told by the GMACM specialist that he needed to be in default for 3 months before they could offer the loan modification.

7. Creditor Dlin contacted the loan modification department in March of 2009 to inquire into a loan modification.

8. In March of 2009, GMACM offered a loan modification to Creditor Dlin. That loan modification actually increased the monthly payment. (See Exhibit 1 ¶ 2). Upon receiving the loan modification, Mr. Dlin started paying the increased monthly payments hoping that GMACM would find and correct the error causing the increased premium.

9. On July 28th 2010, GMAC foreclosed on the subject property located at 3431 Welch Ave. Kittredge CO. This in spite of repeated assurances from representatives of GMAC that if the Creditor Dlin was in default, a loan modification would be offered to help the beleaguered borrower and help him keep his home, the opposite occurred. .

10. It should be noted, that GMACM attempted to have Mr. Dlin removed from the home by way of a forcible entry and detainer action filed in Jefferson County Court. On the 17th of April 2011, Mr. Dlin filed a counter suit for wrongful foreclose and other counts for relief in Jefferson County, Colorado. (The pleading is a part of the Court file).

11. Trial preparations began including discovery procedures by both parties. (See Exhibit 3 Dlin Interrogatories). A trial was scheduled in the matter in April of 2012, however, negotiations were under way to settle the matter and respective counsels chose to vacate the hearing date to further negotiate.

12.   Without revealing details in violation of confidentiality and under FRCP 408, it was
      believed that a settlement had been reached in the matter on all issues and the case would
      have been settled.

13.   On or about the 14th of May 2012, GMACM (Ally Bank) filed for federal bankruptcy
      protection, putting a stay on any state court actions against the bank.

      The Creditor Dlin was as a Counter- Plaintiff in state Court would have been able to have
      his claim adjudicated and at the very least had his claims given justice.  Instead, due to
      the protection of the Federal Court, Mr. Dlin, has been stripped of the right to seek a
      redress of his grievance Wherefore, the Creditor Dlin, seeks the enforcement of claim
      under the theory stated above and ask that he be given the right to have a hearing
      conducted on the matter before this honorable Court.

### COUNT 2 Wrongful Foreclosure:

14.   Creditor Dlin contends that GMACM had defective foreclosure proceedings that were
      based on a series of deceptions perpetrated by the now defunct GMACM. This allegation
      was never tried in Court because this Honorable Court placed a stay on any proceedings
      related to GMACM, however, Mr. Dlin believes that he should have that opportunity,
      since he believes the long list of abuses by GMACM is both well documented and part of
      the reason for the parent company to GMACM seeking bankruptcy protection.  Creditor
      Dlin incorporates the above paragraphs and factual allegations into this count.

15.   Creditor Mr. Dlin was injured by the wrongful foreclosure in several ways.  First, Mr.
      Dlin was foreclosed on wrongfully based on the promises of GMACM stripping him of

the rightful ownership of the real property in question. Mr. Dlin would never have been late or behind if those promises were not made to him by GMACM with a reasonable expectation of being truthful. If should be noted that prior to the prompting of the GMACM representative to become delinquent, Mr. Dlin had been an excellent payer with a perfect track record of paying the Mortgage on time. (See Exhibit 4, letter to GMAC regarding hardship). Mr. Dlin relied upon the promises of GMACM, and those promises turned out to be false, and the basis of the foreclosure.

16.     Second, due to the "coercions" on the part of the GMACM specialists, the refinance was in fact greater than the original payment. Due directly to the promises of the GMACM specialist, Mr. Dlin was placed into a position where he could not afford the loan work out payment.

17.     Third, Mr. Dlin had a second mortgage with the  mortgage holder Greentree. The Second mortgage sued Mr. Dlin and won a judgment against him in the amount of over 300,000.00 (Three hundred thousand dollars). Mr. Dlin has suffered thousands of dollars of collection actions, court costs and garnishments due to the fraudulent foreclosure by GMACM.

18.     Fourth, Creditor Dlin has also spent thousands of dollars and hundreds of hours prosecuting the case against GMACM both in Federal Court and in the State Court in Jefferson County, CO.

19.     Together, the actions by GMACM first to suggest that a borrower should be in default to improve their position, and the subsequent foreclosure can only be outdone by the failure on the part of GMACM to act upon their final set of promises, to accept a short sale offer.

## COUNT 3- Failure to Act on Short Sale

20.   Creditor Dlin had to do something to protect his position with the house. Since the
foreclosure was going forward, he contacted a short sale specialist in the Evergreen
Colorado area to list the house and sell it if possible. (See Exh. 1 ¶ 3).

21.   Mr. Dlin used a well-respected short sale firm that specialized in the practice of selling
distressed properties. In those discussions, GMACM explained that a short sale was not
accepted. In fact, during the next 7 months following the default by Mr. Dlin, not a
single offer was accepted. (Id at 3).

22.   Prior to the final foreclosure, the specialist with Short sale contacted GMACM on behalf
of Mr. Dlin to inquire as to the amount that GMACM would accept for a short sale. (Id
at ¶ 4). Weeks prior to the foreclosure, a short sale package was sent to GMACM for
processing. In fact the foreclosure was held up in order to help this along. (Id at ¶ 4).

23.   GMACM knowing that a short sale offer was tendered and in process never the less
foreclosed on the subject property.


### CLOSING

GMACM sought bankruptcy protection because of a number of financial issues including
mismanagement of the company. It is a well-established fact that GMACM settled with almost
every state in the Union regarding bad foreclosure practices. The settlement with the states is an
indication of the very same practices that Mr. Dlin was subjected to in this matter. GMACM
was prepared to settle, but the bankruptcy intervened. Mr. Dlin's injury has been left as an open

sore in the system and if his claim is denied, will create a windfall to the Debtor that the law

could not justify based on the facts.

**Wherefore,** The Plaintiffs Prays, this honorable court consider the evidence, the conduct of the

Debtor and the lack of justice that was afforded to the Creditor Dlin, and find the claim to be

valid and deny the objection by the Creditor, plus any other remedy this Court deems just and

fair given the circumstances.


Dated at Park County, Colorado, this 16th day of October 2014.

Wilson Law Office P.C.

/s/ Brian Herbert Wilson Jr.  *_____

Brian Herbert Wilson, Jr., Reg. Number 37237 (State of Colorado)

43 Bulldogger Ct.

Bailey, CO 80421

303-816-9493

bwilson@brianherbertwilson.com


For the Creditor :

*If Filed Electronically, a printed copy of this document bearing the original signatures is being
kept by the filing party and will be made available for inspection by the other parties or the
Court upon request.*


**Exhibits and supporting documents:**

Ex. 1, Affidavit by Ken Dlin

Ex. 2, District Court Jefferson County CO, Initial Pleading

Ex. 3, Dlin Interrogatory Responses District Court, Jefferson County CO

Ex. 4, Hardship letter to GMAC from Creditor Dlin

CERTIFICATE OF SERVICE United States Mail

I certify that on October the 15th 2014, I sent a copy of the aforementioned Creditors Objection to Debtors Objection to Claim by US Mail to the United States Bankruptcy Court, Debtor's Attorney, and Counsels listed below, plus, sent it electronically to the following email addresses through the ECF System if applicable:

Honorable Martin Glenn
United States Bankruptcy Court for the Southern District of NEW YORK
Alexander Hamilton Customs House, One Bowling Green
New York, NY 10004-1408

ResCap Borrower Claims Trust,Morrison Forester LLP
250 West 55th St
New York, NY  10019

U.S. Trustee for the Southern District of NY
US Federal Office Building
201 Varick Street Suite 1006
New York NY 10014
(Attention Linda A. Riffkin and Brian S. Masumoto)

ResCap Borrower Claims Trust
Polsinelli PC
900 Third Ave, 21st Floor
New York, NY 10022
(Attention Daniel J Flanigan)

I also certify that there are no participants not on ECF to which service of process is required.

/s/ Brian Herbert Wilson Jr.  *

From the desk of Kenneth Dlin

3431 Welch Ave

Kittredge, Colorado  80457

303 679-1448


Memo to:  GMAC

RE:  Income and past hardship

Date: 3-23-12


To whom it may concern,

For the past 15 years I have been self employed as a General Contractor doing business primarily in the
Denver Metro Area performing both Commercial and Residential building and remodeling. We built our
house and were in the final stages when the attack of Sept. 11th happened. Needless to say, our
industry is among the hardest hit as a result of the downturn in the economy. My previous payment
history was always excellent. Prior to our request for a loan modification, I had never missed a loan
payment even though we had a couple of difficult years. As a result, I had significantly depleted most all
my savings trying to keep current on all our payments, thus the request to modify our loan in an effort
to continue making payments on our home which we so love and cherish, even though its value has
dropped far below what it cost me to build it myself. Although business hasn't returned to the levels
they were before the economic downturn, my business continues to rebound. I earn enough money to
pay for a mortgage. I have continued to be gainfully employed, have receivables, and can afford to make
payments that are fair and reasonable. We have been told that it is the banks goal to keep us in our
house as it is in everyone's best interest. We hope that you will please consider giving us a loan workout
that will allow us to keep our home and return to the wonderful business partnership that we shared in
the past with GMAC.

Sincerely,

Kenneth Dlin

## AFFIDAVIT

County:   Jefferson County

In the State of Colorado, County of Jefferson,

I Kenneth Dlin, being duly sworn, deposes and says that I began calling GMAC Mortgage regarding a loan modification or possible loan work out in the month of September 2008 as I was having a difficult time making my loan payments. I was told by the GMAC specialist that I was current on my loan payment and to call back the following month. I called GMAC back the following month as advised, and was again told that I was current on my mortgage payments and that I should call back the following month. When I called back the month of November, the GMAC specialist explained to me, that since I was not behind on my mortgage, they would not be in a position to offer any sort of a loan work out. I was specifically told, "I must be in default before any loan modification could be offered".

Based on the advice of the loan specialist with GMAC I stopped making payments on the loan. Indeed, after 3 months of being in default, March 20, 2009 GMAC offered me a loan modification to help ease the burden of the high interest and payments. The loan modification was simply not credible. In fact, the loan modification made the payment go up. The help that was promised was in fact the opposite. The loan went into an area that was impossible to make. Based on the new "improved" loan, I had no choice but to sell the house, so I listed the home for sale.

I contacted Intero Real Estate Services in Evergreen Colorado to help sell the house. My agent, Norma Loyd was contracted to list and hopefully sell the house. During the next 7 months, several offers of short sale were tendered to GMAC, however none were accepted. On the 7th month, I was given notice of foreclosure by GMAC. Disgruntled and dismayed at the lack of response by GMAC, Ms. Loyd contacted GMAC short sale department for information as to why GMAC had declined so many offers, when the industry had typically accepted offers of this nature.

Ms. Loyd in talking with GMAC Short sales, was told that the investor "Underwriter" was not willing to accept a short sale. No other explanation was offered as to who had the note or the authority to accept a short sale. Ms. Loyd was told however, that if the offer was $505,000 or better it would be accepted. Just before the foreclosure, offers of both $505,000 and $525, 000 were tendered to GMAC financing. Both of the offers were above the threshold spoken of and would have met the requirements of the underwriter. The foreclosure sale date was extended, however, the Short sale offers were still pending. Short Sale with GMAC promised that the foreclosure would not occur since a short sale was pending, but the Foreclosure did occur and GMAC purchased the home at the Foreclosure sale for $487,000. Even though offers were tendered well above the amount of the foreclosure sale, GMAC failed to follow through with their promises.

GMAC was irresponsible and fraudulent in regards to their promises. First, GMAC explained that a loan work out was possible and that if I was in default, they would be able to help me. In fact, the loan amount increased making payments impossible. GMAC lied to me and told me that loan modifications were both possible and in my case guaranteed but I needed to be in default. Once in default, they worked to foreclose and rejected offers to sell the property. Even

when presented with bona fide offers well above the foreclosure price, GMAC failed to act. Since GMAC told me that I had nothing to worry about, I did not have time to fight the foreclosure and believed that GMAC would hold good on their promise not to foreclose and allow the short sale to proceed.

The fallout from the foreclosure not only took away any equity that might have been in the home, it also forced the second mortgage to seek a remedy against me in court. The second mortgage holder sued me for the entire amount of the second mortgage and won a decision for that full amount.

I have full and official knowledge of all and every detail regarding the property and real estate state these facts under oath, knowingly, voluntarily and intelligently.

In witness whereof he has hereto set his hand and seal.

(SEAL )

Kenneth Dlin
10-15-14

I, _Martha E. Vargas_, a Notary Public of the County and State aforesaid, hereby certify that _Kenneth H. Dlin_ personally known to me to be the affiant in the foregoing affidavit, personally appeared before me this day and having been by me duly sworn deposes, and acknowledged by saying that the facts set forth in the above affidavit are true and correct.
Witness my hand and official seal this the _15th_ day of _October_, _2014_.

Notary Public

| District Court<br>Jefferson County Court , Jefferson County, Colorado<br>Court Address: 100 Jefferson County Parkway<br>Golden, Colorado 80401-6002<br><br>303-271-6215 | |
| --- | --- |
| **Plaintiff(s):**<br>**GMAC MORTGAGE, LLC**<br><br>**v**<br><br>**Defendant(s):**<br>**KENNETH DLIN, and any and all other**<br>**occupants**<br>**claiming an interest under the defendants** | COURT USE ONLY |
| Brian H. Wilson, Attorney for Defendant<br>43 Bulldogger Court<br>Bailey, CO 80421<br>Phone: 303.816.9493    Fax: 303.838.8054<br>BWilson@law.du.edu | Case Number: 2011 CV 2611<br><br>Division: 11    Courtroom: |

## DEFENDANT KEK DLIN'S RESPONSE TO PLAINTIFF'S PATTERN AND NON-PATTERN INTERROGATORIES

Comes now the Defendant Ken Dlin, by and through his attorney, Brian H. Wilson, and files this Response and states in bold as follows:

### I. GENERAL INSTRUCTIONS
(a) These are general instructions. For time limitations, requirements for service on other parties, and other details, see C.R.C.P. 16(b)(1)(IV), 26, 33, 121 Sec. 1-12, and the cases construing those rules.
(b) These interrogatories do not change existing law relating to interrogatories nor do they affect an answering party's right to assert any privilege or objection.
### II. INSTRUCTIONS TO THE ANSWERING PARTY
(a) An answer or other appropriate response must be given to each interrogatory checked by the asking party.
(b) As a general rule, within 30 days after you are served with these interrogatories, you must serve your responses on the asking party and serve copies of your responses on all other parties to the action who have appeared. See C.R.C.P. 33 for details.
(c) Each answer must be as complete and straightforward as the information reasonably available to you permits. If an interrogatory cannot be answered completely, answer it to the extent possible.
(d) If you do not have enough personal knowledge to fully answer an interrogatory, say

1

so, but make a reasonable and good faith effort to get the information by asking other persons or organizations, unless the information is equally available to the asking party.
(e) Whenever an interrogatory may be answered by referring to a document, the document may be attached as an exhibit to the response and referred to in the response. If the document has more than one page, refer to the page and section where the answer to the interrogatory can be found.
(f) Whenever an address and telephone number for the same person are requested in more than one interrogatory, you are required to furnish them in answering only the first interrogatory asking for that information.
(g) Your answers to these interrogatories must be verified, dated, and signed. You may wish to use the following form at the end of your answers: "I declare under penalty of perjury under the laws of the State of Colorado, that the foregoing answers are true and correct."

(DATE) 9 December 2011 (SIGNATURE) /s/ Ken Dlin   (Original on File)

## IV. PATTERN INTERROGATORIES

1.1 State the name, address, telephone number, and relationship to you of each PERSON who prepared or assisted in the preparation of the responses to these interrogatories. (Do not identify anyone who typed or reproduced the responses).

**ANSWER**- I was helped by the Law Office of Brian Herbert Wilson Jr., my legal counsel in the preparation of these answers and responses.

1.2. Is YOUR response to each request for admission served with these interrogatories an unqualified admission? If no, for each response that is not an unqualified admission:

(a) State the number of the request;
(b) State all facts upon which YOU base YOUR response;
(c) State the names, addresses, and telephone numbers of all PERSONS who have knowledge of those facts;
(d) IDENTIFY all DOCUMENTS and other tangible things that support your response and state the name, address, and telephone number of the PERSON who has each DOCUMENT or thing.

## V. NON-PATTERN INTERROGATORIES

1. IDENTIFY the facts which form the basis for the assertions in paragraphs 10, 11, 13, 14, and 28 of YOUR Answer to Complaint that appear to imply that GMAC Mortgage, LLC was not the owner of the Note at the time of the Foreclosure.

**ANSWER-**
The Defendant relies upon information he gathered while researching the Mortgage Backed Securities issue and other bank related legal actions against lending practices.

2

The Defendant has engaged legal counsel to educate him regarding all the issues surrounding lender liability lawsuits. This research was found on many internet sites including; http://www.subprimeshakeout.com/

2. IDENTIFY the facts which form the basis for the assertion in paragraph 18 of YOUR Answer to Complaint that "any purported ownership is based on deceptive conduct of the Plaintiffs."

**ANSWER**- Qualified Answer, the Defendant does not have enough information to give specific acts or conduct other than the Mortgage Backed Security issue stated in the answer above. The Defendant has not been given any proof of a mortgage loan purchase agreement between any previous note or loan holders and the Plaintiff GMAC.

3. IDENTIFY the facts which form the basis for the assertion in paragraph 29 of YOUR Answer to Complaint that "Plaintiffs seek to enforce under fraud, including fraudulent misrepresentation that the Bank is the party under contract with the Defendant."

**ANSWER**- Based on the documents that have been disclosed to the Defendant, he cannot find any document that clearly convey to GMAC the right to foreclose.

4. IDENTIFY the facts which form the basis for the assertion in paragraph 14 of YOUR Counterclaims that "Plaintiff GMAC accelerated the loan making it due and payable in breach of the agreement between the Plaintiffs and Counterclaimant."

**ANSWER**- There are several facts, first, representatives from the bank had made representations that I would be given a loan work out and that the loan would not become due in full. The second fact, is that I had a short sale offer on the table that exceeded the minimum acceptable short sale figure and the bank rejected this offer based upon a valid contract, then proceeded to accelerate the loan making it fully due and payable. It should be noted that the bank has purported to purchase their own alleged note for less than the amount that was offered under the terms of the short sale contract.

5. IDENTIFY the facts which form the basis for the assertion in paragraph 16 of YOUR Counterclaims that "the Plaintiff GMAC both failed to fulfill their expressed agreement under contract by accelerating the loan making it due and payable and failed to mitigate any harm that occurred to the Counterclaimant/Defendant Mr. Dlin."

**ANSWER**-As stated above in answer number 4, the bank first had made promises regarding a loan work out that would help me continue to make the mortgage payments, but failed to follow through on their promises in making the payments affordable. The loan modification that was put in place was far in excess of the original loan agreement with GreenPoint. Then, in an effort to avoid a foreclosure, we had put the home on the market for sale and a purchaser offered an amount that was in excess of the amount acceptable to the bank as a pay-off. Then at the last minute, the bank refused to accept a

3

bona fide contract for purchase based on the short sale, causing the Defendant to suffer a
loss.

6. IDENTIFY the facts which form the basis for the assertion in paragraph
25 of YOUR Counterclaims that "the Counterclaimant completed the required tasks
regarding the contract...." specifically including facts evidencing payments made related
to the debt owed.

**ANSWER**-Pertaining to the loan modification, the Defendant was told to provide certain
documents, applications, records, and other data to the bank for the loan modification
process.  I did provide each of those requested documents on a timely basis.  The bank
failed to follow through with their promises.  Second, I was told by the bank that they
would consider a short sale of the property, in several documents provided to me by the
bank.  The short sale required a purchaser to make an offer.  The offer was provided to
the bank.  The offer was above the stated amount that the bank would accept as a short
sale offer; however the bank rejected the offer and pursued this action.  It should be noted
that we also had a backup offer above and beyond the first offer to purchase.

7. IDENTIFY the facts which form the basis for the assertion in paragraph
26 of YOUR Counterclaims that "the Plaintiff collectively interfered with the
performance of the Counterclaimant by either failing to follow through or ignoring Mr.
Dlin even upon repeated requests for the Plaintiffs to fulfill their obligations."

**ANSWER**- As stated in the answer above in question 6, I repeat the answer.

8. IDENTIFY the facts which form the basis for the assertion in paragraph
41 of YOUR Counterclaims that "the Plaintiffs breached the fiduciary duty owed to the
Counterclaimant Dlin by using failing to fulfill the duties of the Bank under the fiduciary
responsibilities as understood in business practice."

**ANSWER**-The bank was not honest with me.  The representatives of the bank stated that
they would either give me a better position in a loan modification or by accepting a short
sale.  The bank has a duty under their fiduciary responsibilities to be honest with the
facts, I trusted the bank to be honest and they were not.  They bank also told me that I had
to be in "default" before they would work with me or consider any sort of loan
modification or a short sale.  The business practice of the bank is outside of the normal
business practice expected by the public of a bank.

9. IDENTIFY the facts which form the basis for the assertion in paragraph
48 of YOUR Counterclaims that "the Plaintiffs gave false information to the
Counterclaimant on several occasions and were not honest in dealing with the facts on the
whole. This includes the fact that the mortgage became part of a securitized mortgage."

**ANSWER**-Please see answer for question 1 and question 8. I repeat the answers to those
again here.

4

10. IDENTIFY the facts which form the basis for the assertion in paragraph
59 of YOUR Counterclaims that "the Plaintiff(s) engaged either directly or caused
another to engage in a deceptive trade practice that caused the Counterclaimant to
become injured."

**ANSWER**- The bank used false statements as I have stated above. The banks were not
honest with the facts to me and were deceptive in creating a false hope that by going into
default in order for them to consider my need for a loan work out or for a short sale. The
bank did not give me an affordable loan work out or accept a short sale as promised.

11. IDENTIFY the facts which form the basis for the assertion in paragraph
64 of YOUR Counterclaims that "the Plaintiff and the Third Party Defendant specifically
used deceptive practices in suggesting that a loan work out could be given to the
Counterclaimant if he were in default on their loan."

**ANSWER**- The Defendant repeats the answers above.

12. IDENTIFY the facts which form the basis for the assertion in paragraph
70 of YOUR Counterclaims that "the Plaintiff(s) engaged either directly or caused
another to engage in a deceptive trade practice that caused Counterclaimant to become
injured."

**ANSWER**- The Defendant repeats the answers above. In particular see answers to
numbers 1, 8, 10. It should be noted that the Defendant is unsure who has the ownership
of the note or the securitized interest if any.

13. IDENTIFY the facts which form the basis for the assertion in paragraph
75 of YOUR Counterclaims that "the Counterclaimant Dlin was specifically injured by
the Plaintiff and the Third Party Defendant by predatory and dishonest lending practices
that included the use of Mortgage Backed Securities wherein, their mortgage was
bundled into a securitized and traded stock market commodity. As such, the promissory
note was stripped from the Deed of Trust and the Counterclaimant could not have a fair
and unbiased process in getting a loan workout potential."

**ANSWER**- The Defendant has no idea who the owner of the note is. The Plaintiff has
alleged that they have shown the Defendant a copy of the original note, but the Plaintiff
has never produced a mortgage loan purchase agreement. The original lender, in theory
sold the note either into a mortgage backed security or on the secondary lending market.
Either way, the underwriter was not willing to or not capable of doing a loan workout and
GMAC knew or should have known this before making a loan workout offer.

14. IDENTIFY the facts which form the basis for the assertion in paragraph
81 of YOUR Counterclaims that "the Plaintiff(s) engaged in either directly or caused
another to engage in a deceptive trade practice that was protected under statute."

5

**ANSWER**-The bank used untruth to provoke me into going into default. These are deceptive trade practices that are not allowed in the state of Colorado. A bank cannot use lies to improve their position at the expense of a customer.

15. IDENTIFY the facts which form the basis for the assertion in paragraph 88 of YOUR Counterclaims that "the Plaintiffs and Third Party Defendants collectively agreed either by action or by conduct to accomplish an unlawful goal."

**ANSWER**- The Defendant believes that the scheme to explain to the Defendant that he would be given favorable treatment if he was in default, was a directive given to the representatives by the bank. The banks furthermore agreed in conduct with their underwriter that there would not be an acceptance of the short sale agreement. The real estate agent, Norma Loyd, was the real estate agent who was told by the bank that the underwriter was not going to accept the offer. Norma can be contacted at the following: Intero Real Estate Services
29029 Upper Bear Creek Road
   Evergreen, CO 80439
   (303) 679-4112 Office
   (720) 217-4651 Mobile
   (303) 670-8166 Fax

16. IDENTIFY the facts which form the basis for the assertion in paragraph 90 of YOUR Counterclaims that "the Plaintiffs GMAC and Third Party Defendants, either directly or indirectly agreed or in conduct made false representations of a past or present fact, that in particular GMAC financing was a successor party in interest, however the securitized interest had been bundled into a larger security, not a 'Trust'."

**ANSWER**-I do not have the physical evidence to prove this statement at this time, and will amend my answer as discovery becomes available.

17. IDENTIFY the facts which form the basis for the assertion in paragraph 92 of YOUR Counterclaims that "at the time the assertion was made to the court and to the county, the Plaintiff knew that the representation was false even though the practice was used throughout the industry."

**ANSWER**- It is my understanding that if the property was subject to a Mortgage Backed Security, that the note and the Deed have been separated. This is a common practice in the industry.

18. IDENTIFY the facts which form the basis for the assertion in paragraph 101 of YOUR Counterclaims that "subsequently, the Plaintiffs GMAC through agents of the Bank sought to interfere with the original contact by both intentionally seeking the Counterclaimant not to perform under the terms of the agreement."

**ANSWER**- As said above in many paragraphs, including number 8 and 10, the bank told me to go into default and that if I did, I would be helped with a loan work out.

19. IDENTIFY the facts which form the basis for the assertion in paragraph
107 of YOUR Counterclaims that "Plaintiffs engaged in negligent conduct or a willful
violation of a statutory standard pursuant to statute."

**ANSWER**- As stated above the number 14, the bank used deceptive trade practices that
are in violation of Colorado statutes.

20. IDENTIFY the facts which form the basis for the assertion in paragraph
121 of YOUR Counterclaims that "the Plaintiffs collectively interfered with the truth by
failing to disclose the true holder of the note to the court."

**ANSWER**- The practice in the industry is to move or transfer properties into Mortgage
Backed Securities or to sell the note on the secondary lending market. When this occurs
the transaction should be supported by Mortgage Loan Purchase Agreement. Disclosure
of this agreement, in a "wet ink" form has never been disclosed to the Defendant or to the
court based upon the best knowledge of the Defendant.

VI. REQUESTS FOR PRODUCTION
1. Produce all documents or other tangible items YOU IDENTIFY in any
response.

2. Produce any and all documents which refer or relate to any of your
responses in the preceding interrogatories.

VII. REQUESTS FOR ADMISSIONS

1. Admit that on February 20, 2004, YOU executed the NOTE that obligated
you to pay an original principal sum of six hundred thirty-three thousand dollars
($633,000.00).

**ANSWER**- Yes, I borrowed money from, GreenPoint Mortgage that was secured by the
interest in my home located 3431 Welch Ave. It should be noted that I did not borrow
money from GMAC Mortgage LLC.

2. Admit that the NOTE and rights thereunder were subsequently transferred
to GMAC Mortgage, LLC.

**ANSWER**- I have no knowledge of this fact, and therefore I deny the same.

3. Admit that YOU executed the DEED OF TRUST securing the NOTE on
or about February 20, 2004 subsequently recorded on March 1, 2004 in Jefferson County,
Colorado at Reception No. F1973637.

**ANSWER**- Yes, I admit that I did sign a deed of trust to GreenPoint Mortgage.

7

4. Admit that the NOTE and DEED OF TRUST provide that if there is a
default in payment pursuant to its terms, the full amount of the unpaid principal plus
interest owing on such principal may become due and payable immediately at the option
of the holder of the Note.

**ANSWER**- I have been told this by the Bank, however, I have not read this in the Deed
of Trust and can only assume that this clause exists.

5. Admit that YOU defaulted under the terms of the NOTE and DEED OF
TRUST by failing to make the required monthly payments.

**ANSWER**- Admit in Part and Deny in Part, I was encouraged to default by the bank and
told that if I went into default, I would be treated more fairly with a loan modification, in
fact, the bank informed me that regarding a loan modification, I could not even fill out an
application for loan modification unless I was in default.

6. Admit that after YOU defaulted under the terms of the NOTE and DEED
OF TRUST, GMAC Mortgage, LLC initiated a foreclosure action through the Jefferson
County Public Trustee. The foreclosure action was designated as Jefferson County
Public Trustee Foreclosure Sale No. J1000226.

**ANSWER**- I admit that quite some time after the loan was in technical default, that the
bank used the legal system to pursue a foreclosure in Jefferson County.

7. Admit that Jefferson County Public Trustee Sale No. J1000226 was held
at 10:00 a.m. on July 28, 2010, and that GMAC Mortgage, LLC was the successful
bidder at the foreclosure sale.

**ANSWER**- Admit, that over my objection, the Court authorized a sale by public trustee.

8. Admit that a Public Trustee's CERTIFICATE OF PURCHASE was issued
to GMAC Mortgage, LLC on July 28, 2010 following Jefferson County Public Trustee
Sale No. J1000226.

**ANSWER**-Deny, I do not have personal knowledge of this fact and cannot admit to its
truth.

9. Admit that GMAC Mortgage, LLC is and, at the time of the foreclosure,
was the holder of the NOTE.

**ANSWER**- Deny, I do not have personal knowledge of this fact and or cannot determine
who the current holder in due course of the note actually is.

10. Admit that GMAC Mortgage, LLC has presented the original NOTE for
your inspection and that counsel for GMAC Mortgage, LLC has the original NOTE in its
possession.

**ANSWER**- Deny, I have not seen this original note.

11. Admit that GMAC Mortgage, LLC is the current owner of the
PROPERTY reflected by the Confirmation Deed issued to it and recorded in the real
property records of Jefferson County on August 27, 2010.

**ANSWER**- Deny, I believe that the bank, is wrongfully in possession of the confirmation
deed and is the subject of this action.

Respectfully Submitted this 9th December 2011.

/s/ Brian Herbert Wilson Jr.
Brian Herbert Wilson, Jr. , Attorney for Plaintiff

_____                    _____
    Brian Herbert Wilson, Jr.                              Date

The Law Office of Brian Herbert Wilson, Jr.

*Duly Signed Copy of this pleading is on file with the Office of Brian Herbert Wilson, Jr.  *.*

*\* In accordance with C.R.C.P 121 § 1-26(7), A printed copy of this document bearing the original signatures is being kept
by the filing party and will be made available for inspection by the other parties or the Court upon request.*

Certificate of Service

I Brian Herbert Wilson, Certify that on 9th December 2011, I served the foregoing Disclosures by
Electronic Court-Link or mailing a copy of the same by the United States Postal Service to all
other parties, attorneys and others of record listed below:

Cynthia Lowery-Graber
Castle Stawriarski, LLC
999 18th St Suite 2201
Denver, CO 80421

/S/  Brian Herbert Wilson, Jr. *

9

\* In accordance with C.R.C.P 121 § 1-26(9), A printed copy of this document bearing the original signatures is being kept by the filing party and will be made available for inspection by the other parties or the Court upon request.

10

| | |
|---|---|
| COUNTY COURT, COUNTY OF JEFFERSON<br>STATE OF COLORADO<br>100 Jefferson County Parkway<br>Golden, CO 80421 | |
| **Plaintiff: GMAC Mortgage, LLC**  (Aka Ally Bank)<br><br>v.<br><br>**Defendant: Ken Dlin** | σ COURT USE ONLY σ |
| **v. Third Party Defendant**: GreenPoint Mortgage Funding, Inc., Mortgage Electronic Registration Systems, Inc., as nominee for GreenPoint Mortgage, and as of yet unknown third party holders of the securitized note, herein, John and Jane Doe, Underwriters. | Case No:<br><br>11 C 48857 |
| Attorney for Defendant Brian Herbert Wilson, Jr.  # 37237<br>Law Office of Brian Herbert Wilson, Jr.<br>43 Bulldogger Ct.<br>Bailey, CO 80421<br>Phone Number: 303-816-9493  FAX: 303-838-8054<br>E-mail:  bwilson@brianherbertwilson.com<br>Atty. Reg. #: 37237 | DIV:<br><br>Courtroom: |

## DEFENDANT ANSWER TO COMPLAINT IN FORCIBLE ENTRY AND UNLAWFUL DETAINER AND COUNTERCLAIMS FOR DAMAGES  BASED ON BREACH OF CONTRACT, BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

Defendant Ken Dlin, by and through counsel, Brian Herbert Wilson, Jr. submits this

Answer to Complaint for Forcible Entry and Unlawful Detainer and to submit his counterclaims

for damages of an alleged injury caused by the Plaintiffs on the basis of lender liability regarding

a mortgage that was either foreclosed or attempted to be foreclosed by the Plaintiffs and Third

Party Defendant(s), accordingly the Defendant Dlin state as follows:

## THE JURISDICTION AND VENUE

1

(1)      The jurisdiction of this court is not correct.  While typically Forcible Entry and Unlawful Detainer (FED) actions are proper for the County Court, the counter claims, and Possible cross claims and third party claims exceed $ 15,000.00.

(2)      This Court has combined jurisdiction over the subject matter of the initial complaint, however, since the matter includes counter claims in excess of the jurisdictional limit of the county court, the District court has authority to hear all cases and controversies that arise in contract law or because of tort liability. The matter in question also has to do with a piece of real property located in the county of Jefferson, the home of the Defendant and Counterclaimant (s).

(3)      Venue is correct for the District Court pursuant to C.R.C.P 98 (a).  The amount in controversy exceeds $15,000.00, the claim arises due to a tort or a contract that occurred within Jefferson County, Colorado.

(4)      The Defendant respectfully request this matter be moved to the District Court for adjudication accordingly.

## THE PARTIES (REQUEST OF JOINDER OF PARTIES PURSUANT TO C.R.C.P. 14 & COUNTY COURT RULE 319)

(5)      The Defendant (s) to this action is Mr. Ken Dlin, who is currently residing at 3431 Welch Avenue, Kittredge CO, 80457.

(6)      There is only one named Plaintiff to this action under FED; however, the Defendant respectfully request that the following parties be made Co-Plaintiffs and

2

accordingly subject to the counterclaims of the Defendant. The parties named herein all had a part in either the transactions, or the same claims under Breach of Contract or Tort claims of the Plaintiff(s) ; (1) GMAC Mortgage LLC, 1100 Virginia Drive, Fort Washington, PA, 19034, (2) GreenPoint Mortgage Funding, Inc., AKA John and Jane Doe.

(7)      All Plaintiffs, and Third Party Defendant or Co-Plaintiffs are in the business of either banking, mortgage management or underwriting of loans and mortgages.

## GENERAL ALLEGATIONS AND FACTS

(8)      The history of this case has been ongoing in this court starting with a Rule 120 hearing and culminating with above captioned case.

(9)      Mr. Dlin the Defendant to this current action has argued in every respect, pro se, that the actions of the Bank were not based on sound law and facts.

(10)      This case and its previous pleadings both in this court and in the Federal Court are of the offspring of an elaborate and complicated banking scheme that took shape during a post 9/11 era. Namely, that many mortgages became part of a Mortgage Backed Security (MBS) concept, wherein, the mortgage was bundled into a larger group of securitized loans and given a name, in the present case, it is believed this Mortgage became part of a "bundle" of loans.

3

(11)     As a part of the securitizing, the promissory note was either lost or deliberately

destroyed and the bundle of loans was passed to another lender as a part of a purchase or

buyout for example.

(12)     While the GreenPoint Mortgage may be properly registered as the "mortgage

Holder" in the legal sense of the word, it is no longer an entity, meaning, that there is no

longer an entity known as GreenPoint that can be sued or enforce the note.

(13)     Accordingly the Plaintiff, GMAC is essentially acting Trustee for the Bundle of

loans and is not the owner of the note, but merely a service provider processing the

payments.

(14)     GMAC, by and through counsel Castle Stawiarski, has sought to foreclose on the

mortgage in Jefferson County, and did so on July 28th 2010, however was not the true

owner of the note either.

(15)     Subsequently, the Defendant Ken Dlin, pro se, filed a law suit in Federal Court,

Civil Action No. 10-cv-01200-MSK-BNB, on a theory that amongst others that fraud

occurred in the execution and or representations of the Bank regarding negotiations with

the Bank.  The law suit in Federal District Court was filed on March 22nd 2010.  That

case is ongoing.  It should be noted that this action and the subsequent responses,

defenses and counter claims do not directly over lap, however since both actions arise

from the same transaction or occurrence, this court should be put on notice of the sister

action in the Federal Court.

(16)     The Bank, has sought to have the Current Tenant to evict or quit possession.

4

(17)     The Defendant Mr. Dlin argued against the foreclosure noting his objection

during the rule 120 hearing; however the judge granted the foreclosure based on the

prima facie case and the pleadings.

## ANSWER TO COMPLAINT IN FORCIBLE ENTRY AND UNLAWFUL DETAINER

(18)     The Defendant deny the statement in section one (1) of the complaint and aver

that any purported ownership is based on deceptive conduct of the Plaintiffs. To the

extent that the Plaintiffs refer to Exhibit A the Defendant admits this is an accurate

description of the property in question.

(19)     Section two (2) of the Complaint, Defendant admit that a deed of trust was

recorded as security on the subject property however cannot admit nor deny whether the

dates and reception numbers are accurate or at least the Defendant does not have

knowledge sufficient to either admit or deny, and therefore denies the same.

(20)     The Defendant denies the statement in section three (3) to the extent that the Deed

of Trust granted power to sell at the public trustee of Jefferson County Colorado. To the

extent that a trustee sale occurred, without admitting the correctness or the authority, the

Defendant cannot admit or deny because the Defendant are without sufficient knowledge

or information that the property was sold and to whom it was sold. The Defendant does

not have adequate knowledge to admit or to deny that a Certificate of Purchase was

issued and so to that extent deny this last statement.

5

(21)      The Defendant does not have adequate knowledge or information to admit or to

deny the statements in sections four through eleven (4-11) and therefore deny the same

and reserve the right to amend their answer as information becomes available.

## DEFENDANT KEN DLIN'S DEFENSES AND AFFIRMATIVE DEFENSES

(22)      Plaintiffs Complaint fails to state a claim upon which relief can be granted.

(23)      Plaintiffs Complaint fails to mitigate their damages, if any as required by law.

(24)      Plaintiffs' claims may be barred in whole or in part by the doctrine of unclean

hands, waiver or estoppel.

(25)      Plaintiffs' claims may be barred, in whole or in part, for lack of damages suffered.

(26)      Plaintiffs' claims may be barred in whole or in part by failure of a condition

precedent.  For example, but without limitation, Plaintiff (s) may have failed to comply

with one or more provisions of the contract.

(27)      Plaintiff may be barred in whole or in part by one or more terms and provisions of

the contract.

(28)      Plaintiffs are not the real party in interest and lack standing.

(29)      Plaintiffs seek to enforce under fraud, including fraudulent misrepresentation that

the Bank is the party under contract with the Defendant.

(30)      Defendant reserves the right to assert any further defenses or to delete any

presently pleaded affirmative defenses after discovery and or investigation in this action

may warrant.

6

Wherefore, the Defendant Ken Dlin having fully answered the Plaintiff's Complaint in Forcible Entry and Detainer, request this court to enter an order moving this matter to District Court for further adjudication and enter an order of protection stopping the removal of the Defendant from the subject property until a full and final decision is made on the merits of the case in front of a jury as is provided by Colorado law.

## DEFENDANT KEN DLIN'S COUNTERCLAIMS

Defendant Ken Dlin as parties in interest to the subject property, by and through the undersigned counsel, the Law Office of Brian Herbert Wilson Jr., for their counterclaims against the Plaintiff GMAC MORTGAGE LLC, and other Joined Third Party co-Defendant (or joined plaintiffs) including GreenPoint Mortgage Funding, and as of yet unknown third party holders of the securitized interest or underwriters.

## GENERAL ALLEGATIONS

(1)    Mr. Ken Dlin is a resident of Jefferson County, Colorado and resides at 3431 Welch Avenue, Kittredge, CO 80457.

(2)    Mr. Ken Dlin is the borrower and the Defendant to the complaint under forcible entry and detainer.

(3)    At all times, Mr. Dlin has been the occupant of the property and the party in interest to the property as the person named on the deed to the real property.

7

(4)      Mr. Dlin originally financed his home with GreenPoint on February 20th 2004. The loan was 633,000 (Six Hundred Thirty Three Thousand Dollars).

(5)      The original lender on the loan was GreenPoint.

(6)      The true owner of the "note" at this point in time is not currently ascertainable.

(7)      The Petitioner filed with this court a verified motion pursuant to Rule 120 of the C.R.C.P., averring amongst other things that GMAC was the owner or assignee in interest to the mortgage under a "Trust" scheme and possessed the right to seek an order of this court to authorize a Public Trustee's sale.

(8)      At that hearing, the court ruled in favor of GMAC and the sale date was set.

(9)      The Promissory Note has not yet been produced.

(10)     The assignment of the promissory note was the Mortgage Electronic Registration System (MERS) from GreenPoint Mortgage as nominee, and the Public Trustees Certificate of purchase as alleged points to GMAC as the current holder of the evidence of debt.

(11)     There are no records available to demonstrate that MERS as nominee was ever assigned or nominated or that the deed of trust was transferred to GMAC.


## **COUNTERCLAIMANT**

## **FIRST COUNTERCLAIM FOR RELIEF**

## **(BREACH OF EXPRESSED CONTRACT (BY ALL PLAINTIFFS & THIRD PARTY DEFENDANTS)**

(12)        The Counterclaimant hereby incorporates the above paragraphs and
general allegations as set forth above herein.

(13)        The Counterclaimant entered into a contract under secured transaction
between themselves and the original lenders and then subsequently with GMAC under
the Deed of Trust dated the February 20th 2004. The Counterclaimant and the Plaintiff
did not enter into any contract or agreement directly. The Third Party Defendant
GreenPoint, was the mortgagor and mortgagee Mr. Dlin, respectively on real property
that was secured by a security interest by way of a deed of trust.

(14)        Plaintiff GMAC accelerated the loan making it due and payable in breach
of the agreement between the Plaintiffs and Counterclaimant.

(15)        The Plaintiff, GMAC as the purported successor in interest stepped into the shoes
of the original party GreenPoint, and became subsequently responsible for the carrying
out of the responsibilities of the original contract based on the assumption or the
assignment of the note.

(16)        The Plaintiff GMAC both failed to fulfill their expressed agreement under
contract by accelerating the loan making it due and payable and failed to mitigate any
harm that occurred to the Counterclaimant / Defendant Mr. Dlin.

(17)        The Counterclaimant was ready willing and able to comply with their end of the
bargain and in fact has produced a buyer who was ready willing and able to purchase the
property, that would have excused the Counterclaimant from performance by the oral
promises of the agents of the Bank (GMAC).

(18)     The Counterclaimant has suffered economic loss, legal costs, legal defenses and consequential damages as a direct and proximate result of the Breach of Contract by the Plaintiffs.

(19)     Due directly to the conduct of the Plaintiff, it calls into question the proper and just possession of the property and the matter should be adjudicated accordingly.

Wherefore, the Counterclaimant prays for relief by this court for the Breach of Contract as a fair and just remedy in an amount to be determined at trial plus any other remedy this court deems just and fair given the circumstances.

## SECOND CLAIM FOR RELIEF

## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING ( BY ALL PLAINTIFFS & THIRD PARTY DEFENDANTS)

(20)     The Counterclaimant hereby incorporates the above paragraphs and general allegations as set forth above.

(21)     The Plaintiff's and the Counterclaimant either directly or indirectly entered into a contract for a mortgage or were purportedly the successors in interest.

(22)     The Plaintiffs, (all) are in the business of Banking and as such are subject to the implied duty of good faith and fair dealing.

(23)     The Counterclaimant entered into contracts based on mortgages in the state of
Colorado.  As such the parties had a duty to not breach the covenant of Good faith and
fair dealing pursuant to Colorado Statutes, § 4-1-304. (Obligation of good faith).

(24)     The covenant imposes on each party to the contract the duty to refrain from doing
anything which would render performance of the contract impossible by any act of his
own, and also the duty to do everything that the contract presupposes that each party will
do to accomplish its purpose.

(25)     The Counterclaimant completed the required tasks regarding the contract, and
even with the subsequent oral promises made to the Counterclaimant by the Bank,
completed every task required of them.

(26)     The Plaintiff collectively interfered with the performance of the Counterclaimant
by either failing to follow through or ignoring Mr. Dlin even upon repeated requests for
the Plaintiffs to fulfill their obligations.  In particular, GMAC, its agents and
representatives gave oral promises and assurances that a loan "work out" was going to
happen and would be in the best interest of the Counterclaimant Dlin.

(27)     GMAC stopped communication with the Counterclaimant directly and has
repeatedly denied that any duty exists on their part, however the Verified Motion
submitted to this court clearly represents that GMAC is "Trustee" for the holder of the
note.

(28)     The Counterclaimant Dlin was damaged financially by the Breach of Good Faith
and suffered financial loss as a direct result and proximate result of the breach.

11

Wherefore, the Counterclaimant Dlin prays for relief by this court for the Breach of Implied covenant as a fair and just remedy in an amount to be determined at trial plus any other remedy this court deems just and fair given the circumstances.

## THIRD CLAIM FOR RELIEF

## PROMISSORY ESTOPPEL (GMAC)

(29)     The Counterclaimant hereby incorporates the above paragraphs and general allegations as set forth above herein.

(30)     The Counterclaimant entered into a contract under secured transaction between themselves and the GMAC Financing where a mortgage on real property was secured by a security interest by way of a deed of trust.

(31)     GMAC (Bank) deemed the loan to be in default and accordingly accelerated the loan making it due and payable treating the contract as having ceased and the Counterclaimant was in breach of the agreement between the Plaintiffs and Counterclaimant.

(32)     The Counterclaimant was made certain promises regarding the conduct of the Bank. These promises include the oral promise of a loan workout, lower interest rates and the cooperation of GMAC Financing toward the Counterclaimant.

(33)     Under this claim for relief, even if no contract exists at this point in time, oral promises were made to the Counterclaimant that would be unfair not to have the Plaintiff and Third Party Defendants be required to enforce.

(34)    The elements of Promissory Estoppel include; A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

(35)    The remedy granted for breach of a promise may be limited as justice requires.

(36)    The Counterclaimant was injured by the promises made by GMAC and not honored by MERS either by way of making a loan or some sort of workout agreement in a way that would make the Counterclaimant whole.

(37)    Because of the failure to follow through with the promises made, the Counterclaimant has suffered in injury that if this court were to enforce the promise would make the Counterclaimant whole.  If the Counterclaimant were to be removed from the home, prior to a fair and just adjudication, it would irreparably harm the Counterclaimant.

Wherefore, the Counterclaimant pray for relief by this court under a theory of Promissory Estoppel, to enforce the promises and to adjudicate the matter fully as a fair and just remedy in an amount to be determined at trial plus any other remedy this court deems just and fair given the circumstances.

## FOURTH CLAIM FOR RELIEF

## BREACH OF FIDUCIARY DUTY (GMAC)

(38)    The Counterclaimant Dlin, hereby incorporates the above paragraphs and general allegations as set forth above.

(39)    Plaintiffs owed the Counterclaimant either directly or indirectly a fiduciary duty since as a bank, or bankers, the Plaintiffs were acting in the capacity as trustees of both the payments made toward the mortgage and toward documents to be filed either at the state or the federal level.

(40)    While unclear who actually holds the note, both GMAC, GreenPoint and MERS owe a duty to the Counterclaimant as financial fiduciaries.

(41)    The Plaintiffs breached the fiduciary duty owed to the Counterclaimant Dlin by using failing to fulfill the duties of the Bank under the fiduciary responsibilities as understood in business practice.

(42)    Counterclaimant was injured and has been subjected to an ongoing injury that has caused him economic hardship, financial loss and expenses.

(43)    The Plaintiffs are the direct cause of the injury, in that, as a direct result of their actions, the Counterclaimant Dlin was actually injured.

(44)    The Counterclaimant seeks damages for the breach of the fiduciary responsibility to the Counterclaimant.

Wherefore, the Counterclaimant pray for relief by this court for Breach of the Fiduciary Duty as a fair and just remedy in an amount to be determined at trial, plus any other remedy this court deems just and fair under the circumstances.

## FIFTH CLAIM FOR RELIEF

14

## NEGLIGENT MISREPRESENTATION (GMAC)

(45)    The Counterclaimant Dlin hereby incorporates the above paragraphs and general allegations as set forth above.

(46)    All the Plaintiffs named under this claim are in the business of Banking, underwriting or managing mortgages and the like.

(47)    The Plaintiffs owed a duty of care to the Counterclaimant Dlin because as a Bank or Banking institution, the standard of care is to act truthfully and honestly with the facts and to respond to inquiries in a straightforward way.

(48)    The Plaintiffs gave false information to the Counterclaimant on several occasions and were not honest in dealing with the facts on the whole. This includes the fact that the mortgage became part of a securitized mortgage.

(49)    The Plaintiffs gave this information to the Counterclaimant in the course of business under a professional inquiry as a part of the ongoing transaction in which the Plaintiffs stood to gain financially based on the transaction.

(50)    The Plaintiff(s) was negligent in giving or in obtaining the information or in communicating the information to the Counterclaimant Dlin.

(51)    The Plaintiff(s) gave the information with the knowledge or intent that the Counterclaimant would act or make a decision in reliance upon the information that was given out from the Plaintiff(s).

(52)    The Counterclaimant Dlin relied upon the statements of the Plaintiffs that had been supplied.

15

(53)      The reliance by the Counterclaimant Dlin upon the statements made by the

Plaintiff(s) was the direct cause of the damages to the Mr. Dlin.

(54)      The Counterclaimant Dlin seek damages, both special and general for the injury

caused by the Plaintiff(s).


Wherefore, the Counterclaimant prays for relief by this court for the Negligent

Misrepresentation by the Plaintiff(s) as a fair and just remedy in an amount to be

determined at trial plus any other remedy this court deems just and fair under the

circumstances including attorney fees and costs.


## SIXTH CLAIM FOR RELIEF (COUNT ONE)

## DECEPTIVE TRADE PRACTIES (COLORADO CONSUMER PROTECTION ACT

## (ALL PLAINTIFFS AND THIRD PARTY DEFENDANTS)


(55)      The Counterclaimant Dlin hereby incorporates the above paragraphs and general

allegations as set forth above.

(56)      The Colorado Consumer Protection Act (CCPA) § § 6-1-101 et seq., C.R.S.

protects consumers both public and private from usurpations in consumer transactions.

(57)      A private cause of action is granted under statute § 6-1-113(1)(a) provides that

actual or potential consumers may bring an action under this Act.

(58)      The Counterclaimant brings this action timely under the Act.


16

(59)    The Plaintiff(s) engaged either directly or caused another to engage in a deceptive
trade practice that caused the Counterclaimant to become injured. In particular, the agents
and representatives with GMAC financing encouraged the Counterclaimant to "go into
default" to help him get a loan workout.

(60)    The deceptive trade practice occurred in the normal course of business.

(61)    The deceptive trade practice significantly impacted the Counterclaimant as an
actual or potential customer or consumer of the Plaintiff(s).

(62)    The Counterclaimant Ken Dlin, was a consumer of the Plaintiff(s) and was
injured in his business and or occupations as a direct result of the deceptive trade
practice, and;

(63)    The deceptive trade practice caused actual damages or losses to the
Counterclaimant Dlin.

(64)    The Plaintiff and the Third Party Defendant specifically used deceptive practices
in suggesting that a loan work out could be given to the Counterclaimant if he were in
default on their loan. It was related to the Counterclaimant Dlin that he would not be
offered such a loan workout "unless" he went into default.

(65)    The Counterclaimant seeks relief based on the Consumer Protection Act based on
the Actual damages of the claim.


Wherefore, the Counterclaimant pray for relief by this court for the violation of the

Consumer Protection Act Plaintiff(s) as a fair and just remedy in an amount to be

determined at trial plus treble damages as is allowed by statute upon the showing of clear

and convincing evidence that the Plaintiff(s) engaged in Bad Faith Conduct, plus any

other remedy this court deems just and fair under the circumstances including attorney

fees and costs.


### SIXTH CLAIM FOR RELIEF (COUNT TWO)

### DECEPTIVE TRADE PRACTIES (COLORADO CONSUMER PROTECTION ACT

### (ALL PLAINTIFFS AND THIRD PARTY DEFENDANT)


(66)    The Counterclaimant Dlin hereby incorporates the above paragraphs and general

allegations as set forth above.

(67)    The Colorado Consumer Protection Act (CCPA) § § 6-1-101 et seq., C.R.S.

protects consumers both public and private from usurpations in consumer transactions.

(68)    A private cause of action is granted under statute § 6-1-113(1)(a) provides that

actual or potential consumers may bring an action under this Act.

(69)    The Counterclaimant brings this action timely under the Act.

(70)    The Plaintiff(s) engaged either directly or caused another to engage in a deceptive

trade practice that caused the Counterclaimant to become injured. In particular, the agents

and representatives with GMAC together with GreenPoint have averred to the court that

GMAC was the owner of or the holder of the evidence of debt.  The Plaintiff and the

Third Party Defendant have misled the court into believing that MERS as nominee for

GreenPoint has subsequently nominated GMAC as an entity with the power to foreclose, however it is not.

(71)    The deceptive trade practice occurred in the normal course of business.

(72)    The deceptive trade practice significantly impacted the Counterclaimant as an actual or potential customer or consumer of the Plaintiff(s).

(73)    The Counterclaimant Ken Dlin, was a consumer of the Plaintiff(s) and was injured in his business and or occupation as a direct result of the deceptive trade practice, and;

(74)    The deceptive trade practice caused actual damages or losses to the Counterclaimant Dlin.

(75)    The Counterclaimant Dlin was specifically injured by the Plaintiff and the Third Party Defendant by predatory and dishonest lending practices that included the use of Mortgage Backed Securities wherein, their mortgage was bundled into a securitized and traded stock market commodity.  As such, the promissory note was stripped from the Deed of Trust and the Counterclaimant could not have a fair and unbiased process in getting a loan workout potential.

(76)    The Counterclaimant seeks relief based on the Consumer Protection Act based on the Actual damages of the claim.

Wherefore, the Counterclaimant pray for relief by this court for the violation of the Consumer Protection Act Plaintiff(s) as a fair and just remedy in an amount to be determined at trial plus treble damages as is allowed by statute upon the

19

showing of clear and convincing evidence that the Plaintiff(s) engaged in Bad
Faith Conduct, plus any other remedy this court deems just and fair under the
circumstances including attorney fees and costs

## EIGHTH CLAIM FOR RELIEF

## NEGLIGENCE PER SE (GMAC)

(77)     The Counterclaimant Dlin hereby incorporates the above paragraphs and general
allegations as set forth above.

(78)     At the time of the occurrence, The Colorado Consumer Protection Act (CCPA) §
§ 6-1-101 et seq., C.R.S. was in force that sought to protect consumers both public and
private from usurpations in consumer transactions.

(79)     A violation of this statute that was specifically designed to protect consumers is
on its face negligence.

(80)     The elements of Negligence Per Se are: 1) The Plaintiff violated the statute; (2)
the statute is a safety statute intended to protect the public from certain types of conduct,
(3) the act caused the kind of harm the statute was designed to prevent, and (4) the
plaintiff was within the zone of risk of the kind of harm the statute intended to protect.

(81)     The Plaintiff(s) engaged in either directly or caused another to engage in a
deceptive trade practice that was protected under statute.

(82)     The deceptive trade practice occurred in the normal course of business.

(83)     The deceptive trade practice significantly impacted the counterclaimant as an actual or potential customer or consumer of the Plaintiff(s).

(84)     The Counterclaimant Ken Dlin, was a consumer of the Plaintiff(s) and was injured in their business and or occupation as a direct result of the deceptive trade practice, and;

(85)     The deceptive trade practice caused actual damages or losses to the Counterclaimant Dlin.

(86)     The Counterclaimant seeks relief based on the Negligence Per Se based on the Actual damages and losses of the claim.

Wherefore, the Counterclaimant pray for relief by this court under a theory of Negligence Per Se, by the Plaintiff(s) as a fair and just remedy in an amount to be determined at trial any other remedy this court deems just and fair under the circumstances including attorney fees and costs.

## NINTH CLAIM FOR RELIEF

## CIVIL CONSPIRACY (ALL PLAINTIFFS AND THIRD PARTY DEFENDANT)

(87)     The Counterclaimant hereby incorporates the above paragraphs and general allegations as set forth above.

(88)     Counterclaimant seeks recovery based on civil conspiracy. The Plaintiffs and
Third Party Defendants collectively agreed either by action or by conduct to accomplish
an unlawful goal.

(89)     The Plaintiff(s) knew that no proof of Holder in due course status has ever been
produced either to the Counterclaimant or to the County Trustee, yet agreed that it would
be averred as though proof existed.

(90)     The Plaintiffs GMAC and Third Party Defendants, either directly or indirectly
agreed or in conduct made false representations of a past or present fact, that in particular
GMAC financing was a successor party in interest, however the securitized interest had
been bundled into a larger security, not a "Trust".

(91)     The fact that GMAC Financing nor MERS has never proved its successor interest
yet continued on as though it was in furtherance of the unlawful goal. In other words, the
note under which the power to enforce the collection of the Mortgage has not and cannot
be produced.

(92)     At the time the assertion was made to the court and to the county, the Plaintiff
knew that the representation was false even though the practice was used throughout the
industry.

(93)     The Plaintiffs made the statements, knowing that the court and the county would
rely upon them.

(94)     The Counterclaimant was injured by the acts performed to accomplish the
unlawful goal.

(95)    The Plaintiffs collectively interfered with the truth by failing to disclose the true holder of the note to the court.

(96)    The Counterclaimant Dlin was damaged financially by the civil conspiracy and suffered financial loss as a direct result and proximate result of the fraud.

Wherefore, the Counterclaimant Dlin prays for relief by this court for the civil conspiracy a fair and just remedy in an amount to be determined at trial plus any other remedy this court deems just and fair given the circumstances.

## TENTH CLAIM FOR RELIEF

## INTERFERENCE WITH CONTRACT (GMAC)

(97)    Plaintiff hereby incorporates the above paragraphs and general allegations as set forth above.

(98)    The Counterclaimant seeks relief under a theory of intentional interference with contractual obligations.

(99)    The Counterclaimant and the original lender entered into a contract.  Plaintiffs aver they are the successor in interests, even though have never demonstrated the existence of the assignment papers or the Promissory Note.

(100)    The Plaintiff(s) knew or should have known of the existence of the contract that existed between the original underwriters and the bank and the Counterclaimant.

(101)    Agents and representatives of GMAC suggested that the Counterclaimant should

use default to help them get a loan work out.  Subsequently, the Plaintiffs GMAC through

agents of the Bank sought to interfere with the original contract by both intentionally

seeking the Counterclaimant not to perform under the terms of the agreement.  In

particular, agents or representatives of the Bank told the Counterclaimant to go into

default by not paying the mortgage payment when it became due.

(102)    The Plaintiff's interference with the contractual obligations was improper.

(103)    The interference became the basis for the injury to the Counterclaimant.  The

Counterclaimant suffered both economic losses directly and indirectly as a direct and

proximate cause of the interference by the Plaintiffs.


Wherefore, the Counterclaimant Dlin prays for relief by this court for the intentional

interference with contractual obligations, a fair and just remedy in an amount to be

determined at trial plus any other remedy this court deems just and fair given the

circumstances including attorney fees and costs.


## ELEVENTH CLAIM FOR RELIEF

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (GMAC)

(104)    The Counterclaimant hereby incorporates the above paragraphs and general

allegations as set forth above.

(105)    Counterclaimant has suffered emotional distress caused by the negligence of

Plaintiff(s).

24

(106)     Counterclaimant is of a class of person(s) who would reasonably be expected to be harmed emotionally by the negligent act of the Plaintiffs.

(107)     Plaintiffs engaged in negligent conduct or a willful violation of a statutory standard pursuant to statute, (Colorado Consumer Protection Act).

(108)     Plaintiff's negligent conduct or willful violation of the statutory standard was the direct and proximate cause of the serious emotional distress the Counterclaimant has suffered.

(109)     The emotional distress suffered by the Counterclaimant was an emotional reaction typical to the kind of circumstances caused by the Plaintiffs.

(110)     A reasonable person would be unable to cope with the mental distress caused by this circumstance.

(111)     Counterclaimant seeks actual damages associated with the actual injury they have sustained and the future loss based on the gross negligence that leads to severe emotional distress.


Wherefore, the Counterclaimant prays for relief by this court under a theory of Negligence infliction of emotional distress, by the Plaintiff(s) as a fair and just remedy in an amount to be determined at trial any other remedy this court deems just and fair under the circumstances including attorney fees and costs.

25

## TWELFTH CLAIM FOR RELIEF

## CIVIL FRAUD – WRONGFUL FORECLOSURE (GMAC)

(112)    The Counterclaimant hereby incorporates the above paragraphs and general allegations as set forth above.

(113)    Counterclaimant seeks recovery based on wrongful foreclosure. The Plaintiffs foreclosed based on a deceit perpetrated on the court and the county government by averring that the Plaintiffs were the holders in due course on the note.

(114)    No proof of Holder status has ever been produced either to the Counterclaimant or to the County Trustee.

(115)    The Plaintiffs, either directly or indirectly, made false representations of a past or present fact, that in particular neither GreenPoint, nor MERS established that GMAC was a successor party in interest to the note and or deed of trust.

(116)    The fact that neither GreenPoint the original financing Bank nor GMAC has ever proved its successor interest exists due to the missing promissory note, this is material because the promissory note was bundled into an MBS, *(infra at page 4)*.

(117)    At the time the assertion was made to the court and to the county, the Plaintiff knew that the representation was false even though the practice was used throughout the industry.

(118)    The Plaintiffs made the statements, knowing that the court and the county would rely upon them.

(119)    The court and the county did rely upon them in granting the right to foreclose.

26

(120)    The Counterclaimant was injured by the reliance the court placed upon the statement and the county relied upon the court's ruling as well.

(121)    The Plaintiffs collectively interfered with the truth by failing to disclose the true holder of the note to the court.

(122)    The Counterclaimant Dlin was damaged financially by the wrongful foreclosure and suffered financial loss as a direct result and proximate result of the fraud.

Wherefore, the Counterclaimant Dlin prays for relief by this court for wrongful foreclosure a fair and just remedy in an amount to be determined at trial plus any other remedy this court deems just and fair given the circumstances.

## THIRTEENTH CLAIM FOR RELIEF

## CIVIL FRAUD – FRAUD IN THE FACTUM (GMAC)

(123)    The Counterclaimant hereby incorporates the above paragraphs and general allegations as set forth above.

(124)    Counterclaimant seeks recovery based on fraud in the factum. The Plaintiffs made a false representation to the Counterclaimant that led them to take an action that they would have not taken if they had known the truth.

(125)    In particular, the Plaintiff(s) agents discussed on the telephone options concerning the difficulty in paying the mortgage. Prior to any potential default, the agents for the Plaintiff(s) represented to the Counterclaimant that it was "best" to be in default to get

27

better loan workouts and other available incentives from the Federal Government's

special programs.  It was further related to the Counterclaimant, that unless the loan went

into default the Bank could not help them.  The agent for the Bank clearly explained and

encouraged the Counterclaimant to "go into default" on several occasions.

(126)      The Counterclaimant believed this statement to be true and acted on the advice of

the Banks representatives. Plaintiffs, either directly or indirectly, made false

representations or made false promises regarding the outcome of the default by the

Counterclaimant.

(127)      At the time the false statement, the Plaintiff, knew that the representation was

false even though the practice was used throughout the industry.

(128)      The Plaintiffs made the statements, knowing that the Counterclaimant would rely

upon the false statement.

(129)      The Counterclaimant did rely upon the statements and went into default.

(130)      The Counterclaimant was injured by the reliance placed upon the statement by the

Agents of the Bank.

(131)      The Counterclaimant Dlin was damaged financially by the Fraud in the Factum

and suffered financial loss as a direct result and proximate result of the fraud.


Wherefore, the Counterclaimant Dlin prays for relief by this court for fraud in the factum,

a fair and just remedy in an amount to be determined at trial plus any other remedy this

court deems just and fair given the circumstances.

28

## CONCLUSION

Wherefore, the Plaintiff Ken Dlin Prays:

1. This Court enters a judgment in favor of the Counterclaimant Ken Dlin, on all claims for relief.

2. The Counterclaimant Dlin request this matter be moved to the District Court of Jefferson County for further adjudication.

3. The Counterclaimant Dlin respectfully request that this honorable court allow the inclusion of the other plaintiffs to this action, Successors in interest to GreenPoint Mortgage Funding MERS and John and Jane Doe, as of yet unknown holders of the securitized interest. Pursuant to Colorado Statute it is proper to include the appropriate parties to this action.

4. The Counterclaimant Dlin requests this court place a temporary injunction on GMAC concerning this matter pursuant to statute protecting the real property from any further actions or from the forcible removal of the Defendant / Counterclaimant peace from being disturbed until this matter can be fully determined by this court.

5. Counterclaimant Dlin asks for a Jury Trial on all matters and will pay the fee accordingly.

6. This Court award all damages in an amount to be determined at trial, compensatory, consequential, general and special damages recognized by the State of Colorado and this court against the Co-Defendant's for each claim for relief as this honorable court sees fit and just for the circumstance up to the maximum allowed by statute including all adjustments for increase based on inflation pursuant to (C.R.S. § 13-21-102.5) plus any other remedy including but not limited to attorney fees and costs and any other remedy this court deems just and fair.

7. This Court award attorney's fees, costs and expenses associated with this complaint to Counterclaimant Ken Dlin together with any other award or relief this court deems just and reasonable for the circumstances.

8. The Counterclaimant respectfully requests that the matters of the FED and the Counterclaims be Consolidated pursuant to C.R.C.P. 42(a) since the matter comes before this court and the Counterclaimant avers the matter in question sits squarely on the right to possess real property.

DATED this 8th day of June 2011

Submitted Respectfully,


The Law Office of Brian Herbert Wilson, Jr.


*Duly Signed Copy of this pleading is on file with the Office of Brian Herbert Wilson, Jr. *.*


By /s/    Brian Herbert Wilson, Jr.
          Brian Herbert Wilson, Jr. # 37237



Address of the Plaintiff:
Mr. Ken Dlin
3431 Welch Ave.
Kittredge CO 80457



## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the above Answer to Complaint and Counterclaims was served on the other party or parties legal counsel of Record Lexis File and serve or by placing it in the United States Postal Service Certified Return Receipt Requested or if applicable by service of process on all third party Defendant if applicable according to C.R.C.P 4 on this 17th day of April 2011 to:

    Castle Meinhold & Stawiarski
    999 18th Street Suite 2201
    Denver CO 80202

                                        /s/ Brian Herbert Wilson Jr.


Counsel for the Plaintiff(s)  GMAC:

Castle Stawiarski, LLC
 999 18th Street Suite 2201
Denver, CO 80202

\* *In accordance with C.R.C.P 121 § 1-26(7), A printed copy of this document bearing the original signatures is being kept by the filing party and will be made available for inspection by the other parties or the Court upon request.*