OCT 17 2014

U.S. BANKRUPTCY COURT
SO. DIST. OF NEW YORK

**Michael E. Boyd**
**5439 Soquel Drive**
**Soquel, CA 95073**
**Phone: (408) 891-9677**
**E-mail: michaelboyd@sbcglobal.net**
*In Pro Per*

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>RESIDENTIAL CAPITAL, LLC, et al.,<br><br>Debtors. | Case No. 12-12020 (MG)<br><br>Chapter 11<br><br>Jointly Administered |

## ANSWER IN OPPOSITION OF MICHAEL BOYD SECURED CLAIMANT # 960 TO RESCAP BORROWER CLAIMS TRUST'S SEVENTY-FIFTH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY BORROWER CLAIMS) (THE "OMNIBUS OBJECTION")

### INTRODUCTION

On behalf of and as Trustee to my living trust estate, the Michael Boyd and Patricia Paramoure Living Trust, Michael Boyd, respectfully files this Answer in Opposition to the *ResCap Borrower Claims Trust's Seventy-Fifth Omnibus Objection to Claims (No Liability Borrower Claims)* (the "*Omnibus Objection*"), filed September 17, 2014. Claimant answers in opposition to the Omnibus Objection because as shown herein (1) Debtors chain of title provided in their Objections is false, and "[t]he HVMLT 2007-4 Trust failed to perfect its ownership interest in the subject Deeds of Trust and Notes; as the "Depositor," (2) the 9th Circuit, Case No 12-17434, affirming the district court's order dismissing the case on August 22, 2014, is currently pending panel rehearing, and (3) "the Notes for each loan that were attached to the proof of claims during the Boyd Bankruptcy (U.S. BK. Ct. No. Dist. CA – Case No. 11-61311-SLJ) do not contain endorsements as required in the HVMLT 2007-4 Trust Agreement, as no endorsements appear on the "face" of either document", and (4) the "Boyd debts, which appear in "Bankruptcy" status as of 10/14/2014 within the HVMLT 2007-4 Trust are not in default. All payments "due" on the debts are being timely paid to, and received by, the certificate holders /investors in the HVMLT 2007-4 Trust during the pendency of the Boyd bankruptcy."

**Statement of Facts**

I am not an Attorney, but a Borrower, with pending litigation challenging two of GMAC's no-note Debtor claims against me. GMAC's unlawful acts caused me to file Chapter 13 Bankruptcy in December 2011, prior to ResCap [AKA GMAC LLC] filing Chapter 11 Bankruptcy. So my claims against GMAC LLC are pre-petition for bankruptcy by GMAC LLC. My claim number is 960 and was for $186,000 at the time it was filed. [1] The amount that I alleged to be defrauded of has increased substantially over that original amount, under my Court approved Bankruptcy Plan. [See Exhibit 1, Court Document 7146.] I seek the court to return my estate to my living trust and the refund of my payments to GMAC LLC, their successor servicer Ocwen LLC, and a refund of funds paid to my bankruptcy Trustee, due to GMAC LLC's scienter [2] to defraud me of my estate and my money. I am not aware of any other claimant borrower with similar circumstances to my own [with two of GMAC's no-note Debtor claims] with additional unique circumstances as I describe in my claim.

On June 20, 2014 Claimant filed with the Court Document 7146, Objection to Motion /Objection and Opposition To Motion (related document(s)7036) filed by The Michael Boyd and Patricia Paramoure Living Trust, ("objection"). Claimant asks the Court that this Document 7146 including the pleadings and Exhibits 1 through 3 be incorporated by reference as if fully set forth herein.

On October 29, 2012 Claimant filed his appeal before the U.S. Court of Appeals for the 9th Circuit in Case# 12-17434 *Michael Boyd v. GMAC Mortgage LLC, et al.* On September 11, 2011, Claimant filed litigation in USDC, Northern District of CA, Case No 5:11-CV-05018, for "unconscionability contract and adhesion to real property." Claimant's appeal arose out of his, before Magistrate Judge Paul Singh Grewal, Cause: 15:1601, Truth in Lending. The claims in the complaint were to invalidate/contest the liens on the property that were being serviced by the Debtors. The case was dismissed with prejudice on August 22, 2012 by Order Granting Defendants' Motion to Dismiss Plaintiffs First Amended Complaint. Claimant appealed the District Court's decision to the USCA, 9th Circuit, Case No 12-17434. The Ninth Circuit

---

[1] See http://www.kccllc.net/rescap/creditor/search using that claim number 960 and my claim's link is as follows: http://www.kccllc.net/rescap/document/1212032120824150612002131

[2] Scienter--Scienter is a legal term that refers to intent or knowledge of wrongdoing. This means that an offending party has knowledge of the "wrongness" of an act or event prior to committing it.

- 2 -

1  affirmed, by an unpublished Memorandum, the district court's order dismissing the case on

2  August 22, 2014. On September 4, 2014 Claimant filed his Petition for Panel Rehearing which is

3  currently pending. [See attached Exhibit A herein.]

4

5  On September 17, 2014 Debtors filed the *ResCap Borrower Claims Trust's Seventy-Fifth*

6  *Omnibus Objection to Claims (No Liability Borrower Claims)* (the "*Omnibus Objection*") which

7  included [at Doc 7552-2 pp 45-46] pointed to a disallowance of the Claim 960, on the basis of

8  "*Res Judicata*", with "No Liability Summaries" as follows:

9

10  [1] "Debtors' involvement with Claimant's loans was limited to servicer of the loans. The loan on

11  Soquel Dr. was originated by Plaza Home Mortgage Inc. in January 2007. Debtor GMAC

12  Mortgage serviced the Soquel Dr. loan from April 10, 2007 until servicing transferred to Ocwen

13  Loan Servicing LLC on February 16, 2013. The loan on Lakebird Dr. was originated by Plaza

14  Home Mortgage Inc. Debtor; GMAC Mortgage serviced the Lakebird Dr. loan from March 13,

15  2007_ until servicing transferred to Ocwen Loan Servicing LLC on February 16, 2013."

16

17  [2] On September 11, 2011, Claimant filed litigation in USDC, Northern District of CA, Case No

18  5:11-CV-05018, for "unconscionability contract and adhesion to real property." The claims in the

19  complaint were to invalidate/contest the liens on the property that were being serviced by the

20  Debtors. The case was dismissed with prejudice on August 22, 2012 by Order Granting

21  Defendants' Motion to Dismiss Plaintiffs First Amended Complaint. Claimant appealed the

22  District Court's decision to the USCA, 9th Circuit, Case No 12-17434. The Ninth Circuit affirmed

23  the district court's order dismissing the case on August 22, 2014. Copies of the Orders are

24  attached to the Objection as Exhibit 5-5.

25

26  [3] On December 12, 2011, Claimant commenced a Chapter 13 bankruptcy proceeding in the,

27  Northern District of CA, Bankruptcy Court Case No. 11-BK-61311. On May 14, 2014, the

28  Chapter 13 Plan was confirmed. In the Plan, the Claimant affirmed the liens, as the Plan provides

29  that all arrears on the loans will be paid and Claimant will make ongoing payments on the loans.

30  Therefore, in addition to the reasons stated above, the claims relating to the validity of the loan

31  are precluded as a result of the chapter 13 plan. Copies of the confirmed plan and the schedules is

32  attached to the Objection as Exhibit 6-2.

**Answer to Objections, Opposition, and Arguments**

Answer to Objection [2] first, due to the pendancy of Claimant's Petition for Panel Rehearing, Debtors disallowance of the claim on the basis of "*Res Judicata*" is premature, since the Petition for Panel Rehearing is under consideration by the Court of Appeals for the Ninth Circuit. Claimant therefore invokes his First Amendment rights to judicial review [right to petition for grievances against the government, AKA ResCap] under the Supremacy Clause.

As claimant pointed out at page 8 line 24 of his June 20 objections the Petitioner ResCap is "74% owned by taxpayers" which is relevant to the separation of powers, the political doctrine of constitutional law under which the three branches of government (executive, legislative, and judicial) are kept separate to prevent abuse of power. Also known as the system of checks and balances, each branch is given certain powers so as to check and balance the other branches.

Under this doctrine Judicial Review is the idea, fundamental to the US system of government that the actions of the executive and legislative branches of government are subject to review and possible invalidation by the judicial branch. Judicial review allows the Supreme Court to take an active role in ensuring that the other branches of government abide by the constitution. Judicial review was established in the classic case of *Marbury v. Madison*, 5 US 137 (1803).

A court's authority [including this one's] is to examine an executive or legislative act and to invalidate that act if it is contrary to constitutional principles. The power of courts of law to review the actions of the executive and legislative branches is fundamental to judicial review. Though judicial review is usually associated with the U.S. Supreme Court, which has ultimate judicial authority, it is a power possessed by most federal and state courts of law in the United States. In the United States, the supremacy of national law is established by Article VI, Clause 2, of the U.S. Constitution. Called the Supremacy Clause, it states that "This Constitution, and the laws of the United States which shall be made in pursuance thereof ... shall be the supreme law of the land."

Answering to Objections [1 & 3] concurrently, Claimant has retained the services of an expert William J. Paatalo, who prepared [Exhibit B hereto], the Affidavit of William J. Paatalo. He is a Certified Forensic Mortgage Loan Auditor through ("CFLA"), and has spent more than 8,000

1  hours conducting investigatory research specifically related to mortgage securitization and chain
2  of title analysis. [See Exhibit 1 to Affidavit of William J. Paatalo.]

3

4  Debtors' objection [1] stated "Debtors' involvement with Claimant's loans was limited to servicer
5  of the loans. The loan on Soquel Dr. was originated by Plaza Home Mortgage Inc. in January
6  2007. Debtor GMAC Mortgage serviced the Soquel Dr. loan from April 10, 2007 until servicing
7  transferred to Ocwen Loan Servicing LLC on February 16, 2013. The loan on Lakebird Dr. was
8  originated by Plaza Home Mortgage Inc. Debtor; GMAC Mortgage serviced the Lakebird Dr.
9  loan from March 13, 2007_ until servicing transferred to Ocwen Loan Servicing LLC on
10 February 16, 2013."

11

12 In answer to Debtors objection [1] Debtors misrepresent the chain of title according to the
13 Affidavit of William J. Paatalo, whose expert analysis states in that regard, "a. The HVMLT
14 2007-4 Trust failed to perfect its ownership interest in the subject Deeds of Trust and Notes; as
15 the 'Depositor,' and only entity allowed to sell the assets to the HVMLT 2007-4 Trust (Greenwich
16 Capital Acceptance, Inc.), and the Trust's 'Seller' (Greenwich Capital Financial Products, Inc.) are
17 missing in both chains of title" [see Affidavit of William J. Paatalo page 4 lines 20 to 26].

18

19 Mr. Paatalo's analysis goes on to explain the reasoning for his findings in this regard with
20 reference to his provided exhibits to provide supporting evidence for his findings are described in
21 more detail at pages 5 line 13 through to page 7 line 17 of the Affidavit of William J. Paatalo.

22

23 Debtors objection [3] states "On December 12, 2011, Claimant commenced a Chapter 13
24 bankruptcy proceeding in the, Northern District of CA, Bankruptcy Court Case No. 11-BK-
25 61311. On May 14, 2014, the Chapter 13 Plan was confirmed. In the Plan, the Claimant affirmed
26 the liens, as the Plan provides that all arrears on the loans will be paid and Claimant will make
27 ongoing payments on the loans. Therefore, in addition to the reasons stated above, the claims
28 relating to the validity of the loan are precluded as a result of the chapter 13 plan. Copies of the
29 confirmed plan and the schedules is attached to the Objection as Exhibit 6-2."

30

31 In answer to Debtors objection [3] it is unclear to Claimant how Debtors objection [3] is relevant
32 to Debtors disallowance of the claim on the basis of "*Res Judicata*". Irrespective of the fact

1  "Claimant affirmed the liens, as the Plan provides that all arrears on the loans will be paid and
2  Claimant will make ongoing payments on the loans" this should in no way diminish Claimant's
3  right to this Court's review of his Claim on the basis of the facts before it now. Claimant filed
4  bankruptcy protection before the Debtors did, so now the Debtors want to abuse the process for
5  their advantage, which by itself should be improper, but for the government [AKA ResCap] to do
6  so violates the Constitution.

7

8  Claimant's bankruptcy, like the Debtors', is voluntary, the fact Claimant's affirmed the liens, as
9  the Plan provides, does not diminish Claimant's rights before the US bankruptcy Court, nor the
10 US Court of Appeals. The fact that Debtors are 74% owned by the federal government, should
11 diminish Debtors rights and should also entitle these matters to a higher [not lower] standard of
12 review pursuant to the Supremacy Clause, since in ResCap's [Aka the Government's] filing in my
13 bankruptcy, the Debtors misrepresented the contents of their proof of claims to this Bankruptcy
14 Court, what Mr. Paatalo characterized as "Dubious endorsements", as well as misrepresented the
15 facts regarding "all payments 'due' on the debts are being timely paid to, and received by, the
16 certificate holders /investors in the HVMLT 2007-4 Trust during the pendency of the Boyd
17 bankruptcy."

18

19 According to the Affidavit of William J. Paatalo, whose expert analysis states in regard to,
20 ResCap's [Aka the Government's] proof of claims before this bankruptcy Court, it states [see
21 Affidavit of William J. Paatalo page 4 line 25 to page 5 line 11.] "Furthermore, the Notes for each
22 loan that were attached to the proof of claims during the Boyd Bankruptcy (U.S. BK Ct. No. Dist.
23 CA – Case No. 11-61311-SLJ) do not contain endorsements as required in the HVMLT 2007-4
24 Trust Agreement, as no endorsements appear on the 'face' of either document. Dubious
25 endorsements, one of which is illegible, are provided on blank sheets of paper that have no
26 connection to the notes. .. b. The Boyd debts, which appear in 'Bankruptcy' status as of
27 10/14/2014 within the HVMLT 2007-4 Trust are not in default. All payments 'due' on the debts
28 are being timely paid to, and received by, the certificate holders /investors in the HVMLT 2007-4
29 Trust during the pendency of the Boyd bankruptcy".

30

31 Mr. Paatalo's analysis goes on to explain the reasoning for his findings in regards to the proof of
32 claims and payments issues with reference to his provided exhibits to provide supporting

ANSWER IN OPPOSITION TO OMNIBUS OBJECTION

evidence for his findings are described in more detail at pages 7 line 19 through to page 10 line 7 of the Affidavit of William J. Paatalo.

## Conclusions and Requests for Relief

Wherefore, for the reasons presented, I respectfully request the court deny and over rule the *ResCap Borrower Claims Trust's Seventy-Fifth Omnibus Objection to Claims (No Liability Borrower Claims)* (the "*Omnibus Objection*") filed September 17, 2014 as to Claim 960, and in the alternative the Court grant Claimant's claim on the basis of the facts presented, or any other relief the Court finds appropriate.

Also, I respectfully request the incorporation of requested additional Exhibits A, and B attached hereto.

/s/    Michael E. Boyd
Michael E. Boyd
5439 Soquel Drive
Soquel, CA 95073
Phone: (408) 891-9677
E-mail: michaelboyd@sbcglobal.net

DATED: October 14, 2014

## Affidavit of Michael Boyd

The original signed version of the Affidavit of William J Paatalo is en route via the mail and will be submitted immediately upon receipt.

I affirm under penalty of perjury that the above is true and correct. Executed on October 14, 2012 at Soquel, California.

/s/    Michael E. Boyd
Michael E. Boyd
5439 Soquel Drive
Soquel, CA 95073
Phone: (408) 891-9677
E-mail: michaelboyd@sbcglobal.net

DATED: October 14, 2014

ANSWER IN OPPOSITION TO OMNIBUS OBJECTION

**Michael E. Boyd**
**5439 Soquel Drive**
**Soquel, CA 95073**
**Phone: (408) 891-9677**
**E-mail: michaelboyd@sbcglobal.net**
*In Pro Per*

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

### CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2014 I electronically transmitted the attached

document – *Exhibit A* to *Answer in Opposition to the ResCap Borrower Claims Trust's Seventy-*

*Fifth Omnibus Objection to Claims (No Liability Borrower Claims) (the "Omnibus Objection"),*

*filed September 17, 2014* separately filed – to the Clerk's Office using the CM/ECF system for

filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

(a) counsel to the Debtors, Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, NY 10104 (Attention: Gary S. Lee, Norman S. Rosenbaum, Jordan A. Wishnew and Samantha Martin);
(b) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014 (Attention: Tracy Hope Davis, Linda A. Riffkin, and Brian S. Masumoto);
(c) the Office of the United States Attorney General, U.S. Department of Justice, 950 Pennsylvania Avenue NW, Washington, DC 20530-0001 (Attention: US Attorney General, Eric H. Holder, Jr.); (d) Office of the New York State Attorney General, The Capitol, Albany, NY 122240341 (Attention: Nancy Lord, Esq. and Enid N. Stuart, Esq.);
(e) Office of the U.S. Attorney for the Southern District of New York, One St. Andrews Plaza, New York, NY 10007 (Attention: Joseph N. Cordaro, Esq.);
(f) counsel for Ally Financial Inc., Kirkland & Ellis LLP, 153 East 53rd Street, New York, NY 10022 (Attention: Richard M. Cieri and Ray Schrock);
(g) counsel for the committee of unsecured creditors, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, NY 10036 (Attention: Kenneth Eckstein, Douglas Mannal, Stephen D. Zide and Joseph A. Shifer);
(h) counsel for Ocwen Loan Servicing, LLC, Clifford Chance US LLP, 31 West 52nd Street, New York, NY 10019 (Attention: Jennifer C. DeMarco and Adam Lesman);

EXHIBIT-5 OBJECTIONS II AND OPPOSITION OF MICHAEL BOYD

(i) counsel for Berkshire Hathaway Inc., Munger, Tolles & Olson LLP, 355 South Grand Avenue, Los Angeles, CA 90071 (Attention: Thomas Walper and Seth Goldman);

(j) Internal Revenue Service, P.O. Box 7346, Philadelphia, PA 19101-7346 (if by overnight mail, to 2970 Market Street, Mail Stop 5-Q30.133, Philadelphia, PA 19104-5016);

(k) Securities and Exchange Commission, New York Regional Office, 3 World Financial Center, Suite 400, New York, NY 10281-1022 (Attention: George S. Canellos, Regional Director); and

(l) counsel for Borrowers Claims Trust, Polsinelli, 900 Third Avenue, 21st Floor, New York, NY 10022 (Attention: Daniel J. Flanigan and Jason A. Nagi).

I hereby certify that I served the attached document by mail on the following, who are not registered participants of the CM/ECF System: NONE.

/s/   Michael E. Boyd
Michael E. Boyd
5439 Soquel Drive
Soquel, CA 95073
Phone: (408) 891-9677
E-mail: michaelboyd@sbcglobal.net

DATED: October 14, 2014

- 2 -

EXHIBIT-5 OBJECTIONS II AND OPPOSITION OF MICHAEL BOYD

1 | Michael E. Boyd
2 | 5439 Soquel Drive
Soquel, CA 95073
Phone: (408) 891-9677
3 | E-mail: michaelboyd@sbcglobal.net
In *Pro Per*

**United States Court Of Appeals**
**For The Ninth Circuit**

4 |

5 | MICHAEL E. BOYD;

6 |        Plaintiff-Appellant,

        v.

7 |

8 | GMAC Mortgage LLC, ET AL.,

9 |        Defendants-Appellee

Docket No. 12-17434

**Petition for Panel Rehearing**
(Fed. R. App. P. 40; 9th Cir. R. 40-1)

10 |
11 |
12 |
13 |
14 |
15 |
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |

# TABLE OF CONTENTS

Table of Contents......................................................................................................i

Table of Authorities.................................................................................................ii

1. Introduction and Statement of Counsel for Purpose of Request (Panel Rehearing) ..........1

1.1  A material point of fact or law was overlooked in the decision; ......................................1

1.2 An apparent conflict with another decision of the Court that was not addressed in the
        Memorandum. ....................................................................................................2

2. A material point of fact or law was overlooked in the decision; Defendants did not dispute
        the government ownership of Defendant GMAC beginning in 2008 and during the
        time foreclosure was initiated in 2011,  Defendant GMAC did not claim ownership
        until MERS transferred ownership in 2011, and Plaintiff-Appellant, respectfully
        seeks panel rehearing of the implications of that fact to Plaintiff's-Appellant's
        procedural due process rights,  right to judicial review, and the enforcement of the
        Supremacy Clause for Plaintiff-Appellant.................................................................3

2.1 "The district court properly dismissed Boyd's quiet title claim because Boyd stopped
        making payments on his loans, was not released of his obligations under the loans,
        and Boyd's deeds of trust authorized defendant to initiate foreclosures", Omitted
        facts. ..................................................................................................................5

2.2 "The district court properly dismissed Boyd's quiet title claim because Boyd stopped
        making payments on his loans, was not released of his obligations under the loans,
        and Boyd's deeds of trust authorized defendant to initiate foreclosures",  Omitted
        facts. ..................................................................................................................5

2.3 "The district court properly dismissed Boyd's claims related to two contracts as time-
        barred because the claims accrued in December 2006 and January 2007 when the
        contracts were formed, and Boyd did not file his original complaint until October
        2011",  Omitted facts.........................................................................................8

2.4 "The district court properly dismissed Boyd's claim for violation of California's Unfair
        Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, because Boyd failed to
        allege sufficient facts to state a plausible UCL claim on the basis of a living trust
        agreement between Boyd and his spouse",  Omitted facts. ...........................................9

2.5 "Dismissal of Boyd's due process claims was proper because nonjudicial foreclosure
        proceedings do not violate due process.' See *Apao v. Bank of N.Y.* , 324 F.3d 1091,
        1094-95 (9th Cir. 2003) (nonjudicial foreclosure was not state action and therefore
        did not implicate due process); *Garfinkle v. Superior Court* , 578 P.2d 925, 934 (Cal.
        1978) ('[N]onjudicial foreclosure of a deed of trust constitutes private action
        authorized by contract and does not come within the scope of the California due
        process clause.')." Omitted facts.................................................................10

3. An apparent conflict with another decision of the Court that was not addressed in the
        Memorandum. ..................................................................................................10

4. Conclusions .......................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*America Online, Inc. v. Superior* (2001) ................................................................ 7
*Armendariz v. Foundation Health Pyschcare Servs., Inc.* (2000) ......................... 7
*Atlas Roofing Co. v. OSHRC,* (1977) .................................................................... 14
*Crowell v. Benson,* (1932) .............................................................................. 14, 15
*Discover Bank,* (2005) ...................................................................................... 7, 8
*Dynes v. Hoover,* (1857) ...................................................................................... 14
*E.E.O.C. v. Waffle House, Inc.* (2002) .................................................................. 6
*Executive Benefits* .......................................................................................... passim
*Glidden Co. v. Zdanok,* (1962) ............................................................................ 14
*Gordon v. United States,* (1864) .......................................................................... 14
*In re Ross,* (1891) (consular courts in foreign countries) ..................................... 14
*Marbury v. Madison,* (1803) ................................................................................. 4
*McElrath v. United States* (1880) ........................................................................ 14
*NLRB v. Jones & Laughlin Steel Corp* 48 (1937) ............................................... 14
*Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., Aka, "Marathon"* (1982) ......... 11, 15
*Old Colony Trust Co. v. CIR* (1929); Ex Parte Bakelite Corp., (1929) ............... 14
*Perry v. Thomas,* (1987) ........................................................................................ 8
*Preston v. Ferrer,* (2008) ....................................................................................... 7
*Shelley v. Kramer,* (1948.) .................................................................................. 3, 5
*Stephens v. Cherokee Nation* 1 (1899) ................................................................ 14
*Stern v. Marshall,* (2011) .................................................................... 2, 11, 12, 13
*United States v. Coe,* (1894) (Court of Private Land Claims) ............................. 14
*Wallace v. Adams,* (1907) .................................................................................... 14
*Williams v. United States,* (1933) ....................................................................... 14

**Statutes**

285 U.S. 22 (1932) ................................................................................................ 14
Cal. Civ.Code Ann. § 1668 ..................................................................................... 7
Cal. Civ.Code Ann. § 1670.5(a) .............................................................................. 6
California's Unfair Competition Law ("UCL") ....................................................... 9
U.S. Code Title 28 Part I Chapter 6 § 157, 28 U.S. Code § 157 ......................... 12

**Other Authorities**

*Taxpayers Continue to Own 74% of GMAC ... - SIGTAR* ..................................... 4

**Regulations**

Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.), FAA § 2 ............................ 7
Fed. R. App. P. 40; 9th Cir. R. 40-1 ........................................................................ 1

**Constitutional Provisions**

Article VI, Clause 2, of the U.S. Constitution, Supremacy Clause ....................... 4
First Amendment [free speech], right to sue [petition] ............................................ 9
Judicial Review .............................................................................................. passim
Procedural due process right .......................................................................... passim

**United States Court Of Appeals**
**For The Ninth Circuit**

MICHAEL E. BOYD;

     Plaintiff-Appellant,

    v.

GMAC Mortgage LLC, ET AL.,

     Defendants-Appellee

Docket No. 12-17434

**Petition for Panel Rehearing**
(Fed. R. App. P. 40; 9th Cir. R. 40-1)

## 1. INTRODUCTION AND STATEMENT OF COUNSEL FOR PURPOSE OF REQUEST (PANEL REHEARING)

Plaintiff-Appellant, respectfully seeks panel rehearing on two grounds, a material point of fact or law was overlooked in the decision, and there is an apparent conflict with another decision of the Court that was not addressed in the Memorandum.

### 1.1 A MATERIAL POINT OF FACT OR LAW WAS OVERLOOKED IN THE DECISION;

Defendants did not dispute the government ownership of Defendant GMAC beginning in 2008 and during the time foreclosure was initiated in 2011, and Plaintiff-Appellant, respectfully seeks panel rehearing of the implications of that fact to Plaintiff's-Appellant's procedural due process rights,  right to judicial review, and the enforcement of the  Supremacy Clause by the Court.

Plaintiff-Appellant, respectfully seeks panel rehearing and clarification regarding the Court's August 22, 2014 Memorandum [from pages 2 to 3] in that regards as follows;

"The district court properly dismissed Boyd's quiet title claim because Boyd stopped making payments on his loans, was not released of his obligations under the loans, and Boyd's deeds of trust authorized defendant to initiate foreclosures."

1    "The district court properly dismissed Boyd's claims related to two contracts as time-

2    barred because the claims accrued in December 2006 and January 2007 when the contracts were

3    formed, and Boyd did not file his original complaint until October 2011."

4    "The district court properly dismissed Boyd's claim for violation of California's Unfair

5    Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, because Boyd failed to allege

6    sufficient facts to state a plausible UCL claim on the basis of a living trust agreement between

7    Boyd and his spouse."

8    "Dismissal of Boyd's due process claims was proper because nonjudicial foreclosure

9    proceedings do not violate due process. See *Apao v. Bank of N.Y,* 324 F.3d 1091, 1094-95 (9th

10    Cir. 2003) (nonjudicial foreclosure was not state action and therefore did not implicate due

11    process); *Garfinkle v. Superior Court,* 578 P.2d 925, 934 (Cal. 1978) ("[N]onjudicial foreclosure

12    of a deed of trust constitutes private action authorized by contract and does not come within the

13    scope of the California due process clause.")."

14    **1.2 AN APPARENT CONFLICT WITH ANOTHER DECISION OF THE COURT THAT**

15    **WAS NOT ADDRESSED IN THE MEMORANDUM.**

16    The U.S. Supreme Court on June 9, 2014 in *Executive Benefits Insurance Agency v.*

17    *Arkison,* 134 S. Ct. 2165, 573 US __, 189 L. Ed. 2d 83  limited somewhat the ramifications of its

18    landmark opinion two years ago in *Stern v. Marshall,* 131 S. Ct. 2594, 564 US 2, 180 L. Ed. 2d

19    475, (2011).

20    Plaintiff-Appellant, respectfully seeks panel rehearing and clarification regarding the

21    Court's August 22, 2014 Memorandum [from page 4] as follows; "The district court properly

22    denied both Boyd's motion for procedural relief and his attempt to remove this action to the

23    bankruptcy court, and appropriately considered his allegations"

24

**2. A MATERIAL POINT OF FACT OR LAW WAS OVERLOOKED IN THE DECISION; DEFENDANTS DID NOT DISPUTE THE GOVERNMENT OWNERSHIP OF DEFENDANT GMAC BEGINNING IN 2008 AND DURING THE TIME FORECLOSURE WAS INITIATED IN 2011, DEFENDANT GMAC DID NOT CLAIM OWNERSHIP UNTIL MERS TRANSFERRED OWNERSHIP IN 2011, AND PLAINTIFF-APPELLANT, RESPECTFULLY SEEKS PANEL REHEARING OF THE IMPLICATIONS OF THAT FACT TO PLAINTIFF'S-APPELLANT'S PROCEDURAL DUE PROCESS RIGHTS, RIGHT TO JUDICIAL REVIEW, AND THE ENFORCEMENT OF THE SUPREMACY CLAUSE FOR PLAINTIFF-APPELLANT.**

In Defendants first Motion to Dismiss regarding procedural due process right claims by Plaintiff they stated "Finally, Boyd claims that GMAC and MERS violated his due process rights. Compl. at 1:24-2:1. GMAC and MERS, however, are purely private entities. A due process claim requires governmental action. *See Shelley v. Kramer,* 334 U.S. 1, 14 (1948.) No authority exists to support a claim that any actions by these private defendants could constitute a governmental action that could potentially violate one's due process rights."[1]

Again restating the same in response to Plaintiff's First Amended Complaint [Document 52] Defendant stated "Finally, Boyd claims that GMAC and MERS violated his due process rights. Compl. at 1:24-2:1. GMAC and MERS, however, are purely private entities. A due process claim requires governmental action. See *Shelley v. Kramer,* 334 U.S. 1, 14 (1948.) No authority exists to support a claim that any actions by these private defendants could constitute a governmental action that could potentially violate one's due process rights. Consequently, any such claim here fails from the outset."[2]

---

[1] Document 9 Filed 11/09/11 Page 10 of 12 lines 22-26
[2] Document 58 Filed 06/25/12 Page 11 of 13 lines 6 to 10.

1        In Plaintiff's First Amended Complaint [Document 52] he  raised this issue of the

2  government's TARP largess in favor of Defendants, stating "STEP 12: CHEAT the US

3  Taxpayer: Use TARP to pay off lawsuits; get money to do Loan Mods Bank Servicers can't

4  legally make;"[3]

5        The fact is that Defendant GMAC is "74% owned by taxpayers,"[4] which is  relevant to the

6  separation of powers, the political doctrine of constitutional law under which the three branches

7  of government (executive, legislative, and judicial) are kept separate to prevent abuse of power.

8  Also known as the system of checks and balances, each branch is given certain powers so as to

9  check and balance the other branches.

10       Under this doctrine Judicial Review is the idea, fundamental to the US system of

11  government that the actions of the executive and legislative branches of government are subject to

12  review and possible invalidation by the judicial branch. Judicial review allows the Supreme Court

13  to take an active role in ensuring that the other branches of government abide by the constitution.

14  Judicial review was established in the classic case of *Marbury v. Madison*, 5 US 137 (1803).

15       A court's authority [including this one's] is to examine an executive or legislative act and

16  to invalidate that act if it is contrary to constitutional principles. The power of courts of law to

17  review the actions of the executive and legislative branches is fundamental to judicial review.

18  Though judicial review is usually associated with the U.S. Supreme Court, which has ultimate

19  judicial authority, it is a power possessed by most federal and state courts of law in the United

20  States. In the United States, the supremacy of national law is established by Article VI, Clause 2,

21  of the U.S. Constitution. Called the Supremacy Clause, it states that "This Constitution, and the

22  laws of the United States which shall be made in pursuance thereof … shall be the supreme law

23  of the land."

24  [3] Document 52 Filed 05/22/12 Page 7 of 20 lines 7 to 9.
[4] See http://www.sigtarp.gov/Audit%20Reports/Taxpayers_GMAC.pdf *Taxpayers Continue to Own 74% of GMAC … - SIGTAR*

**2.1 "THE DISTRICT COURT PROPERLY DISMISSED BOYD'S QUIET TITLE CLAIM BECAUSE BOYD STOPPED MAKING PAYMENTS ON HIS LOANS, WAS NOT RELEASED OF HIS OBLIGATIONS UNDER THE LOANS, AND BOYD'S DEEDS OF TRUST AUTHORIZED DEFENDANT TO INITIATE FORECLOSURES", OMITTED FACTS.**

Defendants Reply in Support of Motion to Dismiss stated "In their Motion to Dismiss, GMAC and MERS explained that, as non-governmental entities, they could not violate Boyd's due process rights, citing *Shelley v. Kramer* for the proposition that only the government could be responsible for such civil rights violations. *Shelley v. Kramer*, 334 U.S. 1, 14 (1948). In response, Boyd writes that 'in this case the sole question is whether there will be a taking of property without that procedural due process that is required by the Fourteenth Amendment.' Opp. 21:12-13."[5] The Court omitted the fact of Defendant GMAC's "Use TARP to pay off lawsuits", i.e., government largess that should trigger a higher, not lower, scrutiny towards the enforcement of the Supremacy Clause, for Plaintiff-Appellant.

**2.2 "THE DISTRICT COURT PROPERLY DISMISSED BOYD'S QUIET TITLE CLAIM BECAUSE BOYD STOPPED MAKING PAYMENTS ON HIS LOANS, WAS NOT RELEASED OF HIS OBLIGATIONS UNDER THE LOANS, AND BOYD'S DEEDS OF TRUST AUTHORIZED DEFENDANT TO INITIATE FORECLOSURES", OMITTED FACTS.**

The Court omitted the fact that Defendant GMAC did not claim ownership until MERS transferred ownership in 2011. Defendants Reply in Support of Motion to Dismiss admits "On January 16, 2007, Boyd refinanced the 2004 Soquel Loan, obtaining a new loan in the amount of

---

[5] Document 31 Filed 11/30/11 Page 3 of 6 lines 5 to 10 .

1   $647,000 (the '2007 Soquel Loan') from Plaza Home Mortgage, Inc. ('Plaza')"[6] and the Court

2   should note, not Defendant GMAC. "On February 22, 2011, MERS, in its capacity as beneficiary,

3   recorded an assignment transferring the beneficial interest in the DOT to GMAC." [7] "Boyd

4   refinanced this mortgage, obtaining a loan on December 22, 2006, again from Plaza, in the

5   amount of $515,000 (the "2006 Sunnyvale Loan"). This loan was secured by a Deed of Trust

6   ("Sunnyvale DOT") on the Sunnyvale Property. "[8] "On September 8, 2011, MERS recorded an

7   assignment transferring its beneficial interest in the Sunnyvale DOT to GMAC."[9]

8         In Defendants Motion to Dismiss Plaintiff's First Amended Complaint [excerpting] it

9   stated "Boyd's FAC is titled, in part, 'Complaint of Unconscionability Contract Adhesion,' it

10  patently fails to state a viable contract claim.[...] Boyd cannot state a claim for GMAC or

11  MERS's 'breach' of his Joint Living Trust agreement with his wife. Because GMAC and MERS

12  were not parties to this trust agreement, formed only by Boyd and his wife, they could not have

13  breached it. Thus, the FAC fails to state a claim for breach of contract. "It goes without saying

14  that a contract cannot bind a nonparty." *E.E.O.C. v. Waffle House, Inc.* 534 U.S. 279, 294,

15  (2002)."[10]

16        Under California law, courts may refuse to enforce any contract found "to have been

17  unconscionable at the time it was made," or may "limit the application of any unconscionable

18  clause." Cal. Civ.Code Ann. § 1670.5(a) (West 1985). A finding of unconscionability requires "a

19  `procedural' and a `substantive' element, the former focusing on `oppression' or `surprise' due to

20  unequal bargaining power, the latter on `overly harsh' or `one-sided' results." *Armendariz v.*

21

22

23  ─────────────────
    [6] Document 9 Filed 11/09/11 Page 3 of 12 lines 23 - 25.
    [7] Document 9 Filed 11/09/11 Page 4 of 12 lines 3 - 4.
24  [8] Document 9 Filed 11/09/11 Page 4 of 12 lines 20-23.
    [9] Document 9 Filed 11/09/11 Page 5 of 12 lines 1-2.
    [10] Document 58 Filed 06/25/12 Page 9 lines 9 and 10, and Page 10 of 13 lines 11 to 15.

1   *Foundation Health Pyschcare Servs., Inc.* 24 Cal.4th 83, 114, 99 Cal. Rptr.2d 745, 6 P.3d 669,

2   690 (2000); accord, *Discover Bank*, 36 Cal.4th, at 159-161, 30 Cal.Rptr.3d 76, 113 P.3d, at 1108.

3   In *Discover Bank*, 30 Cal.Rptr.3d 76 (2005) the California Supreme Court applied this framework

4   to class-action waivers in arbitration agreements and held as follows:

5       "[W]hen the waiver is found in a consumer contract of adhesion in a setting in which

6   disputes between the contracting parties predictably involve small amounts of damages, and when

7   it is alleged that the party with the superior bargaining power has carried out a scheme to

8   deliberately cheat large numbers of consumers out of individually small sums of money, then ...

9   the waiver becomes in practice the exemption of the party `from responsibility for [its] own fraud,

10   or willful injury to the person or property of another.' Under these circumstances, such waivers

11   are unconscionable under California law and should not be enforced." *Id.*, at 162, 30 Cal.Rptr.3d

12   76, 113 P.3d, at 1110 (quoting Cal. Civ.Code Ann. § 1668).

13       *Discover Bank* rule, given its origins in California's unconscionability doctrine and

14   California's policy against exculpation, is a ground that "exist[s] at law or in equity for the

15   revocation of any contract" under FAA § 2.[11] Moreover, they argue that even if we construe the

16   *Discover Bank* rule as a prohibition on collective-action waivers rather than simply an application

17   of unconscionability, the rule would still be applicable to all dispute-resolution contracts, since

18   California prohibits waivers of class litigation as well. See *America Online, Inc. v. Superior*

19   1747*1747 Ct., 90 Cal.App.4th 1, 17-18, 108 Cal.Rptr.2d 699, 711-713 (2001).

20       When state law prohibits outright the arbitration of a particular type of claim, the analysis

21   is straightforward: The conflicting rule is displaced by the FAA. *Preston v. Ferrer*, 552 U.S. 346,

22   353, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008). But the inquiry becomes more complex when a

23   doctrine normally thought to be generally applicable, such as duress or, as relevant here,

24

---

[11] Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.)

7                     REHEARING REQUEST   NINTH CIRCUIT DOCKET NO. 12-17434

unconscionability, is alleged to have been applied in a fashion that disfavors arbitration. In *Perry v. Thomas*, 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987), for example, we noted that the FAA's preemptive effect might extend even to grounds traditionally thought to exist '"at law or in equity for the revocation of any contract."' *Id.*, at 492, n. 9, 107 S.Ct. 2520 (emphasis deleted). We said that a court may not "rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what ... the state legislature cannot." *Id.*, at 493, n. 9, 107 S.Ct. 2520.

An obvious illustration of this point would be a case finding unconscionable or unenforceable as against public policy consumer arbitration agreements that fail to provide for judicially monitored discovery. The rationalizations for such a holding are neither difficult to imagine nor different in kind from those articulated in *Discover Bank*. A court might reason that no consumer would knowingly waive his right to full discovery, as this would enable companies to hide their wrongdoing. Or the court might simply say that such agreements are exculpatory— restricting discovery would be of greater benefit to the company than the consumer, since the former is more likely to be sued than to sue. See *Discover Bank*, supra, at 161, 30 Cal. Rptr.3d 76, 113 P.3d, at 1109 (arguing that class waivers are similarly one-sided). And, the reasoning would continue, because such a rule applies the general principle of unconscionability or public-policy disapproval of exculpatory agreements, it is applicable to "any" contract and thus preserved by § 2 of the FAA. In practice, of course, the rule would have a disproportionate impact on arbitration agreements; but it would presumably apply to contracts purporting to restrict discovery in litigation as well.

**2.3 "THE DISTRICT COURT PROPERLY DISMISSED BOYD'S CLAIMS RELATED TO TWO CONTRACTS AS TIME-BARRED BECAUSE THE CLAIMS ACCRUED IN DECEMBER 2006 AND JANUARY 2007 WHEN THE CONTRACTS WERE FORMED,**

1 **AND BOYD DID NOT FILE HIS ORIGINAL COMPLAINT UNTIL OCTOBER 2011",**

2 **OMITTED FACTS.**

3    The Court omitted the fact that Defendant GMAC did not claim ownership until MERS

4 transferred ownership in 2011, and Plaintiff would have had no cause of action against GMAC

5 otherwise for his payments to Defendant GMAC in the intervening time periods. Because of

6 government ownership of GMAC instigated during that intervening period Plaintiff is entitled to a

7 greater scrutiny by the Court of his protected Constitutional Rights, including procedural due

8 process rights, the right to judicial review, and the right to enjoy his rights under the First

9 Amendment [free speech], including the right to sue [petition the government for grievances].

10 **2.4 "THE DISTRICT COURT PROPERLY DISMISSED BOYD'S CLAIM FOR**

11 **VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL"), CAL. BUS.**

12 **& PROF. CODE § 17200, BECAUSE BOYD FAILED TO ALLEGE SUFFICIENT FACTS**

13 **TO STATE A PLAUSIBLE UCL CLAIM ON THE BASIS OF A LIVING TRUST**

14 **AGREEMENT BETWEEN BOYD AND HIS SPOUSE", OMITTED FACTS.**

15    This claim was against Defendant GMAC and the Court omitted the fact that Defendant

16 GMAC did not claim ownership until MERS transferred ownership in 2011, and Plaintiff would

17 have had no cause of action against GMAC otherwise, besides for his payments to Defendant

18 GMAC in the intervening time periods, when they had no title to his property. The Court also

19 omitted the fact that Defendants admitted that Plaintiff's Plaza loans (2 each) should have been

20 with Plaintiff, in his capacity as a Trustee to his estate, held in a Living Trust, in Defendants

21 Motion to Dismiss Plaintiff's First Amended Complaint, stating "Boyd may also be attempting to

22 argue that the deeds of trust for the Soquel and Sunnyvale Properties were invalid because only

23 the trustee to the Joint Living Trust had the authority to enter into contracts regarding

24 management of the properties. FAC at 10. The problem with this argument is that Boyd was the

9

1   trustee to the living trust. FAC at 10, Exhibit A to FAC. He thus had authority to enter into both

2   deeds of trust. He cannot now claim that although his name is on the deed of trust, 'the DOT was

3   not signed by Plaintiff in his capacity as a living trustee.' FAC at 10."[12] That's exactly what

4   Plaintiff-Appellant has maintained to be the case, otherwise there would be no purpose to creating

5   a living trust in the first instance, since the only way to use it to protect your estate, from claims

6   like Defendants, would be if you were dead.

7   **2.5 "DISMISSAL OF BOYD'S DUE PROCESS CLAIMS WAS PROPER BECAUSE**

8   **NONJUDICIAL FORECLOSURE PROCEEDINGS DO NOT VIOLATE DUE PROCESS.'**

9   **SEE *APAO V. BANK OF N.Y.* , 324 F.3D 1091, 1094-95 (9TH CIR. 2003) (NONJUDICIAL**

10   **FORECLOSURE WAS NOT STATE ACTION AND THEREFORE DID NOT**

11   **IMPLICATE DUE PROCESS); *GARFINKLE V. SUPERIOR COURT* , 578 P.2D 925, 934**

12   **(CAL. 1978) ('[N]ONJUDICIAL FORECLOSURE OF A DEED OF TRUST**

13   **CONSTITUTES PRIVATE ACTION AUTHORIZED BY CONTRACT AND DOES NOT**

14   **COME WITHIN THE SCOPE OF THE CALIFORNIA DUE PROCESS CLAUSE.')."**

15   **OMITTED FACTS.**

16       This claim was against Defendant GMAC and the Court omitted the fact that Defendant

17   GMAC did not claim ownership until MERS transferred ownership in 2011. The Court omitted

18   the facts of the federal government's TARP largess in favor of Defendants, and the government's

19   74% ownership of Defendant GMAC too.

20   **3. AN APPARENT CONFLICT WITH ANOTHER DECISION OF THE COURT THAT**

21   **WAS NOT ADDRESSED IN THE MEMORANDUM.**

22

23

24

---

[12] Document 58 Filed 06/25/12 Page 10 of 13 lines 16 to 21.

10

1    The U.S. Supreme Court on June 9, 2014 in *Executive Benefits Insurance Agency v.*

2    *Arkison,*[13] 134 S. Ct. 2165, 573 US ___, 189 L. Ed. 2d 83, limited somewhat the

3    ramifications of its landmark opinion two years ago in *Stern v. Marshall,* 131 S. Ct. 2594,

4    564 US 2, 180 L. Ed. 2d 475, (2011).

5    Plaintiff-Appellant, respectfully seeks panel rehearing and clarification regarding the

6    Court's August 22, 2014 Memorandum [from page 4] as follows; "The district court properly

7    denied both Boyd's motion for procedural relief and his attempt to remove this action to the

8    bankruptcy court, and appropriately considered his allegations".

9    The current structure of the federal bankruptcy courts dates back to the last complete

10    overhaul of federal bankruptcy law in 1978. At that time, Congress created the bankruptcy courts

11    pursuant to its authority under Article I of the Constitution to establish uniform laws on

12    bankruptcy. But in *Northern Pipeline Construction,* the Court held that the exercise of federal

13    judicial power could only be undertaken by judges appointed under Article III of the Constitution,

14    noting that the exceptions to that rule were territorial courts, military tribunals, and cases

15    involving "public" rights. As Plaintiff-Appellant pointed out Defendant GMAC is "74% owned

16    by taxpayers"; which is relevant to the separation of powers and therefore provides evidence to

17    support the bankruptcy courts jurisdiction over this as a case involving "public" rights. Inapposite

18    *Northern Pipeline* involved a common law breach of contract dispute commenced by a company

19    that happened to be in bankruptcy. However, although it struck down the ability of a non-Article

20    III bankruptcy court judge to make a final determination in an action that clearly pertained to a

21    "private" state common law right, the Court strongly suggested that the system of Article I

22    bankruptcy courts was itself permissible, stating that "the restructuring of debtor-creditor

23

24
_____

[13] See http://www.supremecourt.gov/opinions/13pdf/12-1200_2035.pdf

11                                                    REHEARING REQUEST   NINTH CIRCUIT DOCKET NO. 12-17434

1  relations, which is at the core of federal bankruptcy power," in likelihood constituted the type of

2  "public" rights which could be heard and decided by an Article I judge.

3  The question of what constitutes a "public" right has never been clear. Some earlier cases

4  had suggested that the scope of a "public" right was fairly narrow, involving only rights between

5  individuals and the government. Other cases suggested broader parameters. Although the Court in

6  **Northern Pipeline** did not expressly state that "the restructuring of debtor-creditor relations"

7  under federal bankruptcy law actually constituted a "public" right, Congress accepted the Court's

8  evident suggestion and in 1984 granted new jurisdictional authority to the United States

9  Bankruptcy Courts. Under Section 157[14](b) of the Bankruptcy Act of 1984, bankruptcy court

10  judges became authorized to render final decisions in "core" matters under the Bankruptcy Code.

11  Section 157(c) directed bankruptcy court judges to hear and submit findings of fact and

12  conclusions of law to Article III district court judges with respect to "non-core" matters.

13  Even though the Court never ruled on the constitutionality of the "core" and "non-core"

14  bankruptcy jurisdictional construct, in other cases involving Article I tribunals the Court took an

15  expansive view of the "public" rights doctrine, one that certainly appeared to be broad enough to

16  encompass the list of "core" matters enumerated in the Bankruptcy Act of 1984. The separation

17  of powers issues raised by **Northern Pipeline** appeared to have been laid to rest. Therefore, the

18  Court's ruling in **Stern**, that a matter could be a "core" matter under Section 157(b) but also not

19  be a "public" right and thus not subject to final adjudication by an Article I bankruptcy court

20  judge, was completely unexpected. **Executive Benefits** raised the possibility that the Court would

21  go further by striking down the constitutionality of the "core" and "non-core" construct, and by

22  strictly circumscribing the power of Article I bankruptcy judges.

23

24

---

[14] U.S. Code Title 28 Part I Chapter 6 § 157, 28 U.S. Code § 157.

12

1    The dispute in *Executive Benefit* involved a fraudulent transfer lawsuit. Although such an

2    action is listed as a "core" matter under the Bankruptcy Act of 1984, the Ninth Circuit determined

3    (and the Court assumed for purposes of the opinion) that it does not fit within the parameters of a

4    "public" right under *Stern* and could not be adjudicated by a non-Article III judge. However, the

5    Ninth Circuit also held that the bankruptcy court could prepare recommendations for review by

6    the district court even though Section 157(b) of the Bankruptcy Act of 1984 does not explicitly

7    authorize bankruptcy judges to submit proposed findings and conclusions in a "core" proceeding

8    (as Section 157(c) does for "non-core" proceedings). It also held that the right to have a matter

9    heard by an Article III judge was an individual right that could be waived, and that the defendant

10   had implicitly consented to bankruptcy court jurisdiction.

11   Because the dispute in *Executive Benefits* was subsequently reviewed by an Article III

12   district court judge, the Court ruled that there was no need to address the separate constitutional

13   question of whether the right to have a matter heard by an Article III judge was an individual

14   right that could be waived.

15   In Case #: 5:11-cv-05018-PSG *Michael Boyd v. GMAC Mortgage LLC, et al.* Plaintiff-

16   Appellant was before <u>Magistrate</u> Judge Paul Singh Grewal, Cause: 15:1601, Truth in Lending. So

17   Plaintiff-Appellant remains confused over who has the ball here[15] in this case, the Article I

18   <u>Magistrate</u> Judge Paul Singh Grewal,[16] Case #: 5:11-cv-05018-PSG *Michael Boyd v. GMAC*

19   *Mortgage LLC, et al.*, the Article I Judge Martin Glenn, U.S. Bankruptcy Court Southern District

20   of New York (Manhattan), Bankruptcy Petition #: 12-12020-mg, or the Article III judges at the

21   U.S. Court of Appeals for the 9th Circuit, Case # 12-17434, *Michael Boyd v. GMAC Mortgage*

22   *LLC, et al.*

23

24   ------

[15] Another words, is Judicial Review under the Supremacy Clause limited to Article III judges only?
[16] Did Magistrate Judge Paul Singh Grewal ever have authority to hold the ball after Plaintiff requested transfer to the Bankruptcy Court?

13                                        REHEARING REQUEST   NINTH CIRCUIT DOCKET NO. 12-17434

1    Even a narrow ruling for the petitioner in *Executive Benefits*– that bankruptcy courts lack

2    statutory authority to issue findings of fact and conclusions of law for review by an Article III

3    district court judge with respect to "core" matters that fall beyond the scope of "public" rights that

4    Article I judges may permissibly determine – could have wreaked havoc on the bankruptcy courts

5    and placed huge burdens on district court judges. Such a ruling also would have raised questions

6    about the wide-spread use of federal magistrates[17] (who are also Article I judges) to hear and

7    determine a wide array of criminal and civil matters.

8        Among the matters susceptible of judicial determination, but not requiring it, are claims

9    against the United States,[18] the disposal of public lands and claims arising therefrom,[19] questions

10   concerning membership in the Indian tribes,[20] and questions arising out of the administration of

11   the customs and internal revenue laws.[21] Other courts similar to territorial courts, such as consular

12   courts and military courts martial, may be justified on like grounds.[22]

13       The "public rights" distinction appears today to be a description without a significant

14   distinction. Thus, in *Crowell v. Benson*,[23] the Court approved an administrative scheme for

15   determination, subject to judicial review, of maritime employee compensation claims, although it

16   acknowledged that the case involved "one of private right, that is, of the liability of one individual

17   to another under the law as defined."[24] This scheme was permissible, the Court said, because in

18

19   [17] Same question here as in footnote 16.
     [18] *Gordon v. United States*, 117 U.S. 697 (1864); *McElrath v. United States*, 102 U.S. 426 (1880); *Williams v.*
20   *United States*, 289 U.S. 553 (1933). On the status of the then–existing Court of Claims, see *Glidden Co. v. Zdanok*,
     370 U.S. 530 (1962).
     [19] *United States v. Coe*, 155 U.S. 76 (1894) (Court of Private Land Claims).
21   [20] *Wallace v. Adams*, 204 U.S. 415 (1907); *Stephens v. Cherokee Nation*, 174 U.S. 445 (1899) (Choctaw and
     Chickasaw Citizenship Court).
22   [21] *Old Colony Trust Co. v. CIR*, 279 U.S. 716 (1929); Ex Parte Bakelite Corp., 279 U.S. 438 (1929).
     [22] See *In re Ross*, 140 U.S. 453 (1891) (consular courts in foreign countries). Military courts may, on the other hand,
23   be a separate entity of the military having no connection to Article III. *Dynes v. Hoover*, 20 How. (61 U.S.) 65, 79
     (1857).
24   [23] 285 U.S. 22 (1932).
     [24] *Id.* 51. On the constitutional problems of assignment to an administrative agency, see *Atlas Roofing Co. v.*
     *OSHRC*, 430 U.S. 442 (1977); *NLRB v. Jones & Laughlin Steel Corp*, 301 U.S. 1, 48 (1937). 285 U.S. 22 (1932).

     14                              REHEARING REQUEST  NINTH CIRCUIT DOCKET NO. 12-17434

1   cases arising out of congressional statutes, an administrative tribunal could make findings of fact

2   and render an initial decision of legal and constitutional questions, as long as there is adequate

3   review in a constitutional court.[25] The "essential attributes" of decision must remain in an Article

4   III court, but so long as it does, Congress may utilize administrative decisionmakers in those

5   private rights cases that arise in the context of a comprehensive federal statutory scheme.[26] That

6   the "public rights" distinction marked a dividing line between those matters that could be

7   assigned to legislative courts and to administrative agencies and those matters "of private right"

8   that could not be was reasserted in *Marathon*, but there was much the Court plurality did not

9   explain.[27]

10   **4. CONCLUSIONS**

11        For all the reasons presented Plaintiff-Appellant requests that rehearing be granted.

12   Respectfully submitted,

13   /s/ Michael E. Boyd
     Michael E. Boyd
14   5439 Soquel Drive
     Soquel, CA 95073
15   *In Pro Per*
     DATED:  September 4, 2014

16

17

18

19

20   _____

     [25] *Id.*, 51–65.

21   [26] *Id.*, 50, 51, 58–63. Thus, Article III concerns were satisfied by a review of the agency fact finding upon the
     administrative record. Id., 63–65. The plurality opinion denied the validity of this approach in *Northern Pipeline*
22   *Constr. Co. v. Marathon Pipe Line Co*, 458 U.S. 50, 86 n. 39 (1982), although Justice white in dissent accepted it.
     *Id.*, 115. The plurality, rather, rationalized *Crowell* and subsequent cases on an analysis seeking to ascertain whether
23   agencies or Article I tribunals were "adjuncts" of Article III courts, that is, whether Article III courts were
     sufficiently in charge to protect constitutional values. Id., 76–87.
     [27] *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*458 U.S. 50, 67–70 (1982) (plurality opinion). Thus,
24   Justice Brennan states that at a minimum a matter of public right must arise "'between the government and others'"
     but that the presence of the United States as a proper party to the proceeding is a necessary but not sufficient means
     to distinguish "private rights." Id., 69 & n. 23. *Crowell v. Benson*, however, remained an embarrassing presence.

**Certificate of Service**

1

2  Case Name: MICHAEL E. BOYD; v. GMAC Mortgage LLC, ET AL.,

3  9th Cir. Case No.: 12-17434

4       I certify that a copy of **Petition for Panel Rehearing** and any attachment **Certificate of**

5  **Service** was served, either in person or by mail, on the persons listed

6  below.

7                    M. ELIZABETH HOLT, ESQ. Counsel for Defendants
                     GMAC Mortgage LLC and Mortgage Electronic Registration
8                    Systems, Inc.; Severson & Werson, A Professional Corporation;
                     One Embarcadero Center, Suite 2600
9                    San Francisco, CA 94111

10                   Devin Derham-Burk, Trustee
                     Chapter 13 Case #11-61311
11                   P.O. 396069,
                     San Francisco, CA 94139-6069

12
                                                    /s/ Michael E. Boyd
13                                          By:_____
                                                       Michael E. Boyd

14
                                            Plaintiff, in *Pro Per*
15                                          Michael E. Boyd
                                            5439 Soquel Drive
16                                          Soquel, CA 95073
                                            Phone: (408) 891-9677
17                                          E-mail: michaelboyd@sbcglobal.net

18  September 4, 2014

19

20

21

22

23

24

- 1 -                                          REHEARING REQUEST   NINTH CIRCUIT DOCKET NO. 12-17434

**FILED**

**NOT FOR PUBLICATION**

AUG 22 2014

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MICHAEL E. BOYD, | No. 12-17434 |
| Plaintiff - Appellant, | D.C. No. 5:11-cv-05018-PSG |
| v. | |
| GMAC MORTGAGE LLC; MORTGAGE ELECTRONIC REGISTRATION SERVICES, INC., | MEMORANDUM[*] |
| Defendants - Appellees. | |

Appeal from the United States District Court
for the Northern District of California
Paul S. Grewal, Magistrate Judge, Presiding[**]

Submitted August 13, 2014[***]

Before:   SCHROEDER, THOMAS, and HURWITZ, Circuit Judges.

Michael E. Boyd appeals pro se from the district court's judgment

---

[*]   This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]   The parties consented to proceed before a magistrate judge. *See* 28 U.S.C. § 636(c).

[***]   The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

dismissing his action alleging various claims concerning two mortgage loan agreements. We have jurisdiction under 28 U.S.C. § 1291. We review de novo. *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1040 (9th Cir. 2011). We may affirm on any ground supported by the record, *Thompson v. Paul*, 547 F.3d 1055, 1058-59 (9th Cir. 2008), and we affirm.

The district court properly dismissed Boyd's quiet title claim because Boyd stopped making payments on his loans, was not released of his obligations under the loans, and Boyd's deeds of trust authorized defendant to initiate foreclosures. *See* Cal. Civ. Code § 2924(a)(1); *see also Gomes v. Countrywide Home Loans, Inc.*, 121 Cal. Rptr. 3d 819, 823-24 (Ct. App. 2011) (California law does not "provide for a judicial action to determine whether the person initiating the foreclosure process is indeed authorized").

The district court properly dismissed Boyd's claims related to two contracts as time-barred because the claims accrued in December 2006 and January 2007 when the contracts were formed, and Boyd did not file his original complaint until October 2011. *See* Cal. Civ. Proc. Code § 337 (setting forth four year limitations period).

The district court properly dismissed Boyd's claim for violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200,

12-17434

because Boyd failed to allege sufficient facts to state a plausible UCL claim on the basis of a living trust agreement between Boyd and his spouse. *See E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty.").

Dismissal of Boyd's due process claims was proper because nonjudicial foreclosure proceedings do not violate due process. *See Apao v. Bank of N.Y.*, 324 F.3d 1091, 1094-95 (9th Cir. 2003) (nonjudicial foreclosure was not state action and therefore did not implicate due process); *Garfinkle v. Superior Court*, 578 P.2d 925, 934 (Cal. 1978) ("[N]onjudicial foreclosure of a deed of trust constitutes private action authorized by contract and does not come within the scope of the California due process clause.").

Because Boyd did not file a motion pursuant to Fed. R. Civ. P. 7(b) with the lis pendens filed with his complaint, the district court did not err in taking no action on Boyd's lis pendens, and even assuming a proper motion had been filed, there was no pending cause of action which would affect title to specific real property. *See* Fed. R. Civ. P. 7(b) ("A request for a court order must be made by motion."); *see also* Cal. Civ. Proc. Code § 405.4 (defining "real property claim"); Cal. Civ. Proc. Code § 405.21 (a pro se litigant must seek court approval in order to record a lis pendens); *Kirkeby v. Superior Court*, 93 P.3d 395, 398-99 (Cal.

12-17434

2004) (courts must assess whether the pleading alleges a real property claim).

Boyd's appeal of the denial of his motions for injunctive relief is moot. *See
Mt. Graham Red Squirrel v. Madigan*, 954 F.2d 1441, 1450 (9th Cir. 1992) (when
underlying claims have been decided, the reversal of a denial of preliminary relief
would have no practical consequences, and the issue is therefore moot).

The district court properly denied both Boyd's motion for procedural relief
and his attempt to remove this action to the bankruptcy court, and appropriately
considered his allegations and applied the correct standard for dismissal under Fed.
R. Civ. P. 12(b)(6).

We do not consider arguments raised for the first time on appeal, including
Boyd's arguments concerning a First Amendment right to a court of one's
choosing. *See Padgett v. Wright*, 587 F.3d 983, 985 n.2 (9th Cir. 2009) (per
curiam).

**AFFIRMED.**

12-17434

## United States Court of Appeals for the Ninth Circuit

### Office of the Clerk
95 Seventh Street
San Francisco, CA 94103

## Information Regarding Judgment and Post-Judgment Proceedings

**Judgment**
- This Court has filed and entered the attached judgment in your case.
  Fed. R. App. P. 36.  Please note the filed date on the attached
  decision because all of the dates described below run from that date,
  not from the date you receive this notice.

**Mandate (Fed. R. App. P. 41; 9th Cir. R. 41-1 & -2)**
- The mandate will issue 7 days after the expiration of the time for
  filing a petition for rehearing or 7 days from the denial of a petition
  for rehearing, unless the Court directs otherwise.  To file a motion to
  stay the mandate, file it electronically via the appellate ECF system
  or, if you are a pro se litigant or an attorney with an exemption from
  using appellate ECF, file one original motion on paper.

**Petition for Panel Rehearing  (Fed. R. App. P. 40; 9th Cir. R. 40-1)**
**Petition for Rehearing En Banc (Fed. R. App. P. 35; 9th Cir. R. 35-1 to -3)**

**(1)   A.   Purpose (Panel Rehearing):**
- A party should seek panel rehearing only if one or more of the following
  grounds exist:
  - ▶ A material point of fact or law was overlooked in the decision;
  - ▶ A change in the law occurred after the case was submitted which
    appears to have been overlooked by the panel; or
  - ▶ An apparent conflict with another decision of the Court was not
    addressed in the opinion.
- Do not file a petition for panel rehearing merely to reargue the case.

**B.   Purpose (Rehearing En Banc)**
- A party should seek en banc rehearing only if one or more of the following
  grounds exist:

> ► Consideration by the full Court is necessary to secure or maintain uniformity of the Court's decisions; or
> ► The proceeding involves a question of exceptional importance; or
> ► The opinion directly conflicts with an existing opinion by another court of appeals or the Supreme Court and substantially affects a rule of national application in which there is an overriding need for national uniformity.

**(2)   Deadlines for Filing:**
- A petition for rehearing may be filed within 14 days after entry of judgment. Fed. R. App. P. 40(a)(1).
- If the United States or an agency or officer thereof is a party in a civil case, the time for filing a petition for rehearing is 45 days after entry of judgment. Fed. R. App. P. 40(a)(1).
- If the mandate has issued, the petition for rehearing should be accompanied by a motion to recall the mandate.
- *See* Advisory Note to 9th Cir. R. 40-1 (petitions must be received on the due date).
- An order to publish a previously unpublished memorandum disposition extends the time to file a petition for rehearing to 14 days after the date of the order of publication or, in all civil cases in which the United States or an agency or officer thereof is a party, 45 days after the date of the order of publication. 9th Cir. R. 40-2.

**(3)   Statement of Counsel**
- A petition should contain an introduction stating that, in counsel's judgment, one or more of the situations described in the "purpose" section above exist. The points to be raised must be stated clearly.

**(4)   Form & Number of Copies (9th Cir. R. 40-1; Fed. R. App. P. 32(c)(2))**
- The petition shall not exceed 15 pages unless it complies with the alternative length limitations of 4,200 words or 390 lines of text.
- The petition must be accompanied by a copy of the panel's decision being challenged.
- An answer, when ordered by the Court, shall comply with the same length limitations as the petition.
- If a pro se litigant elects to file a form brief pursuant to Circuit Rule 28-1, a petition for panel rehearing or for rehearing en banc need not comply with Fed. R. App. P. 32.

- The petition or answer must be accompanied by a Certificate of Compliance found at Form 11, available on our website at www.ca9.uscourts.gov under *Forms*.
- You may file a petition electronically via the appellate ECF system. No paper copies are required unless the Court orders otherwise. If you are a pro se litigant or an attorney exempted from using the appellate ECF system, file one original petition on paper. No additional paper copies are required unless the Court orders otherwise.

## Bill of Costs (Fed. R. App. P. 39, 9th Cir. R. 39-1)
- The Bill of Costs must be filed within 14 days after entry of judgment.
- See Form 10 for additional information, available on our website at www.ca9.uscourts.gov under *Forms*.

## Attorneys Fees
- Ninth Circuit Rule 39-1 describes the content and due dates for attorneys fees applications.
- All relevant forms are available on our website at www.ca9.uscourts.gov under *Forms* or by telephoning (415) 355-7806.

## Petition for a Writ of Certiorari
- Please refer to the Rules of the United States Supreme Court at www.supremecourt.gov

## Counsel Listing in Published Opinions
- Please check counsel listing on the attached decision.
- If there are any errors in a published opinion, please send a letter **in writing within 10 days** to:
  - ▶ Thomson Reuters; 610 Opperman Drive; PO Box 64526; St. Paul, MN 55164-0526 (Attn: Jean Green, Senior Publications Coordinator);
  - ▶ and electronically file a copy of the letter via the appellate ECF system by using "File Correspondence to Court," or if you are an attorney exempted from using the appellate ECF system, mail the Court one copy of the letter.

Form 10. Bill of Costs .................................................................................*(Rev. 12-1-09)*

## United States Court of Appeals for the Ninth Circuit

## BILL OF COSTS

**Note:**  If you wish to file a bill of costs, it MUST be submitted on this form and filed, with the clerk, with proof of service, within 14 days of the date of entry of judgment, and in accordance with 9th Circuit Rule 39-1. A late bill of costs must be accompanied by a motion showing good cause. Please refer to FRAP 39, 28 U.S.C. § 1920, and 9th Circuit Rule 39-1 when preparing your bill of costs.

v. 　　　　　　　　　　　　9th Cir. No.

The Clerk is requested to tax the following costs against:

| Cost Taxable under FRAP 39, 28 U.S.C. § 1920, 9th Cir. R. 39-1 | REQUESTED Each Column Must Be Completed | | | | ALLOWED To Be Completed by the Clerk | | | |
|---|---|---|---|---|---|---|---|---|
| | No. of Docs. | Pages per Doc. | Cost per Page* | TOTAL COST | No. of Docs. | Pages per Doc. | Cost per Page* | TOTAL COST |
| Excerpt of Record | | | $ | $ | | | $ | $ |
| Opening Brief | | | $ | $ | | | $ | $ |
| Answering Brief | | | $ | $ | | | $ | $ |
| Reply Brief | | | $ | $ | | | $ | $ |
| Other** | | | $ | $ | | | $ | $ |
| | | | TOTAL: | $ | | | TOTAL: | $ |

\* Costs per page may not exceed .10 or actual cost, whichever is less. 9th Circuit Rule 39-1.

\*\* Other: Any other requests must be accompanied by a statement explaining why the item(s) should be taxed pursuant to 9th Circuit Rule 39-1.  Additional items without such supporting statements will not be considered.

Attorneys' fees **cannot** be requested on this form.

*Continue to next page.*

**Form 10. Bill of Costs - _Continued_**

I, _____, swear under penalty of perjury that the services for which costs are taxed
were actually and necessarily performed, and that the requested costs were actually expended as listed.

Signature _____

("s/" plus attorney's name if submitted electronically)

Date _____

Name of Counsel: _____

Attorney for: _____

---

(To Be Completed by the Clerk)

Date _____     Costs are taxed in the amount of $ _____

Clerk of Court

By: _____ , Deputy Clerk

**Michael E. Boyd**
**5439 Soquel Drive**
**Soquel, CA 95073**
**Phone: (408) 891-9677**
**E-mail: michaelboyd@sbcglobal.net**
*In Pro Per*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**CERTIFICATE OF SERVICE**

I hereby certify that on October 15, 2014 I electronically transmitted the attached

document – *Exhibit B* to *Answer in Opposition to the ResCap Borrower Claims Trust's Seventy-*

*Fifth Omnibus Objection to Claims (No Liability Borrower Claims) (the "Omnibus Objection"),*

*filed September 17, 2014* separately filed – to the Clerk's Office using the CM/ECF system for

filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

    (a) counsel to the Debtors, Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, NY 10104 (Attention: Gary S. Lee, Norman S. Rosenbaum, Jordan A. Wishnew and Samantha Martin);
    (b) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014 (Attention: Tracy Hope Davis, Linda A. Riffkin, and Brian S. Masumoto);
    (c) the Office of the United States Attorney General, U.S. Department of Justice, 950 Pennsylvania Avenue NW, Washington, DC 20530-0001 (Attention: US Attorney General, Eric H. Holder, Jr.); (d) Office of the New York State Attorney General, The Capitol, Albany, NY 122240341 (Attention: Nancy Lord, Esq. and Enid N. Stuart, Esq.);
    (e) Office of the U.S. Attorney for the Southern District of New York, One St. Andrews Plaza, New York, NY 10007 (Attention: Joseph N. Cordaro, Esq.);
    (f) counsel for Ally Financial Inc., Kirkland & Ellis LLP, 153 East 53rd Street, New York, NY 10022 (Attention: Richard M. Cieri and Ray Schrock);
    (g) counsel for the committee of unsecured creditors, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, NY 10036 (Attention: Kenneth Eckstein, Douglas Mannal, Stephen D. Zide and Joseph A. Shifer);
    (h) counsel for Ocwen Loan Servicing, LLC, Clifford Chance US LLP, 31 West 52nd Street, New York, NY 10019 (Attention: Jennifer C. DeMarco and Adam Lesman);

EXHIBIT-5 OBJECTIONS II AND OPPOSITION OF MICHAEL BOYD

1  (i) counsel for Berkshire Hathaway Inc., Munger, Tolles & Olson LLP, 355 South Grand
   Avenue, Los Angeles, CA 90071 (Attention: Thomas Walper and Seth Goldman);
2  (j) Internal Revenue Service, P.O. Box 7346, Philadelphia, PA 19101-7346 (if by
3  overnight mail, to 2970 Market Street, Mail Stop 5-Q30.133, Philadelphia, PA 19104-
   5016);
4  (k) Securities and Exchange Commission, New York Regional Office, 3 World Financial
5  Center, Suite 400, New York, NY 10281-1022 (Attention: George S. Canellos, Regional
   Director); and
6  (l) counsel for Borrowers Claims Trust, Polsinelli, 900 Third Avenue, 21st Floor, New
7  York, NY 10022 (Attention: Daniel J. Flanigan and Jason A. Nagi).

8      I hereby certify that I served the attached document by mail on the following, who are not

9  registered participants of the CM/ECF System: NONE.

10

11                                        /s/   Michael E. Boyd
12                                        Michael E. Boyd
                                          5439 Soquel Drive
13                                        Soquel, CA 95073
                                          Phone: (408) 891-9677
14                                        E-mail: michaelboyd@sbcglobal.net
15
16                                        DATED: October 14, 2014

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

32

- 2 -

EXHIBIT-5 OBJECTIONS II AND OPPOSITION OF MICHAEL BOYD

1
2
3

# AFFIDAVIT OF WILLIAM J. PAATALO

4
5
6
7    STATE OF MONTANA
     COUNTY OF STILLWATER
8
9       BEFORE ME this day personally appeared William Paatalo, who, being first
10
11   duly sworn and taking an oath, deposes and says as follows:
12       1.    I am an Oregon licensed private investigator under ORS 703.430, and
13
14   have met the necessary requirements under ORS 703.415. My Oregon PSID number is
15   49411.
16       2.    I am over the age of eighteen years, am of sound mind, having never been
17
18   convicted of a felony or a crime or moral turpitude. I am competent in all respects to
19   make this Affidavit. I have personal knowledge of the matters declared herein, and if
20
21   called to testify, I could and would competently testify thereto.
22       3.    I have 17 years combined experience in law enforcement and the
23
24   mortgage industry.  My Resume ("CV") is attached as "**Exhibit 1**."
25       4.    I have worked exclusively over the last 4 - years investigating foreclosure
26
27   fraud, chain of title, and issues related to the securitization of residential and
28   commercial mortgage loans, and have spent more than 8,000 hours conducting

1. Affidavit of William J. Paatalo

1  investigatory research specifically related to mortgage securitization and chain of title

2  analysis.  I have performed such analyses for residential real estate located in many

3

4  states, including, but not limited to Washington, Oregon, California, Arizona, Nevada,

5  Florida, Ohio, Montana, New Jersey, and several other states.

6      5.      As of this date, I have conducted over 700 investigations in this area.

7

8      6.      As a result of my education and experience I am familiar with and have

9  sufficient training and expertise to qualify as an expert.

10

11     7.      I have testified as an expert in state and federal judicial proceedings in

12  various jurisdictions throughout the United States. Most recently, I was admitted to

13  testify as an expert witness on August 11, 2014 at a hearing in the following Ohio case:

14

15  *Washington Mutual Bank fka Washington Mutual Bank, F.A. v. Jon A. Smetana, et al.,In The Court of*

16  *Common Pleas, Cuyahoga County, Ohio Case No.CV-08-652392.*

17

18     8.      My securitization analysis here involves the factual aspects of

19

20  securitization.  My research methods are not considered scientific in nature.

21     9.      In performing this investigation, I relied upon publicly recorded

22

23  documents, documents filed with the Securities & Exchange Commission ("SEC"),

24  and data using my ABSNet subscription; a globally recognized software program used

25  by institutional investors in mortgage-backed securities.

26

27     10.      I was retained by Michael Boyd to review the chain of title and

28

2. Affidavit of William J. Paatalo

1    securitization of two loans originated by "Plaza Home Mortgage, Inc." The first loan

2    was originated on or about December 22, 2006 for the property located at 1090-1092

3

4    Lakebird Drive, Sunnyvale, CA 94089 (hereinafter "Sunnyvale") and the second loan

5    was originated on or about  January 16, 2007 for the property located at 5439 Soquel

6    Drive, Soquel, CA 95073 (hereinafter "Soquel.")

7

8           11.    I was asked to point out any discrepancies or issues of fact regarding

9    the chain of title and securitization of the subject Deeds of Trust and Notes / debts. The

10

11   following documents were inspected and marked as exhibits:

12       • Link to the "Pooling & Servicing Agreement" (PSA) for "Harborview

13

14   2007-4" Trust (HVMLT 2007-4) filed with the Securities & Exchange Commission on

15   06/14/2007:

16           http://www.secinfo.com/d12TC3.u11vh.d.htm#1stPage

17

18       • Link to the "424(b)(5) Prospectus Supplement" for "Harborview 2007-4"

19

20   Trust (HVMLT 2007-4) filed with the Securities & Exchange Commission on

21   06/15/2007:

22           http://www.secinfo.com/d12TC3.uVAs.htm#1stPage

23

24           **Exhibit 2** – Boyd - Loan Trust Capture - Soquel

25           **Exhibit 3** – Boyd - Loan Level Data within the "Harborview 2007-4"

26   (HVMLT 2007- 4.)  - Soquel

27

28           **Exhibit 4** – Assignments - Soquel

3. Affidavit of William J. Paatalo

**Exhibit 5** – Note - Soquel

**Exhibit 6** - HVMLT 2007-4 – January 19, 2012 Remittance Report, Pg.22.

**Exhibit 7**- HVMLT 2007-4 – March 19, 2012 Remittance Report, Pg.22.

**Exhibit 8** - HVMLT 2007-4 – July 19, 2012 Remittance Report, Pg.22.

**Exhibit 9** - HVMLT 2007-4 – September 19, 2012 Remittance Report, Pg.20.

**Exhibit 10** – Loan Trust Capture – Sunnyvale

**Exhibit 11** – Assignments – Sunnyvale

**Exhibit 12** – Note – Sunnyvale

**Exhibit 13** - Boyd - Loan Level Data within the "Harborview 2007-4" (HVMLT 2007- 4.) - Sunnyvale

12.      Within a reasonable degree of investigative certainty, my professional opinions are as follows:

a.  The HVMLT 2007-4 Trust failed to perfect its ownership interest in the subject Deeds of Trust and Notes; as the "Depositor," and only entity allowed to sell the assets to the HVMLT 2007-4 Trust (Greenwich Capital Acceptance, Inc.), and the Trust's "Seller" (Greenwich Capital Financial Products, Inc.) are missing in both chains of title. Furthermore, the Notes for each loan that were attached to the proof of claims during the Boyd Bankruptcy (*U.S. BK Ct. No. Dist. CA – Case No. 11-61311-*

4. Affidavit of William J. Paatalo

*SLJ*) do not contain endorsements as required in the HVMLT 2007-4 Trust Agreement,

as no endorsements appear on the "face" of either document. Dubious endorsements,

one of which is illegible, are provided on blank sheets of paper that have no connection

to the notes.

b. The Boyd debts, which appear in "Bankruptcy" status as of

10/14/2014 within the HVMLT 2007-4 Trust are not in default. All payments "due" on

the debts are being timely paid to, and received by, the certificateholders /investors in

the HVMLT 2007-4 Trust during the pendency of the Boyd bankruptcy.

**EVIDENCE IN SUPPORT OF OPINION "A."**

13.    Attached as "**Exhibits 4 & 11**" are the assignments for both Boyd

Deeds of Trust. Each of the most recent assignments are called "amended

assignments" naming the Assignee as *"Deutsche Bank National Trust Company,*

*Solely as Trustee for Harborview Mortgage Loan Pass-Through Certificates, Series*

*2007-4."* The Soquel amended assignment is executed on 03/27/2012 and the

Sunnyvale's is executed on 06/19/2012.

14.    I located the HVMLT 2007-4 Trust "Prospectus Supplement" (link

above) filed with the SEC on 06/15/2007. According to this document, the "Cut-Off

Date" for assets to be sold and conveyed to the Trust was May 1, 2007.

15.    The only entity (*emphasis added*) allowed to sell the loans

5. Affidavit of William J. Paatalo

1  to the HVMLT 2007-4 Trust was the "Depositor" – "Greenwich Capital Acceptance,

2  Inc." Furthermore, the "Depositor" was to first purchase and acquire (*emphasis added*)

3

4  the Boyd notes and Deeds of Trust from the "Seller" – "Greenwich Capital Financial

5  Products, Inc." These transaction were to have occurred on or before the Trust's

6
   closing date.
7

8      16.    The Trust Agreement (PSA) identifies the Trust participants as follows

9  on Pg. VI:

10
    This Pooling and Servicing Agreement is dated as of <u>May 1, 2007</u> (the "**Agreement**"), among
11  GREENWICH CAPITAL ACCEPTANCE, INC., a Delaware corporation, as depositor (the

12  "**Depositor**"), GREENWICH CAPITAL FINANCIAL PRODUCTS, INC., a New York corporation,
    as seller (the "**Seller**"), WELLS FARGO BANK, N.A., a national banking association, as master
13  servicer (in such capacity, the "**Master Servicer**") and as securities administrator (in such capacity,

14  the "**Securities Administrator**"), CLAYTON FIXED INCOME SERVICES INC., as credit risk
    manager (the "*Credit Risk Manager*") and DEUTSCHE BANK NATIONAL TRUST COMPANY, a
15  national banking association, as trustee and a custodian (the "**Trustee**").

16

17      17.    In addition, the PSA describes the process for how the Trust's assets

18  were to be sold and conveyed to the Trust in "Section 2.01." The "Depositor" was the
19
    party responsible for transferring, assigning, and conveying the assets to the Trust. Per
20

21  the PSA:

22

23           **Section 2.01    Conveyance of Mortgage Loans.**

24      (a)   The Depositor, concurrently with the execution and delivery hereof, does hereby
25  transfer, assign, set over and otherwise convey to the Trustee without recourse for the benefit of the
    Certificateholders all the right, title and interest of the Depositor, including any security interest
26  therein for the benefit of the Depositor, in and to (i) each Initial Mortgage Loan identified on the
    Mortgage Loan Schedule[.]       (Pg. 63)
27

28

   6. Affidavit of William J. Paatalo

1

        In connection with such transfer and assignment, the Seller, on behalf of the Depositor, does
hereby deliver on the Closing Date, unless otherwise specified in this Section 2.01, to, and deposit
with the Trustee, or the related Custodian as its designated agent, the following documents or
instruments with respect to each Mortgage Loan (a "**Mortgage File**") so transferred and assigned:

2

3

4

5

6

7

8

    (i)    the original Mortgage Note, endorsed either on its face or by allonge attached thereto in
blank or in the following form: *"Pay to the order of Deutsche Bank National Trust
Company, as Trustee for HarborView Mortgage Loan Trust Mortgage Loan Pass-
Through Certificates, Series 2007-4, without recourse"*, or with respect to any lost
Mortgage Note, an original Lost Note Affidavit stating that the original Mortgage Note
was lost, misplaced or destroyed, together with a copy of the related Mortgage Note;
(Pg. 64)

9

10    18.    It is my opinion that the sales transactions of the Boyd Deeds of Trust

11

12 and Notes / debts to the HVMLT 2007-4 Trust never occurred, and that the attempted

13 assignments to the Trust years after the Trust's Closing Date not only contravene the

14

15 Trust Agreement, they completely bypass the "Seller" (Greenwich Capital Financial

16 Products, Inc.) and the "Depositor" (Greenwich Capital Acceptance, Inc.) in the chain

17 of title.

18    19.    Furthermore, attached as **Exhibits 5 & 12** are both Notes that, upon

19

20 information and belief, were attached to the Proof's of Claim in the Boyd Bankruptcy

21 case in Northern California.

22

23    20.    Each of the notes contain 5 (five) pages marked as "1 of 5" through "5

24 of 5." Nowhere on the "face" of either document are there any endorsements as

25

26 required by the PSA language in Sec. 2.01 above. Each Proof of Claim does contain a

27

28

7. Affidavit of William J. Paatalo

blank piece of paper with endorsements on each, but these documents have no

connection to the actual notes, nor are the documents dated or marked "6 of 6."

21.    In addition, one of the endorsements is completely illegible.

22.    From experience in the mortgage industry, and having investigated

more than 700 cases to date, endorsements are to be placed on the "face" of the

signature page of the note(s), and if no room exists, then an "Allonge" is to be affixed

permanently to the Note. This did not happen.

### EVIDENCE IN SUPPORT OF OPINION "B"

23.    I identified the subject loans / debts within the HVMLT 2007-4 Trust

using my subscription to ABSNet; a globally recognized software database utilized by

institutional investors in mortgage-backed securities. (See attached **Exhibits 2 & 10**.)

24. It should be noted that the presence of the loan(s) data within the Trust only

proves an intent to have securitized the loans / debts.  It does not prove ownership of

the Notes and Deeds of Trust.

25.    Attached as **Exhibits 6 - 9** are the pages from the HVMLT 2007-4

monthly "Remittance Reports" for January 2012, March 2012, July 2012, and

September 2014 which I also retrieved from ABSNet.

26.    These Remittance Reports come directly from the HVMLT 2007-4

Trust's Securities Administrator and Master Servicer "Wells Fargo Bank, N.A." which

is shown in the upper right corner of the documents.

8. Affidavit of William J. Paatalo

27.    According to the Remittance Report Exhibits, the Trust began reporting both of the Boyd loans / debts as being in "Bankruptcy" status beginning in January 2012. The following "Approximate Delinquent Interest" balances for each loan is provided in sequence as follows"

|  | Soquel #1701055 | Sunnyvale #1612127 |
|---|---|---|
| January 19, 2012 | $64,231.65 | $30,588.35 |
| March 19, 2012 | $70,267.98 | $30,024.60 |
| July 19, 2012 | $68,765.64 | $25,469.16 |
| September 19, 2014 | $59,445.77 | $23,319.40 |

28.    The reason for the declining balances is that the servicer / master servicer is making all delinquent payments of P&I on the Boyd debt to the certificateholders / investors in the HVMLT 2007-4 Trust.

29.    Attached as **Exhibits 3 & 13** is the internal loan level data for each of the Boyd loans / debts. Pages 20 & 21 to each of these exhibits show the following:

|  | Soquel #1701055 | Sunnyvale #1612127 |
|---|---|---|
| Monthly Servicer Advance: | $1,555.79 | $1,238.66 |
| Non-Stop Advances: | $55,637.90 | $21,234.16 |

30.    Therefore it is my opinion, should the HVMLT 2007-4 Trust be

9. Affidavit of William J. Paatalo

1   deemed the proper beneficiary, that no default against the beneficiary has occurred. All

2   payments "due" have consistently been made and continue to be made to the

3
    beneficiary / investors.
4

5        31.    To the best of my knowledge, these payments being made to and

6
    received by the alleged beneficiary, have not been disclosed to the Court.
7

8

9   **Further affiant sayeth not.**

10

11                                By:_____

12                                    William J. Paatalo

13
        SWORN TO AND SUBSCRIBED before me on this _____day of
14  October, 2014 by William J. Paatalo, who produced the following

15  identification:_____ and who took an oath.

16
                                    _____
17  My commission expires:            Notary Public -- State of Montana

18

19

20

21

22

23

24

25

26

27

28

    10. Affidavit of William J. Paatalo

# William J. Paatalo
### Private Investigator – Oregon PSID# 49411
### BP Investigative Agency, LLC
### 5200 SW Meadows Rd., #150
### Lake Oswego, Oregon 97035
### (503) 726-5954
### Bill.bpia@gmail.com

## Curriculum Vitae

William Paatalo has been a licensed private investigator since September of 2009. He has 17 years combined experience in both law enforcement and the mortgage industry. He was a police officer with the St. Paul, Minnesota Police Department from 1990-1996 where he was assigned "Field Training Officer" duties in only his second year on the job, and also received multiple commendations.

Mr. Paatalo worked in the mortgage industry as a "loan officer" with Conseco Home Finance from 1999 – 2000, followed by two years of being a branch manager for multiple mortgage brokering firms. From 2002 – 2008, he became the President of Midwestern Mortgage, LLC f/k/a Wissota Mortgage, LLC in Wisconsin and Minnesota.

Mr. Paatalo has worked exclusively over the last 4- years investigating foreclosure fraud and issues related to the securitization of residential and commercial mortgage loans. He is a Certified Forensic Mortgage Loan Auditor through ("CFLA"), and has spent more than 8,000 hours conducting investigatory research specifically related to mortgage securitization and chain of title analysis. He has performed such analyses for residential real estate located in many states, including, but not limited to Washington, Oregon, California, Nevada, Florida, Montana, Texas, Arizona, Ohio, New Jersey, and several other states. To date, Mr. Paatalo has conducted well over 700 investigations, and has become one of the leading experts in this new field.

BP Investigative Agency
Exhibit 1

## Relevant Experience:

- Police Officer / "Field Training Officer" – St. Paul, MN 1990-1996.
- Oregon licensed private investigator under ORS 703.430, and has met the necessary requirements under ORS 703.415.
- Member of the "Oregon Association of Licensed Investigators" (OALI).
- President of Midwestern Mortgage, LLC f/k/a Wissota Mortgage, LLC in Wisconsin and Minnesota from 2002 – 2008.

## Education:

A.A.S. – Law Enforcement – Normandale C.C., Bloomington, MN – 1986
Marketing Management Certificate – Concordia University, St. Paul, MN 2001
Forensic Loan Auditor Certification Training Course (CFLA) – 32 hrs. – San Diego, CA 2011

## Expert Testimony:

### FEDERAL CASES

*Mickelson v. Chase Home Finance, LLC, et. al.  U.S. District Court., Western District Of Washington at Seattle No. 2:11-cv-01445*

*Workum v. Washington Mutual Bank, et al. – U.S. Bankruptcy Court, District of Arizona Adversarial No: 2:12-ap-01418-SSC*

*Javaheri v. JPMorgan Chase Bank N.A. – U.S. District Court, Central District of California - Case No. CV-10-8185-ODW*

*Del Piano v. MERS, et al. – U.S. District Court, District of Hawaii - Case No. CV-11-00140-SOM-BMK*

*JPMorgan Chase v. Dixon – U.S. District Court, Southern District of Texas - Case No. 3:10-CV-329*

*Robert T. Fanning, Debtor – U.S.Bankruptcy Court, District of Montana – BK Case No. 10-61660*

*Coward v. JPMorgan Chase, U.S. District Court, Eastern District of CA – Case No. 2:11-cv-03378-GEB*

2. CV – William J. Paatalo

*Hoang v. Bank of America, U.S. BK Court, Northern District of CA – Case No. 11-55197-ASW*

*In Re: Mlynarczyk – Debtors – U.S. BK Court – District of Arizona – Case No. 2:10-bk-07403-RTBP.*

*Rivera v. Deutsche Bank National Trust Company, U.S. BK Court, Northern CA – Oakland – Case No. 12-49703-MEH-13, Adversary # 13-4008.*

*Fareed: Sephery-Fard v. Greenpoint Mortgage Funding, Inc. et al., U.S. District Court Northern District of CA – Case No. unknown.*

## STATE CASES

### CALIFORNIA

*Gates v. MGC, et al. – In The Court of Appeal For The Court of California, 2nd Appellate District, Division Six - Case No. 2d-Civil No. B239793*

*Washington v. ReconTrust Company, et al. – Superior Court For The State Of California, County Of Riverside, Riverside Court - Case No. RIC-1115435*

*Blue Mountain Mortgage, LLC v. March – Superior Court of CA, San Francisco County – Housing Court, Case No. CUD-13-644342.*

*Ramirez v. JPMorgan Chase Bank, N.A., et al., In The Superior Court of CA, County of Stanislaus, Case No. 680567.*

*F. Wood Boyce v. TD Service Company, et al. – Superior Court For The State Of California, County Of Santa Barbara - Case No. unknown.*

*Kevin J. Fidel, et al., v. The Bank of New York Mellon as Trustee, et al. – Superior Court For The State Of California, County Of Orange, Central Justice Center - Case No. 30-2013-00671036.*

### NORTH CAROLINA

*Ingle / Ellis Sub. Trustee v. Long – State Of North Carolina General Court of Justice, Superior Court Division - Case No. 11-SP-009384*

*In The Matter of Foreclosure – Panico – State Of North Carolina, Iredell County, General Court of Justice, Superior Court Division - Case No. 11-SP-947*

_In The Matter of Foreclosure – Maleragno – State Of North Carolina, Mecklenburg County, General Court of Justice, Superior Court Division - Case No. 10-SP-12076_

_Sandra S. Cowart v. Bank of America, N.A., et al., – State Of North Carolina, In The County of Guilford - Case No. 13-CVS-10385._

### FLORIDA

_Deutsche Bank Trust Company v. Kass – In The Circuit Court Of The Seventeenth Judicial District In And For Broward County Florida – Case No. 09-09002(04)SJ_

_Wells Fargo Bank, N.A. v. Sammons et al., In The Circuit Court of The Twentieth Judicial Circuit of Florida, In And For Lee County Florida, Case No. 13CA52663._

_One West Bank, FSB v. Heseman, et al., In The Circuit Court of The Seventeenth Judicial Circuit of Florida, In And For Broward County, Case No. 2009-CA 053546(8)._

_JPMorgan Chase Bank, N.A. v. Prestar Homes And Rentals, Inc., et al., In The Circuit Court Of The Ninth Judicial Circuit, In And For Orange County Florida, Case No. 48-2009-CA-008407 O._

_U.S. Bank, N.A. as Trustee v. John M. Roesch, In The Circuit Court Of The Sixth Judicial Circuit, In And For Pinellas County Florida, Case No. :52-2012-CA-012635_

_Wells Fargo Bank, N.A. v. Niclose Sammons, In The Circuit Court Of The Twentieth Judicial Circuit, In And For Lee County Florida, Case No.:13CA52663._

_The Bank of New York Mellon as Trustee v. Kenneth B. Kaye Jr., In The Circuit Court Of The Sixth Judicial Circuit, In And For Pinellas County Florida, Case No. Unknown._

_The Bank of New York Mellon as Trustee v. Douglas Didrick et al., In The Circuit Court Of The Twentieth Judicial Circuit, In And For Collier County Florida, Case No.:12-CA-3870._

_Deutsche  Bank, N.A. as Trustee v. Patrick O'Keefe, et al., , In The Circuit Court Of The Fifth Judicial Circuit, In And For Marion County Florida, Case No. :42-2012-CA003273-AXXX-XX._

### GEORGIA

_Winkler v. JPMorgan Chase Bank, N.A., et al. In The Superior Court Of Cherokee County, State of Georgia – Case No. Unknown_

### OHIO

_Washington Mutual Bank fka Washington Mutual Bank, F.A. v. Jon A. Smetana, et al.,In The Court of Common Pleas, Cuyahoga County, Ohio Case No.CV-08-652392._

4. CV – William J. Paatalo

*JPMorgan Chase Bank, N.A. v. Michael M. Stevens, et al., In The Court of Common Pleas, Cuyahoga County, Ohio, Case No. CV-13-803622.*

*JPMorgan Chase Bank, N.A. v. Christopher Ardern, et al., In The Court of Common Pleas, Lake County, Ohio, Case No. 12CF000958.*

## OREGON

*Wells Fargo Bank, N.A. v. Mantell – Circuit Court For The State Of Oregon, County Of Multnomah - Case No. 1111-15457*

*U.S. Bank, N.A. as Trustee v. Natache D. Rinegard-Guirma, et al. - Circuit Court For The State Of Oregon, County Of Multnomah - Case No. 1112-16030*

*The Bank of New York Mellon as Trustee, et al., v. Nettleton – In The Circuit Court For The State of Oregon – County of Deschutes, Case No. 12-CV-0288.*

*The Bank of New York Mellon as Trustee v. Brian D. Ortman, In The Circuit Court For The State of Oregon – County of Deschutes, Case No. 12-CV-0813.*

*The Bank of New York Mellon as Trustee v. Kenneth Brown, In The Circuit Court For The State of Oregon – County of Jackson, Case No. 130845E2.*

*U.S. Bank N.A. as Trustee v. Jerry C. Reeves, et al.,, In The Circuit Court For The State of Oregon – County of Douglas, Case No. 13CV2112CC.*

*Citimortgage, Inc. v. Mathew H. Corcoran, In The Circuit Court For The State of Oregon – County of Washington, Case No. C12-4029CV.*

## MINNESOTA

*In The Matter of THE Petition of JPMorgan Chase Bank, N.A. – State Of Minnesota County of Hennepin, Distric Court – Fourth Judicial District Case No. 27-ET-CV-10-209.*

## MONTANA

*Kerr v. BAC Home Loan Servicing, et al – In The Twenty Second Judicial District For The State Of Montana, County Of Carbon – Case No. Unknown*

*Ocwen Loan Servicing, LLC, et al v. Rehm – In The Eighteenth District Court For The State Of Montana, County Of Gallatin - Case No. DV-1217B*

*Philip J. and Ubon Slagter v. Citibank, N.A. as Trustee, In The Twenty First Judicial District For The State Of Montana, County Of Ravali – Case No. DV-13-447.*

## NEW YORK

*BAC Home Loan Servicing, LP v. Paul A. Amelio, Supreme Court of the State of New York – Index No. 1302977/2009.*

## NEW MEXICO

*Deutsche Bank Trust Company Americas as Trustee v. Robert Todd, et al., , State of New Mexico, County of Santa Fe, First Judicial District, Case No. D-101-CV-2011-02730.*

## PENNSYLVANIA

*Bank of America, N.A. v. Alfonso Amelio, v. Allegheny Court of Common Pleas– Case No. GD-09-010436.*

6. CV – William J. Paatalo

File  Edit  User  Configuration  View  Help

| Field Name | Comparison | Value(s) |
|---|---|---|
| Original Loan Amount | Equals | 647,000. |
| Loan Origination Date | Equals | 01/16/2007 |
| ZIP Code | Begins With | 95073 |

| Loan ID | Original Loan Am... | Original Interest | Loan Origination | Maturity Date | ZIP Code | State | Deal Name | Bloomberg Name |
|---|---|---|---|---|---|---|---|---|
| 00017701055 | 647,000.00 | 7.250000 | 1/16/2007 | 2/1/2037 | 95073 | CA | HarborView Mortgage Loan Tru... | HVMLT 2007-4 |

Tolerance
Exact Match
1 month

BP Investigative Agency
Exhibit 2

| | | | |
|---|---|---|---|
| Bankruptcy | 711,216.07 | 711,216.07 | 711,216.07 |

BP Investigative Agency
Exhibit 3 – pg.1

| | 0.00 | 0.00 | 150+ | | 150+ |
|---|---|---|---|---|---|

BP Investigative Agency
Exhibit 3 - pg.2

| | | | | |
|---|---|---|---|---|
| 2.63 | 0.00 | 0.00 | 1,555.79 | 0 |

BP Investigative Agency
Exhibit 3 - pg.3

| | | | |
|---|---|---|---|
| 12 | | 0001701055 | 2 |

BP Investigative Agency
Exhibit 3 - pg.4

| | | | | |
|---|---|---|---|---|
| 303 | 1,005 | | | 67 |

BP Investigative Agency
Exhibit 3 - pg.5

| | 53 | 0.00 | 0.00 | 0.00 | 0001701055 |
|---|---|---|---|---|---|

BP Investigative Agency
Exhibit 3 - pg.6

| Low Documentation | HBV07-4-2 | | 8308 | HARBORVIEW 2007-4 |

BP Investigative Agency
Exhibit 3 - pg.7

| | | | | |
|---|---|---|---|---|
| 1/16/2007 | C | Rate / Term Refinance | 71.90 | Owner Occupied |

BP Investigative Agency
Exhibit 3 - pg.8

| | | | |
|---|---|---|---|
| 7.25 | 647,000.00 | 651,398.57 CA | 95073 |

BP Investigative Agency
Exhibit 3 - pg.9

| | | | |
|---|---|---|---|
| Single Family Residence | 1 | 71.90 | 1.00 |

BP Investigative Agency
Exhibit 3 - pg.10

| | | 12.25 | | 2.25 | 2.25 | |

BP Investigative Agency
Exhibit 3 - pg.11

| | Plaza Home Mortgage |
|---|---|
| GMAC MORTGAGE, LLC | |

BP Investigative Agency
Exhibit 3 - pg.12

| | | | |
|---|---|---|---|
| 736 | 900,000.00 | | SOQUEL |

BP Investigative Agency
Exhibit 3 - pg.13

AAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAFFFFFFFFFBBBBBBBBBBBBBBBBBBBBBBBBBBBBBBBBBBBB

BP Investigative Agency
Exhibit 3 - pg.14

00000000000000000000010111121111123344421011112345555555555555555555555555555555555555555555555555

BP Investigative Agency
Exhibit 3 - pg.15

00000000000000000000000000000100001223321000001234555555555555555555555555555555555555555555

BP Investigative Agency
Exhibit 3 - pg.16

| | | | | | |
|---|---|---|---|---|---|
| 9/1/2014 | 6/1/2007 | 3/1/2011 | 1/1/2012 | | |

BP Investigative Agency
Exhibit 3 - pg.17

| | | | | | |
|---|---|---|---|---|---|
| GMAC | Ocwen | | | | |

BP Investigative Agency
Exhibit 3 - pg.18

| | | | | |
|---|---|---|---|---|
| HarborView Mortgage Loan Trust 2007-4 | N | 6/14/2007 | HVMLT 2007-4 | Alt-A |

BP Investigative Agency
Exhibit 3 - pg.19

| | | | | |
|---|---|---|---|---|
| GMAC | 537 | | 55,637.90 | 55,637.90 |

| | | |
|---|---|---|
| 1,555.79 | 0.00 | 1.00 |

BP Investigative Agency
Exhibit 3 - pg.21

Requested and Prepared by:
ETS Services, LLC

When Recorded Mail To:
ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120



**2011-0008124 02/22/2011 01:18:08 PM**
OFFICIAL RECORDS OF Santa Cruz County
Sean Saldavia Recorder
RECORDING FEE: $13.00
COUNTY TAX: $0.00
CITY TAX: $0.00
AO TR
1 PG
RCD131



110082128
Loan No.: 0359491412
TS No: GM-278027-C

### ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned corporation hereby grants, assigns, and transfers to:

**GMAC MORTGAGE, LLC**

all beneficial Interest under that certain Deed of Trust dated: 1/16/2007 executed by "MICHAEL BOYD" AND "PATRICIA L. PARAMOURE", HUSBAND AND WIFE AS JOINT TENANTS, as Trustor(s), to FIRST AMERICAN TITLE, as Trustee, and recorded as Instrument No. 2007-0004088, on 1/24/2007, In Book XX, Page XX of Official Records, in the office of the County Recorder of Santa Cruz County, California together with the Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust.

DATE: _02/12/11_

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

_Robert Rodriguez_
Assistant Secretary

State of _Texas_ } SS.
County of _Dallas_ }

On _2-12-11_ before me, _Marcia Farrow_ Notary Public, personally appeared _Robert Rodriguez_ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of _Texas_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Marcia Farrow_ (Seal)

MARCIA FARROW
Notary Public, State of Texas
My Commission Expires
October 14, 2014

BP Investigative Agency
Exhibit 4

RECORDING REQUESTED BY
FIRST AMERICAN TITLE COMPANY
AS AN ACCOMMODATION ONLY
RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO:

GMAC c/o ACS, Inc
9401 James Avenue South, Suite 140
Minneapolis, MN 55431
ATTN: Trailing Mail

    6499548

File No. 14790

2012-0016231 04/04/2012 01:23:28 PM
OFFICIAL RECORDS OF Santa Cruz County
Sean Saldavia Recorder
RECORDING FEE: $18.00
COUNTY TAX: $0.00
CITY TAX: $0.00
ADTR
1 PG
RCD157

Min No. 100109800000538612
MERS Phone No. 1-888-679-6377

## IMPORTANT NOTICE

Note: After having been recorded, this Assignment should be kept with the Note and Deed of Trust hereby assigned

*This amended Assignment of Deed of Trust is being executed in order to amend and correct an error in a previously
executed Assignment of Deed of Trust that was recorded on February 22, 2011, as Instrument # 11-8124 in the
Official Records of the County Recorder of Santa Cruz, CA. The Beneficiary name was incorrectly listed and this
amendment seeks to correct that error.

# ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns, and transfers to Deutsche Bank
National Trust Company, solely as Trustee for Harborview Mortgage Loan Trust Mortgage Loan Pass-
Through Certificates, Series 2007-4 all beneficial interest under that certain Deed of Trust dated January
16, 2007, executed by Michael Boyd and Patricia L. Paramoure, Husband and Wife as Joint Tenants to
First American Title, as Trustee; and recorded January 24, 2007, as Document No. 2007-0004088, in the
Official Records of the County Recorder of Santa Cruz County, CA.

TOGETHER with the rights accrued or to accrue under said Deed of Trust including the right to have
reconveyed, in whole or in part the real property described therein.

Dated: 3/27/12

Mortgage Electronic Registration Systems, Inc.

_Helen Tyson_

**Helen Tyson**
**Assistant Secretary**

State of _Pennsylvania_
County of _Montgomery._

On _March 27, 2012_ before me, **Christine Morales**   Notary Public, personally appeared
_Helen Tyson_, who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same and his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _Pennsylvania_ that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal

_Christine Morales_
**Christine Morales**

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
CHRISTINE MORALES, Notary Public
Abington Twp., Montgomery County
My Commission Expires January 28, 2015

Prepared by: Routh Crabtree Olsen, PS, 1241 E. Dyer Road, Suite 250, Santa Ana, CA 92705

SEE "PREPAYMENT PENALTY ADDENDUM TO NOTE" ATTACHED HERETO AND MADE A PART HEREOF.
SEE "PREPAYMENT ADDENDUM TO NOTE" ATTACHED HERETO AND MADE A PART HEREOF.

# ADJUSTABLE RATE NOTE
### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

LOAN NO.: ▓▓▓▓▓▓▓                                   MERS PHONE: 1-888-67▓▓▓▓77

THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE
INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN
CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY. THIS NOTE ALLOWS
MONTHLY PAYMENT OPTIONS FOR AN INITIAL PERIOD. THIS NOTE MAY REQUIRE UNPAID
INTEREST TO BE ADDED TO LOAN PRINCIPAL AND REQUIRE ME TO PAY ADDITIONAL
INTEREST ON THE UNPAID INTEREST (NEGATIVE AMORTIZATION).

JANUARY 16, 2007                    HUNTINGTON BEACH                    CALIFORNIA
[Date]                                  [City]                            [State]

5439 SOQUEL DRIVE, SOQUEL, CA 95073-
[Property Address]

1.   **BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $  647,000.00  (this amount is called "Principal"),
plus interest, to the order of Lender. Lender is

PLAZA HOME MORTGAGE, INC.

I will make all payments under this Note in the form of cash, check or money order.
I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled
to receive payments under this Note is called the "Note Holder."

2.   **INTEREST**
Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a
yearly rate of   7.250  %. The interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any
default described in Section 7(B) of this Note.

3.   **PAYMENTS**
(A) Time and Place of Payments
I will make my monthly payments on the first day of each month beginning on   MARCH, 2007   . I will make
these payments every month until I have paid all of the principal and interest and any other charges described below that I
may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest
before Principal, if any. If, on   FEBRUARY 01, 2037  , I still owe amounts under this Note, I will pay those amounts in full
on that date, which is called the "Maturity Date."
I will make my monthly payments at  PLAZA HOME MORTGAGE, INC.
5060 SHOREHAM PLACE #206, SAN DIEGO, CA 92122
or at a different place if required by the Note Holder.

(B) Amount of My Monthly Payments
I will pay interest by making payments in the amount of US $    2,291.46    (the "Minimum Payment") month
until either (i) the first Interest Rate Change Date set forth in Section 4(A), or (ii) payment of the Minimum Payment on my
next scheduled payment date would cause my principal balance to exceed the Maximum Limit set forth in Section 3(D),
whichever event occurs first (the "Option Period"). The minimum Payment is calculated based upon the amount of interest
that will accrue each month at a rate equal to    4.250    %. Payment of the Minimum Payment amount will result
in accrued but unpaid interest being added to Principal. The unpaid Principal and any accrued but unpaid interest will then
accrue additional interest at the rate  then in effect. This practice is known as negative amortization.

5 YR OPTION ARM NOTE-MULTISTATE-S.M. 4/08                 Page 1 of 5           LENDER SUPPORT SYSTEMS, INC 888-01.BSN (09/04)
MTA-LIBOR Six Month Index

BP Investigative Agency
Exhibit 5

01/24/2012  12:47    7142476123                VAULT                           PAGE  03/10

After the expiration of the Option Period, I will pay interest by making payments in an amount sufficient to pay interest as it accrues every month until FEBRUARY 01, 2017 (the "Interest Only Period"). This amount will be determined by the Note Holder as set forth in Section 4(C). In addition, if I make payments of principal and/or accrued unpaid interest during the Interest Only Period, my monthly interest-only payment amount will change and will be based on the remaining Principal and my then current interest rate.

After the expiration of the Interest Only Period, I will pay principal and interest by making payments every month for the remaining term (the "Full Amortization Period"). The amount of payments during the Full Amortization Period will be determined by the Note Holder as set forth in Section 4(C).

(C) Additions to My Unpaid Principal

During the Option Period, my monthly payment could be less than or greater than the amount of interest owed each month. For each month that my monthly payment is less than the interest owed, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal. Interest will accrue on the amount of this difference at the interest rate required by Section 2 or Section 4. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment to interest before Principal.

(D) Limit on My Unpaid Principal; Increased Minimum Payment

My unpaid Principal can never exceed the Maximum Limit equal to ONE HUNDRED TEN AND 000/1000THS percent of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to additions to my unpaid Principal described in Section 3(C). If on any payment due date I would exceed the Maximum Limit by paying my Minimum Payment, then my monthly payment will be adjusted to an amount equal to the Interest Only Payment described in Section 3(E)(i). I will continue to pay that amount until the Interest Only Period expires.

(E) Additional Payment Options

During the Option Period, the Note Holder may provide me with up to three (3) additional payment options (the "Payment Options"). I will be eligible to select one of the Payment Options if it results in a larger monthly payment than my regular Minimum Payment. I may be given the following Payment Options:

(i) Interest Only Payment: Pay only the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii) Fully Amortized Payment: Pay the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments, at the then current interest rate.

(iii) 15 Year Amortized Payment: Pay the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments, at the then current interest rate.

These Payment Options are only applicable if they are greater than the Minimum Payment.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my Minimum Payment before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

4.    ADJUSTABLE INTEREST RATE

(A) Interest Rate Change Dates

The interest rate I will pay will change on the first day of FEBRUARY, 2012 and the adjustable interest rate I will pay may change on that day every 6th month thereafter. The date on which my interest rate changes is called an "Interest Rate Change Date."

(B) The Index

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Interest Rate Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

5 YR OPTION ARM NOTE- MULTISTATE- RBS 4008                    Page 2 of 6
MTA-LIBOR Six Month Index

**(C) Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding TWO AND ONE QUARTER    percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Interest Rate Change Date.

The Note Holder will then determine the amount of the monthly payment. If the Interest Rate Change Date occurs during the Interest-Only Period, the new monthly interest-only payment will be based on the unpaid Principal that I am expected to owe at the Interest Rate Change Date and my new interest rate. If the Interest Rate Change Date occurs during the Full Amortization Period, my new monthly payment will be in an amount sufficient to repay the unpaid Principal that I am expected to owe at the Interest Rate Change Date at my new interest rate in substantially equal payments.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Interest Rate Change Date will not be greater than   12.250   % or less than    2.250    %. Thereafter, my interest rate will never be increased or decreased on any single Interest Rate Change Date by more than    ONE AND 000/H0000THS    percentage point(s) ( 1.000 %) from the rate of interest I have been paying for the preceding · 0    months. My interest rate will never be greater than 12.250   %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Interest Rate Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Interest Rate Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.    BORROWER'S RIGHT TO REPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7. **BORROWER'S FAILURE TO PAY AS REQUIRE**

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   5.000   % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8.    **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9.    **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10.    **WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11.    **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

5 YR OPTION ARM NOTE- MULTISTATE- 253R 4008
MTA-LIBOR Six Month Index                        Page 4 of 5

Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is mailed or delivered within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)          _____ (Seal)
MICHAEL BOYD                    -Borrower        PATRICIA L. PARAMOURE            -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                        -Borrower

                                                 [Sign Original Only]

5 YR OPTION ARM NOTE- MULTISTATE- IMR 4293              Page 5 of 5
MTA-LIBOR 3lv Month Index

01/24/2012  12:47    7142476123                VAULT                              PAGE  07/18

Pay to the order of
Without Recourse:

Cynthia Carollo - Operation Manager
Plaza Home Mortgage, Inc.

HarborView Mortgage Loan Trust
Mortgage Loan Pass-Through Certificates
Distribution Date: 19-Jun-2012

HarborView Mortgage Loan Trust
Mortgage Loan Pass-Through Certificates
Series 2007-4

Contact: Customer Service - CTSLink
Wells Fargo Bank, N.A.
Securities Administration Services
9480 Stagecoach Circle
Frederick, MD 21701-4747
www.ctslink.com  1-866-846-4526
Telephone:
Fax:    240-586-8875

**Bankruptcy Detail - All Mortgage Loans in Bankruptcy during Current Period**

| Group | Loan Number | Month Loan Entered Bankruptcy | First Payment Due | State | LTV at Origination | Original Principal Balance | Current Actual Balance | Paid To Date | Months Delinquent | Current Loan Rate | Approximate Delinquent Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Group 1 | 0000037546 | Nov-2011 | 01-Mar-2007 | CA | 75.00 | 332,500.00 | 409,873.71 | 01-Oct-2010 | 13 | 8.875% | 46,277.77 |
| Group 1 | 0000038186 | Nov-2011 | 01-Mar-2007 | CA | 80.00 | 281,600.00 | 337,792.26 | 01-Sep-2010 | 14 | 9.375% | 42,111.36 |
| Group 1 | 0000390514 | Oct-2011 | 01-Feb-2007 | CA | 60.00 | 489,000.00 | 659,669.40 | 01-Dec-2011 | 0 | 7.250% | 7,920.27 |
| Group 1 | 0000614937 | Jan-2012 | 01-Mar-2007 | CA | 55.00 | 344,500.00 | 486,887.58 | 01-Nov-2011 | 3 | 7.625% | 6,186.38 |
| Group 1 | 0000645817 | Sep-2009 | 01-May-2007 | CA | 70.00 | 406,000.00 | 546,851.78 | 01-Aug-2011 | 4 | 7.590% | 17,032.15 |
| Group 1 | 0000654780 | May-2011 | 01-Jan-2007 | CA | 68.98 | 338,000.00 | 449,365.12 | 01-Feb-2011 | 9 | 7.875% | 32,694.56 |
| Group 1 | 0001612127 | Jan-2012 | 01-Feb-2007 | CA | 60.99 | 515,000.00 | 559,951.91 | 01-Apr-2011 | 7 | 7.250% | 30,538.35 |
| Group 1 | 0001701245 | Apr-2011 | 01-Feb-2007 | AZ | 78.57 | 384,000.00 | 420,241.71 | 01-Jan-2010 | 22 | 7.500% | 62,842.66 |
| Group 1 | 0001701245 | May-2010 | 01-Mar-2007 | AZ | 73.96 | 355,000.00 | 384,275.56 | 01-Jun-2011 | 5 | 7.500% | 17,304.16 |
| Group 1 | 0001612120 | Apr-2010 | 01-Mar-2007 | CA | 80.00 | 292,000.00 | 301,695.00 | 01-Dec-2011 | 0 | 2.000% | 954.35 |
| Group 1 | 0001612120 | Jun-2010 | 01-Mar-2007 | CA | 60.00 | 252,000.00 | 273,993.72 | 01-Jan-2012 | (1) | 7.590% | 1,821.97 |
| Group 1 | 0049974510 | Nov-2011 | 01-Mar-2007 | CA | 47.00 | 272,000.00 | 345,421.59 | 01-Dec-2011 | 0 | 4.250% | 2,434.49 |
| Group 1 | 0049797795 | Nov-2011 | 01-Mar-2007 | CA | 70.00 | 262,500.00 | 314,204.15 | 01-Mar-2011 | 8 | 7.750% | 20,187.10 |
| Group 1 | 0049979777 | Mar-2011 | 01-Feb-2005 | CA | 80.00 | 178,400.00 | 195,840.17 | 01-Oct-2011 | 1 | 2.250% | 1,987.69 |
| Group 1 | 1000126104 | Feb-2010 | 01-Apr-2007 | CA | 69.00 | 506,000.00 | 471,570.68 | 01-Apr-2011 | 7 | 3.000% | 9,930.60 |
| Group 1 | 0000002865 | Dec-2008 | 01-Apr-2007 | CA | 80.00 | 528,000.00 | 569,220.45 | 01-Dec-2011 | 0 | 8.500% | 17,260.86 |
| Group 1 | 0000011994 | Nov-2011 | 01-Mar-2007 | CA | 80.00 | 356,150.00 | 393,717.13 | 01-Dec-2011 | 6 | 8.500% | 22,515.58 |
| Group 1 | 0000017496 | Feb-2008 | 01-Apr-2007 | NY | 80.00 | 340,000.00 | 382,678.08 | 01-Dec-2011 | 6 | 7.875% | 25,334.28 |
| Group 2 | 0000163594 | Sep-2011 | 01-May-2007 | CA | 80.00 | 504,000.00 | 497,499.42 | 01-Dec-2011 | 8 | 1.500% | 1,224.07 |
| Group 2 | 0000333258 | Apr-2010 | 01-Mar-2006 | CA | 80.00 | 360,800.00 | 379,661.08 | 01-Dec-2011 | 6 | 1.875% | 1,875.20 |
| Group 2 | 0000333709 | Jun-2010 | 01-May-2007 | NY | 80.00 | 360,000.00 | 355,470.81 | 01-Dec-2011 | 6 | 1.000% | 2,928.57 |
| Group 2 | 0000335651 | Sep-2011 | 01-Apr-2007 | CA | 80.00 | 367,200.00 | 413,526.61 | 01-Nov-2010 | 12 | 4.650% | 2,287.67 |
| Group 2 | 0000352554 | Jul-2009 | 01-Oct-2006 | CA | 80.00 | 980,000.00 | 341,435.05 | 01-Apr-2010 | 0 | 5.250% | 36,598.14 |
| Group 2 | 0005546598 | May-2011 | 01-Nov-2006 | CA | 65.00 | 296,000.00 | 416,143.84 | 01-Sep-2010 | 7 | 2.000% | 4,510.06 |
| Group 2 | 0005552554 | Dec-2011 | 01-Apr-2007 | CA | 70.00 | 479,500.00 | 1,284,099.00 | 01-Oct-2011 | 1 | 3.250% | 114,844.20 |
| Group 2 | 000557777 | May-2011 | 01-Dec-2006 | CA | 70.00 | 464,750.00 | 669,008.39 | 01-Oct-2010 | 14 | 2.000% | 2,691.08 |
| Group 2 | 0000611178 | Dec-2011 | 01-Nov-2006 | CA | 65.00 | 854,000.00 | 581,972.12 | 01-Oct-2010 | 1 | 3.250% | 3,126.66 |
| Group 2 | 0000579401 | Jan-2012 | 01-Feb-2007 | CA | 69.71 | 812,000.00 | 1,145,126.16 | 01-Oct-2010 | 13 | 7.750% | 111,226.69 |
| Group 2 | 0000859682 | Dec-2011 | 01-Apr-2007 | CA | 70.00 | 372,000.00 | 1,091,995.02 | 01-Nov-2011 | 8 | 7.375% | 66,829.60 |
| Group 2 | 0006466653 | Aug-2011 | 01-Apr-2007 | WA | 80.00 | 172,000.00 | 409,441.11 | 01-Oct-2010 | 5 | 2.500% | 1,688.94 |
| Group 2 | 0001030311 | Nov-2007 | 01-May-2007 | CA | 58.90 | 480,000.00 | 197,485.88 | 01-May-2010 | 18 | 8.125% | 9,331.21 |
| Group 2 | 0001612230 | Feb-2010 | 01-Aug-2007 | WA | 79.91 | 447,500.00 | 519,952.72 | 01-May-2010 | 0 | 6.375% | 55,672.25 |
| Group 2 | 0007101055 | Dec-2011 | 01-Feb-2007 | CA | 71.89 | 647,000.00 | 505,202.96 | 01-Oct-2010 | 13 | 2.000% | 1,662.94 |
| Group 2 | 0007701223 | Jan-2012 | 01-Mar-2007 | CA | 73.70 | 490,400.00 | 711,216.07 | 01-Oct-2010 | 0 | 7.250% | 64,231.65 |
| Group 2 | 0007701374 | Dec-2010 | 01-Apr-2007 | CA | 80.00 | 637,600.00 | 478,767.57 | 01-Dec-2011 | 13 | 1.577% | 1,576.82 |
| Group 2 | 0009544166 | Nov-2009 | 01-Apr-2007 | CA | 80.00 | 490,400.00 | 671,396.65 | 01-Dec-2011 | 0 | 3.750% | 12,791.73 |
| Group 2 | 0009701003 | Aug-2011 | 01-Feb-2007 | CA | 69.72 | 760,000.00 | 841,371.23 | 01-Oct-2011 | 1 | 2.000% | 5,227.62 |
| Group 2 | 0015612186 | Mar-2011 | 01-Feb-2007 | NV | 80.00 | 607,960.00 | 685,706.99 | 01-Oct-2011 | 1 | 3.750% | 3,382.37 |
| Group 2 | | | | | 80.00 | 172,000.00 | 188,398.89 | 01-Mar-2011 | 8 | 2.000% | 3,067.54 |

BP Investigative Agency
Exhibit 6

HarborView Mortgage Loan Trust
Mortgage Loan Pass-Through Certificates
Distribution Date: 19-Mar-2012

HarborView Mortgage Loan Trust
Mortgage Loan Pass-Through Certificates
Series 2007-4

Bankruptcy Detail - All Mortgage Loans in Bankruptcy during Current Period

Contact: Customer Service - CTSLink
Wells Fargo Bank, N.A.
Securities Administration Services
8480 Stagecoach Circle
Frederick, MD 21701-4747
www.ctslink.com
Telephone: 1-866-846-4526
Fax: 240-586-8675

| Group | Loan Number | Month Loan Entered Bankruptcy | First Payment Date | State | LTV at Origination | Original Principal Balance | Current Actual Balance | Paid To Date | Months Delinquent | Current Loan Rate | Approximate Delinquent Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Group 1 | 0000572268 | Feb-2012 | 01-Dec-2006 | CA | 67.42 | 300,000.00 | 404,256.97 | 01-Mar-2011 | 10 | 3.250% | 23,480.64 |
| Group 1 | 0008580514 | Oct-2011 | 01-Feb-2007 | CA | 60.00 | 480,000.00 | 667,463.88 | 01-Feb-2012 | 0 | 7.250% | 8,013.34 |
| Group 1 | 0000614437 | Jan-2012 | 01-Mar-2007 | CA | 65.00 | 344,500.00 | 492,950.77 | 01-Dec-2012 | 0 | 3.500% | 4,558.39 |
| Group 1 | 0000649152 | Feb-2012 | 01-Mar-2007 | WA | 59.71 | 209,000.00 | 280,012.15 | 01-Aug-2011 | 5 | 7.000% | 11,538.96 |
| Group 1 | 0008654517 | Sep-2009 | 01-May-2007 | CA | 70.00 | 406,000.00 | 546,851.78 | 01-Aug-2011 | 5 | 7.500% | 23,345.01 |
| Group 1 | 0000654780 | Nov-2011 | 01-Jun-2007 | CA | 68.58 | 338,000.00 | 449,266.32 | 01-Feb-2011 | 11 | 7.875% | 36,669.34 |
| Group 1 | 0001612127 | Jan-2012 | 01-Feb-2007 | CA | 60.99 | 515,000.00 | 561,510.99 | 01-May-2011 | 8 | 3.000% | 30,024.60 |
| Group 1 | 0007701211 | Apr-2011 | 01-Feb-2007 | AZ | 78.37 | 384,000.00 | 420,241.71 | 01-May-2010 | 24 | 3.000% | 66,500.37 |
| Group 1 | 0007701245 | May-2010 | 01-Mar-2007 | AZ | 73.96 | 355,000.00 | 384,273.56 | 01-Jul-2011 | (1) | 3.000% | 18,256.46 |
| Group 1 | 0015612120 | Apr-2009 | 01-Mar-2007 | AZ | 80.00 | 292,000.00 | 300,148.43 | 01-Feb-2012 | 0 | 3.832% | 781.22 |
| Group 1 | 0049974510 | Jun-2010 | 01-Mar-2007 | CA | 60.00 | 252,000.00 | 274,423.86 | 01-Mar-2012 | 0 | 3.832% | 983.27 |
| Group 1 | 0049977795 | May-2009 | 01-Mar-2007 | CA | 47.00 | 272,600.00 | 344,137.42 | 01-Oct-2011 | 10 | 4.250% | 2,425.57 |
| Group 1 | 0049979777 | Nov-2011 | 01-Mar-2007 | CA | 70.00 | 505,000.00 | 314,204.15 | 01-Mar-2011 | 8 | 3.832% | 23,088.49 |
| Group 1 | 1001286104 | Nov-2011 | 01-Feb-2005 | AZ | 80.00 | 178,400.00 | 195,840.17 | 01-Jun-2011 | 7 | 2.250% | 1,810.03 |
| Group 1 | 0000612826 | Dec-2008 | 01-Mar-2007 | CA | 69.00 | 506,000.00 | 469,234.00 | 01-Jan-2011 | 8 | 3.250% | 9,775.21 |
| Group 1 | 0000611984 | Feb-2008 | 01-Feb-2007 | CA | 80.00 | 336,150.00 | 393,717.13 | 01-May-2011 | 6 | 3.432% | 25,014.48 |
| Group 1 | 0000617636 | Feb-2008 | 01-Apr-2007 | CA | 80.00 | 354,400.00 | 407,356.89 | 01-Nov-2011 | 3 | 7.875% | 26,509.55 |
| Group 1 | 0010163994 | Mar-2008 | 01-May-2007 | CA | 80.00 | 504,000.00 | 494,783.83 | 01-Feb-2012 | 8 | 1.500% | 25,427.92 |
| Group 1 | 0000633258 | Feb-2008 | 01-Mar-2007 | CA | 80.00 | 528,000.00 | 384,840.99 | 01-Feb-2012 | 8 | 6.650% | 1,218.01 |
| Group 1 | 0000633570 | Jun-2010 | 01-Mar-2007 | CA | 80.00 | 360,800.00 | 378,715.97 | 01-Feb-2012 | 8 | 1.000% | 1,869.12 |
| Group 1 | 0000633825 | Jul-2009 | 01-Apr-2007 | CA | 80.00 | 360,000.00 | 353,459.17 | 01-Jul-2011 | 6 | 7.500% | 2,921.90 |
| Group 1 | 0000633876 | Sep-2010 | 01-Mar-2007 | CA | 80.00 | 367,200.00 | 414,734.15 | 01-Dec-2010 | 13 | 2.003% | 2,274.54 |
| Group 1 | 0000835709 | Jun-2010 | 01-Apr-2007 | NY | 80.00 | 360,000.00 | 399,968.21 | 01-Jul-2011 | 6 | 5.250% | 39,281.38 |
| Group 1 | 0000835361 | Sep-2011 | 01-Apr-2007 | CA | 80.00 | 376,000.00 | 415,463.77 | 01-Feb-2011 | 6 | 3.250% | 3,992.74 |
| Group 1 | 0000833695 | Dec-2011 | 01-May-2007 | CA | 70.00 | 479,500.00 | 669,008.39 | 01-Oct-2011 | 3 | 2.000% | 3,619.47 |
| Group 2 | 0008540598 | May-2011 | 01-Apr-2007 | CA | 65.00 | 464,750.00 | 578,531.52 | 01-Sep-2010 | 16 | 3.250% | 121,913.04 |
| Group 2 | 0000552554 | Dec-2011 | 01-Dec-2006 | CA | 69.71 | 854,000.00 | 1,145,126.16 | 01-Oct-2010 | 15 | 7.750% | 4,477.86 |
| Group 2 | 0000577777 | May-2011 | 01-Nov-2006 | CA | 70.00 | 812,000.00 | 1,091,095.02 | 01-Sep-2010 | 10 | 3.250% | 3,113.03 |
| Group 2 | 0000578401 | May-2011 | 01-Dec-2006 | CA | 80.00 | 372,000.00 | 409,441.11 | 01-Sep-2011 | 15 | 2.000% | 126,063.11 |
| Group 2 | 0000611178 | Jan-2012 | 01-Feb-2007 | CA | 80.00 | 350,700.00 | 419,863.76 | 01-Mar-2011 | 10 | 3.500% | 73,148.86 |
| Group 2 | 0000579682 | Aug-2011 | 01-Apr-2007 | CA | 80.00 | 480,000.00 | 519,932.72 | 01-Jun-2012 | 0 | 2.000% | 1,688.94 |
| Group 2 | 0000654053 | Mar-2012 | 01-May-2007 | CA | 58.50 | 447,500.00 | 595,202.36 | 01-Mar-2012 | (7) | 6.375% | 1,382.77 |
| Group 2 | 0000610311 | Feb-2012 | 01-Feb-2007 | CA | 79.93 | 647,000.00 | 711,216.07 | 01-Oct-2010 | 20 | 2.000% | 61,253.25 |
| Group 2 | 0001612230 | Dec-2011 | 01-Feb-2007 | CA | 71.89 | 637,500.00 | 667,976.98 | 01-Feb-2012 | (5) | 3.000% | 831.47 |
| Group 2 | 0001701095 | Feb-2012 | 01-Apr-2007 | CA | 79.00 | 430,400.00 | 477,039.01 | 01-Dec-2010 | 13 | 1.577% | 70,276.96 |
| Group 2 | 0001701374 | Dec-2011 | 01-Apr-2007 | CA | 80.00 | 477,000.00 | 477,030.01 | 01-Jan-2012 | (1) | 3.759% | 1,573.33 |
| Group 2 | 0007701223 | Jan-2012 | 01-Apr-2007 | CA | 69.72 | 780,000.00 | 840,043.56 | 01-Dec-2010 | 13 | 5.211% | 12,724.77 |
| Group 2 | 0000634166 | Nov-2009 | 01-Mar-2007 | WA | 80.00 | 627,560.00 | 667,976.98 | 01-Jan-2012 | 1 | 5.211% | 5,211.14 |
| Group 2 | 0000701003 | Aug-2011 | 01-Feb-2007 | CA | 80.00 | 840,000.00 | 684,373.40 | 01-Dec-2011 | 1 | 3.759% | 3,375.79 |
| Group 2 | 0015612186 | Mar-2011 | 01-Feb-2007 | NY | 80.00 | 172,000.00 | 187,252.78 | 01-Apr-2011 | 9 | 2.000% | 3,362.07 |

BP Investigative agency
Exhibit 7

HarborView Mortgage Loan Trust
Mortgage Loan Pass-Through Certificates
Distribution Date:    19-Jul-2012

Contact: Customer Service - CTSLink
Wells Fargo Bank, N.A.
Securities Administration Services
9460 Stagecoach Circle
Frederick, MD 21701-4747
www.ctslink.com
Telephone:    866-846-4526
Fax:    240-586-8675

## HarborView Mortgage Loan Trust
## Mortgage Loan Pass-Through Certificates
### Series 2007-4

### Bankruptcy Detail - All Mortgage Loans in Bankruptcy during Current Period

| Group | Loan Number | Month Loan Entered Bankruptcy | First Payment Date | State | LTV at Origination | Original Principal Balance | Current Actual Balance | Paid To Date | Months Delinquent | Current Loan Rate | Approximate Delinquent Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Group 1 | 0000360160 | May-2012 | 01-May-2007 | AZ | 70.00 | 217,000.00 | 292,165.66 | 01-Jun-2011 | 11 | 3.500% | 20,813.90 |
| Group 1 | 000634782 | Jul-2012 | 01-Apr-2007 | CA | 64.97 | 535,000.00 | 785,019.40 | 01-Dec-2011 | 5 | 3.500% | 23,841.36 |
| Group 1 | 000069781B | Jul-2012 | 01-May-2007 | CA | 60.00 | 336,000.00 | 505,081.54 | 01-Jan-2012 | 5 | 8.125% | 6,796.14 |
| Group 1 | 000161279 | Jul-2012 | 01-Feb-2007 | AZ | 80.00 | 296,000.00 | 259,011.85 | 01-Jun-2012 | 9 | 3.000% | 1,284.26 |
| Group 1 | 000612127 | Jan-2012 | 01-Feb-2007 | CA | 60.59 | 515,000.00 | 565,244.98 | 01-Aug-2011 | 9 | 3.000% | 25,469.16 |
| Group 1 | 000701211 | Jan-2012 | 01-Feb-2007 | CA | 78.37 | 384,000.00 | 420,241.71 | 01-Jun-2011 | 28 | 3.000% | 70,665.97 |
| Group 1 | 0017012245 | May-2010 | 01-Mar-2007 | CA | 73.96 | 355,000.00 | 384,275.36 | 01-Oct-2011 | 7 | 3.000% | 14,651.42 |
| Group 1 | 015612120 | May-2010 | 01-Jan-2007 | AZ | 80.00 | 292,000.00 | 300,148.43 | 01-Feb-2012 | 3 | 3.000% | 2,457.20 |
| Group 1 | 0049745510 | June-2010 | 01-Mar-2007 | CA | 60.00 | 225,000.00 | 266,591.20 | 01-Jul-2012 | (1) | 3.397% | 754.03 |
| Group 1 | 0049977995 | May-2009 | 01-Mar-2007 | CA | 47.00 | 272,000.00 | 340,866.98 | 01-Jul-2012 | (1) | 4.250% | 1,202.51 |
| Group 1 | 0099979777 | Nov-2011 | 01-Mar-2007 | CA | 70.00 | 262,500.00 | 314,204.15 | 01-Mar-2011 | 14 | 3.397% | 26,602.01 |
| Group 1 | 0049983310 | Jul-2012 | 01-Apr-2007 | CA | 69.93 | 379,000.00 | 386,857.68 | 01-Jul-2012 | (1) | 1.000% | 314.95 |
| Group 1 | 000002286 | Feb-2012 | 01-Feb-2005 | CA | 69.00 | 506,000.00 | 468,091.90 | 01-Jul-2011 | 10 | 3.250% | 13,272.12 |
| Group 1 | 000011984 | Dec-2008 | 01-Apr-2005 | CA | 80.00 | 354,400.00 | 407,336.89 | 01-Oct-2011 | 7 | 3.000% | 18,423.45 |
| Group 2 | 000163394 | Feb-2008 | 01-May-2007 | CA | 80.00 | 340,000.00 | 389,252.37 | 01-Sep-2011 | 8 | 2.375% | 20,162.02 |
| Group 2 | 000333258 | Apr-2010 | 01-Mar-2007 | CA | 80.00 | 504,000.00 | 489,332.26 | 01-Oct-2011 | 7 | 1.500% | 1,204.63 |
| Group 2 | 000163695 | Jul-2010 | 01-Mar-2007 | CA | 80.00 | 528,000.00 | 563,649.51 | 01-Jun-2012 | 0 | 1.500% | 1,856.89 |
| Group 2 | 000133730 | Jun-2010 | 01-Mar-2007 | CA | 80.00 | 360,800.00 | 377,763.51 | 01-Jun-2012 | 0 | 2.000% | 4,362.34 |
| Group 2 | 000033825 | Jul-2009 | 01-Mar-2007 | CA | 80.00 | 360,800.00 | 347,404.09 | 01-Jun-2012 | 0 | 4.650% | 1,681.25 |
| Group 2 | 000033676 | Sep-2010 | 01-Apr-2007 | CA | 80.00 | 950,000.00 | 421,139.54 | 01-Jan-2012 | 4 | 1.000% | 27,852.66 |
| Group 2 | 000335709 | Jun-2010 | 01-Apr-2007 | CA | 80.00 | 367,200.00 | 338,494.01 | 01-Aug-2011 | 11 | 3.000% | 4,466.18 |
| Group 2 | 000836061 | Sep-2011 | 01-Apr-2007 | NY | 80.00 | 296,000.00 | 523,990.67 | 01-Oct-2011 | 7 | 2.000% | 5,177.86 |
| Group 2 | 000336695 | May-2011 | 01-Apr-2007 | CA | 50.97 | 376,000.00 | 414,085.69 | 01-Jun-2012 | (1) | 5.250% | 3,607.50 |
| Group 2 | 000549899 | Jul-2010 | 01-Nov-2006 | CA | 65.00 | 603,000.00 | 521,990.67 | 01-Jul-2012 | (1) | 3.500% | 1,513.33 |
| Group 2 | 000577771 | Jul-2012 | 01-Dec-2006 | CA | 65.00 | 464,750.00 | 573,408.90 | 01-Jun-2012 | 0 | 3.250% | 3,085.52 |
| Group 2 | 000633547 | Jul-2012 | 01-Apr-2007 | CA | 70.00 | 560,000.00 | 755,665.41 | 01-Nov-2011 | 6 | 3.500% | 27,891.45 |
| Group 2 | 000036043 | Jun-2012 | 01-Apr-2007 | CA | 65.00 | 903,500.00 | 1,108,232.92 | 01-Feb-2010 | 27 | 3.500% | 195,993.67 |
| Group 2 | 000069662 | Jun-2012 | 01-May-2007 | CA | 70.00 | 770,000.00 | 992,478.43 | 01-Oct-2010 | 19 | 3.500% | 124,030.25 |
| Group 2 | 000693682 | Aug-2011 | 01-Apr-2007 | CA | 80.00 | 372,000.00 | 409,441.11 | 01-Apr-2012 | 1 | 2.500% | 2,533.41 |
| Group 2 | 000050481 | Jun-2012 | 01-May-2007 | AZ | 80.00 | 640,000.00 | 687,215.15 | 01-Jul-2011 | 10 | 2.000% | 13,462.40 |
| Group 2 | 000069095 | Apr-2012 | 01-Jan-2007 | CA | 58.90 | 168,000.00 | 232,619.35 | 01-Jun-2012 | 0 | 2.000% | 535.91 |
| Group 2 | 001030511 | Feb-2010 | 01-May-2007 | CA | 70.00 | 480,000.00 | 519,932.72 | 01-Jul-2010 | 23 | 3.397% | 65,741.50 |
| Group 2 | 001701655 | Jan-2012 | 01-May-2007 | AZ | 71.89 | 647,000.00 | 711,216.57 | 01-Dec-2010 | 17 | 3.000% | 68,763.64 |
| Group 2 | 001701374 | Dec-2010 | 01-Apr-2007 | CA | 79.70 | 430,400.00 | 475,581.29 | 01-Jun-2012 | 0 | 2.000% | 1,566.33 |
| Group 2 | 0077011223 | Aug-2011 | 01-Feb-2007 | CA | 69.72 | 637,620.00 | 659,386.40 | 01-May-2011 | 12 | 1.577% | 11,735.28 |
| Group 2 | 000934166 | Nov-2009 | 01-Feb-2007 | WA | 80.00 | 760,000.00 | 834,691.24 | 01-May-2012 | 0 | 3.750% | 5,177.86 |
| Group 2 | 000701003 | Aug-2011 | 01-Mar-2007 | CA | 80.00 | 607,960.00 | 681,020.08 | 01-May-2012 | 0 | 5.000% | 2,240.53 |
| Group 2 | 001095335 | May-2012 | 01-Jan-2006 | FL | 55.00 | 120,191.00 | 117,972.37 | 01-Dec-2010 | 17 | 5.000% | 9,188.47 |
| Group 2 | 015612186 | Mar-2011 | 01-Feb-2007 | NV | 80.00 | 172,000.00 | 186,160.88 | 01-Apr-2011 | 9 | 2.000% | 3,329.39 |
| Group 2 | 003111024 | Mar-2011 | 01-Jun-2006 | MD | 80.00 | 448,000.00 | 457,652.97 | 01-Jun-2012 | 0 | 3.000% | 2,271.93 |
| Group 2 | 003131334 | Sep-2009 | 01-Mar-2006 | MD | 80.00 | 285,800.00 | 286,880.00 | 01-Apr-2010 | 25 | 4.250% | 34,135.07 |

BP Investigative Agency
Exhibit 8

HarborView Mortgage Loan Trust
Mortgage Loan Pass-Through Certificates
Series 2007-4

**Bankruptcy Detail - All Mortgage Loans in Bankruptcy during Current Period**

HarborView Mortgage Loan Trust
Mortgage Loan Pass-Through Certificates
Distribution Date:    19-Sep-2014

Contact:  Customer Service - CTSLink
Wells Fargo Bank, N.A.
Securities Administration Services
8480 Stagecoach Circle
Frederick, MD 21701-4747
www.ctslink.com
Telephone:    1-866-846-4526
Fax:    240-586-8675

| Group | Loan Number | Month Loan Entered Bankruptcy | First Payment Date | State | LTV at Origination | Original Principal Balance | Current Actual Balance | Paid To Date | Months Delinquent | Current Loan Rate | Approximate Delinquent Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Group 1 | 0001611279 | May-2012 | 01-Feb-2007 | AZ | 80.00 | 236,000.00 | 259,011.85 | 01-Mar-2013 | 16 | 2.625% | 10,269.34 |
| Group 1 | 0001612127 | Jan-2012 | 01-Feb-2007 | CA | 60.59 | 515,000.00 | 566,244.98 | 01-Mar-2013 | 16 | 2.625% | 22,319.40 |
| Group 1 | 0049974510 | Jun-2010 | 01-Mar-2007 | CA | 60.00 | 252,000.00 | 256,974.31 | 01-Sep-2014 | (1) | 3.372% | 717.70 |
| Group 1 | 0049979858 | Jun-2014 | 01-Mar-2007 | CA | 69.00 | 372,000.00 | 453,628.19 | 01-Aug-2013 | 13 | 2.500% | 14,034.15 |
| Group 1 | 0000087539 | Dec-2012 | 01-May-2007 | CA | 68.34 | 995,000.00 | 1,177,552.48 | 01-Jun-2011 | 37 | 3.372% | 177,269.26 |
| Group 1 | 0000333258 | Apr-2010 | 01-Mar-2007 | CA | 80.00 | 504,000.00 | 461,680.93 | 01-May-2014 | 2 | 8.750% | 13,238.73 |
| Group 1 | 0000331876 | Sep-2010 | 01-Apr-2007 | CA | 80.00 | 360,000.00 | 314,729.54 | 01-Feb-2014 | 5 | 8.625% | 15,464.44 |
| Group 1 | 0000834256 | Apr-2013 | 01-Mar-2007 | CA | 80.00 | 360,000.00 | 400,317.16 | 01-Feb-2014 | 5 | 8.250% | 16,797.31 |
| Group 1 | 0000335709 | Jan-2010 | 01-Apr-2007 | CA | 80.00 | 367,200.00 | 417,272.15 | 01-Jul-2013 | 12 | 2.625% | 12,864.06 |
| Group 1 | 0000363051 | Sep-2011 | 01-Apr-2007 | NY | 80.00 | 296,000.00 | 298,025.17 | 01-Sep-2012 | 22 | 2.000% | 11,597.02 |
| Group 1 | 0000335695 | May-2011 | 01-May-2007 | CA | 80.00 | 376,000.00 | 404,516.99 | 01-Aug-2014 | 2 | 5.250% | 3,524.35 |
| Group 1 | 0000639682 | Aug-2011 | 01-Apr-2007 | CA | 80.00 | 372,000.00 | 409,443.11 | 01-May-2014 | 2 | 3.500% | 4,732.68 |
| Group 2 | 0000303011 | Jul-2013 | 01-May-2007 | CA | 58.90 | 480,000.00 | 522,375.73 | 01-Jul-2010 | 48 | 3.372% | 101,334.96 |
| Group 2 | 0001031260 | Aug-2011 | 01-Jun-2007 | CA | 76.92 | 500,000.00 | 553,631.25 | 01-Jun-2014 | 1 | 3.250% | 4,463.67 |
| Group 2 | 0001031580 | Jan-2012 | 01-Mar-2007 | CA | 81.00 | 647,000.00 | 711,216.07 | 01-Dec-2011 | 31 | 2.625% | 59,445.77 |
| Group 2 | 0001701035 | Dec-2010 | 01-Mar-2007 | CA | 71.89 | 430,000.00 | 461,400.22 | 01-Aug-2014 | 0 | 4.625% | 1,519.70 |
| Group 2 | 0001701274 | Aug-2012 | 01-Apr-2007 | CA | 79.70 | 1,000,000.00 | 1,137,995.87 | 01-Aug-2014 | 0 | 3.750% | 7,065.10 |
| Group 2 | 0007611163 | Aug-2012 | 01-Feb-2007 | CA | 64.18 | 637,600.00 | 608,396.18 | 01-Aug-2014 | 9 | 8.250% | 37,410.88 |
| Group 2 | 0009701023 | Aug-2011 | 01-Mar-2007 | WA | 80.00 | 607,560.00 | 665,011.49 | 01-Aug-2014 | 0 | 4.000% | 4,386.29 |
| Group 2 | 0009701001 | Mar-2011 | 01-Feb-2007 | CA | 80.00 | 172,000.00 | 172,544.90 | 01-Aug-2014 | 0 | 2.000% | 2,257.68 |
| Group 2 | 0018502186 | Feb-2011 | 01-Feb-2007 | NY | 80.00 | 588,000.00 | 603,823.55 | 01-Aug-2014 | 0 | 2.000% | 1,989.41 |
| Group 2 | 0015612044 | Sep-2012 | 01-Feb-2007 | NY | 80.00 | 448,000.00 | 426,033.34 | 01-Aug-2014 | 0 | 3.000% | 2,115.33 |
| Group 2 | 0031110241 | Mar-2011 | 01-Jun-2006 | MD | 80.00 | 296,800.00 | 286,800.00 | 01-Jul-2011 | 36 | 3.873% | 36,250.23 |
| Group 2 | 0031101334 | Sep-2009 | 01-Mar-2006 | MD | 77.84 | 650,000.00 | 836,466.98 | 01-Aug-2014 | 0 | 2.000% | 2,753.36 |
| Group 2 | 0049992997 | Jun-2011 | 01-Feb-2007 | CA | 80.00 | 432,000.00 | 476,466.78 | 01-Aug-2014 | 0 | 3.000% | 2,362.84 |
| Group 2 | 0049975292 | Mar-2011 | 01-Feb-2007 | CA | 80.00 | 644,000.00 | 813,015.25 | 01-Aug-2014 | 0 | 3.250% | 4,369.96 |
| Group 2 | 0049975399 | Apr-2009 | 01-Mar-2007 | CA | 80.00 | 432,000.00 | 440,341.06 | 01-Aug-2014 | 5 | 2.000% | 1,450.75 |
| Group 2 | 0049977229 | Apr-2014 | 01-Mar-2007 | CA | 80.00 | 492,000.00 | 623,485.24 | 02-Feb-2014 | 5 | 3.625% | 12,278.13 |
| Group 2 | 0049978558 | Oct-2011 | 01-Apr-2007 | CA | 65.00 | 458,250.00 | 541,458.51 | 01-Aug-2014 | 0 | 4.000% | 3,589.12 |
| Group 2 | 0049982382 | Mar-2010 | 01-Apr-2007 | CA | 80.00 | 492,000.00 | 489,547.31 | 01-Jul-2014 | 1 | 2.000% | 1,456.68 |
| Group 2 | 0145756030 | May-2010 | 01-Nov-2006 | CA | 80.00 | 500,000.00 | 577,112.38 | 01-Nov-2013 | 16 | 7.000% | 57,350.52 |
| Group 2 | 0203595713 | Apr-2013 | 01-Jul-2006 | MD | 80.00 | 453,140.00 | 469,548.39 | 01-Nov-2010 | 44 | 5.000% | 83,247.11 |
| Group 2 | 0203720529 | Nov-2013 | 01-Aug-2006 | MD | 80.00 | 415,200.00 | 477,117.34 | 01-Jul-2014 | 0 | 2.625% | 2,067.50 |
| Group 2 | 1000124585 | Sep-2011 | 01-Mar-2007 | CA | 72.46 | 500,000.00 | 555,518.01 | 01-Aug-2014 | 0 | 2.000% | 1,823.57 |
| Group 2 | 1000128672 | Sep-2011 | 01-Apr-2007 | CA | 66.00 | 483,750.00 | 572,215.23 | 01-Oct-2013 | 9 | 3.250% | 11,741.95 |
| Group 2 | 1000130025 | Nov-2011 | 01-Apr-2007 | CA | 80.00 | 296,000.00 | 185,163.85 | 01-Jun-2014 | 1 | 2.000% | 922.64 |
| Group 2 | 7018503061A | Jul-2010 | 01-Mar-2007 | CA | 80.00 | 290,010.00 | 310,113.91 | 01-Aug-2014 | 0 | 3.625% | 1,861.92 |
| Group 2 | 7021480900A | Jul-2010 | 01-Mar-2007 | CA | 80.00 | 376,000.00 | 264,094.64 | 01-Aug-2014 | 0 | 2.000% | 870.13 |
| Group 2 | 7021927772A | May-2013 | 01-Apr-2007 | CA | | | | | | | |

BP Investigative Agency
Exhibit 9

BP Investigative Agency
Exhibit 10

DOCUMENT: 21723279

Pages: 1

Fees
Taxes
Copies
AMT PAID    18 00

18 00

REGINA ALCONENDRAS
SANTA CLARA COUNTY RECORDER
Recorded at the request of
Recording Service

RDE # 024
6/26/2012
9:52 AM

RECORDING REQUESTED BY
FIRST AMERICAN TITLE COMPANY
AS AN ACCOMMODATION ONLY
AND WHEN RECORDED MAIL TO:

GMAC c/o ACS, Inc
9401 James Avenue South, Suite 140
Minneapolis, MN 55431
ATTN: Trailing Mail

Min No. 100108600000523168
MERS Phone No. 1-888-679-6377

File No. 13434

634118

**IMPORTANT NOTICE**

Note: After having been recorded, this Assignment should be kept with the Note and Deed of Trust hereby assigned

*This amended Assignment of Deed of Trust is being executed in order to amend and correct an error in a previously executed Assignment of Deed of Trust that was recorded on September 8, 2011, as Instrument # 21306862 in the Official Records of the County Recorder of Santa Clara, CA. The Beneficiary name was incorrectly listed and this amendment seeks to correct that error.

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns, and transfers to Deutsche Bank National Trust Company, solely as Trustee for Harborview Mortgage loan Trust Mortgage Loan Pass-Through Certificates, Series 2007-4 all beneficial interest under that certain Deed of Trust dated December 22, 2006, executed by Michael E. Boyd and Patricia L. Paramoure, Husband and Wife as Joint Tenants to First American Title, as Trustee; and recorded January 4, 2007, as Document No. 19250966, in the Official Records of the County Recorder of Santa Clara County, CA.

TOGETHER with the rights accrued or to accrue under said Deed of Trust including the right to have reconveyed, in whole or in part, the real property described therein.

Dated: 6/19/12

Mortgage Electronic Registration Systems, Inc., ( MERS ) as nominee for Plaza Home Mortgage, Inc., its successors and/or assigns

Kelly Scanlan
Assistant Secretary

State of Pennsylvania
County of Montgomery

Kelly T. Cunningham

On 6/19/12 before me, _____ Notary Public, personally appeared Kelly Scanlan, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same and his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Pennsylvania that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Kelly T. Cunningham

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
KELLY T. CUNNINGHAM, Notary Public
City of Philadelphia, Phila. County
My Commission Expires February 24, 2016

Prepared by: Routh Crabtree Olsen, PS, 1241 E. Dyer Road, Suite 250, Santa Ana, CA 92705

BP Investigative agency
Exhibit 11



DOCUMENT: 21308852

Pages: 1

Fees . . . . . . . . . 18.00
Taxes . . .
Copies . . .
AMT PAID . . . 18.00

Requested and Prepared by:
Executive Trustee Services, LLC

When Recorded Mail To:
Executive Trustee Services, LLC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120

REGINA ALCOMENDRAS
SANTA CLARA COUNTY RECORDER
Recorded at the request of
Recording Service

ROE N 006
9/06/2011
1:42 PM

1104 04650

Loan No.: 0359478915
TS NO: CA1100042300
MIN #: 100169800000623165
MERS Phone: 1-888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned corporation hereby grants, assigns, and transfers to:

GMAC Mortgage, LLC

all beneficial interest under that certain Deed of Trust dated: 12/22/2006 executed by *MICHAEL, E BOYD* AND *PATRICIA L PARAMOURE*, HUSBAND AND WIFE AS JOINT TENANTS, as Trustor(s), to FIRST AMERICAN TITLE, as Trustee, and recorded as Instrument No. 18250966, on 01/04/2007, in Book XX , Page XX  of Official Records, in the office of the County Recorder of Santa Clara County, CA together with the Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust.

DATE:  August 30, 2011

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., AS NOMINEE FOR PLAZA HOME
MORTGAGE, INC. SAN BRANCH its successors
and assigns

_Lisa Clark_
Lisa Clark
Assistant Secretary

State of  Pennsylvania )
                                      ) ss.
County of  Montgomery )

On  8/30/11  before me,  Paulina Maj  Notary Public, personally appeared Lisa Clark  who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of  Pennsylvania  that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Paulina Maj_                                         (Seal)

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
PAULINA MAJ, Notary Public
Horsham Twp., Montgomery County
My Commission Expires November 20, 2012

08/11/2011  08:17                    VAULT                        PAGE  02/18

SEE "PREPAYMENT PENALTY ADDENDUM TO NOTE" ATTACHED HERETO AND MADE A PART HERE
SEE "PREPAYMENT ADDENDUM TO NOTE" ATTACHED HERETO AND MADE A PART HEREOF.

# ADJUSTABLE RATE NOTE
## (LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

LOAN NO:

THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE
INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN
CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY. THIS NOTE ALLOWS
MONTHLY PAYMENT OPTIONS FOR AN INITIAL PERIOD. THIS NOTE MAY REQUIRE UNPAID
INTEREST TO BE ADDED TO LOAN PRINCIPAL AND REQUIRE ME TO PAY ADDITIONAL
INTEREST ON THE UNPAID INTEREST (NEGATIVE AMORTIZATION).

DECEMBER 22, 2006            HUNTINGTON BEACH              CALIFORNIA
       [Date]                       [City]                   [State]

              1896-1892 LAKESIDE DRIVE, SUNNYVALE, CA 94089-
                        [Property Address]

1.    BORROWER'S PROMISE TO PAY
      In return for a loan that I have received, I promise to pay U.S. $   515,000.00   (this amount is called "Principal"),
plus interest, to the order of Lender. Lender is

PLAZA HOME MORTGAGE, INC. SAN BRANCH

I will make all payments under this Note in the form of cash, check or money order.
      I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled
to receive payments under this Note is called the "Note Holder."

2.    INTEREST
      Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a
yearly rate of  7.250  %. The interest rate I will pay may change in accordance with Section 4 of this Note.
      The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any
default described in Section 7(B) of this Note.

3.    PAYMENTS
      (A) Time and Place of Payments
      I will make my monthly payments on the first day of each month beginning on  FEBRUARY, 2007  . I will make
these payments every month until I have paid all of the principal and interest and any other charges described below that I
may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest
before Principal. If any. If, on  JANUARY 01, 2037  , I still owe amounts under this Note, I will pay these amounts in full
on that date, which is called the "Maturity Date."
      I will make my monthly payments at  PLAZA HOME MORTGAGE, INC. SAN BRANCH
8090 SHOREHAM PLACE #306, SAN DIEGO, CA  92122
or at a different place if required by the Note Holder.
      (B) Amount of My Monthly Payments
      I will pay interest by making payments in the amount of US $   1,823.96   (the "Minimum Payment") month
until either (i) the first Interest Rate Change Date set forth in Section 4(A), or (ii) payment of the Minimum Payment on my
next scheduled payment date would cause my principal balance to exceed the Maximum Limit set forth in Section 3(G),
whichever event occurs first (the "Option Period"). The minimum Payment is calculated based upon the amount of interest
that will accrue each month at a rate equal to  4.250  %. Payment of the Minimum Payment amount will result
in accrued but unpaid interest being added to Principal. The unpaid Principal and any accrued but unpaid interest will then
accrue additional interest at the rate then in effect. This practice is known as negative amortization.

3 YR OPTION ARM WITH 40 BALLOON/INT. ONLY ARM         Page 1 of 8         LENDER SUPPORT SYSTEMS, INC 03ROA1.ARM (05/06)
INT-LIBOR Six Month Index

Case 11-61311   Claim 1-2   Filed 07/03/12   Desc Main Document   Page 25 of 32

BP Investigative Agency
Exhibit 12

08/11/2011  08:17   ▮▮▮▮▮▮▮   VAULT   PAGE 03/10

After the expiration of the Option Period, I will pay interest by making payments in an amount sufficient to pay interest as it accrues every month until     JANUARY 01, 2017     (the "Interest Only Period"). This amount will be determined by the Note Holder as set forth in Section 4(C). In addition, if I make payments of principal and/or accrued unpaid interest during the Interest Only Period, my monthly interest-only payment amount will change and will be based on the remaining Principal and my then current interest rate.

After the expiration of the Interest Only Period, I will pay principal and interest by making payments every month for the remaining term (the "Full Amortization Period"). The amount of payments during the Full Amortization Period will be determined by the Note Holder as set forth in Section 4(C).

(C) Additions to My Unpaid Principal

During the Option Period, my monthly payment could be less than or greater than the amount of interest owed each month. For each month that my monthly payment is less than the interest owed, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal. Interest will accrue on the amount of this difference at the interest rate required by Section 2 or Section 4. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment to interest before Principal.

(D) Limit on My Unpaid Principal; Increased Minimum Payment

My unpaid Principal can never exceed the Maximum Limit equal to     ONE HUNDRED TEN  AND 000/1000THS     percent of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to additions to my unpaid Principal described in Section 3(C). If on any payment due date I would exceed the Maximum Limit by paying my Minimum Payment, then my monthly payment will be adjusted to an amount equal to the Interest Only Payment described in Section 3(E)(i). I will continue to pay that amount until the Interest Only Period expires.

(E) Additional Payment Options

During the Option Period, the Note Holder may provide me with up to three (3) additional payment options (the "Payment Options"). I will be eligible to select one of the Payment Options if it results in a larger monthly payment than my regular Minimum Payment. I may be given the following Payment Options:

(i) Interest Only Payment: Pay only the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii) Fully Amortized Payment: Pay the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments, at the then current interest rate.

(iii) 15 Year Amortized Payment: Pay the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments, at the then current interest rate.

These Payment Options are only applicable if they are greater than the Minimum Payment.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my Minimum Payment before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

4.   ADJUSTABLE INTEREST RATE

(A) Interest Rate Change Dates

The interest rate I will pay will change on the first day of     JANUARY, 2012     and the adjustable interest rate I will pay may change on that day every 6th month thereafter. The date on which my interest rate changes is called an "Interest Rate Change Date."

(B) The Index

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Interest Rate Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

▮▮▮▮▮ PAY OPTION ADJUSTABLE-MULTISTATE  3/04, 4/05
MIN LIBOR Six Month Index

Page 2 of 5

08/11/2011  88:17                      VAULT               PAGE  84/18

**(C) Calculation of Interest Rate Change**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding TWO AND ONE QUARTER percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Interest Rate Change Date.

The Note Holder will then determine the amount of the monthly interest-only payment will be based on the unpaid Principal that I am during the Interest-Only Period, the new monthly interest-only payment will be based on the unpaid Principal that I am expected to owe at the Interest Rate Change Date and my new interest rate. If the Interest Rate Change Date occurs during the Full Amortization Period, my new monthly payment will be in an amount sufficient to repay the unpaid Principal that I am expected to owe at the Interest Rate Change Date at my new interest rate in substantially equal payments.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Interest Rate Change Date will not be greater than    12.250  % or less than    2.250  %. Thereafter, my interest rate will never be increased or decreased on any single Interest Rate Change Date by more than    ONE AND 000/1000THS   percentage point(s) (  1.000  %) from the rate of interest I have been paying for the preceding   9   months. My interest rate will never be greater than 12.250  %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Interest Rate Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Interest Rate Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5.     **BORROWER'S RIGHT TO REPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

6.     **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.    BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

**8.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.    WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.    UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

08/11/2011  08:17                    VAULT                    PAGE  06/10

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is mailed or delivered within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)        _____ (Seal)
MICHAEL A. BOYD                  -Borrower      PATRICIA L. PARANGUNE            -Borrower

_____ (Seal)        _____ (Seal)
                                 -Borrower                                      -Borrower

_____ (Seal)        _____ (Seal)
                                 -Borrower                                      -Borrower

_____ (Seal)        _____ (Seal)
                                 -Borrower                                      -Borrower

                                                                      [Sign Original Only]

08/11/2011  09:17              VALL                    PAGE  07/18

| LoanStatus | BeginningPoolBalance | EndingPoolBalance | ActualEndingBalance |
|---|---|---|---|
| Bankruptcy | 566,244.98 | 566,244.98 | 566,244.98 |

BP Investigative Agency
Exhibit 13 - pg.1

| CurrentGainLossAmount | Recoveries | DelinquentStatusOTSDays | DelinquentStatusMBADays |
|---|---|---|---|
| 0.00 | 0.00 | 150+ | 150+ |

BP Investigative Agency
Exhibit 13 - pg.2

| CurrentInterestRate | Liquidations | ScheduledPrincipal | ScheduledPrincipalAndInterest | Repurchases |
|---|---|---|---|---|
| 2.63 | 0.00 | 0.00 | 1,238.66 | 0 |

BP Investigative Agency
Exhibit 13 - pg.3

| NumberOf12MonthDelinquencies | TotalPaymentDue | CurrentLoanId | MbaDelinquentCntLifetime |
|---|---|---|---|
| 12 | | 0001612127 | 3 |

BP Investigative Agency
Exhibit 13 - pg.4

| DaysInForeclosure | DaysInBankruptcy | DaysInREO | DaysToLiquidation | MbaPmtsMissedLife |
|---|---|---|---|---|
| 122 | 1,005 | | | 66 |

BP Investigative Agency
Exhibit 13 - pg.5

| OtsPmtsMissedLife | CumNetLossAmt | CumRecoveriesAmount | CumGainLossAmount | LoanId |
|---|---|---|---|---|
| 52 | 0.00 | 0.00 | 0.00 | 0001612127 |

BP Investigative Agency
Exhibit 13 - pg.6

| DocumentationStatus | PoolGroupId | ABSNetLoanPoolFk | RawDealName |
|---|---|---|---|
| Low Documentation | HBV07-4-1 | 8307 | HARBORVIEW 2007-4 |

BP Investigative Agency
Exhibit 13 - pg.7

| LoanOriginationDate | LoanTypeFk | LoanPurpose | OriginalLtv | OccupancyType |
|---|---|---|---|---|
| 12/22/2006 | C | Cash-Out Refinance | 60.60 | Non-Owner/Investor/Rental |

BP Investigative Agency
Exhibit 13 – pg.8

| OriginalInterestRate | OriginalLoanBalance | OriginalSecuritizedBalance | PropertyState | PropertyZip |
|---|---|---|---|---|
| 7.25 | 515,000.00 | 518,800.09 | CA | 94089 |

BP Investigative Agency
Exhibit 13 - pg.9

| PropertyType | LienPosition | OriginalCLtv | DebtToIncomeRatio | PeriodicRateCap | PeriodicRateFloor |
|---|---|---|---|---|---|
| 2-4 Units | 1 | 60.60 | | 1.00 | |

BP Investigative Agency
Exhibit 13 - pg.10

| LifetimeMaximumRateCap | LifetimeRateFloor | Margin | InterestOnlyTerm |
|---|---|---|---|
| 12.25 | 2.25 | 2.25 | |

BP Investigative Agency
Exhibit 13 - pg.11

| Servicer | Originator |
|---|---|
| GMAC MORTGAGE, LLC | Plaza Home Mortgage |

BP Investigative Agency
Exhibit 13 - pg.12

| FICO | OriginalAppraisedValue | PledgedAssetAmount | PropertyCity |
|------|------------------------|--------------------|--------------|
| 736  | 850,000.00             |                    | SUNNYVALE    |

BP Investigative Agency
Exhibit 13 - pg.13

| HistLoanStatus |
|---|
| AAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAFFFFBBBBBBBBBBBBBBBBBBBBBBBBBBBBBBBBBBBBB |

BP Investigative Agency
Exhibit 13 - pg.14

| HistDelinqDaysMba |
|---|
| 00000000000000000000101111111211221122222011200122234555555555555555555555555555555555 |

BP Investigative Agency
Exhibit 13 - pg.15

| HistDelinqDaysOts |
|---|
| 0000000000000000000000000000100111011111100010001112345555555555555555555555555555555555555 |

BP Investigative Agency
Exhibit 13 - pg.16

| HistEndDate | HistStartDate | ForeclosureDate | BankruptcyDate | ReoDate | LiquidationDate |
|---|---|---|---|---|---|
| 9/1/2014 | 6/1/2007 | 9/1/2011 | 1/1/2012 | | |

BP Investigative Agency
Exhibit 13 - pg.17

| OrigServicer | CurServicer | LastRecoveryDate | ModificationDate | ModificationType | TimesModified |
|---|---|---|---|---|---|
| GMAC | Ocwen | | | | |

BP Investigative Agency
Exhibit 13 - pg.18

| OriginalName | PaidOff | ClosingDate | BloombergDealName | AssetType |
|---|---|---|---|---|
| HarborView Mortgage Loan Trust 2007-4 | N | 6/14/2007 | HVMLT 2007-4 | Alt-A |

BP Investigative Agency
Exhibit 13 - pg.19

| DealServicer | ReportingMods (Deal) | StopAdvanceDate | NonStopAdvance | OutstandingSA |
|---|---|---|---|---|
| GMAC | 537 | | 21,234.16 | 21,234.16 |

BP Investigative Agency
Exhibit 13 - pg.20

| MonthlySA | AdvanceChange | AdvanceRate |
|---|---|---|
| 1,238.66 | 0.00 | 1.00 |

BP Investigative Agency
Exhibit 13 - pg.21