**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

RESIDENTIAL CAPITAL, LLC, *et al.*,

Debtors.

**NOT FOR PUBLICATION**

Case No. 12-12020 (MG)

Jointly Administered

**MEMORANDUM OPINION AND ORDER SUSTAINING OBJECTION TO CLAIM 4827
FILED BY ONEWEST BANK N.A. AND DEUTSCHE BANK NATIONAL TRUST
COMPANY**

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

      Pending before the Court is the *ResCap Liquidating Trust's Seventy-First Omnibus Objection to Claims (No Liability Claims)* (the "Objection" or "Obj.," ECF Doc. # 7305), only with respect to Claim No. 4827 (the "Claim"), filed by OneWest Bank N.A., formerly known as OneWest Bank, FSB ("OneWest") and Deutsche Bank National Trust Company, as Trustee of the IndyMac INDX Mortgage Loan Trust 2005-AR23, Mortgage Pass-Through Certificates, Series 2005-AR23 ("Deutsche Bank" and, together with OneWest, the "Claimants"). The Debtors seek to expunge the Claim, which asserts a general unsecured claim against Debtor Homecomings Financial, LLC ("Homecomings") for at least $806,590.40 based on theories of negligence, breach of contract, promissory estoppel, unjust enrichment, and conversion. (Obj. ¶ 18.) The Claimants opposed the objection (the "Opposition," ECF Doc. # 7436), supported by the Declaration of Rebecca Marks (the "Marks Decl.," ECF Doc. # 7437) and the Declaration of John Maston O'Neal (the "O'Neal Decl.," ECF Doc. # 7438). The Trust filed a reply (the "Reply," ECF Doc. # 7629). The Court heard oral argument on the Objection on October 22, 2014 and took the matter under submission.

# I. BACKGROUND

The Claim was filed on November 15, 2012. (Obj. Ex. A.) The Trust alleges that in 2005, a borrower, Mayra Hernandez, obtained a $543,000 first lien mortgage loan from Citi Mortgage, and a $100,000 home equity line of credit ("HELOC") from Homecomings. (Obj. ¶ 20.) On September 2, 2005, Hernandez borrowed approximately $640,000 from IndyMac Bank (the "Refinance Loan") and used the funds to pay off the first lien mortgage and pay down the HELOC. (*Id.*; *see also* Opp. ¶ 1.) The Refinance Loan was to be secured by a first priority deed of trust recorded against the property. (Opp. ¶ 1.) Fidelity National Title Insurance Company ("Fidelity") opened escrow for the funding of the Refinance Loan and provided title insurance. Prior to the close of escrow, Fidelity obtained a payoff statement from Homecomings for the HELOC (the "Payoff Letter"). (*Id.* ¶ 2.)

The Payoff Letter stated in pertinent part:

> Sending payoff funds to Homecomings authorizes Homecomings to CLOSE the line of credit: . . .
>
> You may choose to pay off and CLOSE your line of credit via wire transfer. By sending a wire transfer on this account, you are automatically authorizing Homecomings to payoff and CLOSE your Line of Credit. IF SUFFICIENT PAY OFF FUNDS ARE RECEIVED, YOUR ACCOUNT WILL BE CLOSED AND YOU WILL HAVE NO ACCESS TO FUTURE DRAWS.
>
> We will not be able to process the payoff unless the LOAN NUMBER and the MORTGAGOR'S NAME identify the wire transfer. A copy of the payoff statement, amount of the wire and the completed address information on the payoff statement must be faxed on the same day of the wire transfer to 1-214-874-2073, Attention: Cashiering Dept.
>
> Note: Wired funds will be returned if we are unable to identify the loan intended to be paid off or if we determine funds to be insufficient to pay the loan in full.
>
> It is your responsibility to ensure that you are requesting a payoff statement on the correct loan. We are relying on you to provide us with the correct loan number. If payoff funds are received and applied to the incorrect loan because you have indicated the incorrect loan number when requesting a payoff statement, these payoff funds will not be returned to you or applied to

>>the correct account.  ONCE PAYOFF FUNDS ARE DISTRIBUTED TO OUR INVESTORS, WE CANNOT REVERSE THE DISTRIBUTION.
>
>><u>Regarding an overpayment of Payoff funds</u>:
>>If additional funds are received in excess of that required to satisfy the loan, those funds will be mailed to the borrower within 30 days after the payoff.
>
>><u>Regarding the release of this lien</u>:
>>Upon full payoff, the release of lien on the property will be prepared and recorded by Homecomings according to the state's requirements.
>
>><u>Homeowner Information:</u>
>>Once you have paid off you line of credit, please destroy any remaining checks and/or credit cards associated with this account, as they will no longer be valid, and by doing so, you will help reduce the chances of identity theft.

(Marks Decl. Ex. 1 at 2 (emphasis in original).)

The Claimants allege that the escrow for the Refinance Loan closed on September 7, 2005. (Opp. ¶ 4.)  They provide documentation evidencing that the $640,000 from the Refinance Loan was deposited in escrow and subsequently sent to pay off Citi Mortgage and the HELOC. (*Id*. ¶ 4–6 (citing Marks Decl. Exs. 2–4).)  Fidelity, the escrow agent and title insurer, did not assure that the prior Homecomings lien was released before the escrow closed.[1]

The Claimants allege that despite the HELOC being paid in full, Homecomings failed to record a release of its lien against the Property and failed to return the credit balance to Hernandez within the thirty day period prescribed in the Payoff Letter. (*Id*. ¶ 13.)  The borrower, Hernandez, called Homecomings regarding the receipt of continued billing statements despite the HELOC being paid off, and later called again, at which time Homecomings advised Hernandez that the HELOC

---

[1] When asked by the Court during the hearing whether the Claimants asserted a claim under the title insurance policy, the Claimants' counsel said that a claim was made but was rejected as untimely.  As explained in this Opinion, the Claimants' Claim in this case is barred by the applicable statutes of limitations.

3

account was still active and that Homecomings would send a letter advising her of her options if she wanted to close the loan. (*Id*. ¶ 14 (citing O'Neal Decl. Ex. 1)).) A month later, Hernandez called again asking if she could use the checks she received for the HELOC and Homecomings told her that she could. (*Id*.) Hernandez then ran up a balance on the HELOC from zero to approximately $100,000. (*Id*.) Because the HELOC lien had not been released, these new advances were secured with a priority over the IndyMac Refinance Loan. (*See id*. ¶ 16.)

On July 11, 2008, IndyMac was closed by the Office of Thrift Supervision ("OTS"). (*Id*. ¶ 7.) The Federal Deposit Insurance Corporation ("FDIC") was appointed as the receiver. (*Id*.) The OTS chartered a new institution, IndyMac Federal Bank, FSB, and appointed FDIC as conservator. (*Id*.) OneWest acquired substantially all the assets and mortgage receiving rights of that new entity from the FDIC on March 19, 2009. (*Id*. ¶ 8.) On April 18, 2009, MERS assigned legal title to the Refinance Loan and Deed of Trust to IndyMac Federal. (*Id*. ¶ 9.) On February 5, 2010, IndyMac Federal assigned the interest in the Refinance Loan to Deutsche Bank. (*Id*. ¶ 10.) In 2011, Homecomings sold its interest in the HELOC to a third party, who subsequently completed a non-judicial foreclosure of its HELOC lien, which remained senior to the lien of the mortgage of the Refinance Loan. (*Id*. ¶ 17; Obj. ¶ 20.) Deutsche Bank remains the owner of the interest in the Refinance Loan. (Opp. ¶ 11.) OneWest has since transferred the servicing rights to Ocwen Financial Corporation, but maintains the authority to pursue this claim under their agreement. (*Id.*)

The Trust objects to the Claim on the grounds that the Claimants fail to state a valid basis for liability. (Obj. ¶ 17.) The Trust argues that Homecomings was not at fault for the HELOC remaining open. (*Id*. ¶ 20.) The refinancing proceeds exceeded the payoff demand for the HELOC by several hundred dollars, and the borrower did not complete all of the forms required

4

by the Payoff Letter to process the return of the surplus, the release of the HELOC lien, and the closing of the account. (*Id.*) Homecomings informed the borrower about the over payment, but the borrower did not take steps to close the account pursuant to the terms of the Payoff Letter. (*Id.*) With the account still open, Hernandez again borrowed funds under the HELOC. (*Id.*)

According to the Trust, the Claimants failed to attach any documents to Claim 4872 establishing a valid basis for liability—there is no contract or document giving rise to a liability owed by Homecomings to the Claimants. (*Id.* ¶ 21.) The Trust also asserts that the Claim is barred by the applicable statutes of limitations. (Reply ¶¶ 4–5.)

## II. DISCUSSION

Correctly filed proofs of claim "constitute prima facie evidence of the validity and amount of the claim . . . . To overcome this prima facie evidence, an objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *In re Reilly*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000). The objecting party is thereafter required to produce evidence equal in force to that provided by the claimant to rebut the presumption of the claimant's prima facie case. *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3d Cir. 1992) ("In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.") Once this is done, the burden then shifts back to the claimant to produce additional evidence to prove the validity of the claim by a preponderance of the evidence. *Id.* at 174.

The Claimants assert that each of their causes of action provides a basis for liability against Homecomings. First, they argue, the negligence claim arises out of Homecomings' duty, as a mortgage servicer, not to make erroneous statements pursuant to the RESTATEMENT (THIRD) OF THE LAW OF PROPERTY (MORTGAGES) § 1.6(c) (1997). (Opp. at 9–10.) According to the

5

Claimants, Homecomings breached this duty by failing to fulfill the statements made in the Payoff Letter. (*Id.*) Second, the Claimants argue that the breach of contract cause of action is based on a valid contract comprised of an "offer" from Homecomings by way of the Payoff Letter and an acceptance by IndyMac's (Claimants' predecessor in interest) provision of the funds for the Refinance Loan. (*Id.* at 10–11.) The Claimants argue that Homecomings breached this contract in failing to abide by the terms of the Payoff Letter and Claimants were damaged as a result. (*Id.*) Third, the Claimants argue in the alternative that they are entitled to a valid promissory estoppel claim based on Homecomings' reneging on its promises in the Payoff Letter to release the lien, which Homecomings should have reasonably expected would have induced IndyMac to fund the Refinance Loan, and IndyMac justifiably relied on those promises. (*Id.* at 11–12.) Fourth, the Claimants assert, again in the alternative to their other claims, that they are entitled to an unjust enrichment claim because Homecomings was enriched by receiving the full payoff amount of the HELOC from IndyMac and by receiving payment from a third party when it sold the HELOC; by the same token, the Claimants argue that they were impoverished but for these occurrences. (*Id.* at 12.) Fifth, the Claimants assert that they have a valid conversion claim on the grounds that Homecomings wrongfully retained possession of the refinancing proceeds and title to what became the senior lien interest after the Refinance Loan, which IndyMac should have possessed and passed on to the Claimants. (*Id.* at 13.)

In its Reply, the Trust argues that all of the causes of action alleged as bases for the Claim are barred by the relevant statutes of limitations. (Reply ¶¶ 4–5.) The Trust then addresses each of the Claimants' arguments on the merits. (*Id.* ¶¶ 7–19.)

6

### A. IndyMac and Homecomings Were Not Parties to Any Contract and Restatement § 1.6 Did Not Create a Duty to IndyMac

Restatement section 1.6(c) does not impose any duty on an existing mortgagee to a prospective lender. As stated in the comment to this section:

> In general this section imposes a duty on the mortgagee to provide information on the obligation only to those who owe the obligation or who hold interests in the real estate; a stranger to the title and the obligation has no right to demand it. Hence, the mortgagee has no direct duty to a person who is contemplating a purchase of the property. When an attorney, escrow agent, or other closing agent needs payoff information in order to conduct the settlement, it must ordinarily be obtained indirectly by means of a request originating with the mortgagor or present title-holder; alternatively, the mortgagor may authorize the closing agent to request it from the mortgagee on the mortgagor's behalf.

RESTATEMENT (THIRD) OF THE LAW OF PROPERTY (MORTGAGES) § 1.06, cmt.

Furthermore, no issue has been raised about the accuracy of the pay off information that Homecomings provided. The issue is whether Homecomings owed any duty to IndyMac, the prospective replacement lender and the Claimants' ultimate predecessor in interest. Section 1.06 does not impose such an obligation.

Furthermore, the Claimants do not point to any contract between IndyMac and Homecomings, or to which IndyMac was a third-party beneficiary. But even if such a duty existed upon which a negligence claim could be predicated, or if a contract existed upon which a breach of contract claim could be asserted, the claims would be barred by the applicable statutes of limitations.

### B. The Claims are Barred by the Applicable Statutes of Limitations

Under Arizona law the statute of limitations for (1) a negligence claim is two years, ARIZ. REV. STAT. ANN. § 12-542 (2014); (2) a breach of written contract is six years, *id*. § 12-548; (3) a promissory estoppel claim is three years, *Kersten v. Continental Bank*, 628 P.2d 592, 595–96 (Ariz. Ct. App. 1981); (4) an unjust enrichment claim is three years, *Costanzo v. Stewart*, 453

7

P.2d 526, 529 (Ariz. Ct. App. 1969) (applying three-year statute of limitations set forth in ARIZ. REV. STAT. ANN. § 12-543 to unjust enrichment claim); and (5) a conversion claim is two years, ARIZ. REV. STAT. ANN. § 12-542(5). Generally, a cause of action accrues "when the plaintiff is first able to sue," or "when the plaintiff knows or should have known of the defendant's [unlawful] conduct." *See, e.g.*, *Hall v. Romero*, 685 P.2d 757, 761–63 (Ariz. Ct. App. 1984) (in negligence action based on negligent misrepresentations, the claim accrued once the plaintiffs became aware of defendant's failure to perform pursuant to alleged promises) (holding that "[plaintiffs'] fail[ure] to sue [defendant] because they placed blind faith in [third parties'] promises [about defendant performing], already proven untrustworthy, cannot prevent the statute of limitations from running") (citation omitted). For breach of contract and conversion actions, the claim accrues when the breach or the taking occurs, "not from the time actual damages are sustained in consequence thereof," *Kain v. Ariz. Copper Co.*, 133 P. 412, 415 (Ariz. 1913), and "not at the time of the discovery by plaintiff of the taking or the identity of the taker," respectively, *Jackson* v. *Am. Credit Bureau, Inc.*, 531 P.2d 932, 934 (Ariz. Ct. App. 1975).

All of Claimants' causes of action are based upon the Payoff Letter and Homecomings' alleged breach of certain promises or representations made therein. The Payoff Letter and Homecomings' challenged acts (or failure to act) occurred in 2005. The Claimants' have not demonstrated that IndyMac did not know of Homecomings' challenged conduct until after 2005. Additionally, and perhaps most obviously, it is for protection against such risks that lenders require an escrow to be established and that title insurance be obtained. That IndyMac or its successors in interest were too late in seeking to recover from the escrow agent (for not assuring that a lien release was filed) or on the title insurance is not a basis for shifting liability to Homecomings (and now the Trust). The Court

concludes that the Claimants' causes of action accrued in 2005, seven years prior to November 15, 2012 when the Claimants finally asserted their Claim against Homecomings.

### III.  CONCLUSION

All of Claimants' causes of actions are time barred pursuant to the applicable statutes of limitations.  The Debtors' Objection is therefore **SUSTAINED** and the Claim is **DISALLOWED** and **EXPUNGED.**

**IT IS SO ORDERED.**

Dated:  October 31, 2014
           New York, New York

_____*Martin Glenn*_____
MARTIN GLENN
United States Bankruptcy Judge