UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------

In re:                                              )
                                                    )    Case No. 12-12020 (MG)
                                                    )
RESIDENTIAL CAPITOL, LLC, et al.,                   )
                                                    )    CHAPTER 11
                        Debtors.                    )

## RESPONSE AND OBJECTION TO NOTICE OF THE RESCAP BORROWER CLAIMS TRUST'S SEVENTY- FIFTH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY BORROWER CLAIMS)

Now comes RAINER P. WARNER by and through its own counsel, hereby responds and objects to the *Rescap Borrower Claims Trust's Seventy-Fifth Omnibus Objection to Claims (No Liability Borrower Claims)*, seeking to alter my rights by disallowing my claim against the above-captioned Debtors and or expunge one or more claims and states the Following:

1.  Claimant RAINER P. WARNER intend no disrespect to this court in extending the date for the ResCap Liquidating Trust and it is understood that in recognition of the fairness of the law that an extension would be justified for the ResCap Liquidating Trust.

2.  Within the body of ResCap Liquidating Trust's motion it states this extension should not prejudice claimants; to the contrary, creditors will ultimately receive greater distributions if both the Liquidating Trust and the Borrower Claims Trust are given the opportunity to review, negotiate, and, where appropriate, seek to expunge or reduce those claims that are improperly filed or unsubstantiated. This statement alone gave many of us the hope that the ResCap Liquidating Trust was attempting to do the right thing; however, my claim (1574) as posted on the KCC site once showed it was resolved, then withdrawn, and placed in the unresolved claims. ResCap Liquidating Trust

1

has now with the extension opted to disallow and or expunge the claim all together basing their reason once again on what was previously stated and dismissed without prejudice. They ResCap Liquidating Trust and Borrower Claims Trust once again in this objection although more lengthy than the first failed to adequately rebut the assertions in the original claim dismissing the bases for liability.

3.      For as long as this has dragged on it has given ResCap Liquidating Trust and Borrower Claims Trust access to forged, unreliable, and updated after the fact books and records. I would rank GMAC and ResCap below the United States Veterans Affairs as we would expect the highest integrity and honor from the Veterans Affairs, but have seen even this great entity fall to corruption,altering of books and records, and fraud. So we can safely draw the conclusion that with all these claims and most of them having the same issues, there obviously was a problem.

4.      **In response to the information reported in the   (In no liabilities summary)** The bankruptcy court in its Order Denying Without Prejudice the Debtors' Fiftieth Omnibus Objection as to Claim Number 1574 Filed by Rainer P. Warner[Docket 6236]fairly summarized Claimant's assertions in the proof of claim as i) wrongful denial for loan modifications despite Claimant's eligibility, and ii) improperly assessed fees and charges, and iii) wrongful foreclosure, and iv) failing to conduct property inspections. In Claimant's response to Debtors' fiftieth omnibus objection, Claimant further asserts that ownership of the note was not properly established before foreclosure. i) Debtors acted appropriately and in accordance with the note and mortgage as the account was delinquent owing for December 1, 2008 through November 1, 2012 payments at time of foreclosure sale, **(in response to i)** <u>The account did become delinquent; however the</u>

Debtors allowed the account to become delinquent because they refused to handle the situation when the homeowner reached out to try and prevent the account from spiraling out of control. The Debtor's responded with there is a protocol they must go through before they can do anything to help, but don't worry it could take up to a year before foreclosure measures are taken. In the heading of most of the correspondence used by GMAC misrepresentation as it is stated (GMAC Mortgage is committed to work with homeowners to retain ownership. We want to see you succeed and get your finances back on track). and ii) Debtors correctly reviewed the account several times for both short sale and modification options, however, in each instance the Claimant did not meet the criteria necessary to be approved for these options. **(In response to ii)** The claimant was approved for a short sale , this account was constantly being placed with either a relationship manager or an associate of some department (see attached correspondence EXHs ii a,b,c,d). GMAC wasted the realtor's time, the realtor submitted a few offers to GMAC on the property at first it was unclear why they didn't accept any of the offers, but opted to sell the property for $53,000.

5.      In support of Debtors' objection to the proof of claim, Debtors' records show: Debtors mailed a breach of contract letter to Claimant on December 3, 2008 as the account owed for October through December 2008 payments. On December 31, 2008, Debtors received a workout package from Claimant for loan modification review. Debtors referred account to foreclosure in January 8, 2009, due to Claimant not setting up any arrangement to bringing account current. Debtors setup a foreclosure repayment plan on February 2, 2009, however this was canceled two days later when Claimant requested different terms, as well as a modification. Debtors setup a Traditional trial plan starting on

3

February 19, 2009 in amount of $2,190, with payments due on March 19 and April 19 in amount of $2,189.62. Debtors approved a permanent traditional modification on March 31, 2009 but was not completed because Claimant did not sign the agreement and did not provide the initial contribution. Debtors mailed a denial letter to Claimant on June 1, 2009. **(In Response to in support of)** <u>Claimant never received a breach of contract, but did receive a foreclosure package on three separate occasions. The foreclosure repayment plan was considered to be the trial plan, claimant made all three payments as required. (see attached) the initial contribution was the first payment of $2190 followed by two payments due on March 19 and April 19 a total of three payments. Count II of fraud and misrepresentation once the payments were received GMAC went against what was outlined in the plan and sent a denial letter. Also in 2008 AFS Loan Modification Corp. had a difficult time with HomeComings a GMAC company in their efforts to produce a modification as GMAC gave them false information, prolonged wait time on issuance of documents, and claimed they did not receive any of the completed documents.</u>

6. Debtors received a new workout package from Claimant on November 22, 2009 as Claimant was applying to short sale property;however, there were no offers to buy Claimant's property. Claimant spoke with Debtors via phone on January 27, 2010. Debtors advised Claimant since there are no offers on property to talk to realtor about reducing asking price. Debtors received new short sale workout package from Claimant on March 23, 2010. Debtors closed down short sale review on August 6, 2010 as no authorization form was received for Claimant's realtor. Claimant spoke with Debtors via phone on January 27, 2011. Claimant advised the property is still listed for sale. Debtors advised that Claimant can resubmit listing agreement and short sale package

4

for short sale review to be opened again. Debtors mailed new short sale package to Claimant. However, Debtors did not receive any information from Claimant. (**In response to # 6**) The realtor complied with everything GMAC requested, the problem was when something was faxed to GMAC it ended up in some fax pool which sat in the machine for days, on somebody's desk in a different department, or originated in the wrong department. The claimant has spoken with the Debtors and have waited while they hunt down the document, most of the time the answer was we received it, it just hasn't been inputted into the system yet please allow 4-5 more business days.

7.  Debtors received a new modification referral from a HOPE representative on November 7, 2011. Debtors mailed a missing items letter to Claimant on November 17, 2011. Claimant spoke with Debtors via phone on November 21, 2011. Debtors advised of missing documents needed for modification review. Debtors received part of missing documents on November 25, 2011;however,the modification review still had outstanding items. Claimant spoke with Debtors on November 29, 2011. Debtors advised of missing documents needed for modification review. (**In Response to #7**) The claimant has spoken with the Debtors and have waited while they hunt down the document, most of the time the answer was we received it, it just hasn't been inputted into the system yet please allow 4-5 more business days.For these reasons in particular the claimant found it necessary to contact the debtors via phone. Again the Claimant used an outside company to deal with GMAC for a modification, Mortgage Mitigation found that in their efforts to produce a modification GMAC gave them false information, prolonged wait time on issuance of documents, and claimed they did not receive any of the completed documents.

8. Debtors denied HAMP modification on December 13, 2011 as Claimant's income was insufficient and Debtors could not modify the loan in a way to make it affordable for Claimant. A denial letter for HAMP modification was mailed to Claimant on December 14, 2011. Debtors also denied loan for traditional modification options on December 30, 2011 as Claimant's income was insufficient and Debtors could not modify the loan in a way to make it affordable for Claimant. The denial letter for traditional modification was mailed January 3, 2012. **(In Response to #8)** <u>Claimant believes that through GMAC's misrepresentation, fraud, and unwillingness to produce any kind of forbearance or modification, they (GMAC) had already planned it was not worth them pursuing any other measures; based on the fact that GMAC altered claimant's financials and figures (the Financial Analysis Form) to ensure claimant would not be eligible. Reviewing the guidelines for a HAMP modification the claimant would have qualified for such modification.</u>

9. Claimant spoke with Debtors via phone on February 23, 2012. Claimant advised would like to be considered for short sale and currently in process of listing property for sale. Claimant spoke with Debtors via phone on April 4, 2012 stating realtor should be sending in listing agreement. Claimant spoke with Debtors via phone on May 4, 2012. Debtors advised still waiting to receive listing agreement from realtor. Claimant spoke with Debtors on May 14, 2012. Debtors advised Claimant the listing agreement has not been received. Debtors shutdown short sale review on June 18, 2012 due to not receiving information needed for review. Claimant spoke with Debtors via phone on July 12, 2012. Claimant advised he would still like to pursue short sale and Debtors advised need listing agreement. Debtors received short sale workout package on

August 1, 2012. On August 9, 2012, Debtors sent letter to Claimant requesting missing items for short sale review. Claimant also spoke with Debtors via phone on this date and Claimant advised Debtors there were no offers on property. **(In Response to #9)** <u>Property had been listed since 2009 *see attached CMA* in contradiction to both the Liquidating Trust and the Borrower Claims Trust review the property was listed more than once by Pruitt real estate and Sell Florida Homes, Inc. GMAC gave both realtors a difficult time with the timely filing of paperwork, always claimed the documents were not received, or claimed something was missing. Negligence again on the Debtors showed their incompetence with the documents ending up in some fax pool which sat in the machine for days, on somebody's desk in a different department, or found in the wrong department. This simply means that once again GMAC probably had any firm intentions on accepting a short sale, but continued to play games giving false hopes to the claimant and the realtor.</u>

10.     Claimant spoke with Debtors via phone on September 20, 2012. Claimant advised no current offers on property and Debtors advised there is a foreclosure sale scheduled for November 28, 2012 and if there is no offer on property foreclosure sale will commence. Debtors denied short sale on October 16, 2012 due to missing information needed for review not being received. Debtors received new workout package for modification review on October 29, 2012. On November 1, 2012, a missing items letter was mailed to Claimant due to missing information. Claimant spoke with Debtors via phone on November 7, 2012. Debtors advised of missing documents needed. Debtors received additional workout package information on November 12, 2012. Debtors denied HAMP modification on November 20, 2012 as Claimant's income was

7

insufficient and Debtors could not modify the loan in a way to make it affordable for Claimant. Claimant spoke with Debtors via phone on November 21, 2012. Debtors advised of HAMP modification denial and that loan is currently under review for traditional modification options. Debtors reviewed loan for traditional options after call with Claimant and loan was denied traditional modification option due to forbearance below fair market value; the required unpaid principal balance to reach the affordable payment is less than the market value of the property and therefore cannot be modified. Claimant spoke with Debtors via phone on November 23, 2012. Debtors advised of modification denial and that foreclosure sale is scheduled and cannot be postponed as there is no approved option on account. **(In Response to #10 )** <u>In this paragraph again we see contradicting statements, GMAC again has given misrepresentation and fraud, as there were numerous offers on the table the last offer was for $64,000 and prior to that offers for $90,000 and $100,000 which again the realtor could not understand what kind of game GMAC was playing in not accepting any offers. GMAC continued to give both realtors a difficult time with the timely filing of paperwork; GMAC always claimed the documents were not received, or claimed something was missing. Negligence again on the Debtors showed their incompetence with the documents ending up in some fax pool which sat in the machine for days, on somebody's desk in a different department, or found in the wrong department.</u>

11. Foreclosure sale was completed on account and property was sold to third party on November 28, 2012. The Debtors have no liability for the misrepresentation- based claims, as the alleged "fraudulent charges and fees" stem from property valuation and property inspections properly ordered and charged to Claimant's

8

account in accordance with Debtors standard business practices, and the terms of the note and mortgage. Specifically, certain provisions within the mortgage give Debtor the authority to conduct inspections and property valuations in the event Claimant is in default, and Debtors have confirmed that in each instance that Debtors conducted inspections or ordered property valuations of Claimant's property, Claimant was in default,Section 7 of the deed of trust states in part "Lender or its agent may make reasonable entries upon and inspections of the property." Section 9 of the deed of trust states in part "If a Borrower fails to perform the covenants and agreements contained in this security instrument... then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the property...including protecting and/or assessing the value of the property". Section 14 of the deed of trust states that "Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purposes of protecting Lender's interest in the Property and rights under the security instrument, including but not limited to, attorney's fees, property inspection fees and valuation fees..." The Debtors' books and records indicate that nine BPOs (property valuations) were completed on the property during Loss Mitigation review between March 2009 and August 2012. Per Debtors' servicing policies, a BPO had to be completed for either a Loss Mitigation Short Sale or a Modification Review, and a BPO is only valid for 120 days. Once that period of time expires, another BPO has to be completed if the loan is still in review for Loss Mitigation. Pursuant to the terms of the Note and Deed, the servicer is permitted to pass along these BPO expenses to the borrower. In addition, it is GMAC's standard servicing procedures to complete property inspections every month starting the month that the account falls 45 days delinquent. The

fees from the inspections are the borrower's responsibility to pay as the account is delinquent. (**In response to #11**) <u>BPO stands for "broker price opinion," and it involves using a process very similar to an appraisal. In accordance with and as previously stated ("The Debtors' books and records indicate that nine BPOs were completed") No matter how you address it that number of BPOs are rather extreme, especially for GMAC which constantly denied the short sale or loss mitigation presented. The claimant recalls three BPOs conducted on three separate occasions anything beyond that seems to be excessive and the claimant stand on the grounds of fraudulent procedures of GMAC making fraudulent claims to performing property appraisals, inspections, and preservations. Fl. Statue Title XLVI Chapter 817.16 It is strict liability in the sense that absolute compliance is required and even technical violations will form the basis for liability. Lauletta v. Valley Buick Inc., 421F. Supp. 1036 at 1040 (Pa. 1976).</u>

12.     Mr. Warner also alleges in his claim that "GMAC have not done any inspections or preservations of the property." To the contrary, Debtors' records confirm that all inspections were completed when ordered. A property inspection can range from driving by the home to see if it appears to be occupied to a knock on the door; the majority are a drive by as the goal of a property inspection is to make sure the property is maintained and occupied. Furthermore, the $549 increased monthly payment that the claimant complains of resulted from the Debtors having to satisfy the $11,000 of past due county taxes and the cost of hazard insurance that the claimant did not have on the property. Debtor has no liability for Claimant's wrongful foreclosure claims on the basis that Debtors lacked standing to foreclose. (**In response to #12**) <u>Claimant will have to hold his ground on the property preservation or inspections alleging that he was the</u>

<u>victim of a fraudulent scheme between the defendants "to generate higher dollar loans to borrowers and thereby capture more fees." The brunt of this scheme was the preservation and inspections. GMAC manufactured misleadingly optimistic real estate inspections that was usually a phone call asking the claimant if he still lived at the property. Claimant would challenge the Debtors to produce any pictures taken of any proposed property inspections, and Debtors idea of property preservation, other than the authorized pictures taken for the BPO.</u>

13. The Legal File – the file containing original note, recorded mortgage and title policy that is held by the custodian -was sent to foreclosure counsel January 21, 2009. The court issued final judgment in favor of Debtors on September 6, 2012, and the property was sold at foreclosure sale on November 28, 2012. The assignment and endorsement chain is complete and valid. Debtor's records show: i) Note is endorsed from originator to Residential Funding and from Residential Funding to Deutsche Bank and ii) MERS, as nominee for lender, assigned the mortgage to Deutsche Bank Trust Company Americas. The foreclosure complaint filed in January 2009, Deutsche Bank Trust Company Americas, as Trustee for RALI 2006 QA10 vs Rainer P. Warner, MERS as nominee for Home Loan Corporation and unknown spouse of Rainer Warner, sought to foreclose the Mortgage lien on the property as well as reestablish the Note. The complaint attaches a copy of the unendorsed Note, from the closing file. However, the original Note with endorsements, was at all times being held by the custodian. (**In response to #13**) <u>GMAC manufactured misleadingly optimistic real estate valuations that induced him and borrowers like him to enter into larger loans with higher interest rates than they could reasonably afford. In return, it is believed that HomeComings and</u>

11

GMAC received a better yield spread premium—or "kickback" when they bundled his loan with others as part of a mortgage-backed security and sold it off to investors, turning a profit while avoiding most of the risk of default. GMAC also charged the claimant **private mortgage insurance. (PMI)** is insurance payable to a lender or trustee for a pool of securities that may be required when taking out a mortgage loan. It is insurance to offset losses in the case where a mortgagor is not able to repay the loan and the lender is not able to recover its costs after foreclosure and sale of the mortgaged property; therefore it is possible the plaintiff's injury was a foreseeable consequence of the conduct alleged. See Perry, 324 F.3d at 850-51; see also Desiano v. Warner-Lambert Co., 326 F.3d 339, 346, 348 (2d Cir. 2003). Johnson-Allen v. Lomas and Nettleton Co., 67 B.R. 968 (Pa. 1986). Failure to disclose note. Perry v. Federal National Mortgage, 59 B.R. 947 (E.D. Pa. 1986). Debtors failed to accurately disclose the security interest taken to secure the loan. McCausland v. GMAC Mortgage Co., 63 B.R. 665, (Pa. 1986). GMAC failed to provide information which must be disclosed as defined in the TILA and Regulation Z, 12 CFR §226.1  Indymac Bank v. Boyd, 880 N.Y.S.2d 224 (2009). To establish a prima facie case in an action to foreclose a mortgage, the debtor must establish the existence of the mortgage and the mortgage note. Schultz v. Central Mortgage Co, 58 B.R. 945 (Pa. 1986).

## SUMMARY

The Claimant RAINER P WARNER stands firm and believe that GMAC engaged in practices that harmed consumers, including but not limited to: failing to timely and accurately apply payments made by borrowers and failing to maintain accurate account statements; charging unauthorized fees for default-related services (ie inspections and preservations) ; providing false or misleading information to borrowers regarding loans that had been transferred from other servicers (ie HomeComings); failing to provide accurate and timely information to borrowers who sought information about loss mitigation services, including loan modifications; failing to maintain an accurate account of faxed documents in relation to loss mitigation and loan modification;misrepresenting to borrowers that loss mitigation programs would provide relief from the initiation of foreclosure or further foreclosure efforts; improperly denying loan modification relief to eligible borrowers; providing false or misleading reasons for denial of loan modifications; with respect to the mortgage note, failing to establish or acquire the note during the time the case was filed; failure to acquire a date indicating when the note was transferred ; and robosigning affidavits in foreclosure proceedings.

WHEREFORE, The Claimant Rainer P. Warner, respectfully request that the *Rescap Borrower Claims Trust's Seventy-Fifth Omnibus Objection to Claims (No Liability Borrower Claims)* be **denied with prejudice** on the grounds that the Claim again in this objection although more lengthy than the first failed to adequately rebut the assertions in the original claim dismissing the bases for liability. Claimant also prays the court will press for this case (claim 1574) be expediently resolved and or settled.

Respectfully Submitted by,

_____

RAINER P. WARNER

Dated 7 October 2014

## CERTIFICATE OF SERVICE

I certify that on October 8, 2014, copies of this Response were served by mailing the same by ordinary U.S. Mail, postage pre-paid, and/or via electronic mail to the persons listed below:

(i) Chambers of the Honorable Martin Glenn
United States Bankruptcy Court for the Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York, NY 10004-1408

(ii) Morrison & Foerston LLP,
Counsel for the Debtors
ATTN: Norman S. Rosenbaum, Jordan A. Wishnew, and Jessica J. Arett
250 West 55th Street
New York, NY 10019

(iii) The ResCap Borrower Claims Trust
Polsinelli PC
ATTN: Daniel J. Flanigan
900 Third Avenue, 21st Floor
New York, NY 10022

(iv) Office of the United States Trustee for the Southern District of New York
ATTN: Linda A Rifkin, Esq., and Brian S. Masumoto, Esq.
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, NY 10014

(v) The ResCap Liquidating Trust
Quest Turnaround Advisors
ATTN: Jeffrey Brodsky
800 Westchester Avenue, Suite S-520
Rye Brook, NY 10573