## **Exhibit 3**

**Priore Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------- )
| )
In re: | )   Case No. 12-12020 (MG)
| )
RESIDENTIAL CAPITAL, LLC, et al., | )   Chapter 11
| )
Debtors. | )   Jointly Administered
--------------------------------------------------------------- )

### DECLARATION OF KATHY PRIORE IN
### SUPPORT OF THE RESCAP BORROWER CLAIMS TRUST'S
### OBJECTION TO PROOF OF CLAIM NO. 4927 FILED BY RHONDA DEESE

I, Kathy Priore, hereby declare as follows:

1.      I serve as Associate Counsel for The ResCap Liquidating Trust (the "**Liquidating Trust**"), established pursuant to the terms of the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al., and the Official Committee of Unsecured Creditors* [Docket No. 6030] confirmed in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"). During the Chapter 11 Cases, I served as Associate Counsel in the legal department at Residential Capital, LLC ("**ResCap**"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors in the above-captioned Chapter 11 Cases (collectively, the "**Debtors**"). On May 1, 2008, I began as in-house litigation counsel at ResCap. Prior to my in-house litigation counsel position, I held various roles within the legal department at ResCap.

2.      In my role as Associate Counsel at ResCap, I was responsible for the management of residential mortgage-related litigation. In connection with the Debtors' chapter 11 filing, I also assisted the Debtors and their professional advisors in connection with the administration of the Chapter 11 Cases, including the borrower litigation matters pending before this Court. In my current position as Associate Counsel to the Liquidating Trust, among my

other duties, I continue to assist the Liquidating Trust and Borrower Claims Trust (the "**Borrower Trust**") in connection with the claims reconciliation process.[1]  I am authorized to submit this declaration (the "**Declaration**") in support of the *ResCap Borrower Claims Trust's Objection to Proof of Claim No. 4927 Filed by Rhonda Deese* (the "**Objection**").[2]

        3.      In my current and former capacities as Associate Counsel to the Liquidating Trust and ResCap, I am intimately familiar with the Debtors' claims reconciliation process.  Except as otherwise indicated, all statements in this Declaration are based on my familiarity with the Debtors' Books and Records (the "**Books and Records**"), as well as the Debtors' schedules of assets and liabilities and statements of financial affairs filed in these Chapter 11 Cases (collectively, the "**Schedules**"), my review and reconciliation of claims, and/or my review of relevant documents.  I or other Liquidating Trust personnel have reviewed and analyzed the proof of claim form and supporting documentation filed by the Claimant.  Since the Plan went effective and the Borrower Trust was established, I, along with other members of the Liquidating Trust have consulted with the Borrower Trust to continue the claims reconciliation process, analyze claims and determine the appropriate treatment of the same.  In connection with such review and analysis, where applicable, I or other Liquidating Trust personnel, together with professional advisors, have reviewed (i) information supplied or verified by former personnel in departments within the Debtors' various business units, (ii) the Books and Records, (iii) the Schedules, (iv) other filed proofs of claim, and/or (v) the official claims register maintained in the Debtors' Chapter 11 Cases.

---

[1] The Liquidating Trust and the Borrower Trust are parties to an Access and Cooperation Agreement, dated as of December 17, 2013, which, among of things, provides the Borrower Trust with access to the books and records held by the Liquidating Trust and the Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Objection.

ny-1164369

4.      Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations, information learned from my review of relevant documents and information I have received through my discussions with other former members of the Debtors' management or other former employees of the Debtors, the Liquidating Trust, and the Borrower Trust's professionals and consultants.  If I were called upon to testify, I could and would testify competently to the facts set forth in the Objection on that basis.

## I.      Claimant's Loan

5.      On or about June 10, 2005, Claimant executed an adjustable rate note (the "**Note**")[3] in favor of Ampro Mortgage Corporation dba Westworks Mortgage in the amount of $141,950 in connection with her purchase of property located at 2213 ½ Hurst Road, Auburndale, FL 33823 (the "**Property**").  Claimant's obligations under the Note were secured by a mortgage (the "**Mortgage**" and, together with the Note, the "**Loan**") on the Property.[4] Debtor Residential Funding Company, LLC ("**RFC**") subsequently acquired the Loan as an investor and the Note was endorsed to RFC.

6.      RFC transferred its interest in the Loan to JP Morgan Chase Bank, as Trustee for holders of Mortgage Asset-Backed Pass-Through Certificates, Series 2005-RS7, on or about September 1, 2007 in connection with the Loan's securitization, and the Note was negotiated by special endorsement from RFC to JP Morgan Chase Bank, as Trustee.[5] Additionally, a copy of the Assignment of Mortgage from Mortgage Electronic Registration Systems, Inc., as nominee for Ampro Mortgage Corporation dba Westworks Mortgage, its successors and assigns, to JP Morgan Chase Bank is also attached hereto as Exhibit 3-C.

---

[3] A copy of the Note is attached hereto as Exhibit 3-A.
[4] A copy of the Mortgage is attached hereto as Exhibit 3-B.
[5] See Note at 5.

3

7.      Debtor GMAC Mortgage began servicing the Loan on or about July 1, 2009.[6]

8.      As of the date that servicing of Claimant's account was transferred to Ocwen Loan Servicing, LLC, the account remained due for Claimant's January and February 2013 payments.

## II.      The Debtors' Request for Additional Information Regarding the Proof of Claim

9.      On June 21, 2013, the Debtors sent Claimant a letter requesting additional support for the Proof of Claim.[7]  On or about July 22, 2013, the Debtors received a response to their request for additional information.

## III.      Additional Relevant Documents

10.      In addition to the documents previously referenced, attached hereto are the following additional relevant documents related to the Claimant's Loan:

- A copy of Claimant's April 2012 monthly mortgage statement is attached hereto as Exhibit 3-F;

- A copy of Claimant's May 2012 monthly mortgage statement is attached hereto as Exhibit 3-G; and

- An excerpt of the servicing notes kept by GMAC Mortgage during the course of its servicing of the Loan is attached hereto as Exhibit 3-H.

---

[6] A copy of the front side of GMAC Mortgage's so-called "Welcome Letter," sent to Claimant when GMAC Mortgage began servicing her Loan, is attached hereto as Exhibit 3-D.
[7] A copy of the Debtors' letter to Claimant was included with Claimant's response thereto, which response is attached hereto as Exhibit 3-E.

4

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that, to the best of my

knowledge, the foregoing is true and correct.

Dated:  November 7, 2014

         /s/ Kathy Priore
         Kathy Priore
         Associate Counsel for
         The ResCap Liquidating Trust

**Priore Declaration**

**<u>Exhibit 3-A</u>**

DEESE R
Loan No. ▮▮▮8915

# ADJUSTABLE RATE NOTE

## (LIBOR Six-Month Index (As Posted By Fannie Mae) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| June | 10 | 2005 | WINTER HAVEN | FLORIDA |
|---|---|---|---|---|
| | [Date] | | [City] | [State] |

2213 1/2 HURST ROAD
AUBURNDALE, FL  33823
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $141,950.00          (this amount is called "Principal"), plus interest, to the order of Lender. Lender is   **AMPRO MORTGAGE CORPORATION dba WESTWORKS MORTGAGE**

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    **7.125**        %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on    **August    01    2005**        . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on    **July    01    2035**        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at    **12222 MERIT DRIVE, SUITE 900 DALLAS, TX 75251**

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $    **956.34**        . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

MULTISTATE ADJUSTABLE RATE NOTE - LIBOR SIX-MONTH INDEX (AS POSTED BY FANNIE MAE) -    Form 3518 1/01
Single Family - Fannie Mae UNIFORM INSTRUMENT
Amended for Florida

-818N(FL) (0006)

VMP MORTGAGE FORMS - (800)521-7291

Page 1 of 4    Initials 



MIN# ▮▮▮▮▮9155

Loan No. ████915

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of        15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:



Form 3518  1/01
Initials

Loan No. ████8915

## INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of   **July**    **01**   **2007**            , and on that day every   **6**     month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market based on quotations of major banks, as posted by Fannie Mae through electronic transmission or by telephone or both through electronic transmission and by telephone. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, or is no longer posted either through electronic transmission or by telephone, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding   **Six and Three Eighths**
percentage points (    **6.375**       %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than    **10.125**     % or less than   **7.125**      %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than   **One**
percentage point(s) (    **1.000**      %) from the rate of interest I have been paying for the preceding    **6**
months. My interest rate will never be greater than   **14.125**     %, or less than   **7.125**    %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY (See Attached Addendum)

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

 -818N(FL) (0008)

Form 3518  1/01
Initials 

Loan No. ▊▊8915

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 12. DOCUMENTARY TAX

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Rhonda Deese_ _____ (Seal)      _____ (Seal)
**RHONDA DEESE**                    -Borrower                                  -Borrower


_____ (Seal)      _____ (Seal)
                                   -Borrower                                  -Borrower


_____ (Seal)      _____ (Seal)
                                   -Borrower                                  -Borrower


_____ (Seal)      _____ (Seal)
                                   -Borrower                                  -Borrower


*[Sign Original Only]*

PAY TO THE ORDER OF   RESIDENTIAL FUNDING CORPORATION

WITHOUT RECOURSE
AMPRO MORTGAGE CORPORATION. DBA WESTWORKS MORTGAGE
THIS_____DAY OF_____ 20____

C. ELLIS
ASST. VICE PRESIDENT


PAY TO THE ORDER OF
JP MORGAN CHASE BANK, AS TRUSTEE
WITHOUT RECOURSE
Residential Funding Corporation

By

Judy Faber, Vice President

**DEESE R**
Loan No. ████8915

# PREPAYMENT ADDENDUM TO NOTE

Borrower Name(s):  __RHONDA DEESE__

Date of Note:         **June**    **10**   **2005**

For value consideration, receipt of which is hereby acknowledged, both Borrower and Lender agree that this ADDENDUM TO NOTE ("Addendum") amends that certain Promissory Note ("Note") of date shown above, to which this Addendum is attached. Borrower and Lender agree that this Note shall be subject to the following provisions, not withstanding any provisions to the contrary contained in said Note or the Deed of Trust, Mortgage or Security Deed given by Borrower to secure repayment of the Note.

Borrower may make principal payments at any time before they are due. A payment of principal only is known as a "prepayment". When Borrower makes a prepayment, borrower will tell the Note Holder in writing that Borrower is doing so. Prepayment of up to twenty percent (20%) of the original principal amount of the loan may be made in any twelve month period without incurring a prepayment charge.

Prepayment in excess of twenty percent (20%) of the original principal amount, in any twelve (12) month period, will be subject to a prepayment charge equal to six (6) months' advance interest or such lessor maximum amount as is permitted by applicable state law on the amount prepaid in excess of twenty percent (20%) of the original principal amount of the loan if such prepayment is made within    __TWO (2) YEARS__    of the date of execution of the Note and Deed of Trust, Mortgage or Security Deed.


_Rhonda Deese_
__RHONDA DEESE__

RE-528.FRM (05/2001)

**Priore Declaration**

**<u>Exhibit 3-B</u>**

RETURN 2020-KTMOUND
GOVERNMENT CENTER COURIER TO
STEPHEN F. BAKER OFFICE BOX

Return To:

**WESTWORKS MORTGAGE**
**ATTN: RECORDS DEPARTMENT**
**400 N. TUSTIN AVE., SUITE 100**
**SANTA ANA, CA 92705**

INSTR # 2005153976
~~BK 06274 PGS 1184-1203 PG(s)20~~
RECORDED 06/30/2005 01:20:10 PM
RICHARD M WEISS, CLERK OF COURT
POLK COUNTY
MTG DOC 497.00
INTANG TAX 283.90
RECORDING FEES 171.50
RECORDED BY G Mercado

This document was prepared by:
**MARY LUDENA**

*Re-recorded*

INSTR # 2005221939
BK 06391 PGS 0083-0103 PG(s)21
RECORDED 09/14/2005 09:16:29 AM
RICHARD M WEISS, CLERK OF COURT
POLK COUNTY
RECORDING FEES 180.00
RECORDED BY J Caceres

---

Loan No. ███████ 8915 ──────[Space Above This Line For Recording Data]──────

# MORTGAGE

MIN ████████ 9155

THis Mortgage is being rerecorded to attach legal "Exhibit A" which was
referenced on page 3 as being attached but was missing at the time of
recordation.

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   June   10   2005   ,
together with all Riders to this document.
(B) "Borrower" is   **RHONDA DEESE A SINGLE WOMAN**

THIS IS A PURCHASE MONEY FIRST MORTGAGE.

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee
under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is   **AMPRO MORTGAGE CORPORATION**
**dba WESTWORKS MORTGAGE**

---

FLORIDA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3010  1/01

**VMP®** -6A(FL) (0005).01
Page 1 of 18        Initials _____

VMP MORTGAGE FORMS - (800)521-7291

Loan No. ████8915

Lender is a    **DELAWARE CORPORATION**
organized and existing under the laws of    **DELAWARE**
Lender's address is    **12222 MERIT DRIVE, SUITE 900 DALLAS, TX 75251**

**(E) "Note"** means the promissory note signed by Borrower and dated    **June        10    2005**        .
The Note states that Borrower owes Lender   **One Hundred Forty-One Thousand Nine Hundred Fifty
and no/100----------------------------------------**                                                       Dollars
(U.S. $    **141,950.00**        ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than    **July        01    2035**        .
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider [ ] Condominium Rider [ ] Second Home Rider
[ ] Balloon Rider [ ] Planned Unit Development Rider [ ] 1-4 Family Rider
[ ] VA Rider [ ] Biweekly Payment Rider [ ] Other(s) [specify]

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: 

-6A(FL) (0005).01                    Page 2 of 16                    Form 3010   1/01

Loan No. ████ 8915

(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the **COUNTY**      [Type of Recording Jurisdiction] of **POLK**      [Name of Recording Jurisdiction]:
**THAT PART OF THE SOUTH 1/2 OF THE EAST 1056 FEET OF THE SOUTH 1/2 OF THE NORTH 1/2 OF THE SOUTHEAST 1/4 OF THE SOUTHWEST 1/4, SECTION 21, TOWNSHIP 28 SOUTH, "AS MORE PARTICULARLY DESCRIBED IN EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF"**

Parcel ID Number:    **21-28-25-000000-042320**                        which currently has the address of
**2213 1/2 HURST ROAD**                                                              [Street]
**AUBURNDALE**                              [City], Florida    **33823**    [Zip Code]
("Property Address"):

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

Initials: ___

VMP -6A(FL) (0005) 01                    Page 3 of 16                    Form 3010   1/01

Loan No. ████ 8915

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has
the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for
encumbrances of record. Borrower warrants and will defend generally the title to the Property against all
claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform
covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real
property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.**
Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any
prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items
pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.
currency. However, if any check or other instrument received by Lender as payment under the Note or this
Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments
due under the Note and this Security Instrument be made in one or more of the following forms, as
selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or
cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a
federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at
such other location as may be designated by Lender in accordance with the notice provisions in Section 15.
Lender may return any payment or partial payment if the payment or partial payments are insufficient to
bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan
current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial
payments in the future, but Lender is not obligated to apply such payments at the time such payments are
accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay
interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring
the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply
such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding
principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower
might have now or in the future against Lender shall relieve Borrower from making payments due under
the Note and this Security Instrument or performing the covenants and agreements secured by this Security
Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all
payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest
due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments
shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts
shall be applied first to late charges, second to any other amounts due under this Security Instrument, and
then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a
sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and
the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received
from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment

Initials: 

can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of
one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary
prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under
the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due
under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due
for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a
lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c)
premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance
premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage
Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow
Items." At origination or at any time during the term of the Loan, Lender may require that Community
Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and
assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to
be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives
Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's
obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be
in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts
due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires,
shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.
Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to
be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement"
is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and
Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9
and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such
amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in
accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in
such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply
the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can
require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and
reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable
Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency,
instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in
any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time
specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually
analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the
Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing
or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower
any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest

shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

Initials _____

Loan No. ██████8915

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

Initials: 

Loan No.  ▆▆▆▆915

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable *attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including* its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.



Initials:

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

Initials: 

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of

Initials: _____

Loan No. ███915

any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers

Initials _____

unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the

Initials

purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

   **20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

   Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

   **21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.



Loan No. ████915

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

Initials 

Loan No. ████8915

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Security Instrument and in any Rider executed by Borrower and recorded with it.
Signed, sealed and delivered in the presence of:

_JENNY L. AHLBERG_

_Rhonda Deese_ _____(Seal)
RHONDA DEESE                    -Borrower

_Carolyn L. Harmon_
Carolyn L. Harmon

_____(Address)

_____(Seal)
                                 -Borrower

_____(Address)

_____(Seal)        _____(Seal)
                     -Borrower                                 -Borrower

_____(Address)     _____(Address)

_____(Seal)        _____(Seal)
                     -Borrower                                 -Borrower

_____(Address)     _____(Address)

_____(Seal)        _____(Seal)
                     -Borrower                                 -Borrower

2771 JANIE TRAIL
AUBURNDALE, FL 33823        (Address)                          (Address)

VMP®-6A(FL) (0006).01        Page 15 of 16        Form 3010   1/01

Loan No. ▆▆▆915

STATE OF FLORIDA,   $Poil$                    County ss:
The foregoing instrument was acknowledged before me this  $6. 10 \cdot 05$                    by
**RHONDA DEESE**

who is personally known to me or who has produced  FL drivers license  as identification.

_Jenny L. ahlberg_
Notary Public

JENNY L. AHLBERG
Notary Public, State of Florida
My comm. expires Nov. 24, 2007
Comm. No. DD269558

Initials:

# ADJUSTABLE RATE RIDER

**(LIBOR Six-Month Index (As Posted By Fannie Mae) - Rate Caps)**

THIS ADJUSTABLE RATE RIDER is made this **10th** day of **June** **2005** ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to
secure Borrower's Adjustable Rate Note (the "Note") to
**AMPRO MORTGAGE CORPORATION**
**dba WESTWORKS MORTGAGE**
("Lender") of the same date and covering the property described in the Security Instrument and
located at:

**2213 1/2 HURST ROAD
AUBURNDALE, FL 33823**

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME
AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:
**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
    The Note provides for an initial interest rate of    **7.125**              %. The Note provides for
changes in the interest rate and the monthly payments, as follows:
**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
    (A) Change Dates
    The interest rate I will pay may change on the first day of   **July**          **2007**             ,
and on that day every     **6**      month thereafter. Each date on which my interest rate could change
is called a "Change Date."

**MULTISTATE ADJUSTABLE RATE RIDER - LIBOR SIX-MONTH INDEX (AS POSTED BY FANNIE MAE) - Single Family
- Fannie Mae Uniform Instrument**

 -818R (0006)        Form 3136 1/01
Page 1 of 4          Initials:
VMP MORTGAGE FORMS - (800)521-7291

Loan No. ███ 8915

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market based on quotations of major banks, as posted by Fannie Mae through electronic transmission or by telephone or both through electronic transmission and by telephone. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, or is no longer posted either through electronic transmission or by telephone, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Six and Three Eighths** percentage points ( **6.375** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **10.125** % or less than **7.125** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One** percentage points ( **1.000** %) from the rate of interest I have been paying for the preceding **6** months. My interest rate will never be greater than **14.125** %. or less than **7.125** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

Initials: 

⊘-818R (0006)                    Page 2 of 4                    Form 3136 1/01

Loan No. ███915

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER
Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Initials: _RD_

VMP-818R (0006)                    Page 3 of 4                    Form 3136 1/01

Loan No. ███ 8915

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
**RHONDA DEESE**                 -Borrower                                       -Borrower


_____ (Seal)          _____ (Seal)
                            -Borrower                                       -Borrower


_____ (Seal)          _____ (Seal)
                            -Borrower                                       -Borrower


_____ (Seal)          _____ (Seal)
                            -Borrower                                       -Borrower


⬥-818R (0006)                       Page 4 of 4                       Form 3136 1/01

EXHIBIT "A"

That part of the South 1/2 of the East 1056 feet of the South 1/2 of
the North 1/2 of the Southeast 1/4 of the Southwest 1/4, Section 21,
Township 28 South, Range 25 East, Polk County, Florida (henceforth
being referred to as the parent tract) being more particularly
described as follows:   Commence at the Southwest corner of the
parent tract for the Point of Beginning; thence North 00°00'00" East
along the West boundary of the parent tract a distance of 167.70
feet to the Northwest corner of the parent tract; thence South
88°42'02" East along the North line of the parent tract, a distance
of 150.00 feet; thence South 01°42'23" East a distance of 167.87
feet to the South line of the parent tract; thence North 88°42'26"
West along the South line of the parent tract, a distance of 155.00
feet to the said Point of Beginning.

LESS:  The West 6.00 feet thereof.
TOGETHER WITH an easement for ingress and egress across the West
15.00 feet of the East 1049.94 feet of the North 143.00 feet of the

North 1/2 of the South 1/2 of the Southeast 1/4 of the Southwest 1/4
of Section 21, Township 28 South, Range 25 East.

**Priore Declaration**

**Exhibit 3-C**

INSTR # 2013-064060
BK 06928 PG 3459 PG(s)1
RECORDED 04/05/2013 02:41:12 PM
STACY M. BUTTERFIELD,
CLERK OF COURT POLK COUNTY
RECORDING FEES 10.00
RECORDED BY J Christmas

When Recorded Return To
Indecomm Global Services
2925 Country Drive
St Paul, MN 55117

This instrument was prepared by
Dana Schroeder-Davis
2925 Country Drive
St Paul, MN 55117

## Assignment of Mortgage

Dated **March 27, 2013**

7851 3057

For value received **Mortgage Electronic Registration Systems, Inc**, as nominee for **Ampro Mortgage Corporation dba Westworks Mortgage**, its successors and assigns, **P O Box 2026, Flint, MI 48501-2026**, the undersigned hereby grants, assigns and transfers to **The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N A as successor to JPMorgan Chase Bank N A., as Trustee for RAMP 2005-RS7** all its rights and interest under a certain Mortgage dated **June 10, 2005** executed by **RHONDA DEESE** and recorded in Book **06274** on Page(s) **1184** as Document Number **2005153976** on June 30, 2005 of the official records of the County Recorder of Polk County, Florida

MORTGAGE AMOUNT **$141,950 00**

MIN ████████9155
MERS Phone  888-679-6377

**WITNESSES**

Witness 1  Mary Hall

Witness 2  Curtis Leason

Mortgage Electronic Registration Systems, Inc,
as nominee for Ampro Mortgage Corporation dba
Westworks Mortgage, its successors and assigns

By _____

**Ramona Rae Yaritz,**
**Assistant Secretary**

STATE OF **Minnesota**                )
COUNTY   **Ramsey**                   ) SS

*U03647896*

On **March 27, 2013** before me, **Sandra Jean Kinnunen , Notary Public** in and for said State personally appeared **Ramona Rae Yaritz , Assistant Secretary** of **Mortgage Electronic Registration Systems, Inc , its successors and assigns**, personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that s/he executed the same in his/her authorized capacity, and that by his/her signature on the instrument the entity upon behalf of which the person acted, executed the instrument  WITNESS my hand and official seal

**Sandra Jean Kinnunen, Notary Public**
My Commission expires  **January 31, 2016**

SANDRA JEAN KINNUNEN
Notary Public-Minnesota
My Commission Expires Jan 31, 2016

**INDECOMM GLOBAL SERVICES**
**2925 COUNTRY DR STE 201**
**SAINT PAUL, MN 55117-9969**



**Priore Declaration**

**<u>Exhibit 3-D</u>**

**Homecomings Financial**
*A GMAC Company*
P.O. Box 205
Waterloo, IA 50704-0205

**GMAC Mortgage**
P.O. Box 780
Waterloo, IA 50704-0780

June 10, 2009

Homecomings and GMAC Mortgage
Account Number: ████0203

**Property Address**
2213 1/2 HURST ROAD
AUBURNDALE, FL 33823

RHONDA DEESE
2771 JANIE TRAIL
AUBURNDALE FL  33823-9316



Dear Rhonda Deese:

We are writing to notify you that the servicing of your mortgage loan, that is, the right to collect payments from you, is being assigned, sold, or transferred from Homecomings Financial, LLC ("Homecomings Financial") to GMAC Mortgage, LLC (GMAC Mortgage), effective July 1, 2009.

**Please note that GMAC Mortgage and Homecomings Financial are affiliated companies. The only change to your mortgage account will be the name of your loan servicer.** Your new loan payments will be made payable to GMAC Mortgage instead of Homecomings Financial. Your account number, place for payments, and all other information relating to your mortgage loan remains the same.

*The assignment, sale, or transfer of the servicing of the mortgage loan does not affect any term or condition of the mortgage instruments, other than terms directly related to the servicing of your loan.*

Except in limited circumstances, the law requires that your present servicer send you this notice at least 15 days before the effective date of the transfer. Your new servicer must also send you this notice no later than 15 days after this effective date. In this case, all necessary information is combined in this one notice.

As of June 4, 2009 your current principal balance is $137,188.94, your current escrow balance is $0.00, your current interest rate is 9.500%, your total monthly payment is $1,186.63, and your next due date is 7/1/2009.

**Your present servicer is Homecomings Financial.**
Prior to July 1, 2009, if you have any questions regarding your account or the transfer of servicing, call Homecomings Financial's Customer Care Department toll free at 1-800-206-2901 between 6:00 am and 10:00 pm Central Time, Monday through Friday, and between 8:00 am and 2:00 pm Central Time, on Saturdays.

---

**Your new servicer will be GMAC Mortgage.**
Beginning July 1, 2009, if you have any questions regarding your account or the transfer of servicing, call GMAC Mortgage's Customer Care Department toll free at 1-800-766-4622 between 6:00 am and 10:00 pm Central Time, Monday through Friday, and between 8:00 am and 2:00 pm Central Time, on Saturdays.

**For GMAC Mortgage Customer Inquiries**
Beginning July 1, 2009, written inquiries regarding your account should be directed to GMAC Mortgage's Customer Care Correspondence Department at the following address:

   **GMAC Mortgage**
   **PO Box 4622**
   **Waterloo, IA  50704-4622**

**For GMAC Mortgage Customer Payments**
The mailing address for payments will not change. Payments will be processed by Homecomings Financial if received prior to July 1, 2009 and will be processed by GMAC Mortgage if received after July 1, 2009. Please send all payments due on or after that date to GMAC Mortgage at the following address:

   **GMAC Mortgage**
   **PO Box 780**
   **Waterloo IA  50704-0780**

**or the address provided on your GMAC Mortgage billing statement.**

---

**For Homecomings Financial Website Customer Payments**
If you have been utilizing the bill-pay service on Homecomings Financial's website, this service will be transitioned to the GMAC Mortgage Website, at www.gmacmortgage.com, via secure transfer in the near future. **Your user-name and password will not change and you will not need to re-register or re-enroll in your current payment program.**

**Other Important Information**
Please see the back side of this letter for additional information about Automatic Payment Deductions, Government Allotment/Bill Pay Services, Optional Insurances, Year-end Statements, Credit Reporting, and related information from the Real Estate Settlement Procedures Act (RESPA).

Homecomings Financial appreciated the opportunity to service your account. The team at GMAC Mortgage looks forward to servicing your future needs.

Sincerely,

*Charles Hoecker signature*

Charles Hoecker
SVP, Customer Care
Homecomings Financial and GMAC Mortgage, LLC

**Priore Declaration**

## **Exhibit 3-E**

July 19, 2013

RE: Claim Number 4927 Residential Capital, LLC, et al aka GMAC, Case Number 12-12020 (MG)

A Request to Produce letter was submitted to GMAC via certified receipt requested mail. GMAC and or akas failed to respond, therefore, I request $141,950.00 be forgiven plus the $1,000.00 fine be imposed for failure to respond within 60 days as per Law.

I hope the court will consider denial of bankruptcy and mandate GMAC and or the akas engage in bilateral substantive problem solving instead of unilateral dictates.

To date, I do not know who owns and holds my original Mortgage and Note. I receive phone calls from unfamiliar companies. I have attempted to dialogue to exhaustion with each new company.

The home is valued at $60,000.00. $167,000.00 was the purchase price. All payments were made timely. The loan number is ██████0203. The property address is 2213 ½ Hurst Road, Auburndale, Florida 33823.

Sincerely,

Rhonda Deese

Rhonda Deese

P.S. Enclosed please find 11 pages

**May 25 2012**


**GMAC Mortgage**
**Attn:  Customer Care**
**P. O. Box 780**
**Waterloo, IA  50704-0780**

RE: Request to produce on loan number: ████0203

To Whom It May Concern:

Please allow this to serve as a request to produce all loan origination
documents, full accounting history from origination to date, proof of
ownership of the loan by you, GMAC with chain of ownership from
the origination of the loan to date, loan originators contact information
to include name, address and telephone number.


For your convenience the account information is as follows:

Account number:              ████0203
Account name:                Rhonda Deese
Account property address:    2213 ½ Hurst Road, Auburndale, Florida
                             33823
Account contact number:      863-665-1002

Please mail the above requested to P. O. Box 456, Auburndale, FL
33823


Looking forward to your prompt response within 60 days. Thank you
for your time in this matter.

Sincerely,

*Rhonda Deese*

Rhonda Deese

# EX. #7927

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

GMAC MORTGAGE
ATTN: CUSTOMER CARE
P. O. BOX 780
WATERLOO, IA
50704-0780

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X **Greg Caya**
☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
MAY 2 8 2012

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)    7011 3500 0002 2960 7845

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

UNITED STATES POSTAL SERVICE



First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

RHONDA DEESE
P. O. BOX 456
AUBURNDALE, FL
        33823

Rhonda Deese
P. O. Box 456
Auburndale, FL 33823

GMAC Mortgage
Attn:  Customer Care
P. O. Box 780
Waterloo, IA 50704-0780

5 of 11

#4427

6 of 17

# 4927

Exhibit 3 -

COPY

B 10 Modified (Official Form 10) (12/11)

## UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

### PROOF OF CLAIM

Name of Debtor and Case Number:
RESIDENTIAL CAPITAL, LLC, et al a/k/a GMAC, CASE NO. 12-12020 (MG)

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
RHONDA DEESE

Name and address where notices should be sent:
RHONDA DEESE
P. O. BOX 456
AUBURNDALE, FL 33823
Telephone number: 863-258-6304 OR   email: RhondaDeese@
863-665-1002   tampabay.rr.com

Name and address where payment should be sent (if different from above):
SAME AS ABOVE
Telephone number: SAME AS ABOVE   email: SAME AS ABOVE

Claim # **4927**
Initials **PMH**

☐ Check this box if this claim amends a previously filed claim.

Court Claim
Number:_____
(If known)

Filed on:_____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1.** Amount of Claim as of Date Case Filed: $142,950.00

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2.** Basis for Claim: FAILURE TO PRODUCE REGARDING REAL ESTATE
(See instruction #2)   (SEE ATTACHED LETTER)

**3.** Last four digits of any number by which creditor identifies debtor:
0203

**3a.** Debtor may have scheduled account as:
_____ (See instruction #3a)

**3b.** Uniform Claim Identifier (optional):
_____ (See instruction #3b)

**4.** Secured Claim (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☑Real Estate  ☐Motor Vehicle  ☐Other
Describe:

Value of Property: $_____  Annual Interest Rate_____% ☐Fixed ☐Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim,

if any: $_____   Basis for perfection: _____

Amount of Secured Claim: $_____   Amount Unsecured: $_____

**5.** Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(___).

Amount entitled to priority:
$142,950.00

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6.** Claim Pursuant to 11 U.S.C. § 503(b)(9):
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.
$142,950.00 (See instruction #6)

**7.** Credits. The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

**8.** Documents: Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #8, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**9.** Signature: (See instruction #9) Check the appropriate box.
☑ I am the creditor.  ☐ I am the creditor's authorized agent. (Attach copy of power of attorney, if any.)  ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)  ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: RHONDA DEESE
Title:_____
Company:_____   *Rhonda Deese* 11/14/2012
Address and telephone number (if different from notice address above):   (Signature)   (Date)
SAME AS ABOVE

Telephone number: SAME AS ABOVE   Email: SAME AS ABOVE

RECEIVED
NOV 15 2012
KURTZMAN CARSON CONSULTANTS
COURT USE ONLY

*Penalty for presenting fraudulent claims: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

121202012111500000000040

May 25 2012

*Sent U.S. mail.*
*05/25/12 Certified*
*Receipt Requested.*

GMAC Mortgage
Attn: Customer Care
P. O. Box 780
Waterloo, IA 50704-0780

RE: Request to produce on loan number: ████ 0203

To Whom It May Concern:

Please allow this to serve as a request to produce all loan origination
documents, full accounting history from origination to date, proof of
ownership of the loan by you, GMAC with chain of ownership from
the origination of the loan to date, loan originators contact information
to include name, address and telephone number.

For your convenience the account information is as follows:

Account number:         ████ 0203
Account name:           Rhonda Deese
Account property address: 2213 ½ Hurst Road, Auburndale, Florida
                          33823
Account contact number:  863-665-1002

Please mail the above requested to P. O. Box 456, Auburndale, FL
33823

Looking forward to your prompt response within 60 days. Thank you
for your time in this matter.

Sincerely,

*Rhonda Deese*

Rhonda Deese

ResCap Claims Processing Center
c/o KCC
2335 Alaska Ave
El Segundo, CA 90245

```
FIRST CLASS
US POSTAGE PAID
EL SEGUNDO CA
PERMIT NO. 45049
```

**Rhonda Deese**
**P.O. Box 456**
**Auburndale, FL 33823**

### PROOF OF CLAIM CONFIRMATION
Your proof of claim filed against **Residential Capital, LLC**,
case no **12-12020** was received on 11/15/2012
and assigned claim number **4927**


For more information, please visit **www.kccllc.net/rescap** or call 1-888-251-2914

# RESCAP

**MORRISON** | **FOERSTER**

June 21, 2013

**Claim Number:** 4927

Dear Claimant: Rhonda Deese

You are receiving this letter because you or someone on your behalf filed a Proof of Claim form in the jointly-administered chapter 11 bankruptcy cases of Residential Capital, LLC ("ResCap"), GMAC Mortgage, LLC and other affiliated debtors and debtors in possession (collectively, the "Debtors") pending before the United States Bankruptcy Court for the Southern District of New York, Case No. 12-12020 (MG) (the "ResCap bankruptcy case"), and we need additional information from you regarding the claim(s) ("claim") you are asserting against one or more of the Debtors.

**The Information we Need From You Regarding Your Proof of Claim:**
We reviewed a copy of the Proof of Claim form and documents, if any, that you filed in the ResCap bankruptcy case. A copy of your Proof of Claim form is enclosed for your reference. After reviewing the Proof of Claim form and any documents you submitted, we have determined that you did not provide sufficient information to support your "Basis for Claim" and we do not have sufficient information to understand the calculations you used to determine the amount you claim to be owed. In order to evaluate your claim, we need to understand the specific reasons as to why you believe you are owed money or are entitled to other relief from one or more of the Debtors. Please reply using the attached form and provide a written explanation, with supporting documentation, and include a detailed explanation of how you calculated the amount of your claim.

**You Must Respond to this Letter by no Later Than July 22, 2013:**
In accordance with the Order of the Bankruptcy Court (Docket No. 3294, filed March 21, 2013), you **must** respond to this letter by no later than July 22, 2013 with an explanation stating the legal and factual reasons why you believe you are owed money or are entitled to other relief from one or more of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases). You **must** provide copies of any and all documentation that you believe supports the basis for and amount of your claim. A form is included with this letter to assist you in responding to our request for additional information.

**Consequences of Failing to Respond:**
If you do not provide the requested information regarding the basis for and amount of your claim and the supporting documentation by July 22, 2013, the Debtors may file a formal objection to your Proof of Claim on one or more bases, including that you failed to provide sufficient information and documentation to support your claim. If the Debtors file such an objection and it is successful, your claim may be disallowed and permanently expunged. If your claim is disallowed and expunged, you will not receive any payment for your claim and any other requests you may have made for non-monetary relief in your Proof of Claim will be denied. Therefore, it is very important that you respond by the date stated above with the requested information and documentation supporting the basis for and amount of your claim.

Residential Capital, LLC    P.O. Box 385220    Bloomington, Minnesota 55438

Claim Number: 4927
Rhonda Deese
Type: POC

**For Those With a Mortgage Loan Originated or Serviced by One of the Debtors:**
If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the loan number and property address that the loan relates to in the information and any documentation that you send us, so that we can effectively search our records for information on your property and loan, and evaluate your claim.

**Questions:**
If you have any questions about this letter, or need help in providing the requested information and document(s), you should contact an attorney. You may also contact the Special Counsel to the Official Committee of Unsecured Creditors[1] with general questions (contact information provided below):

**SPECIAL COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
SILVERMANACAMPORA LLP
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
Telephone: 866-259-5217
Website: http://silvermanacampora.com
E-mail address: rescapborrower@silvermanacampora.com

**You must send the requested information and document(s) supporting your claim on or before the date provided in this letter to either:**

    **(i)**    **Claims.Management@gmacrescap.com; or**
    **(ii)**    **Residential Capital, LLC**
               **P.O. Box 385220**
               **Bloomington, Minnesota 55438**

**Please mark each document you send with the Claim Number referenced above.**

Sincerely,

Claims Management
Residential Capital, LLC

---

[1] Please be advised that SilvermanAcampora LLP does not represent you individually and, therefore, cannot provide you with legal advice.

Residential Capital, LLC   P.O. Box 385220   Bloomington, Minnesota 55438

# RESCAP

JUL 2 2 2013

MORRISON | FOERSTER

To_____

By_____

## Claim Information

| Claim Number | 4927 |
|---|---|

| Basis of Claim | |
|---|---|
| Explanation that states the legal and factual reasons why you believe you are owed money or are entitled to other relief from one of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases) and, you **must** provide copies of any and all documentation that you believe supports the basis for your claim. | *See attached letter* |

If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the following loan information, so that we can effectively search our records for information on your property and loan, and evaluate your claim.

| Loan Number: | | |
|---|---|---|
| Address of property related to the above loan number: | | |
| City: | State: | ZIP Code: |

Additional resources may be found at  -  http://www.kccllc.net/rescap

Residential Capital, LLC    P.O. Box 385220  Bloomington, MN  55438

Claim Number: 4927
Rhonda Deese
Type: POC

▶▶ Pull To Open  **EXTREMELY URGENT**  Please Rush To Addressee

Schedule package pickup right from your
home or office at usps.com/pickup

Print postage online - Go to usps.com/post





U.S. POSTAGE
PAID
AUBURNDALE, FL
33823
JUL 19 13
AMOUNT
**$19.95**
00085275-07

1007

**PLEASE PRESS FIRMLY**                                   **PLEA**


# EXPRESS MAIL
**UNITED STATES POSTAL SERVICE**

# Flat Rate
# Mailing Envelope
**For Domestic and International Use**

**Visit us at usps.com**



When used internat
affix customs decla
(PS Form 2976, or :

EI768127335US

**Addressee Copy**
Label 11-B, March 2004

## EXPRESS MAIL
**UNITED STATES POSTAL SERVICE®**   **Post Office To Addressee**

**DELIVERY (POSTAL USE ONLY)**

| Delivery Attempt | Time | ☐ AM ☐ PM | Employee Signature |
| Mo.   Day | | | |
| Delivery Attempt | Time | ☐ AM ☐ PM | Employee Signature |
| Mo.   Day | | | |
| Delivery Date | Time | ☐ AM ☐ PM | Employee Signature |
| Mo.   Day | | | |

**CUSTOMER USE ONLY**

**ORIGIN (POSTAL SERVICE USE ONLY)**

| PC ZIP Code | Day of Delivery | Postage |
| | ☐ Next ☐ 2nd ☐ 2nd Del. Day | $ |
| Date Accepted | Scheduled Date of Delivery | Return Receipt Fee |
| | Month   Day | $ |
| Mo.   Day   Year | Scheduled Time of Delivery | COD Fee   Insurance Fee |
| Time Accepted  ☐ AM  ☐ PM | ☐ Noon ☐ 3 PM | $     $ |
| | Military | Total Postage & Fees |
| Flat Rate ☐ or Weight | ☐ 2nd Day ☐ 3rd Day | $ |
| ____ lbs. ____ ozs. | Int'l Alpha Country Code | Acceptance Emp. Initials |

☐ Weekend  ☐ Holiday  ☐ Mailer Signature

**FROM:** (PLEASE PRINT)   PHONE (

**TO:** (PLEASE PRINT)   PHONE (

**FOR PICKUP OR TRACKING**

ZIP + 4 (U.S. ADDRESSES ONLY. DO NOT USE FOR FOREIGN POSTAL CODES.)

☐ ☐ ☐ ☐ ☐ + ☐ ☐ ☐ ☐

FOR INTERNATIONAL DESTINATIONS, WRITE COUNTRY NAME BELOW.







USPS packaging pro
awarded Cradle to C
for their ecologically-
For more information
mbdc.com/usps

Cradle to Cradle Certified™ is a

**Please recycle.**

082708 EM EP13F  OCT 2008

**Priore Declaration**

**Exhibit 3-F**

**GMAC** Mortgage

**CUSTOMER INFORMATION**

| | | PROPERTY ADDRESS |
|---|---|---|
| Name: | Rhonda Deese | 2213 1/2 HURST ROAD |
| | | AUBURNDALE    FL 33823 |
| Account Number: | 0203 | |
| Home Phone #: | (863)665-1002 | |

Visit us at www.gmacmortgage.com for
account information or to apply on-line.

RHONDA DEESE
PO BOX 456
AUBURNDALE FL  33823-0456

For information about your existing account,
please call: 1-800-766-4622.

For information about refinancing or obtaining
a new loan, please call: 1-866-690-8322

Please verify your mailing address, borrower and co-borrower information.   Make necessary corrections on this portion of the statement, detach and mail to address listed for inquiries on the reverse side.

## Account Information

| | |
|---|---|
| Account Number | 0203 |
| Statement Date | April 03, 2012 |
| Maturity Date | July 01, 2035 |
| Interest Rate | 7.12500 |
| Interest Paid Year-to-Date | $3,140.91 |
| Taxes Paid Year-to-Date | $0.00 |
| Escrow Balance | $0.00 |
| Principal Balance(PB)* | $131,790.07 |

## Details of Amount Due/Paid

| | |
|---|---|
| Principal and Interest | $968.12 |
| Subsidy/Buydown | $0.00 |
| Escrow | $0.00 |
| Amount Past Due | $0.00 |
| Outstanding Late Charges | $0.00 |
| Other | $0.00 |
| Total Amount Due | $968.12 |
| Account Due Date | May 01, 2012 |

**For Customer Care inquiries call: 1-800-766-4622**
**For Insurance inquiries call:    1-800-256-9962**
**For Payment Arrangements call: 1-800-850-4622**

## Account Activity Since Last Statement

| Description | Pmt Date | Tran. Date | Tran. Total | Principal | Interest | Escrow | Add'l Products | Late Charge | Other |
|---|---|---|---|---|---|---|---|---|---|
| Payment | 04/01/12 | 04/03/12 | $968.12 | $184.52 | $783.60 | | | | |

**\*This is your Principal Balance only, not the amount required to pay the loan in full. For payoff figures and mailing instructions, call the Customer Care number above or you may obtain necessary payoff figures through our automated system (24 hours a day, 7 days a week).**
See back for automatic payment sign-up information and other payment options.

## Important News

Interested in refinancing while interest rates are still near historic lows?  Our loan specialists are here to help—call 877-528-3817 today to review all of your options.

Start saving with an Ally Bank Online Savings Account. You'll earn rates that are consistently among the most competitive in the country. To learn more, call 1-877-247-ALLY (2559). Member FDIC.

**See Reverse Side For Important Information And State Specific Disclosures**

## Mail This Portion With Your Payment

### Mortgage Payment Coupon

| Account Number | Due Date | Mortgage Payment | Total Amount Due | Amount Due With Late Fee if Received 15 Days AFTER Due Date | |
|---|---|---|---|---|---|
| 0203 RHONDA DEESE | 05/01/12 | $968.12 | $968.12 | $1,016.52 | **GMAC** Mortgage |

Please assist GMAC Mortgage
in applying your payment

| Extra Funds | | |
|---|---|---|
| Full Payment(s) | $ | |
| ADDITIONAL Principal | $ | |
| ADDITIONAL Escrow | $ | |
| Late Charge | $ | |
| Other Fees (please specify) | $ | |
| Total Amount Enclosed | $ | |

Sign here to enroll in monthly ACH.
(See back for details.)

GMAC MORTGAGE
PO BOX 9001719
LOUISVILLE KY  40290-1719

02  0512        0203  00096812  04840  22222  5

## Refinancing or Purchasing a New Home

If you are considering refinancing or purchasing a new home, simply call 1-866-690-8322 or visit www.gmacmortgage.com for fast, convenient service.

**To Apply Online**
www.gmacmortgage.com

**To Apply by Phone**
1-866-690-8322

## Convenient Payment Options

### Automatic Payment Plan

By signing the box on the front of the statement, GMAC Mortgage is authorized to withdraw your **scheduled payment** on your **due date** from your bank account. Please understand that you must continue to remit monthly payments by check **until written confirmation is received.**

**Online Payment Services** — Pay your mortgage bills and view your mortgage account statement online! To get started simply register for Account Access at www.gmacmortgage.com, log-in, and follow the enrollment instructions.

**Mail or Express Mail** — When making your mortgage payment, please detach the coupon portion and mail with your check or money order. Do not send cash. Do not send post dated checks. If paying more than the amount due, be sure to indicate on the coupon how to apply the excess money. Please write your account number on your check or money order.

**If you use a third party bill payer service or if you do not have your mortgage payment coupon** send to:  GMAC Mortgage, Attn: Payment Processing
PO Box 79135, Phoenix, AZ 85062-9135

**For Express Mail Only** send to:  GMAC Mortgage, 6716 Grade Lane,
Building 9, Suite 910, Louisville, KY 40213-1407

**Pay by Phone** — For information and the fee to use this quick and convenient service call **1-800-766-4622.** Please have your bank routing number and bank account number available when you call.

## Account Information or Questions — 1-800-766-4622 or www.gmacmortgage.com

Our automated telephone service will help you get fast and confidential answers to questions. Be sure to have your account number and social security number available for identification. You can call 24 hours a day, 7 days a week. Representatives are available from 6:00 a.m.-10:00 p.m. CT Monday-Friday, and 8:00 a.m.-2:00 p.m. CT Saturday.

Special Number for the Hearing Impaired: 1-866-684-8439

**Inquiries** — General inquiries/correspondence should be mailed separately from your account payments.

**Supplemental Tax Bills** — If you receive a supplemental or interim bill from the tax collector and would like the bill paid from escrow, promptly forward the bill to the address listed below prior to the delinquency date.

| General Inquiries | Insurance Policies/Bills | Tax Bills | Tax Bills in PA or MA |
|---|---|---|---|
| GMAC Mortgage | GMAC Mortgage | GMAC Mortgage | GMAC Mortgage |
| Attn: Customer Care | P.O. Box 4025 | Attn: Tax Dept. | Attn: Tax Dept. |
| P.O. Box 780 | Coraopolis, PA 15108-6942 | P.O. Box 961219 | P.O. Box 961241 |
| Waterloo, IA 50704-0780 | 1-800-256-9962 | FT. Worth, TX 76161-0219 | Ft. Worth, TX 76161-0241 |

**Qualified Written Request** — Under the Real Estate Settlement Procedures Act, a qualified written request is a written correspondence, other than notice on your payment coupon or other payment medium supplied by us, regarding the servicing of your loan which includes your name, account number, and your reasons for the request. Any qualified written request you wish to submit must be sent to: GMAC Mortgage, Attn: Customer Care, PO Box 1330, Waterloo, IA 50704-1330.

## Important Information

**Electronic Debit** — When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic funds transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic funds transfer, funds may be withdrawn from your account as soon as the same day your payment is received, and you will not receive your check back from your financial institution.

**Important Notice** — GMAC Mortgage may assess a return check fee consistent with the laws of your state and your mortgage contract on all checks returned unpaid by your financial institution. Additionally, GMAC Mortgage may be attempting to collect a debt and any information obtained will be used for that purpose. GMAC Mortgage may charge a fee for processing payoff requests.

**Important Credit Reporting Notification** — We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

**Partial Payments** — Partial payment funds, if not specified, will be posted to outstanding fees, escrow shortages or as a principal reduction in accordance with the terms of your Note.

**Optional Product Information** — Failure to pay a monthly charge for an Optional Product billed under "Add'l Products" will not cause your mortgage account to be in default. Please call **1-800-766-4622** if you have any questions or to cancel your Optional Product enrollment.

**FDIC** - Contact the FDIC at 1-877-ASK-FDIC (1.877.275.3342) or http://www.fdic.gov/consumers/loans/prevention/index.html for information about options that may help you avoid foreclosure, brochures to educate you about foreclosure rescue scams, and telephone and internet referrals to legitimate mortgage counselors.

**New York Property Owners** — As your mortgage servicer, we are registered with the New York Banking Superintendent. You may file complaints about us with the New York State Banking Department. You may also obtain additional information from the New York State Banking Department by calling the Department's Consumer Help Unit at 1-877-BANK-NYS or by visiting the Department's website at www.banking.state.ny.us.



### STATE LICENSING DISCLOSURES

NMLS Unique Identifier # 1045; Alaska Mortgage Broker/Lender Licensee #AK1045; Arizona Mortgage Banker License # BK-0908590; Licensed by the Department of Corporations under the California Residential Mortgage Lending Act; Colorado Responsible Party: Tom West. To check the license status of your mortgage broker, visit http://www.dora.state.co.us/real-estate/index.htm; Georgia Residential Mortgage Licensee # 5845; Illinois Residential Mortgage Licensee # MB.6760182 by the Illinois Department of Financial and Professional Regulation—Division of Banking, 122 South Michigan Avenue, Suite 1900, Chicago, Illinois 60603, (312) 793-3000; Massachusetts Mortgage Lender and Broker License # MC1045; Minnesota: This is not an offer to enter into an agreement. Any such offer may only be made in accordance with the requirements of Minn. Stat. Section 47.206 (3) and (4); Mississippi Licensed Mortgage Company; Montana Mortgage Lender Licensee # 1045; Licensed by the Nevada Division of Mortgage Lending to make loans secured by liens on real property, License # 610; GMAC Mortgage, LLC, 10775 Double R Blvd, Suite 123, Reno, NV 89521, (775) 853-4622; Licensed by the New Hampshire Banking Department; Licensed by the N.J. Department of Banking and Insurance; Licensed Mortgage Banker—NYS Banking Department; Ohio Mortgage Loan Act Certificate of Registration # SM.501453.000; Ohio Mortgage Broker Act Mortgage Banker Exemption # MBMB.850031.000; Oregon Mortgage Lending License # ML-160; Licensed by the Pennsylvania Department of Banking; Rhode Island Licensed Lender and Licensed Loan Broker; Licensed by the Virginia State Corporation Commission License # MC-4473; Washington Consumer Loan Company License # CL-1045. GMAC Mortgage, LLC (licensed in some states as GMAC Mortgage, LLC d/b/a ditech). 1100 Virginia Drive, Fort Washington, PA 19034 (215-734-5000). Equal Housing Lender.

## IMPORTANT INFORMATION

**Schedule of Standard Servicing Fees**

| Fee Name | Fee Description | Estimated Fee Amount |
|---|---|---|
| Subordination | Processing/underwriting fee to review new loan details and our existing second lien loan to consider permitting the new loan to have priority, or first lien position, over our existing second lien loan. | $100.00 |
| Payoff Statement | Up to five statements may be requested within a 365 day period at no charge. Additional statement requests received within that same timeframe will be charged a fee of $20. | No Charge |
| Non Sufficient Funds (NSF) Fee | Fee charged for a check that was applied to the borrower's account but returned unpaid by the borrower's depository institution (bank, savings bank, etc). | $10.00 - $30.00 |
| Pay by Phone | One time charge to a borrower to make a payment for using the GMAC Mortgage Pay by Phone service. Use of this service is optional. Other payment options are available that have no additional costs. | $7.50 via phone $12.50 via customer service |
| Wire | Fee assessed for wired payments. Use of this service is optional. Other payment options are available that have no additional costs. | $7.50 |
| Late Charges | Penalty charged to the borrower for exceeding the grace period in which to present the monthly mortgage payment. | Fees assessed according to loan documents |
| Balloon Reset/Cast | Fee required to reset or recast balloon loans when your loan documents allow for this function. | $250.00 - $350.00 |
| Property Inspection | Fee charged for the inspection of the secured property in the event of default or abandonment. | $11.25 |
| Recording Fee | Fee charged by the county recorder's office to record the release / satisfaction when the loan is paid-in-full. | $10.00 - $12.60 |
| BPO | Brokers Price Opinion | $83.00 - $125.00 |
| All fees and amounts are subject to change without prior notice. Additional fees and amounts may apply depending on your specific request and the status of your loan | | |

**New York Property Owners**:
As your mortgage servicer, we are registered with the New York Banking Superintendent. You may file complaints about us with the New York State Banking Department. You may also obtain additional information from the New York State Banking Department by calling the Department's Consumer Help Unit at 1-877-BANK-NYS or by visiting the Department's website at www.banking.state.ny.us.

**Texas Property Owners**:
COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH LAMAR, SUITE 201, AUSTIN, TX 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 877-276-5550.

A complaint form and instructions may be downloaded and printed from the Department's website located at www.sml.texas.gov or obtained from the Department upon request by mail at the address above, by telephone at its toll-free consumer hotline listed above, or by email at smlinfo@sml.texas.gov.



**Priore Declaration**

**<u>Exhibit 3-G</u>**

**GMAC** Mortgage

**CUSTOMER INFORMATION**

| | | PROPERTY ADDRESS |
|---|---|---|
| Name: | Rhonda Deese | 2213 1/2 HURST ROAD |
| | | AUBURNDALE    FL 33823 |
| Account Number: | 0203 | |
| Home Phone #: | (863)665-1002 | |

Visit us at www.gmacmortgage.com for account information or to apply on-line.

02/11/10 11:30:0   004129 20123025 LEESB04 DAREG5   1 OZ DDM LEESB0005P 148376   GM

RHONDA DEESE
PO BOX 456
AUBURNDALE FL  33823-0456

For information about your existing account, please call: 1-800-766-4622.

For information about refinancing or obtaining a new loan, please call: 1-866-690-8322

Please verify your mailing address, borrower and co-borrower information.   Make necessary corrections on this portion of the statement, detach and mail to address listed for inquiries on the reverse side.

## Account Information

| | |
|---|---|
| Account Number | 0203 |
| Statement Date | May 01, 2012 |
| Maturity Date | July 01, 2035 |
| Interest Rate | 7.12500 |
| Interest Paid Year-to-Date | $3,923.41 |
| Taxes Paid Year-to-Date | $0.00 |
| Escrow Balance | $0.00 |
| Principal Balance(PB)* | $131,604.45 |

## Details of Amount Due/Paid

| | |
|---|---|
| Principal and Interest | $968.12 |
| Subsidy/Buydown | $0.00 |
| Escrow | $0.00 |
| Amount Past Due | $0.00 |
| Outstanding Late Charges | $0.00 |
| Other | $0.00 |
| Total Amount Due | $968.12 |
| Account Due Date | June 01, 2012 |

**For Customer Care inquiries call: 1-800-766-4622**
**For Insurance inquiries call:    1-800-256-9962**
**For Payment Arrangements call: 1-800-850-4622**

## Account Activity Since Last Statement

| Description | Pmt Date | Tran. Date | Tran. Total | Principal | Interest | Escrow | Add'l Products | Late Charge | Other |
|---|---|---|---|---|---|---|---|---|---|
| Payment | 05/01/12 | 05/01/12 | $968.12 | $185.62 | $782.50 | | | | |

*This is your Principal Balance only, not the amount required to pay the loan in full.  For payoff figures and mailing instructions, call the Customer Care number above or you may obtain necessary payoff figures through our automated system (24 hours a day, 7 days a week).
See back for automatic payment sign-up information and other payment options.

## Important News

Now is a great time to buy a home! If you're in the market for your next home, our trained loan agents will help you review all of the financing options available to you – call 877-528-3817 today!

See Reverse Side For Important Information And State Specific Disclosures

## Mail This Portion With Your Payment

### Mortgage Payment Coupon

| Account Number | Due Date | Mortgage Payment | Total Amount Due | Amount Due With Late Fee if Received 15 Days AFTER Due Date | GMAC Mortgage |
|---|---|---|---|---|---|
| 0203 RHONDA DEESE | 06/01/12 | $968.12 | $968.12 | $1,016.52 | |

Please assist GMAC Mortgage in applying your payment

| Extra Funds | | |
|---|---|---|
| Full Payment(s) | $ | |
| ADDITIONAL Principal | $ | |
| ADDITIONAL Escrow | $ | |
| Late Charge | $ | |
| Other Fees (please specify) | $ | |
| Total Amount Enclosed | $ | |

Sign here to enroll in monthly ACH. (See back for details.)

GMAC MORTGAGE
PO BOX 9001719
LOUISVILLE KY  40290-1719



02  0612        0203  00096812  04840  22222  3

## Refinancing or Purchasing a New Home

If you are considering refinancing or purchasing a new home, simply call 1-866-690-8322 or visit www.gmacmortgage.com for fast, convenient service.

**To Apply Online**
www.gmacmortgage.com

**To Apply by Phone**
1-866-690-8322

## Convenient Payment Options

### Automatic Payment Plan

By signing the box on the front of the statement, GMAC Mortgage is authorized to withdraw your scheduled payment on **your due date** from your bank account. Please understand that you must continue to remit monthly payments by check until written confirmation is received.

**Online Payment Services** — Pay your mortgage bills and view your mortgage account statement online! To get started simply register for Account Access at www.gmacmortgage.com, log-in, and follow the enrollment instructions.

**Mail or Express Mail** — When making your mortgage payment, please detach the coupon portion and mail with your check or money order. Do not send cash. Do not send post dated checks. If paying more than the amount due, be sure to indicate on the coupon how to apply the excess money. Please write your account number on your check or money order.

If you use a third party bill payer service or if you
do not have your mortgage payment coupon send to:    GMAC Mortgage, Attn: Payment Processing
                                                    PO Box 79135, Phoenix, AZ 85062-9135

For Express Mail Only send to:    GMAC Mortgage, 6716 Grade Lane,
                                  Building 9, Suite 910, Louisville, KY 40213-1407

**Pay by Phone** — For information and the fee to use this quick and convenient service call 1-800-766-4622. Please have your bank routing number and bank account number available when you call.

## Account Information or Questions — 1-800-766-4622 or www.gmacmortgage.com

Our automated telephone service will help you get fast and confidential answers to questions. Be sure to have your account number and social security number available for identification. You can call 24 hours a day, 7 days a week. Representatives are available from 6:00 a.m.-10:00 p.m. CT Monday-Friday, and 8:00 a.m.-2:00 p.m. CT Saturday.

Special Number for the Hearing Impaired: 1-866-684-8439

**Inquiries** — General inquiries/correspondence should be mailed separately from your account payments.

**Supplemental Tax Bills** — If you receive a supplemental or interim bill from the tax collector and would like the bill paid from escrow, promptly forward the bill to the address listed below prior to the delinquency date.

| **General Inquiries** | **Insurance Policies/Bills** | **Tax Bills** | **Tax Bills in PA or MA** |
|---|---|---|---|
| GMAC Mortgage | GMAC Mortgage | GMAC Mortgage | GMAC Mortgage |
| Attn: Customer Care | P.O. Box 4025 | Attn: Tax Dept. | Attn: Tax Dept. |
| P.O. Box 780 | Coraopolis, PA 15108-6942 | P.O. Box 961219 | P.O. Box 961241 |
| Waterloo, IA 50704-0780 | 1-800-256-9962 | FT. Worth, TX 76161-0219 | Ft. Worth, TX 76161-0241 |

**Qualified Written Request** — Under the Real Estate Settlement Procedures Act, a qualified written request is a written correspondence, other than notice on your payment coupon or other payment medium supplied by us, regarding the servicing of your loan which includes your name, account number, and your reasons for the request. Any qualified written request you wish to submit must be sent to: GMAC Mortgage, Attn: Customer Care, PO Box 1330, Waterloo, IA 50704-1330.

## Important Information

**Electronic Debit** — When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic funds transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic funds transfer, funds may be withdrawn from your account as soon as the same day your payment is received, and you will not receive your check back from your financial institution.

**Important Notice** — GMAC Mortgage may assess a return check fee consistent with the laws of your state and your mortgage contract on all checks returned unpaid by your financial institution. Additionally, GMAC Mortgage may be attempting to collect a debt and any information obtained will be used for that purpose. GMAC Mortgage may charge a fee for processing payoff requests.

**Important Credit Reporting Notification** — We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

**Partial Payments** — Partial payment funds, if not specified, will be posted to outstanding fees, escrow shortages or as a principal reduction in accordance with the terms of your Note.

**Optional Product Information** — Failure to pay a monthly charge for an Optional Product billed under "Add'l Products" will not cause your mortgage account to be in default. Please call 1-800-766-4622 if you have any questions or to cancel your Optional Product enrollment.

**FDIC** - Contact the FDIC at 1-877.ASK.FDIC (1.877.275.3342) or http://www.fdic.gov/consumers/loans/prevention/index.html for information about options that may help you avoid foreclosure, brochures to educate you about foreclosure rescue scams, and telephone and internet referrals to legitimate mortgage counselors.

**New York Property Owners** — As your mortgage servicer, we are registered with the New York State Banking Superintendent. You may file complaints about us with the New York State Banking Department. You may also obtain additional information from the New York State Banking Department by calling the Department's Consumer Help Unit at 1-877-BANK-NYS or by visiting the Department's website at www.banking.state.ny.us.



STATE LICENSING DISCLOSURES

NMLS Unique Identifier # 1045; Alaska Mortgage Broker/Lender Licensee #AK1045; Arizona Mortgage Banker License # BK-0908590; Licensed by the Department of Corporations under the California Residential Mortgage Lending Act; Colorado Responsible Party: Tom West. To check the license status of your mortgage broker, visit http://www.dora.state.co.us/real-estate/index.htm; Georgia Residential Mortgage Licensee # 5845; Illinois Residential Mortgage Licensee # MB.6760182 by the Illinois Department of Financial and Professional Regulation—Division of Banking, 122 South Michigan Avenue, Suite 1900, Chicago, Illinois 60603, (312) 793-3000; Massachusetts Mortgage Lender and Broker License # MC1045; Minnesota: This is not an offer to enter into an agreement. Any such offer may only be made in accordance with the requirements of Minn. Stat. Section 47.206 (3) and (4); Mississippi Licensed Mortgage Company; Montana Mortgage Lender Licensee # 1045; Licensed by the Nevada Division of Mortgage Lending to make loans secured by liens on real property, License # 610; GMAC Mortgage, LLC, 10775 Double R Blvd, Suite 123, Reno, NV 89521, (775) 853-4622; Licensed by the New Hampshire Banking Department; Licensed by the N.J. Department of Banking and Insurance; Licensed Mortgage Banker—NYS Banking Department; Ohio Residential Mortgage Loan Act Certificate of Registration # SM.501453.000; Ohio Mortgage Broker Act Mortgage Banker Exemption # MBMB.850031.000; Oregon Mortgage Lending License # ML-160; Licensed by the Pennsylvania Department of Banking; Rhode Island Licensed Lender and Licensed Loan Broker; Licensed by the Virginia State Corporation Commission License # MC-4473; Washington Consumer Loan Company License # CL-1045. GMAC Mortgage, LLC (licensed in some states as GMAC Mortgage, LLC d/b/a ditech). 1100 Virginia Drive, Fort Washington, PA 19034 (215-734-5000). Equal Housing Lender.

## IMPORTANT INFORMATION

**Schedule of Standard Servicing Fees**

| Fee Name | Fee Description | Estimated Fee Amount |
|---|---|---|
| Subordination | Processing/underwriting fee to review new loan details and our existing second lien loan to consider permitting the new loan to have priority, or first lien position, over our existing second lien loan. | $100.00 |
| Payoff Statement | Fee charged when a payoff statement is requested to be mailed or faxed. | No Charge |
| Non Sufficient Funds (NSF) Fee | Fee charged for a check that was applied to the borrower's account but returned unpaid by the borrower's depository institution (bank, savings bank, etc). | No Charge |
| Pay by Phone | One time charge to a borrower to make a payment for using the GMAC Mortgage Pay by Phone service. Use of this service is optional. Other payment options are available that have no additional costs. | $7.50 via phone $12.50 via customer service |
| Wire | Fee assessed for wired payments. Use of this service is optional. Other payment options are available that have no additional costs. | $7.50 |
| Late Charges | Penalty charged to the borrower for exceeding the grace period in which to present the monthly mortgage payment. | Fees assessed according to loan documents |
| Balloon Reset/Cast | Fee required to reset balloon loans or recast a loan when your loan documents allow for this function. | $170-$1200 (includes hard dollar costs which range by county) |
| Property Inspection | Fee charged for the inspection of the secured property in the event of default or abandonment. | $11.25 |
| Recording Fee | Fee charged by the county recorder's office to record the release / satisfaction when the loan is paid-in-full. | $10.00 - $12.60 |
| BPO | Brokers Price Opinion | $83.00 - $125.00 |
| All fees and amounts are subject to change without prior notice. Additional fees and amounts may apply depending on your specific request and the status of your loan | | |

**New York Property Owners**:
As your mortgage servicer, we are registered with the New York Banking Superintendent. You may file complaints about us with the New York State Banking Department. You may also obtain additional information from the New York State Banking Department by calling the Department's Consumer Help Unit at 1-877-BANK-NYS or by visiting the Department's website at www.banking.state.ny.us.

**Texas Property Owners**:
COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH LAMAR, SUITE 201, AUSTIN, TX 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 877-276-5550.

A complaint form and instructions may be downloaded and printed from the Department's website located at www.sml.texas.gov or obtained from the Department upon request by mail at the address above, by telephone at its toll-free consumer hotline listed above, or by email at smlinfo@sml.texas.gov.



**Priore Declaration**

## **Exhibit 3-H**

**Acct:** ▓▓ 0203   **Name:**   RHONDA DEESE      **Sub:**    **Investor:** 96400   **Warn:** 5   **Lock:** 1   **Stop:** 0      **Page:**

**SSN:** 262850466                 **Type:**                                         **Refresh Date:**

| | | |
|---|---|---|
| - Dates - | **Paid To:** 12/1/2012 | **Next Due:** 1/1/2013    **Last Pmt:** 12/31/2012 |
| - Bal - | **Prin:** $0.00 | **Esc:** $0.00 |
| - Uncol - | **LC:** $0.00 | **P&I Adv:** $0.00    **Esc Sht:** $0.00 |

**NOTES:**

| Trans Added Date | Trans Type | Area ID that Originated the Message | Document Notice Id | Document Text Id | Document Text Type Code | Add Teller | TransactionDescription |
|---|---|---|---|---|---|---|---|
| 5/7/2007 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL EI16T |
| 5/8/2007 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL EI16T |
| 5/14/2007 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 5/14/2007 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 5/14/2007 | DMD | | | | | T:22222 | 05/11/07 16:15:08 |
| 5/15/2007 | NT | TAX | | | | T:20002 | *taxon-FA mailed dlq tax letter 5/15/07. ac |
| 5/16/2007 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 5/16/2007 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 5/16/2007 | DMD | | | | | T:22222 | 05/16/07 19:55:27 |
| 5/17/2007 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 5/22/2007 | ET | | 0 | 0 | 0 | | ARM CHANGE NOTICE SCHEDULED FOR  05/23/07 |
| 5/25/2007 | CBR | | 0 | 00 | 1 | T:00000 | PURCHASED LOAN: SERVICING DATE =06/29/05 |
| 5/31/2007 | D19 | | 0 | 04 | 8 | | ARM CHANGE NOTICE CREATED - LETTER |
| 6/5/2007 | DM | | | | | T:00000 | EARLY IND: SCORE 069 MODEL EI16T |
| 6/19/2007 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 7/5/2007 | DM | | | | | T:00000 | EARLY IND: SCORE 069 MODEL EI16T |
| 7/16/2007 | NT | ALT03 | | | | T:01002 | Fnma libor discontinued, letter sent |
| 7/16/2007 | NT | ALT03 | | | | T:01002 | with new index .     Arm deparments |
| 7/17/2007 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 7/17/2007 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 7/17/2007 | DMD | | | | | T:22222 | 07/17/07 09:21:25          PAR3 CONNECT |
| 7/17/2007 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 7/17/2007 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 7/17/2007 | DMD | | | | | T:22222 | 07/17/07 03:17:41 |
| 7/18/2007 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 7/18/2007 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 7/18/2007 | DMD | | | | | T:22222 | 07/18/07 02:38:52 |
| 7/18/2007 | NT | CSH | | | | T:18912 | b1 caled re JULY lc advise make pmt before lc |
| 7/18/2007 | NT | CSH | | | | T:18912 | could be waive. JULY pmt overnighted by b1. |

| Date | Code | Col3 | Col4 | Col5 | Tcode | Description |
|---|---|---|---|---|---|---|
| 7/18/2007 | NT | CSH | | | T:18912 | jeremiah 473885 07/19/07 11:42:12 |
| 7/19/2007 | DMD | | | | T:22222 | |
| 7/19/2007 | DMD | | | | T:22222 | 07/19/07 07:27:20                 NO ANSWER |
| 7/19/2007 | DMD | | | | T:22222 | 07/19/07 02:21:37 |
| 7/19/2007 | D28 | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 7/20/2007 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 7/20/2007 | DMD | | | | T:22222 | 07/20/07 06:09:26           PAR3 CONNECT |
| 7/20/2007 | DMD | | | | T:22222 | 07/20/07 02:36:57                 NO ANSWER |
| 7/20/2007 | DM | | | | T:21552 | TT B1; VAI; ADV TAD,LC; RFD: SHE ADV SHE MAILED IT |
| 7/20/2007 | DM | | | | T:21552 | OUT ON 07/02/07 AND IT WAS RETURNED TO HER FOR A |
| 7/20/2007 | DM | | | | T:21552 | SHORTAGE IN THE STAMP AMOUNT; SHE RE-SENT |
| 7/20/2007 | DM | | | | T:21552 | OVERNIGHT ON 07/19/07; PWUNA/8746923 |
| 7/20/2007 | DM | | | | T:21552 | DFLT REASON 1 CHANGED TO: OTHER |
| 7/20/2007 | DM | | | | T:21552 | ACTION/RESULT CD CHANGED FROM      TO BRSS |
| 7/23/2007 | DM | | | | T:00000 | PROMISE BROKEN 07/23/07 PROMISE DT 07/21/07 |
| 7/23/2007 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 7/23/2007 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 7/23/2007 | DMD | | | | T:22222 | 07/21/07 02:47:33 |
| 7/30/2007 | NT | TAX | | | T:21010 | Taxes paid current per Redemption Statement |
| 7/30/2007 | NT | CSH | | | T:21845 | b1 ci to waive her lc $47.81 bec she sent the fee |
| 7/30/2007 | NT | CSH | | | T:21845 | earlier but something wrong with the mirror adv as |
| 7/30/2007 | NT | CSH | | | T:21845 | 1time courtesy we will waive the lc/ roland m |
| 7/30/2007 | NT | CSH | | | T:21845 | 73739 |
| 8/7/2007 | DM | | | | T:00000 | EARLY IND: SCORE 070 MODEL EI16T |
| 8/15/2007 | D28 | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 9/5/2007 | DM | | | | T:00000 | EARLY IND: SCORE 069 MODEL EI16T |
| 9/18/2007 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 9/18/2007 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 9/18/2007 | DMD | | | | T:22222 | 09/18/07 11:44:57                 PAR3 CONNECT |
| 9/18/2007 | NT | INQ | | | T:13885 | mr christopher deese (nephew) ci to get tad.. adv |
| 9/18/2007 | NT | INQ | | | T:13885 | not auth adv on opt.. mary r 83159 |
| 9/19/2007 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 9/19/2007 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 9/19/2007 | DMD | | | | T:22222 | 09/19/07 03:04:36 |
| 9/19/2007 | D28 | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 9/21/2007 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 9/21/2007 | DMD | | | | T:22222 | 09/21/07 16:13:18 |
| 9/21/2007 | DMD | | | | T:22222 | 09/21/07 13:58:10                 NO ANSWER |
| 9/24/2007 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 9/24/2007 | DMD | | | | T:22222 | 09/24/07 16:42:47 NO ANS |

| 9/24/2007 | DMD | | | | | T:22222 | 09/24/07 16:42:15 NO ANS |
| 9/25/2007 | DMD | | | | | T:22222 | 09/25/07 11:16:20 | NO ANSWER |
| 9/25/2007 | DMD | | | | | T:22222 | 09/25/07 14:05:29 | NO ANSWER |
| 9/25/2007 | DMD | | | | | T:22222 | 09/25/07 11:16:20 | NO ANSWER |
| 10/5/2007 | DM | | | | | T:00000 | EARLY IND: SCORE 070 MODEL EI16T |
| 10/17/2007 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/17/2007 | DMD | | | | | T:22222 | 10/17/07 20:13:03 |
| 10/17/2007 | DMD | | | | | T:22222 | 10/17/07 16:25:16 | NO ANSWER |
| 10/18/2007 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/18/2007 | DMD | | | | | T:22222 | 10/18/07 08:25:10 ANS MACH |
| 10/18/2007 | DMD | | | | | T:22222 | 10/18/07 08:24:30 ANS MACH |
| 10/18/2007 | NT | CSH | | | | T:22039 | b1 ci to inq about what information we would |
| 10/18/2007 | NT | CSH | | | | T:22039 | require to make a pbp, adv we would need her chck |
| 10/18/2007 | NT | CSH | | | | T:22039 | acc num and her rt num. gabriel a/77589 |
| 10/19/2007 | DMD | | | | | T:22222 | 10/19/07 10:31:26 | LEFT MESSAGE |
| 10/19/2007 | DMD | | | | | T:22222 | 10/19/07 13:25:31 | NO ANSWER |
| 10/19/2007 | DMD | | | | | T:22222 | 10/19/07 10:31:26 | LEFT MESSAGE |
| 10/19/2007 | NT | CSH | | | | T:22300 | b1 made pbp |
| 10/19/2007 | NT | CSH | | | | T:22300 | Payment Amount: $1247.18 |
| 10/19/2007 | NT | CSH | | | | T:22300 | Additional Principal: $0.00 |
| 10/19/2007 | NT | CSH | | | | T:22300 | Additional Escrow: $0.00 |
| 10/19/2007 | NT | CSH | | | | T:22300 | Late Charge: $74.70 |
| 10/19/2007 | NT | CSH | | | | T:22300 | Other Fee: $0.00 |
| 10/19/2007 | NT | CSH | | | | T:22300 | Transaction Fee: $12.50 |
| 10/19/2007 | NT | CSH | | | | T:22300 | Total Debit: $1,334.38 |
| 10/19/2007 | NT | CSH | | | | T:22300 | Transaction Confirmation Number: 2007101941281882 |
| 10/19/2007 | NT | CSH | | | | T:22300 | glen v 83073 |
| 10/19/2007 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 10/22/2007 | OL | | 0 | 41 | 7 | | WDOYCSH - PAY-BY-PHONE LETTER |
| 11/6/2007 | DM | | | | | T:00000 | EARLY IND: SCORE 069 MODEL EI16T |
| 11/15/2007 | NT | ALT | | | | T:21680 | b1 ci inq abt rate change and when will next |
| 11/15/2007 | NT | ALT | | | | T:21680 | change and ceiling rate - adv b1 will change every |
| 11/15/2007 | NT | ALT | | | | T:21680 | 6 mos to a ceiling rate of 14.125 - b1 inq what |
| 11/15/2007 | NT | ALT | | | | T:21680 | new pmt will be on 02/01/08 pmt - adv b1 of approx |
| 11/15/2007 | NT | ALT | | | | T:21680 | $100.00 increase if 1% cap is added to curr rate |
| 11/15/2007 | NT | ALT | | | | T:21680 | of 10.125 - b1 inq abt poss ref - adv b1 of 800# |
| 11/15/2007 | NT | ALT | | | | T:21680 | for dir lending - janeen h4083 |
| 11/15/2007 | PAY | | 0 | 70 | 7 | | ORIG TO: RHONDA DEESE |
| 11/15/2007 | PAY | | 0 | 70 | 7 | | INT TO 121507 EXP DT 121507 AMT 0141760.95 |
| 11/15/2007 | NT | | | | | T:21680 | TellerID:21680 |

| 11/15/2007 | NT | | | | | T:21680 | Fax Number: |
| 11/15/2007 | NT | | | | | T:21680 | Phone Number:8636651002 |
| 11/15/2007 | NT | | | | | T:21680 | 141760.95: Final Payoff Amount |
| 11/15/2007 | NT | | | | | T:21680 | Requestor Name:Rhonda Deese |
| 11/15/2007 | NT | ALT | | | | T:22151 | b1 ci asking for the next change on interest |
| 11/15/2007 | NT | ALT | | | | T:22151 | rate.adv to be xfrd to arm.ask if she will refi |
| 11/15/2007 | NT | ALT | | | | T:22151 | will there be ppp.adv to be xfrd to refi.ask for |
| 11/15/2007 | NT | ALT | | | | T:22151 | skipping nov.adv can't be done.choose to be xfrd |
| 11/15/2007 | NT | ALT | | | | T:22151 | to arm,give direct# for refi.richels73952 |
| 11/19/2007 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 11/19/2007 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 11/19/2007 | DMD | | | | | T:22222 | 11/17/07 09:12:48 |
| 11/20/2007 | DM | | | | | T:00000 | PROMISE KEPT 11/20/07 PROMISE DT 11/30/07 |
| 11/20/2007 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 11/20/2007 | DMD | | | | | T:22222 | 11/20/07 10:22:03 SUCCESSFUL |
| 11/20/2007 | DMD | | | | | T:22222 | 11/20/07 10:19:30 ANS MACH |
| 11/20/2007 | NT | | | | | T:25041 | PBP VRU14  CONF # 2007112042439366  AMT $1309.53 |
| 11/20/2007 | DM | | | | | T:20104 | B1 HAD CUST I WASNT ABLE TO COMPLETE MINI MARANDA |
| 11/20/2007 | DM | | | | | T:20104 | I DID NT RELEASE INFO SHE WILL CB TO MK PMT |
| 11/20/2007 | DM | | | | | T:20104 | BY END OF MNTH CCOX8746554 |
| 11/20/2007 | DM | | | | | T:20104 | ACTION/RESULT CD CHANGED FROM BRSS TO BRSS |
| 11/20/2007 | D28 | | 0 | DT | 8 | | FORCED BILLING STATEMENT FROM REPORT R628 |
| 11/22/2007 | ET | | 0 | 0 | 0 | | ARM CHANGE NOTICE SCHEDULED FOR   11/23/07 |
| 11/26/2007 | D19 | | 0 | 04 | 8 | | ARM CHANGE NOTICE CREATED - LETTER |
| 12/5/2007 | DM | | | | | T:00000 | EARLY IND: SCORE 069 MODEL EI16T |
| 12/18/2007 | D28 | | 0 | DT | 8 | |  BILLING STATEMENT FROM REPORT R628 |
| 1/7/2008 | DM | | | | | T:00000 | EARLY IND: SCORE 069 MODEL EI16T |
| 1/16/2008 | D28 | | 0 | DT | 8 | |  BILLING STATEMENT FROM REPORT R628 |
| 2/5/2008 | DM | | | | | T:00000 | EARLY IND: SCORE 069 MODEL EI16T |
| 2/18/2008 | D28 | | 0 | DT | 8 | |  BILLING STATEMENT FROM REPORT R628 |
| 3/5/2008 | DM | | | | | T:00000 | EARLY IND: SCORE 068 MODEL EI16T |
| 3/13/2008 | NT | FCL | | | | T:15573 | bn1 ci re loan mod; xferred to loss mit |
| 3/13/2008 | DM | | | | | T:15573 | B1 CI RE EXPRESS ADD; GAVE INFO//SIEVEA73580 |
| 3/13/2008 | DM | | | | | T:15573 | ACTION/RESULT CD CHANGED FROM BRSS TO BRSS |
| 3/17/2008 | DM | | | | | T:00000 | PROMISE KEPT 03/14/08 PROMISE DT 03/16/08 |
| 3/17/2008 | DM | | | | | T:00000 | PROMISE BROKEN 03/17/08 PROMISE DT 03/16/08 |
| 3/18/2008 | D28 | | 0 | DT | 8 | |  BILLING STATEMENT FROM REPORT R628 |
| 4/7/2008 | DM | | | | | T:00000 | EARLY IND: SCORE 068 MODEL EI16T |
| 4/8/2008 | NT | FRD | | | | T:23437 | b1 ci to inq. abt a loan modifiction on the term's |
| 4/8/2008 | NT | FRD | | | | T:23437 | of the loan.I Informed b1 that I would be able to |

| | | | | | | |
|---|---|---|---|---|---|---|
| 4/8/2008 | NT | FRD | | | | T:23437 | transfer her to lm and she requested to have the |
| 4/8/2008 | NT | FRD | | | | T:23437 | lm number,I supplied her the lm number and the refi |
| 4/8/2008 | NT | FRD | | | | T:23437 | number.toddr4146 |
| 4/15/2008 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 4/22/2008 | DM | | | | | T:21529 | TT B1 VI ACC IS CURR ASKING ABT LOAN MOD,SD CANT |
| 4/22/2008 | DM | | | | | T:21529 | OR CONTINUE TO MAKE THE PMTS,SD WANTS TO BE BACK |
| 4/22/2008 | DM | | | | | T:21529 | IN 7%,NOT INTERESTED IN REFI SD DOESNT WANT TO SD |
| 4/22/2008 | DM | | | | | T:21529 | WILL JUST DEFAULT SD SHE IS A GOOD CUSTMER,ADV TO |
| 4/22/2008 | DM | | | | | T:21529 | CB ON 05/01 SD WANTS TO DO MOD NOW,ADV DETAILS |
| 4/22/2008 | DM | | | | | T:21529 | ACTION/RESULT CD CHANGED FROM OAAI TO OAAI |
| 4/22/2008 | DM | | | | | T:04467 | B1 CI LIVES IN PROPERTY WANTS LOAN MOD ADV NEED TO |
| 4/22/2008 | DM | | | | | T:04467 | GO OVER FINANCIALS WILL CALL BACK WITH THEM RFD |
| 4/22/2008 | DM | | | | | T:04467 | DINT KNOW IT WAS ARM LOAN |
| 4/22/2008 | DM | | | | | T:04467 | DFLT REASON 1 CHANGED TO: PAYMENT ADJUSTMENT |
| 4/22/2008 | DM | | | | | T:04467 | ACTION/RESULT CD CHANGED FROM OAPC TO OAAI |
| 4/22/2008 | FOR | | | | | | LMT BORR FIN REC ADDED |
| 4/25/2008 | CBR | | 0 | 00 | 1 | T:00000 | CHANGE IN PRIMARY BORROWERS ADDR |
| 5/2/2008 | DM | | | | | T:19519 | B1 CI V/I ADV OF TAD SAID CANT MAKE A PAYMNT FOR |
| 5/2/2008 | DM | | | | | T:19519 | $1348.91, REP ADV RE ARM LOAN AND SAID SHE WAS NOT |
| 5/2/2008 | DM | | | | | T:19519 | AWARE THAT THE PAYMNT WILL WENT UP TO THAT AMNT, |
| 5/2/2008 | DM | | | | | T:19519 | REP TOOK FINS HAVE NEGA SURP, SAID NOT SURE IF |
| 5/2/2008 | DM | | | | | T:19519 | WILLING TO SELL THE PROP OR WALK AWAY. REP ADV |
| 5/2/2008 | DM | | | | | T:19519 | OPTIONS WANTS TO CHECK LOAN MOD REP XFERD TO LM. |
| 5/2/2008 | DM | | | | | T:19519 | ACTION/RESULT CD CHANGED FROM OAAI TO BRUN |
| 5/2/2008 | FOR | | | | | | LMT BORR FIN REC ADDED |
| 5/2/2008 | NT | FCL | | | | T:22383 | b1 ci and inq about the los mit number and refi |
| 5/2/2008 | NT | FCL | | | | T:22383 | number, adv numbers, sd will call back//kristine |
| 5/2/2008 | NT | FCL | | | | T:22383 | p. 83091 |
| 5/6/2008 | DM | | | | | T:00000 | EARLY IND: SCORE 099 MODEL EI16T |
| 5/7/2008 | NT | TAX | | | | T:07261 | *TAXNON-FA MAILED DLQ TAX LTR 5/6/08.MAJ |
| 5/9/2008 | CBR | | 0 | 00 | 1 | T:00000 | CHANGE IN PRIMARY BORROWERS ADDR |
| 5/15/2008 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 5/17/2008 | ITR | | | | | | |
| 5/22/2008 | ET | | 0 | 0 | 0 | | ARM CHANGE NOTICE SCHEDULED FOR   05/23/08 |
| 5/26/2008 | D19 | | 0 | 04 | 8 | | ARM CHANGE NOTICE CREATED - LETTER |
| 5/30/2008 | CIT | INQ75 | | | | T:23896 | 002 new cit110 b1 ci req for pay |
| 5/30/2008 | CIT | INQ75 | | | | T:23896 | hist,thanks...russell e71564 |
| 5/30/2008 | CIT | INQ75 | | | | T:23896 | 001 DONE 05/30/08 BY TLR 23896 |
| 5/30/2008 | CIT | INQ75 | | | | T:23896 | TSK TYP 182-IRREGULAR AMORT |
| 5/30/2008 | CIT | INQ75 | | | | T:23896 | 001 closing cit 182 opened in |

| Date | Code | Type | | | | Ref | Description |
|------|------|------|---|---|---|-----|-------------|
| 5/30/2008 | CIT | INQ75 | | | | T:23896 | error-thanks...russell e71564 |
| 5/30/2008 | CIT | INQ75 | | | | T:23896 | 007 new cit 182 pls send amortization accounting |
| 5/30/2008 | CIT | INQ75 | | | | T:23896 | from the start of the loan to current as per |
| 5/30/2008 | CIT | INQ75 | | | | T:23896 | b1 request for her refference...pls send by |
| 5/30/2008 | CIT | INQ75 | | | | T:23896 | mail,thank you....russell e71564 |
| 6/2/2008 | CIT | INQ20 | | | | T:01373 | 002 DONE 06/02/08 BY TLR 01373 |
| 6/2/2008 | CIT | INQ20 | | | | T:01373 | TSK TYP 110-HISTORY REQUEST |
| 6/2/2008 | CIT | INQ20 | | | | T:01373 | 002 closing. mailed. lynnej/42924 |
| 6/2/2008 | NT | INQ20 | | | | T:01373 | ENHANCED HISTORY LETTER PRINTED |
| 6/5/2008 | DM | | | | | T:00000 | EARLY IND: SCORE 099 MODEL EI16T |
| 6/16/2008 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 7/2/2008 | NT | TAX | | | | T:23957 | b1 ci because hse has paid her own taxes, adv i |
| 7/2/2008 | NT | TAX | | | | T:23957 | would note acct and that i wasn't showing any |
| 7/2/2008 | NT | TAX | | | | T:23957 | disbursements going out, jolenec 2364215 |
| 7/7/2008 | DM | | | | | T:00000 | EARLY IND: SCORE 099 MODEL EI16T |
| 7/16/2008 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 8/5/2008 | DM | | | | | T:00000 | EARLY IND: SCORE 099 MODEL EI16T |
| 8/15/2008 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 9/5/2008 | DM | | | | | T:00000 | EARLY IND: SCORE 099 MODEL EI16T |
| 9/10/2008 | DMD | | | | | T:22222 | 09/10/08 14:44:15          PAR3 CONNECT |
| 9/10/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 9/10/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 9/10/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 9/10/2008 | DMD | | | | | T:22222 | 09/10/08 11:18:47          BUSY |
| 9/10/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 9/10/2008 | DM | | | | | T:23478 | TT B1 VER INFO. SD ALREADY MAILED THE PAYMNT OUT |
| 9/10/2008 | DM | | | | | T:23478 | IAO $1247.93 TO MAKE LOAN CURRENT. ADV CC,LC,-CR. |
| 9/10/2008 | DM | | | | | T:23478 | ASKING HOW TO MODIFY THE TERMS OF THE LOAN TO GET |
| 9/10/2008 | DM | | | | | T:23478 | LOWER INT, DOESNT WANT TO REFI. ADV TO GIVE FIN |
| 9/10/2008 | DM | | | | | T:23478 | INFO. |
| 9/10/2008 | DM | | | | | T:23478 | ACTION/RESULT CD CHANGED FROM OAPC TO BRSS |
| 9/12/2008 | DM | | | | | T:00000 | PROMISE KEPT 09/12/08 PROMISE DT 09/20/08 |
| 9/15/2008 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 10/7/2008 | DM | | | | | T:00000 | EARLY IND: SCORE 099 MODEL EI16T |
| 10/14/2008 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 11/5/2008 | DM | | | | | T:00000 | EARLY IND: SCORE 099 MODEL EI16T |
| 11/14/2008 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 11/21/2008 | ET | | 0 | 0 | 0 | | ARM CHANGE NOTICE SCHEDULED FOR   11/21/08 |
| 11/24/2008 | D19 | | 0 | 04 | 8 | | ARM CHANGE NOTICE CREATED - LETTER |
| 11/24/2008 | D19 | | 0 | 04 | 8 | | ARM CHANGE NOTICE CREATED - LETTER |

| Date | Code | Code2 | | | | Teller | Description |
|------|------|-------|---|---|---|--------|-------------|
| 12/5/2008 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 1/6/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 099 MODEL EI16T |
| 1/13/2009 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 2/3/2009 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 3/4/2009 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 4/6/2009 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 5/5/2009 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 5/18/2009 | NT | PAY | | | | T:02309 | b1 ci to req a po as of 06/15/09 adv the amt of |
| 5/18/2009 | NT | PAY | | | | T:02309 | 138885.83 cris a*8977802 |
| 5/18/2009 | PAY | | 0 | 70 | 7 | | ORIG TO: RHONDA DEESE |
| 5/18/2009 | PAY | | 0 | 70 | 7 | | INT TO 061509 EXP DT 061709 AMT 0138885.83 |
| 5/18/2009 | NT | | | | | T:02309 | TellerID:2309 |
| 5/18/2009 | NT | | | | | T:02309 | Fax Number:8632485354 |
| 5/18/2009 | NT | | | | | T:02309 | Phone Number:8636651002 |
| 5/18/2009 | NT | | | | | T:02309 | 138885.83: Final Payoff Amount |
| 5/18/2009 | NT | | | | | T:02309 | Requestor Name:Rhonda Deese |
| 5/22/2009 | ET | | 0 | 0 | 0 | | ARM CHANGE NOTICE SCHEDULED FOR   05/25/09 |
| 5/26/2009 | D19 | | 0 | 04 | 8 | | ARM CHANGE NOTICE CREATED - LETTER |
| 5/26/2009 | D19 | | 0 | 04 | 8 | | ARM CHANGE NOTICE CREATED - LETTER |
| 6/2/2009 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 6/26/2009 | NT | INQ | | | | T:13631 | updated mailing address per written req. |
| 6/29/2009 | NT | OCC | | | | T:01475 | Updated occupancy due to address change |
| 7/1/2009 | NT | ALT | | | | T:19292 | b1 ci rcvd noti int rtae chnged but not applied to |
| 7/1/2009 | NT | ALT | | | | T:19292 | her accct adv  int went down fr 9.5%to 8.50% eff |
| 7/1/2009 | NT | ALT | | | | T:19292 | 08/09 new pmt ioa 1091.74 /jazz h 8978016 |
| 7/1/2009 | NT | ALT | | | | T:31752 | b1 ci re the changes on the interest rate said she |
| 7/1/2009 | NT | ALT | | | | T:31752 | was not notified about it fxfr cl to specialiast |
| 7/1/2009 | NT | ALT | | | | T:31752 | nick p 8978077 |
| 7/7/2009 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 7/10/2009 | CBR | | 0 | 00 | 1 | T:00000 | CHANGE IN PRIMARY BORROWERS ADDR |
| 8/4/2009 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 9/2/2009 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 10/5/2009 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 11/3/2009 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 11/20/2009 | ET | | 0 | 0 | 0 | | ARM CHANGE NOTICE SCHEDULED FOR   11/23/09 |
| 11/24/2009 | D19 | | 0 | 04 | 8 | | ARM CHANGE NOTICE CREATED - LETTER |
| 12/7/2009 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 1/4/2010 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 2/5/2010 | DM | | | | | T:00000 | EARLY IND: SCORE 068 MODEL EI16T |
| 2/9/2010 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 3/2/2010 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 4/6/2010 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 5/4/2010 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 5/21/2010 | ET | | 0 | 0 | 0 | ARM CHANGE NOTICE SCHEDULED FOR  05/24/10 |
| 5/25/2010 | D19 | | 0 | 04 | 8 | ARM CHANGE NOTICE CREATED - LETTER |
| 6/2/2010 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 7/2/2010 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 8/5/2010 | DM | | | | T:00000 | EARLY IND: SCORE 068 MODEL EI16T |
| 8/6/2010 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 9/6/2010 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 10/5/2010 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 10/5/2010 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 10/5/2010 | DMD | | | | T:22222 | 10/05/10 09:15:17          No Answer |
| 10/6/2010 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 11/5/2010 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 11/22/2010 | ET | | 0 | 0 | 0 | ARM CHANGE NOTICE SCHEDULED FOR  11/23/10 |
| 11/24/2010 | D19 | | 0 | 04 | 8 | ARM CHANGE NOTICE CREATED - LETTER |
| 12/6/2010 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 1/6/2011 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 2/3/2011 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 2/3/2011 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 2/3/2011 | DMD | | | | T:22222 | 02/03/11 15:29:18 RINGING |
| 2/4/2011 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 2/4/2011 | DMD | | | | T:22222 | 02/04/11 17:10:15          LEFT MESSAGE |
| 2/4/2011 | DMD | | | | T:22222 | 02/04/11 12:30:23          No Answer |
| 2/7/2011 | DM | | | | T:00000 | EARLY IND: SCORE 068 MODEL EI16T |
| 2/8/2011 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 3/3/2011 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 3/3/2011 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 3/3/2011 | DMD | | | | T:22222 | 03/03/11 15:51:07 AUTOVOICE |
| 3/4/2011 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 3/4/2011 | DMD | | | | T:22222 | 03/04/11 17:38:24          PAR3 CONNECT |
| 3/4/2011 | DMD | | | | T:22222 | 03/04/11 12:09:27          No Answer |
| 3/7/2011 | DM | | | | T:00000 | EARLY IND: SCORE 068 MODEL EI16T |
| 3/7/2011 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 3/7/2011 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 3/7/2011 | DMD | | | | T:22222 | 03/07/11 15:27:40 AUTOVOICE |
| 3/8/2011 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 4/4/2011 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 5/3/2011 | DMD | | | | T:22222 | 00/00/00 00:00:00 |

| 5/3/2011 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 5/3/2011 | DMD | | | | T:22222 | 05/03/11 15:59:38 AUTOVOICE |
| 5/4/2011 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 5/4/2011 | DMD | | | | T:22222 | 05/04/11 15:33:58 NO ANSWER |
| 5/4/2011 | DMD | | | | T:22222 | 05/04/11 11:54:11 ANSWERING MACHINE |
| 5/5/2011 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 5/5/2011 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 5/5/2011 | DMD | | | | T:22222 | 05/05/11 14:50:38 AUTOVOICE |
| 5/6/2011 | D28 | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 5/20/2011 | ET | 0 | 0 | 0 | | ARM CHANGE NOTICE SCHEDULED FOR   05/23/11 |
| 5/24/2011 | D19 | 0 | 04 | 8 | | ARM CHANGE NOTICE CREATED - LETTER |
| 6/2/2011 | D28 | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 7/5/2011 | DM | | | | T:00000 | EARLY IND: SCORE 068 MODEL EI16T |
| 7/6/2011 | D28 | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 8/4/2011 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 8/4/2011 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 8/4/2011 | DMD | | | | T:22222 | 08/04/11 14:21:58 SUCCESSFUL |
| 8/4/2011 | DM | | | | T:23468 | OBC.TT B1,SD THAT SHE ALREADY MAILED THE PMNT |
| 8/4/2011 | DM | | | | T:23468 | ...DAVEC,8970853 |
| 8/4/2011 | DM | | | | T:23468 | ACTION/RESULT CD CHANGED FROM OAPC TO BRSS |
| 8/5/2011 | DM | | | | T:00000 | PROMISE KEPT 08/05/11 PROMISE DT 08/11/11 |
| 8/5/2011 | DM | | | | T:00000 | EARLY IND: SCORE 068 MODEL EI16T |
| 8/8/2011 | D28 | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 9/3/2011 | DM | | | | T:18491 | NA_MELIENEP8975461 |
| 9/3/2011 | DM | | | | T:18491 | ACTION/RESULT CD CHANGED FROM BRSS TO BRIN |
| 9/5/2011 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 9/5/2011 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 9/5/2011 | DMD | | | | T:22222 | 09/03/11 14:33:01 RINGING |
| 9/6/2011 | D28 | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 10/4/2011 | D28 | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 11/3/2011 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 11/3/2011 | DMD | | | | T:22222 | 11/03/11 14:45:24 VACANT |
| 11/3/2011 | DMD | | | | T:22222 | 11/03/11 20:10:19 AUTOVOICE |
| 11/4/2011 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 11/4/2011 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 11/4/2011 | DMD | | | | T:22222 | 11/04/11 13:38:27 AUTOVOICE |
| 11/7/2011 | D28 | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 11/22/2011 | ET | 0 | 0 | 0 | | ARM CHANGE NOTICE SCHEDULED FOR   11/23/11 |
| 11/24/2011 | D19 | 0 | 04 | 8 | | ARM CHANGE NOTICE CREATED - LETTER |
| 12/6/2011 | D28 | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |

| Date | Code | | | | | T-Code | Description |
|---|---|---|---|---|---|---|---|
| 1/3/2012 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 1/3/2012 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 1/3/2012 | DMD | | | | | T:22222 | 01/03/12 12:40:24 SUCCESSFUL |
| 1/3/2012 | DM | | | | | T:17529 | OBC TT B1. ADV TAD. SD WAS MAILED THE PMT ON |
| 1/3/2012 | DM | | | | | T:17529 | 01/01/12 IAO 968.12 REG MAIL. JASONB 8932669 |
| 1/3/2012 | DM | | | | | T:17529 | ACTION/RESULT CD CHANGED FROM OAAI TO BRPP |
| 1/3/2012 | DM | | | | | T:17529 | RFD_OBTAINED |
| 1/3/2012 | DM | | | | | T:17529 | ACTION/RESULT CD CHANGED FROM BRIN TO OAAI |
| 1/4/2012 | DM | | | | | T:00000 | PROMISE KEPT 01/03/12 PROMISE DT 01/11/12 |
| 1/5/2012 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 2/3/2012 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 2/3/2012 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 2/3/2012 | DMD | | | | | T:22222 | 02/03/12 13:49:33 MSG TO VOICE |
| 2/4/2012 | DM | | | | | T:02094 | OBC ; TT B1 ; SD MAILED PMT LAST 02/01/12 VIA REG |
| 2/4/2012 | DM | | | | | T:02094 | MAIL IAO 968.12 ;ADV LC ; ADV ACH AND MAP TO STOP |
| 2/4/2012 | DM | | | | | T:02094 | CALLS ; THEN B1 HU;PINKRY-8970876. |
| 2/4/2012 | DM | | | | | T:02094 | ACTION/RESULT CD CHANGED FROM OAAI TO BRPP |
| 2/4/2012 | DM | | | | | T:02094 | PAYMENT_ARRANGEMENTS_DISCUSSED |
| 2/4/2012 | DM | | | | | T:02094 | ACTION/RESULT CD CHANGED FROM BRPP TO OAAI |
| 2/6/2012 | DM | | | | | T:00000 | PROMISE KEPT 02/04/12 PROMISE DT 02/11/12 |
| 2/6/2012 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 2/6/2012 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 2/6/2012 | DMD | | | | | T:22222 | 02/04/12 12:56:16 SUCCESSFUL |
| 2/7/2012 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 3/3/2012 | DM | | | | | T:02501 | OBC TT B1 SD IT IS MAILED ON THE 1ST EVERY HU |
| 3/3/2012 | DM | | | | | T:02501 | ROXANNE.L/8412304 |
| 3/3/2012 | DM | | | | | T:02501 | ACTION/RESULT CD CHANGED FROM OAAI TO BRPP |
| 3/3/2012 | DM | | | | | T:02501 | PAYMENT_ARRANGEMENTS_DISCUSSED |
| 3/3/2012 | DM | | | | | T:02501 | ACTION/RESULT CD CHANGED FROM BRPP TO OAAI |
| 3/5/2012 | DM | | | | | T:00000 | PROMISE KEPT 03/05/12 PROMISE DT 03/11/12 |
| 3/5/2012 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 3/5/2012 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 3/5/2012 | DMD | | | | | T:22222 | 03/03/12 14:57:02 SUCCESSFUL |
| 3/6/2012 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 4/3/2012 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 4/3/2012 | DMD | | | | | T:22222 | 04/03/12 10:02:40 REORDER |
| 4/3/2012 | DMD | | | | | T:22222 | 04/03/12 18:16:47 RINGING |
| 4/4/2012 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 4/5/2012 | NT | LMT | | | | T:23021 | b1 ci re loan mod inquiry,adsvd website add and |
| 4/5/2012 | NT | LMT | | | | T:23021 | direct# for HHF inquiry advsd options for mod |

| Date | Code | Type | | | | Ref | Description |
|------|------|------|---|---|---|-----|-------------|
| 4/5/2012 | NT | LMT | | | | T:23021 | advsd HMP website as well pre-qualify the acct for |
| 4/5/2012 | NT | LMT | | | | T:23021 | HAMP however loan does'nt show into imminent |
| 4/5/2012 | NT | LMT | | | | T:23021 | default said want to have loan modified as she |
| 4/5/2012 | NT | LMT | | | | T:23021 | can't refi as of yet as per curr prop value is |
| 4/5/2012 | NT | LMT | | | | T:23021 | less than what was owed,explianed that loan  mod |
| 4/5/2012 | NT | LMT | | | | T:23021 | review will be based on her curr fin stat of the |
| 4/5/2012 | NT | LMT | | | | T:23021 | loan,as it is not even due until 05/01/12,said |
| 4/5/2012 | NT | LMT | | | | T:23021 | will chk govt website first then will |
| 4/5/2012 | NT | LMT | | | | T:23021 | decide,angela j 8412694 |
| 4/5/2012 | NT | PRD | | | | T:16823 | b1 ci.wanting info regarding possible refi as |
| 4/5/2012 | NT | PRD | | | | T:16823 | property value is down.transferred call.tammyb4028 |
| 5/2/2012 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 5/22/2012 | ET | | 0 | 0 | 0 | | ARM CHANGE NOTICE SCHEDULED FOR   05/23/12 |
| 5/23/2012 | CIT | INQ85 | | | | T:22047 | 001 DONE 05/23/12 BY TLR 22047 |
| 5/23/2012 | CIT | INQ85 | | | | T:22047 | TSK TYP 250-TEAM LEAD ONLY: |
| 5/23/2012 | CIT | INQ85 | | | | T:22047 | 001 CLOSING CIT 250 b1 ci to ask on dif bwtn first |
| 5/23/2012 | CIT | INQ85 | | | | T:22047 | pymnt amnt at orig $956.34, and current amount |
| 5/23/2012 | CIT | INQ85 | | | | T:22047 | $968.12, int rate is the same 7.125%, |
| 5/23/2012 | CIT | INQ85 | | | | T:22047 | explained first amnt was a fix rate, explained |
| 5/23/2012 | CIT | INQ85 | | | | T:22047 | the int calc on adjt, cust sd still not |
| 5/23/2012 | CIT | INQ85 | | | | T:22047 | understand, insisted amnt should be the same |
| 5/23/2012 | CIT | INQ85 | | | | T:22047 | ANA L/8406304 |
| 5/23/2012 | CIT | INQ85 | | | | T:08184 | 001 open new cit 250 b1 ci to ask why her pmnt is |
| 5/23/2012 | CIT | INQ85 | | | | T:08184 | higher that at the beggining of the loan she |
| 5/23/2012 | CIT | INQ85 | | | | T:08184 | was adv that its due to the arm loan |
| 5/23/2012 | CIT | INQ85 | | | | T:08184 | calculations were done and she still said that |
| 5/23/2012 | CIT | INQ85 | | | | T:08184 | the pmnt was wrong ,,, julio 8406015 |
| 5/23/2012 | NT | ALT | | | | T:03478 | BI CI RQTSD INFOA BOUT ORIGINAL PYMNT AMNT IN 2005 |
| 5/23/2012 | NT | ALT | | | | T:03478 | CSR ADVISED AMNT $956.34 BASED ON THE NOTE. THEN |
| 5/23/2012 | NT | ALT | | | | T:03478 | CUST ASKD WHY AMNT HAS CHANGED CSR TRANX TO |
| 5/23/2012 | NT | ALT | | | | T:03478 | SPECIALTY ISRAELG/8406424 |
| 5/24/2012 | D19 | | 0 | 04 | 8 | | ARM CHANGE NOTICE CREATED - LETTER |
| 6/4/2012 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 7/5/2012 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 7/19/2012 | DM | | | | | T:25101 | BREACH HOLD PLACED-EXPIRATION DATE 10/01/12 |
| 7/19/2012 | NT | DIS | | | | T:25101 | FEMA declaration due to Tropical Storm Debby. |
| 8/2/2012 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 9/4/2012 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 10/3/2012 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 10/4/2012 | CIT | INQ85 | | | | T:22047 | 002 DONE 10/04/12 BY TLR 22047 |

| Date | Code | Code2 | C1 | C2 | C3 | T | Description |
|---|---|---|---|---|---|---|---|
| 10/4/2012 | CIT | INQ85 | | | | T:22047 | TSK TYP 250 TEAM LEAD ONLY property had a decreease in value and she |
| 10/4/2012 | CIT | INQ85 | | | | T:22047 | wants account to be modified accordingly to |
| 10/4/2012 | CIT | INQ85 | | | | T:22047 | new value, no hardship, sd already decleidn |
| 10/4/2012 | CIT | INQ85 | | | | T:22047 | refi, sd will walked away from home, offere to |
| 10/4/2012 | CIT | INQ85 | | | | T:22047 | conect with col dept then, she agreed, b1 HU |
| 10/4/2012 | CIT | INQ85 | | | | T:22047 | during trasnf ANA L/8406304 |
| 10/4/2012 | CIT | INQ85 | | | | T:22047 | 002 LOSING CIT 250 b1 ci to ask for cert letter |
| 10/4/2012 | CIT | INQ85 | | | | T:22047 | sent 05/25/12 to req copy of the note and |
| 10/4/2012 | CIT | INQ85 | | | | T:22047 | accnt hist, inf no corr received, sd sent it |
| 10/4/2012 | CIT | INQ85 | | | | T:22047 | to PO Box 780, apol, explaiend that is a pymnt |
| 10/4/2012 | CIT | INQ85 | | | | T:22047 | processing, not CCS corr, offered to send |
| 10/4/2012 | CIT | INQ85 | | | | T:22047 | document, decliend sd letter with req was |
| 10/4/2012 | CIT | INQ85 | | | | T:22047 | already sent, sd atrny will take care of this |
| 10/4/2012 | CIT | INQ85 | | | | T:22047 | since she can not continue discussing accnt |
| 10/4/2012 | CIT | INQ85 | | | | T:08186 | 002 OPEN NEW CIT 250 B1 ci to and stated that call |
| 10/4/2012 | CIT | INQ85 | | | | T:08186 | was been recorded adv that she was not auth to |
| 10/4/2012 | CIT | INQ85 | | | | T:08186 | record the call and elevate call. |
| 10/4/2012 | CIT | INQ85 | | | | T:08186 | rosier/8406208 |
| 11/5/2012 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 11/9/2012 | CBR | | 0 | 00 | 1 | T:00000 | CURRENT:   < 30 DAYS |
| 11/22/2012 | ET | | 0 | 0 | 0 | | ARM CHANGE NOTICE SCHEDULED FOR  11/23/12 |
| 11/26/2012 | D19 | | 0 | 04 | 8 | | ARM CHANGE NOTICE CREATED - LETTER |
| 12/5/2012 | DM | | | | | T:00000 | EARLY IND: SCORE 068 MODEL EI16T |
| 12/5/2012 | NT | DIS | | | | T:03095 | FEMA moratorium date has expired. |
| 12/5/2012 | NT | DIS | | | | T:03095 | Disaster coding being removed. |
| 12/6/2012 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 12/6/2012 | DMD | | | | | T:22222 | 12/06/12 08:48:10 AUTOVOICE |
| 12/6/2012 | DMD | | | | | T:22222 | 12/06/12 16:03:54 RINGING |
| 12/7/2012 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 12/7/2012 | DMD | | | | | T:22222 | 12/07/12 14:08:53 RPC No Resolution |
| 12/7/2012 | DMD | | | | | T:22222 | 12/07/12 09:35:48 Answering Machine |
| 12/8/2012 | DM | | | | | T:14034 | OBC..TT B1 SD WILL NOT MAKE ANY PMTS,SD WILL STAY |
| 12/8/2012 | DM | | | | | T:14034 | ON THE PRO IF SHE WILL GET DOCS THAT IS GIVING HER |
| 12/8/2012 | DM | | | | | T:14034 | NEW PROP VALUE-CURRENT VALU,GOOD CDT,SD NO PROBLEM |
| 12/8/2012 | DM | | | | | T:14034 | MOVING OUT,ADV NEEDS COMPLETE PAPAERWORKS TO START |
| 12/8/2012 | DM | | | | | T:14034 | THE PROCESS,SD SHE WILL NOT |
| 12/8/2012 | DM | | | | | T:14034 | COMPLETEPAPERWORKS.WHILE SETTING |
| 12/8/2012 | DM | | | | | T:14034 | ACTION/RESULT CD CHANGED FROM OAAI TO BRFC |
| 12/8/2012 | DM | | | | | T:14034 | EXPECTAION FOR CONSEQUESCES OF DEL,SHE ALREADY |

| 12/8/2012 | DM | | | | | T:14034 | H J CATHERINEC 8412436 |
| 12/8/2012 | DM | | | | | T:14034 | ACTION/RESULT CD CHANGED FROM OAAI TO OAAI |
| 12/8/2012 | DM | | | | | T:14034 | CUSTOMER HAS NO INTENTION TO PURSUE PAYMENT |
| 12/8/2012 | DM | | | | | T:14034 | ARRANGEMENTS OR LOSS MITIGATION. |
| 12/8/2012 | DM | | | | | T:14034 | ACTION/RESULT CD CHANGED FROM BRPP TO OAAI |
| 12/10/2012 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 12/10/2012 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 12/10/2012 | DMD | | | | | T:22222 | 12/08/12 10:58:36 NONSUCCESS |
| 12/14/2012 | CBR | | 0 | 00 | 1 | T:00000 | CURRENT:   < 30 DAYS |
| 12/19/2012 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 12/28/2012 | NT | LTLTR | | | | T:25101 | Payment Reminder Sent 12.18.12 |
| 1/7/2013 | DM | | | | | T:00000 | EARLY IND: SCORE 035 MODEL EI16T |
| 1/9/2013 | DMD | | | | | T:22222 | 01/09/13 08:51:56 RINGING |
| 1/9/2013 | DMD | | | | | T:22222 | 01/09/13 16:32:22 AUTOVOICE |
| 1/9/2013 | DMD | | | | | T:22222 | 01/09/13 19:47:49 AUTOVOICE |
| 1/9/2013 | DM | | | | | T:19122 | OBC NO ANSWER ON THE OTHER LINE SHENLYC8412339 |
| 1/9/2013 | DM | | | | | T:19122 | ACTION/RESULT CD CHANGED FROM BRFC TO BRNA |
| 1/10/2013 | DMD | | | | | T:22222 | 01/10/13 14:56:54 AUTOVOICE |
| 1/10/2013 | DMD | | | | | T:22222 | 01/10/13 16:36:54 AUTOVOICE |
| 1/10/2013 | DMD | | | | | T:22222 | 01/10/13 18:33:58 AUTOVOICE |
| 1/10/2013 | CBR | | 0 | 00 | 1 | T:00000 | CURRENT:   < 30 DAYS |
| 1/11/2013 | DMD | | | | | T:22222 | 01/11/13 14:42:16 AUTOVOICE |
| 1/11/2013 | DMD | | | | | T:22222 | 01/11/13 16:43:00 AUTOVOICE |
| 1/11/2013 | DMD | | | | | T:22222 | 01/11/13 18:44:09 AUTOVOICE |
| 1/12/2013 | DM | | | | | T:18611 | OBC TT B1 DONT KNOW IF SHE CAN MKE PMT AND WILL |
| 1/12/2013 | DM | | | | | T:18611 | MEET AN ATTY TO DISCUSS RE THE ACC FOR OTHER |
| 1/12/2013 | DM | | | | | T:18611 | OPTIONS ADV MOD ADV CC *ANGELIQUEC8412263 |
| 1/12/2013 | DM | | | | | T:18611 | ACTION/RESULT CD CHANGED FROM OAAI TO BRSS |
| 1/12/2013 | DM | | | | | T:18611 | LOSS MITIGATION DISCUSSED AND/OR FINANCIAL PACKAGE |
| 1/12/2013 | DM | | | | | T:18611 | SENT. OUTBOUND CALL |
| 1/12/2013 | DM | | | | | T:18611 | ACTION/RESULT CD CHANGED FROM BRNA TO OAAI |
| 1/14/2013 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 1/14/2013 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 1/14/2013 | DMD | | | | | T:22222 | 01/12/13 11:46:17 NONSUCCESS |
| 1/17/2013 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 1/17/2013 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 1/17/2013 | DMD | | | | | T:22222 | 01/17/13 08:56:11 AUTOVOICE |
| 1/18/2013 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 1/18/2013 | DMD | | | | | T:22222 | 01/18/13 13:45:34 AUTOVOICE |
| 1/18/2013 | DMD | | | | | T:22222 | 01/18/13 19:32:14 RINGING |

| 1/19/2013 | DM | | | | | T:22684 | OBC-TT B1 RE SHE HV VER INC. |
| 1/19/2013 | DM | | | | | T:22684 | KATHERINE*P8412387 |
| 1/19/2013 | DM | | | | | T:22684 | ACTION/RESULT CD CHANGED FROM BRSS TO BRUN |
| 1/21/2013 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 1/21/2013 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 1/21/2013 | DMD | | | | | T:22222 | 01/19/13 10:12:24 NONSUCCESS |
| 1/21/2013 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 1/24/2013 | DMD | | | | | T:22222 | 01/24/13 15:05:37 AUTOVOICE |
| 1/24/2013 | DMD | | | | | T:22222 | 01/24/13 16:42:49 RINGING |
| 1/24/2013 | DMD | | | | | T:22222 | 01/24/13 17:55:56 AUTOVOICE |
| 1/24/2013 | NT | LTLTR | | | | T:25101 | Payment Reminder Sent |
| 1/24/2013 | DM | | | | | T:19128 | OBC, NA. KRISTINER8412258 |
| 1/24/2013 | DM | | | | | T:19128 | ACTION/RESULT CD CHANGED FROM BRNA TO BRNA |
| 1/24/2013 | DM | | | | | T:26200 | OBC;NA..MYSELLEC8412465 |
| 1/24/2013 | DM | | | | | T:26200 | ACTION/RESULT CD CHANGED FROM BRUN TO BRNA |
| 1/25/2013 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 1/25/2013 | DMD | | | | | T:22222 | 01/25/13 09:47:12 AUTOVOICE |
| 1/25/2013 | DMD | | | | | T:22222 | 01/25/13 14:21:55 NONSUCCESS |
| 1/25/2013 | DM | | | | | T:02088 | OBC- TT B1. SD IT WITH HER ATTY. SD WILL NOT MAKE |
| 1/25/2013 | DM | | | | | T:02088 | ANY PMT AND HANG UP. INCOMPLETE |
| 1/25/2013 | DM | | | | | T:02088 | VERFCTION.ZENAIDAV8412383 |
| 1/25/2013 | DM | | | | | T:02088 | ACTION/RESULT CD CHANGED FROM OAAI TO BRUN |
| 1/25/2013 | DM | | | | | T:02088 | OUTBOUND CALL |
| 1/25/2013 | DM | | | | | T:02088 | ACTION/RESULT CD CHANGED FROM BRNA TO OAAI |
| 1/30/2013 | DMD | | | | | T:22222 | 01/30/13 08:36:38 REORDER |
| 1/30/2013 | DMD | | | | | T:22222 | 01/30/13 10:16:05 AUTOVOICE |
| 1/30/2013 | DMD | | | | | T:22222 | 01/30/13 10:48:58 LEFT_MSG |
| 1/30/2013 | DM | | | | | T:18472 | OBC:LEFT MESSAGE TO VOICEMAIL.YELRIHSA8412508 |
| 1/30/2013 | DM | | | | | T:18472 | ACTION/RESULT CD CHANGED FROM BRUN TO BRLM |
| 1/31/2013 | DMD | | | | | T:22222 | 01/31/13 08:53:04 AUTOVOICE |
| 1/31/2013 | DMD | | | | | T:22222 | 01/31/13 11:46:32 AUTOVOICE |
| 1/31/2013 | DMD | | | | | T:22222 | 01/31/13 16:54:27 NONSUCCESS |
| 1/31/2013 | NT | HHFDY | | | | T:26280 | b1 sd will not get in touch w/ states for hhf |
| 1/31/2013 | CIT | COL66 | | | | T:26280 | 003 B1 cld, advised will mail financial package |
| 1/31/2013 | CIT | COL66 | | | | T:26280 | information. Provided expectations. |
| 1/31/2013 | DM | | | | | T:26280 | OBC-TT B1, B1 SD WL NOT MAKE PMT SINCE VALUE OF |
| 1/31/2013 | DM | | | | | T:26280 | THE PROP IS NOT THE SAME, B1 SD NO OTHR HH INCOME, |
| 1/31/2013 | DM | | | | | T:26280 | NO FINS RESERVES, NO HELP FROM F/F. LOOKING FOR |
| 1/31/2013 | DM | | | | | T:26280 | OPTION  CAN SEND HER PACKAGE FOR A SS OR LOAN MOD |
| 1/31/2013 | DM | | | | | T:26280 | - AND WILL THEN DETERMINE WHT OPTION SHE WILL |

| Date | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1/31/2013 | DM | | | | | T:26280 | TAKE ADV GUIDELINES AND |
| 1/31/2013 | DM | | | | | T:26280 | FPT REASON 1 CHANGED TO: CURTAILMENT OF INCOME |
| 1/31/2013 | DM | | | | | T:26280 | ACTION/RESULT CD CHANGED FROM OAAI TO BRSS |
| 1/31/2013 | DM | | | | | T:26280 | EXPECTATIONS FOR FAP. . . .JOYCEP8412507 |
| 1/31/2013 | DM | | | | | T:26280 | ACTION/RESULT CD CHANGED FROM OAAI TO OAAI |
| 1/31/2013 | DM | | | | | T:26280 | LOSS MITIGATION DISCUSSED AND/OR FINANCIAL PACKAGE |
| 1/31/2013 | DM | | | | | T:26280 | SENT. |
| 1/31/2013 | DM | | | | | T:26280 | ACTION/RESULT CD CHANGED FROM BRLM TO OAAI |
| 1/31/2013 | NT | RFDNT | | | | T:26280 | hardship startd - jan 2013 - b1 sd income reduced |
| 1/31/2013 | NT | RFDNT | | | | T:26280 | - started way back before this month sd in a real |
| 1/31/2013 | NT | RFDNT | | | | T:26280 | estate buss - - on-going. |
| 2/4/2013 | DM | | | | | T:00000 | EARLY IND: SCORE 330 MODEL EI30S |
| 2/4/2013 | CIT | EOY50 | | | | T:01504 | 003 DONE 02/04/13 BY TLR 01504 |
| 2/4/2013 | CIT | EOY50 | | | | T:01504 | TSK TYP 155-CC TRACK - LM F |
| 2/4/2013 | CIT | EOY50 | | | | T:01504 | 003 Closing CIT 155 |
| 2/4/2013 | NT | 155 | | | | T:01504 | CIT 155-LM Package Sent. |
| 2/5/2013 | DMD | | | | | T:22222 | 02/05/13 08:43:25 AUTOVOICE |
| 2/5/2013 | DMD | | | | | T:22222 | 02/05/13 16:07:19 AUTOVOICE |
| 2/5/2013 | DMD | | | | | T:22222 | 02/05/13 17:49:59 AUTOVOICE |
| 2/6/2013 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 2/6/2013 | DMD | | | | | T:22222 | 02/06/13 10:14:44 AUTOVOICE |
| 2/6/2013 | DMD | | | | | T:22222 | 02/06/13 17:16:28 REORDER |
| 2/7/2013 | DMD | | | | | T:22222 | 02/07/13 16:31:58 AUTOVOICE |
| 2/7/2013 | DMD | | | | | T:22222 | 02/07/13 18:19:23 RINGING |
| 2/7/2013 | DMD | | | | | T:22222 | 02/07/13 19:53:34 RINGING |
| 2/7/2013 | DM | | | | | T:22684 | OBC NO ANSWER. KATHERINE*P8412387 |
| 2/7/2013 | DM | | | | | T:22684 | ACTION/RESULT CD CHANGED FROM BRNA TO BRNA |
| 2/7/2013 | DM | | | | | T:18613 | OBC. NO ANSWER. MARIANB8412262 |
| 2/7/2013 | DM | | | | | T:18613 | ACTION/RESULT CD CHANGED FROM BRSS TO BRNA |
| 2/8/2013 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 2/8/2013 | DMD | | | | | T:22222 | 02/08/13 09:30:59 AUTOVOICE |
| 2/8/2013 | DMD | | | | | T:22222 | 02/08/13 14:11:09 NONSUCCESS |
| 2/8/2013 | DM | | | | | T:02085 | OBC: TT B1, HAVE SERVICING ISSUE B1 HU IN VER |
| 2/8/2013 | DM | | | | | T:02085 | /RAFAELX8412385 |
| 2/8/2013 | DM | | | | | T:02085 | ACTION/RESULT CD CHANGED FROM OAAI TO BRUN |
| 2/8/2013 | DM | | | | | T:02085 | OUTBOUND CALL |
| 2/8/2013 | DM | | | | | T:02085 | ACTION/RESULT CD CHANGED FROM BRNA TO OAAI |
| 2/12/2013 | D19 | | 0 | 05 | 8 | | DEF - OPTIONS TO AVOID FORECLOSURE |
| 2/13/2013 | DMD | | | | | T:22222 | 02/13/13 08:58:19 AUTOVOICE |
| 2/13/2013 | DMD | | | | | T:22222 | 02/13/13 15:55:57 INCOMPLETE |

| 2/13/2013 | DMD | | | | | T:22222 | 02/13/13 17:06:20 NONSUCCESS. |
| 2/13/2013 | DM | | | | | T:15194 | OBC TTB1; AT THE ONSET OF THE CALL, ASKED IF |
| 2/13/2013 | DM | | | | | T:15194 | PACKAGE RCVD ALREADY; ADV  NEEDS TO STATE DISCL |
| 2/13/2013 | DM | | | | | T:15194 | FIRST; SD DOES NOT WANT TO GO THRU THIS ANYMORE |
| 2/13/2013 | DM | | | | | T:15194 | AND JUST READ ON WHAT IS ON THE SCREEN THEN HU; |
| 2/13/2013 | DM | | | | | T:15194 | INC VER; /ARLENEV8412228 |
| 2/13/2013 | DM | | | | | T:15194 | ACTION/RESULT CD CHANGED FROM OAAI TO BRUN |
| 2/13/2013 | DM | | | | | T:15194 | PAYMENT ARRANGEMENTS WERE NOT MADE (RPC MUST BE |
| 2/13/2013 | DM | | | | | T:15194 | OBTAINED). OUTBOUND CALL |
| 2/13/2013 | DM | | | | | T:15194 | ACTION/RESULT CD CHANGED FROM BRUN TO OAAI |
| 2/13/2013 | DM | | | | | T:02490 | OBC:TT B1 SD REPEAT WHATS ON SCREEN SD KNOW JUST |
| 2/13/2013 | DM | | | | | T:02490 | DOING JOB,CUS HU,./LORENAP8412307 |
| 2/13/2013 | DM | | | | | T:02490 | ACTION/RESULT CD CHANGED FROM BRUN TO BRUN |
| 2/14/2013 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT:  30 DAYS |
| 2/15/2013 | FSV | | 0 | 00 | 1 | T:00000 | INSP TYPE D ORDERED;    REQ CD =AUTO DELQ |