# **Exhibit 6**

**24 C.F.R. § 3500.21**

WestlawNext

**§ 3500.21 Mortgage servicing transfers.**
Code of Federal Regulations | Title 24. Housing and Urban Development | Effective: January 16, 2009 to July 15, 2014  *(Approx. 12 pages)*

> Code of Federal Regulations
>   Title 24. Housing and Urban Development
>     Subtitle B. Regulations Relating to Housing and Urban Development
>       Chapter XX. Office of Assistant Secretary for Housing--Federal Housing
>       Commissioner, Department of Housing and Urban Development
>         Part 3500. Real Estate Settlement Procedures Act (Refs & Annos)

This section has been updated. Click here for the updated version.

Effective: January 16, 2009 to July 15, 2014

24 C.F.R. § 3500.21

§ 3500.21 Mortgage servicing transfers.

(a) Definitions. As used in this section:

Master servicer means the owner of the right to perform servicing, which may actually perform the servicing itself or may do so through a subservicer.

Mortgage servicing loan means a federally related mortgage loan, as that term is defined in § 3500.2, subject to the exemptions in § 3500.5, when the mortgage loan is secured by a first lien. The definition does not include subordinate lien loans or open-end lines of credit (home equity plans) covered by the Truth in Lending Act and Regulation Z, including open-end lines of credit secured by a first lien.

Qualified written request means a written correspondence from the borrower to the servicer prepared in accordance with paragraph (e)(2) of this section.

Subservicer means a servicer who does not own the right to perform servicing, but who does so on behalf of the master servicer.

Transferee servicer means a servicer who obtains or who will obtain the right to perform servicing functions pursuant to an agreement or understanding.

Transferor servicer means a servicer, including a table funding mortgage broker or dealer on a first lien dealer loan, who transfers or will transfer the right to perform servicing functions pursuant to an agreement or understanding.

(b) Servicing Disclosure Statement; Requirements.

> (1) At the time an application for a mortgage servicing loan is submitted, or within 3 business days after submission of the application, the lender, mortgage broker who anticipates using table funding, or dealer who anticipates a first lien dealer loan shall provide to each person who applies for such a loan a Servicing Disclosure Statement. A format for the Servicing Disclosure Statement appears as Appendix MS–1 to this part. The specific language of the Servicing Disclosure Statement is not required to be used. The information set forth in "Instructions to Preparer" on the Servicing Disclosure Statement need not be included with the information given to applicants, and material in square brackets is optional or alternative language. The model format may be annotated with additional information that clarifies or enhances the model language. The lender, table funding mortgage broker, or dealer should use the language that best describes the particular circumstances.
>
> (2) The Servicing Disclosure Statement must indicate whether the servicing of the loan may be assigned, sold, or transferred to any other person at any time while the loan is outstanding. If the lender, table funding mortgage broker, or dealer in a first lien dealer loan will engage in the servicing of the mortgage loan for which the applicant has applied, the disclosure may consist of a statement that the entity will service such loan and does not intend to sell, transfer, or assign the servicing of the loan. If the lender, table funding mortgage broker, or dealer in a first lien dealer loan will not engage in the servicing of the mortgage loan for which the applicant has applied, the disclosure may consist of a statement that such entity intends to assign, sell, or transfer servicing of

such mortgage loan before the first payment is due. In all other instances, the disclosure must state that the servicing of the loan may be assigned, sold or transferred while the loan is outstanding.

(c) Servicing Disclosure Statement; Delivery. The lender, table funding mortgage broker, or dealer that anticipates a first lien dealer loan shall deliver the Servicing Disclosure Statement within 3 business days from receipt of the application by hand delivery, by placing it in the mail, or, if the applicant agrees, by fax, e-mail, or other electronic means. In the event the borrower is denied credit within the 3 business-day period, no servicing disclosure statement is required to be delivered. If co-applicants indicate the same address on their application, one copy delivered to that address is sufficient. If different addresses are shown by co-applicants on the application, a copy must be delivered to each of the co-applicants.

(d) Notices of Transfer; loan servicing--

(1) Requirement for notice.

(i) Except as provided in this paragraph (d)(1)(i) or paragraph (d)(1)(ii) of this section, each transferor servicer and transferee servicer of any mortgage servicing loan shall deliver to the borrower a written Notice of Transfer, containing the information described in paragraph (d)(3) of this section, of any assignment, sale, or transfer of the servicing of the loan. The following transfers are not considered an assignment, sale, or transfer of mortgage loan servicing for purposes of this requirement if there is no change in the payee, address to which payment must be delivered, account number, or amount of payment due:

(A) Transfers between affiliates;

(B) Transfers resulting from mergers or acquisitions of servicers or subservicers; and

(C) Transfers between master servicers, where the subservicer remains the same.

(ii) The Federal Housing Administration (FHA) is not required under paragraph (d) of this section to submit to the borrower a Notice of Transfer in cases where a mortgage insured under the National Housing Act is assigned to FHA.

(2) Time of notice.

(i) Except as provided in paragraph (d)(2)(ii) of this section:

(A) The transferor servicer shall deliver the Notice of Transfer to the borrower not less than 15 days before the effective date of the transfer of the servicing of the mortgage servicing loan;

(B) The transferee servicer shall deliver the Notice of Transfer to the borrower not more than 15 days after the effective date of the transfer; and

(C) The transferor and transferee servicers may combine their notices into one notice, which shall be delivered to the borrower not less than 15 days before the effective date of the transfer of the servicing of the mortgage servicing loan.

(ii) The Notice of Transfer shall be delivered to the borrower by the transferor servicer or the transferee servicer not more than 30 days after the effective date of the transfer of the servicing of the mortgage servicing loan in any case in which the transfer of servicing is preceded by:

(A) Termination of the contract for servicing the loan for cause;

(B) Commencement of proceedings for bankruptcy of the servicer; or

(C) Commencement of proceedings by the Federal Deposit Insurance Corporation (FDIC) or the Resolution Trust Corporation (RTC) for conservatorship or receivership of the servicer or an entity that owns or controls the servicer.

(iii) Notices of Transfer delivered at settlement by the transferor servicer and transferee servicer, whether as separate notices or as a combined notice, will satisfy the timing requirements of paragraph (d)(2) of this section.

(3) Notices of Transfer; contents. The Notices of Transfer required under paragraph (d) of this section shall include the following information:

(i) The effective date of the transfer of servicing;

(ii) The name, consumer inquiry addresses (including, at the option of the servicer, a separate address where qualified written requests must be sent), and a toll-free or collect-call telephone number for an employee or department of the transferee servicer;

(iii) A toll-free or collect-call telephone number for an employee or department of the transferor servicer that can be contacted by the borrower for answers to servicing transfer inquiries;

(iv) The date on which the transferor servicer will cease to accept payments relating to the loan and the date on which the transferee servicer will begin to accept such payments. These dates shall either be the same or consecutive days;

(v) Information concerning any effect the transfer may have on the terms or the continued availability of mortgage life or disability insurance, or any other type of optional insurance, and any action the borrower must take to maintain coverage;

(vi) A statement that the transfer of servicing does not affect any other term or condition of the mortgage documents, other than terms directly related to the servicing of the loan; and

(vii) A statement of the borrower's rights in connection with complaint resolution, including the information set forth in paragraph (e) of this section. Appendix MS–2 of this part illustrates a statement satisfactory to the Secretary.

(4) Notices of Transfer; sample notice. Sample language that may be used to comply with the requirements of paragraph (d) of this section is set out in appendix MS–2 of this part. Minor modifications to the sample language may be made to meet the particular circumstances of the servicer, but the substance of the sample language shall not be omitted or substantially altered.

(5) Consumer protection during transfer of servicing. During the 60–day period beginning on the effective date of transfer of the servicing of any mortgage servicing loan, if the transferor servicer (rather than the transferee servicer that should properly receive payment on the loan) receives payment on or before the applicable due date (including any grace period allowed under the loan documents), a late fee may not be imposed on the borrower with respect to that payment and the payment may not be treated as late for any other purposes.

(e) Duty of loan servicer to respond to borrower inquiries--

(1) Notice of receipt of inquiry. Within 20 business days of a servicer of a mortgage servicing loan receiving a qualified written request from the borrower for information relating to the servicing of the loan, the servicer shall provide to the borrower a written response acknowledging receipt of the qualified written response. This requirement shall not apply if the action requested by the borrower is taken within that period and the borrower is notified of that action in accordance with the paragraph (f)(3) of this section. By notice either included in the Notice of Transfer or separately delivered by first-class mail, postage prepaid, a servicer may establish a separate and exclusive office and address for the receipt and handling of qualified written requests.

(2) Qualified written request; defined.

(i) For purposes of paragraph (e) of this section, a qualified written request means a written correspondence (other than notice on a payment coupon or other payment medium supplied by the servicer) that includes, or otherwise enables the servicer to identify, the name and account of the borrower, and includes a statement of the reasons that the borrower believes the account is in error, if applicable, or that provides sufficient detail to the servicer regarding information relating to the servicing of the loan sought by the borrower.

(ii) A written request does not constitute a qualified written request if it is delivered to a servicer more than 1 year after either the date of transfer of servicing or the date that the mortgage servicing loan amount was paid in full, whichever date is applicable.

(3) Action with respect to the inquiry. Not later than 60 business days after receiving a qualified written request from the borrower, and, if applicable, before taking any action with respect to the inquiry, the servicer shall:

(i) Make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of the correction. This written notification shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower; or

(ii) After conducting an investigation, provide the borrower with a written explanation or clarification that includes:

(A) To the extent applicable, a statement of the servicer's reasons for concluding the account is correct and the name and telephone number of an employee, office, or department of the servicer that can provide assistance to the borrower; or

(B) Information requested by the borrower, or an explanation of why the information requested is unavailable or cannot be obtained by the servicer, and the name and telephone number of an employee, office, or department of the servicer that can provide assistance to the borrower.

(4) Protection of credit rating.

(i) During the 60–business day period beginning on the date of the servicer receiving from a borrower a qualified written request relating to a dispute on the borrower's payments, a servicer may not provide adverse information regarding any payment that is the subject of the qualified written request to any consumer reporting agency (as that term is defined in section 603 of the Fair Credit Reporting Act, 15 U.S.C. 1681a).

(ii) In accordance with section 17 of RESPA (12 U.S.C. 2615), the protection of credit rating provision of paragraph (e)(4)(i) of this section does not impede a lender or servicer from pursuing any of its remedies, including initiating foreclosure, allowed by the underlying mortgage loan instruments.

(f) Damages and costs.

(1) Whoever fails to comply with any provision of this section shall be liable to the borrower for each failure in the following amounts:

(i) Individuals. In the case of any action by an individual, an amount equal to the sum of any actual damages sustained by the individual as the result of the failure and, when there is a pattern or practice of noncompliance with the requirements of this section, any additional damages in an amount not to exceed $1,000.

(ii) Class actions. In the case of a class action, an amount equal to the sum of any actual damages to each borrower in the class that result from the failure and, when there is a pattern or practice of noncompliance with the requirements of this section, any additional damages in an amount not greater than $1,000 for each class member. However, the total amount of any additional damages in a class action may not exceed the lesser of § 500,000 or 1 percent of the net worth of the servicer.

(iii) Costs. In addition, in the case of any successful action under paragraph (f) of this section, the costs of the action and any reasonable attorneys' fees incurred in connection with the action.

(2) Nonliability. A transferor or transferee servicer shall not be liable for any failure to comply with the requirements of this section, if within 60 days after discovering an error (whether pursuant to a final written examination report or the servicer's own procedures) and before commencement of an action under this section and the receipt of written notice of the error from the borrower, the servicer notifies the person concerned of the error and makes whatever adjustments are necessary in the appropriate account to ensure that the person will not be required to pay an amount in excess of any amount that the person otherwise would have paid.

(g) Timely payments by servicer. If the terms of any mortgage servicing loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the mortgaged property, the servicer shall make payments from the escrow account in a timely manner for the taxes, insurance premiums, and other charges as the payments become due, as governed by the requirements of § 3500.17(k).

(h) Preemption of State laws. A lender who makes a mortgage servicing loan or a servicer shall be considered to have complied with the provisions of any State law or regulation

requiring notice to a borrower at the time of application for a loan or transfer of servicing of a loan if the lender or servicer complies with the requirements of this section. Any State law requiring notice to the borrower at the time of application or at the time of transfer of servicing of the loan is preempted, and there shall be no additional borrower disclosure requirements. Provisions of State law, such as those requiring additional notices to insurance companies or taxing authorities, are not preempted by section 6 of RESPA or this section, and this additional information may be added to a notice prepared under this section, if the procedure is allowable under State law.

(Approved by the Office of Management and Budget under control number 2502–0458)

**Credits**

[59 FR 65448, Dec. 19, 1994; 60 FR 2642, Jan. 10, 1995; 60 FR 14636, March 20, 1995; 61 FR 13233, March 26, 1996; 73 FR 68242, Nov. 17, 2008]

<Part reserved effective July 16, 2014; see 79 FR 34226.>

SOURCE: 57 FR 49607, Nov. 2, 1992; 60 FR 8816, Feb. 15, 1995; 61 FR 10442, March 13, 1996; 61 FR 46510, Sept. 3, 1996; 61 FR 50219, Sept. 24, 1996; 61 FR 58475, Nov. 15, 1996; 63 FR 3236, Jan. 21, 1998; 79 FR 34226, June 16, 2014, unless otherwise noted.

AUTHORITY: 12 U.S.C. 2601 et seq.; 42 U.S.C. 3535(d).

**End of Document**   © 2014 Thomson Reuters. No claim to original U.S. Government Works.

WestlawNext. © 2014 Thomson Reuters | 1-800-REF-ATTY (1-800-733-2889)

