# EXHIBIT 11

| DOCKET NO. FST-CV-09-5011591-S | : | SUPERIOR COURT |
| RESIDENTIAL FUNDING CO., LLC | : | J.D. OF STAMFORD/NORWALK |
| v. | : | AT STAMFORD |
| THOMAS J. LA CASSE | : | OCTOBER 23, 2014 |

### REPLY TO DEFENDANT'S OBJECTION TO PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO RESPOND TO DISCOVERY REQUESTS

Plaintiff submits this reply to address the various allegations and representations in Defendant Thomas J. La Casse's ("Defendant") objection to Plaintiff's motion for an extension of time to respond to discovery, filed on October 8, 2014, Entry No. 183.00 ("Objection"), and respectfully requests that the Court grant Plaintiff's motion, filed on September 25, 2014, Entry No. 177.00 ("Motion"), and allow Plaintiff a reasonable amount of time to complete and serve its substantive answers and document production.

## I.   RELEVANT BACKGROUND

As discussed in Plaintiff's objection to Defendant's motion for nonsuit and motion to disqualify, filed concurrently herewith, Defendant served extensive interrogatories and requests for production ("Discovery Requests") on Plaintiff's predecessor counsel on or about July 28, 2014.  On August 19, 2014, undersigned counsel appeared in the action on behalf of Plaintiff and in lieu of predecessor counsel.  That same day, Plaintiff filed a timely request for a 30-day extension of time to respond to Defendant's July 28, 2014 Discovery Requests, pursuant to Practice Book §§ 13-7 (a)(2) and 13-10 (a)(2). See Entry No. 176.00.  Defendant did not object

34462490v1 0949864

to the request, such that it was automatically granted and the initial 30-day time period was extended to 60 days, until September 26, 2014.

After appearing in the case, undersigned counsel left two voice messages for Defendant's counsel in an effort to discuss the case and discovery. See Ex.1, Affidavit. The messages were not returned. Id. Consequently, on September 24, 2014, undersigned counsel emailed Defendant's counsel, asking if Defendant would consent to a further extension of time for Defendant's responses. Id. Defendant did not respond to the email request. Id. The complete emails between counsel are attached as Ex. 1(A).

On September 25, 2014, Plaintiff filed the Motion requesting additional time for Plaintiff to respond to the Discovery Requests, stating, in part, that additional time was necessary for Plaintiff's new counsel to fully and accurately complete objections, written responses and document production. See Entry No. 177.00. On September 26, 2014, Plaintiff timely filed and served objections to the Discovery Requests, stating that Plaintiff will provide information and documents in response to a number of the Discovery Requests. See Entry Nos. 178.00, 179.00. On October 8, 2014, Defendant filed an Objection to Plaintiff's Motion. See Entry No. 183.00.

## II.    ARGUMENT

First, Plaintiff and its undersigned counsel are diligently working to compile all substantive information and documents which the objections reflect will be provided in answer to the Discovery Requests and to finalize written answers, and submit that there has been no misconduct in responding to Defendant's extensive and largely objectionable discovery requests. Contrary to Plaintiff's representation, Plaintiff and its counsel are not attempting to "extort" or

2

intentionally delay discovery. Rather, Plaintiff filed and served objections, which have not been ruled upon, and needs a brief period of additional time for its new counsel: (i) to familiarize itself with the complete and voluminous file for this case, which Defendant characterized as "complex" in his request for a continuance to allow his counsel to familiarize himself with the case; (ii) to compile all documents and information necessary to answer interrogatories and produce documents to the extent reflected in Plaintiff's objections; (iii) to complete written discovery responses; and (iv) to have Plaintiff review, revise if necessary, and then sign the final discovery responses. Plaintiff's ability to finalize substantive discovery responses has been hampered by Defendant's recent serial filings.

Second, Plaintiff filed timely objections to Defendant's Discovery Requests and there has been no ruling on the objections. Specifically, Defendant certified that the Discovery Requests were served on July 28, 2014, such that objections and responses were due 30 days later on August 27, 2014. On August 18, 2014, within the initial 30-day time period, Plaintiff filed a timely request to extend for an additional 30 days. See Entry No. 176.00. Because Defendant did not object to the request, it was automatically granted and the initial 30-day time period was extended to 60 days, until September 26, 2014. Plaintiff timely filed and served objections on September 26, 2014, within the initial time period, as extended.

Defendant cites no authority to support his apparent contention that the automatic extension to respond to discovery requests does not apply to objections, and the Practice Book does not state that the automatic extension does not apply to objections. Practice Book §§ 13-7 and 13-10 are reasonably read to mean that the automatic extension applies to objections, as well

3

34462490v1 0949864

as substantive answers and document production, as objections are a form of a response to interrogatories and requests for production and the evaluation and preparation of substantive answers and document production often dictates the nature and extent of a party's objections. Similarly, Practice Book §§ 13-7 (c) and 13-10 (b) are reasonably read as intended only to clarify that if objections are timely filed to some, but not all, of the interrogatories or production requests, then the responding party must answer the interrogatories and production requests to which it asserted no objection. This interpretation is consistent with this Court's decision in Reice v. O'Sullivan. See No. CV105013487S, 2011 WL 2150575 (Conn. Super. May 4, 2011) (J.D. Stamford-Norwalk) (denying motion for non-suit and treating objections as timely filed even though plaintiff did not request 30-day extension or file objections within 30 days where objections were filed within period during which plaintiff could have obtained automatic 30-day extension by request under Practice Book §§ 13-7 (a)(2) and 13-10 (a)(2)), attached in Ex. 2.

Third, Defendant alleges that Plaintiff is "threatening to extort further time to file impermissible objections and further delay the advancement of the pleadings." Defendant, however, has not answered the complaint, cites no law which permits his failure to file an answer during the eight month time period since the court opened the judgment of strict foreclosure previously entered in this case, and did not file a motion to dismiss the complaint until October 3, 2014. There is no reason Defendant could not file an answer or motion to dismiss at an earlier time. Under these circumstances, Plaintiff's request for additional time does not affect advancement of the pleadings.

4

Fourth, Defendant offers no support for his contention that Plaintiff was required to file an affidavit with its motion for a further extension of time to respond to the Discovery Requests. To the extent an affidavit is required, Plaintiff refers the Court to the affidavit attached hereto as Ex. 1.

Fifth, Defendant's allegation that Plaintiff's conduct "may constitute a violation of the rules of professional conduct" should be disregarded because Defendant identifies no breach of such rules and no such violation occurred.

Sixth, any claim pending in the bankruptcy case in the U.S. Bankruptcy Court for the Southern District of New York is irrelevant to the instant action. Defendant's discovery requests which appear, at least in part, to seek information for purposes of his claim in the bankruptcy case are improper.

Finally, contrary to Defendant's erroneous contention, undersigned counsel represents Residential Funding Complany, LLC, as well as the current loan servicer, Ocwen Loan Servicing, LLC, and the owner of the note, mortgage and debt evidenced by the mortgage, HSBC Bank USA, National Association, as Trustee for Luminent Mortgage Trust 2006-3, Mortgage Pass-Through Certificates Series 2006-3 ("HSBC Bank as Trustee"). As more fully discussed in Plaintiff's objection to Defendant's motion to disqualify filed concurrently herewith, which is incorporated herein by reference, Connecticut law permits HSBC Bank as Trustee to litigate this foreclosure action in the name of Residential Funding Company, LLC. See Salem Five Mortg. Co., LLC v. Afsary, 58 Conn. L. Rptr. 484, 2014 WL 3893089 (Conn. Super. June 26, 2014), attached in Ex. 2 (citing Dime Savings Bank of Wallingford v. Arpaia, 55 Conn. App.

34462490v1 0949864

180 (1999), and <u>RMS Residential Properties, LLC v. Miller</u>, 303 Conn. 224, 230 (2011), as

clarified in <u>J.E. Robert Co., Inc. v. Signature Properties, LLC</u>, 309 Conn. 307, 327-331 (2013)).

<u>See also</u> <u>Washington Mut. Bank, F.A. v. Walpuck</u>, 134 Conn. App. 446 (2012).  As such, the

objections are not moot as suggested by Defendant.  The September 24, 2014 email does not

negate Plaintiff or its attorney's authority to file the September 26, 2014 objections, and was

intended only to reflect that Plaintiff intended to move to substitute HSBC Bank as Trustee as the

party plaintiff as discussed at the February 4, 2014 hearing, although not required by law.

## III.    CONCLUSION

For all of the foregoing reasons, the reasons stated in Plaintiff's original Motion, and

because Plaintiff filed timely objections, the objections have not been ruled upon and Plaintiff

and its undersigned counsel are diligently working to finalize written answers and document

production, Plaintiff requests that the Court grant Plaintiff's Motion and allow Plaintiff a

reasonable amount of time to complete and serve its substantive answers and document

production.

Plaintiff,
By its attorneys,

/s/ Valerie N. Doble
Marissa I. Delinks, Jury No. 434580
Valerie N. Doble, Juris No. 425760
HINSHAW & CULBERTSON LLP
28 State Street, 24th Floor
Boston, MA 02109
Tel: 617-213-7000 / Fax: 617-213-7001
Email: mdelinks@hinshawlaw.com
          vdoble@hinshawlaw.com

34462490v1 0949864

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing *Reply to Defendant's Objection to Plaintiff's Motion for Extension of Time to Respond to Discovery Requests* has been sent this 23rd day of October, 2014, to:

| Via first class and electronic mail | Via first class mail |
|---|---|
| Donald M. Brown, Esq. | Thomas La Casse (pro se) |
| Law Offices of Donald M. Brown, Esq. | 100 Cambridge Street |
| 32 Pine Tree Lane | Boston, MA 02114 |
| Avon, CT 06001 | |
| donbrownzd@optonline.net | |

/s/ Valerie N. Doble
Valerie N. Doble, Juris No. 425760

34462490v1 0949864

# Ex. 1

| | | |
|---|---|---|
| **DOCKET NO. FST-CV-09-5011591-S** | : | **SUPERIOR COURT** |
| **RESIDENTIAL FUNDING CO., LLC** | : | **J.D. OF STAMFORD/NORWALK** |
| **v.** | : | **AT STAMFORD** |
| **THOMAS J. LA CASSE** | | |

## AFFIDAVIT RELATING TO DISCOVERY

I, Valerie N. Doble, hereby depose and state as follows:

1.      I am an attorney with the firm Hinshaw & Culbertson LLP.  I represent the plaintiff in regards to the above-captioned matter.

2.      Predecessor counsel for the plaintiff provided email communications reflecting that the parties engaged in settlement discussions over the course of several months. Specifically, on March 7, 2014, plaintiff's predecessor counsel emailed defendant's counsel a loan modification offer of settlement.  That day, defendant's counsel responded that he would discuss this matter with his client when he returned from vacation.  Having received no response, on April 8 and May 27, 2014, plaintiff's predecessor counsel emailed defendant's counsel, asking if he had an opportunity to review the modification offer with Defendant.  On May 27, 2014, defendant's counsel advised that the defendant was currently reviewing the offer and that he would respond "shortly."   The defendant never responded to the March 7, 2014 loan modification offer.

3.      Sometime between August 19, 2014 and September 24, 2014, I left two voice messages for defendant's counsel in an effort to discuss the case and the defendant's discovery requests.  Defendant's counsel did not return my calls.

4.      On September 24, 2014, I emailed Defendant's counsel, asking if Defendant would consent to a further extension of time for the plaintiff to object and respond to the

defendant's discovery requests.   Defendant did not respond to this request.   That day I also requested that defendant's counsel email the Word version of the defendant's discovery requests as the requests are lengthy and do not leave much room to respond.  I received an email with the Word documents on September 26, 2014.  Attached as Exhibit A is a true and accurate copy of all emails that I have exchanged with defendant's counsel.

5.    The defendant did not attempt to confer regarding the apparent discovery dispute.

**Signed under the pains and penalties of perjury this 23rd day of October, 2014.**

_____

**Valerie N. Doble**

34462487v1 09498649864

# Ex. A



**Re: Residential Funding v. Thomas La Casse - request for consent to extension for discovery responses**
Valerie N. Doble  to  Donald M. Brown
09/26/2014 08:54 AM

Thanks. I'll be in the office most of next week. We filed a motion for an extension of time yesterday but continue to work on the responses.

Sent from my iPhone

On Sep 26, 2014, at 8:51 AM, "Donald M. Brown" <donbrownzd@optonline.net> wrote:

> Thank you for your email, I have been in court virtually every hour of the work day this week. I will be discussing this matter with my client tomorrow. (As I will be again in court this afternoon).
>
> I will forward a response to you either Saturday or Monday.
>
> Thank You,
>
> Donald M. Brown, Esq.
> 203-359-3771
>
> From: VDoble@hinshawlaw.com
> Sent: Wednesday, September 24, 2014 5:10 PM
> To: donbrownzd@optonline.net
> Subject: Re: Residential Funding v. Thomas La Casse - request for consent to extension for discovery responses
>
> Attorney Brown:
>
> We would also appreciate it if you would forward the Word version of Mr. LaCasse's discovery requests as they are lengthy and do not leave much room to respond.
>
> Thank you.
>
>
> Valerie N. Doble
> Hinshaw & Culbertson LLP
> vdoble@hinshawlaw.com
>
> 28 State Street, 24th Floor
> Boston, MA 02109-5709
> Tel: 617-213-7000 | Fax: 617-213-7001
>
> 321 South Main Street, Suite 304
> Providence, RI 02903
> Tel: 401-751-0842 | Fax: 401-751-0072

From:    Valerie N. Doble/HC34
To:    donbrownzd@optonline.net,
Cc:    Marissa I. Delinks/HC34@HC
Date:    09/24/2014 04:28 PM
Subject:    Residential Funding v. Thomas La Casse - request for consent to extension for discovery responses

Attorney Brown:

As you are aware, our office appeared in this matter in August.  As you likely expect, we intend to file a motion to substitute the party plaintiff.  We suspect that this is the reason you have not yet filed a responsive pleading.  We are in the process of obtaining the necessary information and documents to do this and also to respond Mr. La Casse's discovery requests, but need additional time.  Rather than simply filing objections, we would prefer to move an extension of time to submit both objections and responses at the same time.

As such, please advise if Mr. La Casse will consent to an extension of time for the plaintiff's discovery responses.  We are requesting an additional 45 days to allow sufficient time for the motion to substitute and to prepare responses on behalf of the proposed substitute plaintiff.  We need to file the motion by close of business tomorrow.

Please feel free to call me to discuss this request further.  I will be leaving the office shortly for the day, but will be in all day tomorrow.  My direct dial is 617-213-7035.

Thank you.

Valerie N. Doble
Hinshaw & Culbertson LLP
vdoble@hinshawlaw.com

28 State Street, 24th Floor
Boston, MA 02109-5709
Tel: 617-213-7000 | Fax: 617-213-7001

321 South Main Street, Suite 304
Providence, RI 02903
Tel: 401-751-0842 | Fax: 401-751-0072

Hinshaw & Culbertson LLP is an Illinois registered limited liability partnership that has elected to be governed by the Illinois Uniform Partnership Act (1997).

The contents of this e-mail message and any attachments are intended solely for the addressee(s) named in this message. This communication is intended to be and to remain confidential and may be subject to

applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments. Do not deliver, distribute or copy this message and/or any attachments and if you are not the intended recipient, do not disclose the contents or take any action in reliance upon the information contained in this communication or any attachments.

<atteej26.jpg><attnf80c.jpg>



**Re: Residential Funding v. Thomas La Casse - request for consent to extension for discovery responses**

Valerie N. Doble  to: Donald M. Brown                    09/26/2014 09:20 AM

Thank you.

Sent from my iPhone

On Sep 26, 2014, at 8:56 AM, "Donald M. Brown" <donbrownzd@optonline.net> wrote:

> Here are the word documents.
>
> Thanks,
>
> Donald M. Brown, Esq.
> 203-359-3771
>
> From: VDoble@hinshawlaw.com
> Sent: Wednesday, September 24, 2014 5:10 PM
> To: donbrownzd@optonline.net
> Subject: Re: Residential Funding v. Thomas La Casse - request for consent to extension for discovery responses
>
> Attorney Brown:
>
> We would also appreciate it if you would forward the Word version of Mr. LaCasse's discovery requests as they are lengthy and do not leave much room to respond.
>
> Thank you.
>
>
> Valerie N. Doble
> Hinshaw & Culbertson LLP
> vdoble@hinshawlaw.com
>
> 28 State Street, 24th Floor
> Boston, MA 02109-5709
> Tel: 617-213-7000 | Fax: 617-213-7001
>
> 321 South Main Street, Suite 304
> Providence, RI 02903
> Tel: 401-751-0842 | Fax: 401-751-0072
>
>
>
> From:    Valerie N. Doble/HC34
> To:       donbrownzd@optonline.net,

Cc:          Marissa I. Delinks/HC34@HC
Date:        09/24/2014 04:28 PM
Subject:     Residential Funding v. Thomas La Casse - request for consent to extension for discovery responses

Attorney Brown:

As you are aware, our office appeared in this matter in August. As you likely expect, we intend to file a motion to substitute the party plaintiff. We suspect that this is the reason you have not yet filed a responsive pleading. We are in the process of obtaining the necessary information and documents to do this and also to respond Mr. La Casse's discovery requests, but need additional time. Rather than simply filing objections, we would prefer to move an extension of time to submit both objections and responses at the same time.

As such, please advise if Mr. La Casse will consent to an extension of time for the plaintiff's discovery responses. We are requesting an additional 45 days to allow sufficient time for the motion to substitute and to prepare responses on behalf of the proposed substitute plaintiff. We need to file the motion by close of business tomorrow.

Please feel free to call me to discuss this request further. I will be leaving the office shortly for the day, but will be in all day tomorrow. My direct dial is 617-213-7035.

Thank you.

Valerie N. Doble
Hinshaw & Culbertson LLP
vdoble@hinshawlaw.com

28 State Street, 24th Floor
Boston, MA 02109-5709
Tel: 617-213-7000 | Fax: 617-213-7001

321 South Main Street, Suite 304
Providence, RI 02903
Tel: 401-751-0842 | Fax: 401-751-0072

Hinshaw & Culbertson LLP is an Illinois registered limited liability partnership that has elected to be governed by the Illinois Uniform Partnership Act (1997).

The contents of this e-mail message and any attachments are intended solely for the addressee(s) named in this message. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments. Do not deliver, distribute or copy this message and/or any attachments and if you are not the intended recipient, do not disclose the contents or take any action in reliance upon the information contained in this communication or any attachments.

<attn3at6.jpg><att3bow2.jpg>

<discovery - first set of interrogatories.doc>
<discovery - first set of production.doc>

# Ex. 2

2011 WL 2150575
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK
COURT RULES BEFORE CITING.

Superior Court of Connecticut,
Judicial District of Stamford–Norwalk.

Richard M. REICE
v.
Christine O'SULLIVAN.

No. CV105013487S.    |    May 4, 2011.

Opinion

ALFRED J. JENNINGS. JR., Judge Trial Referee.

*1 The motion for nonsuit is denied. Defendant claims that plaintiff made ten objections to interrogatories, and six objections to production requests beyond the thirty-day deadlines of Practice Book §§ 13-7 and 13-10. A close examination of the responses, however, indicates that the plaintiff actually answered five of those interrogatories and responded to four of those production requests "notwithstanding the foregoing objection." There are several factors which militate against a nonsuit for the alleged late filing of the objections. First, the case was in the very first weeks of its existence and defendant has waited approximately six months before raising this issue. Second, the objections, certified as served on October 11, 2010 were beyond the thirty-day limit from the serving of the interrogatories and production requests on August 26, 2010, but the serving of those interrogatories and production requests on that date was also in violation of the Practice Book Rules. P.B. §§ 13-6(a) and 13-9(b) permit the service of interrogatories and production requests "upon any party without leave of the judicial authority at any time after the return day."The return day of this action was September 7, 2010. There was disregard of the rules of practice by both

parties. Third, even if measured from August 26, 2010, the objections were served well within the period during which the plaintiff would have been able to obtain an automatic thirty-day extension by request under P.B. §§ 13-7(a)(2) and/or 13-10(a)(2). For all these reasons and because the defendant has not indicated any prejudice by the lateness of the objections, the court exercises its discretion under § 1-8 of the Practice Book to excuse the late filing of the objections in keeping with the well-established precepts that "The court's discretion should be exercised mindful of the policy preference to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his day in court ... The sanction of dismissal should be imposed only as a last resort and where it would be the only reasonable remedy available to vindicate the legitimate interests of the other party and the Court."*Millbrook Owners' Association, Inc. v. Hamilton Standard,* 257 Conn. 1, 14-17 (2001).

Defendant also asks for a nonsuit on the ground that the notary public who took the acknowledgment of plaintiff Richard Reice on his answers to interrogatories failed to fill in the blank for the day in October of 2010 that the acknowledgment was taken. This claim borders on being frivolous. The answers were clearly "under oath" as required by P.B. § 13-7(a). The exact date of the acknowledgment does not impact the thirty-day deadline which is closed as of the "date of certification of service" [of the answers] (§ 13-7(b)) which in this case was October 11, 2010. The failure to fill in the blank for the day was clearly a "no harm—no foul" situation.

For these reasons the court treats the objections as properly filed and they remain outstanding. The plaintiff and counsel for the defendant shall meet and confer "in a bona attempt to resolve the objections" as required by the rules, and an appropriate affidavit shall be filed if either party wishes to claim the objections to the short calendar.

*2 SO ORDERED.

---

© 2014 Thomson Reuters. No claim to original U.S. Government Works.

Salem Five Mortg. Co., LLC v. Afsary, Not Reported in A.3d (2014)
2014 WL 3893089, 58 Conn. L. Rptr. 484

2014 WL 3893089

UNPUBLISHED OPINION. CHECK COURT RULES
BEFORE CITING.
Superior Court of Connecticut..

Salem Five Mortgage Company, LLC
v.
Rabaya Afsary

FSTCV126013158S    |    File Date:June 26, 2014

**Opinion**

Mintz, Douglas C., J.

MEMORANDUM OF DECISION RE MOTION TO
DISMISS (# 134.00)

The original plaintiff, Salem Five Mortgage Company, LLC
as named at the commencement of this case, commenced
this action for foreclosure against the defendant, Rabaya
Afsary, through a complaint filed on February 29, 2012. On
September 24, 2012, Salem Five Cents Savings Bank was
substituted in to the case as the substitute plaintiff in place of
the original plaintiff, pursuant to General Statutes § 52 109 [1]
and Practice Book § 9 20. [2]

Here, in the context of her recent motion to reargue, the
defendant again raises the issues of subject matter jurisdiction
and General Statutes § 52 109, a matter first raised in her
motion to dismiss filed on November 13, 2013. On March 10,
2014, the court denied the motion to dismiss on the ground
that any potential lack of subject matter jurisdiction due to
lack of standing had been cured with the court's granting of the
plaintiff's motion to correct the name of the plaintiff pursuant
to § 52 109 and Practice Book § 9 20. [3]

On March 31, 2014, the defendant filed her motion to reargue
the court's decision to deny her motion to dismiss on the
grounds that the court has overlooked a controlling principle
of law or misapprehended key facts in the case. On May
12, 2014, the court granted the motion to reargue and set
June 2, 2014 as the date for rearguement of the motion to
dismiss. Oral arguments between the parties on the matter was
postponed and heard before the court on June 3, 2014.

"[T]he purpose of a reargument is ... to demonstrate to the
court that there is some decision or some principle of law
which would have a controlling effect, and which has been
overlooked, or that there has been a misapprehension of
facts ... It also may be used to address ... claims of law that
the [movant] claimed were not addressed by the court ...
[A] motion to reargue [however] is not to be used as an
opportunity to have a second bite at the apple." (Internal
quotation marks omitted.) *Fortin v. Hartford Underwriters
Ins. Co.,* 139 Conn.App. 826, 843,cert. granted on other
grounds, 308 Conn. 905 (2013).

"A motion to dismiss ... properly attacks the jurisdiction of
the court ... [It] admits all facts which are well pleaded,
invokes the existing record and must be decided upon that
alone." (Citations omitted; internal quotation marks omitted.)
*Ferreira v. Pringle,* 255 Conn. 330, 346 (2001). "A motion
to dismiss is the appropriate vehicle for challenging the
jurisdiction of the court ... The grounds which may be asserted
in this motion are: (1) lack of jurisdiction over the subject
matter; (2) lack of jurisdiction over the person; (3) improper
venue; (4) insufficiency of process; and (5) insufficiency
of service of process." (Citation omitted.) *Zizka v. Water
Pollution Control Authority,* 195 Conn. 682, 687 (1985).
"[B]ecause the issue of standing implicates subject matter
jurisdiction it may be a proper basis for granting a motion
to dismiss ... [S]ee Practice Book § 10 31(a)(1)." (Citation
omitted.) *Electrical Contractors, Inc. v. Dept. of Education,*
303 Conn. 402, 413 (2012).

In the present case, as the motion to reargue the court's
prior decision to deny the defendant's motion to dismiss
has been previously granted, the court now finds that,
from the commencement of the case until judgment,
proper jurisdiction over the parties was fully maintained.
Accordingly, the court affirms it March 10, 2014 order
to deny the defendant's motion to dismiss. Despite the
court's decision to leave its prior order unchanged, it would
seem that elaboration on several key matters concerning its
decision may be justified. This Memorandum of Decision will
therefore address the issues of procedural and substantive law
pertaining to deciding the merits of the motion to dismiss at
this stage in the case.

In her memorandum of law in support of her original motion
to dismiss, the defendant argued that the court lacks subject
matter jurisdiction over the present case because the original
plaintiff lacked standing to bring a foreclosure action against
the defendant and the plaintiff was without proper remedy of

Salem Five Mortg. Co., LLC v. Afsary, Not Reported in A.3d (2014)
2014 WL 3893089, 58 Conn. L. Rptr. 484

substitution under the law. Specifically, because the original plaintiff and the substitute plaintiff are separate legal entities, the defendant maintained that the original plaintiff had no right to initiate this lawsuit on behalf of the substitute plaintiff, the true holder of the note. Moreover, the defendant contended that the plaintiff's failure to properly name itself as plaintiff was the result of its own negligence, thereby depriving it of standing to move for substitution under § 52 109.

In the plaintiff's objection to the original motion to dismiss, the plaintiff countered that at that stage in the case, the substitution of the plaintiff party already granted by the court had corrected any prior defect in standing. Moreover, because the parties had already had a full opportunity to contest the subject matter jurisdiction of the court before final judgment, the plaintiff argued that Connecticut law did not allow courts to entertain new challenges of this kind as they would improperly undermine the finality of court's judgment. Accordingly, the plaintiff maintained that the motion to dismiss in fact amounted to an improper attempt by the defendant to reargue the prior motion to correct beyond the procedural limit of twenty days established by Practice Book §§ 11 10 and 11 11.

In the recent motion to reargue, the defendant continues to argue that because the original plaintiff was not a correct party with any real interest in the controversy, it lacked standing to invoke the jurisdiction of this court. Moreover, the defendant suggests that Connecticut case law permits substitution to correct the name of the plaintiff party only in situations where the original plaintiff is a proper party to the action with standing at the time the action was commenced. Here, because the action for foreclosure was brought by a party with no interest in the controversy, there exists no practical manner in which the plaintiff's pleadings and documents filed with the court, and its sworn affidavit in particular, can remain on the record for the benefit of the plaintiff who succeeds him. The defendant further contends that the successive plaintiff parties were negligent in their understanding of their identities and interests, and are therefore prevented under Connecticut law from substituting a plaintiff under § 52 109.

In response, the plaintiff counters that the defendant's motion to reargue is improper because it raises the identical issues that were presented to the court at the time of the hearing on the motion to dismiss. The plaintiff further reiterates its arguments previously set forth in its objection to the motion to dismiss.

As a preliminary matter, this court must consider whether it is permitted to address a party's challenge to the court's jurisdiction where, as in the present case, the law day has passed and title to the property has already vested in the foreclosing party. See General Statutes § 49 15(a)(1); [4] *New Milford Savings Bank v. Jajer,* 44 Conn.App. 588, 594 (1997) (noting that "[both it] and the Supreme Court have held that, under [§ 49 15], after title has become absolute in any encumbrancer, a judgment of foreclosure cannot be opened"). In *Wells Fargo Bank, N.A. v. McIntosh,* Superior Court, judicial district of Stamford–Norwalk, Docket No. CV–10–6003534–S (April 15, 2011, Mintz, J.), this court addressed the issue of defendant's challenge to personal jurisdiction in a judgment of strict foreclosure after the law day has passed. This court noted that " § 49 15 does not prevent the court from dismissing this case per se. In fact, as clearly stated by the Connecticut Supreme Court, 'although ... a judgment of strict foreclosure ordinarily cannot be opened after the law day has passed, the judgment can be attacked on the ground that the court lacked jurisdiction over the party challenging it.' *Argent Mortgage Co., LLC v. Huertas,* 288 Conn. 568, 576 (2008). Accordingly, the determinative issue becomes whether the defendants were properly served with process." *Id.*

Later, the Appellate Court issued a similar ruling also permitting a challenge to the court's subject matter jurisdiction after title has vested. "It is a general rule that a judgment of strict foreclosure ordinarily cannot be opened after the law day has passed, [unless] the judgment [is] attacked on the ground that the court lacked jurisdiction over the party challenging it ... Once title has vested, no practical relief is available [p]rovided that this vesting has occurred pursuant to an authorized exercise of jurisdiction by the trial court ... A natural corollary of this principle is that *a judgment of strict foreclosure may be opened only upon a finding that the court lacked jurisdiction over either the person or the case at the time the judgment of strict foreclosure was entered.* Anything less would appear to be in direct contravention of the strictures of § 49 15(a) and our subsequent case law." (Citations omitted; emphasis added; internal quotation marks omitted.) *Highgate Condominium Assn., Inc. v. Miller,* 129 Conn.App. 429, 434 35 (2011). Accordingly, in the present case, § 49 15 presents no procedural boundaries for the defendant's attempt to argue her motion to dismiss on its merits.

Salem Five Mortg. Co., LLC v. Afsary, Not Reported in A.3d (2014)

2014 WL 3893089, 58 Conn. L. Rptr. 484

Aside from the technical issue of reopening a judgment of strict foreclosure after title has vested, the plaintiff has raised the related question of whether a party may move to open a judgment to challenge subject matter jurisdiction where it has previously had an opportunity to litigate that matter at an earlier stage in the case. "It often is stated that a challenge to subject matter jurisdiction can be raised at any time and that once the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented ... and the court must fully resolve it before proceeding further with the case ... Our Supreme Court, however, has stated that there are boundaries to challenges concerning the issue of subject matter jurisdiction. As we have only recently observed ... [t]he modern law of civil procedure suggests that even litigation about subject matter jurisdiction should take into account the importance of the principle of the finality of judgments, particularly when the parties have had a full opportunity originally to contest the jurisdiction of the adjudicatory tribunal ... Under this rationale, at least where the lack of jurisdiction is not entirely obvious, the critical considerations are whether the complaining party had the opportunity to litigate the question of jurisdiction in the original action, and, if he did have such an opportunity, whether there are strong policy reasons for giving him a second opportunity to do so." (Citations omitted, internal quotation marks omitted.) *Urban Redevelopment Commission of Stamford v. Katsetos,* 86 Conn.App. 236, 240-41 (2004).

Here, the defendant moves to open a final judgment to contest the court's subject matter jurisdiction over the case. As in *Urban Redevelopment,* the defendant has previously had a full opportunity to litigate the question of jurisdiction, particularly at the time of the plaintiff's motion to correct the plaintiff party's name. As noted by the court in its denial of the defendant's original motion to dismiss, the defendant failed to oppose the plaintiff's motion or later appeal its ruling on any ground. Moreover, lack of jurisdiction is not obvious at the present stage in the case since the court has cured all jurisdictional defects by allowing a correction to the plaintiff party's name pursuant to § 49-15. Accordingly, a second opportunity to challenge the court's jurisdiction should only be granted if strong policy reasons exist in its favor. The defendant has not presented any overriding policy concerns for the court to break from normal mode under modern law of civil procedure and undermine the finality of its past judgment. For this reason, the court deems the defendant's challenge to subject matter jurisdiction to be untimely at

the current stage in this case, and her motion is accordingly denied.

A clear understanding of the concepts of standing and plaintiff party substitution procedure, their history, and the relationship between them, is central to a determination of subject matter jurisdiction in the present case. "Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy." (Internal quotation marks omitted.) *Bysiewicz v. Dinardo,* 298 Conn. 748, 758 (2010). "Where a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause." (Internal quotation marks omitted.) *Monroe v. Horwitch,* 215 Conn. 469, 473 (1990).

"Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved." (Internal quotation marks omitted.) *St. Paul Travelers Cos. v. Kuehl,* 299 Conn. 800, 809 (2011). "[S]tanding to enforce [a] promissory note is [established] by the provisions of the Uniform Commercial Code ... Under [the Uniform Commercial Code], only a 'holder' of an instrument or someone who has the rights of a holder is entitled to enforce the instrument ... The 'holder' is the person or entity in possession of the instrument if the instrument is payable to bearer." (Citation omitted.) *Chase Home Finance, LLC v. Fequiere,* 119 Conn.App. 570, 577, cert. denied, 295 Conn. 922 (2010).

Here, the defendant contends that because the original plaintiff, Salem Five Mortgage Company, LLC, was not the holder of the relevant note at the time this action was commenced, it therefore lacked standing to bring suit. Later in this case, however, this court pursuant to § 52-109 and Practice Book § 9-20, permitted Salem Five Cents Savings Bank to be substituted in as the replacement plaintiff to the case. In this regard, § 52-109 provides that "[w]hen any action has been commenced in the name of the wrong person as plaintiff, the court may, if satisfied that it was so commenced through mistake, and that it is necessary for the determination of the real matter in dispute so to do, allow any other person to be substituted or added as plaintiff." Following § 52-109, Practice Book § 9-20 similarly provides that "[w]hen any action has been commenced in the name of the wrong person as plaintiff, the judicial authority may, if satisfied that it was so commenced through mistake and that it

Salem Five Mortg. Co., LLC v. Afsary, Not Reported in A.3d (2014)
2014 WL 3893089, 58 Conn. L. Rptr. 484

is necessary for the determination of the real matter in dispute so to do, allow any other person to be substituted or added as plaintiff."

By contrast, "common law ... prohibits an entire change of plaintiffs by the substitution of new persons in the place of those who originally brought suit. The reason for the general rule is that an entire change of plaintiffs is in effect a change in the cause of action. If there is a completely new cause of action, the original plaintiff obviously has no standing to pursue the matter if the law of the jurisdiction gives him or her no right to bring a suit of a particular character." (Citation omitted; internal quotation marks omitted.) *Wilson v. Zemba,* 49 Conn.Sup. 542, 545–46 [38 Conn. L. Rptr. 272] (2004).

Accordingly, "Superior Court decisions [have] repeatedly recognized that [§ 52–109] must be a legislative exception to the common-law rule that would otherwise prevent substitutions or amendments to cure standing defects in cases commenced in the wrong name. Otherwise, the statute would be useless. The Supreme Court agreed that the statute changed the common law." *Zulick v. Melnick,* Superior Court, judicial district of Windham, Docket No. CV–11–6003896–S (March 1, 2012, Vacchelli, J.).

"[R]emedial statutes such as [§ 52–109] were intended to soften the otherwise harsh consequences of strict construction under the common law: Over-technical formal requirements have ever been a problem of the common law, leading [legislative bodies] at periodic intervals to enact statutes ... [that], in substance, told the courts to be reasonable in their search for technical perfection." (Citation omitted; internal quotation marks omitted.) *DiLieto v. County Obstetrics & Gynecology Group, P.C.,* 297 Conn. 105, 151 (2010), aff'd and rev'd on other grounds, 310 Conn. 38 (2013).

In this light, "[o]ur rules of practice ... permit the substitution of parties as the interests of justice require ... These rules are to be construed so as to alter the harsh and inefficient result that attached to the mispleading of parties at common law ...General Statutes § 52 109 and ... Practice Book § [9–20] allow a substituted plaintiff to enter a case [w]hen any action has been commenced in the name of the wrong person as plaintiff ... Both rules, of necessity, relate back to and correct, retroactively, any defect in a prior pleading concerning the identity of the real party in interest. In the context of analogous rules of federal civil procedure, it has been observed that [when] the change is made on the plaintiff's side ... to correct a mistake in ascertaining the real

party in interest, in order to pursue effectively the original claim, the defendant will rarely be unfairly prejudiced by letting the amendment relate back to the original pleading ... As long as [the] defendant is fully apprised of a claim arising from specified conduct and has prepared to defend the action, his ability to protect himself will not be prejudicially affected if a new plaintiff is added ... Thus, an amendment substituting a new plaintiff [will] relate back if the added plaintiff is the real party in interest." (Citations omitted; internal quotation marks omitted.) *DiLieto v. County Obstetrics & Gynecology Group, P.C., supra,* 297 Conn. 150–51; see also *Rana v. Terdjianian,* 136 Conn.App. 99, 109 10,cert. denied, 305 Conn. 926 (2012).

"Under § 52 109, substitution is permitted only when the trial court determines that the action was commenced in the name of the wrong plaintiff 'through mistake,' which properly has been interpreted to mean 'an honest conviction, entertained in good faith and not resulting from the plaintiff's own negligence that she is the proper person to commence the [action].' [The Supreme Court] has stated that, once such a determination is made ... the substituted party is let in to carry on a pending suit, and is not regarded as commencing a new one. After he is substituted he is ... treated and regarded for most purposes just as if he had commenced the suit originally. The writ, the complaint, the service of process, attachment made, bonds given, the entry of the case in court, the pleadings if need be, in short all things done in the case by or in favor of the original plaintiff ... remain for the benefit of the plaintiff who succeeds him, as if done by and for him originally and just as if no change of parties had been made. So far as the defendant is concerned, the same suit upon the same cause of action, under the same complaint and pleadings substantially in most cases, goes forward to its final and legitimate conclusion as if no change had been made." *Id.,* 151–52.

The defendant argues that because the original plaintiff was not a correct party with any real interest in the controversy, it lacked standing to invoke the jurisdiction of this court. A cure for lack of standing, however, is precisely the remedy that § 52 109 provides for circumstances of this kind. "The *DiLieto* court ... favorably cited federal law for the proposition that the substitution of a real party in interest as the plaintiff cures the lack of standing of the original plaintiff." *Rana v. Terdjianian, supra,* 136 Conn.App. 110. "As long as the defendant is fully apprised of a claim arising from specified conduct and has prepared to defend the action," the substituted plaintiff is treated as if it had commenced the suit originally and "all

Salem Five Mortg. Co., LLC v. Afsary, Not Reported in A.3d (2014)
2014 WL 3893089, 58 Conn. L. Rptr. 484

things done in the case by or in favor of the original plaintiff ... remain for the benefit of the plaintiff who succeeds him." *Id.,* 110–11.

In the present case, all indications on the record indicate that the defendant is and has been fully aware of the foreclosure claims set forth against her. Ultimately, the substitution causes no meaningful change to the cause of action, and the party substituted, although a separate legal entity in the technical sense, bears a close relation of interest to the original plaintiff entity. See *Wilson v. Zemba, supra,* 49 Conn.Sup. 546. Moreover, the defendant was provided with ample time to prepare a defense in this case. Thus, her ability to protect herself was not prejudicially affected with the substitution of the new plaintiff. Accordingly, the substitution of the plaintiff party in the present case "relates back" and cures any defect in the plaintiff's standing.

The defendant, pointing to the specific cases relied upon by the plaintiff to oppose her motion to dismiss, suggests that substitution under § 52 109 should be limited to circumstances where "the original plaintiffs were proper parties to the action and properly had standing to invoke the jurisdiction of the courts." But Connecticut courts have also permitted substitutions of plaintiff parties under § 52 109 in situations where the original plaintiff lacked standing to file an action. See e.g. *Rana v. Terdjanian, supra,* 136 Conn.App. 99. Thus, the defendant's distinction fails under current Connecticut law.

The defendant also argues that, under this case's circumstances, no "relation back" is practically possible since the substitute plaintiff would also then be required to receive the benefit of an affidavit sworn by the original plaintiff. This too is not a compelling reason to grant the defendant's motion to dismiss. First, *DiLieto* allows *"all things* done in the case by or in favor of the original plaintiff ... [to] remain for the benefit of the plaintiff who succeeds him." (Emphasis added.) *DiLieto v. County Obstetrics & Gynecology Group, P.C., supra,* 297 Conn. 152. In this regard, *DiLieto* specifically mentions the "writ, the complaint, the service of process, attachment made, bonds given, the entry of the case in court, [and] the pleadings if need be" as matters which should be considered "as if done by and for [the substitute plaintiff] originally." *Id.* Although *DiLieto* does not mention the example of affidavit explicitly, the court's stated policy underlying the enactment of § 52 109 to avoid the defects in "over-technical formal requirements" allowing "courts to be reasonable in their search for technical perfection"—is

indicative of the flexibility courts should employ under the circumstances to permit a relation back of the substitute plaintiff in order to avoid any unnecessary dismissal of the case.[5] See *Id.,* 151. In the present case, the plaintiff's filings were defective only in the technical sense as to which legal entity was the current holder of the mortgage note. The defendant's substantive liability remains unchanged. The benefit of all filings, including the affidavit provided by the original plaintiff, must therefore stand in for the benefit of the newly named legal plaintiff.

Moreover, in the present case, the only affidavit filed by the original plaintiff was the JD–CL–114 form concerning the Federal Loss Mitigation Programs, signed by the Assistant Vice President of the Salem Five Mortgage Company, LLC. In the affidavit, the Assistant Vice President avers that the specific loan executed by the defendant is not subject to a loss mitigation program for various reasons then disclosed. A plain review of the affidavit reveals no indication that the affiant was not fully knowledgeable as to the nature and details of the relevant loan and the affidavit's contents regarding any potential involvement in loss mitigation programs. As a past holder of the mortgage note, the original plaintiff was likely familiar with the terms of the loan. There is no apparent reason why the affidavit should not be accepted by the court for the benefit of the substitute plaintiff.

Second, and more to point in the present case, this court is only required to rule on the matter currently before the court. Here the matter before the court is a reargument of a motion to dismiss on the ground of lack of subject matter jurisdiction. Accordingly, the court will only address the validity of the plaintiff's standing and its impact on the court's jurisdiction. In this light, because the motion to correct pursuant to § 52 109 has been granted, the plaintiff party has retroactive standing to bring this action, and the court maintains subject matter jurisdiction over the case. All other challenges regarding the validity of documents filed with the court must be raised on separate motions, each at their appropriate time.

Thus, as Connecticut case law concludes, "[w]hether the defendant's motion should be granted depends [solely] on the appropriate application of ...§ 52 109." *Wilson v. Zemba, supra,* 49 Conn.Sup. 547. On this matter, the defendant posits that plaintiff substitution under § 52 109 is not applicable under these circumstances because the successive plaintiffs were negligent in their commencing of the action in the name of the wrong plaintiff.

Salem Five Mortg. Co., LLC v. Afsary, Not Reported in A.3d (2014)
2014 WL 3893089, 58 Conn. L. Rptr. 484

When faced with the dilemma as to whether to deny a substitution under § 52-109 in favor of granting a defendant's motion to dismiss, Connecticut courts employ a two-part test in application of the statute's language. First, courts must determine whether the action's commencement with the wrongly named plaintiff was a "mistake"; and second, whether substitution of the proper plaintiff is "necessary for the determination of the real matter in the dispute." *Id.*, 548–49.

Regarding the first part of the test, the Supreme Court has stated: "Under § 52-109, substitution is permitted only when the trial court determines that the action was commenced in the name of the wrong plaintiff 'through mistake,' which properly has been interpreted to mean 'an honest conviction, entertained in good faith and not resulting from the plaintiff's own negligence that she is the proper person to commence the [action].' " *DiLieto v. County Obstetrics & Gynecology Group. P.C., supra,* 297 Conn. 151.

In the present case, the misidentification of the plaintiff party stems from the plaintiff's confusion as to whether or not the mortgage note in question was ever reassigned back to Salem Five Mortgage Company, LLC, the original plaintiff and past holder of the note, from Salem Five Cents Savings Bank, the substitute plaintiff and current holder of the note. The original complaint filed in this case alleged that after the mortgage and note were assigned to the substitute plaintiff, "[s]aid mortgage was assigned to [the original plaintiff] by virtue of an assignment of mortgage to be recorded on the Stamford Land Records." Thus, "[t]he plaintiff, Salem Five Mortgage Company, LLC, is the holder of said note and mortgage." In contrast, the amended complaint omits any allegation as to any reassignment of the mortgage back to the original plaintiff and simply states that "Salem Five Cents Savings Bank [remains] the holder of said note and mortgage."

The defendant claims that the plaintiffs' mistake as to the true holder of the mortgage and note, and thus the identity of the party with a real interest in this case's controversy, necessarily sounds in negligence. She argues that only negligence or a lack of honest conviction on the part of the plaintiff could account for such a misunderstanding as to the company's legal identity and alleged assignment of interests. This court, however, finds that the plaintiff's mistake as to the facts regarding the note's alleged assignments between the two related corporate entities does not necessarily qualify as "negligence" or a lack of "honest conviction" under the law.

As noted in the *Wilson* decision, a strict application of *DiLieto*'s definition of "mistake" may often be practically difficult and overly limiting. See *Wilson v. Zemba, supra,* 49 Conn.Supp. 549. Put differently, at times it is rather difficult for a court to distinguish between conduct which constitutes legitimate error as opposed to negligent behavior, or even to imagine a situation where negligence was not in any way a factor in the naming of the wrong party as the original plaintiff. *Id.* Even so, here is a case where, even if not conclusive, it could be said that the original plaintiff honestly believed that they were the real party in interest and later moved for a correction when it realized that reassignment of the note to a sister entity had, in fact, never occurred. See *id.,* 550. In these situations of doubt, "every presumption favoring [subject matter] jurisdiction should be indulged." (Internal quotation marks omitted.) *Keller v. Beckenstein,* 305 Conn. 523, 531 (2012). Accordingly, the plaintiff has successfully met the first prong of *DiLieto*'s test to substitute a plaintiff party under § 52-109.

The second prong of the *DiLieto* test, whether substitution of the proper plaintiff is "necessary for the determination of the real matter in the dispute," is more straight forward. As the substituted plaintiff in this case is the holder of the note and party of real interest, its substitution was required for the court to issue a judgment of foreclosure on behalf of the legal entity currently holding the mortgage and note. Moreover, as noted in *Wilson*, "[i]mplicit in [§ 52-109's] words is the notion that the substitution should not result in a change of the cause of action." *Wilson v. Zemba, supra,* 49 Conn.Sup. 551. In this regard, the plaintiff's substitution passes muster as well. Here, the cause of action for a foreclosure on the mortgage has not been altered between the plaintiff parties. The only difference between the original plaintiff and its replacement is the party with whom the note is held. Accordingly, this case passes the two-part test employed by Connecticut courts before permitting a substitution of the plaintiff party under § 52-109. Substitution under § 52-109 was therefore properly granted.

Even if we were to assume arguendo that a substitution under § 52-109 was improperly granted by this court, subject matter jurisdiction in this matter of foreclosure was nonetheless maintained from the commencement and onward. The defendant argues that, pursuant to General Statutes § 49-17,[6] only a rightful holder of a note or its assignee may bring a cause of action to enforce an instrument in a mortgage foreclosure action. As noted, in this case, a

Salem Five Mortg. Co., LLC v. Afsary, Not Reported in A.3d (2014)

2014 WL 3893089, 58 Conn. L. Rptr. 484

mortgage to secure a note was executed by the defendant and delivered to the original plaintiff. Thereupon, the mortgage and the note were immediately assigned to the substitute plaintiff who remained as its subsequent holder at the time the action was commenced and forward. Relying on *RMS Residential Properties, LLC v. Miller,* 303 Conn. 224, 230 (2011), the defendant maintains that only the substitute plaintiff, the rightful owner of the mortgage, and not the original plaintiff, had proper standing to bring this foreclosure action. See § 49-17.

The defendant's contention is only partially correct. "[A] holder of a note is presumed to be the owner of the debt, and ... may foreclose the mortgage under § 49-17." *RMS Residential Properties, LLC v. Miller, supra,* 303 Conn. 231–32. Thus, the substitute plaintiff, as the holder of the note, indeed maintained standing to bring the foreclosure cause of action. Nonetheless, Connecticut case law makes clear that an assignee's standing to sue does not preclude its bringing of a suit in name of the assignor. "The legislature's use of the word 'may' in [General Statutes § 52-118[7]] indicates that an assignee merely has the option to sue in his name. Conversely, as the Supreme Court has stated, an assignee also has the option 'to maintain [an] action in the name of his assignor.' *Jacobson v. Robington,* 139 Conn. 532, 539 (1953)." *Dime Savings Bank of Wallingford v. Arpaia,* 55

Conn.App. 180, 184 (1999). In this sense, the defendant's reliance on *RMS Residential Properties, LLC* is misplaced. The Supreme Court has since clarified in *J.E. Robert Co. v. Signature Props., LLC,* 309 Conn. 307, 324–25 (2013) that its "intention in *RMS Residential Properties, LLC,* was neither to unduly restrict the plain language of § 49-17 nor to expand the statute's application to circumstances in which ownership of the mortgage and note rest in the same hands." In this case too, ownership of the mortgage and note rested solely in the hands of the substitute plaintiff. As the entity which took the note and mortgage by assignment, it was permitted to commence the action in the name of its assignor, the original plaintiff. The substitute plaintiff then sought and received permission from this court to substitute itself in place of the original plaintiff. Standing was therefore maintained throughout the case, from commencement until judgment.

For the foregoing reasons, the motion to dismiss is denied.

BY THE COURT

MINTZ, J.

**Parallel Citations**

58 Conn. L. Rptr. 484

Footnotes

1    General Statutes § 52-109 provides: "When any action has been commenced in the name of the wrong person as plaintiff, the court may, if satisfied that it was so commenced through mistake, and that it is necessary for the determination of the real matter in dispute so to do, allow any other person to be substituted or added as plaintiff."

2    Practice Book § 9-20 provides: "When any action has been commenced in the name of the wrong person as plaintiff, the judicial authority may, if satisfied that it was so commenced through mistake and that it is necessary for the determination of the real matter in dispute so to do, allow any other person to be substituted or added as plaintiff."

3    The ground for the court's order to deny the defendant's motion to dismiss was stated orally from the bench at the conclusion of oral argument on March 10, 2014. The court also noted that the defendant failed to object to the motion to correct or later appeal its ruling. Because that motion had already been granted, substituting Salem Five Cents Savings Bank in place of Salem Five Mortgage Company, LLC, the court reasoned that any defects of lack of subject matter jurisdiction were no longer present at this stage in the case. In support, the court cited *FDIC v. Retirement Management Group, Inc.,* 31 Conn.App. 80 (1993). There the Appellate Court stated: "General Statutes § 52-109 and Practice Book [§ 9-20] allow a substituted plaintiff to enter a case [w]hen any action has been commenced in the name of the wrong person as plaintiff ... Both rules, of necessity, relate back to and correct, retroactively, any defect in a prior pleading concerning the identity of the real party in interest." (Internal quotation marks omitted.) *Id.,* 84–85.

4    General Statutes § 49-15(a)(1) provides in relevant part: "Any judgment foreclosing the title to real estate by strict foreclosure may ... be opened and modified ...*provided no such judgment shall be opened after the title has become absolute in any encumbrancer ...*"(Emphasis added.)

5    In light of the fact that a dismissal under these circumstances will likely also be followed by a refiling of the identical cause of action in the name of the substitute plaintiff, reasonable flexibility in regards to formal standing requirements will also further the cause of judicial efficiency.

6    General Statutes § 49-17 provides: "When any mortgage is foreclosed by the person entitled to receive the money secured thereby but to whom the legal title to the mortgaged premises has never been conveyed, the title to such premises shall, upon the expiration

**Salem Five Mortg. Co., LLC v. Afsary, Not Reported in A.3d (2014)**

2014 WL 3893089, 58 Conn. L. Rptr. 484

of the time limited for redemption and on failure of redemption, vest in him in the same manner and to the same extent as such title would have vested in the mortgagee if he had foreclosed, provided the person so foreclosing shall forthwith cause the decree of foreclosure to be recorded in the land records in the town in which the land lies."

7   General Statutes § 52 118 provides: "The assignee and equitable and bona fide owner of any chose in action, not negotiable, may sue thereon in his own name. Such a plaintiff shall allege in his complaint that he is the actual bona fide owner of the chose in action, and set forth when and how he acquired title."

---

**End of Document**

© 2014 Thomson Reuters. No claim to original U.S. Government Works.