# EXHIBIT 12

| DOCKET NO. FST-CV-09-5011591-S | : | SUPERIOR COURT |
|---|---|---|
| RESIDENTIAL FUNDING CO., LLC | : | J.D. OF STAMFORD/NORWALK |
| v. | : | AT STAMFORD |
| THOMAS J. LA CASSE | : | OCTOBER 23, 2014 |

## OBJECTION TO DEFENDANT'S MOTION TO DISQUALIFY COUNSEL

Plaintiff objects to Defendant Thomas J. La Casse's ("Defendant") motion to disqualify counsel filed on October 15, 2014, Entry No. 185.00. Specifically, on October 15, 2014, Defendant filed a motion disqualify Plaintiff's current counsel of record, attorneys with Hinshaw & Culbertson LLP. The sole support for the motion is Defendant's erroneous contention that said attorneys do not represent Residential Funding Company, LLC, and are required to move to intervene on behalf of another party not presently in the case. The motion to disqualify should be denied because Defendant has failed to satisfy the high standard of proof necessary to justify disqualification. See Mettler v. Mettler, 50 Conn. Super. 357, 361 (2007) (quoting Blakemar Constr., LLC v. CRS Engineering, Inc., Superior Court, J.D. of Fairfield at Bridgeport, No. CV-04 0412727S (Feb. 9, 2005)); Deleo v. Kruger, No. CV 940142362S, 1998

**ORAL ARGUMENT REQUESTED. TESTIMONY NOT REQUIRED.**

WL 67419 (Conn. Super. Feb. 10, 1998) ("The party moving for disqualification bears the burden of proving facts which indicate that disqualification is necessary. The disqualification of a party's chosen counsel is a harsh sanction, and an extraordinary remedy which should be resorted to sparingly."). Specifically, Defendant is not a client or former client of Hinshaw & Culbertson LLP, such that no client confidences are at risk of disclosure in this action. Further, Hinshaw & Culbertson LLC, represents Residential Funding Company, LLC, in regards to this action and the mortgage loan. Finally, under Connecticut law, the owner of the note, mortgage and debt evidenced by the note may litigate this action in the name of Residential Funding Company, LLC.

**A.    There are no client confidences at risk of disclosure.**

"The standards for attorney disqualification are directed at protecting client confidences … and may not be used to restrict [a party's] ability to select counsel of choice on the basis of nothing more than the litigant's subjective perception that another litigant is influencing the proceedings." Bergeron v. Mackler, 225 Conn. 391, 400 (1993). Here, there are no confidences at risk of disclosure. Consequently, Defendant's motion is improper and should be denied.

**B.    Current counsel of record represents Residential Funding Company, LLC**

Contrary to Defendant's mistaken contention, Plaintiff's current counsel of record does in fact represent Residential Funding Company, LLC. See Ex. 1, Affidavit. The September 24, 2014 email does not state otherwise.

This foreclosure action arises from a $650,000 loan to Defendant on January 30, 2006, which is secured by a mortgage on Defendant's property. Defendant defaulted on his repayment

obligations. In May 2009, Residential Funding Company, LLC, commenced this action to foreclose the mortgage. As thoroughly discussed in Plaintiff's supplemental objection filed on September 13, 2012, Entry No. 167.00, and as will be discussed in objection to Defendant's recently filed motion to dismiss, at the time this action was filed, Residential Funding Company, LLC, had standing to foreclose the mortgage as the holder of the note and mortgage with the right and/or requisite authority to enforce the note and mortgage. See J.E. Robert Co., Inc. v. Signature Properties, LLC, 309 Conn. 307, 327-331 (2013).

On May 14, 2012, Residential Capital, LLC, and certain of its direct and indirect subsidiaries, including Residential Funding Company, LLC, filed for Chapter 11 bankruptcy in the U.S. Bankruptcy Court for the Southern District of New York. The cases are being jointly administered under case number 12-12020. On July 13, 2012, the Bankruptcy Court entered a final supplemental order authorizing the debtors, including Residential Funding Company, LLC, to continue with certain default servicing activities and related litigation. This order remains in effect and any dispute as to the application of the order may only be heard in the bankruptcy case. On November 21, 2012, the Bankruptcy Court approved the sale of certain assets and mortgage servicing rights to mortgage loans from Residential Capital, LLC, and its subsidiaries GMAC Mortgage, LLC, and Residential Funding Company, LLC, to Ocwen Loan Servicing, LLC ("Ocwen").

Servicing of Defendant's mortgage loan was subsequently transferred to Ocwen. On November 18, 2013, Ocwen was given a Limited Power of Attorney to act on behalf of Residential Funding Company, LLC, and related entities. A true and accurate copy of the

3

Limited Power of Attorney for Residential Funding Company, LLC, and others, is attached as

Ex. 1(A). The Limited Power of Attorney authorizes Ocwen's retention of current counsel of

record to represent Residential Funding Company, LLC, in this action and in regards to

Defendant's mortgage loan. Because the motion to disqualify is based on Defendant's incorrect

claim that current counsel of record does not represent Residential Funding Company, LLC, the

motion should be denied.

### C.    The owner of the note, mortgage and debt evidenced by the note may litigate this action in the name of Residential Funding Company, LLC.

As recognized by this Court, in accordance with Dime Savings Bank of Wallingford v. Arpaia, 55

Conn. App. 180 (1999), and RMS Residential Properties, LLC v. Miller, 303 Conn. 224, 230 (2011), as

clarified in J.E. Robert Co., Inc. v. Signature Properties, LLC, 309 Conn. 307, 327-331 (2013), an

assignee or transferee's standing to sue does not preclude it from bringing or continuing a

foreclosure action in the name of the assignor or transferor. See Salem Five Mortg. Co., LLC v.

Afsary, 58 Conn. L. Rptr. 484, 2014 WL 3893089 (Conn. Super. June 26, 2014), attached in Ex.

2. Further, a court may grant permission for the assignee/transferee to substitute itself in place of

the original plaintiff. Id. See also Practice Book §§ 9-16, 9-23.

Plaintiff agrees with Defendant's position in this case that the owner of the note,

mortgage and debt evidenced by the note is HSBC Bank USA, National Association, as Trustee

for Luminent Mortgage Trust 2006-3, Mortgage Pass-Through Certificates Series 2006-3

("HSBC Bank as Trustee"). However, as discussed above, at the time this action was filed,

Residential Funding Company, LLC, had standing to foreclose the mortgage as the holder of the

note and mortgage with the right and/or requisite authority to enforce the note and mortgage. Because Connecticut law permits a servicer and/or holder of the note and mortgage with the right and/or requisite authority to enforce the note and mortgage on behalf of the owner to foreclose, Defendant's position that HSBC Bank as Trustee was the only entity entitled to bring this foreclosure action is incorrect.  As this action was properly brought by Residential Funding Company, LLC, HSBC Bank as Trustee may rightfully proceed with this foreclosure action in the name of Residential Funding Company, LLC, even though it is a bankrupt entity and no longer the servicer for Defendant's mortgage loan. See, e.g., Washington Mut. Bank, F.A. v. Walpuck, 134 Conn. App. 446 (2012) (applying assignor-assignee rule to mortgage foreclosure case in which entity that took title did not then exist).

Based on the foregoing, even if current counsel of record did not represent Residential Funding Company, LLC, which they do, Defendant's motion should be denied because Connecticut law permits HSBC Bank as Trustee to litigate this foreclosure action in the name of Residential Funding Company, LLC, and current counsel of record also represents HSBC Bank as Trustee. See Ex. 1.

Consistent with this Court's ruling in Salem Five Mortg. Co., LLC v. Afsary, Plaintiff and its undersigned new litigation counsel understand that the parties and Court discussed that Plaintiff would move to substitute HSBC Bank as Trustee as the party plaintiff at the hearing that was held on February 4, 2014, and the September 24, 2014 email referenced in Defendant's motion is consistent with this understanding.  However, while permissible, substitution is not required under Connecticut law.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that the Court

deny Defendant's motion to disqualify counsel, filed on October 15, 2014, Entry No. 185.00, and

grant such other relief as the Court deems appropriate and just.


Plaintiff,
By its attorneys,

/s/ Valerie N. Doble
Marissa I. Delinks, Jury No. 434580
Valerie N. Doble, Juris No. 425760
HINSHAW & CULBERTSON LLP
28 State Street, 24th Floor
Boston, MA 02109
Tel: 617-213-7000 / Fax: 617-213-7001
Email: mdelinks@hinshawlaw.com
        vdoble@hinshawlaw.com

### CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing *Objection to Defendant's Motion to Disqualify Counsel* has been sent this 23rd day of October, 2014, to:

| Via first class and electronic mail | Via first class mail |
|---|---|
| Donald M. Brown, Esq. | Thomas La Casse (pro se) |
| Law Offices of Donald M. Brown, Esq. | 100 Cambridge Street |
| 32 Pine Tree Lane | Boston, MA 02114 |
| Avon, CT 06001 | |
| donbrownzd@optonline.net | |

/s/ Valerie N. Doble
Valerie N. Doble, Juris No. 425760

# Ex. 1

| DOCKET NO. FST-CV-09-5011591-S | : | SUPERIOR COURT |
|---|---|---|
| RESIDENTIAL FUNDING COMPANY, LLC | : | J.D. OF STAMFORD/NORWALK |
| v. | : | AT STAMFORD |
| THOMAS J. LA CASSE | | |

### AFFIDAVIT IN SUPPORT OF OBJECTION TO
### DEFENDANT'S MOTION TO DISQUALIFY COUNSEL

We, Marissa I Delinks and Valerie N. Doble, hereby depose and state as follows:

1.      We are attorneys with Hinshaw & Culbertson LLP.  We represent Residential Funding Company, LLC, Ocwen Loan Servicing, LLC ("Ocwen"), and HSBC Bank USA, National Association, as Trustee for Luminent Mortgage Trust 2006-3, Mortgage Pass-Through Certificates Series 2006-3 ("HSBC Bank as Trustee"), in regards to the above-captioned matter and the loan to Defendant Thomas J. LaCasse, which is secured by a mortgage on the property located at 153 Valley Forge Road, Weston, Connecticut.

2.      Ocwen is the current servicer for Defendant's mortgage loan.  Attached as Ex. A is a true and accurate copy of the Limited Power of Attorney authorizing Ocwen to take certain actions on behalf of Residential Funding Company, LLC, and related entities.  Attached as Ex. B is a true and accurate copy of the Limited Power of Attorney authorizing Ocwen to take certain actions on behalf of HSBC Bank as Trustee.

3.      On September 24, 2014, Attorney Doble emailed Defendant's counsel, asking if Defendant would consent to a further extension of time for the plaintiff to object and respond to the defendant's discovery requests.  Nowhere in the email did Attorney Doble state that the undersigned do not represent Residential Funding Company, LLC.  It is our understanding that the parties and Court discussed that Plaintiff would move to substitute HSBC Bank as Trustee as the party plaintiff at the hearing that was held on February 4, 2014, and the September 24, 2014 email referenced in Defendant's motion is consistent with this understanding.

Signed under the pains and penalties of perjury this 23rd day of October, 2014.

_____
Marissa I. Delinks

_____
Valerie N. Doble

# Ex. A

### LIMITED POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, that effective November 1, 2013, each of the companies listed on the attached Exhibit A, or any Successor-in-Interest to same (each a "Company" and collectively the "Companies"), having a place of business as respectively indicated on Exhibit A, does hereby constitute and appoint Ocwen Loan Servicing, LLC, a Delaware limited liability company ("Ocwen"), having a place of business at 1100 Virginia Drive, Fort Washington, PA 19034, by and through its officers, its true and lawful Attorney-in-Fact in its name place and stead and for its benefits in connection with mortgage loans and mortgage loan servicing rights purchased by Ocwen pursuant to the Asset Purchase Agreement, by and among Residential Capital, LLC, Residential Funding Company, LLC, GMAC Mortgage, LLC, Executive Trustee Services, LLC, ETS of Washington, Inc., EPRE, LLC, GMACM Borrower LLC and RFC Borrower LLC, being one or more of the Companies or the Sole Member of one or more of the Companies, and Ocwen, dated as of November 2, 2012, as amended (the "Asset Purchase Agreement"), and pursuant to the Servicing, Subservicing and Servicing Transfer Agreements, by and among GMAC Mortgage, LLC, Residential Funding Company, LLC, Executive Trustee Services, LLC and ETS of Washington, Inc., being one or more of the Companies or the Sole Member of one or more of the Companies, and Ocwen, each dated as of February 15, 2013 (the "Servicing Agreements"), whereby Ocwen, as Servicer, Subservicer, or Purchaser is permitted to carry out certain servicing actions on behalf of the Companies, for the purpose of performing all acts and executing all documents in the name of the Company or Companies, or any former legal name of the Company or Companies, or any current or former trade name registered to the Company or Companies, necessary or incidental to implement the Asset Purchase Agreement and Servicing Agreements, or to take any and all action necessary to perfect the interest of Ocwen in any mortgage loan for which the servicing was acquired by Ocwen pursuant to the Asset Purchase Agreement, including but not limited to:

1.  Foreclosing delinquent loans or discontinuing such foreclosure proceedings, including, but not limited to, the execution of notices of default, notices of sale, assignments of bids, and assignments of deficiency judgments, and appearing in and prosecuting and defending bankruptcy proceedings;

2.  Selling, transferring or otherwise disposing of real property acquired through foreclosure or otherwise, including, but not limited to, executing all contracts, agreements, deeds, assignments or other instruments necessary to effect such sale, transfer or disposition, and receiving proceeds and endorsing checks made payable to the order of the Company or Companies from such proceedings;

3.  Preparing, executing, and delivering affidavits, certifications, declarations, stipulations, waivers of any conflict of interest, verifications, proofs of claim and other bankruptcy documents, satisfactions, clearing or remedying titles to real property, cancellations, discharges, lost note instruments, or full or partial releases of lien, subordination agreements, modification agreements, assumption agreements, substitutions of trustees under deeds of trust, and UCC-3 Continuation Statements;

4.  Endorsing title certificates or promissory notes and executing assignments of mortgages, deeds of trust, deeds to secure debt, and other security instruments securing said promissory notes;

5.  Endorsing insurance policies or insurance proceeds checks and mortgage payment checks to the order of the Company or Companies;

6.  Executing settlement agreements, consent orders, stipulations or other consented to court documents; and

7.  Any and all such other acts of any kind and nature whatsoever that are necessary or appropriate to implement the transactions contemplated by the Asset Purchase Agreement and Servicing Agreements or to take any and all action necessary to perfect the interest of Ocwen in any mortgage loan as to which the servicing was acquired by Ocwen pursuant to the Asset Purchase Agreement, including, without limitation, delegating the authority granted herein to necessary third parties such as, but not limited to, law firms or trust companies and each of their officers, directors, employees, agents and assigns.

Each Company further grants to Ocwen full power and authority to do and perform all acts necessary for Ocwen to carry into effect the power or powers granted by or under this Limited Power of Attorney as fully as the Companies might or could do with the same validity as if all and every such act had been herein particularly stated, expressed and especially provided for, and hereby ratifies and confirms all that Ocwen shall lawfully do by virtue of the powers and authority granted and contemplated hereby, and all that Ocwen has previously done pursuant to or in connection with the Asset Purchase Agreement or any power of attorney previously granted by the Companies to Ocwen. This Limited Power of Attorney shall be effective November 1, 2013 and remain in full force and effect until revoked or terminated by the Companies.

Third parties without actual notice may rely upon the exercise of the power granted under this Limited Power of Attorney, and may be satisfied that this Limited Power of Attorney has not been revoked by the Companies.

SIGNATURE PAGES TO FOLLOW

**EXHIBIT A**

1. ETS of Virginia, Inc.
   3900 Westerre Parkway, Suite 300
   Richmond, VA 23233

2. ETS of Washington, Inc.
   800 Bellevue Way, NE, Suite 420
   Bellevue, WA 98004

3. Executive Trustee Services, LLC
   2255 N Ontario Street, Suite 400
   Burbank, CA 91504-3190

4. GMAC Mortgage USA Corporation
   1100 Virginia Drive, Suite 250
   Fort Washington, PA 19034

5. GMAC Mortgage, LLC
   1100 Virginia Drive, Suite 250
   Fort Washington, PA 19034

6. Homecomings Financial Real Estate Holdings, LLC
   8400 Normandale Lake Blvd, Suite 175
   Minneapolis, MN 55437

7. Homecomings Financial, LLC
   8400 Normandale Lake Blvd, Suite 175
   Minneapolis, MN 55437

8. PATI Real Estate Holdings, LLC
   1100 Virginia Drive, Suite 250
   Fort Washington, PA 19034

9. RAHI Real Estate Holdings, LLC
   3993 Howard Hughes Parkway, Suite 250
   Las Vegas, NV 89169

10. Residential Funding Company, LLC
    8400 Normandale Lake Blvd, Suite 175
    Minneapolis, MN 55437

11. Residential Funding Real Estate Holdings, LLC
    8400 Normandale Lake Blvd, Suite 175
    Minneapolis, MN 55437

12. Residential Mortgage Real Estate Holdings, LLC
    1100 Virginia Drive, Suite 250
    Fort Washington, PA 19034

ETS OF VIRGINIA, INC.
ETS OF WASHINGTON, INC.
EXECUTIVE TRUSTEE SERVICES, LLC
GMAC MORTGAGE USA CORPORATION
GMAC MORTGAGE, LLC
HOMECOMINGS FINANCIAL REAL ESTATE HOLDINGS, LLC
HOMECOMINGS FINANCIAL, LLC
PATI REAL ESTATE HOLDINGS, LLC
RAHI REAL ESTATE HOLDINGS, LLC
RESIDENTIAL FUNDING COMPANY, LLC
RESIDENTIAL FUNDING REAL ESTATE HOLDINGS, LLC
RESIDENTIAL MORTGAGE REAL ESTATE HOLDINGS, LLC
(COLLECTIVELY, THE "COMPANIES")

By: _Nancy Dilwoett_

Name: _Nancy Dilworth_

Title: _Authorized Officer_

Witness: _Tracy Mace_

Name: _Tracy Mace_

Witness: _Brenda Staehle_

Name: _Brenda Staehle_

STATE OF __Pennsylvania__

COUNTY OF __Montgomery__

On this _18_ day of _Nov_ 20_13_ before me, the undersigned, a Notary Public in and
for said State and County, personally appeared _Nancy Dilworth_ personally known to me to be the person who
executed the within instrument _Authorized Officer_ on behalf of the Companies and he or she acknowledged
that said instrument is the act and deed of the Companies and that he or she, being authorized to do so, executed and
delivered said instrument for the purposes therein contained

In witness hereof, I hereunto set my hand and official seal.

Notary Public  Thomas J. Cunningham

_8.1.16_
My Commission Expires

[Seal]

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
THOMAS J. CUNNINGHAM, Notary Public
City of Philadelphia
My Commission Expires Aug. 1, 2016

# Ex. B

2786                            LIMITED POWER OF ATTORNEY

**HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE** (hereinafter called "Trustee") hereby appoints Ocwen Loan Servicing, LLC (hereinafter called "Ocwen"), as its true and lawful attorney-in-fact to act in the name, place and stead of Trustee for the purposes set forth below. Ocwen is the Servicer for many securitizations pursuant to the applicable Pooling and Servicing Agreements for each securitization (the "Agreements," see Exhibit A attached for a listing) now in existence and that will be formed from time to time.

The said attorneys-in-fact, and each of them, are hereby authorized, and empowered, as follows with respect to the loans, mortgages, and properties securitized pursuant to the Agreements:

1.      To execute, acknowledge, seal and deliver deed of trust/mortgage note endorsements, lost note affidavits, assignments of deed of trust/mortgage and other recorded documents, satisfactions/releases/reconveyances of deed of trust/mortgage, subordinations and modifications, tax authority notifications and declarations, deeds, bills of sale, and other instruments of sale, conveyance, and transfer, appropriately completed, with all ordinary or necessary endorsements, acknowledgments, affidavits, and supporting documents as may be necessary or appropriate to effect its execution, delivery, conveyance, recordation or filing.
2.      To execute and deliver insurance filings and claims, affidavits of debt, substitutions of trustee, substitutions of counsel, non-military affidavits, notices of recission, foreclosure deeds, transfer tax affidavits, affidavits of merit, verifications of complaints, notices to quit, bankruptcy declarations for the purpose of filing claims and motions to lift stays, and other documents or notice filings on behalf of Trustee in connection with insurance, foreclosure, bankruptcy and eviction actions.
3.      To endorse any checks or other instruments received by Ocwen and made payable to Trustee.
4.      To pursue any deficiency, debt or other obligation, secured or unsecured, including but not limited to those arising from foreclosure or other sale, promissory note or check. This power also authorizes Ocwen to collect, negotiate or otherwise settle any deficiency claim, including interest and attorney's fees.
5.      To do any other act or complete any other document that arises in the normal course of servicing.

Dated: June 11, 2013                        **HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE**

Witness:

                                            Name:   Fernando Acebedo
                                            Title:    Vice President

Name: June Yang


Name: Nancy Luong


State of __New York_____ ), County of _New York_____ )

        BEFORE ME, Audrey H Zabriskie, a Notary Public in and for the jurisdiction aforesaid, on this 11th day of June, 2013, personally appeared Fernando Acebedo who is personally known to me (or sufficiently proven) to be a Vice President of HSBC Bank USA, National Association, as Trustee and the person who executed the foregoing instrument by virtue of the authority vested in him/her and he/she did acknowledge the signing of the foregoing instrument to be his/her free and voluntary act and deed as a Vice President for the uses, purposes and consideration therein set forth.

        Witness my hand and official seal this 11th day of June, 2013.


My Commission Expires:

┌─────────────────────────────────────┐
│ NOTARY STAMP                        │
│                                     │
│   AUDREY H. ZABRISKIE               │
│   No. 01ZA6195310                   │
│   Notary Public, State of New York  │
│   Qualified in New York County      │
│   My Commission Expires 04/20/2015  │
└─────────────────────────────────────┘

**Exhibit "A"**
Updated as of June 11, 2013

HSBC Bank USA, National Association, as Trustee for ACE Securities Corp. Home Equity Loan Trust, Series 2006-SL4

HSBC Bank USA, National Association, as Trustee for ACE Securities Corp., Home Equity Loan Trust, Series 2007-SL1

HSBC Bank USA, National Association as Trustee for ACE Securities Corp., Home Equity Loan Trust, Series 2007-HE4

HSBC Bank USA, National Association, as Trustee for Adjustable Rate Mortgage Trust 2004-5

HSBC Bank USA, National Association, as Trustee for Adjustable Rate Mortgage Trust 2005-1

HSBC Bank USA, National Association as Trustee for holders of Alliance Bancorp Trust 2007-S1, Mortgage Backed Pass-Through Certificates, Series 2007-S1

HSBC Bank USA, National Association, as Trustee for Citigroup Mortgage Loan Trust Inc., Asset-Backed Pass-Through Certificates, Series 2005-SHL1

HSBC Bank USA, National Association, as Trustee for Citigroup Mortgage Loan Trust Inc., Asset-Backed Pass-Through Certificates, Series 2007-SHL1

HSBC Bank USA, National Association as Trustee for Citigroup Mortgage Loan Trust, Series 2004-2

HSBC Bank USA, National Association, as Trustee for Deutsche ALT-A Securities Inc, Series 2003-2XS

HSBC Bank USA, National Association, as Trustee for Deutsche Alt-A Securities, Inc., Mortgage Loan Trust, Series 2003-4XS

HSBC Bank USA, National Association as Trustee for Deutsche Alt-A Securities, Inc. Mortgage Loan Trust, Series 2005-3

HSBC Bank USA, National Association, as Trustee for Deutsche Alt-A Securities, Inc. Mortgage Loan Trust, Series 2005-4

HSBC Bank USA, National Association as Trustee for Deutsche Alt-A Securities Inc. Mortgage Loan Trust, Series 2005-AR1

HSBC Bank USA, National Association, as Trustee for Deutsche Alt-A Securities Inc. Mortgage Loan Trust, Series 2005-AR2 Mortgage Pass-Through Certificates

HSBC Bank USA, National Association, as Trustee for Deutsche Alt-B Securities, Mortgage Loan Trust, Series 2006-AB1

HSBC Bank USA, National Association, as Trustee for Deutsche Alt-B Securities Mortgage Loan Trust, Series 2006-AB3

## Exhibit "A"
Updated as of June 11, 2013

HSBC Bank USA, National Association, as Trustee for Deutsche Alt-A Securities, Inc., Mortgage Loan Trust, Series 2006-AR1

HSBC Bank USA, National Association, as Trustee for Deutsche Alt-A Securities Mortgage Loan Trust, Series 2007-OA3

HSBC Bank USA, National Association, as Trustee for Deutsche Alt-A Securities Mortgage Loan Trust, Series 2007-OA4

HSBC Bank USA, National Association, as Trustee for Deutsche Alt-A Securities Mortgage Loan Trust, Series 2007-OA5

HSBC Bank USA, National Association, as Trustee for Deutsche Mortgage Securities Inc. Mortgage Loan Trust, Series 2004-1

HSBC Bank USA, National Association, as Trustee for Deutsche Mortgage Securities Inc. Mortgage Loan Trust, Series 2004-2

HSBC Bank USA, National Association, as Trustee for Deutsche Mortgage Securities Inc. Mortgage Loan Trust, Series 2004-4

HSBC Bank USA, National Association, as Trustee for Deutsche Mortgage Securities, Inc. Mortgage Loan Trust, Series 2004-5

HSBC Bank USA, National Association, as Trustee for Deutsche Alt-A Securities, Inc. Mortgage Loan Trust Series 2007-OA1

HSBC Bank USA, National Association, as Trustee for Deutsche Alt-A Securities Mortgage Loan Trust, Series 2006-AR5

HSBC Bank USA, National Association, as Trustee for Deutsche Alt-A Securities, Inc. Mortgage Loan Trust, Series 2006-AF1

HSBC Bank USA, National Association as Trustee for Deutsche Alt-A Securities, Inc. Mortgage Loan Trust, Series 2005-5

HSBC Bank USA, National Association as Trustee for Deutsche Alt-A Securities Mortgage Loan Trust, Series 2007-AR3

HSBC Bank USA, National Association as Trustee for Deutsche Alt-A Securities Mortgage Loan Trust, Series 2007-RAMP1

HSBC Bank USA, National Association, as Trustee for GSAA Home Equity Trust 2005-9

HSBC Bank USA, National Association as Trustee for GSMPS Mortgage Loan Trust 2005-RP1, Mortgage Pass-Through Certificates, Series 2005-RP1

HSBC Bank USA, National Association, as Trustee for Lehman Mortgage Trust Mortgage Pass-Through Certificates Series 2006-7

## Exhibit "A"
Updated as of June 11, 2013

HSBC Bank USA, National Association, as Trustee for Luminent Mortgage Trust 2006-3, Mortgage Pass-Through Certificates Series 2006-3

HSBC Bank USA, National Association, as Trustee for Luminent Mortgage Trust 2006-4

HSBC Bank USA, National Association as Trustee for Luminent Mortgage Trust 2006-5

HSBC Bank USA, National Association, as Trustee for Merrill Lynch Alternative Note Asset Trust, Series 2007-OAR3

HSBC Bank USA, National Association, as Trustee for Merrill Lynch Alternative Note Asset Trust, Series 2007-AF1

HSBC Bank USA, National Association, as Trustee for MASTR Reperforming Loan Trust 2005-2

HSBC Bank USA, National Association, as Trustee for MASTR Reperforming Loan Trust 2005-1

HSBC Bank USA, National Association as Trustee for MASTR Reperforming Loan Trust 2006-1

HSBC Bank USA, National Association as Trustee for MASTR Reperforming Loan Trust 2006-2

HSBC Bank USA, National Association as Trustee for Nomura Asset Acceptance Corporation, Alternative Loan Trust, Series 2005-AP2

HSBC Bank USA, National Association as Trustee for Nomura Asset Acceptance Corporation, Alternative Loan Trust, Series 2005-S2

HSBC Bank USA, National Association as Trustee for Nomura Asset Acceptance Corporation, Alternative Loan Trust, Series 2005-S3

HSBC Bank USA, National Association as Trustee for Nomura Asset Acceptance Corporation, Alternative Loan Trust, Series 2005-S4

HSBC Bank USA, National Association as Trustee for Nomura Asset Acceptance Corporation, Alternative Loan Trust, Series 2006-AR3

HSBC Bank USA, National Association as Trustee for Nomura Asset Acceptance Corporation, Alternative Loan Trust, Series 2006-S1

HSBC Bank USA, National Association as Trustee for Nomura Asset Acceptance Corporation, Alternative Loan Trust, Series 2006-S2

HSBC Bank USA, National Association as Trustee for Nomura Asset Acceptance Corporation, Alternative Loan Trust, Series 2005-AP1

HSBC Bank USA, National Association as Trustee for Nomura Home Equity Loan, Inc., Series 2007-1

## Exhibit "A"
Updated as of June 11, 2013

HSBC Bank USA, National Association, as Trustee for Nomura Asset Acceptance Corporation, Alternative Loan Trust, Series 2007-1

HSBC Bank USA, National Association, as Trustee for Nomura Asset Acceptance Corporation, Alternative Loan Trust, Series 2007-2

HSBC Bank USA, National Association, as Trustee for Nomura Asset Acceptance Corporation, Alternative Loan Trust, Series 2007-S2

HSBC Bank USA, National Association, as Trustee for Nomura Asset Acceptance Corporation, Alternative Loan Trust, Series 2006-AR4

HSBC Bank USA, National Association as Trustee for Sequoia Mortgage Trust 2005-3

HSBC Bank USA, National Association, as Trustee for Sequoia Mortgage Trust 2007-1

HSBC Bank USA, National Association, as Trustee for Sequoia Mortgage Trust 2007-2

HSBC Bank USA, National Association, as Trustee for Sequoia Mortgage Trust 2007-3, Mortgage Pass-Through Certificates

HSBC Bank USA, National Association, as Trustee for Sequoia Mortgage Trust 2007-4, Mortgage Pass-Through Certificates

HSBC Bank USA, National Association, as Trustee for Sequoia Mortgage Trust 2004-10, Mortgage Pass-Through Certificates

HSBC Bank USA, National Association, as Trustee for Sequoia Mortgage Trust 2004-11, Mortgage Pass-Through Certificates

HSBC Bank USA, National Association as Trustee for Sequoia Mortgage Trust 2004-12, Mortgage Pass-Through Certificates

HSBC Bank USA, National Association, as Trustee for Sequoia Mortgage Trust 2004-3

HSBC Bank USA, National Association, as Trustee for Sequoia Mortgage Trust 2004-4

HSBC Bank USA, National Association, as Trustee for Sequoia Mortgage Trust 2004-5

HSBC Bank USA, National Association, as Trustee for Sequoia Mortgage Trust 2004-6, Mortgage Pass-Through Certificates

HSBC Bank USA, National Association, as Trustee for Sequoia Mortgage Trust 2004-7, Mortgage Pass-Through Certificates

HSBC Bank USA, National Association, as Trustee for Sequoia Mortgage Trust 2004-8, Mortgage Pass-Through Certificates

HSBC Bank USA, National Association, as Trustee for Sequoia Mortgage Trust 2004-9, Mortgage Pass-Through Certificates

HSBC Bank USA, National Association, as Trustee for Sequoia Mortgage Trust 2005-1,

**Exhibit "A"**
Updated as of June 11, 2013

Mortgage Pass-Through Certificates

HSBC Bank USA, National Association, as Trustee for Sequoia Mortgage Trust 2005-2

HSBC Bank USA, National Association, as Trustee for Sequoia Mortgage Trust 2005-3, Mortgage Pass-Through Certificates

HSBC Bank USA, National Association as Trustee for Sequoia Mortgage Trust 2005-4, Mortgage Pass-Through Certificates

HSBC Bank USA, National Association as Trustee for Structured Asset Securities Corporation Mortgage Loan Trust Mortgage Pass-Through Certificates, Series 2007-RF2

HSBC Bank USA, National Association as Trustee for Structured Asset Securities Corporation Mortgage Loan Trust Mortgage Pass-Through Certificates, Series 2008-RF1

# Ex. 2

Salem Five Mortg. Co., LLC v. Afsary, Not Reported in A.3d (2014)
2014 WL 3893089, 58 Conn. L. Rptr. 484

2014 WL 3893089

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut..

Salem Five Mortgage Company, LLC

v.

Rabaya Afsary

FSTCV126013158S    |    File Date:June 26, 2014

## Opinion

Mintz, Douglas C., J.

MEMORANDUM OF DECISION RE MOTION TO DISMISS (# 134.00)

The original plaintiff, Salem Five Mortgage Company, LLC as named at the commencement of this case, commenced this action for foreclosure against the defendant, Rabaya Afsary, through a complaint filed on February 29, 2012. On September 24, 2012, Salem Five Cents Savings Bank was substituted in to the case as the substitute plaintiff in place of the original plaintiff, pursuant to General Statutes § 52–109[1] and Practice Book § 9–20.[2]

Here, in the context of her recent motion to reargue, the defendant again raises the issues of subject matter jurisdiction and General Statutes § 52–109, a matter first raised in her motion to dismiss filed on November 12, 2013. On March 10, 2014, the court denied the motion to dismiss on the ground that any potential lack of subject matter jurisdiction due to lack of standing had been cured with the court's granting of the plaintiff's motion to correct the name of the plaintiff pursuant to § 52–109 and Practice Book § 9–20.[3]

On March 31, 2014, the defendant filed her motion to reargue the court's decision to deny her motion to dismiss on the grounds that the court has overlooked a controlling principle of law or misapprehended key facts in the case. On May 12, 2014, the court granted the motion to reargue and set June 2, 2014 as the date for reargument of the motion to dismiss. Oral arguments between the parties on the matter was postponed and heard before the court on June 3, 2014.

"[T]he purpose of a reargument is ... to demonstrate to the court that there is some decision or some principle of law which would have a controlling effect, and which has been overlooked, or that there has been a misapprehension of facts ... It also may be used to address ... claims of law that the [movant] claimed were not addressed by the court ... [A] motion to reargue [however] is not to be used as an opportunity to have a second bite of the apple." (Internal quotation marks omitted.) *Fortin v. Hartford Underwriters Ins. Co.*, 139 Conn.App. 826, 843,cert. granted on other grounds, 308 Conn. 905 (2013).

"A motion to dismiss ... properly attacks the jurisdiction of the court ... [It] admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone." (Citations omitted; internal quotation marks omitted.) *Ferreira v. Pringle*, 255 Conn. 330, 346 (2001). "A motion to dismiss is the appropriate vehicle for challenging the jurisdiction of the court ... The grounds which may be asserted in this motion are: (1) lack of jurisdiction over the subject matter; (2) lack of jurisdiction over the person; (3) improper venue; (4) insufficiency of process; and (5) insufficiency of service of process." (Citation omitted.) *Zizka v. Water Pollution Control Authority*, 195 Conn. 682, 687 (1985). "[B]ecause the issue of standing implicates subject matter jurisdiction it may be a proper basis for granting a motion to dismiss ... [S]ee Practice Book § 10–31(a)(1)." (Citation omitted.) *Electrical Contractors, Inc. v. Dept. of Education*, 303 Conn. 402, 413 (2012).

In the present case, as the motion to reargue the court's prior decision to deny the defendant's motion to dismiss has been previously granted, the court now finds that, from the commencement of the case until judgment, proper jurisdiction over the parties was fully maintained. Accordingly, the court affirms it March 10, 2014 order to deny the defendant's motion to dismiss. Despite the court's decision to leave its prior order unchanged, it would seem that elaboration on several key matters concerning its decision may be justified. This Memorandum of Decision will therefore address the issues of procedural and substantive law pertaining to deciding the merits of the motion to dismiss at this stage in the case.

In her memorandum of law in support of her original motion to dismiss, the defendant argued that the court lacks subject matter jurisdiction over the present case because the original plaintiff lacked standing to bring a foreclosure action against the defendant and the plaintiff was without proper remedy of

Salem Five Mortg. Co., LLC v. Afsary, Not Reported in A.3d (2014)
2014 WL 3893089, 58 Conn. L. Rptr. 484

substitution under the law. Specifically, because the original plaintiff and the substitute plaintiff are separate legal entities, the defendant maintained that the original plaintiff had no right to initiate this lawsuit on behalf of the substitute plaintiff, the true holder of the note. Moreover, the defendant contended that the plaintiff's failure to properly name itself as plaintiff was the result of its own negligence, thereby depriving it of standing to move for substitution under § 52-109.

In the plaintiff's objection to the original motion to dismiss, the plaintiff countered that at that stage in the case, the substitution of the plaintiff party already granted by the court had corrected any prior defect in standing. Moreover, because the parties had already had a full opportunity to contest the subject matter jurisdiction of the court before final judgment, the plaintiff argued that Connecticut law did not allow courts to entertain new challenges of this kind as they would improperly undermine the finality of court's judgment. Accordingly, the plaintiff maintained that the motion to dismiss in fact amounted to an improper attempt by the defendant to reargue the prior motion to correct beyond the procedural limit of twenty days established by Practice Book §§ 11-10 and 11-11.

In the recent motion to reargue, the defendant continues to argue that because the original plaintiff was not a correct party with any real interest in the controversy, it lacked standing to invoke the jurisdiction of this court. Moreover, the defendant suggests that Connecticut case law permits substitution to correct the name of the plaintiff party only in situations where the original plaintiff is a proper party to the action with standing at the time the action was commenced. Here, because the action for foreclosure was brought by a party with no interest in the controversy, there exists no practical manner in which the plaintiff's pleadings and documents filed with the court, and its sworn affidavit in particular, can remain on the record for the benefit of the plaintiff who succeeds him. The defendant further contends that the successive plaintiff parties were negligent in their understanding of their identities and interests, and are therefore prevented under Connecticut law from substituting a plaintiff under § 52-109.

In response, the plaintiff counters that the defendant's motion to reargue is improper because it raises the identical issues that were presented to the court at the time of the hearing on the motion to dismiss. The plaintiff further reiterates its arguments previously set forth in its objection to the motion to dismiss.

As a preliminary matter, this court must consider whether it is permitted to address a party's challenge to the court's jurisdiction where, as in the present case, the law day has passed and title to the property has already vested in the foreclosing party. See General Statutes § 49-15(a)(1);[4] *New Milford Savings Bank v. Jajer*, 44 Conn.App. 588, 594 (1997) (noting that "[both it] and the Supreme Court have held that, under [§ 49-15], after title has become absolute in any encumbrancer, a judgment of foreclosure cannot be opened"). In *Wells Fargo Bank, N.A. v. McIntosh*, Superior Court, judicial district of Stamford–Norwalk, Docket No. CV–10–6003534–S (April 15, 2011, Mintz, J.), this court addressed the issue of defendant's challenge to personal jurisdiction in a judgment of strict foreclosure after the law day has passed. This court noted that " § 49-15 does not prevent the court from dismissing this case per se. In fact, as clearly stated by the Connecticut Supreme Court, 'although ... a judgment of strict foreclosure ordinarily cannot be opened after the law day has passed, the judgment can be attacked on the ground that the court lacked jurisdiction over the party challenging it.' *Argent Mortgage Co., LLC v. Huertas*, 288 Conn. 568, 576 (2008). Accordingly, the determinative issue becomes whether the defendants were properly served with process." *Id.*

Later, the Appellate Court issued a similar ruling also permitting a challenge to the court's subject matter jurisdiction after title has vested. "It is a general rule that a judgment of strict foreclosure ordinarily cannot be opened after the law day has passed, [unless] the judgment [is] attacked on the ground that the court lacked jurisdiction over the party challenging it ... Once title has vested, no practical relief is available [p]rovided that this vesting has occurred pursuant to an authorized exercise of jurisdiction by the trial court ... A natural corollary of this principle is that *a judgment of strict foreclosure may be opened only upon a finding that the court lacked jurisdiction over either the person or the case at the time the judgment of strict foreclosure was entered.* Anything less would appear to be in direct contravention of the strictures of § 49-15(a) and our subsequent case law." (Citations omitted; emphasis added; internal quotation marks omitted.) *Highgate Condominium Assn., Inc. v. Miller*, 129 Conn.App. 429, 434-35 (2011). Accordingly, in the present case, § 49-15 presents no procedural boundaries for the defendant's attempt to argue her motion to dismiss on its merits.

Salem Five Mortg. Co., LLC v. Afsary, Not Reported in A.3d (2014)
2014 WL 3893089, 58 Conn. L. Rptr. 484

Aside from the technical issue of reopening a judgment of strict foreclosure after title has vested, the plaintiff has raised the related question of whether a party may move to open a judgment to challenge subject matter jurisdiction where it has previously had an opportunity to litigate that matter at an earlier stage in the case. "It often is stated that a challenge to subject matter jurisdiction can be raised at any time and that once the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented ... and the court must fully resolve it before proceeding further with the case ... Our Supreme Court, however, has stated that there are boundaries to challenges concerning the issue of subject matter jurisdiction. As we have only recently observed ... [t]he modern law of civil procedure suggests that even litigation about subject matter jurisdiction should take into account the importance of the principle of the finality of judgments, particularly when the parties have had a full opportunity originally to contest the jurisdiction of the adjudicatory tribunal ... Under this rationale, at least where the lack of jurisdiction is not entirely obvious, the critical considerations are whether the complaining party had the opportunity to litigate the question of jurisdiction in the original action, and, if he did have such an opportunity, whether there are strong policy reasons for giving him a second opportunity to do so." (Citations omitted, internal quotation marks omitted.) *Urban Redevelopment Commission of Stamford v. Katsetos,* 86 Conn.App. 236, 240–41 (2004).

Here, the defendant moves to open a final judgment to contest the court's subject matter jurisdiction over the case. As in *Urban Redevelopment,* the defendant has previously had a full opportunity to litigate the question of jurisdiction, particularly at the time of the plaintiff's motion to correct the plaintiff party's name. As noted by the court in its denial of the defendant's original motion to dismiss, the defendant failed to oppose the plaintiff's motion or later appeal its ruling on any ground. Moreover, lack of jurisdiction is not obvious at the present stage in the case since the court has cured all jurisdictional defects by allowing a correction to the plaintiff party's name pursuant to § 49–15. Accordingly, a second opportunity to challenge the court's jurisdiction should only be granted if strong policy reasons exist in its favor. The defendant has not presented any overriding policy concerns for the court to break from normal mode under modern law of civil procedure and undermine the finality of its past judgment. For this reason, the court deems the defendant's challenge to subject matter jurisdiction to be untimely at

the current stage in this case, and her motion is accordingly denied.

A clear understanding of the concepts of standing and plaintiff party substitution procedure, their history, and the relationship between them, is central to a determination of subject matter jurisdiction in the present case. "Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy." (Internal quotation marks omitted.) *Bysiewicz v. Dinardo,* 298 Conn. 748, 758 (2010). "Where a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause." (Internal quotation marks omitted.) *Monroe v. Horwitch,* 215 Conn. 469, 473 (1990).

"Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved." (Internal quotation marks omitted.) *St. Paul Travelers Cos. v. Kuehl,* 299 Conn. 800, 809 (2011). "[S]tanding to enforce [a] promissory note is [established] by the provisions of the Uniform Commercial Code ... Under [the Uniform Commercial Code], only a 'holder' of an instrument or someone who has the rights of a holder is entitled to enforce the instrument ... The 'holder' is the person or entity in possession of the instrument if the instrument is payable to bearer." (Citation omitted.) *Chase Home Finance, LLC v. Fequiere,* 119 Conn.App. 570, 577,cert. denied, 295 Conn. 922 (2010).

Here, the defendant contends that because the original plaintiff, Salem Five Mortgage Company, LLC, was not the holder of the relevant note at the time this action was commenced, it therefore lacked standing to bring suit. Later in this case, however, this court pursuant to § 52–109 and Practice Book § 9–20, permitted Salem Five Cents Savings Bank to be substituted in as the replacement plaintiff to the case. In this regard, § 52–109 provides that "[w]hen any action has been commenced in the name of the wrong person as plaintiff, the court may, if satisfied that it was commenced through mistake, and that it is necessary for the determination of the real matter in dispute so to do, allow any other person to be substituted or added as plaintiff." Following § 52–109, Practice Book § 9–20 similarly provides that "[w]hen any action has been commenced in the name of the wrong person as plaintiff, the judicial authority may, if satisfied that it was so commenced through mistake and that it

Salem Five Mortg. Co., LLC v. Afsary, Not Reported in A.3d (2014)
2014 WL 3893089, 58 Conn. L. Rptr. 484

is necessary for the determination of the real matter in dispute so to do, allow any other person to be substituted or added as plaintiff."

By contrast, "common law ... prohibits an entire change of plaintiffs by the substitution of new persons in the place of those who originally brought suit. The reason for the general rule is that an entire change of plaintiffs is in effect a change in the cause of action. If there is a completely new cause of action, the original plaintiff obviously has no standing to pursue the matter if the law of the jurisdiction gives him or her no right to bring a suit of a particular character." (Citation omitted; internal quotation marks omitted.) *Wilson v. Zemba,* 49 Conn.Sup. 542, 545–46 [38 Conn. L. Rptr. 272] (2004).

Accordingly, "Superior Court decisions [have] repeatedly recognized that [§ 52–109] must be a legislative exception to the common-law rule that would otherwise prevent substitutions or amendments to cure standing defects in cases commenced in the wrong name. Otherwise, the statute would be useless. The Supreme Court agreed that the statute changed the common law." *Zulick v. Melnick,* Superior Court, judicial district of Windham, Docket No. CV–11–6003896–S (March 1, 2012, Vacchelli, J.).

"[R]emedial statutes such as [§ 52–109] were intended to soften the otherwise harsh consequences of strict construction under the common law: Over-technical formal requirements have ever been a problem of the common law, leading [legislative bodies] at periodic intervals to enact statutes ... [that], in substance, told the courts to be reasonable in their search for technical perfection." (Citation omitted; internal quotation marks omitted.) *DiLieto v. County Obstetrics & Gynecology Group, P.C.,* 297 Conn. 105, 151 (2010), aff'd and rev'd on other grounds, 310 Conn. 38 (2013).

In this light, "[o]ur rules of practice ... permit the substitution of parties as the interests of justice require ... These rules are to be construed so as to alter the harsh and inefficient result that attached to the mispleading of parties at common law ... General Statutes § 52–109 and ... Practice Book § [9–20] allow a substituted plaintiff to enter a case [w]hen any action has been commenced in the name of the wrong person as plaintiff ... Both rules, of necessity, relate back to and correct, retroactively, any defect in a prior pleading concerning the identity of the real party in interest. In the context of analogous rules of federal civil procedure, it has been observed that [when] the change is made on the plaintiff's side ... to correct a mistake in ascertaining the real

party in interest, in order to pursue effectively the original claim, the defendant will rarely be unfairly prejudiced by letting the amendment relate back to the original pleading ... As long as [the] defendant is fully apprised of a claim arising from specified conduct and has prepared to defend the action, his ability to protect himself will not be prejudicially affected if a new plaintiff is added ... Thus, an amendment substituting a new plaintiff [will] relate back if the added plaintiff is the real party in interest." (Citations omitted; internal quotation marks omitted.) *DiLieto v. County Obstetrics & Gynecology Group, P.C., supra,* 297 Conn. 150–51; see also *Rana v. Terdjanian,* 136 Conn.App. 99, 109–10,cert. denied, 305 Conn. 926 (2012).

"Under § 52–109, substitution is permitted only when the trial court determines that the action was commenced in the name of the wrong plaintiff 'through mistake,' which properly has been interpreted to mean 'an honest conviction, entertained in good faith and not resulting from the plaintiff's own negligence that she is the proper person to commence the [action].' [The Supreme Court] has stated that, once such a determination is made ... the substituted party is let in to carry on a pending suit, and is not regarded as commencing a new one. After he is substituted he is ... treated and regarded for most purposes just as if he had commenced the suit originally. The writ, the complaint, the service of process, attachment made, bonds given, the entry of the case in court, the pleadings if need be, in short all things done in the case by or in favor of the original plaintiff ... remain for the benefit of the plaintiff who succeeds him, as if done by and for him originally and just as if no change of parties had been made. So far as the defendant is concerned, the same suit upon the same cause of action, under the same complaint and pleadings substantially in most cases, goes forward to its final and legitimate conclusion as if no change had been made." *Id.,* 151–52.

The defendant argues that because the original plaintiff was not a correct party with any real interest in the controversy, it lacked standing to invoke the jurisdiction of this court. A cure for lack of standing, however, is precisely the remedy that § 52–109 provides for circumstances of this kind. "The *DiLieto* court ... favorably cited federal law for the proposition that the substitution of a real party in interest as the plaintiff cures the lack of standing of the original plaintiff." *Rana v. Terdjanian, supra,* 136 Conn.App. 110. "As long as the defendant is fully apprised of a claim arising from specified conduct and has prepared to defend the action," the substituted plaintiff is treated as if it had commenced the suit originally and "all

Salem Five Mortg. Co., LLC v. Afsary, Not Reported in A.3d (2014)
2014 WL 3893089, 58 Conn. L. Rptr. 484

things done in the case by or in favor of the original plaintiff ... remain for the benefit of the plaintiff who succeeds him." *Id.*, 110-11.

In the present case, all indications on the record indicate that the defendant is and has been fully aware of the foreclosure claims set forth against her. Ultimately, the substitution causes no meaningful change to the cause of action, and the party substituted, although a separate legal entity in the technical sense, bears a close relation of interest to the original plaintiff entity. See *Wilson v. Zemba, supra,* 49 Conn.Sup. 546. Moreover, the defendant was provided with ample time to prepare a defense in this case. Thus, her ability to protect herself was not prejudicially affected with the substitution of the new plaintiff. Accordingly, the substitution of the plaintiff party in the present case "relates back" and cures any defect in the plaintiff's standing.

The defendant, pointing to the specific cases relied upon by the plaintiff to oppose her motion to dismiss, suggests that substitution under § 52-109 should be limited to circumstances where "the original plaintiffs were proper parties to the action and properly had standing to invoke the jurisdiction of the courts." But Connecticut courts have also permitted substitutions of plaintiff parties under § 52-109 in situations where the original plaintiff lacked standing to file an action. See e.g. *Rana v. Terdjanian, supra,* 136 Conn.App. 99. Thus, the defendant's distinction fails under current Connecticut law.

The defendant also argues that, under this case's circumstances, no "relation back" is practically possible since the substitute plaintiff would also then be required to receive the benefit of an affidavit sworn by the original plaintiff. This too is not a compelling reason to grant the defendant's motion to dismiss. First, *DiLieto* allows *"all things* done in the case by or in favor of the original plaintiff ... [to] remain for the benefit of the plaintiff who succeeds him." (Emphasis added.) *DiLieto v. County Obstetrics & Gynecology Group, P.C., supra,* 297 Conn. 152. In this regard, *DiLieto* specifically mentions the "writ, the complaint, the service of process, attachment made, bonds given, the entry of the case in court, [and] the pleadings if need be" as matters which should be considered "as if done by and for [the substitute plaintiff] originally." *Id.* Although *DiLieto* does not mention the example of affidavit explicitly, the court's stated policy underlying the enactment of § 52-109 to avoid the defects in "over-technical formal requirements" allowing "courts to be reasonable in their search for technical perfection"—is

indicative of the flexibility courts should employ under the circumstances to permit a relation back of the substitute plaintiff in order to avoid any unnecessary dismissal of the case.[5] See *Id.*, 151. In the present case, the plaintiff's filings were defective only in the technical sense as to which legal entity was the current holder of the mortgage note. The defendant's substantive liability remains unchanged. The benefit of all filings, including the affidavit provided by the original plaintiff, must therefore stand in for the benefit of the newly named legal plaintiff.

Moreover, in the present case, the only affidavit filed by the original plaintiff was the JD-CL-114 form concerning the Federal Loss Mitigation Programs, signed by the Assistant Vice President of the Salem Five Mortgage Company, LLC. In the affidavit, the Assistant Vice President avers that the specific loan executed by the defendant is not subject to a loss mitigation program for various reasons then disclosed. A plain review of the affidavit reveals no indication that the affiant was not fully knowledgeable as to the nature and details of the relevant loan and the affidavit's contents regarding any potential involvement in loss mitigation programs. As a past holder of the mortgage note, the original plaintiff was likely familiar with the terms of the loan. There is no apparent reason why the affidavit should not be accepted by the court for the benefit of the substitute plaintiff.

Second, and more to point in the present case, this court is only required to rule on the matter currently before the court. Here the matter before the court is a reargument of a motion to dismiss on the ground of lack of subject matter jurisdiction. Accordingly, the court will only address the validity of the plaintiff's standing and its impact on the court's jurisdiction. In this light, because the motion to correct pursuant to § 52-109 has been granted, the plaintiff party has retroactive standing to bring this action, and the court maintains subject matter jurisdiction over the case. All other challenges regarding the validity of documents filed with the court must be raised on separate motions, each at their appropriate time.

Thus, as Connecticut case law concludes, "[w]hether the defendant's motion should be granted depends [solely] on the appropriate application of ...§ 52-109." *Wilson v. Zemba, supra,* 49 Conn.Sup. 547. On this matter, the defendant posits that plaintiff substitution under § 52-109 is not applicable under these circumstances because the successive plaintiffs were negligent in their commencing of the action in the name of the wrong plaintiff.

Salem Five Mortg. Co., LLC v. Afsary, Not Reported in A.3d (2014)
2014 WL 3893089, 58 Conn. L. Rptr. 484

When faced with the dilemma as to whether to deny a substitution under § 52–109 in favor of granting a defendant's motion to dismiss, Connecticut courts employ a two-part test in application of the statute's language. First, courts must determine whether the action's commencement with the wrongly named plaintiff was a "mistake"; and second, whether substitution of the proper plaintiff is "necessary for the determination of the real matter in the dispute." *Id.*, 548–49.

Regarding the first part of the test, the Supreme Court has stated: "Under § 52–109, substitution is permitted only when the trial court determines that the action was commenced in the name of the wrong plaintiff 'through mistake,' which properly has been interpreted to mean 'an honest conviction, entertained in good faith and not resulting from the plaintiff's own negligence that she is the proper person to commence the [action].' " *DiLieto v. County Obstetrics & Gynecology Group. P.C., supra,* 297 Conn. 151.

In the present case, the misidentification of the plaintiff party stems from the plaintiff's confusion as to whether or not the mortgage note in question was ever reassigned back to Salem Five Mortgage Company, LLC, the original plaintiff and past holder of the note, from Salem Five Cents Savings Bank, the substitute plaintiff and current holder of the note. The original complaint filed in this case alleged that after the mortgage and note were assigned to the substitute plaintiff, "[s]aid mortgage was assigned to [the original plaintiff] by virtue of an assignment of mortgage to be recorded on the Stamford Land Records." Thus, "[t]he plaintiff, Salem Five Mortgage Company, LLC, is the holder of said note and mortgage." In contrast, the amended complaint omits any allegation as to any reassignment of the mortgage back to the original plaintiff and simply states that "Salem Five Cents Savings Bank [remains] the holder of said note and mortgage."

The defendant claims that the plaintiffs' mistake as to the true holder of the mortgage and note, and thus the identity of the party with a real interest in this case's controversy, necessarily sounds in negligence. She argues that only negligence or a lack of honest conviction on the part of the plaintiff could account for such a misunderstanding as to the company's legal identity and alleged assignment of interests. This court, however, finds that the plaintiff's mistake as to the facts regarding the note's alleged assignments between the two related corporate entities does not necessarily qualify as "negligence" or a lack of "honest conviction" under the law.

As noted in the *Wilson* decision, a strict application of *DiLieto* 's definition of "mistake" may often be practically difficult and overly limiting. See *Wilson v. Zemba, supra,* 49 Conn.Supp. 549. Put differently, at times it is rather difficult for a court to distinguish between conduct which constitutes legitimate error as opposed to negligent behavior, or even to imagine a situation where negligence was not in any way a factor in the naming of the wrong party as the original plaintiff. *Id.* Even so, here is a case where, even if not conclusive, it could be said that the original plaintiff honestly believed that they were the real party in interest and later moved for a correction when it realized that reassignment of the note to a sister entity had, in fact, never occurred. See *id.,* 550. In these situations of doubt, "every presumption favoring [subject matter] jurisdiction should be indulged." (Internal quotation marks omitted.) *Keller v. Beckenstein,* 305 Conn. 523, 531 (2012). Accordingly, the plaintiff has successfully met the first prong of *DiLieto* 's test to substitute a plaintiff party under § 52–109.

The second prong of the *DiLieto* test, whether substitution of the proper plaintiff is "necessary for the determination of the real matter in the dispute," is more straight forward. As the substituted plaintiff in this case is the holder of the note and party of real interest, its substitution was required for the court to issue a judgment of foreclosure on behalf of the legal entity currently holding the mortgage and note. Moreover, as noted in *Wilson,* "[i]mplicit in [§ 52–109's] words is the notion that the substitution should not result in a change of the cause of action." *Wilson v. Zemba, supra,* 49 Conn.Supp. 551. In this regard, the plaintiff's substitution passes muster as well. Here, the cause of action for a foreclosure on the mortgage has not been altered between the plaintiff parties. The only difference between the original plaintiff and its replacement is the party with whom the note is held. Accordingly, this case passes the two-part test employed by Connecticut courts before permitting a substitution of the plaintiff party under § 52–109. Substitution under § 52–109 was therefore properly granted.

Even if we were to assume arguendo that a substitution under § 52–109 was improperly granted by this court, subject matter jurisdiction in this matter of foreclosure was nonetheless maintained from the commencement and onward. The defendant argues that, pursuant to General Statutes § 49–17,[6] only a rightful holder of a note or its assignee may bring a cause of action to enforce an instrument in a mortgage foreclosure action. As noted, in this case, a

Salem Five Mortg. Co., LLC v. Afsary, Not Reported in A.3d (2014)

2014 WL 3893089, 58 Conn. L. Rptr. 484

mortgage to secure a note was executed by the defendant and delivered to the original plaintiff. Thereupon, the mortgage and the note were immediately assigned to the substitute plaintiff who remained as its subsequent holder at the time the action was commenced and forward. Relying on *RMS Residential Properties, LLC v. Miller*, 303 Conn. 224, 230 (2011), the defendant maintains that only the substitute plaintiff, the rightful owner of the mortgage, and not the original plaintiff, had proper standing to bring this foreclosure action. See § 49 17.

The defendant's contention is only partially correct. "[A] holder of a note is presumed to be the owner of the debt, and ... may foreclose the mortgage under § 49 17." *RMS Residential Properties, LLC v. Miller, supra*, 303 Conn. 231–32. Thus, the substitute plaintiff, as the holder of the note, indeed maintained standing to bring the foreclosure cause of action. Nonetheless, Connecticut case law makes clear that an assignee's standing to sue does not preclude its bringing of a suit in name of the assignor. "The legislature's use of the word 'may' in [General Statutes § 52 118 [7]] indicates that an assignee merely has the option to sue in his name. Conversely, as the Supreme Court has stated, an assignee also has the option 'to maintain [an] action in the name of his assignor.' *Jacobson v. Robinton*, 139 Conn. 532, 539 (1953)." *Dime Savings Bank of Wallingford v. Arpaia*, 55

Conn.App. 180, 184 (1999). In this sense, the defendant's reliance on *RMS Residential Properties, LLC* is misplaced. The Supreme Court has since clarified in *J.E. Robert Co. v. Signature Props., LLC*, 309 Conn. 307, 324 25 (2013) that its "intention in *RMS Residential Properties, LLC*, was neither to unduly restrict the plain language of § 49 17 nor to expand the statute's application to circumstances in which ownership of the mortgage and note rest in the same hands." In this case too, ownership of the mortgage and note rested solely in the hands of the substitute plaintiff. As the entity which took the note and mortgage by assignment, it was permitted to commence the action in the name of its assignor, the original plaintiff. The substitute plaintiff then sought and received permission from this court to substitute itself in place of the original plaintiff. Standing was therefore maintained throughout the case, from commencement until judgment.

For the foregoing reasons, the motion to dismiss is denied.

BY THE COURT

MINTZ, J.

**Parallel Citations**

58 Conn. L. Rptr. 484

**Footnotes**

1    General Statutes § 52 109 provides: "When any action has been commenced in the name of the wrong person as plaintiff, the court may, if satisfied that it was so commenced through mistake, and that it is necessary for the determination of the real matter in dispute so to do, allow any other person to be substituted or added as plaintiff."

2    Practice Book § 9 20 provides: "When any action has been commenced in the name of the wrong person as plaintiff, the judicial authority may, if satisfied that it was so commenced through mistake and that it is necessary for the determination of the real matter in dispute so to do, allow any other person to be substituted or added as plaintiff."

3    The ground for the court's order to deny the defendant's motion to dismiss was stated orally from the bench at the conclusion of oral argument on March 10, 2014. The court also noted that the defendant failed to object to the motion to correct or later appeal its ruling. Because that motion had already been granted, substituting Salem Five Cents Savings Bank in place of Salem Five Mortgage Company, LLC, the court reasoned that any defects of lack of subject matter jurisdiction were no longer present at this stage in the case. In support, the court cited *FDIC v. Retirement Management Group, Inc.*, 31 Conn.App. 80 (1993). There the Appellate Court stated: "General Statutes § 52 109 and Practice Book [§ 9 20] allow a substituted plaintiff to enter a case [w]hen any action has been commenced in the name of the wrong person as plaintiff ... Both rules, of necessity, relate back to and correct, retroactively, any defect in a prior pleading concerning the identity of the real party in interest." (Internal quotation marks omitted.) *Id.*, 84 85.

4    General Statutes § 49 15(a)(1) provides in relevant part: "Any judgment foreclosing the title to real estate by strict foreclosure may ... be opened and modified ...*provided no such judgment shall be opened after the title has become absolute in any encumbrancer* ... "(Emphasis added.)

5    In light of the fact that a dismissal under these circumstances will likely also be followed by a refiling of the identical cause of action in the name of the substitute plaintiff, reasonable flexibility in regards to formal standing requirements will also further the cause of judicial efficiency.

6    General Statutes § 49 17 provides: "When any mortgage is foreclosed by the person entitled to receive the money secured thereby but to whom the legal title to the mortgaged premises has never been conveyed, the title to such premises shall, upon the expiration

**Salem Five Mortg. Co., LLC v. Afsary, Not Reported in A.3d (2014)**
2014 WL 3893089, 58 Conn. L. Rptr. 484

of the time limited for redemption and on failure of redemption, vest in him in the same manner and to the same extent as such title would have vested in the mortgagee if he had foreclosed, provided the person so foreclosing shall forthwith cause the decree of foreclosure to be recorded in the land records in the town in which the land lies."

7    General Statutes § 52 118 provides: "The assignee and equitable and bona fide owner of any chose in action, not negotiable, may sue thereon in his own name. Such a plaintiff shall allege in his complaint that he is the actual bona fide owner of the chose in action, and set forth when and how he acquired title."

---

**End of Document**
© 2014 Thomson Reuters. No claim to original U.S. Government Works.