1   Karen M. Rozier
    7957 Dahlia Circle
2   Buena Park, CA 90620
    (714) 512-5740
3   Claimant Unrepresented

4                   UNITED STATES BANKRUPTCY COURT
                    SOUTHERN DISTRICT OF NEW YORK
5

6   In re:                              )    Case No. 12-12020 (MG)
                                        )    Chapter 11
7   Residential Capital, LLC, et. al.   )    Jointly Administrated
                                        )
8                                       )
                        Debtors         )
9                                       )    [Related to 7474-4, 7457, 7670]
                                        )
10  _____

11  CLAIMANT'S SUPPLEMENTAL OPPOSITION TO THE OBJECTION OF THE RESCAP

12  BORROWER CLAIMS TRUST TO PROOFS OF CLAIM FILED BY KAREN MICHELE ROZIER

13  (CLAIMS NOS. 4738 AND 5632);  DECLARATION IN SUPPORT THEREOF.

14

15  At the October 22, 2014 hearing on the matter, Claimant was given until October 31, 2014 to file a response to

16  Debtor's late Reply and supplemental filings. Claimant was limited to 10-pages in her response. Therefore, she

17  will not respond to each paragraph individually. Her Response to Debtor's six-part reply is as follows:

18

19  Part 1. The Rescap Borrower Claims Trust's Reply in Support of its Objection to Proofs of Claim Filed

20  by Karen Michele Rozier (Claim Nos. 4738 and 5632)

21

22  Introduction (Relates to Debtors Supplemental Objections paragraphs 1, 5-6, 23)

23

24      1.  Debtors allege that Claimant had not proven her point with a preponderance of evidence. According to

25          the Abridged Seventh Edition of Black's Law Dictionary:

26          Preponderance of evidence: "The greater weight of the evidence; superior evidentiary weight that,
            though not sufficient to free the mind wholly from all reasonable doubt, is still sufficient to incline a
27          fair and impartial mind to one side of the issue rather than the other. This is the burden of proof in a
            civil trial, in which the jury is instructed to find for the party that, on the whole, has the stronger
28          evidence, **however slight the edge might be**. [emphasis added]

Claimant maintains that she has provided superior evidence to Debtors with respect to the notes; the rescinded default; the alleged forbearance agreement; the California courts decision regarding tender; her standing to pursue her claims; Debtors' wrongful acts post-petition; and all other assertions made in these proceedings. Claimant is seeking damages for Debtors bad acts since September 2007. Claimant also alleges that Debtors attempted to coerce her into defaulting as they did others. Claimant has provided a preponderance of evidence that Defendants behavior was unlawful and reckless in that they were using the rescinded note, declared default prematurely, negotiated in bad faith, harassed and bullied her, abused the litigation process and committed fraud.

2. Claimant's responses were directly related to statements or exhibits from Debtor's massive objection. Also, as Debtors merely sought to dismiss 100% of Claimant's claim and did not seek to reduce them, Debtor's did not ask her to substantiate the amount of her claims.

3. Claimant objects to Debtor's statement "This, too supports the Court's finding that the Objection should be sustained on all counts." (page 4, item 5, last sentence) The Court made no such finding.

4. Debtors' case relied solely on the declarations of Yaron Shaham and Deanna Horst. Claimant provided the court with preponderance of enough evidence that these declarations should be rejected; that the California Court denied Debtor's request for tender; that she was led to believe she signed a new note on June 1, 2006 and that Debtors rejected her signed Foreclose Repayment Agreement. She supplements that proof with this filing.

5. Therefore, for the reasons set forth in Claimant's Opposition and in this Response, Debtors did not provide a preponderance of evidence to shift the burden to Claimant and, in the event that they gave the appearance that they did, Claimant's objection, the hearing, and this Response overcame it.

**Tender** (relates to Debtors' Supplemental Opposition paragraphs 3, 7-9)

6. In the California litigation, Debtors requested tender. [EXHIBIT 1] (pages 5-6, Section A). With their request, they begin with *"Plaintiff Lacks Standing Without Offering to Repay What Was Borrowed."* Debtors and U.S. Bank then asked the Court to require Claimant to post a bond of *"no less than $835,985.70"* (page 13, line 16). The Court ordered a trial bond of $5,000.

7.  California Rules of Court Rule 3.1150 is provided by EXHIBIT 2. The rules do not state that plaintiff is required to post a bond. Debtors want the Court to believe that the California Court lowered the amount from the $835,985.70 amount they requested to the $5,000 out of deference to "the pending Claimant Bankruptcy Case and potential lack of funds at Claimant's disposal." [See footnote 4 on page 5} The California Rule exists so that insolvent homeowners with no ability to repay a valid secured note on a property cannot abuse the court system to prevent foreclosure and eviction. Also, the California Court issued the preliminary injunction one day and the temporary restraining order the following day because Debtors attempted to violate the California preliminary injunction.

**Damages** (Relates to Debtors Supplemental Objections paragraphs 4, 14, 24)

8.  Claimant absolutely did provide evidence of financial harm. That proof was provided in her filings and motion for payment and augmented by her opposition to Debtors' objection.

9.  Debtors did not provide sufficient evidence to shift the burden from Claimant with its Objection. Claimant maintains that she has provided this court with sufficient facts to state a claim for relief that is plausible on its face and is not required to substantiate the damages she seeks. [See Para 3]

10.  Claimant supplements her earlier submittal of evidence of the June 2006 note. Litton Loan Servicing sent Claimant a letter dated 6/15/2006 and provided a new loan number, #20749024. [EXHIBIT 3] When Debtor GMAC Mortgage contacted Claimant and informed her that they were servicing "her loan", Claimant assumed that they were serving the June 2006 note. In 2006, Claimant had no reason to suspect otherwise. In 2006, Claimant had no reason to verify that the lender the GE Money Company WMC had rescinded the old DOT and replaced it with a new DOT.

11.  If Claimant's claims are "outrageous" as Debtors want this court to believe it is only because (1) Debtors conduct was outrageous; and (2) Claimant is an outstanding person with outstanding credentials so the value of damages for any harm done to her should be magnified accordingly.

12.  Claimant has shown that her initial and subsequent bankruptcies were caused by Debtors premature default. Claimant is not unsophisticated about how markets are supposed to behave. It was not Claimant's ignorance but Debtors' arrogance that caused Claimant's financial harm and for that

Debtor should pay. Claimant has shown that she attempted to solve her financial problems by accepting a job with the Department of Defense and that offer was withdrawn due to her financial problems caused by Debtors. The emotional wherewithal to fight this epic battle against Debtors, MERS, BANA RAMP2007RP1 and US Bank RAAC 2007RP1 made it difficult if not impossible for Claimant to actively market her talents.

**Standing** (Relates to Debtors Supplemental Objections paragraphs 10-12, 19, 21, 22, 27)

13. In her Appeals Brief, Claimant argued that she had standing. [EXHIBIT 4, pages 7-11] The Trustee has joins Claimant in her motion. [Exhibit 7]

14. Claimant has provided a preponderance of evidence that her claims are valid. The lion's share of Claimant's demand is punitive damages. Debtors conceded that Claimant had standing to prosecute intentional infliction of emotional distress. Claimant sued Debtors in California where punitive damages are capped at 3-times. Debtors chose federal court which allows for higher damages.

15. Debtors cite In re Allegheny Int'l, Inc., 954 F.2d at (173-174 ("in practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.") Debtors did not refute any of Claimant's allegations sufficiently.

16. While foreclosures in California are non-judicial in nature, they become judicial when challenged in court. Claimant challenged the 2008 Notice of Default and Debtors rescinded, Claimant challenged the 2012 foreclosure and Debtors rescinded. Claimant's 2008 case remains open in California.

17. California requires strict compliance to its statutory requirements, failure of which can render the sale void or voidable. Clearly the September 24, 2012 foreclosure was wrong. Bank of America, as successor by merger to LaSalle Bank National Association as Trustee, RAMP 2007RP1 ["BANA RAMP 2007 RP1"] transferred its interest to U.S. Bank, as Trustee as successor in interest to Bank of America, as successor by merger to LaSalle Bank National Association as Trustee, RAAC 2007RP1 ["U.S. Bank RAAC 2007RP1"] nine-months prior to the sale, yet the Debtors in both the Trustee's Deed Upon Sale [EXHIBIT 5] and Rescission of Trustee's Deed Upon Sale [EXHIBIT 6] claim that Bank of America RAMP 2007RP1 was the beneficiary. The California court has allowed Claimant to

proceed in litigation against BANA RAMP 2007 RP1. The California Court also did not dismiss the
action against Debtors. Debtors claimed bankruptcy stay protection and Claimant dismissed the
California action with the understanding she would be allowed to proceed against Debtors in the
bankruptcy. That is sufficient for the Bankruptcy Court to conclude that Debtors' objections should be
overruled.

**Claims Dispute Process** (Relates to Debtors Supplemental Objections paragraphs 13, 25-26, 28)

18. Claimant timely filed her demands in response to Debtors' request, Debtors' post-petition wrongdoing
    including invoking bankruptcy protection, and her conversations with Debtor's counsel. Debtors have
    failed to explain how it would now be unfair to "Borrowers as a whole" or how this "would
    completely derail the claims reconciliation process." The Borrower's Trust is not prejudiced.

19. Claimant asserts that Debtors bad acts began no later than December 2007 and have been on-going.
    Debtors' wrongful acts in September 2012 occurred out of the same conduct, transaction or
    occurrence that formed the basis of the original claim. As Claimant timely filed her proof of claim
    prior to the wrongful foreclosure and as Debtors engaged in wrongful behavior almost a year later,
    Debtors argument that "Claimant has not presented any reasonable justification for her inability to file
    the contents of the amended claims at the time the original claims were filed," also fails.

**Foreclosure Repayment Agreement** (Relates to Debtors Supplemental Objections paragraphs 15)

20. Debtors never attempted to negotiate in good faith. Claimant had the funds available to meet Debtors'
    financial demands in 2008. It is plausible that on 4/23/2008, GMAC made that immediate follow-up
    phone call on 4/30/2008 to Claimant because Debtor realized that it had admitted default in the
    agreement and absolved Claimant. [See Para 36]

**Transaction Dispute** (Relates to Debtors Supplemental Objections paragraphs 16-18)

21. Debtors claim that the December 2005 note was placed in a Trust RAAC Series 2007-RP1 Trust sometime in 2011. Claimant refutes that assertion. [See Para 37]

22. Claimant has supplied a copy of Debtors' records on this account showing that she made a payment in February 2008 and that Debtor returned that payment after declaring default. Claimant has not admitted anything to the contrary in the California litigation[1].

23. Debtors have failed to provide a credible explanation why Claimant signed a modification on May 22, 2006 with no prepayment penalty or right to rescind and then signed new loan documents with a prepayment penalty and a 3-day right to rescind. Debtors are clinging to the rescinded December note despite the evidence of the June note. Claimant offered the two endorsements of Judy Faber and the affidavit of Judy Faber as part of her evidence of fraud in the transaction.

**IFR** (Relates to Debtors Supplemental Objections paragraphs 20)

24. Claimant agrees with Debtors' explanation of the FRB process but disagrees with Debtors' conclusion. Debtors are confused about Claimant's intent, which is to hold the Debtors completely responsible for all the emotional and financial harm it caused her and her family.

**Part 2. The ResCap Borrower Claims Trust's Omnibus Objection**

25. Claimant substantiated her accusations with evidence. She exceeded the standard of evidence required for this court to conclude that the declarations of Mr. Shaham and Ms. Horst are contradicted by the evidence. As such, the court should give those declarations no weight.

26. Debtors' claim that Ms. Horst is qualified because "there is no evidence that the quality of Horst's job performance was ever questioned during that time". Ms. Horst claimed she was in charge of Debtors' quality programs and Claimant provided evidence that Debtors' quality control was lax under her leadership. Additionally, Horst admits her first declaration incorrectly (1) identified the alleged trust where the rescinded note was placed; (2) provided the wrong Assignment of DOT. Earlier she argued

---

[1]Debtor is incorrect in its footnote 5 when it claims the matter is decided in California and that Rozier's appeals are no longer active. {See Docket item 7670}.

that the March 2013 assignment provided was evidence the 2012 foreclosure paperwork was proper. Now that she has admitted that the assignment was done much earlier than the foreclosure, she did not amend her argument. She also makes at least one materially false statement in her supplemental declaration, as described below. Given the size of Claimant's demands, Debtor can not claim that Ms. Horst is highly competent while waiving away her materially defective declarations is support of their objections. If they had a valid defense, they should have crystallized it by now. Claimant has not introduced any new evidence nor changed her story.

27. Claimant did absolutely attack whether Mr. Shaham's knowledge came from hearsay or personal knowledge. She also attacked whether he was always in the case as he claims.

28. Debtors provide the inflammatory pictures and statement of Delgado's Certificate of Posting. Simply because Delgado asked the Buena Park Police to accompany her and because they accompanied her does not make Claimant a threat. Debtors Special Counsel Mr. Shaham used Claimant's race, the tensions behind Christopher Dorner[2], and Orange County racism to portray Claimant as a threat.

**Part 3. Claimant's Response to Notice of Supplemental Declaration of Deanna Horst**

29. Ms. Horst admits that she provided the wrong Assignment of DOT. Ms. Horst includes the correct document showing that BANA RAMP2007RP1 transferred the interests they thought they owned to US Bank RAAC2007 in January 2012. As BANA has identified themselves as the Lender, the Trustee and the Beneficiary in 2011, it is unclear exactly what they transferred. [See below.] When Debtors foreclosed on Claimant's home and terrorized her and her family in 2012, it was behalf of BANA RAMP2007. [EXHIBIT 5] Debtors refused to correct the mistake, attempted to intimidate and bully Claimant into leaving her home, and then harassed her in the California litigation despite their clear error. When Debtors rescinded the foreclosure, rather than admit that they made a mistake, they

---

[2] Christopher Dorner was the black Los Angeles police officer accused of murder and targeting former co-workers claiming they were racist. Mr. Dorner lived a few miles from Rozier. The Orange County court decided that she was also a threat for agreeing with Mr. Dorner's views on racism in Orange County. According to the latest F.B.I. statistics, despite being 2% of the population, blacks are still most likely to be targeted for hate crime. With that backdrop and considering Debtors prior bad acts, the court should infer nothing by the police's presence.

claimed BANA RAMP2007RP1 was the beneficiary of record. [EXHIBIT 6] Debtors harassment continued even after all parties and the California courts agreed that Debtors were entitled to bankruptcy stay protection. When Claimant attempted to sue the individuals involved, Locke Lord, LLP, Special Counsel to Debtors, appeared to bully Claimant into dropping the Defendants.

30. Ms. Horst also now claims that on March 3, 2011, "an Assignment of DOT transferred Westwood's Associate's interest as trustee in the DOT to Bank of America, National Association, successor by merger to LaSalle Bank National Association, as Trustee for RAMP 2007RP1". However, the Assignment of DOT she attached as Exhibit 3-A.14 calls out Mortgage Electronic Registration Systems, Inc., ["MERS"]. In the disputed DOT, MERS was named as the Beneficiary, not the Trustee. Westwood Associates was originally named as the Trustee in the DOT under dispute. As such, the only interests that could have been transferred would have been that as Beneficiary and not Trustee. On February 17, 2011 Debtor GMAC Mortgage claimed that the disputed note was owned by LaSalle Bank. [EXHIBIT 8] LaSalle Bank did not exist in February 2011. Also in this letter Debtor GMAC Mortgage claims that the 2005 note was transferred directly to them by the lender WMC. The Litton Loan letter indicates that it was first transferred to Litton Loans. Additionally, in April 2011 Debtor ETS identified BANA RAMP 2007RP1 as the "creditor", not the Trustee or Beneficiary. [EXHIBIT 9] Clearly in 2011 the Debtors and BANA RAMP2007RP1 were unclear as to its own status.

31. Debtors also provided the court with a Substitution of Trustee recorded on 04/11/11. Here, BANA RAMP2007RP1 claims they are the beneficiary. Debtors never alleged that the Lender WMC or the original beneficiary MERS transferred the beneficial interests to BANA RAMP2007. The only evidence is that someone recorded an earlier document making them Trustee, which is not the same as the Beneficiary. This recorded document was notarized by Nikole Shelton. While the presence of a robo-signer is not sufficient to invalidate the document, if the court considers the entirety of the irregularities, the court should reasonably conclude that this is a fraudulent assignment.

**Part 4  Claimant's Response to Supplemental Declaration of Deanna Horst**

32. Ms. Horst provides the January 4, 2012 Assignment of DOT, which purports to transfer BANA RAMP 2007RP1 beneficial interests to U.S. Bank RAAC 2007RP1. However, for the reasons discussed herein, BANA RAMP2007 has provided no evidence that the original Lender assigned any rights to anyone, that the original Trustee or Lender assigned the Trustee rights to anyone, or that the lender or original beneficiary transferred the beneficial rights to BANA RAMP 2007RP1. Instead, Debtors alleged that MERS transferred Trustee duties to BANA, and then BANA substituted ETS as the Trustee. That would be in violation of the DOT they seek to enforce, paragraph 24.

33. Ms. Horst also includes the March 2, 2011 Assignment of DOT. See Para 32 above.

**Part 5. Claimant's Response to Reply Declaration of Deanna Horst in Support of the Objection of the ResCap Borrower Claims Trust to Proofs of Claim Filed by Karen Michele Rozier (Claim Nos. 4738 and 5632)**

34. Ms. Horst claims that Claimant defaulted on loan payments. {Para 4}. The record shows that Debtors declared default while Claimant was paying, and then returned Claimant's payments after the March 2008 Notice of Default was recorded. Ms. Horst also claims that Debtors did not demand that Claimant execute a blank forbearance agreement and that they were willing to accept the agreement Claimant presented [Para 4], but Ms. Horst is arguing that there was a default; the signed agreement said Debtor was at fault. Debtors attempted to bully Claimant into executing a blank agreement.

35. Ms. Horst also claims that the 2005 note was securitized into a 2007 trust in 2011. [Para 5] Claimant argues that is irrelevant since she signed her note in June 2006.If the 2005 note was relevant *in arguendo*, Debtors did not provide information regarding the cutoff dates of the trust or how a 2005/6 loan could be legally placed in a 2007 trust in the year 2011with LaSalle Bank, which ceased to legally exist in October 2008 when Bank of America acquired them. Under the CA UCC, the trust is a holder of the loan according to the PSA and if it did not acquire the loan properly, it has no standing.

**Part 6. Claimant's Response to Declaration of Yaron Shaham dated Oct 3, 2014**

36. As stated in her opposition (Docket item# 7670) Claimant objects to this declaration in its entirety.

## CONCLUSION

Claimant has properly stated her claim, substantiated her allegations and refuted the Trust's arguments with evidence and in her pleadings. She has shown that Debtors and its Declarants have been less than candid with this Court.

WHEREFORE, Claimant Rozier respectfully requests the Court overrule Debtors Objection and Response and allow her claims in their entirety or if not in their entirety, in part.

October 30, 2014

KAREN MICHELE ROZIER, MPA/MSIA/MBA/BSEE
Unrepresented Claimant

1. I am Karen Michele Rozier, the Claimant in the subject case for Proofs of Claim 4738 and 5632, over the age of 18 and without benefit of counsel in this litigation. I have personal knowledge of the facts herein, and, if called as a witness, could testify competently thereto. I am competent to submit this declaration in support of my Supplemental Opposition.

2. I have done by best to be truthful and accurate with my pleadings, including this one.

3. I apologize for hurting the feelings of the people who are claiming I am a deadbeat, a liar and that my family should be stripped of its wealth to cover their inefficiencies, illegalities and greed. That was not my intent. I merely wished to protect what is mine from vultures, sharks and thieves.

4. I caused all parties to be served in accordance with the Exhibit A Proof of Service.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true to the best of my knowledge.

Executed in Buena Park, California on October 30, 2014  By

KAREN MICHELE ROZIER, MPA/MSIA/MBA/BSEE
Unrepresented Claimant

# EXHIBIT 1

# EXHIBIT 1

1   ROBERT J. GANDY (State Bar No. 225405)
    rjg@severson.com
2   YARON SHAHAM (State Bar No. 217192)
    ys@severson.com
3   SEVERSON & WERSON
    A Professional Corporation
4   The Atrium
    19100 Von Karman Avenue, Suite 700
5   Irvine, California 92612
    Telephone: (949) 442-7110
6   Facsimile: (949) 442-7118

7   JOHN B. SULLIVAN (State Bar No. 96742)
    SEVERSON & WERSON
8   A Professional Corporation
    One Embarcadero Center, Suite 2600
9   San Francisco, California 94111
    Telephone: (415) 398-3344
10  Facsimile: (415) 956-0439

11  Attorneys for Defendants
    U.S. BANK NATIONAL ASSOCIATION, as Trustee, as successor in
12  interest to Bank of America, National Association, as Trustee,
    successor by merger to LaSalle Bank National Association, as Trustee
13  for RAAC 2007-RP1 (erroneously sued as Bank of America, National
    Association as successor by merger to LaSalle Bank National
14  Association as Trustee for RAAC 2007RP1); GMAC MORTGAGE,
    LLC; and EXECUTIVE TRUSTEE SERVICES, LLC

15              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

16          **COUNTY OF ORANGE — CENTRAL JUSTICE CENTER**

| | |
|---|---|
| 17  Karen Michele Rozier, an Individual, | Case No. 30-2012-00601310-CU-OR-CJC |
| 18              Plaintiff, | Assigned for All Purposes to:<br>Hon. Derek W. Hunt<br>Dept. C24 |
| 19          vs. | **DEFENDANTS' OPPOSITION TO** |
| 20  Bank of America, National Association as<br>successor by merger to LaSalle Bank National | **PLAINTIFF'S *EX PARTE* APPLICATION**<br>**FOR A PRELIMINARY INJUNCTION** |
| 21  Association as Trustee for RAAC 2007RP1;<br>GMAC Mortgage, LLC; Executive Trustee | Date:    January 24, 2013 |
| 22  Services, LLC ; JOHN DOES 1-100, | Time:    8:30 a.m.<br>Dept.:    C24 |
| 23              Defendants. | |
| 24 | Action Filed:    September 27, 2012<br>FAC Filed:    October 29, 2012<br>Trial Date:    Not Set |

25

26

27

28

# TABLE OF CONTENTS

                                                                        **Page**

I.      INTRODUCTION ................................................................................. 1

II.     FACTUAL BACKGROUND ................................................................. 1

III.    BANKRUPTCY PROCEEDINGS OF PLAINTIFF ............................ 2

IV.     APPEAL OF ORDER FOR RELIEF FROM STAY ............................ 3

V.      OTHER BANKRUPTCIES AFFECTING SUBJECT PROPERTY ..... 3

VI.     PLAINTIFF MUST PROVE BY A PREPONDERANCE OF THE
        EVIDENCE A PROBABILITY OF SUCCESS ON THE MERITS TO
        OBTAIN A PRELIMINARY INJUNCTION ........................................ 4

VII.    A PRELIMINARY INJUNCTION SHOULD NOT BE ISSUED
        BECAUSE PLAINTIFF CANNOT ESTABLISH THE REQUISITE
        PROBABILITY OF SUCCESS ............................................................ 5

        A.    Plaintiff Lacks Standing Without Offering To Repay What Was
              Borrowed ................................................................................... 5

        B.    Plaintiff's Causes Of Action Contained Within The Complaint
              Lack Merit ................................................................................. 6

              1.    Plaintiff's Wrongful Foreclosure Claim Is Without Merit ........................... 6

              2.    Plaintiff's Violation of California Civil Code §§ 2923.5 and
                    2923.6 Claims are Without Merit ......................................... 7

                    (a)    Violation Of California Civil Code § 2923.5 ..................................... 7

                    (b)    Violation Of California Civil Code § 2923.6 ..................................... 8

              3.    Plaintiff's Violation Of California Civil Code § 2924 Claim
                    Lacks Merit ........................................................ 9

              4.    Plaintiff's Slander Of Title Claim Is Without Merit ................................... 10

              5.    Plaintiff's Quiet Title Claim Lacks Merit ...................................... 10

              6.    Plaintiff's Violation Of California Business And
                    Professions Code § 17200 Is Without Merit ............................ 11

                    (a)    Plaintiff Has Not Identified Unlawful Activity .............................. 11

                    (b)    Plaintiff Has Not Alleged Unfair Activity ....................................... 12

                    (c)    Plaintiff Fails To Allege Fraudulent Conduct Under
                           The UCL .............................................................. 12

              7.    Plaintiff's Injunctive Relief Claim Is Without Merit .............................. 12

1

VIII.    IN THE ALTERNATIVE PLAINTIFF MUST POST A BOND ....................................... 13

2

IX.    CONCLUSION ................................................................................................................ 14

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION FOR A PRELIMINARY INJUNCTION

1

## TABLE OF AUTHORITIES

2

Page(s)

3

**FEDERAL CASES**

4

*Chabner v. United of Omaha Life Ins. Co.*
(2000) 225 F.3d 1042 ................................................................................. 11

5

*Cox Commc'ns PCS, L.P. v. City of San Marcos*
(S.D. Cal. 2002) 204 F. Supp. 2d 1272 ...................................................... 12

6

7

*Farner v. Countrywide Home Loans*
(S.D. Cal. 2009) 2009 WL 189025 ............................................................... 8

8

9

*Gaitan v. Mortg. Elec. Registration Sys.*
(C.D. Cal. 2009) 2009 WL 3244729 ............................................................. 8

10

*Glenn K. Jackson Inc. v. Roe*
(2001) 273 F.3d 1192 ................................................................................. 11

11

12

*Lane v. Vitek Real Estate Industries Group*
(E.D. Cal. 2010) 713 F. Supp. 2d 1092 ........................................................ 9

13

14

*Padayachi v. Indymac Bank*
(N.D. Cal. 2010) 2010 WL 1460309 ............................................................. 9

15

16

*Pham v. Bank of America, N.A.*
(N.D. Cal. 2010) 2010 WL 3184263 ............................................................. 7

17

*Pittman v. Barclays Cap. Real Estate, Inc.*
(S.D. Cal. 2009) 2009 WL 11008889 ......................................................... 8, 9

18

19

*Quintero Family Trust v. OneWest Bank, F.S.B.*
(S.D. Cal. 2010) 2010 WL 392312 ............................................................... 7

20

21

*Rubio v. Capital One Bank (USA)*
(2008) 572 F. Supp. 2d 1157 ..................................................................... 11

22

**STATE CASES**

23

*ABBA Rubber Co. v. Seaquist*
(1991) 235 Cal.App.3d 1 ............................................................................ 13

24

25

*Abdallah v. United Sav. Bank*
(1996) 43 Cal.App.4th 1101 ......................................................................... 6

26

27

*Aguilar v. Bocci*
(1974) 39 Cal.App.3d 475 .......................................................................... 10

28

*Ancora-Citronelle Corp. v. Green*
   (1974) 41 Cal.App.3d 146 ................................................................................................ 5

*Arnolds Management Corp. v. Eischen*
   (1984) 158 Cal.App.3d 575 ......................................................................................... 5, 6

*Cal-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*
   (1999) 20 Cal.4th 163 .................................................................................................. 12

*Dean Witter Reynolds, Inc. v. Sup. Ct.*
   (1989) 211 Cal.App.3d 758 ......................................................................................... 12

*Glass v. Gulf Oil Corp.*
   (1970) 12 Cal.App.3d 412 ........................................................................................... 10

*Gomes v. Countrywide*
   (2011) 192 Cal.App.4th 1149 .................................................................................... 9, 10

*Grey v. Webb*
   (1979) 97 Cal.App.3d 232 ............................................................................................. 5

*Hunt v. Superior Court*
   (1999) 21 Cal.4th 984 ................................................................................................... 5

*I.E. Associates v. Safeco Title Ins. Co.*
   (1985) 39 Cal.3d 281 .................................................................................................... 9

*Karlsen v. American Savings & Loan Association*
   (1971) 15 Cal.App.3d 112 ............................................................................................. 6

*Krantz v. BT Visual Images, L.L.C.*
   (2001) 89 Cal.App.4th 164 ...................................................................................... 5, 11

*Lavie v. Procter & Gamble Co.*
   (2003) 105 Cal.App.4th 496 ....................................................................................... 12

*Lu v. Hawaiian Gardens Casino, Inc.*
   (2010) 50 Cal.4th 592 .................................................................................................. 10

*Massachusetts Mutual Life Ins. Co. v. Superior Court*
   (2002) 97 Cal.App.4th 1282 ....................................................................................... 12

*McDowell v. Watson*
   (1997) 59 Cal.App.4th 1155 ....................................................................................... 12

*McKell v. Washington Mutual, Inc. et al.*
   (2006) 142 Cal.App.4th 1457 ..................................................................................... 12

*Moeller v. Lien*
   (1994) 25 Cal.App.4th 822 ........................................................................................... 9

DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION FOR A PRELIMINARY INJUNCTION

*Nguyen v. Calhoun*
   (2003) 105 Cal.App.4th 428 .................................................................................. 6

*People v. Duz-Mor Diagnostic Lab., Inc.*
   (1998) 68 Cal.App.4th 654 .................................................................................. 11

*Right Site Coalition v. Los Angeles Unified School Dist.*
   (2008) 160 Cal.App.4th 336 ................................................................................ 4

*Schwartz v. Arata*
   (1920) 45 Cal.App. 596 ....................................................................................... 4

*United States Cold Storage v. Great Western Savings & Loan Ass'n.*
   (1985) 165 Cal.App.3d 1214 ............................................................................... 6

*White v. Davis*
   (2003) 30 Cal.4th 528 ......................................................................................... 4

**STATE STATUTES**

California Business and Professions Code
   Section 17200 ............................................................................................... 11, 12

California Civil Code
   Section 529 ........................................................................................................ 13
   Section 2923.5 ..................................................................................................... 7
   Section 2923.6 ............................................................................................. 7, 8, 9
   Section 2924 ....................................................................................................... 9

California Code of Civil Procedure
   Section 527 ...................................................................................................... 4, 5

**OTHER AUTHORITIES**

*California Practice Guide: Civil Procedure Before Trial*
   Section 9:674 .................................................................................................... 13

1  **TO THE HONORABLE COURT, PLAINTIFF, AND ALL OTHER INTERESTED**

2  **PARTIES:**

3      Defendants GMAC Mortgage, LLC ("GMACM") and U.S. Bank National Association, as

4  Trustee, as successor in interest to Bank of America, National Association, as Trustee, successor

5  by merger to LaSalle Bank National Association, as Trustee for RAAC 2007-RP1 ("U.S. Bank")

6  (collectively, "Defendants") hereby oppose Plaintiff Karen Rozier's ("Plaintiff") *Ex Parte*

7  Application for a Preliminary Injunction ("Application") as follows:

8  **I.**

9  **INTRODUCTION**

10      Plaintiff alleges she is the lawful owner of the real property located at 7957 Dahlia Circle,

11  Buena Park, California 90620 (the "Subject Property"). In light of Plaintiff's default on the

12  subject loan, a non-judicial foreclosure process was initiated. Plaintiff alleges Defendants did not

13  have the authority to initiate a foreclosure, nor could it foreclose. In light of Defendants' alleged

14  wrongdoing, Plaintiff is seeking to recover monetary damages and equitable relief by way of this

15  litigation.

16  **II.**

17  **FACTUAL BACKGROUND**

18      On or about December 23, 2005, Plaintiff obtained a loan ("Subject Loan") from WMC

19  Mortgage Corp. in the amount of $576,000.00, secured by a Deed of Trust ("Subject Deed of

20  Trust"), which was recorded on January 4, 2006. (Defendants' Request for Judicial Notice

21  ("RJN"), Ex. A.) On the same date, Plaintiff obtained a second loan from WMC Mortgage Corp.

22  in the amount of $144,000.00, secured by a Deed of Trust, which was recorded on January 4,

23  2006. (RJN, Ex. B.)

24      An assignment of Subject Deed of Trust was recorded on March 9, 2011, whereby all

25  beneficial interest under the Subject Deed of Trust was assigned to Bank of America, National

26  Association, as successor by merger to LaSalle Bank National Association, as Trustee for RAMP

27  2007RP1. (RJN, Ex. C.)

28      On April 11, 2011, a Substitution of Trustee was recorded whereby Executive Trustee

1 | Services, LLC dba ETS Services, LLC ("ETS")[1] was substituted as the trustee under the Subject

2 | Deed of Trust. (RJN, Ex. D.) Also on April 4, 2011, a Notice of Default and Election to Sell

3 | Under Deed was recorded with the Orange County Recorder's Office. (RJN, Ex. E.)

4 | A Notice of Trustee's Sale was recorded on July 12, 2011, with the Orange County

5 | Recorder's Office. (RJN, Ex. F.)

6 | On July 25, 2011, Plaintiff transferred her interest in the Subject Property to the David

7 | Bear Rozier Irrevocable Trust. (RJN, Ex. G.)

8 | Bank of America, National Association, as successor by merger to LaSalle Bank National

9 | Association, as Trustee for RAMP 2007RP1 assigned its beneficial interest in the Subject Deed of

10 | Trust to U.S. Bank on January 4, 2012. (RJN, Ex. H.)

11 | Three Notice of Trustee's Sales were recorded with the Orange County Recorder's Office

12 | on August 10, 2012, August 27, 2012, and October 16, 2012, respectively. (RJN, Exs. I, J, and

13 | K.)

14 | Plaintiff filed the instant action on September 27, 2012. She filed her First Amended

15 | Complaint ("Complaint") on October 29, 2012.

16 | As a foreclosure sale was scheduled for November 13, 2012 pursuant to the most recent

17 | Notice of Trustee Sale (*see* RJN, Ex. K.), Plaintiff sought a Temporary Restraining Order (TRO")

18 | on November 9, 2012 preventing the sale from going forward. U.S. Bank appeared and opposed

19 | Plaintiff's request. This Court denied Plaintiff's request for a TRO. (RJN, Ex. L.)

20 | Due to the denial of Plaintiff's TRO, U.S. Bank was notified by Plaintiff on the morning of

21 | November 13, 2012 that two bankruptcies had been filed by unauthorized third-parties causing the

22 | sale to be postponed as further discussed herein.

### III.

### BANKRUPTCY PROCEEDINGS OF PLAINTIFF

25 | Plaintiff filed a Chapter 13 petition on August 22, 2011. (RJN, Ex. M, Bky. Dkt. #1.)

---

[1] ETS filed a Declaration of Non-Monetary Status in response to Plaintiff's First Amended Complaint on November 16, 2012. Plaintiff has filed no opposition to ETS' Declaration of Non-Monetary Status.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION FOR A PRELIMINARY INJUNCTION

1   Plaintiff's case was converted to a Chapter 7 on February 16, 2012. (Bky. Dkt. #28.) On June 18,

2   2012, U.S. Bank filed a motion for relief from stay regarding the real property. (Bky. Dkt. #42.)

3   Plaintiff filed an opposition to U.S. Bank's motion on July 5, 2012. (Bky. Dkt. #45.) In

4   her opposition, Plaintiff disputed the value of property and asserted that the total amount of debt

5   on the property was $0.00. Debtor also argued that U.S. Bank lacked standing to move for relief

6   from stay, was not a real party in interest, had failed to make a *prima facie* case that cause existed

7   for relief from the automatic stay, and had not properly notified all parties. (*Id.*)

8   Following the July 10, 2012 hearing, the Court granted U.S. Bank's motion for relief.

9   (Bky. Dkt. #47.)

10   **IV.**

11   **APPEAL OF ORDER FOR RELIEF FROM STAY**

12   On July 10, 2012, Plaintiff filed a premature notice of appeal to the Bankruptcy Appellate

13   Panel ("BAP") on the Order Granting Relief from Stay. (Bky. Dkt. #48.) The Order granting

14   relief from stay was entered on July 30, 2012. (Bky. Dkt. #56.) An Amended Notice of Appeal

15   was filed on July 24, 2012. (Bky. Dkt. #53.)

16   On September 10, 2012, Plaintiff served on US Bank her Opening Brief ("Brief"). (RJN,

17   Ex. N, BAP Dkt. #11.)

18   On October 17, 2012, Plaintiff filed a Motion for an Emergency Stay ("EM"). (BAP Dkt.

19   #15.) On October 18, 2012, US Bank filed its Opposition to the EM. (BAP Dkt. #16.) On

20   October 19, 2012, the BAP issued it Order Denying Debtor's EM. (BAP Dkt. #18.)

21   On October 18, 2012, Plaintiff filed a Request for Judicial Review with the BAP. (BAP

22   Dkt. #17.) On October 25, 2012, U.S. Bank filed an Opposition to Plaintiff's Request for Judicial

23   Review. (BAP Dkt. #20.) On November 8, 2012, the BAP denied Plaintiff's Request for Judicial

24   Review. (BAP Dkt. #21.)

25   **V.**

26   **OTHER BANKRUPTCIES AFFECTING SUBJECT PROPERTY**

27

28

1    the same day, David Bear Irrevocable Trust filed a Chapter 7 Bankruptcy Petition in the Central

2    District of California. (RJN, Ex. O, Bk. Dkt. #1.)

3        U.S. Bank filed a Motion for Relief from Stay seeking extraordinary relief due to the bad

4    faith nature asking that the relief be effective as to the Subject Property for a period of two years

5    from date the Order is recorded. (Bk. Dkt. #7.) A hearing was held on December 18, 2012 and

6    the relief requested by U.S. Bank was granted by the bankruptcy court. (Bk. Dkt. #16.) An Order

7    Granting the Relief requested was entered by the Court on January 2, 2013. (Bky. Dkt. #19.)

8        Also on November 13, 2012, U.S. Bank was advised by Plaintiff that the Trustor of an

9    unrecorded second deed of trust on the Subject Property, Eric Hardemion, had filed bankruptcy.

10    (RJN, Ex. P, Bky. Dkt. #1.) U.S. Bank filed a Motion for Relief from Stay in that case as well

11    seeking extraordinary relief due to the bad faith nature asking that the relief be effective as to the

12    Subject Property for a period of two years from date the Order is recorded. (Bk. Dkt. #9.) A

13    hearing was also held on December 18, 2012 and the relief requested by U.S. Bank was granted by

14    the bankruptcy court, and an Order was entered on December 19, 2012. (Bk. Dkt. #17.)

15                                **VI.**

16    **PLAINTIFF MUST PROVE BY A PREPONDERANCE OF THE EVIDENCE A**
                **PROBABILITY OF SUCCESS ON THE MERITS TO OBTAIN A PRELIMINARY**

17                                    **INJUNCTION**

18        An injunction is extraordinary relief to be granted always with great caution and only

19    where it appears that the plaintiff will suffer "irreparable injury" if it is not issued. (*Schwartz v.*

20    *Arata* (1920) 45 Cal.App. 596, 601; see also Cal. Code Civ. Proc., § 527.) A party seeking a

21    TRO/preliminary injunction bears the burden of demonstrating that "the relative balance of harms

22    that is likely to result from the granting or denial of interim injunctive relief weighs in [his] favor

23    and that [he] is likely to prevail on the merits." (*White v. Davis* (2003) 30 Cal.4th 528, 554.)

24    Stated another way, "[i]n exercising its discretion whether to issue a preliminary injunction 'the

25    trial court must consider "two interrelated factors," specifically, the likelihood that plaintiffs will

26    prevail on the merits at trial, and the comparative harm to be suffered by plaintiffs if the injunction

27    does not issue against the harm to be suffered by defendants … if it does.' " (*Right Site*

28    *Coalition v. Los Angeles Unified School Dist.* (2008) 160 Cal.App.4th 336, 341-342 (quoting

1 | *King v. Meese* (1987) 43 Cal.3d 1217, 1226).)

2 |     The movant's burden is not lightly borne. Procedurally, an application for a temporary

3 | restraining order, and a preliminary injunction, must be based upon sufficient evidence. (C.C.P.

4 | § 527(a); *Bank of America, supra,* 89 Cal.App.2d at 29.) "It is the clear policy of the law that the

5 | drastic remedy of an injunction pendente lite may not be permitted except upon a sufficient factual

6 | showing, by someone having knowledge thereof, made under oath or by declaration under penalty

7 | of perjury." (*Ancora-Citronelle Corp. v. Green* (1974) 41 Cal.App.3d 146, 150 (emphasis added);

8 | Code Civ. Proc., § 527.) An injunction is a "delicate power, requiring great caution and sound

9 | discretion, and rarely, if ever, should [it] be exercised in a doubtful case...." (*Grey v. Webb* (1979)

10 | 97 Cal.App.3d 232, 236.)

11 |     The slighter the probability of the plaintiff prevailing on the merits, the more the balance-

12 | of-hardships must weigh in his favor. When the claim is without merit, no injunction may issue

13 | no matter how great the hardship. "A trial court may not grant a preliminary injunction, regardless

14 | of the balance of interim harm, unless there is some possibility that the plaintiff would ultimately

15 | prevail on the merits of the claim." (*Hunt v. Superior Court* (1999) 21 Cal.4th 984, 999, quoting

16 | *Butt v. State of California* (1992) 4 Cal.4th 668, 678.)

17 |     Plaintiff has the burden of showing a likelihood of success on the merits. By the legal

18 | standards of this Court, Plaintiff has not and cannot make the requisite showings she is likely to

19 | prevail at trial or will be irreparably injured if her Application is not granted.

20 | **VII.**

21 | **A PRELIMINARY INJUNCTION SHOULD NOT BE ISSUED BECAUSE PLAINTIFF**
**CANNOT ESTABLISH THE REQUISITE PROBABILITY OF SUCCESS**

22 |

23 |     **A.**    **Plaintiff Lacks Standing Without Offering To Repay What Was Borrowed**

24 |     Plaintiff seeks to challenge the foreclosure on the Subject Property, however, she lacks

25 | standing to do so. California law is clear that a cause of action to challenge a foreclosure sale is

26 | equitable and a plaintiff cannot seek equitable relief where the plaintiff has not done equity.

27 | (*Arnolds Management Corp. v. Eischen* (1984) 158 Cal.App.3d 575, 577.) Therefore, before a

28 | borrower can maintain a cause of action attacking a foreclosure sale, the borrower must actually

1    pay, or offer to pay, the entire loan amount prior to the sale. (*Karlsen v. American Savings &*
2    *Loan Association* (1971) 15 Cal.App.3d 112, 117; *United States Cold Storage v. Great Western*
3    *Savings & Loan Ass'n.* (1985) 165 Cal.App.3d 1214, 1225.)

4         The courts have expanded the application of the "tender rule" and a cause of action
5    "implicitly integrated with the irregular sale fails unless the trustor can allege and establish a valid
6    tender." (*Arnolds*, 158 Cal.App.3d at 579; *Karlsen*, 15 Cal.App.3d at 121; *see also Abdallah v.*
7    *United Sav. Bank* (1996) 43 Cal.App.4th 1101, 1109 (explaining that the tender rule applies to
8    "any cause of action for irregularity in the sale procedure").) Further, the court in *Nguyen v.*
9    *Calhoun* (2003) 105 Cal.App.4th 428, 439 stated that, "[I]t is a borrower's responsibility to make
10   an unambiguous tender of the amount due or else suffer the consequences that the tender is of no
11   effect." Moreover, the tender rule is strictly applied. (*Id.*)

12        Here, the Plaintiff's First Amended Complaint ("Complaint") challenges the foreclosure of
13   the Subject Property. However, Plaintiff fails to adequately allege she attempted to tender or
14   actually tendered the amounts due on the subject loan. Therefore, Plaintiff's Complaint must fail
15   for this reason alone.

16        **B.        Plaintiff's Causes Of Action Contained Within The Complaint Lack Merit**

17        Plaintiff cannot meet her burden of proving she is likely to succeed on the merits of her
18   claims contained within the Complaint.[2]

19             **1.        Plaintiff's Wrongful Foreclosure Claim Is Without Merit**

20        As an initial matter, Plaintiff's claim for Wrongful Foreclosure fails because it is well-
21   established that before a borrower can bring a cause of action to challenge a foreclosure, the
22   borrower must pay the entire loan amount prior to the sale. (*United States Cold Storage of*
23   *California v. Great Western Savings & Loan Association* (1985) 165 Cal.App.3d 1214, 1222.) As
24   discussed herein, Plaintiff has failed to allege tender, and therefore, this claim fails as a matter of
25   law.

26   _____

27   [2]  Claims against GMACM and ETS for Slander of Title, Negligence, and Defamation of
     Character are stayed in light of the Notice of Bankruptcy Stay filed with the Court on December 4,
28   2012.

2.   **Plaintiff's Violation of California Civil Code §§ 2923.5 and 2923.6 Claims are Without Merit**

(a)   **Violation Of California Civil Code § 2923.5**

Plaintiff's third cause of action is a claim for an alleged violation of California Civil Code section 2923.5. Specifically, Plaintiff complains she was not actually contacted by Defendants prior to the Notice of Default being recorded, in violation of section 2923.5 and that Defendants did not exercise due diligence in this regard. To the extent this claim is based on a purported failure to contact Plaintiff, section 2923.5 does not require actual contact be made. Further, the statements made in the Notice of Default illustrate Defendants' compliance with section 2923.5. (RJN, Ex. E.) Generally, section 2923.5 is intended to ensure foreclosing parties have tried to exhaust all other options before proceeding with foreclosure. However, it provides the party filing the Notice of Default flexibility as it only has to ensure compliance with one of the statutory provisions or "prongs." It must either: (1) contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure; (2) exercise "due diligence" (as defined by statute) in attempting to contact the borrower for the same reason; or (3) be exempt from contacting the borrower for various reasons. (Civ. Code § 2923.5, subd. (b).) If a plaintiff pleads that the foreclosing party did not comply with section 2923.5, the court may judicially notice the notice of default to show that the allegations in the complaint are false and do not state a claim. (*Pham v. Bank of America, N.A.* (N.D. Cal. 2010) 2010 WL 3184263, at 3; *Quintero Family Trust v. OneWest Bank, F.S.B.* (S.D. Cal. 2010) 2010 WL 392312, at 14.) As a result, where compliance with section 2923.5 is sufficiently stated in the Notice of Default, the Court may find the plaintiff has not stated a cause of action. (*Id.*)

Here, Defendant ETS, as Trustee, attests to the fact it did exercise such due diligence in attempting to contact Plaintiff prior to the recordation of the Notice of Default. (RJN, Ex. E.) The Court can, and should, take judicial notice of this statement and find Plaintiff has not pled a claim for relief under section 2923.5. (*Quintero Family Trust, supra*, 2010 WL 392312, at 14.) Accordingly, this claim fails as a matter of law.

1     **(b)  Violation Of California Civil Code § 2923.6**

2    Plaintiff's third cause of action for a purported Violation of California Civil Code § 2923.6

3 is without merit as Defendants were under no obligation to modify Plaintiff's loan. Plaintiff does

4 not point to any statute which would require Defendants to modify a loan. To the contrary, Civil

5 Code section 2923.6, which deals with loan modifications, does not grant a borrower a right to a

6 loan modification, nor does that section grant a borrower a defense to foreclosure or a private right

7 of action to compel a loan modification. (*Pittman v. Barclays Cap. Real Estate, Inc.* (S.D. Cal.

8 2009) 2009 WL 11008889, *3.) Rather than compel loan modifications, the statute is intended to

9 entice loan servicers to enter into loan modification voluntarily by protecting them from claims by

10 the loans' owners that loan modifications breach contractual duties owed by loan servicers to loan

11 owners. Section 2923.6(a) declares that "a servicer acts in the best interests of all parties if it

12 agrees to or implements a loan modification workout plan" if the loan is in default or default is

13 reasonably foreseeable and "[a]nticipated recovery under the loan modification or workout plan

14 exceeds the anticipated recovery through foreclosure on a net present value basis." The legislative

15 declaration that a loan servicer "acts in the best interests of all parties" by agreeing to a loan

16 modification is far from a legally enforceable command that the servicer must agree to a loan

17 modification.

18    Section 2923.6(b) underscores the section's non-compulsory nature, stating that it is only

19 the Legislature's intent, not its command, that a loan modification be offered to the borrower "if

20 such a modification or plan is consistent with its contractual or other authority."

21    In enacting section 2923.6, the Legislature wielded a carrot (protection of loan servicers

22 from owners' claims), not a stick (subjecting loan servicers to suits by borrowers), in order to

23 encourage, not enforce, loan modifications. In keeping with that intent, the section grants

24 borrowers no enforceable right and no private cause of action to compel a loan modification. (*See*

25 *Gaitan v. Mortg. Elec. Registration Sys.* (C.D. Cal. 2009) 2009 WL 3244729, *7 (declaring that

26 section 2923.6 "clearly does not create a private right of action."); *Farner v. Countrywide Home*

27 *Loans* (S.D. Cal. 2009) 2009 WL 189025, *2 ("[N]othing in Cal. Civ. Code § 2923.6 imposes a

28 duty on servicers of loans to modify the terms of loans or creates a private right of action for

1  borrowers."); *Pittman, supra*, 2009 WL 11008889 at \*3 (a loan servicer owes a borrower no

2  statutory duty under section 2923.6); *Padayachi v. Indymac Bank* (N.D. Cal. 2010) 2010 WL

3  1460309, at \*6 (section 2923.6 "in no way confers standing on a borrower to contest" a servicer's

4  breach of that section).)  For this reason, this claim fails as a matter of law.

5       **3.    Plaintiff's Violation Of California Civil Code § 2924 Claim Lacks Merit**

6       Plaintiff's Violation of California Civil Code § 2924 claim is without merit.  Lawsuits in

7  which a homeowner, without any supporting factual justification, seeks to explore whether the

8  defendants have the authority to initiate foreclosure proceedings are improper.  They disrupt the

9  very non-judicial nature of a power of sale clause in a deed of trust.  Civil Code Sections 2924

10  through 2924k "provide a comprehensive framework for the regulation of a nonjudicial

11  foreclosure sale pursuant to a power of sale contained in a deed of trust." (*Moeller v. Lien* (1994)

12  25 Cal.App.4th 822, 830.)  "These provisions cover every aspect of exercise of the power of sale

13  contained in a deed of trust." (*I.E. Associates v. Safeco Title Ins. Co.* (1985) 39 Cal.3d 281, 285.)

14  "The purposes of this comprehensive scheme are threefold:  (1) to provide the creditor/beneficiary

15  with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect

16  the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted

17  sale is final between the parties and conclusive as to a bona fide purchaser." (*Moeller v. Lien*,

18  *supra*, 25 Cal.App.4th at p. 830.)  "Because of the exhaustive nature of this scheme, California

19  appellate courts have refused to read any additional requirements into the non-judicial foreclosure

20  statute." (*Lane v. Vitek Real Estate Industries Group* (E.D. Cal. 2010) 713 F. Supp. 2d 1092,

21  1098; *see also Moeller v. Lien, supra*, 25 Cal.App.4th at p. 834 ["It would be inconsistent with the

22  comprehensive and exhaustive statutory scheme regulating non-judicial foreclosures to

23  incorporate another unrelated cure provision into statutory non-judicial foreclosure

24  proceedings."].)

25       Notwithstanding this exhaustive statutory framework, Plaintiff initiated this litigation in

26  order to challenge the foreclosure on the grounds Defendants lacked the authority required to

27  initiate foreclosure proceedings.  The court in *Gomes* was presented with a similar argument, in

28  which a plaintiff argued the defendant lacked the requisite authority to foreclose, and the court

1  | immediately rejected it:

2  |          "By asserting a right to bring a court action to determine whether the
   |          owner of the Note has authorized its nominee to initiate the
3  |          foreclosure process, Gomes is attempting to interject the courts into
   |          this comprehensive non-judicial scheme. As Defendants correctly
4  |          point out, Gomes has identified no legal authority for such a lawsuit.
   |          Nothing in the statutory provisions establishing the non-judicial
5  |          foreclosure process suggests that such a judicial proceeding is
   |          permitted or contemplated." (*Gomes v. Countrywide* (2011)
6  |          192 Cal.App.4th 1149, 1154.)

7  |          The Court later concluded, "nowhere does the statute provide for a judicial action to

8  | determine whether the person initiating the foreclosure process is indeed authorized and we see no

9  | ground for implying such an action." (*Id.* at 1155, citing *Lu v. Hawaiian Gardens Casino, Inc.*

10 | (2010) 50 Cal.4th 592, 596).) The instant case is no different than *Gomes*. Allowing it to proceed,

11 | "would fundamentally undermine the non-judicial nature of the process and introduce the

12 | possibility of lawsuits filed solely for the purpose of delaying valid foreclosures." (*Id.*)

13 |          In light of these authorities, there is no question that this claim is improper and lacks merit.

14 |          **4.    Plaintiff's Slander Of Title Claim Is Without Merit**

15 |          Plaintiff fails to state a claim for Slander of Title. The elements of a Slander of Title claim

16 | are (1) false and unprivileged disparagement, (2) of title to property and (3) resulting in actual

17 | pecuniary damage. (*Glass v. Gulf Oil Corp.* (1970) 12 Cal.App.3d 412, 419.) Here, the

18 | allegations which underpin this claim (that Defendants lack standing to foreclose upon the Subject

19 | Loan) are identical to the allegations which underpin Plaintiff's Complaint. As discussed herein,

20 | these allegations are completely unavailing. It follows that the Application should be denied as it

21 | lacks merit.

22 |          **5.    Plaintiff's Quiet Title Claim Lacks Merit**

23 |          Plaintiff's Quiet Title claim is defective. The first and most obvious defect of this Quiet

24 | Title claim is the missing averment of tender of the amounts Plaintiff borrowed. A trustor cannot

25 | "quiet title without discharging his debt. The cloud upon his title persists until the debt is paid."

26 | (*Aguilar v. Bocci* (1974) 39 Cal.App.3d 475, 477 (citation omitted).) Simply stated, Plaintiff

27 | cannot re-acquire good title to the Subject Property without paying or tendering what she

28 | borrowed against the Subject Property. As a result, this claim lacks merit.

### 6.    Plaintiff's Violation Of California Business And Professions Code § 17200 Is Without Merit

Courts have made clear that California's Business and Professions Code § 17200 ("UCL") cannot be used as an end-run around the requirements of other statutes. (*Glenn K. Jackson Inc. v. Roe* (2001) 273 F.3d 1192, 1203 [dismissing UCL claim where underlying negligence and fraud claims were insufficient as a matter of law]; *see also Krantz v. BT Visual Images, L.L.C.* (2001) 89 Cal.App.4th 164, 178 [the viability of a UCL claim stands or falls with the antecedent substantive causes of action].) "A court may not allow plaintiff to plead around an absolute bar to relief simply by recasting the cause of action as one for unfair competition." (*Chabner v. United of Omaha Life Ins. Co.* (2000) 225 F.3d 1042, 1048; *see also Rubio v. Capital One Bank (USA)* (2008) 572 F. Supp. 2d 1157, 1168 [since plaintiff's TILA claim failed, plaintiff's UCL predicated on TILA likewise failed].)

Plaintiff predicates her UCL claim on the same theories which provide the basis for each of her other causes of action.  Indeed, her UCL claim is a mere recasting of her other claims.  As all of Plaintiff's causes of actions lack merit—as do the faulty theories upon which they are predicated—so, too, does Plaintiff's UCL claim.

### (a)    Plaintiff Has Not Identified Unlawful Activity

A section 17200 requires an underlying violation of law, any defense to the predicate claim is a defense to the alleged violation of the UCL.  (See *Krantz v. BT Visual Images, L.L.C.* (2001) 89 Cal.App.4th 164, 178 [the viability of a UCL claim stands or falls with the antecedent substantive causes of action]; *People v. Duz-Mor Diagnostic Lab., Inc.* (1998) 68 Cal.App.4th 654, 673 (a defense to the underlying offense is a defense under the UCL); *see also Glenn K. Jackson Inc. v. Roe* (9th Cir. 2001) 273 F.3d 1192, 1203 [dismissing section 17200 claim where underlying negligence and fraud claims were insufficient as a matter of law].)  As discussed herein, each of Plaintiff's causes of action lack merit.  Plaintiff's UCL claim is predicated on the same conduct which accounts for Plaintiff's other claims.  Consequently, this claim, too, lacks merit.

**(b)**     **Plaintiff Has Not Alleged Unfair Activity**

A business practice is considered "unfair" if it threatens to violate or violates the policy or spirit of an anti-trust law or otherwise significantly threatens or harms competition. (*Cal-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 187.) However, if the customer has a meaningful market choice, i.e. other venders that offer reasonably available alternatives to the defendant's product, the challenged procedures cannot be considered "unfair." (*Dean Witter Reynolds, Inc. v. Sup. Ct.* (1989) 211 Cal.App.3d 758.) It can hardly be said that Plaintiff did not have alternative financial institutions that were reasonably available for her mortgage needs. As such, Plaintiff cannot allege Defendants' actions are "unfair" under Section 17200.

**(c)**     **Plaintiff Fails To Allege Fraudulent Conduct Under The UCL**

A business practice is considered "fraudulent" within the meaning of § 17200 if the "public is likely to be deceived." (*Massachusetts Mutual Life Ins. Co. v. Superior Court* (2002) 97 Cal.App.4th 1282, 1290.) "The determination as to whether a business practice is deceptive is based on the likely effect such practice would have on a reasonable consumer." (*McKell v. Washington Mutual, Inc. et al.* (2006) 142 Cal.App.4th 1457, 1472, citing *Lavie v. Procter & Gamble Co.* (2003) 105 Cal.App.4th 496, 507.)

As set forth above, Plaintiff fails to support the elements of any fraud claim against Defendants. Therefore, Plaintiff fails to allege fraudulent conduct under the UCL.

Based on the foregoing, this claim lacks merit and the Application should be denied.

**7.     Plaintiff's Injunctive Relief Claim Is Without Merit**

Injunctive relief is not a cause of action. It is a remedy that must be tethered to some independent legal duty owed by the defendant to the plaintiff. (*McDowell v. Watson* (1997) 59 Cal.App.4th 1155, 1159; *Cox Commc'ns PCS, L.P. v. City of San Marcos* (S.D. Cal. 2002) 204 F. Supp. 2d 1272, 1283.) The injunctive relief claim, therefore, cannot stand on its own. As shown herein, Plaintiff's other claims are defective. Consequently, there is nothing to support Plaintiff's request for an injunction, and the Application should be denied.

# VIII.

## IN THE ALTERNATIVE PLAINTIFF MUST POST A BOND

1

2

3      Defendants respectfully request the Court deny Plaintiff's Application.  However, if the

4   Court does choose to issue a preliminary injunction, it must require an undertaking.  (Civil Code

5   § 529.)  The purpose of this requirement is to ensure Defendants are protected from damages in

6   the event the Court ultimately determines that the Plaintiff is not entitled to an injunction.  In the

7   context of non-judicial foreclosure sales, common conditions imposed by the Courts designed to

8   prevent prejudice to defendants include payments of amounts not in dispute, continuing payments

9   during litigation, keeping prior liens out of default, paying taxes and insurance, and waiving any

10  claim that accepting payments pursuant to the conditions waives the default.  (*California Practice*

11  *Guide: Civil Procedure Before Trial*, 9:674.)  Further, "[i]t is now well-settled that reasonable

12  counsel fees and expenses incurred in successfully procuring a final decision dissolving the

13  injunction are recoverable as 'damages' within the meaning of the language of the

14  undertaking...."  (*ABBA Rubber Co. v. Seaquist* (1991) 235 Cal.App.3d 1, 15.)

15      If the Court is inclined to grant Plaintiff's Application, Plaintiff should be required to

16  provide an undertaking of no less than $835,985.70, which is equal to the current unpaid balance

17  on the loan.  (*See* RJN, Ex. K.)

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

## IX.

### CONCLUSION

The issuance of a preliminary injunction is not warranted in this case as Plaintiff has not provided the Court with the requisite evidence and demonstrated a substantial probability of success on the merits. Therefore, Plaintiff has not met her burden. Defendants hereby respectfully request the Court deny Plaintiff's Application. Alternatively, if the Court does decide to issue a preliminary injunction, Defendants request the Court order Plaintiff to post a bond.

DATED: January 9, 2013

SEVERSON & WERSON
A Professional Corporation

By: _Yaron Shaham_
    Yaron Shaham

Attorneys for Defendants U.S. BANK NATIONAL ASSOCIATION, as Trustee, as successor in interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee for RAAC 2007-RP1 (erroneously sued as Bank of America, National Association as successor by merger to LaSalle Bank National Association as Trustee for RAAC 2007RP1); GMAC MORTGAGE, LLC; and EXECUTIVE TRUSTEE SERVICES, LLC

1

## PROOF OF SERVICE

2      At the time of service, I was over 18 years of age and not a party to this action. I am
employed in the County of Orange, State of California. My business address is The Atrium,
3   19100 Von Karman Avenue, Suite 700, Irvine, CA 92612-6578.

4      On January 9, 2013, I served true copies of the following document(s):

5   **DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION FOR
A PRELIMINARY INJUNCTION**

6

7   on the interested parties in this action as follows:

Karen Michele Rozier                    Plaintiff, In Pro Per
8   7957 Dahlia Circle
Buena Park, CA  90620                   Telephone:   (714) 512-5740

9

10      ✖ **(BY NORCO OVERNITE)** By placing the documents in an envelope or package
addressed to the persons listed above and depositing copies of the above documents in a box or
11   other facility regularly maintained by Norco Overnite delivery service with delivery fees paid or
provided for, and with instructions for delivery on the next business day.

12
        I declare under penalty of perjury under the laws of the State of California that the
13   foregoing is true and correct.

14      Executed on January 9, 2013, at Irvine, California.

15

16

                                    Stephanie A. Crisp

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 2

# EXHIBIT 2

# 2014 California Rules of Court

## Rule 3.1150. Preliminary injunctions and bonds

### (a) Manner of application and service

A party requesting a preliminary injunction may give notice of the request to the opposing or responding party either by serving a noticed motion under Code of Civil Procedure section 1005 or by obtaining and serving an order to show cause (OSC). An OSC must be used when a temporary restraining order (TRO) is sought, or if the party against whom the preliminary injunction is sought has not appeared in the action. If the responding party has not appeared, the OSC must be served in the same manner as a summons and complaint.

*(Subd (a) amended effective January 1, 2007; adopted effective July 1, 1997; previously amended effective July 1, 1999.)*

### (b) Filing of complaint or obtaining of court file

If the action is initiated the same day a TRO or an OSC is sought, the complaint must be filed first. The moving party must provide a file-stamped copy of the complaint to the judge who will hear the application. If an application for a TRO or an OSC is made in an existing case, the moving party must request that the court file be made available to the judge hearing the application.

*(Subd (b) amended effective January 1, 2007; adopted effective July 1, 1997; previously amended effective July 1, 1999.)*

### (c) Form of OSC and TRO

The OSC and TRO must be stated separately, with the OSC stated first. The restraining language sought in an OSC and a TRO must be separately stated in the OSC and the TRO and may not be incorporated by reference. The OSC must describe the injunction to be sought at the hearing. The TRO must describe the activities to be enjoined pending the hearing. A proposed OSC must contain blank spaces for the time and manner of service on responding parties, the date on which the proof of service must be delivered to the court hearing the OSC, a briefing schedule, and, if applicable, the expiration date of the TRO.

*(Subd (c) amended effective January 1, 2007; adopted effective July 1, 1997; previously amended effective July 1, 1999.)*

### (d) Personal attendance

The moving party or counsel for the moving party must be personally present when the request for a TRO is made.

*(Subd (d) amended effective January 1, 2007; adopted as subd (e) effective July 1, 1997; amended as [Proof of service] effective July 1, 1999; previously relettered effective July 1, 1999.)*

### (e) Previous applications

An application for a TRO or an OSC must state whether there has been any previous application for similar relief and, if so, the result of the application.

*(Subd (e) amended effective January 1, 2007; adopted as subd (f) effective July 1, 1997; previously amended and relettered effective July 1, 1999.)*

### (f) Undertaking

Notwithstanding rule 3.1312, whenever an application for a preliminary injunction is granted, a proposed order must be presented to the judge for signature, with an undertaking in the amount ordered, within one court day after the granting of

the application or within the time ordered. Unless otherwise ordered, any restraining order previously granted remains in effect during the time allowed for presentation for signature of the order of injunction and undertaking. If the proposed order and the undertaking required are not presented within the time allowed, the TRO may be vacated without notice. All bonds and undertakings must comply with rule 3.1130.

*(Subd (f) amended effective January 1, 2007; previously amended and relettered effective July 1, 1997.)*

### (g) Ex parte temporary restraining orders

Applications for ex parte temporary restraining orders are governed by the ex parte rules in chapter 4 of this division.

*(Subd (g) amended effective January 1, 2007; adopted effective July 1, 1999.)*

*Rule 3.1150 amended and renumbered effective January 1, 2007; adopted as rule 359 effective January 1, 1984; previously amended effective July 1, 1997, and July 1, 1999.*

# EXHIBIT 3

# EXHIBIT 3



4828 Loop Central Drive
Houston, TX 77081
Telephone (800) 999-8501
Fax (713) 966-8906
www.littonloan.com

6/15/2006

Karen Rozier
7957 Dahlia Cir
Buena Park, CA  90620

Re:    Loan #:          20749024
       Property:        7957 Dahlia Cir
                        Buena Park, CA  90620

### VALIDATION OF DEBT NOTICE

Dear Mortgagor(s):

1.  As of 6/15/2006, our records reflect the current amount of the debt is $589,315.20.  The debt consists of principal, interest, and if applicable, negative escrow and service fees.  For additional information, including a payoff request, please contact our office via mail, phone, or our website.

2.  The creditor to whom the debt is owed is WMC WHOLE LOANS.  Litton Loan Servicing LP ("Litton") is collecting the debt on behalf of WMC WHOLE LOANS, and you may pay the debt to our office at the address indicated at the end of this notice.

3.  Unless you notify Litton within thirty (30) days of receipt of this notice that you dispute the validity of the debt, or any portion thereof, Litton will assume the debt to be valid.

4.  Within thirty (30) days of receipt of this notice, you may dispute the validity of the debt in writing.  At that time, Litton will obtain verification of the debt and a copy of such verification will be mailed to the referenced property address.

5.  Within thirty (30) days of receipt of this notice, you may request in writing that Litton provide you with the name and address of the original creditor.

6.  If you are not obligated on the debt, you are a debtor in bankruptcy, or the debt has been discharged in a bankruptcy proceeding, the servicer is not attempting to collect from you personally.  You are being provided this notice as a courtesy because your interest in the real estate may be affected.

Should you have questions, please contact our Default Administration Department at (800) 999-8501 or visit our website at www.littonloan.com.  Written requests or inquiries should be sent to Litton Loan Servicing LP, Attention: Default Administration Department, 4828 Loop Central Drive, Houston, Texas 77031.

Sincerely,

Default Administration Department


LITTON LOAN SERVICING LP IS A DEBT COLLECTOR.  THIS LETTER IS AN ATTEMPT TO COLLECT YOUR DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

# EXHIBIT 4

# EXHIBIT 4

# IN THE BANKRUPTCY APPELLANT PANEL

# FOR THE UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

---

Bankruptcy Appellate Panel No. CC-12-1359

Bankruptcy Case No. 8:11-21727-CB

---

**KAREN MICHELE ROZIER,**

*Debtor, Plaintiff and Appellant in Pro Per*

vs.

**U.S. Bank National Association, as Trustee, as successor in interest to Bank of America National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee for RAAC 2007 RP1**

*Appellee*

---

# APPELLATE'S OPENING BRIEF

BAP No. CC-12-1359

# TABLE OF CONTENTS

I.      Introduction.................................................................................1

II.     Jurisdiction.................................................................................2

III.    Issues and Applicable Standard of Review...................................................2

IV.     Procedural Background.......................................................................2

V.      Facts.......................................................................................5

        A.  U.S. Banks Proof of Claim and Appellant's Claim Objection...........................5

        B.  Hearing on the Claim Objection.....................................................6

        C.  U.S. Banks' Relief from Stay Motion and Appellant's Opposition Motion..............7

        D.  Hearing on the Relief From Stay Motion.............................................7

VI.     Discussion..................................................................................7

        A.  Appellant's Standing to Make this Appeal...........................................7

            1. Was the Decision Final or Interlocutory?........................................7

            2. Has the Appellant Met the Legal Requirements...................................8

                a.  Standing to Object........................................................8

                b.  Tender is Not Required...................................................11

        B.  Standing in Mortgage Cases........................................................11

            1. Constitutional Standing.......................................................**12**

            2. Prudential Standing...........................................................13

            3. Prudential Standing and the Real Party in Interest Doctrine...................14

            4. Real Party in Interest Status and Its Policies...............................14

        C.  The Substantive Law Related to Notes Secured by Real Estate.......................17

            1. UCC Articles 3 and 9, and USC 12 and 15 Apply.................................17

            2. Article 3 of the UCC and the Concept of a "Person Entitled to Enforce a Note"....17

            3. Article 9 and Transfers of Ownership and Other Interests in a Promissory Note....17

            4. U.S. Code Titles 12 and 15 Apply.............................................18

        D.  U.S. Bank's Lack of Standing to Seek Relief from the Automatic Stay...............18

            1. Standing to Seek Relief from Automatic Stay...................................18

            2. U.S. Bank's Argument Regarding Standing......................................19

            3. U.S. Bank's Lack of Connection to the Note...................................20

        E.  GMAC, LLC's Lack of Standing to File Proof of Claim...............................24

        F.  US. Bank's Failure to Make a Prima Facie Case....................................28

        G.  Inadequate/ Improper Representation..............................................28

VII.    Conclusion.................................................................................29

# LIST OF CASES

389 Orange St. Partners v. Arnold, 179 F.3d 656, 655 (9th Cir. 1999)........................................1

Alpha Distr. Co. v. Jack Daniel Distillery, 454 F.2d 442, 452-53 (9th Cir. 1972).......................25

Arizona Christian Sch. Tuition v. County of Kern, 581 F3d 841, 845 (9th Cir. 2009)......... 11, 13, 27

Bank of Lafayette v. Baudoin (In re Baudoin), 981 F.2d 736, 742 (5th Cir. 1993)......................27

Bear v Golden Plan of California, Inc. 829 F.2d 705, 709 (9th Cir. 1986).................................23

Campbell v. Verizon Wireless (In re Campbell), 336 B.R. 430, 434 (9th Cir. BAP 2005)...............25

Canadian Comm'l Bank v. Hotel Hollywood,95 B.R. 130, 132-34 (9th Cir. BAP 1988)................25

Carpenter v. Longan, 83 U.S. 271, 274-75 (1872)................................................................22

Cf. CW Capital Asset Mgmt., LLC v. Chicago Props., LLC...................................................19
    610 F.3d 497, 500-01 (7th Cir. 2010)

Choquette, 290 B.R. at 186.........................................................................................10

~~Commercial Prods. Corp. v. Briegel, 242 N.E.2d 317, 321 (Ill. App. Ct. 1968)~~ *deleted*.........22

Dewsnup v. Timm, 502 U.S. 410, 418 (1992)...................................................................10

Dimock v. Emerald Props. LLC, 81 Cal. App. 4th 868, 878 (Cal. Ct. App. 2000)......................11

Doran v. 7-Eleven, Inc., 524 F.3d 1034, 1044 (9th Cir. 2008).............................................13

EDP Med. Computer Sys., Inc. v. United States, 480 F.3d 621, 624 (2d Cir. 2007)....................27

Elk Grove Unified Sch. Dist. V. Newdow, 542 U.S.1, 11 (2004)...........................................11

Gardenhire v. Internal Revenue Serv. (In re Gardenhire),....................................................25
    220 B.R. 376, 380 (9th Cir. BAP 1998),

Hayes, 393 B.R. at 266-70........................................................................................14, 26

Heath v. Am. Express Travel Related Servs. Co., 331 B.R. 424, 428-29 (9th Cir. BAP 2005)........25

In re Bakke, 243 B.R. 753, 755 (Bankr. D. Ariz. 1999).......................................................10

In re I & F Corp., 219 B.R. 483, 484, 485 (Bankr. S.D. Ohio 1998) (citations omitted)...............8

In re Brawders, 503 F.3d 856, 867 (9th Cir. 2007)............................................................10

In re Conejo Enters., Inc., 96 F.3d 346, 351 (9th Cir. 1996)..................................................8

In re Excel Innovations, Inc., 502 F.3d 1086, 1092-93 (9th Cir. 207)......................................8

In re Hwang, 438 B.R. 661, 665 (C.D. Cal. 2010)............................................................22

In re Javaheri v. JP Morgan Chanse Bank N.A. et al.........................................................21

In re Kemp, 391 B.R. 262, 262 (D.N.J. 2008)..................................................................21

In re Mims, 438 B.R. 52, 56 (Bankr. S.D.N.Y. 2010)..........................................................6

In re Minbatiwalla, 424 B.R. 104, 108-11 (Bankr. S.D.N.Y. 2010).........................................21

In re Salazar, ___ B.R.___, 2011 WL 1398478 at *4 (Bankr. S.D. Cal. 2011)...........................23

In re Savidge, 57 B.R. 389, 392 (D. Del. 1986)................................................................10

In re Sun OK Kim, 89 B.R. 116, 118 (D. Hawaii 1987).......................................................10

In re Thompson, 965 F.2d 1136, 1147 (1st Cir. 1992).........................................................10

In re Veal, Jr. BAP Nps.AZ-10-1055-MkKiJu, BK 09-14808, Jun 10, 2011........................12, 13

In re Weisband, 427 B.R. 13, 18- 19 (Bankr. D. Ariz. 2010)............................................14, 26

In re Woodberry, 383 B.R. 373, 378 (Bankr. D.S.C. 2008)..................................................19

Jess v.Carey (In re Jess), 169 F.3d 1204, 1208-09 (9th Cir. 1999).........................................25

Katchen v. Landy, 382 U.S. 323(1966)..........................................................................27

Kilbourn v. Western Sur. Co., 187 F.2d 567, 571-72 (10th Cir. 1951).....................................16

Kluge v. Fugazy, 536 N.Y.S.2d 92, 93 (N.Y. App. Div. 1988).............................................21

Kronemyer v. Am. Contractors Idem. Co. 405 B.R. 914, 919 (9th Cir. BAP 2009)..................7, 19

Krueger v. Dorr, 161 N.E.2d 433, 440-41 (Ill. App. Ct. 1959)..............................................21

Lona, 202 Cal. App. 4th at 113....................................................................................21

Long v. Bullard, 117 U.S. 617, 620-21 (1886)..................................................................11

Lundy v. Messer, 167 N.E.2d 278, 279 (Ill. App. Ct. 1960)). ~~deleted~~...............................22

Magna Weld Sales Co. v. Magna Alloys & Research Pty., Ltd.,..........................................25
545 F.2d 668, 671 (9th Cir. 1976)).

Mann v. ADI Ivs., Inc. (In re Mann), 907 F.2d 923, 926-27 (9th Cir. 1990)..........................6, 18

Moore v. Lewis, 366 N.E.2d 594, 599 (Ill. App. Ct. 1977).................................................21

Niday v. GMAC (citations omitted)...........................................................................12, 21

Oregon v. Legal Servs. Corp., 552 F.3d 965, 971 (9th Cir. 2009)............................................13

Orman v. North Alabama Assets Co., 204 F. 289, 293 (N.D. Ala. 1913)..................................22

In re Parrish, 326 B.R. 708, 720-21 (Bankr. N.D. Ohio 2005)...........................................14, 26

Rockford Trust Co. v. Purtell, 183 Ark. 918 (1931)...........................................................22

Sacchi v. Mortg. Electr. Registration Sys., Inc., 2011 WL 2533029.....................................11

Siegel v. Fed. Home Loan Mortg. Corp., 143 F.3d 525, 529-30 (9th Cir. 1998)....................27

Sprint Commc'ns Co. v. APCC Servs., Inc., 554 U.S. 269, 273-74 (2008)...............12, 13, 16

Staggers v. Otto Gerdau Co., 359 F.2d 292, 294 (2d Cir. 1966)..........................................16

Swanson v. Levy, 509 F.2d 859, 860-61 (9th Cir. 1975)....................................................25

U-Haul Int'l, Inc. v. Jartran, Inc., 793 F.2d 1034, 1038, 1039 (9th Cir. 1986...........14, 16, 26

United Food & Comm'l Workers Union Local 751 v. Brown Gro., Inc., 517 U.S. 544, 551 (1996).......11

United States v. Hinkson, 585 F.3d 1247, 1261-63 (9th Cir. 2009) (en banc)........................20

Vance v. Am. Hawaii Cruises, Inc., 789 F.2d 790, 792 (9th Cir.1986)..................................25

Warth v. Seldin, 422 U.S. 490, 498 (1975)....................................................11, 13, 27

Wedges/Ledges of Cal., Inc. v. City of Phoenix, 24 F.3d 56, 61 ((th Cir. 1994)........................7

Winn, 131 S. Cr. At 1442.........................................................................................12

Yorke v. Citibank (In re BNT Terminals, Inc.)..................................................................21

# STATUTES

California Civil Code § 1542.................................................................................................15

California Civil Code § 3440.................................................................................................23

California Commercial Code 31-09, 3201, 3201, 3204......................................................23

California Commercial Code §§9313-931.............................................................................23

Federal Rules of Bankruptcy Procedure Rule 3008.............................................................8

Federal Rules of Bankruptcy Procedure Rule 3001.............................................................12

Federal Rules of Bankruptcy Procedure Advisory Committee Notes accompanying Rule 3007............24

Federal Rules of Bankruptcy Procedure Rule 4003.............................................................6

Federal Rules of Bankruptcy Procedure Rule 7001(2).........................................................6

Federal Rules of Bankruptcy Procedure Rule 7017.............................................................15

Federal Rules of Bankruptcy Procedure Rule 7052,...........................................................24

Federal Rules of Bankruptcy Procedure Rule 9014.............................................................24

Federal Rules of Civil Procedure Civil Rule 17,  Advisory Committee Notes.....................16

Federal Rules of Civil Procedure Rule 52............................................................................24

Uniform Commercial Code Articles 3 ......................................................................14, 15, 26

Uniform Commercial Code Article 9.............................................................................17, 24

11 USC§ 362(d)......................................................................................................................18

11 U.S.C. §502(a), (b)........................................................................................................6, 8

11 U.S.C. § 506(d)(2)............................................................................................................10

11 U.S. C. §544(a)................................................................................................................10

11 U.S.C. §704(5).................................................................................................................8

12 U.S.C. CFR §226.23, §226.23 Appendix H................................................................4, 18

15 U.S.C. §78c Section 10....................................................................................................18

28 U.S.C.§158(a)....................................................................................................................2

28 U.S.C. § 1334(c),.............................................................................................................27

# LIST OF AUTHORITIES

Adam J. Levitin, Associate Professor of Law Georgetown University Law Center............................29

Before the House Financial Services Committee

AEQUITAS Compliance Solutions, Inc "Foreclosure in California: A Crisis of Compliance"...............5

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice and Procedure</u>................15

Final Report of the Bankruptcy Foreclosure Scam Task Force dated May 1998............................30

<u>Moore's Federal Practice</u> § 17.10[1], at p.17-15 (3ded. 2010)...............................................15, 16

<u>Restatement (Third) of Property (Mortgages)</u> § 5.4 cmt. e (1997)..........................................20

Richard R. Powell, <u>Powell on Real Property</u>............................................................................21

Roger Bernhardt, California Mortgages and Deeds of Trusts, and Foreclosure Litigation...................23
(4th ed. 2009).

# I.    INTRODUCTION

Appellant is appealing the Relief From Automatic Stay granted on July 10, 2012. [Exhibit 1] Appellant filed her Notice of Appeal on July 10, 2012 and her Amended Notice of Appeal on July 24, 2012 [Exhibit 2]. Appellant believes that the court made clear errors of law and finding, and abused its discretion.

The underlying dispute between Appellant Karen M. Rozier and loan servicer GMAC Mortgage, LLC surrounds her real property located in Buena Park, California. Both parties agree that Ms. Rozier and WMC Mortgage Corp. entered into a mortgage agreement on December 23, 2005[1] and both parties agree that Ms. Rozier rescinded that transaction in February 2006. Both parties also agree that Ms. Rozier and WMC Mortgage Corp. entered into a new agreement in May 2006. The parties do not agree about the effects of the February rescission or the legality of any attempts to modify or to enforce a rescinded instrument. The Appellant presented these facts to the court through the adversarial process during the Chapter 13 proceedings and with opposition to Appellee's motion for relief from stay but the court has failed to address them.

GMAC Mortgage, LLC (hereinafter referred to as "GMACM") has based their claim[2] to Appellant's real property on their belief that their alleged ownership of the rescinded note gives them the right to demand and collect payments from Appellant or to foreclose on her real property. Over the past fifty-four months, they have taken the position that the rescission itself was rescinded three months after it took place. The Appellant believes that when the December 2005 note was rescinded it became a nullity and that the note was replaced by the May[3] 2006 note. The Appellant also does not believe that U.S. Bank N.A. (hereinafter referred to as either "U.S. Bank N.A.", "U.S. Bank", or "U.S. Bank National Association") possess any note endorsed by her that is tied to any Deed of Trust to her real property also endorsed by her. The Appellant presented these facts

---

[1] Although the parties do not agree on the nuances of that detail. Specifically, with respect to the Dec 2005 transaction, Debtor has alleged among other things that someone forged her name and in doing so, misspelled it.

[2] In his email dated July 30, 2012, the attorney who represented himself as "Joseph Delmotte for the moving party" sent the Appellant the Exhibit 3. Email in which he identified his client as "GMAC" three times and not the moving party, U.S. Bank. GMACM provided no evidence that even if U.S. Bank did own a note executed by debtor and that even if that note was secured by her real property, that U.S. Bank authorized GMACM as a party of interest. Newly discovered evidence is permissible. 389 Orange St. Partners v. Arnold. 179 F.3d 656, 655 (9th Cir. 1999).

[3] Debtor believes that she signed the note on her sister's birthday, May 28, 2006. Debtor never received a signed copy of the note, but did receive a letter dated June 6 acknowledging that the new loan had closed. Debtor assumed that the new documents were held by her attorney and did not give the note a second thought until GMACM began foreclosure proceedings. This issue is discussed further under FACTS and DISCUSSION.

to the Bankruptcy Court through the adversarial process during the Chapter 13 proceedings, but the court has failed to address them. Appellant also raised these issues in her timely filed Opposition to Motion for Relief for Automatic Stay.

## II.    JURISDICTION

This appeal arises from bankruptcy 8:11:bk-21727-CB from the U.S. Bankruptcy Court, Central District of California. The district court has always had the jurisdiction to review decisions of a bankruptcy court. 28 U.S.C. §158(a). The Ninth Circuit re-established the Bankruptcy Appellant Panel (BAP) by Order of the Judicial Council in 1985. That order was most recently renewed.

## III.    ISSUES AND APPLICABLE STANDARD OF REVIEW

Appellant timely filed her Statement of Issues on Appeal. In it she raises the following issues:

1.  Did the Court err when it ruled that it was not relevant if U.S. Bank N.A. had standing to bring a Motion for Relief From the Automatic Stay?

2.  Did the Court err when it granted Appelle's motion without first making a determination on the issue of whether U.S. Bank N.A. or GMACM was a "real party in interest"?

3.  Did the Court err when it granted Appelle's motion without first reviewing the motion opposing the U.S. Bank or GMACM assertion that it made a prima facie case?

4.  Were there material issues of fact within the Court's jurisdiction that were left unanswered due to the Court's errors?

5.  Did the Court err in granting U.S. Bank's Motion for Relief From the Automatic Stay?

6.  Did Debtor/ Appellant have adequate representation at the trial, or did the Court err by allowing an unknown person to represent her without the Pro Se Debtor's approval?[4]

---

[4]In the Statement of Issues on Appeal this was referred to as "Was Appellant/ Debtor denied a fair hearing by an Attorney who misrepresented himself as having authority to argue the Debtor's Opposition Motion?".

Appellant is requesting that the court review the case for errors of fact and law, as well as abuse of discretion. Appellant attempts to identify throughout which items are de novo, error or discretion.

## IV.    PROCEDURAL BACKGROUND

1.  A full description of the events leading up to the litigation between Appellant Rozier and Appellee GMACM and its "lenders" is provided by the Exhibit 4. Emergency Motion to Stay Pending Appeal Declaration of Karen M. Rozier, pages 1-4.

2.  A full description of the parties involved in the original loan transaction is provided in the Exhibit 5. Objection to Proof of Claim. (page 5 lines 4-14), including Exhibits 5 -7 which document the rescission and new loan closing. It is obvious from the evidence that the Debtor did not initiate the rescission but rather that the Debtor elected to rescind the note upon being informed that the Lender, WMC Mortgage, LLC made "mistakes" which made rescission prudent for the Debtor. Also provided is evidence that the Lender, WMC Mortgage, LLC accepted that rescission.

3.  Between January 6, 2008 and March 27, 2008 Appellant contacted servicing GMACM and their so-called Trustee Executive Trustee Services, LLC[5] to correct what Appellant believed was an honest error. As per the Exhibit 6 letter[6], Debtor attempted to work in good faith.

4.  On June 25, 2008 Appellant filed a Chapter 13 bankruptcy 8:08-bk-13583-RK seeking protection to stay the June 27, 2008 sale of her real property. In this case the attorneys for GMACM , PITE DUNCAN, submitted a Proof of Claim identifying GMAC Mortgage, LLC as the lender. (Exhibit 7. Proof of Claim]. That Chapter 13 was involuntarily converted to Chapter 7 in October 2008 and Appellant voluntarily withdrew her bankruptcy petition prior to discharge.

5.  On October 28, 2008 Appellant filed litigation against GMACM and MERS. Without ever answering the complaints GMACM removed the case to Federal Court. (SACV-09-0961-DOC). That case was dismissed with leave to amend.

---

[5] According to the List of Equity Security Holders filed in bankruptcy case 12-12028 in the Southern District of New York on May 14, 2012 [In re Executive Trustee Services, LLC], GMAC Mortgage, LLC holds a 100% ownership of Executive Trustee Services, LLC. They are not a Trustee by the conventional definition.
[6] This issue was raised in related case 30-2008-00217056, which was made part of this case through the Statement of Related Cases.

6. On February 10, 2009 Debtor rescinded the note citing the following: Fraud in Factum, in Fact, in Inducement and Executum, including other violations of law. Without demanding tender, GMACM refused to accept the rescission claiming that the 3 year statute of limitations had expired or that the three-year statute of limitations applied. GMACM does not disagree that Debtor rescinded the original December note, but rather claim that Debtor waived the right to rescind previously [Exhibit 6]. In their Exhibit 8 Supplemental Scheduling Conference Report Under FRCP Rule 26[7] Page 2, line 2 -5, lines 10-11]. The law only allows a Debtor to waive the right of rescission only in emergencies, and then only to get money immediately. To modify or waive the right, the consumer must give the lender a dated written statement that describes the emergency, specifically modifies or waives the right to rescind, and bears the signature of all of the consumers entitled to rescind. Printed forms for this purpose are prohibited. CFR Title 12. §226.23. GMACM was incorrect when it asserted that the loan was still valid because the Debtor waived her right to rescind as that rescission was executed months after Debtor had received her cash and only for the benefit of the Lender.

7. GMACM, as Servicer to Bank of American, National Association as successor by merger to LaSalle Bank National Association as Trustee for RAAC 2007RP1 submitted their Objection to Confirmation of Chapter 13 on 10/31/2012. At the Confirmation Plan hearing, the Court ruled that as the "Creditor" was not identified in the Debtor's Schedules and had not filed a Proof of Claim, they lacked standing to object to the Plan[8].

8. On January 3, 2012 GMACM submitted a proof of claim as "Servicing Agent to Bank of America, National Association as successor by merger to LaSalle Bank National Associations as Trustee for RAAC2007RPI." [Exhibit 9. Proof of Claim] Debtor filed her timely objection (herein referred to as "Objection to POC") on January 12, 2012.

9. The Chapter 13 was involuntarily converted to a Chapter 7 on February 16, 2012.

---

[7] Debtor included this case in her Statement of Related Cases.

[8] Appellant has just realized that she needed this transcript as well and is trying to get a copy of this transcript. Appellant respectfully requests that the court grant her leave to amend this appeal to include that transcript, provided of course that Appellant complies with all the proper rules to seek leave to amend.

10. On June 18, 2012, without first filing an Amended Proof of Claim or otherwise becoming a party to these proceedings, U.S. Bank submitted a Motion for Relief From Automatic Stay [Exhibit 10. Notice of Motion and Motion For Relief From the Automatic Stay]. Debtor served her timely objection (herein referred to as "Opposition Motion") on 6/28/2012 [Exhibit 11. Debtor's Opposition to Motion For Relief From Automatic Stay]. That document was date stamped July 5, 2012, but entered on 07/06/2012 as Item #45 into the docket.

## V.    FACTS

In February 2012, AEQUITAS Compliance Solutions, Inc. released their assessment of the foreclosure crisis in the state of California[9]. They were retained by the City and County of San Francisco's Office of the Assessor-Recorder to review 382 residential mortgage loan transactions that resulted in foreclosure sales that occurred from January 2009 through October 2011. They identified irregularities in 99% of the subject loans. In 84% of the loans, they identified what appeared to be one or more clear violations of law.

### A.  U.S. Bank's Proof of Claim and Appellants Claim Objection

GMACM submitted an Objection to the Debtor's Confirmation Plan, but that objection was overruled at the December 8, 2011 plan confirmation meeting on the grounds that GMACM had not submitted a Proof of Claim. [See footnote 8.] On January 3, 2012 GMACM submitted a proof of claim in Appellant's Chapter 13 bankruptcy as Servicing Agent to Bank of America, National Association[10] as successor by merger to LaSalle Bank National Associations as Trustee for RAAC2007RP1. Attached to that Proof of Claim was the rescinded December 2005 note and Deed of Trust. With her timely filed Objection [Exhibit 5], this case became

---

[9] Exhibit 12 "Foreclosure in California: A Crisis of Compliance". Prepared by AEQUITAS for the Office of the Assessor-Recorder, San Francisco. February 2012 is submitted for reference purposes.
[10] In May 1998, The Honorable Catherine Bauer was a contributing author of "Final Report of the Bankruptcy Foreclosure Scam Task Force" to the U.S. Bankruptcy Court CDC as Senior Counsel for Bank of America, NT & SA. This report focused on the foreclosure scam as being completely orchestrated by homeowners and virtually absolved the banks and the courts of any participatory guilt. Considering that she represented the Bank of America in bankruptcy proceedings for 15-years and that they were still the Movant on record, she properly should have recused herself from this matter.

adversarial 11 U.S.C. § 502(a) provides that a claim supported by a Proof of Claim is allowed unless a party in interest objects. Once an objection has been filed, the court may determine the amount of claim after a noticed hearing.  11 U.S.C. § 502(b).

U.S. Bank filed no Proof of Claim. In their Initial Response to Debtor's Objection (Exhibit 13. Initial Response to Debtor's Objection to U.S. Bank National Association, As Trustee, Successor by Merger to LaSalle Bank National Association, As Trustee for RAAC 2007RPI's Proof of Claim, Page 2, lines 13-16) filed on February 10, 2012, GMACM wrote:

> "An Amended Proof of Claim to the original Proof of Claim (No.7) filed on January 3, 2012, was to be filed on this case showing vesting in the current Movant. Said Amended Proof of Claim was put on hold as the instant case was converted to a Chapter 7 case on or about January 12, 2012."

The case converted on February 12, 2012, two days _after_ they filed this response. No amended Proof of Claim was ever submitted. More importantly, the automatic stay prevents "all proceedings relating for a foreclosure sale." Mann v. ADI Ivs., Inc. (In re Mann), 907 F.2d 923, 926-27 (9th Cir. 1990). Secured creditors are not required to file proofs of claims. Claims scheduled as undisputed, fixed or liquidated are deemed allowed even if no proof of claim is filed. If a proof of claim is timely and properly filed, it is "deemed allowed" unless a party in interest objects. A "party in interest" may object to the proof of claim. The objection becomes a "contested matter". When a debtor is seeking to invalidate a creditor's lien, the proper procedure is for the debtor to file an adversary proceeding. See In re Kemp, 391 B.R. 262, 262 (D.N.J. 2008). If the objection is joined with a demand for relief of the kind specified in Bankruptcy Rule 7001, it becomes an adversary proceeding. In this case, the Movant GMACM did file a Proof of Claim naming Bank of America N.A. as the lender and that Proof of Claim was disputed[11]. The Appellant was compliant was F.R.B.P. 7001.

### B.  Hearing on the Claim Objection

There was _no_ hearing on Appellant's Claim Objection.

---

[11] Although the Opposition to POC does not specifically call out Rule 7001, the motion does demand relief that is governed by Rule 7001(2) which states "The following are adversary proceedings: (2) a proceeding to determine the validity, priority, or extent of a lien or other interest in property, other than a proceeding under Rule 4003(d). Rule 4003(d) Exemptions: Avoidance by Debtor of Transfers of Exempt Property does not apply.

1

### C.  U.S. Bank's Relief from Stay Motion and Appellant's Opposition Motion

2

Without filing any Proof of Claim, U.S. Bank filed their Exhibit 10 motion for relief from automatic stay on

3

June 18, 2012.  Appellant filed her timely opposition motion [Exhibit 11] on June 28, 2012.

4

5

### D.  Hearing on the Relief From Stay Motion

6

7

        In her timely filed objection, Appellant offered the following arguments: (1) Movant lacks standing;

8

(2) Movant is not the "Real Party of Interest"; (3) Movant Failed to Make a Prima Facie Case; and (4) Movant

9

Failed to Notify All Parties. A hearing was held on July 10, 2012 but the Court failed to review the Debtor's

10

opposition motion prior to or during the hearing and the Court failed to hear oral arguments. [Exhibit 14.

11

Transcript of Proceedings Before the Honorable Catherine Bauer]. The hearing was disrupted by someone

12

pretending to represent Debtor/ Appellant Karen M. Rozier. A complaint against that party has been filed[12].

13

Notwithstanding the misrepresentation made by the unknown party pretending to represent the Appellant, the

14

Court refused to hear any of the Debtor/ Appellant's argument, instead making their decision based solely on

15

Appellant's refusal to pay the disputed creditor. (See Exhibit 14. Transcript, page 4, line 2. Page 5, lines 5-6)

16

17

### IV. DISCUSSION

18

        Appellant/Debtor Karen Rozier belives the Court erred in granting Appellant a relief from the stay due

19

to the arguments raised in her opposition motion regarding standing and real party of interest with respect to

20

the proof of claim it filed.  Standing is a legal issue that the Court of Appeal reviews de novo. Wedges/Ledges

21

of Cal., Inc. v. City of Phoenix, 24 F.3d 56, 61 ((th Cir. 1994); Kronemyer v. Am. Contractors Idem. Co. (In re

22

Kronemyer), 405 B.R. 914, 919 (9th Cir. BAP 2009). Once raised, it must be addressed. Appellant also

23

disputes that the Movant made a prima facie case.

24

25

26

### A. Appellant's Standing to Make This Appeal

27

28

---

[12] A copy of that confidential matter will be made available should the court order me to do so. This is also discussed further below in Section VI. Paragraph G. below [page 28].

1.   Was the decision final or interlocutory?  Final.

Orders held to be final include orders granting or denying relief from stay.  In re Excel Innovations, Inc., 502 F.3d 1086, 1092-93 (9th Cir. 207); In re Conejo Enters., Inc., 96 F.3d 346, 351 (9th Cir. 1996).

2.   Has the Appellant met the legal requirements? Yes.

    a.   <u>Standing to object</u>

Section 502(a) of the Bankruptcy Code provides that a proof of claim "is deemed allowed, unless a party in interest ... objects." 11 U.S.C. §502(a).  The Bankruptcy Code does not define the term party in interest, but the majority of courts considering the issue have held that only a trustee may object to proofs of claim in a chapter 7 case. In re Thompson, 965 F.2d 1136, 1147 (1st Cir. 1992); In re I & F Corp., 219 B.R. 483, 484 (Bankr. S.D. Ohio 1998) (citations omitted).  Indeed, it is the trustee's statutory duty to examine proofs of claim and object to improper claims.  11 U.S.C. §704(5).  Ordinarily, "'the demands of orderly and expeditious administration have led to recognition that the right to object is generally exercised by the trustee.'" In re I & F Corp., 219 B.R. at 485, quoting the advisory committee note to Bankruptcy Rule 3008.

However, an individual debtor in a chapter 7 case has standing to object to claims when the debtor can demonstrate one or more of the following: (1) the debtor has a pecuniary interest in the result by way of a demonstrable surplus; (2) the trustee failed or refused to object to the claim or claims in question; and/or (3) the debtor's objection would not undermine the efficient administration of the estate. In this particular case, the Proof of Claim was submitted by Bank of America under a Chapter 13 and the Debtor did object to the Proof of Claim under the Chapter 13. No Proof of Claim was submitted in the Chapter 7, and GMACM failed to submit an Amended Proof of Claim.

1.   Pecuniary Interest in the Property

The individual debtor's primary concerns in a chapter 7 case are to retain exempt property and to receive a discharge that covers as many debts as possible[13]. Debtor has not acknowledged either GMACM or U.S. Bank in the underlying bankruptcy proceeding and U.S. Bank filed no POC. Debtor's Schedule A – Real Property described her real property as "Tax Assessor Parcel #136-241-04" with a secured claim amount of "0". Debtor's Schedule C- Property Claimed as Exempt listed her Dahlia Circle property with a Value of Claimed Exemption of $100,000. The Trustee did not object to the homestead exemption. Schedule F – Creditors Holding Unsecured Nonpriority Claims Debtor identifies "Unknown Investor" with a claims date of May 22, 2006 for the amount of $576,000. Debtor's Schedules are provided as Exhibit 15.

Debtor argued in her opposition motion that U.S. Bank valued her property substantially below market value based on faulty data[14]. Debtor alleged that her real property is over 4,200 square feet and not the 2,096 square feet that U.S. Bank claims. [Exhibit 11 pages 13 line 25 – page 14 line 18.] If the Debtors assertions are true, then the liquidation of her estate would also produce a homestead exemption of $100,000 to the Debtor. An unrecorded or voided mortgage will thus generally have junior priority to the homestead allowance so the debtor maintains a pecuniary interest in the property. The proper recording of the mortgage was necessary to establish the mortgage's priority relative to the claims of other parties, including other mortgages, judgment lien creditors and tax liens against the property, liens which do exist and which should take propriety over an unsecured note; in any event these creditors have more standing than a creditor that has not offered a POC and has not demonstrated standing or that they are a real part of interest. Debtor was wrongfully denied the opportunity to protect her interests when the court de facto denied her right to be heard in the adversary proceeding she initiated when she objected to the Proof of Claim and when they ignored her opposition.

2.    Trustee Failed or Refused to Object to the Claim.

The primary role of a Chapter 7 Trustee in an asset case is to liquidate the debtor's nonexempt assets in a manner that maximizes the return to the debtor's unsecured creditors .The trustee accomplishes this by

---

[13] From http://www.uscourts.gov/FederalCourts/Bankruptcy/BankruptcyBasics/Chapter7.aspx
Liquidation Under the Bankruptcy Code, Bankruptcy Basics, Chapter 7.
[14] According to the latest information on the home valuation website Zillow (www.zillow.com), Debtor's property is worth over $680,000 as of the date of this filing.

selling the debtor's property if it is free and clear of liens (as long as the property is not exempt) or if it is

worth more than any security interest or lien attached to the property and any exemption that the debtor holds

in the property. The trustee may also attempt to recover money or property under the trustee's "avoiding

powers"[15]. In this case the Trustee elected not to protect Debtor's Homestead Exemption so she is allowed to

protect her own pecuniary interests.

Pursuant to the Bankruptcy Code, a Trustee can avoid a mortgage lien if a bona fide purchaser for

value could avoid the mortgage under state law. 11 U.S. C §544(a). A secured lien passes through bankruptcy

unaffected unless affirmative action is taken to avoid it. Long v. Bullard, 117 U.S. 617, 620-21 (1886);

Dewsnup v. Timm, 502 U.S. 410, 418 (1992); In re Brawders, 503 F.3d 856, 867 (9th Cir. 2007); §506(d)(2).

Appellant has pled this case with sufficiency that the Trustee should have objected to the Stay Motion on the

grounds that sufficient cause has been shown to entertain the possibility that this is that rare case where the lien

is avoidable[16].

Neither U.S. Bank nor GMACM were identified as creditors in this bankruptcy proceeding or on

Debtor's schedules, and U.S. Bank failed to submit an Amended Proof of Claim. The Trustee erred in failing

to challenge either party's right to bring forth this motion. The Trustee failed to attend the hearing despite

being timely notified and informed of debtor's objections and refused to attend wrongly believing that the

property is only 2,096sqft; that gives the Debtor standing to bring this appeal. See Choquette, 290 B.R. at 186

(debtor had standing given trustee's statements at the hearing that based on his investigation, he was not

inclined to object to the creditor's claim); In re Sun OK Kim, 89 B.R. 116, 118 (D. Hawaii 1987) (leave of

court given after trustee formally refused to object to claim could confer standing to object on debtor); In re

Savidge, 57 B.R. 389, 392 (D. Del. 1986) (to uphold orderly administration of the estate, the trustee must be

noticed and refuse to object before debtor can obtain court-ordered standing to object to creditor's claim); In re

Bakke, 243 B.R. 753, 755 (Bankr. D. Ariz. 1999) (trustee's refusal to object to creditor's claim after debtor's

request and application to court for leave to object were prerequisites to debtor's standing to object).

---

[15] From http://www.uscourts.gov/FederalCourts/Bankruptcy/BankruptcyBasics/Chapter7.aspx
Liquidation Under the Bankruptcy Code, Bankruptcy Basics, Chapter 7. Role of the Case Trustee. §
[16] This transaction was void at inception.

3.    Debtor Objection Does Not Undermine Estate

Debtor's objection actually improves the efficient administration of the estate. Should Debtor's allegations be shown to be true, that is, should it be determined that her real estate is not secured by any mortgage, then the orderly liquidation of her estate is better served by her assets being used to repay legitimate creditors and not U.S. Bank or GMACM, who lack standing and are no party of interest.

b.    Tender is Not Required.

Under California Law, there are a few recognized exceptions to the tender requirement. Specifically, when the borrower's action attacks the validity of the underlying debt as was done in Debtor's on-going litigation including the Quiet Title, tender is not required because it would constitute an affirmation of the debt. Lona, 202 Cal. App. 4th at 112-113. Additionally, there is a general equitable exception that "tender may not be required where it would be inequitable to do so." Sacchi v. Mortg. Electr. Registration Sys., Inc., 2011 WL 2533029, at*10 (C.D. Cal. June 24, 2011) (citing Onofrio v. Rice, 55 Cal. App. 4th 413, 424 (Cal. Ct. App. 1997)). Furthermore, tender is not required when the trustor does not rely on equity to attack the deed, such as, where the trustee's deed is void on its face. Lona, 202 Cal. App. 4th at 113; see also Dimock v. Emerald Props. LLC, 81 Cal. App. 4th 868, 878 (Cal. Ct. App. 2000) (sale under the deed of trust by a former trustee was facially void, and therefore tender was not required to sustain a cause of action).

**B.  Standing in Mortgage Cases**

A federal court may exercise jurisdiction over a litigant only when that litigant meets constitution and prudential standing requirements. Elk Grove Unified Sch. Dist. V. Newdow, 542 U.S.1, 11 (2004). Standing is a "threshold question in every federal case, determining the power of the court to entertain the suit." Warth v. Seldin, 422 U.S. 490, 498 (1975). See also Arizona Christian Sch. Tuition v. County of Kern, 581 F3d 841, 845 (9th Cir. 2009).

## 1.    Constitutional Standing

Constitutional standing requires an injury in fact, which is caused by or fairly traceable to some conduct or some statutory prohibition, and which the requested relief will likely redress. Winn, 131 S. Cr. At 1442; United Food & Comm'l Workers Union Local 751 v. Brown Gro., Inc., 517 U.S. 544, 551 (1996). Appellant has repeatedly provided evidence that neither GMACM's nor any of its pretend lenders – first MERS, followed by Bank of America, N.A. and now U.S. Bank, N.A.[17], hold any legal interests in her real property. In order for an injury in fact to have occurred, the assignee to the claim must hold legal title at the time that it is asserted in action. Sprint Commc'ns Co. v. APCC Servs., Inc., 554 U.S. 269, 273-74 (2008);

As Appellant argued in her opposition motion, none of the parties to the original transaction – Karen M. Rozier, WMC Mortgage, LLC, Westwood Associates, or MERS – legally transferred their rights to either GMACM or U.S. Bank, N.A.  In Niday v. GMAC (citations omitted), Justices Opinion dated July 18, 2012, Justices wrote:

> "In sum, we conclude that the "beneficiary" of a trust deed for purposes of the OTDA is the person named or otherwise designated in the trust deed as the person to whom the secured obligation is owed-
> -in this case, the original lender."

Neither Appellee provided a trail that leads from the original Trustee Westwood Associates or the Lender WMC Mortgage, LLC[18]. U.S. Bank has filed no proof of claim in the bankruptcy. Whether or not U.S. Bank or GMACM satisfies the relatively minimum requirements of constitutional standing is a question of law. That question was originally raised of GMACM in Superior Court of California Case 30-2008-00217056.

Under a careful reading of the entirety of Rule 3001, standing is a prerequisite to the evidentiary benefits set forth in Rule 3001(f). In re Veal, Jr. BAP Nps.AZ-10-1055-MkKiJu, BK 09-14808, Jun 10, 2011. On its face, Rule 3001(f) says that a proof of claim is prima facie evidence of the validity and amount of the claim if it is both executed and filed in accordance with the Rule, and Rule 3001(b) requires that a claim be

---

[17] Four separate entities, beginning with Litton Loans Corporation, have now claimed beneficial ownership of the deed of trust. The true owner of the underlying promissory note needs to step forward to settle the cloud that has been created surrounding the relevant parties rights and interests under the trust deed.
[18] For the interest of brevity, I won't delve into the MERS morass, which is covered in Exhibit 6. Objection to POC: page 8 lines 7-11, Page 10, line 17 – page 11,line 9 and Exhibit 11.

executed by the creditor or its authorized agent. *Simply put, if a claim is challenged on the basis of standing, the party who filed the proof of claim must show that it is either the creditor or the creditor's authorized agent in order to obtain the benefits of Rule 3001(f).* Instead of obviating standing requirements, Rule 3001 conditions the availability of the presumptions contained in Rule 3001(f) upon the creditor first satisfying the standing requirement contained within Rule 3001(b). To hold otherwise would undermine the requirements of both constitutional and prudential standing and the important principles those requirements safeguard.

## 2.    Prudential Standing

Even if U.S. Bank and GMACM met their constitutional minima for standing, they must still show that they had standing under various prudential limitations on access to federal courts. Prudential standing "'embodies judicially self-imposed limits on the exercise of federal jurisdiction.'" Sprint, 554 U.S. at 289 (quoting Elk Grove, 542 U.S. at 11); County of Kern, 581 F.3d at 845.

In this specific case, one component of prudential standing is particularly applicable. It is the doctrine that a plaintiff must assert its own legal rights and may not assert the legal rights of others. Sprint, 554 U.S. at 289; Warth, 422 U.S. at 499; Oregon v. Legal Servs. Corp., 552F.3d 965, 971 (0th Cir. 2009). In Appellant's timely filed Objection to POC submitted during the initial Chapter 13 proceedings, she alleges that GMACM has no authority to bring the Proof of Claim and that the security interest has not been perfected as required under the F.R.B.P. Rule 3001(d) and F.R.B.P. 3002. (Exhibit 5 page1, lines 19-22).

In Appellant's timely filed opposition motion, she alleges that both U.S. Bank and GMACM lack standing and that neither is a "real party in interest". (Exhibit 11, page 5 line 23 through page 12, line 12). Appellant sought to invoke prudential standing principles which generally provide that a party without the legal right, under substantive law, to enforce an obligation or seek a remedy with respect to it is not a real party in interest. Doran v. 7-Eleven, Inc., 524 F.3d 1034, 1044 (9th Cir. 2008). If the Appellant's allegations are correct as to U.S. Bank and GMACM, then neither creditor satisfied their prudential burden, and the court erred in ruling in their favor without requiring them to satisfy this burden. In re Veal, Jr. BAP Nps.AZ-10-1055-MkKiJu, BK 09-14808, Jun 10, 2011.

When the Appellant/ Debtor Karen Rozier challenged the alleged servicer's GMACM's standing to file a proof of claim regarding a note governed by Article 3 of the UCC, GMACM became legally required to demonstrate that it has an agency relationship with a "person entitled to enforce" the note that is the basis of the claim. GMACM did not dispute Apellant's assertion that the note was governed by the Uniform Commercial Code during the Federal proceeding SACV09-0961 DOC (RNBx). When GMACM failed to provide such evidence, then the servicer did not demonstrate that it had standing to file the proof of claim. See, e.g., In re Minbatiwalla, 424 B.R. 104, 108-11 (Bankr. S.D.N.Y. 2010); Hayes, 393 B.R. at 266-70; In re Parrish, 326 B.R. 708, 720-21 (Bankr. N.D. Ohio 2005. The bankruptcy court properly recognized prudential standing when they denied GMACM's objection to the Chapter 13 plan prior to confirmation[19].

In this matter being appealed, the bankruptcy court here apparently concluded as a matter of law that the identity of the person entitled to enforce the Note was irrelevant. The Court admits that it had not read the Appellant's timely filed opposition motion [Exhibit 14. Transcript pages, line 1 page 18] and based its decision solely on the fact that the Debtor has not made a payment on a disputed debt [Exhibit 14. Transcript page 5, lines 5-6]. Its analysis followed the Mortgage instead of the Note. This is a fatal error. In the context of a claim objection, both the injury-in-fact requirement of constitutional standing and the real party in interest requirement of prudential standing hinge on who holds the right to payment under the Note and hence the right to enforce the Note. In re Weisband, 427 B.R. 13, 18- 19 (Bankr. D. Ariz. 2010). See also U-Haul, 793 F.2d at 1038 (holding that real party in interest is the "party to whom the relevant substantive law grants a cause of action"). In other words, U.S. Bank (or GMACM as U.S. Bank's servicer) must be a "person entitled to enforce" the Note in order to qualify as a creditor (or creditor's agent) entitled to file a proof of claim. Otherwise, the estate may pay funds to a stranger to the case; indeed, the primary purpose of the real party in interest doctrine is to ensure that such mistaken payments do not occur. Appellee GMACM has previously presented at least three entities as the lender and the MERS database still identifies the lender as "Unknown Investor" [Exhibit 5, page 4, lines 18-26]. The Court erred in granting the relief from stay without first determining the identity of the parties attempting to seek that relief.

---

[19] Appellant has ordered the transcript from that core proceeding and will forward it to the BAP immediately along with a Motion for Leave to Amend.

### 3.    Prudential Standing and the Real Party in Interest Doctrine

The formulation of the prudential standing doctrine conflates somewhat with the real party in interest

doctrine found in Rule 7017[20]. While at least one prominent authority maintains that the third party standing

doctrine and the real party in interest requirement are legally distinct, 6A Charles Alan Wright, Arthur R.

Miller & Mary Kay Kane, Federal Practice and Procedure, Civil § 1542 (3d ed. 2010), another authority

succinctly summarizes the practical distinction: *"Generally, real parties in interest have standing, but not

every party who meets the standing requirements is a real party in interest."* 4 Moore's Federal Practice §

17.10[1], at p.17-15 (3ded. 2010) (footnotes omitted). As a result, if neither U.S. Bank nor GMACM is a real

party in interest, the court need not parse the remaining differences between standing and real party in interest

status.

Neither U.S. Bank nor GMACM has been required to demonstrate that they qualified as real parties in

interest.[21] The Court erred by granting their Motion for Relief From Automatic Stay without first requiring

that they qualified as real parties in interest.

### 4.    Real Party in Interest Status and Its Policies

The mortgage contract consists of two documents, a promissory note and a security instrument (the

"mortgage" or the "deed of trust"). The note is the IOU that contains the borrower's promise to repay the

money loaned. If the note is a negotiable instrument, meaning that it complies with the requirements for

negotiability in Article 3 of the Uniform Commercial Code, then the original physical note is itself the right to

payment. Appellant has provided evidence that the December 2005 note was rescinded and that the Lender

accepted the rescission. [See Exhibit 5, Exhibits 5 and 6] The Servicer GMACM has repeatedly maintained

---

[20] Rule 7017 incorporates Civil Rule 17, and is applicable here through Rule 9014 (c).

[21] In all of its various aspects, the standing issue is an inherently factual inquiry into the nature of the rights asserted, see, e.g., Sprint, 554 U.S. at 271-73, and the party asserting that it has standing bears the burden of proof to establish its standing. Summers v. Earth Island Inst., 555 U.S. 488, ___, 129 S.Ct. 1142, 1149 (2009) (The movant "bears the burden of showing that he has standing for each type of relief sought"); Bennett v. Spear, 520 U.S. 154, 167–68 (1997); Hasso v. Mozsgai (In re La Sierra Fin. Servs., Inc.), 290 B.R. 718, 726 (9th Cir. BAP 2002). These cases require that the movant bear the burden of proving both constitutional and prudential standing.

that it holds "the Lender's beneficial interest in the Note and Deed of Trust", referring to the rescinded

December 2005 note, a nullity. [Exhibit 13 Page 2, lines 7 – 13] They have failed to show that they own any

beneficial interests or rights to the enforceable May 2006 loan and have failed to provide a lost note or

affidavit over the past fifty-four months. Civil Rule 17(a)(1) starts simply: "An action must be prosecuted in

the name of the real party in interest." Although the exact definition of a real party in interest may seem

confusing, its function and purpose are well understood. As stated in the Advisory Committee Notes for Civil

Rule 17,

> "In its origin the rule concerning the real party in interest was permissive in purpose: it was designed
> to allow an assignee to sue in his own name. That having been accomplished, the modern function of
> the rule in its negative aspect is simply to protect the defendant against a subsequent action by the
> party actually entitled to recover, and to insure generally that the judgment will have its proper effect
> as res judicata."

Notes of Advisory Committee on 1966 Amendments to Rule 17. See also U-Haul Int'l, Inc. v. Jartran, Inc.,

793 F.2d 1034, 1039 (9th Cir. 1986) ("'The modern function of the rule ... is simply to protect the defendant

against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment

will have its proper effect as res judicata.'") (quoting Advisory Committee Notes to the 1966 amendment of

Civil Rule 17).

In this regard, most real party in interest inquiries focuses on whether the plaintiff or movant holds the

rights he or she seeks to redress. See Moore's, supra, § 17.10[1]. But in some cases, statutory or common law

recognizes relationships in which parties may sue in their own name for the benefit of others. In these cases,

real party in interest doctrine potentially alters results: it allows these third parties to sue in their own name on

actions in which they may not have the ultimate or direct personal stake in the matter. A guardian, for example,

may sue on behalf of his or her ward, even though the recovery is solely the ward's. Civil Rule 17(a)(1)(C). A

bailee may sue in its own name for damage to goods entrusted to it, even though it does not own them. Civil

Rule 17(a)(1)(D). Even assignees for collection may, under certain circumstances, sue in their own name on

their assignor's debt. See Sprint, 554 U.S. at 284 (dictum); Staggers v. Otto Gerdau Co., 359 F.2d 292, 294 (2d

Cir. 1966); Kilbourn v. Western Sur. Co., 187 F.2d 567, 571-72 (10th Cir. 1951). Real party in interest

doctrine thus melds procedural and substantive law; it ensures that the party bringing the action owns or has rights that can be vindicated by proving the elements of the claim for relief asserted.

It also has another key aspect, as the Advisory Committee Notes acknowledge: if the party bringing the action loses on the merits, it ensures that the person defending the action can preclude anyone from ever seeking to vindicate, or collect on, that claim again.

### C.   The Substantive Law Related to Notes Secured by Real Estate

#### 1.   UCC Articles 3 and 9, and USC 12 and 15 Apply

Neither party has challenged the applicability of the UCC, U.S. Code or other governing document.

#### 2.   Article 3 of the UCC and the Concept of a "Person Entitled to Enforce a Note"

The rules regarding transfer and negotiation are too complex for this briefing, but it is important to focus on the concept of whether or not either party was a "person entitled to enforce" the note. Even if U.S. Bank or GMACM could produce something that resembled the note she signed on or about May 28, 2006, the possessor of that note must demonstrate both the fact of the delivery and the purpose of the delivery of the note to the transferee in order to qualify as the "person entitled to enforce" the Note. The Court erred when it failed to required either party to respond to the allegations made against the Proof of Claim and the opposition motion.

#### 3.   Article 9 and Transfers of Ownership and Other Interests in a Promissory Note

Initially, a note is owned by the payee to who it was issued.  Appellant addresses the original lender's failure to transfer the note in her opposition motion (Exhibit 11 page 6, lines 20 -28). If that payee seeks either to use the note as collateral or sell the note outright to a third party in a manner not within Article 3, Article 9 of the UCC governs, the sale or loan transaction and determines whether the purchaser of the note or creditor of the payee obtains a property interest in the note. See UCC §9-109(a)(3). Due to the fact that neither U.S. Bank N.A. nor GMACM was the initial payee of the Note, each was required to demonstrate facts sufficient to

establish its respective standing. Facts that would be sufficient for U.S. Bank are different from those that would be sufficient for GMACM. As to U.S. Bank, it had to show it had a colorable claim to receive payment pursuant to the Note, which it could accomplish either by showing it was a "person entitled to enforce" the Note under Article 3 or by showing that it had some ownership or other property interest in the Note. As to GMACM, it had to show that it was a "person entitled to enforce" the Note, or was the agent of such a person. The Court erred by not requiring either party to show they possessed ownership rights.

### 4. U.S. Code Titles 12 and 15 Apply

Under 15 U.S.C. §78c §10 the underlying promissory note is a Security since a promissory note cannot exceed the life span of nine months. The security instrument is governed by Regulation Z. Federal regulations 12 CFR §226.23 gives one the right of rescission, and 12 U.S.C. §226.23 Appendix H provides the framework. Appellant raised this issue in her opposition motion (Exhibit 11 page 6, lines 12-19).

### D. **U.S.Bank's Lack of Standing to Seek Relief from Automatic Stay**

U.S. Bank sought relief from the automatic stay to foreclose on the Property without first filing a proof of claim or an Amended proof of claim [Exhibit 11 page 6 line 1-7]. The automatic stay prevents "all proceedings relating for a foreclosure sale." Mann v. ADI Ivs., Inc. (In re Mann), 907 F.2d 923, 926-27 (9th Cir. 1990). There is no record of GMACM asking the court for relief from stay to substitute U.S. Bank N.A. for Bank of America, NA as their client. As a result, to take any action other than filing a proof of claim, in order to be introduced into these proceedings, U.S. Bank would have had to seek relief from the stay and U.S. Bank did not provide any evidence that they sought relief or if that relief was granted and a review of the docket on September 5, 2012 did not reveal any such petition to the court.

### 1. **Standing to Seek Relief From the Automatic Stay**

Under 11 U.S.C § 362(d), the bankruptcy court may grant relief from the automatic stay "[o]n request of a party in interest." The Bankruptcy Code does not define the term "party in interest." "Status as 'a party in

interest' under § 362(d) 'must be determined on a case-by-case basis, with reference to the interest asserted and how [that] interest is affected by the automatic stay.'" <u>Kronemyer</u>, 405 B.R. at 919 (quoting <u>In re Woodberry</u>, 383 B.R. 373, 378 (Bankr. D.S.C. 2008)).

This test expands or contracts to match the interests sought to be asserted. A servicer, for example, might be delegated all its principal's rights, or it could simply be asserting its separate right to be paid out of the mortgage payments. <u>Cf. CWCapital Asset Mgmt., LLC v. Chicago Props., LLC</u>, 610 F.3d 497, 500-01 (7th Cir. 2010) "[S]ervicers are parties in interest with standing by virtue of their pecuniary interest in collecting payments under the terms of the notes and mortgages they service."); <u>In re Woodberry</u>, 383 B.R. 373, 379 (Bankr. D.S.C. 2008). In either event, the servicer may have standing to request some relief from the automatic stay.

Appellant argued that U.S. Bank lacked standing in her opposition motion [Exhibit 11 page 5 line 23 – page 9, line 22]. Once raised, standing must be addressed either orally or in writing.

## 2.  U.S. Bank's Argument Regarding Standing

Because it failed to tender any evidence to show it was a "person entitled to enforce" the Note, or that it has an interest in the Note, U.S. Bank has not shown that it has any right to enforce the Mortgage securing the Note. In granting U.S. Bank's motion for relief from stay, the bankruptcy court's sole finding was the Appellant had not made a payment in 54-months. The court did not rule on standing, or party of interest. According to the bankruptcy court, who possessed or held rights to the Note was irrelevant; all that was relevant is that the Debtor had not made a payment in 54-months. The Court assumed that the Movant U.S. Bank was harmed by the Appellant's refusal to pay this disputed debt, but it erred when it ruled that the amount of the debt was more important than the legal principles of standing and real party of interest.

The BAP may review the bankruptcy court's determinations regarding stay relief for an abuse of discretion, <u>Kronemyer</u>, 405 B.R. at 919. The abuse of discretion test involves two distinct determinations: first, whether the court applied the correct legal standard; and second, whether the factual findings supporting the

legal analysis were clearly erroneous. United States v. Hinkson, 585 F.3d 1247, 1261-63 (9th Cir. 2009) (en banc).

*Test 1.  Did the Bankruptcy Court apply the correct legal standard?*  No.

The Bankruptcy Court failed to require either U.S. Bank or GMAC, LLC to establish an ownership or other property interest in the Note; thus its asserted rights under the Mortgage did not constitute a colorable claim to enforce a right against property of the estate. Without any evidence tending to show it was a "person entitled to enforce" the Note, or that it has an interest in the Note, U.S. Bank has not shown that it has any right to enforce the Mortgage securing the Note.

U.S. Bank and GMACM also admit that they did not review Debtor/ Appellant's opposition motion and were not prepared to submit evidence that they had a colorable claim, so the Court erred by granting them relief without first requiring them to prove their right to seek relief. Without these rights, U.S. Bank was not entitled to relief; U.S. Bank cannot meet the threshold showing of a colorable claim to the Property that would give it prudential standing to seek stay relief or to qualify as a real party in interest. Accordingly, the Bankruptcy Court erred when it granted U.S. Bank's motion for relief from stay.

*Test 2.  Were the factual findings supporting the legal analysis erroneous?*  Yes.

No analysis was performed. The Court admits that it did not review the Appellant's arguments [Exhibit 14. Page 1, line 18]. Therefore, the Court cannot claim that it performed any legal analysis.

## 3.   U.S. Bank's Lack of Connection to the Note

As a matter of law, the bankruptcy court applied an incorrect legal principle in determining that U.S. Bank had an ownership or other property interest in the Note. Had the bankruptcy court applied the correct test, it would have found that U.S. Banks had not established such an interest, and thus its asserted rights under the Mortgage did not constitute a colorable claim to enforce a right against property of the estate. Appellant/ Debtor provided specific factual allegations in her litigation and opposition motions to raise questions about

any bank offered by GMACM as the lender above a speculative level.[22] In the face of Appellants specific factual allegations, U.S. Bank's and GMACM's assertion that their POC suffices to establish their ownership of the Note is not viable. In re Javaheri v. JP Morgan Chanse Bank N.A. et al[23]

Under the common law generally, the transfer of a mortgage without the transfer of the obligation it secures renders the mortgage ineffective and unenforceable in the hands of the transferee. Restatement (Third) of Property (Mortgages) § 5.4 cmt. e (1997) ("in general a mortgage is unenforceable if it is held by one who has no right to enforce the secured obligation").[24] As stated in a leading real property treatise:

> When a note is split from a deed of trust "the note becomes, as a practical matter, unsecured." Restatement (Third) of Property (Mortgage) § 5.4 cmt. a (1997). Additionally, if the deed of trust was assigned without the note, then the assignee, "having no interest in the underlying debt or obligation, has a worthless piece of paper."

Richard R. Powell, Powell on Real Property, § 37.27[2] (2000). Cf. In re Foreclosure Cases, 521 F. Supp. 2d 650, 653 (S.D. Ohio 2007) (finding that one who did not acquire the note which the mortgage secured is not entitled to enforce the lien of the mortgage); In re Mims, 438 B.R. 52, 56 (Bankr. S.D.N.Y. 2010) ("Under New York law 'foreclosure of a mortgage may not be brought by one who has no title to it and absent transfer of the debt, the assignment of the mortgage is a nullity.'") (quoting Kluge v. Fugazy, 536 N.Y.S.2d 92, 93 (N.Y. App. Div. 1988)). On Januray 19, 2011 Bank of America was put on notice in the State of California. [Exhibit 5, Page 48, lines 1-15]. Here the United States Trustee wrote:

> "The UST has properly established that she has good cause for examining the 2004 examinations of BAC representatives. The subject matter of the examinations – the basis for the validity of BAC's various proofs of claims – is pretty clearly related to the debtor's liabilities ... The UST has more than mere "curiosity" about potential abuse. Rather, the UST's concerns stem from a foundation suggesting the possible existence of abuse in the proper claim process[25]. ... Where complaints are made about common abuses in bankruptcy cases that are not unique to the facts and issues of just two cases, the UST has cause to inquire further to determine if there are any basis for the complaints received."

---

[22] Exhibit 5. Objection to POC page 4 lines 18 – 24. Opposition Motion page 7 lines 5-9.
[23] Case No. CV10 8185 ODW (FFMx) decided on June 2, 2011.
[24] It does not, or course, affect the obligations which have been secured; only the rights to security for those obligations are affected.

This rule appears to be the common law rule. See, e.g., Restatement (Third) of Property (Mortgage) § 5.4 (1997); Carpenter v. Longan, 83 U.S. 271, 274-75 (1872) ("The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."); Orman v. North Alabama Assets Co., 204 F. 289, 293 (N.D. Ala. 1913); Rockford Trust Co. v. Purtell, 183 Ark. 918 (1931).[26]

As a result, to show a colorable claim against the Property, U.S. Bank had to show that it had some interest in the Note, either as a holder, as some other "person entitled to enforce," or that it was someone who held some ownership or other interest in the Note. See In re Hwang, 438 B.R. 661, 665 (C.D. Cal. 2010) (finding that holder of note has real party in interest status). **None of the exhibits attached to U.S. Banks motion for relief from automatic stay, however, establish its status as the holder, as a "person entitled to enforce," or as an entity with any ownership or other interest in the Note.**

U.S. Bank admits that it did not respond to the claims raised in Debtor's motion. This does not meet the colorable claim standard and U.S. Bank did not meet the burden of establishing its status as a real party in interest allowing it to move for relief from stay, the only way in which U.S. Bank could have satisfied its prudential standing requirement. They showed no record of how the loan was transferred from any of the original parties to the original transaction to them.

California is a non-judicial state. This particular case was moved from non-judicial status to judicial status on October 28, 2008 when the Appellant originated case 30-2008-00217056 against GMACM and MERS, the original foreclosing entity. That initial filing was filed as complex litigation and read simply:

> *"I, Karen M. Rozier, petition the court for a judicial hearing regarding the legality of the proposed seizure and sale of my real and personal property as described in the Exhibit (A) Notice of Default.*
>
> *I declare that I am the rightful owner of the property located at 7957 Dahlia Circle Buena Park, California as described by Exhibit (B)."*

---

[26] The Restatement also sets up a general presumption that the transfer of a mortgage normally includes an assignment of the obligation it secured. Id. § 5.4(b) ("Except as otherwise required by the Uniform Commercial Code, a transfer of a mortgage also transfers the obligation the mortgage secures unless the parties to the transfer agree otherwise").

Recently, the Courts have sided with the Appellant that the circumstances regarding her transaction precludes any non-judicial foreclosure. In <u>Niday v. GMAC</u> (Oregon Court of Appeals, Case CV10020001), the Justices Opinion dated July 18, 2012 is right on point. They decided that if evidence indicated the beneficiary assigned its interest through MERS without recording the transfer, non-judicial foreclosure is not available. Here the Justices wrote:

> In sum, we conclude that the "beneficiary" of a trust deed for purposes of the OTDA is the person named or otherwise designated in the trust deed as the person to whom the secured obligation is owed--in this case, the original lender. We further conclude that, because there is evidence that the beneficiary assigned its interest in the trust deed without recording that assignment, there is a genuine issue of material fact on this summary judgment record as to whether ORS 86.735(1), a predicate to nonjudicial foreclosure, has been satisfied. We emphasize, however, that our holding concerns only the requirements for nonjudicial foreclosure. Cf. ORS 86.710 (beneficiary of the trust deed retains the option of judicial foreclosure). And the import of our holding is this: A beneficiary that uses MERS to avoid publicly recording assignments of a trust deed cannot avail itself of a nonjudicial foreclosure process that requires that very thing--publicly recorded assignments.

Although California has sent mixed messages regarding bifurcation of Note and Mortgage, <u>In re Salazar</u>, ___ B.R.___, 2011 WL 1398478 at *4 (Bankr. S.D. Cal. 2011) the courts held that valid foreclosure under California law requires both that the foreclosing party be entitled to "payment of the secured debt" and that its "status as foreclosing beneficiary appear before the sale in the public record title for the [p]roperty.").

The Court was correct that Debtor/ Appellant had not made a payment to the so-called debtor since they returned the last payment she sent to them in February 2008. [See Exhibit 14. page 3, lines 3-8]. The Court erred in concluding that this non-payment status was the only thing that mattered in its decision-making process. The Court should have ignored the alleged debt and followed the mortgage. Under California law, to perfect the transfer of mortgage paper as collateral the owner should physically deliver the note the transferee. <u>Bear v Golden Plan of California</u>, Inc. 829 F.2d 705, 709 (9th Cir. 1986). Without physical transfer, the sale of the note could be invalid as a fraudulent conveyance, Cal. Civ Code § 3440, or as unperfected, Cal. Co. Code §§9313-9314. <u>See</u> Roger Bernhardt, California Mortgages and Deeds of Trusts, and Foreclosure Litigation §1.26 (4th ed. 2009). The note here specifically identified the party to whom it was payable, WMC Mortgage

Company, and the note therefore could not be transferred unless the note is endorsed. See Cal. Com 31-09,
3201, 3201, 3204. The elements attached to the Proof of Claim do not establish that WMC Mortgage Company
endorsed or sold either the rescinded[27] December 2005 note or the valid, enforceable June 2006 note to any
other party. Appellant/ Debtor has argued that there is no secured debt, not because of the bifurcation of the
Note theory but because she actually cancelled the Note that was secured by Deed of Trust and signed a new
Note that was not secured by Deed of Trust [Exhibit 16. Motion to Deny GMAC Mortgage LLC's Request for
Special Notice and Service of Papers and Reservations of Rights, page 2 lines 25-27.] [28]. Who owns the note
and the right to collect and enforce the Deed of Trust is a compelling issue of material fact which should be
evaluated during an evidentiary hearing and the court erred by ruling in U.S. Bank's favor considering the
adversarial nature of this particular transaction.

        In particular, because it did not offer any proof, U.S. Bank did not establish that it was a holder of any
valid Note secured by Deed of Trust, or a "person entitled to enforce" any valid Note. In addition, even if
admissible, the final purported assignment of the Mortgage was insufficient under Article 9 to support a
conclusion that U.S. Bank holds any interest, ownership or otherwise, in the Note. Put another way, without
any evidence tending to show it was a "person entitled to enforce" the Note, or that it has an interest in the
Note, U.S. Bank has shown no right to enforce the Mortgage securing the Note. Without these rights, U.S.
Bank cannot make the threshold showing of a colorable claim to the Property that would give it prudential
standing to seek stay relief or to qualify as a real party in interest.

## E.  GMAC, LLC's Lack of Standing to File a Proof Of Claim

        Appellant/ Debtor Rozier challenged the Proof of Claim and challenged GMACM's right to submit
the proof of claim. The filing of an objection to a claim initiates a contested matter, subject to the procedures
set forth in Rule 9014. See Advisory Committee Notes accompanying Rule 3007. In contested matters, a
bankruptcy court must make findings of fact, either orally on the record, or in a written decision.  See Rule

---

[27] and thus void

[28] See also Exhibit 5, page 6 lines 6-19.  See also Debtor's Exhibit 11, page 2 line 25 through page 3 line 19.

9014(c) (incorporating Rule 7052, which in turn incorporates Civil Rule 52.) These findings must be sufficient to enable a reviewing court to determine the factual basis for the court's ruling. Vance v. Am. Hawaii Cruises, Inc., 789 F.2d 790, 792 (9th Cir.1986).

An order overruling a claim objection or stay relief can raise legal issues such as the proper construction of statutes and rules, and the BAP can review that decision de novo, as well as factual issues (such as whether the facts establish compliance with particular statutes or rules), which the BAP reviews for clear error. Campbell v. Verizon Wireless (In re Campbell), 336 B.R. 430, 434 (9th Cir. BAP 2005); Heath v. Am. Express Travel Related Servs. Co. (In re Heath), 331 B.R. 424, 428-29 (9th Cir. BAP 2005). In this particular case, the bankruptcy court completely ignored Appellant's objection to GMACM's proof of claim; it did so without making any findings or even any statements regarding the factual basis for the court's conclusion that GMACM had standing to file the proof of claim. It simply held that the debtor being 54-months delinquent was sufficient. That was a fatal error and one which should be overturned.

Even when a bankruptcy court does not make formal findings, however, the BAP may conduct appellate review "if a complete understanding of the issues may be obtained from the record as a whole or if there can be no genuine dispute about omitted findings." Gardenhire v. Internal Revenue Serv. (In re Gardenhire), 220 B.R. 376, 380 (9th Cir. BAP 1998), reversed on other grounds, 209 F.3d 1145 (9th Cir. 2000) (citing Vance, 789 F.2d at 792; Magna Weld Sales Co. v. Magna Alloys & Research Pty., Ltd., 545 F.2d 668, 671 (9th Cir. 1976)). See also Jess v.Carey (In re Jess), 169 F.3d 1204, 1208-09 (9th Cir. 1999); Swanson v. Levy, 509 F.2d 859, 860-61 (9th Cir. 1975). After such a review, however, when the record does not contain a clear basis for the court's ruling, the BAP must vacate the lower court's order and remand for further proceedings. See, e.g., Alpha Distr. Co. v. Jack Daniel Distillery, 454 F.2d 442, 452-53 (9th Cir. 1972); Canadian Comm'l Bank v. Hotel Hollywood (In re Hotel Hollywood),95 B.R. 130, 132-34 (9th Cir. BAP 1988).

If the BAP reviews the complete record, they will find that despite numerous opportunities to do so and in multiple venues (bankruptcy court, Superior Court of California, federal court), neither party claiming

to have an interest in Appellants real property – GMACM or U.S. Bank N.A.[29] – have submitted anything on record that established GMACM's standing to file any proof of claim.

GMACM has never argued that Ms. Rozier did not rescind the December 2005 note. Instead, in their Exhibit 17 Defendants GMAC Mortgage, LLC and Mortgage Electronic Registration Systems, Inc's Notice of Motion and Motion to Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim Upon Which Relief Can be Granted in Case No.: SACV09-961 DOC (RNBx)[30], they argue that Ms. Rozier was mistaken when she argues in her First Amended Complaint that a rescinded note could not later be modified. The Court did not make a ruling of fact on this issue. As discussed in Section IV. Subparagraph 6 above (page 4), no legal rescission of rescission rights was allowed. GMACM erred in its reasoning and the Court erred by not impartially reviewing the facts and arguments before rendering a decision.

The May 2006 note is governed by Article 3 of the UCC, as was the rescinded December 2005 Note. As such, when Debtor/ Appellant challenged the alleged servicer's standing to file a proof of claim regarding a note governed by Article 3 of the UCC, that servicer must show it has an agency relationship with a "person entitled to enforce" the note that is the basis of the claim. If it does not, then the servicer has not shown that it has standing to file the proof of claim. See, e.g., In re Minbatiwalla, 424 B.R. 104, 108-11 (Bankr. S.D.N.Y. 2010); Hayes, 393 B.R. at 266-70; In re Parrish, 326 B.R. 708, 720-21 (Bankr. N.D. Ohio 2005).

The bankruptcy court concluded as a matter of law that the identity of the person entitled to enforce the Note was irrelevant. Its analysis followed the Mortgage instead of the Note. This was a fatal error. In the context of a claim objection, both the injury-in-fact requirement of constitutional standing and the real party in interest requirement of prudential standing hinge on who holds the right to payment under the Note and hence the right to enforce the Note. In re Weisband, 427 B.R. 13, 18- 19 (Bankr. D. Ariz. 2010). See U-Haul, 793 F.2d at 1038 (holding that real party in interest is the "party to whom the relevant substantive law grants a

---

[29] Prior to foreclosure, Litton Loans claimed to own the loan. [Exhibit 18. Validation of Debt]. Originally Proof of Claim identified GMAC Mortgage, LLC as the lender. GMAC Mortgage, LLC has previously identified MERS as the lender. When the bankruptcy was initiated, GMAC Mortgage identified Bank of America, N.A. as the lender, but claims those rights were transferred to U.S. Bank while the property was under bankruptcy protection, also a violation of the automatic stay provision of the bankruptcy law. In any event, not once have they offered any shred of evidence that even if there was a valid, enforceable Note secured by Deed of Trust that GMAC Mortgage, LLC has any right to submit a proof of claim.
[30] Debtor included this case in her Statement of Related Cases, which is provided with Exhibit 15.

cause of action"). In other words, U.S. Bank (or GMACM as U.S. Bank's servicer) must be a "person entitled to enforce" the Note in order to qualify as a creditor (or creditor's agent) entitled to file a proof of claim. Otherwise, the estate may pay funds to a stranger to the case; indeed, the primary purpose of the real party in interest doctrine is to ensure that such mistaken payments do not occur.

The court abused its discretion when it instructed the Debtor/ Appellant to seek relief in the lower court. [Exhibit 14. page 4 lines 16-21. Page 5 lines 9-10 and 18-20.] As stated in <u>Katchen v. Landy</u>, 382 U.S. 323(1966), the normal rules of res judicata and collateral estoppel apply to the decisions of bankruptcy courts. **A creditor who offers a proof of claim and demands its allowance is bound by what is judicially determined; and if his claim is rejected, its validity may not be relitigated in another proceeding on the claim.** *In short, a claims objection proceeding in bankruptcy takes the place of the state court lawsuit or other action because such actions are presumptively stayed by the operation of § 362.36.* When ruling on such an objection, the bankruptcy court makes a substantive ruling that binds the parties in all other proceedings and may finally adjudicate the parties' underlying rights. As stated in <u>Katchen</u>:

> The bankruptcy courts "have summary jurisdiction to adjudicate controversies relating to property over which they have actual or constructive possession."

<u>Id.</u> at 327 (quoting <u>Thompson v. Magnolia Petroleum Co.</u>, 309 U.S. 478, 481 (1940)). Courts have adopted this characterization of the effect of claim objection proceedings under the somewhat different, and more expansive, jurisdictional structure in place under the 1978 Bankruptcy Code. <u>EDP Med. Computer Sys., Inc. v. United States</u>, 480 F.3d 621, 624 (2d Cir. 2007); <u>Siegel v. Fed. Home Loan Mortg. Corp.</u>, 143 F.3d 525, 529-30 (9th Cir. 1998); <u>Bank of Lafayette v. Baudoin (In re Baudoin)</u>, 981 F.2d 736, 742 (5th Cir. 1993).

The bankruptcy court has exclusive jurisdiction over the estate property that will be distributed on such claim, 28 U.S.C. § 1334(e), and exclusive jurisdiction over the distribution of estate property. GMACM did file a proof of claim and they claimed that Bank of America, N.A. was the Lender. Appellant disputed that claim. With no hearing on the matter, GMACM then filed a motion for relief from stay in the name of U.S. Bank NA without first properly asking leave of the court to substitute U.S. Bank for Bank of America while the property was protected by the automatic stay provision of bankruptcy laws. Appellant also challenged this. The Court erred when it refuse to review Appellant's arguments. Appellant's real property constitutes a

significant portion of her estate and thus of concern to these proceedings. The bankruptcy court erred by

granting U.S. Bank relief from the automatic stay without first requiring that U.S. Bank or its alleged servicing

GMACM prove that either party had standing or was a "real party of interest" to bring forth a Proof of Claim

regarding her real property.

Standing is an independent threshold issue in all federal civil litigation. <u>Warth</u>, 422 U.S. at 498;

County of Kern, 581 F.3d at 845. The plaintiff or movant bears the burden of proof with respect to its own

standing, and U.S Bank and GMACM, did not meet that burden in this case. "Real party in interest:" doctrine

melds procedural and substantive law; it ensures that the party bringing the action owns or has rights that can

be vindicated by proving the elements of the claim for relief asserted. Again both U.S. Bank and GMACM

failed to prove that either was a "real party in interest".


### F. U.S. Bank's Failure to Make a Prima Facie Case

The Court relied solely on the sworn declaration of one Mini Ali to deprive the Appellant of her real

property without demanding any proof that this person was qualified and authorized to render such an opinion.

As per the newly discovered evidence presented in Exhibit 4. Declaration in support of Motion to Stay Pending

Appeal, Ms. Ali was not authorized to present any opinion to the court. Even if it may have been reasonable

for the court to reject the outdated appraisal as to value, it was unreasonable and thus an abuse of discretion for

the court to reject the appraisal as to the size of the house. The Court made no ruling on the issue of whether or

not Appellee made a prima facie case, which was an error.


### G. Inadequate/Improper Representation

Debtor presented herself as a Pro Se Debtor and prepared her Motion for Relief From Automatic Stay

with no outside assistance. Debtor checked into the courtroom early and was informed that no opposition

motion was on the calendar. Debtor went to the Clerk's office and less than ten minutes later some unknown

stranger presented himself to the court as representing the Debtor's interest[31]. Debtor has filed a formal complaint with the California Bar. The Court erred in advancing my case from Docket #42 to the front of the docket as Item #1 given that Debtor had checked in and had not yet officially authorized anyone to represent her in these proceedings. The court erred in allowing this unknown person to represent my interest when there was no record of Debtor agreeing to such representation. When Debtor entered the courtroom, she was not asked if the attorney represented her but instead attacked by the Court. [Exhibit 14. Page 1, line 25, also Page 2, line 24.] Debtor was sent downstairs by the Court Reporter to obtain a conformed copy from the Clerk's Office. When Debtor left courtroom, she was number 42 on the docket. Debtor did not authorize anyone, including the court, to advance her on the docket in her absence.]

## IV. CONCLUSION

In the "Final Report of the Bankruptcy Foreclosure Scam Task Force" completed on May 1998 of which The Honorable Catherine Bauer (who presided over the stay relief hearing) represented Bank of America[32] as their Senior Counsel, the Task Force defined "foreclosure scam" as "the filing of multiple or fraudulent bankruptcy petitions to delay residential foreclosures, without any intent to complete the cases." (Page 6) The Task Force went so far as to compare this so-called homeowner fraud and abuse as "Like the HIV virus" in its recommendations for Additional Measures. The Task Force also recommended major modification of the automatic stay provisioning, almost to the point of gutting for citizens who have ever filed bankruptcy scheduling the same real property. Now comes The Honorable Judge Bauer sitting on the bench perfecting the foreclosure scam which has been proven to be not by the design of the homeowners, but rather by the banks, with Bank of America, U.S. Bank and GMACM being three of the biggest offenders, not to mention the closed down WMC Mortgage, LLC who originated the loan. As Mr. Adam Levitin penned in his Written Testimony Before the House Financial Services Committee on November 18, 2010[33]:

---

[31] This is according to Debtor's spouse who was in the courtroom at the time.
[32] At the time, Bank of America had a contested proof of claim on the property.
[33] Exhibit 19 Written Testimony of Adam J. Levitin, Associate Professor of Law Georgetown University Law Center Before the House Financial Services Committee Subcommittee on Housing and Community Opportunity. "Robo-Signing[sp], Chain of Title, Loss Mitigation, and Other Issues in Mortgage Servicing", November 18, 2010, 10:00am

"Irrespective of whether a debt is owed, there are rules about who can collect that debt and how. The rules of real estate transfers and foreclosures have some of the oldest pedigrees of any laws. They are the product of centuries of common law wisdom, balancing equities between borrowers and lenders, ensuring procedural fairness and protecting against fraud." ... "To argue that problems in the foreclosure process are irrelevant because the homeowner owes someone a debt is to declare that the banks are above the law."

The Court erred when it refused to review Appellant's opposition motion but instead ruled:

> THE COURT: Yeah, you haven't paid. That's cause right there. You haven't paid in 54 months. That's cause.

The Court erred when it failed to require Appellees U.S. Bank, N.A. and GMACM to prove they had standing to bring the motion for relief from automatic stay or to prove that they are a real party of interest with respect to Appellant's real property. Banks are not above the law. The only reason Debtor still possesses her real property is because she requested and received Congressional intervention. It took an act of Congress, that is, the actions of my Congressman, to stay the sale of my real property due to the lower court's unwillingness or inability to do its job. Most American won't seek redress from Congress, but this Appellate knows she is within the law and that U.S. Bank and GMACM are breaking the law and she respectfully requests that the BAP direct the lower court to follow the law.

For all of the foregoing reasons, Appellant respectfully request that the BAP VACATE the order granting U.S.Bank's relief from stay motion and that the Relief Motion and Objection to Proof of Claim be REMANDED for further proceedings consistent with this opinion.

Dated: September 5, 2012

Respectfully Submitted:

Karen M. Rozier, Pro Se Debtor

APPELLANT'S OPENING BRIEF - Page 30 of 30

Case CC-12-1359

# CERTIFICATION REQUIRED BY BAP RULE 8010(a)-1(b)

# CERTIFICATION AS TO INTERESTED PARTIES

The undersigned certifies that the following parties have an interest in the outcome of this appeal. These representations are made to enable judges of the Appellate Panel to evaluate possible disqualification or recusal:

**KAREN MICHELE ROZIER**, *(Debtor- Appellant)*

**U.S. BANK NATIONAL ASSOCIATION** as Trustee, as successor in interest to Bank of America National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee for RAAC 2007 RP1, *(Appellee)*

Unknown Investor identified in the MERS database as the Lender.

GMAC Mortgage, LLC as servicer to Bank of America, N.A.

Bank of America National Association, Submitted POC for real property.

Litton Loans Corporation, Previously provided Appellant with Validation of Debt.

GE-WMC as successor to WMC Mortgage Corporation.

Mortgage Electronic Registration Systems, Inc., Previously provided Appellant with Validation of Debt.

Internal Revenue Service, Priority Secured lien on property.

Executed on September 5, 2012 at Buena Park, California

*Karen M. Rozier*

Karen M. Rozier, Pro Se Appellant

Case CC-12-1359

# Certification Required by Local Bankruptcy Rule 8010-1(c)

# FOR THE UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

CASE: CC-12-1259

IN RE KAREN MICHELE ROZIER

The undersigned certifies that the following are known related cases and appeals:

8:08-bk-13583-RK, United States Bankruptcy Court Central District of California, withdrawn by debtor.

30-2008-00217056, Karen M. Rozier v. GMAC Mortgage, LLC and Mortgage Electronic Registration Systems, Inc., Superior Court of California, Santa Ana Division, Stayed pending federal case.

SACV09-961 DOC (RNBx), Karen M. Rozier v. GMAC Mortgage, LLC and Mortgage Electronic Registration Systems, Inc., U.S. District Court Central District of California (Santa Ana), dismissed with leave to amend.

Executed on September 5, 2012 at Buena Park, California

Karen M. Rozier, Pro Se Appellant

# EXHIBIT 5

# EXHIBIT 5

Branch :F32,User :W019                                                          Station ID :NH1Y

RECORDING REQUESTED BY:
**Executive Trustee Services, LLC dba ETS Services, LLC**

AND WHEN RECORDED MAIL TO:
**GMAC MORTGAGE, LLC**
**FKA GMAC MORTGAGE CORPORATION**
**1100 VIRGINIA DRIVE**
**FORT WASHINGTON, PA 19034**

**Forward Tax Statements to**
**the address given above**

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

9.00

2012000564076 10:22 am 09/26/12
117 404 T09  2
0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

TS # GM-278944-C
LOAN # 0810021144          INVESTOR #: 10895731
TITLE ORDER # 110113731-CA-MSI

SPACE ABOVE LINE FOR RECORDER'S USE

## TRUSTEE'S DEED UPON SALE

APN 136-241-04          TRANSFER TAX: $00.00
"THIS TRANSACTION IS EXEMPT FROM THE REQUIREMENTS OF THE REVENUE AND TAXATION CODE, SECTION 480.3"
The Grantee Herein Was The Foreclosing Beneficiary.
The Amount Of The Unpaid Debt was $837,094.53
The Amount Paid By The Grantee was $348,500.00
Said Property Is In The City Of BUENA PARK, County of Orange

**Executive Trustee Services, LLC dba ETS Services, LLC**, as Trustee, (whereas so designated in the Deed of Trust hereunder more particularly described or as duly appointed Trustee) does hereby **GRANT** and **CONVEY** to

**Bank of America, National Association as successor by merger to LaSalle Bank National Association as Trustee RAMP 2007RP1 by Residential Funding Company, LLC fka Residential Funding Corporation, Attorney-in-Fact**

 (herein called Grantee) but without covenant or warranty, expressed or implied, all right title and interest conveyed to and now held by it as Trustee under the Deed of Trust in and to the property situated in the county of **Orange**, State of California, described as follows:

**LOT(S) 4 OF TRACT NO. 2630, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE,**
**STATE OF CALIFORNIA AS PER MAP RECORDED IN BOOK 77, PAGE(S) 10-12**
**INCLUSIVE OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER**
**OF SAID COUNTY.**

This conveyance is made in compliance with the terms and provisions of the Deed of Trust executed by **KAREN M. ROZIER, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY** as Trustor, dated **12/23/2005** of the Official Records in the office of the Recorder of Orange, California under the authority and powers vested in the Trustee designated in the Deed of Trust or as the duly appointed Trustee, default having occurred under the Deed of Trust pursuant to the Notice of Default and Election to Sell under the Deed of Trust recorded on **01/04/2006** , instrument number **2006000006922** (or Book XX, Page XX) of Official records. Trustee having complied with all applicable statutory requirements of the State of California and performed all duties required by the Deed of Trust including sending a Notice of Default and Election to Sell within ten days after its recording and a Notice of Sale at least twenty days prior to the Sale Date by certified mail, postage pre-paid to each person entitled to notice in compliance with California Civil Code 2924b.

[Page 1 of 2]

12-12020-mg    Doc 7730    Filed 10/31/14    Entered 11/10/14 12:16:23    Main Document
Pg 80 of 90

(Page 6    Case 2:03-mk-2D2277CB4-1Bcoc Filed 09/08/02419Enter Eh09/08/02/27/157 11B12 Exhib D4Sc
Main Docum Pgn18 of P88e 47 of 87

# TRUSTEE'S DEED UPON SALE

Trustee's Deed
T.S.# GM-278944-C
Loan #███████1144
Title Order # 110113731-CA-MSI

All requirements per California Statutes regarding the mailing, personal delivery and publication of copies of Notice of Default and Election to Sell under Deed of Trust and Notice of Trustee's Sale, and the posting of copies of Notice of Trustee's Sale have been complied with. Trustee, in compliance with said Notice of Trustee's sale and in exercise of its powers under said Deed of Trust sold said real property at public auction on **09/24/2012**. Grantee, being the highest bidder at said sale became the purchaser of said property for the amount bid, being _____ in lawful money of the United States, in pro per, receipt there of is hereby acknowledged in full/partial satisfaction of the debt secured by said Deed of Trust.

In witness thereof, **Executive Trustee Services, LLC dba ETS Services, LLC**, as Trustee, has this day, caused its name to be hereunto affixed by its officer thereunto duly authorized by its corporation by-laws

Date: 9-24-12

**Executive Trustee Services, LLC dba ETS Services, LLC**

"This instrument is being recorded as an ACCOMMODATION ONLY, with no Representation as to its effect upon title"

By: _____
Luis Rodriguez, Authorized Officer

State of California    } S.S.
County of Los Angeles  }

On 9-24-2012 before me, **Sally Beltran** Notary Public, personally appeared Luis Rodriguez who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
Sally Beltran

SALLY BELTRAN
Commission # 1962270
Notary Public - California
Los Angeles County
My Comm. Expires Dec 1, 2015

[Page 2 of 2]

# EXHIBIT 6

# EXHIBIT 6

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:
EXECUTIVE TRUSTEE SERVICES, LLC
2255 NORTH ONTARIO STREET #400
BURBANK, CA 91504-3120

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

|||||||||||||||||||||||||||||||||||||||||||||||| 12.00
* S R 0 0 0 5 2 1 2 4 8 3 $ *
2012000604833 2:17 pm 10/04/12
117 404 N38    2
0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

LOAN# 0810021144
T.S.#  GM-278944-C
136-241-04
        11013731

## NOTICE OF RESCISSION OF TRUSTEE'S DEED UPON SALE

This Notice of Rescission is made this day Oct 03, 2012 with respect to the following:

1.) THAT Executive Trustee Services, LLC dba ETS Services, LLC is the duly appointed Trustee under that certain Deed of Trust dated 12/23/2005 and recorded 01/04/2006 as instrument number 2006000006922 in book XX page XX wherein KAREN M. ROZIER, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY are named as trustors, WESTWOOD ASSOCIATES, A CALIFORNIA CORPORATION is named as trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR WMC MORTGAGE CORP., A CORPORATION ; is named as beneficiary;

2.) THAT Bank of America, National Association as successor by merger to LaSalle Bank National Association as Trustee RAMP 2007RP1 is the beneficiary of record under that Deed of Trust by virtue of an Assignment of Beneficial Interest recorded

3.) THAT THE DEED OF TRUST encumbers real property located in the County of Orange, State of CA, described as follows:

LOT(S) 4 OF TRACT NO. 2630, IN THE CITY OF BUENA PARK, COUNTY OF ORANGE,
STATE OF CALIFORNIA AS PER MAP RECORDED IN BOOK 77, PAGE(S) 10-12
INCLUSIVE OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER
OF SAID COUNTY.

4.) THAT BY VIRTUE OF a default under the terms of the Deed of Trust, the beneficiary did declare a default, as set forth in a Notice of Default recorded 04/11/2011 as instrument number 2011-181720 in book/page in the office of the Recorder of Orange County, State of CA;

LOAN# 0810021144
T.S.# GM-278944-C

5.) THAT THE TRUSTEE has been informed by the Beneficiary that the beneficiary
desires to rescind the Trustee's Deed recorded upon the foreclosure sale which was
conducted in error due to a failure to communicate timely, notice of conditions which
would have warranted a cancellation of the foreclosure which did occur on 09/24/2012;

6.) THAT THE EXPRESS PURPOSE of this Notice of Rescission is to return the
priority and existence of all title and lien holders to the status quo-ante as existed prior to
the trustee's sale;

NOW THEREFORE, THE UNDERSIGNED HEREBY RESCINDS THE TRUSTEE'S
SALE AND PURPORTED TRUSTEE'S DEED UPON SALE AND HEREBY
ADVISES ALL PERSONS THAT THE TRUSTEE'S DEED UPON SALE DATED
09/24/2012 AND RECORDED 09/26/2012 AS INSTRUMENT NUMBER
201200056476 IN THE COUNTY OF  Orange , STATE OF CA, FROM Executive
Trustee Services, LLC dba ETS Services, LLC (TRUSTEE) TO Bank of America,
National Association as successor by merger to LaSalle Bank National Association as
Trustee RAMP 2007RP1 by Residential Funding Company, LLC fka Residential
Funding Corporation, Attorney-in-Fact (GRANTEE) IS HEREBY RESCINDED, AND
IS AND SHALL BE OF NO FORCE AND EFFECT WHATSOEVER.  THE DEED OF
TRUST DATED 12/23/2005 , RECORDED 01/04/2006 AS INSTRUMENT NUMBER
2006000006922 IN BOOK XX , PAGE XX , IS IN FULL FORCE AND EFFECT.

Executive Trustee Services, LLC dba ETS Services, LLC

Luis Rodriguez, Authorized Officer

State of California          } S.S.
County of  Los Angeles  }

On Oct 03, 2012 ,before me  Sally Beltran, Notary Public, personally appeared Luis Rodriguez,  who proved to me on
the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Sally Beltran

SALLY BELTRAN
Commission # 1982270
Notary Public - California
Los Angeles County
My Comm. Expires Dec 1, 2015

# EXHIBIT 7

# EXHIBIT 7

**Subject:**   8:11-bk-21727

**From:**   james joseph (jamesjosephtrustee@gmail.com)

**To:**   rozier.karen@yahoo.com;

**Date:**   Thursday, October 30, 2014 11:41 AM


As trustee in the above case, I do not object to Karen Michele Rozier asserting any claims the estate may posses in In re Residential Capital,case, 12-11020(MG), so long as any distribution thereon is held pending my further instruction.    James J. Joseph..

# EXHIBIT 8

# EXHIBIT 8

# GMAC Mortgage

February 17, 2011

Karen Rozier
7957 Dahlia Cir
Buena Park CA  90620

RE:    Account Number        0810021144
       Property Address      7957 Dahlia Cir
                             Buena Park CA  90620

Dear Karen Rozier:

This letter is in response to your Qualified Written Request ("QWR") dated February 4, 2011 in which additional documentation on the above referenced account is requested. This request was received in our office February 7, 2011.

The documents sent January 20, 2011 in response to the previous inquiry dated January 3, 2011, relate to the servicing of the account, as the law, specifically the Real Estate Settlement Practices Act ("RESPA") requires.

The current Master Servicer is: Residential Funding Company LLC. The current owner of the loan is: Lasalle Bank, NA., as Trustee, 135 South LaSalle Street, Suite 1511, Chicago, IL, 60603, phone number 312-992-4956. However, the loan is currently being subserviced by GMAC Mortgage LLC and all legal inquiries should be directed to the subservicer.

This loan is registered with MERS, MIN # 100136300114324683; therefore, there are no assignments. The loan originated December 23, 2005 with WMC Mortgage Corporation and transferred to GMAC Mortgage, LLC for servicing on September 25, 2006.

The information sent to you on January 20, 2011 provided validation of the debt reported to the four major credit reporting agencies. As a result of our reinvestigation, GMAC Mortgage LLC finds no reason or warrant to revise any information previously reported to the credit reporting agencies.

Furthermore, any correspondence/disputes in regards to this account and this issue, without additional or alternate information and the appropriate documents to support your assertions, will not be investigated further.

If you have additional questions, please contact Customer Care at 1-800-766-4622 between the hours of 6:00 am to 10:00 pm CT Monday through Friday and 9:00 am to 1:00 pm CT on Saturday.

Customer Care/KAB
Loan Servicing

NOTICE - THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE

www.gmacmortgage.com
3451 Hammond Ave
Waterloo, IA 50702

# EXHIBIT 9

# EXHIBIT 9

EXECUTIVE TRUSTEE SERVICES, INC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120
(800)-665-3932

Date: Apr 11, 2011

T.S. Number:   GM-278944-C
Loan Number:  0810021144

# DEBT VALIDATION NOTICE

1.  The enclosed document relates to a debt owed to the current creditor:
    Bank of America, National Association as successor by merger to LaSalle Bank National
    Association as Trustee RAMP 2007RP1

    You may send us a written request for the name and address of the original creditor, if different
    from the current creditor, and we will obtain and mail the information to you.

2.  As of 04/08/2011, the total delinquency owed was $185,239.00, but this amount will increase
    until the delinquency has been fully cured.

3.  As of 04/11/2011, the amount required to pay the entire debt in full was $582,619.66, but this
    amount will increase daily until the debt has been fully paid.

4.  You may dispute the validity of this debt, or any portion thereof, within thirty (30) days after
    receiving this notice.  Otherwise, we will assume that the debt is valid.

5.  If you notify us in writing that you dispute all or any portion of this debt within thirty (30) days
    after receiving this notice, we will obtain and mail to you verification of the debt, or a copy of
    any judgement against you.

---

**WE ARE ATTEMPTING TO COLLECT A DEBT, AND ANY INFORMATION
WE OBTAIN WILL BE USED FOR THAT PURPOSE**

---



89

## PROOF OF SERVICE

### Case 12-12020 (MG) In re Residential Capital, LLC

I am a resident of the State of California. I am over the age of 18 and not a party to the within action. My business address is 7957 Dahlia Circle, Buena Park, CA 90620.

On October 30, 2014 I served the following documents:

**CLAIMANT'S SUPPLEMENTAL OPPOSITION TO THE OBJECTION OF THE RESCAP BORROWER CLAIMS TRUST TO PROOFS OF CLAIM FILED BY KAREN MICHELE ROZIER (CLAIMS NOS. 4738 AND 5632); DECLARATION IN SUPPORT THEREOF**

On all interested parties **via Overnight Mail to the address provided below:**

Unites States Bankruptcy Court for the Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York, New York 10004-1408

**Sent via electronic service to the email addresses listed with the Court:**

Counsel to the ResCap Borrower Claims Trust
Morrison & Foerster LLP
250 West 55th Street
New York, New York 10019
(Attention: Norman S. Rosenbaum, Jordan A. Wishnew and Meryl L. Rothchild)
nrosenbaum@mofo.com
jwishnew@mofo.com
mrothchild@mofo.com

Office of the United States Trustee for the Southern District of New York
U.S. Federal Building
201 Varick Street
Suite 1006
New York, New York 10004
(Attn: Linda A. Riffkin and Brian S. Masumoto)
Linda.Riffkin@usdoj.gov
Brian.Masumoto@usdoj.gov

The ResCap Liquidating Trust
Quest Turnaround Advisors
800 Westchester Avenue
Suite S-520
Rye Brook, NY 10573
(Attention: Jeffrey Brodsky)
jbrodsky@qtadvisors.com

I declare under penalty of perjury under the laws of these United States that the foregoing is true and correct.

Executed on October    , 2014

David E. Rozier, Sr