**UNITED STATES BANKRUPTCY COURT**
**-- SOUTHERN DISTRICT OF NEW YORK**
Hearing Date: November 20, 2014  Hearing
Time: 10:00A.M

In Re:

**RESIDENTIAL CAPITAL, LLC**, et al.

      Debtor et al...

**Case No.: 12-12020 (MG)** Chapter

11

Jointly Administered

**WEKESA MADZIMOYO'S OPPOSITION AND RESPONSE TO THE
RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO CLAIM
NO. 5800 (PRO SE)**

Dated: Nov. 4, 2014
Wekesa Madzimoyo 852
Brafferton PL Stone
Mountain, GA 30083
Tel: 404.201.2356
Wekesa@gmail.com
Claimant


RECEIVED
NOV - 6 2014
U.S. BANKRUPTCY COURT, SDNY

# TABLE OF CONTENTS

INTRODUCTION ................................................................................. 4

I. Claimant Requests the Court to Take Judicial Notice ................................. 4

II. FACTUAL BACKGROUND ...............................................................6

III. STANDARD OF REVIEW ...............................................................10

IV. ARGUMENT ............................................................................. 11

A. The ResCap Trust's Purported Declaration of Kathy Priore is not Admissible under the...12

Federal Rules of Evidence and Should be Disregarded and Stricken

B. Claimant Alleges Four Legal Theories of Liability and Recovery .......................15

D. Claimant will Prevail in GA Appellate Court.........................................19

Error to Lift Stay  ......................................................................... 19

F. One-Satisfaction Rule, Injunctive Declaratory Relief.................................20

G. Break in the Chain of Title...........................................................21

H. Claimant has Standing to Challenge Putative Assignments and other Defects..................22

    a. Not Barred by Montgomery V. BAC

    b. Not Barred by You V. Chase

I. Debtor Et Al. is not authorized to Foreclose .........................................25

J. Second Corrective Assignment Fails..................................................27

K. Claimant has effectively stated a Claim for Wrongful Foreclosure, Injunctive Relief and

Damages...............................................................................28

L. Claimant is entitled to Equitable Quiet Title.........................................30

V. CONCLUSION.........................................................................31

## Table of Authorities

*United States v. Reliable Transfer Co., Inc* 421 U.S. 397 (1975)

*You v. JPMorgan Chase Bank, N.A.,* 293 Ga 67 (2013)

*Slorp v. Lerner, Sampson, et al* (Apr. 29, 2013) 39 Misc.3d 1220(A), 2013 WL 1831799, slip opn. p. 8

*Carmack v. Bank of N.Y. Mellon.,* 534 F. App'x 508, 511— 12 (6th Cir. 2013)

*MONTGOMERY v. BANK OF AMERICA et al. No. A12A0514,  March 29, 2013*

*Bahaeddin Kharazmi  v. BAC* US District Court for the Northern District of Georgia

*Babalola v. HSBC Bank, USA NA* (Ga. App., 2013)

*Holloway v. U.S. Bank Trust Nat'l Ass'n,* 731 S.E.2d 763, 12 FCDR 2668 (Ga. App., 2012)

*Sale City Peanut & Milling Co. v. Planters & Citizens Bank,* 130 S.E.2d 518, 520

*Hauf v. HomEq Servicing Corp.,* No. 4:05-CV-109, 2007 WL 486699, at *6 (N.D. Ga. Feb. 9, 2007).

*Hay v. Bank of A, CIVIL ACTION NO. 1:12-CV-01596-RWS.*

*Edwards v. BA, CIVIL ACTION NO. 1:11-CV-2465-RWS.*

*Roper v. Parcel of Land,* No. 1:09-CV-0312-RWS, 2010 WL 1691836, at *2 (N.D. Ga. Apr. 23, 2010

*Washington vs. FEDERAL NATIONAL MORTGAGE*

*Woodberry v. Bank of America, L.P., 2012 WL 4327052 at *1 (N.D. Ga.).*

*Kuriatnyk v. kuriatnyk, 286 Ga, 589, 590 (690 SE2d 397) (2010)*

*Atlanta Dwellings, Inc. v. Wright,* 527 S.E. 2nd 854,856 (Ga. 2000)

*Bakhtiarnejd v. Cox Enterprises, Inc.,* 247 Ga App 205, 210 (1) (541 SE2d 33)(2000).

April 23rd Hearing Transcript (DeKalb County Superior Court Judge – Tangela Barrie's Hearing

## STATUTES

*Fed. R. Evid. 201*

**OTHER AUTHORITIES**

*4 GA Supreme Court  Justice David E. Nahmias (Supplemental Authority via Affidavit)*

**RULES**

*[section] 502(a*

*11 U.S.C. § 501(a)*

7i *U.S.C. § 502(a)*

*4 COLLIER ON BANKRUPTCY % 502.02[2] (16th ed. 2013)*

*Bankruptcy Code section 502(b)(1)*

*Bankruptcy Rule 3001(f)*

*FED. R. BANKR. P. 3001(f)*

# INTRODUCTION

1.    Wekesa Madzimoyo ("Claimant") filed a civil action against GMAC, JPMorgan Chase,

NYBMT, McCurdy and Candler and Anthony DeMarlo in the DeKalb County Superior Court in

the State of Georgia on July 29, 2009. Claimant's complaints sought declaratory relief to prevent a

wrongful foreclosure sale.

2.    On October 16, 2014, the ResCap Borrower Claims Trust (the "Trust") filed its objection to

Claimant's Proof of Claim advancing multiple arguments which are not supported by the law or

facts before the Court.

3.    The Claims are based on a pre-petition lawsuit filed by Claimant in Georgia state court.

Accordingly, Claimant hereby files this Response to the Trust's Objection pursuant to section

502(b) of the Bankruptcy Code and Bankruptcy Rule 3007. Claimant opposes the Trust's objection

on the basis that the Trust's reasons for disallowance and expungement are premature because the

underlying issues set forth in the GA State action are pending on appeal. As such, the

determination by the Trust of no liability for the amount of claim is unsupported until final

disposition by the GA State Appellate Court in the State of Georgia. (See Appellate Brief Exhibit

1)

4.    Essentially the Trust makes unsupported factual arguments that are not admissible under

the federal rules and cannot overcome the presumption in favor of Claimant. In response, Claimant

puts forward actual admissible evidence and legal argument based on federal and Georgia law as is

called for in paragraph 15 Governing Law of the Security Deed signed by Claimant to FT

Mortgage DBA Equibanc. For the reasons stated herein, the Trust's Objection should be overruled.

### I.    *Claimant Requests the Court to Take Judicial Notice*

5.    Claimant requests that the Court take judicial notice of GMAC's letter noticing servicing

rights are being assigned sold or transferred to GMACM on July 1, 2009, a true and correct copy is

7.     Claimant requests that the Court take judicial notice of another copy of Claimant's

*purported* original ("SECOND Note") displaying two special endorsements and a *purported*

allonge. A true and correct copy is attached as **Exhibit 4** hereto.

8.     Claimant requests that the Court take judicial notice of a copy of DeKalb County GA,

Superior Court Judge Tangela Barrie's Order Reopening the Case. **See attached Second**

**Amended Complaint (SAC), Exhibit 3.**

## II. Factual Background

9.    The Claimant, Wekesa Madzimoyo, signed a security deed with FT MORTGAGE

COMPANIES dba EQUIBANK MORTGAGE CORPORATION on March 23rd, 1999.

10.    After approval of a loan modification by Home Comings Financial in February 2009, the

Claimant desired to seek better modification terms by negotiating with his true lender (secured

creditor).

11.    Therefore, he started a documented exchange (via certified letters and return receipts) with

the Debtor et al. asking them to clarify their standing as secured creditor, servicer, agent, attorney,

debt collectors, investor, trustee, attorney-in-fact, or otherwise, relative to the subject property.

12.    The Claimant was / is not in default on his mortgage obligation.

13.    The Debtor et al. refusing to adequately and lawfully document their standing, the

Claimant became suspicious and upon independent investigation became fearful of double

jeopardy -- that he may be paying the wrong party, and that he unwittingly had become part of a

mortgage scam.

14.    The Claimant began to lawfully withhold payments with full belief and contention that

Debtor et al. had no standing in his loan or mortgage or property.

15.    On July 3rd, 2009 Claimant received a NOTICE OF FORECLOSURE SALE.  GMAC was

noted as the Servicer; The Bank of New York Mellon Trust Company, National Association fka

The Bank of New Your Trust Company, N.A. as successor to JPMorgan Chase Bank N.A.

(NYBMT) Trustee for RAMP 2006 RP2 (RAM) was noted as Creditor. **(See SAC, Exhibit 2)**

16.    DeKalb County Superior Court Judge Tangela M. Barrie, examined over 50 pages of

communication (requesting validation) between Claimant Madzimoyo and the Debtor et al.

spanning months between April and July 2009.

17.    Judge Barrie granted the Emergency Temporary Restraining Order on July 29th, 2009 and

set a hearing date for August, 28th, 2011 and ordered the Defendants to "Bring proper evidence of

chain of title."(emphasis added) **(See SAC, Exhibit 3)**

18.    The Debtor et al. removed the Claimant's Emergency Petition to Federal District Court on

August 27, 2009.

19.    Seven months after Debtor et al. commenced foreclosure proceedings, and after they were

ordered to bring proper evidence of chain of title by Judge Barrie, the Debtor et al. executed and

filed an assignment claiming that The Bank of New York Mellon Trust Company, National

Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase

Bank, NA as Trustee for RAMP 2006 RP2 (RAM) was the secured creditor. **(See SAC, Exhibit 6)**

20.    The Debtor et al. were granted a dismissal (Judgment on the Pleadings) by the United

States District Court for the Northern District of Georgia, Atlanta Division on January 3, 2011. On

January 4th, 2011 the Debtor et al. filed into the DeKalb County Courthouse what would become

the first of two corrective assignments. (Exhibit 5)

21.    The Claimant appealed the United States District Court's order to the 11th Circuit Court of

Appeals.

22.    On July 25th, 2011 the Debtor et al. commenced their 3rd foreclosure on Claimant's home.

The NOTICE OF FORECLOSURE on Subject Property from Debtor et al. McCurdy and Candler,

LLC. and NYBMT changed the corporate entity claiming the right to foreclose. They listed the

same trustee (NYBMT), but a new secured creditor/note-holder RAAC 2006 RP2 (RAAC) (See

SAC, Exhibit 4)

23.    On September 1, 2011, the Claimant filed another Complaint into the Superior Court of

DeKalb County, GA. On September 2, 2011.

**24.**    DeKalb County Superior Court Judge Michael Hancock issued a TRO to enjoin the Debtor

et al. from conducting the foreclosure sale of the Plaintiff's property, noting that the new secured

creditor on the Notice of Foreclosure (RAAC-2006-RP2) was at variance with the secured creditor

listed in the 1st Corrected Assignment to (RAMP-2006-RP2) in the DeKalb County real estate

record.

**25.**    Judge Hancock sent the case to Judge Barrie's Court. (See SAC Exhibit 5).On September

7, the 11th Circuit Court of Appeals ruled for the Claimant, and remanded the case back to DeKalb

County. On March 26, the two cases were consolidated.

**26.**    On June 4, 2012, The Debtor  ResCap-GMAC filed a Notice of Bankruptcy and Effect of

Automatic Stay.

**27.**    On June 15, 2012 the court stayed the action in the case "until said bankruptcy case

(GMAC) has been fully disposed of by the Bankruptcy Court."

**28.**    On August 29, 2012, this Court entered the Bar Date Order, which established November

9, 2012 at 5:00 p.m. as the deadline to file proofs of claim by virtually all creditors against the

Debtor et al. (the "General Bar Date") and prescribed the form and manner for filing proofs of

claim. (ECF Doc. # 1309 ^ 2, 3.)

**29.**    On November 7, 2012, Claimant filed proof of claim No. 5800, a General Unsecured claim

in the amount of $2,275,000.00 against Debtor GMAC Mortgage, LLC.

**30.**    August 29, 2013 Judge Barrie granted the Debtor et al.'s Motion to Reopen Proceedings

over Claimant's objections.

**31.**    Debtor et al. filed Motion for a Judgment on the Pleadings to dismiss the Claimant's case.

Claimant opposed.

**32.**     On February 10, 2013, Judge Barrie called a hearing to hear outstanding motions. The

Claimant also stated -for the record – another cause of action – violation of the one satisfaction rule

to add to his pleadings. Debtor et al. opposed.

**33.**     On April 22, 2014, the Claimant filed his second amended complaint supporting his oral

arguments, adding this new cause of action. **See second amended complaint (SAC) attached.**

**34.**     On April 23, 2014 Judge Barry held another hearing. On June 5, 2014, Judge Barrie

granted the Debtor et al.' motion for Judgment on the Pleadings – dismissing the Claimant's case

with prejudice.

**35.**     On October 16, 2014 the Trust filed the ***ResCap Borrower Claims Trust's Objection to

Claims 5800 (No Liability Borrower Claims)*** The ResCap Trust attached a chart for each claim

submitted by Claimant asserting their lack of liability. In support of the Objection, the ResCap

Trust submitted the Declarations of Kathy Priore (the "Priore Decl.," the Trust's Objection,

Exhibit 2) and Alexandria Reyes (the "Reyes Decl.," the Trust's Objection, Exhibit 3).

**36.**     On Oct. 31, 2014, Claimant filed his Amended Appellate Brief into the Georgia Appellate

Court.

### III.    STANDARD OF REVIEW

37.    Section 501(a) of the Bankruptcy Code provides that "[a] creditor . . . may file a proof of

claim." 11 U.S.C. § 501(a). A filed proof of claim is "deemed allowed, unless a party in interest

...objects." 11 U.S.C. § 502(a). If the claim is properly filed, it is prima facie evidence of the

validity and amount of the claim. See *FED. R. BANKR. P. 3001(f)*. A party in interest may object

to a proof of claim, and once an objection is made, the court must determine whether the objection

is well founded. See *4 COLLIER ON BANKRUPTCY ^ 502.02[2]* (16th ed. 2013). Although

*Bankruptcy Rule 3001(f)* establishes the initial evidentiary effect of a filed claim...

[t]he burden of proof for claims brought in the bankruptcy court under *[section] 502(a)* rests on

different parties at different times. Initially, the claimant must allege facts sufficient to support the

claim. If the averments in his filed claim meet this standard of sufficiency, it is *"prima facie"*

valid. In other words, a claim that alleges facts sufficient to support a legal liability to the claimant

satisfies the claimant's initial obligation to go forward. **The burden of going forward then shifts**

**to the objector to produce evidence** sufficient to negate the *primafacie* validity of the filed

claim. It is often said that **the objector must produce evidence** equal in force to the *prima facie*

case. In practice, **the objector must produce evidence** which, if believed, would refute at least

one of the allegations that is essential to the claim's legal sufficiency. If **the objector produces**

**sufficient evidence** to negate one or more of the sworn facts in the proof of claim, the burden

reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. *In re*

*Allegheny Intern., Inc.,* 954 F.2d 167, 173-74 (3rd Cir. 1992) (internal citations omitted). *In re*

*MF Global Holdings Ltd.,* Nos. 11-15059, 11-02790, 2012 WL 5499847, at * 3 (Bankr. S.D.N.Y.

Nov. 13, 2012) ("The party objecting to the proof of claim bears the burden of "**providing**

**evidence** to show that the proof of claim should not be allowed"). (emphasis and underscore

added)

**38.**      If the objecting party satisfies its initial burden and "the presumption of *prima facie*

validity is overcome—e.g., the objecting party establishes that the proof of claim lacks a sound

legal basis—the burden shifts to the claimant to support its proof of claim unless the claimant

would not bear that burden outside of bankruptcy." *Id.* (citing *In re Oneida Ltd.,* 500 B.R. 384,

389 (Bankr. S.D.N.Y. 2009). *Bankruptcy Code section 502(b)(1)* provides that claims may be

disallowed if "unenforceable against the debtor and property of the debtor, under any agreement

or applicable law." To determine whether a claim is allowable by law, bankruptcy courts look

to"applicable nonbankruptcy law." *In re W.R. Grace & Co.,* 346 B.R. 672, 674 (Bankr. D. Del.

2006). "What claims of creditors are valid and subsisting obligations against the bankrupt at the

time a petition is filed, is a question which, in the absence of overruling federal law, is to be

determined by reference to state law." *In re Hess,* 404 B.R. 747, 749 (Bankr. S.D.N.Y. 2009)

(quoting *Vanston Bondholders Protective Comm. v. Green,* 329 U S. 156, 161 (1946)).

Claimant's pleadings must be liberally construed. *Haines v. Kerner,* 404 U.S. 519, 520. See also

*Erickson v. Pardus,* 551 U.S. 89, 94 (2007.)

Further, "[l]awyers must be held to higher standards" than pro se parties. *In re Maurice,* 69 F.3d

830 (7th Cir. 1995) at ^ 16.

## IV.    ARGUMENT

**39.**      The party objecting to the proof of claim bears the burden of "**providing evidence** to show

that the proof of claim should not be allowed. *In re MF Global Holdings Ltd.,* Nos. 1115059,

11-02790, 2012 WL 5499847, at * 3 (Bankr. S.D.N.Y. Nov. 13, 2012) Claimant disputes that the

declaration of Kathy Priore is sufficient to shift the burden of proof unto Claimant.

***A. The ResCap Trust's Purported Declaration of Kathy Priore is not Admissible under the Federal Rules of Evidence and Should be Disregarded and Stricken***

**40.**     The declaration of Kathy Priore with which the Trust attempts to support its version of

the facts explicitly incorporates inadmissible hearsay evidence and should be disregarded by the

Court. Specifically, Ms. Priore's declaration states: "…In my role as Associate Counsel at ResCap,

I was responsible for the management of litigation among my other duties, I continue to assist the

Liquidating Trust and the Borrower Claims Trust (the "Borrower Trust") in connection with the

claims reconciliation process… Except as otherwise indicated, all facts set forth in this

Declaration are based upon my personal knowledge of the Debtor et al.'s operations, information

learned from my review of relevant documents and information I have received through my

discussions with other former members of the Debtor et al.'s management or other former

employees of the Debtor et al.'s, the Liquidating Trust, and the Borrower Trust's professionals and

consultants."

"**...I or my designee at my direction have reviewed and analyzed the proof of claim forms

and supporting documentation, if any, filed by the claimants...** Since the Plan became effective

and the Trust was established, I, along with other members of the Liquidating Trust's

management or other employees of the Liquidating Trust have consulted with the Trust to

continue the claims reconciliation process, analyze claims, and determine the appropriate

treatment of the same.** In connection with such review and analysis, where applicable, **I or other

of the Liquidating Trust personnel, under my supervision, and the Liquidating Trust's and

the Trust's professional advisors, have reviewed...**" (Priore Declaration) **(emphasis added)**

**41.**     *Federal Rule of Evidence 801* defines hearsay as "a statement that (1) the declarant does

not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove

the truth of the matter asserted in the statement." The Priore declaration falls squarely under this

definition, as the declarant, Ms. Priore, is not making her statements to be presented to the Court at a hearing on the objection to Claimant's Proof of Claims, and the statements contained in her declaration are being offered for their truth. ***Federal Rule of Evidence 802*** precludes admission of hearsay unless otherwise provided by a federal statute, the Federal Rules of Evidence or other rules prescribed by the Supreme Court.

42.   In this case, no such provision is made for the testimony in Ms. Priore's declaration, which she admits is based on information provided by an unknown number of unnamed persons. To the extent the Trust relies on the exception for regularly conducted activity for the admissibility of Ms. Priore's declaration, this reliance is misplaced. ***Federal Rule of Evidence 803(6)*** does provide that a record of a regularly conducted activity is admissible as an exception to the hearsay rule. However, in order to qualify as a record of a regularly conducted activity however, the party offering the purported record **must show,** *inter alia,* that "the record was made at or near the time by - or from information transmitted by - someone with knowledge... the record was kept in the course of a regularly conducted activity of a business... making the keeping of the record a regular practice of that activity...[and]...neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness." Here, the Priore Declaration was not made at or near the time of the events it recounts.

43.   The declaration was executed on October 16, 2014, but purports to describe events that happened as far back as March 30, 2007. There is no showing by the Trust that the statements in the declaration were transmitted by anyone with knowledge of the facts alleged. Indeed, the Trust does not even assert such transmission. Secondly, the declaration is not a document kept in the course of the Trust's regularly conducted business activity, and there is no showing or assertion to the contrary. Finally, the fact that the declaration explicitly states that it is based on **information**

**supplied by unnamed individuals at unspecified times,** but then does not indicate at any time

what particular facts were transmitted to Ms. Priore by these persons indicates a lack of

trustworthiness that should preclude the declaration's admission into evidence. **It is the business**

**records that constitute the evidence,** not the testimony of the witness referring to them. To prove

the content of a writing, recording, or photograph, the *__original__* writing, recording, or photograph is

required except as otherwise provided by law.

**44.**     How can the parties or the Court determine which of the facts in the declaration are based

on Ms. Priore's personal knowledge, and which have been supplied by the unnamed persons to

which she refers? How can the parties or the Court even know that such unnamed persons actually

exist? The vague, boilerplate references to unnamed sources of unspecified information indicates a

lack of trustworthiness in the circumstances of this declaration's preparation that should preclude

its admission.

**45.**     In a similar situation where a declarant hoped to affirm the accuracy of information

transmitted by an unknown number of unnamed persons at unnamed times, the Federal District

Court for the Eastern District of New York stated that "[s]ignificantly, Plaintiff never identified the

source for her information regarding the interaction, or lack thereof, between [other parties], and

her assertion appears to be rooted in hearsay..." *Hyek v. Field Support Services, Inc.,* 702

F.Supp.2d 84, 96 (E.D.N.Y. 2010). Such is the case here. The Trust hopes to support numerous

factual assertions with Ms. Priore's declaration, which admittedly relies on information

transmitted by an unspecified number of unnamed people on unspecified dates. **Such a**

**declaration is plainly inadmissible hearsay not subject to any exception to the general ban on**

**hearsay evidence and should be excluded, stricken, and otherwise disregarded by the Court.**

**46.**     Claimant contends that the Debtor et al. have failed to come forth with any admissible

evidence refuting his allegations essential to his claims. Claimant contends that his Property is under threat of being wrongfully foreclosed upon by the Debtor et al., Debtor et al.'s agents and/or coconspirators without any legal, equitable or pecuniary right. As a result of the Debtor et al.'s acts and omissions, Claimant has sustained damages and losses which are subject to his Proof of Claim No. 5800 which the Trust has not rebutted whatsoever with any admissible evidence. Claimant acknowledges that the trial court dismissed his wrongful foreclosure action against Debtor ResCap-GMAC and its agent and/or co-conspirator non-debtor, NYBMT. Claimant timely appealed the trial court's order, and the appeal is currently awaiting resolution.

**47.**     Four theories lie at the heart of Claimant's Second Amended Complaint. Moreover, the newly discovered evidence corroborates two of the three theories below. **See Second Amended Complaint attached.**

### Claimant Alleges Four Legal Theories of Liability

**Theory No. 1**

**48.**     Claimant contends that ResCap concurrently sold his Note and Security deed to two companies RAAC-2006 RP2 and RAMP-2006 RP2 (typically called "pools") so that both of these companies held ownership of this loan and deed simultaneously, and both of these companies via their trustee - NYBMT has asserted their ownership, by accessing the Powers of Sales clause in Claimant's security deed - both declaring the Claimant in default, and both commencing foreclosure proceedings against the Claimant. **(See SAC, Exhibits 2 and 4)**

**49.**     If this theory is proven, then Debtor - ResCap either applied the monies to the Claimant's loan (extinguishing it) or doubled the Claimant's debt to enrich itself at the Claimant's expense without the Claimant's permission or consent. Additionally, if this theory is proven true, ResCap

(alone or in cooperation with GMAC, JPMorgan Chase, NYBMT, et al) fraudulently collected mortgage payments from the Claimant when none were do to them. It will mean that Debtor also broke the chain of title and violated **Georgia's One Satisfaction Law**. OCGA 11-3-602

**Theory 2:**

**50.**    That valid "corrective assignments" of mortgage notes and security deeds which affect property rights is held to a greater standard than are scrivener's errors, and are required to be approved by those affected by it and/ or by the Courts

**51.**    Relevance: If this theory is true, then the Debtor et al.'s 1st and especially the 2nd Corrected assignment is invalid and conveys no legal title or rights to the Debtor et al.'s pools, or designees in Georgia . If true, then proper discovery regarding the corrected assignments would be in order as well as injunctive and declaratory relief from the Courts for the Claimant.

**52.**    If true, it mitigates against the Debtor et al.'s claim that "deed holder" renders the "identity of the note holder" of no regard, and "freely assignable" in spite of filed documents that questions the integrity of the chain of title.

**Theory 3:**

**53.**    The purported transfer of the "Loan" evidenced by the "Note" and "Security Deed" from Equibanc to ResCap has not been memorialized by any documented transfer supporting ResCap's claim that it could legally, "transfer its interest" or "securitize" the loan on about June 1, 1999. The Note with Residential Funding stamp differs from copies of the note provided via QWR responses and over 5 years of litigation. Neither evidenced a sale of Note and or Deed from FT Mortgage/Equibanc to Residential Funding)

**54.**     Additionally, by the Debtor et al.'s own declaration (Exhibit D "The Loan was <u>pulled out</u>

of securitization in late 2005...") Taking the Debtor et al. at their words - that the ownership of

"Loan and Note" and "Security Deed" was transferred ("pulled out"), then there is not

documentation of the sale or assignment. Additionally, there it was "held" by some entity from late

2005 until April 2006, when according to the Debtor et al. it was "put into another trust." The

Claimant avers that this further evidences a break in the chain of title which invalidates Debtor's

claim to Claimants property and years of loan payments.

**55.**     Any or both transfers of the Note or Deed to companies RAAC-2006 RP2 and

RAMP-2006 RP2 (so called "securitization) constitute legal transfer/s, but none are memorialized

by the steps outlined in the PSA (Pooling and Servicing Agreement). The 2001 purported

assignment from FT Mortgage/Equibanc to First Bank of Chicago as Trustee (Exhibit 6) fails to

say exactly to whom they are acting as trustee.

**Theory No. 4**

**56.**     The Claimant - signer of the "Note" denies that the loan transfer was complete - that there

was no consideration, and therefore no enforceable contract. If the signer of the note denies that the

transaction was complete — i.e., there was no consideration and therefore there is no enforceable

contract, then the burden switches back to the "holder" of the note to step into the shoes of the

original lender to prove that the loan actually occurred, the original lender was the creditor and the

signer was the debtor.

**57.**     The Claimant avers that ResCap-GMAC is a stranger to the Note and Security deed,

because the contract was between the borrower and the FT Mortgage (DBA EQUIBANC), and the

Claimant's theory is that the money for the transaction was provided by ResCap or another outside

party creating a debt to that outside party who was never privy with the originator.

**58.**      If the creditor named as payee (FT Mortgage) and mortgagee was not the source of the

funds then there is no underlying debt. The truth is that the holder of the paper is NOT the party

who was the creditor at "closing." The closing was fictitious.  It really is that simple. If the

fact-finding of Discovery proves this true, such as the Claimant avers, a cause of action for fraud

would be evident.

**59.**      If Claimant's theory is proven, then Debtor et al.'s failure to comply with the PSA voids

the ***purported*** sale and/or transfer of Claimant's mortgage to either or both RAMP-2006-RP@ or

RAAC-RP2.


**60.**      And if that ***purported*** sale and/or transfer is void, then it goes on to say that the ***purported***

sale and/or transfer to the trustees First Bank of Chicago, JPMorgan Chase, NYBMT is also void

and that neither the Debtor or any of the entities in this case possess ***any*** right or ***any*** interest in

Claimant's promissory note or security deed. These entities have no power to service, enforce or

otherwise act on the loan if the loan has been pledged to the RAMP or RAAC companies. These

entities have no right to enter into settlement agreements, modification agreements, nor to execute

a "release and satisfaction of mortgage." As a result, ResCap – GMAC and the list of trustees

would be ***legal strangers*** to Claimant's mortgage contracts.


**61.**      In sum, Claimant alleges Debtor Homecomings and Debtor et al. (RFC, ResCap, GMAC,

and RAMP-2006-RP2 AND RAAC-2006 –R2) possibly more, perpetrated a fraud on him, and

fraud upon the courts, and as such, should be criminally remanded.

## WILL PREVAIL IN GA APPELLATE COURT

Standard of Review for Motion for Judgment on the Pleadings;

**62.** As an appellate court, "[W]e review de novo a trial court's determination that a pleading fails to state a claim upon which relief can be granted, construing the pleadings in the light most favorable to the plaintiff and with any doubts resolved in the plaintiff's favor. Babalola v. HSBC Bank, USA, N.A., 324 Ga. App. 750 (751 SE2d 545) (2013) [OCGA § 9-11-8(a)(2)(A)]

**63.** In evaluating the sufficiency of the complaint, "[i]t must be remembered that the objective of the [Civil Practice Act] **is to avoid technicalities and to require only a short and plain statement of the claim that will give the defendant fair notice of what the claim is and a general indication of the type of litigation involved; the discovery process bears the burden of filling in details.** [282 Ga. 714] 34; (Citations omitted).

**64.** The critical question is whether, under the assumed set of facts, a right to some form of legal relief would exist. [Allied Asphalt Co. v. Cumbie, 134 Ga.App. 960, 962, 216 S.E.2d 659 (1975)]; [accord Kansas City, St. L. & C. R. Co. v. Alton R. Co., 124 F.2d 780, 783 (7th Cir.1941)] **('"The question is not whether the Plaintiff has asked for the proper remedy but whether under his pleadings he is entitled to any remedy.'** [Cit.]."). Thus, a complaint will not be dismissed under OCGA § 9-11-12(b)(6) for requesting the wrong form of relief, or no relief at all, as long as the complainant is entitled to some legal remedy under the facts pled. See OCGA § 9-11-54(c)(1).

**65.** The Civil Practice Act "does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." **[Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)].** See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (well-pleaded complaint may proceed even if it appears that "a recovery is very remote and unlikely") .

## ERROR TO LIFT AUTOMATIC STAY

**66.** In order to lift the Stay, only non-monetary claims against Appellee GMAC could be

adjudicated. While the Reyes Declaration and the Debtor et al.'s pleadings indicate that the Judge

ordered the case reopened on the basis that "all claims for monetary relief against GMACM

remain stayed but that nonmonetary claims concerning the property could proceed" (Reyes Decl.

Paragraph 10), this is not true, the Judge made no distinction in her order to re-open. And, if she

intended to she failed to explicate which claims would go forth and which would not. (See Exhibit
7)

**67.**    Additionally, Claimant asserts that Debtor et al. violated Georgia's One Satisfaction Rule

and his right to interplead both RAAC-2006-RP2(RAAC)  and RAMP-2006-RP2 (RAMP).

Claimant's pleadings throughout and clarification in his Opposition to the Debtor et al.'s Motion to

Reopen the Case clearly articulates that he has monetary claims against defendant GMAC

(ResCap). Additionally, the record shows that Claimant had filed a claim against

Appellee/Creditor – GMAC (ResCap) in the US Southern District of New York Bankruptcy Court

for $2,275,000.00 pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy

Code").

## One Satisfaction Violation, Injunctive, Declaratory Relief

**68.**    Claimant's Court appearances on Feb. 10, 2014 and April 23, 2014, as well as his 2nd

Amended Complaint **(See attached)** have documented his claims  that the Debtor et al. are in

violation of the Court of Equity's and Georgia's One Satisfaction rule OCGA 11-3-602. See also

United States v. Reliable Transfer Co., Inc., 421 U.S. 397 (1975). The Supreme Court first noted

that the ***"one satisfaction rule"*** only comes into play in those instances where the debtor would be

overcompensated ***(Emphasis mine)***

**69.**    The record shows that both RAMP and RAAC have claimed ownership in the Claimant's

property and both have attempted to foreclose. **(See SAC, Exhibits 2 and 4)**

Georgia Supreme Court Justice David E. Nahmias has been heard to say in the oral arguments

of You v. Chase (See Exhibit 1) that Georgia has a 'One Satisfaction Rule that bars double

recovery.' He further was heard to have said that 'if such a double jeopardy situation would

occur against a home-owner, the homeowner could inter-plead the competing parties.'

The lower court has ignored this equitable cause of action articulated by the Claimant.

Likewise, the Claimant avers that the assertions that GA Supreme Court Justice Nahmias was

heard to say challenges the lower court's ruling that the Claimant has no standing to challenge

the Debtor et al.'s standing.

## Break in Chain of Title

**70.**    The Debtor et al.'s attempt to avert the conflicting claims is confounded by their own

Motion For Judgment on The Pleadings (See Exhibit 1) where they list a chain of title that starts

with FT Mortgage and ends with RAMP-2006 RP2, then in the foot note #8 references a 2nd

Second Corrective Assignment. (See Exhibit 8)  This 2nd Corrective Assignment as read in the

court hearing of April 23rd shows that the current purported assignee of record is RAAC-2006

RP2. Here's an excerpt from the April 23rd Hearing Transcript Pages 7 and 8).

> **"The COURT (Judge Tangela Barrie):**
>
> "…And then the second corrective assignment of the security deed, which of course becomes the big issue here, and that one is in deed book 22644, page 791, and on that one basically the corrective assignment of the security deed shows that there's a JP Morgan Chase Bank, NA as trustee but now it's for RAAC, R-A-A-C, 2006 RP2.
>
> **THE COURT:** And his (the Claimant's) position with regard to that is that there are basically, at this point, two banks or trust pools that has his loan, because you have one RAMP, R-A-M-P, 2006 and then you have RAAC 2006 RP2. I think the analysis that was given to me previously was that that was a -- basically a clerical error and that that's the reason why the clerical corrective assignment of security deed was done.
>
> **MR. WINDHAM** (Attorney for Debtor et al.): Well, I guess I would say two things to that, your Honor. I can't confirm -- I assume if there was a -- that there was a clerical error or there could have been a transfer from RAMP to RAAC

that were all leading up to the eventual foreclosure, but --

**THE COURT:** Okay. However, my concern is -- the reason I brought you here today, was to determine if a RAMP 2006 RP2 exists, because if it does, in fact, exist, it does mean that there are two entities with this deed.

...But there's nothing -- you have haven't -- you haven't articulated that there's a transfer and there is no document that shows a transfer between -- between RAMP and RAAC."

71.    The Claimant avers that the Debtor et al.'s record of varying and conflicting assignees and after-the-fact assignments (Exhibits 5 and 8) followed by two corrective assignments and court-recorded explanations of - "I can't confirm," and "I assume," and "it doesn't matter" if two different parties both hold simultaneous notes on the subject property - evidences both a plausible allegation of injury due to doubling Claimant's indebtedness, and a very real conflict that begs for Discovery or Declaratory Judgment to clear up.

## Claimant Has Standing to Challenge Putative Assignments &other Defects

## Not Barred by Montgomery v. BAC

72.    The Debtor et al. and the state lower court leaned heavily on Montgomery v. BAC and You v. Chase to support that it "doesn't matter who or how many note holders there are, and that the Claimant doesn't have standing to challenge assignments of notes, deeds or other defects. This case is unlike Montgomery in key aspects:

73.    While Montgomery challenged MERS's right to convey the assignment to BAC, Claimant has never challenged FT Mortgage's or any succeeding assignee's right to assign the rights and interest in the security deed. Instead, in his original Complaint (Exhibit 1) Plaintiff challenged the Defendant's claim that they held those rights based on (a) a broken chain of title via errors in the securitization chain violation of 14-44-162 (b) no (executed or filed) assignment prior to foreclosure, and in his 2nd amended complaint (See SAC attached) based on a break in the chain of

title caused by apparently duplicated and simultaneous assignments and actual utilization of the

Powers of Sales clauses by RAMP (NYBMT) and to RAAC (NYBMT).

**74.**   The Claimant avers that the Montgomery v. BAC Court would not have intended to

preclude all borrowers from challenging the validity of mortgage assignments under Georgia law.

**75.**   To support this assertion, note that the US District Court for the Northern District of

Georgia in *Bahaeddin Kharazmi vs. BAC* has ruled:

> "While plaintiff has not asserted a viable claim for damages for wrongful
> attempted foreclosure, <u>he does assert a cognizable claim for injunctive relief</u>
> <u>barring Bank of America from proceeding with a foreclosure based on its</u>
> <u>alleged lack of authority to foreclose. (Compl. ¶¶ 103-115.) A court may enjoin</u>
> <u>a nonjudicial foreclosure sale where the authority to foreclose is in question.</u>
> See Atlanta Dwellings, Inc. v. Wright, 527 S.E.2d 854, 856 (Ga. 2000); West
> v. Koufman, 384 S.E.2d at 666; Cotton v. First Nat'l Bank of Gwinnett Co.,
> 220 S.E.2d 132 (Ga. 1975)" *(Emphasis mine)*

**76.**   While not binding in Georgia, the 6th Circuit Court of Appeals in *Slorp v. Lerner,*

*Sampson, et al* offers a persuasive course when their ruling similar to Montgomery v. BAC was

taken too broadly:

> "The district court in Livonia Properties stated that an individual "who is not
> a party to an assignment lacks standing to challenge that assignment," and
> our Livonia Properties opinion quoted and endorsed that general statement,
> perhaps inartfully. 399 F. App'x at 102.

> But we quickly limited the scope of that rule, clarifying that a non-party
> homeowner may challenge the validity of an assignment to establish the
> assignee's lack of title, among other defects. Id. (citing 6A C.J.S.
> Assignments § 132); see also Carmack v. Bank of N.Y. Mellon, 534 F.
> App'x 508, 511– 12 (6th Cir. 2013)

> "Livonia's statement on standing should not be read broadly to preclude all
> borrowers from challenging the validity of mortgage assignments under
> Michigan law." Thus a non-party homeowner may challenge a putative

assignment's validity on the basis that it was not effective to pass legal title to the putative assignee. See Conlin v. Mortg. Elec. Registration Sys., 714 F.3d 355, 361 (6th Cir. 2013); Livonia Props., 399 F. App'x at 102; see also Woods v. Wells Fargo Bank, N.A., 733 F.3d 349, 353–54 (1st Cir. 2013); 6A C.J.S. Assignments § 132 ("The debtor may also question a plaintiff's lack of title or the right to sue.").

## Not Barred by You v. Chase

77.    While the lower court has said "As the Deed Holder, BNY is the "secured creditor" entitled to exercise the powers of sale under Georgia law. See You v. JPMorgan Chase Bank, N.A., 293 Ga 67 (2013)" the You v. Chase ruling does not apply in this case for several reasons

- The Claimant seeks protection from actual doubling of his debt obligation and double foreclosure owing to his loan/deed having been owned simultaneously by two companies. Even if those two companies (RAMP and RAAC) had actual standing and did assign the deed to one trustee, NYBMT – such assignment of "holder" status doesn't preclude NYBMT from acting on both of their instructions to attempt of foreclose or otherwise collect the alleged debt.

- The record proves that the Debtor et al. or their trustee (NYBMT) **can and have** attempted to collect from the Claimant for both RAMP and RAAC in the past.

- Based on Claimant's interpretation of what GA Supreme Court Justice David E. Nahmias was heard to say at the *You v. Chase* Oral Arguments about a homeowner interpleading in the face of actual double jeopardy, this is the kind of protection to which he may have been referring. (Exhibit 9)

- The Claimant has averred a break in the chain of title and or simultaneous holding of title by ResCap, RAMP or RAAC renders their authority in subject loan or property and their ability to assign the security deed in the subject property void.

- If the attempted transfer was void, then NYBMT could not claim to be the holder of the Madzimoyo deed by virtue of being the successor trustee of the securitized trust. **(See Thomas A. Glaski, V. Bank of America, NA, et al 5th District Court of Appeals, California)**
- Nothing in the *You v. Chase* ruling suggested that the Court held that the putative assignee of note or deed was above challenge by the homeowner/borrowers and Claimant has already shown above why Claimant is not barred by Montgomery v. BAC .

## DEBTOR ET AL. IS NOT AUTHORIZED TO FORECLOSE

**78.** The Plaintiff raised the contradiction between RAAC's claim to the Plaintiff's note and security deed via a Notice of Foreclosure and the Defendant's 1st Corrective Assignment claiming the note and security deed for RAMP-BNY in his 2nd Complaint and Motion for Temporary Restraining order (See Exhibit 1)

**79.** Based on the conflict between the DeKalb County records and Debtor "owners" via Notices of Foreclosure, Superior Court Judge Michael Hancock ruled the Defendants in violation of OCGA 44-14-162 (a-c). Over the Defendants' "he hasn't tendered his arrears" and "he's here for a second bite of the apple" objections, Judge Hancock, halted the Sept. 6th 2011 foreclosure sale, and allowed the Plaintiff's second case to move forward.  That case would later be consolidated with the Plaintiff's original Complaint remanded back to Superior Court by 11th Circuit mandate (Exhibit 1)

**80.** The Defendants Motion for Judgment on the Pleadings, nor any other of their pleadings deny the competing claims recognized by Judge Hancock.

**81.** The lower court Judge presented You v. Chase as the answer: "First, under You, BNY is

entitled to foreclose without regard to the identity of the note holder. (Exhibit 1). The Claimant

avers that the lower court has confused the "identities of the note holder" with the valid authority

of the note holders. The Claimant avers that the You Court assumed that the assigner and the

assignment of security deed to the "holder" would be valid under Georgia law.

**82.**   ***Babalola v. HSBC Bank, USA NA*** (Ga. App., 2013) demonstrates that evidence is

required to determine if you have authority to foreclose:

> "We are unable to determine from the pleadings (as opposed to the evidence
> presented in support of the motion to dismiss), however, whether HSBC was the
> holder of the security deed, as it contends it was, or whether Litton was
> appointed to serve as HSBC's agent with respect to that deed. We are therefore
> constrained to find that Babalola's assertion that neither HSBC nor Litton had the
> authority to foreclose on his property supports his wrongful foreclosure claim."

**83.**   The Debtor et al's second challenge to the Claimant's "one satisfaction theory" is that he

"sites no authority prohibiting assignment of the Note which is freely assignable absent some

provision to the contrary." While the note may have been assigned, both Superior Court Judge

Tangela Barrie and Hancock have enjoined the Debtor, et al from a foreclosure sale for want of a

"complete chain of title." The record clearly shows that whenever the Debtor et al. have attempted

to show a complete chain of title, it was either non-existent or contradicted by the Debtor et al.'s

own filings in the DeKalb County, GA real estate Records.

**84.**   To find the "provision to the contrary" we need look no further than to this Court of

Appeals in   ***Holloway v. U.S. Bank Trust National Association***:

> "There is some evidence that U.S. Bank acquired its security deed from a party
> who acquired her interest through <u>constructive fraud</u>, so the bank has not shown as
> a matter of law that it acquired good title. We therefore reverse." ***(Emphasis mine)***

# SECOND CORRECTIVE ASSIGNMENT FAILS

**85.**    The Claimant avers that the dual and simultaneous selling "either paid off his mortgage or doubled his indebtedness without his permission or consent. Moreover, the record shows that the Claimant has long maintained that he owes the Debtor et al. nothing, and they have yet to martial evidence that they are legal owners of his debt or security deed.   When the Debtor et al. first commenced foreclosure they weren't the lawful assignees, and each time they have attempted to assert the validity of their claim, they have contradicted themselves.

- No assignment executed to establish Claimant's indebtedness to RAMP-BNY at the first foreclosure attempt – July, 2009. Contradiction between Notice (Secured Creditor) and 1st Corrected assignment challenge validity of Defendants claim of title (Judge Hancock)

- The same contradiction between who the Defendants claim in their Motion to Dismiss is the valid assignee (RAMP-BNY), and the 2nd Corrected Assignment (RAAC-BNY) exists now. Only the roles have been reversed.

**86.**    Plaintiff's documented objections and citation of authority to the 1st objections stand doubly here:

***According to US Legal.Com***:

   The doctrine of Scrivener's error is a legal principle which permits a typographical error in a written contract to be corrected by parol evidence if the evidence is clear, convincing, and precise. However if such correction affects property rights then it must be approved by those affected by it. ***(Emphasis Added)*** Scrivener's error is an error due to a minor mistake or inadvertence and not one that occurs from judicial

reasoning or determination.

## CLAIMANT HAS EFFECTIVELY STATED A CLAIM FOR WRONGFUL FORECLOSURE, INJUNCTIVE RELIEF, DAMAGES, AND IS NOT BOUND BY GA LAW TO TENDER ARREARS

**87.**   Though not always using the caption of wrongful foreclosure, Georgia courts have recognized claims for (1) injunctive relief to set aside a past unlawful foreclosure, (2) damages arising out of a past unlawful foreclosure, (3) injunctive relief to prevent an unauthorized foreclosure, and (4) damages arising out of an attempted unauthorized foreclosure. See, e.g., Curl v. Fed. Sav. & Loan, 244 S.E.2d 812, 812 (Ga. 1978); Calhoun First Nat'l Bank v. Dickens, 443 S.E.2d 837, 838 (Ga. 1994); West v. Koufman, 384 S.E.2d 664, 665 (Ga. 1989); Sale City Peanut & Milling Co. v. Planters & Citizens Bank, 130 S.E.2d 518, 520 (Ga. Ct. App. 1963"

**88.**    According to the Gonzaga Law Review:
"Many jurisdictions have found that attempted wrongful foreclosure gives rise to a common law cause of action, if under the rubric of other claims. For example, Georgia courts have found liability for attempted wrongful foreclosure in common law theories of damage to compensate a grantor's damaged reputation, invasion of privacy, and libel arising from the illegal foreclosure. <u>These courts allow plaintiffs to assert a claim for attempted wrongful foreclosure when a defendant breaches their duty by knowingly and intentionally publicizing "untrue and derogatory" information concerning the debtor's financial condition and the debtor sustains damages as a direct result of this publication</u> **_(Emphasis Added)_**

(See Aetna Fin. Co. v. Culpepper, 315 S.E. 2d 228, 232 (Ga. Ct. App. 1984); Jenkins v. McCalla Ravmer LLC, 492 Fed. Appx. 968, 972 (11th Cir. 2012); Sale City Peanut Co. v. Planters & Citizens Bank, 130 S.E. 2d 518, 520 (Ga. Ct. App. 1963); Hodson v. Whitworth, 266 S.E. 2d 561,

565 (Ga. Ct. App. 1980); Mayo v. Bank of Carroll County, 276 S.E.2d 660 (Ga. Ct. App. 1981

**89.**    "A wrongful publication that plaintiff has defaulted on a loan may constitute an untrue and derogatory statement concerning the plaintiff's financial condition. See Hauf v. HomEq Servicing Corp., No. 4:05-CV-109, 2007 WL 486699, at *6 (N.D. Ga. Feb. 9, 2007)."

**90.**    In Bahaeddin Kharazmi v. BAC (US District Court for the Northern District of GA) the Court found, "Plaintiff is alleging that Bank of America does not hold his note. (Compl. ¶ 23.) If Plaintiff succeeds in proving that Bank of America is not the holder of the note, in addition to the other elements required for injunctive relief, then no tender would be required because no sum would be due to Bank of America under the note. See Everson v. Franklin Discount Co., 285 S.E.2d 530, 533 (Ga. 1982); Sapp v. ABC Credit & Inv. Co., 253 S.E.2d 82, 87 (Ga. 1979); Davis v. Atlanta Fin. Co., 129 S.E. 51, 52 (Ga. 1925). Therefore, the Court finds that dismissal on grounds of failure to tender would be premature at this time, because Plaintiff has alleged facts in the complaint that suggest he owes no duty in equity to Bank of America (Emphasis mine)

**91.**    The Debtor et al.'s position, and that of the lower court - that *"Plaintiff may not state a claim for wrongful foreclosure where no sale actually occurred"* relies on Hay v. Bank of Am, which relies on Edwards v. BAC who referenced Roper: *"Plaintiffs may not state a claim for wrongful foreclosure where no foreclosure sale has actually occurred."*); Roper v. Parcel of Land, No. 1:09-CV-0312-RWS, 2010 WL 1691836, at *2 (N.D. Ga. Apr. 23, 2010).

**92.**    Claimant's investigation reveals that on this issue, Roper was poorly plead. In fact, the Plaintiff in Roper had motioned for a voluntary dismissal prior to the ruling. What's more: Roper motioned to dismiss her counsel, which was granted. She continued though; she wanted to

withdraw apparently without the service of counsel.

**93.** The Claimant avers that the Roper Court merely ruled based on the brief presented. Neither the Roper, Edwards nor Hay Courts addressed the established ruling listed above. Based on the Claimant's research, these were simply not brought to the Court's attention.

## CLAIMANT IS ENTITLED TO EQUITABLE, QUIET TITLE AND DECLARATIVE AND INJUNCTIVE RELIEF

**94.** Regarding Quiet Title and Declaratory relief, the Georgia Court of Appeals in ***Washington vs. FEDERAL NATIONAL MORTGAGE*** (August 6, 2014) has ruled:

> "Even though Washington may lack standing to bring a quiet title action, it appears that his complaint sufficiently states a basis for the trial court to issue a declaratory judgment regarding parties"

**95.** In that same case:
> ...the trial Court determined that the complaint shows that Washington lacks current legal title or current prescriptive title and therefore that he lacks standing to seek and order quieting title **(Woodberry v. Bank of America and OCGA 23-3-61)** Although Washington characterized his action, in part, as one seeking quiet title, however <u>"the well-established rule in Georgia is that, under our system of notice pleadings, the substance, rather than the nomenclature, of legal pleadings determines their nature."</u> (Emphasis Added.) **Cotton v. Federal Land Bank, 246 Ga. 188, 191 (269SR2d422)(1980) See also Kuriatnyk v. kuriatnyk, 286 Ga, 589, 590 (690 SE2d 397) (2010) (accord.)** Accordingly, "pleadings, motions, and orders are to be construed according to their substance and function and not merely as to their nomenclature, being always mindful to construe such documents in a manner compatible with the best interest of justice."

**96.** Plaintiff is entitled to declarative relief given the previously documented dual, competing

claims on subject property and double claims to Plaintiff's indebtedness

**97.**     On injunctive relief Georgia law is clear on this matter:

"A Court may enjoin a non-judicial foreclosure sale in a wrongful foreclosure action where the authority to foreclose is in question". See - Atlanta Dwellings, Inc. v. Wright, 527 S.E. 2nd 854,856 (Ga. 2000).

Although the Debtor, et al. have asserted otherwise, Georgia Courts have already allowed "A claim of wrongful foreclosure or a power of sale can be asserted even though a debt is in default," **(Emphasis added)** *Brown et al v. Freeman; and vice versa.*, 222 Ga App. 213 (474 SE2d 73

## V. CONCLUSION

**98.**     As stated herein, Claimant has stated valid claims for liability against Debtor – ResCap - GMAC. The trust presents a blanket defense void of any evidence for the Court to rebut the ***prima facie*** presumption in favor of Claimant. Additionally, as set forth above, Mr. Madzimoyo has never admitted to being in default on his Mortgage Loan, and has disputed the ResCap GMAC, et al. efforts as Servicer and purported "lender/note/interest holders'" ability to legally make such a claim against him. Mr. Madzimoyo's claims set forth in all his causes of action are neither time barred, nor speculative, and if the Court has any hesitation whatsoever, Claimant requests the Court to exercise its discretion and permit him to pursue his claims in the pending action in the Georgia Appellate Court or alternatively to appoint a special master at the Debtors' and the Trust's expense to make findings of fact after a period of discovery and an evidentiary hearing/trial. In sum, Mr. Madzimoyo's claim should be moved to the liability borrower claims pool and retain its status as an active claim for which the Debtors are wholly liable. For these reasons, Claimant requests the Court to overrule the Trust's Objection with prejudice or grant leave to pursue the

alternative relief requested herein.

99.    WHEREFORE, the Claimant respectfully requests that the Court enter an order in which

Mr. Madzimoyo's claim is neither disallowed nor expunged, granting the relief herein and

granting such other relief as is just and proper.

Respectfully submitted,

Dated: November, 5, 2014

Wekesa Madzimoyo, Claimant

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In Re:                                      Chapter 11

RESIDENTIAL CAPITAL, LLC, et al.            Case No.: 12-12020 (MG)

            Debtors.


## ORDER DENYING OBJECTION OF
## THE RESCAP BORROWER TRUST
## CLAIM NUMBER 5800 FILED BY WEKESA MADZIMOYO

Upon consideration of the objection of the ResCap Borrowers Claims Trust As the successor to

Residential Capital, LLC, and its affiliated debtors and debtors in possession with respect to

Borrower Claims, and the response and opposition by Wekesa Madzimoyo, it is hereby

   ORDERED, ADJUDGED, AND DECREED THAT:

1. The relief requested in the Objection is DENIED as set forth in the Court's Memorandum

   Opinion and/or statements on the record at a hearing held on November 20, 2014 in this

   Court;

2. The relief requested by the ResCap Borrower Trust is denied with prejudice; and

3. Kurtzman Carlson Consultants LLC, the Claims and Noticing Agent on behalf of the

   Debtors, is directed to mark the claims register consistent with this Order.

Dated: _____, 2014


                              The Honorable Martin Glenn
                              United States Bankruptcy
                              Judge

I HEREBY CERTIFY that a true and correct copy was mailed on November 5, 2014

The Honorable Martin Glenn
United States Bankruptcy Court for the
Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York, New York 10004-1408

Counsel to the ResCap Borrower Claims Trust
Morrison & Foerster LLP
250 West 55th Street
New York, New York 10019
Attention: Norman S. Rosenbaum and Jordan A. Wishnew

The Office of the United States Trustee for the
Southern District of New York
U.S. Federal Office Building
201 Varick Street
Suite 1006
New York, New York 10014
Attention: Linda A. Riffkin and Brian S. Masumoto

The Rescap Liquidating Trust, Quest Turnaround Advisors
800 Westchester Avenue, Suite S-520
Rye Brook, NY 10573
Attention: Jeffrey Brodsky

The ResCap Borrower Claims Trust Polsinelli PC
900 Third Avenue
21st Floor
New York, NY 10022
Attention: Daniel J. Flanigan
New York, New York 10022 Attention: Daniel J. Flanigan


Dated: November 5, 2014


Wekesa O. Madzimoyo, Pro Se Claimant #5800



CERTIFICATE OF SERVICE

# EXHIBIT 1

IN THE COURT OF APPEALS

STATE OF GEORGIA

|  |  |
|---|---|
| | AMENDED |
| Wekesa O. Madzimoyo | } APPELLANT RIEF |
| Pro Se | } ARGUMENT FOR APPEAL |
| | } |
| - Appellant | } APPEAL CASE |
| | } No. A15A0221 |
| v. | } |
| | } |
| THE BANK OF NEW YORK | } |
| MELLON TRUST COMPANY (NYBMT) as | |
| Trustee for RAMP-2006-RP2,  NA.,   (RAMP) | |
| formerly known as The Bank of New | } |
| York Trust Company, N.A., | |
| | |
| THE BANK OF NEW YORK | } |
| MELLON TRUST COMPANY (NYBMT) as | |
| Trustee for RAAC-2006-RP2 (RAAC) | |
| NA., formerly known as The Bank of New | } |
| York Trust Company, N.A., | |
| | |
| JP MORGAN CHASE BANK, NA, | |
| GMAC MORTGAGE, LLC, | |
| | |
| MCCURDY AND CANDLER, LLC | |
| | } |
| – Appellees | |

---

## **APPELLANT BRIEF AND ARGUMENT FOR APPEAL**

COMES NOW Wekesa O. Madzimoyo, Appellant, in the above-
captioned action, Pro Se, and files this Amended Appellate Brief
and Argument for Appeal in response to the Final Order of
Dismissal in favor to Appellees The Bank of Melon Trust (NYBMT),

1

JPMorgan Chase, GMAC, McCurdy and Candler showing this honorable Court that the Superior Court of DeKalb Co.'s Final Order of Dismissal should be reversed.

## TABLE OF CONTENTS

I.    STATEMENT OF THE CASE                                          3

      Statement of Facts and Procedural History                     3

      II.ENUMERATION OF ERRORS Questions and Issues                 7

III.ARGUMENTS                                                      15

      1. Arguments Supporting Error to Lift Automatic Stay      16

      2. Appellant did state a claim for which relief can be    17
         granted

      3. Appellant does have standing to challenge putative
         assignments and other defects                             17

      4. Appellant's claim for quiet title is valid               27

      5. Appellant's one satisfaction claim is valid              16

      6. Appellant is entitled to equitable, declarative and
         injunctive relief                                     16, 20

      7. Appellant bad faith claims are valid                     25

      8. Appellant has stated a claim for wrongful foreclosure 25

      9. NYBMT is not a proven deed holder                        23

III. CONCLUSION                                                   24

## STATEMENT OF THE CASE

A. *Statement of Facts & Procedural History*

The Appellant, Wekesa Madzimoyo, signed a security deed
with FT MORTGAGE COMPANIES dba EQUIBANK MORTGAGE CORPORATION on
March 23rd, 1999.  After approval of a loan modification by Home
Comings Financial in February 2009, the Appellant desired to
seek better modification terms by negotiating with his true
lender (*secured creditor*).

Therefore, he started a documented exchange (via certified
letters and return receipts) with the Appellees asking them to
clarify their standing as secured creditor, servicer, agent,
attorney, debt collectors, investor, trustee, attorney-in-fact,
or otherwise, relative to the subject property. **(Vol.5:R-15)**

 The Appellant was / is not in default on his mortgage
obligation. **(Vol.42: R-902,Exhibit 1)**The Appellees refusing to
adequately and lawfully document their standing, the Appellant
became suspicious and upon independent investigation became
fearful of double jeopardy -- that he may be paying the wrong
party, and that he unwittingly had become part of a mortgage
scam. The Appellant began to lawfully withhold payments with
full belief and contention that Appellees had no standing in his

3

loan or mortgage or property. On July 3rd, 2009 Appellant

received a NOTICE OF FORECLOSURE SALE.  GMAC was noted as the

Servicer; The Bank of New York Mellon Trust Company, National

Association fka The Bank of New Your Trust Company, N.A. as

successor to JPMorgan Chase Bank N.A. (NYBMT) Trustee for RAMP

2006 RP2 was noted as Creditor. **(Vol.42:R-902,EXHIBIT 2)** DeKalb

County Superior Court Judge Tangela M. Barrie, examined over 50

pages of communication (requesting validation) between Appellant

Madzimoyo and the Appellees spanning months between April and

July 2009. **(Vol.5:R-15)**

 Judge Barrie granted the Emergency Temporary Restraining Order

on July 29th, 2009 and set a hearing date for August, 28th, 2011

and ordered the Defendants to "***Bring proper evidence of chain of***

***title.***"(emphasis added) **(Vol. 42:R-902, Exhibit 3)** The Appellees

removed the Appellant's **Emergency Petition** to Federal District

Court on August 27, 2009.

Seven months after Appellees commenced foreclosure proceedings,

and after they were ordered to bring proper evidence of chain of

title by Judge Barrie, the Appellees executed and filed an

assignment claiming that **The Bank of New York Mellon Trust**

**Company, National Association fka The Bank of New York Trust**

4

**Company, N.A. as successor to JPMorgan Chase Bank, NA as Trustee for RAMP 2006 RP2 was** the secured creditor. **(Vol.42:R-902, Exhibit 4)** The Appellees were granted a dismissal (Judgment on the Pleadings) by the United States District Court for the Northern District of Georgia, Atlanta Division on January 3, 2011. On January 4th, 2011 the Appellees filed into the DeKalb County Courthouse what would become the first of two corrective assignments. **(Vol. 13:R-179, Exhibit 6 and T – 4/23/2014)** The Appellant appealed the United States District Court order to the 11th Circuit Court of Appeals.

Prior to the 11th Circuit Court ruling, the Appellees commenced new foreclosure actions against the Appellant, constituting the 2nd commencement of foreclosure. On July 25th, 2011 the Appellees commenced their 3rd foreclosure on Appellant's home. The NOTICE OF FORECLOSURE on Subject Property from Appellees McCurdy and Candler, LLC. and NYBMT changed the corporate entity claiming the right to foreclose. They listed the same trustee (NYBMT), but a new secured creditor/note-holder **RAAC 2006 RP2 (Vol.42: R-902, Exhibit 4)** On September 1, 2011, the Appellant filed another Complaint into the Superior Court of DeKalb County, GA. On September 2, 2011, DeKalb County Superior Court Judge Michael

Hancock issued a TRO to enjoin the Appellees from conducting the
foreclosure sale of the Plaintiff's property. The new secured
creditor on the Notice of Foreclosure **(RAAC-2006-RP2)** was at
variance with the secured creditor listed in the 1st Corrected
Assignment to **(RAMP-2006-RP2)** in the DeKalb County real estate
record.

Judge Hancock sent the case to Judge Barrie's Court. **(Vol. 42:R-
902,Exhibit 5)**.On September 7, the 11th Circuit Court of Appeals
ruled for the Appellant, and remanded the case back to DeKalb
County. On March 26, the two cases were consolidated. **(Vol.13:
R-179)**.On June 4, 2012, GMAC filed a Notice of Bankruptcy and
Effect of Automatic Stay. On June 15, 2012 the court stayed the
action in the case "until said bankruptcy case (GMAC) has been
fully disposed of by the Bankruptcy Court. August 29, 2013 Judge
Barrie granted the Appellee – GMAC's Motion to Reopen
Proceedings over Appellant's objections. Appellees filed Motion
for a Judgment on the Pleadings to dismiss the Appellant's case.
Appellant opposed. On February 10, 2013 Judge Barrie called a
hearing to hear outstanding motions. The Appellant also stated –
for the record – another cause of action – violation of the **one
satisfaction rule to add to his pleadings.** Appellees opposed.

On April 22, 2014, the Appellant filed his second amended
complaint supporting his oral arguments, adding this new cause
of action. **(Vol.42: R-902)**.On April 23, 2014 Judge Barry held
another hearing. On June 5, 2014, Judge Barrie granted the
Appellee's motion for Judgment on the Pleadings – dismissing the
Appellant's case with prejudice.

### ENUMERATION OF ERRORS

1. The trial court committed a reversible error when it lifted
   the Automatic Stay allowing the case to move forward

2. The trial court committed a reversible error when it ruled
   that the Appellant's complaint failed to state a claim for
   which relief could be granted.  (All Counts)

3. The trial court committed a reversible error when it found
   that the Appellant lacked standing to challenge the
   validity of the putative assignee (Counts I, II, III, IV)

4. The trial court committed a reversible error when it found
   that the Appellant had no standing to lodge a claim to
   quiet title. (Count V )

5. The trial court committed a reversible error when it
   decided that Appellants one satisfaction claims had no
   merit.(Counts I-V)

6. The trail court committed a reversible error when it ruled
   that Appellant was not entitled to equitable, declarative
   or injunctive relief owing to Appellant having not tendered
   his arrears, and that no controversy existed that a
   declaratory judgment could resolve.(Counts II, III, IV)

7. The trial court committed a reversible error when it
   concluded that Appellant's bad faith claims against McCurdy
   and Candler were barred. (Counts II and III)

8. The trial court committed a reversible error when it
   concluded that the Appellant's loan remains valid and that
   NYBMT as the deed holder is the secured creditor.(Counts I-
   IV)

9. The Trial court committed a reversible error by denying the
   Appellants addition of 4 additional Defendants that would
   facilitate the two competing claimants settling the dispute
   relative to the Appellants loan and security deed
   (Interpleading)(Counts I-IV)

The Appellant avers that in committing these errors, the trial
court ignored the real estate record and the records of this
case which documents the disputed legal standing of the putative
assignees and holders of the security deed.

8

Appellant further avers that the trial court also too broadly applied the Montgomery v. BAC and You v. Chase rulings to conclude that validity of the Appellees standing in the Appellant's loan and security deed, and simultaneously to strip the Appellant of standing to challenge Appellees validity.

## Jurisdiction

Pursuant to O.C.G.A. §5-6-34, jurisdiction is vested in this Court because final judgment has been entered, and this case does not fall within any of the classes of cases reserved to the Supreme Court under Art. VI, § 5, ~ III; id. § 6, ~~ II-III.

### Questions/Statement of Issues on Appeal for Errors

1. Does a dual and simultaneous claim of the Security Deed for the Subject property by two different companies both of whom claim separate ownership and attempt to foreclose cause a break in the chain of title that requires documented legal resolution affirmed by the Courts or Declaratory Judgment by the Courts to repair the break in the chain of title?

   **Relevance:** The Appellant avers that the record shows that two companies: RAMP 2006-RP2 (hereafter: RAMP) and RAAC-2006-RP2 (hereafter: RAAC) claimed ownership in the Subject Property and since 2009 both have alternately claimed ownership and

actually commenced separate foreclosure proceedings on

Subject Property without any documented transfer of ownership

from one to the other.

2.  Does it violate Georgia's property laws and the laws of

equity for a lender to sell or otherwise pledge (for

consideration received) the Appellant's property, note and

security deed to two entities at the same time without canceling

the Appellant's debt and thereby doubling the Appellant's

original debt without his knowledge, permission, or consent?

a. **Relevance:** Appellant avers that the Appellees (GMAC, JPMorgan

Chase, NYBMT) have in fact received payment and encumbered him

twice for the same debt without his permission or consent. If

companies RAMP-2006 RP2 and RAAC-2006 RP2 exist or existed,

and both companies have made the aforementioned competing

claims on Appellant's property, then the lower Court committed

a reversible error by dismissing as implausible Appellant's

allegations of violation of the one satisfaction rule, denying

his Motion to Compel Discovery, denying his right to

interplead both RAMP-2006 RP2 and RAMP-2006 RP2, denying bad

faith, and damages claims.

3. Can a purported lender or their assigned deed holder legally commence foreclosure or access the Powers of Sales Clause of the Subject Property security deed when no assignment or any documentation of conveyance has been **executed** memorializing any conveyance of property/note/security deed rights to such purported lender or deed holder?

b. **Relevance:** Appellant avers that the record shows that an assignment purporting to memorize a conveyance of note and security deed to Appellee (NYBMT) was executed (not just filed late) seven months after Appellees claimed access to the Power of Sales Clause in the Appellants security deed

If execution of the conveyance must have taken place prior to any legal claim of ownership and commencement of foreclosure, and if the record affirms that the Appellees had not executed, filed, nor proffered to the Court sufficient financial or legal evidence of their ownership, then neither the company RAMP, their Trustee (NYBMT) nor their assigned "holder of the security deed" could legally claim or bring action against the Appellant for default.

11

4. Are "corrective assignments" of mortgage notes and security deeds that affect property rights required to be approved by those affected by it or by the Courts?

Relevance: If Georgia requires such "corrected assignment" to be approved, then the lower Court committed a reversible denying the Appellant discovery regarding the corrected assignments, injunctive relief and concluding that a claim of "deed holder" renders the "identity of the note holder" of no regard, and "freely assignable" in spite of a filed document that questions the integrity of the chain of title.

5. When a homeowner/borrower faces double jeopardy by two lenders who simultaneously claim that he owes them both for the same debt and each attempts to foreclose, does the homeowner/borrower have standing to challenge either or both assignments, or in the alternative to interplead the two entities to resolve the dispute regarding who he actually owes and who has access to the Powers of Sale Clause?

**Relevance:** If so, the lower Court committed a reversible error by barring the Appellant's quiet title and declaratory relief claims based on a belief that the Appellant lacks standing. It also created a reversible error by not granting his motion for

leave to join four new Appellees to this action (Ocwen Loan
Services, LLC, HLSS Holdings, LLC, Home Loan Servicing
Solutions, LLC and Berkshire Hathaway) in an attempt to
interplead RAAC and RAMP to settle the multiple claims on his
subject property, indebtedness, and the Power of Sale Clause.

6. Does an attorney have a professional and ethical
responsibility to reasonably insure that the documents upon
which it bases foreclosure proceedings, and documents it submits
into the county real estate records and to the Courts are
accurate? **Relevance:** Appellant avers that Attorney McCurdy and
Candler knew or should have known that their filed documents,
including 2nd and 3rd Notices of Foreclosure, 2nd Corrective
Assignment, were false or flawed. If attorneys have the
aforementioned professional ethical responsibility, then the
lower Court committed a reversible error to deny the Appellant
Motion to Compel discovery, bad faith and for damages.

### ARGUMENT

### Standard of Review

1. As an appellate court, "[W]e review de novo a trial
   court's determination that a pleading fails to state a
   claim upon which relief can be granted, construing the
   pleadings in the light most favorable to the plaintiff
   and with any doubts resolved in the plaintiff's favor.
   **Babalola v. HSBC Bank, USA, N.A., 324 Ga. App. 750 (751**
   **SE2d 545) (2013) [OCGA § 9-11-8(a)(2)(A)]**

2. In evaluating the sufficiency of the complaint, "[i]t
   must be remembered that the objective of the **[Civil**
   **Practice Act]** is to avoid technicalities and to require
   only a short and plain statement of the claim that will
   give the defendant fair notice of what the claim is and a
   general indication of the type of litigation involved;
   the discovery process bears the burden of filling in
   details. **[282 Ga. 714] 34;** (Citations omitted).

3. The critical question is whether, under the assumed set
   of facts, a right to some form of legal relief would
   exist. [Allied Asphalt Co. v. Cumbie, 134 Ga.App. 960,
   962, 216 S.E.2d 659 (1975)]; [accord Kansas City, St. L.
   & C. R. Co. v. Alton R. Co., 124 F.2d 780, 783 (7th

Cir.1941)]   ("`**The question is not whether the Plaintiff
has asked for the proper remedy** but whether under his
pleadings he is entitled to any remedy.'** [Cit.].").
Thus, a complaint will not be dismissed **under OCGA § 9-
11-12(b)(6)** for requesting the wrong form of relief, or
no relief at all, as long as the complainant is entitled
to some legal remedy under the facts pled. **See OCGA § 9-
11-54(c)(1)**.


## 1. Arguments Supporting Error to Lift Automatic Stay

In order to lift the Stay, only non-monetary claims against
Appellee GMAC could be adjudicated. **(Vol.23:R-410, Paragraph 14)**

Appellant's pleadings throughout and clarification in his
Opposition to the Appellees' Motion to Reopen the Case clearly
articulates that he has monetary claims against defendant GMAC
(ResCap) **(Vol.23 and 25, R-410 and476)**. Additionally, the record
shows that Appellant had filed a claim against Appellee/Creditor
– GMAC (ResCap) in the US Southern District of New York
Bankruptcy Court for $2,275,000.00 pursuant to section 502(b) of

title 11 of the United States Code (the "Bankruptcy Code")
**(Vol.23 and 25: R-410 and 476).**

The Appellants avers that his pleading and the aforementioned
claim bars the reopening of the case based on the requirements
of the sub paragraph (b) Bankruptcy Court's Final Supplemental
order: "the automatic stay shall remain in full force and effect
with respect to all direct claims … **for monetary relief of any
kind and any nature** against Debtors (Emphasis added)

**Appellant's one satisfaction claim is valid**

Appellant's Court appearances on Feb. 10, 2014 and April 23,
as well as his 2nd Amended Complaint **(Vol.42:R-902)** have
memorized his asserting that the Appellees are in violation of
the Court of Equity's and Georgia's One Satisfaction rule OCGA
11-3-602. See also  United States v. Reliable Transfer Co.,
Inc., 421 U.S. 397 (1975) The Supreme Court first noted that
the *"one satisfaction rule"* only comes into play in those
instances where the plaintiff would be overcompensated
*(Emphasis mine)*

The record shows that both RAMP and RAAC have claimed
ownership in the Appellant's property and both have attempted
to foreclose. **(Vol.13:R-179)**

Supreme Court Justice Kessler has been heard to say in the
oral arguments of You v. Chase (Vol.45:R - 968) that Georgia
has a one Satisfaction Rule that bars double recovery. He
further was heard to have said that if such a double jeopardy
situation would occur against a home-owner, the homeowner
could interplead the competing parties.

The lower court has ignored this equitable cause of action
articulated by the Appellant.

Likewise, the Appellant avers that the assertions that GA
Supreme Court Justice Kessler was heard to say challenges the
lower court's ruling that the Appellant has no standing to
challenge the Appellees' standing. **(Vol.45:R - 968)**

The Appellees' attempt to avert the conflicting claims is
confounded by their own Motion For Judgment on The Pleadings
**(Vol.29:R-508)** where they list a chain of title that starts
with FT Mortgage and ends with RAMP-2006 RP2, then in the foot
note #8 references a Second Corrective Assignment. This 2nd

17

Corrective Assignment as read in the court hearing of April
23rd shows that the current purported assignee of record is
RAAC-2006 RP2. Here's an excerpt from the April 23rd Hearing
Transcript Pages 7 and 8). **"The Court** (Judge Tangela Barrie):

…And then the second corrective assignment of the security
deed, which of course becomes the big issue here, and that one
is in deed book 22644, page 791, and on that one basically the
corrective assignment of the security deed shows that there's
a JP Morgan Chase Bank, NA as trustee but now it's for RAAC,
R-A-A-C, 2006 RP2.

**THE COURT:** And his (the Appellant's) position with regard to
that is that there are basically, at this point, two banks or
trust pools that has his loan, because you have one RAMP, R-A-
M-P, 2006 and then you have RAAC 2006 RP2. I think the
analysis that was given to me previously was that that was a -
- basically a clerical error and that that's the reason why
the clerical corrective assignment of security deed was done.

**MR. WINDHAM (Attorney for Appellees):** Well, I guess I would
say two things to that, your Honor. I can't confirm -- I
assume if there was a -- that there was a clerical error or

18

there could have been a transfer from RAMP to RAAC that were
all leading up to the eventual foreclosure, but --

**THE COURT:** Okay. However, my concern is -- the reason I
brought you here today, was to determine if a RAMP 2006 RP2
exists, because if it does, in fact, exist, it does mean that
there are two entities with this deed.

…But there's nothing -- you have haven't -- you haven't
articulated that there's a transfer and there is no document
that shows a transfer between -- between RAMP and RAAC."

The Appellant avers that the Appellees' record of varying and
conflicting assignees and after-the-fact assignments **(Vol.33:
R-645, Exhibit B)** followed by two corrective assignments and a
court recorded explanation – "I can't confirm," and "I
assume," and "it doesn't matter" if two different parties both
hold simultaneous notes on the subject property – evidences
both a plausible allegation of injury due to doubling
indebtedness, and a very real conflict that begs for Discovery
or Declarative judgment to clear up.

   **2. Appellant does have standing to challenge putative
   assignments and other defects**

19

**Not Barred by Montgomery v. BAC:**

The lower court leaned heavily on Montgomery v. BAC and You v. Chase to support that it doesn't matter who or how many note holders there are, the Appellant doesn't have standing to challenge assignments of notes, deeds or other defects. **This case is unlike Montgomery in key aspects:**

While Montgomery challenged MERS's right to convey the assignment to BAC, Appellant has never challenged FT Mortgage's or any succeeding assignee's right to assign the rights and interest in the security deed. Appellant has challenged the Defendant's claim that they held those rights based on (a) a broken chain of title via errors in the securitization chain violation of 14-44-162 (b) no (executed or filed) assignment prior to foreclosure **(Vol.15:R-256)**,, and in his 2nd amended complaint **(Vol.42:R – 902)** based on a break in the chain of title caused by apparently duplicated and simultaneous assignments and actual utilization of the Powers of Sales clauses by RAMP (NYBMT) and to RAAC (NYBMT).

The Appellant avers that the Montgomery Court would not have intended to preclude all borrowers from challenging the validity of mortgage assignments under Georgia law. The US District Court

for the Northern District of Georgia in **Bahaeddin Kharazmi vs.
BAC** has ruled: "While plaintiff has not asserted a viable claim
for damages for wrongful attempted foreclosure, he does assert a
cognizable claim for injunctive relief barring Bank of America
from proceeding with a foreclosure based on its alleged lack of
authority to foreclose. (Compl. ¶¶ 103-115.) A court may enjoin
a nonjudicial foreclosure sale where the authority to foreclose
is in question. See Atlanta Dwellings, Inc. v. Wright, 527
S.E.2d 854, 856 (Ga. 2000); West v. Koufman, 384 S.E.2d at 666;
Cotton v. First Nat'l Bank of Gwinnett Co., 220 S.E.2d 132 (Ga.
1975)"

While not binding in Georgia, the 6th Circuit Court of Appeals
in Slorp v. Lerner, Sampson, et al offers a persuasive course
when their ruling similar to Montgomery v. BAC was taken too
broadly: Slorp v Lerner, Sampson et al:
… But we quickly limited the scope of that rule, clarifying that
a non-party homeowner may challenge the validity of an
assignment to establish the assignee's lack of title, among
other defects. Id. (citing 6A C.J.S. Assignments § 132); see
also Carmack v. Bank of N.Y. Mellon, 534 F. App'x 508, 511- 12

21

(6th Cir. 2013). Thus a non-party homeowner may challenge a
putative assignment's validity on the basis that it was not
effective to pass legal title to the putative assignee. See
Conlin v. Mortg. Elec. Registration Sys., 714 F.3d 355, 361 (6th
Cir. 2013); Livonia Props., 399 F. App'x at 102; see also Woods
v. Wells Fargo Bank, N.A., 733 F.3d 349, 353-54 (1st Cir. 2013);
6A C.J.S. Assignments § 132.

**Not Barred by You v. Chase:**

The You v. Chase ruling does not apply in this case for
several reasons. The key one is here:

- The Appellant seeks protection from continued actual
  doubling of his debt obligation and double foreclosure
  owing to his loan/deed having been sold and owned
  simultaneously by two companies. Even if those two
  companies (RAMP and RAAC) had actual standing and did
  assign the deed to one trustee, NYBMT – that doesn't
  precludes Appellee-NYBMT from acting on both of their
  instructions to foreclose or otherwise collect the
  alleged debt. The record of Notices of Foreclosure
  past
  proves that they can and have done so in the. **Nothing**

**in the You ruling would prohibit this protection, in
fact,** based on what GA Supreme Court Justice Kessler
was heard to say at the You oral arguments, this is
the kind of protection provided by GA law.

- The Appellant has also called into question the break
  in the chain of title based upon insufficient transfer
  to RAMP or RAAC. If the attempted transfer was void,
  then NYBMT could not claim to be the holder of the
  Madzimoyo deed by virtue of being the successor
  trustee of the securitized trust.**(Vol.33:R-6453) (See
  Thomas A. Glaski, V. Bank of America, NA, et al 5th
  District Court of Appeals, California)**

## NYBMT is Not Authorized To Foreclose

The lower court presents *You v. Chase*: "First, under You,
BNY is entitled to foreclose without regard to the identity
of the note holder. **(Vol48:R – 1002)**  The Plaintiff avers
that the lower court has confused the "identities of the
note holder" with the valid authority of the note holders.

The Plaintiff avers that *You* Court assumed that the
assigner and the assignment of security deed to the
"holder" would be valid under Georgia law. **Babalola v. HSBC
Bank, USA NA (Ga. App., 2013)** demonstrates that evidence is
required to determine if you have authority to foreclose:
"We are unable to determine from the pleadings … however,
whether HSBC was the holder of the security deed, as it
contends it was, or whether Litton was appointed to serve
as HSBC's agent with respect to that deed. We are therefore
constrained to find that Babalola's assertion that neither
HSBC nor Litton had the authority to foreclose on his
property supports his wrongful foreclosure claim." The
Holloway Court adds more:
"There is some evidence that U.S. Bank acquired its
security deed from a party who acquired her interest
through constructive fraud, so the bank has not shown as a
matter of law that it acquired good title. We therefore
reverse." Holloway v. U.S. Bank Trust Nat'l Ass'n, 731
S.E.2d 763, 12 FCDR 2668 (Ga. App., 2012)
The lower court also ignored the "or" and "concurrent" in
the Plaintiff's contention that the second sale of his

indebtedness paid off his mortgage loan. The Plaintiff

avers that the dual and simultaneous selling "either paid

off his mortgage **or** doubled his indebtedness without his

permission or consent. **(Vol.42:R – 902)**

The Appellants's documented objections to the 1st Corrected

assignment stand doubly here: According to US Legal.Com:

The doctrine of Scrivener's error is a legal principle

which permits a typographical error in a written contract

to be corrected by parol evidence if the evidence is clear,

convincing, and precise. ***However if such correction affects***

***property rights then it must be approved by those affected***

***by it.*** (Emphasis Added.

### Appellant has stated a claim for Wrongful
### Foreclosure, injunctive Relief, Damages, and is
### Not Bound by GA Law to Tender Arrears

"Though not always using the caption of wrongful foreclosure,

Georgia courts have recognized claims for (1) injunctive relief

to set aside a past unlawful foreclosure, (2) damages arising

out of a past unlawful foreclosure, (3) injunctive relief to

prevent an unauthorized foreclosure, and (4) damages arising

25

out of an attempted unauthorized foreclosure. See, e.g., Curl v.
Fed. Sav. & Loan, 244 S.E.2d 812, 812 (Ga. 1978); Calhoun First
Nat'l Bank v. Dickens, 443 S.E.2d 837, 838 (Ga. 1994); West v.
Koufman, 384 S.E.2d 664, 665 (Ga. 1989); Sale City Peanut &
Milling Co. v. Planters & Citizens Bank, 130 S.E.2d 518, 520
(Ga. Ct. App. 1963").

"A wrongful publication that plaintiff has defaulted on a loan
may constitute an untrue and derogatory statement concerning the
plaintiff's financial condition. See Hauf v. HomEq Servicing
Corp., No. 4:05-CV-109, 2007 WL 486699, at *6 (N.D. Ga. Feb. 9,
2007)."

In Bahaeddin Kharazmi v. BAC (US District Court for the Northern
District of GA) the Court found, "Plaintiff is alleging that
Bank of America does not hold his note. (Compl. ¶ 23.) If
Plaintiff succeeds in proving that Bank of America is not the
holder of the note, in addition to the other elements required
for injunctive relief, then no tender would be required because
no sum would be due to Bank of America under the note. See
Everson v. Franklin Discount Co., 285 S.E.2d 530, 533 (Ga.
1982); Sapp v. ABC Credit & Inv. Co., 253 S.E.2d 82, 87 (Ga.
1979); Davis v. Atlanta Fin. Co., 129 S.E. 51, 52 (Ga. 1925).

26

**Therefore, the Court finds that dismissal on grounds of failure to tender would be premature at this time, because Plaintiff has alleged facts in the complaint that suggest he owes no duty in equity to Bank of America (Emphasis mine)**

The lower court's position that "Plaintiff may not state a claim for wrongful foreclosure where no sale actually occurred" relies on **Hay v. Bank of Am**, which relies on **Edwards v. BAC** who referenced **Roper**: "Plaintiffs may not state a claim for wrongful foreclosure where no foreclosure sale has actually occurred."); **Roper v. Parcel of Land, No. 1:09-CV-0312-RWS, 2010 WL 1691836, at *2 (N.D. Ga. Apr. 23, 2010)**. On this issue, the Appellant avers Roper was poorly plead. In fact, the Plaintiff in Roper had motioned for a voluntary dismissal prior to the ruling. What's more, Roper motioned to dismiss her counsel, which was granted.

4. **Appellant's claim for quiet title is valid Regarding Quiet Title and Declaratory relief** **T**he Georgia Court of Appeals in **Washington vs. FEDERAL NATIONAL MORTGAGE** (August 6, 2014) has ruled: "Even though Washington may lack standing to bring a quiet title action, it appears that his complaint sufficiently states

a basis for the trial court to issue a declaratory judgment regarding parties."

"Although Washington characterized his action, in part, as one seeking quiet title, however "the well-established rule in Georgia is that, under our system of notice pleadings, the substance, rather than the nomenclature, of legal pleadings determines their nature." (Citation omitted.) ***Cotton v. Federal Land Bank, 246 Ga. 188, 191 (269SR2d422)(1980) See also Kuriatnyk v. kuriatnyk, 286 Ga, 589, 590 (690 SE2d 397) (2010) (accord.)*** Plaintiff avers that the same applies here.

3. On injunctive relief Georgia law is clear on this matter: ***A Court may enjoin a non-judicial foreclosure sale in a wrongful foreclosure action where the authority to foreclose is in question.*** (Emphasis added) See - Atlanta Dwellings, Inc. v. Wright, 527 S.E. 2nd 854,856 (Ga. 2000). Although the Appellees asserted and the judge ruled otherwise, Georgia Courts have already allowed ***"A claim of wrongful foreclosure or a power of sale can be asserted even though a debt is in default,"*** (Emphasis added)  Brown et al v. Freeman; and vice versa., 222 Ga App. 213 (474 SE2d 73 (1996)

### Conclusion:

For the foregoing reasons, and considering the entire record in the case, Appellant respectfully requests that

this Court reverses the trial court's rulings. Given the standards outlined above and given Washington v. FNMH which states:

"Because Washington's complaint does not disclose with certainty that he would not be entitled to any relief he seeks under any state of provable facts asserted in support thereof, the standard for dismissing his complaint has not been met. (Bakhtiarnejd v. Cox Enterprises, Inc., 247 Ga App 205, 210 (1) (541 SE2d 33)(2000).

The trail court committed a reversible error by ignoring Appellant's well-plead, factual and plausible allegations as well as genuine disputes of fact. Accordingly, the trial courts order of dismissal in this case should be reversed.

Submitted this _____ day of _____, 2014

_____ Date: _____

Wekesa O. Madzimoyo
Pro Se Litigant
Address: 852 Brafferton, PL
Stone Mountain, GA 30083
Email: wekesa@gmail.com

## CERTIFICATION OF SERVICE

I hereby certify that a true and correct copy of the foregoing

Appellant Brief and Argument for Appeal has been served via U.S.

mail to:

Mark J. Windham
Troutman Sanders, LLP
600 Peachtree Street, NE, Suite 5200
Atlanta, GA 30308


Frank R. Olson
McCurdy & Candler, LLC
3525 Piedmont Road, NE
Bldg. 6, Suite 700
ATL, GA 30305


_____

Wekesa O. Madzimoyo, Appellant
852 Brafferton Place, Stone MT, GA 30083
404-201-2356
Wekesa@gmail.com

30

# EXHIBIT 2

WEKESA O MADZIMOYO
852 BRAFFERTON PLACE
STONE MOUNTAIN GA  30083-4703



Dear Wekesa O Madzimoyo:

We are writing to notify you that the servicing of your mortgage loan, that is, the right to collect payments from you, is being assigned, sold, or transferred from Homecomings Financial, LLC ("Homecomings Financial") to GMAC Mortgage, LLC (GMAC Mortgage), effective July 1, 2009.

**Please note that GMAC Mortgage and Homecomings Financial are affiliated companies. The only change to your mortgage account will be the name of your loan servicer.** Your new loan payments will be made payable to GMAC Mortgage instead of Homecomings Financial. Your account number, place for payments, and all other information relating to your mortgage loan remains the same.

*The assignment, sale, or transfer of the servicing of the mortgage loan does not affect any term or condition of the mortgage instruments, other than terms directly related to the servicing of your loan.*

Except in limited circumstances, the law requires that your present servicer send you this notice at least 15 days before the effective date of the transfer. Your new servicer must also send you this notice no later than 15 days after this effective date. In this case, all necessary information is combined in this one notice.

As of June 4, 2009 your current principal balance is $136,253.74, your current escrow balance is $1,209.21, your current interest rate is 6.660%, your total monthly payment is $1,396.94, and your next due date is 4/1/2009.

**Your present servicer is Homecomings Financial.**
Prior to July 1, 2009, if you have any questions regarding your account or the transfer of servicing, call Homecomings Financial's Customer Care Department toll free at 1-800-206-2901 between 6:00 am and 10:00 pm Central Time, Monday through Friday, and between 8:00 am and 2:00 pm Central Time, on Saturdays.

**Your new servicer will be GMAC Mortgage.**
Beginning July 1, 2009, if you have any questions regarding your account or the transfer of servicing, call GMAC Mortgage's Customer Care Department toll free at 1-800-766-4622 between 6:00 am and 10:00 pm Central Time, Monday through Friday, and between 8:00 am and 2:00 pm Central Time, on Saturdays.

**For GMAC Mortgage Customer Inquiries**
Beginning July 1, 2009, written inquiries regarding your account should be directed to GMAC Mortgage's Customer Care Correspondence Department at the following address:

> **GMAC Mortgage**
> **PO Box 4622**
> **Waterloo, IA  50704-4622**

**For GMAC Mortgage Customer Payments**
The mailing address for payments will not change. Payments will be processed by Homecomings Financial if received prior to July 1, 2009 and will be processed by GMAC Mortgage if received after July 1, 2009. Please send all payments due on or after that date to GMAC Mortgage at the following address:

> **GMAC Mortgage**
> **PO Box 780**
> **Waterloo IA  50704-0780**

or the address provided on your GMAC Mortgage billing statement.

**For Homecomings Financial Website Customer Payments**
If you have been utilizing the bill-pay service on Homecomings Financial's website, this service will be transitioned to the GMAC Mortgage Website, at www.gmacmortgage.com, via secure transfer in the near future. Your user-name and password will not change and you will not need to re-register or re-enroll in your current payment program.

**Other Important Information**
Please see the back side of this letter for additional information about Automatic Payment Deductions, Government Allotment Bill Pay Services, Optional Insurances, Year-end Statements, Credit Reporting, and related information from the Real Estate Settlement Procedures

(31)

# EXHIBIT 3

`

tifier:7800527285    Doc Type:NOTE

# NOTE

LOAN # 0010150886

March    23    1999        Stone Mountain                     Georgia
  [Date]                      [City]                            [State]

                 852 Brafferton Place
                 Stone Mountain, GA    30083
                      [Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 140,600.00   (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is

FT Mortgage Companies, d.b.a., EquiBanc Mortgage Corporation                    . I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of    10.875   %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the    1   day of each month beginning on    May   1999   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on    April   1   2029   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   2974 LBJ Freeway   Second Floor, Suite 200   Dallas, TX   75234                                           or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $  1,325.71

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   5.000   % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

(D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**MULTISTATE FIXED RATE NOTE - Single Family - FNMA/FHLMC UNIFORM INSTRUMENT**        03/23/99   Form 3200 12/83
                                                                                      16:24:36
Page 1 of 2
-6A (9410)                                                             VMP MORTGAGE FORMS - (800)521-7291



**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of this different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
WEKESA O. MADZIMOYO      -Borrower
SSN:  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

_____ (Seal)
                              -Borrower
SSN:

_____ (Seal)
                              -Borrower
SSN:

_____ (Seal)
                              -Borrower
SSN:

(Sign Original Only)

03/23/99
16:24:37 1

Form 1200 12/83

-8A (9410)

Page 1 of 7

# EXHIBIT 4

# NOTE

LOAN # ____0886

March    23    1999        Stone Mountain                    Georgia
   [Date]                       [City]                       [State]

852 Brafferton Place
Stone Mountain, GA    30083
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    140,600.00    (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is

FT Mortgage Companies d.b.a. EquiBanc Mortgage Corporation    . I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of ·    10.875    %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the    1    day of each month beginning on    May
1999   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on    April    1    2029    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at    2974 LBJ Freeway  Second Floor, Suite 200
Dallas, TX  75234    or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $  1,325.71

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

### (D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**MULTISTATE FIXED RATE NOTE** - Single Family - FNMA/FHLMC UNIFORM INSTRUMENT    03/23/99  Form 3200 12/83
16:24:36 E    Amended 5/91

 -5A (9410)                Page 1 of 2
VMP MORTGAGE FORMS - (800)521-7291

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
WEKESA O. MADZIMOYO          -Borrower
SSN: 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

PAY TO THE ORDER OF
The First National Bank of Chicago as Trustee
WITHOUT RECOURSE
Residential Funding Corporation
By _Judy Faber_
Judy Faber, Vice President

_____ (Seal)
                              -Borrower
SSN:

_____ (Seal)
                              -Borrower
SSN:

_____ (Seal)
                              -Borrower
SSN:

*(Sign Original Only)*

Pay to the order of
RESIDENTIAL FUNDING CORPORATION
Without Recourse
FT Mortgage Companies /
dba Equibanc Mortgage Corporation
Donna L. Cribbs
Vice President

03/23/99
16:24:37 F

---

## ALLONGE TO PROMISSORY NOTE

**FOR PURPOSES OF FURTHER ENDORSEMENT OF THE FOLLOWING DESCRIBED NOTE, THIS ALLONGE IS AFFIXED AND BECOMES A PERMANENT PART OF SAID NOTE**

---

**POOL: 4382**          **LOAN ID:** ███8554          

1 8 9 8 5 5 4

**NOTE DATE: 03/23/1999**     **LOAN AMOUNT: $140600.00**

**BORROWER NAME: WEKESA MADZIMOYO**

**PROPERTY ADDRESS: 852 BRAFFERTON PLACE, STONE MOUNTAIN, GA 30083**

---

PAY TO THE ORDER OF

RESIDENTIAL FUNDING CORPORATION

WITHOUT RECOURSE

Bank One National Association as Trustee, f/k/a The First National Bank of Chicago as Trustee,
Residential Funding Corporation as Attorney in Fact

By: _____

John Hagebock, Vice President
Residential Funding Corporation

PAY TO THE ORDER OF
JP MORGAN CHASE BANK, AS TRUSTEE
WITHOUT RECOURSE
Residential Funding Corporation

By _____

Judy Faber, Vice President

# EXHIBIT 5

2011026858    DEED BOOK 22326 Pg 593

Filed and Recorded:
1/24/2011 2:43:09 PM
Linda Carter
Clerk of Superior Court
DeKalb County, Georgia

When Recorded, Return to:
Attn:  Anthony DeMario/Foreclosure Dept/sm
McCurdy & Candler, L.L.C.
3525 Piedmont Road NE, Six Piedmont Center, Suite 700
Atlanta, GA 30305

STATE OF _Pennsylvania_
COUNTY OF _Montgomery_

Clerk, please cross reference to
Security Deed in Deed Book 10618, Page 268
Assignment in Deed Book 21860, Page 499
DeKalb County, Georgia Records

File No. 09-15522

## \* CORRECTIVE ASSIGNMENT OF SECURITY DEED

FOR VALUE RECEIVED, **The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank, N.A. as Trustee s/b/m to Bank One, N.A. as Trustee s/b/m to The First National Bank of Chicago as Trustee** (hereinafter referred to as "Assignor") hereby sells, assigns, transfers, sets over and conveys without recourse unto **The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank, N.A. as Trustee s/b/m to Bank One, N.A. as Trustee s/b/m to The First National Bank of Chicago as Trustee for RAMP 2006RP2** (hereinafter referred to as "Assignee"), whose address is 1100 Virginia Drive Fort Washington, PA 19034, that certain Security Deed or Deed to Secure Debt executed by Wekesa O. Madzimoyo  to FT Mortgage Companies d.b.a. EquiBanc Mortgage Corporation  and dated March 23, 1999, recorded in Deed Book 10618, Page 268, Clerk's Office, Superior Court of DeKalb County, Georgia, together with the real property therein described, which has the property address of 852 Brafferton Place; and also the indebtedness described in said Deed and secured thereby,  having this day been transferred and assigned to the said Assignee together with all of Assignor's right, title and interest in and to the said Deed, the property therein described and the indebtedness secured; and the said Assignee is hereby subrogated to all the rights, powers, privileges and securities vested in Assignor under and by virtue of the aforesaid Security Deed or Deed to Secure Debt.

**\* This Corrective Assignment of Security Deed is being recorded in order to correct the corporate names of the Assignee and Assignor.**

This Assignment of Security Deed is executed on this _18th_ day of _January_, 2011.

Signed, sealed and delivered
in the presence of:

The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank, N.A. as Trustee s/b/m to Bank One, N.A. as Trustee s/b/m to The First National Bank of Chicago as Trustee

By: _____
Its: Mira Smoot    Authorized Officer

By: _____        Susan Turner
Its:
    Authorized Officer

Unofficial Witness  _Rosemarie_

Notary Public

My Commission Expires: _____

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Trina Wiltbank, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires Sept. 19, 2013
Member, Pennsylvania Association of Notaries

# EXHIBIT 6

Deed Book 11849 Pg   76
Filed and Recorded Feb-05-2001 10:47am
2001-0013187

*Linda Carter*

Linda Carter
Clerk of Superior Court Dekalb Cty. Ga.

## ASSIGNMENT  *10 : 8 9*

**STATE OF GEORGIA**

**COUNTY OF FULTON**

After Recording Return To:

PEELLE MANAGEMENT CORPORATION
ASSIGNMENT JOB #90603
P.O. BOX 1710
CAMPBELL, CA 95009-1710
1-408-866-6668

FT Mortgage Services
19741 King William
Dallas, TX 75220
ATTN: Final Documents
Loan #_____ 0886

*8554*                                  *4382*

FOR VALUE RECEIVED, FT MORTGAGE COMPANIES DBA EQUIBANC MORTGAGE
CORPORATION, (Assignor), a corporation organized and doing business under the laws of the State of Kansas,
having its office and principal place of business at 2974 LBJ Freeway, Suite 200, Dallas, TX 74234, hereby sells,

assigns, transfers and sets over to _____ THE FIRST NATIONAL BANK OF CHICAGO AS TRUSTEE _____
One First national Plaza, Suite 0126, Chicago, Illinois 60670-0126

(Assignee), its successors and/or assigns, all its rights, title and interest in and to a certain Deed to Secure Debt dated

March   23 , 1999  executed by  WEKESA O. MADZIMOTO _____

_____ *REC: 4-2-99   INST # 1999- 0045166* _____ ,

in the principal sum of $_____ 140,600.00  and filed for record in the Office of the Clerk of Superior Court of

DeKalb _____ County, Georgia, and recorded in Deed Book *10618* , Page

*268* , aforesaid records. The Assignor specifically sells, assigns, transfers and sets over to the Assignee, its
successors and assigns, the aforesaid Deed to Secure Debt, the property described therein, the indebtedness secured
thereby, with all powers, options, privileges and immunities therein contained.  The Assignor has this day sold and
endorsed to the Assignee, **WITHOUT RECOURSE**, the Note secured by the aforesaid Deed to Secure Debt, and this
Assignment is made to secure the Assignee, its successors and assigns, in the payment of the Said Note.  **IN WITNESS
WHEREOF**, the Assignor has hereunto set its hand and affixed its seal by and through its seal and its duly authorized

officers, this _____ 26th _____ day of ___ March _____ , 1999 _____ .

FT Mortgage Companies dba
EquiBanc Mortgage Corporation

BY: *Susan L Grabryan*

**Susan L. Grabryan**
**Asst. Vice President**

Signed, Sealed and Delivered
in the presence of:

*Witness signature*
WITNESS

*Cheryl McIntyre*
NOTARY PUBLIC

Form EQSIGNGA (04/97)



1978

03/26/99
16:27:08



CHERYL McGINTY
MY COMMISSION EXPIRES
FEB
25
2003
COBB COUNTY, GEORGIA
NOTARY PUBLIC

# EXHIBIT 7

IN THE SUPERIOR COURT OF DEKALB COUNTY
STATE OF GEORGIA

WEKESA O. MADZIMOYO,    )
    )
    PLAINTIFF,    )
    )
    -versus-    )    CIVIL ACTION FILE NUMBER
    )    09-CV-9136-10
THE BANK OF NEW YORK    )
MELLON TRUST COMPANY et.al.,    )
    )
    DEFENDANT.    )

## ORDER REOPENING PROCEEDINGS

This matter, having come before the Court on Defendant GMAC's Motion to

Reopen Proceedings with Supporting Briefs, is hereby Reopened. The Clerk of Court is

ORDERED to Reopen this matter *instanter*.

IT IS SO ORDERED,

This _____ day of _____, 2013

_____
TANGELA M. BARRIE, JUDGE
DEKALB COUNTY SUPERIOR COURT
STONE MOUNTAIN JUDICIAL CIRCUT

Copy: Wekesa O. Madzimoyo
     Alexandria J. Reyes
     Mark J. Windham

# EXHIBIT 8

2011155103    DEED BOOK **22644** Pg **791**

Filed and Recorded:
9/27/2011 10:30:53 AM
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

When Recorded, Return to:
Attn: Edwin A. Caplan
McCurdy & Candler, LLC
3525 Piedmont Road NE, Six Piedmont Center, Suite 700
Atlanta, GA 30305

Please cross-reference to Security Deed
in DB 10618, P 268; Assignment in
DB 21860, P 499; and Corrective
Assignment in DB 22326, P 593

STATE OF **Pennsylvania**
COUNTY OF **Montgomery**

File No. 09-15522

## **\*\*SECOND CORRECTIVE ASSIGNMENT OF SECURITY DEED**

FOR VALUE RECEIVED, **The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank, N.A. as Trustee s/b/m to Bank One, N.A. as Trustee s/b/m to The First National Bank of Chicago as Trustee** (hereinafter referred to as "Assignor") hereby sells, assigns, transfers, sets over and conveys without recourse unto **The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank N.A. as Trustee for RAAC 2006RP2** (hereinafter referred to as "Assignee"), whose address is 1100 Virginia Drive, Fort Washington, PA  19034, that certain Security Deed or Deed to Secure Debt executed by Wekesa O. Madzimoyo to FT Mortgage Companies d.b.a. EquiBanc Mortgage Corporation and dated March 23, 1999, recorded in Deed Book 10618, Page 268, Clerk's Office, Superior Court of DeKalb County, Georgia, together with the real property therein described, which has the property address of 852 Brafferton Place, Stone Mountain, GA  30083; and also the indebtedness described in said Deed and secured thereby,  having this day been transferred and assigned to the said Assignee together with all of Assignor's right, title and interest in and to the said Deed, the property therein described and the indebtedness secured; and the said Assignee is hereby subrogated to all the rights, powers, privileges and securities vested in Assignor under and by virtue of the aforesaid Security Deed or Deed to Secure Debt.

**\*\* This Second Corrective Assignment of Security Deed is being recorded in order to correct the Assignee/Trust name.**

This Assignment of Security Deed is executed on this _20_ day of _September_, 20 _11_.

Signed, sealed and delivered

in the presence of:

The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank, N.A. as Trustee s/b/m to Bank One, N.A. as Trustee s/b/m to The First National Bank of Chicago as Trustee

By: _____
Its:   Mary Ladd    **Authorized** Officer

By: _____
Its:   Jacqueline Keele/Authorized Officer

Witness  Vogander Law

Witness  Lepketia Dukes

DEED BOOK 22644 Pg 792
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

ACKNOWLEDGMENT

Pennsylvania

STATE OF _Pennsylvania_

COUNTY OF _Montgomery_

On _9-20-2011_ before me, _Regina M. Frederick_, a Notary Public in and for said state, personally appeared _Mary Ladd_ and _Jackie Keily_, personally known to me, or proved to me on the basis of satisfactory evidence, to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _Pennsylvania_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public _Regina M. Frederick_                    (Seal)

NOTARIAL SEAL
REGINA M FREDERICK
Notary Public
UPPER DUBLIN TWP, MONTGOMERY COUNTY
My Commission Expires Nov 22, 2012

# EXHIBIT 9

# Affidavit of Wekesa O. Madzimoyo

STATE OF GEORGIA
COUNTY OF __*GA*__

The undersigned, WEKESA O. MADZIMOYO, being duly sworn, hereby deposes and says:

1. I am over the age of 18 and am a resident of the State of Georgia. I have personal knowledge of the facts herein, and, if called as a witness, could testify completely thereto.

2. I suffer no legal disabilities and have personal knowledge of the facts set forth below.

3. On January 7, 2013, I attended the GA State Supreme Court's oral arguments in the case You V. Chase. In response to You's attorney's questioning of double jeopardy if the court allows for holders of the security deed to foreclose, GA Supreme Court Justice David E. Nahmias was heard to say: "If there were two or more parties attempting to foreclose or collect on a note, that GA has a 'One-Satisfaction' rule and the homeowners would be able to inter-plead so that the parties would be able to settle all disputes.

I declare that, to the best of my knowledge and belief, the information herein is true, correct, and complete.

Executed this __4th__ day of __November__, 20 __14__.

Wekesa O. Madzimoyo

## NOTARY ACKNOWLEDGEMENT

STATE OF GEORGIA, COUNTY OF DEKALB

On this _4th_ day of _November_ , _2014_ , before me,
_Nobantu Ankoanda_ , personally appeared Wekesa O Madzimoyo,
known to me (or satisfactorily proven) to be the persons whose names are subscribed
to the within Affidavit, and, being first duly sworn on oath according to law, deposes
and says that he/she has read the foregoing Affidavit subscribed by him/her, and that
the matters stated herein are true to the best of his/her information, knowledge and
belief.

In witness whereof I hereunto set my hand
and official seal.

_(signature)_

Notary Public

_____

Title (and Rank)

My commission expires _11/17/2014_