**EXHIBIT A**

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)
SEVENTY-FIFTH OMNIBUS OBJECTION - NO LIABILITY BORROWER CLAIMS

| | Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|
| 1 | Michael Wheeler 1728 Victoria Way NW Kennesaw, GA 30152 | 4940 11/15/2012 | $2,180,000.00 General Unsecured | Homecomings Financial, LLC 12-12042 | Escrow Issues, Res Judicata | Claimant's loan on the Victoria Way property was originated by Terrace Mortgage Company on September 26, 2002.  Debtor Residential Funding Company purchased the loan from Terrace Mortgage.  Debtor transferred its interest when the loan was securitized on or about December 1, 2002 where JP Morgan Chase Bank was appointed as Trustee.  Debtor Homecomings Financial serviced the loan on the Victoria Lane property from October 30, 2002 until servicing transferred to GMAC Mortgage, LLC on July 1, 2009.  GMAC Mortgage serviced Claimant's loan on the Victoria Way property until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.  Debtor's involvement with Claimant's loans was limited to its roles as purchaser and servicer.<br><br>Claimant's loan on the London Court property was originated by Equifirst Corporation on August 4, 2004.  Debtor Residential Funding Company purchased the loan from Equifirst.  Debtor transferred its interest when the loan was securitized on or about December 1, 2004 where JP Morgan Chase Bank was appointed as Trustee.  Debtor Homecomings Financial serviced Claimant's loan on the London Court property from December 9, 2004 until servicing transferred to GMAC Mortgage, LLC on July 1, 2009.  GMAC Mortgage serviced until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Claimant attaches to his POC a complaint filed in Superior Court of Cobb County, GA Case No. 05-01-10429-34.  The | 10 |

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | case was administratively closed on July 5, 2012. Claimant filed for stay relief which was granted on February 13, 2013, see docket #2896 Order Granting Limited Stay Relief.  The Order granted Claimant relief to proceed in the state court action to resolve the litigation through to judgment.  The only remaining issue in the litigation was related to allegations related to a misapplied insurance payment from the Claimant's escrow account.  In the proof of claim, it is unclear how the Claimant was damaged by these specific allegations. All other claims were dismissed on Summary Judgment on February 10, 2009 and July 16, 2012 (and the time for appeal has passed).  A copy of both orders is attached to the Objection as Exhibit 5-1. These claims, to the extent Claimant is attempting to reassert them, are therefore barred by the doctrine of res judicata.  Claimant filed with the Superior Court a copy of the Bankruptcy Court Order granting stay relief on July 24, 2013.  Claimant, however, did not contact the clerk of court to reopen the case nor has he taken any further action in the Superior Court case.  On May 28, 2014 counsel for Debtor sent Claimant a letter inquiring of his intentions in the Superior Court action and informed him that if no action was taken to prosecute that Superior Court case, as allowed in the February 2013 Order, that Debtor would file an objection to the proof of claim.  No response was received by Claimant and there has been no activity on the Superior Court docket. Debtor has no liability for Claimant's escrow claim because Debtor's records show both the London Court and Victoria Way loans were set up with an escrow account.  On or about April 6, 2005, Debtor made a payment from the London Court escrow account in the | |

| | Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|
| | | | | | | amount of $774.64 payable to the Insurance Store in Marietta, Georgia, as agent for Auto-Owners Insurance Company ("Auto-Owners"). At the time of the payment, Debtor had confirmation that only London Court was insured with Auto-Owners. It is believed that Auto-Owners credited the $774.64 towards payment of the Victoria Way premium in error, as Auto-Owners had a policy in place on that property as well and Homecomings also serviced that loan. According to Claimant, the Victoria Way policy was due in April while the London Court policy was due in August. Claimant never notified Debtor of the misapplication of the insurance payment. | |
| 2 | Emmanuel Diryawish c/o WPAL 3415 S McClintock Rd # 112 Tempe, AZ 85282 | 446 08/31/2012 | $1,000,000.00 Secured | GMAC Mortgage, LLC 12-12032 | Loan Modification, Wrongful Foreclosure | Debtor's involvement with Claimant's loan was limited to its roles as servicer. Loan was originated by BankUnited FSB on October 6, 2006. Debtor GMAC Mortgage, LLC serviced the loan from January 1, 2007 until servicing transferred to Ocwen Loan Servicing on February 16, 2013. Debtor has no liability for claimant's loss mitigation claim because Debtor's records show: Claimant was approved for a forbearance plan on March 19, 2009 requiring payments of $1087.09 due March 30, 2009 through September 30, 2009. Claimant did not make the first payment due on the forbearance plan, and a cancelation letter was mailed out to Claimant on April 14, 2009. A new forbearance plan was approved on June 1, 2009 for 5 months for the same payment amount of $1087.09 with payments due the 5th of each month. Debtor spoke to Claimant on the phone on June 1, 2009 to inform about the new plan. Payments were made in June, July, | 10-11, 16-17 |

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | and August.  Claimant did not make the plan payment due on September 5, 2009.  This forbearance plan was cancelled on September 15, 2009 and a letter was mailed to Claimant on September 17, 2009.  During the time of this forbearance plan, Debtor was working with Claimant on a modification review, but full documents were never received.<br><br>A new forbearance plan was approved on October 3, 2009 with payments of $1087.09 due October 6, 2009 and November 6, 2009. A full workout packet was received on December 2, 2009.  The account was denied for an HAMP modification on December 8, 2009 due to the property being non-owner occupied.  On December 11, 2009, the account was denied for traditional modification as income didn't support payment.  A denial letter was sent. Debtor continued to work with Claimant on loss mitigation options.  Debtor continued to provide short term forbearance agreements while reviewing for a modification and place the foreclosure on hold each time.  Claimant submitted a full packet for loan modification review on February 5, 2010.  A permanent modification was approved on April 15, 2010.  Claimant made the modified payments under the modification and was current as of the date of transfer to Ocwen.<br><br>Debtor has no liability for claimant's wrongful foreclosure claim because Debtor's records show Claimant received a breach letter on March 4, 2009 as the account was due for the January through March 2009 payments.  The account was referred to foreclosure on April 15, 2009 and a notice of foreclosure sale was executed on April 21, 2009.  Debtor appropriately appointed ETS as successor trustee on April 20, 2009.   The foreclosure hold was reviewed every 30 days from the time modification | |

| | Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|
| | | | | | | review began in 2009 to the date that the modification became final on the loan in 2010. Each time loss mitigation activity was being conducted the foreclosure was placed on hold, but did not terminate the foreclosure. | |
| | | | | | | Claimant also attaches a complaint to POC (Superior Court of Arizona, Maricopa County, CV 2012-050377). The complaint was dismissed for lack of prosecution on November 14, 2012. | |
| | | | | | | Based on the facts and reasons stated above, the proof of claim does not give rise to liability for claims of breach of contract, declaratory judgment, fraud or breach of implied covenant of good faith and fair dealing. | |
| 3 | Debra Young and Samuel Young David H. Kaplan, Esq. 20 Continental Drive, Building One Stanhope, NJ 7874 | 1383 10/18/2012 | $750,000.00 General Unsecured | GMAC Mortgage, LLC 12-12032 | Loan Modification, Wrongful Foreclosure, Origination Issues | Debtor's involvement with Claimant's loan was limited to its role as servicer of the loan. Debtor GMAC Mortgage, LLC serviced the loan from August 10, 2007 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013. The loan was originated by MortgageIT, Inc. on August 1, 2007. The account was referred to foreclosure on June 8, 2009 as the account was due for the April 1, 2009 payment. On November 19, 2010, a foreclosure complaint was filed by HSBC Bank, NA, as trustee. On May 20, 2011, Claimants filed an answer, counterclaim and third-party claim, adding Debtor GMAC Mortgage and Wells Fargo. The counterclaim and third party complaint includes the same allegations against all parties, including violation of the NJ Consumer Fraud Act, fraud, unconscionability, unjust enrichment, breach of fiduciary duty, violation of good faith and fair dealing, and the NJ Home Ownership Act. These are the same claims that were raised in the proofs of claim. At the foreclosure trial on November 30, | 9, 10-11, 16-17 |

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | 2011, the court dismissed the foreclosure complaint without prejudice due to a deficient NOI (i.e., name on the notice was GMACM which was the servicer not the lender, and the statute requires the lender's name be on the notice) and severed the cross-claims and counterclaims and transferred them to the law division. Those cross-claims and counterclaims were stayed.<br><br>Debtors have no liability for Claimant's origination-based claims because no Debtor entity was involved in the origination of this loan.<br><br>Debtors have no liability for Claimant's loan modification-based claims because Debtor handled all aspects of the loan modification process appropriately. Debtor's records show that on February 26, 2009, Claimant executed a fixed rate loan modification agreement (the "Modification"). The Modification terms included: an interest rate of 6.5%, a monthly P&I payment of $4,086.95 beginning April 1, 2009, a maturity date of August 1, 2037, and under section 3 of the modification agreement it states, "The amounts indicated in this paragraph do not include any required escrow payments of items such as hazard insurance or property taxes; if such escrow payments are required the monthly payments will be higher and may change as the amounts required for escrow items change." The escrow payment effective with the 4/1/09 payment was $1,369.63. The monthly payment due on the original note immediately prior to the February 2009 Modification included $4,204.34 for P&I and $1,363.63 for Escrow for a total payment of $5,597.40. The benefits of the modification include i) a reduction to the P&I payment of $117.39 per month, ii) a reduction to the interest rate from 6.875% to | |

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | 6.5%, and iii) the February and March 2009 past due payments were brought current. Debtor's records also show an additional loss mitigation review in 2011. A workout packet was received on November 8, 2011; however the packet was missing a paystub and Debtor could not complete the modification review.  Debtors have no liability for Claimant's wrongful foreclosure claims because the Debtor's records show that no payment was made under the Modification.  Based on the facts and reasons stated above, the proof of claim does not give rise to liability for claims of violation of the NJ Consumer Fraud Act, fraud, unconscionability, unjust enrichment, breach of fiduciary duty, violation of good faith and fair dealing, or the NJ Home Ownership Security Act. | |
| 4    HSBC BANK USA NATIONAL ASSOCIATION AS TRUSTEE FOR DEUTSCHE ALT 2007 3 PLAINTIFF V DEBRA M YOUNG MR YOUNG HUSBAND et al  LAW OFFICE OF DAVID H KAPLAN LLC  20 CONTINENTAL | 929 10/03/2012 | $750,000.00 General Unsecured | GMAC Mortgage, LLC 12-12032 | Loan Modification, Wrongful Foreclosure, Origination Issues | Debtor's involvement with Claimant's loan was limited to its role as servicer of the loan. Debtor GMAC Mortgage, LLC serviced the loan from August 10, 2007 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013. The loan was originated by MortgageIT, Inc. on August 1, 2007.  The account was referred to foreclosure on June 8, 2009 as the account was due for the April 1, 2009 payment. On November 19, 2010, a foreclosure complaint was filed by HSBC Bank, NA, as trustee.  On May 20, 2011, Claimants filed an answer, counterclaim and third-party claim, adding Debtor GMAC Mortgage and Wells Fargo.  The counterclaim and third party complaint includes the same allegations against all parties, including violation of the NJ Consumer Fraud Act, fraud, unconscionability, unjust enrichment, breach of fiduciary duty, violation of good faith and fair dealing, and the NJ Home Ownership | 9, 10-11, 16-17 |

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| DR BUILDING ONE<br><br>STANHOPE, NJ 7874 | | | | | Act.  These are the same claims that were raised in the proofs of claim.  At the foreclosure trial on November 30, 2011, the court dismissed the foreclosure complaint without prejudice due to a deficient NOI (i.e., name on the notice was GMACM which was the servicer not the lender, and the statute requires the lender's name be on the notice) and severed the cross-claims and counterclaims and transferred them to the law division.  Those cross-claims and counterclaims were stayed.<br><br>Debtors have no liability for Claimant's origination-based claims because no Debtor entity was involved in the origination of this loan.<br><br>Debtors have no liability for Claimant's loan modification-based claims because Debtor handled all aspects of the loan modification process appropriately.  Debtor's records show that on February 26, 2009, Claimant executed a fixed rate loan modification agreement (the "Modification").  The Modification terms included: an interest rate of 6.5%, a monthly P&I payment of $4,086.95 beginning April 1, 2009, a maturity date of August 1, 2037, and under section 3 of the modification agreement it states, "The amounts indicated in this paragraph do not include any required escrow payments of items such as hazard insurance or property taxes; if such escrow payments are required the monthly payments will be higher and may change as the amounts required for escrow items change."  The escrow payment effective with the 4/1/09 payment was $1,369.63. The monthly payment due on the original note immediately prior to the February 2009 Modification included $4,204.34 for P&I and $1,363.63 for Escrow for a total payment of $5,597.40. The benefits of the modification | |

| | Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|
| | | | | | | include i) a reduction to the P&I payment of $117.39 per month, ii) a reduction to the interest rate from 6.875% to 6.5%, and iii) the February and March 2009 past due payments were brought current.  Debtor's records also show an additional loss mitigation review in 2011.  A workout packet was received on November 8, 2011; however the packet was missing a paystub and Debtor could not complete the modification review.  Debtors have no liability for Claimant's wrongful foreclosure claims because the Debtor's records show that no payment was made under the Modification.  Based on the facts and reasons stated above, the proof of claim does not give rise to liability for claims of violation of the NJ Consumer Fraud Act, fraud, unconscionability, unjust enrichment, breach of fiduciary duty, violation of good faith and fair dealing, or the NJ Home Ownership Security Act. | |
| 5 | Mihailescu Florin PMB 545  8776 E Shea Blvd # 33A  Scottsdale, AZ 85260-6629 | 274 07/09/2012 | $496,000.00 General Unsecured | GMAC Mortgage, LLC 12-12032 | Wrongful Foreclosure | Debtors' involvement with Claimant's loan was limited to its roles as purchaser and servicer of the loan. SolutionsBank originated the loan on May 18, 2009. Non-debtor GMAC Bank purchased from SolutionsBank and Debtor GMAC Mortgage purchased the loan from GMAC Bank.  GMAC Mortgage transferred its interest to Fannie Mae on or about June 11, 2009.  Debtor GMAC Mortgage, LLC serviced the loan from May 18, 2009 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.  This 2009 loan from SolutionsBank paid off a prior loan serviced by GMAC Mortgage.  A release of mortgage on the prior loan was recorded on June 2, 2009.  Claimant states basis on proof of claim as "wrongful foreclosure" but provides no other information.  No | 10-11 |

| | Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|
| | | | | | | response was received to the request for additional information that was sent to Claimant.

Debtor has no liability for Claimant's claim for wrongful foreclosure because: Note is endorsed from SolutionsBank to GMAC Bank, from GMAC Bank to GMAC Mortgage, LLC, and from GMAC Mortgage, LLC to Fannie Mae; assignment of the mortgage is recorded from SolutionsBank to Mortgage Electronic Registration System (MERS), and from MERS to GMAC Mortgage, LLC; the loan was due for May 1, 2011 at the time of the August 5, 2011 foreclosure referral; a foreclosure Petition was filed November 1, 2011; and Claimant filed an answer to the foreclosure on March 23, 2012. The foreclosure is still pending with Ocwen, as successor servicer.

Claimant had filed litigation in District Court of Johnson County, Kansas, Case No. 11-CV07709. That case was dismissed by plaintiff on September 14, 2012. | |
| 6 | Eliza Hemenway ELIZA HEMENWAY VS GMAC MORTGAGE LLC

259 Oak Street

San Francisco, CA 94102 | 2074 11/01/2012 | UNLIQUIDATED General Unsecured | GMAC Mortgage, LLC 12-12032 | General Servicing Issues | Debtors' involvement with Claimant's loan was limited to its roles as purchaser and servicer of the loan. Sierra Pacific Mortgage Company, Inc. originated the loan on July 12, 2006. Debtor Residential Funding Company, LLC purchased the loan from Sierra Pacific. Debtor transferred its interest when the loan was securitized on or about August 1, 2006 where Deutsche Bank Trust Company Americas was appointed as Trustee. Debtor Homecomings Financial serviced the loan from August 14, 2006 until servicing transferred to GMAC Mortgage, LLC on July 1, 2009. GMAC Mortgage serviced the loan until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.

Claimant alleges damages resulting from an alleged | 8-9 |

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | trespass on the property, specifically on February 10, 2012 and March 14, 2012.  Debtor has no liability for Claimant's general servicing claims because no Debtor entered Claimant's property.  Debtor's records show that routine property inspections were completed to verify occupancy and condition of the property in 2011 and 2012 (about one per month).  Inspections are regularly conducted when a property has gone delinquent to verify the property has not been abandoned or been vandalized.  Property inspections are always, and were in this case, conducted by independent contractors.  Debtor's records of these inspections show that the contractors confirmed that photographs of the property were taken on each date from a location the street, the contractors did not enter the property and did not see or speak with the homeowner.<br><br>Debtor's records show that at the time of the inspections in 2012, the loan was in default.  The account was referred to foreclosure on April 2, 2011 as the account was due for the May 1, 2010 payment. A Notice of Default was executed on October 19, 2012 as the account was due for December 1, 2010 payment.<br><br>At all times, Debtor acted in accordance with its' servicing policies, and the terms of the note and deed of trust.  Specifically, certain provisions within the deed of trust give Debtor the authority to conduct inspections and property valuations in the event Claimant is in default, Section 7 of the deed of trust states in part "Lender or its agent may make reasonable entries upon and inspections of the property."  Section 9 of the deed of trust states in part "If a Borrower fails to perform the covenants and agreements contained in this security instrument… then Lender may do and pay for whatever is reasonable or | |

| | Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|
| | | | | | | appropriate to protect Lender's interest in the property…including protecting and/or assessing the value of the property". Section 14 of the deed of trust states that "Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purposes of protecting Lender's interest in the Property and rights under the security instrument, including but not limited to, attorney's fees, property inspection fees and valuation fees..." As a result, Debtor has no liability for Claimant's allegations related to assault, trespass or intentional infliction of emotional distress. | |
| 7 | Steven D Brockman and Edna C Brockman v GMAC Mortgage LLC et al.

Johnson and Johnson LLP

26060 Acero, Ste. 115

Mission Viejo, CA 92691-2768 | 2408 11/05/2012 | $387,000.00 General Unsecured | Executive Trustee Services, LLC 12-12028 | Origination Issues, Wrongful Foreclosure, General Servicing Issues, Res Judicata | Debtors' involvement with Claimant's loans was limited to its roles as servicer. Claimant's loan on the 708 Greenway property was originated by Paul Financial, LLC on May 5, 2006. Debtor GMAC Mortgage, LLC serviced Claimant's loan on the 708 Greenway property from August 14, 2006 until it was sold out of REO (Debtors managed for investor) on November 19, 2009. Claimant's loan on the 716 Greenway property was originated by Paul Financial, LLC on March 27, 2006. Debtor, GMAC Mortgage serviced Claimant's loan on the 716 Greenway property from June 7, 2006 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013. Claimant attaches to the proof of claim litigation filed in Superior Court of CA, Madera County, Case No. MCV057494, brought to challenge the completed non-judicial foreclosure on one of the properties and the pending non-judicial foreclosure sale on the second property. The claims for wrongful foreclosure and unfair business practices were dismissed with prejudice by demurrer, as against the Debtors, on August 28, 2012. A | 8-9, 9, 10-11, 15 |

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | copy of this Order is attached to the Objection as Exhibit 5-4.  These claims are barred by the doctrine of res judicata.  The only claims remaining are for declaratory relief and breach of contract, as they were not subject to the demurrer.  Claimant alleges that monthly payments on the loans increased due to the loan-to-value ratio increasing, and that Debtor never informed her of the adjustable rate terms.<br><br>Debtors have no liability for Claimant's origination-based claims because no Debtor was involved in the origination of the loans.  Paul Financial, LLC originated both loans, as purchase money investment properties.  Debtors' records show that in relation to each loan and property, Claimant signed a Note, Deed of Trust (including an Adjustable Rate Rider) which all include explanations of the terms of the loan, including provisions regarding initial payments, calculation of limited and full payments, recapitalization of unpaid interest resulting from limited payments into loan principal, the 110-% principal cap, and the increased fully-amortizing payment that would be triggered by approaching the 110% principal cap.<br><br>Debtors have no liability for Claimant's wrongful foreclosure claims because Debtors' records show the 708 Greenway loan was due for December 1, 2008  when it was referred to foreclosure March 10, 2009.  Foreclosure sale took place on July 15, 2009 and 716 Greenway loan was due for December 1, 2010 when it was referred to foreclosure on March 9, 2011.<br><br>As a result of the above, Debtors have no liability for Claimant's allegations related to declaratory relief or breach of contract. | |

| | Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|
| 8 | Steven D Brockman and Edna C Brockman v GMAC Mortgage LLC et al.<br><br>Johnson and Johnson LLP<br><br>26060 Acero, Ste. 115<br><br>Mission Viejo, CA 92691-2768 | 2416 11/05/2012 | $387,000.00 General Unsecured | GMAC Mortgage, LLC 12-12032 | Origination issues, Wrongful Foreclosure, General Servicing Issues, Res Judicata | Debtors' involvement with Claimant's loans was limited to its roles as servicer.  Claimant's loan on the 708 Greenway property was originated by Paul Financial, LLC on May 5, 2006.   Debtor GMAC Mortgage, LLC serviced Claimant's loan on the 708 Greenway property from August 14, 2006 until it was sold out of REO (Debtors managed for investor) on November 19, 2009.  Claimant's loan on the 716 Greenway property was originated by Paul Financial, LLC on March 27, 2006.  Debtor, GMAC Mortgage serviced Claimant's loan on the 716 Greenway property from June 7, 2006 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Claimant attaches to the proof of claim litigation filed in Superior Court of CA, Madera County, Case No. MCV057494, brought to challenge the completed non-judicial foreclosure on one of the properties and the pending non-judicial foreclosure sale on the second property.  The claims for wrongful foreclosure and unfair business practices were dismissed with prejudice by demurrer, as against the Debtors, on August 28, 2012.  A copy of the Order is attached to the Objection as Exhibit 5-4. These claims are barred by the doctrine of res judicata.  The only claims remaining are for declaratory relief and breach of contract, as they were not subject to the demurrer.  Claimant alleges that monthly payments on the loans increased due to the loan-to-value ratio increasing, and that Debtor never informed her of the adjustable rate terms.<br><br>Debtors have no liability for Claimant's origination-based claims because no Debtor was involved in the origination of the loans.  Paul Financial, LLC originated both loans, as purchase money investment properties.  Debtors' records show that in relation to each loan and property, Claimant | 8-9, 9, 10-11, 15 |

| | Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|---|
| | | | | | | signed a Note, Deed of Trust (including an Adjustable Rate Rider) which all include explanations of the terms of the loan, including provisions regarding initial payments, calculation of limited and full payments, recapitalization of unpaid interest resulting from limited payments into loan principal, the 110-% principal cap, and the increased fully-amortizing payment that would be triggered by approaching the 110% principal cap.<br><br>Debtors have no liability for Claimant's wrongful foreclosure claims because Debtors' records show the 708 Greenway loan was due for December 1, 2008 when it was referred to foreclosure March 10, 2009. Foreclosure sale took place on July 15, 2009 and 716 Greenway loan was due for December 1, 2010 when it was referred to foreclosure on March 9, 2011.<br><br>As a result of the above, Debtors have no liability for Claimant's allegations related to declaratory relief or breach of contract. | |
| 9 | Gary A. Barney, Chapter 7 Trustee, State of Wyoming<br><br>Brad T. Hunsicker Winship & Winship, PC<br><br>PO Box 548<br><br>Casper, WY 82602 | 5589 11/16/2012 | $158,912.11 General Unsecured<br><br>$105,067.20 General Unsecured | GMAC Mortgage, LLC 12-12032 | Wrongful Foreclosure | Debtors' involvement with Claimant's loan was limited to its roles as purchaser and servicer of the loan. USAA Federal Savings Bank originated the loan on August 6, 2007. Debtor GMAC Mortgage purchased the loan from USAA. Debtor transferred its interest to Fannie Mae on or about October 12, 2007. Debtor GMAC Mortgage, LLC serviced the loan from August 6, 2007until property foreclosed September 1, 2010.<br><br>Debtor has no liability for Claimant's claim seeking to avoid and recover lien on property foreclosed by Debtor. Claimant attaches to his proof of claim an Adversary Proceeding which was filed on January 19, 2011 in the US Bankruptcy Court, District of Wyoming, Case No. 11-ap-02003 ("Adversary Proceeding), from underlying personal | 10-11 |

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
|  |  |  |  |  | Chapter 7 bankruptcy, Timothy Jackson Rau, seeking to avoid and recover a preferential transfer or in the alternative, to avoid a lien on property.<br><br>The primary issue in the Adversary Proceeding was whether an assignment of the mortgage by MERS violated state law, because MERS was not entitled to enforce the debt on the Note.  On May 10, 2012, the Bankruptcy Court issued a Certification of Question to the Wyoming Supreme Court, in which it asked, "Whether the failure of the mortgage to comply with the statutory requirements of Wyo. Stat.§§ 34-2-122 and 34-2-123 renders the mortgage void, as alleged by the Plaintiff." The WY Supreme Court agreed to answer the certified question, however a notice of Debtor's bankruptcy stayed the Adversary Proceeding, which caused the WY Supreme Court to return the certified question to the Bankruptcy Court, unanswered (with the reservation to answer the question upon determination that the automatic stay would not prevent such action).<br><br>Although the WY Supreme Court returned the certified question unanswered in the Adversary Proceeding, it answered the same certified question in a another matter, Barney v BAC Home Loan Servicing, Wyoming Supreme Court, Case S-12-0177, on May 8, 2013, in which it held:  "We answer the certified question in the negative. Wyo. Stat. Ann. §§ 34-2-122 and 123 are notice statutes intended to protect third parties from conflicting claims of a principal and agent. The Mortgage at issue in this case was not required to comply with Sections 122 and 123 because a) the recorded assignment of the Mortgage did not identify the grantee as acting in a representative capacity; and; b) there were no conflicting claims of a principal and agent from which a third party |  |

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | would require protection." | |
| | | | | | On April 18, 2014, Claimant filed a status report with the Bankruptcy Court in the Adversary Proceeding which stated: "Any determination thereon is premature at this stage in light of the appeal now pending before the Tenth Circuit Court of Appeals, Case No. 13-8003, Royal v. First Interstate Bank, et al. (relating to the base case In re Trierweiler, Case No. 10-20499, Adv. No. 10-02035, pending in this Court). Plaintiff requests that this Court keep this adversary proceeding open pending the outcome of the Trierweiler appeal, which will presumably dictate what actions, if any, should be taken with respect to this Adversary Proceeding." | |
| | | | | | The Tenth Circuit Court of Appeals issued an unpublished Order and Judgment on July 2, 2014, for the Trierweiler matter, in which it affirmed the U. S. Bankruptcy Appeals Court in matter 11-111, where in a published opinion the BAP held: "The Mortgage naming MERS as Mortgagee on behalf of FIB was valid when granted and was properly recorded. There was no invalidating split between the Note and the Mortgage either when the loan transaction closed or when the Note was assigned to Fannie Mae. Therefore the Trustee may not avoid the Mortgage because of alleged invalidity resulting from the splitting of the Note and Mortgage. Further, the Trustee may not avoid the assignment of the Mortgage to Fannie Mae since the transfer was not of an interest in the Debtors' Property." | |
| 10 | 3617 11/08/2012 | $2,600.00 Priority UNLIQUIDATED General | GMAC Mortgage, LLC 12-12032 | Origination Issues, Loan Modification, Wrongful | Debtors' involvement with Claimant's loan was limited to servicer of the loan. Debtor GMAC Mortgage LLC serviced the loan from April 1, 2007 until servicing transferred to Ocwen Loan Servicing, LLC on Feb 16, 2013. MortgageIT, | 9, 10-11, 16-17 |
| | Andrea Mangan Stevan J. Henrioulle | | | | | |

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| Law Office of Stevan J. Henrioulle

969G Edgewater Blvd

Foster City, CA 94404 | | Unsecured | | Foreclosure | Inc. originated the loan on August 24, 2005.

Claimant filed litigation against Debtors and others in the Superior Court of CA, San Francisco County, Case No. CGC-10-500318.  A Notice of Bankruptcy was filed as to GMAC Mortgage and ETS on June 4, 2012.  Claimant filed a Fourth Amended Complaint on August 23, 2012 against Debtors as wells as MERS, MortgageIT, Wells Fargo and Deutsche Bank.  The court granted dismissal with prejudice of the first amended complaint as to non-Debtors on June 13, 2013, including Wells Fargo, Deutsche Bank and MortgageIT.

There were claims that were only pled against Debtors that were not pled against non-Debtors that received the dismissal.

Debtors have no liability for Claimant's origination-based claims because no Debtor was involved in the origination of Claimant's loan.  The loan was originated by MortgageIT, Inc.

Debtors have no liability for wrongful foreclosure claims because i) at the time of foreclosure sale on March 9, 2010 Claimant owed July 2009 through March 2010 payments, and had not made arrangements to bring their account current, and ii)  Claimants failed to comply with the final two Repayment Plans set-up on the account In December 2009 and February 2010, respectively.

Debtors have no liability for loan modification-related claims or claims involving improper handling of loss mitigation efforts because Claimant has failed to prove how they were damaged by such allegations. Debtors' records demonstrate an extensive effort to work with Claimant to prevent foreclosure, including providing Claimant with a permanent loan modification in January | |

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | 2009 and several subsequent repayment plans after Claimant failed to make payments under the modification agreement.  Debtors acknowledge the mistake of inadvertently not setting up the Repayment Plan promised to Claimant on October 5, 2009, and returning the two payments Claimant made under the Oct 5, 2009 Repayment Plan. However, Debtors' records show Debtor remedied the mistake by providing Claimant with a new Repayment Plan on December 9, 2009 and a subsequent Repayment Plan in February 2010.

Below is a chronology of the relevant events from the point Claimant first fell behind on payments to the point of foreclosure:

Debtors' records show Claimant's default started in October 2008.  Claimant submitted a loss mitigation workout packed on December, 10 2008 and Debtors mailed a 10 Day Missing Items Letter to Claimant. Debtors stopped modification review on December 13, 2008 due to Claimant's negative financial surplus.  On December 26, 2008 Claimant spoke to Debtors and advised no need to send missing workout information as modification has been denied based on insufficient income. Claimant advised to use rental income of $6100 that was not included prior and will submit proof of income for review.  Debtors mailed Claimant a Non-Sufficient Funds Letter on December 29, 2008 related to payment made December 15, 2008 in amount of $2,846.94 due to Claimant's bank stating account did not have funds to fulfill payment.  Claimant's proof of rental income was received on January 2, 2009.  Debtors mailed breach letter on January 2, 2009 as December 2008 and January 2009 payments were delinquent.

A traditional permanent modification was approved on | |

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | January 22, 2009. On July 27, 2009, Debtors had to reverse payment received July 15, 2009 in amount of $2,619.21 because Claimant's bank reported there were insufficient funds. Breach letter was sent on August 4, 2009 as loan was due for July and August 2009 payments. On August 4, 2009, Debtors advised Claimant of payment returned for insufficient funds and how to make payments via Western Union and MoneyGram. Claimant advised would make July 2009 payment on August 4, 2009 and August 2009 payment on August 15, 2009. Debtors setup a Repayment Plan on the account to reflect the dates these two payments would come in. On August 19, 2009, the July and August 2009 payments were due according to Repayment Plan setup on August 4, 2009, however, payments were not received and the Repayment Plan was cancelled.

Debtors referred account to foreclosure on September 8, 2009 as account was due for July through September 2009 payments. Claimant alleges the Notice of Default from September 2009 included inaccurate amounts due, which is incorrect. The initial breach letter showed a total amount due of $5,714.06 (payments (July/August) $5238.42; Late Charges $415.64 and Fees/Costs $60.00). Loan was referred to Foreclosure September 9, 2009, and amount due was $8,475.48 (payments (July/Aug/Sept) $7,857.63; Late Charges $546.60 and Fees/Costs $71.25). NOD went out September 11, 2009 with total of $10,522.56 (which included additional foreclosure fees).

Debtors set up a two month Repayment Plan with a payment due September 18, 2009 in amount of $2,619.21 and the second payment due October 18, 2009 in amount of $9,825.48. Repayment Plan was cancelled (letter was mailed to Claimant) on October 1, 2009 as no | |

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | payments were received.  On October 5, 2009, Claimant advised Debtor that payment for Repayment Plan was made but had been returned. Debtors advised payment was sent to wrong address. Debtors advised would reset Repayment Plan with first payment due October 6, 2009 in amount of $2,619.21, and on that call, Claimant stated they could pay the remaining balance due on the account of $19,772.34 on October 25, 2009 to bring account current.  Following this phone discussion, Debtor did not set-up the Repayment Plan as agreed, which was Debtor's error. Because no Repayment Plan was setup on the account, Debtor returned Claimant's payments of $2,619.21 and $9.825.45 on October 12, 2009 and October 24, 2009, respectively, on the basis that those payments were not enough to fully reinstate Claimant's account.  Although Debtors neglected to reset the Repayment Plan as promised, Debtors remedied the mistake by providing Claimant with a new Repayment Plan on December 9, 2009. | |
| | | | | | On December 9, 2009, Debtors advised Claimant that they would set-up a six month repayment plan with a first payment of $2,619.21 due on December 18, 2009. On December 29, 2009 Debtors advised of next payment due on Repayment Plan. On January 18, 2010 Claimant told Debtor they would make the payment that was due right away. Debtors mailed Repayment Plan Cancellation Letter to Claimant on January 28, 2010 due to Claimant not making payment due January 18, 2010.  On February 3, 2010 Claimant advised selling home. Debtors advised Claimant needs to send in listing agreement for consideration. | |
| | | | | | On February 4, 2010, Debtors advised that a foreclosure sale was setup for February 9, 2010. As an | |

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | accommodation to Claimant to allow Claimant time to sell the property, Debtors setup a Repayment Plan with first payment due February 20, 2010 in amount of $2,619.21, and postponed the February 9, 2009 foreclosure sale until March 9, 2010. Debtors mailed Repayment Plan Cancellation Letter to Claimant on March 5, 2009 due to Claimant not making the payment due February 20, 2010. Because Claimant failed to make payments under the February repayment plan and did not make arrangements with Debtor to bring the account current, a foreclosure sale was held on March 9, 2010. <br><br> Based on the facts and reasons stated above, the proof of claim does not give rise to liability for claims of deceit, fraudulent concealment, intentional misrepresentation, breach of contract, breach of implied covenant of good faith and fair dealing, promissory estoppel, equitable estoppel, wrongful foreclosure, or CA Business and Professional Code 17200. | |
| 11 | Andrea Mangan <br><br> Stevan J. Henrioulle Law Office of Stevan J. Henrioulle <br><br> 969G Edgewater Blvd <br><br> Foster City, CA 94404 | 3634 11/08/2012 | UNLIQUIDATED General Unsecured | Executive Trustee Services, LLC 12-12028 | Origination Issues, Loan Modification, Wrongful Foreclosure | Debtors' involvement with Claimant's loan was limited to servicer of the loan. Debtor GMAC Mortgage LLC serviced the loan from April 1, 2007 until servicing transferred to Ocwen Loan Servicing, LLC on Feb 16, 2013. MortgageIT, Inc. originated the loan on August 24, 2005. <br><br> Claimant filed litigation against Debtors and others in the Superior Court of CA, San Francisco County, Case No. CGC-10-500318.  A Notice of Bankruptcy was filed as to GMAC Mortgage and ETS on June 4, 2012.  Claimant filed a Fourth Amended Complaint on August 23, 2012 against Debtors as wells as MERS, MortgageIT, Wells Fargo and Deutsche Bank.  The court granted dismissal with prejudice of the first amended complaint as to non-Debtors on June 13, 2013, including Wells Fargo, | 9, 10-11, 16-17 |

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | Deutsche Bank and MortgageIT.<br><br>There were claims that were only pled against Debtors that were not pled against non-Debtors that received the dismissal.<br><br>Debtors have no liability for Claimant's origination-based claims because no Debtor was involved in the origination of Claimant's loan.  The loan was originated by MortgageIT, Inc.<br><br>Debtors have no liability for wrongful foreclosure claims because i) at the time of foreclosure sale on March 9, 2010 Claimant owed July 2009 through March 2010 payments, and had not made arrangements to bring their account current, and ii)   Claimants failed to comply with the final two Repayment Plans set-up on the account In December 2009 and February 2010, respectively.<br><br>Debtors have no liability for loan modification-related claims or claims involving improper handling of loss mitigation efforts because Claimant has failed to prove how they were damaged by such allegations. Debtors' records demonstrate an extensive effort to work with Claimant to prevent foreclosure, including providing Claimant with a permanent loan modification in January 2009 and several subsequent repayment plans after Claimant failed to make payments under the modification agreement.  Debtors acknowledge the mistake of inadvertently not setting up the Repayment Plan promised to Claimant on October 5, 2009, and returning the two payments Claimant made under the Oct 5, 2009 Repayment Plan. However, Debtors' records show Debtor remedied the mistake by providing Claimant with a new Repayment Plan on December 9, 2009 and a subsequent Repayment Plan in February 2010. | |

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | Below is a chronology of the relevant events from the point Claimant first fell behind on payments to the point of foreclosure: | |
| | | | | | Debtors' records show Claimant's default started in October 2008.  Claimant submitted a loss mitigation workout packed on December, 10 2008 and Debtors mailed a 10 Day Missing Items Letter to Claimant. Debtors stopped modification review on December 13, 2008 due to Claimant's negative financial surplus.  On December 26, 2008 Claimant spoke to Debtors and advised no need to send missing workout information as modification has been denied based on insufficient income. Claimant advised to use rental income of $6100 that was not included prior and will submit proof of income for review.  Debtors mailed Claimant a Non-Sufficient Funds Letter on December 29, 2008 related to payment made December 15, 2008 in amount of $2,846.94 due to Claimant's bank stating account did not have funds to fulfill payment.  Claimant's proof of rental income was received on January 2, 2009.  Debtors mailed breach letter on January 2, 2009 as December 2008 and January 2009 payments were delinquent. | |
| | | | | | A traditional permanent modification was approved on January 22, 2009.  On July 27, 2009, Debtors had to reverse payment received July 15, 2009 in amount of $2,619.21  because Claimant's bank reported there were insufficient funds.  Breach letter was sent on August 4, 2009 as loan was due for July and August 2009 payments. On August 4, 2009, Debtors advised Claimant of payment returned for insufficient funds and how to make payments via Western Union and MoneyGram. Claimant advised would make July 2009 payment on August 4, 2009 and August 2009 payment on August 15, 2009. | |

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | Debtors setup a Repayment Plan on the account to reflect the dates these two payments would come in. On August 19, 2009, the July and August 2009 payments were due according to Repayment Plan setup on August 4, 2009, however, payments were not received and the Repayment Plan was cancelled. | |
| | | | | | Debtors referred account to foreclosure on September 8, 2009 as account was due for July through September 2009 payments. Claimant alleges the Notice of Default from September 2009 included inaccurate amounts due, which is incorrect.  The initial breach letter showed a total amount due of $5,714.06 (payments (July/August) $5238.42; Late Charges $415.64 and Fees/Costs $60.00). Loan was referred to Foreclosure September 9, 2009, and amount due was $8,475.48 (payments (July/Aug/Sept) $7,857.63; Late Charges $546.60 and Fees/Costs $71.25). NOD went out September 11, 2009 with total of $10,522.56 (which included additional foreclosure fees). | |
| | | | | | Debtors set up a two month Repayment Plan with a payment due September 18, 2009 in amount of $2,619.21 and the second payment due October 18, 2009 in amount of $9,825.48. Repayment Plan was cancelled (letter was mailed to Claimant) on October 1, 2009 as no payments were received.  On October 5, 2009, Claimant advised Debtor that payment for Repayment Plan was made but had been returned. Debtors advised payment was sent to wrong address. Debtors advised would reset Repayment Plan with first payment due October 6, 2009 in amount of $2,619.21, and on that call, Claimant stated they could pay the remaining balance due on the account of $19,772.34 on October 25, 2009 to bring account current.  Following this phone discussion, Debtor did not set-up the Repayment Plan as agreed, which was | |

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | Debtor's error. Because no Repayment Plan was setup on the account, Debtor returned Claimant's payments of $2,619.21 and $9.825.45 on October 12, 2009 and October 24, 2009, respectively, on the basis that those payments were not enough to fully reinstate Claimant's account.  Although Debtors neglected to reset the Repayment Plan as promised, Debtors remedied the mistake by providing Claimant with a new Repayment Plan on December 9, 2009.

On December 9, 2009, Debtors advised Claimant that they would set-up a six month repayment plan with a first payment of $2,619.21 due on December 18, 2009. On December 29, 2009 Debtors advised of next payment due on Repayment Plan. On January 18, 2010 Claimant told Debtor they would make the payment that was due right away. Debtors mailed Repayment Plan Cancellation Letter to Claimant on January 28, 2010 due to Claimant not making payment due January 18, 2010.  On February 3, 2010 Claimant advised selling home. Debtors advised Claimant needs to send in listing agreement for consideration.

On February 4, 2010, Debtors advised that a foreclosure sale was setup for February 9, 2010. As an accommodation to Claimant to allow Claimant time to sell the property, Debtors setup a Repayment Plan with first payment due February 20, 2010 in amount of $2,619.21, and postponed the February 9, 2009 foreclosure sale until March 9, 2010. Debtors mailed Repayment Plan Cancellation Letter to Claimant on March 5, 2009 due to Claimant not making the payment due February 20, 2010. Because Claimant failed to make payments under the February repayment plan and did not make arrangements with Debtor to bring the account | |

| Name of Claimant | Claim Number and Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reason for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|---|---|
| | | | | | current, a foreclosure sale was held on March 9, 2010.<br><br>Based on the facts and reasons stated above, the proof of claim does not give rise to liability for claims of deceit, fraudulent concealment, intentional misrepresentation, breach of contract, breach of implied covenant of good faith and fair dealing, promissory estoppel, equitable estoppel, wrongful foreclosure, or CA Business and Professional Code 17200. | |