**Hearing Date:  December 18, 2014 at 10:00 a.m. (Prevailing Eastern Time)**
**Response Deadline: December 8, 2014 at 4:00 p.m. (Prevailing Eastern Time)**

MORRISON & FOERSTER LLP
250 W. 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Erica J. Richards

*Counsel for The ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
|  | ) |  |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
|  | ) |  |
| Debtors. | ) | Jointly Administered |

--------------------------------------------------------------

**OBJECTION OF THE RESCAP BORROWER CLAIMS TRUST**
**TO CLAIM NUMBER 5067 FILED BY GWENDELL L. PHILPOT**

# TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT ...........................................................................1

II.    JURISDICTION, VENUE AND STATUTORY PREDICATE ...................................2

III.   BACKGROUND .....................................................................................................2

      A.     Chapter 11 Case Background ............................................................2

            (i)     General Overview ...................................................................2

            (ii)    Claim Specific Background ....................................................3

      B.     The Philpot Loan .............................................................................4

            (i)     Payment Issues ......................................................................5

            (ii)    Foreclosure Proceedings ........................................................6

            (iii)   Loss Mitigation Efforts .........................................................7

            (iv)    Philpot Bankruptcy ...............................................................7

      C.     The Philpot Claim ............................................................................8

IV.    RELIEF REQUESTED ...........................................................................................9

V.     OBJECTION ..........................................................................................................9

      A.     Applicable Legal Standard ...............................................................9

      B.     The Philpot Claim is Not Properly Asserted Against ResCap ...........10

      C.     The Philpot Claim is Barred Under Judicial Estoppel.......................11

      D.     The Philpot Claim Lacks Merit .......................................................14

VI.    NOTICE ...............................................................................................................19

VII.   CONCLUSION ......................................................................................................20

EXHIBITS:

Exhibit 1 – Philpot Claim

Exhibit 2 – Priore Declaration
      Exhibit A – Note
      Exhibit B – Mortgage
      Exhibit C – Assignment
      Exhibit D – Excerpted Servicing Notes
      Exhibit E – Credit Reporting History
      Exhibit F – Foreclosure Deed
      Exhibit G – Philpot Bankruptcy Docket Report
      Exhibit H – Philpot Bankruptcy Schedules of Assets and Liabilities (A, B and D)

i

# TABLE OF CONTENTS

**Page**

Exhibit I – Philpot Bankruptcy Related Actions Report
Exhibit J – Philpot Bankruptcy Discharge Order

Exhibit 3 – Proposed Order

ii

# TABLE OF AUTHORITIES

**Page**

CASES

Barger v. City of Cartersville,
348 F.3d 1289 (11th Cir. 2003) .................................................................................. 13

Bates v. JPMorgan Chase Bank,
No. 13-15340, 2014 U.S. App. LEXIS 18655 (11th Cir. Sept. 30, 2014) ............................. 18

Browning v. Levy,
283 F.3d 761 (6th Cir. 2002) ..................................................................................... 13

Cannon-Stokes v. Potter,
453 F.3d 446 (7th Cir. 2006) ..................................................................................... 12

Coffaro v. Crespo,
721 F. Supp. 2d 141 (E.D.N.Y. 2010) ........................................................................ 12

Eastman v. Union Pac. R.R.,
493 F.3d 1151 (10th Cir. 2007) ........................................................................ 11, 13, 14

ECR Props., LLC v. Camden Cnty. Dev., LLC,
998 F. Supp. 2d 1295 (M.D. Ala. 2014) ................................................................. 16, 17

Fassina v. CitiMortgage, Inc.,
No. 11-cv-2901-RDP, 2012 U.S. Dist. LEXIS 91267 (N.D. Ala. July 2, 2012) .................... 19

Feinberg v. Bank of N.Y. (In re Feinberg),
442 B.R. 215 (Bankr. S.D.N.Y. 2010) ......................................................................... 9

Forester v. Bank of America, N.A.,
C.A. No. 11-0160-CG-M, 2012 U.S. Dist. LEXIS 111346 (S.D. Ala. Aug. 7, 2012) ........... 19

Hamilton v. State Farm Fire & Cas. Co.,
270 F.3d 778 (9th Cir. 2001) ..................................................................................... 12

In re Oneida Ltd.,
400 B.R. 384 (Bankr. S.D.N.Y. 2009), aff'd sub nom., Peter J. Solomon Co. v.
Oneida, Ltd., No. 09-cv-2229, 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22, 2010) .......... 9

In re Rockefeller Ctr. Props.,
272 B.R. 524 (Bankr. S.D.N.Y. 2000), aff'd sub nom., NBC v. Rockefeller Ctr.
Props. (In re Rockefeller Ctr. Props), 266 B.R. 52 (S.D.N.Y. 2001), aff'd, 46 Fed.
Appx. 40 (2d Cir. 2002) ............................................................................................ 9

Jethroe v. Omnova Solutions, Inc.,
412 F.3d 598 (5th Cir. 2005) ..................................................................................... 12

# TABLE OF AUTHORITIES

**Page**

Malone Freight Lines, Inc. v. McCardle,
     167 So. 2d 274 (Ala. 1964)............................................................................................18

McClung v. Mortg. Elec. Registration Sys., Inc.,
     No. 11-cv-03621-RDP, 2012 U.S. Dist. LEXIS 63834 (N.D. Ala. May 7, 2012) .................19

New Hampshire v. Maine,
     532 U.S. 742 (2001) ..............................................................................................11, 12

Payless Wholesale Distribs., Inc. v. Alberto Culver (P.R.) Inc.,
     989 F.2d 570 (1st Cir. 1993)........................................................................................12

Reynolds Metals Co. v. Hill,
     825 So. 2d 100 (Ala. 2002)..........................................................................................15

Sammons v. Garner,
     222 So. 2d 717 (Ala. 1969)..........................................................................................18

Selman v. CitiMortgage,
     C.A. No. 12-0441-WS-B, 2013 U.S. Dist. Lexis 37017 (S.D. Ala. Mar. 5, 2013) .................18

Sokol v. Bruno's, Inc.,
     527 So. 2d 1245 (Ala. 1988)........................................................................................16

Webb v. Ocwen Loan Servicing, LLC,
     C.A. No. 11-00732-KD-M, 2012 U.S. Dist. LEXIS 167079 (S.D. Ala. Nov. 26, 2012)........19

Whitehurst v. 230 Fifth, Inc.,
     998 F. Supp. 2d 233 (S.D.N.Y. 2014) .............................................................................12

## STATUTES

11 U.S.C. 502(b)(1) ....................................................................................................9, 10

11 U.S.C. § 101(5)........................................................................................................10

11 U.S.C. § 502(a) ........................................................................................................9

iv

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

      The ResCap Borrower Claims Trust (the "<u>Borrower Trust</u>"), established pursuant to the terms of the confirmed Chapter 11 plan in the above-captioned bankruptcy cases (the "<u>Chapter 11 Cases</u>") [Docket No. 6065], as successor in interest to the above-captioned debtors with respect to Borrower Claims (collectively, the "<u>Debtors</u>"), hereby submits, on behalf of Debtor Residential Capital, LLC ("<u>ResCap</u>") and its affiliated post-effective date Debtors in the Chapter 11 Cases, this objection (the "<u>Objection</u>") seeking to disallow and expunge claim number 5067 (the "<u>Philpot Claim</u>"), a copy of which is attached hereto as **Exhibit 1**, filed by Gwendell L. Philpot ("<u>Mr. Philpot</u>"), pursuant to section 502(b) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rule 3007(a) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").   In support of the Objection, the Borrower Trust relies upon and incorporates by reference the Declaration of Kathy Priore, Associate Counsel for The ResCap Liquidating Trust, annexed hereto as **Exhibit 2** (the "<u>Priore Declaration</u>").[1]  In further support hereof, the Borrower Trust respectfully represents as follows:

## I.      PRELIMINARY STATEMENT

      1.      The Philpot Claim asserts a $630,000.00 unsecured claim against ResCap, and is based on Mr. Philpot's assertion that the Debtors improperly refused to backdate a loan payment that Mr. Philpot attempted to make on September 30, 2008, but was never actually received.   There is nothing in the Debtors' books and records, however, suggesting any impropriety with respect to the handling of Mr. Philpot's account.   Mr. Philpot has failed to

---

[1]    The ResCap Liquidating Trust and the Borrower Trust are parties to an Access and Cooperation Agreement, dated December 17, 2013, which, among other things, provides the Borrower Trust with access to the books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.

provide a sufficient explanation as to why his claim represents a valid claim that should be allowed against ResCap, or against any other Debtor.  As discussed herein, the Borrower Trust provides detailed explanations as to why Mr. Philpot's allegations do not provide the basis for an allowed claim against the Debtors.  In addition, Mr. Philpot failed to disclose the existence of any claims against the Debtors in his chapter 7 bankruptcy case, on account of which he received a discharge on May 21, 2009.  Under the doctrine of judicial estoppel, Mr. Philpot is now barred from asserting claims against the Debtors that arose prior to his discharge, including the claims set forth in the Philpot Claim.  Accordingly, the Philpot Claim should be disallowed and expunged in its entirety from the Claims Register (as defined below).[2]

## II.    JURISDICTION, VENUE AND STATUTORY PREDICATE

2.    This Court has jurisdiction over this Objection pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007.

## III.    BACKGROUND

### A.    Chapter 11 Case Background

#### (i)    General Overview

3.    On December 11, 2013, the Bankruptcy Court entered an *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* (the "Confirmation Order") approving the terms of the Chapter 11 plan, as amended (the "Plan"), filed in these Chapter 11 Cases [Docket

---

[2]    The Borrower Trust reserves all of its rights to object on any other basis to the Philpot Claim not set forth in this Objection, and to amend this Objection should any further bases come to light.

No. 6065].[3]  On December 17, 2013, the Effective Date (as such term is defined in the Plan)

occurred, and, among other things, the Borrower Trust and the ResCap Liquidating Trust were

established [Docket No. 6137].

4.       The Plan provides for the creation and implementation of the Borrower

Trust, which is established for the benefit of Borrowers who filed Borrower Claims (as such

terms are defined in the Plan) to the extent such claims are ultimately allowed either through

settlement or pursuant to an order of the Court.  See Plan, Art. IV.F.  The Borrower Trust was

established to, among other things, "(i) direct the processing, liquidation and payment of the

Allowed Borrower Claims in accordance with the Plan, and the distribution procedures

established under the Borrower Claims Trust Agreement, and (ii) preserve, hold, and manage the

assets of the Borrower Claims Trust for use in satisfying the Allowed Borrower Claims."  See id.

**(ii)          <u>Claim Specific Background</u>**

5.       On May 16, 2012, the Court entered an order [Docket No. 96] appointing

Kurtzman Carson Consultants LLC ("<u>KCC</u>") as the notice and claims agent in these Chapter 11

Cases.  Among other things, KCC is authorized to (a) receive, maintain, record, and otherwise

administer the proofs of claim filed in these Chapter 11 Cases and (b) maintain the official

claims register for the Debtors (the "<u>Claims Register</u>").

6.       On August 29, 2012, this Court entered an order approving the Debtors'

motion to establish procedures for filing proofs of claim in the Chapter 11 Cases [Docket No.

1309] (the "<u>Bar Date Order</u>").

7.       On March 21, 2013, the Court entered an order (the "<u>Procedures Order</u>")

[Docket No. 3294] approving, among other things, certain procedures to be applied in connection

---

[3]     Capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

ny-1159956

with objections to claims filed by current or former borrowers (collectively, the "Borrower Claims," and the procedures relating thereto, the "Borrower Claims Procedures").   The Procedures Order includes specific protections for borrowers and sets forth a process for the Debtors to follow before objecting to certain categories of Borrower Claims.   For example, the Borrower Claims Procedures require that, prior to objecting to certain categories of Borrower Claims, individual borrowers must be furnished with a letter requesting additional documentation in support of the purported claim (a "Request Letter").  (See Procedures Order at 4).

8.     Prior to the Plan Effective Date, the Debtors determined that no Request Letter was required to be sent to Mr. Philpot under the Borrower Claims Procedures.

### B.     The Philpot Loan

9.     Mr. Philpot is a borrower under a residential mortgage loan (the "Philpot Loan") that was originated by Debtor Homecomings Financial, LLC, formerly known as Homecomings Financial Network, Inc. ("Homecomings"), on December 4, 2000.   See Priore Decl. at ¶ 6.  The Philpot Loan is evidenced by a note in the amount of $220,000 (the "Note"), which was secured by a mortgage (the "Mortgage") of real property located at 503 Ferry St. N.E., Decatur, Alabama 35601 (the "Property").   Id.  Debtor Residential Funding Corporation ("RFC") purchased the Philpot Loan from Homecomings, and on or about March 1, 2001, transferred its interest to Bank One, N.A. as Trustee for the RASC Series 2001-KS1 Trust in connection with the securitization of the Philpot Loan.   Id.   The Note was endorsed by Homecomings to RFC and from RFC to Bank One, NA, as Trustee.   Id.  An assignment of the

4

Mortgage was executed on August 24, 2010 from MERS to The Bank of New York Mellon Trust Company, N.A. as successor Trustee for the RASC Series 2001-KS1 Trust.[4] Id.

10.    Homecomings serviced the Philpot Loan from the date of origination until July 1, 2009. See Priore Decl. at ¶ 7. On July 1, 2009, Debtor GMAC Mortgage, LLC ("GMACM") began servicing the Philpot Loan for Bank of New York. Id. GMACM transferred servicing to Ocwen Loan Servicing, LLC on February 16, 2013 in connection with the Debtors' sale of their servicing platform. Id.

**(i)        <u>Payment Issues</u>**

11.    Beginning in June 2007, Mr. Philpot's account became delinquent and has remained in arrears since that time. See Priore Decl. at ¶ 10.

12.    On October 3, 2008, Mr. Philpot contacted the Debtors and reported that he made an online payment on September 30, 2008, including a speedpay fee, and that such payment was not recognized by the Debtors. See Priore Decl. at ¶ 11. The Debtors reviewed Mr. Philpot's payment history and did not find any record of such payment within their system. Id. Also on October 3, 2008, Mr. Philpot requested that he be allowed to make a replacement payment and that such payment be backdated to September 30, 2008. Id. The Debtors informed Mr. Philpot that they were unable to grant his request to backdate the payment because the Debtors' payment processing system did not allow backdating. Id.

13.    On October 7, 2008, Mr. Philpot contacted the Debtors and again asserted that he made an online payment on September 30, 2008. See Priore Decl. at ¶ 12. The Debtors advised Mr. Philpot to contact his bank to determine whether such alleged payment had been

---

[4]    Specifically, The Bank of New York Mellon Trust Company, N.A. f/k/a The Bank of New York Trust Company, N.A. was successor Trustee to JP Morgan Chase Bank, N.A., which, in turn, was successor Trustee as a result of its merger with Bank One, N.A.

deducted from his account. Id. The Debtors also advised Mr. Philpot that if he was able to obtain information regarding the date that a payment was processed from his bank account, then he could contact the Debtors at a specific telephone number so that further research could be done regarding the alleged payment. Id.

14.     On October 9, 2008, Mr. Philpot contacted the Debtors and again requested to make a payment with a retroactive effective date of September 30, 2008. See Priore Decl. at ¶ 13. Mr. Philpot was informed that his payment could not be backdated, and was also advised that, if a payment was made within a few days of October 9, 2008, then the Debtors could amend Mr. Philpot's credit report to show that the payment was received within sixty (60) days due to a Voice Recognition Unit error. Id. The Debtors did not receive a payment from Mr. Philpot. Id.

**(ii)         Foreclosure Proceedings**

15.     In January 2008, upon being advised that the Philpot Loan had been referred for foreclosure, Mr. Philpot indicated to GMACM that he desired to catch up on his delinquent loan payments and was endeavoring to sell the Property. See Priore Decl. at ¶ 14. Those sale efforts were unsuccessful and on October 23, 2008, the Philpot Loan was referred to foreclosure due to Mr. Philpot's continued failure to make any payments on the Philpot Loan since August 2008. Id. In December 2008, Mr. Philpot requested approval of a short sale, which was denied because the offered sale amount was too low. Id. The foreclosure referral was closed on February 4, 2009 due to the commencement of the Philpot Bankruptcy (defined below). Id.

16.     Following Mr. Philpot's bankruptcy discharge, the Debtors again referred the Philpot Loan to foreclosure on May 22, 2009 and February 26, 2010, but such referrals were closed on September 23, 2009 and May 24, 2010, respectively, due to a pending repayment plan

6

or other loan modification activity.  See Priore Decl. at ¶ 15.  Despite the Debtors' numerous attempts to work with Mr. Philpot to avoid foreclosure, a loan modification was never finalized and the Philpot Loan was again referred to foreclosure on June 1, 2012.  Id.  The Property was sold to the Bank of New York through a foreclosure sale on February 20, 2013, and as of that date, the Property was placed into real estate owned ("REO") status.  Id.  The Debtors' books and records show that 4.5 years of payments remained due and owing for the Philpot Loan from August 2008 through the foreclosure sale on February 20, 2013.  Id.

17.    On February 16, 2013, servicing of the Philpot Loan was transferred to Ocwen Loan Servicing, LLC.  Id. at 16.

### (iii)    Loss Mitigation Efforts

18.    In addition to the dispute over the alleged September 30, 2008 payment error, Mr. Philpot also contacted the Debtors on several occasions to discuss loan modification options.  See Priore Decl. at ¶ 17.  Mr. Philpot was approved for a traditional loan modification on August 27, 2009, but such loan modification was ultimately denied because Mr. Philpot did not timely submit the follow-up information requested by the Debtors.  Id.  Rather, Mr. Philpot argued that he should be approved for a Home Affordable Modification Program ("HAMP") loan modification, which was previously denied due to Mr. Philpot having insufficient income to meet such program's requirements.  Id.  Mr. Philpot was also approved for traditional loan modifications on May 28, 2010 and December 16, 2010; however, such modifications were ultimately denied because the necessary loan modification documents were not executed and returned to the Debtors by the designated due dates.  Id.

### (iv)    Philpot Bankruptcy

19.    On February 3, 2009, Mr. Philpot and his wife filed a joint chapter 7 bankruptcy petition in the Northern District of Alabama, Case No. 09-80380 (the "Philpot

7

Bankruptcy"), and, as a result, the pending foreclosure referral was closed.  See Priore Decl. at

¶ 18.  The Philpots surrendered the Property securing the Philpot Loan, and on May 6, 2009, an

order was entered in the Philpot Bankruptcy granting Homecomings relief from the automatic

stay to take possession of and liquidate the Property.  Id. at ¶ 20.  On May 21, 2009, Mr. and

Mrs. Philpot received a discharge.  Id.

### C.    The Philpot Claim

20.    On November 15, 2012, Mr. Philpot filed the Philpot Claim (Claim

No. 5067) as a general unsecured claim in the amount of $630,000.00 against ResCap.  See

Exhibit 1.

21.    On August 29, 2013, the Debtors filed the *Debtors' Thirtieth Omnibus

Objection to Claims (No Liability Borrower Claims – Books and Records)* [Docket No. 4887]

(the "Thirtieth Omnibus Claims Objection") seeking to disallow and expunge various claims,

including the Philpot Claim.[5]

22.    On April 16, 2014, the Borrower Trust withdrew without prejudice the

Thirtieth Omnibus Claims Objection solely as it related to the Philpot Claim [Docket No. 6792],

and the Borrower Trust reserved all rights to object to the Philpot Claim on any basis in the

future.[6]

---

[5]    Mr. Philpot filed a response (the "Response") to the Thirtieth Omnibus Claims Objection [Docket No. 5233] on
September 26, 2013.  On December 13, 2013, the Borrower Trust filed a reply to the Response [Docket No.
6089].  On or about January 17, 2014, Claimant served the Debtors, through their counsel, with a subpoena
seeking documents with respect to the Debtors' phone records in order to support the allegations made in the
Proof of Claim.  On April 11, 2014, Claimant filed a sur-reply to the Omnibus Reply [Docket No. 6786] (the
"Sur-reply").

[6]    The Debtors initially believed that the Philpot Claim related to a prior class action litigation regarding the
ability of MERS to foreclose on Mr. Philpot's home, and sought to have the Philpot Claim expunged on the
basis that the Debtor entities have no liability to Mr. Philpot because the litigation between the Debtors and Mr.
Philpot had been dismissed with prejudice as to the Debtors and such dismissal had not been appealed by Mr.
Philpot.  See Priore Decl. at ¶ 8.  However, upon further review of the Philpot Claim and the Response, the
Borrower Trust understands the Philpot Claim to be based on Mr. Philpot's alleged loss of equity and income
relating to the Debtors' alleged error in payment processing in September 2008.

## IV.    RELIEF REQUESTED

23.    The Borrower Trust hereby files this Objection pursuant to section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007, and seeks the entry of an order, substantially in the form annexed hereto as Exhibit 3, disallowing and expunging the Philpot Claim from the Claims Register because the Debtors' books and records do not reflect any basis or liability therefor and because Mr. Philpot is judicially estopped from asserting such claims to the extent they arose before May 21, 2009.

## V.    OBJECTION

### A.    Applicable Legal Standard

24.    A filed proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a).   If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim.  See In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), aff'd sub nom., Peter J. Solomon Co. v. Oneida, Ltd., No. 09-cv-2229, 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22, 2010); In re Rockefeller Ctr. Props., 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000), aff'd sub nom., NBC v. Rockefeller Ctr. Props. (In re Rockefeller Ctr. Props), 266 B.R. 52 (S.D.N.Y. 2001), aff'd, 46 Fed. Appx. 40 (2d Cir. 2002).  Moreover, section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law…." 11 U.S.C. 502(b)(1).  Furthermore, the burden of persuasion is on the holder of a proof of claim to establish a valid claim against a debtor.  Feinberg v. Bank of N.Y. (In re Feinberg), 442 B.R. 215, 220-22 (Bankr. S.D.N.Y. 2010).

25.    As explained in further detail below and in the Priore Declaration, after the Borrower Trust conducted an exhaustive examination of the Debtors' books and records to

9

assess the allegations made in the Philpot Claim, the Borrower Trust believes that there is no

merit to Mr. Philpot's asserted claims.   Furthermore, to the extent the claims set forth in the

Philpot Claim arose on or before May 21, 2009, they are barred by judicial estoppel.

Accordingly, the Borrower Trust now files this Objection to the Philpot Claim, which addresses

the merits of the allegations set forth therein.

**B.**     **The Philpot Claim is Not Properly Asserted Against ResCap**

26.     Pursuant to section 101 of the Bankruptcy Code, a creditor holds a claim

against a bankruptcy estate only to the extent that it has a "right to payment" for the asserted

liability.  See 11 U.S.C. § 101(5).  Likewise, section 502(b)(1) of the Bankruptcy Code provides,

in relevant part, that the Court shall allow a claim except to the extent that "such claim is

unenforceable against the debtor and property of the debtor, under any agreement or applicable

law for a reason other than because such claim is contingent or unmatured."   11 U.S.C. §

502(b)(1).

27.     Mr. Philpot filed the Philpot Claim for $630,000 solely against ResCap.

See **Exhibit 1** at 1.  There is no explanation whatsoever as to why the Philpot Claim is properly

asserted against ResCap.   Indeed, based on the e-mails attached to the Philpot Claim, which

reference only GMACM and Homecomings, the Philpot Claim should not have been filed

against ResCap.  The Borrower Trust believes that the Philpot Claim is not enforceable against

ResCap under any applicable law or agreement.   Additionally, the Debtors' books and records

reflect no liability due and owing to Mr. Philpot.

28.     Accordingly, the Borrower Trust asserts that the Philpot Claim should be

disallowed and expunged in its entirety.  However, as set forth below, even if the Philpot Claim

had been filed against GMACM or Homecomings, it still fails to establish that GMACM or

Homecomings have liability to Mr. Philpot.

10

### C.    The Philpot Claim is Barred Under Judicial Estoppel

29.    Mr. and Mrs. Philpot did not include a claim against any of the Debtors on the schedules of assets and liabilities they filed in the Philpot Bankruptcy, nor did they raise such claims via an adversary proceeding or otherwise during the Philpot Bankruptcy.  See Priore Decl. at ¶ 19.  On May 21, 2009, Mr. and Mrs. Philpot received a discharge.  Id. at ¶ 20.  Because Mr. Philpot failed to assert the existence of any claims against the Debtors in the Philpot Bankruptcy, and the claims set forth in the Philpot Claim before May 21, 2009, Mr. Philpot is barred from asserting them now under the doctrine of judicial estoppel.

30.    The Supreme Court first recognized the doctrine of judicial estoppel in New Hampshire v. Maine, 532 U.S. 742, 749-50 (2001), in which the Court explained that the doctrine's "purpose is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment" (internal citations and quotations omitted).   Three factors typically inform the decision whether to apply the doctrine of judicial estoppel in a particular case.[7]  "First, a party's subsequent position must be clearly inconsistent with its former position."  Id. at 750.   Next, a court should inquire whether the suspect party "succeeded in persuading a court to accept that party's former position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled."  Id. (citation omitted).   Finally, the court should inquire whether the party seeking to assert an inconsistent position would gain an unfair advantage in the litigation if not estopped.  Id. at 751.

---

[7]    The doctrine of federal judicial estoppel is foremost designed to protect the federal judicial process, and bankruptcy is a federal matter; accordingly, federal judicial estoppel, as opposed to state estoppel principles, apply here.  See New Hampshire, 532 U.S. at 749; Eastman v. Union Pac. R.R., 493 F.3d 1151, 1156 (10th Cir. 2007.

31.     "Bankruptcy petitioners have an affirmative obligation to disclose all

assets to the bankruptcy court, including all causes of action that can be brought by the debtor,"

Coffaro v. Crespo, 721 F. Supp. 2d 141, 145 (E.D.N.Y. 2010) (citing 11 U.S.C. §§ 521(a)(1),

541(a)(1)) (internal quotation marks omitted), and the bankruptcy system as a whole is grounded

on the proposition that "creditors have a right to know what the debtor's assets are even though

the potential may be contingent, dependent, or conditional."  Whitehurst v. 230 Fifth, Inc., 998 F.

Supp. 2d 233, 260 (S.D.N.Y. 2014) (citation omitted).   In light of this obligation, courts have

held that, under the doctrine of judicial estoppel, a debtor in bankruptcy who denies owning a

legal claim by failing to disclose that claim on its schedules cannot realize on the previously

concealed claim after the bankruptcy ends.  See, e.g., Whitehurst v. 230 Fifth, Inc., 998 F. Supp.

at 292; Coffaro v. Crespo, 721 F. Supp. 2d at 145 ("In the bankruptcy context, judicial estoppel

is commonly invoked in order 'to prevent a party who failed to disclose a claim in bankruptcy

proceedings from asserting that claim after emerging from bankruptcy.'") (citations omitted);

Cannon-Stokes v. Potter, 453 F.3d 446 (7th Cir. 2006); Jethroe v. Omnova Solutions, Inc., 412

F.3d 598 (5th Cir. 2005); Payless Wholesale Distribs., Inc. v. Alberto Culver (P.R.) Inc., 989

F.2d 570 (1st Cir. 1993); accord Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 783 (9th

Cir. 2001) ("In the bankruptcy context, a party is judicially estopped from asserting a cause of

action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or

disclosure statements.") (citations omitted)).

32.     Although the Supreme Court noted that it "*may* be appropriate to resist

application of judicial estoppel when a party's prior position was based on inadvertence or

mistake," New Hampshire, 532 U.S. at 753 (emphasis added) (internal quotations omitted),

courts "have not been overly receptive to debtors' attempts to recover on claims about which

12

they 'inadvertently or mistakenly' forgot to inform the bankruptcy court." Eastman v. Union Pac. R.R., 493 F.3d at 1157. "Instead, courts addressing a debtor's failure to satisfy the legal duty of full disclosure to the bankruptcy court have deemed such failure inadvertent or mistaken "only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." Id. (citing Browing Mfg. v. Mims (In re Coastal Plains, Inc.), 179 F.3d 197, 210 (5th Cir. 1999); accord Browning v. Levy, 283 F.3d 761, 776 (6th Cir. 2002); Barger v. City of Cartersville, 348 F.3d 1289, 1294 (11th Cir. 2003)). Where a debtor has both knowledge of the claims and a motive to conceal them, courts routinely, albeit at times *sub silentio*, infer deliberate manipulation. Id. at 1296 (citing Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1287 (11th Cir. 2002) ("[S]everal circuits, in considering the particular issue of judicial estoppel and the omission of assets in a bankruptcy case, have concluded that deliberate or intentional manipulation can be inferred from the record.")).

33.     Here, the application of judicial estoppel to bar the Philpot Claim is warranted. The schedules filed in the Philpot Bankruptcy did not list any claims against the Debtors, even though the incident that Mr. Philpot alleges caused his bankruptcy filing and his denial of an SBA loan occurred approximately eight months before Mr. Philpot received a discharge. Furthermore, Mr. Philpot had the assistance of counsel in filing for bankruptcy, and his schedules included a $20,000 claim on account of a "potential lawsuit with nationwide." Mr. Philpot received a discharge in his no asset bankruptcy case on the basis of the assets and liabilities identified in those schedules.

34.     Mr. Philpot also had a motive to conceal his claims against the Debtors so he could obtain a discharge free and clear of his creditors. Courts have recognized that the "ever present motive to conceal legal claims and reap the financial rewards undoubtedly is why so

13

many of the cases applying judicial estoppel involve debtors-turned-plaintiffs who have failed to disclose such claims in bankruptcy." Eastman, 493 F.3d at 1159. "The doctrine of judicial estoppel serves to offset such motive, inducing debtors to be completely truthful in their bankruptcy disclosures." See id. The Philpot Claim is indistinguishable from the overwhelming majority of cases where debtors, who have failed to disclose legal claims to a bankruptcy court without credible evidence of why they did so, have been judicially estopped from pursuing such claims subsequent to discharge. Accordingly, the Philpot Claim should be disallowed on the basis that it is barred under the doctrine of judicial estoppel.

### D.    The Philpot Claim Lacks Merit

35.    According to the Philpot Claim, the total claim consists of (a) $350,000.00 in damages related to "lost equity in the loss of property" suffered as a result of Mr. Philpot's bankruptcy; and (b) $280,000.00, consisting of three and a half years' worth of lost income attributable to Mr. Philpot's "inability to obtain a business loan for a new business start-up." The Philpot Claim asserts that the claimed losses are "a direct result of debtor incorrectly listing payment failure as a missed payment by creditor rather than a failure of the debtor's payment processing system." See attachment to Philpot Claim, at p. 1.

36.    Prior to filing this Objection as well as after reviewing the Response and the Sur-reply, the Liquidating Trust (on behalf of the Borrower Trust) attempted to reconcile the Philpot Claim with the information in the Debtors' books and records. See Priore Declaration at ¶ 9. Specifically, the Liquidating Trust reviewed, among other documents, Mr. Philpot's payment history, the Debtors' internal servicing notes, and correspondence between Mr. Philpot and GMACM with respect to the foregoing. Id. In addition, the Liquidating Trust reviewed certain documents filed in connection with the Philpot Bankruptcy. Id.

ny-1159956

37.    As an initial matter, neither the Philpot Claim, the Response, nor the Sur-reply includes any documentary or other evidence supporting the amount of the Philpot Claim. See Priore Declaration at ¶ 21.    According to Mr. Philpot, the $350,000.00 "lost equity" component of the Philpot Claim is the amount of equity purportedly lost by Mr. Philpot as a result of his bankruptcy filing. See attachment to **Exhibit 1**, at p. 1.  Mr. Philpot has provided no evidence substantiating his calculation of the "lost equity."[8]   See Priore Declaration at ¶ 21. Similarly, Mr. Philpot's income-related claims were calculated based on an unsupported assumption that he would have received a minimum salary of $80,000 for three and a half years in connection with a start-up business that was never formed because of his inability to qualify for an SBA loan. See attachment to Philpot Claim, at p. 1.  Mr. Philpot has not provided any documentary or other reliable evidence substantiating the reasonableness of these assumptions. See Priore Declaration at ¶ 21.

38.    Although the precise legal theory Mr. Philpot is proceeding under is unclear from the Philpot Claim, his arguments appear to arise primarily under a breach of contract claim.   Under Alabama law, as in other jurisdictions, the elements of a breach-of-contract claim are:  "(1) a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." Reynolds Metals Co. v. Hill, 825 So. 2d 100, 105 (Ala. 2002).  Based on the allegations set forth in the Philpot Claim, Mr. Philpot cannot establish the necessary elements to sustain a claim against the Debtors for breach of contract.

---

[8]    The schedules of assets and liabilities filed in the Philpot Bankruptcy placed a value on the Property securing the Philpot Loan of $333,800.00.  See Philpot Bankruptcy Schedule A, annexed to the Priore Declaration as Exhibit H.  However, the Property was subject to secured claims of $288,093.38, consisting of a first priority lien held by Homecomings in the amount of $216,796.94 and a second priority lien held by Redstone Federal Credit Union in the amount of $71,296.44.  See Philpot Bankruptcy Schedule D, annexed to the Priore Declaration as Exhibit H.  Accordingly, based on the documents he filed in the Philpot Bankruptcy, Mr. Philpot's alleged equity in the Property was only $45,706.62.

39.     Here, the contract at issue is the Note and Mortgage, which was between Mr. and Mrs. Philpot, as borrowers, and Homecomings as lender.  At the time of the payment processing error, Homecomings was also the servicer for the Philpot Loan and responsible for processing loan payments.  See Priore Declaration at ¶ 7.  Accordingly, the first element appears to be satisfied.

40.     With respect to the second element, Mr. Philpot has not shown that he performed under the Note by making the September 30, 2008 payment.  The Debtors' books and records do not reflect any payment being received from Mr. Philpot in connection with the Philpot Loan on or around September 30, 2008.  See Priore Declaration at ¶¶ 11, 13.  Mr. Philpot has produced no evidence that he actually made the payment, or that the Debtors improperly failed to credit his account.  Rather, Mr. Philpot alleges only that he tried to make the payment on September 30, 2008, and had the funds available to do so, but was unable to complete the payment on that date due to no fault of his own.  Further, Mr. Philpot admittedly failed to perform his obligations under the Note with respect to any subsequent payments.  However, as set forth below, he was not excused from further performing his obligations under the Note.

41.     With respect to the third element, a plaintiff must establish that the defendant breached the contract, and that the breach was material.  ECR Props., LLC v. Camden Cnty. Dev., LLC, 998 F. Supp. 2d 1295, 1312 (M.D. Ala. 2014).  "A material breach [of a contract] is one that touches the fundamental purposes of the contract and defeats the object of the parties in making the contract."  Sokol v. Bruno's, Inc., 527 So. 2d 1245, 1248 (Ala. 1988).

42.     Here, Mr. Philpot has not established that the Debtors committed a breach of the Note and Mortgage, much less that such breach was material.  The Debtors were under no contractual obligation to backdate payments received from borrowers, and in fact, their payment

16

processing systems did not allow backdating.  See Priore Declaration at ¶ 11.  Moreover, to the

extent a failure of the Debtors' payment systems were to constitute a contractual breach, the

breach was not material in light of the fact that the Debtors advised Mr. Philpot that they would

accept the late payment without adverse consequence to him if the payment was promptly made.

See Exhibit D, annexed to the Priore Declaration.  Specifically, on October 9, 2008, the Debtors

advised Mr. Philpot that, although they could not backdate a payment that was never received, if

a payment was made within a few days of October 9, 2008, then the Debtors could amend Mr.

Philpot's credit report to show that the payment was received within sixty (60) days due to a

Voice Recognition Unit error.  See id. at p. 7; Priore Declaration at ¶ 13.  Thus, whether or not

the Debtors' payment processing system failed, Mr. Philpot could have brought his account back

to status quo and avoided the consequences of the missed payment by promptly remitting

payment once he discovered that that the payment he attempted to make on September 30, 2008

was not completed.  Accordingly, to the extent that Mr. Philpot contends that he was excused

from performing his obligations under the Loan in light of the Debtors' alleged breach, this

argument also fails.  See, e.g., ECR Props., LLC v. Camden County Dev., LLC, 998 F. Supp. 2d

at 131 (plaintiff not excused from performing under a contract where there is no material breach

by defendant).

> 43.    Finally, with respect to the fourth element of damages, Mr. Philpot cannot

establish that the Debtors caused his losses because the power to cure the default under the Note

was within Mr. Philpot's control.  Despite being offered the opportunity to effectively cure the

default, Mr. Philpot did not remit the missed payment, and thereafter compounded matters by

ceasing to make his mortgage payments altogether.  Courts addressing analogous fact patterns

have held that, where a borrower had the ability to correct a default under a mortgage loan by

17

simply making the required payments, the borrower could not prove the requisite elements of causation damages to sustain a claim against the lender for improper acceleration of the note. See Bates v. JPMorgan Chase Bank, No. 13-15340, 2014 U.S. App. LEXIS 18655, at *14 (11th Cir. Sept. 30, 2014) ("Because all Bates must do, even now, is simply pay all of the outstanding monthly payments and associated fees admittedly owed, Chase's exercise of the power to accelerate the note could not have caused her harm, and therefore, she has failed to substantiate two important elements of her claim for breach of contract: causation and damages.").

44.    For the reasons set forth above, Mr. Philpot cannot establish the necessary elements to sustain a claim against the Debtors for breach of contract.  Nor has Mr. Philpot plead facts that would support any other plausible cause of action against the Debtors, including under negligence or other tort theories.

45.    In order to sustain a cause of action grounded in negligence, a plaintiff must establish three essential elements; there must be:  (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty, either by omission or commission; and (3)  an injury sustained by the plaintiff in consequence of that breach.  Sammons v. Garner, 222 So. 2d 717, 718 (Ala. 1969); Malone Freight Lines, Inc. v. McCardle, 167 So. 2d 274, 276 (Ala. 1964).  Mr. Philpot cannot satisfy the second and third elements of a negligence claim for the same reasons he cannot establish breach and damages in connection with a breach of contract claim. Additionally, Alabama courts have uniformly held that a mortgage servicer does not owe the mortgagor any duty of care in the servicing of his mortgage in the absence of personal injury or property damage, neither of which is alleged by Mr. Philpot.  See Selman v. CitiMortgage, C.A. No. 12-0441-WS-B, 2013 U.S. Dist. Lexis 37017, *17-18 (S.D. Ala. Mar. 5, 2013) (surveying cases) (citing Blake v. Bank of America, N.A., 845 F. Supp. 2d 1206, 1210-11 (M.D. Ala. 2012)

18

("Alabama law does not recognize a cause of action for negligent or wanton mortgage servicing . . . ."); <u>Webb v. Ocwen Loan Servicing, LLC</u>, C.A. No. 11-00732-KD-M, 2012 U.S. Dist. LEXIS 167079, at *20 (S.D. Ala. Nov. 26, 2012) ("[U]nder Alabama law a cause of action for negligent servicing of a mortgage against Ocwen cannot be maintained where the damages are economic, i.e., lost commissions."); <u>Forester v. Bank of America, N.A.</u>, C.A. No. 11-0160-CG-M, 2012 U.S. Dist. LEXIS 111346, at *14 (S.D. Ala. Aug. 7, 2012) ("Under Alabama law, an agent, like BAC, could only incur tort liability while servicing a mortgage by causing personal injury or property damage as a result of a breach of the duty of reasonable care. Pure economic loss - which is what [Forester] claims - does not suffice.") (citations omitted); <u>Fassina v. CitiMortgage, Inc.</u>, No. 11-cv-2901-RDP, 2012 U.S. Dist. LEXIS 91267, *23 (N.D. Ala. July 2, 2012) ("Plaintiff's claim alleging negligent, reckless, and/or wanton mortgage servicing is not valid under Alabama law."); <u>McClung v. Mortg. Elec. Registration Sys., Inc.</u>, No. 11-cv-03621-RDP, 2012 U.S. Dist. LEXIS 63834, at *34 (N.D. Ala. May 7, 2012) ("[T]he court similarly concludes that there is no cause of action for negligent or wanton mortgage servicing under Alabama law.")).

46.    Based on the foregoing and as further supported by the Priore Declaration, the Borrower Trust determined that the Debtors have no liability with respect to the Philpot Claim, and accordingly, the Borrower Trust requests that the Philpot Claim be disallowed and expunged in its entirety.

## VI.    NOTICE

47.    The Borrower Trust has provided notice of this Objection in accordance with the Case Management Procedures Order, approved by this Court on May 23, 2012 [Docket No. 141], and the Procedures Order.

19

## VII.    CONCLUSION

WHEREFORE, the Borrower Trust respectfully requests entry of an order, substantially in the form of <u>Exhibit 3</u> attached hereto, (a) disallowing and expunging the Philpot Claim and (b) granting such other and further relief as is just and proper.

Dated:  November 14, 2014
       New York, New York

/s/  Norman S. Rosenbaum
Norman S. Rosenbaum
Jordan A. Wishnew
Erica J. Richards
MORRISON & FOERSTER LLP
250 W. 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for The ResCap Borrower Claims Trust*

20