## **Exhibit 2**

**Priore Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------- )
                                                               )
In re:                                                         )    Case No. 12-12020 (MG)
                                                               )
RESIDENTIAL CAPITAL, LLC, <u>et al.</u>,                        )    Chapter 11
                                                               )
            Debtors.                                           )    Jointly Administered
                                                               )
-------------------------------------------------------------- )

**DECLARATION OF KATHY PRIORE WITH RESPECT TO**
**OBJECTION OF THE RESCAP BORROWER CLAIMS TRUST**
**TO CLAIM NUMBER 5067 FILED BY GWENDELL L. PHILPOT**

I, Kathy Priore, hereby declare as follows:

**A.      Declarant's Background and Qualifications**

1.      I serve as Associate Counsel for The ResCap Liquidating Trust (the "<u>Liquidating Trust</u>"), established pursuant to the terms of the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al., and the Official Committee of Unsecured Creditors* [Docket No. 6030] confirmed in the above-captioned chapter 11 cases (the "<u>Chapter 11 Cases</u>").  During the Chapter 11 Cases, I served as Associate Counsel in the legal department at Residential Capital, LLC ("<u>ResCap</u>"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors in the above-captioned Chapter 11 Cases (collectively, the "<u>Debtors</u>").  I joined ResCap on May 1, 2008 as in-house litigation counsel.  Prior to my in-house litigation counsel position, I held various roles within the legal department at ResCap.

2.      In my role as Associate Counsel at ResCap, I was responsible for the management of residential mortgage-related litigation.  In connection with ResCap's chapter 11 filing, I also assisted the Debtors and their professional advisors in connection with the administration of the Chapter 11 Cases, including the borrower litigation matters pending before

this Court.  In my current position as Associate Counsel to the Liquidating Trust, among my other duties, I continue to assist the Liquidating Trust and Borrower Claims Trust (the "**Borrower Trust**") in connection with the claims reconciliation process.[1]  I am authorized to submit this Declaration with respect to the *Objection of the ResCap Borrower Claims Trust to Claim Number 5067 Filed by Gwendell L. Philpot* (the "Objection").[2]

        3.      In my current and former capacities as Associate Counsel to the Liquidating Trust and ResCap, I am intimately familiar with the Debtors' claims reconciliation process.  Except as otherwise indicated, all statements in this Declaration are based on my familiarity with the Debtors' Books and Records (the "Books and Records"), as well as the Debtors' schedules of assets and liabilities and statements of financial affairs filed in these Chapter 11 Cases (collectively, the "Schedules"), my review and reconciliation of claims, and/or my review of relevant documents.  I, or other Liquidating Trust personnel, have reviewed and analyzed the proof of claim form and supporting documentation filed by the Claimant.  Since the Plan went effective and the Borrower Trust was established, I, along with other members of the Liquidating Trust, have consulted with the Borrower Trust to continue the claims reconciliation process, analyze claims and determine the appropriate treatment of the same.  In connection with such review and analysis, where applicable, I, or other Liquidating Trust personnel, together with professional advisors, have reviewed (i) information supplied or verified by former personnel in departments within the Debtors' various business units, (ii) the Books and Records, (iii) the

---

[1]    The ResCap Liquidating Trust and the ResCap Borrower Trust are parties to an Access and Cooperation Agreement, dated as December 17, 2013, which, among other things, provides the Borrower Trust with access to the Books and Records held by the Liquidating Trust and the Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.

[2]    Capitalized terms not defined herein shall have the meanings ascribed to them in the Objection.

ny-1159956

Schedules, (iv) other filed proofs of claim, and/or (v) the official claims register maintained in the Debtors' Chapter 11 Cases.

4.      Except as otherwise indicated, all facts set forth in this Declaration are based upon my familiarity with the Debtors' Books and Records, information learned from my review of relevant documents, and information I received through my discussions with other former members of the Debtors' management or other former employees of the Debtors and/or the Liquidating Trust's or Borrower Trust's professionals and consultants.  If I were called upon to testify, I could and would testify competently to the facts set forth in the Objection on that basis.

5.      The Debtors have examined the Philpot Claim, the Response, and the Sur-reply, as well as their Books and Records in order to (a) assess the allegations made in the Philpot Claim, the Response and the Sur-reply, and (b) verify that the Debtors followed the applicable guidelines and policies regarding loan modifications with respect to the Philpot Claim.  For the reasons set forth below, the Debtors determined that Mr. Philpot's allegations of liability are unsubstantiated and have no validity.

**B.      The Philpot Loan**

6.      The Philpot Claim, which was filed as a general unsecured claim in the amount of $630,000.00, relates to a residential mortgage loan taken out by Mr. Philpot (the "Philpot Loan") that was originated by Debtor Homecomings Financial, LLC, formerly known as Homecomings Financial Network, Inc. ("Homecomings"), on December 4, 2000.  The Philpot Loan is evidenced by a note in the amount of $220,000 (the "Note"), which was secured by a mortgage (the "Mortgage") of real property located at 503 Ferry St. N.E., Decatur, Alabama 35601 (the "Property").  Debtor Residential Funding Corporation ("RFC") purchased the Philpot

Loan from Homecomings and on or about March 1, 2001, transferred its interest to Bank One, N.A. as Trustee for the RASC Series 2001-KS1 Trust in connection with the securitization of the Philpot Loan.  The Note was endorsed by Homecomings to RFC and from RFC to Bank One, NA, as Trustee.  An assignment of the Mortgage (the "Assignment") was executed on August 24, 2010 from MERS to The Bank of New York Mellon Trust Company, N.A. as successor Trustee for the RASC Series 2001-KS1 Trust.[3]   Copies of the Note, Mortgage and Assignment are annexed hereto as **Exhibits A**, **B** and **C**, respectively.

7.     Homecomings serviced the Philpot Loan from the date of origination until July 1, 2009.  On July 1, 2009, Debtor GMAC Mortgage, LLC ("GMACM") began servicing the Philpot Loan for Bank of New York.  GMACM transferred servicing to Ocwen Loan Servicing, LLC on February 16, 2013 in connection with the Debtors' sale of their servicing platform.

8.     The Debtors initially believed that the Philpot Claim related to a prior class action litigation regarding the ability of MERS to foreclose on Mr. Philpot's home. However, upon further review of the Philpot Claim and the Response, the Liquidating Trust now understands the Philpot Claim to be based on Mr. Philpot's alleged loss of equity and income relating to the Debtors' alleged error in payment processing in September 2008, as described below.

9.     Prior to filing the Objection, as well as after reviewing the Response and the Sur-reply, the Liquidating Trust on behalf of the Borrower Trust attempted to reconcile the Philpot Claim with the information in the Debtors' Books and Records.  Specifically, the Liquidating Trust reviewed, among other documents, Mr. Philpot's payment history and the

---

[3]     Specifically, The Bank of New York Mellon Trust Company, N.A. f/k/a The Bank of New York Trust Company, N.A. was successor Trustee to JP Morgan Chase Bank, N.A., which, in turn, was successor Trustee as a result of its merger with Bank One, N.A.

ny-1159956

Debtors' internal servicing notes, and correspondence between Mr. Philpot and GMACM with
respect to the foregoing.  In addition, the Liquidating Trust reviewed certain documents filed in
connection with the Philpot Bankruptcy (defined below).  Excerpts of the relevant servicing
notes are annexed hereto as **Exhibit D**.

      1.      **Payment Issues**

      10.      Beginning in June 2007, Mr. Philpot's account became delinquent and has
remained in arrears since that time.  See Credit Reporting History annexed hereto as **Exhibit E**.

      11.      The Debtors' Books and Records reflect that, on October 3, 2008, Mr.
Philpot contacted the Debtors and reported that he made an online payment on September 30,
2008, including a speedpay fee, and that such payment was not recognized by the Debtors.  See
**Exhibit D** at pp. 4-5.  The Debtors reviewed Mr. Philpot's payment history and did not find any
record of such payment within their payment processing system.  Id.  Also on October 3, 2008,
Mr. Philpot requested that he be allowed to make a replacement payment and that such payment
be backdated to September 30, 2008.  Id.  The Debtors informed Mr. Philpot that they were
unable to grant his request to backdate the payment because the Debtors' payment processing
system did not allow backdating.  Id.

      12.      On October 7, 2008, Mr. Philpot contacted the Debtors and again asserted
that he made an online payment on September 30, 2008.  See **Exhibit D** at pp. 6-7.  The Debtors
advised Mr. Philpot to contact his bank to determine whether such alleged payment had been
deducted from his account.  Id.  The Debtors also advised Mr. Philpot that if he was able to
obtain information regarding the date that a payment was processed from his bank account, then
he could contact the Debtors at a specific telephone number so that further research could be
done regarding the alleged payment.  Id.

13.     On October 9, 2008, Mr. Philpot contacted the Debtors and again requested to make a payment with a retroactive effective date of September 30, 2008.  **See Exhibit D** at p. 7.  Mr. Philpot was informed that his payment could not be backdated, and was also advised that, if a payment was made within a few days of October 9, 2008, then the Debtors could amend Mr. Philpot's credit report to show that the payment was received within sixty (60) days due to a Voice Recognition Unit error.  Id.  The Debtors did not receive such a payment from Mr. Philpot.  Id.

   **2.     Foreclosure Proceedings**

14.     In January 2008, upon being advised that the Philpot Loan had been referred for foreclosure, Mr. Philpot indicated to GMACM that he desired to catch up on his delinquent loan payments and was endeavoring to sell the Property.   See **Exhibit D** at p. 2. Those sale efforts were unsuccessful and on October 23, 2008, the Philpot Loan was referred to foreclosure due to Mr. Philpot's continued failure to make any payments on the Philpot Loan since August 2008.  Id. at p. 8.  In December 2008, Mr. Philpot requested approval of a short sale, which was denied because the offered sale amount was too low.  Id. at pp. 9-13.  The foreclosure referral was closed on February 4, 2009 due to the commencement of the Philpot Bankruptcy (defined below).  Id. at p. 13.

15.     Following Mr. Philpot's bankruptcy discharge, the Debtors again referred the Philpot Loan to foreclosure on May 22, 2009 and February 26, 2010 (see **Exhibit D** at pp. 14, 19, but such referrals were closed on September 23, 2009 and May 24, 2010, respectively, due to a pending repayment plan or other loan modification activity.  Id. at pp. 18, 21.  Despite the Debtors' numerous attempts to work with Mr. Philpot to avoid foreclosure, a loan modification was never finalized and the Philpot Loan was again referred to foreclosure on June 1, 2012.  Id. at p. 26.  The Property was sold to the Bank of New York through a

foreclosure sale on February 20, 2013, and as of that date, the Property was placed in real estate owned ("REO") status.  See Foreclosure Deed, annexed hereto as **Exhibit F**.  The Debtors' Books and Records show that 4.5 years of payments remained due and owing for the Philpot Loan from August 2008 through the foreclosure sale on February 20, 2013.

16.    On February 16, 2013, servicing of the Philpot Loan was transferred to Ocwen Loan Servicing, LLC.

### 3.    Loss Mitigation Efforts

17.    In addition to the dispute over the alleged September 30, 2008 payment error, Mr. Philpot also contacted the Debtors on several occasions to discuss loan modification options.  Mr. Philpot was approved for a traditional loan modification on August 27, 2009, but such loan modification was ultimately denied because Mr. Philpot did not timely submit the follow-up information requested by the Debtors.  See **Exhibit D** at pp. 16-18.  Rather, Mr. Philpot argued that he should be approved for a Home Affordable Modification Program ("HAMP") loan modification, which was previously denied due to Mr. Philpot having insufficient income to meet such program's requirements.  Id.  Mr. Philpot was also approved for traditional loan modifications on May 28, 2010 and December 16, 2010; (see id. at pp. 20-21, 23) however, such modifications were ultimately denied because the necessary loan modification documents were not executed and returned to the Debtors by the designated due dates.  See id. at pp. 22, 24-25.

### 4.    Philpot Bankruptcy

18.    On February 3, 2009, Mr. Philpot and his wife filed a joint chapter 7 bankruptcy petition in the Northern District of Alabama, Case No. 09-80380 (the "Philpot Bankruptcy"), and, as a result, the pending foreclosure referral was closed.  See Docket Report, annexed hereto as **Exhibit G**.

ny-1159956

19.     Mr. and Mrs. Philpot did not include a claim against any of the Debtors on
the schedules of assets and liabilities they filed in the Philpot Bankruptcy, nor did they raise such
claims via an adversary proceeding or otherwise during the Philpot Bankruptcy.  See Philpot
Bankruptcy Schedules A, B and D, annexed hereto as **Exhibit H**; Philpot Bankruptcy Report of
Associated Cases, annexed hereto as **Exhibit I**.

20.     The Philpots surrendered the Property securing the Philpot Loan, and on
May 6, 2009, an order was entered in the Philpot Bankruptcy granting Homecomings relief from
the automatic stay to take possession of and liquidate the Property.  On May 21, 2009, Mr. and
Mrs. Philpot received a discharge.  See **Exhibit G** at ECF# 40; Discharge Order, annexed hereto
as **Exhibit J**.

21.     Neither the Philpot Claim, the Response, nor the Sur-reply includes any
documentary or other evidence substantiating the $350,000.00 amount of the "lost equity"
component of the Philpot Claim.  Similarly, neither the Philpot Claim, the Response, nor the Sur-
reply provides any documentary or other evidence substantiating the amount of the $280,000.00
lost income component of the Philpot Claim.


Dated:  November 14, 2014

                                        /s/ Kathy Priore
                                        Kathy Priore
                                        Associate Counsel for
                                        The ResCap Liquidating Trust

8

ny-1159956

## **Exhibit A**

# NOTE

DECEMBER 4TH, 2000              DECATUR                          ALABAMA
         [Date]                              [City]                             [State]


503 FERRY ST. N.E., DECATUR, AL 35601
                              [Property Address]

## 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ 220,000.00        (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is    HOMECOMINGS FINANCIAL NETWORK, INC.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of    10.2500      %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS
### (A) Time and Place of Payments
I will pay principal and interest by making a payment every month.

I will make my monthly payment on the  FIRST  day of each month beginning on  JANUARY 1ST, 2001   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. If, on  DECEMBER 1ST, 2030    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

I will make my monthly payments at  6525 MORRISON BLVD., STE. 333, CHARLOTTE, NC 28211                                          or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S. $      1,971.42  .

## 4. BORROWER'S RIGHT TO PREPAY
I have the right to make payments of principal at a time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a prepayment if I have not made all the monthly payments due under the Note.

I may make a full prepayment or partial prepayments without paying a prepayment charge. The Note Holder will use my prepayments to reduce the amount of principal that I owe under this Note. However, the Note Holder may apply my prepayment to the accrued and unpaid interest on the prepayment amount, before applying my prepayment to reduce the principal amount of the Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**MULTISTATE FIXED RATE NOTE**-Single Family-FNMA/FHLMC UNIFORM INSTRUMENT

VMP -5N(9904)              Form 3200 3/99
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3                Initials: _____              MFCD6054 - (02/00) / 041-225965-7

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15            calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.00            % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
GWENDELL LLOYD PHILPOT          -Borrower

WITHOUT RECOURSE _____ (Seal)
PAY TO THE ORDER OF          -Borrower
RESIDENTIAL FUNDING CORPORATION

MARK HENJUM
ASSISTANT SECRETARY
HOMECOMINGS FINANCIAL NETWORK, INC. (Seal)
A DELAWARE CORPORATION          -Borrower

_____ (Seal)
          -Borrower

_____ (Seal)
          -Borrower

PAY TO THE ORDER OF _____ (Seal)
Bank One, National Association, as Trustee  -Borrower
WITHOUT RECOURSE
Residential Funding Corporation

BY _____
Judy Faber, Vice President

_____ (Seal)
          -Borrower

_____ (Seal)
          -Borrower

*[Sign Original Only]*

## Exhibit B

**Return To:**

HomeComings Financial Network, Inc.
One Meridian Crossing, Ste. 100
Minneapolis, MN 55423
**Loan Number:**

2000   35882
Recorded in the Above
MORTGAGE  Book & Page
12-11-2000 01:30:16 PM
Bobby Day - Probate Judge
State of Alabama, Morgan County

———————————[Space Above This Line For Recording Data]———————————

# MORTGAGE
MIN

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated   DECEMBER 4TH, 2000                          , together with all Riders to this document.
**(B) "Borrower"** is
GWENDELL LLOYD PHILPOT AND ANNETTE GREEN PHILPOT
wife,

Borrower is the mortgagor under this Security Instrument.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**ALABAMA**-Single Family-FNMA/FHLMC UNIFORM INSTRUMENT WITH MERS          Form 3001 3/99
MFAL7770 (06/00) / 041-225965-7
**-BA(AL)** (9905)
Page 1 of 15                    Initials:
VMP MORTGAGE FORMS - (800)521-7291



2000   35883
Recorded in the Above
MORTGAGE  Book & Page
12-11-2000 01:30:16 PM

**(D) "Lender" is**  HOMECOMINGS FINANCIAL NETWORK, INC.

Lender is a  CORPORATION
organized and existing under the laws of  DELAWARE
Lender's address is  6525 MORRISON BLVD., STE. 333
CHARLOTTE, NC  28211
**(E) "Note"** means the promissory note signed by Borrower and dated DECEMBER 4TH, 2000
The Note states that Borrower owes Lender  TWO HUNDRED TWENTY THOUSAND AND NO/100
                                                                                                                              **Dollars**

(U.S. $  220,000.00      ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than DECEMBER 1ST, 2030
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all riders to this Security Instrument that are executed by Borrower. The following
riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(J) "Community Association Dues, Fees and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(L) "Escrow Items"** mean those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for (i)
damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the
Property, (iii) conveyance in lieu of condemnation or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (1) principal and interest under the
Note, plus (2) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.
**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or
not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

MFAL7770 (06/00) /
-6A(AL) (9905)                                    Page 2 of 15          Initials: AB JJH          Form 3001 3/99

2000   35884
Recorded in the Above
MORTGAGE Book & Page
12-11-2000 01:30:16 PM

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (a) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (b) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably mortgages, grants and conveys to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the JUDICIAL DISTRICT                    of MORGAN COUNTY                    :
_____ [Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]
~~described hereon attached hereto and made a part hereof~~

Part of Lot 397, according to the Plan of the City of Decatur, Alabama,
described as beginning at the northwest corner of Ferry and Cherry
Streets, thence in a northeast direction along Ferry Street 82 feet;
thence in a northwest direction parallel with Cherry Street 165 feet
to an alley; thence in a southwest direction parallel with Ferry Street
82 feet to Cherry Street, thence in a southeast direction along Cherry
Street to point of beginning, except the westerly 5 feet for alley.


Parcel ID Number: 52030418401200                    which currently has the address of
503 FERRY ST. N.E.                                              ,              [Street]
DECATUR                                        [City] , Alabama        35601    [Zip Code]
("Property Address"):
    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.
    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.
    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    **1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this

MPAL7770 (06/00) /
⬤-6A(AL) (9905)                              Page 3 of 15              Initials: _____          Form 3001 3/99

2000    35885
Recorded in the Above
MORTGAGE  Book & Page
12-11-2000 01:30:16 PM

Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment(s) or partial payment(s) if the payment(s) or partial payment(s) are insufficient to bring the Loan current. Lender may accept any payment(s) or partial payment(s) insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment(s) or partial payment(s) in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment(s) to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (1) interest due under the Note; (2) principal due under the Note; (3) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

MFAL7770 (06/00) /
-6A(AL) (9905)    Page 4 of 15    Initials:    Form 3001 3/99

2000    35886
Recorded in the Above
MORTGAGE  Book & Page
12-11-2000 01:30:16 PM

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (1) sufficient to permit Lender to apply the Funds at the time specified under RESPA and (2) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

MFAL7770 (06/00) /        /
-6A(AL) (9905)                    Page 5 of 15

Initials: _AB_ _____

Form 3001 3/99

2000   35887
Recorded in the Above
MORTGAGE   Book & Page
12-11-2000 01:30:16 PM

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (1) a one-time charge for flood zone determination, certification and tracking services or (2) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Initials: _AB OVJN_

2000   35888
Recorded in the Above
MORTGAGE  Book & Page
12-11-2000 01:30:16 PM

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (1) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (2) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (1) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (2) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (3) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to, (1) paying any sums secured by a lien which has priority over this Security Instrument, (2) appearing in court, and (3) paying reasonable

MFAL7770 (06/00) / : . . . .. .
-6A(AL) (9905)

Page 7 of 15

Initials

Form 3001 3/99

2000   35889
Recorded in the Above
MORTGAGE  Book & Page
12-11-2000 01:30:16 PM

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until the Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument,

MFAL7770 (06/00) /
-6A(AL) (9905)

Initials

Page 8 of 15

Form 3001 3/99

2000   35890
Recorded in the Above
MORTGAGE  Book & Page
12-11-2000 01:30:16 PM

whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this

MFAL7770 (06/00) /
⬤-6A(AL) (9905)     Page 9 of 15     Initials: _____     Form 3001 3/99

2000    35891
Recorded in the Above
MORTGAGE  Book & Page
12-11-2000 01:30:16 PM

Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable

MFAL7770 (06/00) / :    . .·.
-6A(AL) (9905)    Page 10 of 15    Initials: AC    Form 3001 3/99

2000    35892
Recorded in the Above
MORTGAGE  Book & Page
12-11-2000 01:30:16 PM

Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (1) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender, (2) words in the singular shall mean and include the plural and vice versa, and (3) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (i) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (ii) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (iii) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

MFAL7770 (06/00) /
-6A(AL) (9905)

Page 11 of 15

Initials: _____

Form 3001 3/99

2000   35893
Recorded in the Above
MORTGAGE  Book & Page
12-11-2000 01:30:16 PM

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer(s) and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (1) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (2) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (3) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law and (4) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (1) that is in violation of any Environmental Law, (2) which creates an Environmental Condition or (3) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (1) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge; (2) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (3) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

2000   35894
Recorded in the Above
MORTGAGE  Book & Page
12-11-2000 01:30:16 PM

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice to Borrower in the manner provided in Section 15. Lender shall publish the notice of sale once a week for three consecutive weeks in a newspaper published in    MORGAN
County, Alabama, and thereupon shall sell the Property to the highest bidder at public auction at the front door of the County Courthouse of this County. Lender shall deliver to the purchaser Lender's deed conveying the Property. Lender or its designee may purchase the Property at any sale. Borrower covenants and agrees that the proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

MFAL7770 (06/00) / 
-6A(AL) (9905)

Page 13 of 15

Initials

Form 3001 3/99

```
2000   35895
Recorded in the Above
MORTGAGE  Book & Page
12-11-2000 01:30:16 PM
```

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____    _____ (Seal)
                                    GWENDELL  LLOYD  PHILPOT    -Borrower

_____    _____ (Seal)
                                    Annette Green Philpot    -Borrower

_____ (Seal)    _____ (Seal)
          -Borrower                        -Borrower

_____ (Seal)    _____ (Seal)
          -Borrower                        -Borrower

_____ (Seal)    _____ (Seal)
          -Borrower                        -Borrower

MFAL7770 (06/00) /  · · ·  ··
    -6A(AL) (9905)                    Page 14 of 15                    Form 3001 3/99

2000  35896
Recorded in the Above
MORTGAGE  Book & Page
12-11-2000 01:30:16 PM
Bobby Day - Probate Judge
State of Alabama, Morgan County

**STATE OF ALABAMA,**               MORGAN

                                                    County ss:

**On this**   **4th**          **day of**   **December**          **2000 , I,**

a Notary Public in and for said county and in said state, hereby certify that
GWENDELL LLOYD PHILPOT AND ANNETTE GREEN PHILPOT

whose name(s) is/are signed to the foregoing conveyance, and who is/are known to me, acknowledged
before me that, being informed of the contents of the conveyance, he/she/they executed the same
voluntarily and as his/her/their act on the day the same bears date.
   Given under my hand and seal of office this    4th    day of    December    . 2000.

**My Commission Expires:**   10/8/2001

                                                         Notary Public

**Prepared By:**   HomeComings Financial Network
                   6525 Morrison Boulevard, Ste. 333
                   Charlotte, NC  28211

Term/Cashier: RECORD2 / AnnW
Tran: 742.21367.31220
AFF Special Fee (Act 95-424)       5.00
FTL Filing Fee                     1.00
MTG Mortgage Tax                 337.00
REC Recording Fee                 45.00
Total Fees:  $ 381.00
State of Alabama, Morgan County
I certify this instrument was filed on
12-11-2000 01:30:16 PM
and recorded in MORTGAGE Book
2000 at pages 35882 - 35896
Bobby Day - Probate Judge

MFAL7770 (06/00) /
-6A(AL) (9905)                          Page 15 of 15          Initials:            Form 3001 3/99

**<u>Exhibit C</u>**

Recorded in the above
MISC Book & Page
08-30-2010 11:15:26 AM
Greg Cain - Probate Judge
State of Alabama, Morgan County

Loan Number: ▪▪▪▪▪▪

CM #: ▪▪▪▪▪

STATE OF ALABAMA          )

COUNTY OF MORGAN          )

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, the undersigned MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (the "Assignor"), does hereby transfer, assign, set over and convey unto THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION  FKA THE BANK OF NEW YORK TRUST COMPANY N.A., AS SUCCESSOR TO JP MORGAN CHASE BANK, N.A., SUCCESSOR BY MERGER WITH BANK ONE, N. A., AS TRUSTEE FOR RASC 2001KS1 (the "Assignee"), its successors, transferees, and assigns forever, all right, title and interest of said Assignor in and to that certain Mortgage executed by GWENDELL LLOYD PHILPOT AND WIFE, ANNETTE GREEN PHILPOT, to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SOLELY AS NOMINEE FOR HOMECOMINGS FINANCIAL NETWORK, INC dated the 4th day of December 2000, and filed for record in Book 2000, Page 35882, in the Probate Office of Morgan County, Alabama.

It is expressly understood and agreed that the within transfer and assignment of the said Mortgage is without warranty, representation or recourse of any kind whatsoever.

IN WITNESS WHEREOF, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. has caused this conveyance to be executed by Colleen McCullough as Assistant Secretary and Vice President of Mortgage Electronic Registration Systems, Inc., pursuant to that certain Agreement for signing attached hereto as Exhibit A and fully incorporated herein. This Assignment executed on this the _24_ day of _August_, 2010.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By: _____
Colleen McCullough
Assistant Secretary and Vice President of
Mortgage Electronic Registration Systems, Inc.

STATE OF ALABAMA          )

COUNTY OF JEFFERSON          )

I, _David Charles Johnson_, a Notary Public in and for said County in said State, hereby certify that Colleen McCullough, whose name as Assistant Secretary and Vice President of Mortgage Electronic Registration Systems, Inc., a corporation, is signed to the foregoing conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, she, as such officer and with full authority, executed the same voluntarily for and as the act of said corporation.

Given under my hand this the _24_ day of _August_, 2010.

_____
Notary Public

My Commission Expires: MY COMMISSION EXPIRES  JUNE 15, 2014

This instrument prepared by:
David Johnson
Sirote & Permutt, P.C.
P. O. Box 55727
Birmingham, AL. 35255

  

# **Exhibit D**

**Acct:** [redacted] **Name:** GWENDELL L PHILPOT    Sub:    **Investor:** 98028 **Warn:** 5 **Lock:** 1 **Stop:** 0    **Page:**

**SSN:** [redacted]          **Type:**      **Refresh Date:**

| - Dates - | **Paid To:** 7/1/2008 | **Next Due:** | 8/1/2008 | **Last Pmt:** | 8/30/2008 |
| - Bal - | **Prin:** $0.00 | **Esc:** | $0.00 | | |
| - Uncol - | **LC:** $0.00 | **P&I Adv:** | $0.00 | **Esc Sht:** | $0.00 |

## NOTES:

| Trans Added Date | Trans Type | Area ID that Originated the Message | Document Notice Id | Document Text Id | Document Text Type Code | Add Teller | TransactionDescription |
|---|---|---|---|---|---|---|---|
| 5/7/2007 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL EI16T |
| 5/8/2007 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL EI16T |
| 5/21/2007 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 5/22/2007 | NT | SKIP | | | | T:01519 | No phone number returned from Innovis skip file |
| 5/28/2007 | NT | | | | | T:25041 | PO Total Amount =213730.75 |
| 5/28/2007 | NT | | | | | T:25041 | PO Principal =210019.33 |
| 5/28/2007 | NT | | | | | T:25041 | PO Interest =3504.28 |
| 5/28/2007 | NT | | | | | T:25041 | PO Latecharge =197.14 |
| 5/28/2007 | NT | | | | | T:25041 | PO Unpaid Fees =10.00 |
| 5/28/2007 | NT | | | | | T:25041 | PO Escrow Balance =0.00 |
| 5/28/2007 | NT | | | | | T:25041 | PO Interest To Date =05/30/07 |
| 5/28/2007 | NT | | | | | T:25041 | PO PHN =2566842617 |
| 5/28/2007 | NT | | | | | T:25041 | PO FAX =0000000000 |
| 5/28/2007 | NT | | | | | T:25041 | PO TYPE =VERBAL |
| 5/29/2007 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 5/29/2007 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 5/29/2007 | DMD | | | | | T:22222 | 05/29/07 11:05:53 SIT_TONE |
| 5/31/2007 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 5/31/2007 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 5/31/2007 | DMD | | | | | T:22222 | 05/31/07 13:51:42 OP INTCEPT |
| 6/1/2007 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 6/1/2007 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 6/1/2007 | DMD | | | | | T:22222 | 06/01/07 14:12:03 UN-SUCCESSFUL |
| 6/4/2007 | DM | | | | | T:00000 | EARLY IND: SCORE 369 MODEL EI30S |
| 6/4/2007 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 6/4/2007 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 6/4/2007 | DMD | | | | | T:22222 | 06/04/07 14:49:50 SIT_TONE |
| 6/5/2007 | D19 | | 0 | 05 | 8 | | BREACH GWENDELL L PHIL |
| 6/7/2007 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 11/1/2007 | FSV | | 0 | 00 | | T:00000 | INSP TP D RESULTS RCVD;  ORD DT=10/15/07 |
| 11/2/2007 | DM | | | | | T:00000 | EARLY IND: SCORE 345 MODEL EI30S |
| 11/2/2007 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 11/5/2007 | D19 | | 0 | 05 | 8 | | BREACH GWENDELL L PHIL |
| 11/9/2007 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT:  30 DAYS |
| 11/12/2007 | D19 | | 0 | 05 | 8 | | DEF - OPTIONS TO AVOID FORECLOSURE |
| 11/14/2007 | FSV | | 0 | 00 | 1 | T:00000 | INSP TYPE D ORDERED;    REQ CD =AUTO DELQ |
| 11/19/2007 | NT | SKIP | | | | T:08243 | No phone number returned from Innovis skip file |
| 11/29/2007 | DM | | | | | T:00000 | AUTOMATED INTEREST ACCRUAL HOLD ACTIVE |
| 11/30/2007 | DM | | | | | T:00000 | AUTOMATED INTEREST ACCRUAL HOLD INACTIVE |
| 11/30/2007 | NT | | | | | T:25041 | PBP VRU13 CONF # 2007113042816714  AMT $2220.62 |
| 12/3/2007 | DM | | | | | T:00000 | EARLY IND: SCORE 006 MODEL EI16T |
| 12/4/2007 | DM | | | | | T:00000 | EARLY IND: SCORE 354 MODEL EI30S |
| 12/4/2007 | D19 | | 0 | 05 | 8 | | BREACH GWENDELL L PHIL |
| 12/10/2007 | FSV | | 0 | 00 | 1 | T:00000 | INSP TP D RESULTS RCVD;  ORD DT=11/14/07 |
| 12/13/2007 | D19 | | 0 | 05 | 8 | | DEF - OPTIONS TO AVOID FORECLOSURE |
| 12/14/2007 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT:  30 DAYS |
| 12/14/2007 | FSV | | 0 | 00 | 1 | T:00000 | INSP TYPE D ORDERED;    REQ CD =AUTO DELQ |
| 12/19/2007 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 12/28/2007 | DM | | | | | T:00000 | AUTOMATED INTEREST ACCRUAL HOLD ACTIVE |
| 12/31/2007 | FSV | | 0 | 00 | 1 | T:00000 | INSP TP D RESULTS RCVD;  ORD DT=12/14/07 |
| 1/2/2008 | DM | | | | | T:00000 | EARLY IND: SCORE 311 MODEL EI30S |
| 1/3/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 1/3/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 1/3/2008 | DMD | | | | | T:22222 | 01/02/08 09:34:29                NO ANSWER |
| 1/3/2008 | D19 | | 0 | 05 | 8 | | LM - LOSS MIT FCL REFERRAL - FNMA/FHLMC |
| 1/4/2008 | DM | | | | | T:00000 | AUTOMATED INTEREST ACCRUAL HOLD INACTIVE |
| 1/4/2008 | DMD | | | | | T:22222 | 01/04/08 14:05:27              LEFT MESSAGE |
| 1/4/2008 | DMD | | | | | T:22222 | 01/04/08 12:12:17              NO ANSWER |
| 1/4/2008 | DMD | | | | | T:22222 | 01/04/08 09:33:18              NO ANSWER |
| 1/4/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 1/4/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 1/4/2008 | DMD | | | | | T:22222 | 01/04/08 10:43:58  MSG ANS MACH |
| 1/4/2008 | CIT | COL03 | | | | T:22168 | 001 new cit 808 setup one pmt had to make repairs |
| 1/4/2008 | CIT | COL03 | | | | T:22168 | to sell prop |
| 1/4/2008 | DM | | | | | T:22168 | TT B1 V/I STT TAD CD LC BREACH RFD HAD TO PAY |
| 1/4/2008 | DM | | | | | T:22168 | LARGE AMTS OF FUNDS TO REPAIR PROP TO GET READY TO |
| 1/4/2008 | DM | | | | | T:22168 | SELL PROP TOOK FIANC POS SURPLUS BUT DECLIND RPY |
| 1/4/2008 | DM | | | | | T:22168 | STT WANTED TO JUST SETUP ONE PMT SETUP ONE PMT CSI |
| 1/4/2008 | DM | | | | | T:22168 | PUT IN CIT 808 FOR ONE PMT ARAMIREZ 6268 |

| Date | Code | Sub | | | | Ref | Description |
|---|---|---|---|---|---|---|---|
| 1/4/2008 | DM | | | | | T:22168 | DFLT REASON 1 CHANGED TO OTHER |
| 1/4/2008 ₃ | DM | | | | | | ACTION/RESULT CD CHANGED FROM OASK TO BRSS |
| 1/4/2008 | FOR | | | | | | LMT BORR FIN REC ADDED |
| 1/4/2008 | NT | INQ | | | | T:28927 | b1 cld was trying to log on to the website but was |
| 1/4/2008 | NT | INQ | | | | T:28927 | unable to do so b/c he couldnt remember |
| 1/4/2008 | NT | INQ | | | | T:28927 | password.adv him that i would xfer to col dept to |
| 1/4/2008 | NT | INQ | | | | T:28927 | do pbp for nov pmt since he wasnt able to bring |
| 1/4/2008 | NT | INQ | | | | T:28927 | acct curr.miker4029 |
| 1/7/2008 | OL | | 0 | 41 | 7 | | WDOYCSH - PAY-BY-PHONE LETTER |
| 1/7/2008 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 1/7/2008 | D19 | | 0 | 05 | 8 | | BREACH GWENDELL L PHIL |
| 1/10/2008 | CIT | COL01 | | | | T:01059 | 001 DONE 01/10/08 BY TLR 01059 |
| 1/10/2008 | CIT | COL01 | | | | T:01059 | TSK TYP 808-DO NOT REFER TO |
| 1/10/2008 | CIT | COL01 | | | | T:01059 | 001 removal of 808 by script |
| 1/11/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 1/11/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 1/11/2008 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT: 60 DAYS |
| 1/14/2008 | FSV | | 0 | 00 | 1 | T:00000 | INSP TYPE D ORDERED;   REQ CD =AUTO DELQ |
| 1/14/2008 | D19 | | 0 | 05 | 8 | | DEF - OPTIONS TO AVOID FORECLOSURE |
| 1/16/2008 | DM | | | | | T:16754 | REMOVAL OF STALE PROMISE DATE |
| 1/16/2008 | DM | | | | | T:16754 | ACTION/RESULT CD CHANGED FROM OASK TO NOTE |
| 1/18/2008 | NT | EOY | | | | T:01507 | 3rd party annette cld, wanted to obtain the 1098 |
| 1/18/2008 | NT | EOY | | | | T:01507 | info, advsd since her name is not on the account i |
| 1/18/2008 | NT | EOY | | | | T:01507 | would not be able to release this information to |
| 1/18/2008 | NT | EOY | | | | T:01507 | her. inquired if we have reps there on saturday. |
| 1/18/2008 | NT | EOY | | | | T:01507 | advsd yes 9:00-1:00 cst. debw/2367582 |
| 1/29/2008 | DM | | | | | T:00000 | AUTOMATED INTEREST ACCRUAL HOLD ACTIVE |
| 1/31/2008 | DM | | | | | T:00000 | AUTOMATED INTEREST ACCRUAL HOLD INACTIVE |
| 1/31/2008 | FSV | | 0 | 00 | 1 | T:00000 | INSP TP D RESULTS RCVD;  ORD DT=01/14/08 |
| 1/31/2008 | NT | | | | | T:25043 | PBP VRU13  CONF # 2008013145122445  AMT $2220.62 |
| 2/1/2008 | DM | | | | | T:00000 | EARLY IND: SCORE 006 MODEL EI16T |
| 2/4/2008 | DM | | | | | T:00000 | EARLY IND: SCORE 350 MODEL EI30S |
| 2/5/2008 | D19 | | 0 | 05 | 8 | | BREACH GWENDELL L PHIL |
| 2/7/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 2/7/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 2/7/2008 | DMD | | | | | T:22222 | 02/06/08 20:44:22 INCOMPLETE |
| 2/7/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 2/7/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 2/7/2008 | DMD | | | | | T:22222 | 02/07/08 18:08:33 ANS MACH |
| 2/11/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |

| 10/2/2008 | DMD | | | T:22222 | 00/00/00 00:00:00 | LEFT MESSAGE |
|---|---|---|---|---|---|---|
| 10/2/2008 | DMD | | | T:22222 | 10/02/08 09:23:33 | |
| 10/2/2008 | DMD | | | T:22222 | 00/00/00 00:00:00 | |
| 10/3/2008 | CIT | COL02 | | T:19563 | 004 & breach expiration & the possibilty tht the |
| 10/3/2008 | CIT | COL02 | | T:19563 | accnt might go into foreclosure if no |
| 10/3/2008 | CIT | COL02 | | T:19563 | arrngmnts will be made on the accnt.adv |
| 10/3/2008 | CIT | COL02 | | T:19563 | customer correspondence's contact info & |
| 10/3/2008 | CIT | COL02 | | T:19563 | adress fr him to file a |
| 10/3/2008 | CIT | COL02 | | T:19563 | complaint.thomasl//8970933 |
| 10/3/2008 | CIT | COL02 | | T:19563 | 004 contact infos,adv we are not allowed to |
| 10/3/2008 | CIT | COL02 | | T:19563 | disclose those info.tried to help out the |
| 10/3/2008 | CIT | COL02 | | T:19563 | borrower in setting up pmnt arrngmnt to help |
| 10/3/2008 | CIT | COL02 | | T:19563 | him be caught up wth his delinquent accnt.adv |
| 10/3/2008 | CIT | COL02 | | T:19563 | tht any pmnt arrngmnts wether short term or |
| 10/3/2008 | CIT | COL02 | | T:19563 | long term will be based on his finncials as a |
| 10/3/2008 | CIT | COL02 | | T:19563 | proof of his capacity to make the future pmnts |
| 10/3/2008 | CIT | COL02 | | T:19563 | ; again borrower refuses to comply.adv the tad |
| 10/3/2008 | CIT | COL02 | | T:19563 | 004 have called us to verfy if the pmnt did go |
| 10/3/2008 | CIT | COL02 | | T:19563 | through but borrower failed to do so.he want |
| 10/3/2008 | CIT | COL02 | | T:19563 | to make a replacemnt pmnt & to have tht pmnt |
| 10/3/2008 | CIT | COL02 | | T:19563 | to be credited as 0930,we need to investigate |
| 10/3/2008 | CIT | COL02 | | T:19563 | & if ever it would be proven tht our system |
| 10/3/2008 | CIT | COL02 | | T:19563 | failed neccessary correction will be |
| 10/3/2008 | CIT | COL02 | | T:19563 | made.borrower began askin names of the |
| 10/3/2008 | CIT | COL02 | | T:19563 | mngrs,director & even the CEO's names & |
| 10/3/2008 | CIT | COL02 | | T:19563 | 004 & procedures & want results right away.adv we |
| 10/3/2008 | CIT | COL02 | | T:19563 | need to follow certain procedures to research |
| 10/3/2008 | CIT | COL02 | | T:19563 | or investigate what happend on tht automated |
| 10/3/2008 | CIT | COL02 | | T:19563 | transction which he confirmed tht he did not |
| 10/3/2008 | CIT | COL02 | | T:19563 | obtain a confirmation number of the |
| 10/3/2008 | CIT | COL02 | | T:19563 | transction.adv a confirmation number is given |
| 10/3/2008 | CIT | COL02 | | T:19563 | by the automated system as a proof tht the |
| 10/3/2008 | CIT | COL02 | | T:19563 | transaction ha been made.adv tht he should |
| 10/3/2008 | CIT | COL02 | | T:19563 | 004 DONE 10/03/08 BY TLR 19563 |
| 10/3/2008 | CIT | COL02 | | T:19563 | TSK TYP 963-DALLAS TEAM LEA |
| 10/3/2008 | CIT | COL02 | | T:19563 | 004 closing cit 963.tt b1.ci to dispute the pymnt |
| 10/3/2008 | CIT | COL02 | | T:19563 | tht he did on the automated system dated |
| 10/3/2008 | CIT | COL02 | | T:19563 | 0930.adv we have no records of it.want a phone |
| 10/3/2008 | CIT | COL02 | | T:19563 | data,inputs,transactions & all other data |
| 10/3/2008 | CIT | COL02 | | T:19563 | concerning the account wthin 2 years with |

| Date | Code | Col | | | | T-ref | Text |
|---|---|---|---|---|---|---|---|
| 10/3/2008 | CIT | COL02 | | | | T:19563 | homecomings adv he need to write a letter of |
| 10/3/2008 | CIT | COL02 | | | | T:19563 | request or complaint to our customer |
| 10/3/2008 | CIT | COL02 | | | | T:19563 | service.borrowre want to bypassed any policies |
| 10/3/2008 | DM | | | | | T:22924 | TT B1.ASKS FOR SUP AS SAID HAVE MADE PMT ON 093008 |
| 10/3/2008 | DM | | | | | T:22924 | AND WASNT RECOGNIZED BY THE SY. WANTS TO MAKE PMTS |
| 10/3/2008 | DM | | | | | T:22924 | TODAY ONLY IF PMT WILL BE CREDITED AS MADE ON |
| 10/3/2008 | DM | | | | | T:22924 | 093008. ADV CANT DO TAHT AS IT WILL BE CREDITED AS |
| 10/3/2008 | DM | | | | | T:22924 | PMT MADE ON 100308. WANTS SUP AS SAID NOT SHOULD |
| 10/3/2008 | DM | | | | | T:22924 | BE HIS FAULT AS ITS SYS ERROR ON OUR PART |
| 10/3/2008 | DM | | | | | T:22924 | ACTION/RESULT CD CHANGED FROM BRTR TO BRUN |
| 10/3/2008 | CIT | COL02 | | | | T:22924 | 004 new cit 963--asks for sup as said have made |
| 10/3/2008 | CIT | COL02 | | | | T:22924 | pmt on 093008 and wasnt recognized by the sy. |
| 10/3/2008 | CIT | COL02 | | | | T:22924 | wants to make pmts today only if pmt will be |
| 10/3/2008 | CIT | COL02 | | | | T:22924 | credited as made on 093008. adv cant do taht |
| 10/3/2008 | CIT | COL02 | | | | T:22924 | as it will be credited as pmt made on 100308. |
| 10/3/2008 | CIT | COL02 | | | | T:22924 | wants sup as said not should be his fault as |
| 10/3/2008 | CIT | COL02 | | | | T:22924 | this is due to our syst error. |
| 10/3/2008 | CIT | COL02 | | | | T:22924 | --ann, 8970922 |
| 10/3/2008 | CIT | COL02 | | | | T:22924 | 004 new cit 963--asks for sup as said have made |
| 10/3/2008 | CIT | COL02 | | | | T:22924 | pmt on 093008 and wasnt recognized by the sy. |
| 10/3/2008 | CIT | COL02 | | | | T:22924 | wants to make pmts today only if pmt will be |
| 10/3/2008 | CIT | COL02 | | | | T:22924 | credited as made on 093008. adv cant do taht |
| 10/3/2008 | CIT | COL02 | | | | T:22924 | as it will be credited as pmt made on 100308. |
| 10/3/2008 | CIT | COL02 | | | | T:22924 | wants sup as said not should be his fault as |
| 10/3/2008 | CIT | COL02 | | | | T:22924 | this is due to our syst error. |
| 10/3/2008 | CIT | COL02 | | | | T:22924 | --ann, 8970922 |
| 10/3/2008 | DM | | | | | T:31097 | CONT..PYMNT HAS BEEN MADE.CALL TRFR TO LT STAGE |
| 10/3/2008 | DM | | | | | T:31097 | B/C TAD GOES INTO 3RD MO. CUS ALSO HAVING PYMNT |
| 10/3/2008 | DM | | | | | T:31097 | DISPUTES. |
| 10/3/2008 | DM | | | | | T:31097 | ACTION/RESULT CD CHANGED FROM OAAI TO BRTR |
| 10/3/2008 | DM | | | | | T:31097 | CONT..HAVE A COMPLETE RECOGNITION FROM OUR COMPANY |
| 10/3/2008 | DM | | | | | T:31097 | THAT IT IS OUR FAULT.HAS BEEN BEHIND MORE STARTING |
| 10/3/2008 | DM | | | | | T:31097 | FROM THAT MONTH.B1 HAVING PYMNT DISPUTES BECAUSE |
| 10/3/2008 | DM | | | | | T:31097 | B1 SAID HE MADE A PYMNT LAST 09/30/08 2266.46 + |
| 10/3/2008 | DM | | | | | T:31097 | 7.50 TRANS FEE BT PYMNT DID NOT GET THROUGH. B1 |
| 10/3/2008 | DM | | | | | T:31097 | SAID AN EMAIL FROM CUS SERV HAS REFLECTED THAT |
| 10/3/2008 | DM | | | | | T:31097 | ACTION/RESULT CD CHANGED FROM OAAI TO OAAI |
| 10/3/2008 | DM | | | | | T:31097 | B1 IS STILL WORKING NOW.NO ONE ELSE HELPING TO PAY |
| 10/3/2008 | DM | | | | | T:31097 | FOR THE MORTGAGE.NO OTHER FINANCIAL RESERVES TO |
| 10/3/2008 | DM | | | | | T:31097 | GET MONEY FROM.HAS EXHAUSTED ALL INCOME.NO |

| Date | Code | Type | | | | T-Code | Description |
|---|---|---|---|---|---|---|---|
| 10/3/2008 | DM | | | | | T:31097 | BENEFITS RECVD.B1 DOESNT WNT TO BORROW.B1 SAID IN |
| 10/3/2008 | DM | | | | | T:31097 | 07 MISTAKES WERE MADE BY THE SYS (ONLINE PYMNT) |
| 10/3/2008 | DM | | | | | T:31097 | AND THE COMPANY REFUSED TO RECOGNIZE IT .WANTS TO |
| 10/3/2008 | DM | | | | | T:31097 | ACTION/RESULT CD CHANGED FROM BRTR TO OAAI |
| 10/3/2008 | DM | | | | | T:31097 | B1 CI VFD ACCT INFO.VFD TAD IAO 8545.25.RFD:HAD |
| 10/3/2008 | DM | | | | | T:31097 | MEDICAL PROBLEMS AND HAD A LOSS IN INCOME LAST |
| 10/3/2008 | DM | | | | | T:31097 | MARCH 07.DID NOT EXPECT THE LOSS IN REVENUE.GOT |
| 10/3/2008 | DM | | | | | T:31097 | BACK ON TRACK BUT CANT GET CAUGHT UP WITH THE |
| 10/3/2008 | DM | | | | | T:31097 | DIFFERENCE OF THE DUE.HAD SOME PROBLEMS ON THE |
| 10/3/2008 | DM | | | | | T:31097 | HOUSE,DAMAGES 04/07 AND HAD TO HAVE THAT FIXED. |
| 10/3/2008 | DM | | | | | T:31097 | DFLT REASON 2 CHANGED TO: BLANK |
| 10/3/2008 | DM | | | | | T:31097 | DFLT REASON 3 CHANGED TO: BLANK |
| 10/3/2008 | DM | | | | | T:31097 | DFLT REASON 4 CHANGED TO: BLANK |
| 10/3/2008 | DM | | | | | T:31097 | ACTION/RESULT CD CHANGED FROM OASK TO BRTR |
| 10/3/2008 | NT | INQ | | | | T:17649 | email- adv b1 of active username and instructions |
| 10/3/2008 | NT | INQ | | | | T:17649 | how to retrieve pw, adv also no pmt was made on |
| 10/3/2008 | NT | INQ | | | | T:17649 | 09/30/08, adv acct is now due for aug, sept and |
| 10/3/2008 | NT | INQ | | | | T:17649 | oct 2008 pmts, late charges and other fees, adv to |
| 10/3/2008 | NT | INQ | | | | T:17649 | call col dept for pmt arrangments   girlier\73838 |
| 10/3/2008 | D19 | | 0 | 05 | 8 | | LM - LOSS MIT FCL REFERRAL - FNMA/FHLMC |
| 10/6/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/6/2008 | DMD | | | | | T:22222 | 10/04/08 13:08:33              LEFT MESSAGE |
| 10/6/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/6/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/6/2008 | DMD | | | | | T:22222 | 10/06/08 12:16:36  MSG ANS MACH |
| 10/6/2008 | FSV | | 0 | 0 | 0 | T:21396 | INSP TYPE R ORDERED;    REQ CD =1150 |
| 10/7/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/7/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/7/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/7/2008 | DMD | | | | | T:22222 | 10/07/08 12:07:49              Left Message |
| 10/7/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/7/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/7/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/7/2008 | DMD | | | | | T:22222 | 10/07/08 08:48:30              No Answer |
| 10/7/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/7/2008 | NT | CSH | | | | T:19106 | email-b1 still dispute that she made a pmt thru |
| 10/7/2008 | NT | CSH | | | | T:19106 | pbp on 9/30/08 iao $2,266.46. advs pmt rcvs made |
| 10/7/2008 | NT | CSH | | | | T:19106 | online. advs if pmt was cleared need to contact |
| 10/7/2008 | NT | CSH | | | | T:19106 | the bank and send the bank statement to us showing |

| Date | | | | | | | |
|---|---|---|---|---|---|---|---|
| 10/7/2008 | NT | CSH | | | | T:19106 | the check number, dollar amount and the date |
| 10/7/2008 | NT | CSH | | | | T:19106 | cleared the bank to 319-236-4696 for further |
| 10/7/2008 | NT | CSH | | | | T:19106 | research or mail it to the address provided. advs |
| 10/7/2008 | NT | CSH | | | | T:19106 | the add and the fax#. yehlenm73518 |
| 10/8/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/8/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/8/2008 | DMD | | | | | T:22222 | 10/08/08 11:11:37  MSG ANS MACH |
| 10/9/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/9/2008 | DMD | | | | | T:22222 | 10/09/08 08:58:28            LEFT MESSAGE |
| 10/9/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/9/2008 | FSV | | 0 | 00 | 1 | T:00000 | INSP TYPE D ORDERED;    REQ CD =SCRIPT |
| 10/9/2008 | NT | CSH | | | | T:01162 | email--advsd cannot effective date aug pmt to be |
| 10/9/2008 | NT | CSH | | | | T:01162 | recvd on 9/30; however, can amend crdit to show |
| 10/9/2008 | NT | CSH | | | | T:01162 | being recvd within 60 days due to vru systm error |
| 10/9/2008 | NT | CSH | | | | T:01162 | on 9/30. advsd in order to do so will need to make |
| 10/9/2008 | NT | CSH | | | | T:01162 | the pmt w/in the next couple days. sharina w/4145 |
| 10/9/2008 | NT | FSV | | | | T:25101 | Loan on HFN 2501 Report. Ran script to order |
| 10/9/2008 | NT | FSV | | | | T:25101 | inspection if needed. |
| 10/10/2008 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT:  60  DAYS |
| 10/10/2008 | CBR | | 0 | 00 | 1 | T:00000 | CHANGE IN PRIMARY BORROWERS ADDR |
| 10/13/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/13/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/13/2008 | DMD | | | | | T:22222 | 10/13/08 10:29:25  MSG ANS MACH |
| 10/13/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/13/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/13/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/13/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/13/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/13/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/13/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/13/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/13/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/13/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/13/2008 | DMD | | | | | T:22222 | 10/11/08 12:01:47            LEFT MESSAGE |
| 10/13/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/13/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/13/2008 | DMD | | | | | T:22222 | 10/11/08 08:23:15            No Answer |

| Date | Type | Sub | | | | T | Description |
|---|---|---|---|---|---|---|---|
| 10/13/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/15/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/15/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/15/2008 | DMD | | | | | T:22222 | 10/15/08 20:27:25 NO ANS |
| 10/15/2008 | NT | LMT | | | | T:25102 | Letter campaign - workout package sent regular |
| 10/15/2008 | NT | LMT | | | | T:25102 | mail |
| 10/16/2008 | FSV | | 0 | 00 | 1 | T:00000 | INSP TP D RESULTS RCVD;   ORD DT=10/09/08 |
| 10/20/2008 | LMT | | | | | | LMT BPO/APPRAISAL REC ADDED |
| 10/21/2008 | D28 | | 0 | DT | 8 | | FORCED BILLING STATEMENT FROM REPORT R628 |
| 10/22/2008 | FOR | | | | | | FORECLOSURE APPROVAL (1)   COMPLETED 10/22/08 |
| 10/22/2008 | NT | FCL | | | | T:25101 | Foreclosure Referral Review Completed |
| 10/22/2008 | NT | FCL | | | | T:25101 | and Management Approved |
| 10/22/2008 | FOR | | | | | | APPROVED FOR FCL 10/22/08 |
| 10/23/2008 | FOR | | | | | | REFERRED TO ATTORNEY (2)   COMPLETED 10/23/08 |
| 10/29/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/29/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/29/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/29/2008 | DMD | | | | | T:22222 | 10/16/08 13:03:19            No Answer |
| 10/29/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/29/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/29/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/29/2008 | DMD | | | | | T:22222 | 10/16/08 09:29:21            No Answer |
| 10/29/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/29/2008 | DMD | | | | | T:22222 | 10/18/08 15:26:31            No Answer |
| 10/29/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/29/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/29/2008 | DMD | | | | | T:22222 | 10/18/08 11:55:41            No Answer |
| 10/29/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/29/2008 | DM | | | | | T:21384 | ADV STAT OF ACCOUNT, B1 STTD THAT THEY WILL CALL |
| 10/29/2008 | DM | | | | | T:21384 | BACK AT A LATER TIME |
| 10/29/2008 | DM | | | | | T:21384 | ACTION/RESULT CD CHANGED FROM BRUN TO LMDC |
| 10/30/2008 | FOR | | | | | | 10/23/08 - 10:19 - 00007 |
| 10/30/2008 | FOR | | | | | | Foreclosure (NIE Id# 9051538) sent |
| 10/30/2008 | FOR | | | | | | to Sirote & Permutt, PC at |
| 10/30/2008 | FOR | | | | | | 10/23/2008 10:18:40 AM by Automated |
| 10/30/2008 | FOR | | | | | | Tasks |
| 10/30/2008 | FOR | | | | | | 10/23/08 - 10:27 - 00007 |
| 10/30/2008 | FOR | | | | | | User has updated the system for the |
| 10/30/2008 | FOR | | | | | | following event: File Referred To |

| Date | Code | | | | | Queue | Note |
|---|---|---|---|---|---|---|---|
| 12/12/2008 | CBR | | | | | T:00000 | CHANGE IN PRIMARY BORROWERS ADDR |
| 12/12/2008 | DM | | | | | | AND WIFE ANNETTE C/O TO GET STATUS UPDATE IF |
| 12/12/2008 | DM | | | | | T:20302 | ANYTHING IS MISSING ADV. CONTRACT OFFER .. ADV. |
| 12/12/2008 | DM | | | | | T:20302 | THAT SALE WAS PP DUE TO COMPANY POLICY AFTER |
| 12/12/2008 | DM | | | | | T:20302 | 010909 ADV. IF INCOME STATUS CHANGE CAN SUBMIT FOR |
| 12/12/2008 | DM | | | | | T:20302 | ARRANGEMENTS TO KEEP HOME.. ADV. WILL NEED TO |
| 12/12/2008 | DM | | | | | T:20302 | OBTAIN CONTRACT TO BE CONSIDERED FOR SPO. DBAKER63 |
| 12/12/2008 | DM | | | | | T:20302 | ACTION/RESULT CD CHANGED FROM LMDC TO LMDC |
| 12/12/2008 | OL | | 0 | 75 | 5 | | WDOYLM - NEW FINANCIAL W/SHORT SALE REQ |
| 12/12/2008 | DM | | | | | T:15638 | TT ATP VI DISCUSSED LOAN STATUS DISCUSSED SPO AND |
| 12/12/2008 | DM | | | | | T:15638 | POSS WO OPTIONS ADV PREVIOUS FINS SHOW LARGE |
| 12/12/2008 | DM | | | | | T:15638 | DEFICIT IF B1 DOESNT FIND JOB SPO IS PROBABLY BEST |
| 12/12/2008 | DM | | | | | T:15638 | OPTION KLOFTON2461 |
| 12/12/2008 | DM | | | | | T:15638 | ACTION/RESULT CD CHANGED FROM LMDC TO LMDC |
| 12/15/2008 | FOR | | | | | | 12/10/08 - 12:30 - 56289 |
| 12/15/2008 | FOR | | | | | | Intercom From: Castillo, Jaime - |
| 12/15/2008 | FOR | | | | | | To: Myles, Jameisha; / Subject: |
| 12/15/2008 | FOR | | | | | | Issue Request/ |
| 12/15/2008 | FOR | | | | | | 12/15/08 - 10:33 - 69332 |
| 12/15/2008 | FOR | | | | | | System updated for the following |
| 12/15/2008 | FOR | | | | | | event: User has reprojected the |
| 12/15/2008 | FOR | | | | | | step Title Claim Letter Uploaded to |
| 12/15/2008 | FOR | | | | | | NewImage to 1/5/2009. Reason: Other. |
| 12/15/2008 | FOR | | | | | | 12/15/08 - 10:33 - 69332 |
| 12/15/2008 | FOR | | | | | | this process.  Thank you.  . |
| 12/15/2008 | FOR | | | | | | Status: Active, approval not |
| 12/15/2008 | FOR | | | | | | required. |
| 12/15/2008 | FOR | | | | | | 12/15/08 - 10:33 - 69332 |
| 12/15/2008 | FOR | | | | | | lease be advised that we have |
| 12/15/2008 | FOR | | | | | | verified that the prior judgment |
| 12/15/2008 | FOR | | | | | | has been satisfied. Therefore, a |
| 12/15/2008 | FOR | | | | | | claim is not necessary. Please close |
| 12/15/2008 | FOR | | | | | | 12/15/08 - 10:33 - 69332 |
| 12/15/2008 | FOR | | | | | | System updated for the following |
| 12/15/2008 | FOR | | | | | | event: User has reprojected the |
| 12/15/2008 | FOR | | | | | | step Sent Title Claim letter to |
| 12/15/2008 | FOR | | | | | | 1/5/2009. Reason: Other. Comments: P |
| 12/15/2008 | FOR | | | | | | 12/15/08 - 10:33 - 69332 |
| 12/15/2008 | FOR | | | | | | Please close this process.  Thank |
| 12/15/2008 | FOR | | | | | | you.  . Status: Active, approval |

| 1/7/2009 | DM | | | | | T:30508 | ACTION/RESULT CD CHANGED FROM LMDC TO NOTE |
| 1/7/2009 10 | OL | | 0 | | | T:30508 | WBOYLM - 10 DAY DOC |
| 1/7/2009 | NT | PARPK | | | | T:30508 | List items received from customer and Imaged? |
| 1/7/2009 | NT | PARPK | | | | T:30508 | letter from bwr regarding short sale, financial |
| 1/7/2009 | NT | PARPK | | | | T:30508 | sheet  RFD: NA; Outstanding items for a complete |
| 1/7/2009 | NT | PARPK | | | | T:30508 | package that a 10 day letter will be sent to the |
| 1/7/2009 | NT | PARPK | | | | T:30508 | customer? purchase agreement, hud1  ; Income if |
| 1/7/2009 | NT | PARPK | | | | T:30508 | available? in loss fin; Expenses if available? in |
| 1/7/2009 | NT | PARPK | | | | T:30508 | loss fin; Total Amount of Surplus or Shortage if |
| 1/7/2009 | NT | PARPK | | | | T:30508 | available? in loss fin; Loss Mit Rep/Site File was |
| 1/7/2009 | NT | PARPK | | | | T:30508 | Assigned to? dallas 1st lien LM. |
| 1/7/2009 | FOR | | | | | | LMT BORR FIN REC ADDED |
| 1/8/2009 | FSV | | 0 | 0 | 0 | T:21396 | INSP TYPE S ORDERED;    REQ CD =1150 |
| 1/8/2009 | DM | | | | | T:21579 | O/B CALL TO A3P, STEVE PAYNE, LEFT VM, ADV NEW |
| 1/8/2009 | DM | | | | | T:21579 | NEGOTIATOR, WILL REVIEW FILE ASAP. ADV MY DIRECT |
| 1/8/2009 | DM | | | | | T:21579 | FAX #. |
| 1/8/2009 | DM | | | | | T:21579 | ACTION/RESULT CD CHANGED FROM LMDC TO BRLM |
| 1/8/2009 | NT | PPCAL | | | | T:25101 | outbound call made to advise borrower that we |
| 1/8/2009 | NT | PPCAL | | | | T:25101 | received fax but are missing some information. We |
| 1/8/2009 | NT | PPCAL | | | | T:25101 | will contact them in 5 business days to obtain |
| 1/8/2009 | NT | PPCAL | | | | T:25101 | missing info. Please refer to PAPRK note to see |
| 1/8/2009 | NT | PPCAL | | | | T:25101 | what documents we need. Fax missing docs to |
| 1/8/2009 | NT | PPCAL | | | | T:25101 | 8667094744 |
| 1/9/2009 | DM | | | | | T:21579 | OB CALL TO A3P STEVE, REALTOR, ADV RCVD FAX TO |
| 1/9/2009 | DM | | | | | T:21579 | CALL HIM, HE ADV OFFER IAO$162K, BPO WAS JUST |
| 1/9/2009 | DM | | | | | T:21579 | ORDERED NOT ON FILE YET, 2ND LIEN W/ CREDIT UNION, |
| 1/9/2009 | DM | | | | | T:21579 | ADV NEED 2ND LIEN APPROVAL AS WELL. ADV SALE DATE. |
| 1/9/2009 | DM | | | | | T:21579 | ACTION/RESULT CD CHANGED FROM BRLM TO LMDC |
| 1/12/2009 | FOR | | | | | | 01/12/09 - 08:03 - 44117 |
| 1/12/2009 | FOR | | | | | | to be completed 10 days prior to |
| 1/12/2009 | FOR | | | | | | sale  . Status: Active, approval |
| 1/12/2009 | FOR | | | | | | not required. |
| 1/12/2009 | FOR | | | | | | 01/12/09 - 08:03 - 44117 |
| 1/12/2009 | FOR | | | | | | System updated for the following |
| 1/12/2009 | FOR | | | | | | event: User has reprojected the |
| 1/12/2009 | FOR | | | | | | step Bid Calculation Completed to |
| 1/12/2009 | FOR | | | | | | 1/26/2009. Reason: Other. Comments: |
| 1/12/2009 | FOR | | | | | | 01/10/09 - 09:00 - 00007 |
| 1/12/2009 | FOR | | | | | | Status: Active, approval not |
| 1/12/2009 | FOR | | | | | | required. |

| 1/12/2009 | FOR | 12-12020-mg | | | 01/10/09 - 09:00 - 00007 Hold Ended   Due date pushed |
|-----------|-----|---|---|---|---|
| 1/12/2009 | FOR | | | | | forward from weekend or holiday to |
| 1/12/2009 | FOR | | | | | next available business day. Date |
| 1/12/2009 | FOR | | | | | moved from 1/10/2009 to 1/12/2009.. |
| 1/12/2009 | FOR | | | | | 01/10/09 - 09:00 - 00007 |
| 1/12/2009 | FOR | | | | | System updated for the following |
| 1/12/2009 | FOR | | | | | event: User has reprojected the |
| 1/12/2009 | FOR | | | | | step Bid Calculation Completed to |
| 1/12/2009 | FOR | | | | | 1/10/2009. Reason: Hold Ended. Comme |
| 1/12/2009 | FOR | | | | | 01/10/09 - 09:00 - 39168 |
| 1/12/2009 | FOR | | | | | the following event: User has ended |
| 1/12/2009 | FOR | | | | | the hold. Hold End Date: |
| 1/12/2009 | FOR | | | | | 01/10/2009. Hold type: Client Hold |
| 1/12/2009 | FOR | | | | | Request |
| 1/12/2009 | FOR | | | | | 01/10/09 - 09:00 - 39168 |
| 1/12/2009 | FOR | | | | | Intercom From: Kenneth Ugwuadu, |
| 1/12/2009 | FOR | | | | | GMAC - To: Fidelity AutoProc |
| 1/12/2009 | FOR | | | | | (Fidelity) / Subject: Hold |
| 1/12/2009 | FOR | | | | | Request/Message: System updated for |
| 1/12/2009 | FSV | | 0 | 0 | 0 | T:21396 | INSP TP S RESULTS RCVD;   ORD DT=01/08/09 |
| 1/12/2009 | NT | LMT | | | | T:25102 | workout package sent to borrower(s) |
| 1/13/2009 | FOR | | | | | 01/13/09 - 10:17 - 48695 |
| 1/13/2009 | FOR | | | | | ays, thanks |
| 1/13/2009 | FOR | | | | | 01/13/09 - 10:17 - 48695 |
| 1/13/2009 | FOR | | | | | User has completed the |
| 1/13/2009 | FOR | | | | | Postpone_Dtl data form with the |
| 1/13/2009 | FOR | | | | | following entries:  : please pp |
| 1/13/2009 | FOR | | | | | sale for 30 days, spo thanks  : 30 d |
| 1/13/2009 | FOR | | | | | 01/13/09 - 10:17 - 48695 |
| 1/13/2009 | FOR | | | | | User has updated the system for the |
| 1/13/2009 | FOR | | | | | following event: Notify Attorney of |
| 1/13/2009 | FOR | | | | | Postponement Request, completed on |
| 1/13/2009 | FOR | | | | | 1/13/2009 |
| 1/13/2009 | FOR | | | | | 01/13/09 - 17:52 - 44120 |
| 1/13/2009 | FOR | | | | | User has updated the system for the |
| 1/13/2009 | FOR | | | | | following event: Confirmed Sale Has |
| 1/13/2009 | FOR | | | | | Been Postponed, completed on |
| 1/13/2009 | FOR | | | | | 1/13/2009 |
| 1/13/2009 | FOR | | | | | 01/13/09 - 10:15 - 48695 |

| Date | Code | | | | | T-number | Description |
|---|---|---|---|---|---|---|---|
| 1/13/2009 | FOR | | | | | | Process opened 1/13/2009 by user Christine Simpson. |
| 1/13/2009 | FOR | | | | | | |
| 1/13/2009 | NT | LMT | | | | T:21579 | pp sale for 30 days. |
| 1/13/2009 | NT | LMT | | | | T:21579 | IBPO was ordered 01/07, rushed. not rcvd yet. |
| 1/16/2009 | CBR | | 0 | 00 | 1 | T:00000 | FORECLOSURE STARTED |
| 1/16/2009 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT:  150  DAYS |
| 1/20/2009 | NT | LMT | | | | T:21579 | spo update: still waiting for IBPO. |
| 1/20/2009 | D28 | | 0 | DT | 8 | | FORCED BILLING STATEMENT FROM REPORT R628 |
| 1/22/2009 | DM | | | | | T:21579 | OB CALL TO A3P, TT STEVE, ADV FCL SALE, ADV |
| 1/22/2009 | DM | | | | | T:21579 | COUNTERING @ 200K. HE ADV WILL CONTACT ME BACK. |
| 1/22/2009 | DM | | | | | T:21579 | ACTION/RESULT CD CHANGED FROM LMDC TO LMDC |
| 1/22/2009 | LMT | | | | | | LMT BPO/APPRAISAL REC ADDED |
| 2/2/2009 | DM | | | | | T:30505 | IMAGED AS WOUT, ICT-GLEE1@2863 |
| 2/2/2009 | DM | | | | | T:30505 | ACTION/RESULT CD CHANGED FROM LMDC TO NOTE |
| 2/2/2009 | NT | CMPPK | | | | T:30505 | List items received from customer and Imaged? cash |
| 2/2/2009 | NT | CMPPK | | | | T:30505 | sales contract, hud, mcaor real estate contract |
| 2/2/2009 | NT | CMPPK | | | | T:30505 | RFD: NA; Income? in loss fin; Expenses? in loss |
| 2/2/2009 | NT | CMPPK | | | | T:30505 | fin; Total Amount of Surplus or Shortage? in loss |
| 2/2/2009 | NT | CMPPK | | | | T:30505 | fin; Loss Mit Rep/Site File was Assigned to? |
| 2/2/2009 | NT | CMPPK | | | | T:30505 | Dallas-Loss Mitigations 1st Lien LM; If account in |
| 2/2/2009 | NT | CMPPK | | | | T:30505 | Foreclosure, requested Foreclosure fees and costs |
| 2/2/2009 | NT | CMPPK | | | | T:30505 | good thru date? 02/04/09. |
| 2/2/2009 | LMT | | | | | | LMT SOLUTN PURSUED  (6)    COMPLETED 02/02/09 |
| 2/2/2009 | LMT | | | | | | COMPLETE FIN PKG REC (3)    COMPLETED 02/02/09 |
| 2/2/2009 | LMT | | | | | | ASSESS FINANCL PKG  (2)    COMPLETED 02/02/09 |
| 2/2/2009 | LMT | | | | | | REFERRD TO LOSS MIT  (1)    COMPLETED 02/02/09 |
| 2/2/2009 | LMT | | | | | | APPROVED FOR LMT 02/02/09 |
| 2/2/2009 | NT | LMT | | | | T:21579 | rcvd counter iao$115k, offer to low, sent corr via |
| 2/2/2009 | NT | LMT | | | | T:21579 | fax to agent, adv offer too low, need higher |
| 2/2/2009 | NT | LMT | | | | T:21579 | offer. |
| 2/2/2009 | NT | LMT | | | | T:21579 | *note fcl sale will remain at this time, unless |
| 2/2/2009 | NT | LMT | | | | T:21579 | higer offer is rcvd.  this property is located in |
| 2/2/2009 | NT | LMT | | | | T:21579 | a redemption state and spo can still be pursued* |
| 2/3/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 143 MODEL EI90S |
| 2/3/2009 | FOR | | | | | | 02/03/09 - 13:28 - 47610 |
| 2/3/2009 | FOR | | | | | | Fees and costs response:  Good |
| 2/3/2009 | FOR | | | | | | Through:2/3/2009 Fees: 950.00 |
| 2/3/2009 | FOR | | | | | | Costs: 1351.72 Comment: |
| 2/3/2009 | FOR | | | | | | 02/03/09 - 13:28 - 47610 |
| 2/3/2009 | FOR | | | | | | rocesses. |

| 2/3/2009 | FOR | | | | | | hoo.com From: amber giovanniello, |
| 2/3/2009 13 | FOR | | | | | | |
| 2/3/2009 | FOR | | | | | | GMAC - To: Evangeline Concon (GMAC) |
| 2/3/2009 | FOR | | | | | | / Message: Fees and costs have been |
| 2/3/2009 | FOR | | | | | | submitted for all of the requested p |
| 2/3/2009 | FOR | | | | | | 02/03/09 - 13:28 - 47610 |
| 2/3/2009 | FOR | | | | | | A fees and costs request has been |
| 2/3/2009 | FOR | | | | | | completed for this loan by amber |
| 2/3/2009 | FOR | | | | | | giovanniello |
| 2/3/2009 | FOR | | | | | | 02/02/09 - 18:23 - 65621 |
| 2/3/2009 | FOR | | | | | | A fees and costs request has been |
| 2/3/2009 | FOR | | | | | | entered for this loan by Evangeline |
| 2/3/2009 | FOR | | | | | | Concon, good through 2/3/2009 |
| 2/3/2009 | DM | | | | | T:21579 | OB CALL TO A3P, TT STEVE, ADV SALE STILL VALID, |
| 2/3/2009 | DM | | | | | T:21579 | OFFER TOO LOW BASED ON VALUE, ADV TO SEND ME A |
| 2/3/2009 | DM | | | | | T:21579 | HIGHER OFFER OR FULL PAYOFF, WE CAN REVIEW FOR A |
| 2/3/2009 | DM | | | | | T:21579 | PP OF SALE, OTHERWISE, EDU ON REDEMPTION AND AL |
| 2/3/2009 | DM | | | | | T:21579 | REQUIREMENTS, HE UNDERSTOOD. |
| 2/3/2009 | DM | | | | | T:21579 | ACTION/RESULT CD CHANGED FROM NOTE TO LMDC |
| 2/3/2009 | NT | CPCAL | | | | T:25101 | outbound call made to advise borrower that |
| 2/3/2009 | NT | CPCAL | | | | T:25101 | complete workout package received and that we will |
| 2/3/2009 | NT | CPCAL | | | | T:25101 | contact them. |
| 2/4/2009 | BKR | | | | | | UPDATE BY INTERFACE |
| 2/4/2009 | DM | | | | | T:21579 | OB CALL TO A3P, TT STEVE, ADV I AM UNABLE TO |
| 2/4/2009 | DM | | | | | T:21579 | PROCEED WITH SPO, AS BORROWER FILE CHAPTER 7 |
| 2/4/2009 | DM | | | | | T:21579 | YESTERDAY, HE UNDERSTOOD, ADV TO CALL IN AND SPEAK |
| 2/4/2009 | DM | | | | | T:21579 | WITH THE BK DEPARTMENT TO ASSIST AT THIS POINT, |
| 2/4/2009 | DM | | | | | T:21579 | BORROWER IS ACTIVE. |
| 2/4/2009 | DM | | | | | T:21579 | ACTION/RESULT CD CHANGED FROM LMDC TO LMDC |
| 2/4/2009 | DM | | | | | T:30741 | RECEIVED CASH SALES CONTRACT, HUD, MCAOR REAL |
| 2/4/2009 | DM | | | | | T:30741 | ESTATE CONTRACT,FORWARD TO REP.C.SIMPSON..HW |
| 2/4/2009 | DM | | | | | T:30741 | ACTION/RESULT CD CHANGED FROM LMDC TO LMDC |
| 2/4/2009 | LMT | | | | | | FILE CLOSED        (7)   COMPLETED 02/04/09 |
| 2/4/2009 | NT | LMT | | | | T:21579 | rcvd response from attny's they advised that their |
| 2/4/2009 | NT | LMT | | | | T:21579 | foreclosure is closed because borrower filed |
| 2/4/2009 | NT | LMT | | | | T:21579 | chapter 7 Bk. adv okay, removing LM alert, as I am |
| 2/4/2009 | NT | LMT | | | | T:21579 | unable to move forward due to active BK. |
| 2/4/2009 | NT | LMT | | | | T:21579 | sent email to fcl attny's, file has already been |
| 2/4/2009 | NT | LMT | | | | T:21579 | pp 2 times, need to know if pp of sale is okay. |
| 2/4/2009 | NT | LMT | | | | T:21579 | waiting for response. |

| 5/22/2009 | FOR | | | | | s) Foreclose in The Bank of New |
|-----------|-----|--|--|--|--|--------------------------------|
| 5/22/2009₁₄ | FOR | | | | | York Mellon Trust Company, National |
| 5/22/2009 | FOR | | | | | Association fka The Bank of New |
| 5/22/2009 | FOR | | | | | York Trust Company, N.A. as successo |
| 5/22/2009 | FOR | | | | | 05/22/09 - 15:33 - 60575 |
| 5/22/2009 | FOR | | | | | System updated for the following |
| 5/22/2009 | FOR | | | | | event: User has ended the Issue |
| 5/22/2009 | FOR | | | | | associated with this loan. Issue |
| 5/22/2009 | FOR | | | | | Type: Action in the Name of. Comment |
| 5/22/2009 | FOR | | | | | 05/22/09 - 09:24 - 00007 |
| 5/22/2009 | FOR | | | | | Process opened 5/22/2009 by user |
| 5/22/2009 | FOR | | | | | Fidelity AutoProc. |
| 5/22/2009 | FOR | | | | | 05/22/09 - 11:34 - 00007 |
| 5/22/2009 | FOR | | | | | User has updated the system for the |
| 5/22/2009 | FOR | | | | | following event: File Referred To |
| 5/22/2009 | FOR | | | | | Attorney, completed on 5/22/2009 |
| 5/22/2009 | NT | FSV | | | T:15689 | Loan on DNR report. Per loan audit inspections |
| 5/22/2009 | NT | FSV | | | T:15689 | need to be done with no contact.   Coded as |
| 5/22/2009 | NT | FSV | | | T:15689 | inspection type A - No Contact. |
| 5/22/2009 | NT | BKR | | | T:31572 | Bk case 09-80380 chp 7 Date filed:  02/03/2009 |
| 5/22/2009 | NT | BKR | | | T:31572 | Debtor discharged:  05/21/2009 |
| 5/22/2009 | NT | BKR | | | T:31572 | Joint debtor discharged:  05/21/2009  Not |
| 5/22/2009 | NT | BKR | | | T:31572 | Re-affirmed. Updated the CBR status. |
| 5/22/2009 | BKR | | | | | FILE CLOSED         (30)   COMPLETED 05/22/09 |
| 5/22/2009 | BKR | | | | | DISCHARGED         (5)    COMPLETED 05/21/09 |
| 5/22/2009 | BKR | | | | | FILE CLOSED         (30)  DE-ARCHIVED |
| 5/22/2009 | BKR | | | | | FINAL INVOICE PAID? (34)  DE-ARCHIVED |
| 5/22/2009 | BKR | | | | | RQST ABANDONMENT?   (7)   DE-ARCHIVED |
| 5/22/2009 | BKR | | | | | DISCHARGED         (5)    DE-ARCHIVED |
| 5/22/2009 | BKR | | | | | TNAR FILED ?        (3)   DE-ARCHIVED |
| 5/22/2009 | BKR | | | | | FINAL INVOICE PAID? (2486) DE-ARCHIVED |
| 5/22/2009 | BKR | | | | | OBTAIN HEARING RSLTS (2431) DE-ARCHIVED |
| 5/22/2009 | BKR | | | | | RELIEF GRANTED      (2468) DE-ARCHIVED |
| 5/22/2009 | BKR | | | | | HEARING ON MOTION    (2466) DE-ARCHIVED |
| 5/22/2009 | BKR | | | | | OBJECTIONS DEADLINE  (102) DE-ARCHIVED |
| 5/22/2009 | BKR | | | | | MFR FILED         (2465) DE-ARCHIVED |
| 5/22/2009 | BKR | | | | | REFERRED TO ATTY     (2400) DE-ARCHIVED |
| 5/22/2009 | BKR | | | | | DELQ POST PET PYMT  (35)  DE-ARCHIVED |
| 5/22/2009 | BKR | | | | | POC BAR DATE        (32)  DE-ARCHIVED |
| 5/22/2009 | BKR | | | | | MEETING OF CREDITORS (101)  DE-ARCHIVED |

| Date | Code | | | | | Ref | Description |
|---|---|---|---|---|---|---|---|
| 5/22/2009 | BKR | | | | | | DFLO POST PET N PMT   (2632) DE-ARCHIVED |
| 5/22/2009 | BKR | | | | | | SET UP POST PET REPMT (33)   DE-ARCHIVED |
| 5/22/2009 | BKR | | | | | | REVIEW FOR ASSET CS  (31)   DE-ARCHIVED |
| 5/22/2009 | BKR | | | | | | BAR DISCHARGE DATE  (4)   DE-ARCHIVED |
| 5/22/2009 | BKR | | | | | | FILING NOTIFICATION  (2)   DE-ARCHIVED |
| 5/22/2009 | BKR | | | | | | BANKRUPTCY FILED     (1)   DE-ARCHIVED |
| 5/26/2009 | FOR | | | | | | REFERRED TO ATTORNEY (2)    COMPLETED 05/22/09 |
| 5/26/2009 | NT | FSV | | | | T:15689 | Loan on DNR report. Per loan audit inspections |
| 5/26/2009 | NT | FSV | | | | T:15689 | need to be done with no contact.   Coded as |
| 5/26/2009 | NT | FSV | | | | T:15689 | inspection type A - No Contact. |
| 5/27/2009 | NT | FSV | | | | T:07047 | Loan on DNR report. Per loan audit inspections |
| 5/27/2009 | NT | FSV | | | | T:07047 | need to be done with no contact.   Coded as |
| 5/27/2009 | NT | FSV | | | | T:07047 | inspection type A - No Contact. |
| 5/28/2009 | NT | FSV | | | | T:07047 | Loan on DNR report. Per loan audit inspections |
| 5/28/2009 | NT | FSV | | | | T:07047 | need to be done with no contact.   Coded as |
| 5/28/2009 | NT | FSV | | | | T:07047 | inspection type A - No Contact. |
| 5/29/2009 | NT | FSV | | | | T:07047 | Loan on DNR report. Per loan audit inspections |
| 5/29/2009 | NT | FSV | | | | T:07047 | need to be done with no contact.   Coded as |
| 5/29/2009 | NT | FSV | | | | T:07047 | inspection type A - No Contact. |
| 6/1/2009 | NT | FSV | | | | T:26785 | Loan on DNR report. Per loan audit inspections |
| 6/1/2009 | NT | FSV | | | | T:26785 | need to be done with no contact.   Coded as |
| 6/1/2009 | NT | FSV | | | | T:26785 | inspection type A - No Contact. |
| 6/2/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 119 MODEL EI90S |
| 6/2/2009 | FOR | | | | | | 06/02/09 - 10:07 - 56077 |
| 6/2/2009 | FOR | | | | | | Process opened 6/2/2009 by user |
| 6/2/2009 | FOR | | | | | | Lacy Horsley. |
| 6/2/2009 | FOR | | | | | | 06/02/09 - 10:10 - 56077 |
| 6/2/2009 | FOR | | | | | | execute and send to our office |
| 6/2/2009 | FOR | | | | | | 06/02/09 - 10:10 - 56077 |
| 6/2/2009 | FOR | | | | | | User has completed the  Upload |
| 6/2/2009 | FOR | | | | | | Document data form with the |
| 6/2/2009 | FOR | | | | | | following entries:  Select File: : |
| 6/2/2009 | FOR | | | | | | SSA 06-02-09.doc  Comment: : Please |
| 6/2/2009 | FOR | | | | | | 06/02/09 - 10:10 - 56077 |
| 6/2/2009 | FOR | | | | | | User has updated the system for the |
| 6/2/2009 | FOR | | | | | | following event: Upload Document, |
| 6/2/2009 | FOR | | | | | | completed on 6/2/2009 |
| 6/2/2009 | NT | FSV | | | | T:26785 | Loan on DNR report. Per loan audit inspections |
| 6/2/2009 | NT | FSV | | | | T:26785 | need to be done with no contact.   Coded as |
| 6/2/2009 | NT | FSV | | | | T:26785 | inspection type A - No Contact. |

| Date | Type | Code | | T-Number | Description |
|---|---|---|---|---|---|
| 8/26/2009 | FOR | | | | Dedman |
| 8/26/2009 | FOR | | | | 08/26/09 - 10:11 - 87928 |
| 8/26/2009 | FOR | | | | ect: Fees and Costs Complete / |
| 8/26/2009 | FOR | | | | 08/26/09 - 10:11 - 87928 |
| 8/26/2009 | FOR | | | | Intercom Message: / Read: 8/26/2009 |
| 8/26/2009 | FOR | | | | 10:10:46 AM / From: Sargent, Kevin |
| 8/26/2009 | FOR | | | | / To: Dedman, Kimberly; / CC: / |
| 8/26/2009 | FOR | | | | Intercom Type: General Update / Subj |
| 8/26/2009 | DM | | | T:20638 | TT B1-VAI-UPSET BCZ HE WAS NOT APPRVD FOR |
| 8/26/2009 | DM | | | T:20638 | OBAMA-STTS THAT HE IS QUALIFIED AND WANTS TO TT |
| 8/26/2009 | DM | | | T:20638 | SOMEONE IN AUTHORITY THT CAN GIVE HIM ANS-ADV |
| 8/26/2009 | DM | | | T:20638 | W/SUB FOR CONTACT-ADV OF 24-48HR TAT-ADV FCL/FCL |
| 8/26/2009 | DM | | | T:20638 | SLDT/NJMETCALF8746867 |
| 8/26/2009 | DM | | | T:20638 | ACTION/RESULT CD CHANGED FROM LMDC TO LMDC |
| 8/26/2009 | NT | MODSH | | T:24495 | DISCHARGE CHP7 BK on file |
| 8/26/2009 | NT | MOD | | T:26879 | Fees and costs are $1830.15 good thru 9/26/09. |
| 8/26/2009 | NT | MOD | | T:26879 | kdedman 2221 |
| 8/26/2009 | NT | MOD | | T:26879 | Postponed foreclosure until 9/26/09.  Ordered new |
| 8/26/2009 | NT | MOD | | T:26879 | fees and costs. kdedman 2221 |
| 8/26/2009 | NT | MOD | | T:26879 | HMP mod denied.  Will review for Non-Hmp. kdedman |
| 8/26/2009 | NT | MOD | | T:26879 | 2221 |
| 8/27/2009 | FOR | | | | JUDGMENT DATE      (602)  COMPLETED 08/27/09 |
| 8/27/2009 | NT | LMT | | T:27080 | MOD APPRVD: PM CNTRBTN OF $1,601.21 DUE 10/1/2009; |
| 8/27/2009 | NT | LMT | | T:27080 | NEW UPB $236,011.75, TTL CPPD $28,820.23 (INT |
| 8/27/2009 | NT | LMT | | T:27080 | $24,757.46 / ESC $0.00), OLD PPTD 08/08, NEW |
| 8/27/2009 | NT | LMT | | T:27080 | 10/09, OLD RATE 10.2500%, NEW RATE 5.8750%, ORGNL |
| 8/27/2009 | NT | LMT | | T:27080 | TERM 360, CRRNT TERM 269, MOD TERM 420, MAT DATE |
| 8/27/2009 | NT | LMT | | T:27080 | 10/1/2044 , OLD PI $1,971.42, NEW PI $1,325.96, |
| 8/27/2009 | NT | LMT | | T:27080 | OLD PITI $2,266.46, NEW PITI $1,601.49 INC RATIO |
| 8/27/2009 | NT | LMT | | T:27080 | 0.00% WITH SRPLS OF $0.00; RFD: Curtailment of |
| 8/27/2009 | NT | LMT | | T:27080 | Income- SUBMITTED BY: Renee Carpenter APPROVED BY: |
| 8/27/2009 | NT | LMT | | T:27080 | Kimberly Dedman |
| 8/27/2009 | NT | STOP | | T:26879 | Permanent mod approved. $1601.21 along with docs |
| 8/27/2009 | NT | STOP | | T:26879 | due back by 10/1/09. Apply funds to 4N and open |
| 8/27/2009 | NT | STOP | | T:26879 | cit 840. Forward signed docs to waterloo loss mit. |
| 8/27/2009 | NT | STOP | | T:26879 | ***NOTE TO CLOSER***5.875% rate will remain fixed. |
| 8/27/2009 | NT | STOP | | T:26879 | New p&i pmt will be $1601.49. New payments wil |
| 8/27/2009 | NT | STOP | | T:26879 | start 11/01/09. Record permanent modification |
| 8/27/2009 | NT | STOP | | T:26879 | document. Waive all late charges and inspection |
| 8/27/2009 | NT | STOP | | T:26879 | fees when PM executed.  RFD: Curtailment of |

| Date | Type | | | T: | Description |
|---|---|---|---|---|---|
| 8/31/2009 | DM | | | T:31405 | ACTION/RESULT CD CHANGED FROM LMDC TO LMDC |
| 8/31/2009 | OL | | 0 | T:980 | YCUS - RELEASE OF INFO COVER LTR & AU |
| 8/31/2009 | NT | INQ | | T:31405 | B1 cld re: Letter mailed to customer. |
| 8/31/2009 | NT | INQ | | T:31405 | Letter: 2:68 |
| 9/2/2009 | DM | | | T:02804 | TTB1,VI,XFER TO FCL./RECOVERY |
| 9/2/2009 | DM | | | T:02804 | ACTION/RESULT CD CHANGED FROM OAAI TO BRTR |
| 9/2/2009 | DM | | | T:13030 | CALL XFD |
| 9/2/2009 | DM | | | T:13030 | ACTION/RESULT CD CHANGED FROM OAAI TO OAAI |
| 9/2/2009 | DM | | | T:13030 | A WKOUT PKG,ADV RUN CIT FOR ASSIST,ADV TAT,BR |
| 9/2/2009 | DM | | | T:13030 | DECLINED,ADV FOLLOW UP....SWUDU X6258 |
| 9/2/2009 | DM | | | T:13030 | ACTION/RESULT CD CHANGED FROM OAAI TO OAAI |
| 9/2/2009 | DM | | | T:13030 | BR CLD,VAI,ADV PENDING ESCROW CHANGE,ADV LOSS MIT |
| 9/2/2009 | DM | | | T:13030 | A/C,ADV BREADCH EXPIRED,ADV F/C STATUS,ADV SALE |
| 9/2/2009 | DM | | | T:13030 | DATE,ADV DISCH CHP 7 BK A/C,ADV CRTFD FUNDS,ADV |
| 9/2/2009 | DM | | | T:13030 | PRIOR BK A/C,ADV MOD PENDING,BR WANTED MOD UPDATE, |
| 9/2/2009 | DM | | | T:13030 | ADV MOD WAS APPV'D AND GAVE TERMS,ADV FOLLOW UP ON |
| 9/2/2009 | DM | | | T:13030 | A/C,ADV BR NO FAX BEEN RCVD BTWN 8/21 &29/09 FOR |
| 9/2/2009 | DM | | | T:13030 | ACTION/RESULT CD CHANGED FROM LMDC TO OAAI |
| 9/3/2009 | FOR | | | | JUDGMENT DATE       (602)  COMPLETED 09/03/09 |
| 9/3/2009 | FOR | | | | JUDGMENT DATE       (602)  UNCOMPLETED |
| 9/4/2009 | DM | | | T:15951 | ..CONTINUED.......ADV TO MAKE THE PMT AS PER |
| 9/4/2009 | DM | | | T:15951 | PLAN,HE DENIED AND TOLD FIRST WE HAVE TO GIVE AN |
| 9/4/2009 | DM | | | T:15951 | UPDATE ON THE DOCS WHICH HE SENT REQUESTING |
| 9/4/2009 | DM | | | T:15951 | LOWERIN PMTS..E-MAILED SUP FOR FOLLOW UP AT HIS |
| 9/4/2009 | DM | | | T:15951 | CELL # 2563099850...RARATNAM |
| 9/4/2009 | DM | | | T:15951 | ACTION/RESULT CD CHANGED FROM LMDC TO LMDC |
| 9/4/2009 | DM | | | T:15951 | B1 CALLED IN REGARDING THE LOAN MOD DOCS HE HAS |
| 9/4/2009 | DM | | | T:15951 | FAXED IN TO LOWER THE PMTS,WANTED TO KNOW ON THE |
| 9/4/2009 | DM | | | T:15951 | STATUS,ADV MOD WAS APPROVED AND TRIED TO |
| 9/4/2009 | DM | | | T:15951 | EXPLAIN,HE WON'T BE RECIEVING ANY DOCS ABT |
| 9/4/2009 | DM | | | T:15951 | THE LOAN MOD,HE WILL BE RECIEVING A LETTER |
| 9/4/2009 | DM | | | T:15951 | ABT THE MOD AND FUTURE PMT,BUT HE NEVER AGREED |
| 9/4/2009 | DM | | | T:15951 | ACTION/RESULT CD CHANGED FROM BRUN TO LMDC |
| 9/4/2009 | DM | | | T:11715 | TT B1 VAI; O/O ACCT STATUS: B1 CI ON STATUS PF PKG |
| 9/4/2009 | DM | | | T:11715 | HE WAS SUPPOSED TO RCV. ADV OF EMAI TO NEGO . XF |
| 9/4/2009 | DM | | | T:11715 | TO MOD |
| 9/4/2009 | DM | | | T:11715 | ACTION/RESULT CD CHANGED FROM BRTR TO BRUN |
| 9/4/2009 | DM | | | T:22915 | TT B1, VI MAILING PHONE/OCCP XREF TO LMDEPT! |
| 9/4/2009 | DM | | | T:22915 | ACTION/RESULT CD CHANGED FROM BRTR TO BRTR |
| 9/10/2009 | DM | | | T:10365 | A3P CI AND VERIFICATION COMPLETE.. WANTED TO KNOW |

| Date | Type | | | | Code | Description |
|---|---|---|---|---|---|---|
| 9/10/2009 | DM | | | | T:10365 | WHEN THE DOCS WOULD BE RECEIVED..INFMND THAT ONCE |
| 9/10/2009 | DM | | | | T:10365 | MOD HAS BEEN APPROVED THEN THEY COULD EXPECT |
| 9/10/2009 | DM | | | | T:10365 | THE DOCS...A3P ACKND...CAROLYN |
| 9/10/2009 | DM | | | | T:10365 | ACTION/RESULT CD CHANGED FROM BRTR TO LMDC |
| 9/10/2009 | DM | | | | T:23489 | TT A3P PAMELA JACKSON, VAI, ADV OF DELQ TAD, F/C |
| 9/10/2009 | DM | | | | T:23489 | SALE DATE,09/29 LN MOD PENDING, F/B PLAN PENDING |
| 9/10/2009 | DM | | | | T:23489 | TRNS TO MOD DEPT |
| 9/10/2009 | DM | | | | T:23489 | ACTION/RESULT CD CHANGED FROM LMDC TO BRTR |
| 9/11/2009 | CBR | 0 | 00 | 1 | T:00000 | CR BUR RPT STATUS=N;EXPIRE DT = 10/29/09 |
| 9/14/2009 | DM | | | | T:13274 | TT B1 VIA ADV LIEN IN FCL,AND DATE, ADV WHY IT WAS |
| 9/14/2009 | DM | | | | T:13274 | NOT APPROVED FOR HMP, ADV TO F/U TOMORROW FORM |
| 9/14/2009 | DM | | | | T:13274 | MORE DETAILS ON ACCT BJAGGERS13274 |
| 9/14/2009 | DM | | | | T:13274 | ACTION/RESULT CD CHANGED FROM LMDC TO OAAI |
| 9/15/2009 | FSV | 0 | 00 | 1 | T:00000 | INSP TP A RESULTS RCVD; ORD DT=08/26/09 |
| 9/16/2009 | FOR | | | | | JUDGMENT DATE    (602) COMPLETED 09/16/09 |
| 9/16/2009 | FOR | | | | | JUDGMENT DATE    (602) UNCOMPLETED |
| 9/21/2009 | D28 | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 9/23/2009 | FOR | | | | | 09/23/09 - 08:19 - 39123 |
| 9/23/2009 | FOR | | | | | Process opened 9/23/2009 by user |
| 9/23/2009 | FOR | | | | | Jessica Hill. |
| 9/23/2009 | FOR | | | | | 09/23/09 - 08:19 - 39123 |
| 9/23/2009 | FOR | | | | | User has updated the system for the |
| 9/23/2009 | FOR | | | | | following event: Attorney Notified |
| 9/23/2009 | FOR | | | | | to Close and Bill, completed on |
| 9/23/2009 | FOR | | | | | 9/23/2009 |
| 9/23/2009 | DM | | | | T:31768 | TT A3P, PAMELA JACKSON VI, 3P ASKING STATUS OF |
| 9/23/2009 | DM | | | | T:31768 | MOD REVIEW, DNR ACC, ADV ALLOW TIME FOR DOCS TO BE |
| 9/23/2009 | DM | | | | T:31768 | SENT, ADV FCL WAS CLOSED OUT ON LPS AND TO F/U |
| 9/23/2009 | DM | | | | T:31768 | WITH ATTNY |
| 9/23/2009 | DM | | | | T:31768 | ACTION/RESULT CD CHANGED FROM OAAI TO OAAI |
| 9/23/2009 | DM | | | | T:02202 | TT A3P PAMELA JACKSON VI; DNR/FCL - MOD PENDING - |
| 9/23/2009 | DM | | | | T:02202 | XFR    KGREEN2494 |
| 9/23/2009 | DM | | | | T:02202 | ACTION/RESULT CD CHANGED FROM OAAI TO OAAI |
| 9/25/2009 | FSV | 0 | 00 | 1 | T:00000 | INSP TYPE A ORDERED;    REQ CD =AUTO DELQ |
| 10/1/2009 | FSV | 0 | 00 | 1 | T:00000 | INSP TYPE R ORDERED;    REQ CD =1150 |
| 10/2/2009 | MFR | 0 | 00 | 0 | | MERS NOTIFIED FRCLSR REINSTATED  09/23/09 |
| 10/2/2009 | FOR | | | | | FILE CLOSED    (1000) COMPLETED 09/23/09 |
| 10/5/2009 | LMT | | | | | LMT BPO/APPRAISAL REC ADDED |
| 10/5/2009 | FSV | 0 | 0 | 0 | T:04895 | INSP TP R RESULTS RCVD;  ORD DT=10/01/09 |
| 10/6/2009 | ARC | | | | | AUTO RESET STOP CODE 2 = 1 |

| Date | Code | | | | | | Description |
|---|---|---|---|---|---|---|---|
| 2/2/2010 | DM | | | | | T:00000 | EARLY IND: SCORE 358 MODEL EI90S |
| 2/9/2010 | FSV | | 0 | | | P:0050 | INSP TP A RESULTS RCVD;  ORD DT=02/01/10 |
| 2/17/2010 | LMT | | | | | | FILE CLOSED        (7)    COMPLETED 02/17/10 |
| 2/17/2010 | LMT | | | | | | LOSS MIT DENIED OTHER |
| 2/19/2010 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 2/22/2010 | CIT | FCL | | | | T:31579 | 020 DONE 02/22/10 BY TLR 31579 |
| 2/22/2010 | CIT | FCL | | | | T:31579 | TSK TYP 846-FORECLOSURE EXC |
| 2/22/2010 | CIT | FCL | | | | T:31579 | 020 DMS Review Completed |
| 2/22/2010 | CIT | FCL | | | | T:31579 | 020 Open CIT#846 DMS Review Completed, does not |
| 2/22/2010 | CIT | FCL | | | | T:31579 | require Investor Approval or Action in the |
| 2/22/2010 | CIT | FCL | | | | T:31579 | Name of |
| 2/23/2010 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT:  180+ DAYS |
| 2/25/2010 | FOR | | | | | | FORECLOSURE APPROVAL (1)    COMPLETED 02/25/10 |
| 2/25/2010 | NT | FCL | | | | T:25101 | Foreclosure Referral Review Completed |
| 2/25/2010 | NT | FCL | | | | T:25101 | and Management Approved |
| 2/25/2010 | FOR | | | | | | APPROVED FOR FCL 02/25/10 |
| 2/27/2010 | FOR | | | | | | 02/26/10 - 15:02 - 00007 |
| 2/27/2010 | FOR | | | | | | User has updated the system for the |
| 2/27/2010 | FOR | | | | | | following event: File Referred To |
| 2/27/2010 | FOR | | | | | | Attorney, completed on 2/26/2010 |
| 2/27/2010 | FOR | | | | | | 02/26/10 - 15:00 - 00007 |
| 2/27/2010 | FOR | | | | | | Foreclosure (NIE Id# 17147188) sent |
| 2/27/2010 | FOR | | | | | | to Sirote & Permutt, PC at |
| 2/27/2010 | FOR | | | | | | 2/26/2010 2:59:40 PM by Automated |
| 2/27/2010 | FOR | | | | | | Tasks |
| 2/27/2010 | FOR | | | | | | 02/26/10 - 15:59 - 00007 |
| 2/27/2010 | FOR | | | | | | User has updated the system for the |
| 2/27/2010 | FOR | | | | | | following event: File Received By |
| 2/27/2010 | FOR | | | | | | Attorney, completed on 2/26/2010 |
| 2/27/2010 | FOR | | | | | | 02/26/10 - 15:56 - 00007 |
| 2/27/2010 | FOR | | | | | | Foreclosure (NIE Id# 17147188) |
| 2/27/2010 | FOR | | | | | | picked up by firm Sirote & Permutt, |
| 2/27/2010 | FOR | | | | | | PC at 2/26/2010 3:56:05 PM by Net |
| 2/27/2010 | FOR | | | | | | Director |
| 2/27/2010 | FOR | | | | | | REFERRED TO ATTORNEY (2)    COMPLETED 02/26/10 |
| 2/27/2010 | FOR | | | | | | TASK:0602-FCL-CHANGD FUPDT  03/15/10 |
| 2/27/2010 | FOR | | | | | | 02/26/10 - 11:18 - 00007 |
| 2/27/2010 | FOR | | | | | | Process opened 2/26/2010 by user |
| 2/27/2010 | FOR | | | | | | Fidelity AutoProc. |
| 3/2/2010 | DM | | | | | T:00000 | EARLY IND: SCORE 187 MODEL EI90S |

| 5/20/2010 | NT | LMT | | | | T:26879 | of 80.00 |
| 5/21/2010 | NT | INVDL | | | | T:26879 | Mod'fication Delegated by Investor |
| 5/24/2010 | FOR | | | | | | 05/24/10 - 15:17 - 11039 |
| 5/24/2010 | FOR | | | | | | fiel closed per request due to loan |
| 5/24/2010 | FOR | | | | | | mod  amount billed $2389.46  thank |
| 5/24/2010 | FOR | | | | | | you |
| 5/24/2010 | FOR | | | | | | 05/24/10 - 14:17 - 87928 |
| 5/24/2010 | FOR | | | | | | User has updated the system for the |
| 5/24/2010 | FOR | | | | | | following event: Attorney Notified |
| 5/24/2010 | FOR | | | | | | to Close and Bill, completed on |
| 5/24/2010 | FOR | | | | | | 5/24/2010 |
| 5/24/2010 | FOR | | | | | | 05/24/10 - 14:17 - 87928 |
| 5/24/2010 | FOR | | | | | | Process opened 5/24/2010 by user |
| 5/24/2010 | FOR | | | | | | Kimberly Dedman. |
| 5/24/2010 | FOR | | | | | | 05/24/10 - 15:00 - 11039 |
| 5/24/2010 | FOR | | | | | | User has updated the system for the |
| 5/24/2010 | FOR | | | | | | following event: Attorney Confirmed |
| 5/24/2010 | FOR | | | | | | File Closed, completed on 5/24/2010 |
| 5/24/2010 | LMT | | | | | | ASSESS FINANCL PKG   (2)     COMPLETED 05/24/10 |
| 5/24/2010 | DM | | | | | T:01634 | PAMELA JACKSON CI, VI, ADV APPROVED LOAN, AMT AND |
| 5/24/2010 | DM | | | | | T:01634 | DD,CLLD ABT MOD, RECAP |
| 5/24/2010 | DM | | | | | T:01634 | ACTION/RESULT CD CHANGED FROM OAAI TO OAAI |
| 5/24/2010 | NT | FIXDD | | | | T:26879 | fa fixed rate - dnr |
| 5/24/2010 | NT | STOP | | | | T:26879 | lmt2-1 |
| 5/24/2010 | NT | STOP | | | | T:26879 | Permanent mod approved. $1785 along with docs due |
| 5/24/2010 | NT | STOP | | | | T:26879 | back by 7/1/10. Apply funds to 4N and open cit |
| 5/24/2010 | NT | STOP | | | | T:26879 | 840. Forward signed docs to waterloo loss mit. |
| 5/24/2010 | NT | STOP | | | | T:26879 | Please spread escrow shortage over 60 |
| 5/24/2010 | NT | STOP | | | | T:26879 | months***NOTE TO CLOSER***5.75% Rate will remain |
| 5/24/2010 | NT | STOP | | | | T:26879 | fixed. New pmt will be $1786.52. New payments will |
| 5/24/2010 | NT | STOP | | | | T:26879 | start 8/01/10. Waive all late charges when PM |
| 5/24/2010 | NT | STOP | | | | T:26879 | executed. RFD: Unemployment. KDedman 2221 |
| 5/24/2010 | NT | CUMOD | | | | T:26879 | Non-HMP Permanent Modification Justification |
| 5/24/2010 | NT | CUMOD | | | | T:26879 | Permanent mod approved. $1785 along with docs due |
| 5/24/2010 | NT | CUMOD | | | | T:26879 | back by 7/1/10. Apply funds to 4N and open cit |
| 5/24/2010 | NT | CUMOD | | | | T:26879 | 840. Forward signed docs to waterloo loss mit. |
| 5/24/2010 | NT | CUMOD | | | | T:26879 | Please spread escrow shortage over 60 |
| 5/24/2010 | NT | CUMOD | | | | T:26879 | months***NOTE TO CLOSER***5.75% Rate will remain |
| 5/24/2010 | NT | CUMOD | | | | T:26879 | fixed. New pmt will be $1786.52. New payments will |
| 5/24/2010 | NT | CUMOD | | | | T:26879 | start 8/01/10. Waive all late charges when PM |

| Date | | | | | | | |
|------|------|-------|---|---|---|---------|---|
| 5/24/2010 | NT | CLMOD | | | | T:26879 | executed. RFD: Unemployment. KDedman 2221 |
| 5/24/2010 | NT | LMT | | | | T:26879 | NON-HMP Permanent Modification Justification |
| 5/24/2010 | NT | LMT | | | | T:26879 | Permanent mod approved. $1785 along with docs due |
| 5/24/2010 | NT | LMT | | | | T:26879 | back by 7/1/10. Apply funds to 4N and open cit |
| 5/24/2010 | NT | LMT | | | | T:26879 | 840. Forward signed docs to waterloo loss mit. |
| 5/24/2010 | NT | LMT | | | | T:26879 | Please spread escrow shortage over 60 |
| 5/24/2010 | NT | LMT | | | | T:26879 | months***NOTE TO CLOSER***5.75% Rate will remain |
| 5/24/2010 | NT | LMT | | | | T:26879 | fixed. New pmt will be $1786.52. New payments will |
| 5/24/2010 | NT | LMT | | | | T:26879 | start 8/01/10. Waive all late charges when PM |
| 5/24/2010 | NT | LMT | | | | T:26879 | executed. RFD: Unemployment. KDedman 2221 |
| 5/24/2010 | NT | LMT | | | | T:27080 | MOD APPRVD: PM CNTRBTN OF $1,785.00 DUE 7/1/2010; |
| 5/24/2010 | NT | LMT | | | | T:27080 | NEW UPB $207,191.52, TTL CPPD $0.00 (INT $0.00 / |
| 5/24/2010 | NT | LMT | | | | T:27080 | ESC $0.00), OLD PPTD 08/08, NEW 07/10, OLD RATE |
| 5/24/2010 | NT | LMT | | | | T:27080 | 10.2500%, NEW RATE 5.7500%, ORGNL TERM 360, CRRNT |
| 5/24/2010 | NT | LMT | | | | T:27080 | TERM 269, MOD TERM 245, MAT DATE 12/1/2030 , OLD |
| 5/24/2010 | NT | LMT | | | | T:27080 | PI $1,971.42, NEW PI $1,438.84, OLD PITI |
| 5/24/2010 | NT | LMT | | | | T:27080 | $2,266.46, NEW PITI $1,786.52 INC RATIO 0.00% WITH |
| 5/24/2010 | NT | LMT | | | | T:27080 | SRPLS OF $0.00; RFD: Unemployment- SUBMITTED BY: |
| 5/24/2010 | NT | LMT | | | | T:27080 | Kimberly Dedman APPROVED BY: Kimberly Dedman |
| 5/24/2010 | LMT | | | | | | COMPLETE FIN PKG REC (3)    COMPLETED 05/24/10 |
| 5/24/2010 | LMT | | | | | | MODIFCATN APPRVD INV (1232) COMPLETED 05/24/10 |
| 5/24/2010 | LMT | | | | | | MODIFCATN RECMMD INV (1231) COMPLETED 05/24/10 |
| 5/24/2010 | LMT | | | | | | LOAN MOD STARTED    (1001) COMPLETED 05/24/10 |
| 5/24/2010 | NT | LMT | | | | T:26879 | nhmp delegated - no 1/2 rate rule |
| 5/24/2010 | NT | FCSTP | | | | T:26879 | closed out fcl process - |
| 5/24/2010 | CIT | COL19 | | | | T:26879 | 029 DONE 05/24/10 BY TLR 26879 |
| 5/24/2010 | CIT | COL19 | | | | T:26879 | TSK TYP 711-NON HMP MOD REV |
| 5/24/2010 | NT | INVDL | | | | T:13304 | Modification Delegated by Investor |
| 5/25/2010 | NT | STOP | | | | T:03136 | Mod docs due by 7/1/2010 with a down payment of |
| 5/25/2010 | NT | STOP | | | | T:03136 | $1,785.00, $0.00 in unapplied bucket 4N. |
| 5/25/2010 | FSV | | 0 | 0 | 1 | T:03136 | DELINQ INSP HOLD PLACED; REL DT =07/25/10 |
| 5/25/2010 | LMT | | | | | | TASK:1031-LMT-CHANGD FUPDT 07/01/10 |
| 5/25/2010 | LMT | | | | | | SEND EXEC DOCS    (1040) COMPLETED 05/25/10 |
| 5/25/2010 | NT | FCLRE | | | | T:11349 | <B> Foreclosure Review Process: |
| 5/25/2010 | NT | FCLRE | | | | T:11349 | Per LPS, fcl was closed & billed on 5/24/10 |
| 5/25/2010 | NT | FCLRE | | | | T:11349 | cfarrar |
| 5/25/2010 | FOR | | | | | | FILE CLOSED    (1000) COMPLETED 05/24/10 |
| 5/26/2010 | NT | FCLRE | | | | T:13274 | <B>Foreclosure Review Process |
| 5/26/2010 | NT | FCLRE | | | | T:13274 | close and bill confirmed in nt by attrny on |
| 5/26/2010 | NT | FCLRE | | | | T:13274 | 05/24/10 bjaggers2801 |

| Date | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5/27/2010 | NT | MERGE | | | | T:10588 | mail merge docs located in 05-26-10 file |
| 5/27/2010 | DM | | | | | T:31614 | TT ANNETTE PHILPOT, ADV NOT AUTH, SENT AUTH. TT |
| 5/27/2010 | DM | | | | | T:31614 | B1, VIA. ADV OF TAD, BREACH. WANTED ACCT UPDATE, |
| 5/27/2010 | DM | | | | | T:31614 | ADV MOD APPROVED ON 5/24, ADV DOCS SENT 5/25. B SD |
| 5/27/2010 | DM | | | | | T:31614 | RCVD LTR 5/19, WANTED TO KNOW WHAT THIS WAS, ADV |
| 5/27/2010 | DM | | | | | T:31614 | HMP DENIAL. GAVE AUTH TO TT ANNETTE, TT ANNETTE, |
| 5/27/2010 | DM | | | | | T:31614 | WANTED TO KNOW NEW MOD TERMS, ADV. |
| 5/27/2010 | DM | | | | | T:31614 | ACTION/RESULT CD CHANGED FROM OAAI TO OAAI |
| 5/27/2010 | OL | | 0 | 68 | 2 | | WDOYCUS - RELEASE OF INFO COVER LTR & AU |
| 5/27/2010 | NT | INQ | | | | T:31614 | B1 cld re: Letter mailed to customer. |
| 5/27/2010 | NT | INQ | | | | T:31614 | Letter: 2:68 |
| 5/31/2010 | FSV | | 0 | 00 | 1 | T:00000 | INSP TP A RESULTS RCVD;  ORD DT=05/19/10 |
| 6/1/2010 | NT | FEDEX | | | | T:10588 | Docs sent on 05-28-10 via Fed Ex. Outbound |
| 6/1/2010 | NT | FEDEX | | | | T:10588 | #446189959669 Return # 446189959670 |
| 6/2/2010 | DM | | | | | T:00000 | EARLY IND: SCORE 140 MODEL EI90S |
| 6/18/2010 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT:  180+ DAYS |
| 6/21/2010 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 7/2/2010 | DM | | | | | T:00000 | EARLY IND: SCORE 140 MODEL EI90S |
| 7/9/2010 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT:  180+ DAYS |
| 7/20/2010 | D28 | | 0 | DT | 8 | | FORCED BILLING STATEMENT FROM REPORT R628 |
| 7/26/2010 | FSV | | 0 | 00 | 1 | T:00000 | INSP TYPE A ORDERED;   REQ CD =AUTO DELQ |
| 7/26/2010 | FSV | | 0 | 00 | 1 | T:00000 | DELINQ INSP HOLD RELEASED |
| 8/2/2010 | NT | NODOC | | | | T:03248 | Traditonal Mod denied customer did not return |
| 8/2/2010 | NT | NODOC | | | | T:03248 | moddocs in required time |
| 8/2/2010 | CIT | COL27 | | | | T:03248 | 030 Traditional Mod Dened customer did not return |
| 8/2/2010 | CIT | COL27 | | | | T:03248 | perm docs |
| 8/3/2010 | CIT | COL11 | | | | T:30851 | 030 Redirect CIT 822 to 31283 as the Denial |
| 8/3/2010 | CIT | COL11 | | | | T:30851 | Process is Complete |
| 8/3/2010 | LMT | | | | | | FILE CLOSED     (7)    COMPLETED 08/03/10 |
| 8/3/2010 | LMT | | | | | | LOSS MIT DENIED OTHER |
| 8/4/2010 | FSV | | 0 | 00 | 1 | T:00000 | INSP TP A RESULTS RCVD;  ORD DT=07/26/10 |
| 8/4/2010 | OL | | 0 | 24 | 5 | | WDOYLM Denial Letter w DNR no 30 Day |
| 8/4/2010 | CIT | COL09 | | | | T:01918 | 030 DONE 08/04/10 BY TLR 01918 |
| 8/4/2010 | CIT | COL09 | | | | T:01918 | TSK TYP 822-INITIATE LSMIT |
| 8/4/2010 | CIT | COL09 | | | | T:01918 | 030 CIT#822 Customer did not return executed loan |
| 8/4/2010 | CIT | COL09 | | | | T:01918 | mod/partial claim agreement. |
| 8/6/2010 | FOR | | | | | | FORECLOSURE APPROVAL (1)    COMPLETED 08/06/10 |
| 8/6/2010 | NT | FCL | | | | T:25102 | Foreclosure Referral Review Completed |
| 8/6/2010 | NT | FCL | | | | T:25102 | and Management Approved |
| 8/6/2010 | FOR | | | | | | APPROVED FOR FCL 08/06/10 |

22

| Date | | | | | Teller | Description |
|---|---|---|---|---|---|---|
| 12/16/2010 | DM | | | | T:04976 | CALLED MR CUSTOMER NOT REACHABLE. COULD NOT LEAVE |
| 12/16/2010 | DM | | | | T:04976 | MESSAGE. DWALL 2439 |
| 12/16/2010 | DM | | | | T:04976 | ACTION/RESULT CD CHANGED FROM OAAI TO BRNA |
| 12/16/2010 | NT | LMT | | | T:04976 | Escalated modification approved by supervisor with |
| 12/16/2010 | NT | LMT | | | T:04976 | same terms as original modification offered May |
| 12/16/2010 | NT | LMT | | | T:04976 | 2010 per request of foreclosure attorney. dwall |
| 12/16/2010 | NT | LMT | | | T:04976 | 2439 |
| 12/16/2010 | NT | APRVD | | | T:04976 | PM approved - specialist has PM processing |
| 12/16/2010 | NT | APRVD | | | T:04976 | authorization |
| 12/16/2010 | NT | LMT | | | T:27080 | MOD APPRVD: PM CNTRBTN OF $1,785.88 DUE 2/1/2011; |
| 12/16/2010 | NT | LMT | | | T:27080 | NEW UPB $207,191.52, TTL CPPD $0.00 (INT $0.00 / |
| 12/16/2010 | NT | LMT | | | T:27080 | ESC $0.00), OLD PPTD 08/08, NEW 02/11, OLD RATE |
| 12/16/2010 | NT | LMT | | | T:27080 | 10.2500%, NEW RATE 5.7500%, ORGNL TERM 360, CRRNT |
| 12/16/2010 | NT | LMT | | | T:27080 | TERM 269, MOD TERM 238, MAT DATE 12/1/2030 , OLD |
| 12/16/2010 | NT | LMT | | | T:27080 | PI $1,971.42, NEW PI $1,461.18, OLD PITI |
| 12/16/2010 | NT | LMT | | | T:27080 | $2,266.46, NEW PITI $1,824.24 INC RATIO 0.00% WITH |
| 12/16/2010 | NT | LMT | | | T:27080 | SRPLS OF $0.00; RFD: Unemployment- SUBMITTED BY: |
| 12/16/2010 | NT | LMT | | | T:27080 | Derek Wall APPROVED BY: Derek Wall |
| 12/16/2010 | NT | FIXDD | | | T:04976 | Fully Am'ing NO Forbearance or Forgivess (includes |
| 12/16/2010 | NT | FIXDD | | | T:04976 | steps, if applicable) with DNR verbiage included |
| 12/16/2010 | NT | FIXDD | | | T:04976 | in document |
| 12/16/2010 | NT | STOP | | | T:04976 | "Non HMP:Mod Approved Stop Note: Due Date: |
| 12/16/2010 | NT | STOP | | | T:04976 | 2/1/2011; Late charges waived: $4139.94: Down pmt |
| 12/16/2010 | NT | STOP | | | T:04976 | $1785.88: Apply funds to 4N - send Cit 840 when |
| 12/16/2010 | NT | STOP | | | T:04976 | deposit is received. Forward signed documents to |
| 12/16/2010 | NT | STOP | | | T:04976 | Waterloo Loss Mit. Spread escrow shortage over 60 |
| 12/16/2010 | NT | STOP | | | T:04976 | months if applicable. Closers: Debt Forgive: |
| 12/16/2010 | NT | STOP | | | T:04976 | $67808, Doc Code:FIXDD"   dwall 2439 |
| 12/16/2010 | NT | STOP | | | T:04976 | FIXED rate mortgage |
| 12/16/2010 | NT | STOP | | | T:04976 | Loan Amortization: Fully amortized |
| 12/16/2010 | NT | STOP | | | T:04976 | Capitalize arrearage: No: If No, Debt forgiveness |
| 12/16/2010 | NT | STOP | | | T:04976 | amount $67,808 |
| 12/16/2010 | NT | STOP | | | T:04976 | Extend Maturity Term: No |
| 12/16/2010 | NT | STOP | | | T:04976 | Reduce Interest Rate: Yes, from 10.25% to 5.75% |
| 12/16/2010 | NT | STOP | | | T:04976 | Step Rate Used: No |
| 12/16/2010 | NT | STOP | | | T:04976 | Principal Forbearance: No |
| 12/16/2010 | NT | STOP | | | T:04976 | RFD: Unemployment |
| 12/16/2010 | NT | STOP | | | T:04976 | dwall 2439 |
| 12/16/2010 | LMT | | | | | MODIFCATN APPRVD INV (1232) COMPLETED 12/16/10 |
| 12/16/2010 | CIT | COL19 | | | T:04976 | 033 DONE 12/16/10 BY TLR 04976 |

| | | | | | | Type: FC Payment Research/Dispute 2 |
|---|---|---|---|---|---|---|
| 2/10/2011 | FOR | | | | | 02/10/11 - 10:30 - 10752 |
| 2/10/2011 | FOR | | | | | ect: Issue Request / |
| 2/10/2011 | FOR | | | | | 02/10/11 - 10:30 - 10752 |
| 2/10/2011 | FOR | | | | | Intercom Message: / Read: 2/10/2011 |
| 2/10/2011 | FOR | | | | | 10:29:49 AM / From: Wilson, Robert |
| 2/10/2011 | FOR | | | | | / To: Miller, Kimberly;  / CC: / |
| 2/10/2011 | FOR | | | | | Intercom Type: General Update / Subj |
| 2/10/2011 | NT | LMT | | | | T:04976 | Postponed foreclosure sale 30 days in NewTrack to |
| 2/10/2011 | NT | LMT | | | | T:04976 | allow time for modification review. dwall 2439 |
| 2/10/2011 | NT | CMPPK | | | | T:20900 | Rcvd complete wout pkg see prev notes imaged as |
| 2/10/2011 | NT | CMPPK | | | | T:20900 | wout mhoppe5829 |
| 2/10/2011 | HMP | | | | | | FINANCIAL INFORMATION COLLECTED FOR HMP |
| 2/10/2011 | HMP | | | | | | LMT BORR FIN REC ADDED |
| 2/10/2011 | NT | CMPPK | | | | T:20900 | Fax Received  -Borrower Financial Stmt,Hardship |
| 2/10/2011 | NT | CMPPK | | | | T:20900 | letter,Hardship affidavit,4506 T,Single most |
| 2/10/2011 | NT | CMPPK | | | | T:20900 | recent signed tax returns Borr,Copies of cancelled |
| 2/10/2011 | NT | CMPPK | | | | T:20900 | checks,Proof of Social Security Borr,Recent Bank |
| 2/10/2011 | NT | CMPPK | | | | T:20900 | Stmts Borr ,Other ssi awrd ltr pay stubs bank stmt |
| 2/10/2011 | NT | CMPPK | | | | T:20900 | of non borr ,ltr from borr -mhoppe5829 |
| 2/10/2011 | DM | | | | | T:20900 | DFLT REASON 1 CHANGED TO: CURTAILMENT OF INCOME |
| 2/10/2011 | DM | | | | | T:20900 | DFLT REASON 2 CHANGED TO: EXCESSIVE OBLIGATIONS |
| 2/10/2011 | DM | | | | | T:20900 | ACTION/RESULT CD CHANGED FROM NOTE TO NOTE |
| 2/10/2011 | NT | LMT | | | | T:20693 | escalation to dallas dsg-sbehney.  Currently set |
| 2/10/2011 | NT | LMT | | | | T:20693 | for fcl sale on 2/16/11.  EM to analyst DWAll to |
| 2/10/2011 | NT | LMT | | | | T:20693 | see if will pp or allow to go to sale.  Borr was |
| 2/10/2011 | NT | LMT | | | | T:20693 | approved for mod on 5/28/10, sent mod docs on 5/28 |
| 2/10/2011 | NT | LMT | | | | T:20693 | via fed ex-deliv on 6/1 and due back by 7/1.  Not |
| 2/10/2011 | NT | LMT | | | | T:20693 | recd-mod denied 8/2/10.  Mod approved again for |
| 2/10/2011 | NT | LMT | | | | T:20693 | same terms on 12/16/10-docs sent 12/21 and deliv |
| 2/10/2011 | NT | LMT | | | | T:20693 | via fed ex on 12/23-due back by 2/1/11.  As of |
| 2/10/2011 | NT | LMT | | | | T:20693 | 2/11 docs and contrib have not been recd. |
| 2/11/2011 | CBR | | 0 | 00 | 1 | T:00000 | FORECLOSURE STARTED |
| 2/11/2011 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT:  180+ DAYS |
| 2/11/2011 | FOR | | | | | | 02/11/11 - 15:46 - 44120 |
| 2/11/2011 | FOR | | | | | | User has updated the system for the |
| 2/11/2011 | FOR | | | | | | following event: Confirmed Sale Has |
| 2/11/2011 | FOR | | | | | | Been Postponed, completed on |
| 2/11/2011 | FOR | | | | | | 2/11/2011 |
| 2/15/2011 | NT | FDODN | | | | T:15441 | Verified on DOD website that borrower(s) are not |

| Date | Type | Code | | | | T: | Description |
|---|---|---|---|---|---|---|---|
| 2/16/2011 | FOR | | | | | | costs are unknown at this time. |
| 2/16/2011₂₅ | FOR | | | | | | 02/16/11 - 09:12 - 44120 |
| 2/16/2011 | FOR | | | | | | 2011. Reason: PP sale per client. |
| 2/16/2011 | FOR | | | | | | The approximate cost to pp is $600. |
| 2/16/2011 | FOR | | | | | | Atty fees are $350. Auctioneer |
| 2/16/2011 | FOR | | | | | | $75, Title update $50, and newspaper |
| 2/16/2011 | FOR | | | | | | 02/16/11 - 09:12 - 44120 |
| 2/16/2011 | FOR | | | | | | User has updated the system for the |
| 2/16/2011 | FOR | | | | | | following event: Sale Scheduled |
| 2/16/2011 | FOR | | | | | | For. User changed date completed |
| 2/16/2011 | FOR | | | | | | from 2/16/2011 to completed on 3/23/ |
| 2/17/2011 | FSV | | 0 | 00 | 1 | T:00000 | DELINQ INSP HOLD RELEASED |
| 2/21/2011 | FOR | | | | | | 02/21/11 - 09:32 - 44120 |
| 2/21/2011 | FOR | | | | | | sale is 3/23/2011   . Status: |
| 2/21/2011 | FOR | | | | | | Active, approval not required. |
| 2/21/2011 | FOR | | | | | | 02/21/11 - 09:32 - 44120 |
| 2/21/2011 | FOR | | | | | | System updated for the following |
| 2/21/2011 | FOR | | | | | | event: User has reprojected the |
| 2/21/2011 | FOR | | | | | | step Aged Process Necessary to |
| 2/21/2011 | FOR | | | | | | 3/24/2011. Reason: Other. Comments: |
| 2/21/2011 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 2/24/2011 | FSV | | 0 | 00 | 1 | T:00000 | INSP TYPE A ORDERED;    REQ CD =SCRIPT |
| 2/24/2011 | NT | FSV | | | | T:20111 | Loan on HFN Quarterly 2501 report. Ran script to |
| 2/24/2011 | NT | FSV | | | | T:20111 | order inspection if needed |
| 3/2/2011 | DM | | | | | T:00000 | EARLY IND: SCORE 116 MODEL EI90S |
| 3/2/2011 | NT | NODOC | | | | T:03248 | Traditional Mod denied customer did not return |
| 3/2/2011 | NT | NODOC | | | | T:03248 | moddocs in required time. |
| 3/2/2011 | CIT | COL27 | | | | T:03248 | 035 Traditional Mod denied customer did not return |
| 3/2/2011 | CIT | COL27 | | | | T:03248 | mod docs in required time. |
| 3/3/2011 | DM | | | | | T:00000 | EARLY IND: SCORE 116 MODEL EI90S |
| 3/3/2011 | FSV | | 0 | 00 | 1 | T:00000 | INSP TP A RESULTS RCVD;   ORD DT=02/24/11 |
| 3/3/2011 | CIT | COL11 | | | | T:19360 | 035 Retarget cit 822 to 31283 |
| 3/3/2011 | LMT | | | | | | FILE CLOSED      (7)   COMPLETED 03/03/11 |
| 3/3/2011 | LMT | | | | | | LOSS MIT DENIED OTHER |
| 3/4/2011 | OL | | 0 | 31 | 5 | | WDOYLM - DENIAL LETTER NO FAIR DEBT |
| 3/4/2011 | CIT | COL09 | | | | T:18896 | 035 DONE 03/04/11 BY TLR 18896 |
| 3/4/2011 | CIT | COL09 | | | | T:18896 | TSK TYP 822-LSMIT DENIAL PR |
| 3/4/2011 | CIT | COL09 | | | | T:18896 | 035 Close CIT#822. Customer did not return |
| 3/4/2011 | CIT | COL09 | | | | T:18896 | executed loan mod/partial claim agreement. |
| 3/9/2011 | FOR | | | | | | 03/09/11 - 16:56 - 44120 |

| 6/1/2012 | FOR | | | | | | event: User has created a |
| 6/1/2012 26 | FOR | | | | | | Process-Level issue for this |
| 6/1/2012 | FOR | | | | | | loan.Issue Type: Action in the Name |
| 6/1/2012 | FOR | | | | | | 06/01/12 - 15:56 - 56077 |
| 6/1/2012 | FOR | | | | | | ect: Issue Request / |
| 6/1/2012 | FOR | | | | | | 06/01/12 - 15:56 - 56077 |
| 6/1/2012 | FOR | | | | | | Intercom Message: / Read: 6/1/2012 |
| 6/1/2012 | FOR | | | | | | 3:55:56 PM / From: Newton, Sterol / |
| 6/1/2012 | FOR | | | | | | To: Horsley, Lacy;  / CC:  / |
| 6/1/2012 | FOR | | | | | | Intercom Type: General Update / Subj |
| 6/1/2012 | FOR | | | | | | 06/01/12 - 13:48 - 00007 |
| 6/1/2012 | FOR | | | | | | Foreclosure (NIE Id# 20090181) sent |
| 6/1/2012 | FOR | | | | | | to Sirote & Permutt, PC at 6/1/2012 |
| 6/1/2012 | FOR | | | | | | 1:47:58 PM by Sterol Newton |
| 6/4/2012 | DM | | | | | T:00000 | EARLY IND: SCORE 109 MODEL EI90S |
| 6/5/2012 | NT | LMFLB | | | | T:19038 | Reviewed most recent denials, decision was correct |
| 6/5/2012 | NT | LMFLB | | | | T:19038 | based on review. |
| 6/7/2012 | FSV | | 0 | 00 | 1 | T:00000 | INSP TP A RESULTS RCVD;   ORD DT=05/29/12 |
| 6/8/2012 | NT | F96 | | | | T:04152 | MOVED PROPERTY PRESERVATION FEE OF $14.75 BILLED |
| 6/8/2012 | NT | F96 | | | | T:04152 | 6/7/12 TO INVESTOR RECOVERABLE AS UNABLE TO |
| 6/8/2012 | NT | F96 | | | | T:04152 | COLLECTFROM CUSTOMER DUE TO STATE STATUE |
| 6/13/2012 | FOR | | | | | | 06/13/12 - 17:00 - 44120 |
| 6/13/2012 | FOR | | | | | | o sale date.   Due date pushed |
| 6/13/2012 | FOR | | | | | | forward from weekend or holiday to |
| 6/13/2012 | FOR | | | | | | next available business day. Date |
| 6/13/2012 | FOR | | | | | | moved from 7/4/2012 to 7/5/2012.. St |
| 6/13/2012 | FOR | | | | | | 06/13/12 - 17:00 - 44120 |
| 6/13/2012 | FOR | | | | | | System updated for the following |
| 6/13/2012 | FOR | | | | | | event: User has reprojected the |
| 6/13/2012 | FOR | | | | | | step Aged Process Necessary to |
| 6/13/2012 | FOR | | | | | | 7/4/2012. Reason: Other. Comments: n |
| 6/13/2012 | FOR | | | | | | 06/13/12 - 17:00 - 44120 |
| 6/13/2012 | FOR | | | | | | atus: Active, approval not required. |
| 6/14/2012 | FOR | | | | | | 06/14/12 - 09:01 - 26856 |
| 6/14/2012 | FOR | | | | | | an Chase Bank N.A., successor by |
| 6/14/2012 | FOR | | | | | | merger to Bank One National |
| 6/14/2012 | FOR | | | | | | Association, as Trustee for RASC |
| 6/14/2012 | FOR | | | | | | 2001-KS1  . |
| 6/14/2012 | FOR | | | | | | 06/14/12 - 09:01 - 26856 |
| 6/14/2012 | FOR | | | | | | s: The Bank of New York Mellon |

## **Exhibit E**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Acct: | Name: | GWENDELL L PHILPOT | | | Sub: | Investor: 98028  Warn: 5 Lock: 1 Stop: 0 | Page: |
| SSN: | | | | | | | Refresh Date: |
| - Dates - | Paid To: 7/1/2008 | | Next Due: | Type: 8/1/2008 | Last Pmt: | 8/30/2008 | |
| - Bal - | Prin: $0.00 | | Esc: | $0.00 | | | |
| - Uncol - | LC: $0.00 | | P&I Adv: | $0.00 | Esc Sht: | $0.00 | |

**NOTES:**

| Trans Added Date | Trans Type | Area ID that Originated the Message | Document Notice Id | Document Text Id | Document Text Type Code | Add Teller | TransactionDescription |
|---|---|---|---|---|---|---|---|
| 6/22/2007 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT:  30  DAYS |
| 6/22/2007 | CBR | | 0 | 00 | 1 | T:00000 | CHANGE IN PRIMARY BORROWERS ADDR |
| 7/13/2007 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT:  30  DAYS |
| 8/10/2007 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT:  30  DAYS |
| 9/14/2007 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT:  30  DAYS |
| 10/12/2007 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT:  30  DAYS |
| 11/9/2007 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT:  30  DAYS |
| 12/14/2007 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT:  30  DAYS |
| 1/11/2008 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT:  60  DAYS |
| 2/22/2008 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT:  30  DAYS |
| 2/22/2008 | CBR | | 0 | 00 | 1 | T:00000 | CHANGE IN PRIMARY BORROWERS ADDR |
| 3/21/2008 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT:  30  DAYS |
| 4/25/2008 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT:  30  DAYS |
| 5/9/2008 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT:  30  DAYS |
| 6/6/2008 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT:  30  DAYS |
| 6/6/2008 | CBR | | 0 | 00 | 1 | T:00000 | CHANGE IN PRIMARY BORROWERS ADDR |
| 7/18/2008 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT:  30  DAYS |
| 8/8/2008 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT:  30  DAYS |
| 9/12/2008 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT:  30  DAYS |
| 10/10/2008 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT:  60  DAYS |
| 10/10/2008 | CBR | | 0 | 00 | 1 | T:00000 | CHANGE IN PRIMARY BORROWERS ADDR |
| 11/14/2008 | CBR | | 0 | 00 | 1 | T:00000 | FORECLOSURE STARTED |
| 11/14/2008 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT:  90  DAYS |
| 12/12/2008 | CBR | | 0 | 00 | 1 | T:00000 | FORECLOSURE STARTED |
| 12/12/2008 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT:  120  DAYS |
| 12/12/2008 | CBR | | 0 | 00 | 1 | T:00000 | CHANGE IN PRIMARY BORROWERS ADDR |
| 1/16/2009 | CBR | | 0 | 00 | 1 | T:00000 | FORECLOSURE STARTED |
| 1/16/2009 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT:  150  DAYS |
| 2/13/2009 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT:  180+ DAYS |

| 3/13/2009 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT: 180+ DAYS |
| 4/10/2009 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT: 180+ DAYS |
| 5/8/2009 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT: 180+ DAYS |
| 6/12/2009 | CBR | | 0 | 00 | 1 | T:00000 | FORECLOSURE STARTED |
| 6/12/2009 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT: 180+ DAYS |
| 6/12/2009 | CBR | | 0 | 00 | 1 | T:00000 | PB   DISCHARGED THRU BANKRUPTCY CH 7 |
| 7/10/2009 | CBR | | 0 | 00 | 1 | T:00000 | FORECLOSURE STARTED |
| 7/10/2009 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT: 180+ DAYS |
| 8/14/2009 | CBR | | 0 | 00 | 1 | T:00000 | CR BUR RPT STATUS=N;EXPIRE DT = 09/24/09 |
| 9/11/2009 | CBR | | 0 | 00 | 1 | T:00000 | CR BUR RPT STATUS=N;EXPIRE DT = 10/29/09 |
| 10/16/2009 | CBR | | 0 | 00 | 1 | T:00000 | CR BUR RPT STATUS=N;EXPIRE DT = 10/29/09 |
| 11/13/2009 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT: 180+ DAYS |
| 11/13/2009 | CBR | | 0 | 00 | 1 | T:00000 | CHANGE IN PRIMARY BORROWERS ADDR |
| 12/11/2009 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT: 180+ DAYS |
| 1/15/2010 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT: 180+ DAYS |
| 2/23/2010 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT: 180+ DAYS |
| 3/12/2010 | CBR | | 0 | 00 | 1 | T:00000 | FORECLOSURE STARTED |
| 3/12/2010 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT: 180+ DAYS |
| 4/9/2010 | CBR | | 0 | 00 | 1 | T:00000 | CR BUR RPT STATUS=N;EXPIRE DT = 05/27/10 |
| 5/14/2010 | CBR | | 0 | 00 | 1 | T:00000 | CR BUR RPT STATUS=N;EXPIRE DT = 05/27/10 |
| 6/18/2010 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT: 180+ DAYS |
| 7/9/2010 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT: 180+ DAYS |
| 8/13/2010 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT: 180+ DAYS |
| 9/10/2010 | CBR | | 0 | 00 | 1 | T:00000 | FORECLOSURE STARTED |
| 9/10/2010 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT: 180+ DAYS |
| 10/8/2010 | CBR | | 0 | 00 | 1 | T:00000 | FORECLOSURE STARTED |
| 10/8/2010 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT: 180+ DAYS |
| 11/12/2010 | CBR | | 0 | 00 | 1 | T:00000 | FORECLOSURE STARTED |
| 11/12/2010 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT: 180+ DAYS |
| 12/10/2010 | CBR | | 0 | 00 | 1 | T:00000 | FORECLOSURE STARTED |
| 12/10/2010 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT: 180+ DAYS |
| 1/14/2011 | CBR | | 0 | 00 | 1 | T:00000 | FORECLOSURE STARTED |
| 1/14/2011 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT: 180+ DAYS |
| 2/11/2011 | CBR | | 0 | 00 | 1 | T:00000 | FORECLOSURE STARTED |
| 2/11/2011 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT: 180+ DAYS |
| 3/11/2011 | CBR | | 0 | 00 | 1 | T:00000 | FORECLOSURE STARTED |
| 3/11/2011 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT: 180+ DAYS |
| 4/15/2011 | CBR | | 0 | 00 | 1 | T:00000 | CR BUR RPT STATUS=N;EXPIRE DT = 00/00/00 |
| 5/13/2011 | CBR | | 0 | 00 | 1 | T:00000 | CR BUR RPT STATUS=N;EXPIRE DT = 00/00/00 |
| 6/10/2011 | CBR | | 0 | 00 | 1 | T:00000 | CR BUR RPT STATUS=N;EXPIRE DT = 00/00/00 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 7/15/2011 | CBR | | 0 | 00 | 1 | T:00000 | CR BUR RPT STATUS=N;EXPIRE DT = 00/00/00 |
| 8/12/2011 | CBR | | 0 | 00 | 1 | T:00000 | CR BUR RPT STATUS=N;EXPIRE DT = 00/00/00 |
| 9/16/2011 | CBR | | 0 | 00 | 1 | T:00000 | CR BUR RPT STATUS=N;EXPIRE DT = 00/00/00 |
| 10/14/2011 | CBR | | 0 | 00 | 1 | T:00000 | CR BUR RPT STATUS=N;EXPIRE DT = 00/00/00 |
| 11/11/2011 | CBR | | 0 | 00 | 1 | T:00000 | CR BUR RPT STATUS=N;EXPIRE DT = 00/00/00 |
| 12/9/2011 | CBR | | 0 | 00 | 1 | T:00000 | CR BUR RPT STATUS=N;EXPIRE DT = 00/00/00 |
| 1/13/2012 | CBR | | 0 | 00 | 1 | T:00000 | CR BUR RPT STATUS=N;EXPIRE DT = 00/00/00 |
| 2/17/2012 | CBR | | 0 | 00 | 1 | T:00000 | CR BUR RPT STATUS=N;EXPIRE DT = 00/00/00 |
| 3/16/2012 | CBR | | 0 | 00 | 1 | T:00000 | CR BUR RPT STATUS=N;EXPIRE DT = 00/00/00 |
| 4/13/2012 | CBR | | 0 | 00 | 1 | T:00000 | CR BUR RPT STATUS=N;EXPIRE DT = 00/00/00 |
| 5/11/2012 | CBR | | 0 | 00 | 1 | T:00000 | CR BUR RPT STATUS=N;EXPIRE DT = 00/00/00 |
| 6/15/2012 | CBR | | 0 | 00 | 1 | T:00000 | FORECLOSURE STARTED |
| 6/15/2012 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT: 180+ DAYS |
| 7/13/2012 | CBR | | 0 | 00 | 1 | T:00000 | FORECLOSURE STARTED |
| 7/13/2012 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT: 180+ DAYS |
| 8/10/2012 | CBR | | 0 | 00 | 1 | T:00000 | FORECLOSURE STARTED |
| 8/10/2012 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT: 180+ DAYS |
| 9/14/2012 | CBR | | 0 | 00 | 1 | T:00000 | FORECLOSURE STARTED |
| 9/14/2012 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT: 180+ DAYS |
| 10/12/2012 | CBR | | 0 | 00 | 1 | T:00000 | FORECLOSURE STARTED |
| 10/12/2012 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT: 180+ DAYS |
| 11/9/2012 | CBR | | 0 | 00 | 1 | T:00000 | FORECLOSURE STARTED |
| 11/9/2012 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT: 180+ DAYS |
| 12/14/2012 | CBR | | 0 | 00 | 1 | T:00000 | FORECLOSURE STARTED |
| 12/14/2012 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT: 180+ DAYS |
| 1/10/2013 | CBR | | 0 | 00 | 1 | T:00000 | FORECLOSURE STARTED |
| 1/10/2013 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT: 180+ DAYS |
| 1/10/2013 | CBR | | 0 | 00 | 1 | T:00000 | CHANGE IN PRIMARY BORROWERS ADDR |
| 2/14/2013 | CBR | | 0 | 00 | 1 | T:00000 | FORECLOSURE STARTED |
| 2/14/2013 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT: 180+ DAYS |
| 3/18/2013 | CBR | | 0 | 00 | 1 | T:00000 | FCL SALE |

## Exhibit F

SEND TAX NOTICE TO:                                      Loan Number: ▬▬▬▬▬
GMAC Mortgage, LLC
1100 Virginia Drive
Fort Washington, PA 19034                                2013  1595
                                                         Recorded in the Above
                                                         DEED  Book & Page
                                                         03-01-2013 03:38:24 PM
                                                         Greg Cain - Probate Judge
STATE OF ALABAMA          )                              State of Alabama, Morgan County

MORGAN COUNTY             )

## FORECLOSURE DEED

KNOW ALL MEN BY THESE PRESENTS, that

WHEREAS, heretofore, on, to-wit: the 4th day of December, 2000, Gwendell Lloyd Philpot and wife, Annette

Green Philpot, executed that certain mortgage on real property hereinafter described to Mortgage Electronic Registration

Systems, Inc., solely as nominee for Homecomings Financial Network, Inc, which said mortgage was recorded in the

Office of the Judge of Probate of Morgan County, Alabama, in Mortgage Book 2000, Page 35882, said mortgage having

subsequently been transferred and assigned to The Bank of New York Mellon Trust Company, National Association  fka

The Bank of New York Trust Company N.A., as successor to JP Morgan Chase Bank, N.A., successor by merger with

Bank One, N. A., as trustee for RASC 2001KS1, by instrument recorded in Miscellaneous Book 2010, Page 8671, in the

aforesaid Probate Office ("Transferee"); and

WHEREAS, in and by said mortgage, the Transferee was authorized and empowered in case of default in the

payment of the indebtedness secured thereby, according to the terms thereof, to sell said property before the Courthouse

door in the City of Decatur, Morgan County, Alabama, after giving notice of the time, place, and terms of said sale in

some newspaper published in said County by publication once a week for three (3) consecutive weeks prior to said sale at

public outcry for cash, to the highest bidder, and said mortgage provided that in case of sale under the power and authority

contained in same, the Transferee or any person conducting said sale for the Transferee was authorized to execute title to

the purchaser at said sale; and it was further provided in and by said mortgage that the Transferee may bid at the sale and

purchase said property if the highest bidder thereof; and

WHEREAS, default was made in the payment of the indebtedness secured by said mortgage, and the said The

Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as

successor to JPMorgan Chase Bank N.A., successor by merger to Bank One National Association, as Trustee for RASC

2001-KS1  did declare all of the indebtedness secured by said mortgage, subject to foreclosure as therein provided and did

give due and proper notice of the foreclosure of said mortgage by publication in the <u>Decatur Daily</u>, a newspaper of general





circulation published in Morgan County, Alabama, in its issues of August 14, 2012, August 21, 2012, and August 28, 2012; and

WHEREAS, on February 20, 2013, the day on which the foreclosure was due to be held under the terms of said notice, between the legal hours of sale, said foreclosure was duly conducted, and The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank N.A., successor by merger to Bank One National Association, as Trustee for RASC 2001-KS1 did offer for sale and sell at public outcry in front of the Courthouse door in Decatur, Morgan County, Alabama, the property hereinafter described; and

WHEREAS, Aaron Nelson as member of AMN Auctioneering, LLC was the auctioneer who conducted said foreclosure sale and was the person conducting the sale for the said The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank N.A., successor by merger to Bank One National Association, as Trustee for RASC 2001-KS1 ; and

WHEREAS, The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank N.A., successor by merger to Bank One National Association, as Trustee for RASC 2001-KS1 was the highest bidder and best bidder in the amount of Two Hundred Twenty Thousand Five Hundred Thirty-Four And 38/100 Dollars ($220,534.38) on the indebtedness secured by said mortgage, the said The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank N.A., successor by merger to Bank One National Association, as Trustee for RASC 2001-KS1 , by and through Aaron Nelson as member of AMN Auctioneering, LLC as auctioneer conducting said sale for said Transferee, does hereby grant, bargain, sell and convey unto The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank N.A., successor by merger to Bank One National Association, as Trustee for RASC 2001-KS1 all of its right, title, and interest in and to the following described property situated in Morgan County, Alabama, to-wit:

> Part of Lot 397, according to the Plan of the City of Decatur, Alabama, described as beginning at the Northwest corner of Ferry and Cherry Streets, thence in a Northeast direction along Ferry Street 82 feet; thence in a Northwest direction parallel with Cherry Street 165 feet to an alley; thence in a Southwest direction parallel with Ferry Street 82 feet to Cherry Street, thence in a Southeast direction along Cherry Street to point of beginning, except the Westerly 5 feet for alley.

TO HAVE AND TO HOLD the above described property unto The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank N.A., successor by merger to Bank One National Association, as Trustee for RASC 2001-KS1 its successors/heirs and assigns, forever; subject, however, to the statutory rights of redemption from said foreclosure sale on the part of those entitled to

  

redeem as provided by the laws in the State of Alabama; and also subject to all recorded mortgages, encumbrances, recorded or unrecorded easements, liens, taxes, assessments, rights-of-way, and other matters of record in the aforesaid Probate Office.

IN WITNESS WHEREOF, The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank N.A., successor by merger to Bank One National Association, as Trustee for RASC 2001-KS1 , has caused this instrument to be executed by and through Aaron Nelson as member of AMN Auctioneering, LLC, as auctioneer conducting said sale for said Transferee, and said Aaron Nelson as member of AMN Auctioneering, LLC, as said auctioneer, has hereto set his/her hand and seal on this  25

day of _____ Feb _____, 2013.

> The Bank of New York Mellon Trust Company,
> National Association fka The Bank of New York Trust
> Company, N.A. as successor to JPMorgan Chase Bank
> N.A., successor by merger to Bank One National
> Association, as Trustee for RASC 2001-KS1
>
> By:  AMN Auctioneering, LLC
> Its:  Auctioneer
>
> By: _____
> Aaron Nelson, Member

STATE OF ALABAMA                    )

JEFFERSON COUNTY                    )

I, the undersigned, a Notary Public in and for said County, in said State, hereby certify that Aaron Nelson, whose name as member of AMN Auctioneering, LLC acting in its capacity as auctioneer for The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank N.A., successor by merger to Bank One National Association, as Trustee for RASC 2001-KS1 , is signed to the foregoing conveyance, and who is known to me, acknowledged before me on this date, that being informed of the contents of the conveyance, he, as such member and with full authority, executed the same voluntarily on the day the same bears date for and as the act of said limited liability company acting in its capacity as auctioneer for said Transferee.

Given under my hand and official seal on this  25th  day of  February , 2013.

_____
Notary Public
My Commission Expires  MY COMMISSION EXPIRES 08/31/2016

This instrument prepared by:
Rebecca Redmond
SIROTE & PERMUTT, P.C.
P. O. Box 55727
Birmingham, Alabama  35255-5727





**Real Estate Sales Validation Form**
***This Document must be filed in accordance with Code of Alabama 1975, Section 40-22-1***

| | | | |
|---|---|---|---|
| Grantor's Name | The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank N.A., successor by merger to Bank One National Association, as Trustee for RASC 2001-KS1 | Grantee's Name | The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank N.A., successor by merger to Bank One National Association, as Trustee for RASC 2001-KS1 |
| Mailing Address | c/o GMAC Mortgage, LLC GMAC, LLC 1100 Virginia Drive Fort Washington, PA  19034 | Mailing Address | c/o GMAC Mortgage, LLC GMAC, LLC 1100 Virginia Drive Fort Washington, PA  19034 |
| Property Address | 503 Ferry Street Northeast Decatur, AL  35601 | Date of Sale | 2/20/2013 |
| | | Total Purchase Price | $220,534.38 |
| | | or | |
| | | Actual Value | $ |
| | | or | |
| | | Assessor's Market Value | $ |

The purchase price or actual value claimed on this form can be verified in the following documentary evidence: (check one)    (Recordation of documentary evidence is not required)

___ Bill of Sale             ___ Appraisal
___ Sales Contract          ✓ Other   Foreclosure Bid Price
___ Closing Statement

If the conveyance document presented for recordation contains all of the required information referenced above, the filing of this form is not required.

================================================================================

**Instructions**

Grantor's name and mailing address – provide the name of the person or persons conveying interest to property and their current mailing address.

Grantee's name and mailing address – provide the name of the person or persons to whom interest to property is being conveyed.

Property address – the physical address of the property being conveyed, if available.

Date of Sale – the date on which interest to the property was conveyed.

Total purchase price – the total amount paid for the purchase of the property, both real and personal, being conveyed by the instrument offered for record.

Actual value – if the property is not being sold, the true value of the property, both real and personal, being conveyed by the instrument offered for record. This may be evidenced by an appraisal conducted by a licensed appraiser or the assessor's current market value.

If no proof is provided and the value must be determined, the current estimate of fair market value, excluding current use valuation, of the property as determined by the local official charged with the responsibility of valuing property for property tax purposes will be used and the taxpayer will be penalized pursuant to Code of Alabama 1975 § 40-22-1 (h).

I attest, to the best of my knowledge and belief that the information contained in this document is true and accurate.  I further understand that any false statements claimed on this form may result in the imposition of the penalty indicated in Code of Alabama 1975 § 40-22-1 (h).

Date 2/20/13                              Print Christie M. Eady, foreclosure specialist

___ Unattested _____            Sign _____
                    (verified by)                            (Grantor/Grantee/Owner/Agent) circle one

State of Alabama, Morgan County          Term/Cashier: RECORD-10 / cindys
I certify this instrument was filed on    Tran: 14116,304744,410465
03-01-2013 03:38:24 PM                    AFF Special Fee (Act 95-404)        5.00
and recorded in DEED Book                 FIL Filing Fee                       1.00
2013 at pages 1595 - 1598                 REC Recording Fee                   12.00
Greg Cain - Probate Judge                 Total Fees:  $ 18.00

**Form RT-1**

## Exhibit G

**09-80380-JAC7** Gwendell Lloyd Philpot and Annette G. Philpot
**Case type:** bk **Chapter:** 7 **Asset:** No **Vol:** v **Judge:** Jack Caddell
**Date filed:** 02/03/2009 **Date of last filing:** 06/22/2009
**Debtor discharged:** 05/21/2009 **Joint debtor discharged:** 05/21/2009
**Date terminated:** 06/22/2009

# History

| Doc. No. | Dates | | Description |
|---|---|---|---|
| 1 | *Filed & Entered:* | 02/03/2009 | Voluntary Petition (Chapter 7) |
| | *Docket Text:* Chapter 7 Voluntary Petition *as Emergency to stop foreclosure.* Receipt Number 0, Fee Amount $299 Filed by Gwendell Lloyd Philpot, Annette G. Philpot (Long, Robert) | | |
| 3 | *Filed & Entered:* *Terminated:* | 02/03/2009 02/04/2009 | Application to Pay Filing Fees in Installments |
| | *Docket Text:* Application to Pay Filing Fee in Installments and Filed by Joint Debtor Annette G. Philpot, Debtor Gwendell Lloyd Philpot (Long, Robert) | | |
| 4 | *Filed & Entered:* | 02/03/2009 | Power of Attorney |
| | *Docket Text:* Power of Attorney Filed by Joint Debtor Annette G. Philpot, Debtor Gwendell Lloyd Philpot. (Long, Robert) | | |
| | *Filed & Entered:* | 02/04/2009 | Corrective Entry |
| | *Docket Text:* Corrective Entry **STOP 341 NOTICE DUE TO ALL CREDITORS NOT UPLOADED** (RE: related document(s)6 Meeting of Creditors (Chapter 7)). (sbh) | | |
| 5 | *Filed & Entered:* | 02/04/2009 | Notice of Requirement to Complete Course in Financial Management |
| | *Docket Text:* Notice of Requirement to Complete Course in Financial Management . (Admin) | | |
| 6 | *Filed & Entered:* | 02/04/2009 | Meeting of Creditors (Chapter 7) |
| | *Docket Text:* **STOP 341 NOTICE DUE TO ALL CREDITORS NOT UPLOADED** Meeting of Creditors with 341(a) meeting to be held on 03/05/2009 at 10:00 AM at Room 200 Decatur. Objections for Discharge due by 05/04/2009. Modified on 2/4/2009 (sbh). | | |
| 7 | *Filed & Entered:* | 02/04/2009 | Order Appointing Trustee |
| | *Docket Text:* Order Appointing Trustee. Judith Thompson added to the case. Signed on 2/4/2009. (sbh) | | |
| 8 | *Filed & Entered:* | 02/04/2009 | Notice of Deficient Filing |
| | *Docket Text:* Notice of Deficient Filing (RE: related document(s)1 Voluntary Petition (Chapter 7) filed by Debtor Gwendell Lloyd Philpot, Joint Debtor Annette G. Philpot). Incomplete Filings due by 2/19/2009. (sbh) | | |
| 9 | *Filed & Entered:* *Terminated:* | 02/04/2009 03/18/2009 | Notice to File Matrix |
| | *Docket Text:* Notice to File Matrix Incomplete Filings due by 2/9/2009. (sbh) | | |
| 10 | *Filed & Entered:* | 02/04/2009 | Order on Motion To Pay Filing Fees in Installments |
| | *Docket Text:* Order Approving Application To Pay Filing Fees In Installments Signed on 2/4/2009. (sbh) | | |

ALNB Live Database Area                                    Page 2 of 6
12-12020-mg    Doc 7760-3     Filed 11/14/14     Entered 11/14/14 15:16:52     Exhibit 2 -
Priore Declaration     Pg 70 of 86

| | | | |
|---|---|---|---|
| 11 | *Filed:* <br> *Entered:* <br> *Terminated:* | 02/06/2009 <br> 02/07/2009 <br> 03/18/2009 | BNC Certificate of Notice |
| | *Docket Text:* BNC Certificate of Mailing (related document(s)8) (RE: related document(s)8 Notice of Deficient Filing). Service Date 02/06/2009. (Admin.) | | |
| 12 | *Filed:* <br> *Entered:* <br> *Terminated:* | 02/06/2009 <br> 02/07/2009 <br> 03/18/2009 | BNC Certificate of Notice |
| | *Docket Text:* BNC Certificate of Mailing (related document(s)9) (RE: related document(s)9 Notice to File Matrix). Service Date 02/06/2009. (Admin.) | | |
| 13 | *Filed:* <br> *Entered:* <br> *Terminated:* | 02/06/2009 <br> 02/07/2009 <br> 03/18/2009 | BNC Certificate of Notice |
| | *Docket Text:* BNC Certificate of Mailing (related document(s)10) (RE: related document(s)10 Order on Motion To Pay Filing Fees in Installments). Service Date 02/06/2009. (Admin.) | | |
| 14 | *Filed:* <br> *Entered:* <br> *Terminated:* | 02/06/2009 <br> 02/07/2009 <br> 03/18/2009 | BNC Certificate of Notice |
| | *Docket Text:* BNC Certificate of Mailing (related document(s)5) (RE: related document(s)5 Notice of Requirement to Complete Course in Financial Management). Service Date 02/06/2009. (Admin.) | | |
| 15 | *Filed & Entered:* | 02/10/2009 | Exhibit D |
| | *Docket Text:* Exhibit D Filed by Joint Debtor Annette G. Philpot, Debtor Gwendell Lloyd Philpot. (Long, Robert) | | |
| 16 | *Filed & Entered:* | 02/10/2009 | Amended Voluntary Petition (Chapter 7) |
| | *Docket Text:* Amended Chapter 7 Voluntary Petition *as Amend Page 2 Only*. Filed by Joint Debtor Annette G. Philpot, Debtor Gwendell Lloyd Philpot (RE: related document(s)1 Voluntary Petition (Chapter 7)). (Long, Robert) | | |
| 17 | *Filed & Entered:* | 02/10/2009 | Disclosure of Compensation of Attorney for Debtor |
| | *Docket Text:* Disclosure of Compensation of Attorney for Debtor Filed by Joint Debtor Annette G. Philpot, Debtor Gwendell Lloyd Philpot. (Long, Robert) | | |
| 18 | *Filed & Entered:* | 02/10/2009 | Notice to Individual Consumer Debtor (Fm B201) |
| | *Docket Text:* Notice to Individual Consumer Debtor (Fm B201), Statement of Information Required by 11 USC Section 341 Filed by Joint Debtor Annette G. Philpot, Debtor Gwendell Lloyd Philpot. (Long, Robert) | | |
| 18 | *Filed & Entered:* | 02/10/2009 | Statement of Information Required by 11 USC Section 341 |
| | *Docket Text:* Notice to Individual Consumer Debtor (Fm B201), Statement of Information Required by 11 USC Section 341 Filed by Joint Debtor Annette G. Philpot, Debtor Gwendell Lloyd Philpot. (Long, Robert) | | |
| 19 | *Filed & Entered:* | 02/11/2009 | Meeting of Creditors Chapter 7 No Asset |
| | *Docket Text:* Meeting of Creditors. 341(a) meeting to be held on 3/5/2009 at 11:00 AM at Room 200 Decatur.Financial Management Course due:4/20/2009. Last day to oppose discharge or dischargeability is 5/4/2009. (sbh) | | |
| | | | |

| | | | |
|---|---|---|---|
| 20 | *Filed:* | 02/13/2009 | BNC Certificate of Notice |
| | *Entered:* | 02/14/2009 | |
| | *Terminated:* | 03/18/2009 | |
| | *Docket Text:* BNC Certificate of Mailing (related document(s)19) (RE: related document(s)19 Meeting of Creditors Chapter 7 No Asset). Service Date 02/13/2009. (Admin.) | | |
| 21 | *Filed & Entered:* | 02/18/2009 | Motion to Extend Deadline to File Schedules |
| | *Terminated:* | 02/20/2009 | |
| | *Docket Text:* Motion to Extend Deadline to File Schedules or Provide Required Information Filed by Joint Debtor Annette G. Philpot, Debtor Gwendell Lloyd Philpot (Long, Robert) | | |
| 22 | *Filed & Entered:* | 02/20/2009 | Order on Motion to Extend Deadline to File Schedules |
| | *Docket Text:* Order Granting Motion To Extend Deadline to File Schedules or Provide Required Information (Related Doc # 21) Signed on 2/20/2009. (sbh) | | |
| 23 | *Filed:* | 02/22/2009 | BNC Certificate of Notice |
| | *Entered:* | 02/23/2009 | |
| | *Docket Text:* BNC Certificate of Mailing (related document(s)22) (RE: related document(s)22 Order on Motion to Extend Deadline to File Schedules). Service Date 02/22/2009. (Admin.) | | |
| 24 | *Filed & Entered:* | 03/02/2009 | Certificate of Credit Counseling |
| | *Docket Text:* Certificate of Credit Counseling Filed by Joint Debtor Annette G. Philpot, Debtor Gwendell Lloyd Philpot. (Long, Robert) | | |
| 25 | *Filed & Entered:* | 03/02/2009 | Schedules A-J |
| | *Docket Text:* Schedules A-J , Summary of Schedules , Statistical Summary of Certain Liabilities, Declaration re: , Statement of Financial Affairs , Chapter 7 Statement of Current Monthly Income and Means Test Calculation - Form 22A Filed by Joint Debtor Annette G. Philpot, Debtor Gwendell Lloyd Philpot. (Long, Robert) | | |
| 25 | *Filed & Entered:* | 03/02/2009 | Summary of Schedules |
| | *Docket Text:* Schedules A-J , Summary of Schedules , Statistical Summary of Certain Liabilities, Declaration re: , Statement of Financial Affairs , Chapter 7 Statement of Current Monthly Income and Means Test Calculation - Form 22A Filed by Joint Debtor Annette G. Philpot, Debtor Gwendell Lloyd Philpot. (Long, Robert) | | |
| 25 | *Filed & Entered:* | 03/02/2009 | Statistical Summary of Certain Liabilities |
| | *Docket Text:* Schedules A-J , Summary of Schedules , Statistical Summary of Certain Liabilities, Declaration re: , Statement of Financial Affairs , Chapter 7 Statement of Current Monthly Income and Means Test Calculation - Form 22A Filed by Joint Debtor Annette G. Philpot, Debtor Gwendell Lloyd Philpot. (Long, Robert) | | |
| 25 | *Filed & Entered:* | 03/02/2009 | Declaration |
| | *Docket Text:* Schedules A-J , Summary of Schedules , Statistical Summary of Certain Liabilities, Declaration re: , Statement of Financial Affairs , Chapter 7 Statement of Current Monthly Income and Means Test Calculation - Form 22A Filed by Joint Debtor Annette G. Philpot, Debtor Gwendell Lloyd Philpot. (Long, Robert) | | |
| 25 | *Filed & Entered:* | 03/02/2009 | Statement of Financial Affairs |
| | *Docket Text:* Schedules A-J , Summary of Schedules , Statistical Summary of Certain Liabilities, Declaration re: , Statement of Financial Affairs , Chapter 7 Statement of Current Monthly Income and Means Test Calculation - Form 22A Filed by Joint Debtor Annette G. Philpot, Debtor Gwendell Lloyd Philpot. (Long, Robert) | | |

| 25 | *Filed & Entered:* | 03/02/2009 | Chapter 7 Means Test |
|---|---|---|---|
| | *Docket Text:* Schedules A-J , Summary of Schedules , Statistical Summary of Certain Liabilities, Declaration re: , Statement of Financial Affairs , Chapter 7 Statement of Current Monthly Income and Means Test Calculation - Form 22A Filed by Joint Debtor Annette G. Philpot, Debtor Gwendell Lloyd Philpot. (Long, Robert) | | | |
| 26 | *Filed & Entered:* | 03/02/2009 | Appraisal |
| | *Docket Text:* Appraisal Filed by Joint Debtor Annette G. Philpot, Debtor Gwendell Lloyd Philpot. (Long, Robert) | | | |
| 27 | *Filed & Entered:* | 03/03/2009 | Employee Income Records |
| | *Docket Text:* Employee Income Records Filed by Joint Debtor Annette G. Philpot, Debtor Gwendell Lloyd Philpot. (Long, Robert) | | | |
| 28 | *Filed & Entered:* | 03/04/2009 | Notice of Appearance |
| | *Docket Text:* Notice of Appearance and Request for Notice Filed by Creditor HSBC Bank Nevada, N.A.. (Bass, Patti) | | | |
| 29 | *Filed & Entered:* | 03/10/2009 | Return Mail |
| | *Docket Text:* Return Mail of Honor Credit Agency, Inc., North AL Emergency Physicians, Superior Asset Management (RE: related document(s)19 Meeting of Creditors Chapter 7 No Asset). (sbh) | | | |
| 30 | *Filed:*<br>*Entered:*<br>*Terminated:* | 03/12/2009<br>03/13/2009<br>03/18/2009 | BNC Certificate of Notice |
| | *Docket Text:* BNC Certificate of Mailing (related document(s)29) (RE: related document(s)29 Return Mail). Service Date 03/12/2009. (Admin.) | | | |
| | *Filed & Entered:* | 03/31/2009 | Auto-docket of credit card/debit card |
| | *Docket Text:* Receipt of Motion for Relief from Stay(09-80380-JAC7) [motion,mrlfsty] ( 150.00) Filing Fee. Receipt number 7746624. Fee Amount 150.00 (U.S. Treasury) | | | |
| 31 | *Filed & Entered:*<br>*Terminated:* | 03/31/2009<br>05/06/2009 | Motion for Relief from Stay |
| | *Docket Text:* Motion for Relief from Stay , Fee Amount $150, Filed by Creditor HOMECOMINGS FINANCIAL, LLC (Attachments: 1 MORTGAGE2 NOTE) (Murray, Diane) | | | |
| | *Filed & Entered:* | 04/01/2009 | Corrective Entry |
| | *Docket Text:* Corrective Entry **DISREGARD-WRONG HEARING NOTICE SELECTED-WILL CORRECT AND SEND TO INTERESTED PARTIES** (RE: related document(s)[32] Notice of Hearing). (sbh) | | | |
| 32 | *Filed & Entered:*<br>*Terminated:* | 04/01/2009<br>04/01/2009 | Notice of Hearing |
| | *Docket Text:* **DISREGARD-WRONG HEARING NOTICE SELECTED-WILL CORRECT AND SEND TO INTERESTED PARTIES** Notice of Hearing on (RE: related document(s)31 Motion for Relief from Stay filed by Creditor HOMECOMINGS FINANCIAL, LLC). Hearing scheduled 4/22/2009 at 09:00 AM at 3rd Floor Courtroom Decatur. (sbh) Modified on 4/1/2009 (sbh). | | | |
| 33 | *Filed & Entered:*<br>*Terminated:* | 04/01/2009<br>05/06/2009 | Hearing (Motion for Relief) Set |
| | | | |

|   |   |   |   |
|---|---|---|---|
|   | *Docket Text:* Notice of Final Hearing on Motion for Relief from Stay filed by Homecomings Financial (RE: related document(s)31 Motion for Relief from Stay filed by Creditor HOMECOMINGS FINANCIAL, LLC). Hearing scheduled 4/22/2009 at 09:00 AM at 3rd Floor Courtroom Decatur. (sbh) |   |   |
| 34 | *Filed:*<br>*Entered:*<br>*Terminated:* | 04/03/2009<br>04/04/2009<br>05/06/2009 | BNC Certificate of Notice |
|   | *Docket Text:* BNC Certificate of Mailing (related document(s)33) (RE: related document(s)33 Hearing (Motion for Relief) Set). Service Date 04/03/2009. (Admin.) |   |   |
| 35 | *Filed & Entered:*<br>*Terminated:* | 04/15/2009<br>05/06/2009 | Response |
|   | *Docket Text:* Agreed Response to (Re Item: 31 Motion for Relief from Stay , Fee Amount $150, filed by Creditor HOMECOMINGS FINANCIAL, LLC) Filed by Trustee Judith Thompson (Thompson, Judith) |   |   |
| 36 | *Filed & Entered:*<br>*Terminated:* | 04/21/2009<br>05/06/2009 | Courtroom Notes Continuing/Rescheduling |
|   | *Docket Text:* Courtroom Notes Continuing/Rescheduling (RE: Doc #31; Motion for Relief from Stay as to real property filed by Homecomings Financial LLC) Hearing scheduled 05/06/2009 at 09:00 AM at Decatur 3rd Floor Decatur. (blb) |   |   |
| 37 | *Filed & Entered:* | 05/06/2009 | Order Granting |
|   | *Docket Text:* ORDER Granting Signed on 05/06/2009 RE: Doc #31; Motion for Relief from Stay as to real property filed by Homecomings Financial LLC. (blb) |   |   |
| 39 | *Filed:*<br>*Entered:* | 05/08/2009<br>05/09/2009 | BNC Certificate of Notice |
|   | *Docket Text:* BNC Certificate of Mailing (related document(s)37) (RE: related document(s)37 Order Granting). Service Date 05/08/2009. (Admin.) |   |   |
|   | *Filed & Entered:* | 05/15/2009 | Receipt of Installment Payment (Final) |
|   | *Docket Text:* Receipt of Final Installment Payment. Receipt Number 873759, Fee Amount $299.00 (tcw) |   |   |
| 40 | *Filed & Entered:* | 05/19/2009 | Chapter 7 Trustee's Report of No Distribution |
|   | *Docket Text:* Chapter 7 Trustee's Report of No Distribution: I, Judith Thompson, having been appointed trustee of the estate of the above-named debtor(s), report that I have neither received any property nor paid any money on account of this estate; that I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law. Unless the Court orders otherwise, I deem abandoned any and all property of the estate that was scheduled in the petition and was unadministered as of the date of this report, and pursuant to Fed R Bank 5009, I hereby certify that the estate of the above-named debtor(s) has been fully administered. I request that I be discharged from any further duties as trustee. Key information about this case as reported in schedules filed by the debtor(s) or otherwise found in the case record: This case was pending for 4 months. Assets Abandoned: $ 337473.75, Assets Exempt: Not Available, Claims Scheduled: $ 577552.86, Claims Asserted: Not Applicable, Claims scheduled to be discharged without payment: $ 577552.86. (Thompson, Judith) |   |   |
| 41 | *Filed & Entered:* | 05/20/2009 | Financial Management Course Certificate |

| | | | |
|---|---|---|---|
| | *Docket Text:* Financial Management Course Certificate Filed Filed by Joint Debtor Annette G. Philpot, Debtor Gwendell Lloyd Philpot (RE: related document(s)19 Meeting of Creditors Chapter 7 No Asset). (Long, Robert) | | |
| 42 | *Filed & Entered:* | 05/21/2009 | Order Discharging Debtor(s) |
| | *Docket Text:* Order Discharging Both Debtors Signed on 5/21/2009 (RE: related document(s)19 Meeting of Creditors Chapter 7 No Asset). (sbh) | | |
| 43 | *Filed:* | 05/23/2009 | BNC Certificate of Notice |
| | *Entered:* | 05/24/2009 | |
| | *Docket Text:* BNC Certificate of Mailing (related document(s)42) (RE: related document(s)42 Order Discharging Debtor(s)). Service Date 05/23/2009. (Admin.) | | |
| 44 | *Filed & Entered:* | 06/22/2009 | Order Discharging Trustee, Releasing Bond Liability and Closing Case |
| | *Docket Text:* Order Discharging Trustee, Releasing Bond Liability and Closing Case. The estate of the above named Debtor having been fully administered, it is ORDERED that: The accounts and report of the Trustee are hereby filed; the Trustee be and is hereby discharged as trustee of the estate of the above named debtor and the bond is cancelled; and the Chapter 7 case of the above named Debtor is closed. U.S. Bankruptcy Judge (Non-Image Entry) (sbh) | | |

| **PACER Service Center** | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 09/30/2014 13:24:26 | | | |
| **PACER Login:** | mfl354:2923879:3945828 | **Client Code:** | 73214-0000001-14078 |
| **Description:** | History/Documents | **Search Criteria:** | 09-80380-JAC7 Type: History Docket Text: DisplayDktText |
| **Billable Pages:** | 5 | **Cost:** | 0.50 |

**<u>Exhibit H</u>**

B6A (Official Form 6A) (12/07)

In re:  **Gwendell Lloyd Philpot    Annette G. Philpot**                    Case No. _____
                                                                                                      **(If known)**
                        **Debtors**

# SCHEDULE A - REAL PROPERTY

| DESCRIPTION AND LOCATION OF PROPERTY | NATURE OF DEBTOR'S INTEREST IN PROPERTY | HUSBAND, WIFE, JOINT OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION | AMOUNT OF SECURED CLAIM |
|---|---|---|---|---|
| **503 Ferry Street NE Decatur, AL 35601** | **Fee Owner** | | **$ 333,800.00** | **$ 288,296.44** |

Total ➢  | **$ 333,800.00** |

(Report also on Summary of Schedules.)

B6B (Official Form 6B) (12/07)

In re  **Gwendell Lloyd Philpot    Annette G. Philpot**                              ,        Case No. _____
                                                    **Debtors**                                                              **(If known)**

# SCHEDULE B - PERSONAL PROPERTY

| TYPE OF PROPERTY | NONE | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITH-OUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 1. Cash on hand | | **Cash on Hand** | | **5.00** |
| 2. Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | **Redstone Federal Credit Union** | | **300.00** |
| Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | **Regions Bank** | | **300.00** |
| 3. Security deposits with public utilities, telephone companies, landlords, and others. | | **Decatur Utilities** | | **150.00** |
| 4. Household goods and furnishings, including audio, video, and computer equipment. | | **Ordinaty household goods, TV, DVD, Computer, Stereo, Piano** | | **1,200.00** |
| 5. Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | | **Books, Wall prints, sculpture** | | **500.00** |
| 6. Wearing apparel. | | **Clothing** | | **100.00** |
| 7. Furs and jewelry. | | **jewelry** | | **100.00** |
| 8. Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9. Interests in insurance policies.  Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |
| 10. Annuities.  Itemize and name each issuer. | X | | | |
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | | **IRA- Citigroup** | | **68.75** |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | X | | | |
| 13. Stock and interests in incorporated and unincorporated businesses.  Itemize. | X | | | |
| 14. Interests in partnerships or joint ventures.  Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 16. Accounts receivable. | X | | | |

B6B (Official Form 6B) (12/07) -- Cont.

In re   **Gwendell Lloyd Philpot   Annette G. Philpot**                          ,      Case No. _____
                                                       **Debtors**                                                                          (If known)

# SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| TYPE OF PROPERTY | NONE | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITH-OUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | X | | | |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | | **Potential Lawsuit with nationwide $20,0000.00** | | 0.00 |
| 22. Patents, copyrights, and other intellectual property. Give particulars. | | **Copyrights- Peoples Bank, Ergaspace, Boga Grp, Trophx Logos, Golf Cart concepts** | | 0.00 |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | | **1992 Lincoln Continetal Surrender** | | 0.00 |
| Automobiles, trucks, trailers, and other vehicles and accessories. | | **2006 VW Jetta SURRENDER** | | 0.00 |
| 26. Boats, motors, and accessories. | | **Snark Sailboat Trolling Motor** | | 50.00 |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | | **Books, File cabinets, chair, software, printer** | | 500.00 |
| 29. Machinery, fixtures, equipment and supplies used in business. | | **Power Tools, Tool chest, Ladder, Saw** | | 400.00 |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |

**B6B (Official Form 6B) (12/07) -- Cont.**

In re  <u>Gwendell Lloyd Philpot    Annette G. Philpot</u>         ,         Case No.  _____
                                     **Debtors**                                                   **(If known)**

# SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| TYPE OF PROPERTY | NONE | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITH-OUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
|  |  | <u>2</u>   continuation sheets attached    Total ⟩ |  | **$   3,673.75** |

(Include amounts from any continuation sheets
attached. Report total also on Summary of
Schedules.)

B6D (Official Form 6D) (12/07)

In re  Gwendell Lloyd Philpot    Annette G. Philpot                            .        Case No. _____
                                                                                                  (If known)
                              Debtors

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

❑    Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE AND AN ACCOUNT NUMBER (See Instructions, Above.) | CODEBTOR | HUSBAND, WIFE, JOINT OR COMMUNITY | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| ACCOUNT NO.  2999289801<br><br>Citifinancial Auto<br>PO Box 9575<br>Coppell, TX 75019<br><br>Citigroup Inc<br>399 Park Ave<br>New York, NY 10043 | | | VW Jetta 2006<br><br>VALUE $0.00 | | | | 19,169.82 | 0.00 |
| ACCOUNT NO.<br><br>Homecomings Financial<br>c/o Sirote & Permutt<br>PO Box 55727<br>Birmingham, AL 5255<br><br>Homecomings Financial<br>PO Box 205<br>Waterloo, IA 50704 | | | First Lien on Residence<br>503 Ferry St NE<br>Decatur, AL 35601<br><br>VALUE $333,800.00 | | | | 216,796.94 | 0.00 |
| ACCOUNT NO.  148831-L24<br><br>Redstone Federal Credit Union<br>220 Wynn Dr NW<br>Huntsville AL 35893 | | | Lincoln 1992<br><br>VALUE $0.00 | | | | 1,005.36 | 0.00 |

1    continuation sheets attached

Subtotal  ➢
(Total of this page)

Total  ➢
(Use only on last page)

| $ | 236,972.12 | $ | 0.00 |
|---|---|---|---|
| $ | | $ | |

(Report also on Summary of Schedules)    (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.)

**B6D (Official Form 6D) (12/07)- Cont.**

In re  <u>Gwendell Lloyd Philpot    Annette G. Philpot</u>            .          Case No.  _____
                                    **Debtors**                                                        **(If known)**

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE AND AN ACCOUNT NUMBER (See Instructions, Above.) | CODEBTOR | HUSBAND, WIFE, JOINT OR COMMUNITY | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| ACCOUNT NO. **148831-L69.1** <br><br> **Redstone Federal Credit Union** <br> **220 Wynn Dr NW** <br> **Huntsville AL 35893** | | | **Second Lien on Residence** <br> **503 Ferry St NE** <br> **Decatur, AL 35601** <br><br> **VALUE $0.00** | | | | 71,296.44 | 0.00 |

Sheet no. <u>1</u> of <u>1</u> continuation sheets attached to Schedule of Creditors Holding Secured Claims

Subtotal ➤ <br> (Total of this page)

Total ➤ <br> (Use only on last page)

| | |
|---|---|
| $ 71,296.44 | $ 0.00 |
| $ 308,268.56 | $ 0.00 |

(Report also on Summary of Schedules)    (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.)

## Exhibit I

ALNB Live Database Area                                            Page 1 of 1
12-12020-mg    Doc 7760-3    Filed 11/14/14    Entered 11/14/14 15:16:52    Exhibit 2 -
Priore Declaration    Pg 83 of 86

**09-80380-JAC7** Gwendell Lloyd Philpot and Annette G. Philpot
**Case type:** bk **Chapter:** 7 **Asset:** No **Vol:** v **Judge:** Jack Caddell
**Date filed:** 02/03/2009 **Date of last filing:** 06/22/2009
**Debtor discharged:** 05/21/2009 **Joint debtor discharged:** 05/21/2009
**Date terminated:** 06/22/2009

# Associated Cases

**There Are No Case Associations For This Case**

# Other Filings by Same Debtor(s)

**There Are No Case Filing Associations For This Case**

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 10/27/2014 16:25:09 | | |
| **PACER Login:** | mf1354:2923879:3945828 | **Client Code:** | 73214-0000001-14078 |
| **Description:** | Associated Cases | **Search Criteria:** | 09-80380-JAC7 |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

## **Exhibit J**

B18 (Official Form 18) (12/07)

# United States Bankruptcy Court

## NORTHERN DISTRICT OF ALABAMA

### Northern Division

400 Well Street
P. O. Box 2775
Decatur, AL 35602

**Case No. <u>09–80380–JAC7</u>**

**Chapter 7**

**In re** Debtor(s) (name(s) used by the debtor(s) in the last 8 years, including married, maiden, trade, and address):

| | |
|---|---|
| Gwendell Lloyd Philpot | Annette G. Philpot |
| 503 Ferry Street NE | 503 Ferry Street NE |
| Decatur, AL 35601 | Decatur, AL 35601 |

Social Security / Individual Taxpayer ID No.:

| | |
|---|---|
| xxx–xx–9478 | xxx–xx–0042 |

Employer Tax ID / Other nos.:

# DISCHARGE OF DEBTOR

It appearing that the debtor is entitled to a discharge,

**IT IS ORDERED:**

The debtor is granted a discharge under section 727 of title 11, United States Code, (the Bankruptcy Code).

BY THE COURT

Dated: <u>5/21/09</u>

<u>Jack Caddell</u>
United States Bankruptcy Judge

**SEE THE BACK OF THIS ORDER FOR IMPORTANT INFORMATION.**

**ATTENTION DEBTOR:     IMPORTANT DOCUMENT!     PLEASE KEEP FOR YOUR RECORDS!**

**B18 (Official Form 18) (12/07) – Cont.**

## EXPLANATION OF BANKRUPTCY DISCHARGE
## IN A CHAPTER 7 CASE

This court order grants a discharge to the person named as the debtor. It is not a dismissal of the case and it does not determine how much money, if any, the trustee will pay to creditors.

### Collection of Discharged Debts Prohibited

The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor. *[In a case involving community property:* There are also special rules that protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.] A creditor who violates this order can be required to pay damages and attorney's fees to the debtor.

However, a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case. Also, a debtor may voluntarily pay any debt that has been discharged.

### Debts That are Discharged

The chapter 7 discharge order eliminates a debtor's legal obligation to pay a debt that is discharged. Most, but not all, types of debts are discharged if the debt existed on the date the bankruptcy case was filed. (If this case was begun under a different chapter of the Bankruptcy Code and converted to chapter 7, the discharge applies to debts owed when the bankruptcy case was converted.)

### Debts That are Not Discharged

Some of the common types of debts which are <u>not</u> discharged in a chapter 7 bankruptcy case are:

a. Debts for most taxes;

b. Debts incurred to pay nondischargeable taxes;

c. Debts that are domestic support obligations;

d. Debts for most student loans;

e. Debts for most fines, penalties, forfeitures, or criminal restitution obligations;

f. Debts for personal injuries or death caused by the debtor's operation of a motor vehicle, vessel, or aircraft while intoxicated;

g. Some debts which were not properly listed by the debtor;

h. Debts that the bankruptcy court specifically has decided or will decide in this bankruptcy case are not discharged;

i. Debts for which the debtor has given up the discharge protections by signing a reaffirmation agreement in compliance with the Bankruptcy Code requirements for reaffirmation of debts; and

j. Debts owed to certain pension, profit sharing, stock bonus, other retirement plans, or to the Thrift Savings Plan for federal employees for certain types of loans from these plans.

**This information is only a general summary of the bankruptcy discharge. There are exceptions to these general rules. Because the law is complicated, you may want to consult an attorney to determine the exact effect of the discharge in this case.**