1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No.  12-12020-mg

5  - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  RESIDENTIAL CAPITAL, LLC, et al.,

9

10              Debtors.

11

12  - - - - - - - - - - - - - - - - - - - -x

13

14              United States Bankruptcy Court

15              One Bowling Green

16              New York, New York

17

18              November 13, 2014

19              10:08 AM

20

21  B E F O R E:

22  HON. MARTIN GLENN

23  U.S. BANKRUPTCY JUDGE

24

25

2

1

2  ResCap Borrower Claims Trust's Objection to Claim No. 4664 of

3  James C. Jackson [Docket No. 7609]

4

5  ResCap Borrower Claims Trust's Seventy-Fifth Omnibus Objection

6  to Claims (No Liability Borrower Claims) solely as to claims

7  filed by Alan Moss and Michael Boyd [Docket No. 7552]

8

9

10

11

12

13

14

15

16

17

18

19

20  Transcribed by:  Hana Copperman

21  eScribers, LLC

22  700 West 192nd Street, Suite #607

23  New York, NY 10040

24  (973)406-2250

25  operations@escribers.net

3

1

2  A P P E A R A N C E S :

3  MORRISON & FOERSTER LLP

4         Attorneys for the Post-Effective Date Debtors,

5         the ResCap Liquidating Trust and the ResCap

6         Borrower Claims Trust

7         250 West 55th Street

8         York, NY 10019

9

10  BY:   JORDAN A. WISHNEW, ESQ.

11         JESSICA J. ARETT, ESQ.

12

13

14  UNITED STATES DEPARTMENT OF JUSTICE

15         Office of the United States Trustee

16         33 Whitehall Street

17         21st Floor

18         New York, NY 10004

19

20  BY:   BRIAN S. MASUMOTO, ESQ.

21

22

23

24

25

1

2   JAMES P. DEMETRIOU, ATTORNEY AT LAW

3          Claimant, Pro Se

4          650 South Loop Parkway

5          St. Augustine, FL 32095

6

7   BY:   JAMES P. DEMETRIOU, ESQ.

8

9

10  ALSO APPEARING:

11         Ariel Barel, Party Pro Se

12         Michael McGuinty, Party Pro Se (TELEPHONICALLY)

13         Samantha Palmer, Party Pro Se (TELEPHONICALLY)

14         Dwayne F. Poole, Party Pro Se (TELEPHONICALLY)

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2          THE COURT:  All right.  Please be seated.  We're here

3     in Residential Capital, number 12-12020.

4          MS. ARETT:  Good morning, Your Honor.  Jessica Arett

5     of Morrison & Foerster for the ResCap Borrower Claims Trust.

6          THE COURT:  Good morning.

7          MS. ARETT:  The first item on the agenda is the

8     Borrower Trust's objection to claim number 4664 filed by James

9     Jackson.  This matter is uncontested, as the claimant has not

10    filed or served the Borrower Trust with a response to the

11    objection.

12         As the Court is aware, the Borrower Trust previously

13    objected to Mr. Jackson's claim in April, and after Mr. Jackson

14    did not respond to that objection or attend the hearing the

15    Court entered an order sustaining the objection on May 15,

16    2014.  However, after the Court entered that order it came to

17    the attention of the Borrower Trust and the Court that the

18    April objection was served at the address of an attorney who no

19    longer represented Mr. Jackson.  As a result, Mr. Jackson did

20    not receive the objection.

21         For that reason the Court entered an order vacating

22    its previous order, and the Borrower Trust filed a new

23    objection to Mr. Jackson's claim.  That objection was served on

24    the address that Mr. Jackson provided to KCC, and this is also

25    the address that Mr. Jackson lists in his response to the

1    Borrower Claims Trust's fiftieth omnibus objection.

2           Proof of service is demonstrated by the affidavit of

3    service that was filed on October 6, 2014, which can be found

4    at docket number 7618.

5           The Borrower Trust's objection to Mr. Jackson's claim

6    is premised on the fact that the assertions made by the

7    claimant in the proof of claim and his response to the fiftieth

8    omnibus objection have no connection to any debtor entity.  The

9    claimant's allegations relate only to the condition of the

10   property and his claim that such property should not have been

11   sold to him.

12          Residential Capital, against whom the claim was filed,

13   is not named in the complaint attached to the claim or in Mr.

14   Jackson's response to the fiftieth omnibus objection, and the

15   debtors were neither the seller of Mr. Jackson's real property

16   nor the originator of his loan.

17          New State Mortgage LLC originated the loan to Mr.

18   Jackson on January 10, 2005.  Residential Funding Company held

19   the note briefly, from February 25, 2005 until March, 2005, and

20   aside from that short period no other debtor held the loan.

21          In his response to the debtors' requests for more

22   information, the claimant stated that GMAC Mortgage was the

23   lender of his loan, which is not accurate.  GMAC Mortgage

24   serviced the loan after servicing was transferred from

25   Homecomings Financial.  However, none of the allegations made

1  by Mr. Jackson relate to the improper servicing of his loan.

2  And for these reasons the Borrower Trust requests that the

3  claim be expunged from the claims register.

4         THE COURT:  All right.  The Court has reviewed the

5  objection to Mr. Jackson's claim.  As you've noted, after the

6  original order sustaining the objection was entered it was

7  vacated to give Mr. Jackson a chance to respond.  He didn't.

8  The Court has reviewed the objection.  The objection is well

9  taken.  The objection is sustained and the claim is expunged.

10         MS. ARETT:  Thank you, Your Honor.

11         THE COURT:  Thank you.

12         MR. WISHNEW:  Good morning, Your Honor.

13         THE COURT:  Good morning.

14         MR. WISHNEW:  Jordan Wishnew, Morrison & Foerster, for

15  the ResCap Borrower Claims Trust.  This brings us to the

16  contested claims objections at II of today's agenda, the

17  Borrower Claims Trust's seventy-fifth omnibus objections to

18  claims.

19         This claims objection is filed originally at docket

20  number 7552.  The Borrower Trust filed a reply in support of

21  the objection at docket number 7727.  There are twenty-nine

22  claims subject to this objection.  The Borrower's Trust

23  received thirteen responses.  One response has been

24  consensually resolved.  One response has been -- by Mr.

25  Dlin -- has been withdrawn.  I'm sorry.  The objection --

1          THE COURT:  The objection has been withdrawn.  Right.

2          MR. WISHNEW:  -- to Mr. Dlin's claim has been

3    withdrawn.  And three claims are being adjourned at this point

4    in time.  Those would include the claims filed by Mr. Alan

5    Moss, Mr. Michael Boyd, and Ms. Rhonda Gosselin.  Those will be

6    scheduled at a future hearing date.

7          So there are eight responses going forward today.

8    Before I get to the responses I'll simply say with regards to

9    the balance of the uncontested claims, the reasons set forth

10   for the Borrower Trust's objection are included on Exhibit A to

11   the order, which lays out in detail why the allegations or lack

12   of allegations within the Borrower's proofs of claim are not

13   valid claims against the debtors and why the Borrower's Trust

14   believes such claims should be expunged from the claims

15   register.

16         So with regards to the uncontested claims going

17   forward, the Borrower Trust would request that the Court enter

18   the order as to those matters.

19         THE COURT:  All right.  With respect to the objection

20   as to which no responses were filed, so that's -- we'll deal

21   with those that are going forward today as to which responses

22   were filed.  You've adjourned the hearing with respect to some,

23   withdrawn the objection as to one.  As to those as to which

24   it's going forward and remain uncontested, the Court has

25   reviewed the objections, concludes that the objections were

1   well-taken, the objection is sustained and those claims are

2   expunged.

3          MR. WISHNEW:  Thank you very much, Your Honor.

4          Your Honor, I will take the responses in the order

5   with which we've set them forth in our reply.

6          THE COURT:  Okay.

7          MR. WISHNEW:  So the first one is the claim 1574 filed

8   by Rainer Warner.  It is a claim filed as both a partially

9   secured and partially unsecured claim in the approximate amount

10  of 500,000 dollars.

11         THE COURT:  Just give me a second, because that isn't

12  the order in which I have them in my memo for --

13         All right.  First let me ask is Mr. Warner in court or

14  on the telephone?

15         All right.  And my CourtCall list does not show any

16  appearance by or on behalf of Mr. Warner.

17         Go ahead, Mr. Wishnew.

18         MR. WISHNEW:  Thank you, Your Honor.  Your Honor, this

19  is a claim -- Mr. Warner asserts that the company or the

20  debtors are responsible for improper foreclosure, improper

21  charges from property inspections.  With regards to both such

22  allegations, both the objection as well as the reply set forth

23  detailed reasons and loan history between the company and Mr.

24  Warner, describing the various loss mitigation efforts that

25  occurred over a course of years in which loan modifications

1   were considered.  They may have been granted in certain

2   respects, but ultimately did not go through for one of the many

3   reasons which could have been that we did not get signature

4   pages, payments were not made, or forms that were required to

5   assess the loss mitigation option were also not received.

6         Similarly, Mr. Warner makes allegations that we

7   improperly charged him for property valuations which he asserts

8   were never done.  Again, in our reply we have detailed the

9   efforts that were made, the fact that the property valuations

10  were done on a regular basis because they expired every four

11  months, and that as part of our obligation as servicer and to

12  monitor the value of the property, that is why the broker price

13  opinions were undertaken.

14        I won't go through our response item by item, but,

15  needless to say, I believe that through the objection as well

16  as through the reply we have addressed Mr. Warner's allegations

17  and claims and that there is a solid basis for finding no

18  liability on the debtors' behalf to Mr. Warner.

19        THE COURT:  All right.  With respect to the objection

20  to the Warner claim, number 1574, the Court is going to take it

21  under submission and enter a written order or opinion.  I would

22  note that the debtors or the Trust previously objected to the

23  Warner claim as part of the fiftieth omnibus objection.  That

24  was at ECF 5162.  The Court denied the objection to the

25  Warner's claim without prejudice on January 8, 2014.

1        In the original objection the debtors did not
2    specifically discuss the Warner claim, but instead stated that
3    the Warner claim fell in a category of claims for which the
4    debtors determined that they bear no liability based on a
5    review of their books and records, including payment histories,
6    loan modification documents, foreclosure related documents, and
7    internal servicing notes.
8        In his original response Mr. Warner asserted that
9    ownership of the note was not properly established before
10   foreclosure.  In any event, the Court denied the
11   objection -- overruled the objection without prejudice as part
12   of the fiftieth omnibus objection.
13       The objection is now back as part of the seventy-fifth
14   omnibus objection, and Mr. Warner has again filed responses,
15   but the Trust has dealt in considerable detail with the history
16   regarding Mr. Warner's efforts to get a loan modification.
17       Even though Mr. Warner is not appearing today in
18   person or by telephone, I will enter a written order dealing
19   with Mr. Warner's claim.
20       MR. WISHNEW:  Thank you very much, Your Honor.
21       The next response that we are addressing is the claim
22   of, I believe, Samantha Palmer, claim 2761.  This is a general
23   unsecured claim in the amount 1,012,500 dollars.
24       The allegations against the debtors relates to
25   wrongful foreclosure, that Ms. Palmer alleges the debtors

1  had --

2         THE COURT:  Let me, before you go on --

3         MR. WISHNEW:  Sure.

4         THE COURT:  Ms. Palmer, you're on the phone or Mr.

5  Palmer?

6         MS. PALMER:  I am.

7         THE COURT:  Okay.  After Mr. Wishnew has argued I'll

8  give you a chance to address the Court.  Okay?

9         MS. PALMER:  Thank you.

10        THE COURT:  All right.  Go ahead, Mr. Wishnew.

11        MR. WISHNEW:  Thank you, Your Honor.  Your Honor, this

12  was a loan that that was originated in March 30, 2007 and then

13  subsequently securitized.  Homecomings serviced the loan only

14  briefly, from March 30, 2007 through April 1, 2008, when

15  servicing transferred to Aurora.

16        Subsequent, or in 2011 Ms. Palmer filed litigation

17  against the debtors and other entities.  That was originally

18  filed March 2, 2011.  There was a first amended complaint

19  August 18, 2011, and a second amended complaint December 17,

20  2011.  It is the second amended complaint that is attached to

21  Ms. Palmer's proof of claim.

22        In sum, Your Honor, the Borrower Trust brings this

23  objection because, one, we had no interest in the foreclosure

24  action.  At the time -- the loan was current and due for the

25  April 1, 2008 payment when servicing was transferred to Aurora.

1   And, as a result, or in addition, any fraud or servicing

2   related claims against the debtors are similarly time barred.

3           This was a litigation against the company to which a

4   demurrer was filed.

5           THE COURT:  Demur.

6           MR. WISHNEW:  I'm sorry.  Demur.  Thank you.

7           THE COURT:  I used to practice in California.

8           MR. WISHNEW:  And the matter was taken up on appeal on

9   April 12, 2012.  I believe opening briefs were filed by both

10  parties, but it has otherwise been stayed and not proceeded.

11  Really, for the same reasons that we were able to obtain the

12  demurrer.

13          THE COURT:  Demur.

14          MR. WISHNEW:  I'll get it at some point today.  Or the

15  next hearing.

16          THE COURT:  It's okay, as long as you're not arguing

17  in California.

18          MR. WISHNEW:  There you go, Your Honor.  I'll stick to

19  New York.

20          And in sum, Your Honor, we believe that there is no

21  valid basis for liability against the debtors, especially given

22  the limited time frame, so long ago, when we were involved with

23  this loan.

24          THE COURT:  Do you want to address the statute of

25  limitations issue?

1          MR. WISHNEW:  The statute of limitations issue, Your

2    Honor, with regards to -- there are allegations of fraud,

3    violation of TILA, and forgery.  The fraud claim, to the extent

4    there was fraud there's only a three-year statute of

5    limitations, and that would have been from origination.  The

6    loan was originated in March, 2007, so any claim would have had

7    to have been brought in March or the spring of 2010, but the

8    complaint was not first filed until the spring of 2011.

9          With regards to statute of frauds for a TILA

10   violation, again, it's one year from the violation, and any

11   TILA disclosure issue would have been raised or would have come

12   about at the time of the origination.  Again, that would have

13   expired probably in 2008.

14         With regards to the fact of Ms. Palmer believing that

15   she couldn't have discovered this, there's really no evidence

16   in the record suggesting how the company or the debtor somehow

17   impeded her ability to discover or ask for the underlying

18   documents, and so any sort of tolling of the statute of

19   limitations based upon the discovery doctrine we don't believe

20   is applicable.

21         Finally, with regards to forgery, forgery is a three-

22   year statute of limitations.  And, again, that would go back to

23   when the loan was originated, and, again, similar to the fraud,

24   that would have expired before the complaint was filed in 2011.

25         So for the reasons set forth in both Exhibit A to the

1  objection as well as the reply, it is the Borrower's Trust

2  position that the debtors have no liability to Ms. Palmer.

3          THE COURT:  All right.  Mr. or Mrs. Palmer, do you

4  want to respond?

5          MS. PALMER:  Yes.

6          THE COURT:  Go ahead.

7          MS. PALMER:  Hello.  Good morning.  My name is Sam

8  Palmer, Your Honor.  I disagree, and I'm very, very nervous.

9  I've never done this before, so please bear with me.

10          THE COURT:  I absolutely will bear with you.  Okay?

11          MS. PALMER:  Okay.  I totally disagree.  In all steps

12  of the way -- I actually notified Aurora at one time.  Once

13  they became the alleged servicer I sent in a seventy-seven page

14  document, which was an audit showing TILA violations.  And that

15  was in 2009, July of 2009.  Of course I knew nothing about law,

16  so I didn't know that I had to file complaints or anything at

17  that time.

18          With respect to my stating that Homecomings is still

19  responsible, I put into my opposition the fact that in 2007 the

20  two computer systems were merged between Homecomings and GMACM,

21  and at that time -- that was in May of '07 -- on September 24th

22  of '07 they were completing the two systems, but at that time

23  in the 10-K and the 8-K that I attached as exhibits it stated

24  that Homecomings would no longer service any or all of the RALI

25  loans at all.  And this was not -- I did not determine this

1  until about four months ago, when I happened to be reading some

2  of the PSA and the 10-Ks that I had.

3          At that time, evidently, it was turned over to GMACM,

4  all of the servicing for every single one of the RALI trusts.

5  My question was well, my goodness, if they ceased from doing

6  any and all servicing in '07, how could they then, in March of

7  '08, to become effective April 1st of '08, give any type of

8  servicing over to Aurora or any other servicer?  I mean, to me

9  it's like the patient died in '07 and then came back to life

10 six months later.  That's why I put that in my opposition.

11         With respect to time barring, I have been told that I

12 am not time barred, because I put in the delayed discovery

13 rules, and, unfortunately, I mean, I can't help how the time

14 goes by when you're in litigation.  Like even in the case now,

15 I have been stayed due to the ResCap bankruptcy in New York,

16 and therefore, although I have those named, I had not named

17 GMACM or Residential Accredit -- plan to, but I've been on

18 hold.

19         That's, sort of, what I have -- I hope I made that

20 clear or understandable.

21         THE COURT:  Okay.  Anything else you'd like to add?

22         MS. PALMER:  I don't know.  I'm sorry.  I'm so

23 nervous.

24         THE COURT:  That's okay.  Just relax, okay?

25         All right.  Mr. Wishnew, address the issue about the

1    transfer of servicing of the loan.

2            MR. WISHNEW:  Sure, Your Honor.  As we've addressed it

3    in paragraph 88 of our reply at docket number 7727, simply the

4    servicing platform of GMAC Mortgage was, essentially, merged

5    into the servicing platform of Homecomings.  So the loan stayed

6    with the debtors.  And so it's really -- there was no loss of

7    servicing.  It was just that there was a -- essentially, a

8    corporate event in which the platform was merged, and so the

9    debtor still held the -- has held the servicing rights to the

10   loan and had the ability to transfer the servicing rights of

11   the loan to Aurora, which is what they did.

12           With regards to the concern about the discovery or

13   delayed discovery by Ms. Palmer, we addressed that point as

14   well, Your Honor, in paragraph 82 of the reply.  And a similar

15   argument was raised by another claimant, Tia Smith.  And as

16   part of the Court's approval of the debtors' objection on that

17   point in Ms. Smith's claim, the fact of the matter is that

18   there's really no adequate explanation here how Ms. Palmer was

19   prevented from requesting a copy of her loan.  She simply could

20   have reached out, and the fact is she didn't.  So there was no

21   active prevention of discovery by the debtors of Ms. Palmer

22   here.

23           THE COURT:  All right.  Ms. Palmer, do you want to

24   respond again?

25           MS. PALMER:  Yes.

1              THE COURT:  Go ahead.

2              MS. PALMER:  Thank you very much.

3              THE COURT:  Okay.

4              MS. PALMER:  Yes, I did reach out.  I sent in two WRs,

5    which are also attached -- the letters are attached as

6    exhibits.  Unfortunately, Aurora did not return to me all

7    documents.  I finally received documents that were partially

8    not for me eyes to see in September of 2011, when I, in

9    addition, received an allonge to my promissory note that was

10   dated 2011, selling my loan to Aurora on behalf of an attorney-

11   in-fact, Nancy L. Walker, on behalf of Deutsche bank, which was

12   after the supposed cutoff date within the PSA.  And just

13   recently, when I went through bankruptcy, Deutsche Bank popped

14   up again and turned around and bought the loan again, which I

15   find very, very, you know, unusual.

16             With respect to -- so I have on all of my documents,

17   whenever I found out about something I would address it, and I

18   would try to, you know, adequately figure out what in the world

19   was going on.  I made forbearance payments to attempt to get a

20   loan modification for over eighteen months, and I had adequate

21   funds in order to modify the loan.  And after they took 112,000

22   dollars from me they just said well, you know, you're not

23   entitled to a loan mod.

24             I mean, so I have really tried to address all issues,

25   all statutes with my, you know, pro per lack of having gone to

 1  law school, ability.

 2          THE COURT:  May I ask you this, Ms. Palmer?  The

 3  forbearance agreement and payments, who was servicing the loan

 4  at that time?

 5          MS. PALMER:  Aurora.

 6          THE COURT:  Okay.  Have you brought any action against

 7  Aurora?

 8          MS. PALMER:  Yes.

 9          THE COURT:  Where is that pending?

10          MS. PALMER:  It's on the appellate level.  I haven't

11  filed the brief, because we've been on hold.  I was only -- the

12  judge, unfortunately, had separated the hearings, and since you

13  practiced, I heard you say, in California, he sustained the

14  demurs initially with Homecomings, even though we had had the

15  Homecomings hearing, and then a week and a half later had the

16  Aurora hearings, Aurora Emergent (sic) quality loan.  And

17  unfortunately the Judge decided to wait short one week of three

18  months to sustain those demurs, and by that time the ResCap had

19  been filed and they -- the Severson & Werson and Akerman

20  Senterfitt combined the two cases and everything was put on

21  hold and is still that way pending the bankruptcy in New York.

22  So the other parties were not named.

23          THE COURT:  All right.  Any --

24          MS. PALMER:  Or the brief was not --

25          THE COURT:  Anything else you wish to add?

1           MS. PALMER:  -- filed.  I'm sorry.

2           THE COURT:  Okay.  All right.  All right.  I'm going

3    to take the matter under submission.

4           MR. WISHNEW:  Thank you, Your Honor.  .

5           THE COURT:  Okay.  And in due course, Ms. Palmer, I'll

6    be entering a written order or opinion.  Okay?

7           MS. PALMER:  Okay.  Thank you.

8           THE COURT:  Thank you very much for participating by

9    phone.

10          MS. PALMER:  Thank you.

11          THE COURT:  Okay.  All right.

12          MR. WISHNEW:  Thank you, Your Honor.  Next claim is

13   the claim filed by Mr. and Mrs. Barel, claim 4118, a general

14   unsecured claim in the amount of 534,000 dollars.

15          The Borrower Trust's objection to this claim is

16   premised on res judicata, that the claims against the debtors

17   arise --

18          THE COURT:  I'm sorry.  Which claim is this?

19          MR. WISHNEW:  Claim 4118 of Mr. and Mrs. Barel.

20          THE COURT:  Okay.  Thank you.  Yes.  Thank you.

21          MR. WISHNEW:  I believe Mr. Barel is actually in court

22   today.

23          THE COURT:  Okay.  Great.

24          MR. WISHNEW:  So, Your Honor, the basis for the

25   objection here is that the counterclaims brought by Mr. and

1  Mrs. Barel in New Jersey litigation -- and these are

2  counterclaims to a foreclosure action in New Jersey -- were

3  decided on the merits in the favor of the debtors.

4          THE COURT:  So here's my question.  Whether it was

5  correct or incorrect, the case was voluntarily dismissed.

6  Correct?

7          MR. WISHNEW:  Yes, but --

8          THE COURT:  You have any --

9          MR. WISHNEW:  But -- but --

10         THE COURT:  Wait.  Stop.  Do you have any authority

11  that res judicata applies when the plaintiff or the plaintiff's

12  agent voluntarily dismisses the case?

13         MR. WISHNEW:  Today I don't have authority, but I

14  would say that there was -- the dismissal was by Greentree.  It

15  was not by the --

16         THE COURT:  But the case was dismissed.  You're asking

17  me to give res judicata effect to a decision on summary

18  judgment that Greentree went ahead and dismissed the case.  You

19  don't know why they dismissed it.

20         MR. WISHNEW:  I don't know why they dismissed it.

21  They --

22         THE COURT:  Okay.  They dismissed it.

23         MR. WISHNEW:  They dismissed the foreclosure.

24         THE COURT:  How do I -- you haven't cited any -- okay.

25  This is the area -- I mean, you haven't provided the Court with

RESIDENTIAL CAPITAL, LLC, ET AL.                              22

1   any authority that res judicata can apply to a decision in a

2   case that the plaintiff or the plaintiff's agent voluntarily

3   dismissed.  Do you have any authority for that?

4          MR. WISHNEW:  No, I don't have authority on that

5   point.

6          THE COURT:  Let me hear from Mr. Barel.  Come on up.

7          Well, let me just add I don't know of any authority

8   one way or the other, but I'm just --

9          All right.

10          MR. BAREL:  Good morning, Your Honor.  Ariel Barel.

11          THE COURT:  Are you an attorney?

12          MR. BAREL:  No, I am not.

13          THE COURT:  Okay.  You don't need to be.

14          MR. BAREL:  Although it was suggested by a few judges

15   that I should become one.

16          THE COURT:  Oh, are you litigious?

17          MR. BAREL:  Am I what?

18          THE COURT:  Never mind.

19          MR. BAREL:  No, I'm not religious.

20          THE COURT:  I'm teasing.  When you say it was

21   suggested by a few judges it just -- it sounds like you've had

22   a lot of court experience.

23          MR. BAREL:  I certainly did.

24          THE COURT:  But go ahead.  And I meant no disrespect

25   by that.

1              MR. BAREL:  I appreciate that.

2              THE COURT:  I want to make that clear.

3              MR. BAREL:  I appreciate that.  It is a very

4    good -- valid point that you bring up.

5              THE COURT:  I don't know whether it is or it isn't,

6    because I don't have any cases one way or the other.

7              MR. BAREL:  Neither do I, and I couldn't find any,

8    because I was searching. LexisNexis is a very, very vast

9    database with all cases that could come up, but I couldn't find

10   any.

11             However, there's a couple of points that I need to

12   bring up on the issue of dismissal.  The order of this

13   voluntary dismissal was issued by GMAC.  It was not Ocwen.  The

14   order clearly states that.  I attached the order to my

15   opposition, and so that's an inaccurate statement made by Mr.

16   Wishnew.  Among others.  And besides which, I would like to,

17   first of all, enter a running objection to any and all

18   statements made by opposing counsel --

19             THE COURT:  No.  Just go ahead and make your argument,

20   okay?

21             MR. BAREL:  I understand --

22             THE COURT:  Let's not --

23             MR. BAREL:  But I need to preserve my --

24             THE COURT:  No.  You --

25             MR. BAREL:  -- my rights --

1    THE COURT:  I want to hear your explanation.

2    MR. BAREL:  Okay.  Well, as I stated, the dismissal

3  was voluntary  There is no -- the claim that was placed in

4  front of this court, the objection, the seventy-fifth omnibus

5  objection, was based on res judicata.  And, as the Court

6  stated, there is no authority that neither the Court nor Mr.

7  Wishnew himself could find to substantiate a res judicata based

8  on a dismissed, voluntarily dismissed case, whether it was by

9  their agent, Ocwen, or by GMAC themselves.

10   THE COURT:  Well, it was Greentree, not Ocwen.

11   MR. BAREL:  Greentree.  Whoever that was that Mr.

12  Wishnew stated in his remarks.  Greentree.  I stand corrected.

13   There are other issues that I submitted in my

14  opposition wherein the claims that we put forth were based on

15  false representations by the debtors in a state court and in

16  this court.

17   I clearly stated where those misrepresentations are.

18  They state in their submission that the loan was sold to Fannie

19  Mae.  No evidence of that was provided.  Fannie Mae only

20  creates REMICs.  Fannie Mae does not buy loans.  Fannie Mae

21  sells certificates to investors.  GMAC acted as a servicer,

22  which they admitted in this particular filing.  However,

23  throughout the litigation in the state court they have insisted

24  that they are the owner of the loan, because they held the note

25  and the mortgage, where we objected to that throughout.

1         And, by the way, there were four summary judgments

2   filed in total, and the last one was granted.  The other three

3   were denied.  And the last one was granted by a judge saying I

4   give up.  That's it.  I've had enough.  Those were the actual

5   words that the judge stated.

6         THE COURT:  You have a transcript to show me?

7         MR. BAREL:  I would provide -- I would present one.  I

8   will get it and file it in the record.

9         And the judge also stated that she acted on your order

10  allowing GMAC to continue prosecuting the foreclosure.

11        THE COURT:  Well, that's true.

12        MR. BAREL:  However, my statement --

13        THE COURT:  I -- I -- stop.

14        MR. BAREL:  Go ahead.  I'm sorry.

15        THE COURT:  The supplemental servicing order entered

16  by the Court during the course of the Chapter 11 case

17  authorized the debtors to continue with foreclosure actions,

18  and affirmative defenses could be asserted to it, so the state

19  court judge was absolutely correct to proceed with the

20  foreclosure action.

21        MR. BAREL:  But let me ask you this, Judge.

22        THE COURT:  Don't ask me.  Make your argument.

23        MR. BAREL:  If I am not allowed to go after GMAC on my

24  counterclaims because they filed bankruptcy protection, and

25  under automatic stay I'm not allowed to go after them, what

RESIDENTIAL CAPITAL, LLC, ET AL.                    26

1    authority do they have to go after me?  There is a clear

2    abstention --

3            THE COURT:  You were permitted to assert defenses to

4    the foreclosure action.  You couldn't seek monetary recovery,

5    but you could have asserted any defenses to foreclosure.  The

6    supplemental servicing order specifically permitted that.

7            MR. BAREL:  Of course I could.

8            THE COURT:  The fact of the matter is, Mr. Barel --

9            MR. BAREL:  Yes?

10           THE COURT:  -- that you initially were successful.

11   GMAC filed a motion for summary judgment on May 30, 2012.

12           MR. BAREL:  That was the last one.

13           THE COURT:  No, you objected to that motion, and the

14   Court denied the motion on June 12, 2012 --

15           MR. BAREL:  That's correct.

16           THE COURT:  -- without prejudice, because GMAC failed

17   to provide the Court with a valid notice of intent to

18   foreclose.  And I've been through that issue before in another

19   matter.

20           We permitted GMAC to refile the motion once a new

21   notice of intent to foreclose was filed.  You can see the

22   fourth supplemental declaration in Exhibit T.  The new notice

23   was served on August 14, 2012, and GMAC filed a second motion

24   for summary judgment on November 8, 2012.  You filed an

25   opposition on November 27, 2012, and the Court entered an order

1  on December 10, 2012 granting the second summary judgment

2  motion.

3          MR. BAREL:  It was the fourth one, Your Honor.  It was

4  the fourth summary judgment.  I can provide that record.

5          THE COURT:  But for reasons I don't understand, on May

6  30, 2014 Greentree, acting for GMACM, voluntarily dismissed the

7  case.

8          MR. BAREL:  Your Honor, where is the record showing

9  that, that Greentree voluntarily dismissed the case?

10         THE COURT:  Well, read --

11         MR. BAREL:  The order actually states that --

12         THE COURT:  No.  Read the Horst supplemental

13 declaration.  It's all laid out in there.

14         MR. BAREL:  But supplemental declaration --

15         THE COURT:  Okay.  All right.  I've heard enough.

16         MR. BAREL:  -- as far as I'm concerned --

17         THE COURT:  I've heard enough.

18         MR. BAREL:  Well, Your Honor, if I --

19         THE COURT:  I've heard enough.

20         MR. BAREL:  I appreciate that.

21         THE COURT:  Please have a seat.

22         MR. BAREL:  Well, if you're not going to allow me

23 to --

24         THE COURT:  Please have --

25         MR. BAREL:  -- create a record

1          THE COURT:  Could you please have a seat?

2          MR. BAREL:  I will have a seat.

3          THE COURT:  Mr. Wishnew, the objection to Mr. Barel's

4    claim 4118 on grounds of res judicata is overruled, because

5    GMACM's agent dismissed the action.  You got an order for

6    summary judgment.  Why they dismissed it, you don't know.  I

7    don't know.  I take it you didn't even know that they had

8    dismissed it.

9          MR. WISHNEW:  Correct, Your Honor.

10         THE COURT:  You haven't presented any authority that I

11   can give res judicata effect in an action that was voluntarily

12   dismissed.

13         It may be that on the merits you have very good

14   defenses to Mr. Barel's claim.  It's just that res judicata is

15   not one of them.  You haven't established a basis for the Court

16   to grant res judicata effect to a summary judgment order when

17   the plaintiff voluntarily dismissed the case.

18         MR. WISHNEW:  Understood, Your Honor.

19         THE COURT:  You may have a claim over against

20   Greentree.  I don't know.  And you may have valid defenses to

21   Mr. Barel's claim, but it isn't going to be because of res

22   judicata.

23         MR. WISHNEW:  Understood, Your Honor.

24         THE COURT:  All right.  That's why I stopped you, Mr.

25   Barel.

1        MR. BAREL:  Thank you, Judge.

2        THE COURT:  You have to know when to stop before you

3   snatch defeat out of the jaws of victory.

4        MR. BAREL:  I got you on that point.  Thank you.

5        THE COURT:  Okay.  All right.  Let's go on to the

6   next.

7        MR. WISHNEW:  Thank you, Your Honor.  The next claim

8   is the claim of Mr. Poole, claim 4128, a secured claim in the

9   amount of 220,922 dollars.  I believe Mr. Poole is on the

10  phone.

11       THE COURT:  All right.  Mr. Poole, are you on the

12  phone?

13       MR. POOLE:  Yes, I'm here.  Yes.  Your Honor.  I'm

14  here.

15       THE COURT:  Okay.  I'll let Mr. Wishnew argue, and

16  then I'll give you a chance.  Okay?

17       MR. POOLE:  Thank you.

18       THE COURT:  Go ahead, Mr. Wishnew.

19       MR. WISHNEW:  Thank you, Your Honor.  Your Honor, the

20  two points we want to raise in terms of the debtors' lack of

21  liability here is that the loan was -- the actions taken in

22  pursuing a foreclosure were appropriate.  As set forth in the

23  objection as well as the reply and supplemental declaration,

24  the assignment and endorsement chain is complete and valid.

25  And GMAC Mortgage was empowered, as servicer, to pursue the

RESIDENTIAL CAPITAL, LLC, ET AL.                         30

1   foreclosure at the time when the loan was in default.

2          With regards to the belief by Mr. Poole that the

3   response by the debtors to his qualified written request was

4   improper, as we set forth both in the objection as well as in

5   the reply, we believe that our response was sufficient under

6   RESPA to provide him with the information necessary to answer

7   his questions.

8          We provided Mr. Poole with information to show the

9   history of the debits and credits on the account, late fees

10  that were assessed, suspension of the account, property

11  inspections and fees that were assessed, and the status of the

12  insurance policy on the account.  We did not provide

13  information regarding the loan accounting and servicing systems

14  and assignments, because such information represented business

15  and trade practices that were proprietary.  Moreover, the

16  information requested relating to the assignment of the loan

17  was not provided, because it did not relate to the servicing of

18  the loan.

19         In addition, TILA does not allow for rescission if the

20  information is not provided pursuant to a QWR.  TILA allows for

21  a rescission up to three years after origination if disclosures

22  during origination are not provided.  However, here the

23  disclosures were provided and more than three years passed

24  since the origination.

25         So for these reasons, Your Honor, we would ask that

1  our objection to this claim be granted, and the claim be

2  expunged.

3          THE COURT:  All right.  Mr. Poole? ?

4          MR. POOLE:  Yes?  I really have, I guess, one big

5  thing that I was requesting in my qualified written request,

6  which was an actual unaltered wet ink note to prove the debt

7  that they say that I owed.  Requesting that, I had set aside

8  funds, through a servicing agent or through an escrow agent,

9  and with proof of that I was willing to pay what they said that

10 I owed.  They never showed proof.  They never gave me the

11 original note.  The note was never provided.

12         If they actually had the real original wet ink

13 unaltered note I would have paid what they asked.  With all the

14 different proof of fraud and different things on contracts, I

15 don't think that's beyond my, you know, request to see that, if

16 they actually have that, as proof of my debt.

17         Never seeing that, I don't believe that they ever had

18 standing to start foreclosure procedure, which leads to fraud

19 on the court.  I demanded to see the original.  I've given them

20 multiple opportunities outside of court, to save the Court's

21 time, to produce the original.  And they never have.

22         And, basically, the whole argument that I have with it

23 is that there is some responsibility for producing that note.

24         THE COURT:  All right.  Anything else you wish to add?

25         MR. POOLE:  That's -- no.  That's about it.

1          THE COURT:  Okay.  Mr. Wishnew?

2          MR. WISHNEW:  We provided -- in response to his

3    October QWR, we did provide him with a copy of the note and the

4    deed of trust and the subsequent modifications of the loan; his

5    payment history; a copy of the HUD-1 statement; all of which is

6    signed by Mr. Poole.  That detail is set forth in paragraph 104

7    of our reply.

8          THE COURT:  You want to respond to that, Mr. Poole?

9          MR. POOLE:  Yes.  The argument I have with that:

10   regardless of whether -- I asked for the original, not a copy.

11   I believe I'm within my right to ask for the original if I'm

12   willing to pay off the debt.  They never provided that.  A

13   copy -- I can't guarantee that that's my signature on it, and I

14   don't believe --

15         THE COURT:  Mr. Poole --

16         MR. POOLE:  -- Mr. Wishnew could either.

17         THE COURT:  Mr. Poole, do you agree that, in response

18   to your qualified written request, they provided you with a

19   copy of your note and other documents?

20         MR. POOLE:  There is a copy of my note, yes, but it's

21   now -- as I requested, I'm not -- it's not a certified copy;

22   it's just a copy printed off a computer.  I can't say for sure

23   that that's the original, and I deny the fact that it's my

24   signature.  It could be fraud -- could be fraudulent.

25         THE COURT:  All right, I'm going to take the matter

RESIDENTIAL CAPITAL, LLC, ET AL.                    33

1    under submission.

2           Thank you very much, Mr. Poole.

3           MR. POOLE:  Thank you.

4           MR. WISHNEW:  Thank you, Your Honor.  Your Honor, next

5    claim is the claim of Mr. Demetriou, claim 5653, a general

6    unsecured claim in the amount of 1.1 million dollars.  I

7    believe Mr. Demetriou is in court today.

8           THE COURT:  All right.  Why don't you come on and have

9    a seat, Mr. Demetriou.  After Mr. Wishnew's argued, I'll give

10   you --

11          MR. DEMETRIOU:  Good morning, Your Honor.

12          THE COURT:  -- a chance.

13          MR. DEMETRIOU:  Thank you very much.

14          THE COURT:  Okay?

15          All right, go ahead.

16          MR. WISHNEW:  Your Honor, thank you.  Really, what the

17   objection comes down to is a matter of judicial estoppel, Your

18   Honor.  The claim was clearly filed by Mr. Demetriou in 2012.

19   He then pursued a Chapter 7 personal bankruptcy petition in

20   2014.  As set forth on the schedules which we provided to the

21   Court, there is no identification of this claim on his

22   schedules.  And so it is not Mr. Demetriou who can bring this

23   claim; it is rather his trustee who can bring the claim.

24          THE COURT:  Where is the bankruptcy?  Is it still

25   ongoing?

1          MR. WISHNEW:  I know he received a discharge.  I'm not

2     sure if the matter's still open.

3          THE COURT:  Which court?

4          MR. WISHNEW:  I believe, Your Honor --

5          MR. DEMETRIOU:  The Middle District of Florida, Your

6     Honor.

7          THE COURT:  Okay.

8          MR. WISHNEW:  Thank you.

9          So at this time, Your Honor, it is the Borrower's

10    Trust's position that the claim is not a claim that Mr.

11    Demetriou can bring, as it belongs to his bankruptcy estate.

12    It was never disclosed to his bankruptcy estate.  And contrary

13    to -- even though he has -- well, it was an accident; he didn't

14    have the intent.  The fact of the matter is, he filed a 1.1-

15    million-dollar claim that will yield -- that, if allowed, would

16    yield significant value to him.  It was not disclosed and,

17    frankly, it was to be deemed valid, would certainly provide

18    significant benefit to his creditors.  So, based on the

19    doctrine of judicial estoppel that this Court has recognized in

20    its other matters, we'd ask that the claim be disallowed.

21         THE COURT:  Mr. Demetriou, is your Chapter 7

22    bankruptcy case still open or is it closed?

23         MR. DEMETRIOU:  As far as I know, it's closed, Your

24    Honor.  It's been fully discharged.

25         THE COURT:  Why don't you come up to the microphone

RESIDENTIAL CAPITAL, LLC, ET AL.                    35

1  there, okay?

2          MR. DEMETRIOU:  The discharge order was issued on June

3  20, 2014.  And --

4          THE COURT:  Give me that date again; I'm sorry.

5          MR. DEMETRIOU:  June 20th, 2014.  It was even --

6          THE COURT:  That doesn't mean the case has been

7  closed.

8          MR. DEMETRIOU:  Well, there's been some continued

9  negotiation with the trustee, with respect to releasing

10 interests in other real property that was part of --

11         THE COURT:  With your Chapter 7 trustee?

12         MR. DEMETRIOU:  Yes, and ongoing at this point, as far

13 as I'm concerned.  Even if you want me to take this money and

14 hand it to the trustee, I don't have a problem with that.  The

15 issue --

16         THE COURT:  Well, I don't want you to do anything,

17 frankly.  It's not up to me to decide that.  But does -- the

18 problem that's created, when you -- you filed a claim here --

19         MR. DEMETRIOU:  Yes.

20         THE COURT:  -- and you subsequently commenced a

21 Chapter 7 bankruptcy.

22         MR. DEMETRIOU:  Yes.

23         THE COURT:  You're obligated to identify, in your

24 schedules in a Chapter 7, all property of the estate; so

25 anything -- claims, litigation claims, that arose prior to the

1   filing of your petition.  Once you do that, only the Chapter 7

2   trustee has the authority or the standing to prosecute the

3   claims.  I don't know whether your case is open or closed.

4           MR. DEMETRIOU:  If you'd like to -- if you --

5           THE COURT:  Well, I don't want to do anything.  I'm

6   just --

7           MR. DEMETRIOU:  No, I'm suggesting, if the Court is

8   inclined -- is so inclined, let's adjourn this; I'll go back to

9   the trustee, let him make an appearance in here, and continue

10  with this.  The issue of the judicial estoppel is not -- with

11  due respect to counsel, their approach to this is that because

12  it was not filed ipso facto, I don't have a claim.  To the

13  contrary, the Supreme Court of this -- the Supreme Court of the

14  United States has said otherwise with respect to judicial

15  estoppel.  First of all, there is no detriment or unfair

16  advantage that I'm getting with respect to this debtor, in

17  claiming --

18          THE COURT:  Your problem --

19          MR. DEMETRIOU:  -- in this claim here.

20          THE COURT:  -- Mr. Demetriou, is you don't have

21  standing --

22          MR. DEMETRIOU:  I --

23          THE COURT:  -- to continue prosecuting --

24          MR. DEMETRIOU:  -- respectfully --

25          THE COURT:  -- a claim in this case.  Once you have

RESIDENTIAL CAPITAL, LLC, ET AL.                    37

1  filed your bankruptcy in -- what judge -- who's the judge in

2  the Middle District of Florida?

3          MR. DEMETRIOU:  Judge Glenn in Middle District of --

4          THE COURT:  Paul Glenn?

5          MR. DEMETRIOU:  Paul Glenn, yes.

6          THE COURT:  Not related to me.

7          MR. DEMETRIOU:  Not -- okay, I was wondering that when

8  I --

9          THE COURT:  Very good judge.  Been a judge a long

10  time.

11          MR. DEMETRIOU:  I was wondering that when I came up

12  here.

13          THE COURT:  Judge Glenn and I are unrelated.

14          MR. DEMETRIOU:  Unrelated, okay.  That --

15          THE COURT:  We've inquired of each other about it, but

16  we're unrelated.

17          MR. DEMETRIOU:  Your Honor, I think this is a valid

18  claim.  Effect -- the Trust and the debtors have already

19  acknowledged -- in their reply, have acknowledged my claim,

20  that they have fraudulently obtained a --

21          THE COURT:  Well, they have not --

22          MR. DEMETRIOU:  -- foreclosure to --

23          THE COURT:  -- acknowledged that they --

24          MR. DEMETRIOU:  Well --

25          THE COURT:  -- fraudulently obtained anything.  But --

1          MR. DEMETRIOU:  They will not refute my opposition.

2     That's the way they said it.  To me, that's an admission.  And

3     respectfully, I think that what is accomplished is, even if

4     this money was to be granted in the claim, I still have the

5     issue --

6          THE COURT:  Mr. Demetriou, you --

7          MR. DEMETRIOU:  Yes, sir.

8          THE COURT:  -- do not have the authority to prosecute

9     the claim in this court.

10         MR. DEMETRIOU:  Then may I respectfully --

11         THE COURT:  If the Chapter 7 trustee wants to do so,

12    he can.  If he wants to abandon the claim to you, he can.  It

13    may hinge on whether your case remains open --

14         MR. DEMETRIOU:  May I then request --

15         THE COURT:  -- or not.

16         MR. DEMETRIOU:  -- respectfully request an adjournment

17    to find that out from the trustee and get that conclusion?

18         THE COURT:  Well, I'm going to adjourn this matter for

19    a period of approximately thirty days.  I'll have to find out

20    when the next ResCap omnibus hearing date is.

21         Mr. Wishnew, when is that?

22         MR. WISHNEW:  Your Honor, there's a few between now

23    and the next thirty days.

24         THE COURT:  Do we have a date in January?  I mean --

25         MR. WISHNEW:  I think January 5th, Your Honor, or

1  January 14th.

2          THE COURT:  All right, January 6th at 10 a.m.  So I'm

3  going to adjourn the matter until January 6th at 10 a.m.  If

4  the matter remains in its status as it is today, the Court will

5  have no choice but to sustain the Trust's objection here.  This

6  is a matter you need to take up with the Chapter 7 trustee in

7  Florida.

8          MR. DEMETRIOU:  Okay.

9          THE COURT:  And I'm not going to tell you what you

10 should or shouldn't do or what he or she should or shouldn't

11 do.  But for now, the objection to Demetriou claim 5653 is

12 adjourned to 10 a.m. January 6th, 2015.

13         MR. DEMETRIOU:  Thank you, sir.

14         MR. WISHNEW:  Thank you, Your Honor.

15         THE COURT:  Okay, Mr. Wishnew.

16         MR. WISHNEW:  Thank you, Your Honor.  That brings us,

17 Your Honor, to claim 5852 of Mr. McDougal.  Your Honor, this is

18 a claim for approximately 1.65 million dollars.  And

19 essentially, the allegations are that there was wrongful

20 foreclosure against him by the company and that we, the

21 debtors, failed to participate or assist him in a personal

22 lawsuit he brought against Marin County.

23         As set forth in the objection as well as in the reply,

24 there is a proper chain of title here that empowered GMAC

25 Mortgage as servicer to pursue the foreclosure initially, on

1  behalf of Deutsche Bank.

2          With regards to the Marin County litigation, the

3  company was apprised of it and properly adjourned foreclosure

4  proceedings to allow the claimant to pursue his remedy against

5  Marin County.  Ultimately when the matter was settled, the

6  foreclosure went forward because the loan was sufficiently in

7  arrears.

8          So for the reasons set forth both in the objection as

9  well as in the reply and Ms. Horst's supplemental declaration,

10  and declaration in support of the objection, we would ask that

11  this claim be expunged from the claims register.

12          THE COURT:  All right, is anybody -- Mr. McDougal, are

13  you appearing?  Or anyone appearing on behalf of McDougal?

14          All right, the Court'll take it under submission.

15          MR. WISHNEW:  Thank you, Your Honor.  Two more

16  matters.  The next claim is claim 5970 of Mr. and Mrs.

17  McGuinty, and I believe Mr. McGuinty is on the phone today.

18          THE COURT:  All right.  Mr. McGuinty, are you on the

19  phone?

20          MR. MCGUINTY:  Good morning, Your Honor.

21          THE COURT:  Good morning.  After Mr. Wishnew argues,

22  I'll give you a chance, okay?

23          MR. MCGUINTY:  Thank you, Your Honor.

24          THE COURT:  Okay.  Go ahead, Mr. Wishnew.

25          MR. WISHNEW:  Thank you, Your Honor.  This is

1   basically a claim in which the McGuintys assert that the

2   company did not grant them a loan modification to which they

3   believe they were entitled to.  For the reasons set forth in

4   both the objection as well as the reply, the debtors outlined

5   the numerous loss mitigation efforts that were undertaken, the

6   calculations that were undertaken, when deciding whether to

7   approve a trial repayment plan.

8          And with regards to Mr. McGuinty's assertions about

9   the fact that we didn't consider any loan modification under

10  the Federal Disability Act, the fact of the matter is, the

11  arguments that the claimants have made are really irrelevant

12  and don't contradict or undermine in any way the efforts and

13  the calculations made by the debtors as part of their

14  longstanding loss mitigation efforts and attempts to work with

15  the claimants, for the reasons stated in the objection and in

16  the reply.  The fact of the matter is, there just was not

17  sufficient income to grant the modification.  And so,

18  ultimately and unfortunately, the property ultimately went to

19  foreclosure.  And contrary to Mr. McGuinty's assertion, really

20  there was no profit made on the property.

21         So for the reasons set forth, we would ask that this

22  claim certainly be expunged.

23         THE COURT:  All right, Mr. McGuinty, go ahead and

24  respond.

25         MR. MCGUINTY:  Thank you, Your Honor.  Before I begin,

1  could I add two items that I think are important?

2           THE COURT:  You can ask; I don't know -- I don't --

3           MR. MCGUINTY:  Okay.

4           THE COURT:  We'll see.

5           MR. MCGUINTY:  As far as my physical handicap, in 1961

6  I reported to the United States Army at Fort Wayne, in Detroit,

7  Michigan, and they gave me a medical discharge because of my

8  heart, my polio and my forty-nine stitches in my left hand.  So

9  my handicap problem goes all the way back to 1961.  And on that

10 fact alone, I believe I should have received some help from

11 GMAC, the fact that I had been a faithful customer since 1971

12 when I worked for Chevrolet.

13          My other fact is, whenever I give the Court or any of

14 the attorneys any information, I always try to give them the

15 best that I can.  I worked night and day to put my story

16 together.  On Monday I received about five pounds of paper,

17 about 1,000 pages unbound, and I can't make heads or tail out

18 of it, because it's written -- instead of written in landscape,

19 it's written in the other format.  It's impossible to read.

20 And I don't think that's fair.

21          THE COURT:  All right, I will -- after you have

22 finished arguing, I'm going to ask Mr. Wishnew about what it is

23 that was provided on Monday to Mr. McGuinty.  But go ahead,

24 Mr. McGuinty.

25          MR. MCGUINTY:  Your Honor --

1           THE COURT:  I mean, Mr. McGuinty, let me just stop you

2    for a second.  So I have read the pleadings and I know that on

3    April 9th, 2011 -- excuse me -- on December 17th, 2010 you had

4    filed your third application for a loan modification, and you

5    were approved for a HAMP trial plan, with payments due on April

6    1st, 2011 and May 1st, 2011.  And at the end of the two-month

7    trial period, you were denied a permanent modification on April

8    6, 2011 because you had failed to make the first trial payment

9    on March 1st, 2011.  Is that correct?

10           MR. MCGUINTY:  And I'm glad you brought that up,

11    because this really hurt me.  They took my home that I worked

12    twelve years on, I broke my thumb, I broke two ribs, I

13    dislocated my right shoulder.  I was not --

14           I was protecting your property.  I was like a

15    caretaker.  And I faithfully paid you people since 1971.  I

16    gave you thirteen payments every year.  I gave you all my GMAC

17    rewards.  I didn't blow any of it.  Okay?  I didn't give (sic)

18    any of it.  You stole my house that I worked for; you gave it

19    to somebody for five percent down and a three-percent interest.

20    Okay?  That's what you gave a stranger.  To a guy that had

21    given GMAC for thirty-five years -- you gave me a deal -- I was

22    paying 1,596.08.  And you know what you guys gave me?  1,490

23    dollars; a big 106-dollar deduction.

24           After -- after -- after working for General Motors,

25    you take all my medical benefits, you take my life insurance,

RESIDENTIAL CAPITAL, LLC, ET AL.                    44

1   but you don't want -- you don't really take it from me; you

2   take it from my deaf daughter's grandkids; because in 2006 I

3   set up -- I set up trusts that all this money went to these

4   grandkids.  You took the money away from my grandkids and my

5   deaf daughter.  I really hope you're happy.

6           THE COURT:  Mr. McGuinty, I know you're upset, and --

7           MR. MCGUINTY:  No, I'm not upset.

8           THE COURT:  Well, then please try and answer my

9   question.  I know --

10          MR. MCGUINTY:  Yes, sir.

11          THE COURT:  -- you had a series of applications for

12  loan modifications.  Your first application for a modification

13  was denied.  Your second application for a loan modification

14  was denied.  And then you filed a third application for a loan

15  modification and you were approved for a trial -- a HAMP trial

16  plan with payments due on April 1st, 2011 and May 1st, 2011.

17  After your -- on April -- well, on April 6, 2011 the

18  modification was denied because you hadn't made the payments.

19  Do you agree that you were approved for a modification and

20  didn't make the payments?  I'd like -- I really would like an

21  answer to that question.

22          MR. MCGUINTY:  Yes.

23          THE COURT:  Okay.  All right, I'm going to take the

24  matter under submission.  There's quite a bit --

25          Well, no, before doing that; what is it -- I am

RESIDENTIAL CAPITAL, LLC, ET AL.                    45

1   concerned, Mr. Wishnew.  What is it that was served on

2   Mr. McGuinty this week?

3            MR. WISHNEW:  So what was served on Mr. McGuinty as

4   well as the other seven respondents that are being addressed

5   today, is essentially a full copy of the reply, including the

6   exhibits.

7            THE COURT:  How much of it related to Mr. McGuinty?

8   Because there is a lot --

9            MR. WISHNEW:  It --

10           THE COURT:  There are quite a few -- I'm always

11   concerned -- and I've expressed this before -- if any new

12   arguments are raised in reply.

13           MR. WISHNEW:  Understood, Your Honor.  Yes.

14           THE COURT:  So with respect to Mr. McGuinty, what is

15   it that was provided in the reply?

16           MR. WISHNEW:  I mean, with regards to the reply, you

17   would have the factual background section -- just give me one

18   moment, Your Honor -- the factual background section on pages

19   18, 19, and carrying over to page 20.  Referenced in that

20   factual background are less than a handful of additional -- of

21   exhibits substantiating the facts set forth in the original

22   objection.  And then in regards to the legal arguments or

23   responding to the meritorious arguments put forth by

24   Mr. McGuinty, pages 41 and 42 of the reply also address his

25   arguments.

1        So you have essentially five pages of the reply,

2   certain excerpts from Ms. Horst's supplemental declaration, and

3   any additional exhibits that substantiate the underlying facts.

4        THE COURT:  All right, Mr. McGuinty, what I'm going to

5   do is the following:  I'm going to give you --

6        MR. MCGUINTY:  Your Honor, can --

7        THE COURT:  No.

8        MR. MCGUINTY:  -- can I add --

9        THE COURT:  No.  Could you just --

10        MR. MCGUINTY:  -- one more thing, please?

11        THE COURT:  -- stop for a second, Mr. McGuinty?  I'm

12   going to tell you what we're going to do.  I'm going to give

13   you until 5 p.m. on November 20th, one week from today, to file

14   any supplemental papers addressed solely -- I want to make this

15   clear -- addressed solely to any evidence or arguments

16   submitted by the Trust in its reply.  While the entire reply

17   was very lengthy because of the number of objections and other

18   claimants that were covered by it, the portion of it that

19   actually relates to you is fairly limited.

20        So I'm going to give you a week to file any additional

21   response you want, limited solely to the information contained

22   in the reply that the Trust served on you.  I will not have any

23   further argument unless I order it.  After receiving any

24   additional -- and make sure you serve the Trust.  After

25   receiving anything else that Mr. McGuinty files, I'll either

 1  decide the matter based on the papers at that point or, if the

 2  Court concludes that a further hearing is required, I will give

 3  everybody notice of it.  That's how we're going to proceed.

 4          Thank you very much, Mr. McGuinty.

 5          MR. MCGUINTY:  But, Your Honor, can I add just one

 6  thing, please?

 7          THE COURT:  Go ahead.

 8          MR. MCGUINTY:  On page 64 of 423, I have the document

 9  that Morrison & Foerster is talking about.  They wanted me to

10  send them a check for $3,539.71.

11          THE COURT:  Okay --

12          MR. MCGUINTY:  And that's page 64 of 423.

13          THE COURT:  Mr. McGuinty, I'm giving you one week from

14  today to file any additional papers in response to what was

15  included.  And in the papers that they submitted, only Exhibits

16  II through LL apply to your claim -- to the objection to your

17  claim.  So those are the only exhibits, II through LL, as to

18  which you can respond.  It's a limited amount of material, but

19  I want to give you an opportunity to respond.

20          But any response -- I don't want a rehash of arguments

21  that have already been made by either side.  If there's

22  anything in those additional materials that the Trust has

23  served on you, I'm giving you a chance, a week, to go ahead and

24  file an additional response; and then after receiving that,

25  I'll determine whether to decide it without a further hearing

1  or decide it on the basis of the papers.

2           All right.  Next matter.

3           MR. WISHNEW:  Okay.  One point, Your Honor, that

4  I'll -- to try and address the Court's concern and

5  Mr. McGuinty's concern.  Going forward, we will make a better

6  effort to only serve the documents related to that individual's

7  claim, on them, as opposed to serving something more voluminous

8  that deals with multiple claimants --

9           THE COURT:  Okay.

10          MR. WISHNEW:  -- and avoids confusion.

11          THE COURT:  That's fine.  All right.

12          MR. WISHNEW:  Thank you.  Your Honor, the last claim

13  being addressed today is the claim filed by Simon Woody, aka

14  Royal Kingdom, claim 3702, a secured claim for $1,219,292.64.

15  Your Honor, this is a claim where, frankly, there is no

16  discernible basis for liability voiced against the debtors.

17  And despite efforts to try and diligence this claim, have

18  Mr. Woody substantiate the claim, there really is no

19  recognizable basis for liability by the company.

20          THE COURT:  All right, let me -- before you --

21          Is anybody appearing on the telephone or in the

22  courtroom, for Royal Kingdom Builders?

23          All right, go ahead, Mr. Wishnew.

24          MR. WISHNEW:  Thank you, Your Honor.  Homecomings only

25  serviced this loan for just over a year:  between January 2007,

RESIDENTIAL CAPITAL, LLC, ET AL.                              49

1   April 2008.  There's an absence of any colorable allegations

2   against any debtor entity, on account of any wrongdoing that

3   would provide for any liability.  And for the reasons set forth

4   in the objection and the reply, we'd ask that this claim be

5   expunged.

6          THE COURT:  All right, with respect to claim 3702 of

7   Royal Kingdom Builders, there's a claim in the amount of

8   $1,219,219.64 (sic) against ResCap for mortgage servicing

9   performed by Homecomings Financial on property located at 205

10  Jamerson Farm Road, Collierville, Tennessee 38017.  The Trust

11  objected to the claim on the basis of insufficient

12  documentation.  According to the Trust, the claimant only

13  asserts "services rendered" as the basis for the claim on the

14  claim form.  The Trust also notes that the claimant attached

15  the UCC financing statement to the proof of claim, that

16  indicates that Simon and Yvette Woody are both the debtors and

17  secured party in connection with a 500-million-dollar lien

18  against certain collateral.  The proof of claim also attaches a

19  Truth in Lending document dated November 22, 2006, showing a

20  proposed financing from First Magnus Financial Corp., secured

21  by the property.

22         Despite the Trust's request for additional information

23  from the claimant, no other documentation was provided.  The

24  Trust searched its books and records with regard to loans tied

25  to the claimants and the property and uncovered no

1    documentation that would evidence any liability on the part of

2    the debtors.    This is all set forth in the objection to the

3    claim.

4            Royal Kingdom filed an opposition apparently asserting

5    that First Magnus Bank went out of business as of May 2008, so

6    it could not have serviced the loan past that date.    The

7    opposition then continues by stating that Royal Kingdom

8    Builders, care of Simon M. Woody, Jr., asked Claimant to

9    provide proof of documentation it was never provided;

10   therefore, never provided proof that they were servicer or even

11   having any documentation to this loan.

12           It's unclear, from the allegations, what Royal Kingdom

13   is alleging; but it appears they are asserting either that the

14   debtors never proved that they were the servicer of the loan or

15   had involvement in it, after Royal Kingdom requested

16   documentation, and thus, Royal Kingdom could not provide any

17   documentation, or that the debtors asked Royal Kingdom for

18   documentation, Royal Kingdom could not give the documentation

19   because the debtors never gave them any documentation for this

20   loan before.    In reply, the Trust asserts that Royal Kingdom

21   failed to provide any additional information to support its

22   claim.

23           The Trust's objection to the Royal Kingdom claim

24   number 5970 is sustained and the claim is expunged.    Claimant

25   provided no information for any basis whatsoever, and the Trust

1  has established that its books and records show none, so that

2  claim is expunged.

3        MR. WISHNEW:  Thank you very much, Your Honor.  We

4  will submit an order consistent with Your Honor's rulings,

5  electronically to chambers.

6        THE COURT:  Yeah.  So what I would like is separate

7  orders with respect to the ones I've ruled on today.

8        MR. WISHNEW:  Right.

9        THE COURT:  Okay.  And I will in all likelihood enter

10  separate orders for each of those contested claims that we

11  dealt with today.  Obviously, as to McGuinty I have to wait to

12  receive whatever additional information Mr. McGuinty wishes to

13  provide.

14        MR. WISHNEW:  I could also provide -- in the order

15  that we're putting together, I can provide for the adjournment

16  of Mr. Demetriou's claim as well.

17        THE COURT:  That's fine.

18        MR. WISHNEW:  Okay.

19        THE COURT:  Okay?

20        MR. WISHNEW:  Very good.

21        THE COURT:  All right, thank you very much.

22        MR. WISHNEW:  Thank you, Your Honor.

23        THE COURT:  We're going to take a recess until 11:30

24  and then we'll continue on with the docket.  Okay, so we're --

25  Conversion Consulting, and then 37 West 24th Street and 983

1   Fulton LLC remain to be dealt with.  We'll resume at 11:30.

2   Thank you.

3        (Whereupon these proceedings were concluded at 12:05 PM)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                              **I N D E X**

3

4                              RULINGS

5                                          PAGE     LINE

6    ResCap Borrower Claims Trust's Objection to     7         9

7    claim number 4664 of James C. Jackson is

8    sustained

9    Objections to claims in the seventy-fifth        9         1

10   omnibus objection that remain uncontested

11   are sustained and the claims are expunged

12   Objection to Mr. Barel's claim number 4118      28         4

13   on grounds of res judicata is overruled

14   The Trust's objection to the Royal Kingdom      50        24

15   claim number 5970 is sustained and the claim

16   is expunged.

17

18

19

20

21

22

23

24

25

1

2                       C E R T I F I C A T I O N

3

4    I, Hana Copperman, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7    *Hana Copperman*

8

9    _____

10   HANA COPPERMAN

11   AAERT Certified Electronic Transcriber CET**D 487

12

13   eScribers

14   700 West 192nd Street, Suite #607

15   New York, NY 10040

16

17   Date:  November 14, 2014

18

19

20

21

22

23

24

25