## Exhibit 2

**Priore Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
|  | ) |  |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11 |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

-------------------------------------------------------------------------

**DECLARATION OF KATHY PRIORE**
**IN SUPPORT OF RESCAP BORROWER CLAIMS TRUST'S**
**JOINDER AND SUPPLEMENTAL OBJECTION TO OCWEN LOAN**
**SERVICING LLC'S OBJECTION TO CLAIM OF ROBERT DE SIMONE**

I, Kathy Priore, hereby declare as follows:

1.  I serve as Associate Counsel for the ResCap Liquidating Trust (the "<u>Liquidating Trust</u>"), established pursuant to the terms of the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 6030] confirmed in the above-captioned Chapter 11 Cases.  During the Chapter 11 Cases, I served as Associate Counsel in the legal department of Residential Capital, LLC ("<u>ResCap</u>"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors in the above-captioned Chapter 11 Cases (collectively, the "<u>Debtors</u>").  On May 1, 2008, I began as in-house litigation counsel at ResCap.  Prior to my in-house litigation counsel position, I held various roles within the legal department at ResCap.

2.  In my role as Associate Counsel at ResCap, I was responsible for the management of mortgage-related litigation.  In connection with ResCap's chapter 11 filing, I also assisted the Debtors and their professional advisors in connection with the administration of the chapter 11 cases, including the borrower litigation matters pending before this Court.  In my current position as Associate Counsel to the Liquidating Trust, among my other duties, I

continue to assist the Liquidating Trust and the Borrower Claims Trust (the "<u>Borrower Trust</u>") in connection with the claims reconciliation process.[1]  I am authorized to submit this declaration (the "<u>Declaration</u>") in support of the *Rescap Borrower Claims Trust's Joinder and Supplemental Objection to Ocwen Loan Servicing LLC*'s *Objection to Claim of Robert D. Simone* (the "<u>Joinder and Supplemental Objection</u>").[2]

3.    Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations, information learned from my review of relevant documents and information I have received through my discussions with other former members of the Debtors' management or other former employees of the Debtors, the Liquidating Trust, and the Borrower Trust's professionals and consultants.  If I were called upon to testify, I could and would testify competently to the facts set forth in the Joinder and Supplemental Objection on that basis.

4.    In my current and former capacities as Associate Counsel to the Liquidating Trust and ResCap, I am intimately familiar with the Debtors' claims reconciliation process.  Except as otherwise indicated, all statements in this Declaration are based upon my familiarity with the Debtors' Books and Records (the "<u>Books and Records</u>"), as well as the Debtors' schedules of assets and liabilities and statements of financial affairs filed in these Chapter 11 Cases (collectively, the "<u>Schedules</u>"), my review and reconciliation of claims, and/or my review of relevant documents.  I or other Liquidating Trust personnel have reviewed and analyzed the proof of claim form and supporting documentation filed by the Claimant and the Ocwen Objection.  Since the Plan went effective and the Borrower Trust was established, I,

---

[1]    The ResCap Liquidating Trust and the ResCap Borrower Claims Trust are parties to an Access and Cooperation Agreement, dated as December 17, 2013, which, among other things, provides the Borrower Trust with access to the books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.

[2]    Capitalized terms not defined herein shall have the meanings ascribed to them in the Reply.

along with other members of the Liquidating Trust have consulted with the Borrower Trust to continue the claims reconciliation process, analyze claims, and determine the appropriate treatment of the same.  In connection with such review and analysis, where applicable, I or other Liquidating Trust personnel, together with professional advisors, have reviewed (i) information supplied or verified by former personnel in departments within the Debtors' various business units, (ii) the Books and Records, (iii) the Schedules, (iv) other filed proofs of claim, and/or (vi) the official claims register maintained in the Debtors' Chapter 11 Cases.

5.      The Debtors have taken steps in these Chapter 11 Cases to afford Borrowers who have filed proofs of claim additional protections, as set forth in the Borrower Claim Procedures approved by the Procedures Order.  A Request Letter was sent to the Claimant on June 21, 2013.  The Debtors did not receive a response from the Claimant.

6.      Non-Debtor MortgageIT Inc. ("MortgageIT") originated a loan to the Claimant on January 30, 2007.  The Note was endorsed by MortgageIT to blank, and is attached hereto as Exhibit A.  An assignment of the mortgage was recorded from MERS to GMAC Mortgage, LLC ("GMACM") on October 2, 2009 and then from GMACM to HSBC Bank, NA, as Trustee on April 2, 2013.  These assignments are attached hereto as Exhibit B. GMACM serviced the loan from February 9, 2007 until servicing of the loan was transferred to Ocwen on February 16, 2013. No Debtor was involved in the origination of the loan.

7.      In 2010, the Claimant commenced an action in Middlesex County Superior Court in Massachusetts (the "Superior Court") against GMAC Mortgage, LLC ("GMACM") and other defendants.  A copy of the Complaint is attached to *Ocwen Loan Servicing LLC's Objection to Claim of Robert De Simone* [Docket No. 7539] (the "Ocwen Objection") as Exhibit A.  GMACM filed for summary judgment on count I for rescission (the

"Rescission Claim") and count IV for violation of the Consumer Protection Statute Mass. G.L. c. 93A (the "93A Claim"), as they were the only counts asserted against GMACM.

8.    The Superior Court granted summary judgment in favor of GMACM on the Rescission Claim and the 93A Claim on May 22, 2012.  A copy of the Superior Court's order granting summary judgment is attached to the Ocwen Objection as Exhibit B. As a consequence of the filing of a notice of bankruptcy, the proceedings were stayed before the Superior Court entered a final judgment.  On September 10, 2012, the Superior Court permitted litigation to proceed as to the Rescission Claim, but not to the 93A Claim. The Superior Court entered a final judgment dismissing the Rescission Claim on October 23, 2012 (the "Superior Court Decision"). A copy of the Superior Court Decision is attached hereto as Exhibit C.

9.    The Claimant appealed the Superior Court Decision on November 21, 2012, and on February 25, 2014, the Massachusetts Appeals Court affirmed the Superior Court Decision.  A copy of the Appeals Court decision is attached to the Ocwen Objection as Exhibit D.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  November 17, 2014


/s/  Kathy Priore
Kathy Priore
Associate Counsel for ResCap Liquidating Trust

**Exhibit A**

' SEE "PREPAYMENT PENALTY ADDENDUM TO NOTE" ATTACHED HERETO AND MADE A PART HEREOF.

LOAN NO.:   4063          **ADJUSTABLE RATE NOTE**          MIN: 100112065737261798
                                                           MERS Phone: 1-888-679-6377

LOAN NO.:   4063          **ADJUSTABLE RATE NOTE**          MIN: 100112065737261798
                (MTA - Twelve Month Average Index - Payment Caps)   MERS Phone: 1-888-679-6377

THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE
MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT
CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN
THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN
THIS NOTE.

JANUARY 30, 2007                     WARWICK                     RHODE ISLAND
    [Date]                            [City]                        [State]

                        11 OLD VILLAGE ROAD, ACTON, MA  01720
                               [Property Address]

1.  BORROWER'S PROMISE TO PAY
    In return for a loan that I have received, I promise to pay U.S. $     770,000.00     (this amount is called
"Principal"), plus interest, to the order of Lender. The Principal amount may increase as provided under the terms of this Note
but will never exceed   ONE HUNDRED FIFTEEN AND 000/1000THS   (   115.000   %) of the Principal amount I originally
borrowed. This is called the "Maximum Limit." Lender is
MORTGAGEIT, INC.

I will make all payments under this Note in the form of cash, check or money order.
    I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to
receive payments under this Note is called the "Note Holder."

2.  INTEREST
    (A) Interest Rate
    Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly
rate of     1.000     %. The interest rate I will pay may change.
    The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B)
of this Note.

    (B) Interest Rate Change Dates
    The interest rate I will pay may change on the     1st     day of     MARCH, 2007     , and on that day every
month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of
interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly
payment is recalculated in accordance with Section 3.

    (C) Index
    Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is
the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant
maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected
Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly
Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date
15 days before each Interest Rate Change Date is called the "Current Index".
    If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information.
The Note Holder will give me notice of this choice.

    (D) Calculation of Interest Rate Changes
    Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding
    THREE AND 275/1000THS     percentage point(s) (     3.275     %) ("Margin") to the Current Index.
The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This
rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than
    9.950     %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

                                                                              Initials: [signature]

PayOption ARM Note - MTA Index
FE-5312 (0511)                          Page 1 of 5          LENDER SUPPORT SYSTEMS, INC. FE5312XX.COU (12/05)

3.    PAYMENTS
      (A) Time and Place of Payments

3.    PAYMENTS
      (A) Time and Place of Payments
      I will make a payment every month.
      I will make my monthly payments on the    1st    day of each month beginning on    MARCH, 2007    .
I will make these payments every month until I have paid all the Principal and Interest and any other charges described
below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied
to interest before Principal. If, on    FEBRUARY 01, 2037    , I still owe amounts under this Note, I will pay those
amounts in full on that date, which is called the "Maturity Date."

      I will make my monthly payments at    GMAC MORTGAGE LLC
P.O. BOX 780, WATERLOO, IA  50704-0780
or at a different place if required by the Note Holder.


      (B) Amount of My Initial Monthly Payments
      Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $    2,476.62
unless adjusted under Section 3(F).


      (C) Payment Change Dates
      My monthly payment may change as required by Section 3(D) below beginning on the  1st  day of    MARCH, 2008    ,
and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also
will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment"
is the minimum amount the Note Holder will accept for my monthly payment which is determined at the last Payment Change
Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest
due then negative amortization will occur.
      I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided
in Section 3(F) or 3(G) below.


      (D) Calculation of Monthly Payment Changes
      At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that
would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity
date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The
result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly
payment effective on a Payment Change Date, will not increase by more than 7.5% of my prior monthly payment. This 7.5%
limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and Interest payment and does not apply
to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by
taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the
number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to
pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have
the option to pay the Full Payment for my monthly payment.


      (E) Additions to My Unpaid Principal
      Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject
to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the
interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment
date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the
interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and
will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate
required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply
the payment as provided in Section 3(A).


      (F) Limit on My Unpaid Principal; Increased Monthly Payment
      My unpaid Principal can never exceed the Maximum Limit equal to    ONE HUNDRED FIFTEEN  AND 000/1000THS    percent
( 115.000  %) of the Principal amount I originally borrowed. My unpaid principal could exceed that Maximum Limit due to

Initials: 

Minimum Payments and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change more Minimum Payments and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

(G) Required Full Payment
On the    fifth    Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

(H) Payment Options
After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:
(i) Interest Only Payment: the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.
(ii) Fully Amortized Payment: the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments.
(iii) 15 Year Amortized Payment: the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.
These Payment Options are only applicable if they are greater than the Minimum Payment.

4.  NOTICE OF CHANGES
The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5.  BORROWER'S RIGHT TO PREPAY
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.
I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

6.  LOAN CHARGES
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7.  BORROWER'S FAILURE TO PAY AS REQUIRED
(A) Late Charges for Overdue Payments
If the Note Holder has not received the full amount of any monthly payment by the end of    FIFTEEN    ( 15 ) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    3.000    % of my overdue payment of Principal and Interest. I will pay this late charge promptly but only once on each late payment.



**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(D) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option

Initials: 

To the Extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
ROBERT DESIMONE                    -Borrower                                           -Borrower

_____ (Seal)          _____ (Seal)
                                   -Borrower                                           -Borrower

_____ (Seal)          _____ (Seal)
                                   -Borrower                                           -Borrower

_____ (Seal)          _____ (Seal)
                                   -Borrower                                           -Borrower

Pay to the order of

Without Recourse
MortgageIT, Inc.

By: _____
Name: Deb Hildreth
Its: Assistant Secretary

PayOption ARM Note - MTA Index
FE-5312 (0511)                                 Page 5 of 5

Identifier:        2655        Doc Type:NOTEN

LOAN #:     4063
PROPERTY ADDRESS: 11 OLD VILLAGE ROAD, ACTON, MA, 01720

# PREPAYMENT PENALTY ADDENDUM TO NOTE
### *(Massachusetts)*

This "PREPAYMENT PENALTY ADDENDUM TO NOTE" (hereinafter "Addendum") is made this __30th__
day of _____ **January** _____ , __2007__ , and is incorporated into and shall be deemed to amend and supplement
the Promissory Note (the "Note") of the same date made by the undersigned (the "Borrower") to evidence
indebtedness to

**MortgageIT, Inc.**

(the "Lender"), which debt is secured by a Mortgage or Deed of Trust or comparable security instrument (the
"Security Instrument") of the same date and covering the property described in the Security Instrument and located
at

### 11 OLD VILLAGE ROAD, ACTON, MA, 01720
(the "Property").

**Additional Covenants.**  Notwithstanding anything to the contrary set forth in the Note or Security Instrument,
Borrower and Lender covenant, and agree, that the provisions of the section of the Note entitled "BORROWER'S
RIGHT TO PREPAY" are amended to read as follows:

Subject to the prepayment penalty provided below, I have the right to make payments of principal at any
time before they are due.  A payment of principal only is known as a "prepayment."  A "full prepayment"
is the prepayment of the entire unpaid principal due under the Note.  A payment of only part of the unpaid
principal is known as a "partial prepayment."  When I make a prepayment, I will tell the Note Holder in
writing that I am doing so.  I may not designate a payment as a prepayment if I have not made all the
monthly payments due under the Note.

1. If the loan is prepaid in full during the first year, the maximum prepayment penalty may
not exceed the lesser of 3 months' interest or the balance of the first year's interest
2. If the loan is prepaid within three years for the purpose of refinancing the loan with
another financial institution, then an additional payment not in excess of 3 months'
interest may also be imposed.
3. No prepayment penalty is imposed on partial prepayments.

**I will not be required to pay a Prepayment charge or additional penalty if the Note is paid in
full after** _____ **Twelve** _____ **( 12 ) months from the date of the Note.**

Notwithstanding the foregoing, in the event of a full prepayment concurrent with a bona fide sale
of the Property to an unrelated third party after the first TWELVE (12) months of the term of the Note, no
prepayment penalty will be assessed. In that event, I agree to provide the Note Holder with evidence
acceptable to the Note Holder of such sale.

X Initials _R·R̸_

Prepayment Penalty Addendum - Massachusetts O/O - (5-PPP)
MortgageIT, Inc. 08/10/2006                    Page 1 of 2

The Note Holder will apply all prepayments to reduce the amount of principal that I owe under the Note. However, the Note Holder may apply my prepayment to the accrued and unpaid interest on the prepayment amount, before applying my prepayment to reduce the principal amount of the Note. If I make a partial prepayment, there will be no change in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.

If my Note is an Adjustable Rate Note, partial prepayments may reduce the amount of my monthly payment after the first interest rate Change Date following the partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

The Note Holder's failure to collect a prepayment charge at the time a prepayment is received shall not be deemed a waiver of such charge. Any prepayment charge not collected at the time the prepayment is received shall be payable on demand.

All other provisions of the Note are unchanged and remain in full force and effect.

**NOTICE TO BORROWER**

**Do not sign this Addendum before you read it. This Addendum provides for the payment of a prepayment charge if you wish to repay the loan prior to the date provided for repayment in the Note.**

ACKNOWLEDGMENT: I/we hereby acknowledge receiving this Addendum.

_____   (Seal)   _____   
ROBERT DESIMONE   Borrower   Date

_____   (Seal)   _____   
Borrower   Date

_____   (Seal)   _____   
Borrower   Date

_____   (Seal)   _____   
Borrower   Date

Prepayment Penalty Addendum - Massachusetts O/O - (S-PPP)   
Mortgage IT, Inc. 08/10/2006   Page 2 of 2

## Exhibit B



2009  00183362
Bk: 53826 Pg: 264   Doc: ASM
Page: 1 of 2   10/02/2009 10:28 AM

## ASSIGNMENT

Mortgage Electronic Registration Systems, Inc.

holder of mortgage from

Robert Desimone

to Mortgage Electronic Registration Systems, Inc.

dated January 30, 2007

recorded with Middlesex County (Southern District) Registry of Deeds
Book 48997, Page 1.   assigns said mortgage and the note and claim

Secured thereby to GMAC Mortgage, LLC, 1100 Virginia Drive, Fort Washington, PA 19034


In witness whereof the said Mortgage Electronic Registration Systems, Inc.

Has caused its corporate seal to be hereto affixed and these presents to be signed, in its name and behalf by

**Jeffrey Stephan
Vice President** _____ its _____

                                    Mortgage Electronic Registration Systems, Inc.

        Orlans Moran, PLLC              BY: _____
        P.O. Box 962169
        Boston, MA 02196               Jeffrey Stephan
                                       Vice President



STATE OF _____

COUNTY OF        Montgomery

                              aug. 25         , 2009

Identifier:_____2655    Doc Type:ASGNR

**Bk: 61524 Pg: 28**

# Middlesex South Registry of Deeds

Electronically Recorded Document

## Electronically Recorded Document

### This is the first page of the document - Do not remove

---

### Recording Information

| | |
|---|---|
| Document Number | : 71298 |
| Document Type | : ASM |
| Recorded Date | : April 02, 2013 |
| Recorded Time | : 09:19:40 AM |
| | |
| Recorded Book and Page | : 61524 / 28 |
| Number of Pages(including cover sheet) | : 2 |
| Receipt Number | : 1551919 |
| Recording Fee | : $75.00 |

**Middlesex South Registry of Deeds**
**Maria C. Curtatone, Register**
**208 Cambridge Street**
**Cambridge, MA 02141**
**617-679-6300**
**www.cambridgedeeds.com**

When Recorded Return To:
Indecomm Global Services
2925 Country Drive
St. Paul, MN 55117

 4597

**ASSIGNMENT**

<u>GMAC Mortgage, LLC</u>
Mortgagee of the mortgage from

Robert Desimone to <u>Mortgage Electronic Registration Systems, Inc. as nominee for MortgageIt Inc. its successors and assigns</u>
dated January 30, 2007 recorded with Middlesex County (Southern District) Registry of Deeds in Book 48997, Page 1 Document 2007 00030355 assigns said mortgage to <u>HSBC Bank USA, National Association as Trustee for Deutsche Alt-A Securities Mortgage Loan Trust, Series 2007-OA5, c/o Ocwen Loan Servicing LLC, 3451 Hammond Ave, Waterloo, IA 50702</u>

In witness whereof the said <u>GMAC Mortgage, LLC</u> has caused these presents to be signed, in its name and behalf by

<u>   William Long   </u> (name) its <u>   Authorized Officer   </u> (title) on this
day, the <u>  25th  </u> of <u>   March   </u>,2013,

GMAC Mortgage, LLC

BY: *William* 

Name. **William Long**

Title: **Authorized Officer**

STATE OF **Pennsylvania**

COUNTY OF **Montgomery**                                    **March 25**       , 2013

On this **25th** day of **March**      ,2013, before me, the undersigned notary public, personally appeared     **William Long**     as     **Authorized Officer**     , of GMAC Mortgage, LLC, of whom I have personal knowledge of identity, to be the person whose name is signed on the proceeding or attached document, and who acknowledged to me that he/she signed it voluntarily for its stated purpose as
     **Authorized Officer**     (title) for GMAC Mortgage, LLC.

*Mary Jo McDermott*   Mary Jo McDermott
Official Signature and Seal of Notary
My Commission Expires.

File No. 618.0171

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
MARY JO McDERMOTT, Notary Public
City of Philadelphia, Phila. County
My Commission Expires October 21, 2015

RE: 11 Old Village Road, Acton, MA 01720

+U03686942+

10301  3/28/2013  78544597/1

**Exhibit C**

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                      SUPERIOR COURT
                                                   CIVIL ACTION
                                                   NO. 10-1074

### ROBERT DE SIMONE AND MATINA DE SIMONE

#### vs.

### GMAC MORTGAGE, LLC, and others

### ORDERS

On October 22, 2012, this case came before the court for hearing on defendant, GMAC

Mortgage, LLC's, motion to dismiss a complaint for contempt and motion to dissolve an

injunction. At this hearing, the court also considered the plaintiffs, Robert and Matina

DeSimone's motion to reconsider an order issued on September 10, 2012, that vacated a stay

entered in this court after GMAC filed a bankruptcy petition. The facts of this case are set out in

the court's prior memoranda of decisions and orders on the defendants' motions for summary

judgment. After consideration of the parties' pleadings and argument, the court enters the

following orders.

1.   The DeSimones' motion to reconsider the September 10, 2012 order is DENIED. By

     order dated July 13, 2012, the Bankruptcy Court for the Southern District of New

     York issued an order which, among other things, provided relief from the automatic

     stay of actions pending in state court with respect to "actions initiated by . . . a

     borrower" in those states providing for non-judicial foreclosures, of which

     Massachusetts is one, "relating exclusively to the property that is the subject of the

     loan owned or serviced by [GMAC] for the purposes of . . . enjoining or precluding

     any foreclosure." This case is, in part, such a case. See Count I.

2. GMAC's motion to dissolve the injunction is ALLOWED. At the outset of this case
a temporary restraining order issued enjoining GMAC from foreclosing on the
DeSimone's home. On July 27, 2010, the court entered an order stating that the TRO
would remain in effect until further order of the court. However, on May 22, 2012,
the court issued a memorandum of decision and order which allowed GMAC's
motion for summary judgment on the two counts that asserted claims against it. The
order did not expressly state that the TRO was dissolved. Nonetheless, having found
that the two counts asserting claims against GMAC must be dismissed as a matter of
law, there is no basis for continuing injunctive relief. The court therefore orders that
the restraining order be dissolved. In order to provide the DeSimones with the
opportunity to appeal the decision on summary judgment dismissing their claim for
rescission (the claim on which the injunction was based), the court also orders that
final judgment enter as to Count I of the complaint as to all parties. (It cannot do the
same as to Count IV, as that count asks for monetary relief and therefore the
Bankruptcy Court's motion providing relief from stay does not apply to that count.)

3. GMAC's motion to dismiss the complaint for contempt is also ALLOWED. In that
complaint for contempt the DeSimones allege that GMAC noticed a foreclosure sale
of the mortgaged property on August 1, 2012 and this conduct violated the restraining
order which was still in effect. Whether that restraining order continued in effect
after GMAC's motion for summary judgment was allowed is a close question.
Certainly, it would have been better practice for GMAC specifically to have moved
for an order dissolving the restraining order before it began the steps necessary to
foreclose on the mortgaged property. However, before there is a finding of civil

contempt against a party there "must be a clear and unequivocal command and an

equally clear and undoubted disobedience." In light of the allowance of GMAC's

motion for summary judgment, the court concludes that the DeSimones cannot prove

an act of civil contempt by GMAC. The complaint for contempt therefore must be

dismissed.


Mitchell H. Kaplan
Justice of the Superior Court

Dated: October 22, 2012

Entered: October 23, 2012