# Exhibit V

SHERMAN SILVERSTEIN KOHL ROSE & PODOLSKY, P.A.
Jeffrey P. Resnick, Esquire
Leily Schoenhaus, Esquire
Fairway Corporate Center
4300 Haddonfield Road
Fairway Corporate Center - Suite 311
Pennsauken, New Jersey 08109
Telephone: (856) 662-0700
Facsimile: (856) 488-4744
*Attorneys for Plaintiffs Scott and Traci Jacobs, husband and wife, and Miriam Jacobs*

| | |
|---|---|
| SCOTT JACOBS AND TRACI JACOBS, husband and wife, and MIRIAM JACOBS<br><br>Plaintiffs,<br><br>v.<br><br>FRANK J. REED, III AND CHRISTINA A. REED, husband and wife,<br><br>Third -Party Plaintiffs,<br><br>v.<br><br>FIRST JERSEY APPRAISAL GROUP; ROBERT J. JONES; COMMERCE BANK, N.A.; JOHN DOES 1-10; AND JOHN DOE CORPORATIONS 1-10,<br><br>Third -Party Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION-BURLINGTON COUNTY<br><br>Docket No. BUR-L-1418-08<br><br>Civil Action<br><br>**NOTICE OF MOTION** |

To:    Matthew R. McCrink, Esquire
       McCrink, Kehler & McCrink
       McCrink, Kehler & McCrink Law Building
       475 Route 73 North
       West Berlin, New Jersey 08091-2003
       *Attorney for Defendants/ Third-Party Plaintiffs*
       *Frank J. Reed, III and Christina A. Reed*

**PLEASE TAKE NOTICE** that on Friday, June 12, 2009, plaintiffs Scott and Traci

Jacobs, husband and wife, and Miriam Jacobs, by and through their undersigned attorneys,

Sherman, Silverstein, Kohl, Rose & Podolsky, P.A., will move before the Honorable Karen L.

Suter, J.S.C., Burlington County Courthouse, 49 Rancocas Road, Mt. Holly, New Jersey 08060

at 9:00 AM, or as soon thereafter as counsel may be heard, for an Order granting Summary

Judgment pursuant to Rule 4:46-2.

**PLEASE TAKE FURTHER NOTICE** that plaintiffs shall rely upon the accompanying

Statement of Facts, Certification of Jeffrey P. Resnick, Esquire, Brief in Support of Motion for

Summary Judgment and Exhibits.

**PLEASE TAKE FURTHER NOTICE** that oral argument is waived unless timely

opposition is served and filed.

A proposed form of Order is attached hereto.

SHERMAN, SILVERSTEIN, KOHL,
ROSE & PODOLSKY, P.A.

DATE: _____5/8/09_____

_____
Jeffrey P. Resnick, Esquire
Leily Schoenhaus, Esquire
*Attorneys for Plaintiffs*
*Scott and Traci Jacobs, husband and wife,*
*and Miriam Jacobs*

SHERMAN SILVERSTEIN KOHL ROSE & PODOLSKY, P.A.
Jeffrey P. Resnick, Esquire
Leily Schoenhaus, Esquire
Fairway Corporate Center
4300 Haddonfield Road
Fairway Corporate Center - Suite 311
Pennsauken, New Jersey 08109
Telephone:  (856) 662-0700
Facsimile:  (856) 488-4744
*Attorneys for Plaintiffs Scott and Traci Jacobs, husband and wife, and Miriam Jacobs*

| | |
|---|---|
| SCOTT JACOBS AND TRACI JACOBS, husband and wife, and MIRIAM JACOBS | SUPERIOR COURT OF NEW JERSEY LAW DIVISION-BURLINGTON COUNTY |
| Plaintiffs, | |
| v. | Docket No.  BUR-L-1418-08 |
| | Civil Action |
| FRANK J. REED, III AND CHRISTINA A. REED, husband and wife, | |
| Third -Party Plaintiffs, | |
| v. | |
| FIRST JERSEY APPRAISAL GROUP; ROBERT J. JONES; COMMERCE BANK, N.A.; JOHN DOES 1-10; AND JOHN DOE CORPORATIONS 1-10, | |
| Third -Party Defendants. | |

## BRIEF IN SUPPORT OF PLAINTIFFS'
## MOTION FOR SUMMARY JUDGMENT

Plaintiffs Scott and Traci Jacobs, husband and wife, and Miriam Jacobs (collectively,

"plaintiffs"), by and through their undersigned attorneys, hereby file the following brief in

Support of the Motion for Summary Judgment for entry of judgment in plaintiffs' favor as to the

affirmative claim set forth in plaintiffs' Complaint and for dismissal with prejudice of Counts 1-6

of the Counterclaim filed by defendants Frank J. Reed, III and Christina A. Reed, husband and

wife (collectively "defendants") alleging claims of breach of contract, fraud, civil conspiracy and aiding and abetting fraud against plaintiffs.

## I.    **INTRODUCTION**

This matter arises out of a failed real estate transaction regarding real property situated at Block 3803, Lot 2, commonly referred to as 817 Matlack Drive, Moorestown, New Jersey 08057 (the "Property"). See Contract for Sale dated December 8, 2007, attached hereto as Exhibit "A." By Contract for Sale dated December 8, 2007 ("Contract"), plaintiffs Scott and Traci Jacobs entered into a contract to purchase the Property from defendants Frank J. Reed, III and Christina A. Reed, husband and wife ("defendants"). See Exhibit "A."

During the Attorney Review Period, a Rider to Contract for Sale (the "Rider") dated December 18, 2007 was executed. See Rider, attached hereto as Exhibit "B." Paragraph 1 of the Rider included Miriam Jacobs as an additional Buyer of the Property. See Exhibit "B" at ¶1. In addition, the Rider, among other things, contains the following provision:

> Paragraph 42 of the Contract (Additional Contract Provisions) shall be amended and restated as follows:
>
> > B. ...Buyer's obligation to purchase the property shall be contingent upon the Lender's appraisal being equal to or greater than the Purchase Price. In the event that the Lender's appraisal is less than the Purchase Price, the Buyer shall be entitled to cancel the Contract upon written notice to the Seller and Seller's agent on or before the Mortgage Commitment Date whereupon the deposit shall be returned to Buyer and neither party shall have any further liability or obligation to the other hereunder. See Exhibit "B" at ¶7.

The Rider also provides that the "Seller's sole and exclusive remedy in the event of Buyer's default under the Contract, shall be to retain the deposit as complete and liquidated

damages . . ..” See Exhibit “B” at ¶10.  The Contract provides for a Purchase Price of
$2,040,000.  See Exhibit “A” at ¶6.

    Consistent with their obligations, plaintiffs tendered a $50,000 deposit to B. T. Edgar &
Son (the “Escrow Holder”) to be placed into an interest bearing escrow account.  See Exhibit
“A” at ¶7.  Pursuant to the Contract and Rider, plaintiffs were to produce a Mortgage
Commitment on or before January 7, 2008.  See Exhibits “A” and “B.”  The Contract further
provides that “[i]n the event the mortgage commitment is not delivered . . ., this Contract shall be
deemed null and void.  In that event, the deposit monies paid by the Buyer, shall be returned to
the Buyer unless failure to obtain the mortgage commitment is the result of the Buyer’s
negligence or intentional conduct or failure to diligently pursue the mortgage application.”  See
Exhibit “A” at ¶9.

    Plaintiffs sought to obtain a mortgage from third party defendant Commerce Bank, N.A.
(the “Lender”).  Plaintiffs completed a loan application and otherwise acted in accordance with
the Lender’s requirements necessary to be considered for a loan.  As part of the loan process, the
Lender retained an appraiser for the Property.  See  Lender’s December 18, 2007 letter attached
as Exhibit “C.”  Neither plaintiffs, their real estate broker, nor their attorney knew that the
appraisal was to take place until after the appraisal was conducted.

    On January 4, 2008, plaintiffs’ counsel received the Statement of Credit Denial
Termination or Change (“Lender’s Denial”) from the Lender’s senior loan officer advising that
plaintiffs’ request for a loan was rejected.  A copy of the Lender’s Denial is attached as Exhibit
“D.”  The Lender’s Denial set forth the following reasons for not being able to provide financing,
“value or type of collateral not sufficient/unacceptable property.”  See Exhibit “D.”  Plaintiffs
also received a copy of the Appraisal of Real Property (the “Appraisal”) prepared for the Lender

by its appraiser, third party defendant Robert J. Jones, Jr. ("Jones"), establishing the appraised value for the property at $1,950,000, which is less than the Purchase Price. A copy of the Appraisal is attached as Exhibit "E." Receipt of the copy of the Appraisal was the first time plaintiffs or their representatives learned that an appraisal of the Property took place. Plaintiffs were further advised by their Lender that a second "Field Review" occurred, following the Appraisal, to confirm the appraised value; the Field Review was consistent with the appraised value of $1,950,000. See Lender's Loan Comments, attached hereto as Exhibit "F."

On January 7, 2008, which is within the time permitted under the Contract to cancel the transaction, plaintiffs' counsel sent defendants' counsel a letter providing him with the Lender's Denial, together with the Lender's Appraisal, and notice of termination of the Contract. See January 7, 2008 letter, attached hereto as Exhibit "G." Plaintiffs' counsel asked for written authorization allowing the Deposit held by the Escrow Holder to be released to plaintiffs pursuant to the Contract. See Exhibit "G." Defendants refused to authorize the release of the Deposit, contending that Jones' Appraisal was "incorrect." See January 10, 2008 letter, attached hereto as Exhibit "H."

Plaintiffs again asked for a return of the Deposit explaining that any issues defendants had with the Appraisal were solely between the defendants and Mr. Jones. See January 28, 2008 and February 11, 2008 letters attached as Exhibit "I." Defendants still refused to release the Deposit monies. See February 14, 2008 letter attached as Exhibit "J." The Escrow Holder has refused to release the Deposit monies unless directed by defendants to do so.

On or about May 7, 2008, plaintiffs filed suit seeking return of the $50,000 deposit. See Complaint, attached hereto as Exhibit "K." In response to plaintiffs' Complaint, defendants allege that plaintiffs breached the contract and conspired with Mr. Jones to cause defendants

monetary loss, among other things . <u>See</u> defendants' Answer, Counterclaim and Third-Party Complaint, attached hereto as Exhibit "L."

On December 1, 2008, the deposition of Mr. Jones was taken. <u>See</u> relevant portions of the deposition transcript of Robert J. Jones, Jr., attached hereto as Exhibit "M." Mr. Jones testified that he never had any communications with the plaintiffs or plaintiffs' representatives. <u>See</u> Exhibit "M." Mr. Jacobs states that he never had any communications or made any agreement, explicit or implicit, with his wife, co-plaintiff Traci Jacobs, or his mother, co-plaintiff Miriam Jacobs in connection with depriving defendants of the benefit of the sale of the real property. <u>See</u> Affidavit of Scott Jacobs attached hereto as Exhibit "N."

## II.   <u>LEGAL STANDARD</u>

New Jersey Court Rule 4:46-2 provides that summary judgment is to be granted when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." The Supreme Court has instructed as follows: "[w]hen deciding a motion for summary judgment…, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials…, when viewed in the light most favorable to the non-moving party… are sufficient to permit a rational fact finder to resolve the alleged disputed issue in favor of the non-moving party." <u>Brill v. Guardian Life Ins. Co. of America</u>, 142 N.J. 520, 523 (1995). The Court in <u>Brill</u> reasoned that "to send a case to trial, knowing that a rational jury can reach but one conclusion, is indeed worthless and will serve no useful purpose." <u>Id.</u> at 541 (citations omitted).

Plaintiffs now move the Court to grant summary judgment as there can be no dispute that plaintiffs acted in compliance with the duties imposed under the Contract and Rider.

### III.    ARGUMENT

A.    **Summary Judgment Should be Granted on Plaintiffs' Claim for Breach of Contract and Defendants' Counterclaim for Breach of Contract Should be Dismissed as no Issues of Fact Exist Regarding Plaintiffs' Compliance With the Contract Terms**

Under New Jersey law, the terms of a contract must be given their plain and ordinary meaning. Nester v. O'Donnell, 301 N.J. Super. 198, 210 (App. Div. 1997). The Appellate Division has explained that the "judicial function when interpreting a contract is to accord the language a rational meaning in keeping with the purpose expressed." Liqui-Box Corp. v. Estate of Elkman, 238 N.J. Super. 588, 599 (App. Div. 1990). Plaintiffs terminated the Contract based upon two provisions of the Contract. First, paragraph 9 of the Contract, which allows plaintiffs to cancel the sale in the event a mortgage commitment is not obtained; and second, paragraph 7 of the Rider which provides that plaintiffs' purchase of the property is contingent upon the Lender's appraisal being equal to or greater than the Purchase Price.

First, plaintiffs properly terminated the agreement because they were denied financing. Plaintiffs applied for financing with third party defendant Commerce Bank, N.A. and were advised on January 4, 2008 that the Lender was not providing financing because the "value or type of collateral [was] not sufficient/unacceptable property." See Exhibit "D." The Appellate Division has held that proposed buyers could cancel a real estate sale contract due to inability to obtain mortgage financing, where the contract was expressly contingent upon obtaining mortgage financing and provided that either the buyers or the sellers could cancel the contract if a written mortgage commitment was not received within 30 days of the signing of the agreement. Davis v. Strazza, 380 N.J. Super. 476, 483-84 (App. Div. 2005). The Appellate Division

affirmed the trial court decision granting the buyers' motion for summary judgment because the facts established that the buyers did not breach the contract as they acted in good faith in applying for mortgage financing and, thereafter, endeavoring to comply with the condition imposed by the lender in the mortgage commitment. Id.

Defendants' Counterclaim at Counts 1 though 3 allege that the individual plaintiffs, Scott Jacobs, Traci Jacobs and Miriam Jacobs, respectively, breached the Contract for Sale by "intentionally or negligently failing to deliver a mortgage commitment by January 7, 2008" and "by failing to close by February 7, 2008." See Exhibit "L" at Counts 1-3. Defendants' argument is without merit. As stated above, pursuant to the terms of the Contract and Rider, plaintiffs were required to use best efforts to produce a Mortgage Commitment on or before January 7, 2008, or else the deal would be voided. The plaintiffs complied with every request of the Lender but, due to the appraisal obtained by the Lender, could not obtain a mortgage commitment. Thus, on this ground alone, summary judgment should be granted in favor of plaintiffs.

Even if the Lender did agree to provide a mortgage, plaintiffs had the right to cancel the agreement due to the value of the house assigned by the appraiser. To that end, the Rider contains the following provision:

> 7. Paragraph 42 of the Contract (Additional Contract Provisions) shall be amended and restated as follows:
>
>> B. ...Buyer's obligation to purchase the property shall be contingent upon the Lender's appraisal being equal to or greater than the Purchase Price. In the event that the Lender's appraisal is less than the Purchase Price, the Buyer shall be entitled to cancel the Contract upon written notice to the Seller and Seller's agent on or before the Mortgage Commitment Date whereupon the deposit shall be returned to Buyer and neither party shall have any further liability or obligation to the other hereunder.
>
> See Exhibit "B" at ¶7.

7

On January 4, 2008, plaintiffs' counsel received a facsimile transmission from the Lender's senior loan officer providing a Statement of Credit Denial Termination or Change ("Lender's Denial") setting forth the following reasons for not being able to provide financing, "value or type of collateral not sufficient/unacceptable property." See Exhibit "D." Plaintiffs also received a copy of the Appraisal, prepared Jones, establishing the appraised value for the property at $1,950,000, which is less than the Purchase Price. See Exhibit "E." Plaintiffs were further advised by their Lender that a second "Field Review" occurred, following the Appraisal, to confirm the appraised value; the Field Review was consistent with the appraised value of $1,950,000. See Exhibit "F."

Plaintiffs sought to obtain a mortgage and tendered the $50,000 deposit to the Escrow Holder and, thus, performed all their obligations under the Contract and Rider. Neither the Contract nor the Rider imposed any further duty on plaintiffs. As such, defendants cannot establish breach. In contrast, defendants are in breach of contract by failing to allow release of the deposit amount to plaintiffs. As stated above, the Contract provided that plaintiffs would be entitled to terminate the Contract of Sale in the event the Property was appraised at less than the purchase price. Thus, consistent with their entitlement under the Contract, upon receipt of the Lender's Denial and Jones' Appraisal, plaintiffs notified defendants of their intent to cancel the sale and requested a return of the Deposit. Despite the Contract's clear language providing for a return of the Deposit to the plaintiffs, defendants have wrongfully refused to authorize the release of the Deposit.

Based on the foregoing, and in light of the standard set forth in Brill, plaintiffs are entitled to judgment in their favor as to their claim for breach of contract as well as dismissal of Counts 1-3 of defendants' Counterclaim alleging breach of contract against the individual

plaintiffs as no issue of fact exists as to plaintiffs' compliance with the duties imposed under the

Contract and Rider.

**B.    Summary Judgment Should be Granted in Plaintiffs' Favor as to Defendants' Claims For Fraud, Civil Conspiracy and Aiding and Abetting Fraud**

Plaintiffs are entitled to summary judgment as to Counts 4-6 of defendants'

Counterclaim, which assert claims of fraud, civil conspiracy and aiding and abetting fraud

against the individual plaintiffs, Scott Jacobs, Traci Jacobs and Miriam Jacobs, respectively. See

Exhibit "L" at Counts 4-6. Specifically, the facts on record, when viewed in the light most

favorable to the defendants, do not support fraud, civil conspiracy and aiding and abetting fraud

claims against the plaintiffs. As will be explained below, defendants have failed to establish the

elements required for each claim and, as such, Counts 4-6 of defendants' Counterclaim must be

dismissed.

**1.    Defendants Have Failed to Establish Fraud**

The New Jersey Supreme Court has defined fraud as: (1) a material misrepresentation of

a presently existing or past fact; (2) knowledge or belief by the proponent of its falsity; (3) an

intention that the other party rely on it; (4) reasonable reliance by the other party; and (5)

resulting damages. Banco Popular North America v. Gandi, 184 N.J. 161, 172-73 (2005).

Punitive damages may only be awarded where the plaintiff proves, by clear and convincing

evidence, the existence of actual malice or a wanton and willful disregard for the rights of

another. N.J.S.A. 2A:15-5.12. Rule 4:5-8(a) provides that allegations of fraud must include

"particulars of the wrong, with dates and items if necessary. . . [and] [m]alice, intent, knowledge,

and other condition of mind of a person may be alleged generally."

Here, defendants allege that plaintiffs fraudulently deprived defendants of the benefit of the sale of the Property by "dismissing the errors found in the appraisal; failing to have the initial appraisal reviewed and revised; ensuring that the contract for sale would be rendered unenforceable, thereby ensuring defendants would not receive the benefit of the performance of the contract; and refusing to acknowledge the second, accurate appraisal." See Exhibit "L." Defendants further allege that they relied on plaintiffs' false representations in "allowing them to be relieved of their obligations regarding the sale of the property." See Exhibit "L."

As an initial matter, defendants fail to identify the alleged false representations of fact made by plaintiffs and fails to comply with the heightened pleading requirements of Rule 4:5-8(a). On the contrary, plaintiffs have not made any representation of fact that was false. Rather, the facts reveal that plaintiffs acted in accordance with their obligations under the Contract and Rider; namely, they sought to obtain a mortgage and tendered the $50,000 deposit to the Escrow Holder. When the Property was appraised at less than the purchase price, plaintiffs notified defendants of their intent to terminate the sale. Neither the Contract nor the Rider imposed any further duty on plaintiffs in connection with the mortgage contingency.

Second, there are no facts to support the allegation that plaintiffs intended to induce defendants' reliance on any false representation. Rather, plaintiffs simply acted in accordance with the provisions of the Contract and Rider. As stated above, the Contract provided that plaintiffs would be entitled to cancel in the event the Property was appraised at less than the purchase price. The Property was appraised at less than the purchase price; thus, pursuant to the Contract, plaintiffs cancelled the sale and requested a return of the Deposit.

Finally, defendants' request for punitive damages is unwarranted as the record is devoid of any evidence supporting the existence of actual malice or a wanton and willful disregard for

the rights of the defendants, as required under N.J.S.A. 2A:15-5.12. On the contrary, the record reveals that plaintiffs' acted in accordance with their duties and obligations under the Contract and Rider. In addition, the Rider includes a liquidated damages clause which expressly limits defendants' remedy for default to retaining the Deposit. See Exhibit "B" at ¶10. Therefore, pursuant to the language of the Rider, defendants' damages, if any, must be limited to the amount of the Deposit. As such, plaintiffs' claim of fraud and request for punitive damages must fail.

### 2. Defendants Have Failed to Establish Civil Conspiracy

Civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict wrong against or injury upon another, and an overt act that results in damage." Morgan v. Union County Bd. of Chosen Freeholders, 268 N.J. Super. 337, 364 (App. Div. 1993). Liability requires an understanding of the general objectives of the scheme as well as an explicit or implicit agreement to further its objectives. Id. The essence of the claim is not the unlawful agreement, but the underlying wrong which, absent the conspiracy, would give a right of action. Id. at 365.

Here, defendants allege that the plaintiffs "engaged in a civil conspiracy to deprive defendants of the benefit of the sale of the real property . . . ." See Exhibit "L" at Counts 4-6. Defendants' claim for civil conspiracy fails for the same reasons stated with regard to the fraud claim as there is no underlying wrong. Even assuming an underlying wrong was present, there are no facts supporting the allegation that the plaintiffs entered into an agreement to commit a an unlawful act, or lawful act by unlawful means. See Exhibit "N."

Furthermore, defendants' allegation that plaintiffs conspired with third-party defendants, First Jersey Appraisal Group and Robert J. Jones, Jr., to defraud defendants out of the benefit of the Contract is likewise unsupported by the evidence.  See Exhibit "L."  At his deposition, Mr. Jones testified that he never had any type of communication with the plaintiffs, plaintiffs' attorney or plaintiffs' broker.  Specifically, Mr. Jones testified as follows:

> Q:    To this date, have you ever communicated with Scott, Traci or Miriam Jacobs?
>
> A:    No, sir.
>
> Q:    Have you ever received any communications from them, whether it be oral or written?
>
> A:    No, sir.
>
> Q:    How about their broker in this . . ., have you ever had any communications with her, be it oral or written, concerning this transaction?
>
> A:    To the best of my recollection, no.
>
> Q:    How about the Jacobs' attorney in this matter, for the transaction, Edward Hovatter, have you had any conversations with him?
>
> A:    No.
>
> Q:    He is with the Law Firm Sherman, Silverstein, Kohl, Rose and Podolsky, have you ever had any discussions with anyone from that law firm concerning this transaction?
>
> A:    No, sir.
>
> See Exhibit "M" at 100:22-101:16.

There have never been any communications between plaintiffs and Mr. Jones, let alone an agreement to inflict a wrong on the defendants.  Therefore, assuming an underlying wrong exists here, absent any communication between the plaintiffs and Mr. Jones, there can be no

conspiracy. There is no basis for liability for civil conspiracy. As such, defendants' claim of civil conspiracy inevitably fails.

### 3.    Defendants Have Failed to Establish Aiding and Abetting Fraud

The following elements are required to impose liability for aiding and abetting fraud:

> (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation. State of NJ v. Qwest Communications International, Inc., 387 N.J. Super. 469, 484-85 (App. Div. 2006) (quoting Tarr v. Ciasulli, 181 N.J. 70, 84-85 (2004)).

In Qwest, the Appellate Division adopted the definition set forth in the Restatement which explains that "it is essential that the conduct of the actor be in itself tortious [and] [o]ne who innocently, rightfully and carefully does an act that has the effect of furthering tortious conduct . . . of another is not for that reason subject to liability." Id. at 484 (quoting Restatement §876(b)). Further, the Restatement provides that "mere common plan, design or even express agreement is not sufficient for liability in itself," and the standard requires more than mere knowledge or implementation. Id. Rather, where both parties engage in acts of tortious character in carrying it into execution, each becomes subject to liability for the acts of the other. Id.

Defendants cannot establish the fundamental requisites of aiding and abetting fraud as the facts do not support such claim. Specifically, defendants do not allege and the record is devoid of any facts that supports the contention that plaintiffs aided and advised the third-party defendants in undertaking any tortious conduct. Further, the record does not reveal any tortious conduct on the part of the plaintiffs which would give rise to a claim of aiding and abetting. Thus, defendants' claim for aiding and abetting fraud fails.

Accordingly, this Court must enter summary judgment in plaintiffs' favor and against

defendants as to Counts 4-6 of defendants' Counterclaim alleging claims of fraud, civil

conspiracy and aiding and abetting fraud against Scott Jacobs, Traci Jacobs and Miriam Jacobs.

Alternatively, in the event the Court finds liability on the part of plaintiffs, pursuant to paragraph

10 of the Rider,[1] defendants' damages, if any, must be limited to the amount of the Deposit.

## IV.   CONCLUSION

For all the foregoing reasons, plaintiffs respectfully request this Court to grant summary

judgment on plaintiffs' affirmative claim and to dismiss Counts 1-6 of defendants' Counterclaim.

Respectfully submitted,

SHERMAN, SILVERSTEIN, KOHL,
ROSE & PODOLSKY, P.A.

DATE: ___5|8|09___

_____
Jeffrey P. Resnick, Esquire
Leily Schoenhaus, Esquire
Attorneys for Plaintiffs
Scott and Traci Jacobs, husband and wife,
and Miriam Jacobs

---

[1]   Paragraph 10 provides: "[t]he Buyer and Seller agree that if the Buyer defaults under the Contract, the Seller's damages will be difficult to determine and that the deposit represents a fair estimate of the Seller's damages. The Seller's sole and exclusive remedy in the event of Buyer's default under the Contract, shall be to retain the deposit as complete and liquidated damages for the Buyer's default hereunder." See Exhibit "B" at ¶10.

SHERMAN SILVERSTEIN KOHL ROSE & PODOLSKY, P.A.
Jeffrey P. Resnick, Esquire
Leily Schoenhaus, Esquire
Fairway Corporate Center
4300 Haddonfield Road
Fairway Corporate Center - Suite 311
Pennsauken, New Jersey 08109
Telephone: (856) 662-0700
Facsimile: (856) 488-4744
*Attorneys for Plaintiffs Scott and Traci Jacobs, husband and wife, and Miriam Jacobs*

| | |
|---|---|
| SCOTT JACOBS AND TRACI JACOBS, husband and wife, and MIRIAM JACOBS | SUPERIOR COURT OF NEW JERSEY LAW DIVISION-BURLINGTON COUNTY |
| Plaintiffs, | |
| v. | Docket No. BUR-L-1418-08 |
| | Civil Action |
| FRANK J. REED, III AND CHRISTINA A. REED, husband and wife, | |
| Third -Party Plaintiffs, | |
| v. | |
| FIRST JERSEY APPRAISAL GROUP; ROBERT J. JONES; COMMERCE BANK, N.A.; JOHN DOES 1-10; AND JOHN DOE CORPORATIONS 1-10, | |
| Third -Party Defendants. | |

## STATEMENT OF MATERIAL FACTS IN SUPPORT
## OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Pursuant to R. 4:46-2(a), plaintiffs submit the following Statement of Material Facts in

support of plaintiffs' Motion for Summary Judgment.

1. This matter arises out of a failed real estate transaction regarding real property situated at

    Block 3803, Lot 2, commonly referred to as 817 Matlack Drive, Moorestown, New

    Jersey 08057 (the "Property"). See Contract for Sale dated December 8, 2007, attached

    hereto as Exhibit "A."

2.  By Contract for Sale dated December 8, 2007 ("Contract"), plaintiffs Scott and Traci Jacobs entered into a contract to purchase the Property from defendants Frank J. Reed, III and Christina A. Reed, husband and wife ("defendants").  See Exhibit "A."

3.  During the Attorney Review Period, a Rider to Contract for Sale (the "Rider") dated December 18, 2007 was executed.  See Rider, attached hereto as Exhibit "B."

4.  Paragraph 1 of the Rider included Miriam Jacobs as an additional Buyer of the Property. See Exhibit "B" at ¶1.

5.  In addition, the Rider, among other things, contains the following provision:

> Paragraph 42 of the Contract (Additional Contract Provisions) shall be amended and restated as follows:
>
>> B.  ...Buyer's obligation to purchase the property shall be contingent upon the Lender's appraisal being equal to or greater than the Purchase Price.  In the event that the Lender's appraisal is less than the Purchase Price, the Buyer shall be entitled to cancel the Contract upon written notice to the Seller and Seller's agent on or before the Mortgage Commitment Date whereupon the deposit shall be returned to Buyer and neither party shall have any further liability or obligation to the other hereunder.
>
> See Exhibit "B" at ¶7.

6.  The Rider also provides that the "Seller's sole and exclusive remedy in the event of Buyer's default under the Contract, shall be to retain the deposit as complete and liquidated damages . . .."  See Exhibit "B" at ¶10.

7.  The Contract provides for a Purchase Price of $2,040,000.  See Exhibit "A" at ¶6.

8.  Consistent with their obligations, plaintiffs tendered a $50,000 deposit to B. T. Edgar & Son (the "Escrow Holder") to be placed into an interest bearing escrow account.  See Exhibit "A" at ¶7.

9.  Pursuant to the Contract and Rider, plaintiffs were to produce a Mortgage Commitment on or before January 7, 2008.  See Exhibits "A" and "B."

4

10. The Contract further provides that "[i]n the event the mortgage commitment is not delivered . . ., this Contract shall be deemed null and void.  In that event, the deposit monies paid by the Buyer, shall be returned to the Buyer unless failure to obtain the mortgage commitment is the result of the Buyer's negligence or intentional conduct or failure to diligently pursue the mortgage application."  See Exhibit "A" at ¶9.

11. Plaintiffs sought to obtain a mortgage from third party defendant Commerce Bank, N.A. (the "Lender").

12. Plaintiffs completed a loan application and otherwise acted in accordance with the Lender's requirements necessary to be considered for a loan.

13. As part of the loan process, the Lender retained an appraiser for the Property.  See Lender's December 18, 2007 letter attached as Exhibit "C."

14. Neither plaintiffs, their real estate broker, nor their attorney knew that the appraisal was to take place until after the appraisal was conducted.

15. On January 4, 2008, plaintiffs' counsel received the Statement of Credit Denial Termination or Change ("Lender's Denial") from the Lender's senior loan officer advising that plaintiffs' request for a loan was rejected.  A copy of the Lender's Denial is attached as Exhibit "D."

16. The Lender's Denial set forth the following reasons for not being able to provide financing, "value or type of collateral not sufficient/unacceptable property."  See Exhibit "D."

17. Plaintiffs also received a copy of the Appraisal of Real Property (the "Appraisal") prepared for the Lender by its appraiser, third party defendant Robert J. Jones, Jr. ("Jones"), establishing the appraised value for the property at $1,950,000 which is less than the Purchase Price.  A copy of the Appraisal is attached as Exhibit "E."

18. Receipt of the copy of the Appraisal was the first time plaintiffs or their representatives learned that an appraisal of the Property took place.

19. Plaintiffs were further advised by their Lender that a second "Field Review" occurred, following the Appraisal, to confirm the appraised value; the Field Review was consistent with the appraised value of $1,950,000. See Lender's Loan Comments, attached hereto as Exhibit "F."

20. On January 7, 2008, which is within the time permitted under the Contract to cancel the transaction, plaintiffs' counsel sent defendants' counsel a letter providing him with the Lender's Denial, together with the Lender's Appraisal, and notice of termination of the Contract. See January 7, 2008 letter, attached hereto as Exhibit "G."

21. Plaintiffs' counsel asked for written authorization allowing the Deposit held by the Escrow Holder to be released to plaintiffs pursuant to the Contract. See Exhibit "G."

22. Defendants refused to authorize the release of the Deposit, contending that Jones' Appraisal was "incorrect." See January 10, 2008 letter, attached hereto as Exhibit "H."

23. Plaintiffs again asked for a return of the Deposit explaining that any issues defendants had with the Appraisal were solely between the defendants and Mr. Jones. See January 28, 2008 and February 11, 2008 letters attached as Exhibit "I."

24. Defendants still refused to release the Deposit monies. See February 14, 2008 letter attached as Exhibit "J."

25. The Escrow Holder has refused to release the Deposit monies unless directed by defendants to do so.

26. On or about May 7, 2008, plaintiffs filed suit seeking return of the $50,000 deposit. See Complaint, attached hereto as Exhibit "K."

27. In response to plaintiffs' Complaint, defendants allege that plaintiffs breached the contract and conspired with Mr. Jones to cause defendants monetary loss, among other

6

things . See defendants' Answer, Counterclaim and Third-Party Complaint, attached hereto as Exhibit "L."

28. On December 1, 2008, the deposition of Mr. Jones was taken. See relevant portions of the deposition transcript of Robert J. Jones, Jr., attached hereto as Exhibit "M."

29. Mr. Jones testified that he never had any communications with the plaintiffs or plaintiffs' representatives. See Exhibit "M."

30. Mr. Jacobs states that he never had any communications or made any agreement, explicit or implicit, with his wife, co-plaintiff Traci Jacobs, or his mother, co-plaintiff Miriam Jacobs in connection with depriving defendants of the benefit of the sale of the real property. See Affidavit of Scott Jacobs attached hereto as Exhibit "N."

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: _5/8/09_ 

Jeffrey P. Resnick

## CERTIFICATE OF SERVICE

I, Jeffrey P. Resnick, Esquire, hereby certify that a true and correct copy of plaintiffs' Notice

of Motion for Summary Judgment, Statement of Material Facts in support of plaintiffs' Motion for

Summary Judgment, Brief in support of plaintiff's Motion for Summary Judgment, Certification of

Jeffrey P. Resnick and Exhibits, and Proposed Order was served on the following via United States

First class mail:

Matthew R. McCrink, Esquire
McCrink, Kehler & McCrink
McCrink, Kehler & McCrink Law Building
475 Route 73 North
West Berlin, New Jersey 08091-2003
*Attorney for Third-Party Defendants*

Steven H. Doto, Esquire
Schnader Harrison Segal & Lewis LLP
Woodland Falls Corporate Park
220 Lake Drive East, Suite 200
Cherry Hill, New Jersey 08002-1165
*Attorneys for Commerce Bank*

Donna Adelsberger, Esquire
Donna Adelsberger & Associates, P.C.
6 Royal Avenue
P.O. Box 530
Glenside, PA 19038-0530

Raymond R. Wittekind, Jr., Esquire
O'Connor Kimball LLP
Two Penn Center Plaza, Suite 1100
15th and J.F.K. Boulevard
Philadelphia, PA 19102

SHERMAN, SILVERSTEIN, KOHL,
ROSE & PODOLSKY, P.A.

DATE:  May 8, 2009

Jeffrey P. Resnick, Esquire
Attorneys for Plaintiffs

SHERMAN SILVERSTEIN KOHL ROSE & PODOLSKY, P.A.
Jeffrey P. Resnick, Esquire
Leily Schoenhaus, Esquire
Fairway Corporate Center
4300 Haddonfield Road
Fairway Corporate Center - Suite 311
Pennsauken, New Jersey 08109
Telephone: (856) 662-0700
Facsimile: (856) 488-4744
Attorneys for Plaintiffs Scott and Traci Jacobs, husband and wife, and Miriam Jacobs

| | | |
|---|---|---|
| SCOTT JACOBS AND TRACI JACOBS, husband and wife, and MIRIAM JACOBS | : | SUPERIOR COURT OF NEW JERSEY LAW DIVISION-BURLINGTON COUNTY |
| Plaintiffs, | : | |
| v. | : | Docket No. BUR-L-1418-08 |
| | : | Civil Action |
| FRANK J. REED, III AND CHRISTINA A. REED, husband and wife, | : | |
| Third -Party Plaintiffs, | : | |
| v. | : | |
| FIRST JERSEY APPRAISAL GROUP; ROBERT J. JONES; COMMERCE BANK, N.A.; JOHN DOES 1-10; AND JOHN DOE CORPORATIONS 1-10, | : | |
| Third -Party Defendants. | : | |

## CERTIFICATION OF JEFFREY P. RESNICK, ESQUIRE IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

I, Jeffrey P. Resnick, of full age, hereby certify as follows:

1. I am an attorney at law in the State of New Jersey in good standing and a Shareholder with the law firm of Sherman, Silverstein, Kohl, Rose & Podolsky, P.A., attorneys for plaintiffs Scott and Traci Jacobs, husband and wife, and Miriam Jacobs (collectively "plaintiffs").

2. I am familiar with the facts and circumstances in the above-referenced case by way of my representation of plaintiffs and I am authorized to make this Certification in support of plaintiffs' Motion for Summary Judgment.

3. I attest that the documents attached hereto are true and genuine.

4. Attached hereto as Exhibit "A" is a true and complete copy of the Contract for Sale dated December 8, 2007, between plaintiffs and defendants.

5. Attached hereto as Exhibit "B" is a true and complete copy of the Rider to Contract for Sale dated December 18, 2007.

6. Attached hereto as Exhibit "C" is a true and complete copy of the Lender's December 17, 2008 letter.

7. Attached hereto as Exhibit "D" is a true and complete copy of the Statement of Credit Denial Termination or Change from third party defendant Commerce Bank, N.A.

8. Attached hereto as Exhibit "E" is a true and complete copy of the Appraisal prepared for the Lender by third party defendant Robert J. Jones, Jr. ("Jones").

9. Attached hereto as Exhibit "F" is a true and complete copy of the Lender's Loan Comments.

10. Attached hereto as Exhibit "G" is a true and complete copy of plaintiffs' counsel's letter to defendants' counsel dated January 7, 2008.

11. Attached hereto as Exhibit "H" is a true and complete copy of defendants' counsel's letter to plaintiffs' counsel dated January 10, 2008.

12. Attached hereto as Exhibit "I" is a true and complete copy of plaintiffs' counsel's letters to defendants' counsel dated January 28, 2008 and February 11, 2008.

13. Attached hereto as Exhibit "J" is a true and complete copy of defendants' counsel's letter to plaintiffs' counsel dated February 14, 2008.

14. Attached hereto as Exhibit "K" is a true and complete copy of plaintiffs' Complaint.

15. Attached hereto as Exhibit "L" is a true and complete copy of the defendants' Answer, Counterclaim and Third-Party Complaint.

16. Attached hereto as Exhibit "M" is a true copy of relevant portions of the deposition transcript of Robert J. Jones, Jr.

17. Attached hereto as Exhibit "N" is a true and complete copy of the Affidavit of Scott Jacobs.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: _____5\8\09_____                _____
                                                    Jeffrey P. Resnick

# EXHIBIT A

Standard Form of Real Estate Sales Contract adopted by the Burlington Camden County Association of REALTORS® and recommended for use only when (1) A Listing Agreement has been signed by Seller, and (2) the real estate being sold involves a one-to-four family residential property. This form has been certified by the Attorney General to be in compliance with the Plain Language Law. Approval of a consumer contract by the Attorney General only means that simple, understandable and easily readable language is used. It is not an approval of the contract's terms or legality.

# CONTRACT FOR SALE OF A ONE-TO-FOUR FAMILY RESIDENTIAL PROPERTY

**THIS IS A LEGALLY BINDING CONTRACT THAT WILL BECOME FINAL IN THREE BUSINESS DAYS. DURING THIS PERIOD YOU MAY CHOOSE TO CONSULT AN ATTORNEY WHO CAN REVIEW AND CANCEL THIS CONTRACT.   SEE SECTION ON ATTORNEY REVIEW FOR DETAILS.**

**THIS CONTRACT FOR SALE** has been prepared on the __8th__ day of _____December_____, __2007__

**BETWEEN** _____

Frank J. Reed 3rd & Christina A. Reed _____ the Seller(s)

Whose address is _____ 817 Matlack Drive, Moorestown, NJ 08057 _____ and

_____ Scott Jacobs and Traci Jacobs _____ the Buyer(s)

Whose address is _____ 350 Tom Brown Road, Moorestown, NJ 08057 _____

## TABLE OF CONTENTS

1  Attorney Review
2  Commencement of Attorney Review
3  Notices and Fax Transmission
4  Sale, Purchase and Property
5  Personal Property and Fixtures
6  Purchase Price/Manner of Payment
7  Deposit Monies
8  Sufficient Assets
9  Mortgage Contingency, Placement Fee (Points),Commitment Fee
10. Inspection by Lenders,, Surveyors: Certifications & Repairs
11  Flood Areas
12  Possession, Occupancy and Tenancies
13  Dates and Time for Performance
14  Settlement Time and Place
15  Settlement Costs and Money Adjustments
16  Deed and Other Documents Required for Settlement
17  Certificate of Occupancy and Zoning Compliance
18  Condominium/Homeowners Association Documents
19  Quality and Insurability of Title
20  Condition of Property
21  Seller's Warranty and Pre-Settlement Inspection
22  Seller's Representation

23  Home Inspection and Reports
24  Infestation and/or Damage by Wood Boring Insects
25  Radon Information
26  Lead-Based Paint Document Acknowledgment
27  Lead-Based Paint and/or Lead-Based Paint Hazard Contingency Clause
28  Notice of Off-Site Conditions
29  Airport Safety Zone
30  Megan's Law Statement
31  Dispute Between Seller and Buyer over Deposit
32  Failure of Buyer or Seller to Settle
33  Brokerage Fee
34  Seller not Liable to Buyer after Settlement
35  Risk of Loss
36  No Reliance on Others
37  Consumer Information Statement Acknowledgment
38  Declaration of Licensee
39  No Assignment of Recording
40  Entire Contract, No Oral Representations
41  Binding on Successors
42  Additional Contract Provisions
43  Acknowledgment of Terms of Contract

## 1.  ATTORNEY REVIEW:

**A.   Study by Attorney:**

The Buyer or Seller may choose to have an attorney study this Contract. If an attorney is consulted, the attorney must complete his or her Review of the Contracts within a three-day period. This Contract will be legally binding at the end of this three-day period unless an attorney for the Buyer or the Seller reviews and disapproves of this Contract.

**B.   Counting the Time:**

You count the three days from the date of delivery of the signed Contract to the Buyer and Seller. You do not count Saturdays, Sundays or legal holidays. The Buyer and the Seller may agree in writing to extend the three-day period for attorney review

**C.   Notice of Disapproval:**

If an attorney for the Buyer or the Seller reviews and disapproves of the Contract, the attorney must notify the REALTOR(S)® and the other party named in this Contract within the three-day period. Otherwise, this Contract will be legally binding as written. The attorney must send notice of disapproval to the REALTOR(S)® by certified mail, by telegram or by delivering it personally. The telegram or certified letter will be effective upon sending. The personal delivery will be effective upon delivery to the REALTOR(S)® office. The attorney may also, but need not, inform the REALTOR(S)® of any suggested revision(s) in the Contract that would make it satisfactory.

## 2.  COMMENCEMENT OF ATTORNEY REVIEW:

The parties acknowledge by their initials the date of delivery of this Contract signed by both Buyer and Seller to be as follows:

**INITIALS AS TO BUYER** _____        **INITIALS AS TO SELLER** _____

**DATE** _12/10/07_____        **DATE** _12/09/07_____

## 3.  NOTICES AND FAX TRANSMISSIONS.

**A.   Notices:**

All notices required in this Contract must be in writing. All notices shall be by certified mail, by telegram, by personal delivery, or by facsimile transmission (fax). The telegram, certified letter or facsimile transmission will be effective upon sending. The personal delivery will be effective upon delivery to the other party. Each party must accept the certified mail, telegram or facsimile transmission sent by the other party. Notices to the Seller shall be addressed as indicated on Line 18 of this Contract. Notices to the Buyer shall be addressed as indicated on Line 22 of this Contract. Notices to the Realtors® shall be addressed to the addresses as indicated in Paragraph 33 of this Contract. Notwithstanding the above, this notice provision shall not apply to Paragraph 1, entitled "Attorney Review," which has its own methods of notice that must be strictly adhered to.

**B.   Contract, Counter Offer, Addendum, Amendment:**

The facsimile transmission (fax) of a signed copy of this Contract, any counter offer, addendum or amendment to the other party or their agent, followed by faxed acknowledgment of receipt, shall constitute delivery of the signed document. The Seller and Buyer agree to confirm the faxed transmission by mailing or personally delivering a clear copy with original signatures to the other party or their agent.

3 of 6

# NOTICE
## To Buyer and Seller:
### Read This Notice Before Signing the Contract

The Law requires real estate brokers to give you the following information before you sign this contract. It requires us to tell you that you must read all of it before you sign. The purpose is to help you in this purchase or sale.

1.  As a real estate broker, I represent:
    - ☒ The Seller, not the Buyer          B.T. Edgar & Son
    - ☒ The Buyer, not the Seller         Prudential Fox & Roach
    - ☐ Both the Seller and the Buyer
    - ☐ Neither the Seller nor Buyer.
    The title company does not represent either the Seller or Buyer.

2.  You will not get any legal advice unless you have your own lawyer. Neither I nor anyone from the title company can give legal advice to either the buyer or the seller. If you do not hire a lawyer, no one will represent you in legal matters now or at the closing. Neither I nor the title company will represent you in those matters.

3.  The contract is the most important part of the transaction. It determines your rights, risks, and obligations. Signing the contract is a big step. A lawyer would review the contract, help you to understand it, and negotiate its terms.

4.  The contract becomes final and binding unless your lawyer cancels it within the following three business days. If you do not have a lawyer, you cannot change or cancel the contract unless the other party agrees. Neither can the real estate broker nor the title insurance company change the contract.

5.  Another important service of a lawyer is to order a survey, title report, or other important reports. The lawyer will review them and help to resolve any questions that may arise about the ownership and condition of the property. These reports and survey can cost you a lot of money. A lawyer will also prepare the documents needed to close title and represent you at the closing.

6.  A Buyer without a lawyer runs special risks. Only a lawyer can advise a Buyer about what to do if problems arise concerning the purchase of the property. The problems may be about the Seller's title, the size and shape of the property, or other matters that may affect the value of the property. If either the broker or the title company knows about the problems, they should tell you. But they may not recognize the problem, see it from your point of view, or know what to do. Ordinarily, the broker and the title company have an interest in seeing that the sale is completed, because only then do they usually receive their commissions. So their interests may differ from yours.

7.  Whether you retain a lawyer is up to you. It is your decision. The purpose of this notice is to make sure that you have the information needed to make your decision.

| | | | | |
|---|---|---|---|---|
| SELLER | DATE 12/9/07 | | BUYER | DATE 12/8/07 |
| SELLER | DATE 12/9/07 | | BUYER Nacui Jacobs | DATE 12/08/07 |
| Laurel M Carter (Listing Broker) (Licensee) | DATE 12/9/07 | | Holly Donahue (Selling Broker) (Licensee) | DATE 12/8/07 |

**4. SALE, PURCHASE and PROPERTY.**

The Seller agrees to sell and Buyer agrees to buy under the terms of this Contract:
(a)  All that land, building(s) and improvements in the Municipality of _____**Moorestown**_____, County of _____**Burlington**_____
and State of New Jersey, being commonly known as _____**817 Matlack Drive**_____ identified on
the Municipal Tax Map as Block _____**03803**_____, Lot(s) No(s) _____**00002**_____.
A description of the boundaries of the land is either attached as Schedule "A" or appears in Deed Book_____ at
page_____, recorded in the Clerk or Register of Deed's Office of_____**Burlington**_____County.
(b)  All other rights of the Seller in the land.

**5. PERSONAL PROPERTY and FIXTURES.**
The property being transferred includes all fixtures permanently attached to the building(s), all shrubbery, plantings and fencing.
Also included:
All permanently attached fixtures, wall / wall carpeting, sub zero refrigerator, all window treatments.

...........................................................................................................................................
Specifically excluded:
Swing set, and bathroom hanging mirror.

**6. PURCHASE PRICE/MANNER OF PAYMENT.**
The purchase price is _____**Two Million Forty Thousand**_____ Dollars    $ **2,040,000**_____
Payable as follows:

(1)   Deposit paid upon signing of the Contract ............................................................... $ **50,000**_____
(2)   Additional deposit to be paid on or before ............................................................... $ **0**_____
(3)   At settlement, by certified or cashier's check **and/or mortgage company check** ............ $ **1,990,000.**_____
In the event of assumption of existing first mortgage or Seller taking back Buyers' mortgage
note and mortgage. *See Additional Contract Provisions*

PURCHASE PRICE.................................................................................................... $ **2,040,000.**_____

**7. DEPOSIT MONIES.**
All deposit payments made by the Buyer on account of the purchase price shall be held in a ☐ **non-interest** bearing ☒ **interest**
bearing (W-9 to be supplied to Escrow Holder with deposit) Trust Account of_____**B.T. Edgar & Son**_____ who
is called the Escrow Holder and shall be applied on account of the purchase price upon compliance by the Buyer with this
Contract. In the event the W-9 form is not returned or returned incomplete or unsigned, the down payment monies shall be placed
in a Non-interest bearing trust account of the Escrow Holder.

**8. SUFFICIENT ASSETS.**
Buyer represents that as of the signing of this Contract, Buyer has or will have as of the date of settlement, all necessary cash
assets, together with the mortgage loan proceeds, to complete settlement. Should the Buyer not have sufficient cash assets at the
time of settlement, Buyer will be in breach of Contract and Seller shall be entitled to any remedies as provided by law.
Buyer further represents:
☒   the purchase of this property is NOT contingent upon the sale of any other real estate or personal property.
☐   in order to complete settlement, Buyer will require the proceeds from the sale of property located at
_____, which is currently under Contract.  A copy of such Contract of Sale
shall be delivered to Seller, or Seller's agent, at the time of signing of this Contract.
☐   in order to complete settlement, Buyer will require the proceeds from the sale of property located
at _____, which is NOT currently under Contract.
A right of first refusal provision is attached and made a part of this Contract of Sale.

Seller represents that as of the date of settlement, Seller will have sufficient assets, including, but not limited to, the equity in the
property, to satisfy all liens, encumbrances and costs to complete settlement.

**9. MORTGAGE CONTINGENCY, PLACEMENT FEE (POINTS), COMMITMENT DATE:**
If payment of the purchase price requires a mortgage loan other than by the Seller or other than assumption of Seller's
mortgage, the Buyer shall apply for the loan in writing on lender's standard form within seven (7) days after the expiration of
the Attorney Review period (Paragraph I) and use their best efforts to obtain it. The Buyer shall supply all necessary
information and fees required by the proposed lender and shall authorize the lender to communicate with the real estate
broker(s) and involved attorney(s). The Buyer shall obtain a written commitment from an established mortgage lender to make
a loan on the property under the following terms.

Principal Amount: $ **1,632,000.00**_____Type of Mortgage:  ( ) VA   ( ) FHA  ☒ Conventional ( ) Other.

Term of Mortgage:_____**30**_____years, with monthly payments based on a _____**30**_____year payment schedule.
If VA guaranteed or FHA insured, minimum amount of appraisal required: $ **N/A**_____, See **FHA/VA**
**AMENDATORY CLAUSE** attached to and made part of this contract.
At settlement, Seller shall also pay $ **50,000.00**_____to be applied toward Buyer's escrow items, closing costs, and/or points.
This amount shall not exceed the maximum credit permitted by Buyer's Mortgage Lender. Each "point" being 1% of Buyer's
mortgage loan.

The written mortgage commitment must be delivered to the Seller's agent who is the Listing Broker identified in Paragraph 33
no later than the_____**7**_____day of_____**January**_____, 20 **08**. ~~Should Buyer require additional time to obtain the written~~
~~mortgage commitment, the commitment date shall automatically be extended for a period not to exceed_____days. If such~~

169 ~~extension shall cause the commitment date to extend beyond the settlement date specified in paragraph 14 then the settlement~~
170 ~~date shall be extended for _____ days after the revised commitment date.~~ In the event the mortgage commitment is not delivered
171 by the specified date, or any extended date permitted by the Buyer, this Contract shall be deemed null and void. In that event,
172 the deposit monies paid by the Buyer, shall be returned to the Buyer unless failure to obtain the mortgage commitment is the
173 result of the Buyer's negligence or intentional conduct or failure to diligently pursue the mortgage application.
174
175

**10. INSPECTION BY LENDERS, SURVEYORS:   CERTIFICATIONS & REPAIRS.**
177     Seller agrees to permit inspections of the property by authorized appraisers, inspectors and surveyors that may be
178 requested by Buyer and/or Buyer's mortgage lender.
179     All mandatory certifications required by the Buyer's mortgage lender shall be paid for by the Buyer, except as otherwise
180 provided in this Contract.
181     All mandatory repairs required by the Buyer's mortgage lender, or as a condition of those certifications, shall be
182 accomplished before settlement at the Sellers expense, except as otherwise noted in this Contract.  If the total cost of
183 those repairs is more than $ 200.00 , this Contract may be declared null and void at the option of the Seller and
184 all deposit monies paid by the Buyer toward the purchase price shall be refunded to the Buyer, without further liability
185 to the Seller, or the Buyer may elect to make the repairs in excess of $ 200.00 at the Buyer's expense and in
186 that event, this contract shall remain in full force and effect.
187

**11. FLOOD AREAS.**
189     The federal and state governments have designated certain areas as flood areas. If the property is located in a flood area,
190 the use of the property may be limited. The Seller is not aware that the property is in a flood area; however, this does
191 not ensure that your lender may  not require flood insurance.  If Buyer's inquiry reveals that the property is in a flood
192 area, the Buyer may cancel this Contract within ten (10) business days after the expiration of the Attorney Review
193 Period.   If the mortgage lender requires "flood insurance" then the Buyer shall be responsible for obtaining such
194 insurance on the property.
195

**12. POSSESSION, OCCUPANCY and TENANCIES.**
197     Possession and occupancy will be given to Buyer at time of settlement.  However, if the property is to be tenant
198 occupied as of the date of settlement, see **TENANCY ADDENDUM** and leases attached and made a part of this
199 contract.
200

**13. DATES AND TIME FOR PERFORMANCE.**
202     The Seller and the Buyer agree that all dates and times for performance of this Contract are OF THE ESSENCE.
203     This means that the Seller and Buyer must perform what is required of them within the time limits set by this
204 this Contract, or be in default, except as provided in this Contract.
205

**14. SETTLEMENT TIME and PLACE.**
207     Settlement is the meeting at which time the Seller transfers ownership of the property by Deed to the Buyer and the
208 Buyer pays the Seller the remainder of the purchase price.
209     Settlement shall take place at  Infinity Title Co. - 33 E. Main St., Moorestown, NJ              or at such place
210 as may be required by the mortgage lender on the          7th          day of          February          , 2008
211 at     4:00     o'clock     P     .M. The date, but not the hour, shall be of the essence. Where there is a designated title
212 insurance company, the proceeds check will be issued by it or its authorized agent.
213

**15. SETTLEMENT COSTS and MONEY ADJUSTMENTS.**
215     Seller shall pay for the preparation of the Deed, realty transfer fee, lien discharge fees, if any, and one-half of the title
216 company charges for disbursements and attendance allowed by the Commissioner of Insurance; but all searches, title
217 insurance premium and other conveyancing expenses are to be paid for by the Buyer, unless the Seller and the Buyer
218 provide differently in writing.
219     Seller and Buyer shall make prorated adjustments at settlement for items which have been paid by Seller or are due from
220 Seller such as taxes, water and sewer charges which could be claims against the property, rental and security deposits,
221 association and condominium dues, and fuel in Seller's tank.  Adjustments of fuel shall be based upon physical
222 inventory and pricing by the Seller's supplier; such determination shall be conclusive.
223     If Buyer is assuming Seller's mortgage loan, Buyer shall credit Seller for all monies such as taxes and insurance
224 premiums paid in advance or on deposit with Seller's mortgage lender.  Buyer shall receive a credit for monies which
225 the Seller owes to Seller's Mortgage lender, such as current interest or a deficit in the mortgage escrow account. There
226 shall be no adjustment on any Homestead Rebate due or to become due.
227

**16. DEED and OTHER DOCUMENTS REQUIRED FOR SETTLEMENT.**
229     A Deed is a written document used to transfer ownership of property.  Seller agrees to provide and the Buyer agrees to
230 accept a Bargain and Sale Deed with Covenants against Grantor's (Seller's) acts.  This means that the Seller has done
231 nothing to encumber the title while being the owner.  If the Seller is a corporation, it will also deliver a corporate
232 resolution authorizing the sale. The Seller shall give to the Buyer and/or title company an Affidavit of Title and
233 executed IRS 1099S form for reporting the sale.  An Affidavit of Title is a sworn statement which contains information
234 clarifying the Seller's ownership of the property, such as marital status, right of tenants, claims on record against people
235 having similar name as Seller.
236     Seller(s) state they  are, are not, foreign persons or non-resident aliens for the purpose of U.S. income taxation
237 and will, if required, provide a certificate of non-foreign status at, or before, settlement as to each Seller.
238

**17. CERTIFICATE OF OCCUPANCY AND ZONING COMPLIANCE.**
240     Seller makes no representation concerning existing zoning ordinances except that Seller's use of the property is not
241 presently in violation of any zoning ordinances and its present use as a _____ single _____ family
242 dwelling may be continued.
243     Some municipalities may require a Certificate of Occupancy or Housing Code Letter to be issued. If any is required for
244 this property, Seller shall obtain it at Seller's expense and shall be responsible to make and pay for any repairs required
245 in order to obtain the Certificate or Letter. However, if this expense should exceed $ 300.00  to the Seller, then
246 the Seller may terminate this contract and refund to the Buyer all deposit monies plus Buyer's reasonable expenses, if
247 any, in preparing to make settlement.  The Buyer may elect to make repairs in excess of $ 300.00                 at the
248 Buyer's expense. In addition, Seller shall comply with the New Jersey State Law, and local ordinances, including but

249  not limited to smoke detectors, carbon monoxide detectors and indoor sprinklers, the cost of which shall not be
250  considered as a repair cost.
251

**18. CONDOMINIUM/HOMEOWNERS ASSOCIATION DOCUMENTS.**

253  If the property is a condominium, or is subject to a homeowners' association, Seller shall prior to or at the time of the
254  signing of this Contact, provide Buyer with a copy of the current rules, regulations and by-laws of the condominium,
255  and/or homeowners' association.  The name(s), address(s) and telephone number(s) of the Association(s) is/are:
256  **N/A**

260  Seller, if required, shall provide Buyer with written approval by the condominium or homeowners' association for
261  Buyer's purchase of the property.  Prior to settlement, Seller shall provide a "Status of Account" letter and Certificate of
262  Insurance for the Association.
263  Seller represents that the current annual association fee is $ **N/A**_____ .  Buyer acknowledges that associations
264  commonly require a one-time non-refundable capital contribution or start-up fees.

**19. QUALITY and INSURABILITY OF TITLE.**

267  The title to be transferred shall be a marketable title and insurable at regular rates by a reputable title insurance company
268  authorized to do business in the State of New Jersey.
269  The title shall be free and clear of all encumbrances including municipal liens and assessments and liabilities for future
270  assessments for improvements constructed and completed; however, title shall be subject to liabilities for assessments
271  for municipal improvements not completed on the date of this Contract.  Seller represents that Seller ☐ has ☒ has not
272  been notified of any such assessments.  All liens and encumbrances shall be satisfied at or before time of settlement.
273  The title shall be subject to all existing utility easements and restrictions of record, provided such easement or restriction
274  does not unreasonably limit the use of the property.  Generally, an easement is a right of a person, other than the owner,
275  of the property to use a portion of the property for a special purpose.  A restriction is a recorded limitation on the use of
276  the property.  A violation of any restriction  shall not be a reason for Buyer refusing to complete settlement as long as
277  the Title Company insures the Buyer against actual loss at regular rates..
278  The Seller states, to the best of the Seller's knowledge, that there are no restrictions in any conveyance or plans of
279  record that will prohibit use and/or occupancy of the property as a _____**single**_____ family residential dwelling.
280  The Seller states that all buildings and other improvements on the property are within its boundary lines.  Also, that no
281  improvements on adjoining properties extend across the boundary lines of this property.  In the event the Seller is unable
282  to transfer the quality of title required and if the Buyer is unwilling to accept Seller's title without a reduction of the
283  purchase price, the monies paid by Buyer toward the purchase price shall be returned to the Buyer, together with
284  expenses of examining the title, making survey, mortgage application fees and Buyer's other reasonable expense in
285  preparing for settlement without further liability to the Seller.

**20. CONDITION OF PROPERTY.**

288  The land and buildings shall be transferred in the same condition as they now appear, reasonable wear and tear
289  excepted.  This means that the property is being sold in its present conditions unless otherwise warranted hereinafter.  In
290  addition, Seller shall leave the property free of debris and in broom-clean condition.

**21. SELLER'S WARRANTIES AND PRE-SETTLEMENT INSPECTION.**

293  A warranty is a promise.  Seller warrants that the plumbing, electrical and heating systems together with all equipment
294  servicing those systems, the central air-conditioning, if existing, and all appliances, at time of settlement, are in good
295  operating condition.  Buyer shall have the right to inspect the property immediately prior to settlement to ensure that
296  these items are in working order, also that the conditions of the property are as agreed.
297  Seller shall have all utilities in service during the 48-hour period immediately preceding settlement.

**22. SELLER'S REPRESENTATION.  (Check appropriate box)**

300  Seller represents that the property is serviced by: ☒ public ☐ private waste disposal.  If private waste disposal, see
301  attached **PRIVATE WASTE DISPOSAL ADDENDUM.**
302  Seller represents  that the property is serviced by ☒ public ☐ private drinking water source.  If private drinking water
303  source, see attached **WELL DRINKING WATER TEST ADDENDUM.**
304  Seller represents  that to the best of Seller's knowledge there ☒ is/are  no underground  fuel  tank(s), ☐ is/are
305  underground fuel tank(s) on the property, ☐ was/were underground fuel tank(s) which was/were properly removed,
306  ☐ is/are underground fuel tank(s) which was/were properly abandoned in place pursuant to the rules and regulations of
307  NJDEP.  If an underground fuel tank(s) is present see attached **UNDERGROUND FUEL TANK ADDENDUM.**

**23. HOME INSPECTION and REPORTS.**

310  Although the premises is being purchased in its present condition, it is recommended that the Buyer obtain an
311  inspection.  The Seller will make the property available to the Buyer's qualified inspectors for the purpose of inspecting
312  the property at Buyer's expense to assure that:

314  A.   The heating, air-conditioning, plumbing and electrical systems are in good operating condition.
315  B.   The foundation and structure of the building(s) and garage(s) are sound and that there is no water intrusion
316        into the premises;
317  C.   The roof and flashings do not leak and are structurally sound;
318  D.   The doors and windows (including seals), fireplaces and chimneys are in good operating condition;
319  E.   There are no adverse environmental conditions affecting the property, such as the presence of toxic mold,
320        radon gas of 4.0 pCi/l or greater, air-borne asbestos fibers, toxic chemicals or other pollutants in the soil,
321        air or water.

323  These inspections are to be performed within 10 business days from the expiration of the Attorney Review Period.  If
324  the reports disclose defects in the items mentioned above, Buyer shall supply to Seller or Seller's agent within that 10
325  day period,those portions of the reports describing said defects, together with a list of requested repairs.  The Seller
326  shall then have 5 business days to respond in writing to the Buyer or Buyer's agent.  If the Seller does not respond
327  within 5 business days, or if the Seller refuses to make the requested repairs at Seller's expense, then the Buyer may
328  cancel this Contract by giving written notice to the Seller or Seller's agent within 3 business days thereafter.  In that
329  event, all deposit monies shall be returned to Buyer and neither party shall have any further obligation to the other.

If Buyer does not obtain and deliver these inspection reports within that 10-day period, Buyer's rights under this paragraph shall be deemed waived and this Contract shall remain binding. The time for delivery of these reports is **of the essence.**

"Qualified inspector" is defined as someone who is licensed or certified by a governmental authority having jurisdiction for such purposes. Where licensure or certification is not required by law for any such inspector, the term "qualified inspector" shall mean persons who are regularly engaged in the business of inspecting residential properties for a fee and who generally maintain good reputations for skill and integrity in their areas of expertise.

The fact that a structural element, system or subsystem is near, at or beyond the end of the normal useful life of such a structural element, system or subsystem is not by itself a material defect.

Maintenance and cosmetic items that are included in inspection reports are for the Buyer's information only and are not covered by the provisions of this paragraph.

Should Buyer's inspection fail to reveal existing defects in the property, Buyer's sole and exclusive remedy shall be against the inspectors providing such services.

**Attached is a Seller's disclosure statement to Buyer regarding the property   (Check appropriate box)**

☐ Yes

☒ No

**24. INFESTATION and/or DAMAGE by WOOD BORING INSECTS.**

The Buyer is permitted to have the accessible areas of the building and detached garage(s) inspected by a reputable exterminating company of Buyer's choice to determine if there is any damage caused or infestation by termites or other wood destroying insects. The Buyer will pay for this inspection. The inspection report shall be furnished to the Seller or Seller's agent no later than ____**10**____ days prior to settlement. If infestation or damage is found, the Seller, at the Seller's expenses, shall have the infestation treated and have repaired or replaced any wood which is deemed to be unserviceable in the opinion of a professional engineer or building contractor. Treatment and/or repairs are to be completed before settlement. If the estimate for the treatment and/or repairs exceeds **$1,500.00**_____ , Seller, at Seller's option, may cancel this Contract. If Seller elects to cancel this Contract, all deposit monies plus the Buyer's reasonable expenses, if any, in preparing to make settlement shall be refunded to the Buyer. The Buyer may agree to accept the premises with the treatment and/or repairs in which case the Seller shall allow a credit of up to **$ 1,500.00**_____ against the purchase price at time of settlement. The failure of the Buyer to furnish the inspection report to the Seller or Seller's agent within the time provided will constitute a waiver by the Buyer or Buyer's rights under this clause.

**25. RADON INFORMATION. (Check one)**

☐ Seller has obtained a radon test. The results of the test are being provided to the Buyer.

☒ Seller represents that Seller is unaware of any such tests having been made.

**26. LEAD-BASED PAINT DOCUMENT ACKNOWLEDGMENT (applies to dwellings built before 1978)**

Buyer acknowledges receipt of the EPA pamphlet entitled "Protect Your Family From Lead in Your Home". Moreover, a copy of a document entitled **DISCLOSURE OF INFORMATION AND ACKNOWLEDGMENT LEAD-BASED PAINT AND LEAD-BASED PAINT HAZARDS** has been fully completed and signed by Buyer, Seller and Broker(s) and is attached and made part of this Contract.

**27. LEAD-BASED PAINT and/or LEAD-BASED PAINT HAZARD CONTINGENCY CLAUSE.**

This paragraph is applicable to all dwellings built prior to 1978. Unless the Buyer and Seller agree to a longer or shorter period, Buyer has a ten (10) business day period within which to complete an inspection and/or risk assessment (the "Inspection") of the Property by a certified inspector/risk assessor for the presence of lead-based paint hazards. The Inspection shall be ordered and obtained by the Buyer at the Buyer's expense, within ten (10) business days from the expiration of the Attorney Review Period. If the Inspection indicates that no lead-based paint or lead-based paint hazard is present at the Property, this contingency clause shall be deemed to be null and void. If the Inspection indicates that lead-based paint or lead-based paint hazard is present at the Property, this contingency clause will terminate at the time set forth above unless within five business days of receiving the inspection results, the Buyer delivers a copy of the inspection and/or risk assessment report to the Seller and Broker(s) and (a) advises Seller and Broker(s), in writing that Buyer is voiding this Contract; or (b) delivers to Seller and Broker(s) a written amendment (the "Amendment") to this Contract listing the specific existing deficiencies and corrections required by the Buyer. The Amendment shall provide that the Seller agrees to (a) correct the deficiencies: and (b) furnish the Buyers with a certification from a certified inspector/risk assessor that the deficiencies have been corrected, before the date of settlement. The Seller shall have ____**5**____ days after receipt of The Amendment to sign and return it to Buyer or send a written counter-proposal to Buyer. If Seller does not sign and return the amendment or fails to offer a counter-proposal, this Contract shall be null and void and all deposit monies paid by Buyer toward the purchase price shall be refunded to the Buyer, without further liability to the Seller. In the event Seller offers a counter-proposal, Buyer shall have ____**5**____ days after receipt of the counter-proposal to accept it. If the Buyer fails to accept the counter-proposal within the time limit provided, this Agreement shall be null and void and all deposit monies paid by Buyer toward the purchase price shall be refunded to the Buyer, without further liability to the Seller.

**28. NOTICE OF OFF-SITE CONDITIONS. (This statement is required by the New Jersey Real Estate Commission for Residential Resale Properties).**

Pursuant to the New Residential Construction Off-Site Conditions Disclosure Act, P.L. 1995, c.253 the clerks of municipalities in New Jersey maintain lists of off-site conditions which may affect the value of residential properties in the vicinity of the off-site condition. Purchasers may examine the lists and are encouraged to independently investigate the area surrounding this property in order to become familiar with any off-site conditions that may affect the value of the property. In cases where a property is located near the border of a municipality, purchasers may wish to also examine the list maintained by the neighboring municipality. If new construction, see attached **NOTIFICATION REGARDING OFF-SITE CONDITIONS ADDENDUM.**

**29. AIRPORT SAFETY ZONE. (Check applicable box)**

Seller represents that the property identified in Paragraph 1 of this Contract ☐ is ☒ is not located in an AIRPORT SAFETY ZONE as defined by the New Jersey Air Safety and Zoning Act of 1983, amended by L1991C445.

**30. MEGAN'S LAW STATEMENT. (This statement is required by the New Jersey Real Estate Commission.)**
Under New Jersey Law, the county prosecutor determines whether and how to provide notice of the presence of convicted sex offenders in the area. In their professional capacity, real estate licensees are not entitled to notification by the county prosecutor under Megan's Law and are unable to obtain such information for you. Upon settlement, the county prosecutor may be contacted for such further information as may be disclosable to you.

**31. DISPUTE BETWEEN SELLER AND BUYER OVER DEPOSIT.**
The Escrow Holder is not required to resolve any dispute which might arise between the Seller and Buyer concerning deposit payments in the Trust Account. The Escrow Holder will require from both the Seller and Buyer their written permission to pay out the deposit payment from the Trust Account. If the dispute is not resolved, the Escrow Holder will retain the deposit money until the Buyer and/or Seller receive an order from the Court regarding distribution.

**32. FAILURE OF BUYER OR SELLER TO SETTLE: BROKER'S RIGHT TO BROKERAGE FEE:**
In the event the Seller or Buyer fails to settle in accordance with this Contract, either may commence any legal or equitable action against the other as may be permitted by law. If Seller breaches this Contract, Seller will nevertheless be liable to the Broker for a brokerage fee as otherwise set forth in the Listing Agreement Contract. If Buyer breaches this Contract, Buyer will nevertheless be liable to the Broker for damages as determined by the Court, which may be equivalent to the brokerage fee in this Contract.

**33. BROKERAGE FEE: LIEN ON PROCEEDS.**
The Seller agrees to pay the named real estate broker(s) for services rendered in procuring this sale.
This fee is payable as follows:

| **B.T. Edgar & Son** | Ph#: (856) 235 0101 | **As stated in Listing Agreement** |
|---|---|---|
| Listing Broker | | Brokerage Fee 2% of sales pr. |
| 27 E. Main Street, Moorestown, NJ 08057 | Fax: (856)722 9190 | |
| Address and Telephone Number | | |

| **Prudential Fox & Roach** | Ph# (856) 234 0011 | **As stated in MLS** |
|---|---|---|
| Selling Broker | | Brokerage Fee 2% of sales pr. |
| 1 W. Main Street, Moorestown, NJ 08057 | Fax: (856) 234 3979 | |
| Address and Telephone Number | | |

The brokerage fee shall be due and payable at the time of actual settlement and all purchase money consideration has been received by the Seller. The Seller agrees and acknowledges that the dollar amount of the brokerage fee shall be a lien (a legal claim) on the purchase money proceeds derived from the sale of the subject property. The Seller, by this Contract, authorizes and directs the Buyer's attorney, or the title insurance company, whichever is the case, to pay to the broker(s) the full brokerage fee out of the proceeds of sale, prior to the payment of any funds to the Seller. The brokerage fee bill, duly receipted by the broker or broker's agent, or the closing attorney's or title insurance company's check in payment of such brokerage fee, shall be deemed a release and discharge of this lien.

**34. SELLER NOT LIABLE TO BUYER AFTER SETTLEMENT.**
All warranties, guarantees, representations of Seller concerning the property, the systems servicing the property, the appliances, lot lines, location of structures, driveways, fences and any other matter affecting this Contract, unless otherwise set forth in writing shall be absolutely void after settlement or delivery and acceptance of possession or occupancy, whichever is earlier. Buyer acknowledges they have the right to purchase a home warranty.

**35. RISK OF LOSS.**
The risk of loss or damage to the property by fire or otherwise, except ordinary wear and tear, is the responsibility of the Seller until settlement.

**36. NO RELIANCE ON OTHERS.**
This Contract is entered into by the Seller and Buyer based upon their full understanding of the meaning of all the provisions of this Contract, and upon the knowledge of the parties as to the value of the land and whatever buildings are upon same, and not on any representations made by either of them to the other, or by the real estate broker(s) involved. The Broker(s) named in this Contract, their personnel and associates are not to be held liable either to Seller or Buyer for the performance or non-performance of any of the terms of this Contract. Seller and Buyer agree that they are entering into this Contract without any reliance upon any representations or statements which may have been made by personnel or associates of the realty firm(s).

**37. CONSUMER INFORMATION STATEMENT ACKNOWLEDGMENT.**
By signing below the Seller(s) and Buyer(s) acknowledge they received the Consumer Information Statement on New Jersey Real Estate Relationships from the brokerage firms involved in this transactions prior to the first showing of the property.

**38. DECLARATION OF LICENSEE BUSINESS RELATIONSHIP(S).**
B.T. Edgar & Son _____ (name of firm) AND
Louise Marsh Carter _____ (name(s) of licensee(s))

AS ITS AUTHORIZED REPRESENTATIVE(S), ARE WORKING IN THIS TRANSACTION AS (choose one):
   X SELLER'S AGENT(S)       ____ BUYER'S AGENTS(S)
   ____ DISCLOSED DUAL AGENT(S)     ____ TRANSACTION BROKER(S)

INFORMATION SUPPLIED BY Prudential Fox & Roach _____ (name of firm) AND
Holly Donahue _____ (name(s) of licensee(s))

INDICATED THAT IT IS OPERATING IN THIS TRANSACTION AS A (choose one):
   ____ SELLER'S AGENT(S)       X BUYER'S AGENT
   ____ DISCLOSED DUAL AGENT(S)     ____ TRANSACTION BROKER

**39. NO ASSIGNMENT OR RECORDING.**
This Contract shall not be assigned. This means that neither the Buyer nor the Seller may transfer the rights under this Contract to anyone else. Neither this Contract nor a memorandum of it shall be recorded in the County Recording Office.

**40. ENTIRE CONTRACT, NO ORAL REPRESENTATIONS.**
This contract is the entire and only Contract between Buyer and Seller and cancels and replaces any previous agreements between them. This Contract may be changed only in writing signed by both Buyer and Seller. ANY REPRESENTATIONS OR AGREEMENTS NOT CONTAINED IN THIS CONTRACT ARE OF NO EFFECT.

**41. BINDING ON SUCCESSORS.**
This Contract is binding not only on the Seller and Buyer, but also on their heirs, personal representatives, and successors.

**42. ADDITIONAL CONTRACT PROVISIONS.**
A. Seller agrees to finish the basement bathroom, now partially finished.
B. Contingent upon appraisal equal to or greater than sale price of $2,040,000.00

**43. ACKNOWLEDGMENT OF TERMS OF CONTRACT.**
The Seller and Buyer agree to the terms of this Contract by signing below. If a corporation is a party, this Contract is signed by its proper corporate officers pursuant to a corporate resolution, and its corporate seal is affixed.

| Witness | Date | | SELLER | Date |
|---------|------|--|--------|------|
| _Laurie M. Carter_ | 12/9/07 | | | 12/08/07 |
| Witness | Date | | SELLER | 12/9/07 |
| _Holly Donahue_ | 12/8/07 | | BUYER | 12/8/07 |
| Witness | Date | | BUYER _Jacki Jacobs_ | 12/08/07 |

THIS CONTRACT PREPARED BY: _____
(Individual Licensee)

# Seller's Statement
## To Buyer Regarding Residential Property

The following is a statement, made by the seller, of information concerning the condition of the property located at _____ . This disclosure is not a warranty of any kind by the seller or any agent of the seller in this transaction, and is not a substitute for any inspections or warranties the purchaser may wish to obtain.

## To the Seller

Please complete the following form, including past history of problems if known. Do not leave any spaces blank. If the condition is not applicable to your property, mark "NA" in the blank. Attach additional pages if additional space is required. Be sure to sign the last page.

*The following are representations made by the seller and are not the representations of seller's agents.*

## Appliances/Systems

The items below are in good working order.

| | Yes | No | Repairs within last 2 years |
|---|---|---|---|
| Range/oven | ✓ | | |
| Microwave | ✓ | | |
| Hood/fan | ✓ | | |
| Dishwasher | ✓ | | |
| Refrigerator | ✓ | | |
| Disposal | | — | |
| Washer/Dryer | | — | |
| Hot Water Heater | ✓ | | |
| Trash compactor | | NA | |
| Central air | ✓ | | |
| Water softener | | NA | |
| Attic fan | ✓ | | |
| Sump pump | ✓ | | |
| Ceiling fan | ✓ | | |
| TV antenna | ✓ | | |
| Garage dr opener & remote controls | ✓ | | |
| Fireplace & chimney | ✓ | | |
| Other: | | | |

Explanations of "No" and "Repair" responses, if any:

## Property Conditions & Improvements

**1. Basement:** Has there been evidence of or problems with water leakage?
[ ] Yes  [✓] No  [ ] Unknown
If yes, please explain, including the frequency and extent of the problem.

**2. Insulation:** Please describe if known.

Has urea formaldehyde foam insulation (UFFI) been installed?
[ ] Yes  [✓] No  [ ] Unknown
If removed, by whom and when?

**3. Roof:** Age of roof: 2
[ ] Yes  [✓] No  [ ] Unknown  Any leaks?

**4. Water System:** Well or city water? (Please circle.) If well, please describe type of well (depth/diameter)
[ ] Yes  [✓] No  [ ] Unknown
If yes, please explain.

Age of well: _____  Any known problems or repairs?

**5. Drainage System:** Septic tanks/drain fields or city sewer system? (Please circle.)
Any known problems or repairs?
[ ] Yes  [✓] No  [ ] Unknown
If yes, please describe.

Location of septic field?

**6. Heating System:** Type: hot air
Age of heating system: 2
Any known problems or repairs?
[ ] Yes  [✓] No  [ ] Unknown
If yes, please describe.

**7. Plumbing System:**
[✓] Copper  [ ] Galvanized  [ ]
Any known problems or repairs?
[ ] Yes  [✓] No  [ ] Unknown
If yes, please explain.

**8. Electrical System:**
[ ] Yes  [✓] No  [ ] Unknown
Capacity: _____ amps
Any known problems or repairs?
[ ] Yes  [✓] No  [ ] Unknown

**9. Aluminum Wiring:**
[ ] Yes  [✓] No  [ ] Unknown
If yes, please describe.

**10. Infestation:** History, if any, of termites, carpenter ants, etc.?
[✓] Yes  [✓] No  [ ] Unknown
Any treatments for infestation?
[ ] Yes  [✓] No  [ ] Unknown
If yes, please describe.

Presently under warranty?
[ ] Yes  [✓] No  [ ] Unknown
With whom? _____
Please describe any repairs.

**11.** Asbestos: Is asbestos present in any form in or on the property?

[ ] Yes  [✗] No  [ ] Unknown

If yes, where?

Has it been removed or encapsulated?

[ ] Yes  [ ] No  [ ] Unknown

If removed, from where, when and by whom?

---

**12.** Radon: Has the property been tested for the presence of radon gas?

[ ] Yes  [✗] No  [ ] Unknown

If yes, what were the test results?

---

**13.** Landfill: Is the property located in close proximity to a landfill?

[ ] Yes  [✗] No  [ ] Unknown

If yes, which landfill and location?

---

**14.** Environment: Are you aware of any environmental concerns?

[ ] Yes  [✗] No  [ ] Unknown

If yes, please describe.

---

**15.** Principal Uses: Are you aware of any principal uses of the property other than as residential property, such as commercial use or farming?

[ ] Yes  [✗] No  [ ] Unknown

If yes, please describe the use.

---

## Other Items

As the seller, are you aware of any of the following:

**16.** Features of the property shared in common with adjoining landowners, such as walls, fences, roads or driveways whose use or responsibility for maintenance may have an effect on the property?

[ ] Yes  [✗] No  [ ] Unknown

If yes, please describe.

---

**17.** Rights-of-way, easements or similar matters that may affect the property?

[ ] Yes  [✗] No  [ ] Unknown

If yes, please describe.

---

**18.** Room additions or structural modifications?

[✗] Yes  [ ] No  [ ] Unknown

If yes, please describe work and identify who did the work.
basement + bath '01

---

**19.** Underground storage tanks on the property?

[ ] Yes  [✗] No  [ ] Unknown

If yes, please describe type, location and size of tank.

---

**20.** Setting, flooding, drainage, grading, or soil problems?

[ ] Yes  [✗] No  [ ] Unknown

If yes, please describe.

---

If yes, please describe.

**21.** Major damage to the property or any of the structures from fire, wind, floods or landslides?

[ ] Yes  [✗] No  [ ] Unknown

If yes, please describe.

---

**22.** Any zoning violations or noncon-forming uses?

[ ] Yes  [✗] No  [ ] Unknown

If yes, please describe.

---

**23.** Homeowners association which has any authority over the property?

[ ] Yes  [✗] No  [ ] Unknown

If yes, please describe.

---

**24.** Any "common areas" (facilities such as pools, tennis courts, walkways, or other areas co-owned)?

[ ] Yes  [✗] No  [ ] Unknown

If yes, please describe

---

**25.** Any assessments, liens, or judgments against the property or owners?

[ ] Yes  [✗] No  [ ] Unknown

If yes, please describe.

---

**26.** Please state any other facts or information relating to this property that would be of interest to a buyer.

To the extent of the seller's knowledge as a property owner, the seller acknowledges that the information contained above is true and accurate for those areas of the property listed.

_____ (Seller)

_12/24/07_ (Date)    Christina WCC 12/26/07 (Seller)

_12/26/07_ (Date)

## To the Buyer

The buyer is urged to carefully inspect the property and, if desired, to have the property inspected by an expert. The buyer understands that there are areas of the property of which seller has no knowledge and that this disclosure statement does not encompass those areas. The buyer also acknowledges that he has read and received a signed copy of this statement from the seller or the seller's agent.

_10/16/07_ (Date)    _Michael Cooper_ (Buyer)

_12/26/07_ (Date)    (Buyer)

Revised 9/91

# EXHIBIT B

## RIDER TO CONTRACT FOR SALE

THIS RIDER TO CONTRACT FOR SALE ("Rider") is made this 18th day of December, 2007, by and between **SCOTT JACOBS and TRACI JACOBS**, husband and wife (the "Buyer") and **FRANK J. REED, III and CHRISTINA A. REED**, husband and wife (the "Seller") and amends that certain Contract for Sale dated as of December 8, 2007 (the "Contract") for real property known as 817 Matlack Drive, Moorestown, New Jersey 08057, being described and depicted on the Municipal Tax Map of Moorestown Township as Block 3803, Lot 2 (the "Property").

The Buyer and the Seller intending to be legally bound hereby agree to amend the Contract as follows:

1.      Line 20 of the Contract shall be amended to include Miriam Jacobs.

2.      Line 109 of the Contract shall be amended and restated so that the swing set and bathroom hanging mirror are specifically excluded. The Seller shall replace the bathroom hanging mirror with a standard grade mirror of comparable size; or, in the alternative, shall repair any damage to the wall after the bathroom hanging mirror is removed by Seller.

3.      Line 209 of the Contract shall be amended and restated so that Settlement shall take place at the law offices of Sherman, Silverstein, Kohl, Rose & Podolsky, P.A., 4300 Haddonfield Road, Suite 311, Pennsauken, New Jersey 08109. The remainder of paragraph 14 shall be unchanged.

4.      Line 323 of the Contract shall be amended to reflect that the inspections are to be performed within 10 business days from December 17, 2007.

5.      Line 343-345 of the Contract shall be amended so that the block marked "yes" shall be checked by Seller. Seller's Property Disclosure Statement is attached to the Contract.

DEC-28-2007  10:44        LAW OFFICE R GRUENEBERG                                    856 235 6898      P.04/05

6.      Paragraph 32 of the Contract (Failure of Buyer or Seller to Settle; Broker's Right to Brokerage Fee) shall be amended so that the second and third sentences therein shall be deleted in their entirety.

7.      Paragraph 42 of the Contract (Additional Contract Provisions) shall be amended and restated as follows:

A.      Seller agrees to finish the basement bathroom, now partially completed, at Seller's sole cost and expense (the "Basement Bathroom Work"). The Basement Bathroom Work shall be completed in a good and workmanlike manner on or before Closing. Buyer shall have an opportunity to inspect the Basement Bathroom Work on or about January 8, 2008.

B.      Subparagraph 42.B of the Contract is deleted and replaced with the following provision:

Buyer's obligation to purchase the property shall be contingent upon the Lender's appraisal being equal to or greater than the Purchase Price. In the event that the Lender's appraisal is less than the Purchase Price, the Buyer shall be entitled to cancel the Contract upon written notice to the Seller and Seller's agent on or before the Mortgage Commitment Date whereupon the deposit shall be returned to Buyer and neither party shall have any further liability or obligation to the other hereunder.

C.      Seller shall, at the time of Closing, deliver to Buyer the 10-year home warranty provided by Builder.

D.      Upon execution of this Rider by Seller, Seller shall provide Buyer, Buyer's agent and Buyer's counsel with the Seller's Owner's Title Policy of Insurance and most recent survey of the Property.

8.      Upon execution of this Rider by Buyer and Seller, the Attorney Review Period provided for in paragraph 1 of the Contract shall be concluded and the Agreement (as defined below) shall be in full force and effect and binding upon the parties hereto.

9.      Notices required under this Rider or the Contract will be accepted by recognized overnight courier or by confirmed facsimile transmission followed by postage prepaid first class mail.

C:\Documents and Settings\karen.RGLAWGROUP\Local Settings\Temporary Internet Files\OLK44\Jacobs-Reed RIder 121307.doc- 12/18/2007

DEC-20-2007  10:44   LAW OFFICE R GRUENBERG                    856 235 6898      P.05/05

10.    The Buyer and the Seller agree that if the Buyer defaults under the Contract, the Seller's damages will be difficult to determine and that the deposit represents a fair estimate of the Seller's damages. The Seller's sole and exclusive remedy in the event of the Buyer's default under the Contract, shall be to retain the deposit as complete and liquidated damages for the Buyer's default hereunder.

11.    Except as otherwise changed by this Rider, the Contract shall continue in full force and effect. In the event of a conflict between the provisions of this Rider and the Contract, the provisions of this Rider shall control.

12.    This Rider may be executed in any number of counterparts, each of which shall be considered an original and together shall constitute a single Agreement. For purposes of this Rider, a counterpart transmitted by facsimile shall constitute an original.

IN WITNESS WHEREOF, the Buyer and the Seller execute this Rider the date first written above.

_____
Scott Jacobs, Buyer

_____
Traci Jacobs, Buyer

_____
Miriam Jacobs, Buyer

_____
Frank J. Reed, III, Seller

_____
Christina A. Reed, Seller

C:\Documents and Settings\karen.RGLAWGROUP\Local Settings\Temporary Internet Files\OLK44\Jacobs-Reed Rider 121307.doc-12/18/2007

10.    The Buyer and the Seller agree that if the Buyer defaults under the Contract, the Seller's damages will be difficult to determine and that the deposit represents a fair estimate of the Seller's damages. The Seller's sole and exclusive remedy in the event of the Buyer's default under the Contract, shall be to retain the deposit as complete and liquidated damages for the Buyer's default hereunder.

11.    Except as otherwise changed by this Rider, the Contract shall continue in full force and effect. In the event of a conflict between the provisions of this Rider and the Contract, the provisions of this Rider shall control.

12.    This Rider may be executed in any number of counterparts, each of which shall be considered an original and together shall constitute a single Agreement. For purposes of this Rider, a counterpart transmitted by facsimile shall constitute an original.

IN WITNESS WHEREOF, the Buyer and the Seller execute this Rider the date first written above.

_____
Scott Jacobs, Buyer

_____
Traci Jacobs, Buyer

_____
Miriam Jacobs, Buyer


_____
Frank J. Reed, III, Seller


_____
Christina A. Reed, Seller

# EXHIBIT C

FROM                                    (TUE) 12. 18' 07  16:40/ST. 16:38/NO. 4870053578  P   1

**Commerce Bank, N.A.**
6000 Atrium Way
MOUNT LAUREL, NJ  08054
Phone: (856) 380-2063
Fax: (856) 533-7616



First Jersey Appraisals                                    December 18, 2007
413 Crystal Lake Ave. Ste 160
Haddonfield, NJ 08033
Phone:
Fax:

Dear Appraiser,

Please inspect the following property and submit an appropriate FNMA/FHLMC appraisal form to us at your earliest possible convenience. Please send completed report to Jeffrey.Cole@yesbank.com.

| | | |
|---|---|---|
| Type of Appraisal: | Exterior/Interior on Form# 1004/70 | One Unit (incl PUD) interior/exterior |
| Property Address: | 817 Matlack Drive | |
| City/State/Zip: | Moorestown, NJ 08057 | |
| Description: | | |

| | |
|---|---|
| Type of Loan: | Fixed Rate |
| Loan Variation: | 7/1LIO525 |
| Borrower(s): | Scott Jacobs,  Traci E. Jacobs |
| Application #: | 1470061264 |
| Purchase Price: | $2,040,000.00 |
| Loan Amount: | $1,632,000.00 |
| Estimated Closing: | February 7, 2007 |

| | |
|---|---|
| Contact: | Holly Donahue/Pru fox |
| Phone: | 856-234-0011 |

Special Instructions: Please also complete a 2000 One Unit Residential Appraisal Field Review Report. Thanks.

We require your appraisal report typed on the appropriate FNMA/FHLMC appraisal report forms submitted in duplicate.  Comparable sales data should conform to FNMA/FHLMC requirements, i.e., actual sales within the previous six (6) months and within the same market area.  Census tract number is to be provided.  We need two (2) sets of pictures to include front, rear, and street scene.  All extraordinary circumstances affecting value should be fully explained.  Cost and reproduction sections must be completed even if the information is not considered relevant to the value.  If, for any reason, you are delayed in completing this assignment, please call the undersigned.  As always, the buyer is anxious and we would like to be able to provide timely responses.

Thank you very much for your attention in this matter.

Sincerely,

Jeffrey Cole - Mortgage Processor
Phone:  (856) 380-2063

# EXHIBIT D

## STATEMENT OF CREDIT DENIAL, ＿RMINATION OR CHANGE

Date: **January 04, 2008**

APPLICANT'S NAME: **Scott Jacobs**

ADDRESS:　　　　**350 Tom Brown Road**
　　　　　　　　**Moorestown, NJ 08057**

CITY, STATE, ZIP:

CREDITOR'S NAME: **Commerce Bank, N.A.**

ADDRESS:　　　　**6000 Atrium Way**

CITY, STATE, ZIP:　**MOUNT LAUREL, NEW JERSEY 08054**

TELEPHONE:　　**888-751-9000**

I.　Description of Account, Transaction, or Requested Credit: **817 Matlack Drive**
　　　　　　　　　　　　　　　　　　　　　　　　　　　**Moorestown, NEW JERSEY 08057**

II.　Description of Action Taken: **Application denied by financial institution.**

III.　Principal Reason(s) for Credit Denial, Termination or Other Action Taken Concerning Credit:

**A.　Credit**

| | |
|---|---|
| ☐ No credit file | ☐ Garnishment or attachment |
| ☐ Insufficient number of credit references provided | ☐ Foreclosure or repossession |
| ☐ Limited credit experience | ☐ Collection action or judgment |
| ☐ Poor credit performance with us | ☐ Unacceptable type of credit references provided |
| ☐ Delinquent past or present credit obligations with others | ☐ Unable to verify credit references |
| ☐ Bankruptcy | ☐ Number of recent inquiries on credit bureau report |

**B.　Income and Employment**

| | |
|---|---|
| ☐ Unable to verify income | ☐ Unable to verify employment |
| ☐ Income insufficient for amount of credit requested | ☐ Temporary or irregular employment |
| ☐ Excessive obligations in relation to income | ☐ Length of employment |

**C.　Residence**

| | |
|---|---|
| ☐ Length of residence | ☐ Temporary residence |
| ☐ Unable to verify residence | |

**D.　Other**

| | |
|---|---|
| ☐ Credit application incomplete | ☐ Specify: **Value or Type of Collateral not Sufficient/Unacceptable** |
| ☒ Value or type of collateral not sufficient | **Property** |

IV.　Disclosure of Use of Information Obtained from an Outside Source:

☐　Disclosure Inapplicable

☐　Our credit decision was based in whole or in part on information obtained in a report from the consumer reporting agency listed below. You have a right under the Fair Credit Reporting Act to know the information contained in your credit file at the consumer reporting agency. The reporting agency played no part in our decision and is unable to supply specific reasons why we have denied credit to you. You also have a right to a free copy of your report from the reporting agency, if you request it no later than 60 days after you receive this notice. In addition, if you find that any information contained in the report you receive is inaccurate or incomplete, you have the right to dispute the matter with the reporting agency.

　　Name:　　　　　**LandSafe**
　　Street Address: **7105 Corporate Drive**
　　City, State, Zip: **Plano, TX. 75024**
　　Telephone:　　**(877) 572-5673**

(If the Consumer Reporting Agency compiles and maintains files on consumers on a nationwide basis, provide a toll-free telephone number.)

☒　Our credit decision was based in whole or in part on information obtained from an affiliate or from an outside source other than a consumer reporting agency. Under the Fair Credit Reporting Act, you have the right to make a written request, no later than 60 days after you receive this notice, for the disclosure of the nature of this information.

V.　ECOA Notice

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal Agency that administers compliance with this law concerning this creditor is:

Agency:　**Office of the Comptroller of the Currency**
　　　　　**Customer Assistance Group**
　　　　　**1301 McKinney St, Suite 3450**
　　　　　**Houston, TX 77010-9050**

If you have any questions regarding this Notice, contact us at the address and/or telephone number provided above.

Notice　☒ Mailed　☐ Delivered　☐ Emailed　　Date: **January 4, 2008**　By: ＿＿＿＿＿＿＿＿＿＿＿＿＿

© 1998 Harland Financial Solutions, Inc.

# EXHIBIT E



## APPRAISAL OF REAL PROPERTY

**LOCATED AT:**
817 MATLACK DRIVE
BLOCK 3803, LOT 2
MOORESTOWN, NJ 08057

**FOR:**
COMMERCE BANK, N.A.

**AS OF:**
December 24, 2007

**BY:**
Robert J Jones, Jr IFA

FIRST JERSEY APPRAISAL GROUP

File No. 7CB214 | Page #2 of 16

# Uniform Residential Appraisal Report

LOAN #1470061264
File # 7CB214

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | | | |
|---|---|---|---|
| Property Address 817 MATLACK DRIVE | | City MOORESTOWN | State NJ   Zip Code 08057 |
| Borrower JACOBS | Owner of Public Record REED | | County BURLINGTON |
| Legal Description BLOCK 3803, LOT 2 | | | |
| Assessor's Parcel # 22.3803.2 | | | |
| Neighborhood Name STREET OF CUSTOM HOMES | Tax Year 2007 | R.E. Taxes $ 29,702 | |
| Occupant ☒ Owner ☐ Tenant ☐ Vacant | Special Assessments $ N/A | Map Reference FRANKLIN E4/3299 | Census Tract 7005.00 |
| Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe) | | ☐ PUD   HOA $ N/A  ☐ per year ☐ per month | |

Assignment Type ☒ Purchase Transaction ☐ Refinance Transaction ☐ Other (describe)

Lender/Client COMMERCE BANK, N.A.   Address 6000 ATRIUM WAY, MT LAUREL, NJ

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?  ☒ Yes ☐ No

Report data source(s) used, offering price(s), and date(s). MLS #5097131 REPORTS A PENDING LISTING WITH AN ASKING PRICE OF $2,175,000.

THE SUBJECT WAS EXPOSED TO THE MARKET FOR 110 DAYS.

I ☒ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed. TYPICAL CONTRACT REVIEWED. NO ATYPICAL SELLER INCLUSIONS OR CONCESSIONS NOTED IN COPY SUPPLIED AND ON RECORD WITH APPRAISER.

| | |
|---|---|
| Contract Price $ 2,040,000   Date of Contract 12/8/07 | Is the property seller the owner of public record? ☒ Yes ☐ No   Data Source(s) TREND |

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower?  ☐ Yes ☒ No
If Yes, report the total dollar amount and describe the items to be paid. NONE NOTED *THERE IS A CONTRACTUAL REPAIR NOTED IN THE AGREEMENT. THE BASEMENT LEVEL BATHROOM IS TO BE COMPLETED. THIS COMPLETED BATHROOM WILL BE ENCOMPASSED IN THIS REPORT.

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | Unit Housing Trends | | | One-Unit Housing | | Present Land Use % |
|---|---|---|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | Property Values ☒ Increasing ☐ Stable ☐ Declining | | | PRICE $ (000) | AGE (yrs) | One-Unit 75 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | | | 136.5 Low | 2-4 Unit % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | | | 2,900 High | NEW | Multi-Family % |
| Neighborhood Boundaries RT 603 (N-NE-E), MAIN STREET (SE), CHURCH RD (S-SW), AND THE RT | | | | 600 +- Pred. | 100+ | Commercial 10 % |
| 130 9W). THE MARKETING AREA EXTENDS THROUGHOUT PORTIONS OF THE TWP. | | | | | 20+- | Other 15 % |

Neighborhood Description A HIGH END CUSTOM HOME COMMUNITY THAT CONSISTS OF A BALANCED MIX OF CONTIGUOUS DWELLING STYLES. THIS LOCATION OFFERS RELATIVELY EASY ACCESS TO PLACES OF WORSHIP, RECREATION, EDUCATION, AND SHOPPING. SERVICE TYPE COMMERCIAL USES ARE NEARBY.

Market Conditions (including support for the above conclusions) STATISTICAL ANALYSIS OF THE MARKET OVER THE PAST 24 MONTHS (broken down into two 12 month periods preceding this report) INDICATES THAT THIS MARKET HAS INCREASED .01% ON AVERAGE. REVIEW OF CURRENT LISTINGS AND PENDINGS IN THE MARKET INDICATE A STABLE MARKET WITH DEMAND AND SUPPLY IN BALANCE.

| | | | |
|---|---|---|---|
| Dimensions 143 X 180 IRR | Area 25,740 Sq.Ft. | Shape RECTANGULAR | View AVERAGE |
| Specific Zoning Classification R1A | Zoning Description RESIDENTIAL | | |

Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use?  ☒ Yes ☐ No   If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements - Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street MACADAM | ☒ | |
| Gas | ☒ | | Sanitary Sewer | ☒ | | Alley | | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No   FEMA Flood Zone X   FEMA Map # 0005C   FEMA Map Date 1/19/96

Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No   If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No   If Yes, describe
NO ADVERSE SITE CONDITIONS OR EXTERNAL FACTORS NOTED. NO ADVERSE EASEMENTS, ENCROACHMENTS, ENVIRONMENTAL CONDITIONS, OR LAND USES NOTED ON THE SITE OR IN THE IMMEDIATE AREA.

| General Description | | Foundation | | Exterior Description | materials/condition | Interior | materials/condition |
|---|---|---|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | | ☐ Concrete Slab ☐ Crawl Space | | Foundation Walls | PRD CONC - GD | Floors | H/W+W/W-GOOD |
| # of Stories 2.5 | | ☒ Full Basement ☐ Partial Basement | | Exterior Walls | Stucco+Vnl lk-GD | Walls | DRYWALL - GOOD |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | | Basement Area 2,261 sq.ft. | | Roof Surface | COMP SH -GOOD | Trim/Finish | WOOD-GOOD |
| ☒ Existing ☐ Proposed ☐ Under Const. | | Basement Finish 50 % | | Gutters & Downspouts | ALUM - GOOD | Bath Floor | CER TILE-GOOD |
| Design (Style) COLONIAL | | ☐ Outside Entry/Exit ☐ Sump Pump | | Window Type | WD Csmt+DH-GD | Bath Wainscot | CER TL - GOOD |
| Year Built 2006 | | Evidence of ☐ Infestation | | Storm Sash/Insulated | INSULATED | Car Storage ☐ None | |
| Effective Age (Yrs) 1 | | ☐ Dampness ☐ Settlement | | Screens | YES | ☒ Driveway # of Cars 4-8 | |
| Attic ☒ None | | Heating ☒ FWA ☐ HWBB ☐ Radiant | | Amenities | | Driveway Surface ASPHALT | |
| ☐ Drop Stair ☐ Stairs | | ☐ Other   Fuel GAS | | ☐ Woodstove(s) # | ☐ Fireplace(s) # | ☒ Garage # of Cars 3 | |
| ☐ Floor ☐ Scuttle | | Cooling ☒ Central Air Conditioning | | ☐ Fence ☐ Patio/Deck | | ☐ Carport # of Cars | |
| ☐ Finished ☐ Heated | | ☐ Individual ☐ Other | | ☐ Porch ☐ Pool | | ☐ Att. ☐ Det. ☒ Built-in | |

Appliances ☒ Refrigerator ☒ Range/Oven ☒ Dishwasher ☒ Disposal ☒ Microwave ☒ Washer/Dryer ☐ Other (describe)

Finished area above grade contains: 12 Rooms   7 Bedrooms   7+2 Bath(s)   6,272 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.). INSULATED WINDOWS, 2 FIREPLACES, PARTIAL FINISHED BASEMENT WITH FULL BATHROOM, SINCE PURCHASE THE THIRD FLOOR HAS BEEN FINISHED WITH 1167 SQ FT WITH 2 BEDROOM SUITES WITH BATHS.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.). THE SUBJECT IS A GOOD QUALITY DWELLING THAT IS IN OVERALL GOOD CONDITION. THE SUBJECT EXHIBITS ONGOING MAINTENANCE AND GOOD QUALITY UPGRADING.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property?  ☐ Yes ☒ No   If Yes, describe

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)?  ☒ Yes ☐ No   If No, describe

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

File No. 7C8214 | Page #3 of 18

## Uniform Residential Appraisal Report

LOAN #1470061264
File # 7C8214

There are **4** comparable properties currently offered for sale in the subject neighborhood ranging in price from $ **2,095,000** to $ **2,190,000**

There are **3** comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ **1,850,000** to $ **2,900,000**

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 817 MATLACK DRIVE | 804 MATLACK DRIVE | | 807 RIVERTON ROAD | | 321 E OAK AVENUE | |
| | MOORESTOWN, NJ 08057 | MOORESTOWN | | MOORESTOWN | | MOORESTOWN | |
| Proximity to Subject | | 0.03 miles NE | | 0.18 miles NE | | 1.36 miles SE | |
| Sale Price | $ 2,040,000 | | $ 1,850,000 | | $ 1,900,000 | | $ 2,900,000 |
| Sale Price/Gross Liv. Area | $ 325.26 sq.ft. | $ 327.84 sq.ft. | | $ 343.33 sq.ft. | | $ 532.50 sq.ft. | |
| Data Source(s) | | MLS/BROKER | | MLS/BROKER | | MLS/BROKER | |
| Verification Source(s) | | TAX ASSESSOR | | TAX ASSESSOR | | TAX ASSESSOR | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | CONV/1 DOM | | CONV/23 DOM | | CONV/NA DOM | |
| Concessions | | NONE NOTED | | NONE NOTED | | NONE NOTED | |
| Date of Sale/Time | | 8/07 | | 1/07 | | 5/07 | |
| Location | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Leasehold/Fee Simple | Fee Simple | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | 25,740 Sq.Ft. | 30,000+- Sq.Ft. | | 2.1+ ACRES | -10,000 | 6+ ACRES | -50,000 |
| View | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Design (Style) | COLONIAL | COLONIAL | | French Colonial | nominal | Victorian | nominal |
| Quality of Construction | GOOD | GOOD | | GOOD | | AVERAGE | +25,000 |
| Actual Age | 1 | NEW | nominal | 10+- | +10,000 | 91+- | +90,000 |
| Condition | GOOD | NEW | nominal | AVERAGE | +10,000 | AVERAGE | +10,000 |
| Above Grade | Total Bdrms Baths | Total Bdrms Baths | | Total Bdrms Baths | | Total Bdrms Baths | |
| Room Count | 12  7  7+2 | 10  6  5+2 | +30,000 | 10  5  5+1 | +37,500 | 13  8  4+1 | +52,500 |
| Gross Living Area | 6,272 sq.ft. | 5,643 sq.ft. | +62,900 | 5,534 sq.ft. | +73,800 | 5,446 sq.ft. | +82,600 |
| Basement & Finished | 2,261 Sq.Ft. | FULL BASMNT | | FULL BASMNT | | FULL BASMNT | |
| Rooms Below Grade | P-FIN W/BATH | P-FIN W/BATH | | P-FIN W/BATH | | UNFINISHED | +25,000 |
| Functional Utility | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Heating/Cooling | GFWA-C/A | GFWA-C/A | | GFWA-C/A | | GFWA-C/A | |
| Energy Efficient Items | STANDARD | STANDARD | | STANDARD | | STANDARD | |
| Garage/Carport | 3 CAR | 3 CAR | | 3 CAR | | 3 CAR+CARPT | -5,000 |
| Porch/Patio/Deck | NONE | PATIO | -5,000 | PATIO,DECK | -10,000 | 2 ENC PORCH | -15,000 |
| | 2 FIREPLACES | 1 FIREPLACE | +10,000 | 3 FIREPLACES | -10,000 | 5 FIREPLACES | -30,000 |
| Net Adjustment (Total) | | ☒ + ☐ - | $ 97,900 | ☒ + ☐ - | $ 101,300 | ☒ + ☐ - | $ 185,100 |
| Adjusted Sale Price | | Net Adj.  5.3 % | | Net Adj.  5.3 % | | Net Adj.  6.4 % | |
| of Comparables | | Gross Adj.  5.8 % | $ 1,947,900 | Gross Adj.  8.5 % | $ 2,001,300 | Gross Adj.  13.3 % | $ 3,085,100 |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☒ did ☐ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

Data Source(s)   MLS/TREND/NJACTB.ORG

My research ☐ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.

Data Source(s)   MLS/TREND/NJACTB.ORG

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 6/2006 | NONE NOTED UNDER | NONE NOTED UNDER | NONE NOTED UNDER |
| Price of Prior Sale/Transfer | $1,571,619 | NORMAL COURSE OF | NORMAL COURSE OF | NORMAL COURSE OF |
| Data Source(s) | TREND/MLS | BUSINESS | BUSINESS | BUSINESS |
| Effective Date of Data Source(s) | 12/31/07 | 12/31/07 | 12/31/07 | 12/31/07 |

Analysis of prior sale or transfer history of the subject property and comparable sales   THE SUBJECT WAS PURCHASED WITHIN 3 YEARS OF THIS
REPORT. SAID SALE WAS INDICATIVE OF A DISTRESSED PROPERTY. AS NOTED IN THIS REPORT, THE SUBJECT HAS UNDERGONE
EXTENSIVE EXPANSION OF THE 3RD FLOOR.

Summary of Sales Comparison Approach   ALL OF THE COMPARABLES SHARE SALIENT FEATURES OF THE SUBJECT. ALL SALES ARE CLOSED
WITH VERIFIED SETTLEMENT DATES. ONE OR MORE OF THE COMPARABLES HAS CLOSED IN EXCESS OF 6 MONTHS. THE USE OF
SAID SALE(s) WAS NECESSARY DUE TO THE LACK OF A MORE RECENT SALE TO BE LOCATED, AND/OR VERIFIED. WHEN
APPLICABLE, A TIME ADJUSTMENT HAS BEEN MADE.

Indicated Value by Sales Comparison Approach $ 1,950,000

Indicated Value by: Sales Comparison Approach $ 1,950,000   Cost Approach (if developed) $ 1,960,097   Income Approach (if developed) $ N/A
THE SALES COMPARISON APPROACH HAS BEEN GIVEN THE MOST WEIGHT. THE COST AND INCOME APPROACHED HAVE BEEN
GIVEN CONSIDERATION AND ARE NOT NECESSARY IN ORDER TO PROVIDE CREDIBLE RESULTS.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been
completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the
following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting
conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$ 1,950,000 , as of   December 24,2007 , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 70 March 2005

Page 2 of 6

Fannie Mae Form 1004 March 2005

File No. 7C8214  Page #4 of 18

# Uniform Residential Appraisal Report

LOAN #1470061264
File # 7C8214

LAND SIZE ADJUSTMENTS HAVE BEEN MADE AT APPROX $10,000 PER ACRE. THE SUBJECT'S EXACT LOT SIZE IS AN ESTIMATE BASED UPON IT'S IRREGULAR LOT LINES.

AGE ADJUSTMENTS WERE WARRANTED FOR C2 AND C3. THE AGE ADJUSTMENTS HAVE BEEN MADE AT APPROX $1,000 PER DIFFERENCE IN YEAR/AGE. C1 IS NEW AND IS CONSIDERED EQUAL IN AGE APPEAL.

ALL OF THE SALES ARE UPPER END SALES. THE CONDITION ADJUSTMENT MADE IS INDICATIVE OF MARKET REACTION FOR THE SUBJECT'S GOOD/NEWER CONDITION.

ABOVE GRADE BATHROOM COUNT ADJUSTMENTS HAVE BEEN MADE AT $15,000 PER FULL BATH, APPLIED ACCORDINGLY.

GLA ADJUSTMENTS HAVE BEEN MADE AT $100 PER SQ FT. THIS IS AN UPPER END ADJUSTMENT THAT IS ENCOMPASSING THE QUALITY OF CONSTRUCTION AS WELL AS THE APPEAL OF THE INCREASED GLA. THIS FIGURE IS 50% OF COST ESTIMATE.

C3 ADJUSTED FOR IT'S UNFINISHED BASEMENT AND LACK OF A BATHROOM ON THIS LEVEL.

**

C1 IS A SETTLED SALE LOCATED ON THE SUBJECT'S STREET, BUILT BY THE SAME BUILDER. SAID SALE HAS BEEN GIVEN THE MOST WEIGHT. APPRAISER HAS RELIED UPON VERIFIABLE INFORMATION THROUGH THE TAX ASSESSOR FOR THIS SALE. THE AGENT FOR THE SUBJECT WAS ALSO THE AGENT FOR THIS SALE AND IS NOT CONSIDERED AN UNBIASED VERIFICATION SOURCE

C2 IS AN OLDER SALE THAT HAS BEEN UTILIZED DUE TO THE LACK OF ANOTHER TRULY MORE SUITABLE SALE.

C3 WAS A PRIVATE SALE THAT DID NOT TAKE PLACE WITH AN MLS REALTOR. APPRAISER INTERVIEWED THE TAX ASSESSOR AND HIS ASSISTANT REGARDING THIS PROPERTY. BOTH WERE EXTREMELY KNOWLEDGEABLE WITH THIS PROPERTY AS THEY WILL BE RELYING UPON THIS SALE TO "HELP IN THEIR UPCOMING REVALUATION". CONDITION, ROOM COUNT, AND ALL RELEVANT INFORMATION TO THE VALUATION PROCESS HAS BEEN SUPPLIED BY THE TAX ASSESSORS OFFICE. THIS SALE IS DEEMED A USABLE SALE BY THE ASSESSOR IN THE TAX APPEAL PROCESS. THIS IS TRANSLATED TYPICALLY AS A VIABLE SALE. HOWEVER, THIS PROPERTY HAS AN EXTREMELY LARGE LAND SIZE AND HAS BEEN DISCOUNTED BY THE APPRAISER IN IT'S ULTIMATE VIABILITY. SAID SALE HAS BEEN SUPPLIED AS IT BRACKETS THE SUBJECT'S VALUE AND BEDROOM COUNT.

## COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)    THE LAND VALUE IS AN ESTIMATE BASED
UPON A REVIEW OF RELEVANT/VERIFIABLE LAND SALES.

| ESTIMATED ☒ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | | | =$ | 450,000 |
|---|---|---|---|---|---|---|
| Source of cost data  Marshall & Swift + local and customary costs | DWELLING | 6,272 Sq.Ft. @ $ | 200.00 | | =$ | 1,254,400 |
| Quality rating from cost service  V-GO    Effective date of cost data  12/07 M & Sw | BASMT | 2,261 Sq.Ft. @ $ | 75.00 | | =$ | 169,575 |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | APPLIANCES, FIREPLACES | | | | =$ | 35,000 |
| THE COST APPROACH IS A REPRODUCTION COST AND SHOULD | Garage/Carport | 864 Sq.Ft. @ $ | 30.00 | | =$ | 25,920 |
| NOT BE CONSIDERED A VIABLE INSURANCE VALUE INDICATOR. | Total Estimate of Cost-New | | | | =$ | 1,484,895 |
| THIS APPROACH IS FOR GUIDANCE ONLY. | Less | Physical | Functional | External | | |
| | Depreciation | 24,798 | | | =$ | 24,798 |
| | Depreciated Cost of Improvements | | | | =$ | 1,460,097 |
| | "As-is" Value of Site Improvements | | | | =$ | 50,000 |
| Estimated Remaining Economic Life (HUD and VA only)    59 Years | INDICATED VALUE BY COST APPROACH | | | | =$ | 1,960,097 |

## INCOME APPROACH TO VALUE (not required by Fannie Mae)

| Estimated Monthly Market Rent $ | X Gross Rent Multiplier | | = $ | Indicated Value by Income Approach |
|---|---|---|---|---|
| Summary of Income Approach (including support for market rent and GRM) | | | | |

## PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)?  ☐ Yes  ☐ No    Unit type(s)  ☐ Detached  ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

| Total number of phases | | Total number of units | | Total number of units sold | |
|---|---|---|---|---|---|
| Total number of units rented | | Total number of units for sale | | Data source(s) | |
| Was the project created by the conversion of existing building(s) into a PUD? | ☐ Yes | No  If Yes, date of conversion. | | | |
| Does the project contain any multi-dwelling units?  ☐ Yes  ☐ No  Data Source | | | | | |
| Are the units, common elements, and recreation facilities complete?  ☐ Yes | | No  If No, describe the status of completion. | | | |

Are the common elements leased to or by the Homeowners' Association?  ☐ Yes   ☐ No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

Freddie Mac Form 70 March 2005

Fannie Mae Form 1004 March 2005

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

File No. 7CB214 | Page #5 of 18

# Uniform Residential Appraisal Report

LOAN #1470061264
File # 7CB214

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Form 1004 - "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

File No. 7CB214 | Page #6 of 18|

# Uniform Residential Appraisal Report

LOAN #1470061264
File # 7CB214

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Freddie Mac Form 70 March 2005

Page 5 of 6

Fannie Mae Form 1004 March 2005

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

File No. 7CB214    Page # 7 of 18

## Uniform Residential Appraisal Report

LOAN #1470061264
File # 7CB214

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature _Robert J Jones, IFA_ | Signature _____ |
| Name Robert J Jones, Jr IFA | Name _____ |
| Company Name FIRST JERSEY APPRAISAL GROUP | Company Name _____ |
| Company Address 413 CRYSTAL LAKE AVENUE, SUITE 202, | Company Address _____ |
| HADDONFIELD, NJ 08033 | |
| Telephone Number (856)931-7003 | Telephone Number _____ |
| Email Address njappraiser1@comcast.net | Email Address _____ |
| Date of Signature and Report December 31,2007 | Date of Signature _____ |
| Effective Date of Appraisal December 24,2007 | State Certification # _____ |
| State Certification # 42RC001173 | or State License # _____ |
| or State License # | State _____ |
| or Other (describe) _____ State # | Expiration Date of Certification or License _____ |
| State NJ | |
| Expiration Date of Certification or License 12/31/2007 | SUBJECT PROPERTY |
| | ☐ Did not inspect subject property |
| ADDRESS OF PROPERTY APPRAISED | ☐ Did inspect exterior of subject property from street |
| 817 MATLACK DRIVE | Date of Inspection _____ |
| MOORESTOWN, NJ 08057 | ☐ Did inspect interior and exterior of subject property |
| APPRAISED VALUE OF SUBJECT PROPERTY $ 1,950,000 | Date of Inspection _____ |
| LENDER/CLIENT | |
| Name | COMPARABLE SALES |
| Company Name COMMERCE BANK, N.A. | |
| Company Address 6000 ATRIUM WAY, MT LAUREL, NJ | ☐ Did not inspect exterior of comparable sales from street |
| | ☐ Did inspect exterior of comparable sales from street |
| Email Address | Date of Inspection _____ |

Freddie Mac Form 70 March 2005

Page 6 of 6

Fannie Mae Form 1004 March 2005

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

File No. 7CB214  Page # 8 of 18

## Supplemental Addendum

| Borrower | JACOBS | | | File No. 7CB214 |
|---|---|---|---|---|
| Property Address | 817 MATLACK DRIVE | | | |
| City | MOORESTOWN | County  BURLINGTON | State  NJ | Zip Code  08057 |
| Client | COMMERCE BANK, N.A. | | | |

BUSINESS AND COMMERCIAL USES ARE LOCATED WITHIN THE SUBJECT'S AREA. THESE USES ARE TYPICAL OF SIMILAR NEIGHBORHOODS AND HAVE NO ADVERSE AFFECT ON THE MARKET VALUE OF FUTURE MARKETABILITY OF THE SUBJECT PROPERTY.

THE VALUE ESTIMATED IN THIS REPORT IS BASED ON THE ASSUMPTION THAT THE PROPERTY IS NOT NEGATIVELY AFFECTED BY THE EXISTENCE OF HAZARDOUS SUBSTANCES OR DETRIMENTAL ENVIRONMENTAL CONDITIONS. THE APPRAISER'S ROUTINE INSPECTION OF AND INQUIRIES ABOUT THE SUBJECT DID NOT DEVELOP ANY INFORMATION THAT INDICATED ANY APPARENT SIGNIFICANT HAZARDOUS SUBSTANCES OR DETRIMENTAL ENVIRONMENTAL CONDITIONS WHICH WOULD AFFECT THE PROPERTY NEGATIVELY. IT IS POSSIBLE THAT TESTS AND INSPECTIONS MADE BY A QUALIFIED HAZARDOUS SUBSTANCE AND ENVIRONMENTAL EXPERT WOULD REVEAL SUCH CONDITIONS. THE APPRAISER ASSUMES NO RESPONSIBILITY FOR THE PRESENT OF RADON GAS, OR ANY OTHER HAZARDOUS SUBSTANCE OR ENVIRONMENTAL CONDITION THAT MAY EXIST.

THIS REPORT PRESUMES THAT RADON IS NOT PRESENT IN THE SUBJECT PROPERTY ABOVE 0.02 WORKING LEVELS (4 PICOCURIES/LITER), AND THEREFORE, NO CONSIDERATION HAS BEEN GIVEN THE POTENTIAL ADVERSE AFFECT ON THE VALUE OF THE SUBJECT PROPERTY, IF ANY, THAT RADON MIGHT CAUSE.

ALL MECHANICAL SYSTEMS INCLUDING THE HEATING, ELECTRICAL, AND PLUMBING SYSTEMS APPEAR, UPON A CURSORY VISUAL INSPECTION, (UNLESS THIS IS AN EXTERIOR ONLY PHYSICAL VIEWING) TO BE WORKING ORDER, UNLESS OTHER WISE NOTED IN THE ATTACHED APPRAISAL OR VC SHEET. NO WARRANTIES ARE EXPRESSED OR IMPLIED BY THIS STATEMENT.

THERE ARE NO SPECIAL CONDITIONS OR OTHER REQUIREMENTS OTHER THEN THOSE MENTIONED IN THIS APPRAISAL THAT WOULD AFFECT MARKET VALUE OF FUTURE MARKETABILITY IN THIS REPORT.

PERSONAL PROPERTY, ie FURNITURE, WINDOW TREATMENTS, BUILT-INS ETC, WHICH HAVE BEEN INCLUDED IN THE SALES PRICE HAVE BEEN GIVEN NON VALUE IN THIS REPORT AS THEY ARE NON-REALTY ITEMS.

I CERTIFY TO THE BEST OF MY KNOWLEDGE AND BELIEF:

-THE STATEMENTS OF FACT IN THIS REPORT ARE TRUE AND CORRECT

-THE REPORTED ANALYSES, OPINIONS, AND CONCLUSIONS ARE LIMITED ONLY BY THE REPORTED ASSUMPTIONS AND LIMITING CONDITIONS, AND ARE MY PERSONAL, UNBIASED, PROFESSIONAL ANALYSIS, AND OPINION AND CONCLUSIONS

-I HAVE NO PRESENT OR PROSPECTIVE INTEREST IN THE PROPERTY THAT IS THE SUBJECT OF THIS REPORT, AND I HAVE NO PERSONAL INTEREST OR BIAS WITH RESPECT TO THE PARTIES INVOLVED.

-MY COMPENSATION IS NOT CONTINGENT ON AN ACTION OR EVENT RESULTING FROM THE ANALYSIS, OPINIONS, OR CONCLUSIONS IN, OR THE USE OF THIS REPORT.

-MY ANALYSIS, OPINIONS, AND CONCLUSIONS WERE DEVELOPED, AND THIS REPORT HAS BEEN PREPARED IN CONFORMITY WITH THE UNIFORM STANDARDS OF PROFESSIONAL PRACTICE (USPAP)

-THE "APPRAISER" HAS  MADE A PERSONAL INSPECTION OF THE PROPERTY THAT IS THE SUBJECT OF THIS REPORT. IF THIS IS AN EXTERIOR ONLY VIEWING, A CURBSIDE VIEWING ONLY HAS TAKEN PLACE.

-UNLESS NOTED OTHERWISE, NO ONE PROVIDED SIGNIFICANT PROFESSIONAL ASSISTANCE TO THE PERSON SIGNING THIS REPORT.

-I/WE HAVE MADE AN INDEPENDENT VALUE JUDGEMENT ON THE SUBJECT PROPERTY.

-THIS APPRAISAL WAS NOT BASED ON A REQUESTED MINIMUM VALUATION, A SPECIFIC VALUATION, OR THE APPROVAL OF A LOAN.

HIGHEST AND BEST USE

THE REASONABLE AND PROBABLE USE THAT SUPPORTS THE HIGHEST PRESENT VALUE, AS DEFINED, AS OF THE EFFECTIVE DATE OF THE APPRAISAL. ALTERNATIVELY, THAT USE, FROM AMONG REASONABLE, PROBABLE, AND LEGAL ALTERNATIVE USAGES, FOUND TO BE PHYSICALLY POSSIBLE, APPROPRIATELY SUPPORTED, FINANCIALLY FEASIBLE, AND WHICH RESULT IN THE HIGHEST LAND VALUE. (real estate technology, society of real estate appraisers, compiled by Byrl N. Boyce)

File No. 7CB214 Page #9 of 18

## Supplemental Addendum

| | | | | | |
|---|---|---|---|---|---|
| Borrower | JACOBS | | | File No. 7CB214 | |
| Property Address | 817 MATLACK DRIVE | | | | |
| City | MOORESTOWN | | County BURLINGTON | | |
| Client | COMMERCE BANK, N.A. | | | State NJ | Zip Code 08057 |

SCOPE OF THIS APPRAISAL

THE INTENT OF THE APPRAISAL SERVICES RENDERED IN THIS ASSIGNMENT ENCOMPASSES ALL OF THOSE
ACTIVITIES CONSIDERED NECESSARY TO PERMIT THE APPRAISER TO FULFILL HIS ETHICAL RESPONSIBILITY IN
ARRIVING AT AND REPORTING OBJECTIVE, DEFENSIBLE CONCLUSION OF VALUE FOR THE SUBJECT PROPERTY
AS OF THE DATE OF VALUATION. THESE ACTIVITIES INCLUDE, BUT ARE NOT LIMITED TOO ;

-THE COLLECTION OF DATA REGARDING THE PHYSICAL PROPERTY, IT'S GENERAL LOCATION, NEIGHBORHOOD
TRENDS, AND INFLUENCES, THE OBSERVED RELATIVE CONDITION AND EFFECTIVE AGE OF IMPROVEMENTS, THE
SUBJECT'S AMENITIES AND SPECIAL FEATURES, AVAILABLE UTILITIES, ZONING, AND RELATED CONTROLS, AND
THE PROPERTY ASSESSMENT AND ANNUAL REAL ESTATE TAXES.

-A CONSIDERATION AND ANALYSIS OF THOSE FACTORS IN ORDER TO ESTABLISH A BASIS FOR ESTIMATING THE
SUBJECT PROPERTY'S HIGHEST AND BEST USE AS OF THE VALUATION DATE.

-A CONSIDERATION OF THE (3) THREE TRADITIONAL APPROACHES TO VALUE, THE SALES COMPARISON
APPROACH, THE COST APPROACH, AND THE INCOME APPROACH, IN AN EFFORT TO DETERMINE WHICH IF THESE
IS (OR ARE) THE MOST APPROPRIATE, APPLICABLE, AND RELIABLY SUITED TO THE IDENTIFIED APPRAISAL
PROBLEM.

-A THOROUGH EXAMINATION OF THE SUBJECT'S MARKET AREA FOR THE RELEVANT MARKET DATA FOR
CONSIDERATION IN THE INDIVIDUAL APPROACHES TO VALUE.

-COMMUNICATION OF A WRITTEN AND DEFENSIBLE CONCLUSION OF MARKET VALUE IN A CLEAR AND CONCISE
MANOR.

COMPETENCY OF THE APPRAISER

-THE APPRAISER HAS THE APPROPRIATE KNOWLEDGE AND EXPERIENCE TO COMPETENTLY COMPLETE THIS
REPORT.

INCOME APPROACH

THE INCOME APPROACH HAS BEEN ANALYZED AND FOUND INAPPLICABLE BECAUSE, IN THIS MARKET VERY FEW
SINGLE FAMILY HOMES ARE RENTED AND THERE IS INSUFFICIENT DATA AVAILABLE TO DEVELOP A GROSS RENT
MULTIPLIER. THEREFORE, I HAVE RELIED UPON THE MARKET DATA APPROACH IN MY ESTIMATE OF VALUE AND I
HAVE USED THE COST APPROACH (WHEN APPLICABLE) AS SUPPORTING EVIDENCE.

SQUARE FOOTAGE OF THE COMPARABLES

THE SQUARE FOOTAGE (GLA) OF THE SUBJECT (WHEN APPLICABLE) AND COMPARABLES ARE ESTIMATED
BASED UPON A DRIVE-BY FRONTAL EXTERIOR VIEWING. THE INDICATED SQUARE FOOTAGE IS DERIVED VIA THE
AFOREMENTIONED, IN CONJUNCTION WITH REALTOR INTERVIEW AND/OR, MLS REVIEW AND/OR, THE TAX
ASSESSORS PROPERTY RECORD CAND AND/OR, APPRAISERS FILES.

THE ADJUSTMENTS MADE IN THE GRID ARE MARKET DRIVEN AND DO NOT REFLECT REPLACEMENT COSTS. THE
ADJUSTMENTS ARE INDICATIVE OF THE MARKET REACTION THAT WOULD RESULT FROM A TYPICAL,
PRUDENT, AND REASONABLE PURCHASER.

THE NATIONAL ASSOCIATION OF INDEPENDENT FEE APPRAISERS (NAIFA) HAS A MANDATORY PROGRAM OF
CONTINUING EDUCATION FOR DESIGNATED MEMBERS. THIS PROGRAM HAS BEEN MET FOR CYCLE ENDING
DECEMBER 31, 2007. NEXT CYCLE EXPIRES DECEMBER 31, 2009.

THE FUNCTION OF THIS APPRAISAL REPORT, OR THE INTENDED USE IS TO SUPPORT UNDERWRITING DECISION
MAKING FOR A CONVENTIONAL OR GOVERNMENT INSURED LOAN.

A DILIGENT INSPECTION WAS MADE OF ACCESSIBLE, VISIBLE, READILY OBSERVABLE AREAS TO UNDERCOVER
OBVIOUS POSSIBLE SOUNDNESS, SAFETY, AND/OR MARKETABILITY ISSUES OF THE SUBJECT PROPERTY.
(UNLESS THIS IS AN EXTERIOR ONLY PHYSICAL VIEWING)

THIS REPORT IS IN NO WAY INTENDED TO BE A SUBSTITUTE FOR A HOME INSPECTION MADE BY A QUALIFIED
INSPECTOR. THIS APPRAISER HOLDS NO EXPERTISE IN OR HOLD HIMSELF OUT TO BE AN EXPERT IN THE FIELD
OF HOME INSPECTION. A PROFESSIONAL HOME INSPECTION IS STRONGLY SUGGESTED TO UNCOVER ANY
DEFECTS THAT MAY IMPACT THE STRUCTURAL SOUNDNESS, SAFETY, AND/OR MARKETABILITY OF THE SUBJECT.

PLEASE BE ADVISED THAT THE APPRAISER IS NOT A HOME INSPECTOR, AN ENGINEER, AN ELECTRICIAN, A
CARPENTER, OR A PLUMBER. THE APPRAISER HAS NO FORMAL TRAINING IN ANY OF THE AFOREMENTIONED
DISCIPLINES. THE PURCHASER/BORROWER HAS HAD THE OPPORTUNITY TO PROCURE THE SERVICES OF A
PROFESSIONAL HOME INSPECTOR, A ROOFER, AN ELECTRICIAN, A PLUMBER, AND/OR CARPENTER, TO INSURE
THAT THE SUBJECT MEETS THE BORROWER'S SATISFACTION. APPRAISER IS NOT LIABLE FOR ANY UNCOVERED
DEFICIENCIES THAT MAY EXIST THAT ARE NOT READILY OBSERVABLE.

## Supplemental Addendum

| Borrower | JACOBS | | | File No. 7CB214 | |
|---|---|---|---|---|---|
| Property Address | 817 MATLACK DRIVE | | | | |
| City | MOORESTOWN | County BURLINGTON | | State NJ | Zip Code 08057 |
| Client | COMMERCE BANK, N.A. | | | | |

THE INTENDED USER OF THIS REPORT IS CONSIDERED THE NAMED LENDER/ CLIENT.  IF THIS REPORT IS BEING PREPARED FOR A HUD INSURED TRANSACTION, THEN HUD/FHA IS ALSO AN INTENDED USER.

THE APPRAISER CERTIFIES THAT ALL COMPARABLES UTILIZED HAVE RECEIVED AN EXTERIOR CURBSIDE VISUAL INSPECTION. THE USE OF CATALOG PHOTOS MAY HAVE BEEN NECESSARY. SAID PHOTOS ARE CONSIDERED TO BE MORE INDICATIVE OF THE SUBJECT'S EXTERIOR CONDITION AT THE TIME OF IT'S SALE.

*PLEASE BE ADVISED THAT THIS FORM REPORT CONTAINS THE TERM "INSPECTION". WHERE EVER THIS TERM IS USED IT IS TO BE REPLACED WITH THE TERM "VIEWED" OR ANY EXTENSION THEREOF.

**PLEASE BE ADVISED THAT THIS FORM REPORT CONTAINS THE TERM "ESTIMATE OF VALUE". WHERE EVER THIS TERM EXISTS IT IS TO BE REPLACED WITH THE TERM "OPINION OF VALUE".

ZONING
THE APPRAISER CAN NOT MAKE A LEGAL DETERMINATION AS TO THE SUBJECT'S ZONING. IF WHAT HAS BEEN PRESUMED AS LEGAL IS FOUND TO BE OTHERWISE THEN THE CERTIFICATION OF VALUE IS REVOKED. IF SUCH A SCENARIO PRESENTS ITSELF, THE APPRAISER IS TO BE GRANTED ADDITIONAL TIME, AT AN ADDITIONAL FEE, TO ANALYZE THE NEW DISCOVERY AND IT'S AFFECT, IF ANY, ON THE SUBJECT'S VALUE.

EXPOSURE TIME
BASED UPON THE SUBJECT'S CURRENT CONDITION, THE CURRENT MARKET CONDITIONS, AND PROVIDED THE SUBJECT WAS THEORETICALLY LISTED WITHIN 5% OF THIS OPINION OF VALUE IN CONJUNCTION WITH AN EFFECTIVE MARKETING PLAN, THE ESTIMATED EXPOSURE TIME IS 1-60 DAYS. ESTIMATED EXPOSURE TIME IS REQUIRED TO BE ESTIMATED BY USPAP.

THE INFORMATION IDENTIFIED UNDER THE CURRENTLY LISTED AND SOLD PROPERTIES SECTION IS A COMPILATION OF PROPERTIES THAT HAVE BEEN SCREENED BASED ON GENERIC CHARACTERISTICS IN CONJUNCTION WITH SALIENT FEATURES SHARED BY THE SUBJECT.

RANGE OF PRICE FOR HOUSING IS BASED UPON A 12 MONTH SEARCH OF THE MLS. THE RANGE INDICATED IS NOT THE ALL TIME HIGH, LOW, OR PREDOMINANT VALUES, ONLY THAT WHICH ARE RELEVANT TO THE PAST YEAR AS REPORTED IN THE TREND MULTIPLE LISTING SERVICE.

NOTICE TO BORROWER
THE APPRAISER CANNOT DISCUSS THIS REPORT WITH ANY PARTY NOT AN INTENDED USER (PRIVACY LAWS) AND THE APPRAISER IS UNDER NO OBLIGATION TO "UPDATE", "RECERTIFY", OR OTHERWISE MODIFY THIS REPORT IN VIOLATION OF ADVISORY OPINIONS ISSUED BY THE APPRAISAL FOUNDATIONS USPAP, EXCEPT TO MAKE CORRECTIONS TO ACTUAL ERRORS.

THE APPRAISER CAN DEVELOP A NEW APPRAISAL IN A NEW RELATIONSHIP OF THE SAME PIECE OF PROPERTY DURING THE SAME TIME SO LONG AS ORIGINAL CLIENT-APPRAISER CONFIDENTIALITY PROVISIONS ARE NOT VIOLATED.

Market Conditions
ALL TYPES OF FINANCING ARE AVAILABLE FOR MORTGAGES IN THIS AREA.  BUYDOWNS AND SELLER ASSISTANCE ARE COMMON WITH NO AFFECT ON THE MARKET. A REVIEW OF CURRENT LISTINGS AND UNDER CONTRACT SALES INDICATE THAT PROPERTY VALUES ARE STABLE. ESTIMATED MARKETING TIMES HAVE HISTORICALLY RANGED FROM 3-6 MONTHS.

File No. 7CB214| Page # 11 of 18|

## Subject Photo Page

| Borrower | JACOBS | | | | |
|---|---|---|---|---|---|
| Property Address | 817 MATLACK DRIVE | | | | |
| City | MOORESTOWN | | | | |
| Client | COMMERCE BANK, N.A. | County  BURLINGTON | State  N.J | Zip Code  08057 | |



**Subject Front**

817 MATLACK DRIVE
| | |
|---|---|
| Sales Price | 2,040,000 |
| Gross Living Area | 6,272 |
| Total Rooms | 12 |
| Total Bedrooms | 7 |
| Total Bathrooms | 7+2 |
| Location | AVERAGE |
| View | AVERAGE |
| Site | 25,740 Sq.Ft. |
| Quality | GOOD |
| Age | 1 |



**Subject Rear**



**Subject Street**

## Photograph Addendum

File No. 7CB214  Page #13 of 18

| Borrower | JACOBS | | | | |
|---|---|---|---|---|---|
| Property Address | 817 MATLACK DRIVE | | | | |
| City | MOORESTOWN | County BURLINGTON | | State NJ | Zip Code 08057 |
| Client | COMMERCE BANK, N.A. | | | | |







## Photograph Addendum

File No. 7C8214| Page # 14 of 18|

| Borrower | JACOBS | | | | |
|---|---|---|---|---|---|
| Property Address | 817 MATLACK DRIVE | | | | |
| City | MOORESTOWN | | | | |
| Client | COMMERCE BANK, N.A. | County BURLINGTON | | State NJ | Zip Code 08057 |



Comments:



Comments:



Comments:



Comments:

## Comparable Photo Page

File No. 7C0214 Page # 15 of 18

| | |
|---|---|
| Borrower | JACOBS |
| Property Address | 817 MATLACK DRIVE |
| City | MOORESTOWN |
| Client | COMMERCE BANK, N.A. |

County BURLINGTON    State NJ    Zip Code 08057



### Comparable 1
804 MATLACK DRIVE

| | |
|---|---|
| Prox. to Subject | 0.03 miles E |
| Sales Price | 1,850,000 |
| Gross Living Area | 5,643 |
| Total Rooms | 10 |
| Total Bedrooms | 6 |
| Total Bathrooms | 5+2 |
| Location | AVERAGE |
| View | AVERAGE |
| Site | 30,000+- Sq.Ft. |
| Quality | GOOD |
| Age | NEW |



### Comparable 2
807 RIVERTON ROAD

| | |
|---|---|
| Prox. to Subject | 0.18 miles NE |
| Sales Price | 1,900,000 |
| Gross Living Area | 5,534 |
| Total Rooms | 10 |
| Total Bedrooms | 5 |
| Total Bathrooms | 5+1 |
| Location | AVERAGE |
| View | AVERAGE |
| Site | 2.1+-ACRES |
| Quality | GOOD |
| Age | 10+- |



### Comparable 3
321 E OAK AVENUE

| | |
|---|---|
| Prox. to Subject | 1.36 miles SE |
| Sales Price | 2,900,000 |
| Gross Living Area | 5,446 |
| Total Rooms | 13 |
| Total Bedrooms | 8 |
| Total Bathrooms | 4+1 |
| Location | AVERAGE |
| View | AVERAGE |
| Site | 6+-ACRES |
| Quality | AVERAGE |
| Age | 91+- |



**Location Map**

| Borrower | JACOBS | | | | |
|---|---|---|---|---|---|
| Property Address | 817 MATLACK DRIVE | | | | |
| City | MOORESTOWN | | | | |
| Client | COMMERCE BANK, N.A. | County | BURLINGTON | State | NJ | Zip Code | 08057 |



# EXHIBIT F

# LOAN COMMENTS

| | |
|---|---|
| Loan Number: | ████264 |
| Borrower Name(s): | Scott Jacobs, Traci E Jacobs, Miriam K Jacobs |
| Property Address: | 817 Matlack Drive, Moorestown, NJ |
| Print Date: | July 24, 2008 |

| USER | DATE ADDED / COMMENT |
|---|---|

---- GENERAL COMMENTS----

1.   CHRISTOPHER FOSTIK          01/14/2008  11:51:25 am
Field review supports appraisers estimate of $1,950,000. Comp's # 1 and #3 GLA will need to be corrected per section 37 of field review.
Gave appraisals back to Jeff Cole

2.   CHRISTOPHER FOSTIK          01/14/2008  8:35:13 am
Received appraisal to review

3.   JEAN COSTA                  01/4/2008  3:06:10 pm
borrower requested specific denial letter

4.   ERIC MCDOWEL                01/4/2008  2:45:30 pm
completed 2nd uw, printed 2 copies of the adverse letter.. file to C. Chou log.

5.   ERIC MCDOWEL                01/4/2008  2:42:22 pm
UW 2nd Rev: Loan is DECLINED for Collateral, Value or Type of Collateral not Sufficient/Unacceptable Property. Appraisal came in lower
than the sales price, LTV increased above 83%, Max allowable LTV per guidelines is 80%. Loan is declined for collateral, value of collateral
is not sufficient.

6.   JEAN COSTA                  01/4/2008  1:56:14 pm
file is DENIED: COLLATERAL- Value or type of collateral not sufficient/unacceptable property type. Do not have field review at this time.
Value is came in lower then sales price

7.   LANNI BARKOW                01/4/2008  12:13:25 pm
Borrower is declining to mover forward at this time with the transaction due to the low appraised value.

8.   JEFFREY COLE                01/4/2008  12:06:53 pm
Field review is with LSI order # 4092632 confirmed my order received and assigned and should get it back by Tuesday 1/8 at the latest
phone for LSI 877-848-8128

9.   JEFFREY COLE                01/3/2008  3:43:04 pm
l/m for borrower to go over terms and conditions at number liste4d on the fraud alert, faxed out confirmation of title order to fidelity title

10.  JEFFREY COLE                01/3/2008  3:11:12 pm
ordered field review sent out adjustable rate disclosure

11.  JEFFREY COLE                01/3/2008  2:46:42 pm
just received file

12.  LANNI BARKOW                01/2/2008  5:25:25 pm
mailed commitment to borrower and faxed pages 1&2 to attorney.

13.  JEAN COSTA                  01/2/2008  4:17:12 pm
snap shot in file signed by Mike Copley

14.  CYNTHIA KAPITAN             12/27/2007  8:49:01 am
Recd in uw

15.  LANNI BARKOW                12/26/2007  12:53:52 pm
Gave JC their dec page and escrow statement. Also game him print out of Administaff web site for explanantion.

16.  LANNI BARKOW                12/21/2007  2:24:46 pm
borrower fwd. their cureent dec. page.

17.  LANNI BARKOW                12/21/2007  2:24:20 pm
borrower forwarded their current escrow statment.

18.  LANNI BARKOW                12/21/2007  2:23:58 pm

TDB00035

19.   LANNI BARKOW                12/21/2007  2:23:56 pm
I spoke to the borrwer regarding the Administaff income, and it wil continue, they do not use them for payroll any more.

20.   Jamie Zirman                12/21/2007  11:48:40 am
Fraud alert on B1 and B2 credit. Need processor cert to verify clients applying for mortgage prior to credit being lent. Spoke to LO need to know what affillated W2 income is for borrower 1 and 3. Straight W2 ongoing? Self empoloyed 1120? Per LO taxesand HOI are escrowed on retained properties will need to conditoion for mtg statements to verify. Also will need biz returns and P and L. Returning to processor.

21.   LANNI BARKOW                12/19/2007  3:14:07 pm
I submitted assets statements (2 mos.) and Mimi's 2 yrs. tax reutnrs into the file while it is still in Lakesha's area.

22.   LAKESHA JONES               12/18/2007  4:52:41 pm
Stacked file, ordered flood cert, updated flood ins tab, ordered appraisal through First Jersey, and mailed out GFE, TIL, GFE Addendum, 4506, supplemental app kit, 1003, and IO disclosures to borrowers. Turned file over to Jeff.

23.   LAKESHA JONES               12/18/2007  3:57:30 pm
FEE TRACKING SET Fee Req'd Reason Amount Rec'd Type Check/Conf # NSFCCD DateNSF GL # ------------------------------------------
------------------------------------------------------------------------------------------------------------
------------------------- App Fee Yes 295.0 12/18/07 Visa 39598047/334760 No 45060000

24.   LANNI BARKOW                12/18/2007  12:30:08 pm
Scott is non-hispanic and male.

25.   LANNI BARKOW                12/18/2007  12:26:42 pm
Commitment due 1/7/8

26.   LANNI BARKOW                12/18/2007  11:02:01 am
Attorney: Edward Hovatter: 856-662-0700

27.   LANNI BARKOW                12/18/2007  10:59:59 am
I am submitting pays stubs for Traci, and tax returns for Scott. Mimi's reutrns have been requested. Agreement of sale is being submitted.

28.   LANNI BARKOW                12/18/2007  10:58:43 am
Title insurance will be chosen by borrower.

TDB00036

# EXHIBIT G

**Sherman, Silverstein, Kohl, Rose & Podolsky, P.A.**
A Professional Corporation
Fairway Corporate Center
4300 Haddonfield Road - Suite 311
Pennsauken, New Jersey 08109
Telephone: (856) 662-0700 - Facsimile: (856) 488-4744
www.sskrplaw.com



**Edward J. Hovatter, Esquire**
Direct Dial: (856) 661-2091
e-mail: ehovatter@sskrplaw.com

January 7, 2008

**Via Fax (856-235-6898) and Regular Mail**

Rudi Grueneberg, Esquire
704 East Main Street
Moorestown, NJ  08057

       Re:   Jacobs From Reed
              Purchase and Sale of 817 Matlack Street, Moorestown, NJ  08057
              Our File No.:  10657.101

Dear Rudi:

To follow-up from our telephone conference of January 4, 2008, with regard to the above referenced property, I am enclosing herewith a Statement of Credit Denial, Termination or Change dated January 4, 2008 issued by Commerce Bank, N.A., together with the appraisal of real property prepared by Robert J. Jones, Jr.  As you can see, the appraised value of the Property is $90,000 less than the contract sale price.  Based on this information, and pursuant to Paragraph 9 of the Contract for Sale, the Buyer is hereby terminating same effective immediately.

Please provide me with your client's written authorization to have the Deposit current held by B.T. Edgar & Son released to my clients.

Should you have any comments or questions, or wish to discuss this matter in further detail, please do not hesitate to contact me.

Very truly yours,

SHERMAN, SILVERSTEIN, KOHL, ROSE & PODOLSKY, P.A.
A Professional Corporation

Edward J. Hovatter

EJH/mat
cc:   Scott Jacobs
       Holly Donahue
       Melissa Young
       Louise Marsh Carter

## STATEMENT OF CREDIT DENIAL,    RMINATION OR CHANGE          Date: **January 04, 2008**

APPLICANT'S NAME: Scott Jacobs
        350 Tom Brown Road
        Moorestown, NJ 08057
ADDRESS:
CITY, STATE, ZIP:

CREDITOR'S NAME: Commerce Bank, N.A.
ADDRESS:    **6000 Atrium Way**
CITY, STATE, ZIP:  **MOUNT LAUREL, NEW JERSEY 08054**
TELEPHONE:   **888-751-9000**

**I.**   Description of Account, Transaction, or Requested Credit: 817 Matlack Drive
                      Moorestown, NEW JERSEY 08057

**II.**   Description of Action Taken: Application denied by financial institution.

**III.**   Principal Reason(s) for Credit Denial, Termination or Other Action Taken Concerning Credit:

   **A. Credit**

| | | |
|---|---|---|
| ☐ No credit file | ☐ Garnishment or attachment | |
| ☐ Insufficient number of credit references provided | ☐ Foreclosure or repossession | |
| ☐ Limited credit experience | ☐ Collection action or judgment | |
| ☐ Poor credit performance with us | ☐ Unacceptable type of credit references provided | |
| ☐ Delinquent past or present credit obligations with others | ☐ Unable to verify credit references | |
| ☐ Bankruptcy | ☐ Number of recent inquiries on credit bureau report | |

   **B. Income and Employment**

| | |
|---|---|
| ☐ Unable to verify income | ☐ Unable to verify employment |
| ☐ Income insufficient for amount of credit requested | ☐ Temporary or irregular employment |
| ☐ Excessive obligations in relation to income | ☐ Length of employment |

   **C. Residence**

| | |
|---|---|
| ☐ Length of residence | ☐ Temporary residence |
| ☐ Unable to verify residence | |

   **D. Other**

| | |
|---|---|
| ☐ Credit application incomplete | ☒ Specify: **Value or Type of Collateral not Sufficient/Unacceptable** |
| ☒ Value or type of collateral not sufficient | **Property** |

**IV.**   Disclosure of Use of Information Obtained from an Outside Source:

   ☐ Disclosure Inapplicable

   ☐ Our credit decision was based in whole or in part on information obtained in a report from the consumer reporting agency listed below. You have a right under the Fair Credit Reporting Act to know the information contained in your credit file at the consumer reporting agency. The reporting agency played no part in our decision and is unable to supply specific reasons why we have denied credit to you. You also have a right to a free copy of your report from the reporting agency, if you request it no later than 60 days after you receive this notice. In addition, if you find that any information contained in the report you receive is inaccurate or incomplete, you have the right to dispute the matter with the reporting agency.

    Name:      **LandSafe**
    Street Address:  **7105 Corporate Drive**
    City, State, Zip:  **Plano, TX. 75024**
    Telephone:    **(877) 572-5673**

   (If the Consumer Reporting Agency compiles and maintains files on consumers on a nationwide basis, provide a toll-free telephone number.)

   ☒ Our credit decision was based in whole or in part on information obtained from an affiliate or from an outside source other than a consumer reporting agency. Under the Fair Credit Reporting Act, you have the right to make a written request, no later than 60 days after you receive this notice, for the disclosure of the nature of this information.

**V.**   ECOA Notice

   The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal Agency that administers compliance with this law concerning this creditor is:

        Office of the Comptroller of the Currency
Agency:  Customer Assistance Group
      1301 McKinney St, Suite 3450
      Houston, TX 77010-9050
If you have any questions regarding this Notice, contact us at the address and/or telephone number provided above.

Notice   ☒ Mailed   ☐ Delivered   ☐ Emailed   Date: **January 4, 2008**   By: _____

File No. 7CB214 Page # 1 of 18



# APPRAISAL OF REAL PROPERTY

### LOCATED AT:
817 MATLACK DRIVE
BLOCK 3803, LOT 2
MOORESTOWN, NJ 08057

### FOR:
COMMERCE BANK, N.A.

### AS OF:
December 24, 2007

### BY:
Robert J Jones, Jr IFA

Form GA2 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

FIRST JERSEY APPRAISAL GROUP

File No. 7CB214 | Page #2 of 18

# Uniform Residential Appraisal Report

LOAN #1470061264
File # 7CB214

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | |
|---|---|
| Property Address 817 MATLACK DRIVE | City MOORESTOWN | State NJ | Zip Code 08057 |
| Borrower JACOBS | Owner of Public Record REED | County BURLINGTON |
| Legal Description BLOCK 3803, LOT 2 | | |
| Assessor's Parcel # 22.3803.2 | Tax Year 2007 | R.E. Taxes $ 29,702 |
| Neighborhood Name STREET OF CUSTOM HOMES | Map Reference FRANKLIN E4/3299 | Census Tract 7005.00 |
| Occupant ☒ Owner ☐ Tenant ☐ Vacant | Special Assessments $ N/A | ☐ PUD HOA $ N/A ☐ per year ☐ per month |
| Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe) | | |
| Assignment Type ☒ Purchase Transaction ☐ Refinance Transaction ☐ Other (describe) | | |
| Lender/Client COMMERCE BANK, N.A. | Address 6000 ATRIUM WAY, MT LAUREL, NJ | |

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?  ☒ Yes  ☐ No

Report data source(s) used, offering price(s), and date(s).  MLS #5097131 REPORTS A PENDING LISTING WITH AN ASKING PRICE OF $2,175,000.
THE SUBJECT WAS EXPOSED TO THE MARKET FOR 110 DAYS.

I ☒ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.  TYPICAL CONTRACT REVIEWED. NO ATYPICAL SELLER INCLUSIONS OR CONCESSIONS NOTED IN COPY SUPPLIED AND ON RECORD WITH APPRAISER.

| | |
|---|---|
| Contract Price $ 2,040,000 | Date of Contract 12/8/07 | Is the property seller the owner of public record? ☒ Yes ☐ No Data Source(s) TREND |

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower?  ☐ Yes  ☒ No
If Yes, report the total dollar amount and describe the items to be paid.  NONE NOTED  *THERE IS A CONTRACTUAL REPAIR NOTED IN THE AGREEMENT. THE BASEMENT LEVEL BATHROOM IS TO BE COMPLETED. THIS COMPLETED BATHROOM WILL BE ENCOMPASSED IN THIS REPORT.

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | One-Unit Housing Trends | | One-Unit Housing | | Present Land Use % |
|---|---|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | Property Values ☐ Increasing ☒ Stable ☐ Declining | | PRICE $ (000) | AGE (yrs) | One-Unit 75 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | | 136.5 Low | NEW | 2-4 Unit % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | | 2,900 High | 100+ | Multi-Family % |
| | | | 600+- Pred. | 20+- | Commercial 10 % |
| | | | | | Other 15 % |

Neighborhood Boundaries  RT 603 (N-NE-E), MAIN STREET (SE), CHURCH RD (S-SW), AND THE RT 130 9W). THE MARKETING AREA EXTENDS THROUGHOUT PORTIONS OF THE TWP.

Neighborhood Description  A HIGH END CUSTOM HOME COMMUNITY THAT CONSISTS OF A BALANCED MIX OF CONTIGUOUS DWELLING STYLES. THIS LOCATION OFFERS RELATIVELY EASY ACCESS TO PLACES OF WORSHIP, RECREATION, EDUCATION, AND SHOPPING. SERVICE TYPE COMMERCIAL USES ARE NEARBY.

Market Conditions (including support for the above conclusions)  STATISTICAL ANALYSIS OF THE MARKET OVER THE PAST 24 MONTHS (broken down into two 12 month periods preceding this report) INDICATES THAT THIS MARKET HAS INCREASED-.01% ON AVERAGE. REVIEW OF CURRENT LISTINGS AND PENDINGS IN THE MARKET INDICATE A STABLE MARKET WITH DEMAND AND SUPPLY IN BALANCE.

| | |
|---|---|
| Dimensions 143 X 180 IRR | Area 25,740 Sq.Ft. | Shape RECTANGULAR | View AVERAGE |
| Specific Zoning Classification R1A | Zoning Description RESIDENTIAL | |
| Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe) | | |

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use?  ☒ Yes  ☐ No  If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street MACADAM | ☒ | |
| Gas | ☒ | | Sanitary Sewer | ☒ | | Alley | | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No   FEMA Flood Zone X   FEMA Map # 0005C   FEMA Map Date 1/19/96

Are the utilities and off-site improvements typical for the market area?  ☒ Yes  ☐ No  If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)?  ☐ Yes  ☒ No  If Yes, describe
NO ADVERSE SITE CONDITIONS OR EXTERNAL FACTORS NOTED. NO ADVERSE EASEMENTS, ENCROACHMENTS, ENVIRONMENTAL CONDITIONS, OR LAND USES NOTED ON THE SITE OR IN THE IMMEDIATE AREA.

| General Description | Foundation | Exterior Description materials/condition | Interior materials/condition |
|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | ☐ Concrete Slab ☐ Crawl Space | Foundation Walls PRD CONC - GO | Floors H/W+W/W-GOOD |
| # of Stories 2.5 | ☒ Full Basement ☐ Partial Basement | Exterior Walls Stucco+Vnl fk-GO | Walls DRYWALL - GOOD |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | Basement Area 2,261 sq.ft. | Roof Surface COMP SH -GOOD | Trim/Finish WOOD-GOOD |
| ☒ Existing ☐ Proposed ☐ Under Const. | Basement Finish 50 % | Gutters & Downspouts ALUM - GOOD | Bath Floor CER TILE-GOOD |
| Design (Style) COLONIAL | ☐ Outside Entry/Exit ☐ Sump Pump | Window Type WD Csmt+DH-GD | Bath Wainscot CER TL - GOOD |
| Year Built 2006 | Evidence of ☐ Infestation | Storm Sash/Insulated INSULATED | Car Storage ☐ None |
| Effective Age (Yrs) 1 | ☐ Dampness ☐ Settlement | Screens YES | ☒ Driveway # of Cars 4-8 |
| Attic ☒ None | Heating ☒ FWA ☐ HWBB ☐ Radiant | Amenities | Driveway Surface ASPHALT |
| ☐ Drop Stair ☐ Stairs | ☐ Other Fuel GAS | Woodstove(s) # | ☒ Garage # of Cars 3 |
| ☐ Floor ☐ Scuttle | Cooling ☒ Central Air Conditioning | ☐ Fireplace(s) # Fence | ☐ Carport # of Cars |
| ☐ Finished ☐ Heated | ☐ Individual ☐ Other | ☐ Patio/Deck ☐ Porch | ☐ Att. ☐ Det. ☒ Built-in |
| | | ☐ Pool ☐ Other | |

Appliances ☐ Refrigerator ☒ Range/Oven ☒ Dishwasher ☒ Disposal ☒ Microwave ☐ Washer/Dryer ☐ Other (describe)

Finished area above grade contains:  12 Rooms  7 Bedrooms  7+2 Bath(s)  6,272 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.).  INSULATED WINDOWS, 2 FIREPLACES, PARTIAL FINISHED BASEMENT WITH FULL BATHROOM, SINCE PURCHASE THE THIRD FLOOR HAS BEEN FINISHED INTO 1167 SQ FT WITH 2 BEDROOM SUITES WITH BATHS.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).  THE SUBJECT IS A GOOD QUALITY DWELLING THAT IS IN OVERALL GOOD CONDITION. THE SUBJECT EXHIBITS ONGOING MAINTENANCE AND GOOD QUALITY UPGRADING.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property?  ☐ Yes  ☒ No  If Yes, describe

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)?  ☒ Yes  ☐ No  If No, describe

| | | |
|---|---|---|
| Freddie Mac Form 70 March 2005 | Page 1 of 6 | Fannie Mae Form 1004 March 2005 |

File No. 7C8214| Page #3 of 18

# Uniform Residential Appraisal Report

LOAN #1470061264
File # 7C8214

There are **4** comparable properties currently offered for sale in the subject neighborhood ranging in price from $ **2,095,000** to $ **2,190,000**
There are **3** comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ **1,850,000** to $ **2,900,000**

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 817 MATLACK DRIVE | 804 MATLACK DRIVE | | 807 RIVERTON ROAD | | 321 E OAK AVENUE | |
| | MOORESTOWN, NJ 08057 | MOORESTOWN | | MOORESTOWN | | MOORESTOWN | |
| Proximity to Subject | | 0.03 miles E | | 0.18 miles NE | | 1.36 miles SE | |
| Sale Price | $ 2,040,000 | $ 1,850,000 | | $ 1,900,000 | | $ 2,900,000 | |
| Sale Price/Gross Liv. Area | $ 325.26 sq.ft. | $ 327.84 sq.ft. | | $ 343.33 sq.ft. | | $ 532.50 sq.ft. | |
| Data Source(s) | | MLS/BROKER | | MLS/BROKER | | MLS/BROKER | |
| Verification Source(s) | | TAX ASSESSOR | | TAX ASSESSOR | | TAX ASSESSOR | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | CONV/1 DOM | | CONV/23 DOM | | CONV/NA DOM | |
| Concessions | | NONE NOTED | | NONE NOTED | | NONE NOTED | |
| Date of Sale/Time | | 8/07 | | 1/07 | | 5/07 | |
| Location | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Leasehold/Fee Simple | Fee Simple | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | 25,740 Sq.Ft. | 30,000+- Sq.Ft. | | 2.1+-ACRES | -10,000 | 6+-ACRES | -50,000 |
| View | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Design (Style) | COLONIAL | COLONIAL | | French Colonial | nominal | Victorian | nominal |
| Quality of Construction | GOOD | GOOD | | GOOD | | AVERAGE | +25,000 |
| Actual Age | 1 | NEW | nominal | 10+- | +10,000 | 91+- | +90,000 |
| Condition | GOOD | NEW | nominal | AVERAGE | +10,000 | AVERAGE | +10,000 |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 12  7  7+2 | 12  6  5+2 | +30,000 | 10  5  5+1 | +37,500 | 13  8  4+1 | +52,500 |
| Gross Living Area | 6,272 sq.ft. | 5,643 sq.ft. | +62,900 | 5,534 sq.ft. | +73,800 | 5,446 sq.ft. | +82,600 |
| Basement & Finished | 2,261 Sq.Ft. | FULL BASMNT | | FULL BASMNT | | FULL BASMNT | |
| Rooms Below Grade | P-FIN W/BATH | P-FIN W/BATH | | P-FIN W/BATH | | UNFINISHED | +25,000 |
| Functional Utility | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Heating/Cooling | GFWA-C/A | GFWA-C/A | | GFWA-C/A | | GFWA-C/A | |
| Energy Efficient Items | STANDARD | STANDARD | | STANDARD | | STANDARD | |
| Garage/Carport | 3 CAR | 3 CAR | | 3 CAR | | 3 CAR+CARPT | -5,000 |
| Porch/Patio/Deck | NONE | PATIO | -5,000 | PATIO,DECK | -10,000 | 2 ENC PORCH | -15,000 |
| | 2 FIREPLACES | 1 FIREPLACE | +10,000 | 3 FIREPLACES | -10,000 | 5 FIREPLACES | -30,000 |
| Net Adjustment (Total) | | ☒ +  ☐ - | $ 97,900 | ☒ +  ☐ - | $ 101,300 | ☒ +  ☐ - | $ 185,100 |
| Adjusted Sale Price | | Net Adj.  5.3 % | | Net Adj.  5.3 % | | Net Adj.  6.4 % | |
| of Comparables | | Gross Adj.  5.8 % | $ 1,947,900 | Gross Adj.  8.5 % | $ 2,001,300 | Gross Adj.  13.3 % | $ 3,085,100 |

☒ I did  ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☒ did ☐ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s)  MLS/TREND/NJACTB.ORG
My research ☐ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s)  MLS/TREND/NJACTB.ORG
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 6/2006 | NONE NOTED UNDER | NONE NOTED UNDER | NONE NOTED UNDER |
| Price of Prior Sale/Transfer | $1,571,619 | NORMAL COURSE OF | NORMAL COURSE OF | NORMAL COURSE OF |
| Data Source(s) | TREND/MLS | BUSINESS | BUSINESS | BUSINESS |
| Effective Date of Data Source(s) | 12/31/07 | 12/31/07 | 12/31/07 | 12/31/07 |

Analysis of prior sale or transfer history of the subject property and comparable sales   THE SUBJECT WAS PURCHASED WITHIN 3 YEARS OF THIS
REPORT. SAID SALE WAS INDICATIVE OF A DISTRESSED PROPERTY. AS NOTED IN THIS REPORT, THE SUBJECT HAS UNDERGONE
EXTENSIVE EXPANSION OF THE 3RD FLOOR.

Summary of Sales Comparison Approach   ALL OF THE COMPARABLES SHARE SALIENT FEATURES OF THE SUBJECT. ALL SALES ARE CLOSED
WITH VERIFIED SETTLEMENT DATES. ONE OR MORE OF THE COMPARABLES HAS CLOSED IN EXCESS OF 6 MONTHS. THE USE OF
SAID SALE(s) WAS NECESSARY DUE TO THE LACK OF A MORE RECENT SALE TO BE LOCATED, AND/OR VERIFIED, WHEN
APPLICABLE, A TIME ADJUSTMENT HAS BEEN MADE.

Indicated Value by Sales Comparison Approach $  1,950,000

Indicated Value by: Sales Comparison Approach $  1,950,000    Cost Approach (if developed) $  1,960,097    Income Approach (if developed) $  N/A

THE SALES COMPARISON APPROACH HAS BEEN GIVEN THE MOST WEIGHT. THE COST AND INCOME APPROACHED HAVE BEEN
GIVEN CONSIDERATION AND ARE NOT NECESSARY IN ORDER TO PROVIDE CREDIBLE RESULTS.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been
completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the
following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting
conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$ 1,950,000 , as of  December 24,2007 , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 70 March 2005                    Page 2 of 6                    Fannie Mae Form 1004 March 2005

File No. 7CB214 Page #4 of 18

# Uniform Residential Appraisal Report

LOAN #1470061264
File # 7CB214

LAND SIZE ADJUSTMENTS HAVE BEEN MADE AT APPROX $10,000 PER ACRE. THE SUBJECT'S EXACT LOT SIZE IS AN ESTIMATE BASED UPON IT'S IRREGULAR LOT LINES.

AGE ADJUSTMENTS WERE WARRANTED FOR C2 AND C3. THE AGE ADJUSTMENTS HAVE BEEN MADE AT APPROX $1,000 PER DIFFERENCE IN YEAR/AGE. C1 IS NEW AND IS CONSIDERED EQUAL IN AGE APPEAL.

ALL OF THE SALES ARE UPPER END SALES. THE CONDITION ADJUSTMENT MADE IS INDICATIVE OF MARKET REACTION FOR THE SUBJECT'S GOOD/NEWER CONDITION.

ABOVE GRADE BATHROOM COUNT ADJUSTMENTS HAVE BEEN MADE AT $15,000 PER FULL BATH, APPLIED ACCORDINGLY.

GLA ADJUSTMENTS HAVE BEEN MADE AT $100 PER SQ FT. THIS IS AN UPPER END ADJUSTMENT THAT IS ENCOMPASSING THE QUALITY OF CONSTRUCTION AS WELL AS THE APPEAL OF THE INCREASED GLA. THIS FIGURE IS 50% OF COST ESTIMATE.

C3 ADJUSTED FOR IT'S UNFINISHED BASEMENT AND LACK OF A BATHROOM ON THIS LEVEL.

**

C1 IS A SETTLED SALE LOCATED ON THE SUBJECT'S STREET, BUILT BY THE SAME BUILDER. SAID SALE HAS BEEN GIVEN THE MOST WEIGHT. APPRAISER HAS RELIED UPON VERIFIABLE INFORMATION THROUGH THE TAX ASSESSOR FOR THIS SALE. THE AGENT FOR THE SUBJECT WAS ALSO THE AGENT FOR THIS SALE AND IS NOT CONSIDERED AN UNBIASED VERIFICATION SOURCE.

C2 IS AN OLDER SALE THAT HAS BEEN UTILIZED DUE TO THE LACK OF ANOTHER TRULY MORE SUITABLE SALE.

C3 WAS A PRIVATE SALE THAT DID NOT TAKE PLACE WITH AN MLS REALTOR. APPRAISER INTERVIEWED THE TAX ASSESSOR AND HIS ASSISTANT REGARDING THIS PROPERTY. BOTH WERE EXTREMELY KNOWLEDGEABLE WITH THIS PROPERTY AS THEY WILL BE RELYING UPON THIS SALE TO "HELP IN THEIR UPCOMING REVALUATION". CONDITION, ROOM COUNT, AND ALL RELEVANT INFORMATION TO THE VALUATION PROCESS HAS BEEN SUPPLIED BY THE TAX ASSESSORS OFFICE. THIS SALE IS DEEMED A USABLE SALE BY THE ASSESSOR IN THE TAX APPEAL PROCESS. THIS IS TRANSLATED TYPICALLY AS A VIABLE SALE. HOWEVER, THIS PROPERTY HAS AN EXTREMELY LARGE LAND SIZE AND HAS BEEN DISCOUNTED BY THE APPRAISER IN IT'S ULTIMATE VIABILITY. SAID SALE HAS BEEN SUPPLIED AS IT BRACKETS THE SUBJECT'S VALUE AND BEDROOM COUNT.

## COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value) THE LAND VALUE IS AN ESTIMATE BASED UPON A REVIEW OF RELEVANT/VERIFIABLE LAND SALES.

ESTIMATED ☒ REPRODUCTION OR ☐ REPLACEMENT COST NEW

Source of cost data  Marshall & Swift + local and customary costs

Quality rating from cost service  V-GD    Effective date of cost data  12/07 M & Sw

Comments on Cost Approach (gross living area calculations, depreciation, etc.)
THE COST APPROACH IS A REPRODUCTION COST AND SHOULD NOT BE CONSIDERED A VIABLE INSURANCE VALUE INDICATOR. THIS APPROACH IS FOR GUIDANCE ONLY.

| OPINION OF SITE VALUE | | | | =$ | 450,000 |
|---|---|---|---|---|---|
| DWELLING | 6,272 Sq.Ft. @ $ | 200.00 | | =$ | 1,254,400 |
| BASMT | 2,261 Sq.Ft. @ $ | 75.00 | | =$ | 169,575 |
| APPLIANCES, FIREPLACES | | | | =$ | 35,000 |
| Garage/Carport | 864 Sq.Ft. @ $ | 30.00 | | =$ | 25,920 |
| Total Estimate of Cost-New | | | | =$ | 1,484,895 |
| Less | Physical | Functional | External | | |
| Depreciation | 24,798 | | | =$( | 24,798) |
| Depreciated Cost of Improvements | | | | =$ | 1,460,097 |
| "As-is" Value of Site Improvements | | | | =$ | 50,000 |

Estimated Remaining Economic Life (HUD and VA only)    59 Years    INDICATED VALUE BY COST APPROACH    =$ 1,960,097

## INCOME APPROACH TO VALUE (not required by Fannie Mae)

Estimated Monthly Market Rent $ _____ X Gross Rent Multiplier _____ = $ _____    Indicated Value by Income Approach _____

Summary of Income Approach (including support for market rent and GRM)

## PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)? ☐ Yes ☐ No    Unit type(s) ☐ Detached ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

Total number of phases _____    Total number of units _____    Total number of units sold _____

Total number of units rented _____    Total number of units for sale _____    Data source(s) _____

Was the project created by the conversion of existing building(s) into a PUD? ☐ Yes ☐ No  If Yes, date of conversion.

Does the project contain any multi-dwelling units? ☐ Yes ☐ No  Data Source

Are the units, common elements, and recreation facilities complete? ☐ Yes ☐ No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association? ☐ Yes ☐ No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

Freddie Mac Form 70 March 2005

Fannie Mae Form 1004 March 2005

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Uniform Residential Appraisal Report

LOAN #1470061264
File # 7CB214

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

File No. 7C8214  Page # 6 of 16

# Uniform Residential Appraisal Report

LOAN #1470061264
File # 7CB214

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

# Uniform Residential Appraisal Report

LOAN #1470061264
File # 7CB214

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

SUPERVISORY APPRAISER'S CERTIFICATION:  The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature _____ IFA | Signature _____ |
| Name  Robert J Jones, Jr, IFA | Name _____ |
| Company Name  FIRST JERSEY APPRAISAL GROUP | Company Name _____ |
| Company Address  413 CRYSTAL LAKE AVENUE, SUITE 202, HADDONFIELD, NJ 08033 | Company Address _____ |
| Telephone Number  (856)931-7003 | Telephone Number _____ |
| Email Address  njappraiser1@comcast.net | Email Address _____ |
| Date of Signature and Report  December 31,2007 | Date of Signature _____ |
| Effective Date of Appraisal  December 24,2007 | State Certification # _____ |
| State Certification #  42RC001173 | or State License # _____ |
| or State License # | State _____ |
| or Other (describe)  State # | Expiration Date of Certification or License _____ |
| State  NJ | |
| Expiration Date of Certification or License  12/31/2007 | SUBJECT PROPERTY |
| | ☐ Did not inspect subject property |
| ADDRESS OF PROPERTY APPRAISED | ☐ Did inspect exterior of subject property from street |
| 817 MATLACK DRIVE | Date of Inspection _____ |
| MOORESTOWN, NJ 08057 | ☐ Did inspect interior and exterior of subject property |
| APPRAISED VALUE OF SUBJECT PROPERTY $   1,950,000 | Date of Inspection _____ |
| LENDER/CLIENT | |
| Name | COMPARABLE SALES |
| Company Name  COMMERCE BANK, N.A. | |
| Company Address  6000 ATRIUM WAY, MT LAUREL, NJ | ☐ Did not inspect exterior of comparable sales from street |
| | ☐ Did inspect exterior of comparable sales from street |
| Email Address | Date of Inspection _____ |

Freddie Mac Form 70 March 2005

Fannie Mae Form 1004 March 2005

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

File No. 7CB214 | Page #8 of 18

## Supplemental Addendum

| | | | | |
|---|---|---|---|---|
| Borrower | JACOBS | | | File No. 7CB214 |
| Property Address | 817 MATLACK DRIVE | | | |
| City | MOORESTOWN | County BURLINGTON | State NJ | Zip Code 08057 |
| Client | COMMERCE BANK, N.A. | | | |

BUSINESS AND COMMERCIAL USES ARE LOCATED WITHIN THE SUBJECT'S AREA. THESE USES ARE TYPICAL OF SIMILAR NEIGHBORHOODS AND HAVE NO ADVERSE AFFECT ON THE MARKET VALUE OF FUTURE MARKETABILITY OF THE SUBJECT PROPERTY.

THE VALUE ESTIMATED IN THIS REPORT IS BASED ON THE ASSUMPTION THAT THE PROPERTY IS NOT NEGATIVELY AFFECTED BY THE EXISTENCE OF HAZARDOUS SUBSTANCES OR DETRIMENTAL ENVIRONMENTAL CONDITIONS. THE APPRAISER'S ROUTINE INSPECTION OF AND INQUIRIES ABOUT THE SUBJECT DID NOT DEVELOP ANY INFORMATION THAT INDICATED ANY APPARENT SIGNIFICANT HAZARDOUS SUBSTANCES OR DETRIMENTAL ENVIRONMENTAL CONDITIONS WHICH WOULD AFFECT THE PROPERTY NEGATIVELY. IT IS POSSIBLE THAT TESTS AND INSPECTIONS MADE BY A QUALIFIED HAZARDOUS SUBSTANCE AND ENVIRONMENTAL EXPERT WOULD REVEAL SUCH CONDITIONS. THE APPRAISER ASSUMES NO RESPONSIBILITY FOR THE PRESENT OF RADON GAS, OR ANY OTHER HAZARDOUS SUBSTANCE OR ENVIRONMENTAL CONDITION THAT MAY EXIST.

THIS REPORT PRESUMES THAT RADON IS NOT PRESENT IN THE SUBJECT PROPERTY ABOVE 0.02 WORKING LEVELS (4 PICOCURIES/LITER), AND THEREFORE, NO CONSIDERATION HAS BEEN GIVEN THE POTENTIAL ADVERSE AFFECT ON THE VALUE OF THE SUBJECT PROPERTY, IF ANY, THAT RADON MIGHT CAUSE.

ALL MECHANICAL SYSTEMS INCLUDING THE HEATING, ELECTRICAL, AND PLUMBING SYSTEMS APPEAR, UPON A CURSORY VISUAL INSPECTION, (UNLESS THIS IS AN EXTERIOR ONLY PHYSICAL VIEWING) TO BE WORKING ORDER, UNLESS OTHER WISE NOTED IN THE ATTACHED APPRAISAL OR VC SHEET. NO WARRANTIES ARE EXPRESSED OR IMPLIED BY THIS STATEMENT.

THERE ARE NO SPECIAL CONDITIONS OR OTHER REQUIREMENTS OTHER THEN THOSE MENTIONED IN THIS APPRAISAL THAT WOULD AFFECT MARKET VALUE OR FUTURE MARKETABILITY IN THIS REPORT.

PERSONAL PROPERTY, ie FURNITURE, WINDOW TREATMENTS, BUILT-INS ETC, WHICH HAVE BEEN INCLUDED IN THE SALES PRICE HAVE BEEN GIVEN NON VALUE IN THIS REPORT AS THEY ARE NON-REALTY ITEMS.

I CERTIFY TO THE BEST OF MY KNOWLEDGE AND BELIEF:

-THE STATEMENTS OF FACT IN THIS REPORT ARE TRUE AND CORRECT

-THE REPORTED ANALYSES, OPINIONS, AND CONCLUSIONS ARE LIMITED ONLY BY THE REPORTED ASSUMPTIONS AND LIMITING CONDITIONS, AND ARE MY PERSONAL, UNBIASED, PROFESSIONAL ANALYSIS, AND OPINION AND CONCLUSIONS

-I HAVE NO PRESENT OR PROSPECTIVE INTEREST IN THE PROPERTY THAT IS THE SUBJECT OF THIS REPORT, AND I HAVE NO PERSONAL INTEREST OR BIAS WITH RESPECT TO THE PARTIES INVOLVED.

-MY COMPENSATION IS NOT CONTINGENT ON AN ACTION OR EVENT RESULTING FROM THE ANALYSIS, OPINIONS, OR CONCLUSIONS IN, OR THE USE OF THIS REPORT.

-MY ANALYSIS, OPINIONS, AND CONCLUSIONS WERE DEVELOPED, AND THIS REPORT HAS BEEN PREPARED IN CONFORMITY WITH THE UNIFORM STANDARDS OF PROFESSIONAL PRACTICE (USPAP)

-THE "APPRAISER" HAS MADE A PERSONAL INSPECTION OF THE PROPERTY THAT IS THE SUBJECT OF THIS REPORT. IF THIS IS AN EXTERIOR ONLY VIEWING, A CURBSIDE VIEWING ONLY HAS TAKEN PLACE.

-UNLESS NOTED OTHERWISE, NO ONE PROVIDED SIGNIFICANT PROFESSIONAL ASSISTANCE TO THE PERSON SIGNING THIS REPORT.

-WE HAVE MADE AN INDEPENDENT VALUE JUDGEMENT ON THE SUBJECT PROPERTY.

-THIS APPRAISAL WAS NOT BASED ON A REQUESTED MINIMUM VALUATION, A SPECIFIC VALUATION, OR THE APPROVAL OF A LOAN.

HIGHEST AND BEST USE

THE REASONABLE AND PROBABLE USE THAT SUPPORTS THE HIGHEST PRESENT VALUE, AS DEFINED, AS OF THE EFFECTIVE DATE OF THE APPRAISAL. ALTERNATIVELY, THAT USE, FROM AMONG REASONABLE, PROBABLE, AND LEGAL ALTERNATIVE USAGES, FOUND TO BE PHYSICALLY POSSIBLE, APPROPRIATELY SUPPORTED, FINANCIALLY FEASIBLE, AND WHICH RESULT IN THE HIGHEST LAND VALUE. (real estate technology, society of real estate appraisers, compiled by Byrl N. Boyce)

File No. 7CB214| Page #9 of 18

## Supplemental Addendum

| Borrower | JACOBS | | | File No. 7CB214 |
| Property Address | 817 MATLACK DRIVE | | | |
| City | MOORESTOWN | County BURLINGTON | | |
| Client | COMMERCE BANK, N.A. | | State NJ | Zip Code 08057 |

SCOPE OF THIS APPRAISAL

THE INTENT OF THE APPRAISAL SERVICES RENDERED IN THIS ASSIGNMENT ENCOMPASSES ALL OF THOSE
ACTIVITIES CONSIDERED NECESSARY TO PERMIT THE APPRAISER TO FULFILL HIS ETHICAL RESPONSIBILITY IN
ARRIVING AT AND REPORTING OBJECTIVE, DEFENSIBLE CONCLUSION OF VALUE FOR THE SUBJECT PROPERTY
AS OF THE DATE OF VALUATION. THESE ACTIVITIES INCLUDE, BUT ARE NOT LIMITED TOO ;

-THE COLLECTION OF DATA REGARDING THE PHYSICAL PROPERTY, IT'S GENERAL LOCATION, NEIGHBORHOOD
TRENDS, AND INFLUENCES, THE OBSERVED RELATIVE CONDITION AND EFFECTIVE AGE OF IMPROVEMENTS, THE
SUBJECT'S AMENITIES AND SPECIAL FEATURES, AVAILABLE UTILITIES, ZONING, AND RELATED CONTROLS, AND
THE PROPERTY ASSESSMENT AND ANNUAL REAL ESTATE TAXES.

-A CONSIDERATION AND ANALYSIS OF THOSE FACTORS IN ORDER TO ESTABLISH A BASIS FOR ESTIMATING THE
SUBJECT PROPERTY'S HIGHEST AND BEST USE AS OF THE VALUATION DATE.

-A CONSIDERATION OF THE (3) THREE TRADITIONAL APPROACHES TO VALUE, THE SALES COMPARISON
APPROACH, THE COST APPROACH, AND THE INCOME APPROACH, IN AN EFFORT TO DETERMINE WHICH IF THESE
IS (OR ARE) THE MOST APPROPRIATE,  APPLICABLE, AND RELIABLY SUITED TO THE IDENTIFIED APPRAISAL
PROBLEM.

-A THOROUGH EXAMINATION OF THE SUBJECT'S MARKET AREA FOR THE RELEVANT MARKET DATA FOR
CONSIDERATION IN THE INDIVIDUAL APPROACHES TO VALUE.

-COMMUNICATION OF A WRITTEN AND DEFENSIBLE CONCLUSION OF MARKET VALUE IN A CLEAR AND CONCISE
MANOR.

COMPETENCY OF THE APPRAISER

-THE APPRAISER HAS THE APPROPRIATE KNOWLEDGE AND EXPERIENCE TO COMPETENTLY COMPLETE THIS
REPORT.

INCOME APPROACH

THE INCOME APPROACH HAS BEEN ANALYZED AND FOUND INAPPLICABLE BECAUSE, IN THIS MARKET VERY FEW
SINGLE FAMILY HOMES ARE RENTED AND THERE IS INSUFFICIENT DATA AVAILABLE TO DEVELOP A GROSS RENT
MULTIPLIER. THEREFORE, I HAVE RELIED UPON THE MARKET DATA APPROACH IN MY ESTIMATE OF VALUE AND I
HAVE USED THE COST APPROACH (WHEN APPLICABLE) AS SUPPORTING EVIDENCE.

SQUARE FOOTAGE OF THE COMPARABLES

THE SQUARE FOOTAGE (GLA) OF THE SUBJECT (WHEN APPLICABLE) AND COMPARABLES ARE ESTIMATED
BASED UPON A DRIVE-BY FRONTAL EXTERIOR VIEWING.  THE INDICATED SQUARE FOOTAGE IS DERIVED VIA THE
AFOREMENTIONED, IN CONJUNCTION WITH REALTOR INTERVIEW AND/OR, MLS REVIEW AND/OR, THE TAX
ASSESSORS PROPERTY RECORD CAND AND/OR, APPRAISERS FILES.

THE ADJUSTMENTS MADE IN THE GRID ARE MARKET DRIVEN AND DO NOT REFLECT REPLACEMENT COSTS.  THE
ADJUSTMENTS MADE ARE INDICATIVE OF THE MARKET REACTION THAT WOULD RESULT FROM A TYPICAL,
PRUDENT, AND REASONABLE PURCHASER.

THE NATIONAL ASSOCIATION OF INDEPENDENT FEE APPRAISERS (NAIFA) HAS A MANDATORY PROGRAM OF
CONTINUING EDUCATION FOR DESIGNATED MEMBERS.  THIS PROGRAM HAS BEEN MET FOR CYCLE ENDING
DECEMBER 31, 2007.  NEXT CYCLE EXPIRES DECEMBER 31, 2009.

THE FUNCTION OF THIS APPRAISAL REPORT, OR THE INTENDED USE IS TO SUPPORT UNDERWRITING  DECISION
MAKING FOR A CONVENTIONAL OR GOVERNMENT INSURED LOAN.

A DILIGENT INSPECTION WAS MADE OF ACCESSIBLE, VISIBLE, READILY OBSERVABLE AREAS TO UNDERCOVER
OBVIOUS POSSIBLE SOUNDNESS, SAFETY, AND/OR MARKETABILITY ISSUES OF THE SUBJECT PROPERTY.
(UNLESS THIS IS AN EXTERIOR ONLY PHYSICAL VIEWING)

THIS REPORT IS IN NO WAY INTENDED TO BE A SUBSTITUTE FOR A HOME INSPECTION MADE BY A QUALIFIED
INSPECTOR. THIS APPRAISER HOLDS NO EXPERTISE IN OR HOLD HIMSELF OUT TO BE AN EXPERT IN THE FIELD
OF HOME INSPECTION.  A PROFESSIONAL HOME INSPECTION IS STRONGLY SUGGESTED TO UNCOVER ANY
DEFECTS THAT MAY IMPACT THE STRUCTURAL SOUNDNESS, SAFETY, AND/OR MARKETABILITY OF THE SUBJECT.

PLEASE BE ADVISED THAT THE APPRAISER IS NOT A HOME INSPECTOR, AN ENGINEER,  AN ELECTRICIAN, A
CARPENTER, OR A PLUMBER.  THE APPRAISER HAS NO FORMAL TRAINING IN ANY OF THE  AFOREMENTIONED
DISCIPLINES.  THE PURCHASER/BORROWER HAS HAD THE OPPORTUNITY TO PROCURE THE SERVICES OF A
PROFESSIONAL HOME INSPECTOR, A ROOFER, AN ELECTRICIAN, A PLUMBER, AND/OR CARPENTER, TO INSURE
THAT THE SUBJECT MEETS THE BORROWER'S SATISFACTION.  APPRAISER IS NOT LIABLE FOR ANY UNCOVERED
DEFICIENCIES THAT MAY EXIST THAT ARE NOT READILY OBSERVABLE.

File No. 7CB214  Page # 10 of 18

## Supplemental Addendum

| | | | | | |
|---|---|---|---|---|---|
| Borrower | JACOBS | | | | File No. 7CB214 |
| Property Address | 817 MATLACK DRIVE | | | | |
| City | MOORESTOWN | County BURLINGTON | | State NJ | Zip Code 08057 |
| Client | COMMERCE BANK, N.A. | | | | |

THE INTENDED USER OF THIS REPORT IS CONSIDERED THE NAMED LENDER/ CLIENT.  IF THIS REPORT IS BEING PREPARED FOR A HUD INSURED TRANSACTION, THEN HUD/FHA IS ALSO AN INTENDED USER.

THE APPRAISER CERTIFIES THAT ALL COMPARABLES UTILIZED HAVE RECEIVED AN EXTERIOR CURBSIDE VISUAL INSPECTION. THE USE OF CATALOG PHOTOS MAY HAVE BEEN NECESSARY. SAID PHOTOS ARE CONSIDERED TO BE MORE INDICATIVE OF THE SUBJECT'S EXTERIOR CONDITION AT THE TIME OF IT'S SALE.

*PLEASE BE ADVISED THAT THIS FORM REPORT CONTAINS THE TERM "INSPECTION". WHERE EVER THIS TERM IS USED IT IS TO BE REPLACED WITH THE TERM "VIEWED"  OR ANY EXTENSION THEREOF.

**PLEASE BE ADVISED THAT THIS FORM REPORT CONTAINS THE TERM "ESTIMATE OF VALUE". WHERE EVER THIS TERM EXISTS IT IS TO BE REPLACED WITH THE TERM "OPINION OF VALUE".

ZONING
THE APPRAISER CAN NOT MAKE A LEGAL DETERMINATION AS TO THE SUBJECT'S ZONING. IF WHAT HAS BEEN PRESUMED AS LEGAL IS FOUND TO BE OTHERWISE THEN THE CERTIFICATION OF VALUE IS REVOKED. IF SUCH A SCENARIO PRESENTS ITSELF, THE APPRAISER IS TO BE GRANTED ADDITIONAL TIME, AT AN ADDITIONAL FEE, TO ANALYZE THE NEW DISCOVERY AND IT'S AFFECT, IF ANY, ON THE SUBJECT'S VALUE.

EXPOSURE TIME
BASED UPON THE SUBJECT'S CURRENT CONDITION, THE CURRENT MARKET CONDITIONS, AND PROVIDED THE SUBJECT WAS THEORETICALLY LISTED WITHIN 5% OF THIS OPINION OF VALUE IN CONJUNCTION WITH AN EFFECTIVE MARKETING PLAN, THE ESTIMATED EXPOSURE TIME IS 1-60 DAYS.
ESTIMATED EXPOSURE TIME IS REQUIRED TO BE ESTIMATED BY USPAP.

THE INFORMATION IDENTIFIED UNDER THE CURRENTLY LISTED AND SOLD PROPERTIES SECTION IS A COMPILATION OF PROPERTIES THAT HAVE BEEN SCREENED BASED ON GENERIC CHARACTERISTICS IN CONJUNCTION WITH SALIENT FEATURES SHARED BY THE SUBJECT.

RANGE OF PRICE FOR HOUSING IS BASED UPON A 12 MONTH SEARCH OF THE MLS. THE RANGE INDICATED IS NOT THE ALL TIME HIGH, LOW, OR PREDOMINANT VALUES, ONLY THAT WHICH ARE RELEVANT TO THE PAST YEAR AS REPORTED IN THE TREND MULTIPLE LISTING SERVICE.

NOTICE TO BORROWER
THE APPRAISER CANNOT DISCUSS THIS REPORT WITH ANY PARTY NOT AN INTENDED USER (PRIVACY LAWS) AND THE APPRAISER IS UNDER NO OBLIGATION TO "UPDATE", "RECERTIFY", OR OTHERWISE MODIFY THIS REPORT IN VIOLATION OF ADVISORY OPINIONS ISSUED BY THE APPRAISAL FOUNDATIONS USPAP, EXCEPT TO MAKE CORRECTIONS TO ACTUAL ERRORS.

THE APPRAISER CAN DEVELOP A NEW APPRAISAL IN A NEW RELATIONSHIP OF THE SAME PIECE OF PROPERTY DURING THE SAME TIME SO LONG AS ORIGINAL CLIENT-APPRAISER CONFIDENTIALITY PROVISIONS ARE NOT VIOLATED.

Market Conditions
ALL TYPES OF FINANCING ARE AVAILABLE FOR MORTGAGES IN THIS AREA. BUYDOWNS AND SELLER ASSISTANCE ARE COMMON WITH NO AFFECT ON THE MARKET. A REVIEW OF CURRENT LISTINGS AND UNDER CONTRACT SALES INDICATE THAT PROPERTY VALUES ARE STABLE. ESTIMATED MARKETING TIMES HAVE HISTORICALLY RANGED FROM 3-6 MONTHS.

File No. 7CB214 Page # 11 of 18

## Subject Photo Page

| Borrower | JACOBS | | | | |
|----------|--------|--|--|--|--|
| Property Address | 817 MATLACK DRIVE | | | | |
| City | MOORESTOWN | County BURLINGTON | | State NJ | Zip Code 08057 |
| Client | COMMERCE BANK, N.A. | | | | |



### Subject Front

817 MATLACK DRIVE

| | |
|--|--|
| Sales Price | 2,040,000 |
| Gross Living Area | 6,272 |
| Total Rooms | 12 |
| Total Bedrooms | 7 |
| Total Bathrooms | 7+2 |
| Location | AVERAGE |
| View | AVERAGE |
| Site | 25,740 Sq.Ft. |
| Quality | GOOD |
| Age | 1 |





### Subject Rear



### Subject Street

**Photograph Addendum**

| Borrower | JACOBS | | | | |
|---|---|---|---|---|---|
| Property Address | 817 MATLACK DRIVE | | | | |
| City | MOORESTOWN | | | | |
| Client | COMMERCE BANK, N.A. | County BURLINGTON | | State NJ | Zip Code 08057 |







## Photograph Addendum

File No. 7CB214 Page #14 of 18

| Borrower | JACOBS | | | | |
|---|---|---|---|---|---|
| Property Address | 817 MATLACK DRIVE | | | | |
| City | MOORESTOWN | | | | |
| Client | COMMERCE BANK, N.A. | County BURLINGTON | | State NJ | Zip Code 08057 |





Comments:

Comments:





Comments:

Comments:

## Comparable Photo Page

File No. 7C0214  Page # 15 of 18

| Borrower | JACOBS | | | | |
|---|---|---|---|---|---|
| Property Address | 817 MATLACK DRIVE | | | | |
| City | MOORESTOWN | | | | |
| Client | COMMERCE BANK, N.A. | County BURLINGTON | | State NJ | Zip Code 08057 |



### Comparable 1

804 MATLACK DRIVE

| | |
|---|---|
| Prox. to Subject | 0.03 miles E |
| Sales Price | 1,850,000 |
| Gross Living Area | 5,643 |
| Total Rooms | 10 |
| Total Bedrooms | 6 |
| Total Bathrooms | 5+2 |
| Location | AVERAGE |
| View | AVERAGE |
| Site | 30,000+- Sq.Ft. |
| Quality | GOOD |
| Age | NEW |



### Comparable 2

807 RIVERTON ROAD

| | |
|---|---|
| Prox. to Subject | 0.18 miles NE |
| Sales Price | 1,900,000 |
| Gross Living Area | 5,534 |
| Total Rooms | 10 |
| Total Bedrooms | 5 |
| Total Bathrooms | 5+1 |
| Location | AVERAGE |
| View | AVERAGE |
| Site | 2.1+-ACRES |
| Quality | GOOD |
| Age | 10+- |



### Comparable 3

321 E OAK AVENUE

| | |
|---|---|
| Prox. to Subject | 1.36 miles SE |
| Sales Price | 2,900,000 |
| Gross Living Area | 5,446 |
| Total Rooms | 13 |
| Total Bedrooms | 8 |
| Total Bathrooms | 4+1 |
| Location | AVERAGE |
| View | AVERAGE |
| Site | 6+-ACRES |
| Quality | AVERAGE |
| Age | 91+- |





### Location Map

| Borrower | JACOBS | | | | |
|---|---|---|---|---|---|
| Property Address | 817 MATLACK DRIVE | | | | |
| City | MOORESTOWN | | | | |
| Client | COMMERCE BANK, N.A. | County BURLINGTON | | State NJ | Zip Code 08057 |



# EXHIBIT H

## Grueneberg Law Group, LLC
Attorneys at Law
704 EAST MAIN STREET
BUILDING "E"
MOORESTOWN, NJ 08057
Telephone: (856) 235-6710
Telecopier: (856) 235-6898

*Member of New Jersey
and Pennsylvania Bar

RUDI R. GRUENEBERG*
Managing Member

Writer's Direct Email:
RGrueneberg@rglawgroup.com

January 10, 2008

*via telecopy (856) 466-4744
and First Class Mail*
Edward J. Hovatter, Esquire
Sherman, Silverstein, Kohl,
Rose & Podolsky, P.A.
Fairway Corporate Center
4300 Haddonfield Road, Suite 311
Pennsauken, NJ 08109

Re:  Reed to Jacobs
Property: 817 Matlack Drive
Moorestown, NJ 08057
Closing Date: February 7, 2007

Dear Ed:

This letter follows our prior telephone conversations this week regarding the above-referenced matter. I received a copy of the Appraisal of 817 Matlack Drive completed by Robert J. Jones, Jr. on behalf of Commerce Bank. During the course of our conversation on Monday, January 7, 2007, I indicated that the Reeds had agreed to extend the mortgage commitment date through Friday or longer if necessary in order to permit Commence Bank the necessary time to review the Appraisal and resolve the errors contained in the Appraisal. The Appraisal is incorrect in several critical areas, including: (i) stating that there was no attic when in fact, the attic is finished with approximately 1,167 square feet of finished space; (ii) the residence has fourteen (14) rooms – not twelve (12) as listed in the Appraisal; and (iii) the home has three (3) fireplaces as opposed to the two (2) listed in the Appraisal. The actual square footage of the property for the first and second floors, together with the finished third floor attic is 7,330, not 6,272. It is puzzling that the appraiser referenced the completion of the third floor into two bedroom suites with separate bathrooms on page one (1) of the appraisal, but then failed to incorporate the square footage into the final calculation. The additional square footage certainly increases the fair market value of the property to at least the contract purchase price.

There are additional issues with respect to the comparable sales utilized by the appraiser. Comparable Property # 1, 804 Matlack Drive has only 5 bedrooms as opposed to the 7 bedrooms contained in the subject property and the 804 property has 4 full bathrooms as opposed to the 7 full baths in the subject property. The correction of the errors contained in the Appraisal would significantly increase the appraised value of the property to in excess of the contract purchase

Edward J. Hovatter, Esquire
January 10, 2007
Page 2 of 2

price of $2,040,000.00.   Unfortunately, it is my understanding that the Jacobs have directed Commerce Bank to withdraw their pending mortgage application together with the review process of the appraisal initiated in accordance with the procedures of Commerce Bank. The Jacobs are required to exercise good faith I attempting to obtain a mortgage commitment in accordance with the provisions of paragraph 9 of the Contract for Sale.   Their directive to Commerce Bank to terminate the review of the Appraisal certainly does not meet this standard.

Please give me a call at your earliest convenience to review the foregoing.

Very truly yours,

Rudi R. Grueneberg

RRG/mbm
cc:   Frank and Christina Reed
      B.T. Edgar & Son

X:\Client File\Reed\Ltr.to.Hovatter.1.10.08.doc

# EXHIBIT I

# Sherman, Silverstein, Kohl, Rose & Podolsky, P.A.
A Professional Corporation
Fairway Corporate Center
4300 Haddonfield Road - Suite 311
Pennsauken, New Jersey 08109
Telephone: (856) 662-0700 - Facsimile: (856) 488-4744
www.sskrplaw.com

**Edward J. Hovatter, Esquire**
Direct Dial: (856) 661-2091
e-mail: ehovatter@sskrplaw.com

January 28, 2008

**Via Fax (856-235-6898) and Regular Mail**

Rudi Grueneberg, Esquire
Grueneberg Law Group, LLC
704 East Main Street, Building "E"
Moorestown, NJ 08057

Re:    817 Matlack Street, Moorestown, NJ
       <u>My Clients</u>: Miriam Jacobs and Scott and Traci Jacobs, Husband and Wife
       <u>Your Clients</u>: Frank J. Reed, III and Christina A. Reed, Husband and Wife
       Our File No.: 10657.101

Dear Rudi:

To follow-up from our telephone conferences of January 14 and 24, 2008, I was quite surprised to receive your January 10, 2008 letter alleging, among other things, that my clients have withdrawn their mortgage application with Commerce Bank. To the contrary, following the Appraisal prepared by Robert J. Jones, Jr., IFA (the "Appraisal"), Commerce Bank conducted a Field Review in its normal course, and the Field Review confirmed the fair market value established by the Appraisal. Commerce Bank requires the Field Review and will underwrite the loan based upon the lower of the two values. In this case, the values were the same at $1,950,000.00.

I must take issue and exception with your clients' position that the Jacobs have failed to exercise good faith in obtaining a mortgage. Directing your attention to the Contract for Sale (the "Contract"), as you well know, Paragraph 9 requires the Buyer to make application to the lender within seven (7) days after the expiration of the Attorney Review Period, and supply all necessary information to that lender in order to have the loan proceed through the underwriting process. All of the foregoing occurred pursuant to the Contract.

To compound matters, I am told that your clients met Scott and Traci's realtor at their property on January 13, 2008, and informed her that Mr. and Mrs. Reed were seeking to retain my client's deposit for their failure to exercise "good faith." I would ask your clients what else they would have liked the Buyer to do? Moreover, and more importantly, the Contract requires

Rudi Grueneberg, Esquire

that the appraised value be equal to or greater than the purchase price. That is simply not the case.

At this juncture, I would ask that you discuss the foregoing with your clients, and authorize the release of Buyer's deposit. I would like to resolve this issue in amicable fashion rather than resorting to further legal action.

Thank you for your kind courtesy and attention and I look forward to hearing from you.

Very truly yours,

SHERMAN, SILVERSTEIN, KOHL, ROSE & PODOLSKY, P.A.
A Professional Corporation

Edward J. Hovatter

EJH/sjs
cc:    Scott Jacobs (via e-mail)
       Holly Donahue
       Melissa Young
       Louise Marsh Carter

**Sherman, Silverstein, Kohl, Rose & Podolsky, P.A.**
A Professional Corporation
Fairway Corporate Center
4300 Haddonfield Road - Suite 311
Pennsauken, New Jersey 08109
Telephone: (856) 662-0700 - Facsimile: (856) 488-4744
www.sskrplaw.com

Edward J. Hovatter, Esquire
Direct Dial: (856) 661-2091
e-mail: ehovatter@sskrplaw.com

February 11, 2008

**Via Fax Only**

Rudi Grueneberg, Esquire
Grueneberg Law Group, LLC
704 East Main Street, Building "E"
Moorestown, NJ 08057

Re:   817 Matlack Street, Moorestown, NJ
      My Clients:  Miriam Jacobs and Scott and Traci Jacobs, Husband and Wife.
      Your Clients:  Frank J. Reed, III and Christina A. Reed, Husband and Wife
      Our File No.:  10657.101

Dear Rudi:

I am in receipt of your e-mail transmission of February 7, 2008, and disagree with your position. I also wanted to follow-up from the conference call we conducted on February 8, 2008 with my partner, John Hanamirian, Esquire. I am writing to you one last time to ask that the Termination Agreement previously provided to you be executed and returned to me so that I may present it to the Escrow Agent and have the deposit released to my clients.

If I do not have the executed Termination Agreement faxed to me by the close of business on February 14, 2008, we shall immediately proceed to file suit against your clients.

Very truly yours,

SHERMAN, SILVERSTEIN, KOHL, ROSE & PODOLSKY, P.A.
A Professional Corporation

Edward J. Hovatter

EJH/jk
cc:   Scott Jacobs (via e-mail)
      John Hanamirian, Esquire
      Jeffrey P. Resnick, Esquire
      Holly Donahue
      Melissa Young
      Louise Marsh Carter

# EXHIBIT J

# Grueneberg Law Group, LLC
*Attorneys at Law*
704 EAST MAIN STREET
BUILDING "E"
MOORESTOWN, NJ 08057
Telephone: (856) 235-6710
Telecopier: (856) 235-6898

*Member of New Jersey
and Pennsylvania Bar

RUDI R. GRUENEBERG*
Managing Member

Writer's Direct Email:
RGrueneberg@rglawgroup.com

February 14, 2008

*via telecopy (856) 466-4744*
*and First Class Mail*
Edward J. Hovatter, Esquire
Sherman, Silverstein, Kohl,
Rose & Podolsky, P.A.
Fairway Corporate Center
4300 Haddonfield Road, Suite 311
Pennsauken, NJ 08109

Re:    **Reed to Jacobs**
       **Property: 817 Matlack Drive**
       **Moorestown, NJ 08057**
       **Closing Date: February 7, 2007**

Dear Ed:

This letter is in response to your correspondence dated February 11, 2008, as well as our conversations and correspondences throughout the course of this transaction. The issue involving the erroneous appraisal and the duties and obligations thereunder have been discussed at length on a number of occasions and will not be repeated. In accordance with our discussions on Monday, I reached out to the Reeds in an effort to bring this matter to a conclusion with the Reeds and Jacobs releasing their respective claims arising out of the Contract.

The Reeds have authorized a settlement whereunder, the sum of $25,000.00 from the deposit will be released to them with the remaining balance of $25,000.00 together with all interest accrued thereon to be released to the Jacobs. The parties will further execute a Release releasing their respective claims against each other in this matter. Please advise whether the Jacobs are in agreement with the foregoing. This letter is written for settlement purposes only and is without waiver or prejudice to any and all rights, claims and causes of action of the Reeds in this matter.

I look forward to reviewing the foregoing at your convenience.

Very truly yours,

*/s/ Rudi R. Grueneberg*

Rudi R. Grueneberg

RRG/mbm
cc:   Frank and Christina Reed

X:\Client File\Reed\Ltr.to.Hovatter.2.14.08.doc

# EXHIBIT K

BURLINGTON COUNTY
SUPERIOR COURT
49 RANCOCAS ROAD
MT HOLLY        NJ 08060

                                    TRACK ASSIGNMENT NOTICE
COURT TELEPHONE NO. (609) 518-2815
COURT HOURS

                    DATE:   MAY 07, 2008
                    RE:     JACOBS VS REED III
                    DOCKET: BUR L -001418 08

    THE ABOVE CASE HAS BEEN ASSIGNED TO:   TRACK 2.

    DISCOVERY IS   300 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

    THE PRETRIAL JUDGE ASSIGNED IS:  HON KAREN L. SUTER

    IF YOU HAVE ANY QUESTIONS, CONTACT TEAM     002
AT:  (609) 518-2815.

    IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
    PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                    ATTENTION:

                              ATT: JEFFREY P. RESNICK
                              SHERMAN SILVERSTEIN KOHL R & P
                              4300 HADDONFIELD RD  STE 311
                              PENNSAUKEN      NJ 08109-5884

JUAMP4

# CIVIL CASE INFORMATION STATEMENT
## (CIS)

Use for initial Law Division – Civil Part pleadings (not motions) under Rule 4:5-1.

**Pleading will be rejected for filing, under Rule 1:5-6(c), if information above the black bar is not completed or if attorney's signature is not affixed.**

| FOR USE BY CLERK'S OFFICE ONLY |
|---|
| PAYMENT TYPE: ☐ CK ☐ CG ☐ CA |
| CHG/CK NO. |
| AMOUNT: |
| OVERPAYMENT: |
| BATCH NUMBER: |

| ATTORNEY/PRO SE NAME | TELEPHONE NUMBER | COUNTY OF VENUE |
|---|---|---|
| JEFFREY P. RESNICK, ESQUIRE | ( 856 ) 662-0700 | BURLINGTON |

| FIRM NAME (If applicable) | DOCKET NUMBER (When available) |
|---|---|
| SHERMAN, SILVERSTEIN, KOHL, ROSE & PODOLSKY, P.A. | 1418-08 |

| OFFICE ADDRESS | DOCUMENT TYPE |
|---|---|
| 4300 HADDONFIELD ROAD, SUITE 311 PENNSAUKEN, NEW JERSEY 08109 | COMPLAINT |
| | JURY DEMAND ✔ YES ☐ NO |

| NAME OF PARTY (e.g., John Doe, Plaintiff) | CAPTION |
|---|---|
| SCOTT JACOBS and TRACI JACOBS, husband and wife  and MIRIAM JACOBS, Plaintiffs | SCOTT JACOBS and TRACI JACOBS, husband and wife and MIRIAM JACOBS v. FRANK J. REED, III and CHRISTINA A. REED, husband and wife and B.T. EDGAR & SON. |

| CASE TYPE NUMBER (See reverse side for listing) 599 | IS THIS A PROFESSIONAL MALPRACTICE CASE? ☐ YES ✔ NO IF YOU HAVE CHECKED "YES," SEE N.J.S.A. 2A:53A-27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
|---|---|

| RELATED CASES PENDING? ☐ YES ✔ NO | IF YES, LIST DOCKET NUMBERS |
|---|---|

| DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)? ☐ YES ✔ NO | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY, IF KNOWN ✔ NONE ☐ UNKNOWN |
|---|---|

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| A. DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP? ✔ YES ☐ NO | IF YES, IS THAT RELATIONSHIP | ☐ EMPLOYER-EMPLOYEE ☐ FRIEND/NEIGHBOR ☐ OTHER (explain) _____ ☐ FAMILIAL ✔ BUSINESS _____ |
|---|---|---|

B. DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?   ☐ YES ✔ NO

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION:

| DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS? ☐ YES ✔ NO | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION: _____ |
|---|---|
| WILL AN INTERPRETER BE NEEDED? ☐ YES ✔ NO | IF YES, FOR WHAT LANGUAGE: _____ |

ATTORNEY SIGNATURE

Revised effective 4/1/05





**SIDE 2**

# CIVIL CASE INFORMATION STATEMENT
## (CIS)
Use for initial pleadings (not motions) under *Rule 4:5-1*

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

**Track I — 150 days' discovery**

| | |
|---|---|
| 151 | NAME CHANGE |
| 175 | FORFEITURE |
| 302 | TENANCY |
| 399 | REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction) |
| 502 | BOOK ACCOUNT |
| 505 | OTHER INSURANCE CLAIM (INCLUDING DECLARATORY JUDGMENT ACTIONS) |
| 506 | PIP COVERAGE |
| 510 | UM or UIM CLAIM |
| 511 | ACTION ON NEGOTIABLE INSTRUMENT |
| 512 | LEMON LAW |
| 599 | CONTRACT/COMMERCIAL TRANSACTION |
| 801 | SUMMARY ACTION |
| 802 | OPEN PUBLIC RECORDS ACT (SUMMARY ACTION) |

**Track II –- 300 days' discovery**

| | |
|---|---|
| 305 | CONSTRUCTION |
| 509 | EMPLOYMENT (other than CEPA or LAD) |
| 602 | ASSAULT AND BATTERY |
| 603 | AUTO NEGLIGENCE – PERSONAL INJURY |
| 605 | PERSONAL INJURY |
| 610 | AUTO NEGLIGENCE – PROPERTY DAMAGE |
| 699 | TORT – OTHER |

**Track III — 450 days' discovery**

| | |
|---|---|
| 005 | CIVIL RIGHTS |
| 301 | CONDEMNATION |
| 604 | MEDICAL MALPRACTICE |
| 606 | PRODUCT LIABILITY |
| 607 | PROFESSIONAL MALPRACTICE |
| 608 | TOXIC TORT |
| 609 | DEFAMATION |
| 616 | WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES |
| 617 | INVERSE CONDEMNATION |
| 618 | LAW AGAINST DISCRIMINATION (LAD) CASES |

**Track IV — Active Case Management by Individual Judge / 450 days' discovery**

| | |
|---|---|
| 156 | ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION |
| 303 | MT. LAUREL |
| 508 | COMPLEX COMMERCIAL |
| 701 | ACTIONS IN LIEU OF PREROGATIVE WRITS |

**Mass Tort (Track IV)**

| | | | |
|---|---|---|---|
| 240 | REDUX/PHEN-FEN (formerly "DIET DRUG") | 601 | ASBESTOS |
| 248 | CIBA GEIGY | 619 | VIOXX |
| 264 | PPA | | |

999 OTHER (Briefly describe nature of action) _____

_____

**If you believe this case requires a track other than that provided above, please indicate the reason on Side 1, in the space under "Case Characteristics."**

Please check off each applicable category:

☐ Verbal Threshold          ☐ Putative Class Action          ☐ Title 59

SHERMAN SILVERSTEIN KOHL ROSE & PODOLSKY, P.A.
Jeffrey P. Resnick, Esquire
Fairway Corporate Center
4300 Haddonfield Road
Fairway Corporate Center - Suite 311
Pennsauken, New Jersey 08109
Telephone: (856) 662-0700
Facsimile: (856) 488-4744
Attorneys for Plaintiffs

DEPUTY CLERK
SUPERIOR COURT
BURLINGTON COUNTY

2008 MAY -7  A 9 09

FILED & RECEIVED

| | |
|---|---|
| Scott Jacobs and Traci Jacobs, husband and wife,<br>350 Tom Brown Road<br>Moorestown, New Jersey 08057,<br><br>and<br><br>Miriam Jacobs<br>5 South Nassau Avenue<br>Margate, New Jersey 08403,<br><br>       Plaintiffs,<br><br>    v.<br><br>Frank J. Reed, III and Christina A. Reed, husband and wife,<br>817 Matlack Street<br>Moorestown, New Jersey 08057,<br><br>and<br><br>B.T. Edgar & Son<br>27 E. Main Street<br>Moorestown, New Jersey 08057,<br><br>       Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION-BURLINGTON COUNTY<br><br>Docket No. Bur L 1418-08<br><br>Civil Action<br><br>Complaint<br>Jury Trial Demanded |

## **COUNT ONE**

1.    The plaintiffs are Scott Jacobs and Traci Jacobs, husband and wife, with an

address of 350 Tom Brown Road, Moorestown, New Jersey 08057.

2.      The plaintiff is Miriam Jacobs, with an address of 5 South Nassau Avenue, Margate, New Jersey 08403.  Plaintiffs are collectively referred to as "plaintiffs" or "Buyers."

3.      The defendants are Frank J. Reed, III and Christina A. Reed, husband and wife ("defendants" or "Sellers"), with an address of 817 Matlack Street, Moorestown, New Jersey 08057.

4.      The defendant is B.T. Edgar & Son, 27 E. Main Street, Moorestown, New Jersey 08057.

5.      By Contract for Sale dated December 8, 2007 ("Contract"), defendants agreed to sell the real property situated at Block 3803, Lot 2, commonly referred to 817 Matlack Drive, Moorestown, New Jersey 08057 (the "Property") to plaintiffs Scott and Traci Jacobs.  A copy of the Contract is attached as Exhibit "A."

6.      During the Attorney Review Period, a Rider to Contract for Sale (the "Rider") dated December 18, 2007 was executed.  A copy of the Rider is attached as Exhibit "B."

7.      Paragraph 1 of the Rider included Miriam Jacobs as a Buyer of the Property.

8.      In addition, the Rider, among other things, contains the following provision:

> 7.  Paragraph 42 of the Contract (Additional Contract Provisions) shall be amended and restated as follows:
>
> > .   ..B. ...Buyer's obligation to purchase the property shall be contingent upon the Lender's appraisal being equal to or greater than the Purchase Price.  In the event that the Lender's appraisal is less than the Purchase Price, the Buyer shall be entitled to cancel the Contract upon written notice to the Seller and Seller's agent on or before the Mortgage Commitment Date whereupon the deposit shall be returned to Buyer and neither party shall have any further liability or obligation to the other hereunder.

9.      The Contract provides for a Purchase Price of $2,040,000.

10.    Consistent with their obligations, Buyers tendered a $50,000 deposit to B. T. Edgar & Son (the "Escrow Holder") to be placed into an interest bearing escrow account.

11.    The Mortgage Amount pursuant to the Contract, after Sellers' concessions, was $1,632,000.

12.    Pursuant to the Contract and Rider, Buyers were to produce a Mortgage Commitment on or before January 7, 2008.

13.    On January 4, 2008, Buyers' counsel received a facsimile transmission from their Lender's senior loan officer providing a Statement of Credit Denial Termination or Change ("Lender's Denial") setting forth the following reasons for not being able to provide financing, "value or type of collateral not sufficient/unacceptable property." A copy of the Lender's Denial is attached as Exhibit "C."

14.    Buyers also received a copy of the Appraisal of Real Property (the "Appraisal") prepared for Lender by its appraiser, Robert J. Jones, Jr. ("Lender's Appraiser"), establishing the appraised value for the property at $1,950,000 which is less than the Purchase Price. A copy of the Appraisal is attached as Exhibit "D."

15.    Buyers were further advised by their Lender that a second "Field Review" occurred, following the Appraisal, to confirm the appraised value; the Field Review was consistent with the appraised value of $1,950,000.

16.    On January 7, 2008, Buyers' counsel sent Sellers' counsel a letter providing him with the Lender's Denial, together with the Lender's Appraisal, and notice of termination of the Contract. A copy of the letter is attached as Exhibit "E."

17.    Buyers' counsel asked for written authorization allowing the Deposit held by Escrow Holder to be released to Buyers pursuant to the Contract.

18.    Sellers refused to authorize the release of the Deposit, contending that the Lender's Appraisal was "incorrect."

19.    Buyers again asked for a return of the Deposit explaining that any issues Sellers had with the Appraisal were solely between the Sellers and the Lender's Appraiser.

20.    Sellers have unjustifiably refused to release the Deposit monies.

21.    B.T. Edgar & Son has refused to release the Deposit monies unless directed by Sellers to do so.

22.    As a result, plaintiffs/Buyers have been harmed.

WHEREFORE, plaintiffs demand judgment against defendants, jointly and severally, in the sum of $50,000.00, plus the interest from the account, statutory interest, attorney's fees, and costs of suit.

SHERMAN, SILVERSTEIN, KOHL,
ROSE & PODOLSKY, P.A.

Jeffrey P. Resnick, Esquire
4300 Haddonfield Road
Fairway Corporate Center, Suite 311
Pennsauken, NJ 08109
Telephone:  (856) 662-0700
Facsimile:  (856) 488-4744
Attorneys for Plaintiffs

Dated: 5/1/06

4

## JURY TRIAL DEMAND

Please take notice that the plaintiffs demand a trial by jury as to all issues in the above

matter.

SHERMAN, SILVERSTEIN, KOHL,
ROSE & PODOLSKY, P.A.

By: _____

Jeffrey P. Resnick, Esquire
4300 Haddonfield Road
Fairway Corporate Center, Suite 311
Pennsauken, NJ 08109
Telephone: (856) 662-0700
Facsimile: (856) 488-4744
Attorneys for Plaintiffs

Dated: 5/1/08

## CERTIFICATION PURSUANT TO R. 4:5-1

The undersigned hereby certifies as follows:

1.    That to the best of my knowledge and belief, this matter in controversy is not the
subject of any other action pending in any court of a pending arbitration proceeding, nor is there
any such proceeding contemplated at this time by the plaintiffs.

2.    That, to the best of my knowledge and belief, there are no other persons who must
be jointed in this action.

SHERMAN, SILVERSTEIN, KOHL,
ROSE & PODOLSKY, P.A.

By: _____

Jeffrey P. Resnick, Esquire
4300 Haddonfield Road
Fairway Corporate Center, Suite 311
Pennsauken, NJ 08109
Telephone: (856) 662-0700
Facsimile: (856) 488-4744
Attorneys for Plaintiffs

Dated: 5/1/08

## DESIGNATION OF TRIAL COUNSEL

**PLEASE TAKE NOTICE**, that, pursuant to the New Jersey Court Rules, the undersigned is designated as trial counsel in the above captioned matter.

SHERMAN, SILVERSTEIN, KOHL,
ROSE & PODOLSKY, P.A.

By:  _____

Jeffrey P. Resnick, Esquire
4300 Haddonfield Road
Fairway Corporate Center, Suite 311
Pennsauken, NJ 08109
Telephone: (856) 662-0700
Facsimile: (856) 488-4744
Attorneys for Plaintiffs

Dated: 5/11/03

# EXHIBIT "A"

Standard Form of Real Estate Sales Contract adopted by the Burlington Camden County Association of REALTORS® and recommended for use only when (1) A Listing Agreement has been signed by Seller; and (2) the real estate being sold involves a one-to-four family residential property. This form has been certified by the Attorney General to be in compliance with the Plain Language Law. Approval of a consumer contract by the Attorney General only means that simple, understandable and easily readable language is used. It is not an approval of the contract's terms or legality.

# CONTRACT FOR SALE OF A ONE-TO-FOUR FAMILY RESIDENTIAL PROPERTY

**THIS IS A LEGALLY BINDING CONTRACT THAT WILL BECOME FINAL IN THREE BUSINESS DAYS. DURING THIS PERIOD YOU MAY CHOOSE TO CONSULT AN ATTORNEY WHO CAN REVIEW AND CANCEL THIS CONTRACT.  SEE SECTION ON ATTORNEY REVIEW FOR DETAILS.**

**THIS CONTRACT FOR SALE** has been prepared on the ___8th___ day of ___December___, ___2007___

**BETWEEN** _____ Frank J. Reed 3rd & Christina A. Reed _____ the Seller(s)

Whose address is _____ 817 Matlack Drive, Moorestown, NJ 08057 _____ and

_____ Scott Jacobs and Traci Jacobs _____ the Buyer(s)

Whose address is _____ 350 Tom Brown Road, Moorestown, NJ 08057

## TABLE OF CONTENTS

1. Attorney Review
2. Commencement of Attorney Review
3. Notices and Fax Transmission
4. Sale, Purchase and Property
5. Personal Property and Fixtures
6. Purchase Price/Manner of Payment
7. Deposit Monies
8. Sufficient Assets
9. Mortgage Contingency, Placement Fee (Points), Commitment Fee
10. Inspection by Lenders,, Surveyors: Certifications & Repairs
11. Flood Areas
12. Possession, Occupancy and Tenancies
13. Dates and Time for Performance
14. Settlement Time and Place
15. Settlement Costs and Money Adjustments
16. Deed and Other Documents Required for Settlement
17. Certificate of Occupancy and Zoning Compliance
18. Condominium/Homeowners Association Documents
19. Quality and Insurability of Title
20. Condition of Property
21. Seller's Warranty and Pre-Settlement Inspection
22. Seller's Representation

23. Home Inspection and Reports
24. Infestation and/or Damage by Wood Boring Insects
25. Radon Information
26. Lead-Based Paint Document Acknowledgment
27. Lead-Based Paint and/or Lead-Based Paint Hazard Contingency Clause
28. Notice of Off-Site Conditions
29. Airport Safety Zone
30. Megan's Law Statement
31. Dispute Between Seller and Buyer over Deposit
32. Failure of Buyer or Seller to Settle
33. Brokerage Fee
34. Seller not Liable to Buyer after Settlement
35. Risk of Loss
36. No Reliance on Others
37. Consumer Information Statement Acknowledgment
38. Declaration of Licensee
39. No Assignment of Recording
40. Entire Contract, No Oral Representations
41. Binding on Successors
42. Additional Contract Provisions
43. Acknowledgment of Terms of Contract

## 1.  ATTORNEY REVIEW:

**A.  Study by Attorney:**

The Buyer or Seller may choose to have an attorney study this Contract. If an attorney is consulted, the attorney must complete his or her Review of the Contracts within a three-day period. This Contract will be legally binding at the end of this three-day period unless an attorney for the Buyer or the Seller reviews and disapproves of this Contract.

**B.  Counting the Time:**

You count the three days from the date of delivery of the signed Contract to the Buyer and Seller. You do not count Saturdays, Sundays or legal holidays. The Buyer and the Seller may agree in writing to extend the three-day period for attorney review

**C.  Notice of Disapproval:**

If an attorney for the Buyer or the Seller reviews and disapproves of the Contract, the attorney must notify the REALTOR(S)® and the other party named in this Contract within the three-day period. Otherwise, this Contract will be legally binding as written. The attorney must send notice of disapproval to the REALTOR(S)® by certified mail, by telegram or by delivering it personally. The telegram or certified letter will be effective upon sending. The personal delivery will be effective upon delivery to the REALTOR(S)® office. The attorney may also, but need not, inform the REALTOR(S)® of any suggested revision(s) in the Contract that would make it satisfactory.

## 2.  COMMENCEMENT OF ATTORNEY REVIEW:

The parties acknowledge by their initials the date of delivery of this Contract signed by both Buyer and Seller to be as follows:

INITIALS AS TO BUYER _____         INITIALS AS TO SELLER _____

DATE 12/10/07                                            DATE 12/09/07

## 3.  NOTICES AND FAX TRANSMISSIONS.

**A.  Notices:**

All notices required in this Contract must be in writing. All notices shall be by certified mail, by telegram, by personal delivery, or by facsimile transmission (fax). The telegram, certified letter or facsimile transmission will be effective upon sending. The personal delivery will be effective upon delivery to the other party. Each party must accept the certified mail, telegram or facsimile transmission sent by the other party. Notices to the Seller shall be addressed as indicated on Line 18 of this Contract. Notices to the Buyer shall be addressed as indicated on Line 22 of this Contract. Notices to the Realtors shall be addressed to the addresses as indicated in Paragraph 33 of this Contract. Notwithstanding the above, this notice provision shall not apply to Paragraph 1, entitled "Attorney Review," which has its own methods of notice that must be strictly adhered to.

**B.  Contract, Counter Offer, Addendum, Amendment:**

The facsimile transmission (fax) of a signed copy of this Contract, any counter offer, addendum or amendment to the other party or their agent, followed by faxed acknowledgment of receipt, shall constitute delivery of the signed document. The Seller and Buyer agree to confirm the faxed transmission by mailing or personally delivering a clear copy with original signatures to the other party or their agent.

3 of 6

# NOTICE
## To Buyer and Seller:
### Read This Notice Before Signing the Contract

The Law requires real estate brokers to give you the following information before you sign this contract. It requires us to tell you that you must read all of it before you sign. The purpose is to help you in this purchase or sale.

1.  As a real estate broker, I represent:
    - ☒ The Seller, not the Buyer        **B.T. Edgar & Son**
    - ☒ The Buyer, not the Seller        **Prudential Fox & Roach**
    - ☐ Both the Seller and the Buyer
    - ☐ Neither the Seller nor Buyer.

    The title company does not represent either the Seller or Buyer.

2.  You will not get any legal advice unless you have your own lawyer. Neither I nor anyone from the title company can give legal advice to either the buyer or the seller. If you do not hire a lawyer, no one will represent you in legal matters now or at the closing. Neither I nor the title company will represent you in those matters.

3.  The contract is the most important part of the transaction. It determines your rights, risks, and obligations. Signing the contract is a big step. A lawyer would review the contract, help you to understand it, and negotiate its terms.

4.  The contract becomes final and binding unless your lawyer cancels it within the following three business days. If you do not have a lawyer, you cannot change or cancel the contract unless the other party agrees. Neither can the real estate broker nor the title insurance company change the contract.

5.  Another important service of a lawyer is to order a survey, title report, or other important reports. The lawyer will review them and help to resolve any questions that may arise about the ownership and condition of the property. These reports and survey can cost you a lot of money. A lawyer will also prepare the documents needed to close title and represent you at the closing.

6.  A Buyer without a lawyer runs special risks. Only a lawyer can advise a Buyer about what to do if problems arise concerning the purchase of the property. The problems may be about the Seller's title, the size and shape of the property, or other matters that may affect the value of the property. If either the broker or the title company knows about the problems, they should tell you. But they may not recognize the problem, see it from your point of view, or know what to do. Ordinarily, the broker and the title company have an interest in seeing that the sale is completed, because only then do they usually receive their commissions. So their interests may differ from yours.

7.  Whether you retain a lawyer is up to you. It is your decision. The purpose of this notice is to make sure that you have the information needed to make your decision.

| SELLER _____ | DATE 12/9/07 | BUYER _____ | DATE 12/8/07 |
|---|---|---|---|
| SELLER _____ | DATE 12/9/07 | BUYER _____ | DATE 12/08/07 |
| Listing Broker _____ (Licensee) | DATE 12/9/07 | Selling Broker _____ (Licensee) | DATE 12/8/07 |

88
89 **4. SALE, PURCHASE and PROPERTY.**
90
91 The Seller agrees to sell and Buyer agrees to buy under the terms of this Contract:
92 (a) All that land, building(s) and improvements in the Municipality of _____Moorestown_____ , County of _____Burlington_____
93 and State of New Jersey, being commonly known as _____817 Matlack Drive_____ identified on
94 the Municipal Tax Map as Block _____03803_____ , Lot(s) No(s) _____00002_____ .
95 A description of the boundaries is either attached as Schedule "A" or appears in Deed Book_____ at
96 page_____ , recorded in the Clerk or Register of Deed's Office of_____Burlington_____ County.
97 (b) All other rights of the Seller in the land.
98
99 **5. PERSONAL PROPERTY and FIXTURES.**
100 The property being transferred includes all fixtures permanently attached to the building(s), all shrubbery, plantings and fencing.
101 **Also included:**
102 All permanently attached fixtures, wall / wall carpeting, sub zero refrigerator, all window treatments.
103
104
105
106
107 ................................................................................................................................................................................
108 Specifically excluded:
109 Swing set, and bathroom hanging mirror.
110
111
112
113
114 **6. PURCHASE PRICE/MANNER OF PAYMENT.**
115 The purchase price is _____Two Million Forty Thousand_____ Dollars $ 2,040,000
116 Payable as follows:
117 (1) Deposit paid upon signing of the Contract ................................................................................ $ 50,000
118 (2) Additional deposit to be paid on or before ................................................................................ $ 0
119 (3) At settlement, by certified or cashier's check and/or mortgage company check ...................... $ 1,990,000.
120 In the event of assumption of existing first mortgage or by Seller taking back Buyers' mortgage
121 note and mortgage. *See Additional Contract Provisions*
122
123 PURCHASE PRICE ....................................................................................................................... $ 2,040,000.
124
125
126 **7. DEPOSIT MONIES.**
127 All deposit payments made by the Buyer on account of the purchase price shall be held in a ☐ non-interest bearing ☒ interest
128 bearing (W-9 to be supplied to Escrow Holder with deposit) Trust Account of _____B.T. Edgar & Son_____ who
129 is called the Escrow Holder and shall be applied on account of the purchase price upon compliance by the Buyer with this
130 Contract. In the event the W-9 form is not returned or returned incomplete or unsigned, the down payment monies shall be placed
131 in a Non-interest bearing trust account of the Escrow Holder.
132
133 **8. SUFFICIENT ASSETS.**
134 **Buyer** represents that as of the signing of this Contract, Buyer has or will have as of the date of settlement, all necessary cash
135 assets, together with the mortgage loan proceeds, to complete settlement. Should the Buyer not have sufficient cash assets at the
136 time of settlement, Buyer will be in breach of Contract and Seller shall be entitled to any remedies as provided by law.
137 Buyer further represents:
138 ☒ the purchase of this property is NOT contingent upon the sale of any other real estate or personal property.
139 ☐ in order to complete settlement, Buyer will require the proceeds from the sale of property located at
140 _____ , which is currently under Contract. A copy of such Contract of Sale
141 shall be delivered to Seller, or Seller's agent, at the time of signing of this Contract.
142 ☐ in order to complete settlement, Buyer will require the proceeds from the sale of property located
143 at _____ , which is NOT currently under Contract.
144 A right of first refusal provision is attached and made a part of this Contract of Sale.
145
146 Seller represents that as of the date of settlement, Seller will have sufficient assets, including, but not limited to, the equity in the
147 property, to satisfy all liens, encumbrances and costs to complete settlement.
148
149 **9. MORTGAGE CONTINGENCY, PLACEMENT FEE (POINTS), COMMITMENT DATE:**
150 If payment of the purchase price requires a mortgage loan other than by the Seller or other than assumption of Seller's
151 mortgage, the Buyer shall apply for the loan in writing on lender's standard form within seven (7) days after the expiration of
152 the Attorney Review period (Paragraph 1) and use their best efforts to obtain it. The Buyer shall supply all necessary
153 information and fees required by the proposed lender and shall authorize the lender to communicate with the real estate
154 broker(s) and involved attorney(s). The Buyer shall obtain a written commitment from an established mortgage lender to make
155 a loan on the property under the following terms.
156
157 Principal Amount: $ 1,632,000.00_____ Type of Mortgage: ( ) VA  ( ) FHA  ☒ Conventional ( ) Other.
158
159 Term of Mortgage: _____30_____ years, with monthly payments based on a _____30_____ year payment schedule.
160 If VA guaranteed or FHA insured, minimum amount of appraisal required: $ N/A_____ , See FHA/VA
161 AMENDATORY CLAUSE attached to and made part of this contract.
162 At settlement, Seller shall also pay $ 50,000.00_____ to be applied toward Buyer's escrow items, closing costs, and/or points.
163 This amount shall not exceed the maximum credit permitted by Buyer's Mortgage Lender. Each "point" being 1% of Buyer's
164 mortgage loan.
165
166 The written mortgage commitment must be delivered to the Seller's agent who is the Listing Broker identified in Paragraph 33
167 no later than the _____7_____ day of _____January_____ , 20 08 . Should Buyer require additional time to obtain the written
168 mortgage commitment, the commitment date shall automatically be extended for a period not to exceed _____ days. If such

169 ~~extension shall cause the commitment date to extend beyond the settlement date specified in paragraph 14 then the settlement~~
170 ~~date shall be extended for_____days after the revised commitment date.~~ In the event the mortgage commitment is not delivered
171 by the specified date, or any extended date permitted by the Seller, this Contract may be deemed null and void. In that event,
172 the deposit monies paid by the Buyer, shall be returned to the Buyer unless failure to obtain the mortgage commitment is the
173 result of the Buyer's negligence or intentional conduct or failure to diligently pursue the mortgage application.
174
175

**10. INSPECTION BY LENDERS, SURVEYORS:   CERTIFICATIONS & REPAIRS.**
177    Seller agrees to permit inspections of the property by authorized appraisers, inspectors and surveyors that may be
178    requested by Buyer and/or Buyer's mortgage lender.
179    All mandatory certifications required by the Buyer's mortgage lender shall be paid for by the Buyer, except as otherwise
180    provided in this Contract.
181    All mandatory repairs required by the Buyer's mortgage lender, or as a condition of those certifications, shall be
182    accomplished before settlement at the Sellers expense, except as otherwise noted in this Contract. If the total cost of
183    those repairs is more than $ 200.00___ , this Contract may be declared null and void at the option of the Seller and
184    all deposit monies paid by the Buyer toward the purchase price shall be refunded to the Buyer, without further liability
185    to the Seller, or the Buyer may elect to make the repairs in excess of $ 200.00_____ at the Buyer's expense and in
186    that event, this contract shall remain in full force and effect.
187

**11. FLOOD AREAS.**
189    The federal and state governments have designated certain areas as flood areas. If the property is located in a flood area,
190    the use of the property may be limited. The Seller is not aware that the property is in a flood area; however, this does
191    not ensure that your lender may  not require flood insurance. If Buyer's inquiry reveals that the property is in a flood
192    area, the Buyer may cancel this Contract within ten (10) business days after the expiration of the Attorney Review
193    Period.   If the mortgage lender requires "flood insurance" then the Buyer shall be responsible for obtaining such
194    insurance on the property.
195

**12. POSSESSION, OCCUPANCY and TENANCIES.**
197    Possession and occupancy will be given to Buyer at time of settlement.  However, if the property is to be tenant
198    occupied as of the date of settlement, see **TENANCY ADDENDUM** and leases attached and made a part of this
199    contract.
200

**13. DATES AND TIME FOR PERFORMANCE.**
202    The Seller and the Buyer agree that all dates and times for performance of this Contract are **OF THE ESSENCE.**
203    This means that the Seller and Buyer must perform what is required of them within the time limits set by this
204    this Contract, or be in default, except as provided in this Contract.
205

**14. SETTLEMENT TIME and PLACE.**
207    Settlement is the meeting at which time the Seller transfers ownership of the property by Deed to the Buyer and the
208    Buyer pays the Seller the remainder of the purchase price.
209    Settlement shall take place at _Infinity Title Co. - 33 E. Main St., Moorestown, NJ_____ or at such place
210    as may be required by the mortgage lender on the ___7th___ day of ____February___ , 2008_____.
211    at__4:00__ o'clock __P__.M. The date, but not the hour, shall be of the essence. Where there is a designated title
212    insurance company, the proceeds check will be issued by it or by its authorized agent.
213

**15. SETTLEMENT COSTS and MONEY ADJUSTMENTS.**
215    Seller shall pay for the preparation of the Deed, realty transfer fee, lien discharge fees, if any, and one-half of the title
216    company charges for disbursements and attendance allowed by the Commissioner of Insurance; but all searches, title
217    insurance premium and other conveyancing expenses are to be paid for by the Buyer, unless the Seller and the Buyer
218    provide differently in writing.
219    Seller and Buyer shall make prorated adjustments at settlement for items which have been paid by Seller or are due from
220    Seller such as taxes, water and sewer charges which could be claims against the property, rental and security deposits,
221    association and condominium dues, and fuel in Seller's tank.  Adjustments of fuel shall be based upon physical
222    inventory and pricing by the Seller's supplier; such determination shall be conclusive.
223    If Buyer is assuming Seller's mortgage loan, Buyer shall credit Seller for all monies such as taxes and insurance
224    premiums paid in advance or on deposit with Seller's mortgage lender.  Buyer shall receive a credit for monies which
225    the Seller owes to Seller's Mortgage lender, such as current interest or a deficit in the mortgage escrow account. There
226    shall be no adjustment on any Homestead Rebate due or to become due.
227

**16. DEED and OTHER DOCUMENTS REQUIRED FOR SETTLEMENT.**
229    A Deed is a written document used to transfer ownership of property.  Seller agrees to provide and the Buyer agrees to
230    accept a Bargain and Sale Deed with Covenants against Grantor's (Seller's) acts.  This means that the Seller has done
231    nothing to encumber the title while being the owner.  If the Seller is a corporation, it will also deliver a corporate
232    resolution authorizing the sale.  The Seller shall give to the Buyer and/or title company an Affidavit of Title and
233    executed IRS 1099S form for reporting the sale.  An Affidavit of Title is a sworn statement which contains information
234    clarifying the Seller's ownership of the property, such as marital status, right of tenants, claims on record against people
235    having similar name as Seller.
236    Seller(s) state they  are, are not, foreign persons or non-resident aliens for the purpose of U.S. income taxation
237    and will, if required, provide a certificate of non-foreign status at, or before, settlement as to each Seller.
238

**17. CERTIFICATE OF OCCUPANCY AND ZONING COMPLIANCE.**
240    Seller makes no representation concerning existing zoning ordinances except that Seller's use of the property is not
241    presently in violation of any zoning ordinances and its present use as a _____single_____ family
242    dwelling may be continued.
243    Some municipalities may require a Certificate of Occupancy or Housing Code Letter to be issued. If any is required for
244    this property, Seller shall obtain it at Seller's expense and shall be responsible to make and pay for any repairs required
245    in order to obtain the Certificate or Letter. However, if this expense should exceed $ 300.00____ to the Seller, then
246    the Seller may terminate this contract and refund to the Buyer all deposit monies plus Buyer's reasonable expenses, if
247    any, in preparing to make settlement. The Buyer may elect to make repairs in excess of $ 300.00_____ at the
248    Buyer's expense. In addition, Seller shall comply with the New Jersey State Law, and local ordinances, including but

249  not limited to smoke detectors, carbon monoxide detectors and indoor sprinklers, the cost of which shall not be
250  considered as a repair cost.
251

## 18. CONDOMINIUM/HOMEOWNERS ASSOCIATION DOCUMENTS.

253  If the property is a condominium, or is subject to a homeowners' association, Seller shall prior to or at the time of the
254  signing of this Contact, provide Buyer with a copy of the current rules, regulations and by-laws of the condominium,
255  and/or homeowners' association. The name(s), address(s) and telephone number(s) of the Association(s) is/are:
256  **N/A**
257
258
259
260  Seller, if required, shall provide Buyer with written approval by the condominium or homeowners' association for
261  Buyer's purchase of the property. Prior to settlement, Seller shall provide a "Status of Account" letter and Certificate of
262  Insurance for the Association.
263  Seller represents that the current annual association fee is $ **N/A** _____ . Buyer acknowledges that associations
264  commonly require a one-time non-refundable capital contribution or start-up fees.
265

## 19. QUALITY and INSURABILITY OF TITLE.

267  The title to be transferred shall be a marketable title and insurable at regular rates by a reputable title insurance company
268  authorized to do business in the State of New Jersey.
269  The title shall be free and clear of all encumbrances including municipal liens and assessments and liabilities for future
270  assessments for improvements constructed and completed; however, title shall be subject to liabilities for assessments
271  for municipal improvements not completed on the date of this Contract. Seller represents that Seller ☐ has ☒ has not
272  been notified of any such assessments. All liens and encumbrances shall be satisfied at or before time of settlement.
273  The title shall be subject to all existing utility easements and restrictions of record, provided such easement or restriction
274  does not unreasonably limit the use of the property. Generally, an easement is a right of a person, other than the owner,
275  of the property to use a portion of the property for a special purpose. A restriction is a recorded limitation on the use of
276  the property. A violation of any restriction shall not be a reason for Buyer refusing to complete settlement as long as
277  the Title Company insures the Buyer against actual loss at regular rates..
278  The Seller states, to the best of the Seller's knowledge, that there are no restrictions in any conveyance or plans of
279  record that will prohibit use and/or occupancy of the property as a _____ **single** _____ family residential dwelling.
280  The Seller states that all buildings and other improvements on the property are within its boundary lines. Also, that no
281  improvements on adjoining properties extend across the boundary lines of this property. In the event the Seller is unable
282  to transfer the quality of title required and if the Buyer is unwilling to accept Seller's title without a reduction of the
283  purchase price, the monies paid by Buyer toward the purchase price shall be returned to the Buyer, together with
284  expenses of examining the title, making survey, mortgage application fees and Buyer's other reasonable expense in
285  preparing for settlement without further liability to the Seller.
286

## 20. CONDITION OF PROPERTY.

288  The land and buildings shall be transferred in the same condition as they now appear, reasonable wear and tear
289  excepted. This means that the property is being sold in its present conditions unless otherwise warranted hereinafter. In
290  addition, Seller shall leave the property free of debris and in broom-clean condition.
291

## 21. SELLER'S WARRANTIES AND PRE-SETTLEMENT INSPECTION.

293  A warranty is a promise. Seller warrants that the plumbing, electrical and heating systems together with all equipment
294  servicing those systems, the central air-conditioning, if existing, and all appliances, at time of settlement, are in good
295  operating condition. Buyer shall have the right to inspect the property immediately prior to settlement to ensure that
296  these items are in working order, also that the conditions of the property are as agreed.
297  Seller shall have all utilities in service during the 48-hour period immediately preceding settlement.
298

## 22. SELLER'S REPRESENTATION. (Check appropriate box)

300  Seller represents that the property is serviced by: ☒ public ☐ private waste disposal. If private waste disposal, see
301  attached **PRIVATE WASTE DISPOSAL ADDENDUM.**
302  Seller represents that the property is serviced by ☒ public ☐ private drinking water source. If private drinking water
303  source, see attached **WELL DRINKING WATER TEST ADDENDUM.**
304  Seller represents that to the best of Seller's knowledge there ☒ is/are no underground fuel tank(s), ☐ is/are
305  underground fuel tank(s) on the property, ☐ was/were underground fuel tank(s) which was/were properly removed,
306  ☐ is/are underground fuel tank(s) which was/were properly abandoned in place pursuant to the rules and regulations of
307  NJDEP. If an underground fuel tank(s) is present see attached **UNDERGROUND FUEL TANK ADDENDUM.**
308

## 23. HOME INSPECTION and REPORTS.

310  Although the premises is being purchased in its present condition, it is recommended that the Buyer obtain an
311  inspection. The Seller will make the property available to the Buyer's qualified inspectors for the purpose of inspecting
312  the property at Buyer's expense to assure that:
313

314  A. The heating, air-conditioning, plumbing and electrical systems are in good operating condition.
315  B. The foundation and structure of the building(s) and garage(s) are sound and that there is no water intrusion
316     into the premises;
317  C. The roof and flashings do not leak and are structurally sound;
318  D. The doors and windows (including seals), fireplaces and chimneys are in good operating condition;
319  E. There are no adverse environmental conditions affecting the property, such as the presence of toxic mold,
320     radon gas of 4.0 pCi/l or greater, air-borne asbestos fibers, toxic chemicals or other pollutants in the soil,
321     air or water.
322

323  These inspections are to be performed within 10 business days from the expiration of the Attorney Review Period. If
324  the reports disclose defects in the items mentioned above, Buyer shall supply to Seller or Seller's agent within that 10
325  day period,those portions of the reports describing said defects, together with a list of requested repairs. The Seller
326  shall then have 5 business days to respond in writing to the Buyer or Buyer's agent. If the Seller does not respond
327  within 5 business days, or if the Seller refuses to make the requested repairs at Seller's expense, then the Buyer may
328  cancel this Contract by giving written notice to the Seller or Seller's agent within 3 business days thereafter. In that
329  event, all deposit monies shall be returned to Buyer and neither party shall have any further obligation to the other.

If Buyer does not obtain and deliver these inspection reports within that 10-day period, Buyer's rights under this paragraph shall be deemed waived and this Contract shall remain binding. The time for delivery of these reports is of the essence.

"Qualified inspector" is defined as someone who is licensed or certified by a governmental authority having jurisdiction for such purposes. Where licensure or certification is not required by law for any such inspector, the term "qualified inspector" shall mean persons who are regularly engaged in the business of inspecting residential properties for a fee and who generally maintain good reputations for skill and integrity in their areas of expertise.

The fact that a structural element, system or subsystem is near, at or beyond the end of the normal useful life of such a structural element, system or subsystem is not by itself a material defect.

Maintenance and cosmetic items that are included in inspection reports are for the Buyer's information only and are not covered by the provisions of this paragraph.

Should Buyer's inspection fail to reveal existing defects in the property, Buyer's sole and exclusive remedy shall be against the inspectors providing such services.

**Attached is a Seller's disclosure statement to Buyer regarding the property    (Check appropriate box)**

☐ Yes

☒ No

## 24. INFESTATION and/or DAMAGE by WOOD BORING INSECTS.

The Buyer is permitted to have the accessible areas of the building and detached garage(s) inspected by a reputable exterminating company of Buyer's choice to determine if there is any damage caused or infestation by termites or other wood destroying insects. The Buyer will pay for this inspection. The inspection report shall be furnished to the Seller or Seller's agent no later than ___10___ days prior to settlement. If infestation or damage is found, the Seller, at the Seller's expenses, shall have the infestation treated and have repaired or replaced any wood which is deemed to be unserviceable in the opinion of a professional engineer or building contractor. Treatment and/or repairs are to be completed before settlement. If the estimate for the treatment and/or repairs exceeds $1,500.00_____, Seller, at Seller's option, may cancel this Contract. If Seller elects to cancel this Contract, all deposit monies plus the Buyer's reasonable expenses, if any, in preparing to make settlement shall be refunded to the Buyer. The Buyer may agree to accept the premises without the treatment and/or repairs in which case the Seller shall allow a credit of up to $1,500.00_____ against the purchase price at time of settlement. The failure of the Buyer to furnish the inspection report to the Seller or Seller's agent within the time provided will constitute a waiver by the Buyer or Buyer's rights under this clause.

## 25. RADON INFORMATION. (Check one)

☐ Seller has obtained a radon test. The results of the test are being provided to the Buyer.

☒ Seller represents that Seller is unaware of any such tests having been made.

## 26. LEAD-BASED PAINT DOCUMENT ACKNOWLEDGMENT (applies to dwellings built before 1978)

Buyer acknowledges receipt of the EPA pamphlet entitled "Protect Your Family From Lead in Your Home". Moreover, a copy of a document entitled DISCLOSURE OF INFORMATION AND ACKNOWLEDGMENT LEAD-BASED PAINT AND LEAD-BASED PAINT HAZARDS   has been fully completed and signed by Buyer, Seller and Broker(s) and is attached and made part of this Contract.

## 27. LEAD-BASED PAINT and/or LEAD-BASED PAINT HAZARD CONTINGENCY CLAUSE.

This paragraph is applicable to all dwellings built prior to 1978. Unless the Buyer and Seller agree to a longer or shorter period, Buyer has a ten (10) business day period within which to complete an inspection and/or risk assessment (the "Inspection") of the Property by a certified inspector/risk assessor for the presence of lead-based paint hazards. The Inspection shall be ordered and obtained by the Buyer at the Buyer's expense, within ten (10) business days from the expiration of the Attorney Review Period. If the Inspection indicates that no lead-based paint or lead-based paint hazard is present at the Property, this contingency clause shall be deemed to be null and void. If the Inspection indicates that lead-based paint or lead-based paint hazard is present at the Property, this contingency clause will terminate at the time set forth above unless within five business days of receiving the inspection results, the Buyer delivers a copy of the inspection and/or risk assessment report to the Seller and Broker(s) and (a) advises Seller and Broker(s), in writing that Buyer is voiding this Contract; or (b) delivers to Seller and Broker(s) a written amendment (the "Amendment") to this Contract listing the specific existing deficiencies and corrections required by the Buyer. The Amendment shall provide that the Seller agrees to (a) correct the deficiencies: and (b) furnish the Buyers with a certification from a certified inspector/risk assessor that the deficiencies have been corrected, before the date of settlement. The Seller shall have ___5___ days after receipt of The Amendment to sign and return it to Buyer or send a written counter-proposal to Buyer. If Seller does not sign and return the amendment or fails to offer a counter-proposal, this Contract shall be null and void and all deposit monies paid by Buyer toward the purchase price shall be refunded to the Buyer, without further liability to the Seller. In the event Seller offers a counter-proposal, Buyer shall have ___5___ days after receipt of the counter-proposal to accept it. If the Buyer fails to accept the counter-proposal within the time limit provided, this Agreement shall be null and void and all deposit monies paid by Buyer toward the purchase price shall be refunded to the Buyer, without further liability to the Seller.

## 28. NOTICE OF OFF-SITE CONDITIONS. (This statement is required by the New Jersey Real Estate Commission for Residential Resale Properties).

Pursuant to the New Residential Construction Off-Site Conditions Disclosure Act, P.L. 1995, c.253 the clerks of municipalities in New Jersey maintain lists of off-site conditions which may affect the value of residential properties in the vicinity of the off-site condition. Purchasers may examine the lists and are encouraged to independently investigate the area surrounding this property in order to become familiar with any off-site conditions that may affect the value of the property.   In cases where a property is located near the border of a municipality, purchasers may wish to also examine the list maintained by the neighboring municipality. If new construction, see attached NOTIFICATION REGARDING OFF-SITE CONDITIONS ADDENDUM.

## 29. AIRPORT SAFETY ZONE. (Check applicable box)

Seller represents that the property identified in Paragraph 1 of this Contract ☐ is ☒ is not located in an AIRPORT SAFETY ZONE as defined by the New Jersey Air Safety and Zoning Act of 1983, amended by L1991C445.

**30. MEGAN'S LAW STATEMENT.** (This statement is required by the New Jersey Real Estate Commission.)
Under New Jersey Law, the county prosecutor determines whether and how to provide notice of the presence of convicted sex offenders in the area. In their professional capacity, real estate licensees are not entitled to notification by the county prosecutor under Megan's Law and are unable to obtain such information for you. Upon settlement, the county prosecutor may be contacted for such further information as may be disclosable to you.

**31. DISPUTE BETWEEN SELLER AND BUYER OVER DEPOSIT.**
The Escrow Holder is not required to resolve any dispute which might arise between the Seller and Buyer concerning deposit payments in the Trust Account. The Escrow Holder will require from both the Seller and Buyer their written permission to pay out the deposit payment from the Trust Account. If the dispute is not resolved, the Escrow Holder will retain the deposit money until the Buyer and/or Seller receive an order from the Court regarding distribution.

**32. FAILURE OF BUYER OR SELLER TO SETTLE: BROKER'S RIGHT TO BROKERAGE FEE:**
In the event the Seller or Buyer fails to settle in accordance with this Contract, either may commence any legal or equitable action against the other as may be permitted by law. If Seller breaches this Contract, Seller will nevertheless be liable to the Broker for a brokerage fee as otherwise set forth in the Listing Agreement Contract. If Buyer breaches this Contract, Buyer will nevertheless be liable to the Broker for damages as determined by the Court, which may be equivalent to the brokerage fee in this Contract.

**33. BROKERAGE FEE: LIEN ON PROCEEDS.**
The Seller agrees to pay the named real estate broker(s) for services rendered in procuring this sale.
This fee is payable as follows:

| B.T. Edgar & Son | Ph#: (856) 235 0101 | As stated in Listing Agreement |
|---|---|---|
| Listing Broker | | Brokerage Fee 2% of sales pr. |
| 27 E. Main Street, Moorestown, NJ 08057 | Fax: (856)722 9190 | |
| Address and Telephone Number | | |

| Prudential Fox & Roach | Ph# (856) 234 0011 | As stated in MLS |
|---|---|---|
| Selling Broker | | Brokerage Fee 2% of sales pr. |
| 1 W. Main Street, Moorestown, NJ 08057 | Fax: (856) 234 3979 | |
| Address and Telephone Number | | |

The brokerage fee shall be due and payable at the time of actual settlement and all purchase money consideration has been received by the Seller. The Seller agrees and acknowledges that the dollar amount of the brokerage fee shall be a lien (a legal claim) on the purchase money proceeds derived from the sale of the subject property. The Seller, by this Contract, authorizes and directs the Buyer's attorney, or the title insurance company, whichever is the case, to pay to the broker(s) the full brokerage fee out of the proceeds of sale, prior to the payment of any funds to the Seller. The brokerage fee bill, duly receipted by the broker or broker's agent, or the closing attorney's or title insurance company's check in payment of such brokerage fee, shall be deemed a release and discharge of this lien.

**34. SELLER NOT LIABLE TO BUYER AFTER SETTLEMENT.**
All warranties, guarantees, representations of Seller concerning the property, the systems servicing the property, the appliances, lot lines, location of structures, driveways, fences and any other matter affecting this Contract, unless otherwise set forth in writing shall be absolutely void after settlement or delivery and acceptance of possession or occupancy, whichever is earlier. Buyer acknowledges they have the right to purchase a home warranty.

**35. RISK OF LOSS.**
The risk of loss or damage to the property by fire or otherwise, except ordinary wear and tear, is the responsibility of the Seller until settlement.

**36. NO RELIANCE ON OTHERS.**
This Contract is entered into by the Seller and Buyer based upon their full understanding of the meaning of all the provisions of this Contract, and upon the knowledge of the parties as to the value of the land and whatever buildings are upon same, and not on any representations made by either of them to the other, or by the real estate broker(s) involved. The Broker(s) named in this Contract, their personnel and associates are not to be held liable either to Seller or Buyer for the performance or non-performance of any of the terms of this Contract. Seller and Buyer agree that they are entering into this Contract without any reliance upon any representations or statements which may have been made by personnel or associates of the realty firm(s).

**37. CONSUMER INFORMATION STATEMENT ACKNOWLEDGMENT.**
By signing below the Seller(s) and Buyer(s) acknowledge they received the Consumer Information Statement on New Jersey Real Estate Relationships from the brokerage firms involved in this transactions prior to the first showing of the property.

**38. DECLARATION OF LICENSEE BUSINESS RELATIONSHIP(S).**

| B.T. Edgar & Son | (name of firm)  AND |
|---|---|
| Louise Marsh Carter | (name(s) of licensee(s) |

AS ITS AUTHORIZED REPRESENTATIVE(S), ARE WORKING IN THIS TRANSACTION AS (choose one):

    __X__SELLER'S AGENT(S)           ____BUYER'S AGENTS(S)
    ____DISCLOSED DUAL AGENT(S)    ____TRANSACTION BROKER(S)

| INFORMATION SUPPLIED BY Prudential Fox & Roach | (name of firm)  AND |
|---|---|
| Holly Donahue | (name(s) of licensee(s) |

INDICATED THAT IT IS OPERATING IN THIS TRANSACTION AS A (choose one):

    ____SELLER'S AGENT(S)           __X__BUYER'S AGENT
    ____DISCLOSED DUAL AGENT(S)    ____TRANSACTION BROKER

**39. NO ASSIGNMENT OR RECORDING.**
This Contract shall not be assigned. This means that neither the Buyer nor the Seller may transfer the rights under this Contract to anyone else. Neither this Contract nor a memorandum of it shall be recorded in the County Recording Office.

**40. ENTIRE CONTRACT, NO ORAL REPRESENTATIONS.**
This contract is the entire and only Contract between Buyer and Seller and cancels and replaces any previous agreements between them. This Contract may be changed only in writing signed by both Buyer and Seller. ANY REPRESENTATIONS OR AGREEMENTS NOT CONTAINED IN THIS CONTRACT ARE OF NO EFFECT.

**41. BINDING ON SUCCESSORS.**
This Contract is binding not only on the Seller and Buyer, but also on their heirs, personal representatives, and successors.

**42. ADDITIONAL CONTRACT PROVISIONS.**
A.   Seller agrees to finish the basement bathroom, now partially finished.
B.   Contingent upon appraisal equal to or greater than sale price of $2,040,000.00

**43. ACKNOWLEDGMENT OF TERMS OF CONTRACT.**
The Seller and Buyer agree to the terms of this Contract by signing below. If a corporation is a party, this Contract is signed by its proper corporate officers pursuant to a corporate resolution, and its corporate seal is affixed.

| | | | |
|---|---|---|---|
| Witness _(signature)_ | Date 12/8/07 | SELLER _(signature)_ | Date 12/9/07 |
| Witness | Date | SELLER _(signature)_ | Date 12/9/07 |
| Witness _Holly Donahue_ | Date 12/8/07 | BUYER _(signature)_ | Date 12/8/07 |
| Witness | Date | BUYER _Jacob Jacobs_ | Date 12/08/07 |

THIS CONTRACT PREPARED BY: _____
(Individual Licensee)

# Seller's Statement To Buyer Regarding Residential Property

The following is a statement, made by the seller, of information concerning the condition of the property located at _____

closure is not a warranty of any kind by the seller or any agent of the seller in this transaction, and is not a substitute for any inspections or warranties the purchaser may wish to obtain.

## To the Seller

Please complete the following form, including past history of problems if known. Do not leave any spaces blank. If the condition is not applicable to your property, mark "NA" in the blank. Attach additional pages if additional space is required. Be sure to sign the last page.

*The following are representations made by the seller and are not the representations of seller's agents.*

## Appliances/Systems

The items below are in good working order.

|  | Yes | No | Repairs within last 2 years |
|---|---|---|---|
| Range/oven | ✓ | — | — |
| Microwave | ✓ | — | — |
| Hood/fan | ✓ | — | — |
| Dishwasher | ✓ | — | — |
| Refrigerator | ✓ | — | — |
| Disposal | ✓ | — | — |
| Washer/Dryer | ✓ | — | — |

|  | Yes | No | Repairs within last 2 years |
|---|---|---|---|
| Hot Water Heater | ✓ | — | — |
| Trash compactor | NA | — | — |
| Central air | NA | — | — |
| Water softener | NA | — | — |
| Attic fan | NA | — | — |
| Sump pump | NA | — | — |
| Ceiling fan | ✓ | — | — |
| TV antenna | ✓ | — | — |
| Garage dr opener & remote controls | NA | — | — |
| Fireplace & chimney | ✓ | — | — |
| Other: | | | |

Explanations of "No" and "Repair" responses, if any:

## Property Conditions & Improvements

**1. Basement: Has there been evidence of or problems with water leakage?**
[ ] Yes  [✓] No  [ ] Unknown
If yes, please explain, including the frequency and extent of the problem.

**2. Insulation: Please describe if known.**

Has urea formaldehyde foam insulation (UFFI) been installed?
[ ] Yes  [✓] No  [ ] Unknown
If removed, by whom and when?

**3. Roof: Age of roof:** _2_  Any leaks?
[ ] Yes  [✓] No  [ ] Unknown

**4. Water System: Well or city water?**
(Please circle.) If well, please describe type of well (depth/diameter) _city_
[ ] Yes  [✓] No  [ ] Unknown
If yes, please describe.

Age of well: _____  Any known
problems or repairs?
[ ] Yes  [ ] No  [ ] Unknown
If yes, please describe.

**5. Drainage System: Septic tanks/drain fields or city sewer system? (Please circle.)**
Any known problems or repairs?
[ ] Yes  [✓] No  [ ] Unknown
If yes, please describe.

Location of septic field?

**6. Heating System: Type:** _natural_
Age of heating system: _2_
Any known problems or repairs?
[ ] Yes  [✓] No  [ ] Unknown
If yes, please describe.

**7. Plumbing System:**
[✓] Copper  [ ] Galvanized  [ ]
Any known problems or repairs?
[ ] Yes  [✓] No  [ ] Unknown
If yes, please describe.

**8. Electrical System:**
[ ] Yes  [✓] No  [ ] Unknown
Capacity: _____ amps
Any known problems or repairs?
[ ] Yes  [✓] No  [ ] Unknown
If yes, please describe.

**9. Aluminum Wiring:**
[ ] Yes  [✓] No  [ ] Unknown
If yes, please describe.

**10. Infestation: History, if any, of termites, carpenter ants, etc.?**
[ ] Yes  [✓] No  [ ] Unknown
Any treatments for infestation?
[ ] Yes  [✓] No  [ ] Unknown
If yes, please describe.

Presently under warranty?
[ ] Yes  [✓] No  [ ] Unknown
With whom? _____
Please describe any repairs?

11. Asbestos: Is asbestos present in any form in or on the property?

[ ] Yes [√] No [ ] Unknown

If yes, where? _____

Has it been removed or encapsulated?

[ ] Yes [ ] No [ ] Unknown

If removed, from where, when and by whom?

[ ] Yes [ ] No [ ] Unknown

12. Radon: Has the property been tested for the presence of radon gas?

[ ] Yes [√] No [ ] Unknown

If yes, what were the test results? _____

13. Landfill: Is the property located in close proximity to a landfill?

[ ] Yes [√] No [ ] Unknown

If yes, which landfill and location? _____

14. Environment: Are you aware of any environmental concerns?

[ ] Yes [√] No [ ] Unknown

If yes, please describe. _____

15. Principal Uses: Are you aware of any principal uses of the property other than as residential property, such as commercial use or farming?

[ ] Yes [√] No [ ] Unknown

If yes, please describe the use _____

---

## Other Items

As the seller, are you aware of any of the following:

16. Features of the property shared in common with adjoining landowners, such as walls, fences, roads or driveways whose use or responsibility for maintenance may have an effect on the property?

[ ] Yes [√] No [ ] Unknown

If yes, please describe _____

17. Rights-of-way, easements or similar matters that may affect the property?

[ ] Yes [√] No [ ] Unknown

If yes, please describe _____

18. Room additions or structural modifications?

[√] Yes [ ] No [ ] Unknown

If yes, please describe work and identify who did the work _____
_3rd floor_
_basement bath #1_

19. Underground storage tanks on the property?

[ ] Yes [√] No [ ] Unknown

If yes, please describe type, location and size of tank. _____

20. Setting, flooding, drainage, grading, or soil problems?

[ ] Yes [√] No [ ] Unknown

If yes, please describe _____

21. Major damage to the property or any of the structures from fire, wind, floods or landslides?

[ ] Yes [√] No [ ] Unknown

If yes, please describe. _____

22. Any zoning violations or noncon-forming uses?

[ ] Yes [√] No [ ] Unknown

If yes, please describe. _____

23. Homeowner's association which has any authority over the property?

[ ] Yes [√] No [ ] Unknown

If yes, please describe _____

24. Any "common areas" (facilities such as pools, tennis courts, walkways, or other areas co-owned)?

[ ] Yes [√] No [ ] Unknown

If yes, please describe _____

25. Any assessments, liens, or judgments against the property or owners?

[ ] Yes [√] No [ ] Unknown

If yes, please describe _____

If yes, please describe _____

26. Please state any other facts or infor-mation relating to this property that would be of interest to a buyer. _____

To the extent of the seller's knowledge as a property owner, the seller acknowledges that the information contained above is true and accurate for those areas of the property listed.

(Seller) _CONTINUED ____ 12/10/07_

(Date) _12/10/07_

(Seller) _____

(Date) _____

## To the Buyer

The buyer is urged to carefully inspect the property and, if desired, to have the property inspected by an expert. The buyer understands that there are areas of the property of which seller has no knowledge and that this disclosure statement does not encompass those areas. The buyer also ac-knowledges that he has read and received a signed copy of this statement from the seller or the seller's agent.

(Buyer) _____

(Date) _12/10/07_

(Buyer) _____

(Date) _12/10/07_

Revised 9/91

# EXHIBIT "B"

DEC-20-2007  10:44    LAW OFFICE R GRUENEBERG                                    856 235 6898        P.03/05

# RIDER TO CONTRACT FOR SALE

THIS RIDER TO CONTRACT FOR SALE ("Rider") is made this 18th day of December, 2007, by and between **SCOTT JACOBS and TRACI JACOBS**, husband and wife (the "Buyer") and **FRANK J. REED, III and CHRISTINA A. REED**, husband and wife (the "Seller") and amends that certain Contract for Sale dated as of December 8, 2007 (the "Contract") for real property known as 817 Matlack Drive, Moorestown, New Jersey 08057, being described and depicted on the Municipal Tax Map of Moorestown Township as Block 3803, Lot 2 (the "Property").

The Buyer and the Seller intending to be legally bound hereby agree to amend the Contract as follows:

1.    Line 20 of the Contract shall be amended to include Miriam Jacobs.

2.    Line 109 of the Contract shall be amended and restated so that the swing set and bathroom hanging mirror are specifically excluded.  The Seller shall replace the bathroom hanging mirror with a standard grade mirror of comparable size; or, in the alternative, shall repair any damage to the wall after the bathroom hanging mirror is removed by Seller.

3.    Line 209 of the Contract shall be amended and restated so that Settlement shall take place at the law offices of Sherman, Silverstein, Kohl, Rose & Podolsky, P.A., 4300 Haddonfield Road, Suite 311, Pennsauken, New Jersey 08109.  The remainder of paragraph 14 shall be unchanged.

4.    Line 323 of the Contract shall be amended to reflect that the inspections are to be performed within 10 business days from December 17, 2007.

5.    Line 343-345 of the Contract shall be amended so that the block marked "yes" shall be checked by Seller.  Seller's Property Disclosure Statement is attached to the Contract.

DEC-20-2007  10:44     LAW OFFICE R GRUENEBERG                   856 235 6898    P.04/05

6.      Paragraph 32 of the Contract (Failure of Buyer or Seller to Settle; Broker's Right to Brokerage Fee) shall be amended so that the second and third sentences therein shall be deleted in their entirety.

7.      Paragraph 42 of the Contract (Additional Contract Provisions) shall be amended and restated as follows:

> A.      Seller agrees to finish the basement bathroom, now partially completed, at Seller's sole cost and expense (the "Basement Bathroom Work"). The Basement Bathroom Work shall be completed in a good and workmanlike manner on or before Closing. Buyer shall have an opportunity to inspect the Basement Bathroom Work on or about January 8, 2008.

> B.      Subparagraph 42.B of the Contract is deleted and replaced with the following provision:

> Buyer's obligation to purchase the property shall be contingent upon the Lender's appraisal being equal to or greater than the Purchase Price. In the event that the Lender's appraisal is less than the Purchase Price, the Buyer shall be entitled to cancel the Contract upon written notice to the Seller and Seller's agent on or before the Mortgage Commitment Date whereupon the deposit shall be returned to Buyer and neither party shall have any further liability or obligation to the other hereunder.

> C.      Seller shall, at the time of Closing, deliver to Buyer the 10-year home warranty provided by Builder.

> D.      Upon execution of this Rider by Seller, Seller shall provide Buyer, Buyer's agent and Buyer's counsel with the Seller's Owner's Title Policy of Insurance and most recent survey of the Property.

8.      Upon execution of this Rider by Buyer and Seller, the Attorney Review Period provided for in paragraph 1 of the Contract shall be concluded and the Agreement (as defined below) shall be in full force and effect and binding upon the parties hereto.

9.      Notices required under this Rider or the Contract will be accepted by recognized overnight courier or by confirmed facsimile transmission followed by postage prepaid first class mail.

C:\Documents and Settings\karen.RGLAWGROUP\Local Settings\Temporary Internet Files\OLK44\Jacobs-Read Rider 121307.doc-12/18/2007

DEC-20-2007  10:44        LAW OFFICE R GRUENEBERG                    856 235 6898      P.05/05

10.    The Buyer and the Seller agree that if the Buyer defaults under the Contract, the Seller's damages will be difficult to determine and that the deposit represents a fair estimate of the Seller's damages. The Seller's sole and exclusive remedy in the event of the Buyer's default under the Contract, shall be to retain the deposit as complete and liquidated damages for the Buyer's default hereunder.

11.    Except as otherwise changed by this Rider, the Contract shall continue in full force and effect. In the event of a conflict between the provisions of this Rider and the Contract, the provisions of this Rider shall control.

12.    This Rider may be executed in any number of counterparts, each of which shall be considered an original and together shall constitute a single Agreement. For purposes of this Rider, a counterpart transmitted by facsimile shall constitute an original.

IN WITNESS WHEREOF, the Buyer and the Seller execute this Rider the date first written above.

_____
Scott Jacobs, Buyer

_____
Traci Jacobs, Buyer

_____
Miriam Jacobs, Buyer

_____
Frank J. Reed, III, Seller

_____
Christina A. Reed, Seller

C:\Documents and Settings\karen.RGLAWGROUP\Local Settings\Temporary Internet Files\OLK44\Jacobs-Reed Rider 121307.doc-12/18/2007

10.     The Buyer and the Seller agree that if the Buyer defaults under the Contract, the Seller's damages will be difficult to determine and that the deposit represents a fair estimate of the Seller's damages.  The Seller's sole and exclusive remedy in the event of the Buyer's default under the Contract, shall be to retain the deposit as complete and liquidated damages for the Buyer's default hereunder.

11.     Except as otherwise changed by this Rider, the Contract shall continue in full force and effect.  In the event of a conflict between the provisions of this Rider and the Contract, the provisions of this Rider shall control.

12.     This Rider may be executed in any number of counterparts, each of which shall be considered an original and together shall constitute a single Agreement.  For purposes of this Rider, a counterpart transmitted by facsimile shall constitute an original.

IN WITNESS WHEREOF, the Buyer and the Seller execute this Rider the date first written above.

Scott Jacobs, Buyer

Traci Jacobs, Buyer

Miriam Jacobs, Buyer


Frank J. Reed, III, Seller


Christina A. Reed, Seller

# EXHIBIT "C"

# STATEMENT OF CREDIT DENIAL, TERMINATION OR CHANGE

Date: **January 04, 2008**

APPLICANT'S NAME: Miriam K Jacobs
5 South Nassau Avenue
ADDRESS: Margate, NJ 08403
CITY, STATE, ZIP:

CREDITOR'S NAME: Commerce Bank, N.A.
ADDRESS: 6000 Atrium Way
CITY, STATE, ZIP: MOUNT LAUREL, NEW JERSEY 08054
TELEPHONE: 888-751-9000

**I.**   Description of Account, Transaction, or Requested Credit: 817 Matlack Drive
Moorestown, NEW JERSEY 08057

**II.**   Description of Action Taken: Application denied by financial institution.

**III.**   Principal Reason(s) for Credit Denial, Termination or Other Action Taken Concerning Credit:

**A.   Credit**
| | |
|---|---|
| ☐ No credit file | ☐ Garnishment or attachment |
| ☐ Insufficient number of credit references provided | ☐ Foreclosure or repossession |
| ☐ Limited credit experience | ☐ Collection action or judgment |
| ☐ Poor credit performance with us | ☐ Unacceptable type of credit references provided |
| ☐ Delinquent past or present credit obligations with others | ☐ Unable to verify credit references |
| ☐ Bankruptcy | ☐ Number of recent inquiries on credit bureau report |

**B.   Income and Employment**
| | |
|---|---|
| ☐ Unable to verify income | ☐ Unable to verify employment |
| ☐ Income insufficient for amount of credit requested | ☐ Temporary or irregular employment |
| ☐ Excessive obligations in relation to income | ☐ Length of employment |

**C.   Residence**
| | |
|---|---|
| ☐ Length of residence | ☐ Temporary residence |
| ☐ Unable to verify residence | |

**D.   Other**
| | |
|---|---|
| ☐ Credit application incomplete | ☐ Specify: **Value or Type of Collateral not Sufficient/Unacceptable** |
| ☒ Value or type of collateral not sufficient | **Property** |

**IV.**   Disclosure of Use of Information Obtained from an Outside Source:

☐   Disclosure inapplicable

☐   Our credit decision was based in whole or in part on information obtained in a report from the consumer reporting agency listed below. You have a right under the Fair Credit Reporting Act to know the information contained in your credit file at the consumer reporting agency. The reporting agency played no part in our decision and is unable to supply specific reasons why we have denied credit to you. You also have a right to a free copy of your report from the reporting agency, if you request it no later than 60 days after you receive this notice. In addition, if you find that any information contained in the report you receive is inaccurate or incomplete, you have the right to dispute the matter with the reporting agency.

Name:   LandSafe
Street Address: 7105 Corporate Drive
City, State, Zip:  Piano, TX. 75024
Telephone:   (877) 572-5673

(If the Consumer Reporting Agency compiles and maintains files on consumers on a nationwide basis, provide a toll-free telephone number.)

☒   Our credit decision was based in whole or in part on information obtained from an affiliate or from an outside source other than a consumer reporting agency. Under the Fair Credit Reporting Act, you have the right to make a written request, no later than 60 days after you receive this notice, for the disclosure of the nature of this information.

**V.**   ECOA Notice

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal Agency that administers compliance with this law concerning this creditor is:

Office of the Comptroller of the Currency
Agency:   Customer Assistance Group
1301 McKinney St, Suite 3450
Houston, TX 77010-9060

If you have any questions regarding this Notice, contact us at the address and/or telephone number provided above.

Notice  ☒ Mailed   ☐ Delivered   ☐ Emailed    Date: _January 4, 2008_   By: _____

© 1998 Harland Financial Solutions, Inc.

GreatDocs ™
To Order Call 1-800-968-5711

# EXHIBIT "D"



# APPRAISAL OF REAL PROPERTY

**LOCATED AT:**
817 MATLACK DRIVE
BLOCK 3803, LOT 2
MOORESTOWN, NJ 08057

**FOR:**
COMMERCE BANK, N.A.

**AS OF:**
December 24, 2007

**BY:**
Robert J Jones, Jr IFA

# Uniform Residential Appraisal Report

LOAN #1470061264
File # 7CB214

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| Property Address | 817 MATLACK DRIVE | City MOORESTOWN | State NJ | Zip Code 08057 |
|---|---|---|---|---|

Borrower JACOBS  Owner of Public Record REED  County BURLINGTON

Legal Description BLOCK 3803, LOT 2

Assessor's Parcel # 22.3803.2  Tax Year 2007  R.E. Taxes $ 29,702

Neighborhood Name STREET OF CUSTOM HOMES  Map Reference FRANKLIN E4/3299  Census Tract 7005.00

Occupant ☒ Owner ☐ Tenant ☐ Vacant  Special Assessments $ N/A  ☐ PUD  HOA $ N/A  ☐ per year ☐ per month

Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)

Assignment Type ☒ Purchase Transaction ☐ Refinance Transaction ☐ Other (describe)

Lender/Client COMMERCE BANK, N.A.  Address 6000 ATRIUM WAY, MT LAUREL, NJ

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☒ Yes ☐ No

Report data source(s) used, offering price(s), and date(s). MLS #5097131 REPORTS A PENDING LISTING WITH AN ASKING PRICE OF $2,175,000.

THE SUBJECT WAS EXPOSED TO THE MARKET FOR 110 DAYS.

I ☒ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed. TYPICAL CONTRACT REVIEWED. NO ATYPICAL SELLER INCLUSIONS OR CONCESSIONS NOTED IN COPY SUPPLIED AND ON RECORD WITH APPRAISER.

Contract Price $ 2,040,000  Date of Contract 12/8/07  Is the property seller the owner of public record? ☒ Yes ☐ No  Data Source(s) TREND

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☒ No

If Yes, report the total dollar amount and describe the items to be paid. NONE NOTED *THERE IS A CONTRACTUAL REPAIR NOTED IN THE AGREEMENT. THE BASEMENT LEVEL BATHROOM IS TO BE COMPLETED. THIS COMPLETED BATHROOM WILL BE ENCOMPASSED IN THIS REPORT.

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | One-Unit Housing Trends | | One-Unit Housing | | Present Land Use % |
|---|---|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | Property Values ☐ Increasing ☒ Stable ☐ Declining | | PRICE | AGE | One-Unit | 75 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | | $ (000) | (yrs) | 2-4 Unit | % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | | 136.5 Low | 2 NEW | Multi-Family | % |
| Neighborhood Boundaries RT 603 (N-NE-E), MAIN STREET (SE), CHURCH RD (S-SW), AND THE RT | | | 2,900 High | 100+ | Commercial | 10 % |
| 130 9W). THE MARKETING AREA EXTENDS THROUGHOUT PORTIONS OF THE TWP. | | | 600+- Pred. | 20+ | Other | 15 % |

Neighborhood Description A HIGH END CUSTOM HOME COMMUNITY THAT CONSISTS OF A BALANCED MIX OF CONTIGUOUS DWELLING STYLES. THIS LOCATION OFFERS RELATIVELY EASY ACCESS TO PLACES OF WORSHIP, RECREATION, EDUCATION, AND SHOPPING. SERVICE TYPE COMMERCIAL USES ARE NEARBY.

Market Conditions (including support for the above conclusions) STATISTICAL ANALYSIS OF THE MARKET OVER THE PAST 24 MONTHS (broken down into two 12 month periods preceding this report) INDICATES THAT THIS MARKET HAS INCREASED-01% ON AVERAGE. REVIEW OF CURRENT LISTINGS AND PENDINGS IN THE MARKET INDICATE A STABLE MARKET WITH DEMAND AND SUPPLY IN BALANCE.

| Dimensions 143 X 180 IRR | Area 25,740 Sq.Ft. | Shape RECTANGULAR | View AVERAGE |
|---|---|---|---|

Specific Zoning Classification R1A  Zoning Description RESIDENTIAL

Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No  If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street MACADAM | ☒ | |
| Gas | ☒ | | Sanitary Sewer | ☒ | | Alley | | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No  FEMA Flood Zone X  FEMA Map # 0005C  FEMA Map Date 1/19/96

Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No  If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No  If Yes, describe

NO ADVERSE SITE CONDITIONS OR EXTERNAL FACTORS NOTED. NO ADVERSE EASEMENTS, ENCROACHMENTS, ENVIRONMENTAL CONDITIONS, OR LAND USES NOTED ON THE SITE OR IN THE IMMEDIATE AREA.

| General Description | Foundation | Exterior Description materials/condition | Interior materials/condition |
|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | ☐ Concrete Slab ☐ Crawl Space | Foundation Walls PRD CONC - GD | Floors H/W+W/W-GOOD |
| # of Stories 2.5 | ☒ Full Basement ☐ Partial Basement | Exterior Walls Stucco+Vnl &-GD | Walls DRYWALL - GOOD |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | Basement Area 2,261 sq.ft. | Roof Surface COMP SH -GOOD | Trim/Finish WOOD-GOOD |
| ☒ Existing ☐ Proposed ☐ Under Const. | Basement Finish 50 % | Gutters & Downspouts ALUM - GOOD | Bath Floor CER TILE-GOOD |
| Design (Style) COLONIAL | ☐ Outside Entry/Exit ☐ Sump Pump | Window Type WD Csmt+DH-GD | Bath Wainscot CER TL - GOOD |
| Year Built 2006 | Evidence of ☐ Infestation | Storm Sash/Insulated INSULATED | Car Storage ☐ None |
| Effective Age (Yrs) 1 | ☐ Dampness ☐ Settlement | Screens YES | ☒ Driveway # of Cars 4-8 |
| Attic ☒ None | Heating ☒ FWA ☐ HWBB ☐ Radiant | Amenities | Driveway Surface ASPHALT |
| ☐ Drop Stair ☐ Stairs | ☐ Other Fuel GAS | Woodstove(s) # | ☒ Garage # of Cars 3 |
| ☐ Floor ☐ Scuttle | Cooling ☒ Central Air Conditioning | ☐ Fireplace(s) # | ☐ Carport # of Cars |
| ☐ Finished ☐ Heated | ☐ Individual ☐ Other | ☐ Patio/Deck ☐ Porch | ☐ Att. ☐ Det. ☒ Built-in |
| | | ☐ Fence | |
| | | ☐ Pool ☐ Other | |

Appliances ☐ Refrigerator ☒ Range/Oven ☒ Dishwasher ☒ Disposal ☒ Microwave ☐ Washer/Dryer ☐ Other (describe)

Finished area above grade contains: 12 Rooms  7 Bedrooms  7+2 Bath(s)  6,272 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.). INSULATED WINDOWS, 2 FIREPLACES, PARTIAL FINISHED BASEMENT WITH FULL BATHROOM, SINCE PURCHASE THE THIRD FLOOR HAS BEEN FINISHED INTO 1167 SQ FT WITH 2 BEDROOM SUITES WITH BATHS.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.). THE SUBJECT IS A GOOD QUALITY DWELLING THAT IS IN OVERALL GOOD CONDITION. THE SUBJECT EXHIBITS ONGOING MAINTENANCE AND GOOD QUALITY UPGRADING.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No  If Yes, describe

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No  If No, describe

Freddie Mac Form 70 March 2005  Page 1 of 6  Fannie Mae Form 1004 March 2005

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

File No. 7CB214 Page #3 of 18

## Uniform Residential Appraisal Report

LOAN #1470061264
File # 7CB214

There are **4** comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 2,095,000 to $ 2,190,000
There are **3** comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 1,850,000 to $ 2,900,000

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | +(-) $ Adjustment | COMPARABLE SALE # 2 | +(-) $ Adjustment | COMPARABLE SALE # 3 | +(-) $ Adjustment |
|---|---|---|---|---|---|---|---|
| Address | 817 MATLACK DRIVE | 804 MATLACK DRIVE | | 807 RIVERTON ROAD | | 321 E OAK AVENUE | |
| | MOORESTOWN, NJ 08057 | MOORESTOWN | | MOORESTOWN | | MOORESTOWN | |
| Proximity to Subject | | 0.03 miles E | | 0.18 miles NE | | 1.36 miles SE | |
| Sale Price | $ 2,040,000 | $ 1,850,000 | | $ 1,900,000 | | $ 2,900,000 | |
| Sale Price/Gross Liv. Area | $ 325.26 sq.ft. | $ 327.84 sq.ft. | | $ 343.33 sq.ft. | | $ 532.50 sq.ft. | |
| Data Source(s) | | MLS/BROKER | | MLS/BROKER | | MLS/BROKER | |
| Verification Source(s) | | TAX ASSESSOR | | TAX ASSESSOR | | TAX ASSESSOR | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | CONV/1 DOM | | CONV/23 DOM | | CONV/NA DOM | |
| Concessions | | NONE NOTED | | NONE NOTED | | NONE NOTED | |
| Date of Sale/Time | | 8/07 | | 1/07 | | 5/07 | |
| Location | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Leasehold/Fee Simple | Fee Simple | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | 25,740 Sq.Ft. | 30,000+ Sq.Ft. | | 2.1+-ACRES | -10,000 | 6+-ACRES | -50,000 |
| View | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Design (Style) | COLONIAL | COLONIAL | | French Colonial | nominal | Victorian | nominal |
| Quality of Construction | GOOD | GOOD | | GOOD | | AVERAGE | +25,000 |
| Actual Age | 1 | NEW | | 10+- | +10,000 | 91+- | +90,000 |
| Condition | GOOD | NEW | nominal | AVERAGE | +10,000 | AVERAGE | +10,000 |
| Above Grade | Total Bdrms Baths | Total Bdrms Baths | | Total Bdrms Baths | | Total Bdrms Baths | |
| Room Count | 12  7  7+2 | 10  6  5+2 | +30,000 | 10  5  5+1 | +37,500 | 13  8  4+1 | +52,500 |
| Gross Living Area | 6,272 sq.ft. | 5,643 sq.ft. | +62,900 | 5,534 sq.ft. | +73,800 | 5,446 sq.ft. | +82,600 |
| Basement & Finished | 2,261 Sq.Ft. | FULL BASMNT | | FULL BASMNT | | FULL BASMNT | |
| Rooms Below Grade | P-FIN W/BATH | P-FIN W/BATH | | P-FIN W/BATH | | UNFINISHED | +25,000 |
| Functional Utility | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Heating/Cooling | GFWA-C/A | GFWA-C/A | | GFWA-C/A | | GFWA-C/A | |
| Energy Efficient Items | STANDARD | STANDARD | | STANDARD | | STANDARD | |
| Garage/Carport | 3 CAR | 3 CAR | | 3 CAR | | 3 CAR+CARPT | -5,000 |
| Porch/Patio/Deck | NONE | PATIO | -5,000 | PATIO,DECK | -10,000 | 2 ENC PORCH | -15,000 |
| | 2 FIREPLACES | 1 FIREPLACE | +10,000 | 3 FIREPLACES | -10,000 | 5 FIREPLACES | -30,000 |
| Net Adjustment (Total) | | ☒ + ☐ - | $ 97,900 | ☒ + ☐ - | $ 101,300 | ☒ + ☐ - | $ 185,100 |
| Adjusted Sale Price | | Net Adj. 5.3 % | | Net Adj. 5.3 % | | Net Adj. 6.4 % | |
| of Comparables | | Gross Adj. 5.8 % | $ 1,947,900 | Gross Adj. 8.5 % | $ 2,001,300 | Gross Adj. 13.3 % | $ 3,085,100 |

☒ did  ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☒ did  ☐ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s)    MLS/TREND/NJACTB.ORG
My research ☐ did  ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s)    MLS/TREND/NJACTB.ORG
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 6/2006 | NONE NOTED UNDER | NONE NOTED UNDER | NONE NOTED UNDER |
| Price of Prior Sale/Transfer | $1,571,619 | NORMAL COURSE OF | NORMAL COURSE OF | NORMAL COURSE OF |
| Data Source(s) | TREND/MLS | BUSINESS | BUSINESS | BUSINESS |
| Effective Date of Data Source(s) | 12/31/07 | 12/31/07 | 12/31/07 | 12/31/07 |

Analysis of prior sale or transfer history of the subject property and comparable sales   THE SUBJECT WAS PURCHASED WITHIN 3 YEARS OF THIS
REPORT. SAID SALE WAS INDICATIVE OF A DISTRESSED PROPERTY. AS NOTED IN THIS REPORT, THE SUBJECT HAS UNDERGONE
EXTENSIVE EXPANSION OF THE 3RD FLOOR.

Summary of Sales Comparison Approach   ALL OF THE COMPARABLES SHARE SALIENT FEATURES OF THE SUBJECT. ALL SALES ARE CLOSED
WITH VERIFIED SETTLEMENT DATES. ONE OR MORE OF THE COMPARABLES HAS CLOSED IN EXCESS OF 6 MONTHS. THE USE OF
SAID SALE(s) WAS NECESSARY DUE TO THE LACK OF A MORE RECENT SALE TO BE LOCATED, AND/OR VERIFIED. WHEN
APPLICABLE, A TIME ADJUSTMENT HAS BEEN MADE.

Indicated Value by Sales Comparison Approach $  1,950,000

Indicated Value by: Sales Comparison Approach $  1,950,000   Cost Approach (if developed) $  1,960,097   Income Approach (if developed) $  N/A
THE SALES COMPARISON APPROACH HAS BEEN GIVEN THE MOST WEIGHT. THE COST AND INCOME APPROACHED HAVE BEEN
GIVEN CONSIDERATION AND ARE NOT NECESSARY IN ORDER TO PROVIDE CREDIBLE RESULTS.

This appraisal is made ☒ "as is",  ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been
completed,  ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the
following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting
conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$  1,950,000 , as of   December 24,2007 , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 70 March 2005          Page 2 of 6          Fannie Mae Form 1004 March 2005

## Uniform Residential Appraisal Report

LOAN #1470061264
File # 7CB214

LAND SIZE ADJUSTMENTS HAVE BEEN MADE AT APPROX $10,000 PER ACRE. THE SUBJECT'S EXACT LOT SIZE IS AN ESTIMATE BASED UPON IT'S IRREGULAR LOT LINES.

AGE ADJUSTMENTS WERE WARRANTED FOR C2 AND C3. THE AGE ADJUSTMENTS HAVE BEEN MADE AT APPROX $1,000 PER DIFFERENCE IN YEAR/AGE. C1 IS NEW AND IS CONSIDERED EQUAL IN AGE APPEAL.

ALL OF THE SALES ARE UPPER END SALES. THE CONDITION ADJUSTMENT MADE IS INDICATIVE OF MARKET REACTION FOR THE SUBJECT'S GOOD/NEWER CONDITION.

ABOVE GRADE BATHROOM COUNT ADJUSTMENTS HAVE BEEN MADE AT $15,000 PER FULL BATH, APPLIED ACCORDINGLY.

GLA ADJUSTMENTS HAVE BEEN MADE AT $100 PER SQ FT. THIS IS AN UPPER END ADJUSTMENT THAT IS ENCOMPASSING THE QUALITY OF CONSTRUCTION AS WELL AS THE APPEAL OF THE INCREASED GLA. THIS FIGURE IS 50% OF COST ESTIMATE.

C3 ADJUSTED FOR IT'S UNFINISHED BASEMENT AND LACK OF A BATHROOM ON THIS LEVEL.

..

C1 IS A SETTLED SALE LOCATED ON THE SUBJECT'S STREET, BUILT BY THE SAME BUILDER. SAID SALE HAS BEEN GIVEN THE MOST WEIGHT. APPRAISER HAS RELIED UPON VERIFIABLE INFORMATION THROUGH THE TAX ASSESSOR FOR THIS SALE. THE AGENT FOR THE SUBJECT WAS ALSO THE AGENT FOR THIS SALE AND IS NOT CONSIDERED AN UNBIASED VERIFICATION SOURCE.

C2 IS AN OLDER SALE THAT HAS BEEN UTILIZED DUE TO THE LACK OF ANOTHER TRULY MORE SUITABLE SALE.

C3 WAS A PRIVATE SALE THAT DID NOT TAKE PLACE WITH AN MLS REALTOR. APPRAISER INTERVIEWED THE TAX ASSESSOR AND HIS ASSISTANT REGARDING THIS PROPERTY. BOTH WERE EXTREMELY KNOWLEDGEABLE WITH THIS PROPERTY AS THEY WILL BE RELYING UPON THIS SALE TO "HELP IN THEIR UPCOMING REVALUATION". CONDITION, ROOM COUNT, AND ALL RELEVANT INFORMATION TO THE VALUATION PROCESS HAS BEEN SUPPLIED BY THE TAX ASSESSORS OFFICE. THIS SALE IS DEEMED A USABLE SALE BY THE ASSESSOR IN THE TAX APPEAL PROCESS. THIS IS TRANSLATED TYPICALLY AS A VIABLE SALE. HOWEVER, THIS PROPERTY HAS AN EXTREMELY LARGE LAND SIZE AND HAS BEEN DISCOUNTED BY THE APPRAISER IN IT'S ULTIMATE VIABILITY. SAID SALE HAS BEEN SUPPLIED AS IT BRACKETS THE SUBJECT'S VALUE AND BEDROOM COUNT.

### COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.
Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)    THE LAND VALUE IS AN ESTIMATE BASED UPON A REVIEW OF RELEVANT/VERIFIABLE LAND SALES.

ESTIMATED ☒ REPRODUCTION OR ☐ REPLACEMENT COST NEW
Source of cost data  Marshall & Swift + local and customary costs
Quality rating from cost service  V-GOD    Effective date of cost data  12/07 M & Sw
Comments on Cost Approach (gross living area calculations, depreciation, etc.)
THE COST APPROACH IS A REPRODUCTION COST AND SHOULD NOT BE CONSIDERED A VIABLE INSURANCE VALUE INDICATOR. THIS APPROACH IS FOR GUIDANCE ONLY.

| OPINION OF SITE VALUE | | | =$ | 450,000 |
| DWELLING | 6,272 Sq.Ft @ $ | 200.00 | =$ | 1,254,400 |
| BASMT | 2,261 Sq.Ft @ $ | 75.00 | =$ | 169,575 |
| APPLIANCES, FIREPLACES | | | =$ | 35,000 |
| Garage/Carport | 864 Sq.Ft @ $ | 30.00 | =$ | 25,920 |
| Total Estimate of Cost-New | | | =$ | 1,484,895 |
| Less | Physical | Functional | External | |
| Depreciation | 24,798 | | | =$ 24,798 |
| Depreciated Cost of Improvements | | | =$ | 1,460,097 |
| "As-is" Value of Site Improvements | | | =$ | 50,000 |

Estimated Remaining Economic Life (HUD and VA only)    59 Years    INDICATED VALUE BY COST APPROACH    =$    1,960,097

### INCOME APPROACH TO VALUE (not required by Fannie Mae)
Estimated Monthly Market Rent $ _____ X Gross Rent Multiplier _____ = $ _____    Indicated Value by Income Approach
Summary of Income Approach (including support for market rent and GRM)

### PROJECT INFORMATION FOR PUDs (if applicable)
Is the developer/builder in control of the Homeowners' Association (HOA)? ☐ Yes ☐ No    Unit type(s) ☐ Detached ☐ Attached
Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.
Legal Name of Project
Total number of phases _____ Total number of units _____    Total number of units sold _____
Total number of units rented _____ Total number of units for sale _____    Data source(s) _____
Was the project created by the conversion of existing building(s) into a PUD? ☐ Yes ☐ No    If Yes, date of conversion.
Does the project contain any multi-dwelling units? ☐ Yes ☐ No    Data Source
Are the units, common elements, and recreation facilities complete? ☐ Yes ☐ No    If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association? ☐ Yes ☐ No    If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

File No. 7CB214| Page #5 of 18

## Uniform Residential Appraisal Report

LOAN #1470061264
File # 7CB214

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

File No. 7CB214 | Page #6 of 18

## Uniform Residential Appraisal Report

LOAN #147061264
File # 7CB214

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

File No. 7CB214 | Page #7 of 18

## Uniform Residential Appraisal Report

LOAN #1470061264
File # 7CB214

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

SUPERVISORY APPRAISER'S CERTIFICATION:  The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature _Robert J Jones, IFA_ | Signature _____ |
| Name  Robert J Jones, Jr IFA | Name _____ |
| Company Name   FIRST JERSEY APPRAISAL GROUP | Company Name _____ |
| Company Address   413 CRYSTAL LAKE AVENUE, SUITE 202, | Company Address _____ |
| HADDONFIELD, NJ 08033 | |
| Telephone Number   (856)931-7003 | Telephone Number _____ |
| Email Address   njappraiser1@comcast.net | Email Address _____ |
| Date of Signature and Report   December 31,2007 | Date of Signature _____ |
| Effective Date of Appraisal   December 24,2007 | State Certification # _____ |
| State Certification #   42RC001173 | or State License # _____ |
| or State License # _____ | State _____ |
| or Other (describe) _____ State # _____ | Expiration Date of Certification or License _____ |
| State  NJ | |
| Expiration Date of Certification or License   12/31/2007 | SUBJECT PROPERTY |
| | ☐ Did not inspect subject property |
| ADDRESS OF PROPERTY APPRAISED | ☐ Did inspect exterior of subject property from street |
| 817 MATLACK DRIVE | Date of Inspection _____ |
| MOORESTOWN, NJ 08057 | ☐ Did inspect interior and exterior of subject property |
| APPRAISED VALUE OF SUBJECT PROPERTY $   1,950,000 | Date of Inspection _____ |
| LENDER/CLIENT | |
| Name _____ | COMPARABLE SALES |
| Company Name   COMMERCE BANK, N.A. | |
| Company Address   6000 ATRIUM WAY, MT LAUREL, NJ | ☐ Did not inspect exterior of comparable sales from street |
| | ☐ Did inspect exterior of comparable sales from street |
| Email Address _____ | Date of Inspection _____ |

## Supplemental Addendum

File No. 7CB214

| Borrower | JACOBS | | | | |
|---|---|---|---|---|---|
| Property Address | 817 MATLACK DRIVE | | | | |
| City | MOORESTOWN | County BURLINGTON | | State NJ | Zip Code 08057 |
| Client | COMMERCE BANK, N.A. | | | | |

BUSINESS AND COMMERCIAL USES ARE LOCATED WITHIN THE SUBJECT'S AREA. THESE USES ARE TYPICAL OF SIMILAR NEIGHBORHOODS AND HAVE NO ADVERSE AFFECT ON THE MARKET VALUE OF FUTURE MARKETABILITY OF THE SUBJECT PROPERTY.

THE VALUE ESTIMATED IN THIS REPORT IS BASED ON THE ASSUMPTION THAT THE PROPERTY IS NOT NEGATIVELY AFFECTED BY THE EXISTENCE OF HAZARDOUS SUBSTANCES OR DETRIMENTAL ENVIRONMENTAL CONDITIONS. THE APPRAISER'S ROUTINE INSPECTION OF AND INQUIRIES ABOUT THE SUBJECT DID NOT DEVELOP ANY INFORMATION THAT INDICATED ANY APPARENT SIGNIFICANT HAZARDOUS SUBSTANCES OR DETRIMENTAL ENVIRONMENTAL CONDITIONS WHICH WOULD AFFECT THE PROPERTY NEGATIVELY. IT IS POSSIBLE THAT TESTS AND INSPECTIONS MADE BY A QUALIFIED HAZARDOUS SUBSTANCE AND ENVIRONMENTAL EXPERT WOULD REVEAL SUCH CONDITIONS. THE APPRAISER ASSUMES NO RESPONSIBILITY FOR THE PRESENT OF RADON GAS, OR ANY OTHER HAZARDOUS SUBSTANCE OR ENVIRONMENTAL CONDITION THAT MAY EXIST.

THIS REPORT PRESUMES THAT RADON IS NOT PRESENT IN THE SUBJECT PROPERTY ABOVE 0.02 WORKING LEVELS (4 PICOCURIES/LITER), AND THEREFORE, NO CONSIDERATION HAS BEEN GIVEN THE POTENTIAL ADVERSE AFFECT ON THE VALUE OF THE SUBJECT PROPERTY, IF ANY, THAT RADON MIGHT CAUSE.

ALL MECHANICAL SYSTEMS INCLUDING THE HEATING, ELECTRICAL, AND PLUMBING SYSTEMS APPEAR, UPON A CURSORY VISUAL INSPECTION, (UNLESS THIS IS AN EXTERIOR ONLY PHYSICAL VIEWING) TO BE WORKING ORDER, UNLESS OTHER WISE NOTED IN THE ATTACHED APPRAISAL OR VC SHEET. NO WARRANTIES ARE EXPRESSED OR IMPLIED BY THIS STATEMENT.

THERE ARE NO SPECIAL CONDITIONS OR OTHER REQUIREMENTS OTHER THEN THOSE MENTIONED IN THIS APPRAISAL THAT WOULD AFFECT MARKET VALUE OR FUTURE MARKETABILITY IN THIS REPORT.

PERSONAL PROPERTY, ie FURNITURE, WINDOW TREATMENTS, BUILT-INS ETC, WHICH HAVE BEEN INCLUDED IN THE SALES PRICE HAVE BEEN GIVEN NON VALUE IN THIS REPORT AS THEY ARE NON-REALTY ITEMS.

I CERTIFY TO THE BEST OF MY KNOWLEDGE AND BELIEF:

-THE STATEMENTS OF FACT IN THIS REPORT ARE TRUE AND CORRECT

-THE REPORTED ANALYSES, OPINIONS, AND CONCLUSIONS ARE LIMITED ONLY BY THE REPORTED ASSUMPTIONS AND LIMITING CONDITIONS, AND ARE MY PERSONAL, UNBIASED, PROFESSIONAL ANALYSIS, AND OPINION AND CONCLUSIONS

-I HAVE NO PRESENT OR PROSPECTIVE INTEREST IN THE PROPERTY THAT IS THE SUBJECT OF THIS REPORT, AND I HAVE NO PERSONAL INTEREST OR BIAS WITH RESPECT TO THE PARTIES INVOLVED.

-MY COMPENSATION IS NOT CONTINGENT ON AN ACTION OR EVENT RESULTING FROM THE ANALYSIS, OPINIONS, OR CONCLUSIONS IN, OR THE USE OF THIS REPORT.

-MY ANALYSIS, OPINIONS, AND CONCLUSIONS WERE DEVELOPED, AND THIS REPORT HAS BEEN PREPARED IN CONFORMITY WITH THE UNIFORM STANDARDS OF PROFESSIONAL PRACTICE (USPAP)

-THE "APPRAISER" HAS MADE A PERSONAL INSPECTION OF THE PROPERTY THAT IS THE SUBJECT OF THIS REPORT. IF THIS IS AN EXTERIOR ONLY VIEWING, A CURBSIDE VIEWING ONLY HAS TAKEN PLACE.

-UNLESS NOTED OTHERWISE, NO ONE PROVIDED SIGNIFICANT PROFESSIONAL ASSISTANCE TO THE PERSON SIGNING THIS REPORT.

-I/WE HAVE MADE AN INDEPENDENT VALUE JUDGEMENT ON THE SUBJECT PROPERTY.

-THIS APPRAISAL WAS NOT BASED ON A REQUESTED MINIMUM VALUATION, A SPECIFIC VALUATION, OR THE APPROVAL OF A LOAN.

HIGHEST AND BEST USE

THE REASONABLE AND PROBABLE USE THAT SUPPORTS THE HIGHEST PRESENT VALUE, AS DEFINED, AS OF THE EFFECTIVE DATE OF THE APPRAISAL. ALTERNATIVELY, THAT USE, FROM AMONG REASONABLE, PROBABLE, AND LEGAL ALTERNATIVE USAGES, FOUND TO BE PHYSICALLY POSSIBLE, APPROPRIATELY SUPPORTED, FINANCIALLY FEASIBLE, AND WHICH RESULT IN THE HIGHEST LAND VALUE. (real estate technology, society of real estate appraisers, compiled by Byrl N. Boyce)

File No. 7CB214  Page #9 of 18

## Supplemental Addendum

File No. 7CB214

| Borrower | JACOBS | | | |
|---|---|---|---|---|
| Property Address | 817 MATLACK DRIVE | | | |
| City | MOORESTOWN | County BURLINGTON | State NJ | Zip Code 08057 |
| Client | COMMERCE BANK, N.A. | | | |

SCOPE OF THIS APPRAISAL

THE INTENT OF THE APPRAISAL SERVICES RENDERED IN THIS ASSIGNMENT ENCOMPASSES ALL OF THOSE ACTIVITIES CONSIDERED NECESSARY TO PERMIT THE APPRAISER TO FULFILL HIS ETHICAL RESPONSIBILITY IN ARRIVING AT AND REPORTING OBJECTIVE, DEFENSIBLE CONCLUSION OF VALUE FOR THE SUBJECT PROPERTY AS OF THE DATE OF VALUATION. THESE ACTIVITIES INCLUDE, BUT ARE NOT LIMITED TOO ;

-THE COLLECTION OF DATA REGARDING THE PHYSICAL PROPERTY, IT'S GENERAL LOCATION, NEIGHBORHOOD TRENDS, AND INFLUENCES, THE OBSERVED RELATIVE CONDITION AND EFFECTIVE AGE OF IMPROVEMENTS, THE SUBJECT'S AMENITIES AND SPECIAL FEATURES, AVAILABLE UTILITIES, ZONING, AND RELATED CONTROLS, AND THE PROPERTY ASSESSMENT AND ANNUAL REAL ESTATE TAXES.

-A CONSIDERATION AND ANALYSIS OF THOSE FACTORS IN ORDER TO ESTABLISH A BASIS FOR ESTIMATING THE SUBJECT PROPERTY'S HIGHEST AND BEST USE AS OF THE VALUATION DATE.

-A CONSIDERATION OF THE (3) THREE TRADITIONAL APPROACHES TO VALUE, THE SALES COMPARISON APPROACH, THE COST APPROACH, AND THE INCOME APPROACH, IN AN EFFORT TO DETERMINE WHICH IF THESE IS (OR ARE) THE MOST APPROPRIATE, APPLICABLE, AND RELIABLY SUITED TO THE IDENTIFIED APPRAISAL PROBLEM.

-A THOROUGH EXAMINATION OF THE SUBJECT'S MARKET AREA FOR THE RELEVANT MARKET DATA FOR CONSIDERATION IN THE INDIVIDUAL APPROACHES TO VALUE.

-COMMUNICATION OF A WRITTEN AND DEFENSIBLE CONCLUSION OF MARKET VALUE IN A CLEAR AND CONCISE MANOR.

COMPETENCY OF THE APPRAISER

-THE APPRAISER HAS THE APPROPRIATE KNOWLEDGE AND EXPERIENCE TO COMPETENTLY COMPLETE THIS REPORT.

INCOME APPROACH

THE INCOME APPROACH HAS BEEN ANALYZED AND FOUND INAPPLICABLE BECAUSE, IN THIS MARKET VERY FEW SINGLE FAMILY HOMES ARE RENTED AND THERE IS INSUFFICIENT DATA AVAILABLE TO DEVELOP A GROSS RENT MULTIPLIER. THEREFORE, I HAVE RELIED UPON THE MARKET DATA APPROACH IN MY ESTIMATE OF VALUE AND I HAVE USED THE COST APPROACH (WHEN APPLICABLE) AS SUPPORTING EVIDENCE.

SQUARE FOOTAGE OF THE COMPARABLES

THE SQUARE FOOTAGE (GLA) OF THE SUBJECT (WHEN APPLICABLE) AND COMPARABLES ARE ESTIMATED BASED UPON A DRIVE-BY FRONTAL EXTERIOR VIEWING. THE INDICATED SQUARE FOOTAGE IS DERIVED VIA THE AFOREMENTIONED, IN CONJUNCTION WITH REALTOR INTERVIEW AND/OR, MLS REVIEW AND/OR, THE TAX ASSESSORS PROPERTY RECORD CAND AND/OR, APPRAISERS FILES.

THE ADJUSTMENTS MADE IN THE GRID ARE MARKET DRIVEN AND DO NOT REFLECT REPLACEMENT COSTS. THE ADJUSTMENTS MADE ARE INDICATIVE OF THE MARKET REACTION THAT WOULD RESULT FROM A TYPICAL, PRUDENT, AND REASONABLE PURCHASER.

THE NATIONAL ASSOCIATION OF INDEPENDENT FEE APPRAISERS (NAIFA) HAS A MANDATORY PROGRAM OF CONTINUING EDUCATION FOR DESIGNATED MEMBERS. THIS PROGRAM HAS BEEN MET FOR CYCLE ENDING DECEMBER 31, 2007. NEXT CYCLE EXPIRES DECEMBER 31, 2009.

THE FUNCTION OF THIS APPRAISAL REPORT, OR THE INTENDED USE IS TO SUPPORT UNDERWRITING DECISION MAKING FOR A CONVENTIONAL OR GOVERNMENT INSURED LOAN.

A DILIGENT INSPECTION WAS MADE OF ACCESSIBLE, VISIBLE, READILY OBSERVABLE AREAS TO UNDERCOVER OBVIOUS POSSIBLE SOUNDNESS, SAFETY, AND/OR MARKETABILITY ISSUES OF THE SUBJECT PROPERTY. (UNLESS THIS IS AN EXTERIOR ONLY PHYSICAL VIEWING)

THIS REPORT IS IN NO WAY INTENDED TO BE A SUBSTITUTE FOR A HOME INSPECTION MADE BY A QUALIFIED INSPECTOR. THIS APPRAISER HOLDS NO EXPERTISE IN OR HOLD HIMSELF OUT TO BE AN EXPERT IN THE FIELD OF HOME INSPECTION. A PROFESSIONAL HOME INSPECTION IS STRONGLY SUGGESTED TO UNCOVER ANY DEFECTS THAT MAY IMPACT THE STRUCTURAL SOUNDNESS, SAFETY, AND/OR MARKETABILITY OF THE SUBJECT.

PLEASE BE ADVISED THAT THE APPRAISER IS NOT A HOME INSPECTOR, AN ENGINEER, AN ELECTRICIAN, A CARPENTER, OR A PLUMBER. THE APPRAISER HAS NO FORMAL TRAINING IN ANY OF THE AFOREMENTIONED DISCIPLINES. THE PURCHASER/BORROWER HAS HAD THE OPPORTUNITY TO PROCURE THE SERVICES OF A PROFESSIONAL HOME INSPECTOR, A ROOFER, AN ELECTRICIAN, A PLUMBER, AND/OR CARPENTER, TO INSURE THAT THE SUBJECT MEETS THE BORROWER'S SATISFACTION. APPRAISER IS NOT LIABLE FOR ANY UNCOVERED DEFICIENCIES THAT MAY EXIST THAT ARE NOT READILY OBSERVABLE.

File No. 7CB214 Page #10 of 18

## Supplemental Addendum

| | | | | File No. 7CB214 |
|---|---|---|---|---|
| Borrower | JACOBS | | | |
| Property Address | 817 MATLACK DRIVE | | | |
| City | MOORESTOWN | County BURLINGTON | State NJ | Zip Code 08057 |
| Client | COMMERCE BANK, N.A. | | | |

THE INTENDED USER OF THIS REPORT IS CONSIDERED THE NAMED LENDER/ CLIENT. IF THIS REPORT IS BEING PREPARED FOR A HUD INSURED TRANSACTION, THEN HUD/FHA IS ALSO AN INTENDED USER.

THE APPRAISER CERTIFIES THAT ALL COMPARABLES UTILIZED HAVE RECEIVED AN EXTERIOR CURBSIDE VISUAL INSPECTION. THE USE OF CATALOG PHOTOS MAY HAVE BEEN NECESSARY. SAID PHOTOS ARE CONSIDERED TO BE MORE INDICATIVE OF THE SUBJECT'S EXTERIOR CONDITION AT THE TIME OF IT'S SALE.

*PLEASE BE ADVISED THAT THIS FORM REPORT CONTAINS THE TERM "INSPECTION". WHERE EVER THIS TERM IS USED IT IS TO BE REPLACED WITH THE TERM "VIEWED" OR ANY EXTENSION THEREOF.

**PLEASE BE ADVISED THAT THIS FORM REPORT CONTAINS THE TERM "ESTIMATE OF VALUE". WHERE EVER THIS TERM EXISTS IT IS TO BE REPLACED WITH THE TERM "OPINION OF VALUE".

ZONING
THE APPRAISER CAN NOT MAKE A LEGAL DETERMINATION AS TO THE SUBJECT'S ZONING. IF WHAT HAS BEEN PRESUMED AS LEGAL IS FOUND TO BE OTHERWISE THEN THE CERTIFICATION OF VALUE IS REVOKED. IF SUCH A SCENARIO PRESENTS ITSELF, THE APPRAISER IS TO BE GRANTED ADDITIONAL TIME, AT AN ADDITIONAL FEE, TO ANALYZE THE NEW DISCOVERY AND IT'S AFFECT, IF ANY, ON THE SUBJECT'S VALUE.

EXPOSURE TIME
BASED UPON THE SUBJECT'S CURRENT CONDITION, THE CURRENT MARKET CONDITIONS, AND PROVIDED THE SUBJECT WAS THEORETICALLY LISTED WITHIN 5% OF THIS OPINION OF VALUE IN CONJUNCTION WITH AN EFFECTIVE MARKETING PLAN, THE ESTIMATED EXPOSURE TIME IS 1-60 DAYS.
ESTIMATED EXPOSURE TIME IS REQUIRED TO BE ESTIMATED BY USPAP.

THE INFORMATION IDENTIFIED UNDER THE CURRENTLY LISTED AND SOLD PROPERTIES SECTION IS A COMPILATION OF PROPERTIES THAT HAVE BEEN SCREENED BASED ON GENERIC CHARACTERISTICS IN CONJUNCTION WITH SALIENT FEATURES SHARED BY THE SUBJECT.

RANGE OF PRICE FOR HOUSING IS BASED UPON A 12 MONTH SEARCH OF THE MLS. THE RANGE INDICATED IS NOT THE ALL TIME HIGH, LOW, OR PREDOMINANT VALUES, ONLY THAT WHICH ARE RELEVANT TO THE PAST YEAR AS REPORTED IN THE TREND MULTIPLE LISTING SERVICE.

NOTICE TO BORROWER
THE APPRAISER CANNOT DISCUSS THIS REPORT WITH ANY PARTY NOT AN INTENDED USER (PRIVACY LAWS) AND THE APPRAISER IS UNDER NO OBLIGATION TO "UPDATE", "RECERTIFY", OR OTHERWISE MODIFY THIS REPORT IN VIOLATION OF ADVISORY OPINIONS ISSUED BY THE APPRAISAL FOUNDATIONS USPAP, EXCEPT TO MAKE CORRECTIONS TO ACTUAL ERRORS.

THE APPRAISER CAN DEVELOP A NEW APPRAISAL IN A NEW RELATIONSHIP OF THE SAME PIECE OF PROPERTY DURING THE SAME TIME SO LONG AS ORIGINAL CLIENT-APPRAISER CONFIDENTIALITY PROVISIONS ARE NOT VIOLATED.

Market Conditions
ALL TYPES OF FINANCING ARE AVAILABLE FOR MORTGAGES IN THIS AREA. BUYDOWNS AND SELLER ASSISTANCE ARE COMMON WITH NO AFFECT ON THE MARKET. A REVIEW OF CURRENT LISTINGS AND UNDER CONTRACT SALES INDICATE THAT PROPERTY VALUES ARE STABLE. ESTIMATED MARKETING TIMES HAVE HISTORICALLY RANGED FROM 3-6 MONTHS.

## Subject Photo Page

| Borrower | JACOBS | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 817 MATLACK DRIVE | | | | | |
| City | MOORESTOWN | County | BURLINGTON | State | NJ | Zip Code 08057 |
| Client | COMMERCE BANK, N.A. | | | | | |



### Subject Front

817 MATLACK DRIVE

| | |
|---|---|
| Sales Price | 2,040,000 |
| Gross Living Area | 6,272 |
| Total Rooms | 12 |
| Total Bedrooms | 7 |
| Total Bathrooms | 7+2 |
| Location | AVERAGE |
| View | AVERAGE |
| Site | 25,740 Sq.Ft. |
| Quality | GOOD |
| Age | 1 |



### Subject Rear



### Subject Street

### Photograph Addendum

| Borrower | JACOBS | | | | |
|---|---|---|---|---|---|
| Property Address | 817 MATLACK DRIVE | | | | |
| City | MOORESTOWN | County BURLINGTON | | State NJ | Zip Code 08057 |
| Client | COMMERCE BANK, N.A. | | | | |







## Photograph Addendum

File No. 7CB214 Page # 14 of 18

| Borrower | JACOBS | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 817 MATLACK DRIVE | | | | | |
| City | MOORESTOWN | County | BURLINGTON | State | NJ | Zip Code 08057 |
| Client | COMMERCE BANK, N.A. | | | | | |





Comments:

Comments:





Comments:

Comments:

## Comparable Photo Page

| Borrower | JACOBS | | | | |
|---|---|---|---|---|---|
| Property Address | 817 MATLACK DRIVE | | | | |
| City | MOORESTOWN | County | BURLINGTON | State NJ | Zip Code 08057 |
| Client | COMMERCE BANK, N.A. | | | | |



### Comparable 1
804 MATLACK DRIVE
| | |
|---|---|
| Prox. to Subject | 0.03 miles E |
| Sales Price | 1,850,000 |
| Gross Living Area | 5,643 |
| Total Rooms | 10 |
| Total Bedrooms | 6 |
| Total Bathrooms | 5+2 |
| Location | AVERAGE |
| View | AVERAGE |
| Site | 30,000+- Sq.Ft. |
| Quality | GOOD |
| Age | NEW |



### Comparable 2
807 RIVERTON ROAD
| | |
|---|---|
| Prox. to Subject | 0.18 miles NE |
| Sales Price | 1,900,000 |
| Gross Living Area | 5,534 |
| Total Rooms | 10 |
| Total Bedrooms | 5 |
| Total Bathrooms | 5+1 |
| Location | AVERAGE |
| View | AVERAGE |
| Site | 2.1+-ACRES |
| Quality | GOOD |
| Age | 10+- |



### Comparable 3
321 E OAK AVENUE
| | |
|---|---|
| Prox. to Subject | 1.36 miles SE |
| Sales Price | 2,900,000 |
| Gross Living Area | 5,446 |
| Total Rooms | 13 |
| Total Bedrooms | 8 |
| Total Bathrooms | 4+1 |
| Location | AVERAGE |
| View | AVERAGE |
| Site | 6+-ACRES |
| Quality | AVERAGE |
| Age | 91+- |

### Building Sketch

| Borrower | JACOBS | | | | |
|---|---|---|---|---|---|
| Property Address | 817 MATLACK DRIVE | | | | |
| City | MOORESTOWN | County | BURLINGTON | State | NJ | Zip Code | 08057 |
| Client | COMMERCE BANK, N.A. | | | | |



Comments:

**AREA CALCULATIONS SUMMARY**

| Code | Description | Net Size | Net Totals |
|---|---|---|---|
| GLA1 | First Floor | 2261.0 | 2261.0 |
| GLA2 | Second Floor | 3040.0 | |
| | OPEN | -196.0 | 2844.0 |
| GLA3 | Third Floor | 1167.0 | 1167.0 |
| GAR | Garage | 864.0 | 864.0 |

| Net LIVABLE Area | (Rounded) | 6272 |
|---|---|---|

**LIVING AREA BREAKDOWN**

| Breakdown | | | Subtotals |
|---|---|---|---|
| First Floor | | | |
| 17.0 | x | 31.0 | 527.0 |
| 34.0 | x | 51.0 | 1734.0 |
| Second Floor | | | |
| 24.0 | x | 36.0 | 864.0 |
| 17.0 | x | 26.0 | 442.0 |
| 34.0 | x | 51.0 | 1734.0 |
| OPEN | | | |
| 14.0 | x | 14.0 | -196.0 |
| Third Floor | | | |
| 3.0 | x | 5.0 | 15.0 |
| 3.0 | x | 5.0 | 15.0 |
| 3.0 | x | 5.0 | 15.0 |
| 22.0 | x | 51.0 | 1122.0 |

| 10 Items | (Rounded) | 6272 |
|---|---|---|

**Location Map**

| Borrower | JACOBS | | | | |
|---|---|---|---|---|---|
| Property Address | 817 MATLACK DRIVE | | | | |
| City | MOORESTOWN | County BURLINGTON | | State N.J | Zip Code 08057 |
| Client | COMMERCE BANK, N.A. | | | | |



# EXHIBIT "E"

# Sherman, Silverstein, Kohl, Rose & Podolsky, P.A.

A Professional Corporation
Fairway Corporate Center
4300 Haddonfield Road - Suite 311
Pennsauken, New Jersey 08109
Telephone: (856) 662-0700 - Facsimile: (856) 488-4744
www.sskrplaw.com

Edward J. Hovatter, Esquire
Direct Dial: (856) 661-2091
e-mail: ehovatter@sskrplaw.com

January 7, 2008

**Via Fax (856-235-6898) and Regular Mail**

Rudi Grueneberg, Esquire
704 East Main Street
Moorestown, NJ  08057

Re:    Jacobs From Reed
       Purchase and Sale of 817 Matlack Street, Moorestown, NJ  08057
       Our File No.:  10657.101

Dear Rudi:

To follow-up from our telephone conference of January 4, 2008, with regard to the above referenced property, I am enclosing herewith a Statement of Credit Denial, Termination or Change dated January 4, 2008 issued by Commerce Bank, N.A., together with the appraisal of real property prepared by Robert J. Jones, Jr.  As you can see, the appraised value of the Property is $90,000 less than the contract sale price.  Based on this information, and pursuant to Paragraph 9 of the Contract for Sale, the Buyer is hereby terminating same effective immediately.

Please provide me with your client's written authorization to have the Deposit current held by B.T. Edgar & Son released to my clients.

Should you have any comments or questions, or wish to discuss this matter in further detail, please do not hesitate to contact me.

Very truly yours,

SHERMAN, SILVERSTEIN, KOHL, ROSE & PODOLSKY, P.A.
A Professional Corporation

Edward J. Hovatter

EJH/mat
cc:    Scott Jacobs
       Holly Donahue
       Melissa Young
       Louise Marsh Carter

F:\wp60\EJH\LETTERS\Grueneberg, Rudi 010708.doc-1/7/08

# EXHIBIT L

# McCRINK, KEHLER & McCRINK

ATTORNEYS AT LAW
McCRINK, KEHLER & McCRINK LAW BUILDING
475 ROUTE 73 NORTH
WEST BERLIN, NEW JERSEY 08091-2003
www.mkmnjlaw.com

MATTHEW R. McCRINK
DANIEL R. KEHLER†
KRISDEN M. McCRINK†
VICKI J. MORESI†
—————
RICHARD M. KITRICK
ROBERT J. KELTOS†
—————
JOEL E. BERMAN†*
Counsel to the Firm
jberman@mkmnjlaw.com

TELEPHONE
(856) 768-0033
(215) 592-9111
FACSIMILE
(856) 768-7243
E-MAIL
lawfirm@mkmnjlaw.com
† Admitted in NJ & PA
* Admitted in Washington, DC

July 3, 2008

_Via New Jersey Lawyers Service_
Superior Court of New Jersey
Burlington County
Law Division
49 Rancocas Road
Mount Holly, NJ 08060

  Re: **Scott Jacobs and Traci Jacobs, Husband and Wife, and Miriam Jacobs v. Frank J. Reed, III and Christian Reed, Husband and Wife, and B.T. Edgar & Son**

    **Frank J. Reed, III and Christina Reed, Husband and Wife v. First Jersey Appraisal Group, Robert J. Jones, Jr., Commerce Bank, N.A., John Does One through Ten, and John Doe Corporations One through Ten**

    **Docket No.: <u>BUR-L-1418-08</u>**

Dear Sir/Madam:

  Enclosed please find:

(X) **Answer, Counterclaim and Third-Party Complaint (Original and 2 Copies)**
(X) **Check for $200.00**
(X) **Self addressed, stamped envelope**

  Would you please:

(X) **File**
(X) **Return Filed Copy in SASE**

  Thank you.

      Very truly yours,

      McCRINK, KEHLER & McCRINK

      _[signature]_

      MATTHEW R. McCRINK

MRM/rjk

cc:    Jeffrey P. Resnick, Esquire – *Via New Jersey Lawyers Service*
       First Jersey Appraisal Group - *Via New Jersey Lawyers Service*
       Robert J. Jones, Jr. – *Via New Jersey Lawyers Service*
       Commerce Bank, N.A. – *Via New Jersey Lawyers Service*

**McCRINK, KEHLER & McCRINK**
475 ROUTE 73 NORTH
WEST BERLIN, NEW JERSEY
TELEPHONE 856-768-0033
FACSIMILE 856-768-7243
ATTORNEYS FOR DEFENDANTS/THIRD-PARTY PLAINTIFFS FRANK J. REED, III
and CHRISTINA A. REED

| | |
|---|---|
| SCOTT JACOBS and TRACI JACOBS, HUSBAND AND WIFE, and MIRIAM JACOBS,<br><br>Plaintiffs,<br>vs.<br><br>FRANK J. REED, III and CHRISTINA A. REED, HUSBAND AND WIFE, and B.T. EDGAR & SON;<br><br>Defendants.<br><br><br>FRANK J. REED, III and CHRISTINA A. REED, HUSBAND AND WIFE,<br><br>Third-Party Plaintiffs,<br><br>vs.<br><br>FIRST JERSEY APPRAISAL GROUP; ROBERT J. JONES, JR.; COMMERCE BANK, N.A.; JOHN DOES ONE (1) THROUGH TEN (10); and JOHN DOE CORPORATIONS ONE (1) THROUGH (10),<br><br>Third-Party Defendants. | SUPERIOR COURT OF NEW JERSEY BURLINGTON COUNTY LAW DIVISION<br><br>DOCKET NO. BUR-L-1418-08<br><br>CIVIL ACTION<br><br>**ANSWER, COUNTERCLAIM AND THIRD-PARTY COMPLAINT** |

The Defendants, Frank J. Reed, III, and Christina A. Reed, by way of Answer to

Plaintiffs' Complaint, hereby say:

## COUNT ONE

1.    Admitted.

2.    Admitted.

3.    Admitted.

4.    The answering Defendants are without sufficient knowledge to either admit or deny this allegation, and therefore leave Plaintiffs to their proofs.

5.    Admitted.

6.    The answering Defendants are without sufficient knowledge to either admit or deny this allegation, and therefore leave Plaintiffs to their proofs.

7.    Admitted.

8.    Admitted.

9.    Admitted.

10.    Admitted.

11.    Admitted.

12.    The answering Defendants are without sufficient knowledge to either admit or deny this allegation, and therefore leave Plaintiffs to their proofs.

13.    The answering Defendants are without sufficient knowledge to either admit or deny this allegation, and therefore leave Plaintiffs to their proofs.

14.    The answering Defendants are without sufficient knowledge to either admit or deny this allegation, and therefore leave Plaintiffs to their proofs.

15.    The answering Defendants are without sufficient knowledge to either admit or deny this allegation, and therefore leave Plaintiffs to their proofs.

16.    The answering Defendants are without sufficient knowledge to either admit or deny this allegation, and therefore leave Plaintiffs to their proofs.

17. The answering Defendants are without sufficient knowledge to either admit or deny this allegation, and therefore leave Plaintiffs to their proofs.

18. Denied, in part, in that there were additional reasons as well.

19. Denied.

20. Denied.

21. The answering Defendants are without sufficient knowledge to either admit or deny this allegation, and therefore leave Plaintiffs to their proofs.

22. Denied.

WHEREFORE, Defendants demand judgment dismissing Plaintiffs' Complaint with prejudice, together with cost of suit and attorneys fees.

## SEPARATE AND AFFIRMATIVE DEFENSES

1. Plaintiffs fail to state a claim upon which relief can be granted.

2. Plaintiffs do not have standing to file suit in this matter.

3. Plaintiffs' claim is barred by the Statute of Limitations.

4. Plaintiffs' claim is barred by the Statute of Frauds.

5. Plaintiffs' claim is barred by the Doctrine of Laches.

6. Plaintiffs' claim is barred by the Doctrine of Estoppel.

7. Plaintiffs' claim is barred by the Doctrine of Unclean Hands.

8. Plaintiffs' claim is barred by the Doctrine of Accord and Satisfaction.

9. Answering Defendants owe no duty to Plaintiffs.

10. Plaintiffs committed fraud in the inducement.

11. Plaintiffs assumed the risk associated with the loss they allegedly incurred.

12. Plaintiffs are contractually obligated to submit this claim to arbitration and

are barred from pursuing a claim in court.

13.    Answering Defendants are entitled to indemnification and/ or contribution from other parties who caused or contributed to the Plaintiffs' claim.

14.    Answering Defendants are entitled to a set off against the Plaintiffs' claim.

15.    Plaintiffs' claim is barred by lack of privity of contract with named Defendants.

16.    Plaintiffs are in breach of the contract with the Defendants.

17.    Plaintiffs' claim is barred by virtue of their failure to act in good faith.

18.    Plaintiffs are barred from recovery due to their own negligence and/or comparative negligence.

19.    Plaintiffs' damages, if any, were the direct result of the negligence of others, over whom these Defendants exercised no right of control.

20.    Service of process was improper and these answering Defendants reserve the right to move to strike Plaintiffs' Complaint, including at time of trial.

21.    Plaintiffs failed to join a necessary party.

22.    Plaintiffs' claim is barred by the entire controversy doctrine.

23.    Plaintiffs' claim is barred based upon mutual mistake.

24.    Any contract or agreement referred to by Plaintiff was made void by novation.

25.    The contract between the parties was not voluntarily entered into and the Defendant entered into the contract under duress.

26.    Plaintiffs' claim is barred based upon impossibility.

27.    Plaintiffs' claim is barred by the waiver doctrine.

## COUNTERCLAIM

1. On December 8, 2007, Plaintiffs, Scott and Traci Jacobs, entered into a contract to purchase the aforementioned property from the Counterclaimants.

2. The Contract provided, amongst other things:

   (a) ¶ 6 Plaintiffs were to pay $2,040,000 for the purchase of the property owned by Defendants;

   (b) ¶ 9 Plaintiffs were to apply for the loan in writing on lender's standard form within seven (7) days after the expiration of the Attorney Review period and use their best efforts to obtain it;

   (c) ¶ 9 The Plaintiffs were to obtain a written mortgage commitment and provide it to the Defendants by January 7, 2008;

   (d) ¶ 9 The deposit monies paid by the Plaintiffs were to be returned to the Plaintiffs unless failure to obtain the mortgage commitment was the result of the Plaintiffs' negligence or intentional conduct or failure to diligently pursue the mortgage application; and

   (e) ¶ 14 Settlement was to occur on or before February 7, 2008 at 4:00pm.

3. Commerce Bank, the Plaintiff's lender, hired First Jersey Appraisal Group to perform an appraisal of the Defendant's real property located at 817 Matlack Drive.

4. Appraiser Robert J. Jones, Jr., who was working in his capacity as an agent and employee of First Jersey Appraisal Group, performed and provided the Plaintiffs with an Appraisal of 817 Matlack Drive.

5.  The Plaintiffs then provided the Defendants with that appraisal, which the Defendants relied on as a true and accurate indication of the value of 817 Matlack Drive.

6.  The appraisal contained inaccurate information regarding the real property in question, including but not limited to an incorrect account of the number of bedrooms and above grade baths.

7.  As a result, the comparable properties used in the appraisal were also inaccurate.

8.  On or about January 7, 2008, the Defendants' attorney informed Plaintiffs of multiple errors in the appraisal, at which time the Defendants agreed to extend the mortgage commitment period through January 11, 2008, or longer if needed, in order to provide Commerce Bank with the necessary time to review the appraisal and resolve any and all errors, which Commerce Bank failed to do.

9.  Paragraph 9 of the Contract for Sale required the Plaintiffs to "use their best efforts to obtain" a mortgage commitment.

10. However, rather than have the appraisal reviewed and corrected in order to complete their application for a mortgage, the Plaintiffs acted in bad faith by knowingly dismissing the errors that the Defendants found in the appraisal, at which time the Plaintiffs backed out of the Contract for Sale.

11. The Defendants subsequently obtained a second appraisal through Commerce Bank that was true and accurate.  Commerce Bank used a different company for this second appraisal, Robert M. Sapio Real Estate Appraisal & Consulting, LLC, which appraisal indicated an appraised value of $2,040,000.00, a value equal to the purchase price indicated on the Contract for Sale.  (Attached hereto as Exhibit A.)

## COUNT ONE – BREACH OF CONTRACT

1. The Plaintiff Scott Jacobs breached the Contract for Sale by intentionally or negligently failing to deliver a mortgage commitment by January 7, 2008.

2. The Plaintiff Scott Jacobs further breached the Contract for Sale by failing to close by February 7, 2008.

3. As a result of the Plaintiff Scott Jacobs' breach, the Defendants suffered damages including but not limited to proceeds from the sale of the real property, carrying costs to continue the maintenance and support of the real property, and diminution of the value of the real property.

4. The Plaintiff Scott Jacobs' actions also constituted a breach of the covenant of good faith and fair dealing, resulting in damages to the Defendants.

**WHEREFORE**, Defendants demand damages as follows:

(a) All damages sustained and all costs incurred;

(b) Interests and costs of suit;

(c) Specific performance in the form of Plaintiffs purchasing the property for the contract price; and

(d) Such other and further relief as the Court may deem equitable and just.

## COUNT TWO – BREACH OF CONTRACT

1. The Defendants repeat the allegations of Count One of the Counterclaim as if set forth herein at length.

2. The Plaintiff Traci Jacobs breached the Contract for Sale by intentionally or negligently failing to deliver a mortgage commitment by January 7, 2008.

3. The Plaintiff Traci Jacobs further breached the Contract for Sale by failing to

close by February 7, 2008.

4.    As a result of the Plaintiff Traci Jacobs' breach, the Defendants suffered damages including but not limited to proceeds from the sale of the real property, carrying costs to continue the maintenance and support of the real property, and diminution of the value of the real property.

5.    The Plaintiff Traci Jacobs' actions also constituted a breach of the covenant of good faith and fair dealing, resulting in damages to the Defendants.

**WHEREFORE**, Defendants demand damages as follows:

(a) All damages sustained and all costs incurred;

(b) Interests and costs of suit;

(c) Specific performance in the form of Plaintiffs purchasing the property for the contract price; and

(d) Such other and further relief as the Court may deem equitable and just.

### COUNT THREE – BREACH OF CONTRACT

1.    The Defendants repeat the allegations of Counts One and Two of the Counterclaim as if set forth herein at length.

2.    The Plaintiff Miriam Jacobs breached the Contract for Sale by intentionally or negligently failing to deliver a mortgage commitment by January 7, 2008.

3.    The Plaintiff Traci Jacobs further breached the Contract for Sale by failing to close by February 7, 2008.

4.    As a result of the Plaintiff Miriam Jacobs' breach, the Defendants suffered damages including but not limited to proceeds from the sale of the real property, carrying costs to continue the maintenance and support of the real property, and diminution of the value of the real property.

8

5.   The Plaintiff Miriam Jacobs' actions also constituted a breach of the covenant of good faith and fair dealing, resulting in damages to the Defendants.

**WHEREFORE**, Defendants demand damages as follows:

(a) All damages sustained and all costs incurred;

(b) Interests and costs of suit;

(c) Specific performance in the form of Plaintiffs purchasing the property for the contract price; and

(d) Such other and further relief as the Court may deem equitable and just.

## COUNT FOUR-FRAUD, CIVIL CONSPIRACY, AIDING AND ABETTING FRAUD

1. The Defendants repeat the allegations of Counts One, Two and Three of the Counterclaim as if set forth herein at length.

2. The Plaintiff Scott Jacobs knowingly, willingly, and fraudulently deprived Defendants of the benefit of the sale of the real property through his acts and omissions including, but not limited to:

   a.   Dismissing the errors found in the appraisal;

   b.   Failing to have the initial appraisal reviewed and revised;

   c.   Ensuring that the contract for sale would be rendered unenforceable, thereby ensuring Defendants would not receive the benefit of the performance of the contract; and

   d.   Refusing to acknowledge the second, accurate appraisal.

3. The Plaintiff Scott Jacobs knowingly, willingly, and fraudulently engaged in a civil conspiracy with Plaintiff Traci Jacobs and Plaintiff Miriam Jacobs to

deprive Defendants of the benefit of the sale of the real property through their acts and omissions including, but not limited to:

a.  Dismissing the errors found in the appraisal;

b.  Failing to have the initial appraisal reviewed and revised;

c.  Ensuring that the contract for sale would be rendered unenforceable, thereby ensuring Defendants would not receive the benefit of the performance of the contract; and

d.  Refusing to acknowledge the second, accurate appraisal which would have resulted in an enforceable contract for sale.

4.  It was the intention of the Plaintiff Scott Jacobs and Plaintiff Traci Jacobs and Plaintiff Miriam Jacobs, from the time the Plaintiffs knew they could not perform their obligations under the contract, to defraud the Defendants out of their interest in the same.

5.  Defendants relied upon the false representations of Plaintiff Scott Jacobs and Plaintiff Traci Jacobs and Plaintiff Miriam Jacobs in allowing the Plaintiffs to be relieved of their obligations regarding sale of the property.

6.  As a result of Plaintiff Scott Jacobs' and Plaintiff Traci Jacobs' and Plaintiff Miriam Jacobs' dishonest and fraudulent conduct the Defendants have sustained, and continue to sustain damages.

7.  Third-Party Defendants, First Jersey Appraisal Group and Robert J. Jones, Jr. are persons and/or entities that had constructive or actual knowledge of Plaintiffs' interests in the contract of sale of the Property and conspired with the Defendants to defraud Plaintiffs out of the benefit of the contract for sale of the Property and/or to aid and abet their fraudulent activity.

10

8. Third-Party Defendants, JOHN DOES one (1) through ten (10) and JOHN DOE CORPORATIONS one (1) through ten (10) are unknown persons and/or entities that had constructive or actual knowledge of Defendants' interests in the contract of sale of the Property and conspired with the Plaintiffs to defraud Defendants out of the benefit of the contract for sale of the Property and/or to aid and abet their fraudulent activity.

**WHEREFORE**, Defendants demand damages as follows:

(a) Damages sustained and costs incurred;

(b) Punitive Damages;

(c) Reasonable Attorneys Fees and legal expenses;

(d) Interest and costs of suit; and

(e) Such other and further relief as the Court may deem equitable and just.

## COUNT FIVE-FRAUD, CIVIL CONSPIRACY, AIDING AND ABETTING FRAUD

1. The Defendants repeat the allegations of Counts One through Four of the Counterclaim as if set forth herein at length.

2. The Plaintiff Traci Jacobs knowingly, willingly, and fraudulently deprived Defendants of the benefit of the sale of the real property through his acts and omissions including, but not limited to:

a. Dismissing the errors found in the appraisal;

b. Failing to have the initial appraisal reviewed and revised;

c. Ensuring that the contract for sale would be rendered unenforceable, thereby ensuring Defendants would not receive the benefit of the performance of the contract; and

d. Refusing to acknowledge the second, accurate appraisal.

11

3. The Plaintiff Traci Jacobs knowingly, willingly, and fraudulently engaged in a civil conspiracy with Plaintiff Scott Jacobs and Plaintiff Miriam Jacobs to deprive Defendants of the benefit of the sale of the real property through their acts and omissions including, but not limited to:

   a. Dismissing the errors found in the appraisal;

   b. Failing to have the initial appraisal reviewed and revised;

   c. Ensuring that the contract for sale would be rendered unenforceable, thereby ensuring Defendants would not receive the benefit of the performance of the contract; and

   d. Refusing to acknowledge the second, accurate appraisal which would have resulted in an enforceable contract for sale.

4. It was the intention of the Plaintiff Traci Jacobs and Plaintiff Scott Jacobs and Plaintiff Miriam Jacobs, from the time the Plaintiffs knew they could not perform their obligations under the contract, to defraud the Defendants out of their interest in the same.

5. Defendants relied upon the false representations of Plaintiff Traci Jacobs and Plaintiff Scott Jacobs and Plaintiff Miriam Jacobs in allowing the Plaintiffs to be relieved of their obligations regarding sale of the property.

6. As a result of Plaintiff Traci Jacobs' and Plaintiff Scott Jacobs' and Plaintiff Miriam Jacobs' dishonest and fraudulent conduct the Defendants have sustained, and continue to sustain damages.

7. Third-Party Defendants, First Jersey Appraisal Group and Robert J. Jones, Jr. are persons and/or entities that had constructive or actual knowledge of Plaintiffs' interests in the contract of sale of the Property and conspired with the Defendants

to defraud Plaintiffs out of the benefit of the contract for sale of the Property and/or to aid and abet their fraudulent activity.

8. Third-Party Defendants, JOHN DOES one (1) through ten (10) and JOHN DOE CORPORATIONS one (1) through ten (10) are unknown persons and/or entities that had constructive or actual knowledge of Defendants' interests in the contract of sale of the Property and conspired with the Plaintiffs to defraud Defendants out of the benefit of the contract for sale of the Property and/or to aid and abet their fraudulent activity.

**WHEREFORE**, Defendants demand damages as follows:

(a) Damages sustained and costs incurred;

(b) Punitive Damages;

(c) Reasonable Attorneys Fees and legal expenses;

(d) Interest and costs of suit; and

(e) Such other and further relief as the Court may deem equitable and just.

## COUNT SIX-FRAUD, CIVIL CONSPIRACY, AIDING AND ABETTING FRAUD

1. The Defendants repeat the allegations of Counts One through Five of the Counterclaim as if set forth herein at length.

2. The Plaintiff Miriam Jacobs knowingly, willingly, and fraudulently deprived Defendants of the benefit of the sale of the real property through his acts and omissions including, but not limited to:

a. Dismissing the errors found in the appraisal;

b. Failing to have the initial appraisal reviewed and revised;

c. Ensuring that the contract for sale would be rendered unenforceable, thereby

ensuring Defendants would not receive the benefit of the performance of the contract; and

d.  Refusing to acknowledge the second, accurate appraisal.

3. The Plaintiff Miriam Jacobs knowingly, willingly, and fraudulently engaged in a civil conspiracy with Plaintiff Scott Jacobs and Plaintiff Traci Jacobs to deprive Defendants of the benefit of the sale of the real property through their acts and omissions including, but not limited to:

a.  Dismissing the errors found in the appraisal;

b.  Failing to have the initial appraisal reviewed and revised;

Ensuring that the contract for sale would be rendered unenforceable, thereby ensuring Defendants would not receive the benefit of the performance of the contract; and

c.  Refusing to acknowledge the second, accurate appraisal which would have resulted in an enforceable contract for sale.

4. It was the intention of the Plaintiff Miriam Jacobs and Plaintiff Scott Jacobs and Plaintiff Traci Jacobs, from the time the Plaintiffs knew they could not perform their obligations under the contract, to defraud the Defendants out of their interest in the same.

5. Defendants relied upon the false representations of Plaintiff Miriam Jacobs and Plaintiff Scott Jacobs and Plaintiff Traci Jacobs in allowing the Plaintiffs to be relieved of their obligations regarding sale of the property.

6. As a result of Plaintiff Miriam Jacobs' and Plaintiff Scott Jacobs' and Plaintiff Traci Jacobs' dishonest and fraudulent conduct the Defendants have sustained, and continue to sustain damages.

14

7. Third-Party Defendants, First Jersey Appraisal Group and Robert J. Jones, Jr. are persons and/or entities that had constructive or actual knowledge of Plaintiffs' interests in the contract of sale of the Property and conspired with the Defendants to defraud Plaintiffs out of the benefit of the contract for sale of the Property and/or to aid and abet their fraudulent activity.

8. Third-Party Defendants, JOHN DOES one (1) through ten (10) and JOHN DOE CORPORATIONS one (1) through ten (10) are unknown persons and/or entities that had constructive or actual knowledge of Defendants' interests in the contract of sale of the Property and conspired with the Plaintiffs to defraud Defendants out of the benefit of the contract for sale of the Property and/or to aid and abet their fraudulent activity.

**WHEREFORE**, Defendants demand damages as follows:

    (a) Damages sustained and costs incurred;

    (b) Punitive Damages;

    (c) Reasonable Attorneys Fees and legal expenses;

    (d) Interest and costs of suit; and

    (e) Such other and further relief as the Court may deem equitable and just.

## COUNT SEVEN – NEGLIGENCE

1. The Defendants repeat the allegations of Counts One through Six of the Counterclaim as if set forth herein at length.

2. The Plaintiff Scott Jacobs acted negligently in failing to obtain a true and accurate appraisal of the real property located at 817 Matlack Drive.

3. As a result of the Plaintiff Scott Jacobs' actions, the Defendants suffered damages including but not limited to proceeds from the sale of the real

property, carrying costs to continue the maintenance and support of the real

property, and diminution of the value of the real property.

**WHEREFORE**, Defendants demand damages as follows:

    (a) All damages sustained and all costs incurred;

    (b) Interests and costs of suit; and

    (c) Such other and further relief as the Court may deem equitable and just.

### COUNT EIGHT – NEGLIGENCE

1.    The Defendants repeat the allegations of Counts One through Seven of the Counterclaim as if set forth herein at length.

2.    The Plaintiff Traci Jacobs acted negligently in failing to obtain a true and accurate appraisal of the real property located at 817 Matlack Drive.

3.    As a result of the Plaintiff Traci Jacobs' actions, the Defendants suffered damages including but not limited to proceeds from the sale of the real property, carrying costs to continue the maintenance and support of the real property, and diminution of the value of the real property.

**WHEREFORE**, Defendants demand damages as follows:

    (a) All damages sustained and all costs incurred;

    (b) Interests and costs of suit; and

    (c) Such other and further relief as the Court may deem equitable and just.

### COUNT NINE – NEGLIGENCE

1.    The Defendants repeat the allegations of Counts One through Eight of the Counterclaim as if set forth herein at length.

2.    The Plaintiff Miriam Jacobs acted negligently in failing to obtain a true and accurate appraisal of the real property located at 817 Matlack Drive.

3.      As a result of the Plaintiff Miriam Jacobs' actions, the Defendants suffered

damages including but not limited to proceeds from the sale of the real

property, carrying costs to continue the maintenance and support of the real

property, and diminution of the value of the real property.

**WHEREFORE**, Defendants demand damages as follows:

(a) All damages sustained and all costs incurred;

(b) Interests and costs of suit; and

(c) Such other and further relief as the Court may deem equitable and just.


### THIRD-PARTY COMPLAINT

1. The Defendants/Third-Party Plaintiffs repeat the allegations of the Counterclaim as if set forth herein at length.

2. Third-Party Defendant is First Jersey Appraisal Group, 413 Crystal Lake Avenue, Suite 202, Haddonfield, New Jersey.

3. Third-Party Defendant is Robert J. Jones, Jr., an employee and agent of Third-Party Defendant First Jersey Appraisal Group.

4. Third-Party Defendant is Commerce Bank, N.A., 6000 Atrium Way, Mount Laurel, New Jersey.

5. Third-Party Defendants, JOHN DOES one (1) through ten (10), and are the fictitious names of other persons who are or may be liable to Third-Party Plaintiffs, whose identity is not yet known.

6. Third-Party Defendants, JOHN DOE CORPORATIONS one (1) through ten (10), are the fictitious names of other entities who are or may be liable to Third-Party Plaintiffs, whose identity is not yet known.

7.  The remaining material facts for the Third-Party Complaint are the same as set forth in the Defendants' Counterclaim, and in the interest of judicial economy will not be repeated herein.

## COUNT TEN – TORTIOUS INTERFERENCE

1.  The Third-Party Defendant First Jersey Appraisal Group had knowledge of the Contract for Sale of 817 Matlack Drive.

2.  The Third-Party Defendant First Jersey Appraisal Group intentionally interfered in the contractual relationship between the parties to that contract.

3.  The actions of Third-Party Defendant First Jersey Appraisal Group resulted in a breach of the contract by the buyers.

4.  As a result of the interference by Third-Party Defendant First Jersey Appraisal Group, the Third-Party Plaintiffs suffered damages including but not limited to proceeds from the sale of the real property, carrying costs to continue the maintenance and support of the real property, and diminution of the value of the real property.

WHEREFORE, Third-Party Plaintiffs demand damages as follows:

(a) All damages sustained and all costs incurred;

(b) Interests and costs of suit; and

(c) Such other and further relief as the Court may deem equitable and just.

## COUNT ELEVEN – TORTIOUS INTERFERENCE

1.  The Third-Party Plaintiffs repeat the allegations of Count Ten of the Third-Party Complaint as if set forth herein at length.

2.  The Third-Party Defendant Robert J. Jones, Jr. had knowledge of the Contract for Sale of 817 Matlack Drive.

3.   The Third-Party Defendant Robert J. Jones, Jr. intentionally interfered in the contractual relationship between the parties to that contract.

4.   The actions of Third-Party Defendant Robert J. Jones, Jr. resulted in a breach of the contract by the buyers.

5.   As a result of the interference by Third-Party Defendant Robert J. Jones, Jr., the Third-Party Plaintiffs suffered damages including but not limited to proceeds from the sale of the real property, carrying costs to continue the maintenance and support of the real property, and diminution of the value of the real property.

**WHEREFORE**, Third-Party Plaintiffs demand damages as follows:

(a) All damages sustained and all costs incurred;

(b) Interests and costs of suit; and

(c) Such other and further relief as the Court may deem equitable and just.

## COUNT TWELVE – TORTIOUS INTERFERENCE

1.   The Third-Party Plaintiffs repeat the allegations of Counts Ten and Eleven of the Third-Party Complaint as if set forth herein at length.

2.   The Third-Party Defendant Commerce Bank, N.A. had knowledge of the Contract for Sale of 817 Matlack Drive.

3.   The Third-Party Defendant Commerce Bank, N.A. intentionally interfered in the contractual relationship between the parties to that contract.

4.   The actions of Third-Party Defendant Commerce Bank, N.A. resulted in a breach of the contract by the buyers.

5.   As a result of the interference by Third-Party Defendant Commerce Bank, N.A., the Third-Party Plaintiffs suffered damages including but not limited to

proceeds from the sale of the real property, carrying costs to continue the maintenance and support of the real property, and diminution of the value of the real property.

**WHEREFORE,** Third-Party Plaintiffs demand damages as follows:

(a) All damages sustained and all costs incurred;

(b) Interests and costs of suit; and

(c) Such other and further relief as the Court may deem equitable and just.

## COUNT THIRTEEN – FRAUD, CIVIL CONSPIRACY, AIDING AND ABETTING FRAUD

1.    The Third-Party Plaintiffs repeat the allegations of Counts Ten through Twelve of the Third-Party Complaint as if set forth herein at length.

2.    The Third-Party Defendant First Jersey Appraisal Group knowingly, willingly, and fraudulently deprived Third-Party Plaintiffs of the benefit of the sale of the real property through his acts and omissions including, but not limited to:

a.    Dismissing the errors found in the appraisal;

b.    Failing to have the initial appraisal reviewed and revised; and

c.    Ensuring that the contract for sale would be rendered unenforceable, thereby ensuring Defendants would not receive the benefit of the performance of the contract.

3.    The Third-Party Defendant First Jersey Appraisal Group knowingly, willingly, and fraudulently engaged in a civil conspiracy with Third-Party Defendant Robert J. Jones, Jr. to deprive Third-Party Plaintiffs of the benefit of the sale of the real property through their acts and omissions including, but not limited

20

to:

a.  Dismissing the errors found in the appraisal;

b.  Failing to have the initial appraisal reviewed and revised; and

c.  Ensuring that the contract for sale would be rendered unenforceable, thereby ensuring Third-Party Plaintiffs would not receive the benefit of the performance of the contract.

4.  It was the intention of the Third-Party Defendant First Jersey Appraisal Group and Third-Party Defendant Robert J. Jones, Jr., from the time they knew the Plaintiffs could not perform their obligations under the contract, to defraud the Third-Party Plaintiffs out of their interest in the same.

5.  Third-Party Plaintiffs relied upon the false representations of Third-Party Defendant First Jersey Appraisal Group and Third-Party Defendant Robert J. Jones, Jr. in allowing the Plaintiffs to be relieved of their obligations regarding sale of the property.

6.  As a result of the Third-Party Defendant First Jersey Appraisal Group's and Third-Party Defendants Robert J. Jones, Jr.'s dishonest and fraudulent conduct, Third-Party Plaintiffs have sustained, and continue to sustain damages.

7.  Third-Party Defendants, JOHN DOES one (1) through ten (10) and JOHN DOE CORPORATIONS one (1) through ten (10) are unknown persons and/or entities that had constructive or actual knowledge of Third-Party Plaintiffs' interests in the contract of sale of the Property and conspired with the Plaintiffs and other Third-Party Defendants to defraud Third-Party Plaintiffs out of the benefit of the contract for sale of the Property and/or to aid and abet their fraudulent activity.

**WHEREFORE,** Third-Party Plaintiffs demand damages as follows:

(a) All damages sustained and all costs incurred;

(b) Punitive Damages;

(c) Reasonable Attorneys Fees and legal expenses;

(d) Interests and costs of suit; and

(e) Such other and further relief as the Court may deem equitable and just.

## COUNT FOURTEEN – FRAUD, CIVIL CONSPIRACY, AIDING AND ABETTING FRAUD

1. The Third-Party Plaintiffs repeat the allegations of Counts Ten through Thirteen of the Third-Party Complaint as if set forth herein at length.

2. The Third-Party Defendant Robert J. Jones, Jr. knowingly, willingly, and fraudulently deprived Third-Party Plaintiffs of the benefit of the sale of the real property through his acts and omissions including, but not limited to:

   a. Dismissing the errors found in the appraisal;

   b. Failing to have the initial appraisal reviewed and revised; and

   c. Ensuring that the contract for sale would be rendered unenforceable, thereby ensuring Defendants would not receive the benefit of the performance of the contract.

3. The Third-Party Defendant Robert J. Jones, Jr. knowingly, willingly, and fraudulently engaged in a civil conspiracy with Third-Party Defendant First Jersey Appraisal Group to deprive Third-Party Plaintiffs of the benefit of the sale of the real property through their acts and omissions including, but not limited to:

   a. Dismissing the errors found in the appraisal;

b.   Failing to have the initial appraisal reviewed and revised; and

c.   Ensuring that the contract for sale would be rendered unenforceable, thereby ensuring Third-Party Plaintiffs would not receive the benefit of the performance of the contract.

4.   It was the intention of the Third-Party Defendant Robert J. Jones, Jr. and Third-Party Defendant First Jersey Appraisal Group, from the time they knew the Plaintiffs could not perform their obligations under the contract, to defraud the Third-Party Plaintiffs out of their interest in the same.

5.   Third-Party Plaintiffs relied upon the false representations of Third-Party Defendant Robert J. Jones, Jr. and Third-Party Defendant First Jersey Appraisal Group in allowing the Plaintiffs to be relieved of their obligations regarding sale of the property.

6.   As a result of the Third-Party Defendant Robert J. Jones, Jr.'s and Third-Party Defendants First Jersey Appraisal Group's dishonest and fraudulent conduct, Third-Party Plaintiffs have sustained, and continue to sustain damages.

7.   Third-Party Defendants, JOHN DOES one (1) through ten (10) and JOHN DOE CORPORATIONS one (1) through ten (10) are unknown persons and/or entities that had constructive or actual knowledge of Third-Party Plaintiffs' interests in the contract of sale of the Property and conspired with the Plaintiffs and other Third-Party Defendants to defraud Third-Party Plaintiffs out of the benefit of the contract for sale of the Property and/or to aid and abet their fraudulent activity.

**WHEREFORE,** Third-Party Plaintiffs demand damages as follows:

(a) All damages sustained and all costs incurred;

(b) Punitive Damages;

(c) Reasonable Attorneys Fees and legal expenses;

(d) Interests and costs of suit; and

(e) Such other and further relief as the Court may deem equitable and just.

## COUNT FIFTEEN – NEGLIGENCE

1.    The Third-Party Plaintiffs repeat the allegations of Counts Ten through Fourteen of the Third-Party Complaint as if set forth herein at length.

2.    The Third-Party Defendant Commerce Bank, N.A. was negligent by, including but not limited to, denying funding based on an inaccurate appraisal.

3.    As a direct and proximate result of that negligence, the Third-Party Plaintiffs suffered damages including but not limited to proceeds from the sale of the real property, carrying costs to continue the maintenance and support of the real property, and diminution of the value of the real property.

**WHEREFORE,** Third-Party Plaintiffs demand damages as follows:

(a) All damages sustained and all costs incurred;

(b) Interests and costs of suit; and

(c) Such other and further relief as the Court may deem equitable and just.

## COUNT SIXTEEN - NEGLIGENCE

1.    The Third-Party Plaintiffs repeat the allegations of Counts Ten through Fifteen of the Third-Party Complaint as if set forth herein at length.

2.    The Third-Party Defendant Robert J. Jones, Jr. was negligent in that he provided an inaccurate appraisal.

3.   As a direct and proximate result of that negligence, the Third-Party Plaintiffs

suffered damages including but not limited to proceeds from the sale of the

real property, carrying costs to continue the maintenance and support of the

real property, and diminution of the value of the real property.

**WHEREFORE**, Third-Party Plaintiffs demand damages as follows:

(a) All damages sustained and all costs incurred;

(b) Interests and costs of suit; and

(c) Such other and further relief as the Court may deem equitable and just.

## COUNT SEVENTEEN – NEGLIGENT SUPERVISION

1.   The Third-Party Plaintiffs repeat the allegations of Counts Ten through

Sixteen of the Third-Party Complaint as if set forth herein at length.

2.   The Third-Party Defendant First Jersey Appraisal Group was negligent in the

supervision of their employee and agent, Third-Party Defendant Robert J.

Jones, Jr.

3.   As a direct and proximate result of that negligent supervision, the Third-Party

Plaintiffs suffered damages including but not limited to proceeds from the

sale of the real property, carrying costs to continue the maintenance and

support of the real property, and diminution of the value of the real property.

**WHEREFORE**, Third-Party Plaintiffs demand damages as follows:

(a) All damages sustained and all costs incurred;

(b) Interests and costs of suit; and

(c) Such other and further relief as the Court may deem equitable and just.

## JURY DEMAND

Defendant/Third Party Plaintiff demands trial by jury as to all issues.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, Matthew R. McCrink, Esquire, is hereby designated as trial counsel for answering Defendant/Third Party Plaintiff in the above matter.

**McCRINK, KEHLER & McCRINK**

By: _____

MATTHEW R. McCRINK, ESQUIRE

## CERTIFICATION

1.    The undersigned certifies that this Answer, Counterclaim and Third-Party Complaint have been filed within the time period allowed by the Court Rules.

2.    To the best of my knowledge and belief, there are no other parties who must be joined in this action.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

**McCRINK, KEHLER & McCRINK**

By: _____

MATTHEW R. McCRINK, ESQUIRE

Dated: 7/3/08

26

| CIVIL CASE INFORMATION STATEMENT | FOR USE BY CLERK'S OFFICE ONLY |
|---|---|

**(CIS)**

Use for initial Law Division - Civil Part pleadings (not motions) under Rule 4:5-1.

**Pleading will be rejected for filing, under Rule 1:5-6(c), if information above the black bar is not completed or if attorney's signature is not affixed.**

| | FOR USE BY CLERK'S OFFICE ONLY |
|---|---|
| | PAYMENT TYPE:  CK      CQ      CA |
| | CHECK NO. |
| | Amount: |
| | Overpayment |
| | Batch Number |

| ATTORNEY/PRO SE NAME<br>**MATTHEW R. McCRINK, ESQUIRE** | PHONE NUMBER<br>**856-768-0033** | COUNTY OF VENUE<br>    BURLINGTON COUNTY |
|---|---|---|

| FIRM NAME (if applicable)<br>    **McCRINK, KEHLER & McCRINK** | DOCKET NUMBER (IF AVAILABLE)<br>    BUR-L-001418-08 |
|---|---|

| OFFICE ADDRESS<br>**475 ROUTE 73 NORTH, WEST BERLIN, NEW JERSEY 08091** | DOCUMENT TYPE<br>ANSWER, COUNTERCLAIM and THIRD-PARTY COMPLAINT |
|---|---|
| | JURY DEMAND      YES ☒    NO ☐ |

| NAME OF PARTY (e.g., John Doe, Plaintiff) FRANK J. REED, III and CHRISTINA A. REED, Husband and Wife | CAPTION<br>**Scott Jacobs and Traci Jacobs, Husband and Wife, and Miriam Jacobs v.**<br>**Frank J. Reed, III and Christian Reed, Husband and Wife, and B.T. Edgar & Son**<br><br>**Frank J. Reed, III and Christina Reed, Husband and Wife v. First Jersey Appraisal Group, Robert J. Jones, Jr., Commerce Bank, N.A., John Does One through Ten, and John Doe Corporations One through Ten** |
|---|---|

| CASE TYPE NUMBER<br>(See reverse side for listing)  599 | IS THIS A PROFESSIONAL MALPRACTICE CASE? YES ☐  NO ☒<br>IF YOU HAVE CHECKED "YES", SEE N.J.S.A. 2A:53A-27 AND APPLICABLE   CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
|---|---|
| RELATED CASES PENDING?  YES ☐   NO ☒ | IF YES, LIST DOCKET NUMBER |
| DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of the same  transaction or occurrence)?<br>YES ☐  NO ☒ | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY, IF KNOWN<br><br>☐ NONE        ☒    UNKNOWN |

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

A. DO PARTIES HAVE A CURRENT PAST OR RECURRENT RELATIONSHIP? YES☒    NO ☐    IF YES, IS THAT  ☐ EMPLOYER-EMPLOYEE  ☐ FRIEND/NEIGHBOR   RELATIONSHIP  ☐ FAMILIAL  ☒ BUSINESS ☐ OTHER (explain) _____

B. DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?     YES  ☐     NO ☒

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION:

DO YOU OR YOUR CLIENT HAVE ANY NEEDS UNDER THE THE AMERICANS WITH DISABILITIES ACT?     YES ☐     NO  ☒       IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION_____

WILL AN INTERPRETER BE NEEDED? YES ☐  NO  ☒     IF YES, FOR WHAT LANGUAGE_____

ATTORNEY SIGNATURE
MATTHEW R. McCRINK, ESQUIRE

Exhibit A



## COMPLETE APPRAISAL SUMMARY REPORT

**LOCATED AT:**
817 Matlack Drive
Block 3803 Lot 2
Moorestown, NJ 08057

> Frank Reed

**FOR:**
Commerce Bank
2059 Springdale Road
Cherry Hill, NJ 08003

**AS OF:**
1/21/2008

**BY:**
Peter R. McCaffrey
Robert M. Sapio Real Estate Appraisal & Consulting, LLC

An Administrative Compliance Review has been completed on this report.
This report has been deemed acceptable by Commerce Bank.

[Reviewed by]    1/28/18    [Date]

This appraisal has been performed for Commerce Bank in connection with a loan request made by you. Commerce Bank makes no representations regarding the accuracy of the information contained in the appraisal and assumes no liability in connection with this appraisal.

File No. 08011502

Robert M. Sapio
Real Estate Appraisal & Consulting, LLC
314 Cherry Avenue
Voorhees, NJ 08043

Telephone No.: (856) 429-2789
Fax No. : (856) 795-2297

January 25, 2008

Joseph Graves
Commerce Bank
2059 Springdale Road
Cherry Hill, NJ 08003

RE:    Reed
       817 Matlack Drive
       Moorestown, NJ

Dear Mr. Graves:

In accordance with your request, enclosed is one copy of the appraisal report of the captioned property. The purpose of the appraisal was to estimate market value of the captioned property, as improved, in unencumbered fee simple title, subject to the Assumptions and Limiting Conditions contained in the URAR form 439, the Certification and this report.

This report is prepared in compliance with the requirements of the Code of Professional Ethics and the Standards of Professional Practice of the Appraisal Institute.

This is a complete appraisal in a summary report.

Respectfully submitted,

Peter McCaffrey, SLREA/RA 00154

| Borrower Reed 3rd, Frank & Christina | | | |
|---|---|---|---|
| Property Address 817 MatJack Drive | | | File No. 08011502 |
| City Moorestown | County Burlington | State NJ | Zip Code 08057 |
| Lender Commerce Bank | | | |

## APPRAISAL AND REPORT IDENTIFICATION

This Appraisal conforms to **one** of the following definitions:

☒  **Complete Appraisal**
The act or process of estimating value, or an estimate of value, performed without invoking the Departure Provision.

☐  **Limited Appraisal**
The act or process of estimating value, or an estimation of value, performed under and resulting from invoking the Departure Provision.

This Report is **one** of the following types:

☐  **Self Contained Report**
A written report prepared under Standards Rule 2-2(A) of a complete or limited appraisal performed under Standard 1.

☒  **Summary Report**
A written report prepared under Standards Rule 2-2(B) of a complete or limited appraisal performed under Standard 1.

☐  **Restricted Report**
A written report prepared under Standards Rule 2-2(C) of a complete or limited appraisal performed under Standard 1.

## Comments on Appraisal and Report Identification
Note any departures from Standards Rules 1-2, 1-3, 1-4, plus any USPAP-related issues requiring disclosure:

# Uniform Residential Appraisal Report

File # 08011502

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | | | |
|---|---|---|---|
| Property Address 817 Matlack Drive | City Moorestown | State NJ | Zip Code 08057 |
| Borrower Reed 3rd, Frank & Christina | Owner of Public Record Reed 3rd, Frank & Christina | | County Burlington |

Legal Description Block 3803 Lot 2

| | | |
|---|---|---|
| Assessor's Parcel # 03803 - 00002 | Tax Year 2007 | R.E. Taxes $ 30,748 |
| Neighborhood Name N/A | Map Reference | Census Tract 7005.051 |
| Occupant ☒ Owner ☐ Tenant ☐ Vacant | Special Assessments $ | ☐ PUD   HOA $ ☐ per year ☐ per month |

Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)

Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) Market Value

Lender/Client  Commerce Bank     Address  2059 Springdale Road, Cherry Hill, NJ 08003

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?   ☒ Yes ☐ No

Report data source(s) used, offering price(s), and date(s).   The subject is currently under contract for $2,040,000. Listed with Edgar & Son, LLC, Louise Carter-agent, (856) 235-0101.

I ☐ did ☒ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.   Contract not provided to appraiser.

| | | |
|---|---|---|
| Contract Price $ | Date of Contract | Is the property seller the owner of public record? ☐ Yes ☐ No  Data Source(s) |

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower?   ☐ Yes ☐ No

If Yes, report the total dollar amount and describe the items to be paid.   N/A

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | One-Unit Housing Trends | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | | Property Values ☐ Increasing ☒ Stable ☐ Declining | | PRICE | AGE | One-Unit | 98 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | | $ (000) | (yrs) | 2-4 Unit | % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | | Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | | 900 Low | New | Multi-Family | % |
| Neighborhood Boundaries  are Main Street East, Westfield Road north, Cinnaminson Township west and | | | | 2,900 High | 90 | Commercial | 2 % |
| Lenola Road south. | | | | 1,850 Pred. | 5 | Other | % |

Neighborhood Description     The subject is located in a prestigious residential neighborhood of executive style single family detached dwellings. Schools, parks and recreational facilities are scattered around the Township. Employment and shopping centers are located along State Highway Routes 38, 73 and 130.

Market Conditions (including support for the above conclusions)     Property values appear stable. Demand and supply are in balance. Marketing times for similar properties average 3-6 months. Most sales are conventional financing with some FHA. Conventional mortgages available at prevailing rates and discounts. No adverse affect on Market Value.

| | | | |
|---|---|---|---|
| Dimensions 270 x 185 x 111.42 x 156.41 | Area 26,572 Sq. Ft. | Shape Irregular | View Good |
| Specific Zoning Classification R1A | Zoning Description Residential | | |

Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use?   ☒ Yes ☐ No  If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street Asphalt | ☒ | |
| Gas | ☒ | | Sanitary Sewer | ☒ | | Alley | | |
| FEMA Special Flood Hazard Area ☐ Yes ☒ No | | | FEMA Flood Zone C | | FEMA Map # 340105 0005B | | FEMA Map Date 9/4/1991 | |

Are the utilities and off-site improvements typical for the market area?   ☒ Yes ☐ No  If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)?   ☐ Yes ☒ No  If Yes, describe

There are no known adverse easements or encroachments. Highest and best use is continued residential. Zoning conformance is a legal matter and an attorney's opinion should be sought to confirm the foregoing conclusion.

| General Description | | Foundation | | Exterior Description  materials/condition | | Interior  materials/condition | |
|---|---|---|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | | ☐ Concrete Slab ☐ Crawl Space | | Foundation Walls PouredConcrete/Gd. | | Floors Hwd,Cpt,Tile/Good | |
| # of Stories 2.5 | | ☒ Full Basement ☐ Partial Basement | | Exterior Walls Stucco,Wood/Good | | Walls Drywall/Good | |
| Type ☒ Det. ☐ Att. ☐ S-Det/End Unit | | Basement Area 1,820 sq.ft. | | Roof Surface Fiberglass/Good | | Trim/Finish Wood/Good | |
| ☒ Existing ☐ Proposed ☐ Under Const. | | Basement Finish 60 % | | Gutters & Downspouts Aluminum/Good | | Bath Floor Tile/Good | |
| Design (Style)  2 1/2st.Colonial | | ☐ Outside Entry/Exit ☒ Sump Pump | | Window Type Anderson/Good | | Bath Wainscot Tile/GOod | |
| Year Built 2006 | | Evidence of ☐ Infestation | | Storm Sash/Insulated Yes/Good | | Car Storage ☐ None | |
| Effective Age (Yrs) 1 | | ☐ Dampness ☐ Settlement | | Screens Yes/Good | | ☒ Driveway  # of Cars 6 | |
| Attic ☐ None | | Heating ☒ FWA ☐ HWBB ☐ Radiant | | Amenities ☐ Woodstove(s) # | | Driveway Surface Asphalt | |
| ☐ Drop Stair ☐ Stairs | | Other ☐ Fuel | | ☒ Fireplace(s) # 3 ☐ Fence | | ☒ Garage  # of Cars 3 | |
| ☒ Floor ☐ Scuttle | | Cooling ☒ Central Air Conditioning | | ☐ Patio/Deck ☒ Porch | | ☐ Carport  # of Cars | |
| ☐ Finished ☐ Heated | | ☐ Individual ☐ Other | | ☐ Pool ☐ Other (describe) | | ☐ Att. ☐ Det. ☐ Built-in | |
| Appliances ☒ Refrigerator ☒ Range/Oven ☒ Dishwasher ☒ Disposal ☒ Microwave ☒ Washer/Dryer ☐ Other (describe) | | | | | | | |

Finished area above grade contains:     14 Rooms     7 Bedrooms     7.5.5 Bath(s)     6,555 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.).     Three zone heat and air, basement finished with full bath, bedroom and game room. Three fireplaces and upgrades throughout the dwelling.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).     The subject is in very good condition with no apparent needed repairs. The subject is under two years old and was built by Maines, one of South Jersey's premier builders.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property?   ☐ Yes ☒ No  If Yes, describe

There are no physical deficiencies or adverse conditions.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)?   ☒ Yes ☐ No  If No, describe

| | | |
|---|---|---|
| eddie Mac Form 70 March 2005 | Page 1 of 6 | Fannie Mae Form 1004 March 2005 |

# Uniform Residential Appraisal Report

File # 08011502

There are **9** comparable properties currently offered for sale in the subject neighborhood ranging in price from $ **1,539,000** to $ **2,150,000**

There are **4** comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ **1,850,000** to $ **2,900,000**

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 817 Matlack Drive | 804 Matlack Drive | | 807 Riverton Road | | 301 E. Oak Avenue | |
| | Moorestown, NJ 08057 | Moorestown, NJ 08057 | | Moorestown, NJ 08057 | | Moorestown, NJ 08057 | |
| Proximity to Subject | | same street | | 1/4 mile | | 1 mile | |
| Sale Price | $ | | $ 1,850,000 | | $ 1,900,000 | | $ 2,150,000 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 327.84 sq.ft. | | $ 343.33 sq.ft. | | $ 429.14 sq.ft. | |
| Data Source(s) | | MLS | | MLS | | MLS | |
| Verification Source(s) | | Broker | | Broker | | Broker | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | CNV | | CNV | | CNV | |
| Concessions | | None | | None | | None | |
| Date of Sale/Time | | 8/20/2007 | | 1/5/2007 | | 8/17/2006 | -86,000 |
| Location | Good | Good | | Good | | Good | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | .61 acres | .69 acres | | 2.10 acres | -20,000 | .96 acres | |
| View | Good | Good | | Good | | Good | |
| Design (Style) | 2 1/2st.Colonial | 2 1/2st.Colonial | | 2st French | | 2st Colonial | |
| Quality of Construction | Good | Good | | Good | | Superior | -50,000 |
| Actual Age | 1 | 1 | | 10 eff. 2 | | 86 eff. 10 | +50,000 |
| Condition | Good | Good | | Good | | Good | |
| Above Grade | Total \| Bdrms. \| Baths | Total \| Bdrms. \| Baths | | Total \| Bdrms. \| Baths | | Total \| Bdrms. \| Baths | |
| Room Count | 14 \| 7 \| 7.5.5 | 11 \| 5 \| 4.5. | +50,000 | 10 \| 5 \| 5.5 | +25,000 | 11 \| 5 \| 5.5 | +25,000 |
| Gross Living Area | 6,555 sq.ft. | 5,643 sq.ft. | +71,100 | 5,534 sq.ft. | +78,200 | 5,010 sq.ft. | +115,500 |
| Basement & Finished | 1,820 Sq.Ft./Bath | Full, Bath | | Full, Bath | | Full, 1/2 Bath | |
| Rooms Below Grade | GameRm,Bed | GameRm,Bed | | GameRm | | GameRm | |
| Functional Utility | Good | Good | | Good | | Good | |
| Heating/Cooling | FHA/Central | FHA/Central | | HWBB/Central | | FHA/Central | |
| Energy Efficient Items | 3 zone heat/air | 3 zone heat/air | | 3 zone heat/air | | 3 zone heat/air | |
| Garage/Carport | 3 car | 3 car | | 3 car | | 2 car | +10,000 |
| Porch/Patio/Deck | Porch | Patio | | Deck, Patio | | Patio | |
| | 3 F/P | 1 F/P | +10,000 | 3 F/P | | Pool, Fence | -20,000 |
| | | | | | | 3 F/P | |
| Net Adjustment (Total) | | ☒ + ☐ - | $ 131,100 | ☒ + ☐ - | $ 83,200 | ☒ + ☐ - | $ 44,500 |
| Adjusted Sale Price | | Net Adj. 7.1 % | | Net Adj. 4.4 % | | Net Adj. 2.1 % | |
| of Comparables | | Gross Adj. 7.1 % | $ 1,981,100 | Gross Adj. 6.5 % | $ 1,983,200 | Gross Adj. 16.6 % | $ 2,194,500 |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain



My research ☒ did ☐ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

Data Source(s)   Public Records

My research ☐ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.

Data Source(s)   Public Records

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 5/31/2006 | N/A | N/A | N/A |
| Price of Prior Sale/Transfer | 1,574,619 | | | |
| Data Source(s) | Public Records | | | |
| Effective Date of Data Source(s) | 1/21/2008 | | | |

Analysis of prior sale or transfer history of the subject property and comparable sales   The subject was purchased on 5/31/2006 as new construction. The subject is currently listed for sale with Edgar & Sons, LLC-Moorestown. The listing agent is Louise Carter. The listing is for $2,296,000 and is currently under agreement for $2,040,000.




Summary of Sales Comparison Approach   See attached addendum.







Indicated Value by Sales Comparison Approach $ 2,040,000

Indicated Value by Sales Comparison Approach $ 2,040,000   Cost Approach (if developed) $ 1,946,169   Income Approach (if developed) $ N/A

All weight is placed on the Sales Comparison Approach to value.


This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:


Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$ 2,040,000 , as of 1/21/2008 , which is the date of inspection and the effective date of this appraisal.

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Uniform Residential Appraisal Report

File # 08011502

## COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)

| ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | | | =$ | 500,000 |
|---|---|---|---|---|---|---|
| Source of cost data | DWELLING | 6,555 Sq.Ft. @ $ | 190.00 | | =$ | 1,245,450 |
| Quality rating from cost service          Effective date of cost data | Basement | 1,820 Sq.Ft. @ $ | 80.00 | | =$ | 145,600 |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | 3 F/P | | | | =$ | 18,500 |
| The Reproduction Cost was derived from the Marshall and Swift | Garage/Carport | 888 Sq.Ft. @ $ | 40.00 | | =$ | 35,520 |
| Evaluation Service and cost data contained in the appraisers files. | Total Estimate of Cost-New | | | | =$ | 1,445,070 |
| | Less | Physical | Functional | External | | |
| | Depreciation | 28,901 | | | =$( | 28,901 |
| | Depreciated Cost of Improvements | | | | =$ | 1,416,169 |
| | "As-is" Value of Site Improvements | | | | =$ | 30,000 |
| Estimated Remaining Economic Life (HUD and VA only)          Years | INDICATED VALUE BY COST APPROACH | | | | =$ | 1,946,169 |

## INCOME APPROACH TO VALUE (not required by Fannie Mae)

| Estimated Monthly Market Rent $ | X Gross Rent Multiplier | = $ | Indicated Value by Income Approach |
|---|---|---|---|

Summary of Income Approach (including support for market rent and GRM)

## PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)? ☐ Yes ☐ No    Unit type(s) ☐ Detached ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

| Total number of phases | Total number of units | Total number of units sold |
|---|---|---|
| Total number of units rented | Total number of units for sale | Data source(s) |

Was the project created by the conversion of existing building(s) into a PUD? ☐ Yes ☐ No   If Yes, date of conversion.

Does the project contain any multi-dwelling units? ☐ Yes ☐ No   Data Source

Are the units, common elements, and recreation facilities complete? ☐ Yes ☐ No   If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association? ☐ Yes ☐ No   If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Uniform Residential Appraisal Report

File # 08011502

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Uniform Residential Appraisal Report

File # 08011502

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Uniform Residential Appraisal Report

File # 08011502

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

SUPERVISORY APPRAISER'S CERTIFICATION: The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name  Peter McCaffrey | Name |
| Company Name  Robert M Sapio Real Estate Appraisals | Company Name |
| Company Address  314 Cherry Avenue, Voorhees, NJ 08043 | Company Address |
| Telephone Number  (856) 429-2789 | Telephone Number |
| Email Address  rms@rmsapio.com | Email Address |
| Date of Signature and Report  February 21, 2008 | Date of Signature |
| Effective Date of Appraisal  1/21/2008 | State Certification # |
| State Certification # | or State License # |
| or State License #  42RA00015400 | State |
| or Other (describe) _____ State # ____ | Expiration Date of Certification or License |
| State  NJ | |
| Expiration Date of Certification or License  12/31/2009 | SUBJECT PROPERTY |

ADDRESS OF PROPERTY APPRAISED
817 Matlack Drive
Moorestown, NJ 08057
APPRAISED VALUE OF SUBJECT PROPERTY $    2,040,000
LENDER/CLIENT
Name  Joseph Graves
Company Name  Commerce Bank
Company Address  2059 Springdale Road, Cherry Hill, NJ 08003

Email Address  joseph.graves@yesbank.com

SUBJECT PROPERTY
☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
    Date of Inspection ____
☐ Did inspect interior and exterior of subject property
    Date of Inspection ____

COMPARABLE SALES
☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
    Date of Inspection ____

**General Text Addendum**

File No. 08011502

| Borrower | Reed 3rd, Frank & Christina | | | | |
|----------|------------------------------|--|--|--|--|
| Property Address | 817 Mallack Drive | | | | |
| City | Moorestown | County | Burlington | State NJ | Zip Code 08057 |
| Lender | Commerce Bank | | | | |

SCOPE

This is the extent of the process of collecting, confirming and reporting market data.

The primary source of the market data used in this report was the Multiple Listing Service in the subject County. Also, where necessary, market data from the appraiser's files and public records were utilized.

INCOME APPROACH

The Income Approach was not developed due to the lack of rental data in the local market which precludes developing a market rental estimate for the subject. Nearly all dwellings, locally, are owner occupied. This situation also causes a dearth of sold rental properties making it virtually impossible to derive a gross rent multiplier.

ZONING

A representative of the zoning office indicates the subject property building lot is legal, conforming and the existing improvements can be rebuilt if destroyed or are found to be uninhabitable.

Zoning conformance is a legal matter, we suggest an attorney's opinion be sought to confirm the appraiser's conclusion.

MORE THAN SIX MONTHS

In order to present the most similar sales, it is necessary to select sale 3, which is more than six months old, due to the low sale turnover in the subject neighborhood.

Stmt8-062701
· Statement of Limiting Conditions :

USE,COPIES,PUBLICATION,DISTRIBUTION OF THIS REPORT:
This appraisal report is prepared for the sole and exclusive use of Commerce Bank, N.A., to assist in determining the collateral values for mortgage financing.  It is no to be relied upon by third parties for any purpose, whatsoever.

The report may not be used for any purpose by any person or party other than the client or the party to whom it is addressed or copied without the written consent of an officer of the appraisal firm (Robert M. Sapio, Real Estate Appraisal & Consulting, LLC) and then only in its entirety.

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for the analytical services only.

Neither all nor any part of the contents of this report shall be conveyed to the public through advertising, public relations efforts, news, sales, other media, without the written consent and approval of an officer of the Sapio firm, nor may any reference be made in such a public communication to the Appraisal Institute or the MAI or SRA designations.

This supersedes No. 10 on page 1 of the Statement of Limiting Conditions.

| | | | |
|--|--|--|--|
| Signature | | Signature | |
| Name  Peter R. McCaffrey | | Name | |
| Date Signed  February 21, 2008 | | Date Signed | |
| State Certification # | State | State Certification # | State |
| Or State License #  42RA00015400 | State NJ | Or State License # | State |

Page 183 of 204 Addendum

| Borrower | Reed 3rd, Frank & Christina | | | | File No. 08011502 |
|---|---|---|---|---|---|
| Property Address | 817 Matlack Drive | | | | |
| City | Moorestown | County | Burlington | State | NJ   Zip Code  08057 |
| Lender | Commerce Bank | | | | |

### Sales Comparison Approach

Sale No. 1 is 804 Matlack Drive in Moorestown. The sale is similar to the subject located within the subject's development. The sale is built by the same developer, Roger Maines, as the subject. The sale is a two and a half story colonial dwelling with similar construction to the subject. The subject has superior room count, bedroom count and bathroom count and an upward $50,000 adjustment was made for those items. The sale has a full finished basement with a full bath. Sale has three-zone heat, three-car garage and a patio in the rear. The sale is in very good condition similar to the subject. The sale has a total of 5,643 square feet of gross living area.

Sale No. 2 is 807 Riverton Road in Moorestown. The sale is a two story French colonial style dwelling located within the several blocks of the subject. The sale is located on a rear flag lot and has 2.10 acres. This sale has ten rooms, five bedrooms and five and one half baths for a total gross living area of 5,534 square feet. The sale has a full finished basement with a full bath, three-zone heat and a deck and patio in the rear. The sale is in very good condition.

Sale No. 3 is 301 East Oak Avenue in Moorestown. This sale is located in a downtown section of Moorestown Township. This sale is smaller in overall building size with a total of eleven rooms, five bedrooms and five and one half baths for a total of 5,010 square feet of gross living area. The sale has a full finished basement with a powder room. The sale has superior construction to the subject with a slate roof, stone siding and copper gutters and downspouts. The sale is superior with an inground pool and a fence. The sale is in good condition with an effective age of eight to ten years.

Sale No. 3 settled on August 17, 2006 and a 4% downward time adjustment was necessary.

After adjustments the sales indicated a value range of $1,981,100 to $2,177,300. All three sales have occurred between August 2006 and August 2007. It is my opinion, the sales indicate a value of $2,040,000 to the subject.

| | | | |
|---|---|---|---|
| Signature | | Signature | |
| Name  Peter R. McCaffrey | | Name | |
| Date Signed  February 21, 2008 | | Date Signed | |
| State Certification # | State | State Certification # | State |
| Or State License #   42RA00015400 | State NJ | Or State License # | State |

## Subject Photo Page

| Borrower | Reed 3rd, Frank & Christina | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 817 Matlack Drive | | | | | |
| City | Moorestown | | County | Burlington | State NJ | Zip Code 08057 |
| Lender | Commerce Bank | | | | | |



**Subject Front**

817 Matlack Drive
Sales Price
GLA          6,555
Total Rooms  14
Total Bedrms 7
Total Bathrms 7.5.5
Location     Good
View         Good
Site         .61 acres
Quality      Good
Age          1



**Subject Rear**



**Subject Street**

**Comparable Photo Page**

| | |
|---|---|
| Borrower | Reed 3rd, Frank & Christina |
| Property Address | 817 Matlack Drive |
| City | Moorestown |
| Lender | Commerce Bank |

County Burlington    State NJ    Zip Code 08057



### Comparable 1
804 Matlack Drive
| | |
|---|---|
| Proximity | same street |
| Sale Price | 1,850,000 |
| GLA | 5,643 |
| Total Rooms | 11 |
| Total Bedrms | 5 |
| Total Bathrms | 4.5. |
| Location | Good |
| View | Good |
| Site | .69 acres |
| Quality | Good |
| Age | 1 |



### Comparable 2
807 Riverton Road
| | |
|---|---|
| Proximity | 1/4 mile |
| Sale Price | 1,900,000 |
| GLA | 5,534 |
| Total Rooms | 10 |
| Total Bedrms | 5 |
| Total Bathrms | 5.5 |
| Location | Good |
| View | Good |
| Site | 2.10 acres |
| Quality | Good |
| Age | 10 eff. 2 |



### Comparable 3
301 E. Oak Avenue
| | |
|---|---|
| Proximity | 1 mile |
| Sale Price | 2,150,000 |
| GLA | 5,010 |
| Total Rooms | 11 |
| Total Bedrms | 5 |
| Total Bathrms | 5.5 |
| Location | Good |
| View | Good |
| Site | .96 acres |
| Quality | Superior |
| Age | 86 eff. 10 |

File No. 08011502

BACKGROUND AND MULTIPLE SECURITY FEATURES. PLEASE VERIFY AUTHENTICITY.

## State Of New Jersey
### New Jersey Office of the Attorney General
### Division of Consumer Affairs

THIS IS TO CERTIFY THAT THE

Real Estate Appraisers Board

HAS LICENSED

PETER R. MCCAFFREY
117 OAKMONT RD
MOUNT LAUREL NJ  08054-2310

FOR PRACTICE IN NEW JERSEY AS A(N):  Licensed Residential Appraiser

11/09/2007  TO  12/31/2009
VALID

Signature of Licensed/Registrant/Certificate Holder

42RA00015400
LICENSE/REGISTRATION/CERTIFICATION #

ACTING DIRECTOR

**Flood Map**

| Borrower | Reed 3rd, Frank & Christina | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 817 Matlack Drive | | | | | | |
| City | Moorestown | County | Burlington | | State | NJ | Zip Code 08057 |
| Lender | Commerce Bank | | | | | | |



**NATIONAL FLOOD INSURANCE PROGRAM**

# FIRM

## FLOOD INSURANCE RATE MAP

### TOWNSHIP OF
## MOORESTOWN,
## NEW JERSEY
### BURLINGTON COUNTY

**PANEL 5 OF 10**
(SEE MAP INDEX FOR PANELS NOT PRINTED)

**COMMUNITY-PANEL NUMBER**
340105 0005 B

**MAP REVISED:**
SEPTEMBER 4, 1991

Federal Emergency Management Agency

Flood Map

| Borrower | Reed 3rd, Frank & Christina | | | | |
|---|---|---|---|---|---|
| Property Address | 817 Matlack Drive | | | | |
| City | Moorestown | County | Burlington | State NJ | Zip Code 08057 |
| Lender | Commerce Bank | | | | |



**Survey**

| Borrower | Reed 3rd, Frank & Christina | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 817 Matlack Drive | | | | | |
| City | Moorestown | County | Burlington | State | NJ | Zip Code 08057 |
| Lender | Commerce Bank | | | | | |



**Floor Plan**

| Borrower | Reed 3rd, Frank & Christina | | | | |
|---|---|---|---|---|---|
| Property Address | 817 Matlack Drive | | | | |
| City | Moorestown | County | Burlington | State NJ | Zip Code 08057 |
| Lender | Commerce Bank | | | | |



**Floor Plan**

| Borrower | Reed 3rd, Frank & Christina | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 817 Matlack Drive | | | | | |
| City | Moorestown | County | Burlington | State | NJ | Zip Code  08057 |
| Lender | Commerce Bank | | | | | |



**Floor Plan**

| Borrower | Reed 3rd, Frank & Christina | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 817 Matlack Drive | | | | | | |
| City | Moorestown | County | Burlington | State | NJ | Zip Code | 08057 |
| Lender | Commerce Bank | | | | | | |



**Floor Plan**

| Borrower | Reed 3rd, Frank & Christina | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 817 Matlack Drive | | | | | |
| City | Moorestown | | County | Burlington | State NJ | Zip Code 08057 |
| Lender | Commerce Bank | | | | | |



817 MATLACK DRIVE
LOT 2
BLOCK 9809

SECOND FLOOR PLAN & DETAILS

**Floor Plan**

| Borrower | Reed 3rd, Frank & Christina | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 817 Matlack Drive | | | | | |
| City | Moorestown | County | Burlington | State | NJ | Zip Code | 08057 |
| Lender | Commerce Bank | | | | | |



**Floor Plan**

| Borrower | Reed 3rd, Frank & Christina | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 817 Matlack Drive | | | | | |
| City | Moorestown | County | Burlington | State | NJ | Zip Code 08057 |
| Lender | Commerce Bank | | | | | |



**Building Sketch**

| Borrower | Reed 3rd, Frank & Christina | | | | |
|---|---|---|---|---|---|
| Property Address | 817 Matlack Drive | | | | |
| City | Moorestown | County | Burlington | State NJ | Zip Code 08057 |
| Lender | Commerce Bank | | | | |



**Comparable Sales Map**

| Borrower | Reed 3rd, Frank & Christina | | | | |
|---|---|---|---|---|---|
| Property Address | 817 Matlack Drive | | | | |
| City | Moorestown | County | Burlington | State NJ | Zip Code 08057 |
| Lender | Commerce Bank | | | | |



# EXHIBIT M

Jacobs v. Reed, et al.
Robert T. Jones

1 (Pages 1 to 4)

**1**

SUPERIOR COURT
LAW DIVISION - BURLINGTON COUNTY

SCOTT JACOBS and TRACI JACOBS,:Docket No.
husband and wife, and MIRIAM  :BUR-L-1418-08
JACOBS
    Plaintiffs,   :

    vs    :

FRANK J. REED, III and  :
CHRISTINA A. REED, HUSBAND AND:
WIFE, and B.T. EDGAR AND SON; :
    Defendants   :
FRANK J. REED, III and  :
CHRISTINA A. REED, HUSBAND AND:
WIFE,
    Third-Party Plaintiffs:

    vs    :

FIRST JERSEY APPRAISAL GROUP,.:
ROBERT J. JONES, JR., ET AL. :
    Third-Party Defendants:
    ----
Monday, December 1, 2008
Berlin, New Jersey

Oral Deposition of ROBERT J. JONES, taken pursuant
to Notice, at 475 Route 73 North, Berlin, New Jersey,
commencing at approximately 1:40 p.m. on the above date,
before Renée Helmar, Shorthand Reporter.
    ----
CLASS ACT COURT REPORTING AGENCY
Registered Professional Reporters
1420 Walnut Street   133 Gaither Drive
Suite 1200    Suite H
Philadelphia, PA 19103  Mt. Laurel, NJ 08054

**2**

1  APPEARANCES:
2    Law Offices of Sherman, Silverstein, Kohl,
    Rose and Podolsky
3    By: JEFFREY P. RESNICK, Esquire
    Fairway Corporate Center
4    4300 Haddonfield Road
    Suite 311
5    Pennsauken, New Jersey 08109
6    Counsel for Plaintiffs, the Jacobs
7
    Law Offices of Donna Adelsberger and
8    Associates, P.C.
    By: DONNA L. ADELSBERGER, Esquire
9    One Greentree Centre, Suite 201
    Marlton, New Jersey 08053
10
    Counsel for Third-Party Defendant, Robert J. Jones
11
12    Law Offices of McCrink, Kehler and McCrink
    By: MATTHEW McCRINK, Esquire
13    475 Route 73 North
    Berlin, New Jersey 08009
14
    Counsel for Defendants, the Reeds
15
16  ALSO PRESENT:
17    Frank J. Reed, III
18
19
20
21
22
23
24
25

**3**

1           I N D E X
2
3  WITNESS         PAGE
4
5  ROBERT J. JONES
6
7    By MR. McCRINK   4, 102
8    By MR. RESNICK   100
9
10      E X H I B I T S
11
12 NUMBER   DESCRIPTION   PAGE
13 P-1   Documents    4
14 P-2   Document    57
15 P-3   Document    65
16 P-4   Document    69
17 P-5   Document    75
18 P-6   Document    84
19
20
21
22
23
24
25

**4**

1      (Whereupon, the deposition
2      commenced at approximately 1:40
3      p.m.)
4    ...Robert J. Jones, working for First Jersey
5  Appraisal Group in New Jersey, having been first duly sworn
6  by a Notary Public within the State of New Jersey, was
7  examined and testified under oath as follows:
8      EXAMINATION
9      (Whereupon, a document was
10     marked for identification as
11     Exhibit P-1.)
12   MR. McCRINK:  My client is standing,
13 because he has back issues.  So, it is more
14 painful for him to sit than stand.
15   All right.
16 BY MR. McCRINK:
17   Q   Good morning -- or, actually, good
18 afternoon, I guess.
19     Sir, a couple of procedural questions
20 before we start.
21     Have you ever been deposed before?
22   A   No.
23   Q   All right.  And I will just go through a
24 little background, then, and we'll start.
25     Even though we are in an informal

4c73fe10-60fc-48ba-875c-3a0ef0cb6542

Jacobs v. Reed, et al.
Robert T. Jones

25 (Pages 97 to 100)

97

1   the market area?
2      A   Yes, sir.
3             (Whereupon, a brief discussion
4             was held off the record.)
5   BY MR. McCRINK:
6      Q   Are you familiar with Robert M. Sappio of
7   Real Estate Appraisal Consulting?
8      A   Yes, sir.
9      Q   Did you feel that they are a reliable
10  appraisal firm?
11     A   I never had them appraise anything of
12  mine, so I wouldn't know.
13     Q   Do you have any reason to believe that
14  they are not competent appraisers?
15     A   As evidence by him doing an appraisal he
16  is not under licensure to do, yeah; I would say that
17  is unethical.
18     Q   Okay.  And you made reference to Peter M.
19  McCafferty?
20     A   Yes, sir.
21     Q   I'm looking, and I assume it is in here
22  somewhere, it is probably a CV.
23            Here's a Real Estate Appraiser Board
24  Licensed Appraiser, Licensed Residential Appraiser
5   that is attached here.

98

1             And is it your testimony, here,
2   today, that that certification limits him to
3   properties under $1 million?
4      A   Yes, sir.
5      Q   All right.  Now, do you know if he has any
6   other certifications?
7      A   Not indicated in that appraisal.
8      Q   But do you know if he has any other
9   certifications?
10     A   No.  I don't.
11     Q   But if he did and he had other
12  certifications, that may very well qualify him from
13  this, correct?
14     A   Not under the statement, scope of practice
15  law.
16     Q   And the licensed required for this is,
17  again, what?
18     A   Certified residential, or certified
19  general.
20     Q   Okay.  Interesting.  I take it you don't
21  know this gentleman?
22     A   I do not.
23     Q   Have you, as a result of this litigation,
4   had occasion to speak to Mr. McCafferty, or anyone
25  from Robert Sappio Appraisal that you know of?

99

1      A   No, sir.
2      Q   In doing this appraisal, did you check the
3   fire insurance value of the premises?
4      A   No, sir.
5      Q   Are you aware that Cumberland Mutual Fire
6   Insurance Company had this property valued?
7      A   No, sir.
8      Q   Did you ever ask Mr. Reed for any of that?
9      A   No, sir.
10     Q   What did you value the land value at?
11     A   $450,000.
12     Q   So, that would mean that the building was
13  worth a million five?
14     A   Approximately.
15     Q   Okay.  When was this home built, again?
16     A   I have its actual age; it is approximately
17  one year.  So, go back to 6 -- 2006.
18     Q   And that information came from?
19     A   I don't recall.  Perhaps from the Trend
20  MLS System.  That comes up in my generic search.
21     Q   So you took it off the MLS system?
22     A   Not the MLS system, the MLS tax records.
23     Q   The tax record on the MLS system?
24     A   Yes.
25     Q   Gotcha.  Who creates that, by the way?

100

1      A   I don't know.
2      Q   Would you believe that it was created by
3   the MLS?
4      A   I don't understand that question.
5      Q   Do you believe that the MLS created the
6   MLS system that you referenced?
7      A   I assume they did.
8      Q   Okay.  Do you know where they got their
9   data?
10     A   I don't know.
11     Q   Do you know whether or not this data is on
12  the MLS listing form?
13     A   I do not.
14     Q   Okay.  All right.
15            (Whereupon, a brief recess was
16            taken.)
17  BY MR. RESNICK:
18     Q   Sir, I represent Scott Jacobs and Miriam
19  and Traci Jacobs.
20            I'm going to ask you a couple of
21  questions.
22            To this date, have you ever
23  communicated with Scott, Traci or Miriam Jacobs?
24     A   No, sir.
25     Q   Have you ever received any communications

4c73fe10-60fc-48ba-875c-3a0ef0cb6542

Jacobs v. Reed, et al.
Robert T. Jones

26 (Pages 101 to 104)

---

**101**

1  from them, whether it be oral or written?
2      A   No, sir.
3      Q   How about their broker in this, Holly
4  Donohue from Prudential Fox, have you ever had any
5  communications with her, be it oral or written,
6  concerning this transaction?
7      A   To the best of my recollection, no.
8      Q   How about the Jacob's attorney in this
9  matter, for the transaction, Edward Hovatter, have
10  you had any conversations with him?
11      A   No.
12      Q   He is with the Law Firm Sherman,
13  Silverstein, Kohl, Rose and Podolsky, have you ever
14  had any discussions with anyone from that law firm
15  concerning this transaction?
16      A   No, sir.
17      Q   Have you -- did you ever read the -- any
18  of the amendment to the Contract of Sale in this
19  matter?
20      A   I have.  I read through it after receiving
21  the lawsuit.
22      Q   Okay.  So, at the time -- just so I am
23  clear -- at the time that you generated the
24  appraisal report, you had not read the amendment to
5  the Contract of Sale?

---

**102**

1      A   No, sir.
2      Q   Okay.  I don't have anything else.
3  BY MR. McCRINK:
4      Q   One question.  As a result of my worthy
5  opponent's questions, have you had occasion to speak
6  to anyone as regards to this litigation, other than
7  your counsel?
8      A   In general conversations at all?
9      Q   In any conversations, yes.
10      A   Absolutely.
11      Q   To whom have you spoken?
12      A   My wife, my family, fellow appraisers.
13      Q   Okay.  You did not speak to the appraisers
14  who did the other appraisals?
15      A   No, sir.
16      Q   And you did not speak, and I'm going to
17  give you a time frame now, from the time of this
18  appraisal to the time of this lawsuit, did you have
19  occasion to speak, at any time to, either, Mr. or
20  Mrs. Reed and/or any member of their family?
21      A   Mr. Reed had contacted me, via phone,
22  several times.  Time frame exactly; I don't recall.
23      Q   Would it have been before this litigation
4  began?
5      A   Oh, yes, sir.

---

**103**

1      Q   Would it have been after the appraisal was
2  done?
3      A   It was after the appraisal inspection, and
4  I do not recall, exactly, if it was after the
5  appraisal had been submitted.
6      Q   So, it may have been before, or it may
7  have been after; you are not sure?
8      A   I don't -- I don't recall, exactly.
9      Q   So, after you did the appraisal
10  inspection, he called you and spoke to you, or you
11  called him?
12      A   He called me regarding non-appraisal
13  business.
14      Q   And what was that non-appraisal business?
15      A   Reading a Disney vacation interest
16  purchase that he was inquiring me about.
17      Q   Why would he talk to about Disney?
18      A   It had come up that day when we were doing
19  the inspection, and I own a real estate interest
20  down there, and he was also investigating it.
21      Q   How did he become aware that you owned a
22  real estate investment in the Disney area?
23      A   It just came up in conversation.  He had a
24  lot of Disney memorabilia.
25      Q   That was part of that general conversation

---

**104**

1  that you had when you were out there, correct?
2      A   Yeah.  When I was speaking to Mr. Reed.
3      Q   How long did you talk to him?  When you
4  were out speaking, how long did you talk to him?
5      A   It was a big house; I was there for
6  awhile.
7      Q   Over an hour?
8      A   Certainly.
9      Q   Over two hours?
10      A   I would say over an hour, under two hours.
11      Q   Did he seem like a friendly guy?
12      A   Yes, sir.
13      Q   Likeable guy?
14      A   Absolutely.
15      Q   Did you like him?
16      A   Yes, sir.
17      Q   Did you want to help him?
18      A   Did not enter into my thinking.
19      Q   But you were aware, when you talked to him
20  when you were doing the appraisal, that there was a
21  mortgage contingency, correct?
22      A   I'm -- I can't commit that I committed the
23  contract to memory, but I make a general assumption
24  that whenever there is an appraisal, there is some
25  form of mortgage commitment.

4c73fe10-60fc-48ba-875c-3a0ef0cb6542

# EXHIBIT N

SHERMAN SILVERSTEIN KOHL ROSE & PODOLSKY, P.A.
Jeffrey P. Resnick, Esquire
Leily Schoenhaus, Esquire
Fairway Corporate Center
4300 Haddonfield Road
Fairway Corporate Center - Suite 311
Pennsauken, New Jersey 08109
Telephone: (856) 662-0700
Facsimile: (856) 488-4744
*Attorneys for Plaintiffs Scott and Traci Jacobs, husband and wife, and Miriam Jacobs*

| | |
|---|---|
| SCOTT JACOBS AND TRACI JACOBS, husband and wife, and MIRIAM JACOBS <br><br> Plaintiffs, <br><br> v. <br><br> FRANK J. REED, III AND CHRISTINA A. REED, husband and wife, <br><br> Third -Party Plaintiffs, <br><br> v. <br><br> FIRST JERSEY APPRAISAL GROUP; ROBERT J. JONES; COMMERCE BANK, N.A.; JOHN DOES 1-10; AND JOHN DOE CORPORATIONS 1-10, <br><br> Third -Party Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION-BURLINGTON COUNTY <br><br> Docket No. BUR-L-1418-08 <br><br> Civil Action |

## **AFFIDAVIT OF SCOTT JACOBS**

I, Scott Jacobs, of legal age and of sound mind, hereby say, state, and aver as follows:

1.     I make this Affidavit based upon my personal knowledge as a plaintiff in this matter.

2.     At no point prior or subsequent to entering real estate transaction regarding property located at 817 Matlack Drive, Moorestown, New Jersey (the "Property") with the

defendants did I have any communication or make any agreement, explicit or implicit, with my wife, Traci Jacobs, or my mother, Miriam Jacobs, in connection with depriving defendants of the benefit of the sale of the real property.

3.    At no point prior or subsequent to entering the real estate transaction did I determine that I could not perform my obligations under the contract.

4.    Having received the Appraisal which valued the Property in an amount less than the purchase price, we elected to terminate the Contract of Sale with the defendants, as we were entitled to do under the Contract.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.


Dated: _5/6/09_                                    Scott Jacobs