**Exhibit W**

PREPARED BY THE COURT

FILED WITH THE COURT

JUL 0 6 2009

KAREN L. SUTER, J.S.C.

| | |
|---|---|
| SCOTT JACOBS AND TRACI JACOBS, h/w, and MIRIAM JACOBS,<br><br>Plaintiffs,<br><br>v.<br><br>FRANK J. REED, III AND CHRISTINA A. REED, h/w<br><br>Defendants/Third-Party Plaintiffs,<br><br>v.<br><br>FIRST JERSEY APPRAISAL GROUP; ROBERT J. JONES; COMMERCE BANK, N.A.; JOHN DOES 1-10; AND JOHN DOE CORPORATIONS 1-10,<br><br>Third-Party Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION BURLINGTON COUNTY<br><br>DOCKET NO.: BUR-L-1418-08<br><br>OPINION GRANTING SUMMARY JUDGMENT TO PLAINTIFFS AND ON COUNTS 1-6 OF DEFENDANTS' COUNTERCLAIM<br><br>Argued June 12, 2009;<br>Written Decision Issued July 6, 2009. |

Jeffrey P. Resnick, Esq., Sherman Silverstein Kohl Rose & Podolsky, P.A. for Plaintiffs

Matthew R. McCrink, Esq., McCrink, Kehler & McCrink, for Defendants/Third-Party Plaintiffs

SUTER, J.S.C.

Plaintiffs Scott Jacobs, Traci Jacobs and Miriam Jacobs filed this motion seeking summary judgment in their favor as to affirmative claims set forth in plaintiff's Complaint, and Counts 1-6 of the defendants' Counter-Claim. The court has reviewed the papers submitted as well as those on file and heard oral argument. For the reasons set forth below, the court holds that plaintiffs Scott Jacobs, Traci Jacobs, and Miriam Jacobs' motion for summary judgment is GRANTED on their complaint and on Counts 1-6 of the defendants' counterclaim.

## FACTS

This action arises out of a failed real estate transaction. On or about December 8, 2007, plaintiffs Scott and Traci Jacobs entered into a contract to purchase a home in

Moorestown, New Jersey, for $2,040,000 from defendants Frank J. Reed, III and Christina A. Reed. Plaintiffs tendered a deposit in the amount of $50,000, which was placed into an interest bearing escrow account held by defendants' realtor.

Pursuant to the Contract, the plaintiff-buyers were required to "use their best efforts to obtain" a mortgage commitment within seven days after the attorney review period. Pltfs' Ex. A., ¶ 9. This paragraph provided that "[I]n the event the mortgage commitment is not delivered by the specified date, or any extended date permitted by the Seller, this Contract shall be deemed null and void. In that event, the deposit monies paid by the Buyer, shall be returned to the Buyer unless failure to obtain the mortgage commitment is the result of the buyer's negligence or intentional conduct or failure to diligently pursue the mortgage application." ¶ 9.

A Rider to Contract of Sale (the "Rider") dated December 18, 2007 was executed. Pltf's Ex. B. The Rider, among other things, included plaintiff Miriam Jacobs as an additional buyer of the property, and contains the following provision:

> Paragraph 42 of the Contract (Additional Contract Provisions) shall be amended and restated as follows:
>
> B. . . . Buyer's obligation to purchase the property shall be contingent upon the Lender's appraisal being equal to or greater than the Purchase Price. In the event that the Lender's appraisal is less than the Purchase Price, the Buyer shall be entitled to cancel the Contract upon written notice to the Seller and the Seller's agent on or before the Mortgage Commitment Date whereupon the deposit shall be returned to Buyer and neither party shall have any further liability or obligation to the other hereunder. [Id. at ¶ 7].

The Rider also provides that the "Seller's sole and exclusive remedy in the event of Buyer's default in the Contract, shall be to retain the deposit as complete and liquidated damages . . ." Id. at ¶ 10.

Plaintiffs timely sought to obtain a mortgage from third-party defendant Commerce Bank, N.A. ("Commerce").[1] As part of the loan process, Commerce retained First Jersey Appraisal Group to appraise the property. Plaintiffs had no communication

---

[1] There is no issue raised that the application was untimely or incomplete.

2

with the appraiser. On January 4, 2008, plaintiffs' counsel received a Statement of Credit Denial Termination or Change from Commerce's senior loan officer advising that plaintiffs' request for the loan was rejected because the value or type of collateral was not sufficient for the loan. Pltf's Ex. D. Plaintiffs also received a copy of the Appraisal of Real Property (the "Appraisal") prepared for Commerce by third-party defendant Robert J. Jones, establishing the value of the property at $1,950,000. Pltf's Ex. E. Plaintiffs allege that Commerce further advised that a second "field review" occurred following the Appraisal (on January 14, 2008) to confirm the appraised value, and that this field review was consistent with the appraised value of $1,950,000. Pltf's Ex. F.

On January 7, 2008, plaintiff's counsel sent defendants' counsel a letter providing him with Commerce's Denial, together with Commerce's Appraisal and a notice of termination of the Contract, since the appraisal price was less than the contract price. Pltf's Ex. G. Plaintiffs' counsel asked for written authorization allowing the Deposit held in escrow to be released to plaintiffs pursuant to the Contract. However, the Defendants refused to authorize the release of the Deposit, contending by letter dated January 10, 2008, that Commerce's appraisal was incorrect. Pltf's Ex. H. As noted above, the "field appraisal" on January 14, 2008 confirmed the $1,950,000 appraisal.

On January 28, 2008, and again on February 11, 2008, plaintiffs requested to have their deposit returned to them, contending that any issues the defendants had with the Appraisal were solely between the defendants and Mr. Jones, who conducted the appraisal for Commerce. Pltfs' Ex. I. The escrow holder has refused to release the deposit monies unless directed by the defendants to do so, in accordance with the Contract.

On or about May 7, 2008, plaintiffs filed suit seeking return of the $50,000 deposit. Pltfs' Ex. K. Defendants filed a counterclaim alleging that plaintiffs breached the contract and conspired with Mr. Jones, the appraiser, to cause defendants monetary loss, among other things. Pltf's Ex. L.

Plaintiffs argue that any dispute the defendants may have regarding the errors in the appraisal are solely between the defendants and the other parties, and have no bearing on the determination of the instant motion. Plaintiffs contend that the mortgage commitment was not obtained because the Appraisal valued the property at an amount

3

less than the contract price, and therefore pursuant to the contract, they terminated the contract. Therefore, plaintiffs argue they performed all of their contractual obligations by tendering the deposit to the escrow holder and seeking to obtain a mortgage in good faith and thus their deposit should be returned.

The defendants argue that the plaintiffs did not exercise good faith in attempting to obtain the mortgage commitment because they did not receive an accurate appraisal and did nothing to correct the alleged errors. Defendants argue that the appraisal is incorrect in several areas, including: (1) stating that there was no attic, when the attic is finished with approximately 1,167 square fee of finished space; (2) the residence has fourteen rooms, not twelve as listed in the appraisal; (3) the home has three fireplaces, as opposed to the two listed in the appraisal; (4) the actual square footage of the property for the first and second floor, together with the finished attic of 7,330, not 6,272 as listed on the appraisal; and (5) the "comparable" homes used in the appraisal were not comparable, as one home had only five bedrooms, as opposed to the seven bedrooms in the subject property, and another "comparable" home had only four full bathrooms, as opposed to the seven full baths in the subject property.

Defendants contend that when they noticed these errors, they brought them to the attention of Commerce Bank. Defendants say they waived the January 7, 2008 deadline but at oral argument, it was clear all of this occurred after January 7, 2008.

In connection with refinancing, the defendants arranged for a second appraisal through Commerce Bank. Commerce used a different appraiser. That appraisal on February 21, 2008, valued the property using a sales comparison approach at $2,040,000 and a cost approach at $1,946,169. It corrected for the apparent errors from the first appraisal. (The court notes, however, that the first appraisal did mention the expansion of the third floor). Defendants argue that plaintiffs represented in December 2007 that they would consult other mortgage companies and asked defendants to perform certain work at the property to improve the appraisal. All this was in December 2007, before the first appraisal.

Therefore, the defendants argue that the plaintiffs breached the contract by failing to exercise good faith in attempting to obtain a mortgage commitment, and defendants

4

also allege that the plaintiffs conspired with each other and the appraiser, and aided each other in committing fraud.

## LEGAL DISCUSSION

A motion for summary judgment is governed by R. 4:46-2 of the New Jersey Court Rules. The rule provides that summary judgment shall be "rendered forthwith if the pleading, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment order as a matter of law." R. 4:46-2.

The case of Brill v. Guardian Life Insurance Company of America, 142 N.J. 520 (1995), set forth the standard for a trial court to apply when determining whether an alleged disputed issue should be considered "genuine" for purposes of R. 4:46-2. The Brill court stated that:

> [u]nder this new standard, a determination where there exists a "genuine issue" of material fact that precludes summary judgment requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party are sufficient to permit a rational fact finder to resolve the alleged disputed issue in favor of the non-moving party. [Id. at 540.]

The Brill court further clarifies that, "[if] there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a 'genuine' issue of material fact for purposes of R. 4:46-2." Id. Rather, when the evidence "is so one sided that one party must prevail as a matter of law," the trial court should not hesitate to grant summary judgment. Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)). R. 4:46-5(a) provides that an adverse party may not rest upon the mere allegations or denials of the pleading, but must respond by affidavit setting forth specific facts showing that there is a genuine issue for trial.

Under New Jersey law, the terms of a contract must be given their plain and ordinary meaning. Nester v. O'Donnell, 301 N.J. Super. 198, 2010 (App. Div. 1997). "A writing is interpreted as a whole and all writings forming part of the same transaction are interpreted together." Id. (citations omitted). The court is not free to rewrite a contract or to vary or enlarge the terms for the benefit of one party and to the detriment of the other.

5

Camden Brd. Of Ed. v. Alexander, 181 N.J. 187, 197 (2004) (citing to Standard Refinery Union, Inc. v. Esso Standard Oil Co., 31 N.J. Super. 548, 552 (App. Div. 1954)). When interpreting a contract it is the intent of the parties that govern. Conway v. 287 Corp. Cntr. Assoc., 187 N.J. 259, 269-270 (2006) (citing to Atl. Ne. Airlines v. Schwimmer, 12 N.J. 293, 301-302 (1953)). When discerning the intent of the parties, the court is to examine the plain language of the contract, the surrounding circumstances and the purpose of the contract. Highland Lakes Country Club & Cmty. Ass'n v. Franzino, 186 N.J. 99, 115-116 (2006).

In Davis v. Strazza, 380 N.J. Super. 476 (App. Div. 2005), defendants agreed to buy plaintiff's property and placed a $25,000 deposit in escrow. The contract was contingent upon the defendants obtaining a conventional mortgage at a prevailing rate of interest. Defendants were able to obtain such a mortgage, however the mortgage was contingent upon the defendants selling two properties they owned. The mortgage company ultimately advised the defendants that the mortgage commitment was cancelled because the properties "required to be sold will not be sold." Id. at 479. The plaintiffs refused to consent to the termination of the contract agreement, and brought suit. The Appellate Division found that the trial court did not err in granting summary judgment to the defendants because evidence before the trial court was so "one-sided" that there was no issue of fact as to whether defendants acted in good faith in endeavoring to sell the properties. Id. at 486. In that case, the defendants reduced their sale price during contract negotiations, agreed to treat termite infestations, repair any termite damage and make certain other repairs.

Similarly, summary judgment should be granted because there are no issues of fact here. The contract of sale provided that the buyers would use their best efforts to obtain a mortgage. There is no issue raised by the defendants that the plaintiffs failed to timely make an application for a mortgage and provided all the information that the mortgage company requested. Thus, there is no genuine issue of fact that they used their best efforts to obtain a mortgage commitment. Under the contract, the plaintiffs had until January 7, 2008 in order to obtain a mortgage commitment. Commerce Bank advised them on January 4, 2008 that they would not be receiving this commitment because the appraisal did not equal or exceed the contract price. Under paragraph 10 of the contract,

if the mortgage commitment is not delivered by a specified date or any extended date permitted by the seller, the contract is deemed null and void. In that event, the deposit monies paid by the buyers, in this case the plaintiffs, shall be returned to the buyer (plaintiffs) unless the failure to obtain the mortgage commitment is the result of the buyers' negligence or intentional conduct or failure to diligently pursue the mortgage application. There are no facts here to support intentional conduct on the part of the plaintiffs.

On January 4, 2008, Plaintiffs were advised that their mortgage commitment was being denied because of the appraisal. Defendants contend that there were errors with respect to the appraisal, but none of those errors were brought to the attention of the plaintiffs prior to January 7, 2008. By January 7, 2008 if they had not terminated the contract, plaintiffs would not be able to obtain a refund of their deposit. Thus, they terminated the contract, as was their right, on January 7, 2008. The defendants found out about the appraisal and the termination after January 7, 2008. Although they offered to extend the mortgage commitment period, it was clear form the material submitted and oral argument that that extension offer was made after January 7 once the plaintiffs had terminated the contract.

The contract rider provided the buyers (plaintiffs in this instance) the ability to obtain their deposit in the event that the appraisal was not equal or greater than the purchase price. That provision expressly provides that in the event the appraisal is less than the purchase price, the buyer shall be entitled to cancel the contract upon written notice to the seller and seller's agent on or before the mortgage commitment date, which in this case was January 7, 2008. Whereupon under this contract, the deposit "shall be returned" to the buyer and neither party shall have any further liability or obligation to the other hereunder. Thus, once the buyers, the plaintiffs herein, knew that the appraisal had come in under the purchase price, they exercised their ability under the contract to terminate the contract.

The field appraisal done by Commerce came to the same appraisal value. According to the records, the field appraisal was done January 14, 2008 which was after the date that the plaintiffs could cancel. Defendants contend that the second appraisal, done in February 2008, raises factual issues because they contend that appraisal was

7

Pg 9 of 11

accurate and not the first appraisal conducted by Robert J. Jones for the First Jersey Appraisal Group. However, there are no facts presented to show that plaintiff consented to this appraisal before January 7, 2008. There is nothing in the contract that indicates that if there is a dispute about the appraisal, that this constitutes a lack of "best efforts" on the part of plaintiff or that this would automatically extend the mortgage commitment date or that it would be a basis for the defendants to refuse to return the deposit monies. The fact that there may be an issue between the first appraisal and the second appraisal is an issue that relates to Commerce Bank and the defendants rather than to the plaintiffs' motion for summary judgment.

The court cannot make a better or different contract for the parties than the parties themselves created. This contract expressly authorized the buyer to cancel the contract by giving written notice to the seller, which was done, if the appraisal was less than the purchase price. Because there is no issue about the plaintiffs exercising best efforts to obtain a mortgage commitment and they exercised their rights under the express contract, plaintiffs are entitled to summary judgment on their complaint. The court does not find any genuine issues of material fact that would preclude summary judgment.

Defendants raised for the first time in oral argument that summary judgment was premature. It is true that the discovery end date is just days away. However at oral argument, defendants' counsel could not articulate how the discovery between the plaintiff and the defendant was incomplete and thus, the court does not find that the plaintiffs' summary judgment motion should be rejected merely because it was filed shortly before the close of discovery.

Plaintiffs also argue that summary judgment should be granted in their favor as to counts 1 to 6 of Defendants Counterclaim. Counts 1 through 3 allege breach of contract by each of the plaintiffs. Defendants allege they suffered damages because the plaintiffs intentionally or negligently failed to deliver the mortgage commitment by January 7, 2008, and failed to close on February 7, 2008.

As discussed above, no genuine issues of material fact remain regarding whether plaintiffs breached the Contract by failing to use "their best efforts" to obtain a mortgage commitment. Therefore, summary judgment is granted as to counts 1 to 3 of defendants' counterclaim.

Counts 4 through 6 allege fraud, civil conspiracy, and aiding and abetting fraud. Defendants allege that the plaintiffs knowingly, willingly, and fraudulently deprived the Defendants of the benefit of the sale of the real property through their acts and omissions, including but not limited to dismissing the errors in the appraisal, failing to have the initial appraisal reviewed and revised, ensuring that the contract for sale would be rendered unenforceable, thereby ensuring that the defendants would not receive the benefit of the performance of the contract, and refusing to acknowledge the second, accurate appraisal.

The elements of an equitable fraud claim are: (1) a material misrepresentation of a presently existing or past fact; (2) an intention that the defendants rely on it; (3) reasonable reliance thereon by the defendants; and (4) resulting damages. Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997). Common-law legal fraud requires the same four elements as equitable fraud, in addition to a scienter element which requires the knowledge or belief by the defendant of the material misrepresentation's falsity. Jewish Ctr. of Sussex County v. Whale, 86 N.J. 619, 624 (1981). A fraud claim must be plead with particularity pursuant to R. 4:5-8(a), and must be proven by clear and convincing evidence. Barsotti v. Merced, 346 N.J. Super. 504, 520 (App. Div. 2002).

To establish a civil conspiracy, a plaintiff must prove "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, a principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, together with an act that results in damage." Weil v. Express Container Corp., 360 N.J. Super. 599, 614 (App. Div. 2003). The plaintiff must establish that "there was one plan and that its essential scope and nature was known to each person who is charged with responsibility for its consequences." Id.

Additionally, civil liability for aiding-abetting "focuses on whether a defendant knowingly gave substantial assistance to someone engaged in wrongful conduct, not on whether the defendant agreed to join the wrongful conduct." Podias v. Mairs, 394 N.J. Super. 338, 353 (App. Div. 2007) (internal citations and quotations omitted).

Here, the defendants have failed to identify any alleged misrepresentation of fact made by the plaintiffs, and there is no evidence that the plaintiffs made such a statement

9

with the intention that the defendants rely on it. Additionally, the Defendants have not set forth any facts showing that the plaintiffs had an agreement and acted in concert to commit an unlawful act, or that the plaintiffs gave substantial assistance to someone engaged in wrongful conduct. Therefore, summary judgment in the plaintiffs' favor as to counts 4 to 6 of defendants' counterclaim is granted.

For the foregoing reasons, the court now holds that plaintiffs Scott Jacobs, Traci Jacobs, and Miriam Jacobs' motion for summary judgment is GRANTED on their complaint and on Counts 1 through 6 of the defendants' counterclaim.

*Karen L. Suter*

Karen L. Suter, J.S.C.