## Exhibit 9

## Exhibit 3

**Delehey Declaration**



EXHIBIT

9

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## DECLARATION OF LAUREN GRAHAM DELEHEY IN SUPPORT OF RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO PROOFS OF CLAIM FILED BY FRANK REED AND CHRISTINA REED PURSUANT TO SECTION 502(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3007

I, Lauren Graham Delehey, hereby declare as follows:

1.    I serve as Chief Litigation Counsel for the ResCap Liquidating Trust (the "Liquidating Trust") established pursuant to the terms of the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 6030] in the above-captioned Chapter 11 Cases.[1] During the Chapter 11 Cases, I served as Chief Litigation Counsel in the legal department at Residential Capital, LLC ("ResCap"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors in the above-captioned Chapter 11 Cases (collectively, the "Debtors"). I joined ResCap on August 1, 2011 as in-house litigation counsel.

2.    In my role as Chief Litigation Counsel at ResCap, I was responsible for the management of litigation, including, among others, residential mortgage-related litigation. In connection with ResCap's chapter 11 filing, I also assisted the Debtors and their professional advisors in connection with the administration of the Chapter 11 Cases, including the borrower

---

[1]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Objection (as defined below).

litigation matters pending before this Court.  In my current position as Chief Litigation Counsel

to the Liquidating Trust, among my other duties, I continue to assist the Liquidating Trust and

the Borrower Claims Trust (the "Borrower Trust") in connection with the claims reconciliation

process.[2]  I am authorized to submit this declaration (the "Declaration") in support of the *ResCap*

*Borrower Claims Trust's Objection to Proofs of Claim Filed by Frank Reed and Christina Reed*

*Pursuant to Section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007* (the "Objection").

3.    Except as otherwise indicated, all facts set forth in this Declaration are

based upon my personal knowledge of the Debtors' operations, information learned from my

review of relevant documents and information I have received through my discussions with other

former members of the Debtors' management or other former employees of the Debtors, the

Liquidating Trust's and the Borrower Trust's professionals and consultants.  If I were called

upon to testify, I could and would testify competently to the facts set forth in the Objection on

that basis.

4.    In my current and former capacities as Chief Litigation Counsel to the

Liquidating Trust and ResCap, I am intimately familiar with the Debtors' claims reconciliation

process.  Except as otherwise indicated, all statements in this Declaration are based upon my

familiarity with the Debtors' Books and Records (the "Books and Records"), as well as the

Debtors' schedules of assets and liabilities and statements of financial affairs filed in these

Chapter 11 Cases (collectively, the "Schedules"), my review and reconciliation of claims, and/or

my review of relevant documents.  I or other Liquidating Trust personnel have reviewed and

analyzed the proof of claim forms and supporting documentation filed by the Reeds (defined

---

[2]    The Liquidating Trust and the Borrower Trust are parties to an Access and Cooperation Agreement, dated
December 17, 2013, which, among other things, provides the Borrower Trust with access to the books and
records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in
performing its obligations.

below).  Since the Plan went effective and the Borrower Trust was established, I, along with other members of the Liquidating Trust have consulted with the Borrower Trust to continue the claims reconciliation process, analyze claims, and determine the appropriate treatment of the same.  In connection with such review and analysis, where applicable, I or other Liquidating Trust personnel, together with their professional advisors have reviewed (i) information supplied or verified by former personnel in departments within the Debtors' various business units, (ii) the Books and Records, (iii) the Schedules, (iv) other filed proofs of claim, and/or (vi) the official claims register maintained in the Debtors' Chapter 11 Cases.

5.    In connection with the Proofs of Claim (as defined below) filed by Frank Reed and Christina Reed (together, the "Reeds"), the Liquidating Trust, on behalf of the Borrower Trust, reviewed the Reeds' payment history, the Debtors' internal servicing notes (the "Servicing Notes"), as well as the various pleadings filed in the litigation between the Debtors and the Reeds.

6.    The Reeds filed proofs of claim 3708 and 4759 against ResCap, and proofs of claim 3759 and 4736 against GMAC Mortgage, LLC ("GMACM") (collectively, the "Proofs of Claim"), copies of which are attached to the Objection as Exhibits 1-A, 1-B, 1-C, and 1-D, respectively.

**A.    The FRB Consent Order**

7.    Without admitting fault, the Consent Order Debtors, AFI, and Ally Bank agreed, pursuant to the FRB Consent Order, to develop and implement certain risk management and corporate governance procedures under the guidance of the FRB in order to ensure prospective compliance with applicable foreclosure-related regulations and laws.  Pursuant to the FRB Consent Order, the parties were required to undertake a risk assessment of their mortgage

ny-1138676

servicing operations and were responsible for making improvements to various aspects of their residential mortgage loan servicing business, including, among other things, compliance programs, internal audit, communications with Borrowers, vendor management, management information systems, employee training, and oversight by the boards of directors of ResCap and GMACM. Additionally, pursuant to the FRB Consent Order, GMACM agreed to pay for an extensive, independent file review regarding certain residential foreclosure actions and foreclosure sales prosecuted by the Debtors (the "FRB Foreclosure Review"), and to prepare and submit a detailed report regarding the results of that review. The FRB Consent Order further required that the Debtors remediate any financial harm to borrowers resulting from errors or misrepresentation of the Debtors that the FRB Foreclosure Review uncovers.

8.     Pursuant to the FRB Foreclosure Review requirement, GMACM must "retain one or more independent consultant(s) acceptable to the [Federal] Reserve Bank [of Chicago] to conduct an independent review" of residential mortgage foreclosure actions prosecuted during the period from January 1, 2009 to December 31, 2010 (the "Consent Order Review Period"), as well as foreclosure sales pending or completed during the Consent Order Review Period. The independent consultant is required to review, among other things, whether: (i) the Debtors had properly documented ownership of the promissory note and mortgage (or deed of trust) at the time they initiated a foreclosure; (ii) the foreclosure complied with state and federal law, including the Servicemembers Civil Relief Act; (iii) the procedures followed with respect to non-judicial foreclosures were in accordance with the terms of the mortgage loan and state law; (iv) the foreclosure occurred when the Borrower had a loan modification request under consideration or while the loan was performing under a trial or permanent loan modification; (v) impermissible charges were applied to the Borrower's account; and (vi) any errors or omissions

4

were identified by the independent consultant that resulted in financial injury to the Borrower or owner of a loan.

9.    In early 2013, the Consent Order Regulators began entering into settlements with various Consent Order parties and, in June 2013, a term sheet was executed among the FRB, ResCap and GMAC Mortgage suspending the FRB Foreclosure Review and the Debtors escrowed $230 million as their anticipated settlement amount. Following execution of the term sheet, the Debtors' independent consultant, PwC, conducted a review as to the population of borrowers who may have been eligible to receive payments from the settlement fund as designed, and then provided an initial "IFR Waterfall" to the FRB. The settlement was designed to halt all individual foreclosure file reviews and, instead, provide a payment of some amount, with no determination having been made of actual harm, to each borrower in the final population, *i.e.*, all borrowers being serviced by the Debtors who had been subject to residential mortgage foreclosure actions or proceedings, including residential foreclosure sales, that were pending or occurred at any time during the Consent Order Review Period (the "Eligible Population").

10.    A formal amendment to the Consent Order was executed on July 26, 2013 and the previously escrowed funds were moved into a Settlement Fund outside the Debtors' control. Subsequent to that date, the Debtors provided data from its loan servicing system to an independent consultant and the FRB to finalize the IFR Waterfall, with the independent consultant and the FRB verifying the eligibility and placement of all the borrowers into the IFR Waterfall. Once that was completed, the Debtors provided to Rust Consulting, Inc., as paying agent for the settlement, the specific borrower placement information on November 21, 2013 and the placement of Borrowers into the IFR Waterfall was deemed final. The paying agent is now

in process of distributing the funds in the Settlement Fund to borrowers in accordance with a distribution plan implemented by the FRB.

        11.    The payment that the Reeds received in respect of the FRB settlement does not indicate or represent any determination or acknowledgement by the Debtors that claims made by the Reeds have any merit or that they suffered any harm at the hands of the Debtors. The Reeds were included in the FRB settlement population because they were subject to a foreclosure proceeding during the Consent Order Review Period.

        12.    The Debtors' role in the FRB Foreclosure Review settlement was limited to providing servicing system data to the independent consultant with respect to the Borrowers who, given the time period in which their foreclosure actions were pending, may have been eligible to be included in one of the various "potential harm" categories in the IFR Waterfall. After the Debtors provided that data, the independent consultant and the FRB finalized the Eligible Population and the placement of each eligible Borrower in the IFR Waterfall potential harm categories. The FRB then determined payment amounts for each such category. The Reeds were determined to be eligible to receive $500 as a settlement payment, the lowest payout provided for in the IFR Waterfall. Rust Consulting, Inc. distributed the remediation settlement payment to the Reeds on January 27, 2014.[3]

        13.    The Reeds submitted a "Request for Review" of the Reed Loan in the Debtors' foreclosure review process. The Reed Loan was classified as a "Foreclosure in Process" and based on their placement in the IFR Waterfall, the Reeds were compensated $500 on account of their loan. The Debtors have complied with their obligations pursuant to the settlement entered into with the FRB, including any obligations owed to the Reeds.

---

[3]    The settlement payments were first issued on January 27, 2014. The lowest amount of such payments is $500, and the Reeds' placement in that IFR Waterfall category means that there was no indication of even potential harm suffered by the Reeds that would have placed them into a higher payout category.

ny-1138676

**B.      Litigation Underlying the Reeds' Proofs of Claim**

          14.      The Reeds are Borrowers under a loan (the "Reed Loan") evidenced by a

note in the principal amount of $1,000,000.00 executed on May 31, 2006, in favor of Metrocities

Mortgage, LLC, which is secured by a mortgage on real property located at 817 Matlack Drive,

Moorestown, New Jersey.  GMACM began servicing the mortgage loan on June 27, 2006, but at

no time owned the loan at issue.  GMACM continued servicing the loan until the servicing

transfer to Ocwen Loan Servicing, LLC ("Ocwen") on February 15, 2013.  Ocwen subsequently

transferred servicing to 21st Mortgage Corp. on October 1, 2013.  Residential Funding

Company, LLC ("RFC") acquired the loan on December 30, 2009, and transferred ownership of

the loan to 21st Mortgage Corp. on February 6, 2013.

          15.      In February 2008, the Reeds defaulted under the Reed Loan based upon

their failure to timely make payments for a period of several months.  GMACM, prior to mailing

the NOI, sent the Reeds at least one letter notifying them that their mortgage payments were

delinquent and remained due and owing.  See, e.g., Notice of Default Letter, annexed hereto as

Exhibit A.  On May 19, 2008, GMACM filed a foreclosure complaint (the "Foreclosure

Complaint") against the Reeds (the "Foreclosure Action") in the Superior Court of New Jersey,

Chancery Division (the "Chancery Division Court").  See Foreclosure Complaint, a copy of

which is annexed hereto as Exhibit B.  Prior to filing the Foreclosure Action, it was the position

of the Debtors that prior to filing the Foreclosure Complaint, GMACM mailed an NOI to the

Reeds pursuant to FFA requirements; however, GMACM, as explained in the Foreclosure

Action, was unable to locate the NOI or the certified mail receipt.  Nevertheless the Debtors had

a good faith basis for filing the Foreclosure Action.  The Reeds filed an answer (the "Answer")

7

to the Foreclosure Complaint on June 24, 2008. See Answer, a copy of which is annexed hereto as Exhibit C.

16.    In July 2008, GMACM filed a motion for summary judgment (the "Summary Judgment Motion") in the Foreclosure Action seeking (i) to strike the Answer, (ii) entry of a default and (iii) transfer of the Foreclosure Action to the foreclosure unit. See Summary Judgment Cross-Motion annexed hereto as Exhibit D. In response, the Reeds filed a cross-motion for summary judgment (the "Summary Judgment Cross-Motion") seeking the dismissal of the Foreclosure Complaint for failure to provide a proper notice of intent ("NOI") as required under the New Jersey Fair Foreclosure Act ("FFA"). See Summary Judgment Cross-Motion, a copy of which is annexed hereto as Exhibit E. GMACM sought to correct any noncompliance with the FFA by serving an NOI during the Foreclosure Action.

17.    On February 9, 2009, the Chancery Division Court denied the Summary Judgment Motion and granted the Summary Judgment Cross-Motion (the "Order Granting Cross-Motion"). A copy of the Order Granting Cross-Motion is attached to the Proofs of Claim as "Exhibit A". Specifically, the Chancery Division Court determined that the Foreclosure Complaint should be dismissed without prejudice because GMACM could not prove that it delivered a NOI in accordance with N.J.S.A. 2A:50-56. See Order Granting Cross-Motion. GMACM sought to correct any noncompliance with the FFA by serving an NOI during the Foreclosure Action, but the Chancery Division Court did not approve this remedy. This matter was not dismissed until August 9, 2013. See Docket for the Foreclosure Action, a copy of which is annexed hereto as Exhibit F.

8

18.    On May 10, 2010, the Reeds filed a separate complaint (the "Reed Complaint") against GMACM, Residential Funding Corp.,[4] and unnamed defendants who allegedly were employees or agents of the other two defendants (the "Reed Action") in the Superior Court of New Jersey, Law Division (the "Law Division Court"). See Reed Complaint, a copy of which is attached to the Proofs of Claim as "Exhibit D." The claims asserted against GMACM in the Reed Action are predicated on the Foreclosure Action and GMACM's alleged failure to comply with NOI requirements of the FFA; however, the Reeds' claims did not address the merits of the Foreclosure Action. See id. Specifically, the Reeds asserted claims against GMACM for negligence, breach of contract, and estoppel. See id. GMACM filed a motion to dismiss (the "Motion to Dismiss") the Reed Complaint, which the Law Division Court denied in July 2010 (the "Order Denying the Motion to Dismiss"). See Order Denying Motion to Dismiss, a copy of which is annexed hereto as Exhibit G.

19.    The Reeds were permitted to amend the Reed Complaint, and on January 6, 2012, they filed an amended complaint (the "Amended Reed Complaint," a copy of which is attached to the Proofs of Claim as "Exhibit E"). In addition to the claims set forth in the Reed Complaint, the Amended Reed Complaint added purported claims for economic and non-economic losses stemming from the Foreclosure Action, punitive damages and consumer fraud. See generally, Amended Reed Complaint.

20.    In early 2012, the Reeds sought entry of an order staying the Reed Action to allow time for participation in the Independent Foreclosure Review or, in the alternative, entry of an order granting leave to voluntarily dismiss the Reed Action without prejudice (the "Motion to Stay or Dismiss"). See Dismissal Order (defined below), a copy of which is annexed to the Delehey Declaration as Exhibit H. On February 9, 2012, the Law Division Court entered an

---

[4]    Residential Funding Corp. is now known as Residential Funding Company, LLC, a Debtor entity.

ny-1138676

order (the "Dismissal Order") granting the Reeds leave to voluntarily dismiss the Reed Action without prejudice.

## C.    Debtors' Servicing Notes Relating to the Reed Loan

21.    According to the Debtors' servicing notes,[5] GMACM never recommended that the Reeds pay the entire principal balance and interest on their mortgage. The servicing notes are the only business records that would show whether GMACM ever made such a recommendation. Furthermore, the servicing notes show that Mr. Reed even met with a Hope Now representative in person on or about July 26, 2008, subsequent to which Mr. Reed indicated that he was not interested in a loan workout arrangement to keep his property, but only enough time to sell such property. In addition, the servicing notes demonstrate that the Debtors sent the Reeds a loss mitigation package, and approved them for a loan modification on a number of occasions; however, the Reeds never executed the loan modification papers.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  May 29, 2014


/s/ Lauren Graham Delehey
Lauren Graham Delehey
Chief Litigation Counsel for ResCap
Liquidating Trust

---

[5]    In order to protect potentially private information, Exhibit I is only being produced to the Court, the U.S. Trustee, and the Reeds, and will not be publicly filed on the docket with the other Exhibits included in the Objection.

ny-1138676

## Exhibit A

**Notice of Default Letter**

03/13/08


FRANK J REED


817 MATLACK DRIVE


MOORESTOWN NJ 08057



RE: Account Number    0601613576

   Property Address   817 MATLACK DRIVE


            MOORESTOWN NJ 08057


Dear FRANK J REED



Disclosure: If you are already working with the Loss Mitigation

department on a special forbearance or other foreclosure

prevention alternatives, this letter does not apply to you.

However, you may want to take advantage of the Homeownership

Counseling information contained within this letter.


Your account is in default under the terms of the mortgage.

The mortgage payments of $    10615.60 for the months

of 02/01/08 through 03/01/08, are past due. If you have

already mailed these payments, please accept our thanks.


Due to the unresolved delinquency on your account, you may be

experiencing temporary or permanent financial problems that led

to the default. Your account could soon be referred to

foreclosure if the default is not resolved. We would like to

discuss possible loss mitigation options, which may be available

to you to resolve the delinquency and avoid foreclosure. A brief

description of these options follows.


If you have experienced a temporary loss of income or increase

in expenses and now have sufficient income to make increased

payments, we may be able to work out a REPAYMENT PLAN.


LOAN MODIFICATION: A loan modification capitalizes delinquent

payments into the unpaid principal balance. This may be

completed if you are unable to make temporary increased monthly

payments, yet can still afford your mortgage payments.

03/13/08

Account Number 0601613576

Page Two

SHORT SALE: The investor may accept less than a full payoff when the value of your property has declined.  You must list the property at fair market value and forward any offers, along with estimated closing costs, to our company.  The acceptance of the offer is subject to investor approval.  You may be required to contribute to reduce the total loss.

DEED IN LIEU OF FORECLOSURE: A deed in lieu voluntarily gives back the Deed to the lender to satisfy the debt and avoid foreclosure.  You must have tried to sell the property for 90 days at fair market value.

The collection activity will not stop and the monthly mortgage payments are still due while we evaluate your financial situation.  Not all options may be available to you and we cannot guarantee you will qualify for any of the loss mitigation options.

In order to be considered for any of these loss mitigation

options, you may be required to provide us with financial

information.  Please contact us at 800-850-4622 to discuss any of

these loss mitigation options.  For your information, you may

contact a HUD Counseling Agent at 1-800-569-4287.  Toll free TDD

number for the HUD Counseling Agency is 1-800-877-8339.


NOTICE - This is an attempt to collect a debt and any information

obtained will be used for that purpose.  If your debt has been

discharged in bankruptcy, our rights are being exercised against

the collateral for the above-referenced loan, not as a personal

liability.


PLEASE DO NOT SEND US MEDICAL INFORMATION.

As required by law, we are prohibited from obtaining or using

medical information (e.g., diagnosis, treatment or prognosis) in

connection with your eligibility, or continued eligibility, for

credit.  We will not use it when evaluating your request, and it

will not be retained.


Collection Department

Loan Servicing


5014

## Exhibit B

### Foreclosure Complaint

XCZ 102962/rj      **FILED:**
ZUCKER, GOLDBERG & ACKERMAN, LLC
Attorneys for Plaintiff
200 Sheffield Street, Suite 301
P.O. Box 1024
Mountainside, New Jersey 07092-0024
1-908-233-8500

**REC'D & FILED**
**SUPERIOR COURT**
**OF NEW JERSEY**

MAY 19 2008

Christian P. Hgynks
**ACTING CLERK**

| | |
|---|---|
| GMAC MORTGAGE, LLC | SUPERIOR COURT OF NEW JERSEY |
| | CHANCERY DIVISION |
| Plaintiff, | BURLINGTON COUNTY |
| | DOCKET NO. F- *19177-08* |
| vs. | Civil Action |
| Frank J. Reed, III and Christina A. Reed, his wife, and each of their heirs, devisees, and personal representatives, and his, her, their or any of their successors in right, title and interest; Mortgage Electronic Registration Systems, Inc., as nominee for Homecomings Financial, LLC; State of New Jersey; | **COMPLAINT**<br>**FOR**<br>**FORECLOSURE** |
| Defendants. | |

GMAC MORTGAGE, LLC, (hereinafter "plaintiff"), through its servicing agent

located at 1100 VIRGINIA DRIVE, P.O. BOX 8300, FORT WASHINGTON, PA 19034, hereby

says:

### FIRST COUNT

1. On 05/31/2006, Frank J. Reed, III executed to Metrocities Mortgage, LLC a Note (hereinafter "Note") securing the sum of $1,000,000.00, payable on 06/01/2036 with the initial interest rate of 6.3750% per annum.

2. To secure the payment of the Note, Frank J. Reed, III and Christina A. Reed, husband and wife, executed to  Mortgage Electronic Registration Systems, Inc., as nominee for Metrocities Mortgage, LLC, a Mortgage (hereinafter "Mortgage") dated 05/31/2006, and thereby mortgaged to Mortgage Electronic Registration Systems, Inc., as nominee for Metrocities Mortgage, LLC in fee the land hereinafter described (hereinafter "Mortgaged Premises"). Said Mortgage was duly recorded on 09/25/2006, in the OFFICE OF THE CLERK OF BURLINGTON COUNTY, in Mortgage Book 11124, Page 410.  The Mortgage is a Purchase Money Mortgage.

3. The legal description of the Mortgaged Premises is described on the Schedule annexed hereto and made a part hereof.

## SCHEDULE A- Legal Description

ALL the following described property located in the Township of Moorestown, County of Burlington, State of New Jersey:

COMMONLY known as 817 MATLACK DRIVE, MOORESTOWN, NJ 08057.

BEING also known as Lot 2, Block 3803 on the tax map of the Township of Moorestown.

DIMENSION: APPROXIMATELY 185 x 111 x 156 x 53 x 130 x 28
NEAREST CROSS STREET: Situate in the southerly line of Matlack Drive
approximately 580 feet westerly from the westerly line of New Albany Road

The following is a metes and bounds legal description as found in the Mortgage:

BEGINNING at a point in the Southerly right of way line of Matlack Drive (60 feet wide), said point being 580.94 feet Westwardly from the Westerly end of a curve having a radius of 20.00 feet and connecting said line of Matlack Drive with the Westerly right of way line of New Albany Road (66 feet wide); thence

1. South 12 degrees 58 minutes 42 seconds West, 185.00 feet to a point; thence

2. North 77 degrees 04 minute 18 seconds West, 111.42 feet to a point; thence

3. North 14 degrees 38 minutes 30 seconds West, 156.41 feet to a point in said line of Matlack Drive; thence

4. North 75 degrees 21 minutes 30 seconds East, along said line of Matlack Drive, 33.75 feet to a point of curvature; thence

5. Eastwardly and curving to the right with a radius of 270.00 feet, still along said line of Matlack Drive, the arc distance of 130.16 feet to a point of tangency; thence

6. South 77 degrees 01 minute 18 seconds East, still along said line of Matlack Drive, 28.86 feet to the point and place of BEGINNING.

BEING Block 3803, Lot 2 as shown on the "Final Plan of Lots, Machling Farms, Section 3", Filed May 15, 2003 as Map #3821600.

FOR INFORMATION PURPOSES ONLY: BEING known as Lot 2, Block 3803 on the Official Tax Map of Township of Moorestown.

Above description made in accordance with a survey made by Wallace Associates, dated March 10, 2005.

4. On or before the date the within complaint was drafted, the plaintiff herein became the owner of the note and mortgage being foreclosed herein.

5. The Note contained an agreement that if any installment payment should remain unpaid for 30 days after the same shall fall due, the whole principal sum, with all unpaid interest, fees, costs and advances, should, at the option of plaintiff or its representatives or assigns, become immediately due and payable.

6. The obligor(s) has/have failed to make the installment payment due on 02/01/2008, and all payments becoming due thereafter. Therefore the loan has been in default since on or about 03/01/2008.

7. As a result of said default, plaintiff hereby elects and declares that the whole unpaid principal sum due on the Note and Mortgage, along with all unpaid interest, advances, fees and costs, shall be accelerated and is now due and payable.

8. The Note and Mortgage do not contain a prepayment penalty.

9. The following defendants are joined herein because they are either the holder of an instrument or interest appearing of record which affect or may affect the Mortgaged Premises, or because they are the holder of a legal and equitable interest in the Mortgaged Premises which is subordinate to plaintiff's Mortgage lien.

9a. On 05/31/2006 Frank J. Reed, III and Christina A. Reed, husband and wife mortgaged the premises being foreclosed herein to Mortgage Electronic Registration Systems, Inc., as nominee for Metrocities Mortgage, LLC to secure the sum of $414,400.00, which mortgage was recorded 09/25/2006 in Book 11124 of Mortgages for Burlington County, Page 431, which Mortgage was assigned to Mortgage Electronic Registration Systems, Inc., as nominee for Homecomings Financial, LLC which assignment is unrecorded at this time. Mortgage Electronic Registration Systems, Inc., as nominee for Homecomings Financial, LLC is made a party defendant to this foreclosure action by virtue thereof.

9b. The State of New Jersey is made a party defendant to this foreclosure action by reason of the following 4 liens entered in the office of the Clerk of the Superior Court of New Jersey recovered against plaintiff's mortgagors, Frank J. Reed, III and Christina A. Reed.

9b-1

```
                          SUPERIOR COURT OF NEW JERSEY
UDGMENT NUMBER: J-142752-1992              CASE NUMBER: L-21331-87
ATE ENTERED: 12/30/92       DATE SIGNED: 12/01/92
YPE OF ACTION: AUTO NEGL
ENUE: ESSEX

                                        DEBT: $      15,000.00
CREDITOR(S):
     RICHARD EPPS
          ATTORNEY: NICHOLAS STEFANCHIK, JR.
     SAMUEL F. FORTUNATO, COMMISSIONER OF INSURANCE ,ASSIGNEE
DEBTOR(S):
     MARCUS X. HANNAH
          (No Address)
     FRANK REED
          (No Address)
                    ---------------
  04-28-93 ASSIGNED TO SAMUEL FORTUNATO, COMMISSIONER DEPARTMENT OF
          INSURANCE., RECORDED 10-06-93.
                    *** End of Abstract ***
```

9b-2

SUPERIOR COURT OF NEW JERSEY

JUDGMENT NUMBER: DJ-328724-2006
DATE DOCKETED: 12/12/06
TYPE OF ACTION: CERTIF OF DEBT
VENUE: MERCER

DEBT: $        200.00

CREDITOR(S):
        DIV OF MOTOR VEHICLES
            ATTORNEY: PRO SE
DEBTOR(S):
        FRANK M REED ,  DRIVERS LICENSE # = R21632677410772
                    86 HIGHLAND AV, NEWARK, NJ 07104-1107
            ATTORNEY: PRO SE
                    ---------------
                *** End of Abstract ***

9b-3

SUPERIOR COURT OF NEW JERSEY

JUDGMENT NUMBER: PD-154183-2005
DATE ENTERED: 06/16/05
LIEN FOR LEGAL SERVICES
VENUE: MERCER

DEBT: $        50.00

CREDITOR: OFFICE OF THE PUBLIC DEFENDER
DEBTOR(S):
        FRANK M REED
            1ST FL,
                2018 GRIER AV, LINDEN, NJ 07036
            ATTORNEY: PRO SE
                    ---------------
                *** End of Abstract ***

9b-4

SUPERIOR COURT OF NEW JERSEY

JUDGMENT NUMBER: PD-213865-2007
DATE ENTERED: 08/07/07
LIEN FOR LEGAL SERVICES
VENUE: MERCER

CREDITOR: OFFICE OF THE PUBLIC DEFENDER                    DEBT: $        566.00
DEBTOR(S):
     MICHAEL VOLPE
            715 CENTER ST, GARWOOD, NJ 07207
        ATTORNEY: PRO SE
            A/K/A
     FRANK REED
        (No Address)
            A/K/A
     MIKE VOLPE
        (No Address)
                         ----------------
                    *** End of Abstract ***

10.  The following defendants are joined herein because they are the holder of an instrument or interest appearing of record which affect or may affect the Mortgaged Premises which has been paid in full but have not been discharged of record.

NONE.

11.  In the event plaintiff is unable to determine the present whereabouts of defendants, Frank J. Reed, III and Christina A. Reed, his wife, or ascertain if he/she/they is/are presently alive, and as a precaution, plaintiff has joined the following persons as party defendants to this foreclosure action for any lien, claim or interest they may have in, to, or against the mortgaged premises:

> Frank J. Reed, III and Christina A. Reed,  his wife, and each of their heirs, devisees, and personal representatives, and his, her, their or any of their successors in right, title and interest.

12.  Pursuant to the terms of the Note and Mortgage, plaintiff (or its predecessors, successors or servicing agent), reserved the right to pay taxes, municipal charges, or other liens affecting the Mortgaged Premises, which charges or liens are superior to the lien of the Mortgage. When paid by plaintiff (or its predecessors, successors, or servicing agent), these taxes, municipal charges, or other liens, together with interest thereon, are to be added to the amount due plaintiff, whether such advances were made prior to the filing of this action or during its pendency.

13.  Plaintiff has complied with the Fair Foreclosure Act N.J.S.A. 2A:50-53, et seq., by serving the required Notice of Intention to Foreclose at least 30 days in advance of filing of this complaint.

WHEREFORE, the plaintiff demands judgment:

(a)    Fixing the amount due on the Mortgage;

(b)    Barring and foreclosing the defendants and each of them of all equity of redemption in and to the Mortgaged Premises;

(c)     Directing that plaintiff be paid the amount due as provided in the Mortgage, together with interest, fees, costs and advances;

(d)     Adjudging that the Mortgaged Premises be sold according to law to satisfy the amount due to plaintiff on the Mortgage; and

(e)     Appointing a receiver of the rents, issues and profits of the Mortgaged Premises.

## SECOND COUNT

1. Plaintiff hereby repeats, re-alleges, and incorporates the allegations set forth in the First Count of the Complaint, as if set forth herein at length.

2. By the terms of the Note and Mortgage, plaintiff is entitled to possession of the Mortgaged Premises and all appurtenances.

3. The Mortgagor(s) and Obligor(s) named herein has or may claim to have certain rights in the Mortgaged Premises, and by reason thereof, has or have deprived plaintiff of possession of the Mortgaged Premises.

WHEREFORE, plaintiff demands judgment against the defendants, except those protected by N.J.S.A. 2A:18-61.1, et. seq.:

(a)     for possession of the Mortgaged Premises in favor of plaintiff or its assignee or designee, which right to possession shall be transferred to the successful purchaser at the foreclosure sale;

(b)     for costs.

## CERTIFICATION PURSUANT TO RULE 4:5-1

I hereby certify that the matter in controversy is not the subject of any other Court proceeding or arbitration and that, to the best of my knowledge and belief, no other parties need be joined at this time, and that no other proceedings are contemplated.

## CERTIFICATION PURSUANT TO RULE 4:64-1(a) AND RULE 1:5-6(c)(1)(E)

I hereby certify that a title search of the public record has been received and reviewed

prior to the filing of this action.

ZUCKER, GOLDBERG & ACKERMAN, LLC
Attorneys for Plaintiff

By: _____
LEONARD B. ZUCKER
MEMBER OF THE FIRM

DATED: May 16, 2008

## Exhibit C

**Answer**

*FRANK J REED III, Pro Se*
817 Matlack Drive
Moorestown, NJ 08057

| | |
|---|---|
| GMAC Mortgage LLC | SUPERIOR COURT OF NEW JERSEY |
| | BURLINGTON COUNTY |
| Plaintiff(s), | CHANCERY DIVISION |
| v. | |
| | DOCKET # F- 19177-08 |
| FRANK J. REED, III, et. al. | |
| | CIVIL ACTION |
| Defendant(s), | **ANSWER** |

Frank Reid III, *Pro Se*, hereinafter ("defendant") hereby says:

### FIRST COUNT

1.  Admitted.

2.  Answering defendant is without specific knowledge to admit or deny this allegation and leaves Plaintiff to its proofs.

3.  Answering defendant is without specific knowledge to admit or deny this allegation and leaves Plaintiff to its proofs.

4.  Answering defendant is without specific knowledge to admit or deny this allegation and leaves Plaintiff to its proofs.

5.  Answering defendant is without specific knowledge to admit or deny this allegation and leaves Plaintiff to its proofs.

6.  Denied.

7.  Answering defendant is without specific knowledge to admit or deny this allegation and leaves Plaintiff to its proofs.

8.  Answering defendant is without specific knowledge to admit or deny this allegation and leaves Plaintiff to its proofs.

9.  This allegation is not directed towards the answering defendant.

9a.    Answering defendant is without specific knowledge to admit or deny this allegation and leaves Plaintiff to its proofs.

9b.    Answering defendant is without specific knowledge to admit or deny this allegation and leaves Plaintiff to its proofs.

Answering party is without sufficient information to admit or deny this allegation.

10. Answering defendant is without specific knowledge to admit or deny this allegation and leaves Plaintiff to its proofs.

11. Answering defendant is without specific knowledge to admit or deny this allegation and leaves Plaintiff to its proofs.

12. Denied.

13. Answering defendant is without specific knowledge to admit or deny this allegation and leaves Plaintiff to its proofs.

WHEREFORE, Defendant seeks a judgment dismissing Plaintiffs complaint with prejudice and without costs.

## SECOND COUNT

1. Plaintiffs repeat the answers set forth in the previous paragraphs as if set forth herein at length.

2. Denied.

3. Denied.

WHEREFORE, Defendant seeks a judgment dismissing Plaintiffs complaint with prejudice and without costs.

## AFFIRMATIVE DEFENSES

1. Plaintiff's damages, if any, were the direct result of the negligence or intentional acts of others, over whom this answering defendant had no control.

2. The incident described in the Complaint was caused wholly or partly by the negligence or intentional acts of the Plaintiff and Plaintiff is barred from recovery or their recovery should be reduced thereby.

3. Defendant is entitled to a credit for any amount paid or payable to the plaintiff from a collateral source (N.J.S.A. 2A:15-97).

4. Plaintiff failed to mitigate his damages.

5. Plaintiff fails to State a claim upon which relief may be granted.

6. Plaintiff's claim is barred by the Statute of Limitations.

7. Plaintiff's claim is barred by the doctrine of Laches.

8. Plaintiff's claim is barred by the Doctrine of Estoppel.

9. Plaintiff's claim is barred by the Doctrine of Unclean hands.

10. Plaintiff's claim is barred by virtue of his failure to act in good faith.

11. Plaintiff's claim is barred by the Doctrine of Waiver.

12. Plaintiff's claim is barred by the doctrine of avoidable consequences.

13. Plaintiff's claim is barred by its failure to comply with the Fair Foreclosure Act 2A:50-53, et seq.

14. Plaintiff's claim is barred by its failure to comply with the anti-eviction act. NJSA 2A:18-61.1 et seq.

15. Plaintiff does not have jurisdiction to bring a claim under NJSA 2A: 18-61.1 et seq. in this court.

16. Plaintiff has not provided the appropriate notices to bring a claim under NJSA 2A:18-61.1 et. seq.

17. The original lender, Metrocities Mortgage, LLC, was not properly licensed to do business in the State of New Jersey at the time of this loan and this loan violates Regulations and Statutes of the State of New Jersey.

## CERTIFICATION

The undersigned certifies in accordance with New Jersey Court Rules 4:6-1d that this response pleading was served within the time period allowed by Rule 4:6 or pursuant to a consent order extending the time for which to answer.

By: _____
FRANK J. REED, III
Pro Se Defendant

Dated: 1/20/08

# CIVIL CASE INFORMATION STATEMENT

**FOR USE BY CLERK'S OFFICE ONLY**

PAYMENT TYPE:    CK        CQ        CA

CHECK NO.

Amount:

Overpayment

Batch Number

**(CIS)**
Use for Initial Law Division - Civil Part pleadings (not motions) under Rule 4:5-1.

Pleading will be rejected for filing, under Rule 1:5-6(c), if information above the black bar is not completed or if attorney's signature is not affixed.

| ATTORNEY/PRO SE NAME **FRANK J. REED, III** | PHONE NUMBER **856-979-3035** | COUNTY OF VENUE **BURLINGTON** |
|---|---|---|

FIRM NAME (if applicable)

DOCKET NUMBER (IF AVAILABLE) F-19177-08

ADDRESS
817 Matlack Drive
Moorestown, NJ 08057

DOCUMENT TYPE   Answer, Separate and Affirmative Defenses

JURY DEMAND        YES ☐   NO ☒

NAME OF PARTY (e.g., John Doe, Plaintiff)
Frank J. Reed, III

CAPTION  GMAC Mortgage, LLC v. Frank J. Reed, III; et al

CASE TYPE NUMBER
(See reverse side for listing)

IS THIS A PROFESSIONAL MALPRACTICE CASE? YES ☐ NO ☒
IF YOU HAVE CHECKED "YES", SEE N.J.S.A. 2A:53A-27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT.

RELATED CASES PENDING?   YES ☐   NO ☒

IF YES, LIST DOCKET NUMBER

DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of the same  transaction or occurrence)?
YES ☐   NO ☒

NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY, IF KNOWN

☐ NONE ☒     UNKNOWN

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

A. DO PARTIES HAVE A CURRENT PAST OR RECURRENT RELATIONSHIP?  YES ☒  NO ☐

IF YES, IS THAT ☐ EMPLOYER-EMPLOYEE   ☐ FRIEND/NEIGHBOR
RELATIONSHIP  ☐ FAMILIAL   ☒ BUSINESS ☐ OTHER (explain) _____

B. DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?    YES ☐   NO ☒

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION:

DO YOU OR YOUR CLIENT HAVE ANY NEEDS UNDER THE THE AMERICANS WITH DISABILITIES ACT?    YES ☐    NO ☒

IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION

WILL AN INTERPRETER BE NEEDED? YES ☐  NO ☒      IF YES, FOR WHAT LANGUAGE _____

PRO SE SIGNATURE

## Exhibit D

**Summary Judgment Motion**

LEONARD B. ZUCKER
MICHAEL S. ACKERMAN*
JOEL ACKERMAN*

RICHARD P. HABER §
FRANCES GAMBARDELLA
BRIAN C. NICHOLAS ■
STEVEN D. KROL
ERIC SANTOS ■
ANTHONY J. RISALVATO ‡
CHRISTOPHER G. FORD

* ALSO MEMBER OF NY, PA AND CA BAR
§ ALSO MEMBER OF PA BAR
■ ALSO MEMBER OF NY AND ME BAR
■ ALSO MEMBER OF NY AND PA BAR
‡ ALSO MEMBER OF NY BAR
□ MEMBER OF PA BAR ONLY

OF COUNSEL:
SCOTT A. DIETTERICK, ESQ. □
KIMBERLY A. BONNER, ESQ. □

# ZUCKER, GOLDBERG & ACKERMAN, LLC
## ATTORNEYS AT LAW

FOUNDED IN 1923
AS ZUCKER & GOLDBERG

200 SHEFFIELD STREET- SUITE 301
P.O. BOX 1024
MOUNTAINSIDE, NJ 07092-0024

TELEPHONE: 908-233-8500
FACSIMILE: 908-233-1390
E-MAIL: office@zuckergoldberg.com
For payoff/ reinstatement figures
please send your request to: zuckergoldberg.com/pr
*REPLY TO NEW JERSEY ADDRESS*

MAURICE J. ZUCKER (1918-1979)
LOUIS D. GOLDBERG (1923-1967)
LEONARD H. GOLDBERG (1929-1979)
BENJAMIN WEISS (1949-1981)

Pennsylvania Office:
P.O. Box 650
Hershey, PA 17033
717-533-3560
fax 717-533-3562

XCZ 102962                                    ~~Date~~ June 30 , 2008

**VIA: LAWYERS SERVICE**
Burlington County Central Processing Office
Attention: Civil Intake
Courts Facility Bldg. - 1ˢᵗ Floor
49 Rancocas Road
Mount Holly, NJ 08060

Re:   **GMAC MORTGAGE, LLC, etc.**
vs.   **Frank J. Reed, III, et al.**
**Docket No. F-19177-08**
**Motion Return Date: August 1, 2008**

Dear Sir/Madam:

Enclosed is an original and one copy of plaintiff's Notice of Motion for Summary Judgment to Strike Defendant's Answer to Enter Default and Transfer Case to The Foreclosure Unit, Certification in support of motion, Statement of Material Facts, Brief and proposed form of Order.

Kindly file same and return a copy marked "FILED" in the self-addressed Stamped envelope provided We also enclose our check in the sum of $30.00 to cover our filing fee.

By copy of this letter, we are providing our interested parties with a copy of the within motion.

Very truly yours,
ZUCKER, GOLDBERG & ACKERMAN, LLC

By: _____*Richard P. Haber*_____
RICHARD P. HABER

RH/wh
Enclosures
cc: Honorable Ronald E. Bookbinder, P.J.Ch. (Via Lawyers' Service)
cc: Frank J. Reed, III, Pro Se Defendant (Via UPS Overnight Mail)

*THIS IS AN ATTEMPT TO COLLECT A DEBT.*
*ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.*

XCZ 102962/wh
ZUCKER, GOLDBERG & ACKERMAN, LLC
Attorneys for Plaintiff
200 Sheffield Street, Suite 301
P.O. Box 1024
Mountainside, New Jersey 07092-0024
1-908-233-8500

| | |
|---|---|
| GMAC MORTGAGE, LLC | SUPERIOR COURT OF NEW JERSEY |
| | CHANCERY DIVISION |
| | BURLINGTON COUNTY |
| Plaintiff, | GENERAL EQUITY PART |
| | DOCKET NO. F-19177-08 |
| vs. | |
| | Civil Action |
| Frank J. Reed, III, et al., | |
| | NOTICE OF MOTION FOR SUMMARY |
| Defendants. | JUDGMENT TO STRIKE CONTESTING |
| | ANSWER, TO ENTER DEFAULT AND |
| | TRANSFER CASE TO THE |
| | FORECLOSURE UNIT |

TO:

**Frank J. Reed, III, Pro Se Defendant**
**817 Matlack Drive**
**Moorestown, NJ 08057**

SIR/MADAM:

PLEASE TAKE NOTICE that on Friday, August 1, 2008 at 9:00 a.m. or as soon thereafter as

counsel may be heard, the undersigned attorneys for plaintiff will apply to the Burlington County Central

Processing Office, Courts Facility, 49 Rancocas Road, Mount Holly, New Jersey 08060, for an order

pursuant to Rule 4:46 granting summary judgment in favor of plaintiff to strike the contesting answer, to

enter default against Frank J. Reed, III and to transfer the matter back to the foreclosure unit to proceed

as an uncontested foreclosure.

PLEASE TAKE FURTHER NOTICE that in support of this application, plaintiff will rely upon the annexed Certification, Statement of Material Facts and Memorandum of law. A proposed form of order is filed herewith and oral argument is hereby waived unless opposition to this motion is filed. This motion shall be deemed uncontested unless responsive papers are timely filed and served stating with particularity the basis of the opposition to the relief sought.

RICHARD P. HABER, ESQ.

Dated: ~~By~~ June 30     , 2008

CERTIFICATION OF MAILING

I certify that I am an employee of ZUCKER, GOLDBERG & ACKERMAN, LLC, attorneys for plaintiff. I hereby certify that the original and one copy of the within Notice of Motion, supporting Certifications, and Memorandum of Law, and an original and two copies of a proposed form of order were sent for filing with the Burlington County Central Processing Office, Attention: Civil Intake, Courts Facility Bldg. - 1st Floor, 49 Rancocas Road, Mount Holly, New Jersey 08060, and true copies of all moving papers were served upon the party noted in the within Notice of Motion, by overnight mail on this 30 day of June, 2008.

Woodie Handley

Dated:   June 30, 2008

XCZ 102962/wh
ZUCKER, GOLDBERG & ACKERMAN, LLC
Attorneys for Plaintiff
200 Sheffield Street, Suite 301
P.O. Box 1024
Mountainside, New Jersey 07092-0024
1-908-233-8500

GMAC MORTGAGE, LLC | SUPERIOR COURT OF NEW JERSEY
CHANCERY DIVISION
BURLINGTON COUNTY
GENERAL EQUITY PART
DOCKET NO. F-19177-08

Plaintiff,

vs.

Civil Action

Frank J. Reed, III, et al.,

**PLAINTIFF'S STATEMENT OF**
**MATERIAL FACTS**

Defendants.

---

Plaintiff, for its Statement of Material Facts for Summary Judgment, does hereby state as

follows:

1.     On May 31, 2006, Frank J. Reed, III executed a Note in favor of plaintiff's

Assignor, Mortgage Electronic Registration Systems, Inc., as nominee for Metrocities Mortgage, LLC.

To secure repayment of the Note, on May 31, 2006, Frank J. Reed, III and Christina A. Reed, husband

and wife executed a mortgage in favor of plaintiff's Assignor, Mortgage Electronic Registration Systems,

Inc., as nominee for Metrocities Mortgage, LLC. Certification of Richard P. Haber, Esq., Exhibit A, which

contains acknowledged signatures on Note and Mortgage.

2.     The Mortgage was duly recorded on September 25, 2006. Haber Certification,

Exhibit A.

3.     Frank J. Reed, III received $1,000,000.00, in consideration for execution of the

Note and Mortgage. Haber Certification, Exhibit A.

    4.    Frank J. Reed, III defaulted under the terms and conditions of the above stated

Note by failing, refusing and neglecting to make the payment which became due on February 1, 2008 and

all payments which became due thereafter. Haber Certification, paragraph 5.

    5.    Frank J. Reed, III filed an "Answer" to the instant foreclosure. The said "Answer"

does not genuinely contest plaintiff's right to foreclose. Haber Certification, Paragraph 6.

                             ZUCKER, GOLDBERG & ACKERMAN, LLC
                                   Attorneys for Plaintiff

BY: _____
                         RICHARD P. HABER

Dated: June 30, 2008

XCZ 102962/wh
ZUCKER, GOLDBERG & ACKERMAN, LLC
Attorneys for Plaintiff
200 Sheffield Street, Suite 301
P.O. Box 1024
Mountainside, New Jersey 07092-0024
1-908-233-8500

| | |
|---|---|
| GMAC MORTGAGE, LLC | SUPERIOR COURT OF NEW JERSEY |
| | CHANCERY DIVISION |
| Plaintiff, | BURLINGTON COUNTY |
| | GENERAL EQUITY PART |
| | DOCKET NO. F-19177-08 |
| vs. | |
| | Civil Action |
| Frank J. Reed, III, et al., | |
| Defendants. | |

## LEGAL MEMORANDUM  IN SUPPORT OF
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

ZUCKER, GOLDBERG & ACKERMAN, LLC
Attorneys for Plaintiff
200 Sheffield Street, Suite 301
P.O. 1024
Mountainside, New Jersey 07092-0024
1-908-233-8500
XCZ 102962

RICHARD P. HABER, ESQ.
On the Brief

## STATEMENT OF FACTS

A complete statements of the facts pertinent to this motion are contained in the Certification and Statement of Material Facts filed herewith. Briefly, this matter arises from the execution of a Note and Mortgage on May 31, 2006. Frank J. Reed, III borrowed $1,000,000.00 from Mortgage Electronic Registration Systems, Inc., as nominee for Metrocities Mortgage, LLC, and executed a Note memorializing same. In return, and as security for the advancement of these funds, Frank J. Reed, III and Christina A. Reed, husband and wife executed a mortgage in that amount on a parcel of real property located at 817 MATLACK DRIVE, MOORESTOWN, NJ 08057 (the "Property"). That Mortgage was subsequently assigned, and plaintiff became the holder in due course of the Note and Mortgage. See, Certification of Richard P. Haber, paragraph 2, (hereinafter, "Haber Cert.").

The Note provided that Frank J. Reed, III is to repay the outstanding obligation by making monthly payments. According to the plaintiff's business records, payments are due and owing from the payment which became due on February 1, 2008 . Despite demands that the arrears be cured that has not happened. Plaintiff commenced this action to foreclose the Mortgage on May 19, 2008.

Defendant subsequently filed an answer contesting the foreclosure but failed to properly form a basis for a delay in this foreclosure. Defendant has failed to assert any facts in support of these denials or challenge the plaintiff's right to foreclose. The Haber Cert. will clearly demonstrate that indeed all of the allegations set forth in the plaintiff's complaint are true and supported by recorded public documents, as well as documents which were given to the mortgagors at the time the loan originated. The answer simply denies certain aspects of the complaint without furnishing any facts to support those denials. The purpose of this answer is obviously to delay this foreclosure action at the expense of plaintiff. Defendant Frank J. Reed, III has no basis to challenge this action and, as such, the answer should be stricken, default entered

and the matter transferred back to the Foreclosure Unit to proceed as uncontested.

## LEGAL ARGUMENT
## I.  SUMMARY JUDGMENT SHOULD BE
## GRANTED IN FAVOR OF PLAINTIFF

The purposes of summary judgment are, of course, to "avoid trials which would serve no useful purpose and to afford deserving litigants immediate relief." Kopp, Inc. v. United Technologies, 223 N.J. Super. 548, 555 (App. Div. 1988). Summary judgment has developed to provide a prompt and effective method for disposing of any cause "which a discriminating search of the merits in the pleadings, depositions and admissions on file, together with the affidavits submitted on the motion clearly shows not to present any genuine issue of material fact requiring disposition at trial". Ledley v. William Penn Life Ins. Co., 138 N.J. 627, 641-42 (1995) (citing Judson v. Peoples Bank & Trust of Westfield, 17 N.J. 67, 74 [1954]).

Such a motion should be granted "forthwith" if no material facts are in dispute, and the moving party is entitled to judgment as a matter of law. Tyson v. Grove, 172 N.J. Super. 314, 319 (App. Div. 1963); First New Jersey Bank v. F.L.M. Business Machines, 130 N.J. Super. 151 (Law Div. 1974). Once the movant has demonstrated that there is no genuine issue of fact, the burden of going forward with the evidence shifts to the opponent of the motion. He must show controverting facts, not merely ipso dixit representations or allegations in pleadings without affidavit or evidentiary support. He must "establish clearly the existence of a genuine issue of material fact". Failure to discharge this duty will entitle the movant to the relief sought.  Heljon Management Corp. v. Dileo, 55 N.J. Super. 306, 313 (App. Div. 1959).

The motion at bar to strike defendants' contested answer pursuant to Rule 4:6-5 is substantively controlled by the summary judgment standard proffered by the New Jersey Supreme Court in Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520 (1995) pursuant to Rule 4:46-2. In that case,

the Supreme Court enunciated a new standard by which a court must review summary judgment motions.

While the Court noted that 'genuine' issues of material fact may prevent a Trial Court from granting

summary judgment, the Supreme Court held that issues of fact which are not substantial in nature do not

rise to the level of precluding the entry of judgment prior to trial. Id. at 540. The Court instructed:

> Under this new standard, a determination whether there exists a "genuine issue" of
> material fact that precludes summary judgment requires the motion judge to
> consider whether the competent evidential materials presented, when viewed in the
> light most favorable to the non-moving party, are sufficient to permit a rational fact
> finder to resolve the alleged disputed issue in favor of the non-moving party. ...

> If there exists a single, unavoidable resolution of the alleged disputed issue of fact,
> that issue should be considered insufficient to constitute a "genuine" issue of
> material fact for purposes of Rule 4:46-2. of Brill v. Guardian Life Insurance Co.,
> supra, at 540.

The summary judgment standard most recently enunciated by the New Jersey Supreme

Court in Brill, derived from the rules announced by the United States Supreme Court in Anderson v.

Liberty Lobby, Inc., 477 U.S. 242 (1986), and Celotex Corp. v. Catrett, 477 U.S. 317 (1986), requires

the motion judge to weigh the evidence to determine whether there is a genuine issue for trial. Brill, 142

N.J. at 540. "The import of our holding is that when the evidence is so one-sided that on party must prevail

as a matter of law, the trial court should not hesitate to grant summary judgment." Id. As will be shown

below, and on the strength of the undisputed facts submitted to the Court in plaintiff's Statement of Material

Facts for Summary Judgment, this case is absolutely ripe for adjudication. The Court can determine the

case as a matter of law. There is no viable claim remaining which needs be tried.

Therefore, plaintiff respectfully requests that the Court grant its motion and enter summary

judgment in its favor.

## II.  THE CONTESTING ANSWER SHOULD BE STRICKEN

R. 4:6-4 and R. 4:6-5 permit a party to move before the Court for an order striking any

part, or dismissing in whole, any pleading which is insufficient as a matter of law, or scandalous impertinent

or abusive of the Court or another person. With respect to contesting answers filed in foreclosure actions,

in Somerset Trust Co. v. Sternberg, 238 N.J. Super 279 (Ch.Div. 1989), Judge Diana wrote:

> [I]t is necessary to comment on this Court's observations concerning a large
> number of foreclosure actions. All too often the pattern is the same. The mortgagee
> files a complaint, and the matter is opened in the Office of Foreclosure in Trenton.
> The mortgagor responds with a contesting answer. The case is then forwarded to
> the Chancery Court to proceed as a contested case. Later, a motion is filed on
> behalf of the mortgagee seeking summary judgment. The mortgagor fails to
> respond to the motion; summary judgment is granted in favor of the mortgagee; the
> answer and defenses are stricken; the matter is transferred back to the Office of
> Foreclosure to proceed on an uncontested basis; and eventually final judgment of
> foreclosure is entered.
>
> Initial examination of many pleadings filed with this Court demonstrates that many
> of the answers and defenses proffered are legally insufficient as they fail to
> challenge the essential elements of the mortgagee's right to foreclosure and fail to
> interpose a validly recognized defense in foreclosure suits. Id. at 283 (citations
> omitted, emphasis added).

The rule pertaining to a prima facie right to foreclose a mortgage is one of long standing in

this State. In Thorpe v. Floremoore Corp., 20 N.J. Super. 34 (App. Div. 1952) the Court set forth the

elements for a prima facie right to foreclose as follows:

> Since the execution, recording, and non-payment of the mortgage were conceded,
> a prima facie right to foreclosure was made out. Defendants argue that since the
> mortgage was in their counsels possession and produced by him at the request of
> plaintiff, delivery thereof after execution was not established and consequently no
> such case appeared. However, proof of recording creates a presumption of
> delivery. Id. at 37.

With these principles in mind, we turn to the evidence in the case sub judice. Based on the

certification filed in this matter, the evidence is so overwhelming to compel summary judgment. There exists

no genuine issue as to material fact.

It is well recognized that, where the answer and any proffered defenses fail to challenge

the essential elements of the mortgagee's right to foreclosure, and fail to interpose a validly recognized

defense, the mortgagee is entitled to a final judgment of foreclosure. Metlife v. Washington Avenue

Associates, 159 N.J. 484 (1999). It is common for defendants to a foreclosure action to file an answer

that does not deny the fact that the mortgage is in default, but instead contests the amount due to the

plaintiff. Such an answer is considered non-contesting. In Metlife the Supreme Court held that a challenge

by the mortgagor to the asserted amount due does not constitute a contesting answer for purposes of

R:4:64-1. Old Republic Ins. Co. v. Currie, 284 N.J. Super. 571, 574 (Ch. Div. 1995); Somerset Trust

Co. v. Steinberg, 238 N.J. Super. 279, 283 (Ch. Div. 1989).

The Chancery Division in Old Republic provided a concise, definitive overview on

uncontesting answers:

> Pursuant to R. 4:64-1(a)(2), an answer which does not contest the validity or
> priority of a mortgage is considered an uncontesting answer. Subsection (a)(3)
> further defines an uncontesting answer as on that pleads that "a party is without
> knowledge or information sufficient to for a belief as to the truth of the allegation"
> of more that leaves the plaintiff to his proofs. Moreover, R. 4:5-4 requires that all
> affirmative defenses be supported with the specific facts. Consequently, a plaintiff
> may move to strike such an answer pursuant to R. 4:6-5 on the ground that it
> presents "no question of fact or law which should be heard by a plenary trial." 30
> New Jersey Practice §312, at 233 (Cunningham and Tischler 1975).

Old Republic Ins. Co., 284 N.J. Super. At 574-575.

Plaintiff has established the right to foreclose by demonstrating the execution of the

mortgage, the creation of the indebtedness, the recording of the mortgage and default. See Thorpe v.

Floremoore Corp., 20 N.J. Super. 34 (App. Div. 1952). The answer fails to challenge the essential

elements of plaintiff's right to foreclose and presents "no question of fact or law which should be heard by

a plenary trial."

The documents annexed to the Haber Cert., are duly recorded and memorialize the transaction of May 31, 2006. Defendant received $1,000,000.00 from Mortgage Electronic Registration Systems, Inc., as nominee for Metrocities Mortgage, LLC and secured that amount with a mortgage on the Property.  As stated in Thorpe v. Floremoore Corp, supra, the recording of those documents constituted delivery thereof to defendant. Moreover, it has not been denied that obligor received the monies and signed the Note. It has further not been denied that mortgagors executed the Mortgage to secure repayment. Indeed, the defendant cannot deny receipt of the funds because partial repayment thereof is proof of receipt.[1]

The defendant has denied certain allegations set forth in the complaint. Even a cursory examination thereof shows that these denials have no basis in fact or law and are meant only to delay these proceedings.

It is clear upon review of the contesting answer that the denials contained therein have no basis. Metlife v. Washington Avenue Associates, supra. This type of answer is insufficient to challenge plaintiff's right to foreclose when, as indicated above, this plaintiff is able to, and here proves execution, delivery and nonpayment. This meritless answer is firm indication of the bad faith and frivolity used to delay this lawsuit.

---

[1] Payments were made in compliance with the Note's terms prior to default. Such partial payment concedes the validity of the Note, as well as the balance of the obligation. See, e.g., Renault v. L.N. Renault & Sons, Inc., 188 F.2d 317 (3rd Cir. 1951); Burlington Country Club v. Midlantic Bank, 223 N.J. Super. 227 (Ch. Div. 1987).

The filed answer is "legally insufficient as [it] fail[s] to challenge the essential elements of the mortgagee's right to foreclose and fail[s] to interpose a validly recognized defense in foreclosure suits." See. Somerset Trust Co. v. Sternberg, supra, at 283. This Court should strike the Answer, dismiss the Affirmative Defenses, enter summary judgment against defendant and direct that this matter proceed as an uncontested foreclosure.

## CONCLUSION

For all the foregoing reasons, plaintiff respectfully requests that the Court strike the

contesting answer, enter default against said defendant and transfer the matter to the Foreclosure Unit to

proceed as an uncontested matter.

Respectfully submitted,
ZUCKER, GOLDBERG & ACKERMAN, LLC
Attorneys for Plaintiff

By: _____
RICHARD P. HABER

DATED: June 30, 2008

XCZ 102962/wh
ZUCKER, GOLDBERG & ACKERMAN, LLC
Attorneys for Plaintiff
200 Sheffield Street, Suite 301
P.O. Box 1024
Mountainside, New Jersey 07092-0024
1-908-233-8500

| | |
|---|---|
| GMAC MORTGAGE, LLC | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION BURLINGTON COUNTY GENERAL EQUITY PART DOCKET NO. F-19177-08 |
| Plaintiff, | |
| vs. | Civil Action |
| Frank J. Reed, III, et al., | CERTIFICATION OF RICHARD P. HABER, ESQ. |
| Defendants. | |

RICHARD P. HABER, does hereby certify:

1. I am an attorney at law of the State of New Jersey and an associate with the law firm of

ZUCKER, GOLDBERG & ACKERMAN, LLC, attorneys for plaintiff GMAC MORTGAGE, LLC. I

submit this certification based upon my custody and review of the computerized records of plaintiff which

were made in the ordinary course of business as part of plaintiff's regular practice to create and maintain

said records and which were recorded contemporaneously with the transactions reflected therein.

2. On May 31, 2006, defendant Frank J. Reed, III executed a Note in the sum of $1,000,000.00

to Metrocities Mortgage, LLC. The aforesaid Note obligates defendant to make monthly installment

payments due on the first day of each month commencing on July 1, 2006.

3. To secure payment of the Note, defendants Frank J. Reed, III and Christina A. Reed, husband

and wife executed to Mortgage Electronic Registration Systems, Inc., as nominee for Metrocities

Mortgage, LLC a Mortgage dated May 31, 2006 in the sum of $1,000,000.00. The Mortgage was recorded on September 25, 2006 in Book 11124 of Mortgages for Burlington County, Page 410. A copy of the Note and recorded Mortgage is attached as Exhibit A.

4. Plaintiff is the present holder of the Note and Mortgage. A copy of the Assignment of Mortgage is attached as Exhibit B.

5. Defendant Frank J. Reed, III defaulted under the terms and conditions of the above stated Note by failing, refusing and neglecting to make the payment which became due on February 1, 2008 and all payments which became due thereafter.

6. Defendant Frank J. Reed, III filed an Answer to the instant foreclosure. The said Answer does not genuinely contest plaintiff's right to foreclose. See, Complaint, Amended Complaint, and Answer, annexed hereto as Exhibit C.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are wilfully false, I am subject to punishment.

RICHARD P. HABER, ESQ.

Dated: June 30, 2008

# EXHIBIT A



*102962*

MIN: 100034200057200556                    Loan Number: 21063843

# FIXED/ADJUSTABLE RATE NOTE

(LIBOR One - Year Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

MAY 31, 2006            SHERMAN OAKS            CALIFORNIA
[Date]                        [City]                      [State]

817 MATLACK DRIVE, MOORESTOWN, NEW JERSEY 08057
[Property Address]

**1.    BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $1,000,000.00    (this amount is called "Principal"), plus interest, to the order of Lender. Lender is METROCITIES MORTGAGE, LLC, A LIMITED LIABILITY COMPANY

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.    INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      6.375 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.    PAYMENTS**

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the    1st    day of each month beginning on  JULY 1    2006    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  JUNE 1, 2036    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  15301 VENTURA BLVD., STE#D300, SHERMAN OAKS, CALIFORNIA 91403

or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments ** See attached Interest Only Note Addendum

Each of my initial monthly payments will be in the amount of U.S. $6,238.70    . This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

MULTISTATE FIXED/ADJUSTABLE RATE NOTE - WSJ One-Year LIBOR
Single Family - Fannie Mae MODIFIED INSTRUMENT
Form 3528 6/01                    Page 1 of 5

DocMagic *eForms* 800-649-1362
www.docmagic.com

CERTIFIED TO BE A TRUE AND ... INAL

12-12020-mg    Doc 7767-9    Filed 11/18/14    Entered 11/18/14 15:21:27    Exhibit 9
Pg 57 of 104
12-12020-mg    Doc 7017-6    Filed 05/29/14    Entered 05/29/14 19:56:18    Exhibit 3
Pg 56 of 103

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the   1st   day of JUNE, 2011    , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 250/1000               percentage points (   2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than    11.375 % or less than    2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than TWO AND 000/1000           percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 11.375 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid Interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial

MULTISTATE FIXED/ADJUSTABLE RATE NOTE - WSJ One-Year LIBOR
Single Family - Fannie Mae MODIFIED INSTRUMENT
Form 3528   6/01          Page 2 of 5

*DocMagic*   800-649-1362
www.docmagic.com

Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.    BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of    15 calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be    5.000% of my overdue payment of principal and interest.  I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above; the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things.  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note.  The Note Holder may enforce its rights under this Note against each person individually or against all of us together.  This means that any one of us may be required to pay all of the amounts owed under this Note.

MULTISTATE  FIXED/ADJUSTABLE RATE NOTE - WSJ One-Year LIBOR
Single Family - Fannie Mae MODIFIED INSTRUMENT
Form 3528  6/01                                     Page 3 of 5

DocMagic *EFarms* 800-649-1362
www.docmagic.com

## 10.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired

MULTISTATE  FIXED/ADJUSTABLE RATE NOTE - WSJ One-Year LIBOR
Single Family - Fannie Mae MODIFIED INSTRUMENT
Form 3528  6/01                                    Page 4 of 5

DocMagic *εfarms* 800-649-1362
www.docmagic.com

by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
FRANK J. REDD III               -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                        -Borrower

*[Sign Original Only]*

MULTISTATE FIXED/ADJUSTABLE RATE NOTE - WSJ One-Year LIBOR
Single Family - Fannie Mae MODIFIED INSTRUMENT
Form 3528  6/01                    Page 5 of 5

DocMagic *eForms* 800-649-1362
www.docmagic.com

## INTEREST-ONLY ADDENDUM
## TO ADJUSTABLE RATE PROMISSORY NOTE

Loan Number: 21063843

Property Address: 817 MATLACK DRIVE, MOORESTOWN, NEW JERSEY 08057

THIS ADDENDUM is made this 31st day of MAY    2006    , and is incorporated into and intended to form a part of the Adjustable Rate Note (the "Note") dated the same date as this Addendum executed by the undersigned and payable to METROCITIES MORTGAGE, LLC, A LIMITED LIABILITY COMPANY                                    (the Lender).

THIS ADDENDUM supersedes Sections 3(A), 3(B), 4(C) and 7(A) of the Note. None of the other provisions of the Note are changed by this Addendum.

### 3.  PAYMENTS

(A) Time and Place of Payments

I will pay interest by making payments every month for the first  60    payments (the "Interest-Only Period") in the amount sufficient to pay interest as it accrues. I will pay principal and interest by making payments every month thereafter for the next  300    payments in an amount sufficient to fully amortize the outstanding principal balance of the Note at the end of the Interest-Only Period over the remaining term of the Note in equal monthly payments.

I will make my monthly payments on the first day of each month beginning on JULY 1, 2006    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. If, on JUNE 1, 2036    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my payments at 15301 VENTURA BLVD., STE#D300, SHERMAN OAKS, CALIFORNIA 91403
                                    , or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 5,312.50    . This payment amount is based on the original principal balance of the Note. This payment amount may change.

### 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 250/1000    percentage point(s) (  2.250    %) to the Current Index for such Change Date. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D), this rounded amount will be my new interest rate until the next Change Date.

During the Interest-Only Period, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay accrued interest. This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the Interest-Only Period unless I make a voluntary prepayment of principal during such period. If I make a voluntary prepayment of principal during the Interest-Only Period, my payment amount for subsequent payments will be reduced to the amount necessary to pay interest at the then current interest rate on the lower principal balance. At the end of the Interest-Only Period and on each Change Date thereafter, the

DocMagic eSolutions 800-649-1362
www.docmagic.com

Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest-Only Period or Change Date, as applicable, in equal monthly payments over the remaining term of the Note. The result of this calculation will be the new amount of my monthly payment. After the end of the Interest-Only Period, my payment amount will not be reduced due to voluntary prepayments.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of interest during the Interest-Only Period, 5.000 % of my overdue payment of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

Borrower _____    Date 3/1/06    Borrower _____    Date
FRANK J. REED III

Borrower _____    Date    Borrower _____    Date

Borrower _____    Date    Borrower _____    Date

INTEREST-ONLY ADDENDUM TO ADJUSTABLE RATE PROMISSORY NOTE
FORM 503E 03/03/03    Page 2 of 2    800-649-1362
www.docmagic.com

22425    BURLINGTON COUNTY CLERK

INFINITY TITLE AGENCY, INC.
33 EAST MAIN STREET, UNIT 2
MOORESTOWN, NJ 08057
856-727-0818 · FAX 856-727-5173 2006 JUN 19  A ID 02

ARRIVED

After Recording Return To:
METROCITI MORTGAGE LLC
15301 VENTURA BLVD., STE#D300
SHERMAN OAKS, CALIFORNIA 91403
Loan Number: 21063843

This Instrument Prepared By:

——————————— [Space Above This Line For Recording Data] ———————————

## MORTGAGE

MIN: 100034200057200556

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 18.

(A) "Security Instrument" means this document, which is dated  MAY 31, 2006        , together with all Riders to this document.
(B) "Borrower" is  FRANK J. REED III AND CHRISTINA A. REED, HUSBAND AND WIFE

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is  METROCITIES MORTGAGE, LLC

Lender is a  LIMITED LIABILITY COMPANY                                  organized
and existing under the laws of  DELAWARE
Lender's address is  15301 VENTURA BLVD., STE D300, SHERMAN OAKS,
CALIFORNIA 91403

(E) "Note" means the promissory note signed by Borrower and dated  MAY 31, 2006      .
The Note states that Borrower owes Lender  ONE MILLION AND 00/100
                      Dollars (U.S. $ 1,000,000.00      ) plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
JUNE 1, 2036      .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

NEW JERSEY--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS      DocMagic eForms 800-649-1362
Form 3031 01/01                              Page 1 of 13                        www.docmagic.com

MB 1 1 1 2 4 PG 4 1 0

Description: Burlington,NJ Mortgages - Book.Page 11124.410 Page: 1 of 21
Order: BURLINGTON Comment:

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider      ☐ Planned Unit Development Rider
☐ Balloon Rider              ☐ Biweekly Payment Rider
☐ 1-4 Family Rider           ☐ Second Home Rider
☐ Condominium Rider          ☒ Other(s) [specify]
                                 INTEREST ONLY ADDENDUM TO RIDER

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For these purposes, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the
            COUNTY                     of              BURLINGTON                    :
       [Type of Recording Jurisdiction]            [Name of Recording Jurisdiction]

NEW JERSEY--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS    DocMagic EForms 800-649-1362
Form 3031 01/01                                          Page 2 of 13              www.docmagic.com

Description: Burlington,NJ Mortgages - Book.Page 11124.410 Page: 2 of 21
Order: BURLINGTON Comment:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 22-03803-00002

which currently has the address of        **817 MATLACK DRIVE**
                                          [Street]

    MOORESTOWN          , New Jersey        08057     ("Property Address"):
       [City]                              [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.
    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:
    1.  Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
    Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future. If Lender accepts such payments, it shall apply such payments at the time such payments are accepted. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.
    2.  Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic

NEW JERSEY--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS        DocMagic @Forms 800-649-1362
Form 3031 01/01                                        Page 3 of 13                              www.docmagic.com

MB 1" K I 2 4 PG 4 I' 2

Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.    Funds for Escrow Items.   Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items."  At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower

MB11124PG413

Description: Burlington,NJ Mortgages - Book.Page 11124.410 Page: 4 of 21
Order: BURLINGTON Comment:

shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.

NEW JERSEY--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS    DocMagic eForms 800-649-1362
Form 3031 01/01                                   Page 5 of 13                      www.docmagic.com

Description: Burlington,NJ Mortgages - Book.Page 11124.410 Page: 5 of 21
Order: BURLINGTON Comment:

During such repair and restoration period. Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.    Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.    Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.    Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.    Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums

MB I'I I 24 PG 4 I 5

Description: Burlington,NJ Mortgages - Book.Page 11124.410 Page: 6 of 21
Order: BURLINGTON Comment:

secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the Insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender for any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right

NEW JERSEY–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3031 01/01                Page 7 of 13                DocMagic eForms 800-649-1362
www.docmagic.com

MB | 1 1 2 4 P G 4 1 6
Description: Burlington,NJ Mortgages - Book.Page 11124.410 Page: 7 of 21
Order: BURLINGTON Comment:

to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security

NEW JERSEY--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS     DocMagic eForms 800-649-1362
Form 3031 01/01                                    Page 8 of 13                                     www.docmagic.com

*Description: Burlington,NJ Mortgages - Book.Page 11124.410 Page: 8 of 21*
*Order: BURLINGTON Comment:*

Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

NEW JERSEY--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS    DocMagic eForms 800-649-1362
Form 3031 01/01                                          Page 9 of 13                    www.docmagic.com

**MB 11124 PG 418**

Description: Burlington,NJ Mortgages - Book.Page 11124.410 Page: 9 of 21
Order: BURLINGTON Comment:

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action

MB 11124 PG 419

Description: Burlington,NJ Mortgages - Book.Page 11124.410 Page: 10 of 21
Order: BURLINGTON Comment:

can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property; (e) the Borrower's right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure; and (f) any other disclosure required under the Fair Foreclosure Act, codified at §§ 2A:50-53 et seq. of the New Jersey Statutes, or other Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

NEW JERSEY--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3031 01/01
Page 11 of 13
DocMagic eForms 800-649-1362
www.docmagic.com

MB 1 1 1 2 4 PG 4 2 0

Description: Burlington,NJ Mortgages - Book.Page 11124.410 Page: 11 of 21
Order: BURLINGTON Comment:

24. No Claim of Credit for Taxes. Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)          _____ (Seal)
FRANK J. REED III            -Borrower         CHRISTINA A. REED           -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                                     -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                                     -Borrower

Signed, sealed and delivered in the presence of:

NEW JERSEY–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT – MERS          DocMagic *eForms* 800-649-1362
Form 3031 01/01                        Page 12 of 13                                www.docmagic.com

NB 1 1 1 2 4 PG 6 4 2 1

Description: Burlington,NJ Mortgages - Book.Page 11124.410 Page: 12 of 21
Order: BURLINGTON Comment:

———————————— [Space Below This Line For Acknowledgment] ————————————

State of New Jersey,
County of  CAMDEN                                                    }ss.

        I CERTIFY that on        5|31|06
CHRISTINA A. REED                                    FRANK J. REED III,

personally came before me and stated to my satisfaction that this person (or if more than one, each person):
· (a)   was the maker of the attached instrument; and
  (b)   executed this instrument as his or her own act.

_____
Notary's Signature                         Date

                OFFICIAL SEAL
            STACIE A. JONES
        NOTARY PUBLIC - NEW JERSEY
        MY COMM. EXPIRES MARCH 22, 2011
Notary's printed or typed name

My commission expires:

NEW JERSEY--Single Family--Fannie Mac/Freddie Mac UNIFORM INSTRUMENT - MERS        DocMagic eForms 800-649-1362
Form 3031 01/01                                Page 13 of 13                    www.docmagic.com

MB I I I 24 PG 422

Description: Burlington,NJ Mortgages - Book.Page 11124.410 Page: 13 of 21
Order: BURLINGTON Comment:

Loan Number: 21063843

## FIXED/ADJUSTABLE RATE RIDER

(LIBOR One-Year Index (As Published in *The Wall Street Journal*) - Rate Caps)

THIS FIXED/ADJUSTABLE RATE RIDER is made this 31st day of MAY 2006 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to METROCITIES MORTGAGE, LLC, A LIMITED LIABILITY COMPANY
("Lender") of the same date and covering the property described in the Security Instrument and located at:

817 MATLACK DRIVE, MOORESTOWN, NEW JERSEY 08057
[Property Address]

THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.    ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial fixed interest rate of        6.375 %. The Note also provides for a change in the initial fixed rate to an adjustable interest rate, as follows:

**4.    ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
(A)  Change Dates
The initial fixed interest rate I will pay will change to an adjustable interest rate on the 1st day of  JUNE, 2011                    , and the adjustable interest rate I will pay may change on that day every 12th month thereafter.  The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

(B)  The Index
Beginning with the first Change Date, my adjustable interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*.  The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information.  The Note Holder will give me notice of this choice.

MULTISTATE FIXED/ADJUSTABLE RATE RIDER-WSJ One-Year LIBOR
Single Family/Fannie Mae MODIFIED INSTRUMENT
Form 3187  7/01                            Page 1 of 4

DocMagic eForms 800-649-1362
www.docmagic.com

MB | 1 | 2 4 PG 4 2 3

*Description: Burlington,NJ Mortgages - Book.Page 11124.410 Page: 14 of 21*
*Order: BURLINGTON Comment:*

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 250/1000                        percentage points ( 2.250    %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 11.375 % or less than    2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than TWO AND 000/1000
                  percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than     11.375 %.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1.    Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

MULTISTATE FIXED/ADJUSTABLE RATE RIDERWSJ One-Year LIBOR
Single Family/Fannie Mae MODIFIED INSTRUMENT                    DocMagic EForms 800-649-1362
Form 3187  6/01                    Page 2 of 4                    www.docmagic.com

MB 1 1 1 2 4 PG 4 2 4.

Description: Burlington,NJ Mortgages - Book.Page 11124.410 Page: 15 of 21
Order: BURLINGTON Comment:

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2.    When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE FIXED/ADJUSTABLE RATE RIDER—WSJ One-Year LIBOR
Single Family—Fannie Mae MODIFIED INSTRUMENT
Form 3187  6/01                                Page 3 of 4

DocMagic eForms 800-649-1362
www.docmagic.com

MB 11124 PG 425

*Description: Burlington,NJ Mortgages - Book.Page 11124.410 Page: 16 of 21*
*Order: BURLINGTON Comment:*

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ (Seal)
FRANK J. REED III          -Borrower

_____ (Seal)
CHRISTINA A. REED          -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

MULTISTATE FIXED/ADJUSTABLE RATE RIDER-WSJ One-Year LIBOR
Single Family-Fannie Mae MODIFIED INSTRUMENT
Form 3187  6/01                    Page 4 of 4

DocMagic eForms 800-649-1362
www.docmagic.com

MB 1 1 1 2 4 PG 4 2 6

Description: Burlington,NJ Mortgages - Book.Page 11124.410 Page: 17 of 21
Order: BURLINGTON Comment:

## INTEREST-ONLY ADDENDUM
## TO ADJUSTABLE RATE RIDER

Loan Number: 21063843

Property Address: 817 MATLACK DRIVE, MOORESTOWN, NEW JERSEY 08057

THIS ADDENDUM is made this 31st    day of MAY, 2006    , and is
incorporated into and intended to form a part of the Adjustable Rate Rider (the "Rider") dated the same date
as this Addendum executed by the undersigned and payable to METROCITIES MORTGAGE,
LLC, A LIMITED LIABILITY COMPANY

(the Lender).

THIS ADDENDUM supersedes Section 4(C) of the Rider. None of the other provisions of the Note are
changed by this Addendum.

### 4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding
TWO AND 250/1000                                    percentage point(s) (    2.250    %) to
the Current Index for such Change Date. The Note Holder will then round the result of this addition to the
nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D), this
rounded amount will be my new interest rate until the next Change Date.

During the Interest-Only Period, the Note Holder will then determine the amount of the monthly
payment that would be sufficient to repay accrued interest. This will be the amount of my monthly payment
until the earlier of the next Change Date or the end of the Interest-Only Period unless I make a voluntary
prepayment of principal during such period. If I make a voluntary prepayment of principal during the
Interest-Only Period, my payment amount for subsequent payments will be reduced to the amount necessary
to pay interest at the then current interest rate on the lower principal balance. At the end of the Interest-Only
Period and on each Change Date thereafter, the Note Holder will determine the amount of the monthly
payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end
of the Interest-Only Period or Change Date, as applicable, in equal monthly payments over the remaining
term of the Note. The result of this calculation will be the new amount of my monthly payment. After the
end of the Interest-Only Period, my payment amount will not be reduced due to voluntary prepayments.

INTEREST-ONLY ADDENDUM TO ADJUSTABLE RATE RIDER
FORM 603F 02/04/04                    Page 1 of 2                    DocMagic eGforms 800-649-1362
www.docmagic.com

MB 1 1 1 2 4 PG 4 2 7

Description: Burlington,NJ Mortgages - Book.Page 11124.410 Page: 18 of 21
Order: BURLINGTON Comment:

FRANK J. REED III  -Borrower (Seal)    CHRISTINE A. REED  -Borrower (Seal)

_____ (Seal)      _____ (Seal)
-Borrower                              -Borrower

_____ (Seal)      _____ (Seal)
-Borrower                              -Borrower

INTEREST-ONLY ADDENDUM TO ADJUSTABLE RATE RIDER
FORM 603F 02/04/04                    Page 2 of 2

DocMagic eForms  800-649-1362
www.docmagic.com

MB 1 1 1 2 4 PG 4 2 8

Description: Burlington,NJ Mortgages - Book.Page 11124.410 Page: 19 of 21
Order: BURLINGTON Comment:

ISSUED BY



## INFINITY TITLE AGENCY, INC.
33 East Main Street, Unit 2, Moorestown, New Jersey 08057
(856) 727-0818 Fax: (856) 727-5173

AGENT FOR FIRST AMERICAN TITLE INSURANCE COMPANY

File No. ITA13922425

### SCHEDULE C

ALL that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in Township of Moorestown, in the County of Burlington, State of NJ:

BEGINNING at a point in the Southerly right of way line of Matlack Drive (60 feet wide), said point being 580.94 feet Westwardly from the Westerly end of a curve having a radius of 20.00 feet and connecting said line of Matlack Drive with the Westerly right of way line of New Albany Road (66 feet wide); thence

1. South 12 degrees 58 minutes 42 seconds West, 185.00 feet to a point;  thence

2. North 77 degrees 01 minute 18 seconds West, 111.42 feet to a point;  thence

3. North 14 degrees 38 minutes 30 seconds West, 156.41 feet to a point in said line of Matlack Drive;  thence

4. North 75 degrees 21 minutes 30 seconds East, along said line of Matlack Drive, 33.75 feet to a point of curvature; thence

5. Eastwardly and curving to the right with a radius of 270.00 feet, still along said line of Matlack Drive, the arc distance of 130.16 feet to a point of tangency;  thence

6. South 77 degrees 01 minute 18 seconds East, still along said line of Matlack Drive, 28.86 feet to the point and place of BEGINNING.

BEING Block 3803, Lot 2 as shown on the "Final Plan of Lots, Mechling Farms, Section 3", Filed May 15, 2003 as Map #3821600.

FOR INFORMATION PURPOSES ONLY:  BEING known as Lot 2, Block 3803 on the Official Tax Map of Township of Moorestown.

Above description made in accordance with a survey made by Wallace Associates, dated March 10, 2006.

Commitment C.doc

MB 11124 PG429

# RECORDING DATA PAGE

Consideration :
Code            :
Transfer Fee    :
Recording Date: 09/25/2006
Document No    : 4327106    ccgorwoo

INFINITY TITLE AGENCY INC
33 EAST MAIN STREET
UNIT 2
MOORESTOWN, NJ  08057


Receipt No    : 660095
Document No   : 4327106
Document Type : MTG
Recording Date: 09/25/2006
Login Id      : ccgorwoo

          Recorded
    Sep 25 2006 02:19pm
Burlington County Clerk


Clerk of Burlington County • 49 Rancocas Rd. • Mt. Holly, NJ 08060
609-265-5180


MB F I 124 PG 430

Description: Burlington,NJ Mortgages - Book.Page 11124.410 Page: 21 of 21
Order: BURLINGTON Comment:

# EXHIBIT B

C_102952_AOM1_C                                         Loan No.:0601613576

## Assignment of Mortgage
## Know all Men by these Presents:

That    Mortgage Electronic Registration Systems, Inc., as nominee for Metrocities Mortgage, LLC

*located at P.O. Box 2026, Flint, MI 48501-2026 herein designated as the Assignor,
for and in consideration of the sum of ONE DOLLAR AND 00/100 ($1.00) and other good and valuable consideration,
the receipt whereof is hereby acknowledged, does by these presents assign to*
**GMAC MORTGAGE, LLC**

*located at 1100 Virginia Drive, Fort Washington, PA 19034       herein designated as the Assignee, a certain
Mortgage dated 5/31/2006 , made by Frank J. Read, III and Christina A. Read, husband and wife  on lands
located in the Township of Moorestown in the County of BURLINGTON and State of New Jersey, to secure payment
of the sum of $1000000.00 Dollars which mortgage is recorded or registered in the office of the Clerk or Register of
BURLINGTON County in Book 11124 of Mortgages on page 410.*

*Together with the Bond, Note or other Obligation therein described, and the money due and to grow due thereon,
with the interest. To have and to hold the same unto the said Assignee forever, subject only to all the provisions
contained in the said Mortgage and the Bond, Note or other Obligation. And the said Assignor hereby constitutes and
appoints the Assignee as the Assignor's true and lawful attorney, irrevocable in law or in equity, in the Assignor's name,
place and stead but at the Assignee's cost and expense, to have, use and take all lawful ways and means for the recovery
of all the said money and interest; and in case of payment, to discharge the same as fully as the Assignor might or could
do if these presents were not made.  This assignment is without recourse for any reason whatsoever.*

*In all references herein to any parties, persons, entities or corporations the use of any particular gender or the plural or singular number is
intended to include the appropriate gender or number as the text of the within instrument may require.*

*In Witness Whereof, the said Assignor has hereunto set his hand and seal or caused these presents to be signed by
its proper corporate officers and its corporate seal to be hereto affixed this  22 day of  May       2008*

Attested by

[signature]                                    Mortgage Electronic Registration Systems, Inc., as
                                               nominee for Metrocities Mortgage, LLC
Secretary
                                               BY: [signature]
John Kerr, Assistant Secretary
STATE OF Pennsylvania , COUNTY OF  Montgomery      **Jeffrey Stephan**
                                                   **Vice President**

I CERTIFY that on 5/22/08                  personally came before me, and this person acknowledged
under oath, to my satisfaction, that:

this person is the  Asst.      secretary of Mortgage Electronic Registration Systems, Inc., as nominee
for Metrocities Mortgage, LLC, the corporation named in this document;
this person is the attesting witness to the signing of this document by the proper corporate officer who is
the   Vice    President of the corporation;
this document was signed and delivered by the corporation as its voluntary act duly authorized by a proper resolution of
its Board of Directors;
this person knows the proper seal of the corporation which was affixed to this document; and
this person signed this proof to attest to the truth of these facts.

                                                            [signature]
                                                                              Secretary
                                               John Kerr, Assistant Secretary

Signed and sworn to before me on

[signature]
Notary Public of                                   C_102952_AOM1_C

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Nikole Shelton, Notary Public
Horsham Twp., Montgomery County
My Commission Expires Aug. 11, 2010
Member, Pennsylvania Association of Notaries

# EXHIBIT C

*FRANK J REED III, Pro Se*
817 Matlack Drive
Moorestown, NJ 08057

| | |
|---|---|
| GMAC Mortgage LLC | SUPERIOR COURT OF NEW JERSEY |
|  | BURLINGTON COUNTY |
| Plaintiff(s), | CHANCERY DIVISION |
| v. | |
|  | DOCKET # F- 19177-08 |
| FRANK J. REED, III, et. al. | |
|  | CIVIL ACTION |
| Defendant(s), | |
|  | **ANSWER** |

Frank Reid III, *Pro Se*, hereinafter ("defendant") hereby says:

**FIRST COUNT**

1.  Admitted.

2.  Answering defendant is without specific knowledge to admit or deny this allegation and leaves Plaintiff to its proofs.

3.  Answering defendant is without specific knowledge to admit or deny this allegation and leaves Plaintiff to its proofs.

4.  Answering defendant is without specific knowledge to admit or deny this allegation and leaves Plaintiff to its proofs.

5.  Answering defendant is without specific knowledge to admit or deny this allegation and leaves Plaintiff to its proofs.

6.  Denied.

7.  Answering defendant is without specific knowledge to admit or deny this allegation and leaves Plaintiff to its proofs.

8.  Answering defendant is without specific knowledge to admit or deny this allegation and leaves Plaintiff to its proofs.

9.  This allegation is not directed towards the answering defendant.

9a.    Answering defendant is without specific knowledge to admit or deny this allegation and leaves Plaintiff to its proofs.

9b.    Answering defendant is without specific knowledge to admit or deny this allegation and leaves Plaintiff to its proofs.

Answering party is without sufficient information to admit or deny this allegation.

10. Answering defendant is without specific knowledge to admit or deny this allegation and leaves Plaintiff to its proofs.

11. Answering defendant is without specific knowledge to admit or deny this allegation and leaves Plaintiff to its proofs.

12. Denied.

13. Answering defendant is without specific knowledge to admit or deny this allegation and leaves Plaintiff to its proofs.

WHEREFORE, Defendant seeks a judgment dismissing Plaintiffs complaint with prejudice and without costs.

## SECOND COUNT

1. Plaintiffs repeat the answers set forth in the previous paragraphs as if set forth herein at length.

2. Denied.

3. Denied.

WHEREFORE, Defendant seeks a judgment dismissing Plaintiffs complaint with prejudice and without costs.

## AFFIRMATIVE DEFENSES

1. Plaintiff's damages, if any, were the direct result of the negligence or intentional acts of others, over whom this answering defendant had no control.

2. The incident described in the Complaint was caused wholly or partly by the negligence or intentional acts of the Plaintiff and Plaintiff is barred from recovery or their recovery should be reduced thereby.

3. Defendant is entitled to a credit for any amount paid or payable to the plaintiff from a collateral source (N.J.S.A. 2A:15-97).

4. Plaintiff failed to mitigate his damages.

5. Plaintiff fails to State a claim upon which relief may be granted.

6. Plaintiff's claim is barred by the Statute of Limitations.

7. Plaintiff's claim is barred by the doctrine of Laches.

8. Plaintiff's claim is barred by the Doctrine of Estoppel.

9. Plaintiff's claim is barred by the Doctrine of Unclean hands.

10. Plaintiff's claim is barred by virtue of his failure to act in good faith.

11. Plaintiff's claim is barred by the Doctrine of Waiver.

12. Plaintiff's claim is barred by the doctrine of avoidable consequences.

13. Plaintiff's claim is barred by its failure to comply with the Fair Foreclosure Act 2A:50-53, et seq.

14. Plaintiff's claim is barred by its failure to comply with the anti-eviction act. NJSA 2A:18-61.1 et seq.

15. Plaintiff does not have jurisdiction to bring a claim under NJSA 2A: 18-61.1 et seq. in this court.

16. Plaintiff has not provided the appropriate notices to bring a claim under NJSA 2A:18-61.1 et. seq.

17. The original lender, Metrocities Mortgage, LLC, was not properly licensed to do business in the State of New Jersey at the time of this loan and this loan violates Regulations and Statutes of the State of New Jersey.

## CERTIFICATION

The undersigned certifies in accordance with New Jersey Court Rules 4:6-1d that this response pleading was served within the time period allowed by Rule 4:6 or pursuant to a consent order extending the time for which to answer.

By: FRANK J. REED, III
Pro Se Defendant

Dated: 6/20/08

## CIVIL CASE INFORMATION STATEMENT

### FOR USE BY CLERK'S OFFICE ONLY

**(CIS)**

Use for initial Law Division - Civil Part pleadings (not motions) under Rule 4:5-1.

Pleading will be rejected for filing, under Rule 1:5-6(c), if information above the black bar is not completed or if attorney's signature is not affixed.

PAYMENT TYPE:   CK   CQ   CA

CHECK NO.

Amount:

Overpayment

Batch Number

| | |
|---|---|
| ATTORNEY/PRO SE NAME<br>FRANK J. REED, III | PHONE NUMBER<br>**856-979-3035** |

COUNTY OF VENUE
BURLINGTON

FIRM NAME (if applicable)

DOCKET NUMBER (IF AVAILABLE) F-19177-08

ADDRESS
817 Matlack Drive
Moorestown, NJ 08057

DOCUMENT TYPE  Answer, Separate and Affirmative Defenses

JURY DEMAND        YES ☐   NO ☒

NAME OF PARTY (e.g., John Doe, Plaintiff)
Frank J. Reed, III

CAPTION  GMAC Mortgage, LLC v. Frank J. Reed, III; et al

CASE TYPE NUMBER
(See reverse side for listing)

IS THIS A PROFESSIONAL MALPRACTICE CASE? YES ☐  NO ☒
IF YOU HAVE CHECKED "YES", SEE N.J.S.A. 2A:53A-27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT.

RELATED CASES PENDING?  YES ☐  NO ☒

IF YES, LIST DOCKET NUMBER

DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of the same transaction or occurrence)?
YES ☐  NO ☒

NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY, IF KNOWN

☐ NONE ☒   UNKNOWN

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

A. DO PARTIES HAVE A CURRENT PAST OR RECURRENT RELATIONSHIP? YES ☒  NO ☐

IF YES, IS THAT  ☐ EMPLOYER-EMPLOYEE   ☐ FRIEND/NEIGHBOR
RELATIONSHIP  ☐ FAMILIAL   ☒ BUSINESS   ☐ OTHER (explain) _____

B. DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?     YES ☐  NO ☒

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION:

DO YOU OR YOUR CLIENT HAVE ANY NEEDS UNDER THE THE AMERICANS WITH DISABILITIES ACT?     YES ☐   NO ☒

IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION _____

WILL AN INTERPRETER BE NEEDED? YES ☐ NO ☒     IF YES, FOR WHAT LANGUAGE _____

PRO SE SIGNATURE

## Exhibit E

### Summary Judgment Cross-Motion



*FRANK J REED III, Pro Se*
817 Matlack Drive
Moorestown, NJ 08057

GMAC Mortgage LLC

    Plaintiff(s),

    v.

FRANK J. REED, III, et. al.

    Defendant(s),

SUPERIOR COURT OF NEW JERSEY
BURLINGTON COUNTY
CHANCERY DIVISION

DOCKET # F-19177-08

CIVIL ACTION

Judge: MJH
Return Date: 8/1/08
Envelope Submitted
w/Order: (Yes)/ No

OPPOSITION TO SUMMARY JUDGMENT
& CROSS MOTION TO DISMISS
FORECLOSURE COMPLAINT

I Frank Reed certify as follows:

1. I am the owner of Real property 817 Matlack Drive Moorestown, New Jersey.

2. Due to the downturn of the economy and some delays in getting some projects off the ground I fell behind in my mortgage payments.

3. The mortgage company served me with the foreclosure complaint certified mail on June 3, 2008. (Exhibit A)

4. I do not recall being served with any other notice prior to that date.

5. When I received the complaint I was unaware that I had rights that could stop the foreclosure.

6. It was not until I began researching the Fair Foreclosure Act that I realized that the mortgage company was require to send to me 30 days before they filed for foreclosure a written notice of intent to foreclose which provided that I could un-accelerate the mortgage payments or sell the property.

7. It appeared that the mortgage company wanted $1,000,000 (see complaint) to stop the foreclosure.

8. If I had known I could pay the back payments as they were required to tell me by NJSA 2A:50-56 (Exhibit B) and could reinstate the mortgage under 2A:50-57 (Exhibit C) I would have by now.

9. Once I realized this I began not only looking for a buyer for the property, but have made

arrangements to get the funds needed to un-accelerate the mortgage.

10. I expect to have those funds within 30 days.

11. Had I had the 30 day window that the statute requires originally I would have had the back payments long ago and we would not be in court.

12. I believe the deficiency in failing to serve me with the written notice of intent to foreclose required under NJSA 2A:50-56 which meets the requirements of NJSA 2A: 50-56 is fatal to the Plaintiffs foreclosure complaint and it should be dismissed.

By: _____

FRANK J. REED, III
Pro Se Defendant

Dated: 7 2 0 6

*FRANK J REED III, Pro Se*
817 Matlack Drive
Moorestown, NJ 08057

DEPUTY CLERK
SUPERIOR COURT
BURLINGTON COUNTY

GMAC Mortgage LLC

     Plaintiff(s),
       v.

FRANK J. REED, III, et. al.

     Defendant(s),

SUPERIOR COURT OF NEW JERSEY  2008  JUL 22  P  12: 09
BURLINGTON COUNTY
CHANCERY DIVISION    FILED & RECEIVED

DOCKET # F- 19177-08

CIVIL ACTION

**STATEMENT OF MATERIAL FACTS**

1. Plaintiff did not serve upon the Defendants the statement required by NJSA 2A:50-56.

2. The statement did not contain the required information as set forth in NJSA 2A:50-56.

3. The statement was not served 30 days before the foreclosure complaint was filed.

## Exhibit F

**Docket for Foreclosure Action**





ACMS Public Access: Case Document List



MORE ...

⬇ **Page: 1**

| | VENUE | : SUP CLERK | COURT : GENL EQUIT | DOCKET #: F | 019177 08 |
|---|---|---|---|---|---|
| | CASE TITLE | : GMAC MORTGAGE LLC VS REED III | | | |

| SEL | DATE FILED | | DOC NUM | DOCUMENT TYPE | NON CONF | FILING/TARGET PARTY NAME | ATTORNEY NAME | MUL PTY | DOC STA |
|---|---|---|---|---|---|---|---|---|---|
| ○ | 05 | 19 | 2008 | 001 | COMPLAINT | | GMAC MORTGAG | ZUCKER GOLDB | N | |
| ○ | 06 | 06 | 2008 | 005 | COMP AMENDED | | GMAC MORTGAG | ZUCKER GOLDB | N | |
| ○ | 06 | 10 | 2008 | 006 | NOTICE TO N.J. | | COURT INIT | | N | |
| ○ | 06 | 16 | 2008 | 007 | NOTICE TO N.J. | | COURT INIT | | N | |
| ○ | 06 | 24 | 2008 | 002 | ANSWER | | REED III | KEARNEY & AS | N | |
| ○ | 07 | 01 | 2008 | 003 | MOTN SUMM JDGMT | | GMAC MORTGAG | ZUCKER GOLDB | N | DN |
| ○ | 07 | 22 | 2008 | 004 | MOTN CRSS MOTN | | REED III | KEARNEY & AS | N | GR |
| ○ | 08 | 15 | 2008 | 011 | AFFDVT NMS | | GMAC MORTGAG | ZUCKER GOLDB | N | |
| ○ | 08 | 15 | 2008 | 012 | AFFDVT SRV | | REED III | KEARNEY & AS | N | |
| ○ | 08 | 15 | 2008 | 013 | AFFDVT SRV | | REED | KEARNEY & AS | N | |

Screen ID:CVM1023 **Copyrighted © 2012 - New Jersey Judiciary**
Session ID: HQUW8U Case Count: 1
BUILD 2012.1.0.02.08 Timer Count down: 298



ACMS Public Access: Case Document List





↑  **Page: 2**

**END OF LIST**

| VENUE | : SUP CLERK | COURT : GENL EQUIT | DOCKET #: F | 019177 | 08 |
| CASE TITLE | : GMAC MORTGAGE LLC VS REED III | | | | |

| SEL | DATE FILED | | DOC NUM | DOCUMENT TYPE | NON CONF | FILING/TARGET PARTY NAME | ATTORNEY NAME | MUL PTY | DOC STA |
|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| ○ | 08 | 15 | 2008 | 014 | AFFDVT SRV | | MORTGAGE ELE | ATTY REQUIRE | N | |
| ○ | 08 | 15 | 2008 | 015 | NOT PRT DISMISL | | GMAC MORTGAG | ZUCKER GOLDB | N | |
| ○ | 08 | 15 | 2008 | 016 | REQ DEFLT | | GMAC MORTGAG | ZUCKER GOLDB | N | |
| ○ | 12 | 26 | 2008 | 008 | APPEARANCE | | REED III | KEARNEY & AS | N | |
| ○ | 02 | 09 | 2009 | 009 | ORDR SUMM JDGMT | | GMAC MORTGAG | ZUCKER GOLDB | N | DN |
| ○ | 02 | 09 | 2009 | 010 | ORDR CRSS MOTN | | REED III | KEARNEY & AS | N | GR |
| ○ | 06 | 28 | 2013 | 017 | LOP DISM WARN | | COURT INIT | | N | |
| ○ | 08 | 09 | 2013 | 018 | CRT INIT TO DSM | | COURT INIT | | N | GR |

Screen ID:CVM1023 **Copyrighted © 2012 – New Jersey Judiciary**
Session ID: Y5G8QE Case Count: 1
BUILD 2012.1.0.02.08 Timer Count down: 297

## Exhibit G

**Order Denying Motion to Dismiss**

FLEISCHER, FLEISCHER & SUGLIA  05/29/14    Entered 05/29/14 19:56:18    Exhibit 3
Pg 99 of 103

FLEISCHER, FLEISCHER & SUGLIA
BRIAN M. FLEISCHER, ESQUIRE
NICOLA G. SUGLIA, ESQUIRE
Plaza 1000 at Main Street, Suite 208
Voorhees, NJ 08043
(856) 489-8977

FILED WITH

JUL 1 4 20_

Chs
Marc M._

Attorneys for Defendants
GMAC Mortgage and Residential Funding

| Frank J. Reed, III and Christina A. Reed | : SUPERIOR COURT OF NEW JERSEY |
|---|---|
| Plaintiffs, | : BURLINGTON COUNTY – LAW DIVISION |
| | : CIVIL ACTION |
| v. | : |
| | : DOCKET NO.: L-1526-10 |
| GMAC Mortgage, LLC, Residential Funding | : |
| Corp., and John Does 1-30, Individually, | : |
| Jointly, Severally and in the alternative | : |
| | : |
| Defendants. | : |

## ORDER

**THIS MATTER** having been brought before the Court on Motion of Fleischer, Fleischer

and Suglia, and Brian M. Fleischer, Esquire, attorneys for Defendants, GMAC Mortgage

Corporation and Residential Funding Corporation for an Order dismissing Plaintiff's Complaint

as to GMAC Mortgage Corporation and Residential Funding Corporation without prejudice, and

for good cause shown;

**IT IS** on this 14TH day of July, 2010,

**ORDERED** that the Plaintiffs' Complaint is dismissed as to Defendants GMAC

Mortgage Corporation and Residential Funding Corporation.

**IT IS FURTHER ORDERED** that a copy of this Order shall be served upon all parties

within ___ days from receipt thereof.

MARC M. BALDWIN, J.S.C.

Papers filed with the Court:

( ) Answering Papers

( ) Reply Papers

The within Notice of Motion was:
(✗) Opposed          ( ) Unopposed

## Exhibit H

### Dismissal Order

**FLEISCHER, FLEISCHER & SUGLIA**
**BRIAN M. FLEISCHER, ESQUIRE**
**NICOLA G. SUGLIA, ESQUIRE**
**Plaza 1000 at Main Street, Suite 208**
**Voorhees, NJ 08043**
**(856) 489-8977**

FILED WITH THE COURT

FEB 09 2012

Ch~ ~~ of
~arc M. ~. ~~, J.S.C.

**Attorneys for Defendants**
**GMAC Mortgage and Residential Funding**

| | |
|---|---|
| Frank J. Reed, III | : SUPERIOR COURT OF NEW JERSEY |
| | : BURLINGTON COUNTY – LAW DIVISION |
| Plaintiffs, | : |
| | : CIVIL ACTION |
| v. | : |
| | : DOCKET NO.: L-1526-10 |
| GMAC Mortgage, LLC, Residential Funding | : |
| Corp., and John Does 1-30, Individually, | : |
| Jointly, Severally and in the alternative | : |
| | : |
| Defendants. | : |

## <u>ORDER</u>

**THIS MATTER** having been brought before the Court on Motion by the Law Offices of

Jeffrey S. Walters, LLC, attorneys for the Plaintiff, Frank J. Reed, III, appearing, for an entry of

an order imposing a stay on this litigation to allow time for participation in Independent

Foreclosure Review as established by way of Defendant's consent order entered into with

governmental agencies; or, in the alternative, for entry of an Order granting leave to voluntarily

dismiss case without prejudice pursuant to Rule 4:37-1(b), and the Court having reviewed the

moving papers and the Certification supporting the Motion, and any opposition, and good cause

having been shown;

**IT IS** on this ___9TH___ day of ___Feb___, 2012,

**ORDERED**, that leave is hereby granted for Plaintiff to voluntarily dismiss his

complaint without prejudice pursuant to R. 4:37-1(b); and

1

**IT IS FURTHER ORDERED** that if the above action should be reinstated at a later date, Plaintiff is *only* granted three (3) additional weeks of discovery time; and

**IT IS FURTHER ORDERED** that if the above action should be reinstated at a later date, Plaintiff may not submit an expert report on economic damages; and

**IT IS FURTHER ORDERED** that a copy of this Order shall be served upon all parties within ___5___ days from receipt thereof.

_____
J.S.C.

Papers filed with the Court:

MARC M. BALDWIN, P.J.Cv.

(  ) Answering Papers

(  ) Reply Papers

The within Notice of Motion was:

(  ) Opposed

(  ) Unoppose

2

## Exhibit I

**Servicing Notes**

**REDACTED**

**ONLY PRODUCED TO THE COURT, THE U.S. TRUSTEE, AND THE REEDS**