**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **FOR PUBLICATION** |
| RESIDENTIAL CAPITAL, LLC, *et al.* | Case No. 12-12020 (MG) |
| Debtors. | Jointly Administered |

## MEMORANDUM OPINION AND ORDER (I) SUSTAINING THE RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO THE CLAIMS FILED BY JULIE A. ERIKSEN AND RONALD A. ERIKSEN AND (II) DENYING THE ERIKSENS' ABSTENTION MOTION

*A P P E A R A N C E S :*

JULIE A. ERIKSEN AND RONALD A. ERIKSEN
*Pro Se*
443 Jamestown Ct.
Aurora, IL 60502
By:    Ronald A. Eriksen
       Julie A. Eriksen

MORRISON & FOERSTER LLP
*Attorneys for ResCap Borrower Claims Trust*
250 West 55th Street
New York, New York 10019
By:    Norman S. Rosenbaum, Esq.
       Jordan A. Wishnew, Esq.
       Jessica J. Arett, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Julie A. and Ronald A. Eriksen (together, the "Claimants") filed claim numbers 5573 and

5580 (the "Claims") against GMAC Mortgage, LLC ("GMACM"), each seeking relief in the

amount of $1,000,000.  The Claimants assert violations of federal and Illinois state law relating

to Debtor GMACM's foreclosure on a loan (the "Loan") that GMACM originated in connection

with real property located at 492 Asbury Dr., Aurora IL.  They allege that GMACM wrongfully

foreclosed on their home, causing then emotional distress and other harm.  The purported basis

for the Claims is that GMACM violated federal and state law by failing to disclose that it

converted from a corporation to a limited liability company during the period that GMACM was

servicing the Loan.

The ResCap Borrower Claims Trust (the "Trust") objects to the Claims on the basis that

the Debtors have no liability on the Claims. Additionally, the Trust argues that the Claimants are

judicially estopped from bringing the Claims against GMACM, because the factual events

underlying the Claims all preceded the Claimants' joint chapter 7 bankruptcy case, the Claimants

never disclosed the Claims as assets in their bankruptcy case, and the Claimants were thereafter

granted a discharge.

Rather than respond directly to the Trust's objection, the Claimants move this Court to

abstain from determining the validity of their Claims until the District Court for the Southern

District of New York (the "District Court') determines whether to grant the Claimant's pending

request to withdraw the reference of the Objection to the Claims, and then to transfer the matter

to the District Court for the Northern District of Illinois (the "Withdrawal Petition"), or

alternatively to stay the proceedings.

As explained below, the Claimants fail to establish that abstention is warranted or that a

stay should be granted. Therefore, the Abstention Motion is **DENIED**. Furthermore, the

Claimants are judicially estopped from bringing the Claims, and they have otherwise failed to

state a claim for relief. Therefore, the Objection is **SUSTAINED** and the Claims are

**DISALLOWED** and **EXPUNGED**.

# I.    **BACKGROUND**

Pending before the Court is (1) the *ResCap Borrower Claims Trust's Sixty-Ninth Omnibus Objection to Claims (No Liability Borrower Claims)* (the "Objection," ECF Doc. # 7188), solely with respect to the Claims; and (2) the Claimants' request that the Court abstain from hearing any matter related to their Claims pending a determination on the Withdrawal Petition (the "Abstention Motion," ECF Doc. # 7493). The Trust seeks an order disallowing and expunging the Claims on the basis that the Debtors have no liability on such Claims. The Objection is supported by the Declaration of Deanna Horst (the "Horst Declaration," ECF Doc. # 7188-2), the Declaration of P. Joseph Morrow IV (the "Morrow Declaration," ECF Doc. # 7188-3), and the Declaration of Norman S. Rosenbaum (the "Rosenbaum Declaration," ECF Doc. # 7188-4).

The Trust filed a response to the Abstention Motion and reply in support of the Objection (the "Response," ECF Doc. # 7548), supported by the Supplemental Declaration of Deanna Horst (the "Supplemental Horst Declaration," ECF Doc. # 7548-1). The Claimants filed a reply to the Trust's Response (the "Reply," ECF Doc. # 7582).

On May 14, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The General Bar Date to file proofs of claim was originally set as November 9, 2012, and was extended to November 16, 2012 at 5:00 p.m. (Prevailing Eastern Time) (ECF Doc. # 2093). The Claims were timely filed on November 12, 2012.

On March 21, 2013, the Court entered the Procedures Order, authorizing the Debtors to file omnibus objections to no more than 150 claims at a time, on various grounds, including those set forth in Bankruptcy Rule 3007(d) and those additional grounds set forth in the

3

Procedures Order (ECF Doc. # 3294). The Procedures Order also includes specific protections for Borrowers and sets forth a process for the Debtors (and now the Trust) to follow before objecting to certain categories of Borrower claims. Before objecting to certain Borrower claims, the Debtors must send the applicable Borrower a letter (a "Request Letter") requesting additional documentation in support of the purported claim. (*See* Procedures Order at 4.)

### A.    The Claimants' Loan History and Bankruptcy

GMACM originated the Loan on November 9, 2005. (*See* Obj. Ex. 1 at 28–31.) On or about January 18, 2006, GMACM sold its interest in the Loan to Freddie Mac. (*See id.*) GMACM serviced the Loan from November 9, 2005 until it transferred servicing rights to Ocwen Loan Servicing, LLC on February 16, 2013. (*See id.*) On October 24, 2006, GMACM converted from a corporation to a limited liability company ("LLC") by merger, becoming GMACM Mortgage LLC (such merger, the "Conversion"). (Suppl. Horst Decl. ¶ 9.)

On May 29, 2010, the Loan was referred to foreclosure. (*See* Reply ¶ 14.) At that time, the Claimants were past due for the months of March through May 2010. (*See id.*) An Illinois state court entered a foreclosure judgment in favor of the Debtors on February 28, 2011, and the redemption period expired on June 28, 2011. (*See id.*) On July 14, 2011, the Claimants filed a joint petition for chapter 7 bankruptcy protection in the United States Bankruptcy Court for the Northern District of Illinois, Case No. 11-28958 (the "Eriksen Bankruptcy"). (*See id.* ¶ 15.) In January 2012, the Claimants received an order of discharge. (*See* "Discharge Order," ECF Doc. # 7548-5.)

### B.    The Claims

Julie Eriksen filed claim number 5573 against GMACM; Ronald Eriksen filed claim number 5580 against GMACM. ("Proofs of Claim," Suppl. Horst Decl. Ex. B.) Each Claim was

asserted in the amount of $1,000,000, consisting of a $475,000 secured portion and a $525,000

unsecured portion. (*Id.*) The Court previously sustained the Debtors' objection to the purported

classification of the Claims (*see* ECF Doc. ## 5138, 6332), redesignating and reclassifying each

Claim as a $1,000,000 unsecured claim against GMACM. (Reply ¶ 5.) The stated basis for each

claim is "fraud, conspiracy to commit fraud, RESPA and TILA violations, deceptive business

practices, breach of contract and other wrongful acts." (Obj. Ex. 1 at 28, 30.) The Claimants

responded to a Request Letter from the Trust, clarifying that their claims were based on

violations of RESPA, the Fair Debt Collection Practices Act (the "FDCPA"), and Illinois state

law, including wrongful foreclosure. (*See* "Diligence Response," ECF Doc. # 7548-4, at 4–7.)

The Claimants allege that, when the Conversion occurred, GMACM transferred the Loan

without providing them with notice required by RESPA. (*See id.*) As a result of this alleged

RESPA violation, the Claimants allege that the Debtor's foreclosure was wrongful, causing the

Claimants considerable damages, including the lost value of their home, moving expenses, living

expenses, and "personal harms." (*Id.*)

### C.    The Objection

The Trust seeks disallowance of the Claims on grounds of judicial estoppel and failure to

state a valid prepetition claim against the Debtors. (Suppl. Horst Decl. ¶ 16.) The Trust argues

that the Claimants failed to preserve the Claims by failing to include them on the schedules filed

in the Eriksen Bankruptcy. (*See* Obj. Ex. 1 at 28–31.) According to the Trust, all of the

allegations underlying the Claims occurred prior to the commencement of the Eriksen

Bankruptcy and should have been asserted at that time. (*See id.*) The Trust also contends that

the Claims are baseless because the Conversion did not result in a transfer of any interest in the

Loan and therefore did not amount to a RESPA violation. (*See id.*) The Conversion simply

changed the Debtor from one form of entity (a corporation) to another (an LLC), and the

Claimants were not damaged as a result.  (*Id.*)  The Trust asserts that GMACM did not

wrongfully foreclose on the Loan; the Loan was past due at the time it was referred to

foreclosure.  (*Id.*)

On July 25, 2014, the deadline to respond to the Objection, the Claimants requested

additional time to respond.  (Resp. ¶ 1.)  The Trust agreed to allow the Claimants until August

27, 2014 to respond to the Objection.  (*Id.*)

### D.    The Abstention Motion

On August 29, 2014, the Claimants filed the Abstention Motion in lieu of a response,

requesting that the District Court determine the validity of the Claims.  (*Id.* ¶ 2.)  Annexed to the

Abstention Motion is a copy of the Withdrawal Petition filed in the District Court, seeking to

withdraw the reference of the Claims Objection on *forum non conveniens* and personal injury tort

grounds.  ("Withdrawal Petition," Abst. Motion Ex. A.1 ¶ 14.)  The Claimants contend that this

Court is an inconvenient forum, as they reside in Illinois, not New York (*id.* ¶¶ 9, 12), the Claims

are based on Illinois common law and therefore more suited to be determined in an Illinois court

(*see id.* ¶¶ 13–14, 18), and the Claims are personal injury torts and therefore must be tried in a

federal district court pursuant to 28 U.S.C. § 157(b)(5) (*id.* ¶ 15, 19–20).  The Claimants request

the Court to abstain from hearing any matter related to the Claims until a determination is made

on the Withdrawal Petition.  (Abst. Motion ¶ 10.)  In the alternative, the Claimants request that

the Court stay this proceeding until the District Court rules on the Withdrawal Petition.  (*See id.*)

6

### E.    The Response

The Trust argues that the Abstention Motion should be denied and reiterates its

arguments in support of the Objection.[1]  (*See* Resp. ¶ 5.)  The Trust contends that the Claimants

have not established that mandatory abstention applies, and that the Court should not

permissively abstain from determining the validity of the Claims while the Withdrawal Petition

is pending.  (*Id.* ¶ 18–21.)  The Trust argues that the Court should not stay any matter related to

the Claims while the District Court makes a determination on the Withdrawal Petition because

the Claimants cannot establish a likelihood of success on the merits, they will not be prejudiced

if the Court disallows the Claims, the Trust will be harmed by the cost and delay from a stay, and

there is no public interest that would be served by granting a stay for this private matter.  (*See id.*

¶¶ 22–30.)

### E.    The Reply

The Claimants respond that the Trust's Objection should not be granted based on

equitable principles, essentially arguing that the Trust acted in bad faith throughout the course of

"settlement negotiations" with the Claimants.  (Reply ¶¶ 14, 22.)  The Claimants provide details

of the alleged back and forth of settlement negotiations, all of which are irrelevant to the issues

raised by the Objection and will not be discussed here.  The Claimants argue that as a result of

the Trust's alleged bad faith while negotiating, the doctrines of waiver, equitable estoppel,

promissory estoppel, and "unclean hands" apply, precluding the Trust from obtaining any form

of equitable relief with respect to the Claims.  (*See id.* ¶¶ 14–23.)

The Claimants also reiterate their objections to the Court's jurisdiction over the Claims,

arguing that they suffered damages from GMACM's purported fraudulent foreclosure and

---

[1]     Annexed as Exhibit A to the Response is the Trust's response to the Withdrawal Petition filed in the
District Court, elaborating on the Trust's arguments against withdrawal of the reference.  ("Response to Withdrawal
Petition," ECF Doc. # 7548-2.)

RESPA violations, causing them emotional distress damages and lost economic opportunities.

(*See id.* ¶¶ 24–25.)  As a result, the Claimants argue that the Claims constitute personal injury

torts within the meaning of 28 U.S.C. § 157(b)(5), requiring the District Court's adjudication.

(*See id.* ¶¶ 26–27.)  The Claimants contend that they have not "acquiesced to this Court's

jurisdiction over their personal injury tort claims."  (*Id.* ¶ 27.)  The Claimants conclude that the

Court should exercise permissive abstention or stay the proceedings on the Claims until a

determination has been made on the Withdrawal Petition.  (*See id.* ¶¶ 34–35.)

## II.    DISCUSSION

### A.    Claims Objections

Federal Rule of Bankruptcy Procedure 3007 permits a debtor to make omnibus objections

to disallow up to 100 claims per motion.  Parties making omnibus objections may object to

proofs of claim on the following grounds:

> 1)  they duplicate other claims;
> 2)  they have been filed in the wrong case;
> 3)  they have been amended by subsequently filed proofs of claim;
> 4)  they were not timely filed;
> 5)  they have been satisfied or released during the case in accordance with the Code, applicable rules, or a court order;
> 6)  they were presented in a form that does not comply with applicable rules, and the objection states that the objector is unable to determine the validity of the claim because of the noncompliance;
> 7)  they are interests, rather than claims; or
> 8)  they assert priority in an amount that exceeds the maximum amount under § 507 of the Code.

FED. R. BANKR. P. 3007(d).  Pursuant to the Procedures Order, the Debtors may object to proofs

of claim on the following additional grounds:

> 1)  the amount claimed contradicts the Debtors' books and records;
> 2)  they were incorrectly classified;

8

3)  they seek recovery of amounts for which the Debtors' estates are not liable;

4)  they do not include sufficient documentation to ascertain the validity of the Claims;

5)  the y are objectionable under Bankruptcy Code section 502(e)(1);

6)  they are filed against more than one Debtor entity;

7)  they have not specified the Debtor against whom the Claim has been filed;

8)  they do not specify any amount of the claim (other than Claims explicitly asserted as "unliquidated"); and

9)  they are facially defective

(Procedures Order at 2–3.)

Rule 3007(e) requires omnibus objections to conform to procedural requirements.

Specifically, an omnibus objection must:

1)  state in a conspicuous space that claimants receiving the objection should locate their names and claims in the objection;

2)  list claimants alphabetically, provide a cross-reference to claim numbers, and, if appropriate, list claimants by category of claims;

3)  state the grounds for objection and a cross-reference to the pages in the motion supporting those grounds;

4)  state in the title the identity of the objector;

5)  be numbered consecutively with other omnibus objections; and

6)  contain objections to no more than 100 claims.

FED. R. BANKR. P. 3007(e).

Correctly filed proof of claims "constitute prima facie evidence of the validity and amount of the claim . . . .  To overcome this prima facie evidence, an objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000).  By producing "evidence equal in force to the prima facie case," an objector can negate a claim's presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a preponderance of the evidence that under applicable law the claim should be allowed."  *Creamer*

*v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, No. 12 Civ. 6074 (RJS),

2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted).  If the

objector does not "introduce[] evidence as to the invalidity of the claim or the excessiveness of

its amount, the claimant need offer no further proof of the merits of the claim."  4 COLLIER ON

BANKRUPTCY ¶ 502.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014).

Bankruptcy Code section 502(b)(1) provides that claims may be disallowed if

"unenforceable against the debtor and property of the debtor, under any agreement or applicable

law."  11 U.S.C. § 502(b)(1).  To determine whether a claim is allowable by law, bankruptcy

courts look to "applicable nonbankruptcy law."  *In re W.R. Grace & Co.*, 346 B.R. 672, 674

(Bankr. D. Del. 2006).

### B.    Abstention

#### 1.   *The Bankruptcy Court's Jurisdiction*

Bankruptcy courts have jurisdiction over cases "arising under title 11, or arising in or

related to cases under title 11."  28 U.S.C. § 1334.  "Core proceedings are matters arising under

the Bankruptcy Code or arising in bankruptcy cases."  *Cibro Petroleum Prods. v. City of Albany

(In re Winimo Realty Corp.),* 270 B.R. 108, 119 (S.D.N.Y. 2001) (citations omitted).  "Cases

'arise under' title 11 when the cause of action or substantive right claimed is created by the

Bankruptcy Code.  Cases 'arise in' a title 11 proceeding if they 'are not based on any right

expressly created by title 11, but nevertheless, would have no existence outside of the

bankruptcy.'"  *In re Fairfield Sentry Ltd.*, 458 B.R. 665, 674 (S.D.N.Y. 2011) (internal citations

omitted) (quoting *Baker v. Simpson*, 613 F.3d 346, 351 (2d Cir. 2010)).

Section 157(b)(2) of title 28 of the United States Code provides a non-exhaustive list of

core proceedings, including the "allowance or disallowance of claims against the estate . . . and

estimation of claims or interests for the purposes of confirming a plan . . . but not the liquidation

or estimation of contingent or unliquidated personal injury tort or wrongful death claims against

the estate for purposes of distribution in a case under title 11." 28 U.S.C. § 157(b)(2)(B).

Section 157(b)(5) requires the district court to try personal injury tort claims. 28 U.S.C. §

157(b)(5) ("The district court shall order that personal injury tort and wrongful death claims shall

be tried in the district court in which the bankruptcy case is pending, or in the district court in the

district in which the claim arose . . . .").

The definition of "personal injury tort claim" is not provided in title 28 or title 11. Courts

have adopted different definitions. *Stranz v. Ice Cream Liquidation, Inc. (In re Ice Cream

Liquidation, Inc.)*, 281 B.R. 154, 160 (Bankr. D. Conn. 2002) (citing cases). Some courts adopt

the narrow view that a personal injury tort claim is "a tort [claim] with[] trauma or bodily

injury." *Id.* at 160 (citing *In re Atron Inc. of Mich.*, 172 B.R. 541 (Bankr. W.D. Mich. 1994);

*Perino v. Cohen (In re Cohen)*, 107 B.R. 453 (S.D.N.Y. 1989)). Other courts adopt the broader

view and define a personal injury tort claim as one that arises out of "any injury which is an

invasion of personal rights." *Id.* (quoting *Leathem v. von Volkmar (In re von Volkmar)*, 217 B.R.

561, 566 (Bankr. N.D. Ill. 1998)); *see also Thomas v. Adams (In re Gary Brew Enters. Ltd.)*, 198

B.R. 616, 619–20 (Bankr. S.D. Cal. 1996) (holding that claim brought under section 1983 of the

Civil Rights Act constituted a personal injury tort claim, because section 1983 confers "a general

remedy for injuries to personal rights"). After comparing the narrow and broad definitions of

personal injury tort claims, the court in *Stranz* adopted a hybrid view, holding that where a claim

appears to be a "'personal injury tort claim' under the 'broader' view but has earmarks of a

financial, business or property tort claim, or a contract claim, the court reserves the right to

resolve the 'personal injury tort claim' issue by (among other things) a more searching analysis

11

of the complaint." *Stranz*, 281 B.R. at 161 (concluding that a sexual harassment claim brought against a successor entity of the debtor was a personal injury tort claim within the purview of section 157(b)(5), finding that the availability of equitable relief and damages sufficiently distinguished the claim "from other workplace claims which might constitute financial, business or property tort claims (or even contract claims)"). The Claimants' purported personal injury claims in this case stem from financial and property tort claims, but the Court need not decide here whether the Claimants have stated a claim for personal injury torts. For the reasons explained below, the Court concludes that the Claimants are barred from asserting their claims as a matter of law.

Before reaching the conclusion that the claims are barred, the Court must first address whether the Court can make this determination. Read together, subsections 157(b)(2)(B) and 157(b)(5) do not allow a bankruptcy court to estimate or conduct a trial to liquidate the amount of a personal injury tort claim; but the language of those subsections does not address whether a bankruptcy court may disallow such claims as a matter of law. Lower courts are split whether bankruptcy courts retain authority to determine in the first instance whether to disallow claims alleged to be covered by section 157(b)(5). *See Stranz*, 281 B.R. at 164. Some courts adopt the view that even summary judgment on the allowance of a claim is outside the purview of the bankruptcy court's jurisdiction. *See id.* (citing *In re Schepps Food Stores, Inc.*, 169 B.R. 374 (Bankr. S.D. Tex. 1994)). Other courts reason that a decision on the issue of a debtor's liability on personal injury tort claims is a core proceeding, and section 157(b)(5) does not preclude a bankruptcy court from determining whether to disallow a personal injury tort claim. *See id.* (citing *In re Dow Corning Corp.*, 215 B.R. 346 (Bankr. E.D. Mich. 1997); *U.S. Lines, Inc. v. U.S. Lines Reorganization Trust (In re U.S. Lines, Inc.)*, 262 B.R. 223, 234–35 (S.D.N.Y.

2001)("[A] bankruptcy court may disallow a personal injury claim based on that court's determination that the claim, if litigated, would not be viable in light of the estate's available defenses.")).

The decisions precluding a bankruptcy judge from resolving motions addressed to personal injury tort claims were all decided before the Supreme Court decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011). The Court in *Stern* made clear that section 157(b)(5) is *not* jurisdictional. *Id.* at 2606–07. Absent consent, which *Stern* also makes clear can be given, *see id.*, sections 157(b)(2)(B) and 157(b)(5) prevent the bankruptcy court from estimating or liquidating the amount an allowed personal injury tort claim. A bankruptcy court may determine whether the claims should be disallowed for other reasons.[2] *See In re Alper Holdings USA, Inc.*, 398 B.R. 736, 749 (S.D.N.Y. 2008) ("28 U.S.C. § 157(b)(2)(B) expressly provides that allowance or disallowance of claims is a core proceeding (over which the bankruptcy court has jurisdiction), but excludes the 'liquidation or estimation of contingent or unliquidated personal injury . . . claims.' The bankruptcy court clearly had jurisdiction to disallow the personal injury claim."); *In re Chateaugay Corp.*, 111 B.R. 67, 76 (Bankr. S.D.N.Y. 1990) ("[A] finding that the claim is subject to disallowance as a matter of law is not tantamount to a determination on the merits of the personal injury tort or wrongful death claim.").

As explained below, abstention is also inappropriate here and the Claims must be disallowed as a matter of law.

### 2. *Mandatory Abstention*

A federal court must abstain from hearing a non-core bankruptcy matter concerning state law issues under certain circumstances. Specifically, section 1334(c)(2) provides:

---

[2]     Frankly, this conclusion makes very good sense. Artful pleading, or ignoring legal grounds that bar assertion of a personal injury claim, should not permit a claimant to bypass the orderly claims allowance process established in the Bankruptcy Code.

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).

Mandatory abstention under section 1334(c)(2) applies only if *each* of the conditions set forth in that subsection is satisfied. *See Kirschner v. Grant Thornton LLP (In re Refco, Inc. Sec. Litig.)*, 628 F. Supp. 2d 432, 445 (S.D.N.Y. 2008) ("A party is not entitled to mandatory abstention if it fails to prove any one of the statutory requirements." (citation omitted) (internal quotation marks omitted)). These conditions are:

> (1) the motion was timely brought; (2) the proceeding in federal court is based upon a state law claim; (3) the proceeding is related to a bankruptcy proceeding, but does not arise under Title 11 or arise in a Title 11 case; (4) section 1334 is the sole basis for federal jurisdiction; (5) an action is commenced in state court; and (6) the action can be timely adjudicated in state court.

*Allstate Ins. Co. v. Ace Sec. Corp.*, No. 11 Civ. 1914 (LBS), 2011 WL 3628852, at *6 (S.D.N.Y. Aug. 17, 2011) (citation and internal quotation marks omitted). The burden is on the moving party to satisfy each required element. *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 331 (S.D.N.Y. 2003).

Mandatory abstention does not apply to the Claims. First, a pending state court action is a necessary element for mandatory abstention under 28 U.S.C. § 1334(c)(2). *See Kolinsky v. Russ (In re Kolinsky)*, 100 B.R. 695, 704 (Bankr. S.D.N.Y. 1989) ("The prerequisite for mandatory abstention under 28 U.S.C. § 1334(c)(2) is a pending state court case with appropriate jurisdiction.") (collecting cases); *see also Couri v. Fisher (In re JCC Capital Corp.)*, 147 B.R.

14

349, 354 (Bankr. S.D.N.Y. 1992) (finding that the fact that a state court action was not pending

at the time the motion for abstention was made provided an independent basis to deny such

motion).  The Claimants have not filed a state court action with respect to the Claims.  Second,

the Claims, based in part on alleged RESPA, TILA and FDCPA violations, are rooted in both

federal *and* state law.  Third, the determination that a proceeding is a core proceeding eliminates

the ability of a party to seek mandatory abstention.  *See* 28 U.S.C. § 1334(c)(2) (providing that a

court "shall abstain from hearing" any state law claim or cause of action, upon timely motion of

a party, in any action "related to a case under title 11 but not arising under title 11 or arising in a

case under title 11 . . . ."); *see Stern v. Marshall*, 131 S. Ct. 2594, 2620 (2011) (noting that if a

proceeding is a statutory core proceeding under 28 U.S.C. § 157(b)(2), it "follows that the Court

has subject matter jurisdiction over the action as one 'arising in' a bankruptcy case"); *Residential*

*Funding Co., LLC v. UBS Real Estate Sec., Inc. (In re Residential Capital, LLC)*, 515 B.R. 52,

66 (Bankr. S.D.N.Y. 2014) (concluding that "claims [that] are 'core,' . . . are not subject to

mandatory abstention under 28 U.S.C. § 1334(c)(2)").

Accordingly, the Claimants have not established that mandatory abstention applies.

### 3. *Permissive Abstention*

Permissive abstention may still be granted "in the interest of justice, or in the interest of

comity with state courts or respect for state law."  28 U.S.C. § 1334(c)(1).  Courts in this district

consider several factors when determining whether permissive abstention is warranted,

including:

> (1) the effect on the efficient administration of the bankruptcy
> estate; (2) the extent to which issues of state law predominate; (3)
> the difficulty or unsettled nature of the applicable state law; (4)
> comity; (5) the degree of relatedness or remoteness of the
> proceeding to the main bankruptcy case; (6) the existence of the

right to a jury trial; and (7) prejudice to the involuntarily removed
defendants.

*In re Residential Capital, LLC*, 488 B.R. 565, 577 (Bankr. S.D.N.Y. 2013).  The movant bears

the burden of establishing that permissive abstention is warranted.  *Id.*  A federal court must be

"sparing" in its exercise of permissive abstention "because [it] possess[es] a 'virtual unflagging

obligation . . . to exercise the jurisdiction given [to it]."  *Kirschner*, 628 F. Supp. 2d at 446

(citations and internal quotation marks omitted).

The Claimants have not met their burden of establishing that permissive abstention

should be granted, particularly in light of the narrow circumstances in which permissive

abstention should be exercised.  First, permissive abstention would have a negative impact on the

efficient administration of the Trust.  Not only would permissive abstention delay the claims

allowance process, but it would also increase administrative expenses.  Second, it is unclear from

the Claimants' submissions that state law issues predominate their claims.  To the contrary, the

Claimants primarily allege violations of RESPA.  To the extent that the Claimants allege Illinois

state law claims, such claims are ordinary common law claims that do not involve complex

issues of unsettled Illinois law.  Third, while the Claimants argue that they are prejudiced by the

distance between themselves and the Court, the Claimants were permitted to appear

telephonically and have not otherwise stated how they are harmed by their lack of geographic

proximity to the Court.  Accordingly, the Court expressly finds that permissive abstention is not

warranted.

### C.      Stay Pending a Determination of a Motion to Withdraw the Reference

Pursuant to Rule 5011(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"):

16

> The filing of a motion for withdrawal of a case or proceeding or for abstention pursuant to 28 U.S.C. § 1334(c) shall not stay the administration of the case or any proceeding therein . . . except that the bankruptcy judge may stay, on such terms and conditions as are proper, proceedings pending disposition of the motion.

FED. R. BANKR. P. 5011(c).  The party moving for withdrawal or abstention bears the burden of proof in establishing that a stay would be proper.  *In re Chrysler LLC*, No. 09-50002 (AJG), 2009 WL 7386569, at *1 (Bankr. S.D.N.Y. May 20, 2009) (citation and internal quotation marks omitted).  To prevail on a stay motion, the movant must demonstrate "(a) the likelihood of prevailing on the merits[;] (b) that the [movant] will suffer irreparable harm if the stay is denied; (c) that the Debtors will not be substantially harmed by the stay; and (d) that the public interest will be served by granting the stay."  *In re Dana Corp.*, No. 06-10354 (BRL), 2007 WL 2908221, at *1 (Bankr. S.D.N.Y. Oct. 3, 2007) (citing *In re Issa Corp.*, 142 B.R. 75, 77 (Bankr. S.D.N.Y. 1992)).

Where a stay is sought in connection with a motion to withdraw the reference, the movant must demonstrate that there is a likelihood that its motion will be granted.  Section 157(d) provides:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown.  The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d).

In the Second Circuit, "mandatory withdrawal is reserved for cases where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding."  *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 492 B.R. 133, 137

(S.D.N.Y. 2013) (citing *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 995 (2d Cir. 1990)). The

"routine application of [a] non-Bankruptcy Code federal statute" does not constitute a substantial

and material consideration that requires mandatory withdrawal. *Ionosphere Clubs*, 922 F.2d at

995 (citation and internal quotation marks omitted).

The district court may also withdraw the reference for "cause." *See* 28 U.S.C. § 157(d).

In *In re Orion Pictures Corp.*, 4 F.3d 1095 (2d Cir. 1993), the Second Circuit held that the

determination whether the requisite "cause" exists to withdraw the reference entailed a two-step

inquiry. First, the district court must determine "whether the claim is core or non-core since it is

upon this issue that questions of efficiency and uniformity will turn." *Id.* at 1101. Then, the

district court "should weigh questions of efficient use of judicial resources, delay and costs to the

parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other

related factors." *Id.* Courts in the Second Circuit have routinely applied the *Orion* test for nearly

two decades. *See, e.g.*, *Solutia Inc. v. FMC Corp.*, No. 04 Civ. 2842 (WHP), 2004 WL 1661115,

at *2 (S.D.N.Y. July 24, 2004).

After the Supreme Court's decision in *Stern v. Marshall*:

> [a] court's consideration of a motion to withdraw the reference to
> bankruptcy court should—in addition to the *Orion* factors—
> include consideration of: whether the claims at issue involve a
> public or private right; whether the claims will be resolved in
> ruling on a creditor's proof of claim, if any; and whether the
> parties consent to final adjudication by a non-Article III tribunal.

*Adelphia Recovery Trust v. FLP Grp., Inc.*, 2012 WL 264180, at *3 (S.D.N.Y. Jan. 30, 2012)

(citations omitted). Indeed, such consideration entails determining whether the bankruptcy court

can finally adjudicate a "core" claim. *See id.*

The Claimants have not established that a stay pending a ruling on the Withdrawal

Motion is warranted. First, it is not likely that the District Court will grant the Withdrawal

Motion.  Mandatory withdrawal is not warranted, because no "substantial and material consideration" of a non-Bankruptcy Code federal statute is required to rule on the Objection.  *See Sec. Inv. Prot. Corp.*, 492 B.R. at 137.  Second, as explained below, the Claims are barred by the doctrine of judicial estoppel applicable in bankruptcy cases.  Third, even considering the merits of the Claims, the Court is simply required to apply certain federal statutes, including RESPA, TILA and FDCPA, to the facts alleged by the Claimants; application of RESPA, TILA and FDCPA have been regular features of decisions in the ResCap claims allowance process.  *See, e.g., In re Residential Capital, LLC*, 2014 WL 4854445 (Bankr. S.D.N.Y. Oct. 1, 2004) (TILA and FDCPA); *In re Residential Capital, LLC*, 2014 WL 4925096 (Bankr. S.D.N.Y. Sept. 30, 2014) (RESPA and TILA); *In re Residential Capital, LLC*, 513 B.R. 446 (Bankr. S.D.N.Y. 2014) (RESPA and FDCPA); *In re Residential Capital, LLC*, 513 B.R. 856 (Bankr. S.D.N.Y. 2014) (RESPA and TILA); *In re Residential Capital, LLC*, 2014 WL 340027 (Bankr. S.D.N.Y. Jan. 30, 2014) (FDCPA); *In re Residential Capital, LLC*, 501 B.R. 531 (Bankr. S.D.N.Y. 2013) (TILA).  Fourth, as previously noted, to the extent the Claims allege a personal injury tort, mandatory withdrawal is not required because this Court has jurisdiction over the allowance or disallowance of personal injury tort claims; the only limitation being that the Court lacks authority to estimate or liquidate such claims, which is unnecessary here.

The District Court is unlikely to find that "cause" exists to warrant withdrawal.  This Court is the most efficient judicial forum to resolve claims against the Debtors, and moving this proceeding to another forum would further delay the claims allowance process, increase attendant administrative costs, and encourage forum shopping.  The Claimants are not unduly prejudiced by their geographic location; other than at evidentiary hearings, the Court permits out-of-state parties or their counsel to appear at hearings telephonically.  Most importantly, this

Court can finally adjudicate the Claims, as the Claims constitute "core" claims that necessarily involve the resolution of a proof of claim. Indeed, that is precisely what is at stake. *See Stern*, 131 S. Ct. at 2618 ("Congress may not bypass Article III simply because a proceeding may have *some* bearing on a bankruptcy case; the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process.") (emphasis in original).

Finally, the Claimants have not established that they would suffer irreparable harm if the stay is denied. While they have stated that their geographic distance from the Court is prejudicial to them (*see* Reply ¶ 12), they have not stated how this has harmed them. On the other hand, the Trust has asserted that it would be harmed by the increased cost and delay associated with a stay of this proceeding. (Resp. ¶ 30.)

According to the foregoing, the Abstention Motion is **DENIED**.

### D.    Judicial Estoppel

When a debtor files for bankruptcy protection, his or her assets, including legal and equitable interests, become property of the bankruptcy estate. 11 U.S.C. § 541(a)(1); *Rosenshein v. Kleban*, 918 F. Supp. 98, 102 (S.D.N.Y. 1996). "[E]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541," *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 112 (2d Cir. 2008) (*per curiam*) (internal quotation marks and citation omitted) (alterations in original), including "causes of action owned by the debtor," *id.* (citing *Seward v. Devine*, 888 F.2d 957, 963 (2d Cir. 1989)). As a result, "[p]re-petition causes of action belonging to the debtor are included among the estate's assets." *Kassner v. 2nd Ave. Delicatessen, Inc.*, 2005 WL 1018187, at *2 (S.D.N.Y. Apr. 29, 2005) (citations omitted).

20

Section 521(1) of the Bankruptcy Code requires a debtor to disclose all of her actual or

potential assets, including any and all known causes of action.  *See* 11 U.S.C. §§ 521(1), 1306;

*Chartschlaa*, 538 F.3d at 122 (citing 11 U.S.C. § 521(a)(1)(B)(i), (iii)); *Rosenshein*, 918 F. Supp.

at 102.  "[I]f the debtor has enough information . . . prior to confirmation to suggest that it may

have a possible cause of action, then it is a 'known' cause of action such that it must be

disclosed."  *In re Coastal Plains*, 179 F.3d 197, 208 (5th Cir. 1999) (citations omitted).  A

debtor's disclosure is "essential to the proper functioning of the bankruptcy system," and "the

Bankruptcy Code severely penalizes debtors who fail to disclose assets."  *Chartschlaa*, 583 F.3d

at 122.

To invoke judicial estoppel in the Second Circuit, "(1) the party against whom it is

asserted must have advanced an inconsistent position in a prior proceeding, and (2) the

inconsistent position must have been adopted by the court in some matter."  *Peralta v. Vasquez*,

467 F.3d 98, 205 (2d Cir. 2006) (citations omitted); *accord Uzdavines v. Weeks Marine, Inc.*,

418 F.3d 138, 148 (2d Cir. 2005) (quoting *Stichting v. Schreiber*, 407 F.3d 34, 45 (2d Cir.

2005)); *Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1038 (2d Cir. 1993).  The doctrine of

judicial estoppel requires "a true inconsistency between the statements in the two proceedings."

*Simon v. Safelite Glass Corp.*, 128 F.3d 68, 72–73 (2d Cir. 1997).  "If the statements can be

reconciled there is no occasion to apply an estoppel."  *Id.* at 73 (citations omitted).  Application

of judicial estoppel should be limited "to situations where the risk of inconsistent results with its

impact on judicial integrity is certain."  *Id.* at 72 (citation omitted); *accord Uzdavines*, 418 F.3d

at 148.

While "[t]he circumstances under which the doctrine could be applied are far from clear,"

*Young v. U.S. Dep't of Justice*, 882 F.2d 633, 639 (2d Cir. 1989), many courts in this circuit have

applied judicial estoppel in the bankruptcy context to dismiss undisclosed claims. *See, e.g.*,

*Coffaro v. Crespo*, 721 F. Supp. 2d 141, 145 (E.D.N.Y. 2010) ("In the bankruptcy context,

judicial estoppel is commonly invoked in order 'to prevent a party who failed to disclose a claim

in bankruptcy proceedings from asserting that claim after emerging from bankruptcy.'" (quoting

*Negron v. Weiss*, 2006 WL 2792769, at *3 (E.D.N.Y. Sept. 27, 2006))); *Kunica v. St. Jean Fin.,

Inc.*, 233 B.R. 46, 58 (S.D.N.Y. 1999) (collecting cases); *Rosenshein*, 918 F. Supp. at 104

(same).  Judicial estoppel does not apply where a party's first statement was the product of a

"good faith mistake or an unintentional error." *Ibok v. Siac-Sector Inc.*, No. 05 Civ. 6584 (GBD)

(GWG), 2011 WL 293757, at *7 (S.D.N.Y. Feb. 2, 2011) (citation and internal quotation marks

omitted).  Circuit courts that have considered a debtor's failure to disclose assets in a bankruptcy

"have concluded that 'failure to disclose assets will only be deemed inadvertent or due to

mistake when either the debtor has no knowledge of the claims or no motive to conceal the

claims.'" *Id.* (citing *Coffaro*, 721 F. Supp. 2d at 146 (citation omitted)).

The Claims are barred by judicial estoppel.  All of the factual allegations supporting the

Claims preceded the Eriksen Bankruptcy.  The Conversion occurred in October 2006, the Loan

was referred to foreclosure in May 2010, the Debtors foreclosed on the Loan in February 2011,

and the Claimants commenced the Eriksen Bankruptcy in July 2011.  (Obj. Ex. 1 at 28–29.)

When the Claimants filed their schedules of assets and liabilities in the Eriksen Bankruptcy, they

did not disclose any potential claims against the Debtors.  (*See* "Schedules," Suppl. Horst Decl.

Ex. E, at 16.)  The Claimants' disclosures were accepted by the United States Bankruptcy Court

for the Northern District of Illinois as true statements, because the Claimants' schedules were

relied upon to calculate the discharge they ultimately received.  (*See* Discharge Order.)

Moreover, the Claimants had sufficient knowledge of the facts of the Claims at the time

they filed their schedules.  Nearly five years had passed since the Conversion took place.  The

Claimants had notice that GMACM foreclosed on their Loan no later than February 18, 2011, as

evidenced by the caption of the foreclosure action, which the Claimants submitted to the Trust in

their Diligence Response.  (*See* Diligence Response.)  Belying the possibility that the Claimants

lacked knowledge of the significance of scheduling potential causes of action as assets in the

Eriksen Bankruptcy, the Claimants scheduled certain potential causes of action they held against

other parties as assets.  (*See id.*)

**E.      The Merits of the Claims**

Assuming, *arguendo*, that the Claimants are not judicially estopped from asserting the

Claims, they have failed to meet their burden with respect to the Claims.  The Trust adequately

rebutted the prima facie validity of the Claims, shifting the burden back to the Claimants to

support their Claims.  The Trust represented that the Conversion never resulted in a transfer of

any interest in the Loan, but rather that GMAC Corp. transformed from a corporation to an LLC

in October 2006.  (*See* Obj. Ex. 1 at 29, 31.)  In *Madura v. BAC Home Loans Servicing L.P.*, No.

8:11-cv-2511-T-33TBM, 2013 WL 3777094, at *8–9 (M.D. Fla. July 17, 2013), the district court

held that a mortgage loan servicer that changed its name did not violate sections 2605(b)–(c) of

RESPA, which require transferor and transferee mortgage loan servicers, respectively, to notify

the applicable borrower in writing of any transfer of loan servicing. The court further held that

pursuant to Regulation X, RESPA's implementing regulation, "transfers between affiliates or

resulting from mergers or acquisitions are not considered 'transfers' requiring a RESPA notice if

'there is no change in the payee, address to which payments must be delivered, account number,

or amount of payment due.'"  *Id.* at *9 (citing 24 C.F.R. 3500.21(d)(1)(i)).

Here, the Claimants allege that GMACM somehow injured them by failing to notify them that the Conversion took place in October 2006. However, as the *Madura* court noted, GMACM's failure to provide the Claimants with notice of the Conversion did not amount to a violation of RESPA, because GMACM was under no obligation to send the Claimants notice of undertaking such action.

The Objection is **SUSTAINED**.

### III.    <u>CONCLUSION</u>

For the foregoing reasons, the Abstention Motion is **DENIED**. The Objection is **SUSTAINED**, and the Claims are hereby **DISALLOWED** and **EXPUNGED**.

**IT IS SO ORDERED.**

Dated:  November 18, 2014
          New York, New York

_____*Martin Glenn*_____
          MARTIN GLENN
United States Bankruptcy Judge

24