**Hearing Date: January 14, 2015 at 10:00 a.m. (Prevailing Eastern Time)**
**Response Deadline: December 15, 2014 at 4:00 p.m. (Prevailing Eastern Time)**

MORRISON & FOERSTER LLP
250 West 55th St.
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Meryl L. Rothchild

*Counsel for The ResCap Borrower*
*Claims Trust*

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| ---------------------------------------------------------- ) | | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| ---------------------------------------------------------- ) | | |

## THE RESCAP BORROWER CLAIMS TRUST'S OBJECTION
## TO CLAIM NUMBER 2009 FILED BY TEDDY HALSTEAD

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................................. 1

JURISDICTION, VENUE AND STATUTORY PREDICATE ................................................... 2

BACKGROUND ......................................................................................................................... 3

    I.     Chapter 11 Case Background ................................................................................. 3

    II.    Events Leading to Foreclosure Actions ................................................................ 5

    III.   Claim No. 2009 ................................................................................................... 11

RELIEF REQUESTED .............................................................................................................. 11

OBJECTION .............................................................................................................................. 12

    A.    Generally Applicable Law .................................................................................. 12

    B.    Halstead's Claim No. 2009 Has No Merit .......................................................... 15

        (i)     Halstead's Wrongful Foreclosure Claim Is Without Merit. .................... 15

        (ii)    Halstead's Fraud Claim Is Without Merit. .............................................. 18

    C.    Claim No. 2009 Is Not Properly Asserted Against Debtor ResCap ................... 19

NOTICE ..................................................................................................................................... 20

CONCLUSION .......................................................................................................................... 20

ny-1159365

## Exhibit List

Exhibit 1:       Claim No. 2009

Exhibit 2:       Proposed Order

Exhibit 3:       Priore Declaration

    Exhibit A:       Request Letter Sent by the Debtors to Mr. Halstead

    Exhibit B:       Halstead Mortgage and Note

    Exhibit C:       Assignment of Mortgage from MERS to GMACM

    Exhibit D:       Assignment of Mortgage from GMACM to The Bank of New York Mellon, N.A.

    Exhibit E:       Forbearance Agreement

    Exhibit F:       2010 Foreclosure Complaint

    Exhibit G:       90-Day Notice Letter to Halstead

    Exhibit H:       Pre-Foreclosure Notice Letter to NYS Banking Department

    Exhibit I:       Foreclosure Complaint

    Exhibit J:       Answer to Foreclosure Complaint

Exhibit 4:       Motion to Discontinue

Exhibit 5:       Discontinuation Order

Exhibit 6:       Foreclosure Action Docket

Exhibit 7:       Response to Motion to Discontinue

Exhibit 8:       Notice of Appeal

ny-1159365

# TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant: small-caps">Cases</span>

Ashcroft v. Iqbal,
556 U.S. 662 (2009)...................................................................................................15

Feinberg v. Bank of New York (In re Feinberg),
442 B.R. 215 (Bankr. S.D.N.Y. 2010)......................................................................12

Flake v. Alper Holdings USA, Inc. (In re Alper Holdings USA, Inc.),
398 B.R. 736 (Bankr. S.D.N.Y. 2008).......................................................................13

Haines v. Kerner,
404 U.S. 519 (1972)...................................................................................................15

Hartman v. Gilead Sciences (In re Gilead Sciences Securities Litigation),
536 F.3d 1049 (9th Cir. 2008) ...................................................................................14

In re DJK Residential LLC,
416 B.R. 100 (Bankr. S.D.N.Y. 2009).......................................................................13

In re Hess,
404 B.R. 747 (Bankr. S.D.N.Y. 2009).......................................................................13

In re MF Global Holdings, Ltd.,
Nos. 11-15059 (MG)...................................................................................................12

In re Oneida Ltd.,
400 B.R. 384 (Bankr. S.D.N.Y. 2009), aff'd sub nom., Peter J. Solomon Co.,L.P. v.
Oneida, Ltd., No. 09-cv-2229, 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22, 2010) .........12

In re Rockefeller Center Properties,
272 B.R. 524 (Bankr. S.D.N.Y. 2000), aff'd sub nom., NBC v. Rockefeller Center
Properties (In re Rockefeller Center Properties), 266 B.R. 52 (S.D.N.Y. 2001), aff'd,
46 F. App'x 40 (2d Cir. 2002) ...................................................................................12, 13

In re W.R. Grace & Co.,
346 B.R. 672 (Bankr. D. Del. 2006) ..........................................................................13

Indiana State District Council of Laborers & HOD Carriers Pension & Welfare Fund v.
Omnicare, Inc.,
719 F.3d 498 (6th Cir. 2013) ......................................................................................18

Iwachiw v. New York City Board of Elections,
126 F. App'x 27 (2d Cir. 2005) ..................................................................................18

Johnson v. Riverside Healthcare Systems,
534 F.3d 1116 (9th Cir. 2008) ...................................................................................14

Kimber v. GMAC Mortgage, LLC (In re Residential Capital, LLC),
    489 B.R. 489 (Bankr. S.D.N.Y. 2013) ...................................................................18

Lezynski v. Kasprzyk,
    281 A.D. 346 (App. Div. 4th Dep't 1953) .............................................................15

Marceau v. Blackfeet Housing Authorities,
    540 F.3d 916 (9th Cir. 2008) ................................................................................14

Matsumura v. Benihana National,
    542 F. Supp. 2d 245 (S.D.N.Y. 2008) ..................................................................18

Navarro v. Block,
    250 F.3d 729 (9th Cir. 2001) ................................................................................14

Pawaroo v. Countrywide Bank, *et al.*,
    No. 09-CV-2924 (ARR) (SMG), 2010 WL 1048822 (E.D.N.Y. Mar. 18, 2010)...................15

Satchell v. Dilworth,
    745 F.2d 781 (2d Cir. 1984).................................................................................15

Sprewell v. Golden State Warriors,
    266 F.3d 979 (9th Cir. 2001) ................................................................................14

Vanston Bondholders Protective Committee v. Green,
    329 U.S. 156 (1946) .............................................................................................13

Vignolo v. Miller,
    120 F.3d 1075 (9th Cir. 1997) ..............................................................................14

Warren v. Fox Family Worldwide, Inc.,
    328 F.3d 1136 (9th Cir. 2003) ..............................................................................15

Ziemba v. Cascade International Inc.,
    256 F.3d 1194 (11th Cir. 2001) ............................................................................14

## STATUTES

11 U.S.C. 502(b)(1) ...................................................................................................13, 19

11 U.S.C. § 502(a) ...........................................................................................................12

28 U.S.C. §§ 157 and 1334 .................................................................................................2

28 U.S.C. §§ 1408 and 1409 ...............................................................................................2

New York Real Property Actions and Proceedings Law § 1304 ................................8, 10

iv

**OTHER AUTHORITIES**

Bankruptcy Rule 3007 ...............................................................................................3, 11

Bankruptcy Rule 7008 ...................................................................................................13

Bankruptcy Rule 7009 ...................................................................................................13

Bankruptcy Rule 7012 ...................................................................................................14

FED. R. CIV. P. 8(a)(2) ...................................................................................................13

FED. R. CIV. P. 9(b) ...........................................................................................13, 14, 18

FED. R. CIV. P. 12(b)(6) .................................................................................................14

ny-1159365

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

The ResCap Borrower Claims Trust (the "Borrower Trust"), established pursuant to the terms of the Chapter 11 Plan[1] confirmed in the above-captioned bankruptcy cases (the "Chapter 11 Cases"), as successor in interest to the above-captioned debtors (collectively, the "Debtors") with respect to Borrower Claims (defined below) matters, hereby submits this objection (the "Objection") seeking to disallow and expunge claim number 2009 ("Claim No. 2009"), a copy of which is annexed hereto as Exhibit 1, filed by Teddy Halstead ("Halstead"), pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), on the grounds that Claim No. 2009 fails to state a basis for liability against the Debtors.[2]    The Borrower Trust seeks the entry of an order, substantially in the form annexed hereto as Exhibit 2, granting the requested relief.    In support of the Objection, the Borrower Trust relies upon and incorporates by reference the Declaration of Kathy Priore, Associate Counsel for The ResCap Liquidating Trust, annexed hereto as Exhibit 3 (the "Priore Declaration").    In further support hereof, the Borrower Trust respectfully represents as follows:

## PRELIMINARY STATEMENT

1.    Claim No. 2009 asserted against Debtor Residential Capital, LLC ("ResCap")[3] should be disallowed and expunged from the Claims Register pursuant to section

---

[1]    Terms defined in this paragraph and the Preliminary Statement shall have the meanings ascribed to such terms in the Objection.

[2]    The Borrower Trust reserves all of its rights to object on any other basis to Claim No. 2009 not set forth in this Objection, and to amend this Objection should any further bases come to light.

[3]    As discussed in the Objection, Halstead has no valid legal justification for asserting such claim against ResCap. Therefore, even if Halstead held a valid claim, which, based on the following arguments, the Borrower Trust contends that he does not, such claim would be properly asserted against Debtor GMAC Mortgage, LLC.

502(b) of the Bankruptcy Code.   The Objection demonstrates that Claim No. 2009 is without merit and fails to state any valid basis supporting an allowed claim against the Debtors under applicable law.   Accordingly, Claim No. 2009 should be disallowed and expunged from the Claims Register in its entirety.

2.      Specifically, Claim No. 2009 asserts that Halstead suffered "personal injury" for alleged wrongful foreclosure by robo-signers, and from the alleged fraudulent falsification of transfers of the Mortgage and Note from the loan originator to the actual holder of such loan documents.   See Exhibit 1.   Claim No. 2009 does not include a single piece of documentation to support Halstead's claims.   Halstead submitted a standalone proof of claim form as evidence of his $2,000,000.00 claim against ResCap, and raises no factual or legal arguments on account of his claims against the Debtors.   Halstead fails to demonstrate a nexus between the Debtors' actions and the alleged robo-signing by the Steven J. Baum law firm, or articulate with particularity, a valid legal basis that gives rise to liability on the part of any Debtor.

3.      Since filing Claim No. 2009, Halstead has not been responsive to the opportunities presented to him to further substantiate his claim against the Debtors.   Halstead failed to respond to the Request Letter mailed to him by the Debtors, and did not file a response to the Fifty-First Omnibus Claims Objection to demonstrate the validity of his claim.   Moreover, Halstead has continuously failed to make his Mortgage payments, leaving his account due for payments from September 1, 2009 to present.

## JURISDICTION, VENUE AND STATUTORY PREDICATE

4.      This Court has jurisdiction over this Objection pursuant to 28 U.S.C. §§ 157 and 1334.   Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.   The

statutory predicates for the relief sought herein are Bankruptcy Code section 502(b) and Bankruptcy Rule 3007.

## BACKGROUND

I.    **Chapter 11 Case Background**

A.    **General Overview**

5.    On December 11, 2013, the Court entered an *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* (the "Confirmation Order") approving the terms of the Chapter 11 plan, as amended (the "Plan"), filed in these Chapter 11 Cases [Docket No. 6065]. On December 17, 2013, the Effective Date (as defined in the Plan) of the Plan occurred, and, among other things, the Borrower Trust and the ResCap Liquidating Trust were established [Docket No. 6137].[4]

6.    The Plan provides for the creation and implementation of the Borrower Trust, which is established for the benefit of Borrowers who filed Borrower Claims (as such terms are defined in the Plan) to the extent such claims are ultimately allowed either through settlement or pursuant to an order of the Court.  See Plan, Art. IV.F.  The Borrower Trust was established to, among other things, "(i) direct the processing, liquidation and payment of the Allowed Borrower Claims in accordance with the Plan, and the distribution procedures established under the Borrower Claims Trust Agreement, and (ii) preserve, hold, and manage the assets of the Borrower Claims Trust for use in satisfying the Allowed Borrower Claims."  See id.

---

[4]    The ResCap Liquidating Trust and the Borrower Trust are parties to an Access and Cooperation Agreement, dated December 17, 2013, which, among other things, provides the Borrower Trust with access to the books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.

ny-1159365

B.    **Claims-Related Background**

7.    On May 16, 2012, the Court entered an order [Docket No. 96] appointing

Kurtzman Carson Consultants LLC ("KCC") as the notice and claims agent in these Chapter 11

Cases.    Among other things, KCC is authorized to (a) receive, maintain, and record and

otherwise administer the proofs of claim filed in these Chapter 11 Cases and (b) maintain the

official claims register for the Debtors (the "Claims Register").

8.    On August 29, 2012, this Court entered an order approving the Debtors'

motion to establish procedures for filing proofs of claim in the Chapter 11 Cases [Docket No.

1309] (the "Bar Date Order").[5]

9.    On March 21, 2013, the Court entered an order (the "Procedures Order")

[Docket No. 3294] approving, among other things, certain procedures to be applied in

connection with objections to claims filed by current or former Borrowers (the "Borrower

Claims Procedures").    The Procedures Order includes specific protections for Borrowers and

sets forth a process for the Debtors to follow before objecting to certain categories of Borrower

Claims.    For example, the Borrower Claims Procedures require that, prior to objecting to certain

categories of Borrower Claims, individual Borrowers must be furnished with a letter requesting

additional documentation in support of the purported claim (a "Request Letter").    (See

Procedures Order at 4).

10.    On June 21, 2013, pursuant to the Procedures Order, the Debtors mailed

Halstead a Request Letter, the form of which is annexed to the Priore Declaration as Exhibit A,

---

[5]    The Bar Date Order established, among other things, (i) November 9, 2012 at 5:00 p.m. (Prevailing Eastern Time) as the deadline to file proofs of claim by virtually all creditors against the Debtors (the "General Bar Date") and prescribing the form and manner for filing proofs of claim; and (ii) November 30, 2012 at 5:00 p.m. (Prevailing Eastern Time) as the deadline for governmental units to file proofs of claim (the "Governmental Bar Date").    Bar Date Order ¶¶ 2, 3.    On November 7, 2012, the Court entered an order extending the General Bar Date to November 16, 2012 at 5:00 p.m. (Prevailing Eastern Time) [Docket No. 2093].    The Governmental Bar Date was not extended.

requesting additional information and documentation in support of Claim No. 2009.  See Priore Declaration ¶ 5.  The Request Letter states that the claimant must respond within 30 days with an explanation setting forth the legal and factual reasons why the claimant believes he is owed money or is entitled to other relief from the Debtors and that the claimant must provide copies of all supporting documents that he believes support the basis for the Proof of Claim.  See Request Letter at 1.  The Request Letter further provides that if the claimant fails to provide an explanation and the supporting documentation, the Debtors may file a formal objection to the proof(s) of claim, seeking to have the proof(s) of claim disallowed and permanently expunged. See id.

11.    Halstead did not respond to the Request Letter.  See Priore Declaration ¶ 6.

## II.    Events Leading to Foreclosure Actions

### A.    The Halstead Loan

12.    Halstead is a Borrower under a residential mortgage loan (the "Mortgage") that was originated by Fairmont Funding, Ltd. ("Fairmont") on or about March 27, 2009.  See Priore Declaration ¶ 7; see Mortgage as Exhibit B to Priore Declaration.  The Mortgage, recorded in the County of Bronx on April 20, 2009, was executed and delivered to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Fairmont.  See id. The loan was evidenced by a note in the amount of $399,480.00 (the "Note"), which was secured by real property located at 872 East 216th Street, Bronx, New York, 10467 (the "Property").  See Priore Declaration ¶ 7; see also Note, also attached as Exhibit B to the Priore Declaration. Shortly after the Mortgage's origination, GMAC Bank, n/k/a Ally Bank ("Ally Bank"), a non-Debtor entity, purchased the Mortgage from Fairmont.  See Priore Declaration ¶ 7.  The Note was endorsed from Fairmont to Ally Bank, and subsequently to GMAC Mortgage, LLC

("GMACM") and then to The Bank of New York Mellon Trust Company, N.A. ("BONY Mellon"), as FHA Qualified Trustee for ResCap Liquidating Trust.  See id.  GMACM serviced the loan from March 27, 2009 until servicing transferred to Ocwen Loan Servicing, LLC ("Ocwen") on February 16, 2013.  See id.

13.    On November 6, 2010, MERS, as nominee for Fairmont, assigned Fairmont's rights under the Mortgage to Debtor GMACM.  See Priore Declaration ¶ 8; see Exhibit C annexed to Priore Declaration.  This assignment was recorded on December 1, 2010. See id.

14.    On July 9, 2014, GMACM assigned the Mortgage to Bank of New York Mellon Trust Company, N.A., as FHA Qualified Trustee for ResCap Liquidating Trust.  See Priore Declaration ¶ 9; see Exhibit D annexed to Priore Declaration.  On August 1, 2014, this assignment was recorded in the Bronx County records.  See id.

**B.    Foreclosure Actions and Related Loss Mitigation Activities for the Halstead Loan**

15.    Halstead became delinquent on his Mortgage by failing to make the July 1, 2009 payment.  See Priore Declaration ¶ 10.  On September 11, 2009, the Debtors approved Halstead for a forbearance repayment plan, pursuant to which Halstead made payments in September, October, November, and December of 2009.[6]  See id.; see also Exhibit E annexed to Priore Declaration.  This plan expired on March 5, 2010 pursuant to the agreement's terms.  See id.  Halstead failed to remit payments due on January 11, 2010 and February 11, 2010, respectively, as required by the terms of the forbearance repayment plan.  See Priore Declaration ¶ 10.

---

[6]    These payments were counted in Halstead's loan account towards Halstead's then-delinquent July 1, 2009 and August 1, 2009 payments due; however, Halstead's September 1, 2009 payment was still due and owing.  See Priore Declaration ¶ 10.

16.    On both January 25, 2010 and March 8, 2010, the Debtors mailed loan workout packages to Halstead, as a result of the forbearance repayment plan expiring and as part of the HOPE campaign to assist Halstead in becoming current on his Mortgage payments.  <u>See id.</u> ¶ 11.

17.    On September 15, 2010, the Debtors referred the foreclosure to the Steven J. Baum law firm, as the account was due for the September 1, 2009 payment.  <u>See Priore Declaration</u> ¶ 12.

18.    On December 6, 2010, as a result of Halstead's continued delinquency on making any Mortgage payments due since September 1, 2009, the Steven J. Baum law firm filed a complaint with the State of New York Supreme Court, County of Bronx (the "<u>Bronx Court</u>"), Index No. 382154/10.  <u>See id.</u> ¶ 13; <u>see also</u> <u>Exhibit F</u> annexed to Priore Declaration.

19.    On or about May 2, 2011, GMACM withdrew the foreclosure action due to the expiration of the 90-day default notice sent to Halstead.  <u>See id.</u> ¶ 14.

20.    On May 16, 2011, the Debtors prepared and sent Halstead a notice letter (the "<u>Notice Letter</u>")[7] stating that the Mortgage was 622 days in default, and that Halstead was at risk of losing the Property.  <u>See id.</u> ¶ 15; <u>see</u> <u>Exhibit G</u> annexed to Priore Declaration.  The Debtors appended to the Notice Letter a list of government-approved housing counseling agencies in Halstead's area that provide free or very low-cost counseling to assist Halstead in assessing his financial condition, exploring the possibility for a loan modification, debt repayment plan, or forbearance agreement.  <u>See id.</u>

21.    Also on or about May 16, 2011, GMACM filed a pre-foreclosure notice with the New York State Banking Department, and mailed Halstead a 90-day notice letter

---

[7]    <u>See infra</u> ¶ 29.  Ocwen, in its role as servicer and in connection with the Foreclosure Action, filed a Motion to Discontinue the Foreclosure Action because it could not be verified that the Notice Letter was properly sent.

pursuant to New York law requirements.[8]  See Priore Declaration ¶ 16; see also Exhibit H annexed to Priore Declaration.

22.    On August 18, 2011 and on December 5, 2011, the Debtors referred Halstead's loan to the Rosicki, Rosicki & Associates, PC ("Rosicki") firm as the account was still due for the September 1, 2009 payment.  See Priore Declaration ¶ 17.

23.    On April 4, 2012, at Halstead's request, the Debtors mailed Halstead a loan workout package.  See id. ¶ 18.

24.    On June 11, 2012, the Debtors mailed to Halstead a "cash for keys" solicitation, but received no response from Halstead.  See id. ¶ 19.

25.    On June 21, 2012, GMACM filed a summons and complaint (the "Foreclosure Complaint") against Teddy Halstead, among other defendants,[9] with the Supreme Court of the State of New York, County of Bronx (the "Bronx Court"), Index No. 380678-2012 (the "Foreclosure Action"), to foreclose on the Property pursuant to the terms of the Note and the Mortgage and Halstead's default thereunder.  See Priore Declaration ¶ 20; see also Exhibit I annexed to the Priore Declaration.  The law firm representing GMACM was Rosicki.  See id. On that same date, the Debtors also filed with the Bronx County Clerk a lis pendens against the Property.  See Priore Declaration ¶ 20.

26.    On or about July 16, 2012, Halstead, appearing pro se, filed an answer to the Foreclosure Complaint (the "Answer").  See Priore Declaration ¶ 21; see also Exhibit J annexed to the Priore Declaration.  In the Answer, in addition to asserting a general denial of the Foreclosure Complaint's allegations, Halstead pled the following defenses and affirmative

---

[8]    See New York Real Property Actions and Proceedings Law § 1304 [hereinafter, "N.Y.R.P.A.P.L."].

[9]    The Foreclosure Complaint also names the New York State Department of Taxation and Finance as a party defendant because it held a lien that predated GMACM's lien.  See Exhibit I annexed to Priore Declaration.

8

defenses: (i) plaintiff lacked standing to sue because it was not the legal owner of the note and/or mortgage at the time it commenced the Foreclosure Action; (ii) Halstead did not receive the "Help for Homeowners in Foreclosure" that was supposed to be served with the summons and Foreclosure Complaint; (iii) Halstead had no knowledge that plaintiff was assigned his debt, and plaintiff failed to allege in the Foreclosure Complaint that it has the authority to foreclose; and (iv) the 90-day Pre-Foreclosure Notice was inadequate.  See Exhibit J annexed to the Priore Declaration.  In addition, Halstead asserted counterclaims that included, among others: (i) the Steven J. Baum law firm was closed and settled with the New York State Attorney General's Office for robo-signing and other fraudulent foreclosure activity; (ii) a review of his assignment documents indicate that John Kerr robo-signed these documents and such assignment was a fraud; and (iii) plaintiff used "defective supporting documents" to support a second action where the first foreclosure action was dismissed.  See id.

27.     On August 21, 2012, the Debtors received workout package materials from Halstead, but the package was deficient and missing a number of documents needed to complete the loan workout.  See id. ¶ 22.

28.     As of February 16, 2013, the date Ocwen began servicing Halstead's loan, the Mortgage account was due for the September 1, 2009 payment and all subsequent payments.  See id. ¶ 23.

29.     On March 14, 2013, the GMACM, through its servicer, Ocwen, filed a motion for an order to discontinue the Foreclosure Action and cancel the lis pendens (the "Motion to Discontinue") because it could not be verified that the Notice Letter was sent

correctly to Halstead prior to the commencement of the Foreclosure Action.[10]    A copy of the Motion to Discontinue is annexed hereto as Exhibit 4.    On April 9, 2013, a hearing was held on the Motion to Discontinue.    See Discontinuation Order (defined below), a copy of which is attached hereto as Exhibit 5.    At the time of the hearing, there was no opposition to the Motion to Discontinue.    See id.

30.    On April 15, 2013, the Bronx Court granted the Motion to Discontinue, which (i) discontinued the Foreclosure Action without prejudice and without costs to any party, and (ii) canceled the lis pendens and directed the Bronx County Clerk to discharge the same (the "Discontinuation Order").    See Discontinuation Order, annexed hereto as Exhibit 5.

31.    On April 17, 2013, Halstead filed a response to the Motion to Discontinue (the "Response"), seeking to dismiss the Foreclosure Action with prejudice.    A copy of the Response is annexed hereto as Exhibit 6.    Also on April 17, 2013, the Bronx Court entered the Discontinuation Order in the Foreclosure Action docket, stating that since the Bronx Court decided to discontinue the Foreclosure Action, it declined to more fully address the issues raised in the Response.    See Exhibit 5 annexed hereto; see also a copy of the docket for the Foreclosure Action, attached hereto as Exhibit 6.    The Foreclosure Action was not dismissed on the merits. See Exhibit 5.

32.    On April 26, 2013, Halstead filed a notice of appeal of the Discontinuation Order with the Supreme Court of the State of New York, Appellate Division, Second Judicial Department.    A copy of the notice of appeal is annexed hereto as Exhibit 7.

---

[10]    Section 1304 of the New York Real Property Actions and Proceedings Law requires that a pre-foreclosure notice be sent at least 90 days before lender commences legal action against the borrower).    See N.Y.R.P.A.P.L. § 1304.

Upon information and belief, Halstead failed to timely perfect the appeal by failing to file a memorandum of law in support of the appeal.

### III.    Claim No. 2009

33.    On or about October 31, 2012, Halstead filed a proof of claim, designated as Claim No. 2009 in the Claims Register, as a general unsecured claim in the amount of $2,000,000.00 against ResCap.    See generally, Exhibit 1.    The basis for Halstead's claim is "personal injury for wrongful forclosure [sic] by Robo Signers and fraudulently falsifying mortgage and note transfers from the originator to the actual holder (Steven J. Baum firm)."    See id.    Claim No. 2009 only consists of a proof of claim form, and does not append a single document in support of Halstead's asserted claims and/or his damages.    See id.

34.    On November 8, 2013, the Debtors filed the *Debtors' Fifty-First Omnibus Objection to Claims (Borrower Books and Records Claims – Res Judicata and Wrong Debtor)* [Docket No. 5646] (the "Fifty-First Omnibus Claims Objection") against, among others, Claim No. 2009 filed by Halstead.    Halstead did not file a response to the Fifty-First Omnibus Claims Objection.

35.    On December 16, 2013, the Debtors withdrew the Fifty-First Omnibus Claims Objections solely as it related to Claim No. 2009 [Docket No. 6125].    In its notice of withdrawal, the Debtors reserved all rights to object to Claim No. 2009 on any basis at a future point in time.

### RELIEF REQUESTED

36.    The Borrower Trust hereby files this Objection pursuant to section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007, and seeks the entry of an order, substantially in the form annexed hereto as Exhibit 2, disallowing and expunging Claim No. 2009 from the Claims Register because (i) the claim fails to state a valid legal basis giving rise to liability on

11

the part of any Debtor, and (ii) if such claim is not disallowed, then Halstead may potentially receive a wholly improper recovery to the detriment of other Borrower Trust beneficiaries.

37.     As explained in further detail below and in the Priore Declaration, the Borrower Trust conducted an exhaustive examination of the Debtors' books and records to assess the allegations made in Claim No. 2009, and believes that there is no merit with respect to Halstead's asserted claims because each fails as a matter of law.   Accordingly, the Borrower Trust now files this Objection to Claim No. 2009, which addresses the merits of the allegations set forth therein.

## OBJECTION

### A.     Generally Applicable Law

38.     A filed proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a).  The party objecting to the proof of claim "bears the initial burden of providing evidence to show that the proof of claim should not be allowed." In re MF Global Holdings, Ltd., Nos. 11-15059 (MG), 11-02790 (MG) (SIPA), 2012 WL 5499847, at * 3 (Bankr. S.D.N.Y. Nov. 13, 2012).  If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim.  See In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), aff'd sub nom., Peter J. Solomon Co., L.P. v. Oneida, Ltd., No. 09-cv-2229, 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22, 2010); In re Rockefeller Ctr. Props., 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000), aff'd sub nom., NBC v. Rockefeller Ctr. Props. (In re Rockefeller Ctr. Props), 266 B.R. 52 (S.D.N.Y. 2001), aff'd, 46 F. App'x 40 (2d Cir. 2002).  The burden of persuasion is on the holder of a proof of claim to establish a valid claim against a debtor.  Feinberg v. Bank of N.Y. (In re Feinberg), 442 B.R. 215, 220-22 (Bankr. S.D.N.Y. 2010).

12

39.    Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law…." 11 U.S.C. 502(b)(1).  Whether a claim is allowable "generally is determined by applicable nonbankruptcy law."  In re W.R. Grace & Co., 346 B.R. 672, 674 (Bankr. D. Del. 2006).  "What claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition is filed, is a question which, in the absence of overruling federal law, is to be determined by reference to state law."  In re Hess, 404 B.R. 747, 749 (Bankr. S.D.N.Y. 2009) (quoting Vanston Bondholders Protective Comm. v. Green, 329 U.S. 156, 161 (1946)).  In this matter, New York law governs.

40.    Several courts, including those in this district, have applied the federal pleadings standards when assessing the validity of a proof of claim.  See Bankruptcy Rule 7008 (incorporating FED. R. CIV. P. 8(a)(2) standard requiring a pleading to "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief") and Bankruptcy Rule 7009 (incorporating FED. R. CIV. P. 9(b) heightened pleading standard); see also In re DJK Residential LLC, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) ("In determining whether a party has met their burden in connection with a proof of claim, bankruptcy courts have looked to the pleading requirements set forth in the Federal Rules of Civil Procedure.") (citing In re Rockefeller Ctr. Props., 272 B.R. at 542 n.17, aff'd sub nom., NBC v. Rockefeller Ctr. Props., 226 B.R. 52, aff'd, 46 F. App'x 40; Flake v. Alper Holdings USA, Inc. (In re Alper Holdings USA, Inc.), 398 B.R. 736, 748 (Bankr. S.D.N.Y. 2008) ("The documents attached to the proofs of claim should be treated, for purposes of a motion to disallow claims, like documents that are attached to or relied upon in a complaint are treated on a Rule 12(b)(6) motion to dismiss.") (citation omitted).  Under Rule 9(b), for allegations involving fraud, "a party must state with

particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b).    "The particularity rule serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'"    Ziemba v. Cascade Int'l Inc., 256 F.3d 1194, 1202 (11th Cir. 2001) (internal citations omitted).    In addition, Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"), as incorporated by Bankruptcy Rule 7012, should apply to objections to proofs of claim.    Accordingly, the substantive adequacy of Claim No. 2009 on its face should be judged by Rule 12(b)(6), which tests whether a pleading states a claim for relief.

41.    Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim may be dismissed because of a "failure to state a claim upon which relief can be granted."    FED. R. CIV. P. 12(b)(6).    A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory.    Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).    In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008); Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1997).    The Court, however, is not required to "'accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'"    Hartman v. Gilead Scis. (In re Gilead Scis. Sec. Litig.), 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001)). Although they may provide the framework for a complaint, legal conclusions need not be accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by

14

mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003).

### B.   Halstead's Claim No. 2009 Has No Merit

42.   *Pro se* papers are to be held "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Satchell v. Dilworth, 745 F.2d 781, 785 (2d Cir. 1984) (instructing that "a *pro se* litigant should be afforded every reasonable opportunity to demonstrate that he [or she] has a valid claim."). However, even under this flexible standard, Claim No. 2009, when viewed in the most generous light possible, suffers from several fatal defects. As demonstrated below, each of the claims asserted against ResCap fails as a matter of law. Accordingly, Claim No. 2009 should be disallowed and expunged in its entirety because Halstead has failed to prove by a preponderance of evidence that any Debtor is liable to him for any amounts.

### (i)   Halstead's Wrongful Foreclosure Claim Is Without Merit.

43.   Halstead alleges that the Debtors wrongfully foreclosed on his Property because certain loan documents were purportedly fraudulently robo-signed by the Steven J. Baum law firm. However, Halstead fails to allege with any factual specificity what actions the Debtors took toward foreclosure, and how such actions specifically harmed Halstead. Accordingly, this cause of action for wrongful foreclosure cannot survive. See Pawaroo v. Countrywide Bank, *et al.*, No. 09-CV-2924 (ARR) (SMG), 2010 WL 1048822, at *7 (E.D.N.Y. Mar. 18, 2010) (finding mortgagor failed to allege unlawful interference with property to succeed under New York law for claim of alleged abuse of, among other things, foreclosure process, and citing to Lezynski v. Kasprzyk, 281 A.D. 346, 347 (App. Div. 4th Dep't 1953) for proposition that cause of action for wrongful foreclosure, if any, accrues "upon the entry of judgment of foreclosure and sale . . . .").

15

44.     First, a wrongful act did not cause the property to come into the hands of the Debtors.    To the contrary, Halstead willingly entered the loan transaction, which resulted in his obtaining a $399,480.00 loan to purchase the Property, causing the Mortgage to be placed on the Property.    See Priore Declaration at ¶ 7.    Halstead cannot contend that a "wrongful act" resulted in the Mortgage, nor can Halstead contend that a "wrongful act" resulted in GMACM, as owner and servicer of the loan, taking action to foreclose on the Property.    Halstead's payments on the Mortgage were delinquent since September of 2009.    For nearly two years prior to the filing of the Foreclosure Complaint, the Debtors attempted to work with Halstead on loss mitigation alternatives to foreclosure.    However, when those efforts proved unsuccessful – due to Halstead's failure to remit the documents requested or respond to GMACM's offers – the Debtors had the right to initiate foreclosure activity.    GMACM was the recipient of the valid assignment of the Note and Mortgage, and performed its obligations as the assigned beneficial owner and servicer of that Note when it commenced foreclosure proceedings on the Property.    In sum, GMACM had valid possession of the Mortgage and Note at the time of foreclosure, and acted pursuant to its right as owner and servicer of Halstead's loan, and pursuant to a valid Note and Mortgage.

45.     Moreover, New York courts do not recognize "attempted wrongful foreclosure" as a cause of action.    The foreclosure sale was never consummated; this, combined with the fact that the Debtors did not engage in wrongful and/or fraudulent conduct and that Halstead remains in possession of the Property, makes it difficult to see how Halstead can properly assert a valid claim for wrongful foreclosure.    GMACM chose to discontinue the Foreclosure Action because it was unable to verify that the Notice Letter was sent correctly to Halstead one year prior to the commencement of the Foreclosure Action, not due to any

purported robo-signing. See Exhibit 4 annexed to the Objection. In addition, the Bronx Court never made such a finding when it entered its Discontinuation Order. See Exhibit 5 annexed to the Objection. Moreover, Halstead provides no evidence to support his conclusory statement that forms the entire basis for Claim No. 2009.

46.    The basis of Halstead's Claim No. 2009 is grounded in Halstead's conclusory and unsubstantiated allegation that the Steven J. Baum law firm[11] was involved in the purportedly improper Mortgage and Note transfers. See Exhibit 1. The Steven J. Baum firm did not wrongfully or fraudulently refer Halstead's loan to foreclosure in 2010, as Halstead was delinquent on making his Mortgage payments and his loan account was due for the September 1, 2009 payment (and all subsequent payments). Halstead has not demonstrated that the foreclosure complaint filed against him in December of 2010 was wrongful in any way, the result of fraudulent activity, or caused him harm in any way.

47.    Halstead also fails to provide any evidence to show a nexus between the Debtors' actions and the alleged robo-signing by the Steven J. Baum law firm, or articulate with particularity a valid legal basis that gives rise to liability on the part of any Debtor. Accordingly, Halstead's assertion that the Debtors' foreclosure-related actions were wrongful is not only woefully unsubstantiated, it is plainly incorrect.

48.    Importantly, Halstead fails to provide any facts in support for his claim for damages in any amount, let alone in the amount of $2,000,000.00 asserted in Claim No. 2009. There is nothing in the record of the Foreclosure Action, nor appended to Claim No. 2009, to show that Halstead was damaged in any way. Halstead remains in possession of the Property. To date, Halstead's account remains delinquent for all Mortgage payments accrued since

---

[11]    Upon information and belief, the Steven J. Baum P.C. law firm closed on or about December 31, 2011.

ny-1159365

September 1, 2009.  Claim No. 2009 fails to show that Halstead was harmed or damaged in any way by ResCap, and therefore, the wrongful foreclosure claim fails against ResCap.

        (ii)    <u>Halstead's Fraud Claim Is Without Merit.</u>

        49.    To support his fraud claim, Halstead "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "In order to meet the particularity requirement of Rule 9(b), a plaintiff [must] allege the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." <u>Ind. State Dist. Council of Laborers & HOD Carriers Pension & Welfare Fund v. Omnicare, Inc.</u>, 719 F.3d 498, 503 (6th Cir. 2013) (alteration in original) (internal quotation marks omitted); <u>see also</u> <u>Matsumura v. Benihana Nat'l</u>, 542 F. Supp. 2d 245, 251 (S.D.N.Y. 2008) (explaining that the "heightened pleading requirements [of Rule 9(b)] are applicable to any claim that 'sounds in fraud.'") (internal citation omitted).

        50.    Although "[claims] drafted by *pro se* [claimants] are to be construed liberally, [] they must nonetheless be supported by specific and detailed factual allegations sufficient to provide the court and the defendant with 'a fair understanding of what the [claimant] is complaining about and . . . whether there is a legal basis for recovery.'" <u>Kimber v. GMAC Mortg., LLC (In re Residential Capital, LLC)</u>, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (quoting <u>Iwachiw v. N.Y.C. Bd. of Elections</u>, 126 F. App'x 27, 29 (2d Cir. 2005) (ellipsis in original)).

        51.    In viewing this claim as generously as possible in light of Halstead's status as a *pro se* litigant, the fraud claim is not sufficiently stated against ResCap in Claim No. 2009.  Halstead also failed to provide the Debtors with any evidence of fraud by not responding to the Request Letter mailed to him in June of 2013.  Halstead has only provided a conclusory

18

allegation as the "Basis for Claim" on his proof of claim form.  See Exhibit 1.  Halstead fails to sufficiently plead and demonstrate that any Debtor actually engaged in fraudulent conduct relating to foreclosure activities in connection with his Property.  Specifically, Halstead fails to prove that (i) any Debtor misrepresented its interest in the Note, (ii) any Debtor had knowledge of any purported fraud, (iii) any Debtor intended to defraud Halstead, and (iv) Halstead, in relying on such misrepresentation, suffered damages as a result.

52.    The fact is, Halstead was delinquent in his mortgage payments, and should not have been surprised that foreclosure proceedings would result from this prolonged delinquency.  Further, as discussed above, there is no proof that Halstead suffered any damage, whether legal fees, costs of emotional damages, or any other costs associated with defending the Foreclosure Action.  Moreover, Halstead is still in possession of his home and his account remains delinquent on account of missed payments from August 1, 2009 onwards.

### C.    Claim No. 2009 Is Not Properly Asserted Against Debtor ResCap

53.    Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law. . . ." 11 U.S.C. § 502(b)(1).

54.    The Borrower Trust diligently analyzed Claim No. 2009 and determined that Halstead has no valid legal justification for asserting such claim against ResCap because ResCap was not a named party in the Foreclosure Action, had no involvement in the origination of the Mortgage and Note, nor was it involved in any loss mitigation activity.  Therefore, even if Halstead held a valid claim, which, based on the foregoing arguments, the Borrower Trust contends that he does not, such claim would not be properly asserted against ResCap, as ResCap has no liability due and owing to Halstead.

19

55.     Thus, for each of the reasons set forth above, to avoid the possibility that Halstead receives improper recoveries to the detriment of the Borrower Trust's beneficiaries, the Borrower Trust requests that the Court disallow and expunge Claim No. 2009 in its entirety.

## NOTICE

56.     The Borrower Trust has provided notice of this Objection in accordance with the Case Management Procedures Order, approved by this Court on May 23, 2012 [Docket No. 141], and the Procedures Order.

## CONCLUSION

WHEREFORE, the Borrower Trust respectfully requests entry of an order, substantially in the form of Exhibit 2 attached hereto, (i) disallowing and expunging Claim No. 2009 and (ii) granting such other and further relief as is just and proper.

Dated: November 21, 2014
     New York, New York

/s/  Norman S. Rosenbaum
Norman S. Rosenbaum
Jordan A. Wishnew
Meryl L. Rothchild
MORRISON & FOERSTER LLP
250 West 55th St.
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for The ResCap Borrower Claims Trust*

20