1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 12-12020-mg

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


RESIDENTIAL CAPITAL, LLC, et al.,


          Debtors.

- - - - - - - - - - - - - - - - - - - -x



          United States Bankruptcy Court

          One Bowling Green

          New York, New York


          November 20, 2014

          10:06 AM





B E F O R E:

HON. MARTIN GLENN

U.S. BANKRUPTCY JUDGE

1

2  (CC: Doc. no. 7643) Motion for Objection to Claim(s) Number:

3  5800.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20  Transcribed by:  David Rutt

21  eScribers, LLC

22  700 West 192nd Street, Suite #607

23  New York, NY 10040

24  (973)406-2250

25  operations@escribers.net

3

1

2   A P P E A R A N C E S :

3   MORRISON & FOERSTER LLP

4        Attorneys for Debtors

5        250 West 55th Street

6        New York, NY 10019

7

8   BY:   JORDAN A. WISHNEW, ESQ.

9        JESSICA J. ARETT, ESQ.

10

11

12   TROUTMAN SANDERS LLP

13        Attorneys for ResCap Borrower Claims Trust

14        600 Peachtree Street, NE

15        Suite 5200

16        Atlanta, GA 30308

17

18   BY:   ALEXANDRIA J. REYES, ESQ. (TELEPHONICALLY)

19

20

21

22

23

24

25

1

2   ALSO PRESENT:

3        KATHY PRIORE, ESQ., Associate Counsel, GMAC ResCap

4         (TELEPHONICALLY)

5        WEKESA MADZIMOYO, Claimant/Creditor, Pro Se

6        AFIYA MADZIMOYO, Claimant/Creditor, Pro Se

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

RESIDENTIAL CAPITAL, LLC, et al.                                    5

1                    P R O C E E D I N G S

2           THE COURT:  Please be seated.  We're here in

3    Residential Capital, number 12-12020.  This is the objection to

4    the Madzimoyo claim 5800.

5           Mr. Wishnew?  Why don't we get --

6           MR. WISHNEW:  Good --

7           THE COURT:  -- all of the appearances.  Okay.

8           MR. WISHNEW:  Absolutely, Your Honor.  Good morning,

9    Your Honor.  Jordan Wishnew.  With me is my colleague, Jessica

10   Arett, from Morrison & Foerster, counsel for the ResCap

11   Borrower Claims Trust.

12          The only matter, as you noted this morning, going

13   forward on today's agenda is under Roman numeral II on page 5

14   of today's agenda:  item 1, the ResCap Borrower Claims Trust

15   objection to Claim 5800 filed by Wekesa Madzimoyo.

16   Mr. Madzimoyo is in court, so I'll let him make his appearance.

17          THE COURT:  Okay.  Mr. Madzimoyo, if you'd make your

18   appearance.

19          MR. MADZIMOYO:  Good morning, Your Honor.  My name is

20   Wekesa Madzimoyo.  I'm here in support of our Claim 5800.

21          THE COURT:  Okay.  We'll let Mr. Wishnew argue first;

22   then I'll give you a chance to argue.

23          MR. MADZIMOYO:  That's fine.

24          THE COURT:  Okay?  Thank you very much.

25          All right, go ahead, Mr. Wishnew.

RESIDENTIAL CAPITAL, LLC, et al.                                   6

1          MR. WISHNEW:  Thank you, Your Honor.  Your Honor,

2   we're addressing the Borrower Trust's objection to Claim 5800

3   filed by Mr. Madzimoyo at docket number 7643.  Mr. Madzimoyo

4   filed a response to the objection, on November 16th, filed at

5   docket number 7731.  The Borrower Trust filed its reply on

6   November 17th at docket number 7763.

7          Your Honor, through this objection the Borrower Trust

8   seeks to expunge the proof of claim filed by Mr. Madzimoyo.

9   The Borrower Trust asserts that the allegations in the proof of

10  claim are without merit, as the claim has failed to allege how

11  the debtors' pre-petition actions give rise to liability for

12  the stated causes of action.  Accordingly, the Borrower Trust

13  believes this claim does not represent a valid pre-petition

14  claim against the debtors' estates.

15         In support of the objection, the Borrower Trust

16  submitted declarations by Kathy Priore, associate counsel of

17  the ResCap Liquidating Trust, attached as Exhibit 2 to the

18  objection, and another declaration by Alexandria Reyes,

19  co-counsel to the ResCap Liquidating Trust, attached as Exhibit

20  3 to the objection.  Ms. Priore also submitted a supplemental

21  declaration in support of the objection, which is attached as

22  Exhibit 1 to the Borrower Trust reply.  Ms. Priore and

23  Ms. Reyes are appearing telephonically today and are available

24  to answer any questions the Court might have.

25         Mr. Madzimoyo filed a general unsecured claim,

1  designated as Claim 5880, on November 8th, 2012 in the amount

2  of 2,275,000 dollars against Debtor GMAC Mortgage.  The

3  asserted basis for liability of the claim is "wrongful

4  foreclosure, bad faith, fraud, Civil Action file

5  09-CV-9136-10".  The claim represents Mr. Madzimoyo's attempt

6  to further litigate the pre-petition state-court action that's

7  currently on appeal in Georgia.  The claimant's complaint was

8  brought in 2009 to obtain a temporary restraining order to halt

9  a foreclosure sale.  In that regards, Mr. Madzimoyo has been

10  successful in that he presently remains in his property even

11  though he's not made a mortgage payment in over five years.

12          Notwithstanding Mr. Madzimoyo's ability to stave off a

13  foreclosure sale, his claims against GMAC Mortgage are entirely

14  without merit and devoid of supporting evidence.  More

15  specifically, the claimant failed to substantiate his claims

16  for fraud with any evidence that the debtors made a false

17  representation.  Contrary to his assertions, and as shown in

18  the objection, Bank of New York had proper title to the loan by

19  assignment of a security deed from EquiBank and, therefore, the

20  right to enforce the loan through its servicer, GMAC Mortgage.

21          The claimant fails to allege -- I'm sorry.  The

22  claimant also fails to allege a cause of action for wrongful

23  foreclosure, because no foreclosure has occurred to date and

24  the claimant remains in the possession of his home.  The

25  claimant fails to allege a cause of action for wrongful attempt

RESIDENTIAL CAPITAL, LLC, et al.                                  8

1   at foreclosure, because he's not shown that the foreclosure
2   notice contained any untrue statement when it was published.
3   Finally, the claimant fails to allege a cause of action for
4   quiet title, because once he executed the security deed to the
5   underlying real property, he conveyed title to the property to
6   the lender.

7          In addition, similar to other claimants, Mr. Madzimoyo
8   objects to the submission of Ms. Priore's declaration as
9   hearsay, but the claimant does not identify any of the
10  statements in the Priore declaration as being factually
11  inaccurate, nor does he identify a legitimate basis for calling
12  into question the trustworthiness of Ms. Priore's written
13  testimony.  All the statements made by Ms. Priore are based on
14  information maintained in Debtors' books and records, which are
15  records kept in the ordinary course of the debtors' business.
16  As a result and as set forth in greater detail in the Borrower
17  Trust pleadings, these statements qualify as a permissible
18  exception to the rule against hearsay, under Federal Rule of
19  Evidence 803(6)(B).

20         Therefore, Your Honor, for the reasons discussed in
21  the objection, the Priore and Reyes declarations, as well as in
22  the reply, the relief sought in the objection should be granted
23  and the claim should be disallowed, stricken from the debtors'
24  claims register.

25         THE COURT:  Let me ask you some questions about

1  Mr. Madzimoyo's state-court action, which -- a judgment in

2  favor of all defendants, dismissing the complaint with

3  prejudice, was filed on June 5th, 2014.  And I know

4  Mr. Madzimoyo appealed that ruling on July 2nd, 2014.  What is

5  the status of the appeal?

6         MR. WISHNEW:  I believe Your Honor has been --

7  briefing on the matter.  I think -- and Ms. Reyes, who's on the

8  phone, might be able to correct me -- that --

9         MS. REYES:  Sure.  I'm happy to jump in and help with

10  that as well.  We actually --

11         THE COURT:  Could you -- Ms. --

12         MS. REYES:  Our appellee -- this is Alex Reyes and I'm

13  dialed in from Atlanta, Your Honor.

14         But the matter has been appealed and Mr. Madzimoyo has

15  filed his appellants' brief, and then the appellee's brief is

16  actually due today in the court of appeals.  So the briefing is

17  still ongoing.

18         THE COURT:  All right, thank you.

19         So, Mr. Wishnew, did the debtors join in the motion to

20  dismiss?  I mean, because of the supplemental servicing

21  order --

22         MR. WISHNEW:  Um-hum.

23         THE COURT:  -- the state-court action was able to go

24  forward to the extent -- against the debtors, to the extent

25  that it sought equitable relief, but not with respect to

RESIDENTIAL CAPITAL, LLC, et al.                    10

1   damages.

2           MR. WISHNEW:  Um-hum.

3           THE COURT:  What was -- did GMAC participate -- and if

4   so, how -- in the motion to dismiss in Georgia?

5           MR. WISHNEW:  With regards to the motion to dismiss, I

6   don't know whether GMAC affirmatively put in a pleading in

7   support of the motion to dismiss, as much as the -- they were

8   certainly on board with reopening the case.  And --

9           THE COURT:  But whether you were on board or not is

10  not the issue.

11          MR. WISHNEW:  Right.

12          THE COURT:  Did GMACM participate in the proceedings

13  once the case was reopened?

14          MR. WISHNEW:  If I could defer in that regards to

15  Ms. Reyes and see if she can assist me.

16          MS. REYES:  Your Honor, I'm confirming that right now.

17  But my understanding is that the motion to dismiss was actually

18  filed by the investor; I believe it was Bank of New York Mellon

19  Trust.  And GMAC -- it was noted in the motion -- it was -- I

20  believe it was noted in a footnote.  But I am -- and in fact,

21  I'm taking a look at this right now.  I believe that it was

22  just notated in the motion that GMAC was in bankruptcy and was

23  not actually a moving party on the motion to dismiss.  But I

24  can confirm that with you momentarily.

25          THE COURT:  What was the relief sought in the state-

1  court action --

2          MR. WISHNEW:  The relief --

3          THE COURT:  -- against GMACM?  What was the relief

4  sought?  Was there -- and was it seeking an injunction against

5  foreclosure?  Was it --

6          MS. REYES:  It was, Your Honor.  It was to halt the

7  foreclosure sale.  And it was based on the allegation that the

8  tenants did not produce the original note prior to initiating

9  and scheduling foreclosure proceedings, even though production

10  of the original note is not required under Georgia law.

11         MR. WISHNEW:  Your Honor, there were also damages

12  sought on account of wrongful foreclosure.

13         THE COURT:  Well, I understand there were damages

14  sought --

15         MR. WISHNEW:  Right.

16         THE COURT:  -- but the --

17         MR. WISHNEW:  But --

18         THE COURT:  -- the case could not proceed against

19  GMACM to the extent that it sought damages, but under the

20  supplemental servicing order it could proceed --

21         MR. WISHNEW:  Correct, Your Honor.

22         THE COURT:  -- with respect to the request for

23  equitable relief.

24         MR. WISHNEW:  Correct.

25         THE COURT:  What I'm trying to ascertain is whether --

1     because the court -- GMACM was the defendant, correct?

2               MR. WISHNEW:  Yes, Your Honor.

3               THE COURT:  And the state court dismissed the

4     complaint against all defendants, with prejudice?

5               MR. WISHNEW:  Correct, Your Honor.

6               THE COURT:  Okay.

7               MS. REYES:  Your Honor, if I may.  I just confirmed.

8     Yeah, there's a note.  We filed a motion for judgment on the

9     pleadings, in the state court, on behalf of Defendants Bank of

10    New York Mellon Trust, JPMorgan Chase, and then GMAC Mortgage,

11    with a footnote as to GMAC Mortgage; we said that GMAC is

12    participating only to the extent that the plaintiff is seeking

13    nonmonetary relief against GMAC, as set forth in the amended

14    notice of bankruptcy and effective automatic stay; all claims

15    for monetary relief against GMAC are stayed as a result of the

16    bankruptcy.

17              THE COURT:  Okay.  And what is the Georgia rule with

18    respect to res judicata?  I understand that the appeal is still

19    pending.

20              MR. WISHNEW:  There is no res judicata effect if there

21    is a pending appeal.

22              THE COURT:  Okay.  All right.  All right, is there

23    anything you wish to add to your argument?

24              MR. WISHNEW:  Nothing at this time, Your Honor.

25              THE COURT:  So I gather you acknowledge that in the --

RESIDENTIAL CAPITAL, LLC, et al.                    13

1  just bear with me a second.

2          You acknowledged in the reply that the corrective

3  assignment that was filed still had an error by listing the

4  trust name as "RAMP 2006-RP2" instead of "RAAC Series

5  2006-RP2".

6          MR. WISHNEW:  That's correct, Your Honor.  The RAMP

7  was the issuer, and RAAC was the depositor.  There was

8  certainly a discrepancy in the assignments of deed of trust,

9  but it's our position that that discrepancy is really

10 immaterial and, frankly, not even actionable against GMAC

11 Mortgage.

12         THE COURT:  It's not actionable because, your position

13 is, the borrower doesn't have standing to object with respect

14 to the assignments between the trusts?

15         MR. WISHNEW:  That's correct, Your Honor.  In

16 addition, the fact is, the notice is, frankly -- the notice of

17 foreclosure is simply a prerequisite to pursuing a sale, and a

18 sale has never occurred here.  So Mr. Madzimoyo has never been

19 damaged in any way by these assignments.

20         THE COURT:  Okay, let me hear from Mr. Madzimoyo,

21 okay?  Thank you.

22         MR. WISHNEW:  Thank you, Your Honor.

23         THE COURT:  Good morning, Mr. Madzimoyo.

24         MR. MADZIMOYO:  Good morning.  How are you doing, Your

25 Honor?

1          Let me start with -- we have been damaged severely by

2    this action.  And Georgia -- as I have responded, Georgia does

3    allow for a -- I'll find -- in Hoff (ph.) v. Home Equity

4    Servicing, that publishing untrue information that the

5    homeowner is in default.  Okay.

6              THE COURT:  Well, let me ask you this.

7              MR. MADZIMOYO:  Sure.

8              THE COURT:  Do you dispute that you were in default?

9    You hadn't paid your mortgage.

10             MR. MADZIMOYO:  Yes, I do, Your Honor.

11             THE COURT:  Well, let me ask you --

12             MR. MADZIMOYO:  Yeah.

13             THE COURT:  Let's be clear.

14             MR. MADZIMOYO:  Okay.

15             THE COURT:  Had you stopped paying your mortgage?

16             MR. MADZIMOYO:  To these people, yes, I have.

17             THE COURT:  Yes.  Okay.  So --

18             MR. MADZIMOYO:  Okay --

19             THE COURT:  -- you haven't paid your mortgage for how

20   many years?

21             MR. MADZIMOYO:  It's been six years.

22             THE COURT:  Okay.

23             MR. MADZIMOYO:  Okay.

24             THE COURT:  So why don't you believe you were in

25   default if you stopped paying your mortgage?

1        MR. MADZIMOYO:  Well, because -- I mean, Your Honor,

2   only the party that I owe can tell me that I'm in default,

3   okay?  And every time the defendants -- or the debtor has been

4   called to prove that they have standing to call me in default

5   or access to the power-of-sales clause, they have contradicted

6   themselves, all right, based on what they have filed in the

7   record; and I can show that.

8        In addition to that, on two occasions when they

9   presented that so that they can move forward with foreclosure,

10  those inconsistencies have called two judges to stop them from

11  going forward.  Okay?  That's Judge Hancock (ph.) and initially

12  Judge Barrie.  So whenever -- I can owe you money, but somebody

13  else cannot claim that I'm in default; only you -- you, who I

14  have a contract with, only you can.  And they have not

15  established from the very beginning.

16       And part of our issue here with -- is that we have --

17  our indebtedness has been doubled because we have been --

18  attempted -- the foreclosure has commenced.  And there is a

19  ruling in Georgia that you can file for wrongful foreclosure

20  when a foreclosure has commenced, not necessarily when the sale

21  is completed.  And that's documented there.

22       But this foreclosure -- there were two different

23  foreclosures -- actually, three.  At one time, New York Bank of

24  Mellon Trust was foreclosing for the company, and I'm saying

25  that and I know it's a pool, but it's also a company called

1  RAMP 2006-RP2.  And another time they sought to foreclose in

2  the name of RAAC 2006-RP2.  Both of those companies exist,

3  okay, and both have made claims of our indebtedness.  And the

4  defend -- and the debtor has tried to collect.

5          Now, they try to use You v. Chase, which says it

6  doesn't matter who holds the note.  In Georgia, if they are the

7  holder of the security deed, then they can move forward.  What

8  that doesn't do is it doesn't clear (sic) that we have been --

9  our indebtedness has been claimed.  And get it; I'm not talking

10 about a note that's sold to one and then to the other.  We aver

11 that our note, our indebtedness, has been sold to both RAAM

12 2006-RP2 and RAAC at the same time.  If that is the case, as

13 upon information and belief we believe, then either when they

14 sold it the second time concurrently -- not in sequence -- they

15 either extinguished our debt and then collected payments from

16 us all those years illegally, or they enriched themselves at

17 our expense and without our consent.

18         What we have been denied --

19         THE COURT:  If you haven't paid your mortgage --

20         MR. MADZIMOYO:  -- from the very beginning is

21 discovery.

22         THE COURT:  If you haven't paid your mortgage in five

23 years, how has anybody been enriched?

24         MR. MADZIMOYO:  Well, what -- here is -- they have

25 collected payments from us for over ten years.  Okay.  That's

 1  how they've been enriched.  Okay?  And we understand where the

 2  standoff is, but it's a standoff because they -- Your Honor,

 3  when we asked them -- the reason that Judge Tangela Barrie at

 4  the very beginning, upon looking at fifty pages of exchanged

 5  documents between us and them, when we first started saying,

 6  hello, work with us here, clear this stuff up for us -- this

 7  was not a court situation -- they refused to provide the

 8  documentation.  When she looked at it, there was no assignment

 9  at all.  I don't mean late filing.  I mean not even executed.

10  And it wasn't until seven months after we filed our action and

11  they filed action to foreclose on us, that an assignment was

12  executed.

13          Now, they say it was executed out of abundance of

14  caution.  Here's what the record shows:  it is only after we --

15          THE COURT:  Well, their argument is that, as a matter

16  of law --

17          MR. MADZIMOYO:  Yes?

18          THE COURT:  -- where --

19          MR. MADZIMOYO:  Yes, where there's --

20          THE COURT:  -- through merger --

21          MR. MADZIMOYO:  Yes.

22          THE COURT:  -- that it's unnecessary to do an

23  assignment.

24          MR. MADZIMOYO:  I understand that.

25          THE COURT:  You have any cases that support your

1  position that it was necessary?

2          MR. MADZIMOYO:  No, what we suggest is that because of

3  the inconsistency, all right, then we need -- we haven't had

4  proper discovery to determine it.  Just because they claim it

5  has been -- we've been -- attempted -- two companies claim that

6  we are indebted to them.  And to say, well, we're going to make

7  a second corrective assignment, and it really -- real

8  assignment ought to have gone to RAAP (sic), it doesn't protect

9  us from either of those companies coming back.  Because they

10 have the same trustee, that doesn't mean that trustee cannot

11 come after us, saying that we also owe RAMP or we also owe

12 RAAC.

13         And what we have said is, we have standing to

14 interplead.  Since those two companies, in the name of one

15 trustee, have attempted to foreclose and to claim our

16 indebtedness, then we have a right, under Georgia law, to

17 interplead to have them settle that.  And it can't be settled,

18 in our opinion.  And I'm sorry I'm a little -- I'm excited.

19 I'm --

20         THE COURT:  No, that's okay.

21         MR. MADZIMOYO:  -- a little scared.

22         THE COURT:  Go ahead.  I'm --

23         MR. MADZIMOYO:  It can't be settled by a corrective

24 assignment that changes who owns the property, without some

25 either declarative judgment or some other --

RESIDENTIAL CAPITAL, LLC, et al.                    19

1          THE COURT:  Why is that?

2          MR. MADZIMOYO:  -- affirmation of that.

3          THE COURT:  Why is that?

4          MR. MADZIMOYO:  Well, it has to be at least

5  acknowledged, traditionally, by the other party.  If it

6  belonged to RAMP for years and they said, oops, it really

7  belongs to RAAC -- it's a different company -- then typically

8  RAMP would at least sign off on that.  Okay?  You can't just

9  make the corrective assignment historically.  And I do -- I

10 mean, I have a reference that says you are changing ownership.

11 This is not a scrivener's error; now, they want to claim that

12 it is, okay, but these are different companies.

13         And the declaration by Priore that indicates that RAMP

14 was merely a depositor, first of all, we object to it based on

15 hearsay; secondly -- and that's documented; I won't say it

16 again, unless you ask me.  But secondly, the -- it -- well,

17 just a minute; I lost my thought on that.

18         THE COURT:  That's okay.  Take your time.

19         MR. MADZIMOYO:  Just let me find it here.

20         No, okay, we got -- it's hearsay.  Oh.  She indicates

21 that RAAC -- RAMP was a depositor.  Of course that's

22 contradicted by the Juan Aguirre affidavit that they filed in

23 federal court, who also said he had prior knowledge and he was

24 the one who keeps the books.  And he, and upon his

25 investigation, said RAMP was.  She comes back and says, oh, but

1   RAMP was not -- RAMP was a depositor.  Notice she does not say

2   that RAMP 2006-RP2 was a depositor.  And this is important

3   because in this whole world of securitization and changing

4   hats, RAMP and RAMP 2006-RP2, we don't believe, and they've not

5   provided any evidence, is the same company.  Okay?

6           So RAMP may have been, but that doesn't mean that RAMP

7   2006-RP2 does not own our mortgage as they have claimed -- or

8   our indebtedness, as they have claimed, to the point that they

9   want to say that we owe them.  So they doubled our

10  indebtedness.  And they have an obligation.  All we have tried

11  to get is clear discovery so that they would stand in

12  everything they've submitted.  Everything, each time, has been

13  contradicted by their own filings.

14          THE COURT:  What is it that you want discovery of?

15          MR. MADZIMOYO:  What we want right now is we want RAMP

16  and RAAC interpled so that we get clear, okay.  And that has to

17  meet the Rules of Evidence, not hearsay, not just saying --

18          THE COURT:  What I'm dealing with --

19          MR. MADZIMOYO:  Okay, go ahead.  Yeah.

20          THE COURT:  -- is a claim that you filed --

21          MR. MADZIMOYO:  That's right.

22          THE COURT:  -- against GMACM.

23          MR. MADZIMOYO:  Yes.

24          THE COURT:  There's no interpleaders, there's nothing.

25  You have a claim --

 1              MR. MADZIMOYO:  Yes.  Okay --

 2              THE COURT:  You have filed a claim against GMACM.

 3              MR. MADZIMOYO:  Okay.  All right.

 4              THE COURT:  You and it --

 5              MR. MADZIMOYO:  Right.

 6              THE COURT:  -- are the only --

 7              MR. MADZIMOYO:  Okay.

 8              THE COURT:  -- relevant parties --

 9              MR. MADZIMOYO:  Okay.

10              THE COURT:  -- to what's before me.

11              MR. MADZIMOYO:  To what's on today.  All right.

12  Right.

13              THE COURT:  Okay?

14              MR. MADZIMOYO:  All right.

15              THE COURT:  So let me come back to it:  what is it

16  that you want discovery of?

17              MR. MADZIMOYO:  All right.  GMAC, through ResCap, we

18  claim in our second amended complaint, has doubled our

19  indebtedness by selling concurrently this -- our note, to two

20  different parties.  Okay?  And we want proof that that is not

21  the case or it is the case.  That's what we want discovery on,

22  okay?  All we have is a corrected assignment as their feeble

23  attempt to discredit that, and Ms. Priore's disputed

24  declaration.

25              THE COURT:  When you say -- I understand that you've

1  made a hearsay objection.

2          MR. MADZIMOYO:  Yes.

3          THE COURT:  But what the declaration is used (sic) is

4  to authenticate business records; the documents are attached.

5          MR. MADZIMOYO:  Yes.

6          THE COURT:  Okay.  I don't see that declaration as

7  making affirmative statements of fact other than as to the

8  business records, which is the normal way of doing it.  What is

9  it about the declaration --

10          MR. MADZIMOYO:  Okay.

11          THE COURT:  -- that you believe is inadmissible

12  hearsay?

13          MR. MADZIMOYO:  That --

14          THE COURT:  And let me -- forgive me.  Are you a

15  lawyer or not?

16          MR. MADZIMOYO:  No, I'm not.

17          THE COURT:  No.  Okay.  And I assumed that.  And --

18          MR. MADZIMOYO:  I'm a pro se litigant.

19          THE COURT:  And so you don't have to argue about case

20  law --

21          MR. MADZIMOYO:  Okay.  All right.

22          THE COURT:  -- or just -- okay?

23          MR. MADZIMOYO:  Good.  Here is --

24          THE COURT:  I want to make clear --

25          MR. MADZIMOYO:  I got it.

RESIDENTIAL CAPITAL, LLC, et al.                              23

1       THE COURT:  I'm asking you a question --

2       MR. MADZIMOYO:  I thank you.

3       THE COURT:  -- about it because you --

4       MR. MADZIMOYO:  I thank you.

5       THE COURT:  -- you've made the objection --

6       MR. MADZIMOYO:  I got it.

7       THE COURT:  -- on hearsay.

8       MR. MADZIMOYO:  I got it.  What's required, for us,

9  is -- there're a number of people that she said she relied on

10 for this information.  This information contradicts six years

11 of information, okay, it contradicts, that is, a previous

12 affidavit by someone claiming to be in her own position; his

13 name is Juan Alva -- Aguirre -- Alvarez Aguirre.  He's -- and

14 the first time we took this to federal -- they removed our

15 state petition to federal court; it was in the Northern

16 District of Georgia.  There was another affidavit, and that

17 affidavit clearly said, according to the regularly kept

18 business records that they -- that he reviewed, that RAMP

19 2006-RP2 was the holder of the title and owner of the note.

20      Now, she comes back claiming similar position and

21 knowledge, and it's contradictory.  And that same kind of

22 contradiction has continued through notices of foreclosure,

23 first corrected assignment, second corrected assignment --

24      THE COURT:  But what the --

25      MR. MADZIMOYO:  -- things --

1       THE COURT:  -- what the declaration was used for was

2  to present the court with the documents.  Are you disputing the

3  authenticity of the documents that are attached?

4       MR. MADZIMOYO:  I'm --

5       THE COURT:  Do you understand what I'm asking?

6       MR. MADZIMOYO:  Well, there is no document attached

7  that shows that RAMP -- that FT Mortgage --

8       THE COURT:  Um-hum.

9       MR. MADZIMOYO:  -- sold it to ResCap, that ResCap

10  brought (sic) it, that ResCap then put it -- there are no

11  documents showing that.  All we have is allegations made in the

12  declaration.  Okay?  What we have been asking for and demanding

13  is that, and they have continually avoided in state court and

14  federal court -- federal district court and here.

15       THE COURT:  All right, let me ask -- I'll give you

16  another chance --

17       MR. MADZIMOYO:  Thank you.

18       THE COURT:  -- if you have anything else --

19       MR. MADZIMOYO:  -- Um-hum.

20       THE COURT:  -- you want to say.

21       But, Mr. Wishnew?

22       MR. WISHNEW:  Yes, Your Honor.

23       THE COURT:  Mr. Madzimoyo argues that what the record

24  shows is that the debtors sold the note concurrently to two

25  parties.  What's your response to that?

RESIDENTIAL CAPITAL, LLC, et al.                    25

1          MR. WISHNEW:  I would say that's entirely inaccurate,

2    Your Honor.

3          THE COURT:  Well, but walk me through it.  It's not

4    enough to tell me --

5          MR. WISHNEW:  Yeah.  No, of course.

6          THE COURT:  -- you think it's entirely inaccurate.

7    So --

8          MR. WISHNEW:  Absolutely, Your Honor.  So let's start

9    first with the note, Your Honor, which is attached as Exhibit 2

10   to Ms. Priore's declaration found at docket 7643.

11         THE COURT:  Yes.

12         MR. WISHNEW:  This was her declaration in support of

13   the objection.  The note, signed by Mr. Madzimoyo, is endorsed

14   from --

15         THE COURT:  FT --

16         MR. WISHNEW:  -- FT Mortgage.  This is the stamp at

17   the bottom of the page, which says, "Paid to the order of

18   Residential Funding Corporation, without recourse.  FT Mortgage

19   Companies, dba EquiBank Mortgage Corporation".  So that was

20   from EquiBank, the originator of the mortgage, to RFC.

21         The stamp above that says, "Paid to the order of the

22   First National Bank of Chicago as trustee, without recourse.

23   Residential Funding Corporation".  So that's now assigning the

24   note from Residential Funding Corporation to First National

25   Bank of Chicago as trustee.

RESIDENTIAL CAPITAL, LLC, et al.                    26

1          Turn the page, Your Honor, and we are -- you now look
2    at the first endorsement below the line, which says, "Paid to
3    the order of Residential Funding Corporation, without recourse.
4    Bank One, National Association, as trustee, f/k/a The First
5    National Bank of Chicago as trustee".
6          THE COURT:  All right, so that's from --
7          MR. WISHNEW:  So that's out of the securitization,
8    Your Honor.
9          THE COURT:  Okay.  So that goes from, in effect, First
10   National Mortgage back to --
11         MR. WISHNEW:  Back to RFC, correct.
12         THE COURT:  -- RFC.
13         MR. WISHNEW:  And then the endorsement that -- the
14   stamp that follows, "Paid to the order of JPMorgan Chase Bank,
15   as trustee, without recourse, Residential Funding Corporation"
16   is then from RFC to JPMorgan Trust (sic) Bank.  And then as
17   we've outlined in Ms. Priore's declarations and the objection
18   and our reply, through a series of corporate mergers the note,
19   as it sat with JPMorgan, ultimately ended up with Bank of New
20   York.
21         Let me now address -- I don't mean to cut Your Honor
22   off in terms of any questions you might have, but --
23         THE COURT:  No, go ahead.
24         MR. WISHNEW:  -- to address the point that
25   Mr. Madzimoyo's making about there being a double indebtedness

1   and simultaneously sent to two different entities, what we are

2   talking about here, Your Honor, is an obligation owed to Bank

3   of New York as trustee.  Yes, there was a discrepancy in

4   assignments as to the specific trust that Bank of New York was

5   acting for, but it doesn't change the underlying fact and the

6   underlying -- which is that the obligat -- Bank of New York

7   always owned this loan; they always owned the loan.  The trust

8   for which they were acting -- there might have been a

9   discrepancy, but the obligation has always been to Bank of New

10  York.  And there's only been a single obligation; there's not

11  been two obligations.

12          So I think that really gets to the crux of the matter,

13  Your Honor, that clearly this note is properly -- has always

14  been properly with Bank of New York, there's only been one

15  obligation, and any evidence to the contrary is entirely absent

16  from the record.  So that's --

17          THE COURT:  Okay.

18          MR. WISHNEW:  I'll address that point.

19          So that's the double-indemnus point, Your Honor.  To

20  the extent that Mr. Madzimoyo's last point about hearsay and

21  showing transfers --

22          THE COURT:  Yes.

23          MR. WISHNEW:  -- I believe I've just addressed that

24  point, Your Honor.

25          In terms of enrichment -- unjust enrichment or -- the

RESIDENTIAL CAPITAL, LLC, et al.                    28

1    fact of the matter is, Your Honor, as the note shows,

2    Mr. Madzimoyo took out a loan; he had an obligation to repay

3    his loan.  He paid it for some point in time and then stopped.

4    Any payments up until the point where he began withholding

5    payments, it's not unjust enrichment or enrichment.  The fact

6    of the matter is, he was living up to his obligation and then

7    he stopped doing so.  And the owner of the loan, and its

8    servicer, which acts for the benefit of the investor, was

9    enforcing the rights to collect on the loan.

10            I think -- and so I really -- Your Honor, the point

11   that Bank of New York is the entity who is owed here, not two

12   different trusts, the fact is the actions that have been taken

13   to date, as set forth in both the objection and the reply, have

14   been entirely proper, that there's a clear chain of title here.

15   And frankly, while Mr. Madzimoyo believes he has certain claims

16   against GMAC Mortgage, for the reasons set forth we believe

17   that those claims are invalid and without merit.

18            THE COURT:  Okay.  Mr. Madzimoyo, you want to be heard

19   again?

20            MR. MADZIMOYO:  Yes.

21            THE COURT:  Please.

22            MR. MADZIMOYO:  We have, Your Honor, more than enough

23   evidence over the last several years, both personally and, I

24   think, us as a country, to not just say "because it's said",

25   without evidence.  That is the preference and the deference, at

1   least that I have experienced throughout this case, to a bank

2   allegation or assertion without proof is, to me -- Your Honor

3   just needs to -- the history doesn't show that such presumption

4   need to be -- and I'm not suggesting that you give it or you're

5   there, but we face that, and I'm hoping that you do not.

6          The list 1, 2, 3, Residential -- FT Mortgage,

7   Residential Funding, First National Bank, it is a listing of 1,

8   2, 3, but there're holes in it.

9          THE COURT:  Let me ask you this.

10          MR. MADZIMOYO:  And --

11          THE COURT:  I'll --

12          MR. MADZIMOYO:  Yes, go --

13          THE COURT:  No, go ahead and finish; then --

14          MR. MADZIMOYO:  -- go ahead.

15          THE COURT:  -- I'll ask my question.  I apologize.

16          MR. MADZIMOYO:  No, all I'm saying is, not only

17   that --

18          THE COURT:  Go ahead.

19          MR. MADZIMOYO:  -- but when we have been first

20   challenged -- because we'd been paying our mortgage and

21   faithfully.  And we even had been approved for a modification,

22   working with them.  It is as we started doing some of that

23   investigation that we realized that we believe we were being

24   taken, okay?  So we'd been paying our mortgage, okay, and all

25   of that, but we don't owe these.  And this litany of 1, 2, 3

1   has holes in it.  And then when we then get hit -- because we

2   challenged it and they said -- all the judge did, when we

3   presented our case, just a petition, just a simple petition --

4   I'm a pro se litigant; I'm not a lawyer.  And she looked at it

5   and she saw and she said, please bring proper evidence of chain

6   of title.  That was Judge Tangela Barrie, okay, in July 2009.

7           And every attempt that they have done to -- when they

8   run this litany down of FT Mortgage to Residential Mortgage to

9   whatever, is then contradicted by the record.  And the record

10   then -- so the first was contradicted because there wasn't any

11   execution of it.  The second is that there is a one-

12   satisfaction law, okay, and that is, we're only obligated to

13   pay a debt once.  Deficiency judgments are running rampant now

14   in Florida and in Georgia where mortgage companies are coming

15   after homeowners who they foreclosed on, based, we believe, on,

16   many times, bogus documents.

17           So when we -- when two companies claim that we owe

18   them, both claim it to the point that they are willing to put

19   it as a notice of foreclosure, we take that seriously.  And we

20   have a right to get clarity of that, or else we're not just

21   talking foreclosure here; we're talking New York (sic) Bank of

22   Mellon as trustee can come back to us at any time and say, you

23   now -- you also owe whatever.  I'm not to believe that somehow

24   their records are going to be kept well, after they have had

25   the mess that they have here.  There's no protection in this

RESIDENTIAL CAPITAL, LLC, et al.                    31

1    for me.

2              THE COURT:  Let me ask you this.

3              MR. MADZIMOYO:  Okay.

4              THE COURT:  Well, first off, do you have a lawyer in

5    the Georgia case that's on appeal?

6              MR. MADZIMOYO:  We've done this all, my wife and

7    myself.

8              THE COURT:  Right.  And what was the relief that you

9    were seeking in the Georgia state-court action that's now on

10   appeal?

11             MR. MADZIMOYO:  Okay, two things:  first, an

12   injunction to stop the foreclosure --

13             THE COURT:  Right.

14             MR. MADZIMOYO:  -- second, declaratory relief.

15   Because of the mess of the record, we want the court to --

16   declarat -- and we -- and quiet title --

17             THE COURT:  Let me ask you --

18             MR. MADZIMOYO:  -- and damages.

19             THE COURT:  -- did you raise, in the Georgia action,

20   the --

21             MR. MADZIMOYO:  One-satisfaction --

22             THE COURT:  -- arguments that you've made here about

23   where you argue that they concurrently sold --

24             MR. MADZIMOYO:  Yes.  Yes.

25             THE COURT:  -- your loan --

1          MR. MADZIMOYO:  Well, this --

2          THE COURT:  -- to two parties?

3          MR. MADZIMOYO:  Okay, here's what -- it's after -- in

4   June of 2013 -- May, June 2013, the Supreme Court of Georgia

5   made a ruling upon You v. Chase, which essentially changed the

6   landscape.  Before that time, Reese case, which says you have

7   to say who's the secured creditor on the notice of foreclosure,

8   basically was the law of the land.  The Supreme Court of

9   Georgia then said, the note and the security deed can be split,

10  as long as someone says they hold a security deed, they're good

11  to go, when others said, well, how did you get to be the holder

12  of the security deed, and Montgomery v. Bank of America said

13  you don't have standing because you're not a party to it.

14          Now, the -- and that's what they had been using.  So

15  we modified our complaint, that is, and also included what we

16  heard the Supreme Court justice and the oral arguments of You

17  v. Chase say, and we documented that with a supplemental --

18  affidavit of supplemental authority, when he said, if --

19  because the homeowner -- I mean the lawyer for You said to the

20  Supreme Court, what if there's double jeopardy when you allow

21  for a split of a note and security deed?  He said -- the

22  justice -- Supreme Court justice said, well, if two parties try

23  to claim both indebtedness or that the homeowner -- then the

24  homeowner can interplead them.  Okay?  And so based on that,

25  since it's post You v. Chase, we added that to our complaint.

1        The Superior Court judge, Tangela Barrie, ignored

2   that; we don't think the appellate court will at all.  In

3   addition, we also asked the appellate court to overturn her

4   decision that it should go forward, because we don't think that

5   Supplemental Rule, I think, 14, was met.  There was no

6   separation.  In order for her to say, okay, you can go forward

7   but you're going to separate out GMAC, then there needed to

8   have been some separation of what those were and how it would

9   go forth or not.  And that hasn't happened.

10        So, literally here we are in two courts, okay, arguing

11   both against GMAC here and GMAC there --

12        THE COURT:  Right.

13        MR. MADZIMOYO:  -- which should not be.

14        THE COURT:  All right.  Mr. Wishnew --

15        Thank you very much.

16        MR. MADZIMOYO:  Thank you.

17        THE COURT:  So is GMACM a party to the appeal that's

18   pending in Georgia?

19        MR. WISHNEW:  To the extent they are named, Your

20   Honor, I believe so.

21        THE COURT:  Right.  I think Ms. Reyes --

22        MR. WISHNEW:  But I think --

23        THE COURT:  -- had indicated that they did join in the

24   motion to dismiss, to the extent that it was seeking equitable

25   relief --

1          MR. WISHNEW:  That's correct, Your Honor.

2          THE COURT:  And the complaint was dismissed in its

3   entirety, with prejudice.  And here's what I'm trying to

4   understand, okay:  if -- and I don't know whether I'm going to

5   do this or not, because I'm going to take the matter under

6   submission; but if I were to expunge the claim --

7          MR. WISHNEW:  Sure.

8          THE COURT:  -- and the Georgia appellate court

9   reverses the decision of the court below --

10          MR. WISHNEW:  Sure.

11          THE COURT:  -- Section 502(j) of the Bankruptcy

12   Code --

13          MR. WISHNEW:  Will ask for reconsideration.

14          THE COURT:  Mr. Madzimoyo -- and I recognize you're

15   not a lawyer, so --

16          MR. MADZIMOYO:  All right.

17          THE COURT:  502(j) -- I can't give you any legal

18   advice, but 502(j) provides that "[a] claim that has been

19   allowed or disallowed may be reconsidered for cause.  A

20   reconsidered claim may be allowed or disallowed according to

21   the equities of the case.  Reconsideration of a claim under

22   this subsection does not affect the validity of any payment or

23   transfer from the estate made to a holder" -- I'll stop

24   reading; it goes on.

25          But I guess my question is this:  if the Georgia

1    appellate court reverses and sends the case back to the Georgia

2    trial court, do you agree that Mr. Madzimoyo, if I were to

3    expunge the claim, could make a motion under 502(j) for

4    reconsideration, in light of the subsequent decision by the

5    Georgia appellate court?

6            MR. WISHNEW:  Give me --

7            THE COURT:  Or are you going to be going to the

8    Georgia court and say, Judge Glenn has expunged the claim, that

9    precl -- it's now -- the issue before you as to GMACM is now

10   moot?

11           MR. WISHNEW:  Can you give me one minute, Your Honor?

12           THE COURT:  Yes.

13           MR. WISHNEW:  I'd like to read 502(j).

14       (Pause)

15           MR. WISHNEW:  Your Honor, I would agree that he could

16   come back and seek reconsideration of the Court's earlier

17   decision, based upon a change in circumstances.  I think, as a

18   court of equity, the Bankruptcy Court would --

19           THE COURT:  Well, there's for-cause --

20           MR. WISHNEW:  Correct, Your Honor.

21           THE COURT:  -- language.

22           MR. WISHNEW:  Right.

23           THE COURT:  And I guess I'm equally concerned -- look,

24   Mr. Madzimoyo had the right to proceed with his action in state

25   court in Georgia, including against GMACM --

RESIDENTIAL CAPITAL, LLC, et al.                    36

1          MR. WISHNEW:  Um-hum.

2          THE COURT:  -- well, not as to damages --

3          MR. WISHNEW:  Um-hum.

4          THE COURT:  -- but as to equitable relief.  And

5    Ms. Reyes acknowledged that there was a request for equitable

6    relief.  The case was dismissed with prejudice but he's

7    appealed.

8          MR. WISHNEW:  Right.

9          THE COURT:  Okay.  I would be very uncomfortable

10   ruling while that appeal was pending, if GMACM were going to

11   take a position on the appeal that my ruling had a preclusive

12   effect on whatever the Georgia appellate court was to decide.

13   I mean, I'm perfectly prepared -- I'm not prepared -- I'm not

14   ruling from the bench and I don't know what my decision's going

15   to be.  I take these issues seriously.  And I'm prepared to go

16   forward and render a decision.

17         MR. WISHNEW:  Right.

18         THE COURT:  But I'm not trying to jump ahead of the

19   Georgia appellate court.  There is -- if I were to decide in

20   the trust's favor, 502(j) would provide --

21         MR. WISHNEW:  Yeah.

22         THE COURT:  -- an avenue for Mr. Madzimoyo to come

23   back to this Court and say, Judge, see what the intermediate

24   appellate court in Georgia has done.

25         MR. WISHNEW:  Yeah.  I would agree with Your Honor.  I

1  think that 502(j) is basically, for lack of a better term,

2  almost the safety valve here, because we do have simultaneous

3  litigation and the Bankruptcy Court has the right to address

4  the claim now.  I think ultimately, if there is a ruling in

5  Mr. Madzimoyo's favor at the appellate level in Georgia, it

6  would be unfair of the trust to say, that's it, you're done,

7  you don't have any chance to come back to the bankruptcy court.

8  I think that's why 502(j) is in the Code, for that --

9           THE COURT:  I agree.

10          MR. WISHNEW:  -- for that specific reason.  But

11 obviously, Mr. Madzimoyo bears the burden under 502(j) to prove

12 for cause.  And the trust certainly reserves its rights to

13 address whether he's met his burden at that --

14          THE COURT:  I'm not --

15          MR. WISHNEW:  -- point in time.

16          THE COURT:  I'm not getting into -- I don't know what

17 I'm going to rule, yet.

18          MR. WISHNEW:  Right.  No, understood.

19          THE COURT:  But I just -- I think this has come up

20 once before in ResCap where -- he's permitted to proceed --

21          MR. WISHNEW:  Yes.

22          THE COURT:  -- to the limited extent of equitable

23 relief.  He can go forward with damages as to the nondebtors.

24          MR. WISHNEW:  Yeah.

25          THE COURT:  Nothing I do precludes you from doing

1    that.  But because he does have a claim for equitable relief

2    that he asserted against the debtors, if he had a complete

3    victory in Georgia it might not be for damages but it certainly

4    could be persuasive to me as to why he has a damages claim that

5    I would have to reconsider.  Okay.

6          All right, that's helpful to me.  I'm going to take

7    the matter under submission and in due course I'll be entering

8    something in writing.  Please, it doesn't sound like -- since

9    the last brief has not been filed with the appellate court in

10   Georgia yet, it doesn't sound like there's an imminent decision

11   forthcoming.  And of course, whatever the intermediate

12   appellate court does can be subsequently appealed.  The only

13   thing I -- the only point I would make is, if you were -- and I

14   don't know what your state-court procedures are in Georgia.

15   The intermediate appellate court may not be the final word one

16   way or the other.  The ResCap case moves forward.  There hasn't

17   been a distribution yet on borrower claims, but it will

18   hopefully happen.  I'm not trying to hold up distributions to

19   borrowers.  So there's certainly -- circumstances could change

20   here, where distributions are made -- it's not -- I don't think

21   it's imminent, but I just wanted to make that clear.

22         Anyway, I'm going to take the matter under submission.

23   I appreciate your coming to court today.  I hope you're going

24   to enjoy New York while you're -- you live in Georgia, right?

25         MR. MADZIMOYO:  I live in Georgia.  It's cold here

1  too.

2          THE COURT:  It's a little chilly here for the last

3  couple of days.

4          MR. MADZIMOYO:  Well, it's been chilly in Georgia;

5  it's ridiculous.

6          THE COURT:  Okay.

7          MR. MADZIMOYO:  Anyway.

8          MRS. MADZIMOYO:  His birthday was yesterday.

9          THE COURT:  Happy birthday.

10          MR. MADZIMOYO:  Thank you.  I do enjoy New --

11          THE COURT:  So I hope you can enjoy New York while

12  you're here.

13          MR. MADZIMOYO:  Thank you.

14          THE COURT:  Okay?

15          MR. MADZIMOYO:  I will.

16          MRS. MADZIMOYO:  Thank you.

17          THE COURT:  All right, I'm going to take the matter

18  under submission.

19          MR. MADZIMOYO:  Thank you, Your Honor.

20          THE COURT:  Okay.

21          MR. WISHNEW:  Thank you for your time, Your Honor.

22          THE COURT:  Thank you very much.  That's the only

23  thing --

24          MR. WISHNEW:  And wishes for --

25          THE COURT:  -- we have --

RESIDENTIAL CAPITAL, LLC, et al.                    40

1              MR. MADZIMOYO:  -- happy holidays.

2              THE COURT:  That's the only thing we have for today,

3    right?

4              MR. WISHNEW:  That's the only thing, Your Honor.

5              THE COURT:  Okay.  Happy Thanksgiving to all of you.

6              MR. WISHNEW:  Thanks.

7              THE COURT:  Okay.

8         (Whereupon these proceedings were concluded at 10:52 AM)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T I O N

I, David Rutt, certify that the foregoing transcript is a true
and accurate record of the proceedings.

_____

DAVID RUTT

AAERT Certified Electronic Transcriber CET**D 635


eScribers

700 West 192nd Street, Suite #607

New York, NY 10040


Date:  November 24, 2014