**CHASE**

*Exhibit A*

**Chase Home Finance LLC**
3415 Vision Drive
Columbus, OH 43219-6009
(800) 848-9136 Customer Care
(800) 582-0542 TDD / Text Telephone

Date: July 13, 2005

THOMPSON MARIA M
29    GENERAL LN
WILLINGBORO, NJ 0804600000

RE:    Loan Nbr:                      000000001689876410
       Property Address:             137  ELLERY AVE
       Property City, State, Zip:    NEWARK, NJ 0710600000

This letter is to acknowledge that Chase has received the funds to pay off your mortgage loan referenced above. Chase Home Finance LLC (Chase) will forward the required document to release its lien, shortly. If state law requires that Chase record the release document, we will prepare the document and send it to the appropriate county for recording.

This letter will serve as proof that the above referenced loan is paid in full. Within 30 days from receipt of the payoff funds, Chase will forward any funds received in excess of the payoff amount and any remaining escrow funds to you. Unless notified, Chase will send overpayment or escrow refund you are entitled to as a result of this payoff and your 1098 year end interest statement to the mailing address used in sending this letter. To prevent delays, it is imperative that you inform us of any change to your mailing address.

If Chase was collecting escrow funds for taxes or insurance, the payment of these items is now your responsibility. Please contact your homeowner's insurance agent and your taxing authority to advise them of the address for forwarding future related correspondence and bills. If your mortgage payment included optional insurance, this coverage was canceled when your loan was paid off. If you refinanced your loan through Chase, please contact Customer Care at (800) 848-9136, if you wish to inquire about continuing this coverage.

Chase's goal is to provide the highest level of quality service. If you have any questions or want to change your mailing address, please contact Customer Care at (800) 848-9136. You may speak with a Customer Care Professional, available Monday through Friday from 8:00 a.m. to 6:00 p.m., Eastern Time.

We appreciate the opportunity to have serviced your mortgage loan and hope that you will look to Chase for your future financial needs.

Sincerely,

Reconveyance Services
Chase Home Finance LLC                                          Loan Type: 000

Reconveyance Services for Alaska, California and Nevada are
Provided by J.P. Morgan Chase Custody Services, Inc.

Thankyou.doc

Return To:
JPMorgan Chase Custody Services
P.O. Box 8000
Monroe, LA. 71211

*Exhibit B*

Prepared By:



Instr# 5068085                    Carole A. Graves
Recorded/Filed   RG    2          Essex County Register
05/12/2005  14:53:5  Bk 10463 Pg 773 #Pgs  20   1

———————————— [Space Above This Line For Recording Data] ————————————

# MORTGAGE

90844

WHEN RECORDED, RETURN TO:
Peelle Management, Recon Division
P.O. Box 30014
Reno, NV 89520-3014
(775) 827-9600

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

PAID FULL

(A) "Security Instrument" means this document, which is dated May 10, 2005,
together with all Riders to this document.
(B) "Borrower" is
Maria M. Thompson, a single person

"The within Mortgage having been
paid in full, the County Clerk of
ESSEX                County is
hereby authorized to cancel of record"
BY: _____ Marshe' Craine
OF:  JP Morgan Chase Bank NA
ON: 7-12-05
Vice President

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is
JPMorgan Chase Bank, N.A.
Lender is a  national banking association
organized and existing under the laws of the United States of America

1689876410

NEW JERSEY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3031 1/01

-6(NJ) (0005).01
Page 1 of 15                    Initials:
VMP MORTGAGE FORMS - (800)521-7291

CANCELLED OF RECORD

AUG 16 2005          X FKA JP Morgan Chase Bank

Carole A. Graves
                Register

Instr# 5119622                    Carole A. Graves
Recorded/Filed  LD    26          Essex County Register
08/16/2005  15:31:0  Bk    Pg 0    #Pgs 1   1

**Inst# 5068085 BK# 10463 PG# 773**

① 4-23-12    ⑥ RaH    ⑨ 0359188459

89171-R1 GMAC    ZUCKER,GOLDBERG & ACKERMAN,LLC
ATTORNEYS AT LAW
200 SHEFFIELD ST. SUITE 301
When recorded mail to    MOUNTAINSIDE, N.J. 07092
Ameriquest Mortgage Company
P.O. Box 11507,
Santa Ana, CA 92711

*Exhibit C*

⑦ Loan Number: ~~XXXXXXXXX~~

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, whose address
is: 1100 Town and Country Road  Orange, CA 92868

by these presents does convey, grant, bargain, sell, assign, transfer and set over to: U.S. Bank National Association
as Trustee for Citigroup Mortgage Loan Trust, Inc., Mortgage Pass-Through Certificates Series
2005-9
("Assignee")

whose address is: % GMAC Mortgage, 1100 Virginia Dr., Fort Washington, PA 19034
the described Mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights
due or to become due thereon.

Said Mortgage is recorded in official records of  ESSEX    County, State of New Jersey
Recorded in Book 10772 on Page 595 . Ins# 5145468  Recorded: 10-3-05

Original Loan Amount:  two hundred five thousand and 00/100

($ 205,000.00 )

Original Mortgagor:  MARIA M THOMPSON and ELDA THOMPSON, SINGLE DAUGHTER

Original Mortgagee:  Ameriquest Mortgage Company

PROPERTY ADDRESS:  137 ELLERY AVENUE, NEWARK, NJ 07106
    "LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF"

IN WITNESS WHEREOF, the Undersigned has hereunto set its hand and seal or caused these presents to be
signed by its proper corporate officers and its corporate seal to be hereto affixed on  07/05/2005  .

Signed, Sealed and Delivered in the presence of or attested by:

Ameriquest Mortgage Company

By:
    Loretta Barnes - Agent

(Corporate Seal)

State of  California
County of  ORANGE
On  07/05/2005    before me,    MARJORIE JORGENSEN
personally appeared  Loretta Barnes

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s)
whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s) or the entity upon behalf of which is the person(s) acted, executed the
instrument.

WITNESS my hand and official seal

_____ (Seal)
    MARJORIE JORGENSEN

Prepared By:  Ameriquest Mortgage Company
    1100 Town & Country Road  Orange, CA 92868



MARJORIE A. JORGENSEN
Commission # 1358072
Notary Public - California
Orange County
My Comm. Expires May 25, 2006

89171-R1 AOM 062612

Identifier:0359188459    Doc Type:NOTE

Loan Number: 0125512845 - 6516

# ADJUSTABLE RATE NOTE
### (LIBOR Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

. July 22, 2005
Date

Orange
City

CA
State

3779 JACKSON, OGDEN, UT 84403
Property Address

### 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ 103,000.00  (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is  Ameriquest Mortgage Company.

I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of  5.875 %. This interest rate I will pay may change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS
**(A) Time and Place of Payments**
I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on   September 1, 2005 .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on, August 1, 2035 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my payments at:    505 City Parkway West, Suite 100,  Orange, CA 92868

or at a different place if required by the Note Holder.
**(B) Amount of My Initial Monthly Payments**
Each of my initial monthly payments will be in the amount of U.S. $ 636.87.  This amount may change.
**(C) Monthly Payment Changes**
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

### 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
**(A) Change Dates**
The interest rate I will pay may change on the first day of,  August, 2008  and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."
**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."
If at any point in time the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information.  The Note Holder will give me notice of this choice.
**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding  two and three-quarters percentage point(s) (2.750%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eight of one percent (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.



Initials:

Identifier:0359188459

Loan Number: 0125512848 - 5516

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **7.875 %** or less than **5.875%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One percentage point(s) 1.000%)** from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **11.875 %** or less than **5.875 %**.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. PREPAYMENT PRIVILEGE**

I may repay all or any part of the principal balance of this Note in accordance with the terms of this Section without incurring a prepayment charge. A "prepayment" is any amount that I pay in excess of my regularly scheduled payments of principal and interest that the Lender will apply to reduce the outstanding principal balance on this Note in accordance with this Section.

**(A) Application of Funds**

I agree that when I indicate in writing that I am making a prepayment, the Lender shall apply funds it receives in accordance with the order of application of payments set forth in Section 2 of the Security Instrument.

**(B) Monthly Payments**

If I make a prepayment of an amount less than the amount needed to completely repay all amounts due under this Note and Security Instrument, my regularly scheduled payments of principal and interest will not change as a result.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces the principal, the reduction will be treated as a partial prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payment**

If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **6.000%** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.



0000012551284800000690302

201-2UN9V (Rev. 07/03)

2 of 3

Initials:

07/22/2005 5:04:28 PM

Identifier:0359188459    Doc Type:NOTE

*Exhibit A*
*3043*

L█ Number: 0125512648 - 5516

9. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10. **WAIVERS**
I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11. **UNIFORM SECURED NOTE**
This Note is a uniform instrument with limited variations in some jurisdictions. In addition, to the protections given to the Note Holder under this Note, A Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That the Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any Interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without the Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonable determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition of Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**Oral agreements, promises or commitments to lend money, extend credit, or forbear from enforcing repayment of a debt, including promises to extend, modify, renew or waive such debt, are not enforceable. This written agreement contains all the terms the Borrower(s) and the Lender have agreed to. Any subsequent agreement between us regarding this Note or the instrument which secures this Note, must be in a signed writing to be legally enforceable.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)    _____ (Seal)
Borrower    JEREMY POORTE    Borrower    MICHELLE POORTE

_____ (Seal)    _____ (Seal)
Borrower    Borrower



*Exhibit E*
*1 of 18*



# Forensic Review Report

Prepared by The Foreclosure Law Center
Borrower: Maria & Elda Thompson
Date: 7/23/2012

© Aequitas Compliance Solutions INC. All Rights Reserved.

## TABLE OF CONTENTS          *Exhibit E   2 of 10*

Review Letter.................................................................... 4

Forensic Review Summary............................................. 5

Forensic Review Details................................................ 7

**Appendix A: Description of Forensic Review Scope....8**

**Appendix B: Discussion of Selected Laws.................. 10**

**Appendix C: Comments................................................. 12**

**Appendix D: System Loan Report................................ 14**



*Exhibit E* 3 of 18

7/23/2012

Maria & Elda Thompson
137 Ellery Avenue
Newark, NJ 07106

Dear Maria & Elda Thompson,

Enclosed with this letter you will find the Forensic Review Report resulting from an automated system consumer protection regulatory compliance review of the following loan file:

| | | | |
|---|---|---|---|
| Borrower Name: | Maria & Elda Thompson | Loan Amount: | $205,000.00 |
| Lender Name: | Ameriquest Mortgage | Lien Position: | 1 |
| Loan Purpose: | Refinance | Application Date: | 05/25/2005 |
| Property Address: | 137 Ellery Avenue, Newark, NJ 07106 | | |

The review includes an examination of relevant data in the loan documents to assess compliance with certain aspects of consumer protection laws relating to mortgage lending, including Truth-In-Lending, anti-predatory lending and other applicable federal and state consumer protection laws and regulations.

The review required that The Foreclosure Law Center make reasonable assumptions respecting certain loan terms that, if erroneous, may result in material differences between the System findings and the loan's actual compliance with applicable regulatory requirements. While The Foreclosure Law Center believes that its assumptions provide a reasonable basis for the System review results. No representations or warranties are made respecting the appropriateness of The Foreclosure Law Center's assumptions, the completeness of the information considered or the accuracy of the System findings.

Our responsibility is to provide a report on the data in the mortgage loan documents provided based on the System review and to provide the report to you and for no other purpose. This report has been prepared for and only for Maria & Elda Thompson in accordance with the terms of our engagement and for no other purpose. We do not, in providing this report, accept or assume responsibility for any other purpose or to any other person to whom this report is shown or into whose hands it may come save where expressly agreed by our prior consent in writing.

Sincerely,

## *The Foreclosure Law Center*

## FORENSIC REVIEW SUMMARY    *Exhibit E 4/10*

### LOAN ATTRIBUTES

| | |
|---|---|
| Refinance | What is the loan's purpose? |
| Owner-Occupied | What is the property occupancy? |
| NJ | What state is the property located in? |

### DOCUMENT INVENTORY

| Inventory | Document | Comment |
|---|---|---|
| Provided | Application (Form 1003, Original) | |
| Not Provided | Underwriting and Transmittal Summary (Form 1008) | |
| Not Provided | Copy of Appraisal | |
| Not Provided | HUD/VA Addendum to Uniform Residential Loan Application | |
| Provided | Truth in Lending Disclosure (final, including itemization of amount financed) | |
| Provided | Promissory Note or Line of Credit Agreement and any riders or addendums | |
| Provided | Deed of Trust/Mortgage and any riders or addendums | |
| Not Provided | Affiliated Business Arrangement Disclosures | |
| Provided | HUD-1/1A Settlement Statement (Final) | |
| Provided | Notice of Right of Rescission or Right to Cancel | |
| Not Provided | Good Faith Estimate | |
| Not Applicable | Mortgage Insurance Certificate | |
| Not Provided | Evidence of Insurance (Hazard, etc.) | |
| Not Provided | Rate Lock Agreement | |
| Not Provided | Closing Instructions/Letter to Settlement Agent | |

### TILA

| Results | Test | Materiality | Comments |
|---|---|---|---|
| No | Does the disclosed APR exceed the threshold? | | |
| No | Does the disclosed finance charge exceed the $100 tolerance? | | |
| No | Does the disclosed finance charge exceed the $35 tolerance? | | |
| No | Does the disclosed finance charge exceed the 1/2 of 1% tolerance? | | |
| No | Are the rescission dates non-compliant? | | |

### HOEPA (SECTION 32)

| Results | Test | Materiality | Comments |
|---|---|---|---|
| No | Does the loan exceed the APR threshold? | | |
| No | Does the loan exceed the points and fees threshold? | | |
| Not Applicable | If this is a HOEPA loan, were the Section 32 disclosures given? | | |
| No | Are there any predatory practices identified from the information provided? | | |

### STATE HIGH COST / PREDATORY LENDING

| Results | Test | Materiality | Comments |
|---|---|---|---|
| No | Does the loan exceed a state high cost APR threshold? | | |
| No | Does the loan exceed a state high cost points and fees threshold? | | |
| No | Are there any predatory practices identified from the information provided? | | |

*Exhibit E 5 18*

## COUNTY / MUNICIPALITY HIGH COST / PREDATORY LENDING

| Results | Test | Materiality | Comments |
|---|---|---|---|
| Not Applicable | Does the loan exceed a county/city high cost APR threshold? | | |
| Not Applicable | Does the loan exceed a county/city high cost points and fees threshold? | | |
| Not Applicable | Are there any predatory practices identified from the information provided? | | |

## OTHER STATE LAWS

| Results | Test | Materiality | Comments |
|---|---|---|---|
| Yes | Were there any loan fees or charges that are prohibited or restricted? | Serious | See report detail item 1,2,3, |
| No | Is the loan usurious? | | |
| No | Are the prepayment penalty terms unenforceable? | | |
| No | Does the loan trigger any rate threshold or subprime laws? | | |
| ALERT | Are there any other identified state law violations based on information provided? | | See report detail item 5 |

## FORENSIC REVIEW DETAILS                    *Exhibit E 6 of 18*

**1**   The New Jersey Licensed Lenders Act prohibits third party fees in a first lien loan if paid to the Lender instead of a third party provider. (N.J. ADC 3:1-16.2)

**2**   The New Jersey Licensed Lenders Act (N.J. Rev. Stat. 17:11C-28; N.J. ADC 3:15-9.2) does not allow Settlement or Closing Fee (Fee ID: 51) to be charged to the Borrower in NJ.

**3**   The New Jersey Licensed Lenders Act (N.J. Rev. Stat. 17:11C-28; N.J. ADC 3:15-9.2) does not allow Settlement or Closing Fee (Fee ID: 51) to be charged to the Borrower in NJ.

**4**   The New Jersey Licensed Lender's Act limits the amount of the additional service fee for recording a cancellation of a mortgage to $25.00. (N. J. ADC 3:1-16.2(a)(3))

**5**   This is a New Jersey High Risk Mortgage Loan. Under the New Jersey Mortgage Stabilization and Relief Act, upon filing a foreclosure complaint on or after April 1, 2009, the lender must grant the borrower a six-month period of forbearance to pursue a loan workout, modification, refinancing, or other alternative through mediation sponsored by the Administrative Office of the Courts. During the forbearance period the loan's interest rate cannot increase and the lender may not take further action to pursue foreclosure. (N. J. Rev. Stat. 46:10B-50)

## APPENDIX A: DESCRIPTION OF FORENSIC REVIEW SCOPE *Exhibit no A-18*

The Forensic Review contains the following:

| Review | Description |
|---|---|
| **Document Review** | This review confirms that the loan file reviewed contained the following documents: |

- Application (Form 1003, Original)
- Truth in Lending Disclosure (final, including itemization of amount financed)
- Promissory Note or Line of Credit Agreement and any riders or addendums
- Deed of Trust/Mortgage and any riders or addendums
- HUD-1/1A Settlement Statement (Final)
- Notice of Right of Rescission or Right to Cancel

**TILA Tolerance**

This review includes comparisons, tests, functions and calculations under the Truth In Lending Act. Our automated compliance system recalculates the following amounts and schedules based on the loan data submitted to the system to determine if the loan is within the permissible APR Tolerance (1/8 of 1% for regular transactions and 1/4 of 1% for irregular transactions) and Finance Charge Tolerances ($35 and $100).

- Annual Percentage Rate (APR)
- Finance Charge Amount
- Payment Schedule
- Amount Financed
- Total of Payments
- Amortization Schedule

**TILA Right of Rescission**

This review validates that the rescission period for the non-purchase money loan secured by a 1-4 unit primary dwelling is in compliance with Truth In Lending timing requirements by comparing the Loan Disbursement Date to the latest of the following dates provided in the loan data submitted to our automated compliance system:

- Document Sign Date
- Last Disclosure Date
- Right of Rescission Expiration Date
- HOEPA Disclosure Date (if applicable)

**HOEPA (Section 32)**

This review identifies loans that trigger high cost thresholds as defined in Federal HOEPA to determine if the closed-end non-purchase money loan secured by the borrower's 1-4 unit primary dwelling is considered a high cost loan. Our automated compliance system's federal points and fees threshold calculations ensure proper classification of fees by ascertaining to whom the fee is paid (e.g. lender, affiliate, originator, or provider) and by whom the fee is paid. For loans identified as HOEPA loans, our automated compliance system will further compare the applicable loan data to certain requirements to determine whether the loan violates predatory provisions. Historical rules, indices and information are utilized to ensure accurate determination in a retrospective forensic audit.

**State High Cost / Predatory**

This review identifies loans that trigger high cost thresholds as defined by applicable state and local jurisdictions to determine if a loan is considered a high cost loan. Our automated compliance system's state points and fees threshold calculations ensure proper classification of fees by ascertaining to whom the fee is paid (e.g. lender, affiliate, originator, or provider) and by whom the fee is paid. For loans identified as high-cost, our automated compliance system will further compare the applicable loan data to certain requirements of jurisdiction-specific, anti-predatory lending rules. Historical rules, indices and information are utilized to ensure accurate determination in a retrospective forensic audit.

**County/City High Cost /**
**Predatory**

This review identifies high cost and predatory violations defined by applicable county and municipal jurisdictions. Our automated compliance system's local points and fees threshold calculations ensure proper classification of fees by ascertaining to whom the fee is paid (e.g. lender, affiliate, originator, or provider) and by whom the fee is paid. For loans identified as high-cost, our automated compliance system will further compare the applicable loan data to certain requirements of jurisdiction-specific, anti-predatory lending rules. Historical rules, indices and information are utilized to ensure accurate determination in a retrospective forensic audit. Because zip codes and city names do not precisely identify whether a specific property is subject to a local ordinance, our automated compliance system determines the proper local jurisdiction of the property by utilizing geocoding to identify the standard address.

**State Consumer Credit**

This review evaluates the loan for compliance with important aspects of over 330 consumer protection laws related to mortgage lending. Our automated compliance system areas covered include restrictions, limitations or requirements related to: loan fees, loan term, loan amounts, usury, interest rate accrual, payment calculations, balloons, negative amortization, late charges and grace periods, escrows and credits. Aspects of this review may require assumptions about the originating lender's charter or license authority and permissible regulatory elections.

**Making Home Affordable**

This review evaluates a loan for compliance with critical aspects of the Obama Administration's "Making Home Affordable" program.

Home Affordable Refinance - Our automated compliance system reviews a loan for compliance with critical aspects of the eligibility requirements of the Fannie Mae Refi Plus™, the Fannie Mae DU Refi Plus™ and the Freddie Mac Relief Refinance MortgageSM programs, including restrictions relating to interest accrual, amortization, lien position, loan term, loan purpose and fee limitations.

Home Affordable Modification – Our automated compliance system reviews seasoned loans for compliance with critical aspects of the eligibility requirements of the Home Affordable Modification Program so as to identify loans that qualify for streamlined modifications.

APPENDIX B: DISCUSSION OF SELECTED LAWS    *Exhibit E pg.*

## I. Truth In Lending

The federal Truth in Lending Act requires lenders to provide detailed information about credit transactions to borrowers. TILA also imposes liability on lenders when they fail to provide this information accurately or in the form required. Furthermore, the liability for a lender's mistake can pass through to an assignee, thus making the purchaser of the mortgage loan liable for mistakes made by others.

Statutory liability under TILA usually arises when a lender fails to provide accurate TILA disclosures to a borrower. In an individual action under Section 130, the measure of damages can include (i) actual damages; (ii) statutory damages; and (iii) attorneys' fees.

For certain transactions, a mistake in disclosures may also extend the rescission period for three years beyond the initial three-day rescission period. This means that the borrower has the loan funds, but may decide to reject the loan at any time during the rescission period. In a foreclosure action against the borrower's home, a relatively small mistake (causing a $35 underdisclosure) in failing to classify a fee as a finance charge may permit a borrower to file a successful rescission claim.

The Mavent System review includes comparisons, tests, functions and calculations under the TILA to make sure that the disclosures are within permissible tolerances and timely. The Mavent System has recalculated the following amounts and schedules based on the loan data submitted to the system to determine if the loan is within the permissible Finance Charge tolerances ($35 and $100) and APR Tolerance (1/8 of 1%)

- Finance Charge Amount
- Annual Percentage Rate (APR)
- Payment Schedule
- Amount Financed
- Total of Payments
- Amortization Schedule

*Exhibit E*
*10 of 18*

## II. HOEPA / State High Cost / Predatory Loans

The federal Home Ownership Equity Protection Act (HOEPA) and various state and local high cost acts set APR and fee thresholds above which certain predatory lending practices are prohibited. These thresholds are calculated amounts unique to each loan transactions. Triggering a high cost threshold is not in itself a violation of law; however, most investors will not purchase these loans (or purchase them at a deep discount). In fact, most loan purchase agreements between loan sellers and loan buyers contain a mechanism whereby the buyer can force the seller to "put back" (or buy back) the loan if it is ever found to be high cost. This makes high cost loans undesirable to a lender, making it more willing to negotiate with the borrower.

Predatory loans are loans that trigger high cost thresholds and contain terms, such as a prepayment penalty. Predatory loans are subject to civil, and in some cases criminal, liability that can far exceed the value of a loan. In some cases, the liability for engaging in these prohibited practices can pass through to an assignee, thus making the purchaser of the mortgage loan liable for mistakes made by others.

The Mavent System review identifies loans that trigger high cost thresholds as defined by HOEPA, State and local law to determine if a loan is considered a high cost loan. The points and fees threshold calculations ensure proper classification of fees by ascertaining to whom the fee is paid (e.g. lender, affiliate, originator, or provider) and by whom the fee is paid. For loans identified as HOEPA or High Cost loans, the Mavent System will further compare the applicable loan data to certain requirements to determine whether the loan violates predatory provisions. Historical rules, indices and information are utilized to ensure accurate determination in a retrospective forensic review.

## III. State Consumer Credit Laws

There are many state consumer credit laws that govern the features and terms of a loan. These laws vary widely. Different laws apply based on how the lender is chartered or licensed. Further, different laws apply according to a loan's features (such as occupancy type, purpose, lien position, APR and principal amount). While not all state consumer credit laws impose severe penalties, certain restrictions (such as usury) may invoke criminal liability. Others may prevent a lender from foreclosing or impose statutory damages.

The Mavent System reviews law evaluates loans for compliance with important aspects of over 330 state consumer protection laws related to mortgage lending. Areas covered include restrictions, limitations or requirements related to: loan fees, loan term, loan amounts, usury, interest rate accrual, payment calculations, balloons, negative amortization, late charges and grace periods, escrows and credits. Aspects of this review may require assumptions about the originating lender's charter or license authority and permissible regulatory elections.

APPENDIX C: Comments            *Exhibit E   11 of 12*

*Exhibit E, 12 of 18*

Below are the definitions of the fees entered into the System:

**Flood Certification Fee**  Fee charged to perform and provide flood certification for the property securing the loan. Flood Certification includes both the original flood hazard determination and the ongoing monitoring of the property for flood hazard designations.

**Inspection Fee**  Fee charged for an inspection of the property securing the loan.

**Loan Discount**  Fee charged to reduce (buy down) the market rate of the note for the life of the loan.

**Prepaid Interest**  Amount of interest collected at settlement for the period between settlement and the date from which interest will be collected with the first regular monthly payment.

**Recording Service Fee**  Service fee related to sending documents to be recorded.

**Settlement or Closing Fee**  Fees paid to settlement or closing agents for their services.

**Tax Related Service Fee**  Fee charged to research and monitor property tax payments.  The fee includes both upfront payment research and life-of-loan monitoring.

**Title Insurance**  Fee for the cost of a title insurance policy.

**Title Search**  Fee charged to perform a Title Search.

*Exhibit E*
*13 of 18*

## APPENDIX D: LOAN REPORT

*Exhibit E*
*14 of 18*



| | | |
|---|---|---|
| **Customer:** | The Foreclosure Law Center (0316041612) | **Review Status:** |
| **Loan ID:** | THOMPSON_MNE | **Review Date:** 2012-07-11 |
| **Review ID:** | 0316041612THOMPSON_MNE982438662 0120711114826165 | **State:** NJ |
| **Location:** | Main | |
| **Borrower:** | Maria & Elda  Thompson | |

**Loan Status:**

| High Cost | Higher Priced | TILA | State Rules | License | NMLS | OFAC | HMDA | GSE | Enterprise Rules | Other |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Not Requested | Not Requested | Not Requested | Not Requested | | |

## Request Summary    Result:

| | | | |
|---|---|---|---|
| **Borrower:** | Maria & Elda   Thompson | **Seller:** | |
| **Reviewed by:** | bob.howley | **Originator:** | |
| **Location:** | Main | **First Group:** | |
| **Loan ID:** | THOMPSON_MNE | **Second Group:** | |
| | | **Third Group:** | |
| | | | |
| **Address 1:** | 137 Ellery Avenue | **Lien Position:** | 1 |
| **Address 2:** | | **Occupancy Type:** | Primary |
| **City:** | Newark | **Property Type:** | SFR Detached |
| **County:** | | **Mortgage Type:** | Conventional |
| **State:** | NJ | **FHA Section:** | |
| **Zip Code:** | 07106 | **Transaction Type:** | Cash Out Refinance |
| | | **Purpose of Refinance:** | Cash |
| | | **Origination Type:** | Retail |
| | | **Documentation Type:** | Full Documentation |
| | | **Appraised Price:** | $ 205,000.00 |
| | | **Sales Price:** | $ 0.00 |
| | | **Loan Amount:** | $ 205,000.00 |
| | | **As-Is Value:** | $ 0.00 |
| | | **After-Improved Value:** | $ 0.00 |
| | | **Total Rehabilitation Cost:** | $ 0.00 |

## TILA-Tolerance    Result:

| APR | | Finance Charges | |
|---|---|---|---|
| **Review:** | | **Review:** | |
| **Disclosed APR:** | 6.654000% | **Disclosed Finance Charges:** | $ 261,500.24 |
| **Calculated APR:** | 6.6554% | **Calculated Finance Charges:** | $ 261,527.29 |
| **Difference:** | (0.0014% ) | **Difference:** | ($ 27.05) |

*Exhibit E*
*15 of 18*

**Calculation data**

| Jurisdiction | Finance Charge Amount | Financed Amount | APR | Days of Prepaid Interest | Daily Prepaid Interest Amount |
|---|---|---|---|---|---|
| FED | $ 261,527.29 | $ 195,934.80 | 6.6554% | 30 | $ 33.64 |

| Fees Included | Paid By | Paid To | Amount |
|---|---|---|---|
| Loan Discount: | Borrower | Lender | $ 7,052.00 |
| Tax Related Service Fee: | Borrower | Lender | $ 70.00 |
| Flood Certification Fee: | Borrower | Lender | $ 9.00 |
| Prepaid Interest: | Borrower | Lender | $ 1,009.20 |
| Settlement or Closing Fee: | Borrower | Provider | $ 350.00 |
| Settlement or Closing Fee: | Borrower | Provider | $ 195.00 |
| Recording Service Fee: | Borrower | Provider | $ 380.00 |
| **Total Fees:** | | | **$ 9,065.20** |

| Fees Excluded | Paid By | Paid To | Amount |
|---|---|---|---|
| Inspection Fee: | Borrower | Lender | $ 360.00 |
| Title Insurance: | Borrower | Provider | $ 621.00 |
| Title Search: | Borrower | Provider | $ 425.00 |
| **Total Fees:** | | | **$ 1,406.00** |

**TILA MDIA Disclosure**

**Disclosed Payment Summary**

**TILA-Right of Rescission**    Result:

| | |
|---|---|
| Loan Disbursement Date: | 2005-07-05 |
| Right To Cancel Expire Date: | 2005-06-29 |
| Right to Cancel Signed Date: | 2005-06-25 |

**TILA-Payment**

**Payment Date**

| | |
|---|---|
| LTV Drop Date: | N/A |
| Sum of Payments: | $ 457,462.09 |

**Payment Stream Worksheet**

Calculated Data

| Number of Payments | Date | Payment Amount |
|---|---|---|
| 36 | 2005-09-01 | $1,227.76 |
| 323 | 2008-09-01 | $1,275.49 |
| 1 | 2035-08-01 | $1,279.46 |

**High Cost ( FED )  Second Pass**    Result:

*Exhibit E*
*16 of 18*

Federal Total Loan Amount: $195,574.80

| APR Result | | | Fee Result | |
|---|---|---|---|---|
| Limit Rate: | 12.7300% | | Fee Limit: | $ 15,645.98 |
| Loan Rate: | 6.6554% | | Loan Fees: | $ 8,416.00 |
| Difference: | 6.0746% | | Difference: | $ 7,229.98 |

| Fees Included | Paid By | Paid To | Amount |
|---|---|---|---|
| Loan Discount : | Borrower | Lender | $ 7,052.00 |
| Inspection Fee : | Borrower | Lender | $ 360.00 |
| Tax Related Service Fee : | Borrower | Lender | $ 70.00 |
| Flood Certification Fee : | Borrower | Lender | $ 9.00 |
| Settlement or Closing Fee : | Borrower | Provider | $ 350.00 |
| Settlement or Closing Fee : | Borrower | Provider | $ 195.00 |
| Recording Service Fee : | Borrower | Provider | $ 380.00 |
| **Total Fees:** | | | **$ 8,416.00** |

| Fees Excluded | Paid By | Paid To | Amount |
|---|---|---|---|
| Prepaid Interest : | Borrower | Lender | $ 1,009.20 |
| Title Insurance : | Borrower | Provider | $ 621.00 |
| Title Search : | Borrower | Provider | $ 425.00 |
| **Total Fees:** | | | **$ 2,055.20** |

**High Cost ( NJ )  Second Pass**    Result: PASS

New Jersey Total Loan Amount: $196,584.00

| APR Result | | | Fee Result | |
|---|---|---|---|---|
| Limit Rate: | 12.7300% | | Fee Limit: | $ 8,846.28 |
| Loan Rate: | 6.6554% | | Loan Fees: | $ 8,416.00 |
| Difference: | 6.0746% | | Difference: | $ 430.28 |

| Fees Included | Paid By | Paid To | Amount |
|---|---|---|---|
| Loan Discount : | Borrower | Lender | $ 7,052.00 |
| Inspection Fee : | Borrower | Lender | $ 360.00 |
| Tax Related Service Fee : | Borrower | Lender | $ 70.00 |
| Flood Certification Fee : | Borrower | Lender | $ 9.00 |
| Settlement or Closing Fee : | Borrower | Provider | $ 350.00 |
| Settlement or Closing Fee : | Borrower | Provider | $ 195.00 |
| Recording Service Fee : | Borrower | Provider | $ 380.00 |
| **Total Fees:** | | | **$ 8,416.00** |

| Fees Excluded | Paid By | Paid To | Amount |
|---|---|---|---|
| Prepaid Interest : | Borrower | Lender | $ 1,009.20 |
| Title Insurance : | Borrower | Provider | $ 621.00 |
| Title Search : | Borrower | Provider | $ 425.00 |
| **Total Fees:** | | | **$ 2,055.20** |

**Higher-Priced (FED) Review**    Result: PASS

**Higher-Rate Review**    Result:    *Exhibit E 17 of 18*

**New Jersey High Risk Mortgage Loan(59280)**

This is a New Jersey High Risk Mortgage Loan. Under the New Jersey Mortgage Stabilization and Relief Act, upon filing a foreclosure complaint on or after April 1, 2009, the lender must grant the borrower a six-month period of forbearance to pursue a loan workout, modification, refinancing, or other alternative through mediation sponsored by the Administrative Office of the Courts. During the forbearance period the loan's interest rate cannot increase and the lender may not take further action to pursue foreclosure. (N. J. Rev. Stat. 46:10B-50)

**Lacks Current Rate Set and Current Rate Lock Dates (Warning)(61190)**

The System uses the Current Rate Set Date (if provided), or the Current Rate Lock Date as the "date the interest rate is set" to determine the NJ Subprime Mortgage threshold. Since both of these dates are absent from this loan, the System used the Document Sign Date. This may affect the reliability of your New Jersey High Risk/Subprime Mortgage threshold results. (N.J. Rev. Stat. 46:10B-50)

**HOEPA Review**    Result:

**State Rules Review**    Result:

**Third Party Fees To Lender Not Allowed(24710)**

The New Jersey Licensed Lenders Act prohibits third party fees in a first lien loan if paid to the Lender instead of a third party provider. (N.J. ADC 3:1-16.2)

**Fee Not Allowed(2000000)**

The New Jersey Licensed Lenders Act (N.J. Rev. Stat. 17:11C-28; N.J. ADC 3:15-9.2) does not allow Settlement or Closing Fee (Fee ID: 51) to be charged to the Borrower in NJ.

**Fee Not Allowed(2000000)**

The New Jersey Licensed Lenders Act (N.J. Rev. Stat. 17:11C-28; N.J. ADC 3:15-9.2) does not allow Settlement or Closing Fee (Fee ID: 51) to be charged to the Borrower in NJ.

**Recording Service Fee Can't Exceed $25(64520)**

The New Jersey Licensed Lender's Act limits the amount of the additional service fee for recording a cancellation of a mortgage to $25.00. (N. J. ADC 3:1-16.2(a)(3))

**License Review - Lender**    Result:

| | |
|---|---|
| Review Status: | |
| License Review: | License Review - Lender ( LIC ) |
| License Role: | Lender |
| Jurisdiction: | NJ |
| License Type: | NJ_MBN |
| Exempt: | false |

**Geocode Data**    Result:

| | | | |
|---|---|---|---|
| Address 1: | 137 Ellery Ave | Latitude: | 40.732050 |
| Address 2: | | Longitude: | -74.241662 |
| City: | Newark | CBSA Number: | 35620 |
| County: | Essex County | CBSA Division: | 35084 |
| State: | NJ | Census Tract: | 0022.02 |
| Zip Code: | 07106-3501 | Match Code: | S80 |
| State FIPS: | 34 | Location Quality Code: | AS0 |
| County FIPS: | 013 | Score: | 0.0025000 |

**LO Compensation (TILA)**    Result:

*Exhibit E*

## Review

### Making Home Affordable Enterprise Rules Review

**Result:** PASS

## Index Values

| Date | Type | Value | Purpose | Rule ID |
|------|------|-------|---------|---------|
| 2005-04-15 | UST20Y | 4.73 | Federal - High Cost (First Liens 10/02) | 6130 |
| 2005-04-15 | UST20Y | 4.73 | New Jersey - High Cost (First Liens >= $40,000)(07/04) | 28790 |
| 2005-04-15 | CMR | 5.91 | New Jersey - High Cost (First Liens >= $40,000)(07/04) | 28790 |
| 2005-06-25 | APORAdjustable3Y | 5.90 | New Jersey - High Risk Mortgage Loan (07/09) | 61190 |

## Service Info

**Result:** PASS

| | |
|---|---|
| Mavent Transaction ID: | 0316041612THOMPSON_MNE9824386620120711114826165 |
| Service Code: | DI-ComplianceReview-MHA |
| Received: | 2012-07-11  11: 48: 26: 165 |
| Returned: | 2012-07-11  11: 48: 33: 069 |

| Service | Status |
|---------|--------|
| Geocode | PASS |
| SDS Prepayment Penalty Plan | |
| ARM Mapper | |
| Index Review | |
| Perform Mortgage Calculations | |

©2001 - 2012 Mavent Inc.
2comply Expert System®

*Exhibit F*

Return To:

Ameriquest Mortgage Company
P.O. Box 11507,
Santa Ana, CA 92711

NEW VISION TITLE AGENCY
30 FRENEAU AVENUE
MATAWAN, NJ 07747
732-360-2800
AM-16755

Prepared By:Ameriquest Mortgage Company

Rhonda Lee
80 Main St., 2nd Floor,West
Orange, NJ 07052

---

[Space Above This Line For Recording Data]

# MORTGAGE

Instr#    5145468                    Carole A. Graves
Recorded/Filed    AC    2    Essex County Register
10/03/2005   10:40:4  Bk 10772 Pg 595 #Pgs 19

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated June 25, 2005 , together with all Riders to this document.
(B) "Borrower" isMARIA M THOMPSON and ELDA THOMPSON, SINGLE DAUGHTER

NO. B 7/03246
LISPENDENS FILED 8-14 2007
Citigroup / Maria Thompson
        COMPLT.            DEPT.
BILL TO FORECLOSURE
        FILED 8-3 2007

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is Ameriquest Mortgage Company

Lender is a Corporation
organized and existing under the laws of Delaware

NEW JERSEY - Single Family - Fannie Mae/Freddie Mac UNIFORM
0125315309-5614
06/24/2005 3:05:20
AMGNJ (0311)
Page 1 of 15
VMP Mortgage Solutions (800)521-729?

---

89171

*Exhibit G*
*1 of 11*

ZUCKER, GOLDBERG & ACKERMAN
Attorneys for Plaintiff
200 Sheffield Street, Suite 301
P.O. Box 1024
Mountainside, New Jersey 07092-0024
1-908-233-8500

| Citigroup Global Markets Realty Corporation | SUPERIOR COURT OF NEW JERSEY |
|---|---|
| | CHANCERY DIVISION |
| | **ESSEX** COUNTY |
| | DOCKET NO. F-19337-07 |

<u>Civil Action</u>

**SUMMONS**

vs.                    Plaintiff

**MARIA M. THOMPSON; et al**
                    Defendant

**THE STATE OF NEW JERSEY**
to

**MARIA M. THOMPSON**

**137 ELLERY AVENUE**
**NEWARK, NJ 07106**

**29 GENERAL LANE**
**WILLINGBORO, NJ 08046**

**15 RANDER COURT**
**WILLINGBORO, NJ 07104**

(L.S.)

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The **Complaint** attached to this summons states the basis for this lawsuit. If you dispute this **Complaint** you or your attorney must file a written answer or motion and proof of service with the Clerk of the Superior Court within  35 days from the date you received this summons, not counting the date you received it. You must file your answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, CN -971, Trenton, New Jersey 08625. A \$135.00 filing fee payable to the Clerk of the Superior Court must accompany your answer or motion when it is filed.  You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above.  A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee) if you want the Court to hear your defense.

If you do not file and serve a written answer or motion with 35 days, the Court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live.  A list of these offices is provided. If you do not have any attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling of the Lawyer Referral Services.  A list of these numbers is also provided.

## *Theodore J. Fetter*

THEODORE J. FETTER, CLERK OF THE
SUPERIOR COURT OF NEW JERSEY

D A TE D : 8/7/2007

---

*THIS IS AN ATTEMPT TO COLLECT A DEBT.*
*ANY INFORMATION OBTAINED*
*WILL BE USED FOR THAT PURPOSE.*

*Exhibit G*
*2 of 11*

**ATLANTIC COUNTY:**
LAWYER REFERRAL
Atlantic County
Court House
1201 Bacharach Blvd.
Atlantic City, NJ
08401
(609) 345-3444

LEGAL SERVICES
1 S. South Carolina
Avenue
2nd Floor
Atlantic City, NJ
08401
(609) 348-4200

**BERGEN COUNTY:**
LAWYER REFERRAL
61 Hudson Street
Hackensack, NJ 07601
(201) 488-0044

LEGAL SERVICES
47 Essex Street
Hackensack, NJ 07601
(201) 487-2166

**BURLINGTON COUNTY:**
LAWYER REFERRAL
117 High Street
Mt. Holly, NJ 08060
(609) 261-4862

LEGAL SERVICES
50 Rancocas Road
(Lower Level)
Mt. Holly, NJ 08060
(609) 261-1088

**CAMDEN COUNTY:**
LAWYER REFERRAL
800 Hudson Square
Suite 103
P.O. Box 1027
Camden, NJ 08101
(856) 964-4520

LEGAL SERVICES
Regional Office
530 Cooper Street
Camden, NJ
08102-1246
(856) 964-2010

**CAPE MAY COUNTY:**
LAWYER REFERRAL
P.O. Box 425
Cape May Court House,
NJ 08210
(609) 463-0313

LEGAL SERVICES
1261 Route 9 South
Cape May Court House,
NJ 08210
(609) 465-3001

**CUMBERLAND COUNTY:**
LAWYER REFERRAL
P.O. Box 2031
Vineland, NJ 08360
(856) 692-6207

LEGAL SERVICES
Neighborhood/
Farmworker Division
22 E. Washington St.
Bridgeton, NJ
08302-1933
(856) 451-0003

**ESSEX COUNTY:**
LAWYER REFERRAL
One Newark Center
16th Floor
Newark, NJ
07102-5268
(973) 622-6207

LEGAL SERVICES
Public Entitlements
Law & Housing Law
Units
106 Halsey Street
Newark, NJ 07102
(973) 624-4500

**GLOUCESTER COUNTY:**
LAWYER REFERRAL
Justice Complex
P.O. Box 338
Woodbury, NJ 08096
(856) 848-4589

LEGAL SERVICES
81 Cooper Street
Woodbury, NJ 08096
(856) 848-5360

**HUDSON COUNTY:**
LAWYER REFERRAL
583 Newark Avenue
Jersey City, NJ
07306
(201) 798-2727

LEGAL SERVICES
574 Newark Avenue
Jersey City, NJ
07306-2377
(201) 792-6363

**HUNTERDON COUNTY:**
LAWYER REFERRAL
P.O. Box 267
Pittstown, NJ 08867
(908) 735-2611

LEGAL SERVICES
82 Park Avenue
Flemington, NJ
08822-1168
(908) 782-7979

**MERCER COUNTY:**
LAWYER REFERRAL
1245 Whitehorse
Mercerville Road,
Suite 420
Mercerville, NJ
08619-3894
(609) 585-6200

LEGAL SERVICES
16-18 West Lafayette
Street
Trenton, NJ
08608-2088
(609) 695-6249

**MIDDLESEX COUNTY:**
LAWYER REFERRAL
87 Bayard Street
New Brunswick, NJ
08901
(732) 828-0053

LEGAL SERVICES
78 New Street,
3rd Floor
New Brunswick, NJ
08901-2584
(732) 249-7600

**MONMOUTH COUNTY:**
LAWYER REFERRAL
Court House
Freehold, NJ 07728
(732) 431-5544

LEGAL SERVICES
25-13 Broad Street
Freehold, NJ 07728
(732) 866-0020

**MORRIS COUNTY:**
LAWYER REFERRAL
10 Park Place
Morristown, NJ 07960
(973) 267-5882

LEGAL SERVICES
30 Schuyler Place
C.N. 900
Morristown, NJ
07963-0900
(973) 285-6911

**OCEAN COUNTY:**
LAWYER REFERRAL
Courthouse
P.O. Box 381
Toms River, NJ 08753
(732) 240-3666

LEGAL SERVICES
9 Robbins Street,
Suite 2-A
Toms River, NJ 08753
(732) 341-2727

**PASSAIC COUNTY:**
LAWYER REFERRAL
Court House
Hamilton Street
Paterson, NJ 07505
(973) 278-9223

LEGAL SERVICES
175 Market Street
Paterson, NJ 07505
(973) 345-7171

**SALEM COUNTY:**
LAWYER REFERRAL
681 South Broadway
Pennsville, NJ 08070
(856) 678-8363

LEGAL SERVICES
Neighborhood/
Farmworker Division
22 E. Washington St.
Bridgeton, NJ
08302-1933
(856) 451-0003

**SOMERSET COUNTY:**
LAWYER REFERRAL
P.O. Box 1095
Somerville, NJ 08876
(908) 685-2323

LEGAL SERVICES
78 Grove Street
Somerville, NJ 08876
(908) 231-0840

**SUSSEX COUNTY:**
LAWYER REFERRAL
10 Park Place
Morristown, NJ 07960
(973) 267-5882

LEGAL SERVICES
3 High Street
P.O. Box 159
Newton, NJ 07860
(973) 383-7400

**UNION COUNTY:**
LAWYER REFERRAL
Court House,
3rd Floor
Elizabeth, NJ 07207
(908) 353-4715

LEGAL SERVICES
60 Prince Street
Elizabeth, NJ 07208
(908) 354-4340

**WARREN COUNTY**
LAWYER REFERRAL
10 Park Place
Morristown, NJ 07960
(973) 267-5882

LEGAL SERVICES
91 Front Street
P.O. Box 65
Belvidere, NJ 07823
(908) 475-2010

Exhibit G
3 of 11

XCZ 89171/pl                          **FILED:**
ZUCKER, GOLDBERG & ACKERMAN
Attorneys for Plaintiff
200 Sheffield Street, Suite 301
P.O. Box 1024
Mountainside, New Jersey 07092-0024
1-908-233-8500

| | |
|---|---|
| Citigroup Global Markets Realty Corporation : | SUPERIOR COURT OF NEW JERSEY |
| : | CHANCERY DIVISION |
| : | ESSEX COUNTY |
| Plaintiff, : | DOCKET NO. F- 19337-07 |
| : | |
| vs. : | Civil Action |
| : | |
| MARIA M. THOMPSON; MR. THOMPSON, : | **COMPLAINT** |
| HUSBAND OF MARIA M. THOMPSON; : | **FOR** |
| ELDA THOMPSON; MR. THOMPSON, : | **FORECLOSURE** |
| HUSBAND OF ELDA THOMPSON, and each : | |
| of their heirs, devisees, and personal : | |
| representatives, and his, her, their or any of their : | |
| successors in right, title and interest; STATE OF : | |
| NEW JERSEY | |
| | |
| Defendants. | |

Citigroup Global Markets Realty Corporation, (hereinafter "plaintiff"), through its

servicing agent located at 500 ENTERPRISE DRIVE, SUITE 150, HORSHAM, PA 19044, hereby

says:

## FIRST COUNT

1. On 06/25/2005, Maria M. Thompson and Elda Thompson executed to Ameriquest Mortgage Company a Note (hereinafter "Note") securing the sum of $205000.00, payable on 08/01/2035 with the initial interest rate of 5.990% per annum.

2. To secure the payment of the Note, Maria M. Thompson and Elda Thompson, single daughter, executed to Ameriquest Mortgage Company, a Mortgage (hereinafter "Mortgage") dated 06/25/2005, and thereby mortgaged to Ameriquest Mortgage Company in fee the land hereinafter described (hereinafter "Mortgaged Premises"). Said Mortgage was duly recorded on 10/03/2005, in the OFFICE OF THE REGISTER OF ESSEX COUNTY, in Mortgage Book 10772, Page 595. The Mortgage is not a Purchase Money Mortgage.

3. The legal description of the Mortgaged Premises is described on the Schedule annexed hereto and made a part hereof.

## SCHEDULE A- Legal Description

ALL the following described property located in the City of Newark, County of Essex, State of New Jersey:

COMMONLY known as 137-139 Ellery Avenue a/k/a 137 Ellery Avenue, Newark, NJ 07106.

BEING also known as Lot 7, Block 4138 a/k/a 1138 on the tax map of the City of Newark.

The following is a metes and bounds legal description as found in the Mortgage:

ALL that certain lot, parcel or tract of land, situate and lying in the City of Newark, County of Essex and State of New Jersey being more particularly described as follows:

BEGINNING AT A POINT ON THE NORTHWESTERLY LINE OF ELLERY AVENUE DISTANT 777.40 FEET NORTHEASTERLY FROM THE CORNER FORMED BY THE INTERSECTION OF THE NORTHWESTERLY LINE OF ELLERY AVENUE WITH THE NORTHERLY LINE OF CLINTON AVENUE AS SHOWN ON "MAP OF PROPERTY OF ANTHONY SCHAEFER, REVISED MAY 9, 1923", AND RUNNING THENCE (1) NORTH 60 DEGREES 10 MINUTES 30 SECONDS WEST, A DISTANCE OF 105.0 FEET THENCE (2) NORTH 29 DEGREES 49 MINUTES 30 SECONDS EAST, A DISTANCE OF 35.0 FEET, THENCE (3) SOUTH 60 DEGREES 10 MINUTES 30 SECONDS EAST A DISTANCE OF 105.0 FEET TO THE NORTHWESTERLY LINE OF ELLERY AVENUE, THENCE (4) ALONG THE NORTHWESTERLY LINE OF ELLERY AVENUE, SOUTH 29 DEGREES 49 MINUTES 30 SECONDS WEST, A DISTANCE OF 35.0 FEET TO THE POINT AND PLACE OF BEGINNING.

FOR INFORMATIONAL PURPOSES ONLY: Also known as Lot 7 a/k/a BL 1138 Lot 7 in Block 4138 on the City of Newark Tax Map.

4. The Note and Mortgage have been assigned as follows:

4a.    By assignment of mortgage from Ameriquest Mortgage Company to Citigroup Global Markets Realty Corp., plaintiff herein, which is unrecorded at this time.

5. The Note contained an agreement that if any installment payment should remain unpaid for 30 days after the same shall fall due, the whole principal sum, with all unpaid interest, fees, costs and advances, should, at the option of plaintiff or its representatives or assigns, become immediately due and payable.

6. The obligor(s) has/have failed to make the installment payment due on 03/01/2007, and all payments becoming due thereafter. Therefore the loan has been in default since on or about 04/01/2007.

7. As a result of said default, plaintiff hereby elects and declares that the whole unpaid principal sum due on the Note and Mortgage, along with all unpaid interest, advances, fees and costs, shall be accelerated and is now due and payable.

8. The Note and Mortgage do not contain a prepayment penalty.

9. The following defendants are joined herein because they are either the holder of an instrument or interest appearing of record which affect or may affect the Mortgaged Premises, or because they are the holder of a legal and equitable interest in the Mortgaged Premises which is subordinate to plaintiff's Mortgage lien.

9a.   Title to the property passed to Maria M. Thompson and Elda Thompson. and they executed the deed, note and mortgage.  The deed, note and mortgage did not specify the marital status of Maria M. Thompson.  Elda Thompson executed the deed, note and mortgage as single.  In the event they married after executing the note and mortgage, plaintiff joins a defendants, Mr. Thompson, husband of Maria M. Thompson and Mr. Thompson, husband of Elda Thompson. as defendants for any curtesy and possessory interest, if any, they may have in the mortgaged premises.

9b.   The **State of New Jersey** is made a party defendant to this foreclosure action by reason of the following lien(s) entered in the office of the Clerk of the Superior Court of New Jersey recovered against plaintiff's mortgagor.

```
                        SUPERIOR COURT OF NEW JERSEY
JUDGMENT NUMBER: PD-149956-2007
DATE ENTERED: 06/05/07
LIEN FOR LEGAL SERVICES
VENUE: MERCER
                                            DEBT: $       50.00
CREDITOR: OFFICE OF THE PUBLIC DEFENDER
DEBTOR(S):
    ELDA THOMPSON
        137 ELBERLY AV, NEWARK, NJ 07106
    ATTORNEY: PRO SE
                    ----------------
            *** End of Abstract ***
```

10.   The following defendants are joined herein because they are the holder of an instrument or interest appearing of record which affect or may affect the Mortgaged Premises which has been paid in full but have not been discharged of record.   NONE

11.   In the event plaintiff is unable to determine the present whereabouts of defendants, MARIA M. THOMPSON, MR. THOMPSON, HUSBAND OF MARIA M. THOMPSON, ELDA THOMPSON, MR. THOMPSON, HUSBAND OF ELDA THOMPSON or ascertain if he/she/they is/are presently alive, and as a precaution, plaintiff has joined the following persons as party defendants to this foreclosure action for any lien, claim or interest they may have in, to, or against the mortgaged premises:

**MARIA M. THOMPSON, MR. THOMPSON, HUSBAND OF MARIA M. THOMPSON, ELDA THOMPSON, MR. THOMPSON, HUSBAND OF ELDA THOMPSON, and each of their heirs, devisees, and personal representatives, and his, her, their or any of their successors in right, title and interest.**

12.  Pursuant to the terms of the Note and Mortgage, plaintiff (or its predecessors, successors or servicing agent), reserved the right to pay taxes, municipal charges, or other liens affecting the Mortgaged Premises, which charges or liens are superior to the lien of the Mortgage. When paid by plaintiff (or its predecessors, successors, or servicing agent), these taxes, municipal charges, or other liens, together with interest thereon, are to be added to the amount due plaintiff, whether such advances were made prior to the filing of this action or during its pendency.

13.  Plaintiff has complied with the Fair Foreclosure Act N.J.S.A. 2A:50-53, et seq., by serving the required Notice of Intention to Foreclose at least 30 days in advance of filing of this complaint.

WHEREFORE, the plaintiff demands judgment:

(a)  Fixing the amount due on the Mortgage;

(b)  Barring and foreclosing the defendants and each of them of all equity of redemption in and to the Mortgaged Premises;

(c)  Directing that plaintiff be paid the amount due as provided in the Mortgage, together with interest, fees, costs and advances;

(d)  Adjudging that the Mortgaged Premises be sold according to law to satisfy the amount due to plaintiff on the Mortgage; and

(e)  Appointing a receiver of the rents, issues and profits of the Mortgaged Premises.

*Exhibit G*
*9 of 11*

## SECOND COUNT

1. Plaintiff hereby repeats, re-alleges, and incorporates the allegations set forth in the First Count of the Complaint, as if set forth herein at length.

2. By the terms of the Note and Mortgage, plaintiff is entitled to possession of the Mortgaged Premises and all appurtenances.

3. The Mortgagor(s) and Obligor(s) named herein has or may claim to have certain rights in the Mortgaged Premises, and by reason thereof, has or have deprived plaintiff of possession of the Mortgaged Premises.

WHEREFORE, plaintiff demands judgment against the defendants, except those protected by N.J.S.A. 2A:18-61.1, et. seq.:

    (a)    for possession of the Mortgaged Premises in favor of plaintiff or its assignee or designee, which right to possession shall be transferred to the successful purchaser at the foreclosure sale;

    (b)    for costs.

CERTIFICATION PURSUANT TO RULE 4:5-1

I hereby certify that the matter in controversy is not the subject of any other Court proceeding or arbitration and that, to the best of my knowledge and belief, no other parties need be joined at this time, and that no other proceedings are contemplated.

CERTIFICATION PURSUANT TO RULE 4:64-1(a) AND RULE 1:5-6(c)(1)(E)

I hereby certify that a title search of the public record has been received and reviewed prior to the filing of this action.

ZUCKER, GOLDBERG & ACKERMAN
Attorneys for Plaintiff

By:_____
LEONARD B. ZUCKER
MEMBER OF THE FIRM

DATED: August 2, 2007

NOTICE REQUIRED BY THE
FAIR DEBT COLLECTION
PRACTICES ACT, (the act),
15 U.S.C. SECTION 1601 AS AMENDED

**THIS IS AN ATTEMPT TO COLLECT A
DEBT. ANY INFORMATION OBTAINED
WILL BE USED FOR THAT PURPOSE.**

1. The amount due on the debt, as of 06/25/2005, is the sum of $205000.00. This sum does not include foreclosure fees and costs or any payments received or advances made after that date.

2. The debt described in the complaint attached hereto and evidenced by the copy of the mortgage and note, will be assumed to be valid by the creditor's law firm, unless debtors, within thirty (30) days after receipt of this Notice, disputes, in writing, the validity of the debt or some portion thereof.

3. If the debtor notifies the creditor's law firm in writing within thirty (30) days of the receipt of this Notice, that the debt or any portion thereof, is disputed, the creditor's law firm will obtain verification of the debt and a copy of the verification will be mailed to the debtor by the creditor's law firm.

4. If the creditor who is named as plaintiff in the attached summons and complaint, is not the original creditor, and if the debtor makes written request to the creditor's law firm within thirty (30) days from the receipt of this Notice, the name and address of the original creditor will be mailed to the debtor by the creditor's law firm.

5. Written request should be addressed to Zucker, Goldberg & Ackerman, 200 Sheffield Street, Suite 301, P.O. Box 1024, Mountainside, New Jersey 07092-0024. Please refer to our file number, which is XCZ 89171.

---

**THIS IS AN ATTEMPT TO COLLECT A DEBT.
ANY INFORMATION OBTAINED
WILL BE USED FOR THAT PURPOSE.**

---

*Exhibit H*

## GMAC Mortgage

3451 Hammond Ave
P.O. Box 780
Waterloo, IA 50704-0780

10/26/07

### FORECLOSURE REPAYMENT AGREEMENT

MARIA M THOMPSON
ELDA THOMPSON
29 GENERAL LANE
NEWARK            NJ 07106-0000

RE:    Account Number        0359188459
       Property Address      137 ELLERY AVENUE
                             NEWARK        NJ 07106-0000

MARIA M THOMPSON ELDA THOMPSON ("Customer") and GMAC Mortgage, LLC
("Lender"), in consideration for the mutual covenants set forth in this Foreclosure Repayment
Agreement (the "Agreement"), hereby agree as follows:

1. There is an outstanding debt to the Lender pursuant to a note and mortgage or deed of trust
   or equivalent security instrument (the "Mortgage") executed on 07/05/05, in the original
   principal amount of $205000.00.

2. The account is presently in default for non-payment to Lender of the 02/01/07 installment
   and all subsequent monthly payments due on the Mortgage for principal, interest,
   escrows and charges.

3. The amount necessary to cure the default is $14189.33 plus such additional amounts that are
   presently due under the terms of the loan documents as of 10/26/07, and will increase until
   the default in the account is brought current.

4. Lender has instituted foreclosure proceedings against the property securing the Mortgage
   indebtedness, which proceedings will continue until the default(s) described herein is/are
   brought current under the terms of the Mortgage, or otherwise cured as provided for in this
   Agreement.

5. Notwithstanding the foregoing, Lender agrees to suspend but not terminate foreclosure
   activity on the default account, provided we receive the executed Agreement and we
   receive the initial installment in the amount of $4000.00 no later than 10/31/07. This
   executed Agreement can be mailed or faxed to us at:

DFW 20M            10/27/2007  8:  Pg 38 of 68 PAGE   2/006   Fax Server

*Exhibit H*

GMAC Mortgage, LLC                          PAGE        1
PO Box 780                                  DATE 10/26/07

Waterloo            IA 50704-0780

                    REPAYMENT AGREEMENT- 359188459

------------- MAIL -------------------- --------- PROPERTY -----------------

    MARIA M THOMPSON
    ELDA THOMPSON
    29 GENERAL LANE                137 ELLERY AVENUE

    NEWARK              NJ 07106-0000 NEWARK              NJ 07106-0000

------ DATES ------- ---- CURRENT BALANCES ------   -------- UNCOLLECTED --------
PAID TO    01/01/07  PRINCIPAL      201381.49  LATE CHARGES          1227.60
NEXT DUE   02/01/07  ESCROW              0.00  OPTIONAL INS             0.00
LAST PMT   07/07/07  UNAPPLIED FUNDS    120.27  INTEREST                0.00
AUDIT DT   10/26/05  UNAPPLIED CODES    F         FEES                  56.25
  LAST ACTIVITY                BUYDOWN FUNDS     0.00  DFLT EXP PD        0.00
     10/24/07        BUYDOWN CODE                 DFLT EXP UNPD        2651.00
-----------------------------------------------------------------------------
PMT  PLAN PMT  PLAN PMT   AMOUNT TO   AMT TO    UNAPPLIED   FIRST/LAST
NUM  DUE DATE  AMOUNT     REG PMT     LC/UNCOL  BALANCE     PMT APPLIED
---  --------  --------   ---------   --------  ---------   -----------
01   10/31/07  4000.00    1227.77     2651.50    241.50     02/07
02   11/30/07  2215.45    2455.54        0.00      1.41     03/07 04/07
03   12/31/07  2215.45    1227.77        0.00    989.09     05/07
04   01/31/08  2215.45    2455.54        0.00    749.00     06/07 07/07
05   02/29/08  2215.45    2455.54        0.00    508.91     08/07 09/07
06   03/31/08  2215.45    2455.54        0.00    268.82     10/07 11/07
07   04/30/08  2215.45    2455.54        0.00     28.73     12/07 01/08
08   05/31/08  2215.45E   1227.77        0.00   1016.41     02/08
09   06/30/08  2215.45    2455.54        0.00    776.32     03/08 04/08
10   07/31/08  2215.45    2455.54        0.00    536.23     05/08 06/08
11   08/31/08  2215.45    2455.54        0.00    296.14     07/08 08/08
12   09/30/08  2215.48A   1227.77     1383.85      0.00     09/08


    PLAN TOTAL      28369.98

E - ESCROW CHANGE  A - ALTERNATIVE LOAN P&I CHANGE  B - BUYDOWN SUBSIDY CHANGE


I (WE) AGREE TO THE REPAYMENT SCHEDULE AS SET FORTH ABOVE.  THE AMOUNT OF EACH
PAYMENT IS SUBJECT TO CHANGE BASED ON SCHEDULED ALTERNATIVE MORTGAGE P&I, ESCROW
OR OTHER PAYMENT CHANGES.  ALL PROVISIONS OF THE NOTE AND MORTGAGE/DEED OF TRUST
REMAIN IN FULL FORCE AND EFFECT.


_____
MARIA M THOMPSON

_____
ELDA THOMPSON

    540 COL29948

*P37 16*

*Exhibit H*

# GMAC Mortgage

3451 Hammond Ave
P.O. Box 780
Waterloo, IA 50704-0780


10/26/07

### FORECLOSURE REPAYMENT AGREEMENT

MARIA M THOMPSON
ELDA THOMPSON
29 GENERAL LANE
NEWARK         NJ 07106-0000


RE:    Account Number       0359188459
       Property Address     137 ELLERY AVENUE
                            NEWARK         NJ 07106-0000

MARIA M THOMPSON ELDA THOMPSON ("Customer") and GMAC Mortgage, LLC
("Lender"), in consideration for the mutual covenants set forth in this Foreclosure Repayment
Agreement (the "Agreement"), hereby agree as follows:

1. There is an outstanding debt to the Lender pursuant to a note and mortgage or deed of trust
   or equivalent security instrument (the "Mortgage") executed on 07/05/05, in the original
   principal amount of $205000.00.

2. The account is presently in default for non-payment to Lender of the 02/01/07 installment
   and all subsequent monthly payments due on the Mortgage for principal, interest,
   escrows and charges.

3. The amount necessary to cure the default is $14189.33 plus such additional amounts that are
   presently due under the terms of the loan documents as of 10/26/07, and will increase until
   the default in the account is brought current.

4. Lender has instituted foreclosure proceedings against the property securing the Mortgage
   indebtedness, which proceedings will continue until the default(s) described herein is/are
   brought current under the terms of the Mortgage, or otherwise cured as provided for in this
   Agreement.

5. Notwithstanding the foregoing, Lender agrees to suspend but not terminate foreclosure
   activity on the default account, provided we receive the executed Agreement and we
   receive the initial installment in the amount of $4000.00 no later than 10/31/07. This
   executed Agreement can be mailed or faxed to us at:

Exhibit H

10/26/07
Account Number 0359188459
Page Two

GMAC Mortgage, LLC
Attention: Default Payment Processor
3451 Hammond Avenue
Waterloo, IA  50702
Fax: 866-340-5043

6.  Pursuant to your request you agree to pay the remainder of the default, $10189.33, as
indicated in the Payment Schedule enclosed and made a part hereof by reference. Customer
understands that payments due under the Payment Schedule may include amounts due for
real estate taxes and insurance, and the Payment Schedule amounts may, in such event, have
to be increased, at the sole option of the Lender, if the items for such escrow purposes
should increase during the duration of the Agreement.

7.  All payments under this Agreement, including the regular monthly payments, shall be made
in certified funds or cashier's check, shall include the account number on the Customer's
check or on a written attachment to the check, and shall be sent to the following address:

GMAC Mortgage, LLC
Attention: Default Payment Processor
3451 Hammond Avenue
Waterloo, IA  50702

Additional methods of remitting payments under this agreement are:

- Money Gram using a Receive Code of
- Western Union using a Code City and State of Home,IA

If payment is tendered in any other form, Lender may return the payment and invoke any
remedies available under the loan documents and this Agreement.

8.  In the event we do not receive timely payment called for under this Agreement, Lender
may, without further notice to Customer, undertake or continue collection or foreclosure
activities. In such event, any payments tendered under this Agreement shall be applied to
the account in the manner specified in the Mortgage, and there will be no right to a refund
of the tendered funds. In the event Lender chooses to accept any payment not in the full
amount called for under this Agreement, such acceptance shall not be deemed a waiver of
Lender's right to declare a default under this Agreement. Upon any default in meeting the
terms of this Agreement, any such payments received under the terms of this Agreement
shall be applied first against the default in the account, with the excess, if any, then applied
according to the terms of the Mortgage. The parties expressly understand and agree time
shall be of the essence as to the obligation under this Agreement.

12-12020-mg   Doc 7824   Filed 11/19/14   Entered 12/04/14 09:41:57   Main Document
Pg 41 of 68

DFW 20M          10/27/2007  8:84 4M of PAGE    5/006    Fax Server

*Pg 5 of 6*
*Exhibit H*

TO: Maria and Lisa Thompson   Page 5 of 6          2007-10-25 22:10:47 (GMT)          From: Dawn Thomas

10/26/07
Account Number 0359188459
Page Three

9.  Customer understands and agrees that all other provisions, covenants and agreements set forth in the Mortgage shall remain in force and effect during the duration of this Agreement and thereafter, and this Agreement shall not constitute a modification or extension of the Mortgage.

10.  If a notice of a new or subsequent bankruptcy is received during the duration of this Agreement, the Agreement will automatically be voided.

11.  Acceptance of any payment hereunder shall not constitute a cure nor be deemed a waiver of the existing default, and in no manner shall such acceptance prejudice any rights of Lender to proceed with the Trustee Sale Action noticed in the Notice of Default, and shall not constitute a violation of California Code of Civil Procedure Section 726.580(a), 580(d) (the One Form of Action Rule), and shall not invalidate the Notice of Default. Customer expressly relinquishes and waives any rights, claims and defenses Customer may have under any of the Code of Civil Procedure Sections or under the Loan with regard to any whole or partial payments, whether current, past or future.

12.  If any additional amounts are added to the loan to be collected that have not been addressed in this agreement, those amounts will need to be paid at the conclusion of this agreement.

Notice: This is an attempt to collect a debt, and any information obtained will be used for that purpose. If your debt has been discharged in bankruptcy, our rights are being exercised against the collateral for the above-referenced account, not as a personal liability.

If you have any additional questions, please contact us at 800-850-4622, extension .

Loss Mitigation Department
Loan Servicing

Enclosure

10/26/07
Account Number 0359188459
Page Four

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*CERTIFIED FUNDS ONLY\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

NOTE: There is no grace period during this Agreement. Pursuant to your request and in order to cure the default on this account, all payments must be received on or before the due date.

RECEIVED AND AGREED:

_____ (Seal)          Oct. 30, 2007
MARIA M THOMPSON                         Date
Customer

_____                  Oct. 30, 2007
ELDA THOMPSON                            Date
Customer

Upon receipt of the signed agreement, we as the Servicer will also execute to indicate our concurrence with this agreement.

_____
Servicer

5:15

## SIGN AND RETURN THIS PAGE ONLY

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* FAX TO 866-340-5043 \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Exhibit K 1 of 29*
*I - J -*



O C W E N

Ocwen Loan Servicing, LLC
PO Box 780
Waterloo IA 50704-0780
HELPING HOMEOWNERS IS WHAT WE DO! ™
OCWEN.MORTGAGEBANKSITE.COM

April 9, 2013

Maria M Thompson
Elda Thompson
29 General Lane
Willingboro NJ 08046-3019

RE: Account Number          0359188459
    Property Address        137 Ellery Avenue
                            Newark NJ 07106

Dear Maria M Thompson and Elda Thompson:

This is in response to our telephone conversation on April 5, 2013. Specifically, this is in regards to your concerns regarding the loan documents.

As a result of the 2012 Chapter 11 Residential Capital, LLC bankruptcy filing, certain assets of GMAC Mortgage, LLC (GMACM) were sold to Ocwen Loan Servicing, LLC (Ocwen) effective February 16, 2013. Ocwen's response is therefore based upon the available account records acquired from GMACM.

I have enclosed a copy of the Note, Mortgage and assignment. Based on a review of the documents, your loan originated with Ameriquest Mortgage Company June 25, 2005. When a new loan is closed, an assignment is completed; an assignment is the transfer of ownership, rights, or interests in a property as in a mortgage, lease, or deed of trust. The Mortgage was recorded as of October 3, 2005 by Essex County Register, book 10772 page 595.

In accordance with your Mortgage, section 20 it indicates, *The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to borrower. A sale might result in a change in entity (known as the "Loan Servicer")...*

The loan was service released to GMACM as of October 2005 and as of February 2013, the loan was service released to Ocwen. Therefore, your current loan servicer is Ocwen.

Our records confirm as of July 7, 2011 the loan was referred to foreclosure. The account is past due for the April 1, 2011 and all subsequent payments. To obtain the amount required to reinstate the loan to a current status, you would need to contact the foreclosure attorney Zucker, Goldberg, Ackerman at 1-908-233-8500.

If you have further questions regarding this matter please contact me at 1-866-924-8409, option 1, extension 2365387, or direct at 319-236-5387.

Sincerely,

Denise Jungen
Executive Account Manager

Enclosures

This is an attempt to collect a debt and any information obtained will be used for that purpose.

Lender's address is **1100 Town and Country Road, Suite 200  Orange, CA 92868**

Lender is the mortgagee under this Security Instrument.
**(D) "Note"** means the promissory note signed by Borrower and dated **June 25, 2005**
The Note states that Borrower owes Lender **two hundred five thousand and 00/100**

Dollars

(U.S. $ **205,000.00**      ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **August 1, 2035**
**(E) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

- [X] Adjustable Rate Rider
- [ ] Balloon Rider
- [ ] VA Rider
- [ ] Condominium Rider
- [ ] Planned Unit Development Rider
- [ ] Biweekly Payment Rider
- [ ] Second Home Rider
- [ ] 1-4 Family Rider
- [ ] Other(s) [specify]

**(H) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(I) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(K) "Escrow Items"** means those items that are described in Section 3.
**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

AM6NJ (0311)                          Page 2 of 15                          Form 3031 1/01

0125315309 - 5614

06/24/2005 3:05:20



0000012531530903014318602

**(F)** "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For these purposes, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the **County** of **ESSEX** :

[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

Legal Description Attached Hereto and Made a Part Hereof.

Property Account Number: **Block 4138 Lot 7**          which currently has the address of
**137   ELLERY AVENUE**                                                      [Street]
**NEWARK**                                     [City], New Jersey **07106**         [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

AM6NJ (0311)                          Page 3 of 15                                  Form 3031 1/01
0125315309 - 5614
06/24/2005 3:05:20



0000012531530903014316031

*Exhibit 4 / 28*
*I - S - K*

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future. If Lender accepts such payments, it shall apply such payments at the time such payments are accepted. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver,

**AM6NJ** (0311)                          Page 4 of 15                                                    Form 3031 1/01

0125315309 - 5614

06/24/2005 3:05:20

Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien.

AM6NJ (0311)                          Page 5 of 15                    Form 3031 1/01

0125315309-5614

06/24/2005 3:05:20

000001253153090301431605

*Exhibit 6 of 20*
*TJK*

Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the



0125315309 - 5614

06/24/2005  3:05:20

0000012531530903001431600

*Exhibit 7 of 2*
*J.S. K*

excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees

Initials: 

0125315309-5614

06/24/2005  3:05:20



0000012531530903014316607

*Exhibit 8 of 38*

*15 - K*

to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:



Initials

AM6NJ (0311)                    Page 8 of 15                    Form 3031 1/01

0125315309 - 5614

06/24/2005  3:05:20

0000012531530903001431608

*Exhibit 99 ;*
*J-J - K*

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a

AM6NJ (0311)                          Page 9 of 15                          Form 3031 1/01


000001253153090301431609

*Exhibit 10 of 2:*
*J-S-K*

ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless

AM6NJ (0311)                    Page 10 of 15                    Form 3031 1/01

Initial: 

0125315309 - 5614

06/24/2005  3:05:20

0000012531530900301431610

*Exhibit 11/4 38*
*J.J.K*

Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check,

AM6NJ (0311)    Page 11 of 15    Initials: [signature]    Form 3031 1/01

0125315309 - 5614

06/24/2005   3:05:20



0000012531530090301431011

*Exhibit 12 of 33*
*I-J-K*

treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by

Initials: 

**AM6NJ** (0311)    Page 12 of 15    **Form 3031 1/01**

0125315309 - 5614

06/24/2005  3:05:20

000001253153090301431612

*Exhibit 13 of 22*
*15-K*

any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property; (e) the Borrower's right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure; and (f) any other disclosure required under the Fair Foreclosure Act, codified at Sections 2A:50-53 et seq. of the New Jersey Statutes, or other Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. No Claim of Credit for Taxes.** Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

0125315309 - 5614

06/24/2005  3:05:20



0000012531530903014431613

*Exhibit 14 of 22*
*I.J.K*

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

DEVERTON GILPHILIN
Notary Public, State of New Jersey
My Commission Expires May 29, 2007

_____    _____ (Seal)
                                    MARIA M THOMPSON              -Borrower

DEVERTON GILPHILIN
Notary Public, State of New Jersey
My Commission Expires May 28, 2007

_____    _____ (Seal)
                                    ELDA THOMPSON                 -Borrower

_____ (Seal)    _____ (Seal)
                        -Borrower                                  -Borrower

_____ (Seal)    _____ (Seal)
                        -Borrower                                  -Borrower

_____ (Seal)    _____ (Seal)
                        -Borrower                                  -Borrower

AM6NJ (0311)                    Page 14 of 15                    Form 3031 1/01



0000012531530600301431614

*Exhibit 15 of 22*
*15 K*

STATE OF NEW JERSEY, *ESSEY.*    County ss:

On this _*25th*_ day of _*June 2005*_, before me, the
subscriber, personally appeared

_*MARIA M. THOMPSON*_
_*ELDA THOMPSON.*_

who, I am satisfied, is/are the person(s) named in and who executed the within instrument, and
thereupon acknowledged that he/she/they signed, sealed and delivered the same as his/her/their
act and deed, for the purposes therein expressed.



Notary Public

**DEVERTON GILPHILIN**
Notary Public, State of New Jersey
My Commission Expires May 28, 2007

0000012531530903014316 15

0125315309 - 5614

06/24/2005 3:05:20 PM

*Exhibit 16 of 2*
*J. K*

## LEGAL DESCRIPTION

ALL that certain lot, parcel or tract of land, situate and lying in the City of Newark, County of Essex and State of New Jersey being more particularly described as follows:

BEGINNING AT A POINT ON THE NORTHWESTERLY LINE OF ELLERY AVENUE DISTANT 777.40 FEET NORTHEASTERLY FROM THE CORNER FORMED BY THE INTERSECTION OF THE NORTHWESTERLY LINE OF ELLERY AVENUE WITH THE NORTHERLY LINE OF CLINTON AVENUE AS SHOWN ON "MAP OF PROPERTY OF ANTHONY SCHAEFER, REVISED MAY 9, 1923", AND RUNNING THENCE (1) NORTH 60 DEGREES 10 MINUTES 30 SECONDS WEST, A DISTANCE OF 105.0 FEET THENCE (2) NORTH 29 DEGREES 49 MINUTES 30 SECONDS EAST, A DISTANCE OF 35.0 FEET, THENCE (3) SOUTH 60 DEGREES 10 MINUTES 30 SECONDS EAST A DISTANCE OF 105.0 FEET TO THE NORTHWESTERLY LINE OF ELLERY AVENUE, THENCE (4) ALONG THE NORTHWESTERLY LINE OF ELLERY AVENUE, SOUTH 29 DEGREES 49 MINUTES 30 SECONDS WEST, A DISTANCE OF 35.0 FEET TO THE POINT AND PLACE OF BEGINNING.

FOR INFORMATIONAL PURPOSES ONLY:  Also known as Lot 7 a/k/a BL 1138 Lot 7 in Block 4138 on the City of Newark Tax Map.

# ADJUSTABLE RATE RIDER
**(LIBOR Six-Month-Index (As Published in the Wall Street Journal)- Rate Caps)**

THIS ADJUSTABLE RATE RIDER is made this 25th day of June , 2005   and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Ameriquest Mortgage Company (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

137  ELLERY AVENUE, NEWARK, NJ  07106
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of  5.990 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates
The interest rate I will pay may change on the first day of  August, 2008 , and on that day every sixth  month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index.   The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in the Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information.  The Note Holder will give me notice of this choice.

Initials

Loan Number:  0125315309 - 5614

0000012531530903021 50301

810-1 (Rev 1/01)                        Page 1 of 3                        06/24/2005 3:05:20 PM



**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **two and three-quarters** percentage points ( **2.750** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **7.990% or less than 5.990%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One( **1.000** %) from the rate of interest I have been paying for the preceding   six months. My interest rate will never be greater than 11.990)% or less than 5.990)%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Loan Number:  0125315309 - 5614


0000012531530903021150302

Initials_____

810-2 (Rev 1/01)                    Page 2 of 3

06/24/2005 3:05:20 PM

Doc Type:RDR                                    Identifier:0359188459

*Exhibit 19 of 20*

*IJ - K*

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing. If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.



_____ (Seal)    _____ (Seal)
Borrower MARIA M THOMPSON    Borrower ELDA THOMPSON

_____ (Seal)    _____ (Seal)
Borrower    Borrower

Loan Number: 0125315309 - 5614





Loan Number: 0125315309 - 5614

# ADJUSTABLE RATE NOTE
## (LIBOR Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

June 25, 2005
Date

Orange
City

CA
State

137 ELLERY AVENUE, NEWARK, NJ 07106
Property Address

**1. BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $ 205,000.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is **Ameriquest Mortgage Company.**

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of **5.990 %.** This interest rate I will pay may change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS**
(A) Time and Place of Payments
I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on **September 1, 2005 .**
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on, **August 1, 2035** , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my payments at:    **505 City Parkway West, Suite 100,  Orange, CA 92868**

or at a different place if required by the Note Holder.
(B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $ 1,227.77. This amount may change.
(C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
(A) Change Dates
The interest rate I will pay may change on the first day of,  **August, 2008**  and on that day every sixth  month thereafter. Each date on which my interest rate could change is called a "Change Date."
(B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."
If at any point in time the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
(C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding **two and three-quarters** percentage point(s) (2.750%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eight of one percent (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.



Initials: _____
_____
06/24/2005 3:06:20 PM

Exhibit 31 of 28
J J K

Loan Number: 0125315309 - 5814

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 7.990 % or less than 5.990%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One percentage point(s) 1.000%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 11.990 % or less than 5.990 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. PREPAYMENT PRIVILEGE**

I may repay all or any part of the principal balance of this Note in accordance with the terms of this Section without incurring a prepayment charge. A "prepayment" is any amount that I pay in excess of my regularly scheduled payments of principal and interest that the Lender will apply to reduce the outstanding principal balance on this Note in accordance with this Section.

**(A) Application of Funds**

I agree that when I indicate in writing that I am making a prepayment, the Lender shall apply funds it receives in accordance with the order of application of payments set forth in Section 2 of the Security Instrument.

**(B) Monthly Payments**

If I make a prepayment of an amount less than the amount needed to completely repay all amounts due under this Note and Security Instrument, my regularly scheduled payments of principal and interest will not change as a result.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces the principal, the reduction will be treated as a partial prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payment**

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.



201-2UNIV (Rev. 07/03)      2 of 3

Initials: _____ _____

06/24/2005 3:05:20 PM

Loan Number: 0125315309 - 5614

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.   WAIVERS**
I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.   UNIFORM SECURED NOTE**
This Note is a uniform instrument with limited variations in some jurisdictions. In addition, to the protections given to the Note Holder under this Note, A Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That the Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred or if Borrower is not a natural person) without the Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonable determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition of Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**Oral agreements, promises or commitments to lend money, extend credit, or forbear from enforcing repayment of a debt, including promises to extend, modify, renew or waive such debt, are not enforceable. This written agreement contains all the terms the Borrower(s) and the Lender have agreed to. Any subsequent agreement between us regarding this Note or the instrument which secures this Note, must be in a signed writing to be legally enforceable.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)      _____ (Seal)
Borrower   MARIA M THOMPSON                     Borrower   ELDA THOMPSON

_____ (Seal)      _____ (Seal)
Borrower                                         Borrower



291-3UNIV (Rev 07/05)                   3 of 3                        06/24/2005 3:05:20 PM

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

*Charles Hoecher*
*GMAC Mortgage Corp*
*3451 Hammond Ave*
*Waterloo, IA 50707*

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X **Greg Caya**                ☐ Agent   ☐ Addressee

B. Received by (Printed Name)              C. Date of Delivery
MAR 0 7 2013

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
☑ Certified Mail    ☐ Express Mail
☐ Registered        ☐ Return Receipt for Merchandise
☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)          ☐ Yes

2. Article Number
(Transfer from service label)    7012 2210 0000 3571 1745

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

*Ocwen Loan Serv. LLC*
*3451 Hammond Ave*
*P.O. Box 780*
*Waterloo, IA 50704-0780*

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X **Greg Caya**                ☐ Agent   ☐ Addressee

B. Received by (Printed Name)              C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
☑ Certified Mail    ☐ Express Mail
☐ Registered        ☐ Return Receipt for Merchandise
☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)          ☐ Yes

2. Article Number
(Transfer from service label)    7012 2210 0000 3571 1837

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

*Exhibit M*
*7 of 8*

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

Elda M. Thompson
79 General Lane
Willingboro, NJ
08046-3019

---

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

Elda M. Thompson
79 General Lane
Willingboro, NJ
08046-3019

# 𝕯𝕖𝕖𝖉

This Deed is made on  6-10-05
BETWEEN
MARIA M. THOMPSON

whose post office address is
137 ELLERY AVENUE
NEWARK, NJ 07106
referred to as the Grantor,
AND

MARIA M. THOMPSON AND ELDA M.  THOMPSON, MOTHER AND DAUGHTER, J/T

whose post office address is
137 ELLERY AVENUE
NEWARK, NJ 07106
referred to as the Grantee.
The words "Grantor" and "Grantee" shall mean all Grantors and all Grantees listed above.

**NATIONAL TITLE AGENCY**
**1930 E. ROUTE 70, STE H-41**
**THE EXECUTIVE MEWS**
**CHERRY HILL, NJ  08003**

· **Transfer of Ownership.**    The Grantor grants and conveys (transfers ownership of) the property described below
to the Grantee.  This transfer is made for the sum of
$1.00 ONE DOLLAR
The Grantor acknowledges receipt of this money.

· **Tax Map Reference.**    (N.J.S.A.  46:15-1.1) Municipality of CITY OF NEWARK
Block No. 4138              Lot No. 7              Qualifier No.              Account No.
☐  No property tax identification number is available on the date of this Deed.  (Check box if applicable.)

**Property.**    The Property consists of the land and all the buildings and structures on the land in
the  CITY                    of    NEWARK
County of ESSEX                            and State of New Jersey.  The legal description is:

☒ Please see attached Legal Description annexed hereto and made a part hereof.  (Check box if applicable.)

BEING THE SAME AND PREMISES WHICH BECAME VESTED IN MARIA M. THOMPSON BY DEED FROM PATRICIA
. GINOLFI DATED JULY 8 1993 RECORDED JULY 27 1983 IN DEED BOOK 4973 PAGE 984.
39.

THE PURPOSE OF THIS DEED IS TO CREATE JOINT TENANTS WITH RIGHT OF SURVIVORSHIP, BETWEEN
OTHER AND DAUGHTER.

THIS TRANSFER IS T...

*Exhibit L* (handwritten)

he street address of the Property is:
37 ELLERY AVENUE
EWARK, NJ 07106

**Type of Deed.**    This Deed is called a Quitclaim Deed.  The Grantor makes no promises as to ownership or title, but
mply transfers whatever interest the Grantor has to the Grantee.

**Signatures.**    The Grantor signs this Deed as of the date at the top of the first page.  If the Grantor is a
rporation, this Deed is signed and attested to by its proper corporate officers and its corporate seal is affixed.
'rint name below each signature).

'itnessed or Attested by:                                             _Maria M. Thompson_ (Seal)
                                                                      MARIA M. THOMPSON

_Amber S. Richardson_ _____ (Seal)

TATE OF NEW JERSEY, COUNTY OF ~~CAMDEN~~ Burlington SS.
CERTIFY that on June 10th 2005
ARIA M. THOMPSON

rsonally came before me and stated to my satisfaction that this person (or if more than one, each person):
) was the maker of this Deed;
) executed this Deed as his or her own act; and,

) made this Deed for $ 1.00                                    as the full and actual consideration paid or to be paid for the
ansfer of title. (Such consideration is defined in N.J.S.A. 46:15-5.)