## Exhibit J to Horst Declaration

Michael E. Boyd
5439 Soquel Drive
Soquel, CA 95073
Phone: (408) 891-9677
E-mail: michaelboyd@sbcglobal.net
In *Pro Per*

**RECEIVED**

MAY 2 2 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT FOURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

CIPSG

# UNITED STATES DISTRICT COURT

## NORTHER DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| MICHAEL E. BOYD, | **Case No.: 5:11-CV-05018 PSG** |
| Plaintiff, | **FIRST AMENDED COMPLAINT OF UNCONSCIONABILITY CONTRACT ADHESION TO REAL PROPERTY** |
| vs. | **JURY TRIAL DEMANDED** |
| GMAC MORTGAGE LLC; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; and DOES 1 to 100, | **CASE MANAGEMENT CONFERENCE** Date: May 29, 2012 Time: 2:00 p.m. |
| Defendants. | **Courtroom: 5-Hon. Paul Singh Grewal** |

## INTRODUCTION

In January 2001 Plaintiff and his spouse formed a "Joint Living Trust" which states, [Exhibit A page 1] "The purpose of this Agreement is to establish a Trust to receive and manage assets for the benefit of the Grantors during the Grantors' lifetimes, and to further manage and distribute the assets of the Trust upon the death of the surviving Grantor." Plaintiff Michael E. Boyd ("Plaintiff") hereby complains of unconscionability contract adhesion by Defendants' GMAC Mortgage LLC ("GMAC LLC" or "GMACM") and Mortgage Electronic Registration Systems ("MERS") to breach said "Joint Living Trust" through the use of standard form loans and promissory notes [referred herein as "Deeds of Trust" or "DOTs"] signed by Plaintiff in and about January 2007 which both at the bottom of page 1 lists "CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS Form 3005 1/01 V-6A(CA)" which is a standard form contract which required the use of MERS as "a separate corporation that

1   is acting solely as a nominee for Lender and Lender's successors and assigns[and that] MERS is

2   the beneficiary under this Security Instrument."  Because Defendants breached his 2001 "Joint

3   Living Trust" Plaintiff also claims a violation of due process rights [both federal and state] by

4   GMAC LLC and MERS. Plaintiff respectfully demands a trial before a jury.

<div align="center">

## JURISDICTION

</div>

6       This court has jurisdiction over this complaint because it arises under the laws of the

7   United States and while Plaintiff's properties are located within the District, both Defendants,

8   GMAC Mortgage, LLC and MERS, are incorporated in the state of Delaware.

<div align="center">

## BACKGROUND TO COMPLAINT

</div>

10      Mortgage Backed Securities ("MBS") by nature, disclose consumer financial information,

11  to multiple entities not privy to the original transaction between borrower and lender. In fact,

12  investors have an information advantage far superior to the borrower. Many borrowers, myself

13  being among them, cannot even ascertain who the true owner of my mortgages. Lenders refuse to

14  disclose this information, MERS does not record the information consistently, and it is not

15  recorded in the Registry of Deeds. MERS website lists GMAC LLC as both DOT's "Servicer",

16  but not the "underwriter" who is listed as "Investor: Undisclosed Investor" for both properties.

17  Based on information provided by Defendant GMACM's Loss Mitigation Department; Plaintiff is

18  informed and believes and thereupon alleges that the financial "underwriter" and the "Investor" to

19  said DOTs was Wells Fargo Bank N.A; the same bank where Plaintiff is a depositor.

20      Any entity who gains membership to MERS can view more information than the

21  consumer is made aware of. The investor purchases of an "alleged" interest in personal real

22  property, yet it is never recorded or disclosed until a future event occurs. This is in effect, bucket

23  shopping. The Futures Trading Practices Act of 1992 exempted such transactions from state

24  bucketing laws "to provide legal certainty...". The statutory purpose, I would surmise, was not to

<div align="center">

- 2 -

**FIRST AMENDED COMPLAINT OF UNCONSCIONABILITY**

</div>

Case 5:11-cv-03018-PSG  Document 52  Filed 03/22/12  Page 3 of 20

1   create and allow transactions involving property rights protected by the 14th amendment. Further,

2   as witnessed by the current mortgage mess, this exemption has created a far greater "legal

3   uncertainty" with respect to the property rights that are securitized, than any issue that the

4   exemption was meant to eliminate.

5        An MBS is also by nature, a fiduciary conflict of interest. A bank cannot exert their

6   fiduciary responsibilities for two classes of consumers, lenders and investors. Their interests in

7   respect to MBSs, are adversarial. Banks disclose one consumers (borrowers) private financial

8   information to another consumer (investors) freely, while withholding the information in a

9   reciprocal manner. This is all done without the borrower having any knowledge of the

10  securitization and subsequent transactions.

11       Borrowers expect privacy of their financial information when entering into any contract

12  with a lender. Securitizations on private property rights should not be legal without signed

13  consent of a real party in interest (borrower), on any instrument involving the lender and any

14  subsequent party in interest. It also must be voluntary and not adhesive, such as the MERS

15  contracts. This would allow ALL consumers to have privacy control, bargaining power, and

16  disclosure in Mortgage Backed Securities. In this case the Plaintiff seeks to unwind and disclose

17  the chain of subsequent parties of interest to the two subject DOTs; the considerations provided

18  and received by each, and to disclose the actual purchase value of associated MBS and the

19  identity of each underwriter to these DOTs.

20       It turns out, the foreclosure crisis, which started and keeps fueling our economic crisis,

21  began over 20 years ago with Banks getting federal law changed to enable them to increase their

22  private gains. Now they have defrauding almost everyone possible.  Banks began this cycle of

23  fraud by lying to Investors (i.e.: our Pension Funds) about the Mortgage Backed Securities they

24  sold.  All loans in these securitized pools were created to explode/fail, unbeknownst to investors

FIRST AMENDED COMPLAINT OF UNCONSCIONABILITY

12-12020-mg   Doc 7825-11   Filed 12/04/14   Entered 12/04/14 17:51:36   Exhibit J
to Declaration   Pg 5 of 54
Case 5:11-cv-05018-PSG   Document 52   Filed 03/22/12   Page 4 of 20   Exhibit J

1 | and insurers.  Borrowers were forced to refinance prior to loan "explosion/fail dates," which was
2 | exactly why banks created loans like that.  Banks then kept all loan ownership records in MERS,
3 | a Members Only private database, hiding these records from everyone else.  Banks used these
4 | loans/notes as collateral for short-term lines of credit instead of transferring the notes to the
5 | Mortgage Backed Securities they sold, creating great wealth for themselves, but defrauding both
6 | the Investors and the IRS.  As this scheme began to come apart, banks set up investment
7 | departments to "short" the Mortgage Backed Securities they sold, generating additional huge
8 | profits for themselves while everyone else lost money.  Then Banks fraudulently and illegally
9 | faked Loan Ownership paperwork which they recorded to enable them to foreclose on homes
10 | whose loans they did not own (dismissively termed "robo-signing").  Our county records are now
11 | filled with fraudulent paperwork, jeopardizing ownership for all properties and owners caught in
12 | this fraud - which turns out to be as many as seventy two million properties.



**Figure 1**

FIRST AMENDED COMPLAINT OF UNCONSCIONABILITY

Below are the 12 Steps of Bank Fraud [also see Figure 1] to clarify what has actually

taken place and why we're in such a mess today.

STEP 1:  CHEAT County Recorders' Offices nationwide:  establish MERS (late 1990s).

Using MERS eliminates recording Loan ownership changes at the county recorders' offices.

Using MERS hides these ownership changes from the Public. Using MERS has cheated and still

cheats our Counties out of billions of dollars of recording fees

STEP 2:  CIRCUMVENT the SEC:  use foreign corporations as Securities Vehicles. No

SEC regulators; no prying eyes; no inhibitions; no rules; this significantly "Gamed the System"

that was put in place to protect Investors from fraud

STEP 3:  BUY OFF Ratings Agencies:  Get AAA-Ratings on Securities PRIOR to

funding the Loans that should have been in the Securities at time of sale. Normally loans are

made first, then pooled, then rated as a Security, then sold to Investors.  These Securities were

created first, rated without Loans, sold to Investors, and then filled with bad Loans designed to

fail.

STEP 4:  Commit Insurance FRAUD:  over-insure the Securities' Values by 30x,

then specifically design the loans to fail. Insurance was paid to Servicers managing the Securities,

not Investors, when the values declined. Example:  AIG credit-default-swaps were used as

Insurance for these Securities. These Securities were then filled with Loans "designed to fail" to

ensure values would decline. Example:  when a $300,000 loan defaulted, payout is $9,000,000 to

the Servicers

STEP 5:  CHEAT Investors' out of Collateral:  do not assign Loans to the Securities

after the Loans are made. Loans funded with Investor money were not assigned to the Securities

the Investors purchased. Using MERS allows Bank Servicers to change Loan ownership as they

choose

FIRST AMENDED COMPLAINT OF UNCONSCIONABILITY

STEP 6: CHEAT the IRS with a tax dodge: set up Securities as Closed-end Long-Term qualifying Investments. Use Securities as Open-end Short-term Collateral for large cash deposits (REPOs). Using MERS to shift Loan ownership at will, allows Bank Servicers to keep up this game.

STEP 7: CHEAT Truth-in-Lending Laws (TIL) 1: At Loan funding, Banks lied, [in Plaintiff's case Plaza Home Mortgage] calling themselves Lenders, but they weren't (Banks are Pretender Lenders) Money for the Loans came from pre-selling the Securities to Investors. No Bank money has ever funded any of these securitized loans. Banks only service these loans and manipulate Loan ownership using MERS

STEP 8: Criminally Disregard TIL 2: pushed Borrowers into Loans Banks knew borrowers could not afford when the Loan reset [i.e., contracts of adhesion]. This is criminal disregard of the Fiduciary Responsibility required of loan officers. Banks pushed loan officers with every ruse and bonus possible to snag unsuspecting Borrowers regardless of future harm to the Borrower.

STEP 9: CHEAT the Borrowers: create Loans designed to fail on schedule. Example: "NINJA" Loan requirements: no documentation, no income, no job (huh??). Loan $300,000, 6% teaser interest rate for 2 years; 16% interest rate on month 25 (failure month); 6% teaser rate for 24 months = $1,500/month; Interest Only payments for 2 years (affordable); Month 25: Loan payment "explodes" to $4,000/month (16%/12 x $300,000) and Borrower defaults.

STEP 10: STEAL the Investors' Money: example below (both = $48,000/yr); $300,000 Loan at 16% interest = 6% interest on $800,000 Investment; $300,000 of $800,000 Investment is used to fund the $300,000 Loan in Step 9. $500,000 balance of Investment is used for Reserves, Bonuses, and Kick-backs; Reserves: $60,000 for 24 months difference between $4,000/month

FIRST AMENDED COMPLAINT OF UNCONSCIONABILITY

1  due minus $1,500/month Borrower payments; Bonuses, Kick-backs:  $440,000 to loan brokers

2  and bank servicers, other insiders.

3        STEP 11:  Fraudulently Foreclose Loan defaults:  falsify Loan ownership;

4  falsify Foreclosure documents "Pretender Lenders" (Banks) foreclose as if they own the Loans;

5  they do NOT own the Loans. Loan Servicers (Banks) illegally assign Loans to Securities years

6  after the Funds Closed (robosigning fraud not slipups).

7        STEP 12:  CHEAT the US Taxpayer:  Use TARP to pay off lawsuits; get money to do

8  Loan Mods Bank Servicers can't legally make; Pretender Lenders (Banks) are Servicers with NO

9  authority to modify these loans. Only Loan Owners can modify the Loans.  Since Loans were not

10  assigned to specific Securities, Investors don't own the Loans either. Confuse and obfuscate to the

11  max to achieve affordable "settlements" with Fed and States.

12        **VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL")**

13        **CAL. BUS. & PROF. CODE § 17200**

14        California's unfair competition statute prohibits "any unlawful, unfair or fraudulent

15  business act or practice." Cal. Bus. & Prof. Code § 17200 (2009).[1] Because Section 17200 is

16  written in the disjunctive, it prohibits three separate types of unfair competition: (1) unlawful acts

17  or practices, (2) unfair acts or practices, and (3) fraudulent acts or practices. *Cel-Tech Commc'ns,*

18  *Inc. v. Los Angeles Cellular Tel. Co.*, 83 Cal. Rptr. 2d 548, 561 (Cal. 1999). By proscribing

19  "unlawful" acts or practices, "Section 17200 'borrows' violations of other laws and treats them as

20  unlawful practices independently actionable." *Id.* at 539-40. When an action is brought by a

21  consumer against the creditor, as is the case here, a broader definition of the word "unfair"

22  applies than when an action is between direct competitors. In this context, an "unfair" business

23  practice occurs "when it offends an established public policy or when the practice is immoral,

24  ---

[1] Plaintiff is a California resident, Defendants are incorporated in Delaware, and the amount in controversy exceeds $75,000. Thus, it appears that this case is properly before the court based on diversity jurisdiction. 28 U.S.C. § 1332.

1    unethical, **oppressive**, unscrupulous or substantially injurious to consumers." See _People v. Casa_

2    _Blanca Convalescent Homes, Inc._, 159 Cal. App. 4th 509, 530 (1984), abrogated on other grounds

3    in _Cel-Tech_, 83 Cal. Rptr. 2d at 565 & n.12; accord _McDonald v. Coldwell Banker_, 543

4    F.3d 498, 506 (9th Cir. 2008).

5    The term "fraudulent" as used in Section 17200 "does not refer to the common law tort of

6    fraud" but only requires a showing members of the public "are likely to be deceived." _Puentes v._

7    _Wells Fargo Home Mortg., Inc._, 72 Cal. Rptr. 3d 903, 909 (Ct. App. 2008) (quoting S_aunders v._

8    _Superior Court_, 33 Cal. Rptr. 2d 438, 441 (Ct. App. 1994). "Unless the challenged conduct

9    'targets a particular disadvantaged or vulnerable group, it is judged by the effect it would have on

10    a reasonable consumer.'" _Puentes_, 72 Cal. Rptr. 3d at 909 (quoting _Aron v. U-Haul Co. of Cal._,

11    49 Cal. Rptr. 3d 555, 562 (Ct. App. 2006)).

12    Claims grounded in fraud, including those alleged under Section 17200, must be pled with

13    particularity under Rule 9(b). See _Kearns v. Ford Motor Co._, 567 F.3d 1120, 1125 (9th Cir. 2009)

14    ("We have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for

15    violations of the . . . UCL"). "In cases of corporate fraud, however, the pleading standard is

16    relaxed since the circumstances may make it difficult to attribute particular fraudulent conduct to

17    each defendant as an individual. Rule 9(b) serves to give defendants notice of the specific

18    fraudulent conduct against which they must defend." _625 3rd St. Assoc., L.P. v. Alliant Credit_

19    _Union_, 633 F.Supp.2d 1040, 1049-50 (N.D. Cal. 2009) (citing _Bly-Magee v. California_, 236 F.3d

20    1014, 1018 (9th Cir.2001).

21    Defendants actions [as evinced by Exhibit A herein] breaching his 2001 "Joint Living

22    Trust" in a "take it or leave it manner" thus affording Plaintiffs no opportunity to negotiate. As

23    alleged by Plaintiff already in his original Complaint "[u]nconscionability has both a procedural

24    and substantive element. See _Ting v. AT&T_, 319 F.3d 1126, 1148-49 (9th Cir. 2003_)_; see also

FIRST AMENDED COMPLAINT OF UNCONSCIONABILITY

1   _Flores v. Transamerica HomeFirst, Inc._, 113 Cal. Rptr. 2d 376 (Ct. App. 2001_)_. The procedural

2   element focuses on "**oppression**" or "surprise." See _Flores_, 113 Cal. Rptr. 2d at 381_._" [Complaint

3   page 4 lines 5 to 8]  Plaintiff alleges the surprise here being the breaching of his living trust

4   without consent under Plaintiff's powers as a living trustee. "**Oppression** arises from an

5   inequality of bargaining power that results in no real negotiation and an absence of meaningful

6   choice. See _id._ Surprise involves the extent to which the supposedly agreed-upon terms are

7   hidden in a pre-printed form drafted by the party seeking to enforce them. See _id._ _A contract is_

8   _procedurally unconscionable if it is a contract of adhesion, i.e., a standardized contract, drafted_

9   _by the party of superior bargaining strength that relegates to the subscribing party only the_

10  _opportunity to adhere to the contract or reject it._ Ting, 319 F.3d at 1149.

11      Plaintiff alleges Defendants breached his "Joint Living Trust" through the use of standard

12  form loans and promissory notes [referred herein as "Deeds of Trust" or "DOTs"] outside

13  Plaintiff's individual authority that limited such authority to enter in to contracts to the living

14  trustee. Since the DOT was not signed by Plaintiff in his capacity as a living trustee; accordingly,

15  a finding of **a contract of adhesion** is essentially a finding of procedural unconscionability as is

16  the case with the DOTs provided by Defendants in a "take it or leave it manner".

17      Taking all these allegations as true, the conduct by Defendants appears to be "immoral,

18  unethical, oppressive, unscrupulous or substantially injurious to consumers," and thus satisfies the

19  UCL's "unfair" prong. See _Casa Blanca_, 159 Cal. App. 4th at 530; McDonald, 543 F.3d at 506."

20  Moreover, a reasonable consumer is likely to rely on representations by a bank's agent; thus, such

21  conduct also violates the UCL's "fraudulent" practices prong. See _Puentes_, 72 Cal. Rptr. 3d at

22  909.

23      Plaintiff has stated that he possesses documents which support his contention that the

24  alleged two unsecured Deeds of Trusts ("DOTs") signed by Plaintiff where unconscionability

12-12020-mg   Doc 7825-11   Filed 12/04/14   Entered 12/04/14 17:51:36   Exhibit J
to Declaration   Pg 11 of 54
Case 5:12-cv-03018-PSG   Document 52   Filed 05/22/12   Page 10 of 20   Exhibit J

1   contracts of adhesion, where a finding of a contract of adhesion is essentially a finding of

2   procedural unconscionability, as is the case with the two identical contracts provided by

3   Defendants in a standard form "CALIFORNIA-Single Family-Fannie Mae/Freddie Mac

4   UNIFORM INSTRUMENT WITH MERS Form 3005 1/01 V-6A(CA)"provided by Defendants

5   in a "take it or leave it manner" in December 2006 and again in January 2007 where both

6   executed by Plaintiff outside Plaintiff's individual authority that limited such authority to enter in

7   to contracts to the living trustee.

8                                 **STATEMENT OF FACTS**

9           On January 9, 2001 Plaintiff and his spouse Patricia Paramoure executed a "Joint Living

10  Trust"[2] [Exhibit A] which lists at page 1 of "Schedule A; Michael Boyd and Patricia Paramoure

11  LIVING TRUST; Initial Trust Property .... A-1.2  5439 Soquel Dr, Soquel, California, APN 037-

12  094-29, legally described as follows…" and "A-1.3  1092 Lakebird Dr, Sunnyvale, California,

13  APN 110-23-025, legally described as follows…" Under the terms of the living trust section

14  "XVI. TRUSTEE POWERS" [Joint Living Trust page 5] it includes the power to enter in to

15  mortgages in subsections "G. Manage Property.  To manage real estate and personal property,

16  borrow money, exercise options, buy insurance, and register securities as may appear to be

17  proper." And to allocate income and expenses [Joint Living Trust page 6] "H.        Allocate

18  Between Principal and Income.  To make allocations of charges and credits as between principal

19  and income as in the sole discretion of the Trustee may appear to be proper." This instrument

20  reserved those powers over those assets held in the living trust for the Trustees; Plaintiff and his

21  spouse Patricia Paramoure.

22

23  ──────────────────

24          [2] A copy of the signed Joint Living Trust is on file with the preparer of the trust; Attorney
Julian Roberts, 553 South Murphy Ave., Sunnyvale, CA 94086-6117, Phone: (408) 730-4711,
Fax: (408) 730-8215, E-mail: julian@julianslaw.com.

FIRST AMENDED COMPLAINT OF UNCONSCIONABILITY

Just three days before the Christmas Holiday in 2006 after spending more then 60 days in pursuit of a loan before Defendants; Plaintiff was offered a loan on his home; but only if he would sign a loan on his duplex at Lakebird Drive in Sunnyvale first. Defendant MERS presented mortgage documents to Plaintiff using the same standard forms for said Santa Cruz and Santa Clara County properties with the knowledge of Plaintiff's "inferior financial condition and credit history," in a "take it or leave it manner," thus affording Plaintiffs no opportunity to negotiate their mortgage interest or payment terms with MERS, nor did MERS disclose their relationship with Defendants GMACM nor the undisclosed loan underwriting investor(s). This also violated Plaintiff's right to due process by breaching his living trust without consent under Plaintiff's powers as a living trustee. After Plaintiff signed the standard form DOT on December 22, 2006 he notified the signer by phone that the property was held in a "living trust" and he would have to re-sign or amend the agreement. Again on January 16, 2007, Defendants presented; and using the same standard forms for said Santa Cruz and Santa Clara County properties; with the knowledge of Plaintiff's "inferior financial condition and credit history," in a "take it or leave it manner," thus affording Plaintiffs no opportunity to negotiate their mortgage interest or payment terms with MERS, nor did MERS disclose their relationship with Defendants GMACM nor the undisclosed loan underwriting investor(s). This also violated Plaintiff's right to due process by breaching his living trust without consent under Plaintiff's powers as a living trustee.

The relief Plaintiff seeks in his action is for the Court to issue a Declaratory Order finding that the loan and Deed of Trust for said Santa Cruz and Santa Clara County California properties constituted contracts of adhesion by breaching his living trust without consent under Plaintiff's powers as a living trustee. Although the agreements were allegedly presented to Plaintiffs in a "take it or leave it manner" "the mere fact that a contract term is not read or understood by the non-drafting party or that the drafting party occupies a superior bargaining position will not

- 11 -

1  authorize a court to refuse to enforce the contract." <u>A&M Produce Co. v. FMC Corp., 186 Cal.</u>

2  <u>Rptr. 114, 122 (Ct. App. 1982)</u>. "[A]n argument can be made that contract terms not actively

3  negotiated between the parties fall outside the `circle of assent,' which constitutes the actual

4  agreement." <u>Id</u>. "[C]ommercial practicalities, however, dictate that unbargained-for terms only be

5  denied enforcement where they are also substantively unreasonable." <u>Id</u>. The substantive element

6  of unconscionability has to do with the effects of the contractual terms— whether the contract is

7  drafted in a one-sided manner, or whether it provides a "modicum of bilaterality." <u>Id</u>. Here, an

8  arbitration clause is not at issue, rather Plaintiff take issue with (1) the type of loan Defendants

9  offered to Plaintiff, (2) the material terms of that loan including, but not limited to, the interest

10  rate(s) and repayment schedule, and (3) the power of sale and (4) the right to foreclose in the

11  event of Plaintiff's default.

12      In November of 2010; after explaining to Defendant GMAC Mortgage LLC [or

13  GMACM] Loss Mitigation Department, that Plaintiff had not signed any Loans with GMACM

14  and that the notes they where demanding payment on were unsecured; Plaintiff would therefore

15  no longer make his monthly payment unless GMACM could prove they had valid title to

16  Plaintiff's Properties including notes naming them as having a beneficial interest in the

17  properties.

18              **PLAINTIFF COMPLAINS AND FOR CAUSES OF ACTION ALLEGES**

19      On December 22, 2006 Plaza Home Mortgage, 5090 Shoreham Place #206, San Diego,

20  CA 92122 filed a Deed of Trust ["DOT"] for the property located at 1090-1092 Lakebird Drive in

21  Sunnyvale California; APN 110-23-025, with the Santa Clara County Recorder's Office naming

22  ""MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that

23  is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the

24  beneficiary under this Security Instrument." At the bottom of page 1 it lists this as a standard

12-12020-mg   Doc 7825-11   Filed 12/04/14   Entered 12/04/14 17:51:36   Exhibit J
to Declaration   Pg 14 of 54
Case 5:12-cv-03018-PSG   Document 52   Filed 05/22/12   Page 13 of 20

Exhibit J

1   form "CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

2   WITH MERS Form 3005 1/01 V-6A(CA)".  But this DOT was invalid because Plaintiff lacked

3   authority to enter in to the DOT outside of his powers as a trustee to his "Joint Living Trust".

4         On January 24, 2007 Plaza Home Mortgage filed a DOT with the Santa Cruz County

5   Recorder's Office for the property located at 5439 Soquel Drive, Soquel, California; APN  037-

6   094-29, naming ""MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate

7   corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.

8   MERS is the beneficiary under this Security Instrument." At the bottom of page 1 the DOT lists

9   this as a standard form "CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM

10  INSTRUMENT WITH MERS Form 3005 1/01 V-6A(CA)". But this DOT was invalid because

11  Plaintiff lacked authority to enter in to the DOT outside of his powers as a trustee to his "Joint

12  Living Trust".

13        Based on documents within Plaintiff's possession beginning at or about April 1, 2007

14  Plaintiff began making mortgage payments to Defendant GMAC LLC of a principal and interest

15  payment of ~ $1,824 monthly until April 1, 2011 [or 48 months] for a total payments of $87,552.

16  Plaintiff alleges Defendant defrauded Plaintiff of said funds. Plaintiff is claiming that by failing to

17  make the recording of a substitution of trustee [in 2007] with consent under Plaintiff's powers as

18  a living trustee to his "Joint Living Trust" that specifically names the Defendant GMAC as a

19  Beneficiary to the full reconveyance recorded on January 16, 2007.

20        Based on documents within Plaintiff's possession beginning at or about May 1, 2007

21  Plaintiff began making mortgage payments to Defendant GMAC LLC of a principal and interest

22  payment of ~ $2,291 monthly until November 1, 2010 [or 43 months] for a total payments of

23  $98,513. Plaintiff alleges Defendant defrauded Plaintiff of said funds. Plaintiff is claiming that by

24  failing to make the recording of a substitution of trustee [in 2007] with consent under Plaintiff's

FIRST AMENDED COMPLAINT OF UNCONSCIONABILITY

1  powers as a living trustee to his "Joint Living Trust" that specifically names the Defendant

2  GMAC on February 1, 2007 Defendant GMAC fails to have any defense because the full

3  reconveyance recorded February 1, 2007 does nothing to secure the DOT recorded January 24,

4  2007 to the Property. Plaintiff believes that California Civil Code section 2941(b) (1) only

5  allowed Defendants 21 days to do so [back in 2007]. Defendants never had possession of the

6  property itself which had been fully conveyed to Plaintiff. Additionally the Defendant MERS

7  could have recorded a substitution of trustee pursuant to California Civil Code section 2934a with

8  consent under Plaintiff's powers as a living trustee but failed to do so which Defendants

9  apparently recognized it should have done so when on March 1, 2011, a Substitution of Trustee

10  was [then] recorded in the Santa Cruz County Recorder's Office and again on September 9, 2011

11  in the Santa Clara County Recorder's Office. Since the underlying DOT was invalid [contract not

12  made with living trustee], the recording was therefore fraudulent.

13     Plaintiff alleges that neither GMAC LLC nor MERS had received authorization through

14  recorded or unrecorded documents. It may not be enough for plaintiff to rely on the public record

15  as a basis for his claim, since, the publicly recorded documents are not conclusive in

16  demonstrating lack of authority. Plaintiff alleges that [the subject Deeds of Trust or "DOTs"] are

17  invalid because Plaintiff lacked authority to enter in to the DOT outside of his powers as a trustee

18  to his "Joint Living Trust" and they are knowingly fraudulent too because Plaintiff notified

19  Defendants of Plaintiff's "Joint Living Trust" in time to change the DOT accordingly [by

20  changing assignments for example], but Defendants failed to do so.

21     Even if a DOT signed are found to be valid irrespective of the fact that Plaintiff lacked

22  authority to enter in to the DOT outside of his powers as a trustee to his "Joint Living Trust",

23  Plaintiff never signed any loan documents or DOTs with GMAC LLC. Plaintiff alleges that

24  because MERS failed to make a substitution of trustee to GMAC LLC in 2007 with consent under

FIRST AMENDED COMPLAINT OF UNCONSCIONABILITY

1    Plaintiff's powers as a living trustee therefore and when such substitutions occurred in 2011, in

2    addition to GMAC LLC defrauding Plaintiff of approximately $186,000 in fraudulent payments

3    extracted by Defendants. The Defendants continue to defraud[3] Plaintiff to the tune of

4    $2,399.14/month under this contract of adhesion amount for his Sunnyvale property, and an

5    additional $2,148.57/month for his Soquel property under his Chapter 13 Bankruptcy Plan.[4] This

6    also violated Plaintiff's right to due process, forcing the bankruptcy of Plaintiff and his spouse.

7    Plaintiff further alleges lack of authority in GMAC LLC and MERS subsequent actions to initiate

8    foreclosure because Plaintiff alleges that both the subject properties' Deeds of Trust were re-

9    conveyed to Plaintiff [by WaMu] with consent under Plaintiff's powers as a living trustee [since

10    Plaintiff was listed as the [living] trustee] and therefore Defendants' DOTs cannot be enforced

11    lawfully based on the existing recorded record since they fail to include any lawful written

12    consent under Plaintiff's powers as a living trustee. Therefore GMAC LLC and MERS

13    subsequent actions to initiate foreclosure where also a in violation of due process rights.

14    <center>**FIRST CAUSE OF ACTION**</center>

15    <center>**(AGAINST GMAC MORTGAGE LLC)**</center>

19    [3] Plaintiff is in the understanding and belief that under the terms of the MBS once Plaintiff defaulted on the DOTs Defendants where paid the loans' value by their insurance; irrespective of

20    subsequent payments by Plaintiff. Therefore Defendants either are defrauding Plaintiff, or the insurance company, or both, and possibly the state and federal governments through legal settlements based on their fraudulent claims. Additionally Plaintiff's claims against GMAC

21    Mortgage are pre-petition to its restructuring under Chapter 11 of the Bankruptcy Code, Case No. 12-12020, United States Bankruptcy Court for the Southern District of New York; so GMAC's

22    bankruptcy action additional fraud may be effectuated based on the same fraudulent claims made in defense to Plaintiff's case here before the court.

23    [4] In order to prevent the imminent foreclosure of Plaintiff's two properties he was forced to file Chapter 13 bankruptcy on December 9, 2011. On March 24, 2012 the Court Denied

24    Plaintiff's petition to transfer the above captioned matters to the bankruptcy court, granting Plaintiff until May 22, 2012 to amend his complaint herein.

<center>- 15 -</center>

1    Defendants GMAC Mortgage LLC, at all times herein mentioned, was a Limited Liability

2    Company existing under the laws of the State of California with principle offices located at 1100

3    Virginia Dr, in the Fort Washington Pennsylvania.

4    Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1

5    through 50 inclusive and therefore sue these defendants by such fictitious names. Plaintiff will

6    amend this complaint to allege their true names and capacities when ascertained.

7    Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned,

8    each of the defendants sued herein was the agent and employee of each of the remaining

9    defendants and was at all times acting within the purpose and scope of such agency and

10    employment.

11    Plaintiff's "Joint Living Trust" is and at all times herein mentioned the owner and/or

12    entitled to possession of the properties located in the counties of Santa Cruz and Santa Clara,

13    California. Plaintiff is informed and believes and thereupon alleges that GMAC Mortgage LLC,

14    and each of them, claiming an interest in the property adverse to plaintiff as living trustee herein.

15    However, the claim of said Defendant is without any right whatsoever, and said Defendant has no

16    legal or equitable right, claim, or interest in said properties.

17    Plaintiff in his capacity as trustee to his "Joint Living Trust" never signed any loan

18    documents or DOTs with GMAC LLC and because of the full reconveyance(s) Washington

19    Mutual Bank FA [WaMu] requested recordings of with the Santa Cruz County and Santa Clara

20    County Recorder's Offices of a full reconveyance of the DOTs for Plaintiff's properties assigning

21    the Deeds of Trust from Washington Mutual Bank FA to Plaintiff **in his capacity as trustee** to

22    his "Joint Living Trust", with consent under Plaintiff's powers as a living trustee therefore,

23    GMAC Mortgage LLC can not demonstrate that it possesses any tangible interest in the

24    mortgages nor the Deeds of Trust in any case.

FIRST AMENDED COMPLAINT OF UNCONSCIONABILITY

12-12020-mg    Doc 7825-11    Filed 12/04/14    Entered 12/04/14 17:51:36    Exhibit J
to Declaration    Pg 18 of 54
Case 11-cv-03018-PSG    Document 52    Filed 05/22/12    Page 18 of 20

Plaintiff therefore seeks a declaration that the title to the subject property is vested in Plaintiff's "Joint Living Trust" alone and that the defendant herein, and each of them, be declared to have no estate, right, title or interest in the subject property and that said defendant, and each of them, be forever enjoined from asserting any estate, right, title or interest in the subject property adverse to plaintiff herein.

WHEREFORE, plaintiff prays for judgment against defendant GMAC Mortgage LLC and each of them, as follows:

1.  For an order compelling said Defendant GMAC Mortgage LLC, and each of them, to transfer legal title and possession of the subject property to Plaintiff herein;

2.  For a declaration and determination that Plaintiff is the rightful holder of title to the property and that Defendant GMAC Mortgage LLC herein, and each of them, be declared to have no estate, right, title or interest in said property;

3.  For a judgment forever enjoining said defendants, and each of them, from claiming any estate, right, title or interest in the subject property;

4.  For compensatory damages in an amount to be determined at trial, according to proof;

5.  Punitive / double / treble damages in an amount to be determined at trial, according to proof;

6.  Reasonable attorneys' fees and costs of suit pursuant to law;

7.  For injunctive, declaratory and other such relief, according to proof;

8.  For such other and further relief as the court may deem necessary and proper.

## SECOND CAUSE OF ACTION

## (AGAINST MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. )

- 17 -

1    Defendants Mortgage Electronic Registration Systems, Inc. (MERS) at all times herein

2    mentioned, was a corporation existing under the laws of the State of California with principle

3    offices located at 1818 Library St Ste 300 Reston VA 20190, with Agent for Service of Process;

4    GENPACT Registered Agent, Inc., 15420 Laguna Canyon Rd Ste 100, Irvine CA 92618.

5    Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES

6    51 through 100 inclusive and therefore sue these defendants by such fictitious names. Plaintiff

7    will amend this complaint to allege their true names and capacities when ascertained.

8    Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned,

9    each of the defendants sued herein was the agent and employee of each of the remaining

10    defendants and was at all times acting within the purpose and scope of such agency and

11    employment.

12    Plaintiff's "Joint Living Trust" is and at all times herein mentioned the owner and/or

13    entitled to possession of the properties located in the counties of Santa Cruz and Santa Clara,

14    California. Plaintiff is informed and believes and thereupon alleges that MERS, and each of them,

15    claiming an interest in the property adverse to plaintiff as living trustee herein. However, the

16    claim of said Defendant is without any right whatsoever, and said Defendant has no legal or

17    equitable right, claim, or interest in said property.

18    Because of Plaintiff's exclusive powers as a living trustee to enter contracts "to bind the

19    Trust by contracts or agreements *without assuming individual liability* for such contracts"

20    Plaintiff had no rights to enter in to any contract with Defendant MERS outside of the terms of

21    his living trust. Therefore MERS can not demonstrate that it possesses any tangible interest in the

22    mortgages nor the Deeds of Trust.  While MERS is not the beneficiary, even though it is so

23    designated in the deeds of trust "MERS is not a mortgagee . . . because it has no enforceable right

24

FIRST AMENDED COMPLAINT OF UNCONSCIONABILITY

12-12020-mg    Doc 7825-11    Filed 12/04/14    Entered 12/04/14 17:51:36    Exhibit J
to Declaration    Pg 20 of 54
Case 1:20-cv-03018-PSG    Document 52    Filed 05/22/12    Page 18 of 20    Exhibit J

in the debt obligation securing the mortgage"[5] since "MERS never held the promissory note, thus its assignment of the deed of trust [] separate from the note had no force"[6] and even if it did the note can not be said to be valid because the standard form loan and Deed of Trust for said Santa Cruz and Santa Clara properties constituted contracts of adhesion.

WHEREFORE, plaintiff prays for judgment against defendant MERS and each of them, as follows:

1.      For an order compelling said Defendant MERS, and each of them, to transfer legal title and possession of the subject property to Plaintiff herein;

2.      For a declaration and determination that Plaintiff is the rightful holder of title to the property and that Defendant MERS herein, and each of them, be declared to have no estate, right, title or interest in said property;

3.      For a judgment forever enjoining said defendants, and each of them, from claiming any estate, right, title or interest in the subject property;

4.      For compensatory damages in an amount to be determined at trial, according to proof;

5.      Punitive / double / treble damages in an amount to be determined at trial, according to proof;

6.      Reasonable attorneys' fees and costs of suit pursuant to law;

7.      For injunctive, declaratory and other such relief, according to proof;

8.      For such other and further relief as the court may deem necessary and proper.

---

[5] No. Cum-09-640, 2010 ME 79 (Me. Aug. 12, 2010) (Westlaw) para 15.

[6] 284 S.W.3d 619 (Mo. Ct. App., 2009) p. 624.

FIRST AMENDED COMPLAINT OF UNCONSCIONABILITY

1

2    By: _Michael E. Boyd_____
                        Michael E. Boyd

3    Plaintiff, in *Pro Per*
     Michael E. Boyd
4    5439 Soquel Drive
     Soquel, CA 95073
5    Phone: (408) 891-9677
     E-mail: michaelboyd@sbcglobal.net
     DATED: May 21, 2012
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

- 20 -

# MICHAEL BOYD and PATRICIA PARAMOURE LIVING TRUST

This Joint Living Trust Agreement (this "Agreement") is made this 9th day of January, 2001, between **MICHAEL E. BOYD** and **PATRICIA L. PARAMOURE** (the "Grantors or Beneficiaries") of **SUNNYVALE**, California and **MICHAEL E. BOYD** and **PATRICIA L. PARAMOURE**, of **SUNNYVALE**, California (collectively, the "Trustee").

In consideration of the mutual covenants and promises set forth in this Agreement, the Grantor and the Trustee agree as follows:

**I.     PURPOSE.**  The purpose of this Agreement is to establish a Trust to receive and manage assets for the benefit of the Grantors during the Grantors' lifetimes, and to further manage and distribute the assets of the Trust upon the death of the surviving Grantor.

**II.     FUNDING OF TRUST.**  This Trust shall be funded with assets transferred to this Trust by either or both of the Grantors at the time of creating this Trust, or at any later time. Any community property transferred into or out of this Trust shall remain community property until the death of either Grantor and such property, including undistributed income that it generates, shall not be commingled. .  Any separate property transferred into or out of this Trust shall remain the separate property of the Grantor effecting the transfer.  Any property designated the separate property of a Grantor shall retain the property's designation even after the death of the Grantor for the purposes of distributions from Appendix A (if such Appendix exists) of this Trust.  This Trust may also receive property from any person or entity who is acting under the authority granted to that person or entity by the Grantors. It is also expected that this Trust may receive assets pursuant to the terms of either Grantor's Last Will and Testament.

**III.     MANAGEMENT OF TRUST ASSETS.**  The Trustee shall manage and distribute the trust assets for the benefit of the Grantors and their successor(s) in interest in accordance with the terms of this Agreement.

**IV.     PAYMENTS DURING THE LIFETIMES OF THE GRANTORS.**  During the joint or survivor lifetimes of the Grantors, the Trustee shall pay all of the net income of this Trust, and also such sums from principal as either Grantor may request at any time in writing, to or for the benefit of the Grantors, or as either Grantor may designate.  Such payments shall be made at least annually.  The Grantors may change the amount of the payments at any time by providing written notice to the Trustee.  Any excess income shall be added to the principal at the discretion of the Trustee.

> *A. Payments During a "Disability" of a Grantor.*  During any period that a Grantor has a "disability", the Trustee may pay to or for the benefit of such Grantor such amounts of income and principal as the Trustee's sole discretion to be required for (i) such Grantor's support, comfort and welfare, (ii) such Grantor's accustomed manner of living, or (iii) any purpose that the Trustee believes to be in the best interest of such Grantor.

> *B. Disability Defined.*  For the purposes of this Trust, "disability" shall mean a legal disability or the inability to provide prompt and intelligent consideration to financial

Case No.: 5:11-CV-05018 PSG – FAC Exhibit A

12-12020-mg   Doc 7825-11   Filed 12/04/14   Entered 12/04/14 17:51:36   Exhibit J
to Declaration   Pg 23 of 54
Case: 11-cv-05018-PSG   Document 52   Filed 03/04/14   Page 2 of 35

matters by reason of illness or mental or physical disability. The determination of whether a Grantor has a disability shall be made by such Grantor's most recent attending physician. The Trustee shall be entitled to rely on written notice of that determination.

*C. Terminal Disability.* If, in the opinion of two attending physicians, a Grantor has an illness that must inevitably lead to death within a brief period of time, the Trustee may pay from this Trust only such amounts as are needed to maintain the Grantor in reasonable comfort and freedom from pain. The Trustee shall be entitled to rely on written notice of that determination.

**V.      DEATH OF A GRANTOR**. The first of the Grantors to die shall be called the "Deceased Grantor." The survivor shall be called the "Surviving Grantor". Upon the death of the Deceased Grantor, this Trust shall be divided into two trusts as follows:

*A. The Survivor's Trust.* The Survivor's Trust shall consist of the following:

   1.) The Surviving Grantor's separate property that is part of The Trust Estate;

   The Surviving Grantor's interest in the Grantors' community estate included in or added to the Trust Estate in any manner;

   2.) The Surviving Grantor's interest in the proceeds of any life insurance policies owned as the community property of the Grantors, insuring the life of the Deceased Grantor;

   3.) A life estate in the Deceased Grantor's interest in any real property used by the Grantors together as their personal residence, together with all improvements thereon and all furnishings and contents therein.

   That percentage interest in the balance of the assets constituting the Trust Estate which shall, when taken together with all other interests and property that qualify for the marital deduction, obtain for the Deceased Grantor's estate a marital deduction that results in the lowest federal estate taxes to the Deceased Grantor's estate.

*B. Exemption Trust.* The Exemption Trust shall consist of the balance of the Trust Estate.

*C. Delay in Division.* The Trustee may, for good cause, delay division of this Trust for a period of six months after the death of the Deceased Grantor.

**VI.      UNCLAIMED ADMINISTRATION EXPENSES**. All state taxes and unclaimed administration expenses attributable to the Survivor's Trust shall be paid from the Exemption Trust.

**VII.      DEBTS AND EXPENSES**. After the Deceased Grantor's death, the Trustee may, in the Trustee's sole discretion, pay out of the Trust Estate the Deceased Grantor's just

debts outstanding at the time of the Deceased Grantor's death, the state and federal taxes due, the last illness and funeral expenses of the Deceased Grantor, attorney fees, and other costs incurred in administering the Deceased Grantor's probate estate.

## VIII.  SURVIVAL REQUIREMENTS.

A. *Thirty Day Survival Requirement.* For the purposes of determining the appropriate distributions under this Trust, no person or organization shall be deemed to have survived the Grantor making the distribution (or be in existence), unless such person or organization is also living (or in existence), on the thirtieth day after the date of that Grantor's death.

B. *Common Disaster.* If the Grantors die under circumstances such that there is no clear or convincing evidence as to the order of their deaths, or if it is difficult or impractical to determine which person survived the death of the other person, it shall, for the purpose of distribution of any life insurance, property passing under any will or other contracts, if any, and property passing under this Trust, be conclusively presumed that **MICHAEL E. BOYD** predeceased **PATRICIA L. PARAMOURE**.

## IX.  PAYMENTS FROM THE SURVIVOR'S TRUST.    From the time of the Deceased Grantor's death, the Trustee shall pay to or apply for the benefit of the Surviving Grantor, the net income of the Survivor's Trust in annual or more frequent installments.  If the Trustee considers such income insufficient, the Trustee shall also pay to or apply for the benefit of the Surviving Grantor any sums from the principal of the Survivor's Trust that the Trustee, in the Trustee's sole discretion, considers necessary for the Surviving Grantor's proper health, support, comfort, enjoyment, and welfare.  In addition, the Trustee shall pay the Surviving Grantor as much of the principal of the Survivor's Trust as the Surviving Grantor shall request in writing.

## X.  PAYMENTS FROM THE EXEMPTION TRUST.  From the time of the Deceased Grantor's death, the Trustee shall pay to or apply for the benefit of the Surviving Grantor, the net income of the Exemption Trust in annual or more frequent installments.  If the Trustee considers such income insufficient, the Trustee shall also pay to or apply for the benefit of the Surviving Grantor any sums from the principal of the Exemption Trust that the Trustee, in the Trustee's sole discretion, considers necessary for the Surviving Grantor's proper health, support, comfort, enjoyment, and welfare.  In exercising this discretion, the Trustee shall consider the Surviving Grantor's other resources available for those purposes and held free of trust, excluding the personal residence and tangible personal property held for the Surviving Grantor's personal use.  Payments from principal to the Surviving Grantor shall be made first from the Survivor's Trust until it is exhausted and thereafter from the Exemption Trust.

## XI.  DISTRIBUTION OF TRUST ASSETS UPON THE SURVIVING GRANTOR'S DEATH.  Upon the death of the second of the Grantors to die (the "Surviving Grantor"), the assets of this Trust shall be distributed to or retained by the following beneficiaries:

12-12020-mg   Doc 7825-11   Filed 12/04/14   Entered 12/04/14 17:51:36   Exhibit J
Case 5:11-cv-05018-PSG   Document 52   Filed 03/24/14   Page 4 of 35
to Declaration   Pg 25 of 54

*A. Residuary Beneficiaries:* To **THE CHILDREN OF THE GRANTORS**, the residue of this Trust in equal shares. If a residuary beneficiary of the Grantors does not survive them, such deceased residuary beneficiary's share shall be distributed in equal shares to the children of such deceased residuary beneficiary who survives, by right of representation. If a residuary beneficiary does not survive them and has no children who survive, such deceased residuary beneficiary's share shall be distributed in equal shares to their other residuary beneficiaries, if any, or to their respective children by right of representation. If no residuary beneficiary of the Grantors survives them, and if none of their deceased residuary beneficiaries are survived by children, this share shall be distributed in equal shares to the Grantors' heirs-at-law.

*B. Distribution Prior to Age 25.* If any beneficiary under this trust shall have attained the age of eighteen years but be less than twenty-five years of age, distributions to such beneficiary shall be in the sole discretion of the Trustee, taking into consideration the maturity, educational needs, and marital status of the beneficiary as well as other factors the Trustee may wish to evaluate in determining whether and how much to distribute.

*C. Minor Children.* Distributions to minor children are in the sole discretion of the Trustee.

**XII.   GRANTOR'S JOINT POWER TO REVOKE.** During the Grantor's joint lifetimes, this Trust may be revoked in whole or in part with respect to community property, by a written instrument signed by either Grantor and delivered to the Trustee and the other Grantor; and with respect to separate property, by a written instrument signed by the Grantor who contributed that property to the Trust and delivered to the Trustee. On revocation, the Trustee shall promptly deliver to the Grantors all of the designated portion of the community property Trust assets. All community property delivered to the Grantors on revocation shall continue to be the community property of the Grantors and shall be held and administered as community property. On revocation, the Trustee shall promptly deliver to the contributing Grantor all or the designated portion of any separate property.

**XIII.   AMENDMENT BY GRANTORS DURING THEIR LIFETIMES.** The Grantors may at any time during their joint lifetimes amend any terms of this Trust by a written instrument signed by both Grantors and delivered to the Trustee. No amendment shall substantially increase the Trustee's duties or change the Trustee's compensation without the Trustee's consent, nor shall the Trustee be obligated to act under such an amendment unless the Trustee accept it. If a Trustee is removed as a result of refusal to accept an amendment, the Grantors shall pay to the Trustee any sums due and shall indemnify the Trustee against any liability the Trustee has lawfully incurred in administering the Trust. Only the Grantor who contributed separate property may amend these Trusts regarding any property owned by such Grantor as the Grantor's separate property.

**XIV.   AMENDMENT BY SURVIVING GRANTOR.** On the Deceased Grantor's death, the Surviving Grantor may amend, revoke, or terminate the Survivor's Trust; but the Exemption Trust may not be amended, revoked, or terminated. On revocation or termination of the Survivor's Trust, all of its assets shall be delivered to the Surviving Grantor except as required under paragraph XV below.

---

Joint Living Trust                                                                 Page 4 of 9

**XV.    REVOCATION OF SURVIVOR'S TRUST**.  If the Survivor's Trust is revoked with respect to all or a major portion of its assets the Trustee shall be entitled to retain sufficient assets reasonably to secure payment of liabilities the Trustee has lawfully incurred in administering the Trust, including Trustee's fees that have been earned, unless the Surviving Grantor indemnifies the Trustee against loss or expense.

**XVI.    TRUSTEE POWERS**.  The Trustee, in addition to other powers and authority granted by law or necessary or appropriate for proper administration of the Trust, shall have the following rights, powers, and authority without order of court and without notice to anyone:

A.  *Receive Assets*.  To receive, hold, maintain, administer, collect, invest and reinvest the Trust assets, and collect and apply the income, profits, and principal of the Trust in accordance with the terms of this instrument.

B.  *Receive Additional Assets*.  To receive additional assets from other sources, including assets received under the Will of a Grantor or any other person.

C.  *Standard of Care*.  To acquire, invest, reinvest, exchange, retain, sell, and manage estate and Trust assets, exercising the judgment and care, under the circumstances then prevailing, that persons of prudence, discretion and intelligence exercise in the management of their own affairs, not in regard to speculation but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of their capital.  Within the limitations of that standard, the Trustee is authorized to acquire and retain every kind of property, real, personal or mixed, and every kind of investment, specifically including, but not by way of limitation, bonds, debentures and other corporate obligations, and stocks, preferred or common, that persons of prudence, discretion, and intelligence acquire or retain for their own account, even though not otherwise a legal investment for Trust funds under the laws and statutes of the United States or the state under which this instrument is administered.

D.  *Retain Assets*.  To retain any asset, including uninvested cash or original investments, regardless of whether it is of the kind authorized by this instrument for investment and whether it leaves a disproportionately large part of the estate or Trust invested in one type of property, for as long as the Trustee deems advisable.

E.  *Dispose of or Encumber Assets*.  To sell, option, mortgage, pledge, lease, or convey real or personal property, publicly or privately, upon such terms and conditions as may appear to be proper, and to execute all instruments necessary to effect such authority.

F.  *Settle Claims*.  To compromise, settle, or abandon claims in favor of or against the Trust.

G.  *Manage Property*.  To manage real estate and personal property, borrow money, exercise options, buy insurance, and register securities as may appear to be proper.

12-12020-mg   Doc 7825-11   Filed 12/04/14   Entered 12/04/14 17:51:36   Exhibit J
to Declaration   Pg 27 of 54
Case5:11-cv-05018-PSG Document52 Filed03/24/14 Page6 of 35   Exhibit J

H. *Allocate Between Principal and Income.* To make allocations of charges and credits as between principal and income as in the sole discretion of the Trustee may appear to be proper.

I. *Employ Professional Assistance.* To employ and compensate counsel and other persons deemed necessary for proper administration and to delegate authority when such delegation is advantageous to the Trust.

J. *Distribute Property.* To make division or distribution in money or kind, or partly in either, including disproportionate in-kind distributions, at values to be determined by the Trustee, and the Trustee's judgment shall be binding upon all interested parties.

K. *Enter Contracts.* To bind the Trust by contracts or agreements without assuming individual liability for such contracts.

L. *Exercise Stock Ownership Rights.* To vote, execute proxies to vote, join in or oppose any plans for reorganization, and exercise any other rights incident to the ownership of any stocks, bonds, or other properties of the Trust.

M. *Duration of Powers.* To continue to exercise the powers provided in this Agreement after the termination of the Trust until all the assets of the Trust have been distributed.

N. *Hold Trust Assets as a Single Fund.* To hold the assets of the Trust, shares, or portions of the Trust created by this instrument as a single fund for joint investment and management, without the need for physical segregation, dividing the income proportionately among them. Segregation of the various Trust shares need only be made on the books of the Trustee for accounting purposes.

O. *Compensation.* To receive reasonable compensation for the Trustee's services under this Agreement and be exonerated from and to pay all reasonable expenses and charges of the Trust.

P. *Loans to Beneficiaries.* To make loans to any Trust beneficiary for the purpose of providing the beneficiary with the funds necessary to take advantage of exceptional business opportunities; to make loans to Trust beneficiaries to provide for the needs of the beneficiaries and their families.

Q. *Methods of Distribution.* To make payments to or for the benefit of any beneficiary (specifically including any beneficiary under any legal disability) in any of the following ways: (a) directly to the beneficiary; (b) directly for the maintenance, welfare and education of the beneficiary; (c) to the legal or natural guardian of the beneficiary; or (d) to anyone who at the time shall have custody and care of the person of the beneficiary. The Trustee shall not be obliged to see to the application of the funds so paid, but the receipt of the person to whom the funds were paid shall be full acquitance of the Trustee.

12-12020-mg Doc 7825-11 Filed 12/04/14 Entered 12/04/14 17:51:36 Exhibit J
to Declaration   Pg 28 of 54
Case 5:11-cv-05018-PSG Document 52 Filed 03/24/14 Page 36 of 35

R. *Continue Operation of Business.* To carry on any business owned by the Trust or in which the Trust may have an interest for such period of time as the Trustee deems advisable, or to sell or liquidate such business interest.

## XVII. ADDITIONAL TRUSTEE PROVISIONS. These additional provisions shall apply regarding the Trustee.

A. *Grantor(s) as Trustee.* If at any time the Grantors or either of them shall be acting as Trustee, such Grantor(s)/Trustee may appoint a successor Trustee, to become effective immediately or upon any stated contingency, by making such designation in writing. Such designee shall become the successor Trustee upon acceptance of the terms and conditions of this Agreement.

B. *Death or Disability of a Grantor as Trustee.* If at any time no Grantor is able to serve as Trustee because of a disability (as previously defined) or death **Kevin Boyd**, of **San Jose, California,** is designated as the successor Trustee. Such designee shall become the successor Trustee upon acceptance of the terms and conditions of this Agreement.

C. *Resignation of Trustee.* Any Trustee may resign by giving written notice to the beneficiaries to whom income could then be distributed. Such resignation shall take effect on such date specified in the notice, but not earlier than thirty (30) days after the date of delivery of such written resignation unless an earlier effective date shall be agreed to by the income beneficiaries.

D. *Successor Trustee.* If the Trustee designated in sub-paragraph XVII.B above is unwilling or unable to serve, or resigns, or for any reason ceases to serve as Trustee, **Margaret S. Wood**, of **Sandia Park, New Mexico**, shall serve as Trustee. If the Trustee resigns or for any reason ceases to serve as Trustee, and if the Successor Trustee(s) designated by the Grantor, if any, fail or cease to serve as Trustee, then the adult beneficiaries to whom income could then be distributed, together with the adult beneficiaries to whom principal would be distributed if the Trust were then to terminate, may by majority action in writing appoint a Successor Trustee. If agreement of a majority of the beneficiaries cannot be obtained within sixty (60) days, a Successor Trustee shall be appointed by the court having general jurisdiction of the Trust. Any successor Trustee appointed shall have all the rights conferred upon the original Trustee and shall be bound by the provisions of this Trust.

E. *Accounting.* The Trustee shall provide an accounting to the Beneficiary (or beneficiaries) on at least an annual basis. If a beneficiary has a "disability", the Trustee shall provide the accounting to a guardian or conservator, if any.

F. *Bond.* No bond shall be required of a Grantor (if serving as Trustee) or any qualified corporate Trustee.

## XVIII. RIGHT TO DIRECT INVESTMENTS. At any time that the Trust has investments, and provided that a Grantor does not have a "disability", such Grantor may direct any Trustee to purchase, sell, or retain any Trust investment.

**XIX.  REVOCATION OR AMENDMENT.** Either Grantor may revoke at any time and/or the Grantors may jointly amend, this Agreement by delivering to the Trustee an appropriate written revocation or amendment, signed by that Grantor. If the Trustee consents, the powers of revocation, but not the power of amendment, may be exercised by a duly appointed and acting attorney-in-fact for the Grantors, or either of them, for the purpose of withdrawing assets from the Trust.

**XX.  GOVERNING LAW.** This Agreement shall be construed in accordance with the laws of the State of California.

**XXI.  PERPETUITIES SAVINGS CLAUSE.** Despite any other provision of this Agreement to the contrary, the Trust created by this Agreement shall terminate no later than 21 years after the death of the last surviving beneficiary of this Agreement who is living at the time of the death of the Surviving Grantor.

**XXII. SEVERABILITY.** If any portion of this Agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

**XXIII. MISCELLANEOUS PROVISIONS.**

> *A. Paragraph Titles and Gender.* The titles given to the paragraphs of this Trust are inserted for reference its provisions. All words used in this Trust in any gender shall extend to and include all genders, and any singular words shall include the plural expression, and vice versa, specifically including "child" and "children", when the context or facts so require, and any pronouns shall be taken to refer to the person or persons intended regardless of gender or number.

> *B. Liability of Fiduciary.* No fiduciary who is a natural person shall, in the absence of fraudulent conduct or bad faith, be liable individually to any beneficiary of my estate or any Trust estate, and my estate or the Trust estate shall indemnify such natural person from any and all claims or expenses in connection with or arising out of that fiduciary's good faith actions or nonactions as the fiduciary, except for such actions or nonactions which constitute fraudulent conduct or bad faith.

> *C. Children.* The names of the Grantors' children are:

> **CASSANDRA L. BOYD and ANDREW M. BOYD**

> All references in this Trust to "the Grantors' child" or "the Grantors' children" include the above child (or children) and any other children born to or adopted by the Grantors after the signing of this Trust.

**XXIV. CONTESTABILITY.** If any Beneficiary under this Trust in any manner, directly or indirectly, contests or attacks this Trust or any of its provisions, any share of interest in

---

the assets of this Trust given to that contesting beneficiary under this Trust is revoked and shall be disposed of in the same manner provided herein as if that contesting beneficiary had predeceased me.


Executed on this 9th of January, 2001, at Sunnyvale, Santa Clara County, California.


_____          _____
**MICHAEL E. BOYD**, Grantor               **MICHAEL E. BOYD**, Co-Trustee


_____          _____
**PATRICIA L. PARAMOURE**, Grantor         **PATRICIA L. PARAMOURE**, Co-Trustee

Case No.:  5:11-CV-05018 PSG – FAC Exhibit A

## NOTARY PUBLIC ACKNOWLEDGMENT

State of California )
County of Santa Clara )

On 9th day of January, 2001, before me, JANITA G. BANKS, Notary Public,
personally appeared **MICHAEL E. BOYD** and **PATRICIA L. PARAMOURE**
personally known to me to be the persons whose names are subscribed to the within
instrument and acknowledged to me that they executed the same in their authorized
capacities, and that by their signatures on the instrument the persons, or the entity
upon behalf of which the persons acted, executed the instrument.

WITNESS my hand and official seal.

_____

JANITA G. BANKS, Notary Public

12-12020-mg   Doc 7825-14   Filed 12/04/14   Entered 12/04/14 17:51:36   Exhibit J
to Declaration     Pg 32 of 54
Case 5:11-cv-05018-PSG   Document 42   Filed 05/22/14   Page 33 of 33

# Schedule A
## Michael Boyd and Patricia Paramoure LIVING TRUST

**Initial Trust Property**

The initial property of the **Michael Boyd and Patricia Paramoure LIVING TRUST** includes the following:

A-1:    Real Property

A-1.1   215 Raymond Street, Santa Cruz, California, APN: 005-641-08, legally described as follows:

ALL THAT CERTAIN REAL PROPERTY SITUATE IN THE CITY OF SANTA CRUZ, COUNTY OF SANTA CRUZ, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

BEGINNING ON THE WEST SIDE OF RAYMOND STREET AT A POINT 110.53 FEET NORTHWESTERLY FROM THE NORTHWEST CORNER OF SAID RAYMOND STREET AND LEIBRANDT AVENUE; SAID POINT OF BEGINNING BEING ALSO THE NORTHEAST CORNER OF LOT 22, IN BLOCK C AS SAID LOT AND BLOCK ARE NUMBERED AND DESIGNATED UPON MAP NUMBER 3 OF THE "KAYE AND UHDEN TRACT", WHICH MAP WAS FILED IN THE OFFICE OF THE COUNTY RECORDER OF THE SAID COUNTY OF SANTA CRUZ, ON FEBRUARY 19, 1891 IN MAP BOOK 5, AT PAGE 80; THENCE RUNNING SOUTHWESTERLY AT A RIGHT ANGLE WITH SAID RAYMOND STREET AND ALONG THE NORTHERLY LINE OF SAID LOT 22, 80 FEET TO AN ALLEY; THENCE NORTHWESTERLY ALONG THE EAST SIDE OF SSAID ALLEY 34 FEET; THENCE AT A RIGHT ANGLE NORTHEASTERLY AND PARALLEL WITH THE SID NORTH LINE OF SAID LOT 22, 80 FEET TO THE WESTERLY SIDE OF SAID RAYMOND STREET, AT A POINT 6 FEET SOUTHEASTERLY FROM THE SOUTHEASTERLY CORNER OF LOT 19 IN SAID BLOCK C, AS THE SAME IS NUMBERED AND DESIGNATED UPON SAID MAP; AND THENCE SOUTHEASTERLY ALONG THE WESTERLY SIDE OF SAID RAYMOND STREET 34 FEET TO THE PLACE OF BEGINNING.

BEING THE SOUTHERLY 34 FEET OF LOT 21 IN SAID BLOCK C AS SHOWN UPON SAID MAP.

A-1.2   5439 Soquel Dr, Soquel, California, APN 037-094-29, legally described as follows:

Case No.: 5:11-CV-05018 PSG — FAC Exhibit A

12-12020-mg Doc 7825-11 Filed 12/04/14 Entered 12/04/14 17:51:36 Exhibit J
to Declaration    Pg 33 of 54
Case 5:11-cv-05018-PSG Document 52 Filed 05/29/12 Page 33 of 33

THE LAND REFERRED TO HEREIN IS SITUATED IN THE
STATE OF CALIFORNIA, COUNTY OF SANTA CRUZ,
UNINCORPORATED AREA AND IS DESCRIBED AS
FOLLOWS:

PARCEL ONE:

PARCEL "D", AS SHOWN UPON THAT CERTAIN PARCEL
MAP FILED FOR RECORD ON JANUARY 25, 1985 IN BOOK
45, PAGE 2 OF PARCEL MAPS, SANTA CRUZ COUNTY
RECORDS.

PARCEL TWO:

BEING A PORTION OF FAIRWAY DRIVE AS SHOWN ON
THAT CERTAIN MAP ENTITLED "SUBDIVISION NO. 1 OF
MONTEREY BAY HEIGHTS", RECORDED AUGUST 13, 1929
IN VOLUME 25, OF MAPS, PAGE 7, SANTA CRUZ COUNTY
RECORDS, SAID PORTION BEING MORE PARTICULARLY
BOUNDED AND DESCRIBED AS FOLLOWS:

COMMENCING AT A ½" IRON PIPE, TAGGED LS 3293 AT
THE SOUTHWESTERN CORNER OF PARCEL D, AS SAID
PARCEL D IS SHOWN ON THAT CERTAIN PARCEL MAP
SHOWING A DIVISION OF LANDS OF STANLEY H.
EKSTRAND AND BETTY J. EKSTRAND, RECORDED
JANUARY 15, 1985 IN VOLUME 45, OF PARCEL MAPS, PAGE
2, SANTA CRUZ COUNTY RECORDS; THENCE EASTERLY
ALONG THE SOUTHERN BOUNDARY OF SAID PARCEL D
ALONG A CUVE CONCAVE TO THE SOUTHWEST FROM A
RADIAL BEARING OF NORTH 3° 07' 48" EAST HAVING A
RADIUS OF 61.92 FEET THROUGH A CENTRAL ANGLE OF
1° 09' 35" AN ARC DISTANCE OF 1.25 FEET TO THE TRUE
POINT OF BEGINNING; THENCE FROM SAID TRUE
POINT OF BEGINNING CONTINUING EASTERLY ALONG
THE SOUTHERN BOUNDARY OF SAID PARCEL D

1) ALONG A CURVE CONCAVE TO THE SOUTHWEST,
   HAVING A RADIUS OF 61.92 FEET THROUGH A CENTRAL
   ANGLE OF 73° 27' 05" AN ARC DISTANCE OF 79.38 FEET TO
   A POINT FROM WHICH A ½" IRON PIPE TAGGED LS 3293
   ON THE SOUTHERN BOUNDARY OF SAID PARCEL D
   BEARS A CHORD BEARING AND DISTANCE OF SOUTH 17°
   28' 02" EAST 2.27 FEET; THENCE LEAVING THE
   SOUTHERN BOUNDARY OF SAID PARCEL D

2) SOUTH 88° 22' 56" WEST 37.52 FEET; THENCE WESTERLY

3) ALONG A TANGENT CURVE CONCAVE TO THE NORTHEAST, HAVING A RADIUS OF 21.25 FEET THROUGH A CENTRAL ANGLE OF 79° 17' 19" AN ARC DISTANCE OF 29.41 FEET; THENCE NORTHERLY

4) ALONG A TANGENT CURVE CONCAVE TO THE EAST, HAVING A RADIUS OF 95.00 FEET THROUGH A CENTRAL ANGLE OF 16° 07' 24" AN ARC DISTANCE OF 26.73 FEET TO THE TRUE POINT OF BEGINNING.

A-1.3   821 Lakenoll Dr, Sunnyvale, California, APN 110-17-036, legally described as follows:

LOT 622, as delineated upon that certain Map entitled, "TRACT NO. 1780 LAKEWOOD VILLAGE NO. 3", filed for record in the office of the Recorder of the County of SANTA CLARA, State of California , on October 03, 1956 in Book 73 of Maps, at page(s) 10 and 11.

A-1.3   1092 Lakebird Dr, Sunnyvale, California, APN 110-23-025, legally described as follows:

All that certain Real Property in the City of Sunnyvale, County of Santa Clara, State of California, described as follows:

All of Lot 1101, as shown upon that certain Mapentitled, "Tract No. 2010 Lakewood Village No. 5," which Map was filed for Record in the Office of the Recorder of the County of Santa Clara, State of California, on December 18, 1957 in Book 89 of Maps, Pages 16, 17 and 18.

A-2:   Personal Property

No personal property is conveyed at this time.

**Acceptance:**

I/We accept the above properties as the initial property of the **Michael Boyd and Patricia Paramoure LIVING TRUST.**

Dated: January 9, 2001                           _____
                                                **Michael E. Boyd**, Trustee

Dated: January 9, 2001                           _____
                                                **Patricia L. Paramoure**, Trustee

---

Case No.:  5:11-CV-05018 PSG – FAC Exhibit A

12-12020-mg  Doc 7825-14  Filed 12/04/14  Entered 12/04/14 17:51:36  Exhibit J
Case 5:11-cv-05018-PSG  Document 52  Filed 05/22/12  Page 13 of 33
to Declaration    Pg 36 of 54

# LAST WILL AND TESTAMENT
## OF
## Michael E. Boyd

I, **Michael E. Boyd**, of Sunnyvale, California, revoke my former Wills and Codicils and declare this to be my Last Will and Testament.

## ARTICLE I
## PAYMENT OF DEBTS AND EXPENSES

I direct that my just debts, funeral expenses, and expenses of last illness be paid as provided under the **Michael Boyd and Patricia Paramoure LIVING TRUST.**

## ARTICLE II
## DISPOSITION OF PROPERTY

All of the property that I own at my death, or which shall become payable to my estate or my personal representatives, and any property that I have the power to dispose of under my Will shall be distributed to the Trustee of the **Michael Boyd and Patricia Paramoure LIVING TRUST** to be administered and distributed as provided under that Trust.

## ARTICLE III
## NOMINATION OF EXECUTOR

I nominate **Patricia L. Paramoure**, of **SUNNYVALE, CALIFORNIA,** as the Executor, without bond or security. If such person or entity does not serve for any reason, I nominate **Kevin Boyd**, of **San Jose, California**, to be the Executor, without bond or security.

## ARTICLE IV
## EXECUTOR POWERS

My Executor, in addition to other powers and authority granted by law or necessary or appropriate for proper administration, shall have the right and power to lease, sell, mortgage, or otherwise encumber any real or personal property that may be included in my estate, without order of court and without notice to anyone.

**IN WITNESS WHEREOF**, I have subscribed my name below, this 9th day of January, 2001, at Sunnyvale, Santa Clara County, California.

_____
**Michael E. Boyd**

---

We, the undersigned, hereby certify that the above instrument, which consists of 33 pages, including the pages which contain the witness signatures, was signed in our sight and presence by Michael E. Boyd (the "Testator"), who declared this instrument to be the Testator's Last Will and Testament and we, at the Testator's request and in the Testator's sight and presence, and in the sight and presence of each other, do hereby subscribe our names and addresses as witnesses on the date shown above.

JANITA G. BANKS
514 South Murphy Avenue - Office
Sunnyvale CA 94086-6116

JULIAN C. ROBERTS
514 South Murphy Avenue - Office
Sunnyvale CA 94086-6116

Case No.: 5:11-CV-05018 PSG — FAC Exhibit A

12-12020-mg   Doc 7825-11   Filed 12/04/14   Entered 12/04/14 17:51:36   Exhibit J
to Declaration   Pg 38 of 54
Case 5:11-cv-05018-PSG   Document 32-2   Filed 05/22/12   Page 37 of 53

# PROOF OF WILL

On the date written below, **Michael E. Boyd** declared to us, the undersigned, that this instrument, consisting of three pages, including the page signed by us as witnesses, was the Testator's Will and requested us to act as witnesses to it. The Testator thereupon signed this Will in our presence, all of us being present at the same time. We now, at the Testator's request, and in the Testator's presence and in the presence of each other, subscribe our names as witnesses.

We are acquainted with **Michael E. Boyd**. At this time the Testator is over the age of 18 years, and to the best of our knowledge, the Testator is of sound mind and is not acting under duress, menace, fraud, misrepresentation, or undue influence.

Each of us is now more than 18 years of age and a competent witness and resides at the address set forth after this name.

We declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Executed on this 9th day of January, 2001, at Sunnyvale, Santa Clara County, California.


JANITA G. BANKS
514 South Murphy Avenue - Office
Sunnyvale CA 94086-6116


JULIAN C. ROBERTS
514 South Murphy Avenue - Office
Sunnyvale CA 94086-6116

12-12020-mg Doc 7825-1 Filed 12/04/14 Entered 12/04/14 17:51:36 Exhibit J
Case 5:11-cv-05018-PSG Document 2 Filed 05/23/11 Page 18 of 33
to Declaration Pg 39 of 54

# LAST WILL AND TESTAMENT
## OF
### Patricia L. Paramoure

I, **Patricia L. Paramoure**, of Sunnyvale, California, revoke my former Wills and Codicils and declare this to be my Last Will and Testament.

## ARTICLE I
## PAYMENT OF DEBTS AND EXPENSES

I direct that my just debts, funeral expenses, and expenses of last illness be paid as provided under the **Michael Boyd and Patricia Paramoure LIVING TRUST.**

## ARTICLE II
## DISPOSITION OF PROPERTY

All of the property that I own at my death, or which shall become payable to my estate or my personal representatives, and any property that I have the power to dispose of under my Will shall be distributed to the Trustee of the **Michael Boyd and Patricia Paramoure LIVING TRUST** to be administered and distributed as provided under that Trust.

## ARTICLE III
## NOMINATION OF EXECUTOR

I nominate **Michael E. Boyd**, of **SUNNYVALE, CALIFORNIA,** as the Executor, without bond or security. If such person or entity does not serve for any reason, I nominate **Kevin Boyd**, of **San Jose, California,** to be the Executor, without bond or security.

## ARTICLE IV
## EXECUTOR POWERS

My Executor, in addition to other powers and authority granted by law or necessary or appropriate for proper administration, shall have the right and power to lease, sell, mortgage, or otherwise encumber any real or personal property that may be included in my estate, without order of court and without notice to anyone.

**IN WITNESS WHEREOF,** I have subscribed my name below, this 9th day of January, 2001, at Sunnyvale, Santa Clara County, California.

_____
**Patricia L. Paramoure**

We, the undersigned, hereby certify that the above instrument, which consists of 33 pages, including the pages which contain the witness signatures, was signed in our sight and presence by Patricia L. Paramoure (the "Testator"), who declared this instrument to be the Testator's Last Will and Testament and we, at the Testator's request and in the Testator's sight and presence, and in the sight and presence of each other, do hereby subscribe our names and addresses as witnesses on the date shown above.


JANITA G. BANKS
514 South Murphy Avenue - Office
Sunnyvale CA 94086-6116


JULIAN C. ROBERTS
514 South Murphy Avenue - Office
Sunnyvale CA 94086-6116

Case No.: 5:11-CV-05018 PSG — FAC Exhibit A

## PROOF OF WILL

On the date written below, **Patricia L. Paramoure** declared to us, the undersigned, that this instrument, consisting of three pages, including the page signed by us as witnesses, was the Testator's Will and requested us to act as witnesses to it. The Testator thereupon signed this Will in our presence, all of us being present at the same time. We now, at the Testator's request, and in the Testator's presence and in the presence of each other, subscribe our names as witnesses.

We are acquainted with **Patricia L. Paramoure**. At this time the Testator is over the age of 18 years, and to the best of our knowledge, the Testator is of sound mind and is not acting under duress, menace, fraud, misrepresentation, or undue influence.

Each of us is now more than 18 years of age and a competent witness and resides at the address set forth after this name.

We declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Executed on this 9th day of January, 2001, at Sunnyvale, Santa Clara County, California.

_____
JANITA G. BANKS
514 South Murphy Avenue - Office
Sunnyvale CA 94086-6116


_____
JULIAN C. ROBERTS
514 South Murphy Avenue - Office
Sunnyvale CA 94086-6116

# DURABLE POWER OF ATTORNEY

# FOR HEALTH CARE

**1.      DESIGNATION OF HEALTH CARE AGENT.** I, **Michael E. Boyd**, of **821 Lakenoll Drive, Sunnyvale, California**, do hereby designate and appoint **Patricia L. Paramoure**, of **821 Lakenoll Drive, Sunnyvale, California**, Tel: **(408)747-1579**, as my Agent to make health care decisions for me as authorized in this document.

For the purposes of this document, "health care decision" means consent, refusal of consent, or withdrawal of consent to any care, treatment, service, or procedure to maintain, diagnose, or treat an individual's physical or mental condition.

**2.      CREATION OF DURABLE POWER OF ATTORNEY FOR HEALTH CARE.** By this document I intend to create a Durable Power of Attorney for Health Care under Sections 4600 to 4752, inclusive, of the California Probate Code. This power of attorney is authorized by the Keene Health Care Agent Act and shall be construed in accordance with the provisions of Sections 4700 to 4779, inclusive, of the California Probate Code. This power of attorney shall not be affected by my subsequent incapacity.

**3.      GENERAL STATEMENT OF AUTHORITY GRANTED.** Subject to any limitations in this document, I hereby grant to my Agent full power and authority to make health care decisions for me to the same extent that I could make those decisions for myself if I had the capacity to do so. In exercising this authority, my Agent shall make health care decisions that are consistent with my desires as stated in this document or otherwise made known to my Agent, including, but not limited to, my desires concerning obtaining or refusing or withdrawing life-prolonging care, treatment, services, and procedures.

**4.      STATEMENT OF DESIRES, SPECIAL PROVISIONS, AND LIMITATIONS.** In exercising the authority under this Durable Power of Attorney for Health Care, my Agent shall act consistently with my desires as stated below and is subject to the special provisions and limitations stated below:

      (a)      *Statement of desires concerning life-prolonging care, treatment, services and procedures:* It is my desire that life-prolonging care, treatment, services and procedures not be applied except as needed to maintain me in reasonable comfort and freedom from pain, except that, in the sole discretion of my health care agent, adequate life support may be provided for up to **three** days if appropriate to permit travel by my children.

      (b)      *Additional statement of desires, special provisions, and limitations:* No additional Provisions.

**5.      INSPECTION AND DISCLOSURE OF INFORMATION RELATING TO MY PHYSICAL OR MENTAL HEALTH.** Subject to any limitations in this document, my Agent has the power and authority to do all of the following:

(a) Request, review, and receive any information, verbal or written, regarding my physical or mental health, including, but not limited to, medical and hospital records.

(b) Execute on my behalf any releases or other documents that may be required in order to obtain this information.

(c) Consent to the disclosure of this information.

**6.    SIGNING DOCUMENTS, WAIVERS, AND RELEASES.**  Where necessary to implement the health care decisions that my Agent is authorized by this document to make, my Agent has the power and authority to execute on my behalf all of the following:

(a) Documents titled or purporting to be a "Refusal to Permit Treatment" and "Leaving Hospital Against Medical Advice".

(b) Any necessary waiver or release from liability required by a hospital or physician.

**7.    AUTOPSY, ANATOMICAL GIFTS, DISPOSITION OF REMAINS.**  Subject to any limitations in this document, my Agent has the power and authority to do all of the following:

(a) Authorize an autopsy under Section 7113 of the Health and Safety Code.

(b) Make a disposition of a part or parts of my body under the Uniform Anatomical Gift Act  (Chapter 3.5 (commencing with Section 7150) of Part 1 of Division 7 of the Health and Safety Code).

(c) Direct the disposition of my remains under Section 7100 of the Health and Safety Code.

**8.    DURATION.**  This power of attorney will exist for an indefinite period of time.

**9.    DESIGNATION OF ALTERNATE AGENTS.**   If the person designated as my Agent in paragraph 1 is not available or becomes ineligible to act as my Agent to make a health care decision for me or loses the mental capacity to make health care decisions for me, or if I revoke that person's appointment or authority to act as my Agent to make health care decisions for me, then I designate and appoint the following person(s) to serve as my Agent to make health care decisions for me as authorized in this document, such person(s) to serve in the order listed below:

| FIRST ALTERNATE AGENT: | **Kevin Boyd** |
|---|---|
| 1.) | **2156 Willester Drive** |
| 2.) | **San Jose, CA 95124** |
| 3.) | **(408)559-3615** |

Case No.:  5:11-CV-05018 PSG – FAC Exhibit A

**10.     NOMINATION OF CONSERVATOR OF PERSON.**   If a Conservator of the person is to be appointed for me, I nominate the following individual to serve as Conservator of the person: **Patricia L. Paramoure**, of **821 Lakenoll Drive, Sunnyvale, California.**

**11.     PRIOR DESIGNATIONS REVOKED.**   I revoke any prior Durable Power of Attorney for Health Care.

Executed on this 9th day of January, 2001, at Sunnyvale, Santa Clara County, California.


_____

**Michael E. Boyd**

Case No.:  5:11-CV-05018 PSG — FAC Exhibit A

# STATEMENT OF WITNESSES

I declare under penalty of perjury under the laws of California that the person who signed or acknowledged this document is personally known to me OR proved to me on the basis of convincing evidence to be the Principal, that the Principal signed or acknowledged this Durable Power of Attorney in my presence, that the Principal appears to be of sound mind and under no duress, fraud, or undue influence, that I am not the person appointed as Agent by this document, and that I am not a health care provider, an employee of a health care provider, the operator of a community care facility, an employee of an operator of a community care facility, the operator of a residential care facility for the elderly, nor an employee of an operator of a residential care facility for the elderly.

Dated: January 9, 2001

_____

JANITA G. BANKS
514 South Murphy Avenue - Office
Sunnyvale CA 94086-6116

Dated: January 9, 2001

_____

JULIAN C. ROBERTS
514 South Murphy Avenue - Office
Sunnyvale CA 94086-6116

I further declare under penalty of perjury under the laws of California that I am not related to the Principal by blood, marriage, or adoption, and, to the best of my knowledge, I am not entitled to any part of the estate of the Principal upon the death of the Principal under a will now existing or by operation of law.

Dated: January 9, 2001

_____

JANITA G. BANKS
514 South Murphy Avenue - Office
Sunnyvale CA 94086-6116

Dated: January 9, 2001

_____

JULIAN C. ROBERTS
514 South Murphy Avenue - Office
Sunnyvale CA 94086-6116

Case No.: 5:11-CV-05018 PSG — FAC Exhibit A

12-12020-mg   Doc 7825-14   Filed 12/04/14   Entered 12/04/14 17:51:36   Exhibit J
to Declaration   Pg 46 of 54
Case 5:11-cv-05018-PSG   Document 52-1   Filed 05/22/12   Page 29 of 33

WARNING TO PERSON EXECUTING THIS DOCUMENT

## (California Probate Code Section 4771)

THIS IS AN IMPORTANT LEGAL DOCUMENT WHICH IS AUTHORIZED BY THE
KEENE HEALTH CARE AGENT ACT.  BEFORE EXECUTING THIS DOCUMENT, YOU
SHOULD KNOW THESE IMPORTANT FACTS:

THIS DOCUMENT GIVES THE PERSON YOU DESIGNATE AS YOUR AGENT (THE
ATTORNEY-IN-FACT) THE POWER TO MAKE HEALTH CARE DECISIONS FOR YOU.
YOUR AGENT MUST ACT CONSISTENTLY WITH YOUR DESIRES AS STATED IN THIS
DOCUMENT OR OTHERWISE MADE KNOWN.

EXCEPT AS YOU OTHERWISE SPECIFY IN THIS DOCUMENT, THIS DOCUMENT
GIVES YOUR AGENT THE POWER TO CONSENT TO YOUR DOCTOR NOT GIVING
TREATMENT OR STOPPING TREATMENT NECESSARY TO KEEP YOU ALIVE.

NOTWITHSTANDING THIS DOCUMENT, YOU HAVE THE RIGHT TO MAKE
MEDICAL AND OTHER HEALTH CARE DECISIONS FOR YOURSELF SO LONG AS
YOU CAN GIVE INFORMED CONSENT WITH RESPECT TO THE PARTICULAR
DECISION.  IN ADDITION, NO TREATMENT MAY BE GIVEN TO YOU OVER YOUR
OBJECTION AT THE TIME, AND HEALTH CARE NECESSARY TO KEEP YOU ALIVE
MAY NOT BE STOPPED OR WITHHELD IF YOU OBJECT AT THE TIME.

THIS DOCUMENT GIVES YOUR AGENT AUTHORITY TO CONSENT, TO REFUSE TO
CONSENT, OR TO WITHDRAW CONSENT TO ANY CARE, TREATMENT, SERVICE, OR
PROCEDURE TO MAINTAIN, DIAGNOSE, OR TREAT A PHYSICAL OR MENTAL
CONDITION.  THIS POWER IS SUBJECT TO ANY STATEMENT OF YOUR DESIRES
AND ANY LIMITATIONS THAT YOU INCLUDE IN THIS DOCUMENT.  YOU MAY
STATE IN THIS DOCUMENT ANY TYPES OF TREATMENT THAT YOU DO NOT
DESIRE.  IN ADDITION, A COURT CAN TAKE AWAY THE POWER OF YOUR AGENT
TO MAKE HEALTH CARE DECISIONS FOR YOU IF YOUR AGENT (1) AUTHORIZES
ANYTHING THAT IS ILLEGAL, (2) ACTS CONTRARY TO YOUR KNOWN DESIRES, OR
(3) WHERE YOUR DESIRES ARE NOT KNOWN, DOES ANYTHING THAT IS CLEARLY
CONTRARY TO YOUR BEST INTERESTS.

THE POWERS GIVEN BY THIS DOCUMENT WILL EXIST FOR AN INDEFINITE
PERIOD OF TIME UNLESS YOU LIMIT THEIR DURATION IN THIS DOCUMENT.

YOU HAVE THE RIGHT TO REVOKE THE AUTHORITY OF YOUR AGENT BY
NOTIFYING YOUR AGENT OR YOUR TREATING DOCTOR, HOSPITAL, OR OTHER
HEALTH CARE PROVIDER ORALLY OR IN WRITING OF THE REVOCATION.

YOUR AGENT HAS THE RIGHT TO EXAMINE YOUR MEDICAL RECORDS AND TO
CONSENT TO THEIR DISCLOSURE UNLESS YOU LIMIT THIS RIGHT IN THIS
DOCUMENT.

INITIALS _____

Case 5:11-cv-05018-PSG   Document 52-2   Filed 05/22/12   Page 28 of 33

UNLESS YOU OTHERWISE SPECIFY IN THIS DOCUMENT, THIS DOCUMENT GIVES
YOUR AGENT THE POWER AFTER YOU DIE TO (1) AUTHORIZE AN AUTOPSY, (2)
DONATE YOUR BODY OR PARTS THEREOF FOR TRANSPLANT OR THERAPEUTIC
OR EDUCATIONAL OR SCIENTIFIC PURPOSES, AND (3) DIRECT THE DISPOSITION
OF YOUR REMAINS.

THIS DOCUMENT REVOKES ANY PRIOR DURABLE POWER OF ATTORNEY FOR
HEALTH CARE.

YOU SHOULD CAREFULLY READ AND FOLLOW THE WITNESSING PROCEDURE
DESCRIBED AT THE END OF THIS FORM. THIS DOCUMENT WILL NOT BE VALID
UNLESS YOU COMPLY WITH THE WITNESSING PROCEDURE.

IF THERE IS ANYTHING IN THIS DOCUMENT THAT YOU DO NOT UNDERSTAND,
YOU SHOULD ASK A LAWYER TO EXPLAIN IT TO YOU.

YOUR AGENT MAY NEED THIS DOCUMENT IMMEDIATELY IN CASE OF AN
EMERGENCY THAT REQUIRES A DECISION CONCERNING YOUR HEALTH CARE.
EITHER KEEP THIS DOCUMENT WHERE IT IS IMMEDIATELY AVAILABLE TO YOUR
AGENT AND ALTERNATE AGENTS OR GIVE EACH OF THEM AN EXECUTED COPY
OF THIS DOCUMENT. YOU MAY ALSO WANT TO GIVE YOUR DOCTOR AN
EXECUTED COPY OF THIS DOCUMENT.

DO NOT USE THIS FORM IF YOU ARE A CONSERVATEE UNDER THE LANTERMAN-
PETRIS-SHORT ACT AND YOU WANT TO APPOINT YOUR CONSERVATOR AS YOUR
AGENT. YOU CAN DO THAT ONLY IF THE APPOINTMENT DOCUMENT INCLUDES
A CERTIFICATE OF YOUR ATTORNEY.

_____
INITIALS

# DURABLE POWER OF ATTORNEY

# FOR HEALTH CARE

**1.      DESIGNATION OF HEALTH CARE AGENT.**  I, **Patricia L. Paramoure**, of **821 Lakenoll Drive, Sunnyvale, California**, do hereby designate and appoint **Michael E. Boyd**, of **821 Lakenoll Drive, Sunnyvale, California**, as my Agent to make health care decisions for me as authorized in this document.

For the purposes of this document, "health care decision" means consent, refusal of consent, or withdrawal of consent to any care, treatment, service, or procedure to maintain, diagnose, or treat an individual's physical or mental condition.

**2.      CREATION OF DURABLE POWER OF ATTORNEY FOR HEALTH CARE.**  By this document I intend to create a Durable Power of Attorney for Health Care under Sections 4600 to 4752, inclusive, of the California Probate Code.  This power of attorney is authorized by the Keene Health Care Agent Act and shall be construed in accordance with the provisions of Sections 4700 to 4779, inclusive, of the California Probate Code.  This power of attorney shall not be affected by my subsequent incapacity.

**3.      GENERAL STATEMENT OF AUTHORITY GRANTED.**  Subject to any limitations in this document, I hereby grant to my Agent full power and authority to make health care decisions for me to the same extent that I could make those decisions for myself if I had the capacity to do so.  In exercising this authority, my Agent shall make health care decisions that are consistent with my desires as stated in this document or otherwise made known to my Agent, including, but not limited to, my desires concerning obtaining or refusing or withdrawing life-prolonging care, treatment, services, and procedures.

**4.      STATEMENT OF DESIRES, SPECIAL PROVISIONS, AND LIMITATIONS.**  In exercising the authority under this Durable Power of Attorney for Health Care, my Agent shall act consistently with my desires as stated below and is subject to the special provisions and limitations stated below:

(c)      *Statement of desires concerning life-prolonging care, treatment, services and procedures:* It is my desire that life-prolonging care, treatment, services and procedures not be applied except as needed to maintain me in reasonable comfort and freedom from pain, except that, in the sole discretion of my health care agent, adequate life support may be provided for up to **three** days if appropriate to permit travel by my children.

(d)      *Additional statement of desires, special provisions, and limitations:* No additional Provisions.

**5.      INSPECTION AND DISCLOSURE OF INFORMATION RELATING TO MY PHYSICAL OR MENTAL HEALTH.**  Subject to any limitations in this document, my Agent has the power and authority to do all of the following:

12-12020-mg   Doc 7825-14   Filed 12/04/14   Entered 12/04/14 17:51:36   Exhibit J
to Declaration   Pg 49 of 54
Case 5:11-cv-05018-PSG   Document 52-1   Filed 05/22/12   Page 28 of 33

(d) Request, review, and receive any information, verbal or written, regarding
my physical or mental health, including, but not limited to, medical and
hospital records.

(e) Execute on my behalf any releases or other documents that may be
required in order to obtain this information.

(f) Consent to the disclosure of this information.

**6.     SIGNING DOCUMENTS, WAIVERS, AND RELEASES.**  Where necessary to
implement the health care decisions that my Agent is authorized by this document to make,
my Agent has the power and authority to execute on my behalf all of the following:

(c) Documents titled or purporting to be a "Refusal to Permit Treatment"
and "Leaving Hospital Against Medical Advice".

(d) Any necessary waiver or release from liability required by a hospital or
physician.

**7.     AUTOPSY, ANATOMICAL GIFTS, DISPOSITION OF REMAINS.**  Subject
to any limitations in this document, my Agent has the power and authority to do all of the
following:

(d) Authorize an autopsy under Section 7113 of the Health and Safety Code.

(e) Make a disposition of a part or parts of my body under the Uniform
Anatomical Gift Act  (Chapter 3.5 (commencing with Section 7150) of
Part 1 of Division 7 of the Health and Safety Code).

(f) Direct the disposition of my remains under Section 7100 of the Health
and Safety Code.

**8.     DURATION.**  This power of attorney will exist for an indefinite period of time.

**9.     DESIGNATION OF ALTERNATE AGENTS.**   If the person designated as my
Agent in paragraph 1 is not available or becomes ineligible to act as my Agent to make a
health care decision for me or loses the mental capacity to make health care decisions for
me, or if I revoke that person's appointment or authority to act as my Agent to make health
care decisions for me, then I designate and appoint the following person(s) to serve as my
Agent to make health care decisions for me as authorized in this document, such person(s)
to serve in the order listed below:

**FIRST ALTERNATE AGENT:**      **Kevin Boyd**

4.)                        **2156 Willester Drive**

5.)                        **San Jose, CA 95124**

6.)                        **(408)559-3615**

---

**10.     NOMINATION OF CONSERVATOR OF PERSON.**  If a Conservator of the person is to be appointed for me, I nominate the following individual to serve as Conservator of the person: **Michael E. Boyd**, of **821 Lakenoll Drive, Sunnyvale, California.**

**11.     PRIOR DESIGNATIONS REVOKED.**  I revoke any prior Durable Power of Attorney for Health Care.

Executed on this 9th of January, 2001, at Sunnyvale, Santa Clara County, California.


_____

**Patricia L. Paramoure**

# STATEMENT OF WITNESSES

I declare under penalty of perjury under the laws of California that the person who signed or acknowledged this document is personally known to me OR proved to me on the basis of convincing evidence to be the Principal, that the Principal signed or acknowledged this Durable Power of Attorney in my presence, that the Principal appears to be of sound mind and under no duress, fraud, or undue influence, that I am not the person appointed as Agent by this document, and that I am not a health care provider, an employee of a health care provider, the operator of a community care facility, an employee of an operator of a community care facility, the operator of a residential care facility for the elderly, nor an employee of an operator of a residential care facility for the elderly.

Dated: January 9, 2001 _____

JANITA G. BANKS
514 South Murphy Avenue - Office
Sunnyvale CA 94086-6116

Dated: January 9, 2001 _____

JULIAN C. ROBERTS
514 South Murphy Avenue - Office
Sunnyvale CA 94086-6116

I further declare under penalty of perjury under the laws of California that I am not related to the Principal by blood, marriage, or adoption, and, to the best of my knowledge, I am not entitled to any part of the estate of the Principal upon the death of the Principal under a will now existing or by operation of law.

Dated: January 9, 2001 _____

JANITA G. BANKS
514 South Murphy Avenue - Office
Sunnyvale CA 94086-6116

Dated: January 9, 2001 _____

JULIAN C. ROBERTS
514 South Murphy Avenue - Office
Sunnyvale CA 94086-6116

12-12020-mg   Doc 7825-14   Filed 12/04/14   Entered 12/04/14 17:51:36   Exhibit J
to Declaration   Pg 52 of 54
Case 5:11-cv-05018-PSG   Document 32   Filed 05/22/12   Page 51 of 53

WARNING TO PERSON EXECUTING THIS DOCUMENT

## (California Probate Code Section 4771)

THIS IS AN IMPORTANT LEGAL DOCUMENT WHICH IS AUTHORIZED BY THE
KEENE HEALTH CARE AGENT ACT. BEFORE EXECUTING THIS DOCUMENT, YOU
SHOULD KNOW THESE IMPORTANT FACTS:

THIS DOCUMENT GIVES THE PERSON YOU DESIGNATE AS YOUR AGENT (THE
ATTORNEY-IN-FACT) THE POWER TO MAKE HEALTH CARE DECISIONS FOR YOU.
YOUR AGENT MUST ACT CONSISTENTLY WITH YOUR DESIRES AS STATED IN THIS
DOCUMENT OR OTHERWISE MADE KNOWN.

EXCEPT AS YOU OTHERWISE SPECIFY IN THIS DOCUMENT, THIS DOCUMENT
GIVES YOUR AGENT THE POWER TO CONSENT TO YOUR DOCTOR NOT GIVING
TREATMENT OR STOPPING TREATMENT NECESSARY TO KEEP YOU ALIVE.

NOTWITHSTANDING THIS DOCUMENT, YOU HAVE THE RIGHT TO MAKE
MEDICAL AND OTHER HEALTH CARE DECISIONS FOR YOURSELF SO LONG AS
YOU CAN GIVE INFORMED CONSENT WITH RESPECT TO THE PARTICULAR
DECISION. IN ADDITION, NO TREATMENT MAY BE GIVEN TO YOU OVER YOUR
OBJECTION AT THE TIME, AND HEALTH CARE NECESSARY TO KEEP YOU ALIVE
MAY NOT BE STOPPED OR WITHHELD IF YOU OBJECT AT THE TIME.

THIS DOCUMENT GIVES YOUR AGENT AUTHORITY TO CONSENT, TO REFUSE TO
CONSENT, OR TO WITHDRAW CONSENT TO ANY CARE, TREATMENT, SERVICE, OR
PROCEDURE TO MAINTAIN, DIAGNOSE, OR TREAT A PHYSICAL OR MENTAL
CONDITION. THIS POWER IS SUBJECT TO ANY STATEMENT OF YOUR DESIRES
AND ANY LIMITATIONS THAT YOU INCLUDE IN THIS DOCUMENT. YOU MAY
STATE IN THIS DOCUMENT ANY TYPES OF TREATMENTTHAT YOU DO NOT
DESIRE. IN ADDITION, A COURT CAN TAKE AWAY THE POWER OF YOUR AGENT
TO MAKE HEALTH CARE DECISIONS FOR YOU IF YOUR AGENT (1) AUTHORIZES
ANYTHING THAT IS ILLEGAL, (2) ACTS CONTRARY TO YOUR KNOWN DESIRES, OR
(3) WHERE YOUR DESIRES ARE NOT KNOWN, DOES ANYTHING THAT IS CLEARLY
CONTRARY TO YOUR BEST INTERESTS.

THE POWERS GIVEN BY THIS DOCUMENT WILL EXIST FOR AN INDEFINITE
PERIOD OF TIME UNLESS YOU LIMIT THEIR DURATION IN THIS DOCUMENT.

YOU HAVE THE RIGHT TO REVOKE THE AUTHORITY OF YOUR AGENT BY
NOTIFYING YOUR AGENT OR YOUR TREATING DOCTOR, HOSPITAL, OR OTHER
HEALTH CARE PROVIDER ORALLY OR IN WRITING OF THE REVOCATION.

YOUR AGENT HAS THE RIGHT TO EXAMINE YOUR MEDICAL RECORDS AND TO
CONSENT TO THEIR DISCLOSURE UNLESS YOU LIMIT THIS RIGHT IN THIS
DOCUMENT.

_____

INITIALS

Keene Health Care Warning

UNLESS YOU OTHERWISE SPECIFY IN THIS DOCUMENT, THIS DOCUMENT GIVES
YOUR AGENT THE POWER AFTER YOU DIE TO (1) AUTHORIZE AN AUTOPSY, (2)
DONATE YOUR BODY OR PARTS THEREOF FOR TRANSPLANT OR THERAPEUTIC
OR EDUCATIONAL OR SCIENTIFIC PURPOSES, AND (3) DIRECT THE DISPOSITION
OF YOUR REMAINS.

THIS DOCUMENT REVOKES ANY PRIOR DURABLE POWER OF ATTORNEY FOR
HEALTH CARE.

YOU SHOULD CAREFULLY READ AND FOLLOW THE WITNESSING PROCEDURE
DESCRIBED AT THE END OF THIS FORM.  THIS DOCUMENT WILL NOT BE VALID
UNLESS YOU COMPLY WITH THE WITNESSING PROCEDURE.

IF THERE IS ANYTHING IN THIS DOCUMENT THAT YOU DO NOT UNDERSTAND,
YOU SHOULD ASK A LAWYER TO EXPLAIN IT TO YOU.

YOUR AGENT MAY NEED THIS DOCUMENT IMMEDIATELY IN CASE OF AN
EMERGENCY THAT REQUIRES A DECISION CONCERNING YOUR HEALTH CARE.
EITHER KEEP THIS DOCUMENT WHERE IT IS IMMEDIATELY AVAILABLE TO YOUR
AGENT AND ALTERNATE AGENTS OR GIVE EACH OF THEM AN EXECUTED COPY
OF THIS DOCUMENT.  YOU MAY ALSO WANT TO GIVE YOUR DOCTOR AN
EXECUTED COPY OF THIS DOCUMENT.

DO NOT USE THIS FORM IF YOU ARE A CONSERVATEE UNDER THE LANTERMAN-
PETRIS-SHORT ACT AND YOU WANT TO APPOINT YOUR CONSERVATOR AS YOUR
AGENT.  YOU CAN DO THAT ONLY IF THE APPOINTMENT DOCUMENT INCLUDES
A CERTIFICATE OF YOUR ATTORNEY.

INITIALS _____

## Statement Concerning Guardianship of Minor Children

We, **Michael E. Boyd** and **Patricia L. Paramoure**, have created a Trust entitled **"MICHAEL BOYD and PATRICIA PARAMOURE LIVING TRUST"** to provide for our benefit during life, and for the benefit of our children after the death of both of us.

Realizing that death could overtake us before our children are of sufficiently mature age, we make this statement of our preferences regarding their physical and legal custody.

**First**. We confirm to each other our wish that the survivor, should one of us die before the other, continue to exercise full legal and physical responsibility and custody for the children. This is as the law would have it be, and we hereby express our agreement with that legal principle.

**Second**. We appoint **Kevin T. Boyd** of **San Jose, California** as the permanent guardian of our children with all rights and duties of a guardian of minor children until such time as they are of legal age. We also grant **Kevin T. Boyd** authority to remove the children from the children's state of residence before a court appointment in order that he may make use of the courts of his own state to seek such appointment.

We make these appointments with due and careful consideration of the needs of our children, and of the kindness and generosity of those we are appointing. We desire that the court confirm our appointments with utmost speed.

Dated: January 9, 2001

_____
**Michael E. Boyd**, Father

Dated: January 9, 2001

_____
**Patricia L. Paramoure**, Mother