**Hearing Date: January 14, 2015 at 10:00 A.M. (ET)**
**Response Deadline: December 29, 2014 at 4:00 P.M. (ET)**

MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett

*Counsel for the ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**RESCAP BORROWER CLAIMS TRUST'S SUPPLEMENTAL OBJECTION AND REPLY IN SUPPORT OF ITS SEVENTY-FIFTH OMNIBUS OBJECTION TO CLAIMS (NO-LIABILITY BORROWER CLAIMS) AS TO CLAIM NO. 3862 FILED BY <u>RHONDA GOSSELIN</u>**

**TABLE OF CONTENTS**

<u>**Page**</u>

PRELIMINARY STATEMENT .................................................................................................. 1

BACKGROUND .......................................................................................................................... 2

REPLY .......................................................................................................................................... 6

SUPPLEMENTAL OBJECTION................................................................................................. 11

CONCLUSION............................................................................................................................ 12

## TABLE OF AUTHORITIES

Page(s)

**CASES**

Abraham v. Am. Home Mortg. Servicing, Inc.,
  No. 11-10854, 2012 WL 4482236 (D. Mass. Sep. 27,2012) ........................................................9

Beantown Sports, Inc. v. Verrochi,
  922 N.E. 2d 179 (Mass. Ct. App. 2010) ......................................................................................8

Feinberg v. Bank of N.Y. (In re Feinberg),
  442 B.R. 215 (Bankr. S.D.N.Y. 2010) ........................................................................................6

Gaul v. Aurora Loan Servcs., LLC,
  12-10129-NMG, 2013 WL 1213065 (D. Mass. Feb. 7, 2013) ...................................................7

In re Adelphia Commc'ns Corp.,
  Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660 (Bankr. S.D.N.Y. Feb. 20, 2007) ..........6

In re Allegheny Int'l, Inc.,
  954 F.2d 167 (3d Cir. 1992)........................................................................................................6

In re Oneida Ltd.,
  400 B.R. 384 (Bankr. S.D.N.Y. 2009) ........................................................................................6

In re Residential Capital, LLC,
  507 B.R. 477 (Bankr. S.D.N.Y. 2014) ........................................................................................6

In re Rockefeller Ctr. Props.,
  272 B.R. 524 (Bankr. S.D.N.Y. 2000) ........................................................................................6

King v. Driscoll,
  No-90-4433, 1995 WL 808624 (Sup. Ct. Mass. Jan. 25, 1995) .................................................7

McKenna v. Wells Fargo Bank, N.A.,
  C.A. No. 10-10417-JLT, 011 ....................................................................................................10

Vincent v. Ameriquest Mortg. Co. (In re Vincent),
  381 B.R. 564 (Bankr. D. Mass. 2008) ......................................................................................11

**STATUTES**

11 U.S.C. 502(b)(1) .........................................................................................................................6

11 U.S.C. § 502(a) ...........................................................................................................................6

ny-1167039

The ResCap Borrower Claims Trust (the "Borrower Trust"), established pursuant to the terms of the Plan[1] confirmed in the above-captioned Chapter 11 Cases, as successor in interest to the above-captioned Debtors with respect to Borrower Claims, by and through its undersigned counsel, hereby submits this Reply and Supplemental Objection (the "Reply and Supplemental Objection") together with the Supplemental Declaration of Deanna Horst, Chief Claims Officer of the ResCap Liquidating Trust (the "Supplemental Declaration"), annexed hereto as Exhibit 1, to the response filed by Rhonda Gosselin ("Ms. Gosselin") [Docket No. 7652] (the "Gosselin Response") to the *ResCap Borrower Claims Trust's Seventy-Fifth Omnibus Objection to Claims (No Liability Borrower Claims)* [Docket No. 7552] (the "Objection") and in further support of the Objection. The Borrower Trust respectfully states as follows:

## PRELIMINARY STATEMENT

1. The Borrower Trust examined the Gosselin Response and the Gosselin Claim (defined below) and the statements submitted in support thereof. For purposes of this Reply and Supplemental Objection and the Objection, the Borrower Trust takes these statements at face value. If the Court is not prepared to rule on the Objection with respect to Ms. Gosselin, then the Borrower Trust reserves the right to take discovery from Ms. Gosselin.

2. As described herein and in the Supplemental Declaration, the Borrower Trust thoroughly examined the Debtors' books and records that were prepared and kept in the course of their regularly conducted business activities (the "Books and Records") in an effort to validate the accuracy of the allegations made in the Gosselin Response and the Gosselin Claim.

3. Ms. Gosselin has not demonstrated any liability of the Debtors related to the origination, servicing, or foreclosure proceeding related to the Gosselin Loan that would give

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Objection.

ny-1167039

rise to a claim, and therefore did not sufficiently meet her burden of demonstrating by a preponderance of the evidence a valid claim on these bases against the Debtors. As a result, Ms. Gosselin's claim should be disallowed.

4. However, the Objection did not address Ms. Gosselin's allegations that the Debtors are liable for providing her with a loan that she could not afford.[2] As a result, through this Reply and Supplemental Objection, the Borrower Trust is now addressing this specific allegation, and allowing Ms. Gosselin an opportunity to respond to the Borrower Trust's arguments with regards to only this allegation. See *Notice of Hearing on ResCap Borrower claims Trust's Seventy-Fifth Omnibus Objection to Claims (No Liability Borrower Claims) Solely as it Relates to the Claim Filed by Rhonda Gosselin (Claim No. 3862) to January 14, 2015 at 10:00 a.m. (Prevailing Eastern Time)* [Docket No. 7801].

## BACKGROUND

5. The Debtors sent a Request Letter to Ms. Gosselin on June 21, 2013, requesting additional documentation in support of the Claim. See Supplemental Declaration ¶ 4. The Request Letter stated that Ms. Gosselin must respond within 30 days with an explanation that states the legal and factual reasons why she believes she is owed money or is entitled to other relief from the Debtors, and that she must provide copies of any and all documentation that she believes supports the basis for her claim. The Request Letter further stated that if Ms. Gosselin does not provide the requested explanation and supporting documentation within 30 days, the Debtors may file a formal objection to the Claim, seeking to have the Claim disallowed

---

[2] In ¶ 51 of the Gosselin Complaint attached to the Claim, Ms. Gosselin alleges "Defendants acted improperly in extending credit to the Plaintiff without regard to her ability to pay." This was the only mention of this allegation in the Gosselin Complaint.

2

and permanently expunged. The Debtors did not receive a response from Ms. Gosselin. See Supplemental Declaration ¶ 5.

*Background Facts*

6.     On or around November 9, 2012, Ms. Gosselin filed a proof of claim against GMACM, designated as Claim No. 3862 (the "Gosselin Claim"), asserting a secured claim for $153,669.00 and a general unsecured claim for $165,980.60. See Exhibit A to the Supplemental Declaration; see also Exhibit A to the proposed order to the Objection ("Exhibit A to the Objection").

7.     The Debtors' books and records show that GMACM originated a loan in the amount of $85,000.00 to Ms. Gosselin on July 26, 2006 (the "Gosselin Loan"). See Gosselin Note, attached to the Supplemental Declaration as Exhibit B. The Gosselin Loan was a cash-out refinancing of her primary residence. See Loan Application and HUD-1 Statement, attached to the Supplemental Declaration as Exhibit C. Ms. Gosselin was approved based on her credit score and loan to value ratio. See id. Based on the appraisal conducted at the time of closing, the loan-to-value ratio was 47%. See Appraisal, attached to the Supplemental Declaration as Exhibit D. The signed application and HUD-1 statement show that the loan paid off a prior lien on the property of $24,559.46 and credit card debt totaling $41,528.45. See Loan Application and HUD-1 Statement. In addition, Ms. Gosselin received $14,523.72 in cash. See id. The application shows that prior to the origination of the Gosselin Loan, Ms. Gosselin's mortgage payment was $511.00 and that her payment on her credit card debt was $1,703.00, for a total monthly debt payment of $2,214.00. See id. After the Gosselin Loan, Ms. Gosselin's mortgage payment was $813.37 and her payments on other debt amounted to $538.00, for a total monthly

3

debt payment of $1,351.37.  See id.  Therefore, as a result of the Gosselin Loan, Ms. Gosselin's total monthly debt payments were reduced by $863.00 per month.  See id.

8. At the time of origination, Ms. Gosselin was provided with a Truth in Lending Disclosure ("TIL Disclosure").  See Gosselin TIL Disclosure, attached to the Supplemental Declaration as Exhibit E. GMACM transferred its interest in the Gosselin Loan to the Federal National Mortgage Association ("Fannie Mae") on or around September 15, 2006.  See Exhibit A to the Objection.  GMACM serviced the Gosselin Loan from July 26, 2006 until servicing was transferred to Greentree Servicing, LLC ("Greentree") on February 1, 2013.  See id.

9. The Debtors' books and records show that the account was breached on June 4, 2007, as it was due for the April through June 2007 payments.  See Exhibit A to the Objection.  Ms. Gosselin informed the Debtors that she would be unable to make all three payments, and the Debtors agreed to allow her to make the April and May payments in June and make the June payment in July.  See Supplemental Declaration ¶ 9. Ms. Gosselin made a payment on June 9, 2007 to cover the April and May payments.  See id.  That payment was accidentally transferred to another customer by the Debtors (the "Misdirected Payment") and that customer refused to return the payment.[3]  See Exhibit A to the Objection.  Ms. Gosselin was advised by a GMACM employee to put a stop payment on the original check, and the Debtors told her it would cover any costs, including amending her credit if it was affected due to the issue, waiving any late charges, and offering to enroll her in a privacy guard.  See id.  On June 25, 2007, Ms. Gosselin made another payment that covered the April and May payments, and the

---

[3] The Debtors, in error, were attempting to return the payment to Ms. Gosselin because the payment was not enough to bring the account current.

4

ny-1167039

Debtors accepted this payment and brought the account current. See Supplemental Objection ¶ 9.

11. 10. The account was breached again on July 3, 2007 because it was due for the June and July 2007 payments. See Exhibit A to the Objection. Also in July 2007, Ms. Gosselin's escrow payment increased due to higher than estimated taxes. See Supplemental Declaration ¶ 10. On August 9, 2007, the Gosselin Loan was referred to foreclosure. See Exhibit A to the Objection. A forbearance plan was entered into on November 2, 2007, placing the foreclosure on hold. See id. The Gosselin Loan was approved for a traditional permanent modification on February 20, 2008, and signed documents were due back on February 29, 2008. See id. On May 15, 2008, the Debtors denied the permanent modification and removed the hold on the foreclosure because the Debtors did not receive the signed modification documents. See id. The foreclosure was placed on hold three more times for various reasons, as described in Exhibit A to the Objection. See id. When servicing of the Gosselin Loan was transferred to Greentree on February 1, 2013, a foreclosure had not been completed on the Gosselin Property. See id.

11. On May 24, 2010, Ms. Gosselin filed an adversary proceeding against GMACM, Fannie Mae, and MERS as part of her own bankruptcy in the U.S. Bankruptcy Court, District of Massachusetts, Western Division, case number 10-ap-03014 (the "Gosselin Litigation"). See Gosselin Complaint, attached to the Gosselin Claim as Exhibit B (the "Gosselin Complaint"). The Gosselin Litigation asserted causes of action against GMACM for breach of contract, negligence, wrongful foreclosure, unfair and deceptive trade practices, breach of the implied covenant of good faith and fair dealing, Consumer Credit Disclosure Act, and declaratory judgment.

5

ny-1167039

12. The adversary proceeding was dismissed without prejudice on April 18, 2012 because Ms. Gosselin lacked the standing to bring the case in bankruptcy court. See Gosselin Bankruptcy Order, attached to the Supplemental Declaration as Exhibit F.

## REPLY

13. A filed proof of claim is "deemed allowed, unless a party in interest … objects." 11 U.S.C. § 502(a). Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law…." 11 U.S.C. 502(b)(1). As noted previously by the Court, claims objections have a shifting burden of proof. Pursuant to Federal Rule of Bankruptcy Procedure 3001(f), a claimant establishes a prima facie case against a debtor upon filing a proof of claim alleging facts sufficient to support the claim. The objecting party is thereafter required to produce evidence equal in force to that provided by the claimant to rebut the presumption of the claimant's prima facie case. In re Residential Capital, LLC, 507 B.R. 477, 490 (Bankr. S.D.N.Y. 2014). See also (Allegheny Int'l, Inc. v. Snyder) In re Allegheny Int'l, Inc., 954 F.2d 167, 173-74 (3d Cir. 1992).

14. Once an objection refutes an essential allegation of the claim, the burden of persuasion is on the holder of a proof of claim to establish a valid claim against a debtor by a preponderance of the evidence. Residential Capital, 507 B.R at 490; Feinberg v. Bank of N.Y. (In re Feinberg), 442 B.R. 215, 220-22 (Bankr. S.D.N.Y. 2010); In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); In re Adelphia Commc'ns Corp., Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); In re Rockefeller Ctr. Props., 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).

*Servicing Claims*

15. In the Gosselin Complaint, Ms. Gosselin alleges causes of action for breach of contract, negligence, unfair and deceptive trade practices, and a breach of the implied covenant of good faith and fair dealing related to the servicing of the Gosselin Loan. See Gosselin Complaint ¶¶ 33, 36, 51, and 56. These allegations appear to relate to the Misdirected Payment.

16. In order to bring a cause of action for negligence under Massachusetts law, Ms. Gosselin needs to allege that the Debtors (1) owed her a legal duty, (2) that duty was breached, (3) the Debtors were the proximate cause of that breach, and (4) that she was actually damaged. See Gaul v. Aurora Loan Servcs., LLC, 12-10129-NMG, 2013 WL 1213065 (D. Mass. Feb. 7, 2013).

17. Ms. Gosselin's negligence claim fails because she has not shown how she was damaged by the Debtors' actions. As discussed in the Objection and in ¶ 9 *supra*, while there was an error related to the Misdirected Payment, the Debtors corrected the error and offered to cover any costs associated with the payment, including enrolling Ms. Gosselin in identity theft protection. See id. The Debtors' actions prevented any damage from occurring to Ms. Gosselin as a result of its error, and Ms. Gosselin has neither alleged how she was damaged by the error nor quantified such damages.

18. Ms. Gosselin's claims for breach of contract and breach of the implied duty of good faith and fair dealing similarly fail. In order to allege a cause of action for breach of contract, Ms. Gosselin must allege that she was party to a valid contract with the Debtors, that the Debtors breached this contract, and that the breach damaged Ms. Gosselin. See Gaul, 2013 WL 1213065, at *5. Similarly, damages must be shown in order to assert a cause of action for

7

breach of the implied covenant of good faith and fair dealing. See King v. Driscoll, No-90-4433, 1995 WL 808624, at *1 (Sup. Ct. Mass. Jan. 25, 1995) (dismissing a breach of the implied duty of good faith and fair dealing claim for failure to assert damages). As discussed above, Ms. Gosselin has not alleged how she was damaged by the Debtors' error regarding the Misdirected Payment and therefore, she has not pled the necessary elements to support these causes of action.

19. For the same reason, Ms. Gosselin's cause of action under 93A for unfair and deceptive trade practices also fails. "In order to assert a cause of action under G.L. c. 93A, the deceptive act must adversely affect the plaintiff before recovery … is permitted." Beantown Sports, Inc. v. Verrochi, 922 N.E. 2d 179 (Mass. Ct. App. 2010) (citing cases). As a result, Ms. Gosselin has failed to show any liability of the Debtors for its error with the Misdirected Payment under any of the causes of action put forward by Ms. Gosselin.

20. In the Gosselin Response, Ms. Gosselin asserts that the Debtors demanded increased payments after the Misdirected Payment. See Gosselin Response ¶ 14. The Debtors' books and records show that while there was an increased payment amount in July 2007, this was the result of an increase in the amount of escrow required because the original escrow for taxes was only estimated. The increase in payment was not an increase to principal or interest and is not connected to the Misdirected Payment. See Supplemental Declaration ¶ 10. As a result, Ms. Gosselin has not met her burden of demonstrating any liability of the Debtors resulting from this increased payment.

*Foreclosure-Related Claims*

21. The Gosselin Complaint also contains allegations for negligence, wrongful foreclosure, unfair and deceptive trade practices, and declaratory judgment related to the Debtors' standing to foreclose on the Gosselin Loan. See Gosselin Complaint ¶¶ 39, 42-48, 51,

8

and 79. Ms. Gosselin alleges that GMACM (acting in its capacity as servicer for Fannie Mae) did not have standing to initiate a foreclosure proceeding because the mortgage was never assigned to it. The Objection addresses these allegations, noting that there was a proper chain of title from MERS, as the original mortgagee to Fannie Mae (recorded on June 6, 2008) and from Fannie Mae to GMACM (recorded on October 17, 2012). See Exhibit A to the Objection.

22. In Massachusetts, a mortgage foreclosure initiated prior to June 22, 2012 is considered valid as long as the assignment of the mortgage was either recorded or executed prior to the initial date of publication of the foreclosure notice. See Abraham v. Am. Home Mortg. Servicing, Inc., No. 11-10854, 2012 WL 4482236, at *2 (D. Mass. Sep. 27, 2012) (citing Eaton v. Fed. Nat. Mortg. Ass'n, 969 N.E. 2d 1118 (Mass. 2012), which changed the interpretation of Massachusetts law to require the mortgagee to hold the note at the time of the publication of the foreclosure notice, but applied the interpretation only to foreclosure proceedings commenced after its decision). The assignment to Fannie Mae occurred well before the publication of the foreclosure notices on March 18, 2010, and Ms. Gosselin actually refers to each recorded assignment in the Gosselin Response. As a result, Ms. Gosselin has not shown that the Debtors did not have standing to foreclose on the Gosselin Property and therefore, her claim for wrongful foreclosure must fail.

*Origination-Based Claims*

23. Additionally, the Gosselin Complaint alleges causes of action for negligence, unfair and deceptive trade practices and violation of the Massachusetts Consumer Credit Disclosure Act ("MCCCDA") for purported issues with the origination of the Gosselin Loan. Specifically, the Gosselin Complaint alleges that the TIL Disclosure violated G.L. c. 140D § 10(i)(2), which says that a TIL disclosure is accurate if the finance charge listed does not

9

ny-1167039

vary from the actual finance charge by more than thirty-five dollars. Ms. Gosselin alleges that the finance charge was actually $63.07 greater than what was stated on the TIL Disclosure. See Gosselin Complaint ¶ 62.

24. While Ms. Gosselin is correct that a TIL disclosure is deemed inaccurate for purposes of the MCCCDA if the finance charge is understated by thirty-five dollars or more, her calculation of the finance charge for the Gosselin Loan is inaccurate. Ms. Gosselin's calculation includes a fifty-five dollar charge for document delivery. That charge is not considered a finance charge under TILA because it is an amount charged by a third party and the third party was not required to be used by the lender, nor was the charge retained by the lender. See Comptroller of Currency, Administrator of Banks, Truth in Lending Act, Comptroller's Handbook, December, 2010, p. 215-217, et seq. attached to hereto as Exhibit 2. Therefore, even if the other calculations made by Ms. Gosselin are accurate, the finance charge is only understated by at most $8.07, meaning the TIL disclosure is deemed accurate for purposes of G.L. c. 140D § 10(i)(2), as noted in the Objection. As a result, Ms. Gosselin has not shown any liability of the Debtors related to her TIL Disclosure Statement.

25. Ms. Gosselin also alleges that she was only provided one copy of her notice of the right to cancel. See Gosselin Response ¶ 67. However, Ms. Gosselin does not provide any evidence that she did not receive the second notice of the right to cancel, and the Debtors' books and records indicate that she did receive two copies. In fact, Ms. Gosselin admits in the Gosselin Complaint that she signed an acknowledgment that she did receive two copies of the notice of the right to cancel. See Gosselin Complaint ¶ 67. Furthermore, courts have held that there is no violation of the MCCCDA where one copy of the Notice of Right to

10

Cancel is provided. See McKenna v. Wells Fargo Bank, N.A., C.A. No. 10-10417-JLT, 011 WL 1100160, at *3 (D. Mass. Mar. 21, 2011).

26.     Additionally, as noted in the Objection, any claim for negligent lending is time barred. See Exhibit A to the Objection. The statute of limitations for negligence in Massachusetts is three years, and the Debtors originated the Gosselin Loan on July 26, 2006. As a result, the statute of limitations for any cause of action for negligence expired one year before the Gosselin Complaint was filed on July 26, 2010.

27.     For the reasons stated, Ms. Gosselin has failed to show any liability of the Debtors related to the origination, servicing, or foreclosure proceeding related to the Gosselin Loan.

## SUPPLEMENTAL OBJECTION

28.     Ms. Gosselin also alleges that the Debtors engaged in unfair and deceptive practices by extending credit to Ms. Gosselin without regard to her ability to pay. See Complaint ¶ 51. This allegation was not addressed in the Objection, and the Borrower Trust now addresses it here. Accordingly, Ms. Gosselin will be given the opportunity to respond to the Borrower Trust's arguments solely with regards to this allegation.

29.     Ms. Gosselin was approved for the loan in June 2006 based on both her credit score and the loan-to-value ratio, which was 47% at the time of closing based on the appraisal of the property. See ¶ 7 *supra*. At the time the loan was originated, Massachusetts law did not impose a duty on a lender to investigate the suitability of a loan, including the borrower's ability to repay. See Vincent v. Ameriquest Mortg. Co. (In re Vincent), 381 B.R. 564, 573 (Bankr. D. Mass. 2008) (for loans originated prior to a change in regulation in 2008, allegations that a lender did not investigate the suitability of a loan before making it were not sufficient to state a claim under Massachusetts' unfair and deceptive trade practices law unless the plaintiff

11

alleged that the terms of the loan deviated significantly from industry standards). Since Ms. Gosselin has never alleged in the Gosselin Complaint that the loan deviated from industry standards, she has not met her burden of showing that the Debtors engaged in unfair and deceptive practices related to the origination of her loan. Ms. Gosselin chose to pull equity out of her home to pay down her credit card debt. As noted, her credit score deemed her a worthy borrower and the value of her home in 2006 provided adequate equity to warrant the loan.

30.     Additionally, even if the Debtors' actions would qualify as an unfair and deceptive practice, Ms. Gosselin has not provided any evidence that she could not afford to make her mortgage payments at the time the Gosselin Loan was originated. As was noted in ¶ 7 *supra*, the Gosselin Loan actually <u>reduced</u> Ms. Gosselin's monthly debt payment obligations by $863.00, and Ms. Gosselin made her mortgage payments for a year and a half before she defaulted on the Gosselin Loan. As a result, Ms. Gosselin has not shown that the Gosselin Loan was unaffordable, and therefore cannot show that she was damaged by the Debtors' actions, a requirement for asserting a cause of action for unfair and deceptive trade practices. See ¶ 19 *supra*. As a result, Ms. Gosselin has failed to show any liability related to the affordability of the Gosselin Loan.

## CONCLUSION

31.     WHEREFORE, the Borrower Trust respectfully submits that the relief requested in the Objection (as supplemented by this Reply and Supplemental Objection) should be granted in its entirety.

Dated: December 8, 2014        /s/ Norman S. Rosenbaum  
     New York, New York        Norman S. Rosenbaum  
      Jordan A. Wishnew  
      Jessica J. Arett  
      MORRISON & FOERSTER LLP  
      250 West 55th Street  
      New York, New York 10019  
      Telephone: (212) 468-8000  
      Facsimile: (212) 468-7900  
      *Counsel for the ResCap Borrower Claims Trust*