## Exhibit 1

**Supplemental Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al</u>., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**DECLARATION OF DEANNA HORST IN SUPPORT OF THE RESCAP BORROWER CLAIMS TRUST'S SUPPLEMENTAL OBJECTION AND REPLY IN SUPPORT OF ITS SEVENTY-FIFTH OMNIBUS OBJECTION TO CLAIMS (NO-LIABILITY BORROWER CLAIMS) AS TO CLAIM NO. 3862 FILED BY RHONDA GOSSELIN**

I, Deanna Horst, hereby declare as follows:

1. I am the Chief Claims Officer for The ResCap Liquidating Trust (the "<u>Liquidating Trust</u>"), and previously served as Chief Claims Officer for Residential Capital, LLC and its affiliates ("<u>ResCap</u>"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors in the above-captioned Chapter 11 Cases (collectively, the "<u>Debtors</u>"). I have been employed by affiliates of ResCap since August of 2001. In June 2012, I became Senior Director of Claims Management for ResCap and, in October of 2013, I became the Chief Claims Officer of ResCap. I began my association with ResCap in 2001 as the Director, Responsible Lending Manager, charged with managing the Debtors' responsible lending on-site due diligence program. In 2002, I became the Director of Quality Asset Management, managing Client Repurchase, Quality Assurance and Compliance—a position I held until 2006, at which time I became the Vice President of the Credit Risk Group, managing Correspondent and Broker approval and monitoring. In 2011, I became the Vice President, Business Risk and Controls, and supported GMAC Mortgage, LLC and Ally Bank in this role. In my current position, I am responsible for Claims Management and Reconciliation

1

ny-1167791

and Client Recovery. I am authorized to submit this declaration (the "Supplemental Declaration") in support of *ResCap Borrower Claims Trust's Supplemental Objection in Support of Its Seventy-Fifth Omnibus Objection to Claims (No-Liability Borrower Claims) as to Claim No. 3862 Filed by Rhonda Gosselin* (the "Reply and Supplemental Objection").[1]

2. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations and finances, information learned from my review of relevant documents and information I have received through my discussions with other former members of the Debtors' management or other former employees of the Debtors, the Liquidating Trust's employees, professionals, and consultants, and/or Kurtzman Carson Consultants LLC ("KCC"), the Debtors' noticing and claims agent. If I were called upon to testify, I could and would testify competently to the facts set forth in the Reply and Supplemental Objection on that basis.

3. In my capacity as Chief Claims Officer, I am intimately familiar with the claims reconciliation process in these Chapter 11 Cases. Except as otherwise indicated, all statements in this Declaration are based upon my familiarity with the Debtors' books and records that were prepared and kept in the course of their regularly conducted business activities (the "Books and Records"), the Debtors' schedules of assets and liabilities and statements of financial affairs filed in these Chapter 11 Cases (collectively, the "Schedules"), my review and reconciliation of claims, and/or my review of relevant documents. I or other Liquidating Trust personnel under my supervision have reviewed and analyzed the proof of claim form and supporting documentation filed by Ms. Gosselin. Since the Plan became effective and the Borrower Trust was established, I, along with other members of the Liquidating Trust, have consulted with the Borrower Trust to continue the claims reconciliation process, analyze claims,

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Reply.

2

ny-1167791

and determine the appropriate treatment of the same.[2] In connection with such review and analysis, where applicable, I or other Liquidating Trust personnel, together with the Liquidating Trust's and the Borrower Trust's professional advisors, have reviewed (i) information supplied or verified by former personnel in departments within the Debtors' various business units, (ii) the Books and Records, (iii) the Schedules, (iv) other filed proofs of claim, and/or (v) the official claims register maintained in the Debtors' Chapter 11 Cases.

4. The Debtors sent a Request Letter to Ms. Gosselin on June 21, 2013, requesting additional documentation in support of the Claim. The Request Letter stated that Ms. Gosselin must respond within 30 days with an explanation that states the legal and factual reasons why she believes she is owed money or is entitled to other relief from the Debtors, and she must provide copies of any and all documentation that she believes supports the basis for her claim. The Request Letter further stated that if Ms. Gosselin does not provide the requested explanation and supporting documentation within 30 days, the Debtors may file a formal objection to the Claim, seeking to have the Claim disallowed and permanently expunged.

5. The Debtors did not receive a response from Ms. Gosselin. Further, as stated in the Objection, the Books and Records do not show any liability due and owing to Ms. Gosselin.

6. On or around November 9, 2012, Ms. Gosselin filed a proof of claim against GMACM, designated as Claim No. 3862 (the "<u>Gosselin Claim</u>"), asserting a secured claim for $153,669.00 and a general unsecured claim for $165,980.60. <u>See</u> <u>Exhibit A</u> attached hereto.

---

[2] The ResCap Liquidating Trust and the ResCap Borrower Claims Trust are parties to an Access and Cooperation Agreement, dated December 17, 2013, which, among other things, provides the Borrower Trust with access to the books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.

3

ny-1167791

7. The Debtors' books and records show that GMACM originated a loan in the amount of $85,000.00 to Ms. Gosselin on July 26, 2006 (the "Gosselin Loan"). See Gosselin Note, attached hereto as Exhibit B. The Gosselin Loan was a cash-out refinancing of her primary residence. See Loan Application and HUD-1 Statement, attached hereto as Exhibit C. Ms. Gosselin was approved based on her credit score and loan to value ratio. See id. Based on the appraisal conducted at the time of closing, the loan-to-value ratio was 47%. See Appraisal, attached hereto as Exhibit D. The signed application and HUD-1 statement show that the loan paid off a prior lien on the property of $24,559.46 and credit card debt totaling $41,528.45. See Loan Application and HUD-1 Statement. In addition, Ms. Gosselin received $14,523.72 in cash. See id. The application shows that prior to the origination of the Gosselin Loan, Ms. Gosselin's mortgage payment was $511.00 and that her payment on her credit card debt was $1,703.00, for a total monthly debt payment of $2,214.00. See id. After the Gosselin Loan, Ms. Gosselin's mortgage payment was $813.37 and her payments on other debt amounted to $538.00, for a total monthly debt payment of $1,351.37. See id. Therefore, as a result of the Gosselin Loan, Ms. Gosselin's total monthly debt payments were reduced by $863.00 per month. See id.

8. At the time of origination, Ms. Gosselin was provided with a Truth in Lending Disclosure ("TIL Disclosure"). See Gosselin TIL Disclosure, attached hereto as Exhibit E.

9. The Debtors' books and records show that the account was breached on June 4, 2007, as it was due for the April through June 2007 payments. Ms. Gosselin informed the Debtors that she would be unable to make all three payments, and the Debtors agreed to allow her to make the April and May payments in June and make the June payment in July. Ms. Gosselin made a payment on June 9, 2007 to cover the April and May payments. That payment

4

was accidentally transferred to another customer by the Debtors (the "Misdirected Payment") and that customer refused to return the payment.[3]  Ms. Gosselin was advised by a GMACM employee to put a stop payment on the original check, and the Debtors told her it would cover any costs, including amending her credit if it was affected due to the issue, waiving any late charges, and offering to enroll her in a privacy guard.  On June 25, 2007, Ms. Gosselin made another payment that covered the April and May payments, and the Debtors accepted this payment and brought the account current.

10.    In July 2007, Ms. Gosselin's escrow payment increased due to higher than estimated taxes.  The Debtors' books and records show that this was because the original escrow for taxes was only estimated.   The increase in payment was not an increase to principal or interest and is not connected to the Misdirected Payment.

11.    The adversary proceeding was dismissed without prejudice on April 18, 2012.  See Gosselin Bankruptcy Order, attached hereto as Exhibit F.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  December 8, 2014

      /s/ Deanna Horst
Deanna Horst
Chief Claims Officer for ResCap Liquidating Trust

---

[3] The Debtors, in error, were attempting to return the payment to Ms. Gosselin because the payment was not enough to bring the account current.

5

ny-1167791