## Exhibit A

B 10 (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT    Southern District of New York | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>GMAC Mortgage , LLC | Case Number:<br>12-12032 | |
|---|---|---|

**RECEIVED**

NOV 0 9 2012

KURTZMAN CARSON CONSULTANTS

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Rhonda Gosselin

**COURT USE ONLY**

Name and address where notices should be sent:
c/o Laird J. Heal, Esq
120 Chandler Street, Suite 2 R
Worcester, MA 01609

Telephone number: **(508) 459-5095**    email: lairdheal@lh-law-office.com

☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:** _____
*(If known)*

Filed on: _____

Name and address where payment should be sent (if different from above):



Telephone number:    email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

1. Amount of Claim as of Date Case Filed:    $    319,649.60

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

2. Basis for Claim:    See attached, relating to rescission and servicing violations.
   (See instruction #2)

| 3.  Last four digits of any number by which creditor identifies debtor: | 3a. Debtor may have scheduled account as:<br><br>_____<br>(See instruction #3a) | 3b. Uniform Claim Identifier (optional):<br><br>_ _ _ _ _ _ _ _ _ _ _ _ _ _<br>(See instruction #3b) |
|---|---|---|

4. **Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☑Real Estate  ☐Motor Vehicle  ☐Other
Describe:  Rescission of Mortgage Loan

Value of Property: $    153,669.00

Annual Interest Rate_____% ☐Fixed  or  ☐Variable
(when case was filed)

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:**

$_____

Basis for perfection: _____

Amount of Secured Claim:    $_____

Amount Unsecured:    $_____

5.  Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).  If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

Amount entitled to priority:

$_____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

6.  **Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)



1212032121109000000000036

B 10 (Official Form 10) (12/11)                                                                                                          2

---

7. **Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #7, and the definition of "**redacted**".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**RECEIVED**

**NOV 0 9 2012**

**KURTZMAN CARSON CONSULTANTS**

8. **Signature:** (See instruction #8)

Check the appropriate box.

☐ I am the creditor.  ☑ I am the creditor's authorized agent. (Attach copy of power of attorney, if any.)    ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)    ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:  Laird J.Heal, Esq.
Title:  Attorney
Company:
Address and telephone number (if different from notice address above):

_Laird J. Heal_ _Nov 8, 2012_
(Signature)                                    (Date)

Telephone number:                    email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

### Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

*Laird J. Heal, Esq.*                             *120 Chandler Street*
*Attorney at Law*                                *Worcester, MA 01609*
*Admitted to practice in Massachusetts,*         *Telephone: (508) 450-5095*
*New Hampshire and Illinois*               *Telecopier: (508) 459-5320*

November 8, 2012

Residential Capital Claims Processing Center
c/o KCC
2335 Alaska Avenue
El Segundo, California 90425

Re: **In Re Residential Capital Corp, U.S.Bankruptcy Court (S.D.N.Y.) 12-12020**

<u>By Overnight Delivery</u>

Dear Sirs,

Please find Proofs of Claim for the following creditors in these consolidated cases:

Thomas J. La Casse, 270 Park Drive, Longmeadow, MA 01106 (3 claims)
Rhonda Gosselin 16 (or 25) Rolf Avenue, Chicopee, MA 01020
Robert R. De Simone, 11 Village Road, Acton, MA 01720
Matina De Simone, 11 Village Road, Acton, MA 01720

Sincerely yours,

Laird J. Heal, Esq.

1

# EXHIBIT A

Exhibit A

Damages due to GMAC Mortgage, LLC's conduct

| | |
|---|---|
| Amounts due after rescission (interest paid) | $10,369.53 |
| Points and Fees | $4,388.37 |
| Treble damages after Mass. G. L. ch. 93A demand letter without settlement | $44,273.70 |
| Attorney Fees per Mass. G. L. ch. 93A | $62,831.84 |
| Costs | $618.00 |
| Damages due to disclosures of financial information | |
| Emotional Distress | $100,000.00 |
| Punitive Damages | $100,000.00 |
| | |
| Total | $319,649.60 |

Rescission of mortgage without accepting tender within 40 days:  property at 16 Rolf Avenue aka 25 Rolf Avenue, Chicopee, Mass. 01020 is held free and clear of the mortgage interest assigned to GMAC Mortgage, LLC.

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Chapter 7 |
| | ) | Case 10-30679 |
| Rhonda L Gosselin, | ) | Honorable Henry J. Boroff |
| Debtor | ) | |
| | ) | |
| | ) | |
| Rhonda L Gosselin, | ) | ADVERSARY PROCEEDING |
| Plaintiff | ) | NO.: |
| | ) | |
| v. | ) | |
| | ) | |
| GMAC Mortgage, LLC; Federal National | ) | |
| Mortgage Association; Mortgage Electronic | ) | |
| Registration System; | ) | |
| Defendants | ) | |

**COMPLAINT**

PARTIES AND JURISDICTION

1. Plaintiff Rhonda L. Gosselin (hereinafter referred to as "Gosselin") is a debtor in

the pending Chapter 7 Bankruptcy, Case no. 10-30679, and is an individual residing at 16

Rolf Ave, Chicopee, Massachusetts.

2. Upon information and belief, the Defendant GMAC Mortgage, LLC (hereinafter

referred to as "GMAC") is a mortgage lender with a principal office address of 1100

Virginia Drive, Fort Washington, Pennsylvania 19034.

3. Upon information and belief, the Defendant Federal National Mortgage

Association (hereinafter referred to as "FNMA") is corporation with a principal office

address of 3900 Wisconsin Ave, N.W., Washington, DC 20016.

4. Upon information and belief, the Defendant Mortgage Electronic Registration
System (hereinafter referred to as "MERS") is a corporation with a principal office
address of 1818 Library Street, Suite 300, Reston, VA 20190.

5. Venue of the bankruptcy case underlying this case is in Massachusetts pursuant to
28 USC §1408, and venue of this action is proper pursuant to 28 USC §1409.

6. Jurisdiction is conferred upon this court by 28 USC §§ 1331, 1334, and 1337.

7. The relief sought by this complaint generally affects the adjustment of the debtor-
creditor relationship and therefore is a core proceeding.

## FACTS

8. Ms. Gosselin acquired the property known as 16 Rolf Avenue fka 25 Rolf
Avenue, Chicopee, MA by deed in 1980.

9. Ms. Gosselin obtained a mortgage from Defendant GMAC on July 26, 2006, in
the principal amount of $85,000.00.

10. Defendant GMAC is listed as the "Lender" on said mortgage.

11. MERS is listed as the "nominee for the Lender" on said mortgage.

12. At the time of this loan, GMAC did not verify Ms. Gosselin's income or
employment information.

13. On or around September 1, 2006, Ms. Gosselin began making payments in
accordance with the mortgage and note.

14. On or around June 8, 2007, Ms. Gosselin mailed GMAC a check that represented
two months of mortgage payments.

15. This check, which would have brought Ms. Gosselin's account current, was
"returned" to a woman in Painesville, OH who has no connection to Ms. Gosselin.

16. Ms. Gosselin was contacted by the woman in Ohio, discovered GMAC's error, and contacted GMAC.

17. GMAC would not accept any further payments from Ms. Gosselin unless she entered into a forbearance agreement, which was dated October 31, 2007.

18. On or about October 2007, FNMA, by and through its attorneys, initiated a Complaint in Land Court, seeking to foreclose Ms. Gosselin's property.

19. An Order of Notice was issued by the Land Court on or about October 19, 2007 and Ms. Gosselin was subsequently served with said Order.

20. The Order of Notice states that FNMA is the "holder of a mortgage" on the property with the statutory power of sale.

21. At the time of the complaint and order, FNMA knew or should have known that FNMA did not have a valid assignment of the mortgage, consistent with the statute of frauds, from GMAC or MERS.

22. In accordance with the above-mentioned forbearance agreement, Ms. Gosselin paid on time every single month from October 2007 through May 2008, when another payment was returned to her by GMAC.

23. On September 18, 2008, Ms. Gosselin filed a petition for relief under Chapter 13 of Title 11 of the United States Code.

24. On or around October 7, 2008, Ms. Gosselin received a letter from GMAC and a returned check regarding a borrower in Phoenix, AZ who has no connection to Ms. Gosselin.

25. On or around May 2009, Ms. Gosselin obtained a payment history from GMAC, which shows that many of her payments were not posted to her account correctly, or were not posted all.

26. On or around July 16, 2009, Ms. Gosselin filed a Motion to Dismiss the Chapter 13 bankruptcy proceeding, which was granted on or around July 17, 2009.

27. On or around April 9, 2010, Ms. Gosselin filed a petition for relief under Chapter 7 of Title 11 of the United States Code.

28. Before and throughout the pendency of her bankruptcy proceedings, Ms. Gosselin has attempted to work with GMAC to determine what amount is owed on the loan and to modify the loan.

29. Ms. Gosselin has, at numerous times since October 2007, received correspondence labeled "Notice of Mortgage Foreclosure Sale" (hereinafter referred to as "foreclosure notice"), which states that FNMA is the "present holder of the mortgage".

30. At the time of the foreclosure notice, FNMA knew or should have known that FNMA did not have a valid assignment of the mortgage, consistent with the statute of frauds, from GMAC.

<u>COUNT I – BREACH OF CONTRACT</u>

31. Plaintiff adopts and re-alleges all paragraphs above as if fully restated herein.

32. The note and mortgage given by the Plaintiff to Defendant GMAC defines the method by which monthly installment payments are to be applied to the Plaintiff's loan.

33. Plaintiff alleges that the method of servicing her loan throughout the term of the loan is in contravention of the Plaintiff's rights under the note and mortgage, and quite plain and simply, constitutes a breach of that contract.

34. As a consequence of Defendant's actions, Plaintiff has suffered actual damages in excess fees and costs, and other damages.

WHEREFORE, Plaintiff demands judgment on this count against Defendant for all her damages and interest as found by this Court, attorneys fees and any other relief this Court deems appropriate.

## COUNT II – NEGLIGENCE

35. Defendant GMAC was negligent in the origination, processing, underwriting, closing and/or funding of Plaintiffs mortgage application and loan.  Its conduct fell below the standard of care for mortgage lenders and brokers.

36. Defendant GMAC negligently mailed letters and returned checks to the wrong borrowers, and negligently accounted for payments it received from Plaintiff.

37. Defendant GMAC has a contractual, statutory and lawful duty to ensure that payments received from the Plaintiff are accounted for in a proper manner pursuant to the terms of the Plaintiff's note and mortgage.

38. Defendant failed to discharge this duty, by not properly accounting for and posting payments made by Plaintiff.

39. Additionally, Defendants MERS and FNMA were negligent in the foreclosure process and their conduct fell below the standard of care for mortgage lenders and professionals.

40. As a consequence of Defendants' actions, Plaintiff has suffered actual damages in excess fees and costs, and other damages.

WHEREFORE, Plaintiff demands judgment on this count against all Defendants for
all her damages and interest as found by this Court, attorneys fees and any other relief
this Court deems appropriate.

COUNT III – WRONGFUL FORECLOSURE

41. Plaintiff adopts and re-alleges all paragraphs above as if fully restated herein.

42. Throughout the three years prior to the commencement of this action, the
Defendants sent Plaintiff notices stating that they intended to exercise the statutory power
of sale contained in M.G.L. c. 183, §21, under procedures required by M.G.L. c. 244,
§14.

43. Under the statute of frauds, M.G.L. c. 259, §1, in order to act as an assignee, the
Defendants are required to possess such assignment in writing.

44. The Defendants also sent or published statutorily mandated notices asserting
authority to foreclose by assignments that did not exist.

45. Said notices do not meet the statutory requirements and are void and without legal
effect.

46. The Defendants also represented to the Land Court that they had authority to
exercise powers of sale based on assignments that did not exist at the time of the
representation. The misrepresentations result in void or voidable judgments of the Land
Court.

47. By commencing and noticing a foreclosure by power of sale at a time when
FNMA did not actually hold a written assignment of the mortgage, and by
misrepresenting FNMA's status to the Land Court, the Defendants did not exercise good
faith and/or reasonable diligence and violated M.G.L. c. 183 and c. 244.

48. As a consequence of Defendant's actions, Plaintiff has suffered actual damages in excess fees and costs, and other damages.

WHEREFORE, Plaintiff demands judgment on this count against all Defendants for all her damages and interest as found by this Court, attorneys fees and any other relief this Court deems appropriate.

<u>COUNT IV – UNFAIR AND DECEPTIVE ACTS AND PRACTICES</u>

49. Plaintiff adopts and re-alleges all paragraphs above as if fully restated herein.

50. Defendants are or were in the trade or business of extending credit and engaged in unfair and deceptive acts and practices within the meaning of M.G.L. c. 93A.

51. Defendants acted improperly in extending credit to the Plaintiff without regard to her ability to pay, failing to protect her confidential and private information, failing to properly service the loan and attempting to foreclose on the property without the authority to do so.

52. Defendants, by their improper behavior, caused the Plaintiff severe emotional upset and anxiety.

53. As a consequence of Defendant's actions, Plaintiff has suffered actual damages in excess fees and costs, and other damages.

54. Defendants' unfair and deceptive practices were willful or knowing with the meaning of M.G.L. c. 93A. Accordingly, the Plaintiff is entitled to treble damages together with the award of reasonable attorney's fees, costs and expenses.

WHEREFORE, Plaintiff demands judgment on this count against all Defendants for all her damages and interest as found by this Court, attorneys fees and any other relief this Court deems appropriate.

## COUNT V – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND

### FAIR DEALING

55. Plaintiff adopts and re-alleges all paragraphs above as if fully restated herein.

56. Plaintiff alleges that Defendants in servicing the loan throughout its term have improperly credited monies, or delayed crediting monies, to interest and principal.

57. Plaintiff alleges that the improper credit may have been to the benefit of the Defendants.

58. Plaintiff alleges that the payment history and treatment of payments violates 12 USC 2605, et seq., and further violates M.G.L. c. 93A as an unfair and deceptive practice.

59. As a consequence of Defendant's actions, Plaintiff has suffered actual damages in excess fees and costs, and other damages.

WHEREFORE, Plaintiff demands judgment on this count against all Defendants for all her damages and interest as found by this Court, attorneys fees and any other relief this Court deems appropriate.

### PRAYER FOR RELIEF

WHEREFORE, it is respectfully prayed that this Court:

1. Assume jurisdiction of this case;

2. Declare the foreclosure proceedings on the Plaintiff's home to be void and dismiss any such proceedings;

3. Order the Defendants to provide Plaintiff with a corrected accounting of her loan and payments made;

4.  Order the Defendants to cooperate with the Plaintiff in her efforts to modify the

loan to permit Plaintiff to make payments and maintain her home;

5.  Award Plaintiff statutory damages for the servicing violations;

6.  Award Plaintiff actual damages in an amount to be established at trial;

7.  Award Plaintiff costs and a reasonable attorney fee as provided by consumer

protection statutes;

8.  Award such further and other relief as the Court deems just and proper.

DATED this 24th day of May, 2010.

Rhonda L. Gosselin, Debtor
By her Attorney

/s/ Kimberly L. Stevens
Kimberly L. Stevens
82 Main Street, Suite 4
West Springfield, MA 01089
(413) 306-6030
Fax: (413) 306-6033
info@attorneystevens.com
BBO: 666690

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re Rhonda Gosselin,<br><br>     Debtor<br><br>---<br><br>Rhonda Gosselin,<br>     Plaintiff,<br>     vs.<br>GMAC Mortgage, LLC,<br>Federal National Mortgage Association,<br>and<br>Mortgage Electronic Registration System,<br>     Defendants | Bankruptcy Case No. <u>10-30679-HJB</u><br>Chapter <u>7</u><br><br><br><br>Adversary No. <u>10-03014</u> |

FIRST AMENDED COMPLAINT

PARTIES AND JURISDICTION

1.  Plaintiff Rhonda L. Gosselin (hereinafter referred to as "Gosselin") is a debtor in the pending Chapter 7 Bankruptcy, Case No. 10-30679, and is an individual residing at 16 Rolf Ave, Chicopee, Massachusetts.

2.  Upon information and belief, the Defendant GMAC Mortgage, LLC (hereinafter referred to as "GMAC") is a mortgage lender with a principal office address of 1100 Virginia Drive, Fort Washington, Pennsylvania 19034.

3.  Upon information and belief, the Defendant Federal National Mortgage Association (hereinafter referred to as "FNMA") is corporation with a principal office address of 3900 Wisconsin Ave, N.W., Washington, DC 20016.

4.  Upon information and belief, the Defendant Mortgage Electronic Registration System (hereinafter referred to as "MERS") is a corporation with a principal office address of 1818 Library Street, Suite 300, Reston, VA 20190.

5.  Venue of the bankruptcy case underlying this case is in Massachusetts pursuant to 28 USC §1408, and venue of this action is proper pursuant to 28 USC §1409.

6.  Jurisdiction is conferred upon this court by 28 USC §§ 1331, 1334, and 1337.

7.  The relief sought by this complaint generally affects the adjustment of the debtor-creditor relationship and therefore is a core proceeding.

## FACTS

8.   Ms. Gosselin acquired the property known as 16 Rolf Avenue fka 25 Rolf Avenue, Chicopee,
MA by deed in 1980.

9.   Ms. Gosselin obtained a mortgage from Defendant GMAC on July 26, 2006, in the principal
amount of $85,000.00.

10.   Defendant GMAC is listed as the "Lender" on said mortgage.

11.   MERS is listed as the "nominee for the Lender" on said mortgage.

12.   At the time of this loan, GMAC did not verify Ms. Gosselin's income or employment
information.

13.   On or around September 1, 2006, Ms. Gosselin began making payments in accordance with
the mortgage and note.

14.   On or around June 8, 2007, Ms. Gosselin mailed GMAC a check that represented two months
of mortgage payments.

15.   This check, which would have brought Ms. Gosselin's account current, was "returned" to a
woman in Painesville, OH who has no connection to Ms. Gosselin.

16.   Ms. Gosselin was contacted by the woman in Ohio, discovered GMAC's error, and contacted
GMAC.

17.   GMAC would not accept any further payments from Ms. Gosselin unless she entered into a
forbearance agreement, which was dated October 31, 2007.

18.   On or about October 2007, FNMA, by and through its attorneys, initiated a Complaint in Land
Court, seeking to foreclose Ms. Gosselin's property.

19.   An Order of Notice was issued by the Land Court on or about October 19, 2007 and Ms.
Gosselin was subsequently served with said Order.

20.   The Order of Notice states that FNMA is the "holder of a mortgage" on the property with the
statutory power of sale.

21.   At the time of the complaint and order, FNMA knew or should have known that FNMA did
not have a valid assignment of the mortgage, consistent with the statute of frauds, from
GMAC or MERS.

22.   In accordance with the above-mentioned forbearance agreement, Ms. Gosselin paid on time
every single month from October 2007 through May 2008, when another payment was
returned to her by GMAC.

23.   On September 18, 2008, Ms. Gosselin filed a petition for relief under Chapter 13 of Title 11 of

the United States Code.

24. On or around October 7, 2008, Ms. Gosselin received a letter from GMAC and a returned check regarding a borrower in Phoenix, AZ who has no connection to Ms. Gosselin.

25. On or around May 2009, Ms. Gosselin obtained a payment history from GMAC, which shows that many of her payments were not posted to her account correctly, or were not posted all.

26. On or around July 16, 2009, Ms. Gosselin filed a Motion to Dismiss the Chapter 13 bankruptcy proceeding, which was granted on or around July 17, 2009.

27. On or around April 9, 2010, Ms. Gosselin filed a petition for relief under Chapter 7 of Title 11 of the United States Code.

28. Before and throughout the pendency of her bankruptcy proceedings, Ms. Gosselin has attempted to work with GMAC to determine what amount is owed on the loan and to modify the loan.

29. Ms. Gosselin has, at numerous times since October 2007, received correspondence labeled "Notice of Mortgage Foreclosure Sale" (hereinafter referred to as "foreclosure notice"), which states that FNMA is the "present holder of the mortgage".

30. At the time of the foreclosure notice, FNMA knew or should have known that FNMA did not have a valid assignment of the mortgage, consistent with the statute of frauds, from GMAC.

## COUNT I - BREACH OF CONTRACT

31. Plaintiff adopts and re-alleges all paragraphs above as if fully restated herein.

32. The note and mortgage given by the Plaintiff to Defendant GMAC defines the method by which monthly installment payments are to be applied to the Plaintiff's loan.

33. Plaintiff alleges that the method of servicing her loan throughout the term of the loan is in contravention of the Plaintiff's rights under the note and mortgage, and quite plain and simply, constitutes a breach of that contract.

34. As a consequence of Defendant's actions, Plaintiff has suffered actual damages in excess fees and costs, and other damages.
WHEREFORE, Plaintiff demands judgment on this count against Defendant for all her damages and interest as found by this Court, attorneys fees and any other relief this Court deems appropriate.

## COUNT II - NEGLIGENCE

35. Defendant GMAC was negligent in the origination, processing, underwriting, closing and/or funding of Plaintiffs mortgage application and loan. Its conduct fell below the standard of care for mortgage lenders and brokers.

36.  Defendant GMAC negligently mailed letters and returned checks to the wrong borrowers, and negligently accounted for payments it received from Plaintiff.

37.  Defendant GMAC has a contractual, statutory and lawful duty to ensure that payments received from the Plaintiff are accounted for in a proper manner pursuant to the terms of the Plaintiff's note and mortgage.

38.  Defendant failed to discharge this duty, by not properly accounting for and posting payments made by Plaintiff.

39.  Additionally, Defendants MERS and FNMA were negligent in the foreclosure process and their conduct fell below the standard of care for mortgage lenders and professionals.

40.  As a consequence of Defendants' actions, Plaintiff has suffered actual damages in excess fees and costs, and other damages.

COUNT III - WRONGFUL FORECLOSURE

41.  Plaintiff adopts and re-alleges all paragraphs above as if fully restated herein.

42.  Throughout the three years prior to the commencement of this action, the Defendants sent Plaintiff notices stating that they intended to exercise the statutory power of sale contained in M.G.L. c. 183, §21, under procedures required by M.G.L. c. 244, §14.

43.  Under the statute of frauds, M.G.L. c. 259, §1, in order to act as an assignee, the Defendants are required to possess such assignment in writing.

44.  The Defendants also sent or published statutorily mandated notices asserting authority to foreclose by assignments that did not exist.

45.  Said notices do not meet the statutory requirements and are void and without legal effect.

46.  The Defendants also represented to the Land Court that they had authority to exercise powers of sale based on assignments that did not exist at the time of the representation. The misrepresentations result in void or voidable judgments of the Land Court.

47.  By commencing and noticing a foreclosure by power of sale at a time when FNMA did not actually hold a written assignment of the mortgage, and by misrepresenting FNMA's status to the Land Court, the Defendants did not exercise good faith and/or reasonable diligence and violated M.G.L. c. 183 and c. 244.

48.  As a consequence of Defendant's actions, Plaintiff has suffered actual damages in excess fees and costs, and other damages.

COUNT IV - UNFAIR AND DECEPTIVE ACTS AND PRACTICES

49.  Plaintiff adopts and re-alleges all paragraphs above as if fully restated herein.

50.  Defendants are or were in the trade or business of extending credit and engaged in unfair and

deceptive acts and practices within the meaning of M.G.L. c. 93A.

51.  Defendants acted improperly in extending credit to the Plaintiff without regard to her ability to pay, failing to protect her confidential and private information, failing to properly service the loan and attempting to foreclose on the property without the authority to do so.

52.  Defendants, by their improper behavior, caused the Plaintiff severe emotional upset and anxiety.

53.  As a consequence of Defendant's actions, Plaintiff has suffered actual damages in excess fees and costs, and other damages.

54.  Defendants' unfair and deceptive practices were willful or knowing with the meaning of M.G.L. c. 93A. Accordingly, the Plaintiff is entitled to treble damages together with the award of reasonable attorney's fees, costs and expenses.

WHEREFORE, Plaintiff demands judgment on this count against all Defendants for all her damages and interest as found by this Court, attorneys fees and any other relief this Court deems appropriate.

COUNT V -  BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

55.  Plaintiff adopts and re-alleges all paragraphs above as if fully restated herein.

56.  Plaintiff alleges that Defendants in servicing the loan throughout its term have improperly credited monies, or delayed crediting monies, to interest and principal.

57.  Plaintiff alleges that the improper credit may have been to the benefit of the Defendants.

58.  Plaintiff alleges that the payment history and treatment of payments violates 12 USC 2605, et seq., and further violates M.G.L. c. 93A as an unfair and deceptive practice.

59.  As a consequence of Defendant's actions, Plaintiff has suffered actual damages in excess fees and costs, and other damages.

WHEREFORE, Plaintiff demands judgment on this count against all Defendants for  all her damages and interest as found by this Court, attorneys fees and any other relief this Court deems appropriate.

COUNT VI -  CONSUMER CREDIT COST DISCLOSURE ACT

60.  Plaintiff realleges and incorporates herein all preceding allegations of this Complaint.

61.  Pursuant to G. L. c. 140D § 12 and its implementing regulation at 209 CMR § 32.15, enacted either pursuant to or consistent with 12 U.S.C. § 2616 of the Truth In Lending Act, GMAC Corporation was to deliver to the Plaintiff a Truth In Lending disclosure statement accurately stating the cost of the loan and its repayment terms no later than three (3) days prior to the

consummation of the loan.

62. According to G. L. c. 140D § 10(i)(2), following a notice of foreclosure of a mortgage loan
secured by the borrower's principal residence within the first four years after the loan is made,
the Truth-In-Lending Disclosure is deemed inaccurate if it overstates the finance charge on the
loan by thirty-five dollars or more.

63. The Truth-In-Lending disclosure stated that there would be 360 payments of 587.08 to satisfy
the Note which lends $85,000 for 360 months at 7.375% annual interest, but if this were the
case there would be a credit balance of at least $8.07 at the end of the loan term.

64. The Truth-In-Lending disclosure states that the Amount Financed is $82,313.83, but this
calculation omits at least a $55 charge for document delivery, which is not excludible. The
actual Finance Charge is thus at least $63.07 greater than that stated.

65. Defendants GMAC and FNMA noticed a foreclosure sale of the Plaintiff's home within the
four years following the consummation of the loan.

66. The Plaintiff was thus not provided with an accurate Truth In Lending Statement.

67. Among the Plaintiff's mortgage papers is also a receipt signed by her acknowledging that she
received two copies of the Notice of Right to Cancel - but there is only one Notice of Right to
Cancel to be found in her mortgage papers.

68. According to 209 CMR. § 32.15 (1) (a), "If the required notice and material disclosures are
not delivered, the right to rescind shall expire four years after the occurrence giving rise to the
right of rescission, or upon transfer of all of the consumer's interest in the property, or upon
sale of the property, whichever occurs first."

69. The Plaintiffs therefore may have her rescission as to the current mortgage holder on the
mortgage loan given her on or about July 26, 2006, according to the Regulation 12 C.F.R. §
226.15 "Right of rescission" part (a)(2).

70. WHEREFORE, the Plaintiff prays the Home Loan with GMAC be rescinded, and in
accordance she have judgment for all fees and interest paid GMAC, their heirs, successors and
assigns in conjunction with their home loan, to have the Defendants record a discharge or
other cancellation of the mortgage lien, and for her fair and reasonable Attorney Fees.

71. According to G. L. c. 140D § 34, a violation of c. 140D is a per se violation of c. 93A, the
consumer protection statute, providing for enhanced damages and attorney fees.

72. WHEREFOR, for the violations of c. 93A, and for which a demand letter was sent more than
30 days prior to filing this Complaint, Plaintiff asks this Court award enhanced damages of
two to three times the amount awarded her, and her fair and reasonable attorney fees.

## COUNT VII - DECLARATORY JUDGMENT
### (Bifurcated Note and Deed)

73. The Plaintiff repeats all allegations made above, whether or not more fully restated below, in Paragraphs 1 through 69.

74. A true copy of the Note was placed into the record of the Bankruptcy Case by Defendant GMAC, bearing a visible although undated indorsement from GMAC Mortgage Corporation to GMAC Mortgage, LLC.

75. Upon information and belief the transfer from GMAC Mortgage Corporation to GMAC Mortgage, LLC, represented no more than a change in method of business organization and did not otherwise affect the real parties in interest or the business operations of the defendants.

76. A true copy of the Mortgage and Assignment were likewise placed into the record of the main case, showing that the mortgage has been assigned to FNMA.

77. However, there is no indication from the record that there is any contractual relationship between MERS, GMAC or FNMA.

78. There is an allegation in the Motion for Relief From Stay (Document #9 in the Bankruptcy Case) that FNMA is the Holder of the Note but this is contradicted by the plainly visible markings on the Note, showing only an indorsement to GMAC Mortgage, LLC.

79. Under applicable state law FNMA does not hold both the mortgage and the note and the mortgage deed of trust, which purports to secure the Note, is ineffective as there is no property right held by FNMA which is actually secured.

80. The interest of the mortgagee, as of the Petition Date, is no more than an illusion.

81. The interest of the Note Holder, as of the Petition Date, is that of an unsecured creditor.

82. WHEREFORE, the Plaintiff prays of this Honorable Court declare the interest of the claimant GMAC Mortgage, LLC, an unsecured obligation.

83. WHEREFORE, the Plaintiff prays of this Honorable Court declare the mortgage interest assigned to FNMA to be void under applicable state law and order the Defendants execute a discharge of the same mortgage which Plaintiff may record with the Registry.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays of this Honorable Court:

1. Assume jurisdiction of this case;

2. Declare the foreclosure proceedings on the Plaintiff's home to be void and dismiss any such proceedings;

3. Order the Defendants to provide Plaintiff with a corrected accounting of her loan and

payments made;

4. Order the Defendants to cooperate with the Plaintiff in her efforts to modify the loan to permit Plaintiff to make payments and maintain her home;

5. Award Plaintiff statutory damages for the servicing violations;

6. Award Plaintiff actual damages in an amount to be established at trial;

7. Rescind the loan made by Plaintiff and order defendants repay the costs and fees paid by her in connection with the loan;

8. Declare the mortgage and note bifurcated and the deed of trust an ineffective instrument which is unsecured and dischargeable by order of this Court or act of the mortgage assignee of record;

9. Award Plaintiff costs and a reasonable attorney fee as provided by consumer protection statutes; and

10. Award such further and other relief as the Court deems just and proper.

Respectfully Submitted for the
Rhonda Gosselin, Plaintiff
By Her Attorney,

/s/ Laird J. Heal
Laird J. Heal  BBO # 553901
120 Chandler Street, #2R
Worcester, MA 01609
Phone 508-459-5095
Facsimile: 508-459-5320

Dated: July 26, 2010

# EXHIBIT C

UNITED STATES BANKRUPTCY COURT, DISTRICT OF MASSACHUSETTS
Proceeding Memorandum/Order of Court

**In Re:** Gosselin v. GMAC Mortgage et al          **Case Number:** 10-03014          **Ch:**

**MOVANT/APPLICANT/PARTIES:**

#57 Motion of Defendants FNMA, GMAC Mortgage and Mortgage Electronic Registration Systems,
Inc. for Summary Judgment

**OUTCOME:**

_____Granted_____Denied_____Approved_____Sustained

_____Denied_____Denied without prejudice_____Withdrawn in open court_____Overruled

_____OSC enforced/released

_____Continued to:_____For:_____

_____Formal order/stipulation to be submitted by:_____Date due:_____

_____Findings and conclusions dictated at close of hearing incorporated by reference

_____Taken under advise ment: Brief(s) due_____From_____

                    Response(s) due_____From_____

_____Fees allowed in the amount of: $_____Expenses of: $_____

_____No appearance/response by:_____

___✔___DECISION SET OUT MORE FULLY BY COURT AS FOLLOWS:


FOR THE REASONS SET FORTH IN OPEN COURT, THE COURT ABSTAINS, PURSUANT TO 28 USC (C)(1) FROM
ANY FURTHER CONSIDERATION OF THIS ADVERSARY PROCEEDING, AND, ACCORDINGLY, DISMISSES SAME,
WITHOUT PREJUDICE.


IT IS SO NOTED:                         IT IS SO ORDERED:

                                        _Henry Jack Boroff_

_____             _____ Dated: 04/18/2012
Courtroom Deputy

# EXHIBIT D

After Recording Return To:

GMAC Mortgage Corp.
100 Witmer Road
Horsham, PA 19044-0963
ATTN:  Records Management

_____ [Space Above This Line For Recording Data] _____

Loan No. ▓▓▓▓9601
MIN ▓▓▓▓▓▓▓▓9601-7

## MORTGAGE

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined
in Sections 3, 11, 13, 18, 20 and 21.  Certain rules regarding the usage of words used in this
document are also provided in Section 16.

(A)    "Security Instrument" means this document, which is dated July 26,
2006    , together with all Riders to this document.
(B)    "Borrower" is
Rhonda L. Gosselin


Borrower is the mortgagor under this Security Instrument.
(C)    "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate
corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.
MERS is the mortgagee under this Security Instrument. MERS is organized and existing
under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint,
MI 48501-2026, tel. (888) 679-MERS.

MASSACHUSETTS -- Single Family -- Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT Form 3022 1/01
*(Page 1 of 18)*    Initials: ▓▓▓    D01
GMACM - CMS.0019.MA (0401)

**(D)    "Lender" is**
GMAC Mortgage Corporation

Lender is a  Corporation                                        organized and existing under the
laws of Pennsylvania                                            . Lender's address is
100 Witmer Road, P.O. Box 963, Horsham, PA  19044

**(E)    "Note"** means the promissory note signed by Borrower and dated July 26,
2006    . The Note states that Borrower owes Lender
Eighty Five Thousand and 00/100

Dollars (U.S. $     85,000.00          ) plus interest.  Borrower has promised to pay this
debt in regular Periodic Payments and to pay the debt in full not later than
August 1, 2036                    .
**(F)    "Property"** means the property that is described below under the heading "Transfer of
Rights in the Property."
**(G)    "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges
and late charges due under the Note, and all sums due under this Security Instrument, plus
interest.
**(H)    "Riders"** means all Riders to this Security Instrument that are executed by Borrower.
The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Biweekly Payment Rider | ☒ 1-4 Family Rider |
| ☐ Other(s) [specify] | ☐ Planned Unit Development Rider | |

**(I)    "Applicable Law"** means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as well
as all applicable final, non-appealable judicial opinions.
**(J)    "Community Association Dues, Fees, and Assessments"** means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by a condominium
association, homeowners association or similar organization.
**(K)    "Electronic Funds Transfer"** means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an electronic
terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize
a financial institution to debit or credit an account.  Such term includes, but is not limited to,
point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone,
wire transfers, and automated clearinghouse transfers.
**(L)    "Escrow Items"** means those items that are described in Section 3.
**(M)    "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages
described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or
other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv)
misrepresentations of, or omissions as to, the value and/or condition of the Property.

MASSACHUSETTS -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3022 1/01
GMACM - CMS.0019.MA (0401) (Page 2 of 18)                         Initials: _____

(N)    "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(O)    "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P)    "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(Q)    "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with the power of sale, the following described property located in the

County

[Type of Recording Jurisdiction]

of  Hampden                                                                                                    :

[Name of Recording Jurisdiction]

Schedule "A" attached hereto and made a part hereof

which currently has the address of
16 Rolf Avenue,

[Street]

Chicopee                        , Massachusetts    01020            ("Property Address"):
[City]                                              [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

MASSACHUSETTS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3022  1/01
GMACM - CMS.0019.MA (0401) (Page 3 of 18)                          Initials: _____

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

LOAN NO: ▓▓▓▓▓▓▓
MASSACHUSETTS -- Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3022 1/01
GMACM - CMS.0019.MA (0401) *(Page 4 of 18)*                    Initials: ▓▓▓

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3.    Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees, and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

LOAN NO: ░░░░░░░░░░░
MASSACHUSETTS -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3022  1/01
GMACM - CMS.0019.MA (0401) *(Page 5 of 18)*                    Initials: _____

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  **Charges; Liens.**  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.  **Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts

MASSACHUSETTS -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3022  1/01
GMACM - CMS.0019.MA (0401) *(Page 6 of 18)*                    Initials: _____

(including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters,

12-12020-mg    Doc 7842-2    Filed 12/08/14    Entered 12/08/14 17:54:45    Exhibit A to
Case 10-03014    Doc 13-1    Filed 07/26/10    Entered 07/26/10 22:22:13    Desc Exhibit
1    Mortgage    Page 8 of 22

Declaration    Pg 35 of 58

or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in

connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the

LOAN NO:
MASSACHUSETTS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3022  1/01
GMACM - CMS.0019.MA (0401) *(Page 9 of 18)*                                    Initials:

amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until the Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

MASSACHUSETTS -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3022 1/01
GMACM - CMS.0019.MA (0401) *(Page 12 of 18)*                    Initials: _____

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All Notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a

LOAN NO:
MASSACHUSETTS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3022  1/01
GMACM - CMS.0019.MA (0401) *(Page 13 of 18)*                    Initials:

prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

MASSACHUSETTS -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3022 1/01
GMACM - CMS.0019.MA (0401) *(Page 14 of 18)*                    Initials: _____

Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that

LOAN NO: [redacted]
MASSACHUSETTS - Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3022  1/01
GMACM - CMS.0019.MA (0401) *(Page 15 of 18)*    Initials: [initials]

adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

MASSACHUSETTS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3022 1/01
GMACM - CMS.0019.MA (0401) *(Page 16 of 18)*                          Initials: _____

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
Rhonda L Gosselin                            -Borrower

_____ (Seal)
                                             -Borrower

_____ (Seal)
                                             -Borrower

_____ (Seal)
                                             -Borrower

Witnesses:

_____    _____

LOAN NO:
MASSACHUSETTS -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3022 1/01
GMACM - CMS.0019.MA (0401) (Page 17 of 18)

EXHIBIT A

The land in Chicopee, Hampden County, Massachusetts, with the buildings thereon, more particularly bounded and described as follows:

Being known and designated as Lots # 85 and # 86 on a Plan of Highland View Terrace belongin g to Jacob W. Wilbur, dated June 20, 1905 and recorded in Hampden County Registry of Deeds, File # 175, being more particularly bounded and described as follows:

Beginning at a point on the northwesterly side of Rolf avenue one hundred sixty (160) feet northeasterly from the intersection of the northwesterly side of Rolf Avenue with the northeasterly side of Grattan Street; thence

Northweesterly seventy (70) feet to Lot # 73 on said plan; thence Northeasterly and parallel with Rolf Avnue, along lot # 72 and # 73 on said plan, sixty (60) feet to Lot # 87 on said plan thence Southeasterly along lot # 87 on said plan, seventy (70) feet to said Rolf Avenue; thence Southwesterly along said Rolf Avenue sixty (60) feet to the place of beginning.

Being the same premises conveyed to Mortgagor herein by deed of Kenneth A. Drummer et al dated June 28, 2002 and recorded in Hampden County Registry of Deeds in Book 12411, Page 411.

1053

## INDIVIDUAL ACKNOWLEDGMENT

COMMONWEALTH OF MASSACHUSETTS,

COUNTY OF Hampden                    } SS

On this    26th    day of July          ,    2006   , before me, the undersigned notary public, personally appeared Rhonda L. Gosselin

proved to me through satisfactory evidence of identification, which were *Mass Driver's License*

to be the person whose name is signed on the preceding or attached document, and acknowledged to me that (he) (she) signed it voluntarily for its stated purpose.

_____
Notary Public Signature

My Commission Expires:

*1-26-12*

MASSACHUSETTS -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3022  1/01
GMACM - CMS.0019.MA (0401) *(Page 18 of 18)*          Initials: _____

# 1-4 FAMILY RIDER
**Assignment of Rents**

THIS 1-4 FAMILY RIDER is made this  26th    day of  July                                 ,
2006       ,and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given
by the undersigned (the "Borrower") to secure Borrower's Note to

GMAC Mortgage Corporation

(the "Lender") of the same date and covering the Property described in the Security Instrument
and located at:

16 Rolf Avenue
Chicopee, MA 01020
[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In
addition to the Property described in the Security Instrument, the following items now or
hereafter attached to the Property to the extent they are fixtures are added to the Property
description, and shall also constitute the Property covered by the Security Instrument: building
materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or
used, or intended to be used in connection with the Property, including, but not limited to, those
for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and
light, fire prevention and extinguishing apparatus, security and access control apparatus,
plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators,
dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds,
shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor
coverings, all of which, including replacements and additions thereto, shall be deemed to be and
remain a part of the Property covered by the Security Instrument.  All of the foregoing together
with the Property described in the Security Instrument (or the leasehold estate if the Security
Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument
as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree
to or make a change in the use of the Property or its zoning classification, unless Lender has
agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations
and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not
allow any lien inferior to the Security Instrument to be perfected against the Property without
Lender's prior written permission.

LOAN NO:
MULTISTATE 1-4 FAMILY RIDER - Single Family -
Fannie Mae/Freddie Mac Uniform Instrument  Form 3170-1/01
*Page 1 of 3*    356010182      Initials:
GMACM - CRM.0043.1-4FAM (0411)

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

LOAN NO.

MULTISTATE 1-4 FAMILY RIDER - Single Family - Fannie Mae/Freddie Mac Uniform Instrument  Form 3170 1/01
GMACM - CRM.0043.1-4FAM (0411)          Page 2 of 3          Initials:

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_____ (Seal)
Rhonda L Gosselin                                                          -Borrower

_____ (Seal)
                                                                           -Borrower

_____ (Seal)
                                                                           -Borrower

_____ (Seal)
                                                                           -Borrower

LOAN NO: ▓▓▓▓▓▓▓
MULTISTATE 1-4 FAMILY RIDER - Single Family - Fannie Mae/Freddie Mac Uniform Instrument  Form 3170 1/01
GMACM - CRM.0043.1-4FAM (0411)              Page 3 of 3

# EXHIBIT E

# NOTE

July 26, 2006                    South Hadley                    ·                    MA
         *[Date]*                        *[City]*                                    *[State]*


16 Rolf Avenue, Chicopee, MA 01020
*[Property Address]*

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 85,000.00            (this amount is called
"Principal"), plus interest, to the order of the Lender. The Lender is

GMAC Mortgage Corporation

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who
is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a
yearly rate of       7.375     %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in
Section 6(B) of this Note.

## 3.  PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the First    day of each month beginning on  September 1
2006     . I will make these payments every month until I have paid all of the principal and interest and any other
charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due
date and will be applied to interest before Principal. If, on August 1, 2036
I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 780, Waterloo, IA 50702-0780, ATTN:
Payment Processing                              or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 587.08

## 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is
known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may
not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will
use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply
my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce
the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the
amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest
or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any
such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums
already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make
this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces
Principal, the reduction will be treated as a partial Prepayment.

## 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15       calendar days
after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  3.000           %
of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount
by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been
paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is
mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described
above, the Note Holder will still have the right to do so if I am in default at a later time.

LOAN NO: ███████0601
MULTISTATE FIXED RATE NOTE -- Single Family - Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT   Form 3200 1/01
*(Page 1 of 2)*                    Initials: R J J
GMACM - CNM.0061.FIX (0401)

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

### 7.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

### 8.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note, is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

### 9.   WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor.  "Presentment" means the right to require the Note Holder to demand payment of amounts due.  "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

### 10.   UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
Rhonda L Gosselin                -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

*[Sign Original Only]*

MULTISTATE FIXED RATE NOTE – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3200   1/01
GMACM - CNM.0061.FIX (0401) *(Page 2 of 2)*

# EXHIBIT F

**A. Settlement Statement**

U.S. Department of Housing
And Urban Development

HUD-1 (3/86)    OMB No. 2502-0265

**B. Type of Loan**

| 1. ☐ FHA | 2. ☐ FmHA | 3. ☐ CONV. UNINS. | 6. File Number: Gosselin | 7. Loan Number: | 8. Mortgage Ins. Case No.: |
|---|---|---|---|---|---|
| 4. ☐ VA | 5. ☐ CONV. INS. | | | | |

**C. Note:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name and Address of Borrowers: | F. Name and Address of Lender: |
|---|---|
| Rhonda L. Gosselin | GMAC Mortgage Corporation |
| 16 Rolf Avenue | 100 Witmer Road |
| Chicopee, MA  01020 | Horsham, PA |

| E. Name and Address of Sellers: | H. Settlement Agent: |
|---|---|
| | Marjorie B. Dunn |
| | The Village Commons |
| | South Hadley, MA  01075 |

| G. Property Location: | I. Settlement Date: | Place of Settlement: |
|---|---|---|
| 16 Rolf Avenue | 07/26/2006 | Marjorie B. Dunn |
| Chicopee, MA  01020 | | The Village Commons South Hadley, MA  01075 |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100. Gross Amount Due From Borrower** | | **400. Gross Amount Due To Seller** | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 4,388.37 | 403. | |
| 104. payoff Aldenville Credit Union | 24,559.46 | 404. | |
| 105. payoff of credit cards (see attached) | 41,528.45 | 405. | |
| **Adjustments for items paid by seller in advance** | | **Adjustments for items paid by seller in advance** | |
| 106. City/town taxes           to | | 406. City/town taxes           to | |
| 107. County taxes              to | | 407. County taxes              to | |
| 108. Assessments               to | | 408. Assessments               to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. Gross Amount Due From Borrower** | $70,476.28 | **420. Gross Amount Due To Seller** | $0.00 |
| **200. Amounts Paid By Or In Behalf Of Borrower** | | **500. Reductions In Amount Due To Seller** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 85,000.00 | 502. Settlement charges to seller (line 1400) | 0.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff 1 | |
| 205. | | 505. Payoff 2 | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| **Adjustments for items unpaid by seller** | | **Adjustments for items unpaid by seller** | |
| 210. City/town taxes           to | | 510. City/town taxes           to | |
| 211. County taxes              to | | 511. County taxes              to | |
| 212. Assessments               to | | 512. Assessments               to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total Paid By/For Borrower** | $85,000.00 | **520. Total Reductions Amount Due Seller** | $0.00 |
| **300. Cash At Settlement From/To Borrower** | | **600. Cash At Settlement To/From Seller** | |
| 301. Gross amount due from borrower (line 120) | $70,476.28 | 601. Gross amount due to seller (line 420) | $0.00 |
| 302. Less amount paid by/for borrower (line 220) | ($85,000.00) | 602. Less reductions in amount due seller (line 520) | $0.00 |
| **303. CASH ☐ FROM ☑ TO  BORROWER:** | $14,523.72 | **603. CASH ☑ TO ☐ FROM  SELLER:** | $0.00 |

Buyer's Initials _____          Seller's Initials _____

1030

Settlement Statement Page 2

**Settlement Statement    Page 2 of 2**

| L. Settlement Charges | | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|---|
| 700. Total Sales/Broker's Commission based on price  $ | | 4 | | |
| Division of Commission (line 700) as follows: | | | | |
| 701. | to | | | |
| 702. | to | | | |
| 703. Commission paid at Settlement | | | | |
| 704. | | | | |
| 800. Items Payable in Connection With Loan | | | | |
| 801. Loan Origination Fee  1.00 % GMAC Mortgage Corporation | | | 850.00 | |
| 802. Loan Discount  1.00 % GMAC Mortgage Corporation | | | 850.00 | |
| 803. Appraisal Fee to Robert Salvon Associates | POC | 450.00 | | |
| 804. Credit Report to GMAC Mortgage $ 4.35 total | POC | 6.50 | (2.15) | |
| 805. Lender's Inspection Fee | | | | |
| 806. Mortgage Insurance Application Fee | | | | |
| 807. Assumption Fee | | | | |
| 808. Flood Certification to Home Connect Land | | | 19.00 | |
| 809. Tax Service Fee to Home Connects | | | 85.00 | |
| 810. underwriting loan review fee to GMAC Mortgage | | | 195.00 | |
| 811. Processing fee to GMAC Mortgage | | | 95.00 | |
| 812. lender's document prep to GMAC Mortgage | | | 295.00 | |
| 813. | | | | |
| 814. | | | | |
| 815. | | | | |
| 900. Items Required By Lender To Be Paid In Advance | | | | |
| 901. Interest from  07/31/2006 to 07/31/2006  @  17.17 / day | | | 17.17 | |
| 902. Mortgage Insurance Premium for  mo. to | | | | |
| 903. Hazard Insurance Premium for  yrs. to | | | | |
| 904.  yrs. to | | | | |
| 1000. Reserves Deposited With Lender | | | | |
| 1001. Hazard Insurance  months @  per month | | | | |
| 1002. Mortgage Insurance  months @  per month | | | | |
| 1003. City property taxes  5  months @  171.37  per month | | | 856.85 | |
| 1004.  months @  per month | | | | |
| 1005.  months @  per month | | | | |
| 1006.  months @  per month | | | | |
| 1007.  months @  per month | | | | |
| 1008. Aggregate Adjustment | | | 0.00 | |
| 1100. Title Charges | | | | |
| 1101. Settlement or closing fee to | | | | |
| 1102. Abstract or title search to | | | | |
| 1103. Title examination to | | | | |
| 1104. Title insurance binder to | | | | |
| 1105. Document preparation to | | | | |
| 1106. Notary fees to | | | | |
| 1107. Attorney's fees to  Marjorie Dunn | | | 525.00 | |
| (includes above item Numbers: 1101-1107 | | ) | | |
| 1108. Title insurance to  First American Title Insurance Company | | | 212.50 | |
| (includes above item Numbers: 1109 | | ) | | |
| 1109. Lender's coverage  85,000.00  Loan Premium: $212.50 | | | | |
| 1110. Owner's coverage | | | | |
| 1111. | | | | |
| 1112. Declaration of Homestead to Registry of Deeds | | | 35.00 | |
| 1113. Title Agent Commission $148.75  70% | | | | |
| 1200. Government Recording and Transfer Charges | | | | |
| 1201. Recording fees:  Deed  ; Mortgage  175.00  ; Releases | | | 175.00 | |
| 1202. City/county tax stamps:  Deed  ; Mortgage | | | | |
| 1203. State tax/stamps:  Deed  ; Mortgage | | | | |
| 1204. | | | | |
| 1300. Additional Settlement Charges | | | | |
| 1301. Survey to | | | | |
| 1302. wire fee to PeoplesBank | | | 10.00 | |
| 1303. overnight mail for payoff/return packet to Postmaster | | | 40.00 | |
| 1304. final inspection fee to Robert Salvon Associates | | | 75.00 | |
| 1305. document delivery fee to Marjorie Dunn | | | 55.00 | |
| 1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | | | $4,388.37 | $0.00 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement (pages 1 and 2).

Borrowers                                                      Sellers

_Rhonda L. Gosselin_
Rhonda L. Gosselin

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

Settlement Agent _____   Date   07/26/2006
                    Marjorie B. Dunn, Esquire

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

# EXHIBIT G

**FEDERAL TRUTH IN LENDING DISCLOSURES**

CREDITOR   GMAC Mortgage Corporation
181 Park Avenue
West Springfield, MA 01089

DATE  07/25/2006

LOAN NO.

BORROWER(S)   Rhonda L Gosselin

ADDRESS   16 Rolf Avenue
CITY STATE/ZIP   Chicopee, MA 01020

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid when you have made all scheduled payments. |
| 7.750      % | $   129,034.97 | $   82,313.83 | $   211,348.80 |

PAYMENT SCHEDULE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE Monthly BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE Monthly BEGINNING |
|---|---|---|---|---|---|
| 360 | 587.08 | 09/01/2006 | | | |

DEMAND FEATURE:   [xx] This loan does not have a Demand Feature.    [ ] This loan has a Demand Feature.

VARIABLE RATE FEATURE:
[ ] This Loan has a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

SECURITY: You are giving a security interest in the property located at:   16 Rolf Avenue, Chicopee, MA 01020

ASSUMPTION: Someone buying this property   [xx] cannot assume the remainder of the mortgage on the original terms.
[ ] may, subject to conditions, be allowed to assume the remainder of the mortgage on the original terms.

FILING FEES:   $        $250.00        e

LATE CHARGE:   If your payment is more than   15   days late, you will be charged a late charge of        3.000   % of
the entire payment.

PREPAYMENT:   If you pay off your loan early, you
[ ] may   [xx] will not        have to pay a penalty.
[ ] may   [xx] will not        be entitled to a refund of part of the finance charge.

See your contract documents for any additional information about non-payment, default, any required payment in full before the scheduled date, and prepayment refunds and penalties.

"e" means an estimate        [ ] All numerical disclosures, except the late payment disclosures, are estimates.

INSURANCE:   [xx] Homeowner's insurance, or fire and extended coverage, is required as a condition of the loan. Also, if the property securing this loan is located in a flood hazard area, you will be required to obtain flood insurance. You may obtain property insurance from anyone you want, provided the insurer is acceptable to us.

All disclosures are based on a loan closing date of   July 26, 2006
I/We hereby acknowledge receiving a completed copy of this disclosure.

_Rhonda L Gosselin_        JUL 2 6 2006

Rhonda L Gosselin                BORROWER/DATE                                BORROWER/DATE

_____        _____        _____
                               BORROWER/DATE                                BORROWER/DATE

If mailed by: _____        Date: _____

GMACM - APM.0327 (9902)

12-12020-mg    Doc 7842-2    Filed 12/08/14    Entered 12/08/14 17:54:45    Exhibit A to
Declaration    Pg 58 of 58
Case 10-03014    Doc 13-3    Filed 07/26/10    Entered 07/26/10 22:22:13    Desc Exhibit
3    Schedule of Fees and Charges    Page 1 of 1

TITLE/ORDER #: Gosselin
PROPERTY: 16 Rolf Avenue,
Chicopee, MA 01020

LOAN #: GMAC Mortgage Corp.

## SCHEDULE OF SETTLEMENT FEES AND CHARGES

Loan Amount: $    85,000.00

| ITEMS PAYABLE IN CONNECTION WITH LOAN: | | | PAID FROM BORROWER'S FUNDS | PAID FROM SELLER'S FUNDS |
|---|---|---|---|---|
| Loan Origination Fee   1.000 % to: GMAC Mortgage Corp | 850.00tot | | 850.00 | |
| Loan Discount Fee   1.000 % to: GMAC Mortgage Corp | 850.00tot | | 850.00 | |
| Appraisal Fee  to: Robert Salvon Asso | 450.00tot | 450.00poc | | |
| Credit Report Fee | 4.15tot | 6.50poc | .2.15 | |
| Tax Service Contract  to: Home Connects Lend | 85.00tot | | 85.00 | |
| Underwriting/Loan Review Fee  to: GMAC Mortgage | 195.00tot | | 195.00 | |
| Loan Processing Fee  to: GMAC Mortgage | 95.00tot | | 95.00 | |
| Lender's Doc Prep Fee  to: GMAC Mortgage | 295.00tot | | 295.00 | |
| Life of Loan Flood Cert  to: Home Connects Lend | 19.00tot | | 19.00 | |

| ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE: | | | | |
|---|---|---|---|---|
| Prepaid Interest from 07/31/2006 to 08/01/2006   1 days @ $ 17.17 /day | | | 17.17 | |

| RESERVES DEPOSITED WITH LENDER: | | | | |
|---|---|---|---|---|
| County Prop Tax Escrows 5 mos.  @ $ 171.37 /mo. | 856.85tot | | 856.85 | |
| Aggregate Acct. Adjustment | | | 0.00 | |

| TITLE CHARGES: | | | | |
|---|---|---|---|---|
| Attorney's Fees  to: Marjorie B. Dunn | 525.00tot | | 525.00 | |
| Lender's Coverage   $85,000.00 | 279.13tot | | 279.13 | |
| Attorney / Title Courier Fee  to: Marjorie Dunn | 40.00tot | | 40.00 | |
| Attorney/Title Wire Fee  to: Marjorie Dunn | 10.00tot | | 10.00 | |

| GOVERNMENT RECORDING AND TRANSFER CHARGES: | | | | |
|---|---|---|---|---|
| Recording fees | 175.00tot | | 175.00 | |
|   - Recording Fee - Mortgage  to:  175.00 | | | | |

| ADDITIONAL SETTLEMENT CHARGES: | | | | |
|---|---|---|---|---|
| Survey | 50.00tot | | 50.00 | |
| Final Inspection  to: Robert Salvon Asso | 75.00tot | | 75.00 | |
| Document Delivery | 55.00tot | | 55.00 | |

TOTAL SETTLEMENT CHARGES:

**DO NOT INCREASE, DIMINISH OR OTHERWISE CHANGE THESE FIGURES WITHOUT FIRST OBTAINING
APPROVAL FROM** GMAC Mortgage Corporation

## NO CREDIT IS TO BE GIVEN TO THE BORROWER WITHOUT FIRST OBTAINING OUR APPROVAL

| | | | |
|---|---|---|---|
| | - Third Party | poc | - Paid Outside Closing |
| L | - Lender | tot | - Total Fee Amount |
| db | - Direct Bill | POCL | - Paid Outside Closing Lender |