**Hearing Date: February 11, 2015 at 10:00 a.m. (ET)**
**Objection Deadline: January 8, 2015 at 4:00 p.m. (ET)**

| | |
|---|---|
| MORRISON & FOERSTER  LLP | REED SMITH LLP |
| 250 W. 55th Street | Three Logan Square |
| New York, New York 10019 | Suite 3100 |
| Telephone:    (212) 468-8000 | Philadelphia, Pennsylvania 19013 |
| Facsimile:    (212) 468-7900 | Telephone:    (215) 851-8100 |
| Gary S. Lee | Facsimile:    (215) 851-1420 |
| Norman S. Rosenbaum | Barbara K. Hager *(admitted pro hac vice)* |
| Jordan A. Wishnew | |

*Counsel for the ResCap Borrower*          *Litigation Counsel for the ResCap Borrower*
*Claims Trust*                               *Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------
                                          )
In re:                                    )    Case No. 12-12020 (MG)
                                          )
RESIDENTIAL CAPITAL, LLC, <u>et</u> <u>al</u>.,    )    Chapter 11
                                          )
                        Debtors.          )    Jointly Administered
                                          )
---------------------------------------------------------------------

**RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO**
**PROOF OF CLAIM NO. 5257 FILED BY KENNETH TAGGART**

# TABLE OF CONTENTS

**Page**

JURISDICTION, VENUE AND STATUTORY PREDICATE ................................................... 1

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND ............................................................................................................ 3

    I.      General Overview .............................................................................................. 3

    II.     The Proof of Claim ........................................................................................... 4

    III.   Claimant's Relationship With the Debtors ....................................................... 4

        A.     Loan Origination ................................................................................... 4

        B.     Hazard Insurance and the Escrow Account .......................................... 5

    IV.   The Actions ..................................................................................................... 10

        A.     The Foreclosure Action ....................................................................... 11

        B.     The First Federal Action ...................................................................... 13

        C.     The Second Federal Action .................................................................. 14

        D.     The Adversary Proceeding ................................................................... 15

RELIEF REQUESTED .................................................................................................. 15

OBJECTION ............................................................................................................... 16

    I.      The Taggart Claim is Not Properly Asserted Against ResCap ........................... 16

    II.     The Claim is Not Supported by Sufficient Documentation ................................ 17

    III.   The Taggart Claim Should be Disallowed to the Extent it Relies on the
            Counterclaim, Which Fails to Assert a Meritorious Claim ............................... 19

        A.     GMACM Was Entitled to Foreclose and the Foreclosure Action
              Was Not Illegal .................................................................................... 19

            (i)     GMACM Had Standing to Foreclose ......................................... 21

            (ii)    The Mortgage is Valid and Enforceable Despite a
                    Reference to Bucks County ........................................................ 23

            (iii)   GMACM Properly Notified Claimant of Default and of its
                    Intent to Foreclose .................................................................... 24

            (iv)   The Verification was Executed and Filed ................................... 27

        B.     Count I of the Counterclaim Seeking Declaratory Judgment is
              Moot, Requests the Same Relief as Count III Seeking to Quiet
              Title, and Like Count III, Fails to State a Claim Upon Which
              Relief May be Granted .......................................................................... 28

# TABLE OF CONTENTS
(continued)

**Page**

C. Count II of the Counterclaim (Wrongful Foreclosure) is Moot, Requests the Same Relief as Counts I and III, and Fails To State A Claim Upon Which Relief May Be Granted ............................................ 29

D. Count III of the Counterclaim Seeking to Quiet Title Fails To State a Claim Upon Which Relief May be Granted ......................................... 30

E. Count IV of the Counterclaim (Slander of Title) Fails to Adequately Plead and State a Claim Upon Which Relief May be Granted .................................................................................................. 34

F. Count V of the Counterclaim (Negligence) and Count VII of the Counterclaim (UTPCPL) Are Barred By The Gist Of The Action Doctrine .................................................................................................. 34

G. Count V of the Counterclaim (Negligence) and Count VII of the Counterclaim (UTPCPL) Are Barred By The Economic Loss Doctrine .................................................................................................. 38

H. Count V of the Counterclaim Fails To State A Negligence Claim Because the Lender/Borrower Relationship Does Not Create a Separate Duty Of Care and Claimant Has Failed to Allege Facts to Support Causation ..................................................................................... 39

I. Count VI of the Counterclaim (FCEUA) and Count VII of the Counterclaim (UTPCPL) Fail To State A Claim as Each ts Inapplicable to the Loan Transaction ........................................................ 41

J. Count VI of the Counterclaim (FCEUA) Fails To State A Claim As Consumers Do Not Have A Private Right Of Action Under The FCEUA ................................................................................................... 42

K. Count IX of the Counterclaim Fails To Adequately Plead or State A Claim for Invasion of Privacy ................................................................ 43

L. Claimant's MPICA Claim Should Be Denied and Expunged Because It Does Not Adequately Plead Nor State a Claim Upon Which Relief May Be Granted ................................................................ 46

M. Claimant's Breach of Contract Claim (Count X) Fails for Failure to Allege Any Damages Caused By GMACM's Alleged Breach of the Mortgage Contract And Is Otherwise Precluded by Claimant's Material Breaches of the Mortgage Agreement and Subsequent Repayment Plan, by Which He Ratified His Material Obligations under the Mortgage, Notwithstanding His Dispute as to the Accuracy of the Escrow Calculations and Other Alleged Breaches by GMACM ............................................................................................. 48

# TABLE OF CONTENTS
(continued)

Page

(i)    Count X of the Counterclaim Fails to State a Viable Claim for Breach of Contract ................................................................ 48

(ii)   The Allegations that GMACM Breached the Mortgage By Charging "Excessive Fees and Interest" and Charging For Lender Placed Insurance Do Not State a Claim for Breach of Contract ................................................................ 53

N.    Even Assuming Arguendo that GMACM Had Breached the Mortgage Agreement, Claimant's Own Breaches Preclude Him from Obtaining Damages for Breach and/or Negate Any Chance for Recovery by Restricting Any Possible Recovery to Damages He Could Prove in Excess of the Losses Caused by His Breach............ 55

(i)    Claimant Breached and Defaulted Under the Mortgage.............. 56

(ii)   Claimant's Material Breaches Preclude Recovery for any Comparatively Non-Material Breach by GMACM ................... 58

IV.   The Complaint in the First Federal Action and Second Federal Action Fail to Satisfy Basic Pleading Standards and Any Claim Based Thereon Must be Disallowed and Expunged................................................................. 60

A.    The First Federal Action ........................................................ 61

(i)    Claimant's Constitutional Claims of Due Process Violations and a Taking (Counts 1-4, 12-13) Cannot Survive Against GMACM, a Non-Governmental Entity That Did Not Act "Under Color of State Law" .......................... 61

(ii)   Claimant's Claim for Restraint of Trade (Count 5) Is Not Viable ................................................................. 63

(iii)  Claimant's Claims for Defamation and Tortious Conduct (Counts 6 & 7) Are Barred by the Gist of the Action Doctrine ................................................................. 64

(iv)  Claimant's Claim of a UTPCPL Violation (Count 8) is Barred By the Economic Loss Rule And Even If That Were Not So, Claimant Fails to State a Prima Facie Claim under the UTPCPL ................................................................. 65

(v)   Catch-All Claim for Relief Invoking All Applicable Laws (Count 9) ................................................................. 66

B.    The Second Federal Action ................................................... 66

V.   The Adversary Complaint Fails to Establish Any Right to Relief...................... 67

A.    Count I and Count VIII of the Adversary Complaint Fail to Plead a RICO Claim Under 18 U.S.C. § 1962(c) or (d) ........................................ 67

# TABLE OF CONTENTS
(continued)

**Page**

| | | | |
|---|---|---|---|
| | (i) | Claimant Does Not Plead the Elements of a § 1962(c) RICO Claim | 68 |
| | (ii) | Claimant Has Failed to Plead That GMACM "Conducted," i.e., Participated in the Operation or Management of Affairs of an Enterprise | 74 |
| | (iii) | Claimant Has Not Sufficiently Alleged the Additional Requisite Elements of a "Pattern" of "Racketeering" Activity | 76 |
| B. | | Claimant Has Not Stated a RICO Conspiracy Claim under 18 U.S.C. § 1962(d) | 83 |
| | (i) | A Claim under § 1962(d) Cannot Survive if There is Not a § 1962(c) Violation | 83 |
| | (ii) | Claimant Has Not Adequately Pled a Knowing Agreement to Participate in Racketeering Activity | 84 |
| C. | | Mail and Wire Fraud - Count VIII | 85 |
| D. | | False Claims Act - Count XI | 86 |
| | (i) | Claimant Did Not Fulfill Procedural Requirements For Purposes of Pursuing a Qui Tam Claim Under the FCA | 86 |
| | (ii) | Claimant Has Not Pled a False Claim With the Particularity Required by Rule 9(b) | 87 |
| VI. | | RESERVATION OF RIGHTS | 90 |
| | | NOTICE | 90 |
| | | CONCLUSION | 90 |

# TABLE OF AUTHORITIES

**Page(s)**

CASES

300 Broadway v. Martin Friedman Assocs., P.C.,
  No. 08-5514(KSH), 2009 WL 3297558 (D.N.J. Oct. 13, 2009).................................69, 70, 72

Acme Mkts. Inc. v. Fed. Armored Exp., Inc.,
  648 A.2d 1218 (Pa. Super. Ct. 1994) ....................................................................................58

Acosta v. Campbell,
  No. 04cv7610RL28DAB, 2006 WL 146208 (M.D. Fla. Jan. 18, 2006)...........................75, 82

Adams v. Copper Beach Townhouse Cmtys., L.P.,
  816 A.2d 301 (Pa. Super. Ct. 2003) ......................................................................................38

Anderson Contracting Co. v. Daugherty,
  417 A.2d 1227 (Pa. Super. Ct. 1979) ....................................................................................25

Ashcroft v. Iqbal,
  556 U.S. 662 (2009)..........................................................................................61, 63, 75

Atkins v. Wachovia Bank, N.A.,
  No. 0948, 2007 WL 5479841 (Pa. Ct. Comm. Pl. Phila. Co. Dec. 4, 2007) ...................36, 40

Atkinson v. Anadarko Bank and Trust Co.,
  808 F.2d 438 (5th Cir. 1987) ...........................................................................................75, 82

Balderston v. Medtronic Sofamor Danek, Inc.,
  285 F.3d 238 (3d Cir. 2002)..................................................................................................41

Beckett v. Laux,
  577 A.2d 1341 (Pa. Super. Ct. 1990)...............................................................................25, 26

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2006).......................................................................................................61, 66

Beneficial Consumer Discount Co. v. Vukman,
  77 A.3d 547 ...........................................................................................................................19

Binder v. Triangle Publ'ns, Inc.,
  275 A.2d 53 (Pa. 1971) .........................................................................................................45

Birchall v. Countrywide Home Loans, Inc.,
  No. 08-2447, 2009 WL 3822201 (E.D.P.A. Nov. 12, 2009) ............................................12, 55

Bochetto v. Gibson,
    860 A.2d 67 (Pa. 2004) ...........................................................................45

Bologna v. Allstate Ins. Co.,
    138 F. Supp. 2d 310 (E.D.N.Y. 2001) ...................................................80

Bougher v. Univ. of Pittsburgh,
    882 F.2d 74 (3d Cir. 1989)......................................................................63

Close v. Edison (In re Close),
    No. 93-17145-DWS, 2003 WL 22697825 (Bankr. E.D. Pa. Oct. 29, 2003) ..........................42

Commonwealth of Pa. v. Sch. Dist. of Phila.,
    562 A.2d 313 (Pa. 1989).........................................................................28

Corestates Bank, N.A. v. Cutillo,
    723 A.2d 1053 (Pa. Super. Ct. 1999).....................................................48

Corsello v. Lincare, Inc.,
    428 F.3d 1008 (11th Cir. 2005) ..............................................................87

Cortez v. Keystone Bank, Inc.,
    No. 98-2457, 2000 WL 536666 (E.D. Pa. May 2, 2000)...........................36, 38, 40

Cunningham v. McWilliams,
    714 A.2d 1054 (Pa. Super. Ct. 1998) .....................................................20

Delta Educ., Inc. v. Langlois,
    719 F. Supp. 42 (D.N.H. 1989)...............................................................85

Ericson v. Syracuse Univ.,
    35 F. Supp. 2d 326 (S.D.N.Y. 1999).......................................................78

Ertel v. Patriot-News Co.,
    674 A.2d 1038 (Pa. 1996) .......................................................................19

Etoll, Inc. v. Elias/Savion Adver., Inc.,
    811 A.2d 10 (Pa. Super. Ct. 2002)......................................................34, 35

Fed. Savs. & Loan Assoc. of Erie v. McAfee,
    15 Pa. D. & C.3d 287 (Erie Cty. Ct. 1980).............................................55

Ferrer v. Trs of Univ. of Pa.,
    825 A.2d 591 (Pa. 2002).........................................................................49

First Capital Asset Mgmt., Inc. v. Satinwood, Inc.,
    385 F.3d 159 (2d Cir. 2004).....................................................................68

Fisher v. Hill,
        81 A.2d 860 (Pa. 1951) ........................................................................................27

Forman v. Cheltenham Nat'l Bank,
        502 A.2d 686 (Pa. Super. Ct. 1985) ....................................................................34

Gabriel v. O'Hara,
        534 A.2d 488 (Pa. Super. Ct. 1987) ....................................................................41

George H. Althof, Inc. v. Spartan Inns of Am., Inc.,
        441 A.2d 1236 (Pa. Super. 1982) ........................................................................28

Giordano v. Ridge,
        737 A.2d 350 (Pa. Commonw. Ct. 1999), aff'd, 753 A.2d 1277 (2000) ................38

Glazer v. Chandler,
        200 A.2d 416 (Pa. 1964) ....................................................................................35

Gordon v. Palumbo,
        No. 07.............................................................................................................80

Greenberg v. Aetna Ins. Co.,
        235 A.2d 576 (Pa. 1967) ....................................................................................46

Growall v. Maietta,
        931 A.2d 667 (Pa. Super. Ct. 2007) ....................................................................41

Gulnac v. S. Butler Cnty. Sch. Dist.,
        587 A.2d 699 (Pa. 1991) ....................................................................................29

Harris v. Easton Publ'g Co.,
        483 A.2d 1377 (Pa. Super. Ct. 1984) ..................................................................44

Hart v. Arnold,
        884 A.2d 316 (Pa. Super. Ct. 2005) ....................................................................65

Hecht v. Commerce Clearing House, Inc.,
        897 F.2d 21 (2d Cir. 1990)..................................................................................84

Heffernan v. HSBC Bank USA,
        No. 99cv07981, 2001 WL 803719 (E.D.N.Y. Mar. 29, 2001) ..............73, 77, 78, 85

Holloway v. Bristol–Myers Corp.,
        485 F.2d 986, 987 (D.C. Cir.1973) ......................................................................64

Hopkins v. Albee York Homes, Inc.,
        42 Pa. D. & C. 2d 211 (Pa. Ct. Com. Pl. York Co. 1967) ......................................24

Hospicomm, Inc. v. Fleet Bank, N.A.,
    338 F. Supp. 2d 578 (E.D. Pa. 2004) ................................................................36, 40

In re Adelphia Commc'ns Corp.,
    359 B.R. 54 (Bankr. S.D.N.Y. 2006) ......................................................................61

In re Alper Holdings USA,
    No. 07-12148 (BRL), 2008 Bankr. LEXIS 86 (Bankr. S.D.N.Y. Jan. 15, 2008), aff'd,
    398 B.R. 736 (S.D.N.Y. 2008) ................................................................................60

In re Berry,
    11 B.R. 886 (Bankr. W.D. Pa. 1981) ......................................................................24

In re Cushman Bakery,
    526 F.2d 23 (1st Cir. 1975) .....................................................................................81

In re DJK Residential, LLC,
    416 B.R. 100 (Bankr. S.D.N.Y. 2009) ...............................................................60, 61

In re Leach,
    10–449, 2010 WL 3038794 (W.D. Pa. June 23, 2010) ...........................................24

In re Lehman Brothers Holdings Inc.,
    No. 08-13555 (JMP), 2010 Bankr. LEXIS 4147 (Bankr. S.D.N.Y. Nov. 10, 2010) ..............18

In re Minbatiwalla,
    424 B.R. 104 (Bankr. S.D.N.Y. 2010) .....................................................................17

In re Mortg. Elec. Registration Sys. (MERS) Litig.,
    No. MDL 09-2119-JAT, 2011 WL 4550189 (D. Ariz. Oct. 3, 2011)................................33, 82

In re Rockefeller Ctr. Props. Secs. Litig.,
    311 F.3d 198 (3d Cir. 2002)....................................................................................87

Indus. Packaging Prods. Co. v. Fort Pitt Packaging Int'l, Inc.,
    399 Pa. 643, 161 A.2d 19 (Pa. 1960) ......................................................................81

In re Porter,
    374 B.R. 471 (Bankr. D. Conn. 2007) .....................................................................17

Ira G. Steffy & Son, Inc. v. Citizens Bank of Pa.,
    7 A.3d 278................................................................................................................31, 32

Jones v. ABN AMRO Mortg. Grp., Inc.,
    551 F. Supp. 2d 400 (E.D. Pa. 2008) ......................................................................63

Jones v. Liberty Bank & Trust Co.,
    461 F. App'x 407 (5th Cir. 2012) ............................................................................77

Jubelirer v. Mastercard Int'l, Inc.,
    68 F. Supp. 2d 1049 (W.D. Wis. 1999) ...................................................................78

Kimmel v. Phelan Hallinan & Schmieg, PC,
    847 F. Supp. 2d 753 (E.D. Pa. 2012) ....................................................................83

Kottler v. Deutsche Bank AG,
    607 F. Supp. 2d 447 (S.D.N.Y. 2009).............................................................72, 73

Lancellotti v. Thomas,
    491 A.2d 117 (Pa. Super. Ct. 1985).................................................................56, 60

Lal v. Ameriquest Mortg. Co.,
    858 A.2d 119 (Pa. Super. Ct. 2004) ......................................................................41

Landau v. W. Pa. Nat'l Bank,
    282 A.2d 335 (Pa. 1971) ................................................................................20, 21

LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co.,
    951 F. Supp. 1071 (S.D.N.Y. 1996)......................................................................74

Livonia Prop. Holdings, L.L.C. v. 12840-12976 Farmington Rd. Holdings, L.L.C.,
    717 F. Supp. 2d 724 (E.D. Mich. 2010), aff'd, 399 F. App'x 97 (6th Cir. 2010), cert.
    denied, 131 S.Ct. 1696 (2011) ............................................................................82

Lum v. Bank of Am.,
    361 F.3d 217 (3d Cir. 2004)...........................................................68, 78, 83, 86

Lundy v. Catholic Health Sys. Of Long Island Inc.,
    711 F.3d 106 (2d Cir. 2013)..........................................................................78, 80

Lyon Fin. Servs. v. Woodlake Imaging, LLC,
    No. 04-cv-3334, 2005 U.S. Dist. LEXIS 2011 (E.D. Pa. Feb. 9, 2005) ..................42

Magness v. Walled Lake Credit Bureau, LLC,
    No. 12-6586, 2013 WL 1311093 (E.D. Pa. Apr. 1, 2013).....................................42

McClure Enters., Inc. v. Fellerman,
    No. 06-353, 2007 U.S. Dist. LEXIS 35374 (M.D. Pa. May 15, 2007)..............69, 70

McLaughlin v. Anderson,
    962 F.2d 187 (2d Cir. 1992)................................................................................78

Merion Spring Co. v. Muelles Hnos. Garcia Torres, S.A.,
    462 A.2d 686 (Pa. 1983) ....................................................................................49

Milburn v. Blackfrica Promotions, Inc.,
    392 F. Supp. 434 (S.D.N.Y.1974)........................................................................85

ix

Mills v. Polar Molecular Corp.,
    12 F.3d 1170 (2d Cir. 1993) ............................................................................78

Monaco v. Montgomery Cab Co.,
    208 A.2d 252 (Pa. 1965) ..................................................................................27

Morse v. Lower Merion Sch. Dist.,
    132 F.3d 902 (3d Cir. 1997) ............................................................................63

Murphy v. FDIC,
    408 Fed. Appx. 609 (3d Cir. 2010) ................................................................37

N.Y. Elec. & Gas Corp. v. Westinghouse Elec. Corp.,
    564 A.2d 919 (Pa. Super. Ct. 1989) ...............................................................38

New York Guardian Mortg. Corp. v. Dietzel,
    524 A.2d 951 (Pa. Super. 1987) ......................................................................12

Nikole, Inc. v. Klinger,
    603 A.2d 587 (Pa. Super. Ct. 1992) appeal denied, 535 Pa. 660, 634 A.2d 223 .........58, 59, 60

Ocasio v. Ocwen Loan Servicing, LLC,
    No. 07-cv-5410, 2009 U.S. Dist. LEXIS 20260 (E.D. Pa. Mar. 13, 2009) ............................42

Oum v. Wells Fargo, N.A.,
    842 F. Supp. 2d 407 (D. Mass. 2012) ............................................................32

Parrino v. Swift,
    No. 06-0537(DRD)(SDW), 2006 WL 1722585 (D.N.J. June 19, 2006) .........................69, 70

Pawlowski v. Smorto,
    588 A.2d 36 (Pa. 1991) ..................................................................................45

Perkins v. State Farm Ins. Co.,
    589 F. Supp. 2d 559 (M.D. Pa. 2008) ............................................................35

Peterson v. GMAC Mortg., LLC,|
    No. 11-11115-RWZ, 2011 WL 5075613 (D. Mass. Oct. 25, 2011) ........................................82

Pharr v. Evergreen Gardens, Inc.,
    No. 03-cv-5520(HB), 2004 WL 42262 (S.D.N.Y. Jan. 7, 2004) ...........................................85

Phico Ins. Co. v. Presbyterian Med. Serv. Corp.,
    663 A.2d 753 (Pa. Super. Ct. 1995) ...............................................................35

Pittsburgh Constr. Co. v. Griffith,
    834 A.2d 572 (Pa. Super. Ct. 2003) ...............................................................34

x

Plum Prop. Assocs., Inc. v. Mineral Trading Co.,
    No. 09-cv-1059, 2009 U.S. Dist. LEXIS 119834 (W.D. Pa. Dec. 23, 2009) .........................69

Post v. Mendel,
    507 A.2d 351 (Pa. 1986) ........................................................................................46

R.W. v. Manzek,
    888 A.2d 740 (Pa. 2005) ........................................................................................40

Raffaele v. Designers Break, Inc.,
    750 F. Supp. 611 (S.D.N.Y.1990) ............................................................................85

Reardon v. Allegheny Coll.,
    926 A.2d 477 (Pa. Super. Ct. 2007) .........................................................................65

Reves v. Ernst & Young,
    507 U.S. 170 (1993) ....................................................................................74, 75, 76

Richmond v. McHale,
    35 A.3d 779 ........................................................................................................46

Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,
    30 F.3d 339 (2d Cir. 1994) ............................................................................72, 76, 83

Rose v. Bartle,
    871 F.2d 331 (3d Cir. 1989) ...................................................................................84

Rousseau v. City of Phila.,
    514 A.2d 649 (Pa. Commw. Ct. 1986) ......................................................................40

Russeck v. Shapiro,
    84 A.2d 514 (Pa. Super. Ct. 1951) ..........................................................................25

Salinas v. United States,
    522 U.S. 52 (1997) ...............................................................................................84

Sanderson v. HCA – The Healthcare Co.,
    447 F.3d 873 (6th Cir. 2006) .................................................................................89

Sarsfield v. CitiMortgage, Inc.,
    707 F. Supp. 2d 546 (M.D. Pa 2010) ......................................................................65

Sedima S.P.R.L. v. Imrex Co.,
    473 U.S. 479 (1985) .............................................................................................68

Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,
    742 F.2d 786 (3d Cir. 1984) ..........................................................................69, 70, 72

xi

Shamon v. Bank of America, N.A.,
    No. 11-15344, 2012 WL 666843 (E.D. Mich. Feb. 29, 2012).................................32

Shuster v. Pa. Turnpike Comm'n,
    149 A.2d 447 (1959).........................................................................................32

Signal Consumer Discount Co. v. Babuscio,
    390 A.2d 266 (Pa. Super. 1978)........................................................................12

Sinclair v. Hawke,
    314 F.3d 934 (8th Cir. 2003).............................................................................77

Smith v. Berg,
    247 F.3d 532 (3d Cir. 2001)..............................................................................84

Smith v. Griffiths,
    476 A.2d 22 (Pa. Super. Ct. 1984).....................................................................45

Smith v. Lambert,
    No. C-48-CV-2011-1478, 2011 WL 7758346 (Pa. Ct. Com. Pl. Apr. 5, 2012).....................35

Spagnol Enters., Inc. v. Penn Lear Dev. Corp. (In re Spagnol Enters., Inc.),
    81 B.R. 337 (W.D. Pa.1987).......................................................................56, 60

Spool v. World Child Int'l Adoption Agency,
    520 F.3d 178 (2d Cir. 2008)..............................................................................78

Strausser v. PRAMCO,
    944 A.2d 761 (Pa. Super. Ct. 2008)....................................................................35

U.S. Bank N.A. v. Mallory,
    982 A.2d 986 (Pa. Super. Ct. 2009)....................................................................23

United States ex rel. Clausen v. Lab. Corp. of Am., Inc.,
    290 F.3d 1301 (11th Cir. 2002).........................................................................89

United States ex rel. Karvelas v. Melrose-Wakefield Hosp.,
    360 F.3d 220 (1st Cir. 2004).............................................................................89

United States ex rel. Le Blanc III v. ITT Indus., Inc.,
    492 F. Supp. 2d 303 (S.D.N.Y. 2007).................................................................86

United States ex rel. Schmidt v. Zimmer, Inc.,
    386 F.3d 235 (3d Cir. 2004)..............................................................................87

United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.,
    125 F.3d 899 (5th Cir. 1998).............................................................................89

xii

U.S. Fire Ins. Co. v. United Limousine Serv., Inc.,
    303 F. Supp. 2d 432 (S.D.N.Y. 2004)......................................................................74

United States v. Turkette,
    452 U.S. 576 (1981)...............................................................................................69, 72

Univ. of Md. at Balt. v. Peat, Marwick, Main & Co.,
    996 F.2d 1534 (3d Cir. 1993)................................................................................74, 75

Valley Forge Towers S. Condo. Ass'n v. Ron-Ike Foam Insulators, Inc.,
    574 A.2d 641 (Pa. Super. Ct. 1990)..........................................................................41

Vino 100, LLC v. Smoke on the Water, LLC,
    No. 09-4983, 2012 WL 1071174 (E.D. Pa. Mar. 30, 2012) ....................................64

Vives v. Rodriguez,
    846 F. Supp. 2d 507 (E.D. Pa. 2012) .......................................................................65

Vogel v. W.T. Grant Co.,
    327 A.2d 133 (Pa. 1974) ..........................................................................................44

Ward v. Sec. Atl. Mortg. Elec. Registration Sys. Inc.,
    858 F. Supp. 2d 561 (E.D.N.C. 2012)......................................................................32

Ware v. Rodale Press, Inc.,
    322 F.3d 218 (3d Cir. 2003)................................................................................48, 49

Waslow v. Pa. Dep't of Educ.,
    984 A.2d 575 (Pa. Commw. Ct. 2009) .....................................................................29

Werwinski v. Ford Motor Co.,
    286 F.3d 661 (3d Cir. 2002)................................................................................35, 39

WestLB AG v. BAC Fla. Bank,
    912 F. Supp. 2d 86 (S.D.N.Y. 2012)........................................................................61

Widmer Eng'g Inc. v. Dufalla,
    837 A.2d 459 (Pa. Super. Ct. 2003) ..............................................................55, 58, 59

Wisniewski v. Rodale, Inc.,
    510 F.3d 294 (3d Cir. 2007)......................................................................................46

Yount v. Pa. Dep't of Corrections,
    966 A.2d 1115 (Pa. 2009) .........................................................................................19

Zhu v. First Atl. Bank,
    No. 05-cv-96(NRB), 2005 WL 2757536 (S.D.N.Y. Oct. 25, 2005).........................74

STATUTES

13 P.S. § 3205(b) ...................................................................................................22

13 P.S. § 3301 ..................................................................................................22, 23

41 P.S. §§ 101, 403(a) ..........................................................................................25

73 P.S. § 201-9.2 ...................................................................................................41

11 U.S.C. § 101(5) ................................................................................................16

11 U.S.C. § 502(b)(1) ...........................................................................................16

12 U.S.C. § 2615 ...................................................................................................55

18 U.S.C. § 1961(4) ..............................................................................................69

18 U.S.C. § 1961(5) ..............................................................................................76

18 U.S.C. § 1962(c) ..............................................................................................68

18 U.S.C. § 1962(d) .........................................................................................68, 83

31 U.S.C. § 3729 ...................................................................................................86

31 U.S.C. § 3729(a)(1)(A) ....................................................................................87

31 U.S.C. § 3729(a)(1)(B) ....................................................................................87

31 U.S.C. § 3729(a)(1)(C) ....................................................................................87

31 U.S.C. § 3729(a)(1)(G) ....................................................................................87

31 U.S.C. § 3729(c) ..............................................................................................89

31 U.S.C. § 3730 ...................................................................................................86

31 U.S.C. § 3730(b)(2) .........................................................................................86

31 U.S.C. § 3730(d) ..............................................................................................86

42 U.S.C. § 1983 ...................................................................................................62

7 Pa. Const. Stat. Ann. § 6703 .............................................................................47

7 Pa. Const. Stat. Ann. § 1504 .............................................................................47

73 Pa. Const. Stat. Ann. § 2270.3 ........................................................................42

ny-1142833

## OTHER AUTHORITIES

6 Am. Jur. 2d Assignments § 2 ................................................................32

6 Am. Jur. 2d Assignments § 1 ................................................................31

17 Am. Jur. 2d, § 365 ............................................................................56

6A C.J.S. Assignments § 132 ..................................................................33

7 Stephanie A. Giggetts, Summary of Pennsylvania Jurisprudence § 21:26 (2d ed. 2009) ..........23

Milton R. Friedman, Friedman On Contracts & Conveyances Of Real Property, § 6:1:5 ............81

Murray on Contracts § 226 ....................................................................49

Pa. Const. Art. I § 10 ............................................................................63

Pa. R. Civ. P. 1024 ..............................................................................27

Pa. R. Civ. P. 1024(a) ..........................................................................81

Pa. R. Civ. P. 1026 ..............................................................................27

Pa R. Civ. P. 1028(a)(2) ........................................................................27

Pa. R. Civ. P. 1032 ..............................................................................27

Pa. R. Civ. P. 1035.2 ............................................................................19

Pa. R. Civ. P. 1061(b) ..........................................................................31

Pa. R. Civ. P. 1061(b)(2) ......................................................................30

Pa. R. Civ. P. 1142 ..............................................................................23

Pa. R. Civ. P. 1147 ..............................................................................21

Pa. R. Civ. P. 1147(a)(1)-(6) ..................................................................19

Rest. 2d Torts § 652E ............................................................................44

Restatement (Second) of Contracts § 229 ..................................................59

Restatement (Second) of Contracts § 235(2) ..............................................55

Restatement (Second) of Contracts § 352 ..................................................49

Rest. 2d Torts § 652D ............................................................................44

**TO THE HONORABLE MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE:**

The ResCap Borrower Claims Trust ("**Borrower Trust**"), as successor in interest to

Residential Capital, LLC ("**ResCap**") and its affiliated debtors in the above-captioned chapter 11

cases ("**Chapter 11 Cases**") (collectively, "**Debtors**") with respect to borrower claims hereby

files this objection ("**Objection**"), seeking to disallow and expunge proof of claim number 5257

("**Taggart Claim**") filed by Kenneth Taggart ("**Claimant**") against  Debtor ResCap pursuant to

section 502(b) of title 11 of the United States Code ("**Bankruptcy Code**") and Rule 3007(a) of

the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**") on the ground that the

Taggart Claim fails to state a claim against the Debtors.  The Borrower Trust seeks entry of an

order, substantially in the form attached hereto as <u>Exhibit 1</u> ("**Proposed Order**"), granting the

requested relief.  In support of the Objection, the Borrower Trust submits the Declaration of

Lauren Graham Delehey ("**Delehey Decl.**"), attached hereto as <u>Exhibit 2</u>, and the Declaration of

Dan Hall ("**Hall Decl.**"), attached hereto as <u>Exhibit 3</u>, and respectfully represents as follows:

## JURISDICTION, VENUE AND STATUTORY PREDICATE

1.      This Court has jurisdiction over this Objection under 28 U.S.C. § 1334.  This

matter is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper before this Court under

28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicate for the relief requested herein is section 502(b) of the

Bankruptcy Code and Bankruptcy Rule 3007(a).

## PRELIMINARY STATEMENT[1]

3.      The Taggart Claim, asserted in the amount of $450 million, is by far the single

largest unreconciled claim asserted against the Borrower Trust.  The Taggart Claim stems from

---

[1] Capitalized terms used in this Preliminary Statement shall have the meanings ascribed to such terms below.

06/04/2014 12:35 PM

the 2008 refinancing of a mortgage note covering one of Claimant's multi-unit investment properties and the subsequent initiation of a foreclosure proceeding in 2009 related to that property.  After the commencement of the 2009 foreclosure proceeding, Claimant embarked upon an unrelenting effort to impede the foreclosure proceeding by filing his multiple counterclaims, four complaints in other courts, multiple motions before this Court, and at least two requests in the foreclosure proceeding to stay that proceeding as a result of the initiation of the Debtors' Chapter 11 Cases.  Although asserting more than sixty claims for relief in his numerous lawsuits and counterclaims related to GMACM's alleged lack of standing to foreclose and alleged violations of consumer protection laws,[2] the gravamen of Claimant's allegations is that he was improperly charged for lender placed insurance, and that his refusal to make any subsequent payments that included the cost of the lender placed insurance set off a series of events leading to what Claimant alleges was a wrongful foreclosure.

4.      As demonstrated below, even accepting Claimant's allegations as true for purposes of this Objection, Claimant has failed to demonstrate an entitlement to a claim in the Debtors' Chapter 11 Cases.  Initiation of the foreclosure proceeding was proper under Pennsylvania law, and was the result of Claimant's failure to make his mortgage payments for extended periods of time.  Indeed, even after the allegedly wrongful application of lender placed insurance and Claimant's initial payment default under his mortgage documents, upon Claimant's request that the account not be referred to foreclosure, GMACM offered to Claimant and Claimant accepted a Repayment Plan that would have permitted Claimant to catch up on his delinquent mortgage payments and avoid foreclosure.  Rather than becoming current, however, Claimant once again breached his payment obligations and GMACM thereafter initiated a

---

[2] Claimant's original counterclaim in the foreclosure proceeding contained thirty-two alleged counterclaims, but as described *infra*, was subsequently reduced to ten alleged counterclaims.

foreclosure proceeding.   Thus, even accepting Claimant's allegations as true, it was his prolonged payment breaches on at least two separate occasions that rendered his account increasingly delinquent and caused GMACM to properly initiate a foreclosure proceeding to protect its interests.

5.      Among other failings, the Taggart Claim lacks any allegations identifying any contractual obligation that GMACM allegedly breached by its allegedly improper and temporary imposition of lender placed insurance on his investment property.   This failure of the Taggart Claim's core allegations to assert any claim upon which relief can be granted cannot be remedied through Claimant's assertion of myriad iterations of the same and related claims scattered throughout numerous complaints and counterclaims in at least three different courts.   Instead, as demonstrated below, GMACM's initiation of a foreclosure proceeding was proper and was the result of Claimant's failure to timely make his mortgage payments.   Duplicating and repackaging these allegations simply forced the Debtors, and now the Borrower Trust, to expend immense resources and prepare an extensive and all-too-lengthy objection (responding to four separate complaints) demonstrating that the Taggart Claim must be disallowed and expunged in its entirety.

## BACKGROUND

### I.      General Overview

6.      On May 14, 2012, each of the Debtors filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code.   These Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

7.      On December 11, 2013, the Court entered its *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* [Docket No. 6065] ("**Confirmation Order**") approving the terms of the

3

chapter 11 plan, as amended ("**Plan**"), filed in these Chapter 11 Cases.  On December 17, 2013, the Effective Date (as defined in the Plan) of the Plan occurred, and, among other things, the Borrower Trust and the ResCap Liquidating Trust were established [See Docket No. 6137].

8.       On August 29, 2012, this Court entered an order establishing November 9, 2012 as the deadline for filing proofs of claim in the Chapter 11 Cases [Docket No. 1309].   On November 7, 2012, the Court entered an order extending the general claims bar date to November 16, 2012 at 5:00 p.m. [Docket No. 2093].

## II.       The Proof of Claim

9.       On November 15, 2012, Claimant filed the Taggart Claim.[3]  The Taggart Claim includes a one page supplement indicating that Claimant asserts "all claims made" in the following four cases: (i) GMAC Mortgage, LLC v. Taggart, Case No. 2009-25338 (Ct. Cm. Pl., Montgomery Cty.) ("**Foreclosure Action**") (ii) Taggart v. GMAC Mortgage, LLC, et al., Case No. 12-00415 (WD) (E.D. Pa.) ("**First Federal Action**"); (iii) Taggart v. Montgomery County, et al., Case No. 12-01913 (WD) (E.D. Pa.) ("**Second Federal Action**"); and (iv) Taggart v. GMAC Mortgage, LLC, Case No. 12-01945 (MG) (Bankr. S.D.N.Y.) ("**Adversary Proceeding**" and, collectively with the Foreclosure Action, the First Federal Action and the Second Federal Action, the "**Actions**"), each described further below.  Taggart Claim at 2.

10.      Purportedly relying upon the claims asserted in the Actions, Claimant asserts a $450 million claim against ResCap in these Chapter 11 Cases.  Taggart Claim at 1.

## III.      Claimant's Relationship With the Debtors

### A.       Loan Origination

11.      On or about July 11, 2008, Claimant obtained from LBA Financial Group, LLC a FHA-insured residential income home refinance loan in the original principal amount of

---

[3] A copy of the Taggart Claim is attached as Exhibit 1 to the Delehey Decl.

$659,648.00, memorialized by a Promissory Note ("**Note**"), Mortgage ("**Mortgage**") and accompanying loan documentation.  See Delehey Decl. ¶ 7.  The property subject to the Mortgage is 521 Cowpath Road, Telford, PA 18969 ("**Property**").  See Counterclaim (defined below) ¶ 8; Delehey Decl. ¶ 7.  The Mortgage was recorded on July 23, 2008 in the Office of the Recorder of Deeds in Montgomery County.[4]  See Delehey Decl. ¶ 7.  The loan was sold and the Mortgage was assigned to GMAC Mortgage, LLC ("**GMACM**"), which Assignment was recorded September 2, 2009.[5]  See Delehey Decl. ¶¶ 7, 10.

### B.    Hazard Insurance and the Escrow Account

12.    The Mortgage required maintenance of a continuous hazard insurance policy insuring all improvements on the Property against all hazards, casualties and contingencies.  See Mortgage § 4.  A Notice to Borrower, signed by Claimant and dated June 13, 2008 informed Claimant that "[b]efore closing you must provide us with the original [hazard insurance] policy along with a paid receipt for the full first year's premium."  See Delehey Decl., Exhibit 8.  Notwithstanding Claimant's acknowledgment that he would be required to provide proof of a full year of post-closing hazard insurance, at the July 11, 2008 closing Claimant provided proof of an insurance policy covering the Property only through August 9, 2008, which policy had a yearly premium of $1,700.  See Delehey Decl., Exhibit 9; Hall Decl. ¶ 6, Exhibit 1.  Two policies provided separate coverage for two portions of the Property.  See Hall Decl. ¶ 6.  Policy No. ███225 covered the so-called "Side Property" and Policy No. ███227 covered the "Front Property."  See id.

13.    Because it had not received proof of insurance for any period beyond August 9, 2008 or an invoice for renewal of the existing policy, on or about August 11, 2008 Newport

---

[4] A copy of the recorded Mortgage is attached as Exhibit 4 to the Delehey Decl.
[5] A true and correct copy of the recorded Assignment is attached as Exhibit 5 to the Delehey Decl.

Management Corporation, the entity that monitored mortgages serviced by GMACM for adequate hazard insurance, contacted Claimant's hazard insurance carrier to obtain renewal information.  See Hall Decl. ¶¶ 2, 7.  After being advised of the relevant renewal details by Claimant's hazard insurance carrier, on or about August 13, 2008 Newport, on behalf of GMACM made a payment in the amount of $978.00 to renew Policy No. ██225 for the Side Property for the policy term of August 9, 2008 to August 9, 2009.  See id.

14.    On September 16, 2008, Claimant contacted Newport by telephone and thereafter faxed a Declarations statement from his hazard insurance carrier, and requested that GMACM immediately pay the renewal premium for Policy No. ██227 for the Front Property in the amount of $925.  See Hall Decl. ¶ 8, Exhibit 2.  On September 17, 2008, Newport, on behalf of GMACM paid the renewal premium on Policy No. ██227 for the Front Property for the policy term August 9, 2008 to August 9, 2009.  See Hall Decl. ¶ 8.  However, when Newport updated its records, the renewal premium of $925 was attributed to the Side Property (Policy No. ██225) and not to the appropriate Front Property.  See id.

15.    On September 29, 2008, Newport spoke to Claimant's hazard insurance carrier and was informed that the hazard insurance on the Property was bifurcated into two policies.  See Hall Decl. ¶ 9.  As a result, Newport created a separate tracking and monitoring process for Policy No. ██227 for the Front Property.  See id.  However, the prior coverage history for the Front Property, including the September 17, 2008 payment of the $925 premium for Policy No. ██227, was not documented to the newly created tracking and monitoring process for the Front Property.  See id.  As a result, Newport's records appeared to indicate that there was no insurance coverage at all for the Front Property since the inception of the loan on July 11, 2008.  See id.  Consequently, on October 9, 2008 Newport, on behalf of GMACM – apparently

believing that the Front Property was not insured – sent Claimant a request for proof of hazard insurance, indicating that "[w]e must have a copy of evidence of insurance coverage with an effective date of July 11, 2008 in order to avoid purchasing lender-placed insurance to protect our interest." See Hall Decl. ¶ 9, Exhibit 3 & 4.  Newport's records do not indicate receiving a response to the October 9, 2008 letter.  See Hall Decl. ¶ 9.

16.    On November 23, 2008, Newport, on behalf of GMACM, sent a second letter to Claimant indicating that because it had not received proof of insurance, a lender-placed insurance policy would be obtained "within 60 days of this notice" with an effective date of July 11, 2008 at an annual charge of $7,261.00.  See Hall Decl. ¶ 10, Exhibit 5.  The November 23, 2008 letter also informed Claimant that he could "cancel the coverage at any time and replace it with a policy of [his] own." See Hall Decl.¶ 10, Exhibit 5.  Newport's records do not indicate receiving a response to the November letter and, as a result, on January 9, 2009, a lender-placed insurance policy (Policy No. ███065), paid for by GMACM, was obtained covering the period from July 11, 2008 to July 11, 2009.  See Hall Decl. ¶ 10.  Claimant was notified of the placement of this insurance policy by letter dated January 11, 2009.  See Hall Decl. ¶ 10, Exhibit 6.

17.    On or about January 20, 2009, Claimant provided Newport with proof of hazard insurance coverage for the Front Property for the period from August 9, 2008 to August 9, 2009 (which coverage had been paid for by GMACM but not updated to the new tracking process for Policy No. ███227), but Claimant did not at that time also provide the proof of coverage for the Front Property for the period from July 11, 2008 to August 9, 2008 (which had been provided at closing, but had not been updated in the new tracking process of Policy No. ███227).  See Hall Decl. ¶ 11, Exhibit 3.  In response, on January 22, 2009, Newport, on behalf of GMACM,

informed Claimant that the lender-placed policy had been cancelled as of August 9, 2008, and that he would receive a partial "refund" in the amount of $6,684.00.  See Hall Decl. ¶ 11; Exhibit 8.[6]

18.    Although Newport, on behalf of GMACM, partially cancelled the lender-placed policy and, on January 26, 2009, refunded the $6,684.00 that had previously been paid by GMACM (see Hall Decl. ¶ 12), the refund had not yet been posted to Claimant's escrow account by the time a February 9, 2009 escrow account analysis was conducted.  See Delehey Decl. ¶ 14, Exhibit 10.  As a result, by letter dated February 9, 2009, Claimant was informed that his monthly payment would increase from $5,401.26 to $6,609.05 as of April 1, 2009 unless the anticipated escrow deficiency for the year was paid prior to that date.  See Delehey Decl. ¶ 14, Exhibit 10, at 2.  The letter also indicated that if Claimant paid the anticipated escrow deficiency in advance, his monthly payment commencing on April 1, 2009 would be $6007.16.  See Delehey Decl.  ¶ 14, Exhibit 10, at 2.

19.    On February 27, 2009 and March 30, 2009, Claimant made his monthly mortgage payments for February and March, respectively, each more than three weeks after their due date on the first of the respective month.  See Delehey Decl. ¶ 15, Exhibit 7 at 2.

20.    On April 24, 2009, more than three weeks after the due date for Claimant's April mortgage payment, and more than two months after receiving notification of an increased monthly payment commencing with his April 1, 2009 mortgage payment, Claimant sent a letter to GMACM disputing the amount of his April monthly payment.  See Delehey Decl. ¶ 16, Exhibit 7 at 10 (letter received on April 29, 2014), Exhibit 36, at A9 (Claimant's supplemental answer and counterclaim in the Foreclosure Action, containing a copy of his April 24, 2009

---

[6] The remaining $577.00 for the lender-placed insurance covering the period from loan origination on July 11, 2008 until August 9, 2008 was not refunded until on or about June 14, 2012.  See Hall Decl. ¶ 11 n.8.

ny-1142833

letter).  In that letter, Claimant also indicated that the GMACM website would not accept his attempted payment in the amount that he believed to be the correct payment amount.  <u>See</u> <u>Exhibit 36</u>, at A9.  By response dated May 5, 2009, GMACM acknowledged Claimant's letter (<u>see</u> Delehey Decl. ¶ 16) and, by May 12, 2009, GMACM had conducted a new escrow analysis and sent Claimant a letter indicating that an adjustment had been made, resulting in a revised monthly payment of $5,612.25 commencing as of April 1, 2009.  <u>See</u> Delehey Decl. ¶ 16, <u>Exhibits 11</u> & <u>12</u>.  The $210.99 increase in Claimant's monthly payment resulted from an escrow deficiency caused, in part, by Claimant's failure to provide one year's proof of insurance at closing and the resulting payment by GMACM of premiums on Claimant's prior insurance policies with The Philadelphia Contributorship Insurance Company (Policy Nos. ██225 and ██227).  <u>See</u> Delehey Decl. ¶ 16, <u>Exhibit 12</u> at 2.

21.    By letter dated June 29, 2009, Claimant informed GMACM that he continued to dispute the amount of his payment.  <u>See</u> Delehey Decl. ¶ 17, <u>Exhibit 36</u> at A7 (containing a copy of Claimant's June 29, 2009 letter).  GMACM, by responsive letter dated July 15, 2009, provided a copy of the most recent escrow analysis and requested that Claimant identify the entries that he believed needed to be adjusted.  <u>See</u> Delehey Decl. ¶ 17, <u>Exhibit 13</u>.  GMACM does not have any record of receiving a response to its July 15, 2009 letter.  <u>See</u> Delehey Decl. ¶ 17.

22.    In the interim, on or about July 9, 2009, GMACM spoke with Claimant by telephone and discussed his account, which was by then past due for April, May, June and July payments.  <u>See</u> Delehey Decl. ¶ 22, <u>Exhibit 7</u> at 7.  Claimant and GMACM agreed to set up a Repayment Plan pursuant to which Claimant would pay $11,224.50 by July 31, 2009, $12,001.77 on or before August 31, 2009, and $12,001.78 on or before September 30, 2009.  <u>See</u>

Delehey Decl. ¶ 22, <u>Exhibit 7</u> at 7.  Claimant was informed that there would be no grace period with respect to the payments due under the Repayment Plan.  <u>See</u> Delehey Decl. ¶ 22, <u>Exhibit 7</u> at 7.  A post-dated payment was set up and, in exchange, GMACM agreed to withhold a referral to foreclosure.  <u>See</u> Delehey Decl. ¶ 22, <u>Exhibit 7</u> at 7.

23.      On July 29, 2009, Claimant advised GMACM by telephone that he would not comply with the Repayment Plan and that the reason for his default was that he was self-employed, that his hardship started six months prior and that he could make double payments, but that no payment would arrive until August 15, 2009.  <u>See</u> Delehey Decl. ¶ 23, <u>Exhibit 7</u> at 5.  Because Claimant failed to comply with the terms of the Repayment Plan for which he was advised there would be no grace period, GMACM cancelled the repayment plan.  <u>See</u> Delehey Decl. ¶ 23, <u>Exhibit 7</u> at 5.

24.      On August 4, 2009, with five months of mortgage payments then due and owing on Claimant's account, GMACM completed and approved a foreclosure referral review.  <u>See</u> Delehey Decl. ¶ 24, <u>Exhibit 7</u> at 5.

25.      On August 7, 2009, Claimant requested another repayment plan by phone, but GMAC informed Claimant that the account was in foreclosure, and that a full reinstatement payment would be required to avoid foreclosure.  <u>See</u> Delehey Decl. ¶ 25, <u>Exhibit 7</u> at 4.

26.      On August 14, 2009, GMACM commenced the Foreclosure Action.  <u>See</u> Delehey Decl. ¶ 26.[7]

**IV.    The Actions**

27.      The Actions, described in turn below, collectively assert over thirty causes of action (many duplicative) against the Debtors.[8]

---

[7] A true and correct copy of the Complaint in the Foreclosure Action is attached as <u>Exhibit 17</u> to the Delehey Decl.

A.      **The Foreclosure Action**

28.      Because Claimant had defaulted under the Note and Mortgage by failing to make payments as and when due, GMACM instituted the Foreclosure Action.  See Delehey Decl. at ¶¶ 24, 26.

29.      Claimant filed an Answer and several subsequent counterclaim pleadings, the last of which was his *Amended Answer to Complaint With New Matter and Counterclaim* (the "**Counterclaim**")[9] filed on or about January 6, 2014, after the trial Court granted Claimant's *Motion for Leave to Amend his Answer, New Matter and Counterclaim* filed June 25, 2013.

30.      Claimant previously filed a motion with the Court seeking clarification of the impact of the automatic stay and the Supplemental Servicing Order[10] on the Foreclosure Action [Docket No. 263], which at that time involved Claimant's prior-pending counterclaim pleading comprised of thirty-two separate counts seeking damages from GMACM.  Following hearings and additional briefing by the parties, this Court modified the automatic stay to permit the Foreclosure Action "to proceed through resolution of dispositive motion practice, by which the state court in the Foreclosure [Action] will determine the viability of [Claimant's] alleged

---

[8] A table summarizing each of the claims asserted by Claimant in each of the Actions, as well as the alleged statutory or other legal predicate for the claims (where available), is attached hereto as Exhibit 4.

[9] A true and correct copy of Counterclaim, as filed in the Foreclosure Action, is attached to the Delehey Decl. as Exhibit 21.  Notably, the Counterclaim filed January 6, 2014 is not the proposed amended filing attached as Exhibit A to the Motion by which Claimant was granted leave to amend.  Delehey Decl. ¶ 29 n.20.  The Counterclaim filed January 6, 2014 contains a separate Count XI alleging a violation of a Pennsylvania statute not included in the proposed amended filing.  Id.

[10] *See Final Supplemental Order Under Bankruptcy Code Sections 105(a), 362, 363, 502, 1107(a), and 1108 and Bankruptcy Rule 9019 (I) Authorizing the Debtors to Continue Implementing Loss Mitigation Programs; (II) Approving Procedures for Compromise and Settlement of Certain Claims, Litigations and Causes of Action; (III) Granting Limited Stay Relief to Permit Foreclosure and Eviction Proceedings, Borrower Bankruptcy Cases, and Title Disputes to Proceed; and (IV) Authorizing and Directing the Debtors to Pay Securitization Trustee Fees and Expenses* [Docket No. 774].

11

defenses to foreclosure, and resolution of any appeals of the state court's order in connection

therewith." See Docket Nos. 263, 1367 at ¶ 2.[11]

31.    Claimant thereafter retained counsel in the Foreclosure Action and filed the above

noted Motion for Leave to Amend the Counterclaim, which the trial court permitted.

32.    The Counterclaim seeks compensatory and other damages by way of ten separate

counts:  Count I (Declaratory Judgment), Count II (Wrongful Foreclosure), Count III (Quiet

Title), Count IV (Slander of Title), Count V (Negligence), Count VI (Violations of

Pennsylvania's Fair Credit Extension Uniformity Act) ("**FCEUA**"), Count VII (Violation of the

Pennsylvania Unfair Trade Practices Act) ("**UTPCPL**"), Count IX (Invasion of Privacy/False

Light), Count X (Breach of Contract), and Count XI (Violation of Mortgage Property Insurance

Coverage Act ) ("**MPICA**").[12]

33.    The servicing of the Claimant's Note and Mortgage was transferred from

GMACM to Ocwen Loan Servicing, LLC, ("**Ocwen**") on or about February 15, 2013 in

connection with the closing of the Ocwen transaction, and Ocwen now services the loan.[13]

34.    On October 30, 2013, Ocwen, which had taken control of the prosecution of

Foreclosure Action as the new servicer of the Note and Mortgage, filed a *Praecipe to

Discontinue* the Foreclosure Action ("**Discontinuance**").  See Delehey Decl. ¶ 32, Exhibit 18 at

10.  Claimant responded by filing a *Motion to Strike or a Petition to Reinstate* on November 1,

2013, which he thereafter withdrew on February 28, 2014 and, as a result, the Foreclosure Action

---

[11] Notably, Pennsylvania law does not permit counterclaims seeking *in personam* damages to be adjudicated in an *in rem* foreclosure proceeding enforcing a secured interest in property rather than seeking to collect on debt owed. See, e.g., Signal Consumer Discount Co. v. Babuscio, 390 A.2d 266, 270 (Pa. Super. 1978); see also New York Guardian Mortg. Corp. v. Dietzel, 524 A.2d 951, 953 (Pa. Super. 1987) (recognizing that foreclosure actions in PA are *in rem* only and disallowing pursuit of TILA damages asserted by counterclaim); Birchall v. Countrywide Home Loans, Inc., No. 08-2447, 2009 WL 3822201, at *6 (E.D.P.A. Nov. 12, 2009) ("a mortgage foreclosure action, as an action *in rem*, does not allow either party to pursue an action *in personam*, such as an action for damages." (citation omitted)).

[12] There is no "Count VIII."

[13] A true and correct copy of a recorded Assignment is attached as Exhibit 23 to the Delehey Declaration.

was discontinued.  See id. at 10, 11.  By virtue of the Discontinuance of the Foreclosure Action,

Claimant's pending defensive pleading was converted into offensive claims against GMACM, by

which Claimant seeks to recover in personam monetary damages from GMACM.

35.     On January 27, 2014, GMACM filed a *Motion for a Stay* in the Foreclosure

Action because it was the position of GMACM that in light of the filing of the Discontinuance,

the Foreclosure Action should have been stayed pending further relief from this Court.  See id. at

11.

36.     GMACM's *Motion for a Stay* was granted on March 20, 2014.  See id. at 12.

37.     Pending at the time the State Court granted the stay of the Foreclosure Action

were GMACM's Preliminary Objections to the Counterclaim,[14] and Claimant's Preliminary

Objections to same, along with a Motion for Sanctions Claimant filed on March 13, 2014, by

which he sought sanctions based on GMACM's requests that the trial court stay the case and

discovery pending further instruction or relief from this Court.  See generally id. at 10-12.

## B.     The First Federal Action

38.     On January 26, 2012, Claimant filed the First Federal Action.[15]  In the First

Federal Action, Claimant alleges that GMACM improperly increased his monthly payment

amount after erroneously placing lender placed insurance on the property.  Claimant refused to

make what he determined to be an improper payment amount, and GMACM thereafter

commenced a foreclosure and reported to HUD's Credit Alert Verification Reporting System

that Claimant's FHA-insured mortgage loan was in default.  See generally Amended Complaint.

---

[14] GMACM filed the Preliminary Objections in an abundance of caution to avoid potential default because the trial
court had not at that time stayed the action in light of the instant bankruptcy proceedings.
[15] A copy of the Amended Civil Complaint filed in the First Federal Action on March 22, 2012 is attached as
Exhibit 25 to the Delehey Declaration (the "**Amended Complaint**").  GMAC Mortgage was not served with the
Amended Complaint until May 22, 2012, eight days after the Debtors filed for bankruptcy.  Summons at 2, Taggart
v. GMAC Mortgage, LLC, Case No. 12-cv-00415-WD (E.D. Pa. June 4, 2012) [ECF No. 12].  A copy of the
Summons in the First Federal Action is attached as Exhibit 27 to the Delehey Declaration.

The reported default status allegedly led HUD to remove him from HUD's list of approved appraisers, referred to as the "Appraiser Roster." Id. at 7-8. Claimant sued GMACM, together with the United States of America Department of Housing and Urban Development and the Federal Housing Administration (the latter Defendants hereinafter referred to as the "**Federal Defendants**" or the "**Government**"). See id. The gravamen of the Complaint sounds in a deprivation of property without due process of law. See id.

39.    On or about November 26, 2012, the District Court for the Eastern District of Pennsylvania (the "**E.D. PA. Court**") dismissed all but one claim against the Federal Defendants. See Delehey Decl. ¶ 38, Exhibit 28. The E.D. PA. Court allowed a due process claim raising the adequacy of a hearing before HUD officials to proceed. See Delehey Decl. ¶ 38. The Government's Motion to Dismiss that claim was converted into a Motion for Summary Judgment, which was granted August 12, 2013, and judgment was entered in favor of the Federal Defendants. See Delehey Decl. ¶ 38, Exhibit 29.

40.    Claimant's appeal of the E.D. PA. Court decisions is currently pending in the United States Circuit Court for the Third Circuit. GMACM advised the Court of Appeals at the outset of the appeal that the bankruptcy stay was still in effect and that GMACM would not be participating in the appeal. Id. at ¶ 39.

41.    On April 8, 2014, Claimant moved the E.D. PA. Court for voluntarily dismissal of GMACM without prejudice under Rule 41(B), which the Court granted on April 11, 2014. Id. at ¶ 40. Accordingly, GMACM is no longer a party to the First Federal Action. Id.

### C.    The Second Federal Action

42.    On April 10, 2012, Claimant filed the Second Federal Action against, among others, the Pennsylvania Superior Court and Montgomery County, Pennsylvania. See Delehey Decl. ¶ 41. On May 8, 2012, Claimant amended the compliant in the Second Federal Action to

14

include claims against GMACM and MERS.  Id.[16]  There is no actual cause of action asserted though it appears that Claimant may be making claims under the Pennsylvania and United States Constitutions.  Id.

43.    The claims against all defendants other than GMCM have been dismissed and the case is closed.  See Delehey Decl. ¶ 42, Exhibit 33 (dismissal orders).  The Second Federal Action remains stayed as to GMACM.

**D.    The Adversary Proceeding**

44.    On November 15, 2012, Claimant commenced the Adversary Proceeding in this Court.  In the Adversary Proceeding, Claimant asserts claims against GMACM similar to those asserted in prior actions, including claims based on GMACM's alleged "Racketeering and Conspiracy to Commit Fraud-RICO, Fraud, Deceit, Pennsylvania Unfair Trade Practice Act & Consumer Protection Laws, Tortuous Actions, [and] Breach of Contract."[17]  See Delehey Decl., Exhibit 34 at 40-77.

45.    On February 26, 2013, Claimant filed a "petition to withdraw his complaint" and, on March 4, 2013, the Adversary Proceeding was closed.  See Praecipe to Withdraw Adversary Complaint [Docket No. 13].

**RELIEF REQUESTED**

46.    The Debtors file this Objection pursuant to section 502(b) of the Bankruptcy Code, seeking to disallow and expunge in its entirety the Taggart Claim from the Debtors' claims register.

---

[16] A copy of the Amended Complaint in the Second Federal Action is attached as Exhibit 32 to the Delehey Declaration.

[17] A copy of the Complaint in the Adversary Proceeding is attached as Exhibit 34 to the Delehey Declaration.

## **OBJECTION**

### I.    **The Taggart Claim is Not Properly Asserted Against ResCap**

47.    Pursuant to section 101 of the Bankruptcy Code, a creditor holds a claim against a bankruptcy estate only to the extent that it has a "right to payment" for the asserted liability.  See 11 U.S.C. § 101(5).  Likewise, section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that the Court shall allow a claim except to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured."  11 U.S.C. § 502(b)(1).

48.    Claimant filed the Taggart Claim for $450 million solely against ResCap.  See Delehey Decl., Exhibit 1 at 1.  Although referencing "Residential Capital, LLC- GMAC Mortgage, LLC" as the "Name of Creditor," the only Debtor against which the Taggart Claim was filed is "Residential Capital, LLC, Case No. 12-12020."  Additionally, the only supporting document annexed to the Taggart Claim is a list bearing the caption "Residential Capital, LLC, Case No. 12-12020" and identifying the case numbers of the Actions.  See id. at 2.  There is no explanation whatsoever as to why the Taggart Claim is properly asserted against ResCap. Indeed, based on the captions of the referenced cases and the allegations in the complaints filed in those cases, the Taggart Claim should not have been filed against ResCap.  The Borrower Trust believes that the Taggart Claim is not enforceable against ResCap under any applicable law or agreement.  Additionally, the Debtors' books and records reflect no liability due and owing to Claimant.

49.    Accordingly, the Borrower Trust asserts that the Taggart Claim should be disallowed and expunged in its entirety.

## II.        The Claim is Not Supported by Sufficient Documentation

50.        Even though the Borrower Trust believes that the failure of Claimant to file the

Taggart Claim against GMACM is by itself sufficient grounds to disallow the Taggart Claim, in

the interest of judicial efficiency, the Borrower Trust will assume for the remainder of this

Objection that the Taggart Claim was properly filed against GMACM and will state the

objections that would be appropriate.  Any number of additional grounds exist to disallow the

Taggart Claim.

51.        The Borrower Trust has determined that the Taggart Claim of $450 million should

also be disallowed and expunged because it lacks sufficient documentation and is not supported

by the Debtors' books and records.

52.        Although a properly filed proof of claim constitutes *prima facie* evidence of the

validity of the claim, Fed. R. Bankr. P. 3001(f), failure to attach the documentation required by

Bankruptcy Rule 3001 will result in the loss of the *prima facie* validity of the claim.

*Memorandum Opinion and Order Sustaining Objection to Claim 5420 Filed by Vachagan Abed-*

*Stephen and Susie Abed-Stephen* ("Abed-Stephen"), at 10 [Docket No. 6432]; In re

Minbatiwalla, 424 B.R. 104, 112 (Bankr. S.D.N.Y. 2010); see also Bar Date Order ¶ 5(e).[18]

53.        Failure to attach sufficient documentation to a proof of claim can result in

disallowance of the claim under appropriate circumstances because absent adequate

documentation, the proof of claim is not sufficient for the objector to concede the validity of the

claim.  Abed-Stephen at 10-11; Minbatiwalla, 424 B.R. at 119, citing In re Porter, 374 B.R. 471,

480 (Bankr. D. Conn. 2007).

---

[18] Paragraph 5(e) of the Bar Date Order provides that "Proofs of claim must (i) be signed by the claimant or by an authorized agent of the claimant; (ii) ***include supporting documentation (if voluminous, attach a summary) or an explanation as to why documentation is not available***; (iii) be written in the English language; and (iv) be denominated in lawful currency of the United States." (emphasis added).

54.     The Taggart Claim is devoid of any supporting documentation as to its amount and has no basis in the Debtors' books and records.   Moreover, although the Taggart Claim asserts a right to interest, he provides no itemization of the interest he asserts is due and provides no basis for his entitlement to interest under the Bankruptcy Code.  See Delehey Decl., Exhibit 1 at 1.  Instead, Claimant only attached a one page list of case numbers identifying prior lawsuits against GMACM, some of which have now been dismissed.  Id. at 2.  Further, Claimant does not provide any calculation of the $450 million claim amount.  For these reasons, the Taggart Claim is not prima facie valid.  See In re Lehman Brothers Holdings Inc., No. 08-13555 (JMP), 2010 Bankr. LEXIS 4147, at *8 (Bankr. S.D.N.Y. Nov. 10, 2010) (determining that the claims were "so lacking in supporting evidence and logical linkage to the Debtors' cases, they are not entitled to any presumption that they are *prima facie* valid, and the burden of proof has shifted to [claimant]," and further disallowing such claims, noting that they were "founded on pure speculation", Id. at 13); accord Abed-Stephen at 11 (finding alleged claim amount in excess of $29,000 "wholly unsupported" where claim was asserted in the amount of $1.75 million, but letter attached to proof of claim detailed only $29,000 in expenses incurred as a result of Debtor's alleged wrongdoing).

55.     Accordingly, the Borrower Trust requests that the Court disallow and expunge the Taggart Claim in its entirety.

ny-1142833

### III.    The Taggart Claim Should be Disallowed to the Extent it Relies on the Counterclaim, Which Fails to Assert a Meritorious Claim

#### A.    GMACM Was Entitled to Foreclose and the Foreclosure Action Was Not Illegal[19]

56.    In a Pennsylvania mortgage foreclosure action, a foreclosing plaintiff must allege: (1) the parties, dates, and place of record for the mortgage and assignments; (2) a description of the mortgaged land; (3) the claimant's name, address, and interest in the action; (4) a "specific averment of default"; (5) an itemized statement of amount due; and (6) a demand for judgment. Pa. R. Civ. P. 1147(a)(1)-(6).  See  Beneficial Consumer Discount Co. v. Vukman,  77 A.3d 547, 552 -553 (Pa. 2013) (noting that Rule 1147 itemizes the factual averments required in mortgage foreclosure complaint).

57.    The Foreclosure Action satisfied each of the elements for foreclosure under Pennsylvania law and, therefore, GMACM would be entitled to summary judgment.   In Pennsylvania, as under the Federal Rules of Civil Procedure, summary judgment should be granted where no genuine issue of any material fact as to a necessary element of the cause of action or defense exists.  Pa. R. Civ. P. 1035.2.  While "[t]he reviewing court must view the record in a light most favorable to the non-moving party, resolving all doubts as to the existence of a genuine issue of material fact against the moving party," (Yount v. Pa. Dep't of Corrections, 966 A.2d 1115, 1118 (Pa. 2009) (citation omitted)), in order to avoid summary judgment, the non-moving party must produce "sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury will return a verdict in his favor."  Ertel v. Patriot-News Co., 674 A.2d 1038, 1042 (Pa. 1996).  In a mortgage foreclosure action, summary

---

[19]  As briefed previously, the Counterclaim seeks *in personam* monetary damages, and the majority of the Counterclaim was improperly raised in the *in rem* Foreclosure Action under Pennsylvania law.  See Docket No. 969. Because Claimant appears to reassert each of the claims raised in the Counterclaim in the Bankruptcy Court, GMACM will substantively address each Count of the Counterclaim (even though it would not have had to do so prior to the granting of the Discontinuance in the Foreclosure Action).

judgment should be granted where a claimant admits that the mortgage is in default, that he or she failed to make payments required under the mortgage, and the amount of the recorded mortgage. Landau v. W. Pa. Nat'l Bank, 282 A.2d 335, 340 (Pa. 1971); Cunningham v. McWilliams, 714 A.2d 1054, 1057 (Pa. Super. Ct. 1998). Moreover, where a claimant admits these elements, summary judgment is appropriate even if the claimant does not admit the total amount of the current indebtedness. Cunningham, 714 A.2d at 1054; Landau, 282 A.2d at 340, (granting summary judgment in favor of GMACM in foreclosure action even though the claimant did not admit the amount of indebtedness).

58.    Claimant admits that he is a party to the Mortgage for the Property located at 521 Cowpath Road, Telford, PA 18969, and that it is an enforceable contract. See, e.g., Counterclaim ¶ 118 ("GMAC is bound by the terms of Plaintiff's Mortgage."); Id., ¶ 177 ("The mortgage is an enforceable contract"). Furthermore, even though disputing the escrow calculations, Claimant did effectively affirm the principal debt owing by requesting then entering into a repayment plan. See Delehey Decl. ¶¶ 22-23; Exhibit 7 at 6.

59.    As discussed in greater detail infra, the escrow disputes do not create a genuine issue of material fact over the alleged default, as would be required to defeat summary judgment. See Landau, 282 A.2d at 340 (finding summary judgment appropriate in a Pennsylvania mortgage foreclosure action where claimant did not admit the amount of indebtedness); Cunningham, 714 A.2d at 1054 (explaining that entry of summary judgment is proper "even if the mortgagors have not admitted the total amount of the indebtedness in their pleadings").

60.    Claimant admits that there has been no payment made since "[s]ometime in 2009" when he "attempted to pay the $5,401.26, but" GMACM refused to accept "payments [that did]

20

not include additional escrow amounts for forced placed insurance." See Counterclaim, ¶¶ 104-107.

61.    Claimant alleges that GMACM "increased the monthly amount, without explanation, to $6,609.09 and then later reduced the amount to $5,612.25." See id., ¶ 97.

62.    Accordingly, despite his complaints regarding the amounts and timing of escrow charges for taxes and hazard insurance, Claimant's Counterclaim allegations themselves show that the elements required by the Pennsylvania Supreme Court in the Landau case (Landau, 282 A.2d at 340) entitled GMACM to pursue an *in rem* judgment of foreclosure.

63.    Claimant has raised various defenses to GMACM's entitlement to foreclose which are scattered slip-shod throughout various pleadings, none of which overcome the propriety of the underlying basis for the Foreclosure Action. GMACM believes the defenses to be the following (i) whether GMACM has standing to foreclose; (ii) whether the Mortgage is valid despite a reference to a county other than the county in which the property is located; (iii) whether Claimant was properly notified of the default; and (iv) whether the complaint was properly verified. Those issues will be addressed in turn below.

### (i)    GMACM Had Standing to Foreclose

64.    Claimant alleges in various pleadings that GMACM did not have standing to foreclose because the assignment of Mortgage to GMACM was not recorded before the Foreclosure Action was filed. Pennsylvania law does not require the assignment to be filed as a predicate to initiating foreclosure. Pa. R. Civ. P. 1147. In addition, recording an assignment of mortgage does not transfer the interest in the underlying note. That transfer was effectuated here by various endorsements on the Note, discussed below.

65.    The Note was sold at or just after closing, and GMACM serviced the loan from that time until the servicing rights were transferred to Ocwen in February of 2013. See Delehey

21

Decl. ¶¶ 7, 30.  In addition, GMACM, through its custodian, maintained physical possession of the original Note and Mortgage at all relevant times.  Id. at ¶ 10.  While the Note was sold by original lender, LBA Financial Group, LLC ("**LBA**"), GMACM is nevertheless a "person entitled to enforce" the Note within the meaning of the Uniform Commercial Code.

66.     Pursuant to 13 Pa. Const. Stat. Ann. § 3301(1):

"Person entitled to enforce" an instrument means:

(1) the holder of the instrument;

(2) a nonholder in possession of the instrument who has the rights of a holder; or

(3) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 3309 (relating to enforcement of lost, destroyed or stolen instrument) or 3418(d) (relating to payment or acceptance by mistake).

A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

13 Pa. Const. Stat. Ann. § 3301.  "If an indorsement is made by the holder of an instrument and [does not identify a person to whom it makes the instrument payable], it is a 'blank indorsement.'"  See 13 P.S. § 3205(b).  "When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed." Id.  "'Negotiation' means a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder." 13 Pa. Const. Stat. Ann. § 3201(a).

67.     Here, the Note was sold at or just after closing, and indorsed by original lender LBA Financial Group, LLC to GMAC Bank.  See Delehey Decl. ¶ 7.  GMAC Bank subsequently endorsed the Note to GMAC Mortgage, LLC, which in turn endorsed the note in blank (see id.) making it bearer paper enforceable by the holder, pursuant to 13 P.S. § 3301,

22

which states that a person in possession of a note indorsed in blank may enforce it.  See 13 P.S.

§ 3301.  The Note was in the possession of GMACM and/or its counsel when the Complaint was

filed.  See id.  As the Note is bearer paper and has been in the possession of GMACM, GMACM

was entitled to foreclose.

68.     Furthermore, the Pennsylvania Superior Court has held that Pa. R. Civ.

P. 1147(a)(1) "does not require that a party have a recorded assignment as a prerequisite to filing

a complaint in mortgage foreclosure."  U.S. Bank N.A. v. Mallory, 982 A.2d 986, 993 (Pa.

Super. Ct. 2009).  Where a mortgage is sold and assigned, recording of the assignment is not a

prerequisite to the assignee's standing to seek enforcement of the mortgage via a mortgage

foreclosure action.  See id. at 994.  This should be the end of the analysis.  Nonetheless, in this

case, GMACM properly alleged its legal ownership for purposes of enforcing the Mortgage,

which was assigned to GMACM on August 17, 2009, received by the Recorder of Deeds on

September 2, 2009, and deemed recorded as of October 6, 2009.  Delehey Decl. ¶ 7; id.,

Exhibit 5.

### (ii)    The Mortgage is Valid and Enforceable Despite a Reference to Bucks County

69.     Claimant has also challenged a data entry error on the Mortgage, stating that the

Property is in Bucks County, as opposed to Montgomery County.  A foreclosure "action may be

brought in and only in a county in which the land or a part of the land is located."  Pa. R. Civ. P.

1142.  Despite the data entry error citing Bucks County, the Property is sufficiently described, is

undisputedly readily located, and the data entry error does not render the Mortgage invalid or

unenforceable.

70.     A valid mortgage must "describe the property sufficiently to enable it to be

located and identified."  7 Stephanie A. Giggetts, Summary of Pennsylvania Jurisprudence

§ 21:26 (2d ed. 2009).    However, courts applying Pennsylvania law have refused to declare

invalid mortgages in which the discrepancies in the descriptions were the result of mutual

mistake.  In re Leach, 10–449, 2010 WL 3038794 at *6-8 (W.D. Pa. June 23, 2010) (holding that

the failure to include a description of residential property in a mortgage was the result of mutual

mistake and that the failure could be overlooked).    Additionally, an effective acknowledgment

does not affect the validity of an instrument as between the parties.    Hopkins v. Albee York

Homes, Inc., 42 Pa. D. & C. 2d 211, 213 (Pa. Ct. Com. Pl. York Co. 1967) (stating that there is

no authority which entitles a mortgagor, in an action against his mortgagee, to strike from a

record a mortgage which he concedes is valid and effective between them, simply because it

bears a defective acknowledgment).    Note that a party claiming that a mortgage is invalid

generally has the burden of proof on that issue.  In re Berry, 11 B.R. 886, 891 (Bankr. W.D. Pa.

1981).

71.    Notwithstanding Claimant's challenges to certain loan origination issues, and his

requested relief of rescission, he does not dispute that he signed the Mortgage, and made certain

payments pursuant to the Mortgage and Note.  Nor has he asserted any other error in the property

address or description causing an inability to locate or identify the property.  Accordingly, any

error is mutual and does not affect the Mortgage's validity or enforceability.

### (iii)    GMACM Properly Notified Claimant of Default and of its Intent to Foreclose

72.    The mortgage clearly outlines the obligations relating to notice prior to the

initiation of foreclosure proceedings.  The mortgage provides that if the lender forecloses the

security instrument, "notice shall be directed to the Property Address or any other address

Borrower designates by notice to Lender."  See Mortgage ¶¶ 13, 18.  In accordance with these

terms, GMACM sent to Claimant a notice dated June 2, 2009 – more than sixty days prior to

ny-1142833

initiating judicial proceedings – informing Claimant that the mortgage was in default and that GMACM intended to foreclose.[20]  See Delehey Decl. ¶ 20, id., Exhibit 15.

73.    In his Counterclaim, Claimant appears to challenge the issuance of proper notice by contending that GMACM sent the foreclosure notice to the wrong address.  See Counterclaim ¶¶ 44-50.  Claimant avers that "Plaintiff did not plead that it provided the Defendant with of the above notice [of default] and especially, notice of breach, nor did it attach notice of breach to its complaint."  Id. at ¶ 48.  This allegation is seemingly premised on the same facts underlying Claimants allegations in his prior counterclaim[21] that the foreclosure notice was sent to the wrong address.  See Third Am. Countercl p. 10.  Claimant averred that "GMAC Mortgage failed to update Claimant[']s address change from the April 20, 2009 letter requesting address change."  See Third Am. Countercl p. 8.  Claimant thereafter made another request dated May 28, 2009.  See Third Am. Countercl p. 9.  This letter was acknowledged by GMACM in responsive correspondence dated June 9, 2009.  See Delehey Decl. ¶ 11, Exhibit 36, at A16 (containing is a copy of GMACM's June 9, 2009 letter).

74.    Any challenge to the Foreclosure Action premised on allegedly defective notice fails in light of Claimant's constructive notice of the intention to foreclose.  It is well settled that "[p]roof that brings home knowledge of a fact to a person, if he will but use his senses and reasoning faculties, is in a great variety of cases held to be sufficient to affect him with notice."  Beckett v. Laux, 577 A.2d 1341, 1345 (Pa. Super. Ct. 1990) (citing Russeck v. Shapiro, 84 A.2d 514, 515 (Pa. Super. Ct. 1951)).  Therefore, it is axiomatic that one who has actual knowledge of

---

[20] Although the notice of foreclosure is titled "Act 6 Notice," the Pennsylvania pre-foreclosure Act 6 Notice was not technically required in the present matter because Act 6 Notice is only required where the original bona fide principal amount of the mortgage was $217,873.00 or less.  See 41 P.S. §§ 101, 403(a).  Accordingly, any argument premised on compliance with these statutory provisions is not applicable.  See Anderson Contracting Co. v. Daugherty, 417 A.2d 1227 (Pa. Super. Ct. 1979).  Nor is Act 91 applicable, because the Property was not owner occupied at the time of default.
[21] A true and correct copy of Claimant's *Third Amended Counterclaims* (without exhibits), as filed in the Foreclosure Action, is attached to the Delehey Declaration as Exhibit 37.

ny-1142833

a fact is on notice of that fact.  Beckett v. Laux, 577 A.2d at 1345.  Notably, Claimant does not

aver that he did not receive the notice sent on June 2, 2009 – only that GMACM allegedly used

an incorrect mailing address.  There is no dispute that Claimant had actual knowledge of the

default and intention to foreclosure.  In fact, on July 9, 2009, Claimant requested and was

granted a repayment plan to avoid foreclosure on the account.  See Delehey Decl. ¶¶ 22-24,

Exhibit 7 at 7.  Claimant had adequate notice, an opportunity to cure, *and* an opportunity to

complete a modified repayment plan.

75.     Even if Claimant did not have actual knowledge of the default and GMACM's

intent to foreclose, GMACM has no record of receiving an April 20, 2009 letter requesting a

change of address and, therefore, appropriately served notice at the Property's address.  See

Delehey Decl. ¶ 11.  GMACM does have a record of receiving Claimant's May 28, 2009 letter,

and GMACM responded promptly to that letter and honored the request in subsequent

correspondence.  See id., Exhibit 36, at A16.  Unlike almost every other piece of correspondence

authored and subsequently produced by Claimant in his various litigations, proof of mailing is

conspicuously absent from the copy of the April 20, 2009 letter Claimant has produced.

*Compare* Delehey Decl., Exhibit 36, A1 *with* Delehey Decl., Exhibit 35, A2-3, A7-8, A9-14.

The lack of any business record reflecting GMACM's receipt of an April 20 letter raises serious

doubts as to whether it was sent on or around April 20.  In any event, it was not received by

GMACM.  See Delehey Decl. ¶ 11.  Thus, GMACM sent the June 2, 2009 Act 6 notice to the

address of record since, because the May 29, 2009 letter was sent via regular mail, GMACM was

not alerted to Claimant's new mailing address until after it sent the Act 6 notice.  As such,

GMACM discharged its contractual obligation to provide notice prior to the initiation of the

Foreclosure Action.  Accordingly, any challenge to GMACM's notice is unavailing.

26

### (iv)   The Verification was Executed and Filed

76.     Claimant has alleged that the Foreclosure Action is procedurally improper because the verification of the Complaint was executed by an employee who did not review the averments in the Complaint or any of GMACM's business records in support of those averments. As a threshold matter, any challenge to the Verification of the Complaint (the "**Verification**") filed in the Foreclosure Action must have been asserted by way of a responsive pleading, specifically a preliminary objection pursuant to Pa. R. Civ. P. 1028(a)(2) ("failure of a pleading to conform to law or rule of court…..").[22]   Loosely, a preliminary objection is essentially the Pennsylvania state court version of a motion to dismiss with certain restrictions on the kind of objections or challenges which can be made.   Accordingly, Claimant's post-pleading attacks in the Foreclosure Action on the Verification, including motions for fraud upon the State Court, were wholly unavailing because they were not properly asserted, and even if they were, any challenge to the Verification is without merit because the Verification complied with Pennsylvania law.

77.     Pursuant to Pa. R. Civ. P. 1024, a verification is proper on information and belief. Therefore, a representative who executes a verification on behalf of a corporate party need not have personal knowledge of the facts.   Claimant's several post-pleading attacks on the adequacy of the Verification do not render it inadequate, nor could they be determinative of the merits of the foreclosure.   Here, the Verification was executed on information and belief, in compliance

---

[22] While Claimant did file preliminary objections in the Foreclosure Action, which included a challenge to the Verification, he did not do so until February 17, 2012 – nearly two and a half years following the filing of GMACM's Complaint and subsequent to the filing of his Answer and four separate sets of counterclaims.   Because preliminary objections are responsive pleadings, the objection is deemed waived if not filed within 20 days of the preceding pleading or within the period of any extension granted.   Pa. R. Civ. P. 1026, 1032; Monaco v. Montgomery Cab Co., 208 A.2d 252, 254 n. 1 (Pa. 1965).   While the court may, on cause shown or in the interest of justice, extend the filing period or allow late pleadings, PA Rule 1003; Fisher v. Hill, 81 A.2d 860, 863 (Pa. 1951), Claimant offered no just reason to excuse the considerable delay in the filing of his preliminary objection.   As such, Claimant has waived any right to object to GMACM's Complaint for failure of the pleading to conform to law or rule on the basis of a defective Verification.

27

with the Pa Rules of Civil Procedure.  Accordingly, any objection to the Verification is without

merit.[23]

**B.**     **Count I of the Counterclaim Seeking Declaratory Judgment is Moot, Requests the Same Relief as Count III Seeking to Quiet Title, and Like Count III, Fails to State a Claim Upon Which Relief May be Granted.**

78.     Although labeled "Declaratory Judgment," Count I is merely another iteration of

Claimant's allegations challenging GMACM's standing to foreclose based on his allegations

regarding mortgage assignments and note ownership.  Specifically, Claimant seeks declaratory

judgment:

a.     that GMACM is not the actual owner/holder of the Note and Mortgage in

question and that GMACM did not know whether a default had occurred, or had

been declared by the actual owners of the debt evidence[d] by the Mortgage and

Note;

b.     that GMACM lacked authority to declare a default or otherwise pursue collection

of the debt evidenced by the Note;

c.     that GMACM lacked authority to foreclose on the Property, to sell the Property,

or to distribute any proceeds thereof; and

d.     quieting title in favor of Defendant and against GMACM.

Counterclaim ¶¶ 130(a)-(d).  Claimant also seeks in this Count compensatory, special, general,

and punitive damages, along with attorneys' fees. Id., ¶ 130(e)-(g).

79.     A party seeking declaratory relief "must allege an interest which is direct,

substantial and present, and must demonstrate the existence of an actual controversy related to

---

[23] In any event, the Pennsylvania Supreme Court and Superior Court have held that a verification is a "technical rule of pleading and practice" and "more of a matter of form than substance." Commonwealth of Pa. v. Sch.  Dist. of Phila., 562 A.2d 313, 316 (Pa. 1989) (citations omitted); see also George H. Althof, Inc. v. Spartan Inns of Am., Inc., 441 A.2d 1236, 1238 (Pa. Super. 1982) (verification defects are not jurisdictional and, absent prejudice or allegations that the allegations of the Complaint are spurious, will not result in striking of a judgment).

ny-1142833

the invasion or threatened invasion of its legal rights." <u>Waslow v. Pa. Dep't of Educ.</u>, 984 A.2d 575, 580 (Pa. Commw. Ct. 2009).

80.    The grant of a declaratory judgment is not a matter of right, but a matter of the court's discretion. <u>Gulnac v. S. Butler Cnty. Sch. Dist.</u>, 587 A.2d 699, 701 (Pa. 1991).

81.    Here, the Foreclosure Action was discontinued and Defendant is unable to allege a direct, present interest and demonstrate the existence of an actual controversy sufficient to be entitled to declaratory relief.  Accordingly, this Count is moot.

82.    Furthermore, this Count is duplicative of Count III seeking to Quiet Title, which also challenges standing and for all the reasons set forth in Section III.D. below, and fully incorporated herein, this Count fails to state a claim upon which relief may be granted.

**C.    Count II of the Counterclaim (Wrongful Foreclosure) is Moot, Requests the Same Relief as Counts I and III, and Fails To State A Claim Upon Which Relief May Be Granted.**

83.    Claimant fails to state a viable claim for relief in Count II of the Counterclaim because "Wrongful Foreclosure" is not a valid cause of action in Pennsylvania.  Furthermore, the *in rem* foreclosure action was discontinued, and this Count is moot.

84.    Even if that were not so, Claimant's "wrongful foreclosure" Count fails because the allegations are based on his challenges to GMACM's standing to pursue the foreclosure and allegations that GMACM "did not own the loans or the corresponding notes at the time of the foreclosure." Counterclaim ¶ 132.

85.    Specifically, he alleges that "after the origination and funding of his mortgage loan, it was sold or transferred to investors or other entities and that Plaintiff did not own the loans or the corresponding notes at the time of the foreclosure" and therefore "did not have the right to declare default … or foreclose on Defendant's interest in the Property." <u>Id</u>.

86.    He challenges the signing authority of individuals signing documents including "any assignment" and asserts that GMACM "did not have legal authority to foreclosure on the Property."  Counterclaim ¶¶ 134-135.

87.    In the Counterclaim, Claimant further challenges GMACM's standing to foreclose in light of Mortgage assignments and changes in servicer.  See, e.g., Counterclaim ¶¶ 70-72.

88.    While standing is a prerequisite to pursuing a foreclosure, as elsewhere discussed herein, there is currently no foreclosure pending, and GMACM's alleged lack of standing to foreclose does not constitute a basis for an affirmative, offensive claim against GMACM.

89.    Furthermore, and as more fully addressed in Section III.D. below, Claimant's challenges to GMACM's standing to foreclose arise from one or more assignments of the Mortgage, the involvement of MERS, and allegations that GMACM did not own the Mortgage when the foreclosure was initiated.

90.    Courts have routinely held that a mortgagor lacks standing to challenge the assignment of a mortgage or the pooling and servicing or other third party contractual agreements involving their loans to which the mortgagor is not a party.  See infra at Section III.D.

91.    Consequently, Count II fails as a matter of law.

**D.    Count III of the Counterclaim Seeking to Quiet Title Fails To State a Claim Upon Which Relief May be Granted.**

92.    Pennsylvania Rule of Civil Procedure 1061 states that an action to quiet title may be brought where "an action of ejectment will not lie, to determine any right, lien, title or interest in the land or determine the validity or discharge of any document, obligation or deed affecting any right, lien, title, or interest in land."  Pa. R. Civ. P. 1061(b)(2).

30

93.     Further, an action to quiet title "may be brought … (3) to compel an adverse party to file, record, cancel, surrender or satisfy of record, or admit the validity, invalidity or discharge of, any document, obligation or deed affecting any right, lien, title or interest in land . . ."  Pa. R. Civ. P. 1061(b).

94.     In Count III, Claimant alleges that he is the "legal owner of the Property" and "seeks a judicial declaration that the title to the Property is vested in [Claimant] alone and that [GMACM] and each of them be declared to have no interest estate, right, title or interest in the Property" and that GMACM, its "agents and assigns, be forever enjoined from asserting any estate, right title or interest in the Property" – in other words, he "seeks to quiet title against the claims of [GMACM] and anyone else claiming interest in the property."  Counterclaim ¶¶ 138-39, 141.

95.     Claimant asserts, among other things, that the Court "should rule that the Property remains Defendant's property and award consequential damages as proven at trial." Id., ¶ 143.

96.     Claimant's challenges to GMACM's standing to foreclose arise from one or more assignments of the Mortgage and alleged non-ownership of the Mortgage when the foreclosure was initiated.  However, courts have routinely held that a mortgagor lacks standing to challenge the assignment of a mortgage or the pooling and servicing or other third party contractual agreements involving their loans to which the mortgagor is not a party.

97.     An assignment is a contract.  6 Am. Jur. 2d Assignments § 1.

98.     A plaintiff lacks standing to assert claims related to a contract if he is neither a party to nor a third-party beneficiary of the subject contract.  Ira G. Steffy & Son, Inc. v. Citizens Bank of Pa., 7 A.3d 278, 287-88 (Pa. Super. Ct. 2010) (holding that even if plaintiff could prove defendant's misconduct, plaintiff did not have standing to challenge the alleged misconduct

31

because plaintiff was not a party to or a third-party beneficiary of the contract underlying plaintiff's claims).  See also Shuster v. Pa. Turnpike Comm'n, 149 A.2d 447, 452 (1959) (one who is not a party to a contract lacks standing to argue that the contract is invalid).

99.    Claimant does not allege that he is a party to the Pooling and Servicing Agreement nor to any of the challenged assignments, nor does he, or could he effectively claim to be a third party beneficiary.

100.    In order to be afforded third-party beneficiary status, a plaintiff must establish that the parties to the contract "had an intent to benefit the third party through the contract and did, in fact, explicitly indicate this intent in the contract."  Ira G. Steffy & Son, Inc., 7 A.3d at 287-88.

101.    Nothing in the allegations regarding mortgage assignments suggests that the parties to any assignment intended to benefit Claimant.

102.    Further, Claimant does not allege that any assignment of his Mortgage changed his required performance or required his consent to be effective.  Nor could he because he had no right to notice of any assignment.  See 6 Am. Jur. 2d Assignments § 2 ("an assignment generally requires neither the knowledge nor assent of the obligor, . . . because an assignment cannot change the obligor's performance.").

103.    Numerous courts have found that borrowers do not have standing to challenge the validity of assignments of mortgage.  See, e.g., Ward v. Sec. Atl. Mortg. Elec. Registration Sys. Inc., 858 F. Supp. 2d 561, 568 (E.D.N.C. 2012) ("Plaintiffs lack standing to challenge the validity of any such assignment [of mortgage]"); Shamon v. Bank of America, N.A., No. 11-15344, 2012 WL 666843, at *1, *3 (E.D. Mich. Feb. 29, 2012) (plaintiff seeking, inter alia, to quiet title "lacks standing to contest the assignment because she was not a party to it"); Oum v. Wells Fargo, N.A., 842 F. Supp. 2d 407, 412 (D. Mass. 2012) (plaintiffs seeking, inter alia, to

32

quiet title lacked standing to challenge the validity of the assignments of mortgage); In re Mortg. Elec. Registration Sys. (MERS) Litig., No. MDL 09-2119-JAT, 2011 WL 4550189, at *5 (D. Ariz. Oct. 3, 2011) (even if an assignment of mortgage were voidable, "Plaintiffs, as third-party borrowers, are uninvolved and unaffected by the alleged Assignments, and do not possess standing to assert a claim based on such.").

104.    In short, Claimant has no right to assert grounds which might render the Assignment voidable.  See 6A C.J.S. Assignments § 132 (borrower may not assert grounds which may render the assignment voidable "because the only interest or right which an obligor of a claim has in the instrument of assignment is to insure him or herself that he or she will not have to pay the same claim twice.").

105.    Claimant has not stated any basis upon which it is necessary or appropriate to quiet title in the Property, and this is particularly so in light of the Discontinuance.

106.    Notwithstanding the prior-pending foreclosure complaint, there is no pending dispute that Claimant is the owner of the Property, and there is accordingly no need for the Court to "rule that the Property remains Defendant's property . . . ."  Counterclaim ¶ 143.

107.    As otherwise addressed herein, Claimant's claims do not challenge the validity and enforceability of the Mortgage itself, they merely challenge servicing and assignments of the Mortgage, the latter of which Claimant himself lacks standing to challenge.

108.    Because Claimant lacks standing to challenge any assignment of his Mortgage, he cannot proceed to quiet title, particularly where there is no pending challenge to his ownership of the Property.

109.    Consequently, Count III fails to state a basis to quiet title.

E.      **Count IV of the Counterclaim (Slander of Title) Fails to Adequately Plead
and State a Claim Upon Which Relief May be Granted.**

110.    Claimant fails to state a viable claim for relief in Count IV of the Counterclaim.

Disparagement of title "is the false and malicious representation of the title" of another's interest

in property.  Forman v. Cheltenham Nat'l Bank, 502 A.2d 686, 688 (Pa. Super. Ct. 1985).

111.    "In order to prevail in an action for slander of title, a plaintiff must show malice

by the defendant ....  Malice may be understood as the lack of good faith belief in the right to

publish the allegedly slanderous utterance." Id.  (internal citations omitted).

112.    Claimant has not adequately pled this essential element, nor facts that would tend

to show malicious intent or lack of good faith with respect to the servicing errors alleged,

including initiation of the Foreclosure Action.

113.    Rather, Claimant alleges only that GMACM wrongly and without privilege,

caused a Notice of Default and Assignment to be recorded against the Property.  Counterclaim

¶ 146.

114.    Such an averment does not meet the requisite pleading standards, even if

considered in light of all his allegations regarding alleged servicing errors and lack of standing to

foreclose.  Consequently, Count IV fails as a matter of law.

F.      **Count V of the Counterclaim (Negligence) and Count VII of the
Counterclaim (UTPCPL) Are Barred By The Gist Of The Action Doctrine.**

115.    Claimant's common law and statutory tort claims (Counts V and Count VII) are

each barred under the well-recognized gist of the action doctrine.

116.    The gist of the action doctrine precludes tort claims arising exclusively out of

contract, where the allegedly breached duties are grounded in contract, where liability stems

from the contract, or where the tort claim essentially duplicates a breach of contract claim.

Pittsburgh Constr. Co. v. Griffith, 834 A.2d 572, 583 (Pa. Super. Ct. 2003); Etoll, Inc. v.

34

Elias/Savion Adver., Inc., 811 A.2d 10, 12 (Pa. Super. Ct. 2002); see also Glazer v. Chandler, 200 A.2d 416, 418 (Pa. 1964); Phico Ins. Co. v. Presbyterian Med. Serv. Corp., 663 A.2d 753, 757 (Pa. Super. Ct. 1995) ("[A] contract action may not be converted into a tort action simply by alleging that the conduct in question was done wantonly.").

117.    The gist of the action doctrine applies to both claims of intentional torts (such as fraud) and claims of negligence.  See Strausser v. PRAMCO, 944 A.2d 761 (Pa. Super. Ct. 2008); Perkins v. State Farm Ins. Co., 589 F. Supp. 2d 559, 568 (M.D. Pa. 2008) (citing Etoll, 811 A.2d at 14-20 (Pa. Super. 2002)).

118.    Indeed, the United States Court of Appeals for the Third Circuit has expressly recognized the Pennsylvania Courts' well established acceptance of the gist of the action doctrine to bar intentional tort claims that overlap with breach of contract claims.  Werwinski v. Ford Motor Co., 286 F.3d 661, 681 (3d Cir. 2002) (condoning the district court's analogy to Pennsylvania's well established application of the gist of the action doctrine when dismissing intentional tort and statutory fraud claims based on the economic loss doctrine); see also Smith v. Lambert, No. C-48-CV-2011-1478, 2011 WL 7758346 (Pa. Ct. Com. Pl. Apr. 5, 2012).

119.    In the Counterclaim, Claimant's Negligence and UTPCPL counts are unquestionably barred by the "gist of the action" doctrine because the claims therein arise directly out of contractual agreements between the parties, and the alleged violations sound clearly in alleged breach of contract.

120.    For example, in Count V claiming Negligence, Claimant alleges that GMACM, "acting as Defendant's lenders and/or servicers" owed him a duty of care and allegedly breached that duty in the course of servicing and foreclosing on the loan, including by the preparation and recording of false documents and lacking authority to foreclose.  See Counterclaim ¶¶ 150-153.

121.    However, under Pennsylvania law, a lender's duties to a borrower "ar[i]se solely

from the parties' agreement." Cortez v. Keystone Bank, Inc., No. 98-2457, 2000 WL 536666, at

*8 (E.D. Pa. May 2, 2000); Hospicomm, Inc. v. Fleet Bank, N.A., 338 F. Supp. 2d 578, 583

(E.D. Pa. 2004); Atkins v. Wachovia Bank, N.A., No. 0948, 2007 WL 5479841, at *9 (Pa. Ct.

Comm. Pl. Phila. Co. Dec. 4, 2007).

122.    Any of GMACM's duties to Claimant thus arose under contract law and not tort

law.

123.    Similarly, his UTPCPL count sounds essentially in breach of contract allegations,

iterated together with a litany of challenges to GMACM's standing to foreclose and alleging

misrepresentations regarding MERS' status as nominee mortgagee (see Counterclaim ¶ 163(h)-

(o)), the latter challenges being repeatedly denied or dismissed by courts that routinely hold that

borrowers lack standing to challenge assignments and securitization agreements to which the

borrower is not a party. See Section III.D., *supra*.

124.    In addition to the misrepresentations alleged regarding MERS, the alleged

UTPCPL violations include:

> a) "billing and collecting for forced-placed insurance on the
> Property when in fact Defendant maintained insurance coverage;"
> b) "instituting improper or premature foreclosure proceedings to
> generate unwarranted fees;" c) "executing and recording false and
> misleading documents;" d) "executing and recording documents
> without the legal authority to do so;" e) "failing to disclose the
> principal for which documents were being executed and recorded;"
> f) "acting as beneficiaries and trustees without the legal authority"
> to do so; g) misrepresenting that GMACM was the real party in
> interest; … p) initiating foreclosure while "hiding the real party in
> interest;" q) failure to provide a 3-day right of rescission (despite
> admitted receipt of two TILA disclosures); r) filing foreclosure
> complaint with "robo-signed" verification by Jeffrey Stephan;
> s) improper assignments "by law firm that has an interest in
> MERS;" t) RESPA violation for failure to disclose all fees and

36

charges; u) violating the Mortgage Property Insurance Coverage
Act, 7 P.S. § 6701, et seq.; v) "other deceptive practices."

Counterclaim ¶ 163.

125.     With respect to paragraph 163(c)-(g) of the Counterclaim, these echo the
impermissible challenges to assignments and securitization agreements to which Claimant is not
a party, and at best these allegations assert a potential defense that GMACM lacked standing to
foreclosure on the Mortgage.  They do not constitute an independent claim for which damages
could be awarded.

126.     With respect to paragraphs 163(q) and 163(t) of the Counterclaim, alleging loan
disclosure deficiencies at origination, GMACM is not the original lender and the UTPCPL "does
not impose liability on assignees."  Murphy v. FDIC, 408 Fed. Appx. 609, 611 (3d Cir. 2010)
(leave to amend pleadings against assignee of mortgage was properly denied as futile because
allegations involved events prior to assignment of mortgage and the UTPCPL does not impose
liability on assignees).

127.     Finally, as to the remaining UPTCPL allegations, they again raise servicing issues
sounding directly in breach of contract and/or as a potential defense to GMACM's allegation of
default.

128.     Claimant concedes the contractual gist of his UPTCPL allegations with the
concession that "the obligation between the parties is a debt owed **pursuant to the Promissory
Note and Mortgage** . . . ."  Counterclaim ¶ 161 (emphasis added).

129.     Indeed, Claimant also elsewhere concedes the contractual nature and foundation
of these purportedly UTPCPL claims.  For example, he elsewhere specifically alleges that
(i) "GMAC is bound by the terms of Plaintiff's **Mortgage**" (Counterclaim ¶ 118 (emphasis
added)); (ii) "Plaintiff **breached** the terms of Defendant's Mortgage" by charging for backdated

37

insurance and arranging for kickbacks or commissions (Counterclaim ¶ 121 (emphasis added));
(iii) Plaintiff owed Defendant a duty of good faith and fair dealing by virtue of Plaintiff's
**contractual relationship** with Defendant; and (iv) "Defendant is entitled to recover []
damages … for the foregoing **contractual breaches**" (Counterclaim ¶ 127 (emphasis added)).

130.    It is clear that the contractual obligations of the parties are the gist of the action in
this case and the Negligence (Count V) and UTPCPL (Count VII) counts are merely reiterations
of and/or attempts to recast Claimant's former breach of contract defenses and/or offensive
breach of contract claim as tort claims actionable under the UTPCPL.

131.    These counts are, therefore, barred by the gist of the action doctrine and
accordingly fail to state a claim upon which relief may be granted.[24]

### G.    Count V of the Counterclaim (Negligence) and Count VII of the Counterclaim (UTPCPL) Are Barred By The Economic Loss Doctrine.

132.    Claimant's tort claims in Counts V and Count VII also fail to state a claim for the
additional reason that each is barred by the economic loss doctrine.

133.    "The economic loss doctrine provides that no cause of action exists for negligence
that results solely in economic damages unaccompanied by physical injury or property damage."
Adams v. Copper Beach Townhouse Cmtys., L.P., 816 A.2d 301, 305 (Pa. Super. Ct. 2003); see
also N.Y. Elec. & Gas Corp. v. Westinghouse Elec. Corp., 564 A.2d 919, 926 (Pa. Super. Ct.
1989) (observing that the economic loss doctrine bars assertion of negligence claim in situation
where parties "enter[ed] into fully integrated contracts . . . [which they] cannot avoid under
theories of negligence…."); Cortez, 2000 WL 536666, at *8-9 (finding that economic loss

---

[24] Claimant cannot avoid the gist of the action's preclusion of his Negligence and UTPCPL counts with the
conclusory description of GMACM's "acts and practices" as "likely to deceive, constituting a fraudulent business
act or practice" and as "unfair or deceptive practice with regard to the collection of debts within the meaning of 73
P.S. § 201-1 et seq." Counterclaim ¶¶ 162; 164. See, e.g., Giordano v. Ridge, 737 A.2d 350, 352 (Pa. Commonw.
Ct. 1999), aff'd, 753 A.2d 1277 (2000) (conclusions of law and unwarranted allegations and expressions of opinion
are not entitled to deference).

doctrine precludes borrower's negligence claim against lender due to contractual nature of relationship between those parties).

134.    The economic loss doctrine has also been applied to UTPCPL claims.  <u>See</u>, <u>e.g.</u>, <u>Werwinski</u>, 286 F.3d at 681 (holding that the economic loss doctrine precludes UTPCPL claims because "the same policy justifications for applying the doctrine to . . . common law intentional fraud claims support the doctrine's application to . . . UTPCPL claims . . . .").  Claimant's claims – demonstrating solely "economic loss" – are expressly barred.

135.    Claimant alleges monetary liability.  Specifically, for example, Claimant alleges vaguely that he has "suffered, and continues to suffer damages" and requests relief in the form of "actual damages, statutory damages, punitive damages, costs and reasonable attorney fees" in support of his negligence claim.  Counterclaim, at 31.

136.    With respect to his UTPCPL claim, Claimant avers merely that he "has sustained actual and statutory damages for which Plaintiff is liable[.]"  Counterclaim ¶ 159.

137.    Missing from these bare allegations is the requisite demonstration of non-economic injury.  Consequently, Counts V and VII fail as they are each barred by the "economic loss" doctrine.

> **H.    Count V of the Counterclaim Fails To State A Negligence Claim Because the Lender/Borrower Relationship Does Not Create a Separate Duty Of Care and Claimant Has Failed to Allege Facts to Support Causation.**

138.    In the alternative, Count V fails because GMACM did not owe Claimant any duties outside of those specified in the contractual Mortgage loan agreements with GMACM and because, notwithstanding the absence of such extra-contractual duties, Claimant has not alleged facts that could demonstrate that GMACM's alleged breaches caused him any damages.  This is particularly true here, when there is no allegation to contradict the presumption that the Property

for which no payments have been made in several years still serves as a source of rental income for Claimant.

139.    Under Pennsylvania law, the elements of a negligence claim are: (1) a duty or obligation recognized by the law requiring the defendant to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) defendant's failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the plaintiff.  R.W. v. Manzek, 888 A.2d 740, 746 (Pa. 2005).

140.    Claimant's negligence claim falls far short of this requisite pleading standard.

141.    Claimant alleges that GMACM, "acting as Defendant's lenders and/or servicers, had a duty to exercise reasonable care and skill" and that GMACM "breached its duty of care and skill to [Claimant] in the servicing of [his] loans[.]"  Counterclaims at ¶¶ 150-151.

142.    As the servicer of Claimant's loan, however, GMACM did not owe Claimant a separate duty of care, beyond any contractual obligations established in the Mortgage documents. See, e.g., Rousseau v. City of Phila., 514 A.2d 649, 652 (Pa. Commw. Ct. 1986); see also Atkins, 2007 WL 5479841, at *9 (observing that "the duty of a financial institution to its customer is a contractual one and not a social one"); Cortez, supra, 2000 WL 536666, at *8 (finding that lender's duties to borrowers arises solely from contract); Hospicomm, supra, 338 F. Supp. 2d at 583 (same).

143.    Claimant has not put forth facts sufficient to demonstrate a causal connection between the alleged conduct and any specific injury, but rather makes a conclusory statement that "as a direct and proximate result of the negligence and/or carelessness of Plaintiff as set forth above, Defendant suffered, and continues to suffer damages."  Counterclaim at ¶ 154.

40

144.    Claimant has failed to allege the critical elements – duty and causation – to support his claim for negligence.    Consequently, Count V fails as a matter of law for this additional reason.

**I.    Count VI of the Counterclaim (FCEUA) and Count VII of the Counterclaim (UTPCPL) Fail To State A Claim as Each ts Inapplicable to the Loan Transaction.**

145.    Counts VI and VII of the Counterclaim fail to state claims against GMACM as neither the FCEUA nor UTPCPL apply to commercial transactions, such as the one between Claimant and the original mortgagee LBA, which was an extension of credit secured by an investment property.

146.    To recover on a UTPCPL claim, "a plaintiff must suffer an ascertainable loss resulting from an 'unfair or deceptive act' and have made a 'purchase . . . primarily for personal, family or household purposes.'"    Balderston v. Medtronic Sofamor Danek, Inc., 285 F.3d 238, 240 (3d Cir. 2002) (citing Valley Forge Towers S. Condo. Ass'n v. Ron-Ike Foam Insulators, Inc., 574 A.2d 641, 645 (Pa. Super. Ct. 1990)); see also 73 P.S. § 201-9.2.

147.    While the purchase or refinance of a home, condominium, or apartment for residential purposes comes under the protections of the UTPCPL, id. at 648 (citations omitted); Gabriel v. O'Hara, 534 A.2d 488, 491-493 (Pa. Super. Ct. 1987), the subject loan was a refinance of two loans securing a three-unit investment property.

148.    Courts in Pennsylvania have expressly declined to apply the UTPCPL under the exact circumstances.    See, e.g., Growall v. Maietta, 931 A.2d 667 (Pa. Super. Ct. 2007) (UTPCPL not applicable where Growall testified he purchased the three-unit building as an "investment" and "possibly" to live in); Lal v. Ameriquest Mortg. Co., 858 A.2d 119, 124-125 (Pa. Super. Ct. 2004) (Section 201-9.2 of the UTPCPL not applicable to property purchased as an investment property rather than for personal, family, or household purposes).

41

149.    The FCEUA also is limited by statute to loans or extensions of credit "which [are] obtained primarily for personal, family or household purposes..." 73 Pa. Const. Stat. Ann. § 2270.3; see also Ocasio v. Ocwen Loan Servicing, LLC, No. 07-cv-5410, 2009 U.S. Dist. LEXIS 20260, at *9 (E.D. Pa. Mar. 13, 2009) (dismissing FCEUA claim where it was not shown that loan was primarily for personal, family or household purposes); Lyon Fin. Servs. v. Woodlake Imaging, LLC, No. 04-cv-3334, 2005 U.S. Dist. LEXIS 2011 (E.D. Pa. Feb. 9, 2005) (holding loan for business purposes not covered by FDCPA or FCEUA).  Claimant fails to allege this necessary condition in bringing his Counterclaims.

150.    The loan at issue was of a commercial nature used by Claimant to finance a debt secured by a property containing apartments.

151.    As evidenced by the Small Residential Income Property Appraisal Report completed in connection with the origination of the loan, the Property has three rental units.  See Delehey Decl., Exhibit 2.  Nor do the Counterclaims contradict that the loan was for investment purposes.

152.    Thus, the loan cannot be said to be of "personal, family or household purposes" as is required under both the FCEUA and UTPCPL.  Consequently, Counts VI and VII fail as a matter of law.

**J.    Count VI of the Counterclaim (FCEUA) Fails To State A Claim As Consumers Do Not Have A Private Right Of Action Under The FCEUA.**

153.    Count VI also fails to state a claim because the FCEUA does not contain a private right of action.  Close v. Edison (In re Close), No. 93-17145-DWS, 2003 WL 22697825, at *3, n.5 (Bankr. E.D. Pa. Oct. 29, 2003) ("While the UDAP provides a private right of action, 73 P.S. 201–9.2, the FCEUA does not."); see also Magness v. Walled Lake Credit Bureau, LLC, No. 12-

6586, 2013 WL 1311093, at *4 (E.D. Pa. Apr. 1, 2013) ("The UTPCPL provides a private right of action for FCEUA violations.").

154.    While it is true that the Pennsylvania Legislature made a violation of the provisions of the FCEUA a prohibited act under the UTPCPL, Claimant's independent claim for an FCEUA violation fails as a matter of law and must be dismissed.  Claimant makes a meager attempt to remedy this deficiency by making a broad reference to "73 P.S. § 201.1 et seq."  See Counterclaims at ¶ 158.

155.    While this is the citation for the UTPCPL generally, simply inserting the citation into a conclusory paragraph does not remedy the deficiency of the pleading.

156.    Furthermore, Claimant's invocation of the FDCPA as the basis for alleging an FCEUA violation also fails to sufficiently plead or state a cause of action.

157.    The FDCPA references in the Amended Counterclaim are comprised of conclusory allegations of unspecified statutory violations, see, e.g., Counterclaim ¶ 69 (reciting numerous prohibited practices under the FDCPA), and repeated challenges to GMACM's standing to service and or foreclose the Mortgage and alleged omissions in noticing assignments and/or changes in servicer, that do not sufficiently allege actual violations of the FDCPA.  See id., ¶¶ 70-74 (challenging GMACM's standing).

158.    As previously set forth supra at Section III.D. and incorporated herein, Claimant lacks standing to challenge the assignment of his Mortgage.

159.    For the foregoing reasons, Count VI fails as a matter of law.

**K.    Count IX of the Counterclaim Fails To Adequately Plead or State A Claim for Invasion of Privacy.**

160.    Count IX of the Counterclaim fails to state a claim of false light invasion of privacy because:  (1) Claimant fails to allege facts establishing that GMACM gave publicity to

private facts; and (2) GMACM's actions taken in the course of litigation or in contemplation of litigation are subject to an absolute judicial privilege.

161.     In order to state a claim of false-light invasion of privacy under Pennsylvania law, a plaintiff must allege "(1) publicity, (2) given to private facts, (3) which could be highly offensive to a reasonable person, and (4) which are not of legitimate concern to the public." Harris v. Easton Publ'g Co., 483 A.2d 1377, 1384 (Pa. Super. Ct. 1984); see also Rest. 2d Torts § 652E.

162.     "Publicity" for the purposes of a false light invasion of privacy claim requires more than the "publication" required to sustain a claim for defamation.  Harris, 483 A.2d at 1384 (citing Rest. 2d Torts § 652D).    Rather, it requires that "the matter is made public by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge."  Id.; Vogel v. W.T. Grant Co., 327 A.2d 133, 137 (Pa. 1974) ("The disclosure . . .  must be a public disclosure, and not a private one; there must be, in other words, publicity.  It is an invasion of his rights to publish in a newspaper that the plaintiff did not pay his debts, or to post a notice to that effect in a window on the public street, or to cry it aloud in the highway, but not to communicate the fact to the plaintiff's employer, or to any other individual, or even to a small group . . . ." (citation omitted)).

163.     Notably, it is not clear from the face of the pleadings what, if any, publication forms the basis of this claim.  Rather, Claimant's contention appears to be based on the filing of the Foreclosure Action – "[GMACM] illegally called default on the Note upon Defendant." Counterclaim ¶ 171.

44

164.    However, Claimant does not allege that GMACM published any facts regarding Claimant in a newspaper, periodical, or any medium that has any sort of wide circulation among the public.

165.    Thus, the "publicity" element is critically absent from the Counterclaim, and consequently, Claimant fails to satisfy the requisite pleading standard.

166.    Moreover, to the extent that Claimant's Count is based on GMACM's filing of the Foreclosure Action, such action is protected by absolute judicial privilege.

167.    "It has long been the law of Pennsylvania that statements made by judges, attorneys, witnesses and parties in the course of or pertinent to any stage of judicial proceedings are absolutely privileged and, therefore, cannot form the basis for liability for defamation." Pawlowski v. Smorto, 588 A.2d 36, 41 (Pa. 1991); see also Binder v. Triangle Publ'ns, Inc., 275 A.2d 53, 56 (Pa. 1971) ("All communications pertinent to any stage of a judicial proceeding are accorded an absolute privilege which cannot be destroyed by abuse."). Pennsylvania affords this privilege so that "[a]ll persons involved in a judicial proceeding are encouraged . . . to speak frankly and argue freely without danger or concern that they may be required to defend their statements in a later defamation action." Smith v. Griffiths, 476 A.2d 22, 24 (Pa. Super. Ct. 1984).

168.    For this privilege to apply, the relevant communication must have been: "(1) issued as a matter of regular course of the proceedings; [and] (2) pertinent and material to the proceedings." Bochetto v. Gibson, 860 A.2d 67, 73 (Pa. 2004).

169.    These two factors apply equally to communications made prior to the initiation of judicial proceedings, in which case "the protected communication would need to have been pertinent and material and would need to have been issued in the regular course of preparing for

contemplated proceedings." <u>Post v. Mendel</u>, 507 A.2d 351, 356 (Pa. 1986). "[T]he existence of the privilege does not depend upon the motive of the defendant in making the allegedly defamatory statement. The privilege is absolute and cannot be destroyed by abuse." <u>Richmond v. McHale</u>, 35 A.3d 779, 784–85 (Pa. Super. Ct. 2012) (citing <u>Greenberg v. Aetna Ins. Co.</u>, 235 A.2d 576 (Pa. 1967)).

170.    Again, the only "publication" that appears to be alleged in the Counterclaim is the filing of the Complaint in the Foreclosure Action. However, such may not form the basis of a claim for "false light" – the Complaint, and the statements contained therein, were filed as a matter of regular course where a loan default is alleged, and as such were pertinent and material to the proceedings.

171.    Nothing in the Counterclaim can reasonably be construed otherwise. Consequently, Count IX fails as a matter of law.

### L.    Claimant's MPICA Claim Should Be Denied and Expunged Because It Does Not Adequately Plead Nor State a Claim Upon Which Relief May Be Granted.

172.    Count XI should also be rejected for failing to state a claim upon which relief may be granted. In Count XI of the Counterclaim, Claimant alleges that GMACM's actions in "ramming forced placed insurance against Defendant violated [the] Mortgage Property Insurance Coverage Act, 7 P.S. § 6701 *et seq*. . . . ." Counterclaim ¶ 181. Although the MPICA, 7 P.S. § 6701 et seq., limits the amount of insurance that a mortgage lender can require a borrower to carry on residential property, as set forth below it does not provide a borrower with a private right of action. A private right of action (also termed a private cause of action) has been defined as "the right of an individual to bring suit to remedy or prevent an injury that results from another party's actual or threatened violation of a legal requirement." <u>Wisniewski v. Rodale, Inc.</u>, 510 F.3d 294, 296 (3d Cir. 2007) (footnotes omitted).

46

173.    MPICA was enacted on July 4, 2008.  P.L. 626, no. 51, and consists of three, very

brief, subparts (a title, two definitions, and a restriction).  The MPICA provides that:

> No lender may require a borrower, as a condition of obtaining or
> maintaining a secured loan, to obtain property insurance coverage
> which exceeds the replacement value of buildings and structures
> situate on the land used to secure the loan.  A borrower on a loan
> secured by real property may not be required to insure the value of
> the land.

7 Pa. Const. Stat. Ann. § 6703.

174.    This is the only substantive provision of the MPICA.  Nowhere in the statute does

the MPICA expressly grant a private right of action for individuals.  The Pennsylvania Statutory

Construction Act provides that:

> In all cases where a remedy is provided or a duty is enjoined or
> anything is directed to be done by any statute, the directions of the
> statute shall be strictly pursued, and no penalty shall be inflicted,
> or anything done agreeably to the common law, in such cases,
> further than shall be necessary for carrying such statute into effect.

7 Pa. Const. Stat. Ann. § 1504.  This provision provides for neither a private right of action, nor a

remedy.

175.    Even if it did provide a private right of action or defense to the prior-pending

foreclosure, which it does not, Claimant has failed to allege facts showing that the statute was

violated.   The conclusory allegations that GMACM's actions in "ramming forced placed

insurance against Defendant" do not allege either the measure of insurance required by

GMACM, nor the presumptively lower replacement value that the insurance requirement should

not have exceeded under MPICA.  Nor do the insurance related allegations in earlier sections of

the Counterclaim redeem this failure.  Claimant's allegations regarding lender placed insurance

refer to unlawful charges imposed despite his proof of coverage, a purported conspiracy to

charge Claimant for backdated insurance coverage and to kickbacks or commissions allegedly

ny-1142833

paid to GMACM in connection therewith.  See, e.g., Counterclaim ¶¶ 90-126.  In the context of

these allegations, Claimant asserts that he "maintained $660,000 of hazard insurance on the

Property as of July 11, 2008, and notified Plaintiff of same."  Id., ¶ 99.  He does not, however,

allege how the hazard insurance required by GMACM or imposed by GMACM was in violation

of MPICA.

176.    Clearly the MPICA claim cannot be pursued by Claimant as an offensive claim

against GMACM.

177.    Accordingly, Count XI of the Counterclaim must be dismissed.

**M.    Claimant's Breach of Contract Claim (Count X) Fails for Failure to Allege Any Damages Caused By GMACM's Alleged Breach of the Mortgage Contract And Is Otherwise Precluded by Claimant's Material Breaches of the Mortgage Agreement and Subsequent Repayment Plan, by Which He Ratified His Material Obligations under the Mortgage, Notwithstanding His Dispute as to the Accuracy of the Escrow Calculations and Other Alleged Breaches by GMACM.**

**(i)    Count X of the Counterclaim Fails to State a Viable Claim for Breach of Contract.**

178.    A party alleging breach of contract under Pennsylvania law must establish: (1) the

existence of a contract, including its essential terms; (2) a breach of a duty imposed by the

contract; and (3) resultant damages.  Corestates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa.

Super. Ct. 1999); Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003) (citation omitted).

Claimant's breach of contract claim repeats allegations of other claims, in particular, his

allegations that GMACM: (1) breached the mortgage notice provisions of the Mortgage; and

otherwise breached unspecified provisions of the Mortgage by: (2) charging excessive fees and

interest; (3) failing to apply the payments made by Defendant, resulting in the foreclosure of the

Property; and (4) charging for force placed insurance.  See Counterclaim ¶¶ 177-78.  Claimant

alleges that he "suffered compensatory damages" as a result of GMACM's alleged breaches.  Id.

at ¶ 179.

**(a)    Claimant Has Not Plausibly Alleged that He Suffered
Reasonably Foreseeable Damages Proximately Caused by
GMACM's Alleged Breaches.**

179.    Recoverable damages must be (1) such as would naturally and ordinarily result

from the breach, (2) reasonably foreseeable and within the contemplation of the parties at the

time they made the contract, and (3) capable of proof with reasonably certainty.  Ferrer v. Trs of

Univ. of Pa., 825 A.2d 591, 610 (Pa. 2002).  Furthermore, both the fact of loss and the amount of

loss sustained must be proved with reasonable certainty.  Merion Spring Co. v. Muelles Hnos.

Garcia Torres, S.A., 462 A.2d 686, 696 n.8 (Pa. 1983).  "As a general rule, damages are not

recoverable if they are too speculative, vague or contingent and are not recoverable for loss

beyond an amount that the evidence permits to be established with reasonable certainty."  Id.

(citing Restatement (Second) of Contracts, § 352; Murray on Contracts, § 226).  A plaintiff must

give a factfinder evidence from which damages may be calculated to a "reasonable certainty."

Ware v. Rodale Press, Inc., 322 F.3d at 225-226 (citations omitted).  "At a minimum, reasonable

certainty embraces a rough calculation that is not 'too speculative, vague or contingent' upon

some unknown factor."  Id. at 226 (citation omitted).

180.    As an initial matter, Claimant does not specify, and the facts alleged cannot be

construed to infer, what amount of specific damages he suffered as a result of any alleged

breaches.  Claimant's mere quasi-legal conclusion that he "suffered compensatory damages" as a

result of GMACM's alleged breaches in no way identifies what direct harm was suffered as a

result of what particular breach by GMACM.  Id. at ¶ 179.  His vague allegation that GMACM's

failure to apply payments he made resulted in the foreclosure of the Property – even if liberally

construed to satisfy the pleading requirement for the damages element – is in any event belied by

49

the fact that no direct damages from the alleged breaches can be reasonably inferred from his allegations. Claimant has never lost possession of the Property, nor any ongoing rental income from the one or more rental units comprising the Property. See Delehey Decl., ¶ 28.

181.    Indeed, the facts alleged illustrate that GMACM's allegedly wrongful servicing did not proximately cause Claimant any damages. Rather, he has for several years enjoyed the benefits of the 2008 loan disbursement of more than six hundred thousand dollars, without making repayment for same. See Delehey Decl. ¶¶ 7-9 (financial disbursements by which Claimant benefitted); ¶¶ 19, 25 (payments owing since April 1, 2009).

182.    Moreover, even assuming *arguendo*, that Claimant could adequately allege that he suffered any damages because the Foreclosure Action was commenced, they were not proximately caused by GMACM. Indeed, it was Claimant, not GMACM, who would have caused any such hypothetical damages, when he repudiated the Repayment Plan. See Delehey Decl. ¶¶ 22-24. Pursuant to the Repayment Plan, Claimant could have avoided commencement of the Foreclosure Action if he made a payment of $11,224.50 by July 31, 2009 (See id., Exhibit 7 at 7), which amount was only approximately *one half* of the amount that would have otherwise been owing by July 1, 2009 (for April 1, May 1, June 1, and July 1 payment due dates), even under Claimant's allegation that he should never have been required to pay more than the original $5,401/month payment, and not even accounting for late payments by then accrued. Therefore, even assuming that GMACM breached the contract in the ways alleged by Claimant, GMACM cured any such errors by agreeing to accept amounts far less than the allegedly erroneous demand amounts, and indeed far less than the original payment amount to which Claimant was accustomed to paying, and Claimant's allegations that escrow accounting errors caused the Foreclosure Action are wholly unavailing.

50

183.    Accordingly, Claimant's Breach of Contract count fails to establish the essential element of reasonably foreseeable damages proximately caused by GMACM's alleged breaches, and thereby fails to state any plausible claim damages suffered.

> **(b)    Claimant Waived Notice Requirements, Errors in Enforcement Proceedings, and Otherwise Fails to State a Viable Claim for Insufficient Notice.**

184.    In executing the Note, Claimant waived the "rights of presentment," therein defined as the "right to require Lender to demand payment of amounts due." Note ¶ 7. Moreover, in executing the Mortgage, Claimant agreed to waive and release even more. Specifically, he "waive[d] and release[d] any error or defects in proceedings to enforce this Security Instrument…." Mortgage ¶ 20. The inadequate notice or notices Claimant alleges would fall squarely within these waiver provisions, and Claimant accordingly cannot state a claim for breach based on allegedly inadequate notices of default, acceleration, or intent to foreclose when he very specifically waived the same and agreed to waive and release "any errors or defects" in procedures to enforce the Security Instrument.[25]

185.    Furthermore, as addressed more fully in Section III.A(iii), *supra*, which is incorporated as if fully set forth herein, GMACM provided Claimant with sufficient notice of its intention to foreclose, and Claimant was well aware of same, having received several notices of his default and risk of foreclosure. See Delehey Decl. ¶¶ 19-21. Indeed he attempted to avoid foreclosure by entering into a repayment plan, with which he ultimately failed to comply. See Delehey Decl. ¶¶ 22-24. Clearly, no prejudice, much less breach or damages arose from any alleged defect in notice.

---

[25] For this reason, too, Claimant cannot object to, much less claim damages related to, the Verification that he challenges.

**(c)**      **Claimant's Vague Allegations of Misapplication of Payments
or Failure to Accept Payments Do Not State a Viable Claim for
Breach of Contract.**

186.    Paragraph 3 of the Mortgage provides:

> **Application of Payments**.  All payments under Paragraphs 1 and
> 2 shall be applied by Lender as follows: First, to the mortgage
> insurance premium to be paid by Lender to the Secretary . . .
> Second, to any taxes, special assessments, leasehold payments or
> ground rents, and fire, flood and other hazard insurance premiums,
> as required; Third, to interest due under the Note; Fourth, to
> amortization of the principal of the Note; and Fifth, to late charges
> due under the Note.

Mortgage ¶ 3.

187.    Claimant alleges general misapplications of non-particularized payments.  For example, he claims that GMACM "failed to post Defendant's payments timely resulting in charges of interest and collection costs."  Counterclaim ¶ 89.  He also claims that GMACM "paid real estate taxes too early that caused Defendant's escrow analysis to be higher tha[n] it should have been."  Id. ¶ 91.  Other than these and similar vague and conclusory allegations of erroneous payment applications and improper timing of tax payments, Claimant has not specified how the payments he made were misapplied, much less how they violated the foregoing order of priority of payment to which he contractually agreed.  Moreover, Claimant cites to no provision requiring GMACM to apply the payments Claimant made in any specific timeframe, nor to pay real estate taxes in a time frame strategized by a borrower.  Accordingly, his claim of misapplication of payments does not state a breach of contract claim and cannot provide him any relief.

188.    Furthermore, although Claimant loosely refers to "payments" that were not accepted or misapplied, the singular payment attempt that Claimant specifies that he attempted to make and was not accepted by GMACM was an April 24, 2009 payment for $5,401.26.

52

Claimant alleges that the "Initial Escrow Account Disclosure statement provided that the first monthly payment was due September 1, 2008 and would be $5,401.26," but that GMACM later "increased the monthly amount, without explanation, to $6,609.09 and then later reduced the amount to $5,612.25." Counterclaim, ¶¶ 96-97. Claimant alleges that "Defendant attempted to pay the $5,401.26, but Plaintiff refused to accept the payments [sic]." Id. ¶ 106. Importantly and as further addressed *infra*, Claimant was already in material breach and default, since the April 2009 payment was due on April 1, 2009, and even the grace period for avoiding a late charge had passed. See Note ¶ 6(A) (where the full monthly payment owing under the Mortgage is not paid within 15 calendar days of when it is due, lender may collect a late charge of 4% of the overdue amount). Claimant does not allege that he attempted to pay the then-accrued late charges when he sought to make the late payment.

189. Furthermore, Claimant fails to acknowledge that even if GMACM had erred or improperly refused to accept an April 24, 2009 attempted online payment, he does not allege any subsequent attempts to make any specific payments online or otherwise, nor offer any explanation as to why he failed to pay the past-due amounts owing in the subsequent months preceding foreclosure. Indeed, even if there were any error on GMACM's part with respect to the April 24 attempted payment or others, GMACM cured any such error when it agreed to postpone its foreclosure rights by extending a repayment plan that Claimant requested, and then later repudiated, citing to economic hardships. See Delehey Decl. ¶¶ 22-24.

> **(ii)    The Allegations that GMACM Breached the Mortgage By Charging "Excessive Fees and Interest" and Charging For Lender Placed Insurance Do Not State a Claim for Breach of Contract**

190. Pursuant to Paragraph Four of the Mortgage:

> **Fire, Flood and Other Hazard Insurance**. Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and

> contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires . . . . All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to Lender.

Mortgage ¶ 4 (emphasis added). The Mortgage terms regarding Escrow and Lender Placed Insurance further provide:

> **Monthly Payment of Taxes, Insurance and Other Charges**. Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under Paragraph 4. . . . [T]hese items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

> Lender may, **at any time**, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601, et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), . . ."

> If the amounts of funds held by Lender **at any time** are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

Mortgage ¶ 2 (emphasis added).

191.    Having executed the Mortgage, Claimant was bound to comply with its terms requiring his monthly payments of amounts sufficient to cover the escrow and other charges contained therein, and notwithstanding his surprise or disagreement with the calculations of same.

192.    Claimant does not dispute GMACM's right to ensure that the property was at all times property covered by hazard insurance, and his disagreement with how GMACM protected its secured interest in the property does not define any contractual duty that GMACM allegedly

54

breached by the temporary imposition of lender placed insurance or charging of other fees he
disputes. His allegations do not dispute the right of GMACM to "at any time, collect and hold
amounts" for escrow items or to require a borrower to make up any shortages. Mortgage ¶ 2.
Indeed, Claimant *admits* GMACM's obligation to do so. See Counterclaim, ¶ 95 ("The Loan
was FHA insured that required the collection and disbursement of real estate taxes, hazard
insurance, and mortgage insurance.").

193.    Furthermore, any intended claim that alleged RESPA escrow servicing violations
constituted a breach of contract by GMACM resulting in damages from the costs of the prior
pending Foreclosure Action is unavailing since RESPA violations do not "affect the validity or
enforceability of any . . . loan, loan agreement, mortgage, or lien made or arising in connection
with a federally related mortgage loan." 12 U.S.C. § 2615. For this reason, RESPA violations
may not be asserted as a counterclaim or defense in a Pennsylvania foreclosure proceeding. See,
e.g., Fed. Savs. & Loan Assoc. of Erie v. McAfee, 15 Pa. D. & C.3d 287, 288 (Erie Cty. Ct.
1980) ("[a]ny defense must go to the existence and validity of the mortgage."); Birchall v.
Countrywide Home Loans, Inc., No. 08-2447, 2009 WL 3822201, at *6 (E.D.P.A. Nov. 12,
2009) ("a mortgage foreclosure action, as an action *in rem*, does not allow either party to pursue
an action *in personam*, such as an action for damages." (citation omitted)). Accordingly, the
servicing errors alleged do not constitute a breach of contract claim.

**N.    Even Assuming *Arguendo* that GMACM Had Breached the Mortgage
Agreement, Claimant's Own Breaches Preclude Him from Obtaining
Damages for Breach and/or Negate Any Chance for Recovery by Restricting
Any Possible Recovery to Damages He Could Prove in Excess of the Losses
Caused by His Breach.**

194.    "When performance of a duty under a contract is due, any nonperformance is a
breach." Widmer Eng'g Inc. v. Dufalla, 837 A.2d 459, 467 (Pa. Super. Ct. 2003), citing
Restatement (Second) of Contracts § 235(2) (1981). The general rule is that a party who has

55

materially breached a contract may not complain if the other party refuses to perform his

obligations under the contract.   17 Am. Jur. 2d, § 365.   Where "both contracting parties

materially breach the contract, recovery, by either party, is limited to that benefit which is in

excess of the loss said party has caused by his own breach." Spagnol Enters., Inc. v. Penn Lear

Dev. Corp. (In re Spagnol Enters., Inc.), 81 B.R. at 353 (W.D. Pa.1987) (citing Lancellotti v.

Thomas, 491 A.2d 117 (Pa. Super. Ct. 1985)).

### (i)      Claimant Breached and Defaulted Under the Mortgage.

195.    The "Cross-Default Provision" of the Mortgage Family Rider states:

> Borrower's default or breach under any note or agreement in which
> Lender has an interest shall be a breach under the Security
> Instrument and Lender may invoke any of the remedies permitted
> in the Security Instrument.

Mortgage, Family Rider, Section I.  Accordingly, Claimant's failures to abide by the Mortgage,

Note, and/or any other agreements executed with respect to them, constituted breaches of the

Mortgage.

### (a)      Claimant Breached the Mortgage and Related Loan Documentation Requiring Claimant's Occupancy of the Property as a Principal Residence for One Year.

196.    Paragraph 5 of the Mortgage provides:

> Borrower shall also be in default if Borrower, during the loan
> application process, gave materially false or inaccurate information
> or statements to Lender (or failed to provide Lender with any
> material information) in connection with the loan evidenced by the
> Note, including, but not limited to, representations concerning
> Borrower's occupancy of the Property as a principal residence.

Mortgage ¶ 5.  Further, contemporaneous with the execution of the Mortgage, Claimant executed

the "Borrower's Closing Affidavit," by which he affirmed his understanding of representations

in the Loan application and attested that the Property was his primary residence.  See Delehey

Decl., ¶ 27, Exhibit 20.

56

197.     It appears, however, that the Property was not Claimant's primary residence at the relevant times, at least not for the one-year duration required under the Mortgage and related loan agreements.  For example, as set forth in the Delehey Declaration, by letter dated May 28, 2009, Claimant requested that GMACM change his mailing address to 45 Heron Road, Holland, PA.  This request was made well before the one-year primary residence requirement would have expired (on or around July 11, 2009, if Claimant took up primary residence on the day the loan closed).  Furthermore, attached to the Delehey Declaration are copies of Claimant's W-2 filings for 2007 and 2008, which show his residency as 45 Heron Road, Holland PA.  See Delehey Decl. ¶ 27, Exhibit 19.  Accordingly, it appears that Claimant was in default for misrepresenting his occupancy of the Property as his principal residence, and/or breached the Mortgage and accompanying Closing Affidavit referenced above.

### (b)     Claimant Breached the Note and Mortgage Terms Requiring Timely Payments in Full on the 1st of Each Month.

198.     Paragraph 1 of the Mortgage addressing the payment of principal, interest and late charges, provides that:

> Borrower shall pay when due the principal of and interest on, the debt evidenced by the Note and late charges due under the Note.
>
> . . .
>
> Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges a sum for (a) taxes and special assessments … (c) premiums for insurance required under Paragraph 4.

Mortgage ¶¶ 1-2 (emphasis added).  The Note similarly provides:

> Borrower shall make a payment of principal and interest to Lender on the first day of each month . . . .
>
> Each monthly payment of principal and interest will be in the amount of $4,169.42.  This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied

to principal, interest and other items in the order described in the Security Instrument . . . .

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four and 00/100ths percent (4.000%) of the overdue amount of each payment.

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, . . . require immediate payment in full . . . .

Note ¶¶ 4(A); 4(C); 4(6)(A).

199.    Claimant failed to timely make payments owing on the first of each month, including, among others, the payment owing on April 1, 2009.  See Delehey Decl. ¶ 19.  His allegation of breach by an alleged failure of GMACM to accept an April 24 online payment in amount he determined was owing for April 1, 2009 does not change the fact of this breach.

**(ii)    Claimant's Material Breaches Preclude Recovery for any Comparatively Non-Material Breach by GMACM.**

200.    Under Pennsylvania law, the failure to repay a loan as required under the terms of a contract requiring prompt repayment constitutes a material breach of a contract.  Nikole, Inc. v. Klinger, 603 A.2d 587, 594 (Pa. Super. Ct. 1992) appeal denied, 535 Pa. 660, 634 A.2d 223. Where a contract is substantially performed, an immaterial failure of performance does not negate contract requirements.  See, e.g., Widmer Eng'g, Inc. v. Dufalla, 837 A.2d at 467-468.

201.    Even assuming the truth of Claimant's allegations of errors, GMACM's error-free servicing of the account was not a condition precedent to Claimant's repayment obligations and did not relieve him of his material obligation to repay the Mortgage loan proceeds.[26]  Claimant's obligation on the account arose when he received the benefit of the loan proceeds on or around

---

[26] A condition precedent is a condition "which must occur before a duty to perform under a contract arises."  Acme Mkts. Inc. v. Fed. Armored Exp., Inc., 648 A.2d 1218, 1220 (Pa. Super. Ct. 1994).

July 11, 2008, which, as a practical matter, was before GMACM would have exercised its contractual right to adjust the monthly demands for escrow shortages.  See Mortgage ¶ 2 ("Lender may, at any time, collect and hold amounts for Escrow Items" and if "the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.").

202.    Even if perfect servicing calculations were deemed a condition precedent to Claimant's obligations, which is not the case, any error Claimant alleges by GMACM is comparatively immaterial in relation to Claimant's obligations to repay funds received of more than $650,000, and did not excuse Claimant's actual and pre-existing obligation on the Debt. Instead, "[t]o the extent that the non-occurrence of a condition would cause disproportionate forfeiture, a court may excuse the non-occurrence of that [non-material] condition." RESTATEMENT (SECOND) OF CONTRACTS § 229; See also, e.g., Widmer, 837 A.2d at 467-468, Nikole, Inc. v. Klinger, 603 A.2d at 594, *appeal denied*, 634 A.2d 223 (Pa. 1993) (where lessees and would-be purchasers in a lease-purchase agreement elected to treat the lease-purchase agreement as breached by the lessor/seller when he effectively repudiated the contract by defaulting on his own mortgage such that he could not expect to convey good title per the parties' lease-purchase agreement, their election to discontinue monthly payments while remaining in possession of the property constituted a material breach of the agreement precluding their recovery of damages despite the lessor/seller's prior repudiation and material breach of the agreement).

203.    Claimant does not allege any subsequent timely attempt to make a payment in accordance with the Mortgage.  And even if Claimant weren't otherwise barred from asserting

59

breach and recovering any hypothetical damages for the reasons set forth *supra*, he certainly was after advising GMACM that he would not comply with the repayment plan.  See, e.g., Nikole, 603 A.2d at 593 (where seller advised that he would not make mortgage payments necessary to convey good title to purchasers in accordance with their agreement, he "repudiated the Agreement and was not entitled to recover damages under the Agreement.").  Claimant's repudiation of the repayment plan further disallows him from now claiming that the foreclosure was improper.

204.    Moreover, even assuming *arguendo* that GMACM breached the Mortgage in the ways Claimant alleges, Claimant still could not expect an award of damages because where "both contracting parties materially breach the contract, recovery, by either party, is limited to that benefit which is in excess of the loss said party has caused by his own breach."  In re Spagnol Enters., Inc., 81 B.R. at 353; citing Lancellotti v. Thomas, 491 A.2d 117.  In light of the fact that Claimant has enjoyed all the benefits of the 2008 loan distribution and has not made payments thereon since 2009, the net losses quite plainly accrue to GMACM or its principal.

205.    For all of the foregoing reasons, Claimant's breach of contract claim lacks the requisite damages element and otherwise fails to state a viable breach of contract claim.

## IV.    The Complaint in the First Federal Action and Second Federal Action Fail to Satisfy Basic Pleading Standards and Any Claim Based Thereon Must be Disallowed and Expunged

206.    A proof of claim is *prima facie* evidence of the validity of a claim only if it is legally sufficient.  In re Alper Holdings USA, No. 07-12148 (BRL), 2008 Bankr. LEXIS 86, at *9 (Bankr. S.D.N.Y. Jan. 15, 2008), aff'd, 398 B.R. 736 (S.D.N.Y. 2008).  That is, among other things, it "allege[s] facts sufficient to support the claim."  Id.  "In determining whether a party has met their burden in connection with a proof of claim, bankruptcy courts have looked to the pleading requirements set forth in the Federal Rules of Civil Procedure."  In re DJK Residential,

LLC, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009); accord WestLB AG v. BAC Fla. Bank, 912 F.

Supp. 2d 86, 91-92 (S.D.N.Y. 2012); In re Adelphia Commc'ns Corp., 359 B.R. 54, 56 n.5

(Bankr. S.D.N.Y. 2006)).  In DJK Residential, the court held:

> While [a] Claim "does not need detailed factual allegations, . . . [it] requires more than labels and conclusions . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2006).  The [Claimant] must assert "enough facts to state a claim to relief that is plausible on its face." Id. at 577.  To show facial plausibility, the Claimant must plead "factual content that allows the court to draw the reasonable inference that the [Debtor] is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L Ed. 2d 868 (2009).

DJK Residential, 416 B.R. at 106.

207.    For the reasons set forth below, to the extent the Taggart Claim is premised on

any claim asserted in the First Federal Action or the Second Federal Action, the Taggart Claim

fails to state a claim against any of the Debtors under applicable law and should be disallowed

and expunged.

### A.    The First Federal Action

**(i)    Claimant's Constitutional Claims of Due Process Violations and a Taking (Counts 1-4, 12-13) Cannot Survive Against GMACM, a Non-Governmental Entity That Did Not Act "Under Color of State Law"[27]**

208.    The Constitutional Claims asserted in Counts 1-4 and 12-13, which allege a

taking of property without due process or a fair trial, cannot survive against GMACM.[28]  In

Counts 1 through 4, Claimant alleged that all Defendants violated the United States and

Pennsylvania Constitutions by removing his FHA license to perform FHA appraisals.

Specifically, he claims:

---

[27] The constitutional claims asserted as against the Federal Defendants have been dismissed on the merits.  See Delehey Decl. ¶ 38.

[28] Claimant's 10th, 11th, 14th, 15th and 16th Claims (asserted cumulatively within his First and Second Amended Complaints) sought declaratory and/or injunctive relief as against the Government Defendants.

61

> All Defendants violated the 'The Constitution of the United States
> of America As they took 'Property' from Plaintiff without any
> 'Due Process'; A violation of The 5th Amendment of the United
> States Constitution.  Claimant's FHA license To perform FHA
> appraisals was taken away from him without any 'Due Process' by
> the actions of all defendants.  No 'Due Process' to this date has
> been completed for the taking of Claimant's FHA license.

Amended Complaint ¶ 24; see also id. ¶ 29 (alleging a taking in violation of the Pennsylvania

Constitution for lack of due process); ¶ 34 (alleging a taking without a "Fair Trial" in violation of

the U.S. Constitution); ¶ 39 (alleging a taking without a fair trial in violation of Pennsylvania

Constitution).  And, in Counts 12 and 13, Claimant seeks declaratory judgment as to "whether

Plaintiff received 'Due Process' & 'A Fair Trial' (under The United States Constitution &

Pennsylvania State Constitution) when his 'FHA License to perform appraisals was taken from

him."  Amended Complaint ¶¶ 86-103.  He claims that the "Government, HUD & FHA removed

[his] License with simply the erroneous reporting by Defendant, GMAC [t]hat Claimant [] is in

default."  Id. ¶ 90.  At bottom, Claimant alleges that because "[n]o court of law has rendered a

verdict in the litigation whether Claimant, or GMACM are in default . . . no "due Process" has

taken place."  Id. ¶ 91.  Instead, he claims that "his FHA License [was] removed by the [Federal

Defendants] for simply being erroneously reported as in default by GMAC[M]" and "[t]o this

date no judgment has been entered against Claimant for being 'In Default' on the loan from

GMAC[M] on Cowpath Rd."  Id. ¶¶ 98-99 (emphasis omitted).

209.    The Fifth and Fourteenth Amendments to the U.S. Constitution require state

action or action under color of law.  Wholly fatal to these same claims asserted against GMACM

is the fact that GMACM is a private non-governmental entity, which did not act under color of

state law when servicing Claimant's loan.  42 U.S.C. § 1983.  The appropriate vehicle for

assertions of civil rights violations requires "a [Claimant to prove] that (1) the conduct

complained of was committed by a person acting under color of state law, and (2) that such

conduct deprived a person of rights, privileges, and immunities secured by the Constitution."
Bougher v. Univ. of Pittsburgh, 882 F.2d 74, 78 (3d Cir. 1989) (Rehearing and Rehearing En Banc Denied Oct. 26, 1989).

210.    GMACM is a private entity that commenced foreclosure in an effort to enforce the terms of the Note and Mortgage and Claimant has provided no basis or factual allegation to support the claim that GMACM was acting under color of state law.  See Amended Complaint ¶ 12 (containing bare assertion of action under color of law).[29]  Because GMACM is not a state actor, Claimant cannot sustain any claim based on Counts 1-4, 12 or 13 of the First Federal Action.  See, e.g., Iqbal, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, which, [if] accepted as true, 'state[s] a claim to relief that is plausible on its face.'").

211.    Similarly, the Pennsylvania Constitution requires state action, providing that: "[N]or shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured."  Pa. Const. Art. I § 10.

### (ii)    Claimant's Claim for Restraint of Trade (Count 5) Is Not Viable

212.    Claimant also alleges, based on substantially similar allegations to those made in his Constitutional claims, that all Defendants "restrained [his] ability to Make a Living as an appraiser . . . without any Fair Trial or Due Process by the actions of all defendants.  Amended Complaint ¶ 44 (internal quotes omitted).

---

[29] Claimant also alleges, without any factual support, that all Defendants "were acting as principal employer, and or agent, servant and employee of the said principal(s) or employee(s), . . . ."  Amended Complaint ¶ 12.  Claimant's conclusory assertion that the Federal Defendants and GMACM were acting in agency cannot impose state-actor status on GMACM, where Claimant has stated no plausible basis for an assertion that GMACM undertook to act for any Federal Defendant, which controlled its actions.  See Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997) ("a court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss").  "The law is clear in Pennsylvania that the three basic elements of agency are: the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking."  Jones v. ABN AMRO Mortg. Grp., Inc., 551 F. Supp. 2d 400, 410 (E.D. Pa. 2008) (quoting Basile v. H & R Block, Inc., 761 A.2d 1115, 1120 (Pa. 2000)).

ny-1142833

213.    This claim also essentially echoes the Constitutional claims addressed above.  To the extent that Claimant is attempting to state a claim under the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits unfair competition methods and unfair or deceptive practices, "his claim fails because private parties are not authorized to file enforcement actions, only the FTC has that authority."  See Delehey Decl., Exhibit 28, at ¶ 25  (citing Vino 100, LLC v. Smoke on the Water, LLC, No. 09-4983, 2012 WL 1071174, at *8, (E.D. Pa. Mar. 30, 2012)). Although the automatic stay prevented Judge Ditter from adjudicating this claim against GMACM, the analysis is the same.  Judge Ditter wrote,

> If Taggart is attempting to bring a claim under the federal consumer protection law found in § 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits unfair methods of competition and unfair or deceptive acts or practices, his claim fails because private parties are not authorized to file enforcement actions, only the FTC has that authority.  See Vino 100, LLC v. Smoke on the Water, LLC, No. 09-4983, 2012 WL 1071174, at *8 (E.D. Pa. Mar. 30, 2012); see also Holloway v. Bristol–Myers Corp., 485 F.2d 986, 987, 1001 (D.C. Cir.1973) (holding there is no express or implied private right of action to enforce the Federal Trade Commission Act).

See Delehey Decl., Exhibit 28, at ¶ 25.  Claimant can no better state a claim under the Federal Trade Commission Act against GMACM than he could against the Federal Defendants.

**(iii)    Claimant's Claims for Defamation and Tortious Conduct (Counts 6 & 7) Are Barred by the Gist of the Action Doctrine**

214.    Claimant avers in Count 6 that:

> The actions of all Defendants Defamed Taggart's personal and Professional Reputation as an appraiser by erroneously reporting that he is ineligible to be on the FHA licensed appraiser list. The[y] also Defamed Taggart by preventing from completing FHA appraisals, something he has done for[] many years.  It has also caused [him] to [lose] other mortgage appraisal business as clients and/or prospective clients will only hire appraisers on the FHA list for conventional appraisals and other appraisals.  Taggart's FHA license to perform FHA appraisals was willfully taken away from him without any Fair Trial or Due Process by the actions of all

64

> defendants.  No Fair Trial or Due Process to this date has been
> completed for the taking of Taggart's FHA license.

Amended Complaint ¶ 49 (internal quotes omitted).  Similarly, in Count 7 Claimant alleges that the actions of all Defendants were "Tort[i]ous" and caused Claimant harm including: loss of income, personal reputation, professional reputation, loss of FHA appraiser license, loss of Pennsylvania State and U.S. Constitutional rights and rights regarding mortgage agreement."  Id. ¶ 54.  To the extent Claims 6 and 7 are construed as more than a repeated assertion of the allegations in Claims 1-4, they are barred by the gist of the action doctrine.

215.    As described above, at Section III.F., "the gist of the action doctrine … operates to preclude a Claimant from re-casting ordinary breach of contract claims into tort claims." Vives v. Rodriguez, 846 F. Supp. 2d 507, 516 (E.D. Pa. 2012) (citing Hart v. Arnold, 884 A.2d 316, 339 (Pa. Super. Ct. 2005)) (internal quotes omitted).  As recognized by Claimant and described *supra* at III.F., the relationship between Claimant and GMACM is based entirely in contract, and the rights of the parties are prescribed therein.  Claimant has not asserted, nor could he assert extra-contractual duties owing to him, outside of those embodied in the Loan documents.  See also Amended Complaint ¶¶ 15-16 (alleging breach of contract related claims).

216.    Claimant's allegations make clear that his claim against GMAC is based in contract, and the gist of the action doctrine accordingly precludes the recasting of such breach of contract claims as separate tort claims.  See e.g. Reardon v. Allegheny Coll., 926 A.2d 477, 486 (Pa. Super. Ct. 2007); Sarsfield v. CitiMortgage, Inc., 707 F. Supp. 2d 546 (M.D. Pa 2010).

### (iv)    Claimant's Claim of a UTPCPL Violation (Count 8) is Barred By the Economic Loss Rule And Even If That Were Not So, Claimant Fails to State a Prima Facie Claim under the UTPCPL

217.    Claimant alleges that the actions of all Defendants are a violation of the UTPCPL and caused Claimant harm including: loss of income, personal reputation, professional

reputation, loss of FHA appraiser license, loss of Pennsylvania State and U.S. Constitutional rights and rights regarding mortgage agreement. Amended Complaint ¶ 59. To the extent this claim is intended to seek relief under the UTPCPL, to which reference is made in Paragraph 8 under the heading "Jurisdiction and Venue," the claim cannot survive for the same reason set forth in Section III.I. above, namely the UTPCPL does not apply to this transaction.

### (v)    Catch-All Claim for Relief Invoking All Applicable Laws (Count 9)

218.    In Count 9, Claimant "cites the actions of all Defendants for any other laws that are applicable to the case that caused harm to Claimant, including but not limited to, loss of income, personal reputation, professional reputation, loss of FHA appraiser license, loss of Pennsylvania State and U.S. Constitutional rights and rights regarding mortgage agreement." Id. ¶ 64.

219.    This Claim merely reiterates the other allegations of the Amended Complaint, and need not be separately argued. To the extent that this Claim is intended or construed to state any other claim, it fails to meet the basic pleading standard of Fed.R.Civ.P 8, as set forth above, in that it fails to provide "fair notice of what the [other] claim is and the grounds upon which it rests." See Twombly, 550 U.S. at 555.

### B.    The Second Federal Action

220.    Like the Complaint in the First Federal Action, the Complaint in the Second Federal Action fails to meet the federal pleading standards and any claim based on this action should also be disallowed and expunged. There is no actual cause of action specifically asserted against GMACM. Only the co-defendants (except MERS) are named in the heading to the one and only count. See Delehey Decl., Exhibit 32 at 10. Indeed, GMACM and MERS are only listed in the caption as Third-Party Defendants.

221.     The generic allegations peppered throughout the Second Federal Action are premised on the alleged wrongful foreclosure and as to GMACM are not anything different from that which is alleged by Claimant in opposition to the Foreclosure Action.  To the extent that any claim against GMACM could even be implied (certainly improper under federal pleadings standards), it could only possibly be one under the Pennsylvania and/or United States Constitutions.  Responses to such allegations have been briefed in response to Counts 1-4 of the First Federal Action and in connection with the Counterclaim, which arguments are incorporated by reference herein.

## V.    The Adversary Complaint Fails to Establish Any Right to Relief

222.     As described *supra*, the Adversary Proceeding was voluntarily dismissed by Claimant after he filed the Taggart Claim.  The voluntary dismissal was prompted by the Debtors' filing of a motion for sanctions which motion was premised on this Court's order.  *Memorandum Opinion and Order Denying the Taggart Motions* [Docket No. 2098].

223.     Nonetheless, to the extent the Court believes it appropriate to consider the merits of the Adversary Proceeding, the Taggart Claim fails for the reasons set forth below.

### A.    Count I and Count VIII of the Adversary Complaint Fail to Plead a RICO Claim Under 18 U.S.C. § 1962(c) or (d)

224.     Claimant alleged in Count I of the Adversary Complaint that "Defendants, GMAC Mortgage & Balboa Insurance, Inc. fraudulently placed 'Forced Placed Insurance' on Plaintiffs property when it knew insurance was in place."  Adversary Complaint at p. 40.  In Count VIII, he alleged that Defendants "committed tortious actions, deception, fraud, Fraud Upon the Court, engaged in conspiracy, racketeering and unfair trade practices as described [and] harmed Plaintiff, Kenneth Taggart, by having to defend a fraudulent foreclosure based on fraudulent documents, including an alleged assignment of mortgage, produced and recorded by

defendants." Adversary Complaint at ¶ 147.[30]  It appears that Claimant relies upon the Racketeer

Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, et seq. ("**RICO**"), and to the

extent that Claimant is attempting to assert a RICO claim, it appears to be asserted under

§ 1962(c) or possibly § 1962(d).  Section 1962(c) of the RICO statute states:

> It shall be unlawful for any person employed by or associated with
> any enterprise engaged in, or in the activities of which affect,
> interstate or foreign commerce, to conduct or participate, directly
> or indirectly, in the conduct of such enterprise's affairs through a
> pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).  Section 1962(d) of the RICO statute makes it unlawful to conspire to

violate § 1962(c).  See 18 U.S.C. § 1962(d) ("It shall be unlawful for any person to conspire to

violate any of the provisions of subsection (a), (b), or (c) of this section").  To the extent Count I

or Count VIII of the Adversary Complaint were liberally construed to allege a RICO violation or

a conspiracy for same under §§ 1962(c) or (d), the allegations are deficient and the claim fails as

a matter of law.

### (i)    Claimant Does Not Plead the Elements of a § 1962(c) RICO Claim.

225.    To state a claim under RICO for violation of section 1962(c), a plaintiff must

properly plead four elements: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of

racketeering activity.  See Sedima S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985); First Capital

Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 173 (2d Cir. 2004); Lum v. Bank of Am.,

361 F.3d 217, 223 (3d Cir. 2004).  While Claimant uses the verbiage of "racketeering," he has

failed to properly plead the requisite elements of a RICO claim, including the existence of an

enterprise and conduct rising to the level of operating or managing the affairs of an enterprise.

---

[30] To the extent that Count VIII of the Adversary Complaint may be construed to allege a pattern of racketeering via
mail or wire fraud as a predicate act under RICO (as opposed to a conspiracy to improperly impose lender placed
insurance as set forth in Count I), it is addressed in Section V.A(iii).

### (a)    Claimant Fails to Allege a Cognizable RICO "Enterprise."

226.    Claimant fails to plead a cognizable RICO enterprise.    Allegations of an enterprise are "crucial" to successfully pleading a RICO claim.  Plum Prop. Assocs., Inc. v. Mineral Trading Co., No. 09-cv-1059, 2009 U.S. Dist. LEXIS 119834, at *7 (W.D. Pa. Dec. 23, 2009) (citing McClure Enters., Inc. v. Fellerman, No. 06-353, 2007 U.S. Dist. LEXIS 35374, at *3 (M.D. Pa. May 15, 2007)).    RICO defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.  18 U.S.C. § 1961(4); United States v. Turkette, 452 U.S. 576, 581-82 (1981).  Thus, an enterprise may either be a legal entity such as corporation or a group "associated in fact."  Plum Prop. Assocs., Inc., 2009 U.S. Dist. LEXIS 119834, at *7-8.  To establish a cognizable RICO enterprise, however, a plaintiff must prove the following: "1) that the enterprise is an ongoing organization with some sort of framework or superstructure for making or carrying out decisions; 2) that the members of the enterprise function as a continuing unit with established duties; and finally 3) that the enterprise must be separate and apart from the pattern of activity in which it engages."  Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 789-90 (3d Cir. 1984); Plum Property Assoc., Inc., 2009 U.S. Dist. LEXIS 119834, at *8 ("An enterprise must contain an organizational structure as well as a common purpose and existence independent of any racketeering activity.").  As the Supreme Court has made clear, "[t]he 'enterprise' is not the 'pattern of racketeering activity;' it is an entity separate and apart from the pattern of activity in which it engages."  Turkette, 452 U.S. at 583.

227.    While a plaintiff is not required to expressly plead these three elements, "where the allegations in the pleadings negate the existence of such an enterprise, dismissal is proper."  Parrino v. Swift, No. 06-0537(DRD)(SDW), 2006 WL 1722585, at *2 (D.N.J. June 19, 2006); 300 Broadway v. Martin Friedman Assocs., P.C., No. 08-5514(KSH), 2009 WL 3297558, at *5

(D.N.J. Oct. 13, 2009); see also Seville Indus. Machinery Corp., 742 F.2d at 790 n.5.  Courts

have not hesitated to dismiss RICO claims where the allegations negated the existence of an

enterprise separate and apart from the alleged predicate acts of racketeering.  In 300 Broadway v.

Martin Friedman Assocs., plaintiff claimed that an enterprise was established because the

defendants constituted "an association in fact" and that "[a]s a whole, defendants acted in concert

with specific, well-defined goals in the Enterprise, to achieve a common goal of appropriating

assets from the [plaintiffs], from the federal and state government, and from other parties."  Id.

at *5-6 (quoting amended complaint).  The court concluded that these allegations negated the

existence of an enterprise separate and apart from the alleged racketeering activities.  Id. at *6.

In particular, the court reasoned that "the 'well-defined goal' of the Enterprise is defendants'

conspiracy to divest plaintiffs of their ownership interests.  There is no other identity or

characteristic attributed to the Enterprise and as such, it is indistinguishable from what it was

formed to do."  Id.; see also Parrino, 2006 WL 1722585, at *2-3 (dismissing RICO claim on the

grounds that allegation that the defendants were "part of an association, in fact … [that] share a

common purpose, unity and identifiable structure, of an ongoing scheme to defraud plaintiffs and

to unlawfully obtain money by means of false and fraudulent representations regarding the

services they would perform for plaintiffs" showed the enterprise had no existence outside of the

alleged acts of racketeering); McClure Enters., Inc., No. 06-353, 2007 U.S. Dist. LEXIS 35374,

at *3 (M.D. Pa. May 15, 2007) (dismissing RICO claim because plaintiff failed to plead the

existence of an enterprise separate and apart from the alleged underlying racketeering activity).

228.    Claimant's RICO allegations in this case similarly fail to plead the existence of a

separate entity constituting an enterprise, and - as in the cases just cited – Claimant's RICO

claim fails as a matter of law.  Here, Claimant alleges that from 2008-2009, a "'Cash Strapped

70

GMAC Mortgage, LLC,' conspired with Balboa Insurance Services, Inc./Balboa Insurance and engaged in racketeering, by fraudulently charging borrowers, including plaintiff, for insurance and/or services that were unnecessary, not needed, or even provided, and obtaining insurance that apparently did not even exist; All in violation of the mortgage contract."    Adversary Complaint at ¶ 68.  He alleges further that GMACM perpetrated and conspired with Balboa Insurance and engaged in racketeering via its "partnership or agreement" with Balboa Insurance "to defraud borrowers, … to force borrowers into foreclosure unnecessarily, increase fees charged to borrowers, increase fees charged to investors when they foreclosed, increase their profits, and unduly enrich themselves."  Id.

229.    Claimant alleges that GMACM, Balboa Insurance, Inc., Jeffrey Stephan, and Stephan Maxwell "conspired to deceive and defraud Plaintiff for the need of duplicate Hazard Insurance for his property when they very well knew he already had Hazard Insurance in place." Id. at ¶ 82.  He claims that GMACM "knew that insurance was required and provided at closing or the loan would not have been permitted to close."  Id.  at ¶ 83.  "GMAC Mortgage LLC also paid renewal premium out of plaintiff['s] escrow account as GMAC's own escrow payment history shows."  Id.  He alleges that despite "the inherent knowledge of Insurance being in place, GMAC Mortgage LLC [c]onspired with Balboa Insurance Services Inc. to, intentionally [d]eceive and [d]efraud Plaintiff out Money [sic] for unnecessary Duplicate Insurance premiums at three and one half times the 'Market Rate' for such insurance."  Id. at ¶ 84.  He alleges further, , among other things, that "This Conspiracy of Fraud and Deception was done to unduly enrich themselves as the GMAC Mortgage, LLC & Balboa Insurance Services, Inc. engaged in: Racketeering, Tortuous Actions, and Unfair Trade Practices."  Id.  GMACM did this, he claims, "to ca[u]se 'Forced Foreclosures' charge fees, and/or increase the likelihood of foreclosure" and

"GMAC Mortgage, LLC makes more money as a servicer when a loan is in foreclosure as opposed to a loan being current." Id.

230.    As illustrated by the foregoing, the RICO claim alleges only the goal and activities perpetrated through an alleged GMACM/Balboa conspiracy, namely: to force foreclosures, increase fees charged to borrowers, increase profits, and unduly enrich themselves. See supra.  As in the cases cited above, Claimant has not alleged the existence of an enterprise that could be construed to constitute an "entity separate and apart from the pattern of activity in which it engages."  Turkette, 452 U.S. at 583.  The allegations do not describe any sort of framework or superstructure for making or carrying out decisions.  They do not describe the established duties of GMACM and Balboa as enterprise members, nor any organizational structure between GMACM and Balboa.  The allegations claim no purpose independent of the alleged racketeering activity accomplished by way of lender placed insurance.  See Seville Indus. Mach. Corp., supra.  Claimant's allegations show that there "is no other identity or characteristic attributed to the Enterprise and as such, it is indistinguishable from what it was formed to do." 300 Broadway, 2009 WL 3297558 at *6.

231.    "[T]he RICO 'person' must conduct the affairs of the RICO 'enterprise' through a pattern of racketeering activity.  We have determined that the person and the enterprise referred to must be distinct."  Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 344 (2d Cir. 1994).  As illustrated above, other federal courts have dismissed RICO claims involving banks as a matter of law where the allegations show the alleged enterprise and underlying racketeering activity were one in the same.  By way of further example, the case of Kottler v. Deutsche Bank AG, 607 F. Supp. 2d 447 (S.D.N.Y. 2009), stemmed from the alleged sale of illegal tax shelters by KPMG and a law firm.  Among other defendants, plaintiffs' suit

named two banks as defendants and alleged that the banks participated in a scheme to defraud plaintiffs by "provid[ing] funds that facilitated the financials so that the tax strategies could be implemented." Id. at 454. They further claimed that the banks continued to market and sell the tax shelters in exchange for millions in fees despite their knowledge of the unlawful nature of the schemes. Id. As to the RICO element of enterprise, the complaint alleged that the banks and other co-conspirators formed an enterprise "whose purpose was to sell fraudulent tax products for millions of dollars" through predicate acts of mail and wire fraud. Id. at 458. Notwithstanding these allegations, the court dismissed the RICO claim, holding that plaintiffs "fail[ed] to allege an enterprise that is separate and distinct from the fraudulent tax shelter scheme allegedly engaged in by the Defendants and the co-conspirators." Id. "The enterprise and the pattern in this case are one and the same," the court noted, in that "Defendants and co-conspirators joined forces for the purpose of creating these allegedly fraudulent tax shelters." Id. at 459; see also Heffernan v. HSBC Bank USA, No. 99cv07981, 2001 WL 803719, at *6 (E.D.N.Y. Mar. 29, 2001) (concluding that plaintiffs failed adequately to allege that the defendant bank was a member of any enterprise because the "only common factor uniting [the members of the purported enterprises] is the sum of the fraudulent activities alleged. There is no [ ] other purpose to any of the purported enterprises.").

232.    Because Claimant has failed to plead the existence of an enterprise separate and apart from the alleged underlying racketeering activity, a RICO claim is not stated. However, even if the Adversary Complaint were construed to adequately plead an enterprise, any RICO claim under § 1962(c) would nevertheless fail because the allegations do not satisfy the "operation or management" test, nor establish a pattern of racketeering activity, as set forth below.

(ii)    **Claimant Has Failed to Plead That GMACM "Conducted," i.e., Participated in the Operation or Management of Affairs of an Enterprise.**

233.    The "conduct" element of a RICO claim requires a plaintiff to plead that the defendant participated in the operation or management of the affairs of an enterprise. <u>Reves v. Ernst & Young</u>, 507 U.S. 170, 183 (1993). Specifically, to "conduct or participate" in the affairs of an enterprise within the meaning of § 1962(c), "one must have some part in directing those affairs." <u>Id</u>. at 179 (explaining that while "primary responsibility" for or a "formal position" in an enterprise is not necessary, "*some* part in directing the enterprise's affairs is required" (emphasis in original)).

234.    The "operation or management" test is "a very difficult test to satisfy." <u>Zhu v. First Atl. Bank</u>, No. 05-cv-96(NRB), 2005 WL 2757536, at *5 (S.D.N.Y. Oct. 25, 2005) (citing <u>LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co.</u>, 951 F. Supp. 1071, 1090 (S.D.N.Y. 1996)). "It is not enough to merely take directions and perform tasks that are necessary and helpful to the enterprise . . . [or] provide goods and services that ultimately benefit the enterprise." <u>U.S. Fire Ins. Co. v. United Limousine Serv., Inc.</u>, 303 F. Supp. 2d 432, 451-452 (S.D.N.Y. 2004) (citations and quotations omitted). The "test is not involvement but control." <u>Id</u>. at 451. Thus, even where a defendant may have had some involvement – or, for that matter, significant involvement – with the alleged enterprise, it will not be held to have violated section 1962(c) if it was not itself engaged in the actual management or operation of the enterprise.

235.    A good illustration of this principle may be found in <u>Univ. of Md. at Balt. v. Peat, Marwick, Main & Co.</u>, 996 F.2d 1534 (3d Cir. 1993). In <u>University of Maryland</u>, the Third Circuit was addressing a RICO claim against an auditor under § 1962(c). The plaintiff had made numerous allegations of involvement by the defendant auditor. Among other matters, it alleged that the defendant had performed deficient audits, issued unqualified opinions, and provided

74

other accounting and financial services to an insurance company that was part of an alleged enterprise. Notwithstanding the breadth of those allegations, the court held that they did not rise to the level of operation or management of the affairs of the alleged enterprise sufficient to satisfy Reves. See Univ. of Md., 996 F.2d at 1539. As the court reasoned, "[s]imply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result." Id. "The operation or management test goes to that nexus. In other words, the person must knowingly engage in 'directing the enterprise's affairs' through a pattern of racketeering activity." Id. Notably, the University of Maryland court ruled this way well before the Supreme Court's 2009 decision raising the pleading requirements. See Ashcroft v. Iqbal, 556 U.S. 662 (2009). Accordingly, the critical analysis applied to pleadings including RICO has only been heightened.

236. Here, the Adversary Complaint is devoid of any allegation that GMACM participated in the operation or management of a separate enterprise, or that GMACM had some part in directing the affairs of a separate enterprise. The allegations merely recite a conspiracy to achieve a common goal of increasing profits by improper placement of lender placed insurance and do not plead any operation or management by GMACM over "enterprise activities separate and apart from [the defendants'] regular business activities." Acosta v. Campbell, No. 04cv7610RL28DAB, 2006 WL 146208, at *6 (M.D. Fla. Jan. 18, 2006) (emphasis added) ("the court has consistently insisted that the RICO defendant or person be separate and distinct from the enterprise . . . because liability depends on showing that the defendants conducted or participated in the conduct of the enterprise's affairs, not just their own affairs"); see also Atkinson v. Anadarko Bank and Trust Co., 808 F.2d 438, 441 (5th Cir. 1987) (rejecting plaintiff's claim that a bank, its holding company, and three employees were furthering a RICO

enterprise where their alleged conduct consisted of mailing allegedly fraudulent loan statements – a regular bank activity); Riverwoods Chappaqua Corp. 30 F.3d at 343-44 (plaintiff failed to establish the existence of conduct of a distinct RICO enterprise where complained of racketeering activities consisted of employees of bank merely carrying out bank business).

237.    Because Claimant has not pled GMACM's "conduct" by participation in the operation or management of the affairs of an entity constituting an enterprise, a RICO claim could not be sustained.  See Reves, 507 U.S. at 183.

### (iii)    Claimant Has Not Sufficiently Alleged the Additional Requisite Elements of a "Pattern" of "Racketeering" Activity.

238.    As with the first two elements, Claimant's allegations fail to satisfy the third and fourth elements required to state a RICO claim, racketeering activity and a pattern of the same. Under the RICO statute, a "pattern of racketeering activity" requires at least two acts of racketeering activity within a ten-year period.  18 U.S.C. § 1961(5).

### (a)    The Lender Placed Insurance Claims in Count I Do Not Adequately Plead a Pattern of Racketeering Activity.

239.    As illustrated above, Claimant's allegations of the improper placement of lender placed insurance by way of a conspiracy between GMACM and Balboa do not adequately allege a pattern of racketeering.  As discussed supra, even assuming the truth of Claimant's allegations, they only amount to conclusory statements that there was a conspiracy between GMACM and Balboa to impose improper lender placed insurance in order to unduly enrich themselves through "racketeering, tort[i]ous actions, and unfair trade practices."   Adversary Complaint at ¶ 84. Claimant alleges that this purported racketeering activity occurred from 2008-2009.  See id. at ¶ 68 (alleging GMACM conspired with Balboa by fraudulently charging borrowers, including plaintiff, for insurance and/or services that were unnecessary).  He alleges further that GMACM perpetrated and conspired with Balboa Insurance and engaged in racketeering via its partnership

76

or agreement with Balboa Insurance "to defraud borrowers, . . to force borrowers into foreclosure unnecessarily, increase fees charged to borrowers, increase fees charged to investors when they foreclosed, increase their profits, and unduly enrich themselves." Id.

240.    Claimant's allegation that GMACM conspired by "fraudulently charging borrowers, including [Claimant]" for unnecessary insurance does not meet the pleading standards of Iqbal to satisfy the "pattern" and "racketeering" elements for a RICO claim.  Claimant's only specific allegation is that lender placed insurance was improperly placed on *his* account one time and on unspecified "borrowers" at unspecified times.  See id.  His general reference to other "borrowers" is not adequate to state a plausible claim under RICO.  Furthermore, as Claimant's allegations essentially acknowledge, the imposition of lender placed insurance under certain circumstances is a contractual right under the Mortgage, and allegations of an alleged breach of contract in his case along with unspecified instances of other "borrowers" do not constitute racketeering activity, much less a pattern of racketeering activity.  As courts have pointed out, "[b]ankers do not become racketeers by acting like bankers."  Sinclair v. Hawke, 314 F.3d 934, 943 (8th Cir. 2003); Jones v. Liberty Bank & Trust Co., 461 F. App'x 407, 409 (5th Cir. 2012). Similarly, loan servicers and third party servicers do not become racketeers by acting like loan servicers.  See also Heffernan, 2001 WL 803719, at *6.

241.    Claimant's allegations that GMACM knew or should have known that lender placed insurance was unnecessary do not alter this conclusion.  "[T]he law is clear that merely having a business relationship with and performing services for … an enterprise, including financial, accounting and legal services, does not support RICO liability because performance of such services is not the equivalent of participation in the operation and management of the enterprise.  This is true even though the service provider knows of the enterprise's illicit nature

or performs improper acts itself." Jubelirer v. Mastercard Int'l, Inc., 68 F. Supp. 2d 1049, 1053

(W.D. Wis. 1999) (internal citation omitted).

> **(b)      Claimant's Allegations of Mail and Wire Fraud in Count VIII
> Fail To Adequately Plead a Pattern of Racketeering Activity.[31]**

242.     Predicate acts of racketeering "may include, *inter alia*, federal mail fraud under

18 U.S.C. § 1341 or federal wire fraud under 18 U.S.C. § 1343." Lum, 361 F.3d at 223.  Where

a plaintiff alleges mail and wire fraud as a basis for a RICO violation, the allegations of fraud

must comply with Federal Rule of Civil Procedure 9(b), which requires that allegations of fraud

be pled with particularity.   "To prove a violation of the mail fraud statute, plaintiffs must

establish the existence of a fraudulent scheme and a mailing in furtherance of the scheme."

Lundy v. Catholic Health Sys. Of Long Island Inc., 711 F.3d 106, 119 (2d Cir. 2013) (quoting

McLaughlin v. Anderson, 962 F.2d 187, 190-91 (2d Cir. 1992)).  See also Spool v. World Child

Int'l Adoption Agency, 520 F.3d 178, 184-85 (2d Cir. 2008).

243.     Plaintiff must also identify the purpose of any such mailings or communications

within defendants' fraudulent scheme, as the mail and wire fraud statutes punish only those

communications that have a place within such schemes and not, for example, all business

practices that fail to fulfill expectations or that breach business contracts.  McLaughlin, 962 F.2d

at 191-92; see also Mills v. Polar Molecular Corp., 12 F.3d 1170, 1176 (2d Cir. 1993) ("A

complaint alleging mail and wire fraud must plead facts that give rise to a strong inference that

the defendant possessed fraudulent intent.").

---

[31] For the same reasons set forth in Sections V.A(i) and V.A(ii), above, Claimant's repeated and conclusory
allegations of  GMAC Mortgage's conspiracy with MERS and legal counsel to commit fraudulent acts by mail or
wire fraud do not adequately plead the requisite RICO elements of a  cognizable "Enterprise" or "Conduct"
comprised of control or direction over an enterprise.  Furthermore, the Intra-corporate conspiracy doctrine precludes
the same for purposes of legal counsel.  See, e.g., Heffernan, 2001 WL 803719, at *7 (intra-corporate conspiracy
doctrine bars claims against counsel as co-conspirators); Ericson v. Syracuse Univ., 35 F. Supp. 2d 326 (S.D.N.Y.
1999).

244.    In Count VIII, Claimant alleges, among other things that "GMAC Mortgage LLC, All Counsel for GMAC Mortgage LLC, Mortgage Electronic Registration Systems, Inc., Michelle Bradford, Jeffrey Stephan, Angela McFadden and JAM Transfers, Inc., committed, inter alia, Mail and Wire Fraud each and every time each party sent their fraudulent documents through the mail, electronically filed the document or sent it via email."  Adversary Complaint at p 64; see also Adversary Complaint ¶ 80 (alleging conspiracies with MERS and legal counsel to file false documents and foreclose despite faulty chain of title and no standing).  Specifically, Claimant alleges that the Defendants "have committed mail & wire fraud each and every time they have mailed, electronically filed, or emailed the fraudulent documents that were produced. As a matter of law, when the case is based on one fraudulent document, the entire case becomes fraud; Therefore all documents produced by defendants are fraudulent."  Id. at ¶ 148; see also Id. at ¶ 79 ("Documents base[d] on the verification by fraudulent documents make the entire case 'Fraud').  Again repeated in this claim is the allegation that GMACM conspired with the other Defendants "to knowingly allege ownership of a mortgage that did not exist or was invalid for, inter alia, violating the notice of transfer required by Pennsylvania State Law."  Id. at ¶ 149. Claimant asserts the alleged mail and wire fraud harmed him because he had to "defend a fraudulent foreclosure based on fraudulent documents, including an alleged assignment of mortgage, produced and recorded by defendants."  Id. at ¶ 150.  Further, under a header "Wire & Mail Fraud with Knowingly Fraudulent Documents," he claims that all Defendants "committed wire and mail fraud each and every time a fraudulent document was mailed, electronically sent via email or other electronic means, or electronically filed with the court.  This has occurred thousands of times during the course of this transaction[] as the entire case is based on a fraudulent affidavit and unverified information by 'Jeffrey Stephan.'"  Id. at ¶ 79.

79

245.    The documents Claimant challenges appear to be the Verification to the Foreclosure Action Complaint (see supra; see also Adversary Complaint at ¶¶ 45-46), and the Assignment of Mortgage (see, e.g., id. at ¶ 44, 56).

246.    First, Claimant's allegations of thousands of acts of mail and wire fraud by all Defendants' filing and mailing allegedly fraudulent mortgage assignments or complaint verifications, in "thousands" of unspecified foreclosure actions, do not adequately specify the particular statements as to ownership or the impropriety of foreclosure it claims were false or misleading, nor do they give sufficient particulars as to what aspects of the documents he claims were fraudulent, nor state when and where these documents were filed or mailed.  "Bare-bones allegations do not satisfy Rule 9(b)."  Lundy, 711 F.3d at 119.  Although he alludes to wire and mail fraud in relation to his pending Foreclosure Action, Claimant's allegations do not indicate the date, time, or place of any alleged misrepresentation in the thousands of other cases.

247.    Further, although Claimant alleges that GMACM lacked standing to foreclose, and that the Verification was improperly verified without proper procedures, the allegations fail to inject any precision or measure of substantiation as to what information contained in these allegedly fraudulent documents was incorrect.  His conclusory allegations of fraud "fall far short of the RICO heightened pleading requirements" and, accordingly, his RICO claim fails as a matter of law.  See Gordon v. Palumbo, No. 07 civ. 6624(PKC)(DCF), 2009 WL 690647, at *7 (S.D.N.Y. Mar. 9, 2009) (dismissing RICO claims premised on mail and wire fraud with prejudice for failure to comply with Rule 9(b), finding that "Plaintiffs' Amended Complaint does not indicate how RICO's substantive provisions were violated, who committed any such violation, or how plaintiffs were damaged as a result."); Bologna v. Allstate Ins. Co., 138 F. Supp. 2d 310, 321-22 (E.D.N.Y. 2001) (dismissing complaint where claims were "insufficient to

satisfy the particularity requirement of Rule 9(b)" given that plaintiff "simply regurgitated the generic requirements of the RICO statute and the mail and wire fraud statutes").

248.    Moreover, the grossly generalized legal theories underlying Claimant's conclusory claims of fraud have no legal merit and the execution of these business documents, even assuming *arguendo* some faulty procedure, cannot constitute racketeering activity under RICO.  As for the Verification, Claimant contends that the Verification was fraudulent because it allegedly was not based on personal knowledge.  Importantly, however, pursuant to Rule 1024 of the Pennsylvania Rules of Civil Procedure, a verification is proper on information and belief, and a representative may execute a verification without personal knowledge of the facts.  See Pa. R. Civ. P. 1024(a) ("Every pleading containing an averment of fact not appearing of record in the action or containing a denial of fact shall state that the averment or denial is true upon the signor's personal knowledge or information and belief and shall be verified.  The signer need not aver the source of the information or expectation of ability to prove the averment or denial at the trial.  A pleading may be verified upon personal knowledge as to a part and upon information and belief as to the remainder.").

249.    As for the Assignment of Mortgage, Claimant contends that the use of MERS to serve as mortgagee of record in a nominee capacity violates the recording laws and caused confusion as to ownership of the Mortgage Loan.  However, "[t]he use of a nominee in real estate transactions, and as mortgagee in a recorded mortgage, has long been sanctioned as a legitimate practice.  The use of a nominee is likewise legitimate under the Uniform Commercial Code."  In re Cushman Bakery, 526 F.2d 23, 30 (1st Cir. 1975) (citations omitted).  See also Milton R. Friedman, Friedman On Contracts & Conveyances Of Real Property, § 6:1:5 Nominees ("it is familiar practice in real estate transactions to use a nominee").  Cf. Indus.

Packaging Prods. Co. v. Fort Pitt Packaging Int'l, Inc., 399 Pa. 643, 648, 161 A.2d 19, 21 (Pa. 1960) ("It makes no difference as far as such notice is concerned whether the secured party listed in the filing statement is a principal or agent[.]").

250.    Claimant further contends that the Assignment of Mortgage signed on behalf of MERS is improper because the individual signing it was also the attorney for the assignee, GMACM.  However, the law is clear that borrowers such as Claimant lack standing to challenge assignments out of MERS.  See, e.g., In re Mortg. Elec. Registration Sys. (MERS) Litig., 2011 WL 4550189, *5 (citation omitted); Livonia Prop. Holdings, L.L.C. v. 12840-12976 Farmington Rd. Holdings, L.L.C., 717 F. Supp. 2d 724, 747 (E.D. Mich. 2010), aff'd, 399 F. App'x 97 (6th Cir. 2010), cert. denied, 131 S.Ct. 1696 (2011); Peterson v. GMAC Mortg., LLC, No. 11-11115-RWZ, 2011 WL 5075613, at *4 (D. Mass. Oct. 25, 2011) ("Accordingly, plaintiffs have no legally protected interest in the Mortgage assignment from MERS to GMAC Mortgage and therefore lack standing to challenge it.").

251.    Here, the alleged conduct involved allegedly fraudulent documents that were executed as part of the ordinary business activities related to the servicing of mortgage loans (and permitted under the terms of standard mortgages), and do not constitute "enterprise activities separate and apart from [the defendants'] regular business activities."  Acosta v. Campbell, 2006 WL 146208, at *6 (dismissing RICO claims against lenders alleged to have engaged in "originating, settling, and investing in mortgages" because such activities were all part of defendants "regular business activities" not in furtherance of a separate RICO enterprise); Atkinson v. Anadarko Bank and Trust Co., 808 F.2d at 441 (rejecting plaintiff's claim that a bank, its holding company, and three employees were furthering a RICO enterprise where their alleged conduct consisted of mailing allegedly fraudulent loan statements – a regular bank

82

activity); <u>Riverwoods Chappaqua Corp.</u>, 30 F.3d at 343-44 (plaintiff failed to establish the existence of conduct of a distinct RICO enterprise where complained of racketeering activities consisted of employees of bank merely carrying out bank business).

252.    Furthermore, RICO claims predicated on mail and wire fraud require a plaintiff to plead justifiable reliance on a misrepresentation or wrongful conduct.  <u>Kimmel v. Phelan Hallinan & Schmieg, PC</u>, 847 F. Supp. 2d 753, 770 (E.D. Pa. 2012) (citing cases).  Claimant's allegation that one or more Defendants "caused confusion as to the ownership of the Mortgage" (Adversary Complaint at ¶ 13 and page 67) does not amount to justifiable reliance.  "While 'confusion' may describe the emotion [Claimant] felt . . . it does not describe what [he] then did [and his] actions are the focus of the justifiable reliance prong[]."  <u>See</u> <u>Kimmel</u>, 847 F. Supp. 2d at 771 (emphasis omitted).  Claimant has failed to plead any facts that plausibly suggest justifiable reliance by him on any conduct alleged on the part of the Defendants.

253.    For all of the foregoing reasons, Claimant's insufficiently specific and conclusory allegations of RICO violation predicated on mail or wire fraud fail as a matter of law under 18 U.S.C. § 1962(c).

**B.    Claimant Has Not Stated a RICO Conspiracy Claim under 18 U.S.C. § 1962(d).**

254.    Section 1962(d) makes it unlawful to conspire to violate section 1962(c).  18 U.S.C. § 1962(d).  To the extent Count I of the Adversary Complaint were liberally construed to allege a RICO conspiracy claim under section 1962(d), the allegations are also deficient and the claim fails as a matter of law.

**(i)    A Claim under § 1962(d) Cannot Survive if There is Not a § 1962(c) Violation.**

255.    At the outset, a claim for a violation of section 1962(d) cannot be sustained if the underlying section 1962(c) claim on which the conspiracy is based should fail.  <u>See</u> <u>Lum</u>, 361

F.3d at 227 n.5 ("Any claim under section 1962(d) based on conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient."). Accordingly, should the Court determine that Claimant has not stated a claim under section 1962(c), no claim could be stated under section 1962(d).

**(ii)      Claimant Has Not Adequately Pled a Knowing Agreement to Participate in Racketeering Activity.**

256. Liability for conspiracy under section 1962(d) attaches only where a defendant "*knowingly* agrees to facilitate a scheme which includes the operation or management of a RICO enterprise." Smith v. Berg, 247 F.3d 532, 538 (3d Cir. 2001) (construing Salinas v. United States, 522 U.S. 52 (1997)) (emphasis added). In the case of service providers, "liability will arise only from services which were purposefully and knowingly directed at facilitating a criminal pattern of racketeering activity." Smith v. Berg, 247 F.3d at 538 n.11. To state a section 1962(d) claim, a Plaintiff must accordingly allege – plausibly and in a non-conclusory fashion – that GMACM and the other Defendants named in the Adversary Complaint provided its/their services in a manner that was "purposefully and knowingly directed at facilitating a criminal pattern of racketeering activity." Id. Claimant must allege facts that show that the alleged conspirator (1) entered into an agreement for the commission of the predicate acts and (2) had knowledge that those acts were part of a pattern of racketeering activity. Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989). "Because the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 25 (2d Cir. 1990) (citing Rose v. Bartle, 871 F.2d at 366).

257. Although Claimant refers in a conclusory fashion to a "partnership or agreement," between GMACM and Balboa, see, e.g., Adversary Complaint at ¶ 68, absent from the

84

Adversary Complaint is any allegation that factually demonstrates that GMACM specifically entered into an actual agreement for the commission of any of the alleged predicate RICO acts, whether the predicate acts were improper placement of lender placed insurance or mail/wire fraud by filing or mailing the Verification or Assignment of Mortgage.  Also absent from the Adversary Complaint is any factually supported allegation of a *knowing agreement* by GMACM or the other Adversary Defendants to facilitate a scheme of racketeering activity.  Claimant's boilerplate allegations that the parties "knowingly conspired" (u.g., Compl. page 47) do not save his conspiracy claims.  See Heffernan, 2001 WL 803719, at *6, *8 (dismissing § 1962(d) claim where plaintiff alleged bank accepted deposits and withdrawals knowing the funds were fraudulently obtained and pled conclusory allegation of conspiracy).

258.    Plaintiff's conclusory accusations of "racketeering," "fraud," "conspiracy," and "unfair trade practices" which permeate the Adversary Complaint do not satisfy applicable pleading standards and the RICO claim fails for insufficient pleading of any of the basic requirements of a RICO claim.

### C.    Mail and Wire Fraud - Count VIII

259.    Count VIII fails to state a permissible claim because Claimant cannot state independent claims for alleged criminal conduct.  There is "no private right of action for violations of the federal mail-fraud statute."  Pharr v. Evergreen Gardens, Inc., No. 03-cv-5520(HB), 2004 WL 42262, at *1 n.2 (S.D.N.Y. Jan. 7, 2004).  See also Raffaele v. Designers Break, Inc., 750 F. Supp. 611, 613 (S.D.N.Y.1990); Milburn v. Blackfrica Promotions, Inc., 392 F. Supp. 434, 435 (S.D.N.Y.1974) ("Private litigants cannot sue to redress the offenses defined in [18 U.S.C. § 1341]."); Delta Educ., Inc. v. Langlois, 719 F. Supp. 42, 50 (D.N.H. 1989) ("The plaintiff may allege mail fraud as the predicate acts for its RICO claim, but the mail fraud allegations themselves do not state a separate cause of action.").

85

260.    Mail or wire fraud may constitute predicate acts under RICO.  See, e.g., Lum, 361

F.3d at 223 ("predicate acts of racketeering may include, *inter alia*, federal mail fraud under 18

U.S.C. § 1341 or federal wire fraud under 18 U.S.C. § 1343").  Accordingly, to the extent this

Count may be construed to state a predicate act for a RICO claim, the allegations are treated

under the RICO analysis in Section V.A., and Count VIII must fail for the reasons stated therein.

### D.    False Claims Act - Count XI

261.    In the False Claims Act ("**FCA**"), Congress prescribed a cause of action against

those who knowingly present false claims for payment to the United States.  31 U.S.C. § 3729.

The Attorney General is obligated diligently to investigate violations of the FCA and is

authorized to bring suit for such violations.  Id. §§ 3729, 3730(a).  The FCA also provides, in

subsection 3730(b), for "actions by private persons," known as *qui tam* actions.  The FCA

permits the private "relators" in such cases to recover a share of the proceeds of the action in the

event that the suit is successful.  31 U.S.C. § 3730(d).

### (i)    Claimant Did Not Fulfill Procedural Requirements For Purposes of Pursuing a *Qui Tam* Claim Under the FCA.

262.    The FCA contains specific procedural requirements for commencing a *qui tam*

suit.[32]  Compliance with the mandatory filing requirements of the FCA is an essential

jurisdictional prerequisite to the assertion of the statutory right to file a *qui tam* claim.  Claimant

forfeited the right to bring this statutory cause of action when he violated the filing requirements

of the statute.  See, e.g., United States ex rel. Le Blanc III v. ITT Indus., Inc., 492 F. Supp. 2d

303, 304 (S.D.N.Y. 2007) (dismissing relator's complaint with prejudice for failure to file

---

[32] The FCA provides: A copy of the a [qui tam] complaint and written disclosure of substantially all material evidence and information shall be served on the Government pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure.  The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders.  The Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information.  31 U.S.C. § 3730(b)(2).

complaint under seal because failure frustrated purposes behind statute's sealing requirement). Claimant's failure to comply with all of the critical service and filing requirements and to fulfill the jurisdictional prerequisites would prevent federal subject matter jurisdiction from attaching, and any purported claim under FCA would be subject to dismissal under Fed. R. Civ. P. 12(b)(1).

> **(ii)    Claimant Has Not Pled a False Claim With the Particularity Required by Rule 9(b).**

263.    Claims under the FCA "must be pleaded with particularity in accordance with Fed. R. Civ. P. 9(b)." United States ex rel. Schmidt v. Zimmer, Inc., 386 F.3d 235, 242 n. 9 (3d Cir. 2004) (citation omitted).  "Rule 9(b) requires, at a minimum, that plaintiffs support their allegations of … fraud with all of the essential factual background that would accompany the first paragraph of any newspaper story – that is, the 'who, what, when, where and how' of the events at issue." In re Rockefeller Ctr. Props. Secs. Litig., 311 F.3d 198, 217 (3d Cir. 2002) (citation and internal quotations omitted).  "To state a claim under the False Claims Act with particularity, the complaint must allege 'facts as to time, place, and substance of the defendant's alleged fraud, and the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.'" Corsello v. Lincare, Inc., 428 F.3d 1008, 1012 (11th Cir. 2005) (citation and internal quotations omitted).

264.    At the outset, the Adversary Complaint fails even to cite the subdivisions of the FCA upon which Claimant purportedly relies for each of his causes of action.  Claimant does not specify what provision has been violated, and there are many provisions of the civil FCA, including: 31 U.S.C. § 3729(a)(1)(A) (presentation of false claims for payment), 31 U.S.C. § 3729(a)(1)(B) (based upon making or using a false record or statement material to a false claim), 31 U.S.C. § 3729(a)(1)(B) (based upon submission of express and implied false certifications),

and 31 U.S.C. § 3729(a)(1)(G) (knowingly causing and retaining overpayments); 31 U.S.C. § 3729(a)(1)(C) (conspiring to submit a false claim). This failure, together with insufficiently particular pleadings manifest the lack of merit to Claimant's purported FCA claim.

265.    Claimant alleged in the Eleventh Claim of the Adversary Complaint that GMACM "fraudulently made 'False Claims' to the United States Government on Claimant and his property as well as other homes & Homeowners for defaults on mortgages that did not occur, were caused by GMAC Mortgage, LLC or were made with knowingly fraudulent documents." Adversary Complaint at p. 73.  He claims that GMACM "knew that it filed a 'False Claim' on Claimant's loan for the mortgage it alleges to service or own" and "has also made 'False Claims' on other mortgage loans with Fraudulent Documents [] for alleged defaults that did not occur, and for other reasons that were known to be false."  Id. ¶ 171.  He claims that "Taggart, and many other parties have had to defend false claims for foreclosure and Asserted ownership of a mortgage by GMAC Mortgage, LLC with knowingly false payments required for duplicate insurance to deceive plaintiff."  Id. ¶ 172.  Further, Claimant alleges that GMACM has submitted "False Claims" to the U.S. Federal Housing Administration and Department of Housing and Urban Development "for compensation for alleged defaults on Claimant's loan and many other loans with the knowledge that they made claims with fraudulent documents and knowledge that, *inter alia*, they caused default on those mortgages or were not even in default."  Id. ¶ 173. Furthermore, he claims, GMACM "foreclosed on homes with knowingly fraudulent documents, then filed a claim with HUD, FHA, and the United States Government."  Id.

266.    Read individually and as a whole, Claimant's very general and wholly conclusory allegations that GMACM fraudulently made false claims to the United States or its departments, are insufficient to satisfy Rule 9(b).  Claimant does not provide any detail as to what sort of

claim was made by GMACM, nor when any such claim was made.  Also lacking is any specific

allegation as to what the claim sought or obtained, e.g., what sort of payment was demanded, on

what basis one or more claims was or were made, in what amount one or more claims were

made, nor if - and if so in what amount – one or more claims was or were improperly paid.

267.    A "fraudulent claim" – defined by the FCA as a "request or demand" for

payment, 31 U.S.C. § 3729(c) – is "the *sine qua non* of a False Claims Act violation."

Sanderson v. HCA – The Healthcare Co., 447 F.3d 873, 878 (6th Cir. 2006) (quoting United

States ex rel. Clausen v. Lab. Corp. of Am., Inc., 290 F.3d 1301, 1311 (11th Cir. 2002)).  The

law is clear that allegations of "underlying schemes and other wrongful activities that result in

the submission of fraudulent claims" are inadequate under Rule 9(b) "unless they are linked to

allegations, stated with particularity, of the actual false claims submitted to the government that

constitute the essential element of an FCA qui tam action."   United States ex rel. Karvelas v.

Melrose-Wakefield Hosp., 360 F.3d 220, 322 (1st Cir. 2004).

268.    Claimant's general references to GMACM "filing a claim" with HUD, FHA and

the United States do not satisfy the pleading requirements of either Rule 9(b), nor Rule 12(b)(6).

Although Claimant refers to causing defaults, it is also unclear from the face of the Adversary

Complaint exactly what kind of claims, records or other representations Claimant alleges

GMACM presented to the Government.   Even if the Adversary Complaint were liberally

construed to permissibly allege these facts on information and belief, Claimant does not identify

the basis for this belief.   See United States ex rel. Thompson v. Columbia/HCA Healthcare

Corp., 125 F.3d 899, 903 (5th Cir. 1998) (complaint alleging violations of FCA on "information

and belief" must set forth the basis for that belief).  For these reasons, Claimant's purported FCA

allegations in the Adversary Complaint fail as a matter of law, pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6).

## VI.    RESERVATION OF RIGHTS

269.    The Taggart Claim also asserts entitlement to (i) secured status, (ii) priority claim treatment, and (iii) interest (although no statement of interest has been provided).  The Borrower Trust reserves the right to object to the Taggart Claim on any ground not included in this Objection including, without limitation, the grounds that the Taggart Claim is a general unsecured claim, not entitled to priority or interest under the applicable provisions of the Bankruptcy Code.

## NOTICE

The Borrower Trust has provided notice of this Motion in accordance with the Case Management Procedures Order, approved by this Court on May 23, 2012 [Docket No. 141] and the Claims Procedures Order [Docket No. 3294].

## CONCLUSION

WHEREFORE, the Borrower Trust respectfully requests entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem proper.

ny-1142833

Dated: December 9, 2014

     /s/ Norman S. Rosenbaum

Norman S. Rosenbaum
Jordan A. Wishnew
James A. Newton
MORRISON & FOERSTER LLP
250 W. 55th Street
New York, New York 10019
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900

*Counsel for the ResCap Borrower
Claims Trust*

-and-

Barbara K. Hager *(admitted pro hac vice)*
REED SMITH LLP
Three Logan Square
Suite 3100
Philadelphia, Pennsylvania 19013
Telephone:     (215) 851-8100
Facsimile:     (215) 851-1420

*Litigation Counsel for the ResCap Borrower
Claims Trust*

91