**Exhibit 2 to Objection**

**Delehey Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------------
)
   In re:                                    )    Case No. 12-12020 (MG)
                                       )
   RESIDENTIAL CAPITAL, LLC, et al.,    )    Chapter 11
                                       )
                      Debtors.    )    Jointly Administered
---------------------------------------------------------------------------)

### DECLARATION OF LAUREN GRAHAM DELEHEY
### IN SUPPORT OF RESCAP BORROWER CLAIMS TRUST'S
### OBJECTION TO PROOF OF CLAIM NO. 5257 FILED BY KENNETH TAGGART

I, Lauren Graham Delehey, declare as follows:

1.  I serve as Chief Litigation Counsel for the ResCap Liquidating Trust (the "**Liquidating Trust**") established pursuant to the terms of the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 6030] in the above-captioned Chapter 11 Cases.[1] During the Chapter 11 Cases, I served as Chief Litigation Counsel in the legal department at Residential Capital, LLC ("**ResCap**"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors in the above-captioned Chapter 11 Cases (collectively, the "**Debtors**"). I joined ResCap on August 1, 2011 as in-house litigation counsel.

2.  In my role as Chief Litigation Counsel at ResCap, I was responsible for the management of litigation including, among others, residential mortgage-related litigation. In connection with ResCap's chapter 11 filing, I also assisted the Debtors and their professional advisors in connection with the administration of the Chapter 11 Cases, including the borrower litigation matters pending before this Court. In my current position as Chief Litigation Counsel

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Objection (as defined below).

ny-1107986

to the Liquidating Trust, among my other duties, I continue to assist the Liquidating Trust and the Borrower Claims Trust (the "**Borrower Trust**") in connection with the claims reconciliation process.[2] I am authorized to submit this declaration (the "**Declaration**") in support of the ResCap Borrower Claims Trust's Objection (the "**Objection**") to Proof of Claim No. 5257 Filed by Kenneth Taggart (the "**Taggart Claim**").[3]

3. In my current and former capacities as Chief Litigation Counsel to the Liquidating Trust and ResCap, I am intimately familiar with the Debtors' claims reconciliation process. Except as otherwise indicated, all statements in this Declaration are based on my familiarity with the Debtors' Books and Records (the "**Books and Records**"), as well as the Debtors' schedules of assets and liabilities and statements of financial affairs filed in these Chapter 11 Cases (collectively, the "**Schedules**"), my review and reconciliation of claims, and/or my review of relevant documents. I or other Liquidating Trust personnel have reviewed and analyzed the proof of claim form and supporting documentation filed by the Claimant. Since the Plan went effective and the Borrower Trust was established, I, along with other members of the Liquidating Trust have consulted with the Borrower Trust to continue the claims reconciliation process, analyze claims and determine the appropriate treatment of the same. In connection with such review and analysis, where applicable, I or other Liquidating Trust personnel, together with professional advisors, have reviewed (i) information supplied or verified by former personnel in departments within the Debtors' various business units, (ii) the Books and Records, (iii) the Schedules, (iv) other filed proofs of claim, (v) the official claims register maintained in the

---

[2] The Liquidating Trust and the Borrower Trust are parties to an Access and Cooperation Agreement, dated December 17, 2013, which, among other things, provides the Borrower Trust with access to the books and records held by the Liquidating Trust and to the Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.

[3] A true and correct copy of the Taggart Claim, filed November 15, 2012, is attached hereto as Exhibit 1.

ny-1107986                                2

Debtors' Chapter 11 Cases, and/or (vi) documents and filings from other litigation matters involving particular claimants.

4.  In connection with the Taggart Claim, the Liquidating Trust, on behalf of the Borrower Trust, reviewed Claimant's payment history, the Debtors' internal servicing notes, and litigation files including the various pleadings filed in the litigation between the Debtors and Taggart.

5.  I am familiar with the records maintained by the Debtors' businesses, and am qualified by my position to identify those records and certify their authenticity. Except as otherwise noted below, each of the records attached to or accompanying this declaration (excluding court filings and other court-issued documents) were original records of the business or true and accurate duplicates thereof. In addition, these records (i) were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters, (ii) were kept in the course of a regularly conducted business activity, and (iii) were made by the business as part of its regular practice.

6.  Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations, information learned from my review of relevant documents and information I have received through my discussions with other former members of the Debtors' management or other former employees of the Debtors, the Liquidating Trust's and the Borrower Trust's professionals and consultants. If I were called upon to testify, I could and would testify competently to the facts set forth in the Objection on that basis.

I.  **CLAIMANT'S RELATIONSHIP WITH THE DEBTORS**

   A.  **Loan Origination**

7.  Each of the lawsuits referenced in the Taggart Claim relate to a mortgage on a three-family property located at 521 Cowpath Road, Telford, PA 18969 ("**Property**"). In 2008,

ny-1107986                                3

Claimant closed on an FHA insured residential income property home refinance loan in the original principal amount of $659,648.00.[4] In connection with the refinance loan, Claimant granted a mortgage on the Property in favor of LBA Financial Group, LLC. The Mortgage was executed on July 11, 2008, and was recorded on July 23, 2008 in the Office of the Recorder of Deeds in Montgomery County.[5] The Mortgage was executed in favor of MERS, as nominee, and was later assigned to GMAC Mortgage, LLC ("**GMACM**"), which Assignment was received by the Recorder of Deeds on September 2, 2009 and recorded on October 6, 2009.[6]

8.  In connection with the loan transaction, Claimant received the benefit of loan disbursements above stated, and satisfaction of mortgages then outstanding in favor of Greenpoint Mortgage in the amount of $424,136.60, and in favor of Countrywide Bank in the amount of $80,190.87.[7]

9.  In addition, as shown on the HUD-1, $90,976.77 of other debt was paid to payees including Bank of America, HFC Beneficial, Credit One Financial Solutions, Fia Merrill, Discover, and Gerald R. Delong, TC for 2008-2009 school taxes. Id. Moreover, Claimant received $31,560.94 in cash in connection with the refinancing transaction. Id.

10. The Note was endorsed by the original lender LBA Financial Group, LLC to GMAC Bank which subsequently endorsed the Note to GMAC Mortgage, LLC, which in turn endorsed the note in blank. The Note was in the possession of GMACM or its counsel from the date the Foreclosure Action was initiated until the time that servicing of the loan was transferred to Ocwen Loan Servicing, LLC (discussed below).

---

[4] A true and correct copy of an Appraisal report for the property indicating two of three units were rental units and a true and correct copy of the Note are attached hereto as Exhibits 2 and 3, respectively.
[5] A copy of the recorded Mortgage, including the 1-4 Family Rider, is attached hereto as Exhibit 4.
[6] A true and correct copy of the recorded Assignment is attached hereto as Exhibit 5.
[7] A true and correct copy of the HUD-1 Settlement Statement ("**HUD-1**") is attached hereto as Exhibit 6.

11. I understand that Claimant has alleged that he sent letters to GMACM on April 20, 2009 and May 28, 2009 requesting that GMACM send correspondence regarding his mortgage to an address other than the Property address. GMACM has no record of receiving an April 20, 2009 letter requesting a change of address. GMACM does, however, have a record of receiving Claimant's May 28, 2009 letter. On June 9, 2009, GMACM sent Claimant a letter which, upon information and belief, was responsive to May 28, 2009 request letter. See Exhibit 7 at 8.[8]

### B. Hazard Insurance and the Escrow Account

12. Prior to the closing of his loan, Claimant was informed that he would be required to maintain continuous hazard insurance coverage on the Property throughout the life of the loan and that he would be required to provide a paid receipt for the full first year's premium.[9] Notwithstanding this requirement, at the closing of the loan, Claimant provided proof of insurance covering the Property only through August 9, 2008.[10]

13. As described further below and in the Objection, Claimant made allegations in several prepetition and postpetition lawsuits regarding hazard insurance coverage on the Property and alleged wrongdoing on the part of GMACM in connection therewith. Many of the hazard insurance tracking, renewal, and coverage responsibilities associated with mortgage loans serviced by GMACM were performed by Newport Management Corp. Consequently, the Declaration of Dan Hall, submitted with the Objection, outlines a large portion of the insurance-related background prior to the partial cancellation of a lender-placed insurance policy related to the Loan (Policy No. ▌8065) in January of 2009.

---

[8] Attached hereto as Exhibit 7 is an excerpt of the loan servicing and mortgage account history notes for the Loan. For ease of reference, bates stamp page numbers have been added to the pages included in the excerpt.
[9] A true and correct copy of a Notice to Borrower is attached hereto as Exhibit 8.
[10] A true and correct copy of the Evidence of Property Insurance provided by Claimant in connection with the closing of his loan is attached hereto as Exhibit 9.

ny-1107986    5

14. According to GMACM's servicing records, in connection with the partial cancellation of the lender-placed insurance policy in January of 2009, $6,684.00 that had previously been paid by GMACM was refunded to GMACM and credited to Claimant's account on January 29, 2009. See Exhibit 7 at 2. However, the refund had not yet been posted to Claimant's escrow account by the time a February 9, 2009 escrow account analysis was conducted. As a result, by letter dated February 9, 2009, Claimant was informed that his monthly payment would increase from $5,401.26 to $6,609.05 as of April 1, 2009 unless the anticipated escrow deficiency for the year was paid prior to that date.[11] The letter also indicated that if Claimant paid the anticipated escrow deficiency in advance, his monthly payment commencing on April 1, 2009 would be $6,007.16. See Exhibit 10 at 2.

15. On February 27, 2009 and March 30, 2009, Claimant made his monthly mortgage payments for February and March, respectively, each more than three weeks after their due date on the first of the respective month. See Exhibit 7 at 2.

16. On April 29, 2009, GMACM received a letter from Claimant, in which letter, upon information and belief, Claimant disputed the amount of his April monthly payment. See Id. at 10 (indicating receipt of a correspondence from Claimant). On information and belief, GMACM acknowledged Claimant's letter by response dated May 5, 2009[12] and, by May 12, 2009, GMACM had conducted a new escrow analysis and sent Claimant a letter indicating that an adjustment had been made, resulting in a revised monthly payment of $5,612.25 commencing as of April 1, 2009.[13] The $210.99 increase in Claimant's monthly payment resulted from an escrow deficiency caused, in part, by Claimant's failure to provide one year's proof of insurance

---

[11] A true and correct copy of GMACM's February 9, 2009 escrow letter is attached hereto as Exhibit 10.
[12] See Exhibit 7 at 9 (indicating that a letter was sent to Claimant on May 5, 2009).
[13] A true and correct copy of GMACM's May 12, 2009 response to Claimant's escrow account dispute letter and the corresponding May 12, 2009 escrow analysis are attached hereto as Exhibits 11 and 12, respectively.

at closing and the resulting payment by GMACM of premiums on Claimant's prior insurance policies with The Philadelphia Contributorship Insurance Company (Policy Nos. ▇225 and ▇227).

17.  Upon information and belief, by letter received on July 1, 2009 Claimant informed GMACM that he continued to dispute the amount of his payment. See Exhibit 7 at 7. GMACM, by responsive letter dated July 15, 2009, provided a copy of the most recent escrow analysis and requested that Claimant identify the entries that he believed needed to be adjusted.[14] GMACM does not have any record of receiving a response to its July 15, 2009 letter.

## II.    THE ACTIONS

### A.    Claimant's Default, Repayment Plan Efforts and the Foreclosure Proceeding

18.  Claimant has failed to make payments since March 30, 2009.

19.  On May 11, 2009, GMACM notified Claimant that his mortgage payments of $10,802.52 for the April 1, 2009 and May 1, 2009 due dates were past due, and stated total late charges of $1130.96.[15]

20.  On or about June 2, 2009, GMACM sent to Claimant a notice informing Claimant that the mortgage was in default and that absent a cure of the default, GMACM intended to accelerate and foreclose.[16]

21.  On or about July 2, 2009, GMACM sent a notice to Claimant that the default and failure to reinstate rendered the account subject to foreclosure.[17]

22.  On or about July 9, 2009, GMACM spoke with Claimant by telephone and discussed his account, which was by then past due for April, May, June and July payments. See

---

[14] A true and correct copy of GMACM's July 15, 2009 responsive letter is attached hereto as Exhibit 13.
[15] A true and correct copy of the May 11, 2009 notice is attached hereto as Exhibit 14.
[16] A true and correct copy of the GMACM's June 2, 2009 notice is attached hereto as Exhibit 15.
[17] A true and correct copy of GMACM's July 2, 2009 notice is attached hereto as Exhibit 16.

ny-1107986                                              7

Exhibit 7 at 7. Claimant requested a repayment plan to avoid foreclosure upon the Property, and advised GMACM that the reasons for his default were (i) temporary hardship; (ii) an income decrease in January 2009; and, (iii) an increase in escrow payments. See Id. GMACM's computer system indicates that a Repayment Plan was consequently set up pursuant to which Claimant would pay $11,224.50 by July 31, 2009, $12,001.77 on or before August 31, 2009, and $12,001.78 on or before September 30, 2009. See also Id. Claimant was informed that there would be no grace period with respect to the payments due under the Repayment Plan. See Id. A post-dated payment was set up and, in exchange, GMACM agreed to withhold a referral to foreclosure. See Id.

23. On July 29, 2009, Claimant advised GMACM by telephone that he would not comply with the Repayment Plan and that the reason for his default was that he was self-employed, that his hardship started six months prior and that he could make double payments, but that no payment would arrive until August 15, 2009. See Id. at 5. Because Claimant failed to comply with the terms of the Repayment Plan for which he was advised there would be no grace period, GMACM cancelled the repayment plan. See Id.

24. On August 4, 2009, with five months of mortgage payments then due and owing on Claimant's account, GMACM completed and approved a foreclosure referral review. See Id.

25. On August 7, 2009, Claimant requested another repayment plan by phone, but GMAC informed Taggart that the account was in foreclosure, and that a full reinstatement payment would be required to avoid foreclosure. See Id. at 4.

ny-1107986                                                8

26. Because Claimant failed to comply with the repayment plan for which he was advised that there would be no grace period (as described above), GMACM instituted the Foreclosure Action on or about August 14, 2009.[18]

27. It is my understanding based upon the change of address requested by Claimant on or about May 28, 2009, and based upon W-2 filings produced during the course of the Foreclosure Action, that the Property was not owner occupied at the time of the commencement of the Foreclosure Action, nor for the year required by various loan documents including the Mortgage and Borrower's Closing Affidavit, by which Claimant attested that he would occupy the Property as his primary residence for at least one year after closing, absent written consent to the contrary or extenuating circumstances beyond Claimant's control.[19]

28. It is also my understanding that at relevant times, Claimant has received rental income generated from the Property, which Claimant has been obligated to hold in trust for the benefit of GMACM or its successor in interest since any event of default. See Mortgage ¶ 17 ("If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument."); see also Mortgage 1-4 Family Rider, ¶ H (same).

29. Claimant filed an Answer and several subsequent counterclaim pleadings, the last of which was his *Amended Answer to Complaint With New Matter and Counterclaim* ("**Counterclaim**"), filed on or about January 6, 2014, after the trial court granted Claimant's

---

[18] A true and correct copy of the Complaint in the Foreclosure Action is attached hereto as Exhibit 17. A true and correct copy of the docket report from the Foreclosure Proceeding, as of November 19, 2014, is attached hereto as Exhibit 18.

[19] Attached hereto as Exhibit 19 is a true and correct copy of W-2 forms produced by Claimant during the course of the Foreclosure Action. Attached hereto as Exhibit 20 is a true and correct copy of Borrower's Closing Affidavit.

ny-1107986                                9

*Motion for Leave to File a Third Amended Complaint* filed June 25, 2013. See Exhibit 18 at 10.[20]

30.   On or about February 15, 2013, in connection with the Debtors' sale of their mortgage servicing platform to Ocwen Loan Servicing, LLC ("**Ocwen**"), servicing of the Claimant's loan was transferred to Ocwen. Ocwen serves as the current servicer of the loan.

31.   Consequently, the Mortgage was subsequently assigned to Ocwen.[21]

32.   On October 30, 2013, Ocwen, on behalf of GMACM and pursuant to a subservicing agreement entered into in connection with the Debtors' sale of their mortgage servicing platform, filed a *Praecipe to Discontinue* the Foreclosure Action ("**Discontinuance**"). In response, Claimant filed a *Motion to Strike or a Petition to Reinstate* on November 1, 2013, which he thereafter withdrew on February 28, 2014. See Exhibit 18 at 10-11.

33.   On January 27, 2014, GMACM filed a *Motion for a Stay*, in which it argued that further adjudication of the Foreclosure Action was or should have been stayed pending further relief from this Court in light of the instant bankruptcy proceedings, this Court's September 7, 2012 Order Granting in Part and Denying in Part the Taggart Motion to Lift the Automatic Stay, and the new procedural posture in the trial court, namely, that GMACM's offensive *in rem* foreclosure claim was withdrawn and Taggart's Counterclaim was thereby effectively converted to offensive claims seeking monetary damages from Debtor GMACM.[22]

34.   GMACM's *Motion for a Stay* of the matter pending further direction or relief from this Court was granted by order entered on March 20, 2014. See Exhibit 18 at 12.

---

[20] A true and correct copy of the Counterclaim, as filed in the Foreclosure Action, is attached hereto as Exhibit 21. Notably, the Counterclaim filed January 6, 2014 is not the proposed amended filing attached as Exhibit A to the Motion by which Claimant was granted leave to amend. The Counterclaim filed January 6, 2014 contains a separate Count XI alleging a violation of a Pennsylvania statute that was not included in the proposed amended filing. A true and correct copy of Claimant's *Motion for Leave to File a Third Amended Complaint* is attached hereto as Exhibit 22.
[21] A true and correct copy of an Assignment of Mortgage from MERS to Ocwen is attached hereto as Exhibit 23.
[22] A true and correct copy of GMACM's *Motion for a Stay* is attached hereto as Exhibit 24.

ny-1107986                    10

35. Pending at the time the State Court granted the stay of the Foreclosure Action were GMACM's Preliminary Objections to the Counterclaim,[23] and Claimant's Preliminary Objections to same, along with a Motion for Sanctions Claimant filed on March 13, 2014, by which he sought sanctions based on GMACM's requests that the trial court stay the case and discovery pending further instruction or relief from this Court.  See Exhibit 18 at 11.

B. **The First Federal Action**

36. On or about January 26, 2012, Claimant filed the First Federal Action in the United States District Court for the Eastern District of Pennsylvania.[24]

37. GMACM was not served with Mr. Taggart's amended complaint in the First Federal Action until May 22, 2012.[25]  Due to the automatic stay of these bankruptcy proceedings, Debtors did not file an answer in the First Federal Action.

38. On or about November 26, 2012, the court dismissed all but one claim against the Federal Defendants.[26]  The Court allowed a due process claim raising the adequacy of a hearing before HUD officials to proceed.  The Government's Motion to Dismiss that claim was converted into a Motion for Summary Judgment, which was granted August 12, 2013, and judgment was entered in favor of the Federal Defendants.[27]

39. Claimant's appeal of the District Court decisions is currently pending in the United States Circuit Court for the Third Circuit.  By letter correspondence to the Clerk dated

---

[23] GMACM filed the Preliminary Objections in an abundance of caution to avoid potential default because the trial court had not at that time stayed the action in light of the instant bankruptcy proceedings.
[24] A true and correct copy of the Amended Civil Complaint filed in the First Federal Action on March 22, 2012 is attached hereto as Exhibit 25.  A true and correct copy of the docket report in the First Federal Action is attached hereto as Exhibit 26.
[25] A copy of the Summons in the First Federal Action is attached hereto as Exhibit 27.
[26] A true and correct copy of the court's November 26, 2012 order dismissing the First Federal Action as against the Federal Defendants is attached hereto as Exhibit 28.
[27] A true and correct copy of the court's August 12, 2013 order granting summary judgment in favor of the Government is attached hereto as Exhibit 29.

ny-1107986                                                11

September 18, 2013, GMACM advised the Court of Appeals that the bankruptcy stay was still in effect and that GMACM would not be participating in the appeal.[28]

40. On April 8, 2014, Claimant moved the District Court for voluntarily dismissal of GMACM without prejudice under Rule 41(B), which the Court granted on April 11, 2014. See Exhibit 26 at 9. Accordingly, GMACM is no longer a party to the First Federal Action.

### C. The Second Federal Action

41. On or about April 10, 2012, Claimant filed the Second Federal Action against, among others, the Pennsylvania Superior Court and Montgomery County, Pennsylvania.[29] On May 8, 2012, Claimant amended the complaint in the Second Federal Action to include claims against GMACM and MERS.[30] GMACM did not answer the Complaint due to the pending bankruptcy proceedings.

42. The claims against all non-Debtor defendants have been dismissed and the docket for the Second Federal Action indicates that the case has been closed.[31]

### D. The Adversary Proceeding

43. On November 15, 2012, Claimant filed in this Court the Adversary Proceeding.[32] On February 26, 2013, Claimant filed a "petition to withdraw his complaint" and, on March 4, 2013, the Adversary Proceeding was closed.[33]

---

[28] A true and correct copy of GMACM's September 18, 2013 letter to the Third Circuit Court of Appeals is attached hereto as Exhibit 30.
[29] A true and correct copy of the Docket Report in the Second Federal Action is attached hereto as Exhibit 31.
[30] A true and correct copy of the Amended Complaint in the Second Federal Action is attached hereto as Exhibit 32.
[31] True and correct copies of the Orders dismissing all non-debtor Defendants are attached hereto as Exhibit 33.
[32] A true and correct copy of the Adversary Complaint is attached hereto as Exhibit 34.
[33] A true and correct copy of *Praecipe to Withdraw Adversary Complaint* is attached hereto as Exhibit 35.

### III.    ADDITIONAL DOCUMENTS

44.    Attached hereto as <u>Exhibit 36</u> is a true and correct copy of Claimant's Supplemental to Rebuttal/Counter Claim Filed Against Plaintiff, as filed in the Foreclosure Action.

45.    Attached hereto as <u>Exhibit 37</u> is a true and correct copy of Claimant's Third Amended Counterclaim (without exhibits), as filed in the Foreclosure Action.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  December 9, 2014

    /s/ Lauren Graham Delehey
Lauren Graham Delehey
Chief Litigation Counsel for the
ResCap Liquidating Trust