# **Exhibit 22**

Robert J. Birch, Esquire   Attorney for Defendant
Id. No. 65816
617 Swede Street
Norristown, PA 19401
(610) 277-9700

2009-25338-0336 FilingID: 9345344
6 25 2013 10:24:33 AM Motion
Receipt = Z1855454 Fee $0.00
Mark Levy - MontCo Prothonotary

GMAC MORTGAGE, LLC   :
           : COURT OF COMMON PLEAS OF
           : MONTGOMERY COUNTY
           :
  Plaintiff      :
   v.        : NO. 2009-25338
KENNETH J. TAGGERT   :
           :
  Defendants    : JURY TRIAL DEMANDED

## DEFENDANT'S MOTION FOR LEAVE
## TO FILE A THIRD AMENDED COMPLAINT

Defendant Kenneth Taggart ("Taggart" or "Defendant") by and through his undersigned counsel, files the following Motion for Leave to file a Third Amended Complaint, and in support thereof, avers as follows:

1. Taggart filed a *pro se* Second Amended Complaint in this matter.

2. Taggart has since hired undersigned counsel and is now seeking leave to file a Third Amended Complaint in light of recently discovered evidence that has a direct impact on this case. See attached Exhibit "A".

3. The discovery deadline has not closed and in fact, discovery has barely commenced. Therefore, there is no prejudice to Plaintiff GMAC.

4. The changes proposed in the Third Amended Complaint streamline and clarify the issues and claims already set forth by Taggart and seek to add additional counts against Plaintiff for illegal forced-placed insurance. In addition, there is evidence



WHEREFORE, Defendant Kenneth Taggart respectfully seek leave of Court to file a

Third Amended Complaint.

Dated: 6/25/2013

Robert J. Birch, Esquire
*Attorney for Plaintiffs*

## VERIFICATION

I, Robert J. Birch, hereby state that the procedural facts set forth in the foregoing

Motion are true and correct to the best of my knowledge, information and belief. I

understand that this verification is made subject to the penalties of 18 Pa. C.S.A. §4904

relating to unsworn falsification to authorities.


DATED: _6/25/2013_                              _____
                                                Robert J. Birch

## CERTIFICATE OF SERVICE

I, Robert J. Birch, Esquire, hereby certify that on this _____ day of June,

2013, I served a true and correct copy of the Motion to Amend to the following:

Barbara Hager, Esquire
Reed Smith
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103


Fatima Abbas, Esquire
Fox Rothschild LLP
10 Sentry Parkway
Suite 200 P.O. Box 3001
Blue Bell, PA 19422-3001


ROBERT J. BIRCH

# EXHIBIT A

TO THE PLAINTIFF: You are hereby
notified to file a written response to the
Amended Answer with New Matter and
Counterclaim within twenty (20) days from
service hereof or a judgment may be entered
against you.

_____
Robert J. Birch, Esquire

Robert J. Birch, Esquire                    Attorney for Defendant
Id. No. 65816
617 Swede Street
Norristown, PA 19401
(610) 277-9700


GMAC MORTGAGE, LLC                     :
                                       : COURT OF COMMON PLEAS OF
                                       : MONTGOMERY COUNTY
                                       :
      Plaintiff                        :
      v.                               :
                                       : NO. 2010-07592
KENNETH J. TAGGERT                     :
                                       :
                                       :
      Defendants                       : JURY TRIAL DEMANDED


## DEFENDANT'S AMENDED ANSWER TO COMPLAINT
## WITH NEW MATTER AND COUNTERCLAIM

Defendant Kenneth Taggart ("Taggart" or "Defendant") by and through his undersigned

counsel, files the following Amended Answer to Complaint with New Matter and Counterclaim

o the Complaint, and in support thereof, avers as follows:

1.      Denied.  Defendant is unaware of who the Plaintiff is as the true parties in interest

are the investors in the mortgage pool, and not GMAC. Strict proof is demanded.

2.      Admitted only insofar as Defendant Taggart is concerned.

3.    Denied.  The Defendant did not execute a mortgage and note with Plaintiff, MERS or the investors of the mortgage pool. The proper parties would be the investors as the only parties to whom any obligation arose after the loan was securitized, but these parties have no recorded interest in the mortgage or deed of trust, which was never delivered to the Trustee for the mortgage backed security pool and, therefore, the note itself, is at best, unsecured rights to payment.

4.    Denied.

5.    Denied.  There was never a default declared under the note by the investors, the trustee, or any party with standing.  Strict proof is demanded.

6.    Denied.  There was never a default declared under the note by the investors, the trustee, or any party with standing.  Strict proof is demanded.

7.    Denied.  There was never a default declared under the note by the investors, the trustee, or any party with standing.  Strict proof is demanded.

8.    Denied.  There was never a default declared under the note by the investors, the trustee, or any party with standing.  Strict proof is demanded.

9.    Denied.  This is a conclusion of law to which no response is required.

10.    Denied. This is a conclusion of law to which no response is required.

WHEREFORE, Defendant Kenneth Taggart requests that this Honorable Court enter judgment in his favor, and provide such other relief as this Honorable Court deems just and proper.

## NEW MATTER

11.    The above paragraphs are incorporated herein by reference as though set forth at length.

2

12.    On or about July 11, 2008, Defendant refinanced a mortgage with LBA Financial Group, LLC, for the residential property at 521 Cowpath Rd, Telford, Pennsylvania, 18969 (the "Property").

13.    MERS caused an assignment of the mortgage to Plaintiff.

14.    Thereafter, upon information and belief, the Mortgage and Promissory Note were on some date yet unknown sold and/or transferred to a mortgage-backed securities pool of mortgages and/or securitized trust.

14.    The Mortgage named MERS as "nominee" for the lender.  Mortgage Electronic Registration Systems, Inc. ("MERS Inc.") is a wholly-owned subsidiary of MERSCORP. MERS Inc. is a Delaware corporation with its principal place of business located in Vienna, Virginia. MERS Inc. serves as mortgagee in the land records for loans that are registered on the MERS System.

15.    MERS, however, engaged and continues to engage in a range of deceptive trade practices. MERS is unregistered and unlicensed to conduct mortgage lending or any other type of business in the Commonwealth of Pennsylvania. MERS is nothing more than a façade or "front" company. MERSCORP, Inc. ("MERSCORP") is a Delaware corporation with its principal place of business located in Vienna, Virginia. MERSCORP'S registered agent is the Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801. MERSCORP is owned by many of the most significant stakeholders in the mortgage industry, including mortgage originating and servicing companies (e.g., Bank of America, CitiMortgage, Inc., GMAC Residential Funding Corporation, and Wells Fargo Bank, N.A.), government sponsored entities (e.g., Fannie Mae and Freddie Mac), mortgage insurance and title companies, and the Mortgage Bankers Association. MERSCORP owns and operates the MERS System, which is a national registry that tracks the

ownership and servicing rights of its members in residential mortgage loans. There are over 5,500 members of MERSCORP.

16.    Residential mortgage-backed securities are issued pursuant to registration statements filed with the U.S. Securities and Exchange Commission ("SEC"). These registration statements include prospectuses, which explain the general structure of the investment, and prospectus supplements, which contain detailed descriptions of the mortgage groups underlying the certificates. Certificates are issued by the trust pursuant to the registration statement and the prospectus and prospectus supplement. Underwriters sell the certificates to investors.

17.    The certificates in the above trust represent interests in a pool of mortgage loans; they are "shares" in the pool that are sold to investors. The certificates entitle the holder to payments from the pool of mortgages. Although the structure and underlying collateral may vary by offering, the basic principle of pass-through certificates remains the same: as borrowers make payments on the loans in the mortgage pool, that cash flow is "passed through" to the certificate holders based on their share of the pool.

18.    The sponsor of the transaction originates the loans or acquires the loans from other mortgage originators. Then a "depositor" acquires an inventory of loans from the "sponsor" or "seller." The types of loans in the inventory may vary, including conventional, fixed-rate or adjustable-rate mortgage loans (or mortgage participations), secured by first liens, junior liens, or a combination of first and junior liens, with various lifetimes to maturity. Upon acquisition, the depositor transfers, or deposits, the acquired pool of loans to an "issuing trust."

19.    The issuing trust then "securitizes" the pool of loans so that the rights to the cash flows from the pool can be sold to investors in the form of certificates. The securitization

transactions are structured such that the risk of loss is divided among different levels of investment, or "tranches."

20.      The collateral pool for each securitization usually includes thousands of loans.

21.      The terms of the trust are stated in the Pooling and Servicing Agreement (hereafter, "PSA").

22.      Upon information and belief, Defendant's Mortgage was sold and securitized after closing on his residence, and then the Mortgage was placed into a PSA and converted into a stock of a Pass Through Vehicle ("PSV"). The mortgage title, however, was never officially transferred to the trust.

23.      When Defendant's Mortgage was converted into a security, the nature of Defendant's mortgage loan changed and was converted into a stock. Once Defendant's mortgage loan was securitized and converted, it forever lost its security. Since the loan was sold and securitized into stock, the mortgage lender can no longer claim that it is a real party in interest, or even that the loan stills exists as a loan, since double dipping is a form of securities fraud. A negotiable instrument can only be in one of two states after undergoing securitization, not both at the same time. It can either be a loan or a stock. Once the instrument is traded as a stock, it is forever a stock and therefore regulated, as this loan was, by the SEC as a stock.

24.      Since thousands of shareholders of the mortgage pool that contain the subject Promissory Note, no one of them can foreclose on Defendant's property. MERS was not the "nominee" for the lender. The true lenders in this matter were the investors that had provided funds for the loans through mortgage backed security pools that were held as trusts.

5

25.    The proper parties to this action would be the investors of the mortgage-backed securities to which Plaintiff's loan was securitized; but these parties have no recorded interest in the Mortgage, which were never delivered to the Trustee for the mortgage backed security pool; therefore the Promissory Note itself is, at best, unsecured rights to payment. These investors, however, provided no consideration to the Defendant.

26.    Since Defendant's Mortgage went into alleged default, it was most likely written off and was therefore discharged.

27.    Additionally, a trust typically requires that if a MERS-owned loan is transferred to the trustee, all intervening indorsements - such as from the depositor - must be on the note.

28.    The Promissory Note does not carry any such required intervening indorsements.

29.    Notes endorsed in blank cannot lawfully be an asset of a private mortgage backed security ("MBS") Trust.

30.    Plaintiff did not attach the Promissory Note to its Complaint.  However, the Promissory Note contains no such indorsements.

31.    Defendant believes and therefore avers that the Promissory Note in this case was never actually transferred and delivered to the Depositor and by the Depositor to the Custodian on behalf of the Trustee for the Trust pursuant to the requirements of the PSA.  Moreover, the Mortgage that was allegedly transferred to the Trust pursuant to the PSA was not listed in any of the documents filed by the Trust and available to the public at www.edgar.gov.  Accordingly, Defendant alleges that the Promissory Note in this case was never lawfully negotiated and physically delivered to the Trust.

32.    Defendant alleges upon information and belief that the Trust did not hold any interest in Defendant's Mortgage and, therefore, did not have standing to foreclose on the Property.

33.    To add further confusion to this foreclosure, Defendant's inability to ascertain the true owner of a MERS loan is problematic where the owner of the loan has ultimate authority with respect to making decisions, such as whether to pursue a foreclosure or permit a loan modification. It is also problematic because the Defendant is unable to challenge a purported note holder's right to foreclose if he is precluded from identifying that entity. By hiding the true mortgage owner and removing that information from the public land records, MERS created substantial confusion.

34.    Member employees cause MERS to take various legally operative actions, such as assigning mortgages, signing checks, and foreclosing on homeowners. Because MERS historically has had only around 50 employees, it relies on its members' employees to perform MERS' acts as MERS corporate officers. MERS purports to act as agent for the holder or owner of a note, yet each act MERS performs on such entity's behalf is actually done by that entity's own employee acting as a MERS signing officer. MERS' use of signing officers to conduct the business of MERS creates confusion and constitutes a deceptive trade practice.

35.    MERS attempted to assign Defendant's Mortgage or foreclose on the Mortgage on behalf of a securitization trust that, despite being registered as the mortgage owner in the MERS System, does not own the loan. MERS is therefore acting without authority.

36.    In fact, the actual promissory note was not made out to Plaintiff. The promissory note does not bear any endorsement, whether on the face of the note or affixed as an allonge to Plaintiff. The Promissory Note was thus never properly delivered to Plaintiff.

37.    As such, the requirement for effective transfer—that the promissory note bear all intervening endorsements showing a complete chain of endorsement from the originator to the last endorsee, was not met and the sale was ineffective. Yet MERS still purported to act on behalf of this trust when assigning the mortgage to Deutsche Bank prior to foreclosure. The entity purporting to foreclose was not acting on behalf of the true owner of the note. This was a deceptive trade practice.

38.    MERS did not own or possess the Promissory Note and did not own a beneficial interest in the Promissory Note. MERS could not, and did not, pass an interest in the Promissory Note to the Plaintiff.

39.    The reality is that MERS does not maintain any beneficial interest in notes or mortgages. There is no interest that MERS could assign to the Plaintiff or to anyone else, and therefore, the latter parties have no right to foreclose.

40.    No note or other evidence exists which could ever make the Defendant indebted to MERS or Plaintiff in any way.

41.    Neither MERS nor Plaintiff ever had, nor will they ever have, the authority to assign the Mortgage to any entity.

42.    Neither MERS nor Plaintiff ever had any right to collect on the Promissory Note or enforce the Mortgage, nor have they ever had a right to hold, enforce or collect upon the Promissory Note.

43.    The Promissory Note and the Mortgage are inseparable. An assignment of the Promissory Note carries the Mortgage, while an assignment of the latter is a nullity.

44.    The Promissory Note requires that notice must be given to the borrower by first class mail or by delivery to the property address.

45.    The Mortgage requires written notice must be given to the borrower in writing by first class mail or delivered to the property address.

46.    The Mortgage explains that notice provides the borrower with an opportunity to cure.

47.    The Mortgage provides a covenant and a condition that no suit may be commenced until after the notice of breach is given.

48.    Plaintiff did not plead that it provided the Defendant with of the above notices and especially, notice of breach, nor did it attach notice of breach to its complaint.

49.    The Mortgage requires the lender to notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in the mortgage.

50.    Plaintiff did not provide the Defendant with notice of acceleration, nor did it attach notice of acceleration to its complaint.

51.    Written notice of a change of the loan servicer is required by 15 U.S.C. §1641(g), 24 C.F.R. 3500.21 (d) and by paragraph 20 of the mortgage which states:

> If there is a change of the loan servicer, borrower will be given written notice of the change which will state the name and address of the new loan servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing.

52.    15 U.S.C. §1641(g) requires:

(1) In general

In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including—

(A) the identity, address, telephone number of the new creditor;

(B) the date of transfer;

(C) how to reach an agent or party having authority to act on behalf of the new creditor;

(D) the location of the place where transfer of ownership of the debt is recorded; and

(E) any other relevant information regarding the new creditor.

53.   24 C.F.R. 3500.21(d) states:

Notices of Transfer; loan servicing.  (1)  Requirement for notice. (i)  Except as provided in this paragraph (d)(1)(i) or paragraph (d)(1)(ii) of this section, each transferor servicer and transferee servicer of any mortgage servicing loan shall deliver to the borrower a written Notice of Transfer, containing the information described in paragraph (d)(3) of this section, of any assignment, sale, or transfer of the servicing of the loan. The following transfers are not considered an assignment, sale, or transfer of mortgage loan servicing for purposes of this requirement if there is no change in the payee, address to which payment must be delivered, account number, or amount of payment due:  (A)  Transfers between affiliates;  (B)  Transfers resulting from mergers or          acquisitions of servicers or subservicers; and (C)  Transfers between master servicers, where the subservicer remains the same.

. . . .

(2)  Time of notice. (i)  Except as provided in paragraph (d)(2)(ii) of this section:

(A)  The transferor servicer shall deliver the Notice of Transfer to the borrower not less than 15 days before the effective date of the transfer of the servicing of the mortgage servicing loan;  (B)  The transferee servicer shall deliver the

Notice of Transfer to the borrower not more than 15 days after the effective date of the transfer; and (C)  The transferor and transferee servicers may combine their notices into one notice, which shall be delivered to the borrower not less than 15 days before the effective date of the transfer of the servicing of the mortgage servicing loan.  (ii)  The Notice of Transfer shall be delivered to the borrower by the transferor servicer or the transferee servicer not more than 30 days after the effective date of the transfer of the servicing of the mortgage servicing loan in any case in which the transfer of servicing is preceded by:(A)  Termination of the contract for servicing the loan for cause;  (B)  Commencement of proceedings for bankruptcy of the servicer; or  (C)  Commencement of proceedings by the Federal Deposit Insurance . . .

54.     Plaintiff did not plead that the loan servicer changed to either Plaintiff or to any other party, nor did it plead that it gave notice of a change in the loan servicer to the Defendant, nor did it attach notice of a change of the loan servicer to its Complaint.

55.     The Plaintiff intentionally represented to the Court and Defendant that it has a legitimate right to enforce the debt and that it owns and holds the original Promissory Note along with an original Mortgage.

56.     At the time the Plaintiff filed the foreclosure action, it and its agents knew that it did not have the right to enforce the Note and Mortgage and that the assignment of mortgage was created to give the illusion of legitimacy in pursuing this action.

57.     The Plaintiff is pursuing this foreclosure under a guise of authority it does not have.

58.     The Plaintiff does not own or hold the Promissory Note and Mortgage, is not entitled to enforce same under 13 Pa. C.S.A. 3301 and lacks standing to bring this action against

11

the Defendant. Transfers of the Note and Mortgage were not in accord with the requirements of the PSA and the indorsement on the Note is not authorized and fraudulent.

59.    The assignment of the Mortgage did not transfer an interest in the Promissory Note to the Plaintiff.

60.    Moreover, Plaintiff had no interest in Defendant's Mortgage at the time of the Assignment.

61.    There was no received no valuable consideration received from Plaintiff for the assignment.

62.    Plaintiff failed to plead sufficient ultimate facts to support standing and failed to plead the specific subdivision of 13 Pa. C.S.A. 3301 which grants it authority as a holder.

63.    A party does not state a cause of action by merely reciting legal conclusions or tracking statutory language, but must include factual allegations. Failure to state sufficient factual allegations therefore requires dismissal of the claim.

64.    The Plaintiff's Complaint cannot state a cause of action as it has no authority to enforce the subject Promissory Note and Mortgage.

65.    Defendant denies the authenticity of each and every indorsement on the Promissory Note and Mortgage, including their own alleged indorsements, and demand strict proof thereof, by clear and convincing evidence, pursuant to 13 Pa. C.S.A.§ 3308.

66.    On information and belief, the Plaintiff does not have the original promissory note executed by the Defendant, does not have access to same, and any reproductions of the alleged original promissory note constitute unauthentic signatures.  On information and belief, the Plaintiff cannot authenticate the signatures.

67.    The Plaintiff knew that it was collecting a debt it had no right to collect.

68.    Defendant is a consumer within the meaning of the FDCPA, 15 U.S.C. §1692a(3). Plaintiff and its agents and attorneys are debt collectors within the meaning of the FDCPA, 15 U.S.C. §1692a(6).

69.    The Plaintiff, its agents and attorneys violated 15 U.S.C. §1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person, and which did harass, oppress and abuse the Defendant by falsely representing the character, amount, or legal status of the debt (15 U.S.C. §1692e(2)); by sale or transfer of an interest in the debt that caused the consumer to lose any claim or defense to payment of the debt, and in particular, by obfuscation of the true creditor (15 U.S.C. §1692e(6)); by communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed (15 U.S.C. §1692e(8)); by the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer (15 U.S.C. §1692e(10)); by the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law (15 U.S.C. §1692f(1)); by taking or threatening to unlawfully repossess or disable the consumer's property (15 U.S.C. §1692f(6)); by, within five days after the initial communication with defendant in connection with the collection of any debt, failing to send defendant a written notice containing a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed,

the debt collector will obtain verification of the debt or a copy of a judgment against the

consumer and a copy of such verification or judgment will be mailed to the consumer by the debt

collector; and a statement that, upon the consumer's written request within the thirty-day period,

the debt collector will provide the consumer with the name and address of the original creditor, if

different from the current creditor (15 U.S.C. §1692g).

70.    Plaintiff violated provisions of the Federal Fair Debt Collection Practices Act at

15 USC 1692, *et. seq.* because it did not have any right to enforce collection of this Mortgage

and Note because it did not have standing, it did not comply with all conditions precedent, it has

no legally enforceable claim against the Defendant, it did not comply with the contract

requirements for acceleration, it had unclean hands, it harmed the credit of defendant, it sent

dunning letters to the defendant.

71.    Plaintiff has failed to properly plead, describe or identify its legal identity,

authority and capacity to sue and therefore show the jurisdiction of this court under the

Pennsylvania Rules of Civil Procedure.

72.    Plaintiff failed to provide notice of an assignment of the Mortgage or change of

the loan servicer. 15 U.S.C. §1641(g) requires:

> (1) In general
> In addition to other disclosures required by this subchapter, not later than 30 days
> after the date on which a mortgage loan is sold or otherwise transferred or
> assigned to a third party, the creditor that is the new owner or assignee of the debt
> shall notify the borrower in writing of such transfer, including—
> (A) the identity, address, telephone number of the new creditor;
> (B) the date of transfer;
> (C) how to reach an agent or party having authority to act on behalf of the new
> creditor;

(D) the location of the place where transfer of ownership of the debt is recorded; and

(E) any other relevant information regarding the new creditor.

73.   Plaintiff, its agents and attorneys failed to provide Defendant's with notice of an assignment of the Mortgage or change of the loan servicer in violation of 15 U.S.C. §1641(g).

74.   Plaintiff failed to provide notice of an assignment of the Mortgage or change of the loan servicer. The servicing of the subject Mortgage had changed and no notice of a change of the servicer was provided by the Plaintiff to the Defendant as required by 24 C.F.R. 3500.21(d), which provides:

Notices of Transfer; loan servicing. (1) Requirement for notice. (i) Except as provided in this paragraph (d)(1)(i) or paragraph (d)(1)(ii) of this section, each transferor servicer and transferee servicer of any Mortgage servicing loan shall deliver to the borrower a written Notice of Transfer, containing the information described in paragraph (d)(3) of this section, of any assignment, sale, or transfer of the servicing of the loan. The following transfers are not considered an assignment, sale, or transfer of Mortgage loan servicing for purposes of this requirement if there is no change in the payee, address to which payment must be delivered, account number, or amount of payment due:

(A)  Transfers between affiliates;  (B)  Transfers resulting from mergers or acquisitions of servicers or subservicers; and (C)  Transfers between master servicers, where the subservicer remains the same.
. . . .

(2)  Time of notice. (i)  Except as provided in paragraph (d)(2)(ii) of this section: (A)  The transferor servicer shall deliver the Notice of Transfer to the borrower not less than 15 days before the effective date of the transfer of the servicing of the Mortgage servicing loan;  (B)  The transferee servicer shall deliver the Notice of Transfer to the borrower not more than 15 days after the effective date of the transfer; and (C)  The transferor and transferee servicers may combine their notices into one notice, which shall be delivered to the borrower not less than 15 days before the effective date of the transfer of the servicing of the Mortgage servicing loan. (ii)  The Notice of Transfer shall be delivered to the borrower by the transferor servicer or the transferee servicer not more than 30 days after the effective date of the transfer of the servicing of the Mortgage servicing loan in any

case in which the transfer of servicing is preceded by:(A)  Termination of the contract for servicing the loan for cause;  (B)  Commencement of proceedings for bankruptcy of the servicer; or  (C)  Commencement of proceedings by the Federal Deposit Insurance . . .

75.    The Plaintiff failed to provide the Defendant with either notice of breach or adequate notice of breach as required by the Promissory Note and Mortgage and as required by 24 C.F.R. 3500.21 and 24 CFR 203.604.

76.    Plaintiff has not and cannot show default as required pursuant to the Promissory Note and Mortgage.

77.    The Defendant also asserts the defense of Estoppel and the Pennsylvania UCC. The subject Promissory Note is non-negotiable paper.  The Plaintiff is not a holder in due course and on information and belief, the original Promissory Note is lost or stolen.  Pennsylvania law provides that an obligor is not obliged to pay the instrument if the person seeking enforcement of the instrument does not have rights of a holder in due course and the obligor proves that the instrument is a lost or stolen instrument.

78.    Defendant asserts and alleges all other facts referenced in the previous affirmative defenses and that Plaintiff has added illegal charges to the alleged debt owed by the Defendant.

79.    Additionally, on information and belief, Plaintiff illegally added charges and fees to the alleged debt owed by the Defendant including but not limited to interest, late charges, title search expense, attorney's fees and other necessary costs.

80.    Defendant hereby alleges the Plaintiff misapplied the payments which resulted in an incorrect amortization and the imposition of unwarranted fees and costs.  Specifically, Defendant alleges the Plaintiff, by use of its proprietary computer software and the proprietary computer software of each and every predecessor servicer, first applied payments to fees and costs assessed on this mortgage loan, then to principal, accrued interest and escrowed costs in

violation of the Mortgage resulting in an incorrect amortization of this loan when fees and costs were assessed.

81.    Defendant hereby demands a full disclosure of the proprietary computer software, its methods, processes, prioritization, and application of all payments rendered by the Defendant on the mortgage loan during the entire life of the mortgage loan. Further, Defendant demand a corrected application of each and every payment in compliance with the contractual priority of the funds rendered by the Defendant on this account.

82.    The Plaintiff is not the real party in interest in that it is not the owner and holder of the Note and Mortgage nor is it an agent of the owner and holder of the Note and Mortgage. The Plaintiff does not own and hold (have a right to enforce) the Note and Mortgage nor is it entitled to enforce the Note and Mortgage on behalf of the real owner and holder thereof. The Plaintiff has not included the real party in interest in this action.

83.    Plaintiff failed to pay any value for the Promissory and Mortgage, thus ensuring it is not entitled to an equitable lien if one is requested. In the alternative, Plaintiff has been fully compensated by the sale, transfer, assignment or negotiation of the instrument to an unidentified third party. Therefore, Plaintiff is not entitled to subrogation.

84.    Defendant demands credit for and application of any and all collateral source payments Plaintiff, its predecessors in interest, co-owners, trust beneficiaries, certificate holders, or any others associated with this Note and Mortgage have received or will be entitled to receive from any source whatsoever as a result of the default claimed, including credit default insurance, credit default swaps, whether funded directly by insurance and/or indemnity agreement or indirectly paid or furnished by means of federal (i.e. TARP funds) assistance on an apportioned basis for loans or groups of loans to which the subject mortgage loan of the action is claimed.

85.    On information and belief, the Plaintiff purchased, acquired or otherwise received the right to collect insurance on the subject note and mortgage or was otherwise insured against all losses and costs associated with enforcing the subject note and mortgage in the event of a default.  On information and belief, the Plaintiff has actually collected full payment on the subject note and mortgage or will receive full payment for any delinquency including fees and costs association with enforcement of the note and mortgage.  Thus, any further award of damages to the Plaintiff would result in a windfall to the Plaintiff.

86.    On information and belief, the Plaintiff has insurance, whether denominated default swap insurance, FHA insurance or otherwise, which has either fully compensated the Plaintiff for any funds issued to the Defendant or will be fully compensated for any funds issued to the Defendant.  Therefore, a judgment of foreclosure and release of any proceeds to the Plaintiff post-judicial sale will result in an unjust enrichment to the Plaintiff.

87.    Plaintiff's verification is improper and not in compliance with the Pa. Rules of Civil Procedure.  Moreover, the verification was taken by Jeffrey Stephan who has publically admitted that he has no personal knowledge of any foreclosure.  Mr. Stephan is a classic "robo-signer."

88.    The mortgage and the note provide venue in Bucks County yet the foreclosure was filed in Montgomery County; venue is therefore improper.

89.    Plaintiff failed to post Defendant's payments timely resulting in charges of interest and collection costs.

90.    Plaintiff's imposed unnecessary charges against Defendant such as "drive by" property inspections and forced-placed insurance at higher rates.

91.    Plaintiff paid real estate taxes too early that caused Defendant's escrow analysis to be higher that it should have been.

92.    The mortgage that is the subject of this Complaint is an FHA/HUD insured mortgage.

93.    As such, Plaintiff must comply with HUD guidelines prior to foreclosure which Plaintiff failed to do

### Forced Placed Insurance and Defendant's Escrow Account

94.    On or about July 11, 2008, Plaintiff refinanced a mortgage (the "Loan") with LBA Financial Group, LLC, for the residential property at 521 Cowpath Road, Telford, Pennsylvania, 18969 (the "Property").

95.    The Loan was FHA insured that required the collection and disbursement of real estate taxes, hazard insurance, and mortgage insurance.

96.    The Initial Escrow Account Disclosure statement provided that the first monthly payment was due September 1, 2008 and would be $5,401.26.

97.    However, Plaintiff increased the monthly amount, without explanation, to $6,609.09 and then later reduced the amount to $5,612.25.

98.    Paragraph 4 of the Mortgage requires Defendant to maintain insurance on the Property. This paragraph does not state that Plaintiff may purchase backdated insurance coverage, does not state that Plaintiff may arrange for commissions for itself or its affiliates in connection with lender placed insurance coverage, and does not give Plaintiff the right to engage in the other conduct alleged herein.

99.    Defendant maintained $660,000 of hazard insurance on the Property as of July 11, 2008, and notified Plaintiff of the same.

100.    Notwithstanding the above, Plaintiff sent Defendant a letter dated October 9, 2008 and falsely claimed that there was no evidence of hazard insurance on the Property.

101.    On November 23, 2008, Plaintiff sent a second form letter and falsely claimed that there was no evidence of hazard insurance on the Property.  Plaintiff stated that if they did not hear from Defendant within 45 days, Plaintiff would pay the insurance charges and collect the insurance charges by adding to Defendant's monthly mortgage payment.

102.    Defendant again notified Plaintiff of the insurance coverage and Plaintiff never responded.

103.    The increase to Defendant's escrow account was due to the forced placed insurance.

104.    Sometime in 2009 at Defendant's insistence, Plaintiff performed an "audit" of Defendant's escrow account.  Notwithstanding clear evidence of Defendant's hazard insurance on the Property, Plaintiff refused to credit Defendant for the insurance premiums charged to Defendant.

105.    Defendant should only have been charged $5,486.02 for the initial escrow balance and Defendant should have been credited with $1,913.52.  Defendant's monthly payment should have been reduced by $159.46.  Without the forced placed insurance, Defendant's monthly payment to Plaintiff would have been reduced further.

106.    Defendant attempted to pay the $5,401.26, but Plaintiff refused to accept the payments.

107.    The foreclosure was improper as the alleged arrearages are attributable in part to the unjustified and unlawful charges that Plaintiff imposed for forced-placed insurance, and Plaintiff's continuing refusal to accept mortgage payments from Defendant that do not include

additional escrow amounts for forced placed insurance. In addition, Defendant paid taxes too early which caused an incorrect escrow analysis.

108.    The above is part of a larger pattern of practice and abusive mortgage practices and forced placed insurance practices by Plaintiff.

109.    The Plaintiff's forced placed insurance practices are currently under scrutiny by state attorneys general from all 50 states.

110.    Plaintiff has also been the subject of several class-action lawsuits relating to its mortgage practices and forced placed insurance practices. *See, e.g., Santiago v. GMAC Mortgage Group, Inc.*, 417 F.3d 384 (3d. Cir. 2005)(finding plaintiff stated valid claim against GMAC for unlawful markups and kickbacks).

111.    The type of conduct and other conduct alleged herein is unfair, unreasonable, unconscionable, unjust, and inconsistent commercial standards of good faith and fair dealing.

112.    Plaintiff purchased forced placed insurance on Defendant's Property from Balboa Insurance Company ("Balboa") and Balboa has acted as Plaintiff's "forced placed insurance back office." Balboa has actively facilitated and participated in Plaintiff's abusive force- placed insurance practices.

113.    Balboa accepted handsome premium payments for backdated insurance policies that were force-placed by Plaintiff, including but not limited to the forced placed insurance on Defendant's Property.

114.    Upon information and belief, Balboa paid kickbacks or commissions to Plaintiff in connection with these force-placed insurance policies.

115.    In addition, Balboa performed insurance tracking services for Plaintiff, and communicated with Plaintiff's borrowers on behalf of Plaintiff when their existing coverage was

deemed to be deficient and/or lacking by Plaintiff and Balboa. As one former Balboa employee has explained:

> when you call in to customer service, for say, GMAC, you're not actually speaking to a GMAC employee. You're actually speaking to a Bank of America associate working for Balboa Insurance who is required by their business to business contract with GMAC to state that they are, in fact, an employee of GMAC. The reasoning is that if you do not realize you're speaking to a Bank of America/Balboa Insurance employee, you have no reason to question the validity of the information you are receiving from them. If you call your insurance agent and ask them for the lienholder information for your GMAC/Wells Fargo/etc lien (home or auto) you will be provided with their name, but the mailing address will be a PO Box at one of Balboa's main tracking locations (Moon Township/Coreaopolis [sic], PA, Dallas/Ft Worth, TX, or Phoenix/Chandler, AZ).

116.    The form letters that were sent on Plaintiff's letterhead to Plaintiff reference a Coraopolis, PA post office box address. On information and belief, these letters were sent by Balboa on behalf of Plaintiff.

117.    At all relevant times, Balboa and Plaintiff conspired to enrich themselves at the expense of Defendant in connection with force-placed insurance coverage, by backdating coverage, charging Defendant with inflated premiums for force-placed coverage, and skimming the excess for themselves.

118.    GMAC is bound by the terms of Plaintiff's Mortgage.

119.    Defendant's Mortgage does not authorize Plaintiff to purchase backdated insurance for periods of time that already have expired, or to charge Defendant for backdated insurance.

120.    Defendant's Mortgage does not authorize Plaintiff to profit from force-placed insurance, or to arrange for kickbacks or commissions for itself and/or its affiliates in connection with forced-placed insurance.

121.    Plaintiff breached the terms of Defendant's Mortgage by (1) charging Plaintiff and other class members for backdated force-placed insurance coverage for periods of time that already had expired; and (2) arranging for kickbacks or commissions for itself and/or its affiliates in connection with force-placed insurance.

122.    Plaintiff also breached the implied covenant of good faith and fair dealing inherent in Defendant's Mortgage.

123.    Plaintiff owed Defendant a duty of good faith and fair dealing, by virtue of Plaintiff's contractual relationship with Defendant.

124.    Plaintiff willfully engaged in the foregoing conduct in bad faith, for the purpose of (1) unfairly and unconscionably maximizing revenue from Defendant; (2) generating commissions, kickbacks, or other compensation for Plaintiff and/or its affiliates; (3) gaining unwarranted contractual and legal advantages; and (4) depriving Defendant of his contractual and legal rights to obtain a loan, extension of credit, or credit renewal (or maintain the same) without having to purchase backdated insurance.

125.    The foregoing breaches were willful and not the result of mistake or inadvertence.

126.    As a direct result of Plaintiff's breaches of the covenant of good faith and fair dealing, Defendant has suffered actual damages and monetary losses, in the form of increased insurance premiums, interest payments, and other charges, and unnecessary burdens on his property rights.

127.    Defendant is entitled to recover their damages and other appropriate relief for the foregoing contractual breaches.

128.    Plaintiff has pervasively violated the Pennsylvania Unfair Trade Practices Act, and the Pennsylvania Fair Credit Extension Uniformity Act by virtue of its unfair,

WHEREFORE, Defendant Kenneth Taggart demands judgment in his favor and against Plaintiff, plus court costs, damages in an amount in excess of $50,000, plus attorney's fees and such other relief as this Honorable Court deems just and proper.

## COUNTERCLAIM
## COUNT 1- DECLARATORY JUDGMENT

129.    The above paragraphs are incorporated herein by reference as though set forth at length.

130.    The Plaintiff has taken actions in violation of its statutory, legal and contractual duties. Said actions have resulted in the wrongful foreclosure of the Property. An actual dispute exists among Defendant, Plaintiff, and GMAC, and the Trustee of the Trust. Plaintiff requests that the Court declare the rights of the parties in this matter.

WHEREFORE, Defendant Kenneth Taggart demands judgment against the Plaintiff as follows:

a.    Defendant seek a declaratory judgment that Plaintiff is not the actual owner/holder of the Promissory Note and Mortgage in question and that Plaintiff did not know whether a default had occurred, or had been declared by the actual owners of the debt evidence by the Mortgage and Promissory Note;

b.    Plaintiff lacked authority to declare a default or otherwise pursue collection of the debt evidenced by the Promissory Note;

   c.  Plaintiff lacks authority to foreclose on the Property, to sell the Property, or to distribute any proceeds thereof;

   d.  To quiet title in favor of Defendant and against Plaintiff;

   e.  For compensatory, special and general damages in an amount according to proof at trial, but not less than $50,000, against the Plaintiff;

   f.  For punitive damages in an amount to be determined by the Court against the Plaintiff;

   g.  For reasonable attorney's fees and costs and such other and further relief as the Court deems proper.

## COUNT II
## WRONGFUL FORECLOSURE

131. The above paragraphs are incorporated herein by reference as though set forth at length.

132. Defendant is informed and believes and thereon alleges that after the origination and funding of his mortgage loan, it was sold or transferred to investors or other entities and that Plaintiff did not own the loans or the corresponding notes at the time of the foreclosure. Accordingly, Plaintiff in this action did not have the right to declare default, cause notices of default to be issued or recorded, or foreclose on Defendant's interest in the Property.  Plaintiff in this action was the note holder or a beneficiary of Defendant's loan at the time of foreclosure.

133. Defendant further alleges on information and belief that Plaintiff in this action was not beneficiary or a representative of the beneficiaries.  That is, none of them were assigned the Promissory Note and/or Mortgage executed by Defendant.

134.    Moreover, none of the signatories to the Promissory Note and any assignment or other document executed in furtherance of the within foreclosure, had the authority to execute said documents. None of said documents properly disclosed the principals that the individual was signing for.

135.    Consequently, Plaintiff engaged in a wrongful foreclosure of the Property in that Plaintiff did not have the legal authority to foreclose on the Property.

136.    As a result of the above-described breaches and wrongful conduct by Plaintiff, Defendant has been harmed.

WHEREFORE, Defendant Kenneth Taggart demands that this Court enter an order to satisfy the security interests of Plaintiff, and rescind the mortgage and note, enter an order that Plaintiff is barred from foreclosing on the Property, that Plaintiff is barred from making any claim for payment against Defendant, awarding damages in an amount in excess of $50,000 in favor of Defendant and against Plaintiff, and provide any other and further relief as the Court deems just and proper.

## COUNT III
## QUIET TITLE

137.    The above paragraphs are incorporated herein by reference as though set forth at length.

138.    Defendant is the legal owner of the Property.

139.    Defendant seeks to quiet title against the claims of Plaintiff and anyone else claiming interest in the property. Plaintiff and any successors or assignees have no right to title

or interest in the Property and no right to entertain any rights of ownership including rights of possession.

140.   The description of the Property is as follows:



[illegible faded stamped deed text]

141.   Defendant seeks a judicial declaration that the title to the Property is vested in Defendant alone and that Plaintiff and each of them be declared to have no interest estate, right, title or interest in the Property and that Plaintiff, their agents and assigns, be forever enjoined from asserting any estate, right title or interest in the Property.

142.   Plaintiff does not have any legal ownership or interest in the Property, is attempting too obtain the Property through fraud and wrongful conduct, and failed to adhere to the strict statutory requirements to effectuate the foreclosure of the Property. Therefore, the Property is still Defendant's property.

143.   Accordingly, the Court should rule that the Property remains Defendant's property and award consequential damages as proven at trial.

WHEREFORE, Defendant Kenneth Taggart demands that this Court enter a judicial

declaration quieting title in the Property as described aforesaid, and establishing Defendant's ownership and possessory interests in the Property, and provide any other an further relief as the Court deems just and proper.

## COUNT IV-
## SLANDER OF TITLE

144.    The above paragraphs are incorporated herein by reference as though set forth at length.

145.    Plaintiff wrongfully and without privilege, caused a Notice of Default and Assignment to be recorded against the Property.

146.    Plaintiff, whether individually or jointly with others, wrongfully caused the recording of the Notice of Default, Assignment, and other foreclosure documents against the Property.

147.    By doing the acts described above, Plaintiff slandered Defendant's title to the Property.

148.    In that the conduct and acts of Plaintiff violated, such conduct and acts were not privileged.

WHEREFORE, Defendant Kenneth Taggart demands that this Court find that Plaintiff has committed slander of title against the Defendant, and provide any other an further relief as the Court deems just and proper.

## COUNT V
## NEGLIGENCE

149.    Defendant incorporates the foregoing paragraphs as though the same were set forth at length herein.

150.    At all times relevant herein, Plaintiff, acting as Defendant's lenders and/or servicers, had a duty to exercise reasonable care and skill to maintain proper and accurate loan records and to discharge and fulfill the other incidents attendant to the maintenance, accounting and servicing of loan records, including, but not limited, disclosing to Defendant the status of any foreclosure actions taken by it, disclosing who owned Defendant's loan to Plaintiff, refraining from taking any action against Defendant that it did not have the legal authority to do, and providing all relevant information regarding the Loan Plaintiff had with them to Plaintiff.

151.    In taking the actions alleged above, and in failing to take the actions as alleged above, Plaintiff breached its duty of care and skill to Defendant in the servicing of Defendant's loans by, among other things, preparing and recording false documents, and foreclosing on the Property without having the legal authority and/or proper documentation to do so.

152.    At all times relevant herein, Plaintiff, acting as the alleged trustee, but without the legal authority to do so, had a duty to exercise reasonable care and skill to follow Pennsylvania law with regard to foreclosures, avoid any conflicts of interest in exercising its duties, and refrain from taking any action against Defendant that it did not have the legal authority to do.

153.    In taking the actions alleged above, and in failing to take the actions as alleged above, Plaintiff breached its duty of care and skill to Defendant by failing to properly train and supervise its agents and employees with regard to Pennsylvania and New York law regarding the execution and recording of foreclosure documents; executing the assignments without the legal authority to do so; failing to follow Pennsylvania law with regard to foreclosures and New York law with regard to the PSA, including, but not limited to, acting as the trustee, and taking actions against Defendant that it did not have the legal authority to do.

154.    As a direct and proximate result of the negligence and carelessness of Plaintiff as set forth above, Defendant suffered, and continues to suffer damages.

WHEREFORE, Defendant Kenneth Taggart seeks judgment in his favor and damages against Plaintiff, for actual damages, statutory damages, punitive damages, costs and reasonable attorney's fees; and such other and further relief as this Honorable Court deems just and proper.

## COUNT VI
### Violations of Pennsylvania's Fair
### Credit Extension Uniformity Act, 73 P.S. § 2270 *et seq.*

155.    Defendant incorporates the foregoing paragraphs as though the same were set forth at length herein.

156.    Plaintiff acted intentionally with the purpose of coercing Defendant to pay debts that he did not in fact owe.

157.    The conduct of Plaintiff, as alleged throughout this Complaint, violates the federal FCDPA, which are by statutory definition, violations of the state FCEUA, 73 P.S. § 2270.4(a).

158.    Plaintiff's conduct otherwise constitutes an unfair or deceptive practice with regard to the collection of debts within the meaning of 73 P.S. § 201-1 et seq.

159.    As a direct and proximate result of the violations of the FCEUA, Defendant has sustained actual and statutory damages for which Plaintiff is liable, together with reasonable attorney's fees and the costs of prosecuting this action.

WHEREFORE, Defendant Kenneth Taggart seeks judgment in his favor and damages against Plaintiff, for actual damages, statutory damages, punitive damages, costs

and reasonable attorney's fees; and such other and further relief as this Honorable Court
deems just and proper.

## COUNT VII
## VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES ACT

160.    Defendant incorporates the foregoing paragraphs as though the same were set
forth at length herein.

161.    Defendant is a consumer and the obligation between the parties is a debt owed
pursuant to the Promissory Note and Mortgage and is a consumer debt within the
meaning of the Pennsylvania Unfair Trade Practice and Consumer Protection Law, 73 P.S. §201-
1.

162.    Plaintiff's acts and practices are likely to deceive, constituting a fraudulent
business act or practice.  This conduct is ongoing and continues to this date.

163.    Specifically, as fully set forth above, Plaintiff engaged in deceptive business
practices with respect to Defendant's mortgage loan servicing, assignments of Defendant's
Promissory Note and Mortgage, foreclosure of his Property by, among other things,

    a)    billing and collecting for forced-placed insurance on the Property when in
fact Defendant maintained insurance coverage;

    b)    instituting improper or premature foreclosure proceedings to generate
unwarranted fees;

    c)    executing and recording false and misleading documents;

    d)    executing and recording documents without the legal authority to do so;

e)      failing to disclose the principal for which documents were being executed and recorded;

f)      acting as beneficiaries and trustees without the legal authority to do so;

g)      represented that goods or services have sponsorship or characteristics that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have in that Plaintiff held itself out as a plaintiff when in fact another entity was the real party in interest in the litigation;

h)      caused and continue to cause likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services, in that the source of actual ownership of the mortgage and Plaintiff's and MERS' affiliation, connection, or association with the true owner of the mortgage is obscured is hidden and difficult or impossible to ascertain;

i)      caused and continue to cause likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another, in that MERS' represented and continue to represent that goods or services have sponsorship or characteristics that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have, in that Plaintiff and/or MERS' business practice is to hold itself out as a mortgagee when in fact another entity is the true owner of the mortgage;

j)      caused and continue to cause likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services in that the fact that MERS' operates through the employees of its members, combined with the lack

of disclosure of such fact, obscures the source of the entity with whom a consumer, as here Defendant, is dealing and the identity of the MERS member as the sponsor of the MERS corporate officer;

k)   caused and continue to cause likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods in that Plaintiff and/or MERS held itself out as an agent with the approval to perform services from its principal when in fact that was not true and there was a likelihood of misunderstanding as to the identify of MERS' sponsor as mortgagee;

l)   caused and continue to cause likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by another in that Plaintiff and/or MERS' affiliation, connection, or association with its purported principal was held out as an actual agency relationship;

m)   represented and continue to represent that goods or services have sponsorship or characteristics that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not in that Plaintiff and/or MERS held itself out as an agent for an entity that was not its principal;

n)   by purporting to act as an agent without knowing the identity of Plaintiff's principal and therefore knowing whether Plaintiff acted within the scope of its agency, the Plaintiff, in their course of business caused and continue to cause likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services in that it permitted MERS to hold itself out as its agent when in fact MERS was not acting for the true principal;

34

o)       represented and continue to represent that goods or services have sponsorship or characteristics that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have in that MERS held itself out as still having a relationship with an entity with respect to a given mortgage when that entity no longer had any interest in the mortgage, and that MERS represented that the action taken by MERS was pursuant to an appropriately obtained signature when in fact it was not;

p)       initiated foreclosure actions while hiding the real party in interest, thus preventing homeowners from ascertaining who such party was, from challenging whether such party had a right to pursue the foreclosure, and from raising potential defenses that may have otherwise been available; and

q)       provided two TILA disclosures but failed to provide a 3 day right of recission following the second TILA;

r)       filed a complaint with fraudulent "robo-signed" verification by Jeffrey Stephan, an admitted "robo-signer";

s)       created assignments that were not what they purported to be, and the assignments were created by a law firm that has an interest in MERS and that also prosecuted the foreclosure;

t)       by violation RESPA by not disclosing all fees and charges;

u)       Violating the Mortgage Property Insurance Coverage Act, 7 P.S. § 6701, et seq. ("Act") which provides that:

No lender may require a borrower, as a condition of obtaining or maintaining a secured loan, to obtain property insurance coverage which exceeds the replacement value of buildings and structures situate on the land used to secure the loan. A borrower on a loan secured by real property may not be required to insure the value of the land.

v)        other deceptive business practices.

164.    Plaintiff's conduct otherwise constitutes an unfair or deceptive practice with regard to the collection of debts within the meaning of 73 P.S. § 201-1 *et seq.*

165.    As a direct and proximate result of the above violations, Defendant has sustained actual and statutory damages for which Plaintiff is liable, together with reasonable attorney's fees and the costs of prosecuting this action

166.    As a result of the conduct and misrepresentations of Plaintiff as aforesaid, Defendant is entitled to recover an award up to three times the actual damages sustained by Defendant.

167.    Pursuant to 73 P. S. §201-9.1, Defendant is entitled to such additional relief as may be deemed necessary or proper as a result of the conduct of Plaintiff.

WHEREFORE, Defendant, Kenneth Taggart, demands judgment against Plaintiff for damages determined to be sustained, treble damages, pre-judgment interest, reasonable attorney's fees, costs of suit and other such relief as this Honorable Court deems just and proper.

## COUNT IX
## INVASION OF PRIVACY/FALSE LIGHT

168.    Defendant incorporates the foregoing paragraphs as though the same were set forth at length herein.

169.    At all times material hereto, Plaintiff, MERS, and others were acting in joint concert with each other, by and through their agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of Plaintiff herein.

170.    Plaintiff caused to be instituted a foreclosure suit in this Court against Defendant. The suit against Defendant was based on false documents.

171.    As described in detail in the aforesaid paragraphs, Plaintiff illegally called default on the Note upon Defendant when it, acting alone or in concert, had no right to call a default.

172.    The actions of Plaintiff violated Defendant's right of privacy by placing Defendant in a false light before the eyes of others, including potential credit grantors and creditors as well as family, friends and the general public.

173.    By such unauthorized publication and circulation of Defendant name and the inaccurate information, Plaintiff invaded Defendant's right to privacy, subjected Defendant to ridicule and contempt, injured Defendant's personal esteem, reflected disgracefully on Defendant's character, diminished Defendant's high standing, reputation and good name among family, friends, neighbors and business associates, destroyed Defendant's peace of mind, and caused Defendant severe distress.

174.    The conduct of Plaintiff was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, damages and harm to Defendant that are outlined more fully above and, as a result, Plaintiff is liable to compensate Defendant for the full amount of actual, compensatory and punitive damages, as well as such other relief, permitted under the law.

WHEREFORE, Defendant, Kenneth Taggart, seeks judgment in his favor and against Plaintiff for actual damages, statutory damages, punitive damages, costs and reasonable attorney's fees; and such other and further relief as this Honorable Court deems just and proper.

## COUNT X
## BREACH OF CONTRACT

175.   Defendant incorporates the foregoing paragraphs as though the same were set forth at length herein.

176.   On or about July 11, 2008, Defendant refinanced a mortgage with LBA Financial Group, LLC, for the Property.

177.   The mortgage is an enforceable contract.

178.   Plaintiff breached the mortgage contract with the Defendant, *inter alia,* as follows:

a)   failed to comply with the mortgage notice provisions;
b)   charged excessive fees and interest;
c)   breached the mortgage by failing to apply the payments made by Defendant to Defendant's loan, the result of which led to the foreclosure on the Property.

179.   As a proximate result of Plaintiff's breaches, Defendant has suffered compensatory damages in an amount to be proven at trial.

WHEREFORE, Defendant, Kenneth Taggart, seeks judgment in his favor and against Plaintiff for actual damages, statutory damages, punitive damages, costs and reasonable attorney's fees; and such other and further relief as this Honorable Court deems just and proper.

Dated: ___6/9/2013___

_____
Robert J. Birch, Esquire
Attorney for Defendant

## VERIFICATION

I, Kenneth Taggart, hereby state that the facts set forth in the Amended Answer with New

Matter and Counterclaim are true and correct to the best of my knowledge, information and

belief. I understand that this verification is made subject to the penalties of 18 Pa. C.S.A. §4904

relating to unsworn falsification to authorities.


Dated: 6/19/13

Kenneth Taggart

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

GMAC MORTGAGE LLC

                                        :
                                        :
                    VS.                 :     NO. 2009-25338
KENNETH TAGGART                         :
                                        :
                                        :

## COVER SHEET OF MOVING PARTY

Date of Filing _____ Moving Party _____ **Plaintiff** _____

Counsel for Moving Party _____ Robert J. Birch _____ I.D. No.65816 _____

Document Filed (Specify) _____ MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

_____

Matter is (Check One) _____ (Appealable) __x__ (Interlocutory)

Oral Argument __x__ (Yes) _____ (No)

------------------------------------------------------------------------

**CERTIFICATIONS** - Check **ONLY** if appropriate:

_____ Counsel certify that they have conferred in a good faith effort to resolve the subject discovery dispute. **(Required by Local Rule 208.2(e) on motions relating to discovery.)**

_____ Counsel for moving party certifies that the subject **civil motion** is **uncontested** by all parties involved in the case. (If checked, skip Rule to Show Cause section below.)

                    By: _____
                        Counsel for Moving Party

------------------------------------------------------------------------

**RULE TO SHOW CAUSE** - Check **ONE** of the Choices Listed Below:

_____ Respondent is directed to show cause why the moving party is not entitled to the relief requested by filing an **answer** in the form of a **written response** at the **Office of the Prothonotary** on or before the _____ day of _____ 20__.

_____ Respondent is directed to show cause, in the form of a **written response**, why the attached Family Court Discovery Motion is not entitled to the relief requested. Rule Returnable and Argument the _____ day of _____, 20__ at **1:00 p.m.** at **321 Swede Street, Norristown, Pa**.

_____ Respondent is directed to file a **written response** in conformity with the Pennsylvania Rules of Civil Procedure.

_____ Rule Returnable at time of trial.

                    By: _____
                        Court Administrator

2/10