## Exhibit 24

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

| GMAC Mortgage, LLC, | : | COURT OF COMMON PLEAS |
|---|---|---|
| | : | MONTGOMERY COUNTY |
| Plaintiff, | : | CIVIL DIVISION |
| | : | |
| v. | : | |
| | : | No: 2009-25338 |
| Kenneth J. Taggart, | : | |
| | : | |
| Defendant. | : | |

## ORDER

AND NOW, this _____ day of _____, 2014, upon consideration of the

Motion of GMACM Mortgage, LLC ("GMACM") for a Stay Pending Further Relief or Directive

from Bankruptcy Court before which GMACM is a debtor in bankruptcy proceedings jointly

administered as *In re: Residential Capital, LLC*, 12-02020 (U.S. Bankr. S.D.N.Y.) (Glenn, J), it

is hereby ORDERED, ADJUDGED, and DECREED that the Motion is GRANTED and in light

of the Bankruptcy Court's September 7, 2012 Order, the instant matter is stayed in all respects,

including discovery, pending further relief or directive of the Bankruptcy Court.


BY THE COURT:


_____
TOLLIVER, J.

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

**REED SMITH LLP**                                    *Attorneys for Plaintiff*
Diane A. Bettino, Esq. (Id. No. 64111)               *GMAC Mortgage, LLC*
Barbara K. Hager, Esq. (Id. No. 88832)
Wayne C. Stansfield, Esq. (Id. No. 81339)
Maria T. Guerin, Esq. (Id. No. 207378)
1650 Market Street
2500 One Liberty Place
Philadelphia, PA 19103
215-851-8100

| | | |
|---|---|---|
| **GMAC Mortgage, LLC,** | : | COURT OF COMMON PLEAS |
| | : | MONTGOMERY COUNTY |
| Plaintiff, | : | CIVIL DIVISION |
| | : | |
| v. | : | |
| | : | No:   09-25338 |
| **Kenneth J. Taggart,** | : | |
| | : | |
| Defendant. | : | |

## GMACM'S MOTION FOR A STAY
## PENDING FURTHER RELIEF OR DIRECTIVE FROM BANKRUPTCY COURT

Plaintiff GMAC Mortgage, LLC ("GMACM"), by and through its undersigned counsel,
respectfully files this Motion for a Stay Pending Further Relief from Bankruptcy Court (the
"Motion"), by which it advises the Court of its ongoing debtor status in bankruptcy proceedings
pending in a separate venue, and the need for additional direction and relief from the Bankruptcy
Court before the pending claims against GMACM may be further pursued.

### BACKGROUND

1.     GMACM commenced a foreclosure action in 2009, and Mr. Taggart filed several
amended pleadings and counterclaims.

2.     On May 14, 2012, GMACM and certain of its affiliates filed voluntary petitions
under Chapter 11 of Title 11 of the Bankruptcy Code in the United States Bankruptcy Court for
the Southern District of New York ("Bankruptcy Court"). GMACM's case is jointly

administered as part of the Chapter 11 case for the Debtor Residential Capital, LLC, et al., and is indexed as case number 12-12020 ("Bankruptcy Proceedings").

3.    By virtue of the Bankruptcy Proceedings, and but for the limited relief granted by the Bankruptcy Court discussed below, all actions against GMACM and the bankruptcy estate are stayed. 11 U.S.C. § 362.

4.    On May 15, 2012 and June 15, 2012, respectively, the Bankruptcy Court entered an Interim Order and a Supplemental Servicing Order, and on July 13, 2012, the Court entered the Final Supplemental Order under Bankruptcy Code Sections 105(a), 362, 363, 502, 1107(a), and 1108 and Bankruptcy Rule 9019 (i) Authorizing the Debtors to Continue Implementing Loss Mitigation Programs; (ii) Approving Procedures for Compromise and Settlement of Certain Claims, Litigations and Causes of Action; (iii) Granting Limited Stay Relief to Permit Foreclosure and Eviction Proceedings, Borrower Bankruptcy Cases, and Title Disputes to Proceed; and (iv) Authorizing and Directing the Debtors to Pay Securitization Trustee Fees and Expenses (the "Final Supplemental Order"). A true and correct copy of the Final Supplemental Order is attached hereto as **Exhibit A**.

5.    Among other things, the Final Supplemental Order clarified that GMACM may file and/or proceed with pending foreclosure actions.

6.    Taggart sought relief from the Bankruptcy Court regarding the foreclosure proceedings and whether he had a right to pursue then-pending 32 counterclaims in the context of foreclosure proceedings initiated by GMACM, or whether such counterclaims would violate the automatic stay.

7.    On September 7, 2012, the Bankruptcy Court entered an order which granted in part and denied in part Defendant's Motion to Lift the Automatic Stay imposed pursuant to the

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

Bankruptcy Proceedings (the "September 7 Order"). A true and correct copy of the September 7

Order is attached hereto as **Exhibit B.**

        8.     In the September 7 Order, the Bankruptcy Court ordered:

> The automatic stay of Bankruptcy Code section 362 is modified for the limited
> purpose of permitting the Foreclosure Proceeding to proceed through resolution of
> dispositive motion practice, by which the state court in the Foreclosure
> Proceeding will determine the viability of Taggart's alleged defenses to
> foreclosure, and resolution of any appeals of the state court's order in connection
> therewith.

Exhibit B, ¶ 2 (emphasis added). Importantly, the September 7 Order specifically dictates that:

> Absent further order of the Court, the automatic stay shall remain in full force and
> effect except as provided for in this Order.

Id., ¶ 4.

> Upon completion of any dispositive motion practice (including resolution of any
> appeals taken from the state court's order(s) in connection with such dispositive
> motions) as permitted by paragraph 2 of this Order, Taggart may renew the
> Motion [] as to any of his remaining counterclaims that would otherwise be stayed
> by the [Final] Supplemental Servicing Order …

Id., ¶ 5 (emphasis added).

> This Court shall retain jurisdiction with respect to all matters relating to the
> interpretation or implementation of this Order.

Id., ¶ 6.

        9.     It is very clear that the September 7 Order allowed what was then a foreclosure

action to proceed through resolution of dispositive motion practice, by which the state court

would determine whether or to what extent any of Taggart's then-pending 32 count

counterclaims might serve as a defense to foreclosure. Id., ¶ 2.

        10.    On June 25, 2013, Defendant filed a "Motion for Leave to File a Third Amended

Complaint [sic]" ("Motion for Leave"), which the Court granted by Order docketed on October

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

3, 2013 (Docket No. 348), and pursuant to which Mr. Taggart was granted 30 days to file the amended pleading ("Amended Counterclaim").

11.    Although the Amended Counterclaim was not timey filed, as a collateral matter raised during a sanctions hearing conducted on December 12, 2013 (the "December 12 Hearing"), the Court expressed its intention to allow the amended filing beyond the 30 days directed in the Order.

12.    On October 30, 2013, GMACM filed a Praecipe to Discontinue ("Discontinuance") (Doc. No. 355) and the foreclosure complaint was withdrawn.

13.    On November 1, 2013, Mr. Taggart moved to strike the Discontinuance ("Motion to Strike" or "Petition to Reinstate") (Doc. No. 357).

14.    Oral argument on the Motion to Strike is scheduled for February 5, 2014.

15.    Notwithstanding the pending Motion to Strike the Discontinuance, there is currently no pending foreclosure action.

16.    On January 6, 2014, Taggart filed his Amended Answer to Complaint with New Matter and Counterclaim ("Counterclaim") (Docket No. 373).

17.    The Discontinuance of the Foreclosure Proceeding renders the counts of the Amended Counterclaim offensive counts as against the debtor GMACM, as opposed to potential defenses to the prior-pending foreclosure, the only permissible basis on which the Bankruptcy Court permitted them to proceed.

18.    The Bankruptcy Court plainly permitted adjudication of the then-pending 32 counterclaims so that this Court could assess whether any may constitute viable defenses to the then-pending *in rem* foreclosure, and specifically ordered that thereafter, Defendant could renew

-4-

his Motion for Leave to purse any remaining counterclaims against Plaintiff/Debtor "that would otherwise be stayed." See September 7, 2012 Bankruptcy Order, ¶¶ 2, 5.

19.    Accordingly, unless the Motion to Strike the Discontinuance scheduled for oral argument on February 5, 2014 is granted, no dispositive motion practice will transpire as a foreclosure and further relief from the Bankruptcy Court is undoubtedly required before the several counts of the Counterclaim may proceed as offensive claims against GMACM.

20.    Furthermore, even if the Motion to Strike the Discontinuance were ultimately granted and the foreclosure complaint reinstated, further relief from the Bankruptcy Court is also arguably required because the September 7 Order granted limited relief for the prior-pending 32 counterclaims, and not for the counts of the Amended Counterclaim filed January 6, which include new causes of action, e.g., Negligence (Count V) and Slander of Title (Count IV).

21.    Finally, the Amended Counterclaim should be stayed in light of the Proof of Claim filed by Taggart in the Bankruptcy Court prior to the filing of the Amended Counterclaims, and pursuant to which Mr. Taggart is pursuing the same relief being sought in this venue via the Amended Counterclaim. A true and correct copy of the Proof of Claim is attached hereto as **Exhibit C**.

22.    In the course of the December 12, 2013 Hearing during which the Court addressed the collateral issue and allowed the Amended Counterclaim to be filed, the Court also acknowledged the need for Mr. Taggart to seek further relief or directive from the Bankruptcy Court before prosecuting his Amended Counterclaim, stating, *inter alia*;

COURT:    That would probably be with the bankruptcy court in New York. He'd be violating that order so he better get up there and do what he has to do in New York.
              …
COURT:    I'm not telling New York bankruptcy court what to do.

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

December 12 Hearing Transcript, p. 49:13-19.  A true and correct copy of the December 12

Hearing Transcript is attached hereto as **Exhibit D.**

23.    Notwithstanding the instant request for relief, and without waiver of GMACM's

right to the relief requested in light of its debtor status in the above-described bankruptcy

proceedings, GMACM is filing preliminary objections to the Amended Counterclaim filed

January 6, 2014 in an abundance of caution to ensure there is no inadvertent default.  The filing

of same and of any other filings are made to preserve all rights of GMACM, despite the necessity

of further directive or relief from the Bankruptcy Court.

## RELIEF REQUESTED

WHEREFORE, GMACM respectfully requests that the Court (i) stay the instant

case in all respects including discovery until further relief and/or other directive is obtained from

the Bankruptcy Court; or in the alternative (ii) stay all matters but for the pending Motion to

Strike the Discontinuance.


Respectfully submitted,


By: */s/ Barbara K. Hager*
Diane Bettino
Barbara K. Hager
Wayne C. Stansfield
Maria T. Guerin
**REED SMITH LLP**
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

Dated:  January 27, 2014                    *Attorneys for Plaintiff*

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

# EXHIBIT A

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

(Page 9 of 88)

12-12020-mg    Doc 7847-28    Filed 12/09/14    Entered 12/09/14 17:48:56    Exhibit 24
to Delehey Decl    Pg 10 of 90
12-12020-mg    Doc 774    Filed 07/13/12    Entered 07/13/12 17:05:30    Main Document
Pg 1 of 19

Docket #0774  Date Filed: 7/13/2012

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------
                                            )
In re:                                      )    Case No. 12-12020 (MG)
                                            )
RESIDENTIAL CAPITAL, LLC, et al.,           )    Chapter 11
                                            )
                            Debtors.        )    Jointly Administered
                                            )
---------------------------------------------

**FINAL SUPPLEMENTAL ORDER UNDER BANKRUPTCY CODE SECTIONS 105(a), 362, 363, 502, 1107(a), AND 1108 AND BANKRUPTCY RULE 9019 (I) AUTHORIZING THE DEBTORS TO CONTINUE IMPLEMENTING LOSS MITIGATION PROGRAMS; (II) APPROVING PROCEDURES FOR COMPROMISE AND SETTLEMENT OF CERTAIN CLAIMS, LITIGATIONS AND CAUSES OF ACTION; (III) GRANTING LIMITED STAY RELIEF TO PERMIT FORECLOSURE AND EVICTION PROCEEDINGS, BORROWER BANKRUPTCY CASES, AND TITLE DISPUTES TO PROCEED; AND (IV) AUTHORIZING AND DIRECTING THE DEBTORS TO PAY SECURITIZATION TRUSTEE FEES AND EXPENSES**

Upon the motion (the "Motion")[1] of Residential Capital, LLC, and certain of its

affiliates, as debtors and debtors in possession (collectively, the "Debtors") for entry of a

supplemental order under Bankruptcy Code sections 105(a), 362, 363, 1107(a) and 1108, and

Bankruptcy Rule 9019 (i) authorizing the Debtors to continue implementing loss mitigation

programs; (ii) approving procedures for the compromise and settlement of certain claims,

litigations and causes of action in the ordinary course of the Debtors' business; (iii) granting

limited stay relief to permit (w) borrowers or their tenants, as applicable, to prosecute direct

claims and counter-claims in foreclosure and eviction proceedings (including in states in which

non-judicial foreclosure is followed), (x) borrowers to prosecute certain actions in borrower

bankruptcy cases, (y) the Debtors to prosecute foreclosure actions in those circumstances where

---

[1]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.
      Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11 cases or the relief
      granted herein may refer to http://www.kccllc.net/rescap for additional information.

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00



1212020120713000000000011

ny-1046923

(Page 10 of 88)

12-12020-mg    Doc 7847-28    Filed 12/09/14    Entered 12/09/14 17:48:56    Exhibit 24
to Delehey Decl    Pg 11 of 90
12-12020-mg    Doc 774    Filed 07/13/12    Entered 07/13/12 17:05:30    Main Document
Pg 2 of 19

they service senior mortgage loans and own the junior mortgage loans on the underlying

property, and (z) third party lien holders to prosecute direct claims and counter-claims in actions

involving the amount, validity or priority of liens on properties subject to foreclosure

proceedings; and (iv) authorizing and directing the Debtors to pay certain securitization trustee

fees and expenses; and the Court having considered the Whitlinger Affidavit and the Bocresion

Declaration; and the Court having entered the Interim Supplemental Order on June 15, 2012

[Docket No. 391]; and the Court having entered a final order on June 15, 2012 granting the GA

Servicing Motion on a final basis [Docket No. 401]; and the Court having entered a final order

on June 15, 2012 granting the Non-GA Servicing Motion on a final basis [Docket No. 402]; and

it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157

and 1334; and it appearing that venue of these Chapter 11 cases and the Motion in this district is

proper pursuant to 28 U.S.C §§ 1408 and 1409; and it appearing that this proceeding on the

Motion is a core proceeding pursuant to 28 U.S.C. § 157(b); and sufficient notice of the Motion

having been given and it appearing that no other or further notice need be provided; and the

National Association of Consumer Bankruptcy Attorneys, on its own behalf and in a

representative capacity, two individuals who are debtors under Chapter 13, and Edward Boltz,

counsel for those individuals, having filed jointly the Limited Omnibus Objection To The

Servicing Orders And Debtors' May 31, 2012 Motion For A Supplemental Order [Docket No.

221] (the "NACBA Objection"); and the Committee having filed the Omnibus Response And

Reservation Of Rights Of The Official Committee Of Unsecured Creditors To Certain Of The

Debtors' First Day Motions [Docket No. 240]; and the Debtors having filed the Omnibus Reply

To Objections To Entry Of Final Orders For Specific "First Day" Motions And Related Relief

[Docket. No. 254]; and upon the record of the hearing; and it appearing that the relief requested

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

2

(Page 11 of 88)

12-12020-mg    Doc 7847-28    Filed 12/09/14    Entered 12/09/14 17:48:56    Exhibit 24
to Delehey Decl    Pg 12 of 90
12-12020-mg    Doc 774    Filed 07/13/12    Entered 07/13/12 17:05:30    Main Document
Pg 3 of 19

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

by the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and after due deliberation thereon; and any objections to the Motion, including the NACBA Objection, having been withdrawn, resolved, or overruled on the merits; and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is GRANTED on a final basis, as set forth herein, and any objections to the Motion are hereby overruled;

Loss Mitigation Programs

2.      The Debtors are authorized, but not directed in their sole and absolute discretion and subject to available funding, to continue developing and implementing loss mitigation programs and procedures in the ordinary course of their businesses *nunc pro tunc* to the Petition Date, including, but not limited to, making incentive payments to borrowers in connection with the closing of short sales, or vacating properties in lieu of foreclosure or eviction proceedings, or in the form of borrower rebates for loan payoffs including honoring all obligations related thereto that accrued in whole or in part prior to the Petition Date (collectively, the "Loss Mitigation Programs"); provided, however, that the aggregate cash payments made by the Debtors to individual borrowers under the Loss Mitigation Programs that are not reimbursed to the Debtors shall not exceed $550,000 per month (the "Monthly Cap"), absent consent of the Committee or further order of the Court; provided, further, however, that to the extent the Debtors do not exceed the Monthly Cap in any month they shall be entitled to utilize the difference between the actual amount and the Monthly Cap in any succeeding month. The Debtors shall provide monthly reports to the Committee and the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), which reports shall be in a

ny-1046923

(Page 12 of 88)

12-12020-mg    Doc 7847-28    Filed 12/09/14    Entered 12/09/14 17:48:56    Exhibit 24
to Delehey Decl    Pg 13 of 90
12-12020-mg    Doc 774    Filed 07/13/12    Entered 07/13/12 17:05:30    Main Document
Pg 4 of 19

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

form agreed to by the Debtors and the Committee and such additional information as shall be reasonably requested by the Committee, in each case, concerning the Loss Mitigation Programs.

3.    Cash payments made by the Debtors to individual borrowers under the Loss Mitigation Programs for which the Debtors are not reimbursed shall not exceed $4.2 million in the aggregate, absent consent of the Committee or further order of the Court. For the avoidance of doubt, the limitation on the amount of cash payments provided for in this paragraph 3 is in addition to the limitation on the amount of cash payments provided for in paragraph 12 hereof.

Settlement Procedures

4.    The Debtors are authorized, but not directed to compromise and settle certain claims brought by the Debtors against any non-insider third parties in connection with foreclosure, eviction, or borrower bankruptcy proceedings (each a "Settling Party") or by a Settling Party against any of the Debtors (each, a "Claim") in accordance with the following two-tiered procedures (the "Settlement Procedures"):

Tier I:  The Debtors, in their sole discretion, may enter into, execute and consummate written agreements of settlement with respect to Claims that will be binding on the Debtors and their estates without further action by this Court or notice to any party and grant such Settling Parties cash payments or allowed prepetition claims in amounts not to exceed $40,000 in full settlement of such Claim (each, a "Tier I Settlement").

Tier II:  The Debtors may enter into, execute and consummate written agreements of settlement with respect to Claims that will be binding on the Debtors and their estates without further action by this Court or notice to any party and grant such Settling Parties cash payments or allowed prepetition claims in amounts exceeding $40,000 but less than $100,000 in full settlement of such Claims (each, a "Tier II Settlement"); provided, that in each case:

(a) The Debtors must provide advance written notice (by formal or informal means, including by e-mail correspondence) of the terms of any Tier II Settlement to (x) the U.S. Trustee, 33

Whitehall Street, 21st Floor, New York, New York 10004, Attn: Brian S. Masumoto, (y) counsel for the Committee, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas New York, NY 10036, Attn: Kenneth H. Eckstein and Douglas H. Mannal; and (z) counsel to the administrative agent for the Debtors' providers of debtor in possession financing, Skadden, Arps, Slate, Meagher & Flom LLP, 4 Times Square, New York, New York 10036, Attn: Kenneth S. Ziman and Jonathan H. Hofer (collectively the "Notice Parties")

(b) Those Notice Parties wishing to object to any proposed Tier II Settlement must serve a written objection (by formal or informal means, including by e-mail correspondence) on the Debtors, so that it is received by no later than 4:00 p.m. (prevailing Eastern Time) on the day that is seven (7) calendar days from the date the Notice Parties received written notice of such Tier II Settlement (the "Settlement Objection Deadline"). Objections should be addressed to the proposed attorneys for the Debtors, Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, New York 10104, Attn: Larren M. Nashelsky (LNashelsky@mofo.com) and Norman S. Rosenbaum (NRosenbaum@mofo.com).

(c) If the Debtors receive a timely objection from a Notice Party, the parties will confer and attempt to resolve any differences. Failing that, the Debtors may petition the Court for approval of the Tier II Settlement in accordance with any case management orders entered in the Chapter 11 cases. An objection by a Notice Party with respect to a given Tier II Settlement shall not delay the finality or effectiveness of any other settlement to which an objection has not timely been delivered.

(d) If the Debtors do not receive a written objection to a Tier II Settlement from a Notice Party by the Settlement Objection Deadline, then such Tier II Settlement shall be deemed approved and the Debtors and Settling Parties may carry out the terms of such Tier II Settlement without further notice or Court approval.

5.    The Debtors shall be required to seek approval from the Court in order to enter into and consummate any proposed settlement of a Claim with a settlement amount in excess of $100,000.

6.    The Debtors are authorized in their sole discretion, but not directed, to settle claims where some or all of the consideration is being provided by a third party and/or

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

ny-1046923

(Page 14 of 88)

12-12020-mg    Doc 7847-28    Filed 12/09/14    Entered 12/09/14 17:48:56    Exhibit 24
to Delehey Decl    Pg 15 of 90
12-12020-mg    Doc 774    Filed 07/13/12    Entered 07/13/12 17:05:30    Main Document
Pg 6 of 19

where the Debtors are releasing claims against creditors or third parties provided the Debtors

otherwise comply with the Settlement Procedures.

7.    The Settlement Procedures are without prejudice to the right of the

Debtors to seek an order of this Court approving additional or different procedures with respect

to specific claims or categories of claims.  For claims relating to matters specified in paragraphs

14(a) and 15(a) of this Order that were resolved pursuant to a settlement prior to the Petition

Date, but where such settlement has not been consummated, the Debtors are authorized, but not

directed to, consummate said settlements in accordance with the Settlement Procedures set forth

in this Order.

8.    Notwithstanding anything to the contrary contained herein, this Order

shall not affect, impair, impede or otherwise alter the right of the Debtors to resolve any

prepetition or postpetition controversy arising in the ordinary course of the Debtors' businesses,

or resolve any controversy authorized by any other order of the Court.

9.    Nothing in this Order or the Motion shall constitute a determination or

admission of liability or of the validity or priority of any claim against the Debtors, and the

Debtors reserve their rights to dispute the validity or priority of any claim asserted.

10.    The authority granted in this Order shall not replace or obviate the need to

comply with the Debtors' internal procedures, legal or otherwise, for authorizing the settlements

contemplated in the Motion.  All settlements made pursuant to the Settlement Procedures shall,

to the extent applicable, be made in accordance with the Debtors' settlement procedures in effect

as of the Petition Date (the "Internal Settlement Protocol") and as may be amended from time;

provided, however, that the Debtors shall provide the Committee and the U.S. Trustee with

notice of any material changes to the Internal Settlement Protocol.

ny-1046923

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

(Page 15 of 88)

12-12020-mg    Doc 7847-28    Filed 12/09/14    Entered 12/09/14 17:48:56    Exhibit 24
to Delehey Decl    Pg 16 of 90
12-12020-mg    Doc 774    Filed 07/13/12    Entered 07/13/12 17:05:30    Main Document
Pg 7 of 19

11.    The Debtors shall provide monthly reports to the Committee and the U.S. Trustee, which reports shall be in a form agreed to by the Debtors and the Committee, and such additional information as shall be reasonably requested by the Committee, in each case, concerning settlements of any Claims pursuant to the Settlement Procedures.

12.    Cash payments made by the Debtors under the Settlement Procedures shall not exceed $4 million in the aggregate, absent consent of the Committee or further order of the Court.

13.    Any period prescribed or allowed by the Settlement Procedures shall be computed in accordance with Bankruptcy Rule 9006.

Limited Relief from Automatic Stay

*Borrower Foreclosure And Eviction Proceedings*

14.    The stay imposed by section 362(a) of the Bankruptcy Code applicable to (a) pending and future foreclosure actions initiated by the Debtors or in those states providing for non-judicial foreclosures, by a borrower; and (b) pending and future eviction proceedings with respect to properties for which a foreclosure has been completed or is pending, is hereby modified pursuant to the following terms and conditions:

(a)    except as set forth herein, a borrower, mortgagor, or lienholder (each, an "Interested Party") shall be entitled to assert and prosecute direct claims and counter-claims relating exclusively to the property that is the subject of the loan owned or serviced by a Debtor for the purposes of defending, unwinding, or otherwise enjoining or precluding any foreclosure, whether in a Judicial State or a Non-Judicial State, or eviction proceeding, where a final judgment (defined as any judgment where the right to appeal or seek reconsideration has expired or has been exhausted) permitting the foreclosure or

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

ny-1046923

(Page 16 of 88)

12-12020-mg    Doc 7847-28    Filed 12/09/14    Entered 12/09/14 17:48:56    Exhibit 24
to Delehey Decl    Pg 17 of 90
12-12020-mg    Doc 774    Filed 07/13/12    Entered 07/13/12 17:05:30    Main Document
Pg 8 of 19

eviction has not been awarded or, with respect to completed foreclosure sales in Non-Judicial States, where any applicable challenge period has not yet expired, and to prosecute appeals with respect to any such direct claims or counter-claims;

(b)    absent further order of the Court, the automatic stay shall remain in full force and effect with respect to all pending and future Interested Party direct claims and counter-claims: (i) for monetary relief of any kind and of any nature against the Debtors, except where a monetary claim must be plead in order for an Interested Party to assert a claim to defend against or otherwise enjoin or preclude a foreclosure (each a "Mandatory Monetary Claim"); (ii) for relief that if granted, would not terminate or preclude the prosecution and completion of a foreclosure or eviction; or (iii) asserted in the form of a class action or collective action;

(c)    absent further order of the Court, the stay shall remain in full force and effect with respect to any party seeking to intervene to assert related claims against the Debtors or any class action or collective action brought by any Interested Party on behalf of any other Interested Party or class of Interested Parties;

(d)    under no circumstances shall an Interested Party be entitled to enforce against, recoup, setoff or collect from the Debtors any judgment or award related to any direct claim or counter-claim for which the automatic stay has been lifted by the terms of this Order, including, without limitation, a Mandatory Monetary Claim;

(e)    the Debtors shall retain the right, upon appropriate motion and notice to any affected Interested Party, to seek to impose any provision of section 362(a) of the Bankruptcy Code modified by this Order and to the extent such relief is sought, the

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

ny-1046923

Debtors will not object to the Interested Party's telephonic participation at any hearing on

the motion; and

(f)    nothing set forth herein shall preclude or limit any Interested Party

from seeking relief from the automatic stay under section 362(a) of the Bankruptcy Code

on appropriate motion and notice to the Debtors and parties in interest.

*Borrower Bankruptcy Proceedings*

15.    The automatic stay imposed by section 362(a) of the Bankruptcy Code

applicable against a borrower who currently has filed, or in the future files, for bankruptcy

protection under any chapter of the Bankruptcy Code (a "Bankruptcy Borrower"), is hereby

modified pursuant to the following terms and conditions:

(a)    except as set forth herein, a Bankruptcy Borrower or a trustee duly

appointed under the Bankruptcy Code in the Bankruptcy Borrower's bankruptcy case (a

"Bankruptcy Trustee") shall be entitled to:  (i) assert and prosecute or continue to

prosecute an objection to the Debtors' proof of claim filed in the Bankruptcy Borrower's

bankruptcy case; (ii) assert and prosecute or continue to prosecute an objection to the

Debtors' motion for relief from the automatic stay filed in the Bankruptcy Borrower's

bankruptcy case; (iii) commence or continue to prosecute against the Debtors a motion or

adversary proceeding, as applicable, to determine the validity, priority or extent of a

Debtor's lien against the Bankruptcy Borrower's property; (iv) commence or continue to

prosecute against the Debtors a motion or adversary proceeding, as applicable, to reduce

(including to reduce to $0) or fix the amount of the Debtors' claim or lien against the

Bankruptcy Borrower's property; (v) prosecute appeals with respect to items (i) through

(iv) above; (vi) seek an accounting from the Debtors with respect to the Bankruptcy

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

ny-1046923

(Page 18 of 88)

12-12020-mg   Doc 7847-28   Filed 12/09/14   Entered 12/09/14 17:48:56   Exhibit 24
to Delehey Decl   Pg 19 of 90
12-12020-mg   Doc 774   Filed 07/13/12   Entered 07/13/12 17:05:30   Main Document
Pg 10 of 19

Borrower's loan; and (vii) enter into, execute and consummate a written agreement of settlement with the Debtors where the Debtors elect to enter into such settlement in their sole discretion (but subject to the Settlement Procedures), to resolve items (i) through (vi) above;

(b)      except as set forth herein, a Bankruptcy Borrower shall be entitled to (i) engage in court-supervised or court-authorized loss-mitigation programs regarding the Bankruptcy Borrower's loan; and (ii) engage in discussions with the Debtors and execute a modification of the Bankruptcy Borrower's loan or otherwise discuss, enter into and consummate settlements of claims and liens in accordance with the ordinary course of the Debtors' business and applicable law;

(c)      absent further order of the Court, the automatic stay shall remain in full force and effect with respect to all Bankruptcy Trustee's and Bankruptcy Borrower's direct claims, counter-claims, motions or adversary proceedings:  (i) for monetary relief of any kind and of any nature against the Debtors; (ii) for violation of any local, state or federal statute or other law in connection with the origination of the Bankruptcy Borrower's loan; (iii) for relief that if granted, would have no effect on the amount, validity or priority of the Debtors' claim or lien against a Bankruptcy Borrower or the property of the Bankruptcy Borrower securing such claim or lien of the Debtors; or (iv) asserted in the form of a class action or collective action; provided however, a Bankruptcy Trustee or Bankruptcy Borrower, solely in connection with their objections to Debtors' proof of claim permitted by paragraph 15(a)(i) or proceedings permitted by 15(a)(iii), may assert claims of the type covered by subsection (i) or (ii) of this paragraph 15(c);

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

ny-1046923

(Page 19 of 88)

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

(d)    absent further order of the Court, the automatic stay shall remain in full force and effect with respect to any party seeking to intervene to assert related claims against the Debtors or any class action or collective action brought by any Bankruptcy Borrower on behalf of any other class of borrowers;

(e)    with the sole exception of objections to Debtors' proofs of claim permitted by paragraph 15(a)(i) above and proceedings described in 15(a)(iii) above and solely for purposes of reducing any such claim and not for the purpose of obtaining an affirmative recovery or award, under no circumstances shall a Bankruptcy Borrower or Bankruptcy Trustee be entitled to recoup, setoff or collect from the Debtors any judgment or award related to any direct claim or counter-claim for which the automatic stay has been lifted by the terms of this Order;

(f)    the Debtors shall retain the right, upon appropriate motion and notice to any Bankruptcy Borrower or Bankruptcy Trustee, to seek to impose any provision of section 362(a) of the Bankruptcy Code modified by this Order and to the extent such relief is sought, the Debtors will not object to the Interested Party's telephonic participation at any hearing on the motion; and

(g)    nothing set forth herein shall preclude or limit any Bankruptcy Borrower or Bankruptcy Trustee from seeking relief from the automatic stay under section 362(a) of the Bankruptcy Code on appropriate motion and notice to the Debtors and parties in interest.

*Foreclosures By The Debtors On Senior Loans*

16.    The stay imposed by section 362(a) of the Bankruptcy Code applicable to pending and future foreclosure actions initiated by the Debtors in cases where they act as

ny-1046923

(Page 20 of 88)

12-12020-mg    Doc 7847-28    Filed 12/09/14    Entered 12/09/14 17:48:56    Exhibit 24
to Delehey Decl    Pg 21 of 90
12-12020-mg    Doc 774    Filed 07/13/12    Entered 07/13/12 17:05:30    Main Document
Pg 12 of 19

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

servicer for the Senior Loan and also own (or for which the applicable public land records otherwise reflect that the Debtors hold an interest) the Junior Loan with respect to the underlying property (collectively, the "Junior Foreclosure Actions") is hereby modified pursuant to the following terms and conditions:

(a)     except as otherwise set forth herein, the Debtors shall be entitled to assert and prosecute Junior Foreclosure Actions, whether in a Judicial State or a Non-Judicial State;

(b)     the Debtors shall be entitled to take such actions as are necessary to extinguish the lien with respect to a Junior Loan or to otherwise ensure clear and marketable title with respect to the property underlying a Senior Loan in connection with any sale or other disposition of such property;

(c)     the Debtors shall be entitled to seek all appropriate relief with respect to a Senior Loan in connection with the bankruptcy cases of a Bankruptcy Borrower without further order of the Court; and

(d)     the Debtors shall provide monthly reports to the Committee and the U.S. Trustee, which reports shall be in a form agreed to by the Debtors and the Committee, and such additional information as shall be reasonably requested by the Committee, in each case, concerning Junior Foreclosure Actions.

D.     *Actions Involving Amount, Validity Or Priority Of Liens*

17.     The stay imposed by section 362(a) of the Bankruptcy Code applicable to actions involving the amount, validity, and/or priority of liens commenced by third parties purporting to have a lien interest or other claim ("Third Party Claimants") with respect to

ny-1046923

properties that are subject to mortgages owned or serviced by the Debtors ("Title Disputes") is

hereby modified pursuant to the following terms and conditions:

(a)      except as otherwise set forth herein, a Third Party Claimant shall be

entitled to assert and prosecute direct claims and counter-claims relating exclusively to the

property that is the subject of the loan owned or serviced by a Debtor in connection with

any Title Dispute, and to prosecute appeals with respect to any such direct claims or

counter-claims;

(b)      absent further order of the Court, the automatic stay shall remain in

full force and effect with respect to all pending and future Third Party Claimant direct

claims and counter-claims:  (i) for monetary relief of any kind and of any nature against the

Debtors; (ii) for relief that is not necessary for the resolution of the Title Dispute; or

(iii) asserted in the form of a class action or collective action;

(c)      absent further order of the Court, the stay shall remain in full force

and effect with respect to any party seeking to intervene to assert related claims against the

Debtors or any class action or collective action brought by any Third Party Claimant on

behalf of any other Third Party Claimant or class of Third Party Claimants;

(d)      under no circumstances shall a Third Party Claimant be entitled to

enforce against, recoup, setoff or collect from the Debtors any judgment or award related

to any direct claim or counter-claim for which the automatic stay has been lifted by the

terms of the Order;

(e)      the Debtors shall be entitled to take such actions as are necessary to

clear title with respect to property that is subject to a Title Dispute or to otherwise ensure

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

(Page 22 of 88)

12-12020-mg   Doc 7847-28   Filed 12/09/14   Entered 12/09/14 17:48:56   Exhibit 24
to Delehey Decl   Pg 23 of 90
12-12020-mg   Doc 774   Filed 07/13/12   Entered 07/13/12 17:05:30   Main Document
Pg 14 of 19

clear and marketable title with respect to such property in connection with any sale,

foreclosure or other disposition of such property;

(f)   the Debtors shall retain the right, upon appropriate motion and

notice to any affected Third Party Claimant, to seek to impose any provision of section

362(a) of the Bankruptcy Code modified by the Order; and

(g)   nothing set forth herein shall preclude or limit any Third Party

Claimant from seeking relief from the automatic stay under section 362(a) of the

Bankruptcy Code on appropriate motion and notice to the Debtors and parties in interest.

Payment of Securitization Trustee Fees and Expenses

18.   The Debtors shall continue to perform all of their respective servicing

duties and servicing related duties, including, but not limited to, their duties as master servicer,

under all the governing agreements (including, without limitation, pooling and servicing

agreements, servicing agreements, or any other agreements concerning or relating to the Debtors'

obligations to reimburse and/or indemnify for reasonable fees, costs, expenses, liabilities, and/or

losses) (collectively, the "Agreements") relating to Debtor-sponsored securitization transactions

and non-Debtor sponsored securitization transactions to which any of The Bank of New York

Mellon Trust Company, N.A., Wells Fargo Bank, N.A., Deutsche Bank Trust Company

Americas, Deutsche Bank National Trust Company, or U.S. Bank National Association, or any

affiliate of such entities acts as trustee for which any Debtor performs servicing duties, in each of

their respective capacities as trustee (collectively, the "Trustees") and one or more of the Debtors

is a party, including but not limited to, making all principal, interest or other servicing advances

(including property protection advances) and reimbursing, indemnifying, defending and holding

harmless the Trustees and the securitization trusts for any liability, loss, or reasonable fees, cost

ny-1046923

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

(Page 23 of 88)

12-12020-mg    Doc 7847-28    Filed 12/09/14    Entered 12/09/14 17:48:56    Exhibit 24
to Delehey Decl    Pg 24 of 90
12-12020-mg    Doc 774    Filed 07/13/12    Entered 07/13/12 17:05:30    Main Document
Pg 15 of 19

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

or expense (including fees and disbursements of counsel or agents) incurred by any of the Trustees in the performance of their duties or their administration of the trusts or other agencies under the Agreements to the extent required by the Agreements.  For the avoidance of doubt, the Debtors shall pay the reasonable, actual out-of-pocket costs and expenses of the Trustees in connection with reviewing and analyzing the request by the Debtors to approve the MBS Settlement Agreement, and in connection with reviewing and analyzing amendments to the Agreements as necessary or appropriate in connection with any proposed Chapter 11 plan, the MBS Settlement Agreement or the Platform Sale.  Notwithstanding the foregoing, nothing in this paragraph 18 shall require any Debtor (i) to repurchase any mortgage loans on the basis of alleged breaches of representations, warranties or other requirements of the Agreements, or make any make-whole payments with respect to any mortgage loans pursuant to the Agreements; or (ii) to enforce, as against any other Debtor entity or any non-Debtor affiliate, any provision of the Agreements under which such other Debtor entity or non-Debtor affiliate are required to repurchase any mortgage loans on the basis of alleged breaches of representations, warranties or other requirements of the Agreements, or make any make-whole payments with respect to any mortgage loans pursuant to the Agreements; and nothing in this paragraph 18 shall be deemed to impose liability on any Debtor with respect to such alleged breaches or make-whole payment requirements.

19.    The Trustees shall submit invoices to (a) counsel to the Debtors, (b) counsel to the Committee, and (c) the U.S. Trustee, and all such invoices shall include (i) an itemization of all professional fees by task with a detailed description of the work performed in connection with such task, (ii) a description of related expenses, and (iii) a description of any indemnity claims.  Thereafter, within thirty (30) days of presentment of such invoices, if no

ny-1046923

(Page 24 of 88)

12-12020-mg    Doc 7847-28    Filed 12/09/14    Entered 12/09/14 17:48:56    Exhibit 24
to Delehey Decl    Pg 25 of 90
12-12020-mg    Doc 774    Filed 07/13/12    Entered 07/13/12 17:05:30    Main Document
Pg 16 of 19

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

written objections to the reasonableness of the fees and expenses charged in any such invoice (or

portion thereof) is made by the Debtors, the Committee, or the U.S. Trustee, the Debtors are

authorized and directed to pay all reasonable fees, costs and expenses and all indemnity claims

referred to in paragraph 18 (including without limitation, attorney, financial advisor, consultant

and expert fees and costs) incurred postpetition by any of the Trustees relating to the

performance of each of the Trustees' duties or the administration of the trusts or other agencies

under the Agreements (the "Trustee Expenses") that are not subject to an objection by the

Debtors, the Committee, or the U.S. Trustee without further order from the Court. Any objection

to the payment of the Trustee Expenses shall be made only on the basis of "reasonableness," and

shall specify in writing the amount of the contested fees and expenses and a detailed basis for

such objection. To the extent an objection only contests a portion of an invoice, the undisputed

portion thereof shall be promptly paid. If any such objection to payment of an invoice (or any

portion thereof) is not otherwise resolved between the Debtors, the Committee, or the U.S.

Trustee and the issuer of the invoice, either party may submit such dispute to the Court for a

determination as to the reasonableness of the disputed amounts. This Court shall resolve any

dispute as to the reasonableness of any fees and expenses.

20.    To the extent either the Committee, or the RMBS Trustees determine that

the Trustee Expenses were improperly or mistakenly allocated to an RMBS trust or to the

Debtors' estates, the Committee and the RMBS Trustees reserve the right to seek to correct the

allocation of the Trustee Expenses as between the RMBS trusts or the Debtors' estates in

accordance with the applicable Agreement, and such adjustment shall be the Committee's and

RMBS Trustees' sole remedy arising from a misallocation. All Trustee Expenses for which

(a) no objection under paragraph 19 has been interposed, or (b) where such an objection has been

ny-1046923

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

interposed and the amount of Trustee Expenses determined by the Court to be reasonable, shall be entitled to administrative expense priority in the Debtors' Chapter 11 cases notwithstanding the entry of an order authorizing the assumption and assignment or rejection of any Agreement. However, the Debtors will not be responsible for any fees, costs and expenses incurred with respect to any Agreement after the entry of an order in the Debtors' Chapter 11 cases authorizing the rejection of such Agreement.

21.    If any or all of the provisions of this Order are hereafter reversed, modified, limited, vacated or stayed, such reversal, stay, modification or vacatur shall not affect the validity, priority or enforceability of any Trustee Expenses incurred prior to the actual receipt of written notice by the Trustees of the effective date of such reversal, stay, modification or vacatur (the "Notice Date"). Notwithstanding any such reversal, stay, modification or vacatur, the payment of any Trustee Expenses incurred prior to the Notice Date and reimbursed prior to or after the Notice Date by the Debtors shall be governed in all respects by the original provisions of this Order, and the Trustees shall be entitled to all of the rights, remedies, privileges and benefits granted in this Order with respect to payment of Trustee Expenses.

22.    Notwithstanding the Debtors' obligations set forth in paragraphs 18 and 19, nothing in this Order shall be deemed to limit, extinguish, or prejudice the Debtors' rights in any way to assume and assign or reject any Agreement in accordance with Bankruptcy Code section 365.

Other Relief

23.    Any disputes regarding the extent, application and/or effect of the automatic stay under this Order shall be heard and determined in the Debtors' jointly administered bankruptcy cases pending in the United States Bankruptcy Court for the Southern

ny-1046923

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

District of New York, Case No. 12-12020 in accordance with the Case Management Order entered in the Debtors' cases [Docket No. 141] and such other and further orders as may be entered by the Court.

24.    The Debtors are authorized and empowered to take all actions and execute such documents as may be necessary or appropriate to carry out the relief granted herein.

25.    Nothing herein shall be deemed to limit the rights of the Debtors to operate their business in the ordinary course, and no subsequent order shall be required to confirm such rights.

26.    Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall constitute, nor is it intended to constitute, the assumption of any contract or agreement under Bankruptcy Code section 365 or the waiver by the Debtors or their non-Debtor affiliates of any of their rights pursuant to any agreement by operation of law or otherwise.

27.    Notwithstanding anything to the contrary in this Order, any action to be taken pursuant to the relief authorized in this Order is subject to the terms of any cash collateral order or debtor in possession financing order entered in these chapter 11 proceedings.  All amounts authorized to be paid pursuant to this Order are subject to the limitations and restrictions imposed by the Approved DIP Budget (as defined in the DIP Credit Agreement).  To the extent that there is any inconsistency between the terms of this Order and the terms of any order relating to postpetition financing or cash collateral, the terms of the orders relating to postpetition financing or cash collateral shall govern.

28.    Notwithstanding anything herein to the contrary, this Order shall not modify or affect the terms and provisions of, nor the rights and obligations under, (a) the Board

ny-1046923

(Page 27 of 88)

12-12020-mg    Doc 7847-28    Filed 12/09/14    Entered 12/09/14 17:48:56    Exhibit 24
to Delehey Decl    Pg 28 of 90
12-12020-mg    Doc 774    Filed 07/13/12    Entered 07/13/12 17:05:30    Main Document
Pg 19 of 19

of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among

AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal

Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment

entered April 5, 2012 by the District Court for the District of Columbia, dated February 9, 2012,

(c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the

Federal Deposit Insurance Act, as amended, dated February 10, 2012, and (d) all related

agreements with AFI and Ally Bank and their respective subsidiaries and affiliates.

29.    Nothing in this Order shall discharge, release, or otherwise preclude any

setoff or recoupment right of the United States of America, its agencies, departments, or agents.

30.    The requirements set forth in Bankruptcy Rule 6004(a) are satisfied.

31.    Notwithstanding the possible applicability of Bankruptcy Rules

2002(a)(3), 6004(h), 7062 or 9014, the terms and conditions of this Order shall be immediately

effective and enforceable upon its entry.

32.    This Court shall retain jurisdiction with respect to all matters relating to

the interpretation or implementation of this Order.


Dated:    July 13, 2012
          New York, New York


                                        /s/Martin Glenn
                                        MARTIN GLENN
                                   United States Bankruptcy Judge

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

# EXHIBIT B

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

(Page 29 of 88)

12-12020-mg    Doc 7847-28    Filed 12/09/14    Entered 12/09/14 17:48:56    Exhibit 24
to Delehey Decl    Pg 30 of 90
12-12020-mg    Doc 1367    Filed 09/07/12    Entered 09/07/12 08:48:49    Main Document
Pg 1 of 3

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------ )
                                                 )
In re:                                           )    Case No. 12-12020 (MG)
                                                 )
RESIDENTIAL CAPITAL, LLC, et al.,                )    Chapter 11
                                                 )
                                    Debtors.     )    Jointly Administered
                                                 )
                                                 )
                                                 )
                                                 )
------------------------------------------------ )


### ORDER GRANTING IN PART AND DENYING IN PART
### THE TAGGART MOTION TO LIFT THE AUTOMATIC STAY

Upon consideration of Kenneth J. Taggart's ("**Taggart**") *Motion for Leave to File*

*Motion Pursuant to Stay & Relief (and Clarification from Bankruptcy Court)* (ECF Doc. # 263)

(the "**Motion**"),[1] and it appearing that this Court has jurisdiction to consider the Motion pursuant

to 28 U.S.C. §§ 157 and 1334; and after due deliberation thereon; and the relief requested therein

being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this

Court pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that notice of the Motion was

adequate and proper under the circumstances of these cases and that no further or other notice

need be given; and upon consideration of the *Debtors' Omnibus Objection to Motions for Relief*

*from the Automatic Stay Scheduled for Hearing on July 10, 2012* (ECF Doc. # 682), the *Debtors'*

*Supplement in Further Opposition to Motion of Kenneth Taggart for Leave to File Motion*

*Pursuant Stay & Relief (and Clarification from Bankruptcy Court)* (ECF Doc. # 968) (the

---

[1]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Supplement
(defined below).

"**Supplement**"), the *Debtors' Memorandum of Law Regarding Counterclaims Asserted by*

*Kenneth Taggart in State Court Foreclosure Proceedings* (ECF Doc. # 969) and Taggart's

*Supplemental Brief in Support of "Motion to Clarification of Stay and Relief from Stay"* (ECF

Doc. # 1115); and upon the arguments and statements in support and in opposition of the Motion

presented at the hearings before the Court; and the Court having issued its *Memorandum Opinion*

*Granting in Part and Denying in Part the Taggart Motion to Lift the Automatic Stay* (ECF Doc.

# 1148); it is hereby:

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is GRANTED in part and DENIED in part, as provided in this Order.

2.      The automatic stay of Bankruptcy Code section 362 is modified for the limited

purpose of permitting the Foreclosure Proceeding to proceed through resolution of dispositive

motion practice, by which the state court in the Foreclosure Proceeding will determine the

viability of Taggart's alleged defenses to foreclosure, and resolution of any appeals of the state

court's order in connection therewith.

3.      Notwithstanding anything herein to the contrary, the relief granted herein shall not

prevent Taggart or GMAC Mortgage from seeking an extension of any deadline fixed by the

Court presiding over the Foreclosure Proceeding for completion of discovery.

4.      Absent further order of the Court, the automatic stay shall remain in full force and

effect except as provided for in this Order.

5.      Upon completion of any dispositive motion practice (including resolution of any

appeals taken from the state court's order(s) in connection with such dispositive motions) as

permitted by paragraph 2 of this Order, Taggart may renew the Motion (the "**Renewed Motion**")

as to any of his remaining counterclaims that would otherwise be stayed by the Supplemental

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

(Page 31 of 88)

12-12020-mg    Doc 7847-28    Filed 12/09/14    Entered 12/09/14 17:48:56    Exhibit 24
to Delehey Decl    Pg 32 of 90
12-12020-mg    Doc 1367    Filed 09/07/12    Entered 09/07/12 08:48:49    Main Document
Pg 3 of 3

Servicing Order by filing a notice of renewal (the "**Renewal Notice**") and the Renewed Motion

shall be heard at the next regularly scheduled omnibus hearing date that is more than fourteen

(14) days from the date of filing of the Renewal Notice.

    6.    This Court shall retain jurisdiction with respect to all matters relating to the

interpretation or implementation of this Order.

Dated:  September 7, 2012
      New York, New York

**/s/Martin Glenn**
MARTIN GLENN
United States Bankruptcy Judge

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

# EXHIBIT C

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee =$0.00

Claim #5257  Date Filed: 11/15/2012

B 10 Modified (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY **COURT FOR THE SOUTHERN DISTRICT OF NEW YORK** | **PROOF OF CLAIM** |
|---|---|

Name of Debtor and Case Number:
**Residential Capital, LLC, Case No. 12-12020**

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Residential Capital,LLC - GMAC Mortgage,LLC

Name and address where notices should be sent:

Kenneth Taggart , 45 Heron Rd, Holland, Pa. 18966

RECEIVED
NOV 1 7 2012
KURTZMAN CARSON CONSULTANTS

Telephone number: 215-774-1585        email: appraisails@verizon.net

☐ Check this box if this claim
amends a previously filed
claim.

**Court Claim
Number:**
_____
*(If known)*

Filed on: Nov 13 2012

Name and address where payment should be sent (if different from above):

Telephone number:        email:

☐ Check this box if you are aware
that anyone else has filed a proof
of claim relating to this claim.
Attach copy of statement giving
particulars.

**1. Amount of Claim as of Date Case Filed:  $  450,000,000**

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

■ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Adversary Complaint 11-13-12 & All claims made in complaints in Cases attached ,
(See instruction #2)

**3. Last four digits of any number by
which creditor identifies debtor:**
3466

| **3a. Debtor may have scheduled account as:** | **3b. Uniform Claim Identifier (optional):** |
|---|---|
| see complaints filed | |
| (See instruction #3a) | (See instruction #3b) |

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ■ Real Estate ☐ Motor Vehicle ☐ Other
Describe:

**Value of Property:** $ 350000        **Annual Interest Rate** 6.5 % ☐ Fixed ☐ Variable
(when case was filed)

**Amount of arrearage and other charges, as of the time case was filed,** included in secured claim,
if any: $ 225000 estimate        **Basis for perfection:** Fraud-False Claims

**Amount of Secured Claim:** $        **Amount Unsecured:** $

**6. Claim Pursuant to 11 U.S.C. § 503(b)(9):**
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.
$        (See instruction #6)

**7. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

**8. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #8, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**9. Signature: (See instruction #9)** Check the appropriate box.
■ I am the creditor.  ☐ I am the creditor's authorized agent.  ☐ I am the trustee, or the debtor, or  ☐ I am a guarantor, surety,
(Attach copy of power of attorney, if any.)        their authorized agent.        indorser, or other codebtor.
(See Bankruptcy Rule 3004.)  (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: KENNETH TAGGART
Title:
Company:        (Signature)        11/13/12  (Date)
Address and telephone number (if different from notice address above):
45 heron rd, holland pa 18966
45 heron rd, holland pa 18966

Telephone number: 215-774-1585        Email: appraisails@verizon.net

**5. Amount of Claim Entitled to
Priority under 11 U.S.C.
§507(a). If any part of the claim
falls into one of the following
categories, check the box
specifying the priority and state
the amount.**

☐ Domestic support obligations
under 11 U.S.C.
§507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or
commissions (up to $11,725*)
earned within 180 days before
the case was filed or the
debtor's business ceased,
whichever is earlier – 11
U.S.C. §507 (a)(4).

☐ Contributions to an employee
benefit plan – 11 U.S.C. §507
(a)(5).

☐ Up to $2,600* of deposits
toward purchase, lease, or
rental of property or services
for personal, family, or
household use – 11 U.S.C.
§507 (a)(7).

☐ Taxes or penalties owed to
governmental units – 11 U.S.C.
§507 (a)(8).

☐ Other – Specify applicable
paragraph of 11 U.S.C. §507
(a)(__).

**Amount entitled to priority:**

$  450,000,000,

* Amounts are subject to
adjustment on 4/1/13 and every
3 years thereafter with respect
to cases commenced on or
after the date of adjustment.

COURT USE ONLY

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18

1212020121115000000000098

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee : $0.00

# United States Bankruptcy Court

# Southern District of New York

## Proof of Claim – Addendum of Kenneth Taggart, Creditor

### Residential Capital, LLC, Case No. 12-12020

*All claims made in Cases filed in the following cases & courts are part of The Proof of Claims form filed with this court.*

1) GMAC v Taggart, Court of Common Pleas, Montgomery County Pennsylvania,

(##2009-25338)

2) Taggart v GMAC Mortgage, LLC , et al,

2:2012cv00415 – District Court for The Eastern District of Pennsylvania

3) Taggart v Montgomery County, et al,

2:2012cv01913 - District Court for The Eastern District of Pennsylvania

4) All Claims made in The Adversary complaint filed by Kenneth Taggart

 In this court regarding this case. United States Bankruptcy Court – Southern

 District of New York.  ResCap 12-12020

Kenneth Taggart,  Nov 13, 2012

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

# EXHIBIT D

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee =$0.00

IN THE COURT OF COMMON PLEAS
IN AND FOR THE COUNTY OF MONTGOMERY, PENNSYLVANIA
CIVIL DIVISION

- - -

GMAC MORTGAGE, LLC                 :
                                   :
        vs.                        :    NO.   09-25338
                                   :
KENNETH J. TAGGART                 :
                                   :
                                 - - -


Hearing on Defendant's Motion for Sanctions

- - -

Thursday, December 12, 2013
Commencing at 9:09 a.m.

- - -

Courtroom "E"
Montgomery County Courthouse
Norristown, Pennsylvania

- - -

BEFORE:   THE HONORABLE ARTHUR R. TILSON, JUDGE

- - -

COUNSEL APPEARED AS FOLLOWS:

    WAYNE C. STANSFIELD, ESQUIRE
    for the Plaintiff

    ROBERT BIRCH, ESQUIRE
    for the Defendant

ALSO PRESENT:
    TIMOTHY J. LYON, ESQUIRE
    for Jeffrey Stephan


- - -


Jennifer A. Gillespie, RMR
Official Court Reporter
Montgomery County Courthouse

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

```
                                                             2
 1              GMAC MORTGAGE, LLC  vs.  KENNETH TAGGART

 2                        THE COURT:  Good morning,

 3      everybody.

 4                        MR. STANSFIELD:  Good morning.

 5                        MR. BIRCH:  Good morning, Your

 6      Honor.

 7                        THE COURT:  All right.  We have

 8      here today three lawyers; is that right?  And hiding in

 9      the back, he's a non-party.  Timothy Lyon, is that you?

10                        MR. LYON:  Yes, sir.

11                        THE COURT:  You're a non-party.

12      What does that mean?

13                        MR. LYON:  I represent Jeffrey

14      Stephan who is a witness that has --

15                        THE COURT:  He was subpoenaed for a

16      deposition?

17                        MR. LYON:  He was noticed for a

18      deposition, Your Honor.

19                        THE COURT:  He's a non-party,

20      though?

21                        MR. LYON:  That's correct.

22                        THE COURT:  Okay.  Well, you can

23      stay up here.  That's all right.  We won't bite you.

24                        MR. LYON:  Okay.  Very good.

25                        THE COURT:  So this is the matter
```

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

GMAC MORTGAGE, LLC  vs.  KENNETH TAGGART                3

1    of GMAC versus Taggart.  And it's a Motion for

2    Reconsideration of the Order of December the 2nd,

3    right, by Mr. Birch?

4              MR. BIRCH:  It's a Motion for

5    Sanctions, Your Honor.

6              THE COURT:  A Motion for Sanctions.

7    Okay.

8              MR. BIRCH:  Yes.

9              THE COURT:  What about the Motion

10   for Reconsideration?  We're not arguing that today,

11   right?

12             MR. BIRCH:  I don't think so, Your

13   Honor.

14             THE COURT:  Okay.  I have 20 days

15   to decide that.  I got a couple more days.  30 days

16   actually.

17             MR. BIRCH:  I can actually explain

18   it, if I may, a real brief procedure.

19             THE COURT:  Why don't you have a

20   seat.

21             MR. BIRCH:  Here's what happened,

22   Your Honor.  And I won't go into the whole -- I know

23   you're well familiar with this case, but we had -- Your

24   Honor had issued a discovery order allowing the

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

1                GMAC MORTGAGE, LLC  vs.  KENNETH TAGGART        4

2    defendant to proceed on his counterclaims, discovery on

3    his counterclaims until September 21st, which was then

4    agreed extended to October 21st by myself and Ms. Hager

5    for GMAC.  And I have the agreement here.

6                     However, on September 13th, because

7    of GMAC's refusal to produce Jeffrey Stephan, who is a

8    party and a factual witness in this case, he signed the

9    verification to the Complaint, he signed pleadings in

10   this case, we had an argument before Discovery Master

11   Cheryl Young.  The argument essentially from GMAC was

12   that he had been -- Mr. Stephan had been deposed before

13   in other jurisdictions, and then I was just going to

14   rehash things.  Cheryl Young specifically rejected all

15   those arguments.  Not once did the other side raise the

16   fact that Mr. Stephan was not working for GMAC at all.

17                     Your Honor then issued an order

18   dated September 30th ordering Mr. Stephan to appear for

19   a deposition.  So this is not a failure to notice or

20   subpoena; this is a court order, Your Honor.  There was

21   no reconsideration sought of this order by the

22   plaintiff at all.

23                     What happened is then I had an

24   e-mail exchange.  I noticed Mr. Stephan's deposition

25   for October 16th.  I had an e-mail exchange with

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

5

GMAC MORTGAGE, LLC   vs.   KENNETH TAGGART

1   

2   Ms. Hager.  Ms. Hager, in fact, said to me -- I had

3   e-mailed her the deposition notice.  She said, Well, I

4   have to speak to his private counsel.  And I e-mailed

5   her back and I said, You're Mr. Stephan's attorney.

6   He's an employee of your company.  And this is the same

7   arguments, Your Honor, that were made before Master

8   Young.  What Ms. Hager said on October 7th was,

9   Actually, I'm not his attorney.  I'm the lawyer for the

10  company.  That does mean I represent everyone who works

11  there, never once saying he doesn't work there, Your

12  Honor.

13               On October 14th, I get an e-mail,

14  now from a Mr. Schwab who's not here, but counsel

15  standing in for him, that says they're just simply not

16  going to produce Mr. Stephan, that I didn't subpoena

17  him for a deposition.  I said, We have a court order.

18  They didn't appear on the 16th, Your Honor.

19               Also, they failed to produce

20  another party Scott Zeitz, even though I have that, and

21  that's the Motion for Reconsideration, Your Honor.  But

22  here's what happened.  The last time we were before

23  Your Honor, you allowed me to file a Third Amended

24  Counterclaim, Answer to New Matter and Counterclaim.

25  Mr. Taggart still has pending counterclaims.  They

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

```
                                                                    6
 1              GMAC MORTGAGE, LLC  vs.  KENNETH TAGGART

 2   weren't mooted.

 3                    What happened is GMAC ran in and

 4   then filed a praecipe to discontinue the action.  The

 5   prothonotary then marked the file, the action closed on

 6   the docket.  When I went to file, the prothonotary

 7   wouldn't take it.  They wouldn't take my answer and

 8   counterclaim.  But GMAC, Your Honor, was simply, in my

 9   view, was just trying to avoid all this, just not

10   comply with the orders, but what they're trying to do

11   is to prevent Mr. Taggart from proceeding on his

12   counterclaims, which they can't do.  They can't end the

13   action.  So --

14                    THE COURT:  And so I'm just trying

15   to think of the big picture.  So I don't remember

16   because I have so many of these cases involving GMAC

17   and all the other different banks.  Is this a

18   foreclosure on a mortgage?

19                    MR. BIRCH:  It is.  And then

20   Mr. Taggart's counterclaims specifically centered

21   around GMAC forced placed insurance, the insurance that

22   they were charging him for which there was nonexistent

23   insurance.

24                    THE COURT:  So would that prevent

25   them from going forward and foreclosing on his
```

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

GMAC MORTGAGE, LLC  vs.  KENNETH TAGGART                    7

1    property?  I would think not.  I mean, so he might have

2    a counterclaim to get some of the money when they

3    ultimately sell the property back or something like

4    that, wouldn't they?

5                    MR. BIRCH:  Right, but Mr. Taggart,

6    we have challenged the counterclaim.  We have

7    challenged GMAC's standing and the ability to file a

8    foreclosure action.  If Your Honor will recall -- and I

9    have a copy of the order --

10                    THE COURT:  Wasn't Mr. Taggart here

11    a lot of times by himself?

12                    MR. BIRCH:  He was pro se for a

13    long time until I entered my appearance.

14                    THE COURT:  And so I'm just trying

15   to think of like the big picture just to get a feel --

16   I don't want to get caught up in all the different

17   legal niceties, but still I like to know what the big

18   picture and how this all fits in.  Is this something --

19   I'm thinking to myself, is Mr. Taggart or you on behalf

20   of Mr. Taggart -- I'm not being wise or funny or

21   disrespectful -- is this a delaying tactic?

22                    MR. BIRCH:  No.

23                    THE COURT:  He probably owes a

24   couple hundred thousand dollars.  That's what happens

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee =$0.00

8

1        GMAC MORTGAGE, LLC  vs.  KENNETH TAGGART

2   in these cases, and they're worried about the insurance

3   is not -- appropriate charges the insurance.

4                    MR. BIRCE:  No.  Actually, Your

5   Honor.  The big picture is the federal bankruptcy

6   court, if you recall, specifically allowed -- and I

7   have the order here -- allowed Mr. Taggart to present,

8   file the defenses to the foreclosure in state court,

9   and that's what's been pending here.  He has challenged

10  the ability of GMAC to own the note, to hold the note,

11  to have standing.  And actually, Your Honor, we just

12  now found out that GMAC several months ago, without

13  informing any party or this court, actually sold or

14  assigned the mortgage to Ocwen and they filed a

15  recording in the recorder of deeds.

16                    THE COURT:  So here's the big

17  picture.  So right now, as far as Mr. Taggart's

18  concerned, he's sitting in the house, not having paid

19  the mortgage for a while, and he has this counterclaim,

20  but it's not against -- perhaps not against GMAC

21  anymore; it's against Ocwen -- I've dealt with them

22  before, too.  So why wouldn't he just fold his hands

23  and go away and wait around for Ocwen to do something

24  and then file your counterclaim then?  Why are we doing

25  this?  I'm just trying to get an idea.

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

GMAC MORTGAGE, LLC   vs.   KENNETH TAGGART                    9

1                   MR. BIRCH:  Well, because he has a

2    statute issue, Your Honor.  He's been ordered by the

3    bankruptcy court to proceed with these counterclaims

4    and to proceed until dispositive motions, I guess

5    summary judgment or what have you, are finally -- take

6    place in this court.

7                   THE COURT:  So the statute is a

8    statute of limitations, is that what it is?

9                   MR. BIRCH:  It's a statute of

10   limitations.  And it's his ability, I guess, to go

11   back -- if I may, Your Honor, it says that the

12   bankruptcy court lifted the automatic stay to allow to

13   modify for limited purpose of permitting the

14   foreclosure proceeding to proceed through resolution of

15   dispositive motion practice by which the state court

16   and the foreclosure proceeding will determine the

17   availability of Taggart's alleged defenses to

18   foreclosure and resolution of any appeals of the state

19   court's order.

20                   THE COURT:  So, now, I'm getting a

21   better understanding.  So now what if GMAC could get

22   Ocwen to send a writing or a document of some sort,

23   which would say that if they do go forward with any

24   foreclosure procedure, they would waive any statute of

GMAC MORTGAGE, LLC  vs.  KENNETH TAGGART          10

1    limitations defense?  You can waive a statute of

2    limitations, right?  You can waive it by not filing on

3    answer, for example.

4                        MR. BIRCH:  Sure.

5                        THE COURT:  You know, if I file

6    something and you don't put it in your new matter, the

7    statute of limitations is waived, right?  That's one of

8    the rules we deal with, right?

9                        MR. BIRCH:  Absolutely.

10                        THE COURT:  If it's a new matter,

11    you must -- it's waived otherwise.  If they got word to

12    do that, then Mr. Taggart would be -- I don't want to

13    say fat, dumb, and happy, but he would be happy sitting

14    at home with no mortgage payment until Ocwen does

15    something, and then he could raise it again.  What

16    would be the downside of that?  Maybe Ocwen wouldn't go

17    forward or maybe you can deal with Ocwen to make some

18    sort of deal.  Some day you're going to have to make a

19    deal, I guess.

20                        MR. BIRCH:  Well --

21                        THE COURT:  Do you think that --

22    I'm trying to get a handle on this.  Do you think that

23    some day what's going to happen is this counterclaim is

24    going to negate the mortgage?

25

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

```
 1              GMAC MORTGAGE, LLC  vs.  KENNETH TAGGART      11

 2                        MR. BIRCH:  No.  Actually, Your

 3    Honor -- well, it may or may not.

 4                        THE COURT:  Wait a minute.  Wait a

 5    minute.  How could it may?  So he had a mortgage.  How

 6    much is -- what was the principal amount of the

 7    mortgage?  Do you have any idea?

 8                        MR. STANSFIELD:  Over $600,000.

 9                        THE COURT:  $600,000.  Do you think

10    that's going to go away on the basis of the

11    counterclaim, that insurance was not properly charged

12    and so on and so forth or they charged too much?

13                        MR. BIRCH:  Your Honor, I don't

14    know if it will or not.

15                        THE COURT:  Well, I do.  It won't.

16                        MR. BIRCH:  Well --

17                        THE COURT:  Don't I know that?

18    600,000 is not going to go away.

19                        MR. BIRCH:  Your Honor, I

20    understand.  But here's my point.  Mr. Taggart had

21    viable counterclaims pending in this court.

22                        THE COURT:  I agree.

23                        MR. BIRCH:  There were orders

24    issued by this court that were not complied with.  GMAC

25    may have chosen to end their action, which is all well
```

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

GMAC MORTGAGE, LLC  vs.  KENNETH TAGGART          12

1    and good, but Mr. Taggart, by order of the court, was

2    allowed to proceed with his counterclaims.  And they're

3    trying to defeat that and they can't do that.

4                        THE COURT:  Okay.  So let's say I

5    agree with you.  So what happens next is they have no

6    claim for foreclosure anymore and you just have this

7    counterclaim?

8                        MR. BIRCH:  That's correct.

9                        THE COURT:  And do you have an

10   idea, dollar amount, how much a counterclaim is for?

11   What are the damages?  It can't be too much.  How much

12   is insurance?

13                       MR. BIRCH:  I don't know, Your

14   Honor, off the top of my head how much the amount would

15   be.

16                       THE COURT:  I'll bet it's less than

17   $50,000 therefore it would go to arbitration.

18                       MR. BIRCH:  It could be around

19   $50,000, yes.

20                       THE COURT:  Really, $50,000?

21   That's a lot of insurance.

22                       MR. BIRCH:  I'm guessing.

23                       THE COURT:  That's a lot.  I own

24   properties.  I bought and sold properties down the

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

                    GMAC MORTGAGE, LLC  vs.  KENNETH TAGGART          13

1    shore and I did pretty well, but I never paid anything

2    near 50,000 even over years.

3                    MR. BIRCE:  Yeah, but we have fraud

4    here, Your Honor.  We have fraud here.  We have charges

5    for nonexistent insurance on the property that

6    Mr. Taggart paid GMAC over the years.  Now, I don't

7    know standing here, Your Honor, how much that is.

8                    THE COURT:  Okay.  All right.  So

9    now that I understand, what you want me to do is just

10   simply let you go forward with your counterclaim,

11   period?

12                   MR. BIRCE:  Well, you did.

13                   THE COURT:  What?

14                   MR. BIRCE:  You did.

15                   THE COURT:  Well, they're arguing

16   about it.

17                   MR. BIRCE:  What I need, Your

18   Honor, is I need an order directing the prothonotary to

19   accept that amended counterclaim because I can't file

20   it.  Even though your order was issued and docketed on

21   October 3rd, the prothonotary wouldn't take it.

22                   THE COURT:  But the docket was

23   closed.  The docket was closed because they filed --

24                   MR. BIRCE:  Correct.

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

GMAC MORTGAGE, LLC  vs.  KENNETH TAGGART          14

1

2              THE COURT:  -- the withdrawal?

3              MR. BIRCH:  Correct.

4              THE COURT:  That's a mistake by

5    them.  They just don't understand.  I can solve that

6    problem.  If you're right, I can solve that problem.

7              MR. BIRCH:  Correct.  And I have a

8    proposed order, Your Honor, ordering them to reopen the

9    docket and allow Mr. Taggart's third amended

10   counterclaim to be filed.

11             THE COURT:  To go forward.  It

12   wasn't filed yet?

13             MR. BIRCH:  I couldn't file it,

14   correct.  I couldn't file it within that 30-day period

15   because they ended it.

16             The second thing is, Your Honor, as

17   I said Jeffrey Stephan is subject to a court order --

18             THE COURT:  How do you spell his

19   last name?

20             MR. BIRCH:  S-t-e-p-h-a-n.

21             What they also did is they tried to

22   file a protective order, which I don't understand the

23   basis for a protective order under 4012 because -- and

24   I have copies -- Mr. Stephan has been deposed in other

25   jurisdictions many other times.  I have copies of the

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

```
                         GMAC MORTGAGE, LLC  vs.  KENNETH TAGGART          15
 1

 2      transcript, one by a -- I'm not sure if it's Montgomery

 3      County -- Narberth.  I guess that could be Delaware

 4      County.

 5                           THE COURT:  Narberth isn't

 6      Montgomery County.

 7                           MR. BIRCH:  Montgomery County law

 8      firm.  He's a factual witness.  Okay.  I would say,

 9      Your Honor, to the Court that if they want me to

10      subpoena him, which I don't believe I have to, I'll

11      subpoena him.  But I want him then produced within 10

12      days upon service of that subpoena.  As I said, you had

13      issued the order.

14                           THE COURT:  Why is 10 days magic?

15                           MR. BIRCH:  20 days is fine.

16                           THE COURT:  All right.  I mean,

17      presumably the man has something else to do besides

18      this case.

19                           MR. BIRCH:  Well, he's in Fort

20      Washington, Your Honor.  And I've even offered -- when

21      we had the argument before Master Young, I said, you

22      know what, I'll travel to Fort Washington and depose

23      him in his office.  We don't have to do it at the

24      courthouse.  And I still make that offer.

25                           But the point is --
```

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

GMAC MORTGAGE, LLC  vs.  KENNETH TAGGART                16

1

2                         THE COURT:  I think very few

3    depositions anymore are taken -- it used to be all in

4    the courthouse.  That was a rule when I was a young

5    lawyer.  Every deposition had to be taken in the

6    courthouse.  That was the rule.  And then it was

7    thought to be not so wise and the rule has been

8    changed.  And if parties agree, they do it anyway.

9    Otherwise, it's the courthouse.  That's what I think

10   the rule says.

11                         MR. BIRCH:  Absolutely.

12                         THE COURT:  So you will agree to do

13   it elsewhere.

14                         MR. BIRCH:  I would absolutely

15   travel to his office with a court reporter to take it.

16   And, again, I'm not trying to repeat myself, Your

17   Honor.  There's an order ordering him to appear.  No

18   reconsideration sought of that order.  He is a party,

19   factual witness to these proceedings.  He should

20   appear.

21                         THE COURT:  Okay.

22                         MR. BIRCH:  I've asked for

23   sanctions.

24                         THE COURT:  And the reason he's a

25   party is that he signed the verification?

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

```
                                                                    17
 1              GMAC MORTGAGE, LLC  vs.  KENNETH TAGGART

 2                        MR. BIRCH:  He signed the

 3       verification.

 4                        THE COURT:  On behalf of the bank?

 5                        MR. BIRCH:  GMAC, the plaintiff,

 6       correct.

 7                        I've asked for sanctions, Your

 8       Honor, because I felt I shouldn't have to go through

 9       these proceedings, file these motions, stand here when

10       these were all hashed out and he was subject to an

11       order.

12                        THE COURT:  Okay.  I got it.

13                        MR. BIRCH:  And I have a proposed

14       order for Your Honor.

15                        THE COURT:  I understand.  Let's

16       see what they say.

17                        MR. STANSFIELD:  Good morning, Your

18       Honor.  I'm Wayne Stansfield.  Ms. Hager's on trial in

19       another district.  So I'm here in her stead.

20                        THE COURT:  Okay.  You need to talk

21       a whole lot louder.

22                        MR. STANSFIELD:  I will, Your

23       Honor.

24                        And I may be new to this, but some

25       of the things I'm hearing are amazing.  I just read his
```

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

GMAC MORTGAGE, LLC  vs.  KENNETH TAGGART          18

1

2    motion saying that we're playing a shell game, him

3    representing we have not informed the Court that

4    Mr. Stephan doesn't work for GMAC.  I would refer

5    counsel to our August 2nd, 2013 filing with the court

6    which is also attached to our protective order, which,

7    in Paragraph 4 states exactly that:  Mr. Stephan is an

8    employee of Ocwen Loan Servicing, LLC, and works in

9    Fort Washington.

10                        THE COURT:  Okay.  So but did he

11   sign the original verification to the complaint filed

12   by GMAC?

13                        MR. STANSFIELD:  Back in 2009, he

14   did.

15                        THE COURT:  And that's when he was

16   employed by GMAC?

17                        MR. STANSFIELD:  At that time.

18                        THE COURT:  Now he's employed by

19   Ocwen?

20                        MR. STANSFIELD:  Now he's employed

21   by Ocwen, but to suggest that he did not know this and

22   we were not candid with the Court is incorrect.  And,

23   as I said, this was filed with the Court.

24                        The other thing I heard was that --

25                        THE COURT:  So let me think about

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

                    GMAC MORTGAGE, LLC  vs.  KENNETH TAGGART        19

1

2   that for a second, if you don't mind.  So what happens

3   is a person signs a verification when he's employed by

4   Company A.  Then he becomes an employee of Company B

5   and he therefore -- can an opposing party take the

6   deposition of somebody who signed a verification?  And

7   can you just say, Well, look, I'm not employed by them

8   anymore, you can't take any deposition any more?

9                    MR. STANSFIELD:  Putting aside the

10  dismissal of the action for a moment, which I'll get

11  to, you can't do it by way of Notice of Deposition.

12  You need to subpoena him, which I think he has just

13  suggested.

14                    THE COURT:  He's offering to do

15  that.

16                    MR. STANSFIELD:  And in the

17  correspondence I saw from this gentleman's personal

18  counsel, they frankly painted the road map and say it

19  requires a subpoena.  I have not heard of any subpoena

20  being issued.

21                    THE COURT:  Okay.  So I agree.

22                    MR. STANSFIELD:  I don't control

23  Mr. Stephan.

24                    THE COURT:  I agree.  Well, I

25  understand that.  So I'm going to order that he -- I'm

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

GMAC MORTGAGE, LLC  vs.  KENNETH TAGGART          20

1      GMAC MORTGAGE, LLC  vs.  KENNETH TAGGART          20

2      going to say to him subpoena him and that'll solve the

3      problem and he'll have to go to the deposition, right?

4                     MR. STANSFIELD:  Well, it doesn't

5      because of the second issue that there is no

6      foreclosure action.

7                     THE COURT:  I'm going to solve

8      that, too, because that he is entitled to file his

9      counterclaim and there will be -- some part of the

10     foreclosure action will remain.  I don't think a

11     company can sabotage or prevent somebody from filing a

12     counterclaim by withdrawing the action.

13                    MR. STANSFIELD:  Well, we haven't

14     sabotaged it in any way.  But the issue here is the

15     bankruptcy court proceeding.  And another thing that

16     was admitted from his recitation is they have filed a

17     proof of claim with the bankruptcy court.  The

18     bankruptcy court --

19                    THE COURT:  Who's "they"?

20                    MR. STANSFIELD:  Mr. Taggart, as a

21     proof of claim in this other district of New York in

22     the bankruptcy case.  He also made a motion to lift the

23     stay to proceed with the counterclaims here.  The

24     bankruptcy court issued an order, which he made

25     reference to, which said several things.  One is that

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

1                    GMAC MORTGAGE, LLC   vs.   KENNETH TAGGART        21

2    because this is an in rem foreclosure proceeding, he

3    cannot proceed, in light of the bankruptcy, on any

4    claims for monetary damages, only as to defense to the

5    foreclosure.   There is no foreclosure at this moment.

6                         THE COURT:   Part of the order says

7    that?

8                         MR. STANSFIELD:   That's been issued

9    from the bankruptcy in the Southern District of New

10   York.

11                        THE COURT:   So the bankruptcy

12   court's order says he can't go forward except as a

13   counterclaim and not for any monetary damages?   That's

14   what you just said?

15                        MR. STANSFIELD:   Correct, until the

16   dispositive motion stage at which point they asked if

17   they would reconsider that upon further application of

18   Mr. Taggart.

19                        Now, given that there's no --

20                        THE COURT:   Has that been ruled

21   upon?

22                        MR. STANSFIELD:   That was this

23   other district bankruptcy court's order.

24                        THE COURT:   And so I thought you

25   said then they filed some sort of motion to let them go

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

GMAC MORTGAGE, LLC  vs.  KENNETH TAGGART          22

1       forward with their counterclaim regardless of what the

2       order originally said, in effect, get them to revise

3       their order?

4                       MR. STANSFIELD:  The order -- yes.

5  The order contemplated that they could go back to the

6  bankruptcy court after the pendency of this case or

7  during the pendency and ask for further relief from the

8  stay.

9                       THE COURT:  Which has not yet been

10 done?

11                      MR. STANSFIELD:  They have not done

12 yet.  And I would respectfully submit that under the

13 circumstances that's exactly what needs to be done.  He

14 can't proceed on monetary counterclaims in light of the

15 stay by the bankruptcy court.

16                      THE COURT:  Unless he goes forward

17 and files his new petition in the bankruptcy court.

18                      MR. STANSFIELD:  He could go to the

19 bankruptcy and say that GMAC and Ocwen, who the loan's

20 been assigned to, are not currently proceeding with any

21 foreclosure action.  Therefore, let me proceed on my

22 already filed proof of claim in the bankruptcy court.

23 That's the next step.

24                      THE COURT:  And so it's a conundrum

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

GMAC MORTGAGE, LLC  vs.  KENNETH TAGGART          23

1
2    for them, though.  If this happens and then Ocwen just
3    waits or just starts a new proceeding, he can't have
4    his counterclaim because the statute of limitations
5    will have run.
6                        MR. STANSFIELD:  Well, he's filed a
7    proof of claim.
8                        THE COURT:  What?
9                        MR. STANSFIELD:  He's filed a proof
10   of claim.  You know, I may be new to this, but I think
11   he's probably tolled the statute of limitations for
12   filing with the bankruptcy court apparently several
13   years ago.
14                        THE COURT:  Actually, so off the
15   top of my head, without doing some research and
16   additional thinking about this, I don't think he can --
17   I don't think the proof of claim prevents Ocwen from
18   filing a new matter.  I don't think that.  So Ocwen
19   will be really happy about that, that now they will
20   have done away with the counterclaim just by, in
21   effect, selling their -- GMAC's interest to Ocwen will
22   prevent them from going forward with a counterclaim.
23                        MR. STANSFIELD:  Well, I suppose
24   that if that were the concern, the cure for that would
25   simply be that if a bankruptcy -- I mean, excuse me, a

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

1                GMAC MORTGAGE, LLC  vs.  KENNETH TAGGART        24

2      foreclosure action were ever reinitiated -- and I don't

3      represent Ocwen -- but if it were initiated, that, you

4      know -- the counterclaims would be deemed as filed when

5      they were originally filed.

6                      THE COURT:  Say that again.  I

7      don't understand what you just said.

8                      MR. STANSFIELD:  I'm trying to

9      think creatively here, but I think the Court could

10     issue an order that said, if -- you know, there is no

11     proceedings now and, therefore, there is no in rem

12     counterclaims that we're talking about.  But if Ocwen

13     or another party assigned the mortgage were to

14     reinitiate a foreclosure action -- I'm not suggesting,

15     you know, that it's going to happen --

16                      THE COURT:  I'm listening.  What's

17     the rest of the sentence?

18                      MR. STANSFIELD:  If they did, you

19     know, it would be -- his counterclaims would be deemed

20     filed as of the original date.

21                      THE COURT:  I don't think I have a

22     any power to do that.  I can't change the rules.  I

23     can't make the rules up as we go along.  You're

24     suggesting that, in effect, I'm the Supreme Court of

25     Pennsylvania.  So well, when this happens -- I'm not

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

GMAC MORTGAGE, LLC  vs.  KENNETH TAGGART                    25

1         the Supreme Court of Pennsylvania of course, but when

2    this happens, the counterclaim can survive a claim for

3    new matter because, in effect, it has been waived by a

4    non-party, Ocwen, who's not even a party to this case.

5    You can't -- if you were representing Ocwen and said,

6    We hereby agree that they can file the counterclaim if

7    and when -- not if, when we go forward.  It's

8    guaranteed they're going to go forward with the

9    foreclosure proceeding.  Therefore -- so I'm trying to

10   think about how to solve this problem.

11                   MR. STANSFIELD:  How about a stay

12   of the counterclaim pending resolution of the

13   bankruptcy court proceeding?

14                   THE COURT:  I have to think about

15   it.  I don't know that that can be done, either.  I

16   just don't know that off the top of my head.  I have to

17   think about that.  Send me a case that says that.

18                   MR. STANSFIELD:  I mean, the

19   conundrum here is that the counterclaims, you know,

20   under the bankruptcy court's orders can't proceed here

21   except in an in rem proceeding would violate the stay.

22   So I'm just suggesting, again trying to be creative,

23   that if you issue a stay on the counterclaims pending

24   his further application to the bankruptcy court or the

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

26

1          GMAC MORTGAGE, LLC  vs.  KENNETH TAGGART

2    resolution of the underlying bankruptcy, then I think

3    it solves the problem.

4                    THE COURT:  And even this case,

5    even this argument today, I'm thinking to myself, this

6    is like a unique situation to me, unique to me anyhow.

7    Here's a case, GMAC versus Taggart, 2009-25338, it

8    doesn't even exist anymore on the docket, you're

9    telling me; is that right?

10                   MR. STANSFIELD:  That's correct,

11   Your Honor.

12                   THE COURT:  So there's nothing even

13   on the docket.  I'd have to file an order ordering, as

14   Mr. Birch said, that the docket be reopened.  This case

15   would continue, but only for his counterclaim, which he

16   doesn't have authority to do.  That's the conundrum,

17   right?

18                   MR. STANSFIELD:  That's why I'm

19   respectfully suggesting you can't issue that order, but

20   addressing, you know, the other concern raised, yeah, I

21   think we are on unchartered grounds here.  But you

22   can't proceed on the counterclaims in light of the

23   bankruptcy court's order.

24                   THE COURT:  Let me just ask you

25   this one question, Mr. Birch.  Is he right about the

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

```
                                                                        27
1            GMAC MORTGAGE, LLC  vs.  KENNETH TAGGART

2    bankruptcy claim?

3                        MR. BIRCH:  Wrong.  And I have the

4    order here, Your Honor.

5                        THE COURT:  Well, read to me the

6    part that corrects where he's wrong.

7                        MR. BIRCH:  I have the complete

8    order by the judge.  The automatic stay of the

9    Bankruptcy Code Section 362 is modified for the limited

10   purpose of permitting the foreclosure proceeding --

11                       THE COURT:  Not too fast because I

12   have to hear it and she has to type it.  I can't hear

13   that fast.

14                       MR. BIRCH:  May I step up?

15                       THE COURT:  Sure.

16                       MR. BIRCH:  The automatic stay of

17   Bankruptcy Code Section 362 is modified for the limited

18   purpose of permitting the foreclosure proceeding to

19   proceed through resolution of dispositive motion

20   practice by which the state court and the foreclosure

21   proceeding will determine the viability of Taggart's

22   alleged defenses to foreclosure and resolution of any

23   appeals of the state court's order in connection

24   therewith.

25                       THE COURT:  So there's two parts to
```

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

GMAC MORTGAGE, LLC  vs.  KENNETH TAGGART          28

1

2    that really basically by implication.  It doesn't say

3    that.  But it appears to be saying what Mr. Stansfield

4    says, and that is, if this is a defense, he could

5    assert the defense to the foreclosure.

6                    MR. BIRCH:  Right.

7                    THE COURT:  That's a defense.  But

8    a counterclaim is more than a defense.  I think it's

9    more -- read that language again.  It doesn't say --

10   but generally bankruptcy -- and I have to admit for the

11   purpose of the record and for the appeal when they read

12   this, I am no expert on bankruptcy law.  I never had a

13   case -- I've been a lawyer now for more than 45 years I

14   never had one bankruptcy case, and happily so.  And so

15   I don't know -- but I believe when you're in bankruptcy

16   court, they want to know two basic questions:  What

17   assets do you have and what liabilities do you have?

18   They're the things they're trying to corral.  And so

19   what assets do you have?  So that judge, the bankruptcy

20   court judge, was trying to give him an opportunity, it

21   appears from what you both read me, trying to give him

22   an opportunity to have a defense to the foreclosure

23   action.  Okay.  But you, the bankruptcy judge, I guess,

24   the order is much more complex than you're reading to

25   me.  I'm not complaining, but it's a lot more.  I'm

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

GMAC MORTGAGE, LLC  vs.  KENNETH TAGGART          29

1  sure they marshaled the assets, and they figured out

2  what the liabilities were and entered an order.  And

3  the only thing that was left open was, what do we do

4  with the bankruptcy on this property?  That's what I'm

5  guessing.  Is that true?

6                    MR. STANSFIELD:  Yeah.  It's not

7  that complicated.  There is a stay of everything and

8  it's lifting the stay, in part, for the limited purpose

9  of Taggart's alleged defenses to foreclosure, to

10  determine the viability of Taggart's defenses to

11  foreclosure.

12                    MR. BIRCH:  May I respond to that?

13                    MR. STANSFIELD:  Your Honor, a

14  counterclaim is obviously much more than that.

15                    THE COURT:  Is he reading that

16  right?  Defenses to foreclosure.  Is a counterclaim a

17  defense to a foreclosure?

18                    MR. BIRCH:  Your Honor, what I

19  heard counsel --

20                    THE COURT:  What do you think about

21  that?

22                    MR. BIRCH:  What I heard --

23                    THE COURT:  What do you think about

24  that question?  This is not the O'Reilly show.  This is

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

```
 1              GMAC MORTGAGE, LLC  vs.  KENNETH TAGGART      30
 2    I need to have an answer.  I do like O'Reilly, but the
 3    bottom line is, is a counterclaim a defense?  I guess
 4    it's a defense.  I'm trying to think about the --
 5                    MR. BIRCH:  Your Honor, it is a
 6    defense.  It's an Answer, New Matter, and Counterclaim.
 7    Counsel's reading words "in rem."  That's not what this
 8    order says.  He says we can't proceed for money.
 9    That's not what this order says.  What the bankruptcy
10    court did is lifted the stay to allow Mr. Taggart to
11    pursue his claims in state court.
12                    THE COURT:  So nothing else
13    happened in the bankruptcy?  So that's still
14    outstanding.  The bankruptcy matter is not resolved.
15                    MR. BIRCH:  No.  This order --
16                    THE COURT:  No, but so --
17                    MR. BIRCH:  The bankruptcy is still
18    up in New York.
19                    THE COURT:  They're waiting to find
20    out what happens in Pennsylvania.
21                    MR. BIRCH:  That's correct.
22    Because he has the ability to go up to the state
23    supreme court on any appeals in here.  That's what it
24    says.
25                    Your Honor, this has been --
```

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

```
                    GMAC MORTGAGE, LLC  vs.  KENNETH TAGGART        31

 1

 2    Mr. Taggart had a first and second amended

 3    counterclaim.  Now, they're getting creative trying to

 4    make this argument that we're not allowed to file a

 5    third amended counterclaim, even though you ordered it

 6    three, four years later.  These arguments have been

 7    tried, rehashed, and rejected by this Court.  They

 8    filed answers to Mr. Taggart's previous counterclaims.

 9    They filed answers to that.

10                    THE COURT:  Hold on a second.  So

11    I'm thinking about something else now along those

12    lines.  So at some point along the line, I believe that

13    you are conceding that this mortgage debt was sold from

14    GMAC to Ocwen.  Can I conclude that?  Is that fair to

15    conclude?

16                    MR. STANSFIELD:  Am I?

17                    THE COURT:  Well, you represent

18    GMAC.

19                    MR. STANSFIELD:  I'm sorry.  Yes.

20    Absolutely.  I filed that and asserted that in papers

21    to the court.

22                    THE COURT:  So there's no doubt

23    about that, right?

24                    MR. STANSFIELD:  Right.

25                    THE COURT:  Ocwen now owns this
```

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

GMAC MORTGAGE, LLC  vs.  KENNETH TAGGART          32

1

2  debt?

3                    MR. STANSFIELD:  Right.

4                    THE COURT:  Owns, o-w-n-s, not

5  owes.

6                    MR. STANSFIELD:  Assignments have

7  been filed with this court.  Again, he represented we

8  didn't indicate that to the Court.  It's been filed

9  with the Court.

10                    THE COURT:  All right.  Well, I'm

11  just trying to --

12                    MR. STANSFIELD:  Yes.

13                    THE COURT:  I'm thinking out loud.

14  So Ocwen now is the real party in interest as opposed

15  to GMAC has no interest in this anymore.  But I'll bet,

16  without me knowing it, that there is not just a little

17  piece of paper saying, Okay, here it is, give me some

18  money for it, pay me $200,000 and good luck at getting

19  600,000 on this property, something like that.  So like

20  a little bit of a gamble.  It's a entrepreneurial

21  attempt on behalf of Ocwen trying to make some money on

22  this property.  Hopefully, it's worth something more

23  than 200,000.  I just made that number up.  Maybe

24  they'd get 100,000 more with a lot of legal fees paid

25  to whoever represents Ocwen, and then they'll wind up

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

GMAC MORTGAGE, LLC  vs.  KENNETH TAGGART          33

1

2      with 50,000, and it was worthwhile investing 200,000 to

3      get 50,000.  I made that all up, but I wouldn't be

4      surprised if those aren't bad numbers.  So the bottom

5      line -- because GMAC wrote off the debt, wrote off the

6      debt.  They got 200,000, they're happy now, and that's

7      it.  And so probably -- and there's all kinds of

8      federal regulations I don't know about and all kinds of

9      banking regulations I don't know about that are lurking

10     in the background here.  I'm making this up as I go

11     along, but -- so now, but I'll bet you some of the

12     aspects of Ocwen's purchase and GMAC's, GMAC is saying

13     well, we're doing this and you are assuming, you Ocwen,

14     are assuming all of our rights and liabilities on to

15     this particular aspect, rights and liabilities, not

16     just rights.  The rights are to go forward on the

17     mortgage to foreclose on it, but the liabilities are if

18     there's a counterclaim, Ocwen, you're responsible for

19     the counterclaim.  So and then there would be a little

20     discussion among two representatives of Ocwen and GMAC,

21     I'm worried about this, saying, Look, here's the thing

22     we can do.  We have smarter lawyers, and nothing

23     improper or anything like that.  But if you just --

24     this is just a maneuver we can do.  We'll withdraw our

25     GMAC -- another reason to do this, he might have a good

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

GMAC MORTGAGE, LLC  vs.  KENNETH TAGGART                 34

1    claim.  There's a discussion in house between those two

2    companies.  You may have an argument there.  We've had

3    that in other states and these other states that it's a

4    good argument.  Therefore, if we sell it to you, maybe

5    for 400,000 -- I made those numbers up -- we'll wipe

6    out that counterclaim.  And so -- and I'm sort of like

7    the aider and abettor of that, myself, if I'm doing

8    what you're suggesting.

9             MR. STANSFIELD:  I don't agree with

10   that.  From my view of the case, he's filed the claims

11   in the bankruptcy court.  They're pending.  It's well

12   established.

13            THE COURT:  That doesn't help in

14   Pennsylvania.  That helps him maybe in bankruptcy

15   court, but the bankruptcy court said it's dependent

16   upon what Pennsylvania courts decide.  So if later on

17   Pennsylvania courts decide that this counterclaim is

18   beyond the statute of limitations, that solves the

19   problem.  Then Ocwen goes back to bankruptcy court and

20   says Judge X in Montgomery County, Pennsylvania, has

21   decided this counterclaim does not exist because the

22   statute of limitations has run and, therefore, we're

23   golden now, we'll get the property and sell it and get

24   whatever property we can for that.

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

GMAC MORTGAGE, LLC  vs.  KENNETH TAGGART          35

1  
2                     MR. STANSFIELD:  That's why I was

3  suggesting that the cure to that in my mind would be if

4  there was an order saying that the dismissal of the

5  action will not act as a statute of limitations

6  defense.  But he can't proceed on the counterclaim.

7                     THE COURT:  But can I do that?

8  You're saying I can do that.  You don't represent

9  Ocwen.  If you represented Ocwen and said, I can do

10  that, that's okay.  That's okay.  Well, I'd feel a lot

11  better.  But you represent GMAC.  And GMAC says, oh,

12  this is great, that's just moving forward.  That's

13  furthering our objective here to prevent Mr. Taggart --

14  I'm not saying I don't think he has a good counterclaim

15  or not.  I don't know if he has a good counterclaim or

16  not.  That's for some other hearing and date and judge.

17  So that's the problem.  I'm trying to figure out a

18  solution to that.  And I don't know off the top of my

19  head.

20                     MR. STANSFIELD:  I think the

21  solution is go back to the bankruptcy court in light of

22  them suggesting that be done and --

23                     THE COURT:  That might be the

24  answer that I send Mr. Birch or somebody representing

25  Mr. Taggart to the bankruptcy court and say, Look,

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

GMAC MORTGAGE, LLC vs. KENNETH TAGGART          36

1    here's the problem, if we go forward right now, and

2    which we can't do because the prothonotary won't let

3    them open the docket and file the counterclaim, which

4    maybe I could let them do that, and then that would be

5    a predicate for them to go back to bankruptcy court and

6    say, Okay, here's the counterclaim, but if you don't

7    let us go forward, you the bankruptcy court in New

8    York, let us go forward with, in effect, an offensive,

9    not just a defensive counterclaim, then there would be

10   no counterclaim because the statute of limitations will

11   have run against Ocwen, the non-party to the

12   Pennsylvania action.

13                    MR. STANSFIELD:  Yeah.  I mean, the

14   fact of the matter is he doesn't have the right party

15   at the moment anyway even if there was no dismissal.

16   It's something he would have to deal with anyway.

17                    THE COURT:  Maybe he could file a

18   petition to have Ocwen added or something like that as

19   a necessary party plaintiff.

20                    MR. BIRCE:  Sure.  I can add them.

21                    THE COURT:  I'm making this up as

22   we go along because it's unique.  I've never had that

23   before.

24                    MR. BIRCE:  Yes.  And, Your Honor,

25

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

GMAC MORTGAGE, LLC  vs.  KENNETH TAGGART          37

1   all these arguments are nice, but they're late in the

2   game.  A lot of this should have been raised in the

3   preliminary objections.  They haven't.  Now, after Your

4   Honor issued all those orders, now they're trying to

5   say, oh, issue a stay?  No.  Mr. Taggart shouldn't have

6   to go to bankruptcy court.

7                        THE COURT:  Issue a stay for what?

8                        MR. BIRCH:  Issue a stay on

9   Mr. Taggart's proceedings until he goes back to

10  bankruptcy court.  That's what I'm hearing.

11                       MR. STANSFIELD:  He's already in

12  bankruptcy court.

13                       MR. BIRCH:  I think that's totally

14  improper, Your Honor.

15                       THE COURT:  Okay.  He doesn't have

16  to go back to bankruptcy court, though, yeah.

17                       MR. STANSFIELD:  Again --

18                       THE COURT:  I have to think about

19  this.

20                       MR. STANSFIELD:  Again, it's a

21  little strained to suggest that we should have raised

22  it in the preliminary objections when the loan was only

23  sold a few months ago.  How would that be?  He's

24  suggesting there's some kind of shell game here.  This

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

```
                                                              38
1            GMAC MORTGAGE, LLC  vs.  KENNETH TAGGART

2    just happened.

3                      THE COURT:  So the other thing,

4    too, that's out there -- and poor Mr. Lyon for having

5    all this discussion which doesn't really concern him at

6    all.  He just doesn't want his client to be deposed

7    without him being subpoenaed first.  Is that it in a

8    nutshell?

9                      MR. LYON:  That's part of it.

10                     THE COURT:  Why don't you have a

11   seat, Mr. Stansfield.

12                     MR. LYON:  It's not just a matter

13   of a subpoena.  We raised two other grounds in our

14   motion for protective order, one being that GMAC has

15   already provided, it's our understanding, a records

16   custodian for deposition and that deposition's occurred

17   so we're not really certain what Mr. Stephan can add to

18   that.

19                     THE COURT:  So let me think about

20   that.  So can a party avoid a deposition just because

21   they sent records?  That suffices, you think?  That

22   should preclude -- if I understand what you said, that

23   should preclude a plaintiff from or, I guess, a

24   counterclaimant from going forward and taking a

25   deposition of somebody who might know more than the
```

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

```
  1              GMAC MORTGAGE, LLC  vs.  KENNETH TAGGART        39

  2       records show or question about the records?  You can't

  3       do that?

  4                     MR. STANSFIELD:  Well, I guess at

  5       this point, first Mr. Stephan is not a party, and we

  6       continue to dispute that.

  7                     THE COURT:  He's not a party, but

  8       he did sign a verification and he might have

  9       information when he worked for GMAC about it.

 10                     MR. LYON:  Well, that's correct.

 11       And that sort of leads to a bigger point which I think

 12       I want to make now which really hasn't been put in the

 13       papers, but we would like, if Mr. Stephan is going to

 14       be subpoenaed, we'd like to have the opportunity to

 15       challenge that subpoena depending on what is permitted

 16       to go forward in the case because --

 17                     THE COURT:  You mean the nature of

 18       the questioning?

 19                     MR. LYON:  Exactly.  Not to

 20       challenge the subpoena.  I mean, obviously, if there's

 21       a defect in service or something like that, we would

 22       like to preserve our rights for that.  But --

 23                     THE COURT:  Defective service of

 24       the subpoena?

 25                     MR. LYON:  Well, if it happens.  It
```

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

GMAC MORTGAGE, LLC  vs.  KENNETH TAGGART        40

1

2    hasn't happened yet.  We'd like to preserve all of our

3    rights.

4                     THE COURT:  I presume he'll follow

5    whatever the rules are.  I mean, just forget about that

6    one.  That's a minor -- we're not talking about that.

7                     MR. LYON:  I do, too, but I just

8    want to make sure that our preservation of rights is

9    broad because it seems at this point, Your Honor, that

10   it's not clear and the Court is still determining on

11   what basis this case might still exist or go forward.

12   And that might determine whether or not Mr. Stephan has

13   anything of relevancy to add to this matter.  For

14   example, if it's going forward on their counterclaim

15   involving insurance, it's not clear to me that

16   Mr. Stephan's signing a verification and a mortgage

17   foreclosure action would have any sort of knowledge or

18   any sort of ability to provide anything helpful.

19                     THE COURT:  It might just be a

20   five-minute deposition, but I think you should be able

21   to -- I don't think you should file preliminary

22   objection.  I think it's a delaying tactic myself.  I

23   think he should be deposed and you be there and say I

24   object to these questions because they're beyond

25   reasonable scope of any kind of questioning.  If that's

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

GMAC MORTGAGE, LLC  vs.  KENNETH TAGGART          41

1   all he did, that would be interesting, I think, to

2   Mr. Birch.  If that's all he did was I just signed all

3   these things, I didn't know anything about them, that

4   would be interesting, too, wouldn't it?  And so --

6          MR. LYON:  But we just want to

7   preserve our rights to, Your Honor, depending on how

8   this case goes forward, to either file something in

9   regard to the subpoena or to preserve --

10          THE COURT:  I don't -- excuse me

11   for interrupting.  I don't think I would sign an order

12   saying you can't make any objections.  I'm just

13   suggesting --

14          MR. LYON:  That's --

15          THE COURT:  I think I'd request

16   that you don't be obstreperous, whatever that means.

17          MR. LYON:  We would not be, Your

18   Honor, as long as we have the ability, if we believe we

19   need to, to object or file something.

20          THE COURT:  But you better be

21   right.  That's the only thing, you better be right

22   about that.

23          MR. LYON:  I like to try to be

24   right as often as I can.

25          THE COURT:  I liked years ago a

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

GMAC MORTGAGE, LLC  vs.  KENNETH TAGGART          42

1    federal judge had written an order or an opinion

2    chastising attorneys who were just throwing roadblocks

3    out and preventing discovery depositions from going

4    forward.  It has to be clearly a good objection.

5    Otherwise, there can be sanctions from that -- for

6    that.

7                    MR. LYON:  Your Honor, I'm aware of

8    that.  I would just like to submit to the Court that in

9    our motion for protective order, we cited rules.  We

10   cited case law.

11                   THE COURT:  Well, they didn't do it

12   right.  You have to subpoena him.

13                   MR. BIRCE:  I think, Your Honor,

14   what counsel's suggesting is he wants to challenge my

15   ability to subpoena.  That's what he's saying.

16                   MR. LYON:  Your Honor, I'm asking

17   to preserve our rights, period.

18                   MR. BIRCE:  That's wrong.

19                   THE COURT:  I'll sign an order

20   saying you may subpoena him because he signed the

21   verification.

22                   MR. LYON:  That's fine.  And then

23   if we want to file something -- that's all I'm asking

24   for, if we need to file something either to protect

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

GMAC MORTGAGE, LLC vs. KENNETH TAGGART                    43

1    GMAC MORTGAGE, LLC vs. KENNETH TAGGART

2    Mr. Stephan or make objections at any deposition that

3    might take place.

4                    THE COURT:  Take the deposition.  I

5    don't think protect -- I'm already ruling that he may

6    be deposed.  So you can't -- I'm precluding, I'm

7    excluding any possibility of doing that in my opinion.

8    He may depose him, but he has to subpoena him properly

9    first.  And then we'll see what -- then you can be

10   there and say now he's asking how GMAC runs and so on

11   and so forth and don't they sell cars, whatever else

12   that would be totally off the wall.  That's what you're

13   there for.

14                    MR. LYON:  But I think the

15   conundrum there is whether the case can proceed at all

16   pursuant to which there can be a subpoena.

17                    THE COURT:  I'm going to sign an

18   order permitting him to file the counterclaim.  I

19   decided he's going -- I'm going to order the

20   prothonotary to open the docket and permit him to file

21   the counterclaim.  And then -- But what happens then?

22   And then he might have to deal with -- you'll have to

23   deal with bankruptcy court and other arguments you can

24   file about that.  But in the meantime, he can take the

25   deposition of Mr. Stephan.

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

1        GMAC MORTGAGE, LLC  vs.  KENNETH TAGGART        44

2                        MR. LYON:  And Your Honor is

3        that --

4                        THE COURT:  In that order.

5                        MR. LYON:  If they're filing an

6        amended counterclaim, Your Honor, I guess I would

7        request on behalf of Mr. Stephan that to the extent

8        he's going to be subpoenaed and there's going to be a

9        scheduled deposition, we'd like to know the position of

10       the counterclaim defendant to the counterclaim so that

11       there's been --

12                        THE COURT:  You're going to get any

13       answer from that.  They claim they're not involved in

14       the case anymore.  But I don't think a witness can say

15       I need to know all the pleadings that may be filed in

16       the future.  I don't think that's appropriate myself.

17       I mean, they're not going to file any pleadings, GMAC.

18       They're out of the case as far as they're concerned.

19                        Am I right about?  Yes or no?

20                        MR. STANSFIELD:  Yes.  We dismissed

21       the foreclosure action.  But if he's going to proceed

22       on the counterclaims, then, you know, I'm confused.  I

23       don't think we really are.  If he's going to proceed on

24       the counterclaims --

25                        THE COURT:  What I'm saying is

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

45

1                  GMAC MORTGAGE, LLC  vs.  KENNETH TAGGART

2    though -- so I'm thinking about this out loud.  I think

3    that GMAC cannot preclude him from filing a

4    counterclaim by simply withdrawing the action.  I think

5    they can't do that.  I don't think they should be able

6    to do that.  If they can, then maybe the superior court

7    can correct me and I mean that with great respect to

8    the superior court.  This is an area that I don't think

9    there's any guidance for the lower court to come up

10   with an answer.  But I think it's only fair the man

11   have a chance to do the best he can with his

12   counterclaim for insurance fraud.

13                  MR. STANSFIELD:  Well, hold on.  I

14   understand as far as the filing of it.  But that cures

15   his issue of the tolling of the statute of limitations.

16   But proceeding with it is a different question in light

17   of the bankruptcy court stay and the claim filed in

18   there.  We've been talking about him protecting and

19   tolling a statute of limitations problem down the

20   road --

21                  THE COURT:  I think he can proceed

22   though -- and if it isn't clear yet, that he is going

23   forward offensively or defensively.  We don't really

24   know that for sure.

25                  MR. STANSFIELD:  But there's no

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

GMAC MORTGAGE, LLC vs. KENNETH TAGGART                46

1
2   defense to play if there's no foreclosure action.  He's
3   sitting happily --
4                        THE COURT:  I am doing the best I
5   can to make sure that this is not a machination by GMAC
6   and Ocwen to prevent him from having a counterclaim on
7   the insurance issue.  And so I'm preserving that.  I
8   think the actions that I'm about to take will preserve
9   that.  Whether or not he can go forward and he has to
10  go up to New York and get permission to go forward
11  offensively, if they grant -- they may not grant it.
12  That'll solve all the problems.
13                       In the meantime, he'll take
14  Mr. Stephan's deposition.  I used to be in a law firm.
15  Which was named Timoney, Knox, Stefan and Avrigian.
16  Judge Stephan became a judge and Mason Avrigian.  And
17  so the bottom line, and so, anyway, back to this.  So
18  I'm going to sign an order saying those things, that
19  you may file -- and I'm going to order the prothonotary
20  to take your counterclaim.  And I'm going to also sign
21  an order permitting you to take the deposition of
22  Mr. Stephan after he is properly served with a
23  subpoena.
24                       MR. BIRCH:  Yes.  And Your Honor,
25  if I --

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

```
                    GMAC MORTGAGE, LLC  vs.  KENNETH TAGGART        47
 1
 2                              THE COURT:  Do you have an order to
 3   that effect, both of those?
 4                         MR. STANSFIELD:  Could I --
 5                         MR. BIRCH:  In my proposed order,
 6   Your Honor, I just had that he shall appear I said at
 7   the Montgomery County Courthouse within 10 days.  I'm
 8   okay if Your Honor strikes that out.  I just want a
 9   time limit that he appears because I don't want them --
10                              THE COURT:  I want it to say after
11   subpoena.
12                         MR. BIRCH:  I said that.  I said,
13   Defendant shall subpoena Jeffrey Stephan for a
14   deposition and shall file an affidavit of service of
15   said subpoena.  And then after that, he should appear
16   within a certain time limit.
17                              THE COURT:  Thirty days.
18                         MR. BIRCH:  Thirty days is fine,
19   Your Honor.
20                              THE COURT:  And put in there -- I
21   want you to do it over and put in there at
22   Mr. Stephan's office in Fort Washington.
23                         MR. BIRCH:  That's fine, Your
24   Honor.
25                         Your Honor, if I could make a
```

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

                         GMAC MORTGAGE, LLC  vs.  KENNETH TAGGART          48

1

2    point.  The parties have had my counterclaims, Answer,

3    New Matter, and Counterclaims.  They've had them for

4    two months now.  This is no surprise to them.  They

5    know exactly what counterclaims Mister -- and,

6    actually, some of the counterclaims, it was just a

7    cleaning up effort on my part from Mr. Taggart's pro

8    se.  So they know what these counterclaims are.

9                 I already see what they're going to

10   do.  They're going to say I can't ask any question

11   whatsoever unless it relates specifically to Item A.

12   And that's wrong I believe, Your Honor, in a

13   deposition.

14                 THE COURT:  Item A?

15                 MR. STANSFIELD:  What's Item A?

16                 MR. BIRCH:  Well, the force placed

17   insurance.  It's not just about the forced placed -- I

18   have some other counterclaims in there regarding GMAC

19   playing with Mr. Taggart's escrow account and so forth.

20   I should be allowed to ask Mr. Stephan any question I

21   want to at deposition relating to the action.  If they

22   want to make an objection, they can make an objection

23   as Judge Gawthrop said in that famous opinion.  And

24   then if they're not happy, we'll get a ruling from a

25   discovery master and a judge as to whether --

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

GMAC MORTGAGE, LLC vs. KENNETH TAGGART          49

1
2                          THE COURT:  I'm going to let him do
3     that.  I want to make sure that nothing unusual
4     happens.  Now, your turn, Mr. Stansfield.
5                          MR. STANSFIELD:  Yeah, I just would
6     like the order to be clear, though, that beyond the
7     deposition, that he needs to petition the bankruptcy
8     court on how and if at all this should proceed.  If he
9     files a counterclaim and is allowed to proceed as if,
10    you know, there were no bankruptcy, that's going to
11    violate the stay.  So I understand Your Honor's
12    direction --
13                         THE COURT:  That would probably be
14    with the bankruptcy court in New York.  He'd be
15    violating that order so he better get up there and do
16    what he has to do in New York.
17                         MR. STANSFIELD:  Beyond --
18                         THE COURT:  I'm not telling New
19    York bankruptcy court what to do.
20                         MR. STANSFIELD:  So beyond the
21    deposition and the filing of his amended counterclaims
22    to cure a statute of limitations problem, I think the
23    order needs to make clear that he needs to ask the
24    bankruptcy court, if he chooses to reconsider their
25    stay order as to proceeding --

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

1        GMAC MORTGAGE, LLC  vs.  KENNETH TAGGART        50

2                        THE COURT:  I don't think I want to

3   do that.  And I think you can file on behalf of GMAC

4   that it's an improper counterclaim on all the bases

5   we're talking about:  That the action was closed, A; B,

6   it's no longer owned by GMAC, Ocwen owns it; and

7   there's never been a compliance with the bankruptcy

8   order where -- permitting him to make this counterclaim

9   go forward to collect money as opposed to a defense

10  just to the -- I'm doing the order in effect -- just a

11  defense to the bankruptcy.

12                       MR. STANSFIELD:  But I guess the

13  issue I have here is if he files his counterclaims at

14  present and GMAC, who everybody agrees is no longer the

15  owner of the mortgage; there's no dispute, I have to

16  respond to that in order not to be defaulted --

17                       THE COURT:  Right.

18                       MR. STANSFIELD:  -- on a claim that

19  we all agree are not against the right party.

20                       THE COURT:  I was just telling you

21  that -- well, that's what you have to do.

22                       MR. STANSFIELD:  Well, I guess

23  we'll answer that --

24                       THE COURT:  Certainly you have

25  to -- so you know what to do in the order now?

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

                         GMAC MORTGAGE, LLC  vs.  KENNETH TAGGART          51

1

2                               And I'm finished with this.  I'm

3    not doing this anymore because I have another argument.

4    We're not doing this all day long.  This is it.

5                         MR. BIRCE:  No.  That's it.

6                         THE COURT:  One more minute.

7                         MR. BIRCE:  No.  I have it, Your

8    Honor.  You want me to hand deliver the revised order

9    to your chambers?

10                        THE COURT:  Yes.

11                        MR. LYON:  My last point, Your

12   Honor, just so that I'm clear --

13                        THE COURT:  I can't hear you.

14                        MR. LYON:  My last -- it's more of

15   a question, if I could be so bold.  I just want to make

16   sure Mr. Stephan still has his rights to make

17   objections during the deposition and if necessary file

18   appropriate motions if there are problems.

19                        THE COURT:  For protective order at

20   his own risk.  I mean, there might be sanctions against

21   him.  What he's supposed to do under Judge Gawthrop --

22   thank you for reminding me of his name -- to the extent

23   he objects and doesn't answer, why then he could have

24   sanctions against himself.

25                        MR. LYON:  I just want to make

Case# 2009-25338-378 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

```
 1              GMAC MORTGAGE, LLC  vs.  KENNETH TAGGART        52

 2    sure --

 3                        THE COURT:  I think he should

 4    answer.  Make the objection and then answer.

 5                        MR. STANSFIELD:  I just want to

 6    make sure that it's not precluding us.

 7                        MR. BIRCH:  Thank you, Your Honor.

 8    May I be excused?

 9                        THE COURT:  Yes, you may.

10                        MR. STANSFIELD:  Thank you, Your

11    Honor.

12                        (At 10:15 a.m., the proceedings

13    were concluded.)

14                              - - -

15

16

17

18

19

20

21

22

23

24

25
```

53

C E R T I F I C A T E

                I hereby certify that the
proceedings and evidence are contained fully and
accurately in the notes taken by me in the above cause
and that this is a correct transcript of the same.




                            JENNIFER A. GILLESPIE, RMR
                            Official Court Reporter

                              _ _ _

Case# 2009-25338-379 Received at Montgomery County Prothonotary on 01/27/2014 3:44 PM, Fee = $0.00

**REED SMITH LLP**
Diane A. Bettino, Esq. (Id. No. 64111)
Barbara K. Hager, Esq. (Id. No. 88832)
Maria T. Guerin, Esq. (Id. No. 207378)
1650 Market Street
2500 One Liberty Place
Philadelphia, PA 19103
215-851-8100

*Attorneys for Plaintiff*
*GMAC Mortgage, LLC*

| | |
|---|---|
| **GMAC Mortgage, LLC,** : | COURT OF COMMON PLEAS |
| : | MONTGOMERY COUNTY |
| Plaintiff, : | CIVIL DIVISION |
| : | |
| v. : | |
| : | No: 09-25338 |
| **Kenneth J. Taggart,** : | |
| : | |
| Defendant. : | |

## CERTIFICATE OF SERVICE

I, Barbara K. Hager, hereby certify that on this 27th day of January, 2014, I caused a true

and correct copy of Plaintiff GMAC Mortgage, LLC's Motion to Stay Foreclosure to be served

upon the following via the court's electronic notice (if registered) and via U.S. First Class Mail

upon:

Robert J. Birch, Esquire
617 Swede Street
Norristown, PA 19401

Gregory P. Schwab, Esquire
Saul Ewing LLP
1500 Market Street, 38th Floor
Centre Square West
Philadelphia, PA 19102

LBA Financial LLC
970 Loucks Road
York, PA 17404

*/s/ Barbara K. Hager*
Barbara K. Hager, Esq.