**Exhibit 3 to Objection**

**Hall Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
|  | ) |  |
| RESIDENTIAL CAPITAL, LLC, <u>et al</u>., | ) | Chapter 11 |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

**DECLARATION OF DAN HALL**
**IN SUPPORT OF RESCAP BORROWER CLAIMS TRUST'S**
**OBJECTION TO PROOF OF CLAIM NO. 5257 FILED BY KENNETH TAGGART**

I, Dan Hall, hereby declare as follows:

**I.    BACKGROUND AND QUALIFICATION**

1.    I currently serve as a Senior Relationship Manager for QBE FIRST Insurance Agency, Inc. ("**QBE FIRST**").  In such capacity, I performed work for the GMAC Mortgage, LLC ("**GMACM**") lender placement program.  Between November 2003 and July 31, 2012, I performed similar work for Newport Management Corporation ("**Newport**").  QBE FIRST and Newport are sister companies.

2.    In my work for Newport, I was responsible for, among other things, overseeing the process by which mortgages serviced by GMACM were monitored for adequate hazard insurance coverage.  I also was responsible for overseeing the mailing of "cycle letters," which are letters sent to borrowers to notify them of inadequate hazard insurance coverage, as well as the placement of hazard insurance on those loans for which the borrower does not carry adequate insurance, and, where necessary, the processing of refunds in connection with cancelled hazard insurance policies.

ny-1163876

3.      I am familiar with the books and records maintained by Newport (the "**Books and Records**"), and am qualified by my position to identify those records and certify their authenticity.

4.      In connection with preparing this declaration, I have reviewed and analyzed the Books and Records pertaining to Newport's tracking and placement of hazard insurance on the property owned by Kenneth J. Taggart ("**Claimant**") located at 521 Cowpath Road, Telford, PA 18969 (the "**Property**"). Except as otherwise indicated, all statements in this declaration are based upon my personal knowledge of Newport's operations and information learned from my review of Newport's Books and Records. If I were called upon to testify, I could and would testify competently to the facts set forth in this declaration on that basis.

5.      Except as otherwise noted below, each of the records attached to or accompanying this declaration are original records of Newport's business or true and accurate duplicates thereof. In addition, these records were (i) made at or near the time of the occurrence of the matters set forth thereby, (ii) kept in the course of a regularly conducted business activity and (iii) made by the business as part of its regular practice.

## II.    CLAIMANT'S HAZARD INSURANCE

6.      On or about August 1, 2008, in connection with the onboarding of Claimant's account on its systems, GMACM provided Newport with loan related information for the Claimant including proof of two hazard insurance policies covering the Property through August 9, 2008, which policies had a combined yearly premium of $1,700.[1] Two policies provided separate coverage for two portions of the Property. Policy No. ▮225 covered the so-called "Side Property" and Policy No. ▮227 covered the "Front Property."

---

[1] A true and correct copy of the proof of insurance provided with Claimant's loan information is attached hereto as Exhibit 1.

ny-1163876                                     2

7. Because it had not received proof of insurance for any period beyond August 9, 2008 or an invoice for renewal of the existing policy, on or about August 11, 2008 Newport contacted Claimant's hazard insurance carrier to obtain renewal information.[2] After being advised of the relevant renewal details by Claimant's hazard insurance carrier, on or about August 13, 2008 Newport, on behalf of GMACM made a payment in the amount of $978.00 to renew Policy No. ███225 for the Side Property for the policy term of August 9, 2008 to August 9, 2009. Id.

8. On September 16, 2008, Claimant contacted Newport by telephone and thereafter faxed a Declarations statement from his hazard insurance carrier, and requested that GMACM immediately pay the renewal premium for Policy No. ███227 for the Front Property in the amount of $925. See Newport "Side Property" Servicing Notes at 11-14. On September 17, 2008, Newport, on behalf of GMACM paid the renewal premium on Policy No. ███227 for the Front Property for the policy term August 9, 2008 to August 9, 2009. Id. at 11. However, when Newport updated its records, the renewal premium of $925 was attributed to the Side Property (Policy No. ███225) and not to the appropriate Front Property.

9. On September 29, 2008, Newport spoke to Claimant's hazard insurance carrier and was informed that the hazard insurance on the Property was bifurcated into two policies. Id. at 10. As a result, Newport created a separate tracking and monitoring process for Policy No. ███227 for the Front Property. See id. at 9-10.[3] However, the prior coverage history for the Front Property, including the September 17, 2008 payment of the $925 premium for Policy No. ███227, was not documented to the newly created tracking and monitoring process for the Front Property. As a result, Newport's records appeared to indicate that there was no insurance

---

[2] See Newport Side Property Servicing Notes at 15, a copy of which is attached hereto as Exhibit 2.
[3] A copy of the Newport Front Property Servicing Notes is attached hereto as Exhibit 3.

ny-1163876                                3

coverage at all for the Front Property since the inception of the loan on July 11, 2008. Consequently, on October 9, 2008 Newport, on behalf of GMACM, sent Claimant a request for proof of hazard insurance, indicating that "[w]e must have a copy of evidence of insurance coverage with an effective date of July 11, 2008 in order to avoid purchasing lender-placed insurance to protect our interest." See Newport Front Property Servicing Notes at 9.[4] Newport's records do not indicate receiving a response to the October 9, 2008 letter.

10. On November 23, 2008, Newport, on behalf of GMACM, sent a second letter to Claimant indicating that because it had not received proof of insurance, a lender-placed insurance policy would be obtained "within 60 days of this notice" with an effective date of July 11, 2008 at an annual charge of $7,261.00. See id. at 8.[5] The November 23, 2008 letter also informed Claimant that he could "cancel the coverage at any time and replace it with a policy of [his] own." Newport's records do not indicate receiving a response to the November letter and, as a result, on January 9, 2009, a lender-placed insurance policy (Policy No. ▇▇▇065), paid for by GMACM, was obtained covering the period from July 11, 2008 to July 11, 2009. See Newport Front Property Servicing Notes at 8. Claimant was notified of the placement of this insurance policy by letter dated January 11, 2009.[6]

11. On or about January 20, 2009, Claimant provided Newport with proof of hazard insurance coverage for the Front Property for the period from August 9, 2008 to August 9, 2009 (which coverage had been paid for by GMACM but not updated to the new tracking process for Policy No. ▇▇▇227), but Claimant did not at that time also provide the proof of coverage for the

---

[4] A true and correct copy of the October 9, 2008 letter sent by Newport, on behalf of GMACM, is attached hereto as Exhibit 4.
[5] A true and correct copy of the November 23, 2008 letter sent by Newport, on behalf of GMACM, is attached hereto as Exhibit 5.
[6] A true and correct copy of the January 11, 2009 letter sent by Newport, on behalf of GMACM, is attached hereto as Exhibit 6.

ny-1163876                             4

Front Property for the period from July 11, 2008 to August 9, 2008 (which had been provided at closing, but had not been updated in the new tracking process of Policy No. ▮227). See Newport Front Property Servicing Notes at 8.[7] In response, on January 22, 2009, Newport, on behalf of GMACM, informed Claimant that the lender-placed policy had been cancelled as of August 9, 2008, and that he would receive a partial "refund" in the amount of $6,684.00. See id.[8]

12.  On January 26, 2009, Newport issued a partial refund of $6,684.00 in connection with the cancellation lender-placed insurance Policy No. ▮065 for the period from August 9, 2008 to August 9, 2009.[9]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 13, 2014

/s/ Dan Hall
Dan Hall
Senior Relationship Manager

---

[7] A true and correct copy of the proof of insurance provided by Claimant on or about January 20, 2009 is attached hereto as Exhibit 7.

[8] A true and correct copy of the January 22, 2009 letter sent by Newport, on behalf of GMACM, is attached hereto as Exhibit 8. The remaining $577.00 for the lender-placed insurance covering the period from loan origination on July 11, 2008 until August 9, 2008 was not refunded until on or about June 14, 2012. See Newport Front Property Servicing Notes at 4-5.

[9] A true and correct copy of an excerpt of the weekly refund spreadsheet transmitted to GMACM on January 26, 2009 and documenting the partial refund of $6,684 for Policy No. ▮065 is attached hereto as Exhibit 9. The remainder of the spreadsheet has been redacted to protect the information of other borrowers.

ny-1163876                                                5