# EXHIBIT A

| | |
|---|---|
| RETURN DATE: DECEMBER 7, 2010 | : SUPERIOR COURT |
| GMAC MORTGAGE, LLC | : JUDICIAL DISTRICT OF<br>NEW HAVEN |
| V. | : AT NEW HAVEN |
| LESLIE D. WATLEY | : OCTOBER 14, 2010 |

## COMPLAINT

1. The Plaintiff, GMAC MORTGAGE, LLC has an office and place of business with an address of 4 Walnut Grove Drive  Horsham, PA 19044.

2. At all times complained of herein, the Defendant(s), LESLIE D. WATLEY, owned real property situated in the Town of North Haven, County of New Haven and State of Connecticut known as 22 CONHURST DRIVE, NORTH HAVEN, CT 06473, (hereinafter the "Property") being more particularly described in Schedule A attached hereto and made a part hereof.

3. On or about April 4, 2008, the Defendant(s), LESLIE D. WATLEY, executed and delivered to HOMECOMINGS FINANCIAL, LLC (F/K/A HOMECOMINGS FINANCIAL NETWORK, INC.), a Note (the "Note") for a loan in the original principal amount of $417,000.00.

4. On said date to secure said Note the Defendant(s), LESLIE D. WATLEY, did execute and deliver to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR HOMECOMINGS FINANCIAL, LLC (F/K/A HOMECOMINGS FINANCIAL NETWORK, INC.), a Mortgage on the Property.  Said Mortgage was dated April 4, 2008 and recorded April 11, 2008 in Volume 788 at Page 143 of the North Haven Land Records. Said Mortgage was assigned to GMAC MORTGAGE, LLC by virtue of an Assignment of Mortgage to be recorded on the North Haven Land Records.  The Plaintiff, GMAC MORTGAGE, LLC, is the holder of said Note and Mortgage.

HUNT LEIBERT JACOBSON, P.C. ● ATTORNEYS AT LAW
50 WESTON STREET   ●   HARTFORD, CONNECTICUT 06120   ●   (860) 808-0606   ●   JURIS NO. 101589

5. Said Note is in default and the Plaintiff, GMAC MORTGAGE, LLC as the holder of said Mortgage and Note has elected to accelerate the balance due on said Note, to declare said Note to be due in full and to foreclose the Mortgage securing said Note.

6. The Plaintiff has provided written notice in accordance with the Note and Mortgage to the Defendant(s) of the default under the Note and Mortgage, but said Defendant(s) has failed and neglected to cure the default. The Plaintiff has elected to accelerate the balance due on said Note, to declare said Note to be due in full and to foreclose the Mortgage securing said Note.

7. The following liens or encumbrances claim to have an interest in the Property which liens or encumbrances are prior in right to the Mortgage herein:

a. The Town/City of North Haven may claim an interest in the Property by virtue of inchoate liens for real estate taxes on the Grand Lists of October 1, 2002 and thereafter.

8. There are no liens or encumbrances claiming to have an interest in the Property which liens or encumbrances are subsequent in right to the Mortgage herein.

9. The Defendant(s) LESLIE D. WATLEY, is the owner of the equity of redemption of the Property and, on information and belief, is in possession of the Property.

10. The Plaintiff, GMAC MORTGAGE, LLC, has further caused a Lis Pendens to be recorded on the Land Records of the Town of North Haven. A copy of said Lis Pendens is attached hereto as Exhibit A.

11. The Plaintiff, GMAC MORTGAGE, LLC, has further caused a notice to be given to the Defendant(s), LESLIE D. WATLEY, of her rights pursuant to the Statutes pertaining to unemployment and underemployment by annexing to this Writ, Summons and Complaint a copy of the notice provided for in said Statute.

WHEREFORE, the plaintiff claims:

1. Foreclosure of the Mortgage;
2. Possession of the Property;
3. Money damages against the makers of, or obligors on, the Note described herein and/or their Estates, if deceased, (unless same has been precluded by virtue of a Bankruptcy filing);
4. A reasonable attorney's fee (unless same has been precluded by virtue of a Bankruptcy filing);
5. Interest (unless same has been precluded by virtue of a Bankruptcy filing);
6. Costs of suit (unless same has been precluded by virtue of a Bankruptcy filing);
7. Deficiency Judgment against the makers of, or obligors on, the Note described herein, and/or their Estate, if deceased (unless same has been precluded by virtue of a Bankruptcy filing); and
8. Such other and further relief as the Court may deem just and equitable.

Notice is hereby given to the Defendant(s) that the Plaintiff intends to seek satisfaction of any judgment rendered in its favor in this action out of any debt accruing to said Defendant(s) by reason of their personal services, (unless same has been precluded by virtue of a Bankruptcy filing).

Dated at Hartford, Connecticut on October 14, 2010.

Plaintiff

By: _____
Gregory Sibilio
Hunt Leibert Jacobson, P.C.
Its Attorneys

HUNT LEIBERT JACOBSON, P.C. ● ATTORNEYS AT LAW
50 WESTON STREET ● HARTFORD, CONNECTICUT 06120 ● (860) 808-0606 ● JURIS NO. 101589

RETURN DATE: DECEMBER 7, 2010                   : SUPERIOR COURT

GMAC MORTGAGE, LLC                              : JUDICIAL DISTRICT OF
                                                  NEW HAVEN
V.                                              : AT NEW HAVEN

LESLIE D. WATLEY                                : OCTOBER 14, 2010

## INFORMATION RELATING TO "VALIDATION NOTICE"

This Writ, Summons and Complaint are legal documents used to commence a lawsuit with regards to the debt referenced within them. You must follow the instructions provided therein should you wish to preserve your interests in the suit, even if you dispute the validity or the amount of the debt. As lawyers, this office may file papers in the suit according to the Statutes, Rules of Court and Standing Orders in Connecticut. The "Validation Notice" which has been or will be sent to the borrower(s) ("consumers") in no way alters their rights or obligations with respect to this lawsuit. If you are the borrower ("consumer"), and if you notify us that the debt or any portion thereof is disputed, or if you request proof of the debt or the name and address of the original creditor within the thirty (30) day time period of the validation notice, we will stop our collection efforts including this foreclosure suit until we mail the requested information to you.

**HUNT LEIBERT JACOBSON, P.C.** ● ATTORNEYS AT LAW
50 WESTON STREET   ●   HARTFORD, CONNECTICUT 06120   ●   (860) 808-0606   ●   JURIS NO. 101589

RETURN DATE: DECEMBER 7, 2010   : SUPERIOR COURT

GMAC MORTGAGE, LLC     : JUDICIAL DISTRICT OF
                NEW HAVEN
V.               : AT NEW HAVEN

LESLIE D. WATLEY       : OCTOBER 14, 2010

## STATEMENT OF AMOUNT IN DEMAND

  The amount, legal interest, or property in demand is not less than $15,000.00, exclusive of interest

and costs.

            Plaintiff

            By: _____
              Gregory Sibilio
              Hunt Leibert Jacobson, P.C.
              Its Attorneys

RETURN DATE: DECEMBER 7, 2010   : SUPERIOR COURT

GMAC MORTGAGE, LLC     : JUDICIAL DISTRICT OF
                NEW HAVEN
V.               : AT NEW HAVEN

LESLIE D. WATLEY       : OCTOBER 14, 2010

## NOTICE TO HOMEOWNER

   If you are a homeowner, under the terms of Conn. Gen. Stat. Section 49-31d, et seq., you are hereby given notice that under those statutes, if you are UNEMPLOYED or UNDER-EMPLOYED you may make application to the Court to which this matter is returnable for relief from foreclosure.  You may qualify for relief under those statutes if:

**NOTICE: A PERSON WHO IS UNDEREMPLOYED OR UNEMPLOYED AND WHO HAS FOR A CONTINUOUS PERIOD OF AT LEAST TWO YEARS PRIOR TO THE COMMENCEMENT OF THIS FORECLOSURE ACTION OWNED AND OCCUPIED THE PROPERTY BEING FORECLOSED AS SUCH PERSON'S PRINCIPAL RESIDENCE, MAY BE ENTITLED TO CERTAIN RELIEF PROVISIONS UNDER SECTIONS 49-31D TO 49-31I, INCLUSIVE, OF THE CONNECTICUT GENERAL STATUTES. YOU SHOULD CONSULT AN ATTORNEY TO DETERMINE YOUR RIGHTS UNDER SECTIONS 49-31D TO 49-31I, INCLUSIVE, OF THE CONNECTICUT GENERAL STATUTES.**

   In order to qualify for relief under those statutes, you must make application for protection from foreclosure within <u>25 DAYS</u> of the return date.

# SCHEDULE A

*All that certain piece or parcel of land located in the Town of North Haven, County of New Haven and State of Connecticut, known as 822 Cankurst Drive a/k/a Lot 876 Cankurst Drive, Pine Hill Estates as more particularly described on a certain record subdivision map filed with the Town of North Haven having Map # J-481-C entitled "Record Subdivision Map - Phase I & II, Pine Hill Estates, Beach Lane & North Hill Road, North Haven, Conn., Scale 1" = 100'" prepared by Anderson Associates 1054 Boston Post Road, Guilford, Conn. dated February 10, 1993; Rev. 6-15-93; Rev. 3-29-94; Rev. 9-1-94; and Rev. 3-7-95. Said parcel being approximately 42,090 square feet.*

246771
**HUNT LEIBERT JACOBSON, P.C.** ● ATTORNEYS AT LAW
50 WESTON STREET ● HARTFORD, CONNECTICUT 06120 ● (860) 808-0606 ● JURIS NO. 101589

| | |
|---|---|
| RETURN DATE: DECEMBER 7, 2010 | : SUPERIOR COURT |
| GMAC MORTGAGE, LLC | : JUDICIAL DISTRICT OF NEW HAVEN |
| V. | : AT NEW HAVEN |
| LESLIE D. WATLEY | : OCTOBER 14, 2010 |

### LIS PENDENS

Notice is hereby given of the pendency of a civil action between the above-named Plaintiff and against LESLIE D. WATLEY, by Writ dated October 14, 2010, and made returnable to the Superior Court for the Judicial District of New Haven at New Haven on December 7, 2010, which action is brought, inter alia, to foreclose a certain mortgage from the Defendant(s), LESLIE D. WATLEY, to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR HOMECOMINGS FINANCIAL, LLC (F/K/A HOMECOMINGS FINANCIAL NETWORK, INC.), which mortgage was dated April 4, 2008 and recorded April 11, 2008 in Volume 788 at Page 143 of the North Haven Land Records.  Said Mortgage was assigned to GMAC MORTGAGE, LLC by virtue of an Assignment of Mortgage to be recorded on the North Haven Land Records.

In said action, the following items are claimed:

1. Foreclosure of the Mortgage;
2. Possession of the Property;
3. Money damages against the makers of, or obligors on, the Note described herein and/or their Estates, if deceased, (unless same has been precluded by virtue of a Bankruptcy filing);
4. A reasonable attorney's fee (unless same has been precluded by virtue of a Bankruptcy filing);
5. Interest (unless same has been precluded by virtue of a Bankruptcy filing);
6. Costs of suit (unless same has been precluded by virtue of a Bankruptcy filing);
7. Deficiency Judgment against the makers of, or obligors on, the Note described herein, and/or their Estate, if deceased (unless same has been precluded by virtue of a Bankruptcy filing); and
8. Such other and further relief as the Court may deem just and equitable.

246771

**HUNT LEIBERT JACOBSON, P.C.** ● **ATTORNEYS AT LAW**
50 WESTON STREET ● HARTFORD, CONNECTICUT 06120 ● (860) 808-0606 ● JURIS NO. 101589

The property the plaintiff seeks an interest in and to is located in the Town of North Haven, County of New Haven and State of Connecticut, and is known as 22 CONHURST DRIVE, NORTH HAVEN, CT 06473, and is more particularly bounded and described as set forth in Schedule A attached hereto.

Dated at Hartford, Connecticut on October 14, 2010

Plaintiff

By: _____
Gregory Sibilio
Hunt Leibert Jacobson, P.C.
Its Attorneys

HUNT LEIBERT JACOBSON, P.C. ● ATTORNEYS AT LAW
50 WESTON STREET   ●   HARTFORD, CONNECTICUT 06120   ●   (860) 808-0606   ●   JURIS NO. 101589

# SCHEDULE A

*All that certain piece or parcel of land located in the Town of North Haven, County of New Haven and State of Connecticut, known as 822 Coxhurst Drive a/k/a Lot 876 Coxhurst Drive, Pine Hill Estates as more particularly described on a certain record subdivision map filed with the Town of North Haven having Map # J-481-C entitled "Record Subdivision Map - Phase I & II, Pine Hill Estates, Beach Lane & North Hill Road, North Haven, Conn., Scale 1" = 100'" prepared by Anderson Associates 1054 Boston Post Road, Guilford, Conn. dated February 10, 1993; Rev. 6-15-93; Rev. 3-29-94; Rev. 9-1-94; and Rev. 3-7-95. Said parcel being approximately 42,090 square feet.*

246771

**HUNT LEIBERT JACOBSON, P.C.** ● ATTORNEYS AT LAW
50 WESTON STREET   ●   HARTFORD, CONNECTICUT 06120   ●   (860) 808-0606   ●   JURIS NO. 101589

# EXHIBIT B

DOCKET NO. NNH-CV-10-6015961-S

| | | |
|---|---|---|
| GMAC MORTGAGE, LLC | : | SUPERIOR COURT |
| | : | |
| Plaintiff, | : | JUDICIAL DISTRICT OF |
| | : | NEW HAVEN AT NEW HAVEN |
| v. | : | |
| | : | |
| LESLIE D. WATLEY | : | |
| | : | SEPTEMBER 22, 2011 |
| Defendant. | | |

ANSWER

1. Defendant Leslie D. Watley has insufficient knowledge to admit or deny the location of
   Plaintiff GMAC Mortgage, LLC's office or place of business.

2. Admitted.

3. Admitted.

4. Admitted in part. Defendant has insufficient knowledge to admit or deny that Plaintiff
   GMAC Mortgage, LLC is the holder of said Note and Mortgage.

5. Admitted in part and denied in part. Defendant denies that she is in default under the
   November 24, 2009 Permanent Modification Agreement (the "Modification Agreement")
   and was not delinquent under said Modification Agreement at the time Plaintiff's counsel
   signed the Complaint in this action. Defendant has insufficient knowledge to admit or
   deny that Plaintiff GMAC Mortgage, LLC is the holder of said Note and Mortgage.

6. Admitted in part and denied in part. Defendant denies that she has neglected to cure
   default. Defendant made payments under the Modification Agreement starting on
   December 7, 2009, even though the first payment under said Modification Agreement
   should not have come due until January 1, 2010 at the earliest. She continued to make
   monthly payments subsequently, with the exception of May 21, 2010, when a GMAC
   representative refused to accept her tendered payment, and September 2010. She called

again in October 2010 to make a payment, but Plaintiff summarily rejected her tendered

payment. Additionally, Defendant restates that she has insufficient knowledge to admit or

deny that Plaintiff GMAC Mortgage is the holder of said Note and Mortgage.

7. Admitted.

8. Admitted.

9. Admitted.

10. Admitted.

11. Admitted.


## FIRST SPECIAL DEFENSE: UNCLEAN HANDS

**A. Plaintiff's Own Errors In Delaying The Preparation Of The Permanent Modification Agreement And Backdating Said Agreement Led To This Foreclosure Action.**

1. On or about July 1, 2009, Plaintiff GMAC Mortgage, LLC sent a Home Affordable

   Modification Program ("HAMP") Loan Workout Plan (the "Loan Workout Plan") to

   Defendant Leslie Watley. Although the Loan Workout Plan was dated June 29, 2009, the

   envelope in which the Loan Workout Plan was mailed was postmarked July 1, 2009.

2. The Loan Workout Plan required Defendant Watley to make three trial payments of

   $2,121.94 in order to be considered for a Permanent Modification Agreement (the

   "Modification Agreement") under HAMP. Under the Loan Workout Plan, the

   Defendant's payments were "due" on the first of July, August and September 2009. The

   first payment under the Loan Workout Plan therefore was made "due" the same day

   Plaintiff mailed the Loan Workout Plan to Defendant.

3.  Upon information and belief, under standard HAMP and mortgage servicing industry
    practices, said trial period payments ought not to have been required to commence until
    the first of August 2009. See § 8.2, The Making Home Affordable Program Handbook
    for Servicers of Non-GSE Mortgages [hereinafter the "MHA Handbook"].

4.  Defendant Watley nonetheless signed and returned the Loan Workout Plan to Plaintiff.
    She made the three required trial payments of $2,121.94 on July 6, 2009, August 7, 2009,
    and September 8, 2009.

5.  Defendant's trial period payments totaled $6,365.82.  Plaintiff credited only $3,489.02 of
    these payments to principal ($436.36), interest ($2,063.77), and escrow ($988.89) on or
    about August 6, 2009.  Plaintiff did not apply $2,876.80 of Defendant's trial payments to
    principal, interest, or escrow during the trial period.

6.  The MHA Handbook requires that trial period payments be applied in accordance with
    the terms of the existing loan documents. See  § 8.4, MHA Handbook.

7.  Although she successfully made all three trial payments under the Loan Workout Plan—
    and made them earlier than properly required—Defendant Watley did not promptly
    receive a Modification Agreement from Plaintiff, as required by HAMP.  When
    Defendant Watley still had not received a Modification Agreement by October 6, 2009,
    she called Plaintiff to ask when she would receive it, as well as to make another payment.

8.  Defendant Watley was told by Plaintiff's agent on October 6 that she would receive the
    Modification Agreement soon, and that she should not make any additional payments
    until after she had received the Modification Agreement.

9.  Because Plaintiff began the trial period in July, Plaintiff would usually have prepared the
    Modification Agreement and submitted it to Defendant during September, before the trial

period was over. That way, a Modification Agreement could have become effective on

October 1, 2009—the first day of the next month. Under HAMP, in no event was the

Modification Agreement to have been prepared and received by Defendant later than

October 15, 2009, so that it would have become effective on November 1, 2009—the first

day of the second month following the last trial period month (September). See §§ 9.1-

9.2, MHA Handbook.

10. Even though Plaintiff was required by its own actions and HAMP to prepare and submit

to Defendant a Modification Agreement in a sufficiently timely fashion that it could be

received, reviewed, returned, and made effective on November 1, 2009, Plaintiff did not

even prepare a Modification Agreement for Defendant Watley until November 24, 2009.

See Exhibit A (Permanent Modification Offer Letter & Agreement, dated November 24,

2009).

11. Defendant Watley received the Modification Agreement on or around November 27,

2009.

12. Defendant signed, completed, notarized and returned all necessary paperwork by

November 30, 2009, as specified by the Modification Agreement.

13. Plaintiff attempted to obfuscate its delay in processing the Modification Agreement by

backdating said agreement.  Plaintiff sent a Modification Agreement stating that the

effective date—and thus the "due date" for the first payment—was November 1, 2009,

even though Plaintiff did not even prepare the Modification Agreement until November

24, 2009.  Making a payment by November 1, 2009 was obviously impossible under the

circumstances.

14. On information and belief, both the Plaintiff and the mortgage servicing industry generally make it their usual practice, when sending HAMP agreements after the 15th day of any month, to require that the first payment under the agreement be due on the first day of the second month following the month in which the agreement is sent.

15. Based on the date of the Modification Agreement—November 24, 2009—the first payment under the Modification Agreement should have been due no earlier than January 1, 2010.

16. The MHA Handbook specifies that program participants (like Defendant) are not required to make additional trial period payments during the months in between the final trial period month and the month in which the permanent modification becomes effective. See § 9.2, MHA Handbook.

17. Plaintiff, therefore, should not have collected payments from Defendant Watley for the months of October, November, and December 2009. Rather, Plaintiff should have capitalized these payments.

18. Plaintiff's Modification Agreement, therefore, not only required Defendant Watley to make a payment she could not possibly make because it was due before the Agreement was even mailed, but also purported to require two "early" payments (for November and December 2009), and so did not conform to proper industry practices.

19. The Modification Agreement required monthly payments in the amount of $2,167.53.

20. Defendant made payments under the Modification Agreement in the amount of $2,167.53 on December 7, 2009 and January 21, 2010. She also paid an additional $7.50 (a pay-by-telephone fee) each time.

21. Plaintiff did not promptly apply or credit either payment. Instead, on or about February 4, 2010, Plaintiff erroneously applied $1,888.97 of Defendant's funds as payment for the month of November 2009 and $1,888.97 of Defendant's funds as payment for the month of December 2009.

22. Even though HAMP clearly states that Plaintiff should not collect payments from Defendant for the months between the final trial period payment and the first payment under the Modification Agreement—and the first payment under the Modification Agreement should have been due no earlier than January 1, 2010—Plaintiff wrongfully did so.

**B. Plaintiff's Miscalculation Of Defendant's Escrow And Misapplication Of Defendant's Payments To An Escrow Shortage Caused Plaintiff To Erroneously Declare Defendant To Be In Default.**

23. The Modification Agreement, and the "Summary" Plaintiff provided to Defendant along with the Agreement, stated that Defendant Watley's account had an escrow shortage of $2,720.42 as of November 2009. The required monthly payment of $2,167.53 specified in the Modification Agreement included an amount ($908.63) attributable to escrow, supposedly calculated so as to allow Defendant Watley to stay current on future escrow payments and also pay off the escrow shortage over a five-year period. See Exhibit A (Permanent Modification Offer Letter & Agreement, Section 3C).

24. Payments covering the escrow shortage of $2,720.42, when properly allocated over a five-year period, should have equaled less than fifty dollars per month. However, Plaintiff instead calculated Defendant's escrow catch-up payments over a *twelve*-month period, and so set such payments at well over two hundred dollars per month.

25. The Modification Agreement, and the "Summary" Plaintiff provided to Defendant along with the Agreement, explicitly offered Defendant the option to pay off the escrow shortage immediately in a lump sum by sending a check to Plaintiff in the amount of the shortage. The Agreement further provided that if Defendant chose to pay the lump sum, her required monthly payment would be reduced. See Exhibit A (Permanent Modification Offer Letter & Agreement, Summary).

26. Defendant never sent Plaintiff a lump sum check to cover the escrow shortage. Nor did she otherwise indicate to Plaintiff that she wished to pay off the escrow shortage immediately. Defendant intended to pay off the shortage over time, as provided for by the Agreement, by making her scheduled payments of $2,167.53.

27. Defendant Watley made her first payment of $2,175.03 ($2,167.53 plus a $7.50 pay-by-phone fee) on December 7, 2009, ahead of the proper January 1, 2010 deadline, and Plaintiff accepted the payment without comment. Plaintiff did not apply Defendant's payment to principal, interest, or escrow at that time. Plaintiff should have credited this as Defendant's January 2010 payment.

28. On January 21, 2010, Defendant made her second payment of $2,175.03 ($2,167.53 plus a pay-by-phone $7.50 fee), and Plaintiff accepted the payment without comment, even though the signed Modification Agreement had not been notarized and returned to Defendant, as required under its terms. Plaintiff did not apply Defendant's payment to principal, interest, or escrow in January 2010. Plaintiff should have credited this as Defendant's February 2010 payment.

29. On or about February 1, 2010, Plaintiff credited $2,852.08 of Defendant Watley's accumulated funds to her escrow account to cover the escrow shortage in full. Plaintiff did so without Defendant's knowledge or permission.

30. Although this "payment" was contrary to the Modification Agreement, Plaintiff did not inform Defendant Watley that it had applied her funds to the escrow account to pay off the escrow shortage.

31. Defendant believes the funds credited to the escrow account were taken from unapplied payments during the trial period, and/or from the regular monthly payments Defendant had made on December 7, 2009 or January 21, 2010, or both. See supra paragraphs 5, 27, 28.

32. Whatever the source of the funds, Plaintiff's actions violated the Modification Agreement. They were taken without permission from Defendant. Such actions by Plaintiff were contrary to Defendant's expectations and instructions. Plaintiff's unilateral application of Defendant's funds to the escrow shortage was also in violation of HAMP.

33. Under the Modification Agreement, Plaintiff should have applied the amount necessary to cover Defendant's escrow shortage over a five-year period.

34. Plaintiff instead erroneously applied Defendant's payments to the escrow shortage as if the shortage was to be paid off in the fashion most favorable to itself, under the terms of Defendant's pre-existing loan documents, and not the changes therein under the Modification Agreement. See Exhibit B (Defendant's Original Deed, Section 3) ("If there is a shortage of [f]unds held in escrow . . . Borrower shall pay to Lender the amount necessary to make up the shortage . . . but in no more than 12 monthly payments.").

35. On or about February 4, 2010, Plaintiff also used Defendant's funds to pay itself fifteen fees of various amounts (totaling $213.88). It did so without Defendant's knowledge or permission.

36. On or about February 4, 2010, Plaintiff credited $1,888.97 of Defendant's funds as payment toward principal ($566.04), interest ($692.86) and escrow ($630.02) for the month of November 2009. Another $1,888.97 of Defendant's funds were simultaneously credited as a similar payment for the month of December 2009. Plaintiff should not have collected payment from Defendant for these two months. See supra paragraphs 16-17. The application of only $1,888.97 for the months of November and December was attributable to Plaintiff's calculated reduction in Defendant's required monthly payments, based on Plaintiff's unauthorized application of Defendant's funds to pay off the escrow shortage just three days earlier.

**C. Plaintiff Improperly Attempted To Recover The Purportedly "Missed" Payments Caused By Its Own Errors By Demanding Increased Monthly Payments.**

37. Defendant Watley had no knowledge of these improper transactions at the time Plaintiff paid itself for these fees, escrow shortage, and November and December 2009 "mortgage payments."

38. As a result of the delayed and backdated Modification Agreement and/or Plaintiff's erroneous application of Defendant's funds to pay off the escrow shortage and fees, Plaintiff asserted that Defendant was thirty days behind in a written "late notice" sent several weeks after Plaintiff had accepted Defendant's second payment on January 21, 2010.

39. Defendant was not thirty days late.  In fact, Defendant Watley had made her payments for

both January and February early, on December 7, 2009 and on January 21, 2010,

respectively.

40. On February 23, 2010, Defendant Watley called Plaintiff to make a third payment of

$2,167.53, and to inquire about the "late notice" she had recently received.

41. An agent or employee of Plaintiff informed Defendant Watley that the January 21, 2010

payment of $2,167.53 had mistakenly been applied to her escrow shortage.  The agent

then demanded two monthly payments from Defendant, one for January 2010 and one for

February 2010.  Plaintiff's agent may have made this statement erroneously. See supra

paragraphs 21, 27-31.  However, Defendant Watley relied on the agent's statement.

42. During the telephone call, Defendant Watley protested the application of her January 21,

2010 payment to the escrow shortage and requested that Plaintiff correct its mistake.

Plaintiff's agent told Defendant that the payment could not be reversed and again

demanded two monthly payments from Defendant.

43. Defendant could not afford to make the double payment that the agent demanded. After

some negotiation, Defendant was apparently told by an agent of GMAC Mortgage, LLC

that she should make a payment of $1,888.97, supposedly for the month of February.

Plaintiff's agent did NOT explain at this time that the payment had been reduced to

reflect the pay-down of her escrow shortage due to the bank's admitted misapplication of

Defendant's Trial Period and/or her January payments.

44. Defendant made the payment of $1,888.97 on February 23, 2010 as instructed by

Plaintiff's agent, and Plaintiff accepted the payment without further comment.  Plaintiff

should have credited this as Defendant's March 2010 payment. Plaintiff instead credited the payment to January 2010.

45. Plaintiff continued to harass Defendant Watley, claiming that she was behind in her payments in the months after it had misapplied her three trial period payment and her payments of December 7, 2009 and January 21, 2010.

46. Defendant believed that $1,888.97 now represented her regular monthly payment amount because, as Plaintiff's agent had explained, Plaintiff had unilaterally applied her funds to pay off the escrow shortage. Plaintiff's own conduct is fully consistent with this belief, as it only credited $1,888.97 to principal, interest, and escrow each month, starting "as of" November 2009—even in the many months when Defendant made a larger payment.

47. On March 19, 2010 Defendant called and made a fourth payment of $1,951.91 ($1,888.97 plus a supposed "late fee" of $62.94), and Plaintiff accepted the payment. Plaintiff should have credited this as Defendant's April 2010 payment, and charged no late fee. Instead Plaintiff credited the payment to February 2010.

48. In that same telephone conversation, however, Plaintiff also badgered Defendant to agree to make an increased payment for several months, to make up the allegedly "missed" January payment (which Plaintiff still claimed to have applied to Defendant's escrow shortage). Plaintiff first demanded a large monthly payment that Defendant could not possibly afford to pay. Plaintiff then insisted upon a new monthly payment of $2,383.23. This demand for an increased monthly payment was contrary to the Modification Agreement.

49. Defendant Watley, fearing that Plaintiff would initiate foreclosure proceedings despite its

own errors and refusal to correct those errors, agreed to pay the increased amount of

$2,383.23 in an informal oral arrangement with Plaintiff.

50. Accordingly, on April 21, 2010, Defendant made her fifth payment of $2,383.23. Plaintiff

accepted the payment without comment.  Plaintiff should have credited this as

Defendant's May 2010 payment.  Instead Plaintiff credited $1,888.97 of that payment to

March 2010.

51. On May 21, 2010, Defendant called Plaintiff to make another payment.  Defendant was

unable to afford the excessively high $2,383.23 payment demanded by Plaintiff. She was,

however, ready, willing and able to pay—and effectively tendered—her "regular"

monthly mortgage payment:  $1,888.97.

52. Plaintiff's agent told Defendant that they would not accept any monthly payment at all

because it was not the "full" payment of $2,383.23, and that Defendant had broken the

oral agreement from March.  Plaintiff told Defendant to wait and pay the regular amount

in June.

53. On June 4, 2010, Defendant made her sixth payment (again, of $2,383.23) and Plaintiff

accepted the payment without comment.  Plaintiff should have credited this as

Defendant's June 2010 payment.  Instead Plaintiff credited $1,888.97 of the payment to

April 2010.

54. On July 6, 2010, Defendant made a seventh payment, this time of $1,888.97, and Plaintiff

accepted the payment without comment.  Plaintiff should have credited this as

Defendant's July 2010 payment.  Instead, Plaintiff credited the payment to May 2010.

55. Plaintiff sent Defendant Watley a letter dated July 12, 2010, stating that she owed
$3,777.94 for the months of June and July.

56. Defendant did not take any action after receiving this letter because she assumed it was a
mistake. Defendant knew that she had made payments on June 4, 2010 in the amount of
$2,383.23 and on July 6, 2010 in the amount of $1,888.97. Defendant's total payments
were thus $4,272.20,which exceeded the $3,777.94 that Plaintiff claimed was overdue.

57. On August 19, 2010, Defendant made her eighth payment under the Modification
Agreement, this time in the amount of $2,098.97. Plaintiff should have credited this as
Defendant's August 2010 payment. Instead Plaintiff credited $1,888.97 of the payment
to June 2010.

58. Due to financial hardship, Defendant admits that she was not able to make a payment
during September 2010.

59. On or about September 15, 2010, Defendant received a letter from Plaintiff stating that
her payments would increase again—this time to approximately $2,500 a month,
beginning in November 2010.

60. When Defendant called and offered to make her monthly payment of $1,888.97 in late
October 2010, Plaintiff stated that Defendant Watley was four months behind and refused
to accept any payment less than $8,000.

61. Defendant Watley was not four months behind on October 21, 2010. Defendant actually
had only missed making one monthly payment (for September 2010). In fact, however,
excess payments collected by Plaintiff in December, January, March, April, June, and
August more than covered the September payment. Thus, Defendant Watley was
actually current through September 2010.

62. Monthly mortgage payments, although "due" on the first of the month are not "late" until after the 15th of the month. Plaintiff's counsel acted prematurely when it signed the Complaint in this action on October 14, 2010 because the Defendant's October 2010 payment was not technically late.

63. Plaintiff neglected to inform Defendant during the October 21st telephone call that Plaintiff had already turned her case over to Hunt Leibert Jacobson P.C. to initiate a foreclosure action, and that the Complaint in this action had already been signed on October 14, 2010.

64. Plaintiff's failure to prepare a Modification Agreement promptly in compliance with HAMP— and instead doing so nearly two months late—constitutes conduct that was not fair or equitable.

65. Plaintiff's attempt to obfuscate the delay in its processing of the Modification Agreement by backdating the effective date of the Modification Agreement to November 1, 2009— despite not preparing the Agreement until November 24, 2009—contravened proper industry (and Plaintiff's own) usual practice, and constitutes conduct that was not fair or equitable.

66. Plaintiff's failure to credit Defendant's trial payments properly under the Loan Workout Plan to principal, interest, and escrow—and identical failure to credit Defendant's payments properly under the Modification Agreement to principal, interest, and escrow— for the proper months constitutes conduct that was not fair or equitable.

67. Plaintiff's collection of payments from Defendant Watley for November 2009 and December 2009, in violation of HAMP and of Plaintiff's own usual and industry practices, constitutes conduct that was not fair or equitable.

68. Plaintiff's payment to itself (by its application, in whole or in part, of Defendant's trial period payments and/or Defendant's December 2009 or January 2010 monthly payments) to cover the escrow shortage—in direct contravention of HAMP guidelines and the Modification Agreement—constitutes conduct that was not fair or equitable.

69. Plaintiff's overcharging of Defendant Watley regarding the catch-up payments for the escrow shortage, its failure to notify Defendant Watley of its misapplication of her payments, and its refusal to correct the misapplication upon Defendant's request, constitutes conduct that was not fair or equitable.

70. Plaintiff's payment to itself (in early February 2010) of $213.88 in fees—fees which instead ought to have been capitalized or forgiven—constitutes conduct that was not fair or equitable.

71. Plaintiff's demand for a double payment in February 2010, in order to cover its misapplication of Defendant's funds and/or the backdating of the Modification Agreement, constitutes conduct that was not fair or equitable.

72. Plaintiff's demand for an increased monthly payment plan in March 2010, in order to cover its misapplication of Defendant's funds and/or the backdating of the Modification Agreement, constitutes conduct that was not fair or equitable.

73. Plaintiff's refusal to accept Defendant's tendered mortgage payment in May 2010 because Defendant could not afford the excessive amount wrongfully demanded by Plaintiff constitutes conduct that was not fair or equitable.

74. Plaintiff's refusal to accept Defendant's tendered mortgage payment in October 2010 because Defendant could not afford the excessive amount wrongfully demanded by Plaintiff constitutes conduct that was not fair or equitable.

75. Plaintiff's decision to declare Defendant Watley to be delinquent or in default—even though Defendant was neither delinquent nor in default and even though Defendant had made best efforts to comply with the terms of the Modification Agreement, despite Plaintiff's myriad delays and errors—constitutes conduct that was not fair or equitable.

76. Plaintiff's decision to declare Defendant Watley to be delinquent or in default though Defendant was current on her payments constitutes conduct that was not fair or equitable.

77. Plaintiff is barred by the clean hands doctrine from declaring a default or pursuing any claims against Defendant Watley.


### SECOND SPECIAL DEFENSE: PAYMENT

1-77. Defendant Watley hereby incorporates the allegations of paragraphs 1 through 77 of her first special defense as though fully set forth herein.

78. For the month of July 2009, $2,121.94 was supposedly due from Defendant under the Loan Workout Plan. Defendant tendered $2,121.94 to the Plaintiff for that month's mortgage payment. Plaintiff accepted that payment.

79. For the month of August 2009, $2,121.94 was due under the Loan Workout Plan. Defendant tendered $2,121.94 to the Plaintiff for that month's mortgage payment. Plaintiff accepted that payment.

80. For the month of September 2009, $2,121.94 was due under the Loan Workout Plan. Defendant tendered $2,121.94 to Plaintiff for that month's mortgage payment. Plaintiff accepted that payment.

81. Following Plaintiff's express instructions that she discontinue making payments until receiving the Modification Agreement, Defendant did not tender a mortgage payment for the months of October or November 2009.

82. Because the October payment was capitalized, November should have been treated the same way, and thus, if calculated properly, Defendant did not owe a monthly mortgage payment for the month of November 2009.

83. Defendant received the Modification Agreement on or around November 27, 2009. If calculated properly, Defendant did not owe a monthly mortgage payment for the month of December 2009.

84. Defendant tendered $2,175.03 ($2,167.53 plus a $7.50 fee) to Plaintiff on December 7, 2009. Plaintiff accepted this payment. The first payment under the November 24th Modification Agreement, if properly drafted, should not have come due until January 1, 2010. Defendant's payment in December thus constituted an early payment for the month of January 2010.

85. For the month of January 2010, $2,175.03 ($2,167.53 plus a $7.50 fee) was due under the Modification Agreement. Defendant had already paid for the month of January in December 2009.

86. Because Defendant made her first mortgage payment under the Modification Agreement in early December 2009, Defendant was now one month "ahead" on her mortgage payments.

87. On January 21, 2010, Defendant tendered another $2,175.03 to Plaintiff. Plaintiff accepted this payment. This payment thus constituted Defendant's payment for the month of February 2010.

88. Plaintiff, however, unilaterally revised the Modification Agreement as of February 2010,
reducing Defendant's regular monthly mortgage payment to $1,888.97. Plaintiff did so to
reflect the payments Plaintiff had wrongfully applied to Defendant's escrow shortage. By
applying Defendant's payments to the escrow shortage as detailed above (see supra
paragraphs 29-31), Plaintiff had paid itself off and eliminated this shortage, reducing the
total monthly payment due from Defendant Watley.

89. Defendant tendered $1,888.97 on February 23, 2010. Plaintiff accepted this payment.
Still, because Defendant had started making payments one month early (in December
2009), this payment actually constituted Defendant's payment for the month of March
2010. Moreover, based on these changes, the Defendant's January 21 payment in the
originally specified amount turns out to have included an overpayment of $278.56 above
the amount actually due for February 2010.

90. For the month of March 2010, $1,888.97 was due under the Modification Agreement, as
unilaterally revised by Plaintiff. On or around March 19, 2010, Defendant tendered
$1,951.91 to Plaintiff. Plaintiff accepted this payment. (Defendant thus overpaid by
$62.94, a supposed late fee.) This payment actually constituted Defendant's payment for
the month of April 2010.

91. For the month of April 2010, $1,888.97 was due under the Modification Agreement, as
unilaterally revised by Plaintiff. Defendant tendered $2,383.23 on April 21, 2010.
Plaintiff accepted this payment. (Defendant overpaid by $494.86.) This payment actually
constituted Defendant's payment for the month of May 2010.

92. For the month of May 2010, $1,888.97 was due under the Modification Agreement, as
unilaterally revised by Plaintiff. Defendant tendered $1,888.97. Plaintiff explicitly

refused to accept this payment and instructed Defendant to resume making regular

payments in June 2010.

93. For the month of June 2010, $1,888.97 was due under the Modification Agreement, as

unilaterally revised by Plaintiff. Defendant tendered $2,383.23 on June 4, 2010. Plaintiff

accepted this payment. (Defendant overpaid by $494.86.)

94. For the month of July 2010, $1,888.97 was due under the Modification Agreement, as

unilaterally revised by Plaintiff. Defendant tendered $1,888.97 on July 6, 2010. Plaintiff

accepted this payment.

95. For the month of August 2010, $1,888.97 was due under the Modification Agreement, as

unilaterally revised by Plaintiff. Defendant tendered $2,098.97 on August 19, 2010.

Plaintiff accepted this payment. (Defendant overpaid by $210.00.)

96. Defendant was unable to make her monthly mortgage payment for September 2010 due

to financial hardship. However, because she had been regularly submitting mortgage

payments and was explicitly told not to make a May 2010 payment, Defendant had

accrued $3,430.09 in credit. Defendant's overpayments more than covered the revised

September monthly mortgage payment of $1,888.97.

97. Plaintiff has treated $1,888.97 as Defendant's regular monthly mortgage payment (fully

covering principal, interest and escrow) every month since the Modification Agreement

came into effect.

98. Accordingly, Defendant's first payment of $2,167.53 (on December 7, 2009) may

actually have included an overpayment of $278.56.

99. Plaintiff wrongfully paid itself $213.88 in fees on February 4, 2010.

100.   Defendant's total credits and overpayments amounted to as much as $3,922.53 as of August 31, 2010. This amount was more than sufficient to cover Defendant's monthly mortgage payments ($3,777.94) for both the months of September and October 2010.

101.   For the month of October 2010, $1.888.97 was due under the Modification Agreement, as unilaterally revised by Plaintiff. Defendant called on October 21, 2010 to make her revised monthly payment in full, but Plaintiff explicitly refused to accept any payment less than $8,000. Plaintiff rejected Defendant's tender of $1,888.97 and instead informed Defendant she was in default.

102.   At the time Plaintiff's counsel signed the Complaint in this action (on October 14, 2010), Defendant was neither delinquent nor in default under the Modification Agreement. Indeed, Defendant actually had $144.59 remaining from Plaintiff's wrongful taking of her funds, together with her series of early and over payments, all of which should be credited toward her next (November 2010) monthly payment.

103.   Defendant paid the monthly mortgage payments under the Loan Workout Plan from July 2009 through September 2009.  Defendant paid (or tendered) her monthly mortgage payments under the Modification Agreement starting in December 2009 through October 2010.

104.   Because Defendant paid her monthly mortgage payments and was not yet late in October 2010, Plaintiff is barred from declaring a default or pursuing a foreclosure action against Defendant.

THIRD SPECIAL DEFENSE:  WAIVER

1-104. Defendant Watley hereby incorporates the allegations of paragraphs 1 through 104 of her second special defense as though fully set forth herein.

105.   Plaintiff accepted Defendant's early payments under the Modification Agreement in December 2009 and January 2010 without comment. But Plaintiff did not apply them to principal, interest or escrow at that time.

106.   Instead, in February 2010, Plaintiff took some of Defendant's funds and applied them to cover the escrow shortage. Plaintiff did this without notice or permission, and in direct contravention of the Modification Agreement. Plaintiff then refused to correct this mistake. Instead, Plaintiff insisted that Defendant was behind on her mortgage and demanded two monthly mortgage payments. Defendant was financially unable to make two full monthly payments.

107.   Plaintiff then accepted Defendant's payment of $1,888.97 on February 23, 2010—despite the fact that Defendant did not make the full double payment as demanded.

108.   Plaintiff accepted Defendant's March payment of $1,951.9, which included a late fee of $62.94—even though Defendant's payment was not actually late.

109.   Plaintiff then coerced Defendant into making an oral "agreement" in March 2010, requiring her to pay an increased monthly amount of $2,383.23.

110.   Plaintiff subsequently accepted Defendant's payment in April 2010 for $2,383.23

111.   On May 21, 2010, Defendant tendered $1,888.97 for the month of May 2010. Plaintiff, however, explicitly refused to accept Defendant's payment in May 2010.

112.   Plaintiff then accepted Defendant's payments in June 2010 ($2,383.23) and July 2010 ($1,888.97).

113.    Despite accepting Defendant's payments in both June 2010 and July 2010, in the

interim Plaintiff sent Defendant a letter (on or around July 2010), asserting that she owed

$3,777.94 for the months of June 2010 and July 2010.

114.    Nonetheless, Plaintiff continued to accept Defendant's payments. Plaintiff accepted

Defendant's payment of $2,098.97 in August 2010.

115.    Over the period from December 7, 2009 through August 19, 2010, Plaintiff

consistently accepted Defendant's payments on whatever date they were made and in

whatever amount(s) were tendered, with the exception of May 21, 2010, when Plaintiff's

agent explicitly told Defendant not to pay. Even when rejecting Defendant's attempted

payment on May 21, however, Plaintiff's agent indicated that Plaintiff would accept

payment the next month.

116.    As a result of Plaintiff's actions in accepting said payments without protest, Plaintiff

has waived any right or privilege, at law or in equity, to declare Defendant to be in

default under said Note and said Mortgage.

117.    As a result of Plaintiff's actions in accepting said payments without protest, Plaintiff

has waived any right or privilege, at law or in equity, to accelerate the balance due on

said Note.

118.    As a result of Plaintiff's actions in accepting said payments without objection, Plaintiff

has waived any right or privilege, at law or in equity, to foreclose the Mortgage securing

said Note.


## FOURTH SPECIAL DEFENSE: EQUITABLE ESTOPPEL

1-118. Defendant Watley hereby incorporates the allegations of paragraphs 1 through 118 of her third special defense as though fully set forth herein.

119.   Plaintiff, by way of the explicit terms of its Modification Agreement, represented to Defendant that payments for Defendant's escrow shortage would be included in her monthly mortgage payment over a five-year period. Plaintiff's representations were intended or calculated to induce Defendant to believe that her monthly mortgage payments already included an amount sufficient to cover the escrow shortage over a five-year period.

120.   In February 2010, Plaintiff represented to Defendant, by way of a telephone call between Plaintiff's agent and Defendant, that Plaintiff nonetheless had applied Defendant's monthly payments made during December 2009 and January 2010 to the escrow shortage, and, as a result, that Defendant now owed two monthly mortgage payments.

121.   Plaintiff told Defendant that it could not correct or reverse its then-acknowledged "mistake" of misapplying those two monthly mortgage payments to the escrow shortage. Plaintiff's representations were intended or calculated to induce Defendant to believe that she had no choice about when to pay her escrow shortage, contrary to the express language of the Modification Agreement.

122.   Plaintiff's agent told Defendant that her required monthly payment would "henceforth" be reduced to $1,888.97, but failed to explain why. Only much later did Defendant learn that this was done to reflect the full repayment of the escrow shortage.

123.   Defendant relied on this statement, and henceforth treated $1,888.97 as her "regular" or "required" monthly mortgage payment.

23

124. Defendant also relied on Plaintiff's representations that she needed to pay two full monthly mortgage payments to "catch up" by later (in March 2010) agreeing to pay increased monthly mortgage payments, also contrary to the terms of the Modification Agreement.

125. In May 2010, Plaintiff, by way of a telephone call between Plaintiff's agent and Defendant, rejected Defendant's May monthly mortgage payment, despite Defendant's tender of $1,888.97. Plaintiff instead instructed Defendant to make her "regular" monthly payment in June 2010. Plaintiff's representation was intended or calculated to induce Defendant to believe that there would be no penalty for not making a May 2010 payment.

126. Defendant relied on Plaintiff's statement that it refused to accept her tendered May 2010 monthly payment by obeying Plaintiff's instructions and not making a payment of $1,888.97 at that time.

127. But for Plaintiff's and its agents' actions and instructions, Defendant would not be allegedly in default and facing foreclosure.

128. Plaintiff is barred by the special defense of equitable estoppel from declaring a default or pursuing any claims against Defendant.

FIFTH SPECIAL DEFENSE: BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

1-128. Defendant Watley hereby incorporates the allegations of paragraphs 1 through 128 of her fourth special defense as though fully set forth herein.

129. The Modification Agreement between Plaintiff and Defendant Watley constitutes a valid and enforceable contract for the payment of obligations under the Note and Mortgage. See infra paragraphs 134-138.

130.   The implied contractual covenant of good faith and fair dealing required Plaintiff to

deal fairly with Defendant Watley and act in good faith during the course of their

contractual dealings.

131.   Under the terms of the Modification Agreement, Defendant reasonably expected to

receive certain benefits. Specifically, Defendant reasonably expected that Plaintiff would

not declare her to be in default unless she fell ninety (90) days behind on her obligations

under the terms of the Modification Agreement. Defendant reasonably expected that her

trial period payments and her monthly payments would be properly credited to principal,

interest, and escrow, as provided for in the Loan Workout Plan and the Modification

Agreement.  Defendant reasonably expected that her payments to eliminate the escrow

shortage would be made in sixty (60) installments, as provided for in the Modification

Agreement, rather than in one lump sum. Defendant also reasonably expected that the

payments to eliminate the escrow shortage would be calculated over a five-year period, as

stated in the Modification Agreement, rather than over a twelve-month period.

132.   As described more fully above, Plaintiff engaged in conduct that injured Defendant

Watley's right to receive her contractual benefits. In engaging in such conduct, Plaintiff

acted with dishonest purpose and in bad faith when Plaintiff and Plaintiff's agents:

   a.   Failed to credit Defendant's trial period payments properly under the Loan

        Workout Plan to principal, interest, and escrow;

   b.   Prepared a backdated Modification Agreement on November 24, 2009,

        providing that payment was due on November 1, 2009—long before the

        Modification Agreement was even mailed—and providing for an

unconscionably short period in which Defendant needed to return a signed
copy of said Agreement (by November 30, 2009);

c.  Misstated the proper date for Defendant's payments to have commenced
thereunder, which should have been January 2010, and so charged Defendant
for the months of November and December 2009, rather than capitalize any
sums due for said months;

d.  Failed to credit Defendant's payments made in December 2009 and January
2010 properly to principal, interest, and escrow;

e.  Miscalculated the extra amount to be paid each month under the Modification
Agreement (in order to repay the escrow shortage) as having to be fully repaid
only over a twelve (12) month period, in direct contravention of a provision in
said Modification Agreement that the escrow shortage was to be repaid over a
five year, sixty (60) month period. This resulted in an improper
excess/difference of over two hundred dollars per month in that escrow
portion of Defendant's required monthly payments;

f.  Applied either Defendant's trial period payments or her mortgage payments in
December 2009 and January 2010 to her escrow shortage, instead of to her
accrued interest and principal balance, without her knowledge or permission
and in direct contravention of the provision in the Modification Agreement
declaring that such a payment would only be made at Defendant's discretion;

g.  Failed to notify Defendant that Plaintiff took such actions;

h.  Refused to reverse the application of $2,852.08 to the escrow shortage on
February 1, 2010, despite Defendant's express request to do so;

i.  Asserted that Defendant had fallen behind on her payments for January and February 2010, despite the fact that the January payment was only "missing" because of Plaintiff's own errors in backdating the Agreement and/or misapplying Defendant's payments;

j.  Demanded a double payment in February 2010 to cover alleged "shortfalls" caused by Plaintiff's own errors in backdating the Agreement and/or misapplying Defendant's prior payments;

k.  Increased Defendant's monthly payment to $2,383.23 to cover alleged "shortfalls" actually caused by Plaintiff's own errors in backdating the Agreement and/or misapplying Defendant's payments;

l.  Refused to accept the full monthly payment that Defendant tendered in May 2010;

m.  Refused to accept the full monthly payment that Defendant tendered in October 2010, instead suddenly demanding a large lump sum;

n.  Initiated this foreclosure action before Defendant was even delinquent, much less the ninety days delinquent required for her to have been in default;

o.  Declared a baseless event of default; and

p.  Declined to offer Defendant any reasonable means of curing alleged delinquency or default.

133.  As a result of Plaintiff's breach of its duty of good faith and fair dealing to Defendant Watley, Plaintiff is barred from declaring a default or pursuing any claims against Defendant.

## FIRST COUNTERCLAIM: BREACH OF CONTRACT

1-133. Defendant Watley hereby incorporates the allegations of paragraphs 1 through 133 of her

fifth special defense as though fully set forth herein.

134.    The Modification Agreement sent by Plaintiff to Defendant constitutes a valid offer,

signed and notarized by Defendant on November 30, 2009.

135.    By signing the Modification Agreement and returning it to Plaintiff, Defendant

accepted Plaintiff's offer.

136.    Defendant's legal representations about her personal circumstances, delivery of

documentation of her current income, and agreement to undergo credit counseling (if

required by Plaintiff), together with her payments, constitute consideration for said

contract.

137.    On information and belief, Plaintiff also signed said Modification Agreement,

although the date of said signing is unknown to Defendant.

138.    Therefore, the Modification Agreement between Plaintiff and Defendant Watley

constitutes a valid and enforceable contract that bound Plaintiff to refrain from declaring

Defendant to be in default on the condition that she comply with the terms of the

Modification Agreement.

139.    The Modification Agreement also bound Plaintiff to accept payments from Defendant

to cover the escrow shortfall in monthly installments paid over five years, rather than in

one lump sum.

140.    The required monthly payments of $2,167.53 specified by Plaintiff were calculated to

include an amount sufficient to cover the escrow shortage over the course of twelve (12)

months, breaching the Modification Agreement provision stating that the monthly

payments were calculated to include an amount sufficient to cover the escrow shortage over a five year, or sixty-month, period.

141.    On or about February 1, 2010, Plaintiff applied either $2,852.08 or $4,742.29 to Defendant's escrow account, in direct contravention of the Modification Agreement provision stating that the escrow shortage would be paid in monthly installments. This constituted a breach of the Modification Agreement.

142.    On or about February 23, 2010, Defendant called Plaintiff to make a payment and to inquire as to why she had been sent a late notice. Plaintiff told Defendant that payments intended by Defendant as regular monthly payments had instead been applied, as a lump sum, to her escrow shortage.  Plaintiff never notified Defendant that such an action was going to be taken, took the action without Defendant's knowledge or consent, never told Defendant it had done so until she inquired, and refused to correct or reverse its mistake when Defendant asked that it do so.

143.    Defendant's regular monthly payment should have been reduced due to Plaintiff's wrongful application of her funds to the escrow shortage. Instead, Plaintiff began demanding increased payments starting in March 2010.

144.    Plaintiff breached the parties' Modification Agreement by failing to accept Defendant's "reduced" regular monthly payment after Plaintiff's unilateral application of thousands of dollars taken from Defendant's accumulated payments as a lump sum payment to itself toward Defendant's escrow account arrearage.

145.    Plaintiff breached the parties' Modification Agreement by accepting Defendant's payments on December 7, 2009 and January 21, 2010 and failing immediately to apply any portion to principal, interest or escrow.

146.   Plaintiff breached the parties' Modification Agreement in February 2010 by
demanding a double monthly payment in excess of the amount already established in said
Modification Agreement.

147.   Plaintiff breached the parties' Modification Agreement in March 2010 by demanding
payments in excess of the amount already established in said Modification Agreement via
a wrongful, coerced oral "agreement" with Defendant.

148.   Plaintiff breached the parties' Modification Agreement by declaring Defendant
delinquent and in default when she was still current on her mortgage, and long before the
ninety-day period of delinquency required under said agreement.

149.   As a result of Plaintiff GMAC Mortgage, LLC's material breach of the parties'
Modification Agreement, Defendant Watley has suffered monetary damages.


SECOND COUNTERCLAIM:  PROMISSORY ESTOPPEL

1-149. Defendant Watley hereby incorporates the allegations of paragraphs 1 through 149 of
her first counterclaim as though fully set forth herein.

150.   Plaintiff, through its Modification Agreement, made a promise to Defendant Watley
that if she signed and returned two notarized copies of the Modification Agreement, she
would receive the permanent modification.

151.   The Modification Agreement included the following terms:

a.   Defendant would tender a monthly mortgage payment of $2,167.53;

b.   Plaintiff would forbear from a foreclosure action unless Defendant fell ninety
days behind on her obligations under the Modification Agreement;

    c.  Defendant's monthly escrow payment of $908.63 was supposedly calculated to include an amount sufficient to cover the escrow shortage, to be paid over a five-year period, but actually calculated—without so stating— to eliminate the shortage within twelve (12) months.

    d.  Defendant would sign and return two notarized copies of the Modification Agreement to Plaintiff by November 30, 2009, and Plaintiff would return a signed copy to Defendant.

152.   Although Plaintiff actually signed the Modification Agreement, and was obligated to send Defendant a counter-signed copy of said Modification Agreement, Plaintiff failed to return any signed copy of the Modification Agreement.

153.   Despite Plaintiff's complete failure to send Defendant a signed copy of the Modification Agreement, Defendant submitted mortgage payments to Plaintiff in December 2009, January 2010, February 2010, March 2010, April 2010, June 2010, July 2010 and August 2010.

154.   Defendant tendered a payment for May 2010, but Plaintiff explicitly rejected the payment.

155.   Defendant tendered a payment for October 2010, but Plaintiff explicitly rejected the payment.

156.   Plaintiff's Modification Agreement was calculated or intended to induce Defendant to rely on it and to submit monthly mortgage payments under the Modification Agreement.

157.   Plaintiff knew or reasonably should have known that its promise to extend a Modification Agreement in exchange for monthly mortgage payments would induce Defendant to make said payments.

158.    Defendant did rely on Plaintiff's representation by submitting monthly mortgage payments under the Modification Agreement. Given the language in the Modification Agreement, Defendant's reliance was reasonable.

159.    Plaintiff, by way of a telephone conversation with Defendant Watley in February 2010, made a promise to Defendant that, due to its own mistake in paying down the escrow shortage, her required monthly payment was reduced to $1,888.97.

160.    Plaintiff itself had acted in complete accord with this promise on February 4, 2010, by crediting only $1,888.97 to Defendant's account as "full" monthly mortgage payments, supposedly covering November and December 2009.

161.    Plaintiff's statements and actions were calculated or intended to induce Defendant to rely on them, and thus to submit monthly payments of $1,888.97.

162.    Plaintiff knew or reasonably should have known that its promise to reduce Defendant's payments to $1,888.97 would induce Defendant to make payments in that amount.

163.    Defendant did reasonably rely on Plaintiff's statements that her new monthly payment was $1,888.97 by submitting that amount in February 2010, and continuing to submit at least that amount in subsequent months

164.    Plaintiff, by way of its oral "agreement" with Defendant reached during a telephone call in March 2010, made a promise to Defendant that if she paid an increased monthly mortgage payment, she would make up the supposedly "missed" payments of January and February and remain current.

165.    Plaintiff's oral agreement was calculated or intended to induce Defendant to rely on it and submit increased monthly mortgage payments.

32

166.    Plaintiff knew or reasonably should have known that its promise to continue under the Modification Agreement in exchange for increased monthly mortgage payments would induce Defendant to make said increased payments.

167.    Defendant did reasonably rely on Plaintiff's representation by submitting increased monthly mortgage payments in April, June, and August 2010.

168.    Defendant relied on the Plaintiff's promises to her detriment. She is now declared to be in default and has lost the opportunity to pursue other strategies to avoid the alleged default and subsequent foreclosure.

THIRD COUNTERCLAIM: NEGLIGENCE

1-168.    Defendant Watley hereby incorporates the allegations of paragraphs 1 through 168 of her second counterclaim as though fully set forth herein.

169.    Plaintiff owed a duty of care to Defendant Watley to exercise the degree of skill normally expected of home mortgage lenders and servicers.

170.    Plaintiff or its agents breached its duty to Defendant by:

a.    Failing to prepare the Modification Agreement in a timely manner in accordance with the Home Affordable Modification Plan ("HAMP") rules, or so that it reasonably could become effective no later than November 1, 2009;

b.    Failing to correct the provision regarding the supposed first payment due date (November 1, 2009), which purported to make the date the first payment was "due" weeks before the date of the Modification Agreement (November 24, 2009) even though it was impossible for Defendant to make a payment on November 1, 2009;

33

c. Failing to abide by its own internal practices, as well as the general custom, pattern and practice in the mortgage servicing industry regarding loan modifications, which required that the first payment under the Modification Agreement (dated November 24, 2009) should have been due no earlier than January 1, 2010;

d. Failing to capitalize the payments required in November and December 2009, and instead erroneously collecting payments from Defendant for these months in contravention of HAMP and general industry practice;

e. Failing to abide by the contractual provision in the Modification Agreement that required Defendant's escrow shortage to be paid in monthly installments over the course of five years, rather than in twelve (12) larger installments or one lump sum;

f. Failing to investigate and correct any and all of its mistakes in calculating and applying Defendant's payments to the escrow shortage and/or backdating the Modification Agreement;

g. Refusing to accept Defendant's tender of her regular payment in May 2010, and instead instructing Defendant to resume payment in June 2010;

h. Notifying Defendant in September that her payments were due to increase to about $2,500 a month starting in November 2010, but then unexpectedly demanding a payment of $8,000 in October 2010 if Defendant wished to avoid being declared in default;

i. Refusing to accept Defendant's tender of her regular payment in October 2010;

    j.   Declaring Defendant to be in default in September or October 2010, even though she actually was current in her required payments;

    k.   Initiating a foreclosure action against Defendant on October 14, 2010, when Defendant was not yet delinquent, much less ninety days delinquent, as required under the Modification Agreement.

171.  Plaintiff's actions and failures to act caused Plaintiff erroneously to declare Defendant in default and to seek to foreclose on Defendant Watley's family home.

172.  Defendant Watley has been damaged financially as a result of Plaintiff's conduct. Such damage was reasonably foreseeable to Plaintiff at the time such conduct occurred.


## FOURTH COUNTERCLAIM: BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

1-172. Defendant Watley hereby incorporates the allegations of paragraphs 1 through 172 of her third counterclaim as though fully set forth herein.

173.  As alleged above in Defendant's First Counterclaim, the Modification Agreement between Plaintiff and Defendant constitutes a valid and enforceable contract for the payment of obligations under the Note and Mortgage. See supra paragraphs 134-138.

174.  The implied covenant of good faith and fair dealing required Plaintiff to deal fairly with Defendant and to act in good faith during the course of their contractual dealings.

175.  As described more fully above, Plaintiff engaged in conduct that injured Defendant's right to receive her contractual benefits. See supra paragraphs 132(a) – (p).

176.  In engaging in such conduct, Plaintiff acted with dishonest purpose and in bad faith in its contractual relations with Defendant Watley. This conduct violated the covenant of

good faith and fair dealing implied by the terms of the Modification Agreement between

Plaintiff and Defendant.

177.  Defendant has been damaged financially and emotionally as a result of Plaintiff's

conduct.


FIFTH COUNTERCLAIM: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS.

1-177. Defendant Watley hereby incorporates the allegations of paragraphs 1 through 177 of her

fourth counterclaim as though fully set forth herein.

178. Plaintiff's negligent and careless conduct, as described above, created an unreasonable

risk of causing Defendant Watley emotional distress, fear, mental stress, anxiety, and

anguish.

179. The distress and fear experienced by Defendant—that she would lose her home in which

she has lived for nearly four years with her husband and children—was reasonable in

light of Plaintiff's conduct.

180. Plaintiff knew or should have known that its conduct involved an unreasonable risk of

causing emotional distress to Defendant Watley when engaging in the above-described

conduct.

181. As the mortgage servicer of Defendant's mortgage and initiator of this foreclosure

action, Plaintiff was the cause of Defendant's distress.

182. The emotional distress caused by the Plaintiff—by threatening to foreclose on

Defendant's home— was severe enough that it may also have resulted in Defendant's

illness or bodily injury.

## SIXTH COUNTERCLAIM: VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT

1-182. Defendant Watley hereby incorporates the allegations of paragraphs 1 through 182 of her fifth counterclaim as though fully set forth herein.

183. Plaintiff is a person engaged in trade or commerce in the State of Connecticut within the meaning of Conn. Gen. Stat. § 42-110a.

184. The conduct of Plaintiff, as described above, violates the Connecticut public policy favoring the enforcement of contracts and violates the Connecticut public policy favoring good faith and fair dealing in residential mortgage transactions.

185. The conduct of Plaintiff, as described above, is immoral, unethical, oppressive, and unscrupulous.

186. The conduct of Plaintiff, as described above, has caused an ascertainable loss and substantial injury to Defendant Watley within the meaning of Conn. Gen. Stat. § 42-110g(a). As a result of said conduct, Defendant has suffered financial damages, as well as the emotional distress described above. The injury to Defendant is not outweighed by any countervailing benefits to consumers. Defendant took all reasonable measures to avoid said injury by complying with the terms of the Modification Agreement until Plaintiff's breaches.

187. Plaintiff's conduct, as described above, constitutes unfair and deceptive acts and practices in the conduct of trade or commerce in violation of Conn. Gen. Stat. § 42-110b.

188. Plaintiff GMAC Mortgage, LLC engaged in unfair and deceptive acts and practices willfully and knowingly.

189. The foregoing conduct of Plaintiff demonstrates calculated, deceitful, and unfair

conduct, and reckless indifference of Defendant Watley's rights. Accordingly, Defendant

Watley is entitled to punitive damages pursuant to Conn. Gen. Stat. § 42-110g(a).

190. Pursuant to Conn. Gen. Stat. § 42-110g(c), contemporaneous with the filing of this

counterclaim, Defendant Watley gave due notice of her claims to the Attorney General of

the State of Connecticut and to the Commissioner of Consumer Protection for the State of

Connecticut.


## DEMAND FOR RELIEF

WHEREFORE, Defendant Leslie Watley prays for judgment against Plaintiff as follows:

1. Dismissal of Plaintiff's claims;

2. Reinstatement of the proper terms of the Modification Agreement, as subsequently

   modified by Plaintiff;

3. Actual, consequential, incidental and punitive damages including:

   a. All amounts paid to Plaintiff GMAC Mortgage, LLC pursuant to the Modification

      Agreement;

   b. Disgorgement;

   c. Compensatory damages, punitive damages, damages for emotional distress, and

      attorneys' fees and costs pursuant to the Connecticut Unfair Trade Practices Act,

      Conn. Gen. Stat. § 42-110g.

4. Application of Defendant's accrued monthly benefit reduction ("Borrower Incentive") to

   Defendant's principal balance (in the amount of $5,000);

5. Correction of Defendant's credit reports, to acknowledge that this foreclosure action

ought not to have been brought at all;

6. Such other relief as law and equity may provide.

Respectfully submitted,

LESLIE D. WATLEY

BY: _____
J.L. Pottenger, Jr., Juris No. 101097
Jerome N. Frank Legal Services Organization
P.O. Box 209090
New Haven, CT 06520-9090
(203) 432-4800
(203) 432-1426 (fax)
j.pottenger@yale.edu

HER ATTORNEY

ON THE ANSWER, SPECIAL DEFENSES,
& COUNTERCLAIMS:

Lauren Blas
Yale Law School, Class of 2012

Caitlin Loftus
University of Connecticut, Class of 2012

Caitlin O'Brien
Yale Law School, Class of 2011

LAW STUDENT INTERNS

# EXHIBIT C

ORDER    428419

DOCKET NO: NNHCV106015961S

GMAC MORTGAGE, LLC
  V.
WATLEY, LESLIE

SUPERIOR COURT

JUDICIAL DISTRICT OF NEW HAVEN
   AT NEW HAVEN

8/2/2012

<u>ORDER</u>

ORDER REGARDING:
09/02/2011 120.00 MOTION FOR SUMMARY JUDGMENT

The foregoing, having been heard by the Court, is hereby:

ORDER: DENIED

Short Calendar Results Automated Mailing (SCRAM) Notice was sent on the underlying motion.

428419
_____

Judge: TERENCE ZEMETIS
Processed by: Kristy Porter

# EXHIBIT D

**Hearing Date: January 14, 2015 at 10:00 a.m. (Prevailing Eastern Time)**
**Response Deadline: December 10, 2014 4:00 p.m. (Prevailing Eastern Time)**

JEROME N. FRANK LEGAL
SERVICES ORGANIZATION
Yale Law School
P.O. Box 209090
New Haven, CT 06520-9090
Tel: 203-432-4800
Fax: 203-432-1426
J.L. Pottenger, Jr.

*Counsel for Leslie Watley*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No.  12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | December 10, 2014 |
| | ) | |

## AFFIDAVIT OF LESLIE WATLEY

I, Leslie D. Watley, being duly sworn, do hereby depose and state the following:

1. I am above the age of eighteen years and understand the obligation of oath.

2. I did not intentionally hide my counterclaims against GMAC from the Bankruptcy
   Court when I filed for bankruptcy. I never intended to mislead anyone about these
   counterclaims. Since both stem from the same mistakes by GMAC, I did not fully
   understand the legal differences between my special defenses and counterclaims. I
   did not know that the counterclaims were an 'asset' for purposes of my
   bankruptcy disclosures and did not know that I was required to list them in my
   bankruptcy schedules.

3.  I showed my bankruptcy attorney, Timothy Pletter, paperwork from the foreclosure case, but did not specifically call my counterclaims to his attention. Attorney Pletter did not discuss whether to list my counterclaims against GMAC as an asset on my bankruptcy schedules.

4.  Since learning that my counterclaims against GMAC are an asset for purposes of my bankruptcy, I have directed Attorney Pletter to reopen my bankruptcy and disclose the GMAC counterclaims. I am playing Attorney Pletter's fees and the filing fees associated with reopening the bankruptcy.

_____
Leslie D. Watley


Sworn to before me
This 9th day of December, 2014.

_____
Commissioner of the Superior Court
State of Connecticut


2

# EXHIBIT E

B1 (Official Form 1) (12/11)

© 1993-2012 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

| **Voluntary Petition**<br>*(This page must be completed and filed in every case)* | Name of Debtor(s):<br>Watley, Leslie D. |
|---|---|

| **All Prior Bankruptcy Case Filed Within Last 8 Years** (If more than two, attach additional sheet) | | |
|---|---|---|
| Location<br>Where Filed: **None** | Case Number: | Date Filed: |
| Location<br>Where Filed: | Case Number: | Date Filed: |

| **Pending Bankruptcy Case Filed by any Spouse, Partner or Affiliate of this Debtor** (If more than one, attach additional sheet) | | |
|---|---|---|
| Name of Debtor:<br>**None** | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

| **Exhibit A**<br>(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.)<br><br>☐ Exhibit A is attached and made a part of this petition. | **Exhibit B**<br>(To be completed if debtor is an individual whose debts are primarily consumer debts.)<br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I delivered to the debtor the notice required by 11 U.S.C. § 342(b).<br><br>X ___ */s/ Timothy M. Pletter* _____ 11/30/12<br>Signature of Attorney for Debtor(s) _____ Date |
|---|---|

| **Exhibit C** |
|---|
| Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?<br><br>☐ Yes, and Exhibit C is attached and made a part of this petition.<br>☑ No |

| **Exhibit D** |
|---|
| (To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)<br>☑ Exhibit D completed and signed by the debtor is attached and made a part of this petition.<br><br>If this is a joint petition:<br>☐ Exhibit D also completed and signed by the joint debtor is attached a made a part of this petition. |

| **Information Regarding the Debtor - Venue**<br>(Check any applicable box.) |
|---|
| ☑ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.<br><br>☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.<br><br>☐ Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District. |

| **Certification by a Debtor Who Resides as a Tenant of Residential Property**<br>(Check all applicable boxes.) |
|---|
| ☐ Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)<br><br>_____<br>(Name of landlord that obtained judgment)<br><br>_____<br>(Address of landlord)<br><br>☐ Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and<br><br>☐ Debtor has included in this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.<br><br>☐ Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)). |

© 1993-2012 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

## United States Bankruptcy Court
## District of Connecticut

**Voluntary Petition**

| Name of Debtor (if individual, enter Last, First, Middle):<br>**Watley, Leslie D.** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) /Complete EIN<br>(if more than one, state all):   **0978** | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) /Complete EIN<br>(if more than one, state all): |
| Street Address of Debtor (No. & Street, City, State & Zip Code):<br>**22 Conhurst Drive<br>North Haven, CT**              ZIPCODE **06473-0000** | Street Address of Joint Debtor (No. & Street, City, State & Zip Code):              ZIPCODE |
| County of Residence or of the Principal Place of Business:<br>**New Haven** | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address)              ZIPCODE | Mailing Address of Joint Debtor (if different from street address):              ZIPCODE |
| Location of Principal Assets of Business Debtor (if different from street address above):              ZIPCODE | |

**Type of Debtor**
(Form of Organization)
(Check **one** box.)

- ☑ Individual (includes Joint Debtors)
  *See Exhibit D on page 2 of this form.*
- ☐ Corporation (includes LLC and LLP)
- ☐ Partnership
- ☐ Other (If debtor is not one of the above entities, check this box and state type of entity below.)

**Chapter 15 Debtor**
Country of debtor's center of main interests:

Each country in which a foreign proceeding by, regarding, or against debtor is pending:

**Nature of Business**
(Check **one** box.)

- ☐ Health Care Business
- ☐ Single Asset Real Estate as defined in 11 U.S.C. § 101(51B)
- ☐ Railroad
- ☐ Stockbroker
- ☐ Commodity Broker
- ☐ Clearing Bank
- ☐ Other

**Tax-Exempt Entity**
(Check box, if applicable.)

- ☐ Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code).

**Chapter of Bankruptcy Code Under Which the Petition is Filed** (Check one box.)

- ☑ Chapter 7
- ☐ Chapter 9
- ☐ Chapter 11
- ☐ Chapter 12
- ☐ Chapter 13
- ☐ Chapter 15 Petition for Recognition of a Foreign Main Proceeding
- ☐ Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding

**Nature of Debts**
(Check one box.)

- ☑ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."
- ☐ Debts are primarily business debts.

**Filing Fee** (Check one box)

- ☑ Full Filing Fee attached
- ☐ Filing Fee to be paid in installments (Applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.
- ☐ Filing Fee waiver requested (Applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B.

**Chapter 11 Debtors**

Check one box:
- ☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).
- ☐ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).

Check if:
- ☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,343,300 (*amount subject to adjustment on 4/01/13 and every three years thereafter*).

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Check all applicable boxes:
- ☐ A plan is being filed with this petition
- ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

**Statistical/Administrative Information**

- ☐ Debtor estimates that funds will be available for distribution to unsecured creditors.
- ☑ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors.

THIS SPACE IS FOR COURT USE ONLY

Estimated Number of Creditors

| ☑ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| 1-49 | 50-99 | 100-199 | 200-999 | 1,000-5,000 | 5,001-10,000 | 10,001-25,000 | 25,001-50,000 | 50,001-100,000 | Over 100,000 |

Estimated Assets

| ☐ | ☐ | ☐ | ☑ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |

Estimated Liabilities

| ☐ | ☐ | ☐ | ☑ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |

B1 (Official Form 1) (12/11) | Page 3

## Voluntary Petition
*(This page must be completed and filed in every case)*

Name of Debtor(s):
**Watley, Leslie D.**

### Signatures

| Signature(s) of Debtor(s) (Individual/Joint) | Signature of a Foreign Representative |
|---|---|

Signature(s) of Debtor(s) (Individual/Joint)

I declare under penalty of perjury that the information provided in this petition is true and correct.

[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under Chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.

[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X **/s/ Leslie D. Watley**
Signature of Debtor                                    **Leslie D. Watley**

X _____
Signature of Joint Debtor

_____
Telephone Number (If not represented by attorney)

**November 30, 2012**
Date

Signature of a Foreign Representative

I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only **one** box.)

☐ I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. § 1515 are attached.

☐ Pursuant to 11 U.S.C. § 1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

X _____
Signature of Foreign Representative

_____
Printed Name of Foreign Representative

_____
Date

### Signature of Attorney*

X **/s/ Timothy M. Pletter**
Signature of Attorney for Debtor(s)

**Timothy M. Pletter ct16031**
**2019 Main Street**
**Stratford, CT**
**(203) 378-6675  Fax: (203) 612-9200**
**Pletterbk@gmail.com**

**November 30, 2012**
Date

*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect.

### Signature of Non-Attorney Petition Preparer

I declare under penalty of perjury that: 1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; 2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h) and 342(b); and 3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.

_____
Printed Name and title, if any,  of Bankruptcy Petition Preparer

_____
Social Security Number (If the bankruptcy petition preparer is not an individual, state the Social Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.) (Required by 11 U.S.C. § 110.)

_____
Address

X _____
Signature

_____
Date

Signature of Bankruptcy Petition Preparer or officer, principal, responsible person, or partner whose social security number is provided above.

Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual:

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both 11 U.S.C. § 110; 18 U.S.C. § 156.*

### Signature of Debtor (Corporation/Partnership)

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
Signature of Authorized Individual

_____
Printed Name of Authorized Individual

_____
Title of Authorized Individual

_____
Date

© 1993-2012 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

12-12020-mg  Doc 7851-1  Filed 12/10/14  Entered 12/10/14 15:13:17  Desc Main
Part 61  Page 4 of 41

**United States Bankruptcy Court**
**District of Connecticut**

IN RE:                                                                                            Case No. _____

Watley, Leslie D. _____  Chapter **7** _____
                          Debtor(s)

## DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR

1. Pursuant to 11 U.S.C. § 329(a) and Bankruptcy Rule 2016(b), I certify that I am the attorney for the above-named debtor(s) and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

   For legal services, I have agreed to accept  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____ **850.00**

   Prior to the filing of this statement I have received  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____ **850.00**

   Balance Due  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____ **0.00**

2. The source of the compensation paid to me was:  ☑ Debtor  ☐ Other (specify):

3. The source of compensation to be paid to me is:  ☐ Debtor  ☐ Other (specify):

4. ☑ I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

   ☐ I have agreed to share the above-disclosed compensation with a person or persons who are not members or associates of my law firm. A copy of the agreement, together with a list of the names of the people sharing in the compensation, is attached.

5. In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:

   a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
   b. Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
   c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
   d. ~~Representation of the debtor in adversary proceedings and other contested bankruptcy matters;~~
   e. [Other provisions as needed]

6. By agreement with the debtor(s), the above disclosed fee does not include the following services:

© 1993-2012 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

CERTIFICATION

I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding.

_____  **November 30, 2012**        /s/ Timothy M. Pletter
                          Date                                                     **Timothy M. Pletter ct16031**
                                                                                 **2019 Main Street**
                                                                                 **Stratford, CT**
                                                                                 **(203) 378-6675  Fax: (203) 612-9200**
                                                                                 **Pletterbk@gmail.com**

© 1993-2012 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

# UNITED STATES BANKRUPTCY COURT

## NOTICE TO CONSUMER DEBTOR(S) UNDER §342(b)
## OF THE BANKRUPTCY CODE

In accordance with § 342(b) of the Bankruptcy Code, this notice to individuals with primarily consumer debts: (1) Describes briefly the services available from credit counseling services; (2) Describes briefly the purposes, benefits and costs of the four types of bankruptcy proceedings you may commence; and (3) Informs you about bankruptcy crimes and notifies you that the Attorney General may examine all information you supply in connection with a bankruptcy case.

You are cautioned that bankruptcy law is complicated and not easily described. Thus, you may wish to seek the advice of an attorney to learn of your rights and responsibilities should you decide to file a petition. Court employees cannot give you legal advice.

Notices from the bankruptcy court are sent to the mailing address you list on your bankruptcy petition. In order to ensure that you receive information about events concerning your case, Bankruptcy Rule 4002 requires that you notify the court of any changes in your address. If you are filing a joint case (a single bankruptcy case for two individuals married to each other), and each spouse lists the same mailing address on the bankruptcy petition, you and your spouse will generally receive a single copy of each notice mailed from the bankruptcy court in a jointly-addressed envelope, unless you file a statement with the court requesting that each spouse receive a separate copy of all notices.

## 1. Services Available from Credit Counseling Agencies

**With limited exceptions, § 109(h) of the Bankruptcy Code requires that all individual debtors who file for bankruptcy relief on or after October 17, 2005, receive a briefing that outlines the available opportunities for credit counseling and provides assistance in performing a budget analysis.** The briefing must be given within 180 days **before** the bankruptcy filing. The briefing may be provided individually or in a group (including briefings conducted by telephone or on the Internet) and must be provided by a nonprofit budget and credit counseling agency approved by the United States trustee or bankruptcy administrator. The clerk of the bankruptcy court has a list that you may consult of the approved budget and credit counseling agencies. Each debtor in a joint case must complete the briefing.

**In addition, after filing a bankruptcy case, an individual debtor generally must complete a financial management instructional course before he or she can receive a discharge.** The clerk also has a list of approved financial management instructional courses. Each debtor in a joint case must complete the course.

## 2. The Four Chapters of the Bankruptcy Code Available to Individual Consumer Debtors

### Chapter 7: Liquidation ($245 filing fee, $46 administrative fee, $15 trustee surcharge: Total fee $306)

Chapter 7 is designed for debtors in financial difficulty who do not have the ability to pay their existing debts. Debtors whose debts are primarily consumer debts are subject to a "means test" designed to determine whether the case should be permitted to proceed under chapter 7. If your income is greater than the median income for your state of residence and family size, in some cases, the United States trustee (or bankruptcy administrator), the trustee, or creditors have the right to file a motion requesting that the court dismiss your case under § 707(b) of the Code. It is up to the court to decide whether the case should be dismissed.

Under chapter 7, you may claim certain of your property as exempt under governing law. A trustee may have the right to take possession of and sell the remaining property that is not exempt and use the sale proceeds to pay your creditors.

The purpose of filing a chapter 7 case is to obtain a discharge of your existing debts. If, however, you are found to have committed certain kinds of improper conduct described in the Bankruptcy Code, the court may deny your

© 1993-2012 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

discharge and, if it does, the purpose for which you filed the bankruptcy petition will be defeated.

Even if you receive a general discharge, some particular debts are not discharged under the law. Therefore, you may still be responsible for most taxes and student loans; debts incurred to pay nondischargeable taxes; domestic support and property settlement obligations; most fines, penalties, forfeitures, and criminal restitution obligations; certain debts which are not properly listed in your bankruptcy papers; and debts for death or personal injury caused by operating a motor vehicle, vessel, or aircraft while intoxicated from alcohol or drugs. Also, if a creditor can prove that a debt arose from fraud, breach of fiduciary duty, or theft, or from a willful and malicious injury, the bankruptcy court may determine that the debt is not discharged.

**Chapter 13: Repayment of All or Part of the Debts of an Individual with Regular Income ($235 filing fee, $46 administrative fee: Total fee $281)**

Chapter 13 is designed for individuals with regular income who would like to pay all or part of their debts in installments over a period of time. You are only eligible for chapter 13 if your debts do not exceed certain dollar amounts set forth in the Bankruptcy Code.

Under chapter 13, you must file with the court a plan to repay your creditors all or part of the money that you owe them, using your future earnings. The period allowed by the court to repay your debts may be three years or five years, depending upon your income and other factors. The court must approve your plan before it can take effect.

After completing the payments under your plan, your debts are generally discharged except for domestic support obligations; most student loans; certain taxes; most criminal fines and restitution obligations; certain debts which are not properly listed in your bankruptcy papers; certain debts for acts that caused death or personal injury; and certain long term secured obligations.

**Chapter 11: Reorganization ($1000 filing fee, $46 administrative fee: Total fee $1046)**

Chapter 11 is designed for the reorganization of a business but is also available to consumer debtors. Its provisions are quite complicated, and any decision by an individual to file a chapter 11 petition should be reviewed with an attorney.

**Chapter 12: Family Farmer or Fisherman ($200 filing fee, $46 administrative fee: Total fee $246)**

Chapter 12 is designed to permit family farmers and fishermen to repay their debts over a period of time from future earnings and is similar to chapter 13. The eligibility requirements are restrictive, limiting its use to those whose income arises primarily from a family-owned farm or commercial fishing operation.

**3. Bankruptcy Crimes and Availability of Bankruptcy Papers to Law Enforcement Officials**

A person who knowingly and fraudulently conceals assets or makes a false oath or statement under penalty of perjury, either orally or in writing, in connection with a bankruptcy case is subject to a fine, imprisonment, or both. All information supplied by a debtor in connection with a bankruptcy case is subject to examination by the Attorney General acting through the Office of the United States Trustee, the Office of the United States Attorney, and other components and employees of the Department of Justice.

**WARNING:** Section 521(a)(1) of the Bankruptcy Code requires that you promptly file detailed information regarding your creditors, assets, liabilities, income, expenses and general financial condition. Your bankruptcy case may be dismissed if this information is not filed with the court within the time deadlines set by the Bankruptcy Code, the Bankruptcy Rules, and the local rules of the court. The documents and the deadlines for filing them are listed on Form B200, which is posted at http://www.uscourts.gov/bkforms/bankruptcy_forms.html#procedure.

B201B (Form 201B) (12/09)

**United States Bankruptcy Court**
**District of Connecticut**

IN RE: | Case No. _____
---|---
Watley, Leslie D. _____ | Chapter **7** _____
Debtor(s) |

## CERTIFICATION OF NOTICE TO CONSUMER DEBTOR(S)
## UNDER § 342(b) OF THE BANKRUPTCY CODE

### Certificate of [Non-Attorney] Bankruptcy Petition Preparer

I, the [non-attorney] bankruptcy petition preparer signing the debtor's petition, hereby certify that I delivered to the debtor the attached notice, as required by § 342(b) of the Bankruptcy Code.

_____
Printed Name and title, if any, of Bankruptcy Petition Preparer
Address:
_____

_____
**X** _____
Signature of Bankruptcy Petition Preparer of officer, principal, responsible person, or partner whose Social Security number is provided above.

Social Security number (If the bankruptcy petition preparer is not an individual, state the Social Security number of the officer, principal, responsible person, or partner of the bankruptcy petition preparer.) (Required by 11 U.S.C. § 110.)

### Certificate of the Debtor

I (We), the debtor(s), affirm that I (we) have received and read the attached notice, as required by § 342(b) of the Bankruptcy Code.

Watley, Leslie D. _____ | **X** **/s/ Leslie D. Watley** _____ | **11/30/2012**
---|---|---
Printed Name(s) of Debtor(s) | Signature of Debtor | Date
Case No. (if known) _____ | **X** _____ |
 | Signature of Joint Debtor (if any) | Date

**Instructions:** Attach a copy of Form B 201A, Notice to Consumer Debtor(s) Under § 342(b) of the Bankruptcy Code.

Use this form to certify that the debtor has received the notice required by 11 U.S.C. § 342(b) **only** if the certification has **NOT** been made on the Voluntary Petition, Official Form B1. Exhibit B on page 2 of Form B1 contains a certification by the debtor's attorney that the attorney has given the notice to the debtor. The Declarations made by debtors and bankruptcy petition preparers on page 3 of Form B1 also include this certification.

© 1993-2012 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

B1D (Official Form 1, Exhibit D) (12/09)

## United States Bankruptcy Court
### District of Connecticut

IN RE:                                  Case No. _____

**Watley, Leslie D.** _____ Chapter **7** _____

Debtor(s)

### EXHIBIT D - INDIVIDUAL DEBTOR'S STATEMENT OF COMPLIANCE
### CREDIT COUNSELING REQUIREMENT

**Warning: You must be able to check truthfully one of the five statements regarding credit counseling listed below. If you cannot do so, you are not eligible to file a bankruptcy case, and the court can dismiss any case you do file. If that happens, you will lose whatever filing fee you paid, and your creditors will be able to resume collection activities against you. If your case is dismissed and you file another bankruptcy case later, you may be required to pay a second filing fee and you may have to take extra steps to stop creditors' collection activities.**

*Every individual debtor must file this Exhibit D. If a joint petition is filed, each spouse must complete and file a separate Exhibit D. Check one of the five statements below and attach any documents as directed.*

☑ 1. Within the 180 days **before the filing of my bankruptcy case**, I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, and I have a certificate from the agency describing the services provided to me. *Attach a copy of the certificate and a copy of any debt repayment plan developed through the agency.*

☐ 2. Within the 180 days **before the filing of my bankruptcy case**, I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, but I do not have a certificate from the agency describing the services provided to me. *You must file a copy of a certificate from the agency describing the services provided to you and a copy of any debt repayment plan developed through the agency no later than 14 days after your bankruptcy case is filed.*

☐ 3. I certify that I requested credit counseling services from an approved agency but was unable to obtain the services during the seven days from the time I made my request, and the following exigent circumstances merit a temporary waiver of the credit counseling requirement so I can file my bankruptcy case now. *[Summarize exigent circumstances here.]*

**If your certification is satisfactory to the court, you must still obtain the credit counseling briefing within the first 30 days after you file your bankruptcy petition and promptly file a certificate from the agency that provided the counseling, together with a copy of any debt management plan developed through the agency. Failure to fulfill these requirements may result in dismissal of your case. Any extension of the 30-day deadline can be granted only for cause and is limited to a maximum of 15 days. Your case may also be dismissed if the court is not satisfied with your reasons for filing your bankruptcy case without first receiving a credit counseling briefing.**

☐ 4. I am not required to receive a credit counseling briefing because of: *[Check the applicable statement.] [Must be accompanied by a motion for determination by the court.]*

    ☐ Incapacity. (Defined in 11 U.S.C. § 109(h)(4) as impaired by reason of mental illness or mental deficiency so as to be incapable of realizing and making rational decisions with respect to financial responsibilities.);

    ☐ Disability. (Defined in 11 U.S.C. § 109(h)(4) as physically impaired to the extent of being unable, after reasonable effort, to participate in a credit counseling briefing in person, by telephone, or through the Internet.);

    ☐ Active military duty in a military combat zone.

☐ 5. The United States trustee or bankruptcy administrator has determined that the credit counseling requirement of 11 U.S.C. § 109(h) does not apply in this district.

**I certify under penalty of perjury that the information provided above is true and correct.**

Signature of Debtor: **/s/ Leslie D. Watley** _____

Date: **November 30, 2012** _____

© 1993-2012 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

**United States Bankruptcy Court**
**District of Connecticut**

IN RE:                                                                Case No. _____

**Watley, Leslie D.** _____ Chapter **7** _____
                            Debtor(s)

## SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each. Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided. Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors also must complete the "Statistical Summary of Certain Liabilities and Related Data" if they file a case under chapter 7, 11, or 13.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NUMBER OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | Yes | 1 | $    406,300.00 | | |
| B - Personal Property | Yes | 3 | $    121,761.86 | | |
| C - Property Claimed as Exempt | Yes | 1 | | | |
| D - Creditors Holding Secured Claims | Yes | 1 | | $    451,812.00 | |
| E - Creditors Holding Unsecured Priority Claims (Total of Claims on Schedule E) | Yes | 2 | | $    1.00 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 6 | | $    161,076.54 | |
| G - Executory Contracts and Unexpired Leases | Yes | 1 | | | |
| H - Codebtors | Yes | 1 | | | |
| I - Current Income of Individual Debtor(s) | Yes | 2 | | | $    3,826.61 |
| J - Current Expenditures of Individual Debtor(s) | Yes | 1 | | | $    4,518.25 |
| TOTAL | | 19 | $    528,061.86 | $    612,889.54 | |

© 1993-2012 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

**United States Bankruptcy Court**
**District of Connecticut**

IN RE:                                                    Case No. _____

Watley, Leslie D. _____             Chapter **7** _____
                        Debtor(s)

## STATISTICAL SUMMARY OF CERTAIN LIABILITIES AND RELATED DATA (28 U.S.C. § 159)

If you are an individual debtor whose debts are primarily consumer debts, as defined in § 101(8) of the Bankruptcy Code (11 U.S.C. § 101(8)), filing a case under chapter 7, 11 or 13, you must report all information requested below.

☐ Check this box if you are an individual debtor whose debts are NOT primarily consumer debts. You are not required to report any information here.

**This information is for statistical purposes only under 28 U.S.C. § 159.**

**Summarize the following types of liabilities, as reported in the Schedules, and total them.**

| Type of Liability | | Amount |
|---|---|---|
| Domestic Support Obligations (from Schedule E) | $ | 0.00 |
| Taxes and Certain Other Debts Owed to Governmental Units (from Schedule E) | $ | 1.00 |
| Claims for Death or Personal Injury While Debtor Was Intoxicated (from Schedule E) (whether disputed or undisputed) | $ | 0.00 |
| Student Loan Obligations (from Schedule F) | $ | 6,841.00 |
| Domestic Support, Separation Agreement, and Divorce Decree Obligations Not Reported on Schedule E | $ | 0.00 |
| Obligations to Pension or Profit-Sharing, and Other Similar Obligations (from Schedule F) | $ | 0.00 |
| **TOTAL** | $ | **6,842.00** |

**State the following:**

| | | |
|---|---|---|
| Average Income (from Schedule I, Line 16) | $ | 3,826.61 |
| Average Expenses (from Schedule J, Line 18) | $ | 4,518.25 |
| Current Monthly Income (from Form 22A Line 12; **OR**, Form 22B Line 11; **OR**, Form 22C Line 20 ) | $ | 6,431.05 |

**State the following:**

| | | | |
|---|---|---|---|
| 1. Total from Schedule D, "UNSECURED PORTION, IF ANY" column | | $ | 33,512.00 |
| 2. Total from Schedule E, "AMOUNT ENTITLED TO PRIORITY" column. | $ 1.00 | | |
| 3. Total from Schedule E, "AMOUNT NOT ENTITLED TO PRIORITY, IF ANY" column | | $ | 0.00 |
| 4. Total from Schedule F | | $ | 161,076.54 |
| 5. Total of non-priority unsecured debt (sum of 1, 3, and 4) | | $ | 194,588.54 |

© 1993-2012 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

**B6A (Official Form 6A) (12/07)**

**IN RE** Watley, Leslie D.                                                                 Case No. _____
  _____
  Debtor(s)                                                                                                    (If known)

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether the husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| DESCRIPTION AND LOCATION OF PROPERTY | NATURE OF DEBTOR'S INTEREST IN PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION | AMOUNT OF SECURED CLAIM |
|---|---|---|---|---|
| 22 Conhurst Drive, North Haven, CT | 100% fee simple | W | 406,300.00 | 436,858.00 |
| | | **TOTAL** | **406,300.00** | |

(Report also on Summary of Schedules)

© 1993-2012 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

B6B (Official Form 6B) (12/07)

IN RE **Watley, Leslie D.**                                                                     Case No. _____
_____
        Debtor(s)                                                                                      (If known)

# SCHEDULE B - PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether the husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

**Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property." If the property is being held for a minor child, simply state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 1.  Cash on hand. | | **Cash on hand** | | **50.00** |
| 2.  Checking, savings or other financial accounts, certificates of deposit or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | **Connex Credit Union account checking account** | | **5.00** |
| | | **Connex Credit Union saving account** | | **0.01** |
| | | **Connex Credit Union saving account** | | **0.01** |
| | | **Connex Credit Union saving account** | | **0.05** |
| | | **Connex Credit Union saving account (zero balance)** | | **0.00** |
| | | **ING checking account** | W | **38.13** |
| | | **ING savings account** | | **1,985.62** |
| | | **USAA Federal Savings Bank checking account** | J | **1,025.76** |
| | | **USAA Federal Savings Bank checking account** | W | **514.65** |
| | | **USAA Federal Savings Bank savings account** | W | **9.20** |
| | | **USAA Federal Savings Bank savings account** | W | **818.05** |
| | | **USAA Federal Savings Bank savings account** | W | **141.08** |
| | | **USAA Federal Savings Bank savings account** | W | **150.18** |
| | | **USAA Federal Savings Bank savings account** | W | **3,024.12** |
| 3.  Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4.  Household goods and furnishings, include audio, video, and computer equipment. | | **Household goods and furnishings** | | **5,000.00** |
| 5.  Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6.  Wearing apparel. | | **Clothing** | | **500.00** |
| 7.  Furs and jewelry. | | **Jewelry** | | **500.00** |
| 8.  Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9.  Interest in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |
| 10. Annuities. Itemize and name each issue. | X | | | |

© 1993-2012 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

**B6B (Official Form 6B) (12/07) – Cont.**

IN RE <u>Watley, Leslie D.</u>                                                                    Case No. _____
  _____                         _____
                     Debtor(s)                                                        (If known)

## SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

© 1993-2012 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | | 401k with AT&T | | 93,000.00 |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and non-negotiable instruments. | X | | | |
| 16. Accounts receivable. | X | | | |
| 17. Alimony, maintenance, support, and property settlements in which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | X | | | |
| 19. Equitable or future interest, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | | 2012 income tax refund | | 3,000.00 |
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | | 2010 Hyundai Elantra (43,000 miles) | | 12,000.00 |

**B6B (Official Form 6B) (12/07) – Cont.**

IN RE __Watley, Leslie D._____     Case No. _____
                          Debtor(s)                                (If known)

## SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| TYPE OF PROPERTY | NONE | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | X | | | |
| 29. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |

TOTAL  121,761.86

_____ **0** continuation sheets attached

(Include amounts from any continuation sheets attached.
Report total also on Summary of Schedules.)

© 1993-2012 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

**B6C (Official Form 6C) (04/10)**

**IN RE** <u>Watley, Leslie D.</u>                                   Case No. _____
                        Debtor(s)                                              (If known)

## SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

Debtor elects the exemptions to which debtor is entitled under:          ☐ Check if debtor claims a homestead exemption that exceeds $146,450. *
(Check one box)
☑ 11 U.S.C. § 522(b)(2)
☐ 11 U.S.C. § 522(b)(3)

| DESCRIPTION OF PROPERTY | SPECIFY LAW PROVIDING EACH EXEMPTION | VALUE OF CLAIMED EXEMPTION | CURRENT VALUE OF PROPERTY WITHOUT DEDUCTING EXEMPTIONS |
|---|---|---|---|
| **SCHEDULE B - PERSONAL PROPERTY** | | | |
| **Cash on hand** | **11 USC § 522(d)(5)** | 50.00 | 50.00 |
| **Connex Credit Union account checking account** | **11 USC § 522(d)(5)** | 5.00 | 5.00 |
| **ING checking account** | **11 USC § 522(d)(5)** | 38.13 | 38.13 |
| **ING savings account** | **11 USC § 522(d)(5)** | 1,985.62 | 1,985.62 |
| **USAA Federal Savings Bank checking account** | **11 USC § 522(d)(5)** | 1,025.76 | 1,025.76 |
| **USAA Federal Savings Bank checking account** | **11 USC § 522(d)(5)** | 514.65 | 514.65 |
| **USAA Federal Savings Bank savings account** | **11 USC § 522(d)(5)** | 9.20 | 9.20 |
| **USAA Federal Savings Bank savings account** | **11 USC § 522(d)(5)** | 818.05 | 818.05 |
| **USAA Federal Savings Bank savings account** | **11 USC § 522(d)(5)** | 141.08 | 141.08 |
| **USAA Federal Savings Bank savings account** | **11 USC § 522(d)(5)** | 150.18 | 150.18 |
| **USAA Federal Savings Bank savings account** | **11 USC § 522(d)(5)**<br>**11 USC § 522(d)(5)** | 74.24<br>2,949.88 | 3,024.12 |
| **Household goods and furnishings** | **11 USC § 522(d)(3)** | 5,000.00 | 5,000.00 |
| **Clothing** | **11 USC § 522(d)(3)** | 500.00 | 500.00 |
| **Jewelry** | **11 USC § 522(d)(4)** | 500.00 | 500.00 |
| **401k with AT&T** | **11 USC Section 541(c)(2)** | 93,000.00 | 93,000.00 |
| **2012 income tax refund** | **11 USC § 522(d)(5)** | 3,000.00 | 3,000.00 |

*Amount subject to adjustment on 4/1/13 and every three years thereafter with respect to cases commenced on or after the date of adjustment.*

B6D (Official Form 6D) (12/07)

IN RE  Watley, Leslie D.                                              Case No. _____
                        Debtor(s)                                                        (If known)

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is the creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H – Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim Without Deducting Value of Collateral" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion, if Any" on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE AND ACCOUNT NUMBER. *(See Instructions Above.)* | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br><br>**GMAC Mortgage**<br>**3451 Hammond Avenue**<br>**Waterloo, IA  50704-0205** | | W | **Mortgage on 22 Conhurst Drive, North Haven, CT**<br><br>VALUE $ **406,300.00** | | | | **436,858.00** | **30,558.00** |
| ACCOUNT NO.<br><br>**Dowley & Associates**<br>**116 Washington Street**<br>**Middletown, CT  06457-0000** | | | **Assignee or other notification for:**<br>**GMAC Mortgage**<br><br>VALUE $ | | | | | |
| ACCOUNT NO.<br><br>**Hunt Leibert Jacobson PC**<br>**50 Weston Street**<br>**Hartford, CT  06120** | | | **Assignee or other notification for:**<br>**GMAC Mortgage**<br><br>VALUE $ | | | | | |
| ACCOUNT NO. **3000010415757 xxxx**<br><br>**Santander Consumer USA**<br>**P.O. Box 961245**<br>**Forth Worth, TX  76161** | | | **Car loan on 2010 Hyundai Elantra (2012)**<br><br>VALUE $ **12,000.00** | | | | **14,954.00** | **2,954.00** |

____**0**____ continuation sheets attached

Subtotal
(Total of this page) $ 451,812.00  $ 33,512.00

Total
(Use only on last page) $ 451,812.00  $ 33,512.00

(Report also on Summary of Schedules.)     (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.)

© 1993-2012 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

12-12020-mg    Doc 7851-1    Filed 12/10/14    Entered 12/10/14 14:34:28    Exhibit
Document    Pg 74 of 105

Case No. (Official Form 6E) (04/10)    12-12020-mg    Doc 7851-1    Filed 12/10/14    Entered 12/10/14 15:13:14    Desc Main
Document    Pg 74 of 105    Page 17 of 41

**B6E (Official Form 6E) (04/10)**

**IN RE** Watley, Leslie D. _____    Case No. _____
                    Debtor(s)                                    (If known)

## SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

    A complete list of claims entitled to priority, listed separately by type of priority, is to be set forth on the sheets provided. Only holders of unsecured claims entitled to priority should be listed in this schedule. In the boxes provided on the attached sheets, state the name, mailing address, including zip code, and last four digits of the account number, if any, of all entities holding priority claims against the debtor or the property of the debtor, as of the date of the filing of the petition. Use a separate continuation sheet for each type of priority and label each with the type of priority.

    The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

    If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

    Report the total of claims listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all claims listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

    Report the total of amounts entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts report this total also on the Statistical Summary of Certain Liabilities and Related Data.

    Report the total of amounts not entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts not entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

**TYPES OF PRIORITY CLAIMS** (Check the appropriate box(es) below if claims in that category are listed on the attached sheets)

☐ **Domestic Support Obligations**
    Claims for domestic support that are owed to or recoverable by a spouse, former spouse, or child of the debtor, or the parent, legal guardian, or responsible relative of such a child, or a governmental unit to whom such a domestic support claim has been assigned to the extent provided in 11 U.S.C. § 507(a)(1).

☐ **Extensions of credit in an involuntary case**
    Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief. 11 U.S.C. § 507(a)(3).

☐ **Wages, salaries, and commissions**
    Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $11,725* per person earned within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(4).

☐ **Contributions to employee benefit plans**
    Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(5).

☐ **Certain farmers and fishermen**
    Claims of certain farmers and fishermen, up to $5,775* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(6).

☐ **Deposits by individuals**
    Claims of individuals up to $2,600* for deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered or provided. 11 U.S.C. § 507(a)(7).

☑ **Taxes and Certain Other Debts Owed to Governmental Units**
    Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C. § 507(a)(8).

☐ **Commitments to Maintain the Capital of an Insured Depository Institution**
    Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution. 11 U.S.C. § 507 (a)(9).

☐ **Claims for Death or Personal Injury While Debtor Was Intoxicated**
    Claims for death or personal injury resulting from the operation of a motor vehicle or vessel while the debtor was intoxicated from using alcohol, a drug, or another substance. 11 U.S.C. § 507(a)(10).

    * Amounts are subject to adjustment on 4/01/13, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

_____ **1** continuation sheets attached

© 1993-2012 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

B6E (Official Form 6E) (04/10) - Cont.

**IN RE** Watley, Leslie D. _____    Case No. _____
                            Debtor(s)                                                   (If known)

## SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS
### (Continuation Sheet)

### Taxes and Other Certain Debts Owed to Governmental Units
(Type of Priority for Claims Listed on This Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE AND ACCOUNT NUMBER. *(See Instructions above.)* | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM | AMOUNT ENTITLED TO PRIORITY | AMOUNT NOT ENTITLED TO PRIORITY, IF ANY |
|---|---|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br><br>**Internal Revenue Services**<br>**P.O. Box 21126**<br>**Philadelphia, PA  19114** | | | **2010 income taxes** | | | | **1.00** | **1.00** | |
| ACCOUNT NO. | | | | | | | | | |
| ACCOUNT NO. | | | | | | | | | |
| ACCOUNT NO. | | | | | | | | | |
| ACCOUNT NO. | | | | | | | | | |
| ACCOUNT NO. | | | | | | | | | |

Sheet no. __1__ of __1__ continuation sheets attached to
Schedule of Creditors Holding Unsecured Priority Claims

| | | |
|---|---|---|
| Subtotal<br>(Totals of this page) | $ **1.00** | $ **1.00** | $ |
| Total<br>(Use only on last page of the completed Schedule E. Report also on the Summary of Schedules.) | $ **1.00** | | |
| Total<br>(Use only on last page of the completed Schedule E. If applicable, report also on the Statistical Summary of Certain Liabilities and Related Data.) | | $ **1.00** | $ |

© 1993-2012 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

B6F (Official Form 6F) (12/07)

**IN RE** <u>Watley, Leslie D.</u>                                                                                       Case No. _____
Debtor(s)                                                                                       (If known)

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding unsecured nonpriority claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER. *(See Instructions Above.)* | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO. **4227 0937 1111 xxxx**<br><br>**Applied Bank**<br>**P.O. Box 10210**<br>**Wilmington, DE  19850** | | | **Credit card debt. (2006-2011)** | | | | **2,494.00** |
| ACCOUNT NO. **5140 2190 0162 xxxx**<br><br>**Barclays**<br>**Bank Of Delaware**<br>**125 S West Street**<br>**Wilmington, DE  19801** | | | **Credit card debt.  (2006-2011)** | | | | **7,917.00** |
| ACCOUNT NO. **5140 2188 9542 xxxx**<br><br>**Barclays**<br>**Bank Of Delaware**<br>**125 S West Street**<br>**Wilmington, DE  19801** | | | **Credit card debt. (2006-2011)** | | | | **15,882.00** |
| ACCOUNT NO. **5120 2550 8670 xxxx**<br><br>**Capital One**<br>**P.O. Box 5253**<br>**Carol Stream, IL  60107** | | | **Credit card debt. (2006-2011)** | | | | **473.00** |

<u>    5    </u> continuation sheets attached

| | |
|---|---|
| Subtotal (Total of this page) | $ **26,766.00** |
| Total (Use only on last page of the completed Schedule F. Report also on the Summary of Schedules and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data.) | $ |

© 1993-2012 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

B6F (Official Form 6F) (12/07) - Cont.

IN RE **Watley, Leslie D.** _____     Case No. _____
                                Debtor(s)                                                  (If known)

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER. *(See Instructions Above.)* | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO. **1391 xxxx** <br> **Cavalry Portfolio Service** <br> **P.O. Box 27288** <br> **Tempe, AZ  85285** | | | Debt. (2006-2011) (Original creditor:  Wells Fargo) | | | | 3,299.00 |
| ACCOUNT NO. **CV11-6017111S** <br> **Cavalry SPV I, LLC** <br> **C/O Tobin & Melien** <br> **45 Court Street** <br> **New Haven, CT  06511** | | | Judgment/wage garnishment. (2011) | | | | 1.00 |
| ACCOUNT NO. **4266 9020 2756 xxxx** <br> **Chase//Bank One Card Service** <br> **P.O. Box 15153** <br> **Wilmington, DE  19850** | | | Credit card debt. (2006-2011) | | | | 8,804.00 |
| ACCOUNT NO. <br> **Connex Credit Union** <br> **P.O. Box 477** <br> **North Haven, CT  06473** | | | Debt. (2006-2011) | | | | 15,000.00 |
| ACCOUNT NO. **6011 2089 2124 xxxx** <br> **Discover** <br> **P.O. Box 15316** <br> **Wilmington, DE  19886-5251** | | | Credit card debt. (2006-2011) | | | | 7,511.00 |
| ACCOUNT NO. **4663 0900 0856 xxxx** <br> **HSBC** <br> **P.O. Box 17313** <br> **Baltimore, MD  21297-1313** | | | Credit card debt. (2006-2011) | | | | 579.00 |
| ACCOUNT NO. **39594907001** <br> **I. C. System, Inc.** <br> **444 Highway 96 East** <br> **St. Paul, MN  55164-0887** | | | Debt. (2006-2011) (original creditor: United Illuminating) (also account #39603067001) | | | | 1,431.00 |

Sheet no. **1** of **5** continuation sheets attached to
Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page) | $ 36,625.00

Total
(Use only on last page of the completed Schedule F. Report also on
the Summary of Schedules, and if applicable, on the Statistical
Summary of Certain Liabilities and Related Data.) | $

© 1993-2012 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

B6F (Official Form 6F) (12/07) - Cont.

IN RE Watley, Leslie D.                            Case No. _____
                   Debtor(s)                                            (If known)

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER. *(See Instructions Above.)* | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO. <br> **United Illuminating** <br> **157 Church Street** <br> **New Haven, CT 06510-2100** | | | Assignee or other notification for: <br> I. C. System, Inc. | | | | |
| ACCOUNT NO. **4254109xxxx** <br> **I. C. System, Inc.** <br> **444 Highway 96 East** <br> **St. Paul, MN 55164-0887** | | | Debt. (2006-2011) (Original creditor: AT&T) | | | | 217.00 |
| ACCOUNT NO. <br> **Internal Revenue Services** <br> **P.O. Box 21126** <br> **Philadelphia, PA 19114** | | | 2007 and 2008 Income taxes. | | | | 17,239.00 |
| ACCOUNT NO. **4171615 xxxx** <br> **Kohl's** <br> **P.O. Box 2983** <br> **Milwaukee, WI 53201-2983** | | | Credit card debt. (2006-2011) | | | | 1,455.00 |
| ACCOUNT NO. <br> **LVNV Funding** <br> **P.O. Box 10584** <br> **Greenville, SC 29603** | | | Debt. (2006-2011) (original creditor: Capital One) | | | | 2,589.00 |
| ACCOUNT NO. <br> **Capital One** <br> **P.O. Box 30281** <br> **Salt Lake City, UT 84130** | | | Assignee or other notification for: <br> LVNV Funding | | | | |
| ACCOUNT NO. <br> **Solomon & Solomon PC** <br> **P.O. Box 15019** <br> **Albany, NY 12212** | | | Assignee or other notification for: <br> LVNV Funding | | | | |

Sheet no. **2** of **5** continuation sheets attached to
Schedule of Creditors Holding Unsecured Nonpriority Claims

                               Subtotal
                         (Total of this page) $ **21,500.00**

                               Total
(Use only on last page of the completed Schedule F. Report also on
the Summary of Schedules, and if applicable, on the Statistical
Summary of Certain Liabilities and Related Data.) $

© 1993-2012 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

B6F (Official Form 6F) (12/07) - Cont.

IN RE **Watley, Leslie D.**                                                                            Case No. _____
_____
Debtor(s)                                                                                           (If known)

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER. *(See Instructions Above.)* | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO. **854646** <br> **Midland Funding, LLC** <br> **8875 Aero Drive, Suite 200** <br> **San Diego, CA 92123** | | | **Debt. (2006-2011) (Original creditor: CIT Bank)** | | | | **5,500.00** |
| ACCOUNT NO. **853548 xxxx** <br> **Midland Funding, LLC** <br> **8875 Aero Drive, Suite 200** <br> **San Diego, CA 92123** | | | **Debt. (2006-2011) (Original creditor: Cltibank)** | | | | **4,303.00** |
| ACCOUNT NO. <br> **North Star Capital Acquisition, LLC** <br> **C/O Solomon & Solomon** <br> **P.O. Box 15019** <br> **Albany, NY 12212-5019** | | | **Debt. (2006-2011)** | | | | **1.00** |
| ACCOUNT NO. **MD08xxxx** <br> **Pinnacle Credit Services** <br> **7900 Highway 7 #100** <br> **Saint Louis Park, MN 55426** | | | **Debt. (2006-2011) (Original creditor: Verizon Wireless)** | | | | **351.00** |
| ACCOUNT NO. <br> **Portfolio Recovery Associates** <br> **120 Corporate Boulevard, Suite 100** <br> **Norfolk, VA 23502** | | | **Judgment (2010)** | | | | **1.00** |
| ACCOUNT NO. <br> **Tobin & Melien** <br> **45 Court Street** <br> **New Haven, CT 06511** | | | **Assignee or other notification for:** <br> **Portfolio Recovery Associates** | | | | |
| ACCOUNT NO. **4013 9888 7002 xxxx** <br> **Portfolio Recovery Associates** <br> **120 Corporate Boulevard, Suite 100** <br> **Norfolk, VA 23502** | | | **Debt. (2006-2011) (Original creditor: US Bank National Association)** | | | | **13,976.00** |

Sheet no. ___**3**___ of ___**5**___ continuation sheets attached to
Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)          $ **24,132.00**

Total
(Use only on last page of the completed Schedule F. Report also on
the Summary of Schedules, and if applicable, on the Statistical
Summary of Certain Liabilities and Related Data.)          $

© 1993-2012 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

B6F (Official Form 6F) (12/07) - Cont.

IN RE **Watley, Leslie D.** _____   Case No. _____

Debtor(s)                                                    (If known)

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER. *(See Instructions Above.)* | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO. **90551841331001 xxxx** <br> **Sallie Mae** <br> **P.O. Box 9500** <br> **Wilkes Barre, PA  18773-9500** | | | **Student loan. (2005)** | | | | **6,841.00** |
| ACCOUNT NO. **5121 0719 6508 xxxx** <br> **Sears Bankruptcy Recovery** <br> **Citibank** <br> **P.O. Box 20363** <br> **Kansas City, MO  64195-0363** | | | **Credit card debt. (2006-2011)** | | | | **1.00** |
| ACCOUNT NO. **112285018xxxx** <br> **Southern Connecticut Gas Company** <br> **P.O. Box 1999** <br> **Augusta, ME  04332-1999** | | | **Gas service. (2006-2011)** | | | | **608.00** |
| ACCOUNT NO. <br> **The Hamden Hall School** <br> **1108 Whitney Avenue** <br> **Hamden, CT  06518** | | | **Debt. (2006-2011)** | | | | **29,916.54** |
| ACCOUNT NO. <br> **Eric H. Opin, Esq.** <br> **266 Broad Street** <br> **Milford, CT  06460-0000** | | | **Assignee or other notification for:** <br> **The Hamden Hall School** | | | | |
| ACCOUNT NO. **4013 9888 7002 xxxx** <br> **U.S. Bank RMS Credit Card** <br> **205 W. 4th Street** <br> **Cincinnati, OH  45202** | | | **Credit card debt. (2006-2011)** | | | | **13,975.00** |
| ACCOUNT NO. **83644 xxxx** <br> **Volkswagen Credit Inc.** <br> **P.O. Box 3** <br> **Hillsboro, OR  97123** | | | **Debt. (2006-2010)** | | | X | **1.00** |

Sheet no. **4** of **5** continuation sheets attached to
Schedule of Creditors Holding Unsecured Nonpriority Claims

| | |
|---|---|
| Subtotal (Total of this page) | $ **51,342.54** |
| Total (Use only on last page of the completed Schedule F. Report also on the Summary of Schedules, and if applicable, on the Statistical Summary of Certain Liabilities and Related Data.) | $ |

© 1993-2012 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

B6F (Official Form 6F) (12/07) - Cont.

IN RE **Watley, Leslie D.**                                          Case No. _____
                     Debtor(s)                                                        (If known)

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER. *(See Instructions Above.)* | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO. **CV09-5025869**<br><br>**Wells Fargo Bank, N.A.**<br>**800 Walnut Street**<br>**Des Moines, IA 50309** | | | **Deficiency on foreclosed property. (2009)** | | | | **1.00** |
| ACCOUNT NO.<br><br>**Hunt Leibert Jacobson PC**<br>**50 Weston Street**<br>**Hartford, CT 06120** | | | **Assignee or other notification for:**<br>**Wells Fargo Bank, N.A.** | | | | |
| ACCOUNT NO. **10605074782xxx**<br><br>**Wells Fargo Financial**<br>**P.O. Box 660449**<br>**Dallas, TX 76266-0449** | | | **Debt. (2006-2010)** | | | | **708.00** |
| ACCOUNT NO. **4071 1000 2485 xxxx**<br><br>**WF Financial Cards**<br>**CSCL DSP TM MAC N8235-04M**<br>**P.O. Box 14517**<br>**Des Moines, IA 50306** | | | **Credit card debt. (2006-2011)** | | | | **1.00** |
| ACCOUNT NO. **5774 4210 9713 xxxx**<br><br>**Wffnb - Raymour & Flanigan**<br>**CSCL DSP TM MAC N8235-04M**<br>**P.O. Box 14517**<br>**Des Moines, IA 50306** | | | **Credit card debt. (2006-2011)** | | | | **1.00** |
| ACCOUNT NO. | | | | | | | |
| ACCOUNT NO. | | | | | | | |

Sheet no. **5** of **5** continuation sheets attached to
Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal (Total of this page)   $ **711.00**

Total
(Use only on last page of the completed Schedule F. Report also on the Summary of Schedules, and if applicable, on the Statistical Summary of Certain Liabilities and Related Data.)   $ **161,076.54**

© 1993-2012 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

Case No. Desc Main Page 25 of 41

**B6G (Official Form 6G) (12/07)**

**IN RE** Watley, Leslie D. _____ Case No. _____
        Debtor(s)                                              (If known)

## SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property. Include any timeshare interests. State nature of debtor's interest in contract, i.e., "Purchaser," "Agent," etc. State whether debtor is the lessor or lessee of a lease. Provide the names and complete mailing addresses of all other parties to each lease or contract described. If a minor child is a party to one of the leases or contracts, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

☑ Check this box if debtor has no executory contracts or unexpired leases.

| NAME AND MAILING ADDRESS, INCLUDING ZIP CODE OF OTHER PARTIES TO LEASE OR CONTRACT | DESCRIPTION OF CONTRACT OR LEASE AND NATURE OF DEBTOR'S INTEREST. STATE WHETHER LEASE IS FOR NONRESIDENTIAL REAL PROPERTY. STATE CONTRACT NUMBER OF ANY GOVERNMENT CONTRACT. |
|---|---|
|  |  |

© 1993-2012 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

**B6H (Official Form 6H) (12/07)**

IN RE <u>Watley, Leslie D.</u>          Case No. _____

                       Debtor(s)                                    (If known)

## SCHEDULE H - CODEBTORS

    Provide the information requested concerning any person or entity, other than a spouse in a joint case, that is also liable on any debts listed by the debtor in the schedules of creditors. Include all guarantors and co-signers. If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within the eight-year period immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state, commonwealth, or territory. Include all names used by the nondebtor spouse during the eight years immediately preceding the commencement of this case. If a minor child is a codebtor or a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

☑ Check this box if debtor has no codebtors.

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
|---|---|
| | |

© 1993-2012 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

**B6I (Official Form 6I) (12/07)**

IN RE __Watley, Leslie D.__           Case No. _____
<br>              Debtor(s)                                           (If known)

## SCHEDULE I - CURRENT INCOME OF INDIVIDUAL DEBTOR(S)

The column labeled "Spouse" must be completed in all cases filed by joint debtors and by every married debtor, whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. Do not state the name of any minor child. The average monthly income calculated on this form may differ from the current monthly income calculated on From 22A, 22B, or 22C.

| Debtor's Marital Status | DEPENDENTS OF DEBTOR AND SPOUSE | | |
|---|---|---|---|
| **Married** | RELATIONSHIP(S):<br>**Son**<br>**Son**<br>**Daughter** | | AGE(S):<br>**18**<br>**16**<br>**10** |

| EMPLOYMENT: | DEBTOR | SPOUSE |
|---|---|---|
| Occupation | **Engineer** | **Realtor** |
| Name of Employer | **AT&T** | **Self-Employed/Remax RE** |
| How long employed | **24 years** | **8 years** |
| Address of Employer | **310 Orange Street**<br>**New Haven, CT 06510-0000** | **Milford, CT 06460-0000** |

**INCOME:** (Estimate of average or projected monthly income at time case filed)

| | DEBTOR | SPOUSE |
|---|---|---|
| 1. Current monthly gross wages, salary, and commissions (prorate if not paid monthly) | $ 6,405.88 | $ _____ |
| 2. Estimated monthly overtime | $ _____ | $ _____ |
| **3. SUBTOTAL** | $ 6,405.88 | $ 0.00 |
| 4. LESS PAYROLL DEDUCTIONS | | |
|   a. Payroll taxes and Social Security | $ 1,398.62 | $ _____ |
|   b. Insurance | $ 81.23 | $ _____ |
|   c. Union dues | $ _____ | $ _____ |
|   d. Other (specify)   **See Schedule Attached** | $ 1,124.59 | $ _____ |
| | $ _____ | $ _____ |
| **5. SUBTOTAL OF PAYROLL DEDUCTIONS** | $ 2,604.44 | $ 0.00 |
| **6. TOTAL NET MONTHLY TAKE HOME PAY** | $ 3,801.44 | $ 0.00 |
| 7. Regular income from operation of business or profession or farm (attach detailed statement) | $ _____ | $ 25.17 |
| 8. Income from real property | $ _____ | $ _____ |
| 9. Interest and dividends | $ _____ | $ _____ |
| 10. Alimony, maintenance or support payments payable to the debtor for the debtor's use or that of dependents listed above | $ _____ | $ _____ |
| 11. Social Security or other government assistance | | |
|   (Specify) _____ | $ _____ | $ _____ |
|    _____ | $ _____ | $ _____ |
| 12. Pension or retirement income | $ _____ | $ _____ |
| 13. Other monthly income | | |
|   (Specify) _____ | $ _____ | $ _____ |
|    _____ | $ _____ | $ _____ |
|    _____ | $ _____ | $ _____ |
| **14. SUBTOTAL OF LINES 7 THROUGH 13** | $ _____ | $ 25.17 |
| **15. AVERAGE MONTHLY INCOME** (Add amounts shown on lines 6 and 14) | $ 3,801.44 | $ 25.17 |

**16. COMBINED AVERAGE MONTHLY INCOME**: (Combine column totals from line 15; if there is only one debtor repeat total reported on line 15)

                                            $   3,826.61

(Report also on Summary of Schedules and, if applicable, on Statistical Summary of Certain Liabilities and Related Data)

17. Describe any increase or decrease in income reasonably anticipated to occur within the year following the filing of this document:
**None**

© 1993-2012 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

IN RE **Watley, Leslie D.** _____ Case No. _____
                          Debtor(s)

## SCHEDULE I - CURRENT INCOME OF INDIVIDUAL DEBTOR(S)
### Continuation Sheet - Page 1 of 1

|  | DEBTOR | SPOUSE |
|---|---|---|
| Other Payroll Deductions: | | |
| **Wage Garnishment** | 117.33 | |
| **Med/Dental/Vision** | 145.08 | |
| **Health FSA** | 152.78 | |
| **401k Contribution** | 153.96 | |
| **401k Loan** | 553.59 | |
| **UnTED Way** | 1.85 | |

© 1993-2012 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

B6J (Official Form 6J) (12/07)

IN RE <u>Watley, Leslie D.</u>                                      Case No. _____
                    Debtor(s)                                                              (If known)

## SCHEDULE J - CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)

Complete this schedule by estimating the average or projected monthly expenses of the debtor and the debtor's family at time case filed. Prorate any payments made biweekly, quarterly, semi-annually, or annually to show monthly rate. The average monthly expenses calculated on this form may differ from the deductions from income allowed on Form22A or 22C.

☐ Check this box if a joint petition is filed and debtor's spouse maintains a separate household. Complete a separate schedule of expenditures labeled "Spouse."

| | | |
|---|---:|---:|
| 1. Rent or home mortgage payment (include lot rented for mobile home) | $ | 2,200.00 |
|   a. Are real estate taxes included?     Yes ✓  No ____ | | |
|   b. Is property insurance included?   Yes ✓  No ____ | | |
| 2. Utilities: | | |
|   a. Electricity and heating fuel | $ | 450.00 |
|   b. Water and sewer | $ | 40.00 |
|   c. Telephone | $ | |
|   d. Other  **Cable/Phone/Internet** | $ | 150.00 |
|              **Cell Phone** | $ | 120.00 |
| 3. Home maintenance (repairs and upkeep) | $ | 100.00 |
| 4. Food | $ | 600.00 |
| 5. Clothing | $ | 50.00 |
| 6. Laundry and dry cleaning | $ | |
| 7. Medical and dental expenses | $ | |
| 8. Transportation (not including car payments) | $ | 350.00 |
| 9. Recreation, clubs and entertainment, newspapers, magazines, etc. | $ | |
| 10. Charitable contributions | $ | |
| 11. Insurance (not deducted from wages or included in home mortgage payments) | | |
|   a. Homeowner's or renter's | $ | |
|   b. Life | $ | |
|   c. Health | $ | |
|   d. Auto | $ | 120.00 |
|   e. Other | $ | |
| | $ | |
| 12. Taxes (not deducted from wages or included in home mortgage payments) | | |
|   (Specify) _____ | $ | |
| | $ | |
| 13. Installment payments: (in chapter 11, 12 and 13 cases, do not list payments to be included in the plan) | | |
|   a. Auto | $ | |
|   b. Other  **Car Payment** | $ | 338.25 |
| | $ | |
| 14. Alimony, maintenance, and support paid to others | $ | |
| 15. Payments for support of additional dependents not living at your home | $ | |
| 16. Regular expenses from operation of business, profession, or farm (attach detailed statement) | $ | |
| 17. Other | $ | |
| | $ | |
| | $ | |

**18. AVERAGE MONTHLY EXPENSES** (Total lines 1-17. Report also on Summary of Schedules and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data.      $ **4,518.25**

19. Describe any increase or decrease in expenditures anticipated to occur within the year following the filing of this document:
**Mrs. Watley is working on a loan modification with mortgage company.**

**20. STATEMENT OF MONTHLY NET INCOME**

| | | |
|---|---:|---:|
|   a. Average monthly income from Line 15 of Schedule I | $ | 3,826.61 |
|   b. Average monthly expenses from Line 18 above | $ | 4,518.25 |
|   c. Monthly net income (a. minus b.) | $ | -691.64 |

© 1993-2012 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

Case 3:12-bk-07351-JAF Doc 63-1 Filed 12/30/12 Page 30 of 41

**IN RE** Watley, Leslie D.               Case No. _____

                         Debtor(s)                                                     (If known)

# DECLARATION CONCERNING DEBTOR'S SCHEDULES

### DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

I declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of _____ **21** sheets, and that they are true and correct to the best of my knowledge, information, and belief.

Date: **November 30, 2012** _____    Signature: _***/s/ Leslie D. Watley*** _____

                                         **Leslie D. Watley**                                        Debtor

Date: _____    Signature: _____

                                                                      (Joint Debtor, if any)

                                               [If joint case, both spouses must sign.]

### DECLARATION AND SIGNATURE OF NON-ATTORNEY BANKRUPTCY PETITION PREPARER (See 11 U.S.C. § 110)

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342 (b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required by that section.

_____    _____
Printed or Typed Name and Title, if any, of Bankruptcy Petition Preparer      Social Security No. (Required by 11 U.S.C. § 110.)

*If the bankruptcy petition preparer is not an individual, state the name, title (if any), address, and social security number of the officer, principal, responsible person, or partner who signs the document.*

_____

_____
Address

_____    _____
Signature of Bankruptcy Petition Preparer                                         Date

Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document, unless the bankruptcy petition preparer is not an individual:

*If more than one person prepared this document, attach additional signed sheets conforming to the appropriate Official Form for each person.*

*A bankruptcy petition preparer's failure to comply with the provision of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both.  11 U.S.C. § 110; 18 U.S.C. § 156.*

### DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

I, the _____ (the president or other officer or an authorized agent of the corporation or a member or an authorized agent of the partnership) of the _____ (corporation or partnership) named as debtor in this case, declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of _____ sheets (*total shown on summary page plus 1*), and that they are true and correct to the best of my knowledge, information, and belief.

Date: _____    Signature: _____

                                                _____
                                                (Print or type name of individual signing on behalf of debtor)

*[An individual signing on behalf of a partnership or corporation must indicate position or relationship to debtor.]*

*Penalty for making a false statement or concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both.  18 U.S.C. §§ 152 and 3571.

© 1993-2012 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

B7 (Official Form 7)(04/10)

**United States Bankruptcy Court**
**District of Connecticut**

IN RE: _____   Case No. _____

Watley, Leslie D. _____   Chapter **7**
_____
Debtor(s)

# STATEMENT OF FINANCIAL AFFAIRS

This statement is to be completed by every debtor. Spouses filing a joint petition may file a single statement on which the information for both spouses is combined. If the case is filed under chapter 12 or chapter 13, a married debtor must furnish information for both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. An individual debtor engaged in business as a sole proprietor, partner, family farmer, or self-employed professional, should provide the information requested on this statement concerning all such activities as well as the individual's personal affairs. To indicate payments, transfers and the like to minor children, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

Questions 1 - 18 are to be completed by all debtors. Debtors that are or have been in business, as defined below, also must complete Questions 19 - 25. **If the answer to an applicable question is "None," mark the box labeled "None."** If additional space is needed for the answer to any question, use and attach a separate sheet properly identified with the case name, case number (if known), and the number of the question.

### DEFINITIONS

*"In business."* A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership. An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within six years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed full-time or part-time. An individual debtor also may be "in business" for the purpose of this form if the debtor engages in a trade, business, or other activity, other than as an employee, to supplement income from the debtor's primary employment.

*"Insider."* The term "insider" includes but is not limited to: relatives of the debtor; general partners of the debtor and their relatives; corporations of which the debtor is an officer, director, or person in control; officers, directors, and any owner of 5 percent or more of the voting or equity securities of a corporate debtor and their relatives; affiliates of the debtor and insiders of such affiliates; any managing agent of the debtor. 11 U.S.C. § 101.

---

**1. Income from employment or operation of business**

None
☐   State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business, including part-time activities either as an employee or in independent trade or business, from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the **two years** immediately preceding this calendar year. (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of the debtor's fiscal year.) If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

    AMOUNT    SOURCE
    **86,476.22**   **YTD Income**

    **94,896.00**   **2011 Income**

    **88,342.00**   **2010 Income**

---

**2. Income other than from employment or operation of business**

None
☑   State the amount of income received by the debtor other than from employment, trade, profession, operation of the debtor's business during the **two years** immediately preceding the commencement of this case. Give particulars. If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

---

**3. Payments to creditors**
*Complete a. or b., as appropriate, and c.*

None
☑   *a. Individual or joint debtor(s) with primarily consumer debts:* List all payments on loans, installment purchases of goods or services, and other debts to any creditor made within **90 days** immediately preceding the commencement of this case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $600. Indicate with an asterisk (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and credit counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

© 1993-2012 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

© 1993-2012 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

None ☑ *b. Debtor whose debts are not primarily consumer debts:* List each payment or other transfer to any creditor made within **90 days** immediately preceding the commencement of the case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $5,850.* If the debtor is an individual, indicate with an asterisk (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and credit counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments and other transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

*\* Amount subject to adjustment on 4/01/13, and every three years thereafter with respect to cases commenced on or after the date of adjustment.*

None ☑ *c. All debtors:* List all payments made within **one year** immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

**4. Suits and administrative proceedings, executions, garnishments and attachments**

None ☐ a. List all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately preceding the filing of this bankruptcy case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
|---|---|---|---|
| **The Hamden Hall School v. Eric Watley, et al CV12-6029863S** | **Collections** | **New Haven Superior** | **Judgment 10/10/2012** |
| **GMAC Mortgage, LLC v. Leslie Watley CV10-6015961S** | **Foreclosure** | **New Haven Superior** | **Pending** |

None ☐ b. Describe all property that has been attached, garnished or seized under any legal or equitable process within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON FOR WHOSE BENEFIT PROPERTY WAS SEIZED | DATE OF SEIZURE | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|
| **Cavalry SPV I, LLC C/O Tobin & Melien 45 Court Street New Haven, CT  06511-0000** | **10/2012** | **Wages** |

**5. Repossessions, foreclosures and returns**

None ☑ List all property that has been repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the seller, within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

**6. Assignments and receiverships**

None ☑ a. Describe any assignment of property for the benefit of creditors made within **120 days** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include any assignment by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and joint petition is not filed.)

None ☑ b. List all property which has been in the hands of a custodian, receiver, or court-appointed official within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

**7. Gifts**

None ☑ List all gifts or charitable contributions made within **one year** immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient. (Married debtors filing under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

**8. Losses**

None ☑ List all losses from fire, theft, other casualty or gambling within **one year** immediately preceding the commencement of this case **or since the commencement of this case.** (Married debtors filing under chapter 12 or chapter 13 must include losses by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

**9. Payments related to debt counseling or bankruptcy**

☐ None    List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under bankruptcy law or preparation of a petition in bankruptcy within **one year** immediately preceding the commencement of this case.

| NAME AND ADDRESS OF PAYEE | DATE OF PAYMENT, NAME OF PAYOR IF OTHER THAN DEBTOR | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|
| **Ambrogio, Pletter & Assoc**<br>**2019 Main Street**<br>**Stratford, CT 06615** | **2012** | **2,500.00** |

**10. Other transfers**

☑ None    a. List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within **two years** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

☑ None    b. List all property transferred by the debtor within **ten years** immediately preceding the commencement of this case to a self-settled trust or similar device of which the debtor is a beneficiary.

**11. Closed financial accounts**

☑ None    List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or otherwise transferred within **one year** immediately preceding the commencement of this case. Include checking, savings, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds, cooperatives, associations, brokerage houses and other financial institutions. (Married debtors filing under chapter 12 or chapter 13 must include information concerning accounts or instruments held by or for either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

**12. Safe deposit boxes**

☑ None    List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include boxes or depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

**13. Setoffs**

☑ None    List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within **90 days** preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

**14. Property held for another person**

☑ None    List all property owned by another person that the debtor holds or controls.

**15. Prior address of debtor**

☑ None    If debtor has moved within **three years** immediately preceding the commencement of this case, list all premises which the debtor occupied during that period and vacated prior to the commencement of this case. If a joint petition is filed, report also any separate address of either spouse.

**16. Spouses and Former Spouses**

☑ None    If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within **eight years** immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state.

© 1993-2012 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

**17. Environmental Information**

For the purpose of this question, the following definitions apply:

"Environmental Law" means any federal, state, or local statute or regulation regulating pollution, contamination, releases of hazardous or toxic substances, wastes or material into the air, land, soil, surface water, groundwater, or other medium, including, but not limited to, statutes or regulations regulating the cleanup of these substances, wastes or material.

"Site" means any location, facility, or property as defined under any Environmental Law, whether or not presently or formerly owned or operated by the debtor, including, but not limited to, disposal sites.

"Hazardous Material" means anything defined as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, or contaminant or similar term under an Environmental Law.

| None | |
|:--:|:--|
| ☑ | a. List the name and address of every site for which the debtor has received notice in writing by a governmental unit that it may be liable or potentially liable under or in violation of an Environmental Law. Indicate the governmental unit, the date of the notice, and, if known, the Environmental Law. |

| None | |
|:--:|:--|
| ☑ | b. List the name and address of every site for which the debtor provided notice to a governmental unit of a release of Hazardous Material. Indicate the governmental unit to which the notice was sent and the date of the notice. |

| None | |
|:--:|:--|
| ☑ | c. List all judicial or administrative proceedings, including settlements or orders, under any Environmental Law with respect to which the debtor is or was a party. Indicate the name and address of the governmental unit that is or was a party to the proceeding, and the docket number. |

**18. Nature, location and name of business**

| None | |
|:--:|:--|
| ☑ | a. *If the debtor is an individual*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full- or part-time within **six years** immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case. |
| | *If the debtor is a partnership*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities, within **six years** immediately preceding the commencement of this case. |
| | *If the debtor is a corporation*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case. |

| None | |
|:--:|:--|
| ☑ | b. Identify any business listed in response to subdivision a., above, that is "single asset real estate" as defined in 11 U.S.C. § 101. |

*[If completed by an individual or individual and spouse]*

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct.

Date: **November 30, 2012** _____   Signature  ***/s/ Leslie D. Watley***
of Debtor                                                    **Leslie D. Watley**

Date: _____   Signature _____
of Joint Debtor
(if any)

_____ **0** continuation pages attached

*Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years or both.  18 U.S.C. § 152 and 3571.*

© 1993-2012 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

B8 (Official Form 8) (12/08)

## United States Bankruptcy Court
## District of Connecticut

IN RE:

Watley, Leslie D.

_____
Debtor(s)

Case No. _____

Chapter **7** _____

## CHAPTER 7 INDIVIDUAL DEBTOR'S STATEMENT OF INTENTION

**PART A** – Debts secured by property of the estate. *(Part A must be fully completed for **EACH** debt which is secured by property of the estate. Attach additional pages if necessary.)*

| Property No. 1 | |
|---|---|
| **Creditor's Name:**<br>**GMAC Mortgage** | **Describe Property Securing Debt:**<br>**22 Conhurst Drive, North Haven, CT** |

Property will be *(check one)*:
☐ Surrendered  ☑ Retained

If retaining the property, I intend to *(check at least one)*:
☐ Redeem the property
☐ Reaffirm the debt
☑ Other. Explain **Apply for loan modification** _____ (for example, avoid lien using 11 U.S.C. § 522(f)).

Property is *(check one)*:
☐ Claimed as exempt  ☑ Not claimed as exempt

| Property No. 2 (if necessary) | |
|---|---|
| **Creditor's Name:**<br>**Santander Consumer USA** | **Describe Property Securing Debt:**<br>**2010 Hyundai Elantra (43,000 miles)** |

Property will be *(check one)*:
☐ Surrendered  ☑ Retained

If retaining the property, I intend to *(check at least one)*:
☐ Redeem the property
☑ Reaffirm the debt
☐ Other. Explain _____ (for example, avoid lien using 11 U.S.C. § 522(f)).

Property is *(check one)*:
☐ Claimed as exempt  ☑ Not claimed as exempt

**PART B** – Personal property subject to unexpired leases. *(All three columns of Part B must be completed for each unexpired lease. Attach additional pages if necessary.)*

| Property No. 1 | | |
|---|---|---|
| **Lessor's Name:** | **Describe Leased Property:** | Lease will be assumed pursuant to 11 U.S.C. § 365(p)(2):<br>☐ Yes ☐ No |

| Property No. 2 (if necessary) | | |
|---|---|---|
| **Lessor's Name:** | **Describe Leased Property:** | Lease will be assumed pursuant to 11 U.S.C. § 365(p)(2):<br>☐ Yes ☐ No |

____ continuation sheets attached *(if any)*

**I declare under penalty of perjury that the above indicates my intention as to any property of my estate securing a debt and/or personal property subject to an unexpired lease.**

Date: _____**November 30, 2012**_____   **/s/ Leslie D. Watley**_____
Signature of Debtor

_____
Signature of Joint Debtor

© 1993-2012 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

**United States Bankruptcy Court**
**District of Connecticut**

**IN RE:**                                                        Case No. _____

**Watley, Leslie D.** _____    Chapter **7** _____
Debtor(s)

## VERIFICATION OF CREDITOR MATRIX

The above named debtor(s) hereby verify(ies) that the attached matrix listing creditors is true to the best of my(our) knowledge.

Date: **November 30, 2012** _____    Signature: **/s/ Leslie D. Watley** _____
                                                                          **Leslie D. Watley**                                     Debtor

Date: _____    Signature: _____
                                                                                                                              Joint Debtor, if any

© 1993-2012 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

Applied Bank
P.O. Box 10210
Wilmington, DE  19850


Barclays
Bank Of Delaware
125 S West Street
Wilmington, DE  19801


Capital One
P.O. Box 30281
Salt Lake City, UT  84130


Capital One
P.O. Box 5253
Carol Stream, IL  60107


Cavalry Portfolio Service
P.O. Box 27288
Tempe, AZ  85285


Cavalry SPV I, LLC
C/O Tobin & Melien
45 Court Street
New Haven, CT  06511


Chase//Bank One Card Service
P.O. Box 15153
Wilmington, DE  19850


Connex Credit Union
P.O. Box 477
North Haven, CT  06473

Discover
P.O. Box 15316
Wilmington, DE  19886-5251


Dowley & Associates
116 Washington Street
Middletown, CT  06457-0000


Eric H. Opin, Esq.
266 Broad Street
Milford, CT  06460-0000


GMAC Mortgage
3451 Hammond Avenue
Waterloo, IA  50704-0205


HSBC
P.O. Box 17313
Baltimore, MD  21297-1313


Hunt Leibert Jacobson PC
50 Weston Street
Hartford, CT  06120


I. C. System, Inc.
444 Highway 96 East
St. Paul, MN  55164-0887


Internal Revenue Services
P.O. Box 21126
Philadelphia, PA  19114


Kohl's
P.O. Box 2983
Milwaukee, WI  53201-2983

LVNV Funding
P.O. Box 10584
Greenville, SC  29603


Midland Funding, LLC
8875 Aero Drive, Suite 200
San Diego, CA  92123


North Star Capital Acquisition, LLC
C/O Solomon & Solomon
P.O. Box 15019
Albany, NY  12212-5019


Pinnacle Credit Services
7900 Highway 7 #100
Saint Louis Park, MN  55426


Portfolio Recovery Associates
120 Corporate Boulevard, Suite 100
Norfolk, VA  23502


Sallie Mae
P.O. Box 9500
Wilkes Barre, PA  18773-9500


Santander Consumer USA
P.O. Box 961245
Forth Worth, TX  76161


Sears Bankruptcy Recovery
Citibank
P.O. Box 20363
Kansas City, MO  64195-0363

Solomon & Solomon PC
P.O. Box 15019
Albany, NY  12212


Southern Connecticut Gas Company
P.O. Box 1999
Augusta, ME  04332-1999


The Hamden Hall School
1108 Whitney Avenue
Hamden, CT  06518


Tobin & Melien
45 Court Street
New Haven, CT  06511


U.S. Bank RMS Credit Card
205 W. 4th Street
Cincinnati, OH  45202


United Illuminating
157 Church Street
New Haven, CT  06510-2100


Volkswagen Credit Inc.
P.O. Box 3
Hillsboro, OR  97123


Wells Fargo Bank, N.A.
800 Walnut Street
Des Moines, IA  50309


Wells Fargo Financial
P.O. Box 660449
Dallas, TX  76266-0449

```
WF Financial Cards
CSCL DSP TM MAC N8235-04M
P.O. Box 14517
Des Moines, IA  50306


Wffnb - Raymour & Flanigan
CSCL DSP TM MAC N8235-04M
P.O. Box 14517
Des Moines, IA  50306
```

# EXHIBIT F

B18 (Official Form 18) (12/07)

# United States Bankruptcy Court

### District of Connecticut
### Case No. <u>12–32625</u>
### Chapter 7

**In re** Debtor(s) (name(s) used by the debtor(s) in the last 8 years, including married, maiden, trade, and address):
Leslie D. Watley
22 Conhurst Drive
North Haven, CT 06473–0000

Social Security / Individual Taxpayer ID No.:
xxx–xx–0978

Employer Tax ID / Other nos.:

## DISCHARGE OF DEBTOR

It appearing that the debtor is entitled to a discharge,

**IT IS ORDERED:**

The debtor is granted a discharge under section 727 of title 11, United States Code, (the Bankruptcy Code).

BY THE COURT

Dated: <u>3/13/13</u>

<u>Lorraine Murphy Weil</u>
United States Bankruptcy Judge

## SEE THE BACK OF THIS ORDER FOR IMPORTANT INFORMATION.

## EXPLANATION OF BANKRUPTCY DISCHARGE
## IN A CHAPTER 7 CASE

This court order grants a discharge to the person named as the debtor. It is not a dismissal of the case and it does not determine how much money, if any, the trustee will pay to creditors.

### Collection of Discharged Debts Prohibited

The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor. *[In a case involving community property:* There are also special rules that protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.] A creditor who violates this order can be required to pay damages and attorney's fees to the debtor.

However, a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case. Also, a debtor may voluntarily pay any debt that has been discharged.

### Debts That are Discharged

The chapter 7 discharge order eliminates a debtor's legal obligation to pay a debt that is discharged. Most, but not all, types of debts are discharged if the debt existed on the date the bankruptcy case was filed. (If this case was begun under a different chapter of the Bankruptcy Code and converted to chapter 7, the discharge applies to debts owed when the bankruptcy case was converted.)

### Debts That are Not Discharged

Some of the common types of debts which are <u>not</u> discharged in a chapter 7 bankruptcy case are:

a. Debts for most taxes;

b. Debts incurred to pay nondischargeable taxes;

c. Debts that are domestic support obligations;

d. Debts for most student loans;

e. Debts for most fines, penalties, forfeitures, or criminal restitution obligations;

f. Debts for personal injuries or death caused by the debtor's operation of a motor vehicle, vessel, or aircraft while intoxicated;

g. Some debts which were not properly listed by the debtor;

h. Debts that the bankruptcy court specifically has decided or will decide in this bankruptcy case are not discharged;

i. Debts for which the debtor has given up the discharge protections by signing a reaffirmation agreement in compliance with the Bankruptcy Code requirements for reaffirmation of debts; and

j. Debts owed to certain pension, profit sharing, stock bonus, other retirement plans, or to the Thrift Savings Plan for federal employees for certain types of loans from these plans.


**This information is only a general summary of the bankruptcy discharge. There are exceptions to these general rules. Because the law is complicated, you may want to consult an attorney to determine the exact effect of the discharge in this case.**

**EXHIBIT G**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

IN RE:      LESLIE D. WATLEY              :      11 U.S.C. CHAPTER 7

LESLIE D. WATLEY,
          Debtor                          :      CASE NO.  12-32625

GEORGE I. ROUMELIOTIS,
          Trustee                         :      DECEMBER 8, 2014

## MOTION TO REOPEN CHAPTER 7 CASE

The Debtor respectfully applies to this Court under Section 350(b) of Title 11 U.S.C. as follows:

1.      The Debtor filed for relief under Chapter 7 of the U.S. Bankruptcy Code on November 30, 2012.

2.      This Court issued the Order Discharging Debtor on March 13, 2013.

3.      At the time of filing this Chapter 7 case, the Jerome N. Frank Legal Services Organization, a clinic at Yale Law School, ("the clinic") represented Mrs. Watley in her pending foreclosure. The clinic filed an Answer containing special defenses and counterclaims. (See Exhibit A.)  The Debtor was participating in the foreclosure mediation program through the superior court in an attempt to get a loan modification. She thought that her claims against the mortgage company were essentially special defenses, not separate causes of action.

4.      In order to properly pursue these counterclaims on behalf of the Debtor and her bankruptcy estate, the estate must be reopened so that the Trustee in this case may analyze and, if possible, administer the asset.  The Chapter 7 Trustee is aware of these facts and consents to the reopening.

5.      The undersigned intends to amend Schedules B and C in order to properly disclose the existence of the counterclaims and to claim the Debtor's available exemption in them.

6.      George I. Roumeliotis should be reappointed as Trustee of this estate.

**WHEREFORE**, the Debtor prays this Court will reopen her case so that she can file Amended Schedules B and C, and allow the Debtor a chance at a fresh start.

THE DEBTOR

By: _/s/ Timothy M. Pletter_____
       Timothy M. Pletter
       Ambrogio, Pletter & Associates
       2019 Main Street, Stratford, CT 06615
       (203) 378-6675
       Federal Ct 16031
       pletterbk@gmail.com

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

IN RE:        LESLIE D. WATLEY              :        11 U.S.C. CHAPTER 7

LESLIE D. WATLEY,
        Debtor                              :        CASE NO.  12-32625

GEORGE I. ROUMELIOTIS,
        Trustee                             :

## ORDER

The foregoing Motion to Reopen Case, after having been properly noticed it is hereby

ORDERED:

That the Debtor's case be reopened to file Amended Schedules B and C, and that George

K. Roumeliotis be reappointed as Trustee of this estate.

BY THE COURT