# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>RESIDENTIAL CAPITAL, LLC, ET AL.<br><br>Debtors. | Case No. 12-12020 (MG)<br><br>Chapter 11<br><br>Jointly Administered |

## NOTICE OF OPPOSITION TO RESCAP BORROWER CLAIMS TRUST'S SEVENTY-SIXTH OMNIBUS OBJECTION TO CLAIM 3728
## (NO LIABILITY BORROWER CLAIM)

I, Kenneth C. Thomas, hereby file this Notice in Opposition to ResCap Borrower Claims Trust's Seventy-Sixty Omnibus Objection to Claim 3728 (No Liability Borrower Claim). Specifically, objecting to request to expunge and/or disallow due to misinformation and false information supplied to Your Honor for review under column entitled "Reason for Disallowance".

Dated: December 8, 2014

KENNETH C. THOMAS
1464 S. Michigan Ave., Unit 1705
Chicago, IL 60605
312-939-3244

*Claimant*



RECEIVED
DEC 10 2014
U.S. BANKRUPTCY COURT, SDNY

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, ET AL. | Chapter 11 |
| Debtors. | Jointly Administered |

On November 8, 2012, I filed Claim 3728 in Case No. 12-12020 (MG) with which I supplied a copy of the mortgage that Debtor serviced. I thought it reasonable to state the mortgage as the basis for the claim since it is what was affected by the GMAC bankruptcy. A more detailed basis was given on the Claim Information form submitted with a copy of the Special Warranty Deed (attached) via e-mail which was a viable option offered in delivery of Claim Information. With the Claim of Information, the basis for claim was given as follows:

> "The reason we believe we are owed and/or entitled to relief is that GMAC through its alliance with ResCap and Ally Bank engaged in fraudulent and improper activity leading to its bankruptcy. On several occasions in the last 2-3 years, we have attempted to obtain a loan modification from GMAC and was denied each and every time. My loan was in the process of foreclosure; however, I was never properly served by GMAC's law firm. In the Proof of Claim Information your office sent—you stated that "those in the process of foreclosure should do nothing". GMAC, and the other entities that make up ResCap, along with its representatives, would have continued the practices except for the fact that it caused them to declare bankruptcy. My loan has been modified and reinstated since the purchase of GMAC by Ocwen."

There are a few inaccuracies within the quoted text provided to Your Honor under "Reason for Disallowance"; however, the one that is glaring states "GMAC loan from Ocwen."

The word "loan" was not used, nor the word "from", inferring confusion of the parties' role in the transaction. There also seemed to be an interchange or "back and forth" in "Reason for Disallowance" of Debtor identity wherein GMAC was referenced in place of Ocwen.

At the time of the submitting Claim of Information, there was not an understanding of Illinois law pertaining to service of foreclosure. There are inaccuracies in affidavit from servicer; however, Your Honor should know at no time was there purposeful avoidance of service.

## Background

In April 2009, I was laid off. My former employer is part of an industry that was heavily invested in and impacted by the financial meltdown occurring at the time.

I paid my mortgage until I could no longer pay—in full—all the while seeking a modification from GMAC. I asked GMAC if I could make partial payments; they said no. I did send in partial payments which were rejected and later did make payment arrangements with the hope that I would find work and honor the arrangements. While continually trying to work out something with GMAC—a representative told me that owner, Fannie Mae, would not agree to a modification and that only payment in full would suffice. This reason for denial of modification has been publicly refuted. By this time, foreclosure proceedings had started.

Reference to my not responding to correspondence from GMAC regarding their offers—untrue. I did respond to their offers, but offers were often tied to investor/owner approval which turns out to be untrue as well. Servicers have authorization to modify loans even if the loan is owned by another entity.

Not attending hearings—untrue. I can produce records of attendance, if necessary. For two years, GMAC flatly refused to modify the loan, stating that the owner/investor, Fannie Mae,

would have to approve. Once in foreclosure, GMAC also told me that I would need to confer with their representative, Codilis & Associates, P.C., who then referred me back to GMAC. GMAC gave me no reason to believe they would ever work with me. GMAC offered the trial modification near closure of its business with Ocwen Loan Servicing. Papers were filed for foreclosure sale; however at December 21, 2012 hearing, I presented to the presiding Judge Darryl Simko and GMAC's representative, Codilis & Associates, P.C., the trial modification paperwork and that is how the process was stopped. I was still under duress because I had no guarantees that the loan would be modified and stressed because I thought I would be brought back into court and eventually lose my home. Relief only came after receiving the approval letter from Ocwen in April 2013.

Although I was eligible for a HAMP or HARP modification, Ocwen did not offer either (see attached). Instead, they offered a fixed 40-year mortgage with all outstanding totals added for what was an adjustable 30-year mortgage. The purchase price was $355,000 with a down payment of $50,000. My starting mortgage was $305,000. At time of foreclosure, the principal balance was $291,472.15. An offer of $328,000.93 was made with an additional 10 years of interest—that appears to add interest on outstanding interest—on a mortgage with a property value of approximately $290,000.00.

## Conclusion

I was/am in no position to disagree as I wanted to remain in my home and am in the process of trying to financially rebuild. When I filed the claim, I filed the claim for $291,472.15 because it was the principal balance of the mortgage at the time; however, I did not expect to receive $291,472.15. My expectation was that GMAC would work with me especially in light of

the government's assistance to them. They did not, and as a result, have liability due to causal effect of burden for additional costs associated with my mortgage that ultimately was granted by Ocwen.

Respectfully submitted,

Dated: December 8, 2014

KENNETH C. THOMAS
1464 S. Michigan Ave., Unit 1705
Chicago, IL 60605
312-939-3244

*Claimant*

Investor Loan #  1706937346
Custodian ID:  A1
This document was prepared by <u>Ocwen Loan Servicing, LLC</u>

**After Recording Return To:**
Ocwen Loan Servicing, LLC
Attention: Loss Mitigation
3700 J Street SW
Suite 555
Cedar Rapids, IA 52404

_____[Space Above This Line For Recording Data]_____

# Non-HAMP Loan Modification Agreement

Loan Modification Agreement ("Agreement") made this April 01, 2013 ("Effective Date") between GERALD D CHAMBERS Unmarried KENNETH C THOMAS Unmarried ("Borrower") and Ocwen Loan Servicing, LLC, Lender/Servicer or Agent for Lender/Servicer ("Lender"), amends and supplements that certain promissory note ("Note") dated March 28, 2008 in the original principal sum of THREE HUNDRED FIVE THOUSAND DOLLARS AND ZERO CENTS ($305,000.00) executed by Borrower. The Note is secured by a Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated the same date as the Note, and if applicable, recorded on April 01, 2008 with Instrument Number 0809240021 in Book  and/or Page Number  of the real property records of COOK County, IL.  Said Security Instrument covers the real and personal property described in such Security Instrument (the "Property") located at 1464 S MICHIGAN AVENUE UNIT 1705 CHICAGO IL 60605, which real property is more particularly described as follows:

**(Legal Description if Applicable for Recording Only)**

Borrower acknowledges that "Lender" is the legal holder and the owner, or agent/servicer for the legal holder and owner, of the Note and Security Instrument and further acknowledges that if "Lender" transfers the Note, as amended by this Agreement, the transferee shall be the "Lender" as defined in this Agreement.

Borrower has requested, and Lender has agreed, to extend or rearrange the time and manner of payment of the Note and to extend and carry forward the lien(s) on the Property whether or not created by the Security Instrument.