*In re Residential Capital, LLC,* et al.
Chapter 11 Case No. 12-12020 (MG)

## SENIOR LIEN STAY RELIEF QUESTIONNAIRE

This questionnaire is to be completed by any party (the "Requesting Party") requesting stay relief (each, a "Request") to foreclose on a mortgage or security interest (the "Senior Mortgage") on property (the "Property") in which Residential Capital, LLC, *et al.* (the "Debtors") hold a subordinate interest, and served on the parties listed below.

All questions **must** be answered. Please use "none," "not applicable," or "N/A," as appropriate. If more space is needed, please complete on a separate page and attach.

1.    Address of the Property that is the subject of the Request:

    113 E. COLEMAN CIRCLE

    SANFORD, FLORIDA  32772

2.    Name of the borrower under the Senior Mortgage:

    CARLOS R. ORTIZ

3.    Nature of the Debtors' interest in the Property (to be supported by a title or foreclosure report reflecting such liens or interests and attached to this Questionnaire):

    FEE SIMPLE OWNER.  SEE TITLE REPORT ATTACHED HERETO.

    attached hereto as Exhibit "1"

4.    Name and contact information of party that owns the Senior Mortgage (the "Senior Holder"):

    GTS CAPITAL HOLDINGS IRA, LLC

    C/O TERRENCE J MCGUIRE,  LAW FIRM OF TERRENCE MCGUIRE, P.A.

    8687 LARWIN LANE, ORLANDO  FLORIDA 32817

1

5.  If the Requesting Party is different from the Senior Holder:

(a) Name and contact information of Requesting Party:

N/A

(b) Nature of Requesting Party's interest in the Property:

1ST MORTGAGE LIEN HOLDER

(c) Capacity in which the Request is made (i.e., servicer, etc.):

ATTORNEY FOR GTS CAPITAL HOLDINGS IRA, LLC

6.  Description of any other known liens on the Property (including the holder of such liens):

HOMECOMINGS FINANCIAL NETWORK, INC.

WHICH HOLDS A 2ND MORTAGE LIEN ON THE SUBJECT PROPERTY.

SEE COPY OF TITLE REPORT ATTACHED AS EXHIBIT "1"

7.  Value of the Property on which the foreclosure bid is based (to be supported by an appraisal or broker price opinion (in each case conducted within the ninety (90) days preceding the date of the Questionnaire), or other documentation of value reasonably acceptable to the Debtors or other documentation of value reasonably acceptable to the Debtors and attached to this Questionnaire):

SEE ATTACHED AS EXHIBIT "2" SEMINOLE COUNTY, FLORIDA PROPERTY

APPRAISAL 2014 ASSESSED VALUE $51,767.00

8.  Total indebtedness attributable to the Senior Lien, including unpaid principal balance, outstanding corporate advances and legal fees (to be supported by documentation attached to this Questionnaire):

SEE ATTACHED HERETO AS COMPOSITE EXHIBIT "3" CORRESPONDENCE DATED 11/13/14 FROM CREDITORS LOAN SERVICER TO BORROWER SHOWING UNPAID PRINCIPAL BALANCE, ACCRUED INTEREST, AND LATE CHARGES TOTALING $198,913.52. ALSO, COPIES OF CASHIER'S CHECKS TOTALING $3030.17 TO PAY DELIQUENT REAL PROPERTY TAXES AND

2

EXPENSES REPORT DATED 12/2/14 TOTALING $2733.92 GRAND TOTAL $204,677.61

9. Description of the default under the Senior Lien (i.e., timing and nature of default, including date and amount of last payment, contractual payment amount outstanding, and length and amount of arrearage):

BORROWER FAILED TO MAKE MONTHLY PAYMENT DUE ON

JUNE 01, 2009 AND ALL MONTHLY PAYMENTS THAT BECAME DUE

THEREAFTER.

10. Court in which the foreclosure action with respect to the Senior Mortgage is pending or in which the Requesting Party proposes to bring the action (and, if applicable, the case name and number, together with copies of any relevant documents filed in the First Lien Foreclosure Action):

FORECLOSURE ACTION HAS NOT BEEN FILED AS OF YET PENDING ENTRY OF ORDER GRANTING
GTS RELIEF FROM STAY TO FORECLOSE 2ND MORTGAGE MOTION TO BE FILED IN
SEMINOLE COUNTY, FL.  SEE PROPOSED  COMPLAINT ATTACHED HERETO AS  EXHIBIT "4"
AS OF 12/1/14, UNDERSIGNED WITH LAW FIRM OF TERRENCE MCGUIRE, P.A.

11. Description of any loss mitigation efforts undertaken by or on behalf of the Senior Holder with respect to the Senior Mortgage within the previous twelve (12) months:

CREDITOR AND LOAN SERVICER MADE NUMEROUS ATTEMPTS TO CONTACT

BORROWER WITH NO SUCCESS.

**I hereby certify that (a) I am authorized to submit this Request on behalf of the Requesting Party, and (b) the foregoing is true and correct to the best of my knowledge and belief.**

Date: 12/11/14

Name: Terrence J. McGuire

Title: Attorney for Creditor

3

## UPON COMPLETION, PLEASE REMIT THIS QUESTIONNAIRE, TOGETHER WITH COPIES OF ANY SUPPORTING DOCUMENTATION, TO THE FOLLOWING PARTIES:

Residential Capital, LLC
1100 Virginia Dr.
Ft. Washington, Pennsylvania, 19034
Attn: Melody Wright

Office of the United States Trustee
33 Whitehall Street, 21st Floor
New York, New York 10004
Attn: Brian Masumoto, Esq. and
    Michael Driscoll, Esq.

Morrison & Foerster LLP
1290 Avenue of the Americas
New York, New York 10104
Attn: Norman S. Rosenbaum
    James Newton, and
    Erica J. Richards

Kramer Levin, Naftalis & Frankel LLP
Counsel for the Committee
1177Avenue of the Americas
New York, New York 10036
Attn: Elise Frejka and Douglas Mannal

Any other party of which the Requesting Party
is aware that holds or claims to hold an interest
in the Property.

4

Chicago Title Insurance Company

**Fassett, Anthony & Taylor, P.A.**
1325 W. Colonial Dr.
Orlando, FL 32804
Phone: 407-872-0200
Fax: 407-422-8170

Chicago Title Insurance Company

Revised:  Rev1 08/05/2014

## COMMITMENT FOR TITLE INSURANCE
## SCHEDULE A

Order No.: 4867238
Customer Reference:  9064-1

1.  Effective Date: June 11, 2014 at 8:00 AM

2.  Policy or Policies to be issued:                    Premium:  $TBD

    A.  **ALTA Owners 2006 with Florida Modifications**
    Proposed Insured:  Grantee in Certificate of Title referred to in Schedule B, Section 1, Item 2A
    Amount of Insurance:  $1000.00

3.  The estate or interest in the land described or referred to in this Commitment is:

    Fee Simple

4.  Title to the Fee Simple estate or interest in the land is at the Effective Date vested in:

    Carlos R. Ortiz

5.  The land referred to in this Commitment is described in Exhibit "A" attached hereto and made part hereof.

Countersigned:

BY: _____
Authorized Officer or Agent

**Copyright American Land Title Association.  All rights reserved.**
The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use.
All other uses are prohibited.  Reprinted under license from the American Land Title Association.
ALTA Commitment (6/17/06) (with FL Modifications)



1 of 6

Exhibit "1"

 **Chicago Title Insurance Company**

Order Number: 4867238
Customer Reference: 9064-1

## SCHEDULE B SECTION I
### REQUIREMENTS

The following are requirements to be complied with:

1. Payment to or for the account of the grantors or mortgagors of the full consideration for the estate or interest to be insured.

2. Instrument(s) creating the estate or interest to be insured must be properly executed, delivered and filed for record:

   A. Certificate of Title to be issued by the Clerk of the Circuit Court of Seminole County, Florida to GTS Capital Holdings IRA, LLC in successful conclusion of a suit satisfactory to the Company to foreclose the following Mortgage:

   Mortgage executed by Carlos R. Ortiz, single to Homecomings Financial network, Inc., dated August 7, 2006, recorded August 23, 2006 in Official Records Book 6381, Page 1165 and last assigned to GTS Capital Holdings IRA, LLC in Official Records Book 8275, Page 136.

   The following must be named as parties defendant and properly served with process in the above proceedings:

   TITLEHOLDER:  The owners as presently set forth on Schedule A of this Commitment.

   ADDITIONAL MORTGAGORS: NONE

   PARTIES IN POSSESSION: Any other parties in possession of the subject property.

   LIENHOLDER:  Homecomings Financial Network, Inc. by virtue of a Mortgage recorded in Official Records Book 6381, P)age 1182

   NOTE:   Title must be examined between the effective date of this commitment and the recording of the lis pendens to assure that all necessary and proper parties were properly joined in the foreclosure proceedings.  The following interests will appear as Exceptions under Schedule B, Section 1, of the final policy, unless joined as party defendant(s) and eliminated in the foreclosure:

   a.  All persons claiming rights or interests in the subject property or liens or rights of lien under instrument recorded after the date of this Commitment and before the filing for record of a Lis Pendens.

   b.  Any persons, other than those named herein, known to the Plaintiff, or known by the Plaintiff's attorney after reviewing this commitment and the documents reflected in Schedule B-Section II, to have or claim any interest in or lien on the land.

   c.  Interests determined by the final judgment of foreclosure to be superior to that of the Plaintiff.

   NOTE:   In the event the transaction is restructured to involve a deed in lieu of foreclosure, a modification of mortgage, or transaction other than the foreclosure action described, the commitment must be amended to require, among other things:  (A) dismissal of the foreclosure action; (B) release of the foreclosure lis pendens; (C) update of the title back to the date of the filing of the lis pendens; and (D) satisfaction of any judgments, liens and other encumbrances previously excluded herein.  Further, the Company reserves the right to amend and modify the commitment based on a change in the structure of the transaction to be insured.

**Copyright American Land Title Association.  All rights reserved.**
The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use.  All other uses are prohibited.  Reprinted under license from the American Land Title Association.
ALTA Commitment (6/17/06) (with FL Modifications)



2 of 6

**Chicago Title Insurance Company**

Order Number: 4867238
Customer Reference: 9064-1

## SCHEDULE B SECTION I
### Requirements continued

NOTE:  If bankruptcy proceedings are instituted by or against a mortgagor or owner prior to completion of the foreclosure, the Company requires the entry of an order by the bankruptcy court lifting the automatic stay to permit the foreclosure and expiration of the time to appeal without the filing of an appeal.

3. Proof of payment of any outstanding assessments in favor of Seminole County, Florida, any special taxing district and any municipality.  NOTE:  If this requirement is not satisfied the following exception will appear on Schedule B:

   Any outstanding assessments in favor of Seminole County, Florida, any special taxing district and any municipality.

4. Proof of payment of service charges for water, sewer, waste and gas, if any, through the date of closing.  NOTE:  If this requirement is not met the following exception will appear on Schedule B:

   Any lien provided for by Florida Statutes in favor of any city, town, village or port authority for unpaid service charges for service by any water, sewer, waste or gas system supplying the insured land or service facilities.

5. The name(s) of the proposed insured under the policy must be furnished and this commitment is subject to such further exceptions and/or requirements as may then be deemed necessary.

6. The Amount of Insurance reflected on Schedule A has been limited to $1000.00 since the commitment has been issued only for the purpose of identifying those parties that will need to be made defendants in the foreclosure proceedings in the event the Company is requested to insure title through these proceedings. When the certificate of title has been issued, the Company has been provided the amount of the full insurable value of the land and the Company has agreed to that value, Schedule A will be amended accordingly.

7. Redemption of Tax Sale Certificate No.# 2014 1797 for unpaid taxes for the year(s) 2013.

Intentionally Deleted.

The following note is incorporated herein for informational purposes only and is not part of the exception from coverage: All deeds conveying the subject property within the last 24 months are attached hereto.


### END OF SCHEDULE B    SECTION I


Copyright American Land Title Association.  All rights reserved.
The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use.  All other uses are prohibited.  Reprinted under license from the American Land Title Association.
ALTA Commitment (6/17/06) (with FL Modifications)



3 of 6

 **Chicago Title Insurance Company**

Order No.: 4867238
Customer Reference: 9064-1

## SCHEDULE B SECTION II
### EXCEPTIONS

Schedule B of the policy or policies to be issued will contain exceptions to the following matters unless the same are disposed of to the satisfaction of the Company:

1. Defects, liens, encumbrances, adverse claims or other matters, if any, created, first appearing in the public records or attaching subsequent to the effective date hereof but prior to the date the proposed insured acquires for value of record the estate or interest or mortgage thereon covered by this Commitment.

2. Taxes and assessments for the year 2014 and subsequent years, which are not yet due and payable.

3. Standard Exceptions:

    A. Easements, claims of easements, boundary line disputes, overlaps, encroachments or other matters not shown by the public records which would be disclosed by an accurate survey of the Land.

    B. Rights or claims of parties in possession not shown by the public records.

    C. Any lien, or right to a lien, for services, labor, or materials heretofore or hereafter furnished, imposed by law and not shown by the public records.

    D. Taxes or assessments which are not shown as existing liens in the public records.

4. Any claim that any portion of the insured land is sovereign lands of the State of Florida, including submerged, filled or artificially exposed lands accreted to such land.

5. Any lien provided by County Ordinance or by Chapter 159, Florida Statutes, in favor of any city, town, village or port authority for unpaid service charges for service by any water, sewer or gas system supplying the insured land.

6. The rights of tenants in possession under bona fide leases pursuant to the provisions of the Federal "Helping Families Save Their Homes Act" of 2009.

7. Any loss or damage arising from assessments occurring after date of policy resulting from the provisions contained in Florida Statute 720.3085(2), notwithstanding any assurances to the contrary in any of the following ALTA Endorsements which may be attached to this policy: 5.1-06 (PUD); 9-06; 9.1; 9.2-06; 9.3-06 or 9.5-06.

NOTE: The Company reserves the right to make further requirements and/or exceptions upon its review of the proposed documents creating the estate or interest to be insured or otherwise ascertaining details of the transaction.

NOTE: If the proceeds of the loan to be secured by the insured mortgage are deposited with the Company or its authorized agent, Item 1 above shall be deemed deleted as of the time such funds are disbursed to or for the account of the borrower. Neither the Company nor its agent shall, however, be under any duty to disburse any sum except upon a determination that no such adverse intervening matters have appeared of record or occurred.

NOTES ON STANDARD EXCEPTIONS:

Copyright American Land Title Association. All rights reserved.
The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.
ALTA Commitment (6/17/06) (with FL Modifications)



4 of 6

 **Chicago Title Insurance Company**

Order No.: 4867238
Customer Reference: 9064-1

## SCHEDULE B SECTION II
## EXCEPTIONS

Item 3A will be deleted from the policy(ies) upon receipt of an accurate survey of the Land acceptable to the Company. Exception will be made for any encroachment, setback line violation, overlap, boundary line dispute or other adverse matter disclosed by the survey.

Items 3B, 3C, and 3D will be deleted from the policy(ies) upon receipt of an affidavit acceptable to the Company, affirming that, except as disclosed therein (i) no parties in possession of the Land exist other than the record owner(s); (ii) no improvements have been made to the Land within 90 days prior to closing which have not have been paid for in full; and (iii) no unpaid taxes or assessments are against the Land which are not shown as existing liens in the public records. Exception will be made for matters disclosed in the affidavit.

NOTE: All recording references in this commitment/policy shall refer to the public records of Seminole County, Florida, unless otherwise noted.

8. Restrictions, covenants, conditions, easements and other matters as contained on the Plat of South Pinecrest, Third Addition, recorded in Plat Book 11, Page (s) 62 and 63, of the Public Records of Seminole County, Florida.

NOTE: In accordance with Florida Statutes section 627.4131, please be advised that the insured hereunder may present inquiries, obtain information about coverage, or receive assistance in resolving complaints, by contacting Chicago Title Insurance Company, 2400 Maitland Center Parkway , Suite 110, Maitland, FL 32751; Telephone 866-632-6200.

Searched By:  Carol Langdon  carol.langdon@fnf.com  866-632-6200 Ext. 0808

## END OF SCHEDULE B  SECTION II

Copyright American Land Title Association. All rights reserved.
The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.
ALTA Commitment (6/17/06) (with FL Modifications)

5 of 6

**Ⓜ Chicago Title Insurance Company**

## EXHIBIT "A"

Lot 8, South Pinecrest, Third Addition, according to the map or plat thereof, as recorded in Plat Book 11, Page(s) 62 and 63, of the Public Records of Seminole County, Florida.

**Copyright American Land Title Association.  All rights reserved.**
The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use.  All other uses are prohibited.  Reprinted under license from the American Land Title Association.
ALTA Commitment (6/17/06) (with FL Modifications)

6 of 6



**Property Record Card**
Parcel: 12-20-30-502-0000-0080
Owner: ORTIZ CARLOS R
Property Address: 113 E COLEMAN CIR SANFORD, FL 32773

### Parcel: 12-20-30-502-0000-0080

**Property Address:** 113 E COLEMAN CIR
**Owner:** ORTIZ CARLOS R
**Mailing:** 113 E COLEMAN CIR
SANFORD, FL 32773-5838
**Subdivision Name:** SOUTH PINECREST 3RD ADD
**Tax District:** S1-SANFORD
**Exemptions:** 00-HOMESTEAD (1994)
**DOR Use Code:** 01-SINGLE FAMILY

### Value Summary

| | 2015 Working Values | 2014 Certified Values |
|---|---|---|
| Valuation Method | Cost/Market | Cost/Market |
| Number of Buildings | 1 | 1 |
| Depreciated Bldg Value | $43,318 | $42,029 |
| Depreciated EXFT Value | | |
| Land Value (Market) | $14,000 | $14,000 |
| Land Value Ag | | |
| Just/Market Value ** | $57,318 | $56,029 |
| Portability Adj | | |
| Save Our Homes Adj | $4,774 | $4,262 |
| Amendment 1 Adj | | |
| Assessed Value | $52,544 | $51,767 |

| | |
|---|---|
| Tax Amount without SOH: | $545.46 |
| 2014 Tax Bill Amount | $511.80 |
| Tax Estimator | |
| Save Our Homes Savings: | $33.66 |

\* Does NOT INCLUDE Non Ad Valorem Assessments



### Legal Description

LEG LOT 8
SOUTH PINECREST 3RD ADD
PB 11 PG 63

### Taxes

| Taxing Authority | Assessment Value | Exempt Values | Taxable Value |
|---|---|---|---|
| County General Fund | $52,544 | $27,544 | $25,000 |
| Schools | $52,544 | $25,000 | $27,544 |
| City Sanford | $52,544 | $27,544 | $25,000 |
| SJWM(Saint Johns Water Management) | $52,544 | $27,544 | $25,000 |
| County Bonds | $52,544 | $27,544 | $25,000 |

### Sales

| Description | Date | Book | Page | Amount | Qualified | Vac/Imp |
|---|---|---|---|---|---|---|
| WARRANTY DEED | 8/1/2006 | 06381 | 1164 | $74,000 | No | Improved |
| FINAL JUDGEMENT | 5/1/2006 | 06248 | 1454 | $100 | No | Improved |
| WARRANTY DEED | 12/1/1993 | 02714 | 0002 | $57,900 | Yes | Improved |
| WARRANTY DEED | 7/1/1992 | 02453 | 0198 | $39,000 | Yes | Improved |
| QUIT CLAIM DEED | 2/1/1979 | 01209 | 0984 | $100 | No | Improved |

Find Comparable Sales within this Subdivision

### Land

| Method | Frontage | Depth | Units | Units Price | Land Value |
|---|---|---|---|---|---|
| LOT | 0 | 0 | 1 | $14,000.00 | $14,000 |

### Building Information

| # | Description | Fixtures | Base Area | Total SF | Living SF | Ext Wall | Adj Value | Repl Value | Appendages |
|---|---|---|---|---|---|---|---|---|---|

Exhibit "2"

http://www.scpafl.org/ParcelDetailInfo.aspx?PID=12203050200000080

12/11/2014

| | | Year Built Actual/Effective | | | | | | | | Description | Area |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | SINGLE FAMILY | 1958 | 6 | 1,200 | 1,836 | 1,200 | CONC BLOCK | $43,318 | $70,723 | ENCLOSED PORCH UNFINISHED | 140 |
| | | | | | | | | | | OPEN PORCH FINISHED | 90 |
| | | | | | | | | | | CARPORT UNFINISHED | 294 |
| | | | | | | | | | | UTILITY UNFINISHED | 112 |

## Permits

| Permit # | Type | Agency | Amount | CO Date | Permit Date |
|---|---|---|---|---|---|
| | | | No data to display | | |

## Extra Features

| Description | Year Built | Units | Value | New Cost |
|---|---|---|---|---|
| | | No data to display | | |

November 13, 2014

CARLOS R ORTIZ
15100 NW 67TH A
MIAMI FL 33014

Payoff figures have been requested on the loan for the borrower and property described below .

Loan ID: 5472000002
CARLOS R ORTIZ
113 E COLEMAN CIR
SANFORD, FL  32773
Loan Type: Other

When remitting funds, please use our loan number to insure proper posting and provide us with the borrower's forwarding address.  Funds received in this office after 12:00 noon will be processed on the next business day, with interest charged to that date.

All payoff figures are subject to clearance of funds in transit .  The payoff is subject to final audit when presented.  Any overpayment or refunds will be mailed directly to the borrower.  We will prepare the release of our interest in the property after all funds have cleared.

| Projected Payoff Date | 11/30/2014 |
|---|---|
| Principal Balance | $142,778.03 |
| Interest Thru 11/30/2014 | $55,790.88 |
| Fees | $344.61 |
| Prepayment Penalty | $0.00 |
| Release Fees | $0.00 |
| Funds owed by borrower | $0.00 |
| Funds owed to borrower | $0.00 |
| | |
| **Total Payoff** | **$198,913.52** |
| Per diem | $27.38 |

The next payment due is 6/1/2009. Payments are made by Billing on a Monthly basis. The current interest rate is 7.00000% and the P & I payment is $984.65.

**PLEASE CALL THE NUMBER LISTED BELOW TO UPDATE FIGURES PRIOR TO REMITTING FUNDS AS THEY ARE SUBJECT TO CHANGE WITHOUT NOTICE.**

Land Home Financial Services, Inc., Special Servicing

3330 Harbor Blvd, 3rd Floor

Costa Mesa, CA  92626

(877) 557-9042
(866) 701-0373   Fax

PO1.rpt
11/13/2014

Composite Exhibit
"13"

**CARLOS R ORTIZ - Loan ID #5472000002**

## FEE DETAILS

| Description | Amount |
| --- | --- |
| Late Charge Payment | $344.61 |
| | **$344.61** |

PO1.rpt
11/13/2014

0000968
Office AU #    11-24
121(8))

Purchaser:        GTS CAPITAL HOLDINGS IRA, LLC
Purchaser Account:  2349207085
Operator I.D.       u263723

PAY TO THE ORDER OF:        cu071629

***SEMINOLE COUNTY TAX COLLECTOR***
***RE: PARCEL 12-20-30-502-0000-0080***

***One thousand nine hundred thirty dollars and 16 cents***

WELLS FARGO BANK, N.A.
9390 CLAIREMONT MESA BLVD
SAN DIEGO, CA 92123
FOR INQUIRIES CALL (480) 394-3122

NOTICE TO PURCHASER–IF THIS INSTRUMENT IS LOST,
STOLEN OR DESTROYED, YOU MAY REQUEST CANCELLATION
AND REISSUANCE. AS A CONDITION TO CANCELLATION AND
REISSUANCE, WELLS FARGO & COMPANY MAY IMPOSE A
FEE AND REQUIRE AN INDEMNITY AGREEMENT AND BOND.

**CASHIER'S CHECK**

SERIAL #: 0096801352
ACCOUNT#: 4861-511467

May 31, 2013

**$1,930.16**

VOID IF OVER US $    1 930 16

NON-NEGOTIABLE

**Purchaser Copy**

| 0000968 | 11-24 |
|---------|-------|
| Office AU # | 1210(8) |

**CASHIER'S CHECK**

SERIAL #:  0096803144
ACCOUNT#:  4801-511459

Purchaser:       **GTS CAPITAL HOLDINGS IRA, LLC**
Purchaser Account:   **2349257085**
Operator I.D.:       **u308596          u231143**

**November 26, 2014**

PAY TO THE ORDER OF     \***SEMINOLE COUNTY TAX COLLECTOR \***
                        \***RE: PARCEL 12-20-30-502-0000-0080\***

\***One thousand one hundred dollars and 01 cent\***

**\*\*$1,100.01\*\***

**WELLS FARGO BANK, N.A.**
9360 CLAIREMONT MESA BLVD
SAN DIEGO, CA 92123
FOR INQUIRIES CALL (480) 394-3122

NOTICE TO PURCHASER–IF THIS INSTRUMENT IS LOST,
STOLEN OR DESTROYED, YOU MAY REQUEST CANCELLATION
AND REISSUANCE. AS A CONDITION TO CANCELLATION AND
REISSUANCE, WELLS FARGO & COMPANY MAY IMPOSE A
FEE AND REQUIRE AN INDEMNITY AGREEMENT AND BOND.

VOID IF OVER US $  1,100.01

**NON-NEGOTIABLE**

**Purchaser Copy**

# Fassett, Anthony & Taylor, P.A.
## Time And Expense Details

Report ID: OT2025 - 58509
Tuesday, December 02, 2014

Printed By: TRIC
Page 1

| Client | Client Reporting Name | | Matter | | Matter Reporting Name | | Billing Timekeeper |
|---|---|---|---|---|---|---|---|
| 9064 | GTS Capital Holdings IRA, LLC | | 0001 | | Ortiz, Carlos R | | MCGUIRE, TERRENCE J. |

**Unbilled Time**

| Date | Timekeeper | Hours Worked | Hours To Bill | Rate | Amount | Task | Activity | Narrative |
|---|---|---|---|---|---|---|---|---|
| 6/18/2014 | TJM | 1.20 | 1.20 | 325.00 | $390.00 | | | Review of memo from client and copies of loan docs; Research new statute as to pleading requirements for complaint; Preparation of memo to client. |
| 6/18/2014 | TJM | 0.10 | 0.10 | 325.00 | $32.50 | | | Review of reinstatement and pay off statements. |
| 6/24/2014 | TJM | 0.20 | 0.20 | 325.00 | $65.00 | | | Review of retainer check and loan docs; Preparation of memo to client. |
| 6/25/2014 | TJM | 0.10 | 0.10 | 325.00 | $32.50 | | | Review of memo and loan docs; Preparation of response. |
| 7/8/2014 | TJM | 0.10 | 0.10 | 325.00 | $32.50 | | | Preparation of memo from Greg Soule; Preparation of response. |
| 7/9/2014 | TJM | 0.60 | 0.60 | 325.00 | $195.00 | | | Review of memo to paralegal in regard to status of title search. |
| 7/10/2014 | TJM | 0.20 | 0.20 | 325.00 | $65.00 | | | Review of title commitment; Preparation of memo to client in regard to the notice to cure requirement. |
| 7/29/2014 | TJM | 0.20 | 0.20 | 325.00 | $65.00 | | | Preparation of memo to client in regard to the form letter request to comply with paragraph 22 of the mortgage. |
| 8/2/2014 | TJM | 0.30 | 0.30 | 325.00 | $97.50 | | | Review of file; Preparation of memo to client that notice to case letter previously sent is inaccurate and another one will have to be sent. |
| 9/2/2014 | TJM | 0.70 | 0.70 | 325.00 | $227.50 | | | Review of file; reviewing 30 day notice for cure letter |
| 9/4/2014 | TJM | 0.40 | 0.40 | 325.00 | $130.00 | | | Review of file; drafting complaint. |
| 9/8/2014 | TJM | 0.20 | 0.20 | 325.00 | $65.00 | | | Editing complaint; review of memo from paralegal as to whether 2nd mortgage was assigned; review of file; preparation of response; follow up with title searcher. |
| 9/15/2014 | TJM | 0.40 | 0.40 | 325.00 | $130.00 | | | Review of memo and title documents from Fidelity in regards to the status of the 2nd mortgage. |
| 9/25/2014 | TJM | 0.50 | 0.50 | 325.00 | $162.50 | | | Review of paralegals effort at locating h financials Network Inc. for service; if filed chapter 11 bankruptcy effort during; doing further investigation of bankruptcy status. |
| 9/25/2014 | TJM | 0.20 | 0.20 | 325.00 | $65.00 | | | Further investigation of how to try to serve 2nd mortgage with process; preparation of memo to client. |
| 10/2/2014 | TJM | 0.30 | 0.30 | 325.00 | $97.50 | | | Teleconference with Guy Soule. |
| 10/2/2014 | TJM | 1.00 | 1.00 | 325.00 | $325.00 | | | Further investigation of the Res Cap Liquidating trust; preparation of email to the trust as to how to offer service of process in Homecomings Financial. |
| 10/27/2014 | TJM | 0.40 | 0.40 | 325.00 | $130.00 | | | Review of bankruptcy documents in regard to bankruptcy of Homecoming Financial LLC, successor to Homecoming's Financial, Inc. |
| 10/28/2014 | TJM | 0.00 | 0.00 | 325.00 | $0.00 | | | Review of Bankruptcy Court's order putting forth procedures for obtaining stay relief from NY bankruptcy proceeding; Preparation of memo to client. |

| | | | | Post Date | Status | Current Period | Original Post Period | Original Post |
|---|---|---|---|---|---|---|---|---|
| | | | | 10/28/2014 | | 10/28/2014 | 10 | 2014 |

**Unbilled Time**

| Date | Timekeeper | Hours Worked | Hours To Bill | Rate | Amount | Task | Activity | Narrative |
|---|---|---|---|---|---|---|---|---|
| 11/10/2014 | TJM | 0.50 | 0.50 | 325.00 | $162.50 | | | Drafting Motion for Admission to Practice in NY bankruptcy proceeding; Drafting responses to Senior Lien Relief Questionnaire. |

| | | | | Post Date | Entry Date | | |
|---|---|---|---|---|---|---|---|
| | | | | 10/29/2014 | 10/29/2014 | | |

| Totals | | 7.60 | 7.60 | | $2,470.00 | | |
|---|---|---|---|---|---|---|---|
| | | 0.50 | 0.50 | 325.00 | $162.50 | | |

# Fassett, Anthony & Taylor, P.A.
## Time And Expense Details

Report ID:  OT2025 - 58509

Tuesday, December 02, 2014

Printed By   TRIC
Page   2

Beginning To End

### Unbilled Expenses

| Date | Amount | Exp Code | Narrative |
|------|--------|----------|-----------|
| 7/14/2014 | $50.00 | 10 | Chicago Title Insurance Company; Title Exam & Search Fee - Title Search |
| 7/15/2014 | $50.00 | 10 | Chicago Title Insurance Company; Title Exam & Search Fee - Title Search |
| 7/16/2014 | ($50.00) | 10 | Chicago Title Insurance Company; Title Exam & Search Fee - Invoice # 4867238 |
| 7/31/2014 | $6.96 | 03 | Postage |
| 7/31/2014 | $6.96 | 03 | Postage |
| 11/7/2014 | $200.00 | 99 | US Bankruptcy Court- Southern District New York; Other Expense- Pro Have Vice Admission |

**Unbilled Expenses**

| | | |
|---|---|---|
| Totals | $263.92 | |

| | Hours Worked | Hours To Bill | Fee Amount | Expense Amount | Total Amount |
|---|---|---|---|---|---|
| **Report Totals** | 7.60 | 7.60 | $2,470.00 | $263.92 | $2,733.92 |

*** End Of Report ***

IN    THE    CIRCUIT    COURT    OF    THE
EIGHTEENTH    CIRCUIT    IN    AND    FOR
SEMINOLE COUNTY, FLORIDA

CASE NO: _____

GTS CAPITAL HOLDINGS IRA, LLC,
     Plaintiff,
vs.
CARLOS    R.    ORTIZ,    a    single    man,
HOMECOMINGS FINANCIAL NETWORK, INC.,
and any unknown heirs, devisees, grantees, creditors,
and other unknown persons or unknown spouses
claiming by, through and under any of the above-
named Defendants,

     Defendants.

_____/

## VERIFIED COMPLAINT TO FORECLOSE REAL ESTATE MORTGAGE

     The Plaintiff, GTS Capital Holdings IRA, LLC, sues the Defendants Carlos R. Ortiz, a single man,

Homecomings Financial Network, Inc., and any unknown heirs, devisees, grantees, creditors, and other

unknown persons or unknown spouses claiming by, through and under any of the above-named

Defendants, and alleges:

     1.     **JURISDICTION OF THE COURT:** This is an action to foreclose a Mortgage on real

property located in Seminole County, Florida and therefore the Circuit Court of Seminole County, Florida

has jurisdiction. The legal description of the property is as follows:

> Lot 8, South Pinecrest, Third Addition, according to the map or plat thereof, as
> recorded in Plat Book 11, Page(s) 62 and 63, of the Public Records of
> Seminole County, Florida.
> Parcel Identification Number: 12-20-30-502-0000-0080
> A/K/A 113 E. Coleman Circle, Sanford, FL 32773

     2.     **15 U.S.C. SECT. 1601 FAIR DEBT COLLECTION PRACTICES ACT:** For a list of

your rights under the FAIR DEBT COLLECTION PRACTICES ACT, please see a list of your rights

attached as **Exhibit "A."**

Exhibit "A"

**NOTE:    PURSUANT TO THE FAIR DEBT COLLECTION PRACTICES ACT YOU ARE
ADVISED THAT THIS LAW FIRM IS DEEMED TO BE A DEBT COLLECTOR ATTEMPTING
TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT
PURPOSE.**

3.    **EXECUTION OF THIS NOTE AND MORTGAGE AND CREATION OF LIEN**:

On or about August 7, 2006, a Note was executed and delivered in favor of Homecomings Financial

Network, Inc., in the original principal amount of $148,000.00.  A copy of the Note is attached hereto as

**Exhibit "B."**  The Note was signed by the Defendant, Carlos R. Ortiz.  To secure the payment of said

Note, the Defendant, Carlos R. Ortiz, executed and delivered a Mortgage ("Mortgage") which is attached

as **Exhibit "C."**  It was recorded in Official Records Book 6381, Page 1165, of the Public Records of

Seminole County, Florida.  It encumbers the real and personal properties and fixtures described therein.

As the signature page of the Note indicates, it was endorsed by Homecomings Financial Network,

Inc. to Residential Funding Company, LLC, which then endorsed it to Deutsche Bank Trust Company

Americas as Trustee. By an Allonge, Deutsche Bank Trust Company Americas then assigned the Note

back to Residential Funding Company, LLC which then assigned it to Residential Fund 138, LLC. A true

copy of the Allonge is attached hereto as **Exhibit "D".** By an Allonge, Residential Fund 138, LLC

assigned the Note to Gemini Capital Managers, LLC, which by another Allonge assigned the Note to the

Plaintiff. True copies of the latter two Allonges are attached hereto as **Exhibits "E" & "F".**

By a corrective Corporate Assignment of Mortgage MERS as nominee for Homecomings

Financial Network, Inc., its successors and assigns assigned the mortgage to Deutsche Bank Trust

Company Americas as Trustee. A true copy of the Assignment of Mortgage is attached hereto as **Exhibit**

**"G".**  Deutsche Bank Trust Company Americas as Trustee then assigned the mortgage to Residential

Funding Company, LLC. A true copy of the recorded Assignment of Mortgage is attached hereto as

**Exhibit "H".**  Residential Funding Company, LLC then assigned the mortgage to Residential Fund 138,

LLC. A true copy of the recorded Assignment of Mortgage is attached hereto as **Exhibit "I".** Residential

Fund 138, LLC then assigned the mortgage to Gemini Capital Managers, LLC. A true copy of the recorded

Assignment of Mortgage is attached hereto as **Exhibit "J".** Gemini Capital Managers, LLC then assigned

the mortgage to the Plaintiff.  A true copy of the recorded Assignment of Mortgage is attached hereto as

2

**Exhibit "K".** The Plaintiff is the present owner and holder of the Note and Mortgage. The original loan documents are in the possession of the undersigned attorney.

4.    **OWNER OF PROPERTY:**  The property is now owned by the Defendant, Carlos R. Ortiz.

5.    **DEFAULT ON NOTE AND MORTGAGE:** The payment, which became due on the Note and Mortgage on June 1, 2009 and all payments due since that date have not been paid to the Plaintiff by the Defendants, the current real property owner, or by anyone on behalf of the Defendants liable on the Note and Mortgage. The Note and Mortgage are in default for failure to pay as required thereunder. On or about July 31, 2014, the Plaintiff sent a Notice-to-Cure letter to Defendant Carlos R. Ortiz, in compliance with paragraph 22 of the Mortgage, but the Defendant has failed to cure the deficiency. A true copy of the Notice-to-Cure letter is attached as **Exhibit "L".**

6.    **APPROXIMATE AMOUNT DUE AND ACCELERATION:**    The principal balance due on the Note and Mortgage is $142,778.03 together with interest accrued as allowed by the Note through June 30, 2014 of $51,599.15. Interest continues to accrue after June 30, 2014 at the rate of $27.38 per diem. The Plaintiff by filing this Complaint does accelerate the payment of the debt. In addition, during the pendency of this lawsuit, as Plaintiff incurs necessary costs and advances to protect its security, those costs and expenses shall be secured by the lien of the Mortgage and which Plaintiff is entitled to recover.

7.    **ATTORNEYS' FEES:**  Plaintiff has employed the undersigned as its attorneys to prosecute this suit and has thereby incurred reasonable attorneys' fees and is entitled to an award of attorneys' fees and costs under the Note and Mortgage. Said fees are an additional indebtedness secured by the lien of the Mortgage.

8.    **CONDITIONS PRECEDENT:** Plaintiff has complied with all conditions precedent to its right to foreclose.

9.    **RECEIVERSHIP:**  The Mortgage allows for the appointment of a receiver to preserve the property and collect the rents and pay the bills, including Plaintiff's Mortgage, costs of the receivership

3

and other reasonable and necessary costs.  If the Plaintiff deems this necessary, it will file a notice of hearing for such appointment per Rule 1.620(a), Rule 1.610 and Rule 1.620.

10.     **SUPERIORITY OF PLAINTIFF:**     The Mortgage of the Plaintiff is a lien superior in dignity to the right, title, claim of lien or interest of all the Defendants in this case, or any of them.

a.     Defendant, Homecomings Financial Network, Inc., may claim an interest in the subject real property by virtue of a mortgage recorded in OR Book 6381, Page 1182 of the Official Records of Seminole County, FL. However, any such interest is subordinate and inferior to Plaintiff's interest.

b.     The interests of each Defendant are subject, subordinate, and inferior to the right, title, interest, and lien of Plaintiff's.

11.     **UNKNOWN PARTIES:**  The Plaintiff states that it is superior to any right, title or interest of any unknown spouses, parties in possession, heirs, devisees, grantees, creditors of any such person's estate, their successors and assigns, and other unknown persons claiming by, through and under any of the Defendants..

**WHEREFORE**, Plaintiff prays that the Court determine what is due the Plaintiff, including principal, interest, costs, expenses and attorneys' fees.  In default of payment to the Plaintiff of the above amounts found due that the mortgaged property be sold under the direction of this Court for satisfaction of the Final Judgment pursuant to Chapter 45, Florida Statutes.  Plaintiff further prays that Defendants herein and all parties claiming interest by, through or under them in said property to the filing of the Lis Pendens be forever foreclosed of all right, title, interest, equity of redemption or lien in and to said property.  Plaintiff demands judgment foreclosing the mortgage and, if the proceeds of the sale are insufficient to pay the Plaintiff's claim, a deficiency judgment if allowed unless any originators or individuals assuming the debt or guarantee have been discharged pursuant to a federal bankruptcy action.  The Court should retain jurisdiction to enter all orders and judgments necessary for the complete resolution of all claims between these parties.

4

DATED: _____, 2014.

                              _____
                              Terrence J. McGuire, Esquire
                              Florida Bar No. 201154
                              Fassett, Anthony & Taylor, P.A.
                              1325 W. Colonial Drive
                              Orlando, Florida 32804
                              Telephone: 407-872-0200
                              Facsimile: 407-422-8170
                              E-mail: tmcguire@fassettlaw.com
                              Secondary E-mail: tsadaka@fassettlaw.com
                              Attorneys for Plaintiff, GTS Capital Holdings IRA, LLC

## VERIFICATION

GTS CAPITAL HOLDINGS IRA, LLC v. CARLOS R. ORTIZ, et al...

STATE OF _California_
COUNTY OF _San Diego_

Under penalty of perjury, I declare that I have read the foregoing, and the facts alleged therein are true and correct to the best of my knowledge and belief.

                              **GTS CAPITAL HOLDINGS IRA, LLC**

                By: _Greg T. Soule_
                      Greg Soule, Manager

SWORN TO AND SUBSCRIBED before me this _8th_ day of _September_, 2014.

        # SEE CA JURAT ATTACHED.

(seal)                            Notary Public
                                Print Name: _____
                                My Commission Expires: _____

5

# Jurat

State of California

County of San Diego

Subscribed and sworn to (or affirmed) before me on this _____ 08 _____ day of _September_ ,

20 _14_ by _Greg Soule,_ _____ ,

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

_Lina Smith_

Signature

(Notary Seal)

> LINA J. SMITH
> Commission # 1969856
> Notary Public - California
> San Diego County
> My Comm. Expires Feb 17, 2016

---

## OPTIONAL INFORMATION

### INSTRUCTIONS FOR COMPLETING THIS FORM

*The wording of all Jurats completed in California after January 1, 2008 must be in the form as set forth within this Jurat. There are no exceptions. If a Jurat to be completed does not follow this form, the notary must correct the verbiage by using a jurat stamp containing the correct wording or attaching a separate jurat form such as this one which does contain proper wording. In addition, the notary must require an oath or affirmation from the document signer regarding the truthfulness of the contents of the document. The document must be signed AFTER the oath or affirmation. If the document was previously signed, it must be re-signed in front of the notary public during the jurat process.*

**DESCRIPTION OF THE ATTACHED DOCUMENT**

Verification

(Title or description of attached document)

(Title or description of attached document continued)

Number of Pages __5__ Document Date _9/8/14_

(Additional information)

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the jurat process is completed.
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Signature of the notary public must match the signature on file with the office of the county clerk.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different jurat form.
  ❖ Additional information is not required but could help to ensure this jurat is not misused or attached to a different document.
  ❖ Indicate title or type of attached document, number of pages and date.
- Securely attach this document to the signed document

2014 www.NotaryClasses.com  800-873-9865

## FAIR DEBT COLLECTION PRACTICE

The Law Firm of Fassett, Anthony & Taylor, P.A., through its attorneys, represents the interest of GTS Capital Holdings IRA, LLC.  In the event that the law firm is deemed to be a "debt collector" within the meaning of the Fair Debt Collection Practices Act, we are hereby giving notice of our attempt to collect the debt, the amount of which is stated in this notice and any and all information obtained will be used for that purpose. Unless within 30 days after receipt of this notice, you dispute the validity of the debt, or any portion thereof, the debt will be assumed to be valid by us.  If we are notified in writing within 30 days that you dispute the debt or any part of it, we will either obtain verification of the debt or obtain a copy of the judgment against you and a copy of such verification or judgment will be mailed to you by us.  Additionally, upon written request, we will provide you the name and address of the original creditor to which the obligation is owed if different from the current creditor.

The law does not require that we wait until the end of the thirty (30) day period before suing to collect the debt.  If, however, you request proof of the debt or the name and address of the original creditor within the thirty (30) day period, we will suspend our efforts (through litigation or otherwise) to collect the debt until we mail the requested information to you.



# NOTE

AUGUST 7TH, 2006        CLEVELAND        OHIO

   [Date]                   [City]                [State]

113 EAST COLEMAN CIRCLE, SANFORD, FL 32773

                   [Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    148,000.00   (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is   HOMECOMINGS FINANCIAL NETWORK, INC.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   7.0000   %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the   FIRST   day of each month beginning on   OCTOBER 1ST, 2006   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   SEPTEMBER 1ST, 2036  , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   4350 VON KARMAN AVENUE, #100, NEWPORT BEACH, CA 92660                        or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $     984.65 .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**FLORIDA FIXED RATE NOTE**-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

-SN(FL) (0005)      Form 3210 1/01
VMP MORTGAGE FORMS - (800)521-7291

Page 1 of 3        Initials: C-R-O        MFFL6054 - (10/2004) / 042 970642-7

F09

EXHIBIT

*B*

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.00            % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

 -5N(FL) (0005)                    Page 2 of 3     MFFL6054 - (10/2004) / 042-970642-7

Form 3210 1/01
Initials: _C & D_

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 11. DOCUMENTARY TAX

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_Carlos R. Ortiz_ (Seal)                                              (Seal)
CARLOS R. ORTIZ            -Borrower                                  -Borrower

_____ (Seal)       Without Recourse                    (Seal)
                    -Borrower     Pay To The Order Of _____  -Borrower
                                  RESIDENTIAL FUNDING COMPANY, LLC

                                  _Bory Phan_
                                  Bory Phan, Assistant Secretary
                                  Homecomings Financial Network, Inc.
_____ (Seal)        A Delaware Corporation               (Seal)
                    -Borrower                                         -Borrower

                                  PAY TO THE ORDER OF
                                  Deutsche Bank Trust Company Americas as Trustee
                                  WITHOUT RECOURSE
                                  Residential Funding Company, LLC
_____ (Seal)        BY _Judy Faber_                      (Seal)
                    -Borrower     Judy Faber, Vice President          -Borrower

                                                        *[Sign Original Only]*

Return To:
HOMECOMINGS FINANCIAL NETWORK, INC
One Meridian Crossing, Ste. 100
Minneapolis MN 55423
Loan Number: 042-970642 7

This document was prepared by: HOMECOMINGS FINANCIAL NETWORK
4350 Von Karman Avenue, Suite 100
Newport Beach, CA 92660

RETURN TO:
MISSY DOMINGUEZ
LENDER RECORDING SERVICES
25111 COUNTRY CLUB BLVD. #275
NORTH OLMSTED, OHIO 44070

MARYANNE MORSE, CLERK OF CIRCUIT COURT
SEMINOLE COUNTY
BK 06381 Pgs 1165 - 1181; (17pgs)
CLERK'S # 2006136584
RECORDED 04/23/2006 02:22:00 PM
MTG DOC TAX 518.00
INTANG TAX 296.00
RECORDING FEES 146.00
RECORDED BY H Bailey

[Space Above This Line For Recording Data]

## MORTGAGE
2D572         MIN 100062604297064273

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  AUGUST 7TH, 2006
together with all Riders to this document.
(B) "Borrower" is
CARLOS R. ORTIZ, Single, LL

113 E. Coleman Cir.
Sanford, FL 32773

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is  HOMECOMINGS FINANCIAL NETWORK, INC.

FLORIDA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3010  1/01
MFFL7770 (05-2004) / 042-970642-7
-6A(FL) (0005) 02
Page 1 of 18        Initials CRO

EXHIBIT
C

Lender is a  CORPORATION
organized and existing under the laws of  DELAWARE
Lender's address is  4350 VON KARMAN AVENUE, #100
NEWPORT BEACH, CA 92660
(E) "Note" means the promissory note signed by Borrower and dated AUGUST 7TH, 2006
The Note states that Borrower owes Lender  ONE HUNDRED FORTY EIGHT THOUSAND AND
NO/100                                                                                Dollars
(U.S. $  148,000.00      ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than SEPTEMBER 1ST, 2036
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Condominium Rider              ☐ Second Home Rider
☐ Balloon Rider               ☐ Planned Unit Development Rider  ☐ 1-4 Family Rider
☐ VA Rider                    ☐ Biweekly Payment Rider         ☐ Other(s) [specify]

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

-6A(FL) (0608).02                    Page 2 of 16              Initials: C.E.O              Form 3010  1/01
MIFFL3770 (05/2006) / 042-496642-7

Book6381/Page1166    CFN#2006136584

**(P)** "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** "**Successor In Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the COUNTY    [Type of Recording Jurisdiction]
of SEMINOLE    [Name of Recording Jurisdiction]:

Legal description attached hereto and made a part hereof

Parcel ID Number:  12-20-30-502-0000-0280    which currently has the address of
113 EAST COLEMAN CIRCLE    ,    [Street]
SANFORD    [City], Florida  32773    [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument.

-6A(FL) (0005/02)    Page 3 of 16    Initials CRO    Form 3010  1/01
MFFL7770 (05/2006) / 042-970647-7

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment

-6A(FL) (0005) 02
MFFL7770 (05/2006) / 042-970642-7

Page 4 of 16

Initials _CRO_

Form 3010  1/01

Book6381/Page1168    CFN#2006136584

can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest

-6A(FL) (0005-02)                              Page 5 of 16                          Form 3010    1/01
MFFL7770 (05/2006) / 042-970642-7

shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar charges occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

-6A(FL) (0008).02                    Page 6 of 16                    Initials _CEO_                    Form 3010  1/01

MFFL7770-05-20061 / 042-970642-7

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

initials **GRO**

-6A(FL) (0005.02)                       Page 7 of 15                       Form 3010   1/01
VMP® 7770 (01/2006) /  042-400642-7

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument, and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

GMD -6A(FL) -0069.02                    Initials: CRO                    Form 3010    1/01
MFFL7770 (05-2006) / (042-970/642-7              Page 8 of 16

Book6381/Page1172    CFN#2006136584

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

-6A(FL) (0008).03    Page 8 of 16    _CRO_    Form 3010    1/01
MFPL3770 (05/2006) / 042-670642-7

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of

Init: CRO

-6A(FL)-0001163    Page 6 of 16    Form 3010  1/01

MFFL3750 (05/2006) / 042-970662-7

any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers

-6A(FL) (0005.02)                    Page 11 of 16              Initials _CRO_              Form 3010   1/01

MFFL7770 (05/2006) / 042-970642-7

Book6381/Page1175    CFN#2006136584

unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the

-6A(FL) (0509).02                    Page 12 of 16                    Form 3010  1/01

purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

-6A(FL) (0005) 02                    Page 12 of 16           Form 3010  1/01
MFFL7770 (01/20) e / 042-970642-7

Book6381/Page1177    CFN#2006136584

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

25. **Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

-8A(FL) (0005) 02                         Page 14 of 16                         Form 3010  1/01
M39127773 (05-2006)  /  042-970642-7

Book6381/Page1178   CFN#2006136584

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____        _____ (Seal)
NANCY J. REED                                                         -Borrower

                                        CARLOS R. ORTIZ
                                        113 EAST COLEMAN CIRCLE
                                        SANFORD, FL 32773
_____
Lisa M. Nong                                                           (Address)

                                        _____ (Seal)
                                                                      -Borrower

                                                                       (Address)

_____ (Seal)             _____ (Seal)
                     -Borrower                                         -Borrower

        (Address)                                 (Address)

_____ (Seal)             _____ (Seal)
                     -Borrower                                         -Borrower

        (Address)                                 (Address)

_____ (Seal)             _____ (Seal)
                     -Borrower                                         -Borrower

        (Address)                                 (Address)

-6A(FL) (0005) 02                       Page 13 of 18              Form 3010   1/01
MFFL 7770 (05-2006) / 042-970642-7

Book6381/Page1179   CFN#2006136584

STATE OF FLORIDA,                    *SEMINOLE*    County ss:
The foregoing Instrument was acknowledged before me this *AUGUST 9th*,    2006  by
CARLOS R. ORTIZ

who is personally known to me or who has produced *FL DRIVER LICENSE*    as identification.

_____
Notary Public

NANCY J REED
MY COMMISSION # DD528566
EXPIRES June 12, 2007

_____*CRO*

-6A(FL) (0006.22)                    Page *15* of 16                    Form 3010  1/01
MFFL7770 (05/2006)  /  042 950642-7

Book6381/Page1180   CFN#2006136584

SCHEDULE A -- CONTINUED                                    Commitment No.:  20572

EXHIBIT "A"

SITUATE IN THE COUNTY OF SEMINOLE, STATE OF FLORIDA, TO WIT:

LOT 8, SOUTH PINECREST, THIRD ADDITION, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT
BOOK 11, PAGES 62 AND 63, PUBLIC RECORDS OF SEMINOLE COUNTY, FLORIDA.

PARCEL ID # : 122830692090000080
PROPERTY ADDRESS: 113 COLEMAN CIRCLE EAST, SANFORD, FL  32773

Chicago Title Insurance Company          This commitment is invalid unless the        Page 2
                                         Insuring Provisions and Schedules A &
                                         B are attached.

Book6381/Page1181    CFN#2006136584

GMAC#: 7429706427
COL ID#:

## ALLONGE

This endorsement is a permanent part of the Note in the amount of $148,000.00.

BORROWER:    CARLOS R ORTIZ
PROPERTY:    113 EAST COLEMAN CIRCLE, SANFORD, FL 32773

PAY TO THE ORDER OF:

RESIDENTIAL FUNDING COMPANY, LLC

WITHOUT RECOURSE

DEUTSCHE BANK TRUST COMPANY AMERICAS, AS TRUSTEE, BY
RESIDENTIAL FUNDING COMPANY, LLC, ATTORNEY IN FACT

Signor: Shelly Moore
Title : Authorized Officer

Pay to the order of
Residential Fund 138, LLC
Without recourse
Residential Funding Company LLC f/k/a
Residential Funding Corporation
,Authorized Officer

EXHIBIT
tabbies
D

## ALLONGE TO NOTE

LOAN #: 7429706427

ORIGINAL NOTE AMOUNT:  $ 148000

BORROWER NAME(S):  Carlos R. Ortiz

PROPERTY ADDRESS: 113 East Coleman Circle, Sanford, Florida 32773

NOTE DATE: 8/7/2006

ORIGINATOR: Homecomings Financial Network, Inc.

PAY TO THE ORDER OF: Gemini Capital Managers, LLC
WITHOUT RECOURSE

COMPANY NAME:
Residential Fund 138, LLC

BY: Michelle Sandy, As C.F.O. of R.E.M.I.C.,
As Managing Member of Residential Fund 138, LLC



## ALLONGE FOR THE PURPOSE OF NOTE ENDORSEMENT

Loan #: 7429706427

 S170227ALG
REF

This Allonge is effective as of 06/21/2013 and is to be attached to and made a part of that certain NOTE further described herein;

Note Date:                     08/07/2006
Original Note Amount:          $148,000.00
Executed By/Borrower(s):       **CARLOS R. ORTIZ**
Payee/Beneficiary:             **Homecomings Financial Network Inc.**

It is to be read together with, and is hereby incorporated by reference in, the attached instrument, and contributes an integral part thereof.

Executed on: 06/21/2013

WITHOUT RECOURSE, PAY TO THE ORDER OF:

**GTS Capital Holdings IRA, LLC**

Gemini Capital Managers, LLC

By: _____
Name: Michaela Brycheova
Title:   Assistant Vice President



**EXHIBIT**
_F_

*1088 0609*
*7427 706427*

Recording Requested By:
OCWEN LOAN SERVICING, LLC

When Recorded Return To:

MARYANNE MORSE, SEMINOLE COUNTY
CLERK OF CIRCUIT COURT & COMPTROLLER
BK 08275 Pg 0131; (1pg)
CLERK'S # 2014062629
RECORDED 06/05/2014 11:45:48 AM
RECORDING FEES 10.00
RECORDED BY K DeVore

Record 1st

## CORRECTIVE
## CORPORATE ASSIGNMENT OF MORTGAGE

Seminole, Florida
SELLER'S SERVICING #:742970642T "ORTIZ"                    **ASSIGNMENT IS BEING RECORDED TO REPLACE PREVIOUSLY
                                                           RECORDED ASSIGNMENT, DUE TO ERROR WITH BOOK AND PAGE
MERS #: 100028042970642T3  SIS #: 1-888-679-6377           REFERENCE ON MORTGAGE.  ASSIGNMENT PREVIOUSLY RECORDED
                                                           ON 3/9/09 DOC 20090255344**

Date of Assignment: August 7th, 2013
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), SOLELY AS NOMINEE FOR
HOMECOMINGS FINANCIAL NETWORK, INC, ITS SUCCESSORS AND/OR ASSIGNS      at PO BOX 2026
FLINT MI 48501, 1901 E VOORHEES ST. STE C, DANVILLE, IL 61834  1-888-679-6377
Assignee: DEUTSCHE BANK TRUST COMPANY AMERICAS AS TRUSTEE et C/O 1100 VIRGINIA DRIVE, FT
WASHINGTON, PA 19034
Executed By: CARLOS R ORTIZ, SINGLE  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
("MERS"), SOLELY AS NOMINEE FOR HOMECOMINGS FINANCIAL NETWORK, INC, ITS SUCCESSORS
AND/OR ASSIGNS
Date of Mortgage: 08/07/2006 Recorded: 08/23/2006 in Book/Reel/Liber: 6381 Page/Folio: 1165 as Instrument
No.: 2006136584  In the County of Seminole, State of Florida.

Property Address: 113 EAST COLEMAN CIRCLE, SANFORD, FL 32773

  KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $148,600.00 with interest, secured thereby, with all moneys now owing
or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the
covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee,
the Assignor's beneficial interest under the Mortgage.

  TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), SOLELY AS NOMINEE FOR
HOMECOMINGS FINANCIAL NETWORK, INC, ITS SUCCESSORS AND/OR ASSIGNS
On  8/8/13

By: *Karen Smith*
      KAREN SMITH           , Assistant
Secretary


STATE OF Iowa
COUNTY OF Black Hawk

On  8-8-13   , before me, TERESA OLSON, a Notary Public in and for Black Hawk in the State of Iowa,
personally appeared       KAREN SMITH       , Assistant Secretary, personally known
to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

WITNESS my hand and official seal,

*Teresa Olson*
TERESA OLSON
Notary Expires: 07/03/2016  #779236                                    (This area for notarial seal)

Prepared By: *Karen Smith*
Karen Smith, OCWEN LOAN SERVICING, LLC 3451 Hammond Av Waterloo IA  50702 1-800-766-4622

TERESA OLSON
COMMISSION NO.779236
MY COMMISSION EXPIRES
JULY 3, 2016

Book8275/Page131    CFN#2014062629

EXHIBIT
G
tabbies

MARYANNE MORSE, CLERK OF CIRCUIT COURT
SEMINOLE COUNTY
BK 07755 Pgs 1317 - 1319; (3pgs)
CLERK'S # 2012046391
RECORDED 04/20/2012 03:31:36 PM
RECORDING FEES 27.00
RECORDED BY J Eckenroth(all)

_Corporate Assignment of Mortgage_

Document Title

OFB# 640 110

When Recorded Mail to:
Financial Dimensions, Inc.
1400 Lebanon Church Road
Pittsburgh, PA 15236

Grantor: Deutsche Bank Trust Company Americas

Grantee: Residential Funding Company, LLC

Page 1

Book7755/Page1317    CFN#2012046391

**EXHIBIT**

**H**

When Recorded Mail To:
Financial Dimensions, Inc.
1400 Lebanon Church Road
Pittsburgh, PA 15236

690110-1

Recording Requested By:
GMAC MORTGAGE, LLC

When Recorded Return To:

SHELLY MOORE
GMAC MORTGAGE, LLC
3451 HAMMOND AVENUE
WATERLOO, IA 60702

**CORPORATE ASSIGNMENT OF MORTGAGE**

Seminole, Florida
SELLER'S SERVICING #:7429706427 "ORTIZ"

MERS #: 100062854397064273  SIS #: 1-888-679-6377

Date of Assignment: November 29th, 2011
Assignor: DEUTSCHE BANK TRUST COMPANY AMERICAS AS TRUSTEE BY RESIDENTIAL FUNDING
COMPANY LLC FKA RESIDENTIAL FUNDING CORPORATION, ITS ATTORNEY IN FACT at 1100 VIRGINIA
DRIVE, FT. WASHINGTON, PA 19034
Assignee: RESIDENTIAL FUNDING COMPANY, LLC at 1100 VIRGINIA DRIVE, FT WASHINGTON, PA 19034
Executed By: CARLOS R ORTIZ, SINGLE  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. AS
NOMINEE FOR HOMECOMINGS FINANCIAL NETWORK INC.
Date of Mortgage: 08/07/2006 Recorded: 08/23/2006 in Book/Reel/Liber: 6381 Page/Folio: 1165 as Instrument
No.: 2006136584  in the County of Seminole, State of Florida.

Property Address: 113 EAST COLEMAN CIRCLE, SANFORD, FL  32773

KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths DOLLARS and
other good and valuable consideration, paid to the above named Assignor, the receipt and sufficiency of which is
hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having
an original principal sum of $148,000.00 with interest, secured thereby, with all moneys now owing or that may
hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and
provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's
beneficial interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.

DEUTSCHE BANK TRUST COMPANY AMERICAS AS TRUSTEE BY RESIDENTIAL FUNDING COMPANY LLC
FKA RESIDENTIAL FUNDING CORPORATION, ITS ATTORNEY IN FACT
On 11/29/2011

*for RALI 2006QS12

By:
_Shelly Moore_
Authorized Officer

STATE OF Iowa
COUNTY OF Black Hawk

On 11/29/2011 , before me, RACHEL MOORE, a Notary Public in and for Black Hawk in the State of Iowa,
personally appeared _Shelly Moore_ , Authorized Officer, personally known to me (or proved to
me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and
that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

WITNESS my hand and official seal.

_Rachel_
RACHEL MOORE
Notary Expires: 09/23/2013 #764617


RACHEL MOORE
COMMISSION NO. 764617
MY COMMISSION EXPIRES
September 23, 2013

(This area for notarial seal)

Prepared By:
Shelly Moore, GMAC MORTGAGE, LLC 3451 Hammond Ave Waterloo IA 50702
2353 County Dr. St Paul, MN 55447 1-800-766-4622

*RES*BANKGMAC*11/29/2011 11:17:01 AM* GMAC2010MACA000000000000349606* FLSEMIV 7429706427 FLESTATE_MORT_ASSIGN_ASSN *ERMGMAC*

Book7755/Page1318    CFN#2012046391

Exhibit "A"

SITUATED IN THE COUNTY OF SEMINOLE, STATE OF FLORIDA, MORE FULLY DESCRIBED AS: LOT 8, SOUTH PINECREST, THIRD ADDITION, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 11, PAGES 62 AND 63, PUBLIC RECORDS OF SEMINOLE COUNTY FLORIDA. PERMANENT PARCEL NUMBER: 12-20-30-502-0000-0080

Book7755/Page1319    CFN#2012046391

Recording Requested By:
OCWEN LOAN SERVICING, LLC

When Recorded Return To:

MARYANNE MORSE, SEMINOLE COUNTY
CLERK OF CIRCUIT COURT & COMPTROLLER
BK 08275 Pg 0132; (1pg)
CLERK'S # 2014062630
RECORDED 06/09/2014 11:45:48 AM
RECORDING FEES 10.00
RECORDED BY H DeVore

Record 2nd

## CORPORATE ASSIGNMENT OF MORTGAGE

Seminole, Florida
SELLER'S SERVICING #:7429706427 "ORTIZ"

*ASSIGNMENT IS BEING RECORDED TO REPLACE PREVIOUSLY
RECORDED ASSIGNMENT DUE TO WRONG BOOK/PAGE
REFERENCED FOR MORTGAGE, PREVIOUSLY RECORDED
ASSIGNMENT RECORDED 4/20/12 DOC 2012046392**

MERS #: 100062604297064273 SIS #: 1-888-679-6377

Date of Assignment: August 7th, 2013
Assignor: RESIDENTIAL FUNDING COMPANY, LLC at 1100 VIRGINIA DRIVE, FT. WASHINGTON, PA 19034
Assignee: RESIDENTIAL FUND 138, LLC at 901 CALLE AMANECER, SUITE 150, SAN CLEMENTE, CA 92673
Executed By: CARLOS R ORTIZ, SINGLE  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
("MERS"), SOLELY AS NOMINEE FOR HOMECOMINGS FINANCIAL NETWORK, INC, ITS SUCCESSORS
AND/OR ASSIGNS
Date of Mortgage:  08/07/2006 Recorded:  08/23/2006  in Book/Reel/Liber: 6381 Page/Folio: 1165 as Instrument
No.: 2006136584  In the County of Seminole, State of Florida.

Property Address: 113 EAST COLEMAN CIRCLE, SANFORD, FL  32773

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $148,000.00 with interest, secured thereby, with all moneys now owing
or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the
covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee,
the Assignor's beneficial interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.

RESIDENTIAL FUNDING COMPANY, LLC
On __8/8/13__

By: __Karen Smith__
       KAREN SMITH
_____, Authorized
Officer

STATE OF Iowa
COUNTY OF Black Hawk

On _8-8-13_, before me, TERESA OLSON, a Notary Public in and for Black Hawk in the State of Iowa,
personally appeared _____KAREN SMITH_____, Authorized Officer, personally known
to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

WITNESS my hand and official seal,

__Teresa Olson__
TERESA OLSON
Notary Expires: 07/03/2016  #779238

TERESA OLSON
COMMISSION NO.779238
MY COMMISSION EXPIRES
JULY 3, 2016

(This area for notarial seal)

Prepared By: Karen Smith
Karen Smith, OCWEN LOAN SERVICING, LLC 3451 Hammond Av Waterloo IA  50702  1-800-766-4622

*KS*KS1GMAC*08/07/2013 03:08:40 PM* GMAC01GMACA0000000000000004130062* FLSEMIN* 7429706427 FLSTATE_MORT_ASSIGN_ASSN *KS*KS1GMAC*

**EXHIBIT**
**I**

MARYANNE MORSE, SEMINOLE COUNTY
CLERK OF CIRCUIT COURT & COMPTROLLER
BK 08275 Pgs 0133 - 135; (3pgs)
CLERK'S # 2014062631
RECORDED 06/09/2014 11:45:48 AM
RECORDING FEES 27.00
RECORDED BY H DeVore

**This Document Prepared By:**
Elizabeth Vogels
Residential Fund 138, LLC
901 CALLE AMANECER #150
SAN CLEMENTE, CA. 92673

**When Recorded Return To:**
Residential Fund 138, LLC
901 CALLE AMANECER #150
SAN CLEMENTE, CA. 92673

Loan # 7429706427

## ASSIGNMENT OF Mortgage

For Value Received, **Residential Fund 138, LLC**, holder of a Mortgage (herein "Assignor") whose address is **901 Calle Amanecer Suite 150, San Clemente, CA 92673** does hereby grant, sell, assign, transfer and convey unto **Gemini Capital Managers, LLC** whose address is *3901 Main St. #503 Flushing NY 11354* all beneficial interest under that certain Mortgage described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage

Original Lender:          **MERS, Inc. as nominee for Homecomings Financial Network, Inc.**
Original Borrower(s):     **Carlos R. Ortiz, Single**
Date of Mortgage:         **8/7/2006**
Original Loan Amount:     **$148000**
Property Address:         **113 East Coleman Circle, Sanford, Florida 32773**
Recorded in Seminole County, Florida on: 8/23/2006, Book 6381, Page 1165

**LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT "A"**

**PARCEL #:** 12-20-30-502-0000-0080

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on *June 20th*, 2013

Residential Fund 138, LLC

BY: Michelle Sandy, As C.F.O. of R.E.M.I.C., As Managing Member of Residential Fund 138, LLC

Witness: _____          Witness: _____
Elizabeth Vogels                          Angella Jones

EXHIBIT
J

### ACKNOWLEDGMENT

State of California
County of Orange

On _____ June 20 ᵗʰ _____, 2013 before me, AUBRIANNA GROCKI, Notary Public, personally appeared Michelle Sandy, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon which the person acted, executed the instrument.

I certify under PENALTY AND PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
AUBRIANNA GROCKI, Notary Public



AUBRIANNA GROCKI
COMM. #1962605
Notary Public - California
Orange County
My Comm. Expires Dec. 3, 2015

**EXHIBIT "A"**

SITUATED IN THE COUNTY OF SEMINOLE, STATE OF FLORIDA, MORE FULLY DESCRIBED AS: LOT 8, SOUTH PINECREST, THIRD ADDITION, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 11, PAGES 62 AND 63, PUBLIC RECORDS OF SEMINOLE COUNTY FLORIDA.

Book8275/Page135    CFN#2014062631

MARYANNE MORSE, SEMINOLE COUNTY
CLERK OF CIRCUIT COURT & COMPTROLLER
BK 08275 Pg 0136; (1pg)
CLERK'S # 2014062632
RECORDED 06/09/2014 11:45:48 AM
RECORDING FEES 10.00
RECORDED BY H DeVore

Record & Return To and Prepared By:
Corporation Service Company
100 Wood Hollow Drive, Ste 170
Novato, CA 94945
800-545-0683
Melinda Myers

Loan #: 7429706427
Deal Name: Gemini Capital
FL Seminole

REF          S170225ASG

### ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, Gemini Capital Managers, LLC, 3901 Main Street, Ste 503, Flushing, NY, 11354, herein ("Assignor"), does hereby grant, sell, assign, transfer and convey, without recourse unto GTS Capital Holdings IRA, LLC whose address is 5465 Repecho Drive, J104, San Diego, CA 92124, herein ("Assignee") the loan document(s) identified herein, including all of Assignor's loan documents, including documents in possession of Assignor pertaining to the loan as evidenced by the Note, and including but not limited to, any loan agreements, guarantees, security agreements, any amendments of supplements and modification thereto, all affidavits and certificates, tenant estoppel certificates and/or subordinations, general credit information, including letters of credit, credit records from Assignor, payment histories, signed loan applications, appraisals, property insurance policies, certificates of mortgage insurance, title insurance policies, escrow accounts and attorney's opinions.

Original Document(s) to be assigned:

Borrower(s): CARLOS R. ORTIZ, SINGLE
Original Lender: Mortgage Electronic Registration Systems Inc. as nominee for Homecomings Financial Network Inc.  Dated: 08/07/2006  Recorded: 08/23/2006  Book: 06381  Page: 1165
Instrument: 2006136584  in Seminole, FL. Loan Amount: $148,000.00

Subject to the right and equity of redemption, if any there be of said mortgagor and it's heirs and assigns in the same.

TO HAVE AND TO HOLD the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described instrument(s).

IN WITNESS WHEREOF, Assignor has caused this Assignment to be executed and delivered, effective 06/21/2013.

Witnesses                                    Gemini Capital Managers, LLC

Name: Brandy Cooper

Name: Melinda Myers                          By:
                                             Name:  Michaela Brychcova
                                             Title:  Assistant Vice President

State of California
County of Marin

On 06/21/2013 before me, M. Borjon, Notary Public, personally appeared Michaela Brychcova, who proved to me on the basis of satisfactory evidence to be the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public: M. Borjon
My Comm. Expires: 09/25/2014

M. BORJON
Commission # 1905532
Notary Public - California
Marin County
My Comm. Expires Sep 25, 2014

Book8275/Page136    CFN#2014062632

**EXHIBIT**

**K**

# FASSETT, ANTHONY & TAYLOR, P.A.

### ATTORNEYS AT LAW

| | | |
|---|---|---|
| LADD H. FASSETT<br>ROBERT W. ANTHONY<br>JOHN A. TAYLOR<br><br>PHIL A. D'ANIELLO<br>TERRENCE J. McGUIRE<br>BENJAMIN A. SWIFT<br>SPENCER GLEDHILL | 1325 WEST COLONIAL DRIVE<br>ORLANDO, FLORIDA 32804<br>―――<br>TELEPHONE (407) 872 - 0200<br>TELECOPIER (407) 422 - 8170 | TERRENCE J. McGUIRE, ESQ.<br><br>Direct Extension: 3039<br>Email: tmcguire@fassettlaw.com<br>http://fassettlaw.leadcounsel.com |

July 31, 2014

VIA CERTIFIED MAIL #70130600000075538191
RETURN RECEIPT REQUESTED
AND REGULAR US MAIL

Mr. Carlos R. Ortiz
113 E. Coleman Circle
Sanford, FL 32773

    Re:    Mortgage on 113 East Coleman Circle, Sanford, FL  32773

Dear Mr. Carlos R. Ortiz:

As advised in the previous letter to you dated July 15, 2014, this law firm represents GTS Capital Holdings IRA, LLC, the owner and holder of a Promissory Note and Mortgage originally executed by you on August 7th, 2006.  Please consider this letter as superseding and correcting the prior letter. The mortgage serves as security for the payment of the loan, and constitutes a mortgage lien on the above-identified real property.  You have been in default under the loan since June 1st, 2009.  Please consider this correspondence as a demand upon you to cure the default within 30 days of the date of this letter.  To cure your default, the following amounts must be paid within 30 days of the date of this letter:

| | |
|---|---|
| Unpaid principal: | $  60,063.65 |
| Unpaid accrued interest: | $  51,599.15 |
| Late Charges: | $       98.46 |
| Attorney's Fees Due: | $    2,000.00 |
| Total Past Due Amount: | $ 113,761.26 |

In the event this entire amount is not paid to GTS Capital Holdings IRA, LLC c/o our law firm within the 30-day time period, your loan will be deemed in default, and without further notice the entire unpaid balance of the note and mortgage will be deemed due and owing.

If foreclosure proceedings are commenced, you have the right to assert therein the non-existence of the default or any other defense you may have to acceleration and foreclosure.

> **EXHIBIT**
> **L**
> tabbies

July 31, 2014
Page 2

This letter is to be considered the collection of a debt.

## FAIR DEBT COLLECTION PRACTICE NOTICE

The law firm of Fassett, Anthony & Taylor, P.A., through its attorneys, represents the interest of GTS Capital Holdings IRA, LLC. In the event that the law firm is deemed to be a "debt collector" within the meaning of the Fair Debt Collection Practices Act, we are hereby giving notice of our attempt to collect the debt, the amount of which is stated in the letter attached hereto and any and all information obtained will be used for that purpose. Unless the law firm is notified, within 30 days, we will assume the debt is valid. If we are notified in writing within 30 days that you dispute the debt, or any part of it, we will either obtain verification of the debt or obtain a copy of the judgment or other instrument upon which the obligation is based and provide a copy. Additionally, upon written request, we will provide the name and address of the original creditor to which the obligation is owed.

The law does not require that we wait until the end of the thirty (30) day period before suing to collect the debt. If, however, you request proof of the debt or the name and address of the original creditor within the thirty (30) day period, we will suspend our efforts (through litigation or otherwise) to collect the debt until we mail the requested information to you.

Sincerely,

Terrence J. McGuire

cc: Greg Soule

F:\CLIENTS\9064\Letters\TJM demand ltr.docx

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mr. Carlos Ortiz
113 E. Coleman Circle
Sanford, FL 32773

9064-1

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent  ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
C. Ortiz    8/1/14

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☑ Certified Mail  ☐ Express Mail
☐ Registered  ☐ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)    7013 0600 0000 7553 8191

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540