**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|   |   |   |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
|   | ) |   |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | ) | Chapter 11 |
|   | ) |   |
| Debtors. | ) | Jointly Administered |
|   | ) |   |

**ORDER SUSTAINING RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO CLAIM NUMBER 5970 FILED BY MICHAEL AND GLORIA McGUINTY**

Pending before the Court is the *ResCap Borrower Claims Trust's Seventy-Fifth Omnibus Objection to Claims (No Liability Borrower Claims)* (the "Objection," ECF Doc. # 7552). It is supported by the declarations of Deanna Horst ("Horst Declaration," ECF Doc. # 7552-3) and Norman S. Rosenbaum (ECF Doc. # 7552-4). The Objection addresses 26 claims (*see* Obj. Ex. A), including Proof of Claim Number 5970 filed by Michael and Gloria McGuinty (the "Claim"). The McGuintys filed three oppositions to the Objection (the "First Opposition," ECF Doc. # 7578; the "Second Opposition," ECF Doc. # 7608; and the "Third Opposition," ECF Doc. # 7702). The Trust filed a reply to several claims including the Claim on November 7, 2014, (the "Reply," ECF Doc. # 7727), supported by a supplemental declaration of Ms. Horst ("Supplemental Horst Declaration," ECF Doc. # 7727-1). The Court held a hearing on November 13, 2014 and took the Objection to the Claim under submission. At the hearing, the Court provided the McGuintys an opportunity to submit a supplemental response to the Trust's Reply. The McGuintys filed a supplemental response on November 18, 2014 (the "Supplemental Response," ECF Doc. # 7787). This Order sustains the Objection with respect to the McGuintys' Claim.

### A.     The Claim

The McGuintys filed a proof of claim on October 19, 2012 (Claim No. 1963) and subsequently filed another proof of claim on November 28, 2012 (Claim No. 5970), both asserting general unsecured claims against Residential Capital, LLC ("ResCap"). (*See* Horst Supp. Ex. II.) The second claim is the subject of the Trust's Objection.[1] The McGuintys' Claim is based on the denial of a Home Affordable Modification Program ("HAMP") modification. (*Id.*) According to the McGuintys, (1) Debtor GMAC Mortgage Corporation ("GMACM") required the McGuintys to provide "strange requests" for "documents that dated back to 2000 or ten years old" in order to review the modification, (2) GMACM wrongfully refused to grant a modification of their loan, and (3) GMACM sold the property in a foreclosure sale for a profit.

### B.     The McGuintys' Loan History

GMACM originated a loan in the amount of $273,500 to the McGuintys on August 12, 2003 (the "Loan"), secured by a mortgage on 4757 Roundtree Drive, Brighton, Michigan 48116 (the "Property"). (Obj. Ex. A at 56; Horst Supp. Ex. JJ.) GMACM serviced the Loan from the origination date through November 18, 2011. (Obj. Ex. A at 56.) On June 6, 2009, the McGuintys submitted an application for a loan modification. (*Id.* at 57.) The Trust alleges that the loan modification was denied on July 20, 2009 due to insufficient income evidenced by documents provided by the McGuintys in their application. (*Id.*) Specifically, the documentation the McGuintys submitted indicated that the couple received a total of $4,595.17

---

[1] In its Fiftieth Omnibus Objection (ECF Doc. # 5162), the Trust objected to both of the McGuintys' claims by initially only addressing Claim No. 5970, but later addressing both Claim No. 5970 and Claim No. 1963 in its reply (*see* ECF Doc. # 5736). The Court overruled the Trust's previous objection to both of the McGuintys' claims because the Trust failed to sufficiently shift the burden to the McGuintys in the objection papers and could not receive the benefit of any of the Trust's new arguments raised in its reply because the McGuintys were not afforded an opportunity to respond to them. (*See* ECF Doc. # 6335.) In this Objection, the Trust only addresses Claim No. 5970; Claim No. 1963 remains outstanding.

per month from pension and social security income, with total expenses amounting to $7,345.20, generating a monthly deficit of $2,750.53. (*Id*.) The McGuintys' monthly mortgage payment at the time was $620.45, meaning their monthly deficit was four times greater than their then current mortgage payment. (*Id*.) The Trust alleges that even if GMACM eliminated the entire $620.45 mortgage payment, the McGuintys would still be operating at a deficit. (*Id*.)

According to the Debtors' books and records, the McGuintys applied for another loan modification on February 7, 2010. (*Id*. at 57–58.) GMACM's servicing notes indicate that on February 24, 2010, GMACM informed the McGuintys of missing information needed to assess this loan modification. (*Id*. at 57.) Specifically, GMACM requested the award letter for the McGuinty's Chase IRA account, the award letter for the GM retirement plan, and a signed hardship affidavit. (*Id*.) The Trust submits that these documents were necessary to assess and confirm the McGuintys' income listed on their application. (*Id*.) Ultimately, this modification was rejected on March 10, 2010 because of insufficient income to support a modified payment. (*Id*.) The McGuintys' second application indicated that their monthly income consisted of $4,835.17 from their pension and social security income and an additional $5,000 of borrowed funds from their IRA account. (*Id*. at 58.) GMACM does not recognize borrowed funds as monthly income and therefore was unable to consider the additional funds in assessing the application. (*Id*.) The listed expenses in the McGuintys' application were $7,998.78 per month, which is greater than the expenses on the prior application. (*Id*.) The deficit in the funds that were eligible for review amounted to $3,153.61—more than four times greater than their then current monthly mortgage payment of $748.04. (*Id*.)

On December 17, 2010, the McGuintys filed a third application for a loan modification, at which time they were approved for a HAMP trial plan with an initial payment due on March 1,

2011, and subsequent payments due on April 1, 2011 and May 1, 2011. (*Id.*) The McGuintys failed to make the initial trial payment on March 1, 2011, and as a result of their failure to make the initial payment, they were denied a permanent loan modification on April 6, 2011. (*Id.*)

On April 9, 2011, the Loan was referred for foreclosure. (*Id.* at 59.) The Property was sold on May 18, 2011; the redemption period expired on November 18, 2011. (*Id.*) Fannie Mae acquired the Property through the foreclosure sale with a credit bid of $247,537.59—the total balance owed by the McGuintys at the time of the sale, including principal, interest, escrows, and fees. (*Id.*; Horst Supp. Ex. KK.) Fannie Mae subsequently sold the Property on February 13, 2012 for $230,000. (Obj. Ex. A at 59; Horst Supp. Ex. LL.)

### C. The Parties' Arguments

In its Objection, the Trust asserts that the Debtors are not liable for denying the McGuintys' loan modification applications because: (1) the McGuintys did not qualify for a loan modification due to insufficient income; (2) the information requested by the Debtors with respect to the modification applications was necessary for the account to be reviewed for modification; and (3) the trial loan modification was not made permanent due to the failure of the McGuintys to make the requisite initial payment. (*Id.* at 56.) The Trust also argues that even though GMACM was the mortgagee for the Loan at the time of the foreclosure sale, the Property sold for less than the amount owed and therefore, the sale did not result in any profits. (*Id.* at 59.)

The McGuintys filed three responses in opposition to the Objection. The First Opposition attaches a letter dated August 30, 2006 from GMACM allegedly demonstrating that (1) the McGuintys had a great 35-year credit history with GMACM that should not be ignored and (2) they were offered a $158,000.00 cash out option that they never took. (First Opp. at 1.)

4

The McGuintys assert that they never missed a mortgage payment, but do not provide further documentation of this in support. (*Id.*)

In the Second Opposition, the McGuintys argue that under the Federal Disability Act, Mr. McGuinty, who was under the Federal Compensation Program for Disability and Handicap Persons, was eligible for the HAMP Program. (Second Opp. at 1.) The McGuintys then address the same August 30, 2006 letter attached to the First Opposition, asserting that the letter shows they were in good standing and were offered four options including a modification lowering their monthly payments. (*Id.*) The McGuintys next argue that GMACM resold the Property for $500,000 and therefore made a $17,551.53 profit from the sale. (*Id.*) No documentation of the asserted sale price is provided. The McGuintys question why the "benefits" or profits of such sale were not offered to them in light of Mr. McGuinty's "active 35 year history [in which he] paid GMAC bank thousands of dollars." (*Id.*; *see also id*. Ex. 3.) The Second Opposition also attaches a letter from the Federal Reserve Board dated April 17, 2014, which addresses the eligibility of the McGuintys' Loan under the payment agreement between the Federal Reserve Board and GMACM. (*Id*. Ex. 4.) This letter indicates that initially the Loan was deemed ineligible for payment under the agreement because the first foreclosure action against the Property was filed on April 14, 2011, which was not in the relevant January 1, 2009 to December 31, 2010 time frame. (*Id.*) Nevertheless, the letter indicates that GMACM confirmed that it would pay the McGuintys $7,500. (*Id.*) The McGuintys highlight that the letter specifically notes that they "may pursue additional actions related to [their] foreclosure," and argue that this establishes that they were clearly wronged by GMACM. (*Id.*) The McGuintys then appear to argue that their two homes[2] are worth over $900,000, but they have not been able to keep their

---

[2] Based on the letterhead on their oppositions, the McGuintys now appear to live in Florida.

5

homes, despite being current on their mortgages, property taxes, and insurance. (*Id.*) They argue that it was GMACM's "plan [to] deplete [them] of [their] capital assets and then take both Florida and Michigan properties." (*Id.*)

The Third Opposition asserts that the McGuintys are owed $690,184.04 for the Claim. (Third Opp. at 1.) The McGuintys argue that on September 19, 2014 they were denied a refinance of their Florida home because they would not pay a Home Equity Line of Credit ("HELOC") balance of $98,945.00. (*Id.*) According to Exhibit 4 annexed to the Third Opposition, which appears to be a statement of a loan for their Florida property as of August 17, 2006, they had taken out a HELOC for this alleged amount. (*Id.* Ex. 4.) The McGuintys do not indicate whether they are in default on the HELOC or who owns or services this HELOC. (*Id.* at 1.) The McGuintys assert that in 2008, prior to the foreclosure sale, there was an offer to purchase their Michigan Property for $485,000, which is well above the amount the Property was later sold for. (*Id.*) According to the McGuintys, the Property was sold through the foreclosure sale for $300,000, and that GMACM had to have made a profit because only $229,986.06 was owed on the mortgage, leaving $52,537.59. (*Id.*) The McGuintys then address a letter dated July 20, 2009 in which GMACM denied the McGuintys a loan modification. (*Id.* Ex. 6.) The letter appears to be a form letter in which the sender checks a box next to the asserted reason for the denial of the modification. (*Id.*) The letter provided by the McGuintys does not include a check mark in the box next to the option of insufficient income. (*Id.*) The McGuintys did not provide the full document, however; only the first page was provided. (*Id.*) As to the "strange request" asserted in their proof of claim, the McGuintys argue that GMACM wanted a copy of Mr. McGuinty's exit letter from GM as proof that he was a GM employee. (*Id.*) Mr. McGuinty argues that he did not have such a letter and that "Mr. Tim Jones GM did not want me to retire."

(*Id*.) He states that these above items are "proof why Gloria and I were offered GMAC checks from Mr. Tom Evich in the amount of $158,303.00/$174,000.000." (*Id*. at 2 (referring to "cash out" refinance options letter Ex. 8.).)

The Trust argues in its Reply that the McGuintys failed to demonstrate that the Debtors are liable, and instead merely reiterated their proof of claim allegations that GMACM made a profit on its sale of the Property in foreclosure and wrongfully denied them a loan modification. (Reply at 41.) The Trust notes, however, that the McGuintys newly allege that the Trust did not consider that the Federal Disability Act entitles them to a HAMP loan modification, that GMACM sent them a letter offering various refinancing options in 2006, and that a letter from the Federal Reserve Board regarding payment to resolve their complaint proves GMACM's liability related to their Loan. (*Id*.)

The Trust refutes each of these allegations. First, the Trust notes that the Property was sold at the foreclosure sale for $247,537.59, the amount of the remaining balance owed on the Loan (Horst Supp. Ex. KK), and was subsequently sold by Fannie Mae in a Real Estate Owned sale for $230,000 (*id*. Ex. LL). The Trust argues that neither GMACM nor Fannie Mae made a profit from the sales and the McGuintys failed to demonstrate any profit was actually made. (*Id*.) Second, the Trust argues that the McGuintys failed to provide a legal basis for their allegation that Mr. McGuinty's entitlement to disability income alone entitles the McGuintys to receive a loan modification. (*Id*.) The Trust argues that GMACM considered all of the McGuintys' income that was eligible for consideration when it reviewed their loan modification applications and appropriately denied the modifications based on the income asserted by the McGuintys in their applications. (*Id*.) Third, the Trust argues that the Federal Reserve Board letter does not establish that the McGuintys have been harmed by GMACM, but rather merely states that

7

GMACM would issue a $7,500 payment to the McGuintys to resolve their complaint. (*Id*. at 42.) The Trust asserts that the McGuintys were mistakenly included in the Independent Foreclosure Review population of loans when in fact they were not eligible for the program. (*Id*.) Because the Debtors misinformed the McGuintys, the Trust provided them with a payment despite their actual ineligibility. (*Id*.) The Trust then argues that the 2006 letter does not constitute the offer of "checks" the McGuintys allege. (*Id*.) Rather, the letter is a form letter the Debtors sent to borrowers providing them with information regarding their loans and is not an indication of any liability on the part of the Debtors. (*Id*.)

At the hearing, the Court provided the McGuintys with the opportunity to submit a supplemental response to the Trust's Reply. The McGuintys submitted the Supplemental Response, which attached the four exhibits from the Trust's Reply that pertained to the McGuintys' Claim and stated that the exhibits are "illegible." (*See generally* Supp. Response.) No further arguments were articulated.

### D.    The Objection to the Claim is Sustained

Correctly filed proof of claims "constitute prima facie evidence of the validity and amount of the claim . . . . To overcome this prima facie evidence, an objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000). By producing "evidence equal in force to the prima facie case," an objector can negate a claim's presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a preponderance of the evidence that under applicable law the claim should be allowed." *Creamer v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, No. 12 Civ. 6074 (RJS), 2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted). If the objector does not "introduce[] evidence as to the invalidity of the claim or the excessiveness of

its amount, the claimant need offer no further proof of the merits of the claim." 4 COLLIER ON BANKRUPTCY ¶ 502.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014).

Bankruptcy Code section 502(b)(1) provides that claims may be disallowed if "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law." *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006).

In the Objection to the McGuintys' Claim, the Trust shifted the burden to the McGuintys; the Trust provided a detailed recitation of the McGuintys' Loan history and refuted all of the material allegations in the McGuintys' proof of claim. With the burden shifted back to the McGuintys, they failed to carry their burden to establish their Claim by a preponderance of the evidence. The record establishes that the McGuintys were denied loan modifications due to insufficient income or the failure of the McGuintys to make required payments during a trial modification period. The reasons for denial of the loan modifications were not a result of the fault or wrongful conduct of GMACM and therefore do not subject GMACM to liability for the McGuintys' asserted Claim. The alleged "strange requests" for documentation made by GMACM appear to have been necessary for GMACM's completion of its review of the McGuintys' loan modification application and also do not subject GMACM to liability for the McGuintys' Claim. To the extent the McGuintys' Claim asserts that GMACM made a profit from the foreclosure sale of the Property, the record establishes that no such profit or proceeds were obtained by GMACM. (*See* Horst Supp. Ex. KK–LL.) The McGuintys were given a full and fair opportunity to provide evidence and respond to each of the Trust's arguments and the

Court provided the McGuintys with the additional opportunity to respond to the Trust's Reply.

The McGuintys fail to establish that the Debtors are liable for any unlawful conduct.

*****************************************

For the foregoing reasons, the Court **SUSTAINS** the Objection with respect to the McGuintys' Claim in its entirety and the Claim is hereby **DISALLOWED** and **EXPUNGED**.

**IT IS SO ORDERED.**

Dated:   December 12, 2014
         New York, New York

                                   _____/s/Martin Glenn_____
                                         MARTIN GLENN
                                  United States Bankruptcy Judge