1

1

2 UNITED STATES BANKRUPTCY COURT

3 SOUTHERN DISTRICT OF NEW YORK

4 Case No. 12-12020-mg; Adv. Proc. No. 14-02388-mg

5 - - - - - - - - - - - - - - - - - - - -x

6 In the Matters of:

7 RESIDENTIAL CAPITAL, LLC, et al.,

8             Debtors.

9 - - - - - - - - - - - - - - - - - - - -x

10 OCWEN LOAN SERVICING, LLC,

11             Plaintiff,

12       - against -

13 THE RESCAP LIQUIDATING TRUST,

14             Defendant.

15 - - - - - - - - - - - - - - - - - - - -x

16             United States Bankruptcy Court

17             One Bowling Green

18             New York, New York

19

20             December 10, 2014

21             10:10 AM

22

23 B E F O R E:

24 HON. MARTIN GLENN

25 U.S. BANKRUPTCY JUDGE

2

1

2  (CC: Doc# 7552) Adjourned Hearing RE: Motion for Omnibus

3  Objection to Claim(s) / ResCap Borrower Claims Trusts Seventy-

4  Fifth Omnibus Objection to Claims (No Liability Borrower

5  Claims)

6

7  Adversary proceeding:  14-02388-mg Ocwen Loan Servicing, LLC v.

8  The Rescap Liquidating Trust, a Delaware Statutory

9  Pretrial Conference

10

11

12

13

14

15

16

17

18

19

20  Transcribed by:  Penina Wolicki

21  eScribers, LLC

22  700 West 192nd Street, Suite #607

23  New York, NY 10040

24  (973)406-2250

25  operations@escribers.net

3

1

2  A P P E A R A N C E S :

3  MORRISON & FOERSTER LLP

4      Attorneys for ResCap Borrower Trust and

5      ResCap Liquidating Trust

6      250 West 55th Street

7      New York, NY 10019

8

9  BY:   JAMIE A. LEVITT, ESQ.

10      TODD M. GOREN, ESQ.

11      JORDAN A. WISHNEW, ESQ.

12

13

14  HUNTON & WILLIAMS LLP

15      Attorneys for Ocwen Loan Servicing

16      200 Park Avenue

17      New York, NY 10166

18

19  BY:   PATRICK L. ROBSON, ESQ.

20

21

22  MARTIN E. MCDOUGAL, JR.

23      Pro Se (TELEPHONICALLY)

24

25

**RESIDENTIAL CAPITAL, LLC, ET AL.**

4

1              P R O C E E D I N G S

2              THE COURT:  All right, please be seated.  We're here

3    in Residential Capital, number 12-12020.  Who's going to begin?

4              MS. LEVITT:  Good morning, Your Honor.  Jamie Levitt

5    from Morrison & Foerster, here on behalf of the ResCap

6    Liquidating Trust.  It's very nice to be back in your

7    courtroom, Your Honor.

8              I believe that Ocwen might be going first, if we're

9    going the adversary conference.

10             THE COURT:  Okay, all right.  May I have your

11   appearance, please?

12             MR. ROBSON:  Good morning, Your Honor.  Patrick

13   Robson, Hunton & Williams, on behalf of Ocwen Loan Servicing.

14             THE COURT:  Okay.  Go ahead.

15             MR. ROBSON:  Your Honor, I have no affirmative

16   presentation.  We're here for a preliminary conference that the

17   Court scheduled.  We have prepared a draft scheduling order

18   consistent with the Court's template.  I've provided it to Ms.

19   Levitt yesterday.  I don't know if she has any comments or

20   otherwise with respect to the scheduling order.

21             THE COURT:  Tell me what -- about the issues in this

22   matter.

23             MR. ROBSON:  Your Honor, we initiated this adversary

24   proceeding in connection with one of the agreements that's

25   attendant to the asset purchase agreement.  When Ocwen Loan

**RESIDENTIAL CAPITAL, LLC, ET AL.**

5

1    Servicing purchased mortgage servicing rights from the ResCap

2    estate, under the terms of that agreement, among other

3    responsibilities, ResCap is responsible for directing third

4    parties that are holding physical mortgage files to segregate

5    those file that are now controlled or owned by Ocwen Loan

6    Servicing, as part of the asset acquisition.

7            In the course of the parties' performance under that

8    agreement, a dispute arose as to whether or not ResCap was

9    actually willing to instruct those third parties to perform

10    that obligation.  It relates largely to a rather significant

11    cost associated with performance of those obligations.

12            The estimates that we've received are that the costs

13    may exceed ten million dollars.  It's a manual process.  It's

14    rather exhaustive.  You actually have to review each document

15    and segregate out files according to each borrower's loan file.

16    And although the parties attempted, in good faith, for many

17    months to try to negotiate a resolution, we were unable to do

18    so.  And as a result, we brought this adversary proceeding

19    seeking a declaratory judgment that ResCap perform its

20    contractual obligations and direct these third parties to

21    segregate these loan files.

22            THE COURT:  So are there factual disputes?  That's

23    what I -- but what I don't understand is what -- I mean, is

24    this purely a legal issue?  Can you -- can both sides

25    proceed -- can you enter into a stipulation of facts that sets

**RESIDENTIAL CAPITAL, LLC, ET AL.**

6

1   forth all of the pertinent facts, and then is it just an issue

2   of law?

3            MR. ROBSON:  Your Honor --

4            THE COURT:  That's -- what I'm trying understand is,

5   what's this all about and what's the most efficient way of

6   resolving it?

7            MR. ROBSON:  Absolutely, Your Honor.  I think -- and

8   I've not had an opportunity to meet and confer with Ms. Levitt,

9   although we have negotiated with some of her partners in

10  Morrison & Foerster about this issue -- I don't believe that

11  there are significant factual disputes, although ResCap has not

12  yet answered our complaint.  They sought an extension of time

13  to respond and --

14            THE COURT:  I know.  And I decided to go ahead.  I

15  know I had an inquiry about whether to put off this conference.

16  I didn't want to put it off, and I know I don't have an answer

17  yet, but having looked at the complaint some time ago -- I

18  didn't go back yesterday to look at it -- I'm trying to

19  understand what is this dispute really about.  Are there

20  factual disputes?  Have you -- and have you tried to -- have

21  counsel tried to sit down and see whether you can agree on as

22  many facts as possible?  If there are any factual disputes,

23  focus limited discovery on those.  And then -- I mean, is this

24  a contract interpretation issue?  From your view, what is this?

25            MR. ROBSON:  From our perspective, it absolutely is,

**RESIDENTIAL CAPITAL, LLC, ET AL.**

7

1  Your Honor.  I think there are a limited number of facts,

2  perhaps, the parties could stipulate to, and then leave the

3  Court to resolve the legal issues.

4          THE COURT:  Let me hear from Ms. Levitt.

5          MR. ROBSON:  I'll let Ms. Levitt --

6          THE COURT:  And then -- and I'll -- Mr. Robson, I'll

7  give you a chance to address this further.

8          So what's this about, Ms. Levitt.

9          MS. LEVITT:  Thank you, Judge Glenn.  Yes, we agree

10 with you.  We think it's a contractual dispute.  There are two

11 contracts at issue:  a records management statement of work,

12 which Mr. Robson has a little wrong, but it says that Ocwen

13 shall, at ResCap's cost, direct Iron Mountain to do certain

14 things.  But there is then a later dated agreement called the

15 servicing transfer agreement that specifically addressed the

16 issue of loan files and says to the extent that loan files are

17 physically held in a vendor used by both, then the -- what you

18 need to do to effect a transfer is notify the vendor, here Iron

19 Mountain, to hold those loan files for the account of Ocwen.

20         But that's -- I mean that will be a contractual

21 obligation -- a contractual interpretation.

22         Your Honor, what we think is the most efficient way to

23 handle this is to do it as part of the claims resolution

24 process.  And that's why we intend to move to dismiss in about

25 a week.  And we're going to say that this is entirely

1    duplicative, which it is, of a claim that Ocwen filed when it

2    filed its claims.  There's specifically a claim in connection

3    with the records management statement of work.

4         What we think should happen is we intend to object to

5    all of the claims in the next week or so, have that be done in

6    the normal claims resolution process.  They will respond.

7    There'll be a hearing.  If the Court cannot resolve that on the

8    papers -- and we think the Court can -- then there would be

9    limited targeted discovery and then a final resolution.

10        So what our discussion yesterday was, we didn't think

11   it makes any sense to enter an adversary scheduling order and

12   engage in lots of costly discovery, because we think this can

13   be done as part of the claims process.  It is -- we don't think

14   it's anything other than a question of money and who pays for

15   this process, depending on what it is.

16        THE COURT:  So why is this properly an adversary

17   proceeding rather than -- it sounds like Ocwen has filed proofs

18   of claim.

19        MR. ROBSON:  Correct, Your Honor.  Ocwen did file

20   proofs of claim prophylactically.  But in your confirmation

21   order, Ocwen's contract rights with respect to ResCap were

22   preserved and --

23        THE COURT:  I don't think that's being disputed.

24        MR. ROBSON:  Right.  But I think maybe the most

25   fundamental disagreement here is the form of relief we're

**RESIDENTIAL CAPITAL, LLC, ET AL.**

9

```
 1   seeking.  We're seeking --
 2            THE COURT:  Okay, so what --
 3            MR. ROBSON:  -- equitable relief.  We're seeking a
 4   declaratory judgment that Ocwen -- excuse me -- ResCap has to
 5   take certain actions required under the agreement.  And as
 6   such, an adversary proceeding was the appropriate vehicle.
 7            The other comment I'd just like to make --
 8            THE COURT:  Sure.
 9            MR. ROBSON:  -- Your Honor, is with respect to the
10   administrative claim writ large, which admittedly is about
11   amounts Ocwen believes it's owed, although that issue,
12   hopefully, will begin to move forward, the reason why we felt
13   compelled to bring this action and seek resolution of this
14   issue in particular, is because there is an acute prejudice,
15   not just to Ocwen, which is incurring costs it should not have
16   to incur, but with respect to all the borrowers that are being
17   serviced by Ocwen.
18            The inability to have those files segregated, the
19   inability to transfer the files to Ocwen and allow us to go
20   about our jobs, servicing those loans, is affected by this
21   delay.  And as such, we're perfectly willing to work with
22   ResCap to find the most efficient and straightforward
23   resolution, but we respectfully do not want this claim to be
24   delayed by resolution of the other administrative claims.
25            MS. LEVITT:  Your Honor, may I say one more thing?
```

**RESIDENTIAL CAPITAL, LLC, ET AL.**

10

1          THE COURT:  Come on up to the microphone, Ms. Levitt.

2          MS. LEVITT:  And I apologize for taking too much time.

3     But I --

4          THE COURT:  You're not.

5          MS. LEVITT:  Okay.  I don't understand the comment

6     that they're seeking a declaratory judgment for us to do

7     anything other than pay money.  Their claim is a declaratory

8     judgment that the trust must pay the vendors' charges and

9     reimburse Ocwen.  That is exactly duplicative of their contract

10    claim, which we'll put in our motion to dismiss.

11         But there is no relief here that cannot be done

12    through the claims resolution process.  This is not a delay

13    tactic.  We will have that in before the 23rd.

14         THE COURT:  So what I -- let me ask this as a

15    question.  Why isn't it a waste of time to go through a motion

16    to dismiss?  You obviously intend to object to their claims.

17    If all they're entitled to is monetary relief, I would agree

18    that the claims allowance process is the appropriate vehicle

19    for resolving the issue.  If they make a colorable showing that

20    they're also entitled to some equitable relief, and just

21    denominating something as declaratory judgment, does not

22    convert it into equitable relief, we're going to go through

23    what I consider probably the useless exercise of motion to

24    dismiss, and then if the motion is granted, and they seek to

25    leave -- and they want to replead, because they believe they're

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1    really entitled to some equitable relief that isn't just simply

2    a declaratory judgment that they're entitled to the payment of

3    money.

4         So in some other cases, where -- obviously not

5    identical to this circumstance, I've basically consolidated an

6    adversary and claim objections together, because they're all

7    part of the same ball of wax.  And you just resolve it.  And to

8    the extent that -- I come back to whether -- are there disputed

9    issues of fact.  I mean, you may dispute -- there may be a

10   dispute between the parties about if Ocwen is correct, what

11   form of relief is it entitled to.  Okay?  Well, that's a -- if

12   the facts are undisputed, that's likely to be a legal issue as

13   to what the form of relief that they're entitled to.

14        If the contract is interpreted in such a way that the

15   trust prevails, well, then they're going to be out of luck,

16   whether it's in an adversary proceeding or in connection with

17   claims objections.

18        So I'm not telling you that you can't go forward with

19   the motion to dismiss, but it seems like an utter waste of time

20   to me, just burdening the Court and the parties -- you with the

21   expense of preparing a motion to dismiss, Ocwen with responding

22   to the motion to dismiss.  Aren't you all -- what I would like

23   to see is the most efficient way of resolving the dispute.

24        Sit down together, see if you can draft a stipulation

25   of facts that attaches the relevant documents, that has

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1    whatever additional facts might be required.  To the extent

2    that one or both of you believe it's appropriate to have

3    declarations, you'll put in declarations.  I suspect there

4    isn't going to be any issue about authenticity or

5    identification of the documents.  The documents are the

6    documents.

7         If there are -- you can -- and it sounds like you

8    haven't done this yet -- is sit down, and I think probably you

9    have to go through the exercise of trying to draft the

10   stipulation to facts, to see whether there are some factual

11   disputes that you can't resolve.  And you may or may not

12   believe you need discovery in order to address those issues.

13   Even if there are factual disputes, you may conclude it's not

14   necessary to take any depositions.  Each side will do

15   declarations.  If one or the other of you believes you want to

16   depose the declarant, you'll work out a schedule for doing

17   that.

18        I mean, it just seems to me that that's going to be

19   the most efficient and cost-effective way for you to resolve

20   it.  Tell me why you disagree with that.

21        MS. LEVITT:  Well, Your Honor, I don't really

22   disagree.  Our motion to dismiss was -- prior to having spoken

23   to everyone here, was to say that the declaratory judgment is

24   not seeking any equitable relief, it's just a contractual

25   damages claim.  And with respect to that damages claim, it

**RESIDENTIAL CAPITAL, LLC, ET AL.**

13

1    should be done in the claims resolution process that exists.

2          I think what Your Honor just said is what we would do

3    in the claims resolution process which we intend to commence on

4    December 22nd, when we file our objection, and then we would

5    put in the declaration.  And I think this could be set for

6    hearing in the February, or at latest, early March hearing

7    date.

8          THE COURT:  Depending on the -- I have no idea --

9    depending on the complexity of the legal arguments that both

10   sides make, we can especially set it, not on an omnibus hearing

11   day, so that -- we'll just set a hearing.  And I'll make

12   sure -- you'll confer and you'll tell me how much time each

13   side thinks they need for argument.  On the omnibus hearing

14   days, the number of matters we're handling has been mercifully

15   dwindling, and so I'm not saying it shouldn't be on an omnibus

16   hearing day.  But this is a fairly -- this is not the typical

17   stuff that I'm dealing with on omnibus hearing days.

18         So whether you want to schedule it for an omnibus

19   hearing day or you work with Deanna in getting a special

20   hearing -- setting for a hearing date, I'm indifferent to,

21   frankly.

22         What I'm more interested in -- look, you've got to go

23   ahead and file a motion to dismiss and say this is damages,

24   consequently, claims allowance process.  They're going to come

25   back and say, we think that we're entitled to equitable relief.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

14

1    For all I see, he has a declaratory judgment and entitled to

2    money --

3            MS. LEVITT:  That's all they've asked for.

4            THE COURT:  -- that's not going to be --

5            MR. ROBSON:  That's absolutely, not right, Your Honor.

6            THE COURT:  Okay.

7            MS. LEVITT:  It's what the complaint --

8            THE COURT:  Okay.  Stop; stop.  Okay?

9            You'll --

10           MS. LEVITT:  We'll talk.

11           THE COURT:  I'm not sure what you're going to

12    accomplish with the motion, because they're going to come

13    forward and they're going to say they're entitled to the

14    following equitable relief.  It's not just money.  It has to do

15    with segregation of loan files, et cetera.  I don't know.

16    Okay?  I'm not -- but I think you could prepare a stipulation,

17    the recitals of which refer to both the pending adversary

18    proceeding and your pending claim objection -- not yet pending,

19    but soon it will be pending.

20           MS. LEVITT:  Um-hum.

21           THE COURT:  Okay?  The two of you ought to work out a

22    briefing schedule for the two matters.  To the extent that

23    there are no factual disputes, well -- if there are facts that

24    you're both presenting, essentially they're cross motions for

25    summary judgment.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

15

1          MS. LEVITT:  That's correct.

2          THE COURT:  And whether you do it in the adversary or

3    you do it on a claim objection, I can still -- I can hear the

4    cross motions for summary judgment together, and they'll get

5    resolved.  I mean, I just don't want to see both of you

6    spinning your wheels and going through needless motion

7    practice.

8          Am I telling you, you can't?  No.  But I'd like you to

9    sit down together and see if you can agree how you want to do

10   it.  Then what I would like is, in the first instance, just

11   send me a short letter and tell me the parties have agreed to

12   negotiate a stipulation of facts.  To the extent that there are

13   factual disputes, we will seek to agree on limited discovery

14   and a schedule.  If you agree not to proceed with the motion to

15   dismiss, you agree to have the adversary proceeding and the

16   claim objection heard together -- heard and resolved together.

17         So put that in a simple letter to me, and then go

18   off -- I don't expect you to -- I'd like that before you

19   actually hammer out the stipulation and whatever else you're

20   doing.

21         MS. LEVITT:  Okay.

22         THE COURT:  So that we have -- and you can -- if

23   you're able, when you send the letter, to give me some

24   parameters of the time schedule, fine.  If not, so when you get

25   the stipulation done, get that done.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

16

1           MS. LEVITT:  Okay.

2           THE COURT:  Is it -- are you willing to at least try

3   to do that?

4           MS. LEVITT:  Yes, Your Honor.

5           MR. ROBSON:  Absolutely, Your Honor.

6           THE COURT:  Okay.  The other thing I would say --

7   well, you're going to go -- you have an extension to answer the

8   complaint.  I'm not sure how much gets accomplished with an

9   answer to the complaint, but if you feel it does, go ahead and

10  do that.  You may be able to work out and agree that the

11  material allegations -- that the parties are working on a

12  stipulation of facts.  Parties disagree about the legal

13  interpretation of the agreements.  I don't know.  If you insist

14  on an answer, we'll work it out.

15          MS. LEVITT:  Well, we were going to file a motion.

16          THE COURT:  Frequently, I don't think that that's

17  really -- you're going to file a motion.

18          MS. LEVITT:  Yeah.

19          MR. ROBSON:  Your Honor, I think the stipulation of

20  facts would really address the principal issues.

21          THE COURT:  Okay.

22          MR. ROBSON:  We don't require an answer in order to

23  move forward.

24          THE COURT:  Try and do that.

25          MS. LEVITT:  Okay, thank you, Your Honor.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

17

1          THE COURT:  Okay?  All right.  Thanks.

2          Can I just ask one other question?  I know you've said

3   that you've tried to work this out.  Have you --

4          MS. LEVITT:  We haven't.

5          THE COURT:  You haven't.  But the parties have.

6          MS. LEVITT:  The parties have, yes.

7          THE COURT:  Does mediation make sense, or is this

8   something that's really going to have to get resolved by the --

9   the legal issue's going to have to get resolved by the Court?

10          MR. ROBSON:  Your Honor, for Ocwen, I'm not sure I

11   could answer that question, at this point.  I can certainly

12   talk to my client --

13          THE COURT:  Could the two of you talk about it and see

14   whether --

15          MR. ROBSON:  -- and get back --

16          THE COURT:  -- it makes sense?  Okay?

17          MS. LEVITT:  We will do that.

18          THE COURT:  All right.  Thanks very much.

19          MS. LEVITT:  Thank you.

20          MR. ROBSON:  Thank you, Your Honor.

21          THE COURT:  Okay.  Mr. Wishnew, were you going to

22   proceed now?

23          MR. WISHNEW:  Yes, Your Honor.

24          THE COURT:  The only other thing we have is the Boyd

25   claim that we're dealing with.  Is that right?

**RESIDENTIAL CAPITAL, LLC, ET AL.**

18

1      MR. WISHNEW:  And the McDougal claim, Your Honor.

2      THE COURT:  And the McDougal claim.  Okay, go ahead.

3  (Pause)

4      THE COURT:  I just need to finish making a note.

5  (Pause)

6      THE COURT:  Okay.

7      MR. WISHNEW:  Thank you, Your Honor.  Jordan Wishnew,

8  Morrison & Foerster, for the ResCap Borrower Claims Trust.

9      Your Honor, the next matter on today's agenda is under

10  (III) on page 3, omnibus claims objections.  We are moving

11  forward today with regards to two claims that were previously

12  included in the ResCap Borrower Claims Trust's seventy-fifth

13  omnibus objection to claims, filed at docket number 7552.

14      The Borrower Trust filed two replies in support of the

15  objection.  The first was an omnibus reply at docket number

16  7727.  The second was a reply as to Mr. Boyd's claim; and that

17  was filed at docket number 7825.

18      Your Honor, through the seventy-fifth omnibus claims

19  objection, the Borrower Trust seeks to respond to those proofs

20  of claim that do not represent valid pre-petition claims

21  against the debtors, because they do not prove by a

22  preponderance of the evidence, any specific wrongdoing by the

23  debtors.

24      The Borrower Trust thoroughly examined the debtors'

25  books and records in an effort to validate the accuracy of the

**RESIDENTIAL CAPITAL, LLC, ET AL.**

19

1    allegations made in the responses in the claims at issue and

2    determined that the books and records to not show liability due

3    and owing to the respondents.

4              In support of the objection and the replies, the

5    Borrower Trust submitted a supplemental declaration by Ms.

6    Horst --

7              THE COURT:  Just slow down a little bit.

8              MR. WISHNEW:  I apologize, Your Honor.  Chief claims

9    officer to the ResCap Liquidating Trust, which is attached as

10   Exhibit 1 to both of the replies.  Ms. Horst is on the phone

11   today and available to answer any questions the Court might

12   have for her.

13             The Borrower Trust previously addressed the objection

14   as it relates to Mr. McDougal's claim during the hearing held

15   on November 13th.  However, after the hearing, it came to the

16   Borrower Trust's attention that while Mr. McDougal was served

17   with a copy of the objection, the reply to his response was

18   sent to the wrong address.  As a result, Mr. McDougal was not

19   provided timely notice of the November 13th hearing.

20   Therefore, the Borrower Trust rescheduled the hearing on Mr.

21   McDougal's claim to today.  And I believe Mr. McDougal is

22   appearing telephonically.

23             THE COURT:  Mr. McDougal, are you on the phone?

24             MR. MCDOUGAL:  Yes, I am, Your Honor.

25             THE COURT:  All right, thank you.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

20

1          MR. WISHNEW:  Your Honor, with regard to Mr.

2     McDougal's claim, it's the Borrower's Trust's position that he

3     has failed to show how the debtors are liable -- I'm sorry --

4     how the debtors are liable for not assisting him in a lawsuit,

5     only between himself and a third party, specifically the Marin

6     County.

7          Your Honor, as the documents show, this was a

8     litigation that was filed by Mr. McDougal against Marin County.

9     The debtors were not a party to the action, were never named in

10     the action, were never pled into the action.

11          While there was a foreclosure pending against Mr.

12     McDougal that was started by GMAC Mortgage, as noted in our

13     pleadings, there were at least five different adjournments or

14     postponements of those foreclosure proceedings, as a result of

15     Mr. McDougal advising the debtors that he was trying to work

16     through the issues with Marin County.

17          Ultimately, the litigation did not succeed against

18     Marin County.  The matter -- or I'm sorry -- the property of

19     the loan was relisted for foreclosure.  However, at the time

20     that the debtors transferred servicing rights of this loan to

21     Ocwen Loan Servicing in February of 2013, the foreclosure was

22     never completed.

23          Therefore it's the Borrower's Trust's position that

24     the debtors have no liability for not assisting with the Marin

25     County lawsuit.  The debtors are not liable for any wrongful

**RESIDENTIAL CAPITAL, LLC, ET AL.**

21

1  foreclosure claims, because a foreclosure was never completed.

2  And as set forth in the reply and in the original objection,

3  the exhaustive loan mitigation efforts were entirely

4  appropriate and consistent with general procedures.  And

5  moreover, the debtors had standing to foreclose at the time,

6  because the assignment of mortgage properly assigned the note

7  to Deutsche.  And so for all those reasons set forth in both

8  Exhibit A to the original objection, as well as to the reply,

9  we would ask that this claim be disallowed.

10           THE COURT:  All right, Mr. McDougal?

11           MR. MCDOUGAL:  Yes.

12           THE COURT:  Go ahead, do you want to be heard?

13           MR. MCDOUGAL:  Yes, Your Honor.  You basically have

14  two points of contention that I have with ResCap, lack of

15  standing with respect to the nonfiling of the assignment of

16  deed of trust, and failure to assist with respect to the

17  encumbrances placed on the property by the County of Marin and

18  the legal action that I filed against the County in February.

19           Mr. Wishnew, I think his -- Mr. Wishnew states that

20  the assignment of deed of trust was completed with Deutsche

21  Bank.  But that was after I was forced to file bankruptcy.  And

22  I filed bankruptcy in July 2010.  And the assignment of deed of

23  trust was filed in August of 2010.

24           GMAC/ResCap, they had a -- they had a fiduciary

25  responsibility to put me and my representatives in contact with

**RESIDENTIAL CAPITAL, LLC, ET AL.**

22

1    Deutsche Bank.  In 2000 -- the encumbrances come from -- by the

2    County of Marin, come from a road failure that I was blamed for

3    in 2005, when I was building this -- the subject property.  The

4    County of Marin required that I get a geological report to

5    determine the cause and the failure of the road failure.  The

6    geological report determined that my construction had nothing

7    to do with the road failure.

8           When the -- when those -- when that evidence was

9    presented to the County, the -- let's just say the engineers

10   took offense to it and then proceeded on a witch hunt against

11   me.  Those engineers were subject to a state investigation.

12          So Mr. Wishnew tends to portray the events as I'm the

13   bad guy and everything went against me.  Well, that's not the

14   case.

15          The -- with respect to the failure to assist, when we

16   were fighting this out and that's -- it started -- it started

17   in 2007, after I had to liquidate all my assets to cover the

18   legal action, and with re -- with exception to the subject

19   property, which is in Mill Valley.

20          Let me see.  GMAC and ResCap, we did -- we did work

21   out certain arrangements.  But the fact of the matter is, they

22   should have put me in contact with Deutsche Bank, and Deutsche

23   Bank could have -- could have made the decisions whether to

24   assist me in the lawsuit, say no, tell GMAC/ResCap to stand

25   down.  You know.  So the --

**RESIDENTIAL CAPITAL, LLC, ET AL.**

23

1        THE COURT:  Why would Deutsche Bank have had any

2   responsibility for assisting you in the lawsuit?

3        MR. MCDOUGAL:  Well, I'm not saying assisting me.

4   They -- they could have -- they could have denied it.  But GMAC

5   and ResCap did not have legal standing at that point, because

6   the assignment of deed of trust had not been -- had not been

7   recorded with the County of Marin.

8        Did Your Honor get my pleadings that I -- that I

9   filed -- that I sent -- that I wrote on the 4th and filed with

10  the court on this past Monday?  Because I cite a dis -- Judge

11  Federman's U.S. Bankruptcy Court of Western District of

12  Missouri, his order denying motion for relief from stay?  Did

13  you get that pleading?

14       THE COURT:  I'm not sure whether I read it.  I'll go

15  back -- I'm taking the matter under submission in any event,

16  Mr. McDougal, so I'll go back and look at it.

17       MR. MCDOUGAL:  I mean, because -- because I did send

18  this pleading and the -- and my subsequent pleading -- this

19  pleading and his decision to Mr. Wishnew, and he failed to

20  respond to that.

21       THE COURT:  Well, he didn't have to respond to it, Mr.

22  McDougal.

23       MR. MCDOUGAL:  Oh.  Okay.  Well, the -- Judge

24  Federman, it has -- he --if you'll bear with me, can I read the

25  first paragraph?

**RESIDENTIAL CAPITAL, LLC, ET AL.**

24

1          THE COURT:  Yes, go ahead.

2          MR. MCDOUGAL:  Okay.  Okay.  Order denying motion for

3    relief from stay.  It's the -- it's case number 10-20086 in

4    United States Bankruptcy Court for the Western District of

5    Missouri.  And it's Marty Eugene Box and Tammy Jean Box:  "BAC

6    Home Loans Servicing, Countrywide Home Loans Servicing (BAC)

7    seeks relief from the automatic stay to allow it to exercise

8    its rights under state law as to the debtors' real property.

9    The debtors do not oppose the motion but the Chapter 7 trustee

10   has challenged BAC's standing to seek relief from the stay.

11   The trustee asserts that the note and deed of trust were not

12   properly assigned to BAC and because it is not the holder of

13   the note of deed of trust, it lacks standing to seek relief

14   from the stay to enforce those documents.  This is a core

15   proceeding under 28 U.S.C. 157(b)(2) over which the court has

16   jurisdiction pursuant to 28 U.S.C. 1334(b), 157(a), and

17   157(b)(1).  For the reasons that follow, the court finds that

18   BAC has not proven that it is the holder of the note, therefore

19   it lacks standing, so its motion for relief from stay will be

20   denied."

21          This is very similar to my situation.  The only -- the

22   only exception is, when I was forced to file bankruptcy because

23   of the lawsuit and GMAC/ResCap, the -- I'm the one who

24   challenged it in Judge Jaroslovsky's court as to the standing

25   of the assignment of deed of trust, because they filed it after

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1  I filed Chapter 7.

2       Now, in the BAC case, the trustee is the one who went

3  to the defense of the Boxes, whereas the trustee in my case,

4  seized the ten-million-dollar lawsuit that I had against the

5  County of Marin, and -- and proceeded to bring on Greene

6  Radovsky, Edward Dimmick (ph.) and then bring on my lawyers,

7  who's my real estate lawyer, and then pursue the case in

8  federal court.

9       Now, the reasons why that didn't work out in federal

10  court, I cannot answer, because at the end of the day, the --

11  my lawyer, John Sharp, and Ed Dimmick, could not agree upon

12  compensation.  And then the -- after two years in federal

13  court, the case reverted back to me.  And when I went back --

14  when it reverted back to me and then I pursued it again in

15  superior court, Judge D'Opal basically said it's been too long.

16  You know, that was the end of it.  It's been -- your motions

17  are -- it's just delay of game.  You know?

18       So anyway, the fact that I was forced into Chapter 7

19  by GMAC/ResCap for -- you know, completely -- I mean, put me in

20  federal court for two years.  So it's a much more complicated

21  situation than Mr. Wishnew portrays.

22       THE COURT:  Mr. McDougal, when did you -- I've been

23  checking the court docket, and I don't see the filing -- the

24  additional filing.  When did you say you filed it?

25       MR. MCDOUGAL:  I sent it -- well, I received the

**RESIDENTIAL CAPITAL, LLC, ET AL.**

26

1    notice that my hearing would be rescheduled to the 10th on the

2    1st.  I did my research from the 1st, and wrote the pleadings

3    on the 4th, and sent them out UPS on the 4th to arrive at the

4    court on Monday.  So it should have arrived on Monday, which

5    would be the 8th.  But I did provide a copy to -- I did contact

6    the Morrison & Foerster, and I faxed them a copy of my

7    pleadings, plus the case as it -- I identified it as Exhibit A,

8    Judge Federman's decision.

9            THE COURT:  It's not in the --

10           MR. MCDOUGAL:  So --

11           THE COURT:  -- it's not on the docket.  It has not

12   been filed.  At least I'm not seeing it.

13           MR. MCDOUGAL:  Okay.  Well, I --

14           THE COURT:  Mr. Wishnew --

15           MR. MCDOUGAL:  I don't -- you know --

16           THE COURT:  -- Mr. Wishnew do you have a copy?

17           MR. WISHNEW:  Your Honor, we have a copy at the

18   office.  We can scan it and send it to chambers after the

19   hearing.

20           THE COURT:  Would you scan it and file it on ECF?

21           MR. WISHNEW:  Sure, Your Honor.

22           THE COURT:  I'll double check again, Mr. McDougal, but

23   I don't remember seeing it, and I'm looking at the docket, and

24   I don't see it on the docket.

25           MR. MCDOUGAL:  Well, I mean, I can send it to the

**RESIDENTIAL CAPITAL, LLC, ET AL.**

27

1    court.  I can fax it to you.  I mean, he's -- Mr. Wishnew

2    said --

3            THE COURT:  No, we'll -- I've asked Mr. Wishnew to

4    scan it.  He acknowledges he has it.  He'll scan it, and his

5    office can file it on the docket.  So you don't have to do

6    that.

7            MR. MCDOUGAL:  Okay.

8            THE COURT:  It's possible -- when somebody sends hard

9    copy to the Court in a pro se borrower, who doesn't have an ECF

10   password and can't file it electronically, it's possible that

11   it's in the clerk's office and it has not been -- they have to

12   scan -- our clerk's office winds up having to scan it, and then

13   file it.  So I don't see it yet.  It's possible it's here.  And

14   I don't remember seeing it.

15           I will look at it.  So I'm going to take -- I'll be

16   taking the matter under submission today anyway.  But so it'll

17   be considered.

18           MR. MCDOUGAL:  Okay, fair enough.

19           THE COURT:  Anything else you want to add, Mr.

20   McDougal.

21           MR. MCDOUGAL:  No.  I mean, I -- you know, obviously

22   I'm not a lawyer, and standing up and pleading my case isn't --

23   isn't my specialty.  So, you know, I tried to do the best that

24   I could with presenting it in written form, so --

25           THE COURT:  Okay.  All right, Mr. Wishnew, do you want

1    to respond?

2              MR. WISHNEW:  Just a few points, Your Honor.  Just to

3    clarify the record, we are not trying to portray Mr. McDougal

4    as the bad guy.  We're simply just saying that he unfortunately

5    fell behind on his loan payments.  Foreclosure was properly

6    commenced by GMAC Mortgage, who serviced the loan for Deutsche,

7    who properly held the note at the time of the foreclosure.

8              The nonjudicial foreclosure was commenced.  As I noted

9    in my earlier presentation, foreclosure -- a foreclosure sale

10   never actually occurred while GMAC Mortgage serviced this loan.

11   And that's pretty much it.  We will stand on our papers.

12             THE COURT:  Can you just address the issue of

13   recording of the assignment.

14             MR. WISHNEW:  Sure, Your Honor.  I believe that the

15   case we cited in our brief, the Haynes case out of

16   California -- so I'll note that while Mr. McDougal does cite a

17   Missouri case, we are dealing with a property in California.

18   California law governs here.  And we believe the case that's

19   most on point is Haynes v. EMC Mortgage Corporation, 140 Cal.

20   Rptr.3d 32, which was issued on April 9th, 2012.

21             And in that regards, Your Honor, the court clearly

22   held that there was no necessity of a recording prior to the

23   commencement of nonjudicial foreclosure proceedings.

24             THE COURT:  Okay.  And it was -- I take it -- has

25   foreclosure been completed?  Mr. McDougal's still --

**RESIDENTIAL CAPITAL, LLC, ET AL.**

29

1          MR. WISHNEW:  I don't know, Your Honor.

2          THE COURT:  Mr. McDougal, are you still in possession

3    of the property?

4          MR. MCDOUGAL:  I am in possession of the property, but

5    Ocwen has brought on Severson & Werson, Adam Barash, and Edward

6    Buell.  And they're awaiting the decision of the Court.

7          THE COURT:  Okay.  All right.  I'm going to take the

8    matter under submission.  Thank you very much, Mr. McDougal.

9          MR. MCDOUGAL:  Thank you.

10          THE COURT:  All right.

11          MR. WISHNEW:  Thank you, Your Honor.  One additional

12    claim, Your Honor.  That is the claim of Michael Boyd, claim

13    number 960.

14          Your Honor, the basis for this objection --

15          THE COURT:  Pause -- is Mr. Boyd on the phone?

16          MR. WISHNEW:  Oh, I'm sorry.

17          THE COURT:  Go ahead, Mr. Wishnew.

18          MR. WISHNEW:  Thank you, Your Honor.  The basis for

19    this objection is res judicata, and the reason being is that

20    the claim seeks to contest liens related to two loans that the

21    debtors were connected with.  And the problem though, is that

22    Mr. Boyd sought Chapter 13 bankruptcy protection.  He

23    subsequently had his Chapter 13 plan confirmed.  He

24    acknowledged in his Chapter 13 plan that the --

25          THE COURT:  I thought this claim objection was only

**RESIDENTIAL CAPITAL, LLC, ET AL.**

30

1  with respect to claim 960?

2        MR. WISHNEW:  It is, Your Honor.

3        THE COURT:  Okay.  I -- you said two claim, and I --

4        MR. WISHNEW:  Oh, I meant to say -- I may have said

5  claims, I said two loans --

6        THE COURT:  Yes.

7        MR. WISHNEW:  -- within the claim for two separate

8  pieces of property.

9        And in essence, the Chapter 13 plan acknowledged the

10  validity of the loans being serviced by GMAC Mortgage.  To now

11  try and contest those liens through the claim is entirely

12  improper, considering that he previously acknowledged them

13  through is Chapter 13 plan, agreed to pay them going forward.

14  So our argument, basically, Your Honor, is that he is precluded

15  from prosecuting a claim and trying to get a monetary recovery

16  for any sort of invalidity of the liens, when in fact, in his

17  own bankruptcy proceeding, acknowledged the validity of those

18  liens.

19        THE COURT:  So let me ask you a few questions.  Mr.

20  Boyd had filed an action in the District Court in the Northern

21  District of California.

22        MR. WISHNEW:  Yes, Your Honor.

23        THE COURT:  The district court dismissed it.

24        MR. WISHNEW:  Yes.

25        THE COURT:  And the Ninth Circuit affirmed.  But Mr.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

31

1   Boyd filed a petition for a rehearing.

2          MR. WISHNEW:  So -- and I think I know where you're

3   going, Your Honor.  There is no -- because there is a petition

4   for rehearing, there is no necessary res judicata.

5          THE COURT:  But you agree that there's no res judicata

6   from the district court dismissal of the Boyd action, at least

7   at this stage?

8          MR. WISHNEW:  I do agree, Your Honor.

9          THE COURT:  What's the status of the petition for

10  rehearing?  When was it filed and has anything transpired with

11  respect to it?

12         MR. WISHNEW:  Give me one moment, Your Honor.

13         THE COURT:  And you did -- your papers conceded that

14  there's no res judicata effect at this stage --

15         MR. WISHNEW:  Correct.

16         THE COURT:  -- from the California District Court

17  dismissal, because in the California action, Mr. Boyd did

18  challenge the validity of the liens.

19         MR. WISHNEW:  Correct, Your Honor.

20         THE COURT:  And the California District Court action

21  was filed before Mr. Boyd filed his Chapter 13 case?

22         MR. WISHNEW:  Yes, Your Honor.

23         THE COURT:  Okay.

24         MR. WISHNEW:  The only -- the most recent information

25  I do have about the district court litigation is that on

**RESIDENTIAL CAPITAL, LLC, ET AL.**

32

1  September 9th he filed a -- he petitioned for panel rehearing.

2  I have not had a chance to --

3          THE COURT:  I'm sorry, the date again?

4          MR. WISHNEW:  I'm sorry, September 9th, 2014.

5          THE COURT:  September 9th.

6          MR. WISHNEW:  He petitioned for the panel rehearing --

7  I have not been able to check the docket -- or I have not

8  checked the dockets to see where that's progressed.

9          THE COURT:  So here's what -- the issue of whether or

10  the extent to which a Chapter 13 plan confirmation order is

11  entitled to res judicata effect on -- it seems to me there are

12  two relevant decisions I'm dealing with.

13          MR. WISHNEW:  Um-hum.

14          THE COURT:  The Second Circuit's decision in Layo, the

15  2006 decision by Judge Hall -- it's an opinion by Judge Hall;

16  and the Fourth Circuit's decision in Cen-Pen Corp. v. Hanson, a

17  1995 decision.

18          MR. WISHNEW:  That's right, Your Honor.  I would only

19  add, I think, just for further support, about the finality and

20  preclusive effect of the confirmation, we'd add the Corbett

21  case that we cited --

22          THE COURT:  Corbett is discussed in Layo.

23          MR. WISHNEW:  Right.  Correct, Your Honor.

24          THE COURT:  And so the issue that I'm focusing on is

25  that Judge Hall, in Layo, distinguishes Cen-Pen Corp.   And

**RESIDENTIAL CAPITAL, LLC, ET AL.**

33

1   what Judge Hall says in Layo is that, "Where, at the outset,

2   there is no dispute as to the basis of the lien, however, given

3   the policy embodied in Section 1327(a) that confirmation of a

4   plan bind the debtor and each creditor it does not follow that

5   a nonobjecting creditor has a right to bring an adversary

6   proceeding whenever he gets around to doing so.  To allow that

7   practice would fly in the face of Congress' expressed intention

8   that confirmation give debtors and creditors finality with

9   respect to satisfaction of outstanding debts."

10          And in Layo, the Chapter 13 debtor had scheduled the

11   lender's debt as a secured debt.  And Judge Hall, in his

12   opinion states that, "It is clear from the record that both

13   Layo and FNB, that was the lender, "agreed that Layo owed FNB

14   99,000 dollars and that the mortgage note was secured by a

15   first mortgage interest in Layo's homestead property."  That's

16   at page 291 of the decision.

17          So at the time of the confirmation of Layo's Chapter

18   13 plan, there was no -- no issue had been raised by anyone

19   about the validity of the mortgage lien.  And Judge Hall

20   acknowledged in his opinion that challenges to the validity of

21   the lien must be brought by an adversary proceeding.  But he

22   went on to explain why, under the circumstances of Layo he

23   distinguished it on its facts from Cen-Pen.  There should be

24   res judicata effect.

25          But here, Boyd had filed his district court action,

**RESIDENTIAL CAPITAL, LLC, ET AL.**

34

1　challenging the validity of the lien before he filed his

2　Chapter 13 case.  He tried to bring that district court case

3　into the bankruptcy court, and the bankruptcy judge dismissed

4　it.  It appears that it was viewed as an improper removal.

5　　　　　MR. WISHNEW:  Um-hum.

6　　　　　THE COURT:  So the district court action was pending

7　before, during, and after the Chapter 13 case, until it was

8　dismissed by the district court.

9　　　　　MR. WISHNEW:  Sure.

10　　　　　THE COURT:  And I mean -- explain why I shouldn't read

11　Layo and Cen-Pen together?  Because I don't read Judge Hall as

12　saying, well, if there was a challenge to the validity of the

13　lien, unless the bankruptcy court adjudicated that claim, res

14　judicata wouldn't apply.  That's my words, not Judge Hall's

15　words.

16　　　　　MR. WISHNEW:  Um-hum.

17　　　　　THE COURT:  But that's what I read the decision to be

18　saying.

19　　　　　MR. WISHNEW:  Um-hum.

20　　　　　THE COURT:  So why is that wrong?

21　　　　　MR. WISHNEW:  Well, I think, Your Honor, here,

22　notwithstanding Mr. Boyd's attempt to bring his district court

23　litigation into the bankruptcy court, he did have the

24　alternative of commencing an adversary proceeding within his

25　Chapter 13 to determine the extent, validity and nature of the

**RESIDENTIAL CAPITAL, LLC, ET AL.**

35

1   lien.

2         THE COURT:  And you had that ability, too.

3         MR. WISHNEW:  True.  But at the same time, he also --

4   notwithstanding the fact that he had the litigation against us,

5   he clearly scheduled his claim or acknowledged the validity of

6   his (sic) claim.  So I don't know that the burden was on us to

7   bring the action so much as --

8         THE COURT:  The dispute is about the liens.

9         MR. WISHNEW:  Correct, Your Honor.  But again, to the

10   extent that an individual is seeking to rehabilitate himself,

11   the fundamental dispute that he is concerned about is the

12   validity of his liens and being able to keep his home.  If he's

13   going to seek the shelter of -- or the protection of the

14   bankruptcy court, then he's got remedies available to him to

15   have the bankruptcy court adjudicate what the district court

16   might also be dealing with.  But that's really -- because

17   ultimately, how the bankruptcy court would rule on the lien

18   would affect the ability -- would affect how he would shape his

19   Chapter 13 plan.

20         If the court ultimately ruled in the bankruptcy court

21   that the lien was invalid, then all of a sudden he might have a

22   home, unencumbered, and only have to pay back unsecured

23   creditors.  But he chose not to do that.  He had the

24   opportunity to do that.  Rather, he filed his sixth amended

25   Chapter 13 plan which, again, is filed at Exhibit O, docket

**RESIDENTIAL CAPITAL, LLC, ET AL.**

36

1   7825-16, page 2 of 7, and clearly acknowledged the fact that

2   there are two liens -- two secured claims -- allowed secured

3   claims of GMAC Mortgage, LLC that will be paid going forward,

4   that will be allowed.

5          And so for him to -- he had his opportunity and he

6   didn't take advantage of it.  And frankly, at this point, he

7   represented to the bankruptcy court in his own case and to his

8   other creditors, I have the ability to pay.  The court agreed

9   with him.  And that's his right.  If --

10          THE COURT:  Well, the ability to pay -- the issue now

11  is not whether he had the ability to pay.  The issue now is

12  whether the lien is valid.

13          MR. WISHNEW:  Correct.

14          THE COURT:  I understand the arguments.  I'm going to

15  take it under submission.

16          MR. WISHNEW:  Understood.

17          THE COURT:  Okay?

18          MR. WISHNEW:  Thank you, Your Honor.

19          THE COURT:  Could you do me a favor?  Could you please

20  put a letter on the docket, check the status of the petition?

21  Look, if the judgment of the district court becomes final --

22          MR. WISHNEW:  Yeah.

23          THE COURT:  -- you're clearly entitled to have the

24  claim expunged on res judicata grounds.

25          MR. WISHNEW:  Correct, Your Honor.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

37

1  THE COURT:  That, despite Mr. Boyd's argument that he

2  invokes his First Amendment rights to judicial review and he

3  believes that the debtors are majority owned by the United

4  States, and therefore their executive or legislative act --

5  this case -- this claim objection becomes really simple --

6  MR. WISHNEW:  Yeah, agreed.

7  THE COURT:  -- if the Ninth Circuit does what almost

8  invariably happens --

9  MR. WISHNEW:  Sure.

10  THE COURT:  -- namely they deny the petition for a

11  rehearing.

12  MR. WISHNEW:  I'll just add one other point, Your

13  Honor.  If Mr. Boyd thought that -- he would always have the

14  right to go back into his bankruptcy court if he prevailed and

15  seek to adjust his Chapter 13 plan.  So my argument --

16  THE COURT:  As the --

17  MR. WISHNEW:  I'll leave it at that.

18  THE COURT:  Find the other one -- find out, if there's

19  no change --

20  MR. WISHNEW:  Yes.

21  THE COURT:  -- to the status -- just let us know what

22  the status of the petition for rehearing.

23  MR. WISHNEW:  Do you want us to docket that letter

24  with the status or just --

25  THE COURT:  Yes.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

38

1            MR. WISHNEW:  Okay.

2            THE COURT:  I think you should.  Okay.

3            MR. WISHNEW:  Your Honor, that was the last matter on

4    today's calendar, so that's it.

5            THE COURT:  Okay, thank you very much.

6            MR. WISHNEW:  Thank you for your time.

7            THE COURT:  When do I see you next?

8            MR. WISHNEW:  Next Thursday.

9            THE COURT:  Okay.  I was hoping it wasn't going to be

10    until next year, but --

11            MR. WISHNEW:  I'm sorry, Your Honor.

12            THE COURT:  No offense.

13            MR. WISHNEW:  None taken.

14            THE COURT:  We're adjourned.

15        (Whereupon these proceedings were concluded at 11:00 AM)

16

17

18

19

20

21

22

23

24

25

1

2                    C E R T I F I C A T I O N

3

4    I, Penina Wolicki, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8

9

10

_____

11

PENINA WOLICKI

12

AAERT Certified Electronic Transcriber CET**D-569

13

14

eScribers

15

700 West 192nd Street, Suite #607

16

New York, NY 10040

17

18

Date:  December 11, 2014

19

20

21

22

23

24

25

RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020-mg; Adv. Proc. No. 14-02388-mg

December 10, 2014

## #

**#607 (1)**
2:22

## A

**ability (5)**
35:2,18;36:8,10,11
**able (4)**
15:23;16:10;32:7;
35:12
**Absolutely (4)**
6:7,25;14:5;16:5
**accomplish (1)**
14:12
**accomplished (1)**
16:8
**according (1)**
5:15
**account (1)**
7:19
**accuracy (1)**
18:25
**acknowledged (7)**
29:24;30:9,12,17;
33:20;35:5;36:1
**acknowledges (1)**
27:4
**acquisition (1)**
5:6
**act (1)**
37:4
**action (13)**
9:13;20:9,10,10;
21:18;22:18;30:20;
31:6,17,20;33:25;
34:6;35:7
**actions (1)**
9:5
**actually (4)**
5:9,14;15:19;28:10
**acute (1)**
9:14
**Adam (1)**
29:5
**add (4)**
27:19;32:19,20;
37:12
**additional (3)**
12:1;25:24;29:11
**address (5)**
7:7;12:12;16:20;
19:18;28:12
**addressed (2)**
7:15;19:13
**Adjourned (2)**
2:2;38:14
**adjournments (1)**
20:13
**adjudicate (1)**
35:15

**adjudicated (1)**
34:13
**adjust (1)**
37:15
**administrative (2)**
9:10,24
**admittedly (1)**
9:10
**advantage (1)**
36:6
**Adversary (15)**
2:7;4:9,23;5:18;
8:11,16;9:6;11:6,16;
14:17;15:2,15;33:5,
21;34:24
**advising (1)**
20:15
**affect (2)**
35:18,18
**affected (1)**
9:20
**affirmative (1)**
4:15
**affirmed (1)**
30:25
**again (7)**
25:14;26:22;32:3;
35:9,25
**against (9)**
18:21;20:8,11,17;
21:18;22:10,13;25:4;
35:4
**agenda (1)**
18:9
**ago (1)**
6:17
**agree (11)**
6:21;7:9;10:17;
15:9,13,14,15;16:10;
25:11;31:5,8
**agreed (5)**
15:11;30:13;33:13;
36:8;37:6
**agreement (6)**
4:25;5:2,8;7:14,15;
9:5
**agreements (2)**
4:24;16:13
**ahead (8)**
4:14;6:14;13:23;
16:9;18:2;21:12;
24:1;29:17
**allegations (2)**
16:11;19:1
**allow (3)**
9:19;24:7;33:6
**allowance (2)**
10:18;13:24
**allowed (2)**
36:2,4
**almost (1)**
37:7
**alternative (1)**

**34:24**
**although (4)**
5:16;6:9,11;9:11
**always (1)**
37:13
**amended (1)**
35:24
**Amendment (1)**
37:2
**among (1)**
5:2
**amounts (1)**
9:11
**answered (1)**
6:12
**apologize (2)**
10:2;19:8
**appearance (1)**
4:11
**appearing (1)**
19:22
**appears (1)**
34:4
**apply (1)**
34:14
**appropriate (4)**
9:6;10:18;12:2;
21:4
**April (1)**
28:20
**argument (4)**
13:13;30:14;37:1,
15
**arguments (2)**
13:9;36:14
**arose (1)**
5:8
**around (1)**
33:6
**arrangements (1)**
22:21
**arrive (1)**
26:3
**arrived (1)**
26:4
**asserts (1)**
24:11
**asset (2)**
4:25;5:6
**assets (1)**
22:17
**assigned (2)**
21:6;24:12
**assignment (7)**
21:6,15,20,22;
23:6;24:25;28:13
**assist (3)**
21:16;22:15,24
**assisting (4)**
20:4,24;23:2,3
**associated (1)**
5:11
**attached (1)**

**19:9**
**attaches (1)**
11:25
**attempt (1)**
34:22
**attempted (1)**
5:16
**attendant (1)**
4:25
**attention (1)**
19:16
**August (1)**
21:23
**authenticity (1)**
12:4
**automatic (1)**
24:7
**available (2)**
19:11;35:14
**awaiting (1)**
29:6

## B

**BAC (5)**
24:5,6,12,18;25:2
**back (12)**
4:6;6:18;11:8;
13:25;17:15;23:15,
16;25:13,13,14;
35:22;37:14
**BAC's (1)**
24:10
**bad (2)**
22:13;28:4
**ball (1)**
11:7
**Bank (5)**
21:21;22:1,22,23;
23:1
**bankruptcy (17)**
21:21,22;23:11;
24:4,22;29:22;30:17;
34:3,3,13,23;35:14,
15,17,20;36:7;37:14
**Barash (1)**
29:5
**basically (4)**
11:5;21:13;25:15;
30:14
**basis (3)**
29:14,18;33:2
**bear (1)**
23:24
**becomes (2)**
36:21;37:5
**begin (2)**
4:3;9:12
**behalf (2)**
4:5,13
**behind (1)**
28:5
**believes (3)**

**9:11;12:15;37:3**
**best (1)**
27:23
**bind (1)**
33:4
**bit (1)**
19:7
**blamed (1)**
22:2
**books (2)**
18:25;19:2
**Borrower (12)**
2:3,4;18:8,12,14,
19,24;19:5,13,16,20;
27:9
**borrowers (1)**
9:16
**borrower's (3)**
5:15;20:2,23
**both (10)**
5:24;7:17;12:2;
13:9;14:17,24;15:5;
19:10;21:7;33:12
**Box (2)**
24:5,5
**Boxes (1)**
25:3
**Boyd (11)**
17:24;29:12,15,22;
30:20;31:1,6,17,21;
33:25;37:13
**Boyd's (3)**
18:16;34:22;37:1
**brief (1)**
28:15
**briefing (1)**
14:22
**bring (7)**
9:13;25:5,6;33:5;
34:2,22;35:7
**brought (3)**
5:18;29:5;33:21
**Buell (1)**
29:6
**building (1)**
22:3
**burden (1)**
35:6
**burdening (1)**
11:20

## C

**Cal (1)**
28:19
**calendar (1)**
38:4
**California (7)**
28:16,17,18;30:21;
31:16,17,20
**called (1)**
7:14
**came (1)**

12-12020-mg    Doc 7874    Filed 12/11/14    Entered 12/15/14 12:44:15    Main Document
RESIDENTIAL CAPITAL, LLC, et al.    Pg 41 of 48
Case No. 12-12020-mg; Adv. Proc. No. 14-02388-mg                    December 10, 2014

19:15

**Can (21)**
5:24,24,25;6:21;
8:8,12;11:24;12:7;
13:10;15:3,3,9,22;
17:2,11;23:24;26:18,
25;27:1,5;28:12

**Capital (1)**
4:3

**case (19)**
22:14;24:3;25:2,3,
7,13;26:7;27:22;
28:15,15,17,18;
31:21;32:21;34:2,2,
7;36:7;37:5

**cases (1)**
11:4

**cause (1)**
22:5

**CC (1)**
2:2

**Cen-Pen (4)**
32:16,25;33:23;
34:11

**certain (3)**
7:13;9:5;22:21

**certainly (1)**
17:11

**cetera (1)**
14:15

**challenge (2)**
31:18;34:12

**challenged (2)**
24:10,24

**challenges (1)**
33:20

**challenging (1)**
34:1

**chambers (1)**
26:18

**chance (2)**
7:7;32:2

**change (1)**
37:19

**Chapter (18)**
24:9;25:1,18;
29:22,23,24;30:9,13;
31:21;32:10;33:10,
17;34:2,7,25;35:19,
25;37:15

**charges (1)**
10:8

**check (3)**
26:22;32:7;36:20

**checked (1)**
32:8

**checking (1)**
25:23

**Chief (1)**
19:8

**chose (1)**
35:23

**Circuit (2)**

30:25;37:7

**Circuit's (2)**
32:14,16

**circumstance (1)**
11:5

**circumstances (1)**
33:22

**cite (2)**
23:10;28:16

**cited (2)**
28:15;32:21

**claim (38)**
8:1,2,18,20;9:10,
23;10:7,10;11:6;
12:25,25;14:18;15:3,
16;17:25;18:1,2,16,
20;19:14,21;20:2;
21:9;29:12,12,12,20,
25;30:1,3,7,11,15;
34:13;35:5,6;36:24;
37:5

**Claims (30)**
2:3,3,4,5;7:23;8:2,
5,6,13;9:24;10:12,16,
18;11:17;13:1,3,24;
18:8,10,11,12,13,18,
20;19:1,8;21:1;30:5;
36:2,3

**clarify (1)**
28:3

**clear (1)**
33:12

**clearly (4)**
28:21;35:5;36:1,23

**clerk's (2)**
27:11,12

**client (1)**
17:12

**colorable (1)**
10:19

**commence (1)**
13:3

**commenced (2)**
28:6,8

**commencement (1)**
28:23

**commencing (1)**
34:24

**comment (2)**
9:7;10:5

**comments (1)**
4:19

**compelled (1)**
9:13

**compensation (1)**
25:12

**complaint (5)**
6:12,17;14:7;16:8,
9

**completed (4)**
20:22;21:1,20;
28:25

**completely (1)**

25:19

**complexity (1)**
13:9

**complicated (1)**
25:20

**conceded (1)**
31:13

**concerned (1)**
35:11

**conclude (1)**
12:13

**concluded (1)**
38:15

**confer (2)**
6:8;13:12

**Conference (4)**
2:9;4:9,16;6:15

**confirmation (6)**
8:20;32:10,20;
33:3,8,17

**confirmed (1)**
29:23

**Congress' (1)**
33:7

**connected (1)**
29:21

**connection (3)**
4:24;8:2;11:16

**consequently (1)**
13:24

**consider (1)**
10:23

**considered (1)**
27:17

**considering (1)**
30:12

**consistent (1)**
4:18;21:4

**consolidated (1)**
11:5

**construction (1)**
22:6

**contact (3)**
21:25;22:22;26:5

**contention (1)**
21:14

**contest (2)**
29:20;30:11

**contract (4)**
6:24;8:21;10:9;
11:14

**contracts (1)**
7:11

**contractual (5)**
5:20;7:10,20,21;
12:24

**controlled (1)**
5:5

**convert (1)**
10:22

**copy (6)**
19:17;26:5,6,16,
17;27:9

**Corbett (2)**
32:20,22

**core (1)**
24:14

**Corp (2)**
32:16,25

**Corporation (1)**
28:19

**cost (2)**
5:11;7:13

**cost-effective (1)**
12:19

**costly (1)**
8:12

**costs (2)**
5:12;9:15

**counsel (1)**
6:21

**Countrywide (1)**
24:6

**County (12)**
20:6,8,16,18,25;
21:17,18;22:2,4,9;
23:7;25:5

**course (1)**
5:7

**COURT (157)**
4:2,10,14,17,21;
5:22;6:4,14;7:3,4,6;
8:7,8,16,23;9:2,8;
10:1,4,14;11:20;
13:8;14:4,6,8,11,21;
15:2,22;16:2,6,16,21,
24;17:1,5,7,9,13,16,
18,21,24;18:2,4,6;
19:7,11,23,25;21:10,
12;23:1,10,11,14,21;
24:1,4,15,17,24;25:8,
10,13,15,20,22,23;
26:4,9,11,14,16,20,
22;27:1,3,8,9,19,25;
28:12,21,24;29:2,6,7,
10,15,17,25;30:3,6,
19,20,23,23,25;31:5,
6,9,13,16,16,20,20,
23,25;32:3,5,9,14,22,
24;33:25;34:2,3,6,6,
8,10,13,17,20,22,23;
35:2,8,14,15,15,17,
20,20;36:7,8,10,14,
17,19,21,23;37:1,7,
10,14,16,18,21,25;
38:2,5,7,9,12,14

**courtroom (1)**
4:7

**Court's (1)**
4:18

**cover (1)**
22:17

**creditor (2)**
33:4,5

**creditors (3)**
33:8;35:23;36:8

**cross (2)**
14:24;15:4

**D**

**damages (3)**
12:25,25;13:23

**date (3)**
13:7,20;32:3

**dated (1)**
7:14

**day (4)**
13:11,16,19;25:10

**days (2)**
13:14,17

**dealing (5)**
13:17;17:25;28:17;
32:12;35:16

**Deanna (1)**
13:19

**debt (2)**
33:11,11

**debtor (2)**
33:4,10

**debtors (14)**
18:21,23;20:3,4,9,
15,20,24,25;21:5;
24:9;29:21;33:8;37:3

**debtors' (2)**
18:24;24:8

**debts (1)**
33:9

**December (1)**
13:4

**decided (1)**
6:14

**decision (9)**
23:19;26:8;29:6;
32:14,15,16,17;
33:16;34:17

**decisions (2)**
22:23;32:12

**declarant (1)**
12:16

**declaration (2)**
13:5;19:5

**declarations (3)**
12:3,3,15

**declaratory (8)**
5:19;9:4;10:6,7,21;
11:2;12:23;14:1

**deed (7)**
21:16,20,22;23:6;
24:11,13,25

**defense (1)**
25:3

**Delaware (1)**
2:8

**delay (3)**
9:21;10:12;25:17

**delayed (1)**
9:24

**denied (2)**

12-12020-mg    Doc 7874    Filed 12/11/14    Entered 12/15/14 12:44:15    Main Document
RESIDENTIAL CAPITAL, LLC, et al.
Pg 42 of 48
Case No. 12-12020-mg; Adv. Proc. No. 14-02388-mg                                    December 10, 2014

23:4;24:20
**denominating (1)**
  10:21
**deny (1)**
  37:10
**denying (2)**
  23:12;24:2
**depending (3)**
  8:15;13:8,9
**depose (1)**
  12:16
**depositions (1)**
  12:14
**despite (1)**
  37:1
**determine (2)**
  22:5;34:25
**determined (2)**
  19:2;22:6
**Deutsche (7)**
  21:7,20;22:1,22,
  22;23:1;28:6
**different (1)**
  20:13
**Dimmick (2)**
  25:6,11
**direct (2)**
  5:20;7:13
**directing (1)**
  5:3
**dis (1)**
  23:10
**disagree (3)**
  12:20,22;16:12
**disagreement (1)**
  8:25
**disallowed (1)**
  21:9
**discovery (5)**
  6:23;8:9,12;12:12;
  15:13
**discussed (1)**
  32:22
**discussion (1)**
  8:10
**dismiss (10)**
  7:24;10:10,16,24;
  11:19,21,22;12:22;
  13:23;15:15
**dismissal (2)**
  31:6,17
**dismissed (3)**
  30:23;34:3,8
**dispute (9)**
  5:8;6:19;7:10;11:9,
  10,23;33:2;35:8,11
**disputed (2)**
  8:23;11:8
**disputes (8)**
  5:22;6:11,20,22;
  12:11,13;14:23;
  15:13
**distinguished (1)**

33:23
**distinguishes (1)**
  32:25
**District (16)**
  23:11;24:4;30:20,
  21,23;31:6,16,20,25;
  33:25;34:2,6,8,22;
  35:15;36:21
**Doc# (1)**
  2:2
**docket (12)**
  18:13,15,17;25:23;
  26:11,23,24;27:5;
  32:7;35:25;36:20;
  37:23
**dockets (1)**
  32:8
**document (1)**
  5:14
**documents (6)**
  11:25;12:5,5,6;
  20:7;24:14
**dollars (2)**
  5:13;33:14
**done (7)**
  8:5,13;10:11;12:8;
  13:1;15:25,25
**D'Opal (1)**
  25:15
**double (1)**
  26:22
**down (6)**
  6:21;11:24;12:8;
  15:9;19:7;22:25
**draft (3)**
  4:17;11:24;12:9
**due (1)**
  19:2
**duplicative (2)**
  8:1;10:9
**during (2)**
  19:14;34:7
**dwindling (1)**
  13:15

E

**earlier (1)**
  28:9
**early (1)**
  13:6
**ECF (2)**
  26:20;27:9
**Ed (1)**
  25:11
**Edward (2)**
  25:6;29:5
**effect (5)**
  7:18;31:14;32:11,
  20;33:24
**efficient (5)**
  6:5;7:22;9:22;
  11:23;12:19

**effort (1)**
  18:25
**efforts (1)**
  21:3
**electronically (1)**
  27:10
**else (2)**
  15:19;27:19
**embodied (1)**
  33:3
**EMC (1)**
  28:19
**encumbrances (2)**
  21:17;22:1
**end (2)**
  25:10,16
**enforce (1)**
  24:14
**engage (1)**
  8:12
**engineers (2)**
  22:9,11
**enough (1)**
  27:18
**enter (2)**
  5:25;8:11
**entirely (3)**
  7:25;21:3;30:11
**entitled (11)**
  10:17,20;11:1,2,11,
  13;13:25;14:1,13;
  32:11;36:23
**equitable (7)**
  9:3;10:20,22;11:1;
  12:24;13:25;14:14
**eScribers (1)**
  2:21
**especially (1)**
  13:10
**essence (1)**
  30:9
**essentially (1)**
  14:24
**estate (2)**
  5:2;25:7
**estimates (1)**
  5:12
**et (1)**
  14:15
**Eugene (1)**
  24:5
**Even (1)**
  12:13
**event (1)**
  23:15
**events (1)**
  22:12
**everyone (1)**
  12:23
**evidence (2)**
  18:22;22:8
**exactly (1)**
  10:9

**examined (1)**
  18:24
**exceed (1)**
  5:13
**exception (2)**
  22:18;24:22
**excuse (1)**
  9:4
**executive (1)**
  37:4
**exercise (3)**
  10:23;12:9;24:7
**exhaustive (2)**
  5:14;21:3
**Exhibit (4)**
  19:10;21:8;26:7;
  35:25
**exists (1)**
  13:1
**expect (1)**
  15:18
**expense (1)**
  11:21
**explain (2)**
  33:22;34:10
**expressed (1)**
  33:7
**expunged (1)**
  36:24
**extension (2)**
  6:12;16:7
**extent (8)**
  7:16;11:8;12:1;
  14:22;15:12;32:10;
  34:25;35:10

F

**face (1)**
  33:7
**fact (6)**
  11:9;22:21;25:18;
  30:16;35:4;36:1
**facts (13)**
  5:25;6:1,22;7:1;
  11:12,25;12:1,10;
  14:23;15:12;16:12,
  20;33:23
**factual (8)**
  5:22;6:11,20,22;
  12:10,13;14:23;
  15:13
**failed (2)**
  20:3;23:19
**failure (6)**
  21:16;22:2,5,5,7,15
**fair (1)**
  27:18
**fairly (1)**
  13:16
**faith (1)**
  5:16
**favor (1)**

36:19
**fax (1)**
  27:1
**faxed (1)**
  26:6
**February (3)**
  13:6;20:21;21:18
**federal (4)**
  25:8,9,12,20
**Federman (1)**
  23:24
**Federman's (2)**
  23:11;26:8
**feel (1)**
  16:9
**fell (1)**
  28:5
**felt (1)**
  9:12
**few (2)**
  28:2;30:19
**fiduciary (1)**
  21:24
**Fifth (1)**
  2:4
**fighting (1)**
  22:16
**file (13)**
  5:5,15;8:19;13:4,
  23;16:15,17;21:21;
  24:22;26:20;27:5,10,
  13
**filed (26)**
  8:1,2,17;18:13,14,
  17;20:8;21:18,22,23;
  23:9,9;24:25;25:1,
  24;26:12;30:20;31:1,
  10,21,21;32:1;33:25;
  34:1;35:24,25
**files (9)**
  5:4,15,21;7:16,16,
  19;9:18,19;14:15
**filing (2)**
  25:23,24
**final (2)**
  8:9;36:21
**finality (1)**
  32:19;33:8
**find (3)**
  9:22;37:18,18
**finds (1)**
  24:17
**fine (1)**
  15:24
**finish (1)**
  18:4
**first (5)**
  4:8;15:10;18:15;
  23:25;33:15;37:2
**five (1)**
  20:13
**fly (1)**
  33:7

12-12020-mg    Doc 7874    Filed 12/11/14    Entered 12/15/14 12:44:15    Main Document
RESIDENTIAL CAPITAL, LLC, et al.
Pg 43 of 48
Case No. 12-12020-mg; Adv. Proc. No. 14-02388-mg
December 10, 2014

**FNB (2)**
33:13,13
**focus (1)**
6:23
**focusing (1)**
32:24
**Foerster (4)**
4:5;6:10;18:8;26:6
**follow (2)**
24:17;33:4
**following (1)**
14:14
**forced (3)**
21:21;24:22;25:18
**foreclose (1)**
21:5
**foreclosure (13)**
20:11,14,19,21;
21:1,1;28:5,7,8,9,9,
23,25
**form (4)**
8:25;11:11,13;
27:24
**forth (3)**
6:1;21:2,7
**forward (7)**
9:12;11:18;14:13;
16:23;18:11;30:13;
36:3
**Fourth (1)**
32:16
**frankly (2)**
13:21;36:6
**Frequently (1)**
16:16
**fundamental (2)**
8:25;35:11
**further (2)**
7:7;32:19

## G

**game (1)**
25:17
**general (1)**
21:4
**geological (2)**
22:4,6
**gets (2)**
16:8;33:6
**given (1)**
33:2
**Glenn (1)**
7:9
**GMAC (7)**
20:12;22:20;23:4;
28:6,10;30:10;36:3
**GMAC/ResCap (4)**
21:24;22:24;24:23;
25:19
**Good (3)**
4:4,12;5:16
**governs (1)**

28:18
**granted (1)**
10:24
**Greene (1)**
25:5
**grounds (1)**
36:24
**guy (2)**
22:13;28:4

## H

**Hall (7)**
32:15,15,25;33:1,
11,19;34:11
**Hall's (1)**
34:14
**hammer (1)**
15:19
**handle (1)**
7:23
**handling (1)**
13:14
**Hanson (1)**
32:16
**happen (1)**
8:4
**happens (1)**
37:8
**hard (1)**
27:8
**Haynes (2)**
28:15,19
**hear (2)**
7:4;15:3
**heard (3)**
15:16,16;21:12
**Hearing (18)**
2:2;8:7;13:6,6,10,
11,13,16,17,19,20,20;
19:14,15,19,20;26:1,
19
**held (4)**
7:17;19:14;28:7,22
**here's (1)**
32:9
**himself (2)**
20:5;35:10
**hold (1)**
7:19
**holder (2)**
24:12,18
**holding (1)**
5:4
**Home (4)**
24:6,6,35:12,22
**homestead (1)**
33:15
**Honor (59)**
4:4,7,12,15,23;6:3,
7;7:1,22;8:19;9:9,25;
12:21;13:2;14:5;
16:4,5,19,25;17:10,

20,23;18:1,7,9,18;
19:8,24;20:1,7;
21:13;23:8;26:17,21;
28:2,14,21;29:1,11,
12,14,18;30:2,14,22;
31:3,8,12,19,22;
32:18,23;34:21;35:9;
36:18,25;37:13;38:3,
11
**hopefully (1)**
9:12
**hoping (1)**
38:9
**Horst (2)**
19:6,10
**hunt (1)**
22:10
**Hunton (1)**
4:13

## I

**idea (1)**
13:8
**identical (1)**
11:5
**identification (1)**
12:5
**identified (1)**
26:7
**III (1)**
18:10
**improper (2)**
30:12;34:4
**inability (2)**
9:18,19
**included (1)**
18:12
**incur (1)**
9:16
**incurring (1)**
9:15
**indifferent (1)**
13:20
**individual (1)**
35:10
**information (1)**
31:24
**initiated (1)**
4:23
**inquiry (1)**
6:15
**insist (1)**
16:13
**instance (1)**
15:10
**instruct (1)**
5:9
**intend (4)**
7:24;8:4;10:16;
13:3
**intention (1)**
33:7

**interest (1)**
33:15
**interested (1)**
13:22
**interpretation (3)**
6:24;7:21;16:13
**interpreted (1)**
11:14
**into (7)**
5:25;10:22;20:10;
25:18;34:3,23;37:14
**invalid (1)**
35:21
**invalidity (1)**
30:16
**invariably (1)**
37:8
**investigation (1)**
22:11
**invokes (1)**
37:2
**Iron (2)**
7:13,18
**issue (18)**
5:24;6:1,10,24;
7:11,16;9:11,14;
10:19;11:12;12:4;
19:1;28:12;32:9,24;
33:18;36:10,11
**issued (1)**
28:20
**issues (6)**
4:21;7:3;11:9;
12:12;16:20;20:16
**issue's (1)**
17:9

## J

**Jamie (1)**
4:4
**Jaroslovsky's (1)**
24:24
**Jean (1)**
24:5
**jobs (1)**
9:20
**John (1)**
25:11
**Jordan (1)**
18:7
**Judge (15)**
7:9;23:10,23;
24:24;25:15;26:8;
32:15,15,25;33:1,11,
19;34:3,11,14
**judgment (11)**
5:19;9:4;10:6,8,21;
11:2;12:23;14:1,25;
15:4;36:21
**judicata (8)**
29:19;31:4,5,14;
32:11;33:24;34:14;

36:24
**judicial (1)**
37:2
**July (1)**
21:22
**jurisdiction (1)**
24:16

## K

**keep (1)**
35:12

## L

**lack (1)**
21:14
**lacks (2)**
24:13,19
**large (1)**
9:10
**largely (1)**
5:10
**last (1)**
38:3
**later (1)**
7:14
**latest (1)**
13:6
**law (3)**
6:2;24:8;28:18
**lawsuit (6)**
20:4,25;22:24;
23:2;24:23;25:4
**lawyer (3)**
25:7,11;27:22
**lawyers (1)**
25:6
**Layo (9)**
32:14,22,25;33:1,
10,13,13,22;34:11
**Layo's (2)**
33:15,17
**least (4)**
16:2;20:13;26:12;
31:6
**leave (3)**
7:2;10:25;37:17
**legal (9)**
5:24;7:3;11:12;
13:9;16:12;17:9;
21:18;22:18;23:5
**legislative (1)**
37:4
**lender (1)**
33:13
**lender's (1)**
33:11
**letter (5)**
15:11,17,23;36:20;
37:23
**LEVITT (28)**
4:4,4,19;6:8;7:4,5,

12-12020-mg    Doc 7874    Filed 12/11/14    Entered 12/15/14 12:44:15    Main Document
Pg 44 of 48
RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020-mg; Adv. Proc. No. 14-02388-mg
December 10, 2014

8,9;9:25;10:1,2,5;
12:21;14:3,7,10,20;
15:1,21;16:1,4,15,18,
25;17:4,6,17,19
**Liability (3)**
2:4;19:2;20:24
**liable (3)**
20:3,4,25
**lien (9)**
33:2,19,21;34:1,
13;35:1,17,21;36:12
**liens (8)**
29:20;30:11,16,18;
31:18;35:8,12;36:2
**likely (1)**
11:12
**limited (4)**
6:23;7:1;8:9;15:13
**liquidate (1)**
22:17
**Liquidating (3)**
2:8;4:6;19:9
**litigation (5)**
20:8,17;31:25;
34:23;35:4
**little (2)**
7:12;19:7
**LLC (3)**
2:7,21;36:3
**Loan (17)**
2:7;4:13,25;5:5,15,
21;7:16,16,19;14:15;
20:19,20,21;21:3;
28:5,6,10
**loans (6)**
9:20;24:6,6;29:20;
30:5,10
**long (1)**
25:15
**look (5)**
6:18;13:22;23:16;
27:15;36:21
**looked (1)**
6:17
**looking (1)**
26:23
**lots (1)**
8:12
**luck (1)**
11:15

## M

**majority (1)**
37:3
**makes (2)**
8:11;17:16
**making (1)**
18:4
**management (2)**
7:11;8:3
**manual (1)**
5:13

**many (2)**
5:16;6:22
**March (1)**
13:6
**Marin (10)**
20:5,8,16,18,24;
21:17;22:2,4;23:7;
25:5
**Marty (1)**
24:5
**material (1)**
16:11
**matter (8)**
4:22;18:9;20:18;
22:21;23:15;27:16;
29:8;38:3
**matters (2)**
13:14;14:22
**May (10)**
4:10;5:13;9:25;
11:9,9;12:11,11,13;
16:10;30:4
**maybe (1)**
8:24
**McDougal (36)**
18:1,2;19:16,18,21,
23,24;20:8,12,15;
21:10,11,13;23:3,16,
17,22,23;24:2;25:22,
25;26:10,13,15,22,
25;27:7,18,20,21;
28:3,16;29:2,4,8,9
**McDougal's (4)**
19:14,21;20:2;
28:25
**mean (12)**
5:23;6:23;7:20;
11:9;12:18;15:5;
23:17;25:19;26:25;
27:1,21;34:10
**meant (1)**
30:4
**mediation (1)**
17:7
**meet (1)**
6:8
**mercifully (1)**
13:14
**Michael (1)**
29:12
**microphone (1)**
10:1
**might (5)**
4:8;12:1;19:11;
35:16,21
**Mill (1)**
22:19
**million (1)**
5:13
**Missouri (3)**
23:12;24:5;28:17
**mitigation (1)**
21:3

**moment (1)**
31:12
**Monday (3)**
23:10;26:4,4
**monetary (2)**
10:17;30:15
**money (5)**
8:14;10:7;11:3;
14:2,14
**months (1)**
5:17
**more (3)**
9:25;13:22;25:20
**moreover (1)**
21:5
**morning (2)**
4:4,12
**Morrison (4)**
4:5;6:10;18:8;26:6
**mortgage (12)**
5:1,4;20:12;21:6;
28:6,10,19;30:10;
33:14,15,19;36:3
**most (8)**
6:5;7:22;8:24;
9:22;11:23;12:19;
28:19;31:24
**Motion (19)**
2:2;10:10,15,23,
24;11:19,21,22;
12:22;13:23;14:12;
15:6,14;16:15,17;
23:12;24:2,9,19
**motions (3)**
14:24;15:4;25:16
**Mountain (2)**
7:13,19
**move (3)**
7:24;9:12;16:23
**moving (1)**
18:10
**much (9)**
10:2;13:12;16:8;
17:18;25:20;28:11;
29:8;35:7;38:5
**must (2)**
10:8;33:21

## N

**named (1)**
20:9
**namely (1)**
37:10
**nature (1)**
34:25
**necessary (2)**
12:14;31:4
**necessity (1)**
28:22
**need (4)**
7:18;12:12;13:13;
18:4

**needless (1)**
15:6
**negotiate (2)**
5:17;15:12
**negotiated (1)**
6:9
**New (1)**
2:23
**next (5)**
8:5;18:9;38:7,8,10
**nice (1)**
4:6
**Ninth (1)**
30:25;37:7
**None (1)**
38:13
**nonfiling (1)**
21:15
**nonjudicial (2)**
28:8,23
**nonobjecting (1)**
33:5
**normal (1)**
8:6
**Northern (1)**
30:20
**note (8)**
18:4;21:6;24:11,
13,18;28:7,16;33:14
**noted (2)**
20:12;28:8
**notice (2)**
19:19;26:1
**notify (1)**
7:18
**notwithstanding (2)**
34:22;35:4
**November (2)**
19:15,19
**number (8)**
4:3;7:1;13:14;
18:13,15,17;24:3;
29:13
**NY (1)**
2:23

## O

**object (2)**
8:4;10:16
**Objection (18)**
2:3,4;13:4;14:18;
15:3,16;18:13,15,19;
19:4,13,17;21:2,8;
29:14,19,25;37:5
**objections (3)**
11:6,17;18:10
**obligation (2)**
5:10;7:21
**obligations (2)**
5:11,20
**obviously (3)**
10:16;11:4;27:21

**occurred (1)**
28:10
**Ocwen (21)**
2:7;4:8,13,25;5:5;
7:12,19;8:1,17,19;
9:4,11,15,17,19;10:9;
11:10,21;17:10;
20:21;29:5
**Ocwen's (1)**
8:21
**off (3)**
6:15,16;15:18
**offense (2)**
22:10;38:12
**office (4)**
26:18;27:5,11,12
**officer (1)**
19:9
**Omnibus (11)**
2:2,4;13:10,13,15,
17,18;18:10,13,15,18
**one (11)**
4:24;9:25;12:2,15;
17:2;24:23;25:2;
29:11;31:12;37:12,
18
**only (8)**
17:24;20:5;24:21,
22;29:25;31:24;
32:18;35:22
**operations@escribersnet (1)**
2:25
**opinion (1)**
32:15;33:12,20
**opportunity (3)**
6:8;35:24;36:5
**oppose (1)**
24:9
**order (9)**
4:17;20:8;11,21;
12:12;16:22;23:12;
24:2;32:10
**original (2)**
21:2,8
**otherwise (1)**
4:20
**ought (1)**
14:21
**out (14)**
5:15;11:15;12:16;
14:21;15:19;16:10,
14;17:3;22:16,21;
25:9;26:3;28:15;
37:18
**outset (1)**
33:1
**outstanding (1)**
33:9
**over (1)**
24:15
**owed (2)**
9:11;33:13
**owing (1)**

12-12020-mg    Doc 7874    Filed 12/11/14    Entered 12/15/14 12:44:15    Main Document
Pg 45 of 48
RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020-mg; Adv. Proc. No. 14-02388-mg
December 10, 2014

19:3
**own (2)**
30:17;36:7
**owned (2)**
5:5;37:3

## P

**page (3)**
18:10;33:16;36:1
**paid (1)**
36:3
**panel (2)**
32:1,6
**papers (3)**
8:8;28:11;31:13
**paragraph (1)**
23:25
**parameters (1)**
15:24
**part (4)**
5:6;7:23;8:13;11:7
**particular (1)**
9:14
**parties (12)**
5:4,9,16,20;7:2;
11:10,20;15:11;
16:11,12;17:5,6
**parties' (1)**
5:7
**partners (1)**
6:9
**party (2)**
20:5,9
**password (1)**
27:10
**past (1)**
23:10
**Patrick (1)**
4:12
**Pause (3)**
18:3,5;29:15
**pay (7)**
10:7,8;30:13;
35:22;36:8,10,11
**payment (1)**
11:2
**payments (1)**
28:5
**pays (1)**
8:14
**pending (6)**
14:17,18,18,19;
20:11;34:6
**Penina (1)**
2:20
**perfectly (1)**
9:21
**perform (2)**
5:9,19
**performance (2)**
5:7,11
**perhaps (1)**

7:2
**perspective (1)**
6:25
**pertinent (1)**
6:1
**petition (6)**
31:1,3,9;36:20;
37:10,22
**petitioned (2)**
32:1,6
**ph (1)**
25:6
**phone (3)**
19:10,23;29:15
**physical (1)**
5:4
**physically (1)**
7:17
**pieces (1)**
30:8
**placed (1)**
21:17
**plan (10)**
29:23,24;30:9,13;
32:10;33:4,18;35:19,
25;37:15
**pleading (5)**
23:13,18,18,19;
27:22
**pleadings (4)**
20:13;23:8;26:2,7
**please (3)**
4:2,11;36:19
**pled (1)**
20:10
**plus (1)**
26:7
**point (5)**
17:11;23:5;28:19;
36:6;37:12
**points (2)**
21:14;28:2
**policy (1)**
33:3
**portray (2)**
22:12;28:3
**portrays (1)**
25:21
**position (2)**
20:2,23
**possession (2)**
29:2,4
**possible (4)**
6:22;27:8,10,13
**postponements (1)**
20:14
**practice (2)**
15:7;33:7
**precluded (1)**
30:14
**preclusive (1)**
32:20
**prejudice (1)**

9:14
**preliminary (1)**
4:16
**prepare (1)**
14:16
**prepared (1)**
4:17
**preparing (1)**
11:21
**pre-petition (1)**
18:20
**preponderance (1)**
18:22
**presentation (2)**
4:16;28:9
**presented (1)**
22:9
**presenting (2)**
14:24;27:24
**preserved (1)**
8:22
**Pretrial (1)**
2:9
**pretty (1)**
28:11
**prevailed (1)**
37:14
**prevails (1)**
11:15
**previously (3)**
18:11;19:13;30:12
**principal (1)**
16:20
**prior (2)**
12:22;28:22
**pro (1)**
27:9
**probably (2)**
10:23;12:8
**problem (1)**
29:21
**procedures (1)**
21:4
**proceed (3)**
5:25;15:14;17:22
**proceeded (2)**
22:10;25:5
**proceeding (13)**
2:7;4:24;5:18;
8:17;9:6;11:16;
14:18;15:15;24:15;
30:17;33:6,21;34:24
**proceedings (3)**
20:14;28:23;38:15
**process (10)**
5:13;7:24;8:6,13,
15;10:12,18;13:1,3,
24
**progressed (1)**
32:8
**proofs (3)**
8:17,20;18:19
**properly (5)**

8:16;21:6;24:12;
28:5,7
**property (10)**
20:18;21:17;22:3,
19;24:8;28:17;29:3,
4;30:8;33:15
**prophylactically (1)**
8:20
**prosecuting (1)**
30:15
**protection (2)**
29:22;35:13
**prove (1)**
18:21
**proven (1)**
24:18
**provide (1)**
26:5
**provided (2)**
4:18;19:19
**purchase (1)**
4:25
**purchased (1)**
5:1
**purely (1)**
5:24
**pursuant (1)**
24:16
**pursue (1)**
25:7
**pursued (1)**
25:14
**put (10)**
6:15,16;10:10;
12:3;13:5;15:17;
21:25;22:22;25:19;
36:20

## R

**Radovsky (1)**
25:6
**raised (1)**
33:18
**rather (4)**
5:10,14;8:17;35:24
**RE (2)**
2:2;22:18
**read (5)**
23:14,24;34:10,11,
17
**real (2)**
24:8;25:7
**really (8)**
6:19;11:1;12:21;
16:17,20;17:8;35:16;
37:5
**reason (2)**
9:12;29:19
**reasons (3)**
21:7;24:17;25:9
**received (2)**
5:12;25:25

**recent (1)**
31:24
**recitals (1)**
14:17
**record (2)**
28:3;33:12
**recorded (1)**
23:7
**recording (2)**
28:13,22
**records (4)**
7:11;8:3;18:25;
19:2
**recovery (1)**
30:15
**refer (1)**
14:17
**regard (1)**
20:1
**regards (2)**
18:11;28:21
**rehabilitate (1)**
35:10
**rehearing (7)**
31:1,4,10;32:1,6;
37:11,22
**reimburse (1)**
10:9
**related (1)**
29:20
**relates (2)**
5:10;19:14
**relevant (1)**
11:25;32:12
**relief (18)**
8:25;9:3;10:11,17,
20,22;11:1,11,13;
12:24;13:25;14:14;
23:12;24:3,7,10,13,
19
**relisted (1)**
20:19
**remedies (1)**
35:14
**remember (2)**
23:20;27:14
**removal (1)**
34:4
**replead (1)**
10:25
**replies (3)**
18:14;19:4,10
**reply (5)**
18:15,16;19:17;
21:2,8
**report (2)**
22:4,6
**represent (1)**
18:20
**representatives (1)**
21:25
**represented (1)**
36:7

RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020-mg; Adv. Proc. No. 14-02388-mg

December 10, 2014

**require (1)**
16:22
**required (3)**
9:5;12:1;22:4
**res (8)**
29:19;31:4,5,14;
32:11;33:24;34:13;
36:24
**ResCap (17)**
2:3;8:4:5;5:1,3,8,
19;6:11;8:21;9:4,22;
18:8,12;19:9;21:14;
22:20;23:5
**ResCap's (1)**
7:13
**rescheduled (2)**
19:20;26:1
**research (1)**
26:2
**Residential (1)**
4:3
**resolution (10)**
5:17;7:23;8:6,9;
9:13,23,24;10:12;
13:1,3
**resolve (5)**
7:3;8:7;11:7;12:11,
19
**resolved (4)**
15:5,16;17:8,9
**resolving (3)**
6:6;10:19;11:23
**respect (11)**
4:20;8:21;9:9,16;
12:25;21:15,16;
22:15;30:1;31:11;
33:9
**respectfully (1)**
9:23
**respond (6)**
6:13;8:6;18:19;
23:20,21;28:1
**respondents (1)**
19:3
**responding (1)**
11:21
**response (1)**
19:17
**responses (1)**
19:1
**responsibilities (1)**
5:3
**responsibility (2)**
21:25;23:2
**responsible (1)**
5:3
**result (3)**
5:18;19:18;20:14
**reverted (2)**
25:13,14
**review (2)**
5:14;37:2
**right (17)**

4:2,10;8:24;14:5;
17:1,18,25;19:25;
21:10;27:25;29:7,10;
32:18,23;33:5;36:9;
37:14
**rights (5)**
5:1;8:21;20:20;
24:8;37:2
**road (3)**
22:2,5,7
**ROBSON (21)**
4:12,13,15,23;6:3,
7,25;7:5,6,12;8:19,
24;9:3,9;14:5;16:5,
19,22;17:10,15,20
**Rptr3d (1)**
28:20
**rule (1)**
35:17
**ruled (1)**
35:20

**S**

**sale (1)**
28:9
**same (2)**
11:7;35:3
**satisfaction (1)**
33:9
**saying (5)**
13:15;23:3;28:4;
34:12,18
**scan (6)**
26:18,20;27:4,4,12,
12
**schedule (5)**
12:16;13:18;14:22;
15:14,24
**scheduled (3)**
4:17;33:10;35:5
**scheduling (3)**
4:17,20;8:11
**se (1)**
27:9
**seated (1)**
4:2
**second (2)**
18:16;32:14
**Section (1)**
33:3
**secured (4)**
33:11,14;36:2,2
**seeing (3)**
26:12,23;27:14
**seek (7)**
9:13;10:24;15:13;
24:10,13;35:13;
37:15
**seeking (7)**
5:19;9:1,1,3;10:6;
12:24;35:10
**seeks (3)**

18:19;24:7;29:20
**seems (3)**
11:19;12:18;32:11
**segregate (3)**
5:4,15,21
**segregated (1)**
9:18
**segregation (1)**
14:15
**seized (1)**
25:4
**send (5)**
15:11,23;23:17;
26:18,25
**sends (1)**
27:8
**sense (3)**
8:11;17:7,16
**sent (4)**
19:18;23:9;25:25;
26:3
**separate (1)**
30:7
**September (3)**
32:1,4,5
**served (1)**
19:16
**serviced (4)**
9:17;28:6,10;30:10
**Servicing (11)**
2:7;4:13;5:1,1,6;
7:15;9:20;20:20,21;
24:6,6
**set (5)**
13:5,10,11;21:2,7
**sets (1)**
5:25
**setting (1)**
13:20
**Seventy- (1)**
2:3
**seventy-fifth (2)**
18:12,18
**Severson (1)**
29:5
**shall (1)**
7:13
**shape (1)**
35:18
**Sharp (1)**
25:11
**shelter (1)**
35:13
**short (1)**
15:11
**show (3)**
19:2;20:3,7
**showing (1)**
10:19
**sic (1)**
35:6
**side (2)**
12:14;13:13

**sides (2)**
5:24;13:10
**significant (2)**
5:10;6:11
**similar (1)**
24:21
**simple (2)**
15:17;37:5
**simply (2)**
11:1;28:4
**sit (4)**
6:21;11:24;12:8;
15:9
**situation (2)**
24:21;25:21
**sixth (1)**
35:24
**slow (1)**
19:7
**somebody (1)**
27:8
**soon (1)**
14:19
**sorry (6)**
20:3,18;29:16;
32:3,4;38:11
**sort (1)**
30:16
**sought (2)**
6:12;29:22
**sounds (2)**
8:17;12:7
**special (1)**
13:19
**specialty (1)**
27:23
**specific (1)**
18:22
**specifically (3)**
7:15;8:2;20:5
**spinning (1)**
15:6
**spoken (1)**
12:22
**stage (2)**
31:7,14
**stand (2)**
22:24;28:11
**standing (8)**
21:5,15;23:5;
24:10,13,19,24;27:22
**started (3)**
20:12;22:16,16
**state (2)**
22:11;24:8
**statement (2)**
7:11;8:3
**states (4)**
21:19;24:4;33:12;
37:4
**status (5)**
31:9;36:20;37:21,
22,24

**Statutory (1)**
2:8
**stay (6)**
23:12;24:3,7,10,14,
19
**still (3)**
15:3;28:25;29:2
**stipulate (1)**
7:2
**stipulation (9)**
5:25;11:24;12:10;
14:16;15:12,19,25;
16:12,19
**Stop (2)**
14:8,8
**straightforward (1)**
9:22
**Street (1)**
2:22
**stuff (1)**
13:17
**subject (3)**
22:3,11,18
**submission (4)**
23:15;27:16;29:8;
36:15
**submitted (1)**
19:5
**subsequent (1)**
23:18
**subsequently (1)**
29:23
**succeed (1)**
20:17
**sudden (1)**
35:21
**Suite (1)**
2:22
**summary (2)**
14:25;15:4
**superior (1)**
25:15
**supplemental (1)**
19:5
**support (3)**
18:14;19:4;32:19
**Sure (10)**
9:8;13:12;14:11;
16:8;17:10;23:14;
26:21;28:14;34:9;
37:9
**suspect (1)**
12:3

**T**

**tactic (1)**
10:13
**talk (3)**
14:10;17:12,13
**Tammy (1)**
24:5
**targeted (1)**

RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020-mg; Adv. Proc. No. 14-02388-mg

December 10, 2014

8:9
**telephonically (1)**
19:22
**telling (2)**
11:18;15:8
**template (1)**
4:18
**ten (1)**
5:13
**tends (1)**
22:12
**ten-million-dollar (1)**
25:4
**terms (1)**
5:2
**Thanks (2)**
17:1,18
**Therefore (4)**
19:20;20:23;24:18;
37:4
**There'll (1)**
8:7
**third (4)**
5:3,9,20;20:5
**thoroughly (1)**
18:24
**though (1)**
29:21
**thought (2)**
29:25;37:13
**Thursday (1)**
38:8
**timely (1)**
19:19
**today (4)**
18:11;19:11,21;
27:16
**today's (2)**
18:9;38:4
**together (7)**
11:6,24;15:4,9,16,
16;34:11
**took (1)**
22:10
**Transcribed (1)**
2:20
**transfer (3)**
7:15,18;9:19
**transferred (1)**
20:20
**transpired (1)**
31:10
**tried (5)**
6:20,21;17:3;
27:23;34:2
**True (1)**
35:3
**Trust (19)**
2:8;4:6;10:8;
11:15;18:8,14,19,24;
19:5,9,13,20;21:16,
20,23;23:6;24:11,13,
25

**trustee (4)**
24:9,11;25:2,3
**Trusts (1)**
2:3
**Trust's (4)**
18:12;19:16;20:2,
23
**try (4)**
5:17;16:2,24;30:11
**trying (6)**
6:4,18;12:9;20:15;
28:3;30:15
**two (16)**
7:10;14:21,22;
17:13;18:11,14;
21:14;25:12,20;
29:20;30:3,5,7;
32:12;36:2,2
**typical (1)**
13:16

**U**

**Ultimately (3)**
20:17;35:17,20
**Um-hum (5)**
14:20;32:13;34:5,
16,19
**unable (1)**
5:17
**under (11)**
5:2,7;9:5;18:9;
23:15;24:8,15;27:16;
29:8;33:22;36:15
**Understood (1)**
36:16
**undisputed (1)**
11:12
**unencumbered (1)**
35:22
**unfortunately (1)**
28:4
**United (2)**
24:4;37:3
**unless (1)**
34:13
**unsecured (1)**
35:22
**up (5)**
10:1;27:12,22
**upon (1)**
25:11
**UPS (1)**
26:3
**USC (2)**
24:15,16
**used (1)**
7:17
**useless (1)**
10:23
**utter (1)**
11:19

**V**

**valid (2)**
18:20;36:12
**validate (1)**
18:25
**validity (10)**
30:10,17;31:18;
33:19,20;34:1,12,25;
35:5,12
**Valley (1)**
22:19
**vehicle (2)**
9:6;10:18
**vendor (2)**
7:17,18
**vendors' (1)**
10:8
**view (1)**
6:24
**viewed (1)**
34:4

**W**

**waste (2)**
10:15;11:19
**wax (1)**
11:7
**way (5)**
6:5;7:22;11:14,23;
12:19
**week (2)**
7:25;8:5
**Werson (1)**
29:5
**West (1)**
2:22
**Western (2)**
23:11;24:4
**what's (4)**
6:5,5;7:8;31:9
**wheels (1)**
15:6
**whenever (1)**
33:6
**whereas (1)**
25:3
**Whereupon (1)**
38:15
**Who's (2)**
4:3;25:7
**Williams (1)**
4:13
**willing (3)**
5:9;9:21;16:2
**winds (1)**
27:12
**Wishnew (67)**
17:21,23;18:1,7,7;
19:8;20:1;21:19,19;
22:12;23:19;25:21;

26:14,16,17,21;27:1,
3,25;28:2,14;29:1,11,
16,17,18;30:2,4,7,22,
24;31:2,8,12,15,19,
22,24;32:4,6,13,18,
23;34:5,9,16,19,21;
35:3,9;36:13,16,18,
22,25;37:6,9,12,17,
20,23;38:1,3,6,8,11,
13
**witch (1)**
22:10
**within (2)**
30:7;34:24
**Wolicki (1)**
2:20
**words (2)**
34:14,15
**work (12)**
7:11;8:3;9:21;
12:16;13:19;14:21;
16:10,14;17:3;20:15;
22:20;25:9
**working (1)**
16:11
**writ (1)**
9:10
**written (1)**
27:24
**wrong (3)**
7:12;19:18;34:20
**wrongdoing (1)**
18:22
**wrongful (1)**
20:25
**wrote (2)**
23:9;26:2

**Y**

**year (1)**
38:10
**years (2)**
25:12,20
**yesterday (3)**
4:19;6:18;8:10
**York (1)**
2:23

**1**

**1 (1)**
19:10
**10040 (1)**
2:23
**10-20086 (1)**
24:3
**10th (1)**
26:1
**11:00 (1)**
38:15
**12-12020 (1)**
4:3

**13 (15)**
29:22,23,24;30:9,
13;31:21;32:10;
33:10,18;34:2,7,25;
35:19,25;37:15
**1327a (1)**
33:3
**1334b (1)**
24:16
**13th (2)**
19:15,19
**140 (1)**
28:19
**14-02388-mg (1)**
2:7
**157a (1)**
24:16
**157b1 (1)**
24:17
**157b2 (1)**
24:15
**192nd (1)**
2:22
**1995 (1)**
32:17
**1st (2)**
26:2,2

**2**

**2 (1)**
36:1
**2000 (1)**
22:1
**2005 (1)**
22:3
**2006 (1)**
32:15
**2007 (1)**
22:17
**2010 (2)**
21:22,23
**2012 (1)**
28:20
**2013 (1)**
20:21
**2014 (1)**
32:4
**22nd (1)**
13:4
**23rd (1)**
10:13
**28 (2)**
24:15,16
**291 (1)**
33:16

**3**

**3 (1)**
18:10
**32 (1)**
28:20

**RESIDENTIAL CAPITAL, LLC, et al.**
Case No. 12-12020-mg; Adv. Proc. No. 14-02388-mg                    December 10, 2014

### 4

**4th (3)**
  23:9;26:3,3

### 7

**7 (4)**
  24:9;25:1,18;36:1
**700 (1)**
  2:22
**7552 (2)**
  2:2;18:13
**7727 (1)**
  18:16
**7825 (1)**
  18:17
**7825-16 (1)**
  36:1

### 8

**8th (1)**
  26:5

### 9

**960 (2)**
  29:13;30:1
**973406-2250 (1)**
  2:24
**99,000 (1)**
  33:14
**9th (4)**
  28:20;32:1,4,5