**Hearing Date: February 11, 2015 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: January 9, 2015 at 4:00 p.m. (Prevailing Eastern Time)**

MORRISON & FOERSTER LLP
250 West 55th St.
New York, NY 10019
Telephone:     (212) 468-8000
Facsimile:     (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
James A. Newton

*Counsel for the ResCap Liquidating Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**THE RESCAP LIQUIDATING TRUST'S OBJECTION TO PROOFS OF CLAIM NOS. 5853 AND 5856 FILED BY CONNECTICUT HOUSING FINANCE AUTHORITY**

ny-1158883

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1
JURISDICTION, VENUE, AND STATUTORY PREDICATE .................................................. 3
BACKGROUND ............................................................................................................................ 3
RELIEF REQUESTED ................................................................................................................... 5
OBJECTION ................................................................................................................................... 5
NOTICE ........................................................................................................................................ 15
CONCLUSION ............................................................................................................................. 16

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Feinberg v. Bank of N.Y. (In re Feinberg),
    442 B.R. 215 (Bankr. S.D.N.Y. 2010) ................................................................................6

Franklin v. Residential Capital, LLC (In re Residential Capital LLC),
    Case No. 13-Civ-8317 (PAE), 2014 WL 1760312 (S.D.N.Y. May 1, 2014) .......................6

In re Allegheny Int'l, Inc.,
    954 F.2d 167 (3d Cir. 1992) ................................................................................................6

In re Oneida Ltd.,
    400 B.R. 384 (Bankr. S.D.N.Y. 2009), aff'd sub nom., Peter J. Solomon Co. v.
    Oneida Ltd., No. 09-CV-2229 (DC), 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22,
    2010) ....................................................................................................................................5

In re Residential Capital, LLC,
    Case No. 12-12020 (MG), 2014 WL 1414136 (Bankr. S.D.N.Y. Apr. 10, 2014) ................6

In re Residential Capital, LLC,
    Case No. 12-12020 (MG), 2014 WL 4230550 (Bankr. S.D.N.Y. June 6, 2014) .................6

In re Rockefeller Ctr. Props.,
    272 B.R. 524 (Bankr. S.D.N.Y. 2000), aff'd sub nom., Rockefeller Ctr. Props. (In re
    Rockefeller Ctr. Props.), 266 B.R. 52 (S.D.N.Y. 2001), aff'd, 46 Fed. Appx. 40 (2d
    Cir. 2002) ............................................................................................................................6

**STATUTES**

11 U.S.C.
    § 502(a) ...............................................................................................................................5
    § 502(b)(1) ..........................................................................................................................6

**OTHER AUTHORITIES**

Connecticut Housing Finance Authority, http://www.chfa.org (last visited Dec. 11, 2014) ...........7

**TO THE HONORABLE MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE:**

The ResCap Liquidating Trust (the "Liquidating Trust"), established pursuant to the terms of the Chapter 11 plan confirmed in the above captioned bankruptcy cases (the "Chapter 11 Cases") [Docket No. 6065], as successor in interest to the above captioned debtors (collectively, the "Debtors"), hereby submits this objection (the "Objection") seeking to disallow and expunge, without leave to amend, unsecured proofs of claim nos. 5853 and 5856 (collectively the "Claim") filed by Connecticut Housing Finance Authority ("CTHFA" or the "Claimant") against Debtor GMACM Mortgage, LLC ("GMACM") in the amount of $84 million, pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Liquidating Trust seeks to disallow the Claim on the grounds that the Debtors' books and records do not reflect any sums due and owing the Claimant as of the Petition Date and the Claim otherwise fails to state a valid basis for liability against the Debtors. The Liquidating Trust seeks entry of an order substantially in the form annexed hereto as Exhibit 1 (the "Proposed Order") granting the requested relief. In support of the Objection, the Liquidating Trust submits the declaration of Teresa Rae Farley, Senior Director of Asset Disposition for the Liquidating Trust (the "Farley Decl."), attached hereto as Exhibit 2.

**PRELIMINARY STATEMENT**

1.  The Claim, one of the largest remaining unresolved claims pending against the Liquidating Trust, relates to a mortgage loan servicing agreement between a predecessor to GMACM and CTHFA dated July 15, 1987, entitled Connecticut Housing Finance Authority Home Mortgage Servicing Agreement (as amended, (the "Servicing

1

ny-1158883

Agreement"). A copy of the Servicing Agreement is annexed to the Farley Decl. at Exhibit "A". Each of GMACM and CTHFA concede that the Servicing Agreement in question was terminated several years ago. However, through the date hereof, GMACM has continued to perform its obligations in compliance with the terms of the Servicing Agreement for an existing portfolio of mortgage loans held by CTHFA. Similarly, CTHFA has continued to perform in accordance with the terms of the Servicing Agreement. As explained below, the Servicing Agreement was not assigned to Ocwen Loan Servicing LLC ("Ocwen") in connection with the Debtors' sale of their loan servicing platform.

2.  CTHFA Claim no. 5853 filed on November 16, 2012, is in the amount of $1. Box 2 of the claim form identifies the basis of the claim as "indemnification or other breaches under Servicing Agreement." CTHFA Claim no. 5856 filed on November 16, 2012, asserts an unsecured claim in the face amount of $84 million and states that this sum is the "loan portfolio under servicing agreement." Presumably the listed amount refers to the then unpaid principal balance of the loan portfolio. Box 2 of the claim form identifies the bases of the claim as "performance of obligations under servicing contract, including return of portfolio, accounting, remittance of funds and reporting." The Claim is no doubt protective in nature as CTHFA has made no effort to identify with any specificity, much less quantify, the basis for or the amount of any purported liability. Based on its own investigation, the Liquidating Trust has determined that as of the Petition Date, it is not aware of any pending claims against GMACM under the Servicing Agreement nor any bases that would give rise to any such claims. GMACM believes it serviced the portfolio appropriately under the Servicing Agreement throughout the course of the parties' long-

standing relationship. Accordingly, for the reasons set forth below, the Claim should be expunged in its entirety.

## JURISDICTION, VENUE, AND STATUTORY PREDICATE

3. This Court has jurisdiction over this Objection under 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. § 157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

4. The statutory predicates for the relief requested herein are section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007(a).

## BACKGROUND

5. On May 14, 2012, each of the Debtors filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code. These Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

6. On May 16, 2012, the Court entered an order [Docket No. 96] appointing Kurtzman Carson Consultants LLC ("KCC") as the notice and claims agent in these Chapter 11 Cases. Among other things, KCC is authorized to (a) receive, maintain, and record and otherwise administer the proofs of claim filed in these Chapter 11 Cases and (b) maintain the official Claims Register for the Debtors (the "Claims Register").

7. On August 29, 2012, this Court entered the Bar Date Order, which established, among other things, (i) November 9, 2012 at 5:00 p.m. (Prevailing Eastern Time) as the deadline to file proofs of claim by virtually all creditors against the Debtors (the "General Bar Date") and prescribed the form and manner for filing proofs of claim; and (ii) November 30, 2012 at 5:00 p.m. (Prevailing Eastern Time) as the deadline for

3

governmental units to file proofs of claim (the "Governmental Bar Date" and, together with the General Bar Date, as applicable, the "Bar Date"). (Bar Date Order ¶¶ 2, 3). On November 7, 2012, the Court entered an order extending the General Bar Date to November 16, 2012 at 5:00 p.m. (Prevailing Eastern Time) [Docket No. 2093]. The Governmental Bar Date was not extended.

8. On March 21, 2013, this Court entered an order approving procedures for the filing of objections to proofs of claim filed in these Chapter 11 Cases [Docket No. 3294] (the "Procedures Order").

9. On December 11, 2013, the Court entered the *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* (the "Confirmation Order") approving the terms of the Chapter 11 plan, as amended (the "Plan"), filed in these Chapter 11 cases [Docket No. 6065]. On December 17, 2013, the Effective Date (as defined in the Plan) of the Plan occurred [Docket No. 6137].

10. The Plan provides for the creation and implementation of the Liquidating Trust, which, among other things, is "authorized to make distributions and other payments in accordance with the Plan and the Liquidating Trust Agreement" and is responsible for the wind down of the affairs of the Debtors' estates. See Plan, Art. VI.A-D; see also Confirmation Order ¶ 22. Pursuant to the Confirmation Order and the Plan, the Liquidating Trust was vested with broad authority over the post-confirmation liquidation and distribution of the Debtors' assets. See generally, Confirmation Order ¶¶ 26, 30, 48; Plan, Art. VI.

11. As required by Article VIII.D. of the Plan, on motion of the plan proponents dated December 5, 2013 [Dkt. No. 6020]; the plan proponents requested that the Court approve the establishment of a Disputed Claims Reserve (as such term is defined in the Plan) for the benefit of holders of unliquidated and unreconciled general unsecured claims (the "DCR Motion").[1] Pursuant to the DCR Motion, the Plan Proponents established a cumulative reserve for the universe of the claims included within the Disputed Claim Reserve and allocated to the reserve $84 million on account of the Claim. Pursuant to an order dated December 20, 2013, the Court granted the DCR Motion and established the Disputed Claims Reserve [Dkt. No. 6166].

**RELIEF REQUESTED**

12. The Liquidating Trust files this Objection, pursuant to Bankruptcy Code section 502(b) and Bankruptcy Rule 3007, and seeks entry of an order, substantially in the form annexed hereto as Exhibit 1, disallowing and expunging the Claim from the Claims Register in its entirety.

**OBJECTION**

13. A filed proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim. See In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), aff'd sub nom., Peter J. Solomon Co. v. Oneida Ltd., No. 09-CV-2229 (DC), 2010 U.S. Dist. LEXIS

---

[1] The DCR Motion does not address general unsecured claims filed by Borrowers. Under the Plan, such claims are the obligation of the ResCap Borrower Claims Trust.

6500 (S.D.N.Y. Jan. 22, 2010); In re Residential Capital, LLC, Case No. 12-12020 (MG), 2014 WL 4230550, at *5 (Bankr. S.D.N.Y. June 6, 2014); In re Residential Capital, LLC, Case No. 12-12020 (MG), 2014 WL 1414136, at *5 (Bankr. S.D.N.Y. Apr. 10, 2014); In re Rockefeller Ctr. Props., 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000), aff'd sub nom., Rockefeller Ctr. Props. (In re Rockefeller Ctr. Props.), 266 B.R. 52 (S.D.N.Y. 2001), aff'd, 46 Fed. Appx. 40 (2d Cir. 2002). The burden of persuasion is on the holder of a proof of claim to establish a valid claim against a debtor. In re Allegheny Int'l, Inc., 954 F.2d 167, 173-74 (3d Cir. 1992); In re Residential Capital, LLC, 2014 WL 1414136, at *5; see also Franklin v. Residential Capital, LLC (In re Residential Capital LLC), Case No. 13-Civ-8317 (PAE), 2014 WL 1760312, at *6 (S.D.N.Y. May 1, 2014); Feinberg v. Bank of N.Y. (In re Feinberg), 442 B.R. 215, 220-22 (Bankr. S.D.N.Y. 2010).

14. Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim shall not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law. . . . ." 11 U.S.C. § 502(b)(1).

15. Upon review of the Claim and based on diligence conducted by the Liquidating Trust of GMACM's loan servicing on behalf of CTHFA, the Liquidating Trust determined that GMACM has no liability to CTHFA on account of the Claim. Accordingly, the Claim should be disallowed and expunged from the Claims Register.

**Relationship between Debtors and CTHFA**

16. CTHFA was created in 1969 by the Connecticut Legislature as a self-supporting quasi-public housing agency charged with the purpose of expanding affordable housing opportunities for Connecticut's low- and moderate-income families and

6

individuals.[2]  According to its website, CTHFA has assisted thousands of Connecticut residents in obtaining low interest loans and housing through financing the creation of thousands of affordable rental units. Id.

17. GMACM and its predecessors enjoyed a long-standing relationship with CTHFA for well over twenty years prior to the Petition Date.  Pursuant to agreements between certain of the Debtors and their predecessors in interest and CTHFA, the Debtors facilitated the origination of mortgage loans to Connecticut residents through direct loan purchase agreements with CTHFA.  GMACM and its predecessors in interest also serviced loans in the CTHFA portfolio on behalf of CTHFA in accordance with specific servicing agreements and CTHFA's applicable guides in effect from time to time.  Farley Decl. at ¶ 8. As of the Petition Date, CTHFA and GMACM were performing under the Servicing Agreement as if it were in effect between the parties. Id. at ¶ 10.

18. GMAC Mortgage Corporation of PA, predecessor-in-interest to GMACM, entered into the Servicing Agreement on July 15, 1987.  The Servicing Agreement references a Master Commitment Agreement for Mortgage Purchases dated July 15, 1987 (the "Master Purchase Agreement").  A copy of the Master Purchase Agreement is annexed to the Farley Decl. as Exhibit "B." Under the Master Purchase Agreement, GMACM sold mortgages to CTHFA that either were insured by the Federal Housing Administration, insured through private mortgage insurance or backed by Veterans Administration guarantees.  See Exhibit "B" to Farley Decl. at ¶ 2.

---

[2] See generally, Connecticut Housing Finance Authority, http://www.chfa.org (last visited Dec. 11, 2014).

19. Pursuant to the Servicing Agreement, GMACM agreed to service loans purchased by CTHFA from GMACM or from other lending institutions and referred to and accepted by GMACM (the "CTHFA Loan Portfolio").

20. For over 20 years, GMACM and CTHFA maintained the loan servicing relationship under the Servicing Agreement. On or about September 18, 2008, GMACM sent CTHFA a written notice purporting to terminate the Servicing Agreement in connection with the termination of the Master Purchase Agreement (the "Termination Letter"). A copy of the Termination Letter furnished by counsel to CTHFA is annexed to the Farley Decl. as Ex. C.[3] According to the Termination Letter, the decision to terminate the Master Purchase Agreement and Servicing Agreement was precipitated by an institutional decision to exit the retail mortgage lending business. Farley Decl. at ¶ 12. Section 5.C of the Servicing Agreement permitted GMACM to terminate the agreement on 60-days' advance notice. See Servicing Agreement ¶ 5.C; Farley Decl. at Ex. A.

21. The Master Purchase Agreement was terminated. Farley Decl. at ¶ 13. However, GMACM continued to service the CTHFA Loan Portfolio. Neither the Debtors nor the Liquidating Trust are aware of any agreement having been executed by the parties by which they memorialized their understanding that GMACM would continue in its role as servicer for the CTHFA Loan Portfolio. Id. Nonetheless, since September 18, 2008, and through the date hereof, both parties have continued to render performance to each other in conformity with the terms of the Servicing Agreement. Id.

---

[3] As described in the Farley Declaration, the existence of the Termination Letter came to light during the course of discussions between counsel to GMACM and CTHFA in November 2012, prior to the hearing to consider approval of the sale of the Debtors' loan servicing platform to Ocwen.

22. During the course of the relationship and through the Petition Date, GMACM serviced the CTHFA Loan Portfolio in accordance with the standards imposed by the Servicing Agreement and the applicable CTHFA guides in effect from time to time. The servicing of the CTHFA Loan Portfolio was performed in an acceptable manner under the supervision of experienced personnel in an area of the Debtors' servicing group that specialized in negotiated servicing arrangements for third parties. The servicing personnel responsible for CTHFA transactions on a day-to-day basis had a great deal of familiarity with the CTHFA Loan Portfolio and the servicing thereof, and these personnel were managed by experienced servicing personnel. Likewise, CTHFA designated staff served as point persons for the servicing of the CTHFA Loan Portfolio with whom GMACM personnel maintained regular communication on both a formal and informal basis over the course of the relationship. Monthly certificate holder reports were furnished by GMACM to CTHFA which provided updates on the CTHFA Loan Portfolio, and GMACM personnel were available in the event that CTHFA had any questions or concerns. Id. at ¶ 14.

23. As of September 30, 2012, the CTHFA Loan Portfolio serviced by GMACM consisted of approximately 880 residential mortgage loans with a total unpaid principal balance of approximately $83,981,213.46. As of August 31, 2014, the CTHFA Loan Portfolio consisted of approximately 831 residential mortgage loans with a total unpaid principal balance of approximately $66,098,235.65. Id. at ¶ 15.

24. GMACM's day-to-day duties under the Servicing Agreement generally involved routine loan servicing functions including submitting monthly remittances to CTHFA of collections, monthly loan level reporting, maintenance of accounts for each mortgage loan, maintenance of escrows, coordinating actions with CTHFA in instances of

mortgagor defaults, including foreclosure actions and assisting foreclosure counsel, and to the extent applicable, recovering insurance proceeds. In return, GMACM received a monthly fee assessed against principal payments and the other fees as set forth in the Servicing Agreement. Id. at ¶ 16. GMACM remained in compliance with the Servicing Agreement in all material respects. Id. For example, GMACM in its role as servicer, continued to make advances for interest, insurance, and taxes for borrowers who were delinquent in satisfying their obligations under their respective mortgage loans. As of August 31, 2014, approximately $1,784,731.26 of servicing advances are outstanding for which the Liquidating Trust is entitled to reimbursement. Id.

**Efforts to Assume and Assign Servicing Agreement
in Connection with Sale of Servicing Platform**

25. In connection with the Debtors' sale of their loan servicing platform, on June 28, 2012, the Court entered the Sale Procedures Order [Dkt. No. 538]. Among other things, the Sale Procedure Order established and approved procedures for the assumption and assignment of executory contracts, forms of notice and related deadlines. In accordance with the Sales Procedures Order, the Debtors filed a proposed list of contracts to be assumed and assigned in connection with the sale (the "Assigned Contracts List") [See Dkt. No. 924]. The Assigned Contracts List identified certain servicing agreements between GMACM and CTHFA as slated for assignment to the prevailing and approved bidder and listed a zero dollar cure amount for each contract. See Assigned Contracts List at Exhibit 3-A p. 10.

26. On October 30, 2012, CTHFA filed a limited objection to the Sale Motion [Dkt. No. 2006] (the "Limited Objection"). Among other things, CTHFA contended in the Limited Objection that the servicing agreements with CTHFA could not be assigned

to a third party without CTHFA consent. In response to the limited objection, counsel to the Debtors and CTHFA engaged in discussions in an effort to address CTHFA's concerns. Farley Decl. at ¶ 17. Eventually, the parties confirmed that the contracts listed on the Assigned Contracts List were no longer in-force between the parties and the only agreement in issue between the parties was the Servicing Agreement. After engaging in further discussions and exchanging information, the September 2008 Termination Letter came to light. Neither party disputed that the termination notice had been delivered and received, likewise each acknowledged that since the purported termination, both parties continued to perform under the terms of the Servicing Agreement. See Id. at ¶ 17.

27.     On November 15, 2012, CTHFA filed a supplement to the Limited Objection (the "Supplement") [Dkt. No. 2185], by which, among other things, CTHFA apprised the Court of the termination of the Servicing Agreement, objected to the Debtors' effort to assume and assign a "terminated contract," and raised further objections to the Debtors' proposed cure. Notably, while the Supplement includes entirely vague and anecdotal references to potential breaches of the Servicing Agreement, the Supplement is devoid of any specific allegation of breaches or potential damages. Instead, CTHFA asserted that all information related to potential breaches of the Servicing Agreement and resulting damages is within the exclusive control of the Debtors. In short, CTHFA asserted that it is incapable of ascertaining any liquidated damages. However, left unsaid in the Supplement is any mention of the detailed reports GMACM had been submitting to CTHFA on a monthly basis and the parties' sound working relationship.

28.     Following the filing of the Limited Objection, the parties continued their discussions and engaged counsel to Ocwen in an effort to arrive at mutually acceptable

terms for GMACM's assumption and assignment of the servicing of the CTHFA Loan Portfolio to Ocwen.  Farley Decl. at ¶ 18.  Despite GMACM's diligent efforts, the parties were unable to come to resolution in advance of the November 20, 2012 hearing to consider approval of the sale of the servicing platform.  In advance of the sale hearing, the Debtors elected not to challenge CTHFA's position that the Servicing Agreement had been terminated and did not include the Servicing Agreement on the list of contracts to be assumed and assigned to Ocwen.  Each of the Debtors, CTHFA and Ocwen agreed that they would continue their dialogue in an effort to reach acceptable terms for the assignment to Ocwen of the servicing of the CTHFA Loan Portfolio.  Although Ocwen indicated that it remained amenable to considering a transaction with CTHFA at that time, Ocwen contended that it was not required to accept an assignment of the servicing for the CTHFA Portfolio given the purported termination of the Servicing Agreement.  Id.

    29. On November 21, 2012, the Court entered an order (the "Sale Order") approving the sale of the Debtors' mortgage loan servicing and origination platforms to Ocwen pursuant to that certain Asset Purchase Agreement between Ocwen and certain of the Debtors dated November 2, 2012 (as amended from time to time, the "APA").  The sale to Ocwen closed on February 15, 2013.  Prior to the closing of the sale, GMACM continued to service the CTHFA Loan Portfolio in accordance with the terms of the Servicing Agreement.  Pursuant to the APA, Ocwen and GMACM, among other Debtor parties, entered into a subservicing agreement (the "Ocwen Subservicing Agreement"). Pursuant to the Ocwen Subservicing Agreement, since the closing of the APA, Ocwen has serviced the CTHFA Loan Portfolio (as well as other of the Debtors' servicing rights not assigned to

12

ny-1158883

Ocwen) on behalf of the Debtors and, subsequent to the Plan Effective Date, the Liquidating Trust.  Id. at ¶ 19.

30.     On December 13, 2012, CTHFA filed a motion for relief from the automatic stay seeking, among other things, recovery of the CTHFA Loan Portfolio [Dkt. No. 2401] (the "Motion for Relief").  On January 14, 2013, GMACM filed a Response and Reservation of Rights with respect to the Motion for Relief [Dkt. No. 2623].  The parties have deferred consideration of the Motion for Relief since the filing thereof.

31.     Following the closing of the APA, the Debtors and subsequent to the Plan Effective Date, the Liquidating Trust, and CTHFA, primarily through counsel, attempted to reach an agreement which would have allowed for the transfer of the servicing of the CTHFA Loan Portfolio from GMACM to Ocwen.  Farley Decl. at ¶ 20.  The Debtors, and the Liquidating Trust, primarily through counsel, working cooperatively with CTHFA, attempted to broker a mutually acceptable transaction with Ocwen governed largely by the terms of the APA.  Despite the Debtors' and Liquidating Trust's extensive efforts to broker a mutually acceptable deal among GMACM, Ocwen and CTHFA, Ocwen eventually advised that it would not take an assignment of the servicing of the CTHFA Portfolio under any terms.  Id.

32.     Throughout this entire period–approximately 20 months since the closing of the APA--the CTHFA Loan Portfolio has been serviced under the Subservicing Agreement.  The Liquidating Trust has apprised CTHFA that it is prepared to work with CTHFA to implement a service transfer of the CTHFA Loan Portfolio to a third-party servicer or to CTHFA, in accordance with standard procedures and applicable law.  In fact, in response to a query from CTHFA, the Liquidating Trust identified a potential servicer.

13

ny-1158883

Id. at ¶ 21. In connection with any service transfer, the Liquidating Trust reserves the right to recover all outstanding advances and other sums that may be due the Liquidation Trust in full.

### The Liquidating Trust's Diligence of the Proofs of Claim

33.     The $84 million face amount of CTHFA Claim no. 5856 presumably represents the entire unpaid principal balance of the CTHFA Loan Portfolio either at the Petition Date or as some time closer to the date the claim was filed, i.e., November 16, 2012.  In either event, it is simply protective in nature.  The Liquidating Trust is not aware of any material claims raised by CTHFA prior to the Petition Date, nor specific facts that would give rise to the existence of any such claims.  The Liquidating Trust has made inquiries of Ocwen in its capacity as subservicer as to whether it is aware of the existence of any such claims, and similarly, Ocwen has advised the Liquidating Trust that it is not aware of any such claims.  The Liquidating Trust does not believe that any act or omission on the part of GMACM would have given rise to material servicing-related claims that accrued prior to the Petition Date.  Id. at ¶ 22.  On the contrary, prior to the Petition Date, GMACM serviced the CTHFA Loan Portfolio with an appropriate level of care and in accordance with both the Servicing Agreement and its standard and customary practices.  See Id. Although not relevant to the Proofs of Claim, the Debtors continued to service the CTHFA Portfolio through the closing of the APA in accordance with their prior practices and standards.  Id.

34.     CTHFA is provided monthly remittance and complete reporting on the status of the CTHFA Loan Portfolio.  CTHFA's possession of that information would allow it to make its own assessment of any claims it may have against the Debtor as of the Petition

Date. It has not done so. To the extent the Court is not prepared to grant the relief requested, the Liquidating Trust reserves the right to take appropriate discovery from CTHFA.

35. As stated, the Liquidating Trust is prepared to work with CTHFA to accomplish a service transfer of the CTHFA Loan Portfolio in an expedient and efficient fashion. In connection with any service transfer, the Liquidating Trust reserves all rights to recover in full all outstanding advances and other sums that may be due the Liquidation Trust.

36. The relief requested will further the Liquidating Trust's ability to fulfill its obligations to its constituents. As outlined above, approximately $84 million of the Disputed Claims Reserve is attributed to the Claim. Expunging the claim will free up this reserved sum for allocation to holders of allowed claims.

37. Accordingly, for all of the foregoing reasons, the Liquidating Trust respectfully requests that the Claim be expunged in its entirety

## NOTICE

The Liquidating Trust has provided notice of this Objection in accordance with the Case Management Procedures Order, approved by this Court on May 23, 2012 [Docket No. 141] and the Procedures Order.

## **CONCLUSION**

WHEREFORE, the Liquidating Trust respectfully requests entry of the Proposed Order granting the relief requested herein and such other and further relief as this Court may deem proper.

Dated: December 16, 2014
      New York, New York

/s/ Norman S. Rosenbaum
Norman S. Rosenbaum
Jordan A. Wishnew
James A. Newton
MORRISON & FOERSTER LLP
250 West 55th St.
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for the ResCap Liquidating Trust*