William B. Pollard, III (WBP-9252)
Amy C. Gross (ACG-8836)
KORNSTEIN VEISZ WEXLER & POLLARD, LLP
757 Third Avenue
New York, New York 10017
Tel.: 212-418-8600
Fax: 212-826-3640
Attorneys for Plaintiff

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC, et al., | Case No. 12-12020 (MG) |
| Debtors. | Jointly Administered |

---

| | |
|---|---|
| ALLY FINANCIAL INC., | |
| Plaintiff, | COMPLAINT |
| v. | ADV. PROC. NO. |
| WELLS FARGO BANK, N.A., | |
| Defendant, | |

---

Plaintiff Ally Financial Inc. ("AFI"), as and for its Complaint, by and through its attorneys,

Kornstein Veisz Wexler & Pollard, LLP, with knowledge as to its own actions and upon information

and belief as to the actions of others, alleges as follows:

3670.0000COMACG.00003

## NATURE OF THIS ACTION

1.     This action is brought to recover funds illegally taken from a deposit account that AFI maintained with Defendant Wells Fargo Bank, N.A. ("Wells Fargo") to satisfy an obligation Wells Fargo alleges third party depositors Residential Capital, LLC, together with certain of its subsidiaries and affiliates (the "Debtors"), owed to Wells Fargo on account of certain legal expenses that Wells Fargo claims it incurred in connection with the Debtors' bankruptcy.  Wells Fargo first purportedly amended a commercial deposit agreement between AFI and Wells Fargo (the "Commercial Deposit Agreement") to create a new obligation on AFI's part, far beyond the scope of the original agreement, in an attempt to give Wells Fargo a legal basis to debit AFI's accounts for expenses Wells Fargo might incur because of the Debtors' relationship as its bank depositor customers.  Wells Fargo then wrongfully took over $472,000 from an AFI account to reimburse itself for legal fees that Wells Fargo says it incurred because of its involvement in the Debtors' bankruptcy.  In addition to the fact that Wells Fargo had no right to amend the Commercial Deposit Agreement in this manner or take AFI's money for that purpose, the legal fees that Wells Fargo says it incurred were both unnecessary and exorbitant.

2.     More specifically, Wells Fargo claims that it amended the Commercial Deposit Agreement -- without consideration and without AFI's consent -- by sending AFI a letter stating the terms of this purported amendment.  Among those new terms was a guarantee imposed on AFI purporting to make it responsible for obligations that the Debtors may owe to Wells Fargo relating to the bank accounts Debtors maintained with Wells Fargo.  In this regard, Wells Fargo claims that the Debtors are legally obligated to pay Wells Fargo's legal fees and expenses related to the Debtors' accounts, and by purportedly amending the Commercial Deposit Agreement to make AFI

2

a guarantor of the Debtors' obligations, Wells Fargo claims that AFI is now responsible for such

legal fees and expenses. But AFI was not a guarantor of the Debtors' obligation as to those separate

accounts under the original Commercial Deposit Agreement, and never agreed to guarantee such

obligations.

3.    Wells Fargo sought this amendment to the Commercial Deposit Agreement because

it believed that the Debtors may declare bankruptcy, and Wells Fargo wanted to shift any legal

expenses it incurred because of that bankruptcy to AFI.

4.    Wells Fargo claimed in its notice of this amendment that AFI's continued use of its

own accounts with Wells Fargo after approximately 37 days from the date of notice would be

deemed acceptance of the amendment.

5.    AFI rejected the amendment and immediately began the process to close its accounts

with Wells Fargo as quickly as possible. However, it was commercially unreasonable for AFI to

close all of its Wells Fargo accounts in the brief amount of time Wells Fargo allowed in its notice

of the amendment, and Wells Fargo knew this.

6.    Wells Fargo nevertheless ultimately took from an AFI account nearly half a million

dollars that it claimed the Debtors owed Wells Fargo for legal fees Wells Fargo purportedly incurred

in connection with the Debtors' bankruptcy. Wells Fargo did this one business day after AFI

received notice from Wells Fargo of its intent to debit an AFI account for the Debtors' debt.

7.    In taking AFI's money, Wells Fargo breached its Commercial Deposit Agreement

with AFI. Wells Fargo's conduct also constitutes a conversion of AFI's funds. For these reasons,

Wells Fargo is liable to AFI for damages at least in the amount of the wrongfully taken funds, plus

interest. AFI also seeks a declaration that Wells Fargo's purported amendment to the Commercial Deposit Agreement is invalid.

## THE PARTIES

8.      Plaintiff AFI is a corporation organized under the laws of Delaware with its principal corporate offices located in Detroit, Michigan.

9.      Defendant Wells Fargo is a national bank organized under the laws of the United States with its principal corporate offices located in Sioux Falls, South Dakota.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over this dispute under 28 U.S.C. §§ 157 and 1334(b) in that the dispute is substantially related to, and all relevant facts substantially occurred in connection with, the Debtors' Chapter 11 cases. Jurisdiction is further conferred by the declaratory judgment statute, 28 U.S.C. §2201, *et seq.*

11.      Venue is proper in this District because relevant acts and events occurred within the district, the parties have consented to the venue, and both plaintiff and defendant do business and maintain facilities within the District.

12.      This proceeding is a non-core proceeding. In connection with resolving Wells Fargo's confirmation objection, AFI and Wells Fargo consent to the entry of final orders or judgment by the Bankruptcy Court.

13.      This proceeding relates to the bankruptcy case of *In re Residential Capital, LLC, et al.*, Debtors, Case No. 12-12020 (MG), Chapter 11, presently pending in the United States Bankruptcy Court for the Southern District of New York (Manhattan).

4

## THE FACTS

14.     AFI, directly or through certain of its subsidiaries, ("Ally") is one of the largest

providers of automotive financing and leasing products and services in the country.  Ally's business

includes automobile financing and leasing services for individuals and businesses, as well as

inventory financing and other commercial lending products and other services for automobile

dealers.  Ally financed one out of every 18 new vehicles financed in the United States in 2013, and

it services approximately 16,000 automotive dealers and 4 million retail automotive customers in

the United States.  Ally also offers vehicle service contracts as well as inventory insurance coverage

for dealers.

### The Commercial Deposit Agreement

15.     AFI and certain of its subsidiaries, including the Debtors, maintained multiple

commercial deposit accounts with Wachovia Bank, and later with Wells Fargo as successor to

Wachovia.  Over thirty of these accounts were checking accounts relating to Ally's auto servicing

business (the "Ally Auto Servicing Accounts").  AFI also maintained one main funding account

(the "AFI Funding Account") that was used to transfer funds to cover checks issued from the Ally

Auto Servicing Accounts.  In a given month, the Ally Auto Servicing Accounts could issue many

thousands of checks to auto finance customers, including, for example, customers who overpaid

installment payments and were due refunds.

16.     The Debtors were separate independent legal entities that were direct or indirect AFI

subsidiaries.  The Debtors were engaged in the mortgage loan business and maintained their own

5

accounts with Wachovia, and later Wells Fargo as successor to Wachovia. These accounts were not used in Ally's auto servicing business.

17.    On January 3, 2012, AFI and certain affiliates, including the Debtors, executed a Commercial Deposit Agreement with Wachovia Bank and Wachovia Bank of Delaware, both of which were succeeded by Wells Fargo, setting forth various terms and conditions relating to accounts that AFI, the Debtors, and the other signatories maintained with Wachovia (later Wells Fargo). A copy of that Commercial Deposit Agreement is annexed hereto as Exhibit A.

18.    The Commercial Deposit Agreement established a separate and discrete relationship between each account holder and Wells Fargo and created only individual obligations between Wells Fargo and each account holder. As stated on page 1 of the Commercial Deposit Agreement, "each such entity maintaining an account or using any of the services [referred to in the Agreement] . . . is individually referred to herein as 'you.'" It did not create any joint obligations and did not contain any provisions that otherwise made one depositor liable for the obligations of another depositor. Rather, all obligations were separate and individual to each account holder.

19.    The Commercial Deposit Agreement in its original form contained various obligations running specifically between Wells Fargo and each individual depositor-signatory. It provided, among other things, for certain indemnification obligations, stating in relevant part:

> [Y]ou agree to indemnify and hold us . . . harmless from (or at our election and where appropriate to reimburse us for) any and all losses, costs and expenses (including attorneys' reasonable fees and costs) resulting from: . . .(a) claims brought against us by any person or entity arising in connection with any of the services or treasury services provided under the agreement . . . (d) obligations, losses or expenses we incurred in connection with any legal process, dispute or third-party claim related to you or your accounts.

6

Commercial Deposit Agreement, § 21.

20.    The Commercial Deposit Agreement also included a section called "SETOFF," which stated:

> If you [depositor] ever owe us [Wells Fargo] money as a customer, borrower, guarantor or otherwise including any obligation owed to us for services provided pursuant to this agreement or owed to a financial institution that we acquire, then you agree that, in addition to any other remedies we may have, we have the right to deduct and set off amounts you owe us from any accounts you hold with us or our affiliates.

21.    The Commercial Deposit Agreement also stated that "We [Wells Fargo] may amend this agreement and any documentation referred to herein and the rules related to your account at any time.  We will provide you 30 days prior notice of any such changes or amendments if they are not in your favor.  If you continue to use such services after such notice you will be deemed to have accepted such changes."

22.    Nothing in the Commercial Deposit Agreement as entered into on January 3, 2012 directly or indirectly made AFI responsible for the debts or other obligations of any of its subsidiaries or affiliates.  Indeed, that is why Wells Fargo purported to amend the Agreement in an attempt to make AFI a guarantor of the Debtors' obligations.  Without a valid amendment that made AFI a guarantor of the Debtors' obligations, Wells Fargo had no legal basis whatsoever to assert a claim against AFI for any of the Debtors' obligations or to debit AFI's account for amounts allegedly owed by the Debtors.

**Wells Fargo Purports to Amend the Commercial Deposit Agreement**

23.    Wells Fargo sent a letter to AFI, dated as of March 19, 2012, purporting to amend the Commercial Deposit Agreement (the "Purported Amendment").  A copy of that letter is annexed hereto as Exhibit B.

7

24.    The Purported Amendment included a new guaranty provision that stated, in relevant part:

> a. . . . ALLY FINANCIAL, INC. ("Guarantor"), jointly and severally unconditionally guarantee and promise to pay [Wells Fargo], or order, on demand in lawful money of the United States of America and in immediately available funds, any and all Indebtedness of any Subsidiary ["Subsidiaries" being defined as a variety of the Debtor entities] to [Wells Fargo] **arising out of or relating in any way to any deposit account maintained by Subsidiary with [Wells Fargo], or any treasury management service offered by [Wells Fargo] which is purchased or otherwise utilized by Subsidiary . . . .** The term "Indebtedness" is used herein in its most comprehensive sense and includes any and all advances, debts, obligations and liabilities of Subsidiary, or any of them . . . [Wells Fargo's] RIGHTS WITH RESPECT TO GUARANTOR'S PROPERTY IN [Wells Fargo's] POSSESSION.  In addition to all liens upon and rights of setoff against the monies, securities or other property of Guarantor given to [Wells Fargo] by law, [Wells Fargo] shall have a lien upon and a right of setoff against all monies, securities and other property of Guarantor now or hereafter in the possession of or on deposit with [Wells Fargo], whether held in a general or special account or deposit or for safekeeping or otherwise, and every such lien and right of setoff may be exercised without demand upon or notice to Guarantor. No lien or right of setoff shall be deemed to have been waived by any act or conduct on the part of [Wells Fargo], or by any neglect to exercise such right of setoff or to enforce such lien, or by any delay in so doing, and every right of setoff and lien shall continue in full force and effect until such right of setoff or lien is specifically waived or released by [Wells Fargo] in writing.

25.    The Purported Amendment claimed that continued use by AFI of its own accounts covered by the Commercial Deposit Agreement after April 25, 2012, would be deemed consent to the amendment.

26.    The Purported Amendment was well beyond the scope of AFI's account relationship with Wells Fargo.  Rather, Wells Fargo sought to unilaterally impose a guarantor obligation on AFI for liability that may be incurred by separate legal entities.  That these companies were AFI

subsidiaries is irrelevant, as the law recognizes the Debtors as separate, independent entities responsible for their own obligations and that AFI has no liability for the Debtors' debts or obligations.

27.    Wells Fargo did not offer or give any consideration to support the Purported Amendment.

28.    AFI did not assent to the Purported Amendment, rather, it rejected it.

**AFI Closes Its Accounts With Wells Fargo**

29.    Immediately after receiving the Purported Amendment, AFI rejected the amendment and initiated the process of closing its accounts. AFI made diligent efforts to close all of its accounts with Wells Fargo as soon as commercially possible. However, as Wells Fargo knew, AFI's accounts were not simple checking accounts where funds could be moved promptly to another institution. Rather, the Ally Auto Servicing Accounts had issued thousands of checks drawn on those accounts that remained unpaid at the time of Wells Fargo's Purported Amendment (as an illustration of the magnitude of checks, in 2011, approximately 63,000 checks per month were drawn on those accounts and issued). AFI could only close each account after the checks drawn on it had been paid, escheated, or reissued. Moreover, as AFI informed Wells Fargo, immediately closing those accounts with so many checks outstanding posed a serious business risk to AFI in the event those checks were returned unpaid or otherwise did not clear because the account had been closed.

30.    In addition, AFI had to establish accounts at a new bank to service its auto servicing business, and that, too, Wells Fargo knew, would take more than 37 days to accomplish, given the complexity of the accounts.

9

31.    Finally, the closing of any AFI account required Wells Fargo to approve such closure in accordance with its internal administrative processes. As such, Wells Fargo controlled the timing of the closing of any account upon a request for account closure. Wells Fargo was fully aware of the processes required to close such accounts and open new ones and the time that this would require.

32.    AFI sought to work with Wells Fargo in closing its accounts and transitioning its banking relationship to another bank, but Wells Fargo repeatedly was uncooperative with and unresponsive to AFI's efforts to accomplish this.

33.    Thus, despite AFI's efforts, it was impossible to close the more than 30 accounts AFI held with Wells Fargo by Wells Fargo's unreasonable, unilateral deadline.

**The Debtors' Bankruptcy**

34.    On May 14, 2012, the Debtors filed for chapter 11 bankruptcy.

35.    Wells Fargo sent lawyers from the law firm Winston & Strawn ("W&S") to proceedings in the Bankruptcy Court, claiming that it needed to protect its interests in the Debtors' accounts. Despite being asked repeatedly by AFI's counsel, and despite AFI's counsel raising the issue before the Bankruptcy Court, Wells Fargo would not -- or could not -- articulate what specific interest it was trying to protect or why Wells Fargo had any potential claim or liability with respect to the Debtors' accounts that needed protection.

36.    For example, despite having already filed two limited objections opposing certain of the Debtors' motions,[1] James Donnell, an attorney from W&S, admitted at a hearing related to

---

[1] See In re Residential Capital, LLC, Case No. 12-12020 (MG) (Bankr. S.D.N.Y. May 14, 2012) [ECF D.E. 27 and 28].

such motions that Wells Fargo was not "aware of any claims [against the Debtors] as of [June 18, 2012]." Hr'g Tr. at 56:8, *In re Residential Capital, LLC*, Case No. 12-12020 (MG) (Bankr. S.D.N.Y. June 18, 2012) [ECF D.E. 472] (relevant excerpts attached hereto as <u>Exhibit C</u>). Moreover, when the Court asked Mr. Donnell to explain why he believed Wells Fargo was entitled to adequate protection for certain of its interests, Mr. Donnell responded "we concede we can't identify a present claim . . ." against the Debtors. *Id.* at 57:12–13. Mr. Donnell would later admit that Wells Fargo's dispute "is not with the debtor, per se . . . [and Wells Fargo] would waive any existing fee claim against the debtor." Hr'g Tr. at 245:18–21, *In re Residential Capital, LLC*, Case No. 12-12020 (MG) (Bankr. S.D.N.Y. November 19, 2013) [ECF D.E. 5971] (relevant excerpts attached hereto as <u>Exhibit D</u>).

37.    In addition, W&S filed multiple proofs of claims on Wells Fargo's behalf (the "<u>Claims</u>"), but those Claims did no more than attached the Commercial Deposit Agreement and Purported Amendment, along with related account documents and service descriptions, and assert unliquidated claims without identifying or even suggesting a basis for the Debtors' -- or Ally's -- liability. Further, Wells Fargo never identified a basis for those Claims. (A copy of a representative proof of claim, without attachments, is attached hereto as <u>Exhibit E</u>).

38.    Nonetheless, W&S continued to charge Wells Fargo exorbitant legal fees in connection with the Debtors' bankruptcy cases even though all of the Debtors' accounts at Wells Fargo were closed on or before June 12, 2012. *Plan Proponents Proposed Findings of Fact* at ¶ 358, *In re Residential Capital, LLC*, Case No. 12-12020 (MG) (Bankr. S.D.N.Y. Dec. 15, 2013) [ECF D.E. 6019-1].

**Wells Fargo Wrongfully Takes Funds From AFI's Account**

39.     Despite knowing that AFI rejected Wells Fargo's attempt to amend the Commercial Deposit Agreement and its communications that it would close its accounts and was working to do just that as quickly as commercially possible, Wells Fargo debited funds from the AFI Funding Account to cover the costs of the legal fees it said it had incurred in the Debtors' bankruptcy that allegedly were related to the debtors' accounts.

40.     By letter dated May 4, 2012, Wells Fargo requested payment from AFI of $88,159.39 in legal fees for services rendered by W&S from December 27, 2011 through February 29, 2012, purportedly rendered "in connection with the implementation and administration of this agreement, including amendments . . ." These services were purportedly rendered before the Purported Amendment was in place, and, thus, before Wells Fargo claimed it had a right to debit AFI's account as an alleged guarantor of an alleged obligation of the Debtors. This further demonstrates Wells Fargo's wrongful conduct.

41.     On November 29, 2012, AFI received from Wells Fargo a request for payment in the amount of $384,486.02 for reimbursement of fees charged by W&S for services allegedly related to Wells Fargo's participation in the Debtors' bankruptcy involving the Debtors' accounts.

42.     AFI contested Wells Fargo's actions and also demanded that Wells Fargo justify the amount of the fees that it claimed the Debtors owed Wells Fargo. Wells Fargo then provided AFI with heavily redacted invoices purportedly supporting Wells Fargo's claimed legal expenses. These redacted invoices contained no description whatsoever of the alleged work for which Wells Fargo sought to hold AFI responsible beyond that it was for "Res/Cap," giving AFI no way to tell if the services billed for were necessary or even related to the Debtors' bankruptcy, or whether the

· 12

amounts billed were appropriate. On December 18, 2012, after a review of those redacted bills, AFI's counsel wrote to Wells Fargo's counsel questioning the reasonableness and propriety of the fees requested and counsel's billing practices.

43.     Wells Fargo responded with a letter to AFI, dated December 21, 2012, stating that Wells Fargo planned to debit AFI's accounts to pay the Debtors' alleged obligations for Wells Fargo's legal fees. Wells Fargo claimed that it had the right to do this pursuant to the Purported Amendment. AFI did not receive this letter until Christmas Eve, December 24, 2012.

44.     One business day later, on December 26, 2012, Wells Fargo took $472,619.57 from the AFI Funding Account in purported payment for the Debtors' alleged obligation to pay Wells Fargo's legal fees.

45.     By letter dated March 1, 2013, AFI requested that Wells Fargo return the funds it had taken from AFI's account and that Wells Fargo desist from further conversion of AFI's money.

46.     On December 10, 2013, Wells Fargo agreed to return $100,000 to AFI. In accepting this payment, AFI specifically did not waive any claim to the remaining $372,619.57 that Wells Fargo wrongly took from AFI's account. On December 12, 2013, Wells Fargo returned that $100,000 to AFI.

47.     AFI has demanded that Wells Fargo return the remaining $372,619.57 that it wrongfully took from the AFI Funding Account. Wells Fargo has refused to do so.

13

**FIRST CLAIM FOR RELIEF**
Breach of Contract

48.       AFI repeats and realleges the allegations contained in Paragraphs 1 through 47 as if fully set forth herein.

49.       Wells Fargo's attempt to amend the Commercial Deposit Agreement to make AFI a guarantor of the Debtors' liability and impose liens on AFI's property and its debiting AFI's accounts to satisfy the Debtors' alleged debts are both illegal and ineffective.  Under the terms of the Commercial Deposit Agreement as entered into on January 3, 2012, Wells Fargo had no right to (a) unilaterally amend that agreement to make AFI a guarantor of any of the Debtors' liability with respect to the Debtors' accounts at Wells Fargo, or (b) take funds from AFI's accounts to satisfy the Debtors' alleged debts to Wells Fargo, or (c) impose liens on AFI's property.

50.       The Purported Amendment is commercially unreasonable and rises to the level of being substantively and procedurally unconscionable.  It was a unilateral attempt to make AFI a guarantor of the debts of third parties when this was never contemplated by AFI or Wells Fargo, AFI never agreed to such an expansion of liability, and the subject matter of the amendment had nothing to do with AFI's then-existing banking relationship with Wells Fargo.

51.       Wells Fargo gave no consideration for this attempted unilateral change to and expansion of the terms of the Commercial Deposit Agreement.

52.       The change of terms clause in the Commercial Deposit Agreement does not permit Wells Fargo to create, without AFI's consent, a new obligation on AFI's part to be responsible for the debts of third parties that was not contemplated by the parties or the original agreement in any way, shape, or form.

14

53.    The Purported Amendment is also commercially unreasonable and rises to the level of being substantively and procedurally unconscionable, because it did not provide sufficient time for AFI to close its accounts if it did not wish to be bound by Wells Fargo's unilateral amendment. Wells Fargo knew that it was commercially impossible for AFI to close its accounts in the approximately 37 days that Wells Fargo provided without incurring significant risk.

54.    While AFI attempted to close its accounts as promptly as commercially possible once it received notice of Wells Fargo's Purported Amendment, Wells Fargo refused to cooperate in that process and ultimately debited the AFI Funding Account without AFI's permission to pay a purported liability of the Debtors.

55.    Wells Fargo therefore breached the Commercial Deposit Agreement when it sought to impose a third party guarantor obligation on AFI and when it took $472,619.57 from AFI's account, without AFI's consent, for purposes not permitted by the Commercial Deposit Agreement.

56.    Wells Fargo also breached the Commercial Deposit Agreement when it took funds from AFI's account to pay Wells Fargo's alleged legal fees purportedly relating to the Debtors because those fees were not necessary or reasonably incurred and the amounts incurred were unreasonable for the alleged services provided.

57.    AFI is therefore entitled to damages at least in the amount of $372,619.57, which is the amount of funds Wells Fargo wrongfully took from its account, less the $100,000 Wells Fargo has paid back, plus interest.

## SECOND CLAIM FOR RELIEF
Breach of the Implied Covenant of Good Faith and Fair Dealing

58.    AFI repeats and realleges the allegations contained in Paragraphs 1 through 47 as if fully set forth herein.

59.    The Commercial Deposit Agreement contains an implied promise that Wells Fargo would act in good faith and deal fairly with AFI and not act arbitrarily or irrationally in exercising that discretion.

60.    Wells Fargo's conduct in attempting to unilaterally amend the Commercial Deposit Agreement lacked good faith, constituted unfair dealing, and was arbitrary and irrational.

61.    As a separate claim from the First Claim for Relief based on Wells Fargo's breach of the Commercial Deposit Agreement, and in the alternative to that claim, this bad faith, arbitrary and irrational attempt by Wells Fargo to exercise its purported discretion to amend the Commercial Deposit Agreement breached that Agreement's implied covenant of good faith and fair dealing.

62.    AFI was damaged when Wells Fargo wrongfully took funds from the AFI Funding Account under the purported authority of the Purported Amendment.

63.    AFI is therefore entitled to damages at least in the amount of $372,619.57, the amount of funds Wells Fargo wrongfully took from its account, less the $100,000 Wells Fargo has paid back, plus interest.

**THIRD CLAIM FOR RELIEF**
Conversion

64.     AFI repeats and realleges the allegations contained in Paragraphs 1 through 47 as if fully set forth herein.

65.     The funds AFI held in the AFI Funding Account with Wells Fargo belonged to AFI.

66.     Wells Fargo took funds from the AFI Funding Account without AFI's consent, and without any contractual or other authority to do so, and exercised dominion over and interference with AFI's funds to the derogation of AFI's rights to those funds.

67.     Therefore, AFI is entitled to damages at least in the amount of $372,619.57, the amount of funds Wells Fargo wrongly took from AFI's account, less the $100,000 Wells Fargo has paid back, plus interest.

**FOURTH CLAIM FOR RELIEF**
Declaratory Judgment

68.     AFI repeats and realleges the allegations contained in Paragraphs 1 through 47 as if fully set forth herein.

69.  Wells Fargo's Purported Amendment, seeking to impose on AFI without AFI's consent broad guaranty obligations with respect to the debtors, which are separate corporations, was beyond the scope of the original agreement and is not lawful under the change of terms provision of the Commercial Deposit Agreement.

70.     Wells Fargo's unilateral Purported Amendment to the Commercial Deposit Agreement is not effective or enforceable because (a) Wells Fargo did not have the right to amend the Commercial Deposit Agreement as it did, (b) AFI did not assent to the amendment, (c) the

17

Purported Amendment had nothing to do with AFI's banking relationship with Wells Fargo, (d) the Purported Amendment is not supported by any consideration, (e) the Purported Amendment is commercially unreasonable and rises to the level of being substantively and procedurally unconscionable, and (f) Wells' Fargo's conduct in purporting to make the Purported Amendment lacked good faith, constituted unfair dealing, and was arbitrary and irrational.

71.    Therefore, AFI is entitled to a declaration, for any or all of these reasons, that Wells Fargo's Purported Amendment to the Commercial Deposit Agreement set forth in its March 19, 2012 letter to AFI is illegal and invalid.

WHEREFORE, Plaintiff demands that judgment be entered as follows:

1.    On its first claim, awarding monetary damages in an amount to be determined at trial, but not less than $372,619.57, plus interest; and

2.    On its second claim, awarding monetary damages in an amount to be determined at trial, but not less than $372,619.57, plus interest; and

3.    On its third claim, awarding monetary damages in an amount to be determined at trial, but not less than $372,619.57, plus interest;

4.    On its fourth claim, a declaration that Wells Fargo's Purported Amendment to the Commercial Deposit Agreement set forth in its March 19, 2012 letter to AFI is illegal and invalid; and

5.      Awarding AFI such other and further relief as is equitable, just and proper.


Dated: New York, New York
        December 17, 2014


                        KORNSTEIN VEISZ WEXLER & POLLARD, LLP


                        By:____/s/ William B. Pollard, III_____
                                William B. Pollard, III (WBP-9252)
                                Amy C. Gross (ACG-8836)

                        757 Third Avenue
                        New York, New York 10017
                        Tel.: 212-418-8600
                        Fax:  212-826-3640
                        wpollard@kvwmail.com
                        agross@kvwmail.com
                        Attorneys for Plaintiff