# Exhibit C

```
 1                                                                    1

 2    UNITED STATES BANKRUPTCY COURT

 3    SOUTHERN DISTRICT OF NEW YORK

 4    Case No. 12-12020-mg

 5    - - - - - - - - - - - - - - - - - - - -x

 6    In the Matter of:

 7

 8    RESIDENTIAL CAPITAL, LLC, et al.,

 9

10                Debtors.

11

12    - - - - - - - - - - - - - - - - - - - -x

13

14                United States Bankruptcy Court

15                One Bowling Green

16                New York, New York

17

18                June 18, 2012

19                10:18 AM

20

21    B E F O R E:

22    HON. MARTIN GLENN

23    U.S. BANKRUPTCY JUDGE

24

25
```

2

1
2  12-12020-mg Residential Capital, LLC Ch. 11   (Doc no. 61, 188)
3  Evidentiary Hearing RE: Debtors' Motion Pursuant to 11 U.S.C.
4  Sections 105, 363(b), (f), and (m), 365 and 1123 and Fed. R.
5  Bankr. P. 2002, 6004, 6006, and 9014 For Order: (A)(I)
6  Authorizing and Approving Sale Procedures, Including Break-Up
7  Fee and Expense Reimbursement; (II) Scheduling Bid Deadline and
8  Sale Hearing; (III) Approving Form and Manner of Notice
9  Thereof; and (IV) Granting Related Relief and (B)(I)
10 Authorizing the Sale of Certain Assets Free and Clear of Liens,
11 Claims, Encumbrances, and Other Interests; (II) Authorizing and
12 Approving Asset Purchase Agreements Thereto; (III) Approving
13 the Assumption and Assignment of Certain Executory Contracts
14 and Unexpired Leases Related Thereto; and (IV) Granting Related
15 Relief filed by Lorenzo Marinuzzi on behalf of Residential
16 Capital, LLC
17
18 12-12020-mg (CC: Doc no. 208, 210) Motion of Berkshire
19 Hathaway, Inc. for the Appointment of an Examiner. (Related Doc
20 # 210)
21
22 Adversary proceeding: 12-01671-mg Residential Capital, LLC et
23 al. v. Allstate Insurance Company et al.
24 Doc# 4, 13 Initial Case Conference
25

3

12-12020-mg (Doc no. 80, 13) Final Hearing RE: Motion (I) Authorizing Debtors (A) To Enter Into And Perform Under Receivables Purchase Agreements And Mortgage Loan Purchase And Contribution Agreements Relating To Initial Receivables And Mortgage Loans And Receivables Pooling Agreements Relating To Additional Receivables, And (B) to Obtain Postpetition Financing On A Secured, Superpriority Basis

12-12020-mg Doc # 15, 79 Motion to Approve Use of Cash Collateral / Debtors' Motion for Interim And Final Orders Pursuant To Bankruptcy Code Sections 105, 361, 362, 363, And 507(b) And Bankruptcy Rule 4001(b): (I) Authorizing The Use Of Cash Collateral And Related Relief, (II) Granting Adequate Protection And (III) Scheduling A Final Hearing (Citibank, N.A. Cash Collateral)

12-12020-mg Doc #81, 44 Final Hearing RE: Motion Authorizing the Debtors to (I) Process And Where Applicable Fund Prepetition Mortgage Loan Commitments, (II) Continue Brokerage, Origination And Sale Activities Related To Loan Securitization, (III) Continue To Perform, And Incur Postpetition Secured Indebtedness, Under The Mortgage Loan Purchase And Sale Agreement With Ally Bank And Related Agreements, (IV) Pay Certain Prepetition Amounts Due To Critical Origination

4

1  Vendors, And (V) Continue Honoring Mortgage Loan Repurchase
2  Obligations Arising In Connection With Loan Sales And
3  Servicing, Each In The Ordinary Course Of Business
4
5  12-12020-mg (Doc #89, 42) Evidentiary Hearing RE: Final Hearing
6  RE: Motion (I) Authorizing the Debtors to Obtain Postpetition
7  Financing on a Secured Superpriority Basis, (II) Authorizing
8  the Debtors to Use Cash Collateral, (III) Granting Adequate
9  Protection to Adequate Protection Parties and (IV) Prescribing
10 the Form and Manner of Notice.
11
12
13
14
15
16
17
18
19 Transcribed by:   Penina Wolicki, Clara Rubin,
20
21 eScribers, LLC
22 700 West 192nd Street, Suite #607
23 New York, NY 10040
24 (973)406-2250
25 operations@escribers.net

RESIDENTIAL CAPITAL, LLC, ET AL.                                    55

1  I would just like to note that we are also part of the
2  second call on the language with respect to the DIP order.  We
3  filed an objection with the other securitization trustees.
4            THE COURT:  I don't know what you mean by you're part
5  of the second call.
6            MS. ALVES:  We need to sit down with the debtors to go
7  over the language.  There have been some changes back and
8  forth.
9            THE COURT:  Thank you.
10           MS. ALVES:  Thank you, Your Honor.
11           THE COURT:  Is there anybody else who has not yet been
12 heard who wishes to be heard?  Please come on up to the podium.
13           Hold on, Mr. Goren.
14           MR. WEITNAUER:  Your Honor, Kit Weitnauer of Alston &
15 Bird on behalf of Wells Fargo in its capacity as a trustee as
16 well as master servicer.
17           We filed a joinder.  We're in the same confused
18 position as the other trustees.
19           THE COURT:  Okay.  Next?
20           MR. DONNELL:  Your Honor, Jim Donnell of Winston
21 Strawn appearing for Wells Fargo, successor to Wachovia in a
22 depository account situation where we have a deposit agreement
23 with both Ally Financial and the debtors.
24           I'll be very brief, Your Honor and you can rule on
25 this one.  We're just trying to preserve the rights, the

RESIDENTIAL CAPITAL, LLC, ET AL.                                    56

1  reservation of rights that we had embodied in the interim
2  order.  And if it --
3            THE COURT:  If your accounts are closed what rights
4  are you trying to preserve?
5            MR. DONNELL:  It's our rights versus Ally Financial,
6  the nondebtor.  We have contractual subordination rights.  We
7  may have claims in the future.  We concede the accounts are
8  closed; we are not aware of any claims as of today.
9            THE COURT:  What is it in the order that would affect
10 your rights with respect to Ally Financial?
11           MR. DONNELL:  The provision in the order that recites
12 that Ally Financial is not subject to any subordination on
13 account of even its pre-petition claims.  We have a contractual
14 subordination agreement that shouldn't be affected.  I
15 understand if they don't want an equitable subordination
16 complaint or something derivative of the debtor, but it
17 shouldn't affect their contractual subordination with third
18 parties.
19           We agree the DIP loan that they make, that's not
20 affected.  We'll limit the subordination to the pre-petition
21 claims just involving Ally Financial.
22           THE COURT:  And just tell me, what's your
23 understanding of the bid and ask with the debtor, they're
24 declining to put in the reservation of rights that you're
25 asking for?

RESIDENTIAL CAPITAL, LLC, ET AL.                                    57

1   MR. DONNELL: That's correct. I found out Friday
2   night, when they filed it, that the entire thing was deleted.
3   So we had also asked for adequate protection from ResCap to
4   replace the collateral that we had. We understand that's
5   totally in your discretion; if you're not going to do that,
6   you're not going to do it. But we think, independent of that,
7   we do have --
8   THE COURT: Adequate protection for what?
9   MR. DONNELL: For whatever claims we have in the
10  future.
11  THE COURT: For what claims?
12  MR. DONNELL: We have -- we concede we can't identify
13  a present claim but we might get -- for example, if we had sued
14  for a preference, for fees.
15  THE COURT: Are you a secured or unsecured creditor
16  with respect to potential claims? What adequate protection --
17  MR. DONNELL: We were secured. On day one we had a
18  secured interest in the accounts. We will concede, Your
19  Honor --
20  THE COURT: On what accounts? The accounts were
21  closed. You don't have any accounts.
22  MR. DONNELL: The bank accounts.
23  THE COURT: Am I right?
24  MR. DONNELL: Your Honor, I will limit my request to
25  simply the nondebtor, Ally Financial, just to preserve the

RESIDENTIAL CAPITAL, LLC, ET AL.                                                58

1  contractual subordination rights.
2      THE COURT: Anybody else want to be heard? Anybody on
3  the phone? Mr. Eckstein?
4      MR. ECKSTEIN: Your Honor, two items. I don't want to
5  create confusion but my understanding is that the order does
6  not release Ally of any claims with respect to its pre-petition
7  debt; it's only with respect to its DIP loans that it's getting
8  the relief that's provided for in the order. So that to the
9  extent this is a concern, my understanding was that the order
10 was not seeking to limit claims that related to pre-petition
11 loans.
12     Second is with respect to what Mr. Shore raised a
13 moment ago. The ninety days was the agreement, but I do want
14 to make clear, because the order has not been finalized, that
15 it is subject to the committee filing a motion seeking standing
16 and that will be satisfactory to toll the ninety-day period, by
17 merely filing a motion. And I want to make sure that that's
18 going to be included in the order.
19     THE COURT: Mr. Shore, do you agree with that, Mr.
20 Eckstein's statement?
21     MR. SHORE: Yes, Your Honor.
22     THE COURT: Thank you, Mr. Shore.
23     MR. ECKSTEIN: Okay. And with respect to the RMBS
24 reservations, we'll need to see where that settles out as well,
25 so we'll discuss with the second call parties.