UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

RESIDENTIAL CAPITAL, LLC, *et al.*

Debtors.

NOT FOR PUBLICATION

Case No. 12-12020 (MG)

Jointly Administered

# MEMORANDUM OPINION AND ORDER SUSTAINING THE RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO CLAIM NUMBER 5892 FILED BY MARVIN E. McDOUGAL JR.

The ResCap Borrower Claims Trust (the "Trust") objects to Claim Number 5892 (the "Claim") filed by Marvin E. McDougal Jr. ("McDougal"). The objection is included in *The ResCap Borrower Claims Trust's Seventy-Fifth Omnibus Objection to Claims (No Liability Borrower Claims)* (the "Objection," ECF Doc. # 7552). The Objection is supported by the declarations of Deanna Horst ("Horst Decl.," ECF Doc. # 7552-3) and Norman S. Rosenbaum (ECF Doc. # 7552-4). McDougal filed an opposition (the "Opposition," ECF Doc. # 7649). The Trust filed a reply (the "Reply," ECF Doc. # 7727), supported by a supplemental declaration of Ms. Horst ("Horst Supp.," ECF Doc. # 7727-1). McDougal subsequently filed a response to the Reply (the "Surreply," ECF Doc. # 7856). The Court held a hearing on December 10, 2014 and took the Objection to the Claim under submission. This Order sustains the Objection and expunges the Claim.

## I.    BACKGROUND

### A.    The Claim

McDougal timely filed two proofs of claim. His general unsecured claim in the amount of $1,650,000 against Debtor Residential Funding Company, LLC ("RFC") is at issue here. (Horst Supp. Ex. EE.) In the Court's *Order Granting Debtors' Thirty-Eighth Omnibus Objection to Claims (Wrong Debtor Borrower Claims)* (ECF Doc. # 5898), the Court reclassified

McDougal's Claim as a claim against Debtor GMAC Mortgage, LLC ("GMACM"). (Reply at 16.) McDougal asserts wrongful foreclosure, invalid assignment of note and deed of trust, equitable subrogation,[1] and fraud as bases for his Claim. (Horst Supp. Ex. EE.)

On March 21, 2013, the Court entered the Procedures Order (ECF Doc. # 3294) requiring the Debtors (and now the Trust), before objecting to certain categories of Borrower Claims, to send the Borrower a request letter seeking additional documentation supporting the purported claim. (*See* Procedures Order at 4). The Trust sent McDougal a request letter; McDougal responded, clarifying that his Claim arises from GMACM's alleged wrongful failure to assist him in the lawsuit he filed on February 22, 2008 in California state court against Marin County (the "Marin County Lawsuit"), and from GMACM's lack of standing to pursue foreclosure. (Obj. Ex. A at 3–4.) McDougal provided (1) "Schedule A – Real Property" from his personal chapter 7 bankruptcy case, listing the value of the Property as $1,650,000, and (2) a copy of a complaint and other documents from the Marin County Lawsuit. (*Id.* at 4.) The Marin County Lawsuit alleged causes of action for inverse condemnation and quiet title. (Horst Supp. Ex. GG.) No Debtor was a party to the lawsuit. (*Id.*)

---

[1]    Although McDougal asserts a cause of action for equitable subrogation in his proof of claim (*see* Horst Supp. Ex. EE), he did not advance any arguments in support of this cause of action in his response to the Trust's letter requesting further information or documentation in support of his claim, his Opposition, or his Surreply. In any event, under California law, a party must establish the following five prerequisites to invoke the doctrine successfully: (1) the subrogee must have made payment to protect his own interest; (2) the subrogee must not have acted as a volunteer; (3) the debt paid must be one for which the subrogee was not primarily liable; (4) the entire debt must have been paid; and (5) subrogation must not work any injustice to the rights of others. *Caito v. United Cal. Bank*, 20 Cal. 3d 694, 704 (Cal. 1978). The Trust alleges, and McDougal does not appear to dispute, that McDougal has not made a single payment on the relevant loan since 2007, let alone a payment of "the entire debt." (Obj. Ex. A at 4.) McDougal therefore cannot bring an equitable subrogation claim and this cause of action is disallowed.

### B.    McDougal's Loan History

On April 24, 2006, McDougal obtained a $1,116,000.00 loan (the "Loan") from All California Mortgage, Inc. ("All California"), secured by property located at 375 North Ferndale Avenue, Mill Valley, California 94941 (the "Property").  (Horst Supp. Ex. FF.)  GMAC Bank purchased the Loan on the loan origination date.  (Obj. Ex. A at 3.)  The promissory note (the "Note") signed by McDougal includes endorsements from All California to GMAC Bank, and then from GMAC Bank to GMACM.  (Horst Supp. Ex. FF.)  GMACM then endorsed the Note in blank.  (*Id.*)  No further endorsements appear on the Note, but according to the Trust, GMACM transferred its interest in the Note to RFC.  (Obj. Ex. A at 3; Horst Supp. ¶ 22.)  RFC then transferred its interest in the Note when the Loan was securitized on June 1, 2006; Deutsche Bank Trust Company Americas ("Deutsche Bank") was appointed as Trustee.  (Obj. Ex. A at 3; Horst Supp. ¶ 22.)  An Assignment of Deed of Trust from Mortgage Electronic Registration Systems ("MERS") as nominee for All California to Deutsche Bank was executed on August 11, 2010 and recorded on August 23, 2010.  (Horst Supp. Ex. EE.)  GMACM serviced the Loan from May 11, 2006 until the servicing rights were transferred to Ocwen Loan Servicing ("Ocwen") on February 16, 2013.  (Obj. Ex. A at 3.)

According to the Trust, GMACM mailed McDougal a breach letter on March 5, 2007, advising him that he was past due on his mortgage payments and needed to bring his account current to prevent foreclosure.  (*Id.*)  The Loan was referred to foreclosure on April 12, 2007, because it was in default since January 2007.  (*Id.*)  On April 20, 2007, GMACM filed a Notice of Default; the foreclosure sale was scheduled for August 28, 2007.  (*Id.*)

McDougal entered into a forbearance agreement on August 16, 2007, putting the foreclosure on hold.  (*Id.*)  GMACM agreed to suspend but not terminate the foreclosure, provided that McDougal paid an initial installment of $28,830.00 by August 20, 2007 and

3

subsequent monthly payments of $7,207.50 from September to November 2007. (*Id.*) McDougal requested the forbearance plan and postponement of the foreclosure sale to permit him time to resolve the Marin County Lawsuit. (*Id.*) McDougal made the required August through November 2007 payments, but he defaulted again when he failed to make any payments after November 2007. (*Id.*) McDougal advised GMACM over the telephone on December 12, 2007 that he was unsuccessful in settling the lawsuit and expected to continue litigating the case. (*Id.* at 5–6.) On January 17, 2008, McDougal advised GMACM again that he was moving forward with the lawsuit and wanted to set up a new forbearance plan to bring the Loan current. (*Id.* at 6.) GMACM advised McDougal that he needed to submit a workout package to be considered for loss mitigation options, but that GMACM would postpone foreclosure sale to give him time to submit it. (*Id.*) The foreclosure sale was postponed until February 28, 2008. (*Id.*) On February 25, 2008, GMACM spoke with McDougal's attorney, John Sharp, who advised GMACM that McDougal's efforts in the Marin County Lawsuit would help bring his account current. (*Id.*) GMACM again postponed the foreclosure to provide McDougal with more time to resolve the lawsuit. (*Id.*) On April 25, 2008, McDougal again advised GMACM over the phone that he was moving forward with the Marin County Lawsuit; GMACM responded again by further postponing the foreclosure sale. (*Id.*) McDougal continued to fail to make any mortgage payments. (*Id.*)

On June 3, 2009, GMACM removed the foreclosure hold and the foreclosure sale was scheduled for July 22, 2009. (*Id.*) On June 30, 2009, the foreclosure was put on hold again to give McDougal more time to resolve the Marin County Lawsuit. (*Id.*) On January 25, 2010, the foreclosure hold was removed because McDougal still had not made any mortgage payments.

4

(*Id*.)  The foreclosure sale was scheduled for February 16, 2010, but on February 10, 2010, the foreclosure sale was yet again put on hold—that hold was removed on July 20, 2010.  (*Id*.)

McDougal filed a chapter 7 bankruptcy petition on July 21, 2010.  (*Id*. at 6–7.)  GMACM was granted stay relief on October 28, 2010.  McDougal received a discharge in his chapter 7 case on November 9, 2010, relieving him of personal liability on the Loan, but the mortgage lien rode through the bankruptcy and remained enforceable.  (*Id*. at 7.)  A scheduled foreclosure sale was canceled on November 16, 2010 because the Notice of Default was more than three years old.  (*Id*.)  McDougal's account was again referred to foreclosure on April 13, 2011; a new Notice of Default was filed on May 9, 2011.  (*Id*.)  The six month presale redemption period expired on October 10, 2011.  (*Id*.)  On September 23, 2011, the non-judicial foreclosure sale was scheduled for November 7, 2011, but was again postponed on October 13, 2011 and rescheduled for November 21, 2011 to give McDougal more time to resolve the Marin County Lawsuit.  (*Id*.)  On November 18, 2011, the foreclosure was again placed on hold.  (*Id*.)

The Marin County Lawsuit was dismissed on November 27, 2012 after having been settled.  (*Id*.; Horst Supp. Ex. HH.)  Under the settlement, McDougal was responsible for making certain repairs to the Property; a judgment was to be issued against the Property in favor of Marin County if McDougal failed to make the repairs by a date certain.  (Horst Supp. Ex. HH.) McDougal did not receive any monetary damages in the lawsuit, and he failed to make any further mortgage payments to GMACM.  (*Id*.)  At the time GMACM transferred servicing to Ocwen in February 2013, foreclosure had not yet been completed and McDougal was in default dating back to July 1, 2007. (Obj. Ex. A at 4.)

### C. The Parties' Arguments

The Trust argues that the Debtors are not liable because (1) the Debtors were never parties to the Marin County Lawsuit or involved in any of the allegations cited in the lawsuit;

5

and (2) there is no contractual or legal basis setting forth Debtors' responsibility to assist McDougal in the Marin County Lawsuit. Additionally, GMACM accommodated numerous requests by McDougal to postpone the foreclosure sale because of the Marin County Lawsuit.

The Trust argues that GMACM is not liable for wrongful foreclosure because GMACM never completed foreclosure on the Property. Furthermore, the Trust argues that each time GMACM instituted the foreclosure process it complied with the Note and mortgage terms and McDougal was in default on the Loan. As to McDougal's standing-related allegations, the Trust argues that the recorded Assignment of the Deed of Trust properly assigns the mortgage to Deutsche Bank as Trustee. (Obj. at 4–5.) The Note shows a proper endorsement chain from All California to GMAC Bank, then from GMAC Bank to GMACM, and finally from GMACM endorsed in blank. (*Id*.) GMACM serviced the Loan on behalf of Deutsche Bank. (*Id*. at 5.)

In his Opposition, McDougal first asserts that GMACM lacked standing to foreclose because at the time the foreclosure began as there was no valid assignment of the relevant Deed of Trust to Deutsche Bank recorded in Marin County records. (McDougal Opp. at 2.) McDougal attaches the Deed of Trust that was originally recorded by All California on May 5, 2006. (*Id*.) The Trust alleges in the Objection that the Deed of Trust was assigned to Deutsche Bank on June 1, 2006, but McDougal contends that no such assignment occurred on that date. (*Id*.) According to McDougal, the Assignment was not made until August 11, 2010, well after GMACM started foreclosure proceedings in April 2007 and after McDougal filed for bankruptcy on July 21, 2010. (*Id*.) McDougal then asserts that the same invalid chain of title supports his claim that GMACM and its representatives committed a fraud by telling McDougal they were the holders of the Note and Deed of Trust during the pendency of the Marin County Lawsuit, when he should have been in contact with All California. (*Id*.) McDougal admits that he

6

challenged the validity of the assignment and chain of title in response to GMACM's motion for stay relief. (*Id*. at 3.) The bankruptcy court in his chapter 7 case granted GMACM stay relief "without prejudice to all the legal rights held by the Debtor [McDougal]." (*Id*. at 3.) McDougal argues that the stay relief was not an adjudication of GMACM's right to foreclose and his right to pursue legal remedies was preserved by the bankruptcy court's order. (*Id*.)

In its Reply, the Trust argues that it has shifted the burden back to McDougal, who has not satisfied his burden to establish the liability of GMACM; McDougal only reiterates the standing allegations contained in the proof of claim. (Reply at 39.) McDougal premises his standing argument on the fact that the Assignment of the Deed of Trust was recorded on August 23, 2010, rather than on or around June 1, 2006, when the Trust alleges the Loan was transferred. (*Id*. at 39-40.) Obviously, recording did not occur until after GMACM started the foreclosure in April 2007. (*Id*.) The Trust argues that, in California, the assignment of a deed of trust does not need to be recorded before the assignee begins the non-judicial foreclosure process. (*Id*. (citing *Haynes v. EMC Mortg. Corp.*, 140 Cal. Rptr. 3d 32, 37 (Cal. Ct. App. 2012)).) The Trust argues that the Loan was transferred to Deutsche Bank on June 1, 2006, and that GMACM acted as loan servicer for Deutsche Bank; therefore, GMACM had standing to commence the foreclosure. (*Id*.) The Trust also argues that because the Debtors never completed foreclosure on the Property, McDougal cannot assert a claim for wrongful foreclosure. (*Id*.) The Trust further asserts that because Deutsche Bank was the holder of the Note during the relevant time period, GMACM is not liable for failing to put McDougal into contact with All California. (*Id*.) The Trust then reiterates that GMACM is also not liable for failing to assist McDougal in the Marin County Lawsuit because the Debtors were not parties of the lawsuit and were under no obligation to assist McDougal in any such litigation. (*Id*.) Although McDougal argues that the

7

Trust incorrectly stated that the Marin County Lawsuit was dismissed, when it in fact was settled, the Trust argues that McDougal failed to provide any explanation how this affects the analysis of the Debtors' liability or demonstrates a claim warranting quantifiable damages.  (*Id*.)

In his Surreply, McDougal argues that *Haynes*, 140 Cal. Rptr. 3d 32, cited by the Trust, is inapplicable.  (Surreply at 1–2.)  McDougal instead relies on an order denying a stay relief motion in a case in the United States Bankruptcy Court for the Western District of Missouri.  (*Id.* at 2 (citing Surreply Ex. A, Order Denying Motion for Relief from Stay, *In re Box*, Chapter 7 Case No. 10-20086).)  According to McDougal, *Box* stands for the proposition that the Note and Deed of Trust must be properly assigned to GMACM for GMACM to have the requisite standing to enforce those documents.  (*Id.*)  McDougal argues that since the Assignment of Deed of Trust was not timely executed or recorded, it cannot confer standing.  (*Id.*)

## II.    DISCUSSION

Correctly filed proof of claims "constitute prima facie evidence of the validity and amount of the claim . . . .  To overcome this prima facie evidence, an objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim."  *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000).  By producing "evidence equal in force to the prima facie case," an objector can negate a claim's presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a preponderance of the evidence that under applicable law the claim should be allowed."  *Creamer v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, No. 12 Civ. 6074 (RJS), 2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted); *see also In re Residential Capital, LLC*, 518 B.R. 720, 731 (Bankr. S.D.N.Y. 2014).  If the objector does not "introduce[] evidence as to the invalidity of the claim or the excessiveness of its amount, the

8

claimant need offer no further proof of the merits of the claim." 4 COLLIER ON BANKRUPTCY ¶ 502.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014).

Bankruptcy Code section 502(b)(1) provides that claims may be disallowed if "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law." *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006).

The Court concludes that the Trust's Objection shifted the burden to McDougal and he subsequently failed to establish his Claim by a preponderance of the evidence. First, McDougal failed to establish a wrongful foreclosure claim. Under California law, a plaintiff asserting a claim for wrongful foreclosure must allege that:

> (1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering.

*Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1145 (N.D. Cal. 2013) (citations omitted). Here, no foreclosure sale actually occurred. *See also Kilpatrick v. U.S. Bank, N.A.*, No. 12–CV–1740 W (NLS), 2013 WL 4525571, at *3 (S.D. Cal. Aug. 26, 2013) ("A *sale* of real property is illegal if the trustee did not have the power to foreclose under the deed of trust.") (citing CAL. CIV. CODE § 2924(a)(1); *Gomes v. Countrywide Home Loans, Inc.*, 192 Cal. App. 4th 1149, 1151 (Ct. App. 2011)) (emphasis added). Thus, McDougal has failed to prove the first element of his wrongful foreclosure cause of action and the Objection to this cause of action is **SUSTAINED**.

9

McDougal's standing-related arguments do not save his wrongful foreclosure cause of action, nor do they establish a basis for his fraud cause of action. McDougal alleges that GMACM and its representatives committed a fraud in telling McDougal they were the holders of the Note and Deed of Trust (or had proper standing to foreclose) when he should have been in contact with All California (or presumably some other properly authorized party). (Opp. at 2.) According to the Trust, GMACM was the servicer of McDougal's Loan beginning on May 11, 2006. (Obj. Ex. A at 3; Reply at 40.) Under California law, a "mortgage servicer" is defined as "a person or entity who directly services a loan, or who is responsible for interacting with the borrower, managing the loan account on a daily basis including collecting and crediting periodic loan payments, managing any escrow account, or enforcing the note and security instrument, either as the current owner of the promissory note or as the current owner's authorized agent." CAL. CIV. CODE § 2920.5. A mortgage servicer working as an agent for the holder of the note or deed of trust has standing to initiate foreclosure proceedings. *See Jenkins v. JP Morgan Chase Bank, N.A.*, 156 Cal. Rptr. 3d 912, 928 (Cal. Ct. App. 2013) ("The nonjudicial foreclosure scheme enacted by the Legislature authorizes the "trustee, mortgagee, or beneficiary, *or any of their authorized agents*" to record a notice of default and election to sell upon the trustor-debtors default on the secured debt. (§ 2924, subd. (a)(1), italics added.) Because an agent for the beneficiary may record a notice of default, [plaintiff's] assertion [that the mortgage servicer acting as the agent for the beneficiary of the deed of trust] lacked standing to initiate the nonjudicial foreclosure of her home is without merit and cannot serve as the basis for her declaratory relief claim."). McDougal's fraud cause of action then turns on whether GMACM was acting as servicer on behalf of the rightful owner of the Note or Deed of Trust when it initiated foreclosure proceedings in April 2007.

10

McDougal focuses on the transfer of the Deed of Trust to support his fraud claim, arguing that the assignment occurred after the April 2007 initiation of foreclosure proceedings. (Opp. at 2.) The Assignment of Deed of Trust from MERS as nominee for All California to Deutsche Bank as Trustee was executed on August 11, 2010 and was recorded on August 23, 2010. (Opp. Ex. B; Horst Supp. Ex. EE.) In California, however, the fact that an assignment of deed of trust was recorded after foreclosure proceedings were initiated is not dispositive if recording occurs before the actual foreclosure sale. *Haynes v. EMC Mortg. Corp.*, 140 Cal. Rptr. 3d 32, 37 (Cal. Ct. App. 2012). The only authority McDougal cites in response is the order of a Missouri court discussing Missouri state law. (Surreply at 2.) Missouri state law does not apply in this case; California state law applies. The evidence McDougal provided regarding the Deed of Trust therefore does not refute GMACM's standing as servicer acting on behalf of Deutsche Bank.

In any event, the Trust established that Deutsche Bank held the Note as Trustee, which in turn establishes GMACM's standing. The Note includes the following endorsements: (1) April 24, 2006 allonge endorsement from All California to GMAC Bank; (2) undated endorsement from GMAC Bank to GMACM; (3) undated endorsement from GMACM to blank. (Horst Supp. Ex. FF.) The Trust offered uncontroverted evidence that the endorsement to blank occurred when GMACM transferred its interest to RFC, and on June 1, 2006, RFC transferred its interest to Deutsche Bank as Trustee. (Horst Supp. ¶ 32; Obj. Ex. A at 3; Reply at 40.)

The Court concludes that the Trust established that GMACM had standing when it initiated foreclosure proceedings against McDougal's Property. McDougal did not provide any evidence refuting the validity of the Note's chain of title or the Assignment of Deed of Trust. GMACM, as servicer, was the correct party McDougal should have been in contact with. *See* CAL. CIV. CODE § 2920.5. McDougal's fraud cause of action therefore fails and the Trust's

11

Objection to it is **SUSTAINED**.

The Court further finds that McDougal has failed to establish a valid basis grounded in California law or otherwise for his claim arising out of the Debtors' failure to help him in the Marin County Lawsuit.  Indeed, GMACM acknowledged and continuously postponed foreclosure specifically to afford McDougal time to resolve the Marin County Lawsuit.  McDougal fails to establish that GMACM or any of the Debtors in this chapter 11 proceeding are liable for any unlawful conduct relating to the lawsuit.  The Trust's Objection to the extent it addresses these allegations is also **SUSTAINED**.

### III.    CONCLUSION

For the foregoing reasons, the Court **SUSTAINS** the Objection in its entirety and the Claim is hereby **DISALLOWED** and **EXPUNGED**.

**IT IS SO ORDERED.**

Dated:    December 18, 2014
       New York, New York

*Martin Glenn*
MARTIN GLENN
United States Bankruptcy Judge