<u>**Exhibit 1**</u>

**Supplemental Declaration**

1

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------------

|                                        |     |                           |
|----------------------------------------|-----|---------------------------|
|                                        | )   |                           |
| In re:                                 | )   | Case No. 12-12020 (MG)    |
|                                        | )   |                           |
| RESIDENTIAL CAPITAL, LLC, et al.,      | )   | Chapter 11                |
|                                        | )   |                           |
| Debtors.                               | )   | Jointly Administered      |
|                                        | )   |                           |

--------------------------------------------------------------------------

**DECLARATION OF DEANNA HORST IN SUPPORT OF THE RESCAP BORROWER
CLAIMS TRUST'S SUPPLEMENTAL OBJECTION AND REPLY IN SUPPORT OF ITS
SEVENTY-FIFTH OMNIBUS OBJECTION TO CLAIMS (NO-LIABILITY
BORROWER CLAIMS) SOLELY AS TO CLAIM NO. 4445 FILED BY ALAN MOSS**

I, Deanna Horst, hereby declare as follows:

1.      I am the Chief Claims Officer for The ResCap Liquidating Trust (the

"Liquidating Trust"), and previously served as Chief Claims Officer for Residential Capital, LLC

and its affiliates ("ResCap"), a limited liability company organized under the laws of the state of

Delaware and the parent of the other debtors in the above-captioned Chapter 11 Cases

(collectively, the "Debtors").  I have been employed by affiliates of ResCap since August of

2001.  In June 2012, I became Senior Director of Claims Management for ResCap and, in

October of 2013, I became the Chief Claims Officer of ResCap.  I began my association with

ResCap in 2001 as the Director, Responsible Lending Manager, charged with managing the

Debtors' responsible lending on-site due diligence program.  In 2002, I became the Director of

Quality Asset Management, managing Client Repurchase, Quality Assurance and Compliance—

a position I held until 2006, at which time I became the Vice President of the Credit Risk Group,

managing Correspondent and Broker approval and monitoring.  In 2011, I became the Vice

President, Business Risk and Controls, and supported GMAC Mortgage, LLC and Ally Bank in

this role.  In my current position, I am responsible for Claims Management and Reconciliation

1

and Client Recovery.  I am authorized to submit this declaration (the "Supplemental

Declaration") in support of *ResCap Borrower Claims Trust's Supplemental Objection in Support*

*of Its Seventy-Fifth Omnibus Objection to Claims (No-Liability Borrower Claims)Solely as to*

*Claim No. 4445 Filed by Alan Moss* (the "Reply and Supplemental Objection").[1]

2.    Except as otherwise indicated, all facts set forth in this Declaration are

based upon my personal knowledge of the Debtors' operations and finances, information learned

from my review of relevant documents and information I have received through my discussions

with other former members of the Debtors' management or other former employees of the

Debtors, the Liquidating Trust's employees, professionals, and consultants, and/or Kurtzman

Carson Consultants LLC ("KCC"), the Debtors' noticing and claims agent.  If I were called upon

to testify, I could and would testify competently to the facts set forth in the Reply and

Supplemental Objection on that basis.

3.    In my capacity as Chief Claims Officer, I am intimately familiar with the

claims reconciliation process in these Chapter 11 Cases.  Except as otherwise indicated, all

statements in this Declaration are based upon my familiarity with the Debtors' books and records

that were prepared and kept in the course of their regularly conducted business activities (the

"Books and Records"), the Debtors' schedules of assets and liabilities and statements of financial

affairs filed in these Chapter 11 Cases (collectively, the "Schedules"), my review and

reconciliation of claims, and/or my review of relevant documents.  I or other Liquidating Trust

personnel under my supervision have reviewed and analyzed the proof of claim form and

supporting documentation filed by Mr. Moss.  Since the Plan became effective and the Borrower

Trust was established, I, along with other members of the Liquidating Trust, have consulted with

---

[1]    Capitalized terms not defined herein shall have the meanings ascribed to them in the Reply and Supplemental
Objection.

the Borrower Trust to continue the claims reconciliation process, analyze claims, and determine the appropriate treatment of the same.[2]  In connection with such review and analysis, where applicable, I or other Liquidating Trust personnel, together with the Liquidating Trust's and the Borrower Trust's professional advisors, have reviewed (i) information supplied or verified by former personnel in departments within the Debtors' various business units, (ii) the Books and Records, (iii) the Schedules, (iv) other filed proofs of claim, and/or (v) the official claims register maintained in the Debtors' Chapter 11 Cases.

4.     The Debtors sent a Request Letter to Mr. Moss on June 21, 2013, requesting additional documentation in support of the Claim.  The Request Letter stated that Mr. Moss must respond within 30 days with an explanation that states the legal and factual reasons why he believes he is owed money or is entitled to other relief from the Debtors, and that he must provide copies of any and all documentation that he believes supports the basis for his claim.  The Request Letter further stated that if Mr. Moss does not provide the requested explanation and supporting documentation within 30 days, the Debtors may file a formal objection to the Claim, seeking to have the Claim disallowed and permanently expunged.

5.     The Debtors received a response to the Request Letter from Mr. Moss on July 25, 2013 (the "Diligence Response"). A copy of the Diligence Response is attached hereto as Exhibit A.  However, the Diligence Response failed to allege bases for claims against the Debtors' estates.  Further, as stated in the Objection, the Books and Records do not show any liability due and owing to Mr. Moss.

---

[2] The ResCap Liquidating Trust and the ResCap Borrower Claims Trust are parties to an Access and Cooperation Agreement, dated December 17, 2013, which, among other things, provides the Borrower Trust with access to the books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.

ny-1169260

6.      On or around November 7, 2012, Mr. Moss filed a proof of claim against Executive Trustee Services, LLC ("ETS"), designated as Claim No. 4445 (the "Moss Claim"), asserting a general unsecured claim for $750,000.00.  See Exhibit B attached hereto.

7.      The Debtors' books and records show that non-Debtor CJ Mortgage, Inc. originated a loan in the amount of $612,500.00 to Mr. Moss on June 22, 2005 (the "Moss Loan"), secured by a deed of trust on property located at 86 San Lucas Ave., Moss Beach, CA 94038 (the "Moss Property").  See Moss Note and Moss Deed of Trust, attached hereto as Exhibit D and Exhibit D, respectively. Subsequently, the Moss Loan was transferred to Option One Mortgage Corp. ("Option One") on or around June 27, 2005.  See Option One Assignment, attached hereto as Exhibit E.  Option One then transferred the Moss Loan to TCIF, LLC ("TCIF") on or around September 15, 2007, and TCIF subsequently assigned the Moss Loan to Bank of New York Trust Company ("Bank of New York") on or around April 29, 2008.  See TCIF Assignment and Bank of New York Assignment, attached hereto as Exhibit F and Exhibit G.

8.      Debtor GMAC Mortgage, LLC serviced the Moss Loan from March 14, 2006 until servicing was transferred to Ocwen Loan Servicing on February 16, 2013.

9.      ETS was appointed as substitute trustee on September 21, 2006.  See Substitution of Trustee, attached hereto as Exhibit H.

10.     On June 16, 2006, the Moss Loan was referred to foreclosure because the account was owing for the April 1, 2006 payment (the "June 16 Foreclosure").

11.     ETS recorded a notice of default on June 20, 2006 (the "2006 Notice of Default").  See Notice of Rescission of 2006 Notice of Default, attached hereto as Exhibit I.  On May 4, 2007, a Notice of Rescission of the 2006 Notice of Default was recorded.

12.     On September 17, 2007, the Moss Loan was referred to foreclosure because the account was owing for the July 1, 2007 payment (with the June 16 Foreclosure, the "Foreclosure Proceedings").

13.     ETS recorded a notice of default on September 18, 2007 (the "2007 Notice of Default"). See Notice of Rescission of the 2007 Notice of Default, attached hereto as Exhibit J.

14.     On May 7, 2009, ETS conducted a trustee sale and acquired title in the property. ETS recorded a Trustee's Deed Upon Sale on May 15, 2009 (the "Notice of Trustee's Deed Upon Sale" and with the 2006 Notice of Default and 2007 Notice of Default, the "Notices"), which granted title in the property to Bank of New York.[3] See Notice of Rescission of the Trustee's Deed Upon Sale, attached hereto as Exhibit K. A Notice of Rescission of the Trustee's Deed Upon Sale was recorded on September 18, 2012, and a Notice of Rescission of the 2007 Notice of Default was recorded on August 19, 2013. See Notices of Rescission. Upon information and belief, Mr. Moss continues to hold title to the Moss Property, subject to the note and the deed of trust.

15.     On July 22, 2009, Mr. Moss filed litigation against Bank of New York in Superior Court, San Mateo County, CA (the "Superior Court"), case number 486130. See Bank of New York Complaint, attached to the Moss Response as Exhibit 2. In the Bank of New York Complaint, Mr. Moss sought to set aside the trustee sale due to it being void. See Bank of New York Complaint, p. 6.

16.     On May 5, 2011, Mr. Moss filed a parallel lawsuit against ETS in the Superior Court, case number 505386, for negligence, fraud, and intentional infliction of

---

[3] The foreclosure sale was conducted by the Debtor in error due to a failure to communicate timely, notice of conditions that would have warranted a cancellation of the foreclosure. See Rescission of Notice of Trustee's Deed Upon Sale.

emotional distress resulting from ETS executing the Notice of Default and the Trustee's Deed

Upon Sale.  See ETS Complaint, attached to the Moss Response as Exhibit 1.  ETS did not enter

an appearance in the case, and on June 17, 2011, a default was entered.  See ETS Docket,

attached hereto as Exhibit L.  A motion to set aside the default was filed on April 4, 2012, and

was not heard by the court before the imposition of the automatic stay in the Chapter 11 Cases.

See id.  No default judgment was ever entered against ETS.  See id.

       17.    In November 2013, Bank of New York, through Ocwen Loan Servicing,

LLC ("Ocwen") as its servicer, completed a settlement with Mr. Moss that included a dismissal

with prejudice of the Bank of New York Complaint.  The terms of the settlement are subject to a

confidentiality provision.

       Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct.

Dated:  December 19, 2014

                                            /s/ Deanna Horst
                                          Deanna Horst
                                          Chief Claims Officer for ResCap
                                          Liquidating Trust

6

**Exhibit A to Supplemental Declaration**

# R E S C A P

## M O R R I S O N | F O E R S T E R

### Claim Information

Sent/Received

JUL 2 5 2013

To _____

By _____

| Claim Number | 4445 |
|---|---|

| Basis of Claim | |
|---|---|
| Explanation that states the legal and factual reasons why you believe you are owed money or are entitled to other relief from one of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases) and, you must provide copies of any and all documentation that you believe supports the basis for your claim. | **BASIS OF THIS CLAIM:** This claim is based on the civil action I filed against Executive Trustee Services, LLC (hereinafter "ETS"), one of the debtors in this ResCap action: Action No. 505386, Superior Court of San Mateo California, May 5, 2011. This action has been stayed since May 23, 2012 when Debtor Executive Trustee Services filed a Notice of Stay of Proceedings on that date. <br><br> The basis of this action, in general terms, is the negligence of ETS when it proceeded with a trustee sale of the property of claimant without having any authority to do so, and failing to ascertain whether it had authority to conduct a trustee sale, thus causing claimant significant damages—explained fully in the attached documents. <br><br> The basis of this lawsuit in San Mateo County, CA and the basis of this claim (Claim No. 4445) is identical, and the damages sought in each are identical. The proof that I am "owed money from one of the debtors as of ay 14, 2012" is contained in the attached documents: (1) Complaint, CIV505386; (2) Statement of Damages filed 8/22/11; (3) Memorandum of Costs; (4) Declaration of Alan Moss In support of Request To enter Default Judgment By Court. These documents are attached hereto, and made a part of this claim. |

If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the following loan information, so that we can effectively search our records for information on your property and loan, and evaluate your claim.

Loan Number: ▓▓▓▓▓7900

*I Don't Know if My Claim "Relates" To One Of The Debtors As That Term Is Used. The Loan was Serviced By GMAC But The Claim Is Not Against GMAC. It Is Against Their Alleged Trustee.*

Address of property related to the above loan number:

*86 San Lucas*

| City: | State: | ZIP Code: |
|---|---|---|
| *Moss Beach* | *CA* | *94038.* |

Additional resources may be found at - http://www.kcclic.net/rescap

Residential Capital, LLC    P.O. Box 385220 Bloomington, MN 55438

Claim Number: 4445
Alan Moss
Type: POC

ALAN MOSS
P.O. BOX 721
MOSS BEACH CA 94038

TELEPHONE:
(415)494-8314

FACSIMILE:
(650)728-0738

E-MAIL: alanmoss.office@gmail.com

July 20, 2013

Residential Capital, LLC
P.O. Box 385220
Bloomington, Minnsota 55438

Re:    ResCap Bankruptcy
       Claim No. 4445, Alan Moss

Dear Sirs::

        Pursuant to your letter of June 21, 2013(on Morrison and Foerster letter head),
enclosed you will find my response to the information requested regarding Claim No. 4445.

        I have attached four documents as Exhibits 1 - 4 to that form entitled Claim
Information." These four documents explain in great detail the lawsuit I filed against Executive
Trustee Services, LLC("ETS") and which was stayed by operation of the bankruptcy filing, and
which was the basis of my claim against the debtor. The claim in each are identical as set forth on
that form. The lawsuit is still pending.

        ETS is one of the debtors encompassed in the ResCap bankruptcy. ETS acted as
trustee and initiated and consummated a trustee sale of my property, when it was illegally appointed
as a substitute trustee, and due to its negligence, failed to ascertain if they had been given proper
authority to act as trustee. It had not. ETS has now rescinded the sale and returned title to me.
However, I suffered and continue to suffer great damages as a result of its illegal action, all of which
is explained in the documents attached. My action was stayed one day before a default judgment
prove-up hearing to establish the extent of damages–the amount of which is identical to the claim
I filed in this ResCap action.

        I believe this fully responds to your request for information. If for some reason it
does not, please let me know.

                                                 Very truly yours,

                                                 ALAN MOSS

*CLAIM No. 4445*

1 | Alan Moss
P.O. Box 721
2 | Moss Beach CA 94038
Telephone: (415)296-7500
3 | Facsimile: (650)728-0738

4 | Attorney *In Pro Per*

(ENDORSED)
**FILED**
SAN MATEO COUNTY

MAY 5 - 2011

Clerk of the Superior Court
By    G. Leon
DEPUTY CLERK

5
6
7
8

SUPERIOR COURT OF CALIFORNIA
9 | IN AND FOR THE COUNTY OF SAN MATEO

10

11 | ALAN IRVING MOSS,                                )

CIV 5 0 5 3 8 6

)
12 |                            Plaintiff,)        Action No.
)
13 |            vs.                                )        COMPLAINT FOR
)        (1). Negligence
14 |                                               )        (2). Negligence *per se*
)        (3). Fraud
15 | EXECUTIVE TRUSTEE SERVICES, LLC    )        (4). Intentional Infliction of
F/K/A EXECUTIVE TRUSTEE SERVICES,  )              Emotional Distress
16 | INC., AND DOES 1-50, INCLUSIVE     )        (5). Negligent Infliction of
)              Emotional Distress
17 |                                               )
Defendants.)
18 |

19 | Plaintiff ALAN IRVING MOSS alleges as follows:

20 |            1. Plaintiff ALAN IRVING MOSS is, and at all times hereinafter mentioned
21 | was, an individual residing in the County of San Mateo, California.

22 |            2. Defendant  EXECUTIVE TRUSTEE SERVICES, LLC F/K/A EXECU-
23 | TIVE TRUSTEE SERVICES, INC., (hereinafter "ETS") is, and at all times hereinafter men-
24 | tioned was, a business of unknown legal origin and form.

25 |            3. The true names and capacities, whether individual, corporate, associate or
26 |

---

COMPLAINT                                                                ACTION NO.

1  otherwise, of defendants sued herein as Does I through 50, inclusive, are unknown to plaintiff,

2  who sue said defendants by such fictitious names; plaintiff will amend this Complaint to show

3  the true names and capacities if and when the same are ascertained; and plaintiff is informed

4  and believes, and thereon alleges, that said defendants, and each of them, are responsible in

5  some manner for plaintiff's damages as herein alleged.

6           4. Plaintiff is informed and believes, and thereon alleges, that at all times herein

7  mentioned, each of the defendants was the agent of the remaining defendants and, in doing

8  the things herein alleged, was acting within the course and scope of such agency.

9           5. Plaintiff has owned and resided in the property located at 86 San Lucas,

10  Moss Beach, California (the "property"), within the County of San Mateo, continuously from

11  1984 to the present. The legal description of the property, as contained in the official records

12  of San Mateo County,  is APN No. 037-275-120, Lots 22 and 23, Blk. 13, Riviera Ocean

13  Villa.

14           6. According to actions taken by defendant hereinafter described, the subject

15  property also included Parcel No. 037-275-170, Lot 20 when it was encumbered by the finan-

16  cial instrument which is the subject of this lawsuit. Lot 20 is not contiguous to Lots 22 and

17  23, but rather is separated by a legally separate lot, Lot 21.

18           7. On or about June 22, 2005, plaintiff took out a loan against the subject pro-

19  perty, as evidenced by a Note. Plaintiff was the borrower. CJ Mortgage, Inc. was the lender.

20           8. The Note was secured by a Deed of Trust, in which the purported parties

21  were: CJ Mortgage, Inc. as the beneficiary, Alliance Title was the trustee, and  plaintiff was

22  the trustor. Said Deed of Trust described the property as APN 037-275-170-6. Said instru-

23  ment was recorded on July 5, 2005.

24           9. The County of San Mateo does not contain any APN number with the des-

25  cription 037-275-170-6.

26

COMPLAINT                                    - 2 -                                    ACTION NO.

10. The original lender, CJ Mortgage, Inc. drafted both the Note and Deed of Trust. Plaintiff took no part in the drafting of these documents, which were drafted so as to bifurcate the debt(Note) from the security(Deed of Trust) in order to, on information and belief, facilitate the creation of certain securitized investment vehicles.

11. According to public records on file with the Recorders Office of San Mateo County, on or about June 27, 2005, said property was allegedly assigned to Option One Mortgage Corporation by CJ Mortgage Inc. The trustee listed in said assignment was Alliance Title. Said alleged assignment was recorded on April 4, 2007. A true and correct copy of said assignment as contained in the official records of the County of San Mateo is attached hereto as Exhibit 2. Plaintiff herein never received notice of said assignment. Said instru-ment was recorded on July 5, 2005.

12. On or about October 26, 2005, Option One Mortgage Corporation prepared a document entitled "Substitution of Trustee," in which it substituted Premier Trust Deed Services Inc. as trustee in place and stead of Alliance Title. Said document was recorded on February 3, 2006. A true and correct copy of said assignment as contained in the official records of the County of San Mateo is attached hereto as Exhibit 3.

13. On or about October 26, 2005, an entity set forth as "TCIF REO2, LLC" prepared a document entitled "Substitution of Trustee," in which it claims to be the "present beneficiary" and claims to substitute "Executive Trust Deed Services, LLC 'FKA Executive Trust Deed Services, Inc." as trustee in place and stead of, on information and belief, Premier Trust Deed Services Inc. Said document was recorded on November 10, 2006. This docu-ment was signed in Pennsylvania by a Margie Kwaitanowski, as vice-president of TCIP REO2, LLC. On or about October 25, 2005, Ms. Kwaitanowski was actually employed by GMAC in Pennsylvania, a business entity of unknown legal form. In addition, the notary on the document was Brenda Staehle, who was also an employee of GMAC. A true and correct

1  copy of said assignment as contained in the official records of the County of San Mateo is at-

2  tached hereto as Exhibit 4.

3      14. On or about October 26, 2005, TCIF REO2, LLC was not the present bene-

4  ficiary under the deed of trust referred to hereinabove, nor had it been assigned the deed of

5  trust as of that date.

6      15. On or about November 10, 2006, TCIF REO2, LLC was not the present be-

7  neficiary under the deed of trust, nor had it been assigned the deed of trust as of that date.

8      16. According to public records on file with the Recorders Office of San Mateo

9  County, on or about September 15, 2007, said property was allegedly assigned to "TCIF,

10  LLC" by Option One Mortgage Inc. The signature of the officer of the assignor was notar-

11  ized more than four months prior to the signature of the representative of the assignor, on May

12  7, 2007; the date of May 7, 2007 was interlineated by handwriting after a typed date of May

13  8, 2008 was crossed out. The document was allegedly notarized on May 7, 2007; the "7" of

14  the "2007" date was written by hand over the "8" of the typed "2008." Plaintiff is informed

15  and believes, and on that basis alleges, that this document was actually signed and notarized

16  on My 8, 2008. Said alleged assignment was recorded on June 16, 2008. A true and correct

17  copy of said assignment as contained in the official records of the County of San Mateo is at-

18  tached hereto as Exhibit 5. Plaintiff herein never received notice of said assignment.

19      17. According to public records on file with the Recorders Office of San Mateo

20  County, on or about September 17, 2007, a Notice of Default was recorded against said pro-

21  perty. Said document was issued by "TCIF REO2, LLC c/o Executive Trustee Services

22  LLC." The document was signed by "Executive Trustee Services, LLC as agent for benefi-

23  ciary." The document was recorded on September 18, 2007. A true and correct copy of said

24  assignment as contained in the official records of the County of San Mateo is attached hereto

25  as Exhibit 6.

26

---

COMPLAINT                    - 4 -                    ACTION NO.

18. Plaintiff never received notice of any Notice of Default up to and including the present time.

19. According to public records on file with the Recorders Office of San Mateo County, on or about April 29, 2008, said property was allegedly assigned to The Bank of New York Trust Company by TCIF, LLC. Said alleged assignment was recorded on June 16, 2008. A true and correct copy of said assignment as contained in the official records of the County of San Mateo is attached hereto as Exhibit 7. Plaintiff herein never received notice of said assignment.

20. According to public records on file with the Recorders Office of San Mateo County, on or about May 19, 2008, a Notice of Trustees Sale was recorded on said property by ETS Services, LLC, which was, on information and belief, a sub-entity of Executive Trustee Services. A true and correct copy of this document as contained in the official records of the County of San Mateo is attached hereto as Exhibit 8.

21. On or about May 7, 2009, unbeknownest to plaintiff, a Trustee Sale took place, conducted by defendant ETS, pursuant to the Notice of Default and Notice of Trustees Sale, regarding the foreclosure on the property, in which defendant ETS as trustee, sold the property.

22. On or about May 12, 2009, defendant ETS prepared a document entitled Trustee s'Deed Upon Sale which purported to grant to The Bank of New York Trust Company, title to said property. The document states that "grantee was the foreclosing beneficiary." On information and belief, this was a full credit purchase sale, and no cash changed hands, in derogation of the specific language of the Notice of Trustees Sale. The Bank of New York Trust Company was not a BFP. A true and correct copy of this document as contained in the official records of the County of San Mateo is attached hereto as Exhibit 9.

# FIRST CAUSE OF ACTION

# (NEGLIGENCE)

23. Plaintiff re-alleges and re-asserts, as though fully set forth herein, Paragraphs 1 - 22 inclusive.

24. At all relevant times herein, defendant ETS, acting as trustee, owed plaintiff an affirmative duty of care, that in fulfilling its responsibilities as trustee, and in particular to exercise the power of sale of residential real property, to faithfully comply and strictly comport with the laws of California and the provisions of the deed of trust referred to hereinabove. In particular, because ETS was acting under a power of sale whose actions could result in the removal of plaintiff from his residence, and because ETS had an affirmative duty of care to plaintiff, ETS had an affirmative duty of care to plaintiff to treat plaintiff fairly, in a manner equal to the manner in which it was treating the alleged beneficiary, and in conformance with the law.

25. Prior to issuing the Notice of Default and the Notice of Trustees Sale, defendant ETS negligently failed to examine the chain-of-title of the subject property and negligently failed to determine that it had not in fact been legally and properly substituted in as trustee, and had no power and authority to issue said Notice of Default and Notice of Trustee Sale.

26. At the time that defendant ETS was allegedly made trustee by virtue of said substitution of trustee prepared and recorded by TCIF REO2, LLC , TCIF REO2, LLC was not the present beneficiary of the deed of trust. Therefore, defendant ETS could not, and did not, legally acquire the power of sale from the purported substitution; therefore, ETS had no power and authority to issue said notices.

27. Prior to conducting the trustee's sale which resulted in plaintiff allegedly

1   losing his property, defendant ETS negligently failed to examine the chain-of-title of the sub-

2   ject property and negligently failed to determine that it had in fact been legally and properly

3   substituted in as trustee, and had the power and authority to conduct said trustee's sale.

4          28. At the time that defendant ETS was allegedly made trustee by virtue of said

5   substitution of trustee prepared and recorded by TCIF REO2, TCIF REO2, LLC was not the

6   present beneficiary of the deed of trust. Therefore, defendant ETS could not, and did not, le-

7   gally acquire the power of sale from the purported substitution; therefore, ETS had no power

8   and authority to conduct said trustee sale.

9          29. Prior to issuing the Trustees Deed referred to hereinabove, defendant ETS

10  negligently failed to examine the chain-of-title of the subject property and negligently failed

11  to determine that it had in fact been legally and properly substituted in as trustee, and had the

12  power and authority to issue said Trustees Deed.

13         30. At the time that defendant ETS was allegedly made trustee by virtue of said

14  substitution of trustee prepared and recorded by TCIF REO2, TCIF REO2, LLC was not the

15  present beneficiary of the deed of trust Therefore, ETS could not, and did not, legally acquire

16  the power of sale from the purported substitution; therefore, ETS had no power and authority

17  to issue said Trustees Deed.

18         31. By doing the acts aforementioned mentioned, and each of them, defendant

19  ETS breached the duty of care it owed to plaintiff.

20         32. As a direct and proximate result of the negligence of defendant ETS, as set

21  forth hereinabove, plaintiff sustained damage, both physically, emotionally and financially,

22  and plaintiff prays judgment against defendant as hereinafter set forth.

23                              **SECOND CAUSE OF ACTION**

24                              **(NEGLIGENCE *PER SE*)**

25         33. Plaintiff re-alleges and re-asserts, as though fully set forth herein, para-

26

COMPLAINT                                 - 7 -                              ACTION NO.

1  graphs 1 - 32 inclusive.

2          34. On or about September 21, 2006, defendant ETS was allegedly substituted

3  in as trustee of the Note and Deed of Trust as set forth hereinabove.

4          35.  As the purported trustee under a Deed of Trust, ETS believed it had ac-

5  quired the powers enunciated in the Deed of Trust and the relevant statutes of the State of

6  California, i.e., Civil Code §§ 2924b and 2934, including the power of sale.

7          36. Acting under this supposed power, defendant ETS negligently issued a No-

8  tice of Default dated September 17, 2007 regarding the subject property.

9          37. Acting under this supposed power, ETS negligently issued a Notice of Trus-

10 tees Sale dated May 19, 2008.

11          38. Acting under this supposed power, defendant ETS negligently conducted

12 a Trustees Sale on said property, in which The Bank of New York Trust Company "bought"

13 the property on a credit bid and acting as the "foreclosing beneficiary."

14          39. Acting under this supposed power, defendant ETS negligently issued a

15 Trustees Deed to the Bank of New York Trust Company, purporting to pass title to said pro-

16 perty to The Bank of New York Trust Company.

17          40. At all relevant times herein, there was in effect California Civil Code §§

18 2924b and 2934 which provided the only method by which a beneficiary could substitute in

19 a new trustee and instill on said trustee all the powers of the previous trustee and trust deed.

20 Pursuant to said statute, only the beneficiary or beneficiaries had the power to substitute a new

21 trustee. On the date that ETS was substituted in as new trustee by TCIF REO2, LLC, TCIF

22 REO2, LLC was not the beneficiary under said Deed of Trust, because it was not assigned the

23 deed of trust until May 7, 2007 at the earliest.

24          41. Civil Code §§ 2924b and 2934 are a statutory scheme designed specifically

25 for the protection of trustors under a deed of trust, specifically in this case the plaintiff herein.

26

42.  As a result of defendant ETS acting in derogation of the aforementioned statutes, plaintiff was directly and proximately injured as hereinafter prayed and set forth.

43.  As a direct and proximate result of the negligence of defendant ETS, as set forth hereinabove, plaintiff sustained damaged, both physically, emotionally and financially, and plaintiff prays judgment against defendant as hereinafter set forth.

## THIRD CAUSE OF ACTION

### (FRAUD)

44.  Plaintiff re-alleges and re-asserts, as though fully set forth herein, paragraphs 1 - 43 inclusive.

45.  At the time that defendant ETS issued the Notice of Default and the Notice of Trustee Sale, defendant ETS knew or should have known, that it did not have the legal authority to issue said notices.

46.  At the time that defendant ETS conducted the trustees sale set forth hereinabove, defendant ETS knew or should have known, that it did not have the legal authority to conduct said sale.

47.  At the time that defendant ETS issued the Trustees Deed on said property, as set forth hereinabove, defendant ETS knew or should have known, that it did not have the legal authority to issue said Trustees Deed.

48.  As a direct result of these aforementioned actions of defendant ETS, and because of direct representations of defendant ETS to plaintiff, plaintiff was caused to believe that his property was subject to being sold at a trustees sale and that said sale would not be cancelled unless and until plaintiff reached an agreement with the loan servicer, GMAC.

49.  Defendant ETS, by doing the acts hereinabove complained of, intended that plaintiff rely on its official capacity and representations, and that plaintiff had to reach agree-

1    ment with GMAC to cancel said sale.

2    50. Due to the fraudulent misrepresentations made to plaintiff by defendant

3    ETS, and others purporting to act on behalf of those purporting to hold a beneficial interests

4    in the property, and their principals, agents, assignors, assignees and predecessor, plaintiff was

5    induced to reasonably rely on their express and implied assurance regarding loan forbearance

6    and forgiveness, cancellation and postponement of the foreclosure process.

7    51. Plaintiff reasonably relied on said representations in paying $50,000.00 to

8    the loan servicer in order to cancel said sale; plaintiff reasonably and in good faith relied on

9    said representations that the sale would be cancelled; as a direct result, plaintiff believed that

10    defendant ETS cancelled said scheduled trustees sale.

11    52. In reliance on said representations, Plaintiff did not receive notice of any

12    subsequently scheduled trustee sale.

13    53. As a result of the fraudulent activities by defendant ETS, Does 1 through

14    50 and their assignors ad predecessors in interest, plaintiff has been damaged in an amount

15    to be determined at trial, both as to compensatory and punitive damages.

16    54. As a direct and proximate result of the negligence of defendant ETS, as set

17    forth hereinabove, plaintiff sustained damaged, both physically, emotionally and financially,

18    and plaintiff prays judgment against defendant as hereinafter set forth.

19    '                                                    '

20    **FOURTH CAUSE OF ACTION**

21    **(INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)**

22

23    55. Plaintiff re-alleges and re-asserts, as though fully set forth herein, para-

24    graphs 1 through 54 inclusive.

25    56. Defendant's conduct, as hereinabove set forth, was intentional and mali-

26

COMPLAINT                                    - 10 -                              ACTION NO.

1   cious and done for the purpose of causing plaintiff to suffer humiliation, mental anguish, and

2   emotional and physical distress. Defendant's conduct in confirming and ratifying that conduct

3   was done with knowledge that plaintiff's emotional and physical distress would thereby in-

4   crease, and was done with a wanton and reckless disregard of the consequences to plaintiff.

5          57. As a direct and proximate result of the acts alleged above, plaintiff suffered

6   humiliation, mental anguish and emotional and physical distress, and has been injured in mind

7   and body, all to plaintiff's damage.

8          58. By reason of the acts alleged above, plaintiff was prevented from attending

9   to plaintiff's usual occupation and thereby lost earnings. Plaintiff is informed and believes

10  and thereon alleges, that plaintiff will thereby be prevented form attending to plaintiff's usual

11  occupation for a period in the future which plaintiff cannot ascertain, and will thereby sustain

12  further loss of earnings.

13         59. The acts of defendants alleged above were willful, wanton, malicious, and

14  oppressive, and justify the awarding of exemplary and punitive damages.

15         60. Defendant ETS, Does 1 through 50 and any of their agents, principals, as-

16  signors, assignees, predecessor and related entities are in the business of real estate and knew

17  or should have known of the requirements of State law regarding the sale of real property.

18  Defendants, and each of them, deliberately and carelessly, or with such callous disregard for

19  State law that it amounted to deliberateness, violated the requirements of State law as set forth

20  hereinabove.

21         61. Defendants intentionally, with callous disregard for plaintiff, and with ma-

22  lice aforethought violated numerous requirements of State law, and as a direct and proximate

23  result, plaintiff was severely injured and made to suffer for months on end as this process

24  went forward.

25         62. As a direct and proximate result of the negligence of defendant ETS, Does

26

---

COMPLAINT                        - 11 -                        ACTION NO.

1    1 -50, and their agents, as set forth hereinabove, plaintiff sustained damages, both physically,

2    emotionally and financially, and plaintiff prays judgment against defendant as hereinafter set

3    forth.

4

5    **FIFTH CAUSE OF ACTION**

6    **(NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)**

7

8         63. Plaintiff realleges and re-assets, as though fully set forth herein, para-graphs

9    1 through 62 inclusive.

10         63. Defendant ETS, Does 1 - 50, and their agents, knew or should have known,

11    that its failure to exercise due care in the performance of its acts, as set forth hereinabove,

12    would cause plaintiff severe emotional distress.

13         64. Defendant's, and each of them, in their acts in defiance of the law, and in

14    a manner designed to be in derogation of California statute and the deed of trust, was a direct

15    breach of the law and statutes and deed of trust.

16         65. As a direct and proximate result of defendant's, and each of them, acts and

17    omissions, plaintiff suffered extreme emotional distress and threatened, and as of this date,

18    actual, loss of his property.

19         66. As a further proximate result of defendant's breach of duty and the conse-

20    quences proximately caused by it, as hereinabove alleged, plaintiff suffered severe emotional

21    distress and mental suffering, all to his damage.

22         67. As a direct and proximate result of the negligence of defendant ETS, as set

23    forth hereinabove, plaintiff sustained damaged, both physically, emotionally and financially,

24    and plaintiff prays judgment against defendant as hereinafter set forth.

25

26

1          WHEREFORE, plaintiff prays for judgment against Defendant ETS and Does

2   1 through 50 as follows:

3

4   AS TO THE FIRST CAUSE OF ACTION:

5   1. For special and general damages according to proof at time of trial.

6   2. For incidental damages in an amount to be determined at trial;

7   3. For reasonable attorney fees;

8   4. For costs of suit incurred; and

9   5. For such other and further relief as the court may deem just and proper.

10

11   AS TO THE SECOND CAUSE OF ACTION:

12   1. For special and general damages according to proof at time of trial.

13   2. For incidental damages in an amount to be determined at trial;

14   3. For reasonable attorney fees;

15   4. For costs of suit incurred; and

16   5. For such other and further relief as the court may deem just and proper.

17

18   AS TO THE THIRD CAUSE OF ACTION:

19   1. For monetary damages, both compensatory and punitive, in an amount to be determined

20   at trial;

21   2. For reasonable attorney fees;

22   3. For costs of suit incurred; and

23   4. For such other and further relief as the court may deem just and proper.

24

25   AS TO THE FOURTH CAUSE OF ACTION:

26

1    1. For special and general damages according to proof at time of trial.

2    2. For incidental damages in an amount to be determined at trial;

3    3. For punitive damages according to proof at trial.

4    4. For reasonable attorney fees;

5    5. For costs of suit incurred; and

6    6. For such other and further relief as the court may deem just and proper.

7

8    AS TO THE FIFTH CAUSE OF ACTION:

9    1. For special and general damages according to proof at time of trial.

10    2. For incidental damages in an amount to be determined at trial;

11    3. For reasonable attorney fees;

12    4. For costs of suit incurred; and

13    5. For such other and further relief as the court may deem just and proper.

14

15    Dated: May **3** , 2011.                    Respectfully submitted,

16

17

18

19                                               ALAN IRVING MOSS

20                                               Attorney In Pro Per

21

22

23

24

25

26

CLAIM NO. 4445

CIV-050

**- DO NOT FILE WITH THE COURT-**

**-UNLESS YOU ARE APPLYING FOR A DEFAULT JUDGMENT UNDER CODE OF CIVIL PROCEDURE § 585 -**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address)* | TELEPHONE NO (415)4948314 | FOR COURT USE ONLY |
|---|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address)*
Alan Moss
P.O. Box 721
Moss Beach CA 94038

ATTORNEY FOR *(name)*  In Pro Per

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO
STREET ADDRESS  400 COUNTY CNTER
MAILING ADDRESS
CITY AND ZIP CODE  REDWOOD CITY CA 94063
BRANCH NAME

PLAINTIFF: ALAN IRVING MOSS
DEFENDANT: EXECUTIVE TRUSTEE SERVICES, LLC

**STATEMENT OF DAMAGES**
**(Personal Injury or Wrongful Death)**

**ENDORSED FILED**
**SAN MATEO COUNTY**

AUG 2 2 2011

Clerk of the Superior Court
By _____ A. Degliantoni
CLERK

CASE NUMBER:
CIV505386

To *(name of one defendant only):* EXECUTIVE TRUSTEE SERVICES, LLC
Plaintiff *(name of one plaintiff only):* ALAN IRVING MOSS
seeks damages in the above-entitled action, as follows:

AMOUNT

**1. General damages**
a. ☑ Pain, suffering, and inconvenience ................................................. $365,000.00
b. ☐ Emotional distress. ................................................................... $365,000.00
c. ☐ Loss of consortium .................................................................... $
d. ☐ Loss of sociey and companionship *(wrongful death actions only)* .......... $
e. ☐ Other *(specify)* ..................................................................... $
f. ☐ Other *(specify)* ..................................................................... $
g. ☐ Continued on Attachment 1.g.

**2. Special damages**
a. ☐ Medical expenses *(to date)* ....................................................... $
b. ☐ Future medical expenses *(present value)* ...................................... $
c. ☐ Loss of earnings *(to date)* ........................................................ $
d. ☐ Loss of future earning capacity *(present value)* .............................. $
e. ☐ Property damage .................................................................... $
f. ☐ Funeral expenses *(wrongful death actions only)* .............................. $
g. ☐ Future contributions *(present value) (wrongful death actions only)* ........ $
h. ☐ Value of personal service, advice, or training *(wrongful death actions only)* ... $
i. ☑ Other *(specify)*  Attorney Fees ................................................. $16,960.98
j. ☑ Other *(specify)*  Costs, Copying, Postage, Filing Fees, etc. ................. $1,500.00
k. ☐ Continued on Attachment 2.k.

**3.** ☐ **Punitive damages:** Plaintiff reserves the right to seek punitive damages in the amount of *(specify)*.. $ 748,460.98
when pursuing a judgment in the suit filed against you.

Date:  August 8, 2011

Alan Irving Moss
_____          ►  _____
(TYPE OR PRINT NAME)                              (SIGNATURE OF PLAINTIFF OR ATTORNEY FOR PLAINTIFF)

*(Proof of service on reverse)*

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CIV-050 [Rev. January 1, 2007]

**STATEMENT OF DAMAGES**
**(Personal Injury or Wrongful Death)**

Code of Civil Procedure §§ 425.11, 425.115
www.courtinfo.ca.gov

MC-010

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State bar number, and address)*

ALAN MOSS
PO BOX 721
MOSS BEACH CA 94038

TELEPHONE NO. (415) 494-3314    FAX NO.:

ATTORNEY FOR *(Name):* IN PRO PER

FOR COURT USE ONLY

CLAIM NO. 4445

INSERT NAME OF COURT, JUDICIAL DISTRICT, AND BRANCH COURT, IF ANY:
SUPERIOR COURT SAN MATEO COUNTY

PLAINTIFF: ALAN IRVING MOSS

DEFENDANT: EXECUTIVE TRUSTEE SERVICES LLC ET AL.

| MEMORANDUM OF COSTS (SUMMARY) | CASE NUMBER: CIV 505386 |

The following costs are requested:

TOTALS

1. Filing and motion fees    COMPLAINT : $395.00 .............. 1. $ $395.00

2. Jury fees ........................................................ 2. $

3. Jury food and lodging ........................................ 3. $

4. Deposition costs .............................................. 4. $

5. Service of process    5/10/11 : $25.00    8/24/11 : $25.00 ... 5. $ 50.00

6. Attachment expenses ......................................... 6. $

7. Surety bond premiums ........................................ 7. $

8. Witness fees .................................................. 8. $

9. Court-ordered transcripts ................................... 9. $

10. Attorney fees *(enter here if contractual or statutory fees are fixed without necessity of a court determination; otherwise a noticed motion is required)* ... 10. $

11. Models, blowups, and photocopies of exhibits ............. 11. $

12. Court reporter fees as established by statute ............. 12. $

13. Other .......................................................... 13. $

| TOTAL COSTS .................................................. | $ $445.00 |

I am the attorney, agent, or party who claims these costs. To the best of my knowledge and belief this memorandum of costs is correct and these costs were necessarily incurred in this case.

Date: 2/28/12.

ALAN MOSS
                    (TYPE OR PRINT NAME)

► _____
                    (SIGNATURE)

(Proof of service on reverse)

Form Approved for Optional Use
Judicial Council of California
MC-010 [Rev. July 1, 1999]

MEMORANDUM OF COSTS (SUMMARY)

Code of Civil Procedure,
§§ 1032, 1033.5

*CLAIM No. 4445*

1  Alan Moss
   P.O. Box 721
2  Moss Beach CA 94038
   Telephone: (415)296-7500
3  Facsimile:   (650)728-0738

4  Attorney *In Pro Per*

5

6

7                    SUPERIOR COURT OF CALIFORNIA
8               IN AND FOR THE COUNTY OF SAN MATEO

9

10  ALAN IRVING MOSS,                    )
                                         )    Action No.  CIV 505386
11                      Plaintiff,)
                                         )
12                                       )
          vs.                            )    **DECLARATION OF ALAN**
13                                       )    **MOSS IN SUPPORT OF**
                                         )    **REQUEST TO ENTER**
14  EXECUTIVE TRUSTEE SERVICES, LLC      )    **DEFAULT JUDGMENT BY**
    F/K/A EXECUTIVE TRUSTEE SERVICES,    )    **COURT**
15  INC., AND DOES 1-50, INCLUSIVE       )
                                         )
16                                       )
                        Defendants.)
17  _____ )

18

19          I, ALAN MOSS, declare as follows:
20
            1. I am the plaintiff in this action, and as such, am familiar with the facts in-
21
    volved in this matter, and if called to testify, could and would testify under oath as follows:
22
            2. The Complaint in this matter was filed on May 5, 2011. The Complaint is
23
    founded on theories of negligence against Executive Trustee Services, LLC f/k/a Executive
24
    Trustee Services, Inc.(hereinafter "ETS"), who, acting as trustee, issued all notices regarding
25

26

1   a foreclosure action on plaintiff's property, conducted the trustee's sale, and thereafter issued

2   a trustee's deed. The allegations of negligence are based on (1) the breach of the duty that

3   ETS as trustee owed to plaintiff, and (2) the fact that ETS became trustee by substitution by

4   an entity who would not become the beneficiary of the note for some twenty-three months af-

5   ter the attempted substitution. Under long established California law, a trustee in a foreclosure

6   action owes an equal duty to both beneficiary *and trustor* to act with due care and in good

7   faith, and to insure that the entire process was legally and correctly done. *See Munger vs.*

8   *Moore*(1970) 11 Cal.App.3rd 1; *Kerivan vs. Title Insurance and Trust Company*(1983) 147

9   Cal.App.3rd 225; *Residential Capital, LLC vs. Cal-Western Reconveyance Corp.*(2003) 108

10  Cal.App.4th 807; *Pro Value Properties, Inc. Vs. Quality Loan Service Corp.*(2009) 170

11  CalApp.4th 579.

12          3. The Complaint and the Summons issued thereunder by the clerk of this court

13  were served on defendant by a California registered process server, California Civil Process,

14  Inc. of West Sacramento(hereinafter "CCP"), by serving CSC–Lawyers Incorporating Service

15  (hereinafter "CSC"). CSC is listed on the website of the California Secretary of State as the

16  agent for service of process of defendant ETS.

17          4. CCP informed me that the Complaint and Summons were accepted by CSC,

18  and that if CSC was not the proper agent for service of process on defendant ETS, CCP would

19  have been so informed and CSC would have rejected the papers forthwith. At no time from

20  the time of service to the present has CCP or the undersigned ever been informed that CSC

21  was not the proper agent for service of process on defendant ETS, nor have the papers ever

22  been rejected or returned.

23          5. A Proof of Service of the Summons and Complaint in this matter was filed

24  with the Clerk of this Court on June 2, 2011.

25          6. On June 17, 2011, the undersigned filed a Request To Enter Default with the

26

1  Clerk of this Court.

2          7. On June 17, 2011, the Clerk of this Court entered the default of defendant

3  ETS.

4          8. On August 22, 2011, the undersigned filed a Statement of Damages as to

5  defendant ETS with the Clerk of this Court.

6          9. On August 22, 2011, plaintiff filed Proof of Service of Statement of Da-

7  mages on defendant ETS, with a service date of August 9, 2011. Said service was completed

8  by CCP. At no time from the time of service to the present has CCP or the undersigned ever

9  been informed that the CSC was not the proper agent for service of process on defendant ETS,

10  nor have the papers ever been rejected or returned.

11          10. The facts underlying the Complaint in this matter are as follows:

12          A. Plaintiff has owned and resided in the property located at 86 San

13          Lucas, Moss Beach, California(the "property"), within the County of

14          San Mateo, continuously from 1984 to the present.

15          B. On or about June 22, 2005, plaintiff took out a loan against the sub-

16          ject property, as evidenced by a Note. Plaintiff was the borrower, and

17          CJ Mortgage, Inc. was the lender. The Note was secured by a Deed of

18          Trust, in which the purported parties were: CJ Mort-gage, Inc. as the be-

19          neficiary, Alliance Title was the trustee, and  plaintiff was the trustor.

20          C. According to public records on file with the Recorders Office of San

21          Mateo County, on or about June 27, 2005, said property was allegedly

22          assigned to Option One Mortgage Corporation by CJ Mort-gage Inc.

23          D. On or about October 26, 2005, Option One Mortgage Corporation

24          prepared a document entitled "Substitution of Trustee," in which it sub-

25          stituted Premier Trust Deed Services Inc. as trustee in place and stead

26

1    of Alliance Title.

2    E.  On or about September 21, 2006, an entity set forth as "TCIF REO2,

3    LLC" prepared a document entitled "Substitution of Trustee," in which

4    it claims to be the "present beneficiary" and claims to substitute "Execu-

5    tive Trust Deed Services, LLC FKA Executive Trust Deed Services,

6    Inc." as trustee in place and stead of, on information and belief(such in-

7    formation is not set forth in the actual do-cument),  Premier Trust Deed

8    Services Inc. Said document was recorded on November 10, 2006. This

9    document was signed in Pennsylvania by a Margie Kwaitanowski, as

10    vice-president of "TCIP REO2, LLC."  On or about September 21,

11    2006, Ms. Kwaitanowski was actually employed by GMAC in Pennsyl-

12    vania, a business entity of unknown legal form.  In addition, the notary

13    on the document was Brenda Staehle, who was also an employee of

14    GMAC. On or about September 21, 2006, "TCIF REO2, LLC" was not

15    the present beneficiary under the deed of trust referred to hereinabove,

16    nor had it been assigned the deed of trust as of that date. Thus, TCIF

17    REO2, LLC had no authority, power or legal right to substitute a new

18    trustee under the deed of trust.

19    F.  Twenty-three months later, according to public records on file with

20    the Recorders Office of San Mateo County, on or about September 15,

21    2007, said property was allegedly assigned to "TCIF, LLC" (not TCIF

22    REO2, LLC) by Option One Mortgage Inc. The signature of the officer

23    of the assignor was notarized more than four months prior to the signa-

24    ture of the representative of the assignor, on May 7, 2007; the date of

25    May 7, 2007 was interlineated by handwriting after a typed date of May

26

DECLARATION OF ALAN MOSS IN SUPPORT
OF REQUEST TO ENTER DEFAULT JUDGMENT                    - 4 -                    ACTION NO. CIV505386

8, 2008 was crossed out. The document was allegedly notarized on May

7, 2007; the "7" of the "2007" date was written by hand over the "8" of

the typed "2008." Based on conversations with this notary, Plaintiff

believes that this document was actually signed and notarized on My 8,

2008. Said alleged assignment was recorded on June 16, 2008.

G. According to public records on file with the Recorders Office of San

Mateo County, on or about September 17, 2007, a Notice of Default was

recorded against said property. Said document was is-sued by "TCIF

REO2, LLC c/o Executive Trustee Services LLC." The document was

signed by "Executive Trustee Services, LLC as agent for beneficiary."

H. According to public records on file with the Recorders Office of San

Mateo County, on or about April 29, 2008, said property was allegedly

assigned to The Bank of New York Trust Company by "TCIF, LLC."

Said alleged assignment was recorded on June 16, 2008.

I. According to public records on file with the Recorders Office of San

Mateo County, on or about May 19, 2008, a Notice of Trustees Sale was

recorded on said property by ETS Services, LLC , which was, on infor-

mation and belief, a sub-entity of Executive Trustee Services.

J. On or about May 7, 2009, unbeknownest to plaintiff, a Trustee Sale

took place, conducted by defendant ETS, pursuant to the Notice of

Default and Notice of Trustees Sale, regarding the foreclosure on the

property, in which defendant ETS as trustee, sold the property. The

Notice of Trustee Sale had expired under California law approximately

a year earlier.

K. On or about May 12, 2009, defendant ETS prepared a document en-

1    titled Trustee's Deed Upon Sale which purported to grant to The Bank

2    of New York Trust Company, title to said property. The document

3    states that "grantee was the foreclosing beneficiary." On information

4    and belief, this was a full credit purchase sale, and no cash changed

5    hands, in derogation of the specific language of the Notice of Trustees

6    Sale. The Bank of New York Trust Company was not a BFP.

7    L. Thereafter, the Bank of New York has attempted to oust plaintiff

8    from his residence, by the filing of two unlawful detainer actions in this

9    court. The first action(Action No. CLJ199552) was dismissed and the

10    second action(Action No. CLJ199935) was stayed by order of this court,

11    and ultimately dismissed by The Bank of New York.

12    M. The undersigned initiated an action against The Bank of New York

13    for *inter alia* wrongful foreclosure, which action defendant removed to

14    Federal District Court, where it is presently pending.

15    11. Based on the undersigned's investigation into the facts of this matter, and

16    legal research conducted, it was learned that the appointed trustee of a beneficiary has a legal

17    duty to the trustor equal to the duty owed the beneficiary. Based on this, this Complaint was

18    filed against defendant herein for negligence, negligence *per se*, fraud, intentional infliction

19    of emotional distress, and negligent infliction of emotional distress. The essential fact is that

20    ETS took its multiple actions to foreclose on plaintiff's home without ever checking to see

21    if they had the legal power to do so. A simple check of the county's recorded documents

22    would have revealed that the entity that supposedly ap-pointed it to act as trustee had no po-

23    wer to do so for at least twenty-three months. ETS clearly, and beyond dispute based on the

24    recorded documents on file with the County of San Mateo, breached the duty it owed to plain-

25    tiff herein, and as a result, caused extreme damage to plaintiff, which continues to this day.

26

1    12. The damages which have flowed from defendant's negligence, and were

2  proximately caused by defendant's negligence, are as follows:

3    A.  Defendant had a duty to comply with California law, deliberately

4  acted in derogation of several requirements of California law, deliberately acted in derogation

5  of validly issued Orders from this Court, deliberately and intentionally, and this caused

6  plaintiff such emotional distress of such debilitating quality that no reasonable person in a

7  civilized society should be expected to endure it.

8    B.  The allegations of outrageous conduct form the basis of the tort of

9  abuse of process: the use of the court to attempt to sanction illegal activity: "..misuse of the

10  power of the court; it is an act done in the name of the court nd under its authority for the pur-

11  pose of perpetrating an injustice." That is precisely what happened here: the process server

12  lied that he had personally served the undersigned, and as a result, the Court quashed the al-

13  leged service–not once, but twice.

14    C.  Defendant or its attorneys had a duty to ascertain the chain-of-title

15  or to insure that the trustee was acting within its authority.  Yet even when this was pointed

16  out to them, they continued to harass plaintiff instead of taking any kind of corrective action.

17  Of note is the fact that even when their unlawful detainer action was stayed, they deliberately

18  showed up for trial three days later with witnesses to proceed.  Had not the undersigned show-

19  ed up in court in an abundance of caution, the trial could have proceeded and a default judg-

20  ment obtained.  If this is not deliberate interference with a court, it is difficult to perceive what

21  may be.

22    D.  Nor can it be argued, though attempt be made, that specific vio-

23  lations of California law were not set forth in the Complaint. The Sixth Cause of Action speci-

24  fically incorporates the previous allegations in their entirety.  Those allegations specifically

25  set forth the myriad violations of California law which were committed by this defendant.

26

DECLARATION OF ALAN MOSS IN SUPPORT
OF REQUEST TO ENTER DEFAULT JUDGMENT          - 7 -          ACTION NO. CIV505386

1         E. This defendant fraudulently concocted and altered assignments in

2    order to attempt to establish a chain-of-title and create the apparent right of this defendant to

3    proceed with the foreclosure activities. These attempts went so far as to substi-tute a new

4    trustee months before the defendant had any ownership interest in the property and therefore

5    was without authority to substitute any new trustee. This was done by an employee of defen-

6    dant who had already been held in contempt by a Florida court and sanctioned for the very

7    same activities.

8         F. Defendant owed plaintiff a duty to know the law, to comply with the

9    law, and to not misuse judicial process in derogation of the law. It cannot be stated too force-

10   fully: the defendant engaged in conduct so obviously intended to harm plaintiff that it is evi-

11   dent on the face of the documents which the defendant has previously asked this court to judi-

12   cially notice. They doctored assignments and changed dates on the assignments such that the

13   defendant took title from an entity that didn't even have title at the time they assigned it to

14   defendant. And this occurred notwithstanding attempts on their part to legitimize this whole

15   matter by changing dates on assignment documents and notarizing these documents, in some

16   case four months early and in other cases more than a year later.

17        G. Because of the aforementioned, the undersigned came very close to

18   being evicted from his home. The foreclosing bank filed two separate cases in attempting to

19   evict plaintiff from his home. These actions, with their short time fuse, caused extreme emo-

20   tional distress on a day-to-day basis. Due to the short time limits, and the assumptions inher-

21   ent in the entire process, it became virtually impossible to predict what would happen from

22   day-to-day and week-to-week. Because one of the assumptions inherent in an unlawful de-

23   tainer action is the presumption of regularity, the courts were unwilling to provide plaintiff

24   with a fair and open-minded forum for resolving this matter. As a result of this, plaintiff was

25   forced to hire attorneys to defend him from eviction.

26

1         H.  In order to maintain these lawsuits, there were process servers who

2  came to plaintiff's home at every hour of the day and night, screaming plaintiff's name in the

3  middle of the night, waking plaintiff and the neighborhood, and otherwise striking terror in

4  the heart of plaintiff.  Further, the process server lied under oath that he had served plaintiff

5  with process.  This was done on multiple occasions.

6         I.  Plaintiff lives on a very quiet street with very limited traffic.  Essen-

7  tially plaintiff lived for months listening to every car that passed by, waiting to see if the

8  vehicle would stop or keep going.

9         J.  The process server would pound loudly on the door and scream plain-

10  tiff's name loudly at 2 o'clock in the morning, waking plaintiff and the neighborhodd.  The

11  process server lied about personally serving plaintiff, which was never done, under oath to this

12  court.  This is but one example of trying to scare plaintiff out of his home.

13        K.  Neither plaintiff's attorneys nor plaintiff was ever able to speak to

14  the attorney of record for the bank.  He never would take a call and would never return a call.

15  He was bent on achieving eviction, notwithstanding no legal basis for doing so.  Even when

16  this court stayed the scheduled trial three days before it was scheduled, he had an attorney

17  show up at the courthouse with witnesses.  If the plaintiff had not have showed up to inform

18  the presiding judge, the trial would have proceeded, notwithstanding that it had been stayed

19  by order of the court.  The fear that was experienced during that weekend cannot be under-

20  stated.  Further, over a period of a year, and throughout all of the court appearances in this

21  matter, numbering some twenty hearing, not once did the defendant's attorney show up in

22  court,  He always hired other attorneys to do his work, who knew nothing of what had trans-

23  pired or what the facts were.  This was like continuous torture that went on for over a year.

24        K.  Throughout this entire period, the plaintiff was humiliated, unable

25  to function, unable to interact with his community, unable to sleep and unable to relate to

26

1   other individuals.

2   L. As it turns out, the bank's attorney has been suspended due to unethi-

3   cal behavior in foreclosure cases.  What he was accused of doing is exactly what happened

4   to plaintiff.  If plaintiff had not persevered and attempted to get the truth before the court, the

5   plaintiff would be out on the street.

6   M. Based on the above, the undersigned served and filed a Statement

7   of Damages pursuant to CCP 425.11, which set forth the following in money damages:

8   1. Pain and Suffering: $365,000.00

9   2. Emotional Distress: $365,000.00

10   3. Attorney Fees: $16,960.98

11   4. Costs: $1,500.00

12   5. Punitive Damages: $748,460.98

13   N. These damage figures are based on damages of $1,500.00 per day for

14   half of a year and $500.00 per day for another half of a year for Pain & Suffering, and the

15   same allocation for emotional distress.  The attorney fees were incurred in trying to prevent

16   eviction in the unlawful detainer action, which was in turn caused by defendant unlawfully

17   selling plaintiff's property, and thereafter issuing a Trustee's Deed to the Bank of New York.

18   The costs are the actual and estimated miscellaneous costs of litigation, including the fees for

19   the process server, mailing, copying, and the like.

20   13. Since the Complaint contains causes of action for *inter alia* intentional in-

21   fliction of emotional distress and fraud, punitive damages are appropriate in this case. The ut-

22   ter recklessness and carelessness, and the complete derogation of plaintiff's rights, the inten-

23   tional violation of mandatory California law, particularly where such violations go directly

24   toward plaintiff maintaining a dwelling, all indicate the appropriateness of punitive damages

25   in this case.  That the allegations of this complaint are not isolated but are widespread is indi-

26

1  cated by the recent settlement between forty-nine of the Attorney-Generals of the country and

2  five of the largest banks/loan servicers in the country. The "robo-signing" that was rampant

3  has clearly been proven and the parties to this settlement have readily acknowledged their

4  guilt in this regard.

5        14. It is therefore appropriate to inform the court that one of the parties to the

6  global settlement is Ally Bank. Ally Bank is, on information and belief, the new name taken

7  by GMAC Mortgage. GMAC Mortgage now owns ETS. See Exhibit One attached hereto

8  and made a part hereof. GMAC's involvement in this instant matter is clear from a court fil-

9  ing in the case presently pending in Federal District Court in San Francisco, where an employ-

10 ee who identified himself as part of GMAC requested the Court to allow the substitution of

11 a new attorney on its behalf. GMAC is not named as a party to that lawsuit, and its entry is

12 obviously based on its role as a servicer of the loan on behalf of the Bank of New York.

13        15. Further, this illegal activity on the part of ETS caused extreme harm to

14 plaintiff's credit and other personal data.

15

16        I declare under penalty of perjury that the foregoing is true and correct.

17 Executed at Moss Beach California on the _____ day of March 2012.

18

19

20                                        ALAN MOSS

21

22

23

24

25

26

**Open**

## EXTREMELY URGENT    Please Rush To Addressee

Schedule ~~p~~ e pickup right from your

PLEASE PRESS    SENDER HAS WAIVED ~~SIGNATURE~~ REQUIREMENT

ATTENTION - DELIVERY

PLEASE DELIVER PER DMM 263.2

PLEASE P

EXPRESS MAIL

U.S. POSTA
PAID
MOSS BEACH
94038
JUL 20, 13
AMOUNT

**$19.95**
00048091-0

1007

## EXPRESS MAIL
**UNITED STATES POSTAL SERVICE**

# Flat Rate
# Mailing Envelope
### For Domestic and International Use

### Visit us at usps.com



EMS

When used internati
affix customs declar
(PS Form 2976, or 2

E I 0 2 8 6 4 7 7 2 7 U S

**E I 0 2 8 6 4 7 7 2 7 U S**

## EXPRESS MAIL
**UNITED STATES POSTAL SERVICE®**

**Addressee Copy**
Label 11-B, March 2004

**Post Office To Addressee**

| DELIVERY (POSTAL USE ONLY) | | | |
|---|---|---|---|
| Delivery Attempt | Time | ☐ AM ☐ PM | Employee Signature |
| Mo.    Day | | | |
| Delivery Attempt | Time | ☐ AM ☐ PM | Employee Signature |
| Mo.    Day | | | |
| Delivery | Time | ☐ AM ☐ PM | Employee Signature |
| Mo.    Day | | | |

**CUSTOMER USE ONLY**

☐ Weekend  ☐ Holiday  ☐ Mailer Signature

### ORIGIN (POSTAL SERVICE USE ONLY)

| PO ZIP Code | Day of Delivery | Postage |
|---|---|---|
| | ☐ Next ☒ 2nd ☐ 2nd Del. Day | $ |
| Date Accepted | Scheduled Date of Delivery | Return Receipt Fee |
| | Month    Day | $ |
| Mo.    Day    Year | Scheduled Time of Delivery | COD Fee    Insurance Fee |
| Time Accepted    ☐ AM | ☐ Noon    ☐ 3 PM | $    $ |
| ☐ PM | Military | Total Postage & Fees |
| Flat Rate ☐ or Weight | ☐ 2nd Day    ☐ 3rd Day | $ |
| | Int'l Alpha Country Code | Acceptance Emp. Initials |
| lbs.    ozs. | | |

**FROM: (PLEASE PRINT)    PHONE (    )**

**TO: (PLEASE PRINT)    PHONE (    )**

PRESS HARD. YOU ARE MAKING 3 COPIES.

### FOR PICKUP OR TRACKING
Visit **www.usps.com**

ZIP + 4 (U.S. ADDRESSES ONLY. DO NOT USE FOR FOREIGN POSTAL CODES.)

☐☐☐☐☐ + ☐☐☐☐

FOR INTERNATIONAL DESTINATIONS, WRITE COUNTRY NAME BELOW.

USPS packaging produc
awarded Cradle to Cradl
for their ecologically-inte
For more information go
mbdc.com/usps
Cradle to Cradle Certified™ is a cert

**Please recycle.**



## Exhibit B to Supplemental Declaration

B 10 (Official Form 10) (12/11)

Claim #4445  Date Filed: 11/7/2012

| UNITED STATES BANKRUPTCY COURT | Southern District of New York | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor:<br>EXECUTIVE TRUSTEE SERVICES, LLC | Case Number:<br>12-12028-MG |
|---|---|

FILED
U.S. BANKRUPTCY COURT

NOV - 7 P 1:19

S.D. OF N.Y.

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
ALAN MOSS

**COURT USE ONLY**

Name and address where notices should be sent:
P.O. Box 721
Moss Beach CA 94038

Telephone number: 415-494-8314    email: alanmoss.office@gmail.com

☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:** _____
    *(If known)*

Filed on: _____

Name and address where payment should be sent (if different from above):

RECEIVED
NOV 1 5 2012
KURTZMAN CARSON CONSULTANTS

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

Telephone number:    email:

| 1. Amount of Claim as of Date Case Filed: | $ | 750,000.00 |
|---|---|---|

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

■ Date Stamped Copy Returned
☐ No self addressed stamped envelope
☐ No copy to return

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Damages sought in Moss vs. Executive Trustee Services LLC, /
    (See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor: | 3a. Debtor may have scheduled account as:<br>n/a<br>(See instruction #3a) | 3b. Uniform Claim Identifier (optional):<br>n/a<br>(See instruction #3b) |
|---|---|---|

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:
$ _____

**Nature of property or right of setoff:** ☐Real Estate  ☐Motor Vehicle  ☐Other
**Describe:**

Basis for perfection: _____

**Value of Property: $** _____

Amount of Secured Claim:  $ _____

**Annual Interest Rate** _____% ☐Fixed  or  ☐Variable
**(when case was filed)**

Amount Unsecured:  $ _____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

**Amount entitled to priority:**

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use -- 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(___).

$ _____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)



12120282110700000000002

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements.  If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached.  *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS.  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

**RECEIVED**
NOV 1 5 2012

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

**KURTZMAN CARSON CONSULTANTS**

Check the appropriate box.

☑ I am the creditor.    ☐ I am the creditor's authorized agent.    ☐ I am the trustee, or the debtor,    ☐ I am a guarantor, surety, indorser, or other codebtor.
(Attach copy of power of attorney, if any.)    or their authorized agent.    (See Bankruptcy Rule 3005.)
(See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:  Alan Moss
Title:
Company:
Address and telephone number (if different from notice address above):

(Signature)    (Date) 11/5/12

Telephone number:                      email:

*Penalty for presenting fraudulent claim:*  Fine of up to $500,000 or imprisonment for up to 5 years, or both.  18 U.S.C. §§ 152 and 3571.

---

**INSTRUCTIONS FOR PROOF OF CLAIM FORM**
*The instructions and definitions below are general explanations of the law.  In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*
**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number.  If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case.  A separate space is provided for the payment address if it differs from the notice address.  The creditor has a continuing obligation to keep the court informed of its current address.  See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing.  Follow the instructions concerning whether to complete items 4 and 5.  Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred.  Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card.  If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.  You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here.  A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured.  Skip this section if the claim is entirely unsecured.  (See Definitions.)  If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority.  (See Definitions.)  A claim may be partly priority and partly non-priority.  For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt.  You must also attach copies of documents that evidence perfection of any security interest.  You may also attach a summary in addition to the documents themselves.  FRBP 3001(c) and (d).  If the claim is based on delivering health care goods or services, limit disclosing confidential health care information.  Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it.  FRBP 9011.  If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature.  If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief.  Your signature is also a certification that the claim meets the requirements of FRBP 9011(b).  Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration.  Print the name and title, if any, of the creditor or other person authorized to file this claim.  State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices.  If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent.  If the authorized agent is a servicer, identify the corporate servicer as the company.  Criminal penalties apply for making a false statement on a proof of claim.

**ALAN MOSS**
**P.O. Box 721**
**Moss Beach CA 94038**

**November 6, 2012**

FILED
U.S. BANKRUPTCY COURT

2012 NOV -7 P 1: 19

S.D. OF N.Y.

TO:        **Clerk of the Court**
           **U.S. Bankruptcy Court**
           **Southern District of New York**
           **One Bowling Green**
           **New York NY 10004**

                    Re:        **In Re ResCap Cases(Executive Trustee Services: 12-12-**
                               **12028)**

                    Case No.    **12-12020**

## ENCLOSED: REQUEST FOR NOTICES

## REQUESTED ACTION:

☐    Check in the amount of $_____ enclosed;

☒    File original(s) and return file stamped copies;

☐    File original(s), certify ____ copies and return;

☐    Certify ____ copies and return;

☐    Sign where indicated, date (if applicable) and return;

☐    Sign before a Notary Public and return with Notarial Acknowledgment;

☐    Obtain signature of Judge/Commissioner/Magistrate, file and return conformed copies;

☐    For your ☐ approval; ☐ correction; ☐ comments; ☐ information; ☐ file; ☐ return;

☒    Stamped, self-addressed envelope enclosed.

                                            Very truly yours,

\\vmware-host\Shared Folders\My Documents\_WP_WinXP\Desktop Folder\ETS\BK\Transmit Clerk.wpd

# FIRST AMERICAN TITLE COMPANY

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:
EXECUTIVE TRUSTEE SERVICES, LLC
2255 NORTH ONTARIO STREET #400
BURBANK, CA 91504-3120

CERTIFIED BY FIRST AMERICAN TITLE
INSURANCE COMPANY TO BE A COPY
OF THE DOCUMENT RECORDED ON 09/18/2012
AS INSTRUMENT NO. 2012-134405
IN BOOK              PAGE
OFFICIAL RECORDS OF SAN MATEO

LOAN# ▇▇▇▇ 4900
T.S.# ▇▇▇▇ 076-C

 7600

## NOTICE OF RESCISSION OF TRUSTEE'S DEED UPON SALE

This Notice of Rescission is made this day 9/13/2012 with respect to the following:

1.) THAT Executive Trustee Services, LLC dba ETS Services, LLC is the duly appointed Trustee under that certain Deed of Trust dated 6/22/2005 and recorded 7/5/2005 as instrument number 2005-111708 in book page wherein ALAN IRVING MOSS AN UNMARRIED MAN are named as trustors, ALLIANCE TITLE is named as trustee, and CJ MORTGAGE INC. ; is named as beneficiary;

2.) THAT The Bank of New York Trust Company NA as successor to JPMorgan Chase Bank, National Association, f/k/a JPMorgan Chase Bank, as TRUSTEE FOR TRUMAN CAPITAL MORTGAGE LOAN TRUST 2006-1 is the beneficiary of record under that Deed of Trust by virtue of an Assignment of Beneficial Interest recorded 6/16/2008, Instrument # 2008-069109

3.) THAT THE DEED OF TRUST encumbers real property located in the County of San Mateo , State of California , described as follows:

LOTS 20, 22 AND 23, BLOCK 13, AS DESIGNATED ON THAT CERTAIN MAP ENTITLED, "MAP OF RIVIERA OCEAN VILLA TRACT, SAN MATEO COUNTY, CALIFORNIA", WHICH MAP WAS FILED IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SAN MATEO, STATE OF CALIFORNIA ON JUNE 15, 1908, IN BOOK 6 OF MAPS, AT PAGE 20.

4.) THAT BY VIRTUE OF a default under the terms of the Deed of Trust, the beneficiary did declare a default, as set forth in a Notice of Default recorded 9/18/2007 as instrument number 2007-138470 in book , page in the office of the Recorder of San Mateo County, State of California ;

LOAN# ███4900
T.S.# ███76-C

5.) THAT THE TRUSTEE has been informed by the Beneficiary that the beneficiary
desires to rescind the Trustee's Deed recorded upon the foreclosure sale which was
conducted in error due to a failure to communicate timely, notice of conditions which
would have warranted a cancellation of the foreclosure which did occur on 5/7/2009 ;

6.) THAT THE EXPRESS PURPOSE of this Notice of Rescission is to return the
priority and existence of all title and lien holders to the status quo-ante as existed prior to
the trustee's sale;

NOW THEREFORE, THE UNDERSIGNED HEREBY RESCINDS THE TRUSTEE'S
SALE AND PURPORTED TRUSTEE'S DEED UPON SALE AND HEREBY
ADVISES ALL PERSONS THAT THE TRUSTEE'S DEED UPON SALE DATED
5/12/2009 AND RECORDED 5/18/2009 AS INSTRUMENT NUMBER 2009-124607 IN
THE COUNTY OF  San Mateo , STATE OF California, FROM Executive Trustee
Services, LLC dba ETS Services, LLC (TRUSTEE) TO The Bank of New York Trust
Company NA as successor to JPMorgan Chase Bank, National Association, f/k/a
JPMorgan Chase Bank, as TRUSTEE FOR TRUMAN CAPITAL MORTGAGE LOAN
TRUST 2006-1 (GRANTEE) IS HEREBY RESCINDED, AND IS AND SHALL BE OF
NO FORCE AND EFFECT WHATSOEVER.  THE DEED OF TRUST DATED
6/22/2005 , RECORDED 7/5/2005 AS INSTRUMENT NUMBER 2005-111708 IN
BOOK  , PAGE  , IS IN FULL FORCE AND EFFECT.

Executive Trustee Services, LLC dba ETS Services, LLC

_Marques Perry_

State of California    } S.S.
County of Los Angeles  }

On 9/13/2012 ,before me  Sally Beltran  Notary Public, personally appeared Marques Perry, who proved to me on the
basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.
I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

_Sally Beltran_

SALLY BELTRAN
Commission # 1962270
Notary Public - California
Los Angeles County
My Comm. Expires Dec 1, 2015

## Exhibit C to Supplemental Declaration

Loan Number: 0931

# ADJUSTABLE RATE NOTE

## (LIBOR Six-Month Index (As Published In *The Wall Street Journal*)-Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST
RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY
INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I
MUST PAY.

JUNE 22, 2005          BREA        CALIFORNIA
[Date]                  [City]                [State]

        86 SAN LUCAS AVE., MOSS BEACH, CALIFORNIA 94038
                             [Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 612,500.00     (this amount is
called "Principal"), plus interest, to the order of Lender. Lender is CJ MORTGAGE INC., A
CALIFORNIA CORPORATION
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who
is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest
at a yearly rate of    10.250  %. The interest rate I will pay may change in accordance with Section 4 of this
Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after
any default described in Section 7(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payments on the 1st   day of each month beginning on AUGUST 1      .
2005  . I will make these payments every month until I have paid all of the principal and interest and any other
charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled
due date and will be applied to interest before Principal. If, on JULY 1, 2035      . I still owe
amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at 3230 E IMPERIAL HWY SUITE 203, BREA,
CALIFORNIA 92821
                          or at a different place if required by the Note Holder.
(B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $ 5,488.62     . This
amount may change.
(C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate
that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly
payment in accordance with Section 4 of this Note.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX         Form 3520 1/01
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family     DocMagic *eForms* 800-649-1362
Fannie Mae MODIFIED INSTRUMENT        Page 1 of 5               *www.docmagic.com*

## 4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the  1st   day of  JULY, 2007                    , and
on that day every  6th   month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding  SIX AND
950/1000                   percentage points (     6.950   %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than     13.250 % or
less than      10.250 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 000/1000                 percentage point(s) (     1.000   %)
from the rate of interest I have been paying for the preceding  6       months. My interest rate will never be greater than       16.250 %.  My interest rate will never be less than            10.250        %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.    BORROWER'S RIGHT TO PREPAY ** See attached Prepayment Note Addendum.

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

6.    **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7.    **BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8.    **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9.    **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10.    **WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions.  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note.  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of those conditions read as follows:

> Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.    Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

> To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption.  Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument.  Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

> If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT                    Page 4 of 5

Form 3520 1/01
*DocMagic* ℮ℱⱷⱳⱳⱳ  800-649-1362
www.docmagic.com

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)                    _____ (Seal)
ALAN  IRVING  MOSS        -Borrower                                          -Borrower

_____ (Seal)                    _____ (Seal)
                  -Borrower                                          -Borrower

_____ (Seal)                    _____ (Seal)
                  -Borrower                                          -Borrower

*[Sign Original Only]*

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX                    Form 3520 1/01
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family              *DocMagic eForms* 800-649-1362
Fannie Mae MODIFIED INSTRUMENT               Page 5 of 5              *www.docmagic.com*

# Allonge to Promissory Note

## Allonge to Promissory Note

Without recourse pay to the order of:

___Option One Mortgage Corporation___

By: _____
Name: Christian Trausch
Title: President
Company: CJ Mortgage, Inc

Borrower(s) Name: Alan Irving Moss

Loan Number: ████6028          Servicing Number: ████569-8          Date: 01/01/00

# ALLONGE TO NOTE
## (INVESTOR)

This allonge makes reference to the following Note:

Borrowers:  ALAN IRVING MOSS
Loan #: ████6028
Property Address: 86  SAN LUCAS AVE,   MOSS BEACH, CA 94038-9749
Loan Amount: $612,500.00

Note Date: 01/01/00

Therefore, in reference to the captioned note, the following applies:

Pay to the order of:

                                                    Without Recourse

Option One Mortgage Corporation
A California Corporation

By: _____
    Leah Green
    Assistant Secretary

# PREPAYMENT ADDENDUM TO NOTE

Loan Number: ████ 0931

Date: JUNE 22, 2005

Borrower(s): ALAN IRVING MOSS

THIS PREPAYMENT ADDENDUM TO NOTE (the "Addendum") is made this     22nd     day of   JUNE,    2005        , and is incorporated into and shall be deemed to amend and supplement that certain promissory note (the "Note") made by the undersigned ("Borrower") in favor of CJ MORTGAGE INC., A CALIFORNIA CORPORATION

("Lender") and dated the same date as this Addendum.  Repayment of the Note is secured by a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") given by Borrower in favor of Lender and dated the same date as this Addendum.  To the extent that the provisions of this Addendum are inconsistent with the provisions of the Note, the provisions of this Addendum shall supersede the inconsistent provisions of the Note.

ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Note, Borrower and Lender further covenant and agree as follows:

Section    5   of the Note is amended to read in its entirety as follows:

    5   .  BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE
        I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment."  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
        The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under the Note.  However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note.  If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes.
        If the Note contains provisions for a variable interest rate, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment.  However, any reduction due to my partial Prepayment may be offset by an interest rate increase.
        If within TWENTY-FOUR ( 24 ) months from the date the Security Instrument is executed I make a full Prepayment or one or more partial Prepayments, and the total of all such Prepayments in any 12-month period exceeds TWENTY                     percent ( 20.000 %) of the original principal amount of the loan, I will pay a Prepayment charge in an amount equal to SIX        ( 6 ) months' advance interest on the amount by which the total of my Prepayments within any 12-month period exceeds TWENTY            percent ( 20.000 %) of the original principal amount of the loan.

If the Note contains provisions for a variable interest rate, and the purpose of the loan is to finance the purchase or construction of real property containing four or fewer residential units or on which four or fewer residential units are to be constructed, then I may prepay the loan in whole or in part without a Prepayment charge within 90 days of notification of any increase in the rate of interest.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Addendum.

_____    _____
Borrower  ALAN IRVING MOSS    Date         Borrower                                    Date

_____    _____
Borrower                                    Date         Borrower                                    Date

_____    _____
Borrower                                    Date         Borrower                                    Date

**Exhibit D to Supplemental Declaration**

Recording Requested By:
CJ MORTGAGE INC.

**ALLIANCE TITLE COMPANY**

And After Recording Return To:
CJ MORTGAGE INC.
3230 E IMPERIAL HWY SUITE 203
BREA, CALIFORNIA 92821
Loan Number: ████0931



## 2005-111708
12:53pm 07/05/05 DT  *Fee:* 58.00
Count of pages 18
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

* 2 0 0 5 0 1 1 1 7 0 8 A R *



AP# ████ 20-6  [Space Above This Line For Recording Data]
OR# ████ 0373

 6028

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated    JUNE 22, 2005    , together with all Riders to this document.
(B) "Borrower" is ALAN IRVING MOSS, AN UNMARRIED MAN.


Borrower is the trustor under this Security Instrument.
(C) "Lender" is CJ MORTGAGE INC.

Lender is a CALIFORNIA CORPORATION    organized
and existing under the laws of CALIFORNIA
Lender's address is 3230 E IMPERIAL HWY SUITE 203, BREA, CALIFORNIA
92821
Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is ALLIANCE TITLE
25B TECHNOLOGY DR. STE. 100, IRVINE, CALIFORNIA 92618

(E) "Note" means the promissory note signed by Borrower and dated    JUNE 22, 2005
The Note states that Borrower owes Lender SIX HUNDRED TWELVE THOUSAND FIVE
HUNDRED AND 00/100    Dollars (U.S. $ 612,500.00    )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than JULY 1, 2035    .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

---

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider          ☐ Condominium Rider                      ☐ Second Home Rider
☐ Balloon Rider                  ☐ Planned Unit Development Rider         ☐ Other(s) [specify]
☐ 1-4 Family Rider               ☐ Biweekly Payment Rider

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

      COUNTY                of  SAN MATEO             :
      [Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N. #: ▮▮▮▮▮▮▮▮▮120-6

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 1/01                       Page 2 of 14               DocMagic eFormas 800-649-1362
                                                     www.docmagic.com

which currently has the address of  86 SAN LUCAS AVE.
                                                                      [Street]

MOSS BEACH                                    , California 94038      ("Property Address"):
              [City]                                        [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be
covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right
to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.
Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any
encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with
limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    1.  Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall
pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late
charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due
under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other
instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid,
Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in
one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check,
treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured
by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
    Payments are deemed received by Lender when received at the location designated in the Note or at such other
location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return
any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender
may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights
hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not
obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of
its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds
until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of
time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be
applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim
which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due
under the Note and this Security Instrument or performing the covenants and agreements secured by this Security
Instrument.
    2.  Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments
accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note;
(b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic
Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second
to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.
    If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient
amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If
more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the
repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that
any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may

# Exhibit "A"

All that certain real property in the County of San Mateo, State of California, described as
follows:

Lots 20, 22 and 23, Block 13, as designated on that certain map entitled, "Map of Riviera
Ocean Villa Tract, San Mateo County, California", which map was filed in the Office of the
Recorder of the County of San Mateo, State of California on June 15, 1908, in Book 6 of
Maps at Page 20.

be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.    Funds for Escrow Items.    Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.    Charges; Liens.    Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the

Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement

is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or

other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 1/01                                   Page 8 of 14                          DocMagic *eFormss* 800-649-1362
                                                                                      www.docmagic.com

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies.   Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 1/01                                            Page 11 of 14                        DocMagic *eForms* 800-649-1362
www.docmagic.com

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)          _____ (Seal)
ALAN IRVING MOSS                -Borrower                                      -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                      -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                      -Borrower

Witness:                                        Witness:

_____                   _____

DocMagic eForms 800-649-1362
www.docmagic.com

——————————————— [Space Below This Line For Acknowledgment] ———————————————

State of California                                     )
          San Francisco                       ) ss.
County of ~~SAN MATEO~~                                 )

    On  June 24, 2005       before me,  Aimese Hurley

personally appeared ALAN IRVING MOSS


~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s)
is/~~are~~ subscribed to the within instrument and acknowledged to me that he/~~she/they~~ executed the same in his/~~her/their~~
authorized capacity(~~ies~~), and that by his/~~her/their~~ signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.




AIMESE HURLEY
COMM. #1430649
NOTARY PUBLIC-CALIFORNIA
SAN MATEO COUNTY
My Comm. Expires JULY 15, 2007

NOTARY SEAL

_Aimese Hurley_
_____
NOTARY SIGNATURE

_Aimese Hurley_
_____
(Typed Name of Notary)

Loan Number: █████0931

# ADJUSTABLE RATE RIDER

### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 22nd day of JUNE, 2005          .
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to CJ MORTGAGE INC., A CALIFORNIA CORPORATION
("Lender") of the same date and covering the property described in the Security Instrument and located at:

86 SAN LUCAS AVE., MOSS BEACH, CALIFORNIA 94038

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of      10.250 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A)   Change Dates

The interest rate I will pay may change on the 1st   day of JULY, 2007          .
and on that day every 6th   month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B)   The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

---

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                    Page 1 of 3

*DocMagic ℰℱﮭﺱﺱﺱ 800-649-1362*
*www.docmagic.com*

(C)    Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding
SIX AND 950/1000                        percentage points (      6.950    %) to the Current
Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one
percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be
my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to
repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my
new interest rate in substantially equal payments.  The result of this calculation will be the new amount of
*my monthly payment.*

(D)    Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than
13.250  % or less than      10.250  %.  Thereafter, my interest rate will never be increased
or decreased on any single Change Date by more than ONE AND 000/1000
                                 percentage points (      1.000  %) from the rate of interest
I have been paying for the preceding      6      months.  My interest rate will never be greater than
16.250 %.  My interest rate will never be less than      10.250%.

(E)    Effective Date of Changes

My new interest rate will become effective on each Change Date.  I will pay the amount of my new
monthly payment beginning on the first monthly payment date after the Change Date until the amount of my
monthly payment changes again.

(F)    Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount
of my monthly payment before the effective date of any change.  The notice will include information required
by law to be given to me and also the title and telephone number of a person who will answer any question
I may have regarding the notice.

B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER
      Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section
18, "Interest in the Property" means any legal or beneficial interest in the Property, including,
but not limited to, those beneficial interests transferred in a bond for deed, contract for deed,
installment sales contract or escrow agreement, the intent of which is the transfer of title by
Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or
if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred)
without Lender's prior written consent, Lender may require immediate payment in full of all
sums secured by this Security Instrument.  However, this option shall not be exercised by
Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this
option if: (a) Borrower causes to be submitted to Lender information required by Lender to
evaluate the intended transferee as if a new loan were being made to the transferee; and (b)
Lender reasonably determines that Lender's security will not be impaired by the loan

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                        Page 2 of 3

*DocMagic EForms* 800-649-1362
www.docmagic.com

assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee *to keep all the promises and agreements made in the Note and in this Security Instrument.* Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)        _____ (Seal)
ALAN IRVING MOSS            -Borrower                                                 -Borrower

_____ (Seal)        _____ (Seal)
                            -Borrower                                                 -Borrower

_____ (Seal)        _____ (Seal)
                            -Borrower                                                 -Borrower

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                  Page 3 of 3

DocMagic *eFarms* 800-649-1362
www.docmagic.com

**Exhibit E to Supplemental Declaration**



**2007-051106**
2007-051106
09:11am 04/04/07 AT Fee: 13.00
Count of pages 3
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

*20070051106AR*

*Prepared by: Option One Mortgage Corp.*
*& When Recorded Return to: Assn Dept.*
*American Document Services, Inc.*
*250 Commerce 2nd Floor*
*Irvine, CA 92602    PROJECT 632*
*(888)477-4780*

**PREPARED BY: STEVE EMBRY**
**OPTION ONE MORTGAGE CORP.**
**3 ADA, IRVINE CA 92618**
*(949) 790-3600*    ████ ODTI

3P

LOAN #: ████ 931

 ████ 6028 **ASSIGNMENT OF DEED OF TRUST**

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is
**3230 E. IMPERIAL HWY #203, BREA, CA 92821**

does hereby grant, sell, assign, transfer and convey, unto **OPTION ONE MORTGAGE**
a corporation organized and existing under the laws of **THE UNITED STATES OF AMERICA**
(herein "Assignee"),

whose address is **3 ADA, IRVINE, CA 92618**
all beneficial interest under a certain Deed of Trust, dated    **JUNE 22, 2005**    , made and executed
by **ALAN IRVING MOSS, AN UNMARRIED MAN.**
 *Property Address: 86 San Lucas Ave., Moss Beach, CA 94038* ,

to **ALLIANCE TITLE**

Trustee, upon the following

Described property situated in **SAN MATEO COUNTY**                **State of California**
:

**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.**

APN. # ████ 120-6

such Deed of Trust having been given to secure payment of    **$612,500.00**    which Deed of Trust is of record in
(original principal amount)
Instrument No. *2005-111708*    on *7/5/05* in book ⌐    ,page ⌐
of Official Records in the County Recorder's office of **SAN MATEO**
County, State of **California,**                together with the note(s) and obligations therein described, the money due
and to become due thereon with interest, and all rights accrued under said Deed of Trust.

**Page 1 of 2**

TO HAVE AND TO HOLD, the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Deed of Trust.

IN WITNESS WHEREOF, the undersigned Assignor has executed this assignment of Deed of Trust on 6/27/05

CJ MORTGAGE INC., A CALIFORNIA CORPORATION

BY _____

*Vanessa Bran*

State of California
County of ORANGE

On __6/27/05__ before me, Christian Trausch , Notary Public
~~Vanessa Bran~~
Vanessa Bran _____, personally appeared
_____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledge to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature (s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

CHRISTIAN M. TRAUSCH
Commission # 1376564
Notary Public - California
Orange County
My Comm. Expires Sep 24, 2006

*Christian M. Trausch*



Page No. 6

3-099

**Exhibit A**
**LEGAL DESCRIPTION**
LEGAL DESCRIPTION

All that certain real property in the County of San Mateo, State of California, described as follows:

Lots 20, 22 and 23, Block 13, as designated on that certain map entitled, "Map of Riviera Ocean Villa Tract, San Mateo County, California", which map was filed in the Office of the Recorder of the County of San Mateo, State of California on June 15, 1908, in Book 6 of Maps at Page 20.

APN No: ████ 120-6



**Exhibit F to Supplemental Declaration**



**2008-069108**

FIRST AMERICAN TITLE COMPANY
08:00am 06/16/08 AT  Fee: 7.00
Count of pages 1
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

*011076028001*
*011076028001*

Loan Number: ████028
Servicing Number: ████5698
**RECORDING REQUESTED BY/
RETURN TO:**

Option One Mortgage Corporation
3 Ada, Irvine, CA  92618

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# CORPORATION ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to:
    TCIF, LLC

all beneficial interest under that certain Deed of Trust dated    June 22, 2005
executed by  ALAN IRVING MOSS, AN UNMARRIED MAN.

, Trustor,

to    CJ MORTGAGE INC., A CALIFORNIA CORPORATION
ALLIANCE TITLE                                    ,Trustee
and recorded  07/05/05        as document No.   2005-111708        , in Book        , Page
of Official Records in the office of the County Recorder of  S̶a̶n̶ ̶F̶r̶a̶n̶c̶i̶s̶c̶o̶  San Mateo    County, CALIFORNIA
describing land therein as:
            **AS  DESCRIBED ON THE DEED OF TRUST REFERRED TO HEREIN**

**TOGETHER**  with the note or notes therein  described or referred to,  the money due and  to become  due  thereon  with
interest, and all rights accrued or to accrue under said Deed of Trust.

Dated:  Sept 15, 2007
M̶a̶y̶ ̶0̶7̶,̶ ̶2̶0̶0̶8̶

Option One Mortgage Corporation,
A California Corporation

**STATE OF CALIFORNIA
COUNTY OF ORANGE**

On_May 07, 2007_____before me,
R. A. Salazar        , personally appeared
Brian D. McConnell        , Assistant Secretary
personally known to me (or proved to me on the basis of
satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged
to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s)
on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.
Witness my hand and official seal.

By_____
    Brian D. McConnell    Assistant Secretary

By_____

( This area for official notarial seal )



R. A. SALAZAR
Commission # 1759905
Notary Public - California
Orange County
My Comm. Expires Aug 2, 2011

Signature_____
    R. A. SALAZAR

**<u>Exhibit G to Supplemental Declaration</u>**



DATCO

Requested and Prepared by:
Executive Trustee Services, LLC

When Recorded Mail To:
Executive Trustee Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120

**2008-069109**
FIRST AMERICAN TITLE COMPANY
08:00am 06/16/08 AT Fee: 7.00
Count of pages 1
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

\* 2 0 0 8 0 0 6 9 1 0 9 A R \*

APN: ███-120 ███

Loan No.: ███4900    TS No: GM-117076-C

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned corporation hereby grants, assigns, and transfers to:

The Bank of New York Trust Company as successor to JPMorgan Chase Bank, N.A. as Trustee
for Truman Capital Mortgage Loan Trust 2006-1.

all beneficial interest under that certain Deed of Trust dated: **6/22/2005** executed by **ALAN
IRVING MOSS AN UNMARRIED MAN**, as Trustor(s), to **ALLIANCE TITLE** , as Trustee,
and recorded as Instrument No. **2005-111708**, on **7/5/2005**, in Book , Page of Official Records,
in the office of the County Recorder of **San Mateo** County, **California** together with the
Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said
Deed of Trust.

Date: 4/29/2008

TCIF, LLC

_Margie Kwiatanowski_
Margie Kwiatanowski, Assistant Vice President

State of   Pennsylvania   } SS
County of  Montgomery    }

On _April 30_, , 2008 before me, _Mary Lynch_ Notary Public,
personally appeared Margie Kwiatanowski, personally known to me (or proved to me on the basis of satisfactory
evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and
correct.

WITNESS my hand and official seal.

Signature _Mary Lynch_ (Seal)

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Mary Lynch, Notary Public
Horsham Twp., Montgomery County
My Commission Expires Nov. 3, 2010
Member, Pennsylvania Association of Notaries

**Exhibit H to Supplemental Declaration**

**RECORDING REQUESTED BY:**

Recording requested by:
FIRST AMERICAN TITLE

**FIRST AMERICAN TITLE INSURANCE**

**EXECUTIVE TRUSTEE SERVICES, LLC.**
**15455 SAN FERNANDO MISSION BLVD**
**SUITE #208**
**MISSION HILLS, CA 91345**
**(818) 837-2300**

TS NO : ████30-C
LOAN NO : ████4900

**2006-170399**
**01:54pm 11/10/06 ST  Fee: 10.00**
**Count of pages 2**
**Recorded in Official Records**
**County of San Mateo**
**Warren Slocum**
**Assessor-County Clerk-Recorder**

* 2 0 0 6 0 1 7 0 3 9 9 A R *

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# SUBSTITUTION OF TRUSTEE

WHEREAS, ALAN IRVING MOSS, AN UNMARRIED MAN was the original Trustor, ALLIANCE TITLE was the original Trustee, and CJ MORTGAGE INC., A CALIFORNIA CORPORATION was the original Beneficiary under that certain Deed of Trust dated 6/22/2005 and recorded on 7/5/2005 as Instrument No. 2005-111708, in Book , Page  of Official Records of San Mateo County, California; and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned hereby substitutes a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

NOW, THEREFORE, the undersigned desires to substitute EXECUTIVE TRUSTEE SERVICES, LLC FKA EXECUTIVE TRUSTEE SERVICES, INC., as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

**Dated : September 21, 2006**

TCIF REO2, LLC

*Margie Kwaitanowski*

**MARGIE KWAITANOWSKI, VICE PRESIDENT**

State of *Montgomery*    ss.
County of *Montgomery*

On 09/21/06    before me, *Brenda Staehle*    Notary Public, personally appeared *Margie Kwaitanowski*    personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed this instrument.

WITNESS my hand and official seal.

Signature *Brenda*

(Seal) COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Brenda Staehle, Notary Public
Perkasie Boro, Bucks County
My Commission Expires Mar. 11, 2010
Member, Pennsylvania Association of Notaries

# AFFIDAVIT OF MAILING
# FOR SUBSTITUTION OF TRUSTEE BY CODE

---

T.S. No. : ▮▮▮▮830-C
Trustor : **ALAN IRVING MOSS, AN UNMARRIED MAN**

**I, Beatriz Osorio, TRUSTEE SALE OFFICER**, declare: That I am an officer, agent or employee of **EXECUTIVE TRUSTEE SERVICES, LLC** whose business address is:

**15455 San Fernando Mission Blvd., Suite 208, Mission Hills, California 91345**

I am over the age of eighteen years; On 11/08/2006, by Certified and First Class mail, enclosed in a sealed envelope with postage fully prepaid, I deposited in the United States Mail, a copy of the attached Substitution of Trustee to the trustee of record under the Deed of Trust described in said Substitution, and;

A copy of the attached Substitution has been mailed prior to the recording thereof, in the manner provided in Section 2924(b) of the Civil Code of the State of California to all persons to whom a copy of the Notice of Default would be required to be mailed by the provisions of said section.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: November 07, 2006

Beatriz Osorio, Trustee Sale Officer

**Exhibit I to Supplemental Declaration**

FIRST AMERICAN TITLE COMPANY

CERTIFIED BY FIRST AMERICAN TITLE
INSURANCE COMPANY TO BE A COPY
OF THE DOCUMENT RECORDED ON 05/17/07
AS INSTRUMENT NO.2007-076538
IN BOOK              PAGE
OFFICIAL RECORDS OF SAN MATEO

**RECORDING REQUESTED BY:**

**AND WHEN RECORDED MAIL TO**

EXECUTIVE TRUSTEE SERVICES, LLC.
15455 SAN FERNANDO MISSION BLVD
SUITE #208
MISSION HILLS, CA 91345

T.S. No.: ███████30-C                          SPACE ABOVE THIS LINE FOR RECORDER'S USE
Loan No.: ██████4900

## NOTICE OF RESCISSION OF NOTICE OF DEFAULT

**NOTICE IS HEREBY GIVEN:** That EXECUTIVE TRUSTEE SERVICES, LLC FKA EXECUTIVE TRUSTEE SERVICES, INC. is duly appointed Trustee under a Deed of Trust dated **6/22/2005**, executed by **ALAN IRVING MOSS, AN UNMARRIED MAN**, as Trustor, to secure certain obligations in favor of **CJ MORTGAGE INC., A CALIFORNIA CORPORATION**, as Beneficiary, recorded **7/5/2005**, as Instrument No.**2005-111708**, in book , page , of Official Records in the Office of the Recorder of **San Mateo** County, California describing land therein as more fully described on the above referenced deed of trust.

said obligations including one note for the sum of **$612,500.00**.

Whereas, the present beneficiary under that certain Deed of Trust herein above described, heretofore delivered to the Trustee thereunder written Declaration of Default and Demand for Sale; and Whereas, Notice was heretofore given of breach of obligations for which said Deed of Trust is security and of election to cause to be sold the property therein described; and Whereas, a Notice of Default was recorded on the day and in the book and page set forth below:

Notice was recorded on **6/20/2006** in the office of the Recorder of **San Mateo** County, California, Instrument No. **2006-092022**, in Book , Page , of Official Records.

**NOW, THEREFORE, NOTICE IS HEREBY GIVEN** that the present Beneficiary and/or the Trustee, does hereby rescind, cancel and withdraw said Declaration of Default and Demand for Sale and said Notice of Breach and Election to Cause Sale; it being understood, however, that this rescission shall not in any manner be construed as waiving or affecting any breach or default--past, present or future under said Deed of Trust, or as impairing any right or remedy thereunder, but is, and shall be deemed to be, only an election, without prejudice, not to cause a sale to be made pursuant to said Declaration and Notice, and shall nowise jeopardize or impair any right, remedy or privilege secured to the Beneficiary and/or the Trustee, under said Deed of Trust, nor modify nor alter in any respect any of the terms, covenants, conditions or obligations thereof, and said Deed of Trust and all obligations secured thereby are hereby reinstated and shall be and remain in force and effect the same as if said Declaration of Default and Notice of Breach had not been made and given.

EXECUTIVE TRUSTEE SERVICES, LLC

Dated: **May 04, 2007**

By: _____
DIANNA SANDOVAL
TRUSTEE SALE OFFICER

## Exhibit J to Supplemental Declaration

2013-121648

11:44 am 08/19/13 NR Fee: 18.00
Count of Pages 2
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder

* R 0 0 0 1 7 2 2 3 6 3 *

REQUESTED BY:

WHEN RECORDED MAIL TO: *CLAIR ROMMEL*
*1 EM BARCADERO CENTER*
*SAN FRANCISCO CA 94111*

[SPACE Above This Line For Recording Data]

LN#4900
A.P.N.: [redacted]-120

# NOTICE OF RESCISSION
## of Notice of Default and Election to Sell Under Deed of Trust

**NOTICE IS HEREBY GIVEN:** That **EXECUTIVE TRUSTEE SERVICES, LLC** is the duly appointed Trustee under a Deed of Trust dated **6/22/2005**, executed by **ALAN IRVING MOSS, AN UNMARRIED MAN**, as Trustor, to secure certain obligations in favor of **CJ MORTGAGE., A CALIFORNIA CORPORATION**, as Beneficiary, recorded 7/6/2005, as Instrument No. **2005-111708**, in Book , Page , of Official records in the Office of the Recorder of **San Mateo** County, **California** describing land therein as more fully described on the above referenced Deed of Trust.

Whereas, the beneficiary under that certain Deed of Trust herein described, heretofore delivered to the Trustee thereunder written Declaration of Default and Demand for Sale; and whereas, Notice was heretofore given of breach of obligations for which said Deed of Trust is security and of election to cause to be sold the property therein described, and whereas, a Notice of Default was recorded on the day and in the book and page set forth below:

Notice was recorded on **9/18/2007** in the office of the Recorder of **San Mateo** County, California, Instrument No. **2007-138470**, in Book , Page , of Official Records.

**NOW, THEREFORE, NOTICE IS HEREBY GIVEN** that the present Beneficiary and/or the Trustee, does hereby rescind, cancel, and withdraw said Notice of Default and Election to Sell Under Deed of Trust; this rescission shall not in any manner be construed as waiving or affecting any breach of default – past, present or future – under said Deed of Trust, or as impairing any right or remedy thereunder, but is, and shall be deemed to be, only an election, without prejudice, not to cause a sale to be made pursuant to said Notice of Default and Election to Sell Under Deed of Trust, and shall nowise jeopardize or impair any right, remedy or privilege secured to the Beneficiary and/or the Trustee, under said Deed of Trust, nor modify nor alter in any respect any of the terms, covenants, conditions or obligations thereof, and said Deed of Trust and all obligations secured thereby are hereby reinstated and shall be and remain in force and effect the same as if said Declaration of Default and Notice of Breach had not been made or given.

Dated: January 9, 2013 EXECUTIVE TRUSTEE SERVICES, LLC

By:
Myron Ravelo, Authorized Signer

LN#█████4900
A.P.N.: █████5-120

# ACKNOWLEDGMENT

State of California        )
                           )
County of Los Angeles          )

    On <u>January 9, 2013</u>, before me, <u>Sally Beltran</u>, Notary Public, personally appeared <u>Myron Ravelo</u>, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that they executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

SIGNATURE

SALLY BELTRAN
Commission # 1962270
Notary Public - California
Los Angeles County
My Comm. Expires Dec 1, 2015

SEAL

**Exhibit K to Supplemental Declaration**

# FIRST AMERICAN TITLE COMPANY

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:
EXECUTIVE TRUSTEE SERVICES, LLC
2255 NORTH ONTARIO STREET #400
BURBANK, CA 91504-3120

CERTIFIED BY FIRST AMERICAN TITLE
INSURANCE COMPANY TO BE A COPY
OF THE DOCUMENT RECORDED ON 09/18/2012
AS INSTRUMENT NO. 2012-134405
IN BOOK            PAGE
OFFICIAL RECORDS OF SAN MATEO

LOAN# ██████4900
T.S.# ██████076-C
 7600

---

## NOTICE OF RESCISSION OF TRUSTEE'S DEED UPON SALE

This Notice of Rescission is made this day 9/13/2012 with respect to the following:

1.) THAT Executive Trustee Services, LLC dba ETS Services, LLC is the duly appointed
Trustee under that certain Deed of Trust dated 6/22/2005 and recorded 7/5/2005 as
instrument number 2005-111708 in book  page  wherein ALAN IRVING MOSS AN
UNMARRIED MAN are named as trustors, ALLIANCE TITLE is named as trustee, and
CJ MORTGAGE INC. ; is named as beneficiary;

2.) THAT The Bank of New York Trust Company NA  as successor to JPMorgan Chase
Bank, National Association, f/k/a JPMorgan Chase Bank, as TRUSTEE FOR TRUMAN
CAPITAL MORTGAGE LOAN TRUST 2006-1 is the beneficiary of record under that
Deed of Trust by virtue of an Assignment of Beneficial Interest recorded 6/16/2008,
Instrument # 2008-069109

3.) THAT THE DEED OF TRUST encumbers real property located in the County of San
Mateo , State of California , described as follows:

LOTS  20, 22 AND 23, BLOCK 13, AS DESIGNATED ON THAT CERTAIN MAP
ENTITLED, "MAP OF RIVIERA OCEAN VILLA TRACT, SAN MATEO COUNTY,
CALIFORNIA", WHICH MAP WAS  FILED IN THE OFFICE OF THE RECORDER
OF THE COUNTY OF SAN MATEO, STATE OF CALIFORNIA ON JUNE 15, 1908,
IN BOOK 6 OF MAPS, AT PAGE 20.

4.) THAT BY VIRTUE OF a default under the terms of the Deed of Trust, the
beneficiary did declare a default, as set forth in a Notice of Default recorded 9/18/2007 as
instrument number 2007-138470 in book  , page  in the office of the Recorder of San
Mateo County, State of California ;

LOAN#  4900
T.S.#              076-C

5.) THAT THE TRUSTEE has been informed by the Beneficiary that the beneficiary desires to rescind the Trustee's Deed recorded upon the foreclosure sale which was conducted in error due to a failure to communicate timely, notice of conditions which would have warranted a cancellation of the foreclosure which did occur on 5/7/2009 ;

6.) THAT THE EXPRESS PURPOSE of this Notice of Rescission is to return the priority and existence of all title and lien holders to the status quo-ante as existed prior to the trustee's sale;

NOW THEREFORE, THE UNDERSIGNED HEREBY RESCINDS THE TRUSTEE'S SALE AND PURPORTED TRUSTEE'S DEED UPON SALE AND HEREBY ADVISES ALL PERSONS THAT THE TRUSTEE'S DEED UPON SALE DATED 5/12/2009 AND RECORDED 5/18/2009 AS INSTRUMENT NUMBER 2009-124607 IN THE COUNTY OF San Mateo , STATE OF California, FROM Executive Trustee Services, LLC dba ETS Services, LLC (TRUSTEE) TO The Bank of New York Trust Company NA as successor to JPMorgan Chase Bank, National Association, f/k/a JPMorgan Chase Bank, as TRUSTEE FOR TRUMAN CAPITAL MORTGAGE LOAN TRUST 2006-1 (GRANTEE) IS HEREBY RESCINDED, AND IS AND SHALL BE OF NO FORCE AND EFFECT WHATSOEVER. THE DEED OF TRUST DATED 6/22/2005 , RECORDED 7/5/2005 AS INSTRUMENT NUMBER 2005-111708 IN BOOK , PAGE , IS IN FULL FORCE AND EFFECT.

Executive Trustee Services, LLC dba ETS Services, LLC

Marques Perry

State of California       } S.S.
County of Los Angeles }

On 9/13/2012 ,before me  Sally Beltran **Notary Public**, personally appeared Marques Perry, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Sally Beltran

SALLY BELTRAN
Commission # 1962270
Notary Public - California
Los Angeles County
My Comm. Expires Dec 1, 2015

**<u>Exhibit L to Supplemental Declaration</u>**

**LexisNexis® CourtLink®**

**Single Search - with Terms and Connectors**

| Enter keywords - Search multiple dockets & documents | Search | Info |

🔍  Search > Search by Criteria > Untitled Search 12/8/2014 20:50:12 > CA-SUP-MTO:CIV505386

## Docket Tools

| Get Updated Docket | Track Docket Activity | Search for Similar | Set Alert for Similar Dockets | [Add to My Briefcase] |
|---|---|---|---|---|
| This docket was retrieved from the court on 12/8/2014 | CourtLink can alert you when there is new activity in this case | Start a new search based on the characteristics of this case | CourtLink alerts you when there are new cases that match characteristics of this case | [Email this Docket]  [Printer Friendly Format] |

Order Runner Documents from our nationwide Document Retrieval Service.
- Or - Call 1.866.540.8818.

Additional resources for cases like this may be found in our LexisNexis Practice Area communities.

## Docket

> > > Lexis®Web Search is enabled on this docket

### California Superior Courts

CA Superior - San Mateo
(SanMateo)

### CIV505386

**Alan Irving Moss VS Executive Trustee Ser., Llc**

This case was retrieved from the court on Monday, December 08, 2014

**Update Now**

### Header

| | |
|---|---|
| Case Number: | CIV505386 |
| Date Filed: | 05/05/2011 |
| Date Full Case Retrieved: | 12/08/2014 |
| Misc: | (9) CIVIL COMPLAINT: (CIV) Unlimited Civil |

[Summary] [Participants] [Proceedings] [Complaints] [Minutes] [Pending Hearings]

### Summary

**No Information is Available for this case**

Back to Top

### Participants

| Litigant | Attorney |
|---|---|
| Alan Irving Moss | Pro Per |
| Plaintiff | Moss, Alan Irving |
| Complaint Number: 1 | P.O. Box 721 |
| Status: DISPOSITIONED 05/23/2012 | Moss Beach, CA 94038 |
| | |
| Executive Trustee Services, Llc | Unrepresented |
| Defendant | Executive Trustee Services, Llc |
| Complaint Number: 1 | |
| Status: Default Entered 06/17/2011 | |

Back to Top

### Complaints

| Nbr | Type | File Date | Status |
|---|---|---|---|
| 1 | COM COMPLAINT of ALAN IRVING MOSS | 05/05/2011 | Dispositioned 05/23/2012 |

Back to Top

### Minutes

| Type | Details |
|---|---|
| Reference Action | (S) Complaint Filed |

|  |  |
|---|---|
| | 05/05/2011 |
| | Receipt: 110506-0149 $395.00 |
| Reference Action | Case Management Conference |
| | 08/26/2011 9:00 AM |
| | Dept 7 |
| | Hearing Continued to 12/02/11 at 09:00 in Department 7. |
| Reference Action | Case Management Conference |
| | 12/02/2011 9:00 AM |
| | Dept 21 |
| | Honorable Robert D. Foiles, Judge Presiding. Clerk: Cheryl Lyssand Court Reporter: Cindy Del Rosario |
| | Alan Irving Moss Appeared in Pro Per by Courtcall. |
| | The Court is Informed A Prove-Up Hearing Will be Set. |
| | Hearing Continued to 03/07/12 at 09:00 in Department 7. |
| | Plaintiff to Give Notice. |
| | Plaintiff Shall Submit an Updated Case Management Statement. |
| | If A Judgment is Filed Then no Appearance is Required. |
| | Entered by C Lyssand on 12/02/11. |
| | - 11 - |
| Reference Action | First Paper Fee Paid by Executive Trustee Services, Llc. |
| | 03/06/2012 |
| | Receipt: 120306-0801 $395.00 |
| Reference Action | Case Management Conference |
| | 03/07/2012 9:00 AM |
| | Dept 7 |
| | Hearing Continued to 06/08/12 at 09:00 in Department 7. |
| Reference Action | Hearing Default Prove-Up. |
| | 03/09/2012 9:00 AM |
| | Dept PJ |
| | Honorable Beth Labson Freeman, Judge Presiding. Clerk: Sean Kane Court Reporter: Chris Perez |
| | Attorney(S): Elena Kouvabina Appearing For Defendant Executive Trustee Services, Llc. |
| | Alan Irving Moss Not Present. |
| | Court Informs Defense Counsel it Received A Telephone Call From Mr. Moss Informing The Court |
| | That he Did Not Intend to Proceed With A Prove-Up Hearing Today, as Defendant Has Filed A Motion to |
| | Set Aside Entry of Default. |
| | Matter Dropped From Calendar. |
| | If Defendants Motion is Denied, Plaintiff Must Re-Calendar His Default Prove-Up Hearing |
| | Himself. |
| | Entered by S Kane on 03/09/12. |
| | ======================================= |
| Reference Action | Motion Fee Paid by Executive Trustee Services, Llc. |
| | 04/04/2012 |
| | Receipt: 120404-0443 $40.00 |
| Reference Action | Hearing: Motion Re: to Set Aside Entry of Default Filed by Executive Trustee Services, Llc |
| | 04/18/2012 9:00 AM |
| | Dept LM |
| | Hearing Off Calendar. Reason: Per Moving Partys Notice of Withdrawal of Motion, Filed 4/4/12. |
| Reference Action | Hearing: Motion Re: to Set Aside Entry of Default Filed by Executive Trustee Services, Llc |
| | 05/31/2012 9:00 AM |
| | Dept LM |
| | Honorable Joseph C. Scott, Judge Presiding. Clerk: Linda Makela Court Reporter: Makela. |
| | No Appearance is Made by Any Parties Herein or Their Counsel of Record. |
| | Action Automatically Stayed, Bankruptcy Petition Filed by Moving Party on 05/14/12. |
| | ======================================= |
| | Entered by Lmakela on 05/31/12. |

Back to Top

**Pending Hearings**

**No Information is Available for this case**

Back to Top

## Documents

Retrieve Document(s)

| Items 1 to 32 of 32 | | | | | |
|---|---|---|---|---|---|
| | Availability | Nbr | Date | Details | Disposition |
| ☐ | | | | | |

12-12020-mg    Doc 7904-1    Filed 12/19/14    Entered 12/19/14 13:26:08    Exhibit 1 -
Supplemental Horst Declaration    Pg 96 of 96

| | | | | |
|---|---|---|---|---|
| ☐ Online | 1 | 05/05/2011 | (S) Complaint Filed | |
| ☐ Online | 2 | 05/05/2011 | 30 Day Summons, Issued And Filed. | |
| ☐ Online | 3 | 05/05/2011 | Civil Case Coversheet Received | |
| ☐ Runner | 4 | 06/02/2011 | Proof of Personal Service of Summons And Complaint Filed 05/05/2011 of Alan Moss Served on Executive Trustee Services, Llc by Serving Bradley Ellison, Agent For Service With Service Date of 05/09/11 | |
| ☐ Runner | 5 | 06/17/2011 | Default Entered as to Executive Trustee Services, Llc | |
| ☐ Runner | 6 | 06/17/2011 | Request For Default Filed And Default Entered on Complaint Filed 05/05/2011 of Alan Moss as to Executive Trustee Services, Llc. | |
| ☐ Runner | 7 | 08/22/2011 | Statement of of Damages Filed by Alan Irving Moss | |
| ☐ Runner | 8 | 08/22/2011 | Proof of Service (Personal) of Statement of Damages * Served on Executive Trustee Services, Llc With Service Date of 08/09/11 Filed. | |
| ☐ Online | 9 | 08/26/2011 9:00 AM | Case Management Conference (Dept 7) | Continued |
| ☐ Runner | 10 | 11/28/2011 | Case Management Statement Filed by Alan Irving Moss. | |
| ☐ Runner | 11 | 12/01/2011 | Hcmc1i Calendared on 12/02/11 in Dept. 7. Has Been Updated to 12/02/11 in Dept. 21. | |
| ☐ Runner | 12 | 12/02/2011 9:00 AM | Case Management Conference (Dept 21) | Continued |
| ☐ Runner | 13 | 03/01/2012 | Request to Set Hearing on Uncontested Calendar (Default Prove-Up), Filed. | |
| ☐ Runner | 14 | 03/06/2012 | First Paper Fee Paid by Executive Trustee Services, Llc. | |
| ☐ Runner | 15 | 03/06/2012 | Notice of Motion And Motion to Set Aside Entry of Default Based on Excusable Mistake Filed by Executive Trustee Services, Llc | |
| ☐ Runner | 16 | 03/06/2012 | Declaration of Carol Bonello in Support of Executive Trustee Services, Llcs Motion to Set Aside | |
| ☐ Runner | 17 | 03/06/2012 | Declaration of Ilena Kouvabina Insupport of Motion to Set Aside Entry of Default | |
| ☐ Runner | 18 | 03/06/2012 | Proof of Service of Defendants Notice of Motion, Etc. Served on Mr. Alan Irving Moss by Usps With A Service Date of 03/06/12. | |
| ☐ Runner | 19 | 03/07/2012 9:00 AM | Case Management Conference (Dept 7) | Continued |
| ☐ Runner | 20 | 03/09/2012 9:00 AM | Hearing Default Prove-Up. (Dept Pj) | Completed |
| ☐ Runner | 21 | 04/04/2012 | Notice of Withdrawal of Motion to Set Aside Entry of Default Filed by Executive Trustee Services, Llc. | |
| ☐ Runner | 22 | 04/04/2012 | Notice of Motion And Motion to Set Aside Entry of Default Based on Extrinsic Fraud or Mistake Filed by Executive Trustee Services, Llc | |
| ☐ Runner | 23 | 04/04/2012 | Motion Fee Paid by Executive Trustee Services, Llc. | |
| ☐ Runner | 24 | 04/04/2012 | Declaration of Carol Bonello in Support of Executive Trustee Services Motion to Set Aside Default | |
| ☐ Runner | 25 | 04/04/2012 | Declaration of Elena Kouvabina in Support of Motion to Set Aside Entry of Default | |
| ☐ Runner | 26 | 04/18/2012 9:00 AM | Hearing: Motion Re: to Set Aside Entry of Default Filed by Executive Trustee Services, Llc (Dept Lm) | Off-Calendar |
| ☐ Runner | 27 | 05/17/2012 | Alan Irving Moss`s Response to Defendants Motion to Set Aside Default Filed. | |
| ☐ Runner | 28 | 05/17/2012 | Declaration of Alan Moss in Support of Plaintiffs Response to Motion to Set Aside Default | |
| ☐ Runner | 29 | 05/23/2012 | Case Dispo`d - Bankruptcy/Federal Court Notification Received | |
| ☐ Runner | 30 | 05/23/2012 | Notice of Stay of Proceedings Filed by Executive Trustee Services, Llc. | |
| ☐ Runner | 31 | 05/31/2012 9:00 AM | Hearing: Motion Re: to Set Aside Entry of Default Filed by Executive Trustee Services, Llc (Dept Lm) | Completed |
| ☐ Runner | 32 | 06/08/2012 9:00 AM | Case Management Conference (Dept 7) | Vacated |
| | | | Items 1 to 32 of 32 | |

Retrieve Document(s)

LexisNexis® | About LexisNexis | Terms & Conditions | Pricing | Privacy | Customer Support - 1-888-311-1966 | Copyright © 2014 LexisNexis®. All rights reserved.