**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>RESIDENTIAL CAPITAL, LLC, *et al.*,<br><br><div align="right">Debtors.</div> | **FOR PUBLICATION**<br><br>Case No. 12-12020 (MG)<br><br>Jointly Administered |

**MEMORANDUM OPINION AND ORDER SUSTAINING THE RESCAP**
**BORROWER CLAIMS TRUST'S OBJECTION TO THE**
**CLAIMS FILED BY KAREN MICHELE ROZIER**

*A P P E A R A N C E S:*

KAREN ROZIER
*Pro Se*
7957 Dahlia Circle
Buena Park, California 90620
By:     Karen Rozier

MORRISON & FOERSTER LLP
*Attorneys for ResCap Borrower Claims Trust*
250 West 55th Street
New York, New York 10019
By:     Norman S. Rosenbaum, Esq.
        Jordan A. Wishnew, Esq.
        Meryl Rothchild, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

In December 2005, Karen Michele Rozier ("Rozier") took out a home mortgage loan

with non-debtor WMC Mortgage Corporation ("WMC"). After WMC discovered that it had not

provided Rozier an accurate Truth in Lending Act ("TILA") disclosure statement with respect to

her loan, it sent her a notice of right to cancel her loan. Rozier exercised her right to cancel;

however, upon being provided with the option of tendering the amount due on her loan or

modifying her loan, she entered into a loan modification and general release, affirming her

intention not to rescind the loan.

More than four months after Rozier entered into the loan modification and general release, Debtor GMAC Mortgage, LLC ("GMACM") acquired servicing rights to Rozier's loan, and Debtor Executive Trustee Services, LLC ("ETS") was made substitute trustee under the applicable deed of trust.  Rozier defaulted on her loan in March 2008, and the Debtors initiated a foreclosure action.  The foreclosure sale was cancelled after the Debtors attempted to work out repayment plans and a short sale with Rozier, which she ultimately cancelled.

In August 2011, Rozier filed a chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Central District of California.  Rozier's chapter 13 bankruptcy case was converted to a case under chapter 7 of the Bankruptcy Code on January 12, 2012.

In September 2012, the Debtors again initiated foreclosure and executed a deed upon sale that was rescinded after ETS discovered a defect in the applicable notice.  The Debtors corrected the defect and issued another notice of sale in October 2012.  In posting this notice of sale on Rozier's home, the Debtors' posting agent was accompanied by several local police officers due to alleged threats Rozier had made in the past.  The Debtors subsequently transferred servicing rights of Rozier's loan to Ocwen Loan Services, LLC ("Ocwen") in February 2013, and transferred their interest in Rozier's deed of trust to U.S. Bank National Association ("US Bank").  A foreclosure sale was not completed during the time the Debtors serviced the loan or held an interest in the deed of trust.

Rozier alleges a litany of claims against the Debtors, which she previously asserted in an action commenced in California state court on September 27, 2012, days after the September 2012 deed upon sale was executed.  Rozier's claims generally arise from the Debtors' allegedly wrongful efforts to foreclose on her home.  Among other claims, Rozier asserts causes of action for wrongful foreclosure, negligence, violations of the California Civil Code, intentional

infliction of emotional distress, defamation of character, and violations of the California

Business and Professional Code section 17200, *et seq.* (the "UCL").  As set forth below, each of

her claims fails to raise a plausible basis for the Debtors' liability.  The Court therefore

**SUSTAINS** the Debtors' objection to her claims in its entirety.

## I.    BACKGROUND

The ResCap Borrower Claims Trust (the "Trust") objects to two claims filed by Karen

Rozier (the "Objection," ECF Doc. # 7474):  (1) claim number 4738 against GMAC (the

"GMACM Claim," Obj. Ex. 1-A); and (2) claim number 5632 against ETS (the "ETS Claim,"

Obj. Ex. 1-B) (together, the "Claims").  The Objection is supported by the declaration of Deanna

Horst (the "Horst Declaration," Obj. Ex. 3-A), Chief Claims Officer for the ResCap Liquidating

Trust (the "Liquidating Trust"), and the declaration of Yaron Shaham (the "Shaham

Declaration," Obj. Ex. 3-B), co-counsel for the Liquidating Trust.

Rozier filed an opposition to the Objection (the "Opposition," ECF Doc. # 7620),

supported by a declaration (the "Rozier Declaration," Opp. Ex. A).  Rozier also filed two

motions to strike (the "Motions to Strike"):  (1) Rozier's motion to strike the Shaham

Declaration (the "Shaham Motion to Strike," Opp. Ex. B); and (2) Rozier's motion to strike the

Horst Declaration (the "Horst Motion to Strike," Opp. Ex. C).[1]

The Trust filed a reply (the "Reply," ECF Doc. # 7655) and an objection to Rozier's

Motions to Strike (the "Strike Objection," ECF Doc. # 7654).  Additionally, the Trust filed a

supplemental declaration of Deanna Horst (the "Supplemental Horst Declaration," ECF Doc.

# 7653), correcting certain errors made in the Horst Declaration, and submitting a corrected

exhibit to the Objection.  Rozier filed an objection to the Trust's Reply (the "Reply Objection,"

---

[1]    Each of the Motions to Strike is supported by a declaration of Karen Michele Rozier.

ECF Doc. # 7670), arguing that she was prejudiced by the fact that the Reply was filed less than

48 hours before the scheduled October 22, 2014 hearing (the "Hearing").  The Court heard

argument on the Objection and ordered the Trust to file a supplemental declaration addressing

one of the exhibits submitted in in support of the Trust's Objection.  (*See* Oct. 22, 2014 Hrg. Tr.

44:1–4, ECF Doc. # 7686.)  The Court also gave Rozier the opportunity to file supplemental

papers.  (*See id.* 44:6–21.)  Thereafter, the Trust filed the second supplemental declaration of

Deanna Horst (the "Second Supplemental Horst Declaration," ECF Doc. # 7679), and Rozier

filed a supplemental opposition and declaration (the "Supplemental Opposition," ECF Doc. #

7730).

### A.    Procedural History

On My 14, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition for

relief under chapter 11 of the Bankruptcy Code.  The general bar date to file proofs of claim was

originally set as November 9, 2012, and was extended to November 16, 2012 at 5:00 p.m.

(Prevailing Eastern Time) (ECF Doc. # 2093).  The Claims were timely filed on November 12,

2012.

### B.    Factual Background

#### 1.    *Rozier's Loan History*

On December 23, 2005, Rozier executed a $576,000 note in favor of WMC (the "Loan"

or the "Note," Obj. Ex. 3-A.1), secured by a mortgage and deed of trust (the "Deed of Trust,"

Obj. Ex. 3-A.2) on real property located at 7957 Dahlia Circle, Buena Park, California, 90620

(the "Property").  (Horst Decl. ¶ 11.)  Westwood Associates ("Westwood") was the trustee of the

Deed of Trust, which named Mortgage Electronic Registration Systems ("MERS") as the

4

beneficiary. (*Id.*) Rozier subsequently obtained a second loan in the amount of $144,000, secured by another deed of trust.[2] (*Id.*)

On May 22, 2006, Rozier entered into a modification of the Note with WMC, reducing Rozier's monthly payments, interest rate, and first change date (the "Modification of Note"). (*Id.* ¶ 13.) She signed the Modification of Note after receiving a letter from WMC (the "Notice of Right to Cancel," Obj. Ex. 3-A.3), dated February 24, 2006, notifying her that WMC did not provide a TILA disclosure statement with respect to her Loan. (*See* Horst Decl. ¶ 12.) The Notice of Right to Cancel informed Rozier that she had the option to rescind the Note, which she exercised on February 28, 2006. (*See id.*; "Rozier Rescission Letter," Obj. Ex. 3-A.4.) On May 5, 2006, WMC sent Rozier a letter (the "WMC Rescission Response," Ex. 3-A.5), acknowledging its receipt of the Rozier Rescission Letter and providing Rozier with the options of tendering the amount due on her Loan or modifying the Loan terms. (*See* Horst Decl. ¶ 12.) Rozier chose to enter into the Modification of Note, along with a modification of the Deed of Trust (the "Modification of Deed of Trust," Obj. Ex. 3-A.6), and a general release (the "Modification Release," Obj. Ex. 3-A.6). (*See* Horst Decl. ¶ 13.) All of this occurred *before* GMACM began servicing the Loan.

On October 3, 2006, servicing of the Loan was transferred to GMACM. (*See id.* ¶ 14.) Residential Funding Corporation ("RFC") became master servicer of the Note from January 1, 2007 until February 15, 2013, when servicing was transferred to Ocwen. (*Id.*) Rozier failed to make her monthly Loan payments beginning December 1, 2007. (*See id.* ¶¶ 15–16.)

On March 3, 2008, ETS was named substitute trustee of the Deed of Trust (the "March 2008 Substitution," Obj. Ex. 3-A.8).[3] (*See* Horst Decl. ¶ 15.) On the same day, ETS sent Rozier

---

[2]    This second loan is not the subject of this dispute.

a notice of default and election to sell under the Deed of Trust (the "March 2008 Default Notice," Obj. Ex. 3-A.9).[4]  (Horst Decl. ¶ 16.)  On April 23, 2008, Rozier and GMACM negotiated a repayment plan (the "Repayment Plan") that required Rozier to make a down payment on April 25, 2008, with three payments due in the subsequent three months.  (*See id.* ¶ 17.)  The down payment deadline was extended to April 29, 2008 upon Rozier's request.  (*See id.*)  GMACM cancelled the Repayment Plan on May 8, 2008, after Rozier failed to remit the required down payment to GMACM.  (*See id.*; Obj. Ex. 3-A.10.)  A notice of sale of the Property was recorded on June 6, 2008 and scheduled the sale for June 27, 2008.  (*See* Horst Decl. ¶ 18; Obj. Ex. 3-A.11.)  The sale was postponed.  (*See* Horst Decl. ¶ 18.)  From June 2008 until November 1, 2008, GMACM attempted to work with Rozier regarding a possible short sale.  (*See id.* ¶ 19.)  GMACM ceased its last short sale review after Rozier cancelled a sale with a prospective buyer.[5]  (*See id.*; Obj. Ex. 3-A.12.)

Following the failed repayment plan and short sale attempts, Rozier sent letters to the Debtors and other parties who subsequently acquired an interest in the Loan and servicing rights to the Loan (the "Rozier Letters," Obj. Ex. 3-A.22).  (Horst Decl. ¶ 28.)  The Rozier Letters contain allegations of "forged" signatures on the Deed of Trust and the Note, based on alleged discrepancies among serial numbers that appear on her Loan documents.  (*See id.*)  The Rozier Letters set forth that the Debtors violated the terms of TILA, the Real Estate Settlement Procedures Act ("RESPA"), and the Fair Debt Collection Practices Act.  (*See id.*)

---

[3]    The March 2008 Substitution was recorded on March 4, 2008.  (Horst Decl. ¶ 15; *see* Obj. Ex. 3-A.8.)

[4]    The March 2008 Default Notice was recorded on March 4, 2008.  (Horst Decl. ¶ 16; *see* Obj. Ex. 3-A.9.)

[5]    On December 15, 2009, ETS rescinded the March 2008 Default Notice (the "Notice of Rescission of Default Notice," Obj. Ex. 3-A.13).  (Horst Decl. ¶ 20.)  The Notice of Rescission of Default Notice was subsequently recorded on December 22, 2009.  (*See id.*)

The Debtors responded to the Rozier Letters (Obj. Ex. 3-A.23), sending her the documents she requested and concluding that there was "no basis to conclude that there were any errors in her file to warrant rescission." (*See* Horst Decl. ¶ 28.) On March 3, 2011, Westwood assigned its interest as trustee to Bank of America, N.A. ("BOA") pursuant to an assignment of the Deed of Trust (the "BOA Assignment," Obj. Ex. 3-A.14).[6] (Horst Decl. ¶ 21.) On April 4, 2011, ETS was named substitute trustee of the Deed of Trust (the "April 2011 Substitution," Obj. Ex. 3-A.15).[7] (Horst Decl. ¶ 21.) Due to Rozier's continued failure to bring the Loan current, ETS executed a notice of default and election to sell under the Deed of Trust (the "April 2011 Default Notice," Obj. Ex. 3-A.16) on April 8, 2011.[8] (Horst Decl. ¶ 22.) On July 25, 2011, Rozier transferred her interest in the Property to an irrevocable trust created for the benefit of certain family members (the "Rozier Trust"). (*See id.* ¶ 23; Obj. Ex. 3-A.17.)

GMACM foreclosed on the Loan on September 24, 2012 and ETS executed a deed upon sale of the Property (the "September 2012 Deed Upon Sale," Obj. Ex. 3-A.18).[9] (Horst Decl. ¶ 24.) On October 3, 2012, ETS rescinded the September 2012 Deed Upon Sale after discovering a defect in the applicable notice (the "Sale Rescission Notice," Obj. Ex. 3-A.19).[10]

---

[6]     BOA became trustee by succession following a merger of BOA with LaSalle National Association. (*See* Horst Decl. ¶ 21; Obj. Ex. 3-A.14.) The BOA Assignment was recorded on March 9, 2011. (*See* Horst Decl. ¶ 21; Obj. Ex. 3-A.14.)

[7]     The version of the April 2011 Substitution attached as Exhibit 3-A.15 to the Objection did not have a recording stamp indicating the date on which it was recorded; however, at the Hearing, the Trust maintained that a recorded version of the April 2011 Substitution existed. (*See* Oct. 22, 2014 Hrg. Tr. 29:19–25.) The Court directed the Trust to file a supplemental declaration attaching the recorded version of the April 2011 Substitution. (*Id.* 30:9–11.) Thereafter, the Trust filed the Second Supplemental Horst Declaration, attaching the April 2011 Substitution as recorded on April 11, 2011. (*See* Second Supp. Horst Decl. ¶ 4; *id.* Ex. 1.)

[8]     The April 2011 Default Notice was recorded on April 11, 2011. (*See* Horst Decl. ¶ 22; Obj. Ex. 3-A.16.)

[9]     The September 2012 Deed Upon Sale was recorded on September 26, 2012. (*See* Horst Decl. ¶ 24; Obj. Ex. 3-A.18.)

[10]     The Sale Rescission Notice was recorded on October 4, 2012. (*See* Horst Decl. ¶ 25; Obj. Ex. 3-A.19.)

(*Id.* ¶ 25.)  After curing the defect, ETS executed another notice of sale on October 12, 2012 (the "October 2012 Sale Notice," Obj. Ex. 3-A.20), scheduling a sale for November 13, 2012.[11]  (*Id.* ¶ 26.)  The October 2012 Sale Notice scheduled a sale for November 13, 2012, but the sale did not go forward because the Rozier Trust filed for bankruptcy protection shortly thereafter.  (*Id.* ¶ 26 n.8.)

Servicing was transferred to Ocwen on February 15, 2013.  (*See* Supp. Horst Decl. ¶ 5.)  On March 25, 2013, GMACM transferred all beneficial interests and rights in the Deed of Trust to US Bank, successor in interest to BOA.[12]  (*See id.*; *id.* Ex. A.)

2.      *Rozier's Litigation History*

On October 28, 2008, Rozier filed a complaint against GMACM and MERS in California state court, challenging the validity of the March 2008 Default Notice.  (*See* Obj. Ex. 4.)  The case was removed to the United States District Court for the Central District of California on August 18, 2009.  (*See id.*)  Rozier claimed that GMACM was illegally conducting business in California, that ETS was not a trustee to the Deed of Trust and Note, and that ETS was owned by GMACM.  (*See id.*)  Specifically, Rozier alleged (i) fraud; (ii) conspiracy to commit fraud; (iii) TILA violations; (iv) RESPA violations; (v) Fair Credit Reporting Act violations; and (vi) predatory lending.  (*See id.*)  The case was dismissed without prejudice after Rozier failed to file an opposition to GMACM's motion to dismiss.  (*See* "Order Granting GMACM's Motion to Dismiss," Obj. Ex. 7.)

On September 27, 2012, Rozier filed another complaint in California state court against GMACM, ETS, BOA, and several John Doe defendants (the "California Action").  (*See* Shaham

---

[11]      The October 2012 Sale Notice was recorded on October 16, 2012.  (*See* Horst Decl. ¶ 26; Obj. Ex. 3-A.20.) Additionally, on October 16, 2012, several local police officers accompanied the posting agent to Rozier's Property, allegedly due to perceived safety concerns that arose from prior threats allegedly made by Rozier.  (*See id.*)

[12]      This assignment was recorded on January 13, 2012.  (*See* Obj. Ex. 3-A.21.)

Decl. ¶ 4.)  In her first amended complaint filed in the California Action (the "Complaint," Obj.

Exs. 1-A at 3–71, 1-B at 5–76), Rozier alleged wrongful foreclosure claims against GMACM

and ETS, and sought compensation for damages.[13]  (*See* Shaham Decl. ¶ 4.)  Rozier denied

owing a debt to any of the defendants in the California Action.  (*See* Shaham Decl. ¶ 4.)  On

December 4, 2012, GMACM and ETS filed a notice of the automatic stay in the California

Action (the "Bankruptcy Notice").  (*See id.* ¶ 5; Obj. Ex. 3-B.1.)  Rozier amended her Complaint

on February 4, 2013, adding RFC as a defendant.  (*See* Shaham Decl. ¶ 6; Obj. Ex. 3-B.2.)  The

Debtors subsequently mailed Rozier a letter dated February 11, 2013 reminding her of the

Bankruptcy Notice and her potential violations of the automatic stay.  (*See* Shaham Decl. ¶ 6;

Obj. Ex. 3-B.3.)

On February 5, 2013, David Rozier, Sr., as trustee for the Rozier Trust, filed an ex-parte

application in California state court, seeking a temporary restraining order against US Bank to

prevent US Bank from foreclosing on the Property.  (*See* Shaham Decl. ¶ 7; Obj. Ex. 3-B.4.)

The California court granted a preliminary injunction against US Bank.  (*See* Shaham Decl. ¶ 7;

Obj. Ex. 3-B.5.)

In the California Action, Rozier received permission to file a third amended complaint

solely against BOA, US Bank, and RFC for wrongful foreclosure; nonetheless, Rozier again

amended her Complaint to include eight additional claims and also named Ocwen as a defendant.

(*See* Shaham Decl. ¶ 8.)  On November 21, 2013, Rozier's third amended complaint against RFC

was voluntarily dismissed without prejudice.  (*See id.* at ¶ 9.)  None of the Debtor entities are

currently parties to the California Action.

---

[13]     The Complaint was attached to Rozier's proofs of claim for both of her Claims.  (*See* Obj. Exs. 1-A, 1-B.)
All citations herein to the Complaint are to "Obj. Ex 1-A."

### 3. Rozier's Bankruptcy Case

Rozier filed a chapter 13 bankruptcy petition on August 22, 2011. (*See* Obj. Ex. 8.) On January 12, 2012, the case was converted to chapter 7. (*See* Obj. Ex. 9.) As of the date of the Objection, Rozier's bankruptcy case was still pending. (Obj. ¶ 51.) On June 18, 2012, US Bank filed a motion for relief from the automatic stay as to the Property, and Rozier filed a response. (*See* Obj. Ex. 11.) On June 30, 2012, the bankruptcy court entered an order lifting the stay. (*See id.*) Rozier then filed (1) an appeal to the Ninth Circuit Bankruptcy Appellate Panel (the "BAP") (*see* Obj. Ex. 12); (2) a motion for violation of the automatic stay (*see* Obj. Ex. 13); and (c) a notice of appeal to the United States Court of Appeals for the Ninth Circuit (the "Ninth Circuit") after the BAP affirmed the bankruptcy court's order lifting the stay (*see* Obj. Ex. 16). The Ninth Circuit appeal remains pending, but it does not name any of the Debtors as parties to the action. (*See id.*)

### 4. Rozier's Claims

On November 14, 2012, Rozier filed the GMACM Claim in the amount of $666,000.00 plus punitive damages. (*See* Obj. Ex. 1-A at 1.) The GMACM Claim is based on "wrongful foreclosure / IFR / Civil Case 30-2012-00601310 [the California Action.]" (*See id.*) Rozier appended the Complaint filed in the California Action to the GMACM Claim, asserting (1) wrongful foreclosure; (ii) temporary and permanent injunctive relief; (iii) violation of California Civil Code section 2923.5; (iv) violation of California Civil Code section 2924; (v) slander of title; (vi) violation of the UCL; (vii) negligence; (viii) defamation of character; and (ix) quiet title. (*See id.* at 3–71.) Rozier alleges that GMACM, as the loan servicer, had been improperly servicing and crediting Rozier's monthly payments to the allegedly rescinded Note rather than to

the allegedly separate note executed after rescission and in place of the Note.  (*See* Obj. ¶ 60.)

Rozier also alleges that the Deed of Trust on the Property is invalid.  (*See id.*)

On November 16, 2012, Rozier filed the ETS Claim in the amount of $666,000.00 plus

punitive damages.  (*See* Horst Decl. ¶ 30; Obj. Ex. 1-B at 1.)  The ETS Claim is based on "gross

negligence, harassment, other affirmative defenses raised 30-2012-00601310."  (*See* Obj. Ex. 1-

B at 1.)  As with the GMACM Claim, Rozier appended the Complaint filed in the California

Action to the ETS Claim.  (*See* Obj. Ex. 1-B at 5–76.)  Rozier alleges that ETS was not a legally

recognized corporation in California during the time it served as trustee of her Deed of Trust, and

therefore ETS violated both California and federal law by recording notices relating to Rozier's

default on her Note.  (*See* Obj. ¶ 61.)  Rozier also alleges that ETS caused embarrassment, loss of

employment, loss of credit, litigation costs, emotional duress, and a negative impact on her

husband's business.  (*See id.*)

### 5.    *Rozier's Prior Motions Before the Court*

Rozier has requested immediate payment of her Claims on several occasions:  (i)

$666,000.00 for the ETS Claim; and (ii) $29,175,120.01 for the GMACM Claim (the "Motions

for Payment," ECF Doc. # 6173, 6173-1, 6401, 6402).  The Trust points out that the face amount

of the GMACM Claim is $666,000.00, in contrast to the stated amount of $96,927,309.00

requested in the Motions for Payment.  (*See* Obj. ¶ 66; Obj. Ex. 1-A at 1.)  According to the

Trust, prior to Rozier filing the Motions for Payment, the Trust was not informed that Rozier had

increased the amount of the GMACM Claim from $666,000.00 to $96,927,309.00.  (*See* Obj. ¶

66.)  The Trust also notes that the Claims are classified as general unsecured claims in the first

Motion for Payment, but Rozier reclassified the Claims as administrative expense claims in

subsequent Motions for Payment.  (*See id.*)

11

The Trust filed an objection to the Motions for Payment (ECF Doc. # 6461), alleging that Rozier was not entitled to payment on her Claims since they were not yet deemed "Allowed Borrower Claims." (*See* Obj. ¶ 67.) Rozier filed a reply in support of her Motions for Payment (ECF Doc. # 6597), characterizing the Debtors' response as "nonresponsive, vague, and misleading" and challenging the Trust's right to evaluate and determine the allowance or disallowance of claims. (*See* Horst Decl. ¶ 36.)

The Court entered an order sustaining the Trust's objection to the Motions for Payment (ECF Doc. # 6519). Rozier filed a motion for reconsideration of the Court's order (ECF Doc. # 6861); the Trust filed an objection in response (ECF Doc. # 7004). (*See* Obj. ¶ 70.) The Court entered an order denying Rozier's motion for reconsideration (ECF Doc. # 7028); the same day, Rozier filed a motion to strike the Trust's objection to her Motions for Payment (ECF Doc. # 7047). (*See* Obj. ¶ 71.) Subsequently, the Court entered an order denying Rozier's motion to strike (ECF Doc. # 7055).

Rozier filed a second motion for reconsideration, alleging that the Clerk of the Court colluded with the Debtors, selectively choosing when to file documents on ECF. (*See* ECF Doc. # 7121.) The Court entered an order denying Rozier's second reconsideration motion and directing the Clerk of the Court not to accept any further pleadings by Rozier in connection with her Motions for Payment. (*See* ECF Doc. # 7210.)

### C.   The Objection

The Trust asserts that Rozier's Claims, which relate to causes of action brought against the Debtors prior to the petition date, are devoid of merit. (Obj. ¶ 2.) Her wrongful foreclosure claim purportedly fails under California's non-judicial foreclosure scheme, under which a homeowner like Rozier lacks standing to challenge the authority of a party to initiate foreclosure.

(*See id.* ¶¶ 2, 85–87.)  Moreover, Rozier has been delinquent on her Loan for the last six years,

and the Debtors had authority to foreclose on her Property.  (*See id.*)  According to the Trust,

Rozier mistakenly claims that her Note and Deed of Trust are void or voidable because she

purports to have rescinded both instruments; however, her subsequent modification of such

documents negated her earlier rescission notice.  (*Id.* ¶ 3.)  Even if her Claims had merit, they

cannot be brought by Rozier given her pending chapter 7 bankruptcy case; only the chapter 7

trustee would have standing to pursue such Claims.  (*Id.* ¶ 7.)

### D.    The Opposition and the Motions to Strike

Rozier argues that the Objection has no merit because the Trust has not met its burden of

proving her Claims fail while she has met her burden of establishing the validity of her Claims.[14]

(*See* Opp. ¶¶ 14–20.)  She states that the "Objection fails to rebut at least one essential element

of [her Claims]."  (*Id.* at 11.)  Rozier generally contests the validity of her Loan in light of the

allegedly rescinded Note and Deed of Trust, and she claims she was not in default at the time the

Debtors initiated foreclosure.  (*See id.* at 1.)

She also contends that the Horst Declaration and the Shaham Declaration contain untrue

statements and therefore moves to strike them in their entirety.  (*See id.* ¶¶ 2–3; *id.* Exs. B–C.)

The Shaham Motion to Strike sets forth that Shaham misstated material facts, including that

Rozier's Loan had been placed into a US Bank securitization trust rather than a BOA Residential

Asset Mortgage Products, Inc. ("RAMP") trust.  (*See* Opp. Ex. B ¶ 1.)  Rozier also contends that

Shaham engaged in outrageous behavior in the California Action, including by "falsely

prosecuting [Rozier] for 'workplace violence' . . . ."  (*Id.* ¶ 14.)  The Horst Motion to Strike sets

forth that Horst is unqualified and incompetent to provide her declaration.  (*See* Opp. Ex. C ¶¶ 1–

---

[14]    Rozier also purports to reply to the Trust's argument that she lacks standing (*see* Opp. ¶¶ 10–13); however,
this section of her Opposition only contains incoherent allegations of how the Debtors disrupted employment
opportunities for her and her husband (*see id.*).

4.) Rozier argues that the Horst Declaration contains a number of misstatements, omissions, and lies, and Rozier sets forth a series of alleged inconsistencies contained in the Horst Declaration. (*Id.* ¶¶ 7–26.)

### E.    The Reply and the Strike Objection

The Trust argues that, contrary to Rozier's assertion otherwise, the Trust sufficiently rebutted the prima facie validity of her Claims. (*See* Reply ¶ 3.) Rozier, on the other hand, fails to meet her burden of establishing the validity of the legal predicates of her Claims, including by showing any nexus between the Debtors' actions and her alleged damages. (*Id.* ¶ 1.) According to the Trust, Rozier only addresses a few of the several causes of action underlying her Claims; with respect to the causes of action she does address, she does not provide further legal or factual support but rather offers "unsubstantiated statements and allegations that do not support valid causes of action against the Debtors . . . ." (*Id.* ¶ 5.) The Trust reiterates that Rozier lacks standing to bring her Claims as a chapter 7 debtor, noting that Rozier has not provided the Trust with any notice of abandonment filed by the chapter 7 trustee in her bankruptcy case with respect to her estate's causes of action, and the chapter 7 trustee—who was noticed with the Objection— has not filed any response or otherwise contacted the Trust. (*See id.* ¶ 11.)

With respect to the Motions to Strike, the Trust argues they "are not only frivolous; [but] more importantly, they fail to meet the requisite legal standards required to warrant the Court's striking either the Horst Declaration or the Shaham Declaration." (Strike Obj. ¶¶ 2, 12–13.) According to the Trust, the Motions to Strike misconstrue the statements contained in the Objection's supporting declarations and contain baseless allegations against the declarants. (*Id.* ¶ 1.) The Trust contends that both the Horst Declaration and the Shaham Declaration are based on the personal knowledge of the declarants. (*See id.* ¶¶ 3–4.) The Trust concedes that the Horst

14

Declaration contained certain errors, but notes that the Supplemental Horst Declaration sought to correct those erroneous statements premised on a mistakenly filed document.  (*See id.* ¶¶ 13 n.3, 15.)

## II.    DISCUSSION

### A.    Motions to Strike

Under Rule 12(f) of the Federal Rules of Civil Procedure, a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  FED. R. CIV. P. 12(f).  Rozier's Motions to Strike are improper because Rule 12(f) "allows a court to strike *pleadings* only."  *Granger v. Gill Abstract Corp.*, 566 F. Supp. 2d 323, 334 (S.D.N.Y. 2008) (emphasis added) (citations omitted).  "Motions, declarations and affidavits are not pleadings."  *Id.* at 335 (citing FED. R. CIV. P. 7(a) (defining pleadings as the complaint, answer, counter- and crossclaims); *Sierra v. United States*, No. 97 Civ. 9329 (RWS), 1998 WL 599715, at *9 (S.D.N.Y. Sept. 10, 1998) (denying plaintiff's motion to strike defendant's motion to dismiss because a motion is not a pleading)).  The Motions to Strike are therefore denied because they do not comport with Federal Rule of Civil Procedure 12(f).

Moreover, the Motions to Strike fail to the extent that they seek to strike inconsistent testimony in the Objection's supporting declarations since "Rule 12(f) does not allow a document to be stricken because it is allegedly inconsistent with a previous position."  *Id.*; *see Trinidad v. Pret a Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 553 (S.D.N.Y. 2013) ("The mere fact that testimony is inconsistent is insufficient to justify striking an entire document.") (citation omitted).  The Supplemental Horst Declaration corrected certain erroneous statements contained in the Horst Declaration and documents filed therewith.  (*See generally* Supp. Horst Decl.)  The Court has appropriately weighed and considered the allegations made by all parties, and provided

Rozier with additional time to respond to the Trust's arguments and supporting declarations.

The Motions to Strike are **DENIED**.[15]

### B.    Standing

The Trust argues that Rozier lacks standing to bring her Claims because she is currently,

and was at the time she filed the Claims, a debtor in a chapter 7 bankruptcy case; thus, only the

chapter 7 trustee has standing.  Under chapter 7 of the Bankruptcy Code, a trustee is appointed as

representative of the estate and is vested with control over the property of the estate, including

causes of action that arose prepetition.  11 U.S.C. §§ 323(a), 704.  Courts hold that the chapter 7

trustee has the exclusive power to assert prepetition legal claims on behalf of the estate.  *See,*

*e.g.*, *In re Spirtos v. One San Bernardino Cnty. Super. Ct. Case No. SPR 0221*, 443 F.3d 1172,

1176 (9th Cir. 2006) ("[T]he bankruptcy code endows the bankruptcy trustee with the exclusive

right to sue on behalf of the estate."); *Moneymaker v. Coben (In re Eisen)*, 31 F.3d 1447, 1451

n.2 (9th Cir. 1994) (holding that debtor lacked standing to appeal orders dismissing adversary

proceedings brought by chapter 7 trustee, because trustee was representative of estate and

therefore "the proper party in interest and the only person with standing to appeal the bankruptcy

court's order" (quoting *Hancock Bank v. Jefferson*, 73 B.R. 183, 185 (Bankr. S.D. Miss. 1986))).

"[A] Chapter 7 debtor may not prosecute on his or her own a cause of action belonging to the

---

[15]    To the extent that Rozier objects to the admissibility of the Horst Declaration and the Shaham Declaration, the Court finds that both the Horst Declaration and the Shaham Declaration are admissible.  Horst is the Chief Claims Officer of the Liquidating Trust.  (Horst Decl. ¶ 1.)  The Horst Declaration describes the claims reconciliation process carried out under her direction and supervision, specifically addressing Rozier's Claims.  (*See id.* ¶¶ 1, 3, 11–33.)  Horst also states that she is qualified to testify regarding the contents of the Debtors' books and records.  (*See id.* ¶ 2.)  She has personal knowledge regarding these facts.  While she states that she spoke with others in the process of her review and reconciliation of claims (*see id.* ¶ 2), she does not repeat their statements.  The Horst Declaration simply does not contain hearsay.  Similarly, Shaham is an attorney with Severson & Werson, P.C., co-counsel to the Liquidating Trust.  (Shaham Decl. ¶ 1.)  The Shaham Declaration describes the chronology of the California Action.  (*See id.* ¶¶ 4–14.)  Shaham states that he is qualified to testify regarding the California Action based upon his personal knowledge.  (*Id.* ¶ 3.)  While he states that he spoke with others in the process of his review of the Debtors' litigation history with Rozier (*see id.*), he does not repeat their statements.  The Shaham Declaration also does not contain hearsay.

bankruptcy estate unless the claim has been abandoned by the trustee." *Bostonian v. Liberty Savs. Bank*, 61 Cal. Rptr. 2d 68, 71 (Ct. App. 1997) (citations omitted).

Whether Rozier has standing turns on whether her claims accrued before or after the chapter 7 petition date:  claims that accrued prepetition become property of her estate and may only be brought by the chapter 7 trustee, while claims that accrued postpetition did not become property of her chapter 7 estate and may be asserted by Rozier.  *See Griffin v. Allstate Ins. Co.*, 920 F. Supp. 127, 130 (C.D. Cal. 1996) (finding that chapter 7 debtor lacked standing to assert causes of action accruing prepetition, because such causes of action were property of the estate and "remain[ed] part of the bankruptcy estate unless the bankruptcy trustee abandons them" (citing 11 U.S.C. § 554(d))).

Rozier filed a chapter 13 bankruptcy petition on August 22, 2011 (Obj. Ex. 8), and on January 12, 2012 the case was converted to chapter 7 and a chapter 7 trustee was appointed (*id.* Ex. 9).  Her Claims were filed on November 12 and 16, 2012, while Rozier was still a chapter 7 debtor.  (*See* Obj. Exs. 1-A, 1-B.)  The Trust conceded at the Hearing that Rozier did not lack standing to bring the totality of her Claims; Rozier has standing to assert the asserted causes of action that accrued after January 12, 2012—the date Rozier's chapter 13 case was converted to chapter 7.  (*See* Oct. 22, 2014 Hrg. Tr. 11:5–8.)  The Trust therefore acknowledged that Rozier would have standing to bring her causes of action for intentional infliction of emotional distress, wrongful foreclosure, negligence, defamation, violation of the UCL, and claims based on false instruments to the extent such claims accrued after January 12, 2012.  (*See id.* 12:17–14:7.)  With respect to all claims based on events occurring prior to January 12, 2012, the Trust maintained that Rozier lacks standing to bring such claims.  (*See id.* 11:18–12:11.)

Rozier attaches to her Supplemental Opposition a document purporting to be an email to her from the chapter 7 trustee of her estate, in which the trustee indicates that he does not object to Rozier asserting claims she may possess in the Debtors' chapter 11 cases so long as any distribution received on account of such claims is held pending the trustee's further instruction. (Supp. Opp. Ex. 7.)  However, section 554 of the Bankruptcy Code provides that notice and a hearing is required to abandon estate property.  11 U.S.C. § 554(a)–(b); *see also Pace v. Battley (In re Pace)*, 146 B.R. 562, 564 (9th Cir. B.A.P. 1992) ("Abandonment pursuant to § 554(a) or (b), according to Federal Rule of Bankruptcy Procedure 6007, requires notice, a hearing, and an order of the court authorizing the abandonment.") (citations omitted).  "Section 554(d) explicitly provides that when property is not effectively abandoned in accordance to § 554(a), it remains property of the estate." *Holta v. Zerbetz (In re Anchorage Nautical Tours, Inc.)*, 145 B.R. 637, 642 (9th Cir. B.A.P. 1992).  Abandonment is only effective if notice and a hearing is provided to creditors.  *Id.* (finding that assigned vessel remained property of the debtors' estate since notice and a hearing was not provided to creditors).  Because Rozier's chapter 7 trustee has not formally sought and obtained approval of the abandonment of the claims against the Debtors, they remain property of her estate.  Accordingly, Rozier lacks standing to assert any claims arising prior to January 12, 2012.

### C.    Claims Objections

Correctly filed proof of claims "constitute prima facie evidence of the validity and amount of the claim . . . .  To overcome this prima facie evidence, an objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000).  By producing "evidence equal in force to the prima facie case," an objector can negate a claim's

presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a

preponderance of the evidence that under applicable law the claim should be allowed." *Creamer*

*v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, No. 12 Civ. 6074 (RJS),

2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted).  If the

objector does not "introduce[] evidence as to the invalidity of the claim or the excessiveness of

its amount, the claimant need offer no further proof of the merits of the claim."  4 COLLIER ON

BANKRUPTCY ¶ 502.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014); *see In re

Residential Capital, LLC*, 518 B.R. 720, 731 (Bankr. S.D.N.Y. 2014).

Bankruptcy Code section 502(b)(1) provides that claims may be disallowed if

"unenforceable against the debtor and property of the debtor, under any agreement or applicable

law."  11 U.S.C. § 502(b)(1).  To determine whether a claim is allowable by law, bankruptcy

courts look to "applicable nonbankruptcy law."  *In re W.R. Grace & Co.*, 346 B.R. 672, 674

(Bankr. D. Del. 2006).

Federal pleading standards apply when assessing the validity of a proof of claim.  *See,

e.g.*, *Residential Capital*, 518 B.R. at 731; *In re DJK Residential LLC*, 416 B.R. 100, 106 (Bankr.

S.D.N.Y. 2009) ("In determining whether a party has met their burden in connection with a proof

of claim, bankruptcy courts have looked to the pleading requirements set forth in the Federal

Rules of Civil Procedure.") (citations omitted).  Accordingly, Rozier must allege "enough facts

to state a claim for relief that is plausible on its face." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604

F.3d 703, 709 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Where a

complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the

line between possibility and plausibility of entitlement to relief."  *Iqbal*, 556 U.S. at 678 (citation

and internal quotation marks omitted).  Plausibility "is not akin to a probability requirement," but

rather requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

(citation and internal quotation marks omitted). The court must accept all factual allegations as

true, discounting legal conclusions clothed in factual garb. *See, e.g.*, *id.* at 677–78; *Kiobel v.*

*Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (stating that a court must

"assum[e] all well-pleaded, nonconclusory factual allegations in the complaint to be true" (citing

*Iqbal*, 556 U.S. at 678)). The court must then determine if these well-pleaded factual allegations

state a "plausible claim for relief." *Iqbal*, 556 U.S. at 679 (citation omitted).

Courts do not make plausibility determinations in a vacuum; it is a "context-specific task

that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

(citation omitted). A claim is plausible when the factual allegations permit "the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation

omitted). A claim that pleads only facts that are "merely consistent with a defendant's liability"

does not meet the plausibility requirement. *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 557 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of

the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal

quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice." *Id.* (citation omitted). "The pleadings must

create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l*

*Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted).

To support her claims grounded in fraud, Rule 9(b) of the Federal Rules of Civil

Procedure require Rozier to "state with particularity the circumstances constituting fraud or

mistake." FED. R. CIV. P. 9(b). "In order to meet the particularity requirement of Rule 9(b), a

plaintiff [must] allege the time, place, and content of the misrepresentations on which he or she

relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting

from the fraud." *Ind. State Dist. Council of Laborers & HOD Carriers Pension & Welfare Fund*

*v. Omnicare, Inc.*, 719 F.3d. 498, 503 (6th Cir. 2013) (alteration in original) (internal quotation

marks omitted).

Although "[claims] drafted by *pro se* [claimants] are to be construed liberally, [] they

must nonetheless be supported by specific and detailed factual allegations sufficient to provide

the court and the defendant with 'a fair understanding of what the [claimant] is complaining

about and . . . whether there is a legal basis for recovery.'" *Kimber v. GMAC Mortgage, LLC (In*

*re Residential Capital, LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (quoting *Iwachiw v.*

*New York City Bd. of Elections*, 126 Fed. App'x 27, 29 (2d Cir. 2005)) (ellipsis in original).

### D.    Rozier's Claims

#### 1.    Wrongful Foreclosure

The Trust argues that Rozier's wrongful foreclosure claim is meritless for three reasons.

First, GMACM and ETS had the right to foreclose on the Property following Rozier's continued

payment defaults beginning December 2007.  (Obj. ¶ 83.)  The Trust further asserts that the

Debtors' foreclosure on Rozier's Property was initiated pursuant to a valid Note and Deed of

Trust; the Note and Deed of Trust that Rozier purports to have rescinded were validly modified,

effectively waiving Rozier's rescission.  (*Id.* ¶¶ 83–84.)

Second, the Trustee contends that Rozier lacks standing to challenge the Debtors'

foreclosure, because the California statute enabling nonjudicial foreclosure sales does not permit

judicial actions to determine whether "the party initiating foreclosure is so authorized . . . ."  (*Id.*

¶ 86.)  Additionally, since Rozier transferred her interest in the Property to the Rozier Trust in

July 2011, the Trust argues that Rozier no longer has an interest in the Property and therefore lacks standing to challenge the foreclosure. (*Id.* ¶ 87.)

Third, the Trust alleges that "a prerequisite to challenging a foreclosure sale [under California law] is tendering the amount owed under the promissory note, or at least making a good faith allegation that the plaintiff is ready and able to make such a tender." (*Id.* ¶ 91.) While Rozier asserts that she has repeatedly offered to tender payment for her May 28, 2006 loan but refuses to tender payment for any amounts due on the purportedly rescinded Note, the Trust contends that the Note is the only valid Note and is the subject of all foreclosure activity. (*Id.* ¶ 92.) Since Rozier has not tendered payment and has stated that she does not intend to tender payment, the Trust asserts that she cannot challenge the foreclosure action. (*Id.*)

While Rozier's arguments in response are disjointed and fragmented, the gravamen of her wrongful foreclosure claim is that she validly rescinded her Note on February 28, 2006. (Motion to Strike Horst Declaration at 13.) Rozier states that within twenty days of rescinding the Note, she asked WMC to return her to her original position and WMC failed to respond. (*Id.* at 14.) After WMC failed to respond, she hired an attorney who allegedly contacted WMC and "informed them that the rescinded Note was a nullity and that they were required by law to put [her] back in [her] original position." (*Id.*)

Rozier also claims that she was not in default when the Debtors declared default in March 2008. (Opp. at 2.) Rozier asserts that "she offered several times to honor the June 1, 2006 [Note] if Debtors would demonstrate it had that Note." (Mot. Strike Horst Decl. at 14.) She adds that no tender is required, as she was able to obtain injunctive relief in the California Action without paying the amount sought by US Bank. (*See* Opp. ¶ 9; Rozier Decl. ¶ 27.) However, the Trust contends that Rozier misunderstands that she was able to obtain injunctive relief upon

payment of a $5,000 bond, per California law, which is not the same as satisfying the tender rule.

(Reply ¶ 8–9.)  The Trust also asserts that "[t]here is no evidence that any California court in any

of Rozier's matters has ruled that the tender rule is inapplicable and not a requirement for

success on the merits of a wrongful foreclosure claim."  (*Id.* ¶ 9.)

A claim for wrongful foreclosure in California requires a plaintiff to allege that

> (1) the trustee or mortgagee caused an illegal, fraudulent, or
> willfully oppressive sale of real property pursuant to a power of
> sale in a mortgage or deed of trust; (2) the party attacking the sale
> (usually but not always the trustor or mortgagor) was prejudiced or
> harmed; and (3) in cases where the trustor or mortgagor challenges
> the sale, the trustor or mortgagor tendered the amount of the
> secured indebtedness or was excused from tendering.

*Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1145 (N.D. Cal. 2013) (citations

omitted).  "A sale of real property is illegal if the trustee did not have the power to foreclose

under the deed of trust."  *Kilpatrick v. U.S. Bank, N.A.*, No. 12–CV–1740 W (NLS), 2013 WL

4525571, at *3 (S.D. Cal. Aug. 26, 2013) (citing CAL. CIV. CODE § 2924(a)(1); *Gomes v.

Countrywide Home Loans, Inc.*, 192 Cal. App. 4th 1149, 1151 (Ct. App. 2011)).

Although Rozier's wrongful foreclosure claim rests on the allegation the February 2006

rescission of the Note and Deed of Trust stripped the Debtors of their ability to foreclose, the

Trust argues that Rozier waived her right to rescind the Note and Deed of Trust by entering into

the Modification of Note and the Modification of Deed of Trust, respectively.  (*See* Obj. ¶ 83

(citing *Ramsey v. Vista Mortgage Corp. (In re Ramsey)*, 176 B.R. 183 (9th Cir. B.A.P. 1994)).)

In *Ramsey*, a chapter 11 debtor brought an adversary proceeding seeking rescission of a home

refinancing loan for violation of TILA's disclosure requirements.  *See Ramsey*, 176 B.R. at 185–

86.  After entering into the original loan agreement, the debtor gave notice of his three-day right

to cancel the loan under TILA.  *Id.* at 185.  Two days after the debtor exercised such cancellation

right, he "withdrew his cancellation in a handwritten note and requested that [the lender] proceed

with the loan." *Id.* After the bankruptcy court granted summary judgment in favor of the lender,

the Ninth Circuit Bankruptcy Appellate Panel affirmed on several independent grounds,

including that the debtor would "not be entitled to rescind the loan agreement, having already

exercised and waived his right of rescission with full knowledge of the loan modification." *Id.* at

189.

Rozier contends that she intended to rescind the original Note and Deed of Trust and

subsequently entered into a new loan in June 2006. (*See* Opp. at 2.) She states that within

twenty days of rescinding the December 2005 note, she asked WMC to return her to her original

position and WMC failed to respond. (Horst Motion to Strike at 14.) At the Hearing, Rozier

indicated that she submitted "loan closing documents from the June 1st loan," including an

"itemization of amount financed in the three-day closing, which is all dated June 1st, 2006."

(Oct. 22, 2014 Hrg. Tr. 42:12–17.) However, this document submitted and referenced by Rozier

is a TILA disclosure statement provided in connection with her Modification of Note, not

evidence of her entry into a new loan. (*See* Shaham Motion to Strike Ex. 16; Oct. 22, 2014 Hrg.

Tr. 43:2–25.)

The Trust does not dispute that WMC did not respond to the Rozier Rescission Letter

until May 5, 2006, at which time WMC provided her with the option of modifying the terms of

her Loan. (*See* Obj. ¶ 19.) However, the WMC Rescission Response to Rozier unequivocally

presented mutually exclusive options: tender the balance of the Loan to WMC or enter into a

modified Loan. (*See id.*; *id.* Ex. 3-A.5.) Moreover, the Modification Release executed by Rozier

clearly states, "[b]y signing below, I affirm that I do not wish to rescind this loan, and that I

agree to the terms and conditions as outlined in the loan documents." (*See id.* Ex. 3-A.6.)

Accordingly, the Trust has established that Rozier waived her right to rescind the Note.

Additionally, ETS had the authority to commence foreclosure on Rozier's Property. "Under California Civil Code section 2924(b)(4), a 'person authorized to record the notice of default or the notice of sale' includes 'an agent for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed substitution of trustee, or an agent of that substituted trustee.'" *Halajian v. Deutsche Bank Nat'l Trust Co.*, No. 1:12-CV-00814 (AWI) (GSA), 2013 WL 593671, at *5 (E.D. Cal. Feb. 14, 2013). First, MERS, as the named beneficiary, had the authority to substitute ETS as a trustee under the Deed of Trust. *Cedano v. Aurora Loan Servs., LLC (In re Cedano)*, 470 B.R. 522, 532 (9th Cir. B.A.P. 2012) ("Numerous cases have held that, as the nominee for the lender under a deed of trust, MERS has authority to substitute a trustee.") (citations omitted). Second, under California law, a substitution of trustee is only required to be executed, not recorded, before a notice of default is recorded. *Id.* ("[T]here is no requirement that [a] Substitution of Trustee be recorded, only that it be executed." (citing CAL. CIV. CODE § 2924(b)(4); *Padayachi v. IndyMac Bank*, No. C 09-5545 (JF), 2010 WL 4367221, at *3 (N.D. Cal. Oct. 28, 2010))); *see also Myers v. Encore Credit*, No. CIV S-11-1714 (KJM), 2012 WL 4511033, at *13 (E.D. Cal. Sept. 30, 2012) (citation omitted).

Here, each substitution of trustee was recorded (1) before or concurrently with the recordation of the relevant notice of default; and (2) prior to the recordation of the relevant notice of sale. On March 3, 2008, MERS, as nominee for WMC, substituted ETS as trustee under the Deed of Trust; this substitution was recorded on March 4, 2008. (*See* Horst Decl. ¶ 15; Obj. Ex. 3-A.8.) Also on March 3, 2008, ETS executed the March 2008 Notice of Default, which was recorded on March 4, 2008. (*See* Horst Decl. ¶ 16; Obj. Ex. 3-A.9.) On December 15, 2009, ETS executed the Notice of Rescission of Default Notice, which was recorded on December 22,

2009.  (*See* Horst Decl. ¶ 20; Obj. Ex. 3-A.13.)

On March 3, 2011, Westwood's interest as trustee under the Deed of Trust was assigned to BOA pursuant to the BOA Assignment.  (*See* Horst Decl. ¶ 21; Obj. Ex. 3-A.14.)  BOA substituted ETS as trustee under the Deed of Trust on April 4, 2011 pursuant to the April 2011 Substitution (*see* Horst Decl. ¶ 21), which was recorded on April 11, 2011 (*see* Second Supp. Horst Decl. ¶ 5; *id.* Ex. 1).  ETS executed the April 2011 Default Notice on April 8, 2011, which was recorded on April 11, 2011.  (*See* Horst Decl. ¶ 22; Obj. Ex. 3-A.16.)

The Trust has rebutted the prima facie validity of Rozier's wrongful foreclosure claim, and she has not established the validity of such claim by a preponderance of the evidence.  The Objection is therefore **SUSTAINED** with respect to Rozier's wrongful foreclosure claim.[16]

### 2.  *Temporary and Permanent Injunction on Foreclosure*

The Trust argues that Rozier is unable to establish that injunctive relief is appropriate as an independent legal theory.  (*See* Obj. ¶ 94.)  According to the Trust, injunctive relief must be tethered to a separate legal claim and, since Rozier's wrongful foreclosure claim is meritless, so too is the injunctive relief she seeks.  (*See id.*)  Alternatively, since the Debtors no longer service Rozier's Loan and therefore no longer have any role in foreclosing on her Property, the Trust asserts that injunctive relief against the Debtors is moot.  (*Id.* ¶ 95.)  Rozier does not appear to make any arguments in rebuttal in her Opposition or otherwise.

The Trust has established via uncontroverted evidence that the Debtors no longer service her Loan or hold any interest therein.  Accordingly, any injunctive relief with respect to a foreclosure action on her Property would be moot as to the Debtors.  The Objection is **SUSTAINED** with respect to Rozier's requests for injunctive relief.

---

[16]     Consequently, the Court need not decide whether Rozier is required to tender the balance on her Loan as a precondition to asserting a wrongful foreclosure claim.

3.      *California Civil Code Section 2923.5*

Rozier argues that the Debtors violated California Civil Code section 2923.5 by failing to

contact her to discuss or assess her financial situation prior to issuing a notice of default.  (*See*

Obj. Ex. 1-A at 57–59.)  Rozier claims that she contacted the Debtors' loss mitigation

department on at least two occasions in September 2012, but "they refused to speak with her."

(*Id.* at 58–59.)  According to the Trust, the Debtors in fact contacted Rozier by mail and

telephone to set up numerous repayment plans and a short sale workout package; they

subsequently cancelled these repayment plans after her failure to respond and Rozier cancelled

the 2008 short sale herself.  (Obj. ¶ 99 (citing Horst. Decl. ¶¶ 17–18).)  The Trust contends that

the Court may take judicial notice of the applicable notices of default to show that Rozier does

not state a claim under California Civil Code section 2923.5.  (*Id.* ¶ 98 (citations omitted).)

Section 2923.5 of the California Civil Code requires a mortgagee, beneficiary, or

authorized agent to contact the borrower in person or by telephone "in order to assess the

borrower's financial situation and explore options for the borrower to avoid foreclosure."  CAL.

CIV. CODE § 2923.5(a).  Section 2923.5 also provides that:

> [a] notice of default recorded pursuant to Section 2924 shall
> include a declaration that the mortgage servicer has contacted the
> borrower, has tried with due diligence to contact the borrower as
> required by this section, or that no contact was required because
> the individual did not meet the definition of "borrower" pursuant to
> subdivision (c) of Section 2920.5.

*Id.* § 2923.5(b).  "All that the statute requires is for Defendants to contact or attempt to contact

Plaintiffs in a good faith effort to avoid foreclosure."  *Quintero Family Trust v. OneWest Bank,*

*F.S.B.*, No. 09-1561, 2010 WL 392312, at *14 (S.D. Cal. Jan. 27, 2010) (citing *Ortiz v.*

*Accredited Home Lenders, Inc.*, 639 F. Supp. 2d 1159, 1166 (S.D. Cal. 2009)).

The plaintiff in *Quintero* brought a claim under California Civil Code section 2923.5, asserting that the defendant did not properly contact or attempt to contact the plaintiff before issuing the notice of default. *Quintero*, 2010 WL 392312, at \*14. The court held that the plaintiff's claim failed because the notice of default at issue sufficiently demonstrated that the defendant *had* contacted the plaintiff prior to issuing the notice. *Id*. The notice of default stated in pertinent part:

> The Beneficiary or its designated agent declares it has contacted the borrower, tried with due diligence to contact the borrower as required by California Civil Code § 2923.5, or the borrower has surrendered the property to the beneficiary or authorized agent, or is otherwise exempt from the requirements of § 2923.5.

*Id.* at \*14 n.11. The court dismissed the claim without prejudice, affording the plaintiff an opportunity to amend the complaint to contest the accuracy of the statement in the notice of default. *Id*. at \*14.

Despite the Trust's contentions, there does not appear to be a similar declaration in the March 2008 Default Notice. (*See* Obj. Ex. 3-A.9.) Thus, the March 2008 Default Notice on its own does not establish that the Debtors complied with California Civil Code section 2923.5. Additionally, the Debtors' alleged contact made with Rozier regarding repayment plan options and the short sale work out plan were all made *after* the March 2008 Default Notice was issued. (*See* Obj. ¶¶ 24–25.) The first such contact was allegedly made over a month after the March 2008 Default Notice was executed, on April 23, 2008. (*See id.* ¶ 24.) Rozier defaulted on her Loan after failing to make required Loan payments beginning December 1, 2007. (Horst Decl. ¶ 15.) The Trust does not provide evidence demonstrating that the Debtors made any contact with Rozier from December 1, 2007 through March 3, 2008.

However, the "sole remedy for a failure to comply with California Civil Code section 2923.5 is 'limited to postponement of an impending foreclosure.'" *Cedano*, 470 B.R. at 533 (quoting *Bascos v. Fed. Home Loan Mortg. Corp.*, No. CV 11-3968 (JFW), 2011 WL 3157063, at *6 (C.D. Cal. July 22, 2011)). The Debtors neither service Rozier's Loan nor have any interest in the Deed of Trust. (*See* Supp. Horst Decl. ¶ 5.). Accordingly, there is no remedy available against the Debtors' for their failure to follow the requirements of section 2923.5, *see Stebley v. Litton Loan Servicing, LLP*, 134 Cal. Rptr. 3d 604, 607 (Ct. App. 2011) ("Civil Code section 2923.5 does not provide for damages, or for setting aside a foreclosure sale . . . ."), and the Objection is hereby **SUSTAINED** with respect to this count.

### 4.    *California Civil Code Section 2923.6*

Rozier also asserts that the Debtors violated California Civil Code section 2923.6 by failing to offer her a loan modification. (Obj. Ex. 1-A at 59.) The Trust argues that the Debtors were not obligated or required to modify Rozier's loan, and in any event, California Civil Code section 2923.6 does not give rise to a private right of action.

The Trust is correct. A number of California courts have held that section 2923.6 does not provide a private right of action to borrowers. *See, e.g.*, *Rodriguez v. JP Morgan Chase & Co.*, 809 F. Supp. 2d 1291, 1296 (S.D. Cal. 2011) ("Section 2923.6 does not require loan servicers to modify loans, and it does not create a private right of action for borrowers." (citing cases)); *Gaitan v. Mortg. Elec. Registration Sys.*, No. 09-CV-1009, 2009 WL 3244729, at *7 (C.D. Cal. Oct. 5, 2009) (holding that section 2923.6 "clearly does not create a private right of action"); *Pittman v. Barclays Cap. Real Estate, Inc.*, No. 09-CV-0241, 2009 WL 1108889, at *3 (S.D. Cal. Apr. 24, 2009) (holding that section 2329.6 creates a duty owed by the loan servicer to

a loan pool member, but does not confer standing on a borrower to contest that duty).

Accordingly, the Objection is **SUSTAINED** with respect to this claim.

> 5.    *California Civil Code Section 2924*

Rozier claims that ETS violated California Civil Code section 2924 because ETS was not

properly substituted under the Deed of Trust's covenants and thus had no legal authority to carry

out their actions relating to foreclosure under the statute.  (Obj. Ex. 1-A at 59.)  The Deed of

Trust provides that a substitution of trustee is required to be executed and recorded.  (Obj. Ex. 3-

A.2 ¶ 24.)  As discussed above in the analysis of Rozier's wrongful foreclosure claim, all such

substitutions were properly executed and recorded in accordance with California law, and ETS

had authority to foreclose on the Property.

Rozier also argues that ETS did not satisfy California Civil Code section 2924(a)(1)(C)

by failing to set forth the nature of the applicable breach known to the "unnamed beneficiary" in

a notice of default (*see* Obj. Ex. 1-A at 59), and it posted a notice of sale to her front door that

did not identify the beneficiary at whose request the sale is being conducted as required by

California Civil Code section 2924f (*id.* at 60).

California Civil Code section 2924(a)(1)(C) requires a notice of default to include "[a]

statement setting forth the nature of each breach actually known to the beneficiary and of his or

her election to sell or cause to be sold the property to satisfy that obligation and any other

obligation secured by the deed of trust or mortgage that is in default."  CAL CIV. CODE §

2924(a)(1)(C).  Section 2924f of the California Civil Code expressly provides that a notice of

sale need not contain the name and address of the beneficiary where "a legal description or a

county assessor's parcel number and either a street address or another common designation of

the property is given . . . ."  *Id.* § 2924f(5).  The April 2011 Default Notice contains a statement

detailing the nature of Rozier's default.  (*See* Obj. Ex. 3-A.16.)  Each of the notices of sale

provided to the Court includes both an assessor's parcel number as well as a street address for

the Property.  (*See* Obj. Exs. 3-A.11, -20; Obj. Ex. 1-A at 98–99, 104.)  Rozier has failed to

satisfy her burden of establishing that the Debtors violated California Civil Code section 2924,

and the Objection is therefore **SUSTAINED** with respect to this claim.

6.    *Slander of Title*

To state a claim for slander of title under California law, a plaintiff must allege "(1) a

publication; (2) which is false; (3) which is without privilege or justification[;] and (4) which

causes direct and immediate pecuniary loss."  *Pratrap v. Wells Fargo Bank, N.A.*, --- F. Supp. 2d

----, 2014 WL 3884413, at *4 (N.D. Cal. Aug. 7, 2014) (quoting *Manhattan Loft, LLC v.*

*Mercury Liquors, Inc.*, 173 Cal. App. 4th 1040, 1051 (Ct. App. 2009)).  Rozier argues that "ETS

slandered [her] title when it accepted the substitution [of trustee] and began pretending to act as

trustee."  (Obj. Ex. 1-A at 61.)  The gravamen of her claim is that ETS did not have the requisite

authority to file notices of default and sale and aid in foreclosing on the property, and therefore

such notices were false.  As set forth above, ETS had the authority to act as substitute trustee

under the Deed of Trust; the notices of default and sale were not "false" by virtue of ETS's

authority to act as a substitute trustee.

Additionally, Rozier's slander of title claim fails because she fails to establish by a

preponderance of the evidence that she suffered a pecuniary harm as a proximate result of ETS's

actions.  *See Sumner Hill Homeowners' Ass'n, Inc. v. Rio Mesa Holdings, LLC*, 141 Cal. Rptr.

3d 109 (Ct. App. 1012) ("The pecuniary loss for which a publisher of injurious falsehood is

subject to liability is restricted to [¶] (a) the pecuniary loss that results directly and immediately

from the effect of the conduct of third persons, including impairment of vendibility or value

caused by disparagement, and [¶] (b) the expense of measures reasonably necessary to counteract

the publication, including litigation to remove the doubt case upon vendibility or value by

disparagement." (quoting RESTATEMENT (SECOND) OF TORTS § 633(1))) (alteration and internal

quotation marks omitted).  While Rozier makes the conclusory allegation that she "suffered

general and special damages" as a result of ETS's actions, she does not provide any factual

allegations supporting this claim.  Accordingly, the Objection is **SUSTAINED** with respect to

this count.

7.    *Negligence*

Rozier also asserts a negligence claim against the Debtors.  As to ETS, Rozier alleges

that ETS owed her a duty to exercise reasonable care and skill under the California foreclosure

laws and breached that duty when it wrongfully foreclosed on her Property in violation of

various sections of the California Civil Code.  (Obj. Ex. 1-A at 66–67.)  According to Rozier,

ETS should have been more diligent "given the rescinded 2009 foreclosure and wrongful

September 2012 foreclosure."  (*Id.* at 67.)  As to GMACM, Rozier asserts that GMACM was the

mortgage servicer and thus owed her a duty "to exercise reasonable care to follow California law

with regard to the enforcement of monetary obligations, and to refrain from taking or failing to

take any action against her that they did not possess the legal authority to do so."  (*Id.* at 68.)

Under California law, a negligence claim consists of three elements:  "(a) a legal duty to

use due care; (b) a breach of such legal duty; [and] (c) the breach as the proximate or legal cause

of the resulting injury."  *Ladd v. Cnty. of San Mateo*, 911 P.2d 496, 498 (Cal. 1996) (alterations

and internal quotation marks omitted).  "The existence of a duty of care owed by a defendant to a

plaintiff is a prerequisite to establishing a claim for negligence."  *Nymark v. Heart Fed. Sav. &*

*Loan Ass'n*, 283 Cal. Rptr. 53, 56 (Ct. App. 1991) (quoting *Beauchamp v. Los Gatos Golf*

*Course*, 77 Cal. Rptr. 914 (Ct. App. 1969)). Generally, "a financial institution owes no duty of

care to a borrower when the institution's involvement in the loan transaction does not exceed the

scope of its conventional role as a mere lender of money." *Id*. at 56–57 (citing cases). However,

California courts lack consensus regarding whether a financial institution owes a borrower a duty

of care when a loan modification is involved. *See, e.g.*, *Segura v. Wells Fargo Bank, N.A.*, No.

CV-14-04195, 2014 WL 4798890, at *12 (C.D. Cal. Sept. 26, 2014) ("The existence of a duty of

care owed by financial institutions in the process of considering borrowers for a loan

modification . . . is an unsettled issue."); *Armstrong v. Chevy Chase Bank, FSB*, No. 5:11-cv-

05664 (EJD), 2012 WL 4747165, at *4 (N.D. Cal. Oct. 3, 2012) (observing that several courts

"have characterized a loan modification as a traditional money lending activity," and finding that

"the minority of cases which hold otherwise . . . are unpersuasive") (internal citations and

quotation marks omitted).

California courts examine and balance the following factors to determine whether a duty

of care exists between a financial institution and a borrower: "[1] the extent to which the

transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the

degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between

the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's

conduct, and [6] the policy of preventing future harm." *Nymark*, 283 Cal. Rptr. at 58 (citing

cases).

In *Lueras v. BAC Home Loans Servicing, LP*, the court held that these factors "do not

support imposition of a common law duty to offer or approve a loan modification" or other

foreclosure alternatives. 163 Cal. Rptr. 3d 804, 820 (Ct. App. 2013). Instead, the court found

that the lending institutions' "rights, duties, and obligations in [offering, considering, or

approving loan modifications and exploring foreclosure alternatives] [a]re set forth in the note and deed of trust, the [parties' forbearance agreement], federal and state statutes and regulations, and the directives and announcement of the United States Department of Treasury and Fannie Mae." *Id*. at 820–21. The plaintiff's negligence claim was rejected because the plaintiff failed to demonstrate that his default in paying the monthly loan payments was a result of, or exacerbated by, the defendants' conduct. *Id*. at 820–21 ("If the modification was necessary due to the borrower's inability to repay the loan, the borrower's harm, suffered from denial of a loan modification, would not be closely connected to the lenders conduct. If the lender did not place the borrower in a position creating a need for a loan modification, then no moral blame would be attached to the lender's conduct.")

The Trust argues that GMACM never offered or entered into negotiations for a loan modification, but rather only negotiated with Rozier for repayment options and a short sale workout plan; cancellation of those plans was a result of Rozier's failure to make the required payments pursuant to them. (Obj. ¶¶ 105–06.) According to the Trust, the Debtors never owed a duty to Rozier and therefore never committed a breach. (*Id*.) Rozier asserts that the Debtors' actions leading up to their allegedly wrongful foreclosure were negligent; the Debtors owed her a duty to exercise the reasonable care of a substitute trustee and a loan servicer, and they failed to exercise such duty. (*See* Obj. Ex. 1-A at 67–68.)

Such alleged duties are similar to the allegations made by the plaintiff and rejected by the court in *Lueras*. *See Lueras*, 163 Cal. Rptr. 3d at 820–21 ("[Plaintiff's] allegations that [defendants] owed him duties to follow through on their own agreements, to comply with consumer protection laws and to stop foreclosure sales that were unlawful fail to state a cause of action for negligence because such duties, if any, are imposed by the loan documents and the

34

[parties' forbearance agreement], statutes and regulations. If [the defendants] failed to follow

through on those agreements, then [plaintiff's] remedy lies in breach of contract not

negligence."). Additionally, the factors set forth in *Nymark* do not support a finding of a duty

owed by the Debtors to Rozier under these circumstances. None of the Debtors' alleged actions

take them out of their "conventional role" as trustee or loan servicer. Even if the Debtors did

affirmatively act in an unconventional manner, Rozier has failed to provide evidence that it was

the Debtors' conduct that led her to default on her Loan. *Id.* ("[Plaintiff] did not allege [the

defendants] did anything wrongful that made him unable to make the original monthly loan

payments. [Plaintiff] did not allege [the defendants] caused or exacerbated his initial default by

negligently servicing the loan."). Rozier contends instead that she did not default on her Loan,

but she does not provide any documentary support for this assertion. The factors weigh against

finding that the Debtors owed a duty to Rozier, and in turn her negligence claim fails. The

Objection is **SUSTAINED** as to Rozier's negligence claim.

8.    *Defamation of Character*

Rozier asserts a defamation claim against the Debtors alleging the following in the

Complaint attached to her proofs of claim:

> Defendant GMACM made false statement against Plaintiff in
> ongoing litigation knowing them to be false. These false
> statements include calling Plaintiff a "defaulted Borrower."
> Defendant GMACM knew that the December 2005 loan was
> rescinded and they knew that California law states that the effect of
> loan rescission is to render the underlying instrument void.

(Obj. Ex. 1-A at 71.) Rozier contends that the Debtors characterized her Claims as "bizarre" and

"weird" and they made false statements to the police "in order to use the threat of police action

and murder against [Rozier]." (*Id.* at 72.) The Trust argues that the statements Rozier references

were true, not false, and therefore cannot form the basis of a defamation claim. (Obj. ¶ 108). In

any event, the Trust argues that she has not alleged any harm as a result; Rozier has failed to

provide proof that such statements led to her inability to obtain employment or the purported

downfall of her husband's business.  According to the Trust, she cannot allege and has not

alleged that it was the Debtors' conduct that caused her financial difficulties.

To state a defamation claim under California law, a plaintiff must prove that there is a

false publication that is defamatory and unprivileged, and that such publication has a natural

tendency to injure, or that it causes special damage.  CAL. CIV. CODE §§ 45–46; *Smith v.*

*Maldonado*, 85 Cal. Rptr. 2d 397, 402 (Ct. App. 1999); *Seelig v. Infinity Broad. Corp.*, 119 Cal.

Rptr. 2d 108, 116 (Ct. App. 2002).[17]  "Truth is a complete defense to defamation."  *Terry v.*

*Davis Cmty. Church*, 33 Cal. Rptr. 3d 145, 159 (Ct. App. 2005).  Only statements of fact, not

opinion, are generally actionable.  *Id*. at 158.  However, opinions that "imply an assertion of

objective fact" are actionable; "[t]he dispositive question is whether a reasonable fact finder

could conclude the published statement declares or implies a provably false assertion of fact."

*Id.*

Here, the majority of the challenged statements surround the issue of whether Rozier in

fact defaulted on her loan.  (Obj. Ex. 1-A at 71–72.)  Rozier denies being in default on the Loan.

(*See* Opp. at 2; Horst Mot. Strike ¶ 11.)  She bases her argument that she was not in default on

her already rejected contention that she successfully rescinded the Loan.  (*See* Opp. at 2.)  Rozier

has not provided any evidence to rebut the Trust's allegation that she has not made the required

monthly loan payments, but rather relies on her conclusory assertion that she is not in default.

These allegations are insufficient on their own to provide "evidence of any falsehood by

---

[17]    A plaintiff may not need to allege special damages if the plaintiff demonstrates that the statement made is
"libel on its face."  CAL. CIV. CODE § 45a.  The statements at issue here do not rise to that level.  *See id*. ("A libel
which is defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or
other extrinsic fact, is said to be a libel on its face.").

defendants." *Terry*, 33 Cal. Rptr. 3d at 159.  Additionally, it appears that the purported

statements made to the police regarding Rozier were never actually made—the Debtors did not

tell the police to "murder" or "threaten" Rozier, but rather requested assistance from the police

by way of escort, when delivering documentation to Rozier's home because the Debtors had

been informed of threats made by Rozier.  (Obj. ¶ 31, 127 (citing Horst Decl. ¶ 24).)  Obtaining a

local police escort when posting a foreclosure notice on an occupied residence is not actionable.

Rozier does not provide any evidence in her proofs of claim or her Opposition indicating that any

false statements were made to encourage the police to threaten or kill her.  Indeed, her Complaint

states that "[she] intends to amend this complaint to include these false statements as soon as

they are available," which indicates that Rozier did not have evidence of the statements at the

time the action was filed.  (Obj. Ex. 1-A at 72.)  Finally, the challenged statements that her

claims are "weird" or "bizarre" are statements of opinion not fact; they do not appear to declare

or imply any provably false assertion of fact.  *Terry*, 33 Cal. Rptr. 3d at 158.  The Objection is

**SUSTAINED** with respect to Rozier's defamation claim.

> 9.    *Fraud-Based Claims*

Rozier makes several disjointed allegations regarding the Debtors' purportedly fraudulent

conduct.  She contends that the Debtors fraudulently mischaracterized the size and value of her

Property in order to portray her in a negative light.  (*See* Opp. ¶ 14; Rozier Decl. ¶ 10.)  With

respect to a forbearance agreement she negotiated with the Debtors, she claims that "GMACM

admitted that they were at fault . . . .  Debtor GMACM then reneged but then attempted to bully

Rozier into signing a blank signature page to replace the one they executed."  (Opp. ¶ 20; *see*

Rozier Decl. ¶ 29.)  Rozier asserts that a representative named Latina Dawn attempted to

convince Rozier to become 90 days past due on the Loan "to qualify for customer service help,"

a former GMACM attorney refused to accept Rozier's "timely rescission of the alleged

modification of note," and the Debtors and their agents committed "wrongful acts including

filing false declarations."  (Rozier Decl. ¶ 33.)

The Trust argues that Rozier does not sufficiently allege a claim for fraud, but rather, her

allegations amount to "wholly unsupported and speculative claims . . . ."  (Obj. ¶ 119.)  Rozier

alleges that "GMACM was aware that it was collecting mortgage loan payments on a

purportedly rescinded note, and to further its scheme, directed ETS 'to start recording false

instruments into the County Recorder's office.'"  (*Id.* (citing Obj. Ex. 1-A at 40).)  Additionally,

she contends that ETS was not a licensed corporation in California and thereby knew it could not

act as a trustee in that state.  (*See id.*)  However, according to the Trust, "Rozier's allegations fail

to demonstrate that the Debtors misrepresented anything to Rozier, much less that they knew of

and intended to convey any misrepresentation so as to defraud Rozier."  (*Id.* ¶ 120.)  Instead, the

Debtors acted lawfully in connection with a valid Note and Deed of Trust.  (*See id.*)  According

to the Trust, Rozier's conspiracy to commit fraud claim is defective because her underlying fraud

claim is defective.  (*Id.* ¶ 121.)

Rozier's fraud-based claims are largely premised on actions occurring prior to the

commencement of her chapter 7 case, and she therefore lacks standing to pursue them.  Her

allegations regarding the Debtors' representative who reportedly attempted to convince her to

fall 90 days delinquent on her Loan while she was current on her payments necessarily relate to

actions predating her March 2008 default—years before her chapter 7 petition date.  Rozier's

other allegations of fraud, to the extent they relate to events taking place after the filing of her

chapter 7 bankruptcy case, fall short of the particularity pleading requirements of Federal Rule of

Civil Procedure 9(b).  *See Saldate v. Wilshire Credit Corp.*, 268 F.R.D. 87, 102 (E.D. Cal. 2010)

("[I]n a fraud action against a corporation, a plaintiff must 'allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." (citing *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. Rptr. 2d 861, 862–63 (Ct App. 1991))).  For instance, the assertion that the Debtors and their agents committed "wrongful acts including filing false declarations" is too amorphous to satisfy the requirements of Rule 9(b).  The Objection is therefore **SUSTAINED** as to Rozier's fraud-based claims.

### 10.   *Cancellation of Voidable Instruments*

Rozier asserts that the Note is invalid and should be cancelled, claiming that she rescinded the Note modified as of May 22, 2006 and executed a new note on June 1, 2006, "after the May Modification which Debtors now claim[] is valid."  (Shaham Mot. Strike ¶ 27; *see* Opp. at 2.)  Rozier contends that within twenty days of rescinding the December 2005 note, she asked WMC to return her to her original position and they failed to respond.  (Horst Mot. Strike at 14.)  After WMC failed to respond, she hired an attorney who allegedly contacted WMC and "informed them that the rescinded Note was a nullity and that they were required by law to put [her] back in [her] original position."  (*Id.*)

The Trust argues that Rozier's cancellation of instruments claim fails because she has not sufficiently alleged that her subject Loan is void.  (Obj. ¶ 123.)  Rather, the Trust reiterates that "Rozier annulled the rescission of the Note when she executed the Modification of Note and Modification of Deed of Trust documents."  (*Id.*)  Furthermore, any cancellation must be conditioned upon Rozier returning any consideration received for the Loan, which Rozier has failed to show she could or would do.  (*Id.*)  The Trust contends that the recording of foreclosure documents is a privileged act under California law, barring all tort causes of action except

malicious prosecution. (*Id.* ¶ 124.) Since there is no basis for a malicious prosecution claim

against the Debtors, the Trust argues that the Debtors' foreclosure notices are privileged. (*See

id.*)

      As discussed above, the Trust established that Rozier waived her right to rescind the

Loan by entering into the Modification of Note, the Modification of Deed of Trust, and the

Modification Release. *See supra* II.D.1. Accordingly, the Objection is **SUSTAINED** with

respect to Rozier's cancellation of instruments claim.

### 11.  *Intentional Infliction of Emotional Distress*

      Rozier also appears to assert a separate claim for intentional infliction of emotional

distress in connection with the foreclosure action, citing to section 3333 of the California Civil

Code in support.[18] (*See* Obj. Ex. 1-A at 70.) She alleges that "[w]hen the Defendants willfully

and negligently sold Plaintiff's real property without legal right to do so and for considerably

less than market value, they terrorized Plaintiff and caused her great emotional harm." (*Id.* at

70.) Additionally, "[w]hen they sold it at a grossly inadequate price, they likewise caused great

harm to Plaintiff's [*sic*] by undervaluing the extraordinary efforts of her husband to construct the

home from foundation-to-finish using no outside labor." (*Id.* at 70–71.) Rozier claims that the

Debtors caused eight SWAT officers to go to her property and intimidate and harass her. (*Id.* at

65.) The Trust argues that she has provided no basis in the law that actually supports her claim

and that courts have held that foreclosing on a home is insufficient to constitute "outrageous

conduct" required for this tort. (Obj. ¶¶ 126–30.) The Trust also argues that she failed to allege

facts to support a finding that the Debtors' conduct contributed to any severe emotional distress

as required for this tort as well. (*Id.* ¶ 129.)

---

[18]     Section 3333 provides that "[f]or the breach of an obligation not arising from contract, the measure of
damages, except where otherwise expressly provided by this Code, is the amount which will compensate for all the
detriment proximately caused thereby, whether it could have been anticipated or not." CAL. CIV. CODE § 3333.

In California, the elements of an intentional infliction of emotional distress claim requires a showing of the following: "(1) the defendant engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the probability of causing, severe emotional distress to the plaintiff; (2) the plaintiff actually suffered severe or extreme emotional distress; and (3) the outrageous conduct was the actual and proximate cause of the emotional distress." *Ross v. Creel Printing & Publ'g Co.*, 122 Cal. Rptr. 2d 787, 744–45 (Ct. App. 2002). For the first element, the conduct must be "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* at 745 (citation omitted). The court in *Ross* stated:

> In the context of debt collection, courts have recognized that the attempted collection of a debt by its very nature often causes the debtor to suffer emotional distress. Frequently, the creditor intentionally seeks to create concern and worry in the mind of the debtor in order to induce payment. Such conduct is only outrageous if it goes beyond all reasonable bounds of decency.

*Id.* (internal citations and quotation marks omitted). Generally, foreclosing upon a borrower's home "is not the kind of extreme conduct that supports an intentional infliction of emotional distress claim." *Quinteros v. Aurora Loan Servs.*, 740 F. Supp. 2d 1163, 1172 (E.D. Cal. 2010). Even a foreclosure that was executed without the proper prior notice would not constitute "outrageous conduct" giving rise to an intentional infliction of emotional distress claim. *Id.*; *see also Mehta v. Wells Fargo Bank, N.A.*, 737 F. Supp. 2d 1185, 1204 (S.D. Cal. 2010) (dismissing intentional infliction of emotional distress claim asserted against mortgage lender for its actions taken in connection with foreclosure).

Here, the Debtors had the legal right to foreclose. Even if proper notice was not provided and the Debtors are guilty of minor deficiencies in complying with California law, this would be insufficient to constitute "outrageous conduct." *See Quinteros*, 740 F. Supp. 2d at 1172. The alleged presence of eight SWAT team members at Rozier's home, one of whom allegedly held

her at gunpoint, is insufficient to state a claim against the Debtors.  First, the Trust denies that

this occurred and states that police officers were asked to escort the Debtors' posting agent to the

door to Rozier's Property, allegedly due to prior threats made by Rozier.  (Obj. ¶ 127.)  The

Trust submitted the posting agent's certificate of posting, which states in pertinent part that "5

Buena Park police officers escorted [the posting agent] to the property.  One officer walked [the

posting agent] to the front door to post the Notice of Trustee Sale."  (Strike Obj. Ex. 1, at 1.)

However, it is unclear from the certificate of posting whether the accompanying police officers

actually drew their weapons.  In any event, Rozier ignores the fact that the local police officers

are not and were not the Debtors' agents.  If an officer drew a weapon on that day, it is not

chargeable to the Debtors.  The facts alleged are not sufficient to state a cause of action against

the Debtors for intentional infliction of emotional distress.  The Objection is therefore

**SUSTAINED** as to Rozier's intentional infliction of emotional distress claim.

> ### 12.    The UCL

California's UCL prohibits "unfair competition," which includes "any unlawful, unfair or

fraudulent business act or practice . . . ."  CAL. BUS. & PROF. CODE § 17200.  A claim based on a

violation of the UCL may be brought under any of the above prongs.  *See Birdsong v. Apple,

Inc.*, 590 F.3d 955, 959 (9th Cir. 2009) ("Each prong of the UCL is a separate and distinct theory

of liability." (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009))).  A claim

brought under the UCL may also be based on the violation of another law.  *Leonel v. Am.

Airlines, Inc.*, 400 F.3d 702, 714 (9th Cir. 2005) ("Under the statute, '[u]nfair competition

encompasses anything that can properly be called a business practice which at the same time is

forbidden by law.'" (quoting *Wilkinson v. Times Mirror Corp.*, 264 Cal. Rptr. 194, 206 (Ct. App.

1989))).  "By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of

other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000) (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 539–40 (Cal. 1999)).

      The Trust argues that Rozier's UCL claim fails to the extent "it is a mere recasting of her other claims," because the UCL cannot be used to circumvent the requirements of other statutes. (Obj. ¶¶ 131–32.)  According to the Trust, Rozier has not identified any unlawful activity engaged in by the Debtors, as "GMACM and ETS acted lawfully in their respective roles as servicer and substitute trustee in connection with the subject loan," (*id.* ¶ 133), she has not alleged that the Debtors engaged in any unfair business practice that "violates established public policy or . . . is immoral, unethical, oppressive or unscrupulous" (*id.* ¶ 134 (citing *McKell v. Wash. Mut., Inc.*, 49 Cal. Rptr. 227, 240 (Ct. App. 2006))), and she has not alleged that the Debtors engaged in any fraudulent conduct within the meaning of the UCL, such that the public would likely be deceived by such conduct.  (*Id.* ¶ 135.)

      Rozier contends that she was encouraged by the Debtors to stop making payments on her Loan as early as December 4, 2007.  (Horst Mot. Strike at 15.)  She states that she made a payment to the Debtors in February 2008; the Debtors accepted that payment, declared default on March 3, 2008, and then returned her payment to her account.  (*Id.*)  Rozier also alleges that ETS filed false police reports "claiming that [she] was making physical threats against employees." (*Id.* at 16.)  Additionally, she claims that "[o]n October 16, 2012 . . . ETS and GMACM sent eight (8) heavily armed Buena Park SWAT officers to intimidate her at gunpoint while they posted their defective notice."  (Obj. Ex. 1-A at 67.)

While Rozier's allegations that one of the Debtors' employees encouraged her to default on her Loan might state a claim for a fraudulent business practice within the meaning of the UCL, *see Residential Capital*, 518 B.R. at 740 (finding that allegations that a mortgage servicer instructed the borrower to default on her mortgage in order to qualify for a loan modification state a claim under the UCL), Rozier lacks standing to bring such a claim because it is based on events that took place before her chapter 7 petition date.  In addition, Rozier's UCL claim would likely be barred by the applicable four-year statute of limitations.  *See* Cal. Bus. & Prof. Code § 17208; *Residential Capital*, 518 B.R. at 740.  Rozier's remaining allegations do not support a claim under the UCL, as they do not concern unlawful, unfair, or fraudulent business practices. The Objection is **OVERRULED** with respect to her UCL claim.

### III.    CONCLUSION

For the foregoing reasons, Rozier's Motions to Strike are **DENIED**, the Trust's Objection is **SUSTAINED,** and Rozier's Claims are **DISALLOWED** and **EXPUNGED**.

**IT IS SO ORDERED.**

Dated:  December 22, 2014
        New York, New York

_____*Martin Glenn*_____
MARTIN GLENN
United States Bankruptcy Judge